Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioner-Plaintiff*
*Additional counsel on next page*

*\*Application for admission pro hac vice forthcoming*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L.,<br><br>      *Petitioner-Plaintiff*,<br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE, Otay Detention Facility; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; Kevin K. McAleenan, Acting Commissioner of CBP; L. Francis Cissna, Director of USCIS; Pete Flores, San Diego Field Director, CBP; Fred Figueroa, Warden, Otay Mesa Detention Center; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement,<br><br>      *Respondents-Defendants*. | Case No. **'18CV0428 DMS MDD** |

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

# INTRODUCTION

1. This is an immigration case involving the United States government's forcible separation of plaintiff from her seven (7) year-old-daughter, S.S.

2. Plaintiff, Ms. L., is S.S.'s mother and a native of the Democratic Republic of Congo. Fearing near certain death in the Congo, Ms. L. escaped with S.S.

3. Upon arriving at a United States Port of Entry near San Diego on November 1, 2017, they presented themselves to border agents. Although their native language is Lingala, they were able to explain to the border guards, in the little bit of Spanish they knew, that they sought asylum.

4. Based on her expression of a fear of returning to Congo, Ms. L. was given an initial screening interview before an asylum officer. The initial interview requires the asylum officer to determine whether the applicant has a significant possibility of ultimately receiving asylum. The officer determined that Ms. L. did have a significant possibility of ultimately receiving asylum and therefore allowed her to move on to the next stage of the long asylum process.

5. Since their arrival on November 1, Ms. L. and S.S. have been detained.

6. For the first 4 days upon arriving, Ms. L. and S.S. were detained together, in what Ms. L. understood to be some sort of motel.

7. Ms. L. was then sent to the Otay Mesa Detention Center in the San Diego area, where she remains today, nearly four months later. But her daughter S.S. was taken from her.

8. Although S.S. is only 7 years old, she was sent half way across the country to a facility in Chicago without her mother, or anyone else she knows.

9. When the officers separated them, Ms. L. could hear her daughter in the next room frantically screaming that she wanted to remain with her mother.

10. No one explained to Ms. L. why they were taking her daughter away from her or where her daughter was going or even when she would next see her daughter.

11. Ms. L. did not get to speak to her daughter until approximately four days later, and then only on the phone. In the nearly four months they have been separated, Ms. L. has only spoken to her daughter approximately 6 times, and then only by phone, and never by video hookup where they can see each other.

12. On the phone, S.S. cries and is fearful of what will happen to her and her mother. She also worries constantly about how her mother is doing in "prison" and whether she is eating and sleeping properly.

13. Ms. L. tries to remain positive during these calls and comfort her daughter, but feels hopeless under the circumstances, and does not herself fully understand much of what is happening. It was only after Ms. L. was detained more than 3 months that she finally obtained legal counsel in her immigration proceeding.

14. The reason why Ms. L. and S.S. were separated was not a finding (or even any accusation) that Ms. L. was abusing or neglecting S.S., or that she is an unfit parent.

15. Ms. L. and her daughter have been separated now for nearly 4 months. Seven-year-old S.S. sits all alone in a Chicago facility, frightened and traumatized, crying for her mother and not knowing when she will see her again.

16. Ms. L. brings this action to reunite with her daughter. There are shelters that house African asylum-seekers and their children while they await the final adjudication of their asylum cases. If, however, the government feels compelled to continue detaining Ms. L. and S.S., it must at a minimum detain them <u>together</u> in one of its immigration family detention centers.

17. The Due Process Clause of the Fifth Amendment does not permit the government to forcibly take a 7-year-old child from her mother, without justification or even a hearing.

## JURISDICTION

18. This case arises under the Fifth Amendment to the United States Constitution, federal asylum statutes, and the Administrative Procedure Act. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, Cl. 2 of the United States Constitution ("Suspension Clause"). Plaintiff and her daughter are in custody for purposes of habeas jurisdiction.

## VENUE

19. Venue is proper under 28 U.S.C. § 1391 because Ms. L. is detained within this District and a substantial portion of the relevant facts occurred within this District.

## PARTIES

20. Petitioner Ms. L. is a 39-year-old citizen of the Democratic Republic of the Congo (the "Congo" or "DRC"). She is the mother of S.S.

21. Respondent U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and operates and oversees the Otay Mesa detention facility.

22. Respondent U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

23. Respondent U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

24. Respondent U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of

certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

25. Respondent U.S. Department of Health and Human Services (HHS) is a department of the executive branch of the U.S. government.

26. Respondent Office of Refugee Resettlement ("ORR") is a component of HHS which provides care of and placement for unaccompanied noncitizen children.

27. Respondent Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of Petitioner.

28. Respondent Greg Archambeault is sued in his official capacity as the ICE San Diego Field Office Director, and is a legal custodian of Petitioner.

29. Respondent Joseph Greene is sued in his official capacity as the ICE San Diego Assistant Field Office Director for the Otay Mesa Detention Center, and is a legal custodian of Petitioner.

30. Respondent Kirstjen Nielsen, is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Petitioner.

31. Respondent Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Executive Office of Immigration Review, is empowered to grant asylum or other relief, and is a legal custodian of the Petitioner.

32. Respondent L. Francis Cissna is sued in his official capacity as the Director of USCIS.

33. Respondent Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

34. Respondent Pete Flores is sued in his official capacity as the San Diego Field Director of CBP.

35. Respondent Fred Figueroa is sued in his official capacity as the Warden of the Otay Mesa Detention Center, and is a legal custodian of Petitioner.

36. Respondent Alex Azar is sued in his official capacity as the Secretary of the Department of Health and Human Services.

37. Respondent Scott Lloyd is sued in his official capacity as the Director of the Office of Refugee Resettlement.

## FACTS

38. Ms. L. and her daughter S.S. are seeking asylum in the United States.

39. Ms. L. is Catholic and sought shelter in a church until she was able to escape the Congo with S.S.

40. Upon reaching the United States, Ms. L. and S.S. presented themselves at the San Ysidro, California Port of Entry on November 1, 2017. Although their native language is Lingala, they were able to communicate to the border guards that they sought asylum.

41. Based on her expression of a fear of returning to the Congo, Ms. L. was referred for an initial screening before an asylum officer, called a "credible fear interview." She passed the credible fear screening but has been detained for nearly 4 months in the Otay Mesa Detention Center in the San Diego area.

42. On or about November 5, immigration officials separated 7-year-old S.S. from her mother and sent S.S. to Chicago, to be housed in a facility under the auspices of the Office of Refugee Resettlement (ORR).

43. When S.S. was taken away from her mother, she was screaming and crying, pleading with guards not to take her away from her mother.

44. Ms. L. and her daughter have been separated now for nearly four months. Seven-year-old S.S. is alone in a facility in Chicago.

45. Ms. L. has spoken to her daughter approximately 6 times by phone and is terrified she will never see her daughter again.

46. S.S. is scared and misses her mother, and wants to be reunited with her as soon as possible. Each time S.S. is able to speak with her mother on the phone, she is crying. In December, S.S. turned 7 and spent her birthday without her mother.

47. There is overwhelming medical evidence that the separation of a young child from her parent will have a devastating negative impact on the child's well-being, especially where there are other traumatic factors at work, and that this damage can be permanent.

48. The American Association of Pediatrics has recently denounced the Administration's practice of separating immigrant children from their parents, noting that: "The psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family."

49. Every day that S.S. is separated from her mother causes her greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

50. Ms. L. is distraught and depressed because of the separation from her daughter. She is not eating, has lost weight, is not sleeping due to worry and nightmares.

51. The government has no legitimate interest in separating Ms. L. and her child.

52. There has been no evidence, or even accusation, that S.S. was abused or neglected by Ms. L.

53. There is no evidence that Ms. L. is an unfit parent or that she is not acting in the best interests of her child.

54. Because she passed her credible fear interview, Ms. L. is eligible for release from detention on parole, which would enable her to be reunited with her daughter. However, the San Diego Field Office has a policy and practice of refusing to grant parole to detained asylum seekers such as Ms. L., notwithstanding an ICE Parole Directive that specifically favors their release.

55. Under current DHS practice, numerous other asylum-seeking parents and their young children are being separated upon arrival in the United States.

56. Prior Administrations detained families, but they did not have a practice of forcibly separating fit parents from their young children.

57. According to reports, the government may soon adopt a formal national policy of separating parents from their children.

58. If S.S. and her mother are both released from detention, there are non-governmental shelters that specialize in housing and caring for African asylum seekers.

59. If the government refuses to release them, there are government-operated family detention centers where S.S. and her mother can be housed together.

## CAUSES OF ACTION

### COUNT I

**(Violation of Due Process)**

60. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

61. The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Ms. L. and her daughter.

62. S.S. and her mother have a liberty interest under the Due Process Clause in remaining together as a family.

7

63. The separation of S.S. and her mother violates substantive due process because it furthers no legitimate purpose, not to mention a compelling governmental interest.

64. The separation of S.S. and her mother also violates procedural due process because it was undertaken without any hearing.

## COUNT II

### (Violation of Asylum Statute)

65. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

66. Under United States law, noncitizens with a well-founded fear of persecution shall have the opportunity to obtain asylum in the United States. 8 U.S.C. § 1158.

67. Defendants' separation of Ms. L. from her daughter violates federal asylum law because it impedes their ability to pursue their asylum claims.

## COUNT III

### (Administrative Procedure Act—Arbitrary and Capricious Practice)

68. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

69. The APA prohibits agency action that is arbitrary and capricious.

70. Defendants' separation of Ms. L. from her daughter without a legitimate justification is arbitrary and capricious and accordingly violates the APA. 5 U.S.C. § 706.

## COUNT IV
### (Administrative Procedure Act—Failure to Follow and Unlawful Rescission of the ICE Parole Directive)

71. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

72. Defendants have detained Ms. L. without considering her for release on parole as required by ICE's own Parole Directive

8

73. The San Diego Field Office has *de facto* rescinded the Parole Directive at the Otay Mesa Detention Facility without providing any reasoned justification—or, indeed, any justification at all—for such rescission.

74. If Ms. L. were paroled, her daughter could be released to her.

75. Defendants' actions, which have prevented Ms. L. from reuniting with her daughter, are arbitrary and capricious and contrary to law, in violation of the APA. 5 U.S.C. § 706.

## **PRAYER FOR RELIEF**

Petitioner-Plaintiff requests that the Court enter a judgment against Defendants and award the following:

A. Declare the separation of Ms. L. and her daughter unlawful;

B. Preliminarily and permanently enjoin defendants from continuing to separate Ms. L. and her daughter;

C. Order defendants either to release Ms. L. and her daughter, or to detain them together;

D. Enjoin defendants from removing Ms. L. from the country until she is reunited with her daughter, in the event that Ms. L. is not granted asylum and permitted to remain in the United States;

E. Require defendants to pay reasonable attorneys' fees and costs;

F. Order all other relief that is just and proper.

| | |
|---|---|
| Dated: February 26, 2018 | Respectfully Submitted, |
| | */s/Bardis Vakili* |
| Lee Gelernt* | Bardis Vakili (SBN 247783) |
| Judy Rabinovitz* | ACLU FOUNDATION OF SAN |
| Anand Balakrishnan* | DIEGO & IMPERIAL COUNTIES |
| AMERICAN CIVIL LIBERTIES | P.O. Box 87131 |
| UNION FOUNDATION | San Diego, CA 92138-7131 |
| IMMIGRANTS' RIGHTS PROJECT | T: (619) 398-4485 |
| 125 Broad St., 18th Floor | F: (619) 232-0036 |
| New York, NY 10004 | *bvakili@aclusandiego.org* |
| T: (212) 549-2660 | |
| F: (212) 549-2654 | |
| *lgelernt@aclu.org* | |
| *jrabinovitz@aclu.org* | |
| *abalakrishnan@aclu.org* | |

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*samdur@aclu.org*