# EXHIBIT F

tasking. We have therefore supplemented the information ICE provided with information from credible non-governmental organizations, federal court filings, and the ACFRC's own individual members' expertise. This report covers all the areas in our tasking, and notes the basis of our information and recommendations.

The detention of migrant children and families by the U.S. government has been controversial since its inception. Child and family detention has been the subject of a number of federal lawsuits – most notably, the *Flores* litigation (currently captioned *Flores v. Lynch*), filed in 1985 and still in active litigation.[4] Since its inception, many reports by government agencies (including the Government Accountability Office (GAO) and various subunits of DHS), the United Nations High Commissioner for Refugees (UNHCR), the American Bar Association (ABA), and advocacy organizations have made similar and negative findings. In this report, the ACFRC adds our voice to those prior critiques. We offer numerous recommendations to improve detention management and conditions. But these should be understood in light of our basic conclusion and first recommendation, which is repeated and discussed in depth in Part I, below:

**Recommendation 1-1: DHS's immigration enforcement practices should operationalize the presumption that detention is generally neither appropriate nor necessary for families – and that detention or the separation of families for purposes of immigration enforcement or management, or detention is never in the best interest of children. DHS should discontinue the general use of family detention, reserving it for rare cases when necessary following an individualized assessment of the need to detain because of danger or flight risk that cannot be mitigated by conditions of release. If such an assessment determines that continued custody is absolutely necessary, families should be detained for the shortest amount of time and in the least restrictive setting possible; all detention facilities should be licensed, non-secure and family-friendly. If necessary to mitigate individualized flight risk or danger, every effort should be made to place families in community-based case-management programs that offer medical, mental health, legal, social, and other services and supports, so that families may live together within a community.**

Our report proceeds as follows: We complete this Introduction with some background on family detention. We then proceed in seven parts, addressing:

1. Decision to Detain and Release
2. Reform of Detention and Alternatives-to-Detention (ATD)
3. Access to Counsel
4. Education Services and Programs
5. Language Access
6. Medical, Mental Health, and Trauma-Informed Care
7. Inspections, Complaints, and Oversight

---

[4] For a summary of the litigation, see CIVIL RIGHTS LITIGATION CLEARINGHOUSE, *Case Profile Flores v. Reno*, http://www.clearinghouse.net/detail.php?id=9493. *See especially* Stipulated Settlement Agreement, Flores v. Reno, No. 85-cv-4544-RJK(Px) (C.D. Cal. Jan.17, 1997), http://www.clearinghouse.net/chDocs/public/IM-CA-0002-0005.pdf.