Michael J. Shipley (SBN 233674)
michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500

Joseph M. Sanderson (SBN 305256)*
* *Petition for Admission to S.D. Cal. Pending*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for* Amici Curiae *Scholars of Immigration Law and Constitutional Law*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.,<br><br>            Petitioner-Plaintiff,<br><br>    v.<br><br>U.S. Immigration and Customs Enforcement, *et al.*<br><br>           Respondents-Defendants. | Case No. 18-cv-0428<br><br>**BRIEF OF SCHOLARS OF IMMIGRATION LAW AND CONSTITUTIONAL LAW AS *AMICI CURIAE*, IN SUPPORT OF MS. L.'s MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Dana M. Sabraw<br>Courtroom: 13A<br>Hearing Date: TBD<br>Hearing Time: TBD |

**BRIEF OF SCHOLARS OF IMMIGRATION LAW AND CONSTITUTIONAL LAW AS *AMICI CURIAE*, IN SUPPORT OF MS. L.'s MOTION FOR A PRELIMINARY INJUNCTION**

# INTEREST OF *AMICI CURIAE*

*Amici curiae* are ten scholars of immigration and constitutional law, including authors of leading immigration law textbooks and practitioner treatises. *Amici* include a former Chief Counsel of USCIS and former Senior Counselor to the Secretary of Homeland Security. *Amici* are committed to the protection of the constitutional rights of people who are immigrants, whether by choice or—as here—by compulsion. *Amici* submit this brief to assist the Court in understanding the constitutional doctrines governing this case.

Deborah Anker is a Clinical Professor of Law Founder and Director, Harvard Immigration and Refugee Clinic at Harvard Law School,[1] and the author of the treatise *Law of Asylum in the United States*.

Erwin Chemerinsky is the Dean and Jesse H. Choper Distinguished Professor of Law at the University of California, Berkeley, School of Law, the author of leading casebooks on Constitutional Law, Federal Jurisdiction, and Criminal Procedure, among many other publications, and formerly the Founding Dean of the University of California, Irvine, School of Law with a joint appointment in Political Science.

Lucas Guttentag is the Professor of the Practice of Law at Stanford Law School, Robina Foundation Distinguished Senior Fellow at Yale Law School, and a former Senior Counselor to the Secretary of Homeland Security.

Ira Kurzban is the author of *Kurzban's Immigration Law Sourcebook*, a Partner at Kurzban, Kurzban, Weinger, Tetzeli & Pratt, P.A., a former National President and General Counsel of the American Immigration Lawyers Association, an Adjunct Professor at the University of Miami School of Law, and in 1986 was selected by *Newsweek* as one of 100 "American Heroes" for his work on behalf of immigrants.

---

[1] All *amici* submit this brief solely in a personal capacity. This brief does not purport to represent the views (if any) of the universities, firms, and other organizations with which they are affiliated.

Stephen Legomsky is the Lehmann University Professor Emeritus at the Washington University School of Law, the principal author of *Immigration and Refugee Law and Policy* and other books on immigration and administrative law, and former Chief Counsel of United States Citizenship and Immigration Services in the Department of Homeland Security.

Hiroshi Motomura is the Susan Westerberg Prager Professor of Law at the School of Law, University of California, Los Angeles (UCLA). He is the co-author of *Immigration and Citizenship: Process and Policy* (West 8th ed. 2016), and *Forced Migration: Law and Policy* (West 2d ed. 2013), and the author of *Americans in Waiting* (Oxford 2006), and *Immigration Outside the Law* (Oxford 2014).

Jayashri Srikantiah is a Professor of Law and Director of the Immigrants' Rights Clinic at Stanford Law School, and the author of numerous articles about immigration law.

Leti Volpp is the Robert D. & Leslie Kay Raven Professor of Law in Access to Justice and the Director of the Center for Race and Gender at the University of California, Berkeley, School of Law, the author of numerous articles about immigration and nationality law, and a former Trial Attorney at the U.S. Department of Justice.

Michael Wishnie is the William O. Douglas Clinical Professor of Law and Counselor to the Dean at Yale Law School, where he co-teaches the Worker & Immigrant Rights Advocacy Clinic, Veterans Legal Services Clinic, and Rule of Law Clinic.

Stephen Yale-Loehr is the Professor of Immigration Law Practice at Cornell Law School, co-author of *Immigration Law and Procedure,* the leading 21-volume treatise on U.S. immigration law, as well as many other publications about immigration law. He has practiced immigration law for more than thirty years, and is Of Counsel at Miller Mayer LLP.

## SUMMARY OF ARGUMENT

Longstanding precedent holds that even people deemed "arriving aliens" under the immigration laws have *substantive* due process rights, even as the "entry fiction" restricts their *procedural* due process rights. From James Madison to the late Justice Scalia, a wide range of authorities over centuries have found it settled that the Constitution prohibits the Government from inflicting unconstitutional abuses upon non-citizens, whether at the physical border, at the legal fiction of the border, or in the interior.

Simply put, immigration detention—ordered by officers whose power to detain derives from Congress exercising the powers granted it by the Constitution—is not a Constitution-free zone. Even assuming that certain *procedural* protections for arriving non-citizens challenging their admission are limited to those Congress provides, the Government may not impose upon non-citizens *substantive* hardships forbidden by the Constitution.

## ARGUMENT

**I.   Ms. L. Seeks Reunification with Her Child Pending Adjudication of Her Asylum Petition.**

Ms. L. seeks to be reunited with her daughter. The Government has not yet filed a responsive pleading. But *amici* expect, based on arguments that the Government has made in the past, that it will claim that the Constitution does not apply to Ms. L. because—although she is physically inside the United States—her status as an applicant for admission deprives her of rights under the Constitution. *Amici* submit this brief to respond to that anticipated contention and explain why it is wrong.

**II.   More Than a Century of Precedent Holds That the Constitution Protects the Substantive Due Process Rights of Applicants for Admission.**

More than a century ago, the Supreme Court held that the Constitution protects everyone within the territory of the United States, regardless of citizenship. *Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886); *Wong Wing v. United States*, 163 U.S. 228,

1  238 (1896). Repeatedly and consistently, the Supreme Court and the Ninth Circuit
2  have held that non-citizens physically on U.S. soil have constitutional rights,
3  including the right to due process of law. For example, in *Mathews v. Diaz*, the
4  plaintiffs included parolees deemed arriving aliens under the immigration laws. 426
5  U.S. 67, 77 (1976). The Supreme Court, recognizing that there "are literally millions
6  of aliens within the jurisdiction of the United States," held that "the Fifth Amendment,
7  as well as the Fourteenth Amendment, protects every one of these persons from
8  deprivation of life, liberty, or property without due process of law." 426 U.S. 67, 77
9  (1976); *see also Kwai Fun Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004).
10 No less than the principal drafter of the Constitution and Bill of Rights castigated the
11 argument that non-citizens lacked constitutional rights, including the right to due
12 process. James Madison, *Report on the Virginia Resolutions* (1800) ("[I]t is said, that
13 aliens not being parties to the constitution, the rights and privileges which it secures,
14 cannot be at all claimed by them. . . . If aliens had no rights under the constitution,
15 they might not only be banished, but even capitally punished, without a jury or the
16 other incidents to a fair trial."). In short, it is, and has been for centuries, settled law
17 that non-citizens have constitutional rights.

18     An immigrant applying for admission is not beyond the reach of the
19 Constitution's protection. Ms. L. is physically present on United States soil. Because
20 she applied for admission and was detained at a point of entry, the so-called "entry
21 fiction" limits certain of her *procedural* Due Process rights to challenge her possible
22 exclusion to "the procedure authorized by Congress" in the immigration statutes.
23 *Pazcoguin v. Radcliffe*, 292 F.3d 1209 (9th Cir. 2002).[2] But no court has ever held that

---

[2]  Notably, the "entry fiction" is based on deference to *Congress*'s prerogatives to exclude certain classes of non-citizens and to enact procedures by which agents of the executive branch make admission decisions. Nowhere in these immigration standards and procedures has Congress authorized the separation of parents from their minor children that the Government has forced upon Ms. L. and her daughter.

-4-
BRIEF *AMICI CURIAE*                                                    18cv0428

applicants for admission physically within the United States lack the *substantive* rights afforded by the Due Process clause.

      To the contrary, the Ninth Circuit has expressly held that arriving aliens have substantive due process rights. *Kwai Fun Wong*, 373 F.3d at 974. There, Ms. Wong was paroled into the United States pending a deferred inspection, but failed to appear for inspection, had her parole revoked, and was issued an order of expedited removal. *Id.* at 958–59. After she was deported, she brought a number of *Bivens* claims related to her removal and treatment in detention. The Ninth Circuit addressed the "entry fiction" doctrine at length. The Court held that while "[t]he entry fiction . . . appears determinative of the *procedural* rights of aliens with respect to their applications for admission," it "has not, however, been applied, by the Supreme Court or by this court, to deny all constitutional rights to non-admitted aliens." *Id.* at 971; *see also id.* at 972–73 ("The decisions of courts confronted with the everyday reality of the great number of non-admitted aliens living and working in the American community reflect an understanding that such aliens are undeniably 'persons' entitled to constitutional protection . . . ."). Citing *Mathews*, the court noted that the Supreme Court had applied the equal protection component of the Fifth Amendment Due Process Clause to arriving aliens—there, parolees. *Id.* at 973. The court concluded that the entry fiction was "a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away. Otherwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-persons." *Id.*

      Other Circuits agree. The Fifth Circuit, for example, has reasoned that Congress's broad powers to determine who will be admitted and the processes to be followed to admit or deny admission are "critical to national self-determination"—but "[t]here are, however, no identifiable national interests that justify the wanton infliction of pain." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 623 (5th Cir. 2006); *see also Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987) ("The 'entry

1 fiction' that excludable aliens are to be treated as if detained at the border despite their
2 physical presence in the United States determines the aliens' rights with regard to
3 immigration and deportation proceedings. It does not limit the right of excludable
4 aliens detained within United States territory to humane treatment."); *Chi Thon Ngo v.*
5 *I.N.S.*, 192 F.3d 390, 396 (3d Cir. 1999) ("Even an excludable alien is a 'person' for
6 purposes of the Fifth Amendment and is thus entitled to substantive due process.");
7 *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) ("Excludable aliens also
8 have *personal* constitutional protections against illegal government action of various
9 kinds"). Moreover, in *Zadvydas v. Davis*, both the majority of the Supreme Court and
10 Justice Scalia's dissent recognized substantive constitutional limits on the treatment of
11 immigrants. 533 U.S. 678, 695 (2001) ("Congress['s] 'plenary power' to create
12 immigration law . . . is subject to important constitutional limitations."); *id.* at 704
13 (Scalia, J., dissenting) ("I am sure they cannot be tortured, as well."). The issue, then,
14 is settled: arriving aliens have substantive due process rights under the Constitution.

15 "The substantive due process right to family integrity or to familial association
16 is well established. A parent has a 'fundamental liberty interest' in companionship
17 with his or her child." *Rosenbaum v. Washoe County,* 663 F.3d 1071, 1079 (9th Cir.
18 2011). "We have recognized on numerous occasions that the relationship between
19 parent and child is constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255
20 (1978); *see Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us
21 that the custody, care and nurture of the child reside first in the parents, whose
22 primary function and freedom include preparation for obligations the state can neither
23 supply nor hinder. And it is in recognition of this that these decisions have respected
24 the private realm of family life which the state cannot enter." (citation omitted)).

25 The Supreme Court has held that it has "little doubt that the Due Process Clause
26 would be offended if a State were to attempt to force the breakup of a natural family,
27 over the objections of the parents and their children, without some showing of
28 unfitness and for the sole reason that to do so was thought to be in the children's best

interest." *Quilloin*, 434 U.S. at 255. Unlike in *Quilloin*, however, the Government here has not justified its decision to separate mother from child—over the objection of both and for more than three months—as motivated by protecting the child. If a separation absent unfitness violates the Due Process Clause *even when asserted as the best interest of the child*, a separation without that justification—for some other, as yet explained motive—must certainly conflict with the Government's obligations under the Fifth Amendment.

Nor does separating Ms. L. from her daughter—who is, after all, a derivative beneficiary of Ms. L.'s asylum petition—serve any valid purpose under the immigration laws. It is cruel and inhumane and defies decades of immigration practice. Indeed, Congress itself has condemned the practice—repeatedly. H.R. Rep. No. 114-688, *Department of Homeland Security Appropriations Bill, 2017*, at 24 (2016) ("The Committee is concerned by reports of the separation of some family units after apprehension by CBP or prior to crossing the border."); H.R. Rep. No. 115–239, *Department of Homeland Security Appropriations Bill, 2018*, at 24 (2017) ("The Committee is concerned by reports of the separation of some family units after apprehension by CBP or prior to crossing the border.").

※※

Immigration detention is not a Constitution-free zone. The Due Process Clause applies to the government's separation of Ms. L. and her daughter.

DATED: March 4, 2018                                KIRKLAND & ELLIS LLP

By:   s/ Michael Shipley
          Michael Shipley

*Attorneys for* Amici Curiae *Scholars of Immigration Law and Constitutional Law*