UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, <br> Petitioner-Plaintiff, <br> vs. <br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br> Respondents-Defendants. | Case No. 18cv428 DMS MDD <br><br> Hon. Dana M. Sabraw |

**DECLARATION OF FEDERAL FIELD SPECIALIST, CHICAGO, JULISSA PORTALES BANZON, MS**
**OFFICE OF REFUGEE RESETTLEMENT,**
**ADMINISTRATION FOR CHILDREN AND FAMILIES,**
**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

I, Julissa Portales Banzon, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows:

1. I am a Federal Field Specialist (FFS) for the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), Department of Health and Human Services ("HHS"). The following statements are based on my personal knowledge, information acquired by me in the course of performing my official duties, information contained in the records of HHS, and information supplied to me by current HHS employees. I am located in Chicago, Illinois.

2. Generally, when UAC are apprehended by officers working for the Department of Homeland Security (DHS), DHS refers them to ORR as UAC per applicable law.

1

3. In this case, S.S., a seven year old girl reportedly from the Congo, was referred to ORR on November 5, 2017 by DHS as an "unaccompanied alien child".

4. Once a referring agency such as DHS refers a child as a UAC, it is the general policy of HHS/ORR not to revisit their "unaccompanied" status. Rather, HHS/ORR policy is to adhere to the requirements in the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 8 U.S.C. § 1232(c)(3), to determine the suitability of a sponsor prior to release. *See* ¶ Paragraph 11, *infra*, explaining the process whereby ORR reunifies a child with a sponsor, including verifying the identity of a sponsor who claims to be her parent, as well as confirming the relationship between the child and the sponsor.

5. Also in accordance with the TVPRA, ORR follows child welfare best practices to place a "child in the least restrictive setting appropriate for the child," taking into account factors such as the child's age and gender. 8 U.S.C. § 1232(c)(2)(A); ORR Guide to Children Entering the United States Unaccompanied (ORR Guide), at Section 1.1 (Summary of Policies for Placement and Transfer of Unaccompanied Alien Children in ORR Care Provider Facilities) (available at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied, last visited March 6, 2018). ORR provides grants to numerous types of care providers, including foster care providers and shelter-care group home type shelters in order to meet the needs of UAC in ORR care and custody. *See* ORR Guide, at Section 1.2 (ORR Standards for Placement and Transfer Decisions).

6.  S.S. is currently in the care and custody of ORR and has been housed since November 5, 2017 by Heartland ICC, a non-secure shelter facility in Chicago Illinois. The shelter is licensed by the State of Illinois to provide residential care to children. The facility is one which is capacitated to shelter young children such as S.S. and is routinely used for such children. The facility also provides care to many young children from diverse non-Central American countries such as the Congo, Guinea, Nepal, Haiti, Kyrgyzstan, China, Vietnam, India, Bangladesh, and Romania. At Heartland ICC, S.S. receives case management, clinical, educational and medical services while in care.

7.  ORR has sought acceptable proof from DHS and Ms. L to verify that Ms. L is S.S.'s biological mother as she alleges. Despite multiple attempts to gather appropriate documentation such as a birth certificate or other government-issued identification, ORR has to date been unable to verify the alleged parental relationship. The only available documentation of S.S.'s identity is a school identification card reportedly from Brazil (where the minor and Ms. L reportedly lived before traveling to the U.S.) which does list Ms. L as the child's mother. The shelter Heartland ICC has made attempts to contact the minor's father and a reported family friend by calling the telephone numbers outside the U.S. provided by Ms. L; however, these numbers did not work. Ms. L also requested that the shelter contact the Angola and Congo consulates in order to secure birth certificates for the minor and Ms. L, which Heartland ICC did, but neither consulate has responded yet to this request for assistance.

8. S.S.'s immigration attorney requested a DNA test in order establish definitely whether Ms. L is S.S.'s biological mother as she alleges. Therefore, ORR and the Heartland ICC shelter have taken affirmative steps in an effort to obtain the requisite consent from Ms. L and DHS, and to arrange such testing, which was conducted for the minor on Wednesday, March 7 (today), at 10 a.m.

9. Although the minor S.S.'s putative mother, Ms. L, was just released from DHS custody, ORR must still follow its usual release policy and procedures before releasing S.S. to her. Under the TVPRA, *see* 8 U.S.C. § 1232(c)(3)(A), HHS (ORR) is required to "make[] a determination that a proposed custodian is capable of providing for the child's physical mental well-being. Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."

10. Correspondingly, ORR policy requires the timely release of UAC to qualified parents, guardians, relatives, or other adults, referred to collectively as "sponsors." ORR Guide, at Section 2.1 (Summary of Safe and Timely Release Process). Consistent with the TVPRA's mandate, *see* 8 U.S.C. § 1232(c)(3)(A), ORR evaluates the ability of any potential sponsor, including an individual who claims to be the child's parent, to provide for the child's physical and mental well-being, in order to protect him or her from "smugglers, traffickers, or others who might seek to victimize or otherwise engage the child in criminal, harmful or exploitative activity." ORR Guide, at Section 2.1.

4

According to ORR policy: "The process for the safe and timely release of an unaccompanied alien child from ORR custody involves many steps, including: the identification of sponsors; the submission by a sponsor of the application for release and supporting documentation; the evaluation of the suitability of the sponsor, <u>including verification of the sponsor's identity and relationship to the child</u>, background checks, and in some cases home studies; and planning for post-release." *Id.* (Emphasis added.) While ORR's preference is to release a child to an appropriate sponsor who is verified to be the child's parent (*see* ORR Guide, Section 2.2.1), each of these steps apply to *all* sponsors prior to release, including the putative parent of a child such as S.S.

I, Julissa Portales Banzon, M.S., declare under penalty of perjury that the foregoing is true and correct. Executed on March 7, 2018.

*Julissa Portales Banzon*

Julissa Portales Banzon, M.S., Federal Field Specialist, Chicago