Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*       *Admitted Pro Hac Vice
*Additional counsel on next page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L. and Ms. C., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: March 9, 2018 <br><br> **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF WITH CLASS ACTION ALLEGATIONS** <br><br> CLASS ACTION |

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*samdur@aclu.org*

# INTRODUCTION

1. This case challenges the United States government's forcible separation of parents from their young children for no legitimate reason and notwithstanding the threat of irreparable psychological damage that separation has been universally recognized to cause young children.

2. Plaintiff Ms. L. is the mother of a seven (7) year-old daughter, who was ripped away from her, and then sent halfway across the country to be detained alone. Plaintiff Ms. C. is the mother of a fourteen (14) year-old son, who was also forcibly separated from his mother and detained more than a thousand miles away.

3. Ms. L. and Ms. C. bring this action to have the government reunite them with their young children, from whom they have been separated now for more than four and five months respectively.

4. They also bring this action on behalf of the hundreds of other parents whom the government has forcibly separated from their children and continues to separate. Like Ms. L. and Ms. C., almost all of these individuals have fled persecution and are seeking asylum in the United States. Without any assertions of abuse, neglect, or parental unfitness, and with no hearings of any kind, the government is detaining these young children, alone and frightened, in facilities often thousands of miles from their parents.

5. Forced separation from parents causes severe trauma to young children, especially those who are already traumatized and are fleeing persecution in their home countries. The resulting cognitive and emotional damage can be permanent.

6. Defendants have ample ways to keep Plaintiffs together with their children. There are shelters that house families (including asylum-seekers) while they await the final adjudication of their immigration cases. If, however, the government feels compelled to continue detaining these parents and young children,

it must at a minimum detain them <u>together</u> in one of its immigration family detention centers.

7. The Due Process Clause of the Fifth Amendment does not permit the government to forcibly take young children from their parents, without justification or even a hearing. That separation also violates the asylum statutes, which guarantee a meaningful right to apply for asylum, and the Administrative Procedure Act (APA), which prohibits arbitrary government action.

## JURISDICTION

8. This case arises under the Fifth Amendment to the United States Constitution, federal asylum statutes, and the APA. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Plaintiffs are in custody for purposes of habeas jurisdiction.

## VENUE

9. Venue is proper under 28 U.S.C. § 1391 because Ms. L. was detained within this District when this action commenced and a substantial portion of the relevant facts occurred within this District, including the separation of Ms. L. and her daughter.

## PARTIES

10. Plaintiff Ms. L. is a citizen of the Democratic Republic of the Congo (the "Congo" or "DRC"). She is the mother of 7 year-old S.S.

11. Plaintiff Ms. C. is a citizen of Brazil. She is the mother of 14 year-old J.

12. Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

13. Defendants U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

14. Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

15. Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

16. Defendant U.S. Department of Health and Human Services (HHS) is a department of the executive branch of the U.S. government which has been delegated with authority over "unaccompanied" noncitizen children.

17. Defendant Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied" noncitizen children.

18. Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of Plaintiffs.

19. Defendant Greg Archambeault is sued in his official capacity as the ICE San Diego Field Office Director, and is a legal custodian of Plaintiff L.

20. Defendant Joseph Greene is sued in his official capacity as the ICE San Diego Assistant Field Office Director for the Otay Mesa Detention Center, and is a legal custodian of Plaintiff L.

21. Defendant Adrian P. Macias is sued in his official capacity as the ICE El Paso Field Office Director, and is a legal custodian of Plaintiff C.

22. Defendant Frances M. Jackson is sued in his official capacity as the ICE El Paso Assistant Field Office Director for the West Texas Detention Facility, and is a legal custodian of Plaintiff C.

23. Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result,

Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

24.     Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Executive Office of Immigration Review, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

25.     Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

26.     Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

27.     Defendant Pete Flores is sued in his official capacity as the San Diego Field Director of CBP.

28.     Defendant Hector A. Mancha Jr. is sued in his official capacity as the El Paso Field Director of CBP.

29.     Defendant Alex Azar is sued in his official capacity as the Secretary of the Department of Health and Human Services.

30.     Defendant Scott Lloyd is sued in his official capacity as the Director of the Office of Refugee Resettlement.

## **FACTS**

31.     Over the past year, the government has separated hundreds of migrant families for no legitimate purpose.

32.     Almost all of these migrant families fled persecution and are seeking asylum.  Although there are no allegations that the parents are unfit or abusing their children in any way, the government has forcibly separated them from their young children and detained the children, often far away, in facilities for "unaccompanied" minors.

33. There is overwhelming medical evidence that the separation of a young child from his or her parent will have a devastating negative impact on the child's well-being, especially where there are other traumatic factors at work, and that this damage can be permanent.

34. The American Association of Pediatrics has recently denounced the Administration's practice of separating migrant children from their parents, noting that: "The psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family."

33. Prior Administrations detained migrant families, but did not have a practice of forcibly separating fit parents from their young children.

34. According to reports, the government may soon adopt a formal national policy of separating migrant families, and placing the children in government facilities for unaccompanied minors.

35. There are non-governmental shelters that specialize in housing and caring for families—including asylum seeking families—while their immigration applications are adjudicated.

36. There are also government-operated family detention centers where parents can be housed together with their children, should the government decide not to release them.

37. Ms. L. and her daughter S.S. are one of the many families that have recently been separated by the government.

38. Ms. L. and her daughter are seeking asylum in the United States.

39. Ms. L. is Catholic and sought shelter in a church until she was able to escape the Congo with S.S.

40. Upon reaching the United States, Ms. L. and S.S. presented themselves at the San Ysidro, California Port of Entry on November 1, 2017. Although their

native language is Lingala, they were able to communicate to the border guards that they sought asylum.

41. Based on her expression of a fear of returning to the Congo, Ms. L. was referred for an initial screening before an asylum officer, called a "credible fear interview." She subsequently passed the credible fear screening but, until March 6, 2018, remained detained in the Otay Mesa Detention Center in the San Diego area.

42. On or about November 5, immigration officials forcibly separated 7-year-old S.S. from her mother and sent S.S. to Chicago. There she was housed in a detention facility for "unaccompanied" minors run by the Office of Refugee Resettlement (ORR).

43. When S.S. was taken away from her mother, she was screaming and crying, pleading with guards not to take her away from her mother. That was the last time Ms. L. saw her daughter. During the few times Ms. L. was able to speak to her daughter on the phone, her daughter was crying and scared. Although her daughter was terrified for herself, she was also frightened for her mother, always asking how her mother was doing in "prison."

44. Ms. L. and her daughter have been separated now for more than four months. Seven-year-old S.S. is alone in a facility in Chicago.

45. While detained, Ms. L. spoke to her daughter approximately 6 times by phone, never by video. For months she has been terrified that she would never see her daughter again.

46. S.S. is scared and misses her mother, and wants to be reunited with her as soon as possible. In December, S.S. turned 7 and spent her birthday in the Chicago facility, without her mother.

47. Every day that S.S. is separated from her mother causes her greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

48. Ms. L. is distraught and depressed because of the separation from her daughter. In detention, she did not eat properly, lost weight, and was not sleeping due to worry and nightmares.

49. In one moment of extreme despair and confusion, Ms. L. told an immigration judge that she wanted to withdraw her application for asylum, realizing her mistake only a few days later. Her application to reopen her asylum case is pending before the immigration judge.

50. The government has no legitimate interest in separating Ms. L. and her child.

51. There has been no evidence, or even accusation, that S.S. was abused or neglected by Ms. L.

52. There is no evidence that Ms. L. is an unfit parent or that she is not acting in the best interests of her child.

53. After Ms. L. filed this lawsuit and moved for a preliminary injunction, Defendants abruptly released her from custody on March 6, 2018. Defendants informed her that she would be released mere hours in advance, with no arrangements for where she would stay. They have not reunited her with her daughter, who remains detained at an ORR facility halfway across the country.

54. Ms. C. and her 14 year-old son, J., are another one of the families who have been separated by the government. Like Ms. L. and her daughter, Ms. C. and her son are seeking asylum in the United States.

55. Ms. C. and J. fled Brazil and came to the United States to seek asylum. A few feet after Ms. C. entered the United States, a border guard approached her, and she explained that she was seeking asylum. Ms. C. subsequently passed a credible fear interview, and was put in removal proceedings, where she is applying for asylum.

56. Despite having communicated her fear of persecution to border guards, the government prosecuted Ms. C. for entering the country illegally, took her son J. away from her, and sent him to a facility for "unaccompanied" children in Chicago.

57. The government continued to separate Ms. C. from her son even after she completed serving her 25-day criminal misdemeanor sentence on September 22, 2017, and was sent to an immigration detention facility, the El Paso Processing Center. In early January 2018, she was transferred again, to another immigration facility, the West Texas Detention Facility (also known as Sierra Blanca), but still not reunited with her son.

58. Ms. C. has not seen her son since he was taken from her in the more than 5 months since she was placed into an immigration detention facility. She is desperate to be reunited with him. She worries about him constantly and does not know when she will be able to see him. They have only spoken on the phone a handful of times since they were forcibly separated by Defendants.

59. J. has been having a difficult time emotionally since being separated from his mother.

60. Every day that J. is separated from his mother causes him greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

61. The government has no legitimate interest in separating Ms. C. and her child.

62. There has been no evidence, or even accusation, that J. was abused or neglected by Ms. C.

63. There is no evidence that Ms. C. is an unfit parent or that she is not acting in the best interests of her child.

## CLASS ALLEGATIONS

64. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

65. Plaintiffs seek to represent the following nationwide class:

> All adult parents nationwide who (1) are or will be detained in immigration custody by the Department of Homeland Security, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

66. Plaintiffs Ms. L. and Ms. C. are each adequate representatives of the proposed class.

67. The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable.

68. There are hundreds of parents that fit within the class and many more that will become separated from their young children.

69. The class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The members of the class are subject to a common practice: forcibly separating detained parents from their minor children. By definition, all class members have experienced that practice, and none has been given an adequate hearing regarding the separation. The lawsuit raises numerous questions of law common to members of the proposed class, including: whether Defendants' family separation practice violates class members' substantive due process right to family integrity; whether the practice violates class members' procedural due process rights; whether the practice violates the federal asylum statute; and whether these separations are arbitrary and capricious under the APA.

70. The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Ms. L., Ms. C., and the proposed class members

are all individuals who have had or will have their children forcibly taken away from them despite there being no proven allegations of abuse, neglect, or any other danger or unfitness. Plaintiffs and the proposed class also share the same legal claims, which assert the same substantive and procedural rights under the Due Process Clause, the asylum statute, and the APA.

71. The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that they be reunified with their children, whether through release or in family detention facilities. In defending their own rights, Ms. L. and Ms. C. will defend the rights of all proposed class members fairly and adequately.

72. The proposed class is represented by counsel from the American Civil Liberties Union Immigrants' Rights Project and the American Civil Liberties Union of San Diego and Imperial Counties. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

73. The members of the class are readily ascertainable through Defendants' records.

74. The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unlawfully separating parents from their young children. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

## CAUSES OF ACTION

## COUNT I

### (Violation of Due Process)

75. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

76. The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Ms. L. and her daughter, Ms. C. and her son, and all proposed class members.

77. Ms. L., Ms. C., their children, and all class members have a liberty interest under the Due Process Clause in remaining together as a family.

78. The separation of the class members from their children violates substantive due process because it furthers no legitimate purpose, not to mention a compelling governmental interest.

79. The separation of the class members from their children also violates procedural due process because it was undertaken without any hearing.

## COUNT II

### (Administrative Procedure Act—Arbitrary and Capricious Practice)

80. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

81. The APA prohibits agency action that is arbitrary and capricious.

82. Defendants' separation of Ms. L., Ms. C., and the other class members from their children without a legitimate justification is arbitrary and capricious and accordingly violates the APA. 5 U.S.C. § 706.

## COUNT III

### (Violation of Asylum Statute)

83. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

84. Under United States law, noncitizens with a well-founded fear of persecution shall have the opportunity to obtain asylum in the United States. 8 U.S.C. § 1158.

85. Defendants' separation of Ms. L., Ms. C., and the other asylum-seeking class members from their children violates federal asylum law, because it impedes their ability to pursue their asylum claims.

## **PRAYER FOR RELIEF**

Petitioners-Plaintiffs request that the Court enter a judgment against Respondents-Defendants and award the following relief:

A. Certify a class of all adult parents nationwide who (1) are or will be detained in immigration custody by the Department of Homeland Security, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

B. Name Ms. L. and Ms. C. as representatives of the class, and appoint Petitioners' counsel as class counsel;

C. Declare the separation of Ms. L., Ms. C., and the other class members from their children unlawful;

D. Preliminarily and permanently enjoin Defendants from continuing to separate Ms. L., Ms. C., and the other class members from their children;

E. Order defendants either to release class members along with their children, or to detain them together in the same facility;

F. Enjoin defendants from removing Ms. L., Ms. C., and the other class members from the country until they are reunited with their children, in the event that they are not permitted to remain in the United States;

G. Require Defendants to pay reasonable attorneys' fees and costs;

H. Order all other relief that is just and proper.

| | | |
|---|---|---|
| 1 | Dated: March 9, 2018 | Respectfully Submitted, |
| 2 | | */s/Lee Gelernt* |
| | Bardis Vakili (SBN 247783) | Lee Gelernt* |
| 3 | ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES | Judy Rabinovitz*<br>Anand Balakrishnan* |
| 4 | P.O. Box 87131<br>San Diego, CA 92138-7131 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 5 | T: (619) 398-4485<br>F: (619) 232-0036 | IMMIGRANTS' RIGHTS PROJECT<br>125 Broad St., 18th Floor |
| 6 | *bvakili@aclusandiego.org* | New York, NY 10004<br>T: (212) 549-2616 |
| 7 | Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES | F: (212) 549-2654<br>*lgelernt@aclu.org* |
| 8 | UNION FOUNDATION<br>IMMIGRANTS' RIGHTS PROJECT | *jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org* |
| 9 | 39 Drumm Street<br>San Francisco, CA 94111 | |
| 10 | T: (415) 343-1198<br>F: (415) 395-0950 | |
| 11 | *samdur@aclu.org* | |