Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*          *Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: March 9, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>CLASS ACTION<br><br>Hearing Date: April 27, 2018<br>Time: TBD<br>Courtroom: 13A<br>Judge: Hon. Dana Sabraw |
| *Respondents-Defendants*. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

    Named Plaintiff: Ms. L. .................................................................................3

    Named Plaintiff: Ms. C. ................................................................................4

    The Class ......................................................................................................5

ARGUMENT ........................................................................................................6

    I.      The Proposed Class Satisfies Rule 23(a)'s Requirements. ...................7

    A. The Proposed Easily Satisfies the Numerosity Requirement ..........7

    B. The Class Presents Common Questions of Law and Fact. ..............9

    C. Typicality: Plaintiffs' Claims Are Typical of  Class Members' Claims. ........................................................................................13

    D. Adequacy: Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Plaintiffs' Counsel Are More Than Qualified to Litigate this Action. ...................................................................14

    E. The Class Is Sufficiently Ascertainable. ......................................16

    II.     This Action Satisfies the Requirements of Rule 23(b)(2). .................18

CONCLUSION...................................................................................................20

Case No. 18-cv-00428-DMS-MDD

1

2

**TABLE OF AUTHORITIES**

**Cases**

3

*Alfaro Garcia v. Johnson*,
  No. 14-cv-1775, 2014 WL 6657591 (N.D. Cal. 2014)...............................15

4

*Ali v. Ashcroft*,
  213 F.R.D. 390 (W.D. Wash. 2003)...............................................................8

5

*Ark. Educ. Ass'n v. Board Of Educ. of Portland, Ark. Sch. Dist.*,
  446 F.2d 763 (8th Cir. 1971).........................................................................8

6

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001).......................................................................10

7

*Arnott v. U.S. Citizenship & Immigration Servs.*,
  290 F.R.D. 579 (C.D. Cal. 2012).........................................................6, 7, 12

8

*Baharona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir. 1999)........................................................................2

9

*Carrillo v. Schneider Logistics, Inc.*,
  No. 11-8557CAS-DTBX, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012).........2

10

*Cervantez v. Celestica Corp.*,
  253 F.R.D. 562 (C.D. Cal. 2008)...................................................................8

11

*Cole v. City of Memphis*,
  839 F.3d 530 (6th Cir. 2016).......................................................................16

12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)........................................................................12

13

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012)......................................................................12

14

*Franco-Gonzales v. Napolitano*,
  No. 10-cv-02211-DMG-DTBX, 2011 WL 11705815
  (C.D. Cal. Nov. 21, 2011)........................................................................7, 15

15

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)......................................................................................11

16

*Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*,
  No. 13-cv-7172 PSG (ASX), 2014 WL 12561074 (C.D. Cal. May 6, 2014)..16,17

17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...........................................................9, 10,13

18

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992)..................................................................13,14

19

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F. 2d 909 (9th Cir. 1964)........................................................................7

20

*Hawker v. Consovoy*,
  198 F.R.D. 619 (D.N.J. 2001)........................................................................9

21

*Hum v. Dericks*,
  162 F.R.D. 628 (D. Haw. 1995).....................................................................8

22

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015)..................................................................16

23

*Johnson v. California*,
  543 U.S. 499 (2005).......................................................................................8

24

*Jordan v. Los Angeles Cty.*,
  669 F.2d 1311 (9th Cir. 1982)........................................................................8

25

*Khoury v. Asher*,
  3 F. Supp. 3d 877 (W.D. Wash. 2014)..........................................................15

26

*LaDuke v. Nelson*,
  762 F.2d 1318 (9th Cir. 1985)......................................................................14

27

*Lamumba Corp. v. City of Oakland*,
  No. 05-cv-2712 MHP, 2007 WL 3245282 (N.D. Cal. Nov. 2, 2007)...............17

28

*Lynch v. Rank,*
   604 F. Supp. 30 (N.D. Cal. 1984)……………………………………………………14
*Lyon v. U.S. Immigration & Customs Enf't,*
   308 F.R.D. 203 (N.D. Cal. 2015)……………………………………………………18
*Marisol A. v. Giuliani,*
   126 F.3d 372, 378 (2d Cir. 1997) ……………………………………………………14
*Mazza v. Am. Honda Motor Co., Inc.,*
   666 F.3d 581 (9th Cir. 2012)………………………………………………………..9,10
*Mendez Rojas, et al. v. Johnson,*
   No. 16-cv-1024-RSM (W.D. Wash. Jan. 10, 2017)……………………………7
*Moreno v. Napolitano,*
   No. 11-cv-5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014)………………17
*Natl. Assn. of Radiation Survivors v. Walters,*
   111 F.R.D. 595 (N.D. Cal. 1986)…………………………………………………....9
*O'Connor v. Boeing N. Am., Inc.,*
   184 F.R.D. 311 (C.D. Cal. 1998)……………………………………………………17
*Orantes-Hernandez v. Smith,*
   541 F. Supp. 351 (C.D. Cal. 1982)…………………………………………………12
*Parsons v.Ryan,*
   754 F.3d 657 (9th Cir. 2014)………………………………………………….....9,13,19
*Perez-Funez v. Dist. Dir., I.N.S.,*
   611 F. Supp. 990 (C.D. Cal. 1984)…………………………………………………7
*Perez-Olano v. Gonzalez,*
   248 F.R.D. 248 (C.D. Cal. 2008)…………………………………………………..11
*Preap v. Johnson,*
   303 F.R.D. 566 (N.D. Cal. 2014)………………………………………………..9, 15
*RILR v. Johnson,*
   80 F. Supp. 3d 164 (D.D.C. 2015)…………………………………………………15
*Rivera v. Johnson,*
   307 F.R.D. 539 (W.D. Wa 2015)…………………………………………………..15
*Santillan v. Ashcroft,*
   No. 04-cv-2686MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004)………...6, 10
*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010)…………………………………………………………………6
*Shelton v. Bledsoe,*
   775 F.3d 554 (3d Cir. 2015)………………………………………………………..16
*Shook v. El Paso Cnty.,*
   386 F.3d 963 (10th Cir. 2004)……………………………………………………...16
*Smith v. Heckler,*
   595 F. Supp. 1173 (E.D. Cal. 1984)……………………………………………….8
*Sueoka v. United States,*
   101 Fed. App'x 649 (9th Cir. 2004)………………………………………………7
*Sweet v. Pfizer,*
   232 F.R.D. 360 (C.D. Cal. 2005)………………………………………………….11
*Wagafe v. Trump,*
   No. 17-cv-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017)…………6
*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)……………………………………………………………..11, 12, 18
*Walters v. Reno,*
   145 F.3d 1032 (9th Cir. 1998)………………………………………………..passim
*Yaffe v. Powers,*
   454 F.2d 1362 (1st Cir.1972)………………………………………………………16
*Young v. Nationwide Mut. Ins. Co.,*
   693 F.3d 532 (6th Cir. 2012)………………………………………………………18

iii

**Rules**

Fed. R. Civ. P. 23(a)………………………………………………….....1, 2, 6, 18
Fed. R. Civ. P. 23(a)(1)…………………………………………………..7
Fed. R. Civ. P. 23(a)(2) …………………………………………………9
Fed. R. Civ. P. 23(a)(4)…………………………………………………14
Fed. R. Civ. P. 23(b)…………………………………………….1, 2, 6, 18
Fed. R. Civ. P. 23(b)(2)………………………………………….16, 18, 19

# INTRODUCTION

A class action lawsuit is appropriate to challenge Defendants' nationwide unlawful practice of separating parents and children absent any showing that the parent presents a danger to the child.  Plaintiffs seek to certify the following nationwide class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All adult parents nationwide who (1) are or will be detained in immigration custody by the Department of Homeland Security, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

The proposed class readily satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a) and is readily ascertainable.

The proposed class includes hundreds of individuals whose minor children have already been taken from them, which is sufficient to satisfy numerosity.  The class raises numerous common legal questions that will generate common answers, including whether Defendants' challenged separation practice violates the Due Process Clause and the Administrative Procedure Act (APA).  The class also raises common factual issues because Plaintiffs and class members are subject to the same practice of keeping parents in immigration facilities separated from their children detained elsewhere.  Plaintiffs' Due Process Clause and APA claims are typical of those whom they seek to represent—that is, other parents who have or will have their children taken from them.  Plaintiffs are also adequately represented by a team of attorneys from the ACLU Immigrants' Rights Project and the ACLU of San

1   Diego and Imperial Counties with significant experience in immigrants' rights

2   issues and class action cases.

3           Plaintiffs' proposed class likewise satisfies Rule 23(b)(2) because Defendants

4   have "acted or refused to act on grounds that apply generally to the class, so that

5   final injunctive relief or corresponding declaratory relief is appropriate respecting

6   the class as a whole."  Because the government has a practice of separating parents

7   from their children without a hearing or any showing of abuse or neglect, they are

8   operating in a manner that is common to all Plaintiffs.  The class as a whole is

9   therefore entitled to an injunction ordering Defendants to reunite class members

10  with their minor children.

11          Accordingly, this Court should grant class certification under Rule 23(b)(2)

12  for purposes of entering Plaintiffs' requested classwide preliminary and permanent

13  injunctions.[1]  *See Carrillo v. Schneider Logistics, Inc*., No. 11-cv-8557, 2012 WL

14  556309, at *9 (C.D. Cal. Jan. 31, 2012) ("courts routinely grant provisional class

15  certification for purposes of entering [preliminary] injunctive relief" under Rule

16  23(b)(2), where the plaintiff establishes that the four prerequisites in Rule 23(a) are

17  also met) (citing *Baharona-Gomez v. Reno*, 167 F.3d 1228, 1233 (9th Cir. 1999)).

---

[1] Plaintiffs also request that they be appointed Class Representatives, and that undersigned counsel be appointed Class Counsel.

# BACKGROUND

## Named Plaintiff: Ms. L.

After fleeing the Democratic Republic of Congo with her 7 year-old daughter, Ms. L. presented herself to border guards at the San Ysidro Port of Entry on November 1, 2017.  After she expressed fear of returning to the Congo, Ms. L. was given a credible fear interview, and the asylum officer determined that she had a credible fear of persecution.  Ms. L. was therefore placed into formal removal proceedings, where she will pursue her asylum claim.  *See* PI Mem., ECF No. 21-1, at 2-3.[2]

When they initially arrived in the United States, Ms. L. and her daughter, S.S., were detained together.  Four days later, however, Ms. L.'s child was taken from her.  With no explanation, the government removed S.S. from the detention center where Ms. L. was held and moved her 2,000 miles away to a facility in Chicago, with the little girl frantically screaming that she did not want to leave her mommy.  The government has never alleged that S.S. would not be safe with her mother, or that Ms. L. is not a fit parent.  And yet Defendants has not allowed Ms. L. and her child to see each other for four months now.  Each time they have been able to speak on the phone, S.S. has been crying and afraid.  Ms. L. is likewise frightened, depressed, and unable to eat or sleep.  *See* PI Mem., ECF No. 21-2, at 3-4.

---

[2] Because Ms. L inadvertently waived her rights in her immigration proceeding, she is currently in the process of requesting that the immigration judge reconsider and reopen her case.

Case No. 18-cv-00428-DMS-MDD

After Ms. L. filed this lawsuit and moved for a preliminary injunction, Defendants released her from custody on March 6, 2018.  They informed her that she would be released mere hours in advance, with no arrangements for where she would stay.  They have not released her child, who remains in custody alone in Chicago.

**Named Plaintiff: Ms. C.**

Ms. C. and her 14 year-old son, J., fled Brazil to seek asylum and came to the United States in late August 2017.  After she entered the United States a few feet, a border guard approached her, and she explained that she wanted to apply for asylum.  Although she was seeking asylum, Ms. C. was nonetheless prosecuted for entering the country illegally, a misdemeanor for which she spent approximately 25 days in jail.  When Ms. C. was sent to jail for this misdemeanor conviction, her son J. was taken away from her and sent to a facility in Chicago.  When she was released from jail, Ms. C. passed a credible fear interview, and was put in removal proceedings, where she is applying for asylum.  Ex. 12.[3]

After serving her misdemeanor sentence, Ms. C. was transferred on September 22, 2017, to the El Paso Processing Center in Texas, an immigration facility.  In early January she was transferred again to the West Texas Detention Facility, which is also known as Sierra Blanca.  Ms. C. was has not seen her son J. since he was taken from her last year.  Even after Ms. C. was released from jail and

---

[3] The exhibits are numbered continuously from the beginning of the case.

Case No. 18-cv-00428-DMS-MDD

sent to an immigration facility, Defendants did not reunite her with her son.  The

government has never alleged that J. would not be safe with her mother, and it has

never made any demonstration that Ms. C. is not a fit parent.[4]

Ms. C. is desperate to be reunited with her son, who has been having a

difficult time emotionally since being separated from him mother.  Ms. C. worries

about him constantly and does not know when she will be able to see him.  They

have only spoken on the phone a handful of times since they were forcibly

separated by Defendants.

**The Class.**

Plaintiffs' experiences are representative of Defendants' practice of forcibly

separating parents from their children without a hearing and without any

demonstration that the parent is endangering the child.  Lawyers and advocates who

represent detained migrant families and children report hundreds of such cases over

the past year.  *See* Declaration of Michelle Brané, Ex. 14, ¶ 5 (noting more than 400

cases of parent-child separation); Declaration of Shalyn Fluharty, Ex. 15, ¶ 2.

(estimating hundreds of children who have been separated from a parent at the

border); Declaration of Mayra Jimenez, Director of the Children's Program at

RAICES, Ex. 13, ¶ 4 ("We have seen over 100 situations of children separated from

their parents at the time of apprehension and continue to see more.").

---

[4] This case concerns only the time in which Ms. C. and other class members are separated from their children while the parent is in immigration custody, and not the period of separation while the parent is in jail for a criminal conviction.

**ARGUMENT**

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010).  To meet these requirements, the "suit must satisfy the criteria set forth in [Rule 23(a)] (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*.

Plaintiffs' proposed class satisfies all four of the Rule 23(a) prerequisites, as well as the judicially implied requirement of ascertainability.  The proposed class likewise meets the requirements for certification under Rule 23(b)(2).

This Court should certify the proposed class in keeping with the numerous court decisions certifying classes in similar actions challenging the federal government's administration of immigration programs.  *See, e.g*., *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) (affirming certification of nationwide class of individuals challenging adequacy of notice in document fraud cases); *Arnott v. U.S. Citizenship & Immigration Servs*., 290 F.R.D. 579 (C.D. Cal. 2012) (certifying nationwide class of immigrant investors challenging USCIS' retroactive application of new rules governing approval petitions to remove permanent residency conditions); *Santillan v. Ashcroft*, No. 04-cv-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents

challenging delays in receiving documentation of their status); *Wagafe v. Trump*, No. 17-cv-0094, 2017 WL 2671254, at *1 (W.D. Wash. June 21, 2017) (certifying nationwide class of naturalization applicants challenging national security screening procedures); *Mendez Rojas, et al. v. Johnson*, No. 16-cv-1024, 2017 WL 1397749 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum seekers challenging defective asylum application procedures).

## I.   THE PROPOSED CLASS SATISFIES RULE 23(a)'s REQUIREMENTS.

### A. The Proposed Class Easily Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Franco-Gonzales v. Napolitano*, No. 10-cv-02211, 2011 WL 11705815, at *6 (C.D. Cal. Nov. 21, 2011) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F. 2d 909, 913-14 (9th Cir. 1964)). No fixed number of class members is required. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Moreover, where a plaintiff seeks injunctive and declaratory relief, the "requirement is relaxed and plaintiffs may rely on [] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass . . . is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579,

586 (C.D. Cal. 2012) (quoting *Sueoka v. United States*, 101 Fed. App'x 649, 653 (9th Cir. 2004)).

Here, the number of class members far exceeds the requirement for numerosity.  Lawyers and advocates report that they are seeing hundreds of cases of families separated after being apprehended together, with adults placed in ICE custody and their children in ORR custody.  *See* Brané Decl., Ex. 14, ¶ 5; Fluharty Decl., Ex. 15, ¶ 2; Jimenez Decl., Ex. 13, ¶4.

The Court can thus reasonably conclude that the proposed class is sufficiently numerous.  *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (noting that "where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (quotation marks omitted); *see also, e.g.*, *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("Courts have certified classes with as few as thirteen members."); *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (class of 20 sufficient); *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (class of 39 sufficient), *vacated on other grounds*, 459 U.S. 810.

Second, in addition to the number of individuals who have already been separated from their children, the proposed class also includes individuals who *will have* a child taken from them.  Hundreds of additional parents are at risk of losing their children.  The presence of such future class members renders joinder

Case No. 18-cv-00428-DMS-MDD

inherently impractical, thereby satisfying the purpose behind the numerosity

requirement. *See, e.g*, *Ali v. Ashcroft*, 213 F.R.D. 390, 408 (W.D. Wash. 2003),

*aff'd*, 346 F.3d 873 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th

Cir. 2005) (quotation marks omitted) ("[W]here the class includes unnamed,

unknown future members, joinder of such unknown individuals is impracticable

and the numerosity requirement is therefore met, regardless of class size.") (quoting

*Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal.

1986)); *Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984) (in injunctive

relief cases, "[j]oinder in the class of persons who may be injured in the future has

been held impracticable without regard to the number of persons already injured");

*Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential

future class members who share a common characteristic, but whose identity cannot

be determined yet is considered impracticable.").

**B. The Class Presents Common Questions of Law and Fact.**

To satisfy commonality, Plaintiffs must show that "there are questions of law

or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s

commonality requirement "has been construed permissively." *Preap v. Johnson*,

303 F.R.D. 566, 585 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016)

(quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998)) (quotation

marks omitted). A plaintiff "need not show . . . that every question in the case, or

even a preponderance of questions, is capable of class wide resolution." *Parsons v.*

*Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quotation marks omitted).  Rather, even one shared legal issue can be sufficient.  *See, e.g.*, *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact"); *Walters*, 145 F.3d at 1046 ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice.").

Moreover, "[i]ndividual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because 'the existence of shared legal issues with divergent factual predicates is sufficient' to satisfy Rule 23." *Santillan v. Ashcroft*, 2004 WL 2297990, at *10 (N.D. Cal. Oct. 12, 2004) (quoting *Hanlon*, 150 F.3d at 1019).  The commonality standard is even more liberal in a civil rights suit like this one, in which "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) .

Plaintiffs' lawsuit raises numerous legal questions common to the proposed class.  All class members assert the same due process right to family integrity. Their constitutional claims present the same legal question of whether Defendants may separate them from their minor children without any hearing and demonstration that they are unfit parents.  Their APA claims raise the common legal issue of whether it is arbitrary and capricious for Defendants to separate a parent and child without providing a reasoned explanation.  And, should the

10

government later provide reasons to separate class members from their children, their claims will raise the common legal question of whether the Due Process Clause permits Defendants to take away their children without providing a fair pre-deprivation process.

Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008) ("Courts have found that a single common issue of law or fact is sufficient.") (citation omitted); *Sweet v. Pfizer*, 232 F.R.D. 360, 367 (C.D. Cal. 2005) (observing that "there must only be one single issue common to the proposed class") (quotation and citation omitted).

Plaintiffs and proposed class members also share a common core of facts: all came to the United States with their children and were subsequently detained; all have since been separated from their children without any allegation or showing that they present a danger to their child; none have been given a fair process in which to contest any allegations that they are an unfit parent. Plaintiffs and proposed class members thus "have suffered the same injury"—separation from their children. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). And that common injury is clearly "capable of classwide resolution." *Id.* Should the Court agree that Defendants' policies or practices violate the Due Process Clause and/or the APA, all who fall within the class will benefit from the requested relief: an injunction

11

preventing Defendants from separating a parent in DHS custody from their children without a hearing or a clear showing that the parent presents a danger to the child. Thus, a common answer as to the legality of the challenged policies and practices will "drive the resolution of the litigation." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 350).

Significantly, moreover, courts have made clear that even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks omitted); *see also Walters*, 145 F.3d at 1046 ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification.  What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); *Arnott*, 290 F.R.D. at 586-87 (factual variations did not defeat certification where core legal issues were similar). Moreover, any factual differences that may exist among Plaintiffs and proposed class members are immaterial to their claims, which challenge Defendants' common separation practice as violating the Due Process Clause, the asylum statute, and the APA.  *See Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) (granting certification in challenge to common agency practices in

asylum cases, even though the outcome of individual asylum cases would depend
on individual class members' varying entitlement to asylum).

### C. Typicality: Plaintiffs' Claims Are Typical of Class Members' Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative
parties [be] typical of the claims or defenses of the class."  The purpose of this
requirement is to "assure that the interest of the named representative aligns with
the interests of the class" as a whole.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497,
508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims
are 'typical' if they are reasonably coextensive with those of the absent class
members."  *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020).  "The
test of typicality is 'whether other members have the same or similar injury,
whether the action is based on conduct which is not unique to the named plaintiffs,
and whether other class members have been injured by the same course of
conduct.'"  *Id*. (citation omitted).

Plaintiffs' claims are typical of the claims of the proposed class, for largely
the same reasons that the class presents common questions of law and fact.  Each
proposed class member has suffered the same injury (separation from their
children), based on the same government practice (separating immigrant parents
and children), in violation of the same constitutional right (due process) and
statutory commands (asylum law and arbitrary and capricious review under the

13

APA).  Plaintiffs' claims are not only typical of proposed class members, they are nearly identical.

Moreover, as with commonality, any factual differences between Plaintiffs and proposed class members are not material enough to defeat typicality.  *See, e.g.*, *Hanlon*, 150 F.3d at 1020 (under "permissive" typicality standard, representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical"); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class."); *cf. Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying Rule 23(b)(2) class despite differences in the exact nature of the harm suffered by class members).

### D. Adequacy: Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Plaintiffs' Counsel Are Qualified to Litigate this Action.

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Walters*, 145 F.3d at 1046 (quotation marks omitted).

Case No. 18-cv-00428-DMS-MDD

1  Plaintiffs' counsel are deemed qualified when they can establish their

2  experience in previous class actions and cases involving the same area of law.

3
4  *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir.

5  1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985).  Here, putative Class

6  Counsel are attorneys from the ACLU Immigrants' Rights Project and ACLU of

7
8  San Diego and Imperial Counties.  *See* Declaration of Spencer Amdur ("Amdur

9  Decl."), Ex. 16.

10  Collectively, putative Class Counsel have extensive and diverse experience

11
12  in complex immigration cases and class action litigation, and Class Counsel also

13  have sufficient resources to litigate this matter to completion.  *Id.*  Attorneys from

14  the ACLU Immigrants' Rights Project and ACLU of San Diego and Imperial

15
16  Counties have been appointed class counsel and successfully litigated similar class

17  action lawsuits in this district and in courts across the country.  *Id.*; *see also, e.g.*,

18  *Alfaro Garcia v. Johnson*, No. 14-cv-1775, 2014 WL 6657591, at *15 (N.D. Cal.

19
20  2014); *Rivera v. Johnson*, 307 F.R.D. 539 at 542-43 (W.D. Wash. 2015); *Franco-*

21  *Gonzales*, 2011 WL 11705815, at *1; *Preap*, 303 F.R.D. at 570; *Khoury v. Asher*, 3

22  F. Supp. 3d 877, 878 (W.D. Wash. 2014); *RILR v. Johnson*, 80 F. Supp. 3d 164,

23
24  181 (D.D.C. 2015).

25  Plaintiffs will fairly and adequately protect the interests of the proposed

26  class, and therefore are adequate class representatives.  Plaintiffs do not seek any

27  unique or additional benefit from this litigation that may make their interests

28

15

different from or adverse to those of absent class members.  Instead, Plaintiffs' aim is to secure injunctive relief that will protect themselves and the entire class from the Defendants' challenged practices and enjoin the Defendants from further violations.  Nor do Plaintiffs or Class Counsel seek financial gain at the cost of absent class members' rights.  Accordingly, Plaintiffs lack any antagonism with the class, their interests align squarely with the other proposed class members, and no collusion is present.

### E. The Class Is Sufficiently Ascertainable.

Although the Ninth Circuit has not yet ruled on whether the judicially implied ascertainability requirement applies to classes certified under Rule 23(b)(2), other circuits have found that it does not.  *See Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many [] other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . ."); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[M]any courts have found Rule 23(b)(2) well suited for cases where the composition of the class is not readily ascertainable."); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2220 (2017) ("[A]scertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir.1972) (no ascertainability

16

requirement for Rule 23(b)(2) classes); *accord In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597-98 (N.D. Cal. 2015).

In any event, the proposed class is sufficiently ascertainable because it is "administratively feasible" to ascertain whether an individual is a member.  *Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, No. 13-cv-7172, 2014 WL 12561074, at *5 (C.D. Cal. May 6, 2014) (quotation marks omitted) (finding ascertainable proposed class of individuals who are deaf or hard of hearing and require closed captioning).  Here, membership in the class is defined by clear and objective criteria: class members are in immigration detention, their children have been taken from them without a hearing and showing of unfitness, and their children are held elsewhere by ORR.  *See supra* at 3.  These parameters are "'precise, objective, and presently ascertainable.'"  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (observing that class definitions for actions maintained under Rule 23(b)(2) involve less precision than actions for damages requiring notice to the class); *see also, e.g.*, *Lamumba Corp. v. City of Oakland*, No. 05-cv-2712, 2007 WL 3245282, at *4 (N.D. Cal. Nov. 2, 2007) ("Plaintiffs putative class is based on the objective factors of business ownership, race, and indebtedness to the City, and therefore is sufficiently defined.").  And the fact that some administrative process may be required to identify class members does not undermine ascertainability.  *See, e.g.*, *Moreno v. Napolitano*, No. 11-cv-5452, 2014 WL 4911938, at *6-7 (N.D. Ill. Sept. 30, 2014) (finding that the

necessity of manually reviewing tens of thousands of detainer forms to identify

class members did not undermine ascertainability) (citing *Young v. Nationwide*

*Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)).

## II.    This Action Satisfies the Requirements of Rule 23(b)(2).

In addition to satisfying the four requirements of Rule 23(a), a class must

also come within one of the subsections of Rule 23(b).  Certification of a class

under Rule 23(b)(2) requires that "the party opposing the class has acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2).  In the Ninth Circuit, "[i]t is sufficient" to meet Rule

23(b)(2)'s requirements that "class members complain of a pattern or practice that

is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047.  Indeed,

Rule "23(b)(2) was adopted in order to permit the prosecution of civil rights

actions" like this one. *Id.*  "'The key to the (b)(2) class is the indivisible nature of

the injunctive or declaratory remedy warranted—the notion that the conduct is such

that it can be enjoined or declared unlawful only as to all of the class members or as

to none of them.'" *Lyon v. ICE*, 308 F.R.D. 203, 213 (N.D. Cal. 2015) (quoting

*Wal-Mart*, 131 S. Ct. at 2557).

Rule 23(b)(2)'s requirements are plainly met here.  Plaintiffs ask the Court to

enjoin Defendants' practice—common to all class members—of separating them

from their children without a hearing and showing that they are unfit or present a

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

danger to their children.  If that practice violates due process or the APA, it does so as to all proposed class members.  A single injunction would protect both Plaintiffs and the other class members from this same practice.  *See, e.g.*, *Walters*, 145 F.3d at 1047 (certifying Rule 23(b)(2) class based on Defendants' practice of providing deficient notice of deportation procedures).

This relief would benefit Plaintiffs as well as all members of the proposed class in the same fashion.  No individual class member would be entitled to a different injunction or declaratory judgment.  The requested relief would address these policies or practices in a single stroke, and thus the proposed class plainly warrants certification under Rule 23(b)(2).  *See Parsons*, 754 F.3d at 689 (finding declaratory and injunctive relief proper as to the whole class where "every [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice").

Because Plaintiffs and proposed class members all have suffered or will suffer the same constitutional and statutory violations as a result of the government's challenged practice, and because they seek singular injunctive and corresponding declaratory relief that remedy those injuries, certification under Rule 23(b)(2) is proper.

Case No. 18-cv-00428-DMS-MDD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appoint Plaintiffs as Class Representatives; and appoint the Plaintiffs' Counsel from the ACLU Immigrants' Rights Project and the ACLU of San Diego and Imperial Counties as Class Counsel.

Dated: March 9, 2018                    Respectfully Submitted,

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

*/s/Lee Gelernt*
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2616
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

*Ms. L. and Ms. C.  v. U.S. Immigration and Customs Enforcement, et al.*

## EXHIBITS TO MEMORANDUM IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

### TABLE OF CONTENTS

| EXHIBIT | DOCUMENT | PAGES |
|---------|----------|-------|
| 12. | Declaration of Ms. C (Restricted) | 22-27 |
| 13. | Declaration of Mayra Jimenez | 28-32 |
| 14. | Declaration of  Michelle Brane | 33-39 |
| 15. | Declaration of Shalyn Fluharty | 40-45 |
| 16. | Declaration of Spencer E. Amdur | 46-60 |

# Exhibit 12

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*     *Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs,* | |
| v. | |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | Date Filed: March 9, 2018 |
| | **RESTRICTED** |
| | **DECLARATION OF MS. C.** |
| *Respondents-Defendants.* | |

1

2    Spencer E. Amdur (SBN 320069)
     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
3    IMMIGRANTS' RIGHTS PROJECT
     39 Drumm Street
4    San Francisco, CA 94111
     T:  (415) 343-1198
5    F:  (415) 395-0950
     *samdur@aclu.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**DECLARATION OF ████████████ C███████**</u>

I, ████████ C██████, make the following declaration based on my personal knowledge

and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true

and correct:

1. I am one the named Plaintiffs-Petitioners in this case.

2. I am a citizen of Brazil and am seeking asylum in the United States.  When I came to the

   United States, I passed my initial asylum interview ("credible fear interview"), and am

   now in immigration proceedings before an immigration judge to seek asylum.

1

3. Although I was seeking asylum, I was convicted of the misdemeanor of entering the country illegally. When a border guard approached me a few feet after I entered the country, I explained I was seeking asylum. I was still prosecuted. I spent 25 days in jail for the misdemeanor.

4. After my jail sentence, I was sent on September 22, 2017, to an immigration detention center in Texas called the El Paso Processing Center. On or around January 2, 2018, I was taken from the El Paso Processing Center and transferred to the West Texas Detention Facility, also known as Sierra Blanca. I have been in that detention center since that date. I am attempting to proceed with my asylum claim from detention.

5. My biological son, J., is 14 and came with me from Brazil. He is also seeking asylum.

6. When I was sent to jail for my conviction, my son was taken from me and sent to a facility in Chicago

7. I know that the jail did not allow children to stay with their parents. But I have now out of jail and have been in immigration detention since September 22, 2017. I am desperate to be reunited with my son. I would like to be released with my son so we can live with friends in the United States while we pursue our asylum cases. But if we cannot be released, I would like us to be detained together.

8. I worry about J. constantly and don't know when I will see him. We have talked on the phone only a five or six times since he was taken away from me.

9. I know that J. is having a very hard time detained all by himself without me. He is only a 14 year-old boy in a strange country and needs his parent.

10. I hope I can be with my son very soon. I miss him and am scared for him.

2

11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge. Executed in Sierra Blanca, Texas, on March 7, 2018.



3

# Exhibit 13

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*          *\*Admitted Pro Hac Vice*
*Additional counsel on next page*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: March 9, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **DECLARATION OF MAYRA JIMENEZ** |
| *Respondents-Defendants*. | |

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

## DECLARATION OF MAYRA JIMENEZ

I, Mayra Jimenez, make the following declaration based on my personal knowledge and declare

under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an attorney licensed to practice law in Texas since 2012. I received my J.D. degree

   from St. Mary's University Law School. I am the Director of the Children's Program at

   RAICES, an organization that provides free and low-cost legal services to immigrant

1

children, families, and refugees in Central and South Texas. I supervise a staff of 55, including lawyers and legal assistants. I regularly represent unaccompanied children in removal proceedings and before the U.S. Citizenship and Immigration Services. The following is based upon my personal knowledge and that obtained through my capacity as Director of the RAICES Children's Program.

2.  Based on our direct representation work and experience, we understand that there is a large number of non-citizen parents in ICE detention who have been separated from their children by the U.S. Department of Homeland Security (DHS), with the children being sent to separate facilities and placed in the custody of the U.S. Office of Refugee Resettlement (ORR).

3.  All of these families were apprehended together before being separated by DHS. In some cases both the parent and child are placed into immigration proceedings, but the child is taken away from the parent. The children in these cases range from toddlers to young teenagers.

4.  We have seen over 100 situations of children separated from their parents at the time of apprehension and continue to see more.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge and experience.

Executed in San Antonio, Texas on March 8, 2018.

2

# Exhibit 14

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*          *Admitted Pro Hac Vice*
*Additional counsel on next page*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: March 9, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **DECLARATION OF MICHELLE BRANE** |
| *Respondents-Defendants*. | |

1

2   Spencer E. Amdur (SBN 320069)
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
3   IMMIGRANTS' RIGHTS PROJECT
    39 Drumm Street
4   San Francisco, CA 94111
    T:  (415) 343-1198
5   F:  (415) 395-0950
    *samdur@aclu.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF MICHELLE BRANÉ</u>

I, Michelle Brané, make the following declaration based on my personal knowledge and declare

under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I have been the Director of the Migrant Rights and Justice Program at the Women's

   Refugee Commission since 2006. I am a graduate of the Georgetown University Law

   Center. The Women's Refugee Commission conducts research, develops policy

   recommendations and advocates on behalf of displaced and refugee women, children, and

1

families.  I have been studying the practices around the detention of families and family separation due to immigration detention for over 10 years.

2. As the director of a program focused on advocating for the rights of migrants in the United States I regularly monitor practices and policies of the United States Department of Homeland Security (DHS) and supervise four additional staff.  We conduct monitoring visits of U.S. immigration detention facilities around the country; conduct research on DHS and Health and Human Services, Office of Refugee Resettlement (HHS, ORR) practices with respect to border security and immigration policy and practice; work closely with legal service providers and social service agencies that provide services to immigrant men, women, and children; and interview migrants about their experiences in crossing the border, accessing asylum procedures, and in immigration detention.  We publish reports and share our findings and recommendations with DHS, HHS, and Congress.  My staff and I have visited over 45 adult, children, and family detention facilities.

3. Based on our research, my conversations with multiple people in my office and other offices – including legal service providers and social service providers for adults and children, and visits to the border and to detention centers, I understand that there is a large number of non-citizen parents in ICE detention who have been separated from their children, with the children being sent to separate facilities under the Office of Refugee Resettlement.

4. All of these families were apprehended together before being separated.  In all of the cases, adults and parents have been separated and are held separately in detention. In some cases, both the parent and child are placed into immigration proceedings, but the

2

child is taken away from the parent.  In others, families were initially separated because the parent was prosecuted for criminal immigration violations although they announced a fear of return and intended to seek asylum or other fear-based claims for relief.  In these cases, the parents were transferred to the custody of the Department of Justice Bureau of Prisons (BOP) and their children were placed in ORR custody.  After release from BOP custody upon conclusion of their criminal case, the parents are returned to custody of ICE but are not reunited with their children.

5. The total number of cases has been difficult to track because neither DHS nor HHS keep trackable records of the separations, and the majority of immigration detainees do not have attorneys who can document their case.  However, we have been able to identify separation of parents from children at the border in at least 429 cases collected from our own experience, legal service providers, attorneys, and social service agencies around the country.

6. While the Women's Refugee Commission acknowledges that the separation of an immigrant child from an adult with whom they are traveling may be appropriate in certain cases where there is substantiated reason to suspect that the adult and child are not in fact related, or reason to suspect that the child is in imminent physical danger from the adult, this has not been shown in any way to be the case in the above referenced identified cases.

7. The children in these cases range from toddlers to young teenagers.

8. I have no reason to believe the practice of separating parents and their children is ending at any point in the future.  In fact, I have been informed at various times off the record, by government officials, that there are discussions and plans in place to expand the practice.

3

Exhibit 14, Page 38

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge.

Executed in Washington, DC on March 8, 2018.

_____

4

# Exhibit 15

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*      *\*Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: March 9, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **DECLARATION OF SHALYN FLUHARTY** |
| *Respondents-Defendants*. | |

1

2   Spencer E. Amdur (SBN 320069)
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
3   IMMIGRANTS' RIGHTS PROJECT
    39 Drumm Street
4   San Francisco, CA 94111
    T:  (415) 343-1198
5   F:  (415) 395-0950
    *samdur@aclu.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF SHALYN FLUHARTY</u>

I,  <u>Shalyn Fluharty</u>, make the following declaration based on my personal knowledge and

declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and

correct:

    1.  I am an attorney and have been licensed and admitted in the State of California since

        2010. I have worked in non-profit organizations in California, Chicago, New York and

        Texas providing services to detained unaccompanied children. I currently serve as the

        Managing Attorney of the Dilley Pro Bono Project, where I provide legal services to

1

families who are detained in Dilley, Texas in collaboration with a national volunteer network and seven full-time staff who I supervise.

2. I have personal knowledge of the ongoing separation of parents and children along the U.S.-Mexican border from my clients. I also am frequently asked to provide technical assistance to attorneys who represent non-citizen children who have been placed in the care and custody of the Office of Refugee Resettlement. I am aware of large numbers of children – although I cannot say the exact amount, I would estimate hundreds - who have been separated from a parent at the border. Mothers or fathers who have been separated from their children were initially apprehended together, and later separated while in the custody of the Department of Homeland Security.  In some cases both the parent and child are placed into immigration proceedings before the Executive Office of Immigration Review, but the child is taken away from the parent.  In other cases, upon initial separation the parent was prosecuted for criminal immigration violations although they announced a fear of return to their country of origin and the intention to seek asylum or other fear-based claims for relief. Upon separation the parents were transferred to the custody of the Bureau of Prisons and their children were placed in ORR custody.  After release from BOP custody upon conclusion of their criminal case, the parents are returned to ICE custody but not reunited with their children.

3. In all, parents have been forcibly separated from their children and placed in detention for extended periods of time without any information regarding their whereabouts, safety, or wellbeing.

4. I have no reason to believe the practice of separating parents and their children will end in the future, as I continue to hear new incidents of family separation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge.

Executed in Dilley, Texas  on March 8, 2018.

3

# Exhibit 16

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

*Attorneys for Petitioners-Plaintiffs*        *Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. and Ms. C.,<br><br>                    *Petitioners-Plaintiffs*,<br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement,<br><br>                    *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD<br><br>Date Filed: March 9, 2018<br><br>**DECLARATION OF SPENCER E. AMDUR** |

1

2    Spencer E. Amdur (SBN 320069)
     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
3    IMMIGRANTS' RIGHTS PROJECT
     39 Drumm Street
4    San Francisco, CA 94111
     T:  (415) 343-1198
5    F:  (415) 395-0950
     *samdur@aclu.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 16, Page 48

I, Spencer E. Amdur, make the following declaration based on my personal

knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and correct:

1.      I am a Staff Attorney at the ACLU Immigrants' Rights Project (IRP).

IRP is co-counsel for Plaintiffs in the above-captioned case.  I submit this

declaration in support of Plaintiffs' Motion for Class Certification to address the

qualifications of Plaintiffs' counsel to serve as Class Counsel in this proposed class

action.

**Lee Gelernt**

2.      Lee Gelernt has been an attorney with the American Civil Liberties

Union since 1992.  He currently holds the positions of Deputy Director of the

ACLU's national Immigrants' Rights Project, and Director of the Project's Program

on Access to the Courts.

3.      Mr. Gelernt is a 1988 graduate of Columbia Law School, where he

was a Notes and Comments Editor of the Law Review.  After graduation, Mr.

Gelernt served as a law clerk to the late-Judge Frank M. Coffin of the First Circuit

U.S. Court of Appeals.

4.      Mr. Gelernt is admitted to practice in New York.  He has specializes in

the area of immigration.  He has argued dozens of notable civil rights cases at all

levels of the federal court system, including in the United States Supreme Court,

the Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth,

Ninth, and Eleventh Circuits, and in numerous district courts around the country. He has been counsel in and argued many class action immigration cases, including recently *Hamama v. Adducci*, __ F. Supp. 3d ___, 2017 WL 2953050 (E.D. Mich. July 11, 2017); *Devitri v. Cronen*, No. CV 17-11842-PBS, 2017 WL 5707528 (D. Mass. Nov. 27, 2017), *Ibrahim v. Acosta*, No. 17-CV-24574, 2018 WL 582520, at *1 (S.D. Fla. Jan. 26, 2018), and *Nak Kim Chhoeun v. Marin*, 2018 WL 571503, at *1 (C.D. Cal. Jan. 25, 2018).   He has also testified as an expert before the United States Senate on immigration issues.

5.      In addition to his work at the ACLU, Mr. Gelernt is adjunct professor at Columbia Law School, and for many years taught at Yale Law School as an adjunct.

6.      For his litigation work on immigration cases, Mr. Gelernt has received several honors.  In 2002 received the 13th Annual Public Interest Achievement Award from Columbia University's Public Interest Law Foundation.  The American Immigration Lawyers Association has also twice awarded him their national prize for excellence in litigation for his civil rights work on behalf of the immigrant community.

**Judy Rabinovitz**

7.      Judy Rabinovitz Judy Rabinovitz is Deputy Director and Director of Detention and Federal Enforcement Programs of IRP.  She is admitted to practice in New York and has been admitted to practice before numerous federal courts,

2

including the U.S. Supreme Court; the U.S. Courts of Appeals for the First, Second,

Third, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits; and the U.S.

District Courts for the Central District of California, District of Colorado, Eastern

District of New York, and Southern District of New York.  She graduated from

New York University Law School in 1985.  She has worked at IRP since 1988.  She

has also served as adjunct faculty at New York University Law School since 1997.

8.      Ms. Rabinovitz is one of the nation's leading civil rights attorneys

working in the area of immigration detention.  She was lead counsel and argued

before the U.S. Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003) (challenge

to mandatory detention statute), and played key roles in the litigation culminating in

*Zadvydas v. Davis*, 533 U.S. 678 (2001) (striking down indefinite detention of post-

final order deportees who could not be removed), and *Clark v. Martinez*, 543 U.S.

371 (2005) (holding that *Zadvydas* limitation on indefinite detention applies to

noncitizens apprehended at the border).

9.      Ms. Rabinovitz has also served as lead counsel, co-counsel, or counsel

for *amici curiae* in numerous other detention cases in the federal courts of appeals,

including: *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (argued) (requiring

bond hearings for noncitizens detained six months or longer under post-final order

detention statute); *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (amicus counsel)

(requiring that the government justify continued prolonged immigration detention

by clear and convincing evidence); *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir.

3

2010) (certifying class of noncitizens detained for six months without adequate bond hearings while their immigration cases are pending); *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006) (holding that asylum seeker could not be subject to prolonged and indefinite immigration detention as national security threat); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) (ordering bond hearing for mandatory detainee where removal proceedings were not "expeditious"); *Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (en banc) (affirming injunction that held that mandatory detention statute applies only where the immigration authorities take custody of an individual upon their release from relevant criminal custody) (amicus counsel and counsel of record in companion case, *Gordon v. Holder*, 13-2509); *Gayle v. Warden, Monmouth Cty. Correctional Institution*, 838 F.3d 297 (3d Cir. 2016) (class action challenging the mandatory detention of individuals with substantial challenges to removal in New Jersey); *Leslie v. Attorney General*, 678 F.3d 265 (3d Cir. 2012) (argued as amicus counsel in pro se case) (holding that detainees cannot be penalized for the time required to pursue bona fide challenges to removal in assessing reasonableness of their prolonged detention); *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011) (argued as amicus counsel in pro se case) (holding that mandatory detention statute only authorizes such detention for a "reasonable" period of time); *Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) (holding that immigration detainees are not barred from challenging their detention in a class action); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (argued) (holding that

mandatory detention statute only authorizes such detention for a "reasonable" period of time); *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc) (argued) (striking down indefinite detention of excludable noncitizens).

10.     Ms. Rabinovitz has also served as lead counsel or co-counsel in district court litigation concerning the detention and due process rights of noncitizens facing removal.  *See, e.g.*, *Hamama v. Adducci*, __ F. Supp. 3d ___, 2017 WL 2953050, at *12 (E.D. Mich. July 11, 2017) (granting classwide stay of removal of Iraqi nationals facing severe persecution in Iraq); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C 2015) (granting classwide preliminary injunction prohibiting government from detaining women and children seeking asylum based on desire to deter others from migrating).  She has also served as co-counsel or amicus counsel in other district court matters related to immigration detention.  *See, e.g., Alli v. Decker*, No. 4:09-cv-00698 (M.D. Pa), 644 F. Supp. 2d 535 (M.D. Pa. 2009), 650 F.3d 1007 (3d Cir. 2011) (class action challenging prolonged mandatory detention of immigrants held in Pennsylvania).

11.     Through these cases and others, Ms. Rabinovitz has come to have distinctive knowledge and specialized skill in the area of immigrants' rights litigation in the federal courts and immigration detention in particular. In addition, Ms. Rabinovitz serves as a resource for nonprofit, pro bono, and private attorneys litigating immigration detention cases throughout the country. She has provided advice and editorial assistance to dozens of attorneys during this time, and shared

IRP's briefing in these and other cases on many occasions. Ms. Rabinovitz has also taught continuing legal education workshops on immigration detention litigation.

**Bardis Vakili**

12.     Bardis Vakili is a Senior Staff Attorney with the ACLU of San Diego & Imperial Counties (ACLU SDIC), licensed to practice before the courts of the State of California, the United States Court of Appeals for the Ninth Circuit, and United States District Courts for the Southern, Central, and Northern Districts of California.

13.     Mr. Vakili has served as lead counsel or co-counsel in numerous cases in the federal courts of appeals involving immigrants' rights, including the rights of detained asylum seekers. *See Gomez-Sanchez v. Sessions*, Case No. 14-72506 (9th Cir.) (pending challenge to precedent decision by Board of Immigration Appeal barring consideration of mental illness in eligibility for withholding of removal); *Vanegas Arrubla v. Holder,* No. 07-72764 (9th Cir. 2011) (successful appeal of denial of asylum to Colombian detainee), *Kakla v. Holder*, No. 08-72856 (9th Cir. 2008) (successful appeal of asylum case involving detained Iraqi ex-police officer).

14.     Mr. Vakili has also served as lead counsel or co-counsel in numerous cases in federal district court involving immigrants' rights, including class action cases.  *See, e.g.*, *Santander-Leyva v. Baker*, No. 08 CV 01485 (S.D. Cal. 2008) (habeas petition securing release of transgender immigrant detainee); *Sanchez de Gomez v. Baker*, No. 10 CV 652 (S.D. Cal. 2010) (habeas petition securing release

of mentally disabled immigrant detainee); *Hamdi v USCIS* Case No. 5:10 CV-05995 (C.D. Cal 2011) (successful citizenship claim on behalf of Egyptian national); *Olivas v. Whitford*, Case No. 17-CV-1434 (S.D. Cal 2014) (citizenship claim against Border Patrol, appeal pending at the Ninth Circuit); *Varela v. USCIS*, Case No. 17-CV-2490 (naturalization delay for deported U.S. veteran). *Lopez-Venegas v. Johnson*, No. 13-cv-03972, ECF No. 104 (C.D. Cal. Feb. 25, 2015) (order approving class settlement securing, inter alia, return to the United States of immigrants removed through administrative voluntary departure); *Cancino-Castellar v. Nielsen*, No. 17-CV-00491 (S.D. Cal 2017) (pending class action on behalf of immigrants detained for extended periods without presentment).

15.     In addition, Mr. Vakili has extensive experience advocating for the rights of immigrant detainees in removal proceedings. As an Immigrants' Rights Consultant for the ACLU of Southern California, he has provided technical and legal assistance to hundreds of *pro se* immigrant detainees in removal proceedings in the Los Angeles area.  In about four years as Political Asylum Director for Casa Cornelia Law Center in San Diego, he has represented more than 100 immigrant detainees in removal proceedings and assesses dozens of intakes every week from detained immigrants facing removal proceedings.  In his current position, he performs monthly legal rights trainings to *pro se* immigrant detainees in Imperial County.  In 2008, he was a co-awardee of the Daniel Levy Award from the National Lawyers Guild's National Immigration Project.  And in 2017, he was named a

California Lawyer Attorney of the Year for his work on behalf of deported United States veterans, including co-authoring a detailed report on the topic entitled *Discharged, Then Discarded*.

**Anand Balakrishnan**

16.     Anand Balakrishnan is a Staff Attorney at the ACLU's Immigrants' Rights Project.  He graduated from the Yale Law School in 2009.

17.     Before joining the ACLU and between September of 2009 and September of 2014, he practiced as an attorney in the Law Office of Sheehan and Reeve in New Haven, CT, with a primary focus on criminal defense in the state and federal systems and a secondary focus on civil rights and impact litigation.  During this time, his federal criminal docket included trial and appeal in felonies and capital prosecutions.  His state criminal docket included representation of clients charged with capital felony, murder and serious felonies at trial, appeal, and post-conviction review.  Some criminal matters included: *United States v. Syed Talha Ahsan*, 3:06CR194 (D.Conn.) (JCH) (material support prosecution of individual extradited from U.K. alleging support of al-Qaeda; sentenced to time served); *Daniel Webb v. Warden*, CV00003239, 2011 WL 724774 (Conn. Sup. Ct. 2011) (collateral challenge to death sentence); *Vernon Horn v. Warden*, CV010456995, 2014 WL 3397826 (Conn. Sup. Ct. 2014) (collateral challenge to murder conviction); *In re Death Penalty Disparity Claims*, CV05-4000632, 2013 WL

8

5879422 (Conn. Sup. Ct. 2013) (challenge to racial and other disparities in administration of death penalty).

18.     Experience (including class action experience) specific to federal court challenges to immigration law includes:  *Hamama v. Adducci*, __ F. Supp. 3d ___, 2017 WL 2953050 (E.D. Mich. July 11, 2017) (granting classwide stay of removal of Iraqi nationals facing severe persecution in Iraq); *Devitri v. Cronen*, 2018 WL 661518 (D. Mass. Feb. 1, 2018); *Gayle v. Warden, Monmouth Cnty Correctional Institution*, 838 F.3d 297 (3d Cir. 2016) (class action challenging the mandatory detention of individuals with substantial challenges to removal in New Jersey); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) (granting classwide preliminary injunction prohibiting government from detaining women and children seeking asylum based on desire to deter others from migrating); *Rivera v. Holder*, 307 F.R.D. 539 (W.D. Wash. 2015) (class action challenging immigration bond procedures).

**Spencer Amdur**

19.     I am a Staff Attorney at the ACLU's Immigrants' Rights Project.  I am a member of the bars of California and Pennsylvania, and I am admitted to practice in the U.S. Courts of Appeals for the Fourth and Fifth Circuits, and the U.S. District Courts for the Southern District of Ohio and Southern District of California.  I graduated from Yale Law School in 2013 and served as a Law Clerk to the Honorable Judith W. Rogers of the U.S. Court of Appeals for the D.C. Circuit.

Prior to my work at IRP, I was a Trial Attorney at the Federal Programs Branch of the Civil Division within the U.S. Department of Justice. And before my clerkship, I served as an Arthur Liman Public Interest Fellow at the Lawyers' Committee for Civil Rights in San Francisco.

20. At IRP I litigate complex immigration-related cases at all levels of the federal courts. *See, e.g.*, *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017) (staying in part a preliminary injunction of an Executive Order barring nationals of certain countries from entering the United States); *City of El Cenizo v. State of Texas*, 264 F. Supp. 3d 744 (W.D. Tex. 2017) (enjoining parts of state immigration law), *stayed in part*, 2017 WL 4250186 (5th Cir. Sept. 25, 2017); *Roy v. County of Los Angeles*, No. 12-cv-9012, 2018 WL 914773 (C.D. Cal. Feb. 7, 2018) (granting summary judgment as to certain subclasses in class action challenge to federal and local immigration detention policies); *Texas v. Travis Cty.*, 272 F. Supp. 3d 973 (W.D. Tex. 2017) (dismissing lawsuit seeking declaration of state immigration law's constitutionality), *appeal pending*; *P.K. v. Tillerson*, 1:17-cv-01533 (D.D.C. *filed* 2017) (challenge to State Department policy denying visas to winners of the Diversity Visa Lottery); *Al Mowafak v. Trump*, No. 3:17-cv-557 (N.D. Cal. *filed* 2017) (challenge to restrictions on refugee admissions). I also represent amici in a number of cases involving the federal government's administration of the immigration laws. *See, e.g.*, *State of Hawaii v. Trump*, 871 F.3d 646 (9th Cir. 2017) (challenge to policy barring certain close family members

Exhibit 16, Page 58

of U.S. persons from entering the United States); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933 (N.D. Ill. 2017) (granting injunction against immigration-related spending conditions); *City of Philadelphia v. Sessions*, --- F. Supp. 3d ---, 2017 WL 5489476 (E.D. Pa. Nov. 15, 2017) (same); *County of Santa Clara v. Trump*, No. 17-17480 (9th Cir.) (reviewing injunction of immigration-enforcement Executive Order).

21.    Outside the immigration context, I have served as counsel in a variety of cases raising complex questions of administrative law.  *See, e.g.*, *Bd. of Ed. of the Highland Local Sch. Dist. v. U.S. Dep't of Ed.*, 208 F. Supp. 3d 850 (S.D. Ohio) (argued) (preliminary injunction proceedings involving APA challenges to the Department of Education's Title IX guidance); *South Carolina v. United States*, 221 F. Supp. 3d 684 (D.S.C. 2016) (argued) (APA challenge to Department of Energy's administration of nuclear nonproliferation program); *TEXO ABC/AGC v. Perez*, No. 3:16-cv-1998, 2016 WL 6947911 (N.D. Tex. Nov. 28, 2016) (denying preliminary injunction in APA challenge to a new Department of Labor regulation); *McCrory v. United States*, 5:16-cv-238 (E.D.N.C. *filed* 2016) (APA challenge to Department of Education interpretive guidance); *Privacy Matters v. Dep't of Ed.*, 0:16-cv-3015 (D. Minn. *filed* 2016) (same); *Minnesota Children's Hospital v. HHS*, 0:16-cv-4064 (D. Minn. *filed* 2016) (APA challenge to Department of Health and Human Services policy guidance).

Exhibit 16, Page 59

22.     Finally, I have worked with refugees and asylum seekers in several contexts.  As a law student, I successfully represented a Peruvian woman seeking asylum in removal proceedings.  And as a Fellow at the Lawyers' Committee for Civil Rights, I participated in a referral program that screened potential asylum cases, referred viable asylum cases to pro bono attorneys, and supported those attorneys as they represented asylum-seeking clients both at the Asylum Office and in Immigration Court.

23.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge. Executed in San Francisco, California on March 8, 2018.

Spencer E. Amdur

Exhibit 16, Page 60