CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation (OIL)
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director, OIL District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

Attorneys for Federal Respondents-Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>       Petitioners-Plaintiffs,<br><br>  vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>       Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>DATE: March 29, 2018<br>TIME: 1:30 p.m.<br>Hon. Dana M. Sabraw<br><br>**RESPONDENTS' RESPONSE IN OPPOSITION TO PETITIONER Ms. L's MOTION FOR PRELIMINARY INJUNCTION[1]** |

---

[1] Petitioner Ms. L's instant motion has not been amended or supplemented to include anything that was added in the subsequently filed First Amended Complaint.

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 3

        PROCEDURAL HISTORY OF THIS CASE.................................................... 7

III. ARGUMENT......................................................................................................... 8

    A.   PRELIMINARY INJUNCTION STANDARD............................................ 8

    B.   MS. L's CLAIMS ARE MOOT .................................................................. 9

    C.   NO AUTHORITY TO ORDER RELEASE OR
          TRANSFER OF MS. L ..............................................................................10

    D.   NO CONSTITUTIONAL RIGHT TO JOINT DETENTION....................14

          1.   MS. L IS ASKING THIS COURT TO MAKE A NEW RULE
              OF CONSTITUTIONAL LAW...........................................................14

          2.   SUBSTANTIVE DUE PROCESS.......................................................17

          3.   PROCEDURAL DUE PROCESS .......................................................18

    E.   BALANCE OF HARDSHIPS TIPS IN FAVOR OF THE
          GOVERNMENT ........................................................................................19

IV.  CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

PAGE

## CASES

*Abdala v. INS*,
   488 F.3d 1061 (9th Cir. 2007) ................................................................. 9

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) ............................................................... 16, 17

*Altagracia v. Sessions*,
   No. 16-cv-6647, 2017 WL 908211 (W.D.N.Y. Mar. 7, 2017) ..................... 12

*Ambriz v. Coca Cola Co.*,
   No. 13-CV-03539-JST, 2014 WL 296159 (N.D. Cal. Jan. 27, 2014).............. 7

*Amochaev v. Citigroup Glob. Markets Inc.*,
   No. C-05-1298 PJH, 2007 WL 484778 (N.D. Cal. Feb. 12, 2007)................. 7

*Avramenkov v. I.N.S.*,
   99 F. Supp. 2d 210 (D. Conn. 2000) ...................................................... 13

*Blackie's House of Beef, Inc. v. Castillo*,
   659 F.2d 1211 (D.C. Cir. 1981)............................................................... 8

*Comm. of Cent. Am. Refugees v. INS*,
   795 F.2d 1434 (9th Cir. 1986).............................................................. 13

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ........................................................................... 17

*D.B. v. Cardall*,
   826 F.3d 721 (4th Cir. 2016) ........................................................... 9, 18

*Demore v. Kim*,
   538 U.S. 510 (2003) ........................................................................... 12

*Duchesne v. Sugarman*,
   566 F.2d 817 (2d Cir. 1977) ................................................................ 15

*Dukes v. Wal–Mart Stores, Inc.*,
   No. 1–cr–2252–MJJ, 2001 WL 1902806 (N.D. Cal. Dec. 3, 2001) ............... 7

*Edwards v. Johnson*,
   209 F.3d 772 (5th Cir. 2000) .............................................................. 16

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ........................................................................... 16

*Gallanosa v. United States*,
   785 F.2d 116 (4th Cir. 1986)................................................................ 16

*Gandarillas-Zambrana*,
 44 F.3d ............................................................................................................. 13

*Garcia v. Google, Inc.*,
 786 F.3d 733 (9th Cir. 2015) .......................................................................... 8

*Gordon v. Mule*,
 153 F. App'x 39 (2d Cir. 2005) ..................................................................... 16

*Halet v. Wend Investment Co.*,
 672 F.2d 1305 (9th Cir. 1982) ....................................................................... 15

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
 No. 08cv1166-IEG, 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009) ................. 2

*Heartland Acad. Comm. Church v. Waddle*,
 427 F.3d 525 (8th Cir. 2005) ......................................................................... 15

*I.N.S. v. St. Cyr*,
 533 U.S. 289 (2001) ........................................................................................ 14

*Jackson v. City of Columbus*,
 194 F.3d 737 (6th Cir. 1999) ....................................................................... 2, 4

*Jennings v. Rodriguez*,
 No. 15-1204, 2018 WL 1054878 (U.S. Feb. 27, 2018) .................................. 12

*Jordan v. Jackson*,
 15 F.3d 333 (4th Cir. 1994) ........................................................................... 15

*Kleindienst v. Mandel*,
 408 U.S. 753 (1972) ........................................................................................ 10

*Kucana v. Holder*,
 558 U.S. 233 (2010) ........................................................................................ 12

*Lassiter v. Dep't of Social Servs.*,
 452 U.S. 18 (1981) .......................................................................................... 15

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) ......................................................................... 15

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) ........................................................................... 8

*Lyons v. Clark*,
 694 F. Supp. 184 (E.D. Va. 1988) ................................................................. 17

*Marsh v. Cty. of San Diego*,
 680 F.3d 1148 (9th Cir. 2012) ....................................................................... 18

*Mathews v. Diaz*,
 426 U.S. 67 (1976) .................................................................................... 10, 17

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) ........................................................................................ 19

*Milan-Rodriguez v. Sessions*,
  No. 116CV01578AWISABHC, 2018 WL 400317 (E.D. Cal. Jan. 12, 2018) ............... 16

*Milardo v. Kerilikowske*,
  No. 16-MC-99, 2016 WL 1305120 (D. Conn. Apr. 1, 2016) ........................................ 12

*Montanye v. Haymes*,
  427 U.S. 236 (1976) ..................................................................................................... 17

*Naul v. Gonzales*,
  No. 05-4627, 2007 WL 1217987 (D.N.J. Apr. 23, 2007) ............................................. 12

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) ................................................................................................ 8, 19

*Newbold v. Stansberry*,
  No. 1:08CV1266 (LO/JPP), 2009 WL 86740 (E.D. Va. Jan. 12, 2009) ....................... 17

*Nken v. Holder*,
  556 U.S. 418 (2009) ....................................................................................................... 8

*Oceanic Navigation Co. v. Stranahan*,
  214 U.S. 320 (1909) ..................................................................................................... 10

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ..................................................................................................... 17

*Overton v. Bazzetta*,
  539 U.S. 126 (2003) ..................................................................................................... 15

*Reno v. Flores*,
  507 U.S. 292 (1993) ..................................................................................................... 18

*Rios-Berrios v. INS*,
  776 F.2d 859 (9th Cir. 1985) ....................................................................................... 13

*Rumsfeld v. Padilla*,
  542 U.S. 426 (2004) ....................................................................................................... 7

*Santos v. Smith*,
  260 F. Supp. 3d 598 (W.D. Va. 2017) ........................................................................... 2

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ..................................................................................................... 15

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................................................... 7

*Sasso v. Milhollan*,
  735 F. Supp. 1045 (S.D. Fla. 1990) ............................................................................. 13

*Southerland v. City of New York*,
  680 F.3d 127 (2d Cir. 2012) ......................................................................................... 15

*Spencer Enters., Inc. v. United States*,
  345 F.3d 683 (9th Cir. 2003) ....................................................................................... 12

*Spencer v. Kemna*,
523 U.S. 1 (1998) ................................................................................. 9

*Troxel v. Granville*,
530 U.S. 57 (2000) .............................................................................. 15

*United Farm Workers v. Ariz. Agric. Employment Relations Bd.*,
669 F.2d 1249 (9th Cir.1982) ............................................................ 14

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975) ............................................................................ 8

*United States v. Bush*,
No. CR 12-92, 2015 WL 7444640 (W.D. Pa. Nov. 23, 2015) ............ 12

*United States v. Loy*,
237 F.3d 251 (3d Cir. 2001) .............................................................. 15

*United States v. Wolf Child*,
699 F.3d 1082 (9th Cir. 2012) ........................................................... 15

*Van Dinh v. Reno*,
197 F.3d 427 (10th Cir. 1999) ........................................................... 13

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ........................................................................... 18

*Wayte v. United States*,
470 U.S. 598 (1985) ............................................................................. 8

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................................................... 14

*White v. Pazin*, No.,
112CV00917BAMPC, 2016 WL 6124234 (E.D. Cal. Oct. 19, 2016) ........... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................. 8

*Wood v. United States*,
175 F. App'x 419 (2d Cir. 2006) ....................................................... 13

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ...................................................................... 10, 14

## Statutes

5 U.S.C. § 701(a)(2) ............................................................................................. 14
5 U.S.C. § 704 ...................................................................................................... 14
5 U.S.C. § 706 ...................................................................................................... 13
6 U.S.C. § 279(g)(2) ............................................................................................... 5
8 U.S.C. § 1103(a)(1) ........................................................................................... 10
8 U.S.C. § 1182(d)(5)(A) ................................................................................. 11, 12
8 U.S.C. § 1225 .................................................................................................... 11
8 U.S.C. § 1225(b) ............................................................................................... 12
8 U.S.C. § 1225(b)(1)(B) ........................................................................................ 5
8 U.S.C. § 1229a ..................................................................................................... 5
8 U.S.C. § 1231 ................................................................................................ 11, 12
8 U.S.C. § 1231(g)(1) ....................................................................................... 12, 13
8 U.S.C. § 1232(b)(3) .............................................................................................. 5
8 U.S.C. § 1232(c)(2)(A) ......................................................................................... 5
8 U.S.C. § 1232(c)(3)(A) ...................................................................................... 2, 7
8 U.S.C. § 1252(c) ................................................................................................ 13
28 U.S.C. § 1391 .................................................................................................... 7
28 U.S.C. § 1404 .................................................................................................... 8

## Regulations

6 C.F.R. § 115.114(a) ........................................................................................... 11
6 C.F.R. § 115.114(b) ........................................................................................... 11
6 C.F.R. § 115.14 ................................................................................................. 11
6 C.F.R. § 115.14(a) ............................................................................................. 11
8 C.F.R. § 208.30(f) ............................................................................................... 5
8 C.F.R. § 1241.1(b) .............................................................................................. 6
8 C.F.R. § 208.30 ................................................................................................... 5

## Other Authorities

Pub. L. 104-208 ................................................................................................... 13

I

## INTRODUCTION

Petitioner Ms. L seeks a preliminary injunction, asking this Court to order that "she and her daughter [S.S.] be released so they can be reunited in a non-governmental shelter, or alternatively, that they be detained <u>together</u> in a government family detention center." Doc. 21-1 at 22:1-3.] There is nothing to enjoin, however, because Immigration and Customs Enforcement ("ICE")[2] has released Ms. L from immigration detention, and the Office of Refugee Resettlement ("ORR")[3] is expeditiously reviewing the suitability of S.S.'s placement with Ms. L.[4] S.S. is not a party, and even if she were, this Court should reject any argument that ORR should be ordered to release S.S. before ORR has made its determination. Ms. L's instant motion is therefore moot.

Apart from mootness, if this Court were to reach the factors for considering a motion for preliminary injunction, Ms. L is not likely to succeed in this case, and the balance of hardships weighs heavily in the government's and public's interests to protect the safety and welfare of children from exploitation by smugglers and human traffickers. *See infra* note 8. This Court lacks authority to review ICE's decisions on where to detain aliens in removal proceedings, and there is no constitutional right of detained aliens to be detained with their children. Even U.S. citizens in pretrial detention do not have such a right. Furthermore, there is nothing about this case that "shocks the conscience."

This case is about actions taken by the San Diego Family Unit of ICE's Enforcement and Removal Operations ("ERO") to ensure the welfare of S.S. Ms. L presented at the border without any identification documents. The Family Unit questioned the relationship between Ms. L and S.S. in November 2017 and placed S.S. with ORR out of concern for her welfare. ORR now has a duty to make "a determination that the proposed custodian is

---

[2] ICE is a sub-agency of the Department of Homeland Security ("DHS").
[3] ORR is a sub-agency of the U.S. Department of Health and Human Services ("HHS").
[4] The undersigned is informed that Ms. L submitted a family reunification packet to ORR yesterday and that ORR is awaiting required recommendations and hopes to have a release decision and actual release very soon.

capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). *See Santos v. Smith*, 260 F. Supp. 3d 598, 605 (W.D. Va. 2017) (Pursuant to the *Flores* agreement and the [Trafficking Victims Protection Reauthorization Act ("TVPRA")], ORR should release to a parent, if available, but only if ORR determines "that the proposed custodian is capable of providing for the child's physical and mental well-being.").

Under its guidelines, ORR determines whether there is a suitable sponsor for all children in their care so that children may be released as quickly as is safe and appropriate. Office of Refugee Resettlement, *ORR Policy Guide: Children Entering the United States Unaccompanied* ("ORR Guide") § 2.2, *available at* http://www.acf.hhs.gov/orr/resource/childrenentering-the-united-states-unaccompanied.[5] ORR is obligated to assess "whether the potential sponsor is a suitable sponsor who can safely provide for the physical and mental well-being of the child or youth," ORR Guide § 2.3.2, and Ms. L must exhaust that administrative process, which provides for a hearing if there is a denial. *See* 8 U.S.C. § 1232(c)(3)(A); ORR Guide § 2.7.8.

Ms. L's counsel speculates that ICE has a family separation policy, but as the current manager of the San Diego ICE/ERO Family Unit states in his accompanying Declaration, a decision to place a child with ORR is based on two primary considerations: whether there are doubts about the claimed parent-child relationship and whether there are circumstances causing concern about the welfare of the child. [Ortiz Declaration, paras. 2-3.] Based on the information available in a specific case, if there are not concerns about the family relationship or welfare of the child, the parent and child may be detained at an ICE Family Residential Center[6] or, if appropriate, released to a sponsor or non-governmental

---

[5] Courts may take judicial notice of websites run by governmental agencies. *See, e.g., Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08cv1166-IEG, 2009 WL 6597891, at *1 (S.D. Cal. Dec. 23, 2009) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

[6] ICE's two Family Residential Centers for female detainees and their children are located in the Western District of Texas. *See* ICE, *South Texas Family Residential Center*, https://www.ice.gov/detention-facility/south-texas-family-residential-center; ICE, *Karnes County Residential Center*, https://www.ice.gov/detention-facility/karnes-county-

organization. If there are concerns, the child may be transferred to ORR for care and placement consideration. [*Id*.] ICE has no family separation policy for ulterior law enforcement purposes, and considers each case on the facts available at the time a placement decision must be made. In addition, such a policy would be antithetical to the child welfare values of ORR, which is not a law enforcement agency. *See* ORR, *Unaccompanied Alien Children*, https://www.acf.hhs.gov/orr/programs/ucs.

Ms. L's request for an injunction should therefore be denied, because there is nothing to enjoin: She has been released from ICE detention, and S.S. is not a party. Even if she were, ORR is still making a determination whether Ms. L is a suitable sponsor. Apart from mootness, Ms. L is not likely to succeed on the merits of this case, and the balance of hardships tips sharply in favor of governmental and public concern for S.S.'s safety and welfare.

II

STATEMENT OF FACTS

Ms. L appears to have a nexus with both Angola and the Democratic Republic of Congo (DRC). Available documentation shows that S.S. was in kindergarten in the DRC during the 2013-2014 school year and that she is the daughter of Ms. "B.M." and a Mr. "F.S." [ECF Doc. 31-1 at 96 (school photo ID)], that Ms. L (as Ms. "B.M.P.") was issued an Angola passport on June 4, 2015, in Luanda, Angola, and that she (as Ms. "B.M.P."), S.S. (as "S.P.S.)," and a Mr. "A.S." applied to the U.S. consulate in Angola for nonimmigrant visas to the United States in January 2016, with the stated purpose of visiting New York City as tourists for fifteen days. [Exs. 2-3.][7] The visa was refused, and the U.S. consular official noted: "Family makeup is questionable at best, father is not credible at all." [Ex. 7.]

---

[7] By separate ex parte motion, Respondents are requesting that the exhibits be received and filed as a restricted document to protect the privacy of Ms. L and her daughter.

1    During her trip en route to the United States last year, Ms. L was detained in Panama
2    in September 2017 at which time she used the alias Ms. "B.N." and was detained in
3    Guatemala in October 2017 at which time she used her current name. [Ortiz Declaration,
4    paras. 5.e. & 5.f.] On October 24, 2017, the Mexican government issued her and S.S. exit
5    visas [*id*., para. 5.g.], and they headed north to the U.S. border. She states that she and S.S.
6    made the trip with the aid of a smuggler.[8] [Ex. 12.]

7    The whereabouts of Mr. F.S. and Mr. A.S. are unknown. [ECF Doc. 31-1 at 96; Ex.
8    3.]

9    Ms. L's current removal proceedings began on November 1, 2017, when she and S.S.
10   applied for admission to the United States at the San Ysidro, California port of entry. [ECF
11   Doc. 13-1 at 9.][9] Ms. L stated that she had a fear of returning to the Congo due to the civil
12   war there. *Id.* Ms. L had no identity documents other than the Mexican exit visa issued to
13   her, and she claimed that her identity documentation had been lost during her travel to the
14   United States. [Ex. 12; Ortiz Declaration, para. 5.g.]

15   On November 2, 2017, Ms. L was interviewed in the Lingala language, through an
16   interpreter, by a CBP officer.[10] [Exs. 9-16 (sworn statement of Ms. L).]

17   ///
18   ///
19   ///

20
21

_____

[8] *See* UNICEF, *A Child is a Child: Protecting children on the move from violence, abuse and exploitation*, *available at* https://www.unicef.org/publications/files/UNICEF_A_child_is_a_child_May_2017_EN.pdf (last visited Mar. 1, 2018) (noting "the risks faced by children moving across international borders – with their families or on their own – *especially when they engage smugglers to facilitate their movement*" and that children are "easy prey for traffickers and others who abuse and exploit children.") (emphasis added).

[9] Page numbers correspond to ECF-generated page numbering.

[10] Ms. L alleges that she had to communicate with "border guards" in broken Spanish before seeing a USCIS asylum officer when in fact she was interviewed by a CBP officer in the Lingala language through an interpreter. [ECF Doc. 21-1 at 9; Ex. 9.] Ms. L was not forthcoming with the CBP Officer about the fact that she had used aliases and that she had previously applied for a U.S. visa.

Because Ms. L presented no documents that might entitle her to admission to the United States, she was placed in expedited removal proceedings pursuant to 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1225(b)(1)(A)(i). [Exs. 17-19.] She expressed a fear of returning to the DRC, so she was referred to an asylum officer of the U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. [Ex. 20][11]

Within a few days, Ms. L and S.S. were transferred to ICE custody for detention during the credible fear determination process. [ECF Doc. 13-1 at 9.] Because Ms. L claimed to be S.S.'s mother, the matter was referred to ICE/ERO's local Family Unit which decided to transfer S.S. to the care and custody of ORR, in accordance with the TVPRA. *See* 8 U.S.C. § 1232(b)(3); 6 U.S.C. § 279(g)(2) (definition of unaccompanied alien child).

Based upon the referral from ICE/ERO, ORR acted according to its statutory obligation to place S.S. with a provider with available space that could provide her with care and custody in the least restrictive setting available and that could take into account her child welfare needs. [*See* Declaration of Julissa Portales Banzon ("Banzon Declaration"), paras. 5 & 6.] *See* 8 U.S.C. § 1232(c)(2)(A). When ORR sought placement for S.S., the available care provider that met those criteria was located in Chicago, Illinois. [Banzon Declaration, para. 6.]

On November 17, 2017, a USCIS asylum officer conducted a credible fear interview through a Lingala interpreter. [Ex. 20.] The asylum officer determined that Ms. L had met the credible fear threshold to have her asylum application heard by an Immigration Judge ("IJ"). [*Id*.]

On November 30, 2017, Ms. L was served with a Notice to Appear before an IJ. [Exs. 21-23.]

---

[11] If a USCIS asylum officer interviews an arriving alien in expedited removal proceedings and determines that he or she has a credible fear of persecution or torture, the individual may seek asylum or other protection from removal before an IJ. *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The arriving alien is afforded a hearing before an IJ pursuant to 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f).

On December 19, 2017, Ms. L appeared, unrepresented, before Immigration Judge Halliday-Roberts and was granted a continuance until January 26, 2018, to seek legal representation. [Ex. 25.] The hearing was conducted through a Lingala interpreter. [Ex. 24.]

On January 26, 2018, Ms. L appeared again, unrepresented, before Judge Halliday-Roberts, stating her desire to continue without an attorney. [Ex. 26.] The hearing was conducted through an interpreter in a combination of Lingala and French.[12] When asked what country she wanted to designate for her removal and repatriation, Ms. L selected Angola. [Exs. 26-27, 28, 30.]

The IJ ordered that Ms. L be removed from the United States to Angola or, in the alternative, to the DRC. [Exs. 28, 31.] Ms. L waived appeal, so the IJ's removal order became immediately final. *See* 8 C.F.R. § 1241.1(b).

Pending removal efforts, Ms. L was (until March 6, 2018) detained by ICE/ERO. Her daughter continues to be in the care and custody of an ORR care provider pending her placement with an appropriate sponsor. [*See* Banzon Declaration, para. 9.]

On February 12, 2018, Ms. L retained immigration counsel Ms. Elizabeth Lopez. [ECF Doc. 13-1 at 90.]

On February 28, 2018, two days after Ms. L commenced this case, Ms. Lopez filed a motion to reconsider Ms. L's removal order with the Immigration Court. [Exs. 33-47.][13] The motion to reconsider remains pending.

On March 5, 2018, Ms. Lopez submitted a request to ICE to stay Ms. L's removal given her pending "Motion to Reconsider and possible Motion to Reopen or Appeal to [Board of Immigration Appeals]." [Exs. 48-49.]

On March 6, 2018, ICE granted the request for stay of removal. [*Id.*]

---

[12] French is the official language of the DRC. CIA, *Africa: Republic of the Congo*, The World Factbook, https://www.cia.gov/library/publications/the-world-factbook/geos/cf.html (last visited Mar. 9, 2018).

[13] Ms. L's motion for preliminary injunction includes the March 1, 2018 declaration of her immigration counsel Ms. Lopez who provides some information about the removal proceedings, but does not mention that Ms. L was subject to the January 26, 2018 final order of removal or that, on February 28, 2018, she had filed a motion to reconsider the removal order. [ECF Doc. 21-1 at 90-92.]

1   That same day, ICE released Ms. L from detention.

2   ORR immediately took steps to verify whether Ms. L and S.S. are mother and

3   daughter by conducting a DNA test, and the March 12, 2018 results showed that they are.

4   [ECF Doc. 44.] ORR will place S.S. with Ms. L if and when it makes "a determination that

5   the proposed custodian is capable of providing for the child's physical and mental well-

6   being." 8 U.S.C. § 1232(c)(3)(A). *See also* ORR Guide §§ 2.2, 2.7.8.

7   <u>PROCEDURAL HISTORY OF THIS CASE</u>

8   On February 26, 2018, Ms. L commenced this case by filing a combined habeas

9   petition and complaint. [ECF Doc. 1.] She challenges the decision of the San Diego

10  ICE/ERO Family Unit to place her daughter S.S. in the care and custody of ORR, and she

11  seeks both declaratory and injunctive relief. [*Id.*] S.S. is not a party to this case.

12  On March 2, 2018, Ms. L filed a motion for a preliminary injunction [ECF Doc. 13

13  (amended on Mar. 3, 2018, *see* ECF Doc. 21)], asking this Court to order that "she and her

14  daughter be released so they can be reunited in a non-governmental shelter, or alternatively,

15  that they be detained <u>together</u> in a government family detention center." [ECF Doc. 13-1 at

16  22; ECF Doc. 21-1 at 22 (emphasis in original).][14]

17  On March 9, 2018, Petitioners filed an amended petition/complaint, adding Ms. C

18  and seeking class certification.[15] The instant motion has not been amended to include

19  anything that was added in the amended petition/complaint.

20  _____

21  [14] In both her petition/complaint and in her instant motion, Ms. L failed to inform this Court that she was under a final order of removal at the time.

22  [15] Ms. C should be dismissed from the case due to improper venue. She does not allege proper venue in the amended petition-complaint. [ECF Doc. 32, para. 9.] Indeed, all of the events that give rise to her claim occurred in Texas, none of the defendants relating

23  to her claim reside in this judicial district, and her custodian is in Texas. *See* 28 U.S.C. § 1391; *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas

24  statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

25  "[I]n most instances, the rule in a proposed class action is that each named plaintiff must independently establish venue." *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017)

26  (citing *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *5 (N.D. Cal. Jan. 27, 2014) (citing *Dukes v. Wal–Mart Stores, Inc.*, No. 1–cr–2252–MJJ, 2001 WL

27  1902806 (N.D. Cal. Dec. 3, 2001) for the proposition that "the general rule [is] that each plaintiff in a class action must individually satisfy venue"); *Amochaev v. Citigroup Glob.*

28  *Markets Inc.*, No. C-05-1298 PJH, 2007 WL 484778, at *1 (N.D. Cal. Feb. 12, 2007)). Ms.

III

ARGUMENT

A. PRELIMINARY INJUNCTION STANDARD

Ms. L seeks a preliminary injunction. [ECF Doc. 13.] The movant must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *Nken v. Holder*, 556 U.S. 418, 426 (2009). Ms. L must demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011). When "a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [factors].") *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015).

The final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. at 435. The Supreme Court has specifically acknowledged that "[f]ew interests can be more compelling than a nation's need to ensure its own security." *Wayte v. United States*, 470 U.S. 598, 611 (1985). *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975); *New Motor Vehicle Bd. v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1220-21 (D.C. Cir. 1981).

As explained below, Ms. L's claims are moot, and she is not likely to succeed on the merits. In addition, any potential hardship that separation might cause to a parent and child is heavily outweighed by public and governmental interests in ensuring the safety and welfare of the child.

///

///

---

C's claim should be dismissed for improper venue or transferred to an appropriate venue such as the Western District of Texas. *See* 28 U.S.C. § 1404.

B. <u>MS. L's CLAIMS ARE MOOT</u>

Although Ms. L is under a final order of removal, she has been released from detention pending her motion to reconsider her removal order. The instant motion, which asks this Court to order her release from detention, is therefore moot. *See Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) ("At any stage of the proceeding a case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2 of the Constitution.'") (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Ms. L's request that she be detained with S.S. in an ICE Family Residential Center is moot for the same reason and because there is no authority for a court to order that an alien be placed in ICE detention in the context of removal proceedings. Furthermore, there is no basis for judicial intervention in ORR's process of determining a suitable sponsor for S.S. To begin with, S.S. is not a party, and even if she were, such determinations are administratively reviewable, including a hearing process. *See* ORR Guide 2.7.8 (Appeal of Release Denial); *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016) (ORR's "determination suffices to address any substantive due process concerns, and it renders inapposite those decisions involving challenges to state interference with control of children by fit parents.").

Apart from the mootness of Ms. L's case, there can be no serious question that this Court lacks authority to review ICE/ERO's decisions where to detain arriving aliens pending their removal proceedings, and as discussed below, there can be no serious question that arriving aliens in expedited removal proceedings, especially those who are subject to final orders of removal, have no constitutional right to be detained with their children.

///

///

///

### C. NO AUTHORITY TO ORDER RELEASE OR TRANSFER OF MS. L

Ms. L asks this Court to issue a preliminary injunction, requiring her child's release from ORR custody and her release from ICE detention or her child's release from ORR custody and detention of both of them at one of ICE's Family Residential Centers, which is the relief she ultimately seeks in this case. [ECF Doc. 13-1 at 22; ECF Doc. 32 at 14.] Apart from mootness, there is no legal basis for granting such relief. Authority to order release from detention is limited to circumstances in which detention has become unconstitutionally prolonged. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (holding that "indefinite detention of an alien...raise[s] a serious constitutional problem" and could violate the Due Process Clause of the Fifth Amendment). Ms. L is therefore asking this Court to make new law.

ICE has broad discretion, delegated by Congress, to manage to the detention of arriving aliens. Congress also enjoys a "plenary power" to exercise its discretion to create "rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (internal quotation marks omitted). This authority is so extensive that the Court has considered it among the most comprehensive of any of the powers that Congress exercises. See id. (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). In exercising that power, Congress even enjoys broad authority to establish "rules that would be unacceptable if applied to citizens" and can make distinctions both between aliens and citizens and among different categories of aliens. *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). Additionally, Congress conveyed to the Secretary of Homeland Security broad general powers over the administration and enforcement of the INA and the specific power to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(1), (a)(3).

///

The Department of Homeland Security's ("DHS's") regulations provide additional protections to minors by requiring that they must generally be detained "in the least restrictive setting appropriate to the juvenile's age and special needs . . . ." 6 C.F.R. § 115.14(a) (establishing regulations for ICE immigration detention facilities); 6 C.F.R. § 115.114(a) (establishing regulations for CBP short-term holding facilities). These regulations *permit* minors to be held with adult family members in certain cases, but they do not *require* minors to be held with adult family members, particularly where the agency has insufficient information to make a family relationship determination. *See, e.g.*, 6 C.F.R. § 115.14 (separating adult family members from the general prohibition on holding juveniles with adults, but recognizing that the agency shall "seek to obtain reliable evidence of a family relationship"); 6 C.F.R. § 115.114(b) (permitting unaccompanied minors to remain with non-parental adult family members in certain cases).

Additionally, Congress has mandated the detention of aliens who are in expedited removal proceedings, pending their asylum claims. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) ("shall be detained for further consideration of the application for asylum."). Arriving aliens subject to mandatory detention during the expedited removal/credible fear process are eligible for release only if they are granted parole under the limited criteria of 8 U.S.C. § 1182(d)(5)(A) (DHS may, in its "discretion parole into the United States temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . .").[16]  The Supreme Court recently explained that there is no judicial review of ICE's custody decisions regarding arriving aliens:

> As we have previously explained, § 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release."

---

[16] As mentioned above, Ms. L brought this case when she was already under a final order of removal which means that ICE was detaining her pursuant to 8 U.S.C. § 1231, and no longer pursuant to 8 U.S.C. § 1225, Ms. L was still detained pursuant to section 1231 when ICE exercised its non-reviewable authority to stay her removal and release her from detention.

*Jennings v. Rodriguez*, No. 15-1204, 2018 WL 1054878, at *9 (U.S. Feb. 27, 2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003). The Supreme Court has also clarified that a decision unambiguously "specified by statute 'to be in the discretion of the [Government]'"—as in the decision whether to parole an alien pursuant to 8 U.S.C. § 1182(d)(5)(A)—is "shielded from court oversight by § 1252(a)(2)(B)(ii)." *Kucana v. Holder*, 558 U.S. 233, 248 (2010).

Ms. L does not dispute the lawfulness of her detention by ICE, nor can she. As described above, she is an arriving alien who was subject to mandatory detention under 8 U.S.C. § 1225(b) before her removal order became final, and subject to 8 U.S.C. § 1231 after it became final. There can be no serious question concerning the constitutionality and the non-reviewability of ICE's decision not to parole her under section 1225(b) detention authority or to release her under section 1231 detention authority. *See Altagracia v. Sessions*, No. 16-cv-6647, 2017 WL 908211, *2 (W.D.N.Y. Mar. 7, 2017) (Wolford, J.) ("the [Government's] decision regarding humanitarian parole is generally non-reviewable"); *Milardo v. Kerilikowske*, No. 16-MC-99, 2016 WL 1305120, *6, 9 (D. Conn. Apr. 1, 2016) (ICE's discretionary parole decisions are "generally not subject to judicial review, and [are] never subject to judicial review by a district court"); *United States v. Bush*, No. CR 12-92, 2015 WL 7444640, at *1 (W.D. Pa. Nov. 23, 2015) (finding that 1252(a)(2)(B)(ii) "explicitly denies courts the jurisdiction to review" parole decisions, "except insofar as those claims raise constitutional issues, then only the appropriate court of appeals shall hear the case"); *Naul v. Gonzales*, No. 05-4627, 2007 WL 1217987, at *2-*3 (D.N.J. Apr. 23, 2007) (parole denial pursuant to § 1182(d)(5)(A) "is a discretionary decision outside this Court's review").

In the alternative, Ms. L asks this Court to order that she be detained, with her daughter, in an ICE Family Residential Center. Apart from mootness (since neither of them are currently detained by ICE), DHS has non-reviewable discretionary authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Spencer Enters., Inc. v.*

*United States*, 345 F.3d 683, 691 (9th Cir. 2003) ("Under § 1252(a)(2)(B)(ii), . . . if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable."); *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) (holding that Executive "has the authority, conferred by statute, to choose the location for detention and to transfer aliens to that location"), *as amended*, 807 F.2d 769 (1987); *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide."). *See also Gandarillas-Zambrana*, 44 F.3d at 1256; *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that Executive "in the exercise of his statutory discretion in light of the available facilities, determined to hold Wood in an Arizona detention center. The Attorney General was not required to detain Wood in a particular state"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 213–15 (D. Conn. 2000) (holding that due to discretionary review bar of 8 U.S.C. § 1252(a)(2)(B)(ii) "the court lacks jurisdiction to prevent the INS from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention).[17]

Ms. L contends that she is likely to succeed on her Administrative Procedure Act ("APA") claim. [ECF Doc. 13-1 at 16-17.] Her claim is that the "separation of [her from S.S.] without a legitimate justification is arbitrary and capricious and accordingly violates the APA. 5 U.S.C. § 706." [ECF Doc. 32, para. 82.] APA review is precluded, because

---

[17] Although *Gandarillas-Zambrana* and *Committee of Central American Refugees* referred to the statutory authority for the Executive to decide on the location of immigration detention as arising from 8 U.S.C. § 1252(c), that statutory authority has been transferred to 8 U.S.C. § 1231(g)(1), the statute cited by *Wood*. *See Wood*, 175 F. App'x at 420; Pub. L. 104-208, Div. C, Title III, §§ 305(a)(3), 110 Stat. 3009 (1996); *compare also* 8 U.S.C. § 1252(c) (1994) *with* 8 U.S.C. § 1231(g)(1). This technical statutory modification has no bearing on the issues here, or the applicability of the above-cited authority to the instant claims.

1   decisions regarding detention procedures are "committed to agency discretion by law" 5

2   U.S.C. § 701(a)(2); *see Webster v. Doe*, 486 U.S. 592, 594, 600-01 (1988).

3       To the extent Ms. L requests this Court to stay her removal due to any alleged APA

4   violations, the APA does not apply to post-order custody issues in removal proceedings.

5   *See Zadvydas v. Davis*, 533 U.S. at 687 ("These [1952 and 1961] statutory changes left

6   habeas untouched as the basic method for obtaining review of continued custody after a

7   deportation order had become final."); *I.N.S. v. St. Cyr*, 533 U.S. 289, 309 n.32 (2001) ("the

8   focus of the 1961 amendments appears to have been the elimination of Administrative

9   Procedure Act (APA) suits that were brought in the district court and that sought declaratory

10   relief [to challenge final orders of deportation].").

11       In addition, the APA allows judicial review only if the challenged activity is a "final

12   agency action for which there is no other adequate remedy." *See* 5 U.S.C. § 704. The

13   purpose of the rule is to avoid premature judicial intervention. *See United Farm Workers v.*

14   *Ariz. Agric. Employment Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir.1982). There is no

15   final action by ICE to review regarding Ms. L: She has been released from detention

16   following ICE's grant of her request for a discretionary stay. Regarding her claims about

17   S.S.'s placement, apart from the fact that S.S. is not a party, ORR has not reached a final

18   placement determination. Furthermore, ORR's determination will be administratively

19   reviewable, including a right to a hearing. *See* ORR Guide § 2.7.8.

20       Accordingly, in addition to mootness, this Court lacks the authority to order ICE to

21   transfer Ms. L (or her daughter who is not a party) to an ICE Family Residential Center, and

22   therefore Ms. L is not likely to succeed in obtaining this requested relief.

23       D. <u>NO CONSTITUTIONAL RIGHT TO JOINT DETENTION</u>

24       1. *Ms. L is asking this Court to make a new rule of constitutional law.*

25       Ms. L also cannot succeed on the merits of her constitutional claim. She asks this

26   Court to recognize a constitutional right of immigration detainees to be detained with their

27   children. Ms. L has defined this right far too broadly, because the extent of any right that

28   parents may have in terms of a relationship with their children (or vice versa) necessarily

1    depends on the circumstances of a particular case. *See, e.g., Overton v. Bazzetta*, 539 U.S.

2    126, 131 (2003) (recognizing that rights of familial association apply differently when an

3    individual is imprisoned).

4         She cites a number of cases in support of her argument, but none of them concern

5    persons detained, let alone aliens detained pending removal proceedings, arriving aliens in

6    expedited removal proceedings, or those like Ms. L who are subject to a final order of

7    removal. [ECF Doc. 13-1 at 14-15 (*Santosky v. Kramer*, 455 U.S. 745 (1982) (concerning

8    the termination of parental rights); *Troxel v. Granville*, 530 U.S. 57 (2000) (concerning the

9    visitation rights of grandparents); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)

10   (complaining that the police stated they had no knowledge of her son's whereabouts when,

11   in fact, they had arrested him); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977)

12   (upholding the constitutionality of the initial removal of the children by the city bureau of

13   child welfare without the consent of their mother or a prior court order); *United States v.*

14   *Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) (reviewing a district court's supervised release

15   condition in the context of sentencing); *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18

16   (1981) (regarding the termination of a mother's parental rights); *Halet v. Wend Investment*

17   *Co.*, 672 F.2d 1305 (9th Cir. 1982) (challenging a lessor's adults-only rental policy); *Jordan*

18   *by Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994) (upholding statute that allowed, without

19   immediate administrative review, the temporary removal of a child from the plaintiff's

20   home and placement in shelter care for the protection of the child); *United States v. Loy*,

21   237 F.3d 251 (3d Cir. 2001) (reviewing a district court's conditions of supervised release in

22   a criminal case); *Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012) (review of

23   a family court decision); *Heartland Acad. Comm. Church v. Waddle*, 427 F.3d 525 (8th Cir.

24   2005) (civil rights action by private boarding school, affiliated church, and parents against

25   juvenile officer and others for removing 115 students from the school)).]

26   ///

27   ///

28   ///

Congress has broad power to regulate immigration, even when Congress' decisions touch on sensitive familial relationships. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 797-98 (1977). The courts have rejected attempts to establish that aliens or U.S. citizens in detention have any substantive due process right to family visitation, or to detention in proximity to family members, let alone a right to be detained—much less released—together. *See Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (rejecting the notion of a due process right to family visitation in immigration detention). Relying on *Aguilar*, the U.S. District Court for the Eastern District of California recently decided a very similar case:

> The Court has been unable to find a Ninth Circuit case that addresses the specific issue of whether immigration detention and transfers violate the substantive due process right to family integrity. However, there is a First Circuit case that the Court finds instructive and persuasive… The *Aguilar* class alleged that ICE's actions violated, *inter alia*, their substantive due process rights of family integrity and of parents to make decisions as to the care, custody, and control of their children.
> …
> The Court recognizes the burden Petitioner's immigration proceedings and prolonged detention has placed on his family and is sympathetic to his situation. However, no authority has been presented to this Court that holds an immigration detainee has a due process right to be placed in a facility near his family in order to facilitate visitation… Petitioner has not alleged that government action resulted in termination of his parental rights or interfered with his right to make fundamental decisions regarding his children's upbringing.

*See Milan-Rodriguez v. Sessions*, No. 116CV01578AWISABHC, 2018 WL 400317, at *8-10 (E.D. Cal. Jan. 12, 2018) (citations omitted). *See also Gallanosa by Gallanosa v. United States*, 785 F.2d 116, 120 (4th Cir. 1986) ("The courts of appeals that have addressed this issue have uniformly held that deportation of the alien parents does not violate any constitutional rights of the citizen children."); *Gordon v. Mule*, 153 F. App'x 39, 42 (2d Cir. 2005) (citing Government's plenary power over immigration to reject claim that removal violates substantive due process right to family unity).

To the extent that immigration detainees are analogous to pretrial detainees, *see Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee."), Ms. L is arguing, in effect, that arriving aliens have greater constitutional rights than U.S. citizens in pretrial detention. In

a recent case, the U.S. District Court for the Eastern District of California examined the constitutional rights of a pretrial detainee to visit his minor children. *See White v. Pazin*, No. 112CV00917BAMPC, 2016 WL 6124234, at *6 (E.D. Cal. Oct. 19, 2016), report and recommendation adopted, No. 112CV00917AWIBAMPC, 2017 WL 661928 (E.D. Cal. Feb. 16, 2017). In *White*, the plaintiff complained that, while he was detained as a pretrial detainee, his visitation rights were suspended, and he was no longer allowed to visit with his minor children under the age of 12 years. *Id*. at *2. The court concluded that "the relevant law does not show there was any clearly established right protecting an inmate from policies banning visitations with his minor children at the time of the events at issue." *Id*. at *11. Of course, arriving aliens do not have greater constitutional rights than U.S. citizens. *See Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.").[18]

Ms. L's motion should therefore be denied, because she is unlikely to succeed: there is no constitutional right of arriving aliens to be detained with their children.

2. *Substantive due process*

Apart from the lack of any constitutional right of a detainee, much less an arriving alien under final order of removal, to be detained or released with his or her child, Ms. L cannot establish that the San Diego ICE/ERO Family Unit and ORR have engaged in conduct that is so outrageous that it "shocks the conscience." *See County of Sacramento v.*

---

[18] The Supreme Court has also rejected an analogous claim of due process rights to family visitation among criminal detainees. *See Olim v. Wakinekona*, 461 U.S. 238, 247–48 & n.8 (1983) (interstate transfer of a criminal detainee does not violate any due process rights of the detainee, even if the transfer leaves the detainee separated hundreds of miles from his family) (citing *Montanye v. Haymes*, 427 U.S. 236, 241 n.4 (1976)); *see also Newbold v. Stansberry*, No. 1:08CV1266 (LO/JPP), 2009 WL 86740, at *3 (E.D. Va. Jan. 12, 2009) (O'Grady, J.) (holding that "a prisoner has no due process interest in his placement at a particular prison, nor does the Constitution guarantee that the convicted prisoner will be placed in any particular prison. Nor does a prisoner have a constitutional right to receive visits from friends or family members.") (internal quotations and citations omitted), *aff'd*, 332 F. App'x 927 (4th Cir. 2009); *Lyons v. Clark*, 694 F. Supp. 184 (E.D. Va. 1988) (Ellis, J.) (rejecting challenge to transfer of criminal detainee after finding no liberty interest of criminal detainee "in receiving visits from family, friends and community groups").

*Lewis*, 523 U.S. 833, 847 n.8 (1998) ("so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."). The Supreme Court has repeatedly warned against analyzing claimed substantive due process rights "at too general a level." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). *See also Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (to violate the "well-established substantive due process right to family integrity," "the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency.'").

Ms. L's counsel speculates that ICE has a family separation policy, but there is no basis for such speculation. On the contrary, the current manager of the San Diego ICE/ERO Family Unit explains that the decision to place a child with ORR has only to do with the welfare of the child. [Ortiz Declaration, paras. 2-3.] Likewise, ORR, which is not a law enforcement agency, is focused purely on the welfare of the child.

CBP and ICE play an important role in interrupting efforts to prevent the exploitation of minors to improve conditions of custody and/or chances of release. And ORR plays a complementary role of ensuring the welfare of children. *See D.B. v. Cardall*, 826 F.3d at 741 (ORR's "determination suffices to address any substantive due process concerns, and it renders inapposite those decisions involving challenges to state interference with control of children by fit parents.").

Apart from the fact that Ms. L's motion for equitable relief has been moot from the start, she is unlikely to succeed on a claim that she has a substantive due process right to be detained with her daughter pending her removal proceedings, especially as an arriving alien, and especially as an arriving alien under a final order of removal.

3. *Procedural due process*.

Ms. L asserts a due process right to notice and opportunity to be heard on ICE's decision to transfer S.S. to ORR's care and custody. [*See* ECF Doc. 13-1 at 13 n.4 ("Ms. L.'s substantive due process right also carries with it a corresponding right to procedural due process.").] As in *Reno v. Flores*, 507 U.S. 292 (1993), Ms. L's procedural due process claim is really her "'substantive due process' argument recast in procedural terms." *Id*. at

293. Since immigration detainees, just like U.S. citizens in pretrial detention, have no constitutional right to be detained with their children, there is no basis for requiring a hearing on the transfer decision. Furthermore, as discussed below, the interest of immigration detainees in being detained with their children is far outweighed by the government's interest in protecting children from exploitation by smugglers and human traffickers. *See Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).

### E. BALANCE OF HARDSHIPS TIPS IN FAVOR OF THE GOVERNMENT

Apart from the fact that Ms. L cannot meet the threshold requirement of demonstrating likelihood of success on the merits, hardships tip heavily in favor of the government. Any order that enjoins a governmental entity from enforcing the law or interferes with an adjudication constitutes an irreparable injury to the government that weighs heavily against the entry of injunctive relief. *See, e.g.*, *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

The hardship of separation to a mother and her young daughter cannot be denied, but neither can the governmental and public interests in protecting children from exploitation by smugglers and human traffickers. Those interests would be irreparably harmed by interference with ICE/ERO's discretion to transfer children to the care and custody of ORR over concerns about their safety and welfare and/or with ORR's determination of placement with a suitable sponsor.

IV

CONCLUSION

For the reasons set forth above, this Court should deny the requested preliminary injunction. There is nothing to enjoin. Ms. L's removal has been stayed pursuant to her own request, and she has been released from detention. Diligent efforts are under way by ORR to place non-party S.S. with Ms. L as long as she is a suitable sponsor.

///

///

///

Apart from mootness, Ms. L is not likely to succeed in this case on the merits: ICE's detention decisions are not judicially reviewable, and there is no constitutional right of arriving aliens to be detained with their children. Even U.S. citizens in pretrial detention do not have such a right. Furthermore, there is nothing about this case that "shocks the conscience." The decisions of the San Diego ICE/ERO Family Unit to transfer children to the care and custody of ORR are made solely out of concerns for their safety and welfare, as are ORR's placement determinations.

The balance of hardships weighs heavily in favor of governmental and public interests in preventing the exploitation of children and in ensuring non-party S.S.'s placement with a suitable sponsor.

DATED: March 16, 2018                    Respectfully submitted,

ADAM L. BRAVERMAN
United States Attorney

s/ *Samuel W. Bettwy*
SAMUEL W. BETTWY
Assistant U.S. Attorney

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

Attorneys for Respondents-Defendants