CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation (OIL)
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director, OIL District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

Attorneys for Federal Respondents-Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, | Case No. 18cv428 DMS MDD |
| Petitioner-Plaintiff, | |
| vs. | **DECLARATION OF MARIO ORTIZ** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

I, Mario Ortiz, have been a Detention Officer for the San Diego District of U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) since February 1996. Assistant U.S. Attorney Sam Bettwy asked me to make this Declaration about the procedures that ERO San Diego Family Unit currently follows, for purposes of responding to Petitioner Ms L's motion for preliminary injunction.

1. I have been assigned to the Family Unit as Assistant Field Office Director since November 2017, and I am therefore familiar with the procedures that the San Diego Family Unit currently follows.

2. When aliens who enter ICE custody claim to be parent and child, they are referred to the Family Unit. ICE's San Diego Family Unit does not have a policy or practice "of separating migrant families." The mission of the Family Unit is to make appropriate placement decisions for aliens traveling with children who claim family relationships. When appropriate, the unit ensures the proper care and custody of the children with the HHS Office of Refugee Resettlement.

3. When aliens claiming a parent-child relationship are encountered, my unit's primary considerations are, first, whether there is any doubt about whether they are parent and child and, second, whether there is information that causes a concern about the welfare the child, such as the adult having a significant criminal history. Based on the information available in a specific case, if there are not concerns about the family relationship or welfare of the child, the aliens may be detained at a family residential center or, if appropriate, released to a sponsor or non-governmental organization. If there are concerns, the child may be transferred to the U.S. Department of Health and Human Services Office of Refugee Resettlement (ORR) for care and placement consideration.

4. Once a child is transferred to ORR's care and custody, it is my understanding that ICE no longer has any authority over what his or her custody, care, or placement will be. Those decisions must be made by ORR, and it is my understanding that ICE cannot re-detain children who have been transferred to the care and custody of ORR. It is my understanding that ORR's placement decisions are made solely for the welfare of the child.

5. At the request of AUSA Bettwy, I have reviewed Ms. L's A-File for the purpose of preparing this Declaration, and I have spoken with the Detention Officer who was assigned to manage Ms. L's detention (Officer Ramon Meraz). Since Ms. L's entry into ICE custody, this review of records has revealed the following information:

   a. Ms. L was issued an Angolan passport on June 4, 2015, in Luanda, Angola, in the name of "B.M.P."

   b. In the name "B.M.P.," Ms. L applied to the U.S. consulate in Angola for nonimmigrant visas to the United States in January 2016, with the stated purpose to visit New York City as tourists for fifteen days.

   c. Ms. L applied for the visitor visa with her daughter under the name "S.P.S.," and a person named "A.S." who represented that he was the father of S.S. and the husband of Ms. L.

   d. The visa was refused, and the consular official noted: "Family makeup is questionable at best, father is not credible at all."

   e. Ms. L was detained in Panama in September 2017 at which time she used the name Ms. "B.N.."

   f. Ms. L was detained in Guatemala in October 2017 at which time she used the name "B.L."

   g. On October 24, 2017, the Mexican government issued her and S.S. exit visas.

   h. On November 2, 2017, Ms. L stated to a CBP officer that she was aided by a smuggler for her entire trip to the United States.

   i. Ms. L stated to the same CBP officer that her passport was stolen in Colombia.

   j. Ms. L later told Officer Meraz that she lost her Angolan passport in a river in Colombia.

///

///

Declaration of Mario Ortiz        2        18cv428 DMS MDD

I make this Declaration to the best of my knowledge under penalty of perjury under the laws of the United States.

DATED: March 15, 2018

MARIO ORTIZ
Detention Officer
U.S. Immigration Customs and Enforcement