CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
Acting United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
CAROLINE J. PRIME
Assistant U.S. Attorney
California Bar No. 220000
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125 / 7183
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.<br><br>   Petitioner-Plaintiff,<br><br> vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>   Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>HEARING DATE: May 4, 2018<br>Hon. Dana M. Sabraw<br><br>**RESPONDENT-DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   APPLICABLE LEGAL FRAMEWORK ...................................................... 2

  A. Detention Under 8 U.S.C. 1225(b) ........................................................... 2

  B. The Trafficking Victims Protection and Reauthorization Act ("TVPRA")…………4

III.  STATEMENT OF FACTS ............................................................................ 4

IV.  ARGUMENT ................................................................................................. 6

  A. The Claims of Named Plaintiff Ms. L. Should Be Dismissed because They Are
     Moot ........................................................................................................... 6

  B. The Claims of Named Plaintiff Ms. C. Should be Dismissed because This Court is
     Not The Proper Venue For Any of Her Claims. ........................................ 6

      i.   The Court Does Not Have Habeas Jurisdiction Over Ms. C.'s Habeas
           Claims .................................................................................................. 7

      ii.  Ms. C's APA Claims should Be Dismissed for Improper Venue Under 28
           U.S.C. 1406(a) ..................................................................................... 8

  C. Plaintiffs' Claims Fail as a Matter of Law. ............................................. 10

      i.   The Government's Detention of The Named Plaintiffs Does Not Violate
           Applicable Law or The Constitution. ................................................ 10

      ii.  This Court Lacks Jurisdiction to Review The Government's  Discretionary
           decisions to Detain Rather Than Parole The Named Plaintiffs. .................. 11

      iii. This court Lacks Jurisdiction to Review ICE's Decisions Regarding
           Where to Detain Plaintiffs or to Order ICE to Detain Plaintiffs in a Particular
           Facility. ............................................................................................... 12

iv. ICE's Detention of Plaintiffs, and the Resulting Separation of Plaintiffs From The Minors With Whom They Are Apprehended Do Not Violate the Fifth Amendment. ................................................................................. 14

    1. There is no Consitutuional Right For Immigration Detainees to be Detained With Their Children. ............................................................ 14

    2. ICE's Actions do Not Violate Plaintiffs' Substantive Due Process Rights. ........................................................................................... 17

    3. Plaintiffs have Not Stated a Claim For Any Procedural Due Process Violation................................................................................... 18

v. Plaintiffs' APA Claim Fails Because The Agency Action About Which Plaintiffs Complain Is Not Arbitrary or Capricious....................................... 18

V. CONCLUSION.................................................................................. 21

## TABLE OF AUTHORITIES

*Abdala v. INS*,
488 F.3d 1061 (9th Cir. 2007) ................................................................. 6

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ...................................................................... 15

*Allstar Marketing Grp., LLC v. Your Store Online LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................................... 8

*Angov v. Lynch*,
788 F.3d 893 (9th Cir. 2013) ................................................................. 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 20

*Avramenkov v. I.N.S.*,
99 F. Supp. 2d 210 (D. Conn. 2000) ...................................................... 13

*Barrera–Echavarria v. Rison*,
44 F.3d 1441 (9th Cir. 1995) ................................................................. 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 20

*Comm. of Cent. Am. Refugees v. INS*,
795 F.2d 1434 (9th Cir. 1986) ............................................................... 13

*Cty of Sacramento v. Lewis*,
523 U.S. 833 (1998) ............................................................................... 17

*Dist. No. 1, Pac. Coast Dist. v. State of Alaska*,
682 F.2d 797 (9th Cir. 1982) ................................................................... 8

*Edwards v. Johnson*,
209 F.3d 772 (5th Cir. 2000) ................................................................. 16

*Fiallo v. Bell*,
430 U.S. 787 (1977) ............................................................................... 15

*Flores v. Johnson*,
212 F. Supp. 3d 864 (C.D. Cal. 2015) ................................................... 14

*Flores v. Lynch*,
212 F. Supp. 3d 907 (C.D. Cal. 2015) ................................................... 14

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) ................................................................. 14

*Flores v. Lynch,*
2017 WL 6049373 (C.D. Cal., Jan. 20, 2017) ...................................................... 14

*Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n,*
450 U.S. 147 (1981) ........................................................................................... 9

*Florida Nursing Home Ass'n v. Page*,
616 F.2d 1355 (5th Cir. 1980) .......................................................................... 9

*Gallanosa by Gallanosa v. United States*,
785 F.2d 116 (4th Cir. 1986) ........................................................................... 15

*Gandarillas-Zambrana v. BIA,*
44 F.3d 1251 (4th Cir. 1995) ........................................................................... 13

*Giammarco v. Kerlikowske,*
665 Fed. App'x 24 (2d Cir. 2016) ................................................................... 12

*Gordon v. Mule*,
153 F. App'x 39 (2d Cir. 2005) ....................................................................... 15

*Hatami v. Chertoff,*
467 F. Supp. 2d 637 (E.D. Va. 2006) .............................................................. 12

*Iron Arrow Honor Society v. Heckler*,
464 U.S. 67 (1983) ............................................................................................ 6

*Kelly v. Echols*,
No. Civ. F05118 AWI SMS, 2005 WL 2105309 (E.D. Cal. Aug. 30, 2005) ...... 8

*Kucana v. Holder*,
558 U.S. 233 (2010) .......................................................................................... 11

*Lamont v. Haig*,
590 F.2d 1124 (D.C. Cir. 1978) ......................................................................... 9

*Loa-Herrera v. Trominski,*
231 F.3d 984 (5th Cir. 2000) ........................................................................... 12

*Lyons v. Clark*,
694 F. Supp. 184 (E.D. Va. 1988) ................................................................... 16

*Marsh v. Cty. of San Diego*,
680 F.3d 1148 (9th Cir. 2012) ......................................................................... 17

*Mathews v. Diaz*,
426 U.S. 67 (1976) ........................................................................................... 16

*Matter of X-K-,*
23 I. & N. Dec. 731 (2005) ........................................................................ 3, 11

iv

*Milan-Rodriguez v. Sessions*,
No. 116CV01578AWISABHC, 2018 WL 400317 (E.D. Cal. Jan. 12, 2018)..........................15

*Milardo v. Kerilikowske*,
No. 3:16-MC-99, 2016 WL 1305120 (D. Conn. Apr. 1, 2016) ....................................11

*Mitchell v. Dupnik*,
75 F.3d 517 (9th Cir. 1996) ................................................................6

*Montanye v. Haymes*,
427 U.S. 236 (1976)........................................................................16

*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015) ..............................................................20

*Murphy v. Hunt*,
455 U.S. 478 (1982).........................................................................6

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ..............................................................8

*Naul v. Gonzales*,
No. 05-4627, 2007 WL 1217987 (D.N.J. Apr. 23, 2007) .......................................12

*Newbold v. Stansberry*,
No. 1:08CV1266 (LO/JPP), 2009 WL 86740 (E.D. Va. Jan. 12, 2009)...........................16

*Olim v. Wakinekona*,
461 U.S. 238 (1983) .......................................................................16

*Overton v. Bazzetta*,
539 U.S. 126 (2003) .......................................................................15

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979) ...............................................................8

*Reno v. Flores*,
507 U.S. 292 (1993).........................................................................18

*Reuben H. Donnelley Corp. v. F.T.C.*,
580 F.2d 264 (7th Cir. 1978) ...............................................................9

*Rios-Berrios v. INS*,
776 F.2d 859 (9th Cir. 1985) ..............................................................13

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) .........................................................................7

*Saravia, et al. v. Sessions, et al.*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................................6

*Sasso v. Milhollan*,
735 F. Supp. 1045 (S.D. Fla. 1990) ..................................................................13

*Shaar v. INS*,
141 F.3d 953 (9th Cir. 1998) ..........................................................................20

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) ........................................................................................21

*Spencer Enters., Inc. v. United States*,
345 F.3d 683 (9th Cir. 2003) ..........................................................................13

*Spencer v. Kemna*,
523 U.S. 1 (1998) ..............................................................................................6

*Springle v. City of New York*,
No. 11 CIV 8827 NRB, 2013 WL 592656 (S.D.N.Y. Feb. 14, 2013) ..............9

*United Farm Workers v. Ariz. Agric. Employment Relations Bd.*,
669 F.2d 1249 (9th Cir. 1982) ........................................................................19

*United States v. Bush*,
No. CR 12-92, 2015 WL 7444640 (W.D. Pa. Nov. 23, 2015) ........................11

*Van Dinh v. Reno*,
197 F.3d 427 (10th Cir. 1999) ........................................................................13

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ........................................................................................17

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................................................................18

*White v. Pazin*, No.,
112CV00917BAMPC, 2016 WL 6124234 (E.D. Cal. Oct. 19, 2016) ............16

*Wood v. United States*,
175 Fed. App'x 419 (2d Cir. 2006) ............................................................13, 14

## STATUTES

5 U.S.C. § 701(a)(2) ..........................................................................................18

5 U.S.C. § 704 ..................................................................................................19

6 U.S.C. § 279(g)(2) ...............................................................................4, passim

8 U.S.C. § 1182(b)(5) ..........................................................................................3

8 U.S.C. § 1182(d)(5)(A) ..............................................................................2, 15

vi

8 U.S.C. § 1225(b) ............................................................................................ 2, 10, 11

8 U.S.C. § 1225(b)(1)(B) ................................................................................................ 3

8 U.S.C. § 1225(b)(1)(B)(iii) .......................................................................................... 3

8 U.S.C. § 1225(b)(1)(B)(iii)(III) .................................................................................... 3

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .................................................................................... 2

8 U.S.C. § 1225(b)(1)(C) ................................................................................................ 3

8 U.S.C. § 1226(a) .......................................................................................................... 2

8 U.S.C. § 1226(e) ........................................................................................................ 12

8 U.S.C. § 1229a ............................................................................................................ 3

8 U.S.C. § 1231(g)(1) ........................................................................................ 12, 13, 14

8 U.S.C. § 1232(b)(1) ..................................................................................................... 4

8 U.S.C. § 1232(b)(3) ......................................................................................... 4, passim

8 U.S.C. § 1232(c)(3) ..................................................................................................... 5

8 U.S.C. § 1232(c)(3)(A) ................................................................................................ 5

8 U.S.C. § 1252(a)(2)(A)(iii) .......................................................................................... 3

8 U.S.C. § 1252(a)(2)(B)(ii) .................................................................................... 12, 13

8 U.S.C. § 1252(c) ........................................................................................................ 14

8 U.S.C. § 1325 ............................................................................................................ 10

28 U.S.C. § 1331 ............................................................................................................ 8

28 U.S.C. § 1391(e)(1) ................................................................................................... 8

28 U.S.C. § 1406(a) .................................................................................................... 8, 9

28 U.S.C. § 2241 ...................................................................................................... 7, 19

28 U.S.C. § 2242 ............................................................................................................ 7

28 U.S.C. § 2243 ............................................................................................................ 7

Pub. L. No. 110-457 ....................................................................................................... 3

# FEDERAL RULES OF CIVIL PROCEDURES

Fed. R. Civ. P. 12(b)(3)............................................................................................8

# REGULATIONS

8 C.F.R. § 208.30............................................................................................3

8 C.F.R. § 208.30(f)............................................................................................3

8 C.F.R. § 212.5(b)............................................................................................3, 10

8 C.F.R. § 235.3(b)(4)............................................................................................3

8 C.F.R. § 235.3(c)............................................................................................2

8 C.F.R. § 235.5(b)(2)(iii)............................................................................................2

8 C.F.R. § 235.5(b)(4)(ii)............................................................................................2, 11

8 C.F.R. § 236.1(c)(8)............................................................................................3

8 C.F.R. § 1003.19(h)(2)(i)(B)............................................................................................2

8 C.F.R. § 1003.42(d)............................................................................................3

8 C.F.R. § 1003.42(f)............................................................................................3

8 C.F.R. § 1241.1(b)............................................................................................5

# OTHER AUTHORITIES

69 Fed. Reg. 48............................................................................................2

Pub. L. 104-208............................................................................................18

# I

## INTRODUCTION

The critical flaw in Plaintiffs' Amended Complaint is that Plaintiffs erroneously seek to recast lawful immigration enforcement and detention by the Government as a separate act of "forcible separation of parents from their young children," while failing to acknowledge the applicable legal structure that governs the actions taken by the Government in this case. As a threshold matter, Ms. L.'s claims should be dismissed as moot because Ms. L. has been released from custody and reunified with her daughter, and therefore already has received all of the relief she requested from this Court. In addition, the claims of Ms. C., who is detained in the Western District of Texas (and was detained there at the time the Amended Complaint was filed), have no nexus to the Southern District of California and should be dismissed for lack of venue, or transferred.

Moreover, even if this Court finds that it has jurisdiction and venue to consider Plaintiffs' claims, Plaintiffs have not otherwise established any right to relief in this case. Plaintiffs do not—and cannot—challenge the lawfulness of their arrests and detention by immigration authorities. Nonetheless, Plaintiffs request that this Court order U.S. Immigration and Customs Enforcement ("ICE") to either parole Plaintiffs, or hold Plaintiffs in an ICE family residential facility. However, this Court has no authority to order either of these forms of relief because these are discretionary immigration actions that are shielded from review by statute.

Plaintiffs' claims also fail because Plaintiffs seek to establish a constitutional right for aliens to be detained along with their minor children, but that right is recognized nowhere in the law, and in fact would provide Plaintiffs with greater rights than those given to United States citizens in pretrial detention. In addition, Plaintiffs have not established that their lawful arrest and detention by ICE—and in the case of Ms. C., prosecution and criminal custody—violated the Fifth Amendment, Administrative Procedures Act ("APA"), or asylum laws. Thus, their Amended Complaint should be dismissed in its entirety.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II

APPLICABLE LEGAL FRAMEWORK

A. Detention Under 8 U.S.C. § 1225(b)

A significant number of aliens who seek to enter the United States without any documentation allowing for their admission are subject to a process commonly referred to as "expedited removal," codified at 8 U.S.C. § 1225(b), which provides an accelerated removal process for certain aliens. 69 Fed. Reg. 48,877 (Aug. 11, 2004). Congress has explicitly mandated the detention of individuals who are in the expedited removal process and have not been found to have a credible fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

Individuals subject to mandatory detention under expedited removal are eligible for release from immigration detention only if they are granted parole under the limited criteria in 8 U.S.C. § 1182(d)(5)(A) (DHS may, in its "discretion parole into the United States temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ."). *See also* 8 C.F.R. §§ 235.3(b)(2)(iii) and 235.3(b)(4)(ii) (parole of aliens in who are awaiting a credible fear determination or who have not expressed a fear of return "may be permitted only when the [Secretary of Homeland Security] determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective."). Thus, an alien who is subject to expedited removal, and who is seeking to establish that he or she has credible fear, is not subject to discretionary detention under 8 U.S.C. § 1226(a) and is ineligible for release on bond or a bond redetermination hearing before an immigration judge. 8 C.F.R. §§ 235.3(c), 1003.19(h)(2)(i)(B).

If a U.S. Citizenship and Immigration Services ("USCIS") asylum officer interviews an individual in expedited removal proceedings and determines that he or she has a credible fear of persecution or torture, the individual may seek asylum or other protection from removal before an immigration judge. 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. §§ 208.30, 235.3(b)(4). If the asylum officer determines the individual does not have a credible fear of persecution or torture, the individual may request review of that determination by an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(d). If the immigration judge determines that the individual does not have a credible fear of persecution or torture, he or she may be removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii); *see also* 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii); 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

If either the asylum officer or the immigration judge determines that the alien has a credible fear of persecution or torture, expedited removal proceedings are vacated and the alien is referred for removal proceedings before an immigration judge under 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f). However, even after an individual is found to have a credible fear, release from detention is still limited to carefully prescribed circumstances. Depending on the circumstances of the aliens' arrest, the alien may either be eligible for parole, if the Department concludes it is necessary for "urgent humanitarian reason or significant public benefit," 8 U.S.C. § 1182(b)(5); *see also* 8 C.F.R. § 212.5(b) (identifying categories of aliens for whom parole may serve an urgent humanitarian reason or significant public benefit), or the individual may be eligible for bond, if the alien can show "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding," 8 C.F.R. § 236.1(c)(8); *Matter of X-K-*, 23 I. & N. Dec. 731 (2005).

B. <u>The Trafficking Victims Protection and Reauthorization Act ("TVPRA")</u>

The TVPRA was signed into law on December 23, 2008. Pub. L. No. 110-457. The TVPRA confirmed that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services ["HHS"]." 8 U.S.C. § 1232(b)(1). An "unaccompanied alien child" ("UAC") is defined as "a child who (A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Under the TVPRA, except in the case of "exceptional circumstances," an agency must transfer all UACs to the custody of HHS, Office of Refugee Resettlement ("ORR") within 72 hours of the agency's determination that a child in its custody is, in fact, a UAC. 8 U.S.C. § 1232(b)(3).

III

<u>STATEMENT OF FACTS</u>

Ms. L. is a citizen of the Democratic Republic of the Congo, who sought admission to the United States on November 1, 2018 at the San Ysidro, California Port of Entry. Amended Complaint, ECF No. 32, ¶¶ 10, 40. She was accompanied by her daughter S.S. *Id.* ¶ 40. Ms. L. stated that she wished to seek asylum, and CBP officers therefore referred her to an interview with a USCIS asylum officer. *Id.* ¶¶ 40-41. ICE did not exercise its discretion to parole Ms. L. and S.S. into the United States, and Ms. L was detained by ICE at the Otay Mesa Detention Center. *Id.* ¶ 41. Because Ms. L. was subject to mandatory detention by ICE, S.S. had "no parent or legal guardian in the United States . . . available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Therefore, in accordance with the TVPRA, S.S. was transferred to the custody of ORR. 8 U.S.C. § 1232(b)(3); Amended Complaint ¶ 42.

On November 17, 2017, a USCIS asylum officer conducted a credible fear interview for Ms. L. Amended Complaint ¶ 41; [ECF No. 50 at 20.] The asylum officer determined that Ms. L had met the credible fear threshold to have her asylum application heard by an immigration judge. Amended Complaint ¶ 41; [ECF No. 50 at 20.] Ms. L appeared, unrepresented, before Immigration Judge Halliday-Roberts and was granted a continuance until January 26, 2018, to seek legal representation. [ECF No. 50 at 25.] On January 26, 2018, Ms. L appeared again, unrepresented, before Judge Halliday-Roberts, stating her desire to continue without an attorney. [ECF No. 50 at 26.] The immigration judge ordered that Ms. L be removed from the United States. [ECF No. 50 at 28, 31.] Ms. L waived appeal, and so her removal order became immediately final. *See* 8 C.F.R. § 1241.1(b).

Ms. L. then remained in ICE detention pending her removal from the United States pursuant to the final order of removal. On February 28, 2018, Ms. L. filed a motion to reconsider her removal order with the immigration court. [ECF No. 50 at 33-47.] On March 5, 2018, Ms. L. submitted a request to ICE to stay her removal given her pending "Motion to Reconsider and possible Motion to Reopen or Appeal to [Board of Immigration Appeals]." [ECF No. 50 at 48-49.] On March 6, 2018, ICE granted the request for stay of removal. [*Id.*] That same day, ICE released Ms. L from detention. Amended Complaint ¶ 41.

ORR immediately took steps to verify whether Ms. L and S.S. are mother and daughter by conducting a DNA test, and on March 12, 2018 received results showing that they are. [ECF Doc. 44.] ORR also made the TVPRA-mandated "determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); *see also* ORR Guide §§ 2.2, 2.7.8; Status Report, Mar. 19, 2018, ECF No. 49; 8 U.S.C. § 1232(c)(3). Once ORR had completed the steps mandated by the TVPRA for the protection of minors in Government custody, on March 16, 2018, ORR released S.S. in Ms. L.'s custody.

Ms. C. is a citizen of Brazil, who entered the United States between ports of entry, and was apprehended by U.S. Border Patrol soon after entry. Amended Complaint, ¶¶ 11,

55. She was accompanied by her minor son J. *Id.* ¶ 55. After being arrested by Border Patrol, Ms. C. stated that she wished to seek asylum. *Id.* ¶ 55. Ms. C. was prosecuted for illegally entering the United States under 8 U.S.C. § 1325, and was sentenced to serve time in criminal custody. *Id.* ¶¶ 56-57. Because Ms. C. was prosecuted and sentenced to jail time, J. had "no parent or legal guardian in the United States . . . available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Therefore, in accordance with the TVPRA, J. was transferred to the custody of ORR. 8 U.S.C. § 1232(b)(3); Amended Complaint ¶ 56. Ms. C. has since been found to have credible fear, and placed in removal proceedings. *Id.* ¶ 55. After her release from criminal custody, ICE took her into custody and she remains in ICE detention in the West Texas Detention Center. *Id.* ¶ 57.

IV

ARGUMENT

A. <u>The Claims of Named Plaintiff Ms. L. Should Be Dismissed Because They Are Moot.</u>

The case or controversy requirement of Article III of the Constitution deprives the court of jurisdiction to hear moot cases. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983). A case becomes moot if the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) ("At any stage of the proceeding a case becomes moot when 'it no longer present[s] a case or controversy under Article III, § 2 of the Constitution.'") (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Ms. L has been released from ICE detention pending her motion to reconsider her removal order, and S.S. has been reunified with her through ORR's reunification process. Therefore her claims—which ask the Court to enjoin Defendants from separating her from S.S., and to release her from custody along with S.S. or to detain her with S.S. in an ICE family residential center—are moot. Accordingly, because this Court does not have power to decide a case that does not affect the rights of litigants in the case before it, Ms. L.'s claims should be dismissed. *See Mitchell v. Dupnik*, 75 F.3d 517, 527-28 (9th Cir. 1996).

B. <u>The Claims of Named Plaintiff Ms. C. Should be Dismissed Because This Court is Not The Proper Venue For Any of Her Claims.</u>

Each named plaintiff in a putative class action must independently establish that the Court has venue over her claims. *See Saravia, et al. v. Sessions, et al.*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) ("At least in most instances, the rule in a proposed class action is that each named plaintiff must independently establish venue."). Because this Court does not have venue over any of Ms. C.'s claims, her claims must be dismissed.

i. *The Court Does Not Have Habeas Jurisdiction Over Ms. C.'s Habeas Claims.*

Ms. C. pleads jurisdiction under two separate statutes that may constitute a waiver of the Government's sovereign immunity, and therefore permit her claims. First, she raises claims under habeas corpus, 28 U.S.C. § 2241. However, to the extent she seeks relief through a writ of habeas corpus, her petition for such a writ must be brought in the district in which she is detained, which in Ms. C's case is the Western District of Texas. The Supreme Court instructed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that the proper respondent to a habeas petition brought under 28 U.S.C. § 2241 is the person with immediate physical custody over the petitioner. *Padilla*, 542 U.S. at 435. For "core" habeas challenges—defined as "challenges to present physical confinement"—brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." *Padilla*, 542 U.S. at 435; *see also* 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained.").

For this Court to have jurisdiction over a habeas action for Ms. C. then, it must have jurisdiction over the properly named custodian. *See id.* at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). Ms. C. alleges that at the time the Amended Complaint was filed she was held by ICE in the West Texas Detention Facility, which is located in Sierra Blanca, Texas. Ms. C. has not complied with 28 U.S.C. § 2242, because she does not allege "the name of

the person who has custody over [her] and by virtue of what claim or authority[,]" however it is clear that in any event such individual would be located within the Western District of Texas, and not the Southern District of California. Because this court does not have jurisdiction over any proper respondent for Ms. C.'s habeas claims, those claims should be dismissed.

   ii.   *Ms. C.'s APA Claims Should Be Dismissed for Improper Venue Under 28 U.S.C. § 1406(a).*

Ms. C. also seeks to bring claims under the APA and federal question jurisdiction, 28 U.S.C. § 1331. The federal venue statute provides that a civil action against an officer or agency of the United States may:

> [B]e brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

28 U.S.C. § 1391(e)(1). If the court determines that venue is improper, it may dismiss the case, or, in the interest of justice, transfer it to any district in which it properly could have been brought. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. State of Alaska*, 682 F.2d 797, 799 n.3 (9th Cir. 1982).

Where there are multiple parties and/or claims, "'the plaintiff must establish that venue is proper as to each defendant and as to each claim.'" *Allstar Marketing Grp., LLC v. Your Store Online LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (quoting *Kelly v. Echols*, No. Civ. F05118 AWI SMS, 2005 WL 2105309, at *11 (E.D. Cal. Aug. 30, 2005)). On a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations

omitted). Plaintiffs bear the burden to establish that venue is proper in this district when venue is challenged under 28 U.S.C. § 1406(a). *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California.").

Ms. C. does not allege that she resides in the Southern District of California. Ms. C. also alleges no events or omissions with regard to her claims that occurred within the Southern District of California. Relatedly, the only named Defendants who reside within the Southern District of California for venue purposes, Greg Archambeault, San Diego Field Office Director, ICE, Joseph Greene, San Diego Assistant Field Office Director, ICE, and Pete Flores, San Diego Field Director, CBP, are not alleged to have taken any actions with regard to Ms. C.[1] Thus they are not properly named as Defendants to her claims, and cannot provide a basis to find venue for those claims in this District. Because there is no basis on

---

[1] The Ninth Circuit has not addressed the issue of where a government official or agency "resides" for purposes of §1391(e). The District of Columbia Circuit and district courts in the Second Circuit have held that a government official "resides" under § 1391(e) in the place where his duties are performed. *See Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978); *Springle v. City of New York*, No. 11 CIV 8827 NRB, 2013 WL 592656, at *8 (S.D.N.Y. Feb. 14, 2013) ("[C]ourts in this Circuit have held that "residence for the purpose of venue is where the officials perform their duties."); *see also Florida Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), rev'd on other grounds sub nom. *Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (noting that under section 1391(b), the general venue statute, "[t]he general rule in suits against public officials is that a defendant's residence for venue purpose is the district where he performs his official duties."). The Seventh Circuit has limited the residence of agencies under § 1391(e) to their national headquarters. *See Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) (holding that permitting a government agency to be sued in any district where it has an office "would mean that a plaintiff could file a suit in any district regardless of how remote that district's contact may be with the litigation"). Regardless of whether the Court adopts the D.C. or Seventh Circuit's approach, the three named Defendants who have their place of business in San Diego, California are the only three Defendants who may be said to reside in this District. None of the agencies sued here have their national office in the State of California.

which venue for Ms. C.'s claims may be found in this District, the Court should dismiss those claims, or transfer them to the Western District of Texas. 28 U.S.C. § 1406(a).

C. Plaintiffs' Claims Fail as a Matter of Law.

   i.   *The Government's Detention of The Named Plaintiffs Does Not Violate Applicable Law or The Constitution.*

Plaintiffs' Amended Complaint seeks to raise claims concerning what they allege is "forcible separation" of the Plaintiffs from their minor children. However, Plaintiffs fail to acknowledge that in fact that separation occurs not as a separate act by the Government, but as the result of the Government taking lawful immigration enforcement and detention actions. Thus, as an initial matter, it is important to note that both named Plaintiffs in this case were lawfully detained by the Government. Plaintiffs do not dispute the lawfulness of their detention, nor can they.

Specifically, Ms. L. was detained by ICE under 8 U.S.C. § 1225(b), as an alien in expedited removal proceedings who was pursuing a credible fear claim. ICE denied her parole from custody in an exercise of its discretion, *see* 8 C.F.R. § 212.5(b), a lawful decision which cannot be reviewed by this Court for the reasons discussed below. ICE determined that she should be held in the Otay Mesa Detention Center, a lawful decision which is also unreviewable by this Court as described below. When ICE detained Ms. L, there was no parent or guardian available to provide care or physical custody for S.S., and she therefore became a UAC and subject to the provisions of the TVPRA that required ICE to transfer her into the custody of ORR. *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3). The separation of Ms. L. and S.S. therefore was a result of these lawful enforcement and detention decisions, and not itself a separate action subject to review by this Court. Because the Government's detention of Ms. L. was lawful, and the resulting placement of S.S. with ORR was then required by statute, these actions provide no basis for this Court to order the relief requested by Ms. L., and her claims therefore should be dismissed.

Similarly, after crossing illegally into the United States between ports of entry, Ms. C. was prosecuted by the U.S. Government under 8 U.S.C. § 1325, and was sentenced to

1  criminal custody. Ms. C. does not challenge the legality of her prosecution or her subsequent

2  sentencing. Because Ms. C. was transferred to criminal custody, there was no parent or legal

3  guardian available to provide care of physical custody for J., and therefore he became a

4  UAC and subject to the provisions of the TVPRA that required him to be transferred into

5  the custody of ORR. *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3). When Ms. C. was

6  released from criminal custody, she was then taken into custody by ICE under 8 U.S.C. §

7  1225(b), because she was in expedited removal proceedings and her credible fear claim

8  remained pending. *See* 8 C.F.R. § 235.5(b)(4)(ii). As Ms. C. has been found to have credible

9  fear, she is eligible to receive a bond hearing before an immigration judge. *See Matter of X-*

10  *K-*, 23 I. & N. Dec. 731 (2005). However, Ms. C. does not allege whether she has sought,

11  or received, such a hearing. As with Ms. L., because the Government's detention of Ms. C.

12  was lawful, and the resulting placement of J. with ORR was then required by statute, these

13  actions provide no basis for this Court to order the relief requested by Ms. C., and her claims

14  therefore should be dismissed.

15        ii.    *This Court Lacks Jurisdiction to Review The Government's Discretionary*

16               *Decisions to Detain—Rather Than Parole—The Named Plaintiffs.*

17        Plaintiffs' Amended Complaint asks this Court to order the Government to release

18  them, or in the alternative to hold them together in an ICE family residential center.

19  Amended Complaint, Prayer for Relief, ¶ E. As an initial matter, Plaintiffs' request for

20  release amounts to a request that this Court overturn ICE's decision to detain, rather than

21  parole, each named Plaintiff. However, this Court lacks jurisdiction to review that decision.

22  The Supreme Court has clarified that a decision unambiguously "specified by statute 'to be

23  in the discretion of the [Government]'"—as in 8 U.S.C. § 1182(d)(5)(A)—is "shielded from

24  court oversight by § 1252(a)(2)(B)(ii)." *Kucana v. Holder*, 558 U.S. 233, 248 (2010).

25        Post-IIRIRA cases have recognized the non-reviewability of parole determinations

26  in light of § 1252(a)(2)(B)(ii). *Milardo v. Kerilikowske*, No. 3:16-MC-99, 2016 WL

27  1305120, *6, 9 (D. Conn. Apr. 1, 2016) (ICE's discretionary parole decisions are "generally

28  not subject to judicial review, and [are] never subject to judicial review by a district court");

1  *United States v. Bush*, No. CR 12-92, 2015 WL 7444640, *1 (W.D. Pa. Nov. 23, 2015)

2  (finding that 1252(a)(2)(B)(ii) "explicitly denies courts the jurisdiction to review" parole

3  decisions, "except insofar as those claims raise constitutional issues, then only the

4  appropriate court of appeals shall hear the case"); *Naul v. Gonzales*, No. 05-4627, 2007 WL

5  1217987, *2-*3 (D.N.J. Apr. 23, 2007) (parole denial pursuant to § 1182(d)(5)(A) "is a

6  discretionary decision outside this Court's review").

7       Not only does section 1252(a)(2)(B)(ii) apply to ICE's discretionary grant or denial

8  of parole, but it also extends to the procedures ICE employs in exercising that discretion.

9  *See, e.g., Giammarco v. Kerlikowske*, 665 Fed. App'x 24, 25-26 (2d Cir. 2016) (petitioner's

10  indirect challenge to discretionary denial of parole was barred by § 1252(a)(2)(B)(ii)); *Loa-*

11  *Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000) ("'the [Government's]

12  discretionary judgment regarding the application of' parole—including the manner in which

13  that discretionary judgment is exercised, and whether the procedural apparatus supplied

14  satisfies regulatory, statutory, and constitutional constraints—is 'not … subject to review,'"

15  quoting 8 U.S.C. § 1226(e)); *Hatami v. Chertoff*, 467 F. Supp. 2d 637, 640-41 (E.D. Va.

16  2006) (challenge to the "manner and form" of alien's bond hearing was unreviewable under

17  § 1252(a)(2)(B)(ii)). Because ICE's decision not to grant parole to the named Plaintiffs was

18  clearly committed to its discretion under the statute, that decision is not subject to review

19  by this Court, and this Court correspondingly cannot grant Plaintiffs the relief they request

20  by ordering ICE to exercise its discretion to parole the named Plaintiffs.

21       iii.   *This Court Lacks Jurisdiction to Review ICE's Decisions Regarding Where to*
22             *Detain Plaintiffs or to Order ICE to Detain Plaintiffs in a Particular Facility.*

23       Plaintiffs make the alternative request that the Court order the Government to detain

24  them with their children in an ICE family residential center. Amended Complaint, Prayer

25  for Relief, ¶ E. However, the Court also lacks jurisdiction to order ICE to detain Plaintiffs

26  in a particular ICE facility, because the Court lacks subject matter jurisdiction to review the

27  discretionary determination of ICE under 8 U.S.C. § 1231(g)(1) as to the "appropriate places

28  of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. §

12

1252(a)(2)(B)(ii). Specifically, that statute provides that no court has jurisdiction to review any decision or action the Attorney General has discretion to make "under this subchapter" except for "the granting of relief under section 1158(a)." Among the actions referred to agency discretion are determinations on where to detain aliens in ICE custody. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) (holding that Executive "has the authority, conferred by statute, to choose the location for detention and to transfer aliens to that location"), *as amended*, 807 F.2d 769 (1987); *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide."); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

Thus, ICE's discretionary the decision to detain an alien in a particular facility is not judicially reviewable. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) ("Under § 1252(a)(2)(B)(ii), . . . if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable."); *See also Gandarillas-Zambrana*, 44 F.3d at 1256; *Wood v. United States*, 175 Fed. App'x 419, 420 (2d Cir. 2006) (holding that Executive "in the exercise of his statutory discretion in light of the available facilities, determined to hold Wood in an Arizona detention center. The Attorney General was not required to detain Wood in a particular state"); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 213–15 (D. Conn. 2000) (holding that due to discretionary review bar of 8 U.S.C. § 1252(a)(2)(B)(ii) "the court lacks jurisdiction to prevent the INS

1    from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana.").[2]

2    Accordingly, this Court lacks the authority to order ICE to transfer Plaintiffs to an ICE

3    family residential facility, and therefore Plaintiffs' claims seeking this relief fail as a matter

4    of law.[3]

5        iv.   *ICE's Detention of Plaintiffs, And The Resulting Separation of Plaintiffs From*

6              *The Minors With Whom They Are Apprehended do Not Violate the Fifth*

7              *Amendment.*

8                    1.   <u>There is no Constitutional Right For Immigration Detainees to be</u>

                          <u>Detained With Their Children.</u>

9

10        The separation of Plaintiffs and their minor children did not violate the Fifth

11   Amendment, and thus Count I should be dismissed. In essence, Plaintiffs ask this Court to

12   recognize a constitutional right of immigration detainees to be detained with their children.

13   However, the extent of any right that parents may have in terms of a relationship with their

14   children (or vice versa) necessarily depends on the circumstances of a particular case. *See,*

15   _____

     [2] Although *Gandarillas-Zambrana* and *Committee of Central American Refugees* referred

16   to the statutory authority for the Executive to decide on the location of immigration

17   detention as arising from 8 U.S.C. § 1252(c), that statutory authority has been transferred

     to 8 U.S.C. § 1231(g)(1), the statute cited by *Wood*. *See Wood*, 175 F. App'x at 420; Pub.

18   L. 104-208, Div. C, Title III, §§ 305(a)(3), 110 Stat. 3009 (1996); *compare also* 8 U.S.C. §

     1252(c) (West 1994) with 8 U.S.C. § 1231(g)(1). This technical statutory modification has

19   no bearing on the issues here, or the applicability of the above-cited authority to the instant

20   claims.

21   [3] It should also be noted that ICE family residential centers are necessarily limited to the

22   detention of verified family units. Thus, detention at an ICE family residential center may

     not be an available option for all adults who are encountered or apprehended by the U.S.

23   Department of Homeland Security along with a minor child, and who claim to be parent

     and child, but whose relationship cannot immediately be verified. Moreover, the

24   Government's ability to hold family units in ICE family residential centers is subject to the

25   limitations of the *Flores* Settlement Agreement, as interpreted more recently in a series of

     decisions by the U.S. District Court for the Central District of California and the Ninth

26   Circuit. *See Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v. Lynch*, 212

27   F. Supp. 3d 907 (C.D. Cal. 2015); *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016); *Flores v.*

     *Lynch*, 2017 WL 6049373 (C.D. Cal., Jan. 20, 2017). These court decisions place further

28   restrictions on ICE's ability to detain family units together in all instances.

1    *e.g., Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (recognizing that rights of familial

2    association apply differently when an individual is imprisoned). Moreover, Congress has

3    broad power to regulate immigration, even when Congress' decisions touch on sensitive

4    familial relationships. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 797-98 (1977).

5         The courts have rejected attempts to establish that individuals in detention—whether

6    aliens or U.S. citizens—have any substantive due process right to family visitation, or to

7    detention in proximity to family members, let alone a right to be detained—much less

8    released—together. *See, e.g., Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (rejecting the

9    notion of a due process right to family visitation in immigration detention). Relying on

10   *Aguilar*, the U.S. District Court for the Eastern District of California recently held:

11        The Court has been unable to find a Ninth Circuit case that addresses the
12        specific issue of whether immigration detention and transfers violate the
         substantive due process right to family integrity. However, there is a First
13        Circuit case that the Court finds instructive and persuasive . . . . The *Aguilar*
         class alleged that ICE's actions violated, *inter alia*, their substantive due
14        process rights of family integrity and of parents to make decisions as to the
15        care, custody, and control of their children.

16                                    * * *

17        The Court recognizes the burden Petitioner's immigration proceedings and
18        prolonged detention has placed on his family and is sympathetic to his
         situation. However, no authority has been presented to this Court that holds
19        an immigration detainee has a due process right to be placed in a facility near
         his family in order to facilitate visitation . . . . Petitioner has not alleged that
20        government action resulted in termination of his parental rights or interfered
21        with his right to make fundamental decisions regarding his children's
22        upbringing.

23   *See Milan-Rodriguez v. Sessions*, No. 116CV01578AWISABHC, 2018 WL 400317, at *8-

24   10 (E.D. Cal. Jan. 12, 2018) (citations omitted); *see also Gallanosa by Gallanosa v. United*

25   *States*, 785 F.2d 116, 120 (4th Cir. 1986) ("The courts of appeals that have addressed this

26   issue have uniformly held that deportation of the alien parents does not violate any

27   constitutional rights of the citizen children."); *Gordon v. Mule*, 153 F. App'x 39, 42 (2d Cir.

28

2005) (citing Government's plenary power over immigration to reject claim that removal violates substantive due process right to family unity).

To the extent that immigration detainees are analogous to pretrial detainees, *see Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee."), Plaintiffs' claims, in effect, would require the Court to find that arriving aliens have greater constitutional rights than U.S. citizens in pretrial detention. In a recent case, the U.S. District Court for the Eastern District of California examined the constitutional rights of a pretrial detainee to visit his minor children. *See White v. Pazin*, No. 112CV00917BAMPC, 2016 WL 6124234, at *6 (E.D. Cal. Oct. 19, 2016), *report and recommendation adopted*, No. 112CV00917AWIBAMPC, 2017 WL 661928 (E.D. Cal. Feb. 16, 2017). In *White*, the plaintiff complained that, while he was detained as a pretrial detainee, his visitation rights were suspended, and he was no longer allowed to visit with his minor children under the age of 12 years. *Id.* at *2. The court concluded that "the relevant law does not show there was any clearly established right protecting an inmate from policies banning visitations with his minor children at the time of the events at issue." *Id.* at *11. Arriving aliens do not have greater constitutional rights than U.S. citizens. *See Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.").[4] Thus no such constitutional right exists, and Claim I should be dismissed.

---

[4] The Supreme Court has also rejected an analogous claim of due process rights to family visitation among criminal detainees. *See Olim v. Wakinekona*, 461 U.S. 238, 247–48 & n.8 (1983) (interstate transfer of a criminal detainee does not violate any due process rights of the detainee, even if the transfer leaves the detainee separated hundreds of miles from his family) (citing *Montanye v. Haymes*, 427 U.S. 236, 241 n.4 (1976)); *see also Newbold v. Stansberry*, No. 1:08CV1266 (LO/JPP), 2009 WL 86740, at *3 (E.D. Va. Jan. 12, 2009) (O'Grady, J.) (holding that "a prisoner has no due process interest in his placement at a particular prison, nor does the Constitution guarantee that the convicted prisoner will be placed in any particular prison. Nor does a prisoner have a constitutional right to receive visits from friends or family members.") (internal quotations and citations omitted), *aff'd,*

2. ICE's Actions do Not Violate Plaintiffs' Substantive Due Process Rights.

To establish a substantive due process violation, Plaintiffs must establish that the Government has engaged in conduct that is so outrageous that it shocks the conscience. *See Cty of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *see also Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (to violate the "well-established substantive due process right to family integrity," "the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency.'"). The Supreme Court has warned against analyzing claimed substantive due process rights "at too general a level." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

As described above, the separation of Plaintiffs and their children, in each individual case, comes as a result of lawful immigration enforcement and detention decisions made by the Government. And in some cases, these actions are mandated by statute, and committed to the Government's unreviewable discretion. Plaintiffs attempt to raise a substantive due process claim by framing this as "forcible separation," instead of acknowledging the overall legal framework involved. But this recasting of the issue is not enough to give rise to a viable substantive due process claim, especially where, for the reasons discussed above, there is no constitutional right for Plaintiffs to remain with their children in immigration detention. And contrary to Plaintiffs' assertion, ICE's detention of Plaintiffs in accordance with existing law does further a compelling governmental interest in enforcing the immigration laws of the United States. *See* Amended Complaint ¶ 78. Because Plaintiffs fail to establish that the Government acted in an egregious manner, or in a manner that shocks the conscience, Plaintiffs have not stated any claim for a substantive due process violation, and Count I should be dismissed.

---

332 F. App'x 927 (4th Cir. 2009); *Lyons v. Clark*, 694 F. Supp. 184 (E.D. Va. 1988) (Ellis, J.) (rejecting challenge to transfer of criminal detainee after finding no liberty interest of criminal detainee "in receiving visits from family, friends and community groups").

3.  <u>Plaintiffs Have Not Stated a Claim For Any Procedural Due</u>
<u>Process Violation.</u>

Plaintiffs also assert that they have a procedural due process right to a hearing before being separated from their minor children. Amended Complaint ¶ 79. However, this procedural due process claim is really Plaintiffs' "'substantive due process' argument recast in procedural terms." *Reno v. Flores*, 507 U.S. 292, 293 (1993). In fact, for the reasons discussed above, Plaintiffs have no constitutional right to be detained with their children, and no liberty interest in such detention. At the same time, Plaintiffs are otherwise subject to lawful immigration detention, and the Government has a substantial interest in being able to undertake the lawful immigration enforcement and detention actions provided by Congress in the INA. Accordingly, Plaintiffs cannot establish that any procedural due process violation exists, and there simply is no basis for requiring a hearing regarding the separation of each Plaintiff from her child that occurred as a result of lawful immigration enforcement and detention decisions by the Government. Plaintiffs' procedural due process claim in Count I therefore should be dismissed.

v.   *Plaintiffs' APA Claim Fails Because The Agency Action About Which Plaintiffs Complain Is Not Arbitrary Or Capricious.*

As discussed above, Plaintiffs erroneously try to cast their claims as challenging the action of separating them from their children, while ignoring the larger framework of decision-making in which such separation occurs. Thus, Plaintiffs claim that the Government has violated the APA because the Government's "separation of [Plaintiffs] from their children without a legitimate justification is arbitrary and capricious and accordingly violates the APA." Amended Complaint ¶ 82.

Plaintiffs' Count II fails in the first instance because the actions about which they complain are, in fact, decisions regarding detention procedures that are "committed to agency discretion by law," and thus are not subject to APA review. *See* 5 U.S.C. § 701(a)(2); *Webster v. Doe*, 486 U.S. 592, 594, 600-01 (1988). Moreover, Plaintiffs are incorrect that there is no legitimate justification for the separation of Plaintiffs and their children, because

18

as described above, that separation is a result of legitimate and lawful agency decisions regarding immigration enforcement and detention, which Plaintiffs do not challenge. Thus, where the Government's actions were a legitimate exercise of statutory authority, it cannot be said that the resulting separation of Plaintiffs and their children was arbitrary and capricious.

In addition, the APA allows judicial review only if the challenged activity is "reviewable by statute and final agency action for which there is no other adequate remedy." *See* 5 U.S.C. § 704. The purpose of the rule is to avoid premature judicial intervention. *See United Farm Workers v. Ariz. Agric. Employment Relations Bd*., 669 F.2d 1249, 1253 (9th Cir.1982). Here, as discussed above, Congress has specifically prohibited review of the actions challenged by Plaintiffs, and thus APA review is prohibited. Moreover, to the extent Plaintiffs wish to challenge the lawfulness of their detention by ICE, such challenges can be raised in a habeas action under 28 U.S.C. § 2241. To the extent that Plaintiffs wish to challenge ORR's determinations regarding a placement decision for their children, such determinations are administratively reviewable, and no Plaintiff alleges that she has sought such administrative review. *See* ORR Guide § 2.7.8. Finally, as evidenced by the case of Ms. L., who has since been reunited with her daughter, a "separation" of any Plaintiff from her child is not a final agency action subject to APA review. Rather, it ends at the conclusion of a lawful immigration detention, and after ORR completes its statutory mandate under the TVPRA to release the minor child to a suitable sponsor. Thus, as a general matter, "separation" itself is not a final agency action that is reviewable under the APA.

Thus, for all of the above reasons, Plaintiffs have not stated a claim under the APA, and Count II should be dismissed.

vi.   *Plaintiffs' Have Not Alleged Any Violation of the Asylum Statute, And in Any Event Lack Standing to Bring Such Claims.*

Plaintiffs allege that the Government has violated federal immigration law because the Government's separation of Plaintiffs from their children "impedes their ability to pursue their asylum claims." Amended Complaint ¶ 85. As a threshold matter, Count III fails

1  because Plaintiffs have not alleged any injury-in-fact to sustain this claim. Rather, their

2  asserted injury—an impeded ability to pursue their asylum claims—is speculative at best.

3  "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient

4  causal connection between the injury and the conduct complained of and (3) a likelihood

5  that the injury will be redressed by a favorable decision." *Munns v. Kerry*, 782 F.3d 402,

6  409 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1196 (2016). "An injury sufficient to satisfy

7  Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or

8  hypothetical." *Id*. (internal quotation omitted). Plaintiffs allege that Ms. L. has a pending

9  motion to reopen her asylum case before an immigration judge, Amended Complaint ¶ 49,

10 and that Ms. C. is in removal proceedings where she is applying for asylum, Amended

11 Complaint ¶ 55. Plaintiffs do not allege that they have actually experienced any

12 impediments to this process that could form the basis for their claim in Count III. Thus,

13 their allegations do not establish that their rights have been interfered with or that they have

14 experienced any harm that could be remedied by this Court. Plaintiffs therefore lack

15 standing to bring Count III and it should be dismissed on that basis.

16     Relatedly, even if Plaintiffs have standing to bring this claim, their cursory allegation

17 that their separation from their children impedes their ability to pursue their asylum claims

18 fails to state a plausible claim for relief. Amended Complaint ¶ 85. Plaintiffs must set forth

19 "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

20 face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

21 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a

22 complaint, they must be supported by factual allegations." *Id*. at 679. Plaintiffs state no facts

23 that would support the contention that their ability to pursue their asylum claims has been

24 impeded by the Government's actions. Their conclusory allegation of impediment, without

25 more, is not sufficient to state any claim for relief, and thus Count III should be dismissed.

26     Finally, and in any event, as aliens unlawfully in the United States, Plaintiffs have

27 limited rights. *Shaar v. INS*, 141 F.3d 953, 959 (9th Cir. 1998). Relevant here, Plaintiffs

28 only have the right to have their asylum application processed within the procedures

authorized by Congress. *See Angov v. Lynch*, 788 F.3d 893, 898-99 (9th Cir. 2013) (noting that for aliens not lawfully present in the United States, "procedural due process is simply '[w]hatever the procedure authorized by Congress' happens to be.") (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir. 1995) ("[E]xcludable aliens have no procedural due process rights in the admission process . . . ."). Plaintiffs have not alleged any interference with their ability to pursue their asylum claims in accordance with the procedures authorized by Congress, and in fact both allege that their asylum claims are proceeding, thus suggesting that the opposite is true. Accordingly, Plaintiffs have alleged no claim for relief, and Count III should be dismissed.

V

CONCLUSION

For all of the above reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

///

///

///

///

///

///

///

///

///

///

DATED: April 6, 2018                    Respectfully submitted,

                                        CHAD A. READLER
                                        Acting Assistant Attorney General
                                        WILLIAM C. PEACHEY
                                        Director
                                        WILLIAM C. SILVIS
                                        Assistant Director

                                        */s/ Sarah B. Fabian*
                                        SARAH B. FABIAN
                                        Senior Litigation Counsel
                                        NICOLE MURLEY
                                        Trial Attorney
                                        Office of Immigration Litigation
                                        Civil Division, U.S. Department of Justice
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        (202) 532-4824
                                        (202) 616-8962 (facsimile)
                                        sarah.b.fabian@usdoj.gov

                                        ADAM L. BRAVERMAN
                                        Acting United States Attorney

                                        s/ *Samuel W. Bettwy*
                                        SAMUEL W. BETTWY
                                        Assistant U.S. Attorney


                                        CAROLINE J. PRIME
                                        Assistant U.S. Attorney

                                        *Attorneys for Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al. | Case No. 18-cv-428 DMS MDD |
| Petitioner-Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying NOTICE OF MOTION AND MOTION TO DISMISS and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 6, 2018

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice

*Attorney for Respondents-Defendants*

1