CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.,<br><br>    Petitioners-Plaintiffs,<br><br>  vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>    Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>HEARING DATE: May 4, 2018<br>Hon. Dana M. Sabraw<br><br>**RESPONDENTS-DEFENDANTS' OPPOSITION TO PETITIONERS-PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.  APPLICABLE FRAMEWORK ................................................................................ 2

   A. Criminal Prosecution .......................................................................................... 2

   B. Reinstatement of Removal .................................................................................. 3

   C. Expedited Removal ............................................................................................. 4

   D. Custody of Unaccompanied Alien Children by The U.S. Department of Health and Human Services ........................................................................................................... 5

III. STATEMENT OF FACTS RELATED TO THE NAMED PLAITNIFFS ................. 7

   A. Ms. L ................................................................................................................... 7

   B. Ms. C. .................................................................................................................. 9

IV. ARGUMENT ........................................................................................................... 10

   A. Standard for preliminary Injunction ................................................................. 10

   B. Plaintiffs Cannot Show a Likelihood of Success on the Merits ...................... 11

      1.  This Court Lacks Jurisdiction and Venue Over Plaintiffs'' Claims, And Plaintiffs' Amended Complaint Fails to State a Claim as a Matter of Law. ......................................... 12

      2.  Plaintiffs Cannot Establish That the Government's Actions Are Unlawful. ......................... 14

   C. Plaintiffs Cannot Show a Likelihood of Irreparable Harm .............................. 18

   D. The Government's Interests Would be Harmed, and the Public Interest Would Not Be Served by the Grant of Injunctive Relief .......................................................................... 19

V.  CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

*Abdala v. INS*,
488 F.3d 1061 (9th Cir. 2007) ...........................................................................12

Alliance for the Wild Rockies v. Cottrell,
632 F.3d 1127 (9th Cir. 2011) ...........................................................................11

*Anderson v. United States*,
612 F.3d 1112 (9th Cir. 1979) ...........................................................................11

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,
729 F.3d 937 (9th Cir. 2013) .............................................................................12

Blackie's House of Beef, Inc. v. Castillo,
659 F.2d 1211 (D.C. Cir. 1981) .........................................................................19

*Dahl v. HEM Pharms. Corp.*,
7 F.3d 1399 (9th Cir. 1993) ...............................................................................11

*Flores v. Johnson*,
212 F. Supp. 3d 864 (C.D. Cal. 2015) ...............................................................17

*Flores v. Lynch*,
212 F. Supp. 3d 907 (C.D. Cal. 2015) ...............................................................17

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) .............................................................................17

*Flores v. Lynch*,
2017 WL 6049373 (C.D. Cal., Jan. 20, 2017) ...................................................17

*Flores v. Reno*,
Case CV-85-4544-RJK(px)(C.D. Cal.)..................................................................6

*Friendly House v. Whiting*,
846 F. Supp. 2d 1053 (D. Ariz. 2012) ...............................................................10

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .............................................................................11

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018)....................................................................................13, 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .............................................................................11

*Maryland v. King*,
567 U.S. 1301 (2012)..........................................................................................19

ii

*Matter of X-K-,*
23 I. & N. Dec. 731 (2005) ........................................................................... 5

*Mazurek v. Armstrong,*
529 U.S. 968 (1997) ................................................................................... 10

*Park Village Apartment Tenants Association v. Foster,*
636 F.3d 1150 (9th Cir. 2011) ................................................................... 18

*Pimentel v. Dreyfus,*
670 F.3d 1096 (9th Cir. 2012) ................................................................... 11

*Planned Parenthood Arizona, Inc. v. Humble,*
13 F. Supp. 3d 1017 (D. Ariz. 2014) ......................................................... 10

*Spencer v. Kemna,*
523 U.S. 1 (1998) ....................................................................................... 12

*U.S. v. Batchelder,*
442 U.S. 114 (1979) ..................................................................................... 3

*United States v. Brignoni-Ponce,*
422 U.S. 873 (1975) ................................................................................... 19

*United States v. Martinez-Fuerte,*
428 U.S. 543 (1976) ................................................................................... 19

*Winter v. Natural Res. Def. Council,*
555 U.S. 7 (2008) ....................................................................................... 10

**STATUTES**

6 U.S.C. § 279(g)(2) ........................................................................... 5, passim

8 U.S.C. § 1182(a)(7) ................................................................................. 17

8 U.S.C. § 1182(d)(5)(A) .............................................................................. 4

8 U.S.C. § 1225(b) ............................................................................. 4, 7, 15

8 U.S.C. § 1225(b)(1)(A)(i) ......................................................................... 17

8 U.S.C. § 1225(b)(1)(B) ............................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii) ......................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................. 4, 17

8 U.S.C. § 1225(b)(1)(C) ............................................................................... 5

iii

8 U.S.C. § 1226(a) .................................................................................................... 4

8 U.S.C. § 1229a ................................................................................................. 5, 10

8 U.S.C. § 1231(a) ................................................................................................ 3, 18

8 U.S.C. § 1231(a)(5) ........................................................................................... 3, 18

8 U.S.C. § 1232(b)(1) .................................................................................................. 5

8 U.S.C. § 1232(b)(3) ....................................................................................... 5, passim

8 U.S.C. § 1232(c)(2)(A) ............................................................................................. 6

8 U.S.C. § 1232(c)(3) ............................................................................................... 8, 9

8 U.S.C. § 1232(c)(3)(A) ....................................................................................... 7, 9, 16

8 U.S.C. § 1252(a)(2)(A)(iii) ....................................................................................... 5

8 U.S.C. § 1252(f)(1) ............................................................................................. 13, 14

8 U.S.C. § 1324 ..................................................................................................... 2, 3

8 U.S.C. § 1325 ................................................................................................... 2, 3, 9

8 U.S.C. § 1326 ..................................................................................................... 2, 3

Pub. L. No. 110-457 ................................................................................................... 5

## REGULATIONS

8 C.F.R. § 208.30 ...................................................................................................... 5

8 C.F.R. § 208.30(f) ................................................................................................... 5

8 C.F.R. § 208.30(g) .................................................................................................. 5

8 C.F.R. § 208.31 ...................................................................................................... 3

8 C.F.R. §  235.3(b)(2)(iii) ................................................................................. 4, 5, 18

8 C.F.R. § 235.3(b)(4) ............................................................................................... 5

8 C.F.R. § 235.3(b)(4)(ii) .................................................................................. 4, 5, 18

8 C.F.R. § 236.1(c)(8) ................................................................................................ 5

8 C.F.R. § 1003.42 .................................................................................................... 5

8 C.F.R. § 1003.42(f) ................................................................................................. 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8 C.F.R. § 1208.30 ......................................................................................................... 5

8 C.F.R. § 1236.1 ........................................................................................................... 5

8 C.F.R. § 1241.1(b) ...................................................................................................... 8

69 Fed. Reg. 48 .............................................................................................................. 4

I

<u>INTRODUCTION</u>

Plaintiffs have filed a motion for a class-wide preliminary injunction asking this Court to "order Defendants to reunite Plaintiffs and other class members with their children, and to discontinue their family separation practice." Motion, ECF No. 48-1, at 26. Plaintiffs incorrectly contend that a preliminary injunction should issue in this case because, they argue, the component agencies of the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"), have no legitimate basis to separate claimed parents and children. However, Plaintiffs' motion entirely ignores the complex immigration and criminal enforcement framework in which the decision to separate a purported family unit might occur, and thus ignores the various legitimate government interests that form the bases for these decisions.

Plaintiffs are asking the Court to enjoin the legitimate operations of DHS in a manner that would inhibit the agency's immigration and law enforcement missions. In fact, several important considerations play a role in DHS's decisions that may result in the possible separation of a purported family unit in the custody of ICE or CBP. These considerations include concerns about the safety of the individual child, efforts to interrupt smuggling operations on a broader scale, law enforcement interests in identifying and prosecuting criminals and detecting immigration fraud, and an interest in effectively using the immigration enforcement tools provided to the agency by Congress in the Immigration and Nationality Act ("INA"). A preliminary injunction that makes it difficult, or even impossible, for DHS to take certain actions simply because those actions could result in the separation of a purported family unit would impact all of these interests, while imposing requirements on DHS that have no basis in the law.

Thus, the Court should decline to enter the preliminary injunction requested by Plaintiffs in this case. Notably, Plaintiffs' motion does not rely on cases that address the separation of a parent and child occurring as a result of immigration or law enforcement

1

actions; nor can it because, as explained in the Government's motion to dismiss, such cases establish that separation occurring in these contexts does not violate the U.S. Constitution. Instead, in asking this Court to enjoin DHS component agencies from separating any purported family units Plaintiffs rely entirely on case law regarding the procedures required for family separation that originates in a very different context, unrelated to detention.

Plaintiffs have provided no basis on which to find that they are likely to succeed in this case, both because their claims lack legal merit for the reasons discussed below and in the Government's motion to dismiss, and because their claims fail on the merits in light of the fact that the Government does in fact have several interests that underlie the immigration and law enforcement actions taken by DHS that are at issue in this case. Moreover, the balance of the interests weighs heavily in favor of the Government because there is a strong public interest in the enforcement of immigration laws, and because the separation of family units occurs in accordance with the Trafficking Victims Protection and Reauthorization Act of 2008 ("TVPRA") which was enacted to provide protections to minors for whom no parent or guardian is available to provide care and custody. These protections ensure that when a minor is separated from his or her parent, it is done in a manner that considers the interests and safety of the child, and that child is transferred to a facility that is designed and licensed for his or her care. For all of these reasons, Plaintiffs' preliminary injunction motion should be denied.

II

APPLICABLE FRAMEWORK

C.    Criminal Prosecution

Individuals in DHS custody also may be subject to criminal prosecution, either for criminal immigration violations or for other criminal violations. Notably, many of the immigration statutes that DHS enforces have criminal provisions, including but not limited to 8 U.S.C. §§ 1324, 1325, and 1326, giving DHS discretion to refer people to the U.S. Department of Justice ("DOJ") for prosecution based on the particularized facts and circumstances of an individual case. Furthermore, pursuant to an April 11, 2017

2

memorandum from the Office of the Attorney General, all qualifying individuals apprehended by CBP are referred to DOJ to consider prosecution under 8 U.S.C. §§ 1324, 1325, 1326, or for other criminal violations. Whether a person is prosecuted for these crimes after a referral by CBP is a decision made by DOJ, and is subject to that agency's prosecutorial discretion. *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

B.    Reinstatement of Removal

One category of adults who may be apprehended as part of a purported family unit is individuals who have previously been removed from the United States, but who illegally reenter. DHS may "reinstate" a prior order of removal where it finds an individual "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). If an individual expresses fear of returning to the country of removal, she is referred to U.S. Citizenship and Immigration Services ("USCIS") for an interview by an asylum officer to determine whether she possesses a "reasonable fear" of persecution or torture, a process similar to, but distinct from, the credible fear analysis for expedited removal. *See* 8 C.F.R. § 208.31. If the asylum officer determines that the individual has not established a reasonable fear of persecution or torture, she may request review of that determination by an immigration judge. *See id*. §§ 208.31(f); 1208.31(f). If the immigration judge also finds that no reasonable fear of persecution or torture exists, the case is returned to DHS for execution of the reinstated order of removal, and no administrative appeal is available. *See id*. §§ 208.31(g)(1); 1208.31(g)(1).

If the asylum officer determines that the individual has established a reasonable fear of persecution or torture, the individual is referred to the immigration judge for consideration of withholding or deferral of removal only (aliens with reinstated orders of removal are not eligible for asylum). *See id.* §§ 208.31(e); 1208.31(e). Because an individual's removal order remains administratively final throughout such "withholding-only" proceedings, 8 U.S.C. § 1231(a) continues to provide the statutory authority for her detention.

C. <u>Expedited Removal</u>

Adult aliens who are seeking to enter the United States without any documentation allowing for their admission, including as part of a purported family unit, may be subject to a process commonly referred to as "expedited removal," which provides an accelerated removal process for certain aliens. *See* 8 U.S.C. § 1225(b); 69 Fed. Reg. 48,877 (Aug. 11, 2004). Congress has explicitly mandated the detention of individuals who are in the expedited removal process and whose claim of credible fear of persecution is still being considered, or who have been found not to have a credible fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").

Individuals subject to such mandatory detention under expedited removal are eligible for release from immigration detention only if they are granted parole under certain limited criteria. *See* 8 C.F.R. §§ 235.3(b)(2)(iii); 235.3(b)(4)(ii) (parole of aliens mandatory detention who are awaiting a credible fear determination or who have not expressed a fear of return "may be permitted only when the [Secretary of Homeland Security] determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective."); 8 U.S.C. § 1182(d)(5)(A) (DHS may, in its "discretion parole into the United States temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ."). Thus, an alien who is subject to expedited removal, and who is seeking to establish that he or she has credible fear, is not subject to discretionary detention under 8 U.S.C. § 1226(a) and is ineligible for release on bond or a bond redetermination hearing before an immigration judge.

If a USCIS asylum officer interviews an individual in expedited removal proceedings and determines that he or she has a credible fear of persecution or torture, the individual

may seek asylum or other protection from removal before an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. §§ 208.30, 235.3(b)(4). If the asylum officer determines the individual does not have a credible fear of persecution or torture, the individual may request review of that determination by an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 208.30(g); 8 C.F.R. § 1003.42; 8 C.F.R. § 1208.30. If the immigration judge determines that the individual does not have a credible fear of persecution or torture, he or she may be ordered removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii); *see also* 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii); 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

If either the asylum officer or the immigration judge determines that the alien has a credible fear of persecution or torture, expedited removal proceedings are vacated and the alien is referred for removal proceedings before an immigration judge under 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f). However, even after an individual is found to have a credible fear, release from detention may still be limited. Depending on the circumstances of the aliens' arrest, the alien may be either eligible for parole to meet a medical emergency or if necessary for a legitimate law enforcement objective, *see* 8 C.F.R. §§ 235.3(b)(2)(iii) and 235.3(b)(4)(ii) or for bond, if the alien was detained for expedited removal as "certain other aliens" and can show "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding," 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 1236.1; *Matter of X-K-*, 23 I. & N. Dec. 731 (2005).

D.   <u>Custody of Unaccompanied Alien Children by The U.S. Department of Health and Human Services.</u>

The TVPRA was signed into law on December 23, 2008. *See* Pub. L. No. 110-457. The TVPRA confirmed that "the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services ["HHS"]." 8 U.S.C. § 1232(b)(1). An "unaccompanied alien child" ("UAC") is defined as "a child who (A) has no lawful

5

immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Under the TVPRA, except in the case of "exceptional circumstances," any department of agency must transfer a UAC to the custody of HHS, Office of Refugee Resettlement ("ORR") within 72 hours of the agency's determination that a child in its custody is, in fact, a UAC. 8 U.S.C. § 1232(b)(3).

When a UAC is referred to ORR, the agency places the UAC with a care provider. *See* Office of Refugee Resettlement, ORR Policy Guide: Children Entering the United States Unaccompanied ("ORR Guide") § 3.1, *available at*: http://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied (last accessed April 20, 2018); *see also Flores v. Reno*, Case CV-85-4544-RJK(px) (C.D. Cal.) Settlement Agreement Ex. 1 (providing minimum standards for licensed programs.). The ORR intakes staff makes an initial care provider placement decision for each UAC. *See* ORR Guide § 1.3.2. The majority of care providers operate one of three types of facilities: shelter-type facilities, staff secure facilities, or secure facilities. *Id.* § 1.1; *see also* Declaration of Jallyn N. Sualog ("Sualog Decl."), ¶ 7, attached hereto as Exhibit A. Shelter care is a residential care facility in which all programs are administered on-site, in the least restrictive setting. *See* ORR Guide: Guide to terms; Sualog Decl. ¶ 7. Staff secure facilities maintain stricter security measures than shelters, such as a higher staff-to-UAC ratio for supervision and a secure perimeter with a "no climb" fence. ORR Guide: Guide to terms; Sualog Decl. ¶ 7. These facilities have a more shelter or home-like setting than secure detention, and do not have locked pods or cell units. ORR Guide: Guide to terms; Sualog Decl. ¶ 7. Secure facilities are the most restrictive level of care. They are physically secure structures with staff who are able to control violent behavior and may be a licensed juvenile detention center or a highly structured therapeutic facility. ORR Guide: Guide to terms; Sualog Decl. ¶ 7.

When deciding placement, ORR places the child in the "least restrictive setting that is in the best interest of the child," subject to considerations of danger to self, danger to others, or risk of flight, in accordance with the TVPRA. 8 U.S.C. § 1232(c)(2)(A); *see also* Sualog Decl. ¶ 6. Shelter care is by far the most common type of placement for minors in ORR custody. *See* Sualog Decl. ¶ 7.

ORR also conducts ongoing assessments as to whether there is a suitable sponsor for each UAC in their care so that children may be released as quickly as is safe and appropriate. *See* ORR Guide § 2.2; Sualog Decl. ¶ 13. Under the TVPRA, where a custodian seeks to have a child released by ORR to his or her custody ORR must make "a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); Sualog Decl. ¶ 13. This assessment reviews a potential sponsor's strengths, resources, risk factors, and special concerns within the context of the UAC's needs, strengths, risk factors and relationship to the sponsor. *See* ORR Guide § 2.4. A potential sponsor must fill out an application, the "family reunification package", provide identification documentation, and he or she undergoes a background check, along with any adult living in his or her household. *See* ORR Guide §§ 2.2.3, 2.5. Once the assessment of the potential sponsor is complete, the care provider makes a release recommendation. *See* ORR Guide § 2.7. ORR makes the final release decision. *See id.*

III

STATEMENT OF FACTS RELATED TO THE NAMED PLAINTIFFS

A.    Ms. L.

Ms. L. claims to be a citizen of the Democratic Republic of the Congo, who sought admission to the United States on November 1, 2018 at the San Ysidro, California Port of Entry. Amended Complaint, ECF No. 32, ¶¶ 10, 40. She was accompanied by her daughter S.S. *Id.* ¶ 40. When she arrived at the port of entry Ms. L. had no identity documents other than the Mexican exit visa issued to her, and she stated that her identity documentation had been lost during her travel to the United States. *See* Declaration of Mario Ortiz ("Ortiz Decl."), ECF No. 46-1, ¶ 5; ECF No. 50 at 12. Ms. L. stated that she wished to seek asylum,

and CBP officers therefore referred her for a credible fear interview with a USCIS asylum officer and transferred her to ICE custody. *Id.* ¶¶ 40-41. Pending that interview, Ms. L. was subject to mandatory detention. 8 U.S.C. § 1225(b). Because Ms. L. had no identity documents, ICE had no way to immediately confirm whether S.S. was, in fact, Ms. L.'s daughter, so it could not place Ms. L. and S.S. in an ICE family residential center. Accordingly, ICE detained Ms. L. at the Otay Mesa Detention Center. *Id.* ¶ 41. Because Ms. L. was subject to mandatory detention by ICE, S.S. had "no parent or legal guardian in the United States . . . available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Therefore, in accordance with the TVPRA, S.S. was transferred to the custody of ORR. 8 U.S.C. § 1232(b)(3); Amended Complaint ¶ 42; Sualog Decl. ¶ 3.

S.S. was housed by ORR in a non-secure shelter care facility licensed by the State of Illinois to provide residential care to children. Sualog Decl. ¶ 9. The facility is one which is capacitated to shelter young children such as S.S. and is routinely used for such children. *Id.* The facility is unique in that it provides developmentally appropriate care which is culturally sensitive to many young children like S.S. from diverse non-Central American countries such as the Congo, Guinea, Nepal, Haiti, Kyrgyzstan, China, Vietnam, India, Bangladesh, and Romania. *Id.* At the facility, S.S. received many services, including case management, clinical, educational and medical services throughout the duration of her stay in ORR care. *Id.*

On November 17, 2017, a USCIS asylum officer conducted a credible fear interview for Ms. L. Amended Complaint ¶ 41; ECF No. 50 at 20. The asylum officer determined that Ms. L had met the credible fear threshold to have her asylum application heard by an immigration judge. Amended Complaint ¶ 41; ECF No. 50 at 20. Ms. L appeared, unrepresented, before the immigration judge and was granted a continuance until January 26, 2018, to seek legal representation. ECF No. 50 at 25. On January 26, 2018, Ms. L appeared again, unrepresented, before the immigration judge, stating her desire to continue without an attorney. ECF No. 50 at 26. The immigration judge ordered that Ms. L be

removed from the United States. ECF No. 50 at 28, 31. Ms. L waived appeal, and so her removal order became immediately final. *See* 8 C.F.R. § 1241.1(b).

Ms. L. remained in ICE detention pending her removal from the United States pursuant to the final order of removal. On February 28, 2018, Ms. L., represented by counsel, filed a motion to reconsider her removal order with the immigration court. ECF No. 50 at 33-47. On March 5, 2018, Ms. L. submitted a request to ICE to stay her removal given her pending "Motion to Reconsider and possible Motion to Reopen or Appeal to [Board of Immigration Appeals]." ECF No. 50 at 48-49. On March 6, 2018, ICE granted the request for stay of removal. *Id*. That same day, ICE released Ms. L from detention. Amended Complaint ¶ 41.

In order to facilitate the reunification process, ORR took steps to verify whether Ms. L and S.S. were mother and daughter by conducting a DNA test, and on March 12, 2018 received results showing that they are. ECF No. 44. ORR also made the TVPRA-mandated "determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); *see also* ORR Guide §§ 2.2, 2.7.8; Status Report, Mar. 19, 2018, ECF No. 49; 8 U.S.C. § 1232(c)(3). On March 16, 2018, ORR released S.S. into Ms. L.'s custody.

B.     Ms. C.

On August 26, 2017, at approximately 6 pm local time, a Border Patrol Agent from the El Paso Sector observed two individuals crossing the U.S./Mexico border into the United States, on foot, approximately eight miles east of the Santa Teresa Port of Entry. Declaration of Robert H. Lukason ("Lukason Decl."), attached hereto as Exhibit B, ¶ 2.  The agent approached the two individuals in his marked Border Patrol vehicle, and identified himself.  *Id*. ¶ 3. The two individuals were Ms. C., and her minor son, J., who both admitted to being citizens of Brazil with no immigration documentation to lawfully be present, or lawfully remain in, the United States. *Id*. Both were arrested and transported to the Santa Teresa, New Mexico Border Patrol station for processing.  *Id*.

After being arrested by Border Patrol, Ms. C. stated that she feared returning to her home country. Amended Complaint ¶ 55; Lukason Decl., ¶ 4. Ms. C. was prosecuted for illegally entering the United States under 8 U.S.C. § 1325, and was sentenced to serve time in criminal custody. Amended Complaint ¶¶ 56-57. Because Ms. C. was prosecuted and sentenced to jail time, J. had "no parent or legal guardian in the United States . . . available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Therefore, in accordance with the TVPRA, J. was transferred to the custody of ORR. 8 U.S.C. § 1232(b)(3); Amended Complaint ¶ 56; Sualog Decl. ¶ 4. Initially J. was housed by ORR in a shelter-care facility, but was transferred on December 8, 2107 to a more restrictive facility staff-secure facility due to aggressive and inappropriate behavior. *Id.* ¶ 9. While in the ORR facilities, J. has received many services including psychological services such individual and group therapy, psychiatric services, and case management services, as well as educational services and recreation. *Id.*

Ms. C. has since been found to have credible fear, and placed in removal proceedings under 8 U.S.C. § 1229a. *Id.* ¶ 55. After her release from criminal custody, ICE took her into custody. *Id.* ¶ 57. On April 5, 2018, Ms. C. had a bond hearing before an immigration judge and was ordered released from custody on a $3000 bond, and subject to GPS monitoring by DHS. *See* Order of the Immigration Judge, attached hereto as Exhibit C. Ms. C. has since been released from custody. ORR is currently following the steps under the TVPRA to provide for the reunification of Ms. C. and J. Sualog Decl. ¶¶ 12, 14.

IV

ARGUMENT

A.   Standard for Preliminary Injunction

It is well-settled that a preliminary injunction is "an extraordinary and drastic remedy" which "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 529 U.S. 968, 972 (1997) (per curiam) (citations and quotations omitted). This court may issue a preliminary injunction only when the movant demonstrates that: "there is a substantial likelihood plaintiff will succeed on the

merits; plaintiff will be irreparably injured if an injunction is not granted; an injunction will not substantially injure the other party; and the public interest will be furthered by an injunction." *Friendly House v. Whiting*, 846 F. Supp. 2d 1053, 1055 (D. Ariz. 2012) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). "[T]he elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Planned Parenthood Arizona, Inc. v. Humble*, 13 F. Supp. 3d 1017, 1019 (D. Ariz. 2014) (quoting *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105–1106 (9th Cir. 2012) (quotations omitted)). Thus, all four factors must be met for the court to grant a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Moreover, the nature of the preliminary injunction sought by Plaintiffs makes it a mandatory injunction that should be subject to heightened scrutiny by this Court. *See Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (Mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party."). Specifically, Plaintiffs ask this Court to release the named Plaintiffs and putative class members, and to enjoin DHS from being able to follow its current practices with regard to immigration and law enforcement actions that may result in the separation of a purported family unit. While Plaintiffs do not clearly state what, specifically, they are asking the Court to order, it is likely that any such order would require DHS to implement entirely new procedures related to class members. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo.") (internal citations and quotation marks omitted). "[M]andatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . .'" *Id.* (quoting *Anderson v. United States*, 612 F.3d 1112, 1115 (9th Cir. 1979)). Because Plaintiffs are asking this Court to impose new procedures and limitations onto DHS's existing operations, this Court should not issue the

11

requested preliminary injunction unless it finds that "the facts and law clearly favor the moving party." *Dahl*, 7 F.3d at 1403.

B.    Plaintiffs Cannot Show a Likelihood of Success on the Merits.

Likelihood of success on the merits is a threshold issue: "[W]hen 'a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three [elements].'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotation marks omitted).

1.    *This Court Lacks Jurisdiction and Venue Over Plaintiffs' Claims, And Plaintiffs' Amended Complaint Fails to State a Claim as a Matter of Law.*

Plaintiffs' likelihood of success on the merits in this case is exceedingly low for all of the reasons addressed in Respondents-Defendants' Motion to Dismiss (ECF No.56). The Government incorporates those arguments herein.

As an initial matter, Plaintiffs cannot succeed on their claims because the Court lacks jurisdiction and venue over those claims. Specifically, for the reasons discussed in the Government's motion to dismiss, Ms. L's claims are moot, and this Court lacks jurisdiction and venue over Ms. C's claims. Moreover, since the filing of the Government's motion to dismiss, Ms. C. has been ordered released from ICE custody by an immigration judge, and ORR is evaluating her request to have J. released to her. *See* Order of the Immigration Judge, attached hereto; Sualog Decl. ¶¶ 12, 14. Given that an immigration judge has ordered Ms. C.'s release and she has been released from ICE custody, she can no longer obtain any relief from any order of this Court either ordering her release, or ordering that she be detained in an ICE family residential facility. Thus, her claims are now moot as well and should be dismissed on that basis. *See Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) ("At any stage of the proceeding a case becomes moot when 'it no longer present[s] a case or

controversy under Article III, § 2 of the Constitution.'") (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Even if this Court concludes that it has jurisdiction and venue over any of Plaintiffs' claims, Plaintiffs' claims still cannot succeed because their Amended Complaint fails to state any claim for relief. First, the named Plaintiffs do not—and cannot—challenge the lawfulness of their arrests and detention by immigration authorities. Relatedly, Ms. C. does not challenge the lawfulness of her prosecution and criminal custody. Plaintiffs nonetheless request that this Court order ICE to release Plaintiffs, or detain Plaintiffs with their children in an ICE family residential center. However, this Court has no authority to order either of these forms of relief because these are discretionary immigration actions that have been delegated to the authority of DHS, and the INA precludes review of those decisions by this Court.

Second, Plaintiffs' claims fail as a matter of law because Plaintiffs seek to establish a constitutional right for aliens to be detained along with their minor children. Such a right, however, is recognized nowhere in the law, as demonstrated in the Government's motion to dismiss. Plaintiffs seek to suggest that such a right exists by citing to cases regarding the showing they contend is necessary before separation occurs, but those cases are inapplicable here because they all relate to situations where the decision to separate a parent and child was itself the sole decision at issue before the court, which is not the case here. Plaintiffs have provided no basis to find that such a showing is required where the separation at issue occurs as the result of legitimate discretionary immigration and law enforcement actions taken by the Government.

Third, Plaintiffs' claims fail as a matter of law because Plaintiffs' Amended Complaint fails to state a claim that their lawful arrest and detention by DHS—and in the case of Ms. C., prosecution and criminal custody—violated the Fifth Amendment, Administrative Procedure Act ("APA"), or asylum laws.

Finally, the preliminary relief requested by Plaintiffs is barred by 8 U.S.C. § 1252(f)(1), which strips the Court of jurisdiction over all class claims seeking to enjoin the

operation of sections §§ 1221–123[2]. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018). Under that provision, "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [§§ 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). While the Ninth Circuit has held that § 1252(f)(1) does not affect the lower courts' jurisdiction over statutory claims that seek only to enjoin unlawful conduct (as opposed to the lawful operation of the immigration detention statutes), the Supreme Court has stated that such reasoning "does not seem to apply to an order granting relief on constitutional grounds." *Jennings*, 138 S. Ct. at 851. As explained in the Government's motion to dismiss and below, the separation of family units about which Plaintiffs complain comes about in many instances as a result of DHS's operations relative to Sections 1225(b) and 1231. To the extent the relief requested by Plaintiffs would enjoin DHS's operations with regard to these provisions against the putative class, such relief is barred by 8 U.S.C. § 1252(f)(1).

Thus, for all of the above reasons, and for the reasons explained in Respondents-Defendants' Motion to Dismiss (ECF No. 56), Plaintiffs are not likely to succeed on the merits because this Court lacks jurisdiction and venue over their claims, and because their Amended Complaint should be dismissed as a matter of law. Accordingly, a preliminary injunction should not be issued.

### 2. *Plaintiffs Cannot Establish That the Government's Actions Are Unlawful.*

Even if Plaintiffs' claims are not dismissed as a matter of law, Plaintiffs' request for a preliminary injunction also should be denied because Plaintiffs cannot show that even with the benefit of further proceedings they are likely to succeed on the merits of their constitutional and APA claims. Plaintiffs contend that a preliminary injunction is appropriate on those two claims because the Government "has offered no legitimate basis for taking Plaintiffs' children away" and thus the separation of Plaintiffs from their children violates the Fifth Amendment and is arbitrary and capricious. Motion, ECF No. 48-1, at 19,

20. However, the premise of Plaintiffs' argument is incorrect. In fact, the separation of a child from an accompanying parent by ICE or CBP may occur for various reasons, all of which serve legitimate and important Government functions.

As the case of Ms. L. demonstrates, family separation may occur where CBP or ICE is unable to confirm a family relationship between individuals purporting to be a parent and child. As the Government explained in its motion to dismiss, the decisions to detain Ms. L. rather than release her on parole, and to hold her in an adult detention facility rather than an ICE family residential center, are discretionary decisions that are not subject to judicial review. Further, it is essential for DHS to be able to make these discretionary decisions because DHS plays an important role in disrupting smuggling operations that are harmful to, and exploitative of, children. *See* Declaration of Marc W. Sanders ("Sanders Decl."), ¶¶ 3-5, attached hereto as Exhibit D; *see also* Ortiz Decl. ¶ 3.

Both ICE and CBP frequently are faced with the need to determine, in a fast-moving and uncertain environment, the legitimacy of a purported family relationship, and to act accordingly in a short period of time following their initial encounter with a purported family unit. Sanders Decl. ¶ 6. Pending her credible fear interview, Ms. L. was subject to mandatory detention. 8 U.S.C. § 1225(b). When she arrived at the port of entry Ms. L. had no identity documents other than the Mexican exit visa issued to her. *See* Ortiz Decl. ¶ 5; ECF No. 50 at 12. Because Ms. L. had no identity documents, ICE had no way to immediately confirm whether S.S. was, in fact, Ms. L.'s daughter so it could not place Ms. L. and S.S. in an ICE family residential center. Accordingly, ICE detained Ms. L. at the Otay Mesa Detention Center. *Id.* ¶ 41. S.S. therefore had "no parent or legal guardian in the United States . . . available to provide care and physical custody[,]" 6 U.S.C. § 279(g)(2), and in accordance with the TVPRA, S.S. was transferred to the custody of ORR. 8 U.S.C. § 1232(b)(3); Amended Complaint ¶ 42.

An inability to confirm a familial relationship is just one of many scenarios that could cause ICE or CBP to question whether an adult and minor who are traveling together are, in fact, a family unit. Sanders Decl. ¶ 6. Because it is not uncommon for individuals to use

unrelated minors and attempt to pass themselves off as family units, it is critically important that ICE and CBP are able to take actions that protect children from exploitation when they have any doubt about the validity of a family unit. *Id.*. As Officer Ortiz explained, when the Government is evaluating what to do with a purported family unit it must consider "first, whether there is any doubt about whether they are parent and child and, second, whether there is information that causes a concern about the welfare the child, such as the adult having a significant criminal history." Ortiz Decl. ¶ 3. Where concerns arise, CBP and ICE must have the ability to exercise their discretion as to the most appropriate immigration action to address these concerns, and such actions may, if the situation warrants, result in the separation of the minor from the accompanying adult.[1] Sanders Decl. ¶ 6.

Additionally, as the case of Ms. C. demonstrates, separation of a parent and child may occur where a parent is subject to prosecution for a criminal offense. As described above, any individual in the custody of ICE or CBP who that agency has reason to believe has committed a crime may be referred to DOJ, and may be subject to prosecution and criminal custody for that crime in DOJ's discretion. Here, DOJ exercised its discretion to prosecute Ms. C. for illegally entering the United States. Ms. C. does not challenge the authority of DOJ to prosecute her for that crime, nor does she challenge her attendant placement in criminal custody. In such cases, it is clear that an accompanying child cannot also be placed into criminal custody, and instead must, consistent with the TVPRA, be transferred into the care and custody of ORR. *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3). DHS plainly has a legitimate interest in maintaining its ability to refer for prosecution those who commit crimes, and DOJ must retain its prosecutorial discretion to determine who it will prosecute.

---

[1] Moreover, it is important to remember that the TVPRA was enacted specifically to protect minors for whom there is no parent or legal guardian available to provide care and custody. The TVPRA ensures that any such minor is: 1) transferred to ORR; 2) held in facilities specifically designed and licensed for the care of minors; and 3) released only to a custodian who is determined to be suitable for his or her care. *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3); 8 U.S.C. § 1232(c)(3)(A). Thus, the transfer of a minor to ORR whose parent or guardian is not available to provide care and custody is specifically done for the purpose of providing the protections that Congress deemed appropriate for those minors.

This discretion exists even though prosecution of some individuals may result in the separation of that individual from his or her child. This Court should not grant a preliminary injunction that would interfere with the Government's ability to enforce the criminal laws of the United States.

Finally, the Government may have a legitimate basis to detain an adult parent separately from a minor child, even where the Government can confirm the relationship between the parent and child, because detention in an ICE family residential center is not always an option. The existence of legal and operational challenges to ICE family residential centers may limit ICE's ability to detain individuals in those facilities.[2] Thus, in some situations, if ICE determines to detain a parent who is a member of a family unit, ICE must detain him or her in an adult detention facility, and place the accompanying child with ORR.

DHS cannot be precluded from detaining adult parents who arrive as members of a family unit, even if this results in separation of the parent and child, because this conflicts with the use of expedited removal, which is one of DHS' most important tools provided by Congress to manage the apprehension and removal of aliens encountered at or near the U.S. border. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (If an applicant for admission is inadmissible under 8 U.S.C. § 1182(a)(7), an immigration officer "*shall order the alien removed from the United States without further hearing or review*" unless the alien indicates either an intention

---

[2] ICE family residential centers are necessarily limited to the detention of verified family units, and are subject to restrictions on who can be housed together at any given time based on the ages and genders of the children being housed there. Moreover, the Government's ability to hold family units in ICE family residential centers is subject to the limitations of the *Flores* Settlement Agreement, as interpreted recently in a series of decisions by the U.S. District Court for the Central District of California and the U.S Court of Appeals for the Ninth Circuit. *See Flores v. Johnson*, 212 F. Supp. 3d 864 (C.D. Cal. 2015); *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015); *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016); *Flores v. Lynch*, 2017 WL 6049373 (C.D. Cal., Jan. 20, 2017). The most recent district court decision in that case is currently on appeal to the Ninth Circuit. *See Flores v. Lynch*, Case No. 17-56297 (9th Cir.). These court decisions restrict ICE's ability to detain family units together at ICE family residential centers in all instances.

to apply for asylum under section 1158 of this title or a fear of persecution.") (emphasis added). Expedited removal requires detention unless and until an individual has been found to have a credible fear of return, and an injunction that effectively required DHS to release all individuals claiming to be members of family units before such determination has been made would conflict with the statutory provisions governing detention and removal of aliens. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); 8 C.F.R. §§ 235.3(b)(2)(iii) and 235.3(b)(4)(ii) (parole of aliens in the expedited removal-credible fear process "may be permitted only when the [Secretary of Homeland Security] determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective."). In the same vein, were DHS required to parole all those individuals who are members of a family unit but also subject to reinstatement of removal, pursuant to 8 U.S.C. § 1231(a)(5), DHS would be forced to act contrary to the mandatory detention authority provided to it by 8 U.S.C. § 1231(a).

Because these statutory tools are an important part of the Government's legitimate immigration enforcement activities, Plaintiffs are incorrect to contend that any resulting separation of a parent and child is without a legitimate basis on the part of the Government. In fact, a ruling that precludes such action would effectively reward individuals who are immigration recidivists and who endanger their children by seeking to enter the United States illegally. Thus, contrary to Plaintiffs' assertions, it is clear that the Government does have legitimate bases for the immigration and law enforcement actions that it undertakes relative to family separation. Accordingly, Plaintiffs have not shown that they are likely to succeed on the merits of their Fifth Amendment or APA claims, even if those claims are allowed to proceed on the merits. As a result, this Court should decline to enter a preliminary injunction.

C.    <u>Plaintiffs Cannot Show a Likelihood of Irreparable Harm.</u>

To establish irreparable harm, the movant must first "demonstrate that irreparable injury is *likely* in the absence of an injunction;" it "will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury." *Park Village Apartment Tenants Association v. Foster*, 636 F.3d 1150 (9th Cir. 2011) (internal citation and quotation marks omitted). The relief being sought "must be tailored to remedy the *specific harm alleged*." *Id.* (internal citation and quotation marks omitted).

While the Government does not deny that separation of a parent and child creates some hardship, it must be considered that this separation is the result of lawful immigration enforcement actions. To the extent that Plaintiffs allege that they suffer harm from being separated from their children, this is the same harm suffered by any individual subject to lawful detention by the Government who is separated from family members as a result of that detention. Where Plaintiffs are seeking to remedy a harm that flows from lawful immigration detention, the preliminary injunction that they seek is too broad and should be denied.

Moreover, it must be remembered that the transfer of Plaintiffs' minor children to ORR custody occurs through the operation of the TVPRA, which is designed to protect children in Government custody who have no parent or legal guardian available in the United States to provide care or custody by ensuring that they are housed in facilities that are designed and licensed for that purpose. 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3). Thus, the facilities in which these minor children are housed provide numerous services designed to ensure the well-being of minors in their custody. *See* Sualog Decl. ¶¶ 9, 10.

D.  <u>The Government's Interests Would be Harmed, and the Public Interest Would Not Be Served by the Grant of Injunctive Relief.</u>

It is well-settled that the public interest in enforcement of United States immigration laws is significant. *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *United States*

*v. Brignoni-Ponce*, 422 U.S. 873, 878-79 (1975) (additional citation omitted)). "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood*, 734 F.3d at 419 (citing *Maryland v. King*, 567 U.S. 1301, 1301 (2012)). The relief requested by Plaintiffs would severely impact the ability of DHS to conduct multiple lawful and important aspects of its operations, including immigration enforcement, criminal enforcement, and the disruption of smuggling operations. *See* Sanders Decl. ¶ 6. These various operational tasks have been assigned to DHS by statute, and in many cases have been delegated to DHS's unreviewable discretion. Thus, granting the requested injunctive relief over the express wishes of Congress would not be in the public interest, and would harm the Government's strong interest in continued enforcement of the immigration laws.

V

<u>CONCLUSION</u>

For all of the above reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

DATED: April 20, 2018                    Respectfully submitted,

                                         CHAD A. READLER
                                         Acting Assistant Attorney General
                                         WILLIAM C. PEACHEY
                                         Director
                                         WILLIAM C. SILVIS
                                         Assistant Director

                                         */s/ Sarah B. Fabian*
                                         SARAH B. FABIAN
                                         Senior Litigation Counsel
                                         NICOLE MURLEY
                                         Trial Attorney
                                         Office of Immigration Litigation
                                         Civil Division, U.S. Department of Justice
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         (202) 532-4824
                                         (202) 616-8962 (facsimile)
                                         sarah.b.fabian@usdoj.gov

                                         ADAM L. BRAVERMAN
                                         United States Attorney

                                         *s/ Samuel W. Bettwy*
                                         SAMUEL W. BETTWY
                                         Assistant U.S. Attorney

                                         *Attorneys for Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al. | Case No. 18-cv-428 DMS MDD |
| Petitioner-Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying RESPONDENTS-DEFENDANTS' OPPOSITION TO PETITIONERS-PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 20, 2018

/s/ Sarah B. Fabian
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice

*Attorney for Respondents-Defendants*

22