CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.,<br><br>   Petitioner-Plaintiff,<br><br> vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>   Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>HEARING DATE: May 4, 2018<br>Hon. Dana M. Sabraw<br><br>**RESPONDENT-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

# I

# INTRODUCTION

Plaintiffs have provided no reason why this Court should not dismiss the Amended Complaint as a matter of law. Plaintiffs persist in ignoring the fact that the separation of a purported family unit is a Government action or decision that does not occur in a vacuum, but rather occurs as an incident of lawful immigration and criminal enforcement, and thus it does not violate Plaintiffs' rights under the Fifth Amendment or the Administrative Procedure Act ("APA"). By persisting in their erroneous view, Plaintiffs fail to rebut the Government's showing of the lawfulness of the legal framework in which the separation of a purported family unit may occur, and thus fail to provide any reason why their Amended Complaint should not be dismissed.

# II

# ARGUMENT

A. <u>The Claims of Named Plaintiff Ms. L. Should Be Dismissed Because They Are Moot.</u>

Plaintiffs incorrectly assert that the doctrine of voluntary cessation applies to rescue Ms. L's claims from mootness, despite the fact that she has been released from U.S. Immigration and Customs Enforcement ("ICE") custody and reunited with her daughter, S.S. In support of their position, Plaintiffs contend that "Ms. L.'s reunification with S.S. was the result of Defendants' own decision to end their separation before this Court could rule." Opposition, ECF No. 58, at 12. However, Ms. L.'s reunification with S.S. occurred through the operation of the applicable laws governing her detention and the custody of S.S. In such cases, the doctrine of "voluntary cessation" does not apply. *See Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998) ("For the [voluntary cessation] exception to apply, however, the INS's voluntary cessation must have arisen because of the litigation.") (internal quotations omitted); *see also A.C.L.U. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) ("The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.")

(quoting M. Redish, Moore's Fed. Practice, § 101.99[2]); *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005) ("A defendant cannot be said to have voluntarily ceased allegedly illegal conduct where, as here, the controversy has become moot through the normal course of events rather than through the unilateral action of the defendant.").

Ms. L. originally was detained because she was subject to mandatory detention under 8 U.S.C. § 1225(b), and she was not held with S.S. because ICE had reason to question the family relationship and was unable to immediately verify the relationship between Ms. L. and S.S. at the time the decision to detain her had to be made. *See* Declaration of Mario Ortiz ("Ortiz Decl."), ECF No. 46-1, ¶ 5; ECF No. 50 at 12. Ms. L. subsequently was released after she filed a motion to reconsider her removal order with the immigration court, ECF No. 50 at 33-47, and ICE granted her request for a stay of removal given this pending motion for reconsideration. ECF No. 50 at 48-49. Once released from detention, Ms. L. was able to be evaluated as a potential sponsor for S.S. under the Trafficking Victims Protection and Reauthorization Act ("TVPRA"). The U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR") therefore made the TVPRA-mandated "determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); *see also* ORR Guide §§ 2.2, 2.7.8; Status Report, Mar. 19, 2018, ECF No. 49. Once ORR had completed the steps mandated by the TVPRA, on March 16, 2018, ORR released S.S. into Ms. L.'s custody.

Thus, contrary to Plaintiffs' assertions, Ms. L. was not released or reunified with S.S. as a result of "voluntary cessation." Rather, her release and reunification with S.S. occurred in accordance with the operations of ICE and ORR processes under the Immigration and Nationality Act and the TVPRA. The voluntary cessation doctrine therefore is inapplicable here, and does not save Ms. L.'s claims from mootness.

Moreover, there is no basis on which to find that Ms. L. would again be separated from S.S. under the same circumstances that gave rise to this litigation, where ICE separated her from S.S. because it could not verify the family relationship between them. ORR has now confirmed the family relationship between Ms. L. and S.S. through DNA testing, and

2

thus separation on that basis would not occur in the future. Plaintiffs should not be allowed to avoid mootness by broadly asserting that any possibility of separation might exist in the future, even if such separation could only occur under entirely different legal circumstances. Accordingly, there is no basis to apply the voluntary cessation doctrine to Ms. L., and her claims should be dismissed as moot.

B. <u>The Claims of Named Plaintiff Ms. C. Should be Dismissed Because This Court is Not The Proper Venue For Any of Her Claims.</u>

Plaintiffs dispute that the general rule that each named plaintiff in a putative class action must independently establish that the Court has venue over her claims should apply to this case. *See Saravia, et al. v. Sessions, et al.*, 280 F. Supp. 3d 1168, 1191 (N.D. Cal. 2017) ("At least in most instances, the rule in a proposed class action is that each named plaintiff must independently establish venue."). But, contrary to Plaintiffs' contentions, none of the case law cited by Plaintiffs establishes that this general rule should not apply in this case simply because it is brought against federal government defendants.

To start, it should be noted that even if Plaintiffs are correct that the general rule should not apply, their contention that Ms. C. should be allowed to continue as a named plaintiff relies on an assumption that the Court had venue over Ms. L.'s claims at the time that the Amended Complaint—including Ms. C.'s claims—was filed. However, Ms. L.'s claims were moot at that time. Even assuming that venue over Ms. C.'s claims could lie in this Court based solely on the fact that the Court had venue over Ms. L's claims, such a rule should not apply where Ms. L.'s claims became moot before Ms. C.'s claims were ever filed. Plaintiffs point to no case that would allow this Court to take venue over Ms. C.'s claims in this scenario.

Additionally, Plaintiffs point to case law holding that for suits against the Government with multiple plaintiffs, venue needs to be found under 28 U.S.C. § 1391(e) only as to a single plaintiff. Opposition at 13-15. Plaintiffs then contend that this holding should be applied to overrule the general rule with regard to venue for the named plaintiffs in a class action against government defendants. *Id.* No case law in the Ninth Circuit

3

requires this conclusion,[1] and there is good reason not to reach it in this case. As explained in the Government's recently filed opposition to preliminary injunction (ECF No. 57), the separation of Ms. L. and S.S. occurred for very different reasons than that of Ms. C. and J. Specifically, Ms. L. and S.S. were separated because Ms. L. was subject to mandatory immigration detention and because ICE could not verify the relationship between them, ECF No. 57 at 7-9, while Ms. C. and J. were separated because Ms. C. was referred for prosecution by the U.S. Department of Justice, and served time in criminal custody. *Id.* at 9-10. Moreover, while Ms. L.'s case is based on actions taken by ICE agents based within this District, Ms. C.'s case is based on actions by U.S. Border Patrol agents in the District of New Mexico, U.S. Department of Justice prosecutors in the District of New Mexico, and ICE agents in the Western District of Texas. *Id.* There is simply no overlap in facts or defendants between the claims of Ms. L. and Ms. C., and this provides good reason not to overrule the general rule that each named Plaintiff for this putative class action should be required to establish venue in this District. Even more so where, as here, the only claims that are based within the Southern District of California are moot.

Finally, Plaintiffs are incorrect to contend that there is any basis to find that Ms. C. may properly bring her habeas claims in this District. As an initial matter, Plaintiffs are incorrect to contend that a remote supervisory official may properly be the respondent to Ms. C.'s habeas petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (for "core" habeas challenges—defined as "challenges to present physical confinement"—brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."); 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained."). But even if Plaintiffs are correct, none of those remote supervisory officials to whom Plaintiffs refer reside for purposes of venue within this District. Moreover, none of

---

[1] Plaintiffs contend that *Dukes v. Wal-Mart Stores, Inc.*, 2001 WL 1902806, at *2 (N.D. Cal. Dec. 3, 2001), held as such, but the language to which Plaintiffs point is only dicta, and not a holding of the court in that case.

4

the cases cited by Plaintiffs call into question the rule that "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." 542 U.S. at 443. Ms. C. alleges that at the time the Amended Complaint was filed she was held by ICE in the West Texas Detention Facility, which is located in Sierra Blanca, Texas, within the Western District of Texas. Accordingly, the only proper district for her habeas claims was the Western District of Texas.

### C. Plaintiffs Have Not Established That This Court Has Jurisdiction to Order The Relief They Seek.

Plaintiffs do not dispute the Government's argument that this Court lacks jurisdiction to order ICE to parole, rather than detain, the named Plaintiffs. Plaintiffs do, however, argue that this Court may review ICE's decisions regarding where the named Plaintiffs are to be detained. Plaintiffs' argument is based on a decision of the First Circuit, *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007), which found that decisions on where to detain aliens were not delegated to the discretion of the Attorney General. Yet Plaintiffs entirely ignore the Ninth Circuit's decision in *Comm. of Cent. Am. Refugees v. INS*, in which that Court "recognized the Attorney General's broad discretion in exercising his authority to choose the place of detention for deportable aliens." 795 F.2d 1434, 1440 (9th Cir. 1986), *as amended*, 807 F.2d 769 (1987). In that case, the Ninth Circuit considered the precursor to 8 U.S.C. § 1231(g)(1), which contained very similar language and directed the Attorney General "to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section." *Id.* at 1440 (quoting 8 U.S.C. § 1252(c)). Because the Ninth Circuit has previously found that decisions of the Executive as to the location where an alien will be detained are discretionary, there is good reason to find that those determinations may not be reviewed or directed by this Court, and thus the Court lacks jurisdiction to order Defendants to hold Plaintiffs or putative class members in any particular ICE facility. By ignoring this precedent, Plaintiffs fail to provide any reason why this Court should conclude otherwise.

Plaintiffs also are incorrect in arguing that such review is not barred because "decisions that violate the constitution cannot be 'discretionary[.]'" Opposition at 12

(quoting *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004)). This argument ignores the plain fact that Plaintiffs themselves have never alleged that Ms. L.'s detention by ICE, or in the case of Ms. C. her criminal custody and later detention by ICE, was unlawful or in any way violated the constitution. By acknowledging the lawfulness of this detention, Plaintiffs forego their argument that this Court can review the location of that detention on the basis that it is unlawful. Accordingly, this doctrine provides no basis to conclude that this Court has the authority to order the relief that Plaintiffs seek.

D. Plaintiffs Have Not Stated a Due Process Claim.

Plaintiffs seek to bolster their argument that the Government has violated their substantive due process rights by contending that the Government's arguments regarding the basis for its separations of the named Plaintiffs from their children are "shifting and unpersuasive." Opposition at 16. But in making this argument Plaintiffs ignore the fact that the arguments they point to have been made in different contexts. Those arguments made by the Government in the context of a Rule 12(b)(6) motion to dismiss are necessarily limited by the facts pled in Plaintiffs' Amended Complaint, and focused on the named Plaintiffs Ms. L. and Ms. C. However, in opposing Plaintiffs' preliminary injunction motions, the Government is able to provide additional facts and additional explanation for its actions relating to not only the named Plaintiffs, but also the putative class. Thus, where Plaintiffs did not plead that Ms. L. arrived in the United States without her identity documents, Defendants were limited in the context of their motion to dismiss in their ability to explain this basis for her detention. This does not mean, as Plaintiffs suggest, that the Government has abandoned its position that doubts about family relationship are a legitimate and necessary basis for DHS to separate a purported family unit, as explained extensively in the Government's opposition to preliminary injunction (ECF No. 57 at 14-18). At the same time, as explained in Defendant's motion to dismiss (ECF No. 56-1 at 14-

18), even as pled, Plaintiffs' allegations regarding Ms. L. do not establish any substantive due process violation by the Government.[2]

Plaintiffs also misunderstand the Government's discussion about the role that the TVPRA plays where it is necessary to separate a purported family group, and thus mistakenly contend that the Government has argued that "federal statutes require them to separate parents from their children . . . ." Opposition at 18. The Government has made no such argument. Relatedly, the Government also has never contended that detention of a family unit together in an ICE family residential center is unlawful. *See id.* Detention at an ICE family residential center is not mandated and cannot be required by this Court. Rather, ICE may in its discretion determine that detention of a family unit in a family residential center may be appropriate if space is available. In some cases, such as that of Ms. L. where the family relationship is in doubt and could not be verified, detention in an ICE family residential center may not be an available option. This is just one scenario illustrating the need for case-by-case considerations and the use of discretion in detention decisions.

In cases such as that of Ms. L. where detention in an ICE family residential center is not an option, and where ICE determines not to exercise its discretion to release the parent along with the child, then the parent must be detained in an ICE adult detention facility, and the TVPRA operates to provide for the care and custody of the child who has become an unaccompanied alien child as defined in 6 U.S.C. § 279(g)(2). This argument does not, as Plaintiffs argue, suggest that the Government believes that the TVPRA mandates the separation of a parent and child. *See* Opposition at 19-20. Rather, the TVPRA provides for the care and custody of a minor whose parent has become unavailable to provide the same,

---

[2] Plaintiffs also suggest that the Government previously took the position that it "would start separating families as a way 'to deter' future asylum seekers and other families from coming to the United States[,]" Opposition at 16, but later abandoned that position in support of the positions taken in this lawsuit. *Id.* at 17. Defendants take no such position in this case. Moreover, there is simply no evidence that either of the named Plaintiffs, or any putative class member, has been separated from his or her child for purposes of deterrence. Thus, again, Defendants are not shifting positions, but rather are litigating the case at hand.

either because of immigration enforcement actions taken against him or her, or because of criminal prosecution and detention. Thus, while Ms. L. was in ICE custody, and Ms. C. was in criminal custody and later ICE custody, S.S. and J. were properly in the custody of ORR until they could be released to a suitable custodian. Moreover, contrary to Plaintiffs' argument, Opposition at 20, once J. was transferred to the custody of ORR, the plain language of the TVPRA does, in fact, prevent ORR from releasing J. into Ms. C.'s custody until it has evaluated her suitability as a custodian in accordance with the terms of 8 U.S.C. § 1232(c)(3). Plaintiffs provide no basis to find otherwise.

Finally, Plaintiffs have not provided any basis to conclude that there is a due process right to family unity that prohibited the separation of Ms. L. from S.S. or Ms. C. from J. Plaintiffs seek to distinguish the case law upon which the Government relies by arguing that "the practice [of family separation] here is not a necessary incident of detention; it is the result of an unnecessary governmental action intended to separate family units who were arrested together, and who are being detained far apart despite the availability of family detention facilities that were specifically established to house families together." Opposition at 21. But for all of the reasons explained by the Government in its briefs thus far, this argument reflects the fundamental misunderstanding on which Plaintiffs' claims rely. In fact, the opposite is true. The cases of family separation at issue here are precisely what Plaintiffs say that they are not: a necessary incident of the detention of the parent. The Government does not, as Plaintiffs contend, make a "decision to forcibly separate parents and children, in service of no compelling or even legitimate purpose . . . ." Opposition at 22. Rather, the Government's immigration and criminal enforcement actions taken in these cases that resulted in the separation of Plaintiffs from their children serve the legitimate purpose of allowing the Government to carry out its immigration and criminal enforcement role. Because Plaintiffs' argument relies entirely on their erroneous presumption to the contrary, their substantive due process claims fail. Moreover, for all of these reasons Plaintiffs also are incorrect that they have stated any procedural due process claim.

### E. Plaintiffs Have Not Stated an APA Claim.

Plaintiffs contend that the Government's discretionary decision not to hold Plaintiffs with their children in an ICE family residential center is reviewable under the APA. Opposition at 13-14. This is because Plaintiffs dispute that 8 U.S.C. § 1231(g)(1) provides ICE with discretionary authority over the place of detention for aliens. *Id.* However, Plaintiffs again fail to address the Ninth Circuit's decision in *Comm. of Cent. Am. Refugees*, in which that Court "recognized the Attorney General's broad discretion in exercising his authority to choose the place of detention for deportable aliens." 795 F.2d at 1440. Because the Ninth Circuit has previously found that decisions of the Executive as to the location where an alien will be detained are discretionary determinations, there is good reason to find that those determinations may not be reviewed by this Court under the APA, and Plaintiffs have provided no basis to find otherwise.

Next, Plaintiffs argue that the Government's "separation practice" is a "final agency action" subject to APA review. However, Plaintiffs point to no actual Government policy or practice regarding separation that this Court can review. Rather, Plaintiffs are challenging a number of different immigration and criminal enforcement actions by multiple agencies which, when taken with regard to the named Plaintiffs, resulted in the separation of each named Plaintiff from her child. To be "final," agency action must "mark the 'consummation' of the agency's decisionmaking process . . . ." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citing *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). It also must be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* (citing *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). As Defendants have explained, the separation of a family unit is not itself the culmination of any decision-making process; rather, it is incident to other agency actions and decisions regarding immigration and criminal enforcement and detention. Relatedly, because a decision to separate is made only as part of other agency decision-making processes, even if such action has an "impact" on Plaintiffs' rights, Opposition at 14, it cannot be said that

any rights or obligations are actually "determined" from such an action, nor do any legal consequences flow from it. Accordingly, Plaintiffs have not established that they are asking this Court to review any final agency action, and thus APA review cannot be had here.

Finally, Plaintiffs rely on their previous arguments to contend that the agency actions at issue in this case are arbitrary and capricious. However, as explained above, the Government has not argued that the separation of purported family units is required by statute, nor have the Plaintiffs provided any basis on which to find that the Government has shifted any policies with regard to family separation. Further, the Government has explained why placement in an ICE family residential center may not be appropriate in all instances, particularly in a case like that of Ms. L. where the Government cannot confirm the family relationship at the time the decision regarding placement needs to be made. Thus, Plaintiffs have provided no basis on which the Court should find that the Government's actions are arbitrary and capricious, and Plaintiffs' APA claim should fail.

### F. Plaintiffs' Have Not Stated a Claim For Violation of the Asylum Statute.

Plaintiffs argue that they have standing to pursue their claims under the asylum statute because they have, in fact, alleged harm. Opposition at 24-25. However, the harms to which Plaintiffs point are generalized and unrelated to their right to apply for asylum, and thus are insufficient to establish standing for their claims. Moreover, Plaintiffs do not show that they have alleged how these harms directly flow from the Government's actions. Plaintiffs' contention that they alleged an impediment to their asylum application "by denying them the ability to speak to their children" misstates the allegations in the Amended Complaint, and is conclusory in that it provides no explanation how such action impacted Plaintiffs' asylum applications in any way. Nothing in Plaintiffs' Oppositions establishes that Plaintiffs have stated any claim under the asylum statutes, and this claim should be dismissed.

## V
## CONCLUSION

For all of the above reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

DATED: April 27, 2018  Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney

s/ *Samuel W. Bettwy*
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.<br><br>Petitioner-Plaintiff,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying REPLY IN SUPPORT OF MOTION TO DISMISS on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 27, 2018

                                        */s/ Sarah B. Fabian*
                                        SARAH B. FABIAN
                                        Senior Litigation Counsel
                                        Office of Immigration Litigation
                                        Civil Division, U.S. Department of Justice

                                        *Attorney for Respondents-Defendants*