Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Petitioners-Plaintiffs*      *Admitted Pro Hac Vice*
Additional counsel on next page

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. et al., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: April 27, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date: May 4, 2018**<br>**Time: 1:30 p.m.**<br>**Courtroom: 13A**<br>**Judge: Dana M. Sabraw** |

CBP; Pete Flores, San Diego Field Director,
CBP; Hector A. Mancha Jr., El Paso Field
Director, CBP; Alex Azar, Secretary of the
Department of Health and Human Services;
Scott Lloyd, Director of the Office of Refugee
Resettlement,

                        *Respondents-Defendants*.

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

**INTRODUCTION**

This is a prototypical civil rights class action lawsuit.  The plaintiffs are far too numerous to proceed individually, the defendants are federal agencies, and there are numerous common issues.  The government does not dispute that there are numerous putative plaintiffs, nor could they. The affidavits state that there are hundreds of families throughout the country that have been separated.  In fact, it was just revealed that the number may be as large as 700 families, with more than 100 cases involving children less than 4 years old.  Caitlin Dickerson, *Hundreds of Children Have Been Taken from Parents at U.S. Border*, N.Y. Times, Apr. 20, 2018.  Defendants also do not dispute that they are, in fact, separating hundreds of families without a showing that the parent presents a danger to the child.

Defendants nonetheless seek to defeat class certification by attempting to pick off the two named plaintiffs, arguing that Ms. C. and Ms. L. are not adequate representatives because their cases are moot.  But the cases are plainly not moot for a variety of reasons, including that the relief they seek–reunification–did not occur before the class certification motion was filed (and in Ms. C's case, has still not occurred).  Defendants should not be permitted to thwart judicial scrutiny of their widespread separation practice simply by mooting individual plaintiffs.  That is particularly so in a case where Defendants control access to the hundreds of detained parents and children.[1]

Defendants alternatively argue that class certification should be denied because there are certain differences among class members.  But the presence of

---

[1] Notwithstanding the enormous difficulty of locating these families, who are scattered throughout the country, Plaintiffs have managed to locate at least some additional families and are submitting their declarations with this brief, should the Court wish to add additional parents who remain detained, including within this District. *See, e.g.*, Declaration of Mr. U., Ex. 21 (detained at Otay Mesa). *See also* Declaration of Ms. G., Ex. 22; Declaration of Ms. M.M.A.L., Ex. 23; Declaration of J.I.L., Ex. 24; Declaration of Mirian, Ex. 25; Declaration of Mr. A., Ex. 26 (all parents in ICE detention and separated from their children).

potential factual differences (even assuming they exist) does not defeat class certification where, as here, there are multiple critical questions common to all plaintiffs.  Defendants suggest that such questions do not exist in this case, but they themselves raise those questions with respect to all class members, including whether these families even have a due process right to remain together.

## I.   PLAINTIFFS' CLAIMS ARE NOT MOOT, AND THEY EASILY SATISFY RULE 23'S ADEQUACY REQUIREMENTS.

The government repackages its mootness arguments as challenges to Ms. L.'s and Ms. C.'s adequacy as class representatives.  ECF No. 59 at 6-7.  As Plaintiffs have already explained, ECF No. 58 at 5-6, Plaintiffs' claims are not moot.

1. Ms. L.'s claims are not moot because reunification came as the result of the government's voluntary cessation, and is not moot for that reason alone.  ECF No. 58, at 5-6.  Indeed, Defendants have not disclaimed their ability to separate Ms. L. from her child at any moment, and any finding of mootness is especially unwarranted where a defendant "continues to defend the legality of" its abandoned practice.  *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012).  Defendants do not address Plaintiffs' voluntary cessation argument, which is dispositive here.

Even assuming that Ms. L.'s individual claims were moot, she would still be an adequate representative for the *class* claims because both the amended class complaint and motion for class certification were filed *before* she was reunited with her child *See* ECF No. 32 (Amended Class Complaint); ECF No. 35 (Motion for Class Certification), both filed March 9.  It is settled that where the named Plaintiffs' claims are "inherently transitory," "certification relates back to the filing of the complaint," and so the class claims remain justiciable.  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1142-43 (9th Cir. 2016) (quotation marks omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (class claims not moot where named plaintiffs had live claims "[a]t the time the complaint was filed"); *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991) (same).  The rule is of course

designed to guard against defendants "picking off" the named Plaintiffs in an action, in a strategic effort to prevent them from ever receiving a ruling on class certification. *See Chen*, 819 F.3d at 1147-48; *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011). That rationale has particularly acute force here, where the government controls the timing of relief and access to all the detained plaintiffs through the country.

Defendants note that although reunification occurred after the filing of the amended complaint and motion for class certification, Ms. L.'s own release from detention occurred on March 6, before the filing of the amended complaint and class certification motion. Defendants argue that Ms. L's claims therefore "became moot on March 6, 2018," and that "her class claims are not saved by the inherently transitory doctrine." ECF No. 59 at 7 & n.2. But Ms. L.'s claims were not moot on March 6 because she had not yet received the relief she sought: reunification with her child. The relief Plaintiffs seek is not release from detention, but reunification, even if that means that they remain in detention in a family facility with their child. *See Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 885 (9th Cir. 1992) (finding case not moot even though plaintiff had received partial relief).

2. Ms. C.'s case is not moot because she has not yet been reunified. Moreover, even under the government's theory, her claims would not be moot because she herself was not released until after the amended complaint and class certification motion were filed. ECF No. 59 at 7 n.2. And if reunification does occur, Ms. C.'s case would still not be moot under the voluntary cessation exception.

3. The government separately challenges Ms. C.'s adequacy as a class representative on the ground that the Court lacks venue over her claims. ECF No. 59 at 7. But as Plaintiffs' opposition to Defendants' motion to dismiss explains, only *one* Plaintiff need establish venue in suits against the federal government. *See* ECF No. 58 at 6-9 (citing, inter alia, *Railway Labor Execs.' Ass'n v. ICC*, 958 F.2d

252, 256 (9th Cir. 1991), and *Californians for Renewable Energy v. EPA*, 2018 WL 1586211, at \*5 (N.D. Cal. Mar. 30, 2018)); *see also* 28 U.S.C. § 1391(e).  There is no dispute that Ms. L. has established venue in this District, and therefore venue over the entire action—including Ms. C.'s claims—is proper.  ECF No. 58 at 6-7.

4.  Finally, if the Court deems it necessary, other parents who remain separated from their children can be substituted as named Plaintiffs, including a plaintiff detained in this district.  *See, e.g.*, Declaration of Mr. U., Ex. 21.  At bottom, the government cannot moot class actions by providing voluntary relief to named plaintiffs, thereby insulating a widespread practice from meaningful scrutiny (especially where the government controls access to the plaintiffs).

## II.    PLAINTIFFS HAVE SATISFIED THE COMMONALITY AND TYPICALITY REQUIREMENTS.

Defendants raise only a single objection to commonality and typicality: that the government's decisions to separate families "arise[] from many different factual situations and so to evaluate this injury the Court would need to examine these widely varying array of factual situations."  ECF No. 59 at 11.  Not only do Defendants fail to identify any actual material differences among the proposed class members, they misunderstand Rule 23's requirements.

As discussed below, Defendants do not actually identify "many different factual situations."  Thus, even on its own terms, Defendants' argument is unpersuasive.  More fundamentally, the presence of some factual differences does not defeat class certification.  Here, there are numerous threshold common questions that are most appropriately addressed in one action, and not in hundreds of individual cases (even assuming the families could locate attorneys to raise them).  For instance:

- Are Defendants correct that they do not need a justification to separate these parents and children because there is no due process right at all to be detained together?

- If there is a due process right for these parents and children to be detained together, can it be abridged in circumstances where there has been no showing that the parent is unfit or presents a danger to the child?
- Are Defendants correct that the TVPRA mandates that they separate families where the parent is subject to mandatory detention, because a parent in detention is "unavailable" to care for the child, notwithstanding the existence of family detention centers?
- Are Defendants correct that separation is permissible based on doubts about parentage without first offering parents a DNA test?
- Are Defendants correct that detention placement decisions are discretionary and therefore not subject to review by courts under 8 U.S.C. § 1252(a)(2)(B)(ii) or under 5 U.S.C. § 701(a)(2)?

These are only a few of the common threshold questions presented by this case. "[A]ll that Rule 23(a)(2) requires is a *single significant* question of law or fact." *Abdullah v. U.S. Sec. Assocs*, 731 F.3d 952, 957 (9th Cir. 2013) (internal quotation marks omitted) (emphasis added). Defendants are incorrect that these questions should all be litigated in hundreds of individual actions. That is true even assuming that the government is correct that this case presents numerous factual differences among the class. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (affirming class certification despite "[d]ifferences among the class members with respect to the merits of their claims").

In any event, despite Defendants' assertion that family separation "may result from a variety of fact-specific scenarios," ECF No. 59 at 10, they identify only two such scenarios, both of which are presented by the named Plaintiffs themselves. Defendants claim that their separation of Ms. L. from S.S. was justified by Ms. L.'s inability to verify her relationship with her daughter. They also assert that they separated Ms. C. from her child because of her criminal prosecution. But the government offers no explanation as to why those varying factual scenarios would

produce a different answer to the same core question each Plaintiffs ask:  Can the government lawfully detain them apart from their children, without any showing that they present a danger to their child?  *See Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("Rule 23(a)(3) requires only that [the plaintiffs'] claims be 'typical' of the class, not that they be identically positioned to each other or to every class member.").[2]

As a result, "[i]ndividual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because 'the existence of shared legal issues with divergent factual predicates is sufficient' to satisfy Rule 23." *Santillan v. Ashcroft*, 2004 WL 2297990, at *10 (N.D. Cal. Oct. 12, 2004) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  The same is true of typicality.  *See, e.g., Hanlon*, 150 F.3d at 1020 (under "permissive" typicality standard, representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical").

These standards are even more liberal in civil rights suits where a class "challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).  Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2017). *See, e.g., Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (approving class certification of due process challenge to benefits denials); *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (affirming class certification of due process claim because "cases alleging a single course of wrongful conduct

---

[2] As Plaintiffs have explained, they do not challenge whether Ms. C. was lawfully prosecuted, nor do they challenge the legality of separating her from her child while she was in criminal custody.  Ms. C.'s claim is that Defendants could not engage in separation when she was back in ICE custody and could then have been detained with her son in a family detention center.

are particularly well-suited to class certification"); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017) ("The procedural due process claim for which [the plaintiff] seeks class-wide preliminary injunctive relief is amenable to common answers.").

In short, class certification is warranted because of the numerous common questions and because Plaintiffs challenge a systemic government practice and seek common relief: a prohibition on keeping them separate from their children while they are detained in immigration custody absent a showing that they are a danger to their children. *See Parsons*, 754 F.3d at 681 (recognizing that "the commonality requirement can be satisfied by proof of the existence of systemic policies and practices"); *Rosas v. Baca*, No. 12-cv-0428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members.") (citation omitted).

### III.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(2).

Defendants incorrectly argue that Plaintiffs' class definition is deficient. ECF No. 59 at 13-14.  But class members are easily identified: parents who are detained by DHS separately from their children without a showing that the parent presents a danger to the child.  Notably, the only supposed problem Defendants identify is in determining *when* individuals like Ms. C.—who were criminally prosecuted—would fall into the class.  *Id.* at 14.  But the solution to that "problem" is simple:  they become part of the class when they are in the custody of DHS without their children.  *See* ECF No. 58 at 20.  Therefore, since the end of Ms. C.'s criminal sentence, when she was returned to ICE custody, she has been within the class definition.[3]

---

[3] Defendants also cite *Jennings v. Rodriguez*, 138 S.Ct. 830, 851 (Feb. 27, 2018), ECF No. 59 at 12 n.3, but acknowledge that the Supreme Court merely remanded that case to the Ninth Circuit for reconsideration of class certification.

Defendants also contend that certification should be denied because relief could apply differently to individuals like Ms. C.  ECF No. 59 at 14.  Specifically, Defendants note that while Ms. L. was held continuously in DHS custody, Ms. C. was already separated from her child when she was returned to DHS custody from criminal custody.  But, despite this difference, "a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Parsons*, 754 F.3d at 688 (approving of Rule 23(b)(2) class because "[w]hile each of the . . . policies and practices may not affect every member of the proposed class . . . in exactly the same way, they constitute shared grounds for all [members] in the proposed class"); *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (affirming Rule 23(b)(2) certification notwithstanding purportedly "unique circumstances of each plaintiff's experience with the child welfare system").  Both Ms. L. and Ms. C. would obtain relief from a declaration and injunction that separation is unlawful absent a showing that the parent presents a danger to the child; in Ms. L.'s case it would mean that the separation should never have occurred, and in Ms. C.'s case it would be she should have been reunited once she returned to DHS custody.

## CONCLUSION

Plaintiffs' motion for class certification should be granted.

Dated: April 27, 2018

Respectfully Submitted,

*/s/ Lee Gelernt*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2018, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system.  A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt, Esq.

*Ms. L., et al., v. U.S. Immigration and Customs Enforcement, et al.*

**EXHIBITS TO REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

| Exhibit | Document | Pages |
|---|---|---|
| 21 | Declaration of Mr. U. | 12-16 |
| 22 | Declaration of Ms. G. | 17-21 |
| 23 | Declaration of Ms. M. M. A. L. | 22-26 |
| 24 | Declaration of Ms. J. I. L. | 27-34 |
| 25 | Declaration of Mirian | 35-41 |
| 26 | Declaration of  Mr. A. | 42-47 |

11

18cv0428

# EXHIBIT 21

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Petitioners-Plaintiffs*          *\*Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs,* | |
| v. | Date Filed: April 20, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **DECLARATION OF Mr. U.**<br><br>CLASS ACTION<br><br>Hearing Date: May 4, 2018<br>Time: TBD<br>Courtroom: 13A<br>Judge: Hon. Dana Sabraw |
| *Respondents-Defendants.* | |

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

I, Mr. U., make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am a citizen of Kyrgyzstan and am seeking asylum in the United States. When I came to the United States, I passed my initial asylum interview ("credible fear interview"), and am now in immigration proceedings before an immigration judge to seek asylum. I am currently detained in the Otay Mesa Detention Facility.

2.     I came to the United States on or around October 18, 2017 with my biological son, T.U., who is thirteen years old. He is also from Kyrgyzstan and seeking asylum.

3.     When we came to the United States, we sought admission at the San Ysidro Port of Entry, and we said that we wanted to seek asylum.

4.     A few days later, I was told that I was going to be separated from my son. I suffer from high blood pressure and felt as though I was having a heart attack. I was not able to ask why they were separating my son from me and did not know what to do. I feel like I was in shock and do not remember what happened next or even how I got to the detention center after that. All I can remember is how much my son and I were both crying as they took him away. I do not recall anyone questioning whether I am really his biological father or whether I was a danger to him or abusive in any way. I even had my son's birth certificate proving I am his father.

18cv0428

5.      I was sent to the Otay Mesa Detention Center on or around October 23, 2017.  I learned that my son was sent to a facility in Chicago.

6.      It has been about six months since I last saw my son.  We speak over the phone once a week for about 10 minutes.  It is not enough.  The last time we spoke, it sounded like he had been crying.  I worry about him constantly.  He is just a boy in a strange land with no parents or relatives with him.  He needs me.

7.      I feel this separation is causing T.U. great harm.  He sounds depressed and each time I speak with him over the phone, he talks less and less.  This separation is tearing me apart inside.  T.U. is only 13 years old and I should be with him to comfort and protect him.

8.      I hope I can be with reunited with my son very soon.  I miss him and I want to be with him to tell him everything will be alright.  I am so scared about how this separation is affecting him.

9.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge.  Executed in San Diego, California, on April 18, 2018.



Mr. U.

18cv0428

# EXHIBIT 22

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Petitioners-Plaintiffs*     *Admitted Pro Hac Vice*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: April 16, 2018 |
| U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr., El Paso Field Director, CBP; Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement, | **DECLARATION OF** Ms. G. ▮▮▮▮▮▮ <br><br> CLASS ACTION <br><br> Hearing Date: May 4, 2018 <br> Time: TBD <br> Courtroom: 13A <br> Judge: Hon. Dana Sabraw |
| *Respondents-Defendants*. | |

1  Spencer E. Amdur (SBN 320069)
2  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   IMMIGRANTS' RIGHTS PROJECT
3  39 Drumm Street
   San Francisco, CA 94111
4  T:  (415) 343-1198
   F:  (415) 395-0950
5  *samdur@aclu.org*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, ██Ms. G.██████████, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a citizen of Mexico and am seeking asylum in the United States.  When I came to the United States, I asked for asylum at the border in Nogales, Arizona I am now in immigration proceedings before an immigration judge to seek asylum.r

2.      I came to the United States on or around March 1, 2018 with my biological daughter, Y-M-N-P, who is six years old, and blind, and my biological son, J-P-P-G, who is four years old.  Both are from Mexico and seeking asylum.

3.      When we came to the United States, we reported at Nogales, Arizona and said that I wanted to seek asylum.

4.      Shortly after arriving, I was told that I was going to be separated from my daughter.  There were no doubts expressed that I was my daughter's biological mother and I have a birth certificate to show our relationship.  They did not say that I was a danger to my daughter or was abusive.

5.      I was sent to the Eloy Detention Center around March 5, 2018.  My children were sent to an ORR facility in Phoenix, Arizona

6.      I have not seen my children for one and a half months.  I worry about them constantly and don't know when I will see them.  We have talked on the phone, at first

18cv0428

once a week, and now twice a week.  They are constantly asking me when we will be together again.

7.    I know that Y-M-N-P- and J-P-P-G are having a very hard time detained all by themselves without me.  They are only six and four years-old in a strange country and they need their parent.

8.    I hope I can be with my children very soon.  I miss them and am scared for them.

9.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge.

Executed in Eloy, Arizona, April 23, 2018.

Ms. G.

# EXHIBIT 23

1   Lee Gelernt*
    Judy Rabinovitz*
2   Anand Balakrishnan*
    AMERICAN CIVIL LIBERTIES
3   UNION FOUNDATION
    IMMIGRANTS' RIGHTS PROJECT
4   125 Broad St., 18th Floor
    New York, NY 10004
5   T: (212) 549-2660
    F: (212) 549-2654
6   lgelernt@aclu.org
    jrabinovitz@aclu.org
7   abalakrishnan@aclu.org

    Bardis Vakili (SBN 247783)
    ACLU FOUNDATION OF SAN
    DIEGO & IMPERIAL COUNTIES
    P.O. Box 87131
    San Diego, CA 92138-7131
    T: (619) 398-4485
    F: (619) 232-0036
    bvakili@aclusandiego.org

8   *Attorneys for Petitioners-Plaintiffs*       *Admitted Pro Hac Vice*

9   *Additional counsel on next page*

10   ## UNITED STATES DISTRICT COURT
     ## SOUTHERN DISTRICT OF CALIFORNIA

11   Ms. L., et al.,                              Case No. 18-cv-00428-DMS-MDD

12                 *Petitioners-Plaintiffs,*

13   v.
                                                  Date Filed: April 24, 2018
14   U.S. Immigration and Customs Enforcement
     ("ICE"); U.S. Department of Homeland Security
15   ("DHS"); U.S. Customs and Border Protection
     ("CBP"); U.S. Citizenship and Immigration
16   Services ("USCIS"); U.S. Department of Health   **DECLARATION OF**
     and Human Services ("HHS"); Office of            Ms. M. M. A. L.
17   Refugee Resettlement ("ORR"); Thomas
     Homan, Acting Director of ICE; Greg
18   Archambeault, San Diego Field Office Director,  CLASS ACTION
     ICE; Joseph Greene, San Diego Assistant Field
19   Office Director, ICE; Adrian P. Macias, El Paso
     Field Director, ICE; Frances M. Jackson, El Paso Hearing Date: May 4, 2018
20   Assistant Field Office Director, ICE; Kirstjen  Time: TBD
     Nielsen, Secretary of DHS; Jefferson Beauregard Courtroom: 13A
21   Sessions III, Attorney General of the United    Judge: Hon. Dana Sabraw
     States; L. Francis Cissna, Director of USCIS;
22   Kevin K. McAleenan, Acting Commissioner of
     CBP; Pete Flores, San Diego Field Director,
23   CBP; Hector A. Mancha Jr., El Paso Field
     Director, CBP; Alex Azar, Secretary of the
24   Department of Health and Human Services;
     Scott Lloyd, Director of the Office of Refugee
25   Resettlement,

26                 *Respondents-Defendants.*

27

28

Exh. 23, Page 23

1   Spencer E. Amdur (SBN 320069)
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
2   IMMIGRANTS' RIGHTS PROJECT
    39 Drumm Street
3   San Francisco, CA 94111
    T:  (415) 343-1198
4   F:  (415) 395-0950
    *samdur@aclu.org*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, ██ Ms. M. M. A. L. ██, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a citizen of Guatemala and am seeking asylum in the United States.  When I came to the United States, I presented myself at the border at San Ysidro, California asking for asylum.

1.      I came to the United States on or around April 20, 2018 with my biological son, E-Z-G-A.  My child is from Guatemala and seeking asylum.

2.      When we came to the United States, we reported at San Ysidro, California, and said that I wanted to seek asylum.

3.      Shortly after arriving, I was told that I was going to be separated from my son.  There were no doubts expressed that I was my son's biological mother and I have a birth certificate to show our relationship.  They did not say that I was a danger to my son or was abusive.

4.      I was sent to the Eloy Detention Center in April 2018.  My children were sent to an ORR facility in Phoenix, Arizona.

5.      I have not seen my children for 1 month.  I worry about E-Z-G-A constantly and don't know when I will see him.  We have talked on the phone only once.  I was given a number to call, but no one answers the phone. I hope I can be with my child very soon. I miss him and am scared for him.

18cv0428

Exh. 23, Page 25

7.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge. Executed in April 24, 2018.

███████

Ms. M. M. A. L.

18cv0428

# EXHIBIT 24

1  Lee Gelernt*
2  Judy Rabinovitz*
   Anand Balakrishnan*
3  AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
   IMMIGRANTS' RIGHTS PROJECT
4  125 Broad St., 18th Floor
   New York, NY 10004
5  T: (212) 549-2660
   F: (212) 549-2654
6  lgelernt@aclu.org
   jrabinovitz@aclu.org
7  abalakrishnan@aclu.org

   Bardis Vakili (SBN 247783)
   ACLU FOUNDATION OF SAN
   DIEGO & IMPERIAL COUNTIES
   P.O. Box 87131
   San Diego, CA 92138-7131
   T: (619) 398-4485
   F: (619) 232-0036
   bvakili@aclusandiego.org

8  *Attorneys for Petitioners-Plaintiffs*      *Admitted Pro Hac Vice*
9  *Additional counsel on next page*

10            *UNITED STATES DISTRICT COURT*
              *SOUTHERN DISTRICT OF CALIFORNIA*

11  Ms. L., et al.,                          Case No. 18-cv-00428-DMS-MDD

12                    *Petitioners-Plaintiffs,*

13  v.                                       Date Filed: April 3, 2018

14  U.S. Immigration and Customs Enforcement
    ("ICE"); U.S. Department of Homeland Security
15  ("DHS"); U.S. Customs and Border Protection
    ("CBP"); U.S. Citizenship and Immigration      **DECLARATION OF**
16  Services ("USCIS"); U.S. Department of Health
    and Human Services ("HHS"); Office of          Ms. J. I. L
17  Refugee Resettlement ("ORR"); Thomas
18  Homan, Acting Director of ICE; Greg
    Archambeault, San Diego Field Office Director,
19  ICE; Joseph Greene, San Diego Assistant Field
    Office Director, ICE; Adrian P. Macias, El Paso   CLASS ACTION
20  Field Director, ICE; Frances M. Jackson, El Paso
    Assistant Field Office Director, ICE; Kirstjen
21  Nielsen, Secretary of DHS; Jefferson Beauregard   Hearing Date: May 4, 2018
22  Sessions III, Attorney General of the United      Time: TBD
    States; L. Francis Cissna, Director of USCIS;     Courtroom: 13A
23  Kevin K. McAleenan, Acting Commissioner of        Judge: Hon. Dana Sabraw
    CBP; Pete Flores, San Diego Field Director,
24  CBP; Hector A. Mancha Jr., El Paso Field
    Director, CBP; Alex Azar, Secretary of the
25  Department of Health and Human Services;
26  Scott Lloyd, Director of the Office of Refugee
    Resettlement,
27
                     *Respondents-Defendants.*
28

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*samdur@aclu.org*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.     I, ████ Ms. J. I. L. ████, make the following declaration based on my

personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. §

1746 that the following is true and correct:

2.     I am a citizen of El Salvador and am seeking asylum in the United States.  I had

my initial asylum interview ("credible fear interview") on March 27 or 28, 2018.  I

received a negative finding on my credible fear interview, and I immediately asked for

review of the decision by the immigration judge. I have yet to receive a date for my

appearance before an immigration judge to review the negative finding. I hope to have

the opportunity to present my asylum case in immigration court. My children and I

fled El Salvador, and I fear that we will be killed if we return there.

3.     I arrived at the Texas/Mexico border with my two biological sons on March 13,

2018, seeking protection from violence in El Salvador.  My son J.S.P.L. was born on

August 3, 2007 and is ten years old.  My son D.A.P.L. was born on March 30, 2014

and is four years old.

4.     My sons and I were apprehended with three other women near Roma, Texas by

border officials on the morning of March 13th, 2018.  The officers put us in the back of

their vehicle and drove us to the border station. Everyone referred to the station as an

"icebox" or "*hielera*."

5.     At the hielera, the officers asked for my information and took my fingerprints.

Later, one of the officers said that they believed I had ties to gangs back to El

Exh. 24, Page 30                                          18cv0428

Salvador. I have never been a part of or aided the gangs in El Salvador. In fact, gang members severely beat me in front of my children for refusing to comply with their orders.  My ex-partner is in prison back in El Salvador for involvement with the gangs, but I did not support his involvement, which put my children and me in danger.

6.      Another officer in the hielera told me that I was going to be transferred to the Immigration and Customs Enforcement ("ICE") Laredo Detention Center in Laredo, Texas. However, J.S.P.L. and D.A.P.L. were not going to be transferred with me. The officer said that children were not allowed at the Laredo facility.

7.      That day, March 13, a woman came to pick up my kids. I was given only five minutes to say goodbye before J.S.P.L. and D.A.P.L. were torn from me. My babies started crying when they found out we were going to be separated. It breaks my heart to remember my youngest wail, "Why do I have to leave? Mami, I want to stay with you!" My youngest cried and screamed in protest because he did not want to leave my side. My oldest son was also confused and did not understand what was happening. In tears myself, I asked my boys to be brave, and I promised we would be together again soon. I begged the woman who took my children to keep them together so they could at least have each other. She promised she would, and she left with my boys.  I was transferred to the Laredo Detention Center. I have been in this detention center since then and am heartbroken.

8.      It has been 18 days since I have spoken to my boys. I do not know where my sons are, and I am very worried about them. I called the Office of Refugee Resettlement to learn about my children, but the office only told me that the boys are in a shelter in San Antonio.

9.      The separation from my sons has been incredibly hard, because I have never been away from them before. I do not want my children to think that I abandoned them. J.S.P.L. and D.A.P.L. are so attached to me. D.A.P.L. used to sleep in bed with me every night while J.S.P.L. slept in his own bed in the same room. Back in El Salvador, my kids became nervous every time I was out of their sight. They would calm down as soon as they saw me, and I assured them that I would not leave them. It hurts me to think how anxious and distressed they must be without me.

10.     I am particularly worried about my older son J.S.P.L. who was not doing well back in El Salvador after he saw MS gang members beat me and threaten me. He did not even want to leave my side to go to the restroom.  Before the MS started threatening us, J.S.P.L. was a normal, happy child. He loved to play and study. School was his favorite part of his day. After the MS's threats and beatings, he did not want to go to school anymore, because he was afraid he would not find me when he came back home. Now, his worst fear has come true; I am not by his side. He must be worse now that he is suffering all by himself.  I am also very worried about my younger son

because he is only four years old.  Both of my sons need their mother.  I do not know if they are eating, sleeping, or even going to the restroom.

11.    I brought my sons to the United States to seek safety not to leave them without their mother. I have heard that my two sons may have been separated and placed in different foster homes.  If this is true, I am even more worried, because now they are with strangers, away from each other.

12.    I am desperate to be reunited with both of my sons. I came with the hope that we could come here and live safely together. Instead, I am imprisoned while my two boys are alone among strangers.

13.    I would like to be released and reunited with my sons so we can live with family in the United States while we pursue our asylum cases.  I have an aunt in Virginia who is a United States citizen.  If we cannot be released, I would rather be detained together.

14.    I hope I can be reunited with my sons very soon. I pray that people put themselves in my shoes and think about how difficult it must be for me as a mother to be away from my children. I miss J.S.P.L. and D.A.P.L., and I am scared for my little boys.

1  I declare under penalty of perjury under the laws of the United States of America that

2  the foregoing is true and correct, based on my personal knowledge. Executed in

3

4  Laredo, Texas, on April 3, 2018.

5

6

7  Ms. J. I. L.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18cv0428

Exh. 24, Page 34

# EXHIBIT 25

1 | Lee Gelernt*
Judy Rabinovitz*
2 | Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
3 | UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
4 | 125 Broad St., 18th Floor
New York, NY 10004
5 | T: (212) 549-2660
F: (212) 549-2654
6 | lgelernt@aclu.org
jrabinovitz@aclu.org
7 | abalakrishnan@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Petitioners-Plaintiffs*       *Admitted Pro Hac Vice*
*Additional counsel on next page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Ms. L., et al.,

*Petitioners-Plaintiffs,*

v.

U.S. Immigration and Customs Enforcement
("ICE"); U.S. Department of Homeland Security
("DHS"); U.S. Customs and Border Protection
("CBP"); U.S. Citizenship and Immigration
Services ("USCIS"); U.S. Department of Health
and Human Services ("HHS"); Office of
Refugee Resettlement ("ORR"); Thomas
Homan, Acting Director of ICE; Greg
Archambeault, San Diego Field Office Director,
ICE; Joseph Greene, San Diego Assistant Field
Office Director, ICE; Adrian P. Macias, El Paso
Field Director, ICE; Frances M. Jackson, El Paso
Assistant Field Office Director, ICE; Kirstjen
Nielsen, Secretary of DHS; Jefferson Beauregard
Sessions III, Attorney General of the United
States; L. Francis Cissna, Director of USCIS;
Kevin K. McAleenan, Acting Commissioner of
CBP; Pete Flores, San Diego Field Director,
CBP; Hector A. Mancha Jr., El Paso Field
Director, CBP; Alex Azar, Secretary of the
Department of Health and Human Services;
Scott Lloyd, Director of the Office of Refugee
Resettlement,

*Respondents-Defendants.*

Case No. 18-cv-00428-DMS-MDD

**DECLARATION OF**
**MIRIAN** ▮▮▮▮
▮▮▮▮▮▮

CLASS ACTION

Hearing Date: May 4, 2018
Time: TBD
Courtroom: 13A
Judge: Hon. Dana Sabraw

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
samdur@aclu.org

I, Miran ▮▮▮▮▮▮▮▮▮▮▮ make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      My name is Mirian ▮▮▮▮▮▮▮▮▮. I am a citizen and national of Honduras, and my birth date is December 17, 1988. I am the biological mother of E.G.M., who was born on July 4, 2016. E.G.M. is also a citizen and national of Honduras. He is my only child.

2.      U.S. border officials separated me from my 18-month old son E.G.M. when we arrived at the U.S. border on February 20, 2018. I brought my son to the United States so that we could seek protection from government violence in Honduras. I had no idea that I would be separated from my child for seeking help. I have not seen my baby for more than a month, and I am so anxious to be reunited with him.

3.      On January 15, 2018, I left my home in Progreso, Yoro, Honduras with my son to escape to the United States. My sister, her husband, and their two children—one who is only 1 ½ years old and another who is five years old—traveled to the United States with us. We fled Honduras after the military teargassed our home.

4.      On February 20, 2018, my son and I, together with my sister's husband and my sister's five-year old son, crossed the international bridge in Brownsville, Texas and presented ourselves to U.S. immigration officers. We told the officers we needed asylum. The officers immediately sent me in one direction with E.G.M. and sent my

sister's husband and son in another direction.  I have not seen my sister, her husband, or her two children since that day, February 20, 2018.  I later learned that my sister's husband and her five-year old son were released to go live with family in Houston, Texas the same day that we presented ourselves to officials at the international bridge.  My sister and her 1 ½ year-old baby came to the bridge the following day, were sent to a family detention center, and now have been released to live with family in Houston.

5.   After I presented myself at the bridge with E.G.M., U.S. border officers took me and E.G.M. to be interviewed.  The officers took a statement from me regarding the reasons I came to the United States.  I provided the officers with my Honduran ID card (*cedula*) and several documents attesting to my son's identity and confirming that I am his mother.  I presented my son's birth certificate, which listed me as his mother; his birth record from the hospital, which also listed me as his mother, and his vaccination records.  The U.S. immigration officers retained all these documents.

6.   The U.S. immigration officers then told me that they were taking my son from me.  They said he would be going to one place and I would be going to another.  I asked why the officers were separating my son from me.  They did not provide any reason.

7.   The immigration officers made me walk out with my son to a government vehicle and place my son in a car seat in the vehicle.  My son was crying as I put him

in the seat.  I did not even have a chance to try to comfort my son, because the officers slammed the door shut as soon as he was in his seat.  I was crying, too.  I cry even now when I think about that moment when the border officers took my son away.

8.      Immigration officers then took me to the Port Isabel detention center, where I stayed for a few days.  While at the Port Isabel detention center, I was going crazy wondering what had happened with my son.  I was very worried about him and did not know where he was.  Another detainee told me to write to the immigration officials at the facility to ask about my son.  I wrote a request form asking for information about my son, and the officers at the facility told me that he was in a facility in San Antonio, Texas.

9.      After a few days in detention at the Port Isabel detention center, I was sent to the Laredo detention center.  I stayed at the Laredo facility for almost two weeks.

10.     At the beginning of March 2018, I was sent to the T. Don Hutto detention center in Taylor, Texas.  I remain detained at the Hutto facility.

11.     On April 3, 2018, I received a positive credible fear finding from a San Antonio Immigration Judge.  I understand that I will now be able to present my asylum claim in Immigration Court.  I will do everything that I need to do to seek protection in the United States.  It would not be safe for my son and me to return to Honduras.

12.     While detained at the Laredo and Hutto facilities, I have been able to speak several times to a caseworker charged with my son's case.  The caseworker has told

me that my son asked for me and cried all the time during the first few days after we were separated.  The caseworker says that my son is doing a little bit better now but has also had an ear infection and a cough.

13.    I have not been able to speak to my son, because he does not really talk yet since he is so young.  I need to be able to hold him and reassure him that he is safe and that his mother is here for him.  My son also needs my care to make sure that he is healthy and doing well.

14.    During the first weeks after my son and I were separated, I was very depressed and quiet; I did not even want to eat.  Now I am trying to be strong for my son so that I can work hard to be reunited with him and to take care of him once we are together. I am still sad and worried about him, though.

15.    I am very anxious to be released from detention so that I can be with my son.  I have family in the United States who can help us while we pursue asylum.  If my son and I cannot be released, we need to be detained together.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge.  Executed in Taylor, Texas, on April 6, 2018.



**MIRIAN**

# EXHIBIT 26

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys for Petitioners-Plaintiffs*        *Admitted Pro Hac Vice*
*Additional counsel on next page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Ms. L., et al.,

        *Petitioners-Plaintiffs,*

v.

U.S. Immigration and Customs Enforcement
("ICE"); U.S. Department of Homeland Security
("DHS"); U.S. Customs and Border Protection
("CBP"); U.S. Citizenship and Immigration
Services ("USCIS"); U.S. Department of Health
and Human Services ("HHS"); Office of
Refugee Resettlement ("ORR"); Thomas
Homan, Acting Director of ICE; Greg
Archambeault, San Diego Field Office Director,
ICE; Joseph Greene, San Diego Assistant Field
Office Director, ICE; Adrian P. Macias, El Paso
Field Director, ICE; Frances M. Jackson, El Paso
Assistant Field Office Director, ICE; Kirstjen
Nielsen, Secretary of DHS; Jefferson Beauregard
Sessions III, Attorney General of the United
States; L. Francis Cissna, Director of USCIS;
Kevin K. McAleenan, Acting Commissioner of
CBP; Pete Flores, San Diego Field Director,
CBP; Hector A. Mancha Jr., El Paso Field
Director, CBP; Alex Azar, Secretary of the
Department of Health and Human Services;
Scott Lloyd, Director of the Office of Refugee
Resettlement,

        *Respondents-Defendants.*

Case No. 18-cv-00428-DMS-MDD

**DECLARATION OF Mr. A.**

CLASS ACTION

Hearing Date: May 4, 2018
Time: 1:30 pm
Courtroom: 13A
Judge: Hon. Dana Sabraw

Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*samdur@aclu.org*

1.      I, Mr. A. , make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

2.      I am a citizen of Honduras and came to the United States seeking asylum.  I received a negative determination of my initial asylum interview ("credible fear interview"), and an immigration judge affirmed it so I have a final order of removal but have not been deported.

3.      I came to the United States on or around February 18, 2018 with my biological son, R.Z.A.R., who is three years old.  He is also from Honduras and seeking asylum.

4.      When we came to the United States, we turned ourselves in at the border in Brownsville, Texas, and I said that I wanted to seek asylum.

5.      Shortly after arriving, I was told that I was going to be separated from my son. There were no doubts expressed that I was my son's biological father and I have a birth certificate to show our relationship.  I also had my son's vaccination records and his passport. They did not tell me that I was a danger to my son or was abusive.  They told me that they had to separate me from my son because I had a prior removal order and they did not have any places to detain fathers and children.

6.      I was sent to the South Texas Detention Center around February 19, 2018.  My son was sent to an ORR facility in or near El Paso, Texas.

18cv0428

7.    I have not seen him for over two months.  I worry about R.Z.A.R. constantly and don't know when I will see him.  We have talked on the phone several times, but I do not have many minutes and I do not always get an answer when I call.

8.    I know that R. is having a very hard time detained all by himself without me. My son has already suffered a lot because his mother disappeared about six months ago. He is too young to understand that she was taken from us, but he knows she is gone and he misses her. That has been very hard on him. He is only a three-year-old in a strange country and needs his parent.

9.    I hope I can be with my son very soon.  I miss him and am scared for him.

10.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, based on my personal knowledge. Executed in Pearsall, Texas, on April 25, 2018.



Mr. A.

18cv0428