UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                          )
MS. L. AND MS. C.,                        )
                                          )CASE NO. 18CV0428-DMS
        PETITIONERS-PLAINTIFFS,           )
                                          )
                                          )
VS.                                       )
                                          )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS              ) FRIDAY MAY 4, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT      ) 1:30 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.        )
CUSTOMS AND BORDER PROTECTION ("CBP");    )
U.S. CITIZENSHIP AND IMMIGRATION          )
SERVICES ("USCIS"); U.S. DEPARTMENT       )
OF HEALTH AND HUMAN SERVICES ("HHS");     )
OFFICE OF REFUGEE RESETTLEMENT ("ORR");   )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;     )
GREG ARCHAMBEAULT, SAN DIEGO FIELD        )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS,   )
EL PASO FIELD DIRECTOR, ICE; FRANCES M.   )
JACKSON, EL PASO ASSISTANT FIELD          )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN,   )
SECRETARY OF DHS; JEFFERSON BEAUREGARD    )
SESSIONS III, ATTORNEY GENERAL OF THE     )
UNITED STATES; L. FRANCIS CISSNA,         )
DIRECTOR OF USCIS; KEVIN K.               )
MCALEENAN, ACTING COMMISSIONER OF         )
CBP; PETE FLORES, SAN DIEGO FIELD         )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,      )
EL PASO FIELD DIRECTOR, CBP;              )
ALEX AZAR, SECRETARY OF THE               )
DEPARTMENT OF HEALTH AND HUMAN            )
SERVICES; SCOTT LLOYD, DIRECTOR           )
OF THE OFFICE OF REFUGEE RESETTLEMENT,    )
                                          )
        RESPONDENTS-DEFENDANTS.           )
                                          )
------------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**MOTION HEARING**

COUNSEL APPEARING:

FOR PLAINTIFF:                   LEE GELERNT, ESQ.
                                     ANAND VENKATA BALAKRISHNAN,ESQ.
                                     ACLU IMMIGRANT RIGHTS PROJECT
                                     125 BROAD STREET 18TH FLOOR
                                     NEW YORK, NEW YORK 10004

                                     BADIS VAKILI, ESQ.
                                     ACLU FOUNDATION OF SAN DIEGO
                                     AND IMPERIAL COUNTIES
                                     P.O. BOX 87131
                                     SAN DIEGO, CALIFORNIA 92138

FOR DEFENDANT:                  SARAH B. FABIAN, ESQ.
                                     NICOLE N. MURLEY, ESQ.
                                     U.S. DEPARTMENT OF JUSTICE
                                     OFFICE OF IMMIGRATION LITIGATION
                                     P.O. BOX 868
                                     BEN FRANKLIN STATION
                                     WASHINGTON, DC 20044

REPORTED BY:                     LEE ANN PENCE,
                                     OFFICIAL COURT REPORTER
                                     UNITED STATES COURTHOUSE
                                     333 WEST BROADWAY, ROOM 1393
                                     SAN DIEGO, CALIFORNIA 92101

```
 1       SAN DIEGO, CALIFORNIA – FRIDAY, MAY 4, 2018 – 1:45 P.M.

 2                            *   *   *

 3            THE CLERK:  NO. 18 CALENDAR, CASE NO. 18CV0428,

 4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

 5   MOTION HEARING.

 6            THE COURT:  GOOD AFTERNOON.  MAY I HAVE APPEARANCES,

 7   PLEASE?

 8            MR. GELERNT:  LEE GELERNT FROM THE ACLU FOR

 9   PLAINTIFFS, YOUR HONOR.

10            THE COURT:  THANK YOU.

11            MR. BALAKRISHNAN:  ANAND BALKRISHNAN FROM THE ACLU

12   FOR PLAINTIFFS, YOUR HONOR.

13            THE COURT:  THANK YOU.

14            MR. BALAKRISHNAN:

15            MR. VAKILI:  GOOD AFTERNOON, YOUR HONOR.  BARDIS

16   VAKILI FROM THE ACLU SAN DIEGO FOR THE PLAINTIFF.

17            THE COURT:  GOOD AFTERNOON.

18            MS. FABIAN:  GOOD AFTERNOON, YOUR HONOR.  SARAH

19   FABIAN WITH THE DEPARTMENT OF JUSTICE FOR THE DEFENDANTS.

20            THE COURT:  THANK YOU.

21            MS. MURLEY:  GOOD AFTERNOON, YOUR HONOR.  NICOLE

22   MURLEY WITH THE DEPARTMENT OF JUSTICE FOR THE DEFENDANTS.

23            THE COURT:  THANK YOU.

24            GOOD AFTERNOON.  WELCOME.

25            I READ ALL OF THE BRIEFING, WHICH I GREATLY
```

1    APPRECIATE.  THE BRIEFING WAS EXCELLENT.  I REALLY APPRECIATE

2    THE EFFORT THAT THE PARTIES HAVE PUT INTO WHAT IS A VERY

3    SIGNIFICANT AND INTERESTING ISSUE.

4            I THINK FOR TODAY'S PURPOSES I WOULD LIKE TO FOCUS

5    ON THE DUE PROCESS ARGUMENT.  WE CAN COME BACK, IF COUNSEL

6    WOULD LIKE, AND ADDRESS SOME OF THE OTHER ISSUES.  BUT I AM

7    FAIRLY COMFORTABLE WITH THE JURISDICTIONAL ARGUMENTS, THE

8    MOOTNESS, VENUE ARGUMENTS WITH THE APA AND ASYLUM STATUTE

9    ARGUMENTS, AND WAS INCLINED TO GET RIGHT TO THE ISSUES.  THE

10   TENTATIVE ON THE JURISDICTIONAL ARGUMENTS WOULD BE TO DENY

11   THOSE AND TO GET TO THE MERITS.

12           SO LET'S START FIRST WITH -- PERHAPS I CAN INQUIRE

13   OF DEFENSE COUNSEL FOR THE GOVERNMENT ON THE DUE PROCESS ISSUE

14   AND ON THE OVERARCHING ISSUE, TO MAKE SURE I HAVE THE ISSUES

15   CLEARLY IN MIND.

16           DOES THE GOVERNMENT TAKE THE POSITION THAT THE DUE

17   PROCESS CLAUSE, THE SUBSTANTIVE DUE PROCESS, DOES NOT APPLY IN

18   THIS SETTING; OR ARE YOU MORE CAREFULLY FRAMING THE ISSUE WITH

19   THE ASSUMPTION THAT SUBSTANTIVE DUE PROCESS DOES APPLY BUT IT

20   DOESN'T PROVIDE FOR A RIGHT TO BE HOUSED TOGETHER?

21           **MS. FABIAN:**  YOUR HONOR, THE GOVERNMENT'S POSITION

22   IS NOT THAT SUBSTANTIVE DUE PROCESS DOES NOT APPLY HERE, BUT

23   THE GOVERNMENT DOES CONTEND THAT THIS CASE DOES NOT ALLEGE A

24   VIOLATION OF SUBSTANTIVE DUE PROCESS.

25           **THE COURT:**  ALL RIGHT.  SO YOU WOULD AGREE THAT

5

```
 1    BECAUSE THESE INDIVIDUALS ARE PRESENT IN THE UNITED STATES
 2    THAT SUBSTANTIVE DUE PROCESS ATTACHES, AND THEN THE QUESTION
 3    WOULD BE WHETHER THE PRACTICE AT ISSUE VIOLATES OR IMPINGES
 4    UPON THAT RIGHT.
 5              MS. FABIAN:  THAT'S CORRECT, YOUR HONOR.
 6         THE COURT:  OR ANOTHER WAY OF LOOKING AT THAT IS
 7    WHETHER OR NOT THE CONDUCT THAT IS ALLEGED SHOCKS THE
 8    CONSCIENCE OR IN SOME WAY IMPINGES UPON THAT FIFTH AMENDMENT
 9    DUE PROCESS RIGHT.
10              MS. FABIAN:  THAT'S CORRECT, YOUR HONOR.
11         THE COURT:  THERE IS ALSO IN THE BRIEFING ARGUMENT
12    THAT THE GOVERNMENT HAS A PRACTICE, OR PERHAPS EVEN A POLICY,
13    OF SEPARATION OF FAMILIES AS A DETERRENCE MECHANISM.  AND THE
14    PLAINTIFFS HAVE CITED A NUMBER OF ARTICLES WHICH HAVE
15    ATTRIBUTIONS TO SPOKESPERSONS WITHIN DHS AND HHS.
16              WHAT IS THE GOVERNMENT'S POSITION; IS THERE A POLICY
17    OR IS THERE NOT SUCH A POLICY OR PRACTICE?
18         MS. FABIAN:  I WOULD SAY, YOUR HONOR, THERE IS NO --
19    THERE IS NOT SUCH A POLICY.  I THINK THE STATEMENTS THAT ARE
20    REFERRED TO IN THE PLEADINGS, THAT HAS BEEN THE CONSISTENT
21    POSITION OF THE AGENCY.  WHETHER THERE IS A PRACTICE OF
22    SEPARATION, THERE IS NOT.
23              I THINK -- I GUESS WHAT I WILL DO IS START WITH
24    MAYBE SOME NUMBERS THAT I THINK HELP CLARIFY A LITTLE BIT.
25         THE COURT:  YES.
```

MAY 4, 2018

```
 1            MS. FABIAN:  THESE ARE FROM THE PUBLIC-FACING
 2   INFORMATION FROM CBP'S WEBSITE, SO I WILL OFFER THAT.  I CAN
 3   HAND OUT A PRINTOUT OF THE WEBSITE.  IT WAS UPDATED YESTERDAY,
 4   BUT I HAVE THE PREVIOUS VERSION OF IT IF YOU WOULD LIKE TO SEE
 5   IT.
 6            BUT WHAT I CAN SAY IS WHAT THAT REFLECTS IS IN MARCH
 7   OF 2018 14,000 INDIVIDUALS CROSSED THE SOUTHERN BORDER OF THE
 8   UNITED STATES AS MEMBERS OF FAMILY UNITS.  AND FOR PURPOSES OF
 9   THIS RECORDKEEPING THAT MEANS FAMILY UNITS WOULD BE GROUPS
10   WITH A PARENT OR LEGAL GUARDIAN AND A CHILD OR CHILDREN.
11            SO 14,000 INDIVIDUALS CROSSED THE SOUTHERN BORDER AS
12   MEMBERS OF FAMILY UNITS IN MARCH OF 2018.  JUST OVER 15,000, I
13   THINK THE NUMBER IS 15,090, CROSSED IN APRIL OF THIS YEAR.
14   THE TOTAL FROM OCTOBER SO -- FOR WHAT WE WOULD SAY IS FISCAL
15   YEAR 2018 TO DATE, THROUGH APRIL, THAT TOTAL IS 79,522
16   INDIVIDUALS.
17            SO THOSE ARE THE NUMBERS WE ARE LOOKING AT IN TERMS
18   OF WHAT -- INDIVIDUALS CROSSING THE SOUTHERN BORDER AS MEMBERS
19   OF FAMILY UNITS.
20            I KNOW THE NUMBER THAT HAS BEEN REPORTED OF MINORS
21   IN HHS CUSTODY IS APPROXIMATELY 700.  WHAT I CAN SAY ON THAT
22   NUMBER IS THAT HHS IS NOT AWARE OF HOW THAT NUMBER WAS
23   PROVIDED TO THE PRESS, TO MY KNOWLEDGE.  HOWEVER, I BELIEVE IT
24   IS -- AND IT IS NOT A NUMBER -- HHS HAS NOT HAD OFFICIAL
25   RECORDKEEPING OF THAT NUMBER FOR A SIGNIFICANT TIME PERIOD,
```

```
 1    HOWEVER THEY HAVE MADE AN EFFORT TO QUANTIFY IT.  I WOULD SAY
 2    I WOULDN'T STRONGLY DISPUTE THAT 700 IS AN APPROXIMATE NUMBER
 3    AT THAT TIME.  AND IT HAS TO BE GIVE-OR-TAKE BECAUSE IT IS
 4    ALWAYS -- IT IS GOING TO BE, YOU KNOW, COMING IN AND
 5    INDIVIDUALS GOING OUT AGAIN.
 6             THE COURT:  THERE IS AN ATTRIBUTION IN THE NEW YORK
 7    TIMES ARTICLE TO A REPRESENTATIVE OF HHS ACKNOWLEDGING THAT
 8    NUMBER.  DO YOU TAKE ISSUE WITH THAT OR DO YOU AGREE THAT THAT
 9    COULD BE AN ACCURATE ASSESSMENT?
10             MS. FABIAN:  I WAS NOT ABLE TO DETERMINE WHO THAT
11    INDIVIDUAL IS BY INQUIRIES SO -- BUT WHAT I DO KNOW IS THAT
12    BASED ON MY UNDERSTANDING OF THE NUMBERS THAT HHS HAS, I
13    WOULDN'T DISPUTE THAT AS AN APPROXIMATE NUMBER.
14             THE COURT:  DO YOU HAVE ANY IDEA HOW THOSE NUMBERS
15    COMPARE TO PRIOR ADMINISTRATIONS, OBAMA ADMINISTRATION OR
16    OTHERS; IN OTHER WORDS, IS THERE A SHIFT IN THE NUMBERS SUCH
17    THAT IT WOULD WARRANT THE ARGUMENT THAT IS BEING MADE THAT
18    THERE IS A PRACTICE NOW OF SEPARATION?
19             MS. FABIAN:  I DON'T, YOUR HONOR.  IT IS NOT --
20    AGAIN, IT IS NOT A NUMBER THAT HAS HISTORICALLY BEEN TRACKED
21    BY ANY AGENCY.
22             WHAT I WOULD SAY IS THAT TO THE EXTENT -- THE REASON
23    FOR ANY SHIFT, IF THERE WERE ONE -- I MEAN, I GUESS I WOULD
24    FIRST SAY THAT, YOU KNOW, THAT IF YOU LOOK AT 700 AND DO SOME
25    VERY ROUGH MATH WHICH I, YOU KNOW, A, I'M A LAWYER, AND, B, I
```

MAY 4, 2018

1   DON'T WANT TO PUT THIS OUT THERE.  BUT IF YOU SAY IT IS -- FOR

2   EXAMPLE, THAT NUMBER WAS REPORTED IN AROUND APRIL.  SO IF YOU

3   HAD 14,000 INDIVIDUALS IN FAMILY UNITS IN MARCH, IF YOU SAY

4   HALF OF THOSE WERE MINORS THAT WOULD BE 700.  AND SO THAT

5   IS -- SORRY -- 7,000, AND THAT 700 WOULD BE 10 PERCENT OF

6   THAT.  ASSUMING THAT THAT 700 RESULTED NOT ONLY FROM MARCH,

7   YOU WOULD SAY THAT THERE IS PROBABLY LESS THAN 10 PERCENT

8   SEPARATION.

9            I CAN'T STAND BY THAT ASSESSMENT OTHER THAN SORT OF

10  LOOKING AT THE NUMBERS AND WHAT REASONABLY MAY RESULT FROM

11  THAT, BUT THAT'S MY SORT OF ROUGH ESTIMATE OF THE NUMBERS.  SO

12  TO THE EXTENT THAT THAT DOESN'T IN FACT ESTABLISH A WIDESPREAD

13  POLICY I THINK THAT IS AN IMPORTANT THING TO NOTE.

14           I WOULD ALSO NOTE THAT CHANGES IN THOSE NUMBERS

15  ARE -- TO THE EXTENT THEY OCCUR ARE NOT DUE TO -- AND THIS I

16  THINK GOES TO THE FUNDAMENTAL POINT OF DEFENDANT'S BRIEFING --

17  ARE NOT DUE TO A CHANGE IN DECISIONS TO SEPARATE IN AND OF

18  THEMSELVES.  THEY ARE GOING TO BE DUE, IF AT ALL, TO THE OTHER

19  ACTIONS THAT DHS IS TAKING, AND HOW THOSE ARE BEING APPLIED,

20  AND SPECIFICALLY ONE EXAMPLE WOULD CERTAINLY BE PROSECUTIONS.

21  PLAINTIFFS HAVE NOT CHALLENGED THE LEGALITY OF PROSECUTIONS

22  THAT MAY OCCUR FOR THESE INDIVIDUALS.  SO IF PROSECUTIONS ARE

23  TO INCREASE THEN THE NUMBERS OF SEPARATIONS THAT RESULT FROM

24  THOSE PROSECUTIONS WOULD INCREASE.

25           LIKEWISE, IF THE NUMBERS OF FAMILY UNITS CROSSING

MAY 4, 2018

```
1    THE BORDER -- AND I THINK THAT IS ANOTHER IMPORTANT
2    CONSIDERATION BECAUSE THIS NUMBER IS GOING -- HAS GONE UP AND
3    IS GOING UP.  IF THE NUMBER OF FAMILY UNITS CROSSING THE
4    BORDER INCREASES THEN THE NUMBERS OF SEPARATIONS MAY WELL
5    INCREASE.
6             MOST NOTABLY BECAUSE IN ADDITION I THINK ANOTHER
7    NUMBER THAT IS IMPORTANT TO KEEP IN MIND, IN LIGHT OF THE FACT
8    THAT PLAINTIFFS HAVE FOCUSED HEAVILY ON REQUESTING THE COURT
9    TO ORDER DETENTION IN FAMILY RESIDENTIAL CENTERS, IS THAT THE
10   TOTAL CAPACITY IN RESIDENTIAL CENTERS IS LESS THAN 2700.  SO
11   THE GOVERNMENT'S ABILITY TO HOLD FAMILIES TOGETHER, THERE IS
12   OTHER LIMITATIONS IN FAMILY RESIDENTIAL CENTERS AS WELL.
13             THE COURT:  THE OPTION THEN, IF THE FACILITIES FILL
14   UP, REACH CAPACITY AT 2700, THEN THERE WOULD BE A PAROLE
15   OPTION OR A DETENTION OPTION.  AM I CORRECT?
16             MS. FABIAN:  THE OPTIONS BECOME WHETHER TO -- IF THE
17   FAMILY IS ELIGIBLE FOR PAROLE, FOR DISCRETIONARY PAROLE FROM
18   DHS, OR DHS WOULD HAVE TO DETAIN THE ADULT AND SEPARATE THE
19   CHILD.
20             THE COURT:  YES.
21             IF THERE WERE A BLANKET POLICY TO SEPARATE FOR
22   DETERRENCE VALUE, WOULD THAT BE LEGAL?  WOULD THAT PASS MUSTER
23   UNDER THE FIFTH AMENDMENT?
24             MS. FABIAN:  YOUR HONOR, I DON'T THINK THAT WOULD BE
25   POSSIBLE BECAUSE THE -- WHAT WE ARE TALKING ABOUT IS ANY
```

MAY 4, 2018

10

```
 1    SEPARATION DECISION IS MADE IN THE CONTEXT OF OTHER ACTIONS
 2    THAT -- SOME OF WHICH I WOULDN'T SAY ARE FOR THE PURPOSE OF
 3    DETERRENCE BUT ARE PART OF THE OVERALL FRAMEWORK OF
 4    IMMIGRATION ENFORCEMENT.
 5         THE COURT:  WOULDN'T YOU CONCEDE, THOUGH, THAT IF,
 6    HYPOTHETICALLY SPEAKING, THERE WERE SUCH A POLICY THAT WE WILL
 7    IMPLEMENT A POLICY OF DETERRING FAMILIES FROM ENTERING THE
 8    UNITED STATES BY SEPARATING THEM, WOULD YOU ARGUE THAT THAT
 9    WOULD NOT BE A CLEAR SUBSTANTIVE DUE PROCESS VIOLATION?
10         MS. FABIAN:  I THINK I WOULD ASK THE QUESTION:  IS
11    THERE OTHER -- IS IF IT WAS DONE WITHOUT ANY OTHERWISE
12    AUTHORITY TO CAUSE THE SEPARATION, I THINK, WE MIGHT BE CLOSER
13    TO THAT PROBLEM.
14         I THINK WHAT YOU HAVE TO LOOK AT, THOUGH, IS THAT
15    IF -- IS THAT IF THE SEPARATION IS RESULTING FROM OTHER
16    DISCRETIONARY ACTIONS THAT ARE BEING TAKEN WITHIN THE
17    AUTHORITY AND NOT FOR THE PURPOSE OF DETERRENCE, THEN I THINK
18    THAT IS HOW IT IS NOT GOING TO BE A SUBSTANTIVE DUE PROCESS
19    PROBLEM.
20         THE COURT:  SO IF SUBSTANTIVE DUE PROCESS APPLIES,
21    WHICH THE GOVERNMENT AGREES IT DOES IN THIS CONTEXT, SO THAT
22    IS FAMILIES ARRIVING -- LET'S START WITH MS. L. -- AT A PORT
23    OF ENTRY SEEKING ASYLUM, AND THERE IS A CONSTITUTIONAL RIGHT
24    TO FAMILY INTEGRITY, DOESN'T THE GOVERNMENT HAVE TO MAKE
25    CERTAIN DETERMINATIONS BEFORE IT SEPARATES?  AND, FOR EXAMPLE,
```

MAY 4, 2018

1  THE PARENTAGE, DETERMINING THAT THE PARENT IS IN FACT A

2  BIOLOGICAL PARENT OR A LEGAL GUARDIAN, AND FITNESS THAT THAT

3  PERSON IS MENTALLY SOUND AND DOESN'T IMPOSE A DANGER TO THE

4  CHILD?  DON'T THOSE TYPES OF DETERMINATIONS HAVE TO BE MADE

5  PRIOR TO SEPARATION, OR NOT?

6          **MS. FABIAN:**  WELL, I WOULD HAVE TO DISPUTE SORT OF

7  THE PREMISE.  I THINK THERE IS NOT A CONSTITUTIONAL RIGHT TO

8  FAMILY UNITY IN THE FACE OF OTHERWISE LAWFUL DETENTION.  AND I

9  THINK THAT'S THE -- PLAINTIFFS ACKNOWLEDGE THAT THAT IS WHAT

10 THE CASE LAW ESTABLISHED BUT SAID THAT THAT IS NOT THE

11 SITUATION HERE.  BUT I THINK WE DISAGREE WITH THAT.

12          WHAT YOU HAVE HERE IS NOT A DECISION, AGAIN, BEING

13 MADE TO SEPARATE AT THAT TIME.  IT IS -- THE QUESTION IS

14 SHOULD THIS PERSON -- FIRST YOU HAVE SHOULD THIS PERSON BE

15 DETAINED OR IS ICE GOING TO EXERCISE ITS DISCRETION TO RELEASE

16 UNDER A VERY LIMITED SET OF REASONS THAT WOULD RESULT IN

17 RELEASE.  AND THEN IF THE GOVERNMENT IS GOING TO DETAIN WHERE

18 ARE THEY GOING TO DETAIN, WHICH IS ALSO A DISCRETIONARY

19 DETERMINATION.

20          **THE COURT:**  THIS IS A UNIQUE CONTEXT BECAUSE THE

21 PARENT AND THE CHILD SHOW UP TOGETHER, SO THEY ARE DETAINED

22 TOGETHER.  AND THEN IF A RIGHT OF FAMILY INTEGRITY ATTACHES

23 DOESN'T THE GOVERNMENT HAVE TO MAKE CERTAIN DETERMINATIONS

24 BEFORE IT INTERFERES WITH THAT RIGHT?

25          BECAUSE SIMPLY SAYING THERE IS DETENTION AND THE

MAY 4, 2018

1    GOVERNMENT, THEREFORE, CAN -- THE FAMILY INTEGRITY GIVES WAY

2    DOESN'T ADDRESS SPECIFICALLY WHAT'S HAPPENING IN THIS CASE.

3    BECAUSE THE REALITY IS, THERE IS A FAMILY UNIT THAT'S DETAINED

4    TOGETHER, AND THEN THE GOVERNMENT HAS TO MAKE A DECISION AS TO

5    PAROLING OR DETENTION OR DETAINING TOGETHER.  DOESN'T THERE

6    HAVE TO BE SOME DETERMINATION IN ORDER TO COMPLY WITH FIFTH

7    AMENDMENT RIGHTS BEFORE SEPARATELY DETAINING FAMILY MEMBERS?

8             **MS. FABIAN:**  WE DON'T AGREE THAT THAT HAS TO BE

9    MADE.  AND I THINK THAT WHAT I WOULD SAY IS THAT YOU HAVE --

10   AT THAT POINT THE FAMILY HAS EITHER PRESENTED AT A PORT OF

11   ENTRY OR HAS CROSSED THE BORDER AND BEEN APPREHENDED BY BORDER

12   PATROL.  CBP HAS SORT OF A PROCESSING FUNCTION AT THAT POINT.

13            WHAT IS -- WHAT IS IN EFFECT BEING DONE IN THE CASE

14   WHERE THEN THE DECISION IS MADE TO DETAIN THE PARENT AND TO

15   SEPARATE THE CHILD IS IN FACT THAT THE CHILD IS BEING

16   RELEASED.

17            SO BECAUSE THE GOVERNMENT CANNOT RELEASE A MINOR

18   WITHOUT PROVIDING ANOTHER CUSTODIAN OF THAT MINOR, THE WAY

19   THAT IS DONE IS THAT THE MINOR IS TRANSFERRED TO HHS.  THAT IS

20   WHAT THE TVPRA ANTICIPATES AND SORT OF PROVIDED FOR THE

21   PROTECTION OF THE MINOR IN THAT SITUATION.  AND SO THAT MINOR

22   CAN THEN BE RELEASED TO ANOTHER CUSTODIAN IF ANOTHER CUSTODIAN

23   IS AVAILABLE WHO CAN TAKE CUSTODY OF THAT CHILD.  SO, IN

24   EFFECT, I THINK --

25            **THE COURT:**  BUT THAT IS RESULTING, OBVIOUSLY, IN A

MAY 4, 2018

```
 1   SEPARATION.
 2            YOU ARE ARGUING IT IS LAWFUL SEPARATION, IT COMPLIES
 3   WITH DUE PROCESS.
 4            MS. FABIAN:  YES, YOUR HONOR.
 5            THE COURT:  THE STATUTE, I THINK IT IS THE TVPRA,
 6   REQUIRES THAT THE GOVERNMENT ACT IN THE BEST INTEREST OF THE
 7   CHILD ONCE THE FAMILY CROSSES.  FROM A STATUTORY FRAMEWORK
 8   DOING WHAT'S BEST FOR THE CHILD HAS TO CONTEMPLATE THIS ISSUE
 9   OF SEPARATION, DOES IT NOT?  AND WHETHER THAT'S IN THE CHILD'S
10   BEST INTEREST?
11            MS. FABIAN:  THE TVPRA ACTS IN THIS CASE ONCE THE
12   DETERMINATION HAS BEEN MADE THAT THE PARENT IS UNAVAILABLE.
13   AND SO I THINK THE TVPRA'S ROLE IN THIS SETTING IS THAT WHEN
14   ESSENTIALLY UNDER THE INA DETENTION IS NECESSARY AND
15   WHETHER -- IN CONSIDERING OTHER FACTORS DETENTION OF THE
16   PARENT WITH THE CHILD IS NOT POSSIBLE, THE TVPRA THEN ACTS TO
17   ENSURE THE BEST INTEREST OF THE CHILD IN -- BECAUSE THE CHILD
18   HAS NOW BECOME UNACCOMPANIED.  AND THAT IS THE PRACTICE OF
19   TRANSFER TO ORR.
20            THE COURT:  ISN'T THE CHILD BECOMING UNACCOMPANIED
21   BECAUSE OF THE GOVERNMENT'S DETERMINATION?  IN OTHER WORDS,
22   THE GOVERNMENT IS MAKING THE CHILD UNACCOMPANIED BY ELECTING
23   TO DETAIN THE PARENT.  SO IT IS NOT AS IF THE CHILD SHOWS UP
24   UNACCOMPANIED WITHOUT ANY PARENT, IT IS THEY SHOWED UP WITH A
25   PARENT AND THEN THEY ARE NOW, LEGALLY SPEAKING, UNACCOMPANIED
```

```
 1    BECAUSE THE GOVERNMENT HAS DETERMINED TO DETAIN THE PARENT.

 2           MS. FABIAN:  THAT'S CORRECT.  AND THE GOVERNMENT'S

 3    DETERMINATION, AS DISCUSSED IN OUR BRIEFS, IS THE GOVERNMENT

 4    HAS NO CHOICE BUT TO MAKE THOSE DETERMINATIONS.  AND IN MANY

 5    CASES IT IS GOING TO BE THAT THE PARENT IS SUBJECT TO

 6    MANDATORY DETENTION AND THE GOVERNMENT HAS A LIMITED SCOPE OF

 7    DISCRETION TO RELEASE.

 8           THE COURT:  IN ONE OF THE DECLARATIONS SUBMITTED BY

 9    THE GOVERNMENT THE PERSON, I THINK IT WAS MAYBE AN ICE

10    OFFICIAL, THE PERSON WHO MAKES THIS INITIAL DETERMINATION

11    INDICATES THAT THERE IS TWO PRIMARY CONCERNS; AND ONE IS

12    WHETHER THE PERSON IS THE PARENT OR A LEGAL CUSTODIAN AND,

13    TWO, WHETHER THEY ARE FIT.  AND THAT WOULD HAVE TWO

14    COMPONENTS, MENTALLY SOUND AND FIT TO HAVE CUSTODY OF THE

15    CHILD.  THAT WAS IN THE GOVERNMENT'S DECLARATION.

16           SO DOESN'T THE GOVERNMENT THEN NECESSARILY, IN ORDER

17    TO COMPLY WITH DUE PROCESS, HAVE TO MAKE A DETERMINATION THAT

18    THE PERSON EITHER IS OR IS NOT THE PARENT AND IS OR IS NOT FIT

19    BEFORE MAKING THE DETENTION DECISION WHICH WOULD THEN RENDER

20    THE CHILD UNACCOMPANIED UNDER THE TVPRA?

21           MS. FABIAN:  I WOULD PLACE THAT DECISION IN SORT OF

22    A DIFFERENT FRAMEWORK.  I WOULD SAY THAT THE DECISION HAS TO

23    BE MADE WHETHER DETENTION IS AUTHORIZED AND THEN OBLIGATED

24    UNDER THE INA.  AND THEN THAT PART OF THE DECISION WILL GO TO

25    WHETHER PAROLE OF THE FAMILY TOGETHER IS POSSIBLE, OR WHETHER
```

MAY 4, 2018

1    DETENTION OF THE FAMILY IN AN ICE FAMILY RESIDENTIAL CENTER IS

2    POSSIBLE.

3         **THE COURT:**  IF YOU ARE GOING IN THAT ORDER THEN

4    WOULDN'T YOU BE MAKING DECISIONS THAT ARE NOT IN THE BEST

5    INTEREST OF THE CHILD?  SO IF YOU MAKE THE DETENTION DECISION

6    STANDING ALONE AND YOU SAY THAT THIS PERSON IS SUBJECT TO

7    DETENTION, NOW THEREFORE THE MINOR IS UNACCOMPANIED, IT SEEMS

8    LIKE SOMEWHERE IN THAT PROCESS THE MINOR'S BEST INTEREST HAS

9    BEEN LOST.  BECAUSE I DON'T THINK IT IS DISPUTED THAT IT IS IN

10   THE BEST INTEREST OF THE MINOR TO REMAIN WITH A PARENT OR

11   LEGAL GUARDIAN WHO IS FIT.

12        **MS. FABIAN:**  I WOULD SAY THAT IN SOME CASES WHERE

13   THE PARENT IS SUBJECT TO MANDATORY DETENTION -- I DON'T KNOW

14   IF I COULD PHRASE IT IN THE CONTEXT OF FITNESS, BUT I THINK

15   THAT PARENT IS THEN SUBJECT TO DETENTION, JUST LIKE A PARENT

16   WHO IS ARRESTED AND HAS TO GO INTO THE CRIMINAL JUSTICE

17   SYSTEM.

18        **THE COURT:**  BUT ISN'T THAT VERY DIFFERENT, BECAUSE

19   THERE THAT WOULD BE THE AGUILAR CASE WHERE A NUMBER OF

20   UNDOCUMENTED INDIVIDUALS WERE ARRESTED AT A FACTORY, THEIR

21   PLACE OF EMPLOYMENT; BUT THERE THEY ARE NOT WITH THE CHILD.

22   OSTENSIBLY THEY HAVE BEEN IN THE COUNTRY ILLEGALLY FOR QUITE

23   SOME TIME OR A PERIOD OF TIME, AND THEY ARE WORKING AND HERE

24   UNLAWFULLY.  THEY HAVE COMMITTED A CRIME, PERHAPS 1326, A 1325

25   VIOLATION, SO THEY ARE CLEARLY SUBJECT TO CRIMINAL

1    PROSECUTION.

2            AND IN THAT CONTEXT IT IS CLEAR THAT THE DUE PROCESS

3    CLAUSE IS NOT AN IMPINGEMENT FOR THE GOVERNMENT TO DETAIN THAT

4    PARENT AND KEEP HIM OR HER SEPARATE FROM THEIR CHILD.  THAT'S

5    NOT DISPUTED.  BUT THAT'S AN ENTIRELY DIFFERENT CONTEXT, ISN'T

6    IT?

7            **MS. FABIAN:**  I THINK IN MANY OF THESE CASES THE SAME

8    VIOLATION HAS OCCURRED, A 1325 OR A 1326.  SO THE ONLY

9    DIFFERENCE IS THAT IN THIS CASE THE PARENT HAS ESSENTIALLY

10   BROUGHT THE CHILD AND IS BEING APPREHENDED FOR THAT CRIME

11   WHILE ALSO TOGETHER WITH THE CHILD.

12           **THE COURT:**  BUT WHAT ABOUT THE REALITY WHICH IS THAT

13   WE HAVE AN ASYLUM STATUTE, SO AS A COUNTRY WE HAVE DETERMINED

14   BY LAW THAT WE ARE GOING TO PROVIDE ASYLUM FOR CERTAIN

15   QUALIFYING INDIVIDUALS.  AND THE ONLY WAY TO EFFECT THAT

16   PROCESS IS TO COME, FOR EXAMPLE AS MS. L. DID, TO THE PORT OF

17   ENTRY.  SO SHE IS HERE UNDOCUMENTED, BUT SHE IS HERE PURSUANT

18   TO A PROCESS THAT WE HAVE SET IN PLACE, SEEKING ASYLUM.

19   DOESN'T THAT CONTEXT INVITE A MORE ROBUST ANALYSIS OF

20   SUBSTANTIVE DUE PROCESS?

21           **MS. FABIAN:**  I THINK YOU STILL HAVE TO LOOK TO,

22   ESPECIALLY WHEN YOU ARE ASKING DOES IT SHOCK THE CONSCIENCE,

23   WHAT IS -- HOW DOES THE INA DEAL WITH THAT SITUATION.

24           SO IF YOU ARE LOOKING AT THE ACTIONS TAKEN BY CBP IN

25   MOST CASES, OR POSSIBLY BY ICE IN THOSE SITUATIONS, THE

MAY 4, 2018

1  QUESTION STILL IS ARE THEY ACTING WITHIN THE AUTHORITY THAT

2  THE INA HAS GIVEN TO THEM IN THOSE SITUATIONS.

3          SO I DON'T SEE HOW THAT CHANGES THE SUBSTANTIVE DUE

4  PROCESS ANALYSIS SO LONG AS THEY ARE STILL ACTING WITHIN THEIR

5  AUTHORITY UNDER THE STATUTES.

6          **THE COURT:**  AM I CORRECT IN ASSUMING THAT IN ORDER

7  TO SEEK ASYLUM, YOU CAN'T DO IT FROM OUTSIDE OF THE COUNTRY

8  YOU WOULD -- ARGUABLY THE BEST MANNER OF DOING THAT WOULD BE

9  TO COME TO THE PORT OF ENTRY.  EFFECTIVELY SURRENDER YOURSELF

10  WITH YOUR CHILD, IN THESE CIRCUMSTANCES, AND ASK FOR ASYLUM.

11          IS THERE ANY OTHER WAY TO DO IT FROM OUTSIDE OF THE

12  COUNTRY?

13          **MS. FABIAN:**  I BELIEVE THERE IS.  BUT DESPITE MY

14  JOB, I AM ACTUALLY NOT AN EXPERT IN THE IMMIGRATION LAW,

15  PORTIONS OF IT.  SO I DON'T WANT TO GIVE YOU A WRONG ANSWER.

16  I BELIEVE THERE IS, BUT I DON'T KNOW.

17          **THE COURT:**  THE VAST MAJORITY OF PEOPLE DO IT ONE OF

18  TWO WAYS:  THEY COME TO THE PORT OF ENTRY OR THEY TRY TO SNEAK

19  IN, GET CAUGHT, AND THEN LATER SEEK ASYLUM.

20          **MS. FABIAN:**  I THINK THAT IS CORRECT.  THAT IS THE

21  VAST MAJORITY.

22          **THE COURT:**  AS TO MS. C, SHE DID THE LATTER, SHE

23  TRIED TO SNEAK IN, GOT CAUGHT.  WAS CHARGED, CONVICTED, AND

24  SENTENCED.  SHE THEN DID HER TIME, IT WAS A MISDEMEANOR,

25  45-DAY SENTENCE.  IS THERE ANY PROCESS THAT HHS HAS OR DHS HAS

```
 1   WHERE AFTER A PERSON HAS SERVED THEIR TIME EFFORTS OR A
 2   PROCESS EXISTS TO EXPLORE THE LAWFUL OPTIONS OF REUNITING THE
 3   PARENT WITH THE CHILD?
 4            I READ A DECLARATION SOMEWHERE THAT THERE IS JUST A
 5   VACUUM.  THAT THESE PEOPLE LIKE MS. C. JUST FALL INTO A BLACK
 6   HOLE AND THERE IS NO RECOGNIZED PROCESS THAT THE GOVERNMENT
 7   HAS TO TRY TO REUNITE.  IT IS INCUMBENT UPON THE MS. C.'S OF
 8   THE PROPOSED CLASS TO INITIATE.  AM I MISAPPREHENDING THAT?
 9            MS. FABIAN:  I DON'T KNOW THE BLACK HOLE REFERENCE
10   THAT YOU ARE REFERRING TO.  I WOULDN'T DESCRIBE IT THAT WAY.
11   BUT I CAN DESCRIBE THE PROCESS.
12            AND SO FOR MS. C., FOR EXAMPLE, IF SHE WAS RELEASED
13   FROM CRIMINAL CUSTODY, ICE LIKELY HAD A DETAINER ON HER AND
14   WOULD HAVE PICKED HER UP FROM CRIMINAL CUSTODY INTO ICE
15   CUSTODY.  AND MAY THEN, AT THAT TIME, DEPENDING WHERE SHE WAS
16   IN HER REMOVAL PROCESS OR IN HER PROCEEDINGS -- IF YOU SAW
17   FROM OUR DECLARATIONS, AT SOME POINT IN THE PROCESS SHE WAS
18   FOUND TO HAVE CREDIBLE FEAR AND PLACED INTO PROCEEDINGS AND
19   THAT CHANGED THE AUTHORITY TO DETAIN HER AND ENTITLED HER TO A
20   BOND HEARING.  BUT UP TO THAT POINT SHE WAS SUBJECT TO
21   MANDATORY DETENTION.
22            THE COURT:  YES.
23            MS. FABIAN:  SO WHEN ICE PICKED HER UP I BELIEVE SHE
24   WAS STILL SUBJECT TO MANDATORY DETENTION.  SO ICE WOULD THEN
25   MAKE THE SAME PAROLE -- DISCRETIONARY PAROLE DETERMINATION AND
```

MAY 4, 2018

1   DETERMINE TO DETAIN HER.

2            AS LONG AS SHE IS SUBJECT TO DETENTION -- I AM NOT

3   SURE EXACTLY WHICH POINT YOUR HONOR IS ASKING ABOUT.  AS LONG

4   AS SHE IS SUBJECT TO DETENTION THERE IS NOT A PROCESS THAT

5   WOULD REUNITE THEM AT THAT TIME BECAUSE SHE IS IN ICE CUSTODY

6   AND REMAINS UNAVAILABLE.

7            **THE COURT:**  SHOULDN'T THERE BE -- IF THE BEST

8   INTEREST OF THE CHILD IS BEING EXAMINED, OR REQUIRED UNDER THE

9   TVPRA, SHOULDN'T IT BE, THEN, THAT AFTER A PERSON DOES THEIR

10  TIME, THEY HAVE BEEN RIGHTFULLY PUNISHED AND THEY HAVE DONE

11  THEIR TIME, THEY ARE NOW OUT OF CUSTODY AND THEY ARE IN ICE

12  DETENTION TO PURSUE IMMIGRATION AND ASYLUM; SHOULDN'T THERE

13  BE, IN ORDER TO EFFECT THE BEST INTEREST OF THE CHILD, SOME

14  MECHANISM FOR PEOPLE TO MAKE THE REQUEST TO REUNITE WITH THEIR

15  CHILD, AND SOME OBLIGATION ON THE PART OF THE GOVERNMENT TO

16  MAKE A DETERMINATION OF WHETHER THE PERSON IS A PARENT AND IS

17  FIT?

18            **MS. FABIAN:**  ARE YOU ASKING A MECHANISM TO REUNITE

19  IN FAMILY DETENTION, OR OUT OF DETENTION ENTIRELY?

20            **THE COURT:**  EITHER ONE.  THE WAY I UNDERSTAND THE

21  PROCESS -- THAT WAS MY REFERENCE TO THE BLACK HOLE -- IS THE

22  PERSON GETS OUT OF CUSTODY FOR THE CONVICTION THEY ARE

23  SERVING, THEY THEN GO INTO ICE DETENTION TO PURSUE IMMIGRATION

24  AND ASYLUM RELATED MATTERS, BUT THEIR CHILD IS SOMEWHERE ELSE,

25  WITH ORR IN SOME OTHER FACILITY.  AND THERE IS NO PROCEDURE

MAY 4, 2018

1   OR MECHANISM FOR THAT PARENT TO REUNITE WITH THEIR CHILD,

2   ABSENT HIRING LAWYERS OR PURSUING IT ON THEIR OWN.  IS THAT

3   CORRECT?

4          **MS. FABIAN:**  I THINK THAT IS CORRECT IN THE SENSE

5   THAT THAT INDIVIDUAL IS REALLY IN THE SAME PLACE AS THE PERSON

6   YOU DESCRIBED WHO IS APPREHENDED AT A JOB-SITE AND TAKEN INTO

7   ICE CUSTODY.

8          AT THAT POINT THE SEPARATION HAS OCCURRED BECAUSE OF

9   THE PROSECUTION.  AND THAT PERSON THEN, WHEN RELEASED FROM

10  CRIMINAL CUSTODY, IS BEING TAKEN INTO ICE CUSTODY.  AT THAT

11  POINT, AGAIN, THE SEPARATION HAS ALREADY OCCURRED.  THE MINOR

12  IS IN ORR CUSTODY.  THE ONLY RELEASE FROM ORR CUSTODY IS

13  SUBJECT TO THE TVPRA, SO SUBJECT TO A FINDING OF A SUITABLE

14  CUSTODIAN.  AND UNTIL -- WHILE THAT INDIVIDUAL REMAINS IN

15  CUSTODY THEY ARE NOT GOING TO BE A SUITABLE CUSTODIAN, NOR IS

16  THERE THE ABILITY TO DETAIN THEM TOGETHER BECAUSE THEY ARE

17  THEN IN ICE CUSTODY.

18         **THE COURT:**  OKAY.

19         **MS. FABIAN:**  IT WOULD GO -- THE SUGGESTION HAS BEEN

20  MADE AS IT WAS -- I MEAN, I GUESS I WOULD FIRST NOTE THAT I

21  THINK, AS YOUR HONOR'S QUESTIONS SUGGEST, THESE ALONE ARE TWO

22  VERY DIFFERENT SCENARIOS THAT ARE POSITED THAT SORT OF

23  UNDERMINE THE CLASS TREATMENT OF THIS ISSUE.

24         BUT, IN ADDITION, I THINK TO THE EXTENT THE

25  SUGGESTION HAS BEEN MADE THAT THE ACROSS-THE-BOARD SOLUTION TO

```
1    THAT IS DETENTION IN AN ICE FAMILY RESIDENTIAL CENTER IN ALL
2    SETTINGS, THE NUMBERS SHOW THAT THAT IS NOT A FEASIBLE
3    SOLUTION.  AND IT IS -- THERE ARE OTHER SCENARIOS IN ADDITION
4    THAT HAVE TO BE CONSIDERED.  YOU HAVE -- THESE ARE TWO
5    EXAMPLES.
6            PLAINTIFFS FILED SOME DECLARATIONS WITH A REPLY
7    BRIEF, WHICH WE OBJECT TO SOME EXTENT TO THE TIMING OF THE
8    FILING OF THOSE.  WE ARE NOT -- IF THE COURT INTENDS TO
9    CONSIDER THEM WE WOULD ASK FOR THE OPPORTUNITY TO DO AN
10   EVIDENTIARY RESPONSE TO THOSE.
11           BUT WHAT I CAN PROFFER A LITTLE BIT IS THAT THOSE --
12   ONE OF THEM WE WERE UNABLE TO LOCATE THE INDIVIDUAL IN THE
13   TIME FRAME DISCUSSED IN THE DECLARATION, SO WE ARE UNABLE TO
14   DETERMINE IF THAT ONE IS ACCURATE.
15           BUT IN OTHER SCENARIOS, THOSE DECLARATIONS DO RAISE
16   SOME OTHER SITUATIONS THAT ALSO GIVE RISE TO SEPARATION AND
17   OTHER DIFFERENCES BETWEEN THE SCENARIOS THAT MAY BE IN PLAY
18   HERE.
19           AND I THINK ALL OF THOSE, THEN -- FOR EXAMPLE, IN
20   ONE CASE YOU HAD A MOTHER WHO HAD A SIGNIFICANT CRIMINAL
21   HISTORY, SO ICE WAS UNABLE TO PLACE HER IN THE FAMILY
22   RESIDENTIAL CENTER BECAUSE -- AND I WOULD NOTE, FAMILY
23   RESIDENTIAL CENTERS ARE A VERY OPEN SETTING.  THERE IS SORT OF
24   PODS.  FAMILIES ARE HOUSED TOGETHER.  THERE IS SCHOOLING FOR
25   THE CHILDREN.  THERE IS FREE MOVEMENT.  IT IS NOT A DETENTIVE
```

MAY 4, 2018

1    SETTING.

2            **THE COURT:**  THAT FACTOR, WOULDN'T THAT GO TO

3    FITNESS, ARGUABLY, WHETHER THE PARENT IS FIT FOR HAVING CARE

4    AND CUSTODY OF THAT CHILD, IN ADDITION TO OTHERS, OTHER

5    CHILDREN THAT MAY BE IN THAT JOINT HOUSING ENVIRONMENT.  SO ON

6    A FIFTH AMENDMENT ANALYSIS, AT LEAST IMPLICITLY, THE

7    GOVERNMENT WOULD BE MAKING THAT DETERMINATION THAT THAT PARENT

8    IS NOT APPROPRIATE FOR JOINT HOUSING.

9            **MS. FABIAN:**  I THINK IT HAS -- I WOULDN'T RELATE THE

10   TWO DETERMINATIONS.  I THINK -- I WOULD NOTE THAT A LOT OF

11   TIMES THESE DECISIONS ARE BEING MADE DURING THE RELATIVELY

12   SHORT TIME PERIOD AFTER SOMEONE COMES INTO CUSTODY BEFORE THEY

13   ARE PLACED IN A LONG-TERM SITUATION.

14            THERE IS A STRONG INTEREST TO NOT PROLONG THE TIME

15   IN THAT ORIGINAL APPREHENSION SETTING, IT IS MORE A -- IN A

16   CRIMINAL SETTING I GUESS IT IS SORT OF THE -- YOU ARE STILL IN

17   THE STATION.  YOU ARE BEING PROCESSED, DECISIONS ARE BEING

18   MADE.  BUT WE DON'T -- THE GOAL IS NOT TO PROLONG THAT PROCESS

19   BUT TO GET FOLKS TO THE LOCATION WHERE THEY CAN BE HOUSED

20   LONG-TERM IF THAT IS WHAT IS GOING TO HAPPEN.

21            **THE COURT:**  BUT IF I MIGHT, LET ME INQUIRE ABOUT THE

22   FACTS RELATING TO MS. L.

23            AS I UNDERSTAND IT, WHEN SHE ARRIVED WITH HER CHILD

24   SHE INITIALLY WAS HOUSED TOGETHER IN A MOTEL OR SOME LOCATION

25   FOR A PERIOD OF FOUR DAYS.  AND THEN A DETERMINATION WAS MADE

MAY 4, 2018

1   TO DETAIN HER, AT WHICH POINT THE MINOR BECAME UNACCOMPANIED

2   AND WAS SUBJECT TO ORR DETENTION AND PLACED IN CHICAGO.

3           IS THAT CORRECT?

4           **MS. FABIAN:**  MY UNDERSTANDING.  AND THAT IS THE --

5   AT THE PORT OF ENTRY IN SAN YSIDRO THEY SOMETIMES USE THE

6   HOTEL -- OR THEY HAVE A LITTLE BIT MORE ABILITY TO HAVE

7   SLIGHTLY LONGER TERM.  THAT IS STILL NOT LONG-TERM DETENTION.

8           **THE COURT:**  YES.

9           **MS. FABIAN:**  BUT UNLIKE A LOT OF BORDER PATROL

10  STATIONS WHERE THEY ARE REALLY NOT DESIGNED FOR LONGER TERM

11  DETENTION THEY DO HAVE THE ABILITY TO HOLD A LITTLE LONGER TO

12  DEAL WITH THEIR HIGHER VOLUMES.

13          **THE COURT:**  IN THAT CASE THERE WERE QUESTIONS ABOUT

14  WHETHER SHE WAS THE BIOLOGICAL PARENT.  THE GOVERNMENT CITES

15  TO A LACK OF DOCUMENTATION OR INSUFFICIENT DOCUMENTATION FOR

16  IT TO MAKE A PRINCIPLED DETERMINATION AS TO WHETHER SHE WAS

17  THE PARENT.

18          THERE WAS THE DNA OPTION.  AND AS I UNDERSTAND IT

19  THE DNA OPTION IS, OR CAN BE, QUICK, EASY, AND RELATIVELY

20  INEXPENSIVE.  DO YOU DISPUTE THAT?

21          **MS. FABIAN:**  I DON'T HAVE INFORMATION SPECIFICALLY

22  ON THE EXPENSE OR WHETHER -- AS YOU ARE AWARE, WHEN THE

23  GOVERNMENT DOES SOMETHING IT CAN SOMETIMES COST MORE.  SO I

24  DON'T HAVE INFORMATION ON THE ABILITY TO DO THAT IN ANY SORT

25  OF -- WHETHER THAT'S A FEASIBLE OPTION.

MAY 4, 2018

1          **THE COURT:**  YES.

2          **MS. FABIAN:**  WHAT I WILL SAY IS MY UNDERSTANDING IS

3    THAT WHILE IN ANY INDIVIDUAL CASE YOU COULD LOOK AND SAY DNA

4    TESTING COULD HAVE QUICKLY SOLVED THE PROBLEM HERE, DHS HAS

5    NOT INSTITUTED THAT ON ANY SORT OF BROADER SCALE; IN PART

6    BECAUSE OF PRIVACY CONCERNS AND ISSUES WITH SORT OF

7    INSTITUTING THAT AT THE BORDER, AT THE POINT OF APPREHENSION.

8          **THE COURT:**  ALTHOUGH THAT ISSUE AROSE, I THINK THE

9    GOVERNMENT IS THE ONE THAT BROACHED THAT SUBJECT, IF I

10   REMEMBER THE CONTEXT.  SO I ORDERED IT, AND IT WAS DONE.

11         I ASKED MR. BETTWY WHETHER THE COURT WAS ABOUT TO DO

12   SOMETHING THAT WOULD CAUSE ALL KINDS OF PROBLEMS, AND THE

13   INDICATION WAS THAT IT WAS A PRETTY SEAMLESS, EASY THING TO

14   DO.  AND WITHIN A MATTER OF A FEW DAYS THE RESULT WAS HAD AND

15   IT WAS DETERMINED THAT MS. L. WAS THE MOTHER.

16         SO THE QUESTION IS, IF WE ASSUME THAT DNA TESTING

17   CAN BE AN AVAILABLE TOOL FOR THE GOVERNMENT IF THE GOVERNMENT

18   DOESN'T HAVE SUFFICIENT DOCUMENTATION, PASSPORT OR OTHERWISE,

19   FOR IT TO DETERMINE THAT THIS PERSON IS THE PARENT OR LEGAL

20   GUARDIAN; BEFORE SEPARATING, THAT IS MAKING THE PARENT

21   DETAINED AND THEN RENDERING THE CHILD UNACCOMPANIED, BEFORE

22   DOING THAT SHOULDN'T IT TAKE THE ONE EXTRA STEP AND DO A DNA

23   TEST, IF THAT IS REQUESTED?

24         **MS. FABIAN:**  MY UNDERSTANDING IS WHEN THE DNA TEST

25   WAS CONDUCTED IN THIS CASE IT WAS CONDUCTED WHILE BOTH

1    INDIVIDUALS HAD BEEN -- WERE THEN IN LONGER TERM FACILITIES

2    WHERE THERE WAS -- YOU HAD MEDICAL PROFESSIONALS AVAILABLE FOR

3    THE PARENT.  AND ORR DOES USE DNA TESTING BECAUSE ORR'S

4    MANDATE IS LOCATING SUITABLE CUSTODIANS AND IN SOME CASES

5    ENSURING THAT A PARENT OR A FAMILY MEMBER IS WHO THEY SAY THEY

6    ARE.

7         IN TERMS OF IMPLEMENTING THAT ON A BROADER SCALE, I

8    THINK IT WOULD BE -- IT MAY, AT TIMES, ANSWER THE QUESTION FOR

9    CERTAIN INDIVIDUALS.  BUT, AS YOU SAID, PARENT OR LEGAL

10   GUARDIAN, IT IS NOT ALWAYS GOING TO ANSWER THE QUESTION, FOR

11   EXAMPLE FOR A LEGAL GUARDIAN OR AN ADOPTIVE PARENT OR A PARENT

12   WHO HAS BEEN -- WHO HAS LOST CUSTODY AND IS BRINGING THE CHILD

13   INTO THE UNITED STATES FOR PURPOSES OF ESCAPING.

14        **THE COURT:**  IN THAT EVENT COULDN'T THE GOVERNMENT

15   THEN SAY, CONSISTENT WITH DUE PROCESS, THERE IS NOT SUFFICIENT

16   DOCUMENTATION.  WE HAVE DONE A DNA TEST, YOU ARE NOT THE

17   PARENT.  THERE IS NOT SUFFICIENT EVIDENCE TO DEMONSTRATE THAT

18   THIS PERSON IS A PARENT OR A LEGAL GUARDIAN, AND THEREFORE WE

19   ARE GOING TO DETAIN, WHICH WILL EFFECT THE SEPARATION.

20        BUT WOULDN'T THAT BE MUCH MORE CONSISTENT WITH DUE

21   PROCESS?

22        **MS. FABIAN:**  I THINK IT WOULD -- IT REALLY HAS TO BE

23   LOOKED AT ON A CASE-BY-CASE BASIS.

24        I THINK, YOU KNOW, YOU ARE DESCRIBING POTENTIALLY A

25   SCENARIO THAT WOULD BE EFFECTIVE IN A SINGLE SITUATION;

MAY 4, 2018

1   WHETHER IT IS NECESSARY FOR SUBSTANTIVE DUE PROCESS I THINK IS

2   A DIFFERENT QUESTION.

3          THE ABSENCE OF DNA TESTING, GIVEN ITS -- GIVEN THAT

4   IT IS NOT GOING TO SOLVE THE QUESTION OR ANSWER THE QUESTION

5   IN ALL CASES.  AND IN LIGHT OF THIS SORT OF RELATIVELY SHORT

6   TIME FRAME WE ARE LOOKING AT IN WHICH THESE DECISIONS ARE

7   MADE, I THINK WHAT -- IT MAY SOLVE THE PROBLEM OR ANSWER SOME

8   QUESTIONS IN A GIVEN SITUATION BUT I DON'T THINK THAT GIVES

9   RISE TO THE FINDING THAT NOT PROVIDING A DNA TEST WOULD BE

10  VIOLATIVE OF SUBSTANTIVE DUE PROCESS.

11          **THE COURT:**  ALL RIGHT.

12          PERHAPS I CAN ASK A FEW QUESTIONS OF MR. GELERNT.

13          **MS. FABIAN:**  I WILL TAKE A SIP OF WATER, THEN.

14  THANK YOU.

15          **THE COURT:**  THE REQUEST THAT IS BEING MADE IS A VERY

16  BROAD ONE, AND THAT IS ORDER THE GOVERNMENT TO EITHER DETAIN

17  TOGETHER OR TO RELEASE, PAROLE, SO THE FAMILY CAN BE REUNITED.

18          THERE IS A LOT OF AUTHORITY, STATUTORY AND CASE LAW.

19  I THINK THERE IS A NINTH CIRCUIT CASE THAT THE GOVERNMENT

20  CITED, THE REFUGEE CASE FROM THE 1980'S, WHICH INDICATES THAT

21  FOR PRUDENTIAL REASONS THE COURT SHOULDN'T BE MICROMANAGING

22  DHS AND THE ATTORNEY GENERAL AND HIS CUSTODIAL DETERMINATIONS

23  IF THAT IS PECULIARLY WITHIN THE PROVINCE OF THE GOVERNMENT TO

24  MAKE THESE NUANCED DETERMINATIONS AS TO WHETHER OR NOT TO

25  DETAIN, WHETHER OR NOT TO PAROLE, WHETHER OR NOT TO HOUSE

MAY 4, 2018

TOGETHER.  THERE ARE SO MANY DECISIONS THAT HAVE TO BE MADE
AND EACH ONE IS INDIVIDUAL, HOW CAN THE COURT ISSUE SUCH A
BLANKET OVERARCHING ORDER TELLING THE ATTORNEY GENERAL, EITHER
RELEASE OR DETAIN TOGETHER?

        **MR. GELERNT:**  RIGHT, YOUR HONOR.  SO LET ME JUST BE
CLEAR, AND I APOLOGIZE IF OUR BRIEFS WEREN'T CLEAR ON THIS.

        WE WOULD LIKE THE GOVERNMENT TO PAROLE THESE MOTHERS
AND CHILDREN BECAUSE WE DON'T THINK THESE MOTHERS WITH
FOUR-YEAR-OLD CHILDREN ARE A DANGER, AND WE BELIEVE THAT WITH
ANKLE BRACELETS OR SUPERVISION THEY ARE NOT A FLIGHT RISK.
BUT WE ARE NOT ASKING, BY ANY MEANS, FOR THIS COURT TO ORDER
THEIR RELEASE.  WE ARE SIMPLY SAYING THAT THE GOVERNMENT HAS
THAT CHOICE BUT IF THEY DON'T TAKE THAT CHOICE THEY NEED TO
DETAIN TOGETHER.

        AND I WANT TO JUST FOCUS ON YOUR QUESTION TO THE
GOVERNMENT, BECAUSE I REALLY THINK IT HITS THE CRUX OF THIS.

        THERE MAY VERY WELL BE REASONS IN INDIVIDUAL CASES
WHY SEPARATION IS RIGHT.  THE GOVERNMENT BROUGHT UP THE CASE
OF THE WOMAN WHO HAS MULTIPLE CONVICTIONS.  WE ARE NOT AWARE
OF WHO THE GOVERNMENT IS TALKING ABOUT, WE DON'T BELIEVE ANY
OF OUR DECLARANTS FIT THAT CATEGORY.  BUT IF THE GOVERNMENT
WERE TO MAKE THAT DETERMINATION THAT THIS PARENT MAY BE A
DANGER TO HER CHILD, THAT FITS WITHIN OUR PARADIGM, IT FITS
WITHIN LONGSTANDING DUE PROCESS PARADIGMS, AND IT FITS EXACTLY
WITH THE WAY THIS COURT JUST PHRASED IT.

MAY 4, 2018

1          WE ARE SIMPLY SAYING THAT IF THERE IS NOT A REASON

2   TO SEPARATE, NOT TO KEEP THESE KIDS IN DETENTION, VIOLATES DUE

3   PROCESS.  WE ALSO THINK IT VIOLATES THE TVPRA BECAUSE I DON'T

4   THINK ANYBODY COULD REALLY SAY IT IS IN THE BEST INTEREST OF A

5   CHILD, FOR AN 18-MONTH-OLD, A FOUR-YEAR-OLD, A SIX-YEAR-OLD,

6   TO COME TO THIS COUNTRY -- THEY ARE ALREADY TRAUMATIZED -- AND

7   TO BE SENT AWAY FOR MONTHS.

8          **THE COURT:**  LET ME, IF I MIGHT, INQUIRE.

9          THERE WAS A DECLARATION FROM A GENTLEMAN, I THINK IN

10  TEXAS, WHO HAS BEEN SEPARATED FROM HIS SON, AND I HAVE

11  FORGOTTEN THE AGE OF THE SON.  AND THE DECLARATION INDICATES

12  THAT HE IS THE DAD, THAT THERE HAS BEEN NO REPRESENTATION TO

13  HIM THAT HE IS UNFIT FOR ANY REASON, BUT THERE IS REFERENCE TO

14  A LACK OF HOUSING.

15         SO COULDN'T THE GOVERNMENT COMPLY WITH DUE PROCESS,

16  UNDER YOUR ARGUMENT, AND SEPARATE OR KEEP THE TWO SEPARATED

17  BECAUSE EVEN THOUGH HE IS THE PARENT, EVEN THOUGH HE IS FIT,

18  THEY DON'T HAVE ACCOMMODATION TO PLACE THEM TOGETHER, AND THEY

19  MIGHT HAVE GOOD AND PRINCIPLED REASONS FOR NOT PAROLING HIM.

20         **MR. GELERNT:**  RIGHT.  YOUR HONOR, I AM GLAD YOU

21  ASKED THAT BECAUSE I THINK IT ALSO GOES TO A QUESTION.

22         WE ARE HERE ON THESE FACTS.  WE ARE NOT ASKING YOU

23  TO RULE WHETHER IF THE GOVERNMENT REALLY DOES NOT HAVE BED

24  SPACE IS THAT A LEGITIMATE REASON UNDER THE SUBSTANTIVE DUE

25  PROCESS COMPONENT OF THE FIFTH AMENDMENT TO KEEP THESE

1  FAMILIES SEPARATE.

2         RIGHT NOW THERE IS BED SPACE, THERE HAS ALWAYS BEEN

3  BED SPACE.  AND I THINK THAT IS WHY YOU DIDN'T SEE AN

4  AFFIDAVIT FROM THE GOVERNMENT SAYING, WE DON'T HAVE BED SPACE.

5         WE DON'T KNOW ABOUT IN THIS PARTICULAR SITUATION

6  WITH THIS FATHER.  IF THE GOVERNMENT WERE TO COME IN AND SAY,

7  FOR THIS PARTICULAR FATHER WE DIDN'T HAVE BED SPACE, I THINK

8  WE WOULD HAVE TO COME BACK AND BOTH SIDES WOULD HAVE TO

9  PRESENT ARGUMENTS ABOUT WHEN FISCAL CONSTRAINTS CAN ACTUALLY

10  BE A REASON FOR THE GOVERNMENT TO ENGAGE IN SOME TYPE OF

11  ACTION THAT WOULD OTHERWISE VIOLATE DUE PROCESS.

12         **THE COURT:**  ISN'T THAT A REASON, THOUGH, FOR THE

13  COURT NOT TO ISSUE THE INJUNCTION THAT YOU REQUESTED?  BECAUSE

14  IF I WERE TO ISSUE THAT INJUNCTION THE GOVERNMENT WOULD HAVE

15  TO EITHER PAROLE OR DETAIN TOGETHER.  BUT THE GOVERNMENT IS IN

16  A UNIQUE POSITION TO KNOW WHAT THE SPECIFIC FACTS ARE TO EACH

17  INDIVIDUAL, AND TO MAKE A PRINCIPLED DETERMINATION AS TO WHY

18  THAT PERSON SHOULDN'T BE PAROLED OR SHOULDN'T BE HOUSED

19  TOGETHER.

20         **MR. GELERNT:**  YOUR HONOR, WE BELIEVE THAT YOU CAN

21  FASHION AN ORDER THAT SIMPLY SAYS THE GOVERNMENT MUST HAVE A

22  REASON, WHICH WE BELIEVE IS A DANGER TO THE CHILD OR

23  UNFITNESS.

24         NOW, IF THE GOVERNMENT WANTS TO COME IN WITH AN

25  AFFIDAVIT SAYING, WE NO LONGER HAVE BED SPACE, WE ARE NOT

```
1   AWARE OF WHY THEY COULD POSSIBLY HAVE NOT HAD BED SPACE.
2          I THINK, YOU KNOW, YOUR HONOR COULD LOOK AT THAT AND
3   WHETHER HE WANTS TO PUT THAT IN THE INJUNCTION, WE ARE
4   CERTAINLY HAPPY TO FASHION AN INJUNCTION.
5          BUT ULTIMATELY I THINK YOUR QUESTIONS GO TO THE
6   HEART OF IT.  THE GOVERNMENT IS NOT REALLY MAKING A
7   DETERMINATION BASED ON ANYTHING.  I MEAN, I HAVE A DECLARATION
8   HERE FROM ANOTHER WOMAN, MS. G.  SHE CAME WITH HER
9   FOUR-YEAR-OLD AND HER SIX-YEAR-OLD BLIND DAUGHTER.  SHE WAS
10  NOT GIVEN A REASON, SHE WAS NOT PROSECUTED, SHE HAD DOCUMENTS,
11  AND YET SHE WAS SEPARATED.
12         NOW, THERE IS NO PROCESS THAT IS GOING ON -- YOUR
13  HONOR'S QUESTION WENT EXACTLY TO THE HEART OF IT.  THERE HAS
14  TO BE A DETERMINATION ABOUT THE INTEREST.
15         SO I GET YOUR POINT THAT HOW DO WE FASHION AN
16  INJUNCTION THAT ALLOWS THE GOVERNMENT TO TAKE THAT INTO
17  ACCOUNT, BUT I DON'T REALLY THINK THERE IS ACTUALLY TOO MANY
18  FACTORS OTHER THAN HARM TO THE CHILD OR SPACE.
19         AND IF THE GOVERNMENT WOULD COME IN WITH AN ARGUMENT
20  THAT -- WITH AN AFFIDAVIT SAYING THERE IS NO SPACE, I THINK
21  YOUR HONOR WOULD HAVE TO FASHION AN INJUNCTION THAT SAYS -- OR
22  ALLOW FURTHER BRIEFING ON THAT QUESTION OF WHETHER THE
23  LIMITATION ON SPACE MEANS YOU HAVE TO PAROLE OR YOU CAN
24  SEPARATE.  BUT RIGHT NOW --
25              **THE COURT:**  WHAT ABOUT THE PROCESS THAT MIGHT BE
```

MAY 4, 2018

1    REQUIRED.  WOULDN'T IT BE SUFFICIENT, RATHER THAN ISSUING

2    ORDERS AND EDICTS AS TO HOW THE ATTORNEY GENERAL SHOULD MANAGE

3    THESE DETENTION SITUATIONS, ISN'T IT MORE CONSISTENT WITH

4    CONSTITUTIONAL LAW, AND DUE PROCESS SPECIFICALLY, IF THE COURT

5    WERE TO FIND THAT THE SUBSTANTIVE DUE PROCESS APPLIES IN THIS

6    SITUATION FOR THESE TWO INDIVIDUALS.  THAT THE GOVERNMENT,

7    CONSISTENT WITH DUE PROCESS, HAS TO MAKE DETERMINATIONS

8    RELATED TO FITNESS AND PARENTAGE OR LEGAL CUSTODIANSHIP, BUT

9    NOT REQUIRE ANYTHING MORE SPECIFIC.  IN OTHER WORDS, WHAT

10   AUTHORIZES THE COURT TO MAKE THE GOVERNMENT HAVE A HEARING, TO

11   MAKE FINDINGS, TO TELL THE DETAINEES WHY THEY ARE DOING

12   CERTAIN THINGS; DOES THE GOVERNMENT HAVE TO DO ANY OF THAT?

13           **MR. GELERNT:**  I THINK THEY DO UNDER SUBSTANTIVE DUE

14   PROCESS, YOUR HONOR.  AND I THINK, YOU KNOW, THAT HAS BEEN THE

15   LAW FOR A LONG TIME.  WHEN SOMEONE -- WHEN THE GOVERNMENT

16   TRIES TO TAKE A CHILD AWAY, ESPECIALLY A CHILD OF A TENDER

17   AGE, FROM THEIR PARENT, THEY HAVE TO HAVE A REASON.

18           **THE COURT:**  THAT IS A CPS TYPE SITUATION.

19           **MR. GELERNT:**  RIGHT, YOUR HONOR.  AS YOU POINTED

20   OUT, THIS IS A UNIQUE SITUATION.  BUT I THINK -- WE ABSOLUTELY

21   AGREE THE START WOULD BE FOR YOU TO SAY, LOOK, THE SUBSTANTIVE

22   DUE PROCESS CLAUSE APPLIES AND THE GOVERNMENT MUST MAKE A

23   DETERMINATION.

24           BUT EVEN IF THAT IS AS FAR AS THE COURT WAS GOING TO

25   GO WE WOULD NEED THE COURT, I THINK, UNDER SUBSTANTIVE DUE

MAY 4, 2018

1    PROCESS TO RULE OUT CERTAIN REASONS WHY THE GOVERNMENT COULD

2    NOT ENGAGE IN THAT SEPARATION.

3            FIRST AND FOREMOST IT CAN'T BE DETERRENCE.  THAT IS

4    ABSOLUTELY -- AND I THINK YOUR HONOR POINTED THAT OUT, THAT

5    THAT CANNOT BE A LEGITIMATE REASON.

6            THE MERE FACT THAT SOMEONE WAS PROSECUTED, WELL, SHE

7    DID HER TIME, WHY NOT REUNIFY THEM NOW.  THE GOVERNMENT IS

8    SIMPLY ASSERTING, WELL, SHE WAS PROSECUTED ONCE.

9            BUT WHAT DOES THAT HAVE TO DO WITH THE FACT THAT

10   SHE -- FOR SIX MONTHS SHE HAS BEEN SEPARATED FROM HER YOUNG

11   CHILD.

12           SO I DO THINK WHEN YOU ARE TALKING ABOUT TAKING AWAY

13   A CHILD THE COURT ABSOLUTELY HAS THE AUTHORITY TO SAY THE

14   PRACTICE BY WHICH YOU ARE DOING IT IS UNLAWFUL, THIS IS THE

15   ONLY WAY YOU HAVE TO MAKE A DETERMINATION THAT TAKES INTO

16   ACCOUNT THE BEST INTEREST OF A CHILD.

17           I THINK THAT IT WOULD BE FAIRLY STANDARD WITHIN THIS

18   COURT'S POWER TO SAY, LOOK, THE GOVERNMENT CANNOT SEPARATE,

19   ABSENT A DETERMINATION THAT IT IS NOT IN THE BEST INTEREST OF

20   A CHILD.

21           AND WHEN YOU HAVE LITTLE KIDS BEING SEPARATED, 18

22   MONTHS OLD, AND THEY ARE SITTING THERE SCREAMING AND CRYING,

23   PLEASE DON'T LET ME BE TAKEN AWAY, I THINK SOMETHING NEEDS TO

24   BE DONE NATIONALLY BECAUSE THERE ARE 700 LITTLE KIDS SITTING

25   THERE BY THEMSELVES WITHOUT THEIR PARENTS.  THEY ARE

```
 1   TRAUMATIZED.  THE DECLARATIONS TALK ABOUT HOW THESE LITTLE
 2   KIDS ARE BEING TAKEN AWAY CRYING AND SCREAMING.  THEY ARE JUST
 3   LITTLE KIDS.
 4           AND I THINK -- YOUR HONOR, I UNDERSTAND THE COURT'S
 5   HESITATION TO WANT TO GO TOO FAR, BUT THIS IS ONE OF THOSE
 6   SITUATIONS WHERE WE REALLY NEED THIS COURT TO ACT TO HELP
 7   THESE CHILDREN.  THEY ARE ALREADY TRAUMATIZED FROM LEAVING
 8   THEIR HOME COUNTRIES IN A MATTER OF MINUTES, FLEEING FOR THEIR
 9   LIFE.  THEY GET HERE AND THEN THEY HEAR THEY ARE GOING TO BE
10   TAKEN AWAY FROM THEIR MOTHER OR FATHER.
11           THESE AFFIDAVITS, YOUR HONOR, ARE UNBEARABLE.  AND I
12   KNOW YOUR HONOR GETS THE EMOTIONAL ASPECT.  AND, YOU KNOW,
13   LIKE THE AMERICAN ACADEMY OF PEDIATRICS HAVE SAID, THE
14   PSYCHOLOGICAL STRESS, ANXIETY, DEPRESSION ASSOCIATED WITH
15   SEPARATION FROM A PARENT WOULD FOLLOW THE CHILDREN WELL AFTER
16   THE IMMEDIATE PERIOD OF SEPARATION.
17           THEN ONE OF THE DOCTORS GOES ON TO SAY, IN THE O.
18   DECLARATION AT PARAGRAPH 5, CHILDREN REMAIN IN A CONSTANT
19   STATE OF FEAR AND WORRY REGARDING THE WELL-BEING OF THEIR
20   PARENT WHICH CAN AFFECT THEIR CONCENTRATION, SLEEP, OVERALL
21   FUNCTIONING.
22           I MEAN, THESE ARE -- THIS IS JUST -- WHAT I HEAR
23   FROM THE GOVERNMENT IS THERE COULD POTENTIALLY BE A REASON TO
24   SEPARATE THEM; NOT LET'S FIGURE OUT HOW NOT TO SEPARATE.
25           SO YOUR HONOR BROUGHT UP MS. L.'S CASE.  FOUR MONTHS
```

MAY 4, 2018

1    WENT BY, WE HAD TO FILE A LAWSUIT.  AS THE GUGGENHEIM

2    DECLARATION POINTS OUT -- HE IS THE LEADING CHILD EXPERT IN

3    THE COUNTRY.  THERE ARE SO MANY WAYS TO VERIFY PARENTAGE.  A

4    LITTLE GIRL WHO IS SCREAMING, PLEASE DON'T TAKE ME AWAY FROM

5    MY MOMMIE, THEY DIDN'T NEED A DNA TEST.  BUT OF COURSE THEY

6    COULD HAVE DONE IT IN A MATTER OF HOURS, AS THE GUGGENHEIM

7    DECLARATION POINTS OUT.

8           NONE OF THESE PEOPLE ARE BEING TOLD.  THEY EVEN HAVE

9    BIRTH CERTIFICATES, AND THE GOVERNMENT IS SIMPLY SAYING, WELL,

10   WE DON'T BELIEVE YOU.

11          SO THE SORT OF PRESUMPTION THAT, LET'S DO WHAT IS

12   BEST FOR THE CHILD, IS REALLY NOT IN PLAY HERE.

13          AND, YOUR HONOR, I THINK THAT YOUR HONOR CAN FASHION

14   AN INJUNCTION.  WE ARE NOT SAYING THE GOVERNMENT HAS TO

15   RELEASE.  WE ARE NOT SAYING IF THE PARENT GENERALLY IS A

16   DANGER TO THE CHILD THEY HAVE TO BE, WE ARE NOT SAYING THAT WE

17   WOULDN'T HAVE TO COME BACK AND HAVE ADDITIONAL ARGUMENTS IF

18   THERE IS NOT BED SPACE; BUT WE ARE SAYING THAT WHERE THERE IS

19   NO REASON WHATSOEVER TO KEEP THEM APART, YOU JUST CAN'T DO

20   THIS TO THESE LITTLE CHILDREN.

21          **THE COURT:**  TURNING TO THE FACTS OF MS. C., BY

22   ANALOGY YOU COULD LOOK TO THE AGUILAR CASE.

23          **MR. GELERNT:**  RIGHT.

24          **THE COURT:**  WHERE MS. C. COMMITTED A CRIME, SHE WAS

25   RIGHTFULLY PUNISHED.  SHE DID HER TIME AND THEN SHE GOES TO

MAY 4, 2018

1    ICE DETENTION, SEEKS ASYLUM.

2            THE AGUILAR GROUP OF IMMIGRANTS WERE ARRESTED, I

3    THINK MANY OF THEM WERE CHARGED, CONVICTED, DID TIME AND THEN

4    PUT INTO IMMIGRATION PROCEEDINGS FOR REMOVAL.

5            DO YOU ARGUE THAT THAT GROUP OF AGUILAR INDIVIDUALS

6    WOULD ALSO HAVE THIS RIGHT TO BE REUNITED OR HAVE SOME

7    MECHANISM?

8            **MR. GELERNT:**  RIGHT.  YOUR HONOR, WE DON'T IN THIS

9    CASE.  WE THINK THAT WOULD PROBABLY PRESENT A MUCH, MUCH

10   HARDER CASE BECAUSE THE CHILD HAS BEEN AT LIBERTY AND YOU

11   WOULD BE SAYING, LET'S TAKE THE CHILD.

12           JUST AS A -- SORT OF AS AN ASIDE SO I DON'T FORGET.

13   THE GOVERNMENT IS SUGGESTING THE CHILD IS BEING RELEASED, LIKE

14   MS. L.'S CHILD WAS RELEASED.  SHE WASN'T RELEASED, SHE WAS PUT

15   IN A FACILITY IN CHICAGO.

16           THAT IS A HARDER CASE, YOUR HONOR.  IT IS ONE I

17   DON'T THINK THIS COURT NEEDS TO GRAPPLE WITH BECAUSE IT IS NOT

18   A PARENT AND CHILD BEING DETAINED TOGETHER, COMING TOGETHER.

19   SO I THINK IT WOULD PRESENT MORE ANALOGOUS TO A PRETRIAL

20   CRIMINAL CASE.

21           THE OTHER THING I WOULD NOTE ABOUT AGUILAR IS

22   THAT -- I THINK A LOT OF PEOPLE MISS IS THAT AT PAGE 5 OF

23   AGUILAR IT NOTED THAT MASSACHUSETTS NO LONGER HAD BED SPACE.

24   SO I DON'T WANT TO SAY THAT WE ACKNOWLEDGE THAT THE LACK OF

25   BED SPACE WOULD BE A SUFFICIENT REASON.  I JUST THINK IT

MAY 4, 2018

```
 1   PRESENTS A CASE DOWN THE ROAD, POTENTIALLY.  YOU KNOW, IT
 2   WOULD DEPEND A LITTLE BIT ON WHETHER THE GOVERNMENT IS
 3   ELIMINATING BED SPACE ON PURPOSE, ALL OF THE SORT OF VARIOUS
 4   FACTORS.
 5        BUT I DO THINK YOUR HONOR IS RIGHT TO POINT OUT THE
 6   AGUILAR CASE, BUT I DO THINK IT IS DIFFERENT BECAUSE THE
 7   CHILD -- THEY DIDN'T -- THEY WEREN'T A UNIT IN DETENTION
 8   TOGETHER AND THEN THEY WERE SEPARATED.
 9        THE COURT:  HOW IS THAT DIFFERENT?  BECAUSE HERE IN
10   AGUILAR THEY WERE A UNIT LIVING TOGETHER IN THE UNITED STATES
11   IN A HOME, ARGUABLY.  THEN ARRESTED, CHARGED, CONVICTED.  DONE
12   THEIR TIME, THEN MOVED TO IMMIGRATION DETENTION.  DOESN'T THIS
13   SAME DUE PROCESS RIGHT COME INTO PLAY WHERE THERE SHOULD BE A
14   PROCESS TO REUNITE AT THAT POINT THE FAMILY AND CHILD, OR
15   PAROLE OR TAKE EFFORTS TO GET THE FAMILY TOGETHER?
16        MR. GELERNT:  YOUR HONOR, SO THE PAROLE I DON'T KNOW
17   ABOUT.  WE ARE NOT ARGUING THAT THEY HAVE TO BE RELEASED HERE.
18   SO WHETHER THE AGUILAR INDIVIDUALS HAD TO BE PAROLED -- I
19   WOULD NOTE THAT WHERE THE PERSON WAS THE SOLE PARENT THEY
20   ACTUALLY DID RELEASE THOSE PEOPLE, SO IT MADE THE CASE EASIER
21   FOR THE FIRST CIRCUIT.
22        I THINK THE DIFFERENCE IN MY MIND, YOUR HONOR, IS
23   THAT THE CHILD HAS NEVER BEEN DETAINED, SO MS. C.'S SON HAS
24   BEEN DETAINED THE WHOLE TIME.  SO IF THEY ARE GOING TO BE
25   DETAINED I THINK THE GOVERNMENT OUGHT TO, WHERE THERE IS BED
```

MAY 4, 2018

1    SPACE, DETAIN THEM TOGETHER.  THAT'S OUR VIEW.

2            IN AGUILAR YOU WOULD BE SAYING TO A CHILD WHO HAS

3    NEVER BEEN DETAINED, YOU ARE NOW GOING TO GO TO DETENTION.

4            NOW, WHETHER -- I THINK IT WOULD -- I THINK -- I

5    GUESS WHAT I AM ULTIMATELY GOING TO SAY IS I AM NOT SURE THAT

6    ANYTHING YOU SAY IN THIS CASE WILL ULTIMATELY LOCK YOU IN ONE

7    WAY OR THE OTHER IN THAT TYPE OF A SITUATION.

8            **THE COURT:**  WHAT ABOUT THE FACTS IN THIS CASE THAT

9    THE INDIVIDUALS ARE SEEKING ASYLUM; DOESN'T THAT MATTER?  SO

10   IF THEY ARE SEEKING ASYLUM, THAT IS THE BENEVOLENCE OF THE

11   UNITED STATES TO GRANT ASYLUM, THAT'S VERY DIFFERENT

12   CONTEXTUALLY, IS IT NOT, FROM THE AGUILAR GROUP OF

13   UNDOCUMENTED IMMIGRANTS?

14           **MR. GELERNT:**  I THINK YOU ARE RIGHT TO POINT OUT

15   THAT ASYLUM IS A PARTICULAR WEIGHT IN THIS CASE BECAUSE WE

16   HAVE TO PROVIDE BY STATUTE AND WE HAVE JOINED INTERNATIONAL

17   TREATIES TO PROVIDE FOR ASYLUM.  SO I DO THINK THAT IS A

18   CRITICAL DIFFERENCE.

19           THERE IS NO WAY TO APPLY -- JUST IN ANSWER QUICKLY

20   TO YOUR QUESTION BEFORE, THERE IS NO WAY TO APPLY FOR ASYLUM

21   OVERSEAS.  THAT IS A DIFFERENT TYPE OF THING, THAT IS REFUGEE

22   QUOTAS.

23           I DO THINK THAT WHEN WE ARE TALKING ABOUT SOMEONE

24   WHO IS COMING HERE FOR ASYLUM, THEY ARE FEARING FOR THEIR

25   LIFE, THEY DO HAVE A RIGHT TO APPLY FOR ASYLUM.  SOMETIMES

MAY 4, 2018

38

1    THEY KNOW WHERE THE PORT OF ENTRY IS.  SOME PEOPLE MAY

2    ACTUALLY BE TRYING TO SNEAK IN; SOME PEOPLE JUST DON'T KNOW

3    WHERE THE PORT OF ENTRY IS, AND THEY ARE WALKING IN.  THE

4    MINUTE ANYONE ENCOUNTERS THEM, LIKE MS. C., THEY ARE SAYING,

5    WE WANT ASYLUM.

6            NOW, WE HAVE NOT CHALLENGED THE GOVERNMENT'S

7    DECISION TO PROSECUTE FAMILIES FOR SEEKING ASYLUM AND COMING

8    IN THROUGH PLACES OTHER THAN THE PORT OF ENTRY.  THAT IS A

9    WHOLE SEPARATE THING.  WE HAVE ALSO NOT CHALLENGED THE

10   GOVERNMENT'S DECISION TO SEPARATE MS. C. AND HER CHILD.

11           BUT WE DO THINK THAT THE GOVERNMENT NEEDS TO HAVE

12   SOME REASON NOT TO REUNIFY.  AND SO THEY ARE HYPOTHETICALLY

13   COMING UP NOW WITH ALL OF THESE -- WELL, IT COULD BE THIS, IT

14   COULD BE THAT.

15           BUT ALL WE ARE ASKING IS, IF THERE IS NOT A DANGER

16   TO A CHILD AND THERE IS BED SPACE, PUT THEM TOGETHER.

17           AND I THINK THAT IS WHAT THE COURT WOULD BE

18   ORDERING.  IT WOULDN'T SAY THAT IF THE GOVERNMENT ULTIMATELY

19   COMES UP WITH SOME NEW RATIONALE THEY COULDN'T COME BACK HERE.

20   BUT JUST SIMPLY TO SAY, WELL, WE DIDN'T GET TO THE DNA TEST

21   FOR FOUR MONTHS OR WE -- YOU KNOW, THEY ARE DOING EVERYTHING

22   NOT TO KEEP THE CHILDREN TOGETHER IS WHAT IT SEEMS LIKE.  THAT

23   IS WHAT IS COMING THROUGH IN THE AFFIDAVITS.

24           **THE COURT:**  WHAT ABOUT THE CLASS DEFINITION, WOULD

25   YOU CONCEDE THAT IT IS TOO BROAD?  BECAUSE IT WOULD INCLUDE

MAY 4, 2018

```
 1   THE AGUILAR GROUP, AMONG OTHERS, ARGUABLY.

 2            MR. GELERNT:  IF IT DOES, YOUR HONOR, THEN WE WOULD

 3   ABSOLUTELY WANT TO TWEAK IT IF YOUR FEELING IS IT WOULD.  I

 4   MEAN, OUR UNDERSTANDING OF THE DEFINITION -- AND MAYBE IT DOES

 5   NEED TO BE TWEAKED -- IS THAT THE CHILD WOULD ALSO HAVE TO BE

 6   IN ORR CUSTODY, AND THE AGUILAR CHILDREN WERE AT LIBERTY.

 7            BUT IF YOUR HONOR FEELS LIKE HE NEEDS TO TWEAK THE

 8   DEFINITION WE ABSOLUTELY CAN PROVIDE A DIFFERENT DEFINITION OR

 9   YOUR HONOR CAN OBVIOUSLY TWEAK IT.  BUT WE DID NOT MEAN TO

10   PULL IN THE AGUILAR INDIVIDUALS.  AND TO THE EXTENT -- WE

11   APOLOGIZE TO THE EXTENT IT LOOKS TO THE COURT LIKE IT WOULD

12   COVER THE AGUILAR.

13            THE COURT:  ALL RIGHT.

14            IF I MIGHT, LET ME TAKE A LOOK AT MY NOTES TO SEE IF

15   I HAVE ANY OTHER QUESTIONS OF PLAINTIFFS.

16            THE ASYLUM STATUTE, ARE YOU ABANDONING IT?  THERE IS

17   REFERENCE IN ONE OF THE MOTIONS WHERE YOU PUT IT ASIDE.

18            MR. GELERNT:  WE ARE NOT ABANDONING IT, BUT WE ARE

19   NOT MOVING FOR AN INJUNCTION.

20            THE COURT:  IS THERE A PRIVATE RIGHT OF ACTION UNDER

21   THAT STATUTE?

22            MR. GELERNT:  WE DON'T -- I THINK THERE IS IN THE

23   SENSE THAT YOU CAN'T PURPOSEFULLY -- THE GOVERNMENT CANNOT

24   VIOLATE THE STATUTE BY MAKING IT IMPOSSIBLE TO APPLY FOR

25   ASYLUM.  AND I THINK THOSE ARE CASES, LIKE THE ORANTES CASE
```

MAY 4, 2018

1   OUT OF THE NINTH CIRCUIT, WHERE THE GOVERNMENT WAS MAKING IT

2   VERY DIFFICULT TO APPLY FOR ASYLUM.

3           WHETHER THERE WOULD BE A PRIVATE RIGHT OF ACTION FOR

4   DAMAGES, I DON'T KNOW.  THAT IS A GOOD QUESTION, ONE I HADN'T

5   THOUGHT ABOUT, YOUR HONOR.  BUT I THINK THERE IS CERTAINLY THE

6   ABILITY TO BRING A CASE TO SAY, MY ABILITY, MY OPPORTUNITY, A

7   REALISTIC OPPORTUNITY TO APPLY FOR ASYLUM, IS BEING HINDERED.

8           BUT WE ARE NOT MOVING AT THIS TIME ON THAT, YOUR

9   HONOR.

10          **THE COURT:**  IT IS A SUBJECT OF THE MOTION TO

11  DISMISS.

12          **MR. GELERNT:**  IT IS, YOUR HONOR.  AND WE BELIEVE

13  THAT THERE ARE ALLEGATIONS, THE ALLEGATIONS ARE SUFFICIENT.

14          CERTAINLY AT THIS POINT NOW THAT WE ARE LEARNING

15  MORE -- I MEAN, THE GOVERNMENT OBVIOUSLY KNOWS WHERE THE

16  INDIVIDUALS ARE AND HAS ACCESS.  AND WE ARE SLOWLY BEGINNING

17  TO GET ACCESS TO INDIVIDUALS, SO WE COULD CLEARLY AMEND THE

18  COMPLAINT.  BUT I THINK THE ALLEGATIONS NOW ARE SUFFICIENT

19  BECAUSE WHAT IT SHOWS IS THE COMMUNICATION BETWEEN THE CHILD

20  AND THE PARENT IS VERY DIFFICULT, AND THERE IS SIMPLY NO WAY

21  FOR THE PARENT AND CHILD TO MEANINGFULLY APPLY FOR ASYLUM

22  WITHOUT THAT COMMUNICATION.  ESPECIALLY WHEN THE CHILDREN ARE

23  SO YOUNG.

24          THE OTHER THING THAT IS HAPPENING IS THE PARENTS ARE

25  BECOMING SO TRAUMATIZED THEY ARE NOT EATING OR SLEEPING,

```
1    UNDERSTANDABLY.  THEY DON'T KNOW WHERE THEIR THREE-YEAR-OLD,

2    FOUR-YEAR-OLD IS.  SO THE ABILITY TO WORK WITH ASYLUM LAWYERS

3    IS BECOMING ALMOST IMPOSSIBLE BECAUSE ALL THAT IS ON THEIR

4    MIND IS, WHERE IS MY CHILD?  WHERE IS MY CHILD?

5            I MEAN, SOME OF THE AFFIDAVITS ARE JUST TALKING

6    ABOUT, IS MY CHILD EVEN GOING TO THE BATHROOM OR EATING OR

7    SLEEPING?  I MEAN, THAT IS WHAT YOU WORRY ABOUT WHEN YOU HAVE

8    A THREE OR FOUR-YEAR-OLD.  SO THE ABILITY TO ACTUALLY GO

9    FORWARD WITH THEIR ASYLUM CLAIMS IN A MEANINGFUL WAY.

10            BUT WE ARE HAPPY TO AMEND THE COMPLAINT IF YOUR

11   HONOR THINKS IT NEEDS THAT.

12            THE COURT:  ALL RIGHT.

13            THIS WOULD BE A QUESTION OF GOVERNMENT COUNSEL.

14            ASSUMING THAT PLAINTIFFS ARE CORRECT AND THAT THIS

15   IS AN APPROPRIATE CASE FOR SOME FORM OF CLASS CERTIFICATION

16   AND PRELIMINARY INJUNCTIVE RELIEF, ON THE CLASS DEFINITION IT

17   WOULD, AT MOST, GIVEN THE PLAINTIFFS' EVIDENCE, ENCOMPASS

18   ABOUT 700 INDIVIDUALS.  SO ON AN ASCERTAINABILITY ANALYSIS

19   WOULDN'T IT BE RELATIVELY EASY FOR THE GOVERNMENT TO QUICKLY

20   IDENTIFY THE INDIVIDUALS AND DETERMINE WHETHER OR NOT THEY

21   FALL WITHIN THE CLASS; ASSUMING THE CLASS IS DEFINED TO

22   ENCOMPASS ONLY THE SITUATIONS OF MS. L. AND MS. C., THAT TYPE

23   OF FACT PATTERN?

24            MS. FABIAN:  I THINK IT HAS BEEN PAINTED SO BROADLY

25   THAT IT MAY BE POSSIBLE TO IDENTIFY INDIVIDUALS WHO FALL UNDER
```

1   THAT DEFINITION, BUT IT DOESN'T THEN ESTABLISH THOSE

2   INDIVIDUALS HAVE BEEN SUBJECT TO ANY SORT OF COMMON SET OF

3   FACTS.

4           **THE COURT:**  BUT YOU COULD MAKE THE DETERMINATION,

5   COULDN'T YOU, THAT THERE ACTUALLY WASN'T A PARENTAGE

6   DETERMINATION OR THERE WASN'T A FITNESS DETERMINATION.  AND IF

7   THAT IS THE CASE THEN ARGUABLY IT FITS WITHIN THIS PROPOSED

8   CLASS AND THEY WOULD BE PUTATIVE CLASS MEMBERS.

9           **MS. FABIAN:**  I THINK EVEN WITH MS. L. AND MS. C. YOU

10   HAVE TWO VERY DIFFERENT CASES WITH THAT.  SO THERE IS NO

11   QUESTION RAISED AS TO MS. C.'S PARENTAGE, THE ISSUE WAS THE

12   PROSECUTION AND SEPARATION.  AND THEN WITH MS. L. THERE WAS A

13   QUESTION OF PARENTAGE.  SO IN THAT CASE THERE WAS A

14   DETERMINATION MADE THAT THE GOVERNMENT WAS UNABLE TO CONFIRM

15   PARENTAGE AND THEREFORE SEPARATION WAS NECESSARY.  SO I THINK

16   YOU JUST HAVE TWO VERY DIFFERENT FACT PATTERNS.

17         NOW, PLAINTIFFS' COUNSEL MAKES REFERENCE TO SEVERAL

18   DECLARATIONS.  AS I MENTIONED, THOSE DECLARATIONS -- WELL, IT

19   SEEMS THE NEW YORK TIMES HAD THEM A FEW WEEKS BEFORE WE DID,

20   BUT WE ARE JUST SORT OF DIGGING THROUGH THOSE NOW AND WE ARE

21   HAPPY TO RESPOND.  WE HAVE DIFFERENT FACTS OF THOSE.  ONE OF

22   THE EXAMPLES THAT COUNSEL REFERENCED IS IN FACT ONE OF THE

23   EXAMPLES THAT WE HAVE A CRIMINAL HISTORY BEING THE BASIS FOR

24   SEPARATION.

25         SO I THINK IF THOSE -- AND I THINK WE WOULD ALSO

```
 1    CONTEND THAT TO THE EXTENT THERE IS AN ATTEMPT HERE TO AMEND

 2    THE COMPLAINT THROUGH THESE DECLARATIONS THAT NEEDS TO BE --

 3    THEN WE NEED TO PUT THESE MOTIONS ON HOLD AND LET PLAINTIFFS'

 4    COUNSEL SEEK TO AMEND THE COMPLAINT AND MOVE FORWARD WITH NEW

 5    CLAIMS IF THEY WANT TO RAISE NEW ISSUES AND NEW PLAINTIFFS.

 6             IT IS VERY DIFFICULT FOR US -- WE HAVE NOT, FOR

 7    EXAMPLE, SUBMITTED A DECLARATION WITH REGARD TO SPACE BECAUSE

 8    NO NAMED PLAINTIFFS WERE SEPARATED ON THE BASIS OF SPACE.  I

 9    SUBMIT THAT THERE ARE 2700 BEDS AND 15,000 INDIVIDUALS WHO

10    HAVE CROSSED IN THE MONTH OF APRIL.

11             THE COURT:  THAT IS THE NUMBER, THE GOVERNMENT HAS

12    2700 BED SPACES AVAILABLE FOR THESE TYPES OF FAMILIES?

13             MS. FABIAN:  IT IS.  THERE ARE THREE FACILITIES.

14    THE CAPACITY AT THE TEXAS FACILITIES IS 1800 AND 800.  THE

15    FACILITY IN PENNSYLVANIA HAS -- I BELIEVE IT IS 84 OR 86 BEDS.

16             THE COURT:  HOW ABOUT CHICAGO -- CHICAGO IS FOR THE

17    CHILDREN.

18             MS. FABIAN:  THEN YOU HAVE THE ORR FACILITIES WHICH

19    ARE NATIONWIDE AND THEY HAVE DIFFERENT CAPACITIES.

20             I WOULD ALSO NOTE THAT THE ONLY FACILITY THAT CAN

21    HOLD MALE HEADS OF HOUSEHOLD WOULD BE THE BERKS FACILITY IN

22    PENNSYLVANIA.  AND THAT'S THE ONE WITH 86 BEDS.  THE TEXAS

23    FACILITIES DO NOT TAKE MALE HEADS OF HOUSEHOLD.

24             THE COURT:  SO IF YOU HAVE A FATHER AND A CHILD IT

25    IS HARDER TO KEEP THEM TOGETHER?
```

MAY 4, 2018

44

```
 1              MS. FABIAN:  IT IS.
 2              THE COURT:  BECAUSE OF BED SPACE.
 3              MS. FABIAN:  BECAUSE OF BED SPACE, YES.
 4              THE COURT:  THAT IS THE ONE PLACE IN PENNSYLVANIA.
 5              MS. FABIAN:  YES.
 6              THE COURT:  THEN, ARGUABLY, THAT MIGHT BE THE REASON
 7   WHY THIS MAN WHO SUBMITTED THE DECLARATION IN THE REPLY BRIEF
 8   IS NOT BEING HOUSED WITH HIS SON, POSSIBLY.  THERE IS A
 9   REFERENCE THAT THERE WASN'T ADEQUATE HOUSING.
10              MS. FABIAN:  THE ONLY INFORMATION I HAVE -- MY
11   CLIENTS HAVE BEEN LOOKING INTO THAT.  THE INFORMATION I HAVE
12   IS THAT THERE WAS A QUESTION OF PARENTAGE WITH THAT
13   INDIVIDUAL.  BUT THAT ALSO THERE WOULD HAVE BEEN A BED SPACE
14   ISSUE HAD THAT BEEN CONSIDERED.
15              THE COURT:  ALL RIGHT.
16              I JUST WANT TO ASK, THIS IS I THINK MY LAST
17   QUESTION.
18              AS I UNDERSTOOD THE GOVERNMENT'S BRIEFING THE
19   ARGUMENT IS THAT IT CAN SEPARATE FAMILIES PURSUANT TO ITS
20   PLENARY POWER TO REGULATE IMMIGRATION.  AND I WASN'T CLEAR
21   WHAT THAT MEANT.
22              MS. FABIAN:  I THINK THE ARGUMENT THERE IS THAT THE
23   GOVERNMENT HAS SIGNIFICANT AUTHORITY WITH REGARD -- AGAIN,
24   WITH REGARD TO IMMIGRATION, AND FOR IMMIGRATION AND CRIMINAL
25   ENFORCEMENT AND DETENTION, AND SO THE GOVERNMENT CAN TAKE THE
```

MAY 4, 2018

1   ACTIONS THAT IT NEEDS TO TAKE UNDER THE INA SUBJECT TO THIS
2   PLENARY POWER.  THAT THERE HAS BEEN GREAT AUTHORITY AND
3   DISCRETION GRANTED TO THE GOVERNMENT WITH REGARD TO THESE
4   DECISIONS.  AS THE INA IS CURRENTLY WRITTEN THAT DISCRETION
5   EXISTS, AND AGAIN THOSE ACTIONS RESULT IN SEPARATION.
6          **THE COURT:**  YOU WOULD CONCEDE, THOUGH, THAT THE
7   ULTIMATE ARBITER WOULD BE THE DUE PROCESS CLAUSE OVER THAT
8   STATUTORY FRAMEWORK.
9          **MS. FABIAN:**  THAT THERE IS A SUBSTANTIVE DUE PROCESS
10  ANALYSIS THAT COULD APPLY, BUT THAT IT WOULD REQUIRE THE SORT
11  OF MORE ROBUST FINDING OF BEHAVIOR ACTIONS THAT SHOCK THE
12  CONSCIENCE.
13         **THE COURT:**  YES.  ALL RIGHT.
14         THOSE ARE ALL THE QUESTIONS I HAVE.  I WOULD BE
15  PREPARED TO CLOSE THE HEARING.
16         I WOULD LIKE TO TAKE THE MATTER UNDER SUBMISSION.
17  THERE ARE OBVIOUSLY VERY SIGNIFICANT AND WEIGHTY ISSUES, AND
18  THERE ARE A NUMBER OF ISSUES THAT HAVE TO BE EXPLORED WITH
19  RESPECT TO THE RELIEF THAT IS REQUESTED.  AND ASSUMING THE DUE
20  PROCESS PROVISION APPLIES AND THERE ARE PROBLEMS WITH IT IN
21  THIS PARTICULAR CASE, WHAT WOULD BE THE SCOPE OF INJUNCTIVE
22  RELIEF, THE DEFINITION OF THE CLASS, AND THOSE TYPES OF
23  ISSUES.
24         SO I APPRECIATE THE BRIEFING AND THE ARGUMENT VERY
25  MUCH.  I WOULD LIKE TO TAKE THE MATTER UNDER SUBMISSION AND

MAY 4, 2018

```
 1   ISSUE A RULING IN DUE COURSE.

 2            THANK YOU VERY MUCH.

 3            MR. GELERNT:  THANK YOU, YOUR HONOR.

 4            MS. FABIAN:  THANK YOU.

 5

 6                        *   *   *

 7            I CERTIFY THAT THE FOREGOING IS A CORRECT
              TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
 8            IN THE ABOVE-ENTITLED MATTER.

 9            S/LEEANN PENCE                5/9/2018
              LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MAY 4, 2018