UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____ )
MS. L. AND MS. C.,                )
                                  )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS, )
                                  )
VS.                               )
                                  )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS      ) FRIDAY JUNE 22, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT )  12:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S. )
CUSTOMS AND BORDER PROTECTION ("CBP"); )
U.S. CITIZENSHIP AND IMMIGRATION  )
SERVICES ("USCIS"); U.S. DEPARTMENT )
OF HEALTH AND HUMAN SERVICES ("HHS"); )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE; )
GREG ARCHAMBEAULT, SAN DIEGO FIELD )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD  )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD )
SESSIONS III, ATTORNEY GENERAL OF THE )
UNITED STATES; L. FRANCIS CISSNA,  )
DIRECTOR OF USCIS; KEVIN K.       )
MCALEENAN, ACTING COMMISSIONER OF )
CBP; PETE FLORES, SAN DIEGO FIELD )
DIRECTOR, CBP; HECTOR A. MANCHA JR., )
EL PASO FIELD DIRECTOR, CBP;      )
ALEX AZAR, SECRETARY OF THE       )
DEPARTMENT OF HEALTH AND HUMAN    )
SERVICES; SCOTT LLOYD, DIRECTOR   )
OF THE OFFICE OF REFUGEE RESETTLEMENT, )
                                  )
            RESPONDENTS-DEFENDANTS. )
----------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS
**TELEPHONIC STATUS CONFERENCE**

```
COUNSEL APPEARING TELEPHONICALLY:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004

                           BADIS VAKILI, ESQ.
                           ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES
                           P.O. BOX 87131
                           SAN DIEGO, CALIFORNIA 92138

FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044

                           ADAM L. BRAVERMAN
                           INTERIM UNITED STATES ATTORNEY
                           BY:  SAM BETTWY
                           ASSISTANT U.S. ATTORNEY
                           880 FRONT STREET
                           SAN DIEGO, CALIFORNIA 92101




REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101
```

1    <u>**SAN DIEGO, CALIFORNIA – FRIDAY, JUNE 22, 2018 – 12:10 P.M.**</u>

2                              *   *   *

3          **THE CLERK:**  NO. 12 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    A STATUS CONFERENCE.

6          **THE COURT:**  GOOD AFTERNOON.  THIS IS JUDGE SABRAW.

7          IF COUNSEL CAN HEAR ME, CAN YOU ENTER YOUR

8    APPEARANCES, PLEASE.

9          **MR. GELERNT:**  YES, YOUR HONOR.  THIS IS LEE GELERNT

10   FROM THE ACLU FOR PLAINTIFFS.

11         **MR. VAKILI:**  GOOD AFTERNOON, YOUR HONOR.  THIS IS

12   BARDIS VAKILI FROM THE ACLU SAN DIEGO FOR PLAINTIFFS.

13         **MS. FABIAN:**  GOOD AFTERNOON, YOUR HONOR.  SARAH

14   FABIAN WITH THE DEPARTMENT OF JUSTICE FOR DEFENDANTS.

15         **MR. BETTWY:**  GOOD AFTERNOON, YOUR HONOR.  SAM BETTWY

16   WITH THE U.S. ATTORNEY'S OFFICE FOR DEFENDANTS.

17         **THE COURT:**  OKAY.  IS THAT ALL COUNSEL?

18         **MR. GELERNT:**  YOUR HONOR, WE HAVE SOME COUNSEL HERE

19   BUT THEY ARE NOT GOING TO BE SPEAKING.  I DON'T KNOW WHETHER

20   YOU WOULD LIKE US TO ANNOUNCE ALL OF THEM.

21         **THE COURT:**  NO, THAT'S OKAY.

22         **MR. GELERNT:**  OKAY.

23         **THE COURT:**  I JUST WANTED A RECORD FOR TODAY'S

24   APPEARANCES.

25         AND I KNOW WE HAVE A NUMBER OF MEDIA ONLINE, AND I

1   THINK WE HAVE AT LEAST ONE MEDIA PERSON PRESENT IN THE

2   COURTROOM.

3           I AM CONDUCTING THIS TELEPHONIC HEARING ON THE

4   RECORD, IN THE COURTROOM.  AND I DO APPRECIATE EVERYONE'S

5   COOPERATION MEETING TELEPHONICALLY.  I WANTED TO GET COUNSELS'

6   INSIGHTS AS QUICKLY AS WAS REASONABLY PRACTICAL, AND SO I

7   THINK THIS PROVIDES THE BEST OPTION FOR ALL OF US.

8           IN LIGHT OF A NUMBER OF EVENTS THAT HAVE TAKEN PLACE

9   OVER THE LAST COUPLE OF WEEKS, AND IN PARTICULAR ON JUNE 20,

10  2018, TWO DAYS AGO WHEN THE PRESIDENT ISSUED THE EXECUTIVE

11  ORDER, I HAD SOME QUESTIONS AND WANTED TO GIVE COUNSEL AN

12  OPPORTUNITY TO PROVIDE INSIGHT AS TO HOW WE PROCEED.

13          PERHAPS I CAN START FIRST WITH MR. GELERNT.

14          HOW DOES THE EXECUTIVE ORDER AFFECT THIS CASE?

15          **MR. GELERNT:**  YOUR HONOR, WE DO NOT BELIEVE IT IN

16  ANY WAY ELIMINATES THE URGENT NEED FOR A PRELIMINARY

17  INJUNCTION, AND THAT IS FOR TWO REASONS.

18          ONE IS WE DO NOT BELIEVE THE EXECUTIVE ORDER

19  ELIMINATES THE NEED FOR AN --

20                    **(PHONE INTERFERENCE)**

21          -- WHEN SEPARATIONS OCCUR BECAUSE THE EXECUTIVE

22  ORDER HAS TOO MANY EXPLICIT EXCEPTIONS THAT WOULD STILL ALLOW

23  SEPARATIONS TO GO FORWARD UNDER WHAT WE BELIEVE IS NOT A

24  CONSTITUTIONAL STANDARD AND THE CONSTITUTIONAL STANDARD YOUR

25  HONOR SET FORTH IN HIS INITIAL OPINION.


JUNE 22, 2018

```
1              THE SECOND REASON THE EXECUTIVE ORDER DOESN'T
2    ELIMINATE THE NEED FOR AN IMMEDIATE INJUNCTION IS MAYBE MORE
3    ACUTE, IS THAT THE EXECUTIVE ORDER SIMPLY DOES NOT SPEAK AT
4    ALL TO THE REUNIFICATION OF PARENTS AND CHILDREN, THOSE WHO
5    HAVE ALREADY BEEN SEPARATED.  DOESN'T SAY ONE WORD ABOUT IT.
6    AND IN STATEMENTS THAT POSTDATE THE EXECUTIVE ORDER THE
7    ADMINISTRATION HAS MADE CLEAR THAT THOSE CASES WILL JUST GO ON
8    AS USUAL.
9              AND I CANNOT EXPRESS ENOUGH HOW BAD THE SITUATION
10   HAS BECOME SINCE WE HAVE BEEN IN YOUR COURT IN THE BEGINNING
11   OF MAY.
12             AS YOUR HONOR HAS PROBABLY BEEN FOLLOWING IN THE
13   MEDIA, THERE ARE ABOUT 2,000 KIDS NOW WHO HAVE BEEN SEPARATED.
14   THEY ARE -- RANGE FROM LITTLE BABIES LESS THAN A YEAR OLD, TO
15   TODDLERS, TO YOUNG CHILDREN.  AND THEY ARE SUFFERING
16   IMMEASURABLY.
17             EVERY NIGHT WE ARE HEARING STORIES ABOUT CHILDREN
18   GOING TO SLEEP, ASKING WHETHER THEY ARE EVER GOING TO SEE
19   THEIR PARENTS AGAIN, CLUTCHING PICTURES OF THEIR PARENTS.  I
20   JUST MET WITH A FAMILY, THE FOUR AND TEN-YEAR-OLD BOY HAD BEEN
21   SEPARATED FOR MONTHS.  AND THE CHILD NOW IS BACK WITH HIS
22   MOTHER, FINALLY, AND EVERY NIGHT HE ASKS HIS MOTHER, ARE THEY
23   GOING TO COME AND TAKE ME AWAY?
24             AND I THINK IT IS JUST CONSISTENT WITH THE MEDICAL
25   TESTIMONY WE PROVIDED YOU AND WHAT THE MEDICAL COMMUNITY HAS
```

JUNE 22, 2018

1   PREDICTED WOULD HAPPEN, THAT DEEP, DEEP TRAUMA WOULD SET IN.

2   AND IT HAS JUST BECOME A COMPLETE MESS WITH 1,000 PEOPLE OVER

3   -- YOU KNOW, 2,000 PEOPLE SEPARATED THAT THEY DON'T -- THE

4   PARENTS CAN'T FIND THE CHILDREN, THEY ARE NOT EVEN SPEAKING TO

5   THE CHILDREN.  I THINK IT IS A, YOU KNOW, A HUMANITARIAN

6   CRISIS OF THE UTMOST PROPORTIONS.

7          AND I REALIZE THAT, YOU KNOW, I AM SORT OF ALMOST

8   PLEADING, BUT AT THIS POINT, YOUR HONOR, WE BELIEVE THAT IT IS

9   NECESSARY FOR YOU TO ISSUE AN INJUNCTION AS EARLY AS TONIGHT

10  OR THIS WEEKEND.

11         AND WHAT I WANT TO PROPOSE TO YOU, YOUR HONOR, IS

12  THAT IT BE IN STAGES.  AND THAT THE INJUNCTION WOULD SAY THAT

13  ALL KIDS NEED TO BE REUNITED WITHIN A MONTH, BUT THE KIDS

14  UNDER THE AGE OF FIVE, WE THINK, NEED TO BE REUNITED WITHIN

15  TEN DAYS.  I MEAN, THERE ARE JUST LITTLE BABIES SITTING THERE

16  ALL BY THEMSELVES.

17         THE OTHER THING THAT WE URGENTLY WOULD REQUEST IS

18  THAT THE GOVERNMENT PROVIDE A LIST OF ALL OF THE PARENTS AND

19  CHILDREN SO THAT THEY CAN SHOW THEY HAVEN'T LOST TRACK OF

20  THESE PARENTS AND CHILDREN, AND TO TELL THE PARENTS HOW THEY

21  CAN EVEN REACH THEIR KIDS.

22         WE HAVE PARENTS SITTING IN DETENTION CENTERS WHO

23  HAVE NO IDEA WHERE THEIR CHILDREN ARE, NO IDEA HOW TO REACH

24  THEM.  AND THEY CAN'T SLEEP, THEY CAN'T EAT.  THEY ARE JUST

25  WORRIED ABOUT THEIR CHILDREN EVERY SECOND, UNDERSTANDABLY.  IT

JUNE 22, 2018

1   IS CAUSING DEEP, DEEP DEPRESSION.  AND ON THE CHILD'S SIDE, I

2   THINK THE CHILDREN ARE JUST BEING PERMANENTLY DAMAGED NOW, AS

3   THE MEDICAL COMMUNITY SAID WOULD HAPPEN.

4           SO, YOU KNOW, WE UNDERSTAND THAT WHEN WE WERE THERE

5   BEFORE YOU IN EARLY MAY WE ASKED FOR PROMPT REUNIFICATION.  WE

6   THINK, GIVEN THAT THE GOVERNMENT HAS NOW DOUBLED DOWN, TRIPLED

7   DOWN ON THIS PRACTICE, YOU KNOW, AND WHAT NOW IS CLEAR AS A

8   POLICY, THAT THERE IS REALLY AN URGENT NEED TO SET A

9   TIMETABLE.

10          AND I SUSPECT THE GOVERNMENT IS GOING TO GET ON THE

11  PHONE WITH YOU AND SAY, WELL, WE HAVE A PROCESS, WE WOULD LIKE

12  TO REUNITE.

13          BUT ALL WE HAVE HEARD IS THAT THEY ARE GOING TO USE

14  THE PAST PROCESS.  AND THAT, AS YOU KNOW, YOUR HONOR, CAN TAKE

15  MONTHS AND MONTHS AND MONTHS.

16          MS. C., ONE OF THE NAMED PLAINTIFFS, WASN'T REUNITED

17  WITH HER CHILD FOR EIGHT MONTHS.  AND I THINK THE TIME TO SORT

18  OF LEAVE THE GOVERNMENT TO ITS OWN DEVICES HAS LONG PASSED.

19  AND WE DON'T CARE HOW THEY GO ABOUT DOING IT, BUT WE DO THINK

20  THAT 30 DAYS IS REASONABLE.

21          AND I SUSPECT WHAT THE GOVERNMENT IS GOING TO TELL

22  YOU IS, WELL, THAT, LOOK, THERE IS A LOT OF LOGISTICS INVOLVED

23  AND THERE IS A LOT OF KIDS.

24          BUT WHAT I GUESS I WOULD SAY IS IT IS A CRISIS OF

25  THEIR OWN MAKING.  AND THE UNITED STATES GOVERNMENT HAS

JUNE 22, 2018

1   ENORMOUS RESOURCES WHEN THEY WANT TO PRIORITIZE SOMETHING.
2   AND IT JUST SEEMS TO US AT THIS POINT THEY NEED TO PRIORITIZE
3   IT, AND 30 DAYS IS NOT UNREASONABLE FOR THEM TO GET THIS DONE
4   IF THEY ARE GOING TO PRIORITIZE IT.  AND THEY HAVE DONE THIS
5   DAMAGE TO THE CHILDREN.  AND AT THIS POINT WE THINK THAT THEY
6   JUST NEED TO DO IT.
7           AND IF THEY WANT TO TAKE YOUR ORDER UP, YOU KNOW,
8   TONIGHT, TOMORROW TO THE NINTH CIRCUIT, SO BE IT.  BUT, AT
9   THIS POINT, WE RESPECTFULLY WOULD URGE YOU TO ISSUE AN
10  INJUNCTION, EVEN IF IT HAS TO BE FOLLOWED BY AN OPINION AT
11  SOME LATER POINT.  TO GET AN ORDER OUT THAT THE GOVERNMENT
12  NEEDS HERE, BECAUSE EVERY STATEMENT WE HAVE SEEN SINCE THE
13  EXECUTIVE ORDER HAS SAID, WELL, WE ARE THINKING ABOUT HOW TO
14  DO IT OR SOME KIND OF PROCESS, OR WE ARE GOING TO USE THE OLD
15  PROCESS.
16          AT THIS POINT, YOU KNOW, IT IS JUST NOT GOOD ENOUGH.
17  ALMOST EVERY CORNER OF SOCIETY NOW IS BEGGING FOR THESE KIDS
18  TO BE BACK.  AND I THINK, AT THE END OF THE DAY, YOUR HONOR,
19  YOU HAVE GIVEN THE GOVERNMENT PLENTY OF TIME SINCE YOUR MOTION
20  TO DISMISS TO TRY AND FIX THINGS.  THEY HAVEN'T.  AND I DON'T
21  THINK IT IS UNREASONABLE AT THIS POINT FOR YOUR HONOR, WHO IS
22  REALLY THE ONLY PERSON LEFT WHO CAN HELP THESE LITTLE
23  CHILDREN, TO SAY TO THE GOVERNMENT, YOU KNOW, 30 DAYS IS
24  REASONABLE.  AND IF YOU WANT TO APPEAL IT TO THE NINTH CIRCUIT
25  ON AN EMERGENCY BASIS, SO BE IT.


JUNE 22, 2018

1          BUT THE LAST THING I WOULD SAY, YOUR HONOR, IS WE

2     STILL BELIEVE WE NEED AN INJUNCTION GOING -- TO STOP

3     SEPARATIONS GOING FORWARD.

4          THE EXECUTIVE ORDER HAS A NUMBER OF EXCEPTIONS

5     HAVING TO DO WITH APPROPRIATIONS AND VARIOUS OTHER THINGS, AND

6     THERE WAS A STATEMENT BY C.B.P. SUGGESTING THAT SEPARATIONS

7     COULD STILL OCCUR WHERE THERE IS PROSECUTIONS.  BUT PUTTING

8     ALL OF THAT CONFUSION ASIDE, I THINK ONE THING YOUR HONOR WILL

9     RECOGNIZE IN THE EXECUTIVE ORDER IS THAT THE EXECUTIVE ORDER

10    HAS AN EXCEPTION WHERE -- FOR THE BEST INTEREST OF THE CHILD.

11    THE EXECUTIVE ORDER -- WE CAN EXPLICITLY SEPARATE WHERE WE

12    BELIEVE IT IS IN THE BEST INTEREST OF THE CHILD.

13         AND AS YOUR HONOR KNOWS WE, THE PLAINTIFFS, HAVE

14    SAID THAT IS A FINE STANDARD, THAT IS THE STANDARD USED BY THE

15    STATE AND FEDERAL GOVERNMENT AND CHILD ADVOCACY GROUPS; BUT

16    THE REAL PROBLEM IS IN HOW THIS ADMINISTRATION, IN THIS

17    CONTEXT, HAS INTERPRETED BEST INTEREST OF THE CHILD.  BECAUSE,

18    AS YOUR HONOR KNOWS, WITH THE CONGOLESE MOM, MS. L., THEY

19    SEPARATED THE CHILD AND THEY SAID IT WAS IN THE BEST INTEREST

20    OF THE CHILD BECAUSE THEY WEREN'T SURE THE ADULT WAS REALLY

21    THE MOTHER.

22         AND WHAT YOUR HONOR WROTE IN HIS OPINION IS

23    ABSOLUTELY RIGHT AND IS CONSISTENT WITH THE EVIDENCE YOU HAVE

24    BEFORE YOU FROM CHILD EXPERTS THAT YOU WOULD NEVER SEPARATE A

25    CHILD IN THAT SITUATION.  IT IS NOT IN THE BEST INTEREST OF

JUNE 22, 2018

10

```
 1   THE CHILD.  IT IS ONLY IN THE BEST INTEREST OF THE CHILD TO DO
 2   THE VERIFICATION WHICH, YOU KNOW, AT A MINIMUM MEANS A DNA
 3   TEST, IT IS SO SIMPLE.  BUT WHAT WE ARE CONCERNED ABOUT IS
 4   THAT WE WILL CONTINUE TO SEE SEPARATIONS LIKE THE MS. L.
 5   SEPARATION UNDER THAT EXCEPTION, THAT LOOPHOLE FOR BEST
 6   INTEREST.
 7           AND, YOU KNOW, I DON'T THINK THE GOVERNMENT -- THE
 8   GOVERNMENT THROUGHOUT THIS LITIGATION HAS SAID THE MS. L.
 9   SEPARATION WAS LEGAL, SO THAT WOULD SUGGEST THAT UNDER THE
10   EXECUTIVE ORDER'S EXCEPTION FOR BEST INTEREST OF THE CHILD
11   THEY COULD STILL SEPARATE MS. L.
12           AND UNLESS THE GOVERNMENT IS PREPARED TO GET ON THE
13   PHONE RIGHT NOW AND SAY ALL OF THE PRIOR SEPARATIONS WERE
14   ILLEGAL, I THINK WE DO NEED THAT INJUNCTION GOING FORWARD THAT
15   STOPS -- YOU KNOW, SO THAT -- BECAUSE THE SEPARATIONS ARE JUST
16   SO HARMFUL WHEN THESE LITTLE CHILDREN ARE RIPPED AWAY.
17           AND I'M SURE YOUR HONOR HAS READ IN THE MEDIA THAT
18   NOW THEY TELL THE PARENTS, WE ARE JUST TAKING YOUR CHILD FOR A
19   BATH, THEN THE PARENT NEVER SEES THE CHILD AGAIN.  IT IS
20   BECOMING UNBEARABLE.  AND EVERY DAY ON THE GROUND WE ARE
21   HEARING FROM DOCTORS AND ADVOCATES AND PARENTS THAT THE
22   SITUATION IS SIMPLY INTOLERABLE AT THIS POINT.  SO I KNOW THAT
23   I AM REALLY PUSHING HARD HERE, BUT I THINK THE SITUATION
24   WARRANTS IT.
25           SO THAT IS WHERE WE ARE.  WE WOULD URGE THE COURT TO
```

JUNE 22, 2018

1    GET SOMETHING OUT TONIGHT OR OVER THE WEEKEND, AT LEAST AS TO

2    THE REUNIFICATION PART.

3            **THE COURT:**  WHAT ABOUT THE RECORD BEFORE THE COURT.

4    THE COURT, OBVIOUSLY, IS A COURT BASED ON THE RECORD.  WHAT

5    HAS HAPPENED IN THIS CASE IS UNUSUAL IN THAT THE CASE HAS

6    DEVELOPED IN THE MEDIA, BUT THE RECENT EVENTS ARE NOT IN THE

7    RECORD BEFORE THE COURT.  AND SO IF THE RELIEF REQUESTED WERE

8    PROVIDED BY THE COURT THERE HAS TO BE SOME EVIDENTIARY BASIS

9    FOR IT, OTHER THAN NEWSPAPER AND TELEVISION AND RADIO

10   ACCOUNTS.

11           HOW WOULD YOU RESPOND TO THAT?

12           **MR. GELERNT:**  YES, YOUR HONOR.  I THINK THAT IS A

13   FAIR QUESTION.

14           AND HERE IS WHAT I WOULD SAY, IS THAT WHAT -- WE

15   DON'T NEED YOU TO MAKE FACTUAL FINDINGS ABOUT WHAT HAS

16   HAPPENED SINCE WE WERE THERE BEFORE YOU.  I THINK -- YOU KNOW,

17   I THINK EVERYONE KNOWS WHAT'S HAPPENING.  I THINK THERE IS A

18   LOT OF THINGS YOU CAN TAKE JUDICIAL NOTICE OF BECAUSE THERE IS

19   THINGS THE GOVERNMENT HAS SAID ON THE RECORD, AND THOSE THINGS

20   ARE FINE TO TAKE JUDICIAL NOTICE OF.

21           AND, YOU KNOW, I THINK THE MEDIA, TO THE EXTENT IT

22   SEEMS LIKE THERE IS CONSENSUS YOU CAN TAKE -- YOU CAN

23   ACKNOWLEDGE THAT.  BUT WE ARE NOT ASKING YOU TO MAKE FACTUAL

24   FINDINGS.  WE DO NOT BELIEVE THAT THE INJUNCTION HINGES ON

25   ANYTHING THAT HAS HAPPENED AFTER THE HEARING.

JUNE 22, 2018

1          WHAT I THINK HAS HAPPENED AFTER THE HEARING IS THE

2     NUMBERS ARE INCREASED AND THE SUFFERING IS INCREASED, BUT I

3     DON'T THINK THAT CHANGES THE LEGAL LANDSCAPE.  THERE WERE

4     ALREADY 700 PEOPLE BEFORE YOU AT THE TIME WE HAD THE HEARING

5     AND THE GOVERNMENT, YOU KNOW, THE GOVERNMENT ADMITTED THAT

6     THAT WAS A NUMBER THAT WAS ACCURATE.  AND SO THAT IS PLENTY

7     FOR CLASS CERTIFICATION.  THAT IS PLENTY OF SUFFERING,

8     UNFORTUNATELY.  THE SCENARIOS THAT WERE ALREADY OCCURRING

9     BEFORE THE ZERO POLICY ANNOUNCEMENT.

10          SO I DON'T THINK ANYTHING HAS REALLY CHANGED FROM A

11     LEGAL STANDPOINT.  BUT YOUR ANALYSIS IS STILL SPOT-ON THAT

12     UNDER SUBSTANTIVE DUE PROCESS YOU DON'T SEPARATE A CHILD

13     ABSENT A FINDING THAT THE PARENT IS UNFIT, OR NOT IN THE BEST

14     INTEREST OF THE CHILD.  SO THAT IS ALL WE ARE ASKING YOU TO

15     DO.

16          AND WE HAVE ALWAYS BEEN ASKING YOU TO REUNIFY THE

17     CHILDREN.  I JUST THINK THAT WHAT HAS HAPPENED SINCE SHOWS THE

18     NEED FOR YOUR HONOR TO ACT URGENTLY, BECAUSE AT THIS POINT YOU

19     ARE THE ONLY ONE WHO CAN REALLY STOP THE SUFFERING OF THESE

20     LITTLE CHILDREN.  BUT WE CERTAINLY -- WE UNDERSTAND THAT YOU

21     WOULD NOT WANT TO MAKE FACTUAL FINDINGS BASED ON MEDIA

22     ACCOUNTS, WITH ALL DUE RESPECT TO THE MEDIA THAT ARE ON THE

23     LINE.

24          BUT WE THINK THERE IS PLENTY OF FACTUAL --

25     ESPECIALLY THE DOCTORS' AFFIDAVITS THAT WERE BEFORE YOU FROM

JUNE 22, 2018

1    THE BEGINNING, THE TEN DOCTORS' AFFIDAVITS.  THEY SHOW THE

2    HARM ACUTELY AND THEY PREDICTED WHAT WAS GOING TO HAPPEN, AND

3    SO WHAT HAS HAPPENED AFTER IS JUST CONSISTENT WITH WHAT THEY

4    TOLD YOU.

5            **THE COURT:**  WITH REGARD TO ONE OF THE FORMS OF

6    RELIEF YOU ARE REQUESTING, AND THAT IS INJUNCTIVE RELIEF TO

7    REUNIFY THE CHILDREN WHO HAVE ALREADY BEEN SEPARATED SO THAT

8    THE FAMILIES CAN BE DETAINED TOGETHER; IF THAT RELIEF WERE

9    GRANTED, WOULDN'T THAT BE GOOD FOR ONLY A 20-DAY PERIOD IN

10   LIGHT OF THE FLORES SETTLEMENT, ABSENT JUDGE GEE MODIFYING.

11           **MR. GELERNT:**  RIGHT.  YOUR HONOR, I AM GLAD YOU

12   ASKED ABOUT THAT, BECAUSE I DO THINK THE GOVERNMENT HAS BEEN

13   PUSHING THAT NARRATIVE AND I THINK THERE IS SOME CONFUSION IN

14   THE MEDIA.  SO I WANT TO BE AS ABSOLUTELY CLEAR AS POSSIBLE

15   ABOUT THE FLORES SETTLEMENT.

16           AND I THINK, YOU KNOW, AS A LEGAL MATTER I AM NOT

17   SURE THAT THE GOVERNMENT FULLY BELIEVES IT, AND I THINK THAT

18   IS WHY THEY RELEGATED THE FLORES DISCUSSION IN THEIR PAPERS

19   BEFORE YOU TO ONE SENTENCE IN A FOOTNOTE.

20           BUT HERE IS, I THINK, THE SITUATION WITH FLORES.

21           FIRST OF ALL, AT A MINIMUM THEY SHOULD BE DETAINING

22   THE CHILDREN FOR THE 20 DAYS.  SO EVEN UNDER THE GOVERNMENT'S

23   UNDERSTANDING OF FLORES THE FAMILIES NEED TO BE REUNITED, AND

24   THEN PEOPLE CAN SEE WHAT HAPPENS AT 20 DAYS.  BUT I DON'T EVEN

25   THINK THE 20 DAYS WILL ULTIMATELY BE RELEVANT FOR THE

JUNE 22, 2018

14

1   FOLLOWING REASONS.

2         MOST FAMILIES ARE RELEASED BEFORE 20 DAYS BECAUSE

3   THEY ARE NOT A FLIGHT RISK OR A DANGER.  AS YOUR HONOR

4   PROPERLY NOTED IN HIS OPINION, THESE ARE ASYLUM SEEKERS, THEY

5   ARE CREDIBLE FEAR, SO MOST ARE GOING TO BE RELEASED.

6         THE OTHER CRITICAL POINT THAT I THINK HAS GOTTEN

7   LOST IN THE MEDIA ACCOUNTS AND GOVERNMENT'S NARRATIVE IS

8   FLORES IS ULTIMATELY, AT THE END OF THE DAY, A SETTLEMENT FOR

9   THE BEST INTEREST OF THE CHILD.  IF A MOTHER IS GOING TO HAVE

10  HER BOND HEARING AT THE 34TH DAY SHE CAN SAY, I DON'T WANT MY

11  TWO-YEAR-OLD CHILD SENT TO SOME FACILITY IN CHICAGO, I WOULD

12  RATHER HAVE MY CHILD STAY WITH ME IN THIS FACILITY.

13        THE FACT THAT THE FACILITY IN CHICAGO MAY HAVE

14  BETTER CRAYONS AND TOYS DOES NOT MEAN SHE HAS TO ALLOW HER

15  CHILD, UNDER FLORES, TO BE FORCED -- TO BE SENT TO CHICAGO,

16  SHE CAN KEEP HER CHILD WITH HER.  I THINK THAT IS SORT OF

17  BASIC SETTLEMENT LAW.  AND THAT THE PARENT CAN ALWAYS SAY,

18  LOOK, THE BEST INTEREST OF MY CHILD IS TO REMAIN WITH ME.

19        FLORES WAS SET UP FOR SITUATIONS WHERE KIDS ARE

20  UNACCOMPANIED OR THE PARENT SAYS, LOOK, THE CHILD IS 15 YEARS

21  OLD AND HE KNOWS HIS UNCLE VERY WELL IN ST. LOUIS, I AM FINE

22  WITH HIM GOING IN 19 DAYS.

23        BUT NOTHING ABOUT FLORES REQUIRED THE RELEASE OF A

24  CHILD AT 19 DAYS OVER A PARENT'S OBJECTION, SO THAT AGAIN

25  BABIES WILL BE RIPPED OUT OF THEIR PARENT'S ARMS AT THE 19TH

JUNE 22, 2018

```
 1    DAY IN THE DETENTION CENTER.

 2              THE COURT:  BUT HOW DOES FLORES PROVIDE PARENTS WITH

 3    ANY RIGHTS.  AS I UNDERSTAND IT, IT IS A DOCUMENT CREATED FOR

 4    THE MINOR ONLY.

 5              MR. GELERNT:  YOUR HONOR, I THINK THAT IS A GOOD

 6    QUESTION.  WHAT I UNDERSTAND FLORES TO DO, I MEAN WHAT, YOU

 7    KNOW -- AND THE NINTH CIRCUIT HAS SAID THIS, HAS SAID IT

 8    DOESN'T PROVIDE THE PARENT WITH ANY RELEASE RIGHTS.  BUT IT

 9    CERTAINLY DOESN'T TAKE AWAY THE PARENT'S RIGHT TO MAKE

10    DECISIONS FOR THE CHILD, YOU KNOW, ESPECIALLY FOR YOUNG

11    CHILDREN.

12              SO THERE IS NO QUESTION THE PARENT CAN SAY, YEAH,

13    MAYBE I CAN'T CITE FLORES TO GET OUT MYSELF, BUT I CERTAINLY

14    CAN SAY, I HAVE -- I MAKE THE DECISIONS FOR MY CHILD AND KNOW

15    WHAT IS IN THE BEST INTEREST OF MY CHILD, AND CAN WAIVE THE

16    FLORES RIGHT TO RELEASE AT THE 19TH DAY.

17              SO YOUR HONOR IS ABSOLUTELY RIGHT, IT DOESN'T

18    PROVIDE RELEASE FOR THE PARENTS, BUT IT DOESN'T REMOTELY

19    SUGGEST A PARENT IS STILL NOT MAKING DECISIONS FOR THE CHILD'S

20    BEST INTEREST SO THAT THE CHILD DOESN'T HAVE TO BE TORN AWAY.

21              AND AGAIN I WOULD CIRCLE BACK, YOUR HONOR, TO WHAT I

22    SAID IN THE BEGINNING, IS THAT WE ARE NOT EVEN AT THAT

23    SITUATION.  I MEAN, THE GOVERNMENT IS NOT SAYING, WE ARE

24    SENDING KIDS TO BE REUNITED FOR 19 DAYS AND THEN THERE IS THE

25    PROBLEM.
```

JUNE 22, 2018

1        I THINK THIS WHOLE -- THIS WHOLE IDEA OF FLORES IS

2   REALLY TO GET RID OF FLORES' OTHER PROTECTIONS FOR KIDS, THAT

3   FACILITIES HAVE TO BE LICENSED AND ALL OF THAT, AND THEY ARE

4   USING THE 19-DAY THING AS SORT OF A TRANSPARENT LOOPHOLE.

5        SO AGAIN, BECAUSE THE PARENT CAN WAIVE THE 19-DAY

6   RELEASE, ESPECIALLY WHEN IT IS A YOUNG CHILD, BECAUSE THE

7   GOVERNMENT DOES AND CAN RELEASE PARENTS WHO ARE NOT A FLIGHT

8   RISK OR A DANGER, ESPECIALLY THE PARENTS WHO HAVE PASSED THE

9   INITIAL ASYLUM SCREENING, I DON'T THINK FLORES IS AN

10  IMPEDIMENT.

11        **THE COURT:**  WITH REGARD TO THE RELIEF THAT YOU ARE

12  REQUESTING AND THE CLASS CERTIFICATION, IF WE CAN MOVE TO THAT

13  FOR A MOMENT.

14        DO YOU CONCEDE THAT THE GOVERNMENT CAN PROPERLY

15  SEPARATE A PARENT FROM A CHILD IF THERE ARE OTHER LEGITIMATE

16  CONSIDERATIONS BEYOND DANGER TO THE CHILD.  THOSE COULD

17  INCLUDE, FOR EXAMPLE, CRIMINAL HISTORY, CONTAGIOUS OR

18  COMMUNICABLE DISEASES, THINGS LIKE THAT.  DO YOU CONCEDE THAT?

19        **MR. GELERNT:**  WELL, YOUR HONOR, I THINK WHAT THAT

20  WOULD DO IS -- I THINK THOSE THINGS, YOU WOULD PUT THEM UNDER

21  THE BEST INTEREST OF THE CHILD OR IF THERE IS A DANGER TO THE

22  CHILD.  SO IF THE PARENT, YOU KNOW, IN THE RARE CASE, HAD A

23  CONTAGIOUS DISEASE THAT WAS GOING TO BE HARMFUL TO THE CHILD

24  AND THERE WAS, YOU KNOW, CLEAR EVIDENCE OF THAT, THEN I THINK

25  OF COURSE, YOUR HONOR.

JUNE 22, 2018

```
1              I THINK WHAT THE COURT ULTIMATELY DOESN'T HAVE TO DO
2    IS MAKE UP ITS OWN SORT OF STANDARD, THAT THERE ARE THE STATE
3    LAW PRACTICES OUT THERE.  AND I THINK THAT IF THE PARENT
4    REALLY WAS A HEALTH DANGER TO THE CHILD THEN YOU MIGHT HAVE
5    SEPARATION.
6              THE ONE THING I WOULD SAY ABOUT CRIMINAL HISTORY IS
7    IF THE PARENT IS A DANGER, BECAUSE OF THEIR CRIMINAL HISTORY,
8    TO THEIR CHILD, THEN THERE CERTAINLY CAN BE A SEPARATION.
9    THAT IS CLEAR UNDER STATE LAW.
10             WHAT I DON'T THINK CAN HAPPEN IS THE GOVERNMENT CAN
11   SIMPLY SAY, WELL, THIS PARENT HAD A DUI OR, YOU KNOW, SOME
12   TRESPASSING CRIMINAL CONVICTION 19 YEARS AGO, AND THEN WE
13   DECIDE IT IS GOING TO BE A DANGER TO THE CHILD.  I MEAN, STATE
14   LAW HAS BEEN DEALING WITH THIS FOR DECADES AND DECADES.  AND
15   IT HAS TO BE A CRIME THAT WOULD SUGGEST THE PARENT IS STILL A
16   DANGER.
17             SO I DON'T THINK THE COURT NEEDS TO CREATE NEW
18   STANDARDS, IT JUST NEEDS TO MAKE CLEAR IN ITS OPINION THAT
19   BEST INTEREST OF THE CHILD IS WHEN THE PARENT IS NEGLECTFUL,
20   UNFIT, OR A DANGER.
21             AND IF THERE IS A RARE CASE WHERE THE GOVERNMENT
22   SAYS, WELL, WE THINK THIS PARENT JUST ENGAGED IN ARMED ROBBERY
23   AND IS REALLY A DANGER TO THE CHILD, I MEAN, THOSE CAN BE
24   WORKED OUT.  AND THERE IS GUIDELINES FOR THAT IN THE AMIKI
25   GUIDELINES.
```

JUNE 22, 2018

```
1            BUT I THINK WHAT IS HAPPENING NOW, YOUR HONOR -- AND
2    I KNOW YOUR HONOR WANTS TO BE CAREFUL ABOUT HOW TO CRAFT THE
3    INJUNCTION, AND WE CERTAINLY DON'T WANT YOU TO HAVE TO WRITE
4    AN INJUNCTION THAT WOULD PROHIBIT THE GOVERNMENT FROM
5    SEPARATING IN THOSE LEGITIMATE CASES.  BUT I THINK NOW WE ARE
6    TALKING ABOUT LITERALLY 2,000 KIDS AND -- OVER 2,000 KIDS, AND
7    THERE ARE NOT THOSE TYPES OF JUSTIFICATIONS.  THEY HAVE JUST
8    BEEN TAKEN AWAY.
9            IF THERE IS A RARE CASE OF A CONTAGIOUS DISEASE, YOU
10   KNOW, WE CAN WORK WITH THE GOVERNMENT, THE GOVERNMENT CAN COME
11   BACK TO YOU.  AND CERTAINLY I DON'T THINK YOU ARE GOING TO
12   CRAFT AN INJUNCTION THAT WOULD PROHIBIT THAT SEPARATION.  BUT
13   RIGHT NOW WE DON'T THINK THAT IS WHAT IS GOING ON.
14           I MEAN, THE OVERWHELMING MAJORITY OF KIDS HAVE JUST
15   BEEN TAKEN AWAY AND ARE SITTING THERE LITERALLY BEGGING TO SEE
16   THEIR PARENTS, AND TO THE EXTENT THEY ARE NOT PRE-VERBAL AND
17   THEY ARE JUST SITTING IN SOME FACILITY CRYING EVERY NIGHT.
18           THE COURT:  WHAT ABOUT CRIMINAL HISTORY, EVEN MINOR
19   CRIMINAL HISTORY, AS IT MIGHT AFFECT THE GOVERNMENT'S DECISION
20   WHETHER OR NOT TO RELEASE, PAROLE, OR BOND OUT IN SOME FASHION
21   A PARENT.  SO SEPARATE AND APART FROM CHILD ENDANGERMENT
22   ISSUES WOULD BE JUST BOND OR PAROLE RELATED ISSUES AND WHETHER
23   A PARENT OUGHT TO BE DETAINED FOR CRIMINAL HISTORY REASONS.
24           MR. GELERNT:  RIGHT, YOUR HONOR.  SO I THINK THAT IS
25   ANOTHER IMPORTANT QUESTION.
```

JUNE 22, 2018

1          WHAT WE WOULD SAY IS, THE PARENT AND CHILD HAVE TO

2     BE REUNITED, AND THEN ULTIMATELY THE PARENT WILL HAVE TO PASS

3     THEIR PAROLE OR BOND HEARING.  AND CRIMINAL CONVICTIONS ARE

4     TAKEN INTO ACCOUNT, AND OTHER INDICIA OF FLIGHT RISK ARE TAKEN

5     INTO ACCOUNT, AND THOSE WILL BE INDIVIDUALIZED.  WE ARE SIMPLY

6     SAYING THAT MOST PARENTS WILL GET OUT.

7          BUT I DON'T THINK YOUR INJUNCTION HAS TO GO ANYWHERE

8     NEAR DECIDING WHETHER THE GOVERNMENT HAS TO RELEASE A

9     PARTICULAR PARENT.  I THINK THERE ARE GUIDELINES IN PLACE, AND

10    THOSE GUIDELINES WILL GOVERN WHETHER ANY PARTICULAR PARENT

11    GETS OUT.  WE ARE SIMPLY SAYING THAT MOST PARENTS, ESPECIALLY

12    ASYLUM SEEKERS, WILL GET OUT BECAUSE THEY ARE AT LEAST SHOWN

13    NOT TO BE A FLIGHT RISK OR A DANGER.  BUT I DON'T THINK YOU

14    NEED TO GO SAY ANYTHING ONE WAY OR THE OTHER ABOUT EXACTLY

15    WHAT TYPE OF CRIMINAL CONVICTION MAY LEAD THE GOVERNMENT TO

16    DENY PAROLE OR NOT.

17          **THE COURT:**  WHAT ABOUT CLASS DEFINITION PURPOSES.

18    DO YOU ARGUE THAT IT SHOULD REMAIN AS DEFINED WHICH COULD

19    INCLUDE PARENTS WITH SOME CRIMINAL HISTORY OR COMMUNICABLE

20    DISEASES.  IT COULD INCLUDE NON ASYLUM SEEKERS WITHIN THE

21    INTERIOR OF THE COUNTRY.  DO YOU STAND ON THE PRESENT

22    DEFINITION?

23          **MR. GELERNT:**  YOUR HONOR, IF I COULD TAKE THOSE ONE

24    AT A TIME.  I THINK I AM JUST STARTING FROM THE LAST ONE,

25    ABOUT ASYLUM SEEKERS.

JUNE 22, 2018

1          YOU ARE RIGHT, WE DID NOT DEFINE THE CLASS AS ONLY

2     ASYLUM SEEKERS.  WE THINK THAT MOST OF THESE INDIVIDUALS ARE

3     ASYLUM SEEKERS.  WE WOULD ASK YOUR HONOR NOT TO LIMIT IT TO

4     ASYLUM SEEKERS ONLY.

5          WE UNDERSTAND THAT YOU FEEL THAT THE ASYLUM SEEKERS

6     ARE A PARTICULARLY POWERFUL CASE.  WE DO THINK, HOWEVER, THERE

7     MAY BE PARENTS WITH OTHER TYPES OF CLAIMS.  AND, YOU KNOW,

8     MAYBE THEY ARE GOING TO LOSE, MAYBE THEY ARE GOING TO WIN, BUT

9     ULTIMATELY TAKING A CHILD AWAY IS ITS OWN DISTINCT HARM.

10          IN TERMS OF THE INJUNCTION NOT ALLOWING YOU -- NOT

11    ALLOWING THE GOVERNMENT TO SEPARATE WHERE THERE IS A DANGER TO

12    THE CHILD, I THINK THAT THAT IS SOMETHING, YOU ARE RIGHT,

13    YOUR HONOR, MAYBE WE DIDN'T DO AS CAREFUL ENOUGH JOB IN

14    SETTING FORTH THE CLASS DEFINITION.  BUT I THINK IF YOUR HONOR

15    WANTS TO MAKE CLEAR THAT THE PARENT IS A DANGER TO THE CHILD

16    WHERE THEY MAY BE ABUSIVE OR NEGLECTFUL OR HAVE A CONTAGIOUS

17    DISEASE OR SOMETHING ALONG THOSE LINES THAT WOULD CONSTITUTE A

18    PERMISSIBLE BASIS FOR SEPARATION UNDER STANDARD CHILD

19    PRACTICES EXERCISED BY THE STATES OR THE FEDERAL GOVERNMENT IN

20    OTHER CONTEXTS, I THINK THAT WOULD BE ABSOLUTELY FINE, YOUR

21    HONOR.

22          **THE COURT:**  ALL RIGHT.  AND THEN ON THE CLASS

23    DEFINITION WITH RESPECT TO CRIMINAL HISTORY, I UNDERSTAND YOU

24    TO BE ARGUING THAT TO THE EXTENT ANY CLASS DEFINITION INCLUDES

25    PARENTS WHO HAVE SOME CRIMINAL HISTORY, HOWEVER MINOR, THEY

JUNE 22, 2018

1  WOULD NEVERTHELESS STILL BE INCLUDED WITHIN THE CLASS.

2        **MR. GELERNT:**  YES, YOUR HONOR.  AND I APOLOGIZE.

3  YOU HAD ASKED ME THAT, AND I DID NOT ADDRESS THAT.

4        I THINK WHAT WE WOULD SAY IS THAT ANY SORT OF

5  CATEGORICAL EXCEPTION FOR A PARENT WITH A CRIMINAL HISTORY

6  WOULD NOT BE PROPER UNDER STATE PRACTICES OR FEDERAL PRACTICES

7  FOR SEPARATING CHILDREN FROM THEIR PARENTS.  WHAT WE WOULD SAY

8  IS WHERE THE CRIMINAL CONVICTION ACTUALLY IS INDICATIVE THAT

9  THE PARENT IS A DANGER TO THE CHILD, THEN THAT WOULD OBVIOUSLY

10 BE A BASIS FOR SEPARATION WHERE THE GOVERNMENT COULD SHOW IF

11 THIS PARENT HAS COMMITTED A CRIME AND THAT CRIME IS INDICATIVE

12 OF DANGER.  BUT WE CERTAINLY WOULDN'T WANT THE GOVERNMENT TO

13 SAY, LOOK, TEN YEARS AGO IN EL SALVADOR THIS PARENT HAD A

14 BURGLARY CONVICTION.  THAT WOULD NOT SUGGEST THAT THEY ARE A

15 DANGER TO THEIR OWN CHILD.

16       WE WOULD ASK YOU THAT YOU NOT PUT IN AN EXCEPTION

17 FOR CRIMINAL CONVICTIONS, BUT JUST MAKE CLEAR THAT IF THE

18 PARENT'S CRIMINAL CONVICTION ACTUALLY DID SUGGEST THAT THE

19 PARENT WAS A DANGER TO THEIR OWN CHILD, THEN THAT WOULD, OF

20 COURSE, BE A PERMISSIBLE BASIS FOR SEPARATION IF THE

21 GOVERNMENT ACTUALLY HAD EVIDENCE OF THAT.

22       **THE COURT:**  ON THE PRESENT CASE IT APPEARS THE FOCUS

23 IS, BY AND LARGE, ON THOSE WHO ARE APPREHENDED AT THE BORDER,

24 EITHER AT THE PORT OF ENTRY OR BETWEEN PORTS OF ENTRY.

25       DO YOU HAVE ANY IDEA HOW MANY POTENTIAL CLASS

JUNE 22, 2018

22

1    MEMBERS COULD BE IN THE INTERIOR OF THE COUNTRY WHO MIGHT BE

2    ASYLUM OR NON ASYLUM SEEKERS?

3            **MR. GELERNT:**  RIGHT.  YOUR HONOR, I APOLOGIZE.  I

4    KNOW YOU ASKED ME THAT BEFORE AND I DID NOT ADDRESS THAT.

5            WE DO NOT KNOW.  AND IF YOUR HONOR FELT THAT THERE

6    WASN'T A SUFFICIENT RECORD BEFORE HIM TO DEAL WITH THE

7    INTERIOR NOW, THAT WOULD BE UNDERSTANDABLE.  WE WOULD TRY TO

8    FIGURE THAT OUT.  I MEAN, THE GOVERNMENT REALLY IS THE ONE WHO

9    HAS THAT INFORMATION.  WE WOULD TRY AND WORK WITH THE

10   GOVERNMENT TO GET THAT INFORMATION AND SUBMIT IT TO YOU.  AND

11   MAYBE WE WOULD HAVE TO FOLLOW UP, SEEK AN INJUNCTION IF IT

12   TURNS OUT THERE IS MANY, MANY SEPARATIONS IN THE INTERIOR.

13           I THINK FOR PRESENT PURPOSES IF YOU WANTED TO LIMIT

14   IT TO THE BORDER AND WHAT IS GOING ON AT THE BORDER, THAT

15   WOULD BE SATISFACTORY TO US, GIVEN THAT WE RECOGNIZE WE ARE

16   ASKING YOU TO RULE URGENTLY.  AND WE CERTAINLY DON'T WANT YOU

17   TO GET OUT AHEAD OF THE RECORD.

18           **THE COURT:**  ALL RIGHT.

19           LET ME TURN, IF I MIGHT, TO GOVERNMENT COUNSEL.  I

20   ASSUME THAT WILL BE MS. FABIAN.

21           WHAT IS YOUR POSITION WITH RESPECT TO THE EXECUTIVE

22   ORDERS.  ARE THERE ANY ISSUES ALIVE AND WELL?  DO YOU CONCEDE

23   THAT THE ISSUES PRESENTED IN THIS LAWSUIT, WITH MS. L. AND THE

24   INITIAL SEPARATION AND MS. C., THE REUNIFICATION ISSUE, ARE

25   ALIVE AND WELL?  WHAT IS THE GOVERNMENT'S POSITION?

JUNE 22, 2018

1          **MS. FABIAN:**  YOUR HONOR, THE GOVERNMENT DOESN'T HAVE

2     A POSITION NECESSARILY TO SAY THAT THOSE ISSUES AREN'T ALIVE

3     AND WELL.  WHAT I THINK THE CONVERSATION WE ARE HAVING TODAY

4     MAKES CLEAR IS THAT PLAINTIFFS ARE PERHAPS ROUNDABOUT BUT

5     ASKING THIS COURT TO CONSIDER A LOT OF DEVELOPMENTS THAT HAVE

6     OCCURRED SINCE WE SPOKE ON MAY 4TH.  TO THE EXTENT THAT IT HAS

7     BECOME NOT POSSIBLE FOR THE COURT TO PROCEED ON THOSE ISSUES

8     WITHOUT CONSIDERING RECENT DEVELOPMENTS, I WOULD AGREE WITH

9     THE COURT'S EARLIER SUGGESTION THAT IT WOULD BE NECESSARY FOR

10    PLAINTIFFS TO PUT THOSE DEVELOPMENTS THAT THEY WANT TO HAVE

11    THE COURT CONSIDER ON TO THE RECORD AND GIVE THE GOVERNMENT

12    THE OPPORTUNITY TO RESPOND.

13          I THINK IT IS IMPORTANT TO REMEMBER, ALSO, WE HAVE

14    EVEN FROM THE BEGINNING -- AND THIS GOES TO ALSO THE CLASS

15    CERTIFICATION ISSUE -- YOU HAVE TWO VERY DIFFERENT NAMED

16    PLAINTIFFS, YOU HAD TWO DIFFERENT EXPERIENCES BASED ON

17    SEPARATION.  I THINK WE BRIEFED THAT QUITE A BIT BUT PERHAPS

18    RECENT EVENTS DO HIGHLIGHT THE DIFFERENT ISSUES RELATING TO

19    SEPARATION IN DIFFERENT CIRCUMSTANCES AND HOW PLAINTIFFS'

20    BROAD REQUEST FOR A SINGULAR SOLUTION AND A SINGULAR

21    INJUNCTION FROM THE COURT COULD BE PROBLEMATIC AND COULD BE

22    DIFFICULT TO CRAFT.

23          SO I THINK, YOU KNOW, AS I UNDERSTAND IT, THE

24    PLAINTIFFS DO INTEND TO AMEND THEIR COMPLAINT, AS OFFERED BY

25    THE COURT, ON JULY 3RD.  AND I DON'T KNOW IF THEY INTEND TO

1    RAISE NEW ISSUES OR IF THEY ARE SIMPLY GOING TO BE ADDRESSING
2    THE ISSUES THAT WERE -- THAT WERE FOUND DEFICIENT BY THE COURT
3    IN THE ORDER.
4         BUT IT SEEMS TO ME THAT IF WE ARE -- IF THE COURT IS
5    LOOKING AT AN INJUNCTION THAT CONSIDERS ANYTHING THAT HAS
6    OCCURRED SINCE MAY 4TH THEN IT IS IMPORTANT TO ALLOW THE
7    PARTIES TO PUT THAT IN THE RECORD, TO ASK PLAINTIFFS TO TELL
8    THE COURT WHAT THEY WANT THE COURT TO CONSIDER AND GIVE THE
9    GOVERNMENT THE OPPORTUNITY TO RESPOND.
10        AND I THINK THE EXECUTIVE ORDER FALLS WITHIN THAT
11   PURVIEW.  IT IS HARD TO SAY ITS EFFECTS ON THE EXISTING CASE
12   WITHOUT TALKING ABOUT THE EVENTS THAT LED TO THAT ORDER.
13        **THE COURT:**  DO YOU CONCEDE THAT THE EXECUTIVE ORDER,
14   BECAUSE IT IS A DIRECTIVE TO STOP FAMILY SEPARATION, IS AN
15   ADMISSION ON THE PART OF THE GOVERNMENT THAT THE PRACTICE AS
16   ALLEGED BY THE PLAINTIFFS IN FACT EXISTED?
17        **MS. FABIAN:**  I DON'T THINK I COULD SAY THAT
18   SPECIFICALLY, YOUR HONOR.  I THINK THE EXECUTIVE ORDER
19   ADDRESSED A POLICY THAT WAS ANNOUNCED AFTER THIS CASE BEGAN.
20        WE HAVE ACKNOWLEDGED AND WE HAVE DISCUSSED WITH YOUR
21   HONOR THE SEPARATIONS THAT OCCURRED FOR THE TWO NAMED
22   PLAINTIFFS AND THE CIRCUMSTANCES IN WHICH THOSE SITUATIONS
23   OCCUR.  I DON'T THINK THERE IS ANY QUESTION THAT IN THE CASE
24   OF BOTH NAMED PLAINTIFFS THERE WAS A SEPARATION BETWEEN THE
25   PARENT AND THE CHILD.  AND, AS WE ARGUED, BOTH OF THOSE

JUNE 22, 2018

```
1   SEPARATIONS OCCURRED --
2              (PHONE INTERFERENCE)
3         SORRY.  BOTH OF THOSE SEPARATIONS --
4         I AM GOING TO PAUSE FOR A SECOND.
5         YOUR HONOR, DO I STILL HAVE YOU?
6         THE COURT:  YES, I AM STILL HERE.
7         I AM ASSUMING MR. GELERNT IS STILL ON THE LINE.
8         MR. GELERNT:  YES.
9         MS. FABIAN:  AM I THE ONLY ONE -- I AM HEARING
10  RINGING.
11        THE COURT:  YES.  WE WILL SEE IF WE CAN FIX THAT,
12  BUT GO AHEAD WITH YOUR ARGUMENT.
13        MS. FABIAN:  SORRY, I HAVE LOST MY PLACE A BIT.
14        YOU KNOW, AS WE TALKED ABOUT WITH THE TWO NAMED
15  PLAINTIFFS EACH -- SEPARATION DID OCCUR IN EACH --
16              (PHONE INTERFERENCE)
17        THE SEPARATION WAS INCIDENT TO OTHER IMMIGRATION
18  ACTIONS.  THAT CONTINUES TO BE THE CASE, AND IT MAY BE A PART
19  OF EVENTS THAT HAVE OCCURRED SINCE THEN.  BUT --
20              (PHONE INTERFERENCE)
21        AS LONG AS THOSE EVENTS -- TO THE EXTENT THEY HAVE
22  AFFECTED THE WAY THE COURT MAY LOOK AT THOSE -- AT THOSE
23  IMMIGRATION ACTIONS, I THINK IT IS IMPORTANT THAT FURTHER
24  BRIEFING BE CONDUCTED BEFORE THE COURT TAKES ANY ACTION.
25        THE COURT:  ALL RIGHT.  LET'S PAUSE FOR JUST A
```

1    MOMENT.  MAYBE WE CAN --

2            **MR. GELERNT:**  DO YOU WANT US TO DIAL BACK IN, YOUR

3    HONOR?

4            **THE COURT:**  I AM NOT SURE WHAT HAS HAPPENED.  NO ONE

5    IS CALLING IN, FROM THE RECORD WE HAVE, SO I AM NOT SURE WHAT

6    IS CAUSING THAT DIAL TONE.

7            I AM A LITTLE RELUCTANT TO START THE CONFERENCE CALL

8    AGAIN, GIVEN THE NUMBER OF PARTICIPANTS WE HAVE ONLINE, BUT I

9    AM NOT SURE THIS IS GETTING ANY BETTER.  SO I THINK MR.

10   GELERNT HAS A GOOD SUGGESTION.  WHY DON'T WE ALLOW EVERYONE AN

11   OPPORTUNITY TO DIAL BACK IN, AND SEE IF WE CAN GET A CLEAR

12   LINE.

13           **MR. GELERNT:**  OKAY.  THANK YOU.

14           **THE COURT:**  YOU ARE WELCOME.  I WILL REMAIN ON THE

15   BENCH PENDING THE CALLS IN.

16                   **(PAUSE IN PROCEEDINGS)**

17           **THE CLERK:**  RE-CALLING NO. 12 ON CALENDAR, CASE NO.

18   18CV0428, MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS

19   ENFORCEMENT; ON FOR STATUS CONFERENCE.

20           **THE COURT:**  OKAY.  GOOD AFTERNOON AGAIN.  I WANT TO

21   MAKE SURE THAT I HAVE THE ATTORNEYS ON THE LINE.

22           DO I HAVE MS. FABIAN AND MR. BETTWY, AS WELL AS MR.

23   GELERNT AND MR. VAKILI?

24           **MR. GELERNT:**  YES, YOUR HONOR.  MR. GELERNT IS ON.

25   THANK YOU.

JUNE 22, 2018

1          **THE COURT:**  ALL RIGHT.

2          **MR. VAKILI:**  MR. VAKILI IS ON, YOUR HONOR.  THANK

3   YOU.

4          **MS. FABIAN:**  THIS IS SARAH FABIAN, I AM ON.

5          **THE COURT:**  ALL RIGHT.  IS MR. BETTWY WITH US?

6          OKAY.  THEN WE WILL PROCEED WITH JUST MS. FABIAN.

7          I BELIEVE WE HAVE MOST, IF NOT ALL, OF THE MEDIA

8   BACK ON, SO I AM GRATEFUL THAT WE WERE ABLE TO GET THE

9   CONFERENCE CALL BACK IN ORDER.

10          WHERE WE LEFT OFF, MS. FABIAN WAS ADDRESSING SOME

11   ISSUES.  NOW, BEFORE I ASK THE NEXT QUESTION, MS. FABIAN, DID

12   YOU WANT TO COMPLETE ANYTHING YOU WERE SAYING BEFORE WE WERE

13   INTERRUPTED?

14          **MS. FABIAN:**  NOT THAT I RECALL, YOUR HONOR.  I

15   APOLOGIZE.

16          **THE COURT:**  ALL RIGHT.

17          WITH RESPECT TO THE EXECUTIVE ORDER, IT PUTS AN END

18   TO FAMILY SEPARATION.  IT ALSO CONTEMPLATES THAT CRIMINAL

19   PROSECUTION WILL CONTINUE.  AND THAT IF FAMILIES ARE

20   APPREHENDED AT THE BORDER THAT I AM ASSUMING THE GOVERNMENT IS

21   SUGGESTING, THROUGH THE EXECUTIVE ORDER, THAT THE FAMILIES

22   WILL BE DETAINED TOGETHER IN SOME FASHION.  IF SO, HOW IS THAT

23   GOING TO WORK, BECAUSE ONE OF THE CENTRAL ISSUES IN THIS CASE

24   AND ONE OF THE CENTRAL CONCESSIONS IN THIS CASE AS TO

25   PLAINTIFF MS. C. WAS THAT SHE WAS NOT CONTESTING HER INITIAL

JUNE 22, 2018

1    SEPARATION, CONCEDING THAT UNDER EXISTING LAW IF THE

2    GOVERNMENT ELECTED TO PROSECUTE FOR CRIMINAL ILLEGAL ENTRY IT

3    WOULD NECESSARILY EFFECTUATE A SEPARATION BETWEEN PARENT AND

4    CHILD FOR THE PERIOD OF TIME THAT MS. C. WAS IN CRIMINAL

5    CUSTODY.  AND THEN, OF COURSE, THE ARGUMENT WAS ONCE SHE

6    COMPLETED HER CRIMINAL SENTENCE AND WAS RETURNED TO

7    IMMIGRATION DETENTION SHE WAS ENTITLED TO REUNIFICATION.

8          SO I GUESS THE INITIAL QUESTION IS, IS THIS ZERO

9    TOLERANCE POLICY CONTINUING; AND, IF SO, HOW DOES THE

10   GOVERNMENT NOT SEPARATE PARENT AND CHILD UNDER THE CURRENT

11   STATUTORY MECHANISM WHICH PROVIDES, OF COURSE, THAT CHILDREN

12   CANNOT BE DETAINED IN CUSTODY WITH THEIR PARENTS WHILE THEY

13   ARE UNDERGOING CRIMINAL PROCEEDINGS.

14         **MS. FABIAN:**  I AM NOT SURE I CAN ANSWER ALL OF THOSE

15   QUESTIONS TODAY, YOUR HONOR.  I THINK THAT IS -- SOME OF THE

16   IMPLEMENTATION QUESTIONS ARE STILL UNDERWAY.  AND THAT I JUST

17   DON'T HAVE THE INFORMATION TO ANSWER ALL OF THOSE QUESTIONS

18   TODAY.

19         WHAT I WOULD SAY IS THAT TO THE EXTENT THE POLICY

20   THAT WE ARE TALKING ABOUT WAS IMPLEMENTED SINCE THIS CASE WAS

21   BRIEFED AND ARGUED THAT THAT IS -- IF THAT IS SOMETHING THAT

22   THE COURT WANTS PUT BEFORE THE COURT FOR CONSIDERATION, I

23   THINK THAT THAT NEEDS TO BE BROUGHT INTO THE CASE THROUGH

24   BRIEFING BY THE PLAINTIFFS AND RESPONSIVE BRIEFING BY THE

25   DEFENDANT.

JUNE 22, 2018

```
 1              BUT I TAKE THE COURT'S POINT THAT AT THE TIME WHEN
 2    WE WERE TALKING ABOUT MS. C.'S CASE, MS. C. WAS SEPARATED DUE
 3    TO A PROSECUTION.  MY RECOLLECTION IS THAT SHE WAS SENTENCED
 4    TO A PERIOD OF THREE DAYS, AND THAT AT THAT TIME IT WAS
 5    NECESSARY TO EFFECTUATE A SEPARATION.
 6              I JUST CAN'T SPEAK TO THE CHANGES WITH THE NEW
 7    POLICY AND TO THE EXTENT THAT THAT CREATED ADDITIONAL
 8    PROSECUTIONS, AND THEN THE FURTHER EFFECT OF THE EXECUTIVE
 9    ORDER ON THAT DETENTION.  I CAN'T SPEAK TO THAT TODAY.
10              THE COURT:  ALL RIGHT.
11              WITH RESPECT TO THE REUNIFICATION ISSUE, I INQUIRED
12    LAST TIME WHETHER THERE WAS ANY MECHANISM THAT THE GOVERNMENT
13    HAS BETWEEN AND AMONG ITS AGENCIES TO AFFIRMATIVELY REUNIFY;
14    THAT IS H.H.S. AND O.R.R. COMMUNICATING IN SOME INTELLIGENT
15    MANNER WITH OTHER GOVERNMENT AGENCIES UNDER THE UMBRELLA OF
16    D.H.S., LIKE ICE OR B.O.P., SUCH THAT THE PARENT IS AWARE
17    WHERE HIS OR HER CHILD IS.  AND THAT THERE IS A MECHANISM UPON
18    COMPLETION OF HIS OR HER CRIMINAL SENTENCE THAT THE GOVERNMENT
19    CAN BEGIN A REUNIFICATION PROCESS.
20              SO THERE ARE TWO QUESTIONS HERE.  ONE, IS THERE
21    CURRENTLY ANY COMMUNICATION BETWEEN H.H.S. AND, FOR EXAMPLE,
22    D.H.S. OR B.O.P.; AND, NUMBER TWO, IS THERE ANY AFFIRMATIVE
23    REUNIFICATION PROCESS THAT THE GOVERNMENT HAS IN PLACE ONCE
24    PARENT AND CHILD ARE SEPARATED.
25              MS. FABIAN:  I WOULD SAY, YOUR HONOR, WHEN WE SPOKE
```

JUNE 22, 2018

1    ABOUT THAT INITIALLY, I THINK MY ANSWER -- I RECALL THAT IT

2    WAS A MORE NARROW QUESTION; AND THAT WAS, WHEN A PARENT IS

3    RELEASED FROM CRIMINAL CUSTODY AND TAKEN INTO ICE CUSTODY IS

4    THE PRACTICE TO REUNITE THEM IN FAMILY DETENTION.  AND AT THAT

5    TIME I SAID NO, THAT THAT WAS NOT THE PRACTICE.

6            I THINK MY ANSWER ON THAT NARROW QUESTION WOULD BE

7    THE SAME.  I THINK WHAT YOU ARE ASKING NOW IS A BROADER

8    QUESTION.  AND ONE THING THAT HAS TO BE CONSIDERED WITH THAT

9    QUESTION IS THE NUMBER OF DIFFERENT WAYS, AGAIN, THAT A

10   SEPARATION COULD BE EFFECTED, AND THAT IS A SEPARATION DUE TO

11   A DETERMINATION OF DANGER AS OPPOSED TO A SEPARATION THAT MAY

12   RESULT FROM PROSECUTION.

13           ALL OF WHICH GOES TO SAY I STILL THINK ON A BROAD --

14   AS A BROAD MATTER THERE IS NOT A SINGULAR ACTION OF SEPARATION

15   THAT -- IN WHICH, THEN, THE RESPONSE FOR PROCEDURALLY WOULD

16   BE -- WOULD BE THE SAME FOR ALL CASES.  SO THAT IS SORT OF THE

17   PRECURSOR TO MY ANSWER.

18           THERE ARE PROCEDURES BY WHICH O.R.R. THEN RELEASES

19   MINORS TO THE CUSTODY OF A PARENT WHO HAS BEEN RELEASED FROM

20   CUSTODY, AND THOSE ARE THE PROCEDURES UNDER THE T.V.P.R.A. FOR

21   REUNIFICATION.  WHETHER THERE IS -- IN LIGHT OF ADDITIONAL

22   SEPARATIONS WHETHER THERE ARE ADDITIONAL PROCEDURES THAT CAN

23   BE PUT IN PLACE TO IMPROVE THOSE PROCEDURES OR EXPEDITE THOSE

24   PROCEDURES, I THINK THAT IS SOMETHING THAT IS THE SUBJECT OF

25   ONGOING DISCUSSION.  BUT AT THE MOMENT THE PROCESS IS THE

JUNE 22, 2018

1    SAME, AND IT IS THE RELEASE PROCESS UNDER THE T.V.P.R.A.

2              AS FAR AS COMMUNICATIONS BETWEEN O.R.R. AND D.H.S.,

3    I THINK -- I KNOW THAT THERE ARE COMMUNICATIONS.  I THINK TO

4    THE EXTENT THAT THAT IS SOMETHING THE COURT WANTS TO CONSIDER,

5    I THINK -- AS WITH MUCH OF THIS, I THINK THAT THIS IS

6    SOMETHING THAT THE COURT WOULD -- WHAT THE GOVERNMENT WOULD

7    SUGGEST IS THAT THE COURT SHOULD TAKE -- GIVE THE OPPORTUNITY

8    FOR BRIEFING AND PERHAPS THE SUBMISSION OF EVIDENCE OR A

9    HEARING OR SOMETHING TO THAT EXTENT.  BECAUSE I DON'T THINK

10   THAT I CAN MAKE ANY REPRESENTATIONS TODAY THAT WOULD BE

11   SUFFICIENT FOR THE COURT TO BE ABLE TO RELY ON.

12              **THE COURT:**  YOU MENTIONED THAT THERE IS SOME

13   COMMUNICATION BETWEEN O.R.R. AND D.H.S. AGENCIES.  WHAT ARE

14   THOSE?

15              **MS. FABIAN:**  WHEN A CHILD IS SEPARATED OR IS --

16   REGARDLESS, WHEN D.H.S. IS GOING TO TRANSFER A CHILD TO THE

17   CUSTODY OF O.R.R. THERE IS A PORTAL THAT IS USED TO

18   ESSENTIALLY MAKE THAT REQUEST FOR A SPACE TO BE PROVIDED BY

19   O.R.R.

20              SO IN THAT D.H.S. WILL PUT THE INFORMATION REGARDING

21   THE CHILD, REGARDING -- GENERALLY THAT WILL NOTATE THAT.  IF

22   IT HAS BEEN A SEPARATION THE SAME PORTAL WOULD ALSO BE USED

23   FOR A U.A.C., BUT GENERALLY IN THAT THERE WOULD BE PROVIDED

24   INFORMATION OF A SEPARATION.  SO THAT INFORMATION, THEN, IS

25   ABLE TO BE SHARED WITH O.R.R. AND O.R.R. IS ABLE TO BE AWARE

JUNE 22, 2018

1  OF THAT.

2         I DO KNOW THAT O.R.R. WILL THEN, WHEN THEY TAKE

3  CUSTODY OF THE CHILD, WHEN THEY ARE AWARE THAT THE CHILD WAS

4  SEPARATED FROM THE PARENT, FOLLOW UP AND MAKE EFFORTS TO ALLOW

5  THE CHILD TO COMMUNICATE BACK WITH THEIR PARENT THROUGH D.H.S.

6         **THE COURT:**  DO YOU KNOW WHETHER THAT IS OCCURRING?

7  WHAT YOU HAVE OUTLINED IS A MECHANISM BY WHICH D.H.S.

8  COMMUNICATES WITH O.R.R., BUT IS THERE COMMUNICATION FROM

9  O.R.R. TO D.H.S. WHICH WOULD HELP ASSIST REUNIFICATION?  DO

10 YOU KNOW THAT TO BE A FACT?

11        **MS. FABIAN:**  THERE IS A RECENT MEMORANDUM OF

12 UNDERSTANDING BETWEEN O.R.R. AND D.H.S. IN WHICH D.H.S. DOES

13 ASSIST O.R.R. IN OBTAINING INFORMATION FOR THE SUITABILITY

14 ANALYSIS WHEN O.R.R. IS RELEASING A MINOR.  SO TO SOME EXTENT

15 THAT DOES PROVIDE SOME AVENUE FOR COMMUNICATION.

16        I DON'T -- TODAY I DON'T WANT TO MISREPRESENT

17 EXACTLY WHETHER THERE IS A FORMAL POLICY.  I BELIEVE THERE IS

18 COMMUNICATION, BUT WHETHER THERE IS SORT OF A FORMAL AVENUE OF

19 COMMUNICATION, I CAN'T SPEAK TO THAT TODAY.

20        AGAIN, I WOULD SAY -- ASK FOR THE OPPORTUNITY TO

21 SUBMIT TO THE COURT SOMETHING IN THE FORM OF BRIEFING OR

22 ANOTHER EVIDENTIARY SUBMISSION ON THAT.

23        **THE COURT:**  BUT WHEN THE O.R.R. CONSIDERS RELEASE TO

24 THE PARENT OR AN APPROPRIATE GUARDIAN UNDER THE T.V.P.R.A.,

25 THAT OFTEN OCCURS.  AND WITH RESPECT TO RELEASE TO A PARENT IT

JUNE 22, 2018

1    ONLY OCCURS, FROM MY UNDERSTANDING, WHEN THE PARENT INITIATES

2    THE EFFORT TO REUNIFY.  IS THAT CORRECT?

3                **MS. FABIAN:**  I BELIEVE THAT IS THE TRADITIONAL WAY,

4    AND IT IS FREQUENTLY THE WAY THAT THAT IS INITIATED.

5                I UNDERSTAND THAT O.R.R. WILL ALSO, IF THEY ARE

6    AWARE THAT THE CHILD HAS A PARENT, THEY WILL MAKE EFFORTS TO

7    REACH OUT TO THE PARENTS.

8                NOW, WHETHER O.R.R. HAS THE MECHANISM TO DISCOVER

9    WHEN THE PARENT IS RELEASED FROM CUSTODY, I DON'T BELIEVE THEY

10   DO.  BUT O.R.R. WILL MAKE EFFORT IF THE CASE WORKER AT O.R.R.

11   IS AWARE THAT THE CHILD HAS BEEN SEPARATED FROM A PARENT.  OR

12   EVEN THAT, FOR EXAMPLE, IF THE CHILD COMES INTO THE COUNTRY

13   WITH THE PHONE NUMBER OF A RELATIVE, O.R.R. WILL MAKE EFFORTS

14   TO REACH OUT TO THAT RELATIVE AND FACILITATE THE

15   REUNIFICATION.

16               SO I THINK THE SAME PROCESS WOULD BE USED IF O.R.R.

17   IS AWARE THAT THE CHILD WAS SEPARATED FROM A PARENT, O.R.R.

18   WILL MAKE SIMILAR EFFORTS TO LOCATE THE PARENTS AND TO

19   FACILITATE REUNIFICATION THAT WAY.

20               **THE COURT:**  O.R.R. IS NOT NOTIFIED BY D.H.S. OR

21   B.O.P. WHEN A PARENT IS RELEASED FROM CRIMINAL CUSTODY, IS IT?

22               **MS. FABIAN:**  NOT TO MY KNOWLEDGE.

23               **THE COURT:**  THE REUNIFICATION PROCESS, THEN, OCCURS,

24   IF AT ALL, BASED ON THE PARENT'S EFFORT TO LOCATE AND TRACK

25   DOWN THEIR CHILD.  AM I CORRECT?

JUNE 22, 2018

 1          **MS. FABIAN:**  WELL, AS I SAID, I BELIEVE O.R.R. -- IF

 2  O.R.R. IS AWARE OF A PARENT THEY WILL TAKE STEPS TO LOCATE

 3  THEM, AND ALSO WORK WITH THE PARENT TO BEGIN THAT

 4  REUNIFICATION PROCESS.

 5          SO I WOULDN'T SAY IT IS ONLY IF THE PARENT INITIATES

 6  ACTION, I WOULD SAY THAT O.R.R. WILL TAKE STEPS.  BUT I

 7  ACKNOWLEDGE THAT THERE MAY BE TIMES, AS YOU SUGGEST, THAT

 8  O.R.R. WOULD NOT BE AWARE THAT THE PARENT WAS -- HAD BEEN

 9  RELEASED OR OTHERWISE WOULD NOT BE AWARE OF THE NEED TO

10  COMMUNICATE TO THE PARENT.

11          **THE COURT:**  I ASK BECAUSE THERE IS A DISTRICT COURT

12  CASE IN THE WESTERN DISTRICT OF TEXAS WHICH SETS OUT THE

13  PROBLEM GIVEN THE FAILURE OF COMMUNICATION WITH CRIMINAL

14  DETAINEES.  THEY ARE APPEARING IN COURT ON MISDEMEANOR CHARGES

15  AND THEY DON'T KNOW WHERE THEIR CHILD IS, NOR DOES THE

16  ATTORNEY, NOR DOES ANYONE IN THE COURTHOUSE.

17          AND THE OPINION BY THE MAGISTRATE JUDGE IN THAT CASE

18  SETS OUT A HISTORY OF JUST A LACK OF COMMUNICATION BETWEEN

19  O.R.R. AND THE PROSECUTORIAL ARM OF THE FEDERAL GOVERNMENT,

20  WHETHER IT IS B.O.P. OR OTHER D.H.S. ACTORS.  THAT IS

21  CONSISTENT WITH A LACK OF COMMUNICATION BETWEEN THE AGENCIES.

22          DO YOU HAVE ANY INFORMATION TO THE CONTRARY; IN

23  OTHER WORDS, THAT THERE IS OPEN COMMUNICATION OR ANY

24  COMMUNICATION AT ALL BETWEEN, FOR EXAMPLE, O.R.R. AND B.O.P.

25  SUCH THAT PEOPLE WHO ARE CONTINUING TO BE CHARGED AND APPEAR

JUNE 22, 2018

1    IN COURT CAN FIND OUT OR HAVE ACCESS TO INFORMATION THAT WOULD

2    REVEAL WHERE THEIR CHILD IS?

3          **MS. FABIAN:**  I CAN'T SAY TODAY THAT THERE IS A

4    FORMALIZED PROCESS FOR THAT.  I CAN SAY THAT I BELIEVE EFFORTS

5    ARE BEING MADE IN THAT DIRECTION, BUT I WOULDN'T SUBMIT TODAY

6    THAT THERE IS A FORMALIZED PROCESS FOR THAT COMMUNICATION.

7          **THE COURT:**  ALL RIGHT.

8          MR. GELERNT, IN THIS CASE, MS. C. HAS CONCEDED THAT

9    THE INITIAL SEPARATION IS LAWFUL UNDER THE CURRENT STATE OF

10   LAW BECAUSE THE CRIMINAL PROSECUTION NECESSARILY SEPARATES THE

11   PARENT FROM THE CHILD.  THAT IS STILL THE STATE OF LAW, UNLESS

12   THE FLORES DECISION IS SOMEHOW MODIFIED.  DO YOU AGREE?

13         **MR. GELERNT:**  YES, YOUR HONOR.  WE DON'T TAKE BACK

14   THAT CONCESSION.  THE ONLY THING I WANTED TO DO IS CLARIFY ONE

15   THING THAT MAY BE GOING ON WITH THIS E.O. AND NEW PRACTICE,

16   BUT I DON'T THINK IT REMOTELY CHANGES YOUR ANALYSIS IN THE

17   FIRST OPINION, WHICH IS RECOGNIZING THAT WE CONCEDED THAT THE

18   CHILD CANNOT GO INTO A CRIMINAL JAIL.  BUT ONCE THEY GET OUT,

19   THE PARENT SHOULD -- ONCE THE PARENT GETS OUT THEY SHOULD BE

20   REUNITED WITH THE CHILD.  AND AT THAT POINT, FOR PURPOSES OF

21   OUR DUE PROCESS CLAIM, MS. L. AND MS. C. ARE SIMILARLY

22   SITUATED.

23         THE ONLY THING THAT I THINK CAN HAPPEN IS THAT EVEN

24   THOUGH THE PARENT IS BEING PROSECUTED AND THEREFORE

25   TECHNICALLY UNDER CRIMINAL CUSTODY, IT IS MY UNDERSTANDING

JUNE 22, 2018

36

1   THAT BECAUSE THESE ARE BASICALLY TIME-SERVED, THE PARENT IS

2   HELD THE NIGHT BEFORE THE HEARING AND THEN GOES THROUGH A SORT

3   OF STREAMLINED HEARING AND PLEADS GUILTY.  THAT THE PARENT CAN

4   BE HELD IN ACTUALLY A D.H.S. FACILITY WHERE KIDS ARE ALLOWED,

5   EVEN THOUGH THE PARENT IS BEING PROSECUTED.  AND SO IF THAT

6   HAPPENS, OBVIOUSLY THERE IS NO NEED FOR THAT INITIAL

7   SEPARATION.

8         BUT YOUR OVERALL POINT IS EXACTLY RIGHT.  WE DO NOT

9   TAKE BACK THAT CONCESSION.  IF THE PARENT IS PROSECUTED AND

10  PUT IN A JAIL, YOU KNOW, A CRIMINAL FACILITY, THAT SEPARATION

11  IS NOT SOMETHING WE ARE CHALLENGING IN THIS CASE.  WE SIMPLY

12  WANT THE CHILD BACK.  THE PARENT HAS TO BE REUNITED AFTER THEY

13  STEP OUT.

14        AND JUST GOING TO YOUR QUESTIONS ABOUT THE O.R.R.

15  PROCESS.  I MEAN, I THINK YOU HEAR FROM THE GOVERNMENT THAT

16  THEY HAVEN'T PUT INTO PLACE AN EXPEDITED MECHANISM FOR

17  REUNITING THESE CHILDREN.  AND THESE ARE VERY DIFFERENT

18  CHILDREN THAN WHAT O.R.R. IS USED TO SEEING, AN OLDER TEENAGER

19  COMING AS AN UNACCOMPANIED CHILD AND THEY ACTUALLY HAVE TO

20  FIND A LEGITIMATE SPONSOR.  THESE ARE LITTLE CHILDREN WHO HAVE

21  BEEN TORN FROM THEIR PARENTS, ARE TRAUMATIZED, ESSENTIALLY

22  TERRORIZED.  AND THAT PROCESS NEEDS TO BE MUCH QUICKER, AND

23  O.R.R. SHOULD NOT BE HAVING TO DO THIS MAJOR INVESTIGATION

24  JUST TO RETURN THEM TO THE PARENT, ASSUMING THEY EVEN KNOW

25  WHERE THE PARENT IS.


JUNE 22, 2018

1          SO WE ARE NOT ASKING, OBVIOUSLY, TO MICROMANAGE THE

2    PROCESS, ONLY THAT YOUR HONOR ORDER THAT IT BE HAPPENING

3    EXPEDITED AND WITHIN 30 DAYS; WHICH I THINK SHOULD BE

4    PERFECTLY REASONABLE IF THE GOVERNMENT HAS DONE WHAT THEY ARE

5    SUPPOSED TO DO AND AT LEAST TRACK, IN SOME MINIMAL WAY, WHERE

6    THE PARENTS AND KIDS ARE.

7          **THE COURT:**  THAT KIND OF OVERARCHING INJUNCTIVE

8    RELIEF THAT YOU REQUEST WOULD THEN, FROM YOUR STANDPOINT,

9    REQUIRE THE GOVERNMENT TO COME UP WITH A PLAN BY WHICH ITS

10   VARIOUS AGENCIES, H.H.S. AND D.H.S., FOR EXAMPLE, COMMUNICATE,

11   KEEP TRACK OF CHILDREN, AND ESTABLISH A PROTOCOL OR A

12   PROCEDURE BY WHICH TO REUNIFY UPON THE PARENT BEING RETURNED

13   TO IMMIGRATION DETENTION.  IS THAT CORRECT?

14         **MR. GELERNT:**  WELL, I THINK IT WOULD, YOUR HONOR.  I

15   THINK AT A MINIMUM ANY GOVERNMENT DEALING WITH LITTLE

16   CHILDREN, TAKING LITTLE CHILDREN AWAY, SHOULD HAVE SOME BASIC

17   PROCESS.  AND IT SHOULDN'T BE ON THE PARENT TO TRY AND TRACK

18   DOWN WHERE THE CHILD IS.  I MEAN, WE ARE HEARING THAT WEEKS

19   AND MONTHS GO BY BEFORE A PARENT LOCATES THEIR CHILD.

20         BUT RIGHT NOW, YOU KNOW, WHATEVER PROCESS THE

21   GOVERNMENT ULTIMATELY WANTS TO PUT IN, I THINK IF THEY SIMPLY

22   PRIORITIZE THIS THEY CERTAINLY -- THE UNITED STATES GOVERNMENT

23   CERTAINLY HAS ENOUGH RESOURCES NOW TO GET THE AGENCIES

24   TOGETHER AND GET THESE CHILDREN BACK TOGETHER.

25         WHATEVER PROCESS THEY WANT TO PUT INTO PLACE IN THE

JUNE 22, 2018

1   FUTURE, WHATEVER MECHANISMS THEY WANT FOR ENSURING

2   REUNIFICATION, YOU KNOW, GREAT.  WE WANT THAT TO BE FLORES.

3   BUT RIGHT NOW I THINK THEY JUST -- THEY NEED TO MOVE, IN OUR

4   VIEW, BECAUSE THESE KIDS ARE LITERALLY SUFFERING EVERY DAY,

5   AND EVERY DAY GOES BY, THEY ARE IRREPARABLY HARMED.  AND IT IS

6   JUST -- IT IS TOO MUCH NOW FOR THE GOVERNMENT TO SIMPLY SAY,

7   LET'S HAVE ADDITIONAL BRIEFING, LET'S STRING THIS OUT AGAIN,

8   WE WILL LOOK INTO THINGS.

9           AT THIS POINT I THINK THE GOVERNMENT HAS HAD PLENTY

10  OF TIME TO REALIZE THAT THEY ARE LITERALLY TERRORIZING THESE

11  LITTLE CHILDREN AND CREATING IRREPARABLE HARM TO THEM.

12          **THE COURT:**  THE FLORES DECISION, AS I UNDERSTAND

13  IT -- AND THIS IS A QUESTION FOR MR. GELERNT -- WAS

14  ESTABLISHED IN THE LATE '90'S.  AND AT THAT POINT IT WAS

15  FOCUSING ON OLDER CHILDREN WHO WERE CROSSING THE BORDER

16  ILLEGALLY BY THEMSELVES.  IS THAT --

17          **MR. GELERNT:**  ABSOLUTELY, YOUR HONOR.

18          **THE COURT:**  IN THAT SENSE THEY WERE UNACCOMPANIED,

19  AND THE FEDERAL GOVERNMENT NEEDED TO PROVIDE SOME REASONABLE

20  SAFETY AND SHELTER FOR THESE CHILDREN PENDING THEIR EITHER

21  CRIMINAL PROSECUTION, JUVENILE PROSECUTION, OR REMOVAL.

22          **MR. GELERNT:**  THAT'S ABSOLUTELY RIGHT.  YOUR HONOR,

23  YOU ARE ABSOLUTELY RIGHT.  AND THAT IS PROBABLY A POINT THAT I

24  SHOULD HAVE MADE.  I MEAN, THAT IS THE OVERARCHING PURPOSE OF

25  FLORES AND THAT WAS THE ORIGINS OF FLORES.  IT WAS OLDER KIDS

JUNE 22, 2018

1   WHO WERE ACTUALLY UNACCOMPANIED, AS OPPOSED TO THESE KIDS THAT
2   ARE BEING RENDERED UNACCOMPANIED.  AND IT WAS AN ATTEMPT TO
3   ENSURE THAT THESE KIDS DIDN'T LANGUISH IN SUB-PAR FACILITIES
4   FOREVER.
5        IT REALLY -- NOW IT TECHNICALLY APPLIES TO
6   ACCOMPANIED CHILDREN BUT THE THRUST OF IT WAS ALWAYS FOR THESE
7   UNACCOMPANIED CHILDREN.  IT WASN'T SUPPOSED TO BE A RIGID
8   REQUIREMENT THAT IF YOU ARE ACTUALLY WITH YOUR PARENT YOU ARE
9   SHIPPED OFF AT THE 19TH DAY, EVEN IF YOU ARE TWO YEARS OLD,
10  OVER THE PARENT'S OBJECTION.  YOU ARE ABSOLUTELY RIGHT ABOUT
11  THE THRUST AND THE HISTORICAL ORIGINS OF FLORES.
12       **THE COURT:**  THE PLAINTIFFS ARE ALSO REQUESTING
13  INJUNCTIVE RELIEF BECAUSE THERE ARE DOCUMENTED INCIDENTS OF
14  PARENTS BEING SEPARATELY DEPORTED OR REMOVED FROM THEIR CHILD,
15  CORRECT?
16       SO, FOR EXAMPLE, WE COULD USE HYPOTHETICALLY SOMEONE
17  SIMILARLY SITUATED TO MS. L. OR MS. C.  THEIR ASYLUM CLAIM
18  FAILS, THEY ARE REMOVED TO THEIR HOME COUNTRY.  THE CHILD IS
19  IN A SEPARATE GOVERNMENT AGENCY THAT APPARENTLY IS NOT
20  COMMUNICATING WITH OTHER GOVERNMENT AGENCIES, AND THE CHILD
21  THEN IS SEPARATELY DEPORTED TO THE HOMELAND AT A DIFFERENT
22  TIME.  IS THAT CORRECT?
23       **MR. GELERNT:**  ABSOLUTELY, YOUR HONOR.  AND I THINK
24  WHAT IS HAPPENING IS THAT THE CHILD IS JUST LANGUISHING IN THE
25  UNITED STATES, NOT DEPORTED, AND IS IN DANGER OF BEING GIVEN

JUNE 22, 2018

1  TO A FAMILY PERMANENTLY, AND THE PARENT WHO HAS BEEN DEPORTED
2  LOSES CUSTODY.  THE PARENTS HAVE NO WAY TO TRACK THE CHILD.
3            SO WE WOULD ASK THAT AS PART OF THE TRACKING SYSTEM
4  WE KNOW ABOUT PARENTS -- THE GOVERNMENT SHOULD KNOW ABOUT
5  PARENTS WHO WERE WITH A CHILD, THE GOVERNMENT TOOK THE CHILD
6  AWAY AND THEN DEPORTED THE PARENT, BECAUSE I THINK THAT IS
7  PART OF THIS WHOLE THING.  IT IS IN SOME WAY THE MOST EXTREME
8  SITUATION BUT IT IS HAPPENING.
9            SO WE CERTAINLY WOULD WANT SOME WAY FOR THE PARENT
10  AND THE CHILD TO SPEAK TO EACH OTHER AND THERE BE AN
11  ARRANGEMENT SO THAT THE PARENT KNOWS WHERE THE CHILD IS AND
12  CAN MAKE ARRANGEMENTS TO HAVE THE CHILD REMOVED BACK TO THEIR
13  OWN COUNTRY, OTHERWISE THE CHILD IS JUST LEFT HERE IN THE
14  UNITED STATES ALL BY HIM OR HERSELF.
15            **THE COURT:**  DOES THE GOVERNMENT PRESENTLY HAVE A
16  PLAN FOR DETAINING PARENTS TOGETHER WITH THE CHILD UNDER THE
17  EXECUTIVE ORDER OR RELEASING PARENTS, OR IS THIS ALL IN THE
18  STATE OF FLUX?
19            **MS. FABIAN:**  YOUR HONOR, I DON'T HAVE ANYTHING TO
20  SUBMIT ON THAT TODAY.  AGAIN, I THINK THERE IS A CURRENT
21  EXISTING PRACTICE OF FAMILY DETENTION.  AND THERE HAS BEEN A
22  FILING MADE IN THE FLORES CASE TO PERHAPS AMEND THE FLORES
23  AGREEMENT THAT MIGHT LEAD TO CHANGES IN THAT PRACTICE.
24  HOWEVER, THAT OBVIOUSLY REMAINS IN FLUX UNTIL THAT CAN BE
25  HEARD BY THE FLORES COURT.

JUNE 22, 2018

1          I WANT TO ADD THAT SOME OF THE ISSUES THAT THE COURT

2     HAS BEEN ASKING ABOUT, THIS ABILITY TO LOCATE, AND I THINK

3     YOUR HONOR ASKED ABOUT THE QUESTION OF PARENTS BEING REMOVED

4     WITHOUT THEIR CHILD.  WELL, I AGREE THAT THOSE ARE DIFFICULT

5     ISSUES AND IMPORTANT ISSUES TO TALK ABOUT.  I AM NOT SURE THAT

6     THEY ARE A PART OF THIS CASE IN TERMS OF THEY WERE NOT PLED IN

7     THE ORIGINAL COMPLAINTS AND THEY ARE NOT SITUATIONS THAT ARE

8     ENCOMPASSED BY THE NAMED PLAINTIFFS.

9          SO I THINK I WOULD REITERATE MY CONCERNS WITH

10    ENCOMPASSING TOO MUCH -- WITH BRINGING THESE ISSUES INTO THE

11    CASE AT THIS TIME AND WITHOUT THE OPPORTUNITY FOR PUTTING IN

12    SOME EVIDENCE OF THAT TO SORT OF REACH DECISIONS IN THIS CASE

13    BASED ON NEWS REPORTS.  WHILE I UNDERSTAND THAT THE COURT IS

14    CONCERNED WITH THOSE AND MAY BE INTERESTED IN THOSE, I THINK

15    WE NEED TO CONSIDER WHAT HAS BEEN BRIEFED IN THIS CASE.

16         **THE COURT:**  THAT WAS ONE OF THE CLAIMS FOR RELIEF,

17    THOUGH, SET OUT EITHER IN THE AMENDED COMPLAINT OR IN THE

18    MOTION FOR PRELIMINARY INJUNCTION WAS FOR REQUESTING THE COURT

19    TO ORDER AN INJUNCTION TO PROHIBIT THE REMOVAL OF PARENT AND

20    CHILD AT SEPARATE TIMES.  SO IT SEEMED TO ME THAT IT WAS PART

21    AND PARCEL OF THIS REUNIFICATION ISSUE AS IT RELATES TO, FOR

22    EXAMPLE, MS. C.'S CASE.  DO YOU DISAGREE?

23         **MS. FABIAN:**  NO.  I AGREE.  AND AS YOUR HONOR SAYS,

24    I DO RECALL THAT THAT IS -- PART OF THE CHALLENGE HERE IS THAT

25    THERE WAS NOT -- WITHOUT A PROPOSED ORDER I THINK THERE WAS

JUNE 22, 2018

42

1    SOME VERY BROAD REQUESTS BEING MADE AND I THINK THAT THEY --

2    WHAT PLAINTIFFS HAVE BEEN REQUESTING HAS CHANGED A LITTLE BIT

3    OVER TIME.  BUT I DO RECALL, AS YOUR HONOR SAYS THAT, THAT

4    THAT WAS ONE OF THE REQUESTS THAT WAS BEING MADE.

5            BUT I DON'T THINK THAT WE HAVE THE NAMED PLAINTIFFS

6    AND REALLY THE CLAIMS IN THIS CASE THAT AT THE TIME THAT THIS

7    CASE WAS ARGUED THAT THIS ABILITY TO LOCATE AND BE -- WE DON'T

8    HAVE A NAMED PLAINTIFF WHO WAS REMOVED WITHOUT THE CHILD BEING

9    RETURNED, AND THAT THE ABILITY-TO-LOCATE ISSUES HAD NOT

10   BEEN -- HAD NOT BEEN RAISED BY THE NAMED PLAINTIFFS IN THE

11   CASE.

12           **THE COURT:**  ALL RIGHT.

13           MR. GELERNT, DO THE PLAINTIFFS INTEND OR ANTICIPATE

14   ON AMENDING THE COMPLAINT?

15           **MR. GELERNT:**  YES, YOUR HONOR, WE DO.  BUT WE DO

16   NOT, AT THIS TIME, HAVE ANY PLAN TO SEEK PRELIMINARY RELIEF ON

17   THOSE CLAIMS.  WE WOULD ASK THE COURT TO ISSUE THE INJUNCTION

18   JUST BASED ON DUE PROCESS, BUT WE WILL AMEND IT BEFORE

19   JULY 3RD.  SO FOR THE CASE GOING FORWARD THOSE CLAIMS WILL BE

20   THERE, AND OBVIOUSLY THE COURT WILL DECIDE WHETHER OUR

21   AMENDMENTS ARE SUFFICIENT.  BUT WE WOULD NOT BE SEEKING

22   PRELIMINARY RELIEF ON THOSE, WE HAVE NO PLAN TO DO THAT.  AND

23   WE WOULD JUST ASK THE COURT TO RULE ON THE P.I. BASED ON DUE

24   PROCESS.

25           **THE COURT:**  I THINK THAT MR. GELERNT'S OBSERVATION

1   THAT THE RECORD BEFORE THE COURT CONTAINS A LOT OF INFORMATION

2   THAT MAY BE SUFFICIENT TO PROCEED, BASED ON THE PRESENT

3   RECORD, BUT OBVIOUSLY A LOT HAS OCCURRED IN THE LAST SEVERAL

4   WEEKS, AND PARTICULARLY THIS WEEK, THAT MAY BE RELEVANT.  I

5   WOULD LIKE TO GIVE COUNSEL THE OPPORTUNITY TO SUPPLEMENT THE

6   RECORD.

7        I DO APPRECIATE THAT COUNSEL NEED NOT HAVE TO COME

8   IN WITH A LARGE FILING WITH LOTS OF DECLARATIONS AND THINGS TO

9   VERIFY WHAT HAS PLAYED OUT IN THE MEDIA.  I THINK THE ISSUES

10  ARE NOT REALLY DISPUTED, AND THEY ARE WELL-KNOWN TO EVERYONE

11  WHO HAS BEEN READING, WATCHING, OR LISTENING.  BUT THIS IS A

12  COURT OF PUBLIC RECORD AND THERE DOES NEED TO BE SOME

13  SUPPLEMENTATION.

14       SO WHAT I WOULD REQUEST –– AND I WILL INVITE

15  COUNSELS' COMMENT –– IS AN OPPORTUNITY, FOR EXAMPLE, FOR

16  PLAINTIFFS TO SUBMIT.  IT CAN BE A VERY BRIEF FILING, SIMPLY

17  GIVING AN UPDATE OF WHAT HAS OCCURRED BETWEEN THE COURT'S

18  12(B) ORDER AND THE PRESENT TIME.

19       I WILL LEAVE IT TO YOU WHETHER YOU WANT TO

20  SUPPLEMENT WITH ANY DECLARATIONS OR OTHER EVIDENCE, OR SIMPLY

21  MAKE A FILING THAT CAPTURES THE CURRENT STATE.

22       AND MOST SPECIFICALLY, I WOULD ASK THAT YOU SET OUT

23  WHAT IT IS, SPECIFICALLY, YOU ARE ASKING THE COURT TO DO.

24  WHAT IS THE INJUNCTIVE RELIEF WITH RESPECT TO INDIVIDUALS LIKE

25  MS. C. WHO ARE INITIALLY SEPARATED, IN PLAINTIFFS' VIEW

JUNE 22, 2018

```
 1   IMPROPERLY.  AND THEN WHAT IS THE RELIEF THAT IS REQUESTED
 2   SPECIFICALLY WITH RESPECT TO INDIVIDUALS LIKE MS. C., AND IT
 3   COULD BE MS. L. AS WELL, WHERE THERE IS A REQUEST TO REUNIFY
 4   AND NOT TO SEPARATELY REMOVE.  SO THAT WOULD BE HELPFUL, TO
 5   SET OUT IN DETAIL WHAT TYPE OF INJUNCTIVE RELIEF YOU ARE
 6   REQUESTING WITH SPECIFICITY.
 7           AND TO THE EXTENT THAT YOU BELIEVE THE COURT CAN
 8   ISSUE MORE BROAD INJUNCTIVE RELIEF, AND NOT GET INTO THE
 9   WEEDS, AND ASSUMING INJUNCTIVE RELIEF IS PROVIDED THAT ISSUES
10   WITH RESPECT TO HOW VARIOUS GOVERNMENTAL AGENCIES COMMUNICATE,
11   HOW REUNIFICATION OCCURS, WHAT THE PROTOCOL IS, WHETHER THERE
12   IS A PROCEDURE OR A CHECKLIST THAT IS MADE, FOR EXAMPLE.  IF
13   IT IS THE PLAINTIFFS' POSITION THAT THE COURT NEED NOT GET
14   INTO THE DETAILS BUT SIMPLY MAKE OVERARCHING DECLARATIONS AND
15   INJUNCTIONS, A BRIEF DISCUSSION IN THAT REGARD WOULD BE
16   HELPFUL.
17           I WOULD PROPOSE THAT PLAINTIFFS MAKE THAT FILING BY
18   MONDAY.  IS THAT -- THAT MEANS WORKING THE WEEKEND OR --
19           MR. GELERNT:  YOUR HONOR, THAT'S ABSOLUTELY FINE.
20   WE WILL HAVE THAT TO YOU AT 9:00 A.M.
21           I ALSO WANT TO SAY, AT THE RISK OF ANNOYING YOU,
22   THAT WE WILL SUBMIT WHAT WE THINK IS PROPER INJUNCTIVE RELIEF
23   TONIGHT, A PROPOSED ORDER AT A GENERAL -- AND YOU CAN
24   OBVIOUSLY EVALUATE WHETHER YOU THINK THAT INJUNCTION COULD BE
25   ISSUED BASED ON THE RECORD THAT WAS BEFORE YOU AT THE TIME.
```

JUNE 22, 2018

1    BUT WE WILL CERTAINLY, BECAUSE WE UNDERSTAND YOU WANT A

2    SUPPLEMENT BY 9:00 A.M. YOUR TIME ON MONDAY MORNING.

3              **THE COURT:**  ALL RIGHT.  AND I WOULD SUGGEST THAT THE

4    GOVERNMENT RESPOND BY NO LATER THAN CLOSE OF BUSINESS ON

5    WEDNESDAY.

6              ANY OBJECTION?

7         **MS. FABIAN:**  THAT'S FINE, YOUR HONOR.

8         **THE COURT:**  AND I WILL CONTINUE TO TAKE THESE

9    MATTERS UNDER SUBMISSION.  AND I WILL ENDEAVOR TO ISSUE A

10   RULING SHORTLY AFTER RECEIVING THE BRIEFING BY COUNSEL.

11             ARE THERE ANY ADDITIONAL COMMENTS FOR THE RECORD?

12        **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT AGAIN.

13             WE ARE -- I JUST WANT TO SAY FOR THE RECORD THAT WE

14   ARE HAPPY TO EXPEDITE THE BRIEFING SCHEDULE EVEN FURTHER IF

15   THE GOVERNMENT IS PREPARED, GIVEN THAT EVERY DAY THESE LITTLE

16   CHILDREN ARE BY THEMSELVES.  WE ARE GETTING CALLS FROM DOCTORS

17   SAYING THAT REAL DAMAGE IS BEING DONE.

18             SO IF THE GOVERNMENT, YOU KNOW, UNDER -- WHAT THE

19   GOVERNMENT PRESUMABLY UNDERSTANDS THE URGENCY AND HOW MUCH

20   DAMAGE IS BEING DONE TO THESE LITTLE CHILDREN WE WOULD GET

21   SOMETHING TO YOU BY MIDNIGHT TOMORROW NIGHT IF THE GOVERNMENT

22   CAN RESPOND BY 9:00 A.M. MONDAY TO ALLOW YOU TO ISSUE

23   SOMETHING, YOU KNOW, BY TUESDAY, IF THE GOVERNMENT IS WILLING

24   TO DO THAT.

25             **THE COURT:**  MS. FABIAN?

JUNE 22, 2018

 1          **MS. FABIAN:**  I CAN'T SAY RIGHT NOW THAT I WOULD BE

 2   ABLE TO HAVE THE FOLKS I WOULD NEED TO PROVIDE THE EVIDENTIARY

 3   RESPONSES WITHOUT HAVING AT LEAST SOME TIME THAT COVERED

 4   WORKING HOURS DURING THE WEEK.

 5          SO IT IS HARD TO SAY WITHOUT KNOWING EXACTLY WHAT

 6   EVIDENTIARY ISSUES I WILL NEED TO RESPOND TO.  BUT MY ONE

 7   CONCERN IS THAT I CAN'T, AT THIS HOUR ON A FRIDAY, ENSURE THAT

 8   I WILL BE ABLE TO BE IN TOUCH WITH THE FOLKS I WOULD NEED TO

 9   GET THE EVIDENCE IN RESPONSE WITHOUT HAVING SOME PERIOD OF

10   TIME OVER WORKING HOURS.

11          **THE COURT:**  ALL RIGHT.  I DO APPRECIATE THE REQUEST

12   FOR EXPEDITED DECISION MAKING, BUT IT IS ALSO IMPORTANT TO

13   HAVE AN OPPORTUNITY FOR EVERYONE TO BE HEARD AND TO MAKE THEIR

14   RECORD, AND FOR THE COURT TO MAKE A DETERMINATION BASED ON A

15   COMPLETE RECORD, AS IS REASONABLY POSSIBLE, GIVEN THE CURRENT

16   DEVELOPMENTS THAT ARE UNFOLDING.

17          SO I WILL STAND ON THE PROPOSAL.  I THINK THAT IS

18   REASONABLE UNDER THE CIRCUMSTANCES.  IT IS STILL VERY

19   EXPEDITED, AND IT ALLOWS DECISION-MAKING IN A RELATIVELY

20   ORDERED FASHION.  SO TO BE --

21          **MR. GELERNT:**  YOUR HONOR, IF I COULD JUST SAY ONE

22   OTHER THING.  I UNDERSTAND, AND SO WE WILL SUBMIT BY 9:00 A.M.

23   PACIFIC TIME MONDAY.

24          AND I THINK GIVEN THAT YOU ARE GOING TO GO FORWARD

25   WITH GETTING BRIEFING WE WILL JUST SUBMIT OUR PROPOSED

JUNE 22, 2018

1   INJUNCTIVE LANGUAGE WITH OUR 9:00 A.M. SUBMISSION RATHER THAN

2   TONIGHT IF YOU ARE NOT GOING TO RULE UNTIL YOU SEE THE FUTURE

3   SUBMISSIONS.  I THINK IT JUST MAKES SENSE FOR US TO JUST

4   SUBMIT IT ALL AT ONCE ON MONDAY.

5           **THE COURT:**  YES, THAT WOULD BE FINE.

6           AND THE GOVERNMENT WOULD HAVE ITS SUPPLEMENTAL

7   BRIEFING BY WEDNESDAY, 4:30 P.M. PACIFIC TIME.

8           OKAY.  I APPRECIATE VERY MUCH THE DISCUSSION, IT WAS

9   VERY, VERY HELPFUL, AND I THANK COUNSEL FOR THE OPPORTUNITY

10  AND THE INSIGHT THAT YOU PROVIDED.

11          I WILL AWAIT THE BRIEFING.  AND AGAIN I WILL

12  ENDEAVOR TO ISSUE AN ORDER AS QUICKLY AND AS REASONABLY AS I

13  CAN.

14          **MS. FABIAN:**  ONE THING, YOUR HONOR, I JUST WANTED TO

15  CLARIFY.

16          WE HAVE NOT ANSWERED THE REMAINING CLAIM IN THE

17  COMPLAINT THAT WAS NOT DISMISSED.  WE HAD SPOKEN, AND I WAS

18  GOING TO SUBMIT SOMETHING BUT THEN YOU SET THIS CALL, SO I

19  FIGURED I WOULD JUST SAY IT ON THE RECORD.

20          BECAUSE PLAINTIFFS ARE GOING TO BE AMENDING THEIR

21  COMPLAINT ON THE 3RD WE PLAN TO RESPOND TO THAT WITHIN TWO

22  WEEKS, AS REQUIRED UNDER THE RULES, AND TO PROCEED WITH

23  ANSWERING IN DUE COURSE ON THAT TIMELINE, UNLESS THE COURT

24  WANTS A DIFFERENT TIMELINE FOR THAT.

25          **THE COURT:**  NO, I THINK THAT IS A GOOD SUGGESTION.

JUNE 22, 2018

1    SO TWO WEEKS FROM THE FILING OF ANY SECOND AMENDED COMPLAINT

2    WOULD BE FINE.

3              **MS. FABIAN:**  OKAY.  THANK YOU, YOUR HONOR.

4              **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

5              **MR. GELERNT:**  THANK YOU, YOUR HONOR.

6              **THE COURT:**  YOU ARE WELCOME.

7

8                            *   *   *

9              I CERTIFY THAT THE FOREGOING IS A CORRECT
               TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
10             IN THE ABOVE-ENTITLED MATTER.

11             S/LEEANN PENCE                    6/23/2018
               LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

JUNE 22, 2018