CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration
Litigation (OIL)
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director, OIL District Court
Section
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

Attorneys for Federal Respondents-Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

          Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

          Respondents-Defendants.

Case No. 18cv428 DMS MDD

**RESPONDENTS' SUPPLEMENTAL
RESPONSE IN OPPOSITION TO
MOTION FOR PRELIMINARY
INJUNCTION**

I.      INTRODUCTION

This Court should not consider the new allegations made in Plaintiffs' supplemental brief and should reject the relief requested in Plaintiffs' proposed order.

As an initial matter, the President has now issued an Executive Order that halts family separation, directs family detention where permissible under the law, and makes other changes to promptly address issues that have arisen. Thus, although Plaintiffs seek to impose a court-ordered family separation standard, the Court should recognize that the President has now issued an Order that is largely consistent with the relief Plaintiffs request. Specifically, the President has halted family separation, and directed that separation only occur "when there is a concern that detention of an alien child with the child's alien parent would pose a risk to the child's welfare."

Second, with respect to the reunification of families, the agencies are working to reunify families now that the President has ordered an end to family separation policies. This Court should give the agencies time to take action, rather than issuing an injunctive order. Without much more careful and thoughtful consideration of the details of family detention, the reunification process, the requirements of federal law, and the *Flores* Settlement Agreement, a court-imposed process is likely to slow the reunification process and cause confusion and conflicting obligations, rather than speed the process of reunifying families in a

safe and efficient manner. To the extent the Court believes continuing oversight is needed at this juncture, it should require status reports on the progress of family reunification.

The Court should reject Plaintiffs' request for relief as procedurally improper. Plaintiffs' supplemental brief asks this Court to order preliminary relief based on allegations made nowhere in Plaintiffs' operative complaint. That complaint was filed on April 9, 2018—weeks before the events giving rise to Plaintiffs' new request for relief. The procedurally proper way for Plaintiffs to raise their new facts and claims would be for Plaintiffs to file an amended complaint on behalf of an individual actually impacted by the challenged policy, for Plaintiffs then to file a request for preliminary relief based on that amended complaint, and for the Government then to be given adequate time to respond to Plaintiffs' new allegations and requests for relief. Preliminary relief based on Plaintiffs' new allegations is also improper for the further reason that the named Plaintiffs, Ms. L. and Ms. C., lack standing to seek relief based on events that they never experienced themselves and therefore which could have caused them no injury. At a minimum, their failure to experience these events makes them inadequate class representatives for claims seeking relief based on these events. For all of these reasons, the Court should deny the relief requested and set a

18cv428 DMS MDD

briefing schedule that allows an orderly presentation of issues and assurance that this lawsuit may proceed under Plaintiffs' new theories of relief.

The Court should alternatively reject Plaintiffs' request for relief on the merits. For multiple reasons, Plaintiffs have failed to establish that they are entitled to the relief sought in their proposed order and supplemental briefing. As an initial matter, the President has now issued an Executive Order that halts family separation, directs reunification, and makes other changes to promptly address family separation issues that have arisen. In circumstances where there is a risk to the child, it employs a standard similar to that requested by Plaintiffs, but that allows for the flexibility needed for the U.S. Department of Homeland Security ("DHS") to carry out its immigration enforcement mission and address smuggling concerns—that families will not be detained together "when there is a concern that detention of an alien child with the child's alien parent would pose a risk to the child's welfare." The Court should give this Order time to be implemented before entering any injunctive relief.

There are also multiple reasons why Plaintiffs' request should be denied on the merits. First, Plaintiffs have not shown that their proposed standard for separation requiring a "clear demonstration that the parent is unfit to care for the child or presents a danger to the child" is, in contrast to the standard now set out in the Executive Order, appropriate in the context of immigration enforcement actions

taken by the U.S. Department of Homeland Security ("DHS"). It is also not consistent with the Trafficking Victims Protection Reauthorization Act ("TVPRA") standard, which provides that a child is to be treated as unaccompanied if the parent is not "available to provide care and physical custody," a standard different from that employed in state child welfare law. Second, Plaintiffs' proposed order should not be entered because it would require this Court to order the release of parents who are subject to mandatory detention, which this Court has already acknowledged it lacks the authority to do. Third, Plaintiffs' proposed order asks this Court to order the U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR") to release minors from its custody in a manner that would violate the TVPRA. Fourth, the timeline proposed by Plaintiffs is arbitrary and fails to take into account the Government's need to ensure that any reunifications can be completed safely and in accordance with applicable law. Finally, and critically, without much more careful and thoughtful consideration of the details of the family detention, the reunification process, the requirements of federal law, and the *Flores* Settlement Agreement, a court administered solution like the one proposed by Plaintiffs is likely to slow that process and cause confusion, rather than speed the process of reunifying families in a safe and efficient manner.

For these reasons, this Court should deny Plaintiffs' request for preliminary injunctive relief.

## II.   ARGUMENT

### A.   *The Court Should Deny Plaintiffs' Newly Requested Relief Because It Is Procedurally Improper.*

The Court should reject Plaintiffs' request for relief on three independent procedural grounds.

*First*, Plaintiffs improperly seek relief that is beyond the scope of their operative complaint—and granting any such relief would be contrary to law, and would deny the Government the opportunity to properly respond to these new allegations.

Plaintiffs' supplemental request for relief rests on events that occurred after Plaintiffs filed their operative complaint. To obtain preliminary injunctive relief, "the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Banks v. Annucci*, 48 F. Supp. 3d 394, 422 (N.D.N.Y. 2014) (citations omitted). Plaintiffs' supplemental brief flunks that test. Plaintiffs' supplemental brief asks this Court to grant relief based on policies and facts that largely occurred after Plaintiffs filed their amended complaint on April 9, 2018, and after their preliminary injunction motion was argued and submitted to this Court on May 4, 2018. Plaintiffs rely heavily on: the Government's Zero-Tolerance Policy for criminal illegal entry that was announced

on April 6, 2018 by the Attorney General, and further by the Secretary of Homeland Security on May 4, 2018 confirming the referral of cases; an executive order ("Affording Congress an Opportunity to Address Family Separation") that was issued on June 20, 2018; and on events that Plaintiffs allege have occurred related to these policies. Plaintiffs should not be permitted to make an end-run around the rules on amending pleadings, nor should the Court order relief based on allegations that are not—and could not be—found in the operative complaint in this case.

Next, Plaintiffs' supplemental brief otherwise seeks to improperly expand the scope of their operative complaint. For example, Plaintiffs purport to seek relief for individuals being removed from the United States without their child. But no allegations regarding any such removal are contained anywhere in Plaintiffs' operative complaint, and no named Plaintiff alleges that she experienced any such scenario. Plaintiffs' request for relief on these grounds is improper unless Plaintiffs amend their complaint to add these allegations.

Moreover, Plaintiffs have also filed ten new declarations, totaling over 200 pages, containing new factual allegations from new individuals. Plaintiffs have not provided Defendants with the identifying information for many of the individuals on whom their new allegations are based so that Defendants are unable to fully respond to these allegations, particularly given the short timeline allowed for

providing a response to Plaintiffs' filing. Because these new claims and facts are beyond the scope of Plaintiffs' amended complaint, Plaintiffs should not be permitted to obtain the preliminary relief sought on the basis of these new allegations. *See Ladd v. Dairyland County Mut. Ins. Co. of Texas*, 96 F.R.D. 335, 338 (N.D. Ill. 1982) (claims not mentioned in plaintiff's original or amended complaint cannot be a class issue); *see also Church of Holy Light of Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) ("The injunction is therefore overly broad because it reaches beyond the scope of the complaint . . . ."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). The only procedurally sound way for Plaintiffs to raise their new allegations and claims would be to file an amended complaint, which the Court has given them leave to do by July 3, 2018, and to then file a request for preliminary relief based on that amended complaint in a timeframe that would also permit the Government adequate time to respond to these new allegations. Until Plaintiffs follow a proper procedural channel, this Court should decline to consider their request for relief based on these new allegations.

*Second*, Plaintiffs cannot be granted the relief that they request because Ms. L. and Ms. C, the sole named Plaintiffs, lack standing to bring Plaintiffs' new claims on behalf of the putative class. As the sole class representatives, the named

Plaintiffs must demonstrate a "legally and judicially cognizable" injury, *Raines v. Byrd*, 521 U.S. 811, 819 (1997), consisting of, at minimum, a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They must "demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Because both Ms. L. and Ms. C. filed their amended complaint and motion for preliminary injunction on April 9, 2018, they do not have standing bring claims based on the later-implemented "Zero Tolerance Policy," or the Executive Order. Although this Court determined that the voluntary cessation exception to the mootness doctrine preserved the claims Ms. L. raised in the amended complaint, those exceptions do not apply here. Ms. L.'s personal interest in the new claims is not moot; rather, it never existed in the first place and cannot be rescued by a mootness exception.

In addition, in their proposed order, Plaintiffs ask this Court to order relief on behalf of "parents who are facing imminent deportation without their accompanying children." ECF No. 78 at 15. Yet the operative complaint does not make a single allegation about any individual being removed without their child, and Ms. L. and Ms. C. do not allege that they suffered any such injury. Ms. L. and Ms. C. therefore lack the requisite standing to obtain class-wide relief on that basis. Because the named Plaintiffs lack standing to claim injury based on the allegations

contained in Plaintiffs' supplemental brief, Plaintiffs should not be permitted to raise these new claims in their individual capacity, nor can they bring these claims as representatives on behalf of the proposed class.

*Third*, and for similar reasons, Ms. L. and Ms. C. are also inadequate class representatives for any individuals subject to the Zero-Tolerance Policy, any claims raised regarding the Executive Order, or any new claims that were not raised in their amended complaint. Under Rule 23, a class representative's claim must be typical of the claims in the class and the representative must fairly and adequately protect the interests of the class. *See* Fed. R. Civ. Proc. 23(a)(3), (4). It is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class—an uncertified class cannot have standing independently of a named plaintiff. The class representative must have the interest and ability to represent the claims of the class vigorously. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010); s*ee Lierboe v. State Farm. Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir.2003) (finding that class representatives must have standing to bring all claims held by the putative class to which they belong and which they purport to represent). Because a class representative must be part of the class and possess the same interests and suffer the same injury as the class members, Ms. L. and Ms. C., the sole named Plaintiffs, are inadequate class representatives for individuals who are alleging injury and seeking relief on the basis of allegations related to the Zero

Tolerance Policy. *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, (1977) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members").

> **B.  The Court Should Deny Plaintiffs' Newly-Requested Proposed Relief Because It Is Substantively Baseless.**

Even if the Court finds that it can properly consider newly-implemented policies and factual events that have occurred since the amended complaint was filed, the Court should still reject the relief requested by Plaintiffs. Plaintiffs cannot show that they are entitled on the merits to the relief they seek.

> 1.  Plaintiffs' Proposed Standard For Separation Is Inappropriate In The Context Of Criminal Prosecutions and Immigration Enforcement Actions.

First, the Court should not grant Plaintiffs relief because there is no legal basis to apply Plaintiffs' proposed standard for separation in the context of separations that are incident to other, lawful, immigration enforcement decisions. Accordingly, such standard should not serve as the basis for any class definition, and should not be applied across the board, without any regard for the context in which any separation decision is being made.

It is important to emphasize at the start that the President's executive order explained that it is the "policy of this Administration to maintain family unity, including by detaining families together where appropriate and consistent with law and available resources." EO § 1. The President further ordered that a family

would not be detained together "when there is a concern that detention of an alien child with the child's alien parent would pose a risk to the child's welfare." *Id.* § 3. Plaintiffs have not shown that this direction is illegal or improper or any respect—instead, it is a critical component of immigration enforcement to protect children at the border in circumstances rife with smuggling, where children have been and are continuing to be placed at great risk.

Given that the standard in the Order is similar to the standard sought by Plaintiffs, while at the same time taking into consideration important immigration enforcement goals and the role of DHS in enforcing immigration laws, there is good reason for the Court to give the Government time to implement the Executive Order rather than issuing injunctive relief. Importantly, Plaintiffs have submitted no evidence to suggest that the Executive Order is being applied in a way that causes harm to any individual, much less a Plaintiff in this action.

Plaintiffs ask the Court to impose a standard that would require that no child may be separated from an accompanying adult who purports to be a parent of that child "absent a clear demonstration that the parent is unfit or presents a danger to the child." Proposed Order Paragraphs (3) through (6). Plaintiffs argue that this standard should be applied because it comes from generally accepted child welfare laws. ECF No. 78 at 9-10. But the law relied on by Plaintiffs arose in the context of cases where the central and only issue being considered was the termination of

18cv428 DMS MDD

parental rights. *See* ECF No. 48-1 at 12–13. Plaintiffs have provided no basis to find that this standard can appropriately be applied in the immigration enforcement context, in which important foreign-policy, national-security, and criminal-enforcement issues are necessarily a part of the considerations at play. Nor have Plaintiffs shown why the standard set forth by the Executive Order is inappropriate, or why this Court's intervention is needed given the direction in the Executive Order limiting family separation. Finally, Plaintiffs have not addressed the TVPRA, which requires that a minor must be transferred to the custody of ORR if his or her parent is not "available to provide care and custody" to the child. 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3).

Thus, in determining what standard should be applied to a separation decision made by the Government, the Court should consider the immigration enforcement that occurs at the border where these separation decisions are made. For example, DHS plays an important role in disrupting smuggling operations and ensuring the safety of minors brought into the United States. *See generally* Declaration of Mark W. Sanders, ECF No. 57-4. DHS regularly sees cases of adults with children purporting to be a family group, and DHS has legitimate reason to believe that in some of these cases the family group may be fraudulent. *Id.* ¶ 6. In this context, when DHS encounters a purported family group, it is considering more than just the limited issue of the fitness of a confirmed parent,

but instead must consider the broader issues of safety related to the smuggling of children and the use of children to gain entry into the United States. *Id.*

Ignoring these concerns, Plaintiffs argue that the Court should limit DHS's ability to separate a child where DHS has concerns about the relationship between a child and adult who purport to be a family group. ECF No. 78 at 9–10. But Plaintiffs do not address the risks created by such a limitation. And because the standard proposed by Plaintiffs ignores these concerns, it is unreasonably narrow and—critically—it interferes with DHS's important function of protecting children from smuggling at the U.S. border. Because Plaintiffs' proposed standard for separation fails to take these important considerations into account, the Court should decline to adopt the class definition proposed by Plaintiffs, and should further decline to order that separations may not occur "absent a clear demonstration that the parent is unfit or presents a danger to the child."

Plaintiffs' proposed order also ignores important safety concerns related to detention in U.S. Immigration and Customs Enforcement ("ICE") family residential center ("FRCs" that would make such detention impossible or otherwise inappropriate.[1] ICE FRCs have an open plan layout, and allow free movement throughout the facilities. Because of this, ICE must consider not only whether any

---

[1] Plaintiffs suggest that Defendants have argued that the *Flores* Settlement Agreement would prohibit reunification in ICE FRCs. ECF No. 78 at 7-8. Defendants have made no such claim.

adult considered for detention in an ICE FRC may pose a danger to his or her

child, but also whether any adult or child being considered for such placement

might pose a danger to others in the facility. Thus, while Plaintiffs contend that

separation may never occur based on criminal history, ECF No. 78 at 10, Plaintiffs

do not address the fact that ICE must consider this criminal history not only in the

context of the safety of one child, but in the context of considering the safety of all

residents at an ICE FRC. Requiring ICE to detain a family unit in an ICE FRC

absent clear evidence of danger to the individual child in that family unit is an

overly strict, unworkable standard that has no relationship to the unique

considerations at issue in ICE FRCs, and therefore the Court should not adopt such

a standard.

2. <u>Plaintiffs' Proposed Order Would Require This Court To Order The Release Of Individuals Subject To Mandatory Immigration Detention.</u>

Plaintiffs also improperly request relief that this Court lacks authority to

grant. As this Court has already recognized, the Court has no authority to order the

Government to parole individuals who are otherwise subject to mandatory

detention for the purpose of reunification. *See* Order on Motion to Dismiss, ECF

No. 71, at 10 n.3 ("Individuals in the expedited removal process who have not been

found to have a 'credible fear of persecution' for asylum purposes are subject to

mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). These individuals may be

released only if they are granted parole, i.e., released under narrowly prescribed circumstances, such as 'urgent humanitarian reasons or significant public benefit[,]' 8 U.S.C. § 1182(d)(5)(A), medical emergency or a 'legitimate law enforcement objective.' 8 C.F.R. § 235.3(b)(2)(iii).")*; see also* ECF No. 56-1 at 11–12; *Jennings v. Rodriguez*, -- U.S. --, 138 S. Ct. 830 (2018). Because this Court lacks the authority to order the Government to release these individuals who are subject to mandatory detention, the proposed order cannot be adopted as written.

3. Plaintiffs' Proposed Order Disregards The Requirements Of The TVPRA.

Plaintiffs' also improperly seek relief that is barred by the TVPRA. Paragraphs (4) and (5) of Plaintiffs' proposed order would require ORR to release from its custody all minors in its custody whose parent either is in DHS custody, or has been in DHS custody, absent "a clear demonstration that the parent is unfit to care for the child or presents a danger to the child, or the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child." That release would be either to an ICE FRC, *see* Paragraph (4), or to the parent who has been released into the interior of the United States, Paragraph (5). Once again, however, Plaintiffs ask this Court to apply a standard for release that was developed in an unrelated context, while at the same time failing to explain how such a release can be ordered in the face of the plain requirement of the TVPRA that prohibits ORR from releasing any unaccompanied alien child ("UAC") from its custody without

first making "a determination that the proposed custodian is capable of providing

for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). This

Court should not order ORR to release minors from custody under a standard that

would violate the requirements of the TVPRA.[2]

In accordance with the TVPRA's requirement that ORR assess the

suitability of any proposed sponsor before releasing a minor to that person's

custody, ORR evaluates the ability of any potential sponsor, including the child's

parent, to provide for the child's physical and mental well-being, to protect him or

her from "smugglers, traffickers, or others who might seek to victimize or

otherwise engage the child in criminal, harmful or exploitative activity." Office of

Refugee Resettlement, ORR Policy Guide: Children Entering the United States

Unaccompanied ("ORR Guide") § 2.1, *available at*:

http://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-

unaccompanied (last accessed June 23, 2018); *see also* Supplemental Declaration o

Jallyn Sualog ("Sualog Decl.") ¶ 4 (describing steps in the release process). This

process serves the purposes of the TVPRA to ensure the safe release of children

from Government custody. *See* Sualog Decl. ¶¶ 5-9. Notably, many steps in

---

[2] Where a child's parent has been detained in criminal custody, or has been detained in immigration custody and determined to be ineligible for placement into an ICE FRC, that child is designated as UACs because his or her parent is not "available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

process were developed in response to public criticism after ORR released eight children to traffickers who the children's parents had identified as family friends. *Id.* ¶ 7. The use of home studies, for example, is an important tool for ORR to investigate a potential sponsor to ensure the safety and well-being of a child before release. *Id.* In light of the important safety concerns that underlie the release requirements of the TVPRA, the Court should not order ORR to release UACs from its custody as requested by Plaintiffs in a manner that ignores those requirements.

        4.   <u>Plaintiffs' Proposed Timeline For Reunification Should Not Be Ordered Because It Is Not Tied To Any Applicable Law Governing Reunification.</u>

Because the timeline for reunification proposed by Plaintiffs is not tied to any of the applicable law governing the release of putative class members or their children, it is arbitrary and Plaintiffs have shown no good reason why the Court should order such relief. Even if the Court does order some relief requiring that separated parents and children be considered for reunification in accordance with applicable laws, the timeframe for such consideration should take into account the limited availability of beds at ICE FRCs, the lack of authority for this Court to order the Government to release individuals who are subject to mandatory immigration detention, and the important safety considerations inherent in ORR's release procedures under the TVPRA. Defendants are in the process of

18cv428 DMS MDD

implementing the June 20, 2018 Executive Order to limit incidents of family

separation, and are taking steps to reunify those families who have been separated

in accordance with the applicable laws as discussed above. *See* Zero-Tolerance

Prosecution and Family Reunification, June 23, 2018, available at:

https://www.hhs.gov/about/news/2018/06/23/zero-tolerance-prosecution-and-

family-reunification.html (last accessed June 26, 2018). Orderly implementation of

that executive order will, of course, take time to be undertaken properly. The Court

should not accept Plaintiffs' invitation to preempt or disrupt that implementation

effort. Indeed, a hasty injunctive ruling by this Court on issues of this level of

complexity would be as likely to slow and complicate reunification efforts as to

speed them. Accordingly, this Court should not issue the preliminary injunctive

relief requested by Plaintiffs.

   III.   CONCLUSION

       For the reasons set forth above, this Court should deny the requested

preliminary injunction. The Court should establish a schedule that allows for

orderly briefing regarding any new allegations that Plaintiffs wish to make.

18cv428 DMS MDD

DATED: June 26, 2018

Respectfully submitted,

ADAM L. BRAVERMAN
United States Attorney

SAMUEL W. BETTWY
Assistant U.S. Attorney

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of
Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

Attorneys for Respondents-Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al. | Case No. 18-cv-428 DMS MDD |
| Petitioner-Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying RESPONDENTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 26, 2018

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice

*Attorney for Respondents-Defendants*