IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

THE UNKNOWN HEIRS, DEVISEES, OR
LEGATEES OF BILLIE A. FERRELL,
DECEASED; ROBERT J. MANNING;
SHERRIE L. MANNING; OCCUPANTS,
WHOSE TRUE NAMES ARE UNKNOWN,
IF ANY,

        Defendants.

## C O M P L A I N T

The United States of America for its Complaint against the Defendants states the following:

1.      This action is brought under 28 U.S.C.§ 1345 and 12 U.S.C. §1715 *et seq.* on behalf of the United States Department of Housing and Urban Development ("HUD"), an agency of the United States, by the United States Attorney for the District of New Mexico, as authorized by the Attorney General.

2.      Venue properly lies within this Court's district.

3.      On or about June 3, 2009, Sherrie L. and Robert J. Manning, executed and delivered to Billie A. Ferrell, whose address is 710 Country Club Road, Silver City, NM 88061, the following described real estate in Grant County, NM:

> Lot Sixteen (16), Block Three (3), Amended Subdivision, Unit No. 1, According to the Amended Survey and Plat Therefore Made by Vernon E. Hall, Surveyor, Filed for Record in the Office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in Book 3 of Plats at Page 26.

Said Note is recorded on June 4, 2009 as Document Number 200902389, recorded in

Grant County, NM.   A copy of the Note is attached hereto as Exhibit "A".

4.     On or about November 7, 2009, Billie A. Ferrell, executed and delivered to Generation Mortgage Company, its successors and assigns, an Adjustable Rate Note (Home Equity Conversion), evidencing a debt with variable interest from the date of the Note at the original Note rate of 5.56% per year.   A copy of the Note is attached hereto as Exhibit "B", and made a part hereof as if fully set forth herein ("Note").

5.     Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Billie A. Ferrell, executed and delivered to the Secretary of Housing and Urban Development, an Adjustable Rate First Mortgage (Home Equity Conversion), a copy of which is attached hereto as Exhibit "C", and made a part hereof as if fully set forth herein ("Mortgage").   Said Mortgage was duly recorded on November 16, 2009, in Book 271 Pages 4878-4879, Records of Grant County, New Mexico.   The Mortgage is a valid lien on the following-described real property ("Real Property") subject only to any outstanding ad valorem taxes and liens recorded pursuant to NMSA § 3-36-1 et seq.

> Lot Sixteen (16), Block Three (3), Amended Subdivision, Unit No. 1, According to the Amended Survey and Plat Therefore Made by Vernon E. Hall, Surveyor, Filed for Record in the Office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in Book 3 of Plats at Page 26.

More commonly known as: 710 Country Club Drive, Silver City, NM 88061.

6.     On or about November 27, 2010, Billie A. Ferrell conveyed and assigned its interest in the Note and Mortgage to Sherrie L. and Robert J. Manning.   Said assignment was recorded in the Records of Grant County, New Mexico, on May 5, 2011 as Document Number 201101959, a copy of which is attached hereto as Exhibit "D",

and made a part hereof as if fully set forth herin.

7.      On or about June 6, 2012, Generation Mortgage Company conveyed and assigned its interest in the Note and Mortgage to the Secretary of Housing and Urban Development.   Said assignment was recorded in the Records of Grant County, New Mexico, on July 26, 2012 as Document No. 201203080, a copy of which is attached hereto as Exhibit "E", and made a part hereof as if fully set forth herein.

8.      Plaintiff is informed that Billie A. Ferrell died on February 10, 2013, and a copy of her Certificate of Death is attached hereto as Exhibit "F", and made a part hereof as if fully set forth herein.   There may be other persons unknown to Plaintiff who may make some claim of interest or right in and to the Real Property as heirs of Billie A. Ferrell.   Plaintiff has made due search and inquiry to ascertain the names, residences or whereabouts of such persons, however, such information is unknown and cannot be ascertained.   Further, such parties have been made Defendants in this cause under the name and style as:   The Unknown Heirs, Devisees, or Legatees of Billie A. Ferrell, Deceased.

9.      Under paragraph 9 of the Mortgage and paragraph 7 of the Note, default occurred when the Real Property was no longer the principal residence of Billie A. Ferrell.

10.      The Mortgage provides that in the event of default of the Note, the Mortgage is subject to foreclosure as provided by law.   The Note is in default, and the United States is entitled to have the Mortgage foreclosed.   All conditions precedent to enforcement of the Note and foreclosure of the Mortgage have occurred.

3

11.     Defendant Occupants, Whose True Names are Unknown, if any, may claim an interest in the subject Real Property by reason of possession of the Real Property.

12.     After all just credits and offsets are applied on the Note, there remains owing principal and interest in the amount of $490,714.34 as of February 12, 2018, plus interest at the daily rate of $81.47 from November 7, 2009 to the date of judgment, with interest accruing at the legal rate thereafter until paid, plus the amount of any advances, including ad valorem taxes, costs, expenses, and the United States District Court Clerk filing fee pursuant to 28 U.S.C. § 2412(a)(2).

**WHEREFORE**, the United States requests the following:

A.     *In rem* judgment for principal and accrued interest to February 12, 2018 in the amount of $490,714.34, plus interest accruing from November 7, 2009 at the daily rate of $81.47 to the date of judgment, plus interest thereafter at the legal rate until paid, plus the amount of any advances, including ad valorem taxes, costs, expenses, and the United States District Court Clerk filing fee pursuant to 28 U.S.C. § 2412(a)(2);

B.     The Mortgage be foreclosed;

C.     The United States' lien on the Real Property be declared a valid lien subject only to any outstanding taxes and/or liens recorded pursuant to N.M.S.A. § 3-36-1 *et seq.*;

D.     The Court appoint the United States Marshal as receiver to take possession of, advertise, and sell the Real Property to satisfy the outstanding indebtedness to the United States together with all costs and expenses of the

4

foreclosure sale;

E.     The sale be conducted by the Marshal for cash unless the United States should be the highest and best bidder in which case the United States shall be allowed up to the amount of its judgment as credit on its bid;

F.     The Marshal submit a report of the sale to the Court for approval and, upon approval of the report, the Marshal be released and discharged;

G.     The purchaser at the foreclosure sale take immediate possession and title to the Real Property free and clear of any and all claims of any of the defendants;

H.     The proceeds of the sale be applied as follows:   First, to the payment of the costs and expenses of foreclosure, taxes, advances and applicable statutory fees; next, to the payment and satisfaction of the judgment of the United States; and the balance, if any, to the registry of the Court pending further order or judgment of this Court;

I.     All rights, claims, interests, title, or equity of any defendant and any person claiming through any defendant be barred and foreclosed as to the Real Property;

J.     The redemption period be 30 days from the date of the sale.

JOHN C. ANDERSON
United States Attorney

*Filed electronically 6/25/18*
MANUEL LUCERO
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 224-1467
manny.lucero@usdoj.gov

**WARRANTY DEED**

ROBERT J. MANNING          SHERRIE L. MANNING, husband and wife

to   BILLIE A.   FERRELL, a single person                    for consideration paid, grant

whose address is   710 Country Club Road, Silver City, NM 88061

the following described real estate in                         GRANT

                                                                County, New Mexico:

Lot Sixteen (16), Block Three (3), amended Silver Acres Subdivision, Unit No. 1, according to the amended survey and plat thereof made by Verlon E. Hall, Surveyor, filed for record in the office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966, in Book 3 of Plats at Page 26.

SUBJECT TO ANY EASEMENTS, RESTRICTIONS AND RESERVATIONS OF RECORD.

with warranty covenants.
WITNESS        hand    and seal    this    3    day of    June            2009

_____                        _____
Robert J. Manning        (Seal)                Sherrie L. Manning        (Seal)

                                               _____
                                                                         (Seal)

STATE OF NEW MEXICO        **ACKNOWLEDGEMENT FOR NATURAL PERSONS**
COUNTY OF   GRANT        }ss.
This instrument was acknowledged before me on   June            3
by   Robert J. Manning    and Sherrie L. Manning, husband and wife        2009

My commission expires:                                          _____
(Seal)        PHYLLIS J. JACOBS                                  Notary Public
              NOTARY PUBLIC
              STATE OF NEW MEXICO

        For Recordation Analysis Sixteen            **ACKNOWLEDGEMENT FOR CORPORATION**

                                    STATE OF NEW MEXICO
                                    COUNTY OF_____ }ss.
                                    This instrument was acknowledged before me on

                                    by_____                    ,19___
                                                        (date)
                                    _____of_____
                                        (Title of Officer)            (Name of Corporation Acknowledging)
                                    a_____corporation, on behalf of said corporation.

                                    My commission expires:
                                    (Seal)                        _____
                                                                  Notary Public

Printed by The New Valiant Company, Albuquerque NM        © COPYRIGHT WARNING: Reproduction of this form print to legal use is a violation of the Federal Copyright Law.

**EXHIBIT**
A

This Document Prepared By:
**GENERATION MORTGAGE
COMPANY**

**3565 PIEDMONT ROAD SUITE 300**

**ATLANTA, GA 30305**

When Recorded Mail To:
**GENERATION MORTGAGE
COMPANY**

**3565 PIEDMONT ROAD SUITE**

**ATLANTA, GA 30305**

**PHONE:**

200904878 B: 271 P: 4878 Pgs: 9  MTG
This instrument was recorded on 11/16/2009 03:48:30 PM
Robert Zamarripa, County Clerk, Grant County NM
Deputy - sparra

———————————— [Space Above This Line For Recording Data] ————————————

**State of New Mexico**

FHA Case No.  **361-3337212-951/255**
Loan No.     **1060901908**

# CLOSED-END FIXED RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **NOVEMBER 07, 2009**          . The mortgagor is
**BILLIE A. FERRELL**

whose address is **710 COUNTRY CLUB DRIVE
SILVER CITY, NEW MEXICO 88061-6694**                                      ("Borrower").
This Security Instrument is given to
**GENERATION MORTGAGE COMPANY**

                                                                          , which is
                                                                          , and whose address is
organized and existing under the laws of **CALIFORNIA**
**3565 PIEDMONT ROAD SUITE 300, ATLANTA, GA 30305**

                                                                          ("Lender").
Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances,
under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument
("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security
Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**FIVE HUNDRED TWENTY FIVE THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $ **525,000.00**          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in **GRANT**                     County, New Mexico:

First American Loan Production Services                         New Mexico HECM Security Instrument
© 2008 First American Real Estate Solutions LLC
FALPS# UA61 : 01/09                          Page 1



**EXHIBIT**

**B**

PENGAD 800-631-6989

1060901908                                                    10
Name: FERRELL                          Location: KASOTA
Customer: GENR                         Pool: GNMAHECM-GNMA

See Attached Exhibit A

which has the address of  **710 COUNTRY CLUB DRIVE**

[Street]

| **SILVER CITY** | , | **NEW MEXICO** | **88061-6694** | ("Property Address"); |
|---|---|---|---|---|
| [City] | | [State] | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.     **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3.     **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.    **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.    **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

    (i) A Borrower dies and the Property is not the Principal residence of at least one surviving Borrower; or

    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

   (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

    (i) The Property ceases to be the Principal residence of a Borrower for reasons other than death and the Property is not the Principal residence of at least one other Borrower; or

    (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal residence of at least one other Borrower; or

    (iii) An obligation of the Borrower under this Security Instrument is not performed.

   (c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

   (d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

   (e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a Principal residence for purposes of this Paragraph 9.

   (f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by Applicable Law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower

shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii)  Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d)  **No Duty of the Secretary.**  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.  **Forbearance by Lender Not a Waiver.**  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.  **Successors and Assigns Bound; Joint and Several Liability.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.  **Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  **Governing Law; Severability.**  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.  **Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

19.  **Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  **Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument through a power of sale granted to the Trustee in accordance with the Deed of Trust Act, or may be foreclosed in any judicial mortgage foreclosure, at the option of Lender.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Redemption Period.** If this Security Instrument is foreclosed, the redemption period after judicial sale shall be one month.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider
☐ Other (Specify)

(Acknowledgments on following page)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Billie A. Ferrell_ _____ (Seal)
**BILLIE A. FERRELL**                                              -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ [Space Below This Line For Acknowledgment] _____

State of New Mexico

County of Grant

This instrument was acknowledged before me on November 7, 2009 _____ by
_____ Billie A Ferrell .

**OFFICIAL SEAL**
**DINA PATTON**
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: Mar. 08, 2010

(Signature of notarial officer)
Notary Public
Title (and Rank)

(Seal, if any)

[My commission expires: 03-06-10 ]

First American Loan Production Services                                New Mexico HECM Security Instrument
© 2008 First American Real Estate Solutions LLC
FALPS# UA68 : 05/08                        Page 8

## Exhibit A

**Lot Sixteen (16), Block Three (3), Amended Silver Acres Subdivision, Unit No. 1, according to the amended survey and plat thereof made by Verlon E. Hall, Surveyor, filed for record n the office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in book 3 of Plats at page 26.**

The Document Prepared By:
**GENERATION MORTGAGE COMPANY**

**3565 PIEDMONT ROAD SUITE 300**

**ATLANTA, GA 30305**

|||||||||||||||||||||
*2*

RECEIVED BY
GLB.MGC

FEB 2 8 2010

When Recorded Mail To:
**GENERATION MORTGAGE COMPANY**

**3565 PIEDMONT ROAD SUITE**

**ATLANTA, GA 30305**

**PHONE:**

200904879 B: 271 P: 4879 Pgs: 9 MTG
This instrument was recorded on 11/16/2009 03:48:30 PM
Robert Zamarripa, County Clerk, Grant County NM
Deputy - sparra

———————————— [Space Above This Line For Recording Data] ————————————

State of New Mexico

FHA Case No.  361-3337212-951/255
Loan No.      1060901908

# CLOSED-END FIXED RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **NOVEMBER 07, 2009**. The mortgagor is **BILLIE A. FERRELL**

whose address is **710 COUNTRY CLUB DRIVE SILVER CITY, NEW MEXICO 88061-6694** ("Borrower"). This Security Instrument is given to The Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **FIVE HUNDRED TWENTY FIVE THOUSAND AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $ **525,000.00** ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **GRANT** County, New Mexico:

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# UA69 : 01/09

Page 1

New Mexico HECM Second Security Instrument


*361-3337212*

**EXHIBIT C**

See Attached Exhibit A

which has the address of   **710 COUNTRY CLUB DRIVE**
                                                                              ,
                                          [Street]

**SILVER CITY**          ,          **NEW MEXICO**          **88061-6694**          ("Property Address");
[City]                                        [State]                             [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1.**    **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

    **2.**    **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

    **3.**    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# UA70 : 05/08                                              Page 2

New Mexico HECM Second Security Instrument

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6.   Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.    **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9.    **Grounds for Acceleration of Debt.**

(a)  **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i)  A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv)  For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v)  An obligation of the Borrower under this Security Instrument is not performed.

(b)  **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c)  **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i)  Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)  Pay the balance in full; or

(iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv)  Provide the Lender with a deed in lieu of foreclosure.

(d)  **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

10.    **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

11.    **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even

though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e)   **Restrictions on Enforcement.**   Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14.   **Forbearance by Lender Not a Waiver.**   Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.   **Successors and Assigns Bound; Joint and Several Liability.**   Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16.   **Notices.**   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.   **Governing Law; Severability.**   This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18.   **Borrower's Copy.**   Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19.   **Assignment of Rents.**   Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.   **Foreclosure Procedure.   If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument through a power of sale granted to the Trustee in accordance with the Deed of Trust Act, or may be foreclosed in any judicial mortgage foreclosure, at the option of Lender. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

21.   **Lien Priority.**   The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22.  Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23.  Redemption Period.**  If this Security Instrument is foreclosed, the redemption period after judicial sale shall be one month.

**24.  Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider
☐ Other (Specify)

(Acknowledgments on following page)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Billie Ferrell*

_____ (Seal)
**BILLIE A. FERRELL**                                                    -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

_____[Space Below This Line For Acknowledgment]_____

State of New Mexico

County of __Grant.__

This instrument was acknowledged before me on __November 7, 2009.__ by
__Billie A Ferrell__

OFFICIAL SEAL
DINA PATTON
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: Mar. 08, 2010

_____
(Signature of notarial officer)

__Notary Public__
Title (and Rank)

(Seal, if any)

[My commission expires: __03-06-10__ ]

First American Loan Production Services
© 2008 First American Real Estate Solutions LLC
FALPS# UA76 : 05/08                          Page 8

New Mexico HECM Second Security Instrument

## Exhibit A

Lot Sixteen (16), Block Three (3), Amended Silver Acres Subdivision, Unit No. 1, according to the amended survey and plat thereof made by Verlon E. Hall, Surveyor, filed for record n the office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in book 3 of Plats at page 26.

TRANSFER ON DEATH DEED

Billie A. Ferrell, a single woman, of Grant County,  for consideration paid, grants to Sherrie L. and Robert J. Manning, beneficiaries, whose address is 710 Country Club Dr, Silver City NM 88061, the following described real estate in Grant County, Silver City, NM, also known as 710 Country Club Drive, Silver City, NM:

Lot Sixteen (16), Block Three (3), Amended Subdivision, Unit No. 1, according to the amended survey and plat therefore made by Verion E. Hall, Surveyor, filed for record in the office of the County Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in Book 3 of Plats at page 26.

TRANSFER ON DEATH DEED IS REVOCABLE.  IT DOES NOT TRANSFER ANY OWNERSHIP UNTIL THE DEATH OF THE OWNER.  IT REVOKES ALL PRIOR BENEFICIARY DESIGNATIONS BY THIS OWNER FOR THIS INTEREST IN REAL ESTATE.

This Transfer on Death Deed is made pursuant to S 45-6-401 NMSA 1978, as amended.

*Billie Ferrell*

ACKNOWLEDGMENT

STATE OF NEW MEXICO, COUNTY OF GRANT

This instrument was acknowledged before me this 27 day of November, 2010 by Ida M Baker

My Commission Expires: 9-29-2013          SEAL

201101999 B: 273 P: 1999 Pgs: 1  Deed
This instrument was recorded on 05/05/2011 02:30:13 PM
Robert Zamarripa, County Clerk, Grant County NM
Deputy - sparra



EXHIBIT

D

PENGAD 800-631-6989


3

**RECORDING REQUESTED BY**
Generation Mortgage Company

**WHEN RECORDED RETURN TO**
Generation Mortgage Company
3 Piedmont Center
3565 Piedmont Road Ste 300
Atlanta GA 30305 1538
Attn Final Docs

**PREPARED BY**
Generation Mortgage Company
3 Piedmont Center
3565 Piedmont Road Ste 300
Atlanta GA 30305 1538

FHA CASE NUMBER  361 3337212 951
GMC LOAN NUMBER  1060901908

201203080 B  274 P  3080 Pgs  2  Assign
This instrument was recorded on 07/26/2012 02 24 47 PM
Robert Zamarripa  County Clerk  Grant County NM
Deputy -  rzamarripa

Space above h s line for re order s use

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For value received  Generation Mortgage Company (herein  Assignor )  whose address is 3 Piedmont Center 3565 Piedmont Road Ste 300 Atlanta GA 30305 1538 does hereby grant sell assign transfer and convey unto Secretary of Housing and Urban Development  whose address is
451 Seventh St  S W  Washington  D C  20410  _____ (herein  Assignee )  a certain Deed of Trust dated 11/7/2009 in the amount of $525 000 00 and executed by BILLIE A FERRELL, in favor of Generation Mortgage Company and recorded on 11/16/2009, as Instrument or Document number ✗ county of GRANT State of NM

✗ Book 271  pg 4878

**Legal Description Attached**

**TOGETHER** with the note or notes therein described or referred to  the money due and to become due thereon with interest  and all rights accrued or to accrue under said Deed of Trust  **IN WITNESS WHEREOF**  the undersigned Assignor has executed this Assignment of Deed of Trust on 6/6/2012

Generation Mortgage Company

By _____
     Mary Ann Rutledge  V P Operations

**STATE OF GEORGIA**          **COUNTY OF COWETA**
On 6/6/2012 before me Dina Cabrera a notary public in and for said State  personally appeared Mary Ann Rutledge  V P Operations of Generation Mortgage Company 3 Piedmont Center 3565 Piedmont Road Ste 300 Atlanta GA 30305 1538  personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person  or entity upon behalf of which the person acted  executed the instrument

WITNESS my hand and official seal

Signature _____
          Notary  Dina Cabrera

DINA IBIS CABRERA
NOTARY
EXPIRES
GEORGIA
Feb 23 2016
PUBLIC
COWETA COUNTY

**EXHIBIT**
E
PENGAD 800-631-6989

**Exhibit A**

**Lot Sixteen (16), Block Three (3), Amended Silver Acres Subdivision,
Unit No  1, according to the amended survey and plat thereof made by
Verlon E  Hall, Surveyor, filed for record n the office of the County
Clerk of Grant County, Silver City, New Mexico, June 28, 1966 in book
3 of Plats at page 26**

STATE OF NEW MEXICO

# CERTIFICATE OF DEATH

New Mexico Vital Records and Health Statistics
State of New Mexico
United States of America

No. 3194456

DECEDENT'S LEGAL NAME <<<Billie Adair Ferrell>>>

| DATE OF DEATH | MARITAL STATUS | IF FEMALE, MAIDEN NAME <<<Belk>>> |
|---|---|---|
| February 10, 2013 | Divorced | |

| TIME OF DEATH | | SEX | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| 02:30 | AM ☐ PM ☒ | Female | 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 |

| DATE OF BIRTH | BIRTH PLACE | SERVED IN U.S. ARMED FORCES |
|---|---|---|
| May 13, 1921 | Texas | Yes ☐ No ☒ |

| DECEDENT'S RACE | | HISPANIC |
|---|---|---|
| White | TRIBE | Yes ☐ No ☒ |

DECEDENT'S RESIDENCE COUNTY: Grant
DECEDENT'S RESIDENCE STATE: New Mexico

MOTHER'S FULL MAIDEN NAME <<<Irena McGregor>>>
FATHER'S FULL NAME <<<Daniel Eldon Belk>>>

COUNTY OF DEATH: Grant

PLACE OF DEATH: Silver City Care Center
TYPE OF PLACE: Nursing Home/Long Term Care Facility ☐

FUNERAL SERVICE FACILITY: Baca's Funeral Chapels, Silver City

METHOD OF DISPOSITION:
☐ Burial   ☒ Cremation   ☐ Donation   ☐ Entombment   ☐ Removal from State   ☐ Other (Specify)

DISPOSITION LOCATION: Baca's Silver City Crematory

NAME OF PERSON CERTIFYING CAUSE OF DEATH <<<Bassam Ferris MD>>>

MANNER OF DEATH:
☒ Natural   ☐ Accident   ☐ Homicide   ☐ Suicide   ☐ Undetermined   ☐ Pending Investigation

CAUSE OF DEATH

PART I. Events such as diseases, injuries, or complications that directly caused the death.

Cardiac Arrhythmia

Congestive Heart Failure

Vascular Disease

PART II. Other significant conditions contributing to death.
<<<>>>
<<<>>>
<<<>>>

File Number: 2013-001638
File Date: February 14, 2013
Order Number: 20130206703

*Mary Anne Escudero*, State Registrar

CERTIFIED COPY OF VITAL RECORD

This is a true and exact reproduction of all or part of the document registered with the New Mexico Bureau of Vital Records and Health Statistics.

```
201300001 B. 275 P: 001 Pg: 1 Dustin
This document was recorded 07/10/2013 03:00:31 PM
Robert I. Zamarripa, County Clerk, Grant County NM
Deputy:
```

The back of this document contains a watermark    •    Hold up to light to view.
This document is not authentic unless reproduced on safety paper displaying the raised seal of New Mexico


EXHIBIT
F

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
Heirs of Billie A. Ferrell, Deceased; Robert J. Manning; Sherrie L. Manning, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bernalillo
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Manuel Lucero, Assistant United States Attorney
P.O. Box 607 Albuquerque, NM 87103
(505) 224-1467

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345; 12 U.S.C. § 1715
Brief description of cause:
Complaint for foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
490,714.34

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
06/25/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Manuel Lucero, Assistant United States Attorney

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____