# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.; et al.,<br><br>    Petitioners-Plaintiffs,<br><br>v.<br><br>U.S Immigration and Customs Enforcement ("ICE"); et al.,<br><br>    Respondents-Defendants. | Case No.: 18cv0428 DMS (MDD)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

      Pending before the Court is Plaintiffs' motion for class certification. Plaintiffs, on behalf of themselves and putative class members, allege the Government has a widespread practice or policy of separating migrant families, and placing the children in facilities for "unaccompanied minors." Recent developments validate Plaintiffs' allegations. Plaintiffs seek to certify a class of similarly situated individuals for whom injunctive relief can be entered prohibiting separation of migrant parents from their minor children without first determining they are unfit parents or otherwise present a risk of danger to their children, as well as an injunction requiring reunification of migrant parents who are returned to immigration custody upon completion of any criminal proceedings, absent a determination that the parent is unfit or presents a danger to the child.

On June 6, 2018, the Court entered an order finding Plaintiffs had stated a claim for violation of their substantive due process rights to family integrity under the Fifth Amendment to the United States Constitution based on claims that the Government had separated them from their minor children while Plaintiffs were held in immigration detention without a showing that they were unfit parents or otherwise presented a danger to their children. *Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 2018 WL 2725736, at *9-12 (S.D. Cal. June 6, 2018). Since the issuance of that Order, the practice of family separation has intensified and become a matter of intense national debate.

The Attorney General of the United States announced a "zero tolerance" policy.[1] Under that policy, all adults entering the United States illegally would be subject to criminal prosecution, and if accompanied by a minor child, the child would be separated from the parent. Over the ensuing weeks, hundreds of migrant children were separated from their parents, further stoking the flames of nationwide protest. On June 20, 2018, the President of the United States signed an Executive Order ("EO") to "maintain family unity" by keeping migrant families together during criminal and immigration proceedings to the extent permitted by law, while maintaining "rigorous[]" enforcement of immigration laws. *See* Executive Order, Affording Congress an Opportunity to Address Family Separation § 1, 2018 WL 3046068 (June 20, 2018). On Saturday, June 23, 2018, the Department of Homeland Security ("DHS") issued a "Fact Sheet" outlining the Government's efforts to "ensure that those adults who are subject to removal are reunited with their children for the purposes of removal."[2]

---

[1] *See* U.S. Att'y Gen., *Attorney General Sessions Delivers Remarks Discussing the Immigration Enforcement Actions of the Trump Administration* (May 7, 2018), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-discussing-immigration-enforcement-actions.

[2] *See* U.S. Dep't of Homeland Sec., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (June 23, 2018),

Following issuance of the EO, a status conference was held on June 22, 2018, at which time Lee Gelernt and Bardis Vakili appeared for Plaintiffs, and Sarah Fabian and Samuel Bettwy appeared for Defendants. After hearing from counsel and considering the parties' supplemental briefing, Plaintiffs' motion for class certification is granted in part for the reasons set forth below.

# I.

# DISCUSSION[3]

Plaintiff Ms. L. and her minor child S.S. arrived lawfully at one of our nation's ports of entry seeking asylum. Ms. L. and her child were detained together for several days, and later "forcibly separated" by immigration officials without a determination that Ms. L. was unfit or presented a danger to her child. S.S., then six years old, was placed in a government facility for "unaccompanied minors" over a thousand miles away from Ms. L. Ms. L. and S.S. were separated for nearly five months.

Plaintiff Ms. C. and her minor child J. entered the United States illegally between ports of entry. Upon apprehension by a Border Patrol agent, Ms. C. made a claim for asylum. She was arrested, charged with misdemeanor illegal entry under 8 U.S.C. § 1325(a) ("criminal improper entry" under EO § 1), and served 25 days in custody. After serving her criminal sentence, Ms. C. was returned to immigration detention to contest removal and pursue her asylum claim. Ms. C.'s minor son was also placed in a government facility for "unaccompanied minors," hundreds of miles away from his mother. Undisputed news reports reflect the two were reunited earlier this month, after being

---

https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification.

[3] The factual background set out herein is abbreviated. A full discussion of the facts relevant to this lawsuit is set out in the Order granting Plaintiffs' motion for classwide preliminary injunction filed concurrently herewith and Order granting in part and denying in part Defendants' motion to dismiss. *Ms. L.*, 2018 WL 2725736, at *1-3.

separated for over eight months.[4] Plaintiffs allege Defendants failed to reunite Ms. C. and her son during this period of time even though Ms. C.'s fitness as a parent was never questioned by government officials. Plaintiffs do not challenge the initial separation of Ms. C. from her child, as the separation resulted from prosecution for illegal entry and placement in criminal custody.[5] Rather, Ms. C. challenges the Government's failure to reunify her with her son after she completed her 25-day criminal sentence and was returned to immigration detention.

Ms. L.'s claim is based on the initial separation from her child while in immigration detention; Ms. C.'s claim is based on the failure to reunite her with her child after serving her criminal sentence and being returned to immigration detention. Both claims focus on government conduct separating parents from minor children while the parent is detained pending immigration proceedings without a showing the parent is unfit or presents a danger to the child. Plaintiffs allege separation from their children under these circumstances

---

[4] *See* Tom Llamas et al., *Brazilian Mother Reunites with 14-year-old son 8 Months After Separation at U.S. Border*, ABC NEWS (June 5, 2018, 6:50 PM), https://abcnews.go.com/US/brazilian-mother-reunites-14-year-son-months-separation/story?id=55666724.

[5] In their Supplemental Briefing, Plaintiffs point out that when a parent is prosecuted for illegal entry, separation is not required. "If the parent is being prosecuted but is nonetheless being held in a DHS facility, then there is no need to separate the family, because DHS can house families." (Pls.' Suppl. Br. at 8.) The EO in fact provides for "family unity" by directing DHS "to maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings[,]" to the extent permitted by law. EO § 3. This is a new development. Plaintiffs argue the confusion is the result of the "government's shifting practice regarding the detention of parents facing criminal prosecution." (Pls.' Suppl. Br. at 8.) For purposes of defining the class, however, the Court will carve out parents who fall within the EO. EO § 2(a) (defining "Alien family"). The EO provides for "family unity" and detaining "family units" together, *id.* §§ 1, 3, so further relief may be unnecessary. The EO also employs its own standard for determining detention of alien families. *Id.* § 3(b). To avoid potential conflict with the standard employed by the EO and that used by the Court, the class definition will not include such individuals. (*See* Defs.' Suppl. Br. at 3.) The Court reserves on other issues that might arise given these recent developments.

violates their right to family integrity under the Due Process Clause of the Fifth Amendment to the United States Constitution. In the Complaint, Plaintiffs alleged that hundreds of other migrant families had been subjected to the same treatment and that this had become a widespread practice of the current Administration. They cited numerous reports that the Government would soon adopt a formal national policy of separating migrant families and placing the children in government facilities for "unaccompanied minors." The Government initially denied it had such a practice or policy, but has since distanced itself from that position in light of recent developments—including the zero tolerance policy which touted family separation.

Plaintiffs, on behalf of themselves and putative class members, request certification of the following class:

> All adult parents nationwide who (1) are or will be detained in immigration custody by the Department of Homeland Security, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

(Am. Compl. ¶ 65; Mem. in Supp. of Mot. at 1.) Plaintiffs argue this proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2). Defendants dispute these requirements are met. The only claim currently at issue and subject to certification is Plaintiffs' due process claim.[6] Plaintiffs' pending motion for classwide preliminary injunction is addressed in a separate order.

### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

---

[6] The Court expresses no opinion on whether Plaintiffs are entitled to certification on any other claim that may be asserted in Plaintiffs' Second Amended Complaint. At the hearing on June 22, 2018, Plaintiffs' counsel indicated an amended pleading would be forthcoming, but requested the Court to rule on the presently pending motions.

338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977). "The Rule 'does not set forth a mere pleading standard.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350). "Rather, a party must not only 'be prepared to provide that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims of defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)[.]" *Id.* (quoting *Dukes*, 564 U.S. at 350) (internal citation omitted).

Federal Rule of Civil Procedure 23(a) sets out four requirements for class certification—numerosity, commonality, typicality, and adequacy of representation. A showing that these requirements are met, however, does not warrant class certification. The plaintiff also must show that one of the requirements of Rule 23(b) is met. Here, Plaintiffs assert they meet the requirements of Rule 23(b)(2).

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because the relief requested in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required. *See Dukes*, 564 U.S. at 361-62 (noting relief sought in a (b)(2) class "perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity to opt out).

The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's

cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558 (1963)). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. United States Steel Corp.*, 709 F.2d 675, 680 (11th Cir. 1983) (plaintiff's burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee notes. If a court is not fully satisfied that the requirements of Rule 23(a) and (b) have been met, certification should be refused. *Falcon*, 457 U.S. at 161.

**B. Rule 23(a)**

Rule 23(a) and its prerequisites for class certification—numerosity, commonality, typicality, and adequacy of representation—are addressed in turn.

1. Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

Here, Plaintiffs asserted in their motion that there were as many as 700 families that fell within the proposed class. In support of this assertion, Plaintiffs presented declarations from a number of attorneys that provide legal services to immigrant families in border States. (*See* Mem. in Supp. of Mot., Exs. 13-15.) Those attorneys declared they had seen hundreds of situations of children separated from their parents after being apprehended by DHS officials. (*See id.*, Ex. 13 ¶ 4; Ex. 14 ¶¶ 3-5; Ex. 15 ¶ 2.) One of those attorneys also

stated separations were occurring even when there was no "substantiated reason to suspect that the adult and child are not in fact related, or reason to suspect that the child is in imminent physical danger from the adult[.]" (*Id.*, Ex. 14 ¶ 6;) (*see also id.*, Ex. 15 ¶ 3) (stating "parents have been forcibly separated from their children and placed in detention for extended periods of time without any information regarding their whereabouts, safety, or wellbeing."). This evidence is sufficient to show the numerosity requirement is met here. Accordingly, Plaintiffs have satisfied the first requirement of Rule 23(a).[7]

### 2. Commonality

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This element has "'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "However, it is insufficient to merely allege any common question[.]" *Id.* Instead, the plaintiff must allege the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Dukes*, 564 U.S. at 350. As summarized by the Supreme Court:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers.

---

[7] Notably, Defendants do not challenge whether the numerosity requirement is met, and at the May 4, 2018 hearing on this motion, they did not dispute Plaintiffs' approximation of the number of families that had been separated. Since the hearing, DHS has stated that "1,995 minors were separated from their 'alleged adult guardians' at the southern border in just over a month long period." *See* Brian Naylor, *DHS: Nearly 2,000 Children Separated from Adults at Border in 6 Weeks*, NPR (June 16, 2018, 7:01 AM), https://www.npr.org/2018/06/16/620451012/dhs-nearly-2-000-children-separated-from-adults-at-border-in-six-weeks. On June 23, 2018, DHS indicated in its Fact Sheet that as of June 20 it had 2,053 separated minors in HHS funded facilities. U.S. Dep't of Homeland Sec., *supra* note 2.

8

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

In this case, Plaintiffs assert there are a number of questions common to the class. First, they assert they are alleging the same legal claim, namely whether Defendants' practice of separating putative class members from their minor children and continued separation without a hearing and determination that they are unfit parents or present a danger to their children violates their right to family integrity under the Due Process Clause. Second, Plaintiffs contend the facts underlying their claims are the same: each was detained with their child by government actors, who then separated them from their children, or failed to reunite them, without a showing they were unfit or presented a danger to the child. Third, Plaintiffs assert they suffered the same injury, namely separation from their children in violation of their constitutional rights. Fourth, Plaintiffs contend they are challenging the same government practice regarding separation of parents and children or the refusal to reunite parents and children absent a showing the parent is unfit or presents a danger to the child. Finally, Plaintiffs claim they are seeking the same relief: a declaration that the conduct at issue is unlawful, and injunctions (1) preventing the separation of such parents and children without a showing the parent is unfit or presents a danger to the child, and (2) requiring reunification of the families already separated absent similar findings.

Defendants argue these questions cannot be answered on a classwide basis because the circumstances surrounding each separation of parent and child are different. In support of this argument, Defendants point to the circumstances giving rise to the separations of Plaintiffs and their children in this case, which are indisputably different. Ms. L. was separated from her daughter because the Government allegedly could not confirm parentage (though a DNA test taken several months after Ms. L. was separated from her child confirmed the relationship), while Ms. C. was separated from her son when she was apprehended near the border, charged with illegal entry, and placed in custody pending resolution of her criminal case.

9

In addition, at oral argument Government counsel set forth another scenario that could result in family separation, namely parents with criminal history that prevents them from being released into the community along with their child or housed together in a detention center with other families.[8] Obviously, these parents would be situated differently from Ms. L. and Ms. C., neither of whom presented this situation. Unlike with Ms. L. and Ms. C., the Government would have a legitimate interest in continuing detention of individuals who posed a flight risk or danger to the community or others in a family detention facility because of that person's criminal history. A parent with some kind of communicable disease could also raise legitimate safety concerns.

Plaintiffs concede a parent with a communicable disease might be separately detained, but disagree that criminal history can serve as a generalized exception to the Government's new policy of "family unity." Criminal history comes in all gradations, from minor misdemeanors to violent felony offenses. Some types of criminal history would clearly justify separate detention of the parent, while other criminal history might not—and the exercise of governmental discretion to separately detain that individual might be challenged. Whether separate detention of such parents violates substantive due process could raise individualized inquiries.

In addition, Plaintiffs' proposed class definition could include migrant families apprehended in the interior of the country. The number of such families is presently unknown and not part of the record before the Court. This group could include families present in the country for quite some time, with established family roots and connections. These parents also might have both citizen and alien children. The application of

---

[8] At oral argument on May 4, 2018, Government counsel pointed out that one of the declarations submitted by a putative class member involved a "mother who had a significant criminal history, so ICE [Immigration and Customs Enforcement] was unable to place her in the family residential center because … [such] centers are a very open setting. There is [sic] sort of pods. Families are housed together…. There is free movement. It is not a dentventive setting." (ECF No. 70, at 21-22.)

substantive due process to this potential group has not been briefed, and presents issues that Plaintiffs have indicated they are prepared to address at a later time.

The focus of the present litigation has always been on migrant families entering the United States at or between designated ports of entry. Most of these families are seeking asylum but not all. (*See* Am. Compl. ¶ 4) ("[A]lmost all of these individuals have fled persecution and are seeking asylum in the United States."). Thus, although Plaintiffs' proposed class does not exclude parents with criminal history or communicable disease, or those in the interior of the country, the Court finds it appropriate to carve them out of the proposed class. *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) (stating Federal Rule of Civil Procedure 23 "provides district courts with broad authority at various stages in the litigation … to redefine … classes as appropriate.") (citation omitted). Accordingly, the Court excepts from the class definition—without prejudice to redefining the class on a more fulsome record—parents with criminal history or communicable disease, or those apprehended in the interior of the country.[9]

As discussed, the focus of this litigation is on the Government's practice of separating migrant parents and children without any showing the parent is unfit or presents a danger to the child, and the continued separation of migrant families without any showing the parent is unfit or presents a danger to the child even after the parents have completed their criminal proceedings and are returned to immigration detention. Those circumstances

---

[9] At oral argument on May 4, 2018, Government counsel also argued that lack of "bed space" could cause family separation. At that time, the "total capacity in residential centers [was] less than 2,700[,]" according to counsel. (ECF No. 70, at 9.) And there was only one such center for migrant fathers and children, which has "84 or 86 beds." (*Id*. at 43-44.) Recent events, however, have overtaken that argument. The Government is actively constructing or converting facilities, even military facilities, to manage the growing population of migrant families. The EO directs federal agencies to marshal resources to support family custody. *See* EO § 3(c) ("The Secretary of Defense shall take all legally available measure to provide to the Secretary [of Homeland Security], upon request, any existing facilities available for the housing and care of alien families, and shall construct such facilities if necessary and consistent with law.").

are present in the cases of Ms. L. and Ms. C. Ms. L. lawfully arrived at a port of entry and was separated from her daughter for nearly five months without any showing she was unfit or presented a danger to her, and Ms. C.'s separation from her son continued even after she was returned to immigration custody and despite any showing she was unfit or presented a danger to him. The circumstances of Plaintiffs and their children in this case and the situations described in the declarations submitted in support of this motion are evidence there is a common practice at issue here, namely separating migrant parents and children and failing to reunite them without a showing the parent is unfit or presents a danger to the child. (*See* Mem. in Supp. of Mot., Exs. 12-15; Reply in Supp. of Mot., Exs. 21-26) (five declarations of parents arriving at designated point of entry, and one declaration of a parent apprehended between ports of entry). Whether that practice violates substantive due process is a question common to the class, and the answer to that question is "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting *Nagareda*, *supra*, at 132).

"[C]ommonality only requires a single significant question of law or fact[,]" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 564 U.S. at 359), and that is particularly so where a suit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). The Ninth Circuit's decision in *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), is instructive. In that case, the court was faced with a commonality question similar to the one presented here. That case involved a claim that certain policies and practices of the Arizona Department of Corrections ("ADC") violated the Eighth Amendment's proscription against cruel and unusual punishment. *Id.* at 662-63. The defendants in *Parsons*, similar to Defendants here, argued the commonality requirement was not met because the plaintiffs' claims were simply "'a collection of individual constitutional violations,' each of which hinges on 'the particular facts and circumstances of each case.'" *Id.* at 675 (quoting Defs.' Reply Br. at 9-10). The Ninth Circuit disagreed. It found the defendants' argument "rest[ed] upon a misunderstanding of the plaintiffs' allegations." *Id.* at 676. Contrary to the defendants' interpretation of the claim, the court stated, "The

Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm." *Id.* (internal citation omitted). The court then went on to state:

> These policies and practices are the "glue" that holds together the putative class …; either each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.

*Id.* at 678.

Here, as in *Parsons*, Plaintiffs' claims do not rest on the individual circumstances of each separation of parent and child. Rather, Plaintiffs are challenging the Government's practice of separating migrant parents and children and keeping them separate without a showing the parent is unfit or presents a danger to the child. Under these circumstances, the reasoning of *Parsons* applies here, and that reasoning compels the same conclusion, namely that the commonality requirement is met.

    3.    Typicality

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). The typicality requirement will occasionally merge with the commonality requirement, *Parsons*, 754 F.3d at 687, because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named

13

plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

Here, Plaintiffs rely on the arguments raised on commonality to support a showing of typicality, and Defendants rely on the arguments raised in response thereto to show the typicality requirement is also not met. For the reasons set out above, however, the Court finds Plaintiffs' claims are typical of the claims of absent class members.

Both Plaintiffs were separated or remained separated from their children without any showing they were unfit or presented a danger to their child. By definition, each member of the proposed class will have been subject to this same practice. Furthermore, Plaintiffs' claims are the same as those raised by absent class members, namely the Government's practice of separating parents and children under the circumstances set out above violates their right to due process. Finally, the injuries suffered by the named Plaintiffs are the same as those suffered by members of the proposed class: separation from their children. *See Parsons*, 754 F.3d at 685 (finding typicality requirement met where named plaintiffs "allege 'the same or [a] similar injury' as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims."). Certainly, the claims of the named Plaintiffs and the claims of class members "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. The typicality requirement is therefore met.

4. <u>Adequacy of Representation</u>

The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do

the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

As to the named Plaintiffs, Defendants argue they are not adequate representatives of the proposed class because both Plaintiffs' claims are moot and the Court lacks venue over Ms. C.'s claims. For the reasons set out in the Court's Order on Defendants' motion to dismiss, the Court rejects these arguments as a basis for finding Plaintiffs to be inadequate representatives. Rather, Plaintiffs have shown they do not have any conflicts of interest with other class members and that they will protect the interests of the class. Accordingly, Plaintiffs are adequate representatives for the class.

Plaintiffs have also demonstrated their counsel are adequate. There is no conflict between Plaintiffs' counsel and the members of the proposed class, and counsel have demonstrated they will prosecute the case vigorously on behalf of the class. Accordingly, the requirement of Rule 23(a)(4) is met.

**C. Rule 23(b)**

Having satisfied the requirements of Rule 23(a), the next issue is whether Plaintiffs have shown that at least one of the requirements of Rule 23(b) is met. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Here, Plaintiffs assert they have met the prerequisites of certification for a class under Rule 23(b)(2).

Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2). The parties agree:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can

be enjoined or declared unlawful only as to all of the class members or as to none of them." [citation omitted] In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360.

Plaintiffs here argue this case is particularly suited for certification under Rule 23(b)(2) because they are presenting a civil rights challenge to a practice that applies to all members of the proposed class, and that practice can be declared lawful or unlawful as to the class as a whole. *See Walters v. Reno*, 145 F.3d 1032, 1046-47 (9th Cir. 1998) (stating Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions[,]" and is satisfied "if class members complain of a pattern or practice that is generally applicable to the class as a whole."); *see also Parsons*, 754 F.3d at 686 (same).

Defendants assert individual inquiries would be necessary to determine who falls within the class definition, which precludes certification under Rule 23(b)(2). Defendants point out the proposed class only includes the time period "'while a parent is in immigration custody, and not the period of separation while the parent is in jail for criminal conviction.'" (Opp'n to Mot. at 14) (quoting ECF No. 35-1, at 11.) Defendants argue the problem with Plaintiffs' proposed class definition is found in the case of Ms. C.: "It is unclear at what point Ms. C. would become a member of Plaintiffs' proposed class— whether at the point she was referred for prosecution by CBP [Customs and Border Protection], or later when she was released from criminal custody and detained by ICE in an immigration detention facility." (*Id.*)

However, the problem posed, namely, when someone becomes a member of the class, is easily resolved. As Plaintiffs explain, a person becomes a member of the class when they are held in immigration detention without their children. (Reply Br. at 7.) Defendants are correct that this determination may involve some individualized inquiries,

but those inquiries do not detract from the "indivisible" nature of the claim alleged and the relief sought in this case. *Dukes*, 564 U.S. at 360.

Contrary to Defendants' argument, Plaintiffs have demonstrated that certification under Rule 23(b)(2) is appropriate here. As stated above, the crux of this case is the Government's practice of separating migrant parents from their minor children and continuing to separate them without any showing the parent is unfit or presents a danger to the child. Based on the record before the Court, the Government has "acted ... in a manner applicable to the class generally, rendering injunctive and declaratory relief appropriate to the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). A determination regarding whether the practice of family separation and failure to reunify such families violates due process and warrants injunctive relief would apply to each class member and drive resolution of the litigation. Accordingly, Rule 23(b)(2) is satisfied.

## II.
## CONCLUSION AND ORDER

For these reasons, Plaintiffs' motion for class certification is granted in part as to Plaintiffs' substantive due process claim. Specifically, the Court certifies the following class under Federal Rule of Civil Procedure 23(b)(2), with the exceptions noted above and as modified:

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.[10]

---

[10] As discussed in text, *infra*, the class does not include migrant parents with criminal history or communicable disease, or those who are in the interior of the United States or subject to the EO.

Plaintiffs are appointed as Class Representatives, and Counsel from the ACLU Immigrants' Rights Project and the ACLU of San Diego and Imperial Counties are appointed as counsel for this Class pursuant to Federal Rule of Civil Procedure 23(g).

**IT IS SO ORDERED.**

Dated: June 26, 2018

Hon. Dana M. Sabraw
United States District Judge