CHAD A. READLER
Acting Assistant Attorney General
AUGUST E. FLENTJE
Special Counsel to the Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
COLIN KISOR
Deputy Director
SARAH B. FABIAN
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

Attorneys for Defendants

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNY LISETTE FLORES; *et al.*, | Case No. CV 85-4544-DMG |
| Plaintiffs, | **DEFENDANTS' NOTICE OF COMPLIANCE** |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General of the United States; *et al.*, | |
| Defendants. | |

The Government's June 21, 2018, ex parte application explained that the Flores Agreement—as interpreted by this Court and the Ninth Circuit—put the Government in the difficult position of having to separate families if it decides it should detain parents for immigration purposes. Defendants wish to inform the Court that, following the filing of our application to this Court, a federal district court in the Ninth Circuit held that such separation likely violates substantive due process under the Fifth Amendment. *Ms. L v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018) (attached as exhibit). The *Ms. L* court certified a class and entered a class-wide preliminary injunction requiring reunification—both for parents released into the interior of the United States and for parents in DHS custody— and barring future separations for families in DHS custody.

Defendants are submitting this notice of compliance to explain how the government is applying the Flores Agreement in light of this injunction. To comply with the *Ms. L* injunction barring parents in DHS custody from being separated from their children, the Government will not separate families but detain families together during the pendency of immigration proceedings when they are apprehended at or between ports of entry. As explained below, we believe that the Flores Agreement permits the Government to detain families together to comply with the nationwide order in *Ms. L*. We nevertheless continue to believe that an

1

amendment of the Flores Agreement is appropriate to address this issue. Until that amendment, this submission sets out the Government's interpretation and application of the Agreement in light of *Ms. L.*

**A.** There are many legitimate justifications for detaining arriving aliens under the immigration laws, including well-established rules that allow arriving aliens at the border to be detained pending a determination of whether they may legally be admitted to the United States. Such detention, which Congress has made mandatory in many circumstances under 8 U.S.C. § 1225(b), is essential to protecting our southwest border, discouraging families that are not entitled to remain in this country from making the dangerous journey to the border, and returning families promptly when they are not entitled to relief in this country. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018); *cf. Demore v. Kim*, 538 U.S. 510, 526 (2003) (discussing the Supreme Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings").

We have explained over a period of years that one impact of the *Flores* requirements, if applied to minors that come into DHS custody accompanied by their parents, would be the separation of parents from their children. In construing the Flores Agreement, over the government's objection, to apply to children taken into custody with their families, the Ninth Circuit understood that the separation of

parents from their children was a direct consequence of its holding. *Flores v. Lynch*, 828 F.3d 898, 908-09 (9th Cir. 2016). But the Ninth Circuit also made clear that neither the Flores Agreement nor court rulings applying it impose any legal barrier on the critical authority of DHS to detain adults who come into immigration custody at the border with their children. *Flores*, 828 F.3d at 908-09.

The *Ms. L* court reached the same conclusion in considering the situation of the separation of accompanied children from their parents, this time from the point of view of the parents, who were not parties to the *Flores* case or the Settlement Agreement. The *Ms. L* court issued class-wide relief requiring that, in most circumstances, parents be kept with their children during the pendency of immigration proceedings. Notably, like the Ninth Circuit, the court in *Ms. L* recognized the authority of DHS to detain parents in immigration custody pending resolution of their immigration cases. As the court emphasized, even in light of the court's injunction requiring families to be kept together and reunified, the "Government would remain free to enforce its criminal and immigration laws, and to exercise its discretion in matters of release and detention consistent with law." Order at 20; *see also id*. at 3 ("Order does not implicate the Government's discretionary authority to enforce immigration laws . . . including its decision to release or detain class members."). Thus, while the Government must keep families together when it chooses to exercise its discretion to detain or release a

parent under the INA, the court cited the *Flores* in explaining that the Government otherwise remains "free" to exercise "discretion in matters of release and detention." *Id* at 20 (citing *Flores*); *see id*. at 7 (for "children placed in federal custody, there are two options," the first option is separating the family and placing the child alone in ORR custody and "the second option is family detention").

**B.** Reading the Flores Agreement together with the subsequent nationwide order in *Ms. L*, we understand the courts to have provided that minors who are apprehended with families may not be separated from their parents where it is determined that continued detention is appropriate for the parent. The Flores Agreement allows this result for two reasons.

*First*, the Agreement's express terms accommodate court orders like the one recently issued in *Ms. L.* Paragraph 12A of the Flores Agreement provides for the release of minors to a parent (or others) when possible under Paragraph 14 or, alternatively, transfer to an appropriate facility with a licensed program under Paragraph 19. *See Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) ("Settlement creates a presumption in favor of releasing minors and requires placement of those not released in licensed, non-secure facilities that meet certain standards"). But these provisions include exceptions to releasing or transferring minors to accommodate a ruling like that in *Ms. L* requiring families to be kept together, and those exceptions permit family detention in these circumstances.

4

*Release provision.* In Paragraph 14, the Flores Agreement specifies that a minor should be "release[d] from its custody *without unnecessary delay*" to a parent or other relative. Flores Agreement ¶ 14 (emphasis added). The court's order in *Ms. L*, which requires that the minor be kept with the parent, makes delay necessary in these circumstances. The minor cannot be released under Paragraph 14 without separating him or her from their parent, as such a separation would violate the injunction issued in *Ms. L*. *See Ms. L* Order at 22 (DHS is "enjoined from detaining Class Members in DHS custody without and apart from their minor children"). Under those circumstances, the release of the minor from custody must be "delay[ed]" pursuant to the Agreement during the period the parent is detained by DHS. Flores Agreement ¶ 14. Indeed, the court's order in *Ms. L* envisions that a parent would be "reunited with the child *in DHS custody*" and that a child would be released only "*[i]f Defendants choose* to release Class Members [*i.e.*, parents] from DHS custody" or if a parent consents. Order at 23 (emphasis added). This application of the Flores Agreement is also consistent with another aspect of Paragraph 14 of the Agreement – which sets placing the minor with "a parent" as the first "order of preference." Flores Agreement ¶ 14; *id*. ¶ 18 (requiring "continuous efforts . . . *toward family reunification* and . . . release") (emphasis added); *see Flores*, 828 F.3d at 903 ("[t]he settlement creates a presumption in favor of release *and favors family reunification*") (emphasis added).

5

*Transfer provision.* The Flores Agreement also permits transfer of a child to a licensed program under Paragraph 19. *See* Flores Agreement ¶ 12A. Under Paragraph 12A, during an influx DHS is required to transfer a minor for placement in a licensed program "as expeditiously as possible." *Id.* ¶ 12A.3. But the obligation to transfer applies "except . . . as otherwise required by any court decree or court-approved settlement." *Id.* ¶ 12A.2. Here, the court decree in *Ms. L* prohibits the transfer of the minor to a licensed program, because such a transfer would separate the child from his or her parent. *Ms. L* Order at 22. A transfer therefore cannot occur consistent with that court decree.[1]

*Second*, both *Ms. L* and *Flores* expressly envision that adults who arrive at the United States with children are properly subject to detention – a critical aspect of border enforcement. Given that express conclusion in each decision, it would be remarkable to read the orders together as mandating the opposite conclusion – that detention may never occur. Doing so would undermine the express holdings in both cases. *Ms. L*, for its part, held that DHS would retain the same authority to detain the parent as it had before – it simply required that such detention be of the

---

[1] The issue regarding how the Flores Agreement licensing provisions apply to family detention centers is the subject of ongoing litigation. But to the extent that family detention centers are treated as licensed consistent with the Flores Agreement, a transfer under this provision could occur consistent with *Ms. L.* We have also asked this Court to modify the Agreement to permit the transfer of families together to family residential centers without requiring a state license.

family as a unit. *See Ms. L* Order at 3 ("Order does not implicate the Government's discretionary authority to enforce immigration laws . . . including its decision to release or detain class members"); *id*. at 22 (DHS may "choose to release" class members).

Likewise, the Ninth Circuit ruling in *Flores* held that the "settlement does not require the government to release parents." *Flores*, 828 F.3d at 908; *see also Bunikyte v. Chretoff*, 2007 WL 1074070, at *16 (W.D. Tex. 2007) (rejecting argument that Flores Agreement required release of both minors and parents). As the Ninth Circuit explained, providing rights to minors under the agreement "does not mean that the government must also make a parent available" by releasing the parent with the child. *Flores*, 828 F.3d at 908; *id*. at 909 ("parents were not plaintiffs in the *Flores* action, nor are they members of the certified class," and the settlement "therefore provides no affirmative releases rights for parents"). Because the Flores Agreement does not require the release of parents, and *Ms. L* requires DHS to keep parents and children together when the parents are in detention, the rulings work together to permit detention of parents with their minor children with whom they are apprehended.

**C.** No other aspect of the Flores Agreement or *Ms. L* require the United States to release all individuals held in border-related detention when they arrive at the border with children. Instead, other aspects of the rulings lead to the opposite

7

conclusion. The *Ms. L* ruling addresses reunification of children with their parents, and specifically requires reunification "when the parent is returned to immigration custody" after a release from criminal custody. Order at 10; *see id*. at 11 (court order provides for "reunification during intervening . . . ICE detention prior to actual removal, which can take months"). But this aspect of the *Ms. L* ruling would make little sense if that reunification would necessitate an immediate release of the parents from immigration custody under the Flores Agreement.

The *Ms. L* decree also provides that the parent may consent to the release of the child without the parent. Order at 23 (parent may "affirmatively, knowingly, and voluntarily decline[] to be reunited with the child in DHS custody"). This authority permits the continued operation of the provisions of the Flores Agreement governing release of the child – albeit with the accompanying parent's consent before they go into effect. Relying on a parent's consent in these circumstances where the family is together makes sense, particularly because plaintiffs in this case have always agreed that detention of the family together is permissible if the parent consents. *See Flores*, Transcript at 37-38 (April 24, 2015) (in response to question whether the "agreement allows[s] for an accommodation to . . . a parent who wishes to remain in the [family residential] facility," "the plaintiffs' positions is . . . a class member is entitled to waive those rights" and that waiver may "parents speak for children all the time") (relevant

8

pages attached as exhibit); *see also*

https://www.npr.org/2018/06/22/622678753/the-history-of-the-flores-settlement-and-its-effects-on-immigration (June 22, 2018) (last visited June 29, 2018) (counsel for plaintiffs explaining that "choice" to remain in family detention "is not something the Flores settlement itself addresses or prevents"). That is a preference expressed by other plaintiffs who have challenged family separation.[2] This aspect of the *Ms. L* order – allowing release of the child with the consent of the parent – would make little sense if the Government was under an affirmative obligation to release the entire family together.

**D.** Accordingly, for the reasons explained, the Flores Agreement permits the Government to detain families together given the nationwide order in *Ms. L* that bars the separation of families in DHS custody. To comply with the *Ms. L* injunction, the government will not separate families but detain families together during the pendency of immigration proceedings when they are apprehended at or between ports of entry and therefore subject to the *Ms. L* injunction.

---

[2] *See Mejia-Mejia v. ICE*, No. 18-1445, Complaint ¶ 4 (D.D.C. filed June 19, 2018) ("If, however, the government feels compelled to continue detaining these parents and young children, it should at a minimum detain them together in one of its immigration family detention centers"); *Padilla v. ICE*, NO. 18-928 (W.D. Wash), Complaint ¶ 12 ("If, however, the government insists on continuing to detain these parents and children, it must at a minimum detain them together in one of its immigration family detention centers.").

9

| | | |
|---|---|---|
| DATED: | June 29, 2018 | Respectfully submitted, |
| | | CHAD A. READLER<br>Acting Assistant Attorney General |
| | | /s/ August E. Flentje<br>AUGUST E. FLENTJE<br>Special Counsel to the Assistant Attorney General<br>Civil Division |
| | | WILLIAM C. PEACHEY<br>Director<br>COLIN KISOR<br>Deputy Director<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>District Court Section<br>Box 868, Ben Franklin Station<br>Washington, DC 20442<br>Telephone: (202) 532-4824<br>Fax: (202) 616-8962 |
| | | *Attorneys for Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ August E. Flentje
August E. Flentje
Attorney for Defendants