CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation (OIL)
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director, OIL District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

Attorneys for Federal Respondents-Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>　　　Petitioners-Plaintiffs,<br><br>　　vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>　　　Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>**Declaration of Robert Guadian** |

## DECLARATION OF ROBERT GUADIAN

I, Robert Guadian, hereby make the following declaration with respect to the above-captioned matter:

1. I am currently serving as the Acting Deputy Assistant Director (DAD), Domestic Operations Division, Western Operations, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), a position I have held since April 2018. In this capacity, I oversee, direct, and coordinate the ERO field operations in 12 of the 24 ERO field offices.

2. I have been employed by ICE, and the former Immigration and Naturalization Service before it, since 1997. I was promoted to the position of Supervisory Detention and Deportation Officer in the San Antonio Field Office in 2005 and Assistant Field Office Director in 2009. In January of 2014, I was named Chief of Staff for the San Antonio Field Office Director. I have been the Deputy Field Office Director for the Dallas Field Office since March 2016.

3. In my current role as Acting DAD, I am aware of the preliminary injunction issued by this Court on June 26, 2018, *Ms. L v. I.C.E.*, ---F. Supp. 3d---, 2018 WL 3129486 (S.D. Cal. June 26, 2018), and I have been personally involved in the management of implementing this Court's order.

4. In order to effectuate the reunification of class members and their minor children, pursuant to the requirements of the preliminary injunction, ICE is working closely with U.S. Customs and Border Protection (CBP) and the U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR).

5. Immediately after the order was issued, ICE's senior leadership met internally and with leadership from across the federal government to

determine the various ways in which implementation could be achieved. For ICE, implementation requires several labor intensive steps, such as, but not limited to providing guidance to ERO's field offices, gathering data from other agencies within and outside DHS, conducting case-by-case reviews of all potential class members, transferring class members of children four years of age and younger to detention facilities near their children, developing a reunification plan for class members with children five years of age and over, facilitating access of HHS employees to detention facilities to conduct DNA testing, facilitating communication between class members and their children, communicating with HHS about each case, and providing details about criminal history and location of detention or location of class members who had been released from ICE custody.

6. The first step toward reunifying separated families was the difficult and time-consuming task of identifying potential class members. The data necessary to determine class membership is not maintained as part of ICE's regular business process. Rather, ICE had to create a new dataset using information collected from CBP and HHS. To create an initial dataset for consideration, ICE had to reconcile CBP data against HHS data manually and new methodologies were developed by ICE to identify separated parents. This data was then sent to the relevant ERO field offices so immigration officers could review available information for each case in order to determine whether the particular alien qualifies as a class member.

7. 19 of ERO's 26 field offices have been affected by this order. Field Office Directors (FODs) around the country have reassigned officers from other duties, such as fugitive operations and case management, to review cases of each potential class member, which includes reviewing available DHS databases, the alien file, and the National Crime Information Center database.

As class members are identified, FODs have also had to reassign officers to track these cases, arrange transfers from detention facilities across the United States, share information with HHS, and facilitate communication between separated alien parents and their children.

8. Employees within ERO's Custody Management Division have also committed significant resources to ensuring compliance with the order. They have deployed two deportation officers and six other ERO staff to three detention facilities in which a significant percentage of separated parents are detained to provide surge support related to identification of family units, identification of the location of separated parents and their respective children, responding to detainee inquiries, and facilitating telephone calls between parents and their children. ERO also deployed three dedicated policy/data analysts to HHS's Special Operations Center, which was established to address the operational challenges of coordinating family reunification across different departments.

9. As of today, our information indicates that potential class members with children under five years of age are detained in 23 facilities across 13 states.

10. As of July 5, 2018, ICE has confirmed that all individuals detained in DHS custody and known by ICE to be parents separated from a minor child age four and under who is detained in ORR custody, ORR foster care, or DHS custody, have had telephonic contact with their children. ICE continues to work to ensure that all remaining class members have had such contact.

11. For those individuals detained in ICE custody for whom it is determined that a minor child has been separated and is in HHS custody, ICE has directed its field offices to review and prepare summaries of the adult alien's criminal and immigration histories, as well as indicators of gang membership. These summaries are sent to HHS. To date, ICE has completed approximately 300

such summaries. Based upon currently available information, ICE has approximately 1400 more summaries to complete for potential class members.

12. ICE will need to complete the same criminal and immigration history reviews for the remaining individuals. ICE and HHS will also need to facilitate reunification for the class members.

13. Based upon this information, ICE and/or HHS, depending upon the circumstances, will determine whether the separated alien parent is excluded from the class due to criminal history. Based upon available information ICE has determined that some alien parents of children age four and under have convictions that would exclude them from the class. These convictions include drug offenses, aggravated assault, rape, robbery, kidnapping, and domestic violence.

14. In order to facilitate the reunification process, ICE has taken steps to move the detained parents of children four years of age or under to a detention facility in the area of responsibility (AOR) close to the location of the minor child in HHS custody. To date, ICE has moved 23 such individuals from across the country on commercial airlines, which requires officer escorts. Some class members who were recently identified have not been transferred at the request of HHS, so that HHS can more efficiently take DNA samples of the parents.

15. ICE must carry out a similar process to reunify detained parents of children five years of age or over. For these class members, ICE is considering using a few dedicated staging facilities for reunification purposes.

16. Upon HHS's completion of vetting and a determination of suitability for reunification in accordance with law and the injunction, in many cases, ICE will release the parent on Alternatives to Detention (ATD) to enable

reunification to be completed. Because ICE does not have authority to transport the parent once released from its custody, reunification will generally occur at the detention facility concurrent with the parent's release.

17. In accordance with longstanding practices for alien parents, ICE has removed class members who have administratively final orders of removal. This is done after the class member has had an opportunity to request relief. He or she may request to be reunited with his or her minor child prior to removal or he or she can request to be removed without his or her minor child who will then remain in the United States to pursue available relief.

18. Class members who are still pursuing claims for relief or protection and, therefore, do not have administratively final orders of removal, will be reunited with their children, where appropriate, pursuant to the process describe above in this declaration.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of July 2018, in Washington, D.C.

*[signature]*

Robert Guadian
Acting Deputy Assistant Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement