UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
                                         )
MS. L. AND MS. C.,                       )
                                         )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,      )
VS.                                      )
                                         )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS             ) FRIDAY JULY 6, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT     ) 12:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.       )
CUSTOMS AND BORDER PROTECTION ("CBP");   )
U.S. CITIZENSHIP AND IMMIGRATION         )
SERVICES ("USCIS"); U.S. DEPARTMENT      )
OF HEALTH AND HUMAN SERVICES ("HHS");    )
OFFICE OF REFUGEE RESETTLEMENT ("ORR");  )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;    )
GREG ARCHAMBEAULT, SAN DIEGO FIELD       )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS,  )
EL PASO FIELD DIRECTOR, ICE; FRANCES M.  )
JACKSON, EL PASO ASSISTANT FIELD         )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN,  )
SECRETARY OF DHS; JEFFERSON BEAUREGARD   )
SESSIONS III, ATTORNEY GENERAL OF THE    )
UNITED STATES; L. FRANCIS CISSNA,        )
DIRECTOR OF USCIS; KEVIN K.              )
MCALEENAN, ACTING COMMISSIONER OF        )
CBP; PETE FLORES, SAN DIEGO FIELD        )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,     )
EL PASO FIELD DIRECTOR, CBP;             )
ALEX AZAR, SECRETARY OF THE              )
DEPARTMENT OF HEALTH AND HUMAN           )
SERVICES; SCOTT LLOYD, DIRECTOR          )
OF THE OFFICE OF REFUGEE RESETTLEMENT,   )
                                         )
            RESPONDENTS-DEFENDANTS.      )
------------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**STATUS CONFERENCE**

```
COUNSEL APPEARING:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ANAND VENKATA BALAKRISHNAN, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004

                           BADIS VAKILI, ESQ.
                           ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES
                           P.O. BOX 87131
                           SAN DIEGO, CALIFORNIA 92138

FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           SCOTT G. STEWART, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044




REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101
```

1   **SAN DIEGO, CALIFORNIA — FRIDAY, JULY 6, 2018 — 12:00 P.M.**

2                         *   *   *

3           **THE CLERK:**  CALLING NO. 9 ON CALENDAR, CASE

4   NO. 18CV0428, MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS

5   ENFORCEMENT; ON FOR STATUS HEARING.

6           **THE COURT:**  GOOD AFTERNOON.  MAY I HAVE APPEARANCES,

7   PLEASE?

8           **MS. FABIAN:**  YOUR HONOR, SARAH FABIAN WITH THE

9   DEPARTMENT OF JUSTICE ON BEHALF OF THE DEFENDANTS.

10          I HAVE WITH ME TODAY SCOTT STEWART AS WELL, ALSO

11  WITH THE DEPARTMENT OF JUSTICE.

12          **THE COURT:**  YES.  THANK YOU.  GOOD AFTERNOON.

13          **MR. GALERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE

14  GELERNT FOR ACLU FOR PLAINTIFFS.

15          **MR. BALAKRISHNAN:**  GOOD AFTERNOON, YOUR HONOR.

16  ANAND BALAKRISHNAN FROM THE ACLU FOR PLAINTIFFS.

17          **MR. VAKILI:**  GOOD AFTERNOON, YOUR HONOR.  BARDIS

18  VAKILI FROM THE ACLU SAN DIEGO.

19          **THE COURT:**  THANK YOU.  GOOD AFTERNOON, AND WELCOME.

20          IT IS MY UNDERSTANDING THAT WE HAVE ABOUT 55 CALLERS

21  ON THE LINE, MEDIA AND OTHERS.  AND SO AGAIN I WILL ASK

22  COUNSEL TO SPEAK DIRECTLY INTO THE MICROPHONE SO THAT THEY CAN

23  HEAR CLEARLY.

24          A GENTLE REMINDER TO ALL WHO ARE PARTICIPATING

25  TELEPHONICALLY THAT THERE IS NOT ANY RECORDING OR BROADCASTING

 1    PERMITTED UNDER CIVIL LOCAL RULE 83.7C.

 2              I WOULD LIKE TO GET RIGHT TO THE ISSUES.

 3              I RECEIVED THE GOVERNMENT'S NOTICE REGARDING

 4    COMPLIANCE AND REQUEST FOR CLARIFICATION AND/OR RELIEF.  I DID

 5    NOT GET IT UNTIL THIS MORNING, MID WAY THROUGH MY MORNING

 6    CALENDAR, AND I JUST FINISHED MY MORNING CALENDAR TEN MINUTES

 7    AGO.  I DID, DURING THE RECESS, READ IT, BUT IT WAS A QUICK

 8    READ.  AND THERE ARE SOME SIGNIFICANT ISSUES THAT HAVE BEEN

 9    RAISED.  SO I WOULD LIKE TO START THERE.

10              IF WE CAN FOCUS ON THE REUNIFICATION ISSUE AND,

11    MS. FABIAN, IF YOU WANT TO GIVE A STATUS AS TO WHERE WE ARE,

12    THE COMPLIANCE.  AND THEN WHAT THE ISSUES ARE WITH RESPECT TO

13    COMPLETING REUNIFICATION.

14              AS I UNDERSTAND THE BRIEFING, THE GOVERNMENT HAS

15    DEVOTED ENORMOUS RESOURCES IN AN ATTEMPT TO COMPLY, TO

16    REUNIFY, AND TO MAKE THIS HAPPEN.  BUT IN GOOD FAITH IS

17    RAISING ISSUES THAT COULD AFFECT THE TIMING OF REUNIFICATION,

18    PARTICULARLY WITH REGARD TO THE YOUNGER CHILDREN, FIVE AND

19    UNDER.

20              AM I CORRECT?

21         **MS. FABIAN:**  THAT'S CORRECT, YOUR HONOR.  I THINK

22    WHAT WE WANT TO DO IS TO -- WELL, FIRST I DO WANT TO SAY I

23    AGREE WITH YOUR HONOR'S ASSESSMENT.  THE GOVERNMENT HAS

24    SUBMITTED -- DEVOTED SIGNIFICANT RESOURCES TO THIS, HHS AND

25    ICE ARE WORKING TOGETHER.  THEY HAVE FOLKS WORKING IN A

1    COMMAND CENTER WORKING TOGETHER.  THEY HAVE FOLKS OUT DEPLOYED

2    OUT INTO THE FIELD ON THE GROUND WORKING TOGETHER.  THAT IS

3    ALL IN OUR BRIEFING.  BUT THERE REALLY HAS BEEN A MASSIVE

4    EFFORT ON THE PART OF THE GOVERNMENT TO GET THE RESOURCES IN

5    PLACE AND ON THE GROUND TO MAKE REUNIFICATION HAPPEN IN

6    ACCORDANCE WITH THE COURT'S ORDER.

7            THERE HAS ALSO BEEN GUIDANCE OUT TO THE FIELD TO

8    ENSURE THAT FOR FOLKS COMING IN AND ENTERING THAT ANY

9    SEPARATIONS THAT MIGHT OCCUR WOULD OCCUR IN ACCORDANCE WITH

10   THE COURT'S ORDER AS WELL.

11           SO WITH REGARD TO THE COMMUNICATION ISSUE, I KNOW

12   THAT WAS ONE OF -- A PART OF THE COURT'S ORDER.  IT IS OUR

13   UNDERSTANDING THAT COMMUNICATION HAS BEEN FACILITATED.

14           THE WAY IT WORKS IS IT IS RECORDED IN A WAY THAT I

15   CAN'T PULL IT IN AN AGGREGATE WAY TO SORT OF SHOW THE COURT

16   THAT IT HAS BEEN DONE IN EACH CASE.  SO WE DID REVIEW TO

17   ENSURE, AND THAT IS IN ONE OF OUR DECLARATIONS, THAT FOR THE

18   UNDER-FIVE GROUP COMMUNICATION HAS BEEN FACILITATED IN EACH OF

19   THOSE FAMILY GROUPS.  AND IT IS OUR BELIEF THAT IT HAS ALSO

20   BEEN FACILITATED FOR THE REMAINDER OF THE CLASS.

21           AND WHAT WE WOULD ASK THAT IF FOLKS ARE AWARE OF

22   SITUATIONS WHERE IT HASN'T, WE CAN CHECK THAT ON AN

23   INDIVIDUALIZED BASIS.  AND WE ARE HAPPY TO DO SO AND

24   FACILITATE THAT COMMUNICATION IMMEDIATELY.  BUT THE GOVERNMENT

25   DOES BELIEVE THAT WE HAVE DONE THAT.

1          AND IMPORTANT FOR THAT IS THAT O.R.R. FIELD STAFF

2    HAVE BEEN REALLY PUT IN TOUCH WITH THE FIELD OFFICE FOLKS FOR

3    ICE WHERE THE PARENTS WOULD BE HELD SO THAT THEY ARE SORT OF

4    DIRECTLY COMMUNICATING TO FACILITATE THAT COMMUNICATION.

5          THERE HAS ALSO BEEN -- I BELIEVE IT IS TABLETS OF

6    SOME SORT THAT HAVE BEEN DEPLOYED OUT INTO THE ICE FACILITIES

7    THAT MAKE VIDEO CONVERSATIONS POSSIBLE.

8          **THE COURT:**  SO IT IS YOUR UNDERSTANDING THAT OF

9    THESE APPROXIMATELY 3,000 WHERE REUNIFICATION IS IN PROGRESS

10   THAT YOU HAVE BEEN ABLE TO PUT THE PARENTS IN TOUCH WITH THOSE

11   MINOR CHILDREN TO COMMUNICATE, AT LEAST TELEPHONICALLY, WITHIN

12   THIS TEN-DAY TIME FRAME.

13         **MS. FABIAN:**  I MIGHT WANT TO QUIBBLE WITH YOU A

14   LITTLE BIT ON THE NUMBER, BUT, YES, IT IS OUR UNDERSTANDING

15   THAT FOR THE CLASS MEMBERS THAT WE ARE AWARE OF THAT THOSE

16   HAVE BEEN PUT IN -- BEEN ABLE TO COMMUNICATE BETWEEN THE

17   PARENTS AND CHILDREN.

18         **THE COURT:**  ALL RIGHT.  AND BEFORE YOU CONTINUE WITH

19   THE STATUS I HAD A QUESTION ABOUT, FOR THE UNDER-FIVE GROUP,

20   DO YOU KNOW -- MY UNDERSTANDING IS THERE ARE FEWER THAN 100.

21   DO YOU KNOW HOW MANY HAVE ALREADY BEEN REUNITED, AND WHAT

22   THE -- HOW MANY WILL BE REUNITED BY JULY 10?

23         **MS. FABIAN:**  WHAT I CAN SAY IS, YOUR HONOR, THAT --

24   AND SOME OF THIS GETS TO SOME OF THE ISSUES THAT I WOULD LIKE

25   TO RAISE WITH THE COURT TODAY.

```
1          THERE ARE APPROXIMATELY 46 -- AND I AM GOING TO SAY
2    APPROXIMATELY BECAUSE THESE NUMBERS -- THE PROCESS THAT HHS
3    HAS UNDERGONE -- AND IT IS WHY I ALSO SORT OF QUIBBLE WITH THE
4    3,000 NUMBER.
5          HHS HAS RECORDS IN THE FIRST INSTANCE -- HAS
6    IDENTIFIED INDIVIDUALS WHO HAVE BEEN SEPARATED, BUT THEY HAVE
7    ALSO MADE AN EFFORT TO GO OUT INTO THE FIELD AND TO SORT OF
8    LOOK AGAIN AT CHILDREN IN THEIR CUSTODY AND TO REALLY SEE IF
9    THERE ARE ANY INDICIA OF A SEPARATION, THEN TO SORT OF PULL
10   THEM INTO THE GROUP FOR FURTHER EVALUATION OF WHETHER THIS IS
11   A SITUATION THAT FALLS UNDER THE CLASS.
12         SO THOSE NUMBERS -- FOLKS MIGHT SORT OF COME INTO
13   THE GROUP THAT IS BEING LOOKED AT AND GO BACK OUT AS IT IS
14   DETERMINED NO, ALTHOUGH THE CHILD MAY HAVE SAID HE OR SHE WAS
15   SEPARATED FROM THE PARENT BUT WHEN WE LOOKED AT IT IT LOOKS
16   LIKE THAT OCCURRED BEFORE THEY EVER ARRIVED IN THE UNITED
17   STATES.
18         SO THAT IS WHY WHEN I SAY THESE NUMBERS THEY ARE
19   SORT OF ALWAYS A LITTLE BIT IN FLUX UNTIL IN A GIVEN SITUATION
20   IT CAN BE FINALLY DETERMINED THAT WE HAVE A CLASS MEMBER AND
21   THE CHILD AND A REUNIFICATION.
22         SO IN THAT NUMBER OF FOLKS, THE UNDER-FIVE GROUP
23   THAT WE HAVE IDENTIFIED THERE IS -- APPROXIMATELY HALF OF THEM
24   ARE WHERE THE PARENT IS IN ICE CUSTODY AND THE CHILD IS IN
25   O.R.R. CUSTODY.  FOR THOSE THE -- THAT REUNIFICATION PROCESS
```

1   IS EXPECTED TO OCCUR WITHIN THE TIME FRAME.

2           THERE IS -- AND IF WE WANT TO MOVE INTO SOME OF THE

3   ISSUES WE WANT TO RAISE WITH THE COURT, THERE ARE THEN SOME

4   GROUPS FOR WHOM THE REUNIFICATION PROCESS IS MORE DIFFICULT.

5   AND ONE OF THOSE IS FOR INDIVIDUALS WHOSE PARENT HAS BEEN

6   RELEASED FROM ICE CUSTODY.  IN THOSE CASES -- IN SOME CASES --

7   AND WE ARE STILL DRILLING DOWN ON SORT OF THE FURTHER DIVISION

8   OF THAT NUMBER.

9           BUT FOR THOSE FOLKS IN SOME CASES IF WE ARE NOT, FOR

10  EXAMPLE, AWARE OF WHERE THE PARENT IS THERE -- I CAN'T COMMIT

11  TO SAYING THAT THAT REUNIFICATION WOULD BE ABLE TO OCCUR BY

12  THE DEADLINE.  IF, FOR EXAMPLE, O.R.R. HAS REACHED OUT TO THE

13  PARENT AND NOT RECEIVED ANY RETURN CALL.

14          SO IN THOSE SITUATIONS I BELIEVE THERE IS MAYBE

15  20 PERCENT OF THAT NUMBER ARE FOLKS WHO WERE RELEASED FROM ICE

16  CUSTODY AND WE ARE STILL DETERMINING WHAT THE SITUATION IS

17  THERE AND WHETHER THOSE ARE SITUATIONS WHERE REUNIFICATION MAY

18  NOT BE ABLE TO OCCUR WITHIN THE TIME FRAME.

19          I THINK THAT SORT OF HIGHLIGHTS, REALLY, ONE OF THE

20  MAIN ISSUES, UNLESS YOUR HONOR HAS OTHER SPECIFIC QUESTIONS.

21          **THE COURT:**  NO.

22          **MS. FABIAN:**  ONE OF THE BIG ISSUES THAT WE WANTED TO

23  BRING TO THE COURT'S ATTENTION TODAY, AND THAT IS THE PROCESS

24  FOR HHS TO REUNIFY MINORS.  IN GENERAL, I WOULD SAY THAT THE

25  COURT'S ORDER SEEMS TO BE CONSISTENT WITH O.R.R.'S

1   REQUIREMENTS -- WITH O.R.R.'S OBLIGATIONS UNDER THE TVPRA.

2          **THE COURT:**  YES.

3          **MS. FABIAN:**  AND, HOWEVER, O.R.R. HAS DEVELOPED A

4   SIGNIFICANT NUMBER OF PROCESSES UNDER THE TVPRA THAT IT

5   BELIEVES ARE ESSENTIAL FOR FULFILLING ITS OBLIGATION THERE TO

6   ENSURE THE SAFETY OF MINORS WHEN THEY ARE RELEASED.

7          O.R.R. HAS MADE EFFORTS, HHS HAS MADE EFFORTS TO

8   STREAMLINE THAT PROCESS AS MUCH AS POSSIBLE IN LIGHT OF THE

9   TIMELINES CONTAINED IN THE COURT'S ORDER.  BUT THERE IS

10  POTENTIALLY, OR SORT OF INHERENTLY, A TENSION ALWAYS -- AND I

11  HAVE SAID THIS IN OTHER CASES AS WELL, THERE IS ALWAYS GOING

12  TO BE A TENSION BETWEEN A FAST RELEASE AND A SAFE RELEASE.

13         AND IN THIS CASE THERE IS -- I THINK HHS IS ASKING

14  FOR SOME CLARIFICATION WITH REGARD TO THOSE PROCESSES THAT IT

15  FEELS ARE ESSENTIAL UNDER -- FOR FULFILLING ITS OBLIGATIONS

16  UNDER THE TVPRA AND THE DESIRE TO NOT MISS THE COURT'S

17  DEADLINES.  SPECIFICALLY, REALLY, ASKING THE COURT TO CLARIFY

18  WHETHER COMMITTING -- OR COMPLETING THE SAFE PROCESSES UNDER

19  THE TVPRA THAT O.R.R. HAS DEVELOPED OVER THE YEARS THAT HAVE

20  REALLY COME FROM EXPERIENCE WITH RELEASING CHILDREN AND THEY

21  ARE -- I THINK IT IS MENTIONED IN OUR BRIEFING, IF NOT IT IS

22  SOMETHING I FOUND ELSEWHERE.  BUT CONGRESS HAS LOOKED AT THIS

23  ISSUE AND ENCOURAGED O.R.R. TO ADD SOME PROCESSES TO THAT.

24         SO THESE PROCESSES HAVE BEEN DEVELOPED AND ARE WHAT

25  HHS BELIEVE ARE VERY IMPORTANT TO FULFILL THAT OBLIGATION.

1  AND WOULD LIKE -- HHS WOULD LIKE SOME CLARIFICATION FROM THE

2  COURT ON WHETHER THAT PROCESS SHOULD CONTINUE IN PLACE, EVEN

3  WHERE IT MIGHT TAKE THEM PAST THE COURT'S 30-DAY DEADLINE; OR

4  WHETHER THE COURT WOULD LIKE TO SPEAK, OR INTENDS TO SPEAK, ON

5  HOW O.R.R. SHOULD TRUNCATE THAT PROCESS OR PERHAPS NOT FULFILL

6  WHAT IT BELIEVES ARE ALL OF ITS OBLIGATIONS UNDER THE TVPRA IN

7  ORDER TO COMPLY WITH THE COURT'S DEADLINES.

8       **THE COURT:**  ON THAT, I HAVE A GENERAL OBSERVATION

9  AND QUESTION, AND I WOULD BE PARTICULARLY INTERESTED IN MR.

10 GELERNT'S RESPONSE.

11      THE TVPRA, WHILE IT WAS DESIGNED TO FOCUS ON A

12 DIFFERENT GROUP OF CHILDREN, THE TRUE UNACCOMPANIED MINORS,

13 THAT HISTORICALLY THAT HAS BEEN OLDER CHILDREN SHOWING UP AT

14 THE BORDER ALONE, THE TVPRA WAS DESIGNED TO SPEAK TO THAT

15 GROUP; NOT SO MUCH TO THIS SITUATION WHERE CHILDREN SHOW UP

16 ACCOMPANIED WITH THEIR PARENT, AND THEN ARE SEPARATED AND GO

17 INTO A TVPRA PROCESS.

18      THAT SAID, THE TVPRA IS A FEDERAL STATUTE THAT IS IN

19 PLACE.  IT HAS PROCEDURES FOR RELEASING CHILDREN TO THE CARE

20 AND CUSTODY OF SOMEONE, HISTORICALLY THAT WOULD BE A

21 NONPARENT, IN MANY CASES, AN AUNT, AN UNCLE, OR SOMEBODY LIKE

22 THAT.  AND THE TVPRA PROCESS BECOMES PARTICULARLY IMPORTANT IN

23 THAT KIND OF SITUATION.

24      THIS SITUATION IS DIFFERENT IN THAT IT INVOLVES

25 SEPARATION, AND THE CLASS IS DEFINED TO INCLUDE PARENTS ONLY,

1    AND SO THE CONTEXT IS DIFFERENT.  BUT THE TVPRA IS IN PLACE,

2    IT HAS REUNIFICATION PROCEDURES THAT HHS HAS TO FOLLOW.  AND

3    THE COURT CAN'T SIMPLY BRUSH IT ASIDE.  IT RAISES A NUMBER OF

4    VERY COMPLICATED, IMPORTANT ISSUES THAT ARE NOT BRIEFED AND

5    HAVE JUST BEEN RAISED THIS MORNING.

6              SO PERHAPS I CAN INQUIRE OF MR. GELERNT, IF YOU

7    WOULD SPEAK TO THAT ISSUE.

8              I GUESS THE QUESTION IS --

9              YOU COULD SHARE THE PODIUM WITH MS. FABIAN.

10             I GUESS THE QUESTION IS WHETHER IN THE NEED TO BE

11   URGENT IN REUNITING AND SAFE IN REUNITING CHILDREN, WHAT DO WE

12   DO ABOUT THE TVPRA REQUIREMENTS THAT MAY ENCUMBER THE

13   GOVERNMENT FROM REUNITING WITHIN THIS 14-DAY TIME FRAME?

14             **MS. FABIAN:**  YOUR HONOR, I ASKED MR. GELERNT BECAUSE

15   I WOULD LIKE -- I THINK YOU WILL WANT HIM TO RESPOND TO THIS

16   POINT.

17             I WANT TO POINT -- AND I SORT OF GLOSSED OVER THIS

18   POINT.  BUT YOUR HONOR POINTS OUT THAT THE CLASS MEMBER DOES

19   -- OR THE CLASS DEFINITION DOES REFERENCE PARENTS.  AND I

20   THINK THAT IS PART OF WHAT WE BRIEFED AND PART OF THE PROCESS.

21   AND THAT MADE -- THE FIRST STEP IS, OF COURSE, CONFIRMING THAT

22   WHAT WE ARE DEALING WITH IS A PARENT AND CHILD.

23             AND SO WITHIN OUR REQUEST FOR CLARIFICATION THE

24   FIRST STEP IS THIS -- WHAT WE HAVE BEEN DOING IS A DNA

25   ANALYSIS, AND THAT IS TO CONFIRM -- FOR THE PROCESS OF

1    CONFIRMING PARENTAGE.  AND IN MANY SITUATIONS I BELIEVE -- I

2    DON'T WANT TO SAY IN ALL SITUATIONS BUT IN MANY SITUATIONS

3    THAT PROCESS WILL BE ABLE TO BE COMPLETED -- IF WE HAVE A

4    PARENT IN CUSTODY AND THE CHILD IN CUSTODY THAT THE PROCESS OF

5    DNA ANALYSIS CAN BE COMPLETED TO ALLOW THE PROCESS TO MOVE

6    FORWARD IN THE TIMELINES.  BUT THERE IS -- THERE ARE

7    SITUATIONS, FOR EXAMPLE IN A NONBIOLOGICAL PARENT SITUATION,

8    WHERE THE -- WHERE THERE MAY NEED TO BE ADDITIONAL REVIEW OF

9    PAPERWORK, PERHAPS COMMUNICATIONS WITH THE CONSULATES.

10           SO EVEN CONFIRMING THAT FIRST STEP OF PARENTAGE --

11   AND MAYBE I SHOULD HAVE SORT OF TEED THIS UP AT THE BEGINNING.

12   BUT THAT IS ALSO PART OF THIS PROCESS THAT O.R.R. HAS

13   IMPLEMENTED HERE.  AND IT -- FOR -- SO WE WOULD ALSO LIKE

14   CLARIFICATION ON FOR WHERE PARENTAGE CAN'T BE CONFIRMED IN

15   SORT OF THE EASIEST SETTING OF A PARENT IN DETENTION AND A

16   CHILD IN DETENTION AND A DNA CONFIRMATION.  IF THERE IS ALSO

17   RELIEF TO BE HAD ON THE TIMELINES WHERE IT IS NECESSARY TO

18   REALLY DRILL DOWN MORE OR LOCATE THE PARENT OR ASK THE PARENT

19   TO COME IN AND SUBMIT TO DNA TESTING TO MAKE THAT

20   CONFIRMATION.  SO WE WOULD ALSO ASK FOR CLARIFICATION ON THAT.

21   I JUST -- IN CASE MR. GELERNT WANTED TO ADDRESS THAT AS WELL,

22   I WILL MOVE ASIDE.

23           **THE COURT:**  YES.  THANK YOU.

24           **MR. GALERNT:**  THANK YOU, YOUR HONOR.

25           WE ARE ALSO SCRAMBLING A LITTLE BIT TO LOOK AT ALL

13

```
1   OF THE DETAILS IN THE GOVERNMENT'S FILINGS, SINCE THEY WERE
2   LATE LAST NIGHT.
3           BUT I WOULD SAY JUST TO START OFF I WANT TO RESPOND
4   SPECIFICALLY TO YOUR TVPRA POINT.  BUT I THINK THE INJUNCTION
5   IS WORKING BECAUSE THIS IS THE FIRST TIME THE GOVERNMENT HAS
6   PUT FORTH THESE RESOURCES TO GET THE JOB DONE.  SO WE STRONGLY
7   BELIEVE THAT THE INJUNCTION SHOULD NOT BE ALTERED.
8           LET ME ADDRESS JUST A FEW POINTS, START WITH YOUR
9   QUESTION ABOUT THE TVPRA.  TO BEGIN WITH, THE TVPRA DOESN'T
10  ACTUALLY HAVE ALL OF THE REQUIREMENTS THAT O.R.R. IS NOW
11  ENGAGING IN.  THOSE WERE DECISIONS O.R.R. MADE TO ADD TO THE
12  TVPRA.
13          THE MAIN THING THAT TVPRA DOES IS HOME STUDIES BUT
14  SO MUCH OF WHAT O.R.R. IS DOING NOW WAS ADDED AS A POLICY
15  MATTER.  BUT WE DON'T BELIEVE THAT YOU ARE NOT IN A POSITION
16  TO SAY, LOOK, THIS IS A DIFFERENT SITUATION, AS YOUR HONOR HAS
17  STATED A FEW TIMES.
18          THE TVPRA WAS FOR A SITUATION WHERE IT WAS A -- AS
19  YOU PUT IN YOUR OPINION, A TRUE UNACCOMPANIED INDIVIDUAL, AND
20  YOU ARE THEN LOOKING AT RELEASING THE PERSON TO SOMEONE YOU
21  DON'T KNOW, DIDN'T COME WITH THE CHILD.
22          I DON'T KNOW OF ANY CHILD ADVOCACY GROUP DEALING
23  WITH THIS ISSUE WHO BELIEVES THAT IN THIS SITUATION WHERE THE
24  PARENT -- THE CHILD WAS TAKEN FROM THE PARENT THAT O.R.R.
25  SHOULD GO THROUGH ALL OF THIS LENGTHY PROCEDURES.  IT JUST
```

1    DOESN'T MAKE SENSE.  YOU HAVE TAKEN THE CHILD FROM THE PARENT,

2    THEY NEED TO GIVE THE CHILD BACK.

3          I DON'T THINK -- WE ARE PREPARED TO SAY -- AND I

4    THINK EVERY CHILD ADVOCACY GROUP WAS PREPARED TO SAY THAT

5    O.R.R. SHOULD NOT BE FOLLOWING THE LENGTHY, CUMBERSOME

6    PROCEDURES THEY USE WHEN THEY ARE JUST NOT SURE WHO THIS

7    PERSON IS WHO IS COMING FORWARD FOR THE CHILD.

8        **THE COURT:**  ARE THOSE PROCEDURES, THOUGH, A MATTER

9    OF REGULATION; IN OTHER WORDS, ARE THEY IN THE CFR OR

10    SOMETHING SIMILAR?

11        **MR. GALERNT:**  YOUR HONOR, I DON'T KNOW IF ALL OF

12    THEM ARE.  I DON'T THINK ALL OF THEM ARE.  BUT, YOU KNOW, I

13    THINK ONE OVERARCHING POINT I WOULD MAKE -- AND I PROBABLY

14    SHOULD HAVE STARTED WITH THIS -- IS YOUR HONOR'S DECISION WAS

15    OF COURSE BASED ON DUE PROCESS.  SO DUE PROCESS -- AND YOUR

16    HONOR HAS POINTED THIS OUT BEFORE -- ULTIMATELY HAS TO TRUMP

17    THE TVPRA.

18          WHAT I UNDERSTAND HHS TO BE ASKING FOR, IF I AM

19    READING THEIR DECLARATIONS RIGHT, IS NOT SAYING THEY HAVE TO

20    DO IT, BUT THEY WANT CLARIFICATION FROM YOU THAT THEY CAN

21    STREAMLINE THE PROCEDURE.

22        **THE COURT:**  TO BE CLEAR, THE DUE PROCESS CLAUSE

23    WOULD OVERRIDE A FEDERAL STATUTE ON THIS SPECIFIC ISSUE OF

24    SEPARATION AND WHETHER OR NOT THERE IS A VIOLATION OF THE

25    CONSTITUTION OR A FAILURE TO REUNIFY.  THIS REQUEST IS

1    DIFFERENT, THOUGH.  IT IS THE GOVERNMENT SAYING, WE ARE DOING

2    EVERYTHING WE CAN TO REUNITE, WE JUST CAN'T MEET THIS DEADLINE

3    AND MEET THE TVPRA REQUIREMENTS.

4            SO IT IS A DISTINCT ISSUE.  AND AS A COURT I WOULD

5    BE VERY RELUCTANT JUST TO SWEEP ASIDE THE TVPRA OR RULE-MAKING

6    UNDER IT THAT MAY HAVE THE SAME FORCE AND EFFECT AS FEDERAL

7    LAW.

8            **MR. GALERNT:**  YOUR HONOR, I THINK THAT THE FAMILY --

9    THE DUE PROCESS RIGHT HERE IS TO BE TOGETHER WITH YOUR CHILD,

10   SO I DO THINK EVEN WITH RESPECT TO THE TIMING IT WOULD

11   OVERRIDE.

12           I JUST DON'T UNDERSTAND THE TVPRA TO HAVE MANY

13   REQUIREMENTS OR EVEN THE FEDERAL REGULATIONS TO HAVE MANY

14   REQUIREMENTS.  AND I DON'T THINK -- I THINK A PROPER

15   INTERPRETATION OF THE TVPRA WOULDN'T SAY THAT IF THE

16   GOVERNMENT GOES AND TAKES YOUR CHILD AND SAY YOU ARE NOT

17   GETTING IT BACK UNTIL WE DO ALL OF THESE SIX MONTHS' WORTH OF

18   PROCEDURES IT JUST DOESN'T -- IT IS SORT OF -- IT IS APPLES

19   AND ORANGES IN SOME RESPECTS.

20           **THE COURT:**  LET ME ASK A QUESTION HERE.

21           ARE YOU INDICATING THAT -- WELL, FIRST OFF, THE

22   TVPRA AND THESE POLICIES THAT O.R.R. HAS TO FOLLOW TO REUNIFY,

23   FROM YOUR PERSPECTIVE IS THAT -- ARE THOSE REGULATIONS,

24   FEDERAL, LIKE C.F.R.'S, WHERE THEY ARE TANTAMOUNT TO RULES AND

25   PROCEDURES THAT THE COURT CAN'T SIMPLY SWEEP ASIDE WITHOUT

1   MAKING A DETERMINATION, FOR EXAMPLE, THAT THE CONSTITUTIONAL

2   CONSIDERATIONS OVERRIDE?

3            **MS. FABIAN:**  YOUR HONOR, THOSE PROCEDURES ARE

4   PUBLISHED IN O.R.R.'S POLICY GUIDE WHICH IS -- IT IS PUBLISHED

5   PUBLICLY BUT IT -- THEY ARE NOT CFR REGULATIONS.

6            **THE COURT:**  SO ARE YOU INDICATING THAT IF THE COURT

7   WERE TO SAY O.R.R. DOES NOT NEED TO COMPLY WITH THOSE INTERNAL

8   POLICIES THAT THAT IS NOT AN ISSUE YOU WOULD CONTEST OR SEEK

9   TO APPEAL?

10            **MS. FABIAN:**  YOUR HONOR, I DON'T BELIEVE THAT WE

11   WOULD CONTEST THAT THE COURT HAS THE AUTHORITY TO ORDER THAT

12   THOSE PROCEDURES NOT BE FOLLOWED SPECIFICALLY.  WE WOULD ASK

13   FOR A SPECIFIC RULING THAT THE COURT'S ORDER AND ORDER FOR

14   RELIEF OVERRULE O.R.R.'S OWN POLICIES.

15            **THE COURT:**  DO YOU AGREE THAT THE COURT'S ORDER WITH

16   RESPECT TO REUNIFYING UNDER CERTAIN TERMS AND CONDITIONS WHICH

17   RELATE TO FITNESS, DANGER TO THE CHILD, THE CLASS CARVING OUT

18   CRIMINAL HISTORY, CONTAGIOUS DISEASE AND OTHER FACTORS, THAT

19   WHAT IS IN PLACE, IF THE GOVERNMENT FOLLOWS THE COURT ORDER,

20   IS VERY CONSISTENT WITH THE TVPRA REQUIREMENTS WHERE THE

21   SAFETY OF THE CHILD IS BEING ADDRESSED PRIOR TO REUNIFICATION?

22            DO YOU HAVE ANY INFORMATION WHICH WOULD INDICATE

23   THAT SIMPLY FOLLOWING THE COURT'S ORDER IN LIGHT OF THE

24   NARROWNESS OF THE CLASS DEFINITION AND THE PARAMETERS OF

25   REUNIFICATION ARE IN ANY WAY INCONSISTENT WITH THE TVPRA OR

THESE POLICIES?

      **MS. FABIAN:**  I THINK I WOULD FIRST ASK FOR A CLARIFICATION FROM THE COURT AS TO WHETHER THE COURT DID INDEED INTEND TO CARVE OUT ALL CRIMINAL HISTORY AS FAR AS CLASS MEMBERSHIP.  I THINK, ASSUMING THAT, THAT DOES GET A LITTLE BIT OF THE WAY TO AT LEAST REMOVING SOME OF THE NECESSARY PROCEDURES, OR THE PROCEDURES THAT MIGHT OTHERWISE BE NECESSARY.

      I WOULD SAY THAT IT STILL REMAINS THAT -- THE COURT -- WE AGREE THAT THE COURT'S STANDARD IN THE ORDER IS CONSISTENT WITH THE TVPRA.  BUT WHAT THE COURT'S STANDARD DOESN'T GIVE US IS HOW TO -- WHICH PARTS STILL OF HOW HHS HAS HISTORICALLY IMPLEMENTED THE TVPRA MIGHT NO LONGER APPLY UNDER THE COURT'S STANDARD.

      IT WOULD SEEM THAT THEY ARE VERY PARALLEL AND IN THAT IT IS VERY DIFFICULT FOR HHS TO MAKE THE DECISION WHICH PARTS OF ITS PROCEDURES UNDER THE TVPRA WOULD NO LONGER BE REQUIRED UNDER THE COURT'S ORDER.

      **THE COURT:**  WE ARE WELL INTO THE INJUNCTIVE RELIEF AND THE GOVERNMENT'S ATTEMPTS TO MEET THESE REQUIREMENTS.  IS THIS AN INDICATION THAT THE GOVERNMENT IS NOT APPEALING, NOT GOING TO APPEAL?

      **MS. FABIAN:**  YOUR HONOR, THAT IS A QUESTION FOR THE SOLICITOR GENERAL.  I CAN'T INDICATE IT THAT TIME -- THE PROCESS OF MAKING THAT DETERMINATION IS UNDERWAY.  WE HAVE NOT

1   SOUGHT A STAY AS FAR AS THE REUNIFICATION PROCESS.  THAT IS

2   NOT UNDERWAY.  SO GIVEN THE TIMING I FEEL THAT IS NOT

3   SOMETHING THAT EVEN COULD OCCUR WITHIN THAT TIME FRAME NOW.

4   BUT I CAN'T GIVE AN ANSWER AS TO THE APPEAL BECAUSE THAT IS A

5   DECISION ENTIRELY WITHIN THE PURVIEW OF THE SOLICITOR

6   GENERAL'S OFFICE.

7           **THE COURT:**  WHAT I DON'T WANT TO OCCUR IS, AT THE

8   INVITATION OF THE GOVERNMENT, FOR THE COURT TO MAKE SOME

9   INDICATION ABOUT THE SCOPE OF THE PRELIMINARY INJUNCTION AND

10  THEN TO USE THAT AS A BASIS TO APPEAL.

11          THE OVERARCHING OBJECTIVE HERE IS TO REUNITE.  AND

12  SO THE WAY I HEAR THE GOVERNMENT TODAY AND RECEIVED THE

13  BRIEFING IS SIMPLY FOR WHAT YOU ARE STATING; AND THAT IS

14  CLARIFICATION, HOW BEST CAN WE PROCEED BEING IN COMPLIANCE

15  WITH THE COURT'S ORDER AND ACHIEVE REUNIFICATION.

16          AM I MAKING A CORRECT ASSUMPTION?

17          **MS. FABIAN:**  I THINK I AGREE WITH THAT.  IF WHAT

18  YOUR HONOR IS SAYING THAT IT IS A COMMITMENT NOT TO APPEAL AT

19  ALL, I CAN'T SAY THAT.  BUT I WOULD AGREE -- AND I HAVE WITH

20  ME HERE FROM OUR FRONT OFFICE SOMEONE WITH EVEN MORE ABILITY

21  TO MAKE THAT COMMITMENT.

22          SO I -- WHAT I WOULD SAY IS I -- WE ARE NOT SEEKING

23  TO SNEAK AROUND THE INJUNCTION HERE AND GET AN ORDER THAT WE

24  CAN, YOU KNOW, BETTER GET OUT FROM UNDER THE COURT'S ORDER, WE

25  ARE SEEKING CLARIFICATION FOR THE PURPOSE OF COMPLYING WITH

```
1    THE REUNIFICATION PROVISIONS OF THE ORDER.  IF WE APPEAL THEM
2    ON A DIFFERENT BASIS THAT REMAINS TO BE SEEN AND IS WITH THE
3    OFFICE OF THE SOLICITOR GENERAL.
4           THE COURT:  I WOULD MAKE THIS TENTATIVE OBSERVATION,
5    THEN, AND THEN COUNSEL CAN WEIGH IN.
6           MY UNDERSTANDING, BASED ON WHAT HAS JUST BEEN
7    REPRESENTED, IS THE O.R.R. POLICIES, THEY ARE NOT IN THE
8    CFR'S, IT IS NOT RULE-MAKING, IT DOESN'T HAVE THE SAME FORCE
9    AND EFFECT AS FEDERAL PROVISIONS OR STATUTES.  THEY ARE SIMPLY
10   INTERNAL POLICIES OR PROCEDURES THAT O.R.R. USES TO ENSURE
11   THAT WHEN THEY RELEASE THE CHILD TO A CUSTODIAN THAT THE CHILD
12   IS BEING RELEASED TO A RESPONSIBLE, SAFE CUSTODIAN.
13          IF THAT'S THE CASE, THEN I WOULD BE PREPARED TO
14   INDICATE THAT THE O.R.R., HHS SHOULD NOT FEEL OBLIGATED TO
15   COMPLY WITH THOSE INTERNAL PROCEDURES BECAUSE THIS CASE IS SO
16   DIFFERENT, IT INVOLVES SEPARATION OF MINOR CHILDREN FROM
17   PARENTS.  AND THE CLASS DEFINITION IS IMPORTANT.  IT INVOLVES
18   THE PARENT, NOT A RELATIVE OR A CUSTODIAN THAT MIGHT SUFFICE
19   BUT THE PARENT.  AND CARVED OUT FROM THE CLASS IS CRIMINAL
20   HISTORY, IS CONTAGIOUS DISEASE.  AND THERE ARE A NUMBER OF
21   FACTORS THAT ARE SET OUT IN NARROWLY DEFINING THE CLASS.
22          AND THE PURPOSE OF THAT WAS TO DEFINE A CLASS AND
23   PROVIDE INJUNCTIVE RELIEF THAT IS CONSISTENT, AS FAR AS
24   REUNIFICATION GOES, WITH THE TVPRA.  AND TO DO IT IN AN
25   EFFICIENT, QUICK MANNER; BUT OF COURSE NEVER LOSING SIGHT OF
```

1 THE SAFETY OF THE CHILDREN.

2          AND AS INDICATED IN THE COURT'S ORDER, THE ATTORNEY

3 GENERAL MAKES HIS OWN DETERMINATIONS AS TO WHETHER OR NOT TO

4 DETAIN OR TO PAROLE OR RELEASE.  THIS ORDER DOESN'T IMPACT

5 THAT IN ANY WAY.

6          OBVIOUSLY THE ATTORNEY GENERAL HAS TO MAKE THOSE

7 DETERMINATIONS CONSISTENT WITH LAW, BUT THIS IS AN ORDER THAT

8 DEALS WITH SEPARATION IN ONE INSTANCE AND THE CIRCUMSTANCES

9 UNDER WHICH THAT MIGHT OCCUR, AND THEN REUNIFICATION IN THE

10 CIRCUMSTANCE WHERE FAMILIES HAVE ALREADY BEEN SEPARATED.

11          SO I WANT TO BE CLEAR THAT I STAND ON THE ORDER, AND

12 MY COMMENTS HERE TODAY DON'T IN ANY WAY SUGGEST THAT THE

13 ATTORNEY GENERAL MUST RELEASE OR MUST DETAIN OR WHEN HE CAN

14 RELEASE OR DETAIN.  THOSE ARE WITHIN THE GOVERNMENT'S

15 PREROGATIVE, CONSISTENT WITH LAW.

16          **MS. FABIAN:**  AND I THINK AS I UNDERSTAND WHAT YOUR

17 HONOR JUST SAID, IF THE CLARIFICATIONS THAT WE ARE ASKING FOR

18 FIT EXACTLY WITHIN WHAT THE COURT HAS JUST SAID, WHICH IS

19 FIRST -- I MENTIONED THE CRIMINAL HISTORY.  IF THE COURT DID

20 INTEND TO EXCLUDE CLASS MEMBERS WITH ANY CRIMINAL HISTORY THEN

21 I THINK THAT THAT IS A CLARIFICATION WE WOULD -- WE WOULD

22 WELCOME FROM THE COURT THAT WOULD BEAR DOWN ON THIS.

23          **THE COURT:**  YES.  AND OF COURSE ALL OF THIS ASSUMES

24 GOOD FAITH.  IT ASSUMES THAT THE GOVERNMENT IS USING THE

25 CRITERIA THAT IT PROPERLY USED BEFORE WITH RESPECT TO CRIMINAL

1 HISTORY.  SOME CRIMINAL HISTORY, I UNDERSTAND, DOES NOT RESULT

2 IN SEPARATE DETENTION OF THE PARENT AND THUS SEPARATION OF THE

3 FAMILY; OTHER CRIMINAL HISTORY COULD.

4          I SIMPLY CARVED OUT CRIMINAL HISTORY FROM THE CLASS

5 DEFINITION BECAUSE I THINK IT IS WITHIN THE GOVERNMENT'S

6 PREROGATIVE TO DETERMINE WHAT TYPE OF CRIMINAL HISTORY MIGHT

7 PROPERLY EFFECT SEPARATION.

8          SO I DON'T INTEND TO INTERVENE IN THAT.  THAT'S AN

9 ISSUE THAT WOULD NEED SEPARATE BRIEFING AND CONSIDERATION.

10 AND HERE AGAIN IT ASSUMES ABSOLUTE GOOD FAITH ON THE PART OF

11 THE GOVERNMENT THAT IF IT ELECTS TO SEPARATE A FAMILY BASED ON

12 CRIMINAL HISTORY THAT IT IS DOING IT UNDER ITS CRITERIA THAT

13 IT ORDINARILY FOLLOWS.

14          **MS. FABIAN:**  I THINK, AS I UNDERSTAND IT, THE --

15 WHAT THE COURT IS SAYING IS THAT YOU READ THE CRIMINAL HISTORY

16 EXCLUSION TO BE PART OF THE SEPARATION DECISION RATHER THAN --

17 BECAUSE, AS I READ THE ORDER, THERE IS -- THE EXCLUSION OF ANY

18 PARENT WITH A CRIMINAL HISTORY, AS A WHOLE, WOULD EXCLUDE

19 THEM -- WOULD EXCLUDE THEM FROM THE CLASS REGARDLESS OF THAT

20 -- WHETHER THAT WAS THE BASIS FOR THE SEPARATION.

21          **THE COURT:**  YES.  AND I MADE CLEAR THAT IF

22 PLAINTIFFS WANTED TO MODIFY THE SCOPE OF THE CLASS THEY COULD

23 DO THAT, BUT GIVEN THE URGENCY AND PRESS OF TIME I SIMPLY

24 ELECTED TO EXCLUDE FROM THE CLASS PARENTS WITH CRIMINAL

25 HISTORY.

22

1    **MS. FABIAN:** AND THEN I THINK THE SECOND POINT THAT

2  IS RAISED BY WHAT YOUR HONOR HAS SAID ABOUT THE ORDER IS --

3  REMAINS THE PARENTAGE QUESTION.  IT SOUNDS LIKE IF -- ON THE

4  LAST POINT THE COURT MAY BE RELYING HEAVILY ON THE PARENTAGE

5  DETERMINATION.

6         SO I THINK WE WOULD STILL ASK FOR A CLARIFICATION AS

7  TO THAT PROCESS AND WHETHER THE CONTINUED USE OF THE DNA

8  ANALYSIS AND THE FOLLOWUP IF THE DNA ANALYSIS IS NOT

9  CONCLUSIVE, AND RELATEDLY ANY DIFFICULTIES THAT MIGHT ARISE

10  OUT OF THE DNA PROCESS IN TERMS OF LOCATING THE PARENT OR

11  OBTAINING DNA.

12         I THINK WE WOULD ASK FOR CLARIFICATION IF THAT IS A

13  PERMISSIBLE APPROACH IN LIGHT OF THE FACT THAT PARENTAGE IS AN

14  IMPORTANT PART OF THE COURT'S ORDER.  AND THE INHERENT -- ANY

15  INHERENT DELAYS THAT MIGHT OCCUR FROM THAT WE WOULD ASK FOR

16  SOME RELIEF TO ALLOW FOR THAT PROCESS.

17    **THE COURT:** ALL RIGHT.  SO THE CLASS IS DEFINED TO

18  INCLUDE PARENTS.

19         MR. GELERNT, DO YOU WANT TO SPEAK TO THAT?  I MEAN,

20  ARGUABLY THAT COULD MEAN ADOPTIVE PARENTS, NONBIOLOGICAL.

21    **MR. GALERNT:** I GUESS ONE QUESTION THAT I WANTED TO

22  SPEAK TO IS THE VERIFICATION PROCESS.  I MEAN, THE GOVERNMENT,

23  I GATHER, IS SAYING, WE ARE GOING TO DNA EVERY SINGLE PERSON

24  AND THAT IS GOING TO DELAY THINGS.

25         IF IT IS NOT -- YOU KNOW, WE WOULD SAY THAT DNA IS A

```
 1    LAST RESORT.  I THINK EVERY CHILD EXPERT HAS SAID THAT, AND I
 2    THINK YOUR HONOR HAS POINTED THAT OUT.
 3              SO TO THE EXTENT THAT DELAYS OF YOUR DEADLINES IS
 4    OCCURRING BECAUSE THEY ARE DNA TESTING EVERYONE, EVEN WHERE
 5    THE CASE MANAGER SAYS THERE IS ABSOLUTELY NO QUESTION, THE
 6    PARENT HAS BIRTH CERTIFICATES, ALL OF THAT.
 7              THE COURT:  I THINK THE GOVERNMENT INDICATED THEY
 8    COULD DNA SWAB EVERYONE AND MEET THE DEADLINE.  I GUESS THE
 9    QUESTION IS WHETHER THAT IS NECESSARY.
10              MR. GALERNT:  WELL, YOUR HONOR, RIGHT.  ABSOLUTELY.
11    YOU ARE PULLING APART TWO IMPORTANT POINTS.
12              IF THE GOVERNMENT IS GOING TO REPRESENT THAT THE DNA
13    TESTING IS NOT GOING TO MOVE THE DEADLINES THAT SOLVES ONE
14    PROBLEM.
15              I THINK WE WOULD SAY, YOU KNOW, THAT DNA TESTING IS
16    INTRUSIVE AND IT SHOULDN'T BE DONE.  AND THE PARENT -- MAKES
17    THE PARENTS NERVOUS, THEY ARE NOT SURE WHY IT IS BEING DONE.
18    THAT IT SHOULDN'T BE DONE IN EVERY CASE.
19              BUT IF IT IS GOING TO BE DONE IN EVERY CASE AND THE
20    DEADLINES AREN'T GOING TO MOVE BECAUSE OF THAT, THE ONLY THING
21    WE WOULD ASK IS THAT IT BE USED ONLY FOR REUNIFICATION, AND
22    THEN EXPUNGED.  BECAUSE I DON'T KNOW THAT WE WANT TO BE A
23    CREATING A DNA DATABASE OF ALL OF THESE PEOPLE.
24              I WANT TO TOUCH ON A COUPLE OF OTHER THINGS, YOUR
25    HONOR, IF I MIGHT.
```

1      **THE COURT:** YES.

2      **MR. GALERNT:** JUST GOING BACK TO THE BEGINNING OF

3  THE DISCUSSION YOU HAD WITH THE GOVERNMENT ON THE TENDER AGE

4  KIDS, THE KIDS UNDER FIVE. I WASN'T -- I WASN'T SURE EXACTLY

5  WHAT THE GOVERNMENT WAS SAYING ABOUT WHAT IS HAPPENING WITH

6  THEM.

7      WE UNDERSTAND THE GOVERNMENT TO HAVE SAID THERE IS

8  101 CHILDREN, AND THAT THEY HAVE IDENTIFIED 49 PARENTS. THE

9  GOVERNMENT SAID THEY CAN'T REUNIFY ALL OF THEM, POTENTIALLY,

10  BY THE DEADLINE BECAUSE THEY ARE NOT SURE WHERE THE PARENT IS,

11  ESPECIALLY IF THE PARENT HAS BEEN RELEASED. BUT THEY HAVE

12  ALSO REPRESENTED, I THINK --

13      AND I APOLOGIZE IF THIS IS MISSTATING WHAT YOU

14  REPRESENTED TO THE COURT.

15      -- THAT EVERY KID HAS TALKED TO THEIR PARENTS. SO I

16  AM NOT SURE HOW THOSE SQUARE.

17      WE WOULD JUST LIKE A SORT OF SIMPLE REPRESENTATION

18  HERE THAT EVERY ONE OF THE 101 KIDS HAS TALKED TO THEIR

19  PARENTS AND WHY -- IF THAT IS TRUE, WHY THE REUNIFICATION

20  CAN'T BE DONE BY THIS WEDNESDAY. BECAUSE THOSE OBVIOUSLY, AS

21  THE COURT NOTED, THOSE ARE THE PARTICULARLY VULNERABLE

22  CHILDREN.

23      AND WE ARE NOT SURE EVEN WHETHER THE GOVERNMENT IS

24  REPRESENTING THAT THEY HAVE ACTUALLY MATCHED EVERY PARENT AND

25  CHILD OF THAT AGE, BECAUSE THEY ARE TALKING ABOUT 49 OF THE

1   PARENTS, 40 OF WHOM ARE IN DHS CUSTODY AND NINE OF WHOM ARE IN

2   U.S. MARSHAL CUSTODY.  BUT IT IS NOT CLEAR WHETHER THE OTHER

3   52 PARENTS AND CHILDREN HAVE BEEN MATCHED OR WHETHER THEY JUST

4   HAVE CHILDREN UNDER FIVE WHO THEY DON'T EVEN KNOW WHO THE

5   PARENT IS.

6           SO I WOULD MAYBE STEP ASIDE FOR A SECOND JUST IF THE

7   GOVERNMENT WANTED TO ADDRESS THAT SPECIFIC POINT, AND I HAD A

8   FEW OTHER THINGS.

9           **THE COURT:**  YES.

10          MS. FABIAN.

11          **MS. FABIAN:**  YOUR HONOR, I APOLOGIZE IF THIS WASN'T

12   CLEAR.  IN PART I THINK IT IS NOT -- IT IS NOT SIMPLE MATH AND

13   SO -- AND AS I SAID IT IS SORT OF AN ISSUE -- A NUMBER IN

14   FLUX.  AND SO I AM TRYING TO AVOID GIVING SPECIFIC NUMBERS BUT

15   TO GIVE SORT OF AN OVERVIEW.

16          WHEN I SAY THAT THE CHILDREN AND THE PARENTS HAVE

17   BEEN IN COMMUNICATION, THAT IS FOR PARENTS WHO ARE IN THE

18   CUSTODY OF THE GOVERNMENT AND CHILDREN IN THE CUSTODY OF THE

19   GOVERNMENT.  I CAN'T REPRESENT, AND I DON'T THINK THERE IS ANY

20   WAY THAT I COULD, THAT IF THERE ARE CHILDREN IN O.R.R. CUSTODY

21   WHERE THE GOVERNMENT IS NOT AWARE OF WHERE THE PARENT IS THAT

22   WE COULD FACILITATE COMMUNICATION.  I DON'T THINK -- I JUST

23   COULD NEVER REPRESENT THAT.

24          SO THERE -- WHEN WE SAY WE HAVE FACILITATED, WHAT IS

25   POSSIBLE FOR THE INDIVIDUALS IN GOVERNMENT CUSTODY, SO THAT'S

```
1   THE COMMITMENT THAT I AM MAKING ON THAT POINT.
2               THE COURT:  AND THAT'S 49?
3               MS. FABIAN:  FOR THE UNDER-FIVES IT IS -- I BELIEVE
4   IT IS 46.
5               ICE HAS DOCUMENTED THAT IN -- WHEN THE PARENT IN ICE
6   CUSTODY COMMUNICATES WITH THE CHILD ICE IS MAKING A NOTE OF
7   THAT IN THEIR SYSTEM OF RECORD.  SO IT IS -- THAT CAN BE -- WE
8   CAN GO BACK AND LOOK AT THAT.
9               BUT -- SO WHAT I AM SAYING THE WAY IT IS PUT IN THE
10  SYSTEM OF RECORD IS NOT IN ANY SORT OF AGGREGATABLE FORM SO WE
11  CAN'T JUST RUN IT ALL, BUT FOR THE UNDER-FIVES THEY HAVE GONE
12  AND LOOKED AND CONFIRMED THAT FOR PARENTS IN ICE CUSTODY WITH
13  CHILDREN UNDER FIVE THAT COMMUNICATION HAS BEEN MADE IN THOSE
14  CASES.
15              THE COURT:  WHAT ABOUT CHILDREN IN CBP OR PARENTS IN
16  CBP CUSTODY?  THERE HAS BEEN INFORMATION, I THINK AS EARLY AS
17  THIS MORNING, THAT THERE ARE PARENTS WHO HAVE BEEN SEPARATED
18  AND THE GOVERNMENT DOESN'T KNOW WHERE THEY ARE BECAUSE CBP
19  DOESN'T HAVE THE INFORMATION.  SO YOU HAVE A CHILD IN O.R.R.
20  AND YOU HAVE A PARENT IN CBP AND NO WAY TO CONNECT THE TWO.
21              MS. FABIAN:  YOUR HONOR, I THINK THAT THAT
22  INFORMATION THAT HAS BEEN RECEIVED BY THE MEDIA MAY HAVE BEEN
23  MISUNDERSTOOD.  BUT I THINK THAT WHAT THE COURT IS REFERRING
24  TO, IF IT IS THIS MORNING'S NEW YORK TIMES ARTICLE, IS
25  MISLEADING.
```

```
 1          FIRST OF ALL LET ME EXPLAIN.  CBP CUSTODY, I THINK
 2   THAT WITH EVERYTHING THAT FOLKS HAVE HEARD IT CAN -- IF YOU
 3   DON'T WORK IN THIS BUSINESS IT CAN BE HARD TO KEEP IT
 4   STRAIGHT.
 5          CBP CUSTODY IS SHORT-TERM.  IT IS UPON INITIAL
 6   ARRIVAL.  NO ONE IS DETAINED, AS THE WORD IS UNDERSTOOD IN
 7   SORT OF MORE DETENTION -- DETENTION BUSINESS.  DETENTION IS
 8   LONG-TERM, CBP IS -- IT IS A CUSTODY DURING PROCESSING.  SO
 9   YOU ARE NOT GOING TO HAVE A SITUATION WHERE A PARENT WOULD BE
10   HELD FOR ANY LENGTH OF TIME IN CBP CUSTODY WITHOUT THE CHILD.
11          CBP LIKELY WOULD BE WHERE THE SEPARATION WOULD
12   PHYSICALLY OCCUR, AND THAT IS THAT THE PARENT -- IN THE
13   SITUATIONS WE ARE FREQUENTLY TALKING ABOUT TODAY, IT IS THAT
14   THE PARENT WOULD GO INTO THE MARSHAL'S SERVICE CUSTODY OUT OF
15   CBP AND THE CHILD WOULD GO TO HHS CUSTODY OUT OF CBP.
16          THE PARENT THEN MIGHT RETURN TO CBP TO BE
17   TRANSFERRED TO ICE.  BUT CBP'S FUNCTION IS PROCESSING AND
18   TRANSFER ON TO THE NEXT LOCATION.  SO THE NUMBER THAT YOU ARE
19   --
20          THE COURT:  ARE YOU SAYING THAT THIS HAS NOT
21   OCCURRED, SO THAT WE DON'T HAVE A SITUATION WHERE CBP HAS THE
22   PARENT, THE CHILD IS IN O.R.R., AND THE GOVERNMENT IS NOT ABLE
23   TO DETERMINE WHERE THE PARENT IS BECAUSE CBP EITHER DID NOT
24   TAKE THE INFORMATION OR DESTROYED THE INFORMATION?
25          MS. FABIAN:  THE NUMBER -- THE NEWS REPORT THAT YOUR
```

1   HONOR IS REFERENCING IS, I BELIEVE, REFERENCING THE SYSTEM OF

2   RECORD THAT IS USED BY DHS.  AND THAT IS THAT WHEN A FAMILY

3   UNIT IS ENCOUNTERED BY DHS, IN CBP, MOST LIKELY, THEY ARE

4   GOING TO BE FLAGGED IN OR LOGGED INTO THE SYSTEM AS A FAMILY

5   UNIT.

6           AND THEN IF THE FAMILY IS THEN SEPARATED BECAUSE THE

7   CHILD IS TRANSFERRED TO O.R.R. CUSTODY AND THE PARENT REMAINS

8   WITH ICE OR GOES ELSEWHERE, THAT SYSTEM OF RECORD WILL BE

9   UPDATED TO REFLECT THAT YOU NOW HAVE A PARENT AND A CHILD.

10          INFORMATION ISN'T LOST FROM THE SYSTEM IT -- ANY

11  CHANGE TO THAT DESIGNATION IS -- AND I AM NOT A COMPUTER

12  PERSON SO I AM PROBABLY NOT USING THE RIGHT WORDS FOR THIS,

13  BUT IT IS LOGGED IN THE HISTORY OF THE SYSTEM.

14          SO ONE WAY TO TELL THAT AN INDIVIDUAL IS A MEMBER OF

15  A FAMILY GROUP THAT HAS BEEN SEPARATED IS THAT YOU WOULD LOOK

16  AT THAT CHANGE IN THEIR DESIGNATION.

17          SO AS -- I BELIEVE THAT THAT WAS MISUNDERSTOOD TO BE

18  THAT CBP LOST RECORDS.  IF IT IS SOMETHING ELSE THEN I -- YOU

19  KNOW, I DON'T WANT TO MISLEAD THE COURT, I DON'T KNOW THAT.

20  BUT THAT IS -- CBP RECORDS INDIVIDUALS AS A FAMILY GROUP AND

21  THEN WILL -- IF THE SEPARATION OCCURS THEY WILL REDESIGNATE

22  THEM AS AN INDIVIDUAL.  AND THAT IS WHAT ALLOWS THEM TO MOVE

23  TO THEIR NEXT LOCATION.  IT IS ACTUALLY A SYSTEM THAT ENSURES

24  THAT THEY ARE PROPERLY HANDLED IN THE -- THROUGH THE SYSTEM.

25          **THE COURT:**  AS I UNDERSTAND THE GOVERNMENT'S

```
1   REPRESENTATION IT IS THAT IF PARENT IS IN GOVERNMENT CUSTODY,
2   EITHER WITH ICE OR CBP OR SOME OTHER AGENCY, YOU ARE ABLE TO
3   REUNIFY THEM WITH THEIR CHILD.  THE TIMING MIGHT BE AN ISSUE
4   BUT YOU ARE ABLE -- YOU KNOW WHERE THEY ARE AND YOU ARE ABLE
5   TO REUNIFY THEM.
6           THE ONES THAT YOU ARE NOT ABLE TO REUNIFY AT THIS
7   POINT ARE THE PARENTS WHO ARE RELEASED FROM DETENTION OR
8   CUSTODY AND YOU HAVEN'T BEEN ABLE TO LOCATE THEM.  IS THAT
9   FAIR?
10          MS. FABIAN:  I WOULDN'T SAY NOT IN THAT IT COULD
11  NEVER HAPPEN, I WOULD SAY, BUT I THINK THAT IS CORRECT IN THAT
12  WE CERTAINLY CAN'T WHILE WE DON'T KNOW WHERE THE PARENT IS AND
13  IT WOULD BE A LONGER PROCESS.
14          THE COURT:  BUT THOSE PARENTS THAT ARE IN DETENTION
15  OR CUSTODY WITH SOME GOVERNMENTAL AGENCY, YOU KNOW WHERE THEY
16  ARE AND YOU CAN REUNITE THEM WITH THEIR CHILD.
17          MS. FABIAN:  YES.  AND I WOULD SAY SORT OF FOR
18  PURPOSES HERE, BECAUSE I DON'T -- I DON'T WANT TO COMMIT.  WE
19  HAVE -- I MEAN, CBP IS -- A PARENT IN CBP CUSTODY IS GOING TO,
20  AS QUICKLY AS POSSIBLE, BE MOVING INTO ICE CUSTODY.  THAT IS
21  THE FUNCTION OF CBP AND -- TO MOVE FOLKS OUT TO THE NEXT
22  LOCATION.
23          SO THEN FOR OUR PURPOSES WE ARE TALKING ABOUT IF A
24  PARENT IS IN ICE CUSTODY AND A CHILD IS IN THE CUSTODY OF
25  O.R.R., THOSE REUNIFICATIONS ARE THE -- SORT OF THE MOST
```

1    STRAIGHTFORWARD THAT WE HAVE.

2          BECAUSE WE ARE TALKING ABOUT A LOT OF ISSUES, I

3    DON'T WANT TO SAY THERE IS NEVER GOING TO BE ANOTHER SITUATION

4    THAT COULD ARISE, BUT WHAT -- THOSE ARE THE STRAIGHTFORWARD

5    CASE AND THOSE ARE THE ONES THAT -- WHERE THE ISSUES THAT WE

6    ARE IDENTIFYING AS THE MOST PRESSING NEED DO NOT ARISE.

7          **THE COURT:** ALL RIGHT.

8          MR. GELERNT.

9          **MR. GALERNT:** YES, YOUR HONOR.  SO IF I AM

10   UNDERSTANDING THE GOVERNMENT CORRECTLY THERE -- I WILL JUST

11   START WITH THE 49 THAT APPEAR TO BE IN SOME TYPE OF CUSTODY.

12          OUR UNDERSTANDING FROM PEOPLE, ADVOCATES WHO FOLLOW

13   THIS, THAT THE CBP RECORDS HAVE BEEN DESTROYED AND NOT

14   TRANSFERRED, BUT I AM GOING TO PUT THAT ASIDE FOR THE MOMENT.

15          THOSE 49 CHILDREN UNDER FIVE, I AM ASSUMING THE

16   GOVERNMENT IS GOING TO REPRESENT THAT THEY CAN BE REUNITED BY

17   YOUR DEADLINE.  49 CHILDREN IS NOTHING.

18          AND, YOU KNOW, I WANTED TO SAY THAT THIS IS ONE OF

19   THOSE SITUATIONS WHERE THERE CAN BE AN ENORMOUS PUBLIC/PRIVATE

20   EFFORT.  I MEAN THE WHOLE COUNTRY IS FOCUSED ON IT.  THERE ARE

21   SO MANY PRIVATE COMPANIES THAT ARE WILLING TO PROVIDE WHATEVER

22   RESOURCES ARE NEEDED, TRANSPORTATION, HOTELS.  49 KIDS IS

23   NOTHING.  SO I AM HOPING THE GOVERNMENT IS GOING TO SAY BY

24   WEDNESDAY THOSE 49 ARE GOING TO BE IN THEIR PARENT'S ARMS.

25          BUT I WANT TO FOCUS ON THE 52, BECAUSE I AM NOT SURE

1    I CAN SORT OF PUT IT BETTER THAN YOUR HONOR DID, THAT IT IS

2    STARTLING THAT THE RECORDKEEPING IS NOT THERE.

3            I DON'T UNDERSTAND WHY THEY DON'T KNOW WHERE THE

4    PARENT IS.  WHEN THEY RELEASE A PARENT THEY DON'T JUST WALK --

5    LET THEM WALK OUT THE DOOR WITH NO RECORDS.  I MEAN, THE

6    GOVERNMENT'S WHOLE POINT IS, WE WANT TO KEEP TRACK OF THEM SO

7    THEY APPEAR FOR THEIR ASYLUM HEARING.

8            SO THERE MUST BE ADDRESSES.  AND IF THE GOVERNMENT

9    IS HAVING TROUBLE TRACKING DOWN THE PARENT THEN PRIVATE GROUPS

10   AND THE ADVOCATES WILL DO IT WITH HELP ON THE CHILD'S SIDE.

11           AND I THINK THAT GOES TO THE RELATED POINT.  WE HAVE

12   ASKED THE GOVERNMENT FOR A LIST OF ALL -- SO THAT WE CAN THEN

13   GET PRIVATE LAWYERS TO SEE ALL, WHATEVER IT IS, 3,000, 2500,

14   ALL PARENTS.  WE HAVE THOUSANDS OF INDIVIDUAL PRIVATE LAWYERS

15   WHO ARE READY TO SEE EACH PARENT.  TO DESCRIBE THEIR CHILD,

16   SAY WHERE THEY ARE FROM, SO WE CAN GO FIND THE CHILDREN.

17           AND IF THE 52 PARENTS ARE FOR SOME REASON NOT BEING

18   ABLE TO BE TRACKED BY THE PARENT WE WILL TRACK THEM, BUT WE

19   NEED THE LIST.

20           MS. FABIAN HAS REPRESENTED THAT WE ARE GOING TO GET

21   A LIST OF EVERYONE, SHE NEEDS -- BUT WE HAVEN'T GOT THAT YET.

22   I MEAN, WE ARE HOPING WE CAN GET THAT TODAY SO WE CAN GET THE

23   PRIVATE BAR INVOLVED.

24           THERE ALSO HASN'T BEEN NOTICE TO THE CLASS.  WE HAVE

25   SENT HER A DRAFT NOTICE SO PEOPLE UNDERSTAND THEIR RIGHTS.

```
 1           BUT I DON'T WANT TO MOVE OFF THESE TENDER-AGE KIDS
 2   UNTIL WE SORT OF CAN COME TO SOME AGREEMENT ABOUT WHAT IS
 3   GOING ON.  BECAUSE IT IS NOT THAT MANY KIDS.  YOUR HONOR GAVE
 4   THEM A FAIR AMOUNT OF TIME.  AS YOUR HONOR KNOWS, WE ASKED FOR
 5   TEN DAYS, YOU UNDERSTANDABLY DECIDED TWO WEEKS WOULD BE MORE
 6   REASONABLE, GAVE THEM TWO WEEKS.
 7           101 KIDS, I REALLY FEEL LIKE WE SHOULD NOT LEAVE THE
 8   COURT UNTIL WE AND THE GOVERNMENT CAN REACH SOME CONCLUSION
 9   ABOUT HOW WE ARE GOING TO DEAL WITH THE KIDS, BECAUSE WE WILL
10   GET AS MANY LAWYERS AS NECESSARY TO TRACK THOSE FAMILIES DOWN.
11           THERE MUST BE DATA ON THOSE PARENTS WHERE THEY WENT
12   TO AND A WAY TO REACH THEM.  I JUST DON'T UNDERSTAND THAT THE
13   GOVERNMENT WOULD TAKE THE CHILD AWAY, LET THE PARENT WALK WITH
14   NO WAY TO REACH THE PARENT.  AND A PRE-VERBAL CHILD IS
15   OBVIOUSLY IS NOT GOING TO EXPLAIN WHERE MY PARENT IS.
16           SO IF THE GOVERNMENT WANTS TO STAND UP NOW, BEFORE I
17   MOVE TO OTHER POINTS, AND TALK ABOUT WHETHER THEY ARE GOING TO
18   GIVE US A LIST, BUT ALSO PRECISELY WHAT IS GOING TO HAPPEN TO
19   THESE 101 KIDS, I WOULD WELCOME THAT.
20           **MS. FABIAN:**  AND I APOLOGIZE, YOUR HONOR.  I AM NOT
21   TRYING TO HIDE THE BALL HERE ON THESE NUMBERS.  I AM TRYING TO
22   TALK ABOUT IT IN TERMS OF ISSUES, BECAUSE WE ARE TALKING ABOUT
23   THE SMALLER SORT OF STAGE ONE, AND THERE IS ANOTHER STAGE
24   COMING DOWN.  AND TO FACILITATE THESE REUNIFICATIONS WE WANT
25   TO DEAL WITH THESE ISSUES THAT WILL ALLOW US TO FIGURE OUT HOW
```

```
1  TO DO THIS AS QUICKLY AS POSSIBLE.  SO IF I AM GETTING

2  DISTRACTED WITH THE ISSUES THAT WE ARE TRYING TO DEAL WITH IT

3  IS NOT BECAUSE I AM TRYING TO AVOID GIVING YOUR HONOR THE

4  INFORMATION.

5        OF THE 100 -- APPROXIMATELY 100 INDIVIDUALS, IT IS

6  46 NOT 49 WHO ARE IN ICE CUSTODY, I BELIEVE.  AND SO THERE ARE

7  86 PARENTS THAT HAVE BEEN MAPPED TO -- HAVE BEEN MAPPED TO 83

8  OF THE CHILDREN.  OF THESE THOSE 86 PARENTS YOU HAVE -- YOU

9  HAVE 46 IN ICE CUSTODY, 19 WHO WE UNDERSTAND HAVE BEEN REMOVED

10 FROM THE COUNTRY.  19 WHO WERE RELEASED FROM ICE CUSTODY.  TWO

11 OF THOSE 86 THEN HAVE BEEN DETERMINED TO HAVE A CRIMINAL

12 HISTORY THAT WOULD MAKE THEM UNFIT OR A DANGER, AND THAT IS

13 CRIMINAL CONVICTIONS RELATING TO CHILD CRUELTY AND KIDNAPPING

14 OR RAPE.  AS WE UNDERSTAND TODAY -- AND AS THIS IS DEVELOPING

15 THAT MAY DROP THEM OUT OF THE CLASS.

16        SO THAT IS WHY I SAY THAT THESE NUMBERS ARE IN FLUX

17 BECAUSE WHAT STARTS OUT AS A CLASS MEMBER SITUATION MIGHT

18 LATER JUST BE RESOLVED BY NOT FALLING WITHIN THE CLASS RATHER

19 THAN BY CONSIDERING THE REUNIFICATION OPTION.

20        MR. GALERNT:  SO I AM SORRY, YOUR HONOR.

21        COULD YOU STATE THOSE NUMBERS AGAIN?  YOU HAD THEM

22 AT 19, IF YOU COULD.

23        MS. FABIAN:  19.

24        MR. GALERNT:  THE 80'S.

25        I AM SORRY, YOUR HONOR.
```

1        **THE COURT:**  THAT'S OKAY.  I WOULD LIKE THAT

2  CLARIFICATION, TOO.

3            IF YOU COULD RUN THROUGH THOSE NUMBERS.

4        **MR. GALERNT:**  IF YOU COULD START FROM THE BEGINNING.

5        **MS. FABIAN:**  WE ARE TALKING -- WE ARE -- 83 MINORS

6  WHO HAVE BEEN MAPPED TO 86 PARENTS.  AND 16 MINORS WHO HAVE

7  NOT BEEN MAPPED TO PARENTS, SO WE CAN'T CONFIRM THAT -- THOSE

8  ARE THE SITUATIONS WHERE I MENTIONED WHERE PERHAPS THE MINOR

9  HAS REPORTED A SEPARATION BUT IT MAY BE THAT WHEN WE DRILL

10 DOWN -- THIS IS WHY WE HAVE ICE AND O.R.R. IN ROOMS TOGETHER

11 DRILLING THROUGH THESE NUMBERS.  SO IT MAY BE THAT SOME OF

12 THOSE GO INTO THE CLASS, SOME DON'T.

13           I DON'T HAVE IT WRITTEN DOWN.  I KNOW THERE WAS SOME

14 NUMBER THAT WERE -- AT ONE POINT WERE -- REMAINED IN MARSHAL

15 SERVICE CUSTODY.  I DON'T HAVE THAT NUMBER FOR YOU, IF THAT IS

16 PART OF THIS.  46 ARE IN ICE CUSTODY.  19 HAVE BEEN REMOVED

17 FROM THE COUNTRY.  AND 19 WERE RELEASED FROM CUSTODY.

18           AND I AM NOT SURE IF THAT MATH ADDS UP WITHOUT MY

19 PHONE.

20        **THE COURT:**  AND THE CLASS DEFINITION WOULD NOT

21 INCLUDE THOSE THAT ARE REMOVED, BECAUSE IT ASSUMES THE

22 DEFINITION IS THAT THEY ARE WITHIN ICE DETENTION.

23        **MS. FABIAN:**  THAT'S -- THAT HAS BEEN -- AND THAT IS

24 ONE OF THE ISSUES WE RAISED FOR THE COURT.  WE DID NOT

25 UNDERSTAND THE ORDER TO BE REFERRING TO PARENTS WHO WERE

1   REMOVED BECAUSE THAT WAS NOT A SITUATION FOR THE NAMED

2   PLAINTIFFS, IT IS NOT SOMETHING THAT WAS DISCUSSED IN THE

3   ORDER.  SO WE WOULD CONSIDER THOSE OUTSIDE OF THE CLASS

4   DEFINITION.

5          **THE COURT:**  YES.  THE CLASS DEFINITION HAS BEEN SET,

6   I JUST SIMPLY INVITED PLAINTIFFS' COUNSEL, IF THEY WANTED TO,

7   MOVE TO MODIFY THE SCOPE OF THE CLASS THEY COULD, BUT GIVEN

8   THE URGENCY THE CLASS DEFINITION WAS SET.  AND I THINK SOME OF

9   THESE ANSWERS OR QUESTIONS THAT YOU HAVE CAN BE ANSWERED BY

10  LOOKING AT THE SCOPE OF THE CLASS AS PRESENTLY DEFINED.

11         **MR. GALERNT:**  YOUR HONOR, IF I COULD JUST SPEAK TO

12  THAT CLASS DEFINITION POINT.

13         **THE COURT:**  YES.

14         **MR. GALERNT:**  WE UNDERSTOOD YOUR CLASS DEFINITION,

15  BECAUSE IT SAYS WHO HAVE BEEN IN DHS CUSTODY, TO COVER PEOPLE

16  WHO HAVE BEEN REMOVED.  AND I THINK IN SOME WAYS THOSE ARE THE

17  MOST ACUTE SITUATIONS, THE MOST HORRIBLE SITUATIONS, BECAUSE

18  THEN YOU HAVE A PARENT FAR AWAY WONDERING, WHERE IS MY CHILD?

19  AM I EVER —— YOU KNOW, WHAT IS HAPPENING TO MY CHILD IN A

20  FOREIGN COUNTRY?

21         SO WE DID NOT UNDERSTAND THAT.  AND IN TERMS OF

22  CLARIFICATION I THINK YOU WERE VERY PRECISE IN SAYING HAVE

23  BEEN, ARE, OR WILL BE IN DHS CUSTODY.

24         **THE COURT:**  YES.  AND YOU ARE CORRECT, AND I

25  APPRECIATE THAT.

```
1              THAT TERMINOLOGY WAS ADDED IN LIGHT OF THE BRIEFING
2     THAT CAME IN, I THINK ON THE MONDAY MORNING BEFORE THE
3     PRELIMINARY INJUNCTION ISSUED.
4              SO WHAT WOULD BE YOUR POSITION, THEN, FOR PARENTS
5     WHO HAVE BEEN REMOVED?  THEY OBVIOUSLY WERE OR HAD BEEN IN ICE
6     DETENTION, WHAT IS YOUR POSITION WITH RESPECT TO THAT?
7              MR. GALERNT:  WE DEFINITELY BELIEVE THEY ARE WITHIN
8     THE CLASS AND BE REUNITED.  I MEAN, WE WOULD BE WILLING TO
9     TALK TO THE GOVERNMENT AND TALK ABOUT EACH OF THE 19 CASES IF
10    THEY SAID, WELL, LOOK, WE NEED A LITTLE BIT MORE TIME ON
11    PARTICULAR CASES.
12             AND WE WOULD BE HAPPY TO FACILITATE AND -- BECAUSE
13    WE HAVE PEOPLE IN CENTRAL AMERICA AND OTHER PLACES READY TO
14    BRING THE PARENT.  SO WE WOULD LIKE TO WORK WITH THE
15    GOVERNMENT.
16             I MEAN, I THINK THE 19 CAN GET -- ASSUMING THEY ARE
17    NOT BY THIS WEDNESDAY -- EVEN IF THEY ARE BY THIS WEDNESDAY,
18    BUT THAT THAT CAN BE DONE.
19             YOU GAVE A LONG DEADLINE, AND WE CERTAINLY ARE
20    PREPARED TO HELP THE GOVERNMENT LOCATE THOSE PARENTS AND DO
21    THE REUNIFICATION.  BUT I THINK THOSE PARENTS ARE PROBABLY IN
22    MORE DIRE STRAITS, MORE WORRIED ABOUT THEIR CHILDREN THAN
23    OTHER PARENTS, EVEN.
24             THE COURT:  WHAT ABOUT THE TIME FRAME, BECAUSE
25    JULY 10 IS TUESDAY.
```

```
1              MR. GALERNT:  RIGHT.
2              THE COURT:  SEEMS THAT WITH PARENTS THAT HAVE
3    ALREADY BEEN REMOVED THERE NEEDS TO BE SOME RELAXATION OF
4    THAT.
5              MR. GALERNT:  RIGHT.  YOU KNOW, I THINK THERE
6    PROBABLY DOES, BUT MAYBE NOT.  I DON'T KNOW WHETHER THE
7    GOVERNMENT IS REPRESENTING OR WHETHER THE GOVERNMENT KNOWS
8    WHETHER ANY OF THE 100 CHILDREN WHO ARE UNDER FIVE HAVE
9    PARENTS REMOVED.  I GUESS THEY ARE SAYING THAT 19 OF THEM HAVE
10   BEEN REMOVED.
11             IS THAT RIGHT, SARAH?
12             MS. FABIAN:  THAT'S CORRECT.
13             MR. GALERNT:  OKAY.
14             I THINK WHAT WE WOULD WANT TO DO -- AND THIS GOES TO
15   BACK TO HAVING A LIST OF THE INDIVIDUALS -- IS IF THE
16   GOVERNMENT CAME TO US AND SAID, THESE ARE THE 19, DO YOU KNOW
17   WHERE THESE PARENTS ARE?  CAN YOU -- I THINK IT PROBABLY CAN
18   GET DONE BY TUESDAY.
19             BUT WE WOULD BE WILLING TO TALK TO THE GOVERNMENT
20   ABOUT SOME RELAXATION AS LONG AS IT KEPT THAT AMOUNT OF
21   URGENCY AND THE GOVERNMENT WOULD WORK WITH US.  BECAUSE TO THE
22   EXTENT THE GOVERNMENT IS HAVING TROUBLE FINDING THE PARENT, WE
23   COULD PROBABLY ASSIST IN THAT.
24             THE COURT:  WHAT WOULD MAKE SENSE IS FOR THE
25   GOVERNMENT TO PROVIDE A LIST AND TO PUT IN WRITING THE STATUS
```

```
 1   OF EACH OF THESE 101, MEET AND CONFER WITH PLAINTIFFS'
 2   COUNSEL, AND REPORT BACK TO THE COURT MONDAY MORNING.
 3          THE INJUNCTIVE RELIEF IS NECESSARILY BROAD BECAUSE
 4   THERE ARE MANY NUANCED ISSUES THAT THE COURT CAN'T POSSIBLY
 5   ADDRESS.  MUCH OF THIS ASSUMES GOOD FAITH ON THE PART OF THE
 6   GOVERNMENT, THE CLASS DEFINITION, AND THEN COMMUNICATION.
 7          SO IT MAKES PERFECT SENSE TO ME THAT THE GOVERNMENT
 8   WOULD IDENTIFY, BY LIST, THESE 101, GIVE THE STATUS.  AND THEN
 9   WE CAN HAVE A MORE INTELLIGENT CONVERSATION MONDAY MORNING
10   ABOUT WHICH CHILDREN WILL BE REUNITED BY JULY 10, WHICH WILL
11   NOT.  AND THEN THE COURT CAN DETERMINE WHETHER IT -- IT WOULD
12   MAKE SENSE TO RELAX THE DEADLINE AS FAR AS REUNIFICATION.  BUT
13   I WOULD NEED MORE INFORMATION.
14          MS. FABIAN:  YOUR HONOR, THE ISSUE I WOULD TAKE WITH
15   THAT -- AND I UNDERSTAND YOUR HONOR, AND WE HAVE PUT FORWARD
16   OR -- TO SOME EXTENT THIS 101 NUMBER.  BUT WHAT WE ARE DOING
17   THEN IS DEFINING THE CLASS NOT BY VIRTUE OF THE CLASS MEMBERS.
18   I MEAN, THE 101 NUMBER IS BASED ON O.R.R., HHS SORT OF GOING
19   OVER AND ABOVE TO IDENTIFY ALL CHILDREN WHOSE PARENTS MIGHT BE
20   CLASS MEMBERS.  SO I THINK --
21          THE COURT:  I THINK THAT IS A GOOD THING.
22          MS. FABIAN:  I AGREE.  AND I WOULD SAY THAT THAT IS,
23   I HOPE, AN INDICATOR OF THE GOVERNMENT'S EFFORTS TO BE WORKING
24   IN GOOD FAITH.
25          BUT WHAT YOUR HONOR I THINK RECOGNIZES IS THAT THESE
```

1   ARE THEN A VARIETY OF SITUATIONS THAT WE ARE COMING ACROSS.

2   AND I UNDERSTAND THE COURT'S GOAL WAS TO CERTIFY A CLASS AND

3   ISSUE IMMEDIATE INJUNCTIVE RELIEF THAT WOULD REALLY GET TO

4   SOME REALLY CORE GROUP OF WHAT THE COURT IDENTIFIED.  AND THAT

5   IS THE FOCUS AND THOSE ARE THE ONES, REALLY, WITH SORT OF

6   LEVELS OF -- I DON'T WANT TO SAY SPEED BUT WITH LEVELS OF

7   SUCCESS THAT WE CAN ACHIEVE, REALLY.

8           AND WHEN YOU START TALKING ABOUT INDIVIDUALS WHO

9   HAVE BEEN REMOVED, YOU REALLY ARE GETTING INTO INDIVIDUALS NOT

10  REPRESENTED BY THE NAMED CLASS MEMBERS.  INDIVIDUALS FOR

11  WHOM -- I MEAN IT IS NOT -- THIS IS NOT -- WHEN I SAY IT WOULD

12  TAKE TIME, ICE DOES NOT HAVE THE ABILITY TO GO INTO THESE

13  COUNTRIES.

14          I UNDERSTAND THE OFFER FOR PRIVATE MEMBERS OF THE

15  BAR, BUT YOU ARE REALLY GETTING OUTSIDE OF WHAT INJUNCTIVE

16  RELIEF IN A PRELIMINARY BASIS TO A DEFINED CLASS THAT THE

17  GOVERNMENT NEEDS TO BE ABLE TO IDENTIFY, REALLY.  I MEAN, IT

18  IS -- WE ARE ACTING IN GOOD FAITH ON THE CRIMINAL HISTORY.  I

19  THINK IT IS STILL DIFFICULT.  EITHER ALL CRIMINAL HISTORY IS

20  EXCLUDED, OR IF IT STARTS TO GET INTO AN EVALUATION MADE BY

21  ICE YOU REALLY GET OUTSIDE OF THE IDEA OF CLASS RELIEF BECAUSE

22  YOU NEED TO HAVE AN IDENTIFIABLE CLASS THAT ICE CAN LOOK AT

23  SOMEONE AND SAY WE KNOW YOU ARE IN THIS CLASS, OR NOT.

24          AND HAVING THE MORE REALLY DISCERNIBLE, IDENTIFIABLE

25  MARKERS WE HAVE THERE, THE FASTER WE CAN MOVE FOR THOSE PEOPLE

```
1    WHO CAN BE READILY IDENTIFIED.

2            AND WHAT I AM -- THE COURT HAS INVITED PLAINTIFFS TO

3    ASK FOR SEPARATE RELIEF FOR THESE OTHER BUCKETS, AND I THINK

4    THAT IS -- IF THE COURT IS CONSIDERING THAT RELIEF IS

5    NECESSARY I THINK THAT REALLY HAS TO BE THE WAY TO APPROACH

6    IT, BECAUSE EFFORTS MADE TO -- THE MORE WE ARE DRILLING DOWN

7    INTO THESE SORT OF SEPARATE SITUATIONS THE MORE IT IS HARD TO

8    KEEP THE FOCUS ON A DISCERNIBLE SET THAT IS WHAT THE COURT

9    INTENDED TO GRANT RELIEF ON THIS EXPEDITED PRELIMINARY BASIS.

10   AND SO THAT IS WHY WE ARE COMING FOR THIS CLARIFICATION.

11           I DON'T WANT TO GET AWAY FROM THE QUESTION OF THE

12   PROCEDURES UNDER THE TVPRA.  I KNOW WE HAVE GOTTEN INTO SOME

13   OTHER THINGS.  SO I RESERVE TIME BEFORE WE LEAVE TODAY TO MAKE

14   SURE I CAN SAY A LITTLE MORE ON THAT SUBJECT.

15           I WANT TO FIRST -- SINCE WE ARE TALKING ABOUT THE

16   CLASS DEFINITION, I WANT TO MAKE SURE THAT WE ARE NOT ARGUING

17   HERE TODAY WHETHER RELIEF MIGHT OR SHOULD BE AVAILABLE TO

18   THOSE INDIVIDUALS, I THINK THAT IS SOMETHING THAT SHOULD BE

19   BRIEFED.  AND I THINK IT SHOULD BE DEALT WITH IN A SEPARATE

20   ORDER SO THAT WE DON'T TAKE AWAY FROM GIVING THE GOVERNMENT AN

21   IDENTIFIABLE CLASS TO DEAL WITH HERE TODAY.  AND THE MORE WE

22   TAKE AWAY FROM THAT, I THINK, THE MORE WE TAKE AWAY FROM THE

23   ABILITY TO COMPLY, TO THE BEST OF OUR ABILITY, WITH WHAT IS

24   ORDERED TODAY.

25           **THE COURT:**  MR. GELERNT.
```

1          **MR. GALERNT:**  YOUR HONOR, I WOULD JUST SAY WITH THE

2     100 KIDS UNDER FIVE, OR 101 KIDS, I AM NOT SURE I UNDERSTAND

3     THE GOVERNMENT'S POSITION THAT THERE IS NOT SOME DISCERNIBLE

4     OBJECTIVE CRITERIA.  WE KNOW THE PARENTS WHO HAVE BEEN REMOVED

5     ARE PART OF THE CLASS.  WE HAVE JUST SAID THAT WE WILL WORK

6     WITH THEM IF THEY NEED MORE TIME.  CERTAINLY THE PARENTS WHO

7     ARE RELEASED FROM DETENTION ARE WITHIN THE CLASS.

8          SO I THINK YOUR HONOR'S SUGGESTION THAT THERE BE, BY

9     MONDAY MORNING, A LIST.  AND IF THE GOVERNMENT WANTS TO SAY,

10    LOOK, THESE FIVE ARE NOT GOING TO BE REUNITED, WE FOUND

11    CRIMINAL CONVICTIONS, THEN THAT COMES OUT OF YOUR CLASS

12    DEFINITION AND THAT IS -- WE SAY, OKAY, NOW WE UNDERSTAND

13    ABOUT THOSE FIVE.  WE BELIEVE IF THERE -- WE WOULD LIKE TO SEE

14    WHETHER THEY ARE SERIOUS CONVICTIONS AND TAKE THOSE UP

15    INDIVIDUALLY.

16         BUT WE, RIGHT NOW, ARE COMPLETELY IN THE DARK.  THE

17    GOVERNMENT HOLDS ALL OF THE INFORMATION.  THE 19 RELEASED

18    INDIVIDUALS, I MEAN, WE CERTAINLY CAN HELP THE GOVERNMENT TRY

19    AND TRACK IT DOWN.  BUT I JUST DON'T UNDERSTAND WHY YOUR

20    CRITERIA AND THE CLASS ARE NOT OBJECTIVE AND DISCERNIBLE.  I

21    THINK YOUR HONOR USED THOSE CRITERIA PRECISELY, AS YOUR HONOR

22    SAID IN THE OPINION, BECAUSE OF THAT.

23         SO I WOULD HOPE ON MONDAY MORNING WE COULD -- THE

24    GOVERNMENT IS GOING TO REUNITE EVERYONE THEY CAN REUNITE.  AND

25    BY MONDAY MORNING IF THEY THINK THERE IS INDIVIDUALS THEY

1    CAN'T REUNITE WE CAN DISCUSS THOSE.  AND WHETHER WE COME TO

2    YOU OR WHETHER YOU WANT TO HAVE THE MAGISTRATE DEAL WITH THAT

3    NITTY-GRITTY, I DON'T KNOW.  BUT I THINK THAT IS WHERE WE ARE.

4            THE OTHER THING I WOULD SAY, YOUR HONOR, JUST

5    RELATED TO THIS, IS I DON'T WANT US TO BE BACK HERE, AND I AM

6    SURE YOU DON'T, ON THE 25TH, THE DAY BEFORE THE 30-DAY, WITH

7    THE GOVERNMENT FILING SAYING, WE NEED THIS OR THAT.

8            WE HAVE ASKED THE COURT FOR A FULLER LIST, NOT JUST

9    UNDER-FIVE.  NOW, THAT DOESN'T HAVE TO BE DONE BY MONDAY

10   MORNING, OBVIOUSLY, BUT WE THINK IT SHOULD BE DONE FAIRLY

11   PROMPTLY THEREAFTER SO WE CAN ACTUALLY FIGURE OUT -- YOU KNOW,

12   WE CAN HELP YOU WITH THESE 400 PEOPLE.  WE KNOW WHERE THEY

13   ARE.  OR THESE INDIVIDUALS YOU ARE SAYING HAVE CRIMINAL

14   CONVICTIONS, OKAY, WE GET IT.  WE WILL HAVE TO TAKE THOSE UP

15   INDIVIDUALLY.  BUT I THINK ULTIMATELY THAT'S THE WAY IT NEEDS

16   TO GO.

17           I ALSO THINK THERE NEEDS TO BE NOTICE TO THE CLASS.

18   I TAKE IT THE GOVERNMENT IS LOOKING AT THE NOTICE AND IS GOING

19   TO GET BACK TO US, BUT THE GOVERNMENT HAS BEEN USING A FORM

20   NOW FOR REUNIFICATION WITH THE PARENTS, BUT IT IS DIRECTLY

21   LINKED TO REMOVAL.  AND IT IS BEING GIVEN TO PEOPLE WHO ARE

22   NOT CLOSE TO BEING REMOVED, ACCORDING TO PEOPLE ON THE GROUND.

23   AND SO IT IS VERY CONFUSING, AND IT DOESN'T SORT OF EXPLAIN

24   ALL OF THE RIGHTS.

25           SO WE ASK THAT THE GOVERNMENT GET BACK TO US ON OUR

1   PROPOSED NOTICE.  AND IF WE CAN'T AGREE WE SUBMIT IT TO YOU TO

2   SEE IF IT WORKS.

3         BUT WE DO BELIEVE THAT THERE IS SOME COERCION GOING

4   ON, WHETHER IT IS INTENDED OR NOT, WHERE PARENTS ARE NOT

5   UNDERSTANDING THEY DON'T HAVE TO WAIVE THEIR RIGHT TO CONTEST

6   REMOVAL OR GIVE UP THEIR ASYLUM CLAIM IN ORDER TO GET THEIR

7   CHILDREN BACK.

8         **THE COURT:**  ON THE LIST OF CHILDREN, CAN'T YOU

9   PROVIDE THAT INFORMATION, IF ORDERED, RIGHT AWAY?  YOU HAVE

10   THE NAMES, I ASSUME.

11         **MS. FABIAN:**  WE CAN, YOUR HONOR.  AGAIN, WHAT WE

12   HAVE DISCUSSED SO FAR AND I -- MY UNDERSTANDING IS THE

13   DISCUSSIONS HAVE NOT BEEN COMPLETED IN PART BECAUSE OF TRAVEL

14   AND OTHER THINGS.  BUT WE HAVE AGREED TO PROVIDE A LIST OF

15   CLASS MEMBERS.  THAT IS NOT AT ISSUE.  AND THEN THE -- WE CAN

16   CERTAINLY PROVIDE A LIST, IF ORDERED BY THE COURT.  WE ARE

17   STILL SORT OF DISCUSSING IN WHAT WAY THAT WOULD BE

18   APPROPRIATE.  BUT CERTAINLY UNDER A COURT ORDER WE CAN PROVIDE

19   WHAT WE HAVE AVAILABLE.

20         **THE COURT:**  A COURT ORDER SUBJECT TO A PROTECTIVE

21   ORDER PENDING FURTHER COURT ORDER, AND SOMETHING THAT COULD BE

22   DONE TODAY?

23         **MS. FABIAN:**  TODAY MIGHT BE TOUGH JUST BECAUSE WE

24   HAVE FOLKS HERE WHO WOULD NEED TO BE WORKING ON IT.  BUT

25   CERTAINLY BY MONDAY.

```
 1          WHAT I -- AND I DON'T WANT TO -- I DON'T WANT TO

 2   REPEAT MYSELF TOO MUCH.  BUT I GET -- I DO HAVE SOME CONCERNS

 3   WITH IDENTIFYING THE CLASS WITH REGARD TO THE CHILDREN

 4   IDENTIFIED BY O.R.R. ONCE -- IT IS TO THE GOVERNMENT TO

 5   IDENTIFY CLASS MEMBERS, AND IN DOING THAT -- TO DO THAT THE

 6   GOVERNMENT HAS MAYBE OVERLY-IDENTIFIED POTENTIAL CHILDREN TO

 7   ASSIST IN MAKING SURE THAT THEY HAVEN'T MISSED OR THAT THEY

 8   CAN LOCATE OR IDENTIFY THE CLASS MEMBERS THEMSELVES.

 9          AND SO IT IS -- THE CHALLENGE WITH US FOR GIVING A

10   LIST THAT IS NOT TIED TO CLASS MEMBERSHIP IS THAT THEN WE ARE

11   SORT OF INVITING ARGUMENT ABOUT HOW THE GOVERNMENT -- HOW THE

12   GOVERNMENT IS GOING THROUGH THIS PROCESS OF USING THAT LIST

13   WHICH MAY NOT BE RELEVANT TO CLASS MEMBERSHIP TO GET TO THE --

14   TO GET TO THE IDENTIFICATION OF CLASS MEMBERS AND THEN REUNIFY

15   THEM.

16          SO OF THAT -- FOR EXAMPLE YOU SAY TO GIVE THE LIST

17   OF 101.  WE WOULD SAY THAT -- AND WHEN I HAVE THE NUMBER 19

18   REMOVED I DON'T KNOW -- I DON'T KNOW THE TIMING OF THAT.  BUT

19   WE WOULD SAY THAT FOR THOSE REMOVED PRIOR TO THE COURT'S ORDER

20   THAT WE WOULD -- DO NOT READ THOSE AS BEING MEMBERS OF THE

21   CLASS.  FOR THE -- INDIVIDUALS WITH CRIMINAL HISTORY WOULD NOT

22   BE MEMBERS OF THE CLASS.  SO IF YOU HAD THAT LIST OF CHILDREN

23   YOU WOULD HAVE CHILDREN WHO ARE NOT TIED TO ANY IDENTIFIED

24   CLASS MEMBER.

25          AND SO I WORRY THAT THAT GETS US INTO -- AWAY FROM
```

1   THE FOCUS OF WHAT FOLKS ARE CURRENTLY DOING WITH ICE AND

2   O.R.R. RIGHT NOW, WHICH IS DRILLING DOWN ON THOSE LISTS, AND

3   THEN REALLY INVITING MORE CONFUSION INTO THAT PROCESS.

4          WHAT -- THE REASON THAT WE ARE ASKING FOR

5   CLARIFICATION IS TO ASSIST US IN COMPLETING THIS

6   IDENTIFICATION PROCESS.  AND SO OF COURSE WE WOULD COMPLY WITH

7   ANY ORDER FROM THE COURT, BUT I JUST WANT TO SORT OF IDENTIFY

8   WHY WE WOULD THINK THAT THAT IS NOT A PRODUCTIVE WAY OF MOVING

9   FORWARD IN OUR PROCESS OF IDENTIFYING CLASS MEMBERS AND

10  FACILITATING REUNIFICATION.  THAT NUMBER DOES NOT NECESSARILY

11  MEAN THE TOTAL NUMBER WHO MUST BE REUNIFIED UNDER THE COURT'S

12  ORDER.

13         **THE COURT:**  A COUPLE OF OBSERVATIONS.

14         FIRST, THE IDEA OF BEING OVER-INCLUSIVE IS A GOOD

15  ONE.  PART OF THE INJUNCTIVE RELIEF IS TO PUT IN PLACE

16  REUNIFICATION FOR CLASS MEMBERS, BUT ALSO TO ESTABLISH A

17  PROCESS THAT CAN INCLUDE OTHERS AND GOING FORWARD IN THE

18  FUTURE WILL RESULT IN TRACKING AND PRODUCTION OF CHILDREN SO

19  THAT THEY CAN BE REUNIFIED WITH THEIR PARENTS AT THE

20  APPROPRIATE TIME.  SO BEING OVER-INCLUSIVE IS ENCOURAGED.

21         THE SPECIFIC INJUNCTION, HOWEVER, IS TIED TO THE

22  CLASS DEFINITION.  THE CLASS DEFINITION, IN MY VIEW, IS CLEAR.

23  IT SETS THE DEFINITION OF THE CLASS AND IT ALSO ESTABLISHES

24  THE CARVE-OUTS TO THE CLASS.  SO TO THE EXTENT SOME OF THE 101

25  FALL OUT OF THE CLASS, THAT'S A REALITY.  MY ENCOURAGEMENT

1   WOULD BE THAT IF YOU HAVE IDENTIFIED 101 AND A SMALL HANDFUL

2   OF THEM FALL OUTSIDE OF THE CLASS THAT YOU STILL -- YOU TRY TO

3   REUNITE, BECAUSE THAT'S THE SPIRIT OF THE INJUNCTIVE RELIEF

4   AND WHAT EVERYONE IS TRYING TO DO, INCLUDING THE GOVERNMENT.

5           SO THE GOVERNMENT CAN TAKE SOME VERY HARD, NUANCED

6   PARSING OF THE CLASS AND CARVE CHILDREN OUT OF IT.  BUT TO THE

7   EXTENT YOU HAVE 101, AND TO THE EXTENT SOME OF THEM MIGHT FALL

8   OUT OF THE CLASS, MY ENCOURAGEMENT WOULD BE THAT YOU INCLUDE

9   THEM AND YOU TRY TO REUNIFY THEM.

10          BUT AS A MATTER OF ENFORCING THE INJUNCTION, I WOULD

11  STAND ON THE CLASS DEFINITION, THE OBJECTIVE STANDARDS THAT

12  ARE SET OUT THEREIN.  AND THEN STAND ON THE DEADLINE.

13          I AM PREPARED TO ISSUE AN ORDER, AND IT CAN BE A

14  PROTECTIVE ORDER AT THIS POINT, FOR COUNSEL AND THEIR

15  DESIGNATED AGENTS TO HAVE A LIST OF THESE CHILDREN, THE 101,

16  WE ARE FOCUSING ON THE UNDER-FIVE NOW, VERY SOON; WITH AN

17  ARTICULATION BY THE GOVERNMENT AS TO THE CATEGORIES WHEN THEY

18  ARE GOING TO BE REUNIFIED, CATEGORIES WHERE YOU MAY BE HAVING

19  DIFFICULTY IDENTIFYING WHERE THE PARENTS ARE OR LOCATING THEM

20  OR COMMUNICATING WITH THEM, CATEGORIES LIKE THE REMOVED GROUP,

21  THE 19, WHERE MORE TIME MAY BE NECESSARY.

22          THE COURT NEEDS THAT INFORMATION.  PLAINTIFFS

23  CERTAINLY NEED THAT INFORMATION.  ONCE THEY HAVE THAT

24  INFORMATION THEN THE PARTIES CAN AGREE THAT HERE IS A GROUP

25  THAT WE CAN REUNIFY WITHOUT PROBLEMS BY JULY 10, HERE IS A

1    GROUP, FOR EXAMPLE IT IS THE 19 WHO HAVE ALREADY BEEN REMOVED,

2    THE PLAINTIFFS WILL MARSHAL THEIR ENORMOUS RESOURCES AND

3    ATTEMPT TO LOCATE THOSE PARENTS.

4            I WOULD FULLY EXPECT A STIPULATION, JOINT MOTION AND

5    ORDER BY THE PARTIES THAT PERHAPS AS TO THAT GROUP SOME

6    ADDITIONAL TIME MAY BE NEEDED.  BUT THAT IS GOING TO REQUIRE

7    INFORMATION TO PLAINTIFFS' COUNSEL AND THE COURT, AND THEN IT

8    IS GOING TO REQUIRE COUNSEL TO MEET AND CONFER.

9            **MS. FABIAN:**  JUST TO CLARIFY.  I THOUGHT YOUR HONOR

10   HAD SAID BEFORE THAT PARENTS WHO HAD BEEN REMOVED ARE NOT

11   MEMBERS OF THE CLASS.  IS IT -- IS THE CLARIFICATION THAT YOU

12   BELIEVE THAT THEY ARE?

13           **THE COURT:**  YES.  I MISSPOKE, BECAUSE THE CLASS, AS

14   IT WAS DEFINED, WAS HAVE BEEN, ARE, OR WILL BE IN ICE

15   DETENTION.  SO IT DOES INCLUDE THEM.

16           **MS. FABIAN:**  CAN I ASK.  WE HAD ALSO ASKED WHETHER

17   THERE WAS A DATE LIMITATION ON THE HAS BEEN, BECAUSE THERE ARE

18   GOING TO BE SITUATIONS.  I THINK WE HAVE A CASE THAT WAS

19   FILED, YOU HAVE A MANDATORY INJUNCTION THAT'S ASKING THE

20   GOVERNMENT TO UNDERGO A SIGNIFICANT AMOUNT OF EFFORT HERE.

21   AND I THINK WHEN WE ARE GOING BACK ON DATES THAT WELL PRE-DATE

22   THE -- OUTSIDE OF THIS LITIGATION I THINK YOU ARE LOOKING AT

23   SOME NUMBER OF FOLKS WHO MAY HAVE BEEN REMOVED WHOSE CHILDREN

24   MAY HAVE REMAINED IN O.R.R. CUSTODY.

25           I UNDERSTAND YOUR HONOR'S POINT THAT OF COURSE TO

1   THE EXTENT THERE IS AN ABILITY TO LOOK AT THOSE AS PROCESSES

2   ARE DEVELOPED THAT MAY BE SOMETHING.  BUT AS PART OF THE

3   INJUNCTION IN DEALING WITH DIFFICULT DATES I THINK IT WOULD BE

4   HELPFUL FOR THE GOVERNMENT -- WE HAVE PROPOSED THE DATE THAT

5   THE AMENDED COMPLAINT WAS FILED, WHICH I BELIEVE IS MARCH 9TH,

6   THAT THERE BE A DATE FOR THOSE SEPARATIONS THAT AFTER WHICH --

7   OR BEFORE WHICH AN INDIVIDUAL WOULD NOT BE A MEMBER OF THE

8   CLASS.

9            **THE COURT:**  MR. GELERNT.

10           **MR. GALERNT:**  YOUR HONOR, I AM NOT SURE I COMPLETELY

11  UNDERSTAND THAT.  I THINK IT NECESSARILY WOULD, BECAUSE, FOR

12  EXAMPLE, MS. L. WAS BEFORE WE AMENDED THE COMPLAINT.  I THINK

13  WE FILE A COMPLAINT AND WE SAY STOP IT GOING FORWARD AND

14  REUNIFY ALL OF THOSE CHILDREN UNDER THE PRIOR PRACTICE.  I

15  THINK THAT IS FAIRLY STANDARD AND I ASSUME THAT IS WHAT YOUR

16  HONOR MEANT IN THE CLASS DEFINITION:  HAVE, ARE, OR WILL BE.

17  OTHERWISE IT WOULD MAKE NO SENSE THAT MS. L. IS THE LEAD

18  PLAINTIFF.

19           **THE COURT:**  I AM NOT SURE A DATE IS NEEDED BECAUSE

20  THE CLASS IS SELF-DEFINING IN SO MANY WAYS.  SO I AM

21  RELUCTANT, ABSENT FURTHER BRIEFING OR DISCUSSION, SIMPLY TO

22  PICK A DATE.  IT SEEMS TO ME, GIVEN THE CLASS DEFINITION, THAT

23  YOU ARE GOING TO KNOW THE INDIVIDUALS.  AND IT IS A FINITE

24  NUMBER.  WE ARE NOT -- RELATIVELY SPEAKING WE ARE NOT TALKING

25  ABOUT THOUSANDS UPON THOUSANDS.

49

1                   AND SO IT SEEMS TO ME, GIVEN THE PRESENT CLASS

2     DEFINITION, THE GOVERNMENT CAN IDENTIFY, FOR EXAMPLE, THOSE

3     THAT HAVE ALREADY BEEN REMOVED.  IT WILL BE A FINITE NUMBER.

4     IT MAY BE THE 19.  WE MOVE TO THE OLDER GROUP, THERE MAY BE A

5     FEW MORE.  I DON'T KNOW WHETHER FASHIONING A DATE BY WHICH THE

6     CLASS GOES BACK IN TIME IS WARRANTED.

7                   **MS. FABIAN:**  I WOULD HAVE TO GET MORE INFORMATION

8     FROM MY CLIENT ON THIS.  BUT I THINK IT WOULD ALSO INCLUDE,

9     FOR EXAMPLE, YOU HAVE A CHILD IN O.R.R. CUSTODY WHO WAS --

10    WHOSE PARENT HAS NEVER COME FORWARD TO SPONSOR THEM WHO MAY BE

11    IN THE UNITED STATES FOR YEARS.  AND THE CHILD HAS BEEN UNABLE

12    TO BE RELEASED FROM HSS CUSTODY BECAUSE THE PARENT HAS NEVER

13    OFFERED TO SPONSOR.  THERE ARE, SADLY, SITUATIONS LIKE THAT.

14                  AND I THINK, AGAIN -- AND MAYBE THIS REALLY BRINGS

15    US BACK TO PART OF WHAT WE ARE ASKING FOR TODAY IS THE

16    RECOGNITION THAT THERE ARE THESE SITUATIONS THAT -- I DON'T

17    WANT TO -- THEY ARE PERIPHERAL BUT THEY ARE ALSO NOT

18    INSUBSTANTIAL.  AND TO HAVE TO REALLY GET TO WHAT WE CAN DO TO

19    MEET THE COURT DEADLINES IT IS TO CARVE OUT THE PERIPHERAL

20    SITUATIONS FROM THE GOVERNMENT'S EFFORTS SO THAT THE

21    GOVERNMENT CAN FOCUS ITS EFFORTS ON THE IMMEDIATE NEED, WHICH

22    IS THE CENTRAL, THE SORT OF CORE OF THE COURT'S CLASS AND

23    RELIEF ORDER.

24                  AND I TAKE YOUR HONOR'S POINT THAT THERE ARE --

25    THERE IS THE HOPE THAT THERE COULD BE OTHER RESULTS.  BUT I

 1   THINK RIGHT NOW WE REALLY DO NEED TO FOCUS THE EFFORTS ON THE

 2   CORE IDENTIFIABLE GROUP.  AND THAT IS WHY WE HAVE REALLY TRIED

 3   TO IDENTIFY THE PLACES WHERE THESE DIFFICULTIES, WHERE THESE

 4   DIFFERENCES FROM WHAT THE CLASS SITUATION WAS DIFFERENT --

 5   OUTSIDE THE MAYBE POLICY CONCERNS THAT THE COURT WAS

 6   ADDRESSING IN ITS ORDER.  AND WHERE, IF THOSE ARE NOT PART OF

 7   THE CLASS AND NOT PART OF THE RELIEF ORDER, THAT ALLOWS US TO

 8   FOCUS ON THE CORE GROUP THAT WE UNDERSTOOD TO BE WHAT YOUR

 9   HONOR INTENDED US TO FOCUS ON.

10            **MR. GALERNT:**  YOUR HONOR, MAY I JUST MAKE ONE POINT.

11            I THINK -- I DON'T HAVE MUCH TO ADD TO WHAT I SAID

12   BEFORE, THE CLASS NECESSARILY HAS TO GO BACK BEFORE THE

13   AMENDED COMPLAINT.

14            THE GOVERNMENT COUNSEL BROUGHT UP A CASE WHERE MAYBE

15   THE CHILD HAS BEEN IN O.R.R. FOR YEARS AND THE PARENT HASN'T

16   COME FORWARD.  THAT IS NOT A SEPARATED PARENT.  THAT MAY BE A

17   CHILD WHO CAME BY HIMSELF AND A PARENT WHO IS LIVING IN THE

18   U.S.  THOSE ARE OBVIOUSLY NOT PART OF THE CLASS.  I JUST THINK

19   IT WOULD BE ARTIFICIAL TO HAVE A PRIOR DEADLINE.

20            THE ONLY THING I WOULD SAY, AND THEN I WILL SIT

21   DOWN -- I ASSUME WE ARE COMING TO A CLOSE -- IS THAT IF MONDAY

22   WE COULD NOT ONLY HAVE THE LIST OF UNDER-FIVE BUT THE

23   GOVERNMENT COULD SIGN OFF OR SAY, WE CAN'T SIGN OFF ON THE

24   NOTICE TO CLASS MEMBERS.

25            BECAUSE WHAT WE ARE ASKING FOR IS THAT THEY POST IT

```
1   OR WE CAN HAVE PRIVATE ATTORNEYS POST IT IN DETENTION CENTERS
2   SO PARENTS HAVE SOME SENSE THERE HAS BEEN A RULING, THEY ARE
3   SUPPOSED TO GET THEIR CHILDREN BACK.  THEY DON'T HAVE TO WAIVE
4   THEIR RIGHT TO APPLY FOR ASYLUM.
5           THE CLASS NOTICE WE DRAFTED IS VERY SHORT, WE THINK
6   VERY SIMPLE, AND THERE SHOULDN'T BE A LOT OF DISAGREEMENT.
7   BUT WE UNDERSTAND THE GOVERNMENT MAY, OF COURSE, HAVE
8   DISAGREEMENT.  AND IF WE CAN'T OVER THE WEEKEND AGREE ON THE
9   DISAGREEMENTS WE WOULD LIKE TO SUBMIT IT TO YOU MONDAY FOR YOU
10  TO EYEBALL AND SAY, THIS LOOKS OKAY, DOESN'T LOOK OKAY, MAKE
11  THESE MODIFICATIONS.
12          BUT WE DO THINK AT THIS POINT, GIVEN THIS VULNERABLE
13  POPULATION, THEY OUGHT TO AT LEAST KNOW ABOUT YOUR RULING.
14          MS. FABIAN:  WE HAVE ALREADY BEEN IN DISCUSSIONS
15  ABOUT THE CLASS NOTICE.  I THINK WE HAVE SORT OF CROSS
16  NOTICES.  SO WE WILL LOOK AT THAT AND WE WILL HAVE AN ANSWER
17  BY MONDAY, HOPEFULLY BEFORE.
18          THE COURT:  WHAT ABOUT THE O.R.R. POLICIES,
19  PROCEDURES?
20          MS. FABIAN:  YEAH.  THANK YOU, YOUR HONOR.  I WANT
21  TO MAKE SURE THAT WE DON'T LEAVE WITHOUT ADDRESSING THAT,
22  BECAUSE I THINK IT IS VERY IMPORTANT.
23          I WANT TO SORT OF I THINK TO YOUR HONOR'S QUESTION
24  WHICH WAS, YOU KNOW, ARE THESE -- THESE ARE POLICIES OF THE
25  AGENCY BUT THEY ARE POLICIES THAT IMPLEMENT THE TVPRA AND THE
```

1    STATUTORY REQUIREMENTS.  SO THEY ARE NOT -- I THINK MAYBE TO

2    REALLY CLARIFY WHAT I WAS ARGUING BEFORE, THE COURT CAN ORDER

3    THAT O.R.R. NOT FOLLOW THOSE POLICIES, BUT O.R.R. BELIEVES

4    THAT IT IS NOT A SIMPLE MATTER OF HHS JUST DECIDING NO LONGER

5    TO FOLLOW THESE PROCEDURES.

6          IT REALLY -- WHAT -- IF THE COURT BELIEVES THAT

7    THESE REUNIFICATIONS SHOULD FALL OUTSIDE THE PROTECTIONS OF

8    THESE TVPRA POLICIES, THEN THE AGENCY WOULD ASK THAT THE COURT

9    SPECIFICALLY STATE THAT AND SAY THAT THESE POLICIES DO NOT

10   APPLY IN THE SITUATION OF THESE REUNIFICATIONS.  AND RELATEDLY

11   WE WOULD ASK THE COURT TO CLARIFY IF THAT INITIAL STEP OF

12   DETERMINING PARENTAGE, IF THAT ALSO -- IF THAT DOES APPLY, IF

13   THAT IS A NECESSARY STEP, AND IF THE PROCEDURES THAT THE

14   GOVERNMENT IS EMPLOYING TO DO THAT ARE NECESSARY AND

15   PERMISSIBLE UNDER THE COURT'S ORDER.

16         I THINK, AGAIN, THE THIRD ASK REALLY RELATED TO ALL

17   OF THAT IS THAT IS -- IS THE GOAL THEN TO THE EXTENT THAT ANY

18   OF THOSE PROCEDURES REMAIN -- THE COURT BELIEVES THOSE REMAIN

19   NECESSARY, IS THAT -- DOES THAT THEN MEAN THAT THOSE

20   PROCEDURES, IF THEY TAKE LONGER, THEN THE COURT'S DEADLINE, IS

21   THAT PERMISSIBLE AND CAN THE COURT GIVE THE GOVERNMENT THE

22   RELIEF OF ALLOWING THEM MORE TIME TO COMPLETE THE PROCEDURES

23   THAT THE COURT AGREES THAT THE GOVERNMENT SHOULD CONTINUE TO

24   FOLLOW.

25         **THE COURT:**  ONE OF THE GREAT DIFFICULTIES IS I DON'T

53

```
1   KNOW WHAT PROCEDURES AND POLICIES YOU ARE SPECIFICALLY TALKING
2   ABOUT.  SO FOR THE COURT SIMPLY TO SAY WE ARE GOING TO BRUSH
3   THOSE ASIDE, I AM NOT PREPARED TO DO WITHOUT A STIPULATION OR
4   A JOINT MOTION AND ORDER OR ADDITIONAL BRIEFING.
5            WHAT I AM PREPARED TO SAY IS, IF THE POLICIES AND
6   PROCEDURES YOU ARE TALKING ABOUT ARE INTERNALLY CONSISTENT
7   WITH THE COURT'S ORDER, AND THAT IS TO REUNIFY ABSENT
8   CONSIDERATIONS OF DANGER OR UNFITNESS OR CRIMINAL HISTORY OR
9   DISEASE, THAT KIND OF THING, THEN THE GOVERNMENT SHOULD DO
10  THAT.  THEY SHOULD NOT WORRY ABOUT THOSE TYPES OF POLICIES AND
11  PROCEDURES BECAUSE, AS I UNDERSTAND IT, THEY WOULD BE
12  CONSISTENT WITH THE COURT'S ORDER.
13           BUT IF THERE ARE OTHER POLICIES AND PROCEDURES THAT
14  ARE HAMSTRINGING THE O.R.R. AND THE REUNIFICATION PROCESS, I
15  WOULD LIKE TO KNOW WHAT THEY ARE.  AND THEN I CAN DETERMINE
16  WHETHER I HAVE THE LEGAL AUTHORITY AND WHETHER IT IS PRUDENT
17  TO SET THOSE ASIDE.
18           SO I THINK WHAT -- WHAT I AM CONTEMPLATING IS THAT
19  GOVERNMENT PROVIDE A LIST TO PLAINTIFFS' COUNSEL TOMORROW BY
20  5:00 P.M., WITH AN IDENTIFICATION OF THE CHILDREN AND THE
21  STATUS.  YOU CAN GROUP THEM.  AND A TIMELINE:  YES, WE CAN
22  MEET THE DEADLINE, WE ARE HAVING TROUBLE WITH THIS GROUP
23  MEETING THE DEADLINE BECAUSE OF, AND SET OUT THE REASONS.
24           AND THEN I WOULD LIKE COUNSEL TO MEET AND CONFER AND
25  THEN SUBMIT MONDAY MORNING, OR EARLIER, SO I HAVE TIME TO
```

1   DIGEST IT, A STIPULATION, JOINT MOTION AND ORDER, OR AREAS

2   WHERE THERE ARE DISAGREEMENTS.  THEN I CAN RULE ON THOSE.  I

3   DON'T HAVE ENOUGH INFORMATION NOW TO SIMPLY SAY TO THE

4   GOVERNMENT YOU CAN IGNORE THE O.R.R. POLICIES, AND I DON'T

5   KNOW WHICH ONES YOU ARE TALKING ABOUT.

6          **MS. FABIAN:**  I THINK PART OF THE PROBLEM IS THAT

7   THEY REALLY WILL BE CASE BY CASE.  AND I DON'T THINK THEY ARE

8   INCONSISTENT WITH THE COURT'S ORDER.  AND I DON'T KNOW THAT

9   THE CONCERN IS CONSISTENCY SO MUCH AS THAT THEY ALL, IN

10  O.R.R.'S MIND, ARE NECESSARY TO ENSURE SAFETY BUT THEY TAKE

11  LONGER THAN THE DEADLINE PROVIDED BY THE COURT.

12         **THE COURT:**  YES.  SO IN THAT REGARD, AGAIN I GO BACK

13  TO THE OVERARCHING OBSERVATION, AND THAT IS THAT THE

14  GOVERNMENT MUST REUNITE.  IT MUST COMPLY WITH THE TIME FRAME,

15  UNLESS THERE IS AN ARTICULABLE REASON.  AND IT MAY WELL BE

16  THAT ONCE THE PLAINTIFFS KNOW WHAT THE REASON IS AND WHAT

17  GROUP IT APPLIES TO, THEY WILL AGREE.  AND IT MAY BE THAT A

18  MORE RELAXED DATE CAN APPLY TO A CERTAIN GROUP OF THESE CLASS

19  MEMBERS.

20         BUT NO ONE CAN MAKE ANY INFORMED DECISION, INCLUDING

21  THE COURT, AND PARTICULARLY PLAINTIFFS' COUNSEL, WHETHER OR

22  NOT TO OBJECT OR TO ASK THE COURT TO MAKE ADDITIONAL ORDERS

23  WITHOUT ADDITIONAL INFORMATION.  SO THAT HAS TO BE THE

24  STARTING POINT.

25         AND SO I ASK THE GOVERNMENT TO FOCUS ON THE CLASS

55

 1    DEFINITION, THE CARVE-OUTS TO THE CLASS.  TO PROVIDE THIS LIST

 2    BY 5:00 O'CLOCK TOMORROW.  PLAINTIFFS' COUNSEL TO RESPOND BY

 3    MONDAY, 9:00 A.M.

 4            HOPEFULLY THERE WILL BE A NUMBER OF JOINT MOTIONS

 5    AND ORDERS, STIPULATIONS, IF YOU WILL.  OR IF THERE IS

 6    DISAGREEMENT IT CAN BE A PRINCIPLED, FOCUSED BRIEFING AND I

 7    CAN RULE ON IT MONDAY.

 8            **MS. FABIAN:**  THANK YOU, YOUR HONOR.

 9            I HAD ONE OTHER POINT THAT WE HAD RAISED IN OUR

10    BRIEF.  I THINK THIS ONE WILL BE EASIER FOR THE COURT, I HOPE.

11            IT WAS THE SECOND POINT IN OUR BRIEF AND IT HAS TO

12    DO WITH -- I THINK IT IS PARAGRAPH 1 OF THE COURT'S ORDER

13    WHICH SUGGESTS -- IT ORDERS THAT DHS SHALL NOT HOLD AN ADULT

14    CLASS MEMBER IN ITS CUSTODY WITHOUT THE MINOR CHILD.

15            READ IN CONJUNCTION WITH -- THE PROCESSES THAT ARE

16    UNDERWAY FOR REUNIFICATION, HHS CAN REUNIFY FASTER IN

17    ACCORDANCE WITH ITS POLICIES UNDER THE TVPRA TO AN ADULT WHO

18    REMAINS IN CUSTODY THAN TO AN ADULT WHO HAS BEEN RELEASED FROM

19    CUSTODY.

20            SO DHS IS CONCERNED THAT IF REUNIFICATION HASN'T

21    HAPPENED IMMEDIATELY BEFORE THE COURT'S DEADLINE THAT IN ORDER

22    TO COMPLY WITH PARAGRAPH 1 IT WOULD NEED TO RELEASE

23    INDIVIDUALS FROM ITS CUSTODY.  BUT THAT WOULD BE INCONSISTENT

24    WITH THE GOVERNMENT'S GOAL OF A FASTER REUNIFICATION IN

25    CONJUNCTION WITH SORT OF PARAGRAPHS 1 AND 2.

1          SO WE WOULD ASK FOR CLARIFICATION THAT PARAGRAPH 1

2     DOES NOT REQUIRE RELEASE OF THE PARENT PRIOR TO THE DEADLINE

3     IF THAT RELEASE WOULD ULTIMATELY SLOW DOWN THE REUNIFICATION

4     PROCESS.

5          ESSENTIALLY IT WOULD BE, I THINK, THAT REUNIFICATION

6     IS THE GOAL HERE AND THAT PARAGRAPH 1, TO THE EXTENT IT COULD

7     BE READ TO REQUIRE RELEASE UNRELATED TO REUNIFICATION, THAT IT

8     SHOULD SORT OF BE READ SECONDARY TO THE REUNIFICATION GOAL.

9          **THE COURT:**  THE COURT IS SPEAKING ONLY TO

10    REUNIFICATION.  WHETHER THE GOVERNMENT RELEASES OR DETAINS IS

11    UP TO THE GOVERNMENT.  BUT IT HAS TO EXERCISE DISCRETION AND

12    DECIDE WHETHER TO RELEASE OR DETAIN, AND YET COMPLY WITH THE

13    COURT'S ORDER.  BUT I AM NOT ORDERING EITHER RELEASING OR

14    DETENTION, THAT WOULD BE UP TO THE GOVERNMENT.

15         SO IT MAY BE A QUANDARY THAT THE GOVERNMENT FEELS IT

16    HAS, BUT IT IS REALLY -- IT COMES DOWN TO THE GOVERNMENT'S

17    EXERCISE OF DISCRETION.  IT HAS GOT TO DO ONE OR THE OTHER.

18         **MS. FABIAN:**  I THINK THAT CLARIFIES IT, YOUR HONOR.

19    I THINK WE JUST WANT TO BE ABLE TO SAY THAT REUNIFICATION

20    SHOULD NOT BE SLOWED DOWN ON THE BASIS THAT PARAGRAPH 1 MIGHT

21    BE READ TO REQUIRE ICE TO RELEASE A PARENT EVEN IF THEY ARE

22    NOT TO BE REUNIFIED AT THAT TIME I THINK IS REALLY -- I THINK

23    IT WOULD GO AGAINST THE OVERALL TENOR OF THE COURT'S ORDER

24    WHICH IS THAT REUNIFICATION IS THE GOAL.  BUT WE JUST WANTED

25    TO GET CLARIFICATION THAT PARAGRAPH 1 DOESN'T, IN AND OF

1   ITSELF, REQUIRE RELEASE.

2           I THINK WHAT YOUR HONOR IS SAYING IS THAT RELEASE IS

3   NOT THE GOAL OF THE ORDER, REUNIFICATION IS THE GOAL OF THE

4   ORDER.  AND I THINK THAT WOULD CLARIFY THE POINT.

5           **THE COURT:**  MR. GELERNT.

6           **MR. GALERNT:**  I APOLOGIZE.  I AM NOT FULLY FOLLOWING

7   THE LOGISTICAL PROBLEM THE GOVERNMENT IS SUGGESTING.  BUT WE

8   AGREE, YOUR HONOR, WITH YOUR POINT, THE OVERARCHING POINT THAT

9   THE RULING DOESN'T REQUIRE RELEASE, IT DOESN'T REQUIRE

10  DETENTION; IT REQUIRES REUNIFICATION.

11          I AM NOT SURE I COMPLETELY UNDERSTAND THE LOGISTICS

12  POINT.  IF THE REUNIFICATION OCCURS WITHIN THE DEADLINE THEN I

13  THINK THAT IS WHAT WE CARE ABOUT.

14          I APOLOGIZE, I AM NOT COMPLETELY FOLLOWING.  BUT IT

15  SOUNDS LIKE YOU TWO ARE FOLLOWING IT, SO THAT IS OKAY.

16          THE ONLY THING I WANTED TO JUST CLARIFY, THEN I

17  THINK THAT IS IT FOR US, IS, SO WE WILL GET -- I ASSUME 5:00

18  O'CLOCK PACIFIC TIME SATURDAY.

19          **THE COURT:**  YES.

20          **MR. GALERNT:**  THE LIST OF INDIVIDUALS AND THE

21  GOVERNMENT'S EXPLANATION FOR WHY THEY MAY NEED MORE TIME OR

22  WHY THEY THINK AN INDIVIDUAL FALLS OUT OF THE CLASS.  AND THAT

23  IS PERFECT BECAUSE IT ALLOWS US TO RESPOND, AS YOUR HONOR

24  SAID.

25          IN TERMS OF THE O.R.R. PROCEDURES, THE ONLY THING I

1   WOULD SAY IS, I THINK YOU ARE RIGHT, YOUR HONOR, THAT I ALSO

2   AM NOT SURE EXACTLY ALL OF THE PROCEDURES THEY ARE TALKING

3   ABOUT, AND WHICH ONES THEY WANT TO CONTINUE FOLLOWING IN THIS

4   UNIQUE SITUATION AND WHICH ONES THEY DON'T FEEL LIKE THEY NEED

5   TO FOLLOW.  IT WOULD BE HELPFUL FOR US TO KNOW SPECIFICALLY SO

6   WE COULD STIPULATE.

7           I THINK MOST OF THEM ARE, OF COURSE, DESIGNED FOR

8   EXACTLY WHAT YOUR HONOR POINTED OUT IS THE CHILD COMES HERE BY

9   THEMSELVES, THEY HAVE TO FIND A DISTANT RELATIVE.  AND SO, FOR

10  EXAMPLE, THE TVPRA, THE ONLY REAL REQUIREMENT OF TVPRA IS A

11  HOME VISIT.  BUT THAT MAKES LITTLE SENSE IN THIS CONTEXT.  OR

12  INVESTIGATING THE RELATIVE, YOU KNOW, THE THIRD UNCLE, THAT

13  MAKES LITTLE SENSE.

14          THEY ARE ALSO APPARENTLY FINGERPRINTING, AS O.R.R.

15  DOES, FINGERPRINTING EVERYONE.  IN THE CONTEXT OF AN UNCLE

16  COMING FORWARD THAT MAKES SENSE.  BUT IN THIS CASE EVERY

17  PARENT AND CHILD WHO CROSSED THE BORDER AND WAS APPREHENDED

18  WAS FINGERPRINTED AT THAT TIME, SO A SECOND FINGERPRINTING

19  ROUND CLEARLY DOESN'T MAKE SENSE.  AND IF THERE IS NO REASON

20  TO BELIEVE THE PARENT AND CHILD ARE NOT ACTUALLY THE PARENT

21  AND CHILD, THE TIME AND CUMBERSOMENESS OF A DNA TEST MAKES

22  LITTLE SENSE.

23          SO THAT IS WHY WE THINK THERE IS VERY LITTLE THAT

24  O.R.R. DOES IN THE GENERAL SITUATION, WHICH IS GREAT, MAKES

25  SENSE HERE.  AND SO WE WOULD JUST HOPE THAT THE GOVERNMENT

59

1   COULD TELL US WHICH THINGS THEY STILL THINK THEY NEED TO DO.

2   AND IF WE DISAGREE WE COULD COME TO YOU, BUT THEN IT WOULD BE

3   A VERY CONCRETE DISCUSSION.

4         WE JUST DON'T WANT -- BECAUSE WE WANT TO DEAL WITH

5   THE UNDER-FIVE RIGHT NOW, BUT OBVIOUSLY THE GOVERNMENT NEEDS

6   TO CONTINUE WITH THE PROCESS TO MEET THE 30-DAY DEADLINE, WE

7   CAN GET THAT SQUARED AWAY ABOUT WHAT PROCEDURES THEY ARE GOING

8   TO USE GOING FORWARD.

9         THANK YOU, YOUR HONOR.

10        **THE COURT:**  I WOULD ASSUME THIS IS AN AREA WHERE

11   COUNSEL CAN MEET AND CONFER AND STIPULATE.  THAT IS MY HOPE,

12   AND THAT IS WHAT I WOULD URGE THE PARTIES TO DO.  AND SUBMIT A

13   JOINT MOTION AND ORDER MONDAY MORNING ON THESE O.R.R. POLICIES

14   AND PROCEDURES THAT ARE BEING REFERENCED.

15        **MR. GALERNT:**  YES, YOUR HONOR.

16        **MS. FABIAN:**  I WILL -- WE WILL DO OUR BEST, YOUR

17   HONOR.  I THINK THERE IS A CHALLENGE.  I THINK IT IS DIFFICULT

18   FOR AGENCIES TO STIPULATE AWAY WHAT THEY FEEL ARE THEIR

19   STATUTORY RESPONSIBILITIES.  AND SO I THINK THAT IS WHY -- AND

20   I THINK WE NEED TO THINK CREATIVELY ABOUT HOW TO TEE IT UP FOR

21   THE COURT TO GIVE YOU SOMETHING MORE CONCRETE.  I UNDERSTAND

22   WE HAVE SORT OF TEED THIS UP, BUT IT IS SOMETHING THAT WE

23   WOULD LIKE AN ANSWER ON QUICKLY AND MORE BROADLY.  SO

24   HOPEFULLY --

25        I WANTED TO CLARIFY THAT YOU MEAN A LIST OF THE

1    UNDER-FIVE POPULATION FOR MONDAY.

2            **THE COURT:**  YES.

3            **MS. FABIAN:**  SO HOPEFULLY -- I CAN'T PROMISE A

4    STIPULATION BUT I THINK MAYBE IN THE CONTEXT OF EXAMPLES WE

5    COULD TEE UP FOR THE COURT THE TYPES OF TVPRA PROCEDURES THAT

6    WE ARE TALKING ABOUT, AND IDENTIFY FOR THE COURT HOW THOSE

7    APPLY AND MAYBE GIVE THE COURT MORE INFORMATION --

8            **THE COURT:**  YES.

9            **MS. FABIAN:**  -- TO BE ABLE TO DO THAT.

10           AGAIN, I JUST DON'T WANT TO -- I DON'T WANT TO

11   OPTIMISTICALLY SAY I WILL BE HERE WITH A STIPULATION BECAUSE I

12   DO THINK THAT THAT IS A DIFFICULT THING FOR THE AGENCY TO

13   STIPULATE AWAY, BUT WOULD ASK FOR THE COURT'S INPUT.

14           AND I AM TOLD BY MY CLIENT THAT PERHAPS WE DON'T

15   FULLY UNDERSTAND ON MY OTHER POINT.  I JUST WANT TO SAY THE

16   CLARIFICATION WE ARE ASKING FOR IS THAT PARAGRAPH 1 OF THE

17   COURT'S ORDER IS NOT ORDERING RELEASE OF ANY PARENT BY THE

18   COURT'S THE DEADLINE.  THAT RELEASE, IN AND OF ITSELF, BY THE

19   COURT'S DEADLINE UNDER PARAGRAPH 1, WOULD NOT SATISFY WHAT THE

20   COURT IS ORDERING IN ITS PRELIMINARY INJUNCTION, WHICH IS IN

21   FACT REUNIFICATION.

22           **THE COURT:**  MR. GELERNT, DO YOU HAVE ANY --

23           **MR. GALERNT:**  I THINK, YOUR HONOR, IF I AM

24   UNDERSTANDING NOW, IT IS THAT RELEASE OF THE PARENT DOESN'T

25   SATISFY THE COURT'S ORDER, IT HAS TO BE REUNIFICATION.  JUST

1    PUTTING THE PARENT OUT ON THE STREET AND SAYING, NOW GO FIND

2    YOUR KID, IS NOT GOING TO COMPLY WITH THE ORDER, SO THAT IT

3    HAS TO ACTUALLY BE REUNIFICATION.  AND THAT IS THE WAY WE

4    UNDERSTAND IT AS WELL, SO I THINK WE ARE ON THE SAME PAGE,

5    THEN.

6            **MS. FABIAN:**  AND THE GOVERNMENT SHOULD FOLLOW THE

7    PROCEDURES THAT WILL LEAD TO THE -- THE EARLIER REUNIFICATION,

8    RATHER THAN READING PARAGRAPH 1 AS TO REQUIRE RELEASE

9    INDEPENDENT OF THAT REUNIFICATION.  I THINK THAT IS WHAT WE

10   INTEND TO DO, AND WE JUST WANTED TO CLARIFY THAT THAT IS, IN

11   FACT, THE INTENT OF THE ORDER.

12           **THE COURT:**  DO YOU AGREE?

13           **MR. GALERNT:**  YES, YOUR HONOR.

14           THE ONLY OTHER THING I WOULD SAY IS SOMETHING THAT

15   WAS IN THE AFFIDAVIT, AND THIS MAY BE SOMETHING WE CAN WORK

16   OUT PRIVATELY.  AND MY UNDERSTANDING IS THAT DHS MAY BE

17   TALKING TO CHILD ADVOCATES.

18           OUR UNDERSTANDING FROM THE AFFIDAVIT IS THEY ARE

19   GOING TO BRING PARENTS TO A FACILITY.  TO THE EXTENT THEY ARE

20   GOING TO REUNIFY BY THE 10TH, BRING PARENTS TO A FACILITY

21   CLOSE TO WHERE THE CHILD IS BEING DETAINED.  AND THEN RELEASE

22   THE PARENT.

23           WE WOULD ASK THAT WE BE NOTIFIED WHERE THE PARENT IS

24   GOING TO BE RELEASED, BECAUSE THE PARENTS ARE GOING TO HAVE NO

25   MONEY, THEY ARE GOING TO JUST BE PUT OUT ON THE STREET IN

```
1   DETROIT OR WHEREVER.  AND WE ARE PREPARED TO MAKE SURE EVERY
2   ONE OF THOSE PARENTS HAS SOMEONE THERE WITH THEM WHEN THEY
3   WALK OUT.  A CAR SERVICE, WHATEVER THEY NEED.  A HOTEL ROOM.
4   TO GET THEIR CHILD.
5           SO I THINK IF THE GOVERNMENT CAN ALERT US TO, WE ARE
6   GOING TO SEND THE PARENT TO THIS FACILITY IN DETROIT, THE
7   CHILD IS SOMEWHERE CLOSE BY IN DETROIT, WE WILL FACILITATE.
8   THAT IS OBVIOUSLY NOT SOMETHING WE ARE ASKING THE GOVERNMENT
9   TO DO ON TAXPAYER MONEY, TO REUNITE AND PAY FOR A HOTEL AND
10  ALL THAT.  BUT WE ARE PREPARED TO DO THAT, AND I THINK ALL OF
11  THE VOLUNTEERS ARE.  WE JUST NEED TO KNOW WHERE THAT
12  REUNIFICATION IS GOING TO HAPPEN.  WE CAN WORK THAT OUT, I
13  THINK, AT SOME POINT.
14          MS. FABIAN:  THAT IS NOT A PROBLEM, YOUR HONOR.
15          MR. GALERNT:  OKAY.
16          MS. FABIAN:  AND THOSE TRANSFERS IN LARGE PART HAVE
17  ALREADY OCCURRED, AND WE WILL WORK WITH PLAINTIFFS ON THAT.
18          THE COURT:  ALL RIGHT.
19          WILL COUNSEL BE HERE THIS WEEKEND, OR ARE YOU GOING
20  BACK?
21          MR. GALERNT:  WE WILL DO WHATEVER.  WE WILL DO
22  WHATEVER IS EASY.  IF IT IS BETTER FOR US TO BE HERE, WE WILL
23  STAY THE WEEKEND.
24          MS. FABIAN:  I HAVE DOG SITTING RESPONSIBILITIES
25  THAT REQUIRE ME TO GO BACK TO COLORADO, BUT I WILL BE BACK ON
```

1    MONDAY.

2            **THE COURT:**  I WOULD LIKE TO MEET AGAIN, PERHAPS

3    MONDAY AT 10:00 A.M.  IT DOES NOT HAVE TO BE IN PERSON, IT CAN

4    BE TELEPHONIC.  BUT WHAT I AM EXPECTING IS A LOT OF WORK OVER

5    THE WEEKEND, SO THAT THE GOVERNMENT IS PROVIDING THIS

6    INFORMATION TO COUNSEL BY 5:00 O'CLOCK PACIFIC STANDARD TIME

7    TOMORROW.  PLAINTIFFS SUBMIT THEIR BRIEFING 9:00 A.M. MONDAY,

8    PACIFIC STANDARD TIME.  THAT THE PARTIES IN GOOD FAITH MEET

9    AND CONFER AND ATTEMPT TO ARRIVE AT AS MANY STIPULATIONS AS

10   POSSIBLE.  AND THAT WE WILL MEET AGAIN AT 10:00 O'CLOCK

11   TOMORROW -- I AM SORRY -- ON MONDAY.

12           AND I AM CONTENT TO PROCEED TELEPHONICALLY, SO

13   COUNSEL DON'T HAVE TO BE HERE IN PERSON.  IF YOU ARE HERE,

14   FINE, WE CAN MEET IN THE COURTROOM, OTHERWISE WE WILL MEET

15   TELEPHONICALLY.

16           THEN ON MONDAY AT 10:00 WE WILL SEE WHERE WE ARE,

17   WHAT NEEDS TO BE RULED ON.  AND I WILL RULE ON ANY REMAINING

18   ISSUES THAT ARE PROPERLY FRAMED AND ADDRESSED IN WRITING.

19           AND THEN I WOULD LIKE TO SET FUTURE STATUS

20   CONFERENCES SO THAT WE ADDRESS THE REMAINDER OF THE GROUP, AND

21   GOING FORWARD THE PROCESSES THAT ARE BEING IMPLEMENTED TO

22   ELIMINATE THIS PROBLEM IN THE FUTURE SO THAT WE HAVE TRACKING

23   AND THE ABILITY TO REUNIFY AT APPROPRIATE TIMES.

24           SO THERE ARE MANY REMAINING ISSUES THAT WE NEED TO

25   ADDRESS, BUT TODAY IS NOT THE OCCASION.  I WOULD LIKE TO, AS

64

```
 1    WE HAVE BEEN DOING, FOCUS SIMPLY ON THE UNDER-FIVE GROUP.

 2              WITH RESPECT TO THE LIST, DO WE NEED A PROTECTIVE

 3    ORDER OR ARE THE PARTIES CONTENT SIMPLY TO PROVIDE THE LIST TO

 4    MR. GELERNT?

 5              MS. FABIAN:  I HAVE ONE DRAFTED ALREADY, YOUR HONOR,

 6    THAT I HAVE BEEN -- I JUST NEED TO FINALIZE.  AND WE CAN GET

 7    THAT OVER.  IT SHOULDN'T BE A PROBLEM TO HAVE ONE READY FOR

 8    THE COURT TO SIGN.

 9              THE COURT:  YES.

10              MR. GALERNT:  YOUR HONOR, YOU KNOW, I THINK WE ARE

11    IN AGREEMENT ABOUT WHAT THE PROTECTIVE ORDER WOULD DO, IS THAT

12    WE WOULD CERTAINLY NOT PUBLICIZE THE LIST BUT THAT WE WOULD BE

13    ABLE TO SHARE.  WE WOULD SAY THERE IS A VOLUNTEER WHO IS

14    WILLING TO GO TO TEXAS RIGHT NOW, THAT WOULD BE OUR AGENT, AND

15    WE WOULD GIVE THEM THE NAME OF THIS PARENT WHO THINKS THEIR

16    CHILD IS SOMEWHERE IN THE COUNTRY.  AND SO THAT WE WOULD BE

17    ABLE TO SHARE IT WITH THE VOLUNTEERS THAT ARE GOING TO MEET

18    WITH THE PARENTS.  I THINK THE GOVERNMENT HAS SAID THAT IS

19    OKAY.

20              MS. FABIAN:  I THINK SO.  I WOULD LIKE TO WORK WITH

21    THE WORDING JUST BECAUSE THERE HAVE BEEN A LOT OF INFORMATION

22    PUT OUT ABOUT THIS ISSUE.  AND I WOULD LIKE TO AVOID THE

23    DANGER OF THINGS BEING PUT OUT ABOUT THE CHILDREN,

24    PARTICULARLY SINCE THEY ARE NOT CLASS MEMBERS.  BE WE CAN

25    CERTAINLY WORK ON LANGUAGE TO THAT EFFECT BECAUSE I UNDERSTAND
```

1   THE PURPOSE OF THE LIST, AS WELL.

2           **THE COURT:**  YES.  ALL RIGHT.  ANY --

3           **MR. GALERNT:**  THANK YOU, YOUR HONOR.

4           **THE COURT:**  -- MORE COMMENTS?

5           WHEN YOU MEET AND CONFER, DO IT IN THE SPIRIT OF THE

6   ORDER.  WE CAN SPEND A LOT OF TIME AND ENERGY QUIBBLING OVER

7   THE DETAILS AND THE LEGAL OBLIGATIONS OF THE PRELIMINARY

8   INJUNCTION, BUT IT IS APPARENT THAT EVERYONE IS ROWING IN THE

9   SAME DIRECTION, AND THAT'S AN ATTEMPT TO REUNIFY AS QUICKLY

10  AND AS SAFELY AS POSSIBLE.  AND IT IS IN THAT SPIRIT THAT THE

11  PARTIES SHOULD BE ABLE TO MEET AND CONFER AND MAKE A LOT OF

12  GOOD THINGS HAPPEN, WITHOUT COURT INVOLVEMENT.

13          I THINK, AGAIN, THE OBJECTIVE STANDARDS ARE SET OUT

14  WITH TODAY'S DISCUSSION.  I THINK THERE IS MORE CLARITY TO

15  THAT PROCESS.  AND THEN IT IS REALLY -- IN THESE SITUATIONS IT

16  IS REALLY IMPORTANT THAT THE PARTIES EXERCISE UTMOST GOOD

17  FAITH, WHICH I KNOW YOU WILL.  AND IN THAT PROCESS, THIS

18  REUNIFICATION FOR ALL OF THE CHILDREN WITH THEIR PARENTS CAN

19  HAPPEN IN A RELATIVELY SEAMLESS MANNER.

20          I UNDERSTAND THE SIGNIFICANCE OF THE UNDERTAKING

21  THAT THE GOVERNMENT IS BEING ORDERED TO DO.  THAT'S ABUNDANTLY

22  CLEAR.  BUT IT CAN DO IT, AND IT HAS MADE THE DETERMINATION

23  PUBLICLY, THROUGH THE SECRETARY OF HHS AND HERE TODAY, THAT IT

24  IS GOING TO REUNIFY.  SO IT IS IN THAT SPIRIT THAT A LOT OF

25  THESE DETAILS CAN BE WORKED OUT COOPERATIVELY.  AND THAT IS

```
 1   WHAT I URGE THE PARTIES TO DO, AND I WILL LOOK FORWARD TO

 2   MEETING WITH EVERYONE EITHER TELEPHONICALLY OR IN PERSON

 3   MONDAY AT 10:00 A.M.

 4           MR. GALERNT:  THANK YOU, YOUR HONOR.

 5           MS. FABIAN:  WOULD YOU LIKE US TO NOTIFY YOU IN

 6   ADVANCE WHICH WE WILL BE DOING?

 7           THE COURT:  SURE.  THAT WOULD BE --

 8           MS. FABIAN:  I EXPECT I WILL BE HERE IN PERSON, I

 9   WILL LET YOUR CLERK KNOW.

10           THE COURT:  ALWAYS DELIGHTED TO SEE YOU IN PERSON.

11   I WILL LEAVE IT TO YOU.

12           MS. FABIAN:  THANK YOU, YOUR HONOR.

13           MR. GALERNT:  THANK YOU, YOUR HONOR.

14           THE COURT:  THANK YOU VERY MUCH.

15

16                       *   *   *

17           I CERTIFY THAT THE FOREGOING IS A CORRECT
             TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
18           IN THE ABOVE-ENTITLED MATTER.

19           S/LEEANN PENCE                    7/7/2018
             LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
20

21

22

23

24

25
```