1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Ms. L.; et al.,

      Petitioners-Plaintiffs,

v.

U.S Immigration and Customs
Enforcement ("ICE"); et al.,

      Respondents-Defendants.

Case No.:  18cv0428 DMS (MDD)

**ORDER FOLLOWING STATUS
CONFERENCE**

   A status conference was held on July 9, 2018, after which the parties submitted two Joint Status Reports.  In the first of those Reports, the parties identified some disagreements about the processes to be followed prior to reunification of Class Members and their children, with a particular eye toward the reunifications of children under age 5 by the court-ordered deadline of July 10, 2018.  The second Report provided more detailed information about these parents, *i.e.*, those with children under the age of 5, and set out which of those parents were ineligible for reunification, which parents were ineligible for reunification by the July 10, 2018 deadline, how many parents had already been reunified with their children, which parents were eligible for reunification by the July 10, 2018 deadline, and which parents were eligible for reunification, but not by the July 10, 2018 deadline.

1

1     A follow-up status conference was held on July 10, 2018, to discuss these issues

2  with counsel.  During that conference, the Court explained ICE's past procedure for dealing

3  with parents and children who entered ICE custody together.  That procedure was geared

4  toward resolving "any doubt about whether they are parent and child, and second, whether

5  there is information that causes a concern about the welfare [of] the child, such as the adult

6  having a significant criminal history."  (Decl. of Mario Ortiz in Supp. of Opp'n to Am.

7  Mot. for Prelim. Inj. ¶¶ 3, ECF No. 46-1.))  If there were no "concerns about the family

8  relationship or welfare of the child, the [parent and child would] be detained at a family

9  residential center or, if appropriate, released to a sponsor or non-governmental

10  organization."  (*Id.*)  If there were concerns, the child would "be transferred to the U.S.

11  Department of Health and Human Services Office of Refugee Resettlement (ORR) for care

12  and placement consideration."  (*Id.*)  The Court explained this procedure had been in effect

13  for many years, and had been effective in ensuring the safety and well-being of children

14  processed through ICE custody.

15     The Court contrasted this procedure with the procedure for vetting sponsors for

16  "unaccompanied minors" under the TVPRA.  As explained during the hearing, and in

17  previous orders in this case, the TVPRA was promulgated to address a different situation,

18  namely, what to do with alien children who were apprehended *without their parents* at the

19  border or otherwise.  In that situation, the lengthy and intricate vetting process makes sense

20  because arguably the Government is not dealing with a parent, but is instead dealing with

21  perhaps another relative or even a foster-type parent.  That detailed vetting process was not

22  meant to apply to the situation presented in this case, which involves parents and children

23  who were apprehended together and then separated by government officials.  Rather, it

24  appears ICE had a more streamlined procedure for that situation, as set out above.

25     Both of these procedures, at their core, aim to promote the best interests of the

26  children who are taken into government custody.  This Court also seeks to serve that

27  interest, and has attempted to do so by focusing on the two issues set out in ICE's past

28  procedure:  Ensuring the adult is the parent of the accompanied child, and ensuring the

parent does not present a danger to the child's welfare.  Both of these concepts are built into the definition of the class certified by the Court, as well as the preliminary injunction. And in the context of this case, both of these concerns can be addressed by a process similar to the one previously used by ICE in dealing with parents and children apprehended together.  Accordingly, in this case, the Government need not comply with the onerous policies for vetting child sponsors under the TVPRA prior to reunifying Class Members with their children.[1]  Rather, the Government need only comply with the more streamlined procedure set out during the hearing.

As explained therein, that procedure allows for DNA testing of adult and child, but only when necessary to verify a legitimate, good-faith concern about parentage or to meet a reunification deadline.  To the extent DNA testing is warranted under those circumstances, it should be completed in accordance with Plaintiffs' proposal in the Joint Status Report at pages 7-8.  (*See* ECF No. 96.)

On the dispute surrounding follow-up background checks of parents, the Court agrees with Plaintiffs that those background checks should not delay reunification. Certainly, if the Government has performed a background check on a parent prior to reunification, and that background check indicates the parent may pose a danger to the child, reunification need not occur unless and until those concerns are resolved.  However, the Government must have a good faith belief that further background investigation is warranted before delaying reunification on that basis.  In general, background investigations of the type contemplated by the TVPRA are not required here, and the Government's inability to complete that type of background investigation prior to a reunification deadline will not be a valid reason for delaying reunification past a court-imposed deadline.  Presumably, the Government has performed or will perform a

---

[1] The Court notes the vetting process and procedure set out by the Government here is a matter of ORR policy.  The process and procedure are not mandated by statute or regulation.

1   background check on all parents who could fall within the Class, and those background

2   checks will be completed well in advance of the reunification deadlines, which will obviate

3   the need for any delays on this ground.

4       The next dispute concerns background checks on other adults in the household where

5   the Class Member and his or her child will reside.  As with the preceding issue, these

6   background checks are part of the TVPRA procedures, and they are not necessary here

7   where the child is being reunited with a parent.  As Plaintiffs' counsel pointed out during

8   the hearing, the touchstone here is the interest of the parent in making decisions for their

9   child, and presumably the parent has the child's best interest in mind.

10       The next dispute concerns "sponsor care plans," which is another procedure

11   contemplated by the TVPRA.[2]  As with the procedures discussed above, the Court declines

12   to require Class Members to submit these plans prior to or as a condition of reunification

13   with their children.

14       Next, the parties dispute whether Class Members must sign "sponsor care

15   agreements" and attend legal orientation programs, again both of which are policies

16   contemplated by the TVPRA.  Here, as above, Plaintiffs do not object to executing these

17   agreements or attending these orientation programs, provided those procedures do not

18   delay reunification of Class Members and their children.  The Court agrees with Plaintiffs,

19   and thus declines to impose these requirements as a condition to reunification.

20       The final dispute concerns children who may pose a danger to themselves or others.

21   This concern is not applicable to the children under age 5 who are scheduled for

22   reunification today.  To the extent this concern is relevant to the older children, the parties

23   may raise that issue in a further status report.

24   ///

25   ///

26

27

28

---

[2] The parties indicated there was also a dispute about whether Class Members must provide a proof of address.  However, Plaintiffs do not object to that requirement.

1    With these rulings, the Court anticipates the Government will be reuniting fifty-nine

2 (59) Class Members with their children by the end of the day today.  This will be in addition

3 to the four (4) parents and children that have already been reunified.

4    Counsel shall submit a further joint status report to the Court on or before **3:00 p.m.**

5 on **July 12, 2018**.  That report should provide an update on Defendants' compliance with

6 the reunification deadline for children under age 5, and a status on the efforts to reunify the

7 remaining members of the Class with their children over age 5.  A further status conference

8 shall be held at **1:00 p.m.** on **July 13, 2018**.  The Court has set up a dial in number for

9 counsel and any members of the news media that wish to attend.  ***This number is for***

10 ***counsel and media only***, who should follow the steps below to connect to the conference

11 call.  Members of the general public may appear in person.

12    1.    Dial the toll free number: **877-873-8018**;

13    2.    Enter the Access Code: **9911153** (Participants will be put on hold until the

14          Court activates the conference call);

15    3.    Enter the Participant Security Code **07130428** and Press # (The security code

16          will be confirmed);

17    4.    Once the Security Code is confirmed, participants will be prompted to Press

18          1 to join the conference or Press 2 to re-enter the Security Code.

19    **IT IS SO ORDERED**.

20  Dated:  July 10, 2018

21

22                                          Hon. Dana M. Sabraw
                                            United States District Judge

23

24

25

26

27

28