UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS,       )
                                        )
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            ) MONDAY JULY 9, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 10:00 A.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
          RESPONDENTS-DEFENDANTS.       )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

COUNSEL APPEARING:

FOR PLAINTIFF:                      LEE GELERNT, ESQ.
                                    ACLU IMMIGRANT RIGHTS PROJECT
                                    125 BROAD STREET 18TH FLOOR
                                    NEW YORK, NEW YORK 10004

                                    BADIS VAKILI, ESQ.
                                    ACLU FOUNDATION OF SAN DIEGO
                                    AND IMPERIAL COUNTIES
                                    P.O. BOX 87131
                                    SAN DIEGO, CALIFORNIA 92138

                                    STEPHAN B. KANG, ESQ.
                                    ACLU OF NORTHERN CALIFORNIA
                                    39 DRUMM STREET
                                    SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:                      SARAH B. FABIAN, ESQ.
                                    U.S. DEPARTMENT OF JUSTICE
                                    OFFICE OF IMMIGRATION LITIGATION
                                    P.O. BOX 868
                                    BEN FRANKLIN STATION
                                    WASHINGTON, DC 20044

                                    ADAM L. BRAVERMAN
                                    INTERIM UNITED STATES ATTORNEY
                                    BY:  SAM BETTWY
                                    ASSISTANT U.S. ATTORNEY
                                    880 FRONT STREET
                                    SAN DIEGO, CALIFORNIA 92101

REPORTED BY:                        LEE ANN PENCE,
                                    OFFICIAL COURT REPORTER
                                    UNITED STATES COURTHOUSE
                                    333 WEST BROADWAY, ROOM 1393
                                    SAN DIEGO, CALIFORNIA 92101

<u>SAN DIEGO, CALIFORNIA — MONDAY, JULY 9, 2018 — 10:07 A.M.</u>

1
2                              *   *   *

3           **THE CLERK:**  NO. 1 ON CALENDAR, CASE NO. 08CV0428,

4  MS. L. VERSUS IMMIGRATION AND CUSTOMS ENFORCEMENT; STATUS

5  CONFERENCE.

6           **THE COURT:**  GOOD MORNING.

7           **MR. GELERNT:**  GOOD MORNING, YOUR HONOR.  LEE

8  GELERNT, FROM THE ACLU, FOR PLAINTIFFS.

9           **MS. FABIAN:**  GOOD MORNING, YOUR HONOR.  SARAH FABIAN

10  WITH THE DEPARTMENT OF JUSTICE FOR THE DEFENDANTS.

11           **THE COURT:**  GOOD MORNING.

12           **MS. FABIAN:**  ALL OTHER COUNSEL WERE PRESENT AT LAST

13  FRIDAY'S SESSION.

14           **MR. GELERNT:**  YOUR HONOR, WE HAVE ONE NEW COUNSEL.

15  DO YOU WANT HIM TO STATE HIS APPEARANCE?

16           **THE COURT:**  YES, PLEASE.

17           **MR. KANG:**  STEVE KANG, FROM THE ACLU, FOR

18  PLAINTIFFS.

19           **THE COURT:**  THANK YOU, AND GOOD MORNING.

20           MR. GELERNT, PERHAPS WE CAN START WITH YOU.  AND IF

21  YOU CAN GIVE A STATUS AS TO WHAT WAS ACCOMPLISHED OVER THE

22  WEEKEND AND WHAT WE EXPECT BY TOMORROW, AND A STATUS GOING

23  FORWARD.

24           **MR. GELERNT:**  YES, YOUR HONOR.  THE GOVERNMENT

25  SHOULD CORRECT ME IF —— WE HAVE BEEN NEGOTIATING ALL WEEKEND.

JULY 9, 2018

1    MY UNDERSTANDING, SORT OF AT THE TOP-LINE OVERVIEW,

2 IS THAT THE GOVERNMENT HAS 102 KIDS UNDER FIVE ON A LIST THEY

3 PROVIDED TO US.

4    I WOULD JUST SAY -- AND MAYBE WE CAN COME BACK TO

5 THIS -- WE ARE HEARING FROM PEOPLE ON THE GROUND THAT THERE

6 MAY BE CHILDREN WHO ARE NOT ON THE LIST WHO ARE UNDER FIVE WHO

7 HAVE BEEN SEPARATED.  AND WE INTEND TODAY TO PROVIDE THE

8 GOVERNMENT WITH THOSE INDIVIDUALS TO MAKE SURE THAT THEY

9 SHOULD BE ON THE LIST OR NOT.  THE GOVERNMENT MAY HAVE

10 DIFFERENT INFORMATION, AND WE ARE INVESTIGATING.

11    WE DID NOT GET THE FULL INFORMATION UNTIL -- WE GOT

12 A LIST AT YOUR DEADLINE OF 5:00 BUT IT WAS SUBSEQUENTLY ADDED

13 TO OVER THE WEEKEND.

14    **THE COURT:**  DO YOU HAVE ANY IDEA HOW MANY?

15    **MR. GELERNT:**  WE THINK RIGHT NOW -- I MEAN, THE

16 ADVOCATES HAVE ONLY HAD ABOUT 24 HOURS.  WE THINK THERE MAY BE

17 AS MANY AS TEN.

18    WE WILL CERTAINLY GIVE THE GOVERNMENT THAT

19 INFORMATION, WE ARE JUST GETTING IT IN EARLY THIS MORNING.  WE

20 WILL WORK WITH THE GOVERNMENT TODAY TO SEE WHETHER THEY HAVE A

21 REASON WHY THOSE TEN INDIVIDUALS -- I SUSPECT WE ARE GOING TO

22 HEAR ABOUT MORE, BUT THAT IS WHERE WE ARE NOW.

23    WE ALSO -- AND I WILL LET THE GOVERNMENT CORRECT ME

24 IF THIS IS WRONG.

25    WE UNDERSTAND THE GOVERNMENT TO BE PROMISING TO

JULY 9, 2018

1   REUNITE SLIGHTLY OVER HALF BY THE DEADLINE TOMORROW -- I

2   BELIEVE THAT IS CORRECT -- OF 54.

3            **MS. FABIAN:**  I WOULD BE HAPPY TO WALK THE COURT

4   THROUGH THE NUMBERS.

5            **THE COURT:**  YES.

6            **MS. FABIAN:**  EITHER WHEN MR. GELERNT IS DONE OR --

7            **THE COURT:**  AT THE PODIUM WOULD BE FINE.

8            **MS. FABIAN:**  SO BASED ON THE CHART SO -- AND I

9   APOLOGIZE, YOUR HONOR.  THIS IS THE FIRST I AM HEARING THERE

10  MAY BE ADDITIONAL FOLKS.  BUT I THINK THE BEST PROCESS FOR

11  THAT IS, AS MR. GELERNT SUGGESTED, FOR THEM TO LET US KNOW AND

12  WE WILL TRACK THAT DOWN.  THAT IS CERTAINLY PART OF THE

13  COLLABORATIVE PROCESS, I THINK, THAT WE HAVE WORKED ON THIS

14  WEEKEND, AND WE WOULD BE HAPPY TO CONTINUE THAT.

15           THE NUMBER -- SO THERE WERE 102 LISTED ON THE LIST.

16  THE BREAKDOWN I HAVE, SIX OF THOSE, AFTER FURTHER EVALUATION,

17  ARE NOT CLASS MEMBERS.  THREE IT TURNED OUT THAT THE PARENTS

18  CRIMINAL -- HAD A CRIMINAL VIOLATION THAT WAS SUFFICIENTLY

19  SERIOUS TO REMOVE THEM FROM THE CLASS.  THREE OF THOSE IT WAS

20  DETERMINED AFTER -- AS THE PARENTAGE CONFIRMATION PROCESS WENT

21  THROUGH IT WAS DETERMINED THAT THE PARENT -- OR THE

22  ACCOMPANYING ADULT WAS NOT, IN FACT, THE PARENT.

23           REUNIFICATION THAT WILL OCCUR BY -- WITH A PARENT IN

24  ICE CUSTODY, SO REUNIFICATION WILL OCCUR BY TRANSFERRING THE

25  CHILD TO ICE CUSTODY AND PROVIDING FOR LIKELY RELEASE FROM ICE

JULY 9, 2018

1    CUSTODY, THAT IS 59 IS THE NUMBER FOR THAT.

2              EXPECTED TO BE REUNIFIED PENDING THE FINALIZATION OF

3    THE PARENTAL VERIFICATION PROCESS, WHICH IS EXPECTED TODAY, 54

4    OF THOSE SHOULD BE DEFINITELY REUNIFIED TOMORROW BASED UPON

5    THAT -- PENDING THAT CONFIRMATION.  FIVE OF THOSE, AS I

6    UNDERSTAND IT, THERE IS -- IN THE BACKGROUND CHECK THERE WAS

7    SOME QUESTION THAT WAS BEING FOLLOWED UP ON, SO THOSE

8    AREN'T -- AT LEAST AS OF MY LAST CONFIRMATION, AREN'T

9    CONFIRMED FOR RELEASE TOMORROW PENDING FOLLOWING UP.  AND I

10   THINK THAT WOULD BE A MATTER OF DETERMINING IF A CRIMINAL

11   HISTORY IS SUFFICIENTLY SERIOUS TO WARRANT REMOVAL FROM THE

12   CLASS.

13             NINE ON THE LIST ARE THE PARENT HAS BEEN REMOVED.

14   WE HAVE PROVIDED PLAINTIFFS' COUNSEL WITH THE DATE OF REMOVAL

15   AND THE COUNTRY OF REMOVAL.  MY UNDERSTANDING OF OUR

16   DISCUSSION WE WILL --

17             WE MAY HAVE A DIFFERENCE IN THE NUMBERS.

18        **MR. GELERNT:**  I APOLOGIZE, I DIDN'T MEAN TO

19   INTERRUPT YOU.

20             WE HAVE -- WE THINK THERE IS AT LEAST 12 WHO HAVE

21   BEEN REMOVED AND NINE HAVE BEEN RELEASED INTO THE INTERIOR.

22             IS THAT CORRECT?

23        **MS. FABIAN:**  I AGREE ON THE RELEASE INTO THE

24   INTERIOR.  I HAVE A DIFFERENT NUMBER FOR THE REMOVAL.

25        **MR. GELERNT:**  OKAY.  I AM SORRY.

JULY 9, 2018

1          **MS. FABIAN:**  BASED ON MY CALCULATIONS -- AND WE WILL

2     SIT DOWN AND FIGURE OUT WHY WE MAY DIFFER.

3          BUT NINE HAVE BEEN REMOVED.  WE HAVE PROVIDED

4     PLAINTIFFS WITH THE DATE OF REMOVAL, THE COUNTRY OF REMOVAL.

5     WE WILL -- I THINK THE LAST DISCUSSION WE HAD ON THAT WAS TO

6     AGREE TO PROVIDE PLAINTIFFS WITH INFORMATION THAT WILL ALLOW

7     THEM TO ASSIST IN LOCATING THOSE INDIVIDUALS, IF THERE IS A

8     WAY TO CONTACT THEM.  AND WE HAD DISCUSSED PERHAPS DEVELOPING

9     A WAY TO PROVIDE NOTICE TO THOSE INDIVIDUALS OF -- TO

10    DETERMINE IF THEY WANTED TO HAVE THEIR CHILD REUNIFIED TO

11    THEM.

12          THAT IS SORT OF AN OVERVIEW OF WHAT WE DISCUSSED BUT

13    WE HAVEN'T GOTTEN INTO THE DETAILS OF THAT, BUT WE WILL.

14          PARENTS IN LOCAL CRIMINAL CUSTODY, SO THAT WOULD BE

15    STATE -- SOME SORT OF STATE CRIMINAL CUSTODY, TURNED OVER ON A

16    STATE WARRANT, MOST LIKELY, I HAVE FOUR.  SO THOSE ARE NOT

17    CURRENTLY ELIGIBLE FOR REMOVAL.

18          WE DISCUSSED WITH PLAINTIFFS THAT FOR THOSE IT MAY

19    BE THAT THEY WOULD BE RELEASED WITHOUT NOTIFICATION TO THE

20    GOVERNMENT, BUT WE WILL GIVE PLAINTIFFS WHATEVER INFORMATION

21    WE HAVE TO ALLOW THEM TO CONTACT THOSE INDIVIDUALS AND MAKE

22    SURE THAT THEY CAN GET BACK IN TOUCH WITH US AS FAR AS

23    REUNIFICATION UPON THEIR RELEASE.

24          EIGHT INDIVIDUALS ARE IN FEDERAL CRIMINAL CUSTODY.

25    ALL -- I BELIEVE ALMOST ALL, IF NOT ALL, HAVE DETAINERS ON

JULY 9, 2018

8

1   THEM, WHICH MEANS THAT WHEN THEY ARE RELEASED FROM FEDERAL

2   CRIMINAL CUSTODY THEY WOULD BE TRANSFERRED TO ICE CUSTODY, AND

3   AT THAT TIME WE WOULD BE ABLE TO FACILITATE REUNIFICATION.

4            FOR TWO OF THE INDIVIDUALS REUNIFICATION HAS BEEN

5   COMPLETED SINCE THE ORIGINAL CHART, SO TWO THAT HAVE

6   ALREADY -- COMPLIED AND BEEN REUNIFIED.

7            **THE COURT:**  IN WHAT GROUP DID THOSE TWO FALL INTO?

8            **MS. FABIAN:**  SORRY, YOUR HONOR.  THE FONT IS VERY

9   SMALL, SO I AM GOING TO HOLD IT UP HERE.

10           I DON'T HAVE THAT INFORMATION FOR ONE OF THEM.  ONE,

11  IT LOOKS LIKE, WAS REUNIFIED OUT OF ICE CUSTODY.  I HAVE BOTH

12  -- I BELIEVE BOTH OF THEM ARE REUNIFIED TO A PARENT WHO HAD

13  BEEN RELEASED FROM CUSTODY.

14           **THE COURT:**  IS THIS THE GROUP IN THE 59 CATEGORY?

15           **MS. FABIAN:**  NO, THESE ARE TWO ADDITIONAL.  SO IF I

16  AM RECALLING THE NOTES THAT I HAD SEEN, BOTH OF THOSE HAD

17  PARENTS WHO HAD ALREADY BEEN RELEASED INTO THE INTERIOR AND

18  THE REUNIFICATION PROCESS HAS ALREADY BEEN COMPLETED.

19           **MR. GELERNT:**  YOUR HONOR, COULD I JUST ASK?

20           THAT IS TWO OF THE 102 HAVE ALREADY BEEN REUNIFIED,

21  YOU ARE SAYING?

22           **MS. FABIAN:**  CORRECT.

23           **MR. GELERNT:**  OKAY.

24           SORRY, YOUR HONOR.

25           **MS. FABIAN:**  NINE INDIVIDUALS ARE -- I AM SORRY, I

1    AM SKIPPING AHEAD.

2            FOUR INDIVIDUALS HAVE BEEN IDENTIFIED FOR

3    REUNIFICATION WITH A NONPARENT SPONSOR.  AND WE HAVE HAD A

4    COUPLE OF DISCUSSIONS ABOUT THAT OVER THE WEEKEND.  IT WAS

5    ORIGINALLY MORE.  I THINK WHAT WE DETERMINED IS THAT SOME OF

6    THOSE INDIVIDUALS MAY HAVE AGREED TO RELEASE TO ANOTHER

7    SPONSOR BEFORE YOUR HONOR'S ORDER.  SO ICE WAS ALREADY IN THE

8    PROCESS OF GOING BACK AND RECONFIRMING NOW THAT -- UNDER THE

9    RIGHTS AVAILABLE FROM THE ORDER WHETHER THAT WAS STILL THEIR

10   WISH OR WHETHER THEY NOW WANTED TO INSTEAD BE REUNIFIED.

11           WE CONFIRMED THAT WITH -- THERE WAS -- THERE WAS A

12   LARGER NUMBER BEFORE.  WE CONFIRMED THAT WITH MOST OF THEM --

13   AND I BELIEVE THEY WERE MOVED INTO THE 59 NUMBER AND ARE

14   SCHEDULED FOR RELEASE.

15           THERE ARE FOUR -- FOUR REMAIN -- AND I AM WAITING TO

16   FIND OUT THE RESULTS OF THE FOLLOWUP.  SO THEY MAY EITHER

17   CONFIRM THAT THEY DO NOT WISH TO BE REUNIFIED AND THEY WISH TO

18   HAVE THE CHILD RELEASED TO ANOTHER SPONSOR, OR CONFIRM THAT

19   THEY WISH TO BE REUNIFIED, IN WHICH CASE WE WILL FACILITATE

20   THAT.

21           **THE COURT:**  SO THERE ARE FOUR CHILDREN WHO CAME WITH

22   THEIR PARENT, BUT THOSE FOUR MIGHT BE REUNITED WITH SOMEONE

23   OTHER THAN THE PARENT.

24           **MS. FABIAN:**  POSSIBLY, IF THAT IS STILL THEIR WISH.

25   IT WAS ORIGINALLY --

JULY 9, 2018

```
 1              THE COURT:  YOU MEAN THE PARENT, THE PARENT

 2   CONSENTING TO THAT?

 3              MS. FABIAN:  WE WILL MAKE SURE THAT THE PARENT,

 4   SINCE YOUR HONOR'S ORDER, KNOWINGLY AND VOLUNTARILY WOULD

 5   CONSENT TO THAT.  OR IF, SINCE YOUR HONOR'S ORDER NOW GIVES

 6   THEM THE RIGHT TO REUNIFICATION, THEY HAVE -- WOULD LIKE TO

 7   NOW SEEK REUNIFICATION UNDER THE ORDER.

 8              MR. GELERNT:  YOUR HONOR, MAY I ASK?

 9              THE COURT:  YES.

10              MR. GELERNT:  SO NINE HAVE ALREADY -- YOU HAVE

11   CONTACTED NINE OF THOSE 13 ALREADY AND THEY HAVE SAID THEY

12   WISH TO BE REUNITED WITH THEIR CHILD?

13              MS. FABIAN:  I AM SORRY.  THE NUMBER -- I DON'T

14   REMEMBER THE PREVIOUS NUMBER.  WE ORIGINALLY HAD APPROXIMATELY

15   TEN ON THAT LIST.

16              MR. GELERNT:  OKAY.

17              MS. FABIAN:  THERE ARE NOW FOUR ON THAT LIST.

18              MR. GELERNT:  AND EVERYONE YOU HAVE REACHED HAS

19   SAID, YES, WE WOULD LIKE TO BE REUNIFIED WITH OUR CHILD?

20              MS. FABIAN:  I CAN'T CONFIRM RIGHT NOW BASED --

21   WHETHER EVERYONE WE HAVE -- SIX WE REACHED CONFIRM THEY NOW

22   WANTED TO BE REUNIFIED AND WERE MOVED INTO THAT GROUP.

23              FOUR I DON'T RIGHT NOW HAVE THE INFORMATION WHETHER

24   WE REACHED THEM AND THEY DECIDED NOT TO BE REUNIFIED OR

25   WHETHER WE JUST HAVEN'T CONFIRMED THOSE FOUR.  I BELIEVE IT IS
```

JULY 9, 2018

THE LATTER.

AND AS WE DISCUSSED WITH MR. GELERNT OVER THE
WEEKEND, IF HE WOULD LIKE -- OR IF HIS FOLKS WOULD LIKE TO
REACH OUT AND CONFIRM THAT WITH THOSE FOUR FOLKS WE WOULD BE
HAPPY FOR THEM TO CONFIRM.

**MR. GELERNT:**  I THINK THAT WOULD BE GREAT, YOUR
HONOR, BECAUSE I THINK IT IS UNLIKELY THAT ANY PARENT WHO GAVE
UP THEIR CHILD BEFORE THE RULING WAS -- THEY PROBABLY LIKELY
THOUGHT THEY WERE NEVER GOING TO GET THEIR CHILD BACK SO THIS
WAS THE BEST ALTERNATIVE.  I SUSPECT THEY ALL WANT THEIR CHILD
BACK.

SO I THINK IF YOU HEAR THAT ANY PARENT DOES NOT
ACTUALLY WANT THAT, WE WOULD LIKE AN OPPORTUNITY TO QUICKLY
TALK WITH THEM AND MAKE SURE THEY FULLY UNDERSTOOD THAT THEY
WERE GIVING UP THEIR CHILD, EVEN THOUGH THEY COULD GET THEIR
CHILD BACK.

**THE COURT:**  AND THAT NUMBER RIGHT NOW IS FOUR?

**MR. GELERNT:**  FOUR.

**MS. FABIAN:**  AND THAT IS WHY -- THAT EXACT REASON IS
WHY ICE WENT BACK TO RECONFIRM AND WHY AT LEAST SIX HAVE
MOVED.  BUT I AM HAPPY TO WORK WITH PLAINTIFFS TO MAKE SURE
THAT WE ARE ALL COMFORTABLE THAT THOSE FOUR UNDERSTAND THEIR
OPTIONS.

**MR. GELERNT:**  THANK YOU.

**MS. FABIAN:**  SO REUNIFICATION WITH A RELEASED

JULY 9, 2018

1   PARENT, AND THAT'S THE GROUP THAT -- AND I WILL GET INTO THIS

2   AFTER I FINISH THIS.

3        BUT THAT'S THE GROUP WHERE THEY ARE -- THERE IS A

4   POTENTIAL GREATER LENGTH OF TIME BECAUSE OF THE REUNIFICATION

5   PROCESS AND BECAUSE OF THE REQUIREMENTS UNDER THE TVPRA.

6        WHAT I WILL SAY ABOUT THAT -- AND MR. GELERNT AND I

7   HAVE DISCUSSED -- THERE WERE A LOT OF MOVING PIECES AND THE

8   AGENCIES HAVE PULLED TOGETHER WITH MY ASSISTANCE A --

9   SOMETHING TO TEE THAT UP FOR THE COURT, BECAUSE I THINK THAT

10  IS WHAT WE DISCUSSED ON FRIDAY IS TO TEE UP THOSE PROCESSES

11  AND LET THE COURT HAVE A MORE DETAILED VIEW OF THOSE PROCESSES

12  TO ALLOW YOU TO RULE ON THEIR NECESSITY.

13       UNFORTUNATELY, WE GOT THAT LATE LAST NIGHT INTO

14  EARLY THIS MORNING, AND WERE ABLE TO GET IT TO PLAINTIFFS THIS

15  MORNING.  SO WHAT WE WOULD LIKE TO DO IS SPEND TODAY

16  FINALIZING THAT.  RATHER THAN FILE SOMETHING THIS MORNING THAT

17  MAY HAVE BEEN MORE CONFUSING THAN HELPFUL, WE WOULD LIKE TO

18  WORK TOGETHER TO GET SOMETHING THAT REALLY TEES THAT ISSUE UP

19  DIRECTLY WITH THE COURT AND GIVES THE PLAINTIFFS A CHANCE TO

20  RESPOND TO WHAT WE GAVE THIS MORNING.

21       SO WE HAVE DISCUSSED SORT OF STAYING THROUGH THE DAY

22  AND WORKING ON THAT, AND GETTING SOMETHING TO THE COURT.  I

23  THINK WE WERE GOING TO SUGGEST 8:00 P.M. TONIGHT.  I WOULD

24  HOPE THAT IT COULD BE SOONER.

25       **THE COURT:**  WHAT IS THE APPROXIMATE NUMBER OF

JULY 9, 2018

```
 1   PARENTS WHO HAVE BEEN RELEASED, SO THEY ARE NOT IN ICE CUSTODY
 2   WHERE WE NEED TO CONTINUE TO WORK THROUGH THIS PROCESS?
 3            MS. FABIAN:  WE HAVE NINE OF THOSE.  AND FOUR I HAVE
 4   CONFIRMATION THAT WE ARE IN CONTACT AND THEY ARE CURRENTLY
 5   UNDER THOSE PROCESSES THAT -- DISCUSSED.
 6            THE OTHER FIVE I AM WAITING FOR MORE INFORMATION.
 7   THE INFORMATION I HAVE SUGGESTS THAT WE HAVE NOT MADE CONTACT
 8   IN WHICH CASE MR. GELERNT AND I HAVE DISCUSSED THAT WE WILL
 9   GIVE -- WORK WITH PLAINTIFFS TO GIVE THEM ALSO AS MUCH
10   INFORMATION ABOUT THE LAST KNOWN INFORMATION ABOUT THOSE
11   PARENTS SO THAT TO THE EXTENT WE ARE UNABLE TO MAKE CONTACT IT
12   MAY BE THAT PLAINTIFFS' COUNSEL AND THEIR FOLKS THAT THEY ARE
13   WORKING WITH WOULD HAVE MORE SUCCESS AND BRING THOSE PARENTS
14   BACK TO OUR ATTENTION SO THAT WE COULD REUNIFY.
15            SO I CAN SAY FOR CERTAIN FOUR OF THEM WOULD BE
16   IMMEDIATELY AFFECTED BY AN ORDER FROM THE COURT AS TO THE
17   PROCESSES IN TERMS OF WHETHER -- WHETHER WE SHOULD CONTINUE TO
18   GO THROUGH THOSE.  IN THAT CASE THAT WOULD RESULT IN
19   REUNIFICATION OUTSIDE OF THE COURT'S DEADLINE.  SO RECOGNIZING
20   THAT THERE ARE FOLKS THAT ARE IMPACTED, THAT IS WHY WE WOULD
21   LIKE TO WORK TOGETHER TO TEE THAT UP FOR TODAY.
22            THE OTHER FIVE MAY OR MAY NOT BE IMPACTED, DEPENDING
23   IF WE MADE -- HAVEN'T MADE CONTACT WITH THEM YET.
24            THE COURT:  DOES THIS ACCOUNT FOR THE 102 NOW
25   THAT --
```

JULY 9, 2018

1        **MS. FABIAN:**  THAT IS -- SO I HAVE -- THE NUMBERS I

2   HAVE GIVEN YOU NOW SO FAR ADD UP TO 101.  THE ONE FINAL

3   INDIVIDUAL ON THE LIST WE -- IT IS UNKNOWN.  WE DO NOT HAVE

4   INFORMATION ABOUT THE PARENT.  IT MAY BE THAT THEY ARE IN FACT

5   NOT A CLASS MEMBER.  WE ARE STILL TRYING TO TRACK DOWN WHAT

6   INFORMATION WE HAVE ABOUT THAT PARENT TO FACILITATE

7   REUNIFICATION.

8        TO MY KNOWLEDGE WE DON'T HAVE ANY INFORMATION, BUT

9   IF WE GET ANY WE WILL CERTAINLY WORK WITH PLAINTIFFS ON THAT

10  IDENTIFICATION OR A LOCATION.

11       **THE COURT:**  FROM THE GOVERNMENT'S PERSPECTIVE THE

12  NUMBERS, THE 102 YOU JUST DISCUSSED, DO THEY ALL FALL IN THE

13  CLASS, OR ARE SOME FALLING OUT OF THE CLASS SO THE ACTUAL

14  NUMBER OF REUNIFICATION WILL BE SMALLER THAN THE 102?

15       **MS. FABIAN:**  SIX HAVE FALLEN OUT OF THE CLASS, THE

16  FIRST SIX THAT I MENTIONED.  SO THAT IS THREE WHO HAVE

17  IDENTIFIED A SERIOUS CRIMINAL RECORD THAT WOULD BRING THEM OUT

18  OF THE CLASS, AND THEN THREE WHERE THE ACCOMPANYING ADULT

19  TURNED OUT NOT TO BE A PARENT.

20       FIVE OF THE INDIVIDUALS WHO I SAID THEY ARE NOT

21  SLATED FOR RELEASE TOMORROW BECAUSE THERE IS FOLLOWUP ON THE

22  BACKGROUND CHECK.

23       **THE COURT:**  YES.

24       **MS. FABIAN:**  POTENTIALLY SOME OF THOSE COULD FALL

25  OUT IF IT IS DETERMINED THAT A CRIMINAL BACKGROUND IS

JULY 9, 2018

```
 1    SUFFICIENTLY SERIOUS TO REMOVAL THEM FROM THE CLASS.

 2              THE COURT:  IS THERE ANY DISPUTE IN THAT REGARD?

 3              MR. GELERNT:  WE MAY HAVE TO CLARIFY WITH YOU HOW

 4    MANY HAVE ACTUALLY BEEN REMOVED, I THINK, BUT WE SHOULD DO

 5    THAT LATER.  THAT MAY BE A SMALL DISPUTE.

 6              THE ONE THING I WAS --

 7              IF I COULD JUST ASK A CLARIFYING QUESTION OF

 8    COUNSEL.

 9              THE COURT:  YES.

10              MR. GELERNT:  SO FOR -- OF THE NINE WHO WERE

11    RELEASED YOU ARE IN CONTACT WITH FOUR, I GATHER, AND THE

12    PROCESS IS ONGOING FOR REUNIFICATION UNDER THE MORE LENGTHY

13    PROCESS.

14              IF THE JUDGE WERE TO ORDER THAT A STREAMLINED

15    PROCESS CAN BE USED, WOULD THEY BE ABLE TO BE REUNIFIED

16    TOMORROW, OR WEDNESDAY AT THE LATEST?

17              MS. FABIAN:  I BELIEVE SO.  I THINK IT WILL DEPEND

18    ON WHAT PROCESSES THE COURT DECIDED WERE -- WE CAN, AS I

19    DISCUSSED WITH PLAINTIFFS, GET INTO A LITTLE MORE DETAIL ABOUT

20    WHAT PROCESS REMAINS.  AND IF THAT -- IF THAT FALLS UNDER THE

21    PROCESS THAT THE COURT DECIDES WOULD NOT BE NECESSARY IN -- OR

22    UNDER THE COURT'S ORDER, THEN OF COURSE THAT PROCESS WOULD

23    THEN NO LONGER BRING US PAST THE COURT'S DEADLINE.

24              AGAIN, IF ONE -- IF THERE WERE A PORTION OF THE

25    REVIEW THAT THE COURT FOUND WAS STILL AN IMPORTANT --
```

JULY 9, 2018

1    IMPORTANT TO FOLLOW UNDER THE COURT'S ORDER SUFFICIENT THAT

2    BRINGING US PAST THE DEADLINE STILL WORKED WITHIN THE PURVIEW

3    OF THE COURT'S ORDER THEN WE WOULD REUNIFY AS SOON AS THAT --

4    WHATEVER PROCESS THE COURT DECIDED SHOULD BE FOLLOWED WAS

5    COMPLETED.

6              **THE COURT:**  ALL RIGHT.  AND THEN WITH REUNIFICATION

7    TOMORROW WITH LARGE NUMBER OF THESE INDIVIDUALS, WHAT DOES

8    THAT LOOK LIKE, PHYSICALLY?  HOW ARE YOU DOING THAT?

9              **MS. FABIAN:**  WE ARE -- AND WE ARE -- THE PLAN IS FOR

10   THE CHILDREN TO BE RELEASED TO THE PARENTS IN ICE CUSTODY.  WE

11   ARE TRYING -- I THINK WE HAVE AGREED THAT IT IS BEST TO NOT

12   TALK PUBLICLY ABOUT LOCATIONS TOO MUCH FOR THE SAFETY OF THE

13   CHILDREN TO ENSURE SORT OF ORDERLY AND SAFE RELEASES FOR

14   EVERYONE.

15             **THE COURT:**  SO ARE A GROUP GOING TO BE DETAINED

16   TOGETHER IN A FAMILY RESIDENTIAL CENTER AND THEN OTHERS MAY BE

17   RELEASED INTO THE COMMUNITY, PARENT AND CHILD?

18             **MS. FABIAN:**  FOR THIS GROUP, I DON'T BELIEVE THAT

19   WILL BE THE CASE.  THE PARENTS ARE, FOR THE MOST PART,

20   CURRENTLY HAVE BEEN MOVED TO ICE CUSTODY IN THE VICINITY OF

21   THEIR CHILDREN.  THE CHILDREN WILL BE BROUGHT TO AN ICE

22   LOCATION WHERE THE PARENTS ARE LOCATED.  ICE WILL ASSUME

23   CUSTODY AND THEN RELEASE THE PARENT AND CHILD TOGETHER,

24   BECAUSE IN ALL OF THOSE CASES I BELIEVE THAT FACILITY IS NOT A

25   FAMILY RESIDENTIAL CENTER, SO THEY WILL NOT REMAIN IN ICE

```
 1   CUSTODY.
 2              THE COURT:  ALL RIGHT.
 3              MR. GELERNT:  YOUR HONOR, I AM SORRY.
 4              THE COURT:  YES.
 5              MR. GELERNT:  SO I AGREE WITH GOVERNMENT COUNSEL
 6   THAT THE LOCATION SHOULD NOT BE PUBLICIZED, BUT I THINK WE ARE
 7   IN AGREEMENT -- I JUST WANTED TO MAKE SURE -- THAT YOU WOULD
 8   LET US KNOW SO AT LEAST SOME FAITH-BASED GROUP OR NGO COULD BE
 9   THERE TO PROVIDE LOGISTICS FOR THE FAMILY IF THEY HAVE NO BUS
10   TICKET OR HOTEL ROOM OR CLOTHES OR MONEY.  SO THAT IS STILL
11   OUR AGREEMENT, I THINK.
12              MS. FABIAN:  I BELIEVE SO.  I NEED TO CONFER WITH MY
13   CLIENT.  SOME OF THOSE THINGS ARE ONGOING IN TERMS OF A LOT OF
14   THOSE ARE HAPPENING BETWEEN THE LOCAL FACILITIES, SO COMPILING
15   THAT WILL BE -- MAY BRING US DOWN TO THE WIRE IN TERMS OF
16   GETTING THAT INFORMATION.
17              BUT WE AGREE THAT WE WANT PLAINTIFFS TO BE ABLE TO
18   ASSIST WITH THOSE SERVICES, SO TO THE BEST OF OUR ABILITY I
19   WILL TRY TO GET THAT INFORMATION.
20              WE CERTAINLY ALSO -- I AM THINKING OFF THE TOP OF MY
21   HEAD, THOUGH, TO THE EXTENT WE CAN PUT THEM JUST IN TOUCH WITH
22   THE COUNSEL -- ANY COUNSEL FOR THE FAMILIES.  THOSE COUNSEL
23   MAY ALSO BE ABLE TO GIVE EVEN MORE INFORMATION ABOUT THE
24   TIMING AND LOCATION OF RELEASE.
25              BUT I WILL TALK TO MR. GELERNT ABOUT WHAT
```

18

INFORMATION WE CAN PROVIDE, BECAUSE I UNDERSTAND THE POINT AND

I JUST DON'T WANT TO PROMISE IN CASE SOME OF THAT INFORMATION

COMES IN LAST MINUTE.

**MR. GELERNT:**  I THINK WE WOULD -- I UNDERSTAND YOUR

PROBLEM.  I THINK WE WOULD TAKE THE INFORMATION LAST MINUTE

AND IF YOU WANTED TO PUT -- IF THE PARENT ACTUALLY HAD COUNSEL

WE WOULD TALK TO COUNSEL.

BUT I THINK WE ARE VERY AFRAID THAT NOW THAT YOU

HAVE MOVED THE PARENTS SOMEWHERE AROUND THE COUNTRY -- WE

UNDERSTAND WHY, TO BE NEAR THEIR KIDS.  BUT I THINK THE KID

AND THE PARENT ARE GOING TO WALK OUT OF A FACILITY SOMEWHERE

IN THE UNITED STATES WITH NO MONEY, NO IDEA WHERE THEY ARE.

SO I THINK FROM OUR STANDPOINT IT WOULD BE REALLY

CRITICAL THAT THAT INFORMATION COME AS LATE AS IT CAN COME,

YOU KNOW, BUT WE NEED TO GET SOME -- THERE ARE NGO'S AND

FAITH-BASED GROUPS THAT WILL BE THERE, NOT IN A HUGE PRESENCE

BUT SOMEONE THERE TO SAY HELLO TO THE PARENTS AND IF THEY NEED

A BUS TICKET.

**THE COURT:**  THAT WOULD MAKE SENSE, AND THAT

INFORMATION WOULD BE COVERED UNDER THE PROTECTIVE ORDER, WHICH

I HAVE SIGNED.  SO THE INFORMATION COULD BE PROVIDED BY THE

GOVERNMENT TO PLAINTIFFS' COUNSEL, AND THEN YOU WOULD BE FREE

TO DISSEMINATE THAT INFORMATION UNDER THE PROTECTIVE ORDER TO

FAITH-BASED GROUPS OR NGO'S, WHOEVER MIGHT BE THERE IN THE

VICINITY TO ASSIST.

JULY 9, 2018

```
 1          MR. GELERNT:  RIGHT.

 2          MS. FABIAN:  I THINK WE CAN DISCUSS THAT TODAY AND

 3   WORK SOMETHING OUT.  I AGREE WITH THE POINT AND HAPPY TO SEE

 4   WHAT WE CAN WORK OUT.

 5          THE COURT:  MR. GELERNT, FROM YOUR STANDPOINT

 6   REPRESENTING CLASS MEMBERS IS THE GOVERNMENT IN FULL

 7   COMPLIANCE TO THE EXTENT IT CAN BE, UNDERSTANDING THAT THERE

 8   ARE SOME AREAS WHERE IT WILL BE IMPOSSIBLE TO MEET THE

 9   DEADLINE.  BUT TO THE EXTENT THE GOVERNMENT CAN AND IS ABLE TO

10   REUNITE, IS IT YOUR CONSIDERED JUDGMENT THAT THE GOVERNMENT IS

11   IN COMPLIANCE?

12          MR. GELERNT:  WELL, LET ME PUT IT THIS WAY.

13          I THINK THE GOVERNMENT, IN THE LAST 48 HOURS SINCE

14   WE SAW YOU FRIDAY, HAS MADE SIGNIFICANT -- TAKEN SIGNIFICANT

15   STEPS.  I DON'T BELIEVE THAT THERE ARE -- I BELIEVE THAT THEY

16   CAN STILL REUNITE SOME INDIVIDUALS BY TOMORROW.  AND ONE OF

17   THE HOLDUPS IS, OF COURSE, THEIR CONTINUED INSISTENCE ON USING

18   A LONGER REUNIFICATION PROCESS THAT IS GENERALLY FOR TRUE

19   UNACCOMPANIED KIDS.  SO I THINK THAT IS ONE POINT WHERE WE

20   WOULD DISAGREE.

21          I THINK THE OTHER POINT IS JUST HOW MUCH EFFORT --

22   WE JUST DON'T KNOW HOW MUCH EFFORT THE GOVERNMENT HAS MADE TO

23   FIND THE RELEASED PARENTS OR DEPORTED PARENTS, SO I DON'T KNOW

24   IF I WOULD WANT TO PUT IT IN TERMS OF -- THEY CERTAINLY

25   HAVEN'T REUNITED ALL OF THE KIDS AND PARENTS WHO ARE
```

JULY 9, 2018

1    NONCRIMINALS AND DON'T FALL OUT OF THE CLASS, SO IN THAT SENSE

2    I DON'T THINK THERE HAS BEEN FULL COMPLIANCE.  BUT WE

3    RECOGNIZE WE ARE WHERE WE ARE.

4          SO I THINK WHAT WE WOULD ASK YOUR HONOR IS THAT WE

5    SUBMIT THE DISPUTE ABOUT THE STREAMLINED PROCEDURE, THAT IS

6    SOMETHING YOU COULD RULE ON.  AND THEN AFTER THAT WE HAVE

7    SPECIFIC DEADLINES FOR THE INDIVIDUALS WHO HAVEN'T BEEN

8    REUNITED.  AND SO I THINK FOR THE RELEASED PARENTS IF YOUR

9    HONOR WAS GOING TO USE STREAMLINED PROCEDURES WE WOULD SAY 48

10   HOURS AFTER MAKING CONTACT WITH THEM, THAT SHOULD BE ENOUGH

11   TIME BECAUSE THEY ARE RIGHT HERE IN THE U.S., AFTER THE

12   GOVERNMENT HAS BEEN PUT IN TOUCH WITH THEM.  AND ONE WEEK FOR

13   THE REMOVED INDIVIDUALS, ASSUMING THEY ACTUALLY WANT THEIR

14   CHILD SENT TO THEM.

15         SO I THINK -- I GUESS WE COULD PROBABLY SUBMIT THOSE

16   DEADLINES.  AND IF WE HAVE DISAGREEMENT ABOUT THE DEADLINES

17   SUBMIT COUNTERPROPOSALS ABOUT THAT.

18         THE OTHER THING I WOULD SAY, YOUR HONOR, IS THAT WE

19   WOULD ASK THE GOVERNMENT TO INDICATE WHICH TYPES OF

20   CONVICTIONS INDIVIDUALS HAVE, BECAUSE WE RECOGNIZE THAT YOUR

21   HONOR HAS TAKEN THEM OUT OF THE CLASS, BUT WE ALSO RECOGNIZE

22   THAT THERE ARE SOMETIMES MISTAKES.  I THINK SOME OF THE

23   INFORMATION COMES FROM INTERPOL OR OTHER DATABASES AND THERE

24   COULD BE MISTAKES.  AND SO WE WOULD LIKE THE OPPORTUNITY TO

25   OBVIOUSLY DOUBLE CHECK THAT IT IS NOT SOMEONE WITH A DIFFERENT

JULY 9, 2018

1    MIDDLE INITIAL THAT ACTUALLY HAS THE CRIMINAL CONVICTION.

2              **MS. FABIAN:**  I CAN GIVE THAT INFORMATION NOW, YOUR

3    HONOR.  ONE OF THEM WAS A --

4              **MR. GELERNT:**  I DON'T MEAN THE TYPE OF CRIME, I JUST

5    MEAN THAT WE ARE GOING TO DOUBLE CHECK THAT THEY ACTUALLY HAD

6    THE CONVICTIONS GOING FORWARD.

7              AND THEN THE ONLY OTHER THING I WOULD SAY, YOUR

8    HONOR, IS WE -- AND THIS MAY BE SOMETHING THAT IS TOO MUCH IN

9    THE WEEDS FOR YOUR HONOR RIGHT NOW, BUT ON THE 12 DEPORTED --

10             WE HAD 12 DEPORTED PARENTS, AND I THINK YOU HAVE

11   NINE.  IT MAY BE THAT YOU TOOK OUT THREE BECAUSE THE CHILD HAS

12   BEEN GIVEN TO A SPONSOR?  IS THAT CORRECT?

13             **MS. FABIAN:**  I DON'T BELIEVE THAT IS THE CASE.  I

14   WOULD HAVE TO CHECK WHERE THEY MOVED.  I THINK THERE WERE

15   THREE THAT HAD PREVIOUSLY -- BEEN NOTED ON OUR PREVIOUS CHART

16   AS WE BELIEVED THE PARENT HAD BEEN REMOVED AND IT MAY HAVE

17   BEEN THAT AFTER FURTHER CONFIRMATION WE FOUND THAT THAT WAS

18   NOT THE CASE.  BUT I WOULD HAVE TO CONFIRM HOW THOSE THREE

19   MOVED CATEGORIES.

20             **THE COURT:**  ALL RIGHT.

21             **MS. FABIAN:**  AND I AM HAPPY TO DO THAT.

22             **THE COURT:**  WHAT IS BEING REQUESTED NOW IS THAT

23   COUNSEL HAVE THE OPPORTUNITY TO CONTINUE TO MEET AND CONFER

24   TODAY, TO CONTINUE TO MAKE GOOD PROGRESS.  AND TO PUT IN

25   WRITING LATER TODAY WHERE WE ARE WITH REGARD TO HOW MANY WILL

JULY 9, 2018

```
 1    BE REUNITED TOMORROW, HOW MANY PRESENT MORE CHALLENGING ISSUES
 2    AND MAY NOT BE REUNITED TOMORROW WITH AN ARTICULATION AS TO --
 3    AS YOU HAVE DONE HERE TODAY BUT A MORE SPECIFIC ARTICULATION
 4    AS TO THE NUMBER AND THE REASON.  AND THEN A TIME FRAME FOR
 5    EITHER REUNIFYING OR NOT REUNIFYING BECAUSE THEY FALL OUT OF
 6    THE CLASS OR THERE ARE OTHER ISSUES, LEGITIMATE ISSUES, THAT
 7    ARISE.
 8            MS. FABIAN:  YOUR HONOR, CAN I SUGGEST -- AND I TAKE
 9    MR. GELERNT'S INPUT ON THIS.
10            BUT I THINK FOR PURPOSES OF IMMEDIATE RESOLUTION FOR
11    TOMORROW'S DEADLINE THE ISSUE WE WOULD LIKE TO TEE UP MOST
12    IMMEDIATELY IS THE PROCEDURES TO BE FOLLOWED PARTICULARLY FOR
13    THE RELEASED PARENTS.
14            THE COURT:  YES.
15            MS. FABIAN:  SO I WOULD SUGGEST THAT WE DO THAT
16    TODAY AND FOLLOW UP -- IF WE THEN CAN GET THAT DONE AND ALSO
17    TODAY WORK THROUGH, I THINK, A COUPLE OF THE OTHER ISSUES
18    WHICH IS THEN THE NEXT STEPS FOR THE OTHER GROUPS WHO MAY
19    REQUIRE A LITTLE ADDITIONAL TIME, THAT WE DO THAT FOLLOWING
20    SUBMITTING THE BRIEFING ON THE PROCEDURES.  BECAUSE THAT, I
21    THINK, IS IMPORTANT TO GET IN TODAY AND MAY DETERMINE WHETHER
22    FOLKS EITHER ARE RELEASED BY TOMORROW OR ARE NOT AND ARE GOING
23    TO FALL UNDER SOME LONGER PROCEDURES.
24            I THINK I WOULD SORT OF DO THIS IN A LITTLE MORE
25    SEGMENTED WAY SO THAT WE CAN TEE THAT UP AS QUICKLY AS
```

```
 1   POSSIBLE, AND THEN FOLLOW THAT UP BY DISCUSSING THE OTHER
 2   GROUPS WHO MY REQUIRE A LITTLE BIT LONGER AND SUBMIT THAT FOR
 3   YOUR HONOR FOLLOWING.  IT MAY END UP BEING TOMORROW.
 4        THE COURT:  ON THIS STREAMLINED PROCEDURE, WHAT ARE
 5   YOU PROPOSING BY WAY OF A JOINT FILING?
 6        WHAT I WOULD HOPE IS, AS YOU MEET AND CONFER TODAY,
 7   YOU CAN COME TO AN AGREEMENT AND SIMPLY SUBMIT A JOINT MOTION
 8   AND ORDER.  TO THE EXTENT YOU AGREE, THAT'S WHAT I WOULD
 9   REQUEST.  TO THE EXTENT THERE IS DISAGREEMENT I WOULD REQUEST
10   THAT YOU SET OUT IN WRITING WHAT THE DISAGREEMENT IS, AND THEN
11   I CAN RULE ON THAT.
12        MS. FABIAN:  WE HAVE THE BEGINNINGS OF THAT.  I
13   THINK IT JUST NEEDS TO BE SET UP MORE CLEARLY.
14        THE COURT:  YES.
15        MS. FABIAN:  AND GIVE PLAINTIFFS THE CHANCE TO WEIGH
16   IN.  I THINK WE CAN DO THAT TODAY.
17        MR. GELERNT:  I THINK, YOUR HONOR, WE ARE MORE
18   LIKELY TO BE SUBMITTING SOMETHING THAT TEES UP THE
19   DISAGREEMENTS.  IT DOESN'T SEEM LIKE THE AGENCY IS MOVING ON
20   THE STREAMLINED PROCEDURE OTHER THAN WHAT WE BELIEVE ARE AT
21   THE MARGINS.  SO I THINK WE ARE PROBABLY GOING TO HAVE TO GIVE
22   YOU THAT, RATHER THAN A JOINT.
23        THE COURT:  HOW MUCH TIME ARE YOU ASKING FOR?  WHEN
24   WOULD YOU MAKE THE FILING?
25        MR. GELERNT:  I THINK WE WERE HOPING TO GET
```

JULY 9, 2018

1  SOMETHING TO YOU NO LATER THAN 8:00 P.M. PACIFIC TODAY.  BUT

2  IF YOUR HONOR -- YOU KNOW, I THINK THAT IS WHERE WE ARE.  IT

3  WOULD GIVE US A LITTLE TIME TO SEE IF WE COULD MOVE EACH OTHER

4  AND THEN WRITE IT UP IN SOME WAY THAT IS COHERENT FOR YOU.

5          **THE COURT:**  YES.

6          **MS. FABIAN:**  THAT IS FINE.  YEAH.  I WOULD HOPE

7  SOONER BUT I THINK SAYING 8:00 P.M. WILL PUT OUR FEET TO THE

8  FIRE IF IT IS NOT DONE SOONER.  I THINK THAT IS A GOOD WAY TO

9  DO IT.

10          **THE COURT:**  THEN FOR THE FOLLOW-UP FILING AS TO

11  WHERE WE ARE, WITH CONCRETE INFORMATION AS TO WHO IS BEING

12  REUNITED AND THEN THE SMALLER GROUPS WHERE THERE ARE ISSUES,

13  WHAT IS YOUR PROPOSAL?  TOMORROW MORNING SOME KIND OF --

14          **MR. GELERNT:**  I THINK THAT --

15          **THE COURT:**  -- FILING?

16          **MR. GELERNT:**  I THINK TOMORROW.

17          **MS. FABIAN:**  I THINK I CAN SAY I NEED TO FOLLOW UP.

18  THESE DEADLINES THAT MR. GELERNT HAS JUST NOTED IS THE FIRST I

19  AM HEARING THEM, SO I NEED TO BRING THOSE TO MY CLIENTS AND

20  SORT OF FIND OUT WHAT -- OFF THE TOP OF MY HEAD I THINK IT MAY

21  DEPEND IF WE ARE TEEING IT OFF OF MAKING CONTACT AND THEN

22  SETTING A DEADLINE.  I JUST NEED TO KNOW THEN, FROM MY

23  CLIENTS, WHAT THEY CAN DO.

24          SO I DON'T THINK -- I THINK IT IS THE MAKING CONTACT

25  PART FIRST THAT WILL REQUIRE SOME NEGOTIATION BETWEEN THE

 1   PARTIES, AND THEN I NEED INFORMATION FROM MY CLIENTS ON THE

 2   TIMELINE AFTER THAT PROCESS.  SO I WOULD SAY BY THE END OF THE

 3   DAY TOMORROW.

 4           **MR. GELERNT:**  RIGHT.  AND I THINK IT WILL DEPEND,

 5   YOUR HONOR. ON YOUR RULING ABOUT THE STREAMLINED PROCESS OR

 6   NOT A STREAMLINED PROCESS, BECAUSE IF WE MADE CONTACT AND THEY

 7   ARE STILL GOING TO USE THE SAME LENGTHY PROCESS I SUSPECT THEY

 8   ARE GOING TO BALK AT THE 48-HOUR DEADLINE WE HAVE PROPOSED.

 9   BUT IF THEY ARE GOING TO USE A STREAMLINED PROCESS, SO IT MAY

10   DEPEND ON THAT.

11           BUT I THINK BY TOMORROW YOU WILL BE ABLE TO --

12   TOMORROW NIGHT BE ABLE TO PROVIDE A STATUS REPORT SAYING WE

13   DID IN FACT ACCOMPLISH THIS MANY RENUNCIATIONS AND THESE

14   PEOPLE WERE NOT REUNIFIED.

15           IS THAT GOING TO BE POSSIBLE BY TOMORROW NIGHT TO

16   KNOW ACTUALLY WHO WAS REUNIFIED AND WHO WASN'T?

17           **MS. FABIAN:**  IT SHOULD BE POSSIBLE BY TOMORROW

18   NIGHT.  BECAUSE IT WILL REQUIRE INFORMATION FROM THE FIELD, I

19   WOULD SUGGEST THAT IF THE DEADLINE WERE WEDNESDAY MORNING I

20   COULD -- I COULD HOPEFULLY GET IT IN TUESDAY NIGHT.  BUT THAT

21   WAY I CAN ENSURE THAT I WILL BE ABLE TO GET REPORTS FROM THE

22   FIELD WHO WILL -- WHO CAN CONFIRM THE REUNIFICATION.

23           SO THE INFORMATION WILL BE AVAILABLE BY TUESDAY

24   NIGHT, IT IS JUST THAT I KNOW THAT I WOULD BE REQUIRING -- I

25   WOULD BE RELYING ON REPORTS FROM A NUMBER OF FIELD OFFICES,

JULY 9, 2018

```
 1   AND THAT I DON'T WANT TO PROMISE THAT I WILL HAVE THAT ALL
 2   TUESDAY NIGHT.
 3           THE COURT:  WHAT I AM GOING TO PROPOSE, SINCE
 4   TOMORROW IS THE DEADLINE, AND I DO RECOGNIZE THAT THERE ARE
 5   SOME GROUPS OF PARENTS WHO ARE GOING TO FALL INTO A CATEGORY
 6   WHERE IT IS IMPOSSIBLE TO REUNITE BY TOMORROW GIVEN ISSUES OF
 7   CRIMINAL HISTORY OR THE FACT THAT THEY ARE IN STATE OR FEDERAL
 8   CUSTODY, THOSE KINDS OF ISSUES ARE MATTERS THAT WILL
 9   NECESSITATE, IN SOME CASES, ADDITIONAL TIME.  BUT FOR THE
10   LARGE MAJORITY OF PARENTS COMING WITHIN THIS GROUP, IT SEEMS
11   TO ME THAT THE DEADLINE CAN BE MET.
12           I WOULD ASK THAT COUNSEL SUBMIT THEIR JOINT MOTION
13   AND ORDER, AND THEN AREAS OF DISAGREEMENT WITH RESPECT TO THE
14   STREAMLINING ISSUES AND PROCEDURES FOR THOSE WHO HAVE BEEN
15   RELEASED FROM ICE DETENTION, TO MAKE THAT FILING BY 6:00 P.M.
16   TONIGHT.
17           MR. GELERNT:  YES, YOUR HONOR.
18           MS. FABIAN:  YES, YOUR HONOR.
19           THE COURT:  AND THEN FOR TOMORROW BY 10:00 A.M.
20   WHICH WILL PROVIDE -- THESE ARE PACIFIC TIME.  A FILING AS TO
21   WHERE WE ARE, WHO IS BEING REUNITED BY TOMORROW'S DEADLINE AND
22   WHICH PARENTS FALL INTO A CATEGORY WHERE IT IS GOING TO BE
23   IMPOSSIBLE TO MEET THE DEADLINES, WITH A PROPOSAL, HOPEFULLY,
24   AS TO A TIME FRAME AS TO WHEN THEY CAN BE REUNITED.
25           I AM VERY ENCOURAGED WITH THE PROGRESS.  THERE IS NO
```

JULY 9, 2018

```
 1   QUESTION THAT THE PARTIES ARE MEETING AND CONFERRING, AND THIS
 2   IS REAL PROGRESS.  AND I AM OPTIMISTIC THAT MANY OF THESE
 3   FAMILIES WILL BE REUNITED TOMORROW, AND THEN WE WILL HAVE A
 4   VERY CLEAR UNDERSTANDING AS TO WHO HAS NOT BEEN REUNITED, WHY
 5   NOT, AND WHAT TIME FRAME WOULD BE IN PLACE.
 6           LET'S MEET AGAIN TOMORROW.  IF THERE IS A FILING BY
 7   10:00 A.M. TOMORROW WE CAN MEET AGAIN, I WOULD PROPOSE, AT
 8   11:00.  AND THAT WAY WE ARE IN A POSITION TO MAKE ANY
 9   DETERMINATIONS AS MIGHT BE NECESSARY.  AND THEN WE CAN, GOING
10   FORWARD, ADDRESS HOW WE HANDLE THE BALANCE, THE OVER 2,000
11   REMAINING OTHERS, THE FIVE-AND-OLDER CHILDREN AND PARENTS.
12           MS. FABIAN:  AND, YOUR HONOR, WE HAD DISCUSSED THAT,
13   AND WE CAN TALK ABOUT A TIMELINE FOR MAYBE TOMORROW.
14           THE COURT:  YES.
15           MS. FABIAN:  AND WE WILL TALK ABOUT IT TO BE
16   PREPARED.  WE HAD DISCUSSED IT MIGHT BE HELPFUL IF WE WORKED
17   TOGETHER.
18           THE COURT:  YES.
19           MS. FABIAN:  BECAUSE I THINK THIS PROCESS OVER THE
20   WEEKEND HELPED US SEE WHAT INFORMATION AND IN WHAT FORM IS
21   MOST USEFUL TO SHARE.
22           AND IT IS ALSO HELPFUL FOR OUR PURPOSES BECAUSE THE
23   OPERATORS WHO ARE PULLING THIS INFORMATION TOGETHER ARE ALSO
24   THE FOLKS THAT WE WANT TO BE FACILITATING THE REUNIFICATION.
25   SO I WOULD LIKE TO MAKE THAT AS EFFICIENT A PROCESS AS
```

28

1    POSSIBLE WHILE ALSO GETTING PLAINTIFFS THE INFORMATION THAT IS

2    USEFUL.

3           SO WE WOULD LIKE SOME TIME -- WE WOULD LIKE TO TALK

4    ABOUT THAT AND MAYBE SUBMIT PROPOSALS AS FAR AS -- HOPEFULLY A

5    JOINT PROPOSAL BUT AT LEAST IDENTIFY HOW WE THINK NOTIFICATION

6    AND SHARING OF INFORMATION CAN HAPPEN GOING FORWARD IN A WAY

7    THAT FACILITATES THE REUNIFICATIONS AS WELL AS THE INFORMATION

8    SHARING.

9           **THE COURT:**  YES.

10          **MR. GELERNT:**  COULD I RAISE -- I THINK WE WERE GOING

11   TO RAISE ONE OTHER TOPIC, YOUR HONOR, AND THAT IS NOTICE TO

12   THE CLASS.  WE SEEM TO HAVE NARROWED IT DOWN TO VERY FEW

13   DISAGREEMENTS.  AND I THINK WE PROBABLY CAN GET THAT DONE

14   TODAY AND AGREE AND THEN WE WILL SUBMIT IT TO YOU.

15          IF THERE IS ONE OR TWO OUTSTANDING ISSUES I THINK

16   THEY ARE GOING TO BE VERY EASY FOR YOU TO SEE AND RULE ON,

17   MAYBE FROM THE BENCH TOMORROW.

18          **THE COURT:**  YES.  IF YOU COULD MAKE THAT FILING AS

19   WELL BY 6:00 P.M. PACIFIC.

20          **MR. GELERNT:**  WITH THE NOTICE AND WHAT

21   DISAGREEMENTS.

22          **THE COURT:**  YES.

23          **MR. GELERNT:**  OKAY.  THANK YOU, YOUR HONOR.

24          **MS. FABIAN:**  THAT SHOULDN'T BE A PROBLEM, YOUR

25   HONOR.

JULY 9, 2018

29

1          **THE COURT:**  OKAY.  THANK YOU.

2          ANY THERE ANY OTHER MATTERS?  OTHERWISE WE WILL

3    RECESS AND SEE EACH OTHER AGAIN TOMORROW AT 11:00.

4          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

5          **MS. FABIAN:**  THANK YOU, YOUR HONOR.

6          **THE COURT:**  THANK YOU.

7

8                          *   *   *

9          I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
10         IN THE ABOVE-ENTITLED MATTER.

11         S/LEEANN PENCE                    7/10/2018
           LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          JULY 9, 2018