UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
             PETITIONERS-PLAINTIFFS,    )
                                        )
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            )TUESDAY JULY 10, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 11:00 A.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
             RESPONDENTS-DEFENDANTS.    )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

```
COUNSEL APPEARING:

FOR PLAINTIFF:                  LEE GELERNT, ESQ.
                                ACLU IMMIGRANT RIGHTS PROJECT
                                125 BROAD STREET 18TH FLOOR
                                NEW YORK, NEW YORK 10004

                                BADIS VAKILI, ESQ.
                                ACLU FOUNDATION OF SAN DIEGO
                                AND IMPERIAL COUNTIES
                                P.O. BOX 87131
                                SAN DIEGO, CALIFORNIA 92138

                                STEPHAN B. KANG, ESQ.
                                ACLU OF NORTHERN CALIFORNIA
                                39 DRUMM STREET
                                SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:                  SARAH B. FABIAN, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
                                OFFICE OF IMMIGRATION LITIGATION
                                P.O. BOX 868
                                BEN FRANKLIN STATION
                                WASHINGTON, DC 20044

                                ADAM L. BRAVERMAN
                                INTERIM UNITED STATES ATTORNEY
                                BY:  SAM BETTWY
                                ASSISTANT U.S. ATTORNEY
                                880 FRONT STREET
                                SAN DIEGO, CALIFORNIA 92101




REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101
```

3

1    SAN DIEGO, CALIFORNIA – TUESDAY, JULY 10, 2018 – 11:07 A.M.

2                          *   *   *

3         THE CLERK:  NO. 1 ON CALENDAR, CASE NO.18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    STATUS CONFERENCE.

6         THE COURT:  GOOD MORNING.

7         MAY I HAVE APPEARANCES, PLEASE?

8         MR. GELERNT:  GOOD MORNING, YOUR HONOR.  LEE

9    GELERNT, FROM THE ACLU, FOR PLAINTIFFS.

10        MR. KANG:  STEPHAN KANG, YOUR HONOR, FOR PLAINTIFFS.

11        MR. BALAKRISHNAN:  GOOD MORNING, YOUR HONOR. ANAND

12   BALAKRISHNAN FOR PLAINTIFFS.

13        THE COURT:  THANK YOU.

14        MR. VAKILI:  GOOD MORNING, YOUR HONOR.  BARDIS

15   VAKILI FOR PLAINTIFFS.

16        MS. FABIAN:  GOOD MORNING, YOUR HONOR.  SARAH

17   FABIAN, WITH THE DEPARTMENT OF JUSTICE, FOR DEFENDANTS.

18        MR. STEWART:  GOOD MORNING, YOUR HONOR.  SCOTT

19   STEWART FOR THE DEPARTMENT OF JUSTICE.

20        THE COURT:  THANK YOU.  AND GOOD MORNING.

21        I HAVE READ ALL OF THE BRIEFING THAT WAS SUBMITTED,

22   WHICH I APPRECIATE.

23        WHAT I WOULD LIKE TO DO IS PROVIDE A NUMBER OF

24   RULINGS FROM THE BENCH SO THAT THE PARTIES HAVE THE BENEFIT OF

25   THE COURT'S DETERMINATIONS AND CAN PROCEED ACCORDINGLY.  AND

THEN I WILL ISSUE A SHORT WRITTEN ORDER LATER TODAY SETTING

OUT THE DETERMINATIONS THAT I AM GOING TO MAKE IN A MOMENT.

ON THE CLASS NOTICE ISSUE, I AM GOING TO ADOPT THE

PLAINTIFFS' VERSION, SO THAT NOTICE MAY ISSUE IN ACCORDANCE

WITH THE PLAINTIFFS' PROPOSAL.

ON THE BALANCE OF THE ISSUES, I INTEND TO STAND ON

THE DEADLINE ON MOST OF THE INDIVIDUALS WHO HAVE BEEN

IDENTIFIED OF THE UNDER-FIVE GROUP, AND WOULD BE ADOPTING IN

SIGNIFICANT PART A STREAMLINED APPROACH.

AND THE REASONS FOR THAT IS, WHEN ONE LOOKS TO THE

MANNER IN WHICH ICE MAKES THESE CONSIDERATIONS, SO IF WE STEP

BACK IN TIME AND WE LOOK AT THE CASES OF MS. L. AND MS. C.

SPECIFICALLY, THESE INDIVIDUALS GO INTO ICE DETENTION.  THEY

ARRIVE AS A FAMILY UNIT, AND ICE MAKES DETERMINATIONS AS TO

WHETHER TO KEEP THE FAMILY TOGETHER OR TO SEPARATE THEM.

AND WHEN THIS CASE WAS INITIATED, MR. ORTIZ, MARIO

ORTIZ, FILED A DECLARATION WITH THE COURT ON MARCH 15, 2018.

AND MR. ORTIZ IS A DETENTION OFFICER FOR THE SAN DIEGO

DISTRICT OF ICE, THE ENFORCEMENT AND REMOVAL OPERATIONS

DIVISION, SINCE 1996.  HE SET OUT IN HIS DECLARATION THE

PROCEDURES THAT ERO SAN DIEGO FAMILY UNIT CURRENTLY FOLLOWS.

AND THAT FAMILY UNIT ENDEAVORS TO DO PRECISELY WHAT WE ARE

TRYING TO DO IN A CONTEXT THAT IS IMPORTANT BECAUSE THE

CONTEXT, AGAIN, IS THE APPREHENSION OF FAMILY UNITS, AND THEN

A DETERMINATION AT THAT TIME WITH THE INFORMATION THAT IS

JULY 10, 2018

```
 1   AVAILABLE AT THAT TIME WHETHER TO SEPARATE OR NOT.
 2           AND WHAT HE SAYS IS THE FOLLOWING, AND I AM GOING TO
 3   QUOTE FROM HIS DECLARATION IN PERTINENT PARTS:  WHEN ALIENS
 4   WHO ENTER ICE CUSTODY CLAIM TO BE PARENT AND CHILD, THEY ARE
 5   REFERRED TO THE FAMILY UNIT.  THE MISSION OF THE FAMILY UNIT
 6   IS TO MAKE APPROPRIATE PLACEMENT DECISIONS FOR ALIENS
 7   TRAVELING WITH CHILDREN WHO CLAIM FAMILY RELATIONSHIPS.  WHEN
 8   ALIENS CLAIMING A PARENT-CHILD RELATIONSHIP ARE ENCOUNTERED,
 9   MY UNIT'S PRIMARY CONSIDERATIONS ARE, FIRST, WHETHER THERE IS
10   ANY DOUBT ABOUT WHETHER THEY ARE PARENT AND CHILD AND, SECOND,
11   WHETHER THERE IS INFORMATION THAT CAUSES A CONCERN ABOUT THE
12   WELFARE OF THE CHILD SUCH AS THE ADULT HAVING A SIGNIFICANT
13   CRIMINAL HISTORY.  BASED ON THE INFORMATION AVAILABLE IN A
14   SPECIFIC CASE, IF THERE ARE NOT CONCERNS ABOUT THE FAMILY
15   RELATIONSHIP OR WELFARE OF THE CHILD, THE ALIENS MAY BE
16   DETAINED IN A FAMILY RESIDENTIAL CENTER OR, IF APPROPRIATE,
17   RELEASED TO A SPONSOR OR NONGOVERNMENT ORGANIZATION.  IF THERE
18   ARE CONCERNS, THE CHILD MAY BE TRANSFERRED TO O.R.R.
19           AND I THINK, GIVEN THE EVIDENCE BEFORE THE COURT,
20   THERE IS NO INDICATION THAT THIS PRACTICE THAT ICE HAS USED
21   FOR MANY YEARS HAS NOT WORKED SUCCESSFULLY.  THEY HAVE BEEN
22   MAKING THESE KINDS OF DETERMINATIONS FOR YEARS.  THEY HAVE NOT
23   BEEN SUBJECT TO THE TVPRA, WHICH IS AN ENTIRELY DIFFERENT
24   STATUTORY CONSTRUCT THAT IS DESIGNED FOR A DIFFERENT
25   SITUATION.
```

JULY 10, 2018

1          THE TVPRA, AS WE HAVE DISCUSSED THROUGHOUT THIS

2     LITIGATION, IT WAS PRINCIPALLY PROMULGATED TO DEAL WITH

3     UNACCOMPANIED CHILDREN WHO CROSSED ON THEIR OWN, WERE

4     APPREHENDED, AND THEN THE GOVERNMENT HAD TO TAKE CUSTODY AND

5     CARE OF THOSE CHILDREN.

6          AND IN FULFILLING THAT OBLIGATION IT WAS FUNCTIONING

7     MUCH LIKE FOSTER CARE FACILITIES DO OR STATE AND COUNTY

8     GOVERNMENTAL AGENCIES THAT ARE LOOKING AFTER THE WELFARE OF A

9     CHILD, IT WAS FUNCTIONING AS A CHILD WELFARE AGENCY.  AND IN

10    MAKING PLACEMENTS OFTENTIMES THERE ARE NOT PARENTS AVAILABLE

11    BECAUSE THESE ARE CHILDREN WHO CAME OVER ON THEIR OWN, SO THEY

12    ARE LOOKING TO PLACE CHILDREN OFTENTIMES WITH NONPARENT

13    CUSTODIANS.  AND IT ONLY MAKES SENSE THAT THEY WOULD NEED TO

14    FULFILL THOSE OBLIGATIONS CAREFULLY, THROUGH A RELATIVELY

15    TIME-INTENSIVE PROCESS OF INTERVIEWING SPONSORS, LOOKING INTO

16    THE FAMILY SITUATION, RUNNING BACKGROUND CHECKS; ALL OF THOSE

17    THINGS THAT YOU WOULD EXPECT WHEN YOU PLACE A CHILD IN LIKE A

18    FOSTER HOME TYPE ENVIRONMENT.  THAT'S NOT THE CONTEXT HERE.

19         WHAT'S IMPORTANT TO RECOGNIZE IS THE CONTEXT IN

20    WHICH THE SEPARATIONS OCCURRED, AND THAT IS GOING BACK TO THE

21    CLASS DEFINITION THAT THESE ARE CHILDREN WHO ARRIVED WITH A

22    PARENT.

23         AND SO, NECESSARILY, THE DETERMINATION OUGHT TO BE,

24    AND IN PARTICULAR IN LIGHT OF THE CLAIMS IN THIS CASE THAT

25    THESE FAMILIES WERE IMPROPERLY SEPARATED, THE DETERMINATION

JULY 10, 2018

7

```
 1   OUGHT TO BE WHETHER THERE IS ANYTHING ABOUT THE PARENT THAT
 2   RENDERS THAT PARENT UNFIT OR A DANGER.  THIS, OF COURSE,
 3   ASSUMES THEY ARE THE PARENT.  AND THOSE CONSIDERATIONS CAN BE
 4   MADE CONSISTENT WITH WHAT ICE HAS BEEN DOING ALL ALONG.
 5            IT IS NOT NECESSARY TO ADOPT WHOLESALE THE TVPRA AND
 6   PLUG IT INTO THIS CONTEXT, WHICH IS COMPLETELY DISSIMILAR TO
 7   THE UNACCOMPANIED MINOR SITUATION.
 8            THE GOVERNMENT, BECAUSE OF THE MANNER IN WHICH THE
 9   FAMILIES WERE SEPARATED, HAS AN AFFIRMATIVE OBLIGATION TO
10   REUNIFY, TO DO IT EFFICIENTLY AND TO DO IT SAFELY.  THE
11   CHILD'S INTEREST IS PARAMOUNT.  BUT IT CAN BE DONE WITHOUT A
12   WHOLESALE ADOPTION OF THE TVPRA PROCEDURES.
13            AND I AM MAKING THESE ASSUMPTIONS, GIVEN THE BENEFIT
14   OF THE BRIEFING, THAT WHAT IS AT ISSUE ARE A NUMBER OF POLICY
15   CONSIDERATIONS.  IT IS NOT THE STATUTE ITSELF, IT IS NOT
16   RULE-MAKING AUTHORITY.  SO THE COURT IS NOT INTERVENING IN ANY
17   WAY WITH A FEDERAL STATUTE OR RULES THAT HAVE BEEN PROMULGATED
18   THROUGH THE APA AND OTHER FORMALIZED PROCEDURES.  THESE ARE
19   POLICIES THAT THE HHS HAS ADOPTED, IS THE UNDERSTANDING I HAVE
20   FROM THE BRIEFING, TO FULFILL ITS MISSION UNDER THE TVPRA FOR
21   UNACCOMPANIED MINOR CHILDREN.
22            THAT'S THE ESSENTIAL BACKGROUND.
23            HERE THE PARTIES HAVE INDICATED THAT THERE IS ONLY
24   ONE STATUTORY PROVISION WHICH WOULD APPLY, AND THAT IS WHERE
25   THE TVPRA REQUIRES HOME STUDIES WHERE THERE ARE INDICATIONS OF
```

1    TRAFFICKING OR ABUSE UNDER 8, USC, SECTION 1232(C)(3)(B), AND

2    THAT WOULD BE LEFT UNINTERRUPTED BY TODAY'S PROCEEDINGS AND

3    THE INJUNCTION THAT IS IN PLACE.  AND IN ADDITION THOSE

4    CONSIDERATIONS, IF THERE IS EVIDENCE OF TRAFFICKING OR ABUSE,

5    THOSE PARENTS ARE NOT GOING TO BE IN THIS CLASS, IN ANY EVENT.

6          SO I THINK WHAT'S IN PLACE WITH THE CLASS DEFINITION

7    AND THE PROPOSALS THAT THE PLAINTIFFS HAVE SET OUT, BY AND

8    LARGE, AND THAT ICE HAS USED FOR MANY YEARS, IS COMPLETELY

9    CONSISTENT WITH THE GOALS OF THE TVPRA; BUT IS MUCH MORE

10   SUITABLE FOR THE SPECIFIC CONTEXT OF THIS CASE, AND THAT IS

11   FAMILY SEPARATION AT THE BORDER, FAMILY UNITS ARRIVING

12   TOGETHER.

13         WITH THAT BACKGROUND, LET ME RUN THROUGH THE AREAS

14   OF DISPUTE.  AND WITH AN INDICATION THAT THERE IS STILL MUCH

15   TIME LEFT TODAY, THAT THESE REUNIFICATIONS OCCUR.  THAT THESE

16   ARE FIRM DEADLINES, THEY ARE NOT ASPIRATIONAL GOALS.  AND AS

17   WE GO THROUGH I CAN BE MORE SPECIFIC AS TO WHO IS IN THE CLASS

18   AND WHO IS NOT, AND WHICH PARENTS AND CHILDREN WE WOULD BE

19   FOCUSING ON FOR PURPOSES OF REUNIFICATION TODAY.

20         THE FIRST AREA OF DISPUTE RELATES TO DNA.  THE

21   GOVERNMENT IS INDICATING THAT IT WOULD LIKE TO TAKE DNA CHEEK

22   SWABS FROM EVERYONE.

23         AND HERE THAT RELATES -- ACCORDING TO THE PRESENT

24   NUMBERS, 34 FAMILIES ARE READY TO BE REUNITED TODAY.  17

25   OTHERS ARE LIKELY TO BE REUNITED.  16 ARE PENDING CONFIRMATION

JULY 10, 2018

1  OF PARENTAGE, AND SO THAT MAY BE THE GROUP THAT THIS DNA

2  TESTING RELATES TO.

3         BUT AS TO THAT AREA OF DISPUTE, I WOULD PERMIT DNA

4  TESTING, WHEN NECESSARY, WHEN THERE IS A LEGITIMATE, GOOD

5  FAITH CONCERN ABOUT PARENTAGE, OR IF THERE IS A LEGITIMATE

6  CONCERN THAT THE GOVERNMENT WILL NOT MEET THE REUNIFICATION

7  DEADLINE, AND THAT MAY BE THE SITUATION WE ARE HERE IN TODAY.

8  THEN THE GOVERNMENT, WITH THE CONSENT OF THE PARENT, CAN TAKE

9  A DNA SAMPLE, SUBJECT TO THE PROTECTIVE ORDER THAT IS PROPOSED

10 BY THE PARTIES.

11         I THINK THE PROTECTIVE ORDER COMPLETELY PROVIDES THE

12 NECESSARY PROTECTION WITH RESPECT TO HOW DNA SAMPLING MAY BE

13 USED.  THERE HAS TO BE CONSENT BY THE PARENT, AND THEN THE

14 SAMPLING IS DESTROYED WITHIN SEVEN DAYS AND IT IS NOT USED FOR

15 ANY OTHER PURPOSE.

16         SO WITH THAT, IT SEEMS TO ME THAT IF THE GOVERNMENT

17 IS USING THE DNA TESTING ONLY WHEN NECESSARY AND/OR WHEN

18 NECESSARY TO MEET COURT-IMPOSED DEADLINES, THAT IT MAY BE

19 DONE, SUBJECT TO THE PROTECTIVE ORDER.

20         **MS. FABIAN:**  CAN I ASK A POINT OF CLARIFICATION?

21         **THE COURT:**  LET ME RUN THROUGH THESE, AND THEN WE

22 CAN GO BACK AND CLARIFY AS NECESSARY.

23         THE SECOND AREA RELATES TO RESTRICTIONS ON HHS

24 INFORMATION-GATHERING ABOUT CHILD WELFARE.

25         HERE, I WOULD ADOPT A STREAMLINE APPROACH, NOT THE

TVPRA STANDARD.  THAT, IN THIS CONTEXT, IS BACKWARDS, BECAUSE
THE TVPRA, FROM ITS INCEPTION, IS ALL ABOUT A CUSTODIAN
APPLYING AND SEEKING APPROVAL TO BE A SPONSOR OR A RECOGNIZED
CUSTODIAN; THIS IS NOT THAT SITUATION.

          THE GOVERNMENT HAS AN OBLIGATION TO REUNIFY CHILD
WITH PARENT.  THE IDEA OF AN APPLICATION PROCESS DOESN'T FIT
IN THIS CONTEXT.  THE PARENT HAS A RIGHT TO BE REUNIFIED AND
IT IS THE GOVERNMENT'S OBLIGATION TO MAKE IT SO, UNLESS THERE
ARE ISSUES OF FITNESS OR DANGER.

          SO ON ADDITIONAL INFORMATION-GATHERING, THAT WOULD
NOT BE NECESSARY IN THE UNIQUE CONTEXT OF THIS CASE.  THIS IS
NOT THE ORDINARY TVPRA TYPE OF CASE.

          IN ADDITION, IF THE GOVERNMENT IS AWARE OF
INFORMATION BEFORE THE COURT-IMPOSED DEADLINE THAT RAISES
ISSUES OF FITNESS OR DANGER -- AND THERE ARE MANY EXAMPLES
THAT HAVE BEEN SET OUT IN THE PARTIES' FILINGS TODAY OF
PARENTS THAT PRESENT ISSUES OF FITNESS OR DANGER --
REUNIFICATION DOES NOT HAVE TO OCCUR TODAY.  THE GOVERNMENT
CAN WITHHOLD REUNIFICATION, AGAIN ASSUMING ABSOLUTE GOOD FAITH
AND ARTICULABLE REASONS FOR IT.  AND THAT INFORMATION IS
THEN -- WILL THEN BE IMMEDIATELY PROVIDED TO PLAINTIFFS'
COUNSEL SO THAT THEY HAVE AN OPPORTUNITY TO CONTEST THE
GOVERNMENT'S DETERMINATION.

          AND I WILL COME TO THE PROCESS BY WHICH WE WILL
RESOLVE ANY OF THESE DISPUTES, BUT I AM OPTIMISTIC THAT MOST

JULY 10, 2018

1   ALL WILL RESOLVE THROUGH THE MEET-AND-CONFER PROCESS.

2         THE THIRD AREA RELATES TO BACKGROUND CHECKS ON OTHER

3   ADULTS IN THE HOUSEHOLD.  THIS GOES TO THIS IDEA OF IF WE ARE

4   GOING TO PLACE AN UNACCOMPANIED MINOR WHO SHOWED UP ON HIS OWN

5   AND WAS APPREHENDED, WE ARE NOT GOING TO PUT HIM OR HER IN A

6   HOME UNLESS WE KNOW ABOUT EVERYONE IN THE HOME.

7         THAT IS VERY DIFFERENT FROM THE GOVERNMENT NEEDING

8   TO RETURN A CHILD TO HIS OR HER PARENT, ASSUMING THE PARENT IS

9   FIT AND NOT A DANGER.  THESE PARENTS ARE RESPONSIBLE FOR THEIR

10  OWN CHILDREN, AND MANY OF THESE DETERMINATIONS, WE MUST

11  ASSUME, ARE SUBJECT TO THE PARENTS' JUDGMENT AND

12  CONSIDERATION.

13        SO I WOULD ADOPT A STREAMLINE APPROACH HERE.

14        AND THERE MAY BE INDIVIDUALS -- THE GOVERNMENT HAS

15  IDENTIFIED SEVERAL PUTATIVE CLASS MEMBERS WHO HAVE CRIMINAL

16  HISTORY:  ONE IS ALIEN SMUGGLING, ANOTHER IS CHILD

17  ENDANGERMENT, ANOTHER IS NARCOTICS TRAFFICKING, ANOTHER HAS A

18  PENDING OR AN ALLEGED HOMICIDE.  THESE INDIVIDUALS FALL

19  OUTSIDE OF THE CLASS.  SO THE CLASS DEFINITION WILL

20  NECESSARILY ADDRESS MANY OF THE GOVERNMENT'S LEGITIMATE

21  CONCERNS ABOUT PROTECTING THE WELFARE OF CHILDREN.

22        AND IF THE GOVERNMENT HAS SPECIFIC INFORMATION THERE

23  IS -- FOR EXAMPLE, THERE IS AN IDENTIFICATION OF A PARENT, A

24  SITUATION WHERE AN INDIVIDUAL IN ONE OF THE HOUSEHOLDS HAS AN

25  OUTSTANDING WARRANT FOR AGGRAVATED CRIMINAL SEXUAL ABUSE.  THE

JULY 10, 2018

1   GOVERNMENT HAS A LOT OF INFORMATION, A LOT OF RESOURCES

2   AVAILABLE.  WHEN THAT KIND OF INFORMATION COMES FORWARD THERE

3   IS NOT A NEED TO REUNIFY.  THAT WOULD BE AN EXAMPLE OF THE

4   GOVERNMENT PROPERLY WITHHOLDING REUNIFICATION, ADDRESSING IT

5   WITH PLAINTIFFS' COUNSEL.  AND THEN, IF NECESSARY, IF IT

6   CANNOT BE RESOLVED BETWEEN THE PARTIES, BRINGING IT TO THE

7   ATTENTION OF THE COURT FOR RESOLUTION.

8          BUT THE TVPRA PROCESS OF THE FULL BACKGROUND CHECK

9   OF EVERYONE IN THE HOUSEHOLD IS NOT NECESSARY UNDER THESE

10   UNIQUE CIRCUMSTANCES.

11          NUMBER FOUR IS PROOF OF ADDRESS, SPONSOR CARE PLANS,

12   AND ALTERNATE CAREGIVERS.  THERE IS NO OBJECTION.  MANY OF

13   THESE AREAS ARE NOT OBJECTED TO IN PART.  HERE THERE IS NO

14   OBJECTION TO PROVIDING PROOF OF ADDRESS BUT THERE IS OBJECTION

15   TO A SPONSOR CARE PLAN.  AND I WOULD AGREE OR SUSTAIN THAT

16   OBJECTION.

17          HERE AGAIN, THE PARENTS ARE NOT APPLYING FOR -- THEY

18   DON'T HAVE TO PROVE THAT THEY ARE GOING TO BE A GOOD SPONSOR.

19   WHAT THE GOVERNMENT HAS TO LOOK TO IS WHETHER THE PARENT IS

20   UNFIT OR A DANGER, SO IT IS GOING ABOUT IT A DIFFERENT WAY.

21          THE TVPRA, WITH RESPECT TO THESE INDIVIDUAL CLASS

22   MEMBERS, IS BACKWARDS.  AND FOR THOSE REASONS I WOULD AGREE

23   WITH PLAINTIFFS ON A STREAMLINED APPROACH.

24          AND HERE AGAIN, IF THERE IS ANY INFORMATION THAT THE

25   GOVERNMENT HAS THAT GIVES CONCERNS, IT CAN BE PROPERLY BROUGHT

JULY 10, 2018

TO THE ATTENTION OF PLAINTIFFS' COUNSEL AND THE COURT AT A
LATER TIME.

THE FIFTH AREA RELATES TO LEGAL ORIENTATION AND
SPONSOR CARE AGREEMENT.  THERE IS NO OBJECTION TO ATTENDING
LEGAL ORIENTATION PROGRAMS AND/OR SIGNING A SPONSOR CARE
AGREEMENT SO LONG AS IT DOES NOT DELAY REUNIFICATION.  AND I
AGREE WITH THAT.

SO REUNIFICATION WOULD BE PRIMARY, AND THEN SIGNING
ON TO LEGAL ORIENTATION AND SPONSOR CARE AGREEMENTS CAN BE
DONE AT A LATER TIME, AFTER REUNIFICATION.

THE FINAL AREA IS WHERE A CHILD MAY PRESENT A DANGER
TO HIM OR HERSELF OR TO OTHERS.

THIS IS NOT A CONCERN FOR CHILDREN UNDER AGE FIVE,
IT IS A CONCERN FOR CHILDREN OVER AGE FIVE.  AND PROBABLY THE
TARGET GROUP HERE WOULD BE CHILDREN OVER AGE 12.  BUT I WOULD
INVITE THE PARTIES TO MEET AND CONFER ON THAT.

HERE AGAIN, IF THE GOVERNMENT HAS ARTICULABLE
REASONS OF A CHILD -- AND WHAT COMES TO MIND WOULD BE A
TEENAGER WHO PRESENTS A DANGER TO HIMSELF OR OTHERS.  THE
GOVERNMENT OUGHT TO BE FREE TO MAKE THOSE DETERMINATIONS,
PROPERLY SO, AND TO KEEP THAT CHILD IN SECURE CUSTODY, NOT BE
REUNIFIED.

BUT HERE AGAIN WHAT I WOULD EXPECT IS THE PARTIES
MEET AND CONFER.  THERE WOULD LIKELY BE AGREEMENT.  IF NOT,
THE PARTIES CAN BRING THE MATTER TO THE COURT'S ATTENTION.

JULY 10, 2018

1    AND AS FAR AS THE PROCESS, I WOULD LIKE THE PROCESS TO

2    CONTINUE, OF COURSE, AS EXPEDITIOUSLY AS IT HAS BEEN.  AND OF

3    COURSE WITH A PARAMOUNT FOCUS BEING ON THE CHILDREN'S WELFARE.

4    BUT THAT CAN BE DONE IN THE MANNER WHICH THE COURT HAS

5    ADDRESSED THESE ISSUES.

6            IT IS IMPORTANT THAT COUNSEL BE AVAILABLE FROM HERE

7    THROUGH THE REUNIFICATION PROCESS.  THE COURT WILL BE

8    AVAILABLE.  I WOULD LIKE TO CONTINUE TO HAVE REGULAR STATUS

9    REPORTS AND STATUS CONFERENCES.  AND I WOULD LIKE TO DO THAT

10   IN OPEN COURT.

11           IT DOESN'T HAVE TO BE YOU, MS. FABIAN, OR YOU, MR.

12   GELERNT, IT COULD BE SOME OF THESE ABLE BODIES NEXT TO YOU.

13   BUT I WOULD LIKE A PERSON IN COURT WHO CAN STAND UP AND MAKE

14   REPRESENTATIONS, AND OTHERS CAN PARTICIPATE TELEPHONICALLY.

15   BUT I WOULD LIKE TO DO THAT ON A REGULAR BASIS.

16           THERE IS A LOT OF WORK TO DO WITH RESPECT TO THE

17   OVER-FIVE GROUP.  AND I AM ANTICIPATING THAT A LOT OF THAT

18   WORK IS WELL UNDERWAY, AND IT WILL CONTINUE ALONG THE LINES

19   THAT WE HAVE SET OUT HERE WITH THE UNDER-FIVE GROUP.

20           WHAT I AM CONTEMPLATING IS THAT AS WE GO THROUGH

21   THIS PROCESS -- AND IT WOULD START WITH BOTH THE UNDER-FIVE

22   AND THEN THE OVER-FIVE GROUP -- IS WHERE THE PARTIES MEET AND

23   CONFER.  IF THERE IS SOME DISPUTE, YOU CAN SUBMIT BRIEFING UP

24   TO FIVE PAGES.  IT DOESN'T HAVE TO BE FANCY, IT CAN BE A

25   LETTER BRIEF.  IT CAN JUST GET RIGHT TO THE ISSUES SETTING OUT

JULY 10, 2018

THE PARTIES' BASIC POSITIONS.  I WOULD REQUEST A JOINT FILING

ON ANY DISPUTE, SO UP TO TEN PAGES TOTAL, FIVE AND FIVE.

AND THE COURT WOULD EITHER CONVENE A STATUS

CONFERENCE TELEPHONICALLY OR I WOULD SIMPLY RULE ON THE BRIEF

THAT IS SUBMITTED, AND WE CAN GO CASE BY CASE.

BUT I AM VERY OPTIMISTIC THAT THAT WILL BE SELDOMLY

USED.  THAT WOULD BE MY EXPECTATION.  EVERYONE IS ROWING IN

THE SAME DIRECTION HERE, AND IT IS JUST A MATTER OF, I THINK,

STREAMLINING THE PROCESS AND PROVIDING CLEAR DIRECTION AS TO

HOW THE GOVERNMENT WILL PROCEED.

I HAVE JUST A FEW FINAL COMMENTS, AND THEN WE CAN

ANSWER ANY QUESTIONS OR NEED FOR CLARIFICATION.

THERE ARE, DEPENDING ON HOW ONE COUNTS, EITHER 101

OR 102 IN THIS UNDER-FIVE GROUP.  BY MY COUNT, BASED ON

TODAY'S SUBMISSION, 75 OF THIS GROUP ARE ELIGIBLE FOR

REUNIFICATION.  63 ARE ELIGIBLE FOR REUNIFICATION TODAY.

14 PARENTS ARE NOT IN THE CLASS.  EIGHT HAVE

CRIMINAL HISTORY THAT PRECLUDES THEM, FIVE ARE NOT THE

PARENTS, AND ONE THE GOVERNMENT CLAIMS IT HAS CREDIBLE

EVIDENCE OF CHILD ABUSE AND IS THEREFORE A DANGER OR UNFIT AND

WOULD FALL OUTSIDE OF THE CLASS.  THAT'S 14.

THERE ARE 12 OTHERS THAT FALL -- WELL, THERE ARE TWO

OTHERS THAT PRESENTLY FALL OUT OF THE CLASS.  ONE IS

CHARACTERIZED AS PRESENTING A DANGER, ONE AS HAVING A

COMMUNICABLE DISEASE.  THE ONE WITH THE COMMUNICABLE DISEASE,

THE PARTIES RECOGNIZE WHEN THAT MATTER IS ADDRESSED, HOPEFULLY

SUCCESSFULLY FROM A MEDICAL STANDPOINT, THEN REUNIFICATION CAN

OCCUR AT AN APPROPRIATE TIME.

TEN MEMBERS OF THE CLASS ARE IN CRIMINAL CUSTODY,

STATE OR FEDERAL.  THEY ARE NOT ELIGIBLE FOR REUNIFICATION AT

THIS POINT IN TIME, BUT THEY WOULD BE ONCE THEY ARE RELEASED

TO ICE DETENTION.  SO THEY WOULD HAVE TO WAIT.

THERE ARE 12 THAT HAVE BEEN REMOVED.  THEY ARE PART

OF THE CLASS, THEY WOULD BE SUBJECT TO REUNIFICATION, BUT AT A

LATER TIME.  THAT REQUIRES A SEPARATE DISCUSSION, AND THERE

ARE MORE COMPLICATING ISSUES THAT HAVE TO BE ADDRESSED WITH

THOSE 12.  BUT THEY ARE PART OF THE CLASS AND THEY DO DESERVE

TO BE REUNITED, ABSENT THEIR CONSENT OTHERWISE.

SO THAT LEAVES 63.

THE GOVERNMENT HAS INDICATED -- AND TO RESTATE THIS.

OF THE GROUP OF 101 OR 102, 75 ARE SUBJECT TO BEING REUNITED.

12 OF THOSE ARE REMOVED AND WILL TAKE SOME TIME.

THERE ARE 63 THAT I WOULD LIKE TO FOCUS ON TODAY.

THE GOVERNMENT HAS INDICATED THAT 34 ARE READY, AND

THEY WILL BE REUNITED TODAY.

THERE ARE 17 OTHERS THAT ARE IN ICE DETENTION.  16

NEED CONFIRMATION OF PARENTAGE, AND ONE HAS CRIMINAL HISTORY

PENDING.

AND IT SEEMS TO ME WITH THE PROCEDURES SET OUT TODAY

THAT THOSE 17 CAN BE ADDRESSED AND REUNITED TODAY, OR WITHIN

JULY 10, 2018

1    THE IMMEDIATE PROXIMITY OF TODAY.

2            THERE ARE EIGHT THAT HAVE BEEN RELEASED FROM ICE,

3    AND IT SEEMS TO ME THAT THEY CAN BE REUNITED TODAY, AS WELL.

4            AND SO IN THAT REGARD WHAT I WOULD LIKE TO DO IS

5    MEET AGAIN THIS FRIDAY AT 1:00 O'CLOCK, WITH THE PARTIES TO

6    SUBMIT A STATUS REPORT THURSDAY BY 3:00 P.M., PACIFIC TIME,

7    GIVING AN UPDATE ON COMPLIANCE WITH THE UNDER-FIVE GROUP AND

8    GIVING A STATUS ON THE OVER-FIVE GROUP, WHICH IS -- THAT'S

9    GOING TO BE A SIGNIFICANT UNDERTAKING.  AND WE NEED TO HAVE

10   CONCRETE INFORMATION BY THURSDAY SO THAT MR. GELERNT AND

11   OTHERS CAN MAKE INTELLIGENT AND INFORMED DECISIONS AS TO

12   WHETHER THERE IS COMPLIANCE AND WHAT NEEDS TO BE DONE TO MAKE

13   REUNIFICATION HAPPEN.

14           WE NEED ANOTHER LIST OF THE OVER-FIVE GROUP.  THAT'S

15   GOING TO BE A SIGNIFICANT UNDERTAKING.  IT MAY BE AN

16   INDIVIDUAL LIST, IT MAY BE BY CATEGORY.  I WILL JUST SIMPLY

17   HAVE THE PARTIES MEET AND CONFER IN THAT REGARD.

18           IF THERE IS A FAILURE TO COMPLY WITH THE UNDER-FIVE

19   GROUP THEN, MR. GELERNT, WHAT I ASK THAT YOU DO IS PUT THAT IN

20   THE THURSDAY SUBMISSION AND WE CAN ADDRESS IT ON FRIDAY.  AND

21   IF YOU BELIEVE THERE IS A FAILURE TO COMPLY -- AND HERE I AM

22   REALLY FOCUSING ON THE 63.

23           **MR. GELERNT:**  RIGHT.

24           **THE COURT:**  IF THERE IS A FAILURE TO COMPLY I WOULD

25   LIKE TO KNOW WHAT IT IS AND WHAT YOU ARE SEEKING BY WAY OF

JULY 10, 2018

```
 1   REMEDY.
 2            AND WITH THAT, MR. GELERNT, DO YOU HAVE ANY
 3   QUESTIONS?
 4            MR. GELERNT:  I THINK THE GOVERNMENT MAY HAVE MORE
 5   QUESTIONS, YOUR HONOR.  THAT ALL SEEMS FINE TO US.  I THINK I
 6   HAD A COUPLE OF JUST CLARIFYING QUESTIONS.
 7            WHEN YOU WERE SAYING 101 OR 102 WAS THAT BECAUSE OF
 8   THE ONE CHILD WHO THEY HAVEN'T IDENTIFIED?
 9            THE COURT:  YES.  THANK YOU FOR MENTIONING THAT.
10            DO WE HAVE ANY -- THE INFORMATION YOU HAVE IS WHAT
11   THE GOVERNMENT PUT IN ITS LAST BRIEFING?
12            MR. GELERNT:  RIGHT.  AND WE ARE TRYING TO MOBILIZE
13   EVERYONE WE CAN JUST TO FIGURE IT OUT.
14            I DON'T KNOW IF THE GOVERNMENT HAS MORE INFORMATION
15   ABOUT THAT ONE CHILD THAT THEY GOT THIS MORNING THAT WE ARE
16   NOT AWARE OF.
17            THE COURT:  THERE WAS INFORMATION THAT THAT CHILD
18   MAY BE A U.S. CITIZEN.  IS THERE ANY ADDITIONAL INFORMATION?
19            MS. FABIAN:  MY UNDERSTANDING IS THE PARENT MAY BE A
20   U.S. CITIZEN AND THERE WAS A CRIMINAL HISTORY WITH THE PARENT.
21   BUT THAT -- BASED ON THAT IT MAY BE THAT THE CHILD IS ALSO A
22   U.S. CITIZEN.  SO THAT IS -- I THINK THE CLIENTS ARE LOOKING
23   INTO THAT.
24            SO IT MAY BE THAT THE PARENT IS NOT A CLASS MEMBER,
25   BUT IN ANY EVENT THEY ARE LOOKING INTO THE SITUATION WITH THE
```

```
 1   CHILD TO RESOLVE IT, EVEN OUTSIDE OF THIS LITIGATION.

 2          THE COURT:  IS THERE A LINK-UP; SO, IN OTHER WORDS,

 3   DO YOU KNOW WHO THE PARENT IS?

 4          MS. FABIAN:  YEAH.  I BELIEVE SO.  THAT THEY HAVE

 5   NOW IDENTIFIED THE PERSON THEY BELIEVE IS THE PARENT, AND THAT

 6   IS SORT OF -- THAT'S WHY WE WERE ABLE TO GIVE THE ADDITIONAL

 7   INFORMATION IN TODAY'S FILING.

 8          THE COURT:  SO ON THAT CHILD I WILL SIMPLY WAIT AND

 9   WE WILL ADDRESS IT ON FRIDAY.

10          MR. GELERNT:  THAT'S FINE, YOUR HONOR.

11          WE WOULD JUST ASK THAT YOU GIVE US AND LATEST

12   INFORMATION ON THAT, WHENEVER YOU HAVE IT.  OBVIOUSLY IF IT IS

13   A U.S. CITIZEN THEY SHOULD BE -- RIGHT.

14          MS. FABIAN:  SURE.  WE ARE LOOKING INTO THAT

15   SITUATION.  IT MAY NOT THEN BE INVOLVED IN THIS LITIGATION,

16   BUT BECAUSE WE ARE AWARE OF IT, OF COURSE WE WILL TRY TO

17   RESOLVE IT IN THE CORRECT WAY.

18          THE COURT:  YES.

19          MS. FABIAN:  AND IF THE CHILD IS A U.S. CITIZEN THEY

20   ARE NOT ELIGIBLE TO STAY IN O.R.R. CUSTODY SO THEY -- WE WOULD

21   DO THE PROPER PROCEDURE FOR A RELEASE.

22          THE COURT:  MS. FABIAN, ANY QUESTIONS ABOUT WHAT WE

23   HAVE COVERED?

24          MS. FABIAN:  I HAVE A COUPLE OF QUESTIONS.

25          THE COURT:  YES.
```

JULY 10, 2018

20

1          MS. FABIAN:  AND THEN MR. STEWART DOES -- WE HAVE

2   ONE ISSUE THAT WE WANTED TO RAISE TO THE COURT TODAY THAT HAS

3   COME UP IN LIGHT OF JUDGE GEE'S RULING IN THE FLORES CASE, SO

4   MR. STEWART WILL SPEAK TO THAT.

5          THE COURT:  YES.

6          MS. FABIAN:  BUT I WANTED TO RAISE A COUPLE OF

7   ISSUES JUST TO MAKE SURE THAT I AM UNDERSTANDING THE COURT'S

8   RULING.

9          THE DNA, YOUR HONOR HAD NOTED THAT IT SHOULD BE

10  CONDUCTED WHEN NECESSARY.  BASED ON THE DEADLINE OF TODAY, YOU

11  HAD ALSO EXPRESSED THAT IT COULD BE -- IT WOULD BE PERMISSIBLE

12  WHEN NECESSARY TO MEET THE DEADLINE.

13         FOR THE 16 WHO ARE STILL PENDING DNA THEY HAVE -- IT

14  IS MY UNDERSTANDING THAT THEY HAVE IN FACT BEEN TESTED BUT THE

15  TEST RESULTS HAVE NOT BEEN RECEIVED.

16         SO THE QUESTION -- I WANT TO CLARIFY THAT I

17  EXPECT -- SOME OF THOSE HAVE COME IN OVER THE COURSE OF THE

18  MORNING AND FOLKS HAVE MOVED INTO THE RELEASE-TODAY GROUP.  MY

19  EXPECTATION WOULD BE THAT WE WOULD CONTINUE TO DO THAT AS

20  THOSE RESULTS COME IN.  ASSUMING THAT THEY ARE POSITIVE, THAT

21  THEY WOULD MOVE INTO THAT GROUP.  THAT MIGHT BE TODAY, IT

22  MIGHT BE TOMORROW.  I WANTED TO CONFIRM THAT THAT IS

23  CONSISTENT WITH YOUR HONOR'S RULING TODAY.

24         THE COURT:  I AM ASSUMING THOSE ARE RELATIVELY

25  STRAIGHTFORWARD, SIMPLE TESTS, THAT THEY CAN BE PROVIDED OVER

1   TO THE GOVERNMENT AND DETERMINATIONS CAN BE MADE TODAY.  IF

2   THEY ARE PARENTS AND ALL OF THE OTHER CRITERIA ARE MET, THEN I

3   WOULD EXPECT REUNIFICATION TODAY.

4          IF THERE IS A FAILURE, THEN IT WOULD NEED TO BE

5   ADDRESSED IN THE THURSDAY STATUS REPORT.  AND, OF COURSE, WHAT

6   I AM LOOKING FOR IS GOOD FAITH, LEGITIMATE, ARTICULABLE

7   REASONS FOR ANY FAILURE TO COMPLY.  AND SO THAT'S WHAT I WOULD

8   BE SEEKING.

9          **MS. FABIAN:**  AND IT IS MY UNDERSTANDING THERE IS

10  JUST SORT OF A TIME PERIOD BETWEEN WHEN THE SWABS ARE TAKEN

11  AND THEY ARE SENT TO THE COMPANY DOING THE TESTS.

12         **THE COURT:**  YES.

13         **MS. FABIAN:**  AND RECEIVING THE RESULTS.  SO WE HAVE

14  NOT RECEIVED RESULTS FOR THOSE 16.

15         **THE COURT:**  THEY NEED TO RESPOND.  SO THIS IS NOT AN

16  INVITATION FOR THEM TO TAKE TIME DOING THE SWAB, THEY CAN DO

17  IT, THEY CAN DO IT QUICKLY.

18         SO THEY NEED TO BE -- AND I AM SURE THEY ARE AWARE

19  OF THE DEADLINE.  SO I WOULD EXPECT THAT THESE TESTS WILL BE

20  PROVIDED TODAY; AND, IF NOT, THEN OF COURSE I WILL KEEP AN

21  OPEN MIND AS TO WHAT THE EXPLANATION IS.

22         **MS. FABIAN:**  OKAY.  I WILL FIND OUT WHAT THE DELAY

23  IS.

24         I GUESS THE CORE QUESTION IS, IF THEY ARE NOT

25  RECEIVED TODAY IS YOUR HONOR ORDERING THAT THOSE CHILDREN BE

JULY 10, 2018

1  RELEASED, REGARDLESS OF RECEIVING THOSE RESULTS TODAY, OR

2  WOULD YOU PREFER WAIT PENDING RESULTS BUT GIVE YOU AN

3  EXPLANATION FOR THAT DELAY?

4       **THE COURT:**  YES.  BECAUSE THE IMPORTANT THING IS NOT

5  TO LOSE SIGHT OF THE CRITERIA, AND I THINK THE CRITERIA ARE

6  VERY CLEAR, THEY ARE OBJECTIVE, AND THEY HAVE BEEN IN PLACE

7  SINCE THE INJUNCTION WAS ISSUED, ABOUT PARENTAGE, FITNESS,

8  DANGER.  THOSE CATEGORIES I THINK ARE CLEAR.

9       **MS. FABIAN:**  UNDERSTOOD, YOUR HONOR.

10      **MR. GELERNT:**  YOUR HONOR, COULD I JUST ADDRESS THAT?

11      **THE COURT:**  YES.

12      **MR. GELERNT:**  THE ONE THING WE WOULD ASK IS IT

13 SOUNDS -- I AM NOT SURE BUT COUNSEL FOR GOVERNMENT MAY BE

14 SUGGESTING THAT THEY ARE NOT GOING TO GET ALL OF THE DNA TESTS

15 TODAY AND I DON'T -- OR AT LEAST IS NOT ABLE TO PROMISE THAT

16 HERE NOW.

17      THE ONE THING I WOULD SAY IS, YOUR HONOR HAS MADE

18 CLEAR THAT DNA TESTING DOESN'T NEED TO BE DONE IN EVERY CASE,

19 IT SHOULD BE DONE WHEN NECESSARY.  SO IF THOSE 16 KIDS, THOSE

20 PARENTS HAD SUBMITTED BIRTH CERTIFICATES AND OTHER

21 DOCUMENTATION, THEN I WOULD SUGGEST THAT THOSE KIDS CAN BE

22 RELEASED.  BECAUSE THE GOVERNMENT IS DOING THE DNA TEST, NOW

23 THE COURT HAS SAID THOSE AREN'T NECESSARY IN EVERY CASE.  IF

24 YOU HAVE DOCUMENTATION THAT THE PARENT IS THE PARENT AND THERE

25 IS ALSO -- THE CASE MANAGER WITH THE KID WILL LIKELY HAVE SOME

JULY 10, 2018

23

1   SENSE OF IT, AS WELL.

2          WE WOULD ASK THAT IT NOT BE DELAYED IF THE 16 DNA

3   VERIFICATIONS DON'T COME IN TODAY IF YOU HAVE OTHER WAYS OF

4   VERIFYING THE PARENTAGE.

5          **THE COURT:**  I AGREE.

6          **MS. FABIAN:**  I AGREE WITH THAT AS WELL, YOUR HONOR.

7   AND I SHOULD HAVE SAID THAT.  I BELIEVE THAT THAT IS ANOTHER

8   PROCESS THAT IS ONGOING TODAY.

9          SO WHAT I UNDERSTAND IS, IF THERE IS NOT OTHER

10  DOCUMENTATION AND NO RECEIPT OF DNA, THAT WE SHOULD WAIT UNTIL

11  COMPLETION OF THAT PROCESS EVEN IF THAT BRINGS US TO TOMORROW,

12  BUT PROVIDE A DETAILED EXPLANATION TO THE COURT AND TO

13  PLAINTIFFS AS TO WHY THAT WAS.

14         **MR. GELERNT:**  I WAS JUST GOING TO SAY I DON'T --

15  THIS MAY BE JUST MORE OF A QUESTION FOR THE GOVERNMENT.

16         IS THE GOVERNMENT USING ONE DNA SERVICE?  BECAUSE I

17  KNOW THAT THERE ARE A LOT OF DNA SERVICES WHO ARE REACHING OUT

18  AND SAYING THEY WILL DO THIS, THEY WILL DO IT PRO BONO.

19         IF THINGS ARE GETTING BOTTLED-NECKED BECAUSE THERE

20  IS ONLY ONE DNA SERVICE THE GOVERNMENT IS USING, THAT WOULD

21  ALSO BE SOMETHING I WOULD LIKE TO RAISE.

22         IT MAY BE NOT AN ISSUE GOING FORWARD BECAUSE THE

23  COURT HAS SAID ONLY USE DNA WHEN NECESSARY IF THERE IS NO

24  OTHER VERIFICATION PROCESS THAT CAN BE -- THAT CAN BE USED.

25  BUT EVEN IF FOR NOW, I JUST DON'T KNOW WHETHER THERE IS A

```
 1   BOTTLE-NECK OF ONE.

 2           THAT IS MORE A QUESTION OF GOVERNMENT COUNSEL.

 3           THE COURT:  ON THAT ISSUE, I WILL LET YOU MEET AND

 4   CONFER.

 5           MR. GELERNT:  OKAY.

 6           THE COURT:  WE ARE DEEP IN THE WEEDS, BUT I DON'T

 7   WANT TO GO THAT DEEP.  SO YOU CAN WORK A LOT OF THOSE ISSUES

 8   OUT WITH COUNSEL.

 9           MS. FABIAN:  I AGREE, YOUR HONOR.

10           THE ONE OTHER CLARIFICATION POINT I WANTED TO MAKE,

11   AND I THINK I KNOW THE ANSWER BUT I WANT TO BE SURE.

12           THERE WAS -- YOUR HONOR HAD SAID THAT THE PROCESS OF

13   REVIEW OF HOUSEHOLD MEMBERS IS A PROCESS THAT YOUR HONOR FEELS

14   IS NOT NECESSARY UNDER THE REQUIREMENTS OF THE ORDER.

15           ONE OF THE INDIVIDUALS THAT WE HAD IDENTIFIED,

16   BECAUSE THEY WERE ALREADY IN THE REUNIFICATION PROCESS, THE

17   HOUSEHOLD MEMBER WAS DETERMINED TO HAVE A BACKGROUND OF

18   SERIOUS SEXUAL ABUSE.  AND I THINK YOU WILL SEE THAT THAT

19   PERSON IS NOW ON THE LIST AS NOT ELIGIBLE FOR REUNIFICATION

20   BECAUSE THAT WAS AN IDENTIFIED DANGER.

21           DOES YOUR HONOR -- SHOULD WE MOVE THAT PERSON INTO

22   THE CATEGORY FOR RELEASE BECAUSE THAT WAS IDENTIFIED THROUGH

23   THE PROCEDURE THAT IS BEING REMOVED, OR IS IT ACCEPTABLE TO

24   LEAVE THEM IN THIS CATEGORY SINCE WE HAVE AT THIS TIME

25   IDENTIFIED THAT AS A POTENTIAL DANGER?
```

JULY 10, 2018

1    **THE COURT:** I THINK BECAUSE IT HAS BEEN IDENTIFIED

2    AS A POTENTIAL DANGER THAT THAT PERSON WOULD -- THE

3    REUNIFICATION WOULD NOT GO FORWARD ABSENT A DIFFERENT

4    PLACEMENT.

5          BUT THAT WOULD BE AN ISSUE -- THAT IS THE KIND OF

6    ISSUE THAT I WOULD LIKE THE PARTIES TO MEET AND CONFER, AND

7    THEN IF THERE IS DISAGREEMENT TO RAISE IT WITH THE COURT.

8          BUT FOR PURPOSES OF THE DEADLINE TODAY, THAT PERSON

9    WOULD NOT FALL WITHIN THE REUNIFICATION GROUP BECAUSE THE

10   GOVERNMENT HAS MADE A PROFFER THAT THERE IS A DANGER TO THE

11   CHILD, AND SO IT WOULD NOT FALL WITHIN THE REUNIFICATION

12   CATEGORY.

13   **MR. GELERNT:** YOUR HONOR, I THINK THAT IS SOMETHING

14   WHERE WE CAN MEET AND CONFER BECAUSE IF THE INFORMATION IS

15   WRONG ABOUT THE HOUSEHOLD MEMBER WE WOULD WANT TO TELL YOU.

16   IF THE INFORMATION IS CORRECT, WE WOULD WANT TO TAKE STEPS TO

17   GET THAT MOTHER AND CHILD OUT.

18   **THE COURT:** RIGHT.

19   **MR. GELERNT:** SO THAT IS SOMETHING I HOPE THAT WE

20   CAN CONFER ABOUT TODAY AND TRY AND CLEAR THAT UP. AND IF IT

21   TURNS OUT THE INFORMATION IS CORRECT WE WILL TAKE STEPS TO GET

22   THAT MOTHER AND CHILD OUT.

23   **THE COURT:** BETWEEN THE TWO, THERE IS ENORMOUS

24   RESOURCES, WITH THE GOVERNMENT, AND MR. GELERNT HAS MARSHALED

25   AN ARMY OF NGO'S, FAITH-BASED GROUPS, CITIZENS ALL OVER THE

JULY 10, 2018

1  COUNTRY WHO WANT TO HELP OUT.  AND SO MUCH OF THIS CAN BE

2  WORKED OUT THROUGH A MEET-AND-CONFER PROCESS.

3          THE GOAL, OF COURSE, IS TIMELY AND SAFE

4  REUNIFICATION.  AND BETWEEN THE TWO PARTIES IT SEEMS TO ME

5  THAT THAT CAN HAPPEN, ON TIME AND IN THE SPIRIT OF THE COURT'S

6  ORDER.

7          **MR. GELERNT:**  YES, YOUR HONOR.

8          **MS. FABIAN:**  I DON'T HAVE ANY OTHER REQUESTS FOR

9  CLARIFICATION, EXCEPT THAT I NOTE THAT THE PARTIES DID HAVE A

10  QUESTION ABOUT THE TIME FRAMES FOR REMOVED PARENTS.  I DON'T

11  -- THAT MAY NOT BE AN ISSUE TODAY SO MAYBE IT IS ONE THAT WE

12  ADDRESS IN FUTURE STATUS CONFERENCES WHEN WE HAVE REAL

13  EXAMPLES.

14          **THE COURT:**  YES.  THAT IS AN ISSUE THAT HAS SOME

15  COMPLEXITY TO IT, AND I THINK BOTH SIDES INDICATED YOU WOULD

16  LIKE ADDITIONAL TIME TO CONSIDER IT.  I WOULD ALSO, WITH THE

17  BENEFIT OF MORE INFORMATION, BRIEFING ON THAT.

18          **MR. GELERNT:**  IS THAT SOMETHING WE COULD PUT IN THE

19  THURSDAY SUBMISSION?

20          **THE COURT:**  YES.

21          **MR. GELERNT:**  SO WE COULD CONFER ABOUT THAT.  I

22  THINK WE ARE -- I THINK NEED TO FIGURE OUT HOW MUCH TIME THE

23  GOVERNMENT NEEDS ONCE THE PERSON IS FOUND.  WE OBVIOUSLY CAN'T

24  PUT A DEADLINE ON FINDING THE PERSON WHO HAS BEEN REMOVED, BUT

25  WE MIGHT BE ABLE TO TRY TO PUT A DEADLINE ON ONCE THE PARENT

1  IS FOUND THEN HOW MUCH TIME SHOULD THERE BE TO REUNIFY.

2          **THE COURT:** YES.

3          **MR. GELERNT:** SO THAT IS WHAT WE WOULD TRY AND DO.

4          **THE COURT:** THIS IS GOING TO BE A BIG ISSUE, IT

5  APPEARS, BECAUSE IF WE HAVE 12 OUT OF 101 OR 102, WHEN WE LOOK

6  AT THE NEXT 28, 2900 INDIVIDUALS I AM ASSUMING THERE IS GOING

7  TO BE A COMMENSURATE NUMBER OF PARENTS WHO HAVE BEEN REMOVED.

8          **MR. GELERNT:** RIGHT.

9          **THE COURT:** SO IT IS ONE THAT I WOULD LIKE THE

10 PARTIES TO CONSIDER CAREFULLY.

11         **MR. GELERNT:** RIGHT.

12         **THE COURT:** AND WE CAN ADDRESS THAT AT THE NEXT

13 STATUS CONFERENCE.

14         **MS. FABIAN:** I THINK AN IMPORTANT ISSUE ON THAT WILL

15 BE THAT THE CHILDREN MAY BE IN THEIR OWN PROCEEDINGS AT THAT

16 TIME, AND THERE WOULD BE ADDITIONAL WAIVERS OF THE PARENTS TO

17 REMOVE THEM FROM THOSE PROCEEDINGS AND HAVE THOSE CLOSED.

18         AND SOME OF THEM MAY EVEN HAVE -- BECAUSE SOME OF

19 THESE REMOVALS MAY BE ONES THAT OCCURRED ACTUALLY SOME LENGTH

20 OF TIME AGO, AND SO SOME OF THOSE PARENTS -- OR SOME OF THOSE

21 CHILDREN MAY HAVE OBTAINED STATUS. AND IT WOULD BE OUTSIDE OF

22 THE GOVERNMENT'S ABILITY TO THEN REMOVE THEM FROM THE UNITED

23 STATES.

24         THERE ARE ISSUES LIKE THOSE. BUT I THINK IT IS

25 IMPORTANT -- I THINK IF WE CAN IDENTIFY SOME OF THOSE WITH

```
 1   REGARD TO REAL SITUATIONS WE CAN BETTER TEE THEM UP FOR THE
 2   JUDGE -- FOR THE COURT TO DECIDE.
 3             MR. GELERNT:  THAT SEEMS RIGHT TO ME, YOUR HONOR.
 4             I KNOW THAT YOUR CO-COUNSEL WANTS TO RAISE SOMETHING
 5   ABOUT THE FLORES ISSUE.
 6             BUT I WAS GOING TO RAISE TWO OTHER QUICK POINTS IF
 7   THAT IS OKAY, YOUR HONOR.
 8             THE COURT:  YES.
 9             MR. GELERNT:  ONE IS WE WERE SEEKING CLARIFICATION
10   FROM THE GOVERNMENT, I THINK, ON WHETHER A PARENT ONLY MEANS
11   BIOLOGICAL PARENT.  I MEAN, SOMETIMES A PARENT MAY NOT EVEN
12   KNOW THEY ARE NOT THE BIOLOGICAL PARENT, BUT OTHER TIMES IT
13   MAY BE THAT THEY HAVE BEEN RAISING THE PARENT -- THE CHILD
14   SINCE THEY ARE TWO MONTHS THROUGH ADOPTION OR SOMETHING.
15             AND SO I -- WHEN THE GOVERNMENT SAYS THEY ARE NOT
16   THE PARENT DOES THAT MEAN THEY ARE NOT THE BIOLOGICAL PARENT
17   OR THEY DON'T -- THEY ARE NOT EVEN A PARENT STATUS?
18             MS. FABIAN:  THIS IS THE FIRST I AM HEARING THIS
19   QUESTION SO I WILL ANSWER FROM WHAT I KNOW, AND CAN LOOK INTO
20   IT MORE.
21             IN THE SITUATIONS THAT I IDENTIFIED YESTERDAY, I
22   BELIEVE AT LEAST ONE, IT TURNED OUT, WAS THE GRANDMOTHER.  AND
23   ANOTHER -- THE INDIVIDUAL ADMITTED PRIOR TO DNA TESTING THAT
24   HE WAS NOT THE PARENT.
25             SO IT IS NOT -- WE WOULD AGREE THAT AN ADOPTIVE
```

JULY 10, 2018

```
1    PARENT WOULD -- WITH THE PROPER DOCUMENTATION, LEGAL

2    DOCUMENTATION, WOULD BE A PARENT.

3            THAT'S THE TYPE OF SITUATION WHERE DNA TESTING WOULD

4    NOT BE USEFUL AND THAT PAPERWORK WOULD BE NECESSARY, AND THAT

5    MIGHT TAKE SOME TIME TO GET THE PROPER PAPERWORK FROM THE

6    CONSULATES.

7            MR. GELERNT:   THAT IS HELPFUL.   I APOLOGIZE.   I WAS

8    NOT MEANING FOR YOU TO HAVE TO TELL ME FOR EACH PARENT SO FAR

9    WHETHER THEY WERE BIOLOGICAL, JUST WHAT THE GOVERNMENT'S

10   POSITION WAS GOING FORWARD.   AND IT SOUNDS LIKE WE ARE IN

11   AGREEMENT THAT, IF THERE IS AN ADOPTIVE PARENT, DNA WOULDN'T

12   PROVE THAT BUT IF THEY HAD LEGAL PAPERS SHOWING THEY WERE THE

13   ADOPTIVE PARENT WE WOULD CONSIDER THEM A PARENT WITHIN THE

14   CLASS.

15           SO THAT IS HELPFUL.   THANK YOU.

16           MS. FABIAN:   I THINK LEGAL STATUS AS A PARENT WOULD

17   BE RECOGNIZED IN THIS CONTEXT.   OBVIOUSLY WITH QUESTIONS OF

18   SOME INTERNATIONAL LAW THAT MAY HAVE TO BE WORKED OUT WITH

19   CONSULATES, BUT THAT IS NOT -- WE DON'T DISPUTE THAT LEGAL

20   PARENTAGE APPLIES HERE.

21           MR. GELERNT:   THEN THE ONLY OTHER QUESTION I WAS

22   GOING TO RAISE, YOUR HONOR, IS I THINK ONE THAT YOU TOUCHED

23   ON, IS THAT THERE HAVE BEEN THE 12 PARENTS WHO HAVE BEEN

24   REMOVED, AND THERE ARE ADDITIONAL PARENTS THAT HAVE BEEN

25   REMOVED FOR THE OVER-FIVE AND ARE STILL BEING REMOVED.
```

JULY 10, 2018

```
 1              I BELIEVE THE GOVERNMENT HAS VERIFIED THIS, BUT THE

 2    MEDIA IS REPORTING THAT THERE ARE GOING TO BE A NUMBER OF

 3    GUATEMALAN PARENTS WITH THEIR CHILDREN REMOVED TODAY, AND THEY

 4    APPEAR TO BE CLASS MEMBERS.  WE ARE NOT SURE, WE DON'T HAVE

 5    THE LIST YET OF THE FIVE AND OVER.

 6              WE ARE VERY CONCERNED THAT ANYBODY WHO HAS AGREED TO

 7    REMOVAL BEFORE THIS NOTICE HAS GOTTEN -- AND NOW THAT YOUR

 8    HONOR HAS SIGNED OFF ON THE NOTICE I AM HOPEFUL THAT WE CAN

 9    GET IT OUT TODAY TO THE DETENTION CENTERS.

10              BUT THE FORM THE GOVERNMENT HAD BEEN USING

11    PREVIOUSLY, IN OUR VIEW, WAS MISLEADING AND MAY HAVE SUGGESTED

12    TO THE PARENTS THE ONLY WAY TO GET YOUR CHILD BACK IS TO WAIVE

13    YOUR RIGHT TO CONTEST REMOVAL.

14              NOW, MANY OF THOSE PARENTS MAY HAVE KNOWINGLY WAIVED

15    IT AND HAD NO CLAIMS, BUT MANY OTHERS MAY HAVE HAD A SHOT AT

16    ASYLUM OR SOME OTHER CLAIM.

17              AND SO, YOU KNOW, FOR THE ONES WHO HAVE BEEN REMOVED

18    WE ARE GOING TO HAVE TO CONTACT THEM.  BUT WE WOULD ASK THAT

19    NO FURTHER REMOVALS OF CLASS MEMBERS OCCUR UNTIL THEY HAVE

20    BEEN ABLE TO SIGN THE NEW NOTICE THAT MAKES IT VERY CLEAR THAT

21    YOUR HONOR'S RULING DIDN'T MAKE GETTING YOUR CHILD BACK

22    CONTINGENT UPON WAIVING YOUR RIGHT TO CONTEST REMOVAL OR APPLY

23    FOR ASYLUM.

24              THE COURT:  ISN'T THAT ALREADY IN PLACE?  BECAUSE

25    THERE IS A CLASS DEFINITION, THERE IS AN INJUNCTION IN PLACE,
```

JULY 10, 2018

31

1    DOESN'T THAT COVER THIS SITUATION?

2            **MR. GELERNT:**  WELL, IT DOES, YOUR HONOR, EXCEPT THAT

3    I DON'T KNOW THAT THE CLASS MEMBERS ON THE GROUND UNDERSTAND

4    ALL OF THEIR RIGHTS.  AND THAT IS WHY WE THINK IT IS CRITICAL

5    TO GET THEM NOTICE THAT HAS IT IN VERY PLAIN LANGUAGE YOU MAY

6    GET YOUR CHILD BACK, UNDER YOUR HONOR'S RULING, AND IT DOES

7    NOT MEAN YOU HAVE TO AGREE TO REMOVAL.

8            WE BELIEVE THE FORM THAT THE GOVERNMENT WAS USING UP

9    UNTIL NOW, SINCE THE RULING, AND MAYBE EVEN A LITTLE BIT

10   BEFORE, DIDN'T MAKE IT CRYSTAL CLEAR, BY ANY MEANS, THAT YOU

11   COULD CONTINUE TO SEEK ASYLUM OR CONTEST YOUR REMOVAL AND

12   STILL HAVE YOUR CHILD BACK.

13           SO THAT IS OUR CONCERN IS THAT GOING FORWARD WE

14   THINK IT IS GOING TO BE FINE BECAUSE THE NOTICE IS CLEAR, IT

15   HAS BOXES TO CHECK AND IT IS IN VERY CLEAR AND SIMPLE

16   LANGUAGE.  BUT I THINK IT IS THE INDIVIDUALS WHO HAVE NOW

17   AGREED TO REMOVAL -- GOTTEN THEIR CHILD BACK AND AGREED TO

18   REMOVAL THAT WE ARE CONCERNED WITH.

19           SO I THINK IF THE GOVERNMENT CAN GO BACK AND GIVE

20   THEM THE NEW NOTICE AND HAVE THEM SIGN THE NEW NOTICE RATHER

21   THAN RELYING ON THE OLD GOVERNMENT FORM, THAT IS WHAT WE WOULD

22   BE ASKING OF YOUR HONOR.

23           **THE COURT:**  DO YOU OBJECT?

24           **MS. FABIAN:**  I DO OBJECT, YOUR HONOR.  THE NOTICE

25   THAT -- THE GOVERNMENT DID CREATE A NOTICE IMMEDIATELY

```
1    FOLLOWING YOUR HONOR'S ORDER.  I KNOW THAT PLAINTIFFS BELIEVE
2    IT IS UNCLEAR, WE DISAGREE BUT WE WERE WILLING TO WORK UP A
3    FORM THAT WAS -- THAT WORKED FOR THEM.  AND SO WE DID WORK
4    TOGETHER ON THAT NOTICE THAT YOUR HONOR APPROVED TODAY.
5         THE FORM -- THE INDIVIDUALS, I THINK, THAT ARE BEING
6    REFERENCED -- AND I CAN'T -- I DON'T HAVE THE NUMBERS IF CLASS
7    MEMBERS HAVE BEEN REMOVED SO FAR OR REALLY WHERE THEY ARE.  WE
8    WILL LEARN MORE ABOUT THAT AS WE -- I WILL LEARN MORE ABOUT
9    THAT AS WE COMPILE INFORMATION AND SHARE INFORMATION ABOUT THE
10   REST OF THE CLASS.
11        BUT THE INDIVIDUALS SCHEDULED FOR REMOVAL TODAY ALL
12   HAVE FINAL ORDERS OF REMOVAL.  SOME WERE OBTAINED BEFORE AN
13   IMMIGRATION JUDGE, SOME ARE EXPEDITED REMOVAL ORDERS.  NONE OF
14   THEM CLAIMED FEAR, AND SO THEY ARE PROPERLY SUBJECT TO
15   REMOVAL.  THEY DON'T HAVE AVENUES FOR -- TO CONTEST THAT
16   REMOVAL.  THEY ALL REQUESTED TO BE REMOVED WITH THEIR CHILD
17   AND SIGNED A FORM REQUESTING TO BE REMOVED WITH THEIR CHILD.
18   AND THEREFORE THE REMOVALS THAT I UNDERSTAND, AT LEAST AS OF
19   YESTERDAY WERE SCHEDULED FOR TODAY, ARE ALL FINAL ORDER
20   INDIVIDUALS WHO REQUESTED TO BE REMOVED WITH THEIR CHILD.  AND
21   THAT IS IN ACCORDANCE WITH THE COURT'S INJUNCTION.
22        **MR. GELERNT:**  YOUR HONOR, AND WE HAVE NO REASON,
23   OBVIOUSLY, TO DISPUTE, AND WE HAVE NO BASIS.  YOU KNOW, IT MAY
24   BE TRUE THAT THEY ALL SIGNED THE FORM, I THINK THE DISPUTE IS
25   WHETHER THE FORM WAS MISLEADING.
```

JULY 10, 2018

1          THE OTHER THING I WOULD JUST NOTE, WHEN THE

2     GOVERNMENT SAYS THERE IS A FINAL ORDER, I THINK THEY ARE

3     MEANING THERE IS AN ADMINISTRATIVELY FINAL ORDER.  IT DOESN'T

4     MEAN ALL AVENUES FOR CHALLENGING REMOVAL ARE GONE, BECAUSE YOU

5     COULD GO TO FEDERAL COURT TO CHALLENGE YOUR REMOVAL ORDER TO

6     THE EXTENT THOSE AVENUES ARE POSSIBLE.  YOU COULD SEEK

7     RECONSIDERATION FROM THE AGENCY.

8          SO I THINK THE FACT -- AND IT MAY BE THAT ALL 13 OF

9     THOSE WHEN THEY GET THE NEW NOTICE WILL SAY -- IF THESE

10    REMOVALS HAVE ALREADY OCCURRED THIS MORNING THEY HAVE

11    OCCURRED, BUT TOMORROW BEFORE THE NOTICE, I MEAN, THERE IS NO

12    REASON TO RELY ON THE OLD FORMS NOW THAT THE NEW NOTICE IS

13    THERE.

14         IF THE PARENTS GENUINELY WANT TO BE REMOVED AND KNEW

15    WHAT THEY WERE DOING THEY ARE JUST SIMPLY GOING TO CHECK THE

16    NEW NOTICE FORM BOX.  SO I DON'T THINK THERE IS GOING TO BE

17    ANY PREJUDICE TO THE GOVERNMENT.

18         **THE COURT:**  HOW MANY PARENTS, DO YOU KNOW, ARE

19    SCHEDULED TO BE REMOVED TODAY?

20         **MR. GELERNT:**  THE MEDIA IS REPORTING 13 GUATEMALAN

21    FAMILIES WITH THEIR CHILDREN.  WE HAVE NO INDEPENDENT

22    VERIFICATION OF THAT.  I THINK WE WERE GOING TO MAYBE TRY TO

23    REACH OUT TO THE GUATEMALAN CONSULATE.

24         **THE COURT:**  IS IT YOUR REPRESENTATION THAT YOU

25    BELIEVE THESE 13, WHATEVER THE NUMBER IS, ARE CLASS MEMBERS,

JULY 10, 2018

34

1   AND YOU WOULD LIKE THEM NOT TO BE REMOVED UNTIL THEY HAVE SEEN

2   THE CLASS NOTICE AND AGREED.

3           **MR. GELERNT:**  YOUR HONOR, I WANT TO BE CLEAR.  WE

4   HAVE NO BASIS FOR KNOWING IF THEY ARE ALL 13 CLASS MEMBERS OR

5   NOT BECAUSE WE HAVE NO INFORMATION.  I AM ASSUMING THAT THEY

6   PROBABLY ARE GIVEN THE TIMING AND THEY JUST RECEIVED THEIR

7   CHILDREN.

8           IF THE GOVERNMENT KNOWS THAT THE 13 ARE NOT CLASS

9   MEMBERS, FOR WHATEVER REASON, EITHER CRIMINAL CONVICTIONS OR

10  THEY WERE NOT PARENTS WHO HAD THEIR CHILDREN TAKEN AWAY FROM

11  THEM, THEN THAT WOULD -- WE WOULD, YOU KNOW, ACCEPT THAT

12  REPRESENTATION.

13          BUT IF THEY ARE CLASS MEMBERS AND IF THEY HAVEN'T

14  BEEN REMOVED WE WOULD ASK THAT THEY BE GIVEN THE NOTICE BEFORE

15  THEY ARE REMOVED.

16          **THE COURT:**  ON THAT ISSUE, I WOULD DECLINE TO ISSUE

17  ANY ORDER.  AS I UNDERSTAND IT, YOU ARE ASKING ME TO RULE FROM

18  THE BENCH AND ISSUE AN INJUNCTION WHERE THE GOVERNMENT WOULD

19  BE PRECLUDED FROM REMOVING THOSE 13 INDIVIDUALS, AND I AM NOT

20  PREPARED TO DO THAT UNLESS THERE IS A REPRESENTATION THAT

21  THESE ARE CLASS MEMBERS.

22          **MR. GELERNT:**  OKAY.  YOUR HONOR, THEN, NO, I

23  UNDERSTAND.  AND I CANNOT, IN GOOD FAITH, MAKE THAT

24  REPRESENTATION BECAUSE I AM RELYING IN SIGNIFICANT PART ON THE

25  MEDIA.  IF THE GOVERNMENT, YOU KNOW, WERE TO TELL US RIGHT NOW

JULY 10, 2018

```
 1   THAT SOME OF THEM ARE CLASS MEMBERS, THAT MIGHT BE DIFFERENT.

 2            BUT I THINK THAT THERE COULD BE REMOVALS TOMORROW OR

 3   THE NEXT DAY WHERE EVEN THOUGH YOU HAVE SIGNED OFF ON THE

 4   NOTICE TODAY THE GOVERNMENT IS STILL RELYING ON THE SIGNATURE

 5   FOR AN OLD FORM.  AND THOSE SEEM LIKE NOW THE PERSON COULD BE

 6   ASKED TO SIGN THE NEW FORM BEFORE THE REMOVAL TAKES PLACE,

 7   GOING FORWARD.

 8            MS. FABIAN:  I AM HAPPY TO AGREE TO GET THAT FORM

 9   OUT AS QUICKLY AS POSSIBLE.

10            THE COURT:  YES.

11            AND THIS, OF COURSE, DOESN'T PRECLUDE THE GOVERNMENT

12   FROM ELECTING NOT TO REMOVE THESE 13 PARENTS TODAY.  IF THERE

13   IS ANY DOUBT, THE GOVERNMENT MAY EXERCISE DISCRETION AND HOLD

14   THE FLIGHTS OR WHATEVER THE TRANSPORTATION METHOD IS PENDING

15   FURTHER CLARIFICATION.

16            BUT SO WE ARE CLEAR, I WOULD DECLINE THE INVITATION

17   TO ISSUE AN INJUNCTION AS TO THOSE 13 OR SO INDIVIDUALS.

18            THERE WAS -- I THINK THERE WAS GOING TO BE SOME

19   DISCUSSION ON THE JUDGE GEE IN FLORES.

20            MR. STEWART:  YES.  THANK YOU, YOUR HONOR.

21            I AM SCOTT STEWART IN FROM DC, YOUR HONOR.

22            THE COURT:  YES.

23            MR. STEWART:  I AM WITH THE MAIN JUSTICE DEPARTMENT,

24   I HEAD THE OFFICE OF IMMIGRATION LITIGATION.  I AM VERY GLAD

25   TO BE HERE ON BEHALF OF THE CIVIL DIVISION.
```

JULY 10, 2018

1          AS YOU CAN UNDERSTAND, YOU HAVE SEEN, THIS IS AN

2     EXTRAORDINARILY IMPORTANT CASE TO THE GOVERNMENT, AND WE

3     APPRECIATE YOUR HONOR'S OPTIMISM, ENCOURAGEMENT, AND

4     RECOGNITION OF THE GOVERNMENT'S PROGRESS AND EFFORTS TO DATE.

5          I WANTED TO, AS MENTIONED, YOUR HONOR, TO ADDRESS AN

6     IMPORTANT POINT ABOUT THE GOVERNMENT'S UNDERSTANDING OF

7     COMPLIANCE WITH ANOTHER PIECE OF THIS COURT'S ORDER IN LIGHT

8     OF LAST NIGHT'S ORDER BY THE FLORES COURT.

9          IT SHOULDN'T TAKE ME LONG TO GET THROUGH, BUT I JUST

10    WANT TO MAKE SURE I LAY THE GROUNDWORK CLEARLY FOR YOUR HONOR.

11         **THE COURT:**  YES.

12         **MR. STEWART:**  LAST NIGHT, YOUR HONOR, THE FLORES

13    COURT ISSUED AN ORDER REGARDING THE GOVERNMENT'S OBLIGATION

14    UNDER THE FLORES AGREEMENT.  IN SHORT, THE COURT CONCLUDED

15    THAT THE FLORES AGREEMENT CONTINUES TO REQUIRE THE RELEASE OF

16    A CHILD UNDER THE AGREEMENT EVEN WHERE THIS COURT'S INJUNCTION

17    PRECLUDES SEPARATION OF THE FAMILY.

18         IN ORDER TO READ THOSE TWO INJUNCTIONS TOGETHER,

19    YOUR HONOR, THE FLORES COURT EXPLAINED -- AS WE UNDERSTAND IT,

20    YOUR HONOR, THE FLORES COURT EXPLAINED THAT THE PARENT COULD

21    WAIVE THIS FLORES RIGHT AND CHOSE TO REMAIN TOGETHER, AND

22    OBSERVED THAT SUCH A WAIVER WAS PERMITTED UNDER THIS COURT'S

23    INJUNCTION.

24         IF I CAN JUST BRIEFLY EXPLAIN, YOUR HONOR.  AS YOU

25    UNDERSTAND, THE GOVERNMENT MUST NOW IMPLEMENT TWO EXISTING

JULY 10, 2018

1   INJUNCTIONS, YOUR HONOR'S AND THE FLORES COURT'S.  AND WE WANT

2   TO PROVIDE JUST NOTICE ON HOW WE INTERPRET OUR COMPLIANCE WITH

3   YOUR INJUNCTION, YOUR HONOR.

4           AS VERY QUICK BACKGROUND, THE FLORES COURT STATED

5   THAT FLORES RIGHTS COULD BE WAIVED BY A PARENT AND THAT,

6   QUOTE, DETAINED PARENTS MAY CHOOSE TO EXERCISE THEIR MS. L.

7   RIGHT TO REUNIFICATION OR TO STAND ON THEIR CHILDREN'S FLORES

8   AGREEMENT RIGHTS, END QUOTE.

9           LIKEWISE, YOUR ORDER, YOUR HONOR, ALLOWS EXCEPTIONS

10  TO REUNIFICATION, SEPARATION PROVISIONS IF THERE IS, QUOTE,

11  AFFIRMATIVE, KNOWING, AND VOLUNTARY WAIVER BY THE PARENT.

12          YOUR HONOR HAS ALSO EMPHASIZED, ON FRIDAY IN

13  PARTICULAR, AS I RECALL A COUPLE TIMES, THAT THE ATTORNEY

14  GENERAL MAKES HIS OWN DETERMINATION AS TO WHETHER OR NOT TO

15  DETAIN OR PAROLE OR RELEASE SOMEONE.  YOUR ORDER -- OR THE

16  ORDER YOUR HONOR SAID DOESN'T IMPACT IN ANY WAY THOSE

17  DECISIONS, AND YOU WERE NOT SUGGESTING, YOUR HONOR SAID, THAT

18  THE ATTORNEY GENERAL MUST RELEASE OR MUST DETAIN OR WHEN HE

19  CAN RELEASE OR DETAIN.  THOSE ARE WITHIN THE GOVERNMENT'S

20  PREROGATIVE, CONSISTENT WITH LAW.

21          AND NOW I AM GETTING TO THE KEY POINT HERE, YOUR

22  HONOR, WHICH IS SORT OF THREE-FOLD.

23          FIRST, IN LIGHT OF THE FLORES RULING YESTERDAY, YOUR

24  HONOR, WE, THE GOVERNMENT, INTERPRET YOUR ORDER TO PERMIT US

25  TO PROVIDE FAMILIES DETAINED TOGETHER WITH ONE OF TWO OPTIONS.

JULY 10, 2018

1          FIRST, THE FAMILY -- THE FAMILY -- THE ADULT MAY

2    CHOSE TO REMAIN IN DHS CUSTODY WITH THE FAMILY TOGETHER.

3    UNDER THIS COURT'S INJUNCTION, SUBJECT TO THE NORMAL RULES ON

4    WHEN AN ALIEN WOULD BE RELEASED FROM CUSTODY, SUCH AS PAROLE,

5    SO THE FAMILY COULD STAY DETAINED.  AND AS THIS FIRST OPTION

6    THE PARENT WOULD BE ABLE TO WAIVE THE CHILD'S FLORES RIGHTS SO

7    THE CHILD COULD STAY WITH THE PARENT, REUNIFIED, CONSISTENT

8    WITH YOUR COURT'S ORDER.

9          THE SECOND OPTION THE GOVERNMENT CAN GIVE YOUR HONOR

10   IS THAT THE FAMILY, THROUGH THE PARENT, CAN AGREE TO RELEASE

11   THE CHILD TO O.R.R. CUSTODY, IN WHICH CASE THE FAMILY WOULD BE

12   SEPARATED, BUT WITH THE PARENT'S CONSENT, AS YOUR HONOR

13   ALLOWED.  AND THE CHILD WOULD BE PLACED THROUGH O.R.R. AND

14   CONSISTENT WITH FLORES.  SO THAT WOULD BE EXERCISING A FLORES

15   RIGHT.  SO ONE OR THE OTHER, THE ADULT, YOUR HONOR, WOULD BE

16   ABLE TO, YOU KNOW, CONSISTENT WITH YOUR COURT'S INJUNCTION,

17   EITHER EXERCISE THE CHILD'S FLORES RIGHT OR WAIVE THAT FLORES

18   RIGHT SO THEY COULD STAY TOGETHER.

19         THE KEY POINT THERE AND THE KEY REASON FOR THOSE TWO

20   CHOICES -- AND THIS IS WHY I READ THE INJUNCTION THIS WAY,

21   YOUR HONOR.  IS THAT IN NEITHER CIRCUMSTANCE WOULD THE PARENT

22   BE ABLE TO USE THIS COURT'S ORDER, TOGETHER WITH THE FLORES

23   COURT'S ORDER, TO BOOTSTRAP A RIGHT TO RELEASE, A RIGHT TO

24   HINDER, YOU KNOW, OR FORCE THE GOVERNMENT TO ALLOW PAROLE,

25   THAT SORT OF THING.  AGAIN, THIS IS CONSISTENT, I BELIEVE,

JULY 10, 2018

```
 1    WITH YOUR HONOR'S ORDER, WITH THE LAW, AND JUST AUTHORITIES TO
 2    DETAIN.
 3              BUT, ANYWAY, I JUST WANTED TO CLARIFY THAT -- YOU
 4    KNOW, INFORM THE COURT THAT THAT IS HOW THE GOVERNMENT
 5    UNDERSTANDS YOUR HONOR'S ORDER, TO BE ABLE TO GIVE THE PARENTS
 6    THOSE TWO OPTIONS.  AND IN NEITHER CASE IS THE GOVERNMENT
 7    FORCED TO RELEASE SOMEONE UNDER YOUR COURT'S ORDER, YOUR
 8    HONOR.
 9              AND THIS IS, AS YOU CAN UNDERSTAND, YOUR HONOR, AND
10    YOU, I THINK, HAVE UNDERSTOOD IT IN PREVIOUS HEARINGS IN THIS
11    REGARD.  THE AUTHORITY TO DETAIN AND TO PAROLE ARE CRITICAL TO
12    THE GOVERNMENT.  THERE ARE MANY CIRCUMSTANCES IN WHICH, YOU
13    KNOW, THE GOVERNMENT IS ALLOWED TO DETAIN IN IMMIGRATION
14    CUSTODY THESE PARENTS.  SO ANY READING OF THE COURT'S ORDER
15    THAT WOULD HINDER THOSE AUTHORITIES IF -- WE READ THAT AS AN
16    OFF-LIMITS READING AND OUT OF STEP WITH WHAT YOUR COURT'S
17    LETTER AND SPIRIT WOULD SAY.
18              SO GIVEN ALL OF THOSE THAT IS -- JUST TO INFORM THE
19    COURT, YOUR HONOR, THAT IS OUR READING OF YOUR HONOR'S
20    INJUNCTION.  AND WE ASK IF THE COURT DISAGREES OR TAKES
21    EXCEPTION TO THAT TO PLEASE -- WE ASK THAT YOU PLEASE RULE ON
22    THAT AND LET US KNOW RIGHT AWAY TODAY SO WE CAN CONTINUE TO --
23    BECAUSE IT IS VERY IMPORTANT THAT WE KNOW, HAVE CLARITY ON
24    THAT TO COMPLY WITH IT.
25              ABSENT THAT RULING WE WILL CONTINUE -- WE WILL
```

1    PROCEED ON THAT SORT OF IMPLEMENTATION.  BUT WE DO REQUEST, IF

2    YOUR HONOR DISAGREES WITH ANYTHING ABOUT THAT UNDERSTANDING,

3    THAT YOU LET US KNOW RIGHT AWAY SO WE CAN MAKE SURE WE ARE IN

4    COMPLIANCE FULLY AND CAN ALSO EXPLORE APPROPRIATE OPTIONS,

5    YOUR HONOR.

6         BECAUSE IF WE -- JUST IN THE INTEREST OF FULL

7    INFORMATION, YOUR HONOR, IF WE ARE PUT TO THE CHOICE WHERE WE

8    ARE FORCED TO RELEASE PARENTS WE WILL NEED TO EVALUATE

9    OPTIONS, WE WILL NEED TO POTENTIALLY PURSUE IMMEDIATE APPEAL

10   TO BE ABLE TO PRESERVE OUR AUTHORITIES.

11        IF IT IS A SITUATION WHERE WE HAVE TO RELEASE WE

12   WOULD ALSO ASK THAT YOUR HONOR STAY YOUR ORDER TO THE EXTENT

13   IT WOULD PROHIBIT, YOU KNOW, HAVING PARENTS MAKE THIS CHOICE.

14        BUT I LEAVE THOSE AS OPTIONS AND AS REQUESTS FOR

15   YOUR HONOR JUST OUT OF EMPHASIS THAT IT IS VERY IMPORTANT THAT

16   THE GOVERNMENT HAVE CLARITY IF THE ARTICULATION AND

17   UNDERSTANDING OF YOUR COURT'S ORDER IS INCORRECT SO THAT WE

18   CAN BE SURE TO COMPLY WITH IT AND KNOW HOW TO PROCEED

19   CORRECTLY.

20        AND TO BE CLEAR, YOU KNOW, TO THE EXTENT THAT WE

21   WOULD SEEK ANY STAY, IT IS NOT ON THE REUNIFICATION PIECE, IT

22   IS NOT ON THOSE, WE ARE FULL SPEED AHEAD ON THOSE.  IT IS JUST

23   ON THIS NARROW -- TO THE EXTENT WE WOULD BE REQUIRED TO

24   RELEASE PARENTS UNDER YOUR COURT'S ORDER; WHICH AGAIN I DON'T

25   THINK IS THE RIGHT READING OF YOUR COURT'S ORDER, BUT I RAISE

JULY 10, 2018

```
1    IT OUT OF IMPORTANCE FOR COMPLIANCE.

2           SO THAT IS THE KEY QUESTION, YOUR HONOR, AND THAT'S

3    OUR -- OR THE KEY ISSUE, AND THAT IS THE GOVERNMENT'S

4    UNDERSTANDING.  I HOPE I HAVE BEEN REASONABLY CLEAR.

5           THE COURT:  YES.  IF THERE IS AN APPEAL IT WOULD

6    DIVEST THIS COURT OF JURISDICTION OF ALL OF THE ISSUES, WOULD

7    IT NOT, INCLUDING REUNIFICATION?

8           MR. STEWART:  I DON'T BELIEVE SO, YOUR HONOR.  THIS

9    IS A PRELIMINARY INJUNCTION AND, YOU KNOW, PROCEEDINGS

10   CONTINUE IN THE DISTRICT COURT, YOU KNOW, EVEN AS A PIECE OF A

11   CASE MIGHT GO UP.  AND AGAIN, YOU KNOW --

12          THE COURT:  THIS WOULD BE UNDER RULE 54, A CARVE-OUT

13   AND PIECEMEAL APPEAL, IN THEORY, IF IT IS JUST ON THIS

14   DETENTION OR RELEASE ISSUE?

15          MR. STEWART:  I AM NOT SURE IF -- WHAT THE RIGHT

16   HOOK, ASIDE FROM 1292(A), WOULD BE, YOUR HONOR.  BUT -- AND,

17   YOU KNOW, I WOULDN'T, YOU KNOW, WANT TO SAY SOMETHING TO

18   PREJUDICE OTHER OPTIONS.  BUT RIGHT NOW REALLY WHAT WE ARE --

19   WHAT WE WOULD BE SEEKING A STAY ON BECAUSE, YOU KNOW, IF WE

20   WERE TO PURSUE A FAST APPELLATE STAY, YOU KNOW, WE WOULD WANT

21   -- WE WOULD NEED TO RUN IT BY YOUR HONOR FIRST, IS THAT ALL WE

22   WOULD BE SEEKING A STAY IS ON THIS PIECE.  YOU KNOW, IF WE ARE

23   REQUIRED UNDER YOUR HONOR'S ORDER TO START RELEASING PARENTS

24   BECAUSE, YOU KNOW, WE CAN'T KEEP THEM TOGETHER UNDER FLORES OR

25   SOMETHING LIKE THAT, THAT IS THE PIECE WE WOULD BE SEEKING A
```

42

1   STAY ON.

2            AGAIN, YOU KNOW, WE WANT TO GO FULL SPEED AHEAD AND

3   DO THE BEST WE CAN ON REUNIFICATION, AND SEE WHERE WE ARE ABLE

4   TO GO.

5            **THE COURT:**  IF YOU ARE REQUIRED TO RELEASE -- SO

6   THIS IS THE WORST-CASE SCENARIO FOR THE GOVERNMENT.  IF YOU

7   ARE REQUIRED TO RELEASE, WOULDN'T THAT BE UNDER JUDGE GEE'S,

8   FLORES?  DOESN'T HAVE ANYTHING TO DO WITH THIS CASE.

9            **MR. STEWART:**  I DON'T -- IT DEPENDS ON IF WE ARE

10  READING YOUR COURT'S -- IT DEPENDS ON THE RIGHT READING OF, I

11  THINK, THIS COURT'S INJUNCTION, YOUR HONOR.

12           AS JUDGE GEE SAID IN HER ORDER -- AND TO JUST QUOTE

13  THE KEY LANGUAGE -- IS THAT DETAINED PARENTS MAY CHOOSE TO

14  EXERCISE THEIR MS. L. RIGHT TO REUNIFICATION OR TO STAND ON

15  THEIR CHILDREN'S FLORES RIGHTS.

16           SO IT REALLY -- IT DEPENDS ON HOW YOU UNDERSTAND THE

17  MS. L. RIGHT TO REUNIFICATION.  AND AS WE UNDERSTAND THIS

18  COURT'S -- THE RIGHT THAT THIS COURT HAS RECOGNIZED IS THAT IT

19  DOES NOT REQUIRE RELEASE OF PARENTS.

20           YOUR HONOR'S RULING AT THE MOTION TO DISMISS STAGE

21  WAS A DUE PROCESS RULING ABOUT FAMILY INTEGRITY AND WAS --

22  YOUR HONOR VERY CLEARLY EMPHASIZED THAT THE PLAINTIFFS HERE DO

23  NOT CHALLENGE THE GOVERNMENT'S AUTHORITY TO DETAIN.  AND THERE

24  WOULD NOT BE ANY PLAUSIBLE DUE PROCESS ARGUMENT TO FORCE A

25  PARENT TO RELEASE WHEN THAT PARENT, THAT ADULT, IS SUBJECT TO

43

1    DETENTION UNDER A LAWFUL AUTHORITY UNDER THE IMMIGRATION LAWS,

2    8, USC, 1225 OR THE LIKE.

3            SO, ANYWAY, IT DOES, I THINK -- AGAIN, IT IS A

4    MATTER OF INTERPRETING THE TWO INJUNCTIONS TOGETHER.  BUT IF I

5    HAVE UNDERSTOOD YOUR INJUNCTION CORRECTLY, YOUR HONOR, YOU

6    KNOW, AS KIND OF DRAWN OUT BY YOUR STATEMENTS IN COURT, WE ARE

7    NOT -- YOUR INJUNCTION DOES NOT FORCE US TO DO THAT RELEASE TO

8    THOSE PARENTS WHO WE OTHERWISE HAVE VALID AUTHORITY TO KEEP IN

9    CUSTODY.

10           **THE COURT:**  MR. GELERNT.

11           **MR. GELERNT:**  WE DON'T DISAGREE WITH THAT READING.

12   OUR UNDERSTANDING IS THAT BOTH YOUR HONOR'S RULING AND JUDGE

13   GEE'S RULING ARE FAIRLY STRAIGHTFORWARD.

14           YOUR HONOR WANTS REUNIFICATION, BUT OBVIOUSLY THE

15   TOUCH TONE IS ALWAYS WHAT THE PARENT VIEWS IS THE BEST

16   INTEREST.  SO IF THE PARENT WANTS TO WAIVE THEIR FLORES RIGHTS

17   AND KEEP THEIR CHILD WITH THEM IN FAMILY DETENTION THEY HAVE

18   THAT RIGHT -- I MEAN, SORRY -- OR WAIVE YOUR HONOR'S RULING

19   AND SAY WE WANT TO RELEASE, WE WOULD RATHER OUR CHILD BE

20   RELEASED UNDER FLORES.  I THINK THAT IS WHAT YOU SAID AND WHAT

21   JUDGE GEE SAID VERY CLEARLY, THE PARENT HAS THE RIGHT TO

22   EITHER KEEP THEIR CHILD WITH THEM OR NOT, SO WE AGREE WITH THE

23   GOVERNMENT'S RULING.  ANY RELEASE BY THE PARENT IS GOING TO BE

24   NOT UNDER YOUR RULING AND NOT UNDER JUDGE GEE'S FLORES RULING

25   WHICH APPLIES TO THE CHILDREN, IT IS GOING TO HAVE TO BE SOME

```
 1    SEPARATE ACTION WHERE THE PARENT SAYS, I HAVE A DUE PROCESS
 2    RIGHT TO GET OUT OF DETENTION.
 3            I THINK THERE PROBABLY IS THAT DUE PROCESS RIGHT.
 4    JUDGE BOASBERG IN DC JUST TALKED ABOUT THAT, BUT IT DOESN'T
 5    IMPLICATE YOUR RULING OR JUDGE GEE'S RULING.  THE SHORT OF IT
 6    IS WE AGREE WITH THE --
 7            THE COURT:  WHAT IF THE PARENT DOES NOT AGREE TO BE
 8    SEPARATED AND HAVE THE CHILD RELEASED TO O.R.R. AND DOES NOT
 9    AGREE TO JOINT DETENTION IN A FAMILY RESIDENTIAL CENTER.  AS I
10    UNDERSTAND THE ARGUMENT THE GOVERNMENT IS LEFT WITH THE
11    HOBSON'S CHOICE OF THEN HAVING TO RELEASE THE PARENT BECAUSE
12    UNDER FLORES THEY CAN ONLY HOLD THE TWO FOR 20 DAYS IN
13    DETENTION, BUT IF THE PARENT IS SAYING THEY DON'T WANT JOINT
14    DETENTION THEN DO THEY HAVE TO RELEASE THE PARENT.  AND LET'S
15    ASSUME --
16            MR. GELERNT:  YOUR HONOR, I WISH THAT FLORES WENT
17    THAT FAR AND REQUIRED THE RELEASE OF THE PARENT.  IF THE
18    PARENT SAID, I WANT MY CHILD WITH ME UNDER MS. L. AND I DON'T
19    WANT TO BE HERE IN DETENTION LONG-TERM, I WANT TO BE RELEASED;
20    FLORES DOES NOT GIVE THE PARENT THAT RIGHT.
21            IF THE PARENT IS GOING TO GET OUT WITH THEIR -- THEY
22    ARE GOING TO HAVE TO BRING A SEPARATE SUIT.  MAYBE THEY ARE
23    GOING TO WIN, MAYBE THEY ARE NOT UNDER DUE PROCESS.  AND THAT
24    WOULD BE A BASIC CLAIM OF, THE GOVERNMENT CAN ONLY DETAIN ME
25    IF I AM A FLIGHT RISK OR A DANGER.
```

1          BUT NOTHING IN FLORES WOULD REQUIRE THE GOVERNMENT

2     TO RELEASE THAT FAMILY UNIT IF THE MOTHER SAID, I WANT MY

3     CHILD HERE BUT I DON'T FEEL LIKE BEING IN DETENTION.

4          **THE COURT:**  OKAY.  THIS MIGHT BE THE HAPPY SITUATION

5     WHERE, IF I UNDERSTAND YOU CORRECTLY, MR. GELERNT, YOU ARE

6     AGREEING WITH WHAT THE GOVERNMENT HAS OUTLINED.

7          SO WHAT I WOULD PROPOSE, BECAUSE THE GOVERNMENT IS

8     ASKING FOR A DETERMINATION BY THE COURT AS SOON AS POSSIBLE,

9     IS THAT YOU MEET AND CONFER.  IT SOUNDS LIKE YOU ARE IN

10    AGREEMENT --

11         **MR. GELERNT:**  WE ARE.

12         **THE COURT:**  -- AND SIMPLY SEND ME A JOINT MOTION AND

13    ORDER.

14         **MR. GELERNT:**  THAT'S FINE, YOUR HONOR.  WE WOULD

15    JUST SAY THAT IT WOULD SAY THAT A PARENT CAN ALWAYS WAIVE THE

16    REUNIFICATION RIGHT AND THEY CAN ALWAYS WAIVE THE FLORES RIGHT

17    TO RELEASE; BECAUSE ULTIMATELY OUR VIEW IS, IN BOTH CASES, THE

18    TOUCH TONE IS THE PARENT MAKES THE DECISION, WHERE THEY ARE

19    FIT AND NOT ABUSIVE, FOR THE BEST INTEREST OF THE CHILD.  SO I

20    THINK THAT SHOULD BE ABLE TO BE DONE VERY, VERY QUICKLY TODAY.

21         **THE COURT:**  OKAY.  I WILL BE LOOKING OUT FOR THE

22    JOINT MOTION AND ORDER.

23         **MR. STEWART:**  THANK YOU VERY MUCH, YOUR HONOR.  I

24    APPRECIATE THE OPPORTUNITY TO BE HERE.

25         **THE COURT:**  THANK YOU FOR BEING HERE.

JULY 10, 2018

1          **MR. STEWART:**  I SHOULD APOLOGIZE, YOUR HONOR.  I MAY

2    MISS THE FRIDAY HEARING BECAUSE I HAVE TO GO UP TO SAN

3    FRANCISCO TO ADDRESS ANOTHER UNACCOMPANIED MINOR CASE IN THE

4    NINTH CIRCUIT.  BUT OTHERWISE I WOULD BE HERE TO TRY TO HELP

5    OUT THE COURT AND CONTINUE -- I WILL BE FURTHERING COMPLIANCE

6    WITH THE COURT'S INJUNCTION AS BEST POSSIBLE.

7          **THE COURT:**  VERY GOOD.  THANK YOU.

8          **MR. STEWART:**  THANK YOU, YOUR HONOR.

9          **THE COURT:**  LET'S RECESS.  I WILL LOOK FOR FORWARD

10   TO THE JOINT STATUS REPORT ON THURSDAY, AND THEN WE WILL MEET

11   AGAIN FRIDAY AT 1:00 O'CLOCK.

12         THANK YOU.

13         **MS. FABIAN:**  THANK YOU, YOUR HONOR.

14         **MR. GELERNT:**  THANK YOU, YOUR HONOR.

15

16                        *   *   *

17         I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
18         IN THE ABOVE-ENTITLED MATTER.

19         S/LEEANN PENCE                    7/10/2018
           LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
20

21

22

23

24

25

JULY 10, 2018