CHAD A. READLER
Acting Assistant Attorney
General
SCOTT G. STEWART
Deputy Assistant Attorney
General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys     for     Federal
Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-
Plaintiffs*
*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

          Petitioners-Plaintiffs,

vs.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

          Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT
REGARDING REUNIFICATION**

On July 10, 2018, this Court held a status conference, and ordered the parties to file a joint report on July 112, 2018 regarding the ongoing reunification process. The parties submit this joint status report in accordance with the Court's instruction.

I. **DEFENDANTS' POSITIONS**

  A. **Defendants are in Compliance With The Court's Order**

Defendants are in compliance with the Court's order. Defendants have now reunified 57 children identified by Defendants and this Court as eligible for reunification at the status conference on July 10, 2018. Of the 63 identified by the Court, 6 were ultimately determined not to be eligible for reunification after further information was obtained regarding either parentage or the criminal background of the parent. Additionally, Defendants identified one additional family with a child

under age 5 that was eligible for reunification, and was able to reunify that family

as well.

For these children, cases were resolved as follows:

- 6 were determined not to be eligible for reunification following completion of parentage and background checks:
    - o 3 had parents with serious criminal history
    - o 1 was excluded because the accompanying adult was not the parent of that child
    - o 1 was excluded on suspicion of not being the parent or of posing a risk to the child, because the accompanying adult presented a false birth certificate
    - o 1 had a parent who was determined to be in the custody of the U.S. Marshals, not in ICE custody as previously believed

- 38 were reunified on or before July 10, 2018

- 19 were reunified on July 11, 2018 (this number includes one additional child who was identified by Defendants since their last submission to this Court)

- 1 was reunified by 6:00 a.m. local time on July 12, 2018.

For the 20 children who were reunified on July 11 and 12, 2018,

transportation arrangements had been made on July 10, but could not be completed

for logistical reasons specific to each case until July 11 and July 12.  Defendants

detail below the reasons for any delay in reunification, as well as the reasons why

21 of the parents of children originally believed to be class members were

ultimately determined not to be members of the class due to criminal history,

danger to the child, or not being the parent.

**Criminal background of adults excluded from the class**:

1. Warrant for murder in Guatemala
2. Child cruelty and narcotics convictions
3. Suspected transnational criminal organization involvement and human trafficking
4. Outstanding criminal warrant in El Salvador
5. 2 DUI convictions
6. Significant criminal history including assault conviction
7. Outstanding warrant in Florida for DUI
8. DUIs, assault, stolen vehicle
9. Robbery conviction
10. Wanted by El Salvador
11. Criminal charges including assault

**Not a parent or parentage in question**:

12. Adult said he is uncle, not father
13. Negative DNA match, adult indicated he is not the child's father
14. Adult said she is grandmother, not mother
15. During DNA testing, adult disclosed she is not the child's mother
16. Negative DNA match, still under investigation
17. Adult disclosed that she is grandmother, not the parent
18. Adult presented false birth certificate, still under investigation

**Release presents danger to the child**:

19. Before court order, adult was required to submit information and fingerprints of other adults in household where she will live with the child; background check on adult male in household shows an active warrant for aggravated criminal sexual assault of a 10-year-old female.
20. Child made allegations of abuse against adult

**Communicable Disease**:

21. Parent is being treated for communicable disease in ICE custody

**Reunifications completed on July 11 and 12**:

1. Reunification in ICE custody completed at midnight Pacific time on 7/10, 3:00 a.m. Eastern on 7/11
2. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

3.  Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

4.  Parental verification was not complete; adult and child were in distant locations in New York state, reunification occurred before noon on 7/11.

5.  Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

6.  Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

7.  Reunification in ICE custody completed at midnight Pacific time on 7/10, 3:00 a.m. Eastern on 7/11

8.  Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

9.  Parental verification was not complete; child placed on flight at 9:55 p.m. Pacific time 7/10, reunification occurred at 5:35 a.m. Eastern 7/11

10. Parental verification was not complete; Texas, reunification complete 7/11

11. Parental verification was not complete; adult was in Texas and child was in Maryland, reunification completed on 7/11

12. Parental verification was not complete; Texas, reunification complete 7/11

13. Parental verification was not complete; Texas, reunification complete 7/11

14. Parental verification was not complete; parent was in Louisiana and child in New York, reunification completed 6:00 a.m. on 7/12

15. Parental verification was not complete; parent was in Texas and child in Arizona, reunification completed on 7/11

16. Parental verification was not complete; child was in New York and parent was released to the interior, reunification in Georgia complete 7/11

17. Parental verification was not complete; discharge was coordinated with discharge of sibling 5 years of age or older, reunification completed on 7/11

18. Parental verification was not complete; child was in New York and parent was released to the interior, reunification in Georgia complete 7/11

19. Parental verification was not complete; child was in New York and parent was released to the interior in Texas, reunification complete in Texas 7/11

20. Parental verification was not complete; child was in Illinois and parent was released to the interior, reunification in Texas complete 7/11

The 23 remaining children aged 0–4, who HHS originally listed as possible candidates for reunification under the Court's order, cannot currently be reunified with their parents because: their parents are in criminal custody (11), or their

parents have been removed (12) and they will be considered for reunification on a timetable to be determined as Plaintiffs and Defendants work together to locate those parents and determined if they wish to be reunified. One child on the original list has a parent who may or may not be a United States citizen (insufficient information is available to make this determination, and the parent and others are not available to provide that information). The child was separated from her parent in 2015 when her parent was arrested on an outstanding warrant by the U.S. Marshals Service. Defendants have not been aware of the parent's location since then and they remain unable to locate that parent. Because the parent is not available, it is not possible to reunite the child with the parent. Unless the parent is located, HHS will provide care and seek placement for the child using its ordinary programs and procedures.

**B. HHS Truncated Processes to Comply With the July 10, 2018 Order**

In its July 10, 2018 ruling and order, the Court instructed Defendants to release children on Defendants' list who Defendants associated with adults in ICE custody, and whose affirmative parental verification, including DNA testing, had not yet been completed. The Court also instructed that reunification should not be delayed for HHS to affirmatively verify parental status.

There were 16 such adults in ICE custody. Of those: 1 was found to be in Marshal's custody, not in ICE custody; 1 DNA test result came back negative prior

18cv428 DMS MDD

to the Court's deadline, causing good faith concern about parentage and risk to the child; and 1 was found to have presented a false birth certificate, also causing good faith concern about parentage and risk to the child. For the other 13 adults, HHS transferred the children to ICE for reunification with those adults without further parental verification process.

The Court's order also required Defendants, by the Court's deadline, to reunify 8 children who Defendants had associated with adults previously released to the interior of the United States. At the time of the Court's order, HHS had not yet completed parental verification of those purported parents, nor had HHS received all biographical or fingerprint information that it requested for any other adults who would be living in the same household upon release of the child.[1] HHS was able to confirm parentage of 1 of the 8 adults prior to the deadline. For the remaining 7 of the 8 adults, in compliance with the Court's order, HHS released the children to the adults despite not having completed its affirmative verification that those adults were the parents. HHS also did not complete any background checks on other adults living in the same households as the children upon release.

**C. Reunification With Removed Parents**

---

[1] In at least one instance where background investigations of cohabitants were completed prior to the Court's deadline, HHS found that an adult in the household had an outstanding warrant for aggravated sexual abuse of a 10-year-old child.

With regard to those children whose parents are removed, Defendants are working with Plaintiffs' counsel to locate those parents and to provide them notice to determine if they wish to be reunified with their children. It is difficult to determine how much time will be necessary for those reunification until the parents are contacted and it can be determined what those reunifications would entail. Defendants ask the Court to allow those reunifications to occur on a flexible schedule, and propose that for each such child for whom reunification is requested, once the parent is located and the request for reunification is made, Defendants will work with Plaintiffs' counsel to identify the steps that need to be taken for reunification and determine a reasonable amount of time to complete that process. If the Court is inclined to set a definitive timeframe, Defendants request that any deadline begin on the date that Defendants receive travel documents for the child.

## C. Individuals in State Custody

Defendants understand that Plaintiffs will reach out to class members in state criminal custody to ensure that they contact ORR following their release if they wish to be reunified with their child. Defendants will provide Plaintiffs with any information they have about class members who are sent to state criminal custody to assist in these communications.

**D. Reporting:**

Defendants agree that no later than July 13, 2018, they will provide Plaintiffs' counsel with a list of identified class members in ICE custody. Defendants also agree that no later than July 13, 2018, they will provide Plaintiffs' counsel with a list of identified children of class members. Defendants agree to meet and confer with Plaintiffs about the provision of additional information. Defendants are aware that Plaintiffs are requesting to receive a chart with the level of detail that was provided regarding the minors under-age-5, however the compilation of that information took a significant amount of time on the part of operators whose time would be better spent facilitating reunification and production of the same level of detail on a much larger scale is not operationally feasible under the current timeframes. Defendants request the opportunity to continue to meet and confer with Plaintiffs to see if there is an option that would provide Plaintiffs with the information that they need while minimizing demands on the part of agency operators.

**II.     PLAINTIFFS' POSITIONS**

**A. Reunifications of Children Under Five**

1.  As of today, Defendants represent that they have reunified 58 Class Members.  Of the 103 Class Members Defendants initially identified, apparently 10 remain in criminal custody, 12 were deported, and 23 have apparently dropped out of the class or are not eligible for reunification at this time, either because they

1  had criminal histories, evidence of abuse, communicable diseases, or they were not
2  actually the parents.

3      2.  Plaintiffs have not yet received any specific information about most of
4  the 23 individuals who Defendants claim have dropped out of the class or are
5  ineligible for reunification.  Plaintiffs have therefore not been able to verify
6  whether those parents are, indeed, Class Members eligible for reunification at this
7  time.  Plaintiffs have also not been able to determine whether any criminal
8  convictions those parents have render them a danger to their children—and
9  therefore not entitled to reunification at all—or merely not Class Members.

10     3.  As for the 58 parents whom Defendants have apparently reunified,
11 Plaintiffs have no independent verification that these 58 parents have in fact been
12 reunited with their children.  During the meet and confer process leading up to July
13 10, Defendants claimed that they would provide Plaintiffs' counsel with notice of
14 the time and place for each reunification, so that Plaintiffs' counsel could arrange
15 for private and NGO service providers to assist the families and verify
16 reunification.  This did not happen.  Defendants did not provide specific time and
17 place information for a single Class Member.  Instead, Defendants only provided a
18 general prediction about how most Class Members would be reunified.

19     Defendants' lack of communication about reunification logistics caused
20 significant problems over the last three days.  Plaintiffs are now hearing about a
21 number of troubling situations from service providers and attorneys for Class
22 Members and their children.  These problems include:

23     •  ICE left one Class Member alone at a bus stop with her children, one of
24        whom was six months old.  Through a series of phone calls between the
25        Class Member, her attorney, and another advocate, the Class Member
26        finally obtained a bus ticket on Tuesday around midnight.

27
28

- One Class Member was transported through a series of ICE facilities in New Jersey and Michigan in a matter of days, with no prior notice to his counsel.  ICE refused access to his counsel while he was detained in Michigan.  Despite repeated requests by both the Class Member and his lawyer, ICE did not allow his counsel to be present at the point of reunification.

- A Class Member was kept in an ICE office for most of the day of her originally-scheduled reunification. ORR had processed her children for release that day.  ICE officers attempted to process her for release on an ankle monitor.  Due to an apparent computer malfunction, the officers were unable to complete the process. At the end of the business day, the ICE officers ceased their attempts and told the mother that she would be sent back to detention without her children.

### B. Parents Deported Without Their Children

1.  Twelve Class Members with children under 5 remain separated, because they have already been deported.  Plaintiffs and their NGO partners are in the process of trying to contact these parents.  For those deported Class Members who choose to be reunited with their children, Plaintiffs propose that the Court order Defendants to reunify them within 7 days after the parent obtains travel documents for the child.  This deadline will ensure that these Class Members are promptly reunited, and that any delay in obtaining travel documents does not affect Defendants' obligations.

2.  Defendants have represented that case-specific complications might necessitate further delay.  In that situation, Plaintiffs propose that the parties meet and confer about any individual case where the government presents specific, concrete reasons why 7 days is not sufficient.  If any disputes remain, the parties can submit the dispute to the Court for a ruling.  But the Court should reject any

request from Defendants to extend or avoid setting a deadline, which may lead to indefinite delay.  Indeed, to date, Plaintiffs are not aware of any specific steps Defendants have taken even to locate these 12 Class Members.

### C. Costs of Reunification

Plaintiffs' counsel have heard reports that some Class Members have been asked to pay for the costs of reunification, such as transportation costs (and possibly DNA testing).  For example, Plaintiffs' counsel was informed that one Class Member was initially told to wire around $1,900 to Western Union to pay for reunification; another Class member arranged to pay for a plane ticket before being told to cancel the ticket because someone else was purchasing a flight for the child.

It is not acceptable for Defendants to make compliance with this Court's injunction contingent on Class Members paying thousands of dollars to reunify with their children.  Plaintiffs therefore ask the Court to order Defendants not to charge Class Members for any of the costs of reunification, including DNA testing and air travel, and to reimburse any individuals who were in fact charged.

### D. Remedies for Non-Compliance

Defendants claim that only 58 parents were eligible for reunification as of the July 10 deadline.  As noted above, Plaintiffs have not been given sufficient information to verify the accuracy of that eligibility number.

In any event, Defendants concede that they did not meet the July 10 deadline even for these 58 Class Members.  This morning, Defendants informed Plaintiffs' counsel that only 38 Class Members were reunified by the Court's deadline.  The other 20 children were not returned to their parents until after July 10.  In light of this non-compliance, Plaintiffs propose specific remedies in order to ensure that Defendants do not miss future deadlines.  *See infra* Section E.

### E. Class Members with Children 5 and Older

As noted above, Plaintiffs believe that open communication and planning in advance are critical to ensure that Defendants do not miss the future deadlines ordered by the Court.

The past week has highlighted these concerns.  Plaintiffs wrote to government counsel on July 2 to ask for a list of class members and reunification plans.  The government did not provide any of this information before the July 6 status conference, when the Court ordered Defendants to produce the list the next day.  That list, however, did not contain the parents' names or A numbers. Defendants did not provide that critical information necessary to locate and track Class Members until the next day—two days before the deadline.

When the deadline arrived, Defendants had not completed parentage verification or background checks for many of the class members with children under 5.  The failure to complete these steps in advance delayed reunification for more than a dozen class members until after the deadline.  And despite promising to provide advance notice of the time and place for each reunification, Defendants provided no specific information to Plaintiffs' counsel.  As a result, Class Members' individual lawyers and service providers were left frantically scrambling to find their clients and provide support.

The following seven (7) steps are designed to address each of these failures:

1.  Defendants must provide Plaintiffs with a Class List for the remaining Class Members by Monday, July 16, with all of the information that Defendants provided for the children under 5.  To ensure that reunification plans are not formulated haphazardly at the last minute, this Class List should also contain complete information regarding Defendants' plans for reunifying each Class Member, which was not provided for the children under 5.

2.  Defendants must complete all parentage verifications and background checks by Thursday, July 19.  These steps, which must be completed prior to

reunification, should already be in progress or completed.  One week from today should be more than enough time to complete them.

3.  Starting Tuesday, July 17—the day after Defendants must provide the Class List (see above, item 1)—Defendants should file with the Court a daily report regarding the number of reunifications that have occurred that day.

4.  Defendants must provide Plaintiffs' counsel, as well as Class Members' immigration lawyers (if any), with at least 24 hours advance notice of the time, place, and location of reunification.  Defendants should also allow Class Members' immigration counsel access to the site of reunification.

5.  For separated parents whom Defendants determine are not Class Members, Defendants must provide Plaintiffs' counsel with detailed reasons why a putative Class Member was excluded from the Class List, including, at a minimum: any criminal convictions or charges; any allegations of abuse or unfitness; or the specific reasons why parentage could not be verified.

6.  If Defendants choose to reunite Class Members in family detention facilities, they should provide immediate access to immigration lawyers who can advise the Class Members of their rights.  DHS facilities frequently place unwarranted restrictions on counsel access, such as limiting the rooms available to meet with lawyers, or adopting restrictive phone policies.  Any lawyer seeking to meet with a Ms. L. Class Member should be provided immediate access to a private facility where the Class Member can be counseled on his or her rights.  This is particularly important if that Class Member has received a removal order.

7.  Defendants must establish a fund to pay for professional mental health counseling, which will be used to treat children who are suffering from severe trauma as a result of their forcible separation from their parents.  The amount can be set at a later time, subject to further negotiations between the parties and rulings from the Court.  Although many medical professionals have graciously offered pro

bono services for the children, who plainly are in desperate need of counseling, these medical professionals should not have to assume the costs associated with the government's policy, especially not their out-of-pocket expenses.

DATED: July 13, 2018                    Respectfully submitted,

                                        /s/ Lee Gelernt
                                        Lee Gelernt*
                                        Judy Rabinovitz*
                                        Anand Balakrishnan*
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        125 Broad St., 18th Floor
                                        New York, NY 10004
                                        T:  (212) 549-2660
                                        F:  (212) 549-2654
                                        *lgelernt@aclu.org*
                                        *jrabinovitz@aclu.org*
                                        *abalakrishnan@aclu.org*

                                        Bardis Vakili (SBN 247783)
                                        ACLU FOUNDATION OF SAN DIEGO
                                        & IMPERIAL COUNTIES
                                        P.O. Box 87131
                                        San Diego, CA 92138-7131
                                        T: (619) 398-4485
                                        F: (619) 232-0036
                                        *bvakili@aclusandiego.org*

                                        Stephen B. Kang (SBN 292280)
                                        Spencer E. Amdur (SBN 320069)
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        39 Drumm Street
                                        San Francisco, CA 94111
                                        T:  (415) 343-1198
                                        F:  (415) 395-0950
                                        *skang@aclu.org*
                                        *samdur@aclu.org*

                                        *Attorneys for Petitioners-Plaintiffs*
                                        *\*Admitted Pro Hac Vice*

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
       NICOLE MURLEY
       Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

16

18cv428 DMS MDD