CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **STATUS REPORT REGARDING PLAN FOR COMPLIANCE** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

## I. STATUS REPORT

Defendants hereby submit this status report to apprise the Court of their current plan for determining and reunifying the remaining class members with their children, by July 26, 2018, as this Court's orders require. The plan is set forth in the Declaration of Chris Meekins, which is attached as Exhibit A. The agencies are putting their plan into operation immediately.

The agencies designed the plan to achieve full compliance with this Court's orders, *i.e.*, reunification of every remaining class member with their child where this Court's orders require reunification by July 26. Meekins Dec. ¶ 28. Reunifications under the plan should begin today and occur on a rolling basis. *Id.* Unlike the plan put into place for the smaller cohort of children aged 0-4, the current plan for children aged 5-17 does not involve DNA testing or full background investigations of purported class members HHS conducts under the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). *Id.* ¶ 33. Nor does it

require criminal background checks of other adult members of the household where the class member and the child will live, or the submission of sponsor care plans (which may require background checks of other care givers). *Id.*

While the agencies are committed to complying fully with the Court's orders, as explained in the attached declaration, the Department of Health and Human Services (HHS) is concerned that the truncated procedures needed for compliance present significant risks to child welfare. Meekins Dec. ¶¶ 37-49. As the declaration explains, while most children should be safely reunited with their actual parents by the Court's deadline, the class is large and the agencies must proceed rapidly and without the procedures that HHS would ordinarily use to place a child with a parent safely. *Id.* HHS believes that this creates a material risk that dozens of children may be reunited with individuals who falsely claimed to be their parents or placed into situations that may pose a danger to the child. *Id.*

Indeed, the streamlined procedures that HHS used for the under-five cohort identified several instances in which placement of a toddler or infant with a purported parent was inappropriate. In one case, mandatory DNA testing prompted one putative class member to concede her lack of parentage during testing. Meekins Dec. ¶ 11. Another putative class member had a negative DNA match and conceded that he was not a parent. *Id.* ¶ 10. And in another case, HHS conducted a background check of an adult member of the putative class member's household and

identified that the adult had a warrant for sexually abusing a 10-year-old girl. *Id.* ¶¶ 14-16.

Defendants believe they are now taking all operationally feasible steps under the Court's orders to reunify hundreds of class members and children safely. But going forward, HHS will not be able to do the same rigorous vetting that has already prevented the placement of toddlers and infants with adults who were not their parents or would have endangered them. Meekins Dec. ¶¶ 37-49. The Court's restriction of vetting of putative class members for the 5-and-up cohort will likely mean that some children in that cohort will be at risk of improper placements. *Id.* Given the agencies' reported figures on the size of the 5-and-up cohort (approximately 2,500 children), the number of placements of children with adults who are not their parents or who might endanger them could be significant. *Id.* ¶ 47. Defendants hope that such risks will not materialize, or do so as rarely as possible, and the covered families will be reunited safely.

| | |
|---|---|
| DATED: July 13, 2018 | Respectfully submitted,<br><br>CHAD A. READLER<br>Acting Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>WILLIAM C. SILVIS<br>Assistant Director<br><br>*/s/ Sarah B. Fabian*<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE MURLEY<br>Trial Attorney<br>Office of Immigration Litigation<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>(202) 532-4824<br>(202) 616-8962 (facsimile)<br>sarah.b.fabian@usdoj.gov<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br><br>*Attorneys for Respondents-Defendants* |