UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

———————————————————————————————— )
MS. L. AND MS. C.,                          )
                                            ) CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,         )
                                            )
VS.                                         )
                                            ) SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS                ) FRIDAY JULY 13, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT        )  1:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.          )
CUSTOMS AND BORDER PROTECTION ("CBP");      )
U.S. CITIZENSHIP AND IMMIGRATION            )
SERVICES ("USCIS"); U.S. DEPARTMENT         )
OF HEALTH AND HUMAN SERVICES ("HHS");       )
OFFICE OF REFUGEE RESETTLEMENT ("ORR");     )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;       )
GREG ARCHAMBEAULT, SAN DIEGO FIELD          )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS,     )
EL PASO FIELD DIRECTOR, ICE; FRANCES M.     )
JACKSON, EL PASO ASSISTANT FIELD            )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN,     )
SECRETARY OF DHS; JEFFERSON BEAUREGARD      )
SESSIONS III, ATTORNEY GENERAL OF THE       )
UNITED STATES; L. FRANCIS CISSNA,           )
DIRECTOR OF USCIS; KEVIN K.                 )
MCALEENAN, ACTING COMMISSIONER OF           )
CBP; PETE FLORES, SAN DIEGO FIELD           )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,        )
EL PASO FIELD DIRECTOR, CBP;                )
ALEX AZAR, SECRETARY OF THE                 )
DEPARTMENT OF HEALTH AND HUMAN              )
SERVICES; SCOTT LLOYD, DIRECTOR             )
OF THE OFFICE OF REFUGEE RESETTLEMENT,      )
                                            )
            RESPONDENTS-DEFENDANTS.         )
————————————————————————————————————————

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

COUNSEL APPEARING:

FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                  ACLU IMMIGRANT RIGHTS PROJECT
                                  125 BROAD STREET 18TH FLOOR
                                  NEW YORK, NEW YORK 10004

                                  BADIS VAKILI, ESQ.
                                  ACLU FOUNDATION OF SAN DIEGO
                                  AND IMPERIAL COUNTIES
                                  P.O. BOX 87131
                                  SAN DIEGO, CALIFORNIA 92138

                                  SPENCER AMDUR, ESQ.
                                  ACLU OF NORTHERN CALIFORNIA
                                  39 DRUMM STREET
                                  SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:                    SARAH B. FABIAN, ESQ.
                                  U.S. DEPARTMENT OF JUSTICE
                                  OFFICE OF IMMIGRATION LITIGATION
                                  P.O. BOX 868
                                  BEN FRANKLIN STATION
                                  WASHINGTON, DC 20044

REPORTED BY:                      LEE ANN PENCE,
                                  OFFICIAL COURT REPORTER
                                  UNITED STATES COURTHOUSE
                                  333 WEST BROADWAY, ROOM 1393
                                  SAN DIEGO, CALIFORNIA 92101

1    **SAN DIEGO, CALIFORNIA – FRIDAY, JULY 13, 2018 – 1:07 P.M.**

2                              *  *  *

3           **THE CLERK:**  NO. 23 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    A STATUS CONFERENCE.

6           **THE COURT:**  GOOD AFTERNOON.

7           MAY I HAVE APPEARANCES, PLEASE?

8           **MR. GELERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE

9    GELERNT, FOR PLAINTIFFS, FROM THE ACLU.

10          **MR. AMDUR:**  GOOD AFTERNOON.  SPENCER AMDUR FROM

11   ACLU.

12          **MR. VAKILI:**  GOOD AFTERNOON, YOUR HONOR.  BARDIS

13   VAKILI FOR PLAINTIFFS.

14          **THE COURT:**  THANK YOU.

15          **MS. FABIAN:**  GOOD AFTERNOON, YOUR HONOR.  SARAH

16   FABIAN FROM THE DEPARTMENT OF JUSTICE FOR THE DEFENDANTS.

17          **THE COURT:**  GOOD AFTERNOON.

18          I HAVE READ THE JOINT STATUS REPORT, AND I HAVE A

19   COUPLE COMMENTS TO MAKE BASED ON THE JOINT STATUS REPORT, AND

20   THEN WE WILL GET INTO THE DETAILS.

21          FIRST, THE GOVERNMENT ISSUED A PRESS RELEASE

22   YESTERDAY, WHICH I SAW, INDICATING THAT THE ADMINISTRATION HAD

23   COMPLETE REUNIFICATION FOR ELIGIBLE CHILDREN UNDER AGE FIVE.

24   THERE WAS CAREFUL VETTING, THE GOAL IS THE WELL-BEING OF THE

25   CHILD.  AND THAT THEY WILL CONTINUE TO WORK IN A GOOD FAITH

1   EFFORT TO REUNIFY FAMILIES.

2           AND I THINK THAT THAT, BY AND LARGE, IS TRUE.  THERE

3   IS SUBSTANTIAL COMPLIANCE.  THERE IS GOOD FAITH BEING

4   DEMONSTRATED, IN NO UNCERTAIN TERMS AND MEASURES, BY THE

5   GOVERNMENT.  THERE IS A COLLABORATIVE PROCESS THAT IS WELL

6   UNDERWAY.  THERE ARE SOME BUMPS TO BE EXPECTED AND THERE WILL

7   CONTINUE TO BE, BUT THE PARTIES ARE REALLY WORKING THROUGH THE

8   ISSUES IN A VERY MEASURED AND SUCCESSFUL WAY, GIVEN THE

9   ENORMITY OF THE UNDERTAKING.

10          THE MEET-AND-CONFER PROCESS IS IMPORTANT, AND OF

11  COURSE THE PARTIES WILL CONTINUE TO DO THAT.  AS DISPUTES

12  ARISE, AS THEY MAY, THOSE CAN BE ADDRESSED BY THE COURT

13  THROUGH THE PROCESS WE HAVE IDENTIFIED.  OPEN COMMUNICATION,

14  ADVANCED PLANNING BY ALL GOVERNMENT AGENCIES SO THAT THERE IS

15  COMMUNICATION WITH PLAINTIFFS' COUNSEL IS CRITICAL, AND TO BE

16  EXPECTED THROUGHOUT THE PROCESS.

17          AND IT IS ALSO IMPORTANT TO NOTE THAT THE

18  GOVERNMENT, IN ITS ATTEMPTS TO REUNIFY FAMILIES AND TO MEET

19  THE DEADLINES, HAS BEEN OVER-INCLUSIVE, AND THAT SPIRIT IS

20  REUNIFYING FAMILIES THAT ARE NOT TECHNICALLY WITHIN THE CLASS.

21  AND THAT IS COMMENDABLE BECAUSE ALL OF THE FAMILIES THAT HAVE

22  BEEN SEPARATED, EVEN THOSE THAT ARE NOT TECHNICALLY WITHIN THE

23  CLASS, OUGHT TO BENEFIT BY THE PROCESS THAT'S IN PLACE.  AND I

24  THINK THAT'S WHAT THE GOVERNMENT IS ENDEAVORING TO DO.

25          BEING MORE SPECIFIC NOW, IN THE BRIEFING THERE IS --

1  THE NUMBERS, THEY CAN VARY JUST SLIGHTLY, SO THESE NUMBERS ARE

2  NOT CONCRETE BUT THEY ARE CERTAINLY CLOSE.

3      THE GOVERNMENT HAS IDENTIFIED 103 CHILDREN IN THE

4  UNDER-FIVE GROUP.  57 HAVE BEEN REUNITED.  22 THE GOVERNMENT

5  HAS DETERMINED ARE NOT ELIGIBLE.  APPROXIMATELY 11 HAVE

6  SERIOUS CRIMINAL HISTORY, AND SEVEN ARE NOT PARENTS.

7      A QUICK QUESTION HERE.  OF THE 11 WITH SERIOUS

8  CRIMINAL HISTORY, ARE THOSE INDIVIDUALS, DO YOU KNOW, ARE THEY

9  IN ICE DETENTION?  HAVE ANY BEEN PAROLED?

10     IF YOU DON'T KNOW THAT IS FINE.  I WAS JUST CURIOUS.

11     **MS. FABIAN:**  I DON'T BELIEVE SO BUT I CAN'T

12 DEFINITIVELY SAY TODAY, YOUR HONOR.

13     **THE COURT:**  MEANING THEY ARE IN ICE DETENTION MOST

14 LIKELY.

15     **MS. FABIAN:**  I BELIEVE THEY WOULD ALL BE IN ICE

16 DETENTION.

17     **THE COURT:**  WHICH MAKES SENSE IF THEY HAVE SERIOUS

18 CRIMINAL HISTORY.

19     **MS. FABIAN:**  EXACTLY, YOUR HONOR.

20     **THE COURT:**  THERE ARE A NUMBER OF PARENTS THAT FALL

21 INTO THIS GROUP OF 22 NOT ELIGIBLE THAT I AM ASSUMING THE

22 PARTIES WILL KEEP TRACK OF AND REUNIFY AT THE APPROPRIATE

23 TIME.

24     SO THERE IS ONE INDIVIDUAL WHO HAS A COMMUNICABLE

25 DISEASE.  WHEN THAT DISEASE, HOPEFULLY, IS TREATED

1    SUCCESSFULLY HE OR SHE WILL BE REUNITED.

2          THERE IS ONE ADULT THAT HAD A PLACEMENT SITUATION

3    INVOLVING ANOTHER ADULT WHO HAD CRIMINAL HISTORY.  I AM

4    ASSUMING THAT OTHER ARRANGEMENTS HAVE BEEN MADE FOR THAT

5    PARENT AND A HOME TO GO TO, AND AT AN APPROPRIATE TIME THERE

6    WOULD BE REUNIFICATION.

7          THERE WAS ANOTHER PARENT IDENTIFIED WITH A FALSE

8    BIRTH CERTIFICATE.

9          AND WAS THE GOVERNMENT PLANNING TO DO DNA TESTING ON

10   THAT INDIVIDUAL?

11         **MS. FABIAN:**  THAT WOULD HAVE BEEN THE NORMAL COURSE,

12   SO I WILL CONFIRM THAT.  BUT THAT WOULD BE THE FOLLOWUP.

13         **THE COURT:**  ALL RIGHT.

14         THEN THERE ARE TWO INDIVIDUALS APPARENTLY WHO ARE

15   GRANDPARENTS.  AND THERE WAS SOME DISCUSSION LAST TIME WHETHER

16   OR NOT THEY WOULD BE INCLUDED.  SO IT MAY BE THROUGH A

17   MEET-AND-CONFER PROCESS THAT THEY WILL BE DEEMED TO BE

18   SUITABLE CUSTODIANS.  WE DON'T HAVE TO ADDRESS THAT NOW, BUT

19   IT SEEMS LIKE SOME OF THESE INDIVIDUALS THAT I AM TALKING

20   ABOUT MAY BE REUNIFIED AT A LATER TIME.

21         **MS. FABIAN:**  YOUR HONOR, I WOULD SAY THAT A

22   GRANDMOTHER WOULD BE A PERMISSIBLE SPONSOR UNDER THE ORDINARY

23   PROCESSES THAT WOULD JUST GO THROUGH THE TVPRA SUITABILITY

24   ANALYSIS.  BUT THAT IS AN OPTION FOR A GRANDMOTHER TO APPLY AS

25   A SPONSOR.

**THE COURT:** OKAY. LET'S DEFER ON THAT. IT MAY BE THAT THE MORE STREAMLINED PROCESS CAN BE USED. BUT A GRANDMOTHER DOESN'T FALL DIRECTLY WITHIN THE CLASS DEFINITION, SO THAT'S A GRAY AREA THAT HOPEFULLY CAN BE WORKED OUT, ABSENT SOME MODIFICATION OF THE CLASS DEFINITION OR COURT INTERVENTION.

THERE ARE 24 PARENTS NOT CURRENTLY ELIGIBLE. 12 HAVE BEEN REMOVED WITHOUT THEIR CHILD. THAT IS ONE OF THE DISTURBING REALITIES OF THIS SITUATION. AND SO THE PARTIES ARE LOOKING CAREFULLY TO FIND THOSE PARENTS AND THEN TO SET UP A PROCESS BY WHICH THE PARENT GETS TRAVEL DOCUMENTS FOR THE CHILD, AND THEN THE COURT CAN ORDER A TIME FRAME FOR REUNIFICATION.

**MR. GELERNT:** YES, YOUR HONOR.

**THE COURT:** HERE, LET ME RUN THROUGH SOME OF THESE THOUGHTS, THEN WE CAN HAVE MORE DISCUSSION.

IT SEEMS TO ME ON THE PARENTS WHO HAVE BEEN DEPORTED WITHOUT THEIR CHILDREN, ONCE THEY ARE RELOCATED, AND ASSUMING THEY WANT THE CHILD RETURNED, AND ASSUMING THEN THAT THE CHILD'S DOCUMENTATIONS FOR TRAVEL ARE OBTAINED, THAT ONCE THE GOVERNMENT IS IN RECEIPT OF THOSE TRAVEL DOCUMENTS THAT REUNIFICATION COULD OCCUR WITHIN SEVEN DAYS.

11 ARE IN CRIMINAL PROCEEDINGS. THIS SPEAKS TO THE ISSUE FOR THE NEED OF THE VARIOUS AGENCIES, INCLUDING DOJ, DHS, AND HHS, AND MORE SPECIFICALLY B.O.P., ICE, CBP, AND

JULY 13, 2018

OR.R., HHS, TO BE COMMUNICATING SO THAT WHEN PARENTS COME OUT OF CRIMINAL PROCEEDINGS THERE IS A PROCESS IN PLACE BY WHICH THERE IS NOTIFICATION TO THE RESPECTIVE AGENCIES AND THE GOVERNMENT BEGINS TO AFFIRMATIVELY TAKE STEPS TO REUNIFY THOSE PARENTS.

I AM ASSUMING OF THE 11 MANY OF THOSE PARENTS WILL BE OUT OF CRIMINAL PROCEEDINGS SOONER RATHER THAN LATER.  AND THEN ASSUMING THEY ARE CLASS MEMBERS, FALL WITHIN THE DEFINITION, WOULD BE ELIGIBLE FOR REUNIFICATION AT AN APPROPRIATE TIME.

MOVING MORE SPECIFICALLY TO -- THERE IS ONE OTHER ISSUE.  THE GOVERNMENT'S BRIEFING IN THE JOINT MOTION INDICATES THAT THERE WERE 16 PARENTS IN ICE CUSTODY THAT THE GOVERNMENT WAS RUNNING UP AGAINST THE DEADLINE, SO 13 OF THE 16 THE GOVERNMENT DID NOT CONFIRM PARENTAGE.  AND, SIMILARLY, THERE WERE EIGHT PAROLED OR RELEASED PARENTS, AND THE GOVERNMENT DID NOT CONFIRM PARENTAGE AS TO SEVEN OF THE EIGHT.

AND THE GOVERNMENT'S EXPLANATION IS THAT IT CONSTRUED THE COURT'S DIRECTION TO PROVIDE FOR REUNIFICATION EVEN IF PARENTAGE WAS NOT CONFIRMED; AND THAT IS NOT ACCURATE.

THE CLEAR DIRECTIVE I MADE, AND I THOUGHT THE GOVERNMENT UNDERSTOOD, WAS THAT CONSISTENT WITH THE GOVERNMENT'S PRESS RELEASE ABOUT THE WELL-BEING OF THE CHILD AND CAREFUL VETTING, THAT THAT OCCURS.  THAT PARENTAGE BE CONFIRMED, EITHER THROUGH DOCUMENTATION, AND THEN IF NECESSARY

1    THROUGH DNA TESTING.  AND THAT CAN BE DONE PRIOR TO THE

2    REUNIFICATION DEADLINE.

3              SO WHAT I WAS HOPING IS THAT THE CHILDREN COMING UP

4    AGAINST THE JULY 10 DEADLINE, IF NECESSARY, WOULD BE SUBJECT

5    TO DNA TESTING OR SOME CONFIRMATION PROCESS THAT SATISFIED THE

6    GOVERNMENT THAT PARENTAGE WAS NOT AN ISSUE.

7              SO, GOING FORWARD, I THINK IT IS IMPORTANT THAT

8    THERE BE A CLEAR UNDERSTANDING THAT PARENTAGE BE DETERMINED,

9    EITHER THROUGH DOCUMENTATION AND/OR THROUGH DNA TESTING, PRIOR

10   TO REUNIFICATION.

11             **MS. FABIAN:**  I WOULD LIKE TO TALK ABOUT THAT A

12   LITTLE MORE.  IS THAT -- SHOULD WE DO THAT NOW?

13             **THE COURT:**  WE CAN -- WELL, WHY DON'T WE.

14             **MS. FABIAN:**  I GUESS TO FURTHER CLARIFY THAT THE

15   QUESTION IS, HOW AFFIRMATIVE DOES THE -- DOES THE CONFIRMATION

16   NEED TO BE IN TERMS OF IS -- IS NO DOCUMENTATION SUFFICIENT --

17   I THINK WHAT WE UNDERSTOOD IS THAT YOUR HONOR SAID IF THERE IS

18   ADVERSE EVIDENCE RELATING TO PARENTAGE THAT THAT WOULD GIVE

19   RISE TO A NEED TO DO DNA TESTING.

20             AND I WANT TO ADD THAT SOME OF THIS MAY -- SOME OF

21   WHAT WAS MENTIONED IN THE GOVERNMENT'S REPORT WAS RELATED TO

22   SORT OF GETTING SOME OF THESE CLARIFICATIONS CLOSER TO THE

23   DEADLINE.

24             **THE COURT:**  YES.

25             **MS. FABIAN:**  I THINK THAT MAY BE PART OF THE ISSUE.

1  BECAUSE DNA TESTING WAS UNDERWAY FOR THOSE INDIVIDUALS FOR THE

2  MOST PART, IT JUST HADN'T BEEN COMPLETED AND IT COULDN'T BE

3  COMPLETED IMMEDIATELY.  SO I KNOW WE DID HAVE A CONVERSATION

4  ABOUT THAT.

5          BUT I THINK THE REAL POINT OF CLARIFICATION THERE IS

6  THAT IN THE FACE OF NO ADVERSE INFORMATION ABOUT PARENTAGE,

7  THE QUESTION WOULD BE WHETHER THE COURT CONSIDERS THAT

8  CONFIRMATION OF PARENTAGE.  AND THAT MAY BE SOMETHING FOR THE

9  PARTIES TO MEET AND CONFER ON.

10          **THE COURT:**  YES.

11          **MS. FABIAN:**  SINCE WE ARE TALKING ABOUT IT I WANTED

12  TO --

13          **THE COURT:**  I JUST MADE THE ASSUMPTION THAT 13 OF

14  THE 16 AND SEVEN OF THE EIGHT THAT WE JUST REFERENCED THE DNA

15  TESTING WASN'T COMPLETE BUT THAT THE GOVERNMENT MUST HAVE

16  SATISFIED ITSELF, GIVEN THE EXISTING DOCUMENTATION, THAT THERE

17  WAS A COMFORT LEVEL FOR UNIFYING THOSE CLASS MEMBERS WITH

18  THEIR CHILDREN.

19          GOING FORWARD ALL I COULD SAY IS THAT I THINK IN THE

20  VAST MAJORITY OF THESE CASES THERE IS GOING TO BE SUFFICIENT

21  DOCUMENTATION TO CONFIRM PARENTAGE, OR THE DNA TESTING CAN BE

22  USED GOING FORWARD.

23          IF THERE IS -- AND THE GOVERNMENT HAS IDENTIFIED A

24  CASE OR TWO WITH THIS GROUP OF 103 WHERE THEY HELD BACK TO

25  MAKE A DNA CONFIRMATION.

1          SO I DON'T WANT TO SPECIFY WHAT IS REQUIRED.  THE
2     GOVERNMENT, OF COURSE, HAS TO HAVE THAT DISCRETION, AND HAS TO
3     DO THE VETTING AND HAS TO DO IT IN GOOD FAITH.  IT HAS TO BE
4     DONE QUICKLY, AND IT CAN DO ALL OF THOSE THINGS.
5          **MS. FABIAN:**  I THINK THAT YOU WILL FIND, YOUR HONOR,
6     THERE ARE CASES WHERE THERE IS NOT DOCUMENTATION.  AND I THINK
7     THOSE ARE THE CASES WHERE IT DOES BECOME MORE DIFFICULT.
8          **THE COURT:**  YES.  AND THERE, AS WE DISCUSSED LAST
9     TIME, DNA TESTING CAN BE DONE, SUBJECT TO THE PROTECTIVE
10    ORDER.  SO THAT'S A POWERFUL TOOL AND IT IS AVAILABLE.
11         MR. GELERNT.
12         **MR. GELERNT:**  WE UNDERSTOOD YOUR HONOR'S ORDER THE
13    SAME WAY THAT -- BUT I THINK THE ONLY THING THAT MAYBE JUST WE
14    WANT TO CLARIFY IS, WE DON'T UNDERSTAND -- SORT OF AS A COMMON
15    SENSE MATTER BUT I THINK MORE IMPORTANTLY THE RECORD EVIDENCE
16    YOU HAVE, PARTICULARLY FROM PROFESSOR GUGGENHEIM, THAT THE
17    ONLY WAY TO VERIFY PARENTAGE, TO GET A COMFORT LEVEL AS YOUR
18    HONOR PUT IT, FROM A PROFESSIONAL STANDPOINT IS DNA TESTING OR
19    THE BIRTH CERTIFICATES.
20         AS YOUR HONOR KNOWS, A LOT OF ASYLUM SEEKERS HAVE A
21    HARROWING JOURNEY HERE AND CAN'T BRING THEIR DOCUMENTS OR
22    CANT' GET THEM FROM THE GOVERNMENT THEY ARE RUNNING FROM.  SO
23    THAT I THINK IN A LOT OF CASES A PROFESSIONAL JUDGMENT IS IF
24    THE LITTLE GIRL, TWO YEARS, IS CLINGING TO HER PARENT,
25    SCREAMING MOMMY, MOMMY ALL THE TIME, I THINK THE ICE CASE

MANAGER OR WHOEVER IS THERE, WOULD MAKE A PROFESSIONAL

JUDGMENT WE HAVE A COMFORT LEVEL, THIS IS A PARENT.

      SO I WOULD JUST SAY -- AND IT SOUNDS LIKE THAT IS

WHAT YOU ARE SAYING, YOUR HONOR, THAT THERE IS NO

HARD-AND-FAST RULE HOW TO REACH THAT COMFORT LEVEL.

      **THE COURT:** THAT IS EXACTLY RIGHT. AND A LOT OF

THIS, OF COURSE, IS JUST COMMON SENSE, IT IS INTUITIVE. SO I

DON'T WANT TO SPELL OUT WHAT IS OR IS NOT REQUIRED.

      I AM ASSUMING THAT THE GOVERNMENT HAS THE PROPER

CASE MANAGERS AND OTHER PERSONNEL THAT MAKE THESE

DETERMINATIONS.

      **MS. FABIAN:** I THINK WE UNDERSTAND YOUR HONOR'S

ORDER THE SAME WAY. I WOULD SAY THAT FOR HHS FOR THE NORMAL

PROCESS THEY WOULD WANT A HIGHER LEVEL OF CONFIRMATION AND

THAT WOULD BE ABSOLUTE CONFIRMATION OF DOCUMENTATION OR DNA,

BUT WE UNDERSTAND YOUR HONOR'S ORDER TO LOOK AT OTHER FACTORS.

      AND I THINK IT IS -- WE ARE TALKING ABOUT -- I STILL

SAY THAT THERE ARE CASES WHERE BASED ON WHAT THE GOVERNMENT IS

ABLE TO OBSERVE IN CURRENT CIRCUMSTANCES IT MAY NOT BE

POSSIBLE -- THERE MAY TRULY BE NO EVIDENCE. AND THEN I

UNDERSTAND YOUR HONOR TO SAY IN THOSE CASES, IF THERE IS TRULY

NOTHING ON WHICH THE GOVERNMENT CAN MAKE A DETERMINATION, THAT

IT COULD USE DNA EVIDENCE IN THOSE CASES. AND I UNDERSTAND

THAT THE PROFFER IS THAT THAT IS UNLIKELY AND THERE MAY BE

OTHER EVIDENCE TO LOOK AT.

JULY 13, 2018

1        **THE COURT:**  YES.

2        **MR. GELERNT:**  WE WOULD, OF COURSE, AGREE WITH THAT,

3   YOUR HONOR, AND SUBJECT TO WHAT YOUR HONOR SAID ABOUT

4   EXPUNGING AFTERWARDS.

5        **THE COURT:**  YES.

6        **MR. GELERNT:**  BUT OBVIOUSLY AGREE THAT AS A LAST

7   RESORT THEY OUGHT TO USE THE DNA TESTING.

8        **THE COURT:**  YES.  SO IT HAS TO BE DONE IN A TIMELY

9   MANNER.  SO WHOEVER IS DOING THIS, IF THEY DON'T HAVE

10  SUFFICIENT DOCUMENTATION OR EVIDENCE OR THAT COMFORT LEVEL,

11  THEN THEY CAN DNA TEST.  AND THEY NEED TO DO IT IN A TIME

12  WHERE THEY CAN RELEASE AND REUNIFY OR DETAIN AND REUNIFY

13  WITHIN THE TIME FRAME SET OUT FOR THIS NEXT GROUP, THAT WOULD

14  BE BY JULY 26.

15       LET'S KEEP GOING DOWN THE LIST BECAUSE SOME OF THAT

16  WE ARE GOING TO GET TO.

17       THE GOVERNMENT HAS INDICATED THAT IT WILL PROVIDE A

18  LIST OF CLASS MEMBERS TODAY.  HAS THAT BEEN DONE OR THAT IS IN

19  PROCESS?

20       **MS. FABIAN:**  I AM WAITING TO RECEIVE IT, AND AS SOON

21  AS I CAN LOG IN I WILL GET THAT OVER.  BUT IT WOULD BE A LIST

22  OF CLASS MEMBERS, AND THEN ALSO A LIST OF THE CHILDREN.

23       **THE COURT:**  IS IT THE CLASS MEMBERS IN ICE CUSTODY,

24  AND HOW MANY?  AND WHAT ABOUT CLASS MEMBERS THAT ARE OUT OF

25  ICE CUSTODY?

JULY 13, 2018

1          **MS. FABIAN:**  THE LIST TO BE PROVIDED TODAY WOULD BE

2     CLASS MEMBERS IN ICE CUSTODY.  AND THIS MAY GO TO SORT OF THE

3     BIGGER-PICTURE QUESTION OF THE PROVISION OF INFORMATION.

4               I WANT TO, BEFORE WE GET THERE, SAY ONE THING THAT I

5     THINK IS IMPORTANT.

6               THE GOVERNMENT HAS PLANS WELL UNDERWAY FOR THE NEXT

7     STAGE.  I EXPECT THAT WE WILL BE FILING SOMETHING WITH THE

8     COURT LATER TODAY ON THOSE.

9               I THINK THAT IT WOULD BE HELPFUL AS WE TALK ABOUT

10    THE -- THEN THE PLANS AND THAT WE LOOK AT THAT AND TALK AS

11    SOON AS POSSIBLE AFTER YOUR HONOR HAS SOME TIME TO LOOK AT

12    THAT IN TERMS OF SETTING THE SPECIFICS.

13              BUT WHAT I WILL SAY IS THAT IN ORDER TO GET

14    INFORMATION TO PLAINTIFFS' COUNSEL AS QUICKLY AS POSSIBLE WE

15    WOULD LIKE TO GET THEM INFORMATION ABOUT CLASS MEMBERS IN ICE

16    CUSTODY, AND A LIST OF THE CHILDREN IDENTIFIED BY HHS.  AS WE

17    TALKED ABOUT BEFORE SOMETIMES THAT LIST -- THE LIST OF

18    CHILDREN REDUCES AS WE GO THROUGH THE PROCESS BECAUSE THEY

19    ARE -- IT IS IDENTIFIED -- THEY ARE IDENTIFIED THROUGH A

20    DIFFERENT PROCESS.  AND AS WE SAW WITH THE FIRST LIST, THAT

21    THAT NUMBER OR THAT LIST WILL REDUCE.

22              BUT IN ORDER TO GIVE PLAINTIFFS' COUNSEL THE

23    OPPORTUNITY TO START REACHING OUT TO FOLKS AND HAVE -- WORK

24    WITH THEIR OTHER ADVOCATES TO REACH OUT TO FOLKS WE THOUGHT

25    THAT INFORMATION WAS SOMETHING THAT WE COULD GIVE UP FRONT AND

1    LET THAT PROCESS BE UNDERWAY.

2              I THINK THEN AS FAR AS PROVIDING ADDITIONAL

3    DOCUMENTATION GOING FORWARD OUR HOPE WOULD BE THAT ONCE

4    EVERYONE CAN TAKE A LOOK AT THE PLAN -- AND WE ARE CONCERNED

5    THAT SOME OF THE REQUESTS MADE BY PLAINTIFFS IN THEIR SECTION

6    OF THE JOINT STATEMENT WOULD -- THEY REQUIRE A LOT OF WORK

7    FROM THE OPERATORS.  THEY WOULD, WE FEEL, INTERFERE AND DELAY

8    THE PROCESS THAT WE ARE IMPLEMENTING TO START REUNIFYING

9    FAMILIES IMMEDIATELY.

10             **THE COURT:**  I DID NOT SEE THE LIST FOR THE

11   UNDER-FIVE, SO I WASN'T SURE WHAT WAS ON IT.  I AM ASSUMING

12   THAT IS THE PARENT'S NAME AND A-FILE NUMBER.

13             **MS. FABIAN:**  I THINK THAT THE DIFFICULTY IN THAT

14   LIST THAT TAKES THE OPERATOR TIME TO -- WITHOUT GOING INTO --

15   WELL, I WON'T GO INTO SPECIFICS OF ANY INDIVIDUALS, BUT THE

16   DIFFICULTY OF THAT LIST IS THAT IT REQUIRES THE WORK OF

17   OPERATORS FROM HHS AND ICE SITTING DOWN TOGETHER AND MARRYING

18   UP THE INFORMATION.

19             THAT DOES HAPPEN IN THE REUNIFICATION PROCESS, BUT

20   IT HAPPENS AT THE FIELD LEVEL.  SO TO MARRY THAT INFORMATION

21   ON A LIST ACROSS THE BOARD TAKES OPERATORS FROM BOTH -- FROM

22   BOTH AGENCIES SITTING DOWN TOGETHER AND THEN GETTING ALL OF

23   THE INFORMATION IN FROM THEIR FIELD AND THEN MARRYING IT UP

24   TOGETHER.

25             THOSE OPERATORS WHO ARE DOING THAT AT THE

JULY 13, 2018

1    HEADQUARTERS LEVEL ARE THE SAME FOLKS WHO ARE OVERSEEING THIS

2    PROCESS AT THE FIELD LEVEL, AND THE FOLKS PROVIDING THE

3    INFORMATION AT THE FIELD LEVEL ARE THE FOLKS IMPLEMENTING THE

4    REUNIFICATION.

5         SO THE NATURE OF TRYING TO GATHER THAT INFORMATION

6    AND MARRYING IT UP TOGETHER IN A MASTER LIST TAKES A LOT OF

7    OPERATOR TIME THAT DOESN'T SPEAK TO THE PROCESS THAT IS

8    HAPPENING TO GROUND WHICH IS VERY INDIVIDUALIZED AT THE FIELD

9    LEVEL.

10        SO THAT'S WHY OUR CONCERN WITH -- IT IS NOT

11   NECESSARILY INFORMATION, ANY OF THE INFORMATION IS AVAILABLE,

12   IT IS THE MARRYING UP OF THE INFORMATION IN A WAY -- AND I

13   THINK PLAINTIFFS WOULD AGREE THAT EVEN JUST IN THE INITIAL WAY

14   THAT IT WAS DONE IT WAS LESS USEFUL UNTIL REALLY THE LAWYERS

15   GOT INVOLVED OVER THE WEEKEND LAST WEEKEND AND TALKED TO THE

16   OPERATORS ABOUT WHAT INFORMATION NEEDED TO BE INVOLVED.  BUT

17   THAT WAS A LOT OF WORK THAT DOESN'T GO TO HAVING THE OPERATORS

18   WORKING ON THE REUNIFICATION PROCESS.

19        SO I WOULD ABSOLUTELY AGREE THAT PROVIDING

20   INFORMATION IS IMPORTANT.  AND I WOULD HOPE WE CAN COME TO A

21   WAY -- I THINK YOUR HONOR SUGGESTED LAST WEEK THAT WE WOULD

22   TALK ABOUT MAYBE LISTS BY GROUPS OF -- OF FOLKS IN CERTAIN

23   SITUATIONS OR OTHER WAYS.

24        I THINK THAT WHEN EVERYONE LOOKS AT WHAT WE HOPE TO

25   FILE LATER TODAY THAT GIVES MORE DETAILS ABOUT HOW THAT WILL

JULY 13, 2018

1  GO, THAT MAY GUIDE WHAT SORT OF INFORMATION WE CAN THEN

2  PROVIDE REGULARLY IN A WAY THAT WON'T INTERFERE WITH THAT

3  PROCESS.

4         **THE COURT:**  WHAT IS IT THAT YOU ARE HOPING TO

5  PROVIDE TODAY?  WHAT IS THE INFORMATION?

6         **MS. FABIAN:**  IT WILL INCLUDE -- ESSENTIALLY

7  DETAILING THE PLAN FOR THE REUNIFICATION OF THE NEXT GROUP OF

8  INDIVIDUALS, FROM FIVE TO 17.

9         **THE COURT:**  WHAT IS THAT PLAN?  ARE YOU DOING IT BY,

10  FOR EXAMPLE, PARENTS IN ICE CUSTODY, OR WHAT'S THE --

11         **MS. FABIAN:**  AS A GENERAL MATTER -- AND IT IS SORT

12  OF BEING FINALIZED FOR PRESENTATION AND SO I WOULD PREFER TO

13  HAVE YOU SEE IT IN TOTAL.

14         BUT WHAT I CAN SAY IS THAT THE PLAN IS TO MOVE FOLKS

15  WHO ARE -- HAVE -- DON'T RAISE CONCERNS AS FAR AS

16  REUNIFICATION, MOVE THEM FORWARD AND START REUNIFYING THEM

17  QUICKLY.  LARGELY FOR OUR PURPOSES THAT IS GOING TO BE FOLKS

18  IN ICE CUSTODY.

19         **THE COURT:**  YES.

20         **MS. FABIAN:**  BECAUSE THOSE REUNIFICATIONS CAN

21  HAPPEN --

22         **THE COURT:**  YES.

23         **MS. FABIAN:**  -- SORT OF IN OUR -- WE HAVE CONTROL

24  OVER THE OPERATIONAL ASPECT OF THOSE REUNIFICATIONS.  SO I

25  EXPECT THOSE TO HAPPEN QUICKLY.

JULY 13, 2018

1          THERE IS AN ATTEMPT TO, I THINK IN THE LAST ROUND --
2     AND I KNOW ONE OF THE ISSUES THAT PLAINTIFFS' COUNSEL RAISED
3     IN THE REPORT THAT IT WAS MORE DIFFICULT TO LOCATE -- TO FIND
4     THE LOCATIONS WHERE THOSE WERE OCCURRING.

5          I THINK THAT WILL BE LESS OF A PROBLEM THIS TIME.
6     IT IS MORE SPECIFIED.  I THINK THERE IS A MORE LIMITED NUMBER
7     OF LOCATIONS THAT ARE GOING TO BE USED SO IT WOULD BE POSSIBLE
8     FOR US TO IDENTIFY THOSE AND HAVE FOLKS AT THOSE LOCATIONS
9     RATHER THAN TRYING TO LOCATE A LOT OF DIFFERENT LOCATIONS
10    WHICH WAS -- WHICH WAS THE PROCESS THAT WAS USED FOR THE
11    UNDER-FIVES.

12         SO I THINK YOU WILL SEE THAT IT HAS BEEN VERY WELL
13    THOUGHT OUT AND DOES DEAL WITH SOME OF THE ISSUES THAT I THINK
14    PLAINTIFFS ARE CONCERNED ABOUT.

15         **THE COURT:**  I THINK IT IS IMPORTANT TO BEGIN
16    REUNIFYING NOW, REUNIFY AS WE GO.  THERE HAS GOT TO BE, OF
17    THIS NEXT LARGE GROUP, THERE HAS TO BE A BIG GROUP THAT IS AN
18    EASY CALL, THERE ARE NO ISSUES, AND CAN BE REUNIFIED MUCH
19    SOONER RATHER THAN CLOSER TO THE DEADLINE.

20         SO I AM UNDERSTANDING YOU TO BE SAYING THAT THAT IS
21    THE FIRST GROUP.

22         **MS. FABIAN:**  I EXPECT THAT YOU WILL SEE THAT, YOUR
23    HONOR.

24         **THE COURT:**  THEN, MR. GELERNT, WHAT IS THE
25    INFORMATION THAT YOU WANT?  I DID NOT SEE THE -- I DON'T NEED

1   TO SEE IT NOW, BUT THE COURT NEVER GOT THE LIST.

2            **MR. GELERNT:**  RIGHT.  SO, YOUR HONOR, I WAS ACTUALLY

3   GOING TO TELL YOU SO YOU HAVE A MUCH MORE CONCRETE

4   UNDERSTANDING OF WHAT WAS ON THAT LIST, BECAUSE IT REALLY

5   WASN'T THAT MUCH AND IT WAS VERY BASIC.  BUT IT IS INFORMATION

6   WE NEED, AND I AM NOT ENTIRELY SURE WHAT INFORMATION THE

7   GOVERNMENT IS PLANNING ON CUTTING OUT.  BUT HERE IS WHAT'S ON

8   IT.

9            FOR THE KIDS, IT IS THEIR NAME, A-NUMBER -- WHICH IS

10  CRITICAL, OBVIOUSLY -- THE LOCATION WHERE THEY ARE SO THAT WE

11  KNOW WHATEVER SERVICE PROVIDER MAY BE ATTACHED TO THEM AS WELL

12  AS THEIR AGE.

13           FOR THE PARENT IT IS JUST THE NAME, A-NUMBER, AND

14  LOCATION, IF THEY HAVE IT.

15           THE PLANS TO REUNITE.  IS THERE A PLAN, WHEN.  OR

16  ARE THEY SAYING THEY ARE NOT GOING TO REUNITE THEM BECAUSE

17  THEY BELIEVE THEY FALL OUT OF THE CLASS.  AND WHETHER THERE

18  HAS BEEN ANY ATTEMPT TO DO PARENTAGE AND BACKGROUND

19  VERIFICATION.

20           SO IT IS VERY BASIC TO GIVE US A SENSE OF WHERE

21  THINGS ARE.

22           YOUR HONOR, ARE WE -- BECAUSE COUNSEL FOR THE

23  GOVERNMENT I THINK SORT OF LAID OUT, AT LEAST IN GENERAL

24  TERMS, HER VISION FOR HOW THIS WOULD GO FORWARD, SO THIS IS

25  THE TIME THAT I SHOULD SORT OF RESPOND TO THAT?

1          **THE COURT:**  YES.

2          **MR. GELERNT:**  YEAH.  I MEAN, I WOULD START, I THINK,

3   BY THE GENERAL POINT THAT THINGS DIDN'T REALLY MOVE,

4   TRUTHFULLY, UNTIL YOUR HONOR HELD A STATUS CONFERENCE ON THAT

5   FIRST -- THAT FRIDAY LAST WEEK.

6          THE RULING WAS JUNE 26TH.  WE DIDN'T HEAR FROM THE

7   GOVERNMENT ABOUT ANY PLANS.  WE REACHED OUT, WE GAVE THEM A

8   WEEK BECAUSE WE FELT THAT WAS REASONABLE.  ON JULY 2ND WE

9   ASKED, SO ARE THERE PLANS?  CAN WE HAVE A CLASS LIST?

10         WE DIDN'T GET ANYTHING.  WE FINALLY CAME TO THIS

11  COURT JULY 6TH.  I THINK AT THAT POINT IT BECAME CLEAR TO US,

12  SINCE WE STILL DIDN'T HAVE A LIST AND THAT THERE STILL WASN'T

13  REALLY A PLAN FOR UNDER-FIVES AND I THINK -- I DON'T WANT TO

14  PUT WORDS IN YOUR HONOR'S MOUTH, BUT I THINK IT BECAME

15  SOMEWHAT CLEAR TO YOUR HONOR THAT YOU WOULD HAVE TO BE

16  INVOLVED IN THIS PROCESS.

17         SO YOU DID ORDER THAT THIS LIST BE PROVIDED.  IT

18  WASN'T ULTIMATELY COMPLETE UNTIL SUNDAY.  WE WERE BACK HERE

19  MONDAY AND TUESDAY, AND THERE WERE LOTS OF GLITCHES IN THE

20  PROCESS, INCLUDING THAT WE HAD SORT OF JUST FOUND OUT AT THAT

21  POINT THAT THE GOVERNMENT WAS DOING THE FULL UNIFICATION

22  PROCESS AND ASKING, ESSENTIALLY, FOR PARENTS TO REAPPLY TO

23  OBTAIN THEIR CHILDREN, AND THERE WERE OTHER GLITCHES.

24         WHAT IT SEEMS TO ME IS THAT THAT SUGGESTS THAT FAR

25  FROM THAT BEING A HINDRANCE TO MOVING THE REUNIFICATION

1    FORWARD IT ACTUALLY ENDED UP BEING INDISPENSABLE TO EVEN

2    GETTING THESE 58 CHILDREN REUNITED.  THEY DIDN'T MEET THE

3    DEADLINE, BUT AT LEAST THESE 58 ARE NOW REUNITED.

4            I DO NOT THINK, WITHOUT THE COURT'S INVOLVEMENT OR

5    WITHOUT THE GOVERNMENT PROVIDING INFORMATION ALMOST ON A DAILY

6    BASIS, THAT WOULD HAVE HAPPENED.

7            SO WE ARE -- WE FEEL THAT IT IS EXTREMELY IMPORTANT

8    THAT INFORMATION NOT BE REDUCED TO US.  THAT MORE INFORMATION

9    ALMOST BE PROVIDED AND ON A REGULAR BASIS.  NOT TO -- IN THE

10   COURT'S WORDS, NOT TO LEAVE THE COURT OR THE PLAINTIFFS IN THE

11   DARK WITH THE GOVERNMENT SIMPLY SAYING WE WILL GET IT DONE,

12   BECAUSE OBVIOUSLY IT CAME VERY CLOSE, THEY DIDN'T MEET THE

13   DEADLINE BY THEIR OWN CONCESSION.  I MEAN, SOME OF THE

14   INDIVIDUALS -- WE CAN TALK ABOUT HOW MUCH THEY MISSED THE

15   DEADLINE BY OR FOR WHAT REASONS.  BUT OBVIOUSLY THE

16   INFORMATION WE ARE ASKING FOR ON THE LIST IS VERY, VERY BASIC.

17           I CAN'T SPEAK TO EXACTLY WHAT THE OPERATORS ARE

18   DOING.  I WOULD SAY THAT SECRETARY AZAR DID SAY BEFORE

19   CONGRESS, WE CAN JUST HIT A BUTTON AND ALL OF THE INFORMATION

20   IS MATCHED.

21           THE GOVERNMENT IS OBVIOUSLY SAYING THAT IS NOT TRUE,

22   THEY NEED TO HAVE TWO PEOPLE DOING SORT OF A, BINGO, I HAVE

23   THAT KID, OH, GOOD, YOU HAVE THAT PARENT SOMEWHERE.

24           SO WE BELIEVE THAT THE STEPS WE LAID OUT FOR

25   NONCOMPLIANCE, THEY ARE NOT REALLY PUNITIVE STEPS.  WE DON'T

1    BELIEVE THAT THIS IS THE PLACE TO GET INTO SORT OF PUNITIVE

2    SANCTIONS.  WHAT WE TRIED TO LAY OUT IN THOSE STEPS IS

3    SOMETHING CONSTRUCTIVE GOING FORWARD SO THAT THERE WOULD BE

4    HARD DEADLINES FOR THE GOVERNMENT TO MEET THAT DIDN'T SIMPLY

5    SAY, LET'S MEET BACK HERE JULY 26TH AND HOPE THAT ALL OF THE

6    KIDS ARE REUNITED THAT ARE ELIGIBLE TO BE REUNITED.

7            I THINK THAT'S THE COURT'S PLAN GIVEN THAT THE COURT

8    SAID YOU DO WANT TO HAVE FUTURE STATUS CONFERENCES.

9            **THE COURT:**  YES.  MANY, AND IN SHORT ORDER.

10           DO YOU NEED, FOR EXAMPLE ON THE LIST THAT IS

11   PROVIDED, A PLAN TO REUNITE, AND WHETHER THE PARENTAGE

12   CONSIDERATION IS DONE?  DOES THAT NEED TO BE DONE RIGHT AWAY?

13           **MR. GELERNT:**  YOUR HONOR, LET ME BE CLEAR.  WE ARE

14   HAPPY TO GET THINGS ON A ROLLING BASIS BECAUSE WE DON'T WANT

15   TO WAIT.  WE WOULD WANT ANY INFORMATION WE CAN GET AS SOON AS

16   POSSIBLE.  SO IF WHAT WE ARE GOING TO GET TODAY IS PARENT'S

17   NAME AND A-NUMBER, CHILD'S NAME AND A-NUMBER, THAT IS GREAT.

18           **THE COURT:**  IT SEEMS TO ME FOR THE PEOPLE ON THE

19   GROUND, THE FIELD PERSONNEL, ICE AND HHS, THAT WHAT THEY CAN

20   DO AS THEY MATCH UP, MARRY UP THE INFORMATION, VERY QUICKLY,

21   IS GIVE, FOR THE CHILDREN, THE NAME, THE A-NUMBER, THE

22   LOCATION, AND THE AGE.

23           **MR. GELERNT:**  RIGHT.

24           **THE COURT:**  FOR THE PARENT, THE NAME, THE A-NUMBER,

25   AND THE LOCATION.  ISN'T THAT A LOT OF HELPFUL INFORMATION?

1        **MR. GELERNT:** FOR SURE, YOUR HONOR. I DON'T WANT TO

2 MAKE IT SEEM LIKE IT IS AN ALL-OR-NOTHING PROPOSITION FOR US.

3 WE WILL TAKE THAT.

4        I THINK THE ONLY THING I AM SUGGESTING IS THERE WERE

5 OBVIOUSLY GLITCHES IN GETTING PARENTAL VERIFICATION DONE BY

6 THE DEADLINE, SO WHAT WE WOULD HATE TO DO IS COME BACK HERE

7 JULY 25TH AND HEAR, WELL, THERE IS GLITCHES IN THIS PARENTAL.

8        **THE COURT:** YES.

9        **MR. GELERNT:** ESPECIALLY BECAUSE THOSE ARE THINGS WE

10 COULD HELP WITH.

11        I MEAN, I JUST WOULD NOTE RIGHT NOW WE ARE VERY

12 CONCERNED WITH NOT -- THIS IS AN ADDITIONAL POINT IN WHAT WE

13 LAID OUT FOR NONCOMPLIANCE, IT MAY GO TO THIS.

14        WE ALSO NEED VERY SPECIFIC INFORMATION AS SOON AS

15 POSSIBLE ABOUT WHO THEY DO NOT BELIEVE IS ELIGIBLE FOR

16 REUNIFICATION AND WHY, BECAUSE WE ARE GETTING THAT VERY LATE

17 AFTER THE DEADLINE, AND THEY ARE MAKING UNILATERAL DECISIONS.

18        AND WE UNDERSTAND TO SOME EXTENT THAT IS NECESSARY

19 BUT, FOR EXAMPLE, WE GOT AN AFFIDAVIT THIS MORNING SAYING THAT

20 SOMEONE THEY LEFT OUT WAS ACTUALLY ADOPTED -- THE FATHER

21 ADOPTED THE CHILD, SHOWED THE ADOPTION PAPERS, AND THEY WERE

22 STILL TAKEN OUT BECAUSE THEY WEREN'T THE PARENT.

23        NOW, THAT MIGHT HAVE BEEN A MISTAKE AT THE FIELD

24 LEVEL. I AM NOT SUGGESTING THAT THAT INSTRUCTION DIDN'T GO

25 OUT FROM HEADQUARTERS, I HAVE NO IDEA WHETHER IT DID OR NOT.

BUT THOSE ARE THE -- I MEAN, I AM GETTING AHEAD OF MYSELF
BECAUSE THAT IS THE OTHER CATEGORY OF INDIVIDUALS WHO ARE NOT
WITHIN THE CLASS.

     I THINK THAT IS WHY THE SOONER THE BETTER WE CAN GET
INFORMATION.  IT ALSO GOES TO THE LOGISTICS POINT THAT PARENTS
WERE LEFT ON A BUS STOP WITH THEIR CHILD.  I REALIZE IT MAY
NOT GO DOWN THAT WAY BUT --

     **THE COURT:**  THEY WOULD BE DIFFERENT INDIVIDUALS
PROVIDING INFORMATION OF THE PLAN TO RELOCATE AND WHETHER THE
PARENTAGE WAS CONFIRMED.

     **MR. GELERNT:**  RIGHT.

     **THE COURT:**  DO YOU AGREE?  AND THAT'S NOT THE
FIELD-LEVEL PEOPLE.

     **MR. GELERNT:**  I ACTUALLY AM NOT -- I WOULD DEFER TO
THE GOVERNMENT ABOUT EXACTLY WHERE THAT INFORMATION WOULD
COME.  I MEAN, I ASSUME HEADQUARTERS IS GETTING THAT FULL
INFORMATION AT SOME POINT, I JUST DON'T KNOW.

     AND NEEDLESS TO SAY, WE DON'T WANT TO SLOW DOWN THE
REUNIFICATION PROCESS, BUT I AM VERY WARY ABOUT STANDING HERE
AND SAYING TO YOUR HONOR, FINE, LET'S JUST LET THE GOVERNMENT
GO AHEAD AND DO IT WITHOUT ANY OVERSIGHT.

     I THINK WHAT HAS HAPPENED UP TO NOW SUGGESTS THAT
THE MORE OVERSIGHT THE BETTER.  YOU KNOW, I CAN'T SPEAK TO HOW
MANY OPERATORS HAVE BEEN PUT ON, WHETHER THEY CAN PUT
ADDITIONAL OPERATORS.  IT OBVIOUSLY IS VERY IMPORTANT EACH DAY

1  THAT THE CHILDREN ARE NOT REUNITED.  SO I WOULD HATE TO BE

2  BACK HERE JULY 26TH AND HEAR THAT THE GOVERNMENT TOOK OUT HALF

3  OF THE CLASS BECAUSE THEY BELIEVED, UNILATERALLY, AND I WOULD

4  JUST --

5          **THE COURT:**  LET ME ASK A FEW MORE QUESTIONS, AND

6  THEN I CAN PROVIDE A NUMBER OF RULINGS HERE VERBALLY, AND THEN

7  FOLLOW UP WITH A WRITTEN ORDER.

8          YOU HAVE ASKED, ON THE 58 REUNIFIED, THAT PLAINTIFFS

9  NEED MORE INFORMATION TO VERIFY THE ACCURACY OF THAT

10 ELIGIBILITY NUMBER.  SO THERE ARE YOU ASKING FOR MORE

11 INFORMATION ON 45 WHO WERE DEEMED TO BE NOT ELIGIBLE SO THAT

12 YOU CAN DETERMINE WHAT TO DO, OR ARE YOU ASKING FOR MORE

13 INFORMATION TO VERIFY THAT 58 HAVE, IN FACT, BEEN REUNIFIED,

14 OR BOTH?

15         **MR. GELERNT:**  I THINK BOTH, YOUR HONOR.  THE 58, I

16 THINK, IS EASY.  THE GOVERNMENT IS REPRESENTING TO YOU IN

17 COURT THAT THOSE 58 HAPPENED.

18         I WOULD NOTE AS WELL THAT YOUR HONOR WANTED A JOINT

19 SUBMISSION YESTERDAY BY 3:00 P.M. PACIFIC, AND THAT OBVIOUSLY

20 MEANT US RESPONDING TO THE NUMBERS.  WE NEVER SAW THE NUMBERS

21 FROM THE GOVERNMENT UNTIL MANY HOURS AFTER THEY RELEASED IT TO

22 THE PRESS.  THAT'S SOMETHING THAT I THINK HOPEFULLY GOING

23 FORWARD WILL NOT HAPPEN AGAIN.

24         THE GOVERNMENT MAY FEEL LIKE THE PRESS HAS THE RIGHT

25 TO SEE IT AT THE SAME TIME AS US, BUT AT LEAST WE SHOULD BE

1　GETTING IT SIMULTANEOUS. I MEAN, IT WAS LITERALLY HOURS AND

2　HOURS.

3　　　　IF THE GOVERNMENT IS GOING TO REPRESENT HERE IN

4　COURT THAT ALL 58 GOT DONE, I THINK WE WILL TAKE THAT

5　REPRESENTATION. WE WILL FOLLOW UP AND HOPE THAT WE CAN REACH

6　THE PARENTS, MAKE SURE, YOU DO HAVE YOUR CHILD WITH YOU.

7　　　　I THINK IT IS MORE ON THE OTHER GROUP IF, FOR

8　EXAMPLE, THAT FATHER WHO SAYS HE ADOPTED THE CHILD, HE HAS

9　LEGAL PAPERS, HE SHOWED THEM TO THE GOVERNMENT, THAT IS

10　EXACTLY WHY WE NEED MORE SPECIFIC INFORMATION.

11　　　　SOME OF IT IS THEY SAY THERE IS A WARRANT IN A

12　FOREIGN COUNTRY. MAYBE, MAYBE NOT. THAT KIND OF THING.

13　　　　SO IT IS A BIG DEAL WHEN THE GOVERNMENT UNILATERALLY

14　TAKES OUT CLASS MEMBERS.

15　　　**THE COURT:** IS THAT THE KIND OF INFORMATION YOU WANT

16　RIGHT AWAY, OR AFTER JULY 26TH?

17　　　　I AM ASKING BECAUSE THE GOVERNMENT IS MAKING A

18　PROFFER, WHICH I ASSUME IS IN GOOD FAITH, THAT WE ARE HOLDING

19　BACK THIS GROUP, 45, FOR VARIOUS REASONS. SOME OF THAT NUMBER

20　PLAINTIFFS WILL DISAGREE WITH.

21　　　**MR. GELERNT:** RIGHT.

22　　　**THE COURT:** BUT IN ORDER TO ACCOMPLISH THE

23　REUNIFICATION TO THE EXTENT WE CAN ON A TIMELY BASIS SHOULDN'T

24　WE BE FOCUSING ON THE NEXT GROUP, JULY 26TH DEADLINE, AND THEN

25　WE CAN BEGIN TO WORK THROUGH SOME OF THESE OTHER ISSUES?

1      **MR. GELERNT:** YOUR HONOR, I AGREE WITH THE
2 PRIORITIZATION. I JUST DON'T KNOW THAT THE GOVERNMENT IS
3 REALLY SO STRAPPED FOR RESOURCES THAT THERE IS LITERALLY A
4 FINITE NUMBER OF PEOPLE THEY CAN PUT ON THIS.

5      I JUST THINK IT IS -- THAT FATHER WAS EXPECTING TO
6 BE REUNIFIED, HE DIDN'T GET REUNIFIED. SO I DO FEEL
7 STRONGLY -- I REALIZE YOUR HONOR MAY ULTIMATELY NOT AGREE BUT
8 I DO FEEL STRONGLY THAT THERE NEEDS TO BE ADDITIONAL PEOPLE
9 PROVIDING ON A PARALLEL TRACK, HEY, PLAINTIFFS, WE ARE TAKING
10 THIS PERSON OUT, WE DON'T THINK HE IS REALLY THE FATHER, THIS
11 IS WHY.

12      IN TIME FOR US TO SAY, WAIT, HE GAVE THE PAPERS
13 ABOUT HIS ADOPTION ON THE LOCAL LEVEL, CAN YOU PLEASE DOUBLE
14 CHECK.

15      I WOULD JUST RESPECTFULLY ASK THE COURT TO LET THAT
16 GO ON A PARALLEL TRACK AS MUCH AS CAN BE DONE, BECAUSE I DO
17 NOT THINK THIS IS A SITUATION WHERE IT IS A SMALL LAW FIRM
18 THAT HAS A FINITE NUMBER OF ASSOCIATES.

19           **THE COURT:** ALL RIGHT.
20           **MS. FABIAN:** YOUR HONOR, COULD I RESPOND TO THAT?
21           **THE COURT:** YES.
22           **MS. FABIAN:** SO A COUPLE OF POINTS.

23      I WANT TO CLARIFY THE STATEMENT MADE BY SECRETARY
24 AZAR. IT WAS REPRESENTED THAT HE SAID HE COULD PUSH A BUTTON
25 AND MATCH UP PARENTS AND CHILDREN. THAT IS NOT WHAT HE

JULY 13, 2018

1   TESTIFIED TO.  HE TESTIFIED THAT HE COULD LOCATE ALL OF THE

2   CHILDREN IN CUSTODY, AND THAT IS ACTUALLY EXACTLY

3   REPRESENTATIVE OF WHAT WE OFFERED TO PROVIDE, WHICH IS THE

4   LIST OF CHILDREN THAT HHS CAN IDENTIFY AND PROVIDE.

5           **THE COURT:**  IT IS FINDING THE PARENTS.

6           **MS. FABIAN:**  WELL, AND WE HAVE THE -- I MEAN, ICE

7   CAN LOCATE THE PARENTS IN CUSTODY, AND THEN THE PROCESS THAT

8   WE WILL NEED TO OCCUR IS IDENTIFYING AND PROVIDING A LIST OF

9   PARENTS NOT IN CUSTODY, SO THESE ARE --

10          **THE COURT:**  WHAT ABOUT DOJ?

11          **MS. FABIAN:**  IT WOULD BE IDENTIFYING INDIVIDUALS WHO

12  MAY BE IN MARSHAL SERVICE CUSTODY AND THEN THERE MAY BE --

13  THAT INFORMATION WILL ULTIMATELY COME FROM DHS WHO WOULD KNOW

14  WHERE THE PARENT WENT FOLLOWING THE SEPARATION.

15          BUT, I MEAN, THE POINT -- THE POINT BEING MADE IS

16  THAT WHAT WE ARE TALKING ABOUT IS PROVIDING INFORMATION THAT

17  MAY BE -- QUICKLY THAT MAY BE A LITTLE MORE COMPARTMENTALIZED,

18  AND THEN MOVING FORWARD TO PROVIDE INFORMATION THAT IS BROUGHT

19  TOGETHER ON A MORE ROLLING BASIS.

20          BUT I THINK THE WAY TO FIGURE THAT OUT WOULD BE TO

21  LOOK AT THE PLAN AND FOR US TO SIT DOWN WITH PLAINTIFFS, AT

22  THAT POINT, AND SAY, YOU HAVE SEEN OUR PLAN, WHAT INFORMATION

23  WILL HELP YOU BEST WORK WITH US ON THE PLAN THAT WE ARE

24  IMPLEMENTING.

25          **THE COURT:**  THE REST OF THE CHILDREN, THAT WOULD BE

1  ALL CHILDREN, BUT THEIR PARENTS COULD BE IN, I GUESS, ONE OF

2  FOUR AREAS; ONE MIGHT BE IN ICE DETENTION, CBP DETENTION, DOJ

3  DETENTION, AND OTHERS MIGHT BE RELEASED OR PAROLED.

4        **MS. FABIAN:** I WOULD TAKE OUT CBP, MOST LIKELY. I

5  WOULD SAY ICE DETENTION, RELEASED, MARSHAL'S SERVICE,

6  POTENTIALLY STATE CRIMINAL CUSTODY. AND THEN YOU MAY HAVE A

7  BUCKET OF INDIVIDUALS THAT HAVE BEEN REMOVED.

8        **THE COURT:** AND SOME THAT HAVE BEEN RELEASED.

9        **MS. FABIAN:** AND ALSO MAYBE REMOVED.

10       **THE COURT:** YES. SO THERE IS FIVE BUCKETS. THERE

11 IS ICE, DOJ, STATE CUSTODY, PARENTS WHO HAVE BEEN RELEASED

12 INTO THE COMMUNITY, AND THOSE WHO HAVE BEEN REMOVED.

13       **MS. FABIAN:** OFF THE TOP OF MY HEAD, YES, YOUR

14 HONOR, I WOULD AGREE.

15       **THE COURT:** COULDN'T THE LIST, THEN, BE PROVIDED IN

16 THESE -- IT IS EASY TO GET THE LIST OF THE CHILDREN, THE

17 CHALLENGE IS FINDING THE PARENTS.

18       SO COULDN'T THE PARENT LIST BE IN THOSE BUCKETS, OR

19 SOMETHING CLOSE TO IT: ICE DETENTION, AS YOU MENTIONED AT THE

20 INCEPTION, THOSE IN DOJ DETENTION, THOSE WHO HAVE BEEN

21 RELEASED INTO THE COMMUNITY, AND THOSE WHO HAVE BEEN REMOVED,

22 AND THEN THERE WILL BE A SMALL NUMBER THAT ARE IN STATE

23 CUSTODY. COULDN'T THAT KIND OF PARENT LIST BE PROVIDED --

24       **MS. FABIAN:** I WOULD SAY --

25       **THE COURT:** -- ON A STAGGERED BASIS?

1        **MS. FABIAN:**  I WOULD SAY, AS A GENERAL MATTER -- AND

2   THAT'S WHY I SAY I THINK THEN IT WOULD BE USEFUL TO LOOK AT

3   THE PLAN.  SOME OF THOSE INDIVIDUALS WOULD NOT BE EVEN

4   ELIGIBLE FOR REUNIFICATION RIGHT AWAY, SO PROVIDING THOSE

5   LISTS RIGHT AWAY MAY NOT BE THE FIRST PRIORITY AS FAR AS

6   PROVIDING THE INFORMATION.

7        **THE COURT:**  RIGHT.

8        **MS. FABIAN:**  SO I DO THINK THAT THAT IS -- THAT

9   DIVIDING IT IN A WAY THAT WAS MORE RELATED TO WHAT IS

10  HAPPENING ON THE GROUND, THAT DOES MAKE SENSE.  I THINK WHAT

11  YOUR HONOR SAYS IS IN KEEPING WITH THAT.

12        I WANT TO -- BEFORE WE MOVE TOO FAR PAST IT, I WANT

13  TO MAKE SURE I HAVE SPOKEN CLEARLY ON THE DNA ISSUE, BECAUSE I

14  THINK WHAT YOU WILL SEE IN THE PLAN -- AND I THINK -- I SAID

15  THAT IT MIGHT BE A SMALL NUMBER WHO HAD ABSOLUTELY NO

16  EVIDENCE.  I THINK THAT MAY HAVE BEEN A MISSTATEMENT.  I THINK

17  THERE IS A POSSIBILITY THAT THERE IS A MUCH MORE SIGNIFICANT

18  NUMBER ABOUT WHOM THERE IS NO EVIDENCE.

19        AND I THINK WHAT YOU WILL SEE FROM WHAT DEFENDANTS

20  PLAN TO PROVIDE LATER IS THAT IT REALLY IS NOT POSSIBLE -- IF

21  ALL OF THOSE INDIVIDUALS WERE TO HAVE DNA TESTING IT WOULD NOT

22  BE POSSIBLE TO MEET THE COURT'S DEADLINE.

23        AND I KNOW THAT WE HAVE GONE BACK AND FORTH, AND WE

24  WOULD LIKE TO IMPRESS ON THE COURT THAT THERE HAS TO BE A

25  BALANCING OF THAT.  AND I JUST WANT TO MAKE SURE THAT I DIDN'T

1    SAY THAT WE CAN MEET THE DEADLINE IF WE DNA TESTED EVERYONE

2    FOR WHOM THERE WAS NO EVIDENCE, BECAUSE THAT'S -- THAT WOULD

3    NOT BE THE CASE.

4          **THE COURT:**  LET'S START BY GOING INTO THE BUCKETS

5    HERE.

6          SO IF THE GOVERNMENT IS ORDERED TO PROVIDE A LIST OF

7    PARENTS IN ICE DETENTION, WHICH IS WHERE WE STARTED AND I

8    THINK THAT WOULD BE THE LARGEST GROUP.

9          **MS. FABIAN:**  WE COMMITTED TO DOING THAT TODAY, YOUR

10   HONOR.

11         **THE COURT:**  YES.  COULDN'T THE PARENTAGE

12   DETERMINATION BE MADE?  THE PLAINTIFFS ARE PROPOSING BY

13   THURSDAY, JULY 19.  THAT IS A WEEK OUT, A LITTLE SHORT OF A

14   WEEK NOW, THURSDAY THE 19TH.  AND IT WOULD INCLUDE, I AM

15   ASSUMING, A VERY LARGE PERCENTAGE OF THE PARENTS.

16         **MS. FABIAN:**  YOUR HONOR, WHAT I WILL SAY IS THAT THE

17   GOVERNMENT HAS ALREADY IDENTIFIED A PLAN.  AND I APOLOGIZE

18   THAT IT IS NOT ON FILE WITH THE COURT TODAY FOR THE HEARING.

19   WE WANTED TO GET IT AS FULSOME AS POSSIBLE TO GET IT ON FILE.

20   I WOULD LIKE -- I MEAN, IF WE CAN GET IT ON FILE AND WE COULD

21   COME BACK EVEN THIS EVENING AND TALK ABOUT IT MORE.

22         BUT I AM CONCERNED -- I KNOW THAT MY FOLKS HAVE

23   LOOKED AT THE NOTES PROVIDED BY PLAINTIFFS AND SAID THAT THAT

24   WOULD SLOW DOWN WHAT THEY ARE PLANNING NOW, WHICH IS ALREADY

25   UNDERWAY.  AND I THINK WE WOULD EXPECT TO SEE REUNIFICATIONS

1  UNDER THAT PLAN VERY SHORTLY.

2          IT WOULD CONCERN ME TO PUT DEADLINES ON THAT AREN'T

3  RELATED TO THE PLANS ALREADY UNDERWAY, AND PARTICULARLY WITH

4  REGARD -- I MEAN, THIS GOES TO THE DNA QUESTION BECAUSE THE

5  PLAN IS TO -- IN ORDER TO BE ABLE TO MEET THE DEADLINE HHS HAS

6  SCALED BACK ITS PROCESSES BY WHICH IT DETERMINES PARENTAGE.

7  AND SO THERE WILL BE SITUATIONS WHERE HHS CANNOT SAY, UNDER

8  ITS OWN STANDARDS, THAT IT WOULD FEEL THAT PARENTAGE WAS MET.

9  AND WE ARE TRYING TO IDENTIFY A STANDARD THAT MEETS WHAT WE

10 UNDERSTAND THE COURT TO HAVE ORDERED.

11         SO THAT PROCESS IS EXPLAINED IN WHAT WE WILL FILE

12 TODAY, AND I THINK IT WOULD BE HELPFUL FOR THE COURT TO LOOK

13 AT THAT.  AND IF YOU DO FIND THAT THAT DOES NOT PROVIDE

14 SUFFICIENT DETERMINATION OF PARENTAGE, THEN IT MAY BE THAT WE

15 HAVE TO COME BACK AND TALK ABOUT TIMELINES AGAIN.  BUT WE HAVE

16 DEVELOPED A PLAN THAT WE BELIEVE WILL ALLOW US TO MEET THE

17 TIMELINE.

18         AND I THINK TO INSERT DEADLINES BASED ON WHAT

19 PLAINTIFFS HAVE SAID HERE TODAY WITHOUT LOOKING AT THAT, I

20 KNOW -- I SPOKE TO SOMEONE TODAY WHO SAID THAT WILL -- THESE

21 DEADLINES WOULD SLOW DOWN THE PROCESS WE HAVE UNDERWAY.

22         SO I AM NOT SAYING THAT THERE CAN'T BE REPORTING

23 INSERTED INTO THE PLAN THAT WE ARE PROVIDING.  I ABSOLUTELY

24 THINK THAT IS SOMETHING WE SHOULD DISCUSS.  BUT IT CONCERNS ME

25 TO INSERT THEM WITHOUT HAVING THE COURT AND PLAINTIFFS HAVE A

1    CHANCE TO LOOK AT THAT.

2            AND SO THAT IS WHAT I WOULD ASK, IF THAT IS -- I

3    COULD CERTAINLY SEE HOW QUICKLY WE CAN GET THAT ON FILE AND

4    TALK LATER TODAY, TOMORROW, FIRST THING MONDAY, WHATEVER

5    WORKS.  BUT WE -- I ABSOLUTELY THINK THAT THESE -- MAKING

6    THESE PLANS CONSISTENT WITH WHAT IS ALREADY UNDERWAY IS GOING

7    TO BE WHAT GETS US TO FULL REUNIFICATION AS QUICKLY AS

8    POSSIBLE.

9            **THE COURT:**  OKAY.  IT IS DIFFICULT TO DO ANYTHING

10   CONCRETE WHEN WE DON'T KNOW WHAT THE GOVERNMENT IS PROPOSING.

11           **MS. FABIAN:**  I UNDERSTAND, YOUR HONOR.  AND I CAN

12   GET -- IF YOU WANT ME, I CAN GO OUT IN THE HALLWAY AND FIND

13   OUT IMMEDIATELY HOW QUICKLY WE CAN GET THAT ON FILE.  I DON'T

14   THINK IT IS LONG.  AND I WOULD FEEL BETTER IF WE HAD THAT

15   DISCUSSION THEN WITH YOU HAVING HAD A CHANCE TO TAKE A LOOK AT

16   THAT.

17           **THE COURT:**  I THINK WHAT WOULD BE APPROPRIATE IS TO

18   MAKE DETERMINATIONS NOW AND THEN SUBJECT TO MODIFICATION,

19   BECAUSE I DON'T WANT TO LOSE TIME.  AND IT IS IMPORTANT THAT

20   THE GOVERNMENT DEVOTE WHATEVER RESOURCES ARE NECESSARY TO

21   ACCOMPLISH THIS, AND FROM LAST FRIDAY WE DETERMINED TO PURSUE

22   THE STREAMLINED PROCESS.

23           SO I WOULD LIKE TO MAKE SOME INDICATION TODAY AS TO

24   HOW WE WILL PROCEED, GET THE GOVERNMENT'S FILING LATER TODAY.

25   AND THEN WE CAN MEET MONDAY MORNING AGAIN, WITH COUNSEL, AND

1  SEE IF EVERYTHING IS ON TRACK OR IF THE GOVERNMENT IS

2  PROPOSING SOMETHING THAT IS EVEN BETTER.

3          SO ANOTHER WAY OF SAYING THIS IS, I AM PREPARED TO

4  MAKE SOME DETERMINATIONS THAT WILL START THE PROCESS, AND THEN

5  IF THE GOVERNMENT'S PROPOSAL IS BETTER THAT WOULD BE TERRIFIC;

6  IF IT IS NOT THEN I DON'T THINK I AM GOING TO BE INCLINED TO

7  GO ALONG WITH IT UNLESS THERE IS SOME VERY GOOD REASONS SHOWN.

8  SO I WOULD LIKE TO KEEP AN OPEN MIND ON THAT, BUT KEEP THE

9  PROCESS MOVING.

10         **MS. FABIAN:**  UNDERSTOOD, YOUR HONOR.  CAN I RESPOND

11  TO A COUPLE OF OTHER POINTS?

12         **THE COURT:**  YES.

13         **MS. FABIAN:**  WE TALKED ABOUT PROVIDING INFORMATION

14  REGARDING INDIVIDUALS WHO ARE NOT ELIGIBLE FOR THE CLASS.

15         **THE COURT:**  YES.

16         **MS. FABIAN:**  WE HAVE DONE SO, AND WILL CONTINUE TO

17  DO SO.  I AM PREPARING SOME OF THAT INFORMATION ON THE 11

18  INDIVIDUALS HERE.

19         ONE THING I WANT TO SAY ABOUT THAT, THOUGH, IS THAT

20  THE CLASS DEFINITION -- AND WE HAD THIS DISCUSSION I THINK

21  LAST FRIDAY -- IS -- YOU KNOW, WE NEED IT TO BE ASCERTAINABLE.

22  AND I THINK YOUR HONOR CLARIFIED THAT THAT WOULD MEAN THAT

23  INDIVIDUALS WITH CRIMINAL HISTORIES ARE NOT ELIGIBLE.

24         AND AS I THINK YOU RECOGNIZED EARLIER, WE HAVE

25  NONETHELESS INCLUDED IN THIS PROCESS INDIVIDUALS WHO HAVE --

MAY HAVE A CRIMINAL HISTORY AND THAT UNDER A STRICT READING OF
THAT DEFINITION WOULD NOT BE INCLUDED.

      **THE COURT:** THAT'S CORRECT.

      **MS. FABIAN:** SO WE HAVE MADE A DISCRETIONARY
DETERMINATION TO BE OVER-INCLUSIVE.

      I THINK THAT SUBJECTING THAT TO A CASE-BY-CASE
REVIEW BY PLAINTIFFS TO SAY, YOU KNOW, THAT THEY DISAGREE WITH
THAT ASSESSMENT PUTS A LAYER ON THAT PROCESS THAT IS GOING --
THAT IS UNFAIR AS FAR AS THE CLASS DEFINITION REQUIREMENT HERE
AND JUST IS NOT HELPFUL TO THE PROCESS.

      **THE COURT:** I AGREE. THAT ISSUE, IF THERE IS A
CRIMINAL HISTORY ISSUE, CAN BE ADDRESSED AT A LATER TIME,
AFTER THE BULK OF REUNIFICATIONS OCCUR. AND IT COULD BE BY
WAY OF MODIFYING THE SCOPE OF THE CLASS.

      **MR. GELERNT:** RIGHT. AND, YOUR HONOR, JUST TO BE
CLEAR, BECAUSE I THINK MAYBE I WASN'T CLEAR.

      I AM NOT SUGGESTING THAT BY THE DEADLINE WE WOULD
NEED TO RESOLVE DISPUTES, MUCH LESS BURDEN YOU. BUT, FOR
EXAMPLE, IF WE TOLD THE GOVERNMENT, YOU KNOW, THIS FATHER HAS
BEEN WAITING FOR HIS CHILD AND HE ACTUALLY HAS THE ADOPTION
PAPERS IN HIS HAND AND HHS JUST TOOK A COPY. AND I WERE TO
CALL COUNSEL FOR THE GOVERNMENT AND SAY, LET'S NOT HAVE A
DISPUTE, LET'S JUST -- CAN YOU LOOK INTO IT?

      THEY CALL AND SAY, OH, YEAH, WE DO HAVE THE ADOPTION
PAPERS, SORRY, WE WOULD PUT THEM BACK IN.

1      LIKEWISE, IF IT WAS JOSE R. MARTINEZ RATHER THAN

2 JOSE S. MARTINEZ HAD A WARRANT OUT IN GUATEMALA, THEN WE WOULD

3 SAY, LET'S AGREE TO PUT HIM BACK IN.

4      BUT IF THE INFORMATION WAS ACCURATE AND IT WAS JUST

5 A DISPUTE ABOUT WHETHER THIS IS A SUFFICIENT CRIME, OR WHETHER

6 THE PERSON'S ADOPTION PAPERS GENUINELY ARE LEGAL UNDER THOSE

7 COUNTRY'S LAWS, THEN I THINK THOSE DISPUTES WOULD HAVE TO BE

8 PUSHED OUT.

9      SO THE REASON WE ARE ASKING FOR SPECIFIC INFORMATION

10 IS BECAUSE PEOPLE ON THE GROUND ARE SAYING, WAIT, WE DON'T

11 THINK THIS PERSON IS ACTUALLY INELIGIBLE.

12      SO IF WE COULD AT LEAST HAVE ENOUGH INFORMATION TO

13 CHECK ACCURACY.  IF IT IS ACCURATE, THEN I THINK THE DISPUTES

14 ARE GOING TO HAVE TO GET PUSHED OUT.

15      **THE COURT:**  ALL RIGHT.

16      **MS. FABIAN:**  YOUR HONOR, I AGREE WITH THAT.  ONE

17 THING I WANT TO ADD, THOUGH, IS IT IS DIFFICULT FOR US.  IN

18 COURT I THINK WE HAVE HEARD A FEW DIFFERENT STATEMENTS FROM

19 PLAINTIFFS.  THERE HAVE BEEN STATEMENTS PUT INTO THEIR --

20 ABOUT THINGS THEY ARE EXPERIENCING, FOR EXAMPLE THE DNA

21 TESTING.  I REPRESENTED TO PLAINTIFFS YESTERDAY ABSOLUTELY

22 THAT WE ARE NOT REQUIRING FOLKS TO PAY FOR DNA.  THEY PUT IT

23 IN THEIR REPORT SAYING THAT WE MAY BE.

24      I HAVE ASKED FOR SPECIFIC EXAMPLES OF ANY

25 INDIVIDUALS THAT THEY ARE AWARE OF WHO HAVE BEEN ASKED TO PAY

1  FOR DNA, I HAVEN'T GOTTEN ANY.

2  THEY SAID THERE MAY BE INDIVIDUALS WHO ARE NOT IN

3  THE CLASS, THEY HAVE REPRESENTED THAT HERE.  I HAVE ASKED FOR

4  NAMES AND A-NUMBERS OF THOSE INDIVIDUALS, I HAVEN'T RECEIVED

5  THEM.

6  WE ARE HAPPY TO RESPOND TO CLAIMS WITH NAMES AND

7  A-NUMBERS BUT I NEED TO RECEIVE THOSE.  AND IT IS HARD, AS

8  GENERAL REPRESENTATIONS, FOR US TO RESPOND TO THOSE.

9  **MR. GELERNT:**  YOUR HONOR, I WOULD JUST -- WE AGREE

10  THAT WE SHOULD PROVIDE TO THE GOVERNMENT ABOUT PEOPLE WE

11  THINK, BUT THE PROBLEM IS IT IS TAKING US A LONG TIME.  SO WE

12  WERE UP LAST NIGHT AND THIS MORNING TRYING TO TRACK DOWN THE

13  SERVICE PROVIDER WHO SAYS THERE WERE ADOPTION PAPERS.

14  SO THAT IS ALL I AM SAYING IS THAT WE NEED AS MUCH

15  INFORMATION AS POSSIBLE SO THE PEOPLE ON THE GROUND CAN MAKE

16  THOSE ACCURACY DETERMINATIONS.

17  AS TO COSTS, I HAVE TO DISAGREE WITH WHAT YOU

18  REPRESENTED YESTERDAY.  AND YOU CORRECT ME AGAIN IF I AM

19  WRONG.  WE ARE HEARING -- AND WE TOLD YOU WE WILL GATHER UP

20  THOSE AFFIDAVITS AND GIVE THEM TO YOU -- THAT PEOPLE ON THE

21  GROUND, O.R.R. OR ICE, ARE SAYING TO SOME PARENTS, YOU NEED TO

22  PAY FOR TRAVEL EXPENSES.

23  WHAT I UNDERSTOOD YOU TO REPRESENT TO ME YESTERDAY

24  WAS THAT HEADQUARTERS DOES NOT HAVE A POLICY OF MAKING PEOPLE

25  PAY.  AND THAT THERE MAY BE GOVERNMENT OFFICIALS ON THE GROUND

1   MAKING CASE-BY-CASE DETERMINATIONS ABOUT WHETHER SOMEONE

2   SHOULD PAY, AND YOU DON'T HAVE A HEADQUARTER'S POLICY ONE WAY

3   OR THE OTHER.

4           AND WE BELIEVE THAT YOU OUGHT TO HAVE A

5   HEADQUARTER'S POLICY SAYING IN THIS UNIQUE SITUATION WHERE THE

6   CHILD WAS TAKEN, THE PARENT SHOULD NOT HAVE TO PAY TO GET

7   THEIR CHILD BACK.

8           THAT'S A VERY DIFFERENT SITUATION WHEN THE CHILD

9   COMES ALL BY THEMSELVES, SOME UNCLE LIVES ACROSS THE COUNTRY,

10  MAYBE THEN THE NORMAL PROCESS IS TO HAVE THE UNCLE PAY TO GET

11  THE CHILD.  BUT IN THIS SITUATION -- SO WE WOULD ASK THAT

12  THERE NOT BE NEUTRALITY BY THE HEADQUARTERS.

13          **THE COURT:**  I AM GOING TO ADDRESS THAT IN A MOMENT.

14          **MR. GELERNT:**  OKAY.

15          **MS. FABIAN:**  I WAS REFERRING TO THE DNA, I WASN'T

16  ADDRESSING THE TRAVEL ISSUE.

17          **THE COURT:**  RIGHT.

18          **MS. FABIAN:**  BUT MY POINT IS JUST THAT IT IS VERY

19  DIFFICULT FOR US TO HEAR OF ANECDOTAL SITUATIONS, WE NEED

20  ACTUAL EVIDENCE.

21          AND I AM HAPPY TO TALK ABOUT THE TRAVEL AS WELL IF

22  YOUR HONOR HAS QUESTIONS ABOUT IT, BUT AS A GENERAL MATTER WE

23  WOULD JUST ASK THAT THE REQUIREMENT BE THAT WE CAN'T BE

24  RESPONDING TO PROBLEMS UNLESS WE HAVE NAMES AND A-NUMBERS.  I

25  CANNOT LOOK INTO GENERAL ALLEGATIONS.  SO IF THERE IS A

1   REQUIREMENT THAT WE --

2            **THE COURT:**  LET ME.

3            **MS. FABIAN:**  -- MEET AND CONFER, WE WOULD ASK THAT

4   THAT BE REQUIRED.

5            **MR. GELERNT:**  RIGHT.  BUT YOU ARE SAYING THAT

6   HEADQUARTERS DOES NOT HAVE A POLICY ABOUT TRAVEL, AND YOU

7   HAVEN'T ISSUED A DIRECTIVE TO THE PEOPLE ON THE GROUND SAYING,

8   DON'T REQUIRE TRAVEL EXPENSES FOR THESE CLASS MEMBERS, SO

9   THERE SHOULDN'T BE, GOING FORWARD, ANY --

10           **THE COURT:**  MR. GELERNT, I AM GOING TO GET TO THAT

11  ISSUE, SO LET'S PUT THAT ASIDE FOR A MOMENT.  I WILL GET TO

12  THAT.

13           **MR. GELERNT:**  SORRY, YOUR HONOR.

14           **THE COURT:**  FOR PURPOSES OF TODAY, I WOULD LIKE TO

15  GET THE GOVERNMENT'S PROPOSAL, AND WE WILL WAIT FOR THAT LATER

16  THIS AFTERNOON.  AND THEN MAKE MODIFICATIONS, IF NECESSARY,

17  MONDAY.  WE WILL MEET MONDAY AT 10:00.

18              **(DISCUSSION OFF THE RECORD BETWEEN THE COURT**

19                  **AND DEPUTY CLERK)**

20           **THE COURT:**  WE WILL DO THIS ONE AT MAYBE 9:30.

21  LET'S MEET AT 9:30 SO WE CAN GET STARTED, MONDAY.

22           SO GOING FORWARD, ON THE UNDER-FIVE CHILDREN, WHAT

23  IS EXPECTED IS THAT THESE GROUPS OF PEOPLE -- THE 22

24  NONELIGIBLE, THE 24 NOT CURRENTLY ELIGIBLE -- THAT THE PARTIES

25  WILL CONTINUE TO WORK THROUGH THAT, AND REUNIFY AS APPROPRIATE

1 ASSUMING THE GROUP THAT ARE CURRENTLY NOT ELIGIBLE BECOME

2 ELIGIBLE.

3 　　　　THAT GIVEN THE DISCUSSION WE HAVE HAD TODAY, THAT OF

4 THE INDIVIDUALS WHO ARE NOT ELIGIBLE OR NOT CURRENTLY

5 ELIGIBLE, THAT THE GOVERNMENT PROVIDE ADDITIONAL INFORMATION.

6 I AM NOT GOING TO SET A TIME FRAME AT THIS POINT, BUT YOU HAVE

7 INDICATED THAT YOU WILL DO THAT, AND DO IT AS QUICKLY AS IS

8 REASONABLY PROPER.  IF I HAVE TO I WILL SET A TIME FRAME

9 LATER, AND WE CAN ADDRESS THAT IN THE COMING STATUS

10 CONFERENCES.  BUT I WOULD ASSUME THAT AS YOU LEARN MORE

11 INFORMATION ABOUT INDIVIDUALS WHO ARE NOT CURRENTLY ELIGIBLE

12 YOU WILL PROVIDE THE REASONS WHY THEY ARE NOT.  AND THEN, IF

13 THERE IS DISAGREEMENT, THEY CAN BE TEED UP WITH THE COURT.

14 　　　　ON THE OVER-FIVE GROUP, THE GOVERNMENT HAS

15 INDICATED, AND I THINK IT IS A VERY GOOD START, TO PROVIDE THE

16 LIST OF CLASS MEMBERS IN ICE CUSTODY TODAY, AS WELL AS THE

17 LIST OF ALL OF THE CHILDREN TODAY.

18 　　　　BY MONDAY -- AND I WOULD LIKE THIS TO BE DONE BEFORE

19 THE STATUS CONFERENCE, SO LET'S SET IT BY 9:00 A.M. PACIFIC

20 STANDARD TIME, THAT LIST OF PARENT IN ICE CUSTODY SHOULD

21 INCLUDE, IF IT DOESN'T ALREADY, THEIR NAME, A-NUMBER, AND

22 LOCATION.  AND THE LIST OF CHILDREN SHOULD INCLUDE NAME,

23 A-NUMBER, LOCATION, AND AGE.

24 　　　　I WOULD LIKE THE GOVERNMENT TO BEGIN -- AND THEN WE

25 CAN SET DEADLINES ON MONDAY -- CREATING THE LIST OF PARENTS

WHO HAVE BEEN RELEASED, WITH THE SAME INFORMATION, NAME,
A-NUMBER, AND LOCATION.  AND A LIST OF PARENTS WHO HAVE BEEN
REMOVED WITH THE SAME INFORMATION.  ANOTHER LIST --

        **MS. FABIAN:**  BY LOCATION WOULD YOU MEAN LAST KNOWN
LOCATION?  I THINK FOR --

        **THE COURT:**  ON THE REMOVAL ONES THAT WOULDN'T BE
NECESSARY SINCE THEY -- IT WOULD BE MORE THE NAME AND THE
A-NUMBER AND THEN THE LOCATION AS TO WHERE THEY ARE REMOVED
TO.

        **MS. FABIAN:**  I WOULD SAY WE WOULD PROVIDE THE
INFORMATION WE PROVIDED BEFORE, SO FOR REMOVED PARENTS THAT
WOULD BE THE DATE AND LOCATION OF REMOVAL, AND THE LOCATION OF
LAST ICE CUSTODY.  AND THAT I WAS TOLD WOULD ASSIST THEM IN
FINDING PEOPLE.

        **MR. GELERNT:**  JUST AS A PRACTICAL MATTER, YOUR
HONOR, THE REASON THAT ASSISTS US IS THEN WE CAN GO TO THE
SERVICE PROVIDER WHO WORKS IN THAT DETENTION CENTER.

        **THE COURT:**  YES.

        **MR. GELERNT:**  AND THEY COULD SAY, OH, YES, I
REMEMBER HIM.  WE BELIEVE WE HAVE SOME NOTES ABOUT WHERE HE
WAS GOING WITHIN HONDURAS OR --

        AND NATIONALITY COULD BE INCLUDED, AS WELL, SO WE
KNOW WHAT COUNTRY THEY WERE REMOVED TO, I ASSUME.

        **MS. FABIAN:**  THAT IS WHAT WE HAVE GIVEN BEFORE.

        **THE COURT:**  SAME INFORMATION.

1          **MS. FABIAN:**  AND FOR RELEASED INFORMATION IT WOULD

2     BE ANY INFORMATION WE GOT UPON RELEASE.  I THINK WE HAD GIVEN

3     THEM THE ADDRESS WE UNDERSTOOD THEY HAD BEEN RELEASED TO, AND

4     IF THERE WAS A PHONE NUMBER THAT, AS WELL.

5          **MR. GELERNT:**  RIGHT.

6          **THE COURT:**  YES, SAME INFORMATION.

7          AND THEN A SEPARATE LIST FOR THOSE IN DOJ CUSTODY

8     AND A SEPARATE LIST FOR THOSE IN STATE CUSTODY.  AND WHATEVER

9     INFORMATION YOU PROVIDED LAST TIME, IT WOULD BE THE SAME.

10         THERE IS FIVE BUCKETS, AND I THINK THAT IS A GOOD

11    PRACTICAL WAY TO GET STARTED.  I AM ASSUMING THE LARGEST

12    SEGMENT WILL BE IN ICE DETENTION, SO WE WILL START THERE.

13         AND TO BE CLEAR, WITH THE ICE DETENTION, WITH THE

14    NAME, A-NUMBER, LOCATION, THAT LIST, IT WILL START TONIGHT AND

15    THEN ALL OF THAT INFORMATION WOULD BE SUPPLIED BY MONDAY,

16    9:00 A.M.  THE CHILDREN'S LIST WOULD START TONIGHT AND THE

17    COMPLETED INFORMATION, IF IT IS NOT PRESENT TONIGHT, WOULD BE

18    FORTHCOMING BY MONDAY, 9:00 A.M.

19         AND THEN WE WILL SET A TIME FRAME FOR THESE OTHER

20    PARENTS AND THEIR INFORMATION AT MONDAY'S HEARING.  BUT I AM

21    ANTICIPATING MAYBE AS EARLY AS WEDNESDAY OR SO OF NEXT WEEK

22    ALL OF THIS INFORMATION WOULD BE PROVIDED.

23         AS TO THE PARENTS IN ICE DETENTION -- THIS WILL BE

24    SUBJECT TO MODIFICATION ONCE I RECEIVE THE GOVERNMENT'S

25    BRIEFING, BUT AT THE PRESENT TIME WE WILL PROCEED WITH THE

UNDERSTANDING THAT ALL PARENTAGE DETERMINATIONS OF PARENTS IN
ICE DETENTION WILL BE COMPLETED BY THURSDAY, JULY 19.  AND IF
THERE IS A DETERMINATION THAT THE INDIVIDUAL HAS FALLEN OUT OF
THE CLASS, REASONS CAN BE STATED.

WE WILL SET PARENTAGE DETERMINATION DATES AS TO THE
OTHER PARENTS IN THE OTHER BUCKET GROUPS AT A LATER TIME.

THE INFORMATION WITH RESPECT TO, HERE AGAIN, PARENTS
WHO ARE INELIGIBLE, THE REASONS FOR THAT, WHETHER IT IS
CRIMINAL HISTORY, ALLEGATIONS OF ABUSE OR UNFITNESS, OR
PARENTAGE ISSUE, BE SPECIFIED BY JULY 19 FOR THIS ICE
DETENTION GROUP.

THERE IS ALSO A REQUEST FOR 24 HOURS' NOTICE OF THE
TIME, PLACE, AND LOCATION OF REUNIFICATION.  CAN THAT BE DONE?

BECAUSE THE BRIEFING INDICATES THAT THINGS WENT
RELATIVELY SMOOTHLY BUT THERE IS THREE INCIDENTS THEY POINT
OUT WHERE THERE WERE PROBLEMS, A COUPLE IN PARTICULAR.

SO WHEN REUNIFICATION IS GOING TO OCCUR, THE
GOVERNMENT WOULD BE IN A POSITION, I AM ASSUMING AT SOME POINT
IN TIME PRIOR TO REUNIFICATION, HOPEFULLY AS MUCH AS 24 HOURS
BEFORE OR 12 HOURS, GIVE NOTICE TO PLAINTIFFS OF WHEN AND
WHERE.

**MS. FABIAN:**  IT IS DIFFICULT, AGAIN, FOR US TO
RESPOND TO THE BRIEFING, WE DON'T KNOW ANYTHING ABOUT THOSE
SCENARIOS BECAUSE WE ARE NOT GIVEN THE INFORMATION THAT I
WOULD NEED TO LOOK INTO THEM.

1    THAT SAID, I THINK THIS PROCESS GOING FORWARD WILL

2 BE VERY DIFFERENT FROM THE PROCESS IN THE FIRST ROUND.  I

3 THINK -- MY UNDERSTANDING IS THAT THERE WILL BE A LIMITED

4 NUMBER -- I DON'T HAVE THAT EXACT NUMBER -- OF ICE FACILITIES

5 WHERE THE REUNIFICATIONS WILL OCCUR.

6    **THE COURT:**  YES.

7    **MS. FABIAN:**  AND I WOULD SUGGEST THAT -- ICE WILL

8 THEN -- HAS, AS THEY DID BEFORE, PROVIDE ACCESS TO SERVICES AT

9 THOSE LOCATIONS.  BUT I THINK WE COULD PROBABLY SHARE THOSE

10 LOCATIONS AND JUST HAVE -- THAT WOULD BE -- IT WOULD BE

11 POSSIBLE TO THEN -- FOR PLAINTIFFS TO PROVIDE SERVICES ON-SITE

12 AT THAT LIMITED AMOUNT OF LOCATIONS.  AND I THINK IT WILL THEN

13 BE HAPPENING ON MORE A ROLLING, REGULAR BASIS.

14    SO A VERY DIFFERENT SITUATION FROM WHERE YOU HAD

15 50-OR-SO UNIQUE, SEPARATE REUNIFICATION EVENTS IN A NUMBER OF

16 DIFFERENT LOCATIONS.

17    SO I THINK THAT THIS PROCESS WILL BE DIFFERENT AND

18 WILL ALLOW US TO PROVIDE THAT INFORMATION DIFFERENTLY.  AND

19 THAT IS HOW I WOULD SUGGEST THAT IT WOULD WORK.

20    **MR. GELERNT:**  YOUR HONOR, WOULD I JUST SAY ABOUT

21 THAT, THAT'S GREAT IF IT IS GOING TO BE EASIER THIS TIME GOING

22 FORWARD.  BUT I DO THINK THERE ARE GOING TO BE SOME

23 REUNIFICATIONS THAT ARE GOING TO HAPPEN OUTSIDE OF THOSE.

24    SO, YOUR HONOR, RIGHT, 24 HOURS WOULD BE IDEAL.  12

25 HOURS LESS IDEAL BUT BETTER.

1       IN TERMS OF GETTING YOU THAT INFORMATION ABOUT -- WE

2  ARE OBVIOUSLY PIECING IT TOGETHER BECAUSE THE INDIVIDUALS WHO

3  WERE RELEASED WITHOUT ANYBODY THERE, THAT IS INFORMATION THAT

4  IS HARD TO GATHER.

5       BUT I WOULD NOTE THAT YOU PROMISED TO GET US SOME OF

6  THE TIME AND LOCATION OF THE REUNIFICATIONS, AND WE GOT ZERO.

7  AND I UNDERSTAND THERE MAY BE REASONS FOR THAT, BUT WE DIDN'T

8  GET ANY.  SO IT IS NOT AS IF WE GOT 54 OUT OF THE 58, AND

9  THOSE FOUR FELL THROUGH THE CRACKS AND YOU WANT TO KNOW ABOUT

10  THEM.

11       MAYBE OTHERS GOT ON THE GROUND, AND THAT'S GREAT.

12  BUT I THINK THERE JUST HAS TO BE SOME BETTER SYSTEM SO THERE

13  IS AT LEAST SOME NOTICE.  EVEN IF IT IS A FEW HOURS, SOMEONE

14  CAN RUSH THERE SO THE MOTHER WHO IS GETTING OUT IN THE MIDDLE

15  OF THE NIGHT IS NOT STANDING THERE.

16     **THE COURT:**  THERE HAS GOT TO BE A WAY WHERE WHEN THE

17  ACTORS WITHIN THE DEFENDANT AGENCIES MAKE A DETERMINATION, WE

18  ARE REUNIFYING AT THIS LOCATION AT THIS TIME, THAT THAT

19  INFORMATION BE COMMUNICATED TO SOMEONE WHO CAN THEN

20  COMMUNICATE TO MR. GELERNT.

21     **MS. FABIAN:**  WELL, AND AGAIN, AS -- MY UNDERSTANDING

22  OF WHAT WE HAD TALKED ABOUT LAST TIME IS DIFFERENT FROM

23  COUNSEL'S.  WE HAD SAID ICE WAS PROVIDING SERVICES ON-SITE AT

24  THESE RELEASES SO MY UNDERSTANDING WAS THAT WE HAD AGREED THAT

25  THAT WAS -- IF THAT WAS IN PLACE THAT THAT WAS SUFFICIENT.  IF

1   THAT DIDN'T WORK IN SOME SITUATIONS, AGAIN I CAN LOOK INTO

2   THAT.

3          BUT I DO THINK THIS IS A DIFFERENT PROCESS.  I

4   THINK -- I WOULD HOPE THAT IN A SIGNIFICANT NUMBER OF CASES

5   PROVIDING THE NUMBER OF ICE LOCATIONS THAT ARE BEING USED WILL

6   WORK FOR THIS.  IF -- AS I LOOK AT THE PLAN AND DISCOVER IF

7   THERE ARE OTHER LOCATIONS THAT ARE BEING USED I THINK WE CAN

8   WORK OUT A PLAN FOR EITHER PROVIDING -- ICE MAKING SURE THAT

9   SERVICES ARE PROVIDED FOR PROVIDING THE INFORMATION TO

10  PLAINTIFF SO THEY CAN PROVIDE SERVICES.

11         **MR. GELERNT:**  SO THIS MAY BE SOMETHING WE NEED TO

12  MEET AND CONFER WITH.

13         THE ONLY THING I WOULD ADD IS OUR UNDERSTANDING --

14  AND YOU CAN CORRECT ME IF I AM WRONG -- THAT EVEN THE PARENTS

15  ARE NOT GETTING NOTICE OF REUNIFICATION.  ALL OF A SUDDEN THEY

16  ARE BEING TAKEN OUT AND SAYING, HERE IS YOUR CHILD.

17         I THINK THAT IS SOMETHING THAT PROBABLY ON THE

18  GROUND MAYBE CAN BE DEALT WITH.  AND THAT COUNSEL FOR THE

19  PARENTS, WHEN THEY HAVE SPECIFIC COUNSEL, LONGSTANDING COUNSEL

20  ARE NOT BEING ALLOWED TO KNOW WHEN THE REUNIFICATIONS ARE

21  HAPPENING, THEY ARE NOT BEING ALLOWED TO BE INVOLVED IN THE

22  PROCESS.  THAT DOESN'T SEEM TO MAKE MUCH SENSE.

23         THE ONLY OTHER THING IN TERMS OF NOTICE IS I WOULD

24  JUST ASK COUNSEL.  COUNSEL HAS REPRESENTED, I THINK, THAT THE

25  NOTICE THAT YOUR HONOR APPROVED HAS GONE OUT TO THE DETENTION

 1  CENTERS.  SO AT SOME POINT -- I THINK WE HAVE AGREED ON
 2  THIS -- THAT YOU ARE GOING TO LET US KNOW THAT THEY HAVE
 3  ACTUALLY BEEN POSTED.  I THINK WE ARE IN AGREEMENT THAT YOU
 4  WILL LET US KNOW.
 5          **MS. FABIAN:**  WE ARE LOOKING INTO THAT.  AND I WILL
 6  CONFIRM AS SOON AS I CAN.
 7          AGAIN, I THINK -- IT IS DIFFICULT FOR ME TO RESPOND
 8  TO THESE QUESTIONS IN COURT.  I WOULD URGE -- ASK THE COURT
 9  THAT THESE ISSUES BE -- IF THEY ARE RAISED TO ME I AM HAPPY TO
10  LOOK AT THEM AND SEE IF WE CAN WORK OUT A SYSTEM.
11          **THE COURT:**  OKAY.  AT THE PRESENT TIME WHAT I WOULD
12  PROVIDE -- AND THIS CAN BE SUBJECT TO MODIFICATION WHEN WE
13  MEET AGAIN ON MONDAY -- THAT THERE BE 12 HOURS NOTICE.
14  SOMEONE WITHIN THE DEFENDANT AGENCIES HAS TO BE ABLE TO
15  COLLECT THE DATA, PROVIDE IT TO YOU OR SOMEONE WHO CAN THEN
16  COMMUNICATE TO MR. GELERNT.  TO PROVIDE NOTICE OF THE TIME AND
17  PLACE AND LOCATION SO THAT THE PROCESS GOES RELATIVELY
18  SMOOTHLY.
19          **MS. FABIAN:**  IF I AM CORRECT AND THERE IS A LIMITED
20  NUMBER OF FACILITIES THAT ARE BEING USED, WOULD NOTICE THAT
21  THOSE EIGHT FACILITIES WILL BE THE PRIMARY LOCATIONS WOULD
22  THAT SUFFICE FOR THOSE AND THEN THE 12-HOUR NOTICE WOULD APPLY
23  TO OTHER LOCATIONS?
24          I UNDERSTAND THAT THAT WOULD WORK, BASED ON WHAT YOU
25  ARE SAYING, BUT I WANTED TO CONFIRM.

JULY 13, 2018

```
1          THE COURT:  IT WOULD BE FOR EACH PARENT, EACH
2     REUNIFICATION, THERE NEEDS TO BE INFORMATION SO THAT THEY KNOW
3     WHERE THIS IS HAPPENING AND SO THAT, IF NECESSARY,
4     ARRANGEMENTS CAN BE MADE THROUGH THESE FAITH-BASED GROUPS OR
5     NGO'S OR OTHER PEOPLE.
6          SO IT SEEMS TO ME THERE COULD BE 12 HOURS NOTICE OF
7     THIS PARENT AND CHILD ARE BEING REUNIFIED AT THIS LOCATION AT
8     THIS APPROXIMATE TIME, SO THAT THERE IS NOTICE AND PEOPLE ARE
9     PREPARED TO MEET THEM.
10         MS. FABIAN:  I DIDN'T UNDERSTAND THE NEED TO BE
11    SPECIFIC TO THE INDIVIDUAL, BUT AS SORT OF A GENERAL MATTER
12    PROVIDING SERVICES.
13         SO I WOULD HAVE SAID THAT THE NEED WAS DIFFERENT.
14    BUT I AM HAPPY TO DISCUSS THAT, IF THERE IS A NEED FOR THE
15    SPECIFIC INFORMATION THAT CERTAINLY -- THE QUESTION OF WHETHER
16    THE PARENTS ARE BEING NOTIFIED, THIS IS THE FIRST I AM HEARING
17    OF THAT BEING AN ISSUE, SO I CAN GO BACK AND LOOK AT THIS.
18         BUT IN TERMS OF THE NEED FOR PLAINTIFFS' COUNSEL TO
19    HAVE THE INFORMATION, MY UNDERSTANDING WAS IT WAS TO HAVE
20    PROVIDERS ON-SITE TO PROVIDE SERVICES.  THAT SEEMS TO BE A
21    GENERALIZED NEED THAT WOULDN'T REQUIRE THE NOTIFICATION OF
22    WHO, PER SE, IS BEING RELEASED THAT DAY.  BUT WE CAN TALK IT
23    OVER AND SEE IF THERE IS A MORE SPECIFIC NEED.
24         THE COURT:  YOU NEED TO KNOW.
25         MR. GELERNT:  I MAKE TWO POINTS, YOUR HONOR.  I
```

JULY 13, 2018

1   THINK YOU RAISED A GOOD QUESTION.

2          ONE, WE ARE HAPPY -- I MEAN, IT PROBABLY DOESN'T

3   MAKE SENSE BUT WE ARE HAPPY TO REMOVE OURSELVES FROM THE

4   PROCESS AND DESIGNATE A FAITH-BASED GROUP TO BE WHERE YOU SEND

5   THE INFORMATION, IF THAT WOULD MAKE IT EASIER FOR YOU.  AND

6   THEN MAYBE YOU CAN DESIGNATE SOMEONE TO GET IT.  OR WE CAN

7   TAKE IT AND FORWARD IT ON, WHICHEVER.  THAT IS SORT OF -- YOU

8   KNOW, WE DON'T HAVE TO BE THE POINT PERSON ON THESE LOGISTICS.

9          I THINK YOUR HONOR IS RAISING THE IMPORTANT POINT

10  ABOUT IT HAS TO BE INDIVIDUALIZED, AND IF THEY KNOW THE LIST

11  OF PEOPLE WHO ARE GETTING REUNITED, THAT IS PRESUMABLY A

12  BUTTON THAT CAN GET HIT.  BECAUSE I THINK FOR THE FAITH-BASED

13  GROUPS TO SEE 600 PEOPLE ALL JUST STREAMING OUT, AND HAVE NO

14  SENSE OF WHO MAY HAVE MORE DIFFICULT CIRCUMSTANCES THAN OTHERS

15  BECAUSE 100 OF THEM MAY HAVE AN AUNT OR A RELATIVE WHO THEY

16  CAN GO TO, BUT 100 MAY NEED REAL HOTEL ROOM KIND OF SITUATION,

17  YOU KNOW, THERE ARE A WHOLE BUNCH OF THINGS THAT MAY BE

18  NEEDED.  I THINK AT LEAST 12 HOURS NOTICE SO THE FAITH-BASED

19  GROUPS CAN TRY AND GET HOTEL ROOMS FOR WHO THEY NEED TO GET,

20  BUS TICKETS FOR WHERE THEY NEED TO GET, ALERT A RELATIVE

21  SOMEWHERE IN THE COUNTRY.

22          **THE COURT:**  SO MUCH OF THIS IS REALLY JUST COMMON

23  SENSE AND COMMON COURTESY.  WE ARE, IN A RELATIVE NUMBER, WE

24  ARE NOT TALKING ABOUT THAT MANY.  THE GROUP IS UNDER 3,000.

25  AND THAT IS A MANAGEABLE NUMBER, ESPECIALLY WITH THE RESOURCES

OF THE GOVERNMENT.  AND SOMEONE IS MAKING DETERMINATIONS AS TO
WHO IS GETTING REUNIFIED, WHAT TIME, AND WHERE, AND THAT
INFORMATION CAN BE COMMUNICATED.

SO I WILL LET THE PARTIES MEET AND CONFER AS TO WHO
GETS IT.  RIGHT NOW IT WOULD BE MR. GELERNT, BUT IF THERE ARE
OTHER GROUPS.  THIS PROCESS, THERE SHOULDN'T BE ANYTHING
MYSTERIOUS ABOUT IT, IT SHOULD BE TRANSPARENT AND EASY TO DO:
WE FOUND THE KID, WE FOUND THE PARENT, WE ARE MATCHING THEM
UP, THEY ARE REUNIFYING AT X AT THIS TIME.  IT SHOULD BE A
VERY STRAIGHTFORWARD PROCESS.

I KNOW IT WILL TAKE A LOT OF STAFFING AND INDIVIDUAL
EFFORT, BUT IT IS NOT A DIFFICULT ASSIGNMENT, IT IS JUST
LABORIOUS.  AND IT CAN BE DONE AND IT SHOULD BE DONE.  PARENTS
AND CHILDREN SHOULDN'T BE REUNITED AND THEN HAVE NO RESOURCES,
NO ONE THERE TO REINTEGRATE THEM.

SO AT THIS JUNCTURE, WITHOUT PREJUDICE TO
RECONVENING ON MONDAY, IT WOULD BE A 12-HOUR NOTICE PROVISION
WITH SPECIFICITY, THAT EACH -- INDIVIDUALIZED.  EACH FAMILY
AND WHERE AND WHEN THEY ARE BEING REUNITED.

ON THE COST, IT DOESN'T MAKE ANY SENSE FOR ANY OF
THESE PARENTS WHO HAVE BEEN IMPROPERLY SEPARATED TO PAY
ANYTHING.  SO THE REUNIFICATION SHOULD BE PAID FOR, WHETHER IT
IS DNA, TRAVEL, OR OTHER MATTERS, SHOULD BE PAID FOR BY THE
GOVERNMENT.  AND I THINK THAT TAKES CARE OF THAT ISSUE.  I AM
TALKING ABOUT CLASS MEMBERS HERE.

1          **MS. FABIAN:**  YOUR HONOR, I HAVE TO SAY ON THAT POINT

2     THAT IT IS NOT -- THAT IS A HUGE ASK ON THE PART OF HHS.  I

3     UNDERSTAND AND I WANTED TO -- I UNDERSTAND THAT WE ARE WORKING

4     WITH DONORS, NONPROFITS, AND OTHER ORGANIZATIONS, AN AIRLINE,

5     TO COORDINATE INDIVIDUALS WHO HAVE OFFERED TO DONATE THOSE

6     SERVICES AND TO -- BECAUSE THE GOVERNMENT CANNOT ACCEPT GIFTS

7     AND DONATIONS, THAT WAY TO COORDINATE A WAY THAT COULD ALLOW

8     THOSE TO BE MADE TO INDIVIDUALS.  THE RESOURCES ARE NOT IN

9     O.R.R. OR HHS TO PROVIDE -- TO PAY FOR THOSE FLIGHTS.  SO THEY

10    ARE BEING --

11          **THE COURT:**  HOW IS IT PRESENTLY DONE?

12          **MS. FABIAN:**  THE GENERAL PRACTICE IS THAT ON A

13    CASE-BY-CASE BASIS THE INDIVIDUAL -- THE O.R.R. INDIVIDUAL ON

14    THE GROUND CAN MAKE A DETERMINATION IF PAYMENT WILL BE MADE.

15    I DON'T RIGHT NOW KNOW THE CONSIDERATIONS THAT GO INTO THAT

16    DETERMINATION.

17          **THE COURT:**  WHAT HAPPENED WITH THE UNDER-FIVE?

18    SOME OF IT WAS PAID FOR, OTHERS I GUESS THE FIELD PERSON WAS

19    ASKING THE PARENT OR SOMEONE ELSE TO PAY?

20          **MS. FABIAN:**  I DON'T HAVE -- I CAN TELL YOU THAT IT

21    WASN'T A GENERAL DIRECTIVE, BUT FOR THE MOST PART THOSE

22    INDIVIDUALS WERE THE -- THE PARENTS WERE BROUGHT CLOSE TO THE

23    CHILDREN, AND THAT WAS ICE TRANSPORT, AND THEN THE

24    REUNIFICATION, SO IT DIDN'T REQUIRE THAT SORT OF

25    TRANSPORTATION.

1          **THE COURT:**  LET'S LEAVE IT THIS WAY.  THE PROCESS

2    YOU ARE DESCRIBING IS THE TVPRA, WHICH IS -- IN THIS CONTEXT

3    IS BACKWARDS, WHERE A SPONSOR IS APPLYING AND THEY ARE MAKING

4    EFFORTS TO BE REUNIFIED, AND THEY HAVE TO PASS MUSTER AND BE

5    ACCEPTED AND BE WILLING TO DO A LOT OF THINGS IN ORDER TO

6    RECEIVE THE CHILD.  BUT AS WE DISCUSSED LAST FRIDAY, THAT'S

7    NOT THIS SITUATION.

8          SO LET'S PROCEED WITH THE UNDERSTANDING THAT THE

9    GOVERNMENT WILL MAKE IT HAPPEN.  AND THEN IF THERE ARE ISSUES

10   THAT I AM NOT AWARE OF THAT NEED TO BE PRESENTED TO THE COURT

11   WE CAN ADDRESS THOSE MONDAY MORNING --

12          **MS. FABIAN:**  THANK YOU, YOUR HONOR.

13          **THE COURT:**  -- WITH RESPECT TO THE COSTS.

14          IS THERE ANYTHING ELSE WE NEED TO ADDRESS NOW?

15          I THINK IT IS IMPORTANT THAT WE GET THE GOVERNMENT'S

16   FILING SO WE HAVE MORE INFORMATION.  I THINK WE HAVE SET IN

17   PLACE A NUMBER OF THINGS THAT WILL GET MOVING NOW AND OVER THE

18   WEEKEND, WHICH IS CRITICAL.

19          **MR. GELERNT:**  RIGHT.

20          **THE COURT:**  AND THEN WE CAN SETTLE ANY REMAINING

21   ISSUES MONDAY AT 9:30.

22          **MR. GELERNT:**  THAT MAKES SENSE, YOUR HONOR.  I WAS

23   JUST GOING TO RAISE TWO QUICK POINTS THAT DON'T GO -- THAT

24   WOULDN'T INTERFERE, WHAT YOU ARE TALKING ABOUT, WITH THIS PLAN

25   GOING FORWARD.

JULY 13, 2018

1    ONE IS JUST MORE FOR THE RECORD, AND I DON'T WANT TO

2    DWELL ON IT.

3    WE DON'T UNDERSTAND THE GOVERNMENT TO HAVE ACTUALLY

4    INCLUDED ANY CHILD IN THE REUNIFICATION THAT WASN'T STRICTLY

5    WITHIN YOUR CLASS, SO YOUR HONOR'S URGING THEM TO BE

6    OVER-INCLUSIVE IS FANTASTIC FROM OUR STANDPOINT.  WE DON'T

7    UNDERSTAND THAT TO HAVE ACTUALLY HAPPENED, SO I JUST WANTED TO

8    SAY THAT FOR THE RECORD, BUT I DON'T WANT TO DWELL ON IT.

9    THE OTHER POINT I WANTED TO RAISE, WHICH IS

10   SOMETHING THAT LITERALLY GETTING BOMBARDED WITH DOZENS AND

11   DOZENS OF EMAILS EVERY HOUR FROM ADVOCATES AND SERVICE

12   PROVIDERS ON THE GROUND AND FAITH-BASED GROUPS, THEY ARE VERY

13   CONCERNED THAT THE REUNIFICATIONS ARE GOING TO START THIS

14   WEEKEND AT ICE FACILITIES, AND THE PLAN IS THEN TO REMOVE THE

15   PARENT AND CHILD IMMEDIATELY.

16   AND THE REASON THAT IS OF SUCH CONCERN IN THIS

17   UNIQUE CONTEXT IS THAT NORMALLY A PARENT AND CHILD ARE

18   TOGETHER AND THEY ARE DISCUSSING, WHAT'S THE BEST OPTION FOR

19   US?  DOES THE CHILD HAVE A PARTICULAR ASYLUM CLAIM THAT THE

20   MOTHER DOESN'T?

21   BUT WHAT WE ARE GOING TO -- I THINK THEY ARE

22   CONCERNED THAT THE PARENTS AND CHILD ARE GOING TO BE BROUGHT

23   TOGETHER, PERHAPS AS EARLY AS TOMORROW, AND THEN BE ON A PLANE

24   THE NEXT DAY OR THE DAY AFTER, AND NOT HAVE TIME TO FIGURE OUT

25   WHAT'S THE BEST SITUATION FOR THAT FAMILY BECAUSE THEY HAVEN'T

JULY 13, 2018

1    BEEN TOGETHER.

2            AND THE CHILD NOW HAS BEEN GIVEN AN ADVOCATE BECAUSE

3    THEY HAVE BEEN SENT AWAY TO O.R.R., AND THAT CHILD ADVOCATE IS

4    VERY CONCERNED THAT THEY ARE NOT GOING TO HAVE A CHANCE TO

5    TALK TO THE PARENT AND SAY, YOU KNOW, WHILE YOU HAVE BEEN

6    SEPARATED WE HAD NO CHOICE BUT TO LOOK INTO THE CHILD'S STATUS

7    AND SITUATION AND WHAT MAY BE AVAILABLE TO THE CHILD, WE WANT

8    TO BE ABLE TO EXPLAIN THAT TO YOU AS THE PARENT.

9            SO I DON'T KNOW WHETHER THAT IS SOMETHING WE MAY

10   NEED TO BRIEF TO YOU BY MONDAY MORNING WITH AFFIDAVITS

11   POTENTIALLY, IF WE CAN, OVER THE WEEKEND FROM ADVOCATES TO

12   EXPLAIN OUR CONCERN.

13           UNLESS THE GOVERNMENT IS GOING TO REPRESENT THAT NO

14   REMOVALS OF THESE REUNIFIED KIDS ARE GOING TO HAPPEN FOR SEVEN

15   DAYS OR SOME -- I DON'T THINK THEY ARE GOING TO REPRESENT

16   THAT.  BUT IF THEY WERE THEN THAT GIVES US MORE TIME TO SORT

17   OF FULLY APPRISE YOU.  OTHERWISE, WE WOULD GET TO MONDAY

18   MORNING, WE WOULD HOPE NO REMOVALS HAPPEN BEFORE YOUR HONOR

19   HAS HAD A CHANCE TO LOOK AT THAT SITUATION, AND ENSURING

20   ACCESS WHERE THE PARENT AND CHILD CAN AT LEAST TALK TO THE

21   CHILD'S ADVOCATE AND EXPLAIN, THIS IS WHAT HAS HAPPENED TO

22   YOUR CHILD AND THIS IS THE SITUATION YOUR CHILD IS IN.

23   OTHERWISE I AM NOT SURE THE PARENT CAN REALLY MAKE AN INFORMED

24   DECISION ABOUT HOW THIS SHOULD PROCEED.

25           THE PHONE CALLS HAVE BEEN SPARING AT BEST.  THE

GOVERNMENT HAS REPRESENTED THAT EVERY SINGLE CHILD OF THE
3,000 HAS NOW TALKED TO THEIR PARENT.  WE HAVE TO WAY TO
INDEPENDENTLY VERIFY THAT.  BUT AT A MINIMUM THAT CALLS HAVE
BEEN VERY SPARING AND DIFFICULT, AND I DON'T THINK THE PARENT
CAN REALLY MAKE AN INFORMED DECISION ABOUT WHAT HAS HAPPENED
TO HER CHILD IN THE MONTHS THAT SHE HASN'T BEEN WITH THEM.

     **MS. FABIAN:**  I UNDERSTAND THE REQUEST TO BE TO ASK
THIS COURT TO STAY REMOVAL OF INDIVIDUALS WHO HAVE A FINAL
ORDER OF REMOVAL.  I AM NOT SURE THIS COURT HAS THE AUTHORITY
TO DO THAT.  THESE INDIVIDUALS WHO DO HAVE A FINAL ORDER OF
REMOVAL, THEY WILL -- AND I DON'T KNOW WHERE THEY WOULD BE IN
THE PROCESS.  THEY HAVE BEEN GIVEN THE NOTICE FORM THAT YOUR
HONOR ORDERED, THEY ARE GIVEN THE OPPORTUNITY TO HAVE THEIR
CHILD GO WITH THEM WHEN THEY ARE REMOVED OR THEY COULD WAIVE
THAT RIGHT AND THE CHILD COULD STAY AND PURSUE ANY OPTIONS
THAT THE CHILD HAS.

     I JUST DON'T THINK -- I THINK WHAT WE ARE TALKING
ABOUT NOW IS ASKING THE COURT TO ACT ON THE ORDERS OF -- THE
REMOVAL PROCESS, AND I THINK THAT IS OUTSIDE THE COURT'S ORDER
SO FAR AND THE SCOPE OF THE COURT'S AUTHORITY TO MAKE SUCH AN
ORDER.

     SO WE WOULD OPPOSE THAT REQUEST WITH THE
UNDERSTANDING THAT EACH OF THESE INDIVIDUALS, IF THEY ARE
GIVEN THE FORM THE COURT'S ORDER GIVES, THERE IS A 48-HOUR
PERIOD AFTER THEY HAVE THE OPPORTUNITY TO MAKE THAT DECISION

1  FOR THEM TO CONSULT A LAWYER OR DO SOMETHING ELSE, SO THAT MAY

2  BUILD IN SOME TIME THERE FOR THE DECISION-MAKING PROCESS.  BUT

3  I DON'T THINK THAT ORDERING A STAY OF REMOVAL ON A MASS BASIS

4  OF INDIVIDUALS IS SOMETHING THAT THIS COURT COULD OR SHOULD

5  DO.

6         **THE COURT:**  DO YOU HAVE ANY INFORMATION WHETHER

7  REMOVALS ARE SLATED TO OCCUR THIS WEEKEND?

8         **MS. FABIAN:**  I DON'T, YOUR HONOR.  I THINK -- I

9  DON'T.  IF YOUR HONOR WANTED MORE BRIEFING ON THAT, I COULD

10 GIVE IT.  BUT I DON'T HAVE -- I DON'T KNOW WHAT -- AND

11 MAYBE -- THERE MAY BE SOME INFORMATION ON THAT IN OUR FILING

12 TODAY, I DON'T KNOW THAT.

13         **THE COURT:**  I WILL DEFER ON THAT.  I THINK

14 MS. FABIAN MAKES A FAIR POINT, THAT COULD BE A SIGNIFICANT

15 ISSUE AND SO I WOULD NOT BE INCLINED TO DO ANYTHING ABSENT

16 BRIEFING.

17         SO IF YOU WANT TO RAISE THE ISSUE, IF THIS REALLY

18 BECOMES AN ISSUE, THEN I ASK YOU TO BRIEF IT BY MONDAY MORNING

19 AND WE CAN ADDRESS IT MONDAY MORNING.

20         **MR. GELERNT:**  RIGHT.  I THINK, YOUR HONOR, WE WOULD

21 JUST ASK WHETHER OVER THE WEEKEND IF WE ARE GOING TO SEE MASS

22 REMOVALS THAT WE BE ABLE TO FILE SOMETHING OVER THE WEEKEND.

23         **THE COURT:**  YES.

24         **MR. GELERNT:**  I WOULD TAKE ISSUE WITH THE

25 GOVERNMENT.  THE COURT ABSOLUTELY ALWAYS HAS AUTHORITY TO

JULY 13, 2018

ENSURE ITS JURISDICTION TO PROVIDE ADEQUATE RELIEF.  THAT IS
UNQUESTIONABLE.

AND I DO THINK THAT THIS IS A SLIGHT NUANCE TO YOUR
HONOR'S ORDER SAYING I AM NOT GOING TO GET INVOLVED IN
DETENTION DECISIONS OR DEPORTATION DECISIONS.  THAT IS NOT
REALLY WHAT WE ARE TALKING ABOUT HERE, WE ARE TALKING ABOUT A
UNIQUE SITUATION WHERE THE -- AND I WANT TO BE CLEAR ABOUT
THIS.

THE PARENT MAY HAVE A FINAL ORDER THAT THEY CAN
STILL CHALLENGE.  BUT EVEN ASSUMING THE PARENT HAS A FINAL
ORDER, THE CHILDREN DO NOT HAVE FINAL ORDERS.  AND THE ABILITY
OF THE PARENT TO MAKE AN INFORMED DECISION IS NECESSARILY
GOING TO DEPEND ON BEING ABLE TO TALK TO THE CHILD AND
WHATEVER THE ADVOCATE HAS BEEN TELLING THE CHILD.

SO ASKING THE PARENT TO SIGN A FORM NOW BEFORE MAYBE
THEY HAVE EVEN SEEN THEIR CHILD OR FIVE MINUTES AFTER IS, I
DON'T THINK, GOING TO BE ADEQUATE.

SO I UNDERSTAND YOUR HONOR WANTS BRIEFING, BUT I DO
WANT TO MAKE CLEAR THAT WE DON'T SEE THIS AS YOU INTERFERING
WITH THE REMOVAL PROCESS AS A GENERAL MATTER OR THE DETENTION
JUST TO ENSURE THAT INFORMED DECISIONS ARE BEING MADE.

THANK YOU.

**THE COURT:**  ON THAT POINT, IF THERE IS AN EMERGENCY
THAT ARISES YOU CAN -- THERE CAN BE E-FILING.  SO YOU CAN
E-FILE.  WE WILL MONITOR THAT, AND THEN IF NECESSARY WE WILL

1 RESPOND PRIOR TO MONDAY MORNING.

2         **MR. GELERNT:** OKAY. THANK YOU, YOUR HONOR.

3         **THE COURT:** HOPEFULLY THAT CAN BE AVOIDED.

4         AGAIN I AM GOING TO ASK THAT THE PARTIES MEET AND

5 CONFER ON THAT ISSUE, TOO. BUT IF THAT ISSUE BECOMES OF AN

6 EMERGENCY NATURE THEN WE WILL TEND TO IT THIS WEEKEND.

7         **MR. GELERNT:** THANK YOU, YOUR HONOR.

8         **THE COURT:** I HAVE A JOINT MOTION REGARDING THE

9 SCOPE OF THE COURT'S PRELIMINARY INJUNCTION. WAS THERE A

10 PROPOSED ORDER WITH THIS?

11         **MS. FABIAN:** IT WAS EMAILED, YOUR HONOR. THE

12 PROPOSED ORDER SHOULD BE PART OF THE FILING BUT IT ALSO HAS

13 BEEN EMAILED.

14         **THE COURT:** I WILL SIGN THAT. THAT IS STIPULATED

15 TO, CORRECT?

16         **MR. GELERNT:** THAT'S THE INTERACTION BETWEEN THIS

17 CASE AND FLORES, CORRECT?

18         **THE COURT:** YES.

19         **MR. GELERNT:** SO WHAT ULTIMATELY HAPPENED IS WE

20 THOUGHT THERE WAS AGREEMENT, THERE IS ONE ISSUE IN DISPUTE AND

21 THE GOVERNMENT WOULD LIKE US TO CONTINUE TALKING ABOUT IT.

22         **THE COURT:** OKAY.

23         **MR. GELERNT:** AND THE ISSUE IS WHETHER THE PARENT,

24 ONCE THEY MAKE THE DECISION ONE WAY OR THE OTHER, CAN TAKE

25 THAT DECISION BACK.

1          THE COURT:  I WILL WAIT.

2          MR. GELERNT:  THANK YOU, YOUR HONOR.

3          THE COURT:  WE WILL SET OUT ANOTHER BRIEF ORDER

4    TODAY, SUBJECT TO MODIFICATION ON MONDAY.  BUT GOING

5    FORWARD --

6          MS. FABIAN:  YOUR HONOR, SORRY.  CAN I CLARIFY ONE

7    THING?

8          THE COURT:  YES.

9          MS. FABIAN:  THE ORDER THAT YOU HAVE IN FRONT OF

10   YOU --

11         THE COURT:  YES.

12         MS. FABIAN:  -- IS PREPARED TO BE SIGNED.  THAT

13   ORDER REFLECTS THAT THERE IS A REMAINING ISSUE THAT THE

14   PARTIES MAY DISCUSS.

15         MR. GELERNT:  YES, YOUR HONOR.  I AM SORRY.  THAT'S

16   RIGHT.

17         MS. FABIAN:  NO NEED TO HOLD OFF SIGNING THAT, AND

18   IF THERE IS MORE WE WILL LET YOU KNOW.

19         THE COURT:  SO I WILL SIGN THE ORDER THAT IS

20   STIPULATED TO, WITH THE QUALIFICATION.

21         MS. FABIAN:  YES, YOUR HONOR.

22         THE COURT:  I WILL PUT THIS OUT IN THE ORDER SO YOU

23   DON'T HAVE TO WRITE IT DOWN, BUT I AM GOING TO ASK FOR JOINT

24   REPORTS AS WE GO.  THURSDAY, JULY 19, BY 3:00 P.M., ANOTHER

25   STATUS FRIDAY, JULY 20, 1:30.  ANOTHER JOINT REPORT ON MONDAY,

JULY 23, 3:00 P.M. WITH A STATUS ON TUESDAY, JULY 24TH AT
3:00 P.M.  A COMPLIANCE REPORT THURSDAY, JULY 26, 3:00 P.M.,
WITH A STATUS JULY 27TH 1:30.

SO THERE WILL BE A LOT OF INTERACTION AND A LOT OF
OPPORTUNITY TO RAISE THESE ISSUES, WHATEVER MAY COME ALONG AS
WE GO.

THE GOVERNMENT IS DOING THIS, BUT IT IS IMPORTANT TO
BE MOVING WITH ALL CONSIDERATION AND EFFICIENCY STARTING NOW.
AND I AM ASSUMING THE GOVERNMENT IS ALREADY WELL UNDERWAY SO
THAT THE WEEKEND IS PUT TO GOOD USE AND THAT THIS FIRST GROUP
OF ICE DETAINEES AND CHILDREN CAN BE WELL ON THEIR WAY TOWARD
REUNIFYING.

**MS. FABIAN:**  BECAUSE WE ARE SUBMITTING THE PLAN
TODAY AND MOVING FORWARD, I JUST WANT TO -- BUT NOT ABLE TO
TALK AGAIN UNTIL MONDAY, I WANT TO MAKE CLEAR THAT THERE MAY
BE SOME TENSION BETWEEN WHAT THE COURT HAS SAID ABOUT -- AND I
UNDERSTAND THAT YOU WANT TO DEFER UNTIL YOU SEE THE ORDER.
BUT BETWEEN WHAT THE COURT HAS SAID ABOUT WANTING A REPORT ON
VERIFICATIONS OF PARENTAGE ON THURSDAY AND WHAT YOU SEE IN THE
PLAN WHICH IS, AS I UNDERSTAND IT, GOING TO BE A MORE ROLLING
BASIS.

I AM NOT -- AGAIN, WHEN YOU SAY VERIFICATION OF
PARENTAGE WE SOMEWHAT HEAR COMPLETE -- YOU KNOW, COMPLETING
THE DNA PROCESS, WHICH IS NOT WHAT'S GOING TO HAPPEN.  I THINK
WHAT YOU WILL SEE IN THE PLAN IS THAT WE HAVE COME UP WITH A

1    VERY STREAMLINED, I GUESS I WILL SAY, OR TRUNCATED PROCESS ON

2    THE PARENTAGE FRONT TO GET THIS DONE.

3            SO I GUESS I WOULD ASK THAT IF THE COURT SEES THAT

4    PLAN AND THAT IS NOT CONSISTENT WITH YOUR UNDERSTANDING, WE

5    ARE GOING TO MOVE FORWARD WITH THAT PLAN.  AND I THINK WHEN WE

6    TALK ON MONDAY YOU MAY SEE THAT THAT DOESN'T LEND ITSELF TO A

7    REPORT ON VERIFICATION OF PARENTAGE BY THURSDAY.  AND MAYBE WE

8    CAN TALK MORE ON MONDAY ABOUT WHAT YOU MEAN BY THAT.

9            AND SO I GUESS WHAT I WOULD SAY IS, WHEN YOU SEE THE

10   REPORT TODAY, THAT IS HOW WE WILL BE MOVING FORWARD ON

11   PARENTAGE.  I THINK YOU WILL FIND IT DOESN'T LEND ITSELF TO A

12   REPORT ON PARENTAGE ON THURSDAY, BUT WE CAN TALK ABOUT THAT ON

13   MONDAY.

14           IF YOUR HONOR FOR ANY REASON SEES OUR REPORT AND

15   THINKS WE SHOULD NOT MOVE FORWARD IN THAT WAY, THAT WOULD BE

16   HELPFUL FOR US TO KNOW THAT BECAUSE THAT IS HOW WE WILL BE

17   MOVING FORWARD.  AND IT MAY NOT INVOLVE A COMPLETE EVALUATION

18   OF PARENTAGE LIKE WE UNDERSTAND THAT TERM TO MEAN.

19           **THE COURT:**  WHAT ABOUT DNA TESTING, IS THAT ONGOING

20   AS IS NECESSARY?

21           **MS. FABIAN:**  WE ARE -- WE ARE NOT CONDUCTING DNA

22   TESTING AS WE HAD ORIGINALLY INTENDED TO DO ON EVERYONE.  IT

23   WOULD BE SOMETHING THAT IS LIMITED WHERE IT IS KNOWN TO BE

24   NECESSARY.  WE UNDERSTAND THAT TO BE YOUR ORDER.

25           **THE COURT:**  RIGHT.

1    **MS. FABIAN:**  SO THERE WILL NOT BE DNA TESTING OF THE

2  MAJORITY OF THE INDIVIDUALS.

3    **THE COURT:**  BUT ON THOSE WHERE YOU FEEL YOU NEED IT,

4  YOU COULD BE DOING IT NOW SO THAT WHEN WE COME TO THE NEXT

5  DEADLINE -- IN OTHER WORDS, I DON'T WANT TO COME TO THE NEXT

6  STATUS CONFERENCE AND THEN THE GOVERNMENT ASKS, WHAT SHOULD WE

7  DO, SHOULD WE DNA TEST THESE CHILDREN?

8    THEY SHOULD BE DOING THAT NOW IF THE GOVERNMENT

9  FEELS IT IS NECESSARY.

10    **MS. FABIAN:**  I THINK IT IS HARD FOR ME TO SAY -- I

11  DON'T KNOW -- I CAN'T SAY TODAY -- I THINK THIS WILL BE

12  SOMETHING ELSE YOU WILL SEE THIS AFTERNOON, WHAT WOULD MAKE IT

13  NECESSARY.  I THINK YOU WILL SEE THAT IN MOST CASES IT IS NOT

14  GOING TO BE CONDUCTED.

15    SO I AGREE, OUR PLAN IS NOT TO HOLD REUNIFICATIONS

16  UP FOR DNA TESTING.  BUT I THINK IT WILL BE MORE CLEAR WHEN

17  YOU SEE OUR FILING, WHICH IS THAT IN -- I CAN'T SAY IN NO

18  CASES BECAUSE -- BUT IN VERY FEW CASES IS DNA TESTING GOING TO

19  BE CONDUCTED.

20    AND THAT IS WHAT WE UNDERSTAND IS NECESSARY TO BE

21  CONSISTENT WITH YOUR COURT'S ORDER AND TO MEET THE DEADLINES.

22    **MR. GELERNT:**  YOUR HONOR, I WOULD JUST -- I THINK WE

23  ARE ALL IN AGREEMENT.  I JUST WOULD ECHO WHAT YOU SAID THAT IF

24  DNA TESTING IS TO BE STARTED IT BE STARTED.

25    IT IS A LITTLE UNCLEAR TO ME, AND MAYBE IT WILL BE

JULY 13, 2018

1    CLEARER WHEN WE SEE THE REPORT LATER, WHETHER THE PROBLEM IS

2    THE REPORTING OR THE PROBLEM IS GETTING THE DNA TESTING DONE.

3    BECAUSE -- AND I KNOW THIS WAS IN THE WEEDS LAST TIME, I WOULD

4    JUST RAISE IT AGAIN.

5         IF THE PROBLEM IS THERE IS JUST NOT THE ABILITY TO

6    DO THE DNA TESTING IN TIME AND YOU ARE ONLY USING ONE -- YOU

7    KNOW, I JUST DON'T KNOW WHAT THE LOGISTICS ARE.  BUT IF IT IS

8    THE REPORTING THING WE WILL HAVE TO SEE YOUR SUBMISSION LATER.

9         **MS. FABIAN:**  THE CHALLENGE FOR US IS THAT WHEN YOU

10   SAY VERIFICATION OF PARENTAGE THAT HAS VERY SPECIFIC MEANING

11   TO HHS, AND WE HAVE ALL UNDERSTOOD THAT THAT LEVEL OF

12   VERIFICATION IS NOT GOING TO WORK WITHIN THE COURT'S ORDER SO

13   HHS HAS A MUCH LESSER PROCESS THAT THEY ARE USING.

14        SO IT MAY BE -- WE WILL NOT VERIFY PARENTAGE AS WE

15   UNDERSTAND IT BY THURSDAY AND I THINK YOU WILL SEE THAT IN THE

16   ORDER.

17        I DON'T WANT TO KEEP REPEATING MYSELF EXCEPT TO SAY

18   IF YOU HAVE CONCERNS I WILL CERTAINLY BE MONITORING FOR

19   ANYTHING FROM THE COURT IF YOU HAVE CONCERNS ABOUT WHAT WE

20   FILE, OR ELSE WE WILL TALK ABOUT IT ON MONDAY.

21        **THE COURT:**  TO CIRCLE BACK TO LAST FRIDAY TO GO BACK

22   TO WHAT ICE WAS DOING IN THE FIELD FOR MANY, MANY YEARS.  THEY

23   WOULDN'T NECESSARILY -- ICE WAS NOT EVER DOING DNA TESTING, AS

24   FAR AS I KNOW, THAT WAS ALWAYS HHS AND O.R.R., BUT ICE

25   CERTAINLY HAD PROCEDURES WHERE THEY WOULD DEVELOP A COMFORT

1  LEVEL THAT THIS IS THE PARENT, WHETHER IT IS THROUGH

2  DOCUMENTATION, OTHER COMMON SENSE DETERMINATIONS.  AND THEN

3  THEY WOULD MAKE DECISIONS TO DETAIN TOGETHER OR RELEASE

4  TOGETHER.  THAT'S THE MINDSET.  IT IS NOT -- DOESN'T HAVE TO

5  BE SCIENTIFIC DNA MATCH VERIFICATION.

6          SO I THINK WE HAVE IT COVERED.  I THINK WE NEED TO

7  RECESS SO THAT WE CAN GET EVERYONE MOVING.  AND WE WILL MEET

8  AGAIN 9:30 MONDAY.

9          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

10          **THE COURT:**  THANK YOU.

11          **MS. FABIAN:**  THANK YOU, YOUR HONOR.

12

13                      *   *   *

14          I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
15          IN THE ABOVE-ENTITLED MATTER.

16          S/LEEANN PENCE                    7/14/2018
           LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
17

18

19

20

21

22

23

24

25

JULY 13, 2018