CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
AUGUST E. FLENTJE
Special Counsel
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.,<br><br>          Petitioners-Plaintiffs,<br><br>     vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>          Respondents-Defendants. | Case No. 18-cv-428 DMS MDD<br><br>Hon. Dana M. Sabraw<br><br>**RESPONDENTS-DEFENDANTS' OPPOSITION TO PETITIONERS-PLAINTIFFS' MOTION FOR STAY OF REMOVAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................... 1

II.  LEGAL BACKGROUND ......................................................................... 5

III. PROCEDURAL BACKGROUND ........................................................... 7

IV.  ARGUMENT ........................................................................................... 10

   A.   This Court's Orders – and Defendants' Compliance with Those Orders –
        Address and Eliminate the Harms that Plaintiffs' Allege ............................ 11

   B.   The Court Lack Jurisdiction to Order the Relief Sought by Plaintiffs ......... 18

        1.   Federal Law precludes the Court from staying executions of
             class members' final orders of expedited removal ............................. 18

        2.   Section 1252(g) precludes the court from staying execution of a
             final order of expedited removal or any other order of removal ........ 20

        3.   Even should the court determine it possesses such jurisdiction to
             consider a stay, Plaintiffs have not even claimed to satisfy the
             applicable legal standard articulated in *Nken v. Holder*. ................... 23

   C.   Plaintiffs Have Sought No Relief With Respect to
        Class Members Who Have Waived Reunification Under
        this Court's Injunction .................................................................................. 23

   CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## CASES

Aguilar v. US ICE,
 510 F.3d 1 (1st Cir. 2007) .............................................................................. 20

Arizona v. United States,
 567 U.S. 387 (2012) ........................................................................................ 5

Avendano-Ramirez v. Ashcroft,
 365 F.3d 813 (9th Cir. 2004) ........................................................................ 20

Barahona-Gomez v. Reno,
 167 F.3d 122 (9th Cir. 1999) ........................................................................ 21

Chhoeun v. Marin,
 No. 17-cv-01898, 2018 WL 566821 (C.D. Cal. Jan. 25, 2018) ..................... 22

Diaz-Amezcua v. Johnson,
 No. C14-1313 MJP, 2015 WL 419029 (W.D. Wash. Jan. 30, 2015) ............. 22

Elgharib v. Napolitano,
 600 F.3d 597 (6th Cir. 2010) ........................................................................ 21

Garcia de Rincon v. DHS,
 539 F.3d 1133 (9th Cir. 2008) ...................................................................... 19

Jennings v. Rodriguez,
 138 S. Ct. 830 (2018) ................................................................................. 5, 21

Kucana v. Holder,
 558 U.S. 233 (2010) ........................................................................................ 6

Kwai Fun Wong v. United States,
 373 F.3d 952 (9th Cir. 2004) ........................................................................ 21

Mejia–Espinoza v. Mukasey,
 Case No. CV 08–7984–FMC, 2009 WL 235625 (C.D. Cal. Jan. 27, 2009) ... 22

Nken v. Holder,
 556 U.S. 418 (2009) ...................................................................................... 23

Pena v. Lynch,
 815 F.3d 452 (9th Circ. 2015) ...................................................................... 20

Rosales v. Aitken,
 No. 11–CV–4246, 2011 WL 4412654 ........................................................... 22

Shaughnessy v. United States ex rel. Mezei,
 345 U.S. 206 (1953) ........................................................................................ 5

Sied v. Nielsen,
 No. 17-cv-06785, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018) .................... 22

*Silva v. United States*,
866 F.3d 938 (8th Cir. 2017) ..................................................................... 21

*United States v. Hovsepian*,
359 F.3d 1144 (9th Cir. 2004) .................................................................. 22

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) .................................................................. 21

**STATUTES**

6 U.S.C. § 278(b)(1)(H) .............................................................................. 14

6 U.S.C. § 279(g)(2)(C)(ii) ........................................................................... 7

6 U.S.C. § 679(g) ......................................................................................... 14

8 U.S.C. § 1182 ............................................................................................. 5

8 U.S.C. § 1225 ............................................................................................. 5

8 U.S.C. § 1225(b)(1) ................................................................................. 5, 6

8 U.S.C. § 1225(b)(1)(A)(iii)(I) .................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(iii)(II) ................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(iii)(III) .................................................................. 6

8 U.S.C. § 1225(b)(1)(B)(iii) ........................................................................ 7

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ................................................................ 15

8 U.S.C. § 1225(b)(1)(B)(v) .......................................................................... 6

8 U.S.C. § 1225(b)(1)(C) ............................................................................... 7

8 U.S.C. § 1225(b)(1)(D) ...............................................................................

8 U.S.C. § 1226 ............................................................................................. 5

8 U.S.C. § 1229a ........................................................................................ 6, 7

8 U.S.C. § 1231 ............................................................................................. 5

8 U.S.C. § 1231(a)(2) .................................................................................. 15

8 U.S.C. § 1231(a)(5) .................................................................................... 7

8 U.S.C. § 1232(a)(5)(D) ........................................................................... 7, 14

8 U.S.C. § 1252(a) ...................................................................................... 18

8 U.S.C. § 1252(a)(2)(A)(i) ........................................................................... 5

8 U.S.C. § 1252(a)(2)(A)(iii) ......................................................................... 7

8 U.S.C. 1252(e)(1) ........................................................................................ 5

8 U.S.C. 1252(e)(2) ........................................................................................ 5

8 U.S.C. 1252(e)(4) ........................................................................................ 5

8 U.S.C. 1252(g) ..................................................................... 10, 18, 20, 21

8 U.S.C. § 1357 .............................................................................................. 5

## REGULATIONS

8 C.F.R. § 208.30(e)(2) .................................................................................. 6

8 C.F.R. § 208.30(f) ....................................................................................... 6

8 C.F.R. § 208.30(g) ...................................................................................... 6

8 C.F.R. § 208.30(g)(2)(1) ............................................................................. 6

8 C.F.R. § 208.31 ........................................................................................... 7

8 C.F.R. § 241.8 ............................................................................................. 7

8 C.F.R. § 1003.42(d) .................................................................................... 6

8 C.F.R. § 1208.30(g)(2)(iv)(B) .................................................................... 7

## OTHER AUTHORITIES

H.R. Rep. No. 104-469 at 117 ........................................................................ 6

I.   **INTRODUCTION**

Under a procedure proposed by Plaintiffs and adopted by the Court, class members with final removal orders are given 48 hours prior to removal to decide whether they want to reunify with their children and return to their home country as a family, or waive reunification and be removed alone.[1]   After Plaintiffs successfully persuaded this Court to impose these requirements on Defendants, and Defendants began implementing them in good faith, Plaintiffs now seek significant and unwarranted additional relief – namely, a stay barring the government from removing class members from the United States until seven days after being reunified with his or her child.   This relief serves no purpose but extending detention and delaying removal and, in any event, the Court lacks jurisdiction to order the stay that Plaintiffs request.

**A.**   The parties engaged in a lengthy meet and confer process pursuant to this Court's request to resolve this matter without Court intervention.   During the meet and confer process, and in spite of Plaintiffs obtaining the relief they had previously sought on this issue with the 48 hour election form, the government made a reasonable offer to address the new concerns raised by Plaintiffs raised:   the possibility that after choosing to be reunified with their minor children and returning to their home country together as a family, some parents might consult with counsel further, change their minds, and leave their children behind in the United States.

---

[1] Joint Status Report Regarding Notice To Class Members at 2 (ECF No. 97) ("Plaintiffs propose a 48-hour time period."); 7/10/18 Hearing Tr. 4:3-5 (ECF No. 103) ("On the class notice issue, I am going to adopt the Plaintiffs' version, so that notice may issue in accordance with the plaintiffs' proposal.").

First, the government proposed to delay removals until four days after reunification – and three days after Plaintiffs' counsel received formal notice of reunification – to permit Plaintiffs' counsel to meet with families to discuss potential immigration relief that the child might have if the parent left him or her behind unaccompanied in the United States and subject to ORR's care. Second, the government proposed to agree to implement a parent's decision to leave their child behind in the United States, by transferring that child back to ORR care and custody at the parent's request. Third, the government offered to use the Karnes Family Residential Center exclusively for the reunification of class members subject to final removal orders, to allow Plaintiffs' counsel to utilize all attorney-client visitation space to meet with families, to extend hours for visitation to accommodate those meetings, and to otherwise work with Plaintiffs to accommodate the needs to meet with reunited families on an accelerated time frame. The government declined, however, to agree to a stay of removal for the subset of class members who already waived reunification pursuant to the process the Court approved – an issue that the Court resolved just days before Plaintiffs' motion was filed, and that was well beyond the scope of Plaintiffs' motion, this Court's stay, and the Court-requested meet and confer regarding Plaintiffs' motion.

**B.** The government offered this solution as a way to resolve this without court intervention. But an accommodation of this nature – or the longer seven day delay sought by Plaintiffs – is not appropriate court-ordered relief in these circumstances for several reasons.

2

*First*, this Court's orders—and Defendants' compliance with those orders—already fully address and eliminate the harms that Plaintiffs allege warrant a seven-day stay, including the 48-hour delay of removal previously ordered by this Court. Plaintiffs' stay motion rests on the argument that "Class Members and their children face the real risk of deportation without ever being properly advised as their rights" under the Court's injunction or "the effect of a waiver of the rights on their children." Mot. 3 (emphasis omitted). Plaintiffs are wrong—this Court's orders address all of those concerns.

This Court already granted class-member parents who are subject to final removal orders adequate time to make a sound choice regarding whether to exercise or waive the reunification rights provided to them by the Court's injunction—indeed, Plaintiffs proposed the very 48-hour time period that the Court approved. *See* ECF No. 97 at 1-2 and attachments; 7/10/18 Hearing Tr. 4:3-5; *id.* at 31:13-18. Moreover, once the parent is identified, and has chosen using the Court-approved form to reunify with their child, requiring a parent to again choose whether to leave their child in the United States is inconsistent with this Court's effort to return to the status quo and bring families back together.

This is also consistent with this Court's orders. Under paragraph 6 of this Court's preliminary-injunction order, a class member must be reunified prior to removal unless the parent affirmatively, knowingly, and voluntarily "declines to be reunited" with their child. ECF No. 83 at 24. In accordance with Plaintiffs' position on how best to implement paragraph 6, this Court approved a notice, election form, and 48-hour period prior to

3

removal to consult with a lawyer and with their child before deciding whether to waive reunification prior to removal. *See* ECF No. 97; Notice (attached as Exhibit 2). Thus, class members with final removal orders are given this notice and provided with 48 hours to make an election to take their child with them when they are removed or waive reunification. Moreover, this Court's injunction gives class members the ability to communicate with their children. Paragraph 4 of this Court's injunction required Defendants to "immediately take all steps necessary to facilitate regular communication between Class Members and their children who remain in ORR custody, ORR foster care, or DHS custody." ECF No. 83 at 23. Defendants have taken significant steps to implement that directive. Jennings Declaration ¶¶ 6-7 (attached as Exhibit 1).

Further, the relief now requested is in tension with this Court's Due Process Clause directive that families be brought back together for immigration proceedings, and its assurance that its rulings do not "implicate the Government's discretionary authority to enforce immigration . . . laws." ECF 83, at 3. On top of these points, Plaintiffs claim seems to be that their children should be able to utilize the procedural protections that are designed for *unaccompanied* children, but here this Court held that these procedures do not squarely fit the situation here where parents are seeking reunification, and they certainly do not apply after the family is together.

*Second*, this Court lacks jurisdiction to grant the stay of removal that Plaintiffs seek. The Immigration and Nationality Act (INA) strips district courts of jurisdiction to enjoin execution of a final expedited removal order—the type of removal order applicable

to many of the class members at issue.  *See* 8 U.S.C. §§ 1252(a)(2)(A)(i), 1252(e)(1), (2), (4).  The INA more generally forbids district courts from enjoining any decision or action by the government to execute removal orders.  *See id.* § 1252(g).  This Court lacks authority to issue the requested relief, so it should deny Plaintiffs' motion.

## II.   **LEGAL BACKGROUND**

The political branches have "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). That power includes the discretionary authority to determine who may enter the United States and on what terms—and who may be removed from the country because of a violation of law.  *See* 8 U.S.C. §§ 1182, 1225, 1226, 1231, 1357.   "[T]he power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) ("To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering.").

Exercising its broad authority in this sphere, Congress has authorized the Executive Branch to remove aliens from the country—including, in some situations, pursuant to streamlined procedures.  Under 8 U.S.C. § 1225(b)(1), certain inadmissible aliens arriving at or encountered near the United States border may be "removed from the United States without further hearing or review."  Section 1225(b)(1) ensures that the Executive can "expedite removal of aliens lacking a legal basis to remain in the United States," *Kucana*

*v. Holder*, 558 U.S. 233, 249 (2010), and deter individuals from exposing themselves to the dangers associated with illegal immigration. *See* H.R. Rep. No. 104-469, pt. 1, at 117 (1996).

The U.S. Department of Homeland Security (DHS) has authority over removal of aliens, including over expedited removal. *See, e.g.*, 8 U.S.C. § 1225(b)(l)(A)(iii)(I)–(II). If an alien subject to expedited removal expresses an intent to apply for asylum or a fear of persecution or torture, then he or she is referred to a U.S. Citizenship and Immigration Services (USCIS) asylum officer who interviews the alien, reviews relevant facts, and determines whether the alien has a "credible fear." 8 U.S.C. § 1225(b)(1). An alien will be found to have a credible fear where there is a "significant possibility" that the alien could establish eligibility for asylum or withholding or deferral of removal under the regulations implementing the Convention Against Torture. *See id.* §§ 1225(b)(1)(B)(v), 1158; 8 C.F.R. § 208.30(e)(2), (3). If the asylum officer determines the alien has a credible fear, the alien is referred to an immigration court for removal proceedings. *See* 8 U.S.C. § 1229a; 8 C.F.R. §§ 208.30(f), 1003.42(f). If the asylum officer concludes that the alien has not satisfied the credible-fear standard, the alien may request *de novo* review by an immigration judge of the negative credible-fear finding. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 208.30(g), 1208.30(g)(2)(1), 1003.42(d).

If the immigration judge finds that a credible fear of persecution or torture exists, the alien will be placed into removal proceedings and afforded the opportunity to seek asylum in immigration court. 8 C.F.R. § 1208.30(g)(2)(iv)(B); *see also* 8 U.S.C. § 1229a.

If the immigration judge concurs with the asylum officer that credible fear has not been demonstrated, the case is returned to DHS for execution of the removal order.  8 U.S.C. § 1225(b)(1)(B)(iii).  The alien is entitled to no further review of the negative credible-fear determination or expedited-removal order (other than in circumstances inapplicable here).  8 U.S.C. §§ 1225(b)(1)(C)–(D), 1252(a)(2)(A)(iii).[2]

The TVPRA provides different immigration procedures for unaccompanied alien children, specifically excluding expedited removal.  8 U.S.C. § 1232(a)(5)(D).  But the substantive immigration law on asylum is the same, and the TVPRA procedures apply only when an alien is under 18 years of age and "no parent . . . in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2)(C)(ii).

## III.  PROCEDURAL BACKGROUND

On June 26, 2018, this Court certified a class encompassing "adult parents who enter the United States at or between designated ports of entry." Order Granting in Part Plaintiffs' Motion for Class Certification, ECF No. 82 at 17.  The Court also issued a preliminary injunction that generally requires Defendants to reunite class members with children from whom they were separated.  Preliminary Injunction Order, ECF No. 83, at 23-24.  Because

---

[2] A small number of class members may be subject to reinstatement of removal because they previously were ordered removed from the United States.  8 U.S.C. § 1231(a)(5), 8 C.F.R. § 241.8.  Reinstatement of removal applies to aliens who return to the United States illegally after having been previously removed.  Such aliens are generally subject to having their prior removal orders "reinstated" and cannot collaterally attack those orders other than to obtain a streamlined procedure to assess whether removal should be withheld based on it being more likely than not the alien would suffer persecution.  *See* 8 C.F.R. §§ 208.31.  The reinstatement is "not subject to being reopened or reviewed."  8 U.S.C. § 1231(a)(5).

7

the class entered between ports of entry, they are a generally subject to expedited removal procedures.

Under paragraph 4 of the Court's injunction, Defendants must "immediately take all steps necessary to facilitate regular communication between Class Members and their children who remain in ORR custody, ORR foster care, or DHS custody."  *Id*. at 23 ¶ 4. And under paragraph 6, Defendants are "enjoined from removing any Class Members [from the United States] without their child, unless the Class Member affirmatively, knowingly, and voluntarily declines to be reunited with the child prior to the Class Member's deportation, or there is a determination that the parent is unfit or presents a danger to the child."  *Id.* at 24 ¶ 6.

The parties worked together to create a notice and election form that would ensure that class members had notice of their rights under the Court's order, and a form to comply with paragraph 6 of the injunction regarding waiver of reunification for those class members with final removal orders.  At this Court's July 7, 2018 hearing, the parties agreed to submit to the Court by July 10 a proposed Notice to class members.  *See* 7/7/18 Hearing Tr. 51.  On July 9, the parties filed a joint status report explaining that the parties had largely reached agreement on a proposed Notice, which would be posted in English and Spanish at ICE facilities to provide notice to class members, and on a proposed Election Page, which would "be provided only to Class Members subject to a final order of removal in order to ensure that the Class Member has the opportunity to make an affirmative, knowing, and voluntary decision whether to be removed with or without the Class

Member's child or children."  Joint Status Report Regarding Notice to Class Members, ECF No. 97 at 1-2.  The parties agreed that, for class members with a final removal order, Defendants would defer the execution of the final removal order for a reasonable time period after receiving the class-wide notice and election form.  This period would "allow time for the Class Member to consult with a lawyer or otherwise consider his or her exercise of these rights."  *Id*. at 2.  The parties disagreed whether that time period should be 24 hours (Defendants' view) or 48 hours (Plaintiffs' view).  *Id.* at 2.

The Court ordered that Plaintiffs' proposed language be adopted for the Notice and Election Page.  7/10/18 Hearing Tr. 4:3-5 ("On the class notice issue, I am going to adopt the plaintiffs' version, so that notice may issue in accordance with the plaintiffs' proposal.").  The approved notice gave class members the option to waive reunification, to be reunified with their child, or to "talk with a lawyer before deciding."  Notice at 2.  Only class members who elected to "NOT . . . take my child with me" would waive reunification under this Court's injunction.  *Id*.  In accordance with and shortly after entry of the Court's order, Defendants posted the Notice in both English and Spanish at the ICE detention facilities in which class members were held, and are using the Election Page to allow class members with a final removal order to make an "affirmative, knowing, and voluntary decision whether to be removed with or without the Class Member's child or children." ECF No. 97 at 1-2.  ICE is in the process of manually compiling the election forms of Class Members as it works on reunifying families.  To this point, it has identified 85 Class Members who elected to be removed without their child, 316 Class Members who elected

reunification prior to removal, and 16 who did not sign or requested to talk to an attorney. *See* Jennings Declaration ¶ 5. ICE is continuing to gather the forms as reunification efforts move forward toward Thursday, and will report the full data to the Court once it is compiled.

On July 16, Plaintiffs filed with this Court a Motion for Stay of Removal and Emergency TRO Pending Ruling on the Stay Motion, ECF No. 110 ("Mot."). Plaintiffs asked the Court to "order Defendants not to remove parents until one (1) week after they have been reunited with their children," given "rumors" that "mass deportations may be carried out imminently and immediately upon reunification." *Id.* at 1 (emphasis omitted). Plaintiffs contended that "Class members and their children face the risk of deportation, without ever being properly advised as to their rights under this [Court's] injunction or the effect of a waiver of the rights on their children." *Id.* at 3; *see also id.* at 3-7. Plaintiffs also maintained that this Court "has the authority to enter" the requested stay of removal orders (*id.* at 8) despite Congress's bar on district-court jurisdiction over claims challenging the government's action to "execute removal orders," 8 U.S.C. 1252(g). *See* Mot. 8-10. That same day, this Court issued an interim stay of removal to allow the government to submit a response to Plaintiffs' motion to stay. *See* ECF No. 116.

## IV.   **ARGUMENT**

This Court should deny Plaintiffs' motion to stay class members' removals. This Court's orders already address and eliminate the harms that Plaintiffs allege. And even if they did not, this Court would lack jurisdiction to stay removals as Plaintiffs request.

**A. This Court's Orders—and Defendants' Compliance with Those Orders—Address and Eliminate the Harms that Plaintiffs' Allege.**

The Court should deny Plaintiffs' stay motion because this Court's orders already fully address and prevent the harms that Plaintiffs allege.  In seeking a stay, Plaintiffs contend that "Class Members and their children face the real risk of deportation" "without ever being properly advised as their rights" under the Court's injunction or "the effect of a waiver on the rights on their children."  Mot. 3 (emphasis omitted).  Plaintiffs are wrong: this Court has granted them all the relief that they need to vindicate the rights that they claim, and once reunited, they have been returned to the status quo this Court thought appropriate.  Of note, Plaintiffs were advised of their rights under this Court's preliminary injunction when the Court-ordered notice was posted over ten days ago, Jennings Decl. ¶ 4, and that notice directs class members to contact class counsel with any questions. And while the TVPRA provides procedural protections for unaccompanied alien children, this Court concluded that those protections – which are designed for children who do not have a parent or guardian in the United States – are not designed to address the reunifications here.  The statute certainly does not apply to provide parents the option – once together – of obtaining further facilitation by this Court and DHS to break up their family so that their children may utilize the TVPRA procedures.  Plaintiffs' proposal also seeks this Court's approval to putting parents a second time to the choice of leaving their children in the United States after already electing to be removed to be a family using the Court approved

election – requiring this choice to be made a second time is not something this Court should support.

**1.** *First*, this Court has already granted affected class members adequate time to make a sound choice regarding whether to exercise or waive the reunification rights provided to them by the Court's injunction.  Indeed, Plaintiffs proposed form and time period was approved by the Court.  This Court ordered that a class member who is subject to a removal order may "affirmatively, knowingly, and voluntarily decline[] to be reunited with [his or her] child prior to the Class Member's deportation."  ECF 83, at 24.  And this Court approved the Notice, Election Form, and 48-hours period for class members to make this election prior to removal.  Class members with final removal orders are given this notice and 48 hours to make an election.  A class member can decide that, "[i]f I lose my case and am going to be removed, I would like to take my child with me."  Notice at 2.  Alternatively, a class member can decide that, "[i]f I lose my case and am going to be removed, I do NOT want to take my child with me."  *Id*.  Class members can also choose to "talk with a lawyer before deciding whether I want my child removed with me."  *Id*.  Class members are also permitted to communicate with their children before, during, and after the 48-hour period when they can make this election.  ECF 83, at 23 (defendants must "immediately take all steps necessary to facilitate regular communications between Class Members and their children").

No further relief is warranted here.  This Court's resolution allows a class member who must make a decision regarding removal with or without his or her child 48 hours in

which to consult with an attorney or speak to his or her child (or do both) in order to make that decision in a knowing and voluntary manner.  There is no need for a period longer than 48 hours; if there was, then Plaintiffs would have proposed one to Defendants and the Court two weeks ago.  And, most of these individuals have now already had more than a week to discuss these issues with their children and counsel since posting of the class notice and during the pendency of Plaintiffs' motion.  Nor is there a reason to put class members to a choice a second time, after they have already made an affirmative, knowing, and voluntary choice regarding reunification with their child before the family is returned home together – the choice the vast majority of class members with removal orders are understandably making using the election form proposed by Plaintiffs.

*Second*, this Court's preliminary injunction already gives class members and their families the opportunity to communicate with their children.  Paragraph 4 of the injunction required Defendants to "immediately take all steps necessary to facilitate regular communication between Class Members and their children who remain in ORR custody, ORR foster care, or DHS custody."  ECF 83 at 23.  Defendants immediately took significant steps to implement this portion of the Court's order by deploying case workers to ICE facilities and ORR shelters to facilitate the communications.  This includes coordinated action to facilitate and conduct phone calls between parents detained in ICE custody and children in HHS/ORR care.  Defendants further used shared data sources to identify and prioritize phone calls for ICE detainees who were unable to establish contact with their children.  Using continuously updated contact lists, Defendants collaborated to

establish contact between ICE facilities and case managers at ORR shelters nationwide. To ensure that all ICE detainees were able to communicate with their children, each ICE Field Office Director nationwide was required to certify that all detained parents in his or her Area of Responsibility were able to communicate with their children.  Following initial communication, efforts have continued to ensure ongoing contact through telephone calls or video visitation.  *See* Jennings Declaration ¶¶ 6-7.

*Third*, Plaintiffs do not have a right to be re-separated from their children once reunified.  Plaintiffs appear to be claiming that parents should have the option, after reunification, to *re-separate* the family so the child can invoke procedural rights under the TVPRA that are designed to protect unaccompanied children.  That type of claim would be meritless.

This Court has held that the TVPRA is not well suited to this case given that parents were separated by government action, and are seeking through this litigation to be reunited with their children.   It definitely was not designed to address family units that are together. The TVPRA does not give parents the option to voluntarily separate their family in order to invoke TVPRA protections for their children.[3]

---

[3] Contrary to the claim at the heart of *N.T.C. v. U.S. Immigration and Customs Enforcement*, which has been transferred to this Court, No. 18-cv-1626, the TVPRA would also not confer a right to avoid reunification with a parent in order to avoid the impact on available immigration procedures or the parent's election to be removed with his or her child.  *See* 6 U.S.C. § 679(g) (child ceases to be UAC when "parent . . . is available to provide care and physical custody"); 8 U.S.C. § 1232(a)(5)(D) (only an "unaccompanied alien child" is put in removal proceedings); *cf.* 6 U.S.C. § 278(b)(1)(H) (HHS may

Nor does the Constitution confer a right to separation (or re-separation) of the family. This Court's injunction rests on a due-process entitlement to family integrity, *see* ECF No. 83 at 11-17, and even if such a right exists, a right of separation is in clear tension with such an unprecedented theory. This Court should not be the arbiter of a seven-day waiting period during which families would be charged with choosing a second time – after they have already chosen to be together under this Court's procedures – whether to leave their children in the United States. Class member have no entitlement to such a waiting period, and no entitlement to be re-separated at all.

**2.** Plaintiffs' stay motion fails to adequately grapple with these critical features of this Court's orders that supply class members with the time and communication that they need to make important decisions about removal and their children. Defendants actively endeavor to minimize the length of detention, especially children in family detention. Plaintiffs and their children have already had ample opportunity to communicate and discuss their options. For many of them, any further delay only serves to prolong detention following reunification. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (mandatory custody for

---

"reunit[e] . . . children with a parent abroad in appropriate cases").

In addition, the *Flores* Settlement Agreement—which addresses detention of minors, length of detention, and detention conditions—would not be implicated here, except that the seven-day period requested by plaintiffs might contradict the requirement in the *Flores* Agreement that efforts be made to release children promptly. As this Court knows, however, the parties have agreed that these rights may be waived in order to ensure the family remains to together—which is the functional election class members have made in these circumstances.

aliens pending determination of a credible fear of persecution); 8 U.S.C. § 1231(a)(2) (mandatory custody after issuance of a final order of removal).  A bar on removal for a seven days post-reunification serves only to unnecessarily extend the detention of families prior to their removal, wasting resources, and overburdening the government's limited family detention space, and subjecting the family to unnecessary detention that does not serve a proper purpose.  *See* Jennings Declaration ¶¶ 8-9.

Plaintiffs make several arguments for their requested stay.  *See* Mot. 3-7.  Plaintiffs raised none of these before the parties' joint filing about the Notice and Election Form.  Indeed, Plaintiffs had not previously raised most of the issues in their motion directly with Defendants to attempt to resolve them together informally, as this Court has encouraged.  And Plaintiffs' arguments are otherwise unsound.

First, Plaintiffs contend that Defendants have not given them useable class lists.  *See* Mot. 5.  In fact, Defendants have provided Plaintiffs with the list of all class members detained by ICE as ordered by this Court, and are working on providing lists of class members in other categories—and any other requests for lists Plaintiffs may believe they need.  And class counsel's role in this case relates to appropriate reunification procedures on a class-wide basis, not securing individualized immigration advice and counsel for all class members.  Second, Plaintiffs have never before notified Defendants about their claims of impediments to visits by lawyers to class members.  *See* Mot. 6.  Defendants dispute that class members are denied access to legal counsel because ICE policies allow for visits

from counsel.  ICE's existing Family Residential Standard for visitation[4] permits residents to meet privately with current or prospective legal representatives and their legal assistants. Interpreters are also permitted to accompany legal representatives and legal assistants. Visitation is permitted seven days a week, including holidays.  ICE's adult facilities are subject to one of the three legal standards.[5]  All allow for attorney access.  While each facility establishes its own set of visiting hours, they all allow for attorney visitation, pre-representational consults and visits, phone calls, and possession of legal materials.[6] Plaintiffs provide no evidence to the contrary.  Third, contrary to Plaintiffs' suggestion (*see* Mot. 6), Defendants have confirmed that class members in ICE custody have spoken with their children, and Plaintiffs have not previously raised to Defendants the concerns regarding communication alleged in their motion.  Fourth, Defendants are providing all class members subject to removal orders with the opportunity to decide whether to take their children with them when they are removed, using the election form proposed by Plaintiffs, and approved by this Court.  *Contra* Mot. 6-7.  Plaintiffs have never before requested to have those completed election forms provided to them, and they have provided no reason to question Defendants' good faith in interpreting and applying the simple election made on the form.  Fifth, Defendants are providing notice to Plaintiffs' counsel

---

[4] https://www.ice.gov/doclib/dro/family-residential/pdf/rs_visitation.pdf

[5] *See*  https://www.ice.gov/detention-standards/2000#wcm-survey-target-id; https://www.ice.gov/detention-standards/2008; https://www.ice.gov/detention-standards/2011.

[6] The Port Isabel Detention Center (PIDC), for example, adheres to the 2011 PBNDS.  Pursuant to those standards, detainees are entitled to attorney visits in private meeting rooms and exchange of legal materials.  *See* PBNDS 2011 Standard 5.7, Part V.J. Visits are permitted every day from 8:00am to 9:30pm.

about upcoming reunifications, and can continue meeting and conferring on this issue if Plaintiffs need more information.  In sum, to the extent that Plaintiffs are seeking additional relief from this Court based on these allegations of concern, the appropriate avenue for addressing Plaintiffs' concerns is for Plaintiffs to work with Defendants—not for Plaintiffs to bypass Defendants and put this Court in the spot of issuing an injunction that needlessly delays the Executive Branch's removal of aliens who are already subject to a final order of removal.

### B. The Court Lacks Jurisdiction to Order the Relief Sought by Plaintiffs.

Even if Plaintiffs had identified some need for relief, this Court would not be able to grant that relief.  The INA strips district courts of jurisdiction to enjoin execution of a final order of expedited removal.  *See* 8 U.S.C. §§ 1252(a)(2)(A)(i), 1252(e)(1), (2), (4).  The INA more generally forbids district courts from enjoining any action by the government to execute removal orders.  *See id.* § 1252(g).  Because this Court lacks authority to issue the requested stay, it should deny Plaintiffs' motion.   In any event, these statutes preventing judicial intrusion into the execution of removal orders should, at a minimum, counsel caution in interfering with that important sovereign prerogative, and thus counsel in favor of minimally intrusive relief even if the Court does not believe they bar relief entirely.

#### 1. *Federal law precludes the Court from staying execution of class members' final orders of expedited removal*

This Court does not have jurisdiction to enjoin the execution of a final order of expedited removal—to which many affected class members are subject.  Under 8 U.S.C.

§ 1252(a), "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review" (among other things) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of" an order of expedited removal.  8 U.S.C. § 1252(a)(2)(A)(i)–(iv).  Section 1252(e) provides a limited exception to that jurisdictional bar—but only for habeas review over issues not relevant here.  *Id.* § 1252(e)(2)(A)–(C).  Even where a court has jurisdiction under section 1252(e)(2), the court may not "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)" or "certify a class under Rule 23 of the Federal Rules of Civil Procedure."  *Id.* § 1252(e)(1).

Under these provisions, this Court lacks jurisdiction to grant the seven-day post-reunification stay of expedited removal orders that Plaintiffs seek.  Section 1252(a) bars district-court review over DHS's actions "relating to the implementation or operation of" expedited removal order; accordingly "this [C]ourt lacks jurisdiction over" their request to stay execution of the final orders of expedited removal.  *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1140 (9th Cir. 2008) ("the limitations in § 1252(e)(2) could not be much clearer in [their] intent to restrict [] review").

Plaintiffs do not address section 1252's jurisdictional bar or the authorities invoked above.  Their stay motion can be denied on this ground alone.  And they cannot circumvent Section 1252(a) by arguing that the challenge here does not "arise from" the decision to execute those orders, but instead "arise[s] from the government's decision to separate them

from their children."  Mot. 9.  That limit on the jurisdictional bar applies only to Section 1252(g), not § 1252(a), which precludes jurisdiction over any cause or claim "arising from *or relating to* the implementation or operation of an order of" expedited removal.  8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added).  The "relating to" language "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien." *Aguilar v. US ICE*, 510 F.3d 1, 10 (1st Cir. 2007).  A request to stay execution of a final order of expedited removal clearly "relates to" a final order of expedited removal.  *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004).

To the extent that Plaintiffs suggest that they may challenge the determination that they lack a credible fear of persecution or torture if returned to their native country, or may seek a stay of their removal to research whether they have any further claims to make on their children's behalf, the INA makes clear that no court has jurisdiction over such claims either.  Instead, the INA precludes *any* court from reviewing the final determination as to credible fear made by an asylum officer or an immigration judge.  *See, e.g.*, *Pena v. Lynch*, 815 F.3d 452, 455 (9th Circ. 2015) (relying on section 1252(a)(2)(A)(iii) to hold that "no court may review a direct challenge to an expedited removal order").

2.  *Section 1252(g) precludes the court from staying execution of a final order of expedited removal or any other order of removal*

Even without sections 1252(a) and (e), this Court would still not be able to enjoin execution of Plaintiffs' removal orders.  Under 8 U.S.C. § 1252(g), "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory)

20

. . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders against any alien* under this chapter." 8 U.S.C. § 1252(g) (emphasis added); *see Jennings*, 138 S. Ct. at 839–41 (plurality) (district court lacks jurisdiction over challenge to "decision to . . . seek removal."); *id.* at 854–59 (Thomas, J., concurring in judgment) (stating that the INA bars any "aliens' claims related to their removal" unless raised in accordance with the rest of section 1252). Because Plaintiffs' motion is in substance a "challenge to the execution of the removal" of class members, section 1252(g) bars the Court from issuing a stay other than as permitted elsewhere by section 1252 (e.g., by seeking a stay from a court of appeals). *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004) (equal-protection claim not barred by section 1252(g) because plaintiff "disclaim[ed] any challenge to the execution of the removal itself").[7]

---

[7] Plaintiffs' rely on *Walters v. Reno*, 145 F.3d 1032, 1053 (9th Cir. 1998) and *Barahona-Gomez v. Reno*, 167 F.3d 122, 1234 (9th Cir. 1999), in contending that this Court has jurisdiction. *See* Mot. 8. That reliance is misplaced because both cases preceded the 2005 amendments to the INA that added the explicit reference to "statutory or nonstatutory" law. *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. *Compare* 8 U.S.C. § 1252(g), *with* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 306, 110 Stat. 3009. So insofar as *Walter* or *Barahona-Gomez* suggests that a stay of removal is not forbidden by section 1252(g), they are bad law. *See, e.g.*, *Silva v. United States*, 866 F.3d 938, 940–41 (8th Cir. 2017) (section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "*any* cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Elgharib v. Napolitano*, 600 F.3d 597, 602 (6th Cir. 2010) ("[A] natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution." (quoting 8 U.S.C. § 1252(g))).

In contending that this Court has jurisdiction, Plaintiffs rely on *Sied v. Nielsen*, No. 17-cv-06785, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018), and *Chhoeun v. Marin*, No. 17-cv-01898, 2018 WL 566821, at *8-9 (C.D. Cal. Jan. 25, 2018).  But both cases acknowledge that section 1252(g) bars district-court jurisdiction over claims challenging the government's "discretionary authority to . . . execute removal orders"—claims that "directly challenge [execution of] their orders of removal," as opposed requests for relief "where the gravamen of the claim does not challenge" such "discretionary authority." *Chhoeun*, 306 F. Supp. 3d at 1158; *see Sied*, 2018 WL 1142202 (acknowledging that 1252(g) bars jurisdiction over "challenge[s to] the Attorney General's discretionary authority").  A request to stay removal is the very "constraint[] upon prosecutorial discretion," including the discretionary decision to execute final orders of removal, that section 1252(g) prohibits, *see United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc), and nothing in *Sied* or *Chouen* holds otherwise.  Rather, as other district courts in this Circuit have found, Plaintiffs' "request to stay [their] removal arises from the decision or action by the Attorney General to execute [their] removal order, and this Court therefore lacks jurisdiction to hear such a claim, even if the claim is for a short stay while he seeks additional administrative remedies." *Diaz-Amezcua v. Johnson*, No. C14-1313 MJP, 2015 WL 419029, at *3 (W.D. Wash. Jan. 30, 2015); *see, e.g.*, *Rosales v. Aitken*, No. 11–CV–4246, 2011 WL 4412654, *3, 2011 U.S. Dist. LEXIS 108256, *7 (N.D. Cal. Sep. 21, 2011) (similar); *Mejia–Espinoza v. Mukasey*, Case No. CV 08–7984–FMC, 2009 WL 235625, *3 (C.D. Cal. Jan. 27, 2009) (similar).

Because Plaintiffs seek to enjoin execution of final orders of expedited removal, section 1252(g) applies and independently forecloses their request.

    3. *Even should the court determine it possesses such jurisdiction to consider a stay, Plaintiffs have not even claimed to satisfy the applicable legal standard articulated in Nken v. Holder.*

The Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009), which instructed that courts must consider four basic factors when evaluating whether to issue a stay of removal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

556 U.S. at 434.  Plaintiffs here have not, and appear not to have even attempted to address the factors relevant to any judicial stay determination in the immigration context. And, these factors necessarily require an individualized assessment. *Id.* at 434 (internal citations omitted) (A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case.").  No such showing has been made in this case.  Accordingly, Plaintiffs' class-wide stay motion should be denied.

## C. Plaintiffs Have Sought No Relief With Respect to Class Members Who Have Waived Reunification Under this Court's Injunction.

Paragraph 6 of this Court's preliminary injunction allows a class member who is subject to a removal order to waive reunification when he or she "affirmatively, knowingly, and voluntarily declines to be reunited with the child prior to the Class Member's

deportation." ECF 83, at 24. The form approved by this Court – and the 48 hour period for a class member with a removal order to consider the form and consult with counsel and family – was designed to implement this aspect of this Court's order.

Plaintiffs do not seek to alter the procedures that apply when a parent has affirmatively waived the right to be reunited with their child, under paragraph 6 of this Court's preliminary-injunction order, using the election form endorsed by Plaintiffs and approved by the Court. *See* ECF No. 83 at 24; 7/10 Tr. 30, 33 (Mr. Gelernt) (for those with removal orders, asking that "no further removals of class members occur until they have been able to sign the new notice" and explaining that "if the parents genuinely want to be removed and knew what they were doing they are just simply going to check the new notice form box").

In addition, this Court's TRO does not affect this Court's implementation of this aspect of Paragraph 6. This Court's order provides that Plaintiffs' motion "for an emergency TRO pending a ruling on their motion to stay is granted." Dkt. 116, Order at 1 (July 16, 2018). Plaintiffs' motion, in turn, requested an order that this Court "prohibit Defendants from removing parents *until 7 days after reunification* and, if necessary, enter a [TRO] *staying such removals* until this motion is decided." Dkt. 110, Mot. at 10. A parent who has waived reunification using the election form proposed by Plaintiffs and approved by this Court has waived reunification and therefore is not subject to the Plaintiff's stay request or this Court's TRO.

Moreover, a class member who "affirmatively, knowingly, and voluntarily declines to be reunited with the child prior to the Class Member's deportation" (ECF 83, at 24) need not be reunified, involuntarily, with a child to again make this difficult decision.  Indeed, if a person could decline to be reunified using the Court-mandated form, and yet could not be removed until seven days after reunification, a class member could avoid removal altogether, and if Plaintiffs made such a request it would be illogical with respect to this group who have executed the Court-ordered waiver.  Such a waiver presents no risk that the class member's child will lose access to the TVPRA – if the parent waives reunification, the child will remain subject to the TVPRA procedures.  And that knowing waiver—using the procedures approved by this Court—obviates the need for HHS to determine if the person is in fact the parent of the child with whom they were apprehended pursuant to the reunification plan.  Removals of individuals who have waived the right to be reunified are therefore not implicated by Plaintiffs' request for relief or this Court's interim stay and removals of such class members are moving forward consistent with Section 6 of this Court's injunction.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion to stay removals.

1   DATED: July 24, 2018                        Respectfully submitted,

2
                                                CHAD A. READLER
3                                               Acting Assistant Attorney General
                                                SCOTT G. STEWART
4                                               Deputy Assistant Attorney General

5
                                                */s/ August E. Flentje*
6                                               AUGUST E. FLENTJE
7                                               Special Counsel
                                                Civil Division, U.S. Department of Justice
8                                               950 Pennsylvania Avenue, Room 3613
9                                               Washington, D.C. 20530
                                                Phone: (202) 514-3309
10                                              Fax: (202) 307-6777
11                                              Email: august.flentje@usdoj.gov

12
                                                WILLIAM C. PEACHEY
13                                              Director
                                                WILLIAM C. SILVIS
14                                              Assistant Director
15                                              SARAH B. FABIAN
                                                Senior Litigation Counsel
16                                              NICOLE MURLEY
17                                              Trial Attorney
                                                Office of Immigration Litigation
18                                              Civil Division, U.S. Department of Justice
19                                              P.O. Box 868, Ben Franklin Station
                                                Washington, DC 20044
20                                              (202) 532-4824
21                                              (202) 616-8962 (facsimile)
22                                              sarah.b.fabian@usdoj.gov

23                                              ADAM L. BRAVERMAN
24                                              United States Attorney

25                                              SAMUEL W. BETTWY
26                                              Assistant U.S. Attorney

27                                              *Attorneys for Respondents-Defendants*

28

26

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al. | Case No. 18-cv-428 DMS MDD |
| Petitioner-Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying RESPONDENTS-DEFENDANTS' OPPOSITION TO PETITIONERS-PLAINTIFFS' MOTION FOR STAY OF REMOVAL on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice. I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 24, 2018

> */s/ August E. Flentje*
> AUGUST E. FLENTJE
> Special Counsel
> Civil Division, U.S. Department of Justice
> 950 Pennsylvania Avenue, Room 3613
> Washington, D.C. 20530
> Phone: (202) 514-3309
> Email: august.flentje@usdoj.gov
>
> *Attorney for Respondents-Defendants*