CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation (OIL)
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director, OIL District Court Section
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

Attorneys for Federal Respondents-Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., <br><br> Petitioners-Plaintiffs, <br><br> vs. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Respondents-Defendants. | Case No. 18-cv-428 DMS MDD <br><br> **Declaration of David W. Jennings** |

# DECLARATION OF DAVID W. JENNINGS

I, David W. Jennings, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Acting Assistant Director for Headquarters Field Operations within the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO). Headquarters Field Operations consists of three divisions, Domestic Operations, Special Operations, and Law Enforcement Systems and Analysis, all of which provide guidance, implement and inform policy and procedures, and facilitate enhanced coordination between Headquarters and 24 Field Offices across the country.  In this position, I supervise all field operations, providing guidance and coordination in support of ERO's enforcement and removal efforts conducted by its Field Offices.

2. I have been employed with ICE and the former Immigration and Naturalization Service since 1994.  I have performed duties in both ERO (1994-2001; 2005 to present) and the legacy Office of Investigations, now Homeland Security Investigations (2001-2005).  From June 26, 2016 to present, I have been employed as the Field Office Director (FOD) for the San Francisco Field Office.  I served as the Acting Deputy Assistant Director for Domestic Operations, covering Western Operations, from September 2017 until April 2018.  From May 2018 to present, I have served as Acting Assistant Director for Field Operations.  Prior to this assignment, I served as the FOD for the Los Angeles Field Office.  During my career, I have also served as a Supervisory Detention and Deportation Officer in the San Francisco Field Office; an Assistant Field Office Director

for the Seattle Field Office; a Deputy Field Office Director (DFOD) for the San Francisco Field Office; and the FOD for the Houston Field Office.

3. This declaration is based upon my personal knowledge, information obtained from other individuals employed by ICE, and information obtained from DHS records.

4. On July 11, 2018, pursuant to the direction of this Court, I directed all ICE ERO field offices to immediately post copies of the Notice of Potential Rights for Certain Detained Alien Parents Separated from their Minor Children, in English and Spanish, in all facilities in which *Ms. L* class members are detained. I directed that the Notice be posted in areas in which it would be accessible to detainees, such as housing areas, dining halls, and law libraries. I directed that the Notice be posted by close of business on July 12, 2018, and have confirmed that the Notices have been posted.

5. I also directed all ICE ERO Field Offices to provide the Election page with the Notice printed on the back to each class member with an executable final order of removal. I directed that an officer read the Election page to the class member in a language that the class member understands, using an interpreter if necessary, and fill out the certificate of service. ICE is in the process of manually compiling the Election forms of class members. To date, 417 Election forms have been compiled. Of those, ICE has identified 85 class members who elected to be removed without their child, 316 class members who elected reunification prior to removal, and 16 class members who either declined to sign the form or requested time to talk to an attorney.

6. I am aware of the Preliminary Injunction ordered by this Court on June 26, 2018. I am aware that pursuant to a preliminary injunction issued by this Court on June 26, 2018, the Court ordered ICE and other Defendants to facilitate regular communication between class members detained in ICE

    custody and their children in the custody of U.S. Department of Health and Human Services, Office of Refugee Resettlement (HHS/ORR), HHS/ORR foster care, or DHS custody.  Prior to the Court's order, on June 23, 2018, I instructed FODs and DFODs to facilitate communication between separated parents and their children.  First line supervisors were required to ensure that telephone calls had occurred and that they were documented accordingly.

7. Upon issuance of the Court's June 26, 2018 order, ICE continued to take significant steps to implement this portion of the Court's order, including coordinated action to facilitate and conduct phone calls between parents detained in ICE custody and children in HHS/ORR care.  ICE further used shared data sources to identify and prioritize phone calls for ICE detainees who were unable to establish contact with their children.  Using continuously updated contact lists, ICE collaborated with HHS/ORR to establish contact between ICE facilities and case managers at ORR shelters nationwide.  To ensure that all ICE detainees were able to communicate with their children, each ICE FOD nationwide was required to certify that all detained parents in his or her Area of Responsibility were able to communicate with their children.  Following initial communication, efforts have continued to ensure ongoing contact through telephone calls or video visitation

8. ICE currently maintains three Family Residential Centers.  Due to current demands, ICE requested and received appropriations to house up to 2,500 aliens in family detention.  Although the Family Residential Centers have a total capacity of 3,326, family composition and other factors limit the total usable family beds to between approximately 2,500 and 2,700.  ICE's current family detention population is a fixed cost of $319.00 per person, per day.  Although ICE pays a fixed rate for family detention space, maintaining custody of certain aliens for a longer period than necessary to effectuate

9. A valid passport or other travel document is required to effectuate an alien's removal from the United States.  The majority of aliens currently detained in ICE's Family Residential Centers are from Central America.  Most of them arrive without a valid passport. ICE has agreements with Central American countries to facilitate expedited issuance of electronic travel documents.  After a travel document is issued, the alien (or family unit) can be added to a manifest on charter aircraft for removal.  A brief delay of up to two days would allow Class Members to consult with counsel while ICE simultaneously initiates the process of obtaining travel documents for removal.  A longer timeframe would create inefficiencies, increase cost, and significantly hamper ICE's efforts to expeditiously enforce removal orders.  Each addition day delay in removal would not only deplete limited taxpayer resources, but they also extend aliens' time in detention and exclude detention beds being used during the delay.  As a result, family units engaged earlier in the process would wait longer for their cases to be completed, further exacerbating the already backlogged removal process.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of July 2018, in Washington, D.C.

_____
David W. Jennings
Assistant Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement