UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                          )
MS. L. AND MS. C.,                        )
                                          )CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS,         )
                                          )
VS.                                       )
                                          )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS              )TUESDAY JULY 24, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT      ) 3:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.        )
CUSTOMS AND BORDER PROTECTION ("CBP");    )
U.S. CITIZENSHIP AND IMMIGRATION          )
SERVICES ("USCIS"); U.S. DEPARTMENT       )
OF HEALTH AND HUMAN SERVICES ("HHS");     )
OFFICE OF REFUGEE RESETTLEMENT ("ORR");   )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;     )
GREG ARCHAMBEAULT, SAN DIEGO FIELD        )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS,   )
EL PASO FIELD DIRECTOR, ICE; FRANCES M.   )
JACKSON, EL PASO ASSISTANT FIELD          )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN,   )
SECRETARY OF DHS; JEFFERSON BEAUREGARD    )
SESSIONS III, ATTORNEY GENERAL OF THE     )
UNITED STATES; L. FRANCIS CISSNA,         )
DIRECTOR OF USCIS; KEVIN K.               )
MCALEENAN, ACTING COMMISSIONER OF         )
CBP; PETE FLORES, SAN DIEGO FIELD         )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,      )
EL PASO FIELD DIRECTOR, CBP;              )
ALEX AZAR, SECRETARY OF THE               )
DEPARTMENT OF HEALTH AND HUMAN            )
SERVICES; SCOTT LLOYD, DIRECTOR           )
OF THE OFFICE OF REFUGEE RESETTLEMENT,    )
                                          )
          RESPONDENTS-DEFENDANTS.         )
------------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

```
COUNSEL APPEARING:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004

                           BADIS VAKILI, ESQ.
                           ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES
                           P.O. BOX 87131
                           SAN DIEGO, CALIFORNIA 92138

                           SPENCER AMDUR, ESQ.
                           ACLU OF NORTHERN CALIFORNIA
                           39 DRUMM STREET
                           SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           SCOTT STEWART, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044




REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101
```

<u>SAN DIEGO, CALIFORNIA – TUESDAY, JULY 24, 2018 – 3:00 P.M.</u>

1

2                          *   *   *

3        **THE CLERK:**  NO. 2 ON CALENDAR, CASE NO. 18CV0428,

4  MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5  STATUS CONFERENCE.

6        **THE COURT:**  GOOD AFTERNOON.

7        CAN I HAVE APPEARANCES, PLEASE?

8        **MR. GELERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE

9  GELERNT FOR THE ACLU FOR PLAINTIFFS.

10        **MR. AMDUR:**  GOOD AFTERNOON.  SPENCER AMDUR FOR THE

11  PLAINTIFFS.

12        **MR. VAKILI:**  GOOD AFTERNOON, YOUR HONOR.  BARDIS

13  VAKILI FOR THE PLAINTIFFS.

14        **MR. STEWART:**  GOOD AFTERNOON, YOUR HONOR.  SCOTT

15  STEWART FOR THE DEFENDANTS.

16        **MS. FABIAN:**  GOOD AFTERNOON, YOUR HONOR.  SARAH

17  FABIAN FOR THE DEFENDANTS.

18        **THE COURT:**  THANK YOU.  AND WELCOME ALL.

19        LET'S GO THROUGH THE STATUS REPORT.  THERE IS A LOT

20  OF INFORMATION HERE, AND I HAVE SOME QUESTIONS.

21        THERE IS AN INDICATION OF 1,634 ELIGIBLE.  THAT'S

22  SIMILAR TO WHERE WE WERE LAST TIME WITH 1606.

23        **MS. FABIAN:**  YOUR HONOR, THAT IS 1637 TODAY.

24        **THE COURT:**  OKAY.

25        AND THERE IS AN INDICATION OF SUCCESSFUL

 1  REUNIFICATION OF 879.

 2          **MS. FABIAN:**  THAT'S 1,012 TODAY.

 3          **THE COURT:**  1,012.  THAT SHOWS HOW FLUID AND ACTIVE

 4  THE PROCESS IS.

 5          OF THOSE 1,012, HOW MANY ARE DETAINED TOGETHER AND

 6  HOW MANY ARE BEING PAROLED INTO THE COMMUNITY?

 7          **MS. FABIAN:**  I DON'T HAVE THOSE NUMBERS, YOUR HONOR.

 8          **THE COURT:**  DO YOU HAVE AN APPROXIMATION?

 9          **MS. FABIAN:**  I DON'T THINK I DO AT THIS TIME, YOUR

10  HONOR.

11          **THE COURT:**  THE INDICATION ALSO IS THAT ALL

12  POTENTIAL CLASS MEMBERS HAVE BEEN –– HAVE COMPLETED THEIR

13  INTERVIEW, AND THE CHILD FILE REVIEW HAS BEEN COMPLETED AS

14  WELL.  AM I CORRECT?

15          **MS. FABIAN:**  THAT'S CORRECT.

16          **THE COURT:**  SO THE PROCESS, AT THIS POINT, INVOLVES

17  APPROXIMATELY 1,417 PEOPLE, AND THEN THE REUNIFICATION IS

18  PROGRESSING AS TO ALL.

19          **MS. FABIAN:**  THAT'S CORRECT.

20          **THE COURT:**  THE INFORMATION THAT WE DON'T HAVE IS

21  HOW MANY ARE BEING DETAINED TOGETHER, HOW MANY ARE BEING

22  PAROLED.

23          **MS. FABIAN:**  I DON'T HAVE THAT, NO, YOUR HONOR.

24          I CAN SEE FROM MY CLIENTS WHAT WE CAN PUT ON THAT IN

25  THE NEXT STATUS REPORT, IF THAT'S SOMETHING THE COURT IS

JULY 24, 2018

1  INTERESTED IN.

2          **THE COURT:**  YES.  WE WILL GET TO THAT IN A MOMENT.

3  LET'S KEEP GOING DOWN THE LIST.

4          THEN THE INITIAL DETERMINATION BY THE GOVERNMENT OF

5  PARENTS WHO ARE INELIGIBLE, THERE IS 917?

6          **MS. FABIAN:**  THAT'S 914.

7          **THE COURT:**  NOW 914.

8          THERE WERE TWO PARENTS IN CRIMINAL CUSTODY, THEY ARE

9  NOW OUT?

10          **MS. FABIAN:**  I DON'T KNOW HOW THAT NUMBER MOVED.  I

11  AM NOT SURE IF THAT -- WHERE THAT CHANGED.

12          **THE COURT:**  BECAUSE THE INDICATION IS THEY ARE NOW

13  ZERO.

14          PARENTS WHO WAIVED REUNIFICATION.  IT WAS 136 IT IS

15  NOW 130?

16          **MS. FABIAN:**  IT IS NOW 127.  MY UNDERSTANDING IS

17  SOME MAY HAVE CHANGED THEIR MIND.

18          **THE COURT:**  OKAY.  SO WHERE THEY WANT TO BE

19  REUNIFIED.

20          **MS. FABIAN:**  CORRECT.

21          **THE COURT:**  THAT COULD BE FOR A VARIETY OF REASONS,

22  EITHER TO PURSUE IMMIGRATION ISSUES TOGETHER -- COULD BE A

23  VARIETY OF REASONS.

24          **MS. FABIAN:**  I EXPECT, YOUR HONOR, THAT A LOT OF

25  TIMES THE DECISION TO WAIVE REUNIFICATION WOULD BE BASED ON

JULY 24, 2018

1  DESIRE TO HAVE THE CHILD BE RELEASED TO ANOTHER RELATIVE SO --

2  AND PERHAPS PURSUE RELIEF SEPARATELY, SO THEY MAY CHANGE THAT

3  DECISION FOR A VARIETY OF REASONS.

4           **THE COURT:**  ADULTS WITH PRECLUDING CRIMINAL HISTORY,

5  THAT WAS AT 91, IT IS NOW 64.  SO WE ARE 27 CLEARED?

6           **MS. FABIAN:**  THAT IS MY UNDERSTANDING.  THAT NUMBER

7  INCLUDED WHAT WE, I THINK, CALLED THE AMBER CATEGORY, FOLKS

8  WHO HAD INITIALLY BEEN DETERMINED TO HAVE A CRIMINAL RECORD

9  BUT THEN UPON EVALUATION IT WAS DETERMINED THAT THEY WERE

10  CLEARED FOR REUNIFICATION.

11           **THE COURT:**  OKAY.

12           THE NEXT CATEGORY INDICATES ADULTS NOT IN THE UNITED

13  STATES UNDER REVIEW, 463.  WHAT DOES THAT MEAN?

14           **MS. FABIAN:**  THE RECORDS RECORDED -- REFLECT 463

15  WITH A CODE THAT SUGGESTS THAT THEY MAY HAVE DEPARTED THE

16  UNITED STATES.

17           WHAT I UNDERSTAND WE ARE DOING IS TAKING A CLOSER

18  LOOK AT THOSE TO DETERMINE IF THAT IS, IN FACT, WHAT THE CODE

19  INDICATES, OR IF THERE IS SOMETHING ELSE INDICATED BY THAT

20  CODE, WHETHER IT IS -- SO IT MAY BE A REMOVAL OR IT MAY BE A

21  VOLUNTARILY DEPARTURE THAT IS UNRELATED TO A SEPARATION, OR IT

22  MAY BE A PRIOR CODE.  SO WE ARE JUST GOING THROUGH THOSE -- AS

23  I UNDERSTAND IT THE CLIENT IS GOING THROUGH THOSE TO DETERMINE

24  EXACTLY WHAT THAT CODE MEANS IN EACH OF THOSE CASES.

25           **THE COURT:**  WOULD THAT NUMBER REFLECT PARENTS WHO

JULY 24, 2018

```
 1   HAVE BEEN REMOVED OR VOLUNTARILY DEPARTED WITHOUT THEIR CHILD?

 2         MS. FABIAN:  IT MAY, YES.  THAT IS WHAT WE ARE

 3   DETERMINING.  THAT IS WHAT WE ARE REVIEWING RIGHT NOW.

 4         THE COURT:  DO YOU HAVE ANY INDICATION WHAT THE

 5   NUMBERS MIGHT BE OF PARENTS WHO HAVE BEEN REMOVED OR

 6   VOLUNTARILY DEPARTED WITHOUT THEIR CHILDREN?  DO YOU HAVE AN

 7   ESTIMATE OF WHAT THAT PERCENTAGE WOULD BE OF THESE 463?

 8         MS. FABIAN:  I DON'T, YOUR HONOR.  I THINK IT WOULD

 9   ULTIMATELY BE SOMETHING LESS THAN THE 463, BUT IT COULD BE

10   THAT WHOLE NUMBER.  I THINK IT IS JUST A MATTER OF THE AGENCY

11   BEING ABLE TO LOOK AT EACH INDIVIDUALLY TO SEE WHAT THE

12   NUMBERS MEAN.

13         THE COURT:  THIS, TO BE CLEAR, COULD BE THE CATEGORY

14   WHERE PARENTS AND CHILDREN WERE SEPARATED, EITHER BEFORE OR

15   DURING THE ZERO TOLERANCE POLICY, AND THERE WASN'T

16   INFRASTRUCTURE IN PLACE TO DETERMINE, AT SEPARATE TIMES, WHERE

17   THE PARENT WAS VERSUS THE CHILD, WHICH THEN RESULTED IN A

18   NUMBER OF PARENTS BEING REMOVED WITHOUT CHILD.  AM I CORRECT?

19         MS. FABIAN:  IT COULD BE, YOUR HONOR.  THAT COULD

20   FALL UNDER THAT CATEGORY.

21         THE COURT:  THIS NUMBER COULD BE VERY SIGNIFICANT.

22   THERE IS 463 HERE, AND I THINK THERE WERE 12 WITH THE

23   UNDER-FIVE.

24         MS. FABIAN:  I DON'T REMEMBER WHAT THE FINAL NUMBER

25   WAS.  THAT SOUNDS RIGHT, I THINK IT WAS 12.
```

JULY 24, 2018

1              THE COURT:  ALL RIGHT.  WE WILL COME BACK TO THAT IN

2    A MOMENT.

3              THE NEXT CATEGORY IS FURTHER EVALUATION, 260.  WHAT

4    DOES THIS CATEGORY MEAN?

5              MS. FABIAN:  THOSE, AS I UNDERSTAND IT, ARE CHILDREN

6    THAT FOR WHOM O.R.R. IS DOING FURTHER EVALUATION.  THAT MAY BE

7    THAT THE PARENT WAS RELEASED AND O.R.R. HASN'T LOCATED THE

8    PARENT.  IT MAY BE THAT THE CHILD HAD BEEN POTENTIALLY

9    RELEASED TO ANOTHER SPONSOR.

10             SO I THINK THOSE ARE CHILDREN FOR WHOM O.R.R.

11   DOESN'T -- CAN'T CONCLUSIVELY PLACE THEM IN ONE OF THE OTHER

12   CATEGORIES AND SO THEY ARE REVIEWING TO DETERMINE IF THEY ARE,

13   IN FACT, CHILDREN OF CLASS MEMBERS.  AND THEN, IF SO, WHETHER

14   REUNIFICATION IS REQUIRED OR POSSIBLE.

15             THE COURT:  SO OF THESE 260, A NUMBER OF THESE MAY

16   BE CLASS MEMBERS RELEASED INTO THE INTERIOR.

17             MS. FABIAN:  SOME MAY BE, THAT IS MY UNDERSTANDING.

18   AND SOME MAY, IN FACT, NOT BE THE CHILDREN OF CLASS MEMBERS.

19             THE COURT:  SO THE 217 NUMBER OF CLASS MEMBERS

20   RELEASED INTO THE INTERIOR MAY INCREASE.

21             MS. FABIAN:  I THINK THAT IS RIGHT.  AS I UNDERSTAND

22   IT, 217 ARE THAT O.R.R. KNOWS ABOUT AND IS IN THE PROCESS OF

23   REUNIFICATION.

24             THE COURT:  AND THEN YOU HAVE INDICATED OF THIS 260

25   MANY OF THESE CHILDREN HAVE BEEN DISCHARGED BY O.R.R. IN

JULY 24, 2018

1   APPROPRIATE CIRCUMSTANCES.  WHAT DOES THAT MEAN?

2           **MS. FABIAN:**  IT MEANS THAT THEY MAY HAVE BEEN

3   RELEASED TO OTHER FAMILY MEMBERS, AND THAT MAY BE BECAUSE

4   EITHER THEY HAD JUST BEEN -- THE PARENT HAD DESIGNATED THEM TO

5   BE RELEASED TO OTHER CLASS MEMBERS AT CERTAIN TIMES.  SO NOT

6   ALL OF THOSE 260 REMAIN IN O.R.R. CUSTODY, SOME MAY HAVE BEEN

7   RELEASED TO OTHER FAMILY MEMBERS.  BUT THERE WOULD STILL, IN

8   SOME CASES, BE CONTINUED EVALUATION TO SEE IF THAT FURTHER

9   ACTION TOWARDS REUNIFICATION WOULD BE NECESSARY.

10          **THE COURT:**  SO OF THESE 260, SOME OF THESE PARENTS

11  MAY FALL INTO THE CATEGORY OF PARENTS WHO HAVE BEEN RELEASED

12  INTO THE INTERIOR, AND SOME OF THEM MAY FALL INTO THE CATEGORY

13  OF HAVING BEEN REMOVED ALREADY.

14          **MS. FABIAN:**  NOT THAT OUR RECORDS CURRENTLY

15  INDICATE, BUT I CAN'T SAY FOR SURE THAT THAT WOULDN'T BE THE

16  CASE.  BUT THE RECORDS DON'T INDICATE THAT BASED ON WHAT WE

17  HAVE RIGHT NOW AS ANY INDICATORS FOR THE PARENTS.

18          **THE COURT:**  WHAT DO THE RECORDS INDICATE?  HOW CAN

19  YOU RULE OUT THAT OF THIS 260 A CERTAIN PERCENTAGE HAVE NOT

20  ALREADY BEEN REMOVED, AS OPPOSED TO SAYING IT APPEARS THIS 260

21  MAY INCLUDE THOSE RELEASED INTO THE INTERIOR, BUT WE ARE

22  PRETTY SURE IT DOESN'T INCLUDE THOSE WHO HAVE ALREADY BEEN

23  REMOVED.

24          **MS. FABIAN:**  AS I UNDERSTAND IT, THE CHILDREN HAVE

25  BEEN LINKED TO A PARENT BY A-NUMBER.  SO FOR THE 463 THE

JULY 24, 2018

1    PARENT'S A-NUMBER IS LINKED TO A CODE THAT SUGGESTS THAT THEY

2    POTENTIALLY -- THAT POTENTIALLY COULD INDICATE REMOVAL OR

3    POTENTIALLY VOLUNTARY DEPARTURE.  SO FOR THE 260, THE PARENT'S

4    A-NUMBER THAT IS LINKED DOES NOT CONTAIN THAT CODE.

5            **THE COURT:**  OKAY.

6            **MS. FABIAN:**  IT LINKS TO SOME OTHER CODES THAT ARE

7    UNDER FURTHER EVALUATION TO DETERMINE IF THAT MEANS THEY HAVE

8    BEEN RELEASED AND NOT LOCATED OR SOME OF THE OTHER THINGS I

9    INDICATED.

10           **THE COURT:**  OKAY.  THANK YOU.

11           FINAL ORDER OF REMOVAL, THERE ARE 900.  IS THAT THE

12   CURRENT NUMBER OR IS THAT -- DO YOU HAVE A DIFFERENT NUMBER?

13           **MS. FABIAN:**  THAT WAS THE NUMBER AS OF YESTERDAY.  I

14   DID NOT GET AN UPDATED NUMBER TODAY.

15           **THE COURT:**  AND OF THAT NUMBER, DO WE KNOW HOW MANY

16   WERE REMOVED WITH THEIR CHILDREN VERSUS WITHOUT?

17           **MS. FABIAN:**  I BELIEVE THERE HAVE BEEN 20 REMOVALS,

18   BUT I WOULD HAVE TO CONFIRM THAT.

19           **THE COURT:**  20 --

20           **MS. FABIAN:**  20 REMOVALS OF -- I BELIEVE THAT IS 20

21   AFTER REUNIFICATION, BUT I WOULD HAVE TO CONFIRM THAT.

22           **THE COURT:**  20 AFTER REUNIFICATION.  SO THAT

23   WOULD -- DOES THAT MEAN 880 WERE REMOVED PRIOR TO

24   REUNIFICATION?

25           **MS. FABIAN:**  I AM SORRY.  THOSE 900 ARE NOT REMOVED.

```
 1   THOSE -- THAT 900 WOULD SPAN -- I WOULD SAY THAT 900 IS MOSTLY
 2   GOING TO BE FOUND IN THE TOP CATEGORY --
 3                THE COURT:  YES.
 4                MS. FABIAN:  -- OF THE POTENTIAL CLASS MEMBERS
 5   ELIGIBLE FOR REUNIFICATION, BUT THAT DOES NOT INDICATE THAT
 6   THEY HAVE BEEN REMOVED YET.
 7                THE COURT:  OKAY.  SO YOU HAVE INDICATED THAT 1,012
 8   CLASS MEMBERS HAVE BEEN REUNIFIED, AND 900 ARE SUBJECT TO A
 9   FINAL ORDER OF REMOVAL.
10                WOULDN'T THAT THEN INDICATE THAT AT LEAST 900 OF THE
11   1,012 ARE DETAINED, WITH CHILD, IN ICE DETENTION?  SO THE
12   NUMBERS RELEASED INTO THE COMMUNITY WOULD BE VERY SMALL.
13                MS. FABIAN:  NOT NECESSARILY.  A FINAL -- A FINAL
14   ORDER AS USED IN THIS CATEGORY IS ACTUALLY DIFFERENT FROM AN
15   EXECUTABLE FINAL ORDER.  SO IN SOME CASES SOMEONE WITH A FINAL
16   ORDER MIGHT HAVE ADDITIONAL STEPS IN THEIR IMMIGRATION REVIEW.
17   AND SO I CAN'T -- I DON'T HAVE THE NUMBERS NECESSARILY TO SAY
18   IF THEN FOLKS AT THAT STAGE HAVE BEEN RELEASED.  BUT IT
19   DOESN'T CORRELATE THAT ALL OF THOSE 900 HAVE -- IN FACT IT IS
20   NOT TRUE THAT ALL OF THOSE 900 HAVE EXECUTABLE FINAL ORDERS.
21                I WOULD ALSO SAY THAT THAT 900 IS REALLY WITHIN THE
22   1600 NUMBER IN TERMS OF WHETHER ALL OF THOSE HAVE BEEN
23   REUNIFIED.  SOME OF THEM MAY ALSO BE WITHIN THE APPROXIMATELY
24   400 STILL AWAITING REUNIFICATION.
25                THE COURT:  OKAY.  WE MAY HAVE ALREADY TOUCHED ON
```

JULY 24, 2018

1    SOME OF THESE, BUT THERE ARE A FEW OTHER QUESTIONS ON THE

2    UPDATED NUMBERS.  AND MAYBE WE DON'T HAVE THIS INFORMATION

3    YET.

4           HOW MANY OF THE PARENTS THAT HAVE BEEN REUNITED ARE

5    SCHEDULED TO BE -- OR ARE SCHEDULED TO BE REUNITED HAVE FINAL

6    REMOVAL ORDERS?  IS THAT THE 900?

7           **MS. FABIAN:**  MOST LIKELY, YES.  SO I WOULD SAY THAT

8    THAT 900 COMES OUT OF THAT, THE TOP BULLET POINT, WHICH IS

9    INDIVIDUALS ELIGIBLE FOR REUNIFICATION.

10          **THE COURT:**  OF THOSE THAT HAVE BEEN REUNIFIED, HOW

11   MANY HAVE BEEN REMOVED ALREADY?  I THINK YOU SAID MAYBE 20.

12          **MS. FABIAN:**  THAT IS MY BEST GUESS, BUT I WOULD WANT

13   TO CONFIRM BEFORE.

14          **THE COURT:**  DO YOU KNOW, OF THAT NUMBER, HOW MANY

15   WERE REMOVED WITH THEIR CHILDREN?

16          **MS. FABIAN:**  I DON'T.

17          **THE COURT:**  OKAY.

18          **MS. FABIAN:**  I THINK I WOULD SAY, MORE ACCURATELY,

19   THE STATISTIC I HAVE IS THAT 20 CLASS MEMBERS, APPROXIMATELY

20   20, WERE REMOVED AFTER THE COURT'S ORDER, SO I CAN'T SAY AMONG

21   THOSE WHICH WERE REMOVED WITH THEIR CHILDREN OR WITHOUT.  THEY

22   WOULD HAVE ALL BEEN SUBJECT TO A WAIVER SUBJECT TO THE

23   PRELIMINARY INJUNCTION IF THEY WERE REMOVED WITHOUT THEIR

24   CHILDREN.  BUT I DON'T HAVE THE NUMBER AS TO HOW MANY OF THOSE

25   WERE REMOVED WITH OR WITHOUT THEIR CHILDREN.

JULY 24, 2018

```
 1              THE COURT:  AND THERE IS A 136 PARENTS THAT WAIVED
 2    REUNIFICATION AS OF THE PRESENT TIME.  DO YOU KNOW OF THOSE --
 3    IT IS 127 -- OF THOSE 127 WAIVED REUNIFICATION AFTER RECEIVING
 4    THE CLASS NOTICE?
 5              MS. FABIAN:  SO THIS IS -- I THINK I EXPLAINED THIS
 6    AT THE LAST HEARING AS WELL.  THERE IS REALLY -- THIS NUMBER
 7    IS INDIVIDUALS WHO WAIVED REUNIFICATION AT THEIR INTERVIEW
 8    WITH HHS, SO THAT IS NOT -- DOES NOT CORRELATE TO INDIVIDUALS
 9    NECESSARILY HAVING A FINAL ORDER OF REMOVAL.  THAT IS, AS
10    COMMANDER WHITE EXPLAINED, THAT FINAL STEP BEFORE
11    REUNIFICATION IS ENSURING THAT THE PARENT IN FACT WANTS TO BE
12    REUNIFIED.  SO THAT NUMBER IS FOLKS THAT DECLINED
13    REUNIFICATION AT THAT STEP.
14              RELATEDLY I THINK YOU WILL SEE IN TODAY'S FILING BY
15    THE GOVERNMENT IN THE DECLARATION THAT ICE HAS IDENTIFIED 85
16    INDIVIDUALS WHO HAVE DECLINED -- HAVE WAIVED REUNIFICATION
17    WITH A FINAL ORDER ON THE NOTICE FORM.  I HAVEN'T -- SO
18    WHETHER THERE IS -- THERE IS LIKELY OVERLAP BETWEEN THAT 85
19    AND SOME NUMBER OF THIS 127, BUT IT IS TWO DIFFERENT PARTS OF
20    THE PROCESS.
21              THE COURT:  OKAY.  FROM THE GOVERNMENT'S
22    PERSPECTIVE, THEN, OF THE ELIGIBLE CLASS MEMBERS,
23    REUNIFICATION WILL BE COMPLETED BY THURSDAY, OR VERY CLOSE TO
24    IT.
25              MS. FABIAN:  THAT'S MY UNDERSTANDING.
```

JULY 24, 2018

```
 1            THE COURT:  BECAUSE EVERYONE HAS BEEN CLEARED, AND
 2    1,012 HAVE ALREADY BEEN REUNIFIED AND THE BALANCE ARE
 3    SCHEDULED, TRANSPORTATION PENDING, WHICH I ASSUME WOULD OCCUR
 4    BETWEEN NOW AND THURSDAY.
 5            MS. FABIAN:  I THINK MY COLLEAGUE MAY SPEAK TO THIS
 6    A LITTLE BIT.  THERE ARE SOME ISSUES WITH STAYS OR OTHER
 7    INJUNCTIONS BEING ISSUED IN OTHER COURTS THAT MAY IMPEDE THAT
 8    PROCESS FOR SOME SMALL NUMBER OF INDIVIDUALS.  BUT FOR THE
 9    MOST PART --
10            THE COURT:  THAT'S THE NEW YORK SITUATION?
11            MS. FABIAN:  YES.
12            THE COURT:  LET'S ADDRESS THAT IN A MOMENT.
13            BUT ASIDE FROM THAT, THAT WOULD BE A VERY SMALL
14    GROUP OF CHILDREN.
15            MS. FABIAN:  I AM NOT AWARE -- THE ONLY OTHER ISSUE
16    I HAD HEARD WAS POTENTIAL WEATHER-RELATED TRAVEL ISSUES.  BUT
17    OTHER THAN THAT I HAVE NOT HEARD OF ANY IMPEDIMENTS TO
18    COMPLETING THE PROCESS.
19            THE COURT:  OKAY.  AND THEN AS TO THE CATEGORY, I
20    THINK IT IS 914, OF INELIGIBLE, THAT'S THE CATEGORY WHERE THE
21    PLAINTIFFS, WITH THE APPROPRIATE INFORMATION, CAN EITHER AGREE
22    OR IF THERE IS DISAGREEMENT BRING IT TO THE COURT'S ATTENTION
23    AT A LATER TIME.
24            MS. FABIAN:  I THINK THAT IS RIGHT.  WE WILL NEED TO
25    GATHER THAT INFORMATION AND GIVE IT TO PLAINTIFFS, AND WE ARE
```

JULY 24, 2018

```
 1   WORKING ON THAT.  AND I THINK THEN WE CAN MEET AND CONFER
 2   FURTHER AS TO THE PROCESS.
 3           THE COURT:  AND THEN ON THE LIST, THE INFORMATION,
 4   LET'S RUN THROUGH THAT QUICKLY.
 5           THERE IS SUPPOSED TO BE A LIST OF CLASS MEMBERS WHO
 6   WAIVED REUNIFICATION PRIOR TO REMOVAL, AND THERE IS AN
 7   INDICATION THAT THAT IS COMING.  WHAT'S THE PROFFER THERE?
 8           MS. FABIAN:  I THINK WE HAVE GIVEN A LIST, AND I
 9   THINK I UPDATED IT EARLIER TODAY, AND THAT IS OF THE 127 WHO
10   WAIVED DURING THE HHS INTERVIEW PROCESS THE -- I KNOW
11   PLAINTIFFS HAVE ASKED FOR THE INDIVIDUALS WHO WAIVED ON THE
12   FORM, THE COURT ORDERED FORM.  AND THAT SEEMS TO NOW HAVE BEEN
13   COMPLETED, AND I HOPE VERY SHORTLY WE WILL BE ABLE TO GIVE
14   THEM THAT LIST.
15           THE COURT:  AND THAT WOULD BE DONE -- YOU ARE IN A
16   POSITION TO DO THAT, FOR EXAMPLE BY TOMORROW SOMETIME?
17           MS. FABIAN:  I HAVE AN EMAIL OUT TO CONFIRM THAT,
18   BUT AS REFLECTED IN OUR DECLARATION FILED THIS MORNING, IT
19   APPEARS THAT WE HAVE IDENTIFIED THOSE 85 INDIVIDUALS, SO IT
20   SHOULD BE WE -- SHOULD BE ABLE TO PROVIDE THAT LIST VERY
21   SHORTLY.
22           THE COURT:  THEN HOW ABOUT THE LIST OF CLASS MEMBERS
23   WHO HAVE BEEN REMOVED.  WHERE ARE WE ON THAT?
24           MS. FABIAN:  THAT'S THE LIST THAT'S UNDER FURTHER
25   REVIEW, AS I JUST INDICATED.  I HAVE NOT RECEIVED A TIMETABLE
```

JULY 24, 2018

FOR THAT.  I HAVE ASKED FOR IT AS SOON AS POSSIBLE.  I KNOW

THAT WE COMMITTED TO DOING IT ON FRIDAY, AND THERE WAS A

MISUNDERSTANDING BETWEEN MYSELF AND MY CLIENT AS FAR AS WHAT

WAS BEING ASKED FOR.  SO I UNDERSTAND THAT THEY ARE PULLING

TOGETHER WHAT THEY CAN AS QUICKLY AS POSSIBLE, BUT I DON'T

HAVE THE TIMETABLE FOR THAT FROM THEM.

**THE COURT:**  IF THE COURT WERE TO ISSUE AN ORDER AS

TO WHEN THAT LIST SHOULD BE PRODUCED, DO YOU HAVE A POSITION

AS TO WHAT CAN BE DONE?  BECAUSE WHEN WE DISCUSSED THIS LAST

THERE WAS INDICATION THAT THE LIST WOULD BE COMING, I THINK

FRIDAY.  AND THEN THERE WAS SOME DISCUSSION ABOUT MAYBE

PRODUCING THE LIST ON MONDAY, WHICH WOULD HAVE BEEN YESTERDAY.

**MS. FABIAN:**  I HOPE TO HAVE A LIST TONIGHT THAT

WOULD HELP ME BETTER UNDERSTAND WHAT THAT LIST WILL CONTAIN.

SO WHAT -- I THINK WHAT I CAN SAY IS I HOPE THAT BY TOMORROW

WE COULD PROVIDE SOME INFORMATION.  WHAT I CAN'T COMMIT TO

RIGHT NOW IS EXACTLY WHAT THAT WILL CONTAIN BECAUSE I WON'T

KNOW UNTIL I SEE THAT LATER TODAY.

**THE COURT:**  AND THEN THERE WAS A LIST OF CLASS

MEMBERS WHO HAVE BEEN RELEASED FROM ICE CUSTODY.  YOU ARE

INDICATING YOU NEED ADDITIONAL TIME ON THAT.

**MS. FABIAN:**  I THINK SOME OF THAT -- AS I NOW

UNDERSTAND BETTER, I THINK SOME OF THAT MAY BE CONTAINED IN

TERMS OF THE -- THOSE REFLECTED IN THE TOP BULLET POINT.  I

THINK SOME OF THOSE MAY BE REFLECTED IN WHAT HAS ALREADY BEEN

JULY 24, 2018

1   PRODUCED TO PLAINTIFFS.  IN TERMS OF THOSE INDIVIDUALS WHO

2   MIGHT FALL IN THE BOTTOM CATEGORY, WHICH IS THE FURTHER REVIEW

3   CATEGORY OR THOSE INDIVIDUALS THAT WE CAN'T LOCATE, I THINK

4   THAT I DON'T HAVE YET.  AND I HOPE TO KNOW MORE ABOUT THAT

5   SOON AS WELL.

6          AND I KNOW THAT IS THE CATEGORY THAT PLAINTIFFS ARE

7   INTERESTED IN, AND I SAID TO THEM THAT WE WILL CONTINUE TO

8   WORK TO GET THAT TO THEM AS SOON AS WE CAN.

9          **THE COURT:**  YOU COULD PROVIDE A LIST, THOUGH, FOR

10  EXAMPLE THE PARENTS YOU KNOW WHO HAVE BEEN RELEASED FROM ICE

11  CUSTODY, YOU CAN PROVIDE THAT SPECIFIC INFORMATION.  AND THEN

12  YOU COULD ALSO ARTICULATE HOW MANY PARENTS YOU DON'T KNOW

13  WHERE THEY ARE.

14         **MS. FABIAN:**  I THINK THAT IS RIGHT, YOUR HONOR.

15         **THE COURT:**  OKAY.  WHAT WOULD BE THE EXPLANATION FOR

16  NOT KNOWING WHERE THE PARENTS ARE?  WHAT HAPPENED?  IS THIS

17  BECAUSE DOJ DIDN'T HAVE THE INFORMATION, OR DHS DOESN'T HAVE

18  THE INFORMATION SO THERE IS AN INABILITY TO GIVE IT TO HHS AND

19  THEN TO GOVERNMENT COUNSEL HERE TODAY?  OR WHAT IS THE

20  EXPLANATION?

21         **MS. FABIAN:**  I THINK THAT IF THE PARENT WAS

22  TRANSFERRED INTO ANY SORT OF STATE CUSTODY, FOR EXAMPLE IF

23  THERE WAS A WARRANT OUT FOR STATE CRIMINAL ACTIVITY AND THE

24  PARENT WAS TRANSFERRED THERE, THAT THAT PARENT MAY HAVE BEEN

25  THEN RELEASED WITHOUT NOTICE TO THE GOVERNMENT.  SO IF THAT

1   PATIENT DID NOT THEN COME FORWARD TO HHS TO SEEK REUNIFICATION

2   HHS MIGHT NOT BE AWARE OF THEIR WHEREABOUTS OR HOW TO CONTACT

3   THEM.

4         RELATEDLY, IF THEY WERE RELEASED BY -- RELEASED FROM

5   CRIMINAL CUSTODY, AND EVEN FEDERAL CRIMINAL CUSTODY BUT DID

6   NOT GO TO ICE CUSTODY THE SAME SITUATION COULD HAVE OCCURRED.

7   SO I THINK IT IS MOST LIKELY INDIVIDUALS WHO WERE RELEASED

8   FROM SOME FORM OF CUSTODY AND -- MOST LIKELY PRIOR TO THE

9   ORDER BUT THEN DIDN'T REACH OUT TO O.R.R. TO MAKE CONTACT FOR

10  REUNIFICATION.

11        **THE COURT:**  MANY OF THESE PARENTS COULD BE IN ICE

12  CUSTODY, BUT BECAUSE OF THE LACK OF COMMUNICATION BETWEEN AND

13  AMONG THE AGENCIES IT IS UNCERTAIN WHERE THESE PARENTS

14  ACTUALLY ARE, WHETHER THEY ARE WITH ICE OR WHETHER THEY ARE

15  WITH B.O.P. OR WHETHER THEY HAVE BEEN RELEASED?

16        **MS. FABIAN:**  IF THEY REMAIN IN ICE CUSTODY I THINK

17  THAT WE WOULD HAVE IDENTIFIED THEM BY NOW.

18        IF THEY ARE IN B.O.P. CUSTODY, IT IS NOT IN THE ICE

19  RECORDS BUT THAT IS SOMETHING THAT AS WE NARROW THE NUMBER

20  DOWN -- THERE IS NO WAY TO SIMPLY RUN THAT NUMBER, BUT AS WE

21  NARROW THE NUMBER DOWN THAT IS A PLACE WE CAN CHECK.

22        SIMILARLY, IF WE WERE TO TRY TO REVIEW STATE CUSTODY

23  IT IS A MATTER OF REALLY HAVING TO CHECK ON AN INDIVIDUALIZED

24  BASIS.

25        **THE COURT:**  SO BY PROCESS OF ELIMINATION, THESE

JULY 24, 2018

```
 1   PARENTS ARE LIKELY NOT IN ICE DETENTION BECAUSE IF THEY WERE
 2   YOU WOULD KNOW.  IF THEY WERE RELEASED FROM ICE YOU WOULD KNOW
 3   THAT.  SO IT WOULD APPEAR THEY ARE EITHER IN STATE OR FEDERAL
 4   CUSTODY, EITHER B.O.P. OR THE STATE CUSTODY.
 5          MS. FABIAN:  I THINK THAT WOULD BE MY BEST GUESS,
 6   YOUR HONOR, YES.  OR RELEASED FROM ONE OF THOSE IN A MANNER
 7   WHERE WE WEREN'T NOTIFIED AND THEY HAVEN'T THEN COME FORWARD.
 8          THE COURT:  OKAY.  IF THERE WAS COMMUNICATION AMONG
 9   THE THREE AGENCIES, B.O.P. UNDER DOJ, ICE UNDER DHS, AND THEN
10   O.R.R. UNDER HHS, IT WOULD BE -- YOU WOULD KNOW WHERE THE
11   PARENT IS.
12          MS. FABIAN:  I DON'T THINK THAT IN THOSE CASES IT
13   WOULD BE A COMMUNICATIONS ISSUE.  I THINK FOR THE MOST PART IF
14   AN INDIVIDUAL IS IN -- WELL, IN B.O.P. CUSTODY THERE IS --
15   BECAUSE ICE WOULD LIKELY PLACE A DETAINER AND THAT DETAINER
16   WOULD BE HONORED BY THE FEDERAL -- BY B.O.P., THAT THAT WOULD
17   LIKELY BE -- WE WOULDN'T LOSE TRACK.
18          SO THERE IS A SYSTEM OF COMMUNICATION THERE THAT I
19   THINK WOULD LIKELY NOT LOSE TRACK OF PARENTS IN THAT
20   SITUATION, BUT I THINK THE MOST LIKELY SCENARIO WOULD BE FOR
21   INDIVIDUALS WHO GO INTO STATE CUSTODY.
22          THE COURT:  OKAY.
23          MR. GELERNT, YOU HAVE BEEN SITTING PATIENTLY.
24          MR. GELERNT:  GOOD AFTERNOON, YOUR HONOR.
25          YOU ACTUALLY ASKED JUST ABOUT EVERYTHING WE WERE
```

JULY 24, 2018

```
1    GOING TO ASK ABOUT, SO I DON'T HAVE THAT MUCH.

2            YOU KNOW, THE INFORMATION YOU ASKED ABOUT WE

3    CERTAINLY WANT AND WE CERTAINLY, AS YOUR HONOR SEEMED TO BE

4    SUGGESTING, WILL TAKE PIECEMEAL INFORMATION BETTER THAN

5    NOTHING.

6            I JUST WANTED TO ASK ABOUT A COUPLE OF THINGS.

7            THE 20 WHO HAVE BEEN, I THINK REUNITED AND

8    REMOVED --

9            COUNSEL, MS. FABIAN.

10           MS. FABIAN:  SORRY.

11           MR. GELERNT:  THE 20 WHO WERE REMOVED, YOU MENTIONED

12   THOSE WERE REUNITED AND REMOVED AT SOME POINT.

13           MS. FABIAN:  THOSE ARE REFLECTED ON THE CHART THAT

14   WE PRODUCED TO YOU YESTERDAY.

15           MR. GELERNT:  WE HAVE NAMES FOR EACH OF THOSE 20?

16           MS. FABIAN:  YOU SHOULD, YES.

17           MR. GELERNT:  OKAY.

18           AND THE OTHER QUESTION I WANTED TO ASK IS ABOUT THE

19   37.  I THINK YOUR HONOR WAS ASKING ABOUT THE GOVERNMENT HAVING

20   BEEN UNABLE TO IDENTIFY WHERE PARENTS ARE.

21           BUT MY UNDERSTANDING -- AND CORRECT ME IF I AM

22   WRONG -- IS THAT THERE IS STILL 37 KIDS FOR WHOM THE IDENTITY

23   OF THE PARENT HAS NOT BEEN ESTABLISHED AT THIS POINT, OR IS

24   THAT WRONG?

25           MS. FABIAN:  I CAN'T CONFIRM THAT IT IS STILL
```

JULY 24, 2018

```
 1    EXACTLY THAT NUMBER.  THERE WERE SOME NUMBER OF MINORS WHO HAD
 2    NOT BEEN MATCHED TO A PARENT'S A-NUMBER.
 3            AS DISCUSSED A FEW TIMES THAT IS LIKELY BECAUSE THE
 4    OVER-INCLUSIVE NATURE OF O.R.R.'S ORIGINAL REVIEW AND
 5    IDENTIFICATION OF POTENTIAL CHILDREN OF CLASS MEMBERS MEANS
 6    THOSE PARENTS -- THOSE CHILDREN ARE IN FACT UAC'S.  I KNOW
 7    THERE IS 20-SOMETHING THAT ARE CURRENTLY BELIEVED TO BE UAC'S,
 8    BUT HAVEN'T CONFIRMED THAT SO WE HAVEN'T MOVED THEM OUT YET.
 9    SO THERE IS SOME NUMBER THAT HAS NOT BEEN LINKED TO --
10            THE COURT:  SO THAT NUMBER, THE 37 --
11            IS THAT THE NUMBER, 37?
12        MR. GELERNT:  YES, YOUR HONOR.
13            THE COURT:  WHAT BUCKET DID YOU PUT THEM IN?  ARE
14    THEY IN THE 1637 OR THE 914?
15        MS. FABIAN:  THEY WOULD BE IN THE 914, AND LIKELY IN
16    THE FURTHER REVIEW CATEGORY.
17            THE COURT:  FURTHER EVALUATION, THE 260 CATEGORY.
18    260 IS THE NUMBER?
19        MS. FABIAN:  YES.
20        THE COURT:  OKAY.
21        MR. GELERNT:  SO WE WOULD JUST ASK FOR YOU TO
22    CONTINUALLY UPDATE US ON THAT, BECAUSE THAT IS OBVIOUSLY A
23    CONCERNING BUCKET OF CHILDREN.
24        MS. FABIAN:  YES.
25        MR. GELERNT:  OKAY.
```

JULY 24, 2018

1          THEN I JUST WANTED ONE OTHER CLARIFICATION.

2          YOU SAID THAT WE HAD GOTTEN INFORMATION ABOUT THE

3   20.  THE ONE THING I WASN'T SURE ABOUT IS, WERE ALL 20

4   REUNIFIED WITH THEIR CHILDREN AND REMOVED TOGETHER WITH THEIR

5   CHILDREN?  I DON'T THINK THAT WAS REFLECTED ON THE INFORMATION

6   WE GOT.

7          **MS. FABIAN:**  I DON'T BELIEVE IT WAS REFLECTED THERE,

8   AND I WOULD HAVE TO CONFIRM.

9          **MR. GELERNT:**  OKAY.  I THINK THAT'S -- WELL, I THINK

10  THERE WAS ONE OTHER POINT, YOUR HONOR.

11         I THINK WHEN YOU WERE TALKING WITH THE GOVERNMENT

12  ABOUT WHY SOMEONE HAS NOT BEEN FOUND, FROM OUR UNDERSTANDING

13  FROM WHEN WE WERE DEALING WITH THE UNDER-FIVES IS THAT

14  SOMETIMES IF A PARENT HAD BEEN RELEASED THEY LEFT THEIR LAST

15  KNOWN ADDRESS, BUT THE GOVERNMENT HAD NOT BEEN ABLE TO CONTACT

16  THEM.

17         IS THAT STILL A PART OF THE GROUP WHERE THE

18  GOVERNMENT HAS NOT BEEN ABLE TO CONTACT THE PARENT.  NOT THAT

19  THEY NEVER HAD AN ADDRESS OR DIDN'T KNOW WHEN THEY WERE

20  RELEASED FROM STATE OR FEDERAL CUSTODY, BUT THAT THEY SIMPLY

21  HAVE NOT BEEN ABLE TO CONTACT THEM AFTER THEY WERE RELEASED BY

22  ICE.  PRESUMABLY THAT IS SOME OF THIS GROUP.

23         **MS. FABIAN:**  I AM NOT SURE I UNDERSTAND THE

24  QUESTION.

25         WHAT I CAN SAY IS THAT FOR PARENTS WHO HAVE BEEN

1   RELEASED WE HAVE THOSE WHO WE ARE IN CONTACT WITH, AND THEN

2   SOME NUMBER WITH WHOM THE GOVERNMENT HAS NOT YET MADE CONTACT.

3   AND I AM WORKING ON IDENTIFYING THOSE WITH WHOM WE HAVE NOT

4   BEEN IN CONTACT AS THE PRIORITY, AND TO GET YOU THEN ANY LAST

5   KNOWN CONTACT INFORMATION FOR THOSE INDIVIDUALS, BECAUSE THOSE

6   ARE THE ONES THAT I THINK YOU WERE MOST INTERESTED IN.

7           MR. GELERNT:  EXACTLY.  THOSE ARE THE ONES WHERE THE

8   NGO'S MAY BE ABLE TO HELP.  IF YOU ARE NOT ABLE TO CONTACT

9   THEM MAYBE WE KNOW AN AUNT OR SOMEBODY WHO THEN CAN MAKE SURE

10  AND KNOWS THAT THEIR CELL PHONE HAS BEEN TURNED OFF, SOMETHING

11  ALONG THOSE LINES.

12          I THINK THAT IS A CATEGORY OF PEOPLE WHO ICE KNOWS

13  ABOUT THEM, KNOWS THEY WERE RELEASED FROM ICE CUSTODY, BUT

14  JUST HAS NOT BEEN ABLE TO MAKE CONTACT WITH THEM IN THE

15  INTERIOR.

16          THE COURT:  YES.

17          MR. GELERNT:  THANK YOU, YOUR HONOR.

18          MS. FABIAN:  I DON'T KNOW THE NUMBER OF THAT, BUT I

19  UNDERSTAND THAT IS A PRIORITY, AND I AM TRYING TO PRIORITIZE

20  THAT.

21          THE COURT:  MR. GELERNT, IF I COULD ASK YOU ANOTHER

22  QUESTION.

23          WE MAY HAVE COUNSEL FROM NEW YORK ON THE PHONE, BUT

24  THIS IS A ONE-WAY CONVERSATION PRESENTLY.

25          MR. GELERNT:  RIGHT.

JULY 24, 2018

1        **THE COURT:**  SO IF COUNSEL FROM NEW YORK ARE ON THE

2    LINE, I AM INVITING THEM TO CALL BACK AFTER THIS STATUS

3    CONFERENCE CONCLUDES AND WE WILL HAVE A SECOND STATUS

4    CONFERENCE ON THE RECORD.

5        CAN YOU -- I KNOW GOVERNMENT COUNSEL IS READY TO

6    ADDRESS SOME OF THIS ISSUE, BUT DO YOU HAVE ANY INFORMATION IN

7    THAT REGARD?

8        **MR. GELERNT:**  WE DO NOT HAVE ANY MORE INFORMATION

9    THAN THE GOVERNMENT.  I THINK WE PROBABLY HAVE LESS

10   INFORMATION THAN THE GOVERNMENT, BECAUSE THAT IS A SUIT

11   BETWEEN THE NEW YORK FOLKS AND THE GOVERNMENT.

12       AND MY UNDERSTANDING IS IT INVOLVES A VERY SMALL

13   SUBSET OF INDIVIDUALS WHO NEW YORK HAS BEEN REPRESENTING AND

14   WANTS MORE INFORMATION ABOUT, AND I ASSUME AND HOPEFULLY BE

15   ABLE TO NEGOTIATE THAT WITH THE GOVERNMENT.  BUT I DO NOT HAVE

16   REAL INFORMATION ABOUT THAT.

17       **THE COURT:**  WHAT ABOUT THE STIPULATION THAT COUNSEL

18   WERE WORKING ON VERY DILIGENTLY AND FOR MANY DAYS THE LAST

19   WEEK, HAS THAT FALLEN THROUGH OR DO YOU STILL HAVE SOME

20   OPTIMISM ABOUT THAT?

21       I RECEIVED THE GOVERNMENT'S BRIEFING THIS MORNING

22   WHICH I HAVE NOT READ BECAUSE I HAVE BEEN IN TRIAL ALL DAY

23   LONG ON ANOTHER MATTER.  SO I READ THE INTRODUCTION, BUT I

24   HAVEN'T GOTTEN INTO THE ACTUAL POINTS AND AUTHORITIES, WHICH I

25   WILL DO LATER TONIGHT.

JULY 24, 2018

1          **MR. GELERNT:**  RIGHT.  IT APPEARS THAT THINGS HAVE

2   FALLEN THROUGH.

3          WHAT I WOULD SAY IS, YOUR HONOR, TALKING TO PEOPLE

4   ON THE GROUND NOW, AND WE HAVE AN ENORMOUS NUMBER OF

5   AFFIDAVITS WE ARE READY TO PUT IN FOR REPLY IF YOU WOULD LIKE

6   THEM.  THINGS ARE REALLY A MESS ON THE GROUND, AND WE

7   ABSOLUTELY NEED AT LEAST SEVEN DAYS TO BE COUNSELING THESE

8   FAMILIES.  THE GOVERNMENT IS PUTTING ROUGHLY 900 PEOPLE IN ONE

9   DETENTION CENTER AT ONE TIME.

10          **THE COURT:**  SO OF THIS 900 THAT IS REFERENCED, A

11   FINAL ORDER OF REMOVAL, IT IS YOUR VIEW THAT MOST OF THOSE ARE

12   DETAINED TOGETHER?

13          **MR. GELERNT:**  OUR UNDERSTANDING -- I DON'T KNOW IF

14   IT IS GOING TO BE EXACTLY 900 BUT I KNOW IT SEEMS AS THOUGH

15   SOMEWHERE OVER 700 ARE GOING TO BE PUT IN ONE FACILITY, THE

16   PARENTS OF CHILDREN DETAINED TOGETHER.  AND THERE SIMPLY NO

17   WAY IN A COUPLE OF DAYS TO PROVIDE MEANINGFUL CONSULTATION.

18          I WOULD ALSO SAY THE GOVERNMENT HAS -- AND THIS MAY

19   BE SOMETHING WE WANT TO TALK ABOUT AFTER YOU READ THE BRIEF.

20   I WOULD JUST SAY THAT THE GOVERNMENT HAS PUT IN THEIR VERSION

21   OF THE NEGOTIATIONS, PUTTING ASIDE WHETHER THAT'S SORT OF

22   PROPER TO TELL YOU WHAT WAS CONFIDENTIAL, WE DON'T BELIEVE IT

23   WAS REMOTELY ACCURATE.  IT DOES NOT REFLECT WHAT THEY ACTUALLY

24   AGREED TO.  SINCE YOU HAVEN'T READ IT, I WILL PUT THAT ASIDE.

25          I WOULD SAY WE DESPERATELY NEED THOSE SEVEN DAYS.

JULY 24, 2018

1          **THE COURT:**  THE INTRODUCTION DOES INDICATE A NUMBER

2     OF THINGS.  BUT WHAT ABOUT THE FACT THAT THERE HAS BEEN A

3     WEEK, A NUMBER OF THESE FAMILIES HAVE BEEN REUNIFIED.  THEY

4     WOULD HAVE HAD TIME TOGETHER, I WOULD ASSUME, TO TALK ABOUT

5     THESE IMPORTANT ISSUES, AND TO DO SO WITH THE CHILD

6     ADVOCATE --

7          **MR. GELERNT:**  RIGHT.

8          **THE COURT:**  -- ADVICE.  WOULDN'T THAT BE A LARGE

9     NUMBER?

10         **MR. GELERNT:**  YOUR HONOR, WE DON'T ACTUALLY KNOW --

11    AND MY COLLEAGUE CAN TELL ME, BUT WE DON'T ACTUALLY KNOW, WE

12    ARE NOT BEING TOLD WHO IS BEING REUNIFIED.  SO ONE OF THE

13    THINGS THAT WE NEED IS THE DAYS RUN FROM THE TIME WE ARE

14    ACTUALLY NOTIFIED ABOUT REUNIFICATION, BECAUSE THINGS DOWN

15    THERE ARE A MESS.

16         WHAT WE UNDERSTAND FROM THE LAST CLASS LIST -- I

17    JUST WANTED TO MAKE SURE I HAD THE NUMBER RIGHT -- IS THAT

18    THERE WERE VERY FEW PEOPLE NOW REUNITED AT KARNES, WHICH IS

19    THE FACILITY THE GOVERNMENT INTENDS TO USE, 20 OR 30.  SO IT

20    SEEMS LIKE THE VAST BULK HAVE NOT BEEN GIVEN SUFFICIENT TIME.

21    BUT WE ARE CERTAINLY READY TO WORK WITH YOUR HONOR IF SOME

22    INDIVIDUAL HAS ALREADY BEEN COUNSELED FOR A FEW DAYS WHETHER

23    THAT POTENTIALLY EATS INTO THEIR SEVEN DAYS.  BUT WE THINK THE

24    VAST BULK ARE GOING TO END UP AT THIS KARNES FACILITY IN SOUTH

25    TEXAS ALL AT ONCE, AND IT IS GOING TO BE IMPOSSIBLE.

JULY 24, 2018

1          **THE COURT:**  THAT'S THE REMOVAL LOCATION.

2          **MR. GELERNT:**  EXACTLY.

3          **THE COURT:**  THE GOVERNMENT ALSO INDICATED IN ITS

4     INTRODUCTION THAT THESE PARENTS NOW HAVE HAD TIME TO TALK WITH

5     THEIR CHILDREN, IF NOT IN PERSON THEN AT LEAST BY PHONE OR

6     VIDEO TELECONFERENCING, WHATEVER HAS BEEN IN PLACE.  AND

7     ARGUABLY THEY WOULD HAVE DISCUSSED THESE ISSUES WITH THEIR

8     CHILDREN, AND THEY COULD HAVE DISCUSSED THESE ISSUES WITH THE

9     CHILD'S ADVOCATE AS WELL.

10         **MR. GELERNT:**  WELL, YOUR HONOR, I THINK THOSE ARE

11    SOME OF THE THINGS THAT THE AFFIDAVITS ADDRESS.  WE SCRAMBLED

12    LAST NIGHT WHEN THE -- TO GET THE AFFIDAVITS.  WE WOULD MAKE A

13    FEW POINTS ABOUT THAT.

14         ONE IS, WHATEVER ACCESS THEY MAY HAVE HAD TO THEIR

15    CHILD ON THE PHONE, THEY DID NOT HAVE THAT ACCESS BY PHONE TO

16    THE CHILD'S ADVOCATE.

17         THE OTHER THING I WOULD SAY IS, THIS IS ONE OF THOSE

18    THE SITUATIONS -- AND I KNOW THE GOVERNMENT HAS PUT IN AN

19    AFFIDAVIT FROM THE TOP SAYING, HERE IS WHAT I DIRECTED.  IT IS

20    SHORT OF SPECIFICS, BUT AS YOUR HONOR KNOWS THERE IS A VAST

21    DIFFERENCE BETWEEN WHAT MAY HAVE BEEN DIRECTED FROM

22    HEADQUARTERS AND WHAT WAS ACTUALLY HAPPENING ON THE GROUND.

23         THE AFFIDAVITS EXPLAIN THAT PEOPLE HAD MAYBE ONE

24    SHORT CALL, WHERE IT IS JUST THE CHILD CRYING, CAN'T SEE THE

25    PARENT.  NOTHING COULD GET DONE IN THAT SITUATION.

JULY 24, 2018

1          I THINK THE AFFIDAVITS FROM PARTNERS AND ASSOCIATES

2     AT BIG LAW FIRMS, NGO'S, ARE ALL DOWN THERE, AND THEY SAY THAT

3     THE PARENTS HAVE NO IDEA WHAT'S HAPPENING.  THAT THEY HAVE

4     SIGNED THESE FORMS, MANY OF THEM -- TO SHOW YOU HOW MUCH

5     CONFUSION THERE IS.  MANY OF THEM ACTUALLY SIGNED THE FORMS

6     GIVING AWAY THEIR CHILD, EVEN THOUGH THEY DIDN'T HAVE A FINAL

7     ORDER.  THERE WOULD BE NO SENSE IN A PARENT GIVING AWAY THEIR

8     CHILD IF THE PARENT THEMSELVES CAN STAY IN.

9          THERE ARE GROUP PRESENTATIONS, THE AFFIDAVITS FROM

10    THE LAW FIRMS SAY.  THE PARENTS WERE PUT IN GROUPS OF 50 AND

11    SAID, HERE ARE YOUR BASIC RIGHTS, YOU HAVE 3 MINUTES TO SIGN

12    THIS FORM.

13         I THINK YOU ARE GOING TO BE SHOCKED WHEN YOU SEE

14    THESE AFFIDAVITS HOW LITTLE THE PARENTS UNDERSTOOD BEFORE

15    GETTING TOGETHER, AND HOW DIFFICULT IT IS GOING TO BE NOW TO

16    PROVIDE MEANINGFUL CONSULTATION WITH THEM, WITH HUNDREDS AND

17    HUNDREDS OF PEOPLE SHOWING UP AT THIS DETENTION CENTER.

18              **THE COURT:**  HOW MUCH TIME ARE YOU REQUESTING?

19              **MR. GELERNT:**  RIGHT NOW OUR REQUEST IS SEVEN DAYS.

20    WHAT WE ARE HEARING ON THE GROUND --

21              **THE COURT:**  FOR YOUR BRIEFING.

22              **MR. GELERNT:**  OH, I AM SORRY, YOUR HONOR.  I THINK

23    IF YOU COULD GIVE US UNTIL TOMORROW MORNING AT 9:00, AND WE

24    COULD BE BACK HERE IN THE AFTERNOON IF YOUR HONOR WOULD SEE

25    THAT AS APPROPRIATE.

JULY 24, 2018

```
 1              THE COURT:  ALL RIGHT.  PERHAPS I CAN HEAR FROM MR.
 2    STEWART.
 3              MR. STEWART:  THANK YOU, YOUR HONOR.
 4              THE COURT:  HAVE YOU BEEN IN COMMUNICATION WITH THE
 5    NEW YORK ATTORNEYS, OR DO YOU HAVE INFORMATION IN THAT REGARD?
 6              MR. STEWART:  MY COLLEAGUES AND I -- IT IS SORT OF
 7    HARD TO KEEP TRACK OF ALL OF THE COMMUNICATIONS, YOUR HONOR,
 8    BUT I HAVE BEEN ON SOME OF THEM AND TRIED TO BE AS PRIVY AS I
 9    CAN.
10              MY UNDERSTANDING, YOUR HONOR, IS ON THE NEW YORK
11    CASE --
12              THE COURT:  EIGHT OR NINE CHILDREN.
13              MR. STEWART:  EIGHT OR NINE CHILDREN.  THE ISSUE
14    THERE -- THE KEY ISSUE THERE AS I UNDERSTAND IT IS WHETHER
15    THEY WILL GET THE 48 HOURS' NOTICE PROVIDED BY THE NEW YORK
16    COURT'S ORDER.  WE ARE DOING WHAT WE CAN TO GET -- TO NOT MOVE
17    THEM BEFORE THAT 48 HOURS LAPSES.
18              THE COURT:  THOSE CHILDREN ARE STILL THERE.
19              MR. STEWART:  THAT IS MY UNDERSTANDING, YOUR HONOR,
20    YES.  FOR THE NINE THAT ARE AT ISSUE IN THE RECENTLY
21    TRANSFERRED HABEAS CASE.
22              THE COURT:  AS I UNDERSTAND IT, THERE WAS A REQUEST
23    IN NEW YORK THAT THERE BE AN ORDERLY PERIOD OF TIME BEFORE
24    REUNIFICATION, OR TO HAVE THE PARENTS RELOCATED TO NEW YORK.
25              SO IS IT YOUR THOUGHT THAT THOSE EIGHT OR NINE
```

1   CHILDREN WOULD BE -- WOULD REMAIN IN NEW YORK, AND THEN

2   THROUGH THAT PROCESS THAT THE PARENT, ARGUABLY, COULD BE IN

3   COMMUNICATION, AT LEAST TELEPHONICALLY WITH THE CHILD AND ANY

4   CHILD ADVOCATE, AND THEN MAKE A DECISION TO REMOVE SEPARATELY

5   OR TOGETHER OR --

6           **MR. STEWART:**  YOUR HONOR, I THINK THERE ARE A COUPLE

7   OF WAYS IT MIGHT BE DONE.  ONE IS THAT -- WE GAVE THE NOTICE

8   AS OF MONDAY MORNING FOR THESE EIGHT OR NINE ARE WAITING UNTIL

9   THE 48-PERIOD LAPSES BEFORE MOVING THEM, GIVEN THE DESIRE TO

10  COMPLY WITH THE REUNIFICATION DEADLINE.

11          ANOTHER OPTION, YOUR HONOR, IS THAT WE COULD GO AND

12  CONFER WITH COUNSEL FOR THE PLAINTIFFS IN THAT CASE, AND TRY

13  TO WORK SOMETHING OUT AS TO THE NINE, THAT WOULD JUST GET THAT

14  SET OF CHILDREN TAKEN CARE OF.  SO THAT WOULD BE ANOTHER

15  OPTION.

16          IT HAS BEEN A SOMEWHAT FAST-MOVING SITUATION AS YOUR

17  HONOR IS AWARE, SO EITHER OF THOSE OPTIONS WOULD BE FINE.

18          MY UNDERSTANDING IS THAT SEVERAL OF THE CHILDREN ARE

19  FROM THE SAME FAMILY AND ARE GOING TO BE RELEASED IN ANY

20  EVENT, SO THAT MIGHT SORT OF ASSUAGE CONCERNS THERE.

21          **THE COURT:**  AT LEAST INTO THE COMMUNITY?

22          **MR. STEWART:**  I BELIEVE SO, YOUR HONOR.

23          **THE COURT:**  OKAY.  WHY DON'T -- IF NEW YORK COUNSEL

24  ARE THE LINE WE CAN PERHAPS PUT THEM AT EASE NOW AND SIMPLY --

25  AND JUDGE RAKOFF HAS TRANSFERRED THAT CASE SO I WAS -- AS TO

JULY 24, 2018

1    JUDGE FURMAN LAST WEEK.  SO WITH RESPECT TO THE REUNIFICATION
2    IN PLACE HERE, LET'S KEEP THE CHILDREN THAT HAVE BEEN
3    IDENTIFIED IN THE NEW YORK FILING BEFORE JUDGE RAKOFF IN NEW
4    YORK.  THE PARENTS WILL NOT BE RELOCATED TO NEW YORK.  I THINK
5    THAT WAS ONE OF THE REQUESTS, AND THAT WILL NOT OCCUR.

6            BUT WHAT I WOULD LIKE THE PARTIES TO DO IS TO MEET
7    AND CONFER, AND IT MAY BE THAT THE PARENTS CAN COMMUNICATE
8    WITH THE CHILDREN TELEPHONICALLY AND COMMUNICATE WITH THE
9    CHILD ADVOCATE TELEPHONICALLY, MAKE AN INFORMED DECISION.  AND
10   IT MAY BE THAT THIS ISSUE CAN WORK OUT THAT WAY WITHOUT
11   FURTHER COURT INTERVENTION.

12           THEN, AS I MENTIONED BEFORE, IF NEW YORK COUNSEL ARE
13   ON THE LINE AND THEY WANT TO CALL IN AS SOON AS THIS
14   CONFERENCE IS OVER I CAN SPEAK TO THEM DIRECTLY.  OTHERWISE
15   THIS ISSUE, IT MAY WELL WORK OUT WITH THE UNDERSTANDING THAT
16   THE PROCESS, THE REUNIFICATION AND THE REMOVAL, AT LEAST WITH
17   RESPECT TO THESE EIGHT OR NINE CHILDREN, WILL BE ON HOLD UNTIL
18   I HEAR FROM COUNSEL.

19           MR. STEWART, DID YOU WANT TO COMMENT ON THE
20   STIPULATION THAT WAS IN PLACE BUT APPARENTLY HAS FALLEN
21   THROUGH AND WHERE WE ARE?

22           **MR. STEWART:**  SURE, YOUR HONOR.

23           I GUESS I HAD A FEW POINTS.  I DON'T WANT TO JUMP
24   THE GUN, I KNOW YOUR HONOR WANTS TO FINISH READING THE PAPERS.
25           THE POINTS I WOULD LIKE TO EMPHASIZE ARE THESE, YOUR

JULY 24, 2018

1   HONOR.  AS YOU WILL SEE FROM THE BRIEF, THE GOVERNMENT HAS A

2   PRETTY STRONG JURISDICTIONAL OBJECTION TO THE ISSUE HERE THE

3   GOVERNMENT HAS TAKEN SERIOUSLY YOUR HONOR'S RECOGNITION THAT

4   THIS CASE IS NOT A CHALLENGE TO THE GOVERNMENT'S DISCRETIONARY

5   REMOVAL AUTHORITY AND ALL OF THAT.

6           DESPITE THOSE CONSIDERABLE, YOU KNOW, CONCERNS AND

7   RESERVATIONS, THE GOVERNMENT WORKED VERY, VERY HARD, IN LINE

8   WITH YOUR HONOR'S ENCOURAGEMENT AND ORDERS, TO TRY TO REACH

9   SOME WAY TO RESOLVE THIS ISSUE DESPITE THE PREVIOUS AGREEMENT

10  TO THE 48-HOUR PERIOD.

11          WE THOUGHT THAT IT WAS APPROPRIATE TO IDENTIFY WHERE

12  WE ENDED UP FOR THE COURT BECAUSE THE COURT DID ORDER US TO

13  MEET AND CONFER AND WE JUST WANTED TO BE CLEAR ON OUR GOOD

14  FAITH AND ALL WE TRIED TO DO AND THE EFFORTS WE MADE WITH THIS

15  KARNES FACILITY.

16          WHAT I WOULD EMPHASIZE THERE, YOUR HONOR, IS THAT WE

17  ARE TRYING TO DEDICATE THIS ENTIRE FACILITY TO, YOU KNOW,

18  RESOLVE THESE CLAIMS AND GIVE PEOPLE ACCESS LET THEM -- YOU

19  KNOW, WE PUT THAT OUT THERE AS A WAY FOR FOLKS TO GET THE

20  INFORMATION THEY NEEDED TO MAKE THE DECISIONS THAT PLAINTIFFS

21  COUNSEL PRESSED THEY NEEDED TO MAKE.

22          I JUST WANT TO EMPHASIZE THAT SIGNIFICANT

23  JURISDICTIONAL OBJECTIONS THAT AT ISSUE IN A LOT OF OTHER

24  CASES, AND WE FIGURED YOUR HONOR WOULD NOT WANT TO

25  UNNECESSARILY REACH OUT TO RESOLVE THAT ISSUE IF YOU DIDN'T

JULY 24, 2018

```
 1    NEED TO.  WE TRIED OUR BEST TO RESOLVE IT.  DESPITE THAT WE
 2    JUST WEREN'T ABLE TO, UNFORTUNATELY.
 3              SO I WOULD EMPHASIZE THE GOVERNMENT'S GOOD FAITH,
 4    OUR EFFORTS TO PUT AN OFFER THAT ACCOMMODATED ALL CONCERNS.  I
 5    WOULD EMPHASIZE THAT POINT AS YOUR HONOR IS KIND OF GOING
 6    THROUGH THE PAPERS.
 7              THE SECOND POINT I WOULD EMPHASIZE, YOUR HONOR, IS I
 8    AM DISAPPOINTED TO HEAR THAT MR. GELERNT IS PLANNING TO
 9    SUDDENLY FILE A RAFT OF AFFIDAVITS OR DECLARATIONS.  YOU KNOW,
10    THE GOVERNMENT WAS CAUGHT OFF-GUARD AND QUITE BY SURPRISE WHEN
11    THIS MOTION WAS FILED ABOUT A WEEK AND A HALF AGO.  WE GOT
12    ALMOST NO NOTICE OF IT.
13              THE OPENING PARAGRAPH ADMITTED THAT THE MOTION WAS
14    BASED ON RUMORS.  THAT IS THE DIRECT WORD FROM THE MOTION.
15              IT WAS BASED ON JUST SUPPOSITION, SO WE HAD TO RUSH
16    AROUND, FIND OUT WHAT WAS GOING ON.  AND NOW I GET A SIGNAL
17    THAT WE ABOUT TO BE, DESPITE OUR SIGNIFICANT JURISDICTIONAL
18    OBJECTIONS, OUR DAYS AND NIGHTS OF TRYING TO NEGOTIATE
19    SOMETHING HERE EFFECTIVELY DESPITE OUR CONCERNS, THAT WE ARE
20    ABOUT TO THE HIT, BLINDSIDED BY A RAFT OF AFFIDAVITS.  I THINK
21    THAT IS QUITE PROBLEMATIC.  I DON'T THINK IT IS IN THE SPIRIT
22    OF YOUR HONOR'S ORDERS.
23              AND I THINK IT IS PARTICULARLY IMPROPER THAT IT
24    SOUNDS LIKE MR. GELERNT IS TRYING TO WIDEN THE -- POTENTIALLY
25    WIDEN THE RELIEF THAT HIS MOTION WAS SEEKING WHICH I ALSO
```

JULY 24, 2018

```
 1   WOULD SUBMIT IS IMPROPER.

 2           AGAIN I DON'T WANT TO GET OUT AHEAD OF THE REPLY,

 3   BUT I WOULD OBJECT TO THE SUBMISSION OF FACTUAL AVERMENTS IN

 4   THE REPLY BRIEF, PARTICULARLY IF THE GOVERNMENT DOESN'T HAVE

 5   AN ABILITY TO RESPOND TO THEM, ESPECIALLY BECAUSE IF THESE ARE

 6   KIND OF ANECDOTAL, I MEAN, WE ARE KIND OF AT A DISADVANTAGE

 7   BECAUSE WE HAVE TO RUSH AROUND AND FIND OUT WHAT PEOPLE ARE

 8   TALKING ABOUT.

 9           I WOULD ALSO EMPHASIZE, YOUR HONOR, THAT AS YOU

10   YOURSELF, YOUR HONOR, POINTED OUT, THERE HAS BEEN QUITE A

11   NUMBER OF DAYS TO TRY TO RESOLVE THIS, AND JUST GIVE PEOPLE

12   THE RIGHT NOTICE, GIVE THEM CONSULTATION, ALL OF THAT SORT OF

13   THING.  IT SOUNDS LIKE THOSE EFFORTS -- THINGS HAVE NOT

14   PROGRESSED ADEQUATELY THERE.

15           SO IN SHORT, YOUR HONOR, WE THE GOVERNMENT WOULD

16   STICK VERY FIRMLY ON OUR PAPERS.  WE ARE PROUD OF OUR EFFORTS

17   TO WORK IN GOOD FAITH TO TRY TO REACH A STIPULATION SO THAT

18   THE COURT DID NOT HAVE TO STEP IN AND RESOLVE THIS, DID NOT

19   HAVE TO STEP IN TO DO MORE INJUNCTIVE RELIEF.  AND WE WERE

20   PARTICULARLY ATTUNED TO THE SERIOUS LEGAL QUESTIONS AND

21   SERIOUS JURISDICTIONAL ISSUES PRESENTED BY THIS.  AND WE

22   WANTED TO TRY TO RESOLVE THAT BUT, YOU KNOW, IT IS UNFORTUNATE

23   THAT WE WERE NOT ABLE TO.  WE DID WHAT WE COULD.

24           SO I WOULD EMPHASIZE THOSE POINTS, YOUR HONOR, AND

25   OTHERWISE I WOULD STICK TO THE BRIEF.
```

JULY 24, 2018

 1           **THE COURT:**  LET ME RUN THROUGH A NUMBER OF IDEAS,

 2     THOUGHTS, AND THEN GET COUNSEL'S INPUT AS TO HOW WE MOVE

 3     FORWARD.

 4           FIRST, THE OBSERVATION I WOULD MAKE ABOUT THE

 5     REUNIFICATION OF ELIGIBLE CLASS MEMBERS, THAT'S THE 1,637, IT

 6     APPEARS 1,012 HAVE BEEN REUNIFIED.  THE BALANCE HAVE BEEN

 7     CLEARED AND TRANSPORTATION IS PENDING.

 8           THIS IS A REMARKABLE ACHIEVEMENT, AND COMMANDER

 9     WHITE IS TO BE COMMENDED.  HE HAS DONE YEOMAN'S WORK HERE IN

10     ACCOMPLISHING THAT.

11           SO FOR CLASS MEMBERS WHO ARE ELIGIBLE, IT APPEARS

12     THAT WHEN WE MEET ON THIS ISSUE AGAIN ON FRIDAY THAT

13     REUNIFICATION WILL HAVE BEEN COMPLETED ON TIME; WHICH HAS TO

14     BE HIGHLIGHTED AND THE GOVERNMENT HAS TO BE COMMENDED FOR ITS

15     EFFORTS IN THAT REGARD.

16           THERE IS A SIGNIFICANT GROUP OF CLASS MEMBERS, ABOUT

17     914, WHO MAY BE INELIGIBLE.  THAT IS A DIFFERENT CATEGORY.  I

18     THINK MANY OF THOSE THE PLAINTIFFS ARE NOT GOING TO QUARREL

19     WITH THE GOVERNMENT MAKING A DETERMINATION NOT TO REUNIFY,

20     WHETHER IT IS CRIMINAL HISTORY OR OTHER PRECLUDING FACTORS.

21     CERTAINLY THERE ARE GOING TO BE SOME OF THOSE CLASS MEMBERS

22     WHERE THE PLAINTIFFS, WITH ADDITIONAL INFORMATION, WILL

23     CHALLENGE THAT, AND THEN THE COURT CAN ADDRESS THOSE ISSUES AT

24     A LATER TIME.

25           THERE NEEDS TO BE MORE INFORMATION PROVIDED TO

JULY 24, 2018

```
 1   PLAINTIFFS.  AND AS I HAVE INDICATED, THIS SHOULD REALLY BE A
 2   TRANSPARENT PROCESS.
 3           SOME OF THIS INFORMATION IS UNPLEASANT.  IT IS THE
 4   REALITY OF THE CASE.  IT IS THE REALITY OF A POLICY THAT WAS
 5   IN PLACE THAT RESULTED IN LARGE NUMBERS OF FAMILIES BEING
 6   SEPARATED WITHOUT FORETHOUGHT AS TO REUNIFICATION AND KEEPING
 7   TRACK OF PEOPLE.  AND THAT'S THE FALLOUT WE ARE SEEING.
 8           THERE MAY BE 463, THERE MAY BE MORE.  THAT'S NOT
 9   CERTAIN, BUT IT APPEARS THERE IS A LARGE NUMBER OF PARENTS WHO
10   ARE UNACCOUNTED FOR OR WHO MAY HAVE BEEN REMOVED WITHOUT THEIR
11   CHILD.  THAT'S A DEEPLY TROUBLING REALITY OF THE CASE, AND THE
12   PLAINTIFFS ARE ENTITLED TO THAT INFORMATION.
13           SO THERE HAS TO BE AN ACCOUNTING.  AND THE LIST
14   NEEDS TO IDENTIFY THE PARENTS, IF YOU HAVE THE INFORMATION,
15   AND WHERE THEY ARE, WHETHER THEY HAVE BEEN REMOVED.  AND IT
16   NEEDS TO ALSO INCLUDE THE STATEMENT THAT THE GOVERNMENT
17   DOESN'T KNOW WHERE THE PARENT IS OR LACKS THAT INFORMATION.
18   PLAINTIFFS ARE ENTITLED TO THAT INFORMATION SO THAT WE CAN
19   MORE INTELLIGENTLY DISCUSS, WHERE DO WE GO FROM HERE.  HOW DO
20   WE -- FOR THOSE PARENTS WHO WERE REMOVED WITHOUT CHILD.  THE
21   SOONER THE PLAINTIFFS HAVE ALL OF THAT INFORMATION THEY
22   HOPEFULLY LOCATE THEM AND THEN A REUNIFICATION CAN BE IN
23   PROCESS DOWN THE ROAD.  WE CAN SET A SEPARATE TIMEFRAME THERE.
24   BUT WE ARE NOT ABLE TO DO ANYTHING WITHOUT THE INFORMATION.
25           SO I WOULD PROPOSE THAT THE LIST FOR CLASS MEMBERS
```

JULY 24, 2018

1  WHO WAIVE REUNIFICATION PRIOR TO REMOVAL, THAT'S THE 127, BE

2  PROVIDED BY TOMORROW AT 9:00 A.M.

3          IF I UNDERSTOOD YOU CORRECTLY THAT WOULD BE DO-ABLE,

4  OR AT LEAST YOU CAN DO IT AS TO SOME, BUT THEN INDICATE THERE

5  MAY BE OTHERS WHERE YOU NEED MORE TIME.

6          **MS. FABIAN:**  SO TO CLARIFY THE 127 LIST WE GAVE

7  TODAY, THERE IS THE SEPARATE LIST OF INDIVIDUALS WHO HAVE

8  WAIVED ON THE FORM.

9          **THE COURT:**  YES.

10          **MS. FABIAN:**  WE HAVE -- AS I -- TO CLARIFY WHAT I

11  SAID BEFORE, WE ARE IDENTIFYING ALL OF THOSE FORMS.  OF THE

12  ONES WE HAVE IDENTIFIED, 85 WAIVED.  THERE ARE STILL -- WE ARE

13  WORKING THROUGH TO MAKE SURE WE IDENTIFIED ALL OF THOSE FORMS.

14          **THE COURT:**  AND I THINK YOU SAID YOU ARE GETTING AN

15  EMAIL TONIGHT.

16          **MS. FABIAN:**  THAT IS A SEPARATE EMAIL.  TONIGHT I

17  WILL HAVE MORE INFORMATION ON THE REMOVAL -- ON THE

18  INDIVIDUALS REMOVED, THAT'S WHAT I WAS REFERENCING, TONIGHT.

19          AS FAR AS THOSE -- SO WE ARE IN THE PROCESS OF

20  IDENTIFYING ALL OF THE FORMS THAT HAVE BEEN SIGNED, AND THEN

21  WHICH OF THOSE HAVE WAIVED REUNIFICATION.  WE HAVE GONE

22  THROUGH 400-AND-SOME FORMS AND HAVE IDENTIFIED 85 OF THOSE WHO

23  WAIVED REUNIFICATION.  BUT THERE MAY BE MORE, BUT THAT'S WHERE

24  WE ARE RIGHT NOW IN THAT PROCESS.

25          **THE COURT:**  LET'S DO IT THIS WAY.

JULY 24, 2018

```
 1              THERE IS A LIST THAT IS NEEDED FOR CLASS MEMBERS WHO
 2     HAVE WAIVED REUNIFICATION PRIOR TO REMOVAL.  THERE IS A LIST
 3     THAT'S NEEDED OF CLASS MEMBERS WHO HAVE BEEN REMOVED.  AND
 4     THERE IS A LIST THAT IS NEEDED OF CLASS MEMBERS WHO HAVE BEEN
 5     RELEASED FROM ICE CUSTODY.
 6              IT SEEMS TO ME THOSE LISTS SHOULD BE PROVIDED TO THE
 7     PLAINTIFFS BY TOMORROW, PERHAPS NOON WOULD BE A MORE
 8     APPROPRIATE DEADLINE.  AND IT MAY BE THAT THE LISTS ARE NOT
 9     COMPLETE.  BUT YOU COULD GIVE THE INFORMATION YOU HAVE, AND
10     THEN AS TO THE PARENTS, CLASS MEMBERS THAT YOU LACK
11     INFORMATION YOU CAN IDENTIFY HOW MANY, AND ARTICULATE THE
12     REASONS, WHAT CATEGORIES THEY MIGHT BE FALLING INTO.
13              AND THEN WHEN WE GET THE STATUS REPORT ON THURSDAY
14     WE WILL HAVE MORE INFORMATION THAT WE CAN ADDRESS
15     INTELLIGENTLY ON FRIDAY.
16              SO LET'S DO THAT.  THOSE LISTS BY TOMORROW, NOON.
17              THE PLAINTIFFS' REPLY ON THIS JURISDICTIONAL ISSUE
18     AND TRO REQUEST BY TOMORROW AT -- I WOULD PROPOSE, IF THERE IS
19     NOT OBJECTION, BY TOMORROW 12:00 O'CLOCK NOON.
20              AND THEN THAT WE ADDRESS THE MATTER FRIDAY AT THE
21     STATUS CONFERENCE AT 1:30.
22              DOES THE GOVERNMENT OBJECT?
23              MR. STEWART:  WE CAN GO ON JUST MAINTAINING OUR
24     JURISDICTIONAL OBJECTION.
25              THE COURT:  YES.
```

JULY 24, 2018

```
 1            MR. STEWART:  WOULD BE FINE FOR YOUR HONOR.
 2   UNDERSTOOD.  FINE TO ADDRESS ON FRIDAY.
 3            MR. GELERNT:  THAT'S FINE, YOUR HONOR.
 4            THE COURT:  SO FILING BY NOON TOMORROW, THEN WE WILL
 5   ADDRESS THIS ISSUE FRIDAY.
 6            MR. GELERNT:  OKAY.  THANK YOU, YOUR HONOR.
 7            THE COURT:  OKAY.
 8            HAVE WE ADDRESSED ALL MATTERS?  ANY OTHER
 9   HOUSEKEEPING MATTERS.
10            MR. STEWART:  CAN I FLAG AT LEAST ONE MORE, YOUR
11   HONOR?
12            THE COURT:  YES.
13            MR. STEWART:  AS YOUR HONOR IS AWARE, AND AS WE
14   DISCUSSED, A NUMBER OF OTHER CASES HAVE ARISEN, IN OBVIOUSLY
15   IN NEW YORK, AND SOME OF THOSE HAVE BEEN TRANSFERRED HERE.
16            THE COURT:  I AM ONLY AWARE OF TWO, THEY ARE BOTH IN
17   NEW YORK.
18            MR. STEWART:  BOTH IN NEW YORK.  THERE ARE SOME
19   INDIVIDUAL CASES, BUT THOSE ARE DIFFERENT -- BUT THOSE HAVE
20   BEEN RESOLVED, I THINK, PRETTY SPEEDILY, GENERALLY.
21            THE ONE I WANTED TO FLAG, THOUGH, YOUR HONOR, IS
22   THAT THERE IS A CASE PENDING IN THE WESTERN DISTRICT OF
23   WASHINGTON BEFORE JUDGE PECHMAN.
24            THE COURT:  YES.
25            MR. STEWART:  THIS INVOLVES 17 STATES AND THE
```

JULY 24, 2018

1   DISTRICT OF COLOMBIA WHO FILED A SUIT THAT THEY ALLEGED ON

2   BEHALF OF THEIR RESIDENTS IN CONNECTION WITH THE FAMILY

3   SEPARATION POLICY.

4          I RAISE IT SORT OF FOR -- WITHOUT GETTING AHEAD OF

5   THINGS TOO MUCH, YOUR HONOR.  THE GOVERNMENT -- THE PLAINTIFFS

6   IN THAT CASE SOUGHT EXPEDITED DISCOVERY ABOUT THE POLICY AND

7   THAT SORT OF THING.  THE GOVERNMENT FILED A FAST MOTION THAT

8   SOUGHT TRANSFER TO THIS COURT, AND KIND OF OTHER THINGS ON

9   JURISDICTIONAL ISSUES.

10         JUDGE PECHMAN IN THAT CASE HAS ORDERED EXPEDITED

11  DISCOVERY WITHOUT RULING ON THE TRANSFER PIECE YET, BUT -- SO

12  THE TRANSFER PIECE IS STILL UNDER CONSIDERATION.  BUT THERE IS

13  A HEARING BEFORE JUDGE PECHMAN THIS FRIDAY ON THE EXPEDITED

14  DISCOVERY SCOPE AND SCHEDULE AND PRESUMABLY THOSE SORTS OF

15  THINGS.

16         **THE COURT:**  YES.

17         **MR. STEWART:**  I AM GUESSING.

18         I WANTED TO FLAG IT FOR YOUR HONOR BECAUSE THE

19  GOVERNMENT'S VIEW IS THAT THAT CASE -- THE CLAIMS

20  OVERWHELMINGLY OVERLAP WITH THIS ONE OR WITH OTHER LITIGATION.

21  IT IS PROPERLY TRANSFERRED TO THIS COURT FOR JUST THE REASONS

22  ARTICULATED BY JUDGE FURMAN IN HIS TRANSFER ORDER, AMONG

23  OTHERS.

24         IT DOESN'T LOOK -- IT IS NOT CLEAR THAT THAT

25  TRANSFER WILL HAPPEN, AND I WANTED TO JUST FLAG IT BECAUSE OF

JULY 24, 2018

1    CONCERNS THAT IF WE DO END UP WITH A SITUATION OF EXPEDITED

2    DIFFICULT DISCOVERY THERE IT WILL, UNFORTUNATELY, POTENTIALLY

3    OVERLAP WITH EFFORT HERE.

4             AND I DON'T RAISE IT TO KIND OF IDENTIFY A PROBLEM

5    MORE JUST WE ARE GOING TO LOOK FOR SOLUTIONS AND TRY TO DEAL

6    WITH IT.  BUT I JUST WANTED TO FLAG IT FOR YOUR HONOR SO YOU

7    KNOW OF IT AND YOU ARE NOT CAUGHT OFF-GUARD.  AND WE ARE

8    WORKING AS BEST WE CAN.  WE TRIED TO GET IT TRANSFERRED HERE,

9    WE ARE NOT SURE WE ARE GOING TO SUCCEED.  BUT WE ARE PREPARED

10   TO, YOU KNOW, WE ARE TRYING TO WORK WITH THAT ISSUE.

11            BUT I WANTED TO FLAG IT JUST BECAUSE THE MORE

12   RESOURCES WE HAVE TO DEVOTE TO EXPEDITED DISCOVERY

13   UNFORTUNATELY MANY OF THOSE FOLKS WILL I THINK BE PEOPLE WHO

14   ARE WORKING ON REUNIFICATION, SO WE ARE TRYING TO DEAL WITH

15   IT.  BUT I DID WANT TO RAISE THAT CASE FOR YOUR HONOR BEFORE

16   JUDGE PECHMAN.

17            **THE COURT:**  YES.  THANK YOU FOR MENTIONING THAT.

18            BUT OF THE ELIGIBLE CLASS MEMBERS IT APPEARS THAT'S

19   ALL UNDERWAY AND REUNIFICATION SHOULD OCCUR BY THURSDAY.

20            **MR. STEWART:**  I DON'T THINK THE CASE WILL AFFECT THE

21   STUFF YOU HAVE BEEN FOCUSING ON, YOUR HONOR.  I FLAG IT AS A

22   CONSIDERATION AS WE ARE, YOU KNOW, CONTINUING TO BEAR DOWN TO

23   COMPLETE THE REST OF THE REUNIFICATION.

24            **THE COURT:**  YES.  ALL I CAN SAY THERE IS ON THE NEW

25   YORK CASES, BOTH JUDGES FURMAN AND RAKOFF, WITH THE PARTIES

JULY 24, 2018

1    CONSENT, CALLED ME.  AND SO THEY TOOK THAT INITIATIVE, AND

2    THEN THEREAFTER THEY MADE THEIR OWN CONSIDERED JUDGMENT TO

3    TRANSFER THE CASES HERE.

4          I HAVE NOT HEARD FROM JUDGE PECHMAN, AND OF COURSE,

5    SHE IS GOING TO DO WHAT SHE CONSIDERS TO BE THE RIGHT DECISION

6    IN HIS CASE, SO I WOULD NOT HAVE ANY COMMENT OR OBSERVATION

7    OTHER THAN TO THANK COUNSEL FOR LETTING ME KNOW.

8          AND WE WILL STAND BY, AND AS I INDICATED TO JUDGES

9    FURMAN AND RADKOFF, WE ARE HERE AND READY TO TEND TO THE NEW

10   YORK CASE AS THE LAWYERS DEEM APPROPRIATE.

11         LET'S CLOSE THIS HEARING.  AND THEN I AM GOING TO

12   ASK COUNSEL JUST TO STAND BY FOR A MOMENT.  I DON'T KNOW IF

13   NEW YORK COUNSEL WILL CALL IN OR NOT, BUT I WANTED TO GIVE

14   THEM THE COURTESY TO DO THAT IF THAT'S WHAT THEY WANT TO DO.

15   THEY MAY ELECT NOT TO.  THEY MAY NOT BE ON THE LINE, I DON'T

16   KNOW.  I DON'T HAVE ANY OTHER INFORMATION, OTHER THAN I SPOKE

17   WITH JUDGE RADKOFF LATE THIS AFTERNOON, I THINK IT WAS

18   ABOUT -- WELL, IT WAS DURING THE RECESS WHEN I WAS IN TRIAL.

19   AND SO HE GAVE ME THE UPDATE, BUT I HAVEN'T HEARD ANYTHING

20   ELSE THAT HE HAS TRANSFERRED THE CASE.

21         **MR. STEWART:**  CAN I MAKE JUST ONE OR LIKE A

22   TWO-SENTENCE CLOSING OBSERVATION ON ONE OTHER PIECE OF THE

23   STAY MOTION?

24         **THE COURT:**  YES.

25         **MR. STEWART:**  OBVIOUSLY THERE IS GOING TO BE FURTHER

JULY 24, 2018

```
 1   BRIEFING AND ARGUMENT AND I CAN ADDRESS -- HOPEFULLY ADDRESS
 2   THIS FURTHER ON FRIDAY, YOUR HONOR.  BUT THE GOVERNMENT ALSO
 3   WOULD TAKE ISSUE WITH THE SUGGESTION THAT THINGS ARE A MESS ON
 4   THE GROUND.  AS COMMANDER WHITE HAS EXPLAINED THERE HAS
 5   BEEN -- AND AS YOUR HONOR HAS RECOGNIZED, THERE HAS BEEN
 6   TREMENDOUS EFFORT TO REUNIFY CONSISTENT WITH THIS COURT'S DUE
 7   PROCESS REUNIFICATION FAMILY INTEGRITY RULING.  WE HAVE MANY
 8   REASONS TO BE VERY PROUD OF THIS EFFORT SO WE STRONGLY CONTEST
 9   THAT CHARACTERIZATION AND LOOK FORWARD TO THE OPPORTUNITY TO
10   PRESENT FURTHER VIEWS ON THAT.
11            THE COURT:  I WILL LOOK FORWARD TO THE ADDITIONAL
12   BRIEFING.  AND I THINK THE STATUS REPORT ON THURSDAY WILL BE
13   GOOD BECAUSE WE WILL HAVE A LOT OF OTHER ADDITIONAL
14   INFORMATION.  AND THEN FRIDAY, OF COURSE, WE CAN TAKE
15   INVENTORY ON WHAT ACTUALLY HAPPENED AT THE REUNIFICATION OF
16   ELIGIBLE CLASS MEMBERS, AND THEN ADDRESS THE JURISDICTIONAL
17   ISSUE.
18            MS. FABIAN:  YOUR HONOR, I JUST WANTED TO LET YOU
19   KNOW AS WELL ON FRIDAY I WILL BE APPEARING IN COURT IN LOS
20   ANGELES SO I AM GOING TO TRY TO PARTICIPATE BY PHONE HERE IN
21   THE AFTERNOON.
22            THE COURT:  MR. STEWART, YOU WILL BE HERE?
23            MR. STEWART:  I WILL BE HERE, YOUR HONOR.
24            THE COURT:  OKAY.  VERY GOOD.  THANK YOU VERY MUCH.
25            MR. STEWART:  THANK YOU, YOUR HONOR.
```

JULY 24, 2018

1              **(PAUSE IN PROCEEDINGS)**

2          **THE COURT:**  OKAY.  WE DON'T HAVE A CASE NUMBER OR A

3    CASE YET.  I HAVE JUST BEEN INFORMED BY JUDGE RAKOFF THAT THE

4    NEW YORK CASE WAS TRANSFERRED.

5          WE HAVE GOVERNMENT COUNSEL PRESENT AND PLAINTIFFS'

6    COUNSEL PRESENT.

7          AND I NOW UNDERSTAND WE HAVE NEW YORK COUNSEL ON THE

8    LINE, FROM LEGAL AID, REPRESENTING THE CHILDREN IN THAT CASE.

9          I HOPE YOU CAN HEAR ME.

10          CAN YOU STATE YOUR APPEARANCES?

11          **MR. GELERNT:**  CERTAINLY, YOUR HONOR.  THIS IS JUDITH

12    GOLDINER FROM THE LEGAL AID SOCIETY IN NEW YORK.  AND I AM

13    JOINED HERE -- WITH ME IS SARAH GILLMAN, GREGORY COPELAND, AND

14    BETH KRAUSE ALSO FROM NEW YORK CITY.

15          I KNOW WE HAVE OUR PRO BONO --

16          **MR. FRAHN:**  YOUR HONOR, THIS IS BUZZ FRAHN OF

17    SIMPSON THATCHER, PALO ALTO, CALIFORNIA, ON THE LINE AS WELL.

18          **THE COURT:**  VERY GOOD.  THANK YOU.

19          WERE COUNSEL ON THE LINE FOR THE LAST STATUS

20    CONFERENCE?

21          **MS. GOLDINER:**  YES, WE ARE WERE, YOUR HONOR.

22          **THE COURT:**  YOU HEARD THE DISCUSSION, THEN, THAT I

23    HAD WITH COUNSEL.

24          SO, MS. GOLDINER WHAT -- I AM ALL EARS.  I WOULD

25    LIKE TO HEAR FROM YOU AND GET YOUR PERSPECTIVE.

JULY 24, 2018

 1           MS. GOLDINER:  THANK YOU, YOUR HONOR.

 2           SO I GUESS I WANT TO START BY SAYING OUR CONCERN

 3    HERE IS THAT OUR CLIENTS DON'T HAVE INFORMATION THEY NEED TO

 4    MAKE MEANINGFUL PLANS, AND THEY HAVEN'T HAD THE OPPORTUNITY TO

 5    TALK TO THEIR PARENTS ABOUT THOSE PLANS OR THERE PARENTS TO

 6    THEIR COUNSEL, TO THE CHILDREN'S COUNSEL.

 7           SO, YOU KNOW, WHAT WE ARE SEEING IS KIDS WHO VERY

 8    MUCH WOULD LIKE TO BE WITH THEIR PARENTS BUT THEY DON'T WANT

 9    TO BE IN LONG FAMILY DETENTION.  WHAT THEY DON'T KNOW, AND

10    WHAT THE GOVERNMENT HASN'T GIVEN US NOTICE OF, IS WHETHER THE

11    PLAN FOR THE FAMILIES IS POTENTIALLY DEPORTATION OR FAMILY

12    DETENTION WHILE OTHER RELEASE IS BEING WORKED OUT.

13           SO THAT'S BEEN THE PROBLEM.  AND THAT'S SPECIFICALLY

14    THE PROBLEM FOR THE YOUNG PEOPLE THAT WE FILED FOR TODAY.  SO

15    WHAT WE WERE HOPING FOR WAS -- AS YOU KNOW FROM OUR PREVIOUS

16    FILING WAS THAT THE NOTIFICATIONS WE WOULD GET WOULD GIVE US

17    BOTH THE INFORMATION ON WHAT THE ACTUALLY PLAN WAS --

18           THE COURT:  I AM SORRY, SOMEBODY IS TYPING AND SO IT

19    IS ACTUALLY INTERRUPTING MS. GOLDINER'S PRESENTATION.

20           CAN YOU GIVE ME THAT LAST SENTENCE AGAIN?

21           MS. GOLDINER:  I AM SORRY.

22           THE REASON WE WANTED THE NOTIFICATION WAS REALLY

23    TWOFOLD.  ONE WAS TO GET INFORMATION ON EXACTLY WHAT THE PLAN

24    WAS FOR THE KIDS SO THAT WE COULD ADVISE THEM.  AND SECOND SO

25    THAT WE WOULD ALSO HAVE A WAY OF CONTACTING THEIR PARENTS AND

JULY 24, 2018

 1   GETTING THEIR PARENTS' INPUT INTO WHAT WAS GOING TO HAPPEN.

 2           SO OF THE FIVE PARENTS THAT ARE INVOLVED IN THE KIDS

 3   THAT WE FILED FOR, THREE OF THEM WE HAVE NOT BEEN ABLE TO TALK

 4   TO.  AND THEIR CHILDREN HAVE NOT HAD ANY MEANINGFUL

 5   OPPORTUNITY TO TALK TO THEM ABOUT WHAT THE PLANS ARE.

 6           AND EVEN WERE THEY ABLE TO TALK TO THEIR PARENTS,

 7   WITHOUT KNOWING WHETHER THEY ARE GOING TO BE DEPORTED OR

 8   WHETHER THEY ARE GOING TO BE IN FAMILY DETENTION IS IMPORTANT

 9   TO OUR KIDS TO KNOW WHETHER -- THAT IS SOMETHING THAT THEY

10   WANT OR WHETHER THEY WANT TO STAY AND PURSUE THE REMEDIES THEY

11   MIGHT HAVE.

12           **THE COURT:**  OKAY.

13           LET ME ASK MR. STEWART.  DO WE KNOW WHO THE FIVE

14   PARENTS ARE?

15           AND, MS. GOLDINER, DO YOU KNOW WHO THE FIVE PARENTS

16   ARE?  DO YOU HAVE THAT INFORMATION?

17           **MS. GOLDINER:**  WE KNOW WHO THEY ARE, WE HAVE NOT

18   BEEN ABLE TO CONTACT THEM.

19           **THE COURT:**  SO I AM JUST SPEAKING PRACTICALLY.  IF

20   YOU KNOW WHO THEY ARE, IT SEEMS THAT YOU COULD -- IT MAY BE

21   THAT GOVERNMENT COUNSEL IN NEW YORK KNOWS WHO THEY ARE AS

22   WELL, BUT I HAVE, OBVIOUSLY, GOVERNMENT COUNSEL HERE IN SAN

23   DIEGO, MS. FABIAN AND MR. STEWART.

24           IT MAY BE THAT IF THE INFORMATION IS SHARED WITH

25   THEM AS TO WHO THE PARENTS ARE, THEN THIS CAN WORK OUT

JULY 24, 2018

1    INFORMALLY AND RELATIVELY EASILY WHERE THOSE PARENTS ARE NOT

2    REMOVED, THE CHILDREN CAN REMAIN IN NEW YORK.  THERE COULD BE

3    AN OPPORTUNITY WHERE PARENT AND CHILD COMMUNICATE AT LEAST

4    TELEPHONICALLY, PARENT AND CHILD ADVOCATE COMMUNICATE,

5    INFORMED DECISIONS ARE MADE.  AM I CORRECT?

6           I AM ASKING MS. FABIAN NOW.

7           **MS. FABIAN:**  LET ME STAND UP STRAIGHT WHILE I DO

8    THIS.

9           AND, YOU KNOW, IF I HAVE MISSED CONVERSATIONS I

10   APOLOGIZE.  I DON'T WANT TO MISREPRESENT ANYTHING.  MY

11   UNDERSTANDING IS -- I AM NOT AWARE IF WE HAVE BEEN TOLD THAT

12   THERE ARE DIFFICULTIES IN THE COMMUNICATION.  I THINK

13   FACILITATING COMMUNICATION IS SOMETHING WE CAN DO.

14          WE, AS I UNDERSTAND IT, GAVE NOTIFICATION OVER THE

15   WEEKEND.  WE HAVE NONETHELESS HELD TO ENSURE THAT THERE WERE

16   48 HOURS THAT WERE NOT ON THE WEEKEND ARRANGED FOR THE

17   REUNIFICATIONS TO HAPPEN TOMORROW.  AND, YOU KNOW, BASED ON

18   THE COURT'S EARLIER STATEMENT CAN HOLD THAT OFF FURTHER.  BUT

19   WE HAVE MADE ATTEMPTS TO PROVIDE ENOUGH TIME TO ALLOW THOSE

20   COMMUNICATIONS.  SO IF THOSE HAVEN'T HAPPENED I AM NOT AWARE

21   WHY THAT IS, BUT WE CAN CERTAINLY LOOK INTO ARRANGING THOSE.

22          MY UNDERSTANDING IS THAT WE HAVE ALSO GIVEN

23   INFORMATION AS TO THE CURRENT INTENTION WITH REGARD TO THE

24   FAMILY, WHICH IS I THINK FOR AT LEAST ONE FAMILY WHICH IS --

25   HAS MULTIPLE CHILDREN THAT THE CURRENT INTENTION IS THAT THEY

```
1    WOULD BE RELEASED UPON REUNIFICATION.  I AM NOT -- SO I AM NOT

2    SURE IF THE REMAINDER WOULD BE HELD TOGETHER IN FAMILY

3    DETENTION.  I BELIEVE THAT IS THE CURRENT PLAN AS WE

4    INDICATED, HOWEVER THAT IS THE CURRENT PLAN.  THINGS CAN

5    CHANGE AS NEW INFORMATION BECOMES AVAILABLE.

6           SO AS I UNDERSTAND IT, THAT WAS PART OF THE CONCERN

7    IS THAT WE CAN'T 100 PERCENT COMMIT AS TO THE SITUATION THAT

8    WILL BE DOWN THE LINE BUT THAT WE HAVE PROVIDED INFORMATION AS

9    TO OUR CURRENT UNDERSTANDING FROM ICE OF WHAT THE FAMILY

10   SITUATION WOULD BE.

11           THE COURT:  IT SEEMS THAT THIS IS A MATTER WITH A

12   VERY PRACTICAL SOLUTION.  AND SO PARTICULARLY SINCE, GIVEN THE

13   COURT'S ORDERS TODAY, THAT THE PARENTS WILL NOT BE REMOVED,

14   THE CHILDREN WILL NOT BE MOVED FROM NEW YORK PENDING WORKING

15   THIS OUT, THAT THE PARTIES CAN MEET AND CONFER.  AND IT SEEMS

16   LIKE THIS ISSUE, WITH COMMUNICATION, THERE CAN BE A MEANINGFUL

17   OPPORTUNITY FOR PARENT AND CHILD, PARENT AND CHILD ADVOCATE,

18   TO ADDRESS THE ISSUES, PERHAPS TELEPHONICALLY, BUT TO AT LEAST

19   ADDRESS THE ISSUES.  AND SO IT WOULD SEEM THAT THIS WHOLE AREA

20   COULD BE ADDRESSED THROUGH A JOINT MOTION AND ORDER.

21           DON'T YOU AGREE, MS. GOLDINER?

22           MS. GOLDINER:  YES, YOUR HONOR.

23           I DO WANT TO ADD, THOUGH, THAT WE STILL -- TO BE

24   ABLE TO APPROPRIATELY COUNSEL OUR CLIENTS, THE CHILDREN, AND

25   TALK TO THEIR PARENTS ABOUT WHAT THE OPTIONS ARE, WE NEED TO
```

JULY 24, 2018

1  KNOW THE ANSWER TO WHETHER IT IS REUNIFICATION AND DEPORTATION

2  OR REUNIFICATION AND BEING HELD IN FAMILY DETENTION.

3          AND THAT'S REALLY IMPORTANT TO OUR CLIENTS.  AND I

4  THINK THE GOVERNMENT KNOWS THE ANSWER TO THAT.  NOT A LOT OF

5  CHILDREN, AND I WOULD HOPE THEY COULD PROVIDE THAT TO US.  I

6  HAVE NO PROBLEM WITH CONFERRING WITH THEM, BUT I WOULD LIKE

7  TO -- WE NEED TO KNOW THE ANSWER TO THAT.

8          **THE COURT:**  I THINK THE GOVERNMENT, AS SOON AS YOU

9  KNOW WHO THE PARENTS ARE, YOU CAN INFORM PLAINTIFFS' COUNSEL,

10  WHETHER IT IS REUNIFY AND DEPORT, OR REUNIFY AND DETAIN

11  TOGETHER, OR PAROLE IN COUNTRY.

12          **MS. FABIAN:**  I THINK -- I THINK MY UNDERSTANDING IS

13  THAT WE HAVE MADE THAT AND THAT'S -- WE HAVE INDICATED THAT --

14  THE CURRENT PLAN.

15          I THINK THERE IS -- OUR POSITION WOULD BE THAT WE

16  CAN'T -- INCONSISTENT WITH THIS COURT'S ORDERS IS WE CAN'T

17  GUARANTEE A CERTAIN RESULT OR A CERTAIN OUTCOME FOR THAT

18  INFORMATION THAT CAME UP THAT CHANGED THE -- WHAT -- FOR

19  EXAMPLE SOMEONE OBTAINING AN EXECUTABLE FINAL ORDER MIGHT

20  CHANGE THE PLANS WITH REGARD TO DETENTION OR REMOVAL, ET

21  CETERA.

22          SO I THINK AS THINGS CHANGE, THE AGENCY RETAINS ITS

23  AUTHORITY TO MAKE DECISIONS BASED ON THE SITUATION WITH THE

24  FAMILY.  AND THAT'S WHY WE SAY WE HAVE GIVEN THE CURRENT

25  INFORMATION BUT CANNOT COMMIT THAT THAT INFORMATION WON'T

JULY 24, 2018

```
 1   CHANGE AS THE PROCESS MOVES FORWARD.
 2         THE COURT:  RIGHT.  I WOULD ASSUME, FOR EXAMPLE,
 3   THAT THE ONE PLAN MIGHT BE TO REUNIFY AND DETAIN TOGETHER, OR
 4   REUNIFY AND PAROLE INTO THE COMMUNITY, BUT THAT COULD CHANGE
 5   AS THE PARENT AND/OR CHILD MIGHT LATER BECOME SUBJECT TO A
 6   REMOVAL ORDER DOWN THE ROAD.
 7         MS. FABIAN:  CORRECT.  I THINK -- I MEAN, I THINK TO
 8   SOME EXTENT WE WOULD SAY THAT PROVIDING THAT INFORMATION IS A
 9   COURTESY THAT WE HAVE BEEN WILLING TO DO TO FACILITATE THE
10   DECISION-MAKING BY THIS GROUP.  IT IS NOT NECESSARILY
11   INFORMATION THAT EVERYONE IS ENTITLED TO -- THAT WE WOULD
12   AGREE EVERYONE IS ENTITLED TO, BUT WE HAVE MADE AN EFFORT TO
13   PROVIDE THE INFORMATION THAT IS CURRENTLY AVAILABLE.  I WOULD
14   AGREE, WE CAN'T COMMIT THAT THINGS WON'T CHANGE.
15         THE COURT:  WHAT IF THE PARTIES HERE -- THAT WOULD
16   BE GOVERNMENT COUNSEL AND MS. GOLDINER AND OTHER PLAINTIFFS'
17   COUNSEL -- MEET AND CONFER.  AND I WOULD HOPE THAT THIS COULD
18   BE A MATTER WHERE YOU COULD REPORT TOMORROW, BY JOINT MOTION
19   AND ORDER.  OR IF THERE IS A NEED FOR THE COURT TO BECOME
20   INVOLVED OTHERWISE, THEN WE CAN ARRANGE FOR AN IMMEDIATE
21   TELEPHONIC CONFERENCE AND ARGUMENT SUBJECT TO BRIEFING.
22         MS. GOLDINER:  WE ARE HAPPY TO MEET AND CONFER.
23         MR. STEWART:  CAN I ALSO ADD THE POSSIBILITY, YOUR
24   HONOR, THAT MAYBE NOT EVEN AN ORDER BUT IF WE COULD COME TO A
25   MUTUAL UNDERSTANDING AND ALERT THE COURT TO IT?
```

JULY 24, 2018

1          **THE COURT:**  YOU CAN JUST ALERT THE COURT, EXACTLY.

2          **MR. STEWART:**  VERY GOOD.

3          THE OTHER THING I MENTIONED -- YOUR HONOR, YOU

4    MENTIONED, I THINK YOU USED THE WORD STAY OR NOT REMOVING.  I

5    THINK WHAT YOU WERE SAYING WAS JUST PUT A PAUSE AS TO THESE

6    FEW PARENTS.  DON'T RELOCATE THEM TO NEW YORK UNTIL WE FIGURE

7    OUT THIS SMALL COHORT OF EIGHT OR NINE.

8          **THE COURT:**  YES.  THAT'S EXACTLY RIGHT.

9          **MR. STEWART:**  THANK YOU, YOUR HONOR.  I THINK WE

10   WILL WORK WITH THAT.

11         **THE COURT:**  MR. STEWART, YOU HAVE ALL OF THE CONTACT

12   INFORMATION FOR MS. GOLDINER AND PLAINTIFFS' COUNSEL?

13         **MR. STEWART:**  I BELIEVE SO.  I CERTAINLY HAVE A GOOD

14   COHORT OF HER COLLEAGUES, YOUR HONOR, SO WE WILL BE IN TOUCH.

15         **THE COURT:**  OKAY.

16         MR. GELERNT HAS BEEN SITTING VERY QUIETLY.  THIS IS

17   NOT YOUR CASE, BUT IS THERE ANY COMMENT OR OBSERVATION,

18   CONCERNS?

19         **MR. GELERNT:**  NO, YOUR HONOR.  I THINK WE WILL LET

20   THEM WORK IT OUT TOGETHER.

21         **THE COURT:**  OKAY.  I THINK WE WILL SIGN OFF.

22         AND I WILL ASK COUNSEL TO MEET AND CONFER RIGHT

23   AWAY, AND I WILL WAIT TO HEAR FROM COUNSEL.  OKAY.  THANK YOU.

24

25                         *  *  *


JULY 24, 2018

1

2          I CERTIFY THAT THE FOREGOING IS A CORRECT

3     TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
      IN THE ABOVE-ENTITLED MATTER.
4
      S/LEEANN PENCE                     3/3/2018
5     LEEANN PENCE, OFFICIAL COURT REPORTER    DATE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        JULY 24, 2018