## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**M.M.M., ON BEHALF OF HIS
MINOR CHILD, J.M.A., ET AL.**

                  **Plaintiffs,**

**- v. –**

**JEFFERSON BEAUREGARD SESSIONS,
III, ATTORNEY GENERAL OF THE
UNITED STATES, ET AL.**

               **Defendants.**

**CIVIL ACTION NO. _____**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

ARGUMENT ......................................................................................................... 9

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THE U.S. GOVERNMENT WRONGLY DEPRIVED THEM OF THE OPPORTUNITY TO SEEK ASYLUM IN THE UNITED STATES .................. 10

      A.     Defendants' Policy of Denying Plaintiffs the Right to Pursue Asylum is Unlawful Under the INA...................................................................... 10

      B.     Plaintiffs' Removal from the United States Without Allowing Them to Petition for Asylum Violates their Fifth Amendment Rights............ ....... 11

      C.     Plaintiffs' Removal from the United States Without Allowing Them to Petition for Asylum Violates the APA. ................................................. 14

            i.     The U.S. government has denied Plaintiffs the right to pursue their asylum claims under the INA. ............................................... 14

            ii.    The U.S. government denied Plaintiffs the right to a credible fear determination for their entire family under the INA. ............ 16

            iii.   The other requirements of the APA are met. ................................ 17

                  a.     The U.S. Government's Policy of Refusing to Give Plaintiffs a Credible Fear Interview Constitutes a Final Agency Action. ................................................................. 18

                  b.     Plaintiffs Have No Adequate Remedy............................. 19

                  c.     The U.S. Government's Failure to Permit Plaintiffs to Seek Asylum is Reviewable.............................................. 20

      D.     Plaintiffs Will Likely Prevail on Their Mandamus Claim to Compel the U.S. Government to Allow Them to Seek Asylum. .......................... 20

II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED. .............................................................................. 23

III.   THE PUBLIC INTEREST AND THE BALANCE OF EQUITIES FAVOR GRANTING THE TRO AND PRELIMINARY INJUNCTION. ........................ 26

CONCLUSION...................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Al-Fayed v. Central Intelligence Agency*,
    254 F.3d 300 (D.C. Cir. 2001) .................................................................................................... 10

*Ali v. Ashcroft*,
    213 F.R.D. 390 (W.D. Wash. 2003) .......................................................................................... 25

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016) .................................................................................................. 21

*Aracely, R. v. Nielsen*,
    Civ. A. No. 17-1976 (RC), 2018 WL 3243977 (D.D.C. July 3, 2018) ............................ 15, 18

*Ass'n of Cmty. Orgs. For Reform Now (ACORN) v. Fed. Emergency Mgmt.
    Agency (FEMA)*,
    463 F. Supp. 2d 26 (D.D.C. 2006) ............................................................................................ 26

*Bennett v. Spear*,
    520 U.S. 154 (1997) .................................................................................................................. 18

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .................................................................................................................. 19

*Chhoeun v. Marin*,
    306 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................................... 24

*Damus v. Nielsen*,
    Civ. A. No. 18-578-JEB, 2018 WL 3232515 (D.D.C. July 2, 2018) ...................................... 23

*Davis v. District of Columbia .*,
    158 F.3d 1342 (D.C. Cir. 1998) ................................................................................................ 23

*Davis v. Pension Benefit Guaranty Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ................................................................................................ 10

*El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human
    Servs.*,
    396 F.3d 1265 (D.C. Cir. 2005) ................................................................................................ 19

*Gutierrez-Rogue v. Immigration & Naturalization Serv.*,
    954 F.2d 769 (D.C. Cir. 1992) .................................................................................................. 13

*Iddir v. Immigration & Naturalization Serv.*,
    301 F.3d 492 (7th Cir. 2002) ........................................................................22

*Innovation Law Lab v. Nielsen*,
    No. 3:18-CV-01098-SI, 2018 WL 3114530 (D. Or. June 25, 2018) ................................25, 26

*Kirwa v. U.S. Dep't of Def.*,
    285 F. Supp. 3d 21, 43–44 (D.D.C. 2017) ...............................................................24

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ........................................................................25

*Lofton v. District of Columbia*,
    7 F. Supp. 3d 117 (D.D.C. 2013) ....................................................................10

*Lujan v. Nat'l Wildlife Fed'n*,
    97 U.S. 871 (1990) .................................................................................18

*Maldonado-Perez v. Immigration & Naturalization Serv.*,
    865 F.2d 328 (D.C. Cir. 1989) ......................................................................13

*Mills v. D.C.*,
    571 F.3d 1304 (D.C. Cir. 2009) .....................................................................23

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................25

*P.K. v. Tillerson*,
    302 F. Supp. 3d 1 (D.D.C. 2017) ....................................................................20

*R.I.L–R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ...................................................................27

*Ramirez v. U.S. Immigration & Customs Enf't*,
    Civ. A. No. 18-508 (RC), 2018 WL 1882861 (D.D.C. Apr. 18, 2018) ......................15, 18, 20

*Reid v. Hood*,
    No. 1:10 CV2842, 2011 WL 251437 (N.D. Ohio Jan. 26, 2011) ..........................................27

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ..............................................................................24

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953) ................................................................................11

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ......................................................................10

*United States ex rel. Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ...........................................................................................2, 11

*United States v. Raya-Vaca,*
    771 F.3d 1195 (9th Cir. 2014) ..................................................................................12

*United States v. Wilbur,*
    283 U.S. 414 (1931) ...........................................................................................21, 22

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ...........................................................................................25, 27

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ...........................................................................24, 25

*Winter v. Natural Res. Def. Counsel,*
    555 U.S. 7 (2008) .....................................................................................................10

*Xie v. Kerry,*
    780 F.3d 405 (D.C. Cir. 2015) .................................................................................20

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ...........................................................................................11, 12

**STATUTES:**

5 U.S.C. § 551(13) ..........................................................................................................18

5 U.S.C. § 701(a) ............................................................................................................17

5 U.S.C. § 704 .................................................................................................................17

5 U.S.C. § 706(2)(A) .......................................................................................................14

6 U.S.C. § 279(g) ........................................................................................................3, 16

8 U.S.C. § 1101 .................................................................................................................1

8 U.S.C. § 1158(b)(3)(A), (C) .....................................................................................3, 16

8 U.S.C. § 1225(b)(1) ...............................................................................................*passim*

8 U.S.C. § 1229a ........................................................................................................3, 14

8 U.S.C. § 1252(a)(2)(A)(iii) .....................................................................................19, 22

28 U.S.C. § 1361 .......................................................................................................20, 21

**FEDERAL REGULATIONS:**

8 C.F.R. § 208.30 ..............................................................................................3, 14, 16

8 C.F.R. § 235.3(b) ........................................................................................3, 19, 21, 22

**RULES:**

Fed. R. Civ. P. 65 ........................................................................................................9

**OTHER AUTHORITIES:**

Exec. Order No. 13,841, 83 Fed. Reg. 29,435 (June 20, 2018); *Affording
     Congress an Opportunity to Address Family Separation* § 1, 2018 WL
     3046068 .................................................................................................................6

Plaintiffs submit this Memorandum of Law in support of their Application for Temporary Restraining Order and for Preliminary Injunction barring Defendants from deporting them from the United States without being afforded the procedures to which they are entitled under the Immigration and Nationality Act, 8 U.S.C. §§ 1101, et seq. ("INA") and the Due Process Clause of the Constitution.

## **INTRODUCTION**

When the U.S. government began separating migrant families under its "zero tolerance" policy, it departed from the statutory procedures set forth in the INA that permit migrants to seek asylum.  This policy created a situation in which thousands of children were denied the opportunity to seek asylum, even when they expressed a fear of returning to their home country, or their parents would have done so on their behalf.  Notwithstanding that these children have been denied this right to seek asylum — which is guaranteed both by statute and by the Constitution — the U.S. government now seeks to deport these children as quickly as possible.

Plaintiffs are part of a large group of migrant children who were separated from their parents at the border, and are now set to be deported without the opportunity to seek asylum. These children were initially placed into proceedings under INA Section 240 through which they should have been able to seek asylum, but have since been removed from these proceedings. Forced to reunify families through court order in a different case, the U.S. government now seeks to deport entire families without affording the children with any right to seek asylum under the statutory process to which they are entitled, under either Section 240 or through a "credible fear" interview under section 235.  Their experiences illustrate the harmful consequences of the U.S. government's family separation policy.

1

Plaintiffs are likely to succeed on the merits of their claims.  As discussed below, the INA and the Constitution entitle Plaintiffs the opportunity to seek asylum through full removal proceedings, which the U.S. government initiated and should continue, with the benefit of their parents' presence.  At the very least, the INA entitles Plaintiffs to an interview in which they can articulate whether they have a credible fear of returning to their home country.  If there is a positive finding of credible fear, the U.S. government must allow them to pursue asylum in immigration court and may not deport them or their parents until their asylum application has been adjudicated and any appeals exhausted.

The Constitution requires that Plaintiffs be granted these statutory rights.  All persons present in the United States are entitled to due process under the Fifth Amendment, even if they are non-citizens and are here without any lawful status.  Due process requires that Plaintiffs receive all procedural protections conferred by Congress to non-citizens.  *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).  Denying migrants procedural protections afforded by statute or regulation therefore violates the Fifth Amendment.  *See id.*  If the U.S. government deports Plaintiffs without affording them the right to seek asylum, Plaintiffs will suffer irreparable harm because they will be prevented from seeking asylum from the violence and persecution they have traveled so far to escape.

## BACKGROUND

The INA sets forth specific procedures for migrants who have not been admitted to the United States.  Any non-citizens who enter or attempt to enter the United States without having been admitted, and who cannot show that they were physically present in the United States for the previous two years, may be subject to expedited removal proceedings under Section 235 of

the INA.  8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b).  In particular, under Section 235, if a migrant expresses fear of persecution or a desire to apply for asylum during the migrant's inspection by an immigration officer, the officer must refer the migrant to an asylum officer for an interview.  *See* 8 U.S.C. § 1225(b)(1)(A).  If the asylum officer then determines that the migrant has a "credible fear" of persecution, the migrant "shall be detained for further consideration of the application for asylum" pursuant to full removal proceedings under Section 240, including a hearing before an immigration judge.  *Id.* at § 1225(b)(1)(B); *see also* 8 C.F.R. § 208.30(f); 8 U.S.C. § 1229a.  In preparing for a "credible fear" interview with an asylum officer, the migrant is entitled to consult with persons of the migrant's choosing.  *See* 8 U.S.C. § 1225(b)(1)(B)(iv).  If the migrant demonstrates a "credible fear" of persecution, then the migrant's spouse or children who arrived with the migrant can be included in that determination and are entitled access to full removal proceedings under Section 240.  *See* 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 208.30(b).  A spouse or child may also have his or her credible fear determination made separately, if he or she desires.  8 C.F.R. § 208.30(b).

Unaccompanied child migrants are not subject to the same expedited removal proceedings under Section 235.  Instead, they are afforded direct access to an asylum officer and full removal proceedings under Section 240.  8 U.S.C. § 1158(b)(3)(C).  Once in Section 240 proceedings administered by an immigration judge, a migrant is entitled to be represented by counsel and to seek relief from removal through an asylum application.  8 U.S.C. §§ 1229a(b)(4), 1229a(c)(4).  An unaccompanied child migrant is defined as a person who, among other things, is under age 18 and "with respect to whom there is no parent or legal guardian in the United States."  6 U.S.C. § 279(g).

3

Numerous migrants, like Plaintiffs, seek asylum in the United States because they fear persecution in their countries of origin, including threats of physical violence or even death. *See, e.g.*, Ex. 1 (Declaration of L.A.A.) at ¶ 2 (fear of sexual assault and death); Ex. 2 (Declaration of I.A.T.) at ¶¶ 2, 7 (fear of extortion and gang violence); Ex. 3 (Declaration of G.M.A.) at ¶ 2 (threat of religious persecution); Ex. 4 (Declaration of D.B.G.) at ¶¶ 2, 14 (fear of emotional abuse and death); Ex. 5 (Declaration of M.M.M.) at ¶ 2 (fear of abuse and gang violence); Ex. 6 (Declaration of J.J.M.A.) at ¶ 10 (fear of gang violence). Earlier this year the U.S. government implemented a "zero tolerance" policy whereby all adult non-citizens entering the United States illegally would be subject to criminal prosecution, and if accompanied by a minor child, the child would be separated from the parent, even if the migrants intended to seek asylum in the United States.[1] The U.S. government even separated families who presented themselves lawfully at a port of entry seeking asylum.[2] In so doing, the U.S. government separated families who had arrived seeking asylum together, sending thousands of parents and children to separate detention facilities, sometimes hundreds of miles apart. *See, e.g.*, Ex. 1 at ¶¶ 7-8; Ex. 2 at ¶¶ 3-4; Ex. 3 at ¶¶ 6-12; Ex. 4 at ¶¶ 3-11; Ex. 5 at ¶¶ 6-7; Ex. 6 at ¶¶4-7. Arriving families often had no notice that they would be forcibly separated, or for how long, causing immense fear, anxiety, and emotional harm to parents and children alike. *Id.*

---

[1] *See* U.S. Att'y Gen. Jeff Sessions, *Attorney General Sessions Delivers Remarks Discussing the Immigration Enforcement Actions of the Trump Administration* (May 7, 2018), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-discussing-immigration-enforcement-actions.

[2] *See* Order Granting Pls.' Mot. for Classwide Prelim. Inj. at 3, *Ms. L. v. U.S. Immigration and Customs Enf't*, No. 18-0428 (S.D. Cal. June 26, 2018), ECF No. 83 [hereinafter "*Ms. L* Order"].

In the chaos of these family separations, the U.S. government departed from statutory and regulatory procedures intended to ensure that all arriving non-citizens have an opportunity to express a fear of persecution and seek asylum. Parents were put into expedited removal proceedings under Section 235 of the INA. *See* Ex. 7 (Declaration of M. Govindaiah) at ¶¶ 8-9; Ex. 8 (Declaration of Shalyn Fluharty) at ¶ 5. However, many parents who were permitted credible fear interviews received a negative determination: They could not articulate their grounds for asylum because they were so distressed and distracted with frantic concern about the safety and whereabouts of their children, and did not have their children present to provide further support for their claims. Ex. 7 at ¶¶ 8-9; Ex. 8 at ¶ 5-6. Prevented from effectively presenting their asylum claims, these parents received negative credible fear determinations, and expedited orders of removal. Ex. 7 at ¶¶ 8-9; Ex. 8 at ¶ 5-6. Separately, the U.S. government classified the children as unaccompanied minors and issued them Notices to Appear ("NTAs") in immigration court for removal proceedings under Section 240. Ex. 7 at ¶ 4; Ex. 8 at ¶ 2. These removal proceedings would have afforded the children the right to petition an immigration court for asylum, and would have entitled them to be represented by counsel.

In February 2018, the American Civil Liberties Union ("ACLU") challenged the practice of family separation in a class action before Judge Dana Sabraw of the Southern District of California in *Ms. L. v. U.S. Immigration and Customs Enforcement*, No. 18-0428 (S.D. Cal.). After intense media scrutiny and public pressure, on June 20, 2018, the President reversed course and signed an Executive Order to "maintain family unity" by keeping migrant families together during criminal and immigration proceedings to the extent permitted by law, while maintaining "rigorous[] enforce[ment] of immigration laws." But the Executive Order did not address

reunification of approximately 2,000 children already separated from their parents.[3]   Six days

later, Judge Sabraw granted the plaintiffs' motion for a preliminary injunction.   *See Ms. L* Order.

In his order, Judge Sabraw mandated the U.S. government to stop detaining migrant parents

apart from their minor children absent a finding that the parent is unfit or presents a danger to the

child, unless the parent affirmatively, knowingly, and voluntarily declines to be reunited with the

child.   *Id.* at 22–23.   Judge Sabraw also ordered the U.S. government to reunify all class

members with their children under age five by July 10, and children older than five by July 26,

2018. *Id.* at 23.

The U.S. government has since struggled to reunify parents and children in accordance

with the Court's timetable.   But the U.S. government has also communicated its intent to deport

the reunified families as quickly as possible.   On June 23, the Department of Homeland Security

released a Fact Sheet entitled "Zero-Tolerance Prosecution and Family Reunification," which

laid out the agency's plans for family reunification.   By its own terms, the Administration's

process is designed "to ensure that those adults who are subject to removal are reunited with their

children *for the purposes of removal*."[4]   The next day, on June 24, 2018, a DHS official told

MSNBC Correspondent Jacob Soboroff that parents separated from their children "were quickly

given the option to sign paperwork leading to deportation.  Many chose to do so."[5]

---

[3] Exec. Order No. 13,841, 83 Fed. Reg. 29,435 (June 20, 2018); *Affording Congress an Opportunity to Address Family Separation* § 1, 2018 WL 3046068.

[4] *Fact Sheet: Zero-Tolerance Prosecution and Family Reunification*, Dep't of Homeland Security (June 23, 2018), https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification (emphasis added).

[5] Jacob Soboroff (@jacobsoboroff), Twitter (June 24, 2018, 5:29 AM), https://twitter.com/jacobsoboroff/status/1010862394103328771.

On or about July 2, 2018, ICE began providing parents subject to final orders of removal with a "Separated Parent's Removal Form" that offered them two choices:  (1) reunification with their minor children "for the purpose of repatriation to" the parent's home country, or (2) repatriation without reunification, leaving their children behind.[6]  *See* Ex. 7 at ¶ 11; Ex. 8 at ¶ 8.  The first option puts the parents in the position of purportedly waiving their children's independent asylum and other statutory protection rights, and would purport to agree to their children's repatriation without any opportunity for them to pursue asylum or other immigration relief on their own.  *See* Ex. 7 at ¶ 11; Ex. 8 at ¶ 8.  The second option is simply unthinkable to many parents, and would also deprive the child of the assistance that the parent can offer the child in the asylum process.  *Id*.  The form says nothing about any other option that the parent and child are lawfully entitled to — the option for parent and child to be reunited and for the parent to remain to assist the child in the asylum process.  *See* Ex. 7 at ¶ 11; Ex. 8 at ¶ 8.[7]  As a result, because the only opportunity for family reunification afforded by the Separated Parents Removal Form requires parents to consent to removal, the U.S. government's form coerces parents into waiving their own rights, and those of their children, to pursue asylum.

The waivers the U.S. government obtained were not knowing, intelligent, or voluntary. Many parents were told that they needed to sign the Separated Parents Removal Form in order to be reunited with their children, but were not told of the consequences.  Ex. 2 at ¶ 11; *see* Ex. 8 at ¶ 8,9.  Moreover, in some cases, the form was provided in English when most migrant parents

---

[6] Angelina Chapin, *ICE Officials Are Pressuring Separated Parents To Sign Deportation Forms*, Huffingtonpost.com (July 4, 2018), https://www.huffingtonpost.com/entry/immigration-officials-pressure-separated-parents-deportation-form_us_5b3c060ee4b09e4a8b28656e.

[7] Some forms also provided a third option of being able to speak to a lawyer, but many parents elected to be deported with their children because they were so desperate to be reunited and believed it as the only way to be reunited, or at least the quickest way.  Ex. 8 at ¶ 9.

speak only Spanish or indigenous languages.  Defendants have been using similarly coercive tactics to pressure parents with pending asylum claims to waive their rights and consent to removal for themselves and their children in exchange for reunification.[8]  Several parents have been told by U.S. immigration officials that they will be reunited with their children faster if they agree to withdraw their asylum applications and accept deportation.[9]

Presumably on the basis of these "waivers," the U.S. government revoked the separated children's NTAs, or never filed them with immigration court.  *See* Ex. 7 at ¶ 4; Ex. 8 at ¶¶ 2, 9. In so doing, the U.S. government effectively terminated the children's removal proceedings under Section 240, and the access to asylum procedures that Section 240 provides.  The separated minors were therefore denied the opportunity to petition for asylum through Section 240 proceedings before being reunified with their parents.  Many of the parents now have expedited removal orders under Section 235.  But the U.S. government is not permitting separated children to have their own credible fear determinations under Section 235 either.  In so doing, the U.S. government has impermissibly blocked the children from seeking asylum relief under either Section 240 or Section 235.

Despite this omission, the U.S. government has not denied that it intends to carry out mass deportations imminently upon reunification.  *See* Pls.' Reply in Supp. of Mot. for Stay of

---

[8] *See ICE Officials Are Pressuring Separated Parents To Sign Deportation Forms,* https://www.huffingtonpost.com/entry/immigration-officials-pressure-separated-parents-deportation-form_us_5b3c060ee4b09e4a8b28656e

[9] *See* Dara Lind, *Trump will reunited separated families – but only if they agree to deportation*, Vox.com (June 25, 2018), https://www.vox.com/2018/6/25/17484042/children-parents-separate-reunite-plan-trump; Molly Hennessy-Fiske, *'If you want to see your kids, agree to leave': detained parents told*, The Sydney Morning Herald (June 26, 2018), https://www.smh.com.au/world/north-america/if-you-want-to-see-your-kids-agree-to-leave-detained-parents-told-20180626-p4znp8.html.

Removal at 1, *Ms. L. v. U.S. Immigration & Customs Enf't*, No. 18-0428 (S.D. Cal. July 25, 2018), ECF No. 154.  In particular, Plaintiffs understand that, despite the fact that they have been denied a credible fear interview, they will be deported with their parents among hundreds of other children in similar circumstances.  *See, e.g.,* Ex. 1 at ¶¶ 13-16; Ex. 2 at ¶¶ 10-13; Ex. 3 at ¶¶ 17-20; Ex. 4 at ¶¶ 15-19; Ex. 5 at ¶¶ 12-14; Ex. 6 ¶¶ 14, 17; Ex. 7 at ¶¶ 5-6, 12-14; Ex. 8 at ¶¶ 10-11.  Indeed, Plaintiffs have requested credible fear interviews and have received no response from the U.S. government.  *Id.*

On July 16, 2018 the ACLU moved before Judge Sabraw to prohibit removal of families until seven days after reunification, so that parents have time to evaluate the best options for their children.  *See* Pls.' Mot. for Stay of Removal and Emergency TRO Pending Ruling on the Stay Mot. at 1, *Ms. L. v. U.S. Immigration & Customs Enf't*, No. 18-00428 (S.D. Cal. July 16, 2018), ECF No. 110.  That same day, Judge Sabraw granted a temporary stay of deportations only until he resolves the motion.  *See* Order Granting Pls.' Mot. for Emergency TRO Pending Ruling on Mot. to Stay and Amending July 13, 2018 Order Following Status Conference, *Ms. L. v. U.S. Immigration & Customs Enf't*, No. 18-00428 (S.D. Cal. July 16, 2018), ECF No. 116.  The U.S. government filed their opposition to the ACLU's Motion for Stay on July 24, 2018, and the ACLU filed its reply on July 25, 2018.  *See id.,* ECF Nos. 148, 153.  Judge Sabraw has scheduled a hearing on the motion to stay today, July 27, 2018.  If the stay of removal is lifted, families that have been reunified could be removed from the United States imminently.

## ARGUMENT

Rule 65 of the Federal Rules of Civil Procedure authorizes a plaintiff to seek a preliminary injunction or temporary restraining order.  Fed. R. Civ. P. 65.  "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008). The standards for issuing a temporary restraining order and a preliminary injunction are the same. *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013); *see also Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 n.2 (D.C. Cir. 2001).

The Court may weigh these factors on a "sliding scale," where the movant must show that the four factors, taken together, weigh in favor of the injunction. *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). "If the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.*; *see also Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011) (acknowledging circuit split regarding sliding-scale analysis but not overruling the practice).

I.   **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THE U.S. GOVERNMENT WRONGLY DEPRIVED THEM OF THE OPPORTUNITY TO SEEK ASYLUM IN THE UNITED STATES**

This Court should grant Plaintiffs' request for a TRO and preliminary injunction because they are likely to succeed on the merits of their claims under the INA, the Fifth Amendment of the Constitution, the Administrative Procedures Act ("APA"), and the Mandamus Act.

A.   **Defendants' Policy of Denying Plaintiffs the Right to Pursue Asylum is Unlawful Under the INA.**

The INA specifically contemplates judicial review of orders of removal by the United States District Court for the District of Columbia, including challenges to the "validity of the system" as a whole where a Government policy violates the law. *See* 8 U.S.C. § 1252(e)(3).

10

Here, the Government's policy of denying Plaintiffs their rights to pursue asylum in the United States is inconsistent with Section 240 and/or Section 235 of the INA and is otherwise in violation of the law.  That policy is reflected in written statements and directives discussed above and set forth in Plaintiffs' complaint, including but not limited to the DHS Fact Sheet, which states that the reunification process is designed "to ensure that those adults who are subject to removal are reunited with their children *for the purposes of removal*."[10]

Pursuant to Defendant's unlawful policy, Plaintiffs' requests for credible fear interviews have been unlawfully denied and Plaintiffs face an imminent threat of deportation without access to asylum proceedings.  Plaintiffs are likely to succeed on the merits of their claims that Defendant's policy violates the INA and therefore should be permanently enjoined.

### B.  Plaintiffs' Removal from the United States Without Allowing Them to Petition for Asylum Violates their Fifth Amendment Rights.

Plaintiffs seek only to receive the opportunity to seek asylum to which they are entitled under the INA.  The U.S. government's plans to remove Plaintiffs without the opportunity to seek asylum violates the procedural and substantive due process rights guaranteed to Plaintiffs and hundreds of others who are similarly situated.

The due process clause of the Fifth Amendment applies to "all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001).  Thus, non-citizens who have entered the United States, even illegally, may legally be removed from the United States only "after

---

[10]    *Fact Sheet:  Zero-Tolerance Prosecution and Family Reunification*, Dep't of Homeland Security (June 23, 2018), https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification.

proceedings conforming to . . . due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). This requirement applies with equal force to individuals subject to expedited removal proceedings. *United States v. Raya-Vaca*, 771 F.3d 1195, 1202–03 (9th Cir. 2014) (citing *Zadvydas*, 533 U.S. at 693). "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff*, 338 U.S. at 544.

The INA unequivocally provides migrants with the opportunity to seek asylum. When migrants are in full removal proceedings under Section 240, they are entitled to apply for relief for removal, including through seeking asylum, before the immigration judge. 8 U.S.C. §§ 1229a(b)(4); 1229a(c)(4). The U.S. government separated Plaintiffs and others like them from their families, re-labeled them — contrary to law — as "unaccompanied minors," and placed them into removal proceedings under Section 240. These proceedings, if permitted to proceed, would have provided Plaintiffs with the right to petition for asylum or other legal status in the United States before an immigration judge. However, the U.S. government has since reversed course and removed them from these proceedings by revoking or failing to file their NTAs. After reunification, Plaintiffs are now set to be deported pursuant to their parents' expedited orders of removal. The U.S. government has therefore denied Plaintiffs their right to pursue asylum before an immigration judge under Section 240.

In addition, the U.S. government denied Plaintiffs the right to a credible fear interview in Section 235 proceedings. Migrants subject to expedited removal proceedings under Section 235 of the INA are entitled to have a credible fear interview before an asylum officer if they express fear of persecution or seek to apply for asylum. 8 U.S.C. § 1225(b)(1)(A). If migrants receive a positive credible fear determination, then they are entitled to pursue asylum in full proceedings

before an immigration judge. *Id.* at § 1225(b)(1)(B). Therefore, since the INA permits migrants to seek asylum, a migrant has a Fifth Amendment procedural due process right to petition the U.S. government for asylum, and a statutory procedural due process right to a meaningful or fair evidentiary hearing. *Gutierrez-Rogue v. Immigration & Naturalization Serv.*, 954 F.2d 769, 772–73 (D.C. Cir. 1992) (citing *Maldonado-Perez v. Immigration & Naturalization Serv.*, 865 F.2d 328, 332–33 (D.C. Cir. 1989)).

The U.S. government's plan to remove Plaintiffs immediately upon reunification violates their due process rights under Section 235 of the INA. The U.S. government has failed to provide Plaintiffs with credible fear interviews, to which they are entitled under Section 235 of the INA, after expressing fear of persecution or a desire to seek asylum. Plaintiffs' parents cannot waive these rights on Plaintiffs' behalf. Plaintiffs' parents may have signed the removal form, but many parents did so under a belief that signing the paper would be the only way to see their children again. Many parents could not read or understand the form, much less understand the legal implications of signing it. The waivers were not knowing or voluntary and cannot bar Plaintiffs' due process claims.

The U.S. government has effectively prevented Plaintiffs from any avenue to present their case for asylum, contrary to their rights under Sections 235 and 240 of the INA and due process rights under the Constitution. *Mezei* and the cases that follow it are unanimous that no one on American soil, even an individual in the country unlawfully, can be deported lawfully without an opportunity to petition the U.S. government for asylum. The U.S. government's actions here do just that.

**C.      Plaintiffs' Removal from the United States Without Allowing Them to Petition for Asylum Violates the APA.**

The APA requires that courts "hold unlawful and set aside any agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).   As set forth below, the U.S. government's anticipated issuance of expedited removal orders without affording Plaintiffs the opportunity to pursue asylum violates the INA.  Therefore Plaintiffs are entitled to relief under the APA.

**i.      The U.S. government has denied Plaintiffs the right to pursue their asylum claims under the INA.**

Pursuant to Section 240 of the INA, a person in removal proceedings may pursue his or her claims for asylum before an immigration judge.  8 U.S.C. § 1229a(c)(4).  Under Section 235 of the INA, a person who requests asylum by expressing a fear of persecution in his or her home country has the right to be interviewed by an asylum officer to determine whether that individual has a credible fear to returning to their home country.  *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (stating that if an individual expresses fear of persecution or an intention to seek asylum, the immigration officer "shall" refer them for an interview with an asylum officer).   If the individual demonstrates a credible fear of persecution in his or her country — meaning there is a "significant possibility" that the individual is eligible for asylum — during an interview with an asylum officer, he or she is entitled to a hearing before an immigration judge to adjudicate the asylum claim.  *See id.* § 1225(b)(1)(B)(ii) (stating that if there is a credible fear of persecution in the home country, the individual "*shall* be detained for further consideration" of his or her asylum application) (emphasis added); *see also* 8 C.F.R. § 208.30(f).

14

Despite this clear and controlling law, the U.S. government has denied Plaintiffs the opportunity to seek asylum. Plaintiffs are non-citizens who have expressed a fear of persecution in their home country or an intention to seek asylum in the United States. When they were separated from their parents and initially placed into Section 240 proceedings, they were entitled to pursue their asylum claims in front of an immigration judge. The U.S. government's termination of those Section 240 proceedings violates Plaintiffs' rights to pursue asylum and is therefore contrary to law under the APA.

Now that the U.S. government has improperly revoked Plaintiffs' Section 240 status, Plaintiffs also have, at a minimum, an independent right under Section 235 of the INA to be interviewed by an asylum officer to determine whether they have a credible fear of returning to their home country, and if they do, to remain in the United States until their asylum application is processed. The U.S. government cannot deport Plaintiffs from the United States without affording them this right. However, Plaintiffs understand that the U.S. government intends to begin mass deportations of families shortly after reunification, without providing Plaintiffs with an opportunity to seek asylum. Indeed, Plaintiffs have requested — and been denied — such interviews. The U.S. government's policy to deny Plaintiffs their right to pursue asylum under Section 235 also is "not in accordance with" the INA and therefore violates the law under the APA. *See Aracely, R. v. Nielsen*, ___ F.Supp.3d___, Civ. A. No. 17-1976 (RC), 2018 WL 3243977, at \*25 (D.D.C. July 3, 2018) (finding likelihood of success on merits of APA claim where plaintiffs showed that ICE failed to consider agency guidance when adjudicating parole request); *Ramirez v. U.S. Immigration & Customs Enf't*, ___ F.Supp.3d___, Civ. A. No. 18-508 (RC), 2018 WL 1882861, at \*16–17 (D.D.C. Apr. 18, 2018) (finding likelihood of success on

15

merits of APA claim where plaintiffs showed that ICE did not comply with INA requirements when placing them in adult detention centers).

ii.     **The U.S. government denied Plaintiffs the right to a credible fear determination for their entire family under the INA.**

If *any* member of a migrant family detained at the border demonstrates a "credible fear" of persecution, then the *entire* family is included in that determination and permitted full removal proceedings under Section 240. *See* 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 208.30(b). Moreover, in preparing for a "credible fear" interview with an asylum officer, the migrant may consult with persons of the migrant's choosing, including the migrant's family and attorneys. *See* 8 U.S.C. § 1225(b)(1)(B)(iv).

The U.S. government's "zero tolerance" policy separated children from their parents and treated such children as unaccompanied minors, even though they were accompanied by a parent into the United States and therefore should not have been considered unaccompanied as a matter of law. *See* 6 U.S.C. § 279(g). After children and parents were separated, parents were coerced into signing waivers that purportedly gave up their rights — and those of their separated children — to seek asylum under the INA in exchange for reunification with their children. The court in *Ms. L* has already found that the plaintiffs in that case had a likelihood of success on their claim that the U.S. government's separation of parents from their children is unconstitutional. *See Ms. L* Order at 17, 22.

The U.S. government's actions violated Plaintiffs' rights under the INA. As a threshold matter, by denying parents consultation with the rest of their family prior to credible fear interviews, the U.S. government has denied Plaintiffs the benefit of a full and fair credible fear determination under the INA. Plaintiffs should have had the benefit of their parents' credible

16

fear determination, and that determination should have been made with the benefit of Plaintiffs' consultation with their parents, free from the coercive pressure and anguish associated with separation. The U.S. government's removal of Plaintiffs prior to affording these rights violates the INA and therefore is contrary to law under the APA.

Moreover, the INA provides children with the benefit of a *favorable* credible fear determination made with respect to their parents, but also gives them the right to an independent credible fear determination. The INA does not permit children to be removed without an independent credible fear determination simply because their parents have been given an *unfavorable* credible fear determination (or purportedly waived a credible fear interview altogether under duress). Put differently, the INA creates a one-way ratchet that *benefits* children if their parents demonstrate a credible fear. The U.S. government's policy has, contrary to law, imposed a converse one-way ratchet that *harms* children if their parents do not receive a credible fear finding, or if their parents signed a waiver electing reunification. The U.S. government had placed Plaintiffs in full Section 240 removal proceedings, which entitled them to a hearing on their asylum claims irrespective of their parents' credible fear determinations. The U.S. government cannot now reverse course and deprive Plaintiffs of that right — under either Section 235 or Section 240 — simply because of their parents' conduct. Plaintiffs are entitled to an independent credible fear interview under the INA and cannot be removed simply because of their parents' unfavorable credible fear determination or their parent's coerced waiver of the right to such a determination.

       **iii.**       **The other requirements of the APA are met.**

Under the APA, a court may set aside and enjoin unlawful agency action that is: (1) a "final agency action," and (2) "for which there is no other adequate remedy in a court," so long as (3) there are no "statutes [that] preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. §§ 701(a), 704. None of these criteria prevents this Court from enjoining the U.S. government from deporting Plaintiffs without first being accorded credible fear determinations.

> ### a. The U.S. Government's Policy of Refusing to Give Plaintiffs a Credible Fear Interview Constitutes a Final Agency Action.

An agency action is "final" when it meets two requirements: (1) it is the "consummation of the agency's decision-making process"; and (2) it is one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted). Failure to act may also be considered an "action" under the APA. *See* 5 U.S.C. § 551(13). Further, "an agency action is reviewable 'to the extent that, specific, 'final agency action' has an actual or immediately threatened effect.'" *Aracely, R.*, 2018 WL 3243977, at *16 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990)). "Even discrete agency actions are reviewable by a court under the APA only if they are final." *Ramirez*, 2018 WL 1882861, at *9 (finding ICE's failure to follow statutory requirements when detaining plaintiffs to be a final action reviewable under the APA).

Here, the U.S. government's failure to afford Plaintiffs an opportunity to seek asylum is a "final" act reviewable under the APA. It is the culmination of the U.S. government's decision-making process with respect to whether Plaintiffs may remain in the United States to seek asylum. The U.S. government consummated its decision-making process with respect to Plaintiffs when it (1) presented their parents with the waiver that permitted reunification only

18

upon deportation, thus depriving the children of the ability to seek asylum; (2) revoked or failed to file Plaintiffs' NTAs, thus removing them from Section 240 proceedings, and (3) transferred reunified families to detention centers for the purpose of swift deportation. The U.S. government's denial of an opportunity to seek asylum is also an action that will result in immediate and serious consequences: If not set aside, Plaintiffs' deportation is imminent.

**b.      Plaintiffs Have No Adequate Remedy.**

The no "other adequate remedy" limitation on the APA should be reviewed narrowly and "should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *see also El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("The Supreme Court has long instructed that the generous review provisions of the APA must be given a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.") (internal quotations and citations omitted).

Here, there is no other remedy available to Plaintiffs. They have no avenue through the immigration system to appeal the U.S. government's decision to remove them from Section 240 proceedings or deny them a credible fear determination. They also have no way to appeal an expedited order of removal. *See* 8 U.S.C. § 1252(a)(2)(A)(iii) (depriving any court of jurisdiction to review expedited orders of removal). Nor is an expedited order of removal appealable through an administrative process. 8 C.F.R. § 235.3(b)(2)(ii) (aliens subject to expedited orders of removal are not entitled to hearings and appeals before an immigration judge or the Board of Immigration Appeals). Instead, the only remedy that will correct the U.S.

government's statutory and constitutional violations is to require that the U.S. government provide them with the procedures to seek asylum to which they are legally entitled.

### c. The U.S. Government's Failure to Permit Plaintiffs to Seek Asylum is Reviewable.

No statute prohibits judicial review of Plaintiffs' claims. This is especially true because Plaintiffs are not disputing the *outcome* of any specific determination by the U.S. government, but rather challenging the U.S. government's unlawful policy of denying Plaintiffs the opportunity to seek asylum. Indeed, this Court permitted a similar challenge to the INA in *Ramirez* on the grounds that seeking to compel the agency to take "discrete and concrete action of considering statutorily specified factors" was permissible. 2018 WL 1882861, at *8. *See also Xie v. Kerry*, 780 F.3d 405 (D.C. Cir. 2015) (finding a challenge to delaying review of visa applications actionable under the APA).

\* \* \*

Because the U.S. government's decision to deport Plaintiffs without affording them an opportunity to seek asylum (either individually or with their entire family) is a final agency action that is not in accordance with the law, and one for which there is no adequate alternative remedy, Plaintiffs have a strong likelihood of prevailing on the merits of their APA claim.

### D. Plaintiffs Will Likely Prevail on Their Mandamus Claim to Compel the U.S. Government to Allow Them to Seek Asylum.

Plaintiffs also have a likelihood of success on the merits on their mandamus claim. Plaintiffs seek a writ of mandamus to compel the U.S. government to afford them with the opportunity to seek asylum. Mandamus relief is an appropriate remedy to compel an

administrative agency to act when, as here, it has failed to perform a non-discretionary, ministerial duty. *See P.K. v. Tillerson*, 302 F. Supp. 3d 1, 8–9 (D.D.C. 2017) (ordering the Department of State to reserve visa numbers for plaintiff's visa application).

> Section 1361 of Title 28 of the U.S. Code provides:
>
> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

28 U.S.C. § 1361.  Mandamus relief is proper when a plaintiff demonstrates "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Each of these elements is met here.

*First*, Plaintiffs have a clear right to the relief they seek.  When they were placed into Section 240 proceedings, Plaintiffs were entitled to adjudicate their asylum claims in front of an immigration judge.  And as described above, Congress, through Section 235 of the INA, has determined that all non-citizens who request asylum or express a fear of returning to their home country must be provided certain procedural rights, including the right to a determination on whether their fear of return to the home country is credible.  8 U.S.C. § 1225(b)(1)(A)(ii).  At a minimum, Section 235 clearly applies to Plaintiffs because they are migrants who entered the United States without having been admitted, who could not show that they were physically present in the United States for the previous two years, and who have expressed a fear of returning to their home country.  8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b).

*Second*, the INA gives the U.S. government a clearly defined duty to provide Plaintiffs the relief they seek.  A writ of mandamus "will issue only where the duty to be performed is

21

ministerial and the obligation to act peremptory and plainly defined.  The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." *United States v. Wilbur*, 283 U.S. 414, 420 (1931).  The law that Plaintiffs seek to enforce — an opportunity to pursue their asylum claims under Section 240 or at least engage in the credible fear determination process under Section 235 of the INA — is clear and non-discretionary.  The word "shall" in Section 235 establishes a non-discretionary duty to provide all non-citizens who express either a fear of persecution in their home country or an intention to seek asylum access to the credible fear process. *See Iddir v. Immigration & Naturalization Serv.*, 301 F.3d 492, 499 (7th Cir. 2002) ("The term 'shall' denotes a clear directive, a command, as opposed to the terms 'may' or 'in his discretion'" used in other immigration statutes).  The U.S. government's duty under the statute is "clear and undisputable," *Wilbur*, 283 U.S. at 420, yet the U.S. government has failed to execute that duty.

*Third*, Plaintiffs have no other adequate remedy available to them.  Plaintiffs have no way to appeal the U.S. government's decision to withhold a credible fear determination and deny them the opportunity to seek asylum.  The INA does not provide any mechanism for appealing an expedited order of removal to a court.  *See* 8 U.S.C. § 1252(a)(2)(A)(iii) (depriving any court of jurisdiction to review expedited orders of removal).  Nor is an expedited order of removal appealable through an administrative process.  8 C.F.R. § 235.3(b)(2)(ii) (aliens subject to expedited orders of removal are not entitled to hearings and appeals before an immigration judge or the Board of Immigration Appeals).  Additionally, if the U.S. government is allowed to execute these expedited orders of removal, Plaintiffs will be deported from the United States and their claim for a writ will be moot.  Therefore, the only remedies available to Plaintiffs are those

available through this Court.  For these reasons, Plaintiffs are likely to prevail on the claim for a

writ of mandamus.

* * *

Plaintiffs are likely to succeed on the merits of their claims under the Fifth Amendment,

the APA, and the Mandamus Act.  Section 235 and Section 240 of the INA provide them with a

clear right to a credible fear determination before they can be deported, and procedural due

process requires that they be given the opportunity to petition for asylum in some manner.  The

U.S. government's actions have clearly violated these rights.  Therefore, Plaintiffs are likely to

succeed on the merits of their case.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED

To establish irreparable harm, a party must demonstrate that its injury is:  (i) imminent,

establishing a clear and present need for equitable relief; (ii) actual, rather than theoretical; and

(iii) incapable of remediation.  *Damus v. Nielsen*, Civ. A. No. 18-578-JEB, 2018 WL 3232515, at

*17 (D.D.C. July 2, 2018).  Plaintiffs meet that burden here: Without this Court's immediate

relief, Plaintiffs will be denied any chance to assert their rights guaranteed by the INA and the

Constitution, and will be denied the opportunity to seek asylum from persecution.

Plaintiffs are suffering imminent and actual harm from the deprivation of their rights

under the INA and Constitution.  Plaintiffs are statutorily entitled, and have a due process right,

to seek asylum because Congress has granted Plaintiffs these procedural rights in the INA.  The

U.S. government's threat to remove Plaintiffs without affording them this mandatory procedural

protection warrants this Court's intervention.  It is well established that "the loss of constitutional

23

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mills v. D.C.*, 571 F.3d 1304, 1312 (D.C. Cir. 2009); *see also Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998) ("[A] prospective violation of a constitutional right constitutes irreparable injury" for the purposes of seeking equitable relief.). Harm suffered from the deprivation of their statutory and constitutional rights is incapable of remediation because Plaintiffs would have no way to seek asylum or retroactively challenge their removals once they've been deported. Absent equitable relief, Plaintiffs will lose the opportunity to seek asylum and will be permanently deprived of their statutory and constitutional rights.

Indeed, this Court has enjoined government policies that "block[] access to an existing avenue for avoiding removal." *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 21, 43–44 (D.D.C. 2017). Other courts have done the same. *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) (enjoining INS procedures allowing for deportation of aliens without a hearing as violative of constitutional due process); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1162 (C.D. Cal. 2018) (finding irreparable harm from deprivation of opportunity to contest removal). *See also Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) ("[T]his Court has reiterated that deportation is 'a particularly severe penalty,' which may be of greater concern to a convicted alien than 'any potential jail sentence.'").

Plaintiffs will suffer imminent harm beyond the loss of their statutory and constitutional rights if this Court does not grant relief because they have a well-founded fear of persecution upon return to their home countries. Returning to their home countries could be a death sentence. *See, e.g.*, Ex. 1 at ¶ 2 (fear of sexual assault and death); Ex. 4 at ¶¶ 2, 14 (fear of emotional abuse and death). The U.S. government's plan to remove Plaintiffs would cast them

back into this violence, causing imminent, actual harm. It would also be incapable of remediation, since there would be no way to remove the peril of being forced to return to an environment of persecution and mortal danger.

Courts consistently recognize that the likelihood of violence is relevant to a finding of irreparable harm, and this Court should do the same. *See, e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (granting stay of removal and noting "the likelihood of [violence] . . . should be part of the irreparable harm inquiry" in the asylum context); *Innovation Law Lab v. Nielsen*, ___ F.Supp.3d___, No. 3:18-CV-01098-SI, 2018 WL 3114530, at *8 (D. Or. June 25, 2018) (recognizing importance of due process at the credible fear interview stage due to the "serious harm—including persecution, torture, and death—that may result if asylum is improperly denied."); *Ali v. Ashcroft*, 213 F.R.D. 390, 400 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *op. withdrawn on denial of reh'g sub nom. Ali v. Gonzales*, 421 F.3d 795 (2005), *as am. on reh'g* (2005) ("Petitioners' fears of persecution and torture . . . are certainly relevant to a finding of irreparable harm."). Courts further recognize this harm cannot be remedied at law. *See Walters*, 145 F.3d at 1048 ("There is no way to calculate the value of such a constitutional [due process] deprivation [as deportation without a hearing] or the damages that result from erroneous deportation.").

### III.   THE PUBLIC INTEREST AND THE BALANCE OF EQUITIES FAVOR GRANTING THE TRO AND PRELIMINARY INJUNCTION

To obtain the equitable relief sought, Plaintiffs must demonstrate the injunction would serve the public interest and that the balance of equities favors granting this relief.  These factors "merge when the Government is the opposing party."  *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009) (articulating standard in the stay context).

The public has an interest in preserving statutory and constitutional rights.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Innovation Law Lab*, 2018 WL 3114530, at *9.   Accordingly, the D.C. Circuit "has clearly articulated that the public has an interest in the government maintaining procedures that apply with constitutional requirements."  *Ass'n of Cmty. Orgs. For Reform Now (ACORN) v. Fed. Emergency Mgmt. Agency (FEMA)*, 463 F. Supp. 2d 26, 36 (D.D.C. 2006).  Because the U.S. government's plan to deport Plaintiffs without sufficient process violates both the Constitution and the INA, the public interest counsels in favor of granting Plaintiffs' injunction.  *See ACORN*, 463 F. Supp. 2d at 36 (holding that where government procedures "do not comport with the Due Process Clause of the Constitution, the interest of the public weighs strongly in favor of a preliminary injunction.").

The balance of equities also favors granting Plaintiffs' injunctive relief.  As discussed above, if relief is not granted Plaintiffs will suffer the loss of their rights to pursue their asylum claims and be returned to life-threatening conditions despite their well-founded fear of persecution.  Conversely, Defendants will suffer no cognizable harm if the injunctive relief is granted, because the INA imposes the duty to permit a noncitizen to pursue asylum claims in Section 240 proceedings, or in grant a credible fear interview to any noncitizen in Section 235 proceedings who expresses a fear of persecution.  To the extent Defendants cite to the burden

associated with conducting so many interviews and reconciling disparate statuses among family members, that burden is self-created, and pales in comparison to the risks to Plaintiffs. *See Innovation Law Lab*, 2018 WL 3114530, at *9 (holding an injunction which requires the government to abide its own statutes or regulations cannot pose an undue burden on the government's time, resources, or personnel, and further noting "any such burden . . . is more than justified by the need to ensure fulfillment of Plaintiffs' constitutional rights and to prevent the improper denial of meritorious asylum claims."). Moreover, as this Court previously noted, the U.S. government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L–R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (internal quotation marks omitted).

This is precisely the situation in which injunctive relief is warranted: when "the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Reid v. Hood*, No. 1:10 CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Allowing Plaintiffs to remain in the United States so that they can pursue their asylum claims does just that.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to: (1) enter an immediate Temporary Restraining Order against Defendants to prevent them from removing from the United States all non-citizen children, and the parents or guardians of such children, who were separated upon entry into the United States, including but not limited to Plaintiffs and

their parents or guardians, pending a full hearing and this Court's adjudication of Plaintiffs'

pending Motion for a Preliminary Injunction; and (2)  preliminary enjoin Defendants' policy of

removing children from the United States before permitting them the opportunity seek asylum

pursuant to their rights under the INA, the Fifth Amendment of the Constitution, and the

Mandamus Act and order Defendants to provide all non-citizen children who were separated

from their parents or guardians upon (or after) entry into the United States with their rights to

petition for asylum under Section 240 and Section 235 of the INA following reunification with,

and in consultation with, their parents or guardians, until such proceedings are terminated.


July 27, 2018                                    **HOGAN LOVELLS US LLP**

                                                 _____
                                                 Justin W. Bernick (DC Bar No. 988245)
                                                 *T. Clark Weymouth
                                                 *Zachary W. Best
                                                 555 Thirteenth Street, NW
                                                 Washington, DC 20004
                                                 Telephone: (202) 637-5600
                                                 Facsimile: (202) 637-5910
                                                 justin.bernick@hoganlovells.com
                                                 t.weymouth@hoganlovells.com
                                                 zachary.best@hoganlovells.com

                                                 *Oliver J. Armas
                                                 *Ira M. Feinberg
                                                 875 Third Avenue
                                                 New York, NY 10022
                                                 Telephone: (212) 918-3000
                                                 Facsimile: (212) 918-3100
                                                 oliver.armas@hoganlovells.com
                                                 ira.feinberg@hoganlovells.com

                                                 *Katherine A. Nelson
                                                 1601 Wewatta Street, Suite 900

Denver, CO 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
katherine.nelson@hoganlovells.com

*\* admission pro hac vice to be sought*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 27, 2018, this motion and the accompanying memorandum in support were filed by hand delivery upon the Clerk of the Court.  A service copy of this filing will be sent by first class mail, postage pre-paid, to all Defendants' at the addresses listed below:

Jefferson Beauregard Sessions III,
Attorney General of the United
States of America,
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington DC 20530

Kirstjen Nielsen, Secretary of the
United States Department of
Homeland Security,
245 Murray Lane, SW
Washington, DC 20528

Alex Azar, Secretary of the
Department of Health and Human
Services,
200 Independence Avenue, SW
Washington, DC 20201

Ronald Vitiello, Acting Director of
United States Immigration and
Customs Enforcement,
500 12th Street, SW
Washington, DC 20536

L. Francis Cissna, Director of United
States Citizenship and Immigration
Services,
20 Massachusetts Avenue, NW
Room 4210 MS: 2120
Washington, DC 20529

Kevin K. McAleenan, Commissioner
of United States Customs and Border
Protection,
1300 Pennsylvania Avenue, NW
MS: 1345
Washington, DC 20229

Scott Lloyd, Director of the Office of
Refugee Resettlement,
Mary E. Switzer Building
330 C Street, SW
Washington, DC 20201

Daniel A. Bible, Director of ICE
San Antonio Field Office
1777 NE Loop 410, Floor 15
San Antonio, TX 78217

United States Department of
Homeland Security,
245 Murray Lane, SW
MS: 0485
Washington, DC 20528

United States Immigration and
Customs Enforcement,
500 12th Street, SW
Washington, DC 20530

United States Customs and Border
Protection,
1300 Pennsylvania Avenue, NW
Washington, DC 20229

1

United States Citizenship and
Immigration Services,
20 Massachusetts Avenue, NW
Washington, DC 20529

U.S. Department of Health and
Human Services,
200 Independence Avenue SW
Washington, DC 20201

Office of Refugee Resettlement,
Mary E. Switzer Building
330 C Street, SW
Washington, DC 20201

Date:    July 27, 2018

Justin W. Bernick (DC Bar No. 988245)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com

*Attorney for Plaintiffs*