CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | **JOINT STATUS REPORT** |
| vs. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

The Court ordered the parties to file a joint status report on August 2, 2018, in anticipation of the telephonic status conference scheduled for August 3, 2018, at 1:00pm PST. The parties submit this joint status report in accordance with the Court's instruction.

## I.   DEFENDANTS' POSITIONS

### A. Processes for Reunifications of Released and Removed Class Members

1. Reunification Processes

   i.  *Released Possible Class Members*

Since Defendants' last report, HHS has appropriately discharged a number of additional children, and those discharges have included additional reunifications with eligible class members in the interior of the United States. The reunifications were made through the ordinary ORR case management process. That is, HHS

1

personnel and contractors used the information from the ORR case management records for each child, together with any additional information from DHS, to locate, contact, assess class membership, and arrange reunifications for eligible and available class members in the interior.

Defendants propose that they continue reunifying class members who have been released into the United States with children in HHS care using the following modifications to the ordinary ORR case management process, which will expedite and streamline reunification through collaboration between Plaintiffs and Defendants. This proposed process also places responsibility for ascertaining the wishes of class members regarding reunification with Plaintiffs' counsel, who can provide any legal advice or consultations to class members that they deem necessary before the class member makes a decision regarding reunification.

Under the modified process:

- Defendants will produce information regarding putative class members and children to Plaintiffs' counsel in the manner described in subsequent sections of this Joint Status Report.

- Every Monday, Plaintiffs will provide to Defendants any new information that Plaintiffs and their network of law firms, NGOs, volunteers, and others have obtained regarding the location of putative class members in the interior, and will describe the efforts that Plaintiffs' counsel and their network are taking to contact these individuals.

- For any individuals who are located, Plaintiffs will provide final, unequivocal, written confirmation of whether that newly-identified putative class member in the interior wishes to be reunified with his or her child. Where the putative class member chooses reunification, HHS will proceed with reunification

under the reunification process developed in accordance with prior orders of this Court.

- For individuals who are not yet located, the parties will continue to meet and confer to determine whether HHS can reasonably provide any additional information to assist in the efforts of Plaintiffs and their network of law firms, NGOs, volunteers, and others to locate putative class members in the interior. As needed, the parties may also meet and confer on logistics related to reunifications of eligible and available class members in the interior.

- The parties will report their progress, and raise any disputes that require the Court's intervention in the Joint Status Report due each Thursday.

### ii. Removed Possible Class Members

Defendants' proposed process for reunifying additional, removed class members has three core components.

Contact Possible Class Members.   Plaintiffs' counsel should use their considerable resources and their network of law firms, NGOs, volunteers, and others, together with the information that Defendants have provided (or will soon provide), to establish contact with possible class members in foreign countries.[1]

Ascertain the Wishes of Possible Class Members. Plaintiffs' counsel should ascertain whether each possible class member wishes to be reunified with his or her

---

[1] Defendants note that in an attempt to further aid the process of locating removed class members, they have reached out to officials at the U.S. Department of State, who are assisting in facilitating communications with local government officials of countries where removed class members are located. Defendants have already begun discussions with those officials to discuss how they may be able to assist the parties in the process of locating removed class members. Defendants will provide further updates to the Court as these communications continue.

18cv428 DMS MDD

child, or whether he or she wishes to waive reunification. Plaintiffs' counsel would be responsible for ensuring that each possible class member has the opportunity to consult with a lawyer regarding that decision, and to discuss that decision with his or her child. Defendants will help facilitate communications between possible class members and their children for this purpose. Plaintiffs' counsel would then be responsible for providing Defendants with a final, unequivocal, written confirmation of whether each possible class member wants to be reunified with his or her child.

If a class member chooses reunification, then Plaintiffs' counsel would also be responsible for ensuring that the possible class member provides the information required to complete the Court's process for confirming that the Court's criteria for class membership and reunification are met (e.g., parentage, criminal history, parental fitness, or child safety). Plaintiffs' counsel likewise would be responsible for ensuring that a class member provides any additional information or documents that Defendants may require to facilitate reunification of the class member and his or her child.[2]

Reunification. As noted above, Defendants are in contact with officials from the U.S. Department of State, and with government officials of the countries where

---

[2] If a class member declines reunification, then ORR would follow its normal procedures for sponsorship placement of the child under the Trafficking Victims Protection Reauthorization Act.

removed class members are located, in an effort to determine the best way to complete these reunifications.[3] Defendants intend to meet and confer with plaintiffs and update the Court as soon as they have determined the process by which reunifications can best be completed. Defendants also will notify the Court and Plaintiffs as to what information or documents Plaintiffs will need to obtain from class members so that reunification can be completed.

2. Report and Proposal Regarding Information Sharing

On August 1, 2018, Defendants asked Plaintiffs to share with Defendants any information that they have regarding released or removed class members. As of the time of this filing, Plaintiffs have provided Defendants with a list of 13 names and A-numbers for individuals who Plaintiffs state "have been located." To facilitate the steps in the reunification processes described above, Defendants ask that the Court order Plaintiffs to provide Defendants, on a rolling basis each Monday, all information that they obtain regarding the location of released or removed class

_____

[3] Defendants note that there are multiple factors that may impact the final determination of how best to complete these reunifications. One is the ongoing proceedings in *M.M.M. v. Sessions*, Case No. 18-1759 (D.D.C.), and in other cases before this Court, which concern the rights of the children of class members regarding removal or asylum proceedings and their parents' decisions on reunification. These pending legal issues are good reason for the Court ***not*** to accept Plaintiffs' proposal that the Court simply order that reunification occur within 7 days, or any particular time period. Rather, the Court should allow Defendants time to work with these foreign governments, and with Plaintiffs' counsel, to determine how best to complete reunifications following the resolution of the legal issues.

members, as well as a description of the efforts that Plaintiffs' counsel and their network of law firms, NGOs, volunteers, and others are taking to locate these individuals.

Also on August 1, 2018, Defendants asked Plaintiffs to provide a list of the information that Plaintiffs would find useful in locating released or removed class members. Plaintiffs identified the following list of information:

- The phone number of a parent;
- If the child in ORR custody has been in contact with their deported parent;
- The phone numbers and addresses of any relatives of the child, whether in or outside the United States;
- The address of the parent in the home country (if you have additional addresses that have not been provided);
- If the child or parent speaks an indigenous language, what language.
- Any information regarding the town, location, or community that the parent is from.
- The name/contact information of the child's lawyer, so we can speak to them to get information about the parent's location;
- Parent's place of birth;
- Parent's national identification number in country of origin, if any;
- Parent's membership in any community organizations or groups;
- Copies of the birth certificates of either parent or child; and
- G-28s or E-28s for attorneys who have entered appearances for the parent.

In light of this clarification regarding the information that Plaintiffs believe would be helpful in the locating released or removed parents, Defendants contend that the Court should not order that Defendants produce A-files for released and removed possible class members (as identified by the Court in its July 30, 2018 Order), but instead should allow Defendants to produce relevant and likely more helpful

information from other files in the manner discussed below. When combined with the information that Defendants have already provided, Defendants' proposal for information sharing will more efficiently provide Plaintiffs with information that is useful to the process of locating removed and released class members.

First, Defendants have already provided Plaintiffs with all information in ICE systems of record regarding address information for released or removed possible class members[4] (including any address information provided by class members at the time of their release). Defendants have also provided data showing any date of removal, country of removal, and/or last known detention location for these individuals.[5]

Second, HHS believes that some of the information identified by Plaintiffs may be found in the case management records maintained by ORR on its portal

---

[4] The addresses reflect any address that was entered over the span of a class member's immigration history.  Because address information is not leveraged for statistical analysis purposes, it not tracked in such a way to determine whether it is the latest instance of the address or whether it is a temporary or permanent address. An alien may have multiple addresses associated with their record. The information, therefore, is most likely overly inclusive as it could contain a work address, temporary address, any U.S. address, as well as any foreign permanent residence, if provided by the alien.

[5] Defendants have asked Plaintiffs to let them know if they have any questions regarding the data that has been provided to them so far. As of the time of filing of this report, Plaintiffs have sent questions regarding some of the data that Defendants have produced, and Defendants are working to provide answers to those questions. At this time, to Defendants' knowledge, there are no outstanding questions from Plaintiffs regarding the lists of removed or released class members that were sent on July 25, 2018.

(though the specific information available may vary from child to child). By way of example, the ORR case management record for a child in ORR care may contain some or all of the following data points: contact information for the parent or other relatives that the child has or that was provided to ORR by DHS; whether the child speaks an indigenous language and what language; any information the child has disclosed about where he or she is from; and contact information for the child's lawyer. ORR must collect and compile such data through a manual review of case management records, and cannot generate a compilation of it through automated means. ORR believes that it can complete a review of the files for the children of removed possible class members, and provide a data compilation to Plaintiffs by August 10, 2018, while still proceeding with ongoing reunifications. This process would provide Plaintiffs with a significant amount of the information they state that they are seeking.

Finally, the remainder of the information that Plaintiffs are seeking is likely to be less useful in locating released or removed parents, and in any event may not be available in the A-file. It is, for example, possible that an A-file may contain information regarding the town, location, or community that the possible class member is from; the possible class member's place of birth; the possible class member's national identification number in his or her country of origin, if any; the possible class member's membership in any community organizations or groups;

copies of the birth certificates of the possible class member; or G-28s or E-28s for attorneys who have entered appearances for the possible class member. But it is far from certain that an A-file would contain this information, and the value of this information is likely to be far lower than the information discussed above. Given the time and burden involved in locating, reviewing, redacting, and producing, a large number of A-files, it is almost certain that the burden of this review and production would outweigh its benefits in the vast majority of cases. At the same time this review and production would involve personnel resources that could otherwise be devoted to facilitating these remaining reunifications.

Therefore, Defendants submit that in light of the information they have already provided, the information that they are committing to provide as described above, and the limited value of any information that might be found in A-files, the Court should decline to order the production of class member A-files to Plaintiffs at this time.[6]

---

[6] Defendants propose that if Plaintiffs contend that the information Defendants have provided, and will provide, is insufficient for them to locate any individual class member using reasonable efforts, then Plaintiffs should be required to submit the name of that individual to Defendants along with a description of the efforts already made to locate the individual, and Defendants can then undertake a review of the information in that individual's A-file to determine if it contains additional information that may be useful.

## C. Additional Information Sharing

In addition to the data discussed above, Defendants have provided Plaintiffs with the following additional data and information:

- Spreadsheets containing data regarding the reunification process for class members with children under age 5

- Spreadsheets containing data regarding the reunification of class members with children age 5-17, including the date and location of reunification (Defendants' database did not track the time of reunification), whether those class members were removed, released, or detained, following reunification, and the last known address information in Defendants' possession for those individuals (Defendants' database does not contain current location and phone number information; but Defendants have provided information regarding the NGO that assisted each family following reunification, and these organizations may have more up to date contact information for each reunified family)

- Spreadsheets containing data from ICE regarding possible class members who were excluded on the basis of criminal history, or who, to the best of Defendants' knowledge, are currently in criminal custody or recently released from criminal custody (Defendants intend to provide updated information regarding individuals who are in, or released from, criminal custody)

- A spreadsheet containing data from HHS regarding exclusions from the class based on reasons other than criminal history; and

- Spreadsheets identifying removed and released possible class members, along with spreadsheets containing all address information for those individuals that is contained in Defendants' electronic database

18cv428 DMS MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    PLAINTIFFS' POSITIONS

### A.    Plaintiffs' Position On Reunification With Deported Parents

Plaintiffs have made clear that they will do whatever they can to help locate the deported parents, but emphasize that the Government must bear the ultimate burden of finding the parents.  Not only was it the government's unconstitutional separation practice that led to this crisis, but the United States Government has far more resources than any group of NGOs (no matter how many NGOs and law firms are willing to try to help).  Plaintiffs therefore hope that the Government will take significant and prompt steps to find the parents <u>on their own</u>.

Relatedly, Plaintiffs believe that the Government should be taking the <u>initiative</u> to continually provide Plaintiffs with whatever useful information they possess, without constantly waiting for Plaintiffs to request specific information, especially because the Government knows better than Plaintiffs what types of information are contained in various files and databases.  The Government has consistently asked Plaintiffs what information they believe would be useful. Plaintiffs have provided the Government with that list and detail it below.  But, as Plaintiffs have stressed several times, there is no blueprint for finding deported parents.  It is largely commonsense, practical detective-type work.  The Government should therefore recognize on its own what types of information would be useful and be constantly providing that information to Plaintiffs, even if on a rolling basis.

For instance, a phone number is obviously useful, and likely the best piece of information.  Yet it now appears that ORR has had phone numbers for many of the parents (*See* Brane Declaration, filed herewith).  The Court made clear that the deadlines were firm, not aspirational.  And, as Plaintiffs understood that meant that the Government was under an obligation to try and reunite even the deported

parents by the July 10 and 26 deadlines.  Assuming the Government has had phone numbers all this time for some or many deported parents, those phone numbers should have been provided to Plaintiffs and the Government itself should have been reaching out to those parents for purposes of reunification.  In short, Plaintiffs understood the Court to allow the Government to miss the deadline for deported parents on the assumption that the Government could not possibly locate these parents before the deadline.  As the Court is aware, the children with deported parents are suffering as much, if not more, than the children whose parents remained in the United States.

Similarly, the Government only yesterday provided Plaintiffs with addresses for deported parents.  Plaintiffs obviously have not had time to ascertain whether the addresses are current or even specific enough (e.g., some are just a street).  But these addresses should have been provided to Plaintiffs sooner, especially because the Government informed us late yesterday that these addresses could be culled by a database search.

Finally, Plaintiffs note that they are now definitively aware of 12 deported Class members who are in contact with law firms and NGOs, and that those lawyers have already been negotiating on their own with the Government to reunify those 12 families.  Plaintiffs have provided those names to the Government.  The Government to date has not provided any names to Plaintiffs of deported parents with whom they are in contact, even though the Government presumably knew for some time of (at least) these 12, given that the Government has been working with these individual lawyers on reunification.   It is critical that the Government provide these names on a rolling basis.  Plaintiffs will at times learn of deported parents from organizations and law firms with which they are working directly.  But often there will be individual lawyers and NGOs who reach out to the Government on their own, without alerting Plaintiffs.  The Government

18cv428 DMS MDD

of course will know of these parents, and can pass them on to Plaintiffs so we can stop searching for those individuals.

In sum, Plaintiffs need as much information as possible, as quickly as possible.  And as Plaintiffs have told the Government, we do not need the entire A file, ORR file, or any other file, provided that the useful information is culled from those files.

### 1.  Information Needed To Locate Deported Parents

In the experience of Plaintiffs and legal services providers, it often takes a degree of detective work and investigation in order to track down the most up-to-date contact information for deported individuals. In addition, because deported parents may be hiding from persecutors, it is often not easy to track down exactly where they may be located. This means that every possible lead must be pursued.

On July 31, the government produced a list of addresses contained in ICE databases that are linked to Class Members.  If the government can vouch for these addresses, then the Government can easily send notice to Class Members at these addresses.  But on Plaintiffs review, many of the addresses are not helpful.    Many of the address entries are plainly non-informative:  for example, some addresses are listed as "In DHS Custody," "failed to provide," or the addresses for immigration detention centers in the United States.  When these non-informative entries are removed, the number of deported parents with no potentially viable addresses is about 120.  Some portion of the remaining information appears to be of limited use:  for example, some foreign addresses are provided as "calle sin nombre" (street without a name), or they include only a city name (as one example, six addresses connected to of one Honduran child are simply for San Luis Potosi, a city of about 685,000 in Mexico).

Moreover, it is Plaintiffs understanding that the government is in possession of phone numbers of many Class Members and that social workers or other

officials in ORR have been in touch with the deported parents.  A working and current phone number for Class Members is certainly of more utility than a list of addresses that may or may not be current, accurate, or even complete.

In short, Plaintiffs require as much information as the government can provide. A non-exhaustive list of this information is described here:

- The parent's phone number;
- Whether the child in ORR custody has been in contact with their deported parent;
- The phone numbers and addresses of any relatives of the child, whether in or outside the United States;
- The address of the parent in the home country (if Defendants have additional addresses that have not been provided);
- If the child or parent speaks an indigenous language, what language;
- Any information regarding the town, location, or community that the parent is from;
- The name and contact information of the child's lawyer, so Plaintiffs' counsel can speak to them to get information about the parent's location;
- Parent's place of birth;
- Parent's national identification number in country of origin, if any;
- Parent's membership in any community organizations or groups;
- Copies of the birth certificates of either parent or child;
- G-28s or E-28s for attorneys who have entered appearances for the parent.

As the Court has recognized, some or most of this information is likely contained in a parent's A-file. In addition to the items set forth above, there may be other information in the government's possession that would provide clues as to where a deported parent is located, such as in ORR files.  However, Plaintiffs' primary interest is not in obtaining A-files or ORR files per se (or any other file),

but in receiving as comprehensive a set of information as possible that would help locate the parents.

**2.   The Government should provide a list of children whose parents they have located and the status of the reunification process.**

Plaintiffs understand that several children in ORR custody and their case workers have already spoken to their deported parents. In some of these cases, both child and parent have requested reunification. The child has, through their lawyer, either requested and been granted voluntary departure or is in the process of doing so. This information is obviously in the government's possession. In addition to the information set forth in Part A, supra, the government should provide a list of such children.

**3.   Initial Proposal for Reunification of Deported Parents with Their Children**

Once a Class member has confirmed that they want reunification with their children and any necessary travel documents are arranged, Defendants should reunify the child with the Class member within seven days. *See* Dkt 159 at 8-9; July 13 Hearing Transcript, at 7 (The Court: "Once the Government is in receipt of those travel documents [then] reunification could occur within seven days.").

Reunification can be accomplished in two different ways. First, for parents who do not want to return to the United States, and wish to have their child sent back to them in their country of origin, the government can arrange travel documents for the child and transport back to the country of origin. The child should be accompanied by an ORR case worker who knows the child and can facilitate reunification in the country of origin.

Second, parents who want to return to the United States should be granted humanitarian parole, so that they can come back and reassume custody over their children. *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5. The government should

arrange travel documents for the parents and children, and pay for their return to the United States and back to their country of origin.

Given that there are different options, parents and children should also be given time to speak to counsel. Plaintiffs understand that the Government may wish the parents to expressly indicate their desired outcome and plaintiffs are prepared to work with the Government on that issue.

**B.      Information Needed To Locate Parents Released to the Interior, But Not Yet Found or Identified**

As with the deported parents, there is no single or simple way to find parents who the government has thus far failed to find or identify. To the extent that the government's vast resources have not been successful in this regard, Plaintiffs are willing to engage their networks of domestic service providers and advocates who may be able to assist.

Plaintiffs therefore request a set of information (similar to that requested for deported parents) in order to locate parents released to the interior, which could include:

- The phone number or last known address of a parent;
- The phone numbers and addresses of any relatives of the child or parent, whether in or outside the United States;
- The name and contact information of the child's lawyer, so Plaintiffs' counsel can speak to them to get information about the parent's location;
- Parent's place of birth;
- Parent's national identification number in country of origin, if any;
- Parent's membership in any community organizations or groups;
- Copies of the birth certificates of either parent or child;
- G-28s or E-28s for attorneys who have entered appearances for the parent.

1    Once the parent has been found, ORR should release the child to the parent

2    pursuant to the streamlined procedures ordered by this Court. *See* Dkt. 101.

3    **C.    More information is necessary to challenge exclusions from the class.**

4    The government has not provided all the necessary information it was

5    ordered to provide by the Court regarding class exclusions.  In the July 26 JSR,

6    Plaintiffs requested (and the Court ordered) the following information:

7    • The details of all crime-based exclusions, including the specific crime,

8         jurisdiction, and disposition of all charges and convictions.

9    • The details of all other exclusions, including specific reasons why

10        Defendants concluded the adult was not a Class Member

11

12   The government has provided lists of excluded parents, but the information

13   remains too vague and incomplete to allow the parties to meaningfully meet and

14   confer regarding the propriety of exclusions.  For example, grounds for exclusions

15   include general allegations such as "gang activity" and "Red flag – background

16

17   check."[7]        .

18

19

20

21

22

23

24

25   _____

26   [7] The Government supplemented the information on criminal class
     exclusions less than an hour before this Joint Status Report was due, but it appears
27   that all of the necessary information remains lacking.

28

1    DATED: August 2, 2018                    Respectfully submitted,

2                                             /s/ Lee Gelernt

3                                             Lee Gelernt*

4                                             Judy Rabinovitz*
                                              Anand Balakrishnan*
5                                             AMERICAN CIVIL LIBERTIES UNION
                                              FOUNDATION
6                                             125 Broad St., 18th Floor

7                                             New York, NY 10004
                                              T:  (212) 549-2660
8                                             F:  (212) 549-2654

9                                             *lgelernt@aclu.org*

10                                            *jrabinovitz@aclu.org*
                                              *abalakrishnan@aclu.org*
11

12                                            Bardis Vakili (SBN 247783)
                                              ACLU FOUNDATION OF SAN DIEGO
13                                            & IMPERIAL COUNTIES
                                              P.O. Box 87131
14                                            San Diego, CA 92138-7131

15                                            T: (619) 398-4485
                                              F: (619) 232-0036
16                                            *bvakili@aclusandiego.org*

17

18                                            Stephen B. Kang (SBN 292280)
                                              Spencer E. Amdur (SBN 320069)
19                                            AMERICAN CIVIL LIBERTIES UNION
                                              FOUNDATION
20                                            39 Drumm Street

21                                            San Francisco, CA 94111
                                              T:  (415) 343-1198
22                                            F:  (415) 395-0950

23                                            *skang@aclu.org*
                                              *samdur@aclu.org*
24

25                                            *Attorneys for Petitioners-Plaintiffs*
                                              *Admitted Pro Hac Vice*
26

27

28

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD