UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,     )          18CV1626-DMS
                                        )          18CV1832-DMS
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            )   AUGUST 8, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 1:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
            RESPONDENTS-DEFENDANTS.     )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
TELEPHONIC MOTION HEARING

```
COUNSEL APPEARING TELEPHONICALLY:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                            ACLU IMMIGRANT RIGHTS PROJECT
                            125 BROAD STREET 18TH FLOOR
                            NEW YORK, NEW YORK 10004


FOR DEFENDANT:              SCOTT STEWART, ESQ.
                            SARAH B. FABIAN, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
                            OFFICE OF IMMIGRATION LITIGATION
                            P.O. BOX 868
                            BEN FRANKLIN STATION
                            WASHINGTON, DC 20044

ALSO APPEARING:            ZACHARY W.H. BEST, ESQ.
                            JUSTIN W. BERNICK, ESQ.
                            JEFFIFER LEVY, ESQ.



REPORTED BY:                LEE ANN PENCE,
                            OFFICIAL COURT REPORTER
                            UNITED STATES COURTHOUSE
                            333 WEST BROADWAY, ROOM 1393
                            SAN DIEGO, CALIFORNIA 92101
```

**SAN DIEGO, CALIFORNIA – WEDNESDAY, AUGUST 8, 2018 – 1:05 P.M.**

                                    *  *  *

            **THE CLERK:**  NO. 2 ON CALENDAR, CASE NO. 18CV0428,

MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

MOTION HEARING.

            **THE COURT:**  GOOD AFTERNOON, COUNSEL.  THIS IS JUDGE

SABRAW.

            CAN I HAVE APPEARANCES, PLEASE?

            PERHAPS WE CAN START WITH COUNSEL ON THE MMM CASE.

            **MR. BEST:**  GOOD AFTERNOON, YOUR HONOR.  THIS IS

ZACHARY BEST AT THE LAW FIRM HOGAN LOVELLS.

            I AM JOINED ON THE LINE BY MY COLLEAGUE JUSTIN

BERNICK.

            **THE COURT:**  THANK YOU.

            HOW ABOUT FOR MS. L., DO I HAVE MR. GELERNT ON THE

LINE?

            **MR. GELERNT:**  YES, YOUR HONOR.  GOOD AFTERNOON.

            **THE COURT:**  GOOD AFTERNOON.

            THEN THE NTC COUNSEL, CAN I HAVE YOUR APPEARANCES?

            **MS. LEVY:**  YOU HAVE JENNIFER LEVY FROM THE LEGAL AID

SOCIETY HERE.

            **THE COURT:**  OKAY.  THANK YOU.

            AND FOR THE GOVERNMENT?

            **MR. STEWART:**  YES, YOUR HONOR.  SCOTT STEWART HERE,

AS IS SARAH FABIAN.

```
 1              THE COURT:  OKAY.  THANK YOU VERY MUCH FOR EVERYONE
 2    BEING ON THE LINE.
 3              TODAY'S HEARING WAS NOTICED WITH RESPECT TO THE MMM
 4    CASE, WHICH JUDGE FRIEDMAN RECENTLY TRANSFERRED, AND THERE IS
 5    A PENDING MOTION FOR TEMPORARY RESTRAINING ORDER.
 6              IT IS MY UNDERSTANDING THAT THE TRO REMAINS IN
 7    PLACE, THAT JUDGE FRIEDMAN ISSUED, AT LEAST THROUGH TODAY.  AM
 8    I CORRECT?
 9              AND PERHAPS I CAN ASK MR. BEST THAT QUESTION.
10              MR. BEST:  YOUR HONOR, YES.  THIS IS MR. BEST.
11              OUR UNDERSTANDING IS THAT THE STAY THAT THE
12    GOVERNMENT HAD AGREED TO IN CONNECTION WITH THE MMM CASE
13    EXPIRED AT THE END OF THE DAY ON MONDAY, AUGUST 6TH.  AND SO
14    THERE IS NO CURRENT STAY IN PLACE IN THE MMM MATTER AS THAT
15    MATTER IS PENDING IN DC IN FRONT OF JUDGE FRIEDMAN.
16              THE COURT:  OKAY.  SO THE STAY THAT REMAINS IN
17    PLACE, THEN, WOULD BE THE ONE IN THE MS. L. CASE.
18              MR. BEST:  THAT'S CORRECT.
19              THE COURT:  ALL RIGHT.
20              LET ME FIRST ASK SOME QUESTIONS OF COUNSEL IN THE
21    MMM CASE, JUST SO I HAVE A CLEAR UNDERSTANDING OF THE POSTURE
22    OF THE CASE.
23              I HAVE READ ALL OF THE BRIEFING, WHICH I APPRECIATE,
24    INCLUDING THE SUBMISSIONS THAT I RECEIVED YESTERDAY.  AND I
25    HAVE READ THE BRIEFING IN THE NTC CASE, AND THE GOVERNMENT'S
```

1   SUBMISSION THAT I RECEIVED TODAY.  BUT LET'S FOCUS FIRST ON

2   THE MMM CASE.

3          HERE, IT IS MY UNDERSTANDING THAT THE PLAINTIFFS'

4   REQUEST IS FOCUSED ON MAINTAINING THE STATUS QUO; THAT IS, ALL

5   FAMILIES THAT HAVE BEEN REUNIFIED, THE PUTATIVE CLASS OF

6   CHILDREN WOULD LIKE TO REMAIN WITH THEIR PARENT, SO REMAIN

7   REUNIFIED.  BUT THEY WOULD LIKE THE OPPORTUNITY, THAT IS

8   THE CHILDREN, TO PURSUE THEIR OWN ASYLUM CLAIMS UNDER THE

9   INA.

10          AND THE ARGUMENT IS THAT THAT RESTORES THESE

11   INDIVIDUALS, THESE FAMILY MEMBERS, TO THEIR STATUS QUO.  THAT

12   HAD THEY NOT BEEN SEPARATED FROM THE BEGINNING THEY WOULD HAVE

13   ARRIVED AS A FAMILY UNIT AND THEY WOULD HAVE, UNDER EXISTING

14   IMMIGRATION PRACTICES AND PROCEDURES, APPLIED FOR ASYLUM.  THE

15   PARENT AND THE CHILD WOULD MAKE A CREDIBLE FEAR CLAIM THAT

16   WOULD BE HEARD BY AN IMMIGRATION OFFICER.  AND IF ONE OR THE

17   OTHER WAS UNABLE TO STATE A CREDIBLE FEAR CLAIM BUT ONE OR THE

18   OTHER PASSED THE CREDIBLE FEAR INTERVIEW, THE FAMILY UNIT

19   WOULD BE KEPT TOGETHER WHILE THE ONE PERSON WHO HAD STATED A

20   CREDIBLE FEAR WAS PLACED INTO REMOVAL PROCEEDINGS, AND HE OR

21   SHE COULD THEN APPEAR BEFORE AN IMMIGRATION JUDGE TO PURSUE

22   THEIR ASYLUM CLAIM.  AND EITHER, IF IT WERE GRANTED, BE

23   PERMITTED TO STAY AS A FAMILY UNIT; IF THEY LOST THEN THEY

24   WOULD BE REMOVED TOGETHER.

25          IS THAT A FAIR CHARACTERIZATION OF THE REQUEST THAT

AUGUST 8, 2018

1    PLAINTIFFS ARE MAKING?

2         **MR. BEST:**  YOUR HONOR, THIS IS MR. BEST AGAIN.

3         YEAH, I THINK AT A HIGH LEVEL THAT IS A GOOD AND

4    FAIR CHARACTERIZATION.  AND JUST TO BE CLEAR FOR PURPOSES

5    OF TODAY, I DO AGREE THAT WHAT WE ARE ASKING FOR IS TO

6    MAINTAIN THE STATUS QUO WHILE YOUR HONOR DECIDES THE MERITS OF

7    OUR CLAIMS AND HEARS ADDITIONAL BRIEFING ON THOSE CLAIMS.

8         FOR NOW WE WANT TO MAINTAIN THE STATUS QUO THAT IS

9    IN PLACE RIGHT NOW, AND MAKE SURE THAT NONE OF THESE FAMILIES

10   ARE REMOVED UNTIL THE CHILDREN GET ACCESS TO THE ASYLUM

11   PROCEDURES THAT WE BELIEVE THAT THEY ARE DUE, BOTH UNDER THE

12   IMMIGRATION AND NATIONALITY ACT AND UNDER THE DUE PROCESS

13   CLAUSE OF THE CONSTITUTION.

14        **THE COURT:**  AND THE ACCESS THAT WOULD BE DUE,

15   FROM THE CHILDREN'S PERSPECTIVE, WOULD BE THE PROCEDURE UNDER

16   SECTION 235 WHERE THEY WOULD INITIALLY BE MEETING WITH AN

17   IMMIGRATION OFFICER FOR A CREDIBLE FEAR INTERVIEW?

18        **MR. BEST:**  CERTAINLY AT THE VERY LEAST WE BELIEVE

19   THAT THEY SHOULD BE ENTITLED TO THAT BEFORE THEY ARE DEPORTED.

20   THERE IS SOME NUANCE ON THAT FRONT, AND THAT'S BECAUSE, DUE TO

21   THE SEPARATION POLICY THAT THE GOVERNMENT ENGAGED IN, THESE

22   CHILDREN WERE ACTUALLY PUT INTO A DIFFERENT PROCEDURAL POSTURE

23   THAN THE EXPEDITED REMOVAL PROCEEDINGS UNDER 235 ONCE THEY

24   WERE SEPARATED FROM THEIR PARENTS.

25        **THE COURT:**  IS THAT BECAUSE THEY WERE RENDERED,

AUGUST 8, 2018

1   ACCORDING TO THE GOVERNMENT, UNACCOMPANIED, AND THEREFORE THEY

2   WERE ABLE TO PURSUE ASYLUM CLAIMS UNDER SECTION 240?

3       **MR. BEST:**  THAT IS MY UNDERSTANDING, THAT THE

4   GOVERNMENT, UPON SEPARATION, DEEMED THE CHILDREN UNACCOMPANIED

5   AND PLACED THEM INTO THE 240 POSTURE, WHERE THEY WOULD HAVE

6   HAD THE OPPORTUNITY FOR A FULL HEARING AND TO ASSERT VARIOUS

7   REMOVAL DEFENSES, INCLUDING CLAIMS FOR ASYLUM.

8       OUR POSITION IS THAT ULTIMATELY, AT THE END OF THE

9   DAY, THE GOVERNMENT MADE THE DECISION TO PUT THOSE CHILDREN IN

10  240 PROCEEDINGS, AND NEEDS TO -- AT THIS POINT NEEDS TO LIVE

11  WITH THAT CHOICE BECAUSE THERE SIMPLY IS NO AUTHORITY FOR

12  THEM, ONCE THEY ARE IN 240 PROCEEDINGS, TO DEPORT THEM ALL

13  TOGETHER.

14      AND WE BELIEVE THAT THE PARENTS SHOULD BE ABLE TO

15  ACCOMPANY THE CHILDREN WHILE THE CHILDREN GO THROUGH THAT

16  PROCESS UNDER SECTION 240.

17      CERTAINLY, AT THE END OF THE DAY, AT THE VERY LEAST,

18  THE KIDS ARE ENTITLED TO CREDIBLE FEAR INTERVIEWS UNDER

19  SECTION 235, AND TO BE ACCOMPANIED BY THEIR PARENTS DURING

20  THAT PROCESS TO HAVE THEIR SUPPORT AND ASSISTANCE.

21      **THE COURT:**  IF THE CASE WERE VIEWED AS AN ATTEMPT TO

22  RESTORE THESE FAMILIES TO THE STATUS QUO, THAT IS ROLLING BACK

23  THE CLOCK TO THE TIME WHEN THEY ENTERED AND WERE APPREHENDED

24  TOGETHER, THE FAMILY UNIT WOULD HAVE PURSUED THEIR ASYLUM

25  CLAIMS THROUGH A 235 PROCEDURE.  AM I CORRECT?

AUGUST 8, 2018

1      **MR. BEST:**  CORRECT.  TO THE EXTENT THAT ONE OF THE

2   PARENTS WENT THROUGH EXPEDITED REMOVAL PROCEEDINGS ALREADY

3   UNDER SECTION 235 AND NOW HAS A FINAL EXPEDITED REMOVAL ORDER,

4   THE FAMILY WOULD HAVE TOGETHER -- BUT FOR THE SEPARATION THEY

5   WOULD HAVE GONE THROUGH EXPEDITED REMOVAL PROCEEDINGS UNDER

6   SECTION 235, AND HAD A CREDIBLE FEAR INTERVIEW TOGETHER IF

7   THAT IS WHAT THEY SELECTED.

8       WE DO HAVE THE POSITION THAT BECAUSE OF THE TRAUMA

9   CAUSED BY THE SEPARATION, REALLY THE BEST WAY TO RETURN THESE

10  FAMILIES TO THE STATUS QUO IS FOR THE KIDS TO BE IN

11  SECTION 240 PROCEEDINGS.

12      THE PROCEEDINGS UNDER 235, THERE ARE LESS PROCEDURAL

13  PROTECTIONS.  THOSE CREDIBLE FEAR INTERVIEWS ARE DONE IN A

14  PENAL ENVIRONMENT WITHIN THE DETENTION CENTER.  THE CHILDREN

15  DON'T HAVE ACCESS TO COUNSEL -- OR DON'T HAVE A RIGHT TO

16  COUNSEL IN SECTION 235 PROCEEDINGS.

17      SO GIVEN THE SEPARATION AND THE TRAUMA THAT THESE

18  PARENTS HAVE ALREADY GONE THROUGH, AND THE TRAUMA THAT THEY

19  CONTINUE TO LIVE WITH EVEN THOUGH THEY HAVE NOW BEEN

20  REUNIFIED, WE REALLY THINK THAT 240 IS THE APPROPRIATE POSTURE

21  FOR THE KIDS AND THEIR PARENTS TO BE IN AT THIS POINT.  BUT

22  CERTAINLY, AT THE END OF THE DAY, PROCEEDINGS UNDER

23  SECTION 235 IS THE BARE MINIMUM AND WHAT THEY WOULD HAVE GONE

24  THROUGH HAD THEY NEVER BEEN SEPARATED.

25      **THE COURT:**  WOULDN'T A 240 PROCEDURE, THOUGH, IN

AUGUST 8, 2018

1    REALITY, PROVIDE THE PARENTS GREATER RIGHTS THAN THEY

2    OTHERWISE WOULD HAVE ENJOYED IF RETURNED TO THE STATUS QUO?

3            **MR. BEST:**  NOT NECESSARILY.  WE DON'T THINK THE 240

4    WOULD GIVE THE PARENTS GREATER RIGHTS AT THIS POINT.  WHAT WE

5    ARE REALLY ASKING FOR IS THAT CHILDREN HAVE ACCESS TO 240

6    PROCEEDINGS, AND THAT PARENTS CAN ACCOMPANY THEM IN THOSE

7    PROCEEDINGS.

8            HAD THE FAMILY NEVER BEEN SEPARATED AT ALL AND

9    EITHER THE CHILD OR THE PARENT PASSED THE CREDIBLE FEAR

10   SCREENING, THE ENTIRE FAMILY WOULD HAVE GONE INTO 240

11   PROCEEDINGS TOGETHER EVEN IF THE PARENT HAD NOT ESTABLISHED A

12   CREDIBLE FEAR.  AND THE POLICY FOR THAT IS LAID OUT IN

13   THE DECLARATION ATTACHED TO OUR BRIEF THAT WE FILED

14   YESTERDAY.

15           **THE COURT:**  SO WOULD THAT ASSUME, THEN, THAT THE

16   CHILD PASSED THE CREDIBLE FEAR INTERVIEW, THE PARENT DID

17   NOT, AND THEN IN THAT EVENT THE FAMILY GOES INTO A 240

18   PROCEEDING.

19           **MR. BEST:**  THAT'S CORRECT.

20           **THE COURT:**  BUT I GUESS, AS A THRESHOLD MATTER, THE

21   CHILD WOULD FIRST BE SUBJECT TO A CREDIBLE FEAR INTERVIEW,

22   CORRECT?

23           **MR. BEST:**  THAT'S CORRECT.

24           **THE COURT:**  ISN'T THAT THE 235 MECHANISM, OR AM I

25   NOT UNDERSTANDING THAT?

AUGUST 8, 2018

```
 1          MR. BEST:  THAT'S CORRECT, YEAH.  THE CREDIBLE FEAR
 2     IS DONE UNDER SECTION 235.
 3          THE POINT HERE IS THAT AT THIS POINT, NOW THAT THESE
 4     FAMILIES HAVE SUFFERED THE TRAUMA, NOW THAT THE KIDS HAVE
 5     ALREADY BEEN PLACED INTO 240 PROCEEDINGS, REALLY THE
 6     APPROPRIATE PLACE FOR THEM IS 240 PROCEEDINGS.
 7          AND IN THE INTEREST OF FAMILY UNITY, WHICH THIS
 8     COURT OBVIOUSLY HAS RECOGNIZED IN MS. L., THAT THE GOVERNMENT
 9     HAS RECOGNIZED IN ITS PRIOR PRACTICES AND PROCEDURES, AND THAT
10     IT HAS RECOGNIZED IN REGULATIONS PURSUANT TO SECTION 235, THE
11     FAMILY REALLY SHOULD STAY TOGETHER.  AND IF THE CHILDREN -- IF
12     THE CHILD IS GOING TO BE IN SECTION 240, THEY SHOULD REALLY
13     HAVE THE RIGHT TO HAVE THEIR PARENT THERE WITH THEM.
14          THE COURT:  THE 240 PROCEEDING WAS TRIGGERED FOR
15     THESE CHILDREN IN THIS PROPOSED CLASS BECAUSE THEY WERE DEEMED
16     UNACCOMPANIED BY THE GOVERNMENT, CORRECT?
17          MR. BEST:  CORRECT.  THAT'S OUR UNDERSTANDING, YES.
18          THE COURT:  IN A 235 PROCEEDING ISN'T IT ALSO TRUE
19     THAT IF THE CHILD PASSES THE CREDIBLE FEAR SCREENING, THE
20     PARENT DOES NOT, THE FAMILY STILL REMAINS TOGETHER PENDING THE
21     CHILD'S PROCEEDING.  BECAUSE THE CHILD, IF THEY THEN PASS THE
22     CREDIBLE FEAR PROCEEDING, WOULD THEN GO BEFORE THE IMMIGRATION
23     JUDGE FOR A REMOVAL PROCEEDING, I GUESS UNDER 240, AND THE
24     FAMILY WOULD REMAIN TOGETHER.  IS THAT CORRECT?
25          MR. BEST:  RIGHT.  IF ONE MEMBER OF THE FAMILY
```

AUGUST 8, 2018

1    PASSES THE CREDIBLE FEAR SCREENING, THEN THE ENTIRE FAMILY

2    GETS SWEPT INTO A SECTION 240 PROCEEDING.

3              **THE COURT:**  OKAY.

4              A QUESTION OF MR. GELERNT.

5              THE ISSUE WE HAVE BEEN WAITING ON, BASICALLY,

6    PENDING JUDGE FRIEDMAN'S TRANSFER OF THE MMM CASE, HAD TO DO

7    WITH THE SEVEN-DAY NOTICE AND STAYING REMOVAL OF THESE

8    FAMILIES PENDING A SEVEN-DAY PERIOD FOR THE PARENT TO BE WITH

9    CHILD AND TO MAKE THESE DECISIONS.

10             DOES THAT REQUEST ULTIMATELY GET SUBSUMED WITH THIS

11   MMM CASE AND THE RELIEF THAT IS BEING SOUGHT THERE?

12             **MR. GELERNT:**  I THINK THAT IS RIGHT, YOUR HONOR.

13             THIS IS MR. GELERNT, SORRY.

14             I THINK THAT'S RIGHT, YOUR HONOR.  IF YOU WERE TO

15   ISSUE A TRO IN THE MMM CASE IN ORDER TO GET FURTHER BRIEFING

16   ON PRECISELY WHAT ASYLUM RIGHTS THE CHILD HAS AND HOW THE

17   PARENT SHOULD BE TREATED, I THINK THAT WOULD PROBABLY SUBSUME

18   OUR REQUEST FOR A STAY FOR CONSULTATION BECAUSE AT THAT POINT

19   ALL WE WOULD HOPE -- I MEAN, I DON'T WANT TO SAY

20   CATEGORICALLY, WE HAVE BEEN HEARING ABOUT PROBLEMS WITH

21   DIFFICULTY TO HAVE CONSULTATION, MEANINGFUL CONSULTATION.

22             BUT IF YOUR HONOR WERE TO ISSUE A STAY SO THAT

23   PARENTS COULD THEN GET -- PARENTS AND CHILDREN COULD THEN

24   PURSUE THEIR RIGHTS, I SUSPECT AT THAT POINT THERE WOULD HAVE

25   BEEN ENOUGH TIME FOR MEANINGFUL CONSULTATION.

AUGUST 8, 2018

```
 1          RIGHT NOW WE ARE HEARING ABOUT SIGNIFICANT PROBLEMS
 2   IN CONSULTATION DOWN AT THE DETENTION CENTERS, IT MAY DEPEND A
 3   LITTLE ON HOW LONG THE TRO IS IN MMM.  BUT I DON'T THINK WE
 4   WOULD NEED A DOUBLE STAY, TO THE EXTENT I AM UNDERSTANDING.  I
 5   THINK THE THRUST OF YOUR QUESTION IS, WOULD YOU NEED A STAY ON
 6   TOP OF THE OTHER TRO, AND I DON'T THINK SO.
 7          THE COURT:  ALL RIGHT.  BUT IT ALSO -- I GUESS THE
 8   QUESTION IS A LITTLE DEEPER IN THAT IF THE MMM CASE IS
 9   ULTIMATELY SUCCESSFUL THEN THAT WOULD MEAN THE PARENTS IN MS.
10   L. WOULD HAVE THE OPPORTUNITY TO REMAIN TOGETHER WITH THEIR
11   CHILD WHILE THEIR CHILD PURSUES, FOR EXAMPLE, 235 RELIEF,
12   CREDIBLE FEAR INTERVIEW.  AND IF THEY PASS THAT INTERVIEW THEN
13   THEY WOULD REMAIN TOGETHER IN THE IMMIGRATION PROCEEDINGS; IF
14   THE CHILD DOESN'T PASS THAT INTERVIEW THEN THEY WOULD BE
15   REMOVED TOGETHER.  IS THAT CORRECT?
16          MR. GELERNT:  THAT'S MY UNDERSTANDING OF THE CLAIMS
17   IN MMM IT IS ON BEHALF OF BOTH THE CHILD AND THE PARENT SO
18   THEY WOULD BOTH STAY IN THE COUNTRY, OR IF THEY BOTH LOST THEN
19   THEY WOULD BE REMOVED.
20          SO IN THAT SENSE, EITHER WE FEEL LIKE THIS -- THE
21   MMM CASE PICKS UP FROM WHERE MS. L. LEFT OFF IN THAT WE WERE
22   TALKING ABOUT REUNIFICATION.  BUT, AS YOUR HONOR KNOWS, WE
23   NEVER RAISED CLAIMS ABOUT WHAT DEFENSES THE FAMILY WOULD HAVE,
24   AND THE ELECTION FORM SPECIFICALLY SAYS, YOU MAY PURSUE ALL
25   CLAIMS, DEFENSES OF REMOVAL, INCLUDING ASYLUM, AND DON'T NEED
```

1  TO WAIVE THOSE.

2          SO OUR UNDERSTANDING WOULD BE THAT IF MMM, THE

3  PARENTS AND THE CHILDREN STAY IN THE COUNTRY TO PURSUE ASYLUM

4  THEY WOULD BE TOGETHER.  THAT WOULD BE FINE UNDER MS. L. IF

5  THEY ULTIMATELY BOTH LOSE AND THEY ARE GOING TO BE REMOVED

6  TOGETHER, THAT ALSO WOULD BE CONSISTENT WITH MS. L.

7          I JUST UNDERSTAND MMM TO BE RAISING CLAIMS ABOUT

8  DEFENSES TO REMOVAL WHICH WEREN'T BEFORE THIS COURT PRIOR TO

9  MMM BEING TRANSFERRED.

10          **THE COURT:**  OKAY.  THANK YOU.

11          NOW IF I MIGHT INQUIRE OF GOVERNMENT COUNSEL.

12          IT IS MY UNDERSTANDING, BASED ON THE BRIEFING THAT I

13  READ IN THE MS. L. CASE WITH RESPECT TO THE CLASS NOTICE IN

14  MS. L., AND IN THE BRIEFING BEFORE JUDGE FRIEDMAN, THAT THE

15  GOVERNMENT'S POSITION IS THE CLASS NOTICE IN MS. L. WAS

16  SUFFICIENT TO PUT PARENTS ON NOTICE TO MAKE A DETERMINATION

17  WHETHER TO REUNIFY WITH THEIR CHILD AND IN SO DOING WAIVE

18  THEIR CHILD'S RIGHT TO PURSUE ASYLUM.  IS THAT CORRECT?

19          **MR. STEWART:**  YES, YOUR HONOR, THAT IS CORRECT.

20          **THE COURT:**  AND SO WOULD YOU ARGUE THAT THAT FORM

21  WAS SUFFICIENT TO PROVIDE A KNOWING, INTELLIGENT, AND

22  VOLUNTARY WAIVER OF THE CHILD'S ASYLUM CLAIM?

23          **MR. STEWART:**  YES, YOUR HONOR.  IT IS IN KEEPING

24  WITH THE UNDERSTANDING THAT, YOU KNOW, PARENTS WERE, AT THAT

25  TIME WHEN THEY WERE FACED WITH THIS DECISION, THEY KNOW THEY

14

1   ARE GOING TO BE REMOVED.  AND AS THE PARENT OF THE CHILD THEY

2   GET TO MAKE DECISIONS ON BEHALF OF THE CHILD AND DECIDE

3   WHETHER THE CHILD IS GOING TO COME WITH THEM OR WHETHER THE

4   CLIENT -- OR THE CHILD IS GOING TO, YOU KNOW, GET THE

5   OPPORTUNITY TO STAY AND PURSUE THEIR OWN PROCEEDINGS.  SO IT

6   IS A WAIVER OF THE CHILD'S --

7        **THE COURT:**  IN LIGHT OF THAT POSITION THE

8   GOVERNMENT'S PLAN, THEN -- I DON'T THINK THIS HAS EVER BEEN IN

9   QUESTION -- IS TO REMOVE THESE FAMILIES AS SOON AS PRACTICAL.

10  AM I CORRECT?

11       **MR. STEWART:**  I THINK THAT IS RIGHT, YOUR HONOR.

12  THERE ARE -- AS YOUR HONOR CAN UNDERSTAND SOME VERY, VERY

13  STRONG PRACTICAL REASONS TO DO SO.  AND WE WOULD EMPHASIZE

14  THAT IT IS -- ESPECIALLY GIVEN THE AMOUNT OF TIME THAT THE

15  STAY HAS BEEN IN PLACE, THOSE PRACTICAL NEEDS HAVE INCREASED

16  AND IT IS IMPORTANT TO -- FOR US TO GET RESOLUTION ON THE STAY

17  ISSUE AS SOON AS FEASIBLE.

18       **THE COURT:**  YOU DO AGREE THAT CHILDREN HAVE SEPARATE

19  AND INDEPENDENT RIGHTS UNDER THE INA TO PURSUE ASYLUM.  BUT,

20  AS I UNDERSTAND IT, YOUR POSITION WOULD BE THAT THE PARENTS

21  HAVE EFFECTIVELY WAIVED THOSE RIGHTS.

22       **MR. STEWART:**  I THINK THAT IS RIGHT, YOUR HONOR,

23  THAT THERE ARE -- YEAH.  I WOULD PUT IT THIS WAY, YOUR HONOR.

24  THEY DO HAVE ENTITLEMENT TO SEEK, YOU KNOW, SECTION 235

25  PROCEEDINGS.  I MEAN, CERTAINLY SECTION 240 PROCEEDINGS WOULD

AUGUST 8, 2018

1    NOT BE THE STATUS QUO.  BUT THEY DO HAVE THE RIGHT, SUBJECT

2    TO A WAIVER BY THE PARENT, TO PURSUE SECTION 235 PROCEEDINGS.

3            **THE COURT:**  IF THIS COURT WERE TO DETERMINE THAT THE

4    NOTICE IN THE MS. L. CASE DID NOT SPECIFICALLY ADDRESS THE

5    CHILDREN'S ASYLUM CLAIM AND WAIVER OF THOSE CHILDREN'S RIGHTS,

6    WHAT WOULD THE GOVERNMENT'S POSITION BE?  WOULD IT BE, THEN,

7    THAT WE RETURN TO THE STATUS QUO AND THE CHILDREN WOULD BE

8    GIVEN AN OPPORTUNITY TO PURSUE THEIR 235 RELIEF?

9            **MR. STEWART:**  I THINK -- I MEAN, I THINK AT THIS

10   STAGE, YOUR HONOR, THIS HAS LARGELY BEEN RESOLVED WITH THE

11   PASSAGE OF TIME.  I MEAN, WE ARE NOW -- WE ARE NOW -- I

12   BELIEVE IT IS 13 DAYS AFTER REUNIFICATION FOR THE LARGE BULK

13   OF THE CLASS HERE.  AND THEY HAD ALL KIND OF OPPORTUNITY TO

14   CONSIDER OR DECIDE, PURSUE, YOU KNOW, WAIVE, DO OTHER THINGS.

15   SO I THINK OUR POSITION WOULD BE THAT THEY HAVE DEFINITIVELY

16   DECIDED ON HOW TO PROCEED WITH, YOU KNOW, WITH WAIVING OR NOT

17   FOR THOSE WHO HAVE MADE THAT DECISION.

18           **THE COURT:**  WELL, HAVE ANY OF THE CHILDREN OF THE

19   MS. L. CLASS, THOSE THAT HAVE BEEN REUNIFIED WITH THEIR

20   PARENTS, HAVE ANY OF THOSE CHILDREN BEEN GIVEN OR ALLOWED TO

21   PURSUE A CREDIBLE FEAR INTERVIEW?

22           **MR. STEWART:**  I DON'T KNOW THE ANSWER TO THAT, YOUR

23   HONOR.  I AM NOT SURE HOW FAR PROCEEDINGS IN THE CHILDREN'S

24   CASES MAY HAVE GONE SO FAR.

25           **THE COURT:**  OKAY.

AUGUST 8, 2018

16

1        THE PLAINTIFFS HAVE MADE THE REPRESENTATION IN THE
2   BRIEFING, AM I CORRECT, MR. BEST, THAT NONE OF THESE CHILDREN
3   HAS HAD A CREDIBLE FEAR INTERVIEW, OR THERE HAS BEEN
4   REQUESTS OF THE GOVERNMENT BUT THOSE REQUESTS HAVE GONE
5   UNANSWERED.
6        **MR. BEST:**  THAT IS CORRECT, YOUR HONOR.  THAT IS IN
7   OUR BRIEFING, AND THAT CONTINUES TO BE TRUE TODAY.
8        AND IN FACT WE ARE BEING TOLD THAT ICE IS GOING
9   AROUND THE DETENTION FACILITIES AND TELLING FAMILIES THAT THEY
10  ARE GOING TO BE DEPORTED THIS WEEK.  SO THIS IS DEFINITELY A
11  LIVE ISSUE.
12       **THE COURT:**  ALL RIGHT.
13       MR. STEWART, WITH RESPECT TO REACHING THIS ISSUE,
14  THE GOVERNMENT HAS ARGUED IN MS. L. THAT THERE IS A
15  JURISDICTIONAL BAR, ESSENTIALLY, THAT THE COURT LACKS
16  JURISDICTION TO ENTER A STAY WHICH IMPINGES A REMOVAL ORDER.
17       WHAT'S THE POSITION WITH RESPECT TO THIS MMM CASE,
18  THE CHILDREN, BECAUSE THEY DO NOT HAVE A REMOVAL ORDER.  DOES
19  THE COURT HAVE JURISDICTION TO REACH THE ISSUE?  WHAT'S THE
20  GOVERNMENT'S POSITION?
21       **MR. STEWART:**  YOUR HONOR, I DON'T THINK WE ARE
22  ARGUING THAT A JURISDICTIONAL BAR WOULD APPLY.  I MEAN, WITH
23  THE CHILDREN, AS YOU KNOW, YOUR HONOR, IF THEY DON'T HAVE
24  FINAL REMOVAL ORDERS THEN WE ARE NOT TALKING ABOUT EXECUTION
25  OF OR INTERFERENCE WITH A REMOVAL ORDER.  SO WE ARE NOT REALLY

AUGUST 8, 2018

1    AT THE -- THAT STAGE WITH THEM.

2            SO I THINK THE MOST THAT COULD BE DONE WITH RESPECT

3    TO THE KIDS, THEN, WOULD BE TO ALLOW CHILDREN TO POTENTIALLY

4    STAY, YOU KNOW, AND PURSUE ANY CLAIMS.

5            WHAT COULD NOT BE HAPPEN -- WHAT COULD NOT HAPPEN

6    CONSISTENT WITH FEDERAL LAW, YOUR HONOR, WOULD BE FOR THE

7    CHILDREN'S PURSUIT OF PROCEEDINGS TO BE BOOTSTRAPPED INTO A

8    PARENT'S RIGHT NOT TO BE REMOVED WHEN THE PARENT HAS A FINAL

9    REMOVAL ORDER.  THERE WOULD BE A BAR THERE.

10           BOOTSTRAPPING A CHILD'S PURSUIT OF IMMIGRATION

11   RELIEF ALSO COULD NOT BE TRANSFORMED INTO A RIGHT OF RELEASE

12   FOR THE PARENT.

13           SO AGAIN, I THINK IT WOULD BE -- THOSE WOULD BE KIND

14   OF THE BARS, YOUR HONOR.  AND I THINK THOSE ARE CONSISTENT

15   WITH THE THEMES THAT YOUR HONOR HAS EMPHASIZED IN THIS CASE,

16   NOT BEING ABOUT AN ATTACK ON THE GOVERNMENT'S DISCRETIONARY

17   AUTHORITY, REMOVAL AUTHORITY, IMMIGRATION OPERATIONS

18   GENERALLY, DETENTION AUTHORITY, THAT SORT OF THING.

19           **THE COURT:**  BUT AS I UNDERSTAND THE IMMIGRATION

20   PROCEDURES, IF A CHILD IS PERMITTED, UNDER 235, TO PURSUE A

21   CREDIBLE FEAR INTERVIEW AND, EVEN IF THE PARENT LOSES HIS OR

22   HER CREDIBLE FEAR INTERVIEW, THEY REMAIN TOGETHER.  DO YOU

23   DISAGREE WITH THAT?

24           SO I THINK WHAT YOU JUST OUTLINED, MR. STEWART,

25   WOULD BE INCONSISTENT WITH THE IMMIGRATION LAW.  AM I

AUGUST 8, 2018

```
 1   INCORRECT?
 2           MR. STEWART:  LET ME SEE IF I AM UNDERSTANDING THE
 3   QUESTION CORRECTLY, YOUR HONOR.
 4           ARE YOU SAYING -- IS THE QUESTION WHEN A PARENT
 5   LOSES THEIR CREDIBLE FEAR EFFORTS BUT THE CHILD IS PURSUING
 6   THEIRS, THE PARENT GETS TO STAY.  IS THAT, YOU KNOW, THE
 7   QUESTION?
 8           THE COURT:  YES.  AS I UNDERSTAND THE IMMIGRATION
 9   PROCEDURES, THAT IS THE WAY THAT IS HANDLED.  SO IF ONE OR THE
10   OTHER, EITHER THE PARENT OR THE CHILD, STATES A CREDIBLE FEAR,
11   PASSES THE CREDIBLE FEAR INTERVIEW, THE FAMILY UNIT REMAINS
12   TOGETHER WHILE THE PARENT OR THE CHILD, WHOEVER MIGHT BE
13   SUCCESSFUL IN STATING A CREDIBLE FEAR, PURSUES, BEFORE AN
14   IMMIGRATION JUDGE, THEIR ASYLUM CLAIM.
15           MR. STEWART:  I THINK THAT, YOUR HONOR, IT IS A
16   LITTLE BIT DIFFERENT THERE BECAUSE THE DECISION, AS I
17   UNDERSTAND IT, GIVING MY BEST UNDERSTANDING, IS THAT IN THAT
18   SITUATION THE GOVERNMENT IS DECIDING AS A MATTER OF DISCRETION
19   NOT TO REMOVE THE PARENT WHILE THE CHILD, YOU KNOW, IN A
20   NUMBER OF CASES, CONTINUES TO PURSUE ANY CLAIMS THAT THEY
21   HAVE.
22           THE COURT:  MR. BEST, WHAT IS YOUR UNDERSTANDING?
23   IS THAT A MATTER OF GOVERNMENT DISCRETION OR IS THAT A MATTER
24   OF IMMIGRATION INA STATUTORY OR REGULATORY PROVISION?
25           MR. BEST:  MY UNDERSTANDING, YOUR HONOR, IS THAT
```

1    THAT HAS BEEN A CONSISTENT PRACTICE, BASED ON THE DECLARATION

2    THAT WE SUBMITTED FROM SHALYN FLUHARTY YESTERDAY, ATTACHED TO

3    OUR BRIEF.

4         THAT THE GOVERNMENT HAS GOT A CONSISTENT PATTERN AND

5    PRACTICE OF TREATING THESE FAMILIES TOGETHER FOR PURPOSES OF

6    CREDIBLE FEAR SUCH THAT IF THE CHILD ESTABLISHES A CREDIBLE

7    FEAR BUT THE PARENT DOES NOT, THE GOVERNMENT WILL ISSUE AN NTA

8    FOR THE ENTIRE FAMILY, AND THE ENTIRE FAMILY GOES INTO

9    SECTION 240 PROCEEDINGS.

10        **THE COURT:**  SO ULTIMATELY --

11        **MR. BERNICK:**  IF I MAY.  SORRY, YOUR HONOR.

12        **THE COURT:**  YES.

13        **MR. BERNICK:**  THIS IS JUSTIN BERNICK, ALSO FOR

14   PLAINTIFFS.

15        **THE COURT:**  YES.

16        **MR. BERNICK:**  I THINK THERE IS ONE OTHER POINT THAT

17   IS WORTH NOTING, AND THAT IS THAT UNDER SECTION 235 CHILDREN

18   DO HAVE A STATUTORY RIGHT TO CONSULT WITH WHOMEVER THEY WANT

19   IN SUPPORT OF THEIR ASYLUM POSITION.

20        AND SO IN OUR VIEW THAT RIGHT, COUPLED WITH THE

21   RIGHT THAT YOUR HONOR HAS ALREADY RECOGNIZED KEEPING THESE

22   FAMILIES TOGETHER, IS MORE THAN JUST A SIMPLE PATTERN AND

23   PRACTICE FOR THE GOVERNMENT, THERE IS A STATUTORY QUOTE FOR

24   CHILDREN TO HAVE THE RIGHT TO CONSULT WITH THEIR PARENTS AS

25   THEY GO THROUGH THE PROCESS.

AUGUST 8, 2018

```
 1            THE COURT:  I RECALL SEEING THAT IN THE BRIEFING.
 2   IS THAT IN THE INA OR IS THAT A CFR?
 3            MR. BERNICK:  IT IS IN THE INA, YOUR HONOR.  AND I
 4   DON'T HAVE THE PIN CITE FOR THAT CODE RIGHT OFFHAND.  IT WOULD
 5   CERTAINLY BE REFERENCED IN THE BRIEFING.  THERE IS A
 6   CONSULTATION RIGHT AS THE CHILD GOES THROUGH THE PROCESS.
 7            MR. BEST:  I HAVE THAT SECTION HERE IF THE COURT
 8   WOULD LIKE IT.
 9            THE COURT:  YES.
10            MR. BEST:  IT IS 8 USC B, THAT'S A SMALL B, LOWER
11   CASE B, 1, UPPER CASE B, ROMAN NUMERAL IV.
12            THE COURT:  OKAY.  THANK YOU.  I WILL LOOK FOR THAT
13   IN THE BRIEFING, AS WELL.
14            AS FAR AS GOING FORWARD, TODAY WAS THE DAY SET TO
15   DISCUSS THE TRO.  AM I CORRECT THAT THE PARTIES WOULD LIKE
16   ADDITIONAL TIME TO BRIEF ANY ISSUES?  AND IS THERE A REQUEST
17   TO SET A HEARING FOR PRELIMINARY INJUNCTION, OR DO THE
18   PARTIES FEEL THAT THE MATTER HAS BEEN SUFFICIENTLY BRIEFED AND
19   THE COURT CAN SIMPLY TAKE IT UNDER ADVISEMENT AND ISSUE AN
20   ORDER?
21            I GUESS I WOULD START WITH GOVERNMENT.  MR. STEWART,
22   WHAT'S YOUR POSITION?
23            MR. STEWART:  I THINK AT THIS POINT, YOUR HONOR, THE
24   GOVERNMENT WOULD LIKE RESOLUTION ON THE BROADER STAY MOTION
25   AND ON THIS TRO AS SOON AS POSSIBLE.
```

AUGUST 8, 2018

```
1              IF I CAN JUST, YOU KNOW, KIND OF EMPHASIZE THE

2    ORIGINAL IMPETUS OF THE TRO WAS, YOU KNOW, FOR THE SEVEN-DAY

3    PERIOD, WE ARE NOW 13 DAYS PAST THAT FOR MANY PARENTS.

4              THIS IS REALLY BEGINNING TO HAMPER ICE OPERATIONS.

5    THEY ARE STARTING TO FACE, I UNDERSTAND IT FROM MY CLIENTS,

6    POTENTIAL UNREST, YOU KNOW, AT LEAST ONE FACILITY OF FOLKS WHO

7    EITHER WANT TO BE REMOVED OR RELEASED.

8              THE GOVERNMENT HAS TRIED, AS A MATTER OF, YOU KNOW,

9    DISCRETION, ACCOMMODATION, TO DEAL WITH THESE, YOU KNOW,

10   DIFFERENT LAWSUITS TO GET THEM BEFORE YOUR HONOR.  AGREED TO,

11   YOU KNOW, RECOGNIZE THE NEED FOR A POTENTIAL PAUSE TO KIND OF

12   HAVE AN ORDERLY PRESENTATION OF ISSUES, BUT ALMOST THREE AND A

13   HALF WEEKS INTO THE STAY THIS IS CREATING SIGNIFICANT ISSUES

14   FOR THE GOVERNMENT'S AUTHORITY.

15             AND IF WE MOVE TO A SITUATION WHERE IT LOOKS LIKE

16   THERE IS AN INDEFINITE STAY ON REMOVAL IN PLACE, THE CASE KIND

17   OF STARTS TO LOOK DIFFERENT IN KIND.  IT IS SORT OF A, YOU

18   KNOW, TURNING POINT.

19             AND WE THINK THAT QUICK RESOLUTION OF THIS IS QUITE

20   IMPORTANT.  AND, YOU KNOW, TO THE EXTENT THE COURT WERE

21   INCLINED TO ORDER ANY RELIEF I THINK IT WOULD BE AT MOST

22   HAVING SWIFT 235 INTERVIEWS FOR CHILDREN.

23             AND, YOU KNOW, IF THEIR PARENTS HAVE ALREADY BEEN

24   DEEMED REMOVED AND THE CHILDREN, YOU KNOW, DON'T HAVE ANY

25   CLAIM THAT, YOU KNOW, REMOVAL WOULD THEN BE APPROPRIATE.  BUT
```

AUGUST 8, 2018

```
 1   THE GOVERNMENT WOULD STICK BY ITS POSITION THAT ANY STAY --
 2   YOU KNOW, THE TRO SHOULD BE DENIED, ANY FURTHER STAY SHOULD
 3   EXPIRE, IF NOT TODAY THEN VERY SOON.
 4            IF THE COURT DOES HAVE QUESTIONS ABOUT ANY STATUTORY
 5   PROVISIONS, REGULATIONS OR BRIEFING THE GOVERNMENT WOULD BE
 6   HAPPY TO ADDRESS THOSE VERY PROMPTLY.
 7            AS I THINK YOUR HONOR MIGHT HAVE BEEN ALLUDING TO,
 8   ALTHOUGH THIS TRO WAS BRIEFED IN -- BEFORE JUDGE FRIEDMAN THE
 9   VAST BULK OF WHAT THE GOVERNMENT WAS ADDRESSING WERE TRANSFER
10   QUESTIONS AND REASONS WHY IT WAS APPROPRIATE THAT THE CASE BE
11   HEARD BEFORE YOUR HONOR.
12            IF YOU WANT THE BENEFIT OF THE GOVERNMENT'S VIEWS
13   ON, YOU KNOW, THE CONSULTATION PROVISION OR ANYTHING ELSE WE
14   WOULD BE GLAD TO PROVIDE THOSE.  BUT ASIDE FROM THAT, THAT
15   SORT OF THING, WE WOULD URGE THE COURT FOR RESOLUTION SOON ON
16   THIS AND ANY OTHER STAY OF REMOVAL ISSUES.
17            **THE COURT:**  ALL RIGHT.
18            AND, MR. BEST OR MR. BERNICK, WHAT WOULD YOUR
19   POSITION BE?  DO I HAVE SUFFICIENT BRIEFING, OR DID YOU DESIRE
20   TO SUBMIT ANY ADDITIONAL BRIEFING?
21            **MR. BEST:**  YOUR HONOR, THIS IS MR. BEST.
22            I DO THINK THAT YOU HAVE SUFFICIENT BRIEFING,
23   CERTAINLY, TO ENTER A TRO TODAY CONSISTENT WITH THE REQUEST IN
24   OUR PAPERS.
25            WE THINK THERE IS MORE THAN ENOUGH IN THE PAPERS TO
```

```
 1   SHOW THAT ALL FOUR FACTORS FOR A TRO HAVE BEEN SATISFIED HERE
 2   FOR THE PLAINTIFFS' CLAIMS IN MMM.  LIKELIHOOD OF SUCCESS, WE
 3   TALKED ABOUT.  IRREPARABLE HARM, BALANCE OF THE EQUITIES, IN
 4   THE PUBLIC INTEREST, ALL OF THOSE ARE SATISFIED HERE.
 5            I DON'T THINK THERE IS ANY DOUBT THAT, YOU KNOW, NOT
 6   STOPPING THE REMOVAL OF THESE FAMILIES WOULD CAUSE THEM
 7   IRREPARABLE HARM BOTH BECAUSE OF THE DEPRIVATION OF A
 8   CONSTITUTIONAL RIGHT TO DUE PROCESS BUT ALSO BECAUSE OF THE
 9   FACT THAT THEY WILL BE RETURNING TO DANGEROUS CONDITIONS THAT
10   THEY WERE FLEEING FROM IN THE FIRST PLACE.
11            THE COURT:  AND THEN --
12            MR. BEST:  I UNDERSTAND THE GOVERNMENT COUNSEL'S
13   ARGUMENT TO INCLUDE SORT OF A BALANCE OF THE EQUITIES KIND OF
14   ARGUMENT.  YOU KNOW, THE GOVERNMENT WANTS TO GET THIS RESOLVED
15   AND IT IS FACING PRACTICAL ISSUES DETAINING THESE FAMILIES FOR
16   THIS PERIOD OF TIME.  BUT THERE IS JUST -- THERE IS NO
17   COGNIZABLE HARM FOR THE GOVERNMENT IN HAVING TO COMPLY WITH
18   THE LAW, AND THAT IS WHAT WE ARE ASKING FOR HERE.
19            SO CERTAINLY, YOU KNOW, THERE IS ENOUGH, I THINK, IN
20   THE PAPERS NOW FOR THE COURT TO ISSUE A TRO AND JUST CONTINUE
21   THE STAY THAT IS ALREADY IN PLACE.
22            BUT GIVEN THE QUESTIONS THAT YOUR HONOR HAS HAD
23   TODAY IN THE HEARING, WE WOULD ASK FOR ADDITIONAL BRIEFING ON
24   THE PRELIMINARY INJUNCTION AND A HEARING ON THE PRELIMINARY
25   INJUNCTION.
```

AUGUST 8, 2018

```
 1              THE COURT:  IN THAT REGARD, WHAT ISSUES WOULD YOU --
 2   ARE YOU INTERESTED IN FURTHER BRIEFING?
 3              MR. BEST:  CERTAINLY THE QUESTION OF WHAT THE
 4   APPROPRIATE RELIEF IS AS FAR AS WHETHER THE CHILDREN SHOULD BE
 5   ALLOWED TO GO BACK INTO 240 PROCEEDINGS OR WHETHER THEY ARE
 6   ENTITLED TO SECTION 235.
 7              AS I HAVE SAID ALREADY, CERTAINLY AT THE VERY LEAST
 8   THEY ARE ENTITLED TO THE CREDIBLE FEAR INTERVIEWS UNDER
 9   SECTION 235, BUT WE WOULD BE INTERESTED IN PROVIDING THE COURT
10   WITH ADDITIONAL BRIEFING ON OUR ARGUMENT THAT THEY SHOULD GO
11   INTO SECTION 240 PROCEEDINGS.
12              THE COURT:  OKAY.  SO AS I UNDERSTAND IT, THEN, THE
13   REQUEST FOR ADDITIONAL BRIEFING WOULD RELATE TO THE
14   IMMIGRATION ISSUES, THE PROCEDURES THERE, BUT NOT ON THE
15   OVERARCHING ISSUE OF WHETHER THE COURT SHOULD GRANT AN
16   INJUNCTION INCLUDING, FROM THE PLAINTIFFS' PERSPECTIVE,
17   MANDAMUS REQUIRING THE GOVERNMENT TO PROVIDE AT LEAST 235
18   HEARINGS FOR THE CHILDREN.
19              MR. BEST:  WELL, IF THE COURT HAS ANY QUESTIONS
20   ABOUT WHETHER OR NOT THERE HAS BEEN A VIOLATION OF THE
21   LAW HERE AND WHETHER OR NOT THE PLAINTIFFS' RIGHTS HAVE
22   BEEN VIOLATED, CERTAINLY WE WOULD WANT TO BRIEF THAT ISSUE
23   TOO.
24              AND WE ARE HAPPY TO DO A MORE FULSOME BRIEFING ON
25   THE PRELIMINARY INJUNCTION.  I UNDERSTOOD THE COURT TO BE SORT
```

1  OF FOCUSED ON THE SECTION 240 ISSUE, AND SO WE WOULD CERTAINLY

2  WANT TO DO THAT.  AND BRIEF ANYTHING ELSE THAT YOUR HONOR

3  WOULD LIKE US TO AND HAVE QUESTIONS ABOUT.

4          **THE COURT:**  ALL RIGHT.

5          THEN, MR. GELERNT, YOUR POSITION IS CLEAR.  AND I

6  APPRECIATE THE SUBMISSION YOU HAD YESTERDAY.

7          YOUR ARGUMENT, ESSENTIALLY, IS THAT THE CLASS ACTION

8  NOTICE DID NOT OPERATE TO EFFECT A WAIVER OF THE CHILDREN'S

9  ASYLUM RIGHTS.  AND IF THE COURT WERE TO AGREE THEN IT OUGHT

10 TO CONTINUE THE STAY AND PROVIDE RELIEF CONSISTENT WITH WHAT

11 THE PLAINTIFFS IN MMM ARE ASKING.

12         **MR. GELERNT:**  YES, YOUR HONOR.

13         THIS IS MR. GELERNT.

14         THAT IS EXACTLY RIGHT.  AND I WOULD JUST MAKE TWO

15 VERY QUICK POINTS.

16         I THINK YOU ARE ABSOLUTELY RIGHT, YOUR HONOR, THAT

17 THE FORM DOES NOT EXPLICITLY WAIVE THE CHILD'S RIGHTS.  BUT IN

18 RESPONSE TO WHAT THE GOVERNMENT HAS MENTIONED IS, THE FORM

19 REALLY HAS -- IS JUST A PREFERENCE FOR REUNIFICATION ONCE A

20 DECISION IS MADE THAT THE PARENT IS ABSOLUTELY GOING TO BE

21 REMOVED.  AND I THINK THAT IS CRITICAL.

22         THE FORM EXPRESSLY SAYS, IF YOU LOSE YOUR CASE AND

23 THE GOVERNMENT IS GOING TO REMOVE YOU -- NOT JUST LOSE YOUR

24 CASE BUT THE GOVERNMENT IS GOING TO REMOVE YOU, WHICH TAKES

25 INTO ACCOUNT THE FACT THAT THE PARENT IS NOT REMOVED IF THE

AUGUST 8, 2018

1  CHILD WINS.  IT THEN SAYS, YOU MUST DECIDE, QUOTE, UNQUOTE, AT

2  THAT TIME WHETHER YOU WANT YOUR CHILD TO LEAVE THE UNITED

3  STATES.

4          SO IT FEELS A LITTLE LIKE THE GOVERNMENT IS PUTTING

5  THE CART BEFORE THE HORSE -- OR THE HORSE BEFORE THE CART

6  BECAUSE THE MMM CLAIMS ARE THAT NEITHER THE CHILD NOR THE

7  PARENT CAN BE REMOVED RIGHT NOW.  SO WE ARE NEVER GOING TO

8  FACE A SITUATION OF THE PARENT AND THE CHILD HAVING

9  CONFLICTING WISHES.  IF THE MMM CLAIMS ARE ACCEPTED THEN BOTH

10 THE PARENT AND CHILD ARE GOING TO REMAIN HERE WHILE THERE IS A

11 NEW PROCEEDING FOR THE CHILD, AND POTENTIALLY FOR THE PARENT,

12 BUT AT LEAST FOR THE CHILD.  AND IF BOTH ARE REMOVED THEN

13 THERE IS NO CONFLICT, AGAIN, BETWEEN THE PARENT AND THE CHILD.

14         SO WE DON'T ACTUALLY THINK THE FORMS EVEN KICK IN AT

15 THIS STAGE UNTIL IT IS CLEAR THAT THE PARENT IS ACTUALLY GOING

16 TO BE REMOVED, BUT CERTAINLY IT DOESN'T EXPLICITLY WAIVE THE

17 CHILD'S RIGHTS.

18         THE PARENT IS ONLY MAKING THAT -- STATING THAT

19 PREFERENCE IF THE PARENT IS ULTIMATELY REMOVED.  BUT IF THE

20 MMM CLAIMS ARE ACTUALLY VALID IN YOUR VIEW THEN THE PARENT IS

21 NOT BEING REMOVED, SO THE WHOLE FORM DOESN'T EVEN KICK IN.

22 THE PREMISE OF THE FORM IS THE PARENT IS ACTUALLY BEING

23 REMOVED, AT THAT POINT.

24         **THE COURT:**  WHEN WE WERE HAVING THE HEARING ON THIS

25 SEVEN-DAY ISSUE, IT MAY HAVE BEEN A WEEK AGO FRIDAY, THE COURT

AUGUST 8, 2018

1    WAS ASKING QUESTIONS OF YOU, MR. GELERNT, THAT WHAT YOU ARE

2    ASKING DIDN'T SEEM CONSISTENT WITH THE STATUS QUO, THAT YOU

3    WERE ASKING FOR A SEVEN-DAY PERIOD FOR THE FAMILIES TO

4    REMAIN TOGETHER.  AND THEN, OSTENSIBLY, THE PARENT COULD

5    DECIDE TO SEPARATE AGAIN AND ALLOW THE CHILD TO PURSUE ASYLUM

6    CLAIMS UNDER, I GUESS IT WOULD BE 240, AS AN UNACCOMPANIED

7    MINOR.

8         AS I UNDERSTAND IT, THAT IS NOT YOUR POSITION.  YOUR

9    POSITION IS ALIGNED WITH THE MMM PUTATIVE CLASS, AND THAT IS

10   TO KEEP THE STATUS QUO, TO REMAIN UNIFIED, AND THEN TO PURSUE

11   THE ASYLUM CLAIM AS A FAMILY UNIT.

12        **MR. GELERNT:**  YOUR HONOR, SO LET ME -- AND I

13   APOLOGIZE IF ANYTHING I HAVE SAID OVER THE COURSE OF THE

14   LITIGATION HAS BEEN UNCLEAR.

15        OUR POSITION WAS SIMPLY THEY ARE NOW REUNIFIED, THEY

16   NEED TIME TO MAKE A DECISION.  BUT ONE OF THE DECISIONS WAS

17   ALWAYS GOING TO BE IF THEY CAN FIND LAWYERS, BOTH THE PARENT

18   AND CHILD, TO PREVENT REMOVAL OR TO PURSUE ASYLUM CLAIMS,

19   WHETHER IT IS FOR THE CHILD AND THE PARENTS TAG ALONG OR BOTH

20   PARENTS -- AND THAT WAS GOING TO BE AN OPTION THEY WOULD TAKE.

21   IT WAS JUST A MATTER OF FIGURING OUT THEIR OPTION.

22        AND THERE IS TONS OF DIFFERENT OPTIONS.  THE PARENT

23   COULD ALWAYS DECIDE THEY WANT TO GO HOME FOR WHATEVER REASON,

24   EVEN IF THEY ARE NOT REQUIRED, OR THE PARENT AND CHILD CAN

25   CONTEST REMOVAL.  THE PARENT MIGHT HAVE A LEGAL RIGHT, AS MMM

1   IS SAYING, TO STAY HERE WHILE THE CHILD IS PURSUING ASYLUM.

2   OUR POSITION WAS ONLY THEY NEED TO FIGURE OUT OPTIONS.

3           SO WE ARE NOT -- THE MMM PLAINTIFFS ARE PUSHING

4   THESE SUBSTANTIVE CLAIMS, WE ARE SIMPLY SAYING THAT THE FORM

5   IN NO WAY PREVENTS ANYBODY FROM PURSUING THEIR SUBSTANTIVE

6   DEFENSES TO REMOVAL, INCLUDING ASYLUM.  AND IF THE PARENT AND

7   CHILD ARE NOT GOING TO BE REMOVED NO DECISION EVEN HAS TO BE

8   MADE ABOUT WHETHER THE REUNIFICATIONS CAN OCCUR OR NOT IF THEY

9   ARE BOTH GOING TO BE HERE.

10          IT IS ONLY IF ULTIMATELY, AFTER THE MMM LITIGATION

11  IS CONCLUDED, THE PARENT IS GOING TO BE REMOVED AND THE CHILD

12  IS STILL IN ASYLUM, THEN THE PARENT WOULD RECORD THEIR

13  PREFERENCE.  AND AT THAT POINT, IF THERE WERE ACTUALLY

14  CONFLICTING WISHES, CAN BE EXCEEDINGLY RARE, THEN THAT WOULD

15  HAVE TO BE HANDLED IN SOME UNIQUE SITUATION.

16          BUT OUR POSITION ABOUT THE FORM IS IT DOESN'T EVEN

17  GET TRIGGERED UNTIL THE PARENT IS ACTUALLY BEING REMOVED,

18  WHICH WOULDN'T HAPPEN IF MMM'S CLAIMS ARE SUCCESSFUL.

19          **THE COURT:**  AS I UNDERSTAND IT, IF THE CHILD'S CLAIM

20  IS SUCCESSFUL, THE PARENT'S IS NOT, UNDER THE ARGUMENTS

21  ADVANCED BY THE PLAINTIFFS IN MMM, THE FAMILY UNIT WOULD

22  REMAIN TOGETHER.  SO THE -- AND THEN IF THE CHILD ULTIMATELY

23  LOSES THEN THEY ARE REMOVED TOGETHER; THE CHILD ULTIMATELY

24  PREVAILS THEN THEY WOULD REMAIN TOGETHER.

25          **MR. GELERNT:**  THAT'S EXACTLY RIGHT, YOUR HONOR.

AUGUST 8, 2018

```
1              AND YOU HAVE AN AFFIDAVIT FROM THEM, BUT WE ALSO,
2    YOUR HONOR, IN THE MS. L. LITIGATION, JUST TO POINT OUT THE
3    DIFFERENT OPTIONS THAT WERE GOING TO BE AVAILABLE TO THE
4    PARENTS TO THINK ABOUT, A DECLARATION FROM STEPHEN MANNING IN
5    OUR CASE POINTS OUT THE SAME THING, THAT IT HAS BEEN THE
6    CONSISTENT PRACTICE.
7              AND IT MAY BE THAT THE PARENTS GET PUT INTO 240
8    PROCEEDINGS AND PREVAIL AND THE CHILD DOESN'T, AND THEN BOTH
9    STAY AS WELL.
10             YOUR LARGER POINT IS EXACTLY CORRECT.  THE FORMS
11   ALLOW PEOPLE TO FIGHT REMOVAL FOR AS LONG AS THEY WANT, AND NO
12   DECISION NEEDS TO BE MADE ABOUT LEAVING THE CHILD BEHIND OR
13   NOT IF THEY ARE BOTH ENTITLED TO STAY.  AND AS YOUR HONOR
14   POINTS OUT, THAT'S WHAT WOULD HAPPEN IF THE CHILD PASSES AND
15   NOT THE PARENT.
16             **THE COURT:**  ALL RIGHT.
17             I THINK THE LAST QUESTION I HAVE WOULD BE ONE FOR
18   GOVERNMENT COUNSEL.
19             IN THE MMM CASE THEY ARE SEEKING CLASS-WIDE RELIEF.
20   NO MATTER HOW THE COURT RULES, WHETHER IT IS IN FAVOR OF OR
21   AGAINST THE PLAINTIFFS, DOESN'T IT MAKE SENSE TO TREAT THIS AS
22   A PUTATIVE CLASS.
23             AND THEN MY QUESTION WOULD BE WHETHER GIVEN -- IT
24   SEEMS TO ME A VERY STRAIGHTFORWARD ISSUE WHERE CLASS
25   CERTIFICATION WOULD BE APPROPRIATE.  WOULDN'T IT BE --
```

AUGUST 8, 2018

1  WOULDN'T IT MAKE SENSE FOR THE PARTIES -- AND THIS IS THE

2  QUESTION FOR GOVERNMENT COUNSEL -- SIMPLY TO STIPULATE THAT

3  THE MMM PUTATIVE CLASS BE TREATED AS A CLASS UNDER 23(B)(3) OR

4  (B)(2)?

5          **MR. STEWART:**  YOUR HONOR, I AM NOT SURE THAT I -- I

6  AM NOT ABLE TO STIPULATE TO THAT AT THIS TIME, CERTAINLY.  I

7  DO HAVE CONCERNS ABOUT -- YOU KNOW, I JUST DON'T KNOW IF ALL

8  OF THE CRITERIA FOR CLASS CERTIFICATION WOULD BE SATISFIED

9  ABOUT, YOU KNOW, ISSUES WITHIN THE CLASS, YOU KNOW,

10 ASCERTAINABILITY.  SO I COULDN'T STIPULATE TO THAT AT THIS

11 TIME.

12          **THE COURT:**  OKAY.  THAT'S FAIR ENOUGH.

13          **MR. STEWART:**  CAN I ADD ONE OTHER POINT, YOUR HONOR?

14          THIS SOMEWHAT GOES TO MAYBE PART OF MY CONCERNS, IS

15 THAT WE HAVE KIND OF AN UNUSUAL SITUATION HERE.  USUALLY IN

16 THE NORMAL COURSE I WOULD SAY THAT IT IS ACCURATE THAT WHEN

17 YOU HAVE A PARENT AND A CHILD THEIR CLAIMS OF FEAR ARE

18 GOING TO BE THE SAME CLAIMS AND WILL KIND OF RISE AND FALL

19 TOGETHER.

20          WE HAVE A SITUATION THAT, YOU KNOW, BECAUSE OF --

21 BECAUSE OF THE SEPARATIONS AND BECAUSE OF THE ABILITY OF SOME

22 CHILDREN TO MAKE A CLAIM, YOU KNOW, THERE MIGHT BE AREAS OF

23 DIVERGENCE.  BUT I THINK IN THE VAST BULK OF SITUATIONS IT

24 IS -- I SURMISE THAT IT IS GOING TO BE THE CASE THAT IF A

25 PARENT HAS LOST ON THEIR CREDIBLE FEAR CLAIM THE CHILD WILL

1    LOSE TOO BECAUSE THE CLAIMS EQUALLY WILL NOT BE VIABLE.

2          I JUST NEED TO POINT OUT THE SORT OF ODDITY OF, YOU

3    KNOW, GIVEN THAT LIKELY REALITY IF IT WOULD BE -- IT IS QUITE

4    A THING TO -- ON THE SPECULATION OR ON THE, YOU KNOW, THE

5    POSSIBILITY THAT SOME NUMBER OF CHILDREN MIGHT HAVE VIABLE

6    ADDITIONAL CLAIMS, TO GO FROM THAT TO ISSUING THE REALLY

7    SWEEPING STAY OF REMOVALS THAT THE MMM PLAINTIFFS SEEK, OR TO

8    OTHERWISE EXTEND OR BROADEN THE STAY SOUGHT BY CLASS COUNSEL

9    IN MS. L., THAT WOULD BE QUITE A LEAP, PARTICULARLY GIVEN THE

10   PRECARIOUS NATURE OF THE JURISDICTIONAL AND AUTHORITY ISSUES

11   HERE.

12         SO I WOULD JUST WANT TO FLAG THAT AS WELL, BOTH AS

13   THEY BEAR ON ANY RULE 23 QUESTIONS, BUT ALSO JUST ON THE SHEER

14   BREADTH OF THE RELIEF HERE, AND YOUR HONOR'S APPROACH TO

15   TRYING TO TAILOR THINGS APPROPRIATELY.

16         **THE COURT:**  YOUR POINT EARLIER WAS THAT IF THE COURT

17   WERE INCLINED AT ALL TO GRANT SOME RELIEF TO PLAINTIFFS IN MMM

18   IT SHOULD BE NO MORE THAN PROVIDING, FOR EXAMPLE, A 235

19   CREDIBLE FEAR INTERVIEW OPPORTUNITY TO THE CHILDREN.

20         **MR. STEWART:**  YES, YOUR HONOR.  A SWIFT 235

21   OPPORTUNITY, YOU KNOW, IN THEORY, YOU KNOW, AS YOUR HONOR HAS

22   DONE, PROMPT TIMELINES, GET THAT RESOLVED.  AND, YOU KNOW, IF

23   THERE IS NO CREDIBLE FEAR THERE THEN REMOVALS COULD GO FORWARD

24   AS APPROPRIATE WITHIN ICE'S AUTHORITY AND DISCRETION.

25         **THE COURT:**  WHAT WOULD THAT LOOK LIKE ON THE GROUND?

AUGUST 8, 2018

1  WOULD THAT MEAN, IF THAT WERE THE APPROACH, THAT AN

2  IMMIGRATION OFFICER FROM U.S.C.I.S. WOULD COME INTO THE

3  DETENTION FACILITIES OR GO TO THE PARENT AND CHILD WHO HAVE

4  BEEN PAROLED IN THE COMMUNITY, DO THEIR CREDIBLE FEAR

5  INTERVIEW OF THE CHILD, MAKE A DETERMINATION.  AND IF THE

6  CHILD LOSES THEN THE FAMILIES WOULD BE REMOVED TOGETHER; OR IF

7  THE CHILD STATES CREDIBLE FEAR, PASSES THAT INTERVIEW, THEN

8  THEY WOULD REMAIN TOGETHER IN COUNTRY AND PURSUE THE

9  IMMIGRATION PROCEEDINGS BEFORE AN I.J.?

10          **MR. STEWART:**  I THINK THAT IS ONE WAY TO DO IT, YOUR

11  HONOR.  I WOULD STILL STICK WITH THE POSITION THAT I DO

12  BELIEVE THAT EVEN WHEN THE CHILD HAS A VALID CLAIM THE PARENT

13  HAS THE RIGHT TO WAIVE, YOU KNOW, WAIVE -- OR HAVE A VALID

14  REMOVAL EFFECTUATED AGAINST THEM IN ICE'S DISCRETION.

15          **THE COURT:**  OKAY.  YES.

16          **MR. BERNICK:**  I AM SORRY.  YOUR HONOR, THIS IS

17  JUSTIN BERNICK SPEAKING AGAIN.

18          I WANTED TO RESPOND TO ONE OR TWO THAT I THINK WAS

19  TOUCHED ON, BRIEFLY, A COUPLE OF POINTS.  AND THAT IS THIS

20  NOTION OF JUST PROVIDING A CREDIBLE FEAR INTERVIEW TO THE

21  CHILD.

22          THE GOVERNMENT'S STRATEGY OF SEPARATING PARENTS AND

23  CHILDREN EFFECTED A SORT DIVIDE-AND-CONQUER APPROACH WHERE THE

24  PARENTS WERE GIVEN CREDIBLE FEAR INTERVIEWS BUT THEY WERE

25  UNDER SEVERE DURESS, AND DURESS OF BEING SEPARATED FROM THEIR

```
 1   PARENTS.  AND I AM TOLD THAT THE FAILURE RATE OF THOSE
 2   CREDIBLE FEAR INTERVIEWS WAS FAR GREATER THAN IS TYPICAL.
 3            I ALSO UNDERSTAND, FROM OUR PEOPLE ON THE GROUND,
 4   THAT THE PARENTS AND CHILDREN'S CLAIMS ARE OFTEN
 5   SELF-REINFORCING, SO IF THEY GO THROUGH THE PROCESS TOGETHER
 6   OFTEN THE CHILDREN MAY KNOW THINGS THE PARENTS DON'T KNOW, THE
 7   PARENTS MAY KNOW THINGS THE CHILDREN DON'T KNOW, AND THAT IS
 8   WHY THEY GO THROUGH THE PROCESS TOGETHER.
 9            SO SIMPLY AFFORDING THE CHILDREN A NEW CREDIBLE FEAR
10   INTERVIEW, SEPARATE AND APART FROM THEIR FAMILY UNIT, IS
11   ACTUALLY NOT RESTORING THE STATUS QUO.  THEY ARE STARTING IN
12   THIS HOLE WHERE THE GOVERNMENT'S SEPARATION POLICY HAS
13   EFFECTIVELY BIFURCATED TWO CREDIBLE FEAR DETERMINATIONS THAT
14   TYPICALLY WOULD BE HANDLED TOGETHER.  AND THAT IS GOING TO
15   SIGNIFICANTLY DISADVANTAGE THESE CHILDREN.  NOT ALL CHILDREN
16   BUT WE BELIEVE MANY CHILDREN.
17            SO I THINK THAT IS AN IMPORTANT POINT TO KEEP IN
18   MIND IS THAT WHILE THE FOCUS OF OUR CASE IS ON THE CHILDREN
19   AND THE CONSULTATION THEY HAVE WITH -- RIGHT THEY HAVE WITH
20   THEIR PARENTS TO PUT -- TO RESTORE THE STATUS QUO FOR THESE
21   CHILDREN COULD REQUIRE MORE THAN JUST A CREDIBLE FEAR
22   INTERVIEW JUST FOR THE CHILDREN.
23            **THE COURT:**  YOUR POSITION, ULTIMATELY, IS THAT IF
24   THE CHILD IS PROVIDED A 235 CREDIBLE FEAR INTERVIEW, THEN HE
25   OR SHE, UNDER THE STATUTE YOU CITED, COULD ELECT TO HAVE THEIR
```

AUGUST 8, 2018

 1    PARENT PRESENT.  AND THEY WOULD GO THROUGH IT TOGETHER IN THAT

 2    RESPECT.

 3           I GUESS THE INTERVIEW WOULD BE FOCUSED ON THE CHILD

 4    BUT IT WOULD BE WITH THEIR PARENT ACCOMPANYING THEM?

 5           **MR. BERNICK:**  I THINK AT MINIMUM.  AS MY COLLEAGUE

 6    MR. BEST HAS ALLUDED TO, WE BELIEVE, YOU KNOW, ONCE THE

 7    GOVERNMENT HAS MADE THE DECISION TO CREATE A SEPARATION AND

 8    AFFORD CHILDREN 240 PROCEDURES, THERE IS NO STATUTORY OR

 9    REGULATORY AUTHORIZATION TO REMOVE THEM FROM THOSE

10    PROCEDURES.

11           WE UNDERSTAND THAT CHILDREN HAD BEEN PLACED IN 240

12    BUT THAT NOTICES TO APPEAR WERE JUST WITHDRAWN OR NEVER FILED,

13    BUT THERE IS NO MECHANISM TO SORT OF DEMOTE A CHILD FROM A 240

14    PROCEDURE TO A 235 PROCEDURE.  SO THERE IS THAT ISSUE.

15           THERE IS ALSO THE ISSUE THAT THE CHILD COULD HAVE

16    BENEFITED FROM A PROPER CREDIBLE FEAR DETERMINATION AS TO THE

17    PARENT BUT HAS NOW BEEN TAINTED BY THE SEPARATION.

18           SO I TAKE THE GOVERNMENT'S POINT THAT THIS IS AN

19    UNUSUAL CIRCUMSTANCE, BUT IT IS AN UNUSUAL CIRCUMSTANCE OF THE

20    GOVERNMENT'S MAKING.  AND WE DO WANT TO MOVE QUICKLY TO AFFORD

21    ASYLUM PROCEDURES AS QUICKLY AS WE POSSIBLY CAN TO THESE

22    CHILDREN, BUT TO DO SO MIGHT REQUIRE MORE THAN JUST SIMPLY A

23    CREDIBLE FEAR INTERVIEW FOR THE CHILD ALONE, EVEN WITH THE

24    PARENT THERE.

25           THAT IS ONE REASON WHY I THINK THAT

1    MR. BEST'S POINT, HAVING SOME ADDITIONAL BRIEFING ON THE

2    SPECIFIC RELIEF COULD BE POTENTIALLY BENEFICIAL HERE.

3              **THE COURT:**  OKAY.

4              **MR. BEST:**  YOUR HONOR, THIS IS MR. BEST.  I AM SORRY

5    TO CUT YOU OFF.  I JUST WANTED TO QUICKLY RESPOND TO ONE POINT

6    THAT THE COUNSEL -- COUNSEL FOR GOVERNMENT MADE A FEW MINUTES

7    AGO THAT THE CLAIMS FOR CHILDREN AND PARENTS RISE AND FALL

8    TOGETHER OFTENTIMES.

9              I JUST WANTED TO NOTE OUR DISAGREEMENT WITH THAT.

10   THERE ARE CERTAINLY SITUATIONS WHERE A CHILD AND A PARENT

11   COULD HAVE DISTINCT ASYLUM CLAIMS, SO IT IS CERTAINLY NOT

12   NECESSARILY TRUE THAT THEY RISE AND FALL TOGETHER.

13             AND SO I JUST WANTED TO NOTE MY DISAGREEMENT WITH

14   THE GOVERNMENT ON THAT POINT.

15             **THE COURT:**  OKAY.  THANK YOU.

16             LET'S TURN BRIEFLY TO THE NTC MATTER.  PLAINTIFFS'

17   COUNSEL HAVE BEEN WAITING PATIENTLY THERE.

18             I HAVE THE BRIEFING ON THAT, SO I GUESS I WOULD ASK

19   MS. LEVY OR MR. REITER, IS THERE ANYTHING ELSE I NEED TO KNOW,

20   OR DO I HAVE SUFFICIENT INFORMATION TO RULE BASED ON THE

21   BRIEFING THAT YOU SUBMITTED AND GOVERNMENT COUNSEL SUBMITTED

22   TODAY?

23             **MS. LEVY:**  YOUR HONOR, I DO BELIEVE --

24             THIS IS MS. LEVY SPEAKING.

25             I DO BELIEVE THAT THE BRIEFING SPEAKS FOR ITSELF,

AUGUST 8, 2018

1   BUT JUST NOTE THAT EVERY DAY THAT THE CHILDREN ARE DETAINED IS

2   ANOTHER DAY THAT THEY ARE SUFFERING.

3             **THE COURT:**  ALL RIGHT.

4             AND, MR. STEWART, YOU ARE CONTENT -- I THINK YOUR

5   COUNSEL CO-COUNSEL, MR. FLENTJE, DID THE -- ACTUALLY I THINK

6   IT WAS SOMEONE ELSE FROM YOUR TEAM.  BUT ARE YOU CONTENT TO

7   REST ON THE BRIEFING?

8             **MR. STEWART:**  SURE, YOUR HONOR.  THE GOVERNMENT IS

9   CONTENT, WE THINK WE HAVE STATED THE RELEVANT POINTS,

10  OBJECTIONS, AND RESPONSES THERE.  AND WE WELCOME THE -- YOU

11  KNOW, THE CONTINUED OPPORTUNITY TO WORK WITH THE SET OF

12  CHILDREN AT ISSUE HERE AND OTHERWISE REPRESENTED BY THE LEGAL

13  AID SOCIETY.

14            **THE COURT:**  OKAY.

15            AND TURNING TO MS. L., I WILL LOOK FORWARD TO THE

16  STATUS REPORTS TOMORROW AND TO MEETING WITH COUNSEL FRIDAY

17  AFTERNOON.

18            ARE THERE ANY HOUSEKEEPING MATTERS WE NEED TO

19  ADDRESS IN THE MS. L. CASE?

20            **MS. LEVY:**  I AM SORRY, YOUR HONOR.

21            **THE COURT:**  YES.

22            **MS. LEVY:**  THIS IS MS. LEVY FROM THE LEGAL AID

23  SOCIETY AGAIN.

24            COULD WE JUST HAVE AN OPPORTUNITY TO REPLY TO THE

25  GOVERNMENT'S PAPERS THAT WERE SUBMITTED ABOUT AN HOUR BEFORE

AUGUST 8, 2018

1    THIS CONFERENCE?

2              **THE COURT:**  YES.  HOW MUCH TIME DO YOU REQUEST?

3              **MS. LEVY:**  UNTIL THE END OF THE DAY TOMORROW?

4              **THE COURT:**  YES, THAT WOULD BE FINE.  SO I WILL WAIT

5    FOR THAT REPLY.

6              **MS. LEVY:**  THANK YOU.

7              **THE COURT:**  THEN ON MS. L., ANY HOUSEKEEPING MATTERS

8    OR ARE WE CONTENT TO WAIT FOR THE STATUS REPORTS AND HEARING

9    ON FRIDAY?

10             **MR. GELERNT:**  THIS IS MR. GELERNT, YOUR HONOR.

11             NO, I THINK WE WOULD JUST SUBMIT THE STATUS REPORT

12   TOMORROW.

13             **THE COURT:**  OKAY.

14             MR. STEWART?

15             **MR. STEWART:**  LIKEWISE FOR THE GOVERNMENT TOMORROW,

16   WE LOOK FORWARD TO SUBMITTING EVERYTHING IN THE STATUS REPORT

17   TOMORROW.

18             **THE COURT:**  EXCELLENT.

19             I DID SPEAK WITH JUDGE PECHMAN TODAY.  SHE INDICATED

20   THAT THAT WASHINGTON CASE IS BEING TRANSFERRED SO I WILL JUST

21   WAIT AND I WILL LOOK FORWARD TO THE NEXT STAGE IN THAT CASE AS

22   WELL, AND WAIT FOR THE CASE TO BE OFFICIALLY TRANSFERRED AND

23   THEN FOR ANY COUNSEL, INCLUDING, OF COURSE, PLAINTIFFS'

24   COUNSEL IN THAT CASE, TO CONTACT THE COURT.

25             ARE THERE ANY OTHER MATTERS?

AUGUST 8, 2018

```
 1        I DO -- BEFORE WE SIGN OFF, JUST TO BE CLEAR, THE
 2   STAY WILL REMAIN IN PLACE PENDING A DETERMINATION ON THE, I
 3   GUESS AT THIS POINT IT WOULD BE THE INJUNCTIVE RELIEF.  I
 4   THINK IN EFFECT A TRO HAS BEEN IN PLACE, EITHER THROUGH MS. L.
 5   OR THE MMM CASE.  I WANT TO KEEP THAT IN PLACE PENDING THE
 6   COURT'S DETERMINATION OF THE ISSUES AND RULING ON IT.
 7        IF ADDITIONAL BRIEFING IS NEEDED, I WILL REACH OUT
 8   TO COUNSEL AND INVITE FURTHER BRIEFING, EITHER ON THE 240, 235
 9   ISSUES OR ANY OTHER ISSUES THAT MIGHT BE RELEVANT.  OTHERWISE,
10   IT WOULD BE MY INTENTION, BASED ON ALL OF THE BRIEFING BEFORE
11   THE COURT, AS WELL AS THE ARGUMENT TODAY, TO TAKE IT UNDER
12   SUBMISSION.  AND THEN TO ISSUE AN ORDER ADDRESSING,
13   ULTIMATELY, THE REQUEST FOR THE PRELIMINARY INJUNCTION AND
14   MANDAMUS, AND ADDRESS ALL OF THE ISSUES IN AN ORDER TO FOLLOW,
15   BUT PENDING THAT ORDER TO KEEP THE STAY IN PLACE.
16        ANY FINAL --
17        MR. BEST:  YOUR HONOR, THIS IS --
18        THE COURT:  YES.
19        MR. BEST:  SORRY, YOUR HONOR, THIS IS MR. BEST,
20   HOGAN LOVELLS, FOR MMM.
21        JUST TO CLARIFY, TO REITERATE THAT THERE ISN'T
22   CURRENTLY ANY TRO OR STAY IN PLACE IN -- BEFORE JUDGE
23   FRIEDMAN.  BUT I UNDERSTAND -- I THINK WHAT I UNDERSTAND THE
24   COURT TO BE SAYING IS THAT THE STAY THAT IS IN PLACE IN MS. L.
25   IS GOING TO CONTINUE AFTER THIS HEARING UNTIL THERE HAS BEEN A
```

AUGUST 8, 2018

 1  DETERMINATION ON THE PRELIMINARY INJUNCTION.

 2            **THE COURT:**  YES.

 3            **MR. BEST:**  I JUST WANTED TO MAKE SURE -- OKAY.

 4  GREAT.  I JUST WANTED TO MAKE SURE THAT THAT INCLUDES THE

 5  ENTIRE FAMILY UNIT, THE PARENT AND THE CHILD.

 6            **THE COURT:**  YES.

 7            PERHAPS I CAN INQUIRE OF MR. STEWART.

 8            ARE YOU CONTENT TO PROCEED THAT WAY, OR DO YOU FEEL

 9  IT IS NECESSARY FOR THE COURT TO ISSUE A STAY OR A TRO IN THE

10  MMM CASE PENDING THE COURT'S ORDER ON THIS ISSUE?

11            **MR. STEWART:**  I MEAN, I GUESS, ASIDE FROM OUR JUST

12  GENERAL OBJECTION TO STAYS, YOUR HONOR, I THINK MAYBE THE

13  WAY -- I THINK ONE THING TO CLARIFY.  YOUR HONOR'S TRO APPLIES

14  ONLY TO CLASS MEMBER PARENTS, TO MY UNDERSTANDING, IS THAT THE

15  MMM TRO -- OR SORRY -- PAUSE APPLIED TO A BROADER GROUP.

16            I SUPPOSE THAT THE ORDERLY THING TO DO WOULD BE TO,

17  YOU KNOW, CONTINUE THAT PAUSE PENDING THE COURT'S RESOLUTION

18  OF ALL THE STAY ISSUES AND MATTERS DISCUSSED TODAY.  I ASSUME

19  THAT'S YOUR HONOR'S INTENT.

20            I MEAN, WE, OF COURSE, WOULD DISAGREE WITH FURTHER

21  EXTENSION OF THE STAYS BUT, YOU KNOW, IN THE INTEREST OF

22  CLARITY AND WHAT WE UNDERSTOOD THE COURT TO BE GETTING AT WITH

23  YOUR MONDAY ORDER EXTENDING THE STAY TO WEDNESDAY, YOU KNOW,

24  OUR UNDERSTANDING WAS THAT THAT IS WHAT YOU INTENDED TO DO WAS

25  TO MAINTAIN A PAUSE PENDING YOUR RESOLUTION.

AUGUST 8, 2018

1          **THE COURT:**  YES.  SO PERHAPS TO CLOSE OUT THAT

2    ISSUE, WHAT I WOULD BE INCLINED TO DO IS CONTINUE THE STAY IN

3    THE MS. L. CASE.  AND, AS THE GOVERNMENT CHARACTERIZES IT,

4    CONTINUE THE PAUSE IN THE MMM CASE PENDING THE COURT'S RULING

5    ON THIS MATTER.

6          IS IT SO STIPULATED?

7          **MR. STEWART:**  YOU KNOW, SURE, YOUR HONOR, PENDING --

8    I MEAN, YOU KNOW, SUBJECT TO OUR GENERAL OBJECTION WE

9    UNDERSTAND THAT DIRECTIVE.

10          MAY I RAISE ONE POTENTIAL CARVE OUT FROM THAT?

11          **THE COURT:**  YES.

12          **MR. STEWART:**  THERE HAVE BEEN, IN SOME CASES, YOUR

13   HONOR, SITUATIONS WHERE TO ACHIEVE REUNIFICATION, I UNDERSTAND

14   IT, WITH A PARENT OUTSIDE OF THE UNITED STATES, WE HAVE COME

15   TO MMM COUNSEL AND ASKED IF THEY -- IF THEY WOULD AGREE TO

16   THOSE REUNIFICATIONS IN PARTICULAR CASES.  MY UNDERSTANDING IS

17   IN THE PARTICULAR CIRCUMSTANCES OF THE CASES WE WOULD COME TO

18   THEM, AND IN A FEW THEY HAVE CONSENTED TO REMOVAL.

19          I WOULD JUST ASK THAT ANY CONTINUED PAUSE BE SUBJECT

20   TO THAT SORT OF AGREEMENT WITH COUNSEL REPRESENTING THE

21   CHILDREN AT ISSUE.

22          **THE COURT:**  WOULD YOU -- PERHAPS IT MAY BE BEST IF

23   YOU -- IF COUNSEL AND MMM DO A JOINT MOTION AND ORDER TO

24   REFLECT THAT, SO A PAUSE OF THE CASE AS WELL AS THE CARVE OUT.

25   ANY OBJECTION TO THAT?  AND SUBMITTING AN ORDER BY, SAY,

1   TOMORROW, 12:00 O'CLOCK?

2           **MR. STEWART:**  YOUR HONOR, THIS IS MR. STEWART AGAIN.

3           CAN WE -- IT MIGHT BE WORTH IT FOR COUNSEL TO

4   DISCUSS, YOU KNOW, POTENTIAL, YOU KNOW, APPLICATION OF THE

5   PAUSE, KIND OF IN THE MEANTIME WHILE THE COURT IS RESOLVING

6   THE STAY ISSUES.  IF THAT'S -- YOU KNOW, THE SORT OF CARVE

7   OUTS OR PLACES WHERE IT MAY NOT BE APPROPRIATE TO APPLY IT.

8   IF THAT MAKES SENSE.

9           **THE COURT:**  SO DO YOU NEED MORE TIME THAN THAT, OR

10  ARE YOU INVITING THE COURT SIMPLY TO ISSUE AN ORDER AND NOT

11  TRY TO WORK THIS MATTER OUT?

12          **MR. STEWART:**  HOW ABOUT, I THINK THE RIGHT APPROACH,

13  YOUR HONOR, IF I MAY SUGGEST, IS THAT THE COURT CAN ISSUE AN

14  ORDER AND THEN IF WE NEED FURTHER COURT ACTION ON IT WE CAN

15  BRING IT TO YOUR HONOR.

16          **THE COURT:**  OKAY.  THAT'S FAIR ENOUGH.

17          SO WE WILL CONTINUE THE STAY IN THE MS. L. CASE.

18  AND JUST SO THERE IS CLARITY, WE WILL ISSUE JUST A VERY BRIEF

19  TRO IN THE MMM CASE, SO THAT IT IS CLEAR THE STAY WOULD REMAIN

20  IN PLACE AS TO BOTH PARENT AND CHILD IN THESE TWO CASES, MS.

21  L. AND MMM.

22          AND THEN I WILL ENDEAVOR, PENDING THAT STAY, TO

23  ADDRESS THE ISSUES AS SOON AS POSSIBLE.  AND IF ADDITIONAL

24  BRIEFING IS NEEDED I WILL NOTIFY COUNSEL.

25          ALL RIGHT.  I THINK I AM PREPARED TO CLOSE THE

AUGUST 8, 2018

1   HEARING AT THIS TIME.  AND THEN WITH MS. L., I WILL LOOK

2   FORWARD TO HEARING FROM COUNSEL ON FRIDAY.

3              **MR. GELERNT:**  THANK YOU, YOUR HONOR.

4              **THE COURT:**  THANK YOU.

5              **MR. STEWART:**  THANK YOU, YOUR HONOR.

6

7                          *   *   *

8              I CERTIFY THAT THE FOREGOING IS A CORRECT
               TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
9              IN THE ABOVE-ENTITLED MATTER.

10             S/LEEANN PENCE                  8/8/2018
               LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        AUGUST 8, 2018