UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

| | |
|---|---|
| _____ ) | |
| MS. L, ET AL., ) | |
| )CASE NO. 18CV0428-DMS | |
| PETITIONERS-PLAINTIFFS, ) 18CV1626-DMS | |
| ) 18CV1832-DMS | |
| VS. ) | |
| )SAN DIEGO, CALIFORNIA | |
| U.S. IMMIGRATION AND CUSTOMS ) AUGUST 17, 2018 | |
| ENFORCEMENT ("ICE"), ET AL., ) 1:00 P.M. CALENDAR | |
| ) | |
| RESPONDENTS-DEFENDANTS. ) | |
| ---------------------------------------- | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                               OFFICIAL COURT REPORTER
                               UNITED STATES COURTHOUSE
                               333 WEST BROADWAY, ROOM 1393
                               SAN DIEGO, CALIFORNIA 92101

COUNSEL APPEARING TELEPHONICALLY:


FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SCOTT STEWART, ESQ.
                           SARAH B. FABIAN, ESQ.
                           AUGUST FLENTJE, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


ALSO APPEARING:            ZACHARY W.H. BEST, ESQ.
                           JUSTIN W. BERNICK, ESQ.
                           JEFFIFER LEVY, ESQ.

1   **SAN DIEGO, CALIFORNIA – FRIDAY, AUGUST 17, 2018 – 1:10 P.M.**

2                                   \*   \*   \*

3           **THE CLERK:**   NO. 18 ON CALENDAR, CASE NO. 18CV0428,

4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5   STATUS CONFERENCE.

6           **THE COURT:**  GOOD AFTERNOON, COUNSEL.

7           I HAVE GOT AN INDICATION THAT WE HAVE, FOR THE

8   GOVERNMENT MR. STEWART, MS. FABIAN, MR. FLENTJE; FOR

9   PLAINTIFFS IN MS. L. MR. LEE GELERNT; AND FOR THE MMM

10  PLAINTIFFS MR. BERNICK AND MR. BEST.

11          DO I HAVE EVERYONE?

12          **MR. STEWART:**  YES, YOUR HONOR.  FOR THE GOVERNMENT.

13          **MR. GELERNT:**  YES, YOUR HONOR, FOR MS. L.

14  PLAINTIFFS.

15          **MR. BEST:**  YES FOR MMM.

16          **THE COURT:**  OKAY.  THANK YOU.

17          I HAVE READ ALL OF THE SUBMISSIONS.  AND AGAIN I

18  THANK YOU FOR THE JOINT STATUS REPORT.  AND IT IS APPARENT, ON

19  THE JOINT PLAN FOR REUNIFYING THOSE PARENTS WITH CHILDREN OUT

20  OF COUNTRY, THAT THE PARTIES PUT IN A LOT OF EFFORT, AND THE

21  PROPOSED JOINT PLAN LOOKS EXCELLENT.

22          THERE ARE -- THE ONE ISSUE RELATES TO A DESIRE OF

23  SOME OF THOSE PARENTS WHO HAVE ALREADY BEEN REMOVED TO RETURN

24  TO THE COUNTRY TO PURSUE THEIR ASYLUM CLAIMS WITH THEIR

25  CHILDREN, AND WE CAN SPEAK TO THAT IN A MOMENT.

1          PERHAPS WHAT WE CAN DO, INITIALLY, IS JUST RUN

2     THROUGH THE STATUS REPORT -- I HAVE SOME QUESTIONS ABOUT THE

3     NUMBERS -- AND THEN GET TO THE LARGER ISSUES AS FAR AS THE

4     REUNIFICATION OF PARENTS WHO HAVE ALREADY BEEN REMOVED.

5          SO LOOKING AT THE JOINT STATUS REPORT, I AM LOOKING

6     AT PAGE 2 WHERE EVERYTHING HAS BEEN LAID OUT NUMERICALLY.

7     THERE IS AN INDICATION OF 154 PARENTS WHO INDICATED A DESIRE

8     AGAINST REUNIFICATION, AND THESE ARE PARENTS OUTSIDE OF THE

9     U.S.

10         SO IS THIS NUMBER, DOES THAT MEAN OF THE 299 OR 300

11    PEOPLE WHOM THE GOVERNMENT HAD CONTACT INFORMATION THAT 154 OF

12    THEM HAVE INDICATED THEY DO NOT DESIRE TO BE REUNIFIED, OR

13    WHAT DOES THAT MEAN?

14         **MR. STEWART:**  YOUR HONOR, I THINK PROBABLY TO DRILL

15    DOWN --

16         THIS IS SCOTT STEWART.

17         I AM NOT SURE THERE IS A COMPLETE CONGRUITY OR

18    OVERLAP BETWEEN THOSE PARTIES.  I THINK A DECENT PORTION OF

19    THAT GROUP WERE, YOU KNOW, WERE -- SOME PORTION OF THAT GROUP

20    WERE FOLKS WHO DECIDED TO SIMPLY BE REMOVED FROM THE COUNTRY

21    IN ACCORDANCE WITH THEIR REMOVAL ORDERS AND NOT TO BE

22    REUNIFIED BEFORE DOING SO.  IT MAY HAVE BEEN AT THE TIME JUST

23    THE ELECTION THAT THEY MADE -- SUBSEQUENT CONTACT.

24         **THE COURT:**  SO THAT 154, THEN, PROBABLY DOESN'T HAVE

25    ANYTHING TO DO WITH THE 366 NUMBER, ADULTS OUTSIDE THE

AUGUST 17, 2018

```
 1    COUNTRY.
 2              MR. STEWART:  I THINK THAT IS RIGHT, YOUR HONOR.  I
 3    MEAN, THERE MAY BE SOME OVERLAP, I SUSPECT, BUT NOT A -- SOME
 4    OVERLAP BUT NOT KIND OF A CORRELATION OR ANYTHING DEFINITIVE
 5    THERE.
 6              THE COURT:  OKAY.  THEN THE NEXT NUMBER IS 83
 7    PRESENTLY PREVENTED FROM REUNIFICATION DUE TO SEPARATE
 8    LITIGATION.
 9              ARE THOSE THE NEW YORK PLAINTIFFS?
10              MR. STEWART:  YES, YOUR HONOR.  THOSE ARE LARGELY
11    THE NEW YORK PLAINTIFFS.  AND I THINK SOME ARE BEING SORT OF
12    REUNIFIED KIND OF IN STREAMS, YOU KNOW, WHEN THINGS ARE
13    POSSIBLE AND WE WORK THINGS OUT WITH COUNSEL AND SO FORTH.
14    THAT IS WHY WE SORT OF SAID AFFECTED BY OTHER LITIGATION, SO
15    SOME OF THAT IS JUST KIND OF BEING WORKED OUT WITH ATTORNEYS
16    KIND OF THE SIDE OF THINGS.
17              THE COURT:  DO WE HAVE MS. LEVY OR MR. REITER ON THE
18    LINE, BY ANY CHANCE?  ANY COUNSEL FROM NEW YORK FOR THE NEW
19    YORK PLAINTIFF CHILDREN?
20              IT SEEMS TO ME, MR. STEWART, THAT GIVEN THE COURT'S
21    ORDERS YESTERDAY, AND PARTICULARLY THE ONE IN THE NEW YORK
22    CASES, AND THEN IN LIGHT OF THE MMM RULING WITH RESPECT TO THE
23    GRANT OF THE TRO AND SHOWING OF A LIKELIHOOD OF SUCCESS OF THE
24    CHILDREN HAVING THEIR OWN INDEPENDENT ASYLUM PROCESS, THAT THE
25    83, OR WHATEVER THE NUMBER IS, OF CHILDREN IN NEW YORK, THAT
```

1    THIS WOULD BE AN OPPORTUNE TIME FOR THE GOVERNMENT AND THOSE

2    PLAINTIFFS' ATTORNEYS TO MEET AND CONFER AGAIN.  AND IT WOULD

3    SEEM THAT ALL OF THOSE CHILDREN COULD NOW BE REUNIFIED, AND

4    EITHER DETAINED TOGETHER OR RELEASED INTO THE COMMUNITY.

5           DO YOU AGREE, MR. STEWART?

6           **MR. STEWART:**  I THINK THAT IS LARGELY UNDERWAY, YOUR

7    HONOR.  MOST ARE CURRENTLY IN THAT PROCESS.

8           I THINK ANOTHER SET OF THEM ARE -- DEAL WITH THE

9    PARENTS WHO ARE OUTSIDE OF THE UNITED STATES AND THEREFORE ARE

10   SUBJECT TO WHAT WE ARE -- THE COURT'S DISCUSSION WITH THE PLAN

11   TODAY.  WE CAN CONFER OR SEE HOW IT IS -- WHERE THINGS STAND

12   AND CONFER AS APPROPRIATE WITH THOSE PLAINTIFFS.

13          **THE COURT:**  OKAY.  THANK YOU.

14          THE NEXT NUMBER OF INTEREST IS THE 9 ADULTS RELEASED

15   INTO THE INTERIOR.  THAT WAS A LARGER NUMBER, SO AM I CORRECT

16   IN ASSUMING THAT SOME OF THESE PARENTS HAVE BEEN LOCATED, AND

17   THE 9 REFLECTS PARENTS THAT ARE STILL NOT LOCATED?

18          **MR. STEWART:**  I THINK WE ARE STILL DRILLING DOWN.

19   PART OF THE REASON I THINK THAT NUMBER WENT DOWN, YOUR HONOR,

20   WAS THAT THAT WAS ONE OF THOSE ITEMS THAT WE BROKE OUT A

21   LITTLE BIT MORE.  I KNOW THAT PREVIOUSLY YOUR HONOR HAD ASKED

22   A LITTLE BIT ABOUT SOME OF THE NUMBERS AND WHETHER THERE COULD

23   BE MORE GRANULARITY, AND THAT WAS ONE OF THOSE IN WHICH WE

24   JUST -- WE WERE ABLE TO DO THAT.

25          SO THAT'S ONE REASON WHY I THINK IT WENT DOWN.  I

AUGUST 17, 2018

 1   THINK THAT'S PART OF WHAT'S GOING ON THERE.

 2          **THE COURT:**  HAVE ANY OF THE PARENTS IN THE INTERIOR

 3   BEEN LOCATED AND CONTACTED?

 4          **MR. STEWART:**  OF THOSE 9 I THINK THERE ARE -- THEY

 5   KIND OF FALL INTO DIFFERENT BUCKETS, YOUR HONOR.  I MEAN, SOME

 6   ARE HELD UP BECAUSE WE HAVEN'T MADE CONTACT, SOME ARE MAYBE IN

 7   A RED FLAG CATEGORY.  SOME MAY BE IN THAT SEPARATE LITIGATION

 8   CATEGORY.  OTHERS WE HAVE MADE CONTACT, I BELIEVE, BUT WE ARE

 9   STILL WORKING ON REUNIFICATION.  SO THERE ARE A FEW DIFFERENT

10   BUCKETS AND WE ARE TRYING TO WORK THOSE THROUGH.

11          **THE COURT:**  WHAT IS THE -- JUST BRIEFLY, WHAT IS THE

12   STATUS OF THE REUNIFICATION PLAN WITH RESPECT TO PARENTS WHO

13   WERE RELEASED IN THE INTERIOR AND INITIALLY NOT FOUND?

14          **MR. STEWART:**  I THINK THINGS ARE ONGOING THERE, YOUR

15   HONOR.  I WOULD HAVE TO I THINK -- I BELIEVE WE ARE REUNIFYING

16   KIND OF AS WE MAKE CONTACT AND ARE ABLE TO JUST COMPLETE

17   THINGS THERE.  I DON'T HAVE THE NUMBERS, LATEST, FOR THAT

18   COHORT SPECIFICALLY.

19          **THE COURT:**  BUT THERE IS SOME SUCCESS?

20          **MR. STEWART:**  THAT IS MY UNDERSTANDING, YES, YOUR

21   HONOR.  YEAH.  YES, THERE IS SUCCESS ON THAT.

22          **THE COURT:**  OKAY.  ON THE NEXT STATUS REPORT I WOULD

23   LIKE SOME ADDITIONAL INFORMATION ON THAT, AS WELL.  SO IF YOU

24   COULD PROVIDE A STATUS AS TO HOW THE REUNIFICATION IS GOING

25   FOR THOSE PARENTS IN THE INTERIOR, THAT WOULD BE APPRECIATED.

AUGUST 17, 2018

 1           THEN ON THE 366, WHAT'S -- WHAT HAS HAPPENED THERE?

 2   THERE WERE, AT LAST REPORTING, 299 WHO THEIR CONTACT

 3   INFORMATION WAS DISCOVERED.  WHAT'S THE UPDATE?

 4           MR. STEWART:  MY UNDERSTANDING, YOUR HONOR, IS THAT

 5   WE HAVE -- WE ARE CONTINUOUSLY WORKING TO MAINTAIN OR, YOU

 6   KNOW, MAKE CONTACT WITH PARENTS OUTSIDE OF THE UNITED STATES.

 7   I BELIEVE WE HAVE CONTACT INFORMATION FOR ALMOST ALL OF THAT

 8   366, AND THAT WE ARE PROVIDING THAT CONFIRMATION TO THE ACLU

 9   STEERING COMMITTEE AS THINGS KIND OF PROCEED.

10           THE COURT:  SO THE NUMBER -- I DON'T HAVE THE NUMBER

11   IN FRONT OF ME, BUT IT WAS OVER 20 WHERE THE GOVERNMENT HAD NO

12   CONTACT INFORMATION, AT THE LAST STATUS REPORT.  IS THAT STILL

13   THE NUMBER, OR HAS THAT GONE DOWN?

14           MR. STEWART:  I DON'T HAVE -- I DON'T BELIEVE I HAVE

15   AN UPDATE ON THAT NUMBER, YOUR HONOR.  BUT WE WILL WORK ON

16   THAT.  WE WILL WORK ON THAT NUMBER.

17           THE COURT:  AND THEN FOR -- THIS WOULD BE A QUESTION

18   EITHER FOR GOVERNMENT OR MR. GELERNT.

19           IS THERE ANY STATUS ON THE NUMBER OF PARENTS WHO

20   HAVE BEEN CONTACTED AND HAVE MADE AN ELECTION DECISION?  AND

21   THE ELECTION I AM SPEAKING ABOUT IS EITHER BEING REUNIFIED IN

22   THE HOME COUNTRY OR AGREEING TO REMAIN SEPARATED TO ALLOW

23   THEIR CHILDREN TO PURSUE THE ASYLUM HERE IN COUNTRY.

24           MR. GELERNT:  YOUR HONOR, WE HAVE BEEN MAKING CALLS,

25   AND WE HAVE CALLED A GOOD MANY, MORE THAN A FOURTH, MORE THAN

```
 1  A -- AROUND A THIRD OF THEM.  WE ARE, UNFORTUNATELY, NOT
 2  REACHING MANY PEOPLE.  IT SEEMS THE PHONE NUMBERS MAY BE
 3  INOPERATIVE OR SOME PEOPLE MAY BE IN HIDING.  SO I THINK WE
 4  ARE GOING TO BE CIRCLING BACK WITH THE GOVERNMENT TO CHECK
 5  THOSE NUMBERS.
 6          BUT WE HAVE REACHED PEOPLE WHO HAVE MADE IT CLEAR
 7  THAT THEY WOULD LIKE TO BE REUNIFIED IN THEIR HOME COUNTRY.
 8  WE STILL ARE -- WE ARE GOING TO HAVE SECOND CALLS WITH THEM TO
 9  MAKE SURE THEY UNDERSTOOD ALL OF THEIR OPTIONS AND ALL.  BUT
10  THERE ARE PEOPLE WHO ARE ELECTING TO REUNIFY IN THEIR HOME
11  COUNTRY, AND WE WOULD LIKE TO DO THAT AS QUICKLY AS POSSIBLE.
12          THE COURT:  SO IF THAT IS APPROXIMATELY A THIRD,
13  DOES THAT MEAN THAT IS APPROXIMATELY 100?
14          MR. GELERNT:  WE HAVE CALLED MORE THAN 100.  I HAVE
15  TO GET THE MOST UPDATED INFORMATION, I THINK IT IS AROUND 120
16  NOW THAT WE HAVE CALLED.  BUT I THINK WE HAVE ONLY REACHED A
17  LITTLE LESS THAN 50.  SO THAT HAS BEEN A PROBLEM.
18          THE COURT:  AND OF THOSE 50, A NUMBER OF THEM ARE
19  INDICATING THEY WOULD LIKE TO BE REUNIFIED.  AND SO I WOULD
20  ASSUME THAT IN THAT REUNIFICATION PROCESS, AS YOU INDICATE,
21  THAT WOULD OCCUR IN THEIR HOME COUNTRY, AND THAT THEY WOULD BE
22  MAKING A FULL WAIVER OF THEIR CHILDREN'S ASYLUM RIGHTS.  IS
23  THAT CORRECT?
24          MR. GELERNT:  I THINK THEY WOULD BE GIVING UP THEIR
25  CHILD'S ASYLUM CLAIM HERE.  BUT I THINK THAT IS -- YOU KNOW, I
```

AUGUST 17, 2018

1   DON'T KNOW THAT THEY WOULD BE GIVING UP FUTURE ASYLUM CLAIMS.

2   BUT I THINK YOUR QUESTION IS WHETHER THEY WERE GIVING UP THEIR

3   ASYLUM CLAIM NOW, AND I THINK THAT IS RIGHT.

4           THERE ARE PARENTS WHO HAVE INDICATED THAT IF IT IS

5   AN OPTION THEY WOULD LIKE TO COME BACK TO THE UNITED STATES.

6   AND I NOTE THAT BECAUSE WE ARE GOING TO TALK ABOUT THAT LATER.

7           **THE COURT:**   YES.

8           **MR. GELERNT:**   BUT THERE ARE CERTAINLY FAMILIES WHO

9   WOULD LIKE TO BE REUNIFIED IN THEIR HOME COUNTRY, AND THEIR

10  CHILDREN SIMPLY HAVE THEIR CASES DISMISSED NOW.  YES, YOUR

11  HONOR.

12          **THE COURT:**   OKAY.  THANK YOU.

13          AND THEN LET'S GO AHEAD AND MOVE TO THE LARGER

14  ISSUES.

15          FOR NEXT WEEK, NEXT THURSDAY'S STATUS REPORT, WHAT I

16  WOULD APPRECIATE, NOW THAT WE HAVE THE PLAN IN PLACE EXCEPT

17  FOR THIS ONE OVERARCHING ISSUE, IS A STATUS REPORT THAT IS

18  MORE DETAILED WITH RESPECT TO HOW MANY, FOR EXAMPLE OF THE

19  366, WHAT'S THE NUMBER WHERE YOU HAVE CONTACT INFORMATION,

20  WHAT'S THE NUMBER OF PARENTS WHO HAVE BEEN CONTACTED, WHAT IS

21  THE NUMBER OF PARENTS WHO DESIRE REUNIFICATION OR SEPARATION,

22  THOSE KINDS OF DETAILED NUMBERS.

23          AND THEN A DETAILED STATUS AS TO HOW EVERY -- BOTH

24  SIDES ARE DOING ON THE FIVE PROCESSES THAT ARE IN PLACE TO THE

25  EXTENT THEY ARE IN PLAY, LIKE, NUMBER ONE, IDENTIFYING AND

AUGUST 17, 2018

1    RESOLVING THE SAFETY ISSUES, AND SO ON.

2         IT SEEMS TO ME THAT A LOT CAN BE DONE AND IS

3    CURRENTLY ONGOING.  AND SO A DETAILED STATUS REPORT LIKE THAT

4    NEXT WEEK WOULD BE APPRECIATED.

5         ON THE LARGER ISSUES, WITH RESPECT TO THE PLAN

6    REUNITING PARENTS WHO HAVE BEEN REMOVED, LET'S -- PERHAPS WE

7    CAN START FIRST WITH THE MMM CASE.

8         THAT IS SET FOR STATUS CONFERENCE NEXT FRIDAY, A

9    WEEK FROM TODAY.  AND AS I SAID IN THE ORDER, AND WE JUST

10   REITERATE HERE, I TRIED TO GIVE AS MUCH GUIDANCE AS I COULD IN

11   THE ORDER.  AND WHAT I AM HOPING TO DO, WHAT I HOPE WILL OCCUR

12   OVER THE NEXT WEEK, IS THAT THE PARTIES WILL MEET AND CONFER

13   IN EARNEST, AND ATTEMPT TO ARRIVE AT SOLUTIONS.

14        OF COURSE, THE PARTIES ARE FREE TO PURSUE WHATEVER

15   AVENUES THEY DESIRE FROM A LEGAL STANDPOINT, BUT ABSENT AN

16   APPEAL, OR SOMETHING OF THAT NATURE, I AM HOPING THAT THE

17   PARTIES WILL MEET AND CONFER AND PUT TOGETHER A SOLUTION TO

18   THIS SITUATION, AND SO THAT WE CAN MOVE FORWARD QUICKLY AND

19   EFFICIENTLY.

20        AND IN DOING THAT, I THINK IT IS IMPORTANT TO NOTE

21   THAT THIS WILL NOT BE A PERFECT PROCESS.  THIS IS AN ENORMOUS

22   UNDERTAKING, INVOLVING A SITUATION OF THE GOVERNMENT'S OWN

23   MAKING.  BUT WE WILL NEVER BE ABLE TO COME UP WITH A PROCESS

24   THAT IS PERFECT, OR THAT RESTORES ALL RIGHTS AS IF THIS

25   INCIDENT NEVER HAPPENED.  ALL WE CAN DO IS THE BEST WE CAN DO

AUGUST 17, 2018

```
 1  UNDER THE PRESENT CIRCUMSTANCES.
 2          AND I THINK THE OVERARCHING CONSIDERATIONS, OF
 3  COURSE, ARE FAMILY UNITY AND AN ORDERED PROCESS WHERE RIGHTS
 4  ARE OBSERVED.  AND EFFICIENCY, SO THAT THIS ENTIRE INCIDENT
 5  CAN BE WRAPPED UP IN ACCORDANCE WITH LAW, AND THIS CHAPTER
 6  CLOSED.
 7          AND IN DOING THAT, I THINK WHAT I WOULD LIKE TO DO
 8  IS JUST PROVIDE SOME TENTATIVE OBSERVATIONS AS TO WHAT I THINK
 9  MAKES SENSE, WITH THE PROVISO THAT I WOULD KEEP AN OPEN MIND
10  AND BE SUBJECT TO BRIEFING BY THE PARTIES.  AND IF THE PARTIES
11  WOULD LIKE AN OPPORTUNITY TO BRIEF IT AND HAVE ARGUMENT, THEN
12  I AM AMENABLE TO THAT, AND WOULD INVITE THAT OPPORTUNITY.
13          BUT I WOULD LIKE THE PARTIES TO MEET AND CONFER WITH
14  THE BENEFIT OF THE COURT'S THOUGHTS, AT THIS TIME, ABOUT HOW
15  WE OUGHT TO PROCEED.  AND, HERE AGAIN, WITHOUT PREJUDICE TO
16  ANY ADDITIONAL BRIEFING AND ARGUMENT.
17          AND SO FOR THE MMM CASE, I WOULD ENCOURAGE THE
18  PARTIES TO, FIRST, STIPULATE TO A CLASS.  THAT SEEMS TO BE A
19  VERY EASY POINT.  AND THEN TO MOVE TO THE PROCESS ISSUES.
20          IT SEEMS TO ME THAT IF WE APPROACH THIS FROM
21  RETURNING TO THE STATUS QUO, THAT IS FAMILIES THAT ARE IN
22  COUNTRY PRESENTLY REUNIFIED -- AND THERE ARE MANY OF THEM, UP
23  TO 2,000 NOW.  THAT THOSE PARENTS WITH REMOVAL ORDERS, THAT IS
24  THEIR PRESENT SITUATION AND CIRCUMSTANCE, THOSE PARENTS WITH
25  CHILDREN -- THOSE PARENTS WITH REMOVAL ORDERS WHO ARE REUNITED
```

AUGUST 17, 2018

1  WITH THEIR CHILDREN, THAT THEIR CHILDREN BE PROVIDED AN
2  OPPORTUNITY TO PURSUE THEIR ASYLUM RIGHTS UNDER SECTION 235.
3  AND THAT IF THEY STATE A CREDIBLE FEAR, PASS THAT INTERVIEW,
4  THEN OF COURSE THEY MOVE ON TO THE NEXT STEP, UNDER THE INA,
5  TO THEIR 240 HEARING.
6          BUT THE NORMAL PROTOCOL WOULD FALL INTO PLACE UNDER
7  THE INA.  AND WHATEVER THE RESULT MAY BE, THERE IS A -- THE
8  LAW ALREADY HAS THAT OUTLINED.  SO, FOR EXAMPLE, IF THE CHILD
9  DOES NOT STATE A CREDIBLE FEAR, THEN THEY WOULD BE SUBJECT TO
10 EXPEDITED REMOVAL AND THE FAMILY WOULD BE SUBJECT TO REMOVAL
11 AT THAT TIME.  IF THEY STATE A CREDIBLE FEAR AND MOVE TO THE
12 NEXT STAGE, THEN IT MAY BE THAT UNDER THE PRIOR PRACTICES AND
13 PROCEDURES THE FAMILY REMAINS TOGETHER WHILE THE CHILD PURSUES
14 HIS OR HER RELIEF TO THE NEXT STAGES OF THE IMMIGRATION
15 PROCESS.
16         SO THAT'S WHAT I WOULD ENVISION FROM A PRACTICAL
17 STANDPOINT WITH THE MMM CHILDREN.
18         FOR THE MS. L. AND THE REUNIFICATION PLAN -- AND
19 THIS RELATES TO THE MMM REQUEST AS WELL.  THE OVERARCHING GOAL
20 HERE IS REUNIFICATION.  AND IT SEEMS TO ME THAT THE
21 GOVERNMENT'S PLAN, WHICH CONTEMPLATES REUNIFICATION IN THE
22 HOME COUNTRY, IS THE APPROPRIATE PLAN.  THAT WITH PARENTS WHO
23 ARE ALREADY REMOVED AND IN THEIR HOME COUNTRY, THAT THEY
24 SIMPLY MAKE A DETERMINATION WHETHER TO REUNIFY WITH THEIR
25 CHILD, WAIVING THOSE CHILDREN'S PRESENTLY EXISTING ASYLUM

AUGUST 17, 2018

1   RIGHTS, AND THEN REUNIFYING IN THE HOME COUNTRY.

2            THOSE PARENTS WHO ELECT NOT TO BE REUNIFIED CAN MAKE

3   THAT CHOICE, AND THEN THEIR CHILDREN WOULD REMAIN IN COUNTRY.

4   I ASSUME THEY ARE IN O.R.R. CUSTODY, AND THEY COULD BE

5   PROCESSED ACCORDING TO THE NORMAL PROCEDURES UNDER THE TVPRA.

6   THEY WOULD TRULY BE UNACCOMPANIED MINORS, AND THEY WOULD BE

7   SUBJECT, I BELIEVE, TO A 240 HEARING, AND TO PLACEMENT WITH

8   SPONSORS OR OTHER FAMILY MEMBERS.  THE NORMAL COURSE UNDER THE

9   NORMAL LAW WOULD SEEM APPLICABLE.

10           SO THOSE ARE MY TENTATIVE THOUGHTS.

11           I DO UNDERSTAND THE PLAINTIFFS' POSITION ABOUT

12  HAVING SOME OF THESE PARENTS FLOWN BACK TO THE UNITED STATES

13  SO THAT THEY COULD PURSUE ASYLUM REQUESTS JOINTLY WITH THEIR

14  CHILDREN.  BUT THAT -- I THINK THERE ARE MANY ISSUES WITH THAT

15  PROPOSAL.  AND THAT WOULD CERTAINLY BE A SIGNIFICANT

16  UNDERTAKING, AND WOULD BE OVER THE STRONG OBJECTION OF THE

17  GOVERNMENT.  I AM NOT SURE ABOUT ALL OF THE JURISDICTIONAL

18  ARGUMENTS THAT MAY BE RAISED.  AND THEN FROM A PRACTICAL

19  STANDPOINT IT SEEMS TO ME THAT IN THE BEST INTEREST OF THE

20  FAMILY WHAT WE ARE LOOKING FOR IS REUNIFICATION.  AND UNDER

21  THE PRESENT CIRCUMSTANCES THAT THAT REUNIFICATION OUGHT TO

22  OCCUR IN THE HOME COUNTRY.

23           SO THOSE ARE MY TENTATIVE THOUGHTS.  AND IT IS MY

24  HOPE THAT WITH THOSE OBSERVATIONS THE PARTIES CAN MOVE FORWARD

25  AND BRING REAL SOLUTIONS, AND CONTINUE TO BRING THIS CASE TO A

AUGUST 17, 2018

1   RELATIVELY QUICK AND EFFICIENT RESOLUTION.

2          SO PERHAPS FIRST I CAN INQUIRE OF MR. GELERNT OR

3   MR. BEST, MR. BERNICK.

4          WHAT WOULD YOU -- DO YOU WANT TO THINK ABOUT THAT

5   AND MEET AND CONFER WITH GOVERNMENT COUNSEL?  WHAT WOULD YOU

6   LIKE TO DO?

7          **MR. GELERNT:**  THIS IS MR. GELERNT.

8          I THINK WE CAN PROCEED WITH MEET AND CONFER WITH THE

9   GOVERNMENT, BUT I DO WANT TO RESERVE THE RIGHT THAT WE WOULD

10  MAYBE COME BACK TO YOU AND TAKE UP YOUR OFFER TO POTENTIALLY

11  BRIEF AND ARGUE THIS ISSUE.

12         AND I THINK -- I WILL LET THE MMM LAWYERS TALK FOR

13  THEIR CATEGORY.

14         YOU KNOW, BROADLY SPEAKING WE BELIEVE THAT THERE MAY

15  BE TWO RATIONALES FOR BRINGING PARENTS BACK.  ONE IS THE MMM

16  REASON THAT THOSE PARENTS NEED TO ASSIST THEIR CHILDREN IN THE

17  ASYLUM CLAIMS.  AND THAT -- I CAN LET THEM TALK TO THAT.

18         THE OTHER REASON WOULD BE THAT THERE MAY BE SPECIFIC

19  INDIVIDUALS WHO WERE MISLED OR COERCED INTO THINKING THE ONLY

20  WAY THEY COULD GET THEIR CHILDREN BACK WAS TO ACCEPT REMOVAL.

21         WE DON'T THINK THERE IS ULTIMATELY GOING TO BE THAT

22  MANY INDIVIDUALS WHO WANT TO COME BACK, AND ARE BASING IT ON

23  THAT THEORY OF THE ONES WE SPOKE TO NOW THERE IS NOT THAT

24  MANY.  BUT WE DO THINK, ESPECIALLY WITH THE INDIGENOUS

25  SPEAKERS, THAT THERE MAY BE INDIVIDUALS WHO ONLY UNDERSTOOD

1   THAT THEY COULD GET THEIR CHILDREN BACK BY ACCEPTING REMOVAL.

2   AND UNDER THOSE CIRCUMSTANCES WE DO BELIEVE THAT THERE WOULD

3   BE A STRONG ARGUMENT FOR BRINGING THEM BACK.

4          YOU KNOW, WE TAKE YOUR POINT THAT IT IS A BIGGER

5   DEAL TO BRING PARENTS BACK, BUT IF THE CIRCUMSTANCES

6   SURROUNDING THEIR REMOVAL REALLY WERE OF THAT NATURE, WE DO

7   THINK IT WOULD BE APPROPRIATE TO HAVE THEM BACK.

8          AND WE WOULD ALSO NOTE THAT THERE ARE ROUGHLY

9   BETWEEN 70 AND 90 PARENTS WHO WERE REMOVED AFTER YOUR

10  PRELIMINARY INJUNCTION ORDER, INCLUDING MANY WHO WERE REMOVED

11  WITHIN THE WEEK AFTER YOUR PRELIMINARY INJUNCTION ORDER.

12         YOU KNOW, THOSE PARENTS ESPECIALLY ARE ONES WE WOULD

13  LIKE TO TALK TO ABOUT EXACTLY WHAT HAPPENED WHEN THEY ACCEPTED

14  REMOVAL, GIVEN THAT YOUR PRELIMINARY INJUNCTION ORDER MADE

15  VERY CLEAR THAT THEY COULD BE REMOVED IF THEY KNOWINGLY WERE

16  GIVING UP THEIR CHILDREN, BUT THAT THEY DIDN'T NEED TO ACCEPT

17  REMOVAL TO HAVE REUNIFICATION.

18         SO I THINK WE WOULD LIKE TO THINK ABOUT IT, TALK TO

19  THE GOVERNMENT, TALK TO MORE PEOPLE ABROAD TO SEE EXACTLY WHAT

20  THE SITUATION IS.  BUT WE WOULD JUST LIKE TO RESERVE THE RIGHT

21  TO POTENTIALLY COME BACK TO YOU TO BRIEF THAT ISSUE.

22         **THE COURT:**  THANK YOU.  ON THAT, MR. GELERNT --

23  THANK YOU FOR MENTIONING THAT, AGAIN.

24         I DID NOTE, WITH INTEREST, THE COMMENT YOU MADE ON

25  PAGE 2 OF YOUR SEPARATE SUBMISSION, DOCUMENT 190, SETTING OUT

AUGUST 17, 2018

1    THE 73 PARENTS.  ONLY 4 WERE REMOVED AFTER THE JULY 16 TRO WAS

2    ISSUED.  I AM ASSUMING THAT MOST OF THESE PARENTS OSTENSIBLY

3    WAIVED REUNIFICATION, THE 73, AND WERE REMOVED.  BUT

4    YOUR POINT IS THAT THOSE MIGHT NOT HAVE BEEN KNOWING AND

5    INTELLIGENT WAIVERS?

6         **MR. GELERNT:**  WE WOULD LIKE TO CERTAINLY TALK TO

7    THOSE PARENTS.  I THINK WE WOULD LIKE TO TALK TO ALL OF THE

8    PARENTS THAT WERE REMOVED IF THEY UNDERSTOOD THEIR RIGHTS, BUT

9    CERTAINLY THE ONES THAT WERE AFTER YOUR PRELIMINARY INJUNCTION

10   DECISION WHERE YOU MADE ABSOLUTELY CLEAR THAT A PARENT DID NOT

11   NEED TO GIVE UP THEIR DEFENSES TO REMOVAL TO BE REUNITED, I

12   THINK, ARE RAISING PARTICULAR CONCERNS FOR US.

13        BUT WE DON'T WANT TO GET AHEAD OF OURSELVES BECAUSE

14   WE DON'T KNOW HOW MANY PARENTS WOULD WANT TO COME BACK AND HOW

15   MANY PARENTS WE BELIEVE WERE MISLED INTO ACCEPTING REMOVAL.

16        BUT I DO WANT TO HOLD THAT OUT AS A POSSIBILITY TO

17   BRIEF TO YOU, BECAUSE IF THERE GENUINELY WERE INDIVIDUALS WHO

18   THOUGHT THAT THEY HAD TO ACCEPT REMOVAL TO GET THEIR CHILD

19   BACK, THEN THAT WOULD BE EXTREMELY PROBLEMATIC IN OUR VIEW.

20   AND WE WOULD POTENTIALLY LIKE TO COME BACK TO YOU AND BRIEF

21   THAT.

22        **THE COURT:**  TO BE CLEAR, YOU ARE NOT CONTENDING THAT

23   THE GOVERNMENT ACTED IN CONTEMPT AND REMOVED PARENTS AFTER

24   JUNE 26 IN VIOLATION OF THE COURT'S ORDER.  AS I UNDERSTAND IT

25   YOU ARE SAYING AFTER JUNE 26, 73 PARENTS WERE REMOVED.  AND IT

1   MAY BE THAT THEY WERE COERCED OR DIDN'T UNDERSTAND WHAT WAS

2   GOING ON, AND AGREED TO BE REMOVED.

3            **MR. GELERNT:**  THAT'S RIGHT, YOUR HONOR.  I AM

4   ASSUMING, YOU KNOW, THAT THE GOVERNMENT HAS SAID THAT THEY

5   KNOWINGLY WAIVED THEIR RIGHTS.  AND I THINK THE QUESTION WILL

6   BE, TO WHAT EXTENT DID THEY UNDERSTAND WHAT THEIR RIGHTS WERE.

7            **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU.

8            AND, MR. BEST, MR. BERNICK, WHAT WOULD YOUR POSITION

9   BE?

10           **MR. BEST:**  GOOD AFTERNOON, YOUR HONOR.  THIS IS MR.

11  BEST FROM THE PLAINTIFFS.

12           WE ARE HAPPY TO MEET AND CONFER WITH THE GOVERNMENT

13  ON THE ISSUE OF WHAT SHOULD HAPPEN WITH FAMILIES IN WHICH A

14  PARENT HAS ALREADY BEEN REMOVED BUT THE CHILD REMAINS IN THE

15  COUNTRY.  WE ARE HAPPY TO MEET AND CONFER WITH THEM ON THAT.

16  AND WE WERE IN FACT GOING TO SUGGEST THAT VERY COURSE OF

17  ACTION TO YOU TODAY, SINCE WE HAVEN'T HAD A CHANCE TO TALK TO

18  THEM ON THE PHONE ABOUT THAT ISSUE.

19           I DO JUST WANT TO NOTE, JUST QUICKLY, THAT WE ARE

20  COMPLETELY ALIGNED WITH THE COURT, AND I THINK EVERYBODY ELSE

21  WHO IS INVOLVED, IN THAT WE THINK REUNIFICATION SHOULD OCCUR

22  AS EXPEDITIOUSLY AND AS SOON AS POSSIBLE.  AND IN MANY CASES I

23  THINK ALL PARTIES WILL AGREE THAT IT MAKES SENSE TO CONDUCT

24  THAT REUNIFICATION IN THE COUNTRY OF ORIGIN.

25           AND A LOT OF PARENTS AND MANY OF THE CHILDREN WILL

```
 1  WANT TO MAKE THAT CHOICE.  AND IN THOSE INSTANCES THE
 2  GOVERNMENT CERTAINLY CAN CARRY OUT THOSE REUNIFICATIONS UNDER
 3  THE PROCEDURAL STEPS IN THE PLAN.  NOTHING SHOULD REALLY
 4  PREVENT THAT FROM GOING FORWARD.
 5          BUT WE DO HAVE CONCERN BECAUSE WE REPRESENT A
 6  PUTATIVE CLASS OF CHILDREN WHO WERE SEPARATED FROM THEIR
 7  PARENTS WHEN THEY SHOULDN'T HAVE BEEN.  AND WE BELIEVE, AS YOU
 8  KNOW, THAT THEY SHOULD GET TO SEEK ASYLUM WITH THE ASSISTANCE
 9  OF THEIR PARENTS.  AND WE THINK THAT THAT IS TRUE, WHETHER THE
10  PARENTS WERE REMOVED FROM THE COUNTRY ALREADY OR NOT.
11          AND SO OUR POSITION RIGHT NOW IS THAT WE SHOULD
12  THINK THROUGH AND COORDINATE WHAT SORT OF ACCOMMODATIONS WE
13  CAN MAKE IN THOSE SITUATIONS -- IN THE SITUATION WHERE A
14  PARENT AND A CHILD MAY WISH TO SEEK ASYLUM TOGETHER OR SEEK
15  ASYLUM FOR THE CHILD WITH THE ASSISTANCE OF THE PARENT.  SO WE
16  ARE HAPPY TO MEET AND CONFER WITH THE GOVERNMENT ON THAT
17  ISSUE.  SO THAT WAS JUST TO SPEAK TO THE QUESTION OF WHAT TO
18  DO WITH PARENTS WHO HAVE ALREADY BEEN REMOVED.
19          ON THE EARLIER QUESTION ABOUT FINDING A WAY FORWARD
20  AND MEETING WITH THE GOVERNMENT TO REACH SOME SOLUTION IN THE
21  MATTER, WE BELIEVE THAT THAT MAKES SENSE, TOO.
22          AND I WILL JUST NOTE, FOR THE SAKE OF THE HEARING
23  TODAY, THAT THE PLAINTIFFS IN OUR CASE, AND IN A LOT OF -- AND
24  SIMILARLY-SITUATED CHILDREN, AS WELL, WERE ISSUED NTA'S,
25  NOTICES TO APPEAR, IN SECTION 240 PROCEEDINGS BY THE
```

1    GOVERNMENT.

2             AND OUR POSITION -- IN ADDITION TO THAT, OUR

3    POSITION IS THAT THOSE CAN'T BE WITHDRAWN AT THIS POINT,

4    LEGALLY.  THAT THERE ARE A VARIETY OF OTHER REASONS WHY

5    SECTION 240 PROCEEDINGS WOULD BE A MORE APPROPRIATE SOLUTION

6    IN THIS CASE THAN PURSUING UNDER SECTION 235.

7             BUT WE DO -- WE HEAR THE COURT ON THAT POINT, AND WE

8    ARE HAPPY TO TALK IT THROUGH WITH THE GOVERNMENT AND SEE WHAT

9    MAKES SENSE.  AND IF WE ARE NOT ABLE TO REACH AN AGREEMENT

10   THEN BRIEF THAT ISSUE UP FOR THE NEXT HEARING WITH THE COURT.

11            **THE COURT:**  ALL RIGHT.

12            I THINK THAT THE WAY WE SHOULD PROCEED IS THAT

13   THE -- WITH THE UNDERSTANDING THAT THE JOINT PROPOSED PLAN IS

14   APPROVED WHOLEHEARTEDLY BY THE COURT, RESERVING ON THIS ISSUE

15   OF WHETHER SOME PARENTS WHO HAVE BEEN REMOVED SHOULD BE

16   RETURNED TO THE UNITED STATES TO PURSUE THEIR ASYLUM CLAIMS

17   WITH THEIR CHILDREN.

18            BUT THE PLAN WOULD OTHERWISE BE APPROVED WITH THAT

19   RESERVED ISSUE.  AND THE PARTIES SHOULD BE MOVING WITH ALL DUE

20   SPEED AND CONSIDERATION IN REUNIFYING ALL OF THOSE PARENTS OF

21   THESE 366 AS SOON AS POSSIBLE.

22            AND SO I WILL LOOK FORWARD TO A DETAILED STATUS

23   REPORT NEXT THURSDAY TO SEE HOW MUCH PROGRESS HAS BEEN MADE,

24   INCLUDING WITH THE 9 OR SO PARENTS IN COUNTRY.

25            I WOULD PROPOSE, THEN, THAT THE PARTIES MEET AND

AUGUST 17, 2018

1    CONFER IN ATTEMPT TO ARRIVE AT SOLUTIONS ON THESE OTHER ISSUES

2    BY NEXT THURSDAY.  AND THAT CAN BE PART OF THE JOINT STATUS

3    REPORT.  AND, IF THERE IS NOT AGREEMENT, THEN TO PROPOSE A

4    BRIEFING SCHEDULE.

5            WHAT I WOULD JUST PROPOSE, IF THERE IS GOING TO BE

6    BRIEFING, IS THAT IT BE AN EXPEDITED BRIEFING SCHEDULE.  AND I

7    WOULD PROBABLY END UP ORDERING CURTAILED BRIEFING AND JOINT

8    SUBMISSIONS, AND THEN I WOULD ANTICIPATE ISSUING VERY SHORT

9    ORDERS ADDRESSING THOSE ISSUES.

10            WHAT I WOULD LIKE TO AVOID IS THE TRADITIONAL

11    APPROACH OF, FOR EXAMPLE, MOVING FORWARD WITH PRELIMINARY

12    INJUNCTION, HAVE ENORMOUS TIME AND ENERGY AND BRIEFING ON A

13    P.I. HEARING, STRUGGLING WITH THE SAME ISSUES; WHEN IT SEEMS

14    TO ME THERE IS A REAL OPPORTUNITY NOW, PARTICULARLY IN LIGHT

15    OF THE COURT'S RULING YESTERDAY, FOR THE PARTIES TO BRING

16    MEANINGFUL PROPOSALS AND SOLUTIONS, AND TO QUICKLY WRAP UP

17    THIS ENTIRE INCIDENT.

18            SO THAT WOULD BE MY INVITATION.

19            AND WHAT I WOULD SUGGEST, THEN, IS THAT NEXT

20    THURSDAY'S BRIEFING INCLUDE A JOINT STATUS REPORT ON THE

21    REUNIFICATION, BOTH IN COUNTRY AND THOSE WHO HAVE BEEN

22    REMOVED.

23            AND THEN PROPOSALS AS TO THE MMM CLASS, AND ANY

24    ASYLUM PROCEDURES PROVIDED THERE.  AND ANY STIPULATIONS THAT

25    MIGHT BE ACHIEVED WITH RESPECT TO THE ISSUE OF WHETHER OR NOT

AUGUST 17, 2018

```
 1   PARENTS THAT ARE ALREADY -- THAT HAVE ALREADY BEEN REMOVED ARE

 2   RETURNED.

 3             AND THAT WOULD ALL BE PART OF THE THURSDAY

 4   SUBMISSION.  THEN WE CAN, DEPENDING ON WHERE WE ARE ON

 5   THURSDAY -- AND WE WILL HAVE THE HEARING ON FRIDAY AT

 6   1:00 O'CLOCK AGAIN -- THE COURT CAN ADDRESS ANY REMAINING

 7   ISSUES.

 8             ANY OBJECTIONS TO THAT APPROACH?

 9             MR. GELERNT:  NO, YOUR HONOR.

10             MR. STEWART:  NO, YOUR HONOR.

11             MS. LEVY:  NOT FROM NTC COUNSEL, YOUR HONOR.  ON

12   BEHALF OF NTC.

13             THE COURT:  OKAY.

14             MS. LEVY:  WE JUST WANTED TO MAKE SURE THE COURT

15   UNDERSTOOD WE HAVE NOT BEEN OBJECTING TO REUNIFICATION AND

16   EXPECTING TO CONFER WITH THE GOVERNMENT AND SUGGEST A

17   RESOLUTION.

18             THE COURT:  THANK YOU, MS. LEVY.  SO YOU, OF COURSE,

19   WOULD BE PART OF THE MEETING AND CONFERRING WITH GOVERNMENT

20   COUNSEL ON THE ISSUES IN THE NEW YORK CASE, AS WELL.  AND THAT

21   CAN BE REPORTED ON NEXT THURSDAY, AS WELL.

22             JUST TO BE CLEAR, WHAT I AM EXPECTING IS THAT

23   EVERYONE IS MOVING FULL SPEED AHEAD ON EVERY POSSIBLE ANGLE IN

24   LIGHT OF THIS JOINT PLAN THAT HAS BEEN SUBMITTED TO THE COURT

25   AND WHICH IS NOW APPROVED, SUBJECT TO THE ISSUE THAT WE JUST
```

AUGUST 17, 2018

```
 1    HAVE JUST RESERVED.
 2            ANY OTHER COMMENTS?
 3            MR. GELERNT:  THIS IS MR. GELERNT.  I WAS JUST GOING
 4    TO RAISE ONE HOUSEKEEPING QUESTION, IF THAT IS OKAY.
 5            THE COURT:  YES.
 6            MR. GELERNT:  THE GOVERNMENT YESTERDAY FILED AN
 7    INCIDENT REPORT ABOUT KARNES, THE KARNES FAMILY DETENTION
 8    CENTER.  AND I GATHER THAT THERE WERE 16 MEN WHO WERE
 9    SEPARATED FROM THEIR CHILDREN AND REMOVED FOR A NIGHT TO A
10    DIFFERENT DETENTION CENTER, AND I BELIEVE HAVE ALREADY BEEN
11    BROUGHT BACK.
12            GIVEN THAT SEPARATING THE PARENTS AGAIN IS
13    TRAUMATIC, TO SAY THE LEAST, SEPARATING THEM FROM THEIR
14    CHILDREN, WE WOULD ASK THAT THE GOVERNMENT PROVIDE US WITH A
15    LITTLE BIT MORE INFORMATION ABOUT EXACTLY WHAT THAT INCIDENT
16    WAS AND WHY IT REQUIRED THIS EXTREME STEP OF SEPARATING THE
17    FAMILIES AND CHILDREN.
18            I THINK RIGHT NOW WHAT WE ARE HEARING FROM OUR
19    SERVICE PROVIDERS IS THAT THERE WAS NO VIOLENCE AT THE
20    DETENTION CENTER, AND THAT THERE WAS A HUNGER STRIKE IN
21    PROTEST, OF A NONVIOLENT NATURE.  BUT, OF COURSE, WE WOULD
22    WAIT TO REACH ANY CONCLUSIONS UNTIL THE GOVERNMENT GAVE US
23    MORE INFORMATION.  BUT THE INCIDENT REPORT DID NOT PROVIDE US
24    WITH ENOUGH INFORMATION TO FULLY UNDERSTAND WHY THAT STEP WAS
25    NECESSARY.
```

1          **THE COURT:**  OKAY.  THERE, I WOULD LIKE THE PARTIES

2    JUST TO MEET INFORMALLY, CONFER ON THAT.

3          IF, MR. GELERNT, YOU ARE NOT SATISFIED WITH THE

4    INFORMATION YOU ARE GETTING YOU CAN BRING THAT TO THE COURT'S

5    ATTENTION AT AN APPROPRIATE TIME.  BUT IT SEEMS TO ME THAT'S A

6    MATTER THAT WILL CLEAR ITSELF UP WITH THE PARTIES MEETING

7    INFORMALLY.

8          THE ONLY OBSERVATION I WOULD MAKE IS THAT'S A

9    DIFFERENT KIND OF SEPARATION ISSUE, IN THAT ONCE PEOPLE ARE IN

10   CUSTODY, EVEN IF IT IS A FAMILY RESIDENTIAL CENTER, THE

11   GOVERNMENT, OF COURSE, HAS AN ENORMOUS AMOUNT OF DISCRETION,

12   AND APPROPRIATELY SO, TO MAKE THOSE KINDS OF DETERMINATIONS AS

13   TO WHETHER THERE SHOULD BE ANY MEASURES TAKEN TO PROTECT THE

14   SAFETY AND WELFARE OF EVERYONE.

15         SO, AS COUNSEL OBVIOUSLY KNOW, IN A PENOLOGICAL

16   SETTING OR IN A FAMILY RESIDENTIAL SETTING, ANY OF THOSE

17   SETTINGS WHERE THE GOVERNMENT IS RESPONSIBLE FOR THE HOUSING

18   AND CARE OF INDIVIDUALS, THEY HAVE TO HAVE A LOT OF DISCRETION

19   IN MAKING THOSE KINDS OF CALLS.

20         SO AT THIS POINT I WOULD JUST HAVE TO ASSUME THAT

21   THAT EXERCISE OF DISCRETION WAS DONE IN GOOD FAITH AND IT WAS

22   APPROPRIATE.  BUT IF YOU LEARN CONTRARY INFORMATION THEN, OF

23   COURSE, I WOULD EXPECT THAT YOU WOULD BRING THAT TO THE

24   COURT'S ATTENTION.

25         **MR. GELERNT:**  UNDERSTOOD, YOUR HONOR.

AUGUST 17, 2018

1          **THE COURT:**  ALL RIGHT.  ANY OTHER MATTERS?  OKAY.

2          THANK YOU VERY MUCH.  HAVE A GOOD WEEKEND.  I WILL

3     LOOK FORWARD TO THE BRIEFING ON THURSDAY.

4          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

5          **MR. STEWART:**  THANK YOU, YOUR HONOR.

6

7                              *   *   *

8          I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
9          IN THE ABOVE-ENTITLED MATTER.

10         S/LEEANN PENCE                    8/17/2018
           LEEANN PENCE, OFFICIAL COURT REPORTER    DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          AUGUST 17, 2018