CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**JOINT STATUS REPORT** |

The Court ordered the parties to file a joint status report on August 30, 2018, in anticipation of the telephonic status conference scheduled for August 31, 2018, at 1:00 p.m. PST. The parties submit this joint status report in accordance with the Court's instruction.

I.   **DEFENDANTS' POSITIONS**

   **A. Update on. Reunifications**

Defendants report on the current status of reunification with children ages 0 through 17 in the table below. The data presented in this section reflects approximate numbers maintained by ORR at least as of August 27, 2018. These numbers are dynamic and continue to change as more reunifications or discharges occur. The table below follows the same format as that of the August 23, 2018 Joint Status Report.

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members originally identified | 103 | 2,551 | 2,654 |
| Discharged Children | | | |
| Children discharged by being reunified with separated parent | 61 | 1,876 | 1,937 |
| Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 20 | 200 | 220 |
| Total children discharged | 81 | 2,076 | 2,157 |
| Children Remaining in Care with ORR | | | |
| Children remaining in care where the adult associated with the child is not eligible for reunification *or* is not available for discharge at this time: | 22 | 475 | 497 |
| • Children still in care where further review shows they were not separated from parents by DHS: | 5 | 47 | 52 |
| • Parent indicated desire against reunification (includes a significant number of parents outside the U.S.): | 1 | 166 | 167 |
| • Adult presently outside the U.S.: | 6 | 316 | 322 |
| • Adult in other federal, state, or local custody: | 2 | 15 | 17 |
| • Adult red flag background check: | 9 | 26 | 35 |
| • Adult red flag case review – safety & well-being: | 1 | 17 | 18 |
| • Adult red flag case review – parentage: | 0 | 3 | 3 |

The Court also requested updated information regarding reunification efforts involving children in New York State. Defendants have provided updated, aggregate information related to those children in their concurrent Joint Status Report in the *N.T.C.* case.

## B. Reunification of Removed Class Members

Defendants report on the current status of reunification of removed class members in the table below. The data presented in this section reflects approximate numbers maintained by ORR as of at least August 27, 2018, with an additional row in Process 4 to reflect children in ORR care who have received orders of voluntary departure. These numbers are dynamic and continue to change as the reunification process moves forward.

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 322 | Def's. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 316 | Def's. |
| | Children with "red flags" for safety per background check | 4 | Def's. |
| | Children with "red flags" for safety per case file review | 0 | Def's. |
| | Children with "red flags" for parentage | 2 | Def's. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 322 | Def's. |
| | Children with parent contact information identified and parents actually contacted | 318 | Def's. |
| | Children with no parent contact information/parent contact information in development | 0 | Def's. |
| | Children with parent contact information provided to ACLU by Government | 322 | Def's. |

| PROCESS 3: Determine Parental Intention for Minor | Children for whom ACLU has communicated parental intent for minor | 46 | Pl's. |
|---|---|---|---|
| PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification | Children in ORR care with orders of voluntary departure | 15 | Def's. |

Defendants will report additional information on Processes 4 and 5 (Transportation of Minors for Physical Reunification with Parents in Country of Origin) as the reunification efforts continue.

**C. *M.M.M.* TRO Negotiations**

As ordered by the Court, the parties continue to meet and confer on the issues set forth in the Court's August 17 order, ECF No. 196. The parties request that they be permitted a short extension until 3:00pm PST on Tuesday, September 4, to submit a proposed briefing schedule if they cannot reach resolution.

**D. Information Sharing**

Plaintiffs have made numerous recent requests for additional data over the past week. Defendants have prioritized responding to those requests related to the ongoing reunification process. For many of Plaintiffs' requests, Plaintiffs seek data that they already have received. Therefore, Defendants also are working to provide Plaintiffs with more explanation about the data they already have in the hopes that this may obviate some of their requests. For the remainder of Plaintiffs' requests,

Defendants plan to respond as appropriate, or will meet and confer with Plaintiffs to determine if the parties can reach agreement regarding these requests.

**E. Requests for Relief from *M.M.M.* TRO**

The government wishes to raise—and propose a solution to—an important, recurring, but readily solvable challenge that it has been facing.

In recent days, the government has seen an increasing number of children of *Ms. L* class members who wish to voluntarily depart the country so that the children may reunify with their parents (who are outside of the United States). These children are subject to the *M.M.M.* TRO, which restrains the government from "removing from the United States" the children of *Ms. L.* class members. The TRO does not, however, prohibit the departure of these children from the United States pursuant to an order of voluntary departure under 8 U.S.C. § 1229c, as such does not constitute a removal under the law.  Under settled principles of immigration law, removal and voluntary departure are different:  the government acts to effectuate removal in accordance with a removal order; a voluntary departure simply means that an alien has been granted the entitlement to leave of their own accord without many of the consequences associated with removal.  The TRO currently limits the government's ability to do the former; it does not bar class members or their children from doing the latter.

Dozens of children—represented by individual counsel, on top of their putative representation by *M.M.M.*—have been granted voluntary departure by immigration judges and have sought the government's aid in departing. The government has, in turn, worked with counsel for the children to facilitate and pay for travel back to their country of origin. The government has offered that assistance in harmony with the Court's preliminary injunction and its directive to reunify.

The government's concern is that such assistance could give rise to an erroneous claim that it is violating the *M.M.M.* TRO by "removing" a child from the country. Although such a claim would be mistaken (the government would be assisting a voluntary departure, not effectuating a removal), the government has taken an abundantly cautious approach to protect itself against that sort of a claim. In particular, when an individual counsel for a child has come to the government for aid in facilitating a voluntary departure, government counsel has asked that counsel contact *M.M.M.* counsel to obtain *M.M.M.* counsel's agreement that the departure raises no concerns under the TRO.

That approach worked moderately well (albeit inefficiently) when only a few children sought voluntary departure. With the sudden increase of such requests, however, it has become inefficient and unworkable because *M.M.M.* counsel have been unwilling or unable to provide prompt agreement, and have been unwilling to agree to an efficient approach. On more than one occasion now, counsel for those

children has been unable to obtain the necessary approvals from *M.M.M.* counsel for the voluntary departure to go forward as scheduled, and ICE has had to cancel the departure against the child's wishes, and reschedule after approval could be obtained. Government counsel asked *M.M.M.* counsel to agree that for these children who take voluntary departure assisted by counsel, such approval is not necessary, but counsel for *M.M.M.* would not agree. As a result, the government finds itself negotiating between children and their counsel who seek the government's assistance in reunifying the child with a parent abroad, and counsel for *M.M.M.*, who stands in the way of such reunification.

Given these challenges and concerns, the government now proposes to the Court a simple solution: The Court could simply clarify that where a child seeks and is granted voluntary departure by an immigration judge, assisted by counsel, ICE may facilitate that child's voluntary departure for the purpose of reunification with his or her parent in the child's country of origin without obtaining the approval of *M.M.M.* counsel. As explained above, the TRO does not address voluntary departure. The government has coordinated with *M.M.M.* counsel out of an abundance of caution. Now that the number of voluntary departure assistance requests has escalated, that approach has become untenable.

Relatedly, in accordance with the reunification plan approved by this Court, the ACLU/Steering Committee recently submitted to Defendants documentation for

a number of class members and their children that reflect the parents' wishes that their child be returned to the country of origin, and which includes confirmation from the ACLU/Steering Committee that counsel for the child has also confirmed that the child wishes to return. As above, while returning a child to the country of origin in accordance with the reunification plan is also not removal under the law, the government seeks clarification from this Court that the *M.M.M.* TRO does not prevent the government from moving forward to reunify the child with his or her parent abroad in this situation.

## II. PLAINTIFFS' POSITIONS

### 1. Steering Committee Progress

Over the past week, the Steering Committee has made significant progress in effectuating reunifications. It continues to reach removed parents and representatives for their children who remain in the United States. The Steering Committee has consulted with the Vera Institute of Justice and has identified the vast majority of lawyers or advocates for each of the children with removed parents currently in ORR custody[1]. And, as further detailed below, the Steering Committee has identified and confirmed to the Government the wishes of 43 parents with respect to reunification, and expects to deliver confirmed preferences for many more in the coming week.

The Government reports that the accurate number of children in ORR custody with removed parents was 343 as of August 23. For those children and parents, the Steering Committee's progress to date is as follows:

---

[1] The Steering Committee notes that children in ORR custody appear to be moving between facilities on occasion, which affects the identity of the designated legal service provider.

| | |
|---|---|
| Removed parents identified by the Government (8/7, 8/10 and 8/24 lists) | 343 |
| • Parents for whom Committee has no phone number | 19 |
| Steering Committee called phone number for parent (using Government-provided number or number otherwise obtained by Steering Committee) | 324 |
| Steering Committee spoke to parent (either by phone or in person) | 244 |
| • Parents called and successfully reached | 239 |
| • Parents found through outreach by NGOs | 5 |
| • Parents called and not reached (and not reached through NGO efforts) | 80 |
| o Phone number inoperable or ineffective | 37 |
| o Phone calls ongoing | 43 |

| | |
|---|---|
| Parents reached by phone or NGO outreach | 244 |
| Reunified: confirmed reunifications in home country | 2 |
| Ready for reunification: parent's reunification wish confirmed to match child's | 174 |
| Preliminary indication of parent's wishes for reunification | 32 |
| Ongoing discussions w parent about reunification | 36 |
| Preferences already communicated to government | 43 |

The Steering Committee also continues to work with the Government to

identify all children in ORR custody with removed parents, utilizing the significant data the Steering Committee has compiled in order to ensure no child or parent is overlooked in this process.  On August 24, the Government produced an updated list of children in ORR custody whose parents have been removed.  On August 25, the Government produced an updated list of removed parents who signed a Letter of Designation on file with ORR, identifying a sponsor in the United States in whose custody their child(ren) could be placed.

On August 26, the Steering Committee provided to the Government a list of concerns that it had regarding discrepancies between the August 24 and 25 lists that the Government provided and prior iterations of those lists.  In addition, the Steering Committee raised concerns about: (1) children whom the Steering Committee believes to be in ORR shelters and whose parents the Steering Committee believes to have been removed, but whose names do not appear on prior lists of children in ORR custody produced by the Government; and (2) inoperative parent phone numbers.

On August 29, the Government responded to the Steering Committee's August 26 communication, setting forth explanations and additional information in response to the Steering Committee's questions.  The August 29 communication resolved certain of the Steering Committee's concerns.  A few issues remain to be resolved, including:

- <u>Discrepancies between August 24 List of Children in ORR Custody with Removed Parents ("Aug. 24 ORR Custody/Removed Parents List") and Prior Iterations of This List</u>:
    o The Steering Committee reported to the Government that 70 children who appeared on prior iterations of the Aug. 24 ORR Custody/Removed Parents List did not appear on the Aug. 24 ORR Custody/Removed Parents List.

- o The Government responds that the 70 children were removed from the Aug. 24 ORR Custody/Removed Parents List because either (1) they were discharged from ORR care, (2) their parents are no longer removed and are in custody in the United States, (3) HHS has since determined that the children were not separated from their parents by DHS, or (4) the cases are under review to determine if separation occurred.
- o Plaintiffs appreciate the Government's response; however, Plaintiffs intend to further meet and confer with the Government regarding the circumstances of the children who have recently been discharged from ORR care, and to discuss how to proceed with those of these children whose parents are members of the Ms. L class.

The Steering Committee previously reported its progress using the total number of 412 children in ORR care, based on the Government's own data from August 7th and 10th.[2]

---

[2] As to this larger group of children with parents who were removed — including the 70 that the Government reports are now no longer in ORR care — the Steering Committee's progress is reported below, so that the Court may compare progress in the past week using the same baseline group. Certain categories have changed slightly: the Government reported one additional child in ORR care with a removed parent, which increases the 412 from August 23 to 413; the "Parents for whom Committee has no phone number" category has changed from reflecting parents for whom the Government did not provide a number to now showing parents for whom there is no number provided by the Government and the Steering Committee has not found a number through its own efforts.

|  | 8/23 JSR | 8/30 JSR |
|---|---|---|
| Removed parents identified by the Government | 412 (8/7,8/10 | 413 (8/7,8/10,8/24 |

|  | lists) | lists) |
|---|---|---|
| • Parents for whom Committee has no phone number | 41 | 33 |
| Steering Committee called phone number for parent (using Government-provided number or one otherwise determined by Steering Committee) | 371 | 380 |
| Steering Committee spoke to parent (either by phone or in person) | 231 | 279 |
| • Parents called and successfully reached | 225 | 273 |
| • Parents found through outreach by NGOs | 6 | 6 |
| • Parents called and not reached (and not reached through NGO efforts) | 140 | 101 |
| o Phone number inoperable or ineffective | 38 | 43 |
| o Phone calls ongoing | 102 | 58 |

|  | 8/23 JSR | 8/30 JSR |
|---|---|---|
| Parents reached by phone or NGO outreach | 231 | 279 |
| Reunified: confirmed reunifications in home country | 10 | 19 |
| Ready for reunification: parent's reunification wish confirmed to match child's | 15 | 184 |
| Preliminary indication of parent's wishes for reunification | 183 | 36 |

- Other Issues:

The Steering Committee also reported to the Government regarding children whom the Steering Committee's constituents report to be in ORR custody but who do not appear on any Government list produced to date; concerns regarding the procedure for investigating or confirming inoperative phone numbers for parents; and other issues related to information exchange between the Steering Committee and the Government.  The Steering Committee and the Government have committed to meet and confer on these issues and are hopeful that they will be able to resolve them without the Court's intervention.  If there are any outstanding issues that cannot be resolved, the parties will bring these issues to the Court's attention.

Finally, as discussed in the last status report, the Steering Committee continues to receive indications that some parents may have been coerced or misled by U.S. government actions that deprived the parents of their right to seek asylum.  These incidents include parents who were told that they needed to accept removal and not pursue asylum in order to be reunited with their children, and parents who were required to sign documents they did not understand, in languages they do not speak, that had the effect of waiving their right to seek asylum.  The Steering Committee continues to investigate these cases.

| | | |
|---|---|---|
| Ongoing discussions w parent about reunification | 23 | 40 |
| Preferences already communicated to government | 0 | 45 |

### B. Information Sharing

At Defendants' request, Plaintiffs have begun sending consolidated sets of information requests concerning the Class members' reunification processes on Mondays and Thursdays of every week. Most importantly, Plaintiffs have asked Defendants to provide, on an ongoing basis, a complete list of Class members that corresponds to the numbers they report in their weekly status reports.

Up until this point, Defendants have provided multiple lists of parents and children in various categories, e.g. parents who have allegedly waived their reunification rights; parents who have been reunited in family detention. However, the numbers of Class members on these lists frequently contain significant discrepancies with the numbers in the weekly status reports, which makes it difficult to rely on these lists when advising Class members and their advocates.

Defendants compile and synthesize Class member information in order to provide updated statistics to the Court every week. Providing that same information to Plaintiffs would likely alleviate this confusion, since Plaintiffs would simply receive the information and data underlying Defendants' disclosures to the Court. Plaintiffs have proposed, and ask for the Court to order, that Defendants provide this information every Friday (the day after the filing of the status reports).

For the numbers in last week's JSR, Plaintiffs still await an updated list of (1) 1,923 reunifications; (2) 203 other appropriate discharges; (3) several categories for the 528 children still in ORR care, including children that the Government believes were not separated from parents, adults in other custody (federal, state, local), and all three categories of "red flags" that the Government contends prevent reunification.

| | | |
|---|---|---|
| 1 | DATED: August 30, 2018 | Respectfully submitted, |
| 2 | | /s/ Lee Gelernt |
| 3 | | Lee Gelernt* |
| 4 | | Judy Rabinovitz* |
| | | Anand Balakrishnan* |
| 5 | | AMERICAN CIVIL LIBERTIES UNION |
| | | FOUNDATION |
| 6 | | 125 Broad St., 18th Floor |
| 7 | | New York, NY 10004 |
| | | T:  (212) 549-2660 |
| 8 | | F:  (212) 549-2654 |
| 9 | | *lgelernt@aclu.org* |
| | | *jrabinovitz@aclu.org* |
| 10 | | *abalakrishnan@aclu.org* |
| 11 | | |
| 12 | | Bardis Vakili (SBN 247783) |
| | | ACLU FOUNDATION OF SAN DIEGO |
| 13 | | & IMPERIAL COUNTIES |
| 14 | | P.O. Box 87131 |
| | | San Diego, CA 92138-7131 |
| 15 | | T: (619) 398-4485 |
| 16 | | F: (619) 232-0036 |
| | | *bvakili@aclusandiego.org* |
| 17 | | |
| 18 | | Stephen B. Kang (SBN 292280) |
| | | Spencer E. Amdur (SBN 320069) |
| 19 | | AMERICAN CIVIL LIBERTIES UNION |
| | | FOUNDATION |
| 20 | | 39 Drumm Street |
| 21 | | San Francisco, CA 94111 |
| | | T:  (415) 343-1198 |
| 22 | | F:  (415) 395-0950 |
| 23 | | *skang@aclu.org* |
| | | *samdur@aclu.org* |
| 24 | | |
| 25 | | *Attorneys for Petitioners-Plaintiffs* |
| | | *Admitted Pro Hac Vice |
| 26 | | |
| 27 | | |
| 28 | | |

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*