UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

|  |  |
|---|---|
| MS. L, ET AL.,<br><br>PETITIONERS-PLAINTIFFS,<br><br>VS.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT ("ICE"), ET AL.,<br><br>RESPONDENTS-DEFENDANTS. | CASE NO. 18CV0428-DMS<br>18CV1626-DMS<br>18CV1832-DMS<br><br>SAN DIEGO, CALIFORNIA<br>AUGUST 31, 2018<br>1:00 P.M. CALENDAR |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                               OFFICIAL COURT REPORTER
                               UNITED STATES COURTHOUSE
                               333 WEST BROADWAY, ROOM 1393
                               SAN DIEGO, CALIFORNIA 92101

COUNSEL APPEARING TELEPHONICALLY:


FOR PLAINTIFF:             LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SCOTT STEWART, ESQ.
                           SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


ALSO APPEARING:            ZACHARY W.H. BEST, ESQ.
                           JUSTIN W. BERNICK, ESQ.
                           JEFFIFER LEVY, ESQ.
                           T. WEYMOUTH, ESQ.

1   <u>SAN DIEGO, CALIFORNIA – FRIDAY, AUGUST 31, 2018 – 1:05 P.M.</u>

2                     *   *   *

3       **THE CLERK:** CALLING MATTER 13, 18CV0428, MS. L.

4 VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.; FOR A

5 STATUS CONFERENCE.

6       **THE COURT:** GOOD AFTERNOON. THIS IS JUDGE SABRAW.

7       I UNDERSTAND I HAVE ON THE LINE FOR THE GOVERNMENT

8 MR. STEWART, MS. FABIAN; FOR PLAINTIFFS IN MS. L. WOULD BE MR.

9 GELERNT; IN THE NTC CASE I HAVE MS. LEVY; AND IN THE MMM CASE,

10 MR. BERNICK AND MR. WEYMOUTH.

11       IS THERE ANYONE ELSE ON THE LINE WHO I HAVE NOT

12 IDENTIFIED? OKAY.

13       THANK YOU AGAIN FOR THE SUBMISSIONS. I READ THE

14 JOINT STATUS REPORT IN THE NTC CASE, MS. L., AND MMM CASE, AS

15 WELL.

16       AND PERHAPS WE CAN START FIRST WITH THE MS. L. CASE.

17       AND HERE, MR. STEWART YOU HAVE INDICATED, AT THE

18 LAST HEARING AND BY A SEPARATE EMAIL TO THE COURT, I BELIEVE

19 YESTERDAY, THAT THE GOVERNMENT WOULD BE FILING A MOTION TO

20 STAY THE APPEAL OR TO HOLD IT IN ABEYANCE. AM I CORRECT?

21       **MR. STEWART:** THAT IS CORRECT, YOUR HONOR. WE FILED

22 THAT MOTION TO HOLD THAT APPEAL IN ABEYANCE WITH THE NINTH

23 CIRCUIT EARLIER TODAY.

24       **THE COURT:** OKAY. THAT'S A PROCEDURE THAT IS NEW TO

25 ME. AND AS I UNDERSTAND IT, THEN, WITH THAT MOTION, THAT

```
 1    RESTORES JURISDICTION IN THE COURT TO PROCEED TODAY ON ALL
 2    ISSUES IN MS. L., CORRECT?
 3              MR. STEWART:  I BELIEVE -- YOUR HONOR, I BELIEVE --
 4    I DON'T THINK THAT IT RESTORES JURISDICTION, I DON'T THINK
 5    THAT YOUR HONOR EVER LOST JURISDICTION.  I THINK IT JUST KIND
 6    OF ENSURES THAT THE CONTINUED PROCEEDINGS ARE NOT INTERRUPTED
 7    BY ANYTHING THAT IS GOING ON IN THE COURT OF APPEALS, IF THE
 8    MOTION IS GRANTED.  AND IT IS AN UNOPPOSED MOTION.
 9              AND WE WOULD EXPECT THAT THE APPEAL WOULD BE HELD IN
10    ABEYANCE AND THAT WE WOULD BE ABLE TO JUST CONTINUE AS BEFORE,
11    UNINTERRUPTED, TO PROVIDE REUNIFICATION.
12              THE COURT:  BUT AREN'T I CORRECT IN MAKING THE
13    ASSUMPTION THAT WHEN ONE FILES A NOTICE OF APPEAL IT WOULD
14    DIVEST THE COURT OF JURISDICTION.  AND THEN -- THAT'S WHY IT
15    WAS MY UNDERSTANDING THAT WITH A MOTION TO HOLD THE APPEAL IN
16    ABEYANCE IT ALLOWS THE COURT TO PROCEED.  IS THAT NOT CORRECT?
17              MR. STEWART:  I CAN RUN DOWN ANY MORE DETAILS, YOUR
18    HONOR, JUST FOR CERTAINTY.  BUT WE BELIEVE YOU CAN PROCEED
19    UNIMPEDED FROM THE APPEAL AND THAT -- JUST IT IS INTERLOCUTORY
20    AND IT SHOULDN'T AFFECT ANYTHING.
21              I THINK -- WE CAN LET YOU KNOW IF THERE ARE ANY
22    OTHER CONCERNS IN THAT REGARD, BUT I THINK YOU CAN PROCEED --
23    YOUR HONOR CAN PROCEED AS BEFORE, YOU KNOW, ON THE PRELIMINARY
24    INJUNCTION AND ALL THAT.
25              THE COURT:  OKAY.
```

AUGUST 31, 2018

```
 1              MR. STEWART:  WE CAN PIN DOWN ANY LOOSE ENDS IF YOUR
 2    HONOR WOULD LIKE.
 3              THE COURT:  THAT'S OKAY.  THANK YOU ANYWAY.  I WILL
 4    PROCEED WITH THE ASSUMPTION THAT THE COURT HAS JURISDICTION
 5    AND CAN ADDRESS ALL OF THE ISSUES IN MS. L.  SO LET'S DO THAT.
 6              THE STATUS REPORT CONTINUES TO LOOK ENCOURAGING IN
 7    THE EFFORT THAT WAS PUT IN BY THE PARTIES DURING THE LAST
 8    WEEK.  IT IS EXTRAORDINARY, PARTICULARLY ON BEHALF OF THE
 9    PLAINTIFFS' STEERING COMMITTEE AND THE OUTREACH EFFORTS THAT
10    HAVE BEEN MADE.
11              SO LET'S RUN THROUGH SOME OF THESE NUMBERS NOW,
12    STARTING WITH THE GOVERNMENT'S NUMBERS ON PAGE 2 OF THE MS. L.
13    REPORT.
14              THERE WAS AN IDENTIFICATION OF ADULTS PRESENTLY
15    OUTSIDE OF THE UNITED STATES, 322.  ON THE PRIOR REPORT LAST
16    WEEK THAT NUMBER WAS 343.  WHAT CAUSES THAT DIFFERENCE?
17              MR. STEWART:  YOUR HONOR, I BELIEVE A GOOD PART OF
18    THAT DIFFERENCE IS THE CHANGE -- THOSE ARE CHILDREN, YOUR
19    HONOR, OR CHILDREN OF PARENTS OUTSIDE OF THE UNITED STATES.
20    AND I BELIEVE A GOOD NUMBER OF THOSE ARE CHILDREN WHO HAVE
21    VOLUNTARILY DEPARTED THE COUNTRY OR -- AND REUNIFIED WITH
22    THEIR PARENTS IN THE COUNTRY OF ORIGIN.
23              THE COURT:  OKAY.
24              MR. STEWART:  SO THAT NUMBER ALSO JUST GOES DOWN AS
25    THE CHILDREN LEAVE O.R.R. CARE, YOUR HONOR.  SO THEY MIGHT
```

AUGUST 31, 2018

```
 1   MOVE TO ANOTHER BUCKET.  MAYBE THEY ARE UNIFIED WITH A
 2   SPONSOR, SO THAT IS ANOTHER POSSIBILITY THERE.
 3           THE COURT:  YES.
 4           THERE HAS BEEN IDENTIFICATION OF 322 CHILDREN IN
 5   O.R.R. CARE WHOSE PARENTS HAVE DEPARTED.  316 OF THOSE
 6   CHILDREN HAVE BEEN CLEARED.  300 -- OF THE 322, 318 HAVE BEEN
 7   ACTUALLY CONTACTED, ACCORDING TO THE GOVERNMENT.
 8           SO DOES THAT MEAN THAT THERE ARE 4 CHILDREN, FROM
 9   THE GOVERNMENT'S PERSPECTIVE, WHOSE PARENTS HAVE NOT YET BEEN
10   CONTACTED?
11           MR. STEWART:  WE THINK THAT'S -- WE THINK THAT'S THE
12   LATEST INFORMATION WE HAD FOR THE STATUS REPORT, YOUR HONOR.
13   WE ARE IN THE PROCESS OF DRILLING DOWN ON THAT 4 AND ARE
14   HOPING TO JUST CLOSE THE LOOP AND SEE, YOU KNOW, IS THAT, YOU
15   KNOW, ARE THOSE 4, YOU KNOW, IS THEIR CONTACT INFORMATION --
16   IS THERE A WAY TO GET, YOU KNOW, GET CONTACT.  OR, YOU KNOW,
17   MAYBE NOT, HAVE WE FOUND OUT THAT MAYBE THEY FALL IN A
18   DIFFERENT BUCKET, YOU KNOW, OR THEIR PARENT MIGHT BE
19   ELSEWHERE, OR SOMETHING.  WE ARE STILL WORKING WITH THAT --
20   WITH THAT 4.
21           THE COURT:  I WILL COME BACK TO THAT, BECAUSE THE
22   PLAINTIFFS' NUMBER APPEARS TO BE A LITTLE DIFFERENT.
23           ON THE CHILDREN FOR WHOM PLAINTIFFS HAVE
24   COMMUNICATED WITH PARENTS AND THE PARENTS HAVE EXPRESSED AN
25   INTENT FOR THEM TO RECEIVE THEIR CHILD, 46, SO FAR.
```

AUGUST 31, 2018

1      AND, MR. GELERNT, AM I CORRECT, WHEN I REVIEW YOUR

2  SUBMISSION IT LOOKS LIKE IN THIS NEXT WEEK, OR PERHAPS TWO,

3  THAT NUMBER IS GOING TO SIGNIFICANTLY INCREASE TO PERHAPS OVER

4  150, CLOSE TO 200.

5      **MR. GELERNT:**  YES, YOUR HONOR.  WE BELIEVE IT IS

6  GOING TO INCREASE SIGNIFICANTLY.  I AM NOT SURE OF THE EXACT

7  NUMBER, BUT WE ARE MAKING REAL PROGRESS IN DETERMINING THE

8  PARENTS' WISHES DEFINITIVELY, SO I THINK IT WILL INCREASE

9  SIGNIFICANTLY.

10      **THE COURT:**  THERE IS A REFERENCE HERE ON PAGE 9,

11  PARENTS READY FOR REUNIFICATION 174.  32 IN ADDITION HAVE

12  PRELIMINARILY INDICATED A DESIRE FOR REUNIFICATION.

13      SO IF THOSE TRENDS CONTINUE, THEN IT WOULD APPEAR

14  THIS REUNIFICATION NUMBERS, AS WE HAVE JUST MENTIONED, IS

15  GOING TO INCREASE, PERHAPS CLOSE TO 200 IN THE NEXT WEEK OR

16  TWO.  I AM REVIEWING THAT INFORMATION ACCURATELY?

17      **MR. GELERNT:**  YES, YOUR HONOR.  WE ARE HOPEFUL THAT

18  THAT WILL HAPPEN.

19      **THE COURT:**  OKAY.

20      THIS RELATES TO THE MMM CHILDREN, THE PUTATIVE

21  CLASS.  THERE WAS A BACK AND FORTH ABOUT CHILDREN WHO HAVE

22  VOLUNTARY DEPARTURES, WHO ARE DESIROUS, AFTER SPEAKING WITH

23  THEIR COUNSEL, TO REPATRIATE TO THE HOME COUNTRY WITH THEIR

24  PARENT.  AND THE GOVERNMENT WOULD LIKE TO DO THAT, AND TO HAVE

25  AN INDICATION FROM THE COURT THAT THAT WOULD NOT BE VIOLATIVE

AUGUST 31, 2018

1  OF THE MMM TRO.  AND THAT THE GOVERNMENT NEED NOT FURTHER

2  COORDINATE WITH COUNSEL IN MMM.

3          AND IT APPEARS IN THE BRIEFING, THE STATUS REPORTS,

4  THAT COUNSEL ARE IN AGREEMENT ON THAT.  I UNDERSTOOD THE

5  SUBMISSION FROM PLAINTIFFS' COUNSEL IN THAT CASE TO AGREE

6  THAT, ASSUMING THOSE THINGS, THAT IS THAT THE CHILD IS

7  REPRESENTED, THAT THEY ARE IN AGREEMENT TO VOLUNTARY DEPARTURE

8  AND TO BE REPATRIATED, THAT COUNSEL IN MMM NEED NOT BE

9  CONTACTED.

10          **MR. BERNICK:**  YOUR HONOR, THIS IS JUSTIN BERNICK, IF

11  I MAY, FOR THE MMM PLAINTIFFS.

12          AND YOU HAVE THAT CORRECT.  I SAW THE SUBMISSION

13  FROM THE GOVERNMENT AS RAISING TWO ISSUES THAT MAY BE DISTINCT

14  BUT OVERLAP.

15          THE FIRST ONE RELATES TO CHILDREN WHOSE PARENTS HAVE

16  BEEN REMOVED, WHERE THERE IS A VOLUNTARY DEPARTURE ORDER AND

17  THEY ARE REPRESENTED BY COUNSEL.  AND, AS WE HAVE SAID IN OUR

18  SUBMISSION, WE HAVE NO CONCERNS WITH THOSE INDIVIDUALS BEING

19  REMOVED PURSUANT TO THOSE VOLUNTARY DEPARTURE ORDERS AS SOON

20  AS POSSIBLE.

21          THE SECOND ISSUE, FRANKLY, YOUR HONOR, WE WEREN'T

22  AWARE OF UNTIL WE RECEIVED THE STATUS REPORT FROM THE

23  GOVERNMENT, AND THAT RELATES TO THE PARAGRAPH STARTING ON

24  PAGE 7, ON TO PAGE 8, RELATED TO THE ACLU STEERING COMMITTEE

25  DOCUMENTATION FOR CLASS MEMBERS WHO WANT TO GO BACK.

1          I THINK, YOUR HONOR, I WOULD JUST REQUEST THAT WE

2     MEET AND CONFER ON THAT ISSUE BECAUSE WE JUST DON'T UNDERSTAND

3     THE DYNAMICS THERE, NECESSARILY.  WE HAVEN'T BEEN INVOLVED IN

4     THAT PROCESS, AND JUST WOULD LIKE TO TALK TO THE GOVERNMENT

5     AND THE ACLU ABOUT THAT PROCESS, AND MAKE SURE THAT WE ARE

6     COMFORTABLE WITH IT.

7          I JUST DON'T KNOW ENOUGH RIGHT NOW, ON THE LINE, TO

8     MAKE A REPRESENTATION ONE WAY OR THE OTHER.

9          I WILL SAY THAT OUR NUMBER ONE PRIORITY IS WHERE THE

10    CHILDREN AND PARENTS WANT TO BE REUNIFIED AND THE CHILDREN ARE

11    REPRESENTED BY COUNSEL AND KNOW THAT THEY ARE FORGOING A

12    POTENTIAL RIGHT TO PURSUE ASYLUM, THAT THEY SHOULD GO BACK TO

13    THEIR HOME COUNTRY AS SOON AS POSSIBLE.  AND WE DON'T WANT TO

14    BE AN IMPEDIMENT TO THAT PROCESS.

15         I DON'T KNOW -- I DON'T KNOW ENOUGH ABOUT THAT

16    PARAGRAPH ON 7, ON TO PAGE 8, FOR THE SITUATION WHERE CHILDREN

17    DO NOT HAVE A VOLUNTARY DEPARTURE ORDER, TO BE ABLE TO WEIGH

18    IN AT THIS TIME.

19         BUT I WOULD LIKE TO MEET AND CONFER WITH THE

20    GOVERNMENT AND SEE ABOUT IT, TO FIGURE OUT HOW WE CAN PROCEED

21    AS QUICKLY AS POSSIBLE TO MOVE FORWARD WITH THOSE INDIVIDUALS.

22         **THE COURT:**  OKAY.  THANK YOU.

23         SO THEN, TO BE CLEAR, THE GOVERNMENT WOULD BE FREE

24    TO REPATRIATE THOSE CHILDREN WITH VOLUNTARY DEPARTURE ORDERS

25    WHO ARE REPRESENTED BY COUNSEL, HAVE EXPRESSED A DESIRE TO

AUGUST 31, 2018

1   REPATRIATE CONSISTENT WITH THEIR PARENTS' WISHES, AS WELL.

2   THE GOVERNMENT WOULD BE FREE TO REPATRIATE THOSE CHILDREN, AND

3   THAT WOULD NOT BE, IN ANY WAY, VIOLATIVE OF THE MMM TRO.

4           ON THE SECOND ISSUE, AT PAGES 7 AND 8 OF THE MS. L.

5   STATUS REPORT THAT, AS MR. BERNICK MENTIONED, RELATES TO -- I

6   THINK THAT IS 43 CHILDREN WHO HAVE INDICATED A DESIRE TO BE

7   RETURNED TO THEIR COUNTRY OF ORIGIN CONSISTENT WITH THEIR

8   PARENTS' WISHES.

9           AND SO THERE I WILL SIMPLY RESERVE, MAKE NO

10  FINDINGS, AND INVITE GOVERNMENT COUNSEL, MR. GELERNT, AND MR.

11  BERNICK TO MEET AND CONFER.  AND I ASSUME THAT THAT ISSUE WILL

12  WORK OUT SEAMLESSLY.

13          ANY OTHER ISSUES IN THAT REGARD, OR CAN WE MOVE ON?

14          **MR. STEWART:**  YOUR HONOR, IF I COULD RAISE ONE OR

15  TWO OTHER THINGS KIND OF IN THE SAME BUCKET.

16          I GUESS I WOULD JUST RAISE, ON THAT ISSUE ON PAGE 7

17  TO 8, I MEAN, THAT IS REALLY A QUESTION OF -- YOU KNOW, THAT'S

18  THE REUNIFICATION PLAN, IS WHAT WE ARE TALKING ABOUT THERE.

19  AND THAT'S A SITUATION WHERE THE ACLU HAS, IN ACCORDANCE WITH

20  THE REUNIFICATION PLAN, OBTAINED AGREEMENT OF THE CHILD

21  THROUGH COUNSEL.

22          AND THE KEY ISSUE THERE IS WHETHER THERE IS A NEED

23  FOR, YOU KNOW, FURTHER, YOU KNOW -- IF THE TRO, YOU KNOW,

24  OTHERWISE STANDS IN THE WAY OF THE COURT-APPROVED

25  REUNIFICATION PLAN OR, YOU KNOW, OF IT DOES -- YOU KNOW, IF IT

```
 1   DOES -- IF THE TRO DOES STAND IN THE WAY OF THE REUNIFICATION

 2   PLAN DO WE STILL NEED MMM TO SIGN OFF IN THAT CASE.

 3           WE HAVE RAISED THAT PREVIOUSLY -- WE, THE

 4   GOVERNMENT, HAVE RAISED THAT PREVIOUSLY, I BELIEVE WITH BOTH

 5   THE STEERING COMMITTEE AND WITH MMM COUNSEL.  AND IT IS

 6   GETTING IMPORTANT FOR US TO GET RESOLUTION ON THAT BECAUSE WE

 7   REALLY WANT TO -- YOU KNOW, THERE ARE A LOT OF FOLKS WHO WANT

 8   TO MOVE FORWARD WITH REUNIFICATION AND WE WANT AS FEW

 9   ROADBLOCKS AS POSSIBLE, WHICH IS WHY WE PRESSED FOR RESOLUTION

10   HERE, WE HAVE RAISED IT PREVIOUSLY.

11           SO, ANYWAY, THAT REALLY IS JUST A QUESTION THAT HAS

12   BEEN PRESENTED AND, YOU KNOW, IS UNDER THE REUNIFICATION PLAN

13   AND IS, YOU KNOW, KIND OF A QUESTION OF HOW THE TRO INTERACTS

14   WITH THAT REUNIFICATION PLAN.

15           SO THE SOONER THE GOVERNMENT GETS RESOLUTION ON THAT

16   THE BETTER, BECAUSE I DIDN'T -- I DON'T THINK YOUR HONOR

17   INTENDED THE TRO ORDER TO IMPEDE ANYTHING IN THE REUNIFICATION

18   PLAN.

19           THE COURT:  I THINK, HERE, I AGREE IN CONCEPT WITH

20   WHAT YOU ARE SAYING, MR. STEWART.  AND I REALLY LOOK TO MR.

21   GELERNT TO BE IN THE DRIVER'S SEAT ON THIS ONE WITH RESPECT TO

22   THE REUNIFICATION PLAN AND THESE 40 -- I THINK IT IS 43

23   CHILDREN.

24           BUT I ALSO THINK, GIVEN THE MMM LAWSUIT AND THE

25   PUTATIVE CLASS THERE, THAT IT IS APPROPRIATE FOR MR. BERNICK,
```

AUGUST 31, 2018

1  MR. BEST, AND MR. WEYMOUTH, AND OTHERS, TO AT LEAST HAVE

2  CLARITY ON THAT ISSUE.  I DON'T ANTICIPATE THAT THERE WILL BE

3  ANY PROBLEMS.  IT SEEMS LIKE THIS WILL WORK OUT VERY QUICKLY.

4          IF THERE IS AN ISSUE I WILL ASK COUNSEL TO RAISE IT

5  EARLY NEXT WEEK.  YOU CAN SIMPLY CONTACT MY LAW CLERK.  AND

6  WE -- IF NECESSARY WE CAN ARRANGE A QUICK TELEPHONIC

7  CONFERENCE.

8          BUT MY ASSUMPTION WOULD BE THAT ONCE PARTICULARLY

9  MMM COUNSEL ARE FULLY APPRISED OF THIS ISSUE THAT IT WILL WORK

10 OUT WITHOUT ANY FURTHER COURT INVOLVEMENT, AND WORK OUT EARLY

11 NEXT WEEK.

12         **MR. STEWART:**  YOUR HONOR, MAY I PROPOSE -- WE CAN DO

13 THAT.  MAY I PROPOSE -- AND THANK YOU, YOUR HONOR, FOR THE

14 OPPORTUNITY TO RESOLVE IT PROMPTLY.

15         IF MMM COUNSEL WERE TO AGREE WITH THE APPROACH THAT

16 WE HAVE OUTLINED THAT, YOU KNOW, THE ACLU HAS GOTTEN THE

17 AGREEMENT FROM THE CHILD THROUGH COUNSEL AND WANTS TO REUNIFY,

18 RETURN -- OR REPATRIATE IN THE COUNTRY OF ORIGIN, IF MMM

19 AGREES WITH THAT, CAN WE PROCEED FORWARD WITH THE COURT'S

20 BLESSING, OR WOULD YOUR HONOR LIKE US TO COME BACK TO THE

21 COURT FURTHER WITH THAT?

22         **THE COURT:**  NO, YOU COULD SIMPLY --

23         **MR. GELERNT:**  IF WE GOT THE MMM AGREEMENT.

24         **THE COURT:**  YOU CAN SIMPLY PROCEED.

25         **MR. STEWART:**  THANK YOU, YOUR HONOR.

AUGUST 31, 2018

1          AND THE LAST ISSUE I WANT TO RAISE, YOUR HONOR,

2    WHICH IS NOT IN OUR JOINT STATUS REPORT BUT I DID WANT TO

3    RAISE IT.  IT IS IN SOME WAYS -- I DON'T KNOW IF THE RIGHT

4    TERM IS THE CONVERSE OF THE VOLUNTARY DEPARTURE ISSUE.

5          BUT WE HAVE A NUMBER OF FAMILIES IN ICE FAMILY

6    RESIDENTIAL CENTERS WHERE THE PARENTS HAVE FINAL REMOVAL

7    ORDERS, AND THE FAMILIES AGREE THAT THEY WANT TO REPATRIATE,

8    LEAVE THE COUNTRY, AS A FAMILY.  OUR UNDERSTANDING IS THAT MMM

9    COUNSEL IS SIGNING OFF ON A NUMBER OF THESE.

10          THE ISSUE FOR US, OF COURSE, YOUR HONOR, IS THAT

11    THESE ARE NOT VOLUNTARY DEPARTURE CASES, THEY ARE TRUE REMOVAL

12    CASES.  THE GOVERNMENT WOULD BE EFFECTUATING A REMOVAL ORDER.

13          AND, OF COURSE, WE CAN'T DO THAT CONSISTENT WITH THE

14    TRO SO WE NEED -- THERE NEEDS TO BE A MECHANISM, WHERE I

15    WANTED TO RAISE, YOUR HONOR, A RESOLUTION TO THIS SO THAT WE

16    CAN MAKE SURE -- WE, THE GOVERNMENT, CAN MAKE SURE TO REMOVE

17    THESE FOLKS ON WHOM MMM HAS SIGNED OFF CONSISTENT WITH THE

18    TRO.

19          I THINK ONE OPTION IS THAT MMM COULD FILE IN EACH

20    CASE A REQUEST WITH THE COURT TO LIFT THE TRO AS TO THAT

21    PARTICULAR, YOU KNOW, PARENT AND CHILD.  OR IF YOUR HONOR

22    WOULD BE WILLING TO BLESS A MORE INFORMAL APPROACH YOUR HONOR

23    COULD PROVIDE A SITUATION WHERE MMM COUNSEL CAN WAIVE THE TRO

24    AS TO THOSE PEOPLE, AND THEN THEY COULD BE, YOU KNOW, REMOVED

25    IN ACCORDANCE WITH THEIR WISHES.

AUGUST 31, 2018

1          SO THOSE ARE TWO OPTIONS, YOUR HONOR.  IT MAY BE THE

2     POSSIBILITY THERE IS THAT IT CAN BE LEFT TO A CONFERRAL, AND

3     IF MMM AGREES TO ONE OF THOSE APPROACHES, YOU KNOW, WE CAN

4     MAYBE JUST PROCEED ACCORDINGLY.  IF THEY AGREE TO A WAIVER

5     APPROACH WE COULD DO THAT, OR IF WE NEED TO COME BACK TO THE

6     COURT WE COULD DO THAT.

7          BUT, SIMILARLY, IF WE COULD MOVE THOSE FAST BECAUSE

8     WE WOULD LIKE TO EFFECTUATE THOSE FAMILIES' WISHES.  AND IF WE

9     COULD GET AGREEMENT, WE WOULD LIKE TO MOVE FORWARD THERE.

10         **THE COURT:**  MR. BERNICK, WHAT IS YOUR VIEW?

11         **MR. BERNICK:**  I AM AWARE OF THE CASES, YOUR HONOR.

12    MANY OF THESE CASES HAVE BEEN BROUGHT TO OUR ATTENTION

13    PREVIOUSLY.  IN FACT, I ASKED MY COLLEAGUE, MR. WEYMOUTH, TO

14    JOIN ME BECAUSE HE HAS BEEN THE ONE WHO HAS BEEN HANDLING

15    THOSE CASES.

16         I CAN SAY THAT FROM OUR PERSPECTIVE, SO LONG AS WE

17    ARE APPRISED OF THE SITUATION AND THE INDIVIDUAL, WE ARE HAPPY

18    WITH THE PROCESS THAT IS MOST EFFICIENT AND AVOIDS DELAY AS

19    MUCH AS POSSIBLE.

20         WE WILL TAKE YOUR HONOR'S BLESSING AND GUIDANCE ON

21    THAT ISSUE.  IF WE NEED TO SUBMIT SOMETHING TO THE COURT WE

22    CAN DO THAT.  OR IF SIMPLY A STATEMENT FROM US THAT WE HAVE NO

23    OBJECTIONS TO THE REMOVAL IS SUFFICIENT WE ARE HAPPY WITH THAT

24    APPROACH AS WELL, SO LONG AS WE ARE PROVIDED WITH NOTICE.

25         I WILL JUST ASK, YOU KNOW, MY COLLEAGUE, MR.

AUGUST 31, 2018

```
 1   WEYMOUTH, IF HE HAS ANY FURTHER THOUGHTS ON THAT, BUT I THINK
 2   THAT IS OUR VIEW.
 3           THE COURT:  OKAY.  MR. WEYMOUTH.
 4           MR. WEYMOUTH:  YOUR HONOR, T. WEYMOUTH FROM HOGAN
 5   LOVELLS.  NO ADDITIONAL VIEWS.  JUSTIN HAS ACCURATELY CONVEYED
 6   MY VIEWS OF THE SITUATION.
 7           THE COURT:  OKAY.  THANK YOU.
 8           I WOULD PREFER THE INFORMAL APPROACH, SO WHAT I -- I
 9   THINK THAT WOULD BE MORE EFFICIENT AND WOULD WORK WELL.
10           WHAT I WOULD EXPECT IS THAT, OF COURSE, IT WOULD BE
11   IN WRITING SO GOVERNMENT COUNSEL CAN IDENTIFY BY NAME THE
12   CHILD, AND COUNSEL FOR MMM CAN SIGN OFF.  IT COULD BE AN EMAIL
13   EXCHANGE.  BUT THAT WAY THERE IS WRITTEN DOCUMENTATION PER
14   CHILD AND FAMILY INVOLVED.
15           AND, WITH THAT, I WOULD BE CONTENT TO STAY OUT OF IT
16   AND NOT SIGN OFF EACH AND EVERY TIME THAT OCCURS.
17           ANY OTHER ISSUES IN THAT REGARD, MR. STEWART?
18           MR. STEWART:  YES, YOUR HONOR.  THAT SOUNDS GOOD TO
19   THE GOVERNMENT.  WE APPRECIATE YOUR SIGNING OFF ON THOSE
20   APPROACHES AND PROVIDING A PATH TO RESOLVE THE SECOND ONE I
21   MENTIONED TO YOU.  WE APPRECIATE THAT, AND THAT WORKS FOR US.
22           THE COURT:  OKAY.  LET'S CONTINUE WITH THE STATUS
23   REPORT.
24           ON PAGE 9, MR. GELERNT, YOU HAD INDICATED -- YOU HAD
25   SLIGHTLY DIFFERENT NUMBERS.  YOU WERE GOING OFF THE STATUS
```

AUGUST 31, 2018

1  REPORT FROM LAST WEEK WITH 343 IDENTIFIED PARENTS WHO HAD BEEN

2  REMOVED.  THE STEERING COMMITTEE SPOKE TO 244.

3          AND THERE IS AN INDICATION HERE THAT 80 PARENTS HAD

4  NOT YET BEEN CONTACTED.  THAT'S IN SHARP CONTRAST TO THE

5  NUMBER 4 THAT THE GOVERNMENT HAD SET OUT IN ITS -- I THINK AT

6  PAGE 3 IT LOOKED LIKE THERE WERE 4 PARENTS WHO -- UP TO 4 WHO

7  MAY NOT HAVE BEEN CONTACTED.

8          AM I MISREADING THAT, OR ARE THERE AS MANY AS 80 WHO

9  YOU HAVE NOT YET REACHED?

10         **MR. GELERNT:**  NO, YOUR HONOR.  AS OF WHEN WE

11 SUBMITTED THE REPORT THERE WERE 80.  YOU ARE READING IT

12 CORRECTLY.

13         SO WE HAVE -- WE ARE GOING TO CONTINUE TRYING TO

14 REACH THOSE INDIVIDUALS WHO WE BELIEVE THE PHONE NUMBER MAY BE

15 CORRECT AND THEY ARE SIMPLY NOT ANSWERING.  AND WE ARE CALLING

16 FIVE, SIX TIMES, BUT WE ARE GOING TO CONTINUE TO CALL.

17         WE HAVE TOLD THE GOVERNMENT THAT WE BELIEVE THAT WE

18 DO NOT HAVE PHONE NUMBERS FOR 19 INDIVIDUALS, AND THAT THERE

19 MAY BE AS MANY AS 37 WHERE THE PHONE NUMBER IS INOPERABLE.  SO

20 WE ARE MEETING AND CONFERRING TO TRY AND FIGURE OUT PRECISELY

21 WHY WE HAVE THOSE NUMBERS AND THE GOVERNMENT DOESN'T.

22         THE GOVERNMENT HAS COME BACK AND SAID THEY DO

23 BELIEVE THAT CERTAIN OF THE NUMBERS DO WORK, SO WE ARE GOING

24 TO CONTINUE TRYING THEM AGAIN.  BUT THAT IS SOMETHING WE ARE

25 MEETING AND CONFERRING ON.

AUGUST 31, 2018

```
1              ONE THING WE MENTIONED IN OUR STATUS REPORT THAT
2    WOULD BE HELPFUL FOR US IS WHEN THE GOVERNMENT PROVIDES
3    AGGREGATE NUMBERS IN THE STATUS REPORT THEY DON'T PROVIDE WHO
4    THE PARENTS ARE THAT MATCH THOSE NUMBERS.  SO, FOR EXAMPLE,
5    THE 343 REMOVED PARENTS FROM THE PRIOR WEEK HAS NOW GONE DOWN
6    TO 322, BUT IT IS NOT POSSIBLE, REALLY, FOR US TO FIGURE OUT,
7    VERY EASILY OR AT ALL, WHO THOSE 322 ARE, TO FIGURE OUT IF
8    THERE IS STILL -- AND SO THAT WOULD HELP US IF WE HAVE BETTER
9    INFORMATION LIKE THAT.
10             BUT THE BOTTOM-LINE ANSWER TO YOUR QUESTION IS WE
11   HAVE NOT REACHED 80 PARENTS, AND WE ARE CONTINUING TO TRY AND
12   WORK WITH THE GOVERNMENT TO FIGURE OUT PRECISELY WHY THEY
13   BELIEVE THEY HAVE GIVEN US PHONE NUMBERS FOR EACH OF THEM AND
14   WHY THEY BELIEVE ALL THE PHONE NUMBERS ARE OPERABLE.  SO THAT
15   HAS BEEN A BACK AND FORTH BETWEEN US AND THE GOVERNMENT.
16             THE COURT:  MR. STEWART, YOU HAD INDICATED AT PAGE 3
17   THAT THERE WERE 322 REMOVED PARENTS AND THAT 318 OF THOSE
18   PARENTS HAD ACTUALLY BEEN CONTACTED.  WHAT'S CAUSING THAT
19   LARGE DISCREPANCY?  THAT IS A DIFFERENCE OF 4 ON THE ONE HAND
20   AND 80 ON THE OTHER.
21             MR. STEWART:  IT IS HARD TO SAY ON A GLOBAL BASIS,
22   YOUR HONOR.  I CAN SAY THAT AS TO THE INOPERATIVE PHONE
23   NUMBERS WE HAVE HAD SOME SUCCESS IN OUR CONFERRALS WITH THE
24   STEERING COMMITTEE ON THAT.
25             THEY GAVE US A NUMBER OF PARENTS' PHONE NUMBERS THAT
```

AUGUST 31, 2018

1   THEY HAD FOUND TO BE INOPERATIVE OR TOLD US WEREN'T OPERATIVE.

2   WE FOUND AT LEAST A DOZEN -- OR A DOZEN SUCH, YOU KNOW,

3   INSTANCES WHERE THE CHILD HAD RECENTLY BEEN IN CONTACT AND

4   WERE ABLE TO GIVE THE STEERING COMMITTEE THE LATEST

5   INFORMATION.  SO I THINK WE CAN CONTINUE WORKING ON THOSE TO

6   CLOSE THE LOOPS.

7           IT IS POSSIBLE THAT FOR SOME INFORMATION IT IS A

8   LITTLE MORE DATED AND MAYBE STALE.  BUT WE CAN DRILL DOWN ON

9   THAT PIECE TO JUST MAKE SURE WE ARE DOING THE BEST WE CAN TO

10  GET THESE CONTACTS IN.

11          **THE COURT:**  WHEN YOU SAY 318 PARENTS HAVE ACTUALLY

12  BEEN CONTACTED THAT COULD BE TRUE, AND IT COULD BE BASED ON

13  CONTACTS THAT THE GOVERNMENT HAS MADE ON ITS OWN OR THROUGH

14  O.R.R. REPRESENTATIVES WORKING WITH THE CHILDREN.  WOULD THAT

15  BE CORRECT?  VERSUS THE PLAINTIFFS' STEERING COMMITTEE SAYS 80

16  BECAUSE IT IS RELATIVELY NEW TO THIS SEARCH.  AND IT MAY BE

17  THAT THEIR NUMBER IS LARGER THAN THE GOVERNMENT'S SIMPLY

18  BECAUSE THE GOVERNMENT HAS BEEN IN CONTACT WITH THESE CHILDREN

19  AND THEIR PARENTS FOR A MUCH LONGER PERIOD OF TIME.

20          IS THAT A FAIR ASSUMPTION?

21          **MR. STEWART:**  THAT IS, YOUR HONOR.  THAT IS.

22          AND IT IS -- I BELIEVE IT FITS INTO THE GENERAL --

23  O.R.R. BUILDS THESE RELATIONSHIPS AND TRIES TO, YOU KNOW, THAT

24  SORT OF THING.  THAT IS A GOOD ASSUMPTION, YOUR HONOR.

25          **THE COURT:**  SO THEN I WOULD ASSUME THAT OF THIS 80

AUGUST 31, 2018

```
 1   WHERE THE STEERING COMMITTEE HAS NOT MADE CONTACT, AS THEY
 2   CONTINUE TO MEET AND CONFER WITH THE GOVERNMENT
 3   REPRESENTATIVES, THIS 80 NUMBER SHOULD DROP PRECIPITOUSLY
 4   CLOSER TO THE NUMBER 4.
 5            AND THEN I WOULD FURTHER ASSUME THAT IF THE NUMBER
 6   IS ACTUALLY 4 WHERE THERE IS NO CONTACT BY EITHER SIDE, THAT
 7   THAT IS WHERE A CONCERTED EFFORT WOULD BE MADE, AND PERHAPS
 8   INVOLVING MORE OF THE STATE DEPARTMENT AND SOME OF THOSE
 9   CONTACTS, TO TRY TO FERRET OUT AND FIND, HOPEFULLY, WHAT WILL
10   BE A SMALL HANDFUL OF PARENTS WHO HAVE YET TO BE CONTACTED.
11            MR. STEWART:  YES, YOUR HONOR.  THAT ALL SOUNDS
12   RIGHT TO ME.  AND HOPEFULLY WE WILL RESOLVE THINGS EVEN SOONER
13   THAN THAT, BUT WE WILL -- THAT ALL SOUNDS CORRECT TO ME.
14            THE COURT:  AND THEN ON MR. GELERNT'S REQUEST FOR
15   PARENT NAMES, ANY OBJECTION TO THAT?
16            THAT SEEMS LIKE A COMMON SENSE, LOGICAL APPROACH TO
17   THIS DISCOVERY.  THAT WAY PLAINTIFFS' STEERING COMMITTEE CAN
18   INTELLIGENTLY LOOK AT THE NUMBERS AND SEE WHO IS MISSING.
19            MR. STEWART:  YOUR HONOR, I BELIEVE THAT WE -- ON
20   THAT, I AM A LITTLE UNCERTAIN AS TO MR. GELERNT'S POINT
21   BECAUSE I THOUGHT I UNDERSTOOD THE INFORMATION TO BE SOMETHING
22   THAT WE SEND HIM ALREADY WEEKLY, AND THAT WE ARE PLANNING TO
23   SEND HIM ON FRIDAY, YOU KNOW, WE ARE ABOUT TO SEND OUR LATEST
24   TODAY.
25            IF I AM MISUNDERSTANDING SOME PIECE THERE, THEN WE,
```

AUGUST 31, 2018

1    THE GOVERNMENT, CAN TALK TO THE STEERING COMMITTEE AND SEE

2    WHAT ANY DISCONNECT IS, OR IF THERE IS SOMETHING THEY ARE NOT

3    SEEING IN OUR REPORT, OR THAT SORT OF THING.

4              WHEN HE SAID THAT WE TOOK IT TO MEAN THAT THAT IS

5    SOMETHING WE ALREADY SEND, I BELIEVE.

6              **THE COURT:**  OKAY.

7              **MR. GELERNT:**  THIS IS MR. GELERNT.

8              I THINK THAT WE ARE GOING TO HAVE TO PROBABLY

9    CONTINUE TALKING TO THE GOVERNMENT WITH YOUR SUGGESTION THAT

10   THAT IS INFORMATION THAT WOULD BE GOOD FOR US TO HAVE, AND

11   THEN HOPEFULLY WE CAN FIGURE OUT A WAY TO MAKE SURE WE GET

12   THAT INFORMATION, AND MEET AND CONFER WITH THE GOVERNMENT.

13             **THE COURT:**  YES.  SO I WILL INVITE COUNSEL TO MEET

14   AND CONFER.  BUT WHAT I WOULD EXPECT IS THAT THERE BE

15   IDENTIFYING INFORMATION SO THAT RATHER THAN JUST RAW NUMBERS,

16   322, FOR EXAMPLE, VERSUS 343, THAT EACH NUMBER HAS A NAME OR

17   AN A-FILE NUMBER OR SOME IDENTIFIER SO THAT THE STEERING

18   COMMITTEE CAN LOGICALLY ACCOUNT FOR EVERY PERSON.

19             SO I WILL SIMPLY DEFER ON THAT, WITH THOSE

20   SUGGESTIONS.

21             AND, RELATEDLY, MR. GELERNT MADE A REQUEST THAT WHEN

22   DEFENDANTS COMPILE AND SYNTHESIZE CLASS MEMBER INFORMATION IN

23   ORDER TO PROVIDE UPDATED STATISTICS TO THE COURT EVERY WEEK,

24   THAT THAT SAME INFORMATION BE PROVIDED TO PLAINTIFFS.  AND

25   THAT SEEMS LIKE AN APPROPRIATE REQUEST.

AUGUST 31, 2018

1          ANY OBJECTION TO THAT?

2          THAT IS SET OUT AT PAGE 14.

3          **MR. STEWART:**  YOUR HONOR, THE GOVERNMENT DOES

4    DISAGREE WITH THAT BECAUSE THE PRESUMPTION BEHIND THAT REQUEST

5    IS JUST WRONG.  THE ASSUMPTION THERE IS THAT WE, THE

6    GOVERNMENT, COMPILE -- IN THE WORDS OF THE ACLU, THAT WE

7    COMPILE AND SYNTHESIZE CLASS MEMBER INFORMATION IN ORDER TO

8    PROVIDE THESE UPDATED STATISTICS, AND WE JUST SORT OF HAVE

9    THAT INFORMATION.  THAT IS NOT HOW THIS INFORMATION IS PUT

10   TOGETHER, AND THAT WOULD BE AN EXTRAORDINARILY

11   LABOR-INTENSIVE, DIFFICULT PROCESS.

12          I WOULD SUGGEST THAT, YOU KNOW, WE AGAIN, YOU

13   KNOW -- WE WOULD OBJECT TO PROVIDING THAT.  IT IS NOT

14   SOMETHING WE JUST KIND OF HAVE AVAILABLE, AND IT WOULD BE

15   QUITE A DIFFICULT EFFORT TO COLLECT THAT AND PRODUCE IT SO

16   REGULARLY OR SWIFTLY.

17          MAY I PROPOSE THAT WE CONTINUE TO MEET AND CONFER ON

18   THAT.  IF WE CAN'T GET A RESOLUTION, I THINK THIS IS THE KIND

19   OF ISSUE, YOUR HONOR, WHERE YOU WOULD WANT TO HEAR MORE ABOUT

20   THE RELEVANCE OF THE INFORMATION, THE BURDENS, YOU KNOW, THE

21   HELPFULNESS, BEFORE YOUR HONOR MAKES A RULING, AS YOU HAVE

22   DONE PREVIOUSLY WITH SOME OF THE OTHER INFORMATION REQUESTS

23   WHERE IT TURNED OUT THAT NARROWER MORE TARGETED APPROACHES

24   SEEMED TO BE THE RIGHT WAY TO GO.

25          **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT.

AUGUST 31, 2018

1          WE ARE HAPPY TO SORT OF CONTINUE MEETING AND

2     CONFERRING.

3          I THINK JUST OUR OVERRIDING POINT IS SIMPLY THE ONE

4     YOU MADE JUST BEFORE, IS WE JUST NEED TO SORT OF KNOW HOW THE

5     NUMBERS CHANGE, WHICH PARENTS ARE DROPPING OFF, WHICH PARENTS

6     ARE ADDED.

7          WE DON'T NECESSARILY NEED IT TO BE DONE IN A

8     PARTICULAR WAY OR NEED ALL OF THE INFORMATION THE GOVERNMENT

9     HAS, BUT SOME WAY IN WHICH WE CAN SORT OF UNDERSTAND WHY

10    CERTAIN BUCKETS OF INFORMATION -- OF PARENTS ARE GOING UP OR

11    DOWN.

12         SO WHATEVER WAY WE CAN FIGURE OUT, AS LONG AS THAT

13    IS SORT OF THE OVERRIDING GOAL OF BOTH PARTIES AND THE COURT

14    IS THAT WE CAN UNDERSTAND WHY THE NUMBERS ARE GOING UP AND

15    DOWN.  THAT IS WHAT WE WOULD NEED.  WITH THAT GUIDANCE, I

16    THINK WE CAN PROBABLY JUST MEET AND CONFER.

17         **THE COURT:**  YES.  OKAY.  I THINK WE HAVE CLARITY,

18    THEN.  AND I WILL ASK COUNSEL TO MEET AND CONFER ON THAT.

19         AND I AGREE WITH MR. GELERNT, BECAUSE I AM IN THE

20    SAME BOAT AS MR. GELERNT.  WHEN I READ THESE NUMBERS THEY ARE

21    NUMBERS, THEY ARE DIGITS.

22         SO IT IS HARD FOR ME TO UNDERSTAND WHAT'S CAUSING

23    THE DIFFERENCE.  AND CERTAINLY IF I WERE ON THE STEERING

24    COMMITTEE I WOULD WANT TO KNOW WHAT PERSON IS BEHIND THE

25    NUMBER.

AUGUST 31, 2018

1    AND THAT WAY THERE CAN BE REAL CLARITY AND PRECISION

2   IN KEEPING TRACK OF EACH AND EVERY PERSON, WHICH, OF COURSE,

3   IS VERY IMPORTANT.  AND IT AVOIDS THE NATURAL TENDENCY TO

4   TREAT EACH PERSON AS A NUMBER.

5    SO I THINK IDENTIFYING BY NAME OR, IF NECESSARY, AN

6   A-FILE NUMBER WHERE THERE IS A CLEAR IDENTIFICATION TO THE

7   PERSON, THAT THAT WOULD BE THE WAY TO GO.

8    WITH THOSE OBSERVATIONS, I WILL SIMPLY ASK COUNSEL

9   TO MEET AND CONFER ON THAT ISSUE.

10    ON THE PARENTS WHO WERE IN COUNTRY, MR. STEWART,

11   WHAT'S THE STATUS THERE WITH RESPECT TO REUNIFICATION?  I MEAN

12   TO SAY PARENTS WHO WERE RELEASED IN COUNTRY AND HAD YET TO BE

13   REUNIFIED.

14    **MR. STEWART:**  I BELIEVE THAT YOUR HONOR -- THAT YOUR

15   HONOR WAS -- THE NARRATIVE FROM LAST WEEK ABOUT, I BELIEVE,

16   THE GROUP OF 10 AND THE GROUP OF 9.  AND I THINK MOST OF THOSE

17   ARE -- A NUMBER OF THOSE HAVE BEEN RESOLVED OR THEY ARE

18   FURTHER KIND OF DRILLED DOWN TO, LIKE, FOLLOWING UP ON A RED

19   FLAG OR LOOKING INTO, YOU KNOW, A SPONSORSHIP FOR SOMEONE, OR

20   I THINK A CHILD WELFARE ISSUE OR THAT SORT OF THING.

21    I THINK THEY FALL IN SOME DIFFERENT CATEGORIES, BUT

22   I THINK WE ARE REACHING -- THIS WAS SORT OF, YOU KNOW,

23   CHILDREN WITH PARENTS IN THE INTERIOR.  YOU KNOW, SOME DROPPED

24   OUT OF THAT CATEGORY, SOME HAD RED FLAGS, AND OTHERS WE ARE

25   JUST WORKING TOWARD AN APPROPRIATE DISCHARGE.  SO WE ARE

AUGUST 31, 2018

24

 1    CONTINUING TO WORK ON THOSE.

 2            **THE COURT:**  OKAY.  THANK YOU.

 3            THEN ON NTC, LET'S TURN TO THAT FOR A MOMENT.

 4            ON PAGE 2 THERE IS AN INDICATION OF 99 CHILDREN

 5    INVOLVED IN THAT CASE.  54 OF 99 HAVE BEEN DISCHARGED.  SAYS

 6    38 OF THE 54 WERE DISCHARGED AND REUNITED.

 7            SO HAVE THEY BEEN REUNITED AND RELEASED, OR REUNITED

 8    AND ARE THEY DETAINED IN A RESIDENTIAL FAMILY CENTER?

 9            **MR. STEWART:**  I DON'T KNOW THAT I -- I AM NOT SURE

10    OF AN ACROSS-THE-BOARD ANSWER FOR THAT, YOUR HONOR.  IT MAY BE

11    A MIX.  BUT LET ME SEE IF I HAVE GOT SOMETHING THERE.

12            DISCHARGED IS -- IT MEANS RELEASED FROM O.R.R., SO

13    THERE COULD BE A MIX OF BOTH.  PERHAPS SOME IN FAMILY

14    RESIDENTIAL CENTERS, PERHAPS SOME JUST RELEASED AND, YOU KNOW,

15    KIND OF WITH TRACKING OR CHECKING OBLIGATIONS, THAT SORT OF

16    THING.

17            **THE COURT:**  WHAT ABOUT THE OTHER 16?  SO 38 OF 54

18    WERE RELEASED, WHAT HAPPENED TO THE OTHER 16?

19            **MR. STEWART:**  THOSE OTHER 16, I THINK THOSE

20    GENERALLY WOULD BE RELEASED TO NONPARENT SPONSORS, YOUR HONOR.

21    SO JUST THE NORMAL KIND OF, YOU KNOW, MAYBE THE PARENT ELECTS

22    TO HAVE SOMEBODY RELEASED TO AN UNCLE, PERHAPS, OR ANOTHER

23    APPROPRIATE SPONSOR.

24            **THE COURT:**  OKAY.  THEN CHILDREN IN O.R.R. CARE, 41

25    OF 99.  I THINK THOSE NUMBERS ARE SELF-EXPLANATORY.

AUGUST 31, 2018

```
 1            MR. STEWART:  YES, YOUR HONOR.  I THINK, HOPEFULLY

 2   MOST OF THOSE -- THE ISSUE WITH THE BULK, YOU WILL SEE,

 3   INVOLVE PARENTS OUTSIDE OF THE UNITED STATES.  AND HOPEFULLY

 4   WITH THE CONTINUED SWIFT MOVING OF THE REUNIFICATION PLAN WE

 5   WILL BE ABLE TO REUNITE AND COMPLETE THINGS THERE.

 6            THE COURT:  YES.  OKAY.  THANK YOU.

 7            THEN, MS. LEVY, THERE WAS A DISCREPANCY.  YOUR

 8   NUMBERS INDICATE 53 CHILDREN IN O.R.R. CARE AS OPPOSED TO 41.

 9   DO WE KNOW WHAT'S CAUSING THAT?

10            MS. LEVY:  THAT'S RIGHT, YOUR HONOR -- I'M SORRY, GO

11   AHEAD.

12            THE COURT:  I AM SORRY.  GO AHEAD.

13            MS. LEVY:  THAT'S RIGHT.  WE ARE HAVING THE SAME

14   TROUBLE AS OTHER COUNSEL IN SIFTING THROUGH THE DATA THAT IS

15   PROVIDED -- THAT WAS PROVIDED TO US YESTERDAY BY THE

16   GOVERNMENT, BECAUSE IT DOESN'T MATCH THE CATEGORIES OF DATA

17   THAT WE HAVE BEEN EXCHANGING WITH THEM PREVIOUSLY.

18            IT COULD BE THAT THERE ARE CHILDREN WHO HAVE BEEN

19   DISCHARGED AND WE HAVEN'T BEEN NOTIFIED THAT THEY HAVE BEEN

20   DISCHARGED YET.  THAT COULD ACCOUNT FOR THE DISCREPANCY.  BUT

21   WE ARE TRYING TO FIGURE OUT WHAT DOES ACCOUNT FOR THE

22   DISCREPANCY.

23            THE COURT:  OKAY.  I THINK, THEN, I WILL MAKE THE

24   SAME REQUEST OF GOVERNMENT COUNSEL, TO PROVIDE FURTHER

25   IDENTIFYING INFORMATION.  AND I THINK THIS PROBLEM WILL BE
```

AUGUST 31, 2018

```
 1   ADDRESSED THROUGH MORE PRECISE IDENTIFICATION OF THE PARENTS

 2   BEHIND EACH NUMBER, OR THE CHILD BEHIND THE NUMBER.

 3            MS. LEVY:  THANK YOU.

 4            THE COURT:  ANYTHING ELSE ON THE NTC CASE?

 5            MS. LEVY:  NO.  I THINK THAT ANY DELAYS HAVE BEEN

 6   COVERED BY THE AGREEMENTS THAT ARE BEING MADE IN THE OTHER

 7   LITIGATION, SO IT LOOKS LIKE WE ARE MOVING AHEAD TOWARDS

 8   REUNIFICATION.

 9            THE COURT:  OKAY.  THANK YOU.

10            THEN, MR. STEWART, WHAT'S THE STATUS ON THE DORA

11   CASE IN WASHINGTON DC?  I HAVE NOT HEARD FROM JUDGE FRIEDMAN.

12            MR. STEWART:  YES, YOUR HONOR.  AS I RECALL, AS YOUR

13   HONOR HAS CONTINUED TO GIVE THE PARTIES A LITTLE BIT MORE TIME

14   TO MEET AND CONFER.  JUDGE FRIEDMAN HAD, IN TURN, KIND OF

15   KEPT -- THERE IS NO SORT OF FURTHER ACTION ON THE DORA CASE.

16   I THINK IT IS KIND OF ALL EYES ON WHAT HAPPENS IN THE ONGOING

17   MEET AND CONFER DISCUSSIONS AMONG MMM, MS. L., AND THE DORA

18   PLAINTIFFS.  SO NO ACTION THERE.  AND THE PARTIES ARE

19   CONTINUING TO TRY TO MEET AND CONFER AND SEE WHAT RESOLUTION

20   MAY BE REACHED.

21            THE COURT:  ON THE MEET AND CONFER WITH THE MMM

22   CASE, ARE THE DORA ATTORNEYS INVOLVED IN THAT AS WELL?

23            MR. STEWART:  THEY ARE, YOUR HONOR, YES.  WE HAVE

24   INCLUDED THEM.

25            THE COURT:  OKAY.  SO THAT'S A BIG ISSUE, AND OF
```

AUGUST 31, 2018

```
 1   COURSE THAT'S THE ONE THAT'S LURKING.  AND COUNSEL HAVE
 2   INDICATED THAT THEY WOULD LIKE TO REPORT BACK TO THE COURT, I
 3   THINK ON TUESDAY, AT 3:00 OR THEREABOUTS.
 4            ARE WE OPTIMISTIC?  WE HAVE BEEN IN A HOLD PATTERN
 5   FOR A COUPLE OF WEEKS.  AND ARE THE DISCUSSIONS TRENDING IN
 6   THE RIGHT DIRECTION?
 7            MR. STEWART:  I THINK, YOUR HONOR, EVERYBODY IS
 8   WORKING VERY HARD.  AND, YOU KNOW, HOPEFULLY WE WILL BE ABLE
 9   TO PROVIDE FIRMER INFORMATION SOON.
10            I THINK IT IS -- FROM THE GOVERNMENT'S PERSPECTIVE
11   WE DO WANT TO BRING THIS TO A RESOLUTION PROMPTLY.  AND
12   HOPEFULLY WE CAN GET IT SET AND IT WILL BE A GOOD RESOLUTION.
13            THE COURT:  OKAY.
14            MR. BERNICK:  YOUR HONOR, THIS IS JUSTIN BERNICK FOR
15   THE MMM PLAINTIFFS.
16            WE AGREE WITH THAT.  WE FEEL LIKE THE TIME THE COURT
17   HAS ALLOWED US HAS ENABLED US TO SUBSTANTIALLY NARROW THE
18   ISSUES ON WHICH THERE IS DISAGREEMENT.  IT STILL REMAINS TO BE
19   SEEN IF ANY OF THOSE REMAINING DISAGREEMENTS WILL MAKE IT
20   IMPOSSIBLE TO REACH AN OVERARCHING AGREEMENT.  BUT I THINK THE
21   AREAS OF DISAGREEMENT HAVE NARROWED SUBSTANTIALLY, SO IT IS
22   STILL WORTH TAKING THE TIME TO SEE IF WE CAN REACH A
23   RESOLUTION.  WE REMAIN CAUTIOUSLY OPTIMISTIC.
24            THE COURT:  OKAY.  EXCELLENT.
25            AS I MENTIONED, THE ISSUES PRESENTED IN MMM AND DORA
```

AUGUST 31, 2018

 1   WITH RESPECT TO THE PARENTS' AND CHILDREN'S RIGHTS, VIS-A-VIS

 2   THE ASYLUM PROCESS, ARE SIGNIFICANT.  AND IF THERE CAN BE AN

 3   AGREEMENT BETWEEN AND AMONG THE PARTIES THAT OBVIOUSLY WOULD

 4   BE THE BEST RESOLUTION.

 5          MOVING WITH ALL DUE SPEED, OF COURSE, IS IMPORTANT

 6   BECAUSE MANY, MANY FAMILIES STILL REMAIN SEPARATED, AND THAT

 7   WILL CONTINUE TO BE THE CASE UNTIL AND UNLESS THESE ISSUES ARE

 8   RESOLVED.

 9          SO I WILL ASK COUNSEL TO CONTINUE TO MEET AND

10   CONFER, WORK HARD THIS WEEKEND OVER THOSE ISSUES, AND REPORT

11   BACK TO THE COURT ON TUESDAY.

12          HOPEFULLY THERE WILL BE A RESOLUTION ON THOSE

13   IMPORTANT ISSUES.  IF NOT, WE WILL NEED TO RECONVENE.  IT

14   COULD BE THROUGH EMAIL WITH MY LAW CLERK OR A TELEPHONIC WHERE

15   WE SET UP SOME KIND OF AN EXPEDITED BRIEFING SCHEDULE SO THAT

16   THE COURT CAN ADDRESS THESE ISSUES PROMPTLY.

17          BUT I WILL REMAIN OPTIMISTIC THAT THERE WILL BE A

18   RESOLUTION AND CONTINUE, COUNSEL, TO WORK IN THAT DIRECTION.

19   OTHERWISE I WILL SIMPLY WAIT TO HEAR FROM COUNSEL TUESDAY ON

20   THE MMM CASE.

21          AND THEN, AGAIN, A JOINT STATUS REPORT ON THE

22   REMAINING CASES ON THURSDAY, WITH THE FOLLOW-UP TELEPHONIC

23   AGAIN NEXT WEEK, FRIDAY, AT 1:00 O'CLOCK.

24          HAVE WE ADDRESSED ALL ISSUES?

25          **MR. STEWART:**  I THINK SO, YOUR HONOR, FROM THE

AUGUST 31, 2018

```
 1   GOVERNMENT'S PERSPECTIVE.

 2            MR. GELERNT:  YES, YOUR HONOR, FOR MS. L.

 3            MR. BERNICK:  YES FOR MMM AS WELL.

 4            MS. LEVY:  YES, YOUR HONOR.

 5            THE COURT:  OKAY.  THANK YOU VERY MUCH.  HAVE A GOOD

 6   WEEKEND.  I WILL LOOK FORWARD TO THE REPORTS AND HEARING FROM

 7   COUNSEL NEXT WEEK.  THANK YOU.

 8            MR. GELERNT:  THANK YOU, YOUR HONOR.

 9            MR. STEWART:  THANK YOU, YOUR HONOR.

10

11                          *   *   *

12            I CERTIFY THAT THE FOREGOING IS A CORRECT
             TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
13            IN THE ABOVE-ENTITLED MATTER.

14            S/LEEANN PENCE                8/31/2018
             LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
15

16

17

18

19

20

21

22

23

24

25
```

AUGUST 31, 2018