| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE MURLEY<br>Trial Attorney<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, DC 20442<br>Telephone: (202) 532-4824<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt\*<br>Judy Rabinovitz\*<br>Anand Balakrishnan\*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T:  (212) 549-2660<br>F:  (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T:  (415) 343-1198<br>F:  (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*\*Admitted Pro Hac Vice* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**JOINT STATUS REPORT** |

The Court ordered the parties to file a joint status report on September 6, 2018, in anticipation of the telephonic status conference scheduled for September 7, 2018, at 1:00 p.m. PST. The parties submit this joint status report in accordance with the Court's instruction.

I.  **DEFENDANTS' POSITIONS**

 A. **Update on Reunifications**

Defendants report on the current status of reunification with children ages 0 through 17 in the table below. The data presented in this Part reflects approximate numbers maintained by ORR at least as of September 4, 2018. These numbers are dynamic and continue to change as more reunifications or discharges occur. Changes in format from last week's reporting are explained below.

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members originally identified | 103 | 2,551 | 2,654 |
| Discharged Children | | | |
| Total children discharged from ORR care: | 84 | 2,097 | 2,181 |
| • Children discharged by being reunified with separated parent | 72 | 1,905 | 1,977 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 12 | 192 | 204 |
| Children of Out-of-Class Parents Remaining in Care with ORR | | | |
| Children still in care where further review shows they were not separated from parents by DHS: | 5 | 52 | 57 |
| Children of In Class Parents Remaining in Care with ORR | | | |
| Children remaining in care where the adult associated with the child is not eligible for reunification _or_ is not available for discharge at this time: | 14 | 402 | 416 |
| • Parent indicated desire against reunification (includes a significant number of parents outside the U.S., including indications conveyed through Steering Committee): | 2 | 197 | 199 |
| • Adult presently outside the U.S.: | 6 | 298 | 304 |
| • Adult in other federal, state, or local custody: | 0 | 9 | 9 |
| • Adult red flag background check: | 8 | 23 | 31 |
| • Adult red flag case review – safety & well-being: | 0 | 3 | 3 |

This report contains a new category, "Children of Out-of-Class Parents Remaining in Care with ORR." The "Children still in care where further review shows they were not separated from parents by DHS" row under that category has been moved from the "Children Remaining in ORR Care" category, where it had

previously been reported. *Compare* 8/30 JSR at 2. This movement reflects that the government has made a final determination that those cases did not constitute "adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS," and therefore the affected adults are not *Ms. L* class members. ECF. No. 82 at 17 (defining class). Thus, while the group of individuals is largely the same as last week's JSR (which identified 52 cases), this categorization more accurately reflects their final status with Defendants. Defendants intend to provide Plaintiffs a line list of the 57 such cases on or before September 7, 2018.

Additionally, the separate category "Adult red flag case review – parentage" no longer appears because those cases are now subsumed in the 57 cases determined not to be separations from parents by DHS.

The disposition and categorization of these such cases, combined with a significant number of children discharged from ORR care within the past week (24), accounts for the significant difference in the total number between this week and last of "Children remaining in care where the adult associated with the child is not eligible for reunification or is not available for discharge at this time."

## B. Reunification of Removed Class Members

Defendants report on the current status of reunification of released and removed class members in the table below. The data presented in this Part reflects approximate numbers maintained by ORR as of at least September 4, 2018. These numbers are dynamic and continue to change as the reunification process moves forward.

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 304 | Def's. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 300 | Def's. |
| | Children with "red flags" for safety per background check | 4 | Def's. |
| | Children with "red flags" for safety per case file review | 0 | Def's. |
| | Children with "red flags" for parentage | 0 | Def's. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 304 | Def's. |
| | Children with no contact issues identified by either party | 253 | Def's. & Pl's. |
| | Children with contact issues identified by Plaintiffs, but not Defendants | 47 | Def's. & Pl's. |
| | Children with no recent successful contact by either party | 3 | Def's. |
| | Children with parent contact information provided to ACLU by Government | 303 | Def's. |

| PROCESS 3: Determine Parental Intention for Minor | Children for whom ACLU has communicated parental intent for minor: | 162 | Pl's. |
|---|---|---|---|
| | • Children whose parents waived reunification | 109 | Pl's. |
| | • Children whose parents chose reunification in country of origin | 53 | Pl's. |
| PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 53 | Pl's. |
| | • Children in ORR care with orders of voluntary departure | 20 | Def's. |

Contact information has been identified for all of the 304 children currently in ORR care with parents departed. For 253 of these children, neither Plaintiffs nor Defendants have identified an issue with contacting the parent. As of September 4, Plaintiffs had given Defendants various lists of alleged inoperative phone numbers. *See, e.g.*, 8/30 JSR at 9 (identifying 37 alleged inoperative phone numbers). On August 29, Defendants provided information regarding 12 instances in which children on Plaintiffs' lists had been in recent contact with their parents. Defendants investigated 50 further instances in which Plaintiffs had alleged inoperative phone numbers. For 47 of the 50 cases, Defendants found that there was recent successful contact between parent and child. Defendants were further able to identify updated contact information in 30 of these cases, and intend to provide that information to Plaintiffs in advance of tomorrow's status conference. Three cases have had no

recent successful contact by either party, and Defendants propose to meet and confer further on those cases, and more generally regarding continued issues around alleged inoperative phone numbers.[1]

### C. *M.M.M.* TRO Negotiations

The parties are meeting and conferring on the issues set forth in the Court's August 17 order, ECF No. 196. The parties request that they be permitted an extension until the September 7 status conference, at which point the parties can update the Court on the meet-and-confer efforts.

### D. Information Sharing

Plaintiffs continue to make numerous demands for data. As a general matter, Defendants have been working to provide information requested by Plaintiffs, or to meet and confer with Plaintiffs regarding the requested information. At last week's status conference, the Court urged Defendants to provide Plaintiffs with identifying information that underlies the weekly numbers reported by Defendants. As explained below, Defendants are already providing, or agree that they will provide, a significant amount of information that underlies the weekly numbers reported in

---

[1] Defendants further note that in certain instances, it is possible for contact to have been made between parent and child, but there is no updated information reflected for the parent, when the parent was the one to initiate the call. Defendants will continue to attempt to obtain parental contact information in those cases.

Parts A and B above and that should give Plaintiffs the information that Defendants understand them to be seeking.

For the weekly numbers reported in Part A, regarding overall reunifications, Plaintiffs have stated that they believe that "Defendants compile and synthesize Class member information in order to provide updated statistics to the Court every week" and have asked Defendants to provide that information to Plaintiffs. As Defendants have explained to Plaintiffs and the Court, Plaintiffs' statement is incorrect—that information is not "compile[d] and synthesize[d]" in the manner that Plaintiffs assume. Nonetheless, Defendants are working to provide Plaintiffs with information that would satisfy Plaintiffs' desire to better understand Defendants' weekly reporting, as the Court suggested.

To start, Defendants clarify that much of the information that Plaintiffs are seeking is contained in the data that Defendants have already provided to Plaintiffs. To assist Plaintiffs, Defendants will provide Plaintiffs with more detailed explanations of what is contained in the data that Defendants have produced and in the data that Defendants produce going forward. As an example, Defendants already are providing weekly information regarding class members who have waived reunification and regarding class members who are detained at ICE family residential center. Defendants also recently have provided spreadsheets identifying class members inside the United States who have and have not yet been reunified,

and possible class members who are in other custody such as U.S. Marshals Service or state criminal custody. Defendants are assessing whether any of those spreadsheets already provided should be updated, and will provide Plaintiffs with updated spreadsheets of the information already provided as appropriate.

Moreover, to provide further clarity into the numbers reported in Part A of Defendants' weekly report, Defendants are willing to provide the following additional information by Tuesday, September 11, 2018:

1. A list of children, by A#, in the "Total children discharged from ORR care" category;

2. A list of children, by A#, in the "Children discharged under other appropriate circumstances" category; and

3. A list of children, by A#, in the "Children of In Class Parents Remaining in Care with ORR" category.

In addition, Defendants will update the list of children in the "Total children discharged from ORR care" category weekly by the Tuesday following each JSR filing.

E. Criminal History Exclusions—Proposed Meet and Confer Process

With respect to parents who have not yet been reunified due to concerns related to criminal history, fitness, or danger, Defendants intend to make a final determination regarding exclusions from eligibility for class membership or relief by September 7, 2018, and intend to provide the basis for those exclusions to Plaintiffs on that date. The parties can then meet and confer regarding each of those

excluded individuals, and if they are unable to resolve any disagreements then Plaintiffs can then bring the cases of those individuals who they believe were wrongly excluded, either from class membership or from relief, to this Court for resolution. Defendants understand that Plaintiffs agree to this proposed approach.

## II. PLAINTIFFS' POSITIONS

### A. Steering Committee Progress

Over the past week, the Steering Committee has made significant progress in contacting parents and confirming parent and child wishes with respect to reunifications. As of Tuesday, September 4, the Committee delivered final preferences for 147[2] parents to the Government, up from 43 reported a week ago. Plaintiffs' counsel and Steering Committee member Justice in Motion continue their efforts to locate parents with non-operative phone numbers on-the-ground in Central America, with Plaintiffs' counsel traveling to Guatemala this week to meet with class members concerning their cases.

First, we report the status of our efforts based on the Government's August 28 list of 322 children in ORR custody with removed parents. With respect to those children and parents, the Steering Committee's progress in contacting parents and delivering preferences to the Government is as follows:

| Removed parents identified by the Government to Steering Committee | 322 (reported to Steering Committee on 8/28/2018) |
|---|---|

---

[2] This figure is based on the Government's report of 322 children remaining in ORR custody as of August 28. As noted *infra*, the Steering Committee has delivered the final preferences for 171 parents to the Government, of 413 children originally reported by the Government to have been in ORR custody.

| | |
|---|---|
| • Parents for whom Committee has no phone number | 17 |
| Steering Committee called phone number for parent (using Government-provided number or number otherwise obtained by Steering Committee) | 305 |
| Steering Committee spoke to parent (either by phone or in person) | 238 |
| • Parents successfully reached through phone contact | 230 |
| • Parents found through outreach by NGOs | 8 |
| • Parents called and not reached (and not reached through NGO efforts) | 67 |
| o Phone number inoperable or ineffective | 28 |
| o Contact efforts ongoing | 39 |
| Parents reached by phone or NGO outreach | 238 |
| Reunified: confirmed reunifications in home country | 1 |
| Parent's preference with respect to reunification has been confirmed to match child's | 182 |
| Preliminary indication of parent's wishes with respect to reunification | 25 |
| Ongoing discussions with parent about reunification | 30 |
| Parent's final preference has been communicated to government | 147 |

As discussed further below, the Steering Committee is meeting and conferring with the Government to clarify the bases for which children and parents

are being removed from the Government's operative list, and indeed has continued to reach out to parents who were on the Government's previous lists, but who have been omitted from the August 28 list.[3]

Some of those efforts have identified parents and children who remain separated, and have chosen to be reunified, and we have reported those family's decisions to the Government. Indeed, as of Tuesday, September 4, the Steering Committee had reported on the preferences of an additional 24 families who were on the Government's earlier lists, but are not on the August 28 list. The Steering Committee's progress for this larger group of 413 is reported at the end of the Steering Committee Report, so that the Court may compare progress in the past week using the same baseline group.

## Outstanding Data-Related Issues

The Steering Committee continues to meet and confer with the Government regarding data requested from the Government in order to ensure that all parents are accounted for and reunified with their children imminently, if that is their wish. The parties have made progress regarding a number of issues previously reported to the Court, and the Steering Committee continues to hope that these issues can be resolved informally.

## Removals from Government Lists

The Steering Committee continues to meet and confer with the Government regarding information explaining why parents and children have been removed from or added to the lists of class members or children in ORR custody previously

---

[3] The Government provided the first set of datasets on August 7th and 10th. Both lists combined included a total number of 412 children in ORR care. On August 24th, the Government's list included one additional child in ORR care with a removed parent, for a total of 413. The August 28 list includes only 322.

produced by the Government. For the Steering Committee to effectively secure the wishes of <u>all</u> class members, it needs the Government to provide for each prior list, the following:

- Particularized information for each child removed from each list,[4] including:
    i. the child's name and A#, and corresponding parent name and parent A#;
    ii. the basis for removing the child from the Government's current list;
    iii. an explanation of additional information, if any, supporting the basis for removal from the Government's list;
    iv. the name and contact information for the current custodian/sponsor of the child.

The Steering Committee needs this information to understand whether parents and children have been properly removed from the Government's previous lists, and ascertain whether those parents are or are not still members of the Plaintiff Class. The Steering Committee is hopeful that this will continue to be resolved informally through the meet and confer process.

### **Inoperative/Ineffective/Lack of Phone Numbers**

The Steering Committee continues to meet and confer with the Government over the apparent discrepancy in the Steering Committee's inability to contact 28 parents due to inoperative or ineffective phone numbers, as opposed to the Government's reported inability to contact only 4 parents (as reported by the Government in last week's JSR), as well as the 17 parents for whom the Government has not provided a phone number.[5] The Steering Committee has

---

[4] The Government maintains its lists based on children in ORR custody, not by removed parent.

[5] These figures are based on the 322 removed parents identified by the

identified to the Government these 17 parents. We continue to meet and confer with the Government to find ways for the Steering Committee to contact all 45 parents.

### Simultaneous Reporting

The Steering Committee also continues to meet and confer with the Government to obtain updated class member information at the same time it is provided to the Court.

### Resolution Regarding *MMM* TRO

Plaintiffs and the Steering Committee have also worked with counsel for the *MMM* plaintiffs to ensure that the rights of class members and their children are being appropriately protected while also removing any unnecessary barriers to reunification, if that is what is desired by both parent and child. On September 4, the Plaintiffs and Steering Committee and counsel for the *MMM* plaintiffs reached an agreement that removes impediments to going forward with the reunifications of parents and children who prefer to be reunified. The Government was advised of this agreement on September 5, 2018.

---

Government last week. Including parents on the Government's earlier lists, there are a total of 65 parents that the Steering Committee has been unable to reach.

**Steering Committee Progress on Total Reported Parents/Children (413)**

| | |
|---|---|
| Removed parents identified by the Government to Steering Committee (8/7/28, 8/10/18 and 8/24/18 lists) | 413 |
| • Parents for whom Committee has no phone number | 32 |
| Steering Committee called phone number for parent (using Government-provided number or number otherwise obtained by Steering Committee) | 381 |
| Steering Committee spoke to parent (either by phone or in person) | 289 |
| • Parents called and successfully reached | 277 |
| • Parents found through outreach by NGOs | 12 |
| • Parents called and not reached (and not reached through NGO efforts) | 92 |
| ○ Phone number inoperable or ineffective | 37 |
| ○ Contact efforts ongoing | 55 |
| Parents reached by phone or NGO outreach | 289 |
| Reunified: confirmed reunifications in home country | 12 |
| Parent's preference with respect to reunification has been confirmed to match child's | 200 |
| Preliminary indication of parent's wishes with respect to reunification | 29 |
| Ongoing discussions with parent about reunification | 48 |
| Parent's final preference has been communicated to government | 171 |

### B. Reunification of Parents With Criminal Histories and Alleged to be Unfit

The parties have been meeting and conferring over the last several weeks concerning parents who were denied reunification based on criminal convictions or allegations that they are unfit caretakers. The parties have preliminarily agreed on a process for addressing most of these cases, but as set forth below, there are a handful of cases that are more urgent and may require expedited attention.

Defendants have informed Plaintiffs that they are engaging in an evaluation of all cases concerning parents with criminal histories or who are alleged to be unfit caretakers. Defendants have stated that they will complete that evaluation process by tomorrow, September 7, after which they will have final determinations on whether such parents will be reunified with their children. Plaintiffs' understanding is that Defendants will then provide final lists to Plaintiffs, along with information concerning their reasons for denying reunification. Plaintiffs will evaluate that information and then raise any disputed cases to the Court's attention.

However, it is Plaintiffs' understanding that the parties have already reached impasse on two cases involving parents, on which Plaintiffs may seek expedited resolution. Plaintiffs are particularly concerned about one family's case involving a four-year-old child (who was three when he was first detained). The child's mother was denied reunification based on an outstanding warrant from abroad, which alleges that she is a gang member. The mother denies this allegation, and at her immigration bond hearing, the immigration judge expressly found that this warrant was not sufficient evidence that the mother was a danger to the community. Defendants have nevertheless refused to reunify this family based on the parent's alleged criminal history. This child is suffering greatly in detention and is at particular risk of grievous and irreparable harm.

The second case involves a father who was denied reunification with his two-year-old son. The father was initially denied reunification based on questions concerning parentage, but Defendants' more recent position is that the father is ineligible for reunification because of his criminal history. The only criminal history of which Plaintiffs are aware is the father's guilty plea for assault from 2010, which has no bearing on his current dangerousness or ability to care for his child.

Because of the youth of the children involved, and the fact that the parties are already at impasse on them, Plaintiffs request that this Court set an expedited briefing schedule to resolve whether they are entitled to reunification under the standards set forth in this Court's orders. The Court and the parties can address the remaining cases after Plaintiffs receive Defendants' final determinations on September 7.

Finally, Plaintiffs may not have a complete list of all parents who were denied reunification based on alleged criminal histories or abuse allegations. From the various Class lists that Defendants have provided thus far, Plaintiffs have identified approximately 50 parents who have been listed with criminal histories. By contrast, Defendants' status report of August 30 lists only 35 cases where reunification was denied or delayed based on a "red flag background check," which presumably corresponds to criminal history.

Similarly, Plaintiffs have identified 15 parents across Defendants' lists who were not reunified based on allegations of abuse or unfitness. By contrast, Defendants' August 30 status report lists 18 cases where reunification was denied or delayed based on "red flag – safety & well-being," which presumably corresponds to this group.

Plaintiffs expect that the information they receive from Defendants on September 7 will clarify the precise number of cases at issue.

### C. Information Sharing

Plaintiffs continue sending consolidated information requests concerning the Class members' reunification processes on Mondays and Thursdays of every week, per Defendants' requested timetable.

At last week's status conference, the Court stated that it was appropriate for Plaintiffs to receive identifying information for the cases described in the Government's weekly status reports so that, among other reasons, we can have "real clarity and precision in keeping track of each and every person" and "avoid[] the natural tendency to treat each person as a number." 8/31/18 Transcript at 23. The parties continue to meet and confer concerning the best mechanisms for receiving that information.

Plaintiffs have other related information requests pending with Defendants, such as information concerning which Class members are subject to final removal orders. The parties continue to meet and confer concerning these topics.

DATED: September 6, 2018                    Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

|   |   |
|---|---|
| 1 | JOSEPH H. HUNT |
|   | Assistant Attorney General |
| 2 | SCOTT G. STEWART |
| 3 | Deputy Assistant Attorney General |
|   | WILLIAM C. PEACHEY |
| 4 | Director |
|   | WILLIAM C. SILVIS |
| 5 | Assistant Director |
| 6 |   |
|   | */s/ Sarah B. Fabian* |
| 7 | SARAH B. FABIAN |
| 8 | Senior Litigation Counsel |
|   | NICOLE MURLEY |
| 9 | Trial Attorney |
| 10 | Office of Immigration Litigation |
|   | Civil Division |
| 11 | U.S. Department of Justice |
| 12 | P.O. Box 868, Ben Franklin Station |
|   | Washington, DC 20044 |
| 13 | (202) 532-4824 |
| 14 | (202) 616-8962 (facsimile) |
|   | sarah.b.fabian@usdoj.gov |
| 15 |   |
| 16 | ADAM L. BRAVERMAN |
|   | United States Attorney |
| 17 | SAMUEL W. BETTWY |
| 18 | Assistant U.S. Attorney |
| 19 |   |
|   | *Attorneys for Respondents-Defendants* |