UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____
                                         )
MS. L, ET AL.,                           )
                                         )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,      )        18CV1626-DMS
                                         )        18CV1832-DMS
VS.                                      )
                                         )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS             )  SEPTEMBER 14, 2018
ENFORCEMENT ("ICE"), ET AL.,             )  1:00 P.M. CALENDAR
                                         )
            RESPONDENTS-DEFENDANTS.      )
-----------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

COUNSEL APPEARING TELEPHONICALLY:


FOR PLAINTIFF:                  LEE GELERNT, ESQ.
                                ACLU IMMIGRANT RIGHTS PROJECT
                                125 BROAD STREET 18TH FLOOR
                                NEW YORK, NEW YORK 10004


FOR DEFENDANT:                  SCOTT STEWART, ESQ.
                                SARAH B. FABIAN, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
                                OFFICE OF IMMIGRATION LITIGATION
                                P.O. BOX 868
                                BEN FRANKLIN STATION
                                WASHINGTON, DC 20044


ALSO APPEARING:                 ZACHARY BEST, ESQ.
                                JUSTIN W. BERNICK, ESQ.
                                JEFFIFER LEVY, ESQ.
                                CAROLINE HELLER, ESQ.
                                JACK MCBRIDE, ESQ.
                                SIRINE SHEBAYA, ESQ.
                                WILSON BARMEYER, ESQ.
                                REX CHEN, ESQ.
                                ADAM SIEGLER, ESQ.
                                GUILLERMO STAMPUR,ESQ.

1   **SAN DIEGO, CALIFORNIA – FRIDAY, SEPTEMBER 14, 2018 – 2:17 P.M.**

2                                    *   *   *

3          **THE CLERK:**  NO. 23 ON CALENDAR, CASE NO. 18CV0428,

4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5   STATUS CONFERENCE.

6          **THE COURT:**  GOOD AFTERNOON.  THIS IS JUDGE SABRAW.

7   I HAVE A NUMBER OF APPEARANCES THAT MY COURTROOM DEPUTY GAVE

8   ME.  LET ME READ THE NAMES FOR WHO I HAVE ON THE LINE.

9          FOR THE GOVERNMENT, FOR DEFENDANTS, I HAVE

10  MS. FABIAN, MR. STEWART.  FOR MS. L. PLAINTIFFS MR. GELERNT.

11  NTC PLAINTIFFS MS. LEVY.  MMM, MR. BEST AND MR. BERNICK.  FOR

12  THE RGH, ONE OF THE NEW YORK CASES, MS HELLER, MR. REX CHEN.

13  ON THE DORA CASE THERE ARE APPEARANCES FROM MS. SHEBAYA AND

14  MR. BARMEYER.

15         THEN I ALSO HAVE THE FOLLOWING NAMES:  MR. ADAM

16  SIEGLER, MS. CAROLINE HELLER, MR. JACK MCBRIDE, AND

17  MR. GUILLERMO, I THINK, STAMPUR.

18         HAVE I MISSED ANYONE?  OKAY.  HEARING NO PROTESTS WE

19  WILL ASSUME, WITH THAT, LINEUP OF COUNSEL.

20         THEN LET'S GO AHEAD AND GET RIGHT INTO THE ISSUES.

21         LET'S START FIRST WITH THE PROPOSED SETTLEMENT

22  INVOLVING MMM, MS. L., AND THE DORA PLAINTIFFS, ALL OF THOSE

23  INDIVIDUALS.  AND PERHAPS I CAN START ON A PROCEDURAL LEVEL

24  FIRST.

25         I RECEIVED A LETTER FROM MS. WEISS AND MS. GLYNN ON

SEPTEMBER 14, 2018

1   BEHALF OF THE CATHOLIC CHARITIES COMMUNITY SERVICES, THE

2   ARCHDIOCESE OF NEW YORK, FOR CERTAIN OF THE CHILDREN WHO MAY

3   FALL WITHIN THE MMM CLASS.

4           THEY ARE INDICATING THAT ANY SETTLEMENT WOULD FIRST

5   HAVE TO INVOLVE CLASS CERTIFICATION AND APPROVAL PURSUANT TO

6   RULE 23.

7           THAT SEEMS CORRECT TO ME.  SO I GUESS THAT WOULD BE

8   THE FIRST QUESTION IS, THIS SETTLEMENT WOULD HAVE TO GO

9   THROUGH A PROPOSED CLASS CERTIFICATION AND SETTLEMENT, AM I

10  CORRECT?  AND THAT WOULD THEN PROVIDE --

11  **MR. BERNICK:**  YOUR HONOR, THIS IS JUSTIN BERNICK,

12  COUNSEL FOR MMM.  AND I BELIEVE I CAN SPEAK FOR THE MS. L.

13  PLAINTIFFS AND DORA PLAINTIFFS AND MMM PLAINTIFFS ON THIS

14  ISSUE, BUT THEY SHOULD CHIME IN IF THEY HAVE OTHER THOUGHTS.

15          YOUR HONOR, WE DO BELIEVE THAT RULE 23(E) IMPOSES

16  OBLIGATIONS WHEN A CLASS -- WHEN A CASE IS BEING SETTLED ON A

17  CLASS-WIDE BASIS, AND OUR GOAL WOULD BE TO ADDRESS THE ISSUES

18  UNDER RULE 23(E) AS QUICKLY AND EFFICIENTLY AS WE POSSIBLY

19  COULD.  AND WE CERTAINLY LOOK TO YOUR HONOR FOR GUIDANCE ON

20  HOW BEST TO ADDRESS THOSE ISSUES.

21          WE HAD -- SEPARATELY WE HAVE BEEN SPEAKING WITH

22  NUMEROUS ORGANIZATIONS AND INDIVIDUALS, AS YOU MIGHT EXPECT,

23  INCLUDING MS. CATHERINE WEISS WHO SUBMITTED THIS LETTER, AND

24  WE HAVE ALSO BEEN COMMUNICATING SINCE THE SETTLEMENT AGREEMENT

25  WAS FILED WITH OTHER INTERESTED PARTIES, AND TRYING TO MAKE

SEPTEMBER 14, 2018

1    SURE THAT EVERYONE KNOWS ABOUT THE PLAN AND WHAT THE RIGHTS

2    AND OBLIGATIONS ARE UNDER THE AGREEMENT.  BUT WE DO BELIEVE

3    THAT WE NEED TO MAKE SURE THAT WE COMPLY WITH RULE 23(E) AND

4    COME UP WITH A PLAN FOR DOING SO.

5          ON THIS CALL, YOUR HONOR, I DON'T BELIEVE THAT THE

6    MS. L. PLAINTIFFS, DORA PLAINTIFFS, OR MMM PLAINTIFFS HAVE A

7    CERTAIN IDEA AS TO WHAT THAT PLAN SHOULD BE.  WE ARE HAPPY,

8    THOUGH, YOUR HONOR, TO MEET AND CONFER WITH THE GOVERNMENT

9    ABOUT THAT PLAN AND COME FORWARD WITH A PROPOSAL.

10          FRANKLY, YOUR HONOR, OUR FOCUS HAS BEEN ON -- AS YOU

11   CAN SEE IT IS A DETAILED PLAN, TRYING TO MAKE SURE THAT WE

12   COULD REACH AGREEMENT WITH THE GOVERNMENT ON WHAT THE

13   PROCEDURES SHOULD BE AND COME UP WITH A SETTLEMENT THAT

14   ADEQUATELY PROTECTED THE INTERESTS OF THE CLASS, AND HAD BEEN

15   LESS SO ON THE PROCEDURAL ISSUES.  BUT WE DO BELIEVE THEY

16   SHOULD BE ADDRESSED.

17          **THE COURT:**  YES.

18          MR. STEWART, I ASSUME YOU AGREE.

19          **MR. STEWART:**  YES, YOUR HONOR.  I THINK THE

20   APPROPRIATE APPROACH IS FOR YOUR HONOR TO ENTER AN ORDER

21   AFFIRMING THAT THE RULE 23, YOU KNOW, ACCEPTING THE, YOU KNOW,

22   THE STIPULATED CLASS AND JUST CONFIRMING THAT THE RULE 23

23   CRITERIA ARE SATISFIED JUST TO MAKE CLEAR THAT THIS IS A

24   BINDING SETTLEMENT AND IT RESOLVES THE RIGHTS AND CLAIMS AS

25   STATED IN THE AGREEMENT.

SEPTEMBER 14, 2018

1          THE POINT I MIGHT EMPHASIZE, YOUR HONOR -- AND I

2     THINK MR. BERNICK DID WELL TO HIT THIS POINT.

3          I JUST WANT TO EMPHASIZE THAT I THINK WE HAVE BEEN

4     VERY CAREFUL, I THINK, THROUGHOUT THIS PROCESS TO MAKE

5     SURE BOTH SIDES -- YOU KNOW, MR. BERNICK INDICATED A LOT OF

6     CONTACT WITH STAKEHOLDERS ON THE PLAINTIFFS' SIDE AND JUST A

7     LOT OF WORK TO MAKE SURE ALL DIFFERENT INTERESTS WERE

8     ACCOUNTED FOR FOR THE FOLKS COVERED BY THE SETTLEMENT

9     AGREEMENT.

10         SO GIVEN ALL OF THAT AND THE AMOUNT OF EFFORT AND

11    COMPREHENSIVENESS OF THIS AGREEMENT, YOUR HONOR, I WOULD

12    EMPHASIZE AND AGREE THAT THE RULE 23 ISSUES AND THOSE

13    PROCEDURAL MATTERS CAN BE RESOLVED QUITE EXPEDITIOUSLY AND

14    NEEDN'T -- AND WOULD CALL FOR JUST VERY, VERY MINIMAL, YOU

15    KNOW, FURTHER WORK TO GET APPROVAL SO THAT WE CAN ALL MOVE

16    FORWARD WITH THIS PLAN AND GET THINGS ON THE ROAD.

17         SO I WOULD EMPHASIZE EXPEDITIOUSNESS, AND I THINK WE

18    ARE VERY CLOSE ON, REALLY, ALL POINTS.

19         **THE COURT:**  I AGREE WITH THAT.  I THINK MOVING AS

20    QUICKLY AS POSSIBLE IN AN ORDERLY FASHION IS THE WAY TO GO,

21    WITH, OF COURSE, THE OPPORTUNITY FOR ANY POTENTIAL CLASS

22    MEMBER TO OBJECT AND TO BE HEARD UNDER RULE 23.

23         BUT IT SEEMS TO ME THAT THE -- WHAT I WOULD PROPOSE

24    IS THAT IT MAY BE PRUDENT FOR COUNSEL TO MEET AND CONFER AND

25    SUBMIT TO THE COURT A JOINT MOTION AND ORDER ADDRESSING THE

SEPTEMBER 14, 2018

1   RULE 23 ISSUES.  SO I THINK WHAT THAT WOULD ENCOMPASS IS A

2   PROPOSED CLASS CERTIFICATION AND ESSENTIALLY APPROVAL OF THE

3   SETTLEMENT SUBJECT TO AN OPPORTUNITY FOR ANYONE TO OBJECT AND

4   TO BE HEARD.

5          DO YOU AGREE?

6          **MR. STEWART:**  THE GOVERNMENT THINKS THAT THAT IS AN

7   APPROPRIATE APPROACH, YOUR HONOR.  AND I WOULD I THINK WE

8   SHOULD DO THAT EXPEDITIOUSLY.  AND THAT IT SOUNDS LIKE YOUR

9   HONOR IS ENVISIONING SOMETHING BRIEF BUT JUST COVERS THOSE KEY

10  ISSUES, THE RULE 23 ISSUES, AND APPROVAL, PROPOSED CLASS

11  CERTIFIED, AND NOT SOMETHING VERY ELABORATE OR LENGTHY, JUST

12  SOMETHING SUFFICIENT.

13         **THE COURT:**  YES.  I THINK WHAT'S IMPORTANT IS THE

14  DUE PROCESS, SO THE OPPORTUNITY TO BE HEARD IF THERE IS

15  SOMEONE WHO IS GOING TO OBJECT.

16         IN CONCEPT I WOULD SAY THAT THE PROPOSED

17  SETTLEMENT -- THESE ARE MY TENTATIVE OBSERVATIONS, WITHOUT THE

18  BENEFIT OF ANYONE HAVING AN OBJECTION.  BUT IT APPEARS THAT

19  GIVEN THE JOINT SUBMISSION THIS IS A VERY DETAILED, WELL

20  THOUGHT OUT PROPOSAL THAT INVOLVES MANY, MANY STAKEHOLDERS.

21         AND FROM THE COURT'S READING OF THE PROPOSED

22  SETTLEMENT IT APPEARS EXCELLENT.  I AM VERY IMPRESSED WITH THE

23  DETAIL OF THE POCKET AREAS THAT ARE COVERED DEPENDING ON THE

24  PARTICULAR CIRCUMSTANCES THAT MIGHT BE PRESENT TO PARTICULAR

25  PARENTS AND/OR CHILDREN.  AND THEN PROVIDING FOR THE PROCESS

SEPTEMBER 14, 2018

THAT WOULD APPLY IN THOSE PARTICULAR CIRCUMSTANCES, WHETHER IT
IS A 235 OR A 240 HEARING, OR THOSE KINDS OF DETAILS.  IT
SEEMS THAT NO STONE WAS LEFT UNTURNED.

AND THAT THE PROPOSAL EXEMPLIFIES GOOD FAITH ON
BEHALF OF ALL, AND PARTICULARLY THE GOVERNMENT, IN RECOGNIZING
THESE RIGHTS AND AFFORDING OF AN ORDERLY PROCESS AND
OPPORTUNITY FOR THESE CLASS MEMBERS IN MS. L. AND PUTATIVE
CLASS MEMBERS IN MMM, AS WELL AS THE DORA PLAINTIFFS, TO
PURSUE THESE AVENUES.

SO ABSENT HEARING FROM SOMEONE, EITHER NOW OR AT A
LATER TIME ON AN OBJECTION, WRITTEN OBJECTION, IT SEEMS TO ME
THAT THIS IS AN EXCELLENT PROPOSAL AND WE OUGHT TO MOVE
FORWARD AS QUICKLY AS POSSIBLE.

SO WHAT I WOULD PROPOSE IS THAT COUNSEL MEET AND
CONFER, AND THEN SUBMIT A JOINT MOTION AND ORDER ADDRESSING
THE CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF THE
SETTLEMENT, WITH THE OPPORTUNITY FOR ANYONE TO OBJECT.  AND
THERE COULD BE A TIMELINE SET OUT FOR OBJECTIONS TO BE FILED
AND A TIME IN WHICH ANY OBJECTIONS MIGHT BE HEARD.

IN THAT REGARD ALSO, JUST LOOKING TO THE TIMELINE OF
ALL OF THIS.  THE NINTH CIRCUIT HAS STAYED THE GOVERNMENT'S
APPEAL IN MS. L. TO NOVEMBER 9.

WHAT WOULD THE GOVERNMENT'S POSITION BE NOW?  WOULD
YOU BE SEEKING TO CONTINUE THAT NOVEMBER 9 TIME FRAME AS WE
GET CLOSER TO THAT DATE?

SEPTEMBER 14, 2018

1          **MR. STEWART:**  YOUR HONOR, I DON'T THINK A DECISION

2    IS MADE ON THAT.  MY GUESS IS THAT WE WOULD SIMILARLY

3    CONTINUE -- YOU KNOW, WE HAVE TO SEE WHAT THE SOLICITOR

4    GENERAL MAY DECIDE ON THERE, BUT IT COULD VERY WELL BE THAT WE

5    MIGHT SEEK, YOU KNOW, MORE TIME TO JUST MAKE SURE THERE IS NO

6    DISRUPTION TO THE ONGOING IMPLEMENTATION OF THE PRELIMINARY

7    INJUNCTION.

8          OBVIOUSLY THAT IS A WAYS OUT, SO HOPEFULLY WE WILL

9    HAVE A SIGNIFICANT AMOUNT OF RESOLUTION BY THAT TIME, YOUR

10   HONOR.  BUT I DON'T THINK WE HAVE ANY SORT OF FURTHER DECISION

11   FROM THE GOVERNMENT AS TO ITS PROCESSES OR WHERE THINGS STAND.

12         **THE COURT:**  OKAY.  AND THEN WHAT ABOUT THE IDEA OF

13   STARTING NOW.  IT SEEMS TO ME THAT THE VAST MAJORITY OF MS. L.

14   CLASS MEMBERS AND MMM CLASS MEMBERS, ONCE THE CLASS IS

15   CERTIFIED, ARE GOING TO BE ONBOARD AND READY TO PROCEED.  IS

16   IT POSSIBLE TO START RIGHT AWAY?

17         THE IDEA OF CLASS CERTIFICATION AND FINAL APPROVAL

18   OF THE SETTLEMENT AND A NOTICE AND OPPORTUNITY TO OBJECT

19   REALLY, I THINK, WILL APPLY TO A VERY SMALL HANDFUL OF

20   POTENTIAL CLASS MEMBERS, IF ANY.  AND IT SEEMS TO ME THAT THE

21   PROCESS COULD GET UNDERWAY SOONER RATHER THAN LATER, AND NOT

22   HAVE TO WAIT FOR FINAL APPROVAL.

23         WHAT WOULD THE GOVERNMENT'S VIEW BE?

24         **MR. STEWART:**  YOUR HONOR, OUR TENTATIVE VIEW WOULD

25   BE THAT I THINK THAT THAT IS APPROPRIATE AND WE COULD GET

SEPTEMBER 14, 2018

MOVING ON THIS.

I WOULD JUST SAY IF I DO COME -- IF IT DOES COME TO MY ATTENTION, YOU KNOW, AN IMPEDIMENT OR SORT OF A REASON OTHERWISE, MAY WE BRING THAT TO THE COURT'S ATTENTION IF WE REALIZE IT?

BUT MY HOPE IS WITH MOST -- YOU KNOW, AS WITH OTHER PLANS WE HAVE APPROVED IT CONSISTENT WITH OUR DESIRE TO MOVE THINGS EXPEDITIOUSLY BUT ORDERLY, WE WOULD WANT TO JUST GET MOVING.  IF IT IS A GOOD PLAN, WE SHOULD GET MOVING.

**THE COURT:**  MR. BERNICK, DO YOU AGREE?

**MR. BERNICK:**  YOUR HONOR, THIS IS JUSTIN BERNICK FOR THE MMM PLAINTIFFS.

WE AGREE WITH THAT.

**THE COURT:**  OKAY.  SO ON THAT, I WOULD DECLINE TO MAKE ANY ORDERS BUT JUST INVITE THE PARTIES, ON A MEET-AND-CONFER BASIS, START THE PROCESS WITH THE IDEA THAT THE COURT, IN CONCEPT, APPROVES THE SETTLEMENT.  OF COURSE, RESERVING FINAL DETERMINATION BASED ON ANY OBJECTION THAT MIGHT BE MADE, BUT IN CONCEPT THE PARTIES OUGHT TO GET MOVING. AND TO THE EXTENT YOU CAN IDENTIFY PLAINTIFFS -- CHILDREN AND PARENTS -- WHO WANT TO GET STARTED WITH THE VARIOUS PROCEEDINGS UNDER 235 OR 240, THAT WE OUGHT TO START THAT RIGHT AWAY.  AND I WILL LEAVE IT TO THE PARTIES TO MEET AND CONFER AND IDENTIFY THOSE INDIVIDUALS, AND THEN GET THE PROCESS GOING.

SEPTEMBER 14, 2018

1           WE WILL ALSO -- AS WE GO ALONG I WILL ASK THAT THIS

2    PROCESS BE ROLLED INTO THE STATUS REPORT, SO THAT DURING THIS

3    WEEKLY STATUS REPORT THE PARTIES CAN INCLUDE A STATUS ON THIS

4    PROPOSED SETTLEMENT AND IDENTIFY THE PARENTS AND THE CHILDREN.

5    AND GIVE A STATUS AS TO THE VARIOUS PROCEEDINGS UNDER 235,

6    240, WHATEVER THEY MIGHT BE UNDER THE PROPOSED SETTLEMENT, SO

7    THAT THE COURT AND THE PUBLIC CAN KEEP TRACK OF THE PARTIES'

8    EFFORTS AND PROGRESS WITH RESPECT TO THESE ASYLUM CLAIMS.

9           ARE THERE ANY OTHER THOUGHTS ON THIS PROPOSED

10   SETTLEMENT?  OTHERWISE WE WILL MOVE TO THE JOINT STATUS

11   REPORT.

12          THE IDEA WOULD BE THAT ON THE PROPOSED SETTLEMENT

13   THE PARTIES WILL SUBMIT SOMETHING TO THE COURT BY NEXT

14   THURSDAY, 3:00 P.M., OR SOONER, ON A JOINT MOTION AND ORDER

15   FOR CLASS CERTIFICATION AND APPROVAL OF THE SETTLEMENT.

16          ANYTHING ELSE?

17          **MR. STEWART:**  YOUR HONOR, I DO HAVE ONE QUESTION ON

18   THIS.

19          THE TRO ITSELF IS -- AS YOU KNOW, THE APPROVAL OF

20   THE AGREEMENT WOULD -- WOULD, AS IT STANDS, LIFT THE TRO

21   ITSELF.  IS YOUR INTENTION IN GOING FORWARD WITH THE AGREEMENT

22   THAT THE TRO WOULD BE LIFTED AS TO FOLKS THAT REACHED THE

23   APPROPRIATE POINT IN THE PROCESS WHERE THEY CAN RETURN TO

24   THEIR COUNTRY OF ORIGIN?  OR HOW WOULD YOU SEE THE TRO AS

25   BEING AFFECTED BY THIS -- BY THIS KIND OF A PRELIMINARY

SEPTEMBER 14, 2018

1    APPROVAL OR THE DIRECTIVE TO PROCEED UNDER THE PLAN?

2          **THE COURT:**  I THINK, AS THE PARTIES PROPOSE, IT CAN

3    BE LIFTED IN APPROPRIATE CASES.  AND I THINK THE WAY WE

4    DISCUSSED IT A HEARING OR TWO AGO IS THAT THE PARTIES COULD

5    SIMPLY MEET AND CONFER AND IDENTIFY IN WRITING FOR CERTAIN

6    NAMED INDIVIDUALS A LIFTING OF THE TRO SO THAT THOSE PERSONS

7    COULD BE REUNIFIED IN THEIR HOME COUNTRY OR REMOVED, WHATEVER

8    THE CASE MAY BE.

9          WOULDN'T THAT BE APPROPRIATE?

10         **MR. STEWART:**  I THINK THAT'S -- I THINK, YOUR HONOR,

11   THAT THAT MAY BE A WORKABLE APPROACH FOR THIS PRELIMINARY

12   PIECE.

13         AM I UNDERSTANDING THAT YOUR HONOR IS SUGGESTING

14   THAT THE PARTIES WOULD BE ABLE TO SAY, OKAY -- YOU KNOW, THEY

15   WOULD COMMUNICATE AMONGST THEMSELVES IF THEY AGREE THAT

16   SOMEBODY -- YOU KNOW, THAT TRO WAS LIFTED AS TO THAT PERSON

17   THEY COULD THEN PROCEED WITH REPATRIATION OR WHATEVER THE

18   APPROPRIATE PATH IS, OR WOULD YOU WANT THE INDIVIDUALS BROUGHT

19   TO THE COURT IN THOSE CASES?

20         **THE COURT:**  THE FORMER, SO THAT THE PARTIES SIMPLY

21   WORK THROUGH IT AND IDENTIFY THOSE INDIVIDUALS, AND THEN ALLOW

22   THEM TO BE REPATRIATED WITHOUT FURTHER COURT INVOLVEMENT.

23         DO YOU AGREE, MR. BERNICK?

24         **MR. BERNICK:**  I DO, YOUR HONOR.  I AM SPEAKING,

25   AGAIN, FOR THE MMM PLAINTIFFS, AND I WILL LET THE MS. L. AND

SEPTEMBER 14, 2018

13

 1    DORA PLAINTIFFS EXPLAIN IF THEY HAVE A DIFFERENT VIEW.

 2          BUT FROM OUR PERSPECTIVE, ONCE A CHILD RECEIVES THE

 3    PROCESS UNDER THIS AGREEMENT AND THEY HAVE NO OBJECTIONS TO

 4    THE SETTLEMENT, THEN WE SHOULD MOVE FORWARD.  AND IF THE

 5    RESULT IS REMOVAL, THEN THE TRO SHOULD BE LIFTED AS TO THAT

 6    INDIVIDUAL.  THAT WOULD BE OUR POSITION.

 7          **THE COURT:**  OKAY.

 8          MR. GELERNT, DO YOU AGREE?

 9          **MR. GELERNT:**  YES, YOUR HONOR.

10          **THE COURT:**  AND, IS IT MS. SHEBAYA OR MR. BARMEYER,

11    DO YOU AGREE ON BEHALF OF THE DORA?

12          **MR. BARMEYER:**  YES.  THIS IS MR. BARMEYER, YOUR

13    HONOR.  THANK YOU.

14          YES, WE AGREE AS WELL.  AND WE WILL NEED TO MEET AND

15    CONFER WITH THE GOVERNMENT, AGREE ON MOVING THIS FORWARD AS

16    EXPEDITIOUSLY AS POSSIBLE AND GETTING THE PROCESS GOING.

17          ONE PART OF THE AGREEMENT IS TO ALLOW THE FAMILIES

18    TO HAVE COUNSEL IN THE PROCESS, AND SO -- AND WE DON'T -- WE

19    WILL NEED TO BE WORKING WITH THE STAKEHOLDERS TO SEE IF WE CAN

20    TRY TO COORDINATE THAT.  AND SO WE WILL NEED TO SPEAK WITH THE

21    GOVERNMENT ABOUT HOW QUICKLY WE CAN MOVE FORWARD WITH THE

22    PROCESS.

23          **THE COURT:**  OKAY.  VERY GOOD.

24          THEN JUST A QUESTION ON THE GENERAL TIMELINE.  DO

25    COUNSEL HAVE AN IDEA OF HOW LONG THIS PROCESS IS GOING TO

SEPTEMBER 14, 2018

1  TAKE?  SO LET'S ASSUME BEST CASE SCENARIO, EVERYTHING GOES

2  SMOOTHLY.  WE GET STARTED RIGHT NOW.  235, 240 HEARINGS AND

3  ALL OF THE THINGS THAT ARE CONTEMPLATED IN THE PROPOSED

4  SETTLEMENT ARE MOVING EFFICIENTLY AND FROM THE EARLIEST

5  POSSIBLE DATE; WHAT DOES THIS TIMELINE LOOK LIKE?  DOES ANYONE

6  KNOW?

7            I ASSUME THERE IS GOING TO BE DIFFERENT TIME FRAMES

8  DEPENDING ON THE TYPE OF HEARING THAT IS INVOLVED.

9            **MR. STEWART:**  I THINK THAT IS RIGHT, YOUR HONOR.

10  SOME FOLKS IN SOME AREAS WILL BE QUITE EXPEDITIOUS, OTHER

11  FOLKS WHO, FOR EXAMPLE, MAY BE GOING TO 240 PROCEEDINGS WILL

12  TAKE A BIT OF A LONGER COURSE, YOU KNOW, WOULD BE THE

13  EXPECTATION.

14            WHAT I CAN SAY IS IF THE GOVERNMENT IS LOOKING TO

15  MAKE SURE THAT, YOU KNOW, WHEREVER IT CAN, YOU KNOW, MAKE SURE

16  THAT THINGS MOVE SWIFTLY, IT WANTS TO KEEP AN EYE ON THAT AND

17  MAKE SURE THAT EVERYTHING IS MOVING AS, YOU KNOW,

18  EXPEDITIOUSLY AS THEY CAN.

19            IF I CAN GET MORE CLARITY ON TIMING I CAN DO SO,

20  YOUR HONOR.

21            **THE COURT:**  I THINK IT IS FAIR TO SAY THAT WITH SOME

22  IT MAY JUST BE A MATTER OF WEEKS, WITH OTHERS, PARTICULARLY

23  WITH 240 HEARINGS, IT MAY BE MONTHS?

24            **MR. STEWART:**  I THINK SO, YOUR HONOR, YES.  THAT

25  SOUNDS RIGHT.

SEPTEMBER 14, 2018

1          **THE COURT:**  OKAY.

2          **MR. BERNICK:**  YOUR HONOR, THIS IS JUSTIN BERNICK FOR

3    THE MMM PLAINTIFFS.

4          ONE THING I WOULD SAY IS IN TERMS OF THE ONGOING

5    STATUS REPORTS, FROM OUR PERSPECTIVE, YOU KNOW, ONCE ALL OF

6    THESE HAVE WORKED THROUGH THE SYSTEM TO THE POINT WHERE THE

7    CHILDREN ARE EITHER IN 240 PROCEEDINGS OR A DECISION HAS BEEN

8    MADE TO REMOVE THEM, AT THAT POINT I AM NOT SURE THAT IT WOULD

9    REQUIRE ACTIVE SUPERVISION BY THIS COURT, NECESSARILY, TO

10   TRACK THOSE 240 PROCEEDINGS.

11         I AM JUST SAYING THAT, YOUR HONOR, BECAUSE, LIKE YOU

12   INDICATED, THERE IS DIFFERENT TYPES OF PROCEEDINGS HERE, AND

13   THE 240 PROCEEDING CAN TAKE SOME TIME.  BUT AT THAT POINT THEY

14   WOULD BE BEFORE A SEPARATE IMMIGRATION JUDGE.  SO IT MIGHT BE

15   THAT THERE IS A WAY TO MOVE THIS FORWARD MORE QUICKLY, AND

16   ONCE WE GET TO THAT POINT, WHEN THEY ARE EITHER REMOVED OR IN

17   240, IT WOULD NOT NECESSARILY REQUIRE AS ACTIVE SUPERVISION,

18   POTENTIALLY.

19         I JUST RAISE THAT FOR YOUR CONSIDERATION.

20         **THE COURT:**  YES, I AGREE.  THE GOAL, OF COURSE, IS

21   TO -- FOR EVERYONE TO GET THESE COURT PROCEEDINGS BEHIND US AS

22   SOON AS WE CAN.  AND SO WE WILL REACH A POINT WHERE A GROUP OF

23   PEOPLE, FOR EXAMPLE, WILL BE IN 240 PROCEEDINGS, AND I DON'T

24   SEE A NEED FOR THIS COURT TO CONTINUE TO MONITOR THAT.

25         I THINK WHAT IS IMPORTANT IS FOR THE COURT AND THE

SEPTEMBER 14, 2018

```
 1   PUBLIC TO KNOW HOW MANY PEOPLE ARE IN THAT CATEGORY AND WHAT
 2   THEIR PROCESS IS, SO IT WOULD BE MORE INFORMATIONAL.  BUT
 3   THERE WILL CERTAINLY COME A POINT WHERE THE NEED TO MONITOR
 4   WILL DROP OFF.  I AGREE WITH THAT.
 5          LET'S MOVE TO THE JOINT STATUS REPORT.
 6          THIS REPORT ALSO LOOKS VERY ENCOURAGING.  IN IT
 7   THERE IS WHAT APPEARS TO BE A VERY PROMISING STATEMENT BY THE
 8   GOVERNMENT THAT ALL PARENTS CAN BE CONTACTED.  THAT THE
 9   GOVERNMENT HAS CONTACT INFORMATION FOR ALL PARENTS.  AND IS
10   OPTIMISTIC, GIVEN O.R.R.'S SUCCESS IN REACHING PARENTS WHO ARE
11   IN ANOTHER COUNTRY.  AT PAGE 8 THERE IS AN INDICATION THAT THE
12   GOVERNMENT IS OPTIMISTIC THAT ALL PARENTS WILL BE CONTACTED,
13   AND THEY CAN THEN MAKE A CONSIDERED DETERMINATION AS TO
14   WHETHER TO REUNIFY OR NOT.
15          IS THAT CORRECT?
16   MR. STEWART:  I BELIEVE THAT IS RIGHT, YOUR HONOR.
17   AND I THINK, AS YOU HAVE SEEN FROM THE STATUS REPORT, WE HAVE
18   PROPOSED SOME OTHER WAYS TO JUST CLOSE THE LOOP WHERE THE
19   STEERING COMMITTEE MAY BE HAVING ANY ISSUES.
20          AND AS YOU SAW FROM COMMANDER WHITE'S DECLARATION IN
21   DETAILING THE U.S. GOVERNMENT'S VARIOUS EFFORTS, WE THINK WE
22   HAVE GOOD WAYS TO DO THAT LEVERAGING.  BUT, YOU KNOW,
23   LEVERAGING ON THE ONE HAND, O.R.R.'S RELATIONSHIPS WITH THESE
24   PARENTS AND THESE CHILDREN AND JUST LOOPING IN THE STEERING
25   COMMITTEE ON THAT SO THAT THEY CAN HAVE THE APPROPRIATE
```

SEPTEMBER 14, 2018

1  CONTACTING CONVERSATIONS.  WORKING WITH FOLKS IN COUNTRY TO

2  BEST DEPLOY RESOURCES AND USE TARGETED MEASURES TO FIND PEOPLE

3  THERE.

4          BUT THOSE THINGS -- YOU ARE RIGHT, YOUR HONOR, THAT

5  THOSE ARE ALL VERY ENCOURAGING, AND WE ARE HOPEFUL TO CLOSE

6  THE LOOP ON EVERYTHING AND TO HELP THE STEERING COMMITTEE

7  CLOSE THE LOOP ON ALL THOSE.  SO THINGS ARE LOOKING VERY GOOD.

8          **THE COURT:**  OKAY.

9          AND THEN, MR. GELERNT, YOU HAVE IDENTIFIED UP TO 60

10 PARENTS, IT IS EITHER 60 OR 67, I SEE BOTH NUMBERS, HAVE NOT

11 YET BEEN CONTACTED.  IT APPEARS YOU HAVE NUMBERS BUT HAVE NOT

12 SUCCESSFULLY REACHED THEM YET.

13         BUT AM I CORRECT IN ASSUMING THAT THESE 60 OR 67

14 THERE IS OPTIMISM THAT THROUGH THIS JOINT EFFORT AND THE

15 COLLECTIVE CALL INITIATED BY O.R.R. THAT IT MAY BE THAT IN

16 FACT ALL PARENTS ARE GOING TO BE REACHED?

17         **MR. GELERNT:**  YES, YOUR HONOR.  THIS IS -- IF WE --

18 IT IS 67.  I WOULD JUST SAY THAT SINCE THE STATUS REPORT HAS

19 BEEN FILED WE HAVE REACHED A FEW MORE, SO IT MAY BE BELOW 67,

20 WHICH IS OBVIOUSLY GOOD.

21         WE ARE GOING TO CONTINUE TO CALL THESE NUMBERS.  I

22 THINK IT IS TOO EARLY FOR US TO KNOW WHETHER WE WILL REACH ALL

23 67 BY PHONE, BUT HOPEFULLY WITH O.R.R. WE WILL BE ABLE TO.

24         I THINK IF THERE REMAIN CERTAIN ONES WE CANNOT REACH

25 BY PHONE THEN WE WOULD LIKE TO WORK WITH THE GOVERNMENT ABOUT

SEPTEMBER 14, 2018

18

```
 1   TARGETED APPROACHES ON THE GROUND TO TRY AND FIND THESE
 2   PARENTS.  BUT I AGREE, WE MADE A SIGNIFICANT JUMP SINCE LAST
 3   WEEK.
 4              THE COURT:  ALL RIGHT.
 5              AND IT IS ALSO VERY ENCOURAGING IN THE STATUS REPORT
 6   THAT THE PLAINTIFFS' STEERING COMMITTEE HAS ACTUALLY CONTACTED
 7   AND GOTTEN DECISIONS FROM A LARGE NUMBER OF PARENTS.
 8              AND SO IN THE COMING WEEKS IT WOULD APPEAR THAT WE
 9   WILL HAVE ANSWERS, HOPEFULLY FROM ALL PARENTS, AS TO WHETHER
10   THEY ARE GOING TO REUNIFY NOW OR NOT.  CORRECT?
11              MR. GELERNT:  YES, YOUR HONOR.
12              AND THE ONLY THING I WOULD SAY IS WE CONTINUE TO
13   WORK WITH THE GOVERNMENT BECAUSE THERE ARE CASES NOW THAT ARE
14   READY FOR REPATRIATION, AND WE ARE HOPEFUL THAT THOSE CAN
15   HAPPEN QUICKLY.  THEY HAVE BEEN LINGERING FOR SOME TIME, AND
16   THE GOVERNMENT HAS SAID THEY ARE NOW IN A POSITION TO MOVE
17   THOSE FORWARD.  SO WE HOPE THAT WILL HAPPEN BECAUSE I KNOW
18   THAT THE FAMILIES ARE VERY ANXIOUS TO REUNIFY.  AND WE HAVE
19   COMMUNICATED A BUNCH, I BELIEVE IT IS 58 OR MORE NOW, TO THE
20   GOVERNMENT.
21              SO I THINK THERE ARE ADEQUATE SERVICE PROVIDERS
22   WORKING WITH THE CHILDREN ON THE GROUND NOW WHO ARE BECOMING
23   ANXIOUS ABOUT THE PACE OF THE REPATRIATION.  SO WE ARE HOPEFUL
24   WE CAN WORK WITH THE GOVERNMENT AND MOVE THOSE ALONG MUCH
25   QUICKER NOW.
```

SEPTEMBER 14, 2018

 1          **THE COURT:**  THAT IS HEADING IN THE RIGHT DIRECTION,

 2   ISN'T IT?  I READ COMMANDER WHITE'S DECLARATION, AND IT SEEMS

 3   THAT THEY ARE IN ACTIVE COMMUNICATION WITH AUTHORITIES IN

 4   GUATEMALA, HONDURAS, AND EL SALVADOR, AND ARE WORKING TOWARD

 5   THAT GOAL.  SO THAT'S WELL UNDERWAY, IS IT NOT?

 6          **MR. STEWART:**  COMMANDER WHITE AND THE GOVERNMENT,

 7   THAT IS CORRECT, YOUR HONOR, THEY ARE ON THAT.  THEY ARE

 8   MOVING -- THEY ARE MOVING THE TRAVEL DOCUMENT PIECE VERY

 9   QUICKLY WHICH, AS YOU KNOW, YOUR HONOR, CAN SOMETIMES TAKE A

10   LITTLE TIME.  BUT WE ARE MOVING THOSE EXPEDITIOUSLY.  AND WE

11   DO WANT TO REPATRIATE PROMPTLY IN LINE WITH THOSE WISHES AND

12   THE PRELIMINARY INJUNCTION.  SO, YES, THAT IS ALL MOVING.

13          **THE COURT:**  OKAY.

14          AND I REALLY APPRECIATE THE STEERING COMMITTEE'S

15   IDENTIFICATION OF AREAS WHERE ADDITIONAL PROGRESS CAN BE MADE,

16   AND IDENTIFYING AREAS WHERE THE GOVERNMENT CAN BE OF

17   ASSISTANCE.

18          IN READING COMMANDER WHITE'S DECLARATION MY THOUGHT

19   WOULD BE TO SIMPLY ALLOW THE PARTIES TO CONTINUE TO MEET AND

20   CONFER WITH THE IDEA THAT COMMANDER WHITE IS THE PERSON WE ARE

21   LOOKING TO.  HE HAS A GREAT TRACK RECORD, AND HIS DECLARATION

22   PROVIDES A GREAT DEAL OF COMFORT THAT THE GOVERNMENT IS ON

23   THIS AND HAS THE RIGHT APPROACH TO ADDRESSING ALL OF THESE

24   ISSUES AS EFFICIENTLY AS POSSIBLE.

25          AMONG THEM WOULD BE THE EFFORT BY O.R.R. TO DO THE

SEPTEMBER 14, 2018

TRIPARTITE CALL AND TO INITIATE THE CALL, AND COMMANDER
WHITE'S BELIEF THAT THAT IS THE BEST WAY TO REACH THESE
PARENTS, ESPECIALLY THOSE PARENTS WHO HAVE A DISTRUST OF
GOVERNMENT AND OTHER PERSONS TRYING TO REACH THEM UNDER THESE
CIRCUMSTANCES.

          SO IT SEEMS TO ME THAT WE CAN LEAVE THINGS AS THEY
ARE WITH THE PARTIES CONTINUING TO WORK TOGETHER
COLLABORATIVELY, AGAIN WITH THE IDEA THAT COMMANDER WHITE HAS
SET OUT IN HIS DECLARATION A PATH THAT I BELIEVE WILL BE MOST
EFFICIENT IN ACHIEVING THE GOALS OF REPATRIATION OR GETTING
INFORMATION TO THE PARENTS SO THEY CAN MAKE THE DECISION
EITHER TO REPATRIATE OR NOT.

          DO YOU AGREE, MR. GELERNT?

          **MR. GELERNT:**  YES, YOUR HONOR.  I THINK THAT MAKES
SENSE FOR US TO CONTINUE WORKING WITH THE GOVERNMENT ON THESE
LAST REMAINING 60 TO 67.

          **THE COURT:**  OKAY.  SO I APPRECIATE THE STATUS REPORT
IN THAT REGARD.  I WOULD NOT MAKE ANY ORDERS OR FINDINGS.  I
THINK WHAT'S IN PLACE IS WORKING REALLY WELL, AND I WOULD JUST
COMMEND THE STEERING COMMITTEE AND COMMANDER WHITE AND THE
GOVERNMENT FOR THE COLLABORATIVE EFFORT, AND AGAIN JUST URGE
THE PARTIES TO KEEP MOVING AS RAPIDLY AS POSSIBLE.

          THE ONLY OTHER ISSUE THAT I HAVE IS THE ONE
INVOLVING THE CRIMINAL HISTORY, THE TWO INDIVIDUALS.  AND I AM
GOING TO TAKE THAT UNDER SUBMISSION AND ISSUE AN ORDER.  IT

SEPTEMBER 14, 2018

```
 1    WILL BE A -- I AM ANTICIPATING JUST A SHORT, CONCLUSORY ORDER,
 2    BUT GETTING RIGHT TO THESE ISSUES.
 3              HERE I HAVE A QUESTION OF THE GOVERNMENT.
 4              IT IS MY UNDERSTANDING, BASED ON THE GOVERNMENT'S
 5    BRIEFING, THAT -- AND MS. FABIAN'S SUBMISSION THAT THIS IS AN
 6    AREA THAT THE COURT OUGHT NOT TO INTERVENE BECAUSE, NUMBER
 7    ONE, THERE WAS A CARVE-OUT FOR CRIMINAL HISTORY IN THE CLASS
 8    CERTIFICATION FOR MS. L. PARENTS; AND, NUMBER TWO, THAT THE
 9    GOVERNMENT IS, UNDER THE CASE LAW AND THE STATUTORY AND
10    REGULATORY SCHEME, PARTICULARLY EXPERT AND IN THE BEST
11    POSITION TO MAKE THE DETERMINATIONS WITH RESPECT TO CRIMINAL
12    HISTORY AND WHETHER OR NOT PARENTS OUGHT TO BE REUNIFIED WITH
13    THEIR CHILDREN OR RELEASED OR PAROLED.  THAT THESE ISSUES ARE
14    PARTICULARLY WITHIN THE PROVINCE OF THE EXECUTIVE BRANCH.
15              IS THAT -- THAT'S THE ESSENCE OF THE GOVERNMENT'S
16    ARGUMENT?
17              MR. STEWART:  YES, YOUR HONOR.  I THINK THAT HITS A
18    LOT OF THE KEY POINTS.
19              I WOULD EMPHASIZE THE -- THAT BECAUSE A LOT OF THESE
20    DECISIONS ARE ENTWINED WITH DETENTION AUTHORITY AND
21    DISCRETIONARY DETENTION AUTHORITY, THESE INVOLVE IMPORTANT
22    EXERCISES OF DISCRETION, THAT THEY REQUIRE, YOU KNOW,
23    IMPORTANT EXPERT JUDGMENTS ON SAFETY AND JUST FACILITY
24    MANAGEMENT AND THAT SORT OF A THING.  SO THAT DOES WELL
25    CAPTURE THE KEY POINTS ON OUR POSITION.
```

SEPTEMBER 14, 2018

1     WE HAVE BEEN CAREFUL ABOUT EXERCISING THOSE AND

2  JUDICIOUS, BUT MINDFUL OF THE VERY IMPORTANT ROLE THAT THE

3  GOVERNMENT EXERCISES IN RESPONSIBLY DEPLOYING ITS DETENTION

4  AUTHORITY.  SO WE WOULD AGREE WITH THAT.

5         **THE COURT:**  AND, MR. GELERNT, THE ARGUMENT THAT YOU

6  ARE -- I KNOW IT IS SPECIFIC, FACTUALLY, AS TO EACH PERSON.

7  BUT ULTIMATELY YOU ARE MAKING THE ARGUMENT THAT ALTHOUGH THE

8  COURT CARVED OUT CRIMINAL HISTORY FROM CLASS CERTIFICATION

9  WHAT HAS HAPPENED IS THE GOVERNMENT, IN FACT, IS REUNIFYING

10  PARENTS WITH SIGNIFICANT CRIMINAL HISTORY, AND THEY ARE

11  WITHHOLDING REUNIFICATION OF PARENTS WHO THE GOVERNMENT

12  BELIEVE HAVE SIGNIFICANT CRIMINAL HISTORY.

13         AND THE QUARREL YOU HAVE IS THIS DETERMINATION OF

14  WHAT IS SIGNIFICANT AND WHAT IS INSIGNIFICANT, AND THAT

15  ULTIMATELY THE COURT SHOULD BE THE ARBITER OF THAT

16  DETERMINATION.

17         **MR. GELERNT:**  YES, YOUR HONOR.  I THINK THAT IS

18  GENERALLY RIGHT.

19         AS WE UNDERSTOOD WHAT YOU DID -- AND I THINK YOU

20  CLARIFIED IT A NUMBER OF TIMES WHEN WE WERE MEETING IN PERSON

21  IN JULY -- IS THAT YOU WANTED TO MOVE FORWARD WITH THE

22  DEADLINES AND YOU DIDN'T WANT THOSE TO BE STALLED FOR THE VAST

23  BULK OF PEOPLE WHO WOULDN'T HAVE ANY CRIMINAL HISTORY.  AND SO

24  YOU DEFINED THE CLASS TO EXCLUDE CRIMINAL HISTORY REGARDLESS

25  OF HOW SIGNIFICANT IT WAS SO THAT WE COULD TRY AND MEET THOSE

SEPTEMBER 14, 2018

1  JULY 10TH AND JULY 26TH DEADLINES FOR THE VAST BULK OF PEOPLE.

2  AND I THINK THAT WAS A SMART, PRACTICAL STEP.

3          BUT I THINK YOU MADE VERY CLEAR THAT REUNIFICATIONS

4  NEED TO HAPPEN UNLESS THERE IS SIGNIFICANT CRIMINAL HISTORY

5  BECAUSE YOU CANNOT SEPARATE A PARENT AND CHILD ABSENT SOME

6  REASON TO BELIEVE THAT THERE IS A DANGER.

7          SO WHAT WE BELIEVE HAS HAPPENED IS THAT THE

8  GOVERNMENT HAS BEEN FAR OVER-INCLUSIVE IN SEPARATING PARENTS

9  AND CHILDREN.  AND THESE ARE THE FIRST TWO CASES WHERE WE

10  BELIEVE THAT THERE IS SIMPLY NO REASON TO BELIEVE THAT THESE

11  PARENTS ARE A DANGER TO THEIR CHILD OR COULDN'T BE IN A FAMILY

12  DETENTION CENTER.

13          AND THE CHILDREN, AS YOU HAVE SEEN FROM THE

14  AFFIDAVITS, ARE REALLY SUFFERING.  THESE ARE CHILDREN WHO ARE

15  TWO AND FOUR YEARS OLD, AND ARE TAKING REAL STEPS BACK.  AND

16  WE ARE LOOKING AT POTENTIALLY PERMANENT, PERMANENT TRAUMA

17  SETTING IN FOR THESE CHILDREN.  AND WE DON'T BELIEVE, WHERE

18  THERE IS SO MUCH AT STAKE, THAT THE GOVERNMENT CAN SIMPLY MAKE

19  THESE CATEGORICAL DECISIONS.  WE DON'T BELIEVE THE GOVERNMENT

20  HAS EVER COME FORWARD WITH ANY PARTICULAR INFORMATION.

21          I WOULD JUST NOTE, FOR EXAMPLE, ON THE MS. Q. CASE

22  THE GOVERNMENT HAD -- WE HAD A HEARING BEFORE AN IMMIGRATION

23  JUDGE.  I MEAN, THAT IS OBVIOUSLY ONE OF THE GOVERNMENT'S

24  JUDGES.

25          AND THE GOVERNMENT CAME FORWARD WITH THIS WARRANT,

SEPTEMBER 14, 2018

THAT HAS NO SPECIFICS IN IT, AND SAID TO THE IMMIGRATION
JUDGE, WELL, THERE IS THIS WARRANT OUT THERE, WE THEREFORE
THINK THAT THIS WOMAN IS A DANGER.

THEY WERE INVITED TO PRODUCE MORE INFORMATION IN
RESPONSE TO THE EXTENT OF EVIDENCE THAT THE WOMAN'S INDIVIDUAL
LAWYER PUT IN SAYING SHE HAS NEVER BEEN PART OF A GANG, SHE
WAS JUST CAUGHT UP IN SOMETHING.  THERE WAS NO INFORMATION.
THEY HIRED AN INVESTIGATOR IN EL SALVADOR TO LOOK THROUGH
COURT DOCUMENTS.  THEY NEVER CAME FORWARD WITH ANYTHING.

AND THE IMMIGRATION JUDGE SPECIFICALLY FOUND THAT
SHE WAS NOT A DANGER, AND THERE WAS NO REASON TO BELIEVE SHE
WAS A DANGER TO THE PUBLIC.

AND SO WE ARE VERY CONCERNED THAT WITH THIS MUCH AT
STAKE THE GOVERNMENT IS MAKING DECISIONS SORT OF AT A
CATEGORICAL LEVEL WITHOUT ANY INDIVIDUALIZED ASSESSMENT OF
DANGER.

AND WITH RESPECT TO THE OTHER PERSON BEFORE, MR. C.,
THAT IS A VERY OLD CONVICTION, A MISDEMEANOR FOR LESS THAN TWO
MONTHS.

AND THE GOVERNMENT HAS PUT IN THAT HE HAD A MACHETE.
WELL, WE WILL PUT IN THE RECORD EVIDENCE FROM HIS ASYLUM
HEARING SHOWING THAT IT WAS A VERY DIFFERENT STORY, WHERE HIS
WIFE WAS IN A PLACE WITH DANGEROUS GANG MEMBERS AND HE CAME
WITH A MACHETE, AND THE WHOLE THING GOT SORT OF MESSY.  BUT
ULTIMATELY THOSE CRIMINAL -- THAT CRIMINAL COURT GAVE HIM 48

SEPTEMBER 14, 2018

```
1   DAYS 8 YEARS AGO.

2           AND THE OTHER THING I WOULD MENTION IS THAT THESE

3   INDIVIDUALS HAVE NOW BEEN IN DETENTION FOR MONTHS AND MONTHS,

4   AND SO THE GOVERNMENT HAS HAD A CHANCE TO OBSERVE THEM.  THEY

5   HAVE BEEN MODEL DETAINEES.  NOTHING HAS HAPPENED.

6           SO WE REALLY BELIEVE THAT WHILE GENERALLY THE

7   GOVERNMENT MAKES DECISIONS ABOUT WHO GOES IN WHICH DETENTION

8   CENTER AND WHO IS RELEASED, WHERE THERE IS THIS MUCH AT STAKE

9   FOR LITTLE CHILDREN, POTENTIALLY PERMANENT DAMAGE, THERE NEEDS

10  TO BE MORE DONE THAN SIMPLY THE GOVERNMENT COMING IN AND

11  SAYING, WELL, YOU KNOW, THERE IS THIS WARRANT FROM A YEAR AGO

12  AND IT SEEMS TO SUGGEST THAT SHE MIGHT BE A DANGER.  OR THERE

13  IS THIS 8-YEAR-OLD MISDEMEANOR ASSAULT CONVICTION.

14          AND SO THAT WOULD BE OUR POSITION, YOUR HONOR.

15          THE COURT:  OKAY.  THANK YOU.

16          MR. STEWART:  YOUR HONOR --

17          THE COURT:  MR. STEWART.  YES, GO AHEAD.

18          MR. STEWART:  JUST A COUPLE OF POINTS, YOUR HONOR.

19          I THINK THAT THE TWO CASES HERE THAT MR. GELERNT HAS

20  BROUGHT AS HIS, YOU KNOW, POSTER-BOY CASES FOR WHERE THE

21  GOVERNMENT HAS SUPPOSEDLY GONE WRONG, I THINK THAT THESE CASES

22  VERY WELL EMPHASIZE WHY THIS DETERMINATION IS PROPERLY

23  ENTRUSTED TO THE GOVERNMENT.

24          YOU KNOW, YOUR HONOR, YOU EMPHASIZED IN VARIOUS

25  ORDERS, YOU KNOW, WHEN YOU APPROVED THE ORDER ABOUT, YOU KNOW,
```

SEPTEMBER 14, 2018

1    DETENTION DECISIONS IN THE FLORES ORDER CONTEXT WHEN YOUR

2    HONOR, YOU KNOW, EMPHASIZED AT THE HEARING ABOUT THAT ISSUE

3    WITH KARNES, YOU KNOW, ABOUT FACILITY MANAGEMENT AND THE

4    GOVERNMENT'S TRUST THERE.  YOU RECOGNIZED CORRECTLY THAT THESE

5    DETERMINATIONS -- YOU DID IT -- YOUR HONOR DID IT IN AN NTC

6    ORDER AS WELL ABOUT THESE DETERMINATIONS, YOUR HONOR.  THESE

7    DETENTION SAFETY-RELATED DETERMINATIONS ARE UNIQUELY IN THE

8    EXPERTISE OF THE GOVERNMENT.

9             AND MR. GELERNT HAS BROUGHT BEFORE THE COURT, YOU

10   KNOW, ONE, A PERSON WHO IS SUSPECTED OF TERRORISM BASED ON A

11   WARRANT IN ANOTHER COUNTRY; AND, TWO, THAT THEY ARE TRYING TO

12   GET, YOU KNOW, INTO A FAMILY RESIDENTIAL CENTER OR OUT INTO

13   THE COMMUNITY A MAN WHO WIELDED A MACHETE AT HIS WIFE.

14            THOSE ARE THE TWO CASES THAT MR. GELERNT HAS BROUGHT

15   TO THE COURT WHERE HE IS FAULTING THE GOVERNMENT'S

16   DETERMINATION THAT THESE FOLKS SHOULD NOT BE PUT INTO A FAMILY

17   RESIDENTIAL CENTER AND SHOULD -- YOU KNOW, DO NOT MEET THE

18   CLASS DEFINITION.

19            THOSE FOLKS COULD SEEK RELIEF OTHER WAYS, THEY ARE

20   JUST NOT IN THE CLASS.  THEY CAN SEEK AN INDIVIDUAL -- YOU

21   KNOW, SOME OTHER KIND OF RELIEF, YOUR HONOR.

22            BUT THE POINT I WANT TO EMPHASIZE IS THAT THESE

23   CASES REALLY SHOW WHY THE GOVERNMENT NEEDS TO BE ENTRUSTED

24   WITH THESE KINDS OF DECISIONS.  WE HAVE USED THIS DISCRETION

25   VERY JUDICIOUSLY.  WE USED IT IN GOOD FAITH.  WE HAVE BEEN

1    CAREFUL.

2           YOU CAN SEE BY THE SHEER NUMBERS OF PEOPLE WHO HAVE

3    BEEN REUNIFIED IN CUSTODY AND OUT THAT THIS IS NOT -- YOU

4    KNOW, THIS HAS NOT BEEN A STINGY SORT OF A THING WHERE, YOU

5    KNOW, ANYTHING IS, YOU KNOW, CAN BE SAID TO BE A MESS.

6           IT IS REALLY QUITE SOMETHING AND IT REALLY SHOWS THE

7    LACK OF EXPERTISE ON THE PART OF ACLU LAWYERS TO SUGGEST THE

8    GOVERNMENT SHOULD BE SECOND-GUESSED BECAUSE IT DOESN'T WANT

9    SOMEBODY WHO WIELDED A MACHETE AT HIS WIFE TO BE IN A FAMILY

10   RESIDENTIAL CENTER, AND IT DOESN'T WANT SOMEBODY WHO IS

11   SUSPECTED OF TERRORISM TO BE IN A FAMILY RESIDENTIAL CENTER.

12          I MEAN, YOUR HONOR, I WAS QUITE -- YOU KNOW, IT WAS

13   QUITE TEMPTING TO JUST SUBMIT LITERALLY A ONE-PARAGRAPH

14   SUBMISSION ON THIS THING, YOU KNOW, MACHETE-WIELDING MADMAN

15   AND, YOU KNOW, SUSPECTED MS-13 TERRORIST GANG MEMBER.

16          THESE ARE BIG-DEAL THINGS, AND THE GOVERNMENT CANNOT

17   BE MAKING DECISIONS THAT ALLOW CHILDREN TO BE EXPOSED TO THESE

18   PEOPLE THAT THE GOVERNMENT HAS REASONABLE GOOD FAITH BASIS --

19   REASONABLE GOOD FAITH REASONS AND HAS MADE A GOOD FAITH

20   DETERMINATION THEY SHOULD NOT BE.

21          SO FOR ALL OF THESE REASONS I THINK THAT THIS REALLY

22   REAFFIRMS THE WISDOM OF YOUR HONOR'S PRIOR ORDERS AND COMMENTS

23   THAT ENTRUSTED THE GOVERNMENT ITS DISCRETIONARY

24   DECISION-MAKING, PARTICULARLY IN THE DETENTION CONTEXT

25   OVERALL.

SEPTEMBER 14, 2018

 1          FOR THOSE REASONS I WOULD REJECT -- I WOULD
 2   RESPECTFULLY SUGGEST THAT YOUR HONOR REJECT THESE TWO -- THESE
 3   TWO CASES BROUGHT BY MR. GELERNT.  AND THAT IT NOT DELVE INTO
 4   THESE VERY DELICATE AND IMPORTANT AND, YOU KNOW, CRITICAL FOR
 5   SAFETY OF FAMILIES DETERMINATIONS ABOUT CLASS MEMBERSHIP AND
 6   REUNIFICATION.
 7          **THE COURT:**  IS IT YOUR POSITION, MR. STEWART, THAT
 8   IF THE FAMILY SEPARATION PRACTICE HAD NEVER BEEN IMPLEMENTED,
 9   SO WE WIND BACK THE CLOCK.  THAT IF THESE TWO INDIVIDUALS,
10   MR. C. AND MS. Q., HAD COME INTO THE COUNTRY WITH THEIR
11   CHILDREN PRIOR TO THE FAMILY SEPARATION PRACTICE, THESE TWO
12   WOULD HAVE BEEN SEPARATED FROM THEIR CHILDREN UNDER THE
13   GOVERNMENT'S PRIOR CRITERIA, THE CRITERIA THAT ICE WAS USING
14   THAT WE HAVE TALKED ABOUT IN PRIOR HEARINGS.  THAT SIMPLY
15   GIVEN THIS CRIMINAL HISTORY, THESE MARKERS, THE GOVERNMENT
16   WOULD HAVE SEPARATELY DETAINED THESE INDIVIDUALS.
17          **MR. STEWART:**  YES, YOUR HONOR.  THESE INDIVIDUALS
18   COULD NOT -- MY UNDERSTANDING COULD NOT BE IN FAMILY
19   RESIDENTIAL CENTERS.  IT IS JUST -- THE GOVERNMENT CANNOT TAKE
20   THAT KIND OF RISK WITH FAMILIES AND OTHERS, OTHER CHILDREN AND
21   THE LIKE.
22          **THE COURT:**  OKAY.
23          **MR. GELERNT:**  YOUR HONOR, I JUST -- THIS IS MR.
24   GELERNT.  I WOULD JUST MAKE A COUPLE OF BRIEF POINTS.  I KNOW
25   YOU WANT TO END THE HEARING.

SEPTEMBER 14, 2018

1        BUT FIRST OF ALL, THESE TWO CASES WERE BROUGHT NOT

2   BECAUSE THESE WERE POSTER CASES, THEY WERE BROUGHT BECAUSE THE

3   AGE OF THE CHILDREN, IT WAS FIRST BECAUSE OF THE AGE OF THE

4   CHILDREN.  AND THE CHILDREN ARE SUFFERING SO MUCH.  AND THE

5   ATTORNEYS FOR THE CHILDREN HAVE ASKED US TO MOVE THESE CASES

6   QUICKER.

7        AND SO I THINK WHAT YOU WILL SEE NEXT WEEK IS THAT

8   THERE ARE DUI'S, THERE ARE MINOR CRIMES.  THERE IS AN ILLEGAL

9   ENTRY CRIME.  SO WE DIDN'T BRING THESE BECAUSE WE BELIEVE

10  THESE ARE THE MOST MINOR CRIMES.

11       BUT PUTTING THAT ASIDE, I THINK WHAT THE

12  GOVERNMENT'S SUBMISSION SHOWS IS THAT THEY ACTUALLY DIDN'T DO

13  ANY LOOKING AT THESE CASES.  I THINK TO SAY, IT IS OUR

14  EXPERTISE ABOUT HOW DANGEROUS THIS MAN IS.  I THINK IT IS THE

15  STATE COURTS OF LOUISIANA WHO GAVE HIM 48 DAYS, WHO DIDN'T

16  THINK HE WAS THAT DANGEROUS.

17       AND THE GOVERNMENT HAS HAD HIM IN A DETENTION CENTER

18  NOW FOR A WHILE, AND ASSUREDLY IF THEY HAVE BEEN WATCHING HIM

19  KNOW THAT HE IS NOT A DANGER.

20       FOR THE OTHER PERSON, IT IS ALL WELL AND GOOD FOR

21  THE GOVERNMENT TO CONTINUE TO SAY SHE IS A TERRORIST.  THAT IS

22  SIMPLY THE WAY EL SALVADOR CHARACTERIZES THEIR GANGS.  BUT

23  THERE IS ZERO EVIDENCE SHE WAS EVER PART OF A GANG.  WE HAVE

24  PUT IN VOLUMINOUS EVIDENCE SHOWING SHE WAS NOT PART OF A GANG.

25  BEFORE THE IMMIGRATION JUDGE THE GOVERNMENT HAD A CHANCE TO

SEPTEMBER 14, 2018

1  TRY TO GO BEYOND THE WARRANT, THEY WERE NOT ABLE TO.  SO THEIR

2  OWN IMMIGRATION JUDGE FOUND SHE WAS NOT A DANGER.

3        SO I THINK WE WOULD SUGGEST THAT WHERE THIS MUCH IS

4  AT STAKE FOR CHILDREN THERE NEEDS TO BE MORE THAN WHAT THE

5  GOVERNMENT HAS DONE.

6        THANK YOU, YOUR HONOR.

7        **THE COURT:**  THANK YOU.  YOU ARE WELCOME.  SO I WILL

8  TAKE THAT UNDER SUBMISSION, AND ISSUE A RULING SHORTLY.

9        LET'S PROCEED, THEN, WITH THE UNDERSTANDING THAT

10 ANOTHER JOINT STATUS REPORT WILL BE FILED NEXT THURSDAY BY

11 3:00, AS WELL AS ON OR BEFORE THAT TIME A JOINT MOTION AND

12 ORDER WITH RESPECT TO THE PROPOSED SETTLEMENT, CLASS

13 CERTIFICATION.

14        ARE THERE ANY OTHER ISSUES THAT WE NEED TO ADDRESS

15 AT THIS TIME?  OTHERWISE WE WILL MEET AGAIN NEXT FRIDAY AT

16 1:00.  OKAY.  I THINK WE --

17        **MS. HELLER:**  CAROLINE HELLER FROM GREENBERG TRAUIG.

18 WE REPRESENT THE PLAINTIFFS IN THE RGH MATTER.  I DON'T KNOW

19 IF YOUR HONOR HAD INTENDED TO CONCLUDE THE WHOLE HEARING OR

20 MOVE TO NTC AND RGH.  WE HAD SOME ISSUES WE WANTED TO RAISE.

21        I APOLOGIZE FOR SPEAKING, I AM NOT IN THE SAME ROOM

22 WITH MY CALIFORNIA COLLEAGUES, I AM STILL NOT ADMITTED THERE

23 ON THE PHONE.  IF THE COURT IS INCLINED TO HAVE THEM SPEAK

24 INSTEAD OF ME, WE ARE HAPPY TO DO THAT.  THEY ARE PREPARED TO

25 PRESENT.

SEPTEMBER 14, 2018

1        **THE COURT:**  I AM HAPPY TO HEAR FROM YOU OR ALL OF

2    THE COUNSEL ON THOSE PROCEEDINGS.

3        I NEGLECTED TO MENTION NTC.  I DID GET THE STATUS

4    REPORT, AND READ IT.

5        WAS THERE SOMETHING IN PARTICULAR THAT COUNSEL WOULD

6    LIKE TO ADDRESS AT THIS TIME?

7        **MS. HELLER:**  YES, YOUR HONOR.  THANK YOU.

8        I BELIEVE THE NTC REPORT IN THE SECOND TO LAST

9    PARAGRAPH ON THE BOTTOM OF PAGE 3 HAD MENTIONED THAT WE HAVE

10   SOME ISSUES IN RGH CONCERNING THREE OF THE PLAINTIFF CHILDREN

11   WHO HAVE NOT YET BEEN RELEASED TO SPONSORS.

12       OUR UNDERSTANDING -- AND WE HAVE BEEN IN TOUCH WITH

13   THE STEERING COMMITTEE ABOUT THESE CHILDREN, SO THAT THE

14   STEERING COMMITTEE CAN REACH OUT TO THE PARENTS.

15       OUR UNDERSTANDING IS THAT WITH RESPECT TO TWO OF THE

16   CHILDREN THE PARENTS' WISHES HAVE BEEN EXPRESSED, AND I THINK

17   THE STEERING COMMITTEE WAS GOING TO GET -- TRY TO GET IN TOUCH

18   WITH THE THIRD.

19       THESE CHILDREN, ALL OF THE DOCUMENTS TO GET THEM

20   SPONSORED OUT HAVE BEEN SUBMITTED.  AND THEY HAVE BEEN IN

21   DETENTION FOR THREE TO FOUR MONTHS AND ARE SUFFERING IN

22   DETENTION AND WANT TO BE SPONSORED OUT TO THEIR RELATIVES.  WE

23   DON'T KNOW WHAT THE DELAY IS.

24       OUR UNDERSTANDING ALSO IS THAT ALL THREE CHILDREN DO

25   NOT WANT TO BE REUNIFIED WITH THEIR PARENTS IN THEIR HOME

SEPTEMBER 14, 2018

1   COUNTRY.  AND THAT AS FAR AS WE HAVE LEARNED THE PARENTS

2   SUPPORT THAT DECISION.

3          SO OUR CONCERN RIGHT NOW, WHICH WE ARE HOPING YOU

4   CAN ADDRESS, IS TO ASK THE GOVERNMENT TO, BY MONDAY, TELL US

5   WHAT IS KEEPING THESE CHILDREN'S SPONSORSHIP APPROVALS FROM

6   BEING EXECUTED AND HAVING THESE CHILDREN SENT TO SPONSORS.  SO

7   THAT IF THERE ARE DOCUMENTS OUTSTANDING OR INFORMATION THAT

8   NEEDS TO BE PROVIDED WE CAN ASSIST IN PROVIDING THEM.

9          SIMILARLY, IF THERE IS NOTHING THAT NEEDS TO BE

10  PROVIDED WE WOULD LIKE SOME EXPLANATION AS TO WHY THERE IS A

11  DELAY.  WE UNDERSTAND THAT THERE HAVE BEEN HOME STUDIES AND

12  FINGERPRINTS THAT WERE OBTAINED AND HAVEN'T BEEN -- TO OUR

13  KNOWLEDGE HAVEN'T BEEN PROCESSED.

14         AND THE SAFE PASSAGE PROJECT HAS BEEN IN TOUCH WITH

15  THE OFFICE OF REFUGEE RESETTLEMENT TO TRY TO FIND OUT WHAT

16  ELSE IS NEEDED, AND HAS NOT BEEN SUCCESSFUL IN UNDERSTANDING

17  WHAT THE HOLD-UP IS.

18         SO I CAN CERTAINLY PROVIDE THE INITIALS OF THE

19  CHILDREN TO THE COURT.  AS I MENTIONED, WE HAD PROVIDED THEM

20  TO THE STEERING COMMITTEE.

21         WE HAVE BEEN IN TOUCH WITH THE DEPARTMENT OF JUSTICE

22  ABOUT FOUR WEEKS AGO ON TWO OF THE CHILDREN, AND I SENT AN

23  EMAIL AND DIDN'T RECEIVE ANY RESPONSE.

24         SO AT THIS POINT WE ARE HOPING THAT THE COURT CAN

25  REQUEST THAT THE GOVERNMENT LOOK INTO WHAT THE STATUS IS FOR

SEPTEMBER 14, 2018

1   THESE CHILDREN AND LET US KNOW WHAT THE HOLD-UP IS SO THAT WE

2   MAY ASSIST IN GETTING THOSE SPONSORS APPROVED.

3           **THE COURT:**  MR. STEWART, ANY INFORMATION?

4           **MR. STEWART:**  YOUR HONOR, LET ME LOOK INTO THOSE

5   THREE CASES.

6           MY UNDERSTANDING OF WHAT I HAVE IS THAT I -- SORT OF

7   TWO THINGS GOING ON.  ONE IS WE MAY NOT HAVE WAIVERS IN ALL OF

8   THOSE CASES, WHICH WOULD BE OBVIOUSLY A SIGNIFICANT HOLD-UP.

9   WE CAN CHECK ON THAT.  AND IF THAT IS THE HOLD-UP WE CAN LET

10  FOLKS KNOW.

11          THE SECOND ISSUE, YOUR HONOR, AS YOU KNOW IS THAT

12  BECAUSE THESE DO FALL IN THE TVPRA SPONSORSHIP GROUP THERE ARE

13  JUST THOSE EXTRA PROCESSES THAT WE NEED TO MAKE SURE TO RUN

14  THROUGH.

15          BUT WHY DON'T WE GO BACK AND CHECK ON THINGS, AND WE

16  CAN CONFER ON THOSE THREE CASES IN DUE COURSE.

17          **THE COURT:**  LET'S LEAVE IT THIS WAY, THEN.  THAT

18  GOVERNMENT COUNSEL WILL LOOK INTO THOSE THREE CASES, REPORT

19  BACK TO PLAINTIFFS' COUNSEL BY CLOSE OF BUSINESS ON MONDAY.

20          AND THEN IF THERE ARE ANY ISSUES THEY CAN BE SET OUT

21  IN THE STATUS REPORT AND THEN ADDRESSED ON FRIDAY.

22          **MS. HELLER:**  YOUR HONOR, JUST AS A FOLLOW-UP.  WE

23  KNOW WITH AT LEAST ONE OF THE CHILDREN THE OFFICE OF REFUGEE

24  RESETTLEMENT HAS THE POWER OF ATTORNEY SO CAN MAKE THAT

25  DECISION.  BUT WE WILL FOLLOW UP WITH COUNSEL FOR THE

SEPTEMBER 14, 2018

1  DEFENDANT THIS AFTERNOON, AND GIVE THEM THE INFORMATION ON THE
2  CHILDREN SO THAT THEY CAN PROVIDE THE INFORMATION TO US ON
3  MONDAY.

4         **THE COURT:**  OKAY.  VERY GOOD.

5         ARE THERE ANY OTHER COUNSEL THAT HAVE ANY OTHER
6  COMMENTS OR CONCERNS AT THIS TIME, BEFORE WE SIGN OFF?

7         **MS. LEVY:**  YES, YOUR HONOR, THIS IS JENNIFER LEVY
8  FROM THE LEGAL AID SOCIETY.

9         WE ARE CONCERNED THAT THERE HAS BEEN LITTLE MOVEMENT
10  ON THE CHILDREN WHO REMAIN IN O.R.R. CUSTODY AND THE CHILDREN
11  WHO CONTINUE TO SEEK REUNIFICATION FROM LAST WEEK.

12         THERE ARE THREE CHILDREN WHO ARE SEEKING
13  REUNIFICATION WITH MS. L. CLASS MEMBERS.  ONE OF THEM, I
14  BELIEVE, HAS BEEN REUNIFIED -- OR WE WERE TOLD WAS GOING TO BE
15  REUNIFIED TODAY.  ONE THEY ARE STILL DELAYING SCHEDULING
16  REUNIFICATION.  AND ONE THEY HAVEN'T TOLD US WHAT THE
17  IMPEDIMENT IS TO REUNIFICATION.

18         SO WE WOULD ASK THAT THEY PROVIDE US WITH THE
19  INFORMATION WITH RESPECT TO THE TWO WHO HAVE NOT BEEN
20  REUNIFIED ALSO BY CLOSE OF BUSINESS MONDAY.

21         **THE COURT:**  ANY OBJECTION TO THAT, MR. STEWART?  SO
22  THAT WOULD BE FIVE TOTAL TO LOOK INTO.

23         **MR. STEWART:**  I THINK WE CAN PROVIDE INFORMATION ON
24  ALL FIVE BY THAT TIME FRAME, YOUR HONOR.  THAT SHOULD BE
25  DO-ABLE.  WE WILL DO SO.

SEPTEMBER 14, 2018

```
 1              THE COURT:  LET'S LEAVE IT THAT WAY, AND THEN IF
 2    THERE ARE ANY REMAINING ISSUES, ONCE AGAIN WE CAN ADDRESS THEM
 3    NEXT FRIDAY.
 4              ANYTHING ELSE?
 5              OKAY.  THANK YOU VERY MUCH.  HAVE A GOOD WEEKEND.
 6              I WILL ONCE AGAIN LOOK FORWARD TO THE JOINT REPORTS
 7    NEXT WEEK AND THE STATUS CONFERENCE ON FRIDAY, 1:00 O'CLOCK, A
 8    WEEK FROM TODAY.  THANK YOU.
 9              MR. STEWART:  THANK YOU, YOUR HONOR.
10              MR. GELERNT:  THANK YOU, YOUR HONOR.
11
12                             *   *   *
13              I CERTIFY THAT THE FOREGOING IS A CORRECT
                TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
14              IN THE ABOVE-ENTITLED MATTER.
15              S/LEEANN PENCE                    9/14/2018
                LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
16
17
18
19
20
21
22
23
24
25
```

SEPTEMBER 14, 2018