Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org


*Admitted Pro Hac Vice
Attorneys for Petitioners-Plaintiffs
Additional counsel on next page

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

Spencer E. Amdur (SBN 320069)
Stephen B. Kang (SBN 292280)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
samdur@aclu.org
skang@aclu.org

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al, <br><br>     *Petitioners-Plaintiffs*, <br><br>      v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"); et al., <br><br>     *Respondents-Defendants*. | Case No. 3:18-cv-428-DMS-MDD <br><br> **JOINT MOTION FOR LEAVE TO FILE THIRD AMENDED CLASS ACTION COMPLAINT AND TO FILE UNDER PSEUDONYM** <br><br> Judge: Honorable Dana M. Sabraw <br> Ctrm:  13A, Suite 1310 <br><br> Complaint Filed: February 26, 2018 <br> Trial: TBD |

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Local Civil Rule 7.2(b), and the Court's Chamber Rules, Plaintiffs Ms. L., *et al*., ("Plaintiffs") and Defendants U.S. Immigration and Customs Enforcement, *et al.* ("Defendants"), by and through their undersigned counsel of record (collectively, the "Parties"), respectfully submit this Joint Motion for Leave to File a Third Amended Class Action Complaint ("TAC") and to File Under Pseudonym.   The purpose of amending the complaint is to add "Dora" and "Alma" as named Plaintiffs, solely for having them serve as class representatives for the proposed settlement of asylum-related claims. *See* ECF No. 220. Otherwise, the nature of the action does not change, and the amendment does not otherwise affect any other issues, claims, or proceedings that are ongoing in the case. Defendants' objections and arguments regarding class certification are also preserved.  Upon approval of the settlement, the parties agree that Count III of the TAC will be dismissed, though this Court will retain jurisdiction to enforce the settlement itself.

A party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.   Fed. R. Civ. P. 15(a)(2).   Here, Plaintiffs' counsel conferred with Defendants' counsel and obtained confirmation that Defendants consent to filing the TAC.  The proposed TAC is attached as Exhibit "A" for filing on the public record. Pursuant to Local Civil Rule 15.1(b), a version of the proposed TAC that shows a redline of how the proposed pleading differs from the current operative pleading is attached as Exhibit "B."

Plaintiffs also seek to add the named Plaintiffs to the TAC under pseudonyms, and Defendants do not oppose this request.  Specifically, Plaintiffs request that this Court permit them to (1) proceed under pseudonyms, and (2) file under seal an exhibit to this motion that matches the pseudonyms used in the publicly filed complaint to the newly-added Plaintiffs' actual names.  Plaintiffs request leave to file under seal the following document: Exhibit "C," which includes Plaintiffs' true

names matched with the pseudonyms they seek to use in this lawsuit.  Plaintiffs ask (and Defendants do not oppose) that Plaintiffs' names and any personal identifying information that could lead to the identification of Plaintiffs by non-parties, shall not be publicly disclosed, and that the Court confirm this agreement in an order. Plaintiffs state that the basis for this motion is that the newly-added Plaintiffs and their minor children are asylum applicants who fear persecution and possible death both here and in their home countries if their identities are exposed. Plaintiffs also state that because Plaintiffs would be at risk of great harm if their identities were revealed, they respectfully request leave to proceed anonymously in this litigation. Defendants do not concede these points, but do not oppose the request to proceed under pseudonyms.

Dated: October 5, 2018                          Respectfully Submitted,

                                                */s/ Lee Gelernt*
Bardis Vakili (SBN 247783)                      Lee Gelernt*
ACLU FOUNDATION OF SAN                          Judy Rabinovitz*
DIEGO & IMPERIAL COUNTIES                       Anand Balakrishnan*
P.O. Box 87131                                  Daniel Galindo (SBN 292854)
San Diego, CA 92138-7131                        AMERICAN CIVIL LIBERTIES UNION
T: (619) 398-4485                               FOUNDATION
F: (619) 232-0036                               IMMIGRANTS' RIGHTS PROJECT
*bvakili@aclusandiego.org*                      125 Broad St., 18th Floor
                                                New York, NY 10004
Spencer E. Amdur (SBN 320069)                   T: (212) 549-2660
Stephen B. Kang (SBN 292280)                    F: (212) 549-2654
AMERICAN CIVIL LIBERTIES                        *lgelernt@aclu.org*
UNION FOUNDATION                                *jrabinovitz@aclu.org*
IMMIGRANTS' RIGHTS PROJECT                      *abalakrishnan@aclu.org*
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950                              *Admitted Pro Hac Vice*
*samdur@aclu.org*                               *Attorneys for Petitioner-Plaintiffs Ms. L*
*skang@aclu.org*                                *and Ms. C*

1   Dated: October 5, 2018                    Respectfully Submitted,

2
                                             */s/ Wilson G. Barmeyer*
3   Sirine Shebaya*                          Wilson G. Barmeyer*
    Johnathan Smith *                        EVERSHEDS SUTHERLAND (US) LLP
4
    MUSLIM ADVOCATES                         700 Sixth Street NW, Suite 700
5   P.O. Box 34440                           Washington, DC 20001
    Washington, D.C. 20043                   T: (202) 383-0100
6
    T: (202) 897-2622                        F: (202) 637-3593
7   F: (202) 508-1007                        *wilsonbarmeyer@evershedssutherland.com*
    *sirine@muslimadvocates.org*             
8   *johnathan@muslimadvocates.org*
9
    Aaron M. Olsen (SBN 259923)
10
    HAEGGQUIST & ECK, LLP
11  225 Broadway, Suite 2050
    San Diego, CA 92101
12
    T: (619) 342-8000                        *Pro Hac Vice to be filed*
13  F: (619) 342-7878                        *Attorneys for Plaintiffs Dora and Alma as*
    *aarono@haelaw.com*                      *to Count III*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3

1    Dated: October 5, 2018                  Respectfully Submitted,

2                                            */s/ Joseph H. Hunt*
3    SARAH B. FABIAN                         JOSEPH H. HUNT
4    Senior Litigation Counsel              Assistant Attorney General
     NICOLE MURLEY                          SCOTT G. STEWART
5    Trial Attorney                         Deputy Assistant Attorney General
     Office of Immigration Litigation       WILLIAM C. PEACHEY
6    Civil Division                         Director
7    U.S. Department of Justice             WILLIAM C. SILVIS
     P.O. Box 868, Ben Franklin Station     Assistant Director
8    Washington, DC 20044
9    T: (202) 532-4824
     F: (202) 616-8962
10   *sarah.b.fabian@usdoj.gov*

11
     ADAM L. BRAVERMAN
12   United States Attorney
13   SAMUEL W. BETTWY
     Assistant U.S. Attorney                *Attorneys for Respondents-Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on October 5, 2018, I electronically filed the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification

4 of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

5       I certify under penalty of perjury under the laws of the United States of

6 America that the foregoing is true and correct.  Executed on October 5, 2018.

7

8                         */s/ Lee Gelernt*
                             Lee Gelernt, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Ex. A

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Attorneys for Petitioners-Plaintiffs
*Admitted Pro Hac Vice

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

Spencer E. Amdur (SBN 320069)
Stephen B. Kang (SBN 292280)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
samdur@aclu.org
skang@aclu.org

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. et al., <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"); et al., <br><br> Respondents-Defendants. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: October 5, 2018 <br><br> **THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> CLASS ACTION |

Aaron M. Olsen
(SBN 259923)
HAEGGQUIST & ECK LLP
225 Broadway, Ste 2050
San Diego, CA 92101
T: 619.342.8000
F: 619.342.7878
*aarono@haelaw.com*

Wilson G. Barmeyer*
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street NW
Suite 700
Washington, DC 20001
T: (202) 383-0100
F: (202)637-3593
*wilsonbarmeyer@eversheds-sutherland.com*

Sirine Shebaya[*]
Johnathan Smith[*]
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
T: (202) 897-2622
F: (202) 508-1007
*sirine@muslimadvocates.org*
*johnathan@muslimadvocates.org*

John H. Fleming[*]
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street NE, Suite 2300
Atlanta, GA 30309
T: (404) 853-8000
F: (404) 853-8806
*johnfleming@eversheds-sutherland.com*

Simon Y. Sandoval-Moshenberg[*]
Sophia Gregg[*]
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450
F: (703) 778-3454
*simon@justice4all.org*
*sophia@justice4all.org*

*Counsel for Plaintiffs Dora and Alma and for Count 3 Only*
[*]*Motion for Admission Pro Hac Vice Forthcoming*

**INTRODUCTION**

1.      This case challenges the United States government's forcible separation of parents from their young children for no legitimate reason and notwithstanding the threat of irreparable damage that separation has been universally recognized to cause young children.

2.      Plaintiff Ms. L. is the mother of a seven (7) year-old daughter, who was ripped away from her, and then sent halfway across the country to be detained alone. Plaintiff Ms. C. is the mother of a fourteen (14) year-old son, who was also forcibly separated from his mother and detained more than a thousand miles away. Dora is the mother of a thirteen (13) year-old daughter who was forcibly separated from her.  Alma is the mother of seven-year old and nine-year old sons who were forcibly separated from her.

3.      Ms. L., Ms. C., Dora, and Alma bring this action on behalf of themselves and thousands of other parents whom the government has forcibly separated from their children. Like Ms. L., Ms. C., Dora, and Alma, many of these individuals have fled persecution and are seeking asylum in the United States. Without any allegations of abuse, neglect, or parental unfitness, and with no hearings of any kind, the government is separating these families and detaining their young children, alone and frightened, in facilities often thousands of miles from their parents.

4.      Forced separation from parents causes severe trauma to young children, especially those who are already traumatized and are fleeing persecution in their home countries. The resulting cognitive and emotional damage can be permanent.

5.      Forced separation can also cause parents to experience symptom of acute stress response and corresponding cognitive impairments, which can in turn impair the ability to meaningfully participate in a credible fear interview.

18cv0428

6.     Defendants have ample ways to keep Plaintiffs together with their children, as they have done for decades prior to their current practice. There are shelters that house families (including asylum-seekers) while they await the final adjudication of their immigration cases. If, however, the government lawfully continues detaining these parents and young children, it must at a minimum detain them <u>together</u> in one of its immigration family detention centers.

7.     The Due Process Clause of the Fifth Amendment does not permit the government to forcibly take young children from their parents, without justification or even a hearing. That separation also violates the asylum statutes, which guarantee a meaningful right to apply for asylum, and the Administrative Procedure Act (APA), which prohibits unlawful and arbitrary government action.

**JURISDICTION**

8.     This case arises under the Fifth Amendment to the United States Constitution, federal asylum statutes, and the APA. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Plaintiffs are in custody for purposes of habeas jurisdiction.

**VENUE**

9.     Venue is proper under 28 U.S.C. § 1391(e) because Ms. L. was detained in this District when this action commenced, Defendants reside in this District, and a substantial portion of the relevant facts occurred within this District, including the Defendants' implementation of their practice of separating immigrant parents from their children for no legitimate reason.

**PARTIES**

10.     Plaintiff Ms. L. is a citizen of the Democratic Republic of the Congo (the "Congo" or "DRC"). She is the mother of 7 year-old S.S.

11.     Plaintiff Ms. C. is a citizen of Brazil. She is the mother of 14 year-old J.

12. Dora is a citizen of Honduras. She is the mother of a 13 year-old daughter.

13. Alma is a citizen of Honduras. She is the mother of 7 and 9 year-old sons.

14. Defendants U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

15. Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

16. Defendant U.S. Customs and Border Protection ("CBP") is the sub agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

17. Defendant U.S. Department of Health and Human Services (HHS) is a department of the executive branch of the U.S. government which has been delegated authority over "unaccompanied" noncitizen children.

18. Defendant Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied" noncitizen children.

19. Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of Plaintiffs.

20. Defendant Greg Archambeault is sued in his official capacity as the ICE San Diego Field Office Director, and is a legal custodian of Plaintiff Ms. L.

21. Defendant Joseph Greene is sued in his official capacity as the ICE San Diego Assistant Field Office Director for the Otay Mesa Detention Center, and is a legal custodian of Plaintiff Ms. L.

22. Defendant Adrian P. Macias is sued in his official capacity as the ICE El Paso Field Office Director, and is a legal custodian of Plaintiff Ms. C.

18cv0428

23. Defendant Frances M. Jackson is sued in his official capacity as the ICE El Paso Assistant Field Office Director for the West Texas Detention Facility, and is a legal custodian of Plaintiff Ms. C.

24. Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

25. Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Executive Office of Immigration Review, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

26. Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

27. Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

28. Defendant Pete Flores is sued in his official capacity as the San Diego Field Director of CBP.

29. Defendant Hector A. Mancha Jr. is sued in his official capacity as the El Paso Field Director of CBP.

30. Defendant Alex Azar is sued in his official capacity as the Secretary of the Department of Health and Human Services.

31. Defendant Scott Lloyd is sued in his official capacity as the Director of the Office of Refugee Resettlement.

**FACTS**

32.    Over the past year, the government has separated thousands of migrant families for no legitimate purpose. The government's true purpose in separating these families was to deter future families from seeking refuge in the United States.

33.    Many of these migrant families fled persecution and are seeking asylum. Although there are no allegations that the parents are unfit or abusing their children in any way, the government has forcibly separated them from their young children and detained the children, often far away, in facilities for "unaccompanied" minors.

34.    There is overwhelming medical evidence that the separation of a young child from his or her parent will have a devastating negative impact on the child's well-being, especially where there are other traumatic factors at work, and that this damage can be permanent.

35.    The American Association of Pediatrics has denounced the Administration's practice of separating migrant children from their parents, noting that: "The psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family."

36.    Prior Administrations detained migrant families, but did not have a practice of forcibly separating fit parents from their young children.

37.    There are non-governmental shelters that specialize in housing and caring for families—including asylum seeking families—while their immigration applications are adjudicated.

38.    There are also government-operated family detention centers where parents can be housed together with their children, should the government lawfully decide not to release them. The government previously detained, and continues to detain, numerous family units at those facilities.

39.     In April 2018, the New York Times reported that more than "700 children have been taken from adults claiming to be their parents since October [of 2016], including more than 100 children under the age of 4." Caitlin Dickerson, *Hundreds of Children Have Been Taken from Parents at U.S. Border,* N.Y. Times, Apr. 20, 2018.

40.     On May 7, 2018, Defendant Sessions announced "a new initiative" to refer "100 percent" of immigrants who cross the Southwest border for criminal immigration prosecutions, also known as the "zero-tolerance policy." Defendant Sessions stated that as part of that prosecution, all parents who are prosecuted would be separated from their children. U.S. Dep't of Justice, Attorney General Sessions Delivers Remarks to the Association of State Criminal Investigative Agencies 2018 Spring Conference (May 7, 2018). The purpose of this new policy was to separate families in the hope that it would deter other families from seeking refuge in the United States.

41.     At a Senate Judiciary Committee hearing in May, a deputy chief of Defendant U.S. Customs and Border Protection testified that between May 6 and May 19 alone, a total of 658 children were separated from their family members pursuant to this policy. The Washington Post reported that in the city of McAllen, Texas, 415 children were taken from their parents during a two week period.[1] And in June 2018, the Department of Homeland Security reported that in the six weeks between April 19 and May 31, the administration took almost 2,000 children away from their parents.[2]

42.     Defendant Sessions and other government officials, including Defendant Nielsen, have repeatedly defended the separation of children from their parents in speeches and interviews with various media outlets. Among other

---

[1]     https://www.washingtonpost.com/world/national-security/trumps-zero-tolerance- at-the-border-is-causing-child-shelters-to-fill-up-fast/2018/05/29/7aab0ae4-636b-11e8-a69c-b944de66d9e7_story.html?utm_term=.d52d94c37d05.

[2]     https://ca.reuters.com/article/topNews/idCAKBN1JB2SF-OCATP.

justifications for the practice, they have stated that separating families would be a way to "discourage parents from bringing their children here illegally,"[3] and that it would help "deter more movement" to the United States by asylum seekers and other migrants.[4] Administration officials told the New York Times in May, "[t]he president and his aides in the White House had been pushing a family separation policy for weeks as a way of deterring families from trying to cross the border illegally."[5]

43.     Even if the separated child is released from custody and placed in a community setting or foster care, the trauma of the ongoing separation continues.

44.     By taking away their children, Defendants are coercing class members into giving up their claims for asylum and other legal protection. Numerous class members have been told by CBP and ICE agents that they will see their children again sooner if they withdraw their asylum applications and accept earlier deportation.[6]

45.     Many class members have given up their asylum claims and stipulated to removal as a way to be reunited with their children faster.

46.     For class members who have not been coerced into giving up their asylum claims, separation from their children has made those applications much more difficult. Separation prevents parents from helping their children apply for asylum and navigate removal proceedings. Separation also makes it harder for

---

[3]     http://transcripts.cnn.com/TRANSCRIPTS/1801/16/cnr.04.html.

[4]     https://www.cnn.com/2017/03/06/politics/john-kelly-separating-children-from- parents-immigration-border/

[5]     https://www.nytimes.com/2018/05/10/us/politics/trump-homeland-security- secretary-resign.html

[6]     This practice has been widely reported. *See, e.g.,* Dara Lind, *Trump Will Reunite Separated Families— But Only if They Agree to Deportation,* Vox.com (June 25, 2018), https://www.vox.com/2018/6725/17484042/children-parents-separate- reunite-plan-trump; Jay Root & Shannon Najmabadi, *Kids in Exchange for Deportation: Detained Migrants Say They Were Told They Could Get Kids Back on Way Out of U.S.,* Texas Tribune (June 24, 2018), https://www.texastribune.org/2018/06/24/kids-exchange-deportation-migrants-claim-they-were-promised-they-could/?utm_campaign=trib-social&utm_medium=social&utm_source=twitter&utm_content=1529859032.

parents to present facts involving their children which support their own asylum claims.

47.     The trauma of separation also renders asylum-seeking class members too distraught to effectively pursue their asylum applications. *See, e.g.,* Angelina Chapin, *Separated Parents Are Failing Asylum Screenings Because They're So Heartbroken,* Huffington Post (June 30, 2018).[7]

48.     Defendants have deported class members without their separated children. Their children are now stranded in the United States alone. Many of these parents are now struggling to make contact with their children, who are being detained thousands of miles away across multiple international borders. *See* Miriam Jordan, *"I Canˈt Go Without My Son, "a Mother Pleaded as She Was Deported to Guatemala,* N.Y. Times (June 17, 2018).[8]

49.     On June 20, 2018, President Trump signed an Executive Order ("EO") purporting to end certain family separations going forward.[9] The EO directs DHS to "maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings."

50.     The EO directs DHS to separate families any time DHS determines that separation would protect "the child's welfare." It does not, however, set forth how that standard will be applied. In prior cases the government has applied that standard in a manner that is inconsistent with the child's best interest, including in Ms. L's case.

51.     The EO makes no provision for reunifying the thousands of families who were separated prior to its issuance.

---

[7]     https://www.huffingtonpost.com/entry/separated-parents-too-grief-stricken-to-seek-asylum-experts-say_us_5b379974e4b08c3a8f6ad5d9.

[8]     https://www.nytimes.com/2018/06/17/us/immigration-deported-parents.html. *See also* Nelson Renteria, *El Salvador Demands U.S. Return Child Taken from Deported Father,* Reuters (June 21, 2018), https://www.reuters.com/article/us-usa- immigration-el-salvador/el-salvador-demands-us-return-child-taken-from-deported- father-idU SKBN1JH3ER.

[9]     https://www.whitehouse.gov/presidential-actions/affording-congress-opportunity- address-family-separation/.

52.   The EO makes no provision for returning separated children to parents who have been already been deported without their children.

**NAMED PLAINTIFFS**

53.   Ms. L. and her daughter S.S. are one of the many families that have recently been separated by the government.

54.   Ms. L. and her daughter are seeking asylum in the United States.

55.   Ms. L. is Catholic and sought shelter in a church until she was able to escape the Congo with S.S.

56.   Upon reaching the United States, Ms. L. and S.S. presented themselves at the San Ysidro, California Port of Entry on November 1, 2017. Although their native language is Lingala, they were able to communicate to the border guards that they sought asylum.

57.   Based on her expression of a fear of returning to the Congo, Ms. L. was referred for an initial screening before an asylum officer, called a "credible fear interview." She subsequently passed the credible fear screening but, until March 6, 2018, remained detained in the Otay Mesa Detention Center in the San Diego area.

58.   On or about November 5, immigration officials forcibly separated then-6 year-old S.S. from her mother and sent S.S. to Chicago. There she was housed in a detention facility for "unaccompanied" minors run by the Office of Refugee Resettlement (ORR).

59.   When S.S. was taken away from her mother, she was screaming and crying, pleading with guards not to take her away from her mother. While detained, Ms. L. spoke to her daughter approximately 6 times by phone, never by video. For months she was terrified that she would never see her daughter again. The few times Ms. L. was able to speak to her daughter on the phone, her daughter was crying and scared.

60.   In December, S.S. turned 7 and spent her birthday in the Chicago facility, without her mother.

61.    In detention, Ms. L. was distraught and depressed because of her separation from her daughter. As a result, she did not eat properly, lost weight, and was not sleeping due to worry and nightmares.

62.    In one moment of extreme despair and confusion, Ms. L. told an immigration judge that she wanted to withdraw her application for asylum, realizing her mistake only a few days later. She is seeking to reopen her case before the Board of Immigration Appeals.

63.    The government had no legitimate interest in separating Ms. L. and her child.

64.    There has been no evidence, or even accusation, that S.S. was abused or neglected by Ms. L.

65.    There is no evidence that Ms. L. is an unfit parent or that she is not acting in the best interests of her child.

66.    After Ms. L. filed this lawsuit and moved for a preliminary injunction, Defendants abruptly released her from custody on March 6, 2018, due to the filing of the lawsuit. Defendants informed her that she would be released mere hours in advance, with no arrangements for where she would stay. S.S. was released to Ms. L.'s custody several days later. Both are now pursuing their claims for legal protection.

67.    Ms. C. and her 14 year-old son, J., are another one of the families who have been separated by the government. Like Ms. L. and her daughter, Ms. C. and her son are seeking asylum in the United States.

68.    Ms. C. and J. fled Brazil and came to the United States to seek asylum. A few feet after Ms. C. entered the United States, a border guard approached her, and she explained that she was seeking asylum. Ms. C. subsequently passed a credible fear interview, and was put in removal proceedings, where she is applying for asylum.

69.     Despite having communicated her fear of persecution to border guards, the government prosecuted Ms. C. for entering the country illegally, took her son J. away from her, and sent him to a facility for "unaccompanied" children in Chicago.

70.     The government continued to separate Ms. C. from her son even after she completed serving her criminal misdemeanor sentence on September 22, 2017, and was sent to an immigration detention facility, the El Paso Processing Center. In early January 2018, she was transferred again, to another immigration facility, the West Texas Detention Facility (also known as Sierra Blanca), but still was not reunited with her son. Even after Ms. C was released from immigration detention on April 5, 2018, the government did not reunify her with her son for another two months, until June 9.

71.     While separated from J., Ms. C. was desperate to be reunited with him. She worried about him constantly and did not know when she would be able to see him. They spoke on the phone only a handful of times while they were separated by Defendants.

72.     J. had a difficult time emotionally during the months he was separated from his mother.

73.     The government had no legitimate interest for the separation of Ms. C. and her child.

74.     There is no evidence, or even accusation, that J. was abused or neglected by Ms. C.

75.     There is no evidence that Ms. C. is an unfit parent or that she is not acting in the best interests of her child.

76.     Dora fled Honduras with her thirteen-year-old daughter due to persecution on account of her political opinion. She was separated from her daughter when she arrived in the United States in May 2018.  It was the first time in their lives that they had been separated. Dora was unable to obtain information about her daughter's whereabouts.

18cv0428

77.   Dora was terrified for her daughter after being separated from her. She became so distraught that she had to be given medication—antidepressants and sleeping pills—to treat the depression she suffered as a result of having been separated from her daughter. The medication did not work and actually made her feel worse. Dora suffered side effects from the medications.

78.   Dora received a negative determination in a credible fear interview conducted during the separation.  She has been reunited with her children and is currently detained at the South Texas Family Residential Center in Dilley, Texas.

79.   Alma fled Honduras with her two boys, aged seven and nine, because of violence and persecution she and her family members endured. She arrived in the United States in June 2018 and was separated from her children. She received no information about them for twenty-eight days.

80.   At the time of her credible fear interview, Alma was separated from her children and unable to focus on anything other than that separation. She was later diagnosed with post-traumatic stress disorder ("PTSD") because of this separation, with strong indications that she was suffering from acute, debilitating trauma at the time of her interview, including alterations in mood and cognition, hyperarousal, and dissociation.

81.   Alma received a negative credible fear determination, which was affirmed by an immigration judge.

82.   Alma was reunited with her children, and was released on an order of supervision. She is required to check in regularly with ICE and is subject to deportation at any time.

## CLASS ALLEGATIONS

83.   Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

84.   Plaintiffs seek to represent the following class:

All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

85.     Ms. L., Ms. C., Dora, and Alma are each adequate representatives of the proposed class.

86.     The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. There are at a minimum hundreds of parents who fit within the class.

87.     The class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The members of the class are subject to a common practice: forcibly separating detained parents from their minor children absent any determination that the parent is unfit or presents a danger to the child. By definition, all class members have experienced that practice, and none has been given an adequate hearing regarding the separation. The lawsuit raises numerous questions of law common to members of the proposed class, including: whether Defendants' family separation practice violates class members' substantive due process right to family integrity; whether the practice violates class members' procedural due process rights; whether the practice violates the federal asylum statute; and whether these separations are unlawful or arbitrary and capricious under the APA.

88.     The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Ms. L., Ms. C., Dora, and Alma, and the proposed class members are all individuals who have had or will have their children forcibly taken away from them despite there being no proven allegations of abuse, neglect, or any other danger or unfitness. Plaintiffs and the proposed class also share the same legal claims, which assert the same substantive and procedural rights under the Due Process Clause, the asylum statute, and the APA.

18cv0428

89.     The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that they be reunified with their children, whether through release or in family detention facilities. In defending their own rights, Ms. L., Ms. C., Dora, and Alma will defend the rights of all proposed class members fairly and adequately.

90.     The proposed class is represented by counsel from the American Civil Liberties Union Immigrants' Rights Project and the ACLU of San Diego and Imperial Counties. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

91.     The members of the class are readily ascertainable through Defendants' records.

92.     The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unlawfully separating parents from their young children. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

## CAUSES OF ACTION
## COUNT I
### (Violation of Due Process: Right to Family Integrity)

93.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

94.     The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Ms. L., Ms. C., their children S.S. and J., and all proposed class members.

95.     Plaintiffs, their children, and all class members have liberty interests under the Due Process Clause in remaining together as families.

96.     The separation of the class members from their children violates substantive due process because it furthers no legitimate purpose and was designed to deter.

97.     The separation of the class members from their children also violates procedural due process because it was undertaken without any hearing.

## COUNT II
### (Administrative Procedure Act: Arbitrary and Capricious Practice)

98.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

99.     The APA prohibits agency action that is arbitrary and capricious or violates a person's legal or constitutional rights.

100.    Defendants' separation practice is final agency action for which there is no other adequate remedy in a court. Defendants' decision to separate parents is not tentative or interlocutory, because Defendants have *already* separated thousands of families and continue to do so, and the policy was announced by high-level officials. And Defendants' decision to separate gravely impacts class members' rights to remain together as families.

101.    Defendants' separation of Ms. L., Ms. C., and the other class members from their children without any explanation or legitimate justification is arbitrary and capricious and accordingly violates the APA. 5 U.S.C. § 706.

102.    Among other things, Defendants failed to offer adequate reasons for adopting their unprecedented new separation practice; they failed to explain why they were not using alternatives to separation, including supervised release and family detention; and for parents like Ms. L., Defendants have never explained why they cannot verify parentage *before* imposing traumatic separation on both parent and child.

18cv0428

# COUNT III
## (Violation of Right to Seek Protection Under the Asylum and Withholding of Removal Statutes, and the Convention Against Torture)

103.   All of the foregoing allegations are repeated and realleged as though fully set forth herein.

104.   Under United States law, noncitizens with a well-founded fear of persecution shall have the opportunity to apply for asylum in the United States. 8 U.S.C. § 1158(a). In addition, noncitizens have a mandatory statutory entitlement to withholding of removal where they would face a probability of persecution if removed to their country of nationality, 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal where they would face a probability of torture. Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub. L. No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C.§ 1231).

105.   Class members have a private right of action to challenge violations of their right to apply for asylum under § 1158(a). That right is not barred by 8 U.S.C. § 1158(d)(7), which applies to only certain procedural requirements set out in Section 1158(d).

106.   Defendants' separation of families violates federal law that provides for asylum and other protection from removal, as well as their due process right to seek such relief. Separation severely impedes their ability to pursue their asylum and other protection claims in a number of ways, including by denying them the ability to coordinate their applications with their children, present facts related to themselves and their children, and creating trauma that hinders their ability to navigate the complex process. This is in violation of due process and other federal law, including the Rehabilitation Act, 29 U.S.C. § 701 et seq. and Immigration and Nationality Act, 8 U.S.C. § 1101.

107.   The government is also using the trauma of separation to coerce parents into giving up their asylum and protection claims in order to be reunited

with their children.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.     Certify a class of all adult parents nationwide who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

B.     Name Ms. L., and Ms. C., Dora, and Alma as representatives of the class, and appoint Plaintiffs' counsel as class counsel;

C.     Declare the separation of Ms. L., Ms. C., Dora, and Alma, and the other class members from their children unlawful;

D.     Preliminarily and permanently enjoin Defendants from continuing to separate the class members from their children;

E.     Order Defendants either to release class members along with their children, or to detain them together in the same facility;

F.     Enjoin Defendants from removing any class members from the country who have received final removal orders until they are reunited with their children, unless the class members knowingly and voluntarily decide that they do not want their children removed with them;

G.     Enjoin Defendants from removing any class member who received a final removal order prior to the issuance of this Court's preliminary injunction on June 26, 2018, or prior to receiving notice of their rights under the injunction, until they have had an opportunity to consult with class counsel, or a delegate of class counsel, to insure that these class members have knowingly and voluntarily chosen

1    to forego any further challenges to removal, rather than feeling coerced into doing

2    so as a result of separation from their children.

3           H.     Order Defendants to provide Ms. L, Ms. C., Dora, Alma, and the other

4    class members with a reasonable opportunity to pursue claims for asylum.

5           H.     Require Defendants to pay reasonable attorneys' fees and costs;

6           I.     Order all other relief that is just and proper.

7

8    Dated: October 5, 2018                     Respectfully Submitted,

9
     Bardis Vakili ISBN 247783)                 */s/ Lee Gelernt*
10   ACLU FOUNDATION OF SAN                     Lee Gelernt*
     DIEGO & IMPERIAL COUNTIES                  Judy Rabinovitz*
11   P.O. Box 87131                             Anand Balakrishnan*
12   San Diego, CA 92138-7131                   Daniel Galindo (SBN 292854)
     T: (619) 398-4485                          AMERICAN CIVIL LIBERTIES
13   F: (619) 232-0036                          UNION FOUNDATION
                                                IMMIGRANTS' RIGHTS PROJECT
14   *bvakili@aclusandiego.org*                 125 Broad St., 18th Floor
15   Stephen B. Kang (SBN 292280)               New York, NY 10004
     Spencer E. Amdur (SBN 320069)              T: (212) 549-2616
16   AMERICAN CIVIL LIBERTIES                   F: (212) 549-2654
                                                *lgelernt@aclu.org*
17   UNION FOUNDATION                           *jrabinovitz@aclu.org*
     IMMIGRANTS' RIGHTS PROJECT                 *abalakrishnan@aclu.org*
18   39 Drumm Street                            *dgalindo@aclu.org*
19   San Francisco, CA 94111
     T: (415) 343-1198
20   F: (415) 395-0950
21   *skang@aclu.org*
     *samdur@aclu.org*
22
23   *Counsel for Plaintiffs Ms. L. and Ms. C.*

24

25

26

27

28

                                        18                              18cv0428

| | | |
|---|---|---|
| Aaron M. Olsen (SBN 259923) HAEGGQUIST & ECK LLP 225 Broadway, Ste 2050 San Diego, CA 92101 T: 619.342.8000 F: 619.342.7878 *aarono@haelaw.com* | Wilson G. Barmeyer* EVERSHEDS SUTHERLAND (US) LLP 700 Sixth Street NW Suite 700 Washington, DC 20001 T: (202) 383-0100 F: (202)637-3593 *wilsonbarmeyer@eversheds-sutherland.com* | Sirine Shebaya[*] Johnathan Smith[*] MUSLIM ADVOCATES P.O. Box 34440 Washington, D.C. 20043 T: (202) 897-2622 F: (202) 508-1007 *sirine@muslimadvocates.org* *johnathan@muslimadvocates.org* |
| | John H. Fleming[*] EVERSHEDS SUTHERLAND (US) LLP 999 Peachtree Street NE, Suite 2300 Atlanta, GA 30309 T: (404) 853-8000 F: (404) 853-8806 *johnfleming@eversheds-sutherland.com* | Simon Y. Sandoval-Moshenberg[*] Sophia Gregg[*] LEGAL AID JUSTICE CENTER 6066 Leesburg Pike, Suite 520 Falls Church, VA 22041 T: (703) 778-3450 F: (703) 778-3454 *simon@justice4all.org* *sophia@justice4all.org* |

*Counsel for Plaintiffs Dora and Alma and for Count 3 Only*
[*]*Motion for Admission Pro Hac Vice Forthcoming*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on October 5, 2018, I electronically filed the foregoing

3

4

with the Clerk for the United States District Court for the Southern District of

5

California by using the appellate CM/ECF system.  A true and correct copy of this

6

brief has been served via the Court's CM/ECF system on all counsel of record.

7

/s/ Lee Gelernt

8

Lee Gelernt, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18cv0428

# Ex. B

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Anand Balakrishnan*Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

*Attorneys* ~~for~~ ~~Petitioner-Plaintiff~~*for Petitioners-Plaintiffs Ms. L. and Ms. C.*
*Admitted Pro Hac Vice*
*Additional counsel on next page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**UNITED STATES DISTRICT COURT**

| | |
|---|---|
| Ms. L. and Ms. C.,<br><br>*Petitioners-Plaintiffs,*<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Greg Archambeault, San Diego Field Office | Case No. 18-cv00428-DMS-MDD<br><br>~~Dated Filed: July 3, 2018~~<br><br>~~SECOND~~THIRD **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION** |

Director, ICE; Joseph Greene, San Diego Assistant Field Office Director, ICE; Adrian P. Macias, El Paso Field Director, ICE; Frances M. Jackson, El Paso Assistant Field Office Director, ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; Kevin K. McAleenan, Acting Commissioner of CBP; Pete Flores, San Diego Field Director, CBP; Hector A. Mancha Jr El Paso Field Director, CBP, Alex Azar, Secretary of the Department of Health and Human Services; Scott Lloyd, Director of the Office of Refugee Resettlement,

*Respondents-Defendants*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Counsel for Plaintiffs Ms. L. and Ms. C.*

Aaron M. Olsen
(259923)
HAEGGQUIST & ECK
LLP
225 Broadway,
Ste 2050
San Diego, CA 92101
phone: 619.342.8000
fax: 619.342.7878
aarono@haelaw.com

Wilson G. Barmeyer[+]
EVERSHEDS
SUTHERLAND (US) LLP
700 Sixth Street NW
Suite 700
Washington, DC 20001
(202) 383-0100
(202)637-3593 (facsimile)
wilsonbarmeyer@eversheds-sutherland.com

John H. Fleming[+]
EVERSHEDS
SUTHERLAND (US) LLP
999 Peachtree Street NE,
Suite 2300
Atlanta, GA 30309
(404) 853-8000
(404) 853-8806 (facsimile)
johnfleming@eversheds-sutherland.com

Sirine Shebaya[+]
Johnathan Smith[+]
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
(202) 897-2622
(202) 508-1007 (facsimile)
sirine@muslimadvocates.org
johnathan@muslimadvocates.org

Simon Y. Sandoval-
Moshenberg[+]
Sophia Gregg[+]
LEGAL AID JUSTICE
CENTER
6066 Leesburg Pike, Suite
520
Falls Church, VA 22041
(703) 778-3450
(703) 778-3454 (facsimile)
simon@justice4all.org
sophia@justice4all.org

*Counsel for Plaintiffs Dora and Alma and for Count 3 Only*
*[+]Motion for Admission Pro Hac Vice Forthcoming*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This case challenges the United States government's forcible separation of parents from their young children for no legitimate reason and notwithstanding the threat of irreparable damage that separation has been universally recognized to cause young children.

2.      Plaintiff Ms. L. is the mother of a seven (7) year-old daughter, who was ripped away from her, and then sent halfway across the country to be detained alone. Plaintiff Ms. C. is the mother of a fourteen (14) year-old son, who was also forcibly separated from his mother and detained more than a thousand miles away. Dora is the mother of a thirteen (13) year-old daughter who was forcibly separated from her.  Alma is the mother of seven-year old and nine-year old sons who were forcibly separated from her.

3.      Ms. L. and, Ms. C., Dora, and Alma bring this action on behalf of themselves and thousands of other parents whom the government has forcibly separated from their children. Like Ms. L. and, Ms. C., Dora, and Alma, many of these individuals have fled persecution and are seeking asylum in the United States. Without any allegations of abuse, neglect, or parental unfitness, and with no hearings of any kind, the government is separating these families and detaining their young children, alone and frightened, in facilities often thousands of miles from their parents.

4.      Forced separation from parents causes severe trauma to young children, especially those who are already traumatized and are fleeing persecution in their home countries. The resulting cognitive and emotional damage can be permanent.

5.    Forced separation can also cause parents to experience symptom of acute stress response and corresponding cognitive impairments, which can in turn impair the ability to meaningfully participate in a credible fear interview.

5̶6.    Defendants have ample ways to keep Plaintiffs together with their children, as they have done for decades prior to their current practice. There are shelters that house families (including asylum-seekers) while they await the final adjudication of their immigration cases. If, however, the government lawfully continues detaining these parents and young children, it must at a minimum detain them together in one of its immigration family detention centers.

6̶7.    The Due Process Clause of the Fifth Amendment does not permit the government to forcibly take young children from their parents, without justification or even a hearing. That separation also violates the asylum statutes, which guarantee a meaningful right to apply for asylum, and the Administrative Procedure Act (APA), which prohibits unlawful and arbitrary government action.

## JURISDICTION

7̶8.    This case arises under the Fifth Amendment to the United States Constitution, federal asylum statutes, and the APA. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Plaintiffs are in custody for purposes of habeas jurisdiction.

## VENUE

8̶9.    Venue is proper under 28 U.S.C. § 1391(e) because Ms. L. was detained in this District when this action commenced, Defendants reside in this District, and a substantial portion of the relevant facts occurred within this District, including the Defendants' implementation of their practice of separating immigrant parents from their children for no legitimate reason.

**PARTIES**

~~9~~10.   Plaintiff Ms. L. is a citizen of the Democratic Republic of the Congo (the "Congo" or "DRC"). She is the mother of 7 year-old S.S.

~~10~~11. Plaintiff Ms. C. is a citizen of Brazil. She is the mother of 14 year-old J.

12.   Dora is a citizen of Honduras.  She is the mother of a 13 year-old daughter.

13.   Alma is a citizen of Honduras.  She is the mother of 7 and 9 year-old sons.

~~11~~14. Defendants U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

~~12~~15. Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

~~13~~16. Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border.

~~14~~17. Defendant U.S. Department of Health and Human Services (HHS) is a department of the executive branch of the U.S. government which has been delegated authority over "unaccompanied" noncitizen children.

~~15~~18. Defendant Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied" noncitizen children.

~~16~~19. Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of Plaintiffs.

3

17~~20~~. Defendant Greg Archambeault is sued in his official capacity as the ICE San Diego Field Office Director, and is a legal custodian of Plaintiff Ms. L.

18~~21~~. Defendant Joseph Greene is sued in his official capacity as the ICE San Diego Assistant Field Office Director for the Otay Mesa Detention Center, and is a legal custodian of Plaintiff Ms. L.

19~~22~~. Defendant Adrian P. Macias is sued in his official capacity as the ICE El Paso Field Office Director, and is a legal custodian of Plaintiff Ms. C.

20~~23~~. Defendant Frances M. Jackson is sued in his official capacity as the ICE El Paso Assistant Field Office Director for the West Texas Detention Facility, and is a legal custodian of Plaintiff Ms. C.

21~~24~~. Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

22~~25~~. Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States. In this capacity, he has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversees the Executive Office of Immigration Review, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

23~~26~~. Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

24~~27~~. Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

4

~~25~~28. Defendant Pete Flores is sued in his official capacity as the San Diego Field Director of CBP.

~~26~~29. Defendant Hector A. Mancha Jr. is sued in his official capacity as the El Paso Field Director of CBP.

~~27~~30. Defendant Alex Azar is sued in his official capacity as the Secretary of the Department of Health and Human Services.

~~28~~31. Defendant Scott Lloyd is sued in his official capacity as the Director of the Office of Refugee Resettlement.

## FACTS

~~29~~32. Over the past year, the government has separated thousands of migrant families for no legitimate purpose. The government's true purpose in separating these families was to deter future families from seeking refuge in the United States.

~~30~~33. Many of these migrant families fled persecution and are seeking asylum. Although there are no allegations that the parents are unfit or abusing their children in any way, the government has forcibly separated them from their young children and detained the children, often far away, in facilities for "unaccompanied" minors.

~~31~~34. There is overwhelming medical evidence that the separation of a young child from his or her parent will have a devastating negative impact on the child's well-being, especially where there are other traumatic factors at work, and that this damage can be permanent.

~~32~~35. The American Association of Pediatrics has denounced the Administration's practice of separating migrant children from their parents, noting that: "The psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family."

3336. Prior Administrations detained migrant families, but did not have a practice of forcibly separating fit parents from their young children.

3437. There are non-governmental shelters that specialize in housing and caring for families—including asylum seeking families—while their immigration applications are adjudicated.

3538. There are also government-operated family detention centers where parents can be housed together with their children, should the government lawfully decide not to release them. The government previously detained, and continues to detain, numerous family units at those facilities.

3639. In April 2018, the New York Times reported that more than "700 children have been taken from adults claiming to be their parents since October [of 2016], including more than 100 children under the age of 4." Caitlin Dickerson, *Hundreds of Children Have Been Taken from Parents at U.S. Border,* N.Y. Times, Apr. 20, 2018.

3740. On May 7, 2018, Defendant Sessions announced "a new initiative" to refer "100 percent" of immigrants who cross the Southwest border for criminal immigration prosecutions, also known as the "zero-tolerance policy." Defendant Sessions stated that as part of that prosecution, all parents who are prosecuted would be separated from their children. U.S. Dep't of Justice, Attorney General Sessions Delivers Remarks to the Association of State Criminal Investigative Agencies 2018 Spring Conference (May 7, 2018). The purpose of this new policy was to separate families in the hope that it would deter other families from seeking refuge in the United States.

3841. At a Senate Judiciary Committee hearing in May, a deputy chief of Defendant U.S. Customs and Border Protection testified that between May 6 and May 19 alone, a total of 658 children were separated from their family members

pursuant to this policy. The Washington Post reported that in the city of McAllen, Texas, 415 children were taken from their parents during a two week period.[1] And in June 2018, the Department of Homeland Security reported that in the six weeks between April 19 and May 31, the administration took almost 2,000 children away from their parents.[2]

3942. Defendant Sessions and other government officials, including Defendant Nielsen, have repeatedly defended the separation of children from their parents in speeches and interviews with various media outlets. Among other justifications for the practice, they have stated that separating families would be a way to "discourage parents from bringing their children here illegally,"[3] and that it would help "deter more movement" to the United States by asylum seekers and other migrants.[4] Administration officials told the New York Times in May, "[t]he president and his aides in the White House had been pushing a family separation policy for weeks as a way of deterring families from trying to cross the border illegally."[5]

4043. Even if the separated child is released from custody and placed in a community setting or foster care, the trauma of the ongoing separation continues.

4144. By taking away their children, Defendants are coercing class members into giving up their claims for asylum and other legal protection. Numerous class

---

[1]   https://www.washingtonpost.com/world/national-security/trumps-zero-tolerance- at-the-border-is-causing-child-shelters-to-fill-up-fast/2018/05/29/7aab0ae4-636b-11e8-a69c-b944de66d9e7_story.html?utm_term=.d52d94c37d05.

[2]   https://ca.reuters.com/article/topNews/idCAKBN1JB2SF-OCATP.

[3]   http://transcripts.cnn.com/TRANSCRIPTS/1801/16/cnr.04.html.

[4]   https://www.cnn.com/2017/03/06/politics/john-kelly-separating-children-from- parents-immigration-border/

[5]   https://www.nytimes.com/2018/05/10/us/politics/trump-homeland-security- secretary-resign.html

members have been told by CBP and ICE agents that they will see their children again sooner if they withdraw their asylum applications and accept earlier deportation.[6]

~~42~~45. Many class members have given up their asylum claims and stipulated to removal as a way to be reunited with their children faster.

~~43~~46. For class members who have not been coerced into giving up their asylum claims, separation from their children has made those applications much more difficult. Separation prevents parents from helping their children apply for asylum and navigate removal proceedings. Separation also makes it harder for parents to present facts involving their children which support their own asylum claims.

~~44~~47. The trauma of separation also renders asylum-seeking class members too distraught to effectively pursue their asylum applications. *See, e.g.,* Angelina Chapin, *Separated Parents Are Failing Asylum Screenings Because ~~They're~~They're So Heartbroken,* Huffington Post (June 30, 2018).[7]

~~45~~48. Defendants have deported class members without their separated children. Their children are now stranded in the United States alone. Many of these parents are now struggling to make contact with their children, who are being detained thousands of miles away across multiple international borders. *See* Miriam

---

[6]   This practice has been widely reported. *See, e.g.,* Dara Lind, *Trump Will Reunite Separated Families—But Only if They Agree to Deportation,* Vox.com (June 25, 2018), https://www.vox.com/2018/6725/17484042/children-parents-separate- reunite-plan-trump; Jay Root & Shannon Najmabadi, *Kids in Exchange for Deportation: Detained Migrants Say They Were Told They Could Get Kids Back on Way Out of U.S.,* Texas Tribune (June 24, 2018), https://www.texastribune.org/2018/06/24/kids-exchange-deportation-migrants-claim-they-were-promised-they-could/?utm_campaign=trib-social&utm_medium=social&utm_source=twitter&utm_content=1529859032.

[7]   https://www.huffingtonpost.com/entry/separated-parents-too-grief-stricken-to-seek-asylum-experts-say_us_5b379974e4b08c3a8f6ad5d9.

Jordan, *"I Can′t Go Without My Son, "a Mother Pleaded as She Was Deported to Guatemala*, N.Y. Times (June 17, 2018).[8]

~~46~~49. On June 20, 2018, President Trump signed an Executive Order ("EO") purporting to end certain family separations going forward.[9] The EO directs DHS to "maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings."

~~47~~50. The EO directs DHS to separate families any time DHS determines that separation would protect "the child's welfare." It does not, however, set forth how that standard will be applied. In prior cases the government has applied that standard in a manner that is inconsistent with the child's best interest, including in Ms. L's case.

~~48~~51. The EO makes no provision for reunifying the thousands of families who were separated prior to its issuance.

~~49~~52. The EO makes no provision for returning separated children to parents who have been already been deported without their children.

## NAMED PLAINTIFFS

~~50~~53. Ms. L. and her daughter S.S. are one of the many families that have recently been separated by the government.

~~51~~54. Ms. L. and her daughter are seeking asylum in the United States.

---

[8]   https://www.nytimes.com/2018/06/17/us/immigration-deported-parents.html. *See also* Nelson Renteria, *El Salvador Demands U.S. Return Child Taken from Deported Father,* Reuters (June 21, 2018), https://www.reuters.com/article/us-usa- immigration-el-salvador/el-salvador-demands-us-return-child-taken-from-deported- father-idU SKBN1JH3ER.

[9]   https://www.whitehouse.gov/presidential-actions/affording-congress-opportunity- address-family-separation/.

52 55. Ms. L. is Catholic and sought shelter in a church until she was able to escape the Congo with S.S.

53 56. Upon reaching the United States, Ms. L. and S.S. presented themselves at the San Ysidro, California Port of Entry on November 1, 2017. Although their native language is Lingala, they were able to communicate to the border guards that they sought asylum.

54 57. Based on her expression of a fear of returning to the Congo, Ms. L. was referred for an initial screening before an asylum officer, called a "credible fear interview." She subsequently passed the credible fear screening but, until March 6, 2018, remained detained in the Otay Mesa Detention Center in the San Diego area.

55 58. On or about November 5, immigration officials forcibly separated then-6 year-old S.S. from her mother and sent S.S. to Chicago. There she was housed in a detention facility for "unaccompanied" minors run by the Office of Refugee Resettlement (ORR).

56 59. When S.S. was taken away from her mother, she was screaming and crying, pleading with guards not to take her away from her mother. While detained, Ms. L. spoke to her daughter approximately 6 times by phone, never by video. For months she was terrified that she would never see her daughter again. The few times Ms. L. was able to speak to her daughter on the phone, her daughter was crying and scared.

57 60. In December, S.S. turned 7 and spent her birthday in the Chicago facility, without her mother.

58 61. In detention, Ms. L. was distraught and depressed because of her separation from her daughter. As a result, she did not eat properly, lost weight, and was not sleeping due to worry and nightmares.

10

59 62.   In one moment of extreme despair and confusion, Ms. L. told an immigration judge that she wanted to withdraw her application for asylum, realizing her mistake only a few days later. She is seeking to reopen her case before the Board of Immigration Appeals.

60 63. The government had no legitimate interest in separating Ms. L. and her child.

61 64. There has been no evidence, or even accusation, that S.S. was abused or neglected by Ms. L.

62 65. There is no evidence that Ms. L. is an unfit parent or that she is not acting in the best interests of her child.

63 66. After Ms. L. filed this lawsuit and moved for a preliminary injunction, Defendants abruptly released her from custody on March 6, 2018, due to the filing of the lawsuit. Defendants informed her that she would be released mere hours in advance, with no arrangements for where she would stay. S.S. was released to Ms. L.'s custody several days later. Both are now pursuing their claims for legal protection.

64 67. Ms. C. and her 14 year-old son, J., are another one of the families who have been separated by the government. Like Ms. L. and her daughter, Ms. C. and her son are seeking asylum in the United States.

65 68. Ms. C. and J. fled Brazil and came to the United States to seek asylum. A few feet after Ms. C. entered the United States, a border guard approached her, and she explained that she was seeking asylum. Ms. C. subsequently passed a credible fear interview, and was put in removal proceedings, where she is applying for asylum.

6669. Despite having communicated her fear of persecution to border guards, the government prosecuted Ms. C. for entering the country illegally, took her son J. away from her, and sent him to a facility for "unaccompanied" children in Chicago.

6770. The government continued to separate Ms. C. from her son even after she completed serving her criminal misdemeanor sentence on September 22, 2017, and was sent to an immigration detention facility, the El Paso Processing Center. In early January 2018, she was transferred again, to another immigration facility, the West Texas Detention Facility (also known as Sierra Blanca), but still was not reunited with her son. Even after Ms. C was released from immigration detention on April 5, 2018, the government did not reunify her with her son for another two months, until June 9.

6871. While separated from J., Ms. C. was desperate to be reunited with him. She worried about him constantly and did not know when she would be able to see him. They spoke on the phone only a handful of times while they were separated by Defendants.

6972. J. had a difficult time emotionally during the months he was separated from his mother.

7073. The government had no legitimate interest for the separation of Ms. C. and her child.

7174. There is no evidence, or even accusation, that J. was abused or neglected by Ms. C.

7275. There is no evidence that Ms. C. is an unfit parent or that she is not acting in the best interests of her child.

76. Dora fled Honduras with her thirteen-year-old daughter due to persecution on account of her political opinion. She was separated from her daughter when she arrived in the United States in May 2018. It was the first time in

12

their lives that they had been separated. Dora was unable to obtain information about her daughter's whereabouts.

77.     Dora was terrified for her daughter after being separated from her. She became so distraught that she had to be given medication—antidepressants and sleeping pills—to treat the depression she suffered as a result of having been separated from her daughter. The medication did not work and actually made her feel worse. Dora suffered side effects from the medications.

78.     Dora received a negative determination in a credible fear interview conducted during the separation.  She has been reunited with her children and is currently detained at the South Texas Family Residential Center in Dilley, Texas.

79.     Alma fled Honduras with her two boys, aged seven and nine, because of violence and persecution she and her family members endured. She arrived in the United States in June 2018 and was separated from her children. She received no information about them for twenty-eight days.

80.     At the time of her credible fear interview, Alma was separated from her children and unable to focus on anything other than that separation. She was later diagnosed with post-traumatic stress disorder ("PTSD") because of this separation, with strong indications that she was suffering from acute, debilitating trauma at the time of her interview, including alterations in mood and cognition, hyperarousal, and dissociation.

81.     Alma received a negative credible fear determination, which was affirmed by an immigration judge.

82.     Alma was reunited with her children, and was released on an order of supervision. She is required to check in regularly with ICE and is subject to deportation at any time.

**CLASS ALLEGATIONS**

~~73~~83. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

~~74~~84. Plaintiffs seek to represent the following class:

All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

~~75~~85. Ms. L. ~~and~~, Ms. C., Dora, and Alma are each adequate representatives of the proposed class.

~~76~~86. The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. There are at a minimum hundreds of parents who fit within the class.

~~77~~87. The class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The members of the class are subject to a common practice: forcibly separating detained parents from their minor children absent any determination that the parent is unfit or presents a danger to the child. By definition, all class members have experienced that practice, and none has been given an adequate hearing regarding the separation. The lawsuit raises numerous questions of law common to members of the proposed class, including: whether Defendants' family separation practice violates class members' substantive due process right to family integrity; whether the practice violates class members' procedural due process rights; whether the practice violates the federal asylum statute; and whether these separations are unlawful or arbitrary and capricious under the APA.

7888. The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Ms. L., Ms. C., Dora, and Alma, and the proposed class members are all individuals who have had or will have their children forcibly taken away from them despite there being no proven allegations of abuse, neglect, or any other danger or unfitness. Plaintiffs and the proposed class also share the same legal claims, which assert the same substantive and procedural rights under the Due Process Clause, the asylum statute, and the APA.

7989. The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that they be reunified with their children, whether through release or in family detention facilities. In defending their own rights, Ms. L. and, Ms. C., Dora, and Alma will defend the rights of all proposed class members fairly and adequately.

8090. The proposed class is represented by counsel from the American Civil Liberties Union Immigrants' Rights Project and the ACLU of San Diego and Imperial Counties. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

8191. The members of the class are readily ascertainable through Defendants' records.

8292. The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unlawfully separating parents from their young children. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

## CAUSES OF ACTION

## COUNT I

### (Violation of Due Process: Right to Family Integrity)

~~83~~93. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

~~84~~94. The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Ms. L., Ms. C., their children S.S. and J., and all proposed class members.

~~85~~95. Plaintiffs, their children, and all class members have liberty interests under the Due Process Clause in remaining together as families.

~~86~~96. The separation of the class members from their children violates substantive due process because it furthers no legitimate purpose and was designed to deter.

~~87~~97. The separation of the class members from their children also violates procedural due process because it was undertaken without any hearing.

## COUNT II

### (Administrative Procedure Act: Arbitrary and Capricious Practice)

~~88~~98. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

~~89~~99. The APA prohibits agency action that is arbitrary and capricious or violates a person's legal or constitutional rights.

~~90~~100.      Defendants' separation practice is final agency action for which there is no other adequate remedy in a court. Defendants' decision to separate parents is not tentative or interlocutory, because Defendants have *already* separated thousands of families and continue to do so, and the policy was announced by high-level officials. And Defendants' decision to separate gravely impacts class members' rights to remain together as families.

91101.	Defendants' separation of Ms. L., Ms. C., and the other class members from their children without any explanation or legitimate justification is arbitrary and capricious and accordingly violates the APA. 5 U.S.C. § 706.

92102.	Among other things, Defendants failed to offer adequate reasons for adopting their unprecedented new separation practice; they failed to explain why they were not using alternatives to separation, including supervised release and family detention; and for parents like Ms. L., Defendants have never explained why they cannot verify parentage *before* imposing traumatic separation on both parent and child.

## COUNT III

**(Violation of Right to Seek Protection Under the Asylum and Withholding of Removal Statutes, and the Convention Against Torture)**

93103.	All of the foregoing allegations are repeated and realleged as though fully set forth herein.

94104.	Under United States law, noncitizens with a well-founded fear of persecution shall have the opportunity to apply for asylum in the United States. 8 U.S.C. § 1158(a). In addition, noncitizens have a mandatory statutory entitlement to withholding of removal where they would face a probability of persecution if removed to their country of nationality, 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal where they would face a probability of torture. Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub. L. No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C.§ 1231).

95105.	Class members have a private right of action to challenge violations of their right to apply for asylum under § 1158(a). That right is not

barred by 8 U.S.C. § 1158(d)(7), which applies to only certain procedural requirements set out in Section 1158(d).

96106.    Defendants' separation of families violates federal law that provides for asylum and other protection from removal, as well as their due process right to seek such relief. Separation severely impedes their ability to pursue their asylum and other protection claims in a number of ways, including by denying them the ability to coordinate their applications with their children, present facts related to themselves and their children, and creating trauma that hinders their ability to navigate the complex process. This is in violation of due process and other federal law, including the Rehabilitation Act, 29 U.S.C. § 701 et seq. and Immigration and Nationality Act, 8 U.S.C. § 1101.

97107.    The government is also using the trauma of separation to coerce parents into giving up their asylum and protection claims in order to be reunited with their children.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.    Certify a class of all adult parents nationwide who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

B.    Name Ms. L., and Ms. C., Dora, and Alma as representatives of the class, and appoint Plaintiffs' counsel as class counsel;

18

C.     Declare the separation of Ms. L., Ms. C., Dora, and Alma, and the other class members from their children unlawful;

D.     Preliminarily and permanently enjoin Defendants from continuing to separate the class members from their children;

E.     Order Defendants either to release class members along with their children, or to detain them together in the same facility;

F.     Enjoin Defendants from removing any class members from the country who have received final removal orders until they are reunited with their children, unless the class members knowingly and voluntarily decide that they do not want their children removed with them;

G.     Enjoin Defendants from removing any class member who received a final removal order prior to the issuance of this Court's preliminary injunction on June 26, 2018, or prior to receiving notice of their rights under the injunction, until they have had an opportunity to consult with class counsel, or a delegate of class counsel, to insure that these class members have knowingly and voluntarily chosen to forego any further challenges to removal, rather than feeling coerced into doing so as a result of separation from their children.

H.     Order Defendants to provide Ms. L, Ms. C., Dora, Alma, and the other class members with a reasonable opportunity to pursue claims for asylum.

H.     Require Defendants to pay reasonable attorneys' fees and costs;

I.     Order all other relief that is just and proper.

Dated: July 3September _____, 2018          Respectfully Submitted,

/s/Lee Gelernt                                        /s/Lee Gelernt
Bardis Vakili ISBN 247783)                  Lee Gelernt*
ACLU FOUNDATION OF SAN                Judy Rabinovitz*
DIEGO  &  IMPERIAL  COUNTIES         Anand Balakrishnan*
Anand Balakrishnan*                            Daniel Galindo (SBN 292854)
P.O. Box 87131                                     AMERICAN CIVIL LIBERTIES

San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Counsel for Plaintiffs Ms. L. and Ms. C.*

UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2616
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Aaron M. Olsen
(259923)
HAEGGQUIST &
ECK LLP
225 Broadway
Ste 2050
San Diego, CA 92101
phone: 619.342.8000
fax: 619.342.7878
*aarono@haelaw.com*

Wilson G. Barmeyer+
EVERSHEDS
SUTHERLAND (US) LLP
700 Sixth Street NW
Suite 700
Washington, DC 20001
(202) 383-0100
(202) 637-3593 (facsimile)
*wilsonbarmeyer@eversheds-sutherland.com*

John H. Fleming+
EVERSHEDS
SUTHERLAND (US) LLP
999 Peachtree Street NE,
Suite 2300
Atlanta, GA 30309
(404) 853-8000
(404) 853-8806 (facsimile)
*johnfleming@eversheds-sutherland.com*

Sirine Shebaya+
Johnathan Smith+
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
(202) 897-2622
(202) 508-1007 (facsimile)
*sirine@muslimadvocates.org*
*johnathan@muslimadvocates.org*

Simon Y. Sandoval-Moshenberg+
Sophia Gregg+
LEGAL AID JUSTICE
CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 778-3450
(703) 778-3454 (facsimile)

*simon@justice4all.org*
*sophia@justice4all.org*

*Counsel for Plaintiffs Dora and Alma for Count 3 Only.*

*+Motion for Admission Pro Hac Vice Forthcoming*

| Summary report: Litéra® Change-Pro TDC 10.1.0.200 Document comparison done on 9/27/2018 12:17:08 PM | |
|---|---|
| **Style name:** WGB | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Ms. L - SECOND Amended Complaint.docx | |
| **Modified filename:** Ms. L - THIRD Amended Complaint.DOCX | |
| **Changes:** | |
| Add | 144 |
| Delete | 110 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 2 |
| Table Delete | 5 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 261 |

# Ex. C
# Confidential
# File Under Seal

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| Ms. L, et al., | CASE NO. 3:18-cv-428-DMS |
| Plaintiff, | |
| v. | **EXHIBIT C** |
| U.S. Immigration and Customs Enforcement, et al., | **CONFIDENTIAL** |
| Defendant. | **TO BE FILED UNDER SEAL** |

**EXHIBIT C**

| | Plaintiff's First / Last Name | Pseudonym |
|---|---|---|
| 1 | ██████████████ | Alma |
| 2 | ██████████████ | Dora |