Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org

*Attorneys for Petitioner-Plaintiff*
*Admitted Pro Hac Vice*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
skang@aclu.org
samdur@aclu.org

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Jefferson Beauregard Sessions, III, Attorney General of the United States, et al., <br><br> Defendants. | Case No. 3:18-cv-1832-DMS <br><br> Honorable Dana M. Sabraw |
| Ms. L, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement, et al., <br><br> Defendants. | Case No. 3:18-cv-428-DMS <br><br> Honorable Dana M. Sabraw <br><br> **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; PRELIMINARY CERTIFICATION OF SETTLEMENT CLASSES; AND APPROVAL OF CLASS NOTICE** |

## I.   INTRODUCTION[1]

This proposed settlement agreement ("the Agreement"), attached hereto as Exhibit 68, arises out of litigation in several lawsuits involving the separation of alien parents and children at or near the U.S. border: *M.M.M. v. Sessions*, Case No. 3:18-cv-1832-DMS (S.D. Cal.), *M.M.M. v. Sessions*, Case No. 1:18-cv-1835-PLF (D.D.C.), *Ms. L. v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.), and *Dora v. Sessions*, Case No. 18-cv-1938 (D.D.C.).   Among other things, these lawsuits challenge the separation of families as a result of the government's Zero-Tolerance Policy and allege that Defendants failed to provide adequate opportunity to seek asylum or other protection from removal in the United States.   The Agreement contemplates certification of separate classes of parents and their children (defined more specifically below) (the "Settlement Classes").

If the Court approves the Agreement, Defendants will provide various procedures to enable members of the Settlement Classes to seek asylum or other protection from removal.   Parents or children who seek to waive their rights under this settlement agreement and be promptly removed to their country of origin, have the right to do so.   In such a case, the parent or child is not eligible for any additional relief under the Agreement.   In return, the *M.M.M.* class members and *Dora* Plaintiffs agree to dismiss their existing cases in the District of Columbia, the *M.M.M.* class members agree to refrain from seeking preliminary injunctive relief in their pending litigation in the Southern District of California, and all class members agree to refrain from additional litigation seeking immigration- or asylum-related injunctive, declaratory, or equitable relief that arises from the facts

---

[1] Defendants do not oppose the request for relief contained in this motion or the entry of the proposed order filed herewith. However, Defendants do not join in the motion itself and do not agree with all of the arguments and characterizations contained herein. To the extent any disputes arise over the agreement or implementation, the text of the agreement, and not any characterizations of the agreement contained in this motion, controls.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

and circumstances set forth in the *Ms. L*, *M.M.M.*, or *Dora* complaints relating to those parents and children covered by this plan, accruing as of the date the settlement is approved by the Court, including statutory claims.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs now request that the Court preliminarily approve the Agreement, preliminarily certify the proposed Settlement Classes, approve the form and plan of notice, and schedule a final fairness hearing, as set forth in the attached stipulated order ("Proposed Order"). The Agreement easily qualifies for preliminary approval, as set forth below. The proposed Settlement Classes qualify for certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The Agreement provides the Settlement Classes with the equitable relief sought, including access to procedures to pursue asylum or other protection from removal. And the proposed form and plan of notice provides the best notice that is practicable under the circumstances. The Court should therefore preliminarily approve the Agreement, preliminarily certify the proposed Settlement Classes, and approve the form and plan of notice.

## II.   BACKGROUND

### a.   *Ms. L* and *Dora* Cases

The *Ms. L.* plaintiffs are two parents who were separated from their minor children at or near the U.S. border and who sought injunctive relief on behalf of themselves and a class of similarly situated parents. On June 26, 2018, this Court certified a class of parents (the *Ms. L.* Class), defined as:

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

The class does not include "migrant parents with criminal history or communicable disease, or those who are in the interior of the United States or subject to the

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1   [executive order]." *Ms. L. v. ICE*, No. 18-428, ECF No. 82 at 17 n.10.  On June 26,

2   2018, the Court also entered a class-wide preliminary injunction that, in relevant

3   part, enjoined the government from detaining *Ms. L.* Class Members in DHS

4   custody without and apart from their minor children, absent a determination that the

5   parent is unfit or presents a danger to the child, unless the parent affirmatively,

6   knowingly, and voluntarily declines to be reunited with the child in DHS custody,

7   and further ordered the reunification of *Ms. L.* Class Members already separated.

8      In litigation filed in the District of Columbia, in *Dora v. Sessions*, Case No.

9   18-cv-1938 (D.D.C.), twenty-nine named plaintiffs alleged that their separation

10  from their children denied them of a meaningful opportunity to apply for the

11  protections of asylum. [2]   The *Dora* plaintiffs went through the credible fear

12  interview process while separated from their children and received negative

13  determinations.  As a result of the negative determination, the *Dora* plaintiffs were

14  subject to removal pursuant to expedited removal orders.  In the *Dora* litigation, the

15  plaintiffs alleged that the trauma caused by their family separation deprived them of

16  a reasonable opportunity to articulate a credible fear, in violation of the Due

17  Process Clause of the Fifth Amendment of the United States Constitution, the

18  Immigration and Nationality Act, the Rehabilitation Act, and the Administrative

19  Procedure Act. The *Dora* plaintiffs sought an injunction declaring the government's

20  policies to be unlawful and allowing them to receive new credible fear interviews

21  after reunification with their children.

22      **b. The *M.M.M.* Case**

23     The *M.M.M.* plaintiffs are six children who were separated from their

24  parents, who are *Ms. L.* class members, as a result of their parents' referral for

25

26  ─────────────
    [2]     Two named plaintiffs from the *Dora* case have been or soon will be added to
27  the *Ms. L* action by way of an amended complaint in the Southern District of
    California, for the purpose of serving as class representatives for the class of
28  parents for purposes of this settlement.

criminal prosecution under the government's Zero-Tolerance Policy. The *M.M.M.* plaintiffs (and the proposed Settlement Class of other separated children like them) allege that, as a result, they were not given any opportunity to apply for asylum where their parent was subject to a final order of removal and elected to be reunified with their child, even following reunification with their parents. In particular, the U.S. government took the position that a decision by parents on an "election form" to be reunified with their child for removal meant that the parent was waiving the child's right to independently pursue a claim for asylum.

The *M.M.M.* plaintiffs filed a class action complaint seeking injunctive relief on behalf of a putative class consisting of "all non-citizens under the age of 18 who were separated from their parents or guardians upon (or after) entry into the United States and who are, have been, or will be detained by the U.S. government at any time since January 1, 2018." The Complaint alleged four causes of action arising under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, 28 U.S.C. § 1361, the Administrative Procedure Act, and  8 U.S.C. § 1252(e)(3).

The *M.M.M.* complaint was originally filed in the U.S. District Court for the District of Columbia on July 27, 2018. Judge Friedman entered an order severing Counts I-III of the *M.M.M.* complaint and transferring those claims to this Court. Judge Friedman retained jurisdiction over Count IV because the D.C. District Court has exclusive jurisdiction over claims arising under 8 U.S.C. § 1252(e)(3). This Court subsequently entered a temporary restraining order, staying the removal of all putative class members and their parents pending a resolution of their preliminary injunction motion. In entering the order, the Court found that plaintiffs were likely to succeed on the merits because Section 235 of the INA, 8 U.S.C. § 1225, sets forth a "nondiscretionary duty" to provide a credible fear interview to any alien subject to expedited removal who indicates a fear of returning to their country of origin. The Court also rejected the government's argument that plaintiffs' rights to seek asylum or other protection from removal had been waived by their parents'

signing of the "election form."  The Court expressed its preliminary view that "Plaintiffs' asylum claims would be more appropriately addressed under § 235 since Plaintiffs are not truly 'unaccompanied' minors warranting removal proceedings under § 240," but reserved final ruling on that issue.  The Court directed the parties to "meet and confer and propose a solution—one that follows the law, and is equitable and reflective of ordered governance."  *Id.*  Per the Court's instructions, counsel for Defendants and the *Ms. L.*, *M.M.M.*, and *Dora* Plaintiffs met and conferred extensively over the ensuing four weeks.  After extensive negotiation, the parties reached final agreement on September 12, 2018 and attached their agreement to a joint status report filed the same day.

### c.  Material Terms of the Proposed Settlement

The first part of the proposed agreement contemplates certification of settlement classes of parents and children.  The parent Settlement Class is defined as follows:

> All adult alien parents who entered the United States at or between designated ports of entry with their child(ren), and who, on or before the effective date of this agreement: (1) were detained in immigration custody by the DHS; (2) have a child who was or is separated from them by DHS and, on or after June 26, 2018, was housed in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child; and (3) have been (and whose child(ren) have been) continuously physically present within the United States since June 26, 2018, whether in detention or released. The class does not include alien parents with criminal histories or a communicable disease, or those encountered in the interior of the United States.[3]

The class of children is defined as follows:

> All alien children who are under the age of 18 on the effective date of this agreement who: (1) entered the United States at or between designated ports of entry with an alien parent, and who were separated from their parents, on or before the effective date of this settlement agreement; (2) have been or will be reunified with that parent pursuant to the preliminary injunction issued by the Court in *Ms. L v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal.

---

[3]  In addition, references to "class" or "class member" in the Settlement Agreement include any parents who are not part of the *Ms. L.* class due to criminal history or communicable disease, but who the Court has ordered must be reunified.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

June 26, 2018); and (3) have been continuously physically present in the United States since June 26, 2018.

This section of the agreement provides significant benefits to the members of both proposed classes.  The procedural mechanisms vary depending on class members' circumstances, and do not affect the right of *Ms. L.* class members to seek reunification pursuant to the Court's preliminary injunction during these processes.  In particular, the agreement provides for the following relief:

- For parent class members who have final expedited removal orders, USCIS will exercise its discretionary authority to sua sponte conduct a good faith, de novo review of the parent's negative credible fear finding.  For the limited purpose of this Agreement, the review process will include an opportunity to meet with an asylum officer for additional fact-gathering, and the parent will have the opportunity to present additional information that was not provided during their original credible fear interview (CFI).[4]  Children will be treated as the parents' dependents under 8 C.F.R. § 208.30(b).

  - Based on that interview, USCIS may reconsider the parent's negative credible fear finding.  If USCIS does so, both the parent and the child will be issued NTAs and placed into removal proceedings under Section 240.

  - If USCIS does not reconsider the parent's negative credible fear finding, USCIS will provide the child with a CFI.  The parent will be permitted to assist the child in the interview and offer testimony on the child's behalf.  If the child establishes a credible fear, then both the child and the parent will be issued NTAs and placed into removal proceedings under Section 240, notwithstanding the parent's negative credible fear finding.

- For detained parents with reinstated removal orders, USCIS will exercise its discretionary authority to sua sponte conduct a good faith, de novo review of the parent's negative reasonable fear finding.  For the limited purpose of this Agreement, the review process will include an opportunity to meet with an asylum officer for additional fact-gathering, and the parent will have the opportunity to present additional information that was not provided during their original reasonable fear interview (RFI).  The child will be, as described above, placed into expedited removal and screened for credible fear.

  - If the parent establishes that he or she can meet the reasonable fear standard, the parent will be referred for withholding-only proceedings.

---

[4] For any review of a parent's credible fear or reasonable fear finding, and for any credible fear interview provided to a member of the child class, counsel for the parent or counsel for the child, respectively, will be able to participate in that interview in person unless ICE determines in good faith that in-person participation would adversely affect facility security or operations.  If in-person attendance is not possible, counsel will be able to participate telephonically.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

- Regardless of the parent's ability to establish a reasonable fear upon further review, the parent's child will be provided a credible fear interview. The parent will be permitted to assist the child in the interview and offer testimony on the child's behalf. If the child establishes a credible fear, then the child will be issued an NTA and placed into removal proceedings under Section 240. The parent will remain in withholding-only proceedings if the parent's reasonable fear finding is changed to positive.

- For children who are currently detained with their parents and whose parents have received a final order of removal after going through removal proceedings under Section 240, and the child is an arriving alien or was initially encountered within 14 days of entry and 100 miles of the border, the child will be placed into expedited removal and, if the child asserts, or has already asserted, an intention to apply for asylum or a fear of persecution or torture, either directly or through counsel, will be provided with the same credible fear process described above. If the child establishes a credible fear, the child will be issued an NTA and be placed into Section 240 proceedings, and the government will move to reopen the parent's Section 240 proceedings and consolidate them with the child's proceedings.

- For children who have been reunited with their parents and are detained, ICE will either exercise its discretion to cancel any issued NTA or will file a joint motion to dismiss any pending immigration proceedings, and will, upon a finding that the child is an arriving alien or was initially encountered within 14 days of entry and 100 miles of the border, initiate expedited removal proceedings against the child. If the child asserts, or has already asserted, an intention to apply for asylum or a fear of persecution or torture, the child will be referred to USCIS for a credible fear interview. For parents and children who have been released and were issued NTAs, such parents and children cannot be removed unless and until they receive final orders of removal after going through Section 240 removal proceedings.

- For parents and children who have been released, are not subject to a final order of removal, and are not in Section 240 proceedings, such parents and children can affirmatively apply for asylum, and USCIS will adjudicate the application regardless of whether an unfiled NTA exists.

- If a child has received a final removal order prior to reunification, the government will join a motion to reopen the Section 240 proceedings if requested within 45 days of court approval of the agreement. Counsel for the plaintiffs and the government will work together in good faith to identify any such children within 15 days of approval of the agreement.

- For children who have not been reunified, they will maintain their classification as "unaccompanied alien children" and will receive the various procedures to which they are entitled, unless and until they are reunified with their parent, at which point the procedures described in the proposed settlement will apply.

The second part of the agreement reflects the parties' agreement with regard to individuals who fit the parent class description as defined above, but have been

removed from the United States, as well as the rights of members of the children class whose parents have been removed.[5]   For those individuals, the parties' agreement is as follows:

- The Agreement states that the government does not intend or agree to return any removed parent to the United States.  For parents who were removed without their child, Plaintiffs' counsel may raise with the government individual "rare and unusual" cases in which Plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted. Plaintiffs' counsel will present any such cases, including all evidence they would like considered by the government within 30 days of court approval of the agreement.  Defendants will provide a reply to any case presented by Plaintiffs within 30 days of receiving Plaintiffs' request to consider the case.

- For the children of removed parents who choose to remain in the United States and seek asylum or other protection from removal, the government will not oppose requests that the removed parent provide testimony or evidence telephonically or in writing in the child's asylum or removal proceedings.  In addition, ICE attorneys appearing in immigration court (1) will not object to the admission of documentary evidence (such as photocopied, scanned, or faxed documents) provided by the removed parent on the grounds that such documentary evidence does not bear an original signature or is not an original copy (ICE reserves the right to object based on other grounds), and (2) will not object to telephonic participation by the parent in the child's Section 240 removal proceedings provided that the noncitizen (and his or her legal representative, if applicable) make appropriate motions to the immigration judge to permit telephonic testimony in advance of any merits hearing, that the alien is responsible for providing accurate contact information to permit the immigration judge to make contact with the parent, and that the parent's unavailability and faulty connections or other technological impediments may not serve as the basis for delaying scheduled hearings.

If the proposed settlement becomes final, class members will be prohibited from pursuing "any other immigration- or asylum-related injunctive, declaratory, or equitable relief based on the allegations or claims made in any of the *Ms. L*, *M.M.M.*, or *Dora* complaints filed in any court accruing as of the date this plan is approved by the Court, including statutory claims."  The proposed settlement does not release claims for money damages, nor does it release claims for injunctive, declaratory, or equitable relief that are not immigration- or asylum-related, or

---

[5] For purposes of this section of the Agreement, the class definitions are the same as described above, except that the requirements of continuous physical presence do not apply, since this section addresses removed parents.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

claims that are not based on the allegations made in the *Ms. L*, *M.M.M.*, or *Dora* complaints.

## III.   LEGAL STANDARD

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).   Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval.   "Court approval requires a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Nwabueze v. AT&T Inc.*, 2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013).   This case is at the first step.   Accordingly, Plaintiffs move for an order preliminarily approving the settlement.

As part of the preliminary approval process, the Court must "determine whether the class is proper for settlement purposes," and, if so, preliminarily certify the class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   To support certification, a court must find each of Fed. R. Civ. P. 23(a)'s requirements (*i.e.* numerosity, commonality, typicality, and adequacy of representation) satisfied. In addition, the party seeking certification must show that the proposed class satisfies "one of the subsections of Rule 23(b)" – here, 23(b)(2), which "permits certification where 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 175 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 23(b)(2)).   In conducting the certification analysis, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* (citations omitted).

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

In deciding on preliminary approval, the court determines whether the proposed settlement warrants consideration by members of the class and a later, full examination by the court at a final approval hearing.  Manual for Complex Litigation (Fourth) § 13.14 at 173.  This does not require the Court to perform a full-blown analysis of the settlement, but rather merely to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

## IV.   ANALYSIS

### a.  The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) provides four baseline requirements for certifying a class: numerosity, commonality, typicality, and adequacy.  All four requirements are satisfied here.

**Numerosity.**  Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required.  *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Kamakahi*, 305 F.R.D. at 183.  Moreover, where a plaintiff seeks injunctive and declaratory relief, the numerosity "requirement is relaxed and plaintiffs may rely on [] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed []class . . . is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (quoting *Sueoka v. United States*, 101 Fed. App'x 649, 653 (9th Cir. 2004)).

The numerosity requirement is easily satisfied for the Settlement Classes. The parent class includes hundreds of parents.  *Cf.* Dkt. No. 82 at 8 n. 7.  The child

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

class is necessarily at least as large because it includes the children of all parents who are in the parent classes. Both Settlement Classes therefore satisfy the numerosity requirement.

**Commonality.** The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff alleges the existence of a "common contention" that is "capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement has "'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Indeed, "commonality only requires a single significant question of law or fact[,]" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 564 U.S. at 359), and that is particularly so where a suit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

The proposed Settlement Classes present claims that raise common questions of fact and law. With respect to the parent classes, the claims raise the common question of whether separation of parents and children at the border deprived those individuals of a meaningful opportunity to pursue asylum claims, in violation of the Due Process Clause of the Fifth Amendment and other federal laws.[6] This claim is common to all parent class members, and this Court previously found that due process claims arising from the separation raise common questions sufficient to satisfy the commonality requirement. *See* Dkt. No 82 at 12:5-13:16 (quoting

---

[6] In *Dora v. Sessions*, 18-cv-1938 (D.D.C. 2018), these parents alleged that they were deprived of meaningful access to apply for asylum, in violation of due process, the Rehabilitation Act (29 U.S.C. § 701), the Administration Procedure Act, and the Immigration and Nationality Act.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

*Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("'[P]olicies and practices are the 'glue' that holds together the putative class . . .; either each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.'")).  As the Court acknowledged in its prior class certification Order in *Ms. L.*, the reasoning in *Parsons* is applicable to the current matter.  As a result, the due process claims are sufficiently common to satisfy Rule 23(a)(2)'s permissive standard regarding commonality.  *See Mazza v. Am. Honda Motor Co.*, Inc., 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 564 U.S. at 359).

Likewise, the central legal question presented by the claims of the child class is whether the Government's separation of parents and children – and removal of the parent and child together following reunification without providing the child with an independent opportunity to apply for asylum– violated the Due Process Clause of the Fifth Amendment and other federal laws.  Thus, the common legal questions include: (1) whether class members can be removed before receiving an opportunity to seek asylum or otherwise assert defenses to removal, (2) whether their parents can and did waive their rights to seek asylum, (3) what process, if any, is due prior to removal, and (4) whether class members have a right to be accompanied by their parent as they go through that process.  Commonality is therefore satisfied.  *Cf. Parsons*, 754 F.3d at 678 (finding commonality and noting "although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm.").

**Typicality.**  The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). The typicality requirement will occasionally merge with the commonality requirement. *See Parsons*, 754 F.3d at 687.

The typicality requirement is met for the parent class. This Court previously found the typicality element was satisfied for the parent classes because: (1) the named plaintiffs and absent class members were subject to the same practice – family separation; (2) the due process claims raised by the plaintiffs and the absent class members were the same; and (3) the plaintiffs and absent class members suffered the same or similar injury. *See* Dkt. No. 82 at 14:8-18. Just as with the issues raised by the named plaintiffs in *Ms. L.*, the proposed named plaintiffs[7] and Settlement Class members share a set of legal claims – that the parent class members were deprived of a meaningful opportunity to pursue asylum or other protection from removal. Similarly, the alleged injury – denial of the named plaintiffs' Settlement Class members' right to a meaningful opportunity to pursue asylum procedures or other protection from removal – is the same for all class members. Accordingly, the typicality requirement is met.

The typicality requirement is also met for the child class, because the claims of the *M.M.M.* plaintiffs are "reasonably co-extensive" with the claims of members of the Settlement Class. As noted above, all members of the proposed Settlement Class were separated from their parents and were subsequently subject to

---

[7] For purposes of this Motion, the named plaintiffs include individuals from the *Dora* action who have been or will be added to the *Ms. L* action by way of an amended complaint in the Southern District of California.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

reunification with their parents, leaving their ability to seek asylum in doubt to the extent their parents had received any removal order during the period of separation and selected the option of being reunified via an "election form."  All class members thus were at risk of the same or similar injury (i.e., being removed without an opportunity to seek asylum).  Because the action is not based on conduct unique to the named plaintiffs, and because all class members were subject to the same course of conduct, typicality is satisfied for the child class.

*Adequacy.*  The final requirement of Rule 23(a) is adequacy.  Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is satisfied "if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified and competent counsel." *Kamakahi*, 305 F.R.D. at 183.  Class counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985).

Regarding the parent settlement class, proposed class counsel are attorneys from a prominent law firm and with expertise in class actions, together with attorneys from non-profit organizations that specialize in civil rights and immigration law. *See* Ex. 69 (Decl. of Wilson Barmeyer); Ex. 70 (Decl. of Sirine Shebaya); Ex. 71 (Decl. of Simon Sandoval-Moshenberg).  Collectively, these attorneys have extensive background in litigating class actions, and have extensive experience in the underlying issues of immigration law, constitutional law, and administrative law. *See id.*  Likewise, the proposed named plaintiffs will fairly and adequately protect the interests of the proposed class.  Named plaintiffs' interests are aligned with the remaining putative class.  Plaintiffs have alleged—on behalf of themselves and the class—that the family separation impacted their ability to meaningfully pursue asylum rights.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

As discussed above, there is a separate parent class identified in the Agreement consisting of the same parent class definition, except that the requirements of continuous physical presence in the United States do not apply. All parent classes are sub-classes of the certified *Ms. L.* class. Class counsel for the *Ms. L.* Plaintiffs will continue to act as class counsel for the reunification claims for all parents, including the reunification claims of this separate parent subclass.

Regarding the child class, proposed class counsel are attorneys from a prominent law firm with expertise in class actions who have been working closely with attorneys from non-profit organizations that specialize immigration law and in representing individuals and families in immigration proceedings. Ex. 72 (Decl. of Justin Bernick). Collectively, these attorneys have extensive background in litigating class actions, and have extensive experience in the underlying issues of immigration law, constitutional law, and administrative law. *Id.* The attorneys have prosecuted the *M.M.M.* case vigorously on behalf of the proposed class, pursuing the interests of *M.M.M.* plaintiffs and class members in securing injunctive relief that will allow them to pursue asylum with the assistance of their parents. *Cf. Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (adequacy satisfied when "the district court specifically found that the attorneys for the class representatives were well qualified and that the class representatives themselves were adequate because they were not antagonistic to the interests of the class and were 'interested and involved in obtaining relief.'"). In addition, the interests of the *M.M.M.* named plaintiffs and the child class are aligned. All class members, including the *M.M.M.* plaintiffs, have been subjected to a similar course of conduct and have a strong interest in (1) securing meaningful access to asylum procedures, and (2) securing their parents' assistance with those procedures. That is exactly the interest the *M.M.M.* plaintiffs have represented in this case.

### b. The Requirements of Rule 23(b)(2) Are Satisfied

Having analyzed the requirements of Rule 23(a), the next issue is whether

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs have shown that at least one of the requirements of Rule 23(b) is met. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Under Rule 23(b)(2), class certification may be appropriate where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Parsons*, 754 F.3d at 674. "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.* at 688.

Thus, "Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s requirement that questions common to the class predominate over individual issues." *Pecover v. Elec. Arts Inc,*, 2010 U.S. Dist. LEXIS 140632, at *40 (N.D. Cal. Dec. 21, 2010). It is "'almost automatically satisfied in actions primarily seeking injunctive relief.'" *Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)). Moreover, it is settled that "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate" under 23(b)(2). *Walters*, 145 F.3d at 1047.

Rule 23(b)(2) is met here for the proposed classes. Both the *M.M.M.* plaintiffs and the *Ms. L* and *Dora* plaintiffs have sought relief from Defendants' policies that resulted in family separation, which were applied to the classes as a whole, and which they contend denied plaintiffs and class members with a reasonable opportunity to pursue asylum or other protection from removal prior to removal. Defendants thus acted on grounds that "apply generally to the class." Through litigation in *M.M.M.* and *Ms. L/Dora*, Plaintiffs sought to enjoin the government from further unlawful interference with Plaintiffs' and the absent class

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

members right to meaningfully pursue asylum or other protection from removal, and the proposed settlement plan resolves these claims for the class "as a whole" by seeking to restore each class member to a position that reasonably approximates the position each class member would have occupied but for the Defendants' conduct.

### c. The Proposed Settlement Falls Within the Range of Possible Approval

As explained above, once the Court determines that the proposed classes meet the requirements of Rule 23(a) and Rule 23(b)(2), it must determine whether the proposed settlement warrants consideration by members of the class and full examination by the court at a final approval hearing. Manual for Complex Litigation (Fourth) § 13.14 at 173. "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, at *18 (N.D. Cal. Mar. 18, 2015) (citations omitted). In considering whether the settlement falls within the range of possible approval, courts look to "plaintiffs' expected recovery balanced against the value of the settlement offer," as well as the "risk and [ ] anticipated expense and complexity of further litigation." *Id.* The proposed settlement easily satisfies this requirement.

First, the Agreement is the product of hard-fought, non-collusive negotiations between the government and the *M.M.M.*, *Dora*, and *Ms. L* plaintiffs. Prior to those negotiations, the *M.M.M.* plaintiffs had vigorously litigated a motion for TRO in two different jurisdictions (D.D.C. and S.D. Cal.) and a motion for preliminary injunction in one (D.D.C.). The parties engaged in significant briefing on the merits, including the issue of jurisdiction, with the government hotly contesting the court's jurisdiction to hear the *M.M.M.* plaintiffs' claims or award the requested

- 18 -

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1   relief.  This litigation, and the views expressed by this Court and Judge Friedman,

2   informed those arm's-length negotiations.

3       Moreover, when considering a proposed settlement, "the value of the

4   assessment of able counsel negotiating at arm's length cannot be gainsaid."  *Reed v.*

5   *Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Here, counsel for all parties

6   are well versed in class actions and immigration law and are fully capable of

7   weighing the facts, law, and risks of continued litigation.  Thus, "experienced

8   counsel on both sides, each with a comprehensive understanding of the strengths

9   and weaknesses of each party's respective claims and defenses, negotiated this

10  settlement over an extended period of time."  *Tableware*, 484 F. Supp. 2d at 1080.

11  No evidence suggests the proposed settlement is collusive and, indeed, the

12  extensive negotiation process would disprove any such claim.

13      Additionally, the "substantive fairness and adequacy of the settlement

14  confirms this view of the fair procedures used to reach the settlement."  *Tableware*,

15  484 F. Supp. 2d at 1080.  The proposed settlement would provide fair and

16  meaningful procedures for the government to consider any claims of fear of return

17  made by parents and children who were separated.  Under the proposed settlement,

18  members of the parent class who are still in the United States and who initially

19  received a negative finding related to their claims of fear will have an opportunity

20  for de novo review of their cases, with the opportunity to present testimony and

21  new evidence and the potential opportunity to pursue asylum or other protection

22  from removal as a family unit.  This is significant and meaningful relief compared

23  to what was sought in *Ms. L* and *Dora v. Sessions,* 18-cv-1938 (D.D.C. 2018), and

24  what could have been achieved in litigation.  Similarly, the proposed settlement

25  ensures that all members of the *M.M.M.* Class – children who were separated from

26  their parents – will have an opportunity to pursue asylum or other protection from

27  removal with the participation of a parent.  This is relief that would not have been

28  achieved but for the *M.M.M.* litigation.  Importantly, the settlement also "protects

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

the rights of class members by ensuring that class members retain their individual damages claims." *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015).

Further litigation would have presented significant risks and burdens to both sides. Defendants have pressed complex jurisdictional and procedural defenses, contested the merits of Plaintiffs' claims, and heavily disputed whether Plaintiffs' requested relief is an appropriate remedy for the harms alleged. Given the statements of this Court and Judge Friedman regarding these issues, Plaintiffs would have assumed a degree of risk if they continued litigating these claims.

In contrast, the proposed settlement provides significant, meaningful, and certain relief to members of both proposed classes, and does so within a fast time period. The Plaintiff Classes are vulnerable parents and children, many of whom are subject to final removal orders. As a result, the Plaintiff Classes have a powerful interest in obtaining the relief the Agreement affords. In addition, many members of the Plaintiff Classes are currently detained, and have a particular interest in obtaining finality in their removal proceedings and to avoid prolonging their custody. Moreover, the proposed settlement was also a result of a detailed and intensive negotiation process, involving many stakeholders on both sides, and after hard-fought litigation in both the *Ms. L* and *M.M.M.* cases. By any measure, it is sufficiently fair to warrant preliminary approval.

### d. The Proposed Notice Form and Notice Plan is Appropriate

The parties have agreed to provide notice to the Settlement Classes through several methods. Unless otherwise indicated, notice will be provided by October 12, 2018.

*First*, the parties propose that counsel for Settlement Class members will provide direct notice to the non-detained Settlement Class members who are within the United States by providing them with the attached notice form in English and Spanish and obtaining any waiver as appropriate. Defendants will provide counsel

for Settlement Class members with any known contact information for all non-detained Settlement Class members.[8]

*Second*, because many of the Settlement Class members are or recently have been represented by counsel in connection with their immigration proceedings, Plaintiffs' counsel will coordinate the dissemination of the attached notice form and the Agreement via electronic mail to list-serves and other electronic locations where the notice is reasonably likely to be observed by class members' counsel. Notice will be disseminated within 48 hours of the Court's preliminary approval of the proposed settlement. The list-serves and other electronic locations include:

- The Association of Pro Bono Counsel list-serve.[9]
- The Association of Pro Bono Counsel's password-protected SalesForce site.[10]
- A private list-serve of organizations and individuals who have been providing legal and other services to individuals affected by family separation.[11]

*Third*, Plaintiffs' counsel will disseminate the attached notice and the Agreement directly to legal services providers ("LSPs") that subcontract with the Vera Institute of Justice to provide legal services to unaccompanied alien children

---

[8]   The parties continue to discuss which party will bear the costs of notice and will raise the issue with the Court during the status conference scheduled for October 9, 2018 if they are unable to reach agreement by that time.

[9]   The Association of Pro Bono Counsel is an organization of over 200 attorneys and practice group managers who administer pro bono practices in over 100 of the world's largest law firms. The Association includes a network of attorneys who are attempting to make contact with, and provide legal services for, reunified families who have been released and are residing in their geographic area. Plaintiffs' counsel will disseminate the notice and Agreement to the list-serve.

[10]   Plaintiffs' counsel will post the notice and Agreement to the password protected SalesForce site.

[11]   Manoj Govindaiah, Director of Family Detention at RAICES, will disseminate the notice and Agreement to the private list-serve. RAICES is a nonprofit organization that provides legal services to immigrant families in Texas, including families detained at the family residential center in Karnes, Texas.

and detained adults and children.[12]  Notice will be disseminated within 48 hours of the Court's preliminary approval of the proposed settlement.  The 35 LSPs that subcontract with the Vera Institute of Justice are:

- Al Justice
- Ayuda
- Cabrini
- CAIR Coalition
- Central American Resource Center (CARECEN)
- Casa Cornelia Law Center
- Catholic Charities, Archdiocese of New Orleans (CCANO)
- Catholic Charities of Baltimore (Esperanza Center)
- Catholic Charities Community Services New York (CCCS-NY)
- Catholic Charities, Archdiocese of Washington (CCDC)
- Charlotte Immigration Law Firm (CILF)
- Catholic Legal Services, Archdiocese of Miami (CLS Miami)
- Connecticut Legal Services (CTLS)
- Diocesan Migrant & Refugee Services, Inc. (DMRS)
- Erie County Bar Association, Volunteer Lawyers Project (ECBA-VLP)
- Florence Immigrant and Refugee Rights Project (FIRRP)
- Hebrew Immigrant Aid Society Pennsylvania (HIAS PA)
- Human Rights Initiative (HRI)
- Hogar (Catholic Charities, Diocese of Arlington)
- Immigrant Legal Advocacy Project (ILAP)
- Immigration Counseling Services

---

[12]    Notice to these legal services providers will be disseminated by Plaintiffs' counsel via electronic mail.  The Vera Institute of Justice has provided at least one point of contact at each LSP.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

- Immigrant Defenders Law Center (IDLC/ImmDef)
- Jewish Family and Community Services of Pittsburgh (JFCSP)
- Kids in Need of Defense (KIND)
- Latino Memphis
- Legal Services for Children (LSC)
- Legal Services of New Jersey (LSNJ)
- Mid-South Immigration Advocates Memphis (MIA Memphis)
- Michigan Immigrant Rights Center (MIRC)
- National Immigrant Justice Center (NIJC)
- ProBAR
- Public Counsel
- Refugee and Immigrant Center for Education and Legal Services (RAICES)
- YMCA International

*Fourth*, Plaintiffs' counsel will disseminate the attached notice and Agreement to a list of over 100 legal services organizations that provide direct representation to aliens in connection with immigration proceedings, a subset of which previously identified themselves as having capacity to represent reunited families who have been released.[13]  *See* Ex. 73.  The list of organizations was compiled in part by the Vera Institute of Justice, Kids in Need of Defense (KIND), and the American Bar Association, and in part by Plaintiffs' counsel.  Notice will be disseminated within 48 hours of the Court's preliminary approval of the proposed settlement.  There is some overlap between this list of organizations and the 35 LSPs listed above, though it is uncertain how many of these organizations have actually undertaken representation of any reunified families.

---

[13]     Notice to these organizations will be disseminated by Plaintiffs' counsel via electronic mail.

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

*Fifth*, organizations working at the family residential centers at Karnes and Dilley, Texas where reunified families are detained will hand deliver notices to Settlement Class members in English or Spanish.[14]   Notices can be delivered to Settlement Class members within 48 hours of preliminary approval of this agreement.   Defendants will provide Plaintiffs with a list of all Settlement Class members who are currently detained in Karnes and Dilley in order to effectuate this notice.

The parties have engaged in extensive outreach to interested persons and organizations as part of the process of reaching the Agreement, and have had ample communication with these interested persons and organizations since the Agreement was reached.   The proposed notice plan easily satisfies the Advisory Committee's standards for effecting class notice under Rule 23(b)(2) of the Federal Rules of Civil Procedure.[15]   Moreover, the content of the proposed notice form is appropriate.   The form explains the basis of the lawsuits, the contours of the Settlement Classes, the relief to which Settlement Class members are entitled, the rights of Settlement Class members (including the right to object), and the date for submitting such objections and for the fairness hearing.   *See, e.g., Stott v. Capital Fin. Servs., Inc*., 277 F.R.D. 316, 342 (N.D. Tex. 2011) (notice was appropriate under Rule 23(c)(2)(A) where, as here, it "clearly provided the nature of the action, the definition of the Settlement Class, the terms of the settlement, the class

---

[14]   The organization that works at Karnes is RAICES.  The organization that works at Dilley is the CARA Family Detention Pro Bono Project.  Representatives from both organizations have committed to carrying out this portion of the notice plan.

[15]   "When the court does direct certification notice in a (b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective. A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods."   Fed. R. Civ. P. 23(c)(2) (2003 Advisory Committee Notes).

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1   members' options, including the fact that they could not exclude themselves, the
2   claims, defenses, and the procedures surrounding the settlement;" "Class members
3   were further provided with the date of the fairness hearing and were given the
4   opportunity to object to the settlement, which was described in clear terms;" and
5   "[t]he scope of the class and effect of the Court's potential approval of the
6   settlement were clearly explained to the recipients of the notice").

7   **V.   CONCLUSION**

8          For the foregoing reasons, Plaintiffs respectfully request that the Court enter
9   the attached proposed order preliminarily approving the Agreement, preliminarily
10  certifying the proposed Settlement Classes, and approving the proposed notice form
11  and notice plan.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

| | |
|---|---|
| 1 | October 5, 2018 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully Submitted,

*/s/ Lee Gelernt*
Lee Gelernt
Judy Rabinovitz
Anand Balakrishnan
Stephen Kang
Spencer Amdur
Daniel Galindo
AMERICAN       CIVIL       LIBERTIES
UNION FOUNDATION
125 Broad St.
18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
skang@aclu.org
samdur@aclu.org
dgalindo@aclu.org

*Proposed Class Counsel For Removed Parents*

Michael Maddigan
(Cal. Bar No. 163450)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com

Justin W. Bernick*
Zachary W. Best*
T. Clark Weymouth*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
t.weymouth@hoganlovells.com
zachary.best@hoganlovells.com

Oliver J. Armas*
Ira M. Feinberg (Cal. Bar No. 064066)
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
oliver.armas@hoganlovells.com
ira.feinberg@hoganlovells.com

Katherine A. Nelson*

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
katherine.nelson@hoganlovells.com

Haley K. Costello Essig*
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
haley.essig@hoganlovells.com

*Admitted *pro hac vice*

*Proposed Class Counsel for Child Class*

Aaron M. Olsen
Haeggquist and Eck LLP
225 Broadway, Ste 2050
San Diego, CA 92101
phone: 619.342.8000
fax: 619.342.7878
aarono@haelaw.com

Wilson G. Barmeyer**
EVERSHEDS   SUTHERLAND   (US)
LLP
700 Sixth Street NW, Suite 700
Washington, DC 20001
(202) 383-0100
(202) 637-3593 (facsimile)
wilsonbarmeyer@eversheds-
sutherland.com

John H. Fleming**
EVERSHEDS SUTHERLAND (US)
LLP
999 Peachtree Street NE, Suite 2300
Atlanta, GA 30309
(404) 853-8000
(404) 853-8806 (facsimile)
johnfleming@eversheds-sutherland.com

Sirine Shebaya**
Johnathan Smith**
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
(202) 897-2622
(202) 508-1007 (facsimile)
sirine@muslimadvocates.org
johnathan@muslimadvocates.org

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Simon Y. Sandoval-Moshenberg**
Sophia Gregg**
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 778-3450
(703) 778-3454 (facsimile)
simon@justice4all.org
sophia@justice4all.org

** *Pro hac vice* admission applications
forthcoming

*Proposed Class Counsel for Parent
Class*

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing UNOPPOSED MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT, with the Clerk of the Court through the ECF system on October 5 2018.  This system provided a copy to and effected service of this document on all parties.

Dated:      October 5, 2018             ACLU IMMIGRANTS' RIGHTS
                                        PROJECT


                                        By:___/s/ Lee Gelernt_____
                                            Lee Gelernt
                                            Attorney for Plaintiffs

UNOPPOSED MOTION FOR PRELIMINARY
                                        APPROVAL OF PROPOSED SETTLEMENT

*Ms. L. et al., v. U.S. Immigration and Customs Enforcement, et al.*

**EXHIBITS TO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; PRELIMINARY CERTIFICATION OF SETTLEMENT CLASSES; AND APPROVAL OF CLASS NOTICE**

**TABLE OF CONTENTS**

| EXHIBIT | DOCUMENT | PAGES |
|---------|----------|-------|
| 68 | **Final Agreement** | 31-38 |
| 69 | **Declaration of Wilson G. Barmeyer** | 39-42 |
| 70 | **Declaration of Sirine Shebaya** | 43-47 |
| 71 | **Declaration of Simon Y. Sandoval-Moshenberg** | 48-52 |
| 72 | **Declaration of Justin W. Bernick** | 53-59 |
| 73 | **Organization List** | 60-63 |

UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT

# EXHIBIT 68

**Plan to address the asylum claims of class-member parents and children who are physically present in the United States**

The government is willing to agree to the following procedures for addressing the asylum claims of *M.M.M.* agreed class members and the claims of *Ms. L* class members (and *Dora* plaintiffs), other than those class members who agree to waive these procedures (and thus to waive any further claims or relief).[1] (In this document, references to *Ms. L* class members encompass *Dora* plaintiffs.) Class counsel are responsible for determining a class member's intentions related to waiver of the procedures set forth below. Upon approval of this agreed-upon plan by the U.S. District Court for the Southern District of California, *M.M.M.* agreed class members agree to dismiss their pending litigation in the U.S. District Court for the District of Columbia, and to refrain from seeking preliminary injunctive relief in their litigation pending in the U.S. District Court for the Southern District of California; *Dora* plaintiffs agree to dismiss their pending litigation in the U.S. District Court for the District of Columbia; and *M.M.M.* agreed class members and *Ms. L* class members agree to refrain from additional litigation seeking immigration- or asylum-related injunctive, declaratory, or equitable relief that arises from the facts and circumstances set forth in the *Ms. L*, *M.M.M.*, and *Dora* complaints relating to those parents and children covered by this plan, including statutory claims. This plan applies only to *Ms. L* class members and *M.M.M.* agreed class members who have been continuously physically present in the United States since June 26, 2018, and does not set any precedent for any additional group of aliens, and any exercise of legal authority or discretion taken pursuant to this plan is exercised only to effectuate the implementation of this plan in relation to this group of individuals. The Court's approval of this agreement will resolve the pending preliminary-injunction motion in *M.M.M.* and will also lift the TRO issued in that matter. The Court will retain jurisdiction to enforce the provisions of this plan, which represents the substantive terms for the implementation of a settlement agreement and supersedes the prior written or oral communications between the parties regarding this plan.

---

[1] The classes of individuals to whom this plan relates include:

***Ms. L* Class Members and *Dora* Plaintiffs**: All adult alien parents who entered the United States at or between designated ports of entry with their child(ren), and who, on or before the effective date of this agreement: (1) were detained in immigration custody by the DHS; (2) have a child who was or is separated from them by DHS and, on or after June 26, 2018, was housed in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child; and (3) have been (and whose child(ren) have been) continuously physically present within the United States since June 26, 2018, whether in detention or released. The class does not include alien parents with criminal histories or a communicable disease, or those encountered in the interior of the United States.

**_M.M.M._ Agreed Class Members**: All alien children who are under the age of 18 on the effective date of this agreement who: (1) entered the United States at or between designated ports of entry with an alien parent, and who were separated from their parents, on or before the effective date of this settlement agreement; (2) have been or will be reunified with that parent pursuant to the preliminary injunction issued by the Court in *Ms. L v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018); and (3) have been continuously physically present in the United States since June 26, 2018.

All references to a "class" or "class member" in this document refer to the classes described above, as well as alien parents who are not part of the *Ms. L* class due to criminal history or communicable disease, but who the Court has ordered must be reunified.

1

1. **a.** *Ms. L* class members and *M.M.M.* agreed class members who are not currently detained in DHS custody (and are not currently in HHS custody) and who have been issued Notices to Appear (NTAs) will not be removed by DHS prior to issuance of a final removal order in their resulting removal proceedings conducted under Section 240 of the Immigration and Nationality Act (INA). If a *Ms. L* class member or *M.M.M.* agreed class member was released from DHS or ORR custody, is not currently in Section 240 removal proceedings, and is not subject to a final removal order, that individual can affirmatively apply for asylum before U.S. Citizenship and Immigration Services (USCIS), USCIS will adjudicate such an application regardless of whether an unfiled NTA exists, and USCIS will follow its established procedures concerning a parent's involvement in his or her minor child's asylum application process. If an *M.M.M.* agreed class member (whether currently detained or released) received a final removal order in Section 240 removal proceedings prior to reunification, DHS and HHS will work in good faith with *M.M.M.* counsel to identify such children within 15 days of approval of this agreement, and DHS will join in a motion to reopen those proceedings if requested by the *M.M.M.* agreed class member no later than 45 days from approval of this agreement. *M.M.M.* agreed class members who have not been reunified with their parent(s) as of the effective date of this agreement will be afforded existing procedures for unaccompanied alien children pursuant to governing statutes and regulations, including but not limited to Section 240 removal proceedings, unless and until they are reunified with a parent, in which case the procedures described below will apply.

   **b.** If a detained, reunited *M.M.M.* agreed class member child has been served with an NTA, but the NTA has not been filed with an immigration court, DHS will exercise its discretion under 8 C.F.R. § 239.2(a) to cancel the NTA within 15 days of the Court's approval of this agreement. For such a child who either had an NTA cancelled in this way, or who has never been served with an NTA, if the child is an arriving alien or was initially encountered by DHS within 14 days of entry and 100 miles of the border, ICE will then initiate expedited removal (ER) proceedings under Section 235 of the INA against the child. Where such a class member child asserts, or has already asserted, an intention to apply for asylum or a fear of persecution or torture, either directly or through counsel, they shall be referred to USCIS for a credible fear determination.

   **c.** If a detained, reunited *M.M.M.* agreed class member child has been issued an NTA that has been filed with an immigration court and the child is an arriving alien or was initially encountered by DHS within 14 days of entry and 100 miles of the border, DHS will file a motion to dismiss the pending Section 240 proceeding, seeking to do so jointly with the child's immigration attorney of record, as practicable. Such a motion shall be filed within 30 days of the Court's approval of this agreement and shall request expedited consideration by the immigration court. Upon dismissal of the Section 240 proceeding, ICE will initiate expedited removal proceedings under Section 235 of the INA against the child. Where such a class member child asserts, or has already asserted, an intention to apply for asylum or a fear of persecution or torture, either directly or through counsel, they shall be referred to USCIS for a credible fear determination.

   **d.** For *Ms. L* class members who have not been issued an NTA and have final ER orders that have not been cancelled by DHS, USCIS will exercise its discretionary authority to sua sponte conduct in good faith a de novo review of the credible fear finding of the parent to

2

determine if reconsideration of the negative determination is warranted. During that review process for *Ms. L* class members, USCIS will review the parent's case and the information provided and determine whether the individual has a credible fear of persecution or torture. For the limited purpose of this settlement agreement, USCIS will speak with the individual again for additional fact-gathering and the individual may present new or additional information at this time, with the assistance of the individual's counsel in-person unless ICE determines in good faith that in-person participation would adversely impact facility security or operations due to facility staffing, configuration, or access policies, in which case counsel will be permitted to participate telephonically, provided that counsel's attendance is at no expense to the government and does not unreasonably delay the process. In determining whether any factual inconsistencies between the original interview and the subsequent fact-gathering impact the credibility of the parent, due consideration will be given to the psychological state of the parent at the time of the initial interview. If the parent establishes that he or she can meet the credible fear standard, as it is described at Section 235(b)(1)(B)(v) of the INA and 8 C.F.R. § 208.30(e)(2) and (3), then DHS will issue and subsequently file an NTA. The children will be treated as the parent's dependents under 8 C.F.R. § 208.30(b). If the parent's credible fear determination remains negative, USCIS will screen the child individually for credible fear. The parent will be permitted to participate in the child(ren)'s credible fear interview and provide testimony on behalf of the child(ren), in addition to any testimony from the child(ren). Counsel for the child will be permitted to attend the interview in person unless ICE determines in good faith that in-person participation would adversely impact facility security or operations due to facility staffing, configuration, or access policies, in which case counsel will be permitted to participate telephonically, so long as it does not unreasonably delay the process and any attorney assistance is at no expense to the government.

e.  For *Ms. L* class members who are currently detained[2] with their *M.M.M.* agreed class member child(ren) at an ICE FRC and are subject to reinstated orders of removal, ICE will initiate ER proceedings under Section 235 against the minor child(ren), upon a determination that the child was initially encountered within 14 days of entry and 100 miles of the border. During those proceedings, the child(ren) will be referred for a credible fear determination if the child(ren) asserts, or has already asserted, a fear of return, either directly or through counsel. The credible fear claim will then be considered under the standards of 8 C.F.R. § 208.30, as described above. USCIS will conduct the credible fear interview of the child(ren) in coordination with a sua sponte review of the reasonable fear determination for the parents to determine whether reconsideration of the negative reasonable fear determination is warranted.

USCIS will review the parent's case and the information provided and determine whether the individual has a reasonable fear of persecution or torture. For the limited purpose of this settlement agreement, USCIS will speak with the individual again for additional fact-gathering and the individual may present new or additional information at this time, with the assistance of the individual's counsel in-person unless ICE determines in good faith

---

[2] This agreement does not impact the ability of *Ms. L* class members with reinstated orders of removal who are not detained to pursue any available appeal of such an order under existing law and subject to statutory time periods.

that in-person participation is impracticable or would adversely impact facility security or operations due to facility staffing, configuration, or access policies, in which case counsel will be permitted to participate telephonically, provided that counsel's attendance is at no expense to the government and does not unreasonably delay the process. In determining whether any factual inconsistencies between the original interview and the subsequent fact-gathering impact the credibility of the parent, due consideration will be given to the psychological state of the parent at the time of the initial interview. If the parent establishes that he or she can meet the reasonable fear standard, as it is described at 8 C.F.R. § 208.31(c), then DHS will place the parent in withholding-only proceedings. The parent will be permitted to participate in the child(ren)'s credible fear interview and provide testimony on behalf of the child(ren), in addition to any testimony from the child(ren). Counsel for the child will be permitted to attend the interview in person unless ICE determines in good faith that in-person participation is impracticable or would adversely impact facility security or operations due to facility staffing, configuration, or access, in which case counsel will be permitted to participate telephonically, so long as it does not unreasonably delay the process and any attorney assistance is at no expense to the government.

f.    If the parent's credible fear or reasonable fear finding remains negative upon review, USCIS will notify the parent in writing that USCIS declines to reconsider the existing negative credible fear or reasonable fear determination. If the child receives a separate negative credible fear determination, the child may seek review by an immigration judge.

g.    For purposes of the reviews and interviews of detained parents and/or children described in this proposal, the government shall provide the parent and/or child with the orientation that is normally provided for credible fear interviews, and shall provide at least 5 days' notice of such orientation. Notice of the orientation shall be provided no later than 3 days following the parent and/or child's execution of a document reflecting his or her decision pursuant to paragraph 8 of this agreement, and the notice shall state the purpose of the notice (orientation for an interview or review) and the date, time, and location of the orientation. Such reviews and interviews will be conducted at least 48 hours after the orientation, with due consideration given to any reasonable requests to continue the interview. The notice and time periods described in this paragraph will not apply if a parent affirmatively requests, in writing, that the review or interview take place on an expedited basis.

2.    In the case of a parent and child(ren) both in ER proceedings under the process described above, if either the parent or the child establishes a credible fear of persecution or torture, USCIS will issue NTAs to both parent and child and place the family in Section 240 removal proceedings. *See* 8 C.F.R. §§ 208.30(f) (positive credible fear finding made by USCIS), 1208.30(g)(2)(iv)(B) (positive credible fear finding made by immigration judge).

3.    In the case of a parent and child(ren) both in ER proceedings under the process described above, if none of the family members establish credible fear of persecution or torture (and in the case of a child who seeks review of the credible fear finding by an immigration judge, such finding is upheld by an immigration judge), the ER orders may immediately be executed.

4

4.     In the case of a parent who is subject to a reinstated order of removal, if the child(ren) establishes credible fear and the parent does not establish a reasonable fear, the child(ren) would be placed in Section 240 removal proceedings and the parent would at that time be subject to continued detention or release, in DHS's discretion, consistent with paragraph 7 below. DHS will not remove a *Ms. L* class member who received a negative reasonable fear finding while his or her *M.M.M.* agreed class member child goes through the credible fear process and, if applicable, Section 240 removal proceedings. Plaintiffs concede, however, that removal of any *Ms. L* class member with a reinstated removal order under this agreement is significantly likely to occur in the reasonably foreseeable future and that, if a parent initiates legal proceedings challenging their continued detention, DHS may immediately proceed with that *Ms. L* class member's removal, regardless of any injunctive orders issued in *Ms. L* and *M.M.M.*, provided that DHS gives the parent at least 7 days' advance notice to the parent that he or she will be removed.

5.     In the case of a parent who is subject to a reinstated order of removal, if the child(ren) establish credible fear and the parent establishes a reasonable fear, the child(ren) would be issued NTAs and placed in Section 240 removal proceedings, and the parent would be referred for withholding-only proceedings pursuant to 8 C.F.R. §§ 1208.2(c)(2) and 1208.31(e).

6.     If a *Ms. L.* class member who is currently detained[3] in an ICE FRC with his or her *M.M.M.* agreed class member child is subject to a final removal order issued in proceedings conducted under Section 240 (other than a reinstated order) and the child is an arriving alien or was initially encountered by DHS within 14 days of entry and 100 miles of the border, ICE would initiate ER proceedings under Section 235 against the child within 7 days of the Court's approval of this agreement, and refer the child for a credible fear interview. While the final order parent would not be a party to the child's credible fear adjudication, the parent would be available to consult with and assist the child in the course of that process. The parent would be permitted to participate in the child(ren)'s credible fear interview and provide testimony on behalf of the child(ren), in addition to any testimony from the child(ren). Counsel for the child will be permitted to attend the interview in person, so long as it does not unreasonably delay the process and any attorney assistance is at no expense to the government, and the timing of the interview will be in accordance with Paragraph 1.g. above. If the child establishes a credible fear of persecution or torture, USCIS will place the child in Section 240 removal proceedings, and ICE will move for reopening of the parent's prior removal proceedings and consolidation of the parent's case with the child's before the immigration court. If the child does not establish credible fear of persecution or torture, the removal orders may immediately be executed.

7.     Detention and custody decisions for aliens covered by this plan will be made consistent with DHS's authorities under Sections 235, 236, and 241, and the Order Granting Joint Motion Regarding Scope Of The Court's Preliminary Injunction in *Ms. L. v. ICE*, No. 18-428 (S.D. Cal.) (Aug. 16, 2018) (ECF 192) (recognizing that class members may be

---

[3] This agreement does not impact the ability of *Ms. L* class members with final removal orders issued in Section 240 removal proceedings, other than a reinstated order of removal, and who are not detained, to pursue individual appeals of such orders under existing law and subject to statutory time periods for challenging any such order.

required to choose whether to waive their own right not to be separated from their minor child(ren) or to waive their child(ren)'s right under the Flores Settlement Agreement to be released, including the rights with regard to placement in the least restrictive setting appropriate to the minor's age and special needs, and the right to release or placement in a "licensed program.").

**8.**   *Ms. L* counsel, *M.M.M.* counsel, or *Dora* counsel may identify class members who wish to waive the procedures described herein and be promptly removed to their country of origin. *Ms. L* counsel, *M.M.M.* counsel, and *Dora* counsel will promptly develop a process for obtaining and documenting such a choice through a knowing and voluntary waiver. Defendants will not engage with class members on such matters, but will seek to effectuate such waiver decisions when communicated and documented by *Ms. L* counsel, *M.M.M.* counsel, or *Dora* counsel. Class members may either pursue the relief described in this agreement or elect prompt removal, but may not pursue any other immigration- or asylum-related injunctive, declaratory, or equitable relief based on the allegations or claims made in any of the *Ms. L*, *M.M.M.*, or *Dora* complaints filed in any court accruing as of the date this plan is approved by the Court, including statutory claims. This agreement does not affect the right of *Ms. L* class members to seek reunification under the June 26, 2018 preliminary injunction in *Ms. L.*

### The return of removed parents to the United States[4]

The government does not intend to, nor does it agree to, return any removed parent to the United States or to facilitate any return of such removed parents. The classes agree not to pursue any right or claim of removed parents to return to the United States other than as specifically set forth in this paragraph. Plaintiffs' counsel may raise with the government individual cases in which plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted. Plaintiffs' counsel represent that they believe that such individual cases will be rare and unusual and that they have no basis for believing that such individual cases will be other than rare and unusual. Plaintiffs' counsel agree to present any such cases, including all evidence they would like considered by the government within 30 days of the approval of this agreement. In light of plaintiffs' counsel's representation that such cases will be rare and unusual, Defendants agree to provide a reply to any case presented by Plaintiffs within 30 days of receiving Plaintiffs' request to consider the case. Except as specifically set forth herein, the classes agree that existing law, existing procedures, and the Court-approved reunification plan address all interests that such parents or their children may have.

With respect to *M.M.M.* agreed class members who seek asylum and who have removed parents, the government agrees not to oppose requests that the removed parent provide testimony or evidence telephonically or in writing in the child's asylum or removal proceedings and that ICE attorneys appearing in immigration court (1) will not object to the admission of documentary evidence (such as photocopied, scanned, or faxed documents) provided by the removed parent on

---

[4] For this section of this agreement, the classes are the same as in footnote 1 above except that the requirements of continuous physical presence in the United States do not apply to this section of the agreement, since this section addresses removed parents.

the grounds that such documentary evidence does not bear an original signature or is not an original copy (ICE reserves the right to object based on other grounds), and (2) will not object to telephonic participation by the parent in the *M.M.M.* agreed class member's Section 240 removal proceedings provided that the alien (and his or her legal representative, if applicable) make appropriate motions to the immigration judge to permit telephonic testimony in advance of any merits hearing, that the alien is responsible for providing accurate contact information to permit the immigration judge to make contact with the parent, and that the parent's unavailability and faulty connections or other technological impediments may not serve as the basis for delaying scheduled hearings. Class members, however, recognize that ICE has no control over the technology or logistics of the Executive Office for Immigration Review.

# EXHIBIT 69

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al.,<br><br>Plaintiff,<br><br>v.<br><br>Jefferson Beauregard Sessions, III, Attorney General of the United States, et al.,<br><br>Defendant. | Case No.  3:18-cv-1832-DMS |
| Ms. L, et al.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement, et al.,<br><br>Defendant. | Case No.  3:18-cv-428-DMS |

## DECLARATION OF WILSON G. BARMEYER

I, Wilson G. Barmeyer, declare and state as follows:

1.     My name is Wilson G. Barmeyer.  I am over 21 years of age, and I am fully competent to make this Declaration. I declare that all the facts contained in this Declaration are within my personal knowledge and/or belief, and are true and correct.

2.     This Declaration is in support of the request that the Court find that Eversheds Sutherland (US) LLP ("Eversheds Sutherland"), my partner John Fleming, and myself, and together with our co-counsel from Muslim Advocates and Legal Aid Justice Center, are adequate

to represent the non-deported class of parents for purposes of the class settlement of their asylum-related claims.

3.     I graduated from the University of Georgia School of Law in 2006.   After graduating from law school, I clerked for the Honorable William T. Moore, Jr. of the U.S. District Court for the Southern District of Georgia.

4.     I am a partner at the law firm of Eversheds Sutherland where I have practiced for ten years.   Eversheds Sutherland has extensive experience defending and pursuing class action claims.   Over the last five years, our firm participated as lead or co-counsel in more than 200 class actions regarding a wide variety of industries and subject areas, including securities, construction, consumer finance, property, casualty, life insurance and other areas.

5.     While at Eversheds Sutherland, I have practiced primarily in the area of complex commercial litigation and class actions and have represented clients in state and federal courts across the country. A sample of my recent class action experience includes, among other cases, *Holstein v. Banner Life*, 3:16-cv-00462 (D.N.J.); *O.P. Schuman & Sons v. DJM Advisory,* 2:16-cv-3563 (W.D. Pa.); *Lavelle, et al. v. State Farm Mutual Automobile Ins. Co.,* 1:16-cv-01082 (D.D.C.); *Zieger v. NCAS,* 1:13-cv-1614 (D. Del.); *Lewis v. AACAC of Illinois,* 3:13-cv-942 (S.D. Ill.); and *Butler v. Union Central Life Ins. Co.*, 1:12-cv-177 (S.D. Ohio).

6.     My partner and co-counsel John Fleming graduated from Harvard Law School in 1975.  He clerked for one year with Judge Irving Goldberg on the "old" (pre-1981) Fifth Circuit. John Fleming has been a partner with our firm since 1981 and, during that time, has assisted or led the firm's efforts on class actions involving employment, antitrust and consumer finance disputes, among other areas.  Additionally, John Fleming took the lead for our firm and the Atlanta named plaintiffs in a major plaintiffs' class action alleging discrimination by the Holiday Spas Fitness

2

chain, which was resolved in a favorable settlement for the plaintiffs, on a class basis. His recent class action experience includes, among other cases, *Foley v. Transocean,* 10-cv-5233 (S.D.N.Y.); *Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd. et al.,* 1:10-cv-07498 (S.D.N.Y); *In re Immucor, Inc., Securities Litigation,* 1:09-cv-2351 (N.D. Ga.)-TWT; and *Burgess, et al. v. Religious Technology Center, Inc., et al.,* 1:13-cv-02217 (N.D. Ga.).

7.      Eversheds Sutherland is committed to pursuing this action on a pro bono basis as far as Plaintiffs and the class are concerned, and will not bill Plaintiffs or any class member for our services. We have prior experience serving as class counsel on a pro bono basis in cases involving public interest and civil rights. Our firm, led by John Fleming, is currently serving as class counsel in *M.H. v. Reese,* 1:15-cv-01427 (N.D. Ga.), a class action involving children's rights to medical care.

8.      With respect to the substance of this litigation, our firm has substantial experience in the underlying immigration law, constitutional law and administrative law claims including: (1) representation of a Spanish-speaking client appealing a denial of asylum before the U.S. Court of Appeals for the Third Circuit and the Board of Immigration Appeals; (2) successfully obtaining a waiver of removability in immigration court for a Cameroonian refugee and defeating the Department of Homeland Security's appeal of that decision in the Board of Immigration Appeals; (3) successfully closing removal proceedings against a Honduran refugee after more than seven years of immigration proceedings, including a successful appeal at the U.S. Court of Appeals for the Fourth Circuit; and (4) representation of a Haitian man in his seven-month quest for asylum protection in the United States, which the court granted. My personal experience includes prevailing in a merits hearing before the U.S. Immigration Court, on behalf of an asylum applicant from Cameroon.

3

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

EXECUTED this 21st day of September 2018.

_____
Wilson G. Barmeyer

4

# EXHIBIT 70

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al., <br><br> Plaintiff, <br><br> v. <br><br> Jefferson Beauregard Sessions, III, Attorney General of the United States, et al., <br><br> Defendant. | Case No.  3:18-cv-1832-DMS |
| Ms. L, et al., <br><br> Plaintiff, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement, et al., <br><br> Defendant. | Case No.  3:18-cv-428-DMS |

## Declaration of Sirine Shebaya, Esq.

1.       My name is Sirine Shebaya.  I am over 18 years of age and competent to make this declaration.  I, along with my colleague Johnathan Smith, seek to be appointed class counsel for the Parent Asylum Class in the above-captioned litigation.

2.       I am the Senior Staff Attorney at Muslim Advocates. In this capacity, I lead our litigation and advocacy efforts on a range of civil rights issues, including the organization's

1

immigrants' rights docket. Prior to joining Muslim Advocates, I was Program Director for the Virginia Justice Program at the Capital Area Immigrants' Rights Coalition. Before that, I directed the Immigrants' Rights program at the American Civil Liberties Union of Maryland.

3.      I am also a board member of the National Immigration Project of the National Lawyers' Guild, a board member and former chair of the board of the Dulles Justice Coalition, and until recently was a co-chair of the Immigration Committee of the American Bar Association Criminal Justice Section. In my capacity as board member and chair of the Dulles Justice Coalition, I have organized scores of pro bono attorneys to provide assistance to detained immigrants on a range of immigration and civil rights matters.

4.      I am a 2012 graduate of Yale Law School, where I was awarded the Khosla Memorial Fund for Human Dignity Prize.  I was first admitted to practice in New York in March 2013, and have since been admitted to practice in Maryland, the District of Columbia, and eight federal district and circuit courts.  I have been awarded the Capital Area Muslim Bar Association Award for Outstanding Pro Bono Service and Commitment to Advancing Justice, the Americans for Democratic Action Winn Newman Equality Award, and the National Immigration Project of the National Lawyers' Guild Daniel Levy Award.

5.      Johnathan Smith is the legal director at Muslim Advocates. Prior to joining Muslim Advocates, he served as senior counsel to the Assistant Attorney General in the U.S. Department of Justice Civil Rights Division. Prior to that, he was a staff attorney at the NAACP Legal Defense and Educational Fund, Inc., where he litigated and was appointed class counsel in several civil rights actions. He was also a litigation associate at Fried, Frank, Harris, Shriver, and Jacobson, LLP, and served as a law clerk to the Honorable Carl E. Stewart of the U.S. Court of

Appeals for the Fifth Circuit. He is a graduate of the New York University School of Law, the Harvard Graduate School of Education, and Harvard College.

6.      Founded in 2005, Muslim Advocates is a legal education and advocacy organization that works on the frontlines of civil rights to guarantee freedom and justice for Americans of all faiths. Muslim Advocates advances these objectives in part through litigation, including class actions, in federal and state courts. Muslim Advocates represents immigrants in several jurisdictions across the country in civil rights litigation and challenges to detention.

7.      I have represented immigrants, including detained immigrants, in federal civil rights cases (including class actions) and in habeas corpus petitions in Maryland, the District of Columbia, the Northern District of California, the Eastern District of Virginia, and the Fourth Circuit. My regular practice areas include civil rights litigation with a particular focus on issues affecting immigrants.

8.      I have given dozens of trainings, presentations, and CLE classes on issues at the intersection of immigration and civil rights litigation, including presentations teaching immigration lawyers how to file and litigate habeas corpus petitions on behalf of detained immigrants.

9.      I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

MUSLIM ADVOCATES

By:  _____          Date:  9/20/2018
     Sirine Shebaya (*pro hac vice*)
     P.O. Box 34440
     Washington, DC 20043
     (202) 897-2622
     sirine@muslimadvocates.org

# EXHIBIT 71

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al., | Case No.  3:18-cv-1832-DMS |
| Plaintiff, | |
| v. | |
| Jefferson Beauregard Sessions, III, Attorney General of the United States, et al., | |
| Defendant. | |

| | |
|---|---|
| | Case No.  3:18-cv-428-DMS |
| Ms. L, et al., | |
| Plaintiff, | |
| v. | |
| U.S. Immigration and Customs Enforcement, et al., | |
| Defendant. | |

## Declaration of Simon Y. Sandoval-Moshenberg, Esq.

1.      My name is Simon Y. Sandoval-Moshenberg (Virginia State Bar No. 77110).  I am over 18 years of age and competent to make this declaration.  I seek to be appointed class counsel for the class of asylum-seeking parents in the United States, in the above-captioned litigation.

2.      I am the Legal Director of the Immigrant Advocacy Program at the Legal Aid Justice Center (LAJC), a statewide organization in Virginia.

1

3.      I am a 2008 graduate of the Yale Law School, where I was awarded the C. LaRue

Munson prize for excellence in clinical practice.  I was admitted to practice in Virginia in

October 2008.  I have been named a SuperLawyers Rising Star for Virginia every year since

2015.  In 2016, I was awarded the Legal Aid Lawyer of the Year award from the Virginia State

Bar.  In 2017, I was named an "Up & Coming Lawyer" by Virginia Lawyers Weekly/Leaders in

the Law; and also won the Winn Newman Equality Award from Americans for Democratic

Action.

4.      Founded in 1967 as the Charlottesville-Albemarle Legal Aid Society, the Legal

Aid Justice Center provides legal representation for low-income individuals in Virginia.  From

offices in Charlottesville, Richmond, Petersburg and Falls Church, LAJC serves those who have

the least access to legal resources. The Legal Aid Justice Center is committed to providing a full

range of services to its clients, including services that federal and state governments choose not

to fund.  LAJC's Immigrant Advocacy Program, founded in 1998, represents the most vulnerable

immigrants in Virginia, including detained immigrants, in litigation including civil rights

litigation and challenges to detention.  We have been named class counsel in at least 6 class

action lawsuits in the federal district courts in Virginia.

5.      I have been counsel of record in 59 cases in the Eastern and Western Districts of

Virginia, 16 of which were immigration-related civil rights actions or habeas corpus petitions;

and nine immigration-related cases before the Fourth Circuit Court of Appeals; as well as

countless cases before Virginia state courts.  My regular practice areas include immigration and

civil rights litigation, as well as other traditional poverty law practice areas such as employment,

consumer protection, housing, and access to education.

2

6.      I have previously been appointed as class counsel in two cases in the Eastern

District of Virginia: *Garcia Galdamez et al. v. I.Q. Data International, Inc.*, Civ. No. 1:15-cv-

1605 (Brinkema, J.); and *Cabrera Diaz et al. v. Hott et al.*, Civ. No. 1:17-cv-1405 (Brinkema,

J.).  I am also counsel of record in two other class actions in the federal district courts in

Virginia, for which class certification motions have not yet been adjudicated.

7.      I frequently give CLE classes on the intersection of immigration and civil rights

litigation, including many CLE's teaching immigration lawyers how to sue the federal

government in federal district court.

8.      My co-counsel Sophia Gregg is an attorney in the Immigrant Advocacy Program

at the Legal Aid Justice Center. She has served in this capacity since November 2016. As a staff

attorney, Ms. Gregg represents immigrants pursuing humanitarian relief from deportation as well

as helping them fight for their civil rights through impact litigation.

9.      On June 20, 2018, Ms. Gregg arrived in Harlingen, Texas to help in efforts to

reunify families separated by DOJ's "zero tolerance" policy and to offer legal orientation and

counsel and advice to the parents detained at Port Isabel Detention Center. Since then, Ms. Gregg

has been representing individual members of the *Ms. L v. ICE* class reunite with their children,

and in their immigration cases before the U.S. Department of Homeland Security, Office of

Refugee Resettlement, and the immigration court.

10.     I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____          Date: 9/20/18
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Ph: (703) 778-3450 x 605
Fax: (703) 778-3454
simon@justice4all.org

4

# EXHIBIT 72

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al., | Case No.  3:18-cv-1832-DMS |
| Plaintiffs, | |
| v. | |
| Jefferson Beauregard Sessions, III, Attorney General of the United States, et al., | |
| Defendant. | |
| Ms. L, et al., | Case No.  3:18-cv-428-DMS |
| Plaintiffs, | **DECLARATION OF JUSTIN W. BERNICK IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL; PRELIMINARY CERTIFICATION OF SETTLEMENT CLASSES; AND APPROVAL OF CLASS NOTICE** |
| v. | |
| U.S. Immigration and Customs Enforcement, et al., | |
| Defendants. | |

I, Justin W. Bernick, hereby state as follows:

     1.     I am a Partner at the international law firm Hogan Lovells LLP.  I have personal knowledge of the matters set forth in this declaration and, if called to testify to them, would be competent to do so.

     2.     I am one of several attorneys at Hogan Lovells who represent the six named plaintiffs ("*M.M.M.* Plaintiffs") in the above-captioned case ("*M.M.M.*").  I, along with my colleagues Zachary Best, T. Weymouth, and Ira Feinberg, have led the litigation of *M.M.M.* before and after the case was filed.

3.     The Hogan Lovells team filed and has been litigating *M.M.M.* in close consultation with immigration attorneys who specialize in the representation of noncitizen children and families, including Manoj Govindaiah and Shalyn Fluharty.

4.     Mr. Govindaiah is Director of Family Detention Services at the Refugee and Immigrant Center for Education and Legal Services (RAICES), and he oversees RAICES' representation of noncitizen families at Texas family detention centers.   RAICES is one of 35 legal services providers that subcontracts with the Vera Institute of Justice and the federal government to provide legal services to noncitizens in connection with their immigration proceedings.

5.     Ms. Fluharty is the Managing Attorney of the Dilley Pro Bono Project, where she provides legal services to families who are detained in Dilley, Texas in collaboration with a national volunteer network and seven full-time staff.   Together, Mr. Govindaiah and Ms. Fluharty have represented thousands of asylum-seeking families in credible fear and other immigration proceedings.

6.     The Hogan Lovells team, and Hogan Lovells more broadly, have extensive experience litigating class actions in federal court.   For example, Hogan Lovells was named Law360's Class Action Group of the Year, 2018.   Attorneys on the Hogan Lovells team or other attorneys at the firm have litigated (or are currently litigating) the following class action cases in federal court, on both the plaintiff and defense sides:   *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-2000 (N.D. Ala.) (one of the largest antitrust class action MDLs in history); *Moore, et al. v. Johnson*, No. 1:00-cv-953 (D.D.C.) (Hogan Lovells served as co-lead counsel for the plaintiff settlement class of Secret Service agents); *Castelano v. Clinton*, 7:08-cv-57 (S.D. Tex.) (Hogan Lovells served as co-lead counsel for the plaintiff settlement class of passport applicants); *Garnett v. Zeilinger*, No. 17-cv-1757 (D.D.C.) (Hogan Lovells represents class of government benefit recipients); *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-2617 (N.D. Cal.) (class action settlement resolving over 120 class action cases); *George et al. v. CNH*

- 2 -

*Health & Welfare Benefit Plan et al.*, No. 2:16-cv-01678 (E.D. Wis.) (class action settlement); *St. Gregory Cathedral School, et al. v. LG Electronics, Inc.*, No. 6:12-cv-739 (E.D. Tex.) (class certification denied); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, No. MDL 09–2074 (C.D. Cal.) (class certification denied in multidistrict litigation); *Kamakahi v. Am. Society for Reproductive Medicine*, No. 3:11-cv-1781 (N.D. Cal.) (class action settlement); *In Re: Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, 2:17-md-2785 (D. Kan.) (ongoing class action MDL); *In Re: Uber Technologies, Inc., Data Security Breach Litigation*, No. 2:18-ml-2826 (C.D. Cal.) (ongoing class action MDL).

7.      In addition to the class action experience described above, lawyers at Hogan Lovells regularly represent noncitizens in immigration proceedings, including unaccompanied minors and families seeking asylum.

8.      In light of the foregoing, counsel for the *M.M.M.* Plaintiffs is competent and well-qualified to serve as class counsel for the proposed class of children.

9.      Since filing this action on July 27, 2018, the Hogan Lovells team has vigorously prosecuted the claims of the *M.M.M.* Plaintiffs and similarly-situated children, at times in two different forums simultaneously.  From July 27 to August 17 alone, these efforts to prosecute the claims included: (1) filing a motion for emergency temporary restraining order ("TRO") and preliminary injunction in conjunction with the original complaint; (2) conducting a hearing on the emergency motion for TRO in D.D.C.; (3) opposing Defendants' motion to transfer venue to the Southern District of California; (4) filing supplemental briefing on Defendants' request to transfer venue; (5) filing supplemental briefing in this Court in support of the motion for TRO; (6) arguing the motion for TRO before this Court; (7) filing a motion for expedited discovery in D.D.C. and reviewing the discovery produced; (8) arguing the motion for preliminary injunction in D.D.C.; (9) filing supplemental

- 3 -

briefing regarding a revised proposed preliminary injunction order in D.D.C.; (10) filing a supplemental brief regarding a possible stay in D.D.C.; and (11) attending weekly status conference before this Court.

10.    On August 16, 2018, this Court granted the *M.M.M.* Plaintiffs' motion for a temporary restraining order against Defendants, staying the removal of all putative class members and their parents pending a resolution of their claims on the merits. The Court's order directed the parties to "meet and confer and propose a solution—one that follows the law, and is equitable and reflective of ordered governance."

11.    The Court subsequently held a status conference on August 17, 2018 with the parties in *M.M.M.* and *Ms. L v. U.S. Immigration and Customs Enforcement*, No. 3:18-cv-428 (S.D. Cal.). During the status conference, the Court discussed its ruling on the *M.M.M.* Plaintiffs' motion for TRO and the "Interagency Plan for Reunification of Separated Minors with Removed Parents" filed in *Ms. L* ("Interagency Plan"). Following the status conference, the Court entered an order approving the Interagency Plan. The order also set out the specific issues on which it wished the parties – including the plaintiffs in *Ms. L* – to meet and confer, including: (1) whether removed parents have a right to be reunified with their children in the United States, (2) class certification in *M.M.M.*, and (3) whether the plaintiffs in *M.M.M.* are entitled to pursue asylum requests under § 235 or § 240.

12.    The Court set the meet and confer period at one week, ordering the parties to "propose a briefing schedule" by August 23, 2018, if they were "unable to reach agreement on these issues."

13.    Per the Court's instructions, counsel for Defendants and counsel for the plaintiffs in *Ms. L* and *M.M.M.* met and conferred extensively over the ensuing four weeks – seeking a number of short extensions – to determine whether the parties could negotiate a solution to the claims in *M.M.M.* and the issues identified in the Court's August 17 order. During this process the Hogan Lovells team

- 4 -

remained in constant consultation with attorneys who specialize in representing noncitizen families, including Mr. Govindaiah and Ms. Fluharty.

14.     The negotiations also included counsel for the plaintiffs in *Dora v. Sessions*, No. 18-cv-1938 (D.D.C.), given the close nexus between the issues in *M.M.M.* and the issues in *Dora*. The 29 named plaintiffs in *Dora*, all parents who had been separated from their children and received negative credible fear determinations while separated, alleged that the separation policy denied them of a meaningful opportunity to apply for asylum. Thus, together, the *Ms. L*, *M.M.M.*, and *Dora* cases presented the question of what asylum-related process is due to parents and children who were subject to the government's separation policy.

15.     The proposed settlement agreement was the result of hard-fought, arms-length negotiations between the parties. During these negotiations, the Hogan Lovells team represented the interests of the *M.M.M.* plaintiffs and the proposed class of children, and plaintiffs' counsel in *Ms. L* and *Dora* represented the interests of the proposed class of parents. The substantive provisions of the proposed agreement were the product of repeated exchanges between counsel for the plaintiffs and the government. Agreements were not reached easily, as counsel on both sides vigorously advocated for different terms.

16.     I believe it is in the proposed class's interests to avoid the risks and burden of further litigation of this matter. After considering the benefits that the *M.M.M.* Plaintiffs and the proposed class will receive under the settlement, and the risks of litigation, I have concluded that the terms and conditions of the proposed settlement are fair, reasonable, and in the best interests of the *M.M.M.* Plaintiffs and the proposed class.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

EXECUTED WITHIN THE UNITED STATES ON: October 5, 2018

- 5 -

1

2

3  BY: _/s/ Justin W. Bernick_

4  Justin W. Bernick

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

# EXHIBIT 73

| **Name of Organization** |
| --- |
| Advocates for Basic Legal Equality, Inc. (ABLE) |
| Al Otro Lado |
| American Gateways |
| American Immigration Council (AIC) |
| American Immigration Lawyers' Association (AILA) |
| Americans for Immigrant Justice (AIJ) |
| Asian Services in Action Inc. |
| Association of Pro Bono Counsel (APBCo) |
| Asylum Seeker Advocacy Project (ASAP) |
| Ayuda |
| Bender's Imm. Bulletin Daily |
| Bronx Legal Services |
| Capital Area Immigrants' Rights Coalition (CAIR Coalition) |
| CARECEN |
| Casa Cornelia Law Center |
| Casa María |
| Catholic Charities Archdiocese of New Orleans |
| Catholic Charities Community Services, Archdiocese of New York ~ Immigrant & Refugee Services |
| Catholic Charities of Baton Rouge |
| Catholic Charities of Dallas |
| Catholic Legal Immigration Network, Inc. (CLINIC) |
| Catholic Legal Services |
| Central West Justice Center |
| Children and Family Justice Center - Northwestern Pritzker School of Law Bluhm Legal Clinic |
| CHIRLA |
| City Bar Justice Center |
| Community Legal Services and Counseling Center |
| Community Legal Services in East Palo Alto |
| Connecticut Legal Services |
| DePaul Legal Clinic |
| Diocesan Migrant & Refugee Services, Inc. |
| Dolores Street Community Services |
| E.L. Nelson, Esq. |
| ECBA Volunteer Lawyers Project, Inc. |
| Esperanza Immigrant Rights Project of Catholic Charities of Los Angeles, Inc. |
| Farmworker Legal Aid Clinic |
| Federal Bar Ass'n, Imm. Law Section |
| Georgia Asylum and Immigration Network (GAIN) |
| HIAS |
| HIAS Pennsylvania |
| Hofstra Youth Advocacy Clinic |
| Human Rights First |
| Immigrant Defenders Law Center |
| Immigrant Justice Clinic UW Madison |

| |
|---|
| Immigrant Law Center of Minnesota |
| Immigrant Legal Center (ILC) |
| Jewish Family and Children's Services (JFCS) |
| Justice and Mercy Legal Aid Clinic |
| Justice for Immigrants & Familes Project at the Florence Immigrant & Refugee Rights Project |
| Justice For Our Neighbors Michigan |
| Justice For Our Neighbors Network |
| Justice In Motion |
| Keker, Van Nest & Peters LLP |
| Kids in Need of Defense (KIND) |
| Law Office of Helen Lawrence |
| Law Office of Sheila Starkey Hahn |
| Lawyers' Committee for Civil Rights of the San Francisco Bay Area |
| Legal Aid of North Carolina's Battered Immigrant Project (BIP) |
| Legal Aid Society of Cleveland |
| McCrummen Immigration Law Group |
| Medical Legal Partnership Colorado |
| Michigan Immigrant Rights Center |
| Migrant and Immigrant Community Action (MICA) Project |
| Migrant Center for Human Rights |
| Mobilization for Justice, Inc. |
| Mobilization for Justice, Inc. - Kinship Caregiver Law Project |
| National Council of La Raza (NCLR) |
| National Immigrant Justice Center (NIJC) |
| National Immigration Law Center (NILC) |
| National Immigration Project of the National Lawyers' Guild (NIP) |
| Nebraska Appleseed |
| Nebraska Immigration Legal Assistance Hotline (NILAH) |
| Northwestern Law School Children and Family Justice Center |
| OneJustice |
| ProBAR |
| Public Counsel |
| Refugee and Immigrant Center for Education and Legal Services (RAICES) |
| Richard Frankel |
| Rocky Mountain Immigrant Advocacy Network |
| Santa Fe Dreamers Project |
| Southern Poverty Law Center (SPLC) |
| Southwestern Law School Pro Bono Removal Defense Program |
| St. Francis Community Services/Catholic Legal Assistance Ministry |
| Staten Island Legal Services |
| Tahirih Justice Center |
| Tahirih Justice Center- San Francisco Bay Area Office |
| Tahirih Justice Center, Houston Office |
| Texas Civil Rights Project (TCRP) |
| The Advocates for Human Rights |

| |
|---|
| The Door - A Center of Alternatives, Inc. |
| The Florence Project |
| The Gibson Report |
| The International Institute of Akron |
| The Vera Institute of Justice (Vera) |
| University of Detroit Mercy School of Law |
| University of Texas Law School Immigration Clinic |
| UnLocal, Inc. |
| USC Gould School of Law Immigration Clinic |
| USCRI North Carolina |
| Washington University Immigration Law Clinic |
| Western State College of Law Immigration Clinic |
| Women's Refugee Commission |

# NOTICE OF PROPOSED SETTLEMENT and SETTLEMENT ELECTION FORM

**If you were separated from your parent(s) or child(ren) at the border, your rights may be affected by a proposed class action settlement.**

A proposed settlement has been reached in class action lawsuits regarding the mechanism by which certain separated parents and children may pursue asylum or other protection in the United States. The lawsuits are *M.M.M. v. Sessions*, Case No. 3:18-cv-1832-DMS (S.D. Cal.), *M.M.M. v. Sessions*, Case No. 1:18-cv-1835-PLF (D.D.C.), *Ms. L. v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.), and *Dora v. Sessions*, Case No. 18-cv-1938 (D.D.C.).

## What are these lawsuits about?

These lawsuits were brought on behalf of parents and children who were separated after being apprehended by the U.S. government at or near the border. The plaintiffs allege that the U.S. government failed to give these parents and children an adequate opportunity to pursue asylum or other protection from removal in the United States. The Judge overseeing the lawsuits temporarily stopped removals of families that were reunited after being separated at the border. The plaintiffs and the U.S. government subsequently agreed to a settlement, which will grant both parents and children access to procedures to seek asylum or other protection from removal in the United States.

## Who is included?

**A parent may be a member of the Parent Settlement Class if he or she:**
- Is an adult alien parent who entered the United States at or between designated ports of entry with their child(ren),
- Was detained in immigration custody by the Department of Homeland Security (DHS),
- Has a child who was or is separated from him or her and who was in DHS custody, Office of Refugee Resettlement (ORR) custody, or ORR foster care on or after June 26, 2018,
- Was ordered to be reunified under the Court's Order in *Ms. L. v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018); and
- Has been continuously physically present in the United States since June 26, 2018.

**The agreement also reflects the parties' agreement with regard to individuals who fit the parent class description as defined above, but have been removed from the United States, as well as the rights of members of the children class (defined below) whose parents have been removed.**

1

**A child may be a member of the Child Settlement Class if he or she:**

- Is an alien child under the age of 18 as of the effective date of the agreement, who entered the United States at or between designated ports of entry with an alien parent,
- Was separated from their parent(s),
- Has been or will be reunified with their parent(s) under the preliminary injunction issued in *Ms. L. v. U.S. Immigration and Customs Enforcement*, No. 18-428 (S.D. Cal. June 26, 2018), and
- Has been continuously physically present in the United States since June 26, 2018.

### What relief does the settlement provide?

Among other things, the Settlement Agreement requires that, for parents who initially received a negative credible fear finding and have a final order of expedited removal, the U.S. government will conduct a good faith review of parents' prior credible fear findings,[1] which includes meeting with an asylum officer to present additional information. For the children of such parents who have been issued a Notice to Appear (NTA) or are in removal proceedings, the NTA will be cancelled or the government will move to dismiss the removal proceedings, and the child will be placed into expedited removal along with the parent.  The child will also be referred for a credible fear interview if the child expresses a fear of return.  If the parent if found to have a credible fear, then both parents and children will be issued a NTA to appear before an immigration judge, where they will be able to pursue asylum or other protection claims before the immigration court. If parents do not receive a positive credible fear finding on review, then the U.S. government will provide their children with their own credible fear interview. If children receive a positive credible fear finding, they and their parents will be issued a NTA to appear before an immigration judge, where they will be able to pursue asylum or other protection claims before the immigration court. Additional or other procedures apply where parents and children have been released from detention, where parents are subject to reinstated or final orders of removal, or where parents already have been removed. The Settlement Agreement does not provide any monetary payments to class members.  Parents and children who fall into these categories should read the final Settlement Agreement and/or consult with counsel to understand what rights they may have under the Agreement.  If the Settlement Agreement is approved, class members will be prohibited from seeking any additional immigration- or asylum-related injunctive, declaratory, or equitable relief related to allegations made in these lawsuits. All of the terms of the proposed Settlement are subject to Court approval at a "Final Approval Hearing" which is explained below. A copy of the Settlement Agreement is attached to this notice.

---

[1]   "Credible fear" refers to the process by which those individual subject to expedited removal may seek asylum in the United States, in which an alien in expedited removal who has a fear of returning home is interviewed by a U.S. government asylum officer to determine whether they can establish a credible fear of persecution or torture if they are returned to their home country. If the alien receives a positive credible fear determination, he or she can file an application for asylum before the immigration court.

**You have the right to waive relief under the settlement.**

Parents or children who wish to waive their rights under this Settlement Agreement and be promptly removed to their country of origin, have the right to do so by executing the below form. Any decision to return to your country of origin must be made affirmatively, knowingly, and voluntarily. Failure to return this form will not be construed as a waiver of your rights under the Settlement Agreement.

**Instructions:** This form must be read to the class member in a language that he/she understands. The class member must indicate which option he/she is choosing by signing the appropriate box below. If the class member is a child and lacks capacity or is under age 14, this form must be signed by the child's parent or legal representative. Separate forms must be completed for each family member. ***Completed forms must be mailed or emailed to counsel for the appropriate proposed class set forth below.***

> **I request to remain in the United States to seek relief from removal.** I understand that the class action settlement does not guarantee that I will receive relief from removal.
> **Name (printed):** _____
> **Signature:** _____

> **I am affirmatively, knowingly, and voluntarily requesting removal to my country of origin as soon as possible.** I understand that I am waiving any rights to remain in the United States to pursue the procedures set forth in the settlement, including any right to apply for asylum or other protection from removal.
> **Name (printed):** _____
> **Signature:** _____

**Your Information:**
   Name: _____
   Date of Birth: _____
   A#: _____
   Country of citizenship: _____
   Detention facility (if applicable): _____
   Address: _____
   Telephone number: _____

   Parent(s)/child(ren) name(s): _____
   Parent(s)/child(ren) A#(s): _____
   Parent(s)/child(ren) address: _____
   Parent(s)/child(ren) telephone number: _____

**Attorney Certification:** I represent _____ (name) in his/her immigration proceedings. I have advised him/her (and/or his/her parent or legal representative) of his/her rights under the proposed class action settlement in _____ (language).
   Attorney signature: _____
   Attorney name: _____
   Date: _____
   Attorney telephone: _____
   Attorney address: _____

3

**You have the right to object to the settlement.**

Although you may waive your rights to seek relief under this Settlement Agreement, you cannot exclude yourself from the settlement. However, you can ask the Court to deny approval by filing an objection. If the Court denies approval, the lawsuits will continue. If that is what you want to happen, you must object. You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. All written objections and supporting papers must (a) clearly identify the following case names and numbers: *M.M.M. v. Sessions*, Case No. 3:18-cv-1832-DMS (S.D. Cal.) and *Ms. L. v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Southern District of California, San Diego Courthouse, 333 West Broadway, San Diego, CA 92101, or by filing them in person at any location of the United States District Court for the Southern District of California, and (c) be filed or postmarked on or before November 2, 2018.

**When and where will the Court decide whether to approve the settlement?**

The Final Approval Hearing will be held on November 15, 2018, at 1:00 PM at Courtroom 13A, 13th Floor, Suite 1310, 333 West Broadway, San Diego, CA 92101, to determine the fairness, reasonableness, and adequacy of the proposed Settlement. The date may change without further notice to the class.

**Where can I get more information?**

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the attached Settlement Agreement, by contacting class counsel identified below, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at *https://ecf.casd.uscourts.gov*, or by visiting the office of the Clerk of the Court for the United States District Court for the Southern District of California, San Diego, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

**Who represents the Classes?**

*Proposed Class Counsel for Child Class:*
Justin W. Bernick
Zachary W. Best
T. Clark Weymouth
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (888) 365-1112
Fax: (202) 637-5910
MMMSettlementQuestions@hoganlovells.com

*Proposed Class Counsel for Parent Class (Parents in the United States):*
Wilson G. Barmeyer
John H. Fleming
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street NW, Suite 700
Washington, DC 20001
Telephone:  (202) 220-8628
Fax:  (202) 637-3593
parentsasylumclass@eversheds-sutherland.com

Sirine Shebaya
Johnathan Smith
MUSLIM ADVOCATES

Simon Y. Sandoval-Moshenberg
Sophia Gregg
LEGAL AID JUSTICE CENTER

*Proposed Counsel for Removed Parents:*
Lee Gelernt
Judy Rabinovitz
Anand Balakrishnan
Stephen Kang
Spencer Amdur
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
18th Floor
New York, NY 10004
Telephone: (212) 549-2660
Fax:  (212) 549-2654
familyseparation@aclu.org