JOSEPH H. HUNT
Assistant Attorney General
Civil Division
SCOTT G. STEWART
Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
District Court Section, Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4824
Fax: (202) 616-8962
Email: Sarah.B.Fabian@usdoj.gov

*Attorneys for Federal Respondents*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.M.M., et al.<br><br>      Petitioner-Plaintiff,<br><br>   vs.<br><br>JEFFERSON B. SESSIONS III, U.S. Attorney General, et al.,<br><br>     Respondents-Defendants. | Case No. 18cv1832 DMS JLB |
| MS. L,, et al.,<br><br>     Petitioners-Plaintiffs,<br><br>   vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>     Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REQUIRE IMPLEMENTATION OF SETTLEMENT AGREEMENT** |

The Court should deny Plaintiffs' motion seeking immediate and full implementation of a settlement agreement that has not yet surmounted the procedural hurdles erected by Federal Rule of Civil Procedure 23 and the Constitution. Although Defendants already are implementing the agreement to the extent appropriate following preliminary approval—and stand ready to work with Plaintiffs to implement the agreement further—it would be wrong to order the complete implementation that Plaintiffs demand. Instead, the Court should urge Plaintiffs to continue the process of good-faith cooperation and collaboration that characterized the settlement proceedings

1

leading up to preliminary approval. And the Court should encourage Plaintiffs to work with the government to implement (or, as appropriate, prepare to implement) the not-yet-approved settlement agreement in a way that does not circumvent Rule 23 and that accounts for the challenges of a comprehensive and complex bargain. That sort of collaboration—not emergency motions practice or Plaintiffs' abrupt refusal to engage in meet-and-confer efforts of the sort that, for many weeks, had been highly fruitful—will best promote the interests of all involved by ensuring that the agreement is ultimately implemented in a manner that complies with Rule 23 and also gives all parties the benefit of the carefully negotiated bargains contained in the agreement.

## I. BACKGROUND

As the Court is well aware, the parties carefully negotiated the preliminarily approved settlement agreement in the *M.M.M.*, *Ms. L*, and *Dora* cases that was filed with the Court on September 12, 2018. *Ms. L v. ICE*, No. 18-cv-428, ECF 220, Sept. 12, 2018 (S.D. Cal.). In the status conference that followed the filing of that agreement, on September 14, all parties and the Court agreed that it was necessary to follow the processes under Rule 23(e) to provide notice of the settlement, solicit any objections, and obtain final approval of the agreement from this Court. *See Ms. L*, Sept. 14, 2018 Hearing Tr. at 3-8 (S.D. Cal.); *see generally* Fed. R. Civ. P. 23.

While the parties agreed that they should move promptly, Sept. 14, 2018 Hearing Tr. at 3-8, the Court and the parties also agreed that it was important to follow the Rule 23 procedures, *see id.* at 4-7. The government "tentative[ly]" believed that it "could get

moving" on implementation of the agreement consistent with the government's desire to "move things expeditiously but orderly," and said that if it identified impediments to moving forward that it would bring those to the Court's attention. *Id.* at 9:24-10:9. The government "emphasize[d]," however, that—given the extensive work already put in by counsel—it expected "that the Rule 23 issues and those procedural matters can be resolved quite expeditiously . . . and would call for just very, very minimal . . . further work to get approval so that we can all move forward with this plan and get things on the road." *Id.* at 6:12-16. The government reiterated the expectation of "expeditiousness" on obtaining approval. *Id.* at 6:17. The Court responded: "I agree with that. I think moving as quickly as possible in an orderly fashion is the way to go, with, of course, the opportunity for any potential class member to object and be heard under Rule 23." *Id.* at 6:19-22. The Court in turn proposed that the parties submit a motion addressing the Rule 23 issues. *See id.* at 6:23-7:5. Government counsel agreed, understanding the Court's view as follows: "it sounds like Your Honor is envisioning something brief but just covers those key issues, the Rule 23 issues, and approval, proposed class certified, and not something very elaborate or lengthy, just something sufficient." *Id.* at 7:8-12. The Court confirmed that that was its view, emphasizing: "I think what's important is the due process, so the opportunity to be heard if there is someone who is going to object." *See id.* at 7:13-15.

After that status conference, the parties conferred on the content of papers seeking preliminary settlement approval under Rule 23. Plaintiffs drafted the motion seeking preliminary approval. That document was lengthy (the filed version was about 25 pages

3

long), and thus took meaningful time for the government to review. And Plaintiffs' desired timelines, stated in their drafts and in their final motion, were also lengthy. Plaintiffs proposed a timeline for notice, objections, and final approval that spanned about six weeks. In conferring about those papers, Plaintiffs' counsel noted to government counsel the concern that a shorter notice period might not meet governing legal requirements. Recognizing the importance of notice and of the other requirements imposed by Rule 23 and the Constitution, the government did not oppose Plaintiffs' counsel's proposed timeline. Plaintiffs' proposal—filed with the Court on October 5 and now preliminarily approved—provided that objections to the settlement could be postmarked as late as November 2 and that the final approval hearing would not occur until November 15.

After the September 14 status conference, the government made good on its pledge of swift action by working with Plaintiffs' counsel to finalize the materials necessary for approval and implementation of the agreement, including the forms that would allow class members to use the procedures contemplated by the settlement agreement or waive those procedures. The government also worked to identify groups of individuals who fit within the prescribed categories for relief, so that it can quickly implement the agreement upon final approval. *See Ms. L*, Joint Status Reports, ECF 238 at 7-8, and ECF 243 at 9-10. Those matters are important—as the Court knows, the settlement agreement contemplates extensive but differing procedures for differently situated class members. The government has sought to ensure that each class member is ultimately afforded appropriate relief.

On Tuesday of last week, for the first time, Plaintiffs asked whether interviews under the agreement could begin last week. *See* Oct. 9, 2018 email from J. Bernick to S. Fabian, attached hereto as Exhibit A. In response, the government stated that it was "moving forward the pieces that we appropriately can," but expressed concern with moving forward to provide all of the relief afforded to class members under the agreement in the absence of the corresponding assurance that the government would also receive the benefit of its bargains under the agreement—"the lifting of the TRO, finality, dismissal of the various cases, and the like"—many of which are tied to receiving final approval of the settlement agreement. Exhibit A, Oct. 10, 2018 email from S. Stewart to J. Bernick. *M.M.M.* counsel responded that this was "unacceptable," accused the government of "directly contradict[ing]" its previous representations to the Court and to Plaintiffs, and stated that if the government did not immediately move forward with full implementation of the agreement then Plaintiffs would seek emergency relief with the Court. *See* Exhibit A, Oct. 10, 2018 email from J. Bernick to S. Stewart. Plaintiffs' counsel also claimed that "[t]he government is getting both the benefits and the burdens of the agreement," but did not address the government's specific concerns, particularly regarding dismissal of the pending class claims that would remain ongoing absent final approval of the settlement agreement by this Court. *Id.* The government responded by explaining that it was not stating that it would not start implementing the agreement, and that it remained committed to "moving forward with implementation to the extent appropriate prior to final approval." Exhibit A, Oct. 10, 2018 email from S. Stewart to J. Bernick. Government counsel

reiterated that the government had identified a reasonable concern regarding the government's ability to obtain the benefit of its bargain under the proposed agreement, and suggested that it "could be fruitful for [Plaintiffs] to work with us to address that concern." *Id.* Plaintiffs' counsel declined to engage in further discussion to address that concern, stated that "this issue is not up for debate, and we will not agree to mere implementation 'to the extent appropriate,'" and said that Plaintiffs would file their emergency motion if the government did not agree by 5 pm Pacific on Wednesday, October 10, to immediately and fully implement the agreement. *See* Exhibit A, Oct. 10, 2018 emails from J. Bernick to S. Stewart. At no time during this exchange did Plaintiffs' counsel state that they would immediately dismiss their pending lawsuits in the D.C. district court or otherwise dismiss claims that would be resolved under the settlement agreement. Given the government's concerns and Plaintiffs' counsel's refusal to consider a solution short of complete acceptance of Plaintiffs' counsel's demand, the government accepted that Plaintiffs would file an emergency motion.

Plaintiffs filed their emergency motion later that evening, claiming that the government was "go[ing] back on its commitment" to implement the settlement agreement and asking the Court to "order the government to proceed with implementing the parties' settlement agreement." Memorandum, ECF 77-1 at 2, 5 ("Mem."). In their motion, Plaintiffs claim that the government had plainly committed to fully implementing the settlement agreement in the absence of final approval, and assert that the government's current position is that it would not move forward with implementing the settlement

"other than to accept class members' executed notice and waiver forms." Mem. 3. Plaintiffs' motion does not describe the bulk of the October 10 communications between counsel that are summarized above. Nor does the motion note the government's willingness to confer to find a solution that would address the government's concerns, Plaintiffs' unwillingness to confer with the government, the government's other implementation efforts, or the government's stated concerns with Plaintiffs' demand of immediate and full implementation. Plaintiffs' motion also does not address the requirements of Rule 23 and the Constitution, does not address the possibility that final approval might not occur, and does not acknowledge the government's concern that a significant portion of the benefits accruing to the government under the agreement are not guaranteed in the absence of final approval. Plaintiffs' motion suggests that the government wrongly delayed the filing of the Rule 23 submissions, and claims that Plaintiffs "tolerated this delay" only because they expected the government to immediately and fully implement the settlement agreement before final approval. Mem. 5.[1] The Court directed the government to respond to Plaintiffs' motion by today. *E.g.*, *Ms. L*, ECF 271.

---

[1] Hours after filing the present emergency motion, Plaintiffs' counsel (Mr. Bernick) threatened to file another emergency motion with the Court. The basis for this emergency motion, according to the email sent to government counsel, was that Defendants had emailed address information for class members to one attorney for Plaintiffs, and had asked that attorney to share the information with counsel for other Plaintiffs after ensuring that each person receiving the information agreed to be bound by the protective order. (As the Court is aware, this case involves the exchange between counsel of a significant

On Friday, at 3 pm Eastern, Plaintiffs' counsel stated in an email to government counsel that Plaintiffs "would certainly prefer to resolve this implementation issue outside of court if possible, and would be willing to withdraw our motion if we can agree on a timeline for moving forward with implementing asylum interviews (and removals) as specified in the agreement." Exhibit B, Oct. 12, 2018 email from J. Bernick to S. Fabian. Because government counsel's response to Plaintiffs' emergency motion was due the next business day, government counsel explained to Plaintiffs' counsel that, if they wanted "to attempt to resolve the implementation issue outside of court," then they should "withdraw [their] emergency motion or ask the Court to hold it in abeyance." Exhibit B, Oct. 12, 2018 email from S. Stewart to J. Bernick. Otherwise, the government explained, it "need[ed] to devote its efforts to preparing the response that the Court requested." *Id.* Plaintiffs' counsel declined to withdraw their motion or seek to hold it in abeyance. Exhibit B, Oct. 12, 2018 email from J. Bernick to S. Stewart. Indeed, although Plaintiffs' counsel had expressed a desire "to resolve this implementation issue outside of court if possible," counsel's response made clear that the only "outside of court" resolution that

---

amount of sensitive information, much of which is subject to the Court's protective order.) Mr. Bernick contended that in proceeding this way, Defendants were "refus[ing]" to provide the required information to all counsel. Exhibit B, Oct. 11, 2018 email from J. Bernick to S. Fabian. He threatened to bring the matter to the Court on an emergency basis. To resolve this issue without emergency motions practice, counsel for Defendants forwarded the emails containing the requested information to Mr. Bernick.

Plaintiffs would accept was the government's acquiescence to Plaintiffs' demand of full and immediate implementation.[2] *Id.*

## II.    ARGUMENT

Plaintiffs ask this Court to order the government to fully implement the proposed settlement agreement prior to completion of the processes for final approval that are required under Rule 23(e) and the Constitution. The Court should deny Plaintiffs' motion and should instead encourage Plaintiffs to work collaboratively with the government to achieve what the parties appropriately can prior to final approval. Any other approach would render the processes under Rule 23(e) meaningless and would cut short the due-process requirements that all involved—especially the class members who Plaintiffs' counsel now represent—should consider critical. While Defendants share the goal of moving quickly, so long as the Rule 23(e) processes are ongoing the agreement ultimately may not be approved. Any implementation of the proposed agreement that occurs prior to final approval must account for that reality and otherwise respect the mandates of Rule 23 and the Constitution.

---

[2] Although Plaintiffs' counsel were unwilling to confer with the government to seek a resolution short of emergency motions practice, Plaintiffs' counsel did find time to speak with media. In a story that ran on October 13 on a blog called Reveal, Mr. Bernick disparaged government counsel and also took the unusual step of reading to a reporter from an email that government counsel had sent to Mr. Bernick. Patrick Michels, The Trump administration agreed to new asylum hearings for separated families. Instead, another month in detention, (Oct. 13, 2018) (available at https://www.revealnews.org/blog/the-trump-administration-agreed-to-new-asylum-hearings-for-separated-families-instead-another-month-in-detention).

Several points confirm the soundness of Defendants' proposed approach of collaboration and implementation to the extent appropriate prior to final approval—and the unsoundness of the Plaintiffs' emergency demand that they receive all benefits of the agreement with no assurance that the government will obtain the central benefits for which it bargained. Critically, Defendants believe that they can reach agreement to partially implement the settlement's asylum-related procedures for detained families, even before final approval. Such agreement for partial implementation, however, would require collaboration and cooperation with Plaintiffs—not an emergency motion demanding a one-sided order for Plaintiffs.

*First*, the government is implementing the agreement to the extent that it prudently can—and, as it indicated to Plaintiffs' counsel, it stands ready to work with Plaintiffs to find other ways to implement or prepare to implement the agreement, even before final approval. As indicated in the September 20 and 27 status reports, even before preliminary approval the government got to work right away—identifying groups of individuals who fit within the categories for relief under the agreement so that it can quickly move forward with the procedures under the agreement when final approval of the agreement is obtained. *See Ms. L.*, Joint Status Reports, ECF 238 at 7-8, and ECF 243 at 9-10. Defendants worked with Plaintiffs to prepare and finalize the forms for opting in or waiving the agreement's procedures, so that class members' wishes could be effectuated swiftly when appropriate. And, even before Plaintiffs' counsel reached out last week, Defendants were and still are otherwise working to identify any other pieces of the

agreement that can appropriately be implemented prior to final approval, while still ensuring that if the agreement does not receive final approval then there will not be a need to significantly unwind procedures that have occurred for various class members, and that the government will not have provided all of the process that it agreed to in the agreement while remaining subject to ongoing class claims whose dismissal is dependent on the agreement's final approval. Given all of these points, there is no merit to Plaintiffs' assertions that Defendants are "not committed to begin implementation immediately," Mem. 5, or that Defendants "will *not* move forward with implementing the settlement other than to accept class members' executed notice and waiver forms," *id.* at 3.

On top of all of this, and critically, Defendants believe that they can reach agreement to partially implement the settlement agreement's procedures for detained families, even before final approval. Defendants share the desire of Plaintiffs and the Court to move forward in finalizing and implementing the agreement as quickly as possible, while respecting the processes that must be provided under Rule 23 and the Constitution (processes that protect not just the government but also the many class members that Plaintiffs' counsel now represent).[3] Defendants were willing to work with

---

[3] Plaintiffs assert that Defendants caused unnecessary delay in the filing of the Rule 23 submissions. *See* Mem. 5. That is not so. Defendants proceeded in good faith at all times. Defendants carefully considered the documents that were sent to them by Plaintiffs in light of the important procedural and constitutional concerns that they address, and returned edits to Plaintiffs as quickly as possible given the large number of agencies and operators involved in the agreed-upon processes—who all had a strong need to review the documents with care. Defendants also made no objection or edits at any time to the

Plaintiffs on a solution, and thus suggested last week to Plaintiffs' counsel that further conversation between the parties regarding resolution of these concerns would likely be "fruitful." Exhibit A, Oct. 10, 2018 email from S. Stewart to J. Bernick. Plaintiffs pretermitted such discussions by taking the view that "this issue is not up for debate, and we will not agree to mere implementation 'to the extent appropriate,'" and then filing an emergency motion hours later. Exhibit A, Oct. 10, 2018 emails from J. Bernick to S. Stewart. But the government stands ready to hold such discussions and to find orderly solutions. The Court should encourage Plaintiffs to join the government in those discussions. An agreement to partially implement the settlement's procedures would require Plaintiffs' collaboration and cooperation.

*Second*, immediate and full-scale implementation without final approval of the agreement—or even any assurances that the parties will all receive the benefits for which they bargained—would be gravely unfair. Plaintiffs cite no authority to support the full implementation of a settlement agreement prior to the final approval. Such implementation would give class members all of the benefits of the agreement with no guarantee that the government would, in turn, receive the central benefits of its bargain. Notably, Plaintiffs provide no assurances that objections to the settlement will not be made, and they could not reliably do so. During the course of negotiations, Plaintiffs'

---

timelines for notice and approval that were suggested entirely by Plaintiffs. Defendants agree with the Court that the Rule 23 materials were "generated through, what is obvious, an enormous amount of work and collaboration." Oct. 9, 2018 Hearing Tr. at 3:25-4:1. Plaintiffs did not dispute the Court's assessment during the status conference.

counsel indicated that some parties may object if the government did not agree to certain provisions to which the government ultimately did not end up agreeing. Defendants thus knew last week that there is a very real likelihood that some people may object to the settlement agreement.[4] While, as the Court pointed out, this ultimately may be a small number of individuals, until those objections are received and considered it is impossible to know what their ultimate impact will be on the Court's ability to approve the settlement agreement. In light of the possibility that the agreement ultimately may not be approved, or may not be approved in its current form, and considering the carefully negotiated terms of the agreement as currently proposed, Plaintiffs' request for the Court to ignore Defendants' concerns is unreasonable. Defendants have no assurance that, absent final approval of the agreement and the corresponding dismissal of the relevant class claims, they will not have to proceed to face class-action litigation on the issues that would otherwise be resolved by the settlement agreement.

At the same time, if Plaintiffs prevail on their motion, by the time the question of final approval under Rule 23(e) is resolved Defendants likely will have provided processes designed to resolve those issues to a significant number of putative class members. Resolution of these class claims is a significant part of the benefit bargained for by Defendants, and Defendants should not be required to provide the agreed-to processes

---

[4] Those expectations have proven true, as at least one individual has already attempted to submit an objection. *See* Notice of Filing Objection to the Proposed Settlement in *Ms. L. v. Sessions, et al.*, *Martinez-Martinez v. U.S. Immigration and Customs Enf't*, No. 1:18-cv-02231-PLF (D.D.C.), ECF 9.

to the benefit of Plaintiffs absent any assurance that they will receive their bargained-for benefit in return. Relatedly, in the absence of final approval, Defendants have no assurance that class members who proceed to receive relief under the terms of the agreement as currently proposed, if unsuccessful in their asylum claims, would not later claim entitlement to relief under any class claims that may end up going forward if final approval is not obtained. Because Defendants are entitled to assurance that they will receive the benefits of their bargains struck in the carefully negotiated proposed settlement agreement, the Court should not order the relief requested by Plaintiffs, but rather should require the parties to meet and confer to see if they can resolve the parties' respective concerns in a way that is orderly and follows the law.

*Third*, full-scale implementation of the agreement is inconsistent with Rule 23, the Constitution, and the agreement's plain terms. Where, as here, a court has granted preliminary approval of a settlement, final approval of the settlement is contingent on a determination that the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n. of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). This requirement of Rule 23(e) protects the "'unique due process concerns for absent class members.'" *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ("[S]ettlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members."

(citation and internal quotation marks omitted)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("[S]ettlement class actions present unique due process concerns for absent class members . . . ."). Notably, courts have rejected final approval of class action settlements for due-process concerns. *See*, *e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (applying due-process concern in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011), to vacate a non-opt-out class and remand for further consideration); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-03395-JF, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (district court on remand provided for additional notice to the class, including "the mailing of more than 282,000 class notices regarding the renewed fees motion"). Here, the need for the Court to grant final approval of the parties' settlement agreement—upon independent consideration of the interests of objecting class members and other absent class members who do not object—means that the parties' bargained-for exchange may be rejected. For Defendants to immediately provide all benefits to class members before final approval could result in some class members benefitting to the detriment of others, and Defendants never seeing the benefits of the agreement for which they negotiated. Additionally, the agreement itself premises the timing of various actions by the Defendants on the date of the agreement's final approval. *See, e.g.*, ECF 247, Ex. 68, paragraphs 1.a, 1.b, 1.c, 6. While paragraph 1.g of the agreement does relate the timing of the notice of orientation to the time that an individual provides waiver under the agreement, it is not clear how this provision could actually be triggered before the agreement is ever approved, and it is potentially

15

problematic for the government to provide orientation to individuals where there might be a meaningful gap of time between that orientation and the interview itself while final approval of the agreement is obtained. Thus, at a minimum, this is an example of an area where the parties would benefit from further discussion to determine if there is, in fact, a preferable way to move forward with this provision of the agreement even where other provisions may be on hold until the agreement is finally approved.

If Plaintiffs' counsel insist on emergency motions practice over collaboration, then we all (the Court, the government, and Plaintiffs) have a hard slog ahead. Implementing this comprehensive and complex settlement will require continued understanding and cooperation between the parties—particularly as challenges arise for the parties. Indeed, Plaintiffs' counsel have already indicated to the government that they have failed to meet their October 12 deadline for providing notice to non-detained class members. The government declines to disparage Plaintiffs for their difficulties on that score, but rather has worked with Plaintiffs to assist them in providing notice. The government recognizes that implementing an agreement of this magnitude (and with this many interested parties) presents challenges, and that before turning to the Court with a dispute, the parties should attempt to find a resolution through informal meet-and-confer efforts.[5] Although

_____

[5] Plaintiffs fault the government for "never [bringing] any concerns" about prompt implementation "to the Court's attention." Mem. 3. But Plaintiffs did not demand immediate and complete implementation until the middle of last week. And this Court has repeatedly encouraged the parties to resolve matters informally (or to attempt to do so). Government counsel attempted to take such an informal path, but Plaintiffs' counsel was

Plaintiffs' counsel declined to use that approach in seeking emergency relief here, Defendants continue to believe that that is the best option—not just on the matter now before the Court, but also on many other challenges of implementation that could arise as the parties implement the agreement.

In sum, given the legal, practical, and equitable points set forth above, the sound approach here is for the Court to deny Plaintiffs' motion and to encourage Plaintiffs to return to working collaboratively with the government to implement the agreement to the extent appropriate, recognizing the government's legitimate concerns. In these cases, that collaborative and cooperative approach has already produced (among other things) a comprehensive reunification plan, a comprehensive settlement agreement, comprehensive Rule 23 submissions, and a highly successful reunification effort—successes that the Court has applauded. That approach, the government believes, is likely to yield further success here. As explained above, the government has already undertaken extensive implementation and preparation even in the absence of final approval. The government stands ready, moreover, to work with Plaintiffs on further implementing the agreement in an appropriate way. As noted, before Plaintiffs filed their emergency motion, the government explained its concerns to Plaintiffs and stated that it might "be fruitful for [Plaintiffs] to work with us to address that concern." Exhibit A, Oct. 10, 2018 email from S. Stewart to J. Bernick. Plaintiffs' counsel rejected that approach, stating that it would not willing to do so.

accept nothing less than all of Plaintiffs' benefits of the bargain, right away: "this issue is not up for debate, and we will not agree to mere implementation 'to the extent appropriate.'" Exhibit A, Oct. 10, 2018 email from J. Bernick to S. Stewart. The Court should encourage Plaintiffs to return to the proven approach of collaboration and cooperation. The government stands ready to work with them.

But Plaintiffs cannot have it both ways: They can pursue emergency relief whenever they are displeased with a particular point of compliance or implementation—or they can first meet and confer with the government to find a solution. They cannot do both. Once Plaintiffs have sought emergency relief, the government must work to address and respond to Plaintiffs' emergency motion. The government will not negotiate at the point of a gun. If Plaintiffs wish to devote the next month to emergency motions practice, that is up to them. The government would encourage a different approach—and asks the Court to do the same.

For these reasons, the Court should deny Plaintiffs' emergency motion.

DATED: October 15, 2018              Respectfully submitted,

                                     JOSEPH H. HUNT
                                     Assistant Attorney General
                                     Civil Division

                                     SCOTT G. STEWART
                                     Deputy Assistant Attorney General
                                     Civil Division

                                     WILLIAM C. PEACHEY
                                     Director, District Court Section
                                     Office of Immigration Litigation

18

WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation

BY:      */s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4824
Fax: (202) 616-8962
Email: Sarah.B.Fabian@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2018, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this motion has been served via the Court's CM/ECF system on all counsel of record.

 /s/ Sarah B. Fabian
SARAH B. FABIAN
U.S. Department of Justice

**Fabian, Sarah B (CIV)**

| | |
|---|---|
| **From:** | Bernick, Justin W. <justin.bernick@hoganlovells.com> |
| **Sent:** | Wednesday, October 10, 2018 4:54 PM |
| **To:** | Stewart, Scott G. (CIV); Fabian, Sarah B (CIV); Best, Zachary W. |
| **Cc:** | Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Barmeyer, Wilson; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV) |
| **Subject:** | Re: MMM v. Sessions Meet and Confer |

Scott,

We need to hear back from you by 5:00 PM Pacific or we will file our motion.

Thanks,
Justin

Sent from my iPhone

On Oct 10, 2018, at 12:38 PM, Bernick, Justin W. <justin.bernick@hoganlovells.com> wrote:

> Please confirm that the government will comply with the schedule set forth in paragraph 1(g), as well as the other terms of the agreement, including moving forward with both removals and interviews.  If we do not receive such confirmation, we will file a motion.
>
> I'm happy to talk, or to address a specific scheduling issue the government might have.  But this issue is not up for debate, and we will not agree to mere implementation "to the extent appropriate."  Judge Sabraw already resolved this issue on the record, and if we need him to do so again, we will.  Our clients have been sitting in detention for months as hundreds of others get released.  The process must begin immediately.
>
> ---
>
> **From:** Stewart, Scott G. (CIV) [mailto:Scott.G.Stewart@usdoj.gov]
> **Sent:** Wednesday, October 10, 2018 12:21 PM
> **To:** Bernick, Justin W.; Fabian, Sarah B (CIV); Best, Zachary W.
> **Cc:** Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Barmeyer, Wilson; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV)
> **Subject:** RE: MMM v. Sessions Meet and Confer
>
> I did not say that we are not starting to implement the agreement.  I indicated that we are moving forward with implementation to the extent appropriate prior to final approval.  In many places the agreement itself bases the timing of processing off of the timing of approval.  The government has identified a reasonable concern:  that class members could move through the agreement's processes and have the processes completed—thus clearly getting the benefit of the agreement—yet the government will not have certainty that it gets the corresponding benefit of the final resolution of class members' claims.  It could be fruitful for you to work with us to address that concern.

1

**From:** Bernick, Justin W. [mailto:justin.bernick@hoganlovells.com]
**Sent:** Wednesday, October 10, 2018 11:09 AM
**To:** Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>; Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Best, Zachary W. <zachary.best@hoganlovells.com>
**Cc:** Anand Balakrishnan <abalakrishnan@aclu.org>; Fleming, John <johnfleming@eversheds-sutherland.com>; Lee Gelernt <LGELERNT@aclu.org>; Weymouth, T. Clark <t.weymouth@hoganlovells.com>; Stephen Kang <skang@aclu.org>; Spencer Amdur <samdur@aclu.org>; Daniel Galindo <dgalindo@aclu.org>; Judy Rabinovitz <JRabinovitz@aclu.org>; Simon Sandoval-Moshenberg <simon@justice4all.org>; Barmeyer, Wilson <wilsonbarmeyer@eversheds-sutherland.com>; Sirine Shebaya <sirine@muslimadvocates.org>; Levy, Jennifer <JLevy@legal-aid.org>; Flentje, August (CIV) <AFlentje@CIV.USDOJ.GOV>; Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Subject:** RE: MMM v. Sessions Meet and Confer

Scott,

This is unacceptable.  Your email directly contradicts your representation to Judge Sabraw that the government would begin implementing the agreement now, a representation that Plaintiffs have relied upon (and that we have explained to you that we were relying upon).  It also directly contradicts your attached email from September 9 confirming the government's position that it would implement the agreement, a representation you also made orally to me by phone.

The government is getting both the benefits and the burdens of the agreement – there will be finality for every class member who signs the form.  Individuals who waive their rights can be removed and those who do not waive will proceed with their due process to pursue asylum.

If the government does not move forward with implementing the agreement, we will have no choice but to seek emergency relief with the Court.  Please let us know immediately if this is the government's final position so that we can file an emergency motion.

Thanks,
Justin

---

**From:** Stewart, Scott G. (CIV) [mailto:Scott.G.Stewart@usdoj.gov]
**Sent:** Wednesday, October 10, 2018 10:32 AM
**To:** Bernick, Justin W.; Fabian, Sarah B (CIV); Best, Zachary W.
**Cc:** Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Barmeyer, Wilson; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV)
**Subject:** RE: MMM v. Sessions Meet and Confer

The agreement has not been finally approved yet.  The government is using the waiver information so that it is prepared to move swiftly at the appropriate time.  But we can't start moving people forward at a time when the government has no assurance that it gets the benefits that it bargained for—the lifting of the TRO, finality, dismissal of the various cases, and the like.  We are moving forward the pieces that we appropriately can.  But we can't have a situation where the government provides the class members the agreement's benefits over the next month, only to have the settlement not finally approved and to have the government not get what it was promised.

---

**From:** Bernick, Justin W. [mailto:justin.bernick@hoganlovells.com]
**Sent:** Wednesday, October 10, 2018 9:47 AM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Best, Zachary W.

<zachary.best@hoganlovells.com>; Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>;
**Cc:** Anand Balakrishnan <abalakrishnan@aclu.org>; Fleming, John <johnfleming@eversheds-sutherland.com>; Lee Gelernt <LGELERNT@aclu.org>; Weymouth, T. Clark <t.weymouth@hoganlovells.com>; Stephen Kang <skang@aclu.org>; Spencer Amdur <samdur@aclu.org>; Daniel Galindo <dgalindo@aclu.org>; Judy Rabinovitz <JRabinovitz@aclu.org>; Simon Sandoval-Moshenberg <simon@justice4all.org>; Barmeyer, Wilson <wilsonbarmeyer@eversheds-sutherland.com>; Sirine Shebaya <sirine@muslimadvocates.org>; Levy, Jennifer <JLevy@legal-aid.org>; Flentje, August (CIV) <AFlentje@CIV.USDOJ.GOV>; Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Subject:** RE: MMM v. Sessions Meet and Confer
**Importance:** High

Scott,

We will be sending additional election forms for children detained at Dilley shortly by secure file transfer.

Following up on the below, can you confirm that the government will be providing notice of orientation to these individuals now (no later than 3 days following receipt of these forms per paragraph 1(g) of the agreement) and confirm when interviews will begin?  We need an answer to this question today.

Could you also send us the available contact information for class members today so we can move forward with the notice plan?

Thanks,
Justin

---

**From:** Bernick, Justin W.
**Sent:** Tuesday, October 09, 2018 11:23 AM
**To:** 'Fabian, Sarah B (CIV)'; Best, Zachary W.; Stewart, Scott G. (CIV)
**Cc:** Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Barmeyer, Wilson; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV)
**Subject:** RE: MMM v. Sessions Meet and Confer

Thanks, Sarah.  We will get back to you on the proposal shortly.

In the meantime, we will be sending you a first tranche of executed waiver forms momentarily via secure file transfer.  Two follow up issues:

1.    Can you tell us when the government can begin providing interviews to these class members?  We would like to be in a position to tell Judge Sabraw today that the interviews will begin this week.

2.    Also, since the notice plan contemplates completing notice within just a few days, when do you expect to provide the contact information for child and parent class members we discussed on our last call?  We need to know before the hearing today so that we can make a fair and accurate representation to Judge Sabraw regarding when we might be able to complete the notice process.

Thanks,
Justin

**Fabian, Sarah B (CIV)**

| | |
|---|---|
| **From:** | Bernick, Justin W. <justin.bernick@hoganlovells.com> |
| **Sent:** | Friday, October 12, 2018 5:50 PM |
| **To:** | Stewart, Scott G. (CIV) |
| **Cc:** | Fabian, Sarah B (CIV); Best, Zachary W.; Barmeyer, Wilson; Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV) |
| **Subject:** | RE: MMM v. Sessions Meet and Confer |

Thanks, Scott.  I just wanted to give the government one last opportunity to agree to implement the agreement, consistent with your commitment to both plaintiffs and the Court.  Since the government's position apparently remains unchanged, we obviously will not withdraw our motion.

---

**From:** Stewart, Scott G. (CIV) [mailto:Scott.G.Stewart@usdoj.gov]
**Sent:** Friday, October 12, 2018 5:39 PM
**To:** Bernick, Justin W.
**Cc:** Fabian, Sarah B (CIV); Best, Zachary W.; Barmeyer, Wilson; Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV)
**Subject:** RE: MMM v. Sessions Meet and Confer

If you want to attempt to resolve the implementation issue outside of court, then you should withdraw your emergency motion or ask the Court to hold it in abeyance—today.  Otherwise, the government needs to devote its efforts to preparing the response that the Court requested.

---

**From:** Bernick, Justin W. [mailto:justin.bernick@hoganlovells.com]
**Sent:** Friday, October 12, 2018 2:57 PM
**To:** Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>
**Cc:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Best, Zachary W. <zachary.best@hoganlovells.com>; Barmeyer, Wilson <wilsonbarmeyer@eversheds-sutherland.com>; Anand Balakrishnan <abalakrishnan@aclu.org>; Fleming, John <johnfleming@eversheds-sutherland.com>; Lee Gelernt <LGELERNT@aclu.org>; Weymouth, T. Clark <t.weymouth@hoganlovells.com>; Stephen Kang <skang@aclu.org>; Spencer Amdur <samdur@aclu.org>; Daniel Galindo <dgalindo@aclu.org>; Judy Rabinovitz <JRabinovitz@aclu.org>; Simon Sandoval-Moshenberg <simon@justice4all.org>; Sirine Shebaya <sirine@muslimadvocates.org>; Levy, Jennifer <JLevy@legal-aid.org>; Flentje, August (CIV) <AFlentje@CIV.USDOJ.GOV>; Robins, Jeffrey (CIV) <jerobins@CIV.USDOJ.GOV>
**Subject:** RE: MMM v. Sessions Meet and Confer

Scott,

We recently heard that officials have been telling detainees that they may receive interviews as early as next week under the settlement.  Is this true?

Also, I understand that Zach and Wilson discussed the implementation issue with Sarah yesterday.  There was some indication that the government did not previously appreciate Plaintiffs' position that moving forward with implementation would give the government finality for class members who receive process under the agreement, permitting <u>both</u> removals and asylum claims to proceed.

We would certainly prefer to resolve this implementation issue outside of court if possible, and would be willing to withdraw our motion if we can agree on a timeline for moving forward with implementing asylum interviews (and removals) as specified in the agreement.  If you would like to discuss this further, please let us know.


Thanks,
Justin


---

**From:** Bernick, Justin W.
**Sent:** Thursday, October 11, 2018 11:20 AM
**To:** Stewart, Scott G. (CIV)
**Cc:** Fabian, Sarah B (CIV); Best, Zachary W.; Barmeyer, Wilson; Anand Balakrishnan; Fleming, John; Lee Gelernt; Weymouth, T. Clark; Stephen Kang; Spencer Amdur; Daniel Galindo; Judy Rabinovitz; Simon Sandoval-Moshenberg; Sirine Shebaya; Levy, Jennifer; Flentje, August (CIV); Robins, Jeffrey (CIV)
**Subject:** Re: MMM v. Sessions Meet and Confer

Scott,

If someone refuses to adhere to a commitment they made to me and the court, then, yes, my approach is to verify that this is the party's position and then file a motion.  Sabraw asked you to provide us with contact information the day of the hearing.  On our call prior to filing the motion, you committed to giving us that contact information.  Then Sarah said the government would not do so.  This smacks of bad faith, just like walking back the commitment to us and the court to move forward with implementation.  The motion says we will complete class notice by tomorrow.  We cannot begin the notice process without this information.  Are you going to send it or not?  We have no time - this is an easy question.

Justin

Sent from my iPhone

On Oct 11, 2018, at 10:55 AM, Stewart, Scott G. (CIV) <Scott.G.Stewart@usdoj.gov> wrote:

> Justin -- if your approach going forward will be to threaten an emergency motion whenever you do not immediately get what you want, then you should file your emergency motion.  The government will not reward that sort of behavior and cannot burn its time conferring with someone who embraces that sort of toxic approach.  If you would like to return to a spirit of collaboration, the government of course stands ready to confer with you.  And if you were to work with us in that spirit, the government would expect to resolve this issue -- which we think stems from a good-faith misunderstanding -- promptly and with ease.


-------- Original message --------
From: "Bernick, Justin W." <justin.bernick@hoganlovells.com>
Date: 10/11/18 7:04 AM (GMT-05:00)
To: "Fabian, Sarah B (CIV)" <sfabian@CIV.USDOJ.GOV>
Cc: "Best, Zachary W." <zachary.best@hoganlovells.com>, "Barmeyer, Wilson" <wilsonbarmeyer@eversheds-sutherland.com>, "Stewart, Scott G. (CIV)" <sstewart@CIV.USDOJ.GOV>, Anand Balakrishnan <abalakrishnan@aclu.org>, "Fleming, John" <johnfleming@eversheds-sutherland.com>, Lee Gelernt <LGELERNT@aclu.org>,

"Weymouth, T. Clark" <t.weymouth@hoganlovells.com>, Stephen Kang <skang@aclu.org>,
Spencer Amdur <samdur@aclu.org>, Daniel Galindo <dgalindo@aclu.org>, Judy Rabinovitz
<JRabinovitz@aclu.org>, Simon Sandoval-Moshenberg <simon@justice4all.org>, Sirine
Shebaya <sirine@muslimadvocates.org>, "Levy, Jennifer" <JLevy@legal-aid.org>, "Flentje,
August (CIV)" <AFlentje@CIV.USDOJ.GOV>, "Robins, Jeffrey (CIV)"
<jerobins@CIV.USDOJ.GOV>
Subject: Re: MMM v. Sessions Meet and Confer

Sarah,

We executed the protective orders back in early September.  Please send us the information now,
consistent with Judge Sabraw's request at the hearing.  We do not understand the government's
consistent refusal to provide information directly to MMM counsel.  If you will not do so, then
we will have to add this to the list of emergency issues to raise with Judge Sabraw.

Thanks,
Justin

Sent from my iPhone

On Oct 11, 2018, at 1:21 AM, Fabian, Sarah B (CIV) <Sarah.B.Fabian@usdoj.gov> wrote:

> Zach:
>
> I provided information for both parents and children to Mr. Barmeyer at
> one time and asked him to distribute to the Plaintiffs' counsel group as
> appropriate considering the need for folks who receive the information to
> agree to be bound by the Ms L protective order. If you all are dividing the
> information and tasks of providing notice then feel free to ask him to
> provide you with the information I sent as needed, subject to your also
> agreeing to be bound by the protective order.
>
> Best,
> Sarah
>
>
> Sent from my Verizon, Samsung Galaxy smartphone
>
>
> -------- Original message --------
> From: "Best, Zachary W." <zachary.best@hoganlovells.com>
> Date: 10/10/18 10:10 PM (GMT-07:00)
> To: "Fabian, Sarah B (CIV)" <sfabian@CIV.USDOJ.GOV>, "Barmeyer, Wilson"
> <wilsonbarmeyer@eversheds-sutherland.com>, "Stewart, Scott G. (CIV)"
> <sstewart@CIV.USDOJ.GOV>, "Bernick, Justin W."
> <justin.bernick@hoganlovells.com>
> Cc: Anand Balakrishnan <abalakrishnan@aclu.org>, "Fleming, John"
> <johnfleming@eversheds-sutherland.com>, Lee Gelernt
> <LGELERNT@aclu.org>, "Weymouth, T. Clark"
> <t.weymouth@hoganlovells.com>, Stephen Kang <skang@aclu.org>, Spencer

Amdur <samdur@aclu.org>, Daniel Galindo <dgalindo@aclu.org>, Judy
Rabinovitz <JRabinovitz@aclu.org>, Simon Sandoval-Moshenberg
<simon@justice4all.org>, Sirine Shebaya <sirine@muslimadvocates.org>, "Levy,
Jennifer" <JLevy@legal-aid.org>, "Flentje, August (CIV)"
<AFlentje@CIV.USDOJ.GOV>, "Robins, Jeffrey (CIV)"
<jerobins@CIV.USDOJ.GOV>
Subject: RE: MMM v. Sessions Meet and Confer

Sarah,

I understand that the government has provided Dora/Ms. L counsel with contact
information for the parent class.  We (M.M.M. counsel) have not received that
information or any contact information for the class of children.  Please provide contact
information for members of the child class tomorrow (Thursday) so that we can timely
effect notice.

Thank you,
Zach