UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____
                                    )
MS. L, ET AL.,                      )
                                    )CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS,   )         18CV1626-DMS
                                    )         18CV1832-DMS
VS.                                 )
                                    )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS        )  OCTOBER 16, 2018
ENFORCEMENT ("ICE"), ET AL.,        )  1:00 P.M. CALENDAR
                                    )
          RESPONDENTS-DEFENDANTS.    )
-------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

COUNSEL APPEARING TELEPHONICALLY:


FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                  ANAND BALAKRISHNAN, ESQ.
                                  ACLU IMMIGRANT RIGHTS PROJECT
                                  125 BROAD STREET 18TH FLOOR
                                  NEW YORK, NEW YORK 10004


FOR DEFENDANT:                    SCOTT STEWART, ESQ.
                                  SARAH B. FABIAN, ESQ.
                                  U.S. DEPARTMENT OF JUSTICE
                                  OFFICE OF IMMIGRATION LITIGATION
                                  P.O. BOX 868
                                  BEN FRANKLIN STATION
                                  WASHINGTON, DC 20044


ALSO APPEARING:                   JUSTIN W. BERNICK, ESQ.
                                  JENNIFER LEVY, ESQ.
                                  ZACHARY BEST, ESQ.
                                  SIRINE SHEBAYA, ESQ.
                                  WILSON BARMEYER, ESQ.
                                  BETH KRAUSE, ESQ.

1   SAN DIEGO, CALIFORNIA – TUESDAY, OCTOBER 16, 2018 – 1:05 P.M.

2                          *   *   *

3            THE CLERK:  NO. 16 ON CALENDAR, CASE NO. 18CV0428,

4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5   A STATUS CONFERENCE.

6            THE COURT:  GOOD AFTERNOON, COUNSEL.  THIS IS JUDGE

7   SABRAW.

8            I HAVE AN INDICATION OF THE FOLLOWING ATTORNEYS:  IN

9   MS. L. I HAVE MR. GELERNT AND MR. BALAKRISHNAN; GOVERNMENT

10  COUNSEL SARAH FABIAN, SCOTT STEWART; FOR NTC BETH KRAUSE; FOR

11  MMM ZACHARY BEST, JUSTIN BERNICK; AND DORA, I HAVE SIRINE

12  SHEBAYA, AND WILSON BARMEYER.

13           THE CLERK:  JENNIFER LEVY IS ALSO HERE NOW.

14           THE COURT:  JENNIFER LEVY PRESENT ON NTC.

15           I HAVE READ ALL OF THE STATUS REPORTS, AS WELL AS

16  THE MOTION, OPPOSITION AND REPLY ON THE EMERGENCY MOTION.

17           LET'S START FIRST WITH THE STATUS IN MS. L.

18           MAYBE I CAN INQUIRE OF MR. GELERNT, INITIALLY.

19           THERE WERE TWO REPORTS FILED, SO I WANT TO MAKE SURE

20  I HAVE GOT THE RIGHT NUMBERS HERE.

21           WITH RESPECT TO PARENTS NOT YET REACHED, IS THAT

22  NUMBER FIVE OR 10?

23           MR. GELERNT:  FIVE, YOUR HONOR.  SO THAT IS DOWN

24  FROM 10 THE LAST TIME WE SPOKE, SO THAT -- WE ARE PLEASED WITH

25  THAT PROGRESS.  AND SO WE ONLY HAVE FIVE PARENTS REMAINING WHO

```
 1   WE HAVEN'T REACHED, AND WE DO NOT BELIEVE THAT THOSE PHONE
 2   NUMBERS ARE INOPERABLE, OR AT LEAST WE HAVE NO REASON TO
 3   BELIEVE THAT RIGHT NOW.
 4            SO WE ARE STILL TRYING TO REACH THOSE FIVE, AND WE
 5   ARE HOPEFUL WE WILL REACH THOSE NEXT FIVE AND THE NEXT TIME WE
 6   TALK WITH YOU IT WILL BE DOWN TO ZERO.
 7            THE COURT:  YOU CUT OUT THERE FOR JUST A MOMENT.
 8            YOU ARE SAYING THE PHONE NUMBERS YOU HAVE LOOK LIKE
 9   THEY MIGHT BE GOOD NUMBERS?
10            MR. GELERNT:  YES, YOUR HONOR.  I APOLOGIZE.  MY
11   PHONE CUT.  I AM HAVING PROBLEMS, I APOLOGIZE.
12            WE BELIEVE THAT THE NUMBERS ARE GOOD.  WE HAVE NO
13   REASON TO BELIEVE THEY ARE NOT GOOD.  AND SO WE ARE HOPING
14   THAT THE NEXT TIME WE TALK WITH YOU WE WILL BE DOWN TO ZERO.
15            THE COURT:  OKAY.  EXCELLENT.
16            AND THEN ON PARENTS WHOSE PREFERENCES HAVE NOT YET
17   BEEN COMMUNICATED TO THE GOVERNMENT, IS THAT NUMBER EIGHT OR
18   12?
19            MR. GELERNT:  THAT NUMBER IS 15, WE BELIEVE.
20            MY CO-COUNSEL CAN CORRECT ME IF I AM WRONG ABOUT
21   THAT, BUT WE BELIEVE THAT WE HAVE 15 PEOPLE WHO ARE STILL
22   FIGURING OUT WHAT THEY ARE SUPPOSED TO DO.  THERE IS
23   COMPLEXITY WITH THEIR CASE OR WE JUST NEED TO DOCUMENT IN
24   WRITING, THEY HAVE ALREADY MADE A PREFERENCE AND WE NEED TO
25   GET THAT DOCUMENTED IN WRITING TO THE GOVERNMENT.
```

```
 1            THE COURT:  OKAY.  AND THAT SHOULD OCCUR SOON,
 2   SHOULD IT NOT?
 3            MR. GELERNT:  ABSOLUTELY, YOUR HONOR.  THERE IS JUST
 4   A FEW WHERE THERE IS A VERY COMPLEX SITUATION THAT THE CHILD'S
 5   LAWYER HAS BROUGHT TO OUR ATTENTION AND SO WE ARE WORKING
 6   THOSE THROUGH.  BUT THAT NUMBER SHOULD ALSO GO DOWN TO ZERO,
 7   HOPEFULLY, VERY SOON.
 8            THE COURT:  THEN ON FULLY RESOLVED CASES IT WAS 68
 9   ON SEPTEMBER 28, IT IS NOW 116?
10            MR. GELERNT:  FROM OUR COUNT?
11            THE COURT:  YES.
12            MR. GELERNT:  LET ME -- FULLY RESOLVED MEANING THAT
13   WE HAVE GIVEN THE GOVERNMENT THE PREFERENCE, YOUR HONOR?  I AM
14   SORRY.
15            THE COURT:  I THINK -- WELL, I AM JUST LOOKING AT
16   PAGE 12.  MAYBE THIS WAS THE GOVERNMENT'S SUBMISSION.
17            MR. GELERNT:  NO, I BELIEVE THAT IT IS OURS, YOUR
18   HONOR.  YOU ARE RIGHT.
19            THE ONE THING THAT IS CONFUSING THAT CONTINUES TO BE
20   CONFUSING -- AND WE MAY JUST NEED TO STOP REPORTING THIS
21   NUMBER -- IS THOSE NUMBERS AT THE VERY BACK ARE NUMBERS THAT
22   ARE BASED ON THE GOVERNMENT'S ORIGINAL BASELINE OF 414.  AND
23   THEY HAVE SAID THAT THAT BASELINE NUMBER IS NO LONGER CORRECT,
24   SO WE HAVE BEEN WORKING WITH THEM TO UNDERSTAND THAT BASELINE
25   NUMBER.
```

OCTOBER 16, 2018

```
 1              I THINK YOUR HONOR OUGHT TO JUST USE THE NUMBERS,
 2   THE FIRST NUMBERS THAT WE REPORT, WHICH ARE ON PAGE --
 3   BEGINNING 8 AND 9.
 4              THE COURT:  OKAY.
 5              MR. GELERNT:  THAT'S THE BASELINE THE GOVERNMENT
 6   USES.  AND I THINK FOR PRESENT PURPOSES THAT'S PROBABLY THE
 7   BEST -- THOSE ARE PROBABLY THE BEST NUMBERS TO USE.
 8              I APOLOGIZE THAT WE KEEP -- WE ADD THOSE 414 JUST SO
 9   THE COURT CAN SORT OF SEE WHAT THE ORIGINAL BASELINE WAS.  BUT
10   WE ARE -- I THINK FOR PRESENT PURPOSES YOUR HONOR OUGHT TO
11   FOCUS ON THE NUMBERS ON 8 AND 9.
12              THE COURT:  OKAY.  THEN ON PAGE 12 THERE IS THIS
13   REFERENCE I MENTIONED TO RESOLVED CASES.  THESE ARE CHILDREN
14   REUNITED IN COUNTRY OF ORIGIN 79, CHILDREN PLACED WITH SPONSOR
15   37, THE TOTAL IS 116.
16              MAYBE THAT IS THE GOVERNMENT'S --
17              MR. GELERNT:  I THINK THAT IS THE NUMBER ON PAGE 12
18   THAT I WAS MENTIONING FROM THE BASELINE OF 414.  SO IT IS A
19   LITTLE UNCLEAR HOW THE NUMBERS MATCH UP.  I AGAIN APOLOGIZE
20   FOR THIS BEING CONFUSING.
21              I THINK THAT IT IS PROBABLY BEST FOR YOU TO FORGET
22   THOSE NUMBERS UNTIL WE CAN RESOLVE THEM WITH THE GOVERNMENT,
23   AND WE WILL NOT INCLUDE THEM IN THE NEXT REPORT UNTIL WE CAN
24   FIGURE OUT WITH THE GOVERNMENT WHETHER ANY OF THOSE NUMBERS
25   STILL HAVE RELEVANCE.  IT IS BASICALLY THE NUMBERS ON 8 AND 9.
```

OCTOBER 16, 2018

1          **THE COURT:**  OKAY.

2          IT APPEARS THAT WE ARE GETTING CLOSE TO THE END ON

3   THE REUNIFICATION OF PARENTS WHO HAVE BEEN REMOVED WITHOUT

4   CHILD.  IT LOOKS VERY PROMISING THAT ALL PARENTS WILL BE

5   REACHED, THAT THEIR DESIRES WILL BE STATED AND PROVIDED TO THE

6   GOVERNMENT.  AND THAT WITHIN A FEW WEEKS WE OUGHT TO BE IN A

7   POSITION OF HAVING A CONCRETE NUMBER FALLING IN TWO

8   CATEGORIES; ONE WOULD BE PARENTS SEEKING REPATRIATION WITH

9   THEIR CHILD, AND THE OTHER WOULD BE THE LARGER GROUP OF

10  PARENTS WAIVING REUNIFICATION.  AND THEN AT THAT POINT --

11         **MR. GELERNT:**  THAT --

12         **THE COURT:**  GO AHEAD, I AM SORRY.

13         **MR. GELERNT:**  I AM SORRY, YOUR HONOR.  I DIDN'T MEAN

14  TO INTERRUPT.  THIS IS MR. GELERNT.

15         I JUST SAID I THINK THAT YOUR HONOR IS RIGHT ABOUT

16  THAT, THAT WE ARE MOVING TOWARD A CONCLUSION ON THIS SET OF

17  PARENTS.  ABSOLUTELY.

18         **THE COURT:**  ALL RIGHT.  AND THEN ONCE WE HAVE THE

19  NUMBER IDENTIFIED, OF PARENTS SEEKING REPATRIATION WITH THEIR

20  CHILD, THEN WE CAN EASILY MONITOR THE PROGRESS THERE, AND

21  FOLLOW UP AND ENSURE THAT THAT REPATRIATION OCCURS AS QUICKLY

22  AS POSSIBLE.  OKAY.

23         FROM THE GOVERNMENT'S PERSPECTIVE, IS THERE ANYTHING

24  THAT NEEDS TO BE STATED ON THE MS. L. STATUS REPORT?

25         **MR. STEWART:**  YOUR HONOR, THIS IS MR. STEWART.

OCTOBER 16, 2018

1        I THINK, AS YOU SEE FROM THE STATUS REPORT, THINGS

2   ARE PROGRESSING VERY WELL.  WE ARE HAPPY THAT THE NUMBERS OF

3   REUNIFICATIONS ARE OCCURRING SWIFTLY.  AND WE DO AGREE ON THE

4   SWIFT MOVEMENT ON REPATRIATIONS AND THE OTHER EFFECTUATION OF

5   WISHES, AND ARE TAKING APPROPRIATE STEPS THERE.

6        IF I MAY, YOUR HONOR, SPEAK JUST BRIEFLY TO THE

7   CHART THAT IS AT PAGES 11 TO 12 OF THE STATUS REPORT.  THIS IS

8   THE ONE THAT YOUR HONOR WAS ALLUDING TO JUST BRIEFLY.

9        **THE COURT:**  YES.

10       **MR. STEWART:**  MY UNDERSTANDING FROM MR. GELERNT'S

11  DESCRIPTION LAST WEEK WAS THAT HIS VIEW WAS THAT THAT CHART IS

12  MORE CONFUSING THAN HELPFUL AT THIS STAGE.  I HAD EXPECTED HIM

13  TO BE DROPPING THAT CHART BECAUSE -- PRECISELY BECAUSE IT HAS

14  THE RISK OF MISLEADING AND CONFUSING IN A CASE THAT IS SO

15  IMPORTANT, YOU KNOW, IN BEING PUBLICLY CORRECT AND THAT SORT

16  OF THING.  I DON'T THINK IT IS HELPFUL TO HAVE SOMETHING THAT

17  IS ADMITTEDLY CONFUSING IN THAT REGARD.

18       I WOULD ALSO ADD THAT TO THE EXTENT THAT MR. GELERNT

19  DOES HAVE QUESTIONS WITH THOSE, THE GOVERNMENT STANDS READY TO

20  HELP WITH THAT.  BUT WE HAVE NOT, I UNDERSTAND IT, GOTTEN ANY

21  QUESTIONS ABOUT THOSE NUMBERS IN RECENT WEEKS.

22       I GUESS THE ISSUE THAT I WOULD RAISE IS, I THINK FOR

23  THE GOOD OF CLARITY, FOR THE GOOD OF JUST TRANSPARENCY, I

24  DON'T UNDERSTAND WHAT THE CONTINUING USEFULNESS IS OF THAT

25  CHART, PARTICULARLY BECAUSE IT CONTINUES TO SEEM TO CAUSE

OCTOBER 16, 2018

1   CONFUSION AT EACH STATUS REPORT.

2           SO I WOULD PROPOSE THAT THERE IS NO REAL BENEFIT,

3   AND WHATEVER BENEFIT IT HAS IS BEING OUTWEIGHED, PARTICULARLY

4   SINCE THE GOVERNMENT HAS NOT GOTTEN QUESTIONS RECENTLY ABOUT

5   THAT CHART AND HAS EXPLAINED IT QUITE EXTENSIVELY TO THE MS.

6   L. PLAINTIFFS.

7           **THE COURT:**  MR. GELERNT.

8           **MR. GELERNT:**  YOUR HONOR, YES, WE HAVE ACTUALLY -- I

9   WASN'T ON THOSE CALLS, BUT MY TEAM HAS SAID THAT WE HAVE

10  RAISED QUESTIONS ABOUT THAT.

11          BUT I THINK BY NEXT WEEK WE WILL EITHER POINT OUT

12  SPECIFICALLY OUR CONCERNS ABOUT THOSE NUMBERS OR DROP IT FROM

13  THE CHART.  BUT WE WON'T CONTINUE TO CREATE CONFUSION FOR YOU.

14          **THE COURT:**  OKAY.  VERY GOOD.  WE WILL LEAVE IT AT

15  THAT.

16          THEN ON THE NTC STATUS REPORT, FIRST THERE IS A

17  PROPOSED ORDER EXTENDING TIME TO ANSWER TO NOVEMBER 14.

18          IS THERE ANY OBJECTION?

19          **MS. LEVY:**  THERE IS NO OBJECTION, YOUR HONOR.

20          **THE COURT:**  I WILL SIGN THAT ORDER NOW, AND IT WILL

21  BE ENTERED.

22          IS THERE ANYTHING ELSE TO REPORT ON IN NTC?  IT

23  LOOKED -- THE REPORT LOOKED UNREMARKABLE, WHICH IS GOOD.  AM I

24  MISSING SOMETHING?

25          **MS. LEVY:**  THERE IS NOTHING TO REPORT AT THIS TIME.

OCTOBER 16, 2018

1          **THE COURT:**  OKAY.  EXCELLENT.  ALL RIGHT.

2          ON THE PENDING MOTION, I HAVE READ ALL OF THAT

3    BRIEFING, AND I WOULD INTEND TO ISSUE JUST A SHORT, CURSORY

4    ORDER JUST GETTING RIGHT TO THE ISSUES SO THAT THAT ISSUE CAN

5    BE RESOLVED.

6          I HAVE JUST A FEW QUESTIONS AT THIS TIME.  I

7    APPRECIATE ALL OF THE BRIEFING.

8          THE PLAINTIFFS' POSITION IS THAT THEY ARE NOT -- IF

9    I UNDERSTAND IT CORRECTLY, IS THAT THEY ARE NOT SEEKING

10   FULL-SCALE IMPLEMENTATION, RATHER THE SPECIFIC REQUEST IS FOR

11   THE GOVERNMENT TO PROVIDE THE ORIENTATION FOR CREDIBLE FEAR

12   INTERVIEWS AS AGREED UPON, THAT WOULD BE WITHIN THREE DAYS OF

13   SIGNING, FOR THOSE PARENTS OR THOSE CLASS MEMBERS WHO HAVE

14   REVIEWED THE NOTICE AND MADE AN ELECTION.

15         AND SO IN THAT REGARD, AS I UNDERSTAND IT, THE

16   PLAINTIFFS -- ONE OF ITS POSITIONS IS THAT THIS IS NOT

17   PREMATURE, BUT RATHER IT IS SOMETHING THAT PLAINTIFFS THOUGHT

18   WAS AGREED UPON, PURSUANT TO THE AGREEMENT.

19         WHAT WOULD THE GOVERNMENT'S POSITION BE THERE?

20         **MR. STEWART:**  YOUR HONOR, OUR POSITION IS THAT THE

21   THREE-DAY PERIOD RESTS ON THE UNDERSTANDING THAT, YOU KNOW, ON

22   THE ONE HAND WE ARE -- WE HAVE FINAL APPROVAL, WE HAVE A

23   FULL-FLEDGED AGREEMENT.  FOR EXAMPLE, IF WE HAD STARTED TO

24   GET, YOU KNOW, WAIVERS OR NOTICE FORMS TWO WEEKS AGO, YOU

25   KNOW, EVEN -- EVEN THOUGH WE HAD RECEIVED PURPORTED WAIVER

1   FORMS, THE THREE-DAY PERIOD WOULDN'T HAVE STARTED THEN.

2          WHAT WE ARE SAYING IS THAT THESE PERIODS ARE VERY

3   INTIMATELY TIED TO FINAL APPROVAL, AND THAT WE CANNOT BE

4   REQUIRED TO IMPLEMENT THE AGREEMENT'S PROCEDURES PRIOR TO

5   FINAL APPROVAL IN A WAY THAT IT IS, YOU KNOW, INCONSISTENT

6   WITH THE LAW.

7          THAT ALL SAID, WE ALSO MADE CLEAR THAT WE ARE

8   WILLING TO START TO MOVE CERTAIN OF THESE PROCESSES FORWARD.

9   THERE IS A REAL QUESTION, THOUGH, WHETHER SOMEBODY GETTING AN

10  ORIENTATION TODAY BUT NOT PROCEDURES FOR A WAYS AFTER, YOU

11  KNOW, CLOSE IN TIME TO THE INTERVIEWS THEMSELVES, IS A

12  SENSIBLE -- IS A SENSIBLE WAY TO PROCEED.

13         I WOULD ALSO EMPHASIZE, YOUR HONOR -- AND MAYBE I AM

14  JUMPING AHEAD SLIGHTLY SO I WILL KEEP IT BRIEF.  THAT THIS

15  REALLY IS NOT THE PLAINTIFFS' POSITION THAT THEY ONLY WANT TO

16  SEEK ORIENTATIONS; THEY DEMANDED, IN THEIR CONFERRALS WITH US,

17  FULL-SCALE IMPLEMENTATION.  THEY REFUSED TO DISCUSS, BY THEIR

18  OWN WORDS, IMPLEMENTATION TO THE EXTENT APPROPRIATE.  AND THEY

19  WOULD NOT CONFER WITH US ON THIS.  AND THEY ALSO WANT

20  IMMEDIATE IMPLEMENTATION OF THE AGREEMENT'S OTHER PROCEDURES,

21  WELL BEYOND ORIENTATION.

22         THEY TRIED TO SOMEWHAT BACK OFF ON THAT POSITION, IT

23  SEEMS, IN THEIR REPLY BRIEF, BUT THAT IS NOT THE PREMISE OF

24  THEIR MOTION, THAT IS NOT THE BASIS OF THEIR DISCUSSIONS WITH

25  US, AND THAT WAS NOT THE MATTERS THAT THEY WERE WILLING TO

1    DISCUSS WITH US.

2            SO WE ARE WILLING TO DISCUSS AND WORK ON THOSE

3    ORIENTATIONS, BUT IT SHOULD BE DONE IN A WAY THAT IS BOTH

4    ORDERLY AND RESPECTS AND FOLLOWS THE LAW AS YOUR HONOR HAS

5    SAID THROUGHOUT THIS CASE.

6            **THE COURT:**  THE PLAINTIFFS HAVE INDICATED THAT A

7    NUMBER OF INDIVIDUALS -- I THINK THE NUMBER IDENTIFIED WAS 60

8    IN THE REPLY BRIEF -- HAVE SIGNED ELECTIONS AND ARE READY FOR

9    ORIENTATION, AND WOULD LIKE TO START THE PROCEDURE.

10           SO ASSUMING A NUMBER OF PEOPLE GOT STARTED AND THEY

11   HAD AN ORIENTATION, AND THEN PERHAPS THEY WENT INTO THE

12   HEARING, WHETHER THE HEARING STARTED UNDER 235 OR 240, WHAT

13   WOULD THE PREJUDICE BE TO THE GOVERNMENT?

14           I UNDERSTAND THE ARGUMENT THAT THERE IS NOT FINAL

15   APPROVAL AND THAT ORDINARILY BEFORE MATTERS ARE IMPLEMENTED WE

16   AWAIT FOR FINAL APPROVAL AND ANY OBJECTIONS, THAT KIND OF

17   THING.  BUT THE REALITY IN THIS CASE IS THERE MAY NOT BE ANY

18   OBJECTIONS.

19           THERE IS ONE FILED OBJECTION BUT IT IS NOT REALLY AN

20   OBJECTION, IT IS:  I LIKE THE SETTLEMENT SO MUCH I WANT TO BE

21   INCLUDED IN THE CLASS.

22           THAT IS FILED BY KING & SPALDING ON BEHALF OF A

23   LEGAL GUARDIAN WHO WOULD LIKE TO BE -- WHO WAS SEPARATED FROM

24   HER CHILD WHO WOULD LIKE TO BE INCLUDED.

25           SO ABSENT SOME SIGNIFICANT AND PERHAPS UNFORESEEN

OCTOBER 16, 2018

13

 1   DEVELOPMENT, THIS CASE AND THIS SETTLEMENT IS WELL POSTURED

 2   FOR FINAL APPROVAL, AND WE ARE REALLY JUST AWAITING TIME AND

 3   THE NOTICE AND OPPORTUNITY PERIOD.

 4           BUT ASSUMING WORST-CASE SCENARIO, THERE IS SOME

 5   PRINCIPLED OBJECTION AND THAT -- I AM NOT SURE WHAT THAT WOULD

 6   BE, BUT ASSUMING THERE IS, AND THE SETTLEMENT IS NOT FINALLY

 7   APPROVED; WHAT WOULD THE PREJUDICE BE TO THE GOVERNMENT IN AT

 8   LEAST STARTING SOME OF THESE ORIENTATIONS AND HEARINGS?

 9           WOULDN'T IT JUST BE A LOSS OF -- OR THE USE OF

10   GOVERNMENT RESOURCES, AND THEN ULTIMATELY TOWARD AN AGREEMENT

11   THAT FAILED?  I AM NOT UNDERSTANDING WHAT THE PREJUDICE WOULD

12   BE.

13           **MR. STEWART:**  SURE, YOUR HONOR.  I THINK IT IS A FEW

14   THINGS.

15           ONE IS THAT WE COULD GIVE INDIVIDUAL PEOPLE RELIEF

16   UNDER THE AGREEMENT, WE COULD STILL, IN A MONTH'S TIME, FIND

17   OURSELVES, THE GOVERNMENT, HAVING TO DEFEND AGAINST THE CLASS

18   CLAIMS IN MULTIPLE FORUMS.  PEOPLE WHO PURSUE PROCEDURES UNDER

19   THE AGREEMENT, IF IT DOESN'T GO AS THEY HOPE THEY MIGHT CLAIM

20   ENTITLEMENT TO THAT CLASS RELIEF.

21           THOSE ARE -- THE FINALITY AND THE CLASS-WIDE

22   RESOLUTION ARE KEY, KEY PIECES FOR THE GOVERNMENT THAT ARE

23   QUITE PREJUDICIAL.

24           AND THE GOVERNMENT SAYS THIS -- RECOGNIZES, YOUR

25   HONOR, THAT, YOU KNOW, WE HAVE PEOPLE IN DETENTION, WE WOULD

14

```
1    LIKE TO MOVE THESE FOLKS THROUGH PROCEDURES SWIFTLY.  I MEAN,
2    IT IS A VERY COSTLY AND BURDENSOME THING FOR THE GOVERNMENT TO
3    HOLD PEOPLE IN DETENTION, SO WE DO HAVE AN INTEREST IN TRYING
4    TO MOVE THOSE FORWARD.
5            BUT IT IS THAT CLASS-WIDE RESOLUTION, THE DISMISSAL
6    OF THE OTHER CASES.  THE RISK THAT WE ARE GOING TO CONTINUE TO
7    SEE SWEEPING EMERGENCY PRELIMINARY INJUNCTION AND OTHER KINDS
8    OF BRIEFING IN A MONTH'S TIME.
9            THOSE ARE SIGNIFICANT PREJUDICES, YOUR HONOR.
10           ALSO, IF WE START MOVING PEOPLE -- THERE ARE A LOT
11   OF DIFFERENT BUCKETS OF RELIEF, SO TO SPEAK.  AND IF WE ARE
12   CANCELING NOTICES OF APPEARANCE AND MOVING PEOPLE FROM ONE
13   BUCKET TO ANOTHER, AND THEN WE HAVE TO UNWIND THAT, THAT IS --
14   IT IS TRICKY TO DO.  IT WILL BURN RESOURCES FROM KIND OF
15   PROPER EFFECTUATION OF SOME OF THESE FUNCTIONS.
16           WITH ALL OF THAT SAID, YOUR HONOR, I WOULD RETURN TO
17   THE POINT THAT WE HAVE SAID IN OUR BRIEFING IS THAT, YOU KNOW,
18   WE SHARE THE INTEREST IN PROMPT MOVING.  WE -- OUR -- WE THINK
19   THAT WE CAN, YOU KNOW, MOVE SOME OF THESE -- SOME DETAINED
20   FOLKS FORWARD AND JUST GET THAT MOVING.  AND UNDERSTANDING
21   THAT WE ARE ON A PATH TOWARDS FINAL APPROVAL, WE HAVE A
22   PROBLEM DOING IT UNDER THIS EMERGENCY BRIEFING SCHEDULE WHERE
23   WE ARE TRYING TO IMPLEMENT AND PUT INTO EFFECT A VERY COMPLEX
24   AND MULTI-LAYERED SETTLEMENT AGREEMENT IN THE CONTEXT OF A SET
25   OF PARTIES THAT HAS NOW TAKEN THE TACK OF SEEKING EMERGENCY
```

OCTOBER 16, 2018

1    BRIEFING WHENEVER THEY DON'T LIKE SOMETHING THAT WE PROPOSE OR

2    SAY.

3            WE NEED TO HAVE A SITUATION, IF THIS IS GOING TO

4    MOVE EFFICIENTLY AND COLLABORATIVELY AND PROPERLY, WHERE WE,

5    YOU KNOW, PROFESSIONALLY DEAL WITH THESE KINDS OF DISPUTES.

6    AND THIS SORT OF APPROACH OF RUNNING TO THE COURT ON AN

7    EMERGENCY BASIS RATHER THAN DEALING WITH THE GOVERNMENT AND

8    SEEING WHAT OUR CONCERNS ARE AND DEALING WITH THOSE AND MOVING

9    IN AN APPROPRIATE WAY IS -- YOU KNOW, THE LATTER IS THE WAY TO

10   GO, THE FORMER IS NOT PRODUCTIVE.  WE HAVE ALREADY LOST TIME

11   THAT COULD HAVE BEEN SPENT FINDING RESOLUTION HERE INFORMALLY.

12           **THE COURT:**  ALL RIGHT.

13           **MR. BERNICK:**  YOUR HONOR, MAY I RESPOND?  THIS IS

14   JUSTIN BERNICK FOR THE MMM PLAINTIFFS.

15           **THE COURT:**  YES.

16           **MR. BERNICK:**  YOUR HONOR, WITH ALL DUE RESPECT TO

17   MR. STEWART, WE HAVE BEEN ENGAGING PROFESSIONALLY.

18           MR. STEWART, IN A STATUS CONFERENCE JUST A FEW WEEKS

19   AGO, REPRESENTED TO YOUR HONOR AND TO US THAT HE WAS WILLING

20   TO MOVE FORWARD WITH THE PROCESS.  BASED HEAVILY ON RELIANCE

21   ON THAT REPRESENTATION THEY MADE TO YOU AND TO US, WE

22   STRUCTURED THIS ENTIRE FRAMEWORK FOR THE SETTLEMENT AGREEMENT

23   AROUND MOVING FORWARD WITH IMPLEMENTATION IMMEDIATELY.  THAT

24   INCLUDES THE NOTICE PLAN, IT INCLUDES THE ELECTION FORM.

25           AND PURSUANT TO THE CLASS NOTICE WE ARE REQUIRED TO

 1   DISTRIBUTE THAT NOTICE FORM BY OCTOBER 12TH.  THAT STARTS THE

 2   CLOCK, AND ONCE THAT CLOCK IS TRIGGERED THE GOVERNMENT IS

 3   OBLIGATED UNDER THE AGREEMENT TO PROVIDE RELIEF.  THOSE

 4   PROVISIONS WERE HEAVILY NEGOTIATED.  EVERYBODY UNDERSTOOD WHAT

 5   THE OBLIGATIONS WERE.  THERE WERE REPRESENTATIONS MADE TO THE

 6   COURT TO THAT EFFECT.

 7            FROM OUR PERSPECTIVE -- AND MR. STEWART IS CORRECT,

 8   THIS IS NOT AN ISSUE OF SIMPLY PROVIDING ORIENTATIONS.  IF ALL

 9   THAT IS PROVIDED NOW IS ORIENTATIONS, THE FOLKS WHO ARE

10   SITTING IN DETENTION NOW COULD BE THERE FOR ANOTHER 60 DAYS,

11   TWO MONTHS, WAITING FOR THIS TO WIND THROUGH AND THE TIME

12   PERIOD FOR POTENTIAL APPEALS TO EXPIRE.

13            THE UNDERSTANDING THAT WE HAD, BASED ON OUR

14   COMMUNICATIONS WITH THE GOVERNMENT, BASED ON THE

15   REPRESENTATIONS IN COURT, AND BASED ON THE MEMORIALIZED

16   AGREEMENT THAT WE SUBMITTED FOR YOUR APPROVAL, IS THAT THESE

17   INDIVIDUALS WOULD BEGIN MOVING THROUGH THE PROCESS AS SOON AS

18   THEY MADE AN ELECTION TO BE BOUND.

19            AND I THINK THAT IS THE CRITICAL DISTINCTION HERE,

20   YOUR HONOR, THAT DEMONSTRATES WHY THERE IS NO PREJUDICE TO THE

21   GOVERNMENT.

22            FOR A CLASS MEMBER WHO SELECTS AN OPTION UNDER THAT

23   FORM THERE IS FINALITY FOR THE GOVERNMENT.  THERE IS NO

24   POSSIBILITY THAT THIS PERSON CAN COME BACK AND TRY TO GET

25   SOMETHING DIFFERENT.  THEY HAVE ELECTED TO BE BOUND TO THE

OCTOBER 16, 2018

1    PROVISIONS OF THAT AGREEMENT.  AND THEY COULD SELECT REMOVAL,
2    IN WHICH CASE THE GOVERNMENT GETS THE BENEFIT OF THAT
3    PROCEDURE.  OR THEY CAN SELECT TO MOVE FORWARD WITH THEIR
4    ASYLUM DUE PROCESS, WHICH WOULD TAKE THE FORM OF ORIENTATION
5    AND THEN MOVING FORWARD TO AN INTERVIEW, AND THEN MOVING
6    THROUGH THE SYSTEM WHICH WOULD -- WHICH SHOULD REDUCE THE
7    BURDEN ON THE GOVERNMENT'S RESOURCES.
8            THIS IS NOT SOMETHING THAT IS GOING TO OPEN
9    PANDORA'S BOX.  WE ARE BOUND TO THIS AGREEMENT, WE ARE
10   COMMITTED TO UPHOLDING THIS AGREEMENT.  AND UP UNTIL WE
11   RECEIVED THE GOVERNMENT'S POSITION THAT THEY WERE BACKING OFF
12   ON THIS, WE THOUGHT THEY WERE COMMITTED TO IT AS WELL.
13           AND NOW WE ARE IN A POSITION WHERE ALL OF OUR
14   CLIENTS, DOZENS OF PEOPLE WHO ARE SITTING IN DETENTION
15   CENTERS, NOW BELIEVE THAT THEY SIGNED THIS AGREEMENT AND THAT
16   CERTAIN PROCEDURES WOULD FOLLOW WITHIN DAYS; AND IT HASN'T
17   HAPPENED.  THIS IS INORDINATELY COERCIVE TO HAVE THESE
18   INDIVIDUALS SITTING IN DETENTION FOR THOSE 60 DAYS.
19           WE DON'T SEE A DUE PROCESS ISSUE BECAUSE, AGAIN, ALL
20   OF THESE INDIVIDUALS WHO ARE SELECTING OPTIONS ON THESE
21   ELECTION FORMS ARE REPRESENTED BY COUNSEL.  THEY ARE DECIDING
22   WHAT THEY ARE GOING TO DO, WHETHER TO OPT FOR THE PROCEDURES
23   IN THE AGREEMENT OR SELECT REMOVAL.
24           AND WE ARE TALKING ABOUT A SMALL SET OF PEOPLE,
25   PRIMARILY WHO ARE IN DETENTION, OTHER INDIVIDUALS MAY WEIGH IN

```
 1   AND COMPLETE THESE ELECTION FORMS, AND THERE IS NO REASON
 2   NECESSARILY WHY THEY CAN'T MOVE THROUGH THE PROCESS AS WELL.
 3          BUT WE ARE REALLY FOCUSED ON HERE THE INDIVIDUALS
 4   WHO ARE IN DETENTION WHO HAVE ALREADY SUBMITTED THESE FORMS.
 5   ONCE THOSE FORMS ARE SUBMITTED THE AGREEMENT'S PROVISIONS ARE
 6   TRIGGERED.  AND WE JUST HAVE A HARD TIME UNDERSTANDING THE
 7   UNFAIRNESS.
 8          THE ONLY UNFAIRNESS THAT COULD BE, YOUR HONOR, IS IF
 9   THE GOVERNMENT PROVIDES AN INTERVIEW TO SOMEONE THAT THEY --
10   IF THE AGREEMENT FOR SOME REASON BLOWS UP, THEY WOULD WANT TO
11   TAKE A POSITION THAT, NO, THAT INDIVIDUAL SHOULD NOT GET AN
12   INTERVIEW, AND THEY WOULD HAVE WASTED THE TIME ON THE
13   INTERVIEW.
14          YOUR HONOR, WITH ALL DUE RESPECT FOR MR. STEWART,
15   THESE INDIVIDUALS ARE ENTITLED TO THOSE INTERVIEWS ANYWAY BY
16   STATUTE.  THE FACT THAT THE GOVERNMENT WOULD BE REQUIRED TO
17   PROVIDE AN INTERVIEW TO THOSE PEOPLE AND LATER MIGHT TURN OUT
18   THEY DON'T HAVE TO IS NOT PREJUDICE TO THE GOVERNMENT; THAT'S
19   THE LAW.
20          SO WITH ALL DUE RESPECT, YOUR HONOR, WE STRONGLY
21   DISAGREE WITH MR. STEWART.  WE BELIEVE THAT THIS SHOULD MOVE
22   FORWARD AS TO THE INDIVIDUALS WHO ARE REPRESENTED BY COUNSEL
23   AND MAKE ELECTIONS ON THESE FORMS.  RIGHT NOW IT IS 60 PEOPLE.
24          THERE IS NO CAUSE FOR DUE PROCESS CONCERNS.  IT IS
25   CONSISTENT WITH THE REPRESENTATIONS THE GOVERNMENT MADE IN
```

1    COURT, IT IS CONSISTENT WITH THE DOCUMENTS THAT THE COURT

2    APPROVED.

3               AND THAT WOULD BE OUR POSITION.

4          **THE COURT:**  THE 60 PEOPLE WHO HAVE MADE THE ELECTION

5    AND YOU INDICATE HAVE AGREED TO BE BOUND, IN A WORST-CASE

6    SCENARIO, IF THE SETTLEMENT IS NOT APPROVED IS IT YOUR

7    POSITION THAT THESE PEOPLE ARE STILL BOUND?  SO, IN OTHER

8    WORDS --

9          **MR. BERNICK:**  YES, YOUR HONOR.

10         **THE COURT:**  OKAY.  SO THEY HAVE MADE AN ELECTION,

11   AND IF THE GOVERNMENT PROVIDES A HEARING AND THESE

12   INDIVIDUALS, ONE OR MORE OF THEM, DO NOT PREVAIL, THEY ARE

13   THEN BOUND AND WOULD BE SUBJECT TO REMOVAL?

14         **MR. BERNICK:**  THAT'S CORRECT, YOUR HONOR.

15              AND I THINK THIS GOES TO A QUESTION THAT YOU RAISED

16   AT THE STATUS CONFERENCE AFTER YOU HAD HAD A CHANCE TO REVIEW

17   THE SETTLEMENT PROPOSAL.  IT WAS WHETHER OR NOT THE TRO COULD

18   BE LIFTED TO PERMIT REMOVAL OF INDIVIDUALS WHO GO THROUGH THE

19   PROCESS.

20              AND WE ARE COMMITTED TO THAT, YOUR HONOR.  IF AN

21   INDIVIDUAL GETS THE DUE PROCESS TO WHICH THEY ARE ENTITLED

22   UNDER THIS AGREEMENT AND THEY ARE FOUND TO NOT HAVE AN ASYLUM

23   CASE, THEN THE TRO WOULD BE LIFTED AND THOSE INDIVIDUALS COULD

24   BE REMOVED.  THEY WOULDN'T GET A SECOND BITE AT THE APPLE TO

25   RELITIGATE THE ISSUE, THEY WOULD BE BOUND TO THE AGREEMENT.

OCTOBER 16, 2018

1          **THE COURT:**  OKAY.

2          MR. STEWART, ANY FINAL COMMENT?

3          **MR. STEWART:**  SURE, YOUR HONOR.  I GUESS A FEW

4    THINGS.  YOU KNOW, IN SEEKING TO IMPLEMENT THE AGREEMENT THERE

5    ARE SIGNIFICANT CHALLENGES.  THE GOVERNMENT HAS TRIED TO TAKE

6    THOSE IN TURN.

7          AS WE EXPLAIN IN OUR PAPERS, YOU KNOW, WE HAVE BEEN

8    RESPECTFUL OF THE TIME PERIOD THAT THE OTHER SIDE ASKED FOR.

9    WE HAVE BEEN RESPECTFUL OF RULE 23 AND CONSTITUTIONAL

10   PROCESSES.  THOSE PROCESSES ARE IN PLACE FOR A REASON.

11         ORDERING THE GOVERNMENT TO IMMEDIATELY IMPLEMENT THE

12   AGREEMENT IN THE ABSENCE OF FINAL APPROVAL PRESENTS

13   CONSIDERABLE LEGAL RISK.  IT IS BASICALLY, AS FAR AS I CAN

14   SEE, YOU KNOW, ALMOST WHOLLY AVOIDABLE RISK GIVEN THAT THE

15   GOVERNMENT HAS INDICATED THAT IT, YOU KNOW, WANTS TO MOVE

16   FORWARD AND THINKS IT CAN MOVE FORWARD WITH A NUMBER OF THE

17   DETAINED PEOPLE WHICH, YOU KNOW, APPARENTLY ARE THE

18   PLAINTIFFS', YOU KNOW, MAIN FOCUS.

19         SO THE GOVERNMENT SITS VERY FIRMLY ON ITS POSITION

20   THAT IT CANNOT BE ORDERED TO IMPLEMENT THE AGREEMENT BEFORE IT

21   IS FINALLY APPROVED.

22         IT DOES APPRECIATE THE CONCERNS AND COMPETING

23   INTERESTS INVOLVED, AND IT IS WILLING AND HAS BEEN ALREADY

24   SEEKING TO MOVE THE AGREEMENT FORWARD AS APPROPRIATE.  AND,

25   YOU KNOW, IT STANDS WILLING TO CONTINUE TO DO SO.

OCTOBER 16, 2018

1          AND AS WE SAID IN OUR OPPOSITION WHICH, YOU KNOW,

2    MULTIPLE TIMES, WE THINK WE CAN MOVE THE PROCEDURES FORWARD

3    FOR GROUPS OF, YOU KNOW, GROUPS OF DETAINED CLASS MEMBERS, AS

4    APPROPRIATE, AND, YOU KNOW, WE ARE WILLING TO DO THAT.  BUT WE

5    CAN'T BE ORDERED, CONSISTENT WITH THE LAW, TO DO THAT.  WE ARE

6    WILLING TO, AS WITH OTHER THINGS, FIND A FINAL SOLUTION.

7          **THE COURT:**  WHAT ABOUT AS TO THESE 60 PEOPLE.  IT

8    SOUNDS LIKE YOU ARE SAYING THAT THE GOVERNMENT IS WILLING TO

9    MAKE THINGS HAPPEN WITH SOME.  DOES THAT MEAN SOME OF THESE 60

10   OR ALL OF THESE 60?  WHAT DOES THAT MEAN?

11         **MR. STEWART:**  I THINK THAT THAT GROUP OF 60 OR SOME,

12   YOU KNOW, SOME PORTION COULD LIKELY MOVE FORWARD, YOUR HONOR.

13   I WOULD JUST HAVE TO CHECK THE BUCKETS THEY FELL IN -- OR THEY

14   FALL IN, AND THAT IS SOME WORK THAT JUST WOULD BE OPERATIONAL,

15   FOLKS AT THE AGENCIES WOULD NEED TO UNDERTAKE.

16         IT IS A LITTLE -- WE SORT OF -- THE WAY WE GET THESE

17   FORMS, YOUR HONOR, IS -- NOT TO GET TOO COMPLICATED, BUT WE

18   GET THEM IN KIND OF A PROTECTED FORMAT, YOU KNOW, WE HAVE TO

19   DOWNLOAD THEM, YOU KNOW, AT LEAST PRELIMINARILY.  WE HAVE TO

20   SEE WHICH CATEGORY OF RELIEF THEY FALL INTO.

21         BUT TO THE EXTENT THEY ARE IN ICE FAMILY RESIDENTIAL

22   CENTERS, YOU KNOW, I THINK THERE IS A GOOD CHANCE THAT WE

23   WOULD BE WILLING TO, YOU KNOW, TO MOVE FORWARD WITH THEM SO

24   LONG AS WE CAN GET -- SO LONG AS WE HAVE VERY CLEAR ASSURANCE,

25   UNDOUBTED ASSURANCE, FROM THE PLAINTIFFS THAT, YOU KNOW, IF

OCTOBER 16, 2018

1   THEY ARE DENIED RELIEF THEY CAN BE REMOVED.  THEY CANNOT, IF

2   THEY ARE DENIED RELIEF, TAKE ADVANTAGE OF ANY CLASS CLAIMS.

3   THEY WAIVE ANY CLASS CLAIMS, WHETHER THOSE CLASS CLAIMS

4   ULTIMATELY ARE PERMITTED TO PROCEED OR NOT.  AND THEY ARE JUST

5   -- YOU KNOW, THEY ARE FULLY FINISHED AFTER THEY GO THROUGH THE

6   AGREEMENT'S PROCESSES.

7            THESE ARE THINGS THAT WE TRIED TO, YOU KNOW, WE

8   TRIED TO, YOU KNOW, MAKE CLEAR OUR CONCERNS.  WE EXPRESSED OUR

9   WILLINGNESS TO COMMUNICATE ON THEM.  THOSE WERE PRETERMITTED

10  BY AN EMERGENCY MOTION.  BUT WE DO THINK THAT WE CAN ADDRESS

11  GROUPS OF DETAINED PEOPLE, EVEN BEFORE FINAL APPROVAL, YOU

12  KNOW, UNDERSTANDING IT RAISES IMPORTANT ISSUES.

13           **THE COURT:**  THE GOVERNMENT'S CONCERN ABOUT THE COURT

14  ORDERING IT TO START THE PROCESS NOW PENDING FINAL APPROVAL IS

15  THAT IT IS POSSIBLE THE SETTLEMENT WILL NOT BE APPROVED.  IS

16  THAT CORRECT?

17           **MR. STEWART:**  THAT'S -- YOUR HONOR, THAT IS PART OF

18  IT.  BUT THE OTHER PART OF IT IS THAT THIS IS A VOLUNTARY

19  AGREEMENT.  YOU KNOW, IT WAS CAREFULLY NEGOTIATED.  WE WERE

20  CAREFUL TO TIE CRITICAL PARTS OF THE AGREEMENT TO FINAL

21  APPROVAL AND TO THE BENEFITS THAT WOULD ACCRUE TO US DURING

22  FINAL APPROVAL.

23           BUT I WOULD EMPHASIZE THE VOLUNTARINESS.  WE, YOU

24  KNOW, WE NEGOTIATED THIS, WE AGREED TO IT ON CERTAIN

25  CONDITIONS, AND BROUGHT IT TO COURT.  AND, YOU KNOW, WE HAVE

PRELIMINARY APPROVAL SO THAT WE CAN -- SO THAT CLASS MEMBERS

CAN GET NOTICE AND, YOU KNOW, OBJECTIONS CAN BE SOLICITED AND

SUBMITTED.

        BUT, YOU KNOW, WE ARE STILL IN THAT PRELIMINARY

STAGE.  AND THE GOVERNMENT NEEDS TO, YOU KNOW, BE CAREFUL AND

JUST, YOU KNOW, BE AWARE THAT, YOU KNOW, WE ALREADY HAVE AN

OBJECTION.  WE UNDERSTAND THAT, YOU KNOW, IT IS -- OTHER

OBJECTIONS MAY BE COMING.  AND WE JUST NEED TO -- THE

GOVERNMENT CANNOT RUSH INTO THIS THING AND GIVE ALL OF THE

RELIEF ONLY TO END UP SNAKE BIT AND NOT GET THE FULL

RESOLUTION TO WHICH IT IS ENTITLED AND, YOU KNOW, FOR WHICH IT

BARGAINED.

        AND I GUESS I JUST CLOSE BY SAYING THAT THE CONCERN

WITH A COURT ORDER, YOUR HONOR, IS THAT THIS IS A VOLUNTARY

SETTLEMENT AGREEMENT, AND IT IS NOT FINALLY APPROVED YET.  SO,

YOU KNOW, PENDING THAT AND CONSISTENT WITH OUR EMERGENCY

RESPONSE, WE WOULD JUST SAY, AS THE COURT HAS DONE BEFORE, IT

MAKES SENSE TO OUTLINE, YOU KNOW, AN ORDERLY WAY TO PROCEED.

THE PARTIES CAN, YOU KNOW, WORK TOWARD THAT, AND A GOOD

SOLUTION PURSUED IN THE RIGHT SPIRIT IS LIKELY TO FOLLOW.

        THAT WOULD BE OUR POSITION.

        **THE COURT:**  ARE YOU AWARE OR HAVE BEEN GIVEN NOTICE

THAT THERE MAY BE OTHER OBJECTIONS?

        **MR. STEWART:**  YES, YOUR HONOR.  WE ALLUDE TO THIS, I

BELIEVE, BRIEFLY IN OUR OPPOSITION.

1          DURING THE NEGOTIATIONS WE WERE MADE AWARE OF A

2    SMALL GROUP WHO COULD -- THE PLAINTIFFS WOULD KNOW MORE OF THE

3    DETAILS.  BUT WE WERE ALERTED TO A SMALL GROUP THAT HAD A

4    REQUEST TO BE INCLUDED IN THE AGREEMENT ON A PIECE, AND WERE

5    POTENTIALLY GOING TO COME FORWARD.

6          WE HAVE NOT HEARD MORE FROM THAT GROUP, BUT IT IS

7    A -- YOU KNOW, IT IS AN ISSUE OUT THERE.  AND WE STILL HAVE A

8    DECENT SIZED NOTICE PERIOD TO HEAR FROM.  BUT IT IS CERTAINLY

9    A POSSIBILITY.  I MEAN, PEOPLE DO KNOW OF THIS AGREEMENT, AND

10   AS YOUR HONOR RECOGNIZES IT IS A VERY, VERY BENEFICIAL

11   AGREEMENT FOR CLASS MEMBERS, SO PEOPLE WILL WANT TO BE -- WILL

12   PRESUMABLY WANT TO BE IN ON IT.

13          **THE COURT:**  ISN'T THAT THE OPPOSITE PROBLEM, THOUGH?

14   IT IS NOT REALLY AN OBJECTION ASKING THE COURT TO UNDO THE

15   SETTLEMENT, IT IS THE CONVERSE.  IT IS:  WE LIKE THE

16   SETTLEMENT SO MUCH WE WANT TO BE PART OF IT.

17          SO THE COURT WOULD REALLY BE MAKING A DETERMINATION,

18   I SUPPOSE, AS TO WHETHER OR NOT THOSE ONE OR MORE OBJECTORS

19   WOULD BE INCLUDED IN THE CLASS OR NOT.

20          BUT SO FAR AS I CAN TELL, THERE IS NOT GOING TO BE

21   ANYONE, THAT WE ARE AWARE OF, THAT IS ACTUALLY GOING TO OBJECT

22   TO THE SUBSTANCE OF THE AGREEMENT AND ASK THAT THE COURT NOT

23   APPROVE THE SETTLEMENT.

24          **MR. STEWART:**  YOUR HONOR, I THINK THERE ARE TWO

25   RISKS THERE.  ONE IS THAT THERE IS JUST THE UNCERTAINTY THERE.

1    WE JUST DON'T KNOW WHAT PEOPLE ARE GOING TO COME FORWARD WITH.

2              BUT IT IS A REAL CONCERN THAT IF SOMEBODY -- IF AN

3    OBJECTOR TRIES TO EXPAND THE SETTLEMENT, YOU KNOW, THAT COULD

4    BE A MATERIALLY DIFFERENT SETTLEMENT, NOT THE ONE THE PARTIES

5    AGREED TO.  AND, YOU KNOW, THAT WOULD RAISE SIGNIFICANT

6    PROBLEMS.

7              AND, YOU KNOW, WE WOULD BE, YOU KNOW, STAND READY

8    TO, YOU KNOW, OPPOSE OBJECTIONS THAT ARE, YOU KNOW, JUST

9    FLAWED.  BUT THERE IS A REASON THAT THESE RULES -- YOU KNOW,

10   THERE ARE STRONG REASONS WHY THESE RULE 23 PROCEDURES ARE IN

11   PLACE.  AND THE GOVERNMENT, YES, WE DO HAVE AN INTEREST IN

12   MOVING, ESPECIALLY WITH DETAINED FOLKS WHO, YOU KNOW, IT IS A

13   COSTLY AND BURDENSOME AFFAIR TO CONTINUE TO DETAIN PEOPLE.

14   BUT WE ALSO HAVE AN OBLIGATION AND AN INTEREST FOR ALL TO

15   RESPECT THOSE PROCESSES, YOU KNOW, AGAIN, WITH OUR WILLINGNESS

16   TO IMPLEMENT PROCEDURES TO THE EXTENT APPROPRIATE FOR FOLKS

17   DETAINED IN FRC'S.

18              **THE COURT:**  OKAY.

19              MR. BERNICK, ANY FINAL RESPONSE?

20              **MR. BERNICK:**  JUST A COUPLE OF QUICK POINTS, YOUR

21   HONOR.

22              I THINK, FIRST OF ALL, MR. STEWART REFERENCED THAT A

23   COURT ORDER HERE REQUIRING THE GOVERNMENT TO COMPLY WOULD

24   SOMEHOW BE CONTRARY TO RULE 23 OR CONTRARY TO LAW.  YOUR

25   HONOR, WE HAVEN'T SEEN THAT LAW.

```
 1              CERTAINLY THIS IS A BIT MORE OF AN UNUSUAL SITUATION
 2    THAN THE TYPICAL CLASS ACTION, BUT HERE THE PARTIES
 3    NEGOTIATED, AND HEAVILY NEGOTIATED, IN FACT, WHAT PROCEDURES
 4    SHOULD APPLY, AND THOSE PROCEDURES ARE TRIGGERED BY THIS
 5    ELECTION FORM WITHIN THREE DAYS.
 6              WE ALSO HAVE THE PRIOR COMMITMENT BY THE GOVERNMENT
 7    TO MOVE FORWARD.  THE SAME LANGUAGE THAT MR. STEWART USED JUST
 8    NOW ABOUT THE GOVERNMENT BEING WILLING TO MOVE FORWARD WITH
 9    PARTICULAR CASES, BUT YET THAT TURNED OUT TO NOT MATERIALIZE.
10              THIS IS A SITUATION WHERE WE DON'T BELIEVE THAT RULE
11    23 ISSUES ARE IMPLEMENTED.  ABSENT CLASS MEMBERS ARE PROTECTED
12    BY THE OBJECTION PROCESS.  THEY ARE NOT BEING REQUIRED TO
13    EXECUTE ONE OF THESE FORMS.  ALL THAT WE ARE ASKING IS THAT
14    THOSE WHO EXECUTE THESE FORMS MOVE FORWARD WITH THE PROCESS AT
15    THIS POINT IN TIME.
16              AND WE WOULD REQUEST A COURT ORDER ON THIS ISSUE.
17    THIS IS AN EMERGENCY BECAUSE THE DEADLINES ARE TRIGGERED IN
18    THE AGREEMENT, OUR CLIENTS WERE RELYING ON THESE
19    REPRESENTATIONS.  WE THINK THAT THE FAULT LINES OF THIS
20    DISPUTE ARE FAIRLY CLEAR.
21              AND WE ARE NOT SEEKING TO MOVE FORWARD WITH NO ONE
22    WHO HAS NOT EXECUTED THESE FORMS.  THESE ARE -- WE ARE ONLY
23    FOCUSED ON THE SITUATION WHERE PEOPLE, CONSISTENT WITH THE
24    AGREEMENT, HAVE EXECUTED THESE FORMS AND HAVE ELECTED TO BE
25    BOUND BY THE AGREEMENT, WHICH GIVES THE GOVERNMENT THE BENEFIT
```

```
 1    OF THE FINALITY THAT I HEAR IS IMPORTANT TO THE GOVERNMENT.

 2             SO THAT IS OUR FINAL POSITION, YOUR HONOR.

 3             THE COURT:  THANK YOU.

 4             MR. STEWART:  YOUR HONOR, MAY I MAKE ONE MORE

 5    COMMENT THAT JUST OCCURRED TO ME?

 6             THE COURT:  YES.

 7             MR. STEWART:  SORRY TO KEEP ADDING ON HERE, YOUR

 8    HONOR.

 9             YOU KNOW, WHEN YOUR HONOR ASKED ABOUT MOVING FORWARD

10    WITH THIS AGREEMENT, I SAID -- AND THIS IS QUOTED ON THE FIRST

11    PAGE OF THE MOTION -- YOUR HONOR, OUR TENTATIVE VIEW WOULD BE

12    THAT I THINK THAT IT IS APPROPRIATE AND WE COULD GET MOVING ON

13    THIS.

14             THERE HAS BEEN A LOT THAT HAPPENED SINCE THEN THAT

15    KIND OF SHEDS LIGHT ON THE IMPORTANCE OF THESE PROCEDURES.

16    AND I EXPLAINED THAT, LOOK, WE ARE GOING TO MOVE ON THIS --

17    YOU KNOW, OUR TENTATIVE VIEW IS THAT WE CAN GET MOVING ON THIS

18    TO THE EXTENT APPROPRIATE.  WE HAVE MOVED ON THIS TO THE

19    EXTENT APPROPRIATE PRIOR TO FINAL APPROVAL.  WE HAVE, YOU

20    KNOW, WE HAVE DEVELOPED THE APPROPRIATE FORM, THOSE ARE

21    STARTING TO GET COLLECTED.  AS WE GET PEOPLE IN WE CAN START

22    SEEING, YOU KNOW, WHAT PATHWAYS TO RELIEF THEY ARE GOING TO GO

23    THROUGH, YOU KNOW, WITH FINAL APPROVAL.  AND WE ARE ALSO

24    WILLING TO MOVE FORWARD WITH DETAINED PEOPLE.

25             SO WE HAVE BEEN TRUE TO THE PLEDGE, YOU KNOW, WE
```

 1   HAVE BEEN CAREFUL.  AND WE HAVE BEEN DEALING WITH THE REALITY

 2   THAT AFTER THE HEARING IN WHICH WE WERE ALL READY TO MOVE

 3   FORWARD, THE PLAINTIFFS PROPOSED A VERY, VERY -- YOU KNOW, A

 4   RATHER LONG NOTICE PERIOD.  IT TOOK TIME TO FINALIZE THE RULE

 5   23 PAPERS.  THE PERIOD ENDED UP BEING ABOUT THREE WEEKS, AND

 6   THERE IS THREE WEEKS ADDITIONAL AFTER THAT TO FINALIZE

 7   EVERYTHING AND HAVE A FINAL HEARING.  BUT THE GOVERNMENT HAS

 8   IMPLEMENTED TO THE EXTENT APPROPRIATE.

 9           WE DID NOT AGREE TO WHAT MR. BERNICK HAS ATTEMPTED

10   TO CHARACTERIZE US AS AGREEING TO, BUT WE HAVE KEPT OUR

11   PLEDGE, EVEN THOUGH IT WAS TENTATIVE, TO SAY, LOOK, WE ARE

12   GOING TO MOVE FORWARD TO THE EXTENT APPROPRIATE, RESPECTING

13   THE RELEVANT LEGAL PROCESSES, THE RELEVANT EQUITIES, THE

14   RELEVANT INTEREST.  WE WILL CONTINUE TO DO THAT, AND WE ARE

15   HAPPY TO, YOU KNOW, DO THAT EXPEDITIOUSLY.

16           THANK YOU, YOUR HONOR.

17           **THE COURT:**  THANK YOU.

18           ANYTHING FROM DORA PLAINTIFFS' COUNSEL?

19           **MR. BARMEYER:**  YOUR HONOR, THIS IS WILSON BARMEYER

20   FOR DORA, COUNSEL.

21           WE CONCUR WITH THE ARGUMENTS OF MR. BERNICK, AND DO

22   THINK THAT FOR THE 60 INDIVIDUALS THAT ARE IN DETENTION THERE

23   IS A PARTICULAR NEED TO MOVE THIS FORWARD.

24           MR. STEWART'S REPRESENTATIONS TODAY, LIKELY TO AND

25   MAY, THAT WE WOULD LIKE A COURT ORDER CONFIRMING THAT THEY CAN

```
 1    MOVE FORWARD -- THE 60 INDIVIDUALS CAN MOVE FORWARD AND HAVE
 2    THE PROCESS THAT IS AGREED TO ONE WAY OR THE OTHER.
 3            THANK YOU, YOUR HONOR.
 4            THE COURT:  THANK YOU.  OKAY.  I AM PREPARED TO
 5    CLOSE THE HEARING AT THIS TIME.
 6            IS THERE ANYONE ON ANY CASE THAT NEEDS TO ADDRESS
 7    ANY ISSUE THAT WE HAVEN'T SPOKEN TO ALREADY?
 8            OKAY.  WELL, THANK YOU AGAIN, ALL, FOR YOUR
 9    PARTICIPATION.
10            I AM GOING TO ENDEAVOR TO ISSUE AN ORDER ON THIS
11    EMERGENCY MOTION SOON.  IT WILL BE SHORT AND TO THE POINT, AND
12    I WILL BE TRYING TO RESOLVE THE ISSUE ONE WAY OR ANOTHER AS
13    QUICKLY AS I CAN.
14            AND THEN FOR FUTURE STATUS CONFERENCES, I WILL ISSUE
15    AN ORDER LATER TODAY OR TOMORROW.  BUT WHAT I INTEND TO DO IS
16    ORDER STATUS REPORTS IN THE CASES FOR OCTOBER 25, THURSDAY,
17    ANOTHER STATUS REPORT TWO WEEKS THEREAFTER, ON NOVEMBER 8,
18    WITH A STATUS CONFERENCE ON NOVEMBER 9 AT 1:00 P.M.
19            SO IT SEEMS TO ME, GIVEN THE CURRENT STATE OF
20    AFFAIRS, THAT -- WELL, I AM OPTIMISTIC THAT ON NOVEMBER 9 AT
21    THE STATUS CONFERENCE THAT WITH MS. L., AND THE PARENTS HAVE
22    BEEN REMOVED, WE HOPEFULLY WILL BE IN A POSITION TO HAVE A
23    FINAL ACCOUNTING, AND HAVE SOME SETTLED NUMBERS IN THAT
24    REGARD.
25            SO I WILL ASK THAT COUNSEL CONTINUE TO WORK, AS YOU
```

OCTOBER 16, 2018

1   HAVE, EXPEDITIOUSLY AND COLLABORATIVELY.  AND SEE IF WE CAN

2   BRING THE REUNIFICATION PROCESS TO A CLOSE WITHIN THIS TIME

3   FRAME.

4          ALL RIGHT.  THANK YOU VERY MUCH, AND I WILL LOOK

5   FORWARD TO THE FUTURE BRIEFING AND THEN THE STATUS CONFERENCE

6   ON NOVEMBER 9.

7          **MR. STEWART:**  THANK YOU, YOUR HONOR.

8          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

9

10                      *   *   *

11         I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
12         IN THE ABOVE-ENTITLED MATTER.

13         S/LEEANN PENCE                    10/16/2018
           LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
14

15

16

17

18

19

20

21

22

23

24

25

                        OCTOBER 16, 2018