# Exhibit B

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EGLA ARELY VELASQUEZ MOLINA,**<br>Port Isabel Service Detention Center<br>27991 Buena Vista Blvd<br>Los Fresnos, Texas 78566; | Case No.  18-cv-02392 |
| **Plaintiff,** | |
| v. | |
| **U.S. IMMIGRATION AND CUSTOMS**<br>**ENFORCEMENT ("ICE"),**<br>500 12th Street SW Washington, DC 20530; | |
| **U.S. DEPARTMENT OF HOMELAND**<br>**SECURITY ("DHS"),**<br>245 Murray Lane SW Mailstop 0485<br>Washington, DC 20528-0075; | |
| **U.S. CUSTOMS AND BORDER PROTECTION**<br>**("CBP"),**<br>1300 Pennsylvania Ave. NW<br>Washington, DC 20229; | |
| **U.S. CITIZENSHIP AND IMMIGRATION**<br>**SERVICES ("USCIS"),**<br>20 Massachusetts Avenue NW<br>Washington, DC 20529; | |
| **THOMAS HOMAN, ACTING DIRECTOR OF**<br>**ICE,**<br>500 12th Street SW Washington, DC 20536; | |
| **DANIEL BIBLE, SAN ANTONIO FIELD OFFICE**<br>**DIRECTOR, ICE,**<br>San Antonio Field Office<br>1777 NE Loop 410 Floor 15<br>San Antonio, TX, 78217; | |
| **ANDREW HURON, SAN ANTONIO ASSISTANT**<br>**FIELD OFFICE DIRECTOR, ICE,**<br>San Antonio Field Office<br>1777 NE Loop 410 Floor 15<br>San Antonio, TX, 78217; | |

Exhibit B
000032

**KIRSTJEN NIELSEN, SECRETARY OF DHS,**
500 12th Street SW Washington, DC 20536;

**JEFFERSON BEAUREGARD SESSIONS III,
ATTORNEY GENERAL OF THE UNITED
STATES,**
950 Pennsylvania Avenue NW Washington, DC
20530;

**L. FRANCIS CISSNA, DIRECTOR OF USCIS,**
20 Massachusetts Avenue NW Washington, DC 20529;

**KEVIN K. MCALEENAN, ACTING
COMMISSIONER OF CBP,**
1300 Pennsylvania Ave, NW Washington, DC 20229;

**Defendants.**

## **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

JURISDICTION.................................................................................................................... 2

VENUE ................................................................................................................................. 3

PARTIES............................................................................................................................... 3

RELEVANT FACTS ............................................................................................................ 5

CAUSES OF ACTION ....................................................................................................... 11

PRAYER FOR RELIEF...................................................................................................... 15

Exhibit B
000034

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Wolfish,*
441 U.S. 520 (1979) ........................................................................................12

*Ms. L v. U.S. Immigration & Customs Enf't,*
No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364 (S.D. Cal.
June 26, 2018) ...................................................................................2, 9, 10

**Statutes**

5 U.S.C. § 706(2)(A) ............................................................................................13

8 U.S.C. § 1103 .......................................................................................................4

8 U.S.C. § 1158 ................................................................................................1, 14

8 U.S.C. § 1158(a)(1) ..........................................................................................11

8 U.S.C. § 1225(b)(1) ..........................................................................................11

28 U.S.C. § 1331 ....................................................................................................2

28 U.S.C. § 1391 ....................................................................................................3

28 U.S.C. § 2241 ....................................................................................................2

**Other Authorities**

8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42 .....................................................11

Administrative Procedure Act .............................................................................13

Executive Order 13841 ..........................................................................................7

Immigration and Naturalization Act .....................................................................8

International Convention on Civil and Political Rights, Art. 17 .....................1, 13

U.S. Constitution Fifth Amendment .............................................................. *passim*

United States Constitution Art. I., § 9, cl. 2 .........................................................3

Exhibit B
000035

## PETITION FOR HABEAS CORPUS AND COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

**Egla Arely Velasquez Molina** ("Ms. Velasquez Molina" or "Plaintiff"), by and through

counsel, files this civil action and petition for habeas corpus against Defendants U.S.

Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security

("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration

Services ("USCIS"); Thomas Homan, Acting Director of ICE; Daniel Bible, San Antonio Field

Office Director, ICE; Andrew Huron, San Antonio Assistant Field Office Director, ICE;

Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the

United States; L. Francis Cissna, Director of USCIS; and Kevin K. McAleenan, Acting

Commissioner of CBP; (collectively, "Defendants") to vindicate Ms. Velasquez Molina's

substantive and procedural due process rights under the Fifth Amendment of the U.S.

Constitution and her rights under the International Convention on Civil and Political Rights, and

the United Nations Convention Relating to Status of Refugees, 8 U.S.C. § 1158.

### INTRODUCTION

This complaint arises from the United States Government's forcible separation of Ms.

Velasquez Molina from her young niece, E.C. Ms. Velasquez Molina, a thirty year old

Honduran woman, is the sole primary caregiver, legal guardian, and biological aunt of E.C., a

ten-year old girl who has lived with Ms. Velasquez Molina since the death of E.C.'s biological

father, Ms. Velasquez Molina's biological nephew, and has been in the sole care of Ms.

Velasquez Molina since the death of E.C.'s biological father in 2017. Ms. Velasquez Molina

considers E.C. to be her daughter. Ms. Velasquez Molina brings this action to halt her pending

deportation until she has a full and fair opportunity to seek asylum in the United States. That

opportunity, guaranteed to her by statute, has been denied by the forcible separation of Ms.

Exhibit B
000036

Velasquez Molina from E.C. The trauma of that separation rendered Ms. Velasquez Molina unable to meaningfully prepare for and participate in the credible fear interview that formed a part of her asylum proceedings, resulting in an erroneous negative credible fear determination by the Asylum Officer. The forced separation by the Defendants of Ms. Velasquez Molina's daughter, in addition to causing substantial emotional distress to both mother and daughter, improperly tainted the credible fear assessment. In the absence of the relief sought in this action, Ms. Velasquez Molina will be deported to Honduras without having received a fair asylum proceeding, and she is likely to suffer death at the hands of the criminal elements that caused Ms. Velasquez Molina to flee Honduras with her daughter in the first place.

In addition, Ms. Velasquez Molina may be a member of the class certified in *Ms. L v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364 (S.D. Cal. June 26, 2018) at 17 ("*Ms. L*"). A legal guardian who in the same posture as Ms. Velasquez Molina has filed an objection to the proposed settlement in the Ms. L case seeking to clarify that legal guardians are included. If Ms. Velasquez Molina is part of the *Ms. L* class, Defendants will be prohibited from deporting her before she is given a de novo and fair credible fear interview. For all the reasons set forth in this Complaint and the accompanying papers, Ms. Velasquez Molina's deportation should be stayed until she has been given a fair opportunity to pursue her right to asylum in the United States.

## JURISDICTION

1.     This case arises under the Fifth Amendment to the United States Constitution and other federal statutes cited in this Petition and Complaint. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Ms. Velasquez Molina is in federal custody for purposes of habeas jurisdiction. This Court

has personal jurisdiction because the official acts giving rise to Plaintiff's harm were directed from federal government agencies headquartered in the District of Columbia.

## VENUE

2.      Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

## PARTIES

3.      Plaintiff Ms. Velasquez Molina is a citizen of Honduras. She is the biological aunt of, legal guardian of, and sole primary caregiver for, E.C., who is also a citizen of Honduras. Ms. Velasquez Molina is the *de facto* mother of E.C., who is a 10-year old girl.

4.      Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

5.      Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States and is a department of the executive branch of the Government which has been delegated with authority over certain immigration matters relevant to this action.

6.      Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens apprehended near the U.S. border.

7.      Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

Exhibit B
000038

8.      Defendant Thomas Homan is sued in his official capacity as the Director of ICE.

9.      Defendant Daniel Bible is sued in his official capacity as Field Office Director, San Antonio Field Office, ICE.

10.     Andrew Huron is sued in his official capacity as Assistant Field Office Director, San Antonio Field Office, ICE.

11.     Defendant Kirstjen Nielsen is sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she has responsibility for each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, including laws relating to the credible fear interview process, and is empowered to grant asylum or other relief.

12.     Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the Attorney General of the United States. At all times relevant to this Petition and Complaint, he had responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, including laws relating to the credible fear interview process, oversaw the Executive Office of Immigration Review, and was empowered to grant asylum or other relief.

13.     Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

14.     Defendant Kevin K. McAleenan is sued in his official capacity as the Acting Commissioner of CBP.

## RELEVANT FACTS[1]

15.     Ms. Velasquez Molina is a citizen of Honduras.  She is the *de facto* mother of E.C., a minor child, and has been E.C.'s legal guardian and caregiver since 2016, when E.C.'s biological parents, Erlin Giovanni Molina Zelaya (Mr. Molina Zelaya) and Sylvia Del Carmen Cano Garcia, placed her in Ms. Velasquez Molina's care out of fear for their lives. A copy of the Legal Guardianship is attached to this Complaint as Exhibit A.  Shortly thereafter, E.C.'s parents' fears were realized, when gang members, whom the Honduran government is unable to control and whom the local police tacitly support, murdered E.C.'s father.  E.C. is the biological daughter of Ms. Velasquez Molina's now-deceased nephew.

16.     In April 2018, Ms. Velasquez Molina began receiving death threats and demands for ransom payments via text messages from the individuals responsible for Mr. Molina Zelaya's murder.  Specifically, Ms. Velasquez Molina was told she needed to give up 50% of her earnings, or she would be killed.  One such threat included a picture of her deceased nephew's body.  Moreover, on at least one occasion, an individual appeared at Ms. Velasquez Molina's workplace, demanded to know if she received these threatening messages, including the image of her murdered nephew's corpse, and attempted to terrorize her into compliance.

17.     As a result of that encounter, Ms. Velasquez Molina did not return to work out of fear for her life.  Ms. Velasquez Molina was a particular target of these threats given her steady job and reliable income.  Ms. Velasquez Molina took these death threats seriously

---

[1] The factual information provided herein is drawn from the statements of Ms. Velasquez Molina and non-privileged factual information from communications between Ms. Velasquez Molina and counsel for the Texas Civil Rights Project, the organization that initially made contact with Ms. Velasquez Molina and similarly situated immigrants seeking asylum in the United States.

because this was the same way her nephew and many other people in her town were murdered.

18.      Fearing a similar fate, and knowing that the local police and government tacitly support various criminal elements in her town, Ms. Velasquez Molina decided to flee Honduras.  Among other things, the local police do not become involved in investigating crime or preventing gang violence in Ms. Velasquez Molina's town without being paid bribes, so police and other governmental authorities would have taken no action to prevent potential crimes against Ms. Velasquez Molina and E.C. because it would occur at the financial detriment of the police.

19.      Between April and May 2018, Ms. Velasquez Molina continued to receive threatening text messages.  Ms. Velasquez Molina feared that she and E.C. would be killed if they stayed in Honduras any longer.  Therefore, she and E.C. fled their home in late May 2018 in an effort to obtain asylum in the United States.  Ms. Velasquez Molina and E.C. entered the United States on June 12, 2018.

20.      Shortly after Ms. Velasquez Molina and E.C. entered the United States, agents from Defendant Customs and Border Protection ("CBP") forcibly separated E.C. from Ms. Velasquez Molina, leaving Ms. Velasquez Molina disoriented and in shock at the loss of her child, causing substantial and lasting emotional trauma to both Ms. Velasquez Molina and E.C., particularly given the recent brutal murder of E.C.'s father by gang members and Ms. Velasquez Molina's pledge to keep her safe.  While Ms. Velasquez Molina is detained in Los Fresnos, Texas, E.C. is currently housed at a foster-care facility in San Antonio, Texas, and their contact is limited to no more than one telephone call per week.

21.     Press reports indicate that Defendants' policies of "zero tolerance" and forced family separations were intended to cause substantial emotional trauma to immigrants, like Ms. Velasquez Molina, who fled violence to seek asylum in the United States.

22.     On June 20, 2018, Donald Trump issued Executive Order 13841 ("Executive Order"), which ostensibly reversed his administration's policy of forcibly separating children from their families upon entry into the United States.  Notwithstanding, the Government continues to keep minor children, such as E.C., from their detained parents without any hearings or legal process and without any showing that the minor has suffered abuse or neglect, or that the parent is unfit.

23.     The Government's forcible separation policy has been widely denounced, including by mental health professionals.  The American Academy of Pediatrics has criticized the policy because of the severe trauma that forced separation from parents and other caregivers causes children.  This is particularly true for those children who are already traumatized due to conditions in their homeland.  The parents of these children are also traumatized.  The resulting cognitive and emotional damage from such family separations can be permanent. The Trump Administration acknowledged as much by ending the practice with the June 20, 2018 Executive Order.

24.     Ms. Velasquez Molina's forcible separation from E.C. was a devastating event that caused Ms. Velasquez Molina significant psychological and emotional trauma. Ms. Velasquez Molina and E.C. continue to suffer every day they are separated from one another.

25.     During this period of intense psychological trauma, Ms. Velasquez Molina applied for asylum in the U.S.  On July 15, 2018, Defendant USCIS conducted a credible fear interview of Ms. Velasquez.

26.    Having been forcibly separated from E.C. for weeks, Ms. Velasquez Molina was in severe emotional distress and in a state of extreme shock and grief during her interview. She struggled to focus and respond to the interviewer's questions and was incapable of describing fully the threats and governmental neglect that led her to flee Honduras with her daughter. These threats support her credible fear that Ms. Velasquez Molina and E.C. will be killed if they return to Honduras.

27.    Without a full understanding of the threats against Ms. Velasquez Molina and E.C. that caused them to embark on the dangerous journey to the U.S. border, and having failed to question Ms. Velasquez Molina adequately or to sufficiently consider the psychological trauma affecting her, the Asylum Officer found that she lacked a credible fear of persecution. As a result, given that a request for reconsideration of the negative credible fear determination was recently denied, Ms. Velasquez Molina is now scheduled to be deported, perhaps in the near future. Because defendants refuse to provide assurance that they will not deport Ms. Velasquez Molina pending a determination by Judge Sabraw regarding whether legal guardians are included in the *Ms. L* case, and Ms. Velasquez Molina fears her imminent deportation, an emergency motion for a restraining order is filed herewith.

28.    Ms. Velasquez Molina's deportation would further traumatize E.C., who continues to suffer psychological trauma while apart from Ms. Velasquez Molina.

29.    The Due Process Clause of the U.S. Constitution's Fifth Amendment prohibits the Government from separating children from their primary caregivers without justification and adequate process. This rule is based on the self-evident proposition that forced separation of families is abhorrent, and otherwise contrary to the basic principles of this country.

30.     Pursuant to federal statutes, including the Immigration and Naturalization Act, the Convention Against Torture, and associated implementing regulations, an asylum applicant's credible fear determination can be made only after a full and fair proceeding. Having been forcibly separated from E.C. only weeks before her credible fear interview, Ms. Velasquez Molina was denied such a right to a full and fair proceeding due to the grief and severe emotional trauma she was experiencing.

31.     Furthermore, as an adult parent who was forcibly separated from her minor child and detained in immigration custody by DHS, Ms. Velasquez Molina may be a member of the class certified in *Ms. L v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (ECF No. 82).

32.     This class certified by the *Ms. L* court includes all "adult parents" of separated minor children, and on its face does not exclude legal guardians, like Ms. Velasquez Molina. *See Ms. L v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (ECF No. 82).  As an initial matter, the *Ms. L* court repeatedly stated that its order directing Defendants to reunite class members and their minor children was meant to mitigate the suffering of separated families, and not merely biological parents and children. *See id.* at *3-6, *11-15, *22, *25, *27-28. Further, although the *Ms. L* court expressly excluded certain categories of parents from the class, the court did *not* exclude legal guardians or other non-biological or *de facto* parents. *Id.* at *17, *28 n.10 (excluding "parents with criminal history or communicable disease, or those apprehended in the interior of the country or subject to the [President's executive order prohibiting family separations after June 20, 2018].").

33.     In a tentative class settlement reached in *Ms. L*, Defendants have acknowledged that credible fear interviews conducted by Asylum Officers during the period in which asylum seekers were traumatized by forced family separation are inherently tainted, unfair, and contrary to law. (*See* Putative Settlement Agreement in *Ms. L*, copy attached hereto as Exhibit B). In that regard, the proposed settlement agreement, if approved, will require ICE to conduct *de novo*, good faith, credible fear interviews to detainees seeking asylum who, like Ms. Velasquez Molina, were suffering from the severe emotional trauma caused by forced family separations when their initial credible fear interview was conducted.

34.     It is apparent Defendants do not consider Ms. Velasquez Molina a member of the class, given that Ms. Velasquez Molina is presently considered eligible to be deported, but this is a determination that the *Ms. L* court has not yet made.[2]

35.     The United States District Court for the Southern District of California has prohibited Defendants from deporting *Ms. L* class members without their children absent the individual's affirmative, knowing, and voluntary waiver of that right, or a determination that the parent is unfit. There has been no such waiver by Ms. Velasquez Molina or determination in this case.

36.     On August 27, 2018, Ms. Velasquez Molina filed with the Houston, Texas Asylum Office a properly supported Request for Reconsideration of the negative finding from Ms. Velasquez Molina's earlier credible fear interview. On October 5, 2018, counsel for Ms. Velasquez Molina received a letter from USCIS stating that reconsideration was not warranted in her case. A copy of the Request for Reconsideration and USCIS letter in response are attached to this Complaint as Exhibits C & D.

---

[2] Undersigned counsel understand that certain legal guardians who received negative credible fear determinations based on interviews conducted while they were emotionally traumatized from the separation of their children intend to file papers in *Ms. L* seeking clarification that legal guardians are within the settlement class.

37.     As a result of the Defendants' actions in this case, Ms. Velasquez Molina is facing imminent deportation, which could potentially be in violation of the injunction issued in the *Ms. L* case, without having had a full and fair opportunity to pursue her asylum claim and forcing her to leave behind her minor child, who suffers each day she continues to be separated from her *de facto* mother.

38.     Given the irreparable and continuous emotional damage caused by Defendants' actions, Ms. Velasquez Molina requests a stay of her deportation and an order obligating the Asylum Office to conduct a good faith, *de novo* credible fear interview at which counsel for Ms. Velasquez Molina may attend. Ms. Velasquez Molina seeks no relief from the Court as it relates to the Asylum Office's conclusions from a *de novo* credible fear interview, only that Ms. Velasquez Molina be accorded a fair chance to establish her credible fear of persecution in an interview to be conducted in the future, at which Ms. Velasquez Molina is represented by counsel.

## CAUSES OF ACTION
### COUNT I
### (Violation of Asylum Statute)

39.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

40.     Under United States law, noncitizens with a credible fear of persecution in their country of origin shall have a fair opportunity to apply for asylum in the United States. *See* 8 U.S.C. § 1225(b)(1); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1). Ms. Velasquez Molina has a private right of action to vindicate her right to apply for asylum.

41.     Defendants' separation of Ms. Velasquez Molina from E.C. violated federal asylum law, because it impermissibly infringed upon Ms. Velasquez Molina's ability to pursue her asylum claim by requiring her to submit to her credible fear interview, while severely emotionally traumatized by the wrongful separation from her daughter.

## COUNT II
### (Punishment of Civil Detainee in Violation of Due Process)

42.     The U.S. Constitution's Fifth Amendment prohibits punishment of immigrants held in civil detention. *Bell v. Wolfish*, 441 U.S. 520, 538-39 & n.20 (1979).

43.     At all times after Ms. Velasquez Molina entered the United States in June 2018, Defendants and their agents and employees have continuously detained Ms. Velasquez Molina pursuant to civil immigration detention statutes. Defendants have never detained Ms. Velasquez Molina as a convicted criminal. Defendants intend to punish Ms. Velasquez Molina by deporting her back to Honduras without her child, to face the very real possibility of death, without giving her a fair opportunity to establish a credible fear of persecution and otherwise gaining asylum in the United States.

44.     Defendants' foregoing actions that punish Ms. Velasquez Molina are patently excessive in relation to any legitimate government objective.

## COUNT III
### (Family Separation in Violation of Substantive Due Process)
### (Against All Defendants Except USCIS Defendants in Their Official Capacities)

45.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

46.     The Due Process Clause of the United States Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Velasquez Molina.

47.      Ms. Velasquez Molina has a liberty interest under the Due Process Clause in remaining together as a family with her daughter E.C., and the means for mother and daughter to be reunited starts with a good faith, *de novo* credible fear interview that is not tainted by the forced separation of Ms. Velasquez Molina from E.C.

48.      The separation of Ms. Velasquez Molina from E.C. violates substantive due process because it furthers no legitimate purpose, much less a compelling governmental interest.

## COUNT IV
### (Administrative Procedure Act—Arbitrary and Capricious Practice)
### (Against All Defendants Except USCIS Defendants)

49.      All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

50.      The APA prohibits agency action that is arbitrary and capricious and contrary to constitutional right.

51.      Defendants' separation of Ms. Velasquez Molina from E.C. without a compelling justification and without a mechanism, protocol, or system to guarantee that the asylum process, including the opportunity for a fair credible fear interview that is conducted in good faith, is arbitrary and capricious, and in violation of the APA.  5 U.S.C. § 706(2)(A).

## COUNT V
### Petition for Habeas Corpus Under Treaties of the United States: International
### Convention on Civil and Political Rights (Claim for Injunctive and Declaratory Relief
### Against All Defendants in Their Official Capacities)

52.      All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

53.      The ICCPR has been signed and ratified by the United States.

54.     Under Article 17 of the ICCPR, "[n]o one shall be subjected to arbitrary or unlawful interference with her privacy, family, home or correspondence, nor to unlawful attacks on her honor and reputation." Article 23 states that "family is the natural and fundamental group unit of society and is entitled to protection by society and the State."

55.     By forcibly separating Ms. Velasquez Molina from E.C., Defendants have subjected Ms. Velasquez Molina to arbitrary, unlawful, and unjustified interference with her family in violation of the ICCPR, which improperly tainted her credible fear interview that was conducted after she was traumatized by the separation of her daughter.

<u>**COUNT VI**</u>

<u>**Petition for Habeas Corpus Under Laws and Treaties of the United States: United Nations Convention Relating to Status of Refugees and 8 U.S.C. § 1158 (Claim for Injunctive and Declaratory Relief Against All Defendants in Their Official Capacities)**</u>

56.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

57.     The United States is party to the 1967 Protocol Relating to the Status of Refugees and key provisions have been incorporated into U.S. law giving individuals a cause of action for litigation.  Under federal law, "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158.

58.     Because the right to seek asylum and the definition of refugee, which stems from an international treaty, is directly incorporated into federal law, it creates a legal cause of action for Ms. Velasquez Molina.

59.     Defendants have unlawfully interfered with Ms. Velasquez Molina's right to seek asylum and have punished her for doing so by traumatically separating her from her daughter and conducting her credible fear interview while she suffered from the severe emotional trauma of that separation.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays that this Court:

A.     Declare the separation of Ms. Velasquez Molina from E.C. to have unlawfully violated Ms. Velasquez Molina's substantive due process rights and interfered with her right to pursue a fair asylum claim in the United States;

B.     Enjoin Defendants from deporting or otherwise removing Ms. Velasquez Molina from the United States until she is given a good faith, *de novo* opportunity to pursue her asylum claims;

C.     Enter an Order requiring ICE and the Asylum Office to conduct a good faith, *de novo* credible fear interview, at which Ms. Velasquez Molina may be accompanied by counsel; and

D.     Order all other relief that is just and proper.

Respectfully submitted this 17th day of October, 2018.

*/s/ Joshua C. Toll*
Joshua C. Toll
DC Bar No. 463073
jtoll@kslaw.com

Wintta M. Woldemariam
DC Bar No. 1025108
wwoldemariam@kslaw.com

King & Spalding, LLP
1700 Pennsylvania Avenue
Suite 200
Washington, DC 20006
(T) 202-737-0500

*Attorneys for Plaintiff*