# Exhibit C

Exhibit C
000052

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**Policy Number 11064.2:**  **Detention and Removal of Alien Parents or Legal Guardians**

| | |
|---|---|
| **Issue Date:** | **August 29, 2017** |
| **Effective Date:** | **August 29, 2017** |
| **Superseded:** | ICE Policy 11064.1: Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities (Aug. 23, 2013) and ICE Policy 11031.1: Juveniles Encountered During Fugitive Operations (Aug. 24, 2007). |
| **Federal Enterprise Architecture Number:** | 306-112-002b |

1.  **Purpose/Background.** This Directive provides guidance regarding the detention and removal of alien parents and legal guardians of a minor child(ren), to include those who have a direct interest in family court or child welfare proceedings in the United States. It is intended to complement the detention standards and policies that govern the intake, detention, and removal of alien parents or legal guardians.

2.  **Policy.** U.S. Immigration and Customs Enforcement (ICE) personnel are responsible for the prompt and faithful execution of U.S. immigration laws. In pursuing the enforcement of these laws against alien parents and legal guardians of a minor child(ren), or who have a direct interest in family court or child welfare proceedings involving a minor child(ren) in the United States, ICE personnel should remain cognizant of the impact enforcement actions may have on a lawful permanent resident (LPR) or U.S. citizen (USC) minor child(ren). This Directive in no way limits the ability of ICE personnel to make individual enforcement decisions on a case-by-case basis. The security and safety of any ICE employee, detainee, ICE detention staff, or member of the public will be paramount in the exercise of the procedures and requirements of this Directive.

3.  **Definitions.** The following definitions apply for the purposes of this Directive only.

3.1.  **Family Court or Child Welfare Proceeding.** A proceeding in which a family or dependency court or child welfare agency adjudicates or enforces the rights of parents or minor child(ren) through determination or modification of parenting plans, child custody, visitation, or support, or the distribution of property or other legal obligations in the context of parental rights.

4.  **Responsibilities.**

4.1.  The **Enforcement and Removal Operations (ERO) Executive Associate Director** is responsible for:

   1)  Ensuring ERO employees comply with this Directive; and

2) Designating a Child Welfare Coordinator.

**4.2.** **Field Office Directors (FOD)** are responsible for designating a coordinator at the supervisory level in his or her Field Office to serve as the Field Point of Contact (POC) for the provisions listed in this Directive for his/her area of responsibility (AOR).

**4.3.** The **Child Welfare Coordinator** is responsible for:

1) Serving as the primary point of contact and subject matter expert for all ICE personnel regarding child welfare issues related to detained aliens;

2) With the assistance of ERO divisions responsible for data collection and analysis, evaluating, on an ongoing basis, information collected from ENFORCE, the Risk Classification Assessment, and other relevant ICE information technology systems regarding detained alien parents or legal guardians and sharing appropriate information with FODs and Field POCs on an ongoing basis; and

3) Providing guidance to FODs and Field POCs on:

   a) Appropriate initial placement and transfer decisions for detained alien parents or legal guardians;

   b) Appropriate provisions for escorted trips to family court or child welfare proceedings for detained alien parents or legal guardians;

   c) Appropriate visitation within ICE facilities; and

   d) Appropriate efforts, to the extent practicable, to allow a detained alien parent or legal guardian to make arrangements for their minor child(ren), including through increased access to counsel, consular officials, family and dependency courts, child welfare authorities' personnel, and/or family members or friends in order to arrange guardianship, or to obtain travel documents or otherwise make necessary travel arrangements, for his or her minor child(ren).

4) Coordinating as necessary with relevant ERO program offices, FODs, state or local family court or child welfare authority personnel, consular officials, and others to facilitate the timely response to issues or complaints received by ICE regarding the child welfare issues of detained aliens.

**4.4.** The **ERO Field POCs** are responsible for:

1) Addressing public inquiries related to the family ties of detained alien parents or legal guardians of a minor child(ren); and

2) Communicating with the Child Welfare Coordinator and completing all relevant training.

---

**5.     Procedures/Requirements.**

**5.1.    Minor Child(ren) Encountered During Enforcement Actions.**

1) ICE personnel should not take custody of or transport a minor child(ren) they encounter during an enforcement action who is either a USC or LPR, or who is otherwise not removable from the United States.

2) Absent indications of child abuse or neglect, ICE personnel should accommodate, to the extent practicable, an alien parent or legal guardian's efforts to make alternative care arrangements for his or her minor child(ren). ICE personnel should document the alien parent or legal guardian's request for transfer of custody of a USC or LPR minor child(ren) to a verifiable third party.

3) If the alien parent or legal guardian cannot make an alternative care arrangement for the minor child(ren), or if there is an indication that the minor child(ren) has been subject to abuse or neglect by a parent or other adult who may be asked to take custody of the minor child(ren), ICE personnel should contact the local child welfare authority or law enforcement agency to take custody of the minor child(ren).

4) Once a detained alien has been determined to be a parent or legal guardian of a USC or LPR minor child(ren), ICE personnel should enter this information in ENFORCE Alien Removal Module (EARM), or its successor system.

**5.2.    Initial Detention Placement and Subsequent Transfers of Detained Alien Parents or Legal Guardians.**

1) If the alien's minor child(ren) or family court or child welfare proceedings are within the AOR of initial apprehension, the FOD must refrain from making an initial placement or from subsequently transferring the alien outside of the AOR of apprehension, unless deemed operationally necessary and otherwise consistent with applicable ICE policies.

**5.3.    Participation in Family Court or Child Welfare Proceedings by Detained Alien Parents or Legal Guardians.**

1) Where practicable, the FOD must arrange for a detained alien parent or legal guardian's in-person appearance at a family court or child welfare proceeding when the detained alien parent or legal guardian's presence is required in order for him or her to maintain or regain custody of his or her minor child(ren) and:

a) The detained alien parent or legal guardian, or his or her attorney or other representative, timely requests with reasonable notice an opportunity to participate in such hearings;

b) The detained alien parent or legal guardian, or his or her attorney or other representative, has produced evidence of a family court or child welfare proceeding, including but not limited to, a notice of hearing, scheduling letter, court order, or other such documentation;

c) The family court or child welfare proceedings are located within a reasonable driving distance of the detention facility where the detained alien parent or legal guardian is housed;

d) Transportation and escort of the detained alien parent or legal guardian would not be unduly burdensome on Field Office operations; and

e) Such transportation and/or escort of the detained alien parent or legal guardian to participate in family court or child welfare proceedings does not present security and/or public safety concerns.

2) If it is impracticable to transport the detained alien parent or legal guardian to appear in-person in a family court or child welfare proceeding, the FOD should accommodate the detained alien parent or legal guardian's appearance or participation through video or standard teleconferencing from the detention facility or the Field Office to the extent that it is technologically feasible and approved by the family court or child welfare authority. The detained alien parent shall have the responsibility for obtaining approval from the family court or child welfare agency.

3) All actions taken pertaining to a detainee's participation in family court or child welfare proceedings should be documented in EARM, or its successor system.

4) In all cases, if the detained alien parent or legal guardian does not wish to attend and/or participate in a family court or child welfare proceeding, ICE will not interfere with the detained alien parent or legal guardian's decision, which shall be documented in the detainee's Alien-File (A-File).

## 5.4.   Visitation.

1) In the event an alien parent or legal guardian is detained, ICE will facilitate a means of regular visitation between the parent and minor child(ren).

2) Pursuant to ICE detention standards, at facilities where there is no provision for visits by minors, upon request, FODs must arrange for a visit by minor child(ren), step-child(ren), child(ren) under legal guardianship, and/or foster child(ren) within the first 30 days. After that time, upon request, ICE must consider a request for transfer, when practicable, to a facility that will allow such visitation. Upon request, FODs must continue monthly visits, if transfer is not approved, or until an approved transfer can be effected.[1]

---

[1] *See* National Detention Standards 2000 (Section H.2.d); Performance-Based National Detention Standards

3) In some cases, parent-child visitation may be required by the family court or child welfare authority in order for a detained alien parent or legal guardian to maintain or regain custody of his or her minor child(ren). If a detained alien parent or legal guardian, or his or her family member, attorney, or other representative produces documentation (e.g., a reunification plan, scheduling letter, court order, or other such documentation) of such a requirement, FODs must facilitate, to the extent practicable, the required visitation between the detained alien parent or legal guardian and his or her minor child(ren).

   a) Such special visitation may include contact visitation, within the constraints of safety and security for both facility staff and detainees.

   b) These special arrangements must not limit or otherwise adversely affect the detained alien parent or legal guardian's normal visitation rights under the relevant detention standards, or the safe and efficient operation of the detention facility.

4) If in-person visitation is not practicable, FODs may permit parent-child visitation through video or standard teleconferencing from the detention facility or the Field Office to the extent it is technologically feasible and approved by the family court or child welfare authority when visitation is court-ordered.

5) All actions documenting parent-child visitation should be recorded in EARM or its successor system. Copies of visitation orders will be placed in the A-File.

**5.5.    Coordinating Care or Travel of Minor Child(ren) Pending Removal of a Parent or Legal Guardian.**

1) Where detained alien parents or legal guardians who maintain their parental rights are subject to a final order of removal and ICE is effectuating their removal, FODs or their appropriate designees should accommodate, to the extent practicable, the detained parent or legal guardian's individual efforts to make arrangements for their minor child(ren). Such provisions may include the parent or legal guardian's attempt to arrange guardianship for his or her minor child(ren) to remain in the United States, or to obtain travel documents for the minor child(ren) to accompany them to their country of removal.

2) FODs must coordinate, to the extent practicable, within their local detention facilities and within the Field Office to afford detained alien parents or legal guardians access to counsel, consulates and consular officials, courts and/or family members in the weeks preceding removal in order to execute signed documents (e.g., powers of attorney, passport applications, appointments of guardians, or other permissions), purchase airline tickets, and make other necessary preparations prior to removal.

---

2008 (Section H.2.d); Performance-Based National Detention Standards 2011 (Section 1.2.b).

Guidance on the Detention and Removal of Alien Parents or Legal Guardians

3) In addition, the FOD may, subject to security considerations, provide sufficient notice of the removal itinerary to the detainee or through the detained alien's attorney or other representative so that coordinated travel arrangements may be made for the alien's minor child(ren).

**6.      Recordkeeping.**

**6.1.**    Court documentation, visitation orders, and family law case files will be maintained as part of the A-File. A-Files will be retained permanently and transferred to the National Archives after 100 years in accordance with the U.S. Citizenship and Immigration Services A-File records schedule (N1-566-08-011).

**6.2.**    Information related to minor child(ren) encountered during enforcement actions and family court or child welfare proceedings will be stored in the Enforcement Integrated Database and retained for 75 years in accordance with DHS records schedule Biometric with Limited Biographical Data (DAA-0563-2013-001) item 6, Law Enforcement.

**7.      Authorities/References.**

**7.1.**    Executive Order 13,768, "Enhancing Public Safety in the Interior of the United States," 82 Fed. Reg. 8799 (Jan. 30, 2017).

**7.2.**    Memorandum from DHS Secretary John Kelly, "Enforcement of the Immigration Laws to Serve the National Interest" (Feb. 20, 2017).

**7.3.**    2011 Performance-Based National Detention Standards.

**7.4.**    2008 Performance-Based National Detention Standards.

**7.5.**    2000 National Detention Standards.

**8.      Attachments.** None.

**9.      No Private Right Statement.**  This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice.  It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.  Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

---

# OFFICE OF REFUGEE RESETTLEMENT
An Office of the Administration for Children & Families

---

## Children Entering the United States Unaccompanied: Section 2
Safe and Timely Release from ORR Care

Published: January 30, 2015

Categories: Unaccompanied Children's Services

### 2.1 Summary of the Safe and Timely Release Process

The Office of Refugee Resettlement (ORR) has policies and procedures in place to ensure the care and safety of children who are apprehended in the United States without a parent or legal guardian available to provide care and custody and without immigration status. These policies require the timely release of children and youth to qualified parents, guardians, relatives or other adults, referred to as "sponsors." Safe and timely release must occur within a setting that promotes public safety and ensures that sponsors are able to provide for the physical and mental well-being of children.

ORR evaluates potential sponsors' ability to provide for the child's physical and mental well-being, as the law requires ORR to protect children from smugglers, traffickers, or others who might seek to victimize or otherwise engage the child in criminal, harmful or exploitative activity. The process for the safe and timely release of an unaccompanied alien child from ORR custody involves many steps, including: the identification of sponsors; the submission by a sponsor of the application for release and supporting documentation; the evaluation of the suitability of the sponsor, including verification of the sponsor's identity and relationship to the child, background checks, and in some cases home studies; and planning for post-release.

*Posted 1/27/15*

### 2.2 Application for the Safe and Timely Release of an Unaccompanied Alien Child from ORR Care

ORR begins the process of finding family members and others who may be qualified to care for an unaccompanied alien child as soon as the child enters ORR's care. Parents, other relatives, or close family friends can apply to have the child released to their care.

*Posted 1/27/15*

### 2.2.1 Identification of Qualified Sponsors

The care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider), the ORR funded facility that cares for the child, interviews the child as well as parents (see the section below on how ORR confirms relationship with child), legal guardians, and/or family members to identify qualified custodians ("sponsors"). If a child is either too young or there are other factors that prohibit the care provider from obtaining potential sponsor information from the unaccompanied alien child, the care provider may seek assistance from the child's home country consulate in collaboration with the **ORR Federal Field Specialist (ORR/FFS)** (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist) or from a reputable family tracing organization. Finding a sponsor for the child is an ongoing process that continues during the unaccompanied alien child's stay in ORR care and custody in the event that the primary potential sponsor or primary release plan is not approved.

ORR releases children to a sponsor in the following order of preference:[1] parent; legal guardian; an adult relative (brother, sister, aunt, uncle, grandparent or first cousin); an adult individual or entity designated by the parent or legal guardian (through a signed declaration or other document that ORR determines is sufficient to establish the signatory's parental/guardian relationship); a licensed program willing to accept legal custody; or an adult individual or entity seeking custody when it appears that there is no other likely alternative to long term ORR care and custody. ORR has grouped these release options into the following categories.[2]

- **Category 1:** Parent or legal guardian (This includes qualifying step-parents that have legal or joint custody of the child or teen)
- **Category 2:** An immediate relative—a brother, sister, aunt, uncle, grandparent or first cousin. (This includes biological relatives, relatives through legal marriage, and half-siblings)
- **Category 3:** Other sponsor, such as distant relatives and unrelated adult individuals
- **Category 4:** No sponsors identified

Although ORR gives preference to a parent or legal guardian when determining release plans, there are instances when ORR would not release an unaccompanied alien child to a parent or legal guardian. These include:

Exhibit C
000059

- There has been a court ordered termination of parental rights over the child.
- There is substantial evidence that the child would be at risk of harm if released to the parent or legal guardian.

In some cases, an unaccompanied alien child enters the United States with her biological child. In those cases, ORR will identify a sponsor for the unaccompanied alien child as well as for the infant or toddler. In most instances, it is in the best interest of the unaccompanied alien child and her biological child to be released to the same sponsor. When that occurs, the sponsor is assigned the same category for the infant as for the UAC mother. This is true even if the potential sponsor would be assigned a different category (based on their relationship status) if he or she were to sponsor the infant alone.

*Revised 4/11/16*

### 2.2.2 Contacting Potential Sponsors

The child's **care provider (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Care Provider)** is responsible for implementing safe screening methods when contacting and communicating with potential sponsors. These methods are to ensure that a potential sponsor does not pose a risk to the unaccompanied alien child, to other children in the care provider facility or to care provider staff.

These safe screening methods include:

- Use of appropriate interpreters
- Identity of the sponsor is obtained
- Verification of family relationships
- Coordination with the unaccompanied alien child's parents, legal guardians, or closest relatives prior to contacting non-relative adult potential sponsors
- Screening for exploitation, abuse, trafficking, or other safety concerns
- Engaging the child to communicate openly with care provider staff about his or her own sense of safety

*Posted 1/27/15*

### 2.2.3 The Application for Release

All potential sponsors must complete an application in order for a child to be released to them from ORR custody (the "Family Reunification Application").

Within 24 hours of identification of a potential sponsor for a child or youth, the care provider or the ORR National Call Center sends the sponsor a package with the application and related documents (called the Family Reunification Packet or FRP).

The application package includes the following documents:

- A flyer with contact information on organizations offering a Legal Orientation Program for Custodians (LOPC)
- Family Reunification Packet Cover Letter
- Authorization for Release of Information
- Family Reunification Application
- Sponsor Care Agreement
- Sponsor Declaration
- Fingerprint instructions
- Sponsor Handbook
- (If parent or legal guardian wishes to specify) Letter of Designation for Care of a Minor
- Privacy Notices

The care provider is available to help the potential sponsor complete the application. The care provider also informs potential sponsors that they may submit additional information to support the application and reminds potential sponsors of the deadlines for completing the forms. The sponsor may also receive assistance in completing the application at some fingerprinting locations.

*Revised 6/7/18*

### 2.2.4 Required Documents for Submission with the Application for Release

In addition to completing and signing the Family Reunification Application (FRA) and the *Authorization for Release of Information*, potential sponsors must provide documentation of identity, address, and relationship to the child they seek to sponsor (see also **The Family Reunification Checklist for Sponsors (https://www.acf.hhs.gov/programs/orr/resource/unaccompanied-childrens-services#Family Reunification Packet for Sponsors)).[3]** Potential sponsors must also submit documentation verifying the identity of the children they seek to sponsor, and evidence verifying the identity of all adults residing with the sponsor and all adult care givers identified in a sponsor care plan. In addition to their use as evidence of the foregoing, all documentation submitted under this section is used as part of the overall sponsor assessment process. See **Section 2.4 Sponsor**

Exhibit C
000060

10/12/2018                    Children                ng the United States Unaccompanied: Section 2 | Off            Refugee Resettlement | ACF

Assessment Criteria and Home Studies (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4). As a result, ORR may in its discretion require potential sponsors to submit additional documentation beyond the minimums specified below.

### Proof of Sponsor Identity

To verify their identity, all potential sponsors must submit original versions or legible copies of government-issued identification documents. They may present either one selection from List A or two or more documents from List B. If a potential sponsor presents selections from list B, at least one selection must contain a legible photograph. Expired documents are acceptable for the purpose of establishing identity.

### LIST OF ACCEPTABLE DOCUMENTS

| LIST A |
| --- |
| U.S. Passport or U.S. Passport Card |
| Permanent Resident Card or Alien Registration Receipt Card (Form I-551) |
| Foreign Passport that contains a photograph |
| Employment Authorization Document that contains a photograph (Form I-766) |
| U.S. Driver's License or Identification Card |

OR

| LIST B |
| --- |
| U.S. Certificate of Naturalization |
| U.S. Military Identification Card |
| U.S. Social Security Card |
| Birth Certificate |
| Marriage Certificate |
| Court order for name change |
| Foreign national identification card |
| Consular passport renewal receipt that contains a photograph |
| Mexican consular identification card |
| Foreign driver's license that contains a photograph |
| Foreign voter registration card that contains a photograph |
| Canadian border crossing card that contains a photograph |
| Mexican border crossing card that contains a photograph with valid Form I-94 |
| Refugee travel document that contains a photograph |
| Other similar documents |

### Proof of identity of adult household members and adult care givers identified in a sponsor care plan

All potential sponsors must submit documentation verifying the identity of non-sponsor adults in their household or in a sponsor care plan. For all such adults, potential sponsors must submit at least one identification document that contains a photograph. The document may be from either List A or List B above, and may be an original version or a legible copy of the document. Expired documents are acceptable for the purpose of establishing identity. In addition, potential sponsors may submit an original version or legible copy of an ORR Verification of Release Form, but only to verify the identity of adults under the age of 21, and only if the form contains a photograph. ORR will not accept a Verification of Release as proof of identity if it does not contain a photograph, and/or is for anyone 21 and older.

### Proof of Address

All potential sponsors must submit at least one form of documentation verifying their current address. Acceptable forms of documentation include original versions or legible copies of:

- A current lease or mortgage statement dated within the last two months before submission of the FRA;
- A utility bill, addressed in the sponsor's name and dated within the last two months before submission of the FRA;
- A bank statement dated within the last two months before submission of the FRA;
- A payroll check stub issued by an employer, dated within the last two months before submission of the FRA;
- A piece of mail from a county, state, or federal agency (with the exception of ORR) with the sponsor's name and residential address and dated within the last two months before submission of the FRA;
- A notarized letter from a landlord on the business stationary of the real property owner confirming the sponsor's address; and
- Other similar documents reliably indicating that the sponsor resides at the claimed address, dated within the last two months before submission of the FRA.

Exhibit C
000061                    3/22

ORR may use alternative methods to verify address. For example, ORR may send a letter containing specific instructions to the address given by the sponsor, and provide a timeline by which the sponsor must comply with the instructions.

**Proof of Child's Identity**

The potential sponsor or child's family must provide the unaccompanied alien child's birth certificate or a legible copy of the child's birth certificate.

**Proof of Sponsor-Child Relationship**

The potential sponsor must provide at least one form of evidence verifying the relationship claimed with the child.[4] Acceptable documents include original versions or legible copies of:

- Birth certificates;
- Marriage certificates;
- Death certificates;
- Court records;
- Guardianship records;
- Hospital records;
- School records;
- Written affirmation of relationship from Consulate; and
- Other similar documents.

Category 3 potential sponsors who are unable to provide verifiable documentation of a familial relationship with the unaccompanied alien child must submit evidence that reliably and sufficiently demonstrates a bona fide social relationship with the child and/or the child's family that existed before the child migrated to the United States. Care providers must attain sufficient corroboration to be confident that they have received needed verification of the relationship between the potential sponsor and the child or child's family. In the absence of sufficient evidence of a bona fide social relationship with the child and/or the child's family that existed before the child migrated to the United States, the child will not be released to that individual.

If a potential sponsor has been charged with or convicted of any crime or investigated for the physical abuse, sexual abuse, neglect, or abandonment of a minor, he or she must provide related court records and police records, as well as governmental social service records or proof of rehabilitation related to the incident.

If a sponsor, household member, or adult caregiver provides any false information in the application of release and/or accompanying documents or submits fraudulent documents for the purposes of obtaining sponsorship of the child, ORR will report the incident to HHS/Office of the Inspector General (OIG) and to U.S. Immigration and Customs Enforcement's Homeland Security Investigations (HSI). Fraudulent documents include documents on which the address, identity, or other relevant information is false or documents that have been manufactured or altered without lawful authorization. ORR will deny release if it is determined that fraudulent documents were submitted during the application of release process.

*Revised 11/14/16*

## 2.2.5 Legal Orientation Program for Custodians

All potential sponsors of children and youth under the care of ORR should attend a presentation provided by the Legal Orientation Program for Custodians (LOPC). The purpose of this program is to inform potential sponsors of their responsibilities in ensuring the child's appearance at all immigration proceedings, as well as protecting the child from mistreatment, exploitation, and trafficking, as provided under the Trafficking Victims Protection Reauthorization Act of 2008. The program also provides information about possible free legal counsel (pro bono legal services) for the youth or child during the immigration court process.

The Office of Legal Access Programs (OLAP), within the Executive Office for Immigration Review (EOIR) at the U.S. Department of Justice, manages the LOPC and contracts with legal service organizations around the country to provide LOPC services to potential sponsors in their local communities or in metropolitan areas served by the program. EOIR is the entity in the federal government that is also responsible for adjudicating immigration cases by fairly, expeditiously, and uniformly interpreting and administering the nation's immigration laws.

The unaccompanied alien child's **case manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)**is responsible for informing potential sponsors about all procedures related to the child's case--including attendance at an LOPC presentation. The Family Reunification Packet (FRP) that goes to each potential sponsor includes an *Authorization for Release of Information* that the sponsor must sign before the case manager may schedule an appointment for LOPC services. All potential sponsors should submit the *Authorization for Release of Information* immediately and prior to submitting the complete FRP to ensure timely scheduling of their LOPC session.

Upon receipt of the *Authorization*, the case manager schedules an appointment for a potential sponsor to attend a presentation with one of the LOPC providers around the country. Alternatively, the case manager contacts the **LOPC National Call Center at (888) 996-3848** and arranges for the Call Center to schedule an LOPC appointment for the potential sponsor or mail an LOPC Information Packet to the sponsor.

When evaluating family members and other potential sponsors, ORR considers whether they have attended an LOPC presentation. Attendance at an LOPC presentation is a factor in the release assessment.

Exhibit C
000062

*Revised 12/4/17*

### 2.2.6 Additional Questions and Answers about this Topic

**Q: Will sponsors receive the Family Reunification Packet through the mail or electronically?**
A: Case managers will work with sponsors to identify the best way to get the packets to them, whether electronically or by fax transmission or postage paid overnight mail.

**Q: Do sponsors need assistance from an attorney or a paid representative to complete the packet?**
A: No. The unaccompanied alien child's case manager will be able to help the potential sponsor complete the form and explain the process.

**Q: Is it possible for an unaccompanied alien child's spouse to be a sponsor?**
A: ORR considers release to an unaccompanied alien child's adult spouse on a case by case basis.

**Q: Is it possible for family members in the United States to proactively contact ORR about children who may have entered the country unaccompanied?**
A: Yes. Family members may call the ORR National Call Center, at (800) 203-7001.

*Posted 1/27/15*

## 2.3 Key Participants in the Release Process

ORR's sponsor assessment and release decision process requires coordination among care provider staff, nongovernmental third-party reviewers (Case Coordinators), ORR staff, other Federal agencies, stakeholders, and Child Advocates, where applicable.

**Case Managers (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)** communicate with potential sponsors, gather necessary information and documentation, talk to any relevant stakeholders, and assess sponsors to formulate a recommendation to the Case Coordinator. **Case Coordinators (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)** concurrently review all assessment information on an unaccompanied alien child and sponsor to also make a recommendation. Once Case Managers and Case Coordinators agree on a particular recommendation for release, the recommendation will be sent to the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** for a final release decision. If the Case Manager and Case Coordinator cannot agree on a recommendation, the case is elevated to the ORR/FFS for further guidance.

*Revised 8/1/16*

### 2.3.1 ORR/Federal Field Specialists (ORR/FFS)

ORR/FFS are ORR's field staff located regionally throughout the country and are assigned to a group of care providers within a region. They have the authority to approve all unaccompanied alien children transfer and release decisions; oversee care providers to ensure all services, policies, and procedures are properly provided and implemented; and serve as a liaison to local stakeholders, including other Federal agencies, local legal service providers, local communities, Child Advocates, etc. ORR/FFS also provide guidance, direction, and technical assistance to care providers.

With regard to the release process, ORR/FFS oversee individual unaccompanied alien children cases and review Case Manager, Case Coordinator, and Child Advocate recommendations; and make final release and transfer decisions for ORR. ORR/FFS also make final decisions whether home studies are conducted and/or post-release services are provided.[5] ORR/FFS coordinate all aspects of a child's case with care provider staff, Case Coordinators, stakeholders, and other Federal agencies.

*Revised 8/1/16*

### 2.3.2 Case Managers

Care provider Case Managers perform a variety of duties, including coordinating the completion of assessments of unaccompanied alien children, completing individual service plans, assessing potential sponsors, making transfer and release recommendations, and coordinating the release of a child or youth from ORR care and custody. (The care provider provides a range of services through other trained staff that are described in Section 3: Services.)

The role of the Case Manager within the release process is to initiate and maintain ongoing communication with the potential sponsor, gather sponsor information, and assess whether the potential sponsor is a suitable sponsor who can safely provide for the physical and mental well-being of the child or youth. When communicating with the potential sponsor, the Case Manager may:

- Provide direct assistance on completing the sponsor application packet and ensuring provision of supporting documentation;
- Involve the sponsor in making a plan for individualized services for the unaccompanied alien child, as appropriate;
- Keep the sponsor informed of the child's progress and current functioning;
- Provide the sponsor with detailed information about the child's needs in order to fully assess the sponsor's ability to provide care and services, including completing a sponsor care plan, when necessary;

Exhibit C
000063

- Discuss services that are available in the sponsor's community for the child; and
- Share relevant information on the unaccompanied alien child in accordance with applicable privacy and information-sharing policies and in collaboration with the unaccompanied alien child and the child's clinician in a way that best serves the child's safety and well-being.

The Case Manager's role is also to ensure that information is gathered or shared with the appropriate staff and stakeholders during the sponsor assessment process. The Case Manager provides weekly status updates to the unaccompanied alien child's Case Coordinator and ORR/FFS on the progress in achieving a safe and timely release with family members as well as potential challenges that may delay a release. The Case Manager provides weekly status updates (monthly for children in LTFC) to the UAC on the child's case and provision of services, preferably in person. The Case Manager informs other stakeholders of the progress of a child's case, including notification that an unaccompanied alien child may not have a potential sponsor, and any final release decisions. Stakeholders may include local legal service providers and attorneys of record, other local service providers, Child Advocates, post-release and home study providers, and other Federal agencies. Case Managers, in collaboration with the ORR/FFS and Case Coordinator, will also work with law enforcement officials regarding an unaccompanied alien child's pending release if the minor has outstanding criminal charges or other issues.

*Revised 6/7/18*

### 2.3.3 Case Coordinators

Case Coordinators are non-governmental contractor field staff assigned to one or more care providers primarily to review unaccompanied alien children cases and provide transfer and release recommendations to ORR staff. The Case Coordinator is responsible for integrating all areas of assessment from the Case Manager, Child Advocates, where applicable, and other stakeholders into a release plan that will provide for the unaccompanied alien child's physical and mental well-being. After staffing and reviewing a case, Case Coordinators and Case Managers must agree on a release recommendation. If there is a disagreement or a particularly complex case, then the case will be elevated to the ORR/FFS for further guidance.

- Providing timely review and assessment of potential sponsors and unaccompanied alien children to make recommendations for release to ORR in conjunction with the Case Manager;
- Assisting ORR in ensuring that children are placed in the least restrictive setting while receiving all appropriate services;
- Meeting with individual unaccompanied alien children and care provider staff at designated ORR-funded care provider sites;
- Providing targeted child welfare-based assistance to care provider staff, as directed by ORR staff;
- Making recommendations for home study and post-release services for at-risk children;
- Making placement recommendations for children who require more specialized levels of care, such as long-term foster care and residential treatment centers;
- Participating in collaborative meetings with local stakeholders; and
- Participating in staffing of cases with care providers and designated ORR staff.

*Revised 8/1/16*

### 2.3.4 Child Advocates

ORR may appoint **Child Advocates (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Child Advocate)** for victims of trafficking and other vulnerable children. Child Advocates are third parties who make independent recommendations regarding the best interests of a child. Their recommendations are based on information that is obtained from the child and other sources (e.g., the child's parents, potential sponsors, government agencies, and other stakeholders). Child Advocates formally submit their recommendations to ORR and/or the immigration court in the form of Best Interest Determinations (BIDs). ORR considers BIDs when making decisions regarding the care, placement, and release of unaccompanied alien children, but it is not bound to follow BID recommendations.

As required by the TVPRA, ORR provides Child Advocates with access to information necessary to effectively advocate for the best interests of children with whom they are working. After providing proof of appointment, Child Advocates have access both to their clients and to their clients' records. Child Advocates may access their clients' entire original case files at care provider facilities, or request copies from care providers.[6] Further, they may participate in case staffings.

Child Advocates and ORR maintain regular communication, informing each other of considerations or updates that impact service provision and release planning.

Child Advocates' duties include:

- Client Visits: The Child Advocate meets with the unaccompanied alien child regularly and speaks with the child's care provider staff in order to understand the child's background and current situation.
- Decision Making: The Child Advocate helps the unaccompanied alien child understand legal and care-related issues, explains the consequences of decisions made in response to those issues, and assists the child in making decisions when the child requests such help.
- Best Interests Advocacy: The Child Advocate develops a service plan containing best-interest recommendations with respect to the care, placement, and release options; and keeps the care provider, ORR, and the legal service provider or attorney of record apprised of the plan and advocacy efforts.

Exhibit C
000064                6/22

- Case updates: The Child Advocate collaborates and regularly communicates with the care provider, ORR, and other stakeholders in the planning and performance of advocacy efforts. For children who have been released from ORR care, Child Advocates provide timely updates as appropriate or as requested by ORR.

In most cases, ORR appoints Child Advocates while children are in its custody. However, in its discretion, ORR may appoint Child Advocates for unaccompanied alien children after their release from ORR care.

*Posted 8/1/16*

## 2.4 Sponsor Assessment Criteria and Home Studies

As noted in the **Section 2.2 Application for Safe and Timely Release of an Unaccompanied Alien Child from ORR Care**, the application process for release of an unaccompanied alien child involves a number of steps, including background checks (see **Section 2.5 ORR Policies on Requesting Background Checks**) and submission of the application by the sponsor. This section describes the criteria ORR uses to assess each potential sponsor's ability to provide for the physical and mental well-being of the unaccompanied alien child, and the role of home studies in the process.

The sponsor assessment reviews a sponsor's strengths, resources, risk factors and special concerns within the context of the unaccompanied alien child's needs, strengths, risk factors, and relationship to the sponsor. ORR also determines whether to conduct a home study, as required by the law or as necessary to ensure the welfare of the child

*Revised 3/15/16*

### 2.4.1 Assessment Criteria

ORR considers the following factors when evaluating family members and other potential sponsors:

- The nature and extent of the sponsor's previous and current relationship with the child or youth and the unaccompanied alien child's family, if a relationship exists.
- The sponsor's motivation for wanting to sponsor the child or youth.
- The unaccompanied alien child's parent or legal guardian's perspective on the release to the identified potential sponsor (for cases in which the parent or legal guardian has designated a sponsor).
- The child or youth's views on the release and whether he or she wants to be released to the individual.
- The sponsor's understanding of the unaccompanied alien child's needs, as identified by ORR and the care provider.
- The sponsor's plan to provide adequate care, supervision, access to community resources, and housing.
- The sponsor's understanding of the importance of ensuring the unaccompanied alien child's presence at all future hearings or proceedings, including immigration court proceedings, and the sponsor's attendance at a Legal Orientation Program for Custodians (LOPC) presentation. See section **2.2.5**.
- The linguistic and cultural background of the child or youth and the sponsor, including cultural, social, and communal norms and practices for the care of children.
- The sponsor's strengths, resources, and mitigating factors in relation to any risks or special concerns of the child or sponsor, such as a criminal background, history of substance abuse, mental health issues, or domestic violence and child welfare concerns.
- The unaccompanied alien child's current functioning and strengths in relation to any risk factors or special concerns, such as children or youth who are victims of human trafficking; are a parent or are pregnant; have special needs, disabilities or medical or mental health issues; have a history of criminal, juvenile justice, or gang involvement; or a history of behavioral issues.

*Revised 12/4/17*

### 2.4.2 Home Study Requirement

The care provider screens each case to determine whether to conduct a home study of the potential sponsor as required under the **Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) (http://www.gpo.gov/fdsys/pkg/BILLS-110hr7311enr/pdf/BILLS-110hr7311enr.pdf)**. Information about the child is collected during initial placement into an ORR facility and throughout his or her stay. The care provider then uses the information collected about and from the child in conjunction with the sponsor assessment process to determine whether to conduct a **home study (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Home Study)**. The TVPRA requires home studies under the following circumstances:

1. The child is a victim of a severe form of trafficking in persons;
2. The child is a special needs child with a disability as defined by section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102);
3. The child has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened; or
4. The child's sponsor clearly presents a risk of abuse, maltreatment, exploitation or trafficking, to the child based on all available objective evidence.

Exhibit C
000065                    7/22

ORR also requires a home study before releasing any child to a non-relative sponsor who is seeking to sponsor multiple children, or who has previously sponsored or sought to sponsor a child and is seeking to sponsor additional children. ORR requires a home study for children who are 12 years and under before releasing to a non-relative sponsor.

In circumstances in which a home study is not required by the TVPRA or ORR policy, the Case Manager and Case Coordinator may recommend that a home study be conducted if they agree that the home study will provide additional information required to determine that the sponsor is able to care for the health, safety and well-being of the child. See **Footnote 5**.

The care provider must inform the potential sponsor whenever a home study is conducted, explaining the scope and purpose of the study and answering the potential sponsor's questions about the process. In addition, the home study report will be provided to the potential sponsor if the release request is denied. See also Section **2.7.7**.

### Home Study Report and Final Recommendation

A home study consists of interviews, a home visit, and a written report containing the home study case worker's findings. A home study assesses the potential sponsor's ability to meet the child's needs, educates and prepares the sponsor for the child's release, and builds on the sponsor assessment conducted by the care provider staff to verify or corroborate information gathered during that process. The home study is conducted as a collaborative psycho-educational process in which the home study case worker identifies areas where additional support, resources, or information are needed to ensure a successful sponsorship, and provides corresponding psycho-educational assistance. The final recommendation must present a comprehensive and detailed assessment of the sponsor's ability to care for the needs of the child and address any additional information that emerges during the course of the home study regarding the sponsor, the sponsor's household or the child.

The home study provider must contact the care provider within 24 hours of home study referral acceptance, and must also contact the sponsor to schedule the home visit within 48 hours of referral acceptance. The home study provider makes a recommendation to ORR about release with the sponsor. The ORR Federal Field Specialist takes the home study provider's recommendation into consideration when making a release decision. ORR has final authority on release decisions.

The home study provider submits the written report within 10 business days of receipt of the referral. Any requests by the home study provider to extend beyond 10 business days or to cancel a home study must be submitted in writing to the ORR Federal Field Specialist for consideration.

All releases following home studies require post-release services.

### Must a child receive a Trafficking Eligibility or Interim Assistance Letter from HHS prior to being referred for a TVPRA-mandated home study under #1 above?

No, a child does not need to receive a Trafficking Eligibility Letter from HHS prior to being referred for a home study. A care provider may refer a child for a home study under #1 above if, during the assessment for trafficking, the care provider determines the child is a victim of a severe form of trafficking in persons.

### In determining whether a TVPRA-mandated home study is required under #3 above, care providers consider the following questions:

### What is physical abuse?

Physical abuse is an act that results in physical injury, such as red marks, cuts, welts, bruises, broken bones, missing or broken teeth or muscle strains. Acts of physical abuse include but are not limited to punching, beating, kicking, biting, hitting (with a hand, stick, strap or other object), burning, strangling, whipping, or the unnecessary use of physical restraint.

### Is physical abuse intentional?

Generally, physical abuse is intentional; however, physical abuse can occur when physical punishment goes too far. In other words, an accidental injury of a child may be considered physical abuse if the act that injured the child was done intentionally as a form of punishment.

### Must a child have physical injuries to meet the standard for physical abuse under #3?

No, in some cases, a child may not have physical injuries at the time the care provider makes an assessment. Children may be in various stages of the healing process or thoroughly healed from the physical abuse by the time they arrive in ORR care.

### For the purposes of #3, who can physically or sexually abuse a child?

A parent, legal guardian, caregiver or other adult with a special relationship to the child can physically or sexually abuse a child.

### Who is considered to be a caregiver or adult with a special relationship?

A caregiver is defined as any person who is entrusted with the child's care and who lives with the child. Other adults with a special relationship to the child could include a teacher, priest, or health care provider.

Exhibit C
000066

10/12/2018                    Children Coming the United States Unaccompanied: Section 2 | Office Refugee Resettlement | ACF

**What is sexual abuse?**

Sexual abuse of a child by a parent, legal guardian, caregiver or other adult with a special relationship to the child includes any of the following acts, with or without the consent of the child or youth:

- Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
- Contact between the mouth and the penis, vulva, or anus;
- Contact between the mouth and any body part where the adult has the intent to abuse, arouse, or gratify sexual desire;
- Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument where the adult has the intent to abuse, arouse, or gratify sexual desire;
- Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks where the intent is to abuse, arouse, or gratify sexual desire;
- Any attempt, threat, or request by the adult to engage in the activities described above;
- Any display by the adult of his or her uncovered genitalia, buttocks, or breast in the presence of the child; and
- Voyeurism.

State laws on statutory rape are not the standard in assessing whether a youth has been sexually abused for the purposes of #3. Care providers use the definition from the ORR rule concerning sexual abuse and harassment; however, for the purposes of determining when a home study is required, the perpetrator is limited to a parent, legal guardian, caregiver or other adult with a special relationship to the child.

**Under what circumstances is a child's health or welfare considered to have been significantly harmed or threatened?**

Care providers assess the totality of the circumstances in determining whether a child's health or welfare has been significantly harmed or threatened. In evaluating a specific case, care providers take into consideration not only the definitions of physical and sexual abuse listed

above, but also the circumstances surrounding the incident and any behaviors that the child or youth exhibits as a result of the abuse. Circumstances to consider include but are not limited to: the amount of time that has passed since the abuse, the period of time in which the abuse occurred, the cultural context in which the abuse occurred, the age of the child or youth at the time of the abuse, and the relationship between the youth and the perpetrator.

Care providers take into consideration the situations and behaviors listed below, but do not make a determination based solely on the presence or absence of one of them.

- The child experiences on-going medical issues from physical injuries.
- The child exhibits negative or harmful behaviors, thoughts or emotions, such as, but not limited to, excessive hostility or aggression towards others, fire setting, cutting, depression, eating disorders suicidal ideation or substance abuse.

In evaluating difficult cases, the care provider should consult with their ORR/FFS.

*Revised 1/9/17*

### 2.4.3 Additional Questions and Answers on This Topic

**Q: What happens if a new sponsor is identified during the sponsor assessment process?**
A: If there are multiple potential sponsors, the ORR-funded care provider will exhaust all efforts to facilitate a release to a parent or legal guardian while also contacting and evaluating other potential sponsors concurrently. ORR has release order preferences and will evaluate sponsors concurrently in accordance with the preference orders to determine the best placement for the child.

*Posted 1/27/15*

## 2.5 ORR Policies on Requesting Background Checks of Sponsors

In order to ensure the safety of an unaccompanied alien child and consistent with the statutory requirements under the TVPRA of 2008, ORR requires a background check of all potential sponsors and household members. The background check takes place as soon as the potential sponsor and adult household members have completed the Authorization for Release of Information form, submitted fingerprints, and provided a copy of a valid government issued photo identification. ORR transmits the fingerprints to the Department of Homeland Security to perform criminal and immigration status checks on ORR's behalf.  DHS then submits the results to ORR.

ORR also conducts additional background checks without going through DHS.  Depending on the circumstances, these checks may involve background checks on criminal history (including through the FBI) and child abuse/neglect checks (CA/N)

Adult care givers identified in a sponsor care plan also require background checks, as provided in the chart at section 2.5.1.

*Revised 6/7/18*

Exhibit C
000067

### 2.5.1 Criteria for Background Checks

All potential sponsors and adult household members undergo a background check for criminal history and immigration status using fingerprints. These checks are conducted by the Department of Homeland Security on behalf of ORR and DHS then submits the results to ORR.

In addition, ORR independently conducts background checks without going through DHS. This independent background check process varies, depending in part on the relationship of the potential sponsor to the unaccompanied alien child:

- Parents and legal guardians (Category 1)
- Other immediate adult relatives, such as brother, sister, aunt, uncle, grandparent or first cousin (Category 2)
- Distant relatives and unrelated adults (Category 3)

As a part of this independent background check process, all potential sponsors must undergo a public records check.

The following indicates the **minimum** requirements for the process for sponsors. ORR may require additional checks, verifications, or procedures for sponsors in any category if there are any unresolved issues or questions related to the well-being of the child.

The following table lists the types of background checks performed, and explains when they are performed, based on the potential sponsor's relationship to the unaccompanied alien child and other release considerations. The chart identifies when DHS performs the check on ORR's behalf. (See also Section **2.7.4 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.4)**, listing findings barring release)

| Type of Background Check | Purpose | Persons Checked | When Performed |
|---|---|---|---|
| Public Records Check | Identifies arrests or convictions of sponsors, adult household members, or others. If a check reveals a criminal record or safety issue, it will be used to evaluate the sponsor's ability to provide for a child's physical and mental well-being. | Potential Sponsors in Categories 1-3.<br>Non-sponsor adult household members and adult care givers identified in a sponsor care plan. | In all cases |
| Sex Offender Registry Check, conducted through the U.S. Department of Justice National Sex Offender Public Website | Identifies sponsors and others that have been adjudicated as sex offenders through a national search and, if available, a local public registry search. | Potential Sponsors in Categories 1-3.<br>Non-sponsor adult household members and adult care givers identified in a sponsor care plan. | In all cases |
| Immigration Status Check conducted by the Department of Homeland Security using fingerprints | Provides information about immigration court actions and immigration statuses, including information about orders of removal. The information is also used to determine whether a sponsor care plan is required for release (see Section 2.7.6). | Potential Sponsors in Categories 1-3.<br>Non-sponsor adult household members. | In all cases. |
| | | Adult care givers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |
| National (FBI) Criminal History Check, based on digital fingerprints or digitized paper prints | Determines whether a sponsor or adult household member has a criminal history, has been convicted of a sex crime, or has been convicted of other crimes that compromise the sponsor's ability to care for a child. | Potential Sponsors in Categories 1-3.<br>Non-sponsor adult household members. | In all cases. |
| | | Adult care givers identified in a sponsor care plan. | Where a public records check reveals possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study |
| DHS criminal history check, based on digital fingerprints or digitized paper prints. | Determines whether a sponsor or adult household member has a criminal history, including: biographic criminal check of the national databases, a biographical check for wants and warrants. | Potential Sponsor in Categories 1-3.<br>Non-sponsor adult household members. | In all cases. |
| | | Adult care givers identified in a | Where a public records check reveals |

Exhibit C

| | | | |
|---|---|---|---|
| | | sponsor care plan. | possible disqualifying factors under 2.7.4; or where there is a documented risk to the safety of the unaccompanied alien child, the child is especially vulnerable, and/or the case is being referred for a home study. |
| Child Abuse and Neglect (CA/N) Check, obtained on a state by state basis as no national CA/N check repository exists | Checks all localities in which the sponsor or household member has resided in the past 5 years. | Potential Sponsors in Categories 1-2. | In cases that require a home study, and cases where a special concern is identified. |
| | | Potential Sponsors in Category 3. | In all cases. |
| | | Non-sponsor adult household members and adult care givers identified in a sponsor care plan. | In any case where a sponsor is required to undergo a CA/N check. |
| State Criminal History Repository Check and/or Local Police Check | Assists in locating police or arrest records, or other criminal offense details, as needed. | Potential Sponsors in Categories 1-3.<br><br>Non-sponsor adult household members and adult care givers identified in a sponsor care plan. | Used on a case-by-case basis when there is an unresolved criminal arrest or issue that is still in process. |

*Revised 6/7/18*

### 2.5.2 Results of Background Checks on Release Decisions

As an entity providing for the health and well-being of children and youth, ORR uses the results from background checks to determine whether release to a potential sponsor is safe. A potential sponsor may be denied a release request, based on the results of a background check, and a release decision may remain undecided until ORR obtains the results of a potential sponsor's criminal history, immigration background checks, or child abuse and neglect reports.

The biometric and biographical information, including fingerprints, is shared with Federal, state or local law enforcement agencies and may be used consistent with their authorities, including with the DHS to determine immigration status and criminal history, and with the DOJ to investigate criminal history through the National Criminal Information Center.

**Criminal History**
In the event that a background check of a potential sponsor or, if applicable, adult household member, reveals criminal history or a safety risk, the care provider and ORR evaluate this information and request the potential sponsor to provide any additional information that may demonstrate the potential sponsor's ability to provide for the child's physical and mental well-being.

If release is not barred by Section **2.7.4 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.4)**, the decision to release a child or youth to a sponsor in these circumstances is based on all the following considerations:

- The severity of the criminal and/or child abuse/neglect history;
- The length of time that has passed since the criminal act or child abuse/neglect allegation occurred;
- The relationship of the potential sponsor and other adult household members to the child or youth; and
- The evidence, if any, of rehabilitation since the criminal act or child abuse/neglect allegation occurred.

In cases where the proposed sponsor or other adult household member has been charged with, but not convicted of, a crime, ORR may postpone a final release decision until the legal issue is resolved.

If the sponsor has an outstanding order of removal, or a pending order of removal that is related to an underlying criminal act, the decision to release a child or youth to a sponsor in these circumstances is based on the considerations described above.

**Sponsor Immigration Status**
ORR does not disqualify potential sponsors on the basis of their immigration status. ORR uses status information to determine whether a sponsor care plan is necessary in the event the sponsor is required to leave the United States. (See Section **2.6 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.6)** Effect of Sponsor Immigration Status on Release of Unaccompanied Alien Children)

**Summary Table of Results of Background Checks and Next Steps**
The following table shows procedures following the results of background checks.

| Background Check Results | Next Steps |
|---|---|
| No arrest record; check completed | Proceed with release decision-making process. See Section **2.7 Recommendations and** Exhibit C |

|  | Decisions on Release. |
|---|---|
| Criminal arrest record and/or substantiated adverse child welfare findings; check completed | Determine whether release is barred. See Section 2.7.4 Deny Release Request. If release is not barred, elevate safety issues for third party review. For any findings that could affect safe release, care provider and/or ORR will obtain additional documents to determine current situation (e.g. sponsor is on probation, criminal charges are resolved, etc.). Final release decision shall take into account the criminal records and all other relevant information that is available. |
| Immigration status concern (e.g. out of status, no legal status, prior order of removal, or no immigration record for non-citizen) | Review FBI record and DHS report, and/or Department of Justice/Executive Office of Immigration Review's case status hotline for information related to possible unresolved immigration issues. |
| Pending results; check not complete | ORR/FFS will provide instructions to care provider |

*Revised 6/7/18*

### 2.5.3 Additional Questions and Answers on This Topic

**Q1: Where can a sponsor get his or her fingerprints taken?**
A1: ORR funds a network of digital fingerprint providers at locations that are not affiliated with law enforcement entities. Sponsors may also go to any local police department for paper fingerprinting services in the event a digital fingerprint provider is not conveniently located near a sponsor's location. Fingerprinting services are not available at ORR headquarters and offices.

**Q2: Is there a deadline for complying with a fingerprinting request?**
A2: Yes. When required, fingerprints should be provided within 3 business days of the request. Release may be delayed if fingerprints are not provided promptly.

**Q3: Are potential sponsors required to disclose to the care provider that they have a record of a criminal charge or child abuse?**
A3: Yes. The sponsor must immediately advise the care provider of this situation and gather detailed documentation of the charges, dispositions, police reports, and evidence of rehabilitation.

**Q4: What happens if a public records or sex offender registry check returns disqualifying findings for a sponsor, adult household member, or adult caregiver identified in the sponsor care plan?**
A4: The Case Manager informs the sponsor, and provides the sponsor with a copy of the results. The sponsor and household member/adult care giver may dispute the results, and provide further evidence or information that a check was not performed correctly (e.g., the wrong date of birth was used, the individual's name was spelled incorrectly, etc.). The Case Manager will rerun the check using the corrected information. If further information is required, such as additional background checks, the Case Manager will work with the sponsor and household member/adult caregiver to obtain the information, or make other arrangements so that the safety risk to the unaccompanied alien child is mitigated (e.g., taking steps so that the household member no longer resides in the sponsor's home, identifying a new adult care giver, etc.).

**Q5: What happens if an adult household member refuses to cooperate with a background check?**
A5: ORR denies release when an adult household member refuses to have a background check.

*Revised 6/7/18*

## 2.6 Sponsor Immigration Status and Release of Unaccompanied Alien Children

ORR does not disqualify potential sponsors on the basis of their immigration status. ORR does seek immigration status information, but this is used to determine if a sponsor care plan will be needed if the sponsor needs to leave the United States; it is not used as a reason to deny a family reunification application.

The biometric and biographical information, including fingerprints, is shared with Federal, state or local law enforcement agencies and may be used consistent with their authorities, including with the DHS to determine immigration status and criminal history, and with the DOJ to investigate criminal history through the National Criminal Information Center.

*Revised 6/7/18*

### 2.6.1 Application Process

**How does ORR obtain information about immigration status?**
ORR asks potential sponsors and adult household members for their Alien Registration Number on the Authorization for Release of Information form. In

Exhibit C
000070

addition, as described below, ORR requires sponsors to provide fingerprints for background checks, and those checks may produce information about the individual's immigration status. During the sponsor assessment process, case managers also ask sponsors about their immigration status.

*Revised 6/7/18*

### 2.6.2 Fingerprints

**Who must provide fingerprints as part of the release process?**
All individuals seeking to sponsor a UAC and adults in their household are subject to fingerprinting requirements.

**What does ORR use the fingerprints for?**
Using digital fingerprints or digitized paper prints, the HHS PSC, on behalf of ORR, conducts a check of the FBI national criminal history and state repository records. ORR also transmit fingerprints to the Department of Homeland Security to search criminal and immigration databases on ORR's behalf and transmit the results to ORR.

*Revised 6/7/18*

### 2.6.3 Other Background Checks Related to Immigration
**Reserved.**

*Revised 6/7/18*

### 2.6.4 Results of Immigration-Related Checks

**What does ORR do with the results of the FBI fingerprint and DHS checks?**
The information may be used to determine if a sponsor care plan will be needed in the event that the sponsor needs to leave the United States. In addition, if the basis for an immigration action is underlying criminal activity, ORR and its grantee will review the underlying criminal activity to determine if it is reason to disqualify the potential sponsor, as ORR does when evaluating other criminal activity uncovered during the fingerprint process, but unrelated to immigration actions.

**Who else may have access to the results of the FBI fingerprint checks?**
ORR does not release the results of the FBI fingerprints to outside organizations or individuals, other than ORR grantees that are caring for the children. The FBI and DHS databases contain overlapping records, and the FBI system automatically initiates a notification to the DHS system if a particular record has been searched.

**What is in a sponsor care plan?**
A sponsor care plan identifies the individual that will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child, **see Section 2.7.6**.

*Revised 6/7/18*

## 2.7 Recommendations and Decisions on Release

ORR care providers must make a recommendation to release a child to a potential sponsor after the care provider has evaluated the sponsor, completed the background checks, and collected necessary documentation to prove the sponsor's identity and relationship to the child or youth. The recommendation must take into consideration all relevant information, including the report and recommendations from a home study, if conducted; laws governing the process; and other factors in the case. The ORR care provider makes a recommendation for release if the care provider concludes that the release is safe and the sponsor can care for the physical and mental well-being of the child.

- The care provider **Case Manager (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Manager)**and the **Case Coordinator (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#Case Coordinators)**must make a recommendation to the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** on the release of the unaccompanied alien child to a particular sponsor. If the Case Manager and Case Coordinator cannot agree on a particular recommendation, or if the case is particularly complicated, they may refer the case directly to an ORR/FFS for guidance on how to proceed.
- After receiving the recommendation, the **ORR/FFS (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Federal Field Specialist)** or other **ORR/Headquarters staff (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-guide-to-terms#ORR/Headquarters Staff)**reviews the recommendation.
- The ORR/FFS makes a release decision in consideration of the recommendations from the care provider, the Case Coordinator, and other stakeholders, including the home study provider and the Child Advocate, where applicable.

Exhibit C
000071          13/22

Only ORR (or ACF) has the authority to make the final decision on a release. The Case Manager, Case Coordinator, and other stakeholders have an important role in making recommendations. In some cases, the ORR/FFS may send a case back to the Case Coordinator and Case Manager to obtain additional information before he/she makes a release decision.

The ORR/FFS makes one of the following release decisions:

- Approve release to sponsor
- Approve release with post-release services
- Conduct a home study before a final release decision
- Deny release
- Remand for further information

*Revised 06/29/18*

## 2.7.1 Approve Release Decisions

A recommendation for a release without a home study or post-release services is made after a thorough assessment of the sponsor, the sponsor's family unit, and the needs of the child or youth are taken into consideration. The ORR/FFS makes this release decision when he/she determines that the release is a safe release, the sponsor can care for the health and well-being of the child, and the sponsor understands that the child is to appear for all immigration proceedings.

*Posted 1/27/15*

## 2.7.2 Approve Release with Post-Release Services

The ORR/FFS may approve a release with post-release services when the release is determined to be safe and appropriate, but the unaccompanied alien child and sponsor need additional assistance to connect them to appropriate resources in the community or to address other concerns, such as mental health or other needs that could benefit from ongoing assistance from a social welfare agency. The sponsor must consent before services may be provided and may withdraw his or her consent at any time after services have begun, since post-release services are a voluntary service. These services are provided for 6 months after the unaccompanied alien child is released to the sponsor, unless ORR determines that services should be provided for a shorter or longer period of time. Post- release services do not continue under any circumstances beyond an unaccompanied alien child's 18th birthday.

*Posted 1/27/15*

## 2.7.3 Conduct a Home Study Before a Final Release Decision Can Be Made

The Case Manager and Case Coordinator will recommend to the ORR/FFS that a home study be conducted prior to making a release recommendation. If the ORR/FFS agrees, he/she will approve that a home study be conducted before a final release decision can be made. The home study provider uses a standardized template to complete the review; however, the provider may include any additional supporting documentation regarding the sponsor or the child or youth, as applicable.

Once the Case Manager and Case Coordinator receive the home study results, they will review the case in light of the home study and make a release recommendation to the ORR/FFS. (See Section 2.4.2 Home Study Requirements. (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.4.2))

*Posted 1/27/15*

## 2.7.4 Deny Release Request

ORR *will* deny release to a potential sponsor if any one of the following conditions exists:

- The potential sponsor is not willing or able to provide for the child's physical or mental well-being;
- The physical environment of the home presents risks to the child's safety and well-being; or
- Release of the unaccompanied alien child would present a risk to him or herself, the sponsor, household, or the community.

ORR may deny release to a Category 1 potential sponsor, and will deny release to a Category 2 or Category 3 potential sponsor, if any one of the following conditions exists:[8]

- The potential sponsor or a member of the potential sponsor's household:
  - Has been convicted of (including plea of no contest to) a felony involving child abuse or neglect, spousal abuse; a crime against a child or children (including child pornography); or a crime involving violence, including rape, sexual assault or homicide;
  - Has been convicted within the last five years of a felony involving physical assault, battery, or drug-related offenses;
  - Has been convicted of a misdemeanor for a sex crime, an offense involving a child victim, or a drug offense that compromises the sponsor's ability to ensure the safety and well-being of the child;
  - Has been convicted of alien smuggling or a crime related to trafficking in persons; or

Exhibit C
000072

- Has other criminal history or pending criminal charges or child welfare adverse findings from which one could reasonably infer that the sponsor's ability to ensure the safety and well-being of the child is compromised;

or

- A potential sponsor or a member of the potential sponsor's household has one of the following substantiated adverse child welfare findings:[9]
  - Severe or chronic abuse or neglect;
  - Sexual Abuse or other sexual offenses;
  - Abuse or neglect of other children in the household;
  - Long-term mental illness or deficiency;
  - Long-term alcohol or drug induced incapacity; or
  - Involuntary termination of the parental rights to another child.

*Revised 3/15/16*

### 2.7.5 Remand Release Request – Decision Pending

The ORR/FFS may remand the release request, which means that the ORR/FFS is sending the recommendation back to the Case Manager for additional information or additional actions before a final release decision can be made. ORR records the date of the remand and the decision will be pending further review until the documentation is provided or actions are taken.

*Posted 1/27/15*

### 2.7.6 Issues Related to Recommendations and Decisions

**Safety Plan**

Case managers, in consultation with Case Coordinators, will prepare a safety plan, as needed, to address any outstanding needs the child may have after he/she is released and to ensure the child's safe and successful integration into the sponsor family unit and community. The goal of the safety plan is to ensure the child's safety. The safety plan also has guidance for sponsors on participating in post-release services and on other areas of care critical to the child's adjustment in the family and the community, such as maintaining mental health services for the unaccompanied alien child, accessing any needed special education, helping the child avoid drugs and alcohol, and using appropriate parenting techniques.

**Sponsor Care Plan**

A sponsor care plan identifies an adult care giver who will assume care of an unaccompanied alien child if the sponsor becomes unable to care for the child. ORR requires a sponsor care plan for sponsors who may leave the United States, including all sponsors who are not U.S. citizens or lawful permanent residents (green card holders). The goal is to ensure an unaccompanied alien child has a caregiver, despite any complications resulting from the sponsor's immigration situation.
The plan:

- Identifies an adult care giver, and their relationship to the UAC and sponsor, if any;
- Includes copies of the adult care giver's vetting information (background check results, identifying documentation, etc.);
- Includes the adult care giver's contact information;
- Discusses how the adult care giver is notified that a transfer of care is required, if required;
- Provides that the adult care giver will abide by the terms of the *Sponsor Care Agreement*;
- Includes the date the UAC's Case Manager discusses the plan with the child's sponsor and the adult care giver identified in the plan; and,
- Includes additional information and materials (e.g., a Safety Plan), as appropriate or when required by ORR.

A copy of the sponsor care plan is maintained in the UAC's case file, provided to the sponsor, and to the adult care giver identified in the plan.

*Revised 6/7/18*

### 2.7.7 Notification of Denial

If the ORR Director denies the reunification application of an unaccompanied alien child's parent or legal guardian, the ORR Director notifies the parent/legal guardian by sending a denial letter to the parent/legal guardian within 30 business days of receiving all the required information and documentation in a specific case. If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the ORR Director sends a copy of the denial letter to the child.

The denial letter includes:

- An explanation of the reason(s) for the denial;
- Instructions on how to obtain the child's case file;
- The supporting materials and information that formed the basis for ORR's decision; and

Exhibit C
000073

- An explanation of the process for requesting an appeal of the denial (see Section 2.7.8 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.8)). The explanation also informs the prospective sponsor that he or she may submit additional information to support an appeal request.

If ORR denies sponsorship to a potential sponsor who is not the parent or legal guardian of the child, the care provider notifies the potential sponsor, providing the reasons for the denial verbally. If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the Director notifies the child in writing of the reason for denial as described above.

*Revised 5/2/17*

### 2.7.8 Appeal of Release Denial

The parent/legal guardian may seek an appeal of the ORR Director's denial decision by submitting a written request to the Assistant Secretary for Children and Families within 30 business days of receipt of the final decision from the ORR Director. The appeal request must state the basis for seeking the appeal, and may include any additional information that the requester believes is relevant to consideration of the request. The request may seek an appeal without a hearing or may seek a hearing.

Without a Hearing: If the requester seeks an appeal without a hearing, the Assistant Secretary will consider only the denial letter and the information referenced therein, as well as the appeal request and any additional supporting materials or information submitted by the requester. The Assistant Secretary will notify the requester of a decision within 30 business days of receiving the request. If more information is needed to make a decision, or for good cause, the Assistant Secretary may stay the request until he or she has the information needed. In these cases, the Assistant Secretary will send a written explanation to the parent/legal guardian, communicating a reasonable process and timeframe for addressing the situation and making a determination.

With a Hearing: If the requester seeks a hearing, the Assistant Secretary will schedule a teleconference or video conference, per the requester's preference, at which time the requester (or the requester's representative) may explain the reasons why he or she believes the denial was erroneous. The Assistant Secretary will consider the testimony and evidence presented at the hearing, in addition to the original denial letter and information referenced therein, to make a determination. The Assistant Secretary will notify the requester of the decision in writing within 30 business days following the hearing.

The Assistant Secretary makes a determination based on the relevant law, regulations, and policies concerning release decisions (see Section 2.7.4 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.7.4) for the basis of a release denial). Any evidence submitted to the Assistant Secretary by ORR is shared with the requester in compliance with privacy protections. The Assistant Secretary conducts a de novo review and may affirm or overturn the ORR Director's decision, or send the case back to ORR for further action. Appeals are recorded, and the requester may request a copy of the recording. The Assistant Secretary's decision to affirm or overrule the ORR Director's decision to deny release to a parent/legal guardian is the final administrative decision of the agency on the application that had been under consideration. However, if there is new information or a change in circumstances regarding the reunification application of a parent/legal guardian, or regarding the unaccompanied alien child's circumstances, a new reunification application may be submitted that highlights the change(s) and explains why such changes should alter the initial decision. Similarly, if ORR discovers new information or becomes aware of a change in the circumstances of the parent/legal guardian and/or the unaccompanied alien child, ORR may assess the case anew.

**Denial for sole reason that the unaccompanied alien child is a danger to himself/herself or the community**

If the sole reason for denial of release is concern that the unaccompanied alien child is a danger to himself/herself or the community, the unaccompanied alien child may seek an appeal of the denial as described above, provided the parent/legal guardian is not seeking an appeal. If the child expresses a desire to seek an appeal, ORR appoints a child advocate to assist the unaccompanied alien child in seeking the appeal. The unaccompanied alien child may seek such appeal at any time after denial of release while the child is in ORR custody.

*Revised 5/2/17*

## 2.8 Release from Office of Refugee Resettlement (ORR) Custody

Release from the ORR custody is a three-step process:

- After care planning, which occurs during the entire safe and timely release process.
- Transfer of physical custody of the child, which occurs as soon as possible once an unaccompanied alien child is approved for release.
- Closing the case file, which occurs within 24 hours of the unaccompanied alien child's discharge.

*Posted 1/27/15*

### 2.8.1 After Care Planning

Throughout the release process, care providers work with the child and sponsor so that they can plan for the child's after care needs. This involves working with the sponsor and the unaccompanied alien child to:

Exhibit C
000074        16/22

10/12/2018                          Children entering the United States Unaccompanied: Section 2 | Office of Refugee Resettlement | ACF

- Prepare them for post-ORR custody
- Assess the sponsor's ability to access community resources
- Provide guidance regarding safety planning, sponsor care plans, and accessing services for the child

Once the sponsor assessment is complete and a sponsor has been approved, the sponsor enters into an agreement with the Federal government in which he or she agrees to comply with the following provisions (see *Sponsor Care Agreement*) **(https://www.acf.hhs.gov/programs/orr/resource/unaccompanied-childrens-services#Family Reunification Packet for Sponsors):**

- Provide for the physical and mental well-being of the child, including but not limited to, food, shelter, clothing, education, medical care and other services as needed.
- For those who are not the child's parent or legal guardian, make best efforts to establish legal guardianship with the local court within a reasonable time.
- Attend a legal orientation program provided under the Department of Justice/Executive Office for Immigration Review's (EOIR) Legal Orientation Program for Custodians (Sponsors), if available where he or she resides.
- Depending on where the unaccompanied alien child's immigration case is pending, notify the local Immigration Court or the Board of Immigration Appeals within 5 days of any change of address or phone number of the child (Form EOIR-33). (If applicable, file a Change of Venue motion on the child's behalf.10 **(https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#foot10)** A "change of venue" is a legal term for moving an immigration hearing to a new location.)
- Notify the DHS/U.S. Citizenship and Immigration Services within 10 days of any change of address by filing an Alien's Change of Address Card (AR-11) or electronically at **http://www.uscis.gov/ (http://www.uscis.gov/ar-11)ar-11 (http://www.uscis.gov/ar-11)**Visit **(https://www.acf.hhs.gov/disclaimers)** disclaimer page **(https://www.acf.hhs.gov/disclaimers).**
- Ensure the unaccompanied alien child's presence at all future proceedings before the DHS/Immigration and Customs Enforcement (ICE) and the DOJ/EOIR.
- Ensure the unaccompanied alien child reports to ICE for removal from the United States if an immigration judge issues a removal order or voluntary departure order.
- Notify local law enforcement or state or local Child Protective Services if the child has been or is at risk of being subjected to abuse, abandonment, neglect or maltreatment or if the sponsor learns that the child has been threatened, has been sexually or physically abused or assaulted, or has disappeared. (Notice should be given as soon as it is practicable or no later than 24 hours after the event or after becoming aware of the risk or threat.)
- Notify the National Center for Missing and Exploited Children at 1-800-843-5678 if the unaccompanied alien child disappears, has been kidnapped, or runs away. (Notice should be given as soon as it becomes practicable or no later than 24 hours after learning of the child's disappearance.)
- Notify ICE at 1-866-347-2423 if the unaccompanied alien child is contacted in any way by an individual(s) believed to represent an alien smuggling syndicate, organized crime, or a human trafficking organization. (Notice should be provided as soon as possible or no later than 24 hours after becoming aware of the information.)
- In case of an emergency, such as serious illness, destruction of home, etc., temporarily transfer physical custody of the child to another person who will comply with the terms of the *Sponsor Care Agreement.*
- In the event that a sponsor who is not the child's parent or legal guardian is no longer able and willing to care for the unaccompanied alien child and is unable to temporarily transfer physical custody, notify ORR using the ORR National Call Center, at 1-800-203-7001.

The agreement includes the notice that the release of the unaccompanied alien child to the sponsor's care does not grant the child any legal immigration status and that the child must present himself or herself for immigration court proceedings.

The care provider also provides the sponsor with a Sponsor Handbook that outlines the responsibilities in caring for the unaccompanied alien child's needs for education, health, obtaining legal guardianship, finding support to address traumatic stress, keeping children safe from child abuse and neglect and from trafficking and exploitation. The handbook reiterates the importance of continuing with immigration proceedings and includes links to EOIR's website and forms. The handbook discusses laws related to employment, such as the Federal law prohibiting minors under the age of 18 from working in hazardous occupations.

After care planning includes the care provider explaining the following to the unaccompanied alien child and the sponsor:

- The U.S. child abuse and neglect standards and child protective services that are explained on the Administration for Children and Families **Child Welfare Information Gateway (https://www.childwelfare.gov/)** website.
- Human trafficking indicators and resources
- Basic safety and how to use the 9-1-1 number in emergency situations.

The care provider notifies all stakeholders of the child's discharge date and change of address and venue, as applicable. Where applicable, ORR also provides Child Advocates with access to their clients' documents and forms, and helps child advocates to remain informed about their clients' after-care plans and legal proceedings. The care provider coordinates with the legal service provider or attorney of record to help complete the necessary legal forms. Stakeholders notified of the change of address and, if applicable, request for change of venue for the immigration case include the U.S. Immigration and Customs Enforcement (ICE) Office of Chief Counsel and the U.S. Executive Office for Immigration Review (EOIR) Immigration Court Administrator.

Exhibit C
000075

10/12/2018                    Children (    )g the United States Unaccompanied: Section 2 | Of(    )Refugee Resettlement | ACF
*Revised 6/7/18*

## 2.8.2 Transfer of Physical Custody

Once ORR approves an unaccompanied alien child for release, the care provider collaborates with the sponsor to ensure physical discharge happens as quickly as possible (within 3 calendar days after ORR approves the release). The care provider notifies DHS prior to the physical release to allow DHS an opportunity to comment on the imminent release as well as time to prepare any DHS paperwork for the ICE Chief Counsel's office.

The care provider ensures that all the child's belongings—including those he or she had at the time they entered ORR custody and any they acquired during their stay—are given to the child and sponsor at time of release. The care provider also makes sure that the child and sponsor have copies of files or papers needed for the child to obtain medical, educational, legal or other services following release.

Whenever possible, sponsors are expected to come to the care provider or to an offsite location designated by the care provider for the transfer of physical custody of the child.

Under extenuating circumstances (e.g., a sponsor cannot travel due to a medical condition), ORR may approve an unaccompanied alien child to be escorted to a sponsor. Similarly, if a sponsor pick-up would result in delay of a timely release of the child, ORR may approve an escort for an unaccompanied alien child.

If an unaccompanied alien child's final destination involves air travel and the sponsor will not be traveling with the child, the care provider must follow the procedures in the table below concerning care provider escorts and airline escorts.

Unaccompanied alien children who are under the age of 14 years old traveling via air may only be escorted by care provider staff, unless an ORR/FFS Supervisor has approved the use of an airline escort in advance.

The sponsor is responsible for the unaccompanied alien child's transportation costs and, if the care provider is escorting the child, for the care provider's transportation or airfare. If an airline escort is used, the sponsor is responsible for paying the airline's unaccompanied alien minor service fee.

Under no circumstances will ORR pay for the sponsor's airfare.

The following table summarizes procedures for each method of transfer.

| Method of Transfer | Pre-transfer Steps | At point of Transfer |
|---|---|---|
| Sponsor pick-up at care provider facility | <ul><li>Case manager collaborates with the sponsor on selecting a date and time for the sponsor to pick-up the child</li><li>Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP (see Section **2.2.4**)</li></ul> | <ul><li>Care provider checks the sponsor's identification upon arrival by comparing it to the identification previously submitted by the sponsor in the FRP (see Section **2.2.4**)</li><li>If the sponsor's identification matches the identification previously submitted, care provider gives the sponsor the unaccompanied alien child's release documents and personal possessions</li><li>Care provider advises the sponsor, if traveling by airplane, to check in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear</li><li>Care provider may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in the FRP.</li></ul> |
| Care provider escort to offsite transfer location | <ul><li>Case manager collaborates with the sponsor in selecting a time and location for transfer, and flights for the child and care provider escort</li><li>Case manager notifies the sponsor that he/she is required to bring the same valid government issued photo identification previously submitted by the sponsor in the FRP to the transfer location</li><li>Case manager arranges for the sponsor to pay for the child and care provider escort's transportation costs, including airline tickets where applicable</li><li>Case manager prepares a copy of the sponsor's identification that was submitted in the FRP, for the care provider escort to take to the transfer location</li></ul> | <ul><li>If traveling by air, at the departure airport, care provider escort checks in the child at the ticket counter with a copy of the child's DHS form I-862, Notice to Appear</li><li>At the transfer location, care provider escort compares the sponsor's identification with the copy previously submitted by the sponsor in the FRP. If the identification documents correspond, care provider escort releases the child to the sponsor and provides the sponsor with the release documents and the child's personal effects and papers</li><li>Care provider escort may not release the child unless the sponsor presents the same valid government issued photo identification he or she submitted in the FRP. If the sponsor does not produce valid identification, if the care provider escort has concerns regarding the sponsor's identity, or if the care provider escort has concerns regarding the safety of the situation upon meeting the sponsor, the care provider escort will return with the child to the care provider facility</li></ul> |

Exhibit C
000076

| Travel via airline's unaccompanied alien minor escort policy (only for youth 14 years of age and older) | • Case manager contacts the airline to obtain information on airline escort requirements, in order to ensure that they are adequate to protect the safety of the child, and to ensure that both the sponsor and the care provider can meet the requirements<br>• Case manager arranges for the sponsor to pay for the child's airplane ticket and for the airline unaccompanied alien minor escort fee<br>• Case manager ensures that the government issued photo identification submitted by the sponsor in the FRP will be acceptable to the airline to complete custody transfer<br>• The care provider instructs the sponsor to meet the unaccompanied alien child and escort at the airport with the identification they submitted in the FRP, and to follow the requirements of the airline's unaccompanied alien minors escort policy | • At the departure airport, care provider checks in the unaccompanied alien child at the ticket counter with a copy of the DHS form I-862, Notice to Appear, and a copy of the approved identification of the sponsor picking up the child<br>• At the departure airport, care provider gives the child their personal possessions and documents and a copy of the sponsor's approved identification, and mails an additional copy of the release documents to the sponsor<br>• At the destination airport, the sponsor arrives two hours before the child's arrival time, and contacts the care provider immediately to check in.<br>• The airline follows its standard procedures for escorting a child traveling alone to the designated parent or guardian<br>• The care provider contacts the sponsor shortly after the child's scheduled arrival time to confirm the child's transfer from the airline representative to the sponsor<br>• If the sponsor fails to arrive at the airport or fails to contact the care provider upon arrival at the airport, the care provider will notify the ORR/FFS and the Project Officer, and the child will either be returned to the care provider or taken to another nearby care provider facility. |

When arranging for children to travel with airline escorts, care providers should also refer to the U.S. Department of Transportation recommendations for unaccompanied alien minors traveling by air ("When Kids Fly Alone").

*Revised 3/14/16*

## 2.8.3 Closing the Case File

The care provider completes a Discharge Notification form within 24 hours of the physical discharge of a youth, and then emails the form to DHS and other stakeholders. Once a child is released to a sponsor, ORR's custodial relationship with the child terminates.

Although the custodial relationship ends, the care provider keeps the case file open for 30 days after the release date in order to conduct the Safety and Well Being Follow Up Call (see Section **2.8.4**) and document the results of the call in the case file. The care provider closes the case file record after completing the Safety and Well Being Follow Up Call.

*Revised 3/14/16*

### Section 2.8.4 Safety and Well Being Follow Up Call

Care providers must conduct a Safety and Well Being Follow Up Call with an unaccompanied alien child and his or her sponsor 30 days after the release date. The purpose of the follow up call is to determine whether the child is still residing with the sponsor, is enrolled in or attending school, is aware of upcoming court dates, and is safe. The care provider must document the outcome of the follow up call in the child's case file, including if the care provider is unable to contact the sponsor or child after reasonable efforts have been exhausted. If the follow up call indicates that the sponsor and/or child would benefit from additional support or services, the care provider must refer the sponsor or child to the ORR National Call Center and provide the sponsor or child the Call Center contact information. If the care provider believes that the child is unsafe, the care provider must comply with mandatory reporting laws, State licensing requirements, and Federal laws and regulations for reporting to local child protective agencies and/or law enforcement.

*Revised 3/14/16*

### 2.8.5 Post-Release Services for UAC with Zika Virus Disease or Infection

#### Testing

ORR follows CDC guidance and recommendations for Zika virus laboratory testing. CDC recommends testing for all pregnant UAC without symptoms, but who are from or traveled through areas with ongoing Zika virus transmission and are within 2–12 weeks of arrival in the United States. Other UAC who develop two or more symptoms consistent with Zika may be tested for Zika virus upon consultation with a healthcare provider.

#### Post-Release Referrals

Pregnant UAC who are diagnosed with Zika virus disease, have laboratory results compatible with Zika virus infection, or have laboratory results that cannot rule out Zika virus infection will be referred for post-release services. Similarly, UAC who delivered while in ORR care will be referred for post-

Exhibit C
000077

release services if they were diagnosed with Zika virus disease, had laboratory results compatible with Zika virus infection, or had laboratory results that cannot rule out Zika virus infection while pregnant.

In some cases, asymptomatic pregnant UAC are released pending lab results. In those cases, ORR will communicate their test results to them and their new healthcare provider. If their results are compatible with Zika virus infection or if Zika virus infection cannot be ruled out, ORR will refer them for post-release services.

**Post-Release Services**

Post-release services for eligible UAC described above include the full range of post-release services with a focus on connecting the UAC to prenatal care and maternal-child resources.

For more information about the Zika virus, please go to the CDC website at: **www.cdc.gov/zika/index.html (http://www.cdc.gov/zika/index.html)**

*Posted 5/2/16*

### 2.8.6 Release for Children with Legal Immigration Status

Some unaccompanied alien children may obtain legal immigration status while in ORR care.  ORR may also discover during the process of placing and providing services to a child that he or she already has legal immigration status or is a U.S. citizen. By law, ORR is not authorized to have custody of children with legal immigration status or U.S. citizenship. Therefore, these children cannot remain in ORR's care, and ORR must release them from ORR-funded care provider facilities.

As soon as ORR determines that an unaccompanied alien child may be eligible for legal status, ORR begins development of a Post Legal Status Plan. The case manager develops the plan, and ORR approves it, tailoring it to the needs and pending immigration status of the child.

As is the case for all UAC, ORR continually makes efforts to reunify children who have promising immigration cases with family members. However, if no parent, legal guardian, relative, or other suitable adult is available, ORR and the care provider, as part of the development of the Post Legal Status Plan, identify alternative placements for the child, including specialized programs, state or county entities or licensed nonprofit organizations that will take custody of the child. In limited circumstances, children with certain types of immigration status may be eligible for release into ORR's Unaccompanied Refugee Minors (URM) Program. Placement in the URM Program is limited by type of immigration status and the availability of appropriate placement options. ORR will not release children on their own recognizance under any circumstances.

*Posted 5/8/17*

### 2.9 Bond Hearings for Unaccompanied Alien Children

Consistent with the Ninth Circuit Court of Appeals decision in Flores v. Sessions, unaccompanied alien children have the opportunity to seek a bond hearing with an immigration judge.

In a bond hearing, an immigration judge decides whether the child poses a danger to the community.[11] For the majority of children in ORR custody, ORR has determined they are not a danger and therefore has placed them in shelters, group homes, and in some cases, staff secure facilities. For these children, a bond hearing is not beneficial.

The burden is on the requestor to demonstrate that the child can be released because he or she is not a danger to the community. An immigration judge's decision that the unaccompanied alien child is not a danger to the community supersedes an ORR determination on that question, unless the immigration judge's decision is overturned by the Board of Immigration Appeals (BIA). However, even if an immigration judge decides the child is eligible for bond (meaning the child does not pose a danger to the community and need not remain in an ORR facility for that reason), in all cases release from ORR custody cannot occur until ORR has identified, evaluated and approved an appropriate sponsor in accordance with **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide.  An immigration judge does not rule on any of the following:

- release to a sponsor;
- the unaccompanied alien child's placement or conditions of placement while in ORR custody; or,
- releasing the child on his or her own recognizance.

ORR also takes into consideration the immigration judge's decision in the bond hearing about the youth's level of danger when assessing the youth's placement and conditions of placement.[12]

Although these hearings are known as "bond hearings," ORR does not require payment of any money in the event a court grants bond.

**Requesting a Bond Hearing**

A request for a bond hearing may be made by the child in ORR care, by a legal representative of the child, or by parents/legal guardians on their children's behalf. These parties may submit a written request for a bond hearing to the care provider using the ORR form, *Notice of Right to Request a Bond Hearing,*

Exhibit C
000078

or through a separate written request that provides the information requested in the form. ORR provides the *Notice of Right to Request a Bond Hearing* to UAC in secure and staff secure facilities.

A request for a bond hearing must minimally include:

- The full name and alien registration number ("A number") of the child;
- If a parent or legal guardian, or an appointed legal representative, is making the request, the parent/legal guardian's or legal representative's name;
- The location of the care provider facility;
- The date of the request; and
- The signature(s) of the requesting child, the parent/legal guardian, and/or legal representative.

There is no filing fee to submit a request for a bond hearing to the care provider.

A child (or his or her legal representative) may also request a bond hearing by making an oral request in immigration court.

**Bond Hearings Proceedings**

Bond hearings are usually held at the immigration court where the request for a bond hearing is filed.

If the immigration judge finds an unaccompanied alien child eligible for bond, and ORR does not appeal, then ORR follows its sponsor assessment and release procedures as described in **Section 2 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2)** of this policy guide.

**Appeals**

Either party may appeal the immigration judge's decision to the BIA. Because ORR cannot release a child until it identifies a suitable sponsor, an immigration judge's finding that the unaccompanied alien child is not a danger to the community does not necessarily result in a release of the child while an appeal is pending.

**Age Outs**

If an unaccompanied alien child becomes 18 years old during the pendency of a bond hearing or bond hearing appeal, ORR forwards the request for a bond hearing and any relevant information to the local DHS/ICE Office of Chief Counsel's office.

**Further Requests for Bond Hearing**

If an immigration judge (or BIA, when appealed) determines that an unaccompanied alien child is ineligible for bond, such decision is final unless the child can demonstrate a material change in circumstance to support a second request for a bond hearing.

*Revised 7/19/17*

---

**Footnotes**

1. As per the release order preference outlined in Flores v. Reno Stipulated Settlement Agreement, No. 85-4544-RJK (Px) (C.D. Cal., Jan 17, 1997).

2. These categories were created for program use, to help identify potential sponsors. They are not intended to replace the legal order of preference established in Flores.

3. The care provider may offer assistance to potential sponsors in securing necessary documentation, but it is ultimately the potential sponsor's responsibility to find and submit them.

4. Verification of the potential sponsor's relationship to the child is a minimum step required by the TVPRA to determine a potential sponsor's suitability and capability of providing for the child's physical and mental well-being. See 8 U.S.C. § 1232. As a result, as stated above, ORR may in its discretion require the submission of multiple forms of evidence.

5. ORR/FFS Supervisors are the final authority for approving discretionary home studies (See Section **2.4.2**)

6. Child advocates must keep the information in the case file, and information about the child's case, confidential from non-ORR grantees, contractors, and Federal staff.

7. An *Authorization for Release of Information* is not required for sponsors, adult household members, or adult care givers identified in a sponsor care plan undergoing a sex offender registry check. An *Authorization for Request of Information* also is not required for sponsors, adult household members and

Exhibit C
000079

adult caregivers identified in a sponsor care plan undergoing a public records check. However, sponsors will receive notice that public records and sex offender registry checks will be performed, and will have an opportunity to explain the results of these checks to ORR. ORR will also provide a method for disputing the results of checks.(See Section **2.5.3 (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.5.3)**, Q4).

8. ORR will also reject any sponsor care plans that identify an adult care giver who has any of the disqualifying criteria.

9. See U.S. Dept. of Health and Human Services, Children's Bureau. *Grounds for involuntary termination of parental rights*, at 2. Washington, DC: Child Welfare Information Gateway, Jan. 2013.

10. The Change of Venue motion must contain information specified by the Immigration Court. A Change of Venue motion may require the assistance of an attorney. For guidance on the "motion to change venue," see the Immigration Court Practice Manual at **www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm (http://www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm)**. For immigration case information please contact EOIR's immigration case information system at 1-800-898-7180. Visit EOIR's website for additional information at: **www.justice.gov/eoir/formslist.htm (http://www.justice.gov/eoir/formslist.htm)**.

11. Immigration judges also consider risk of flight. However, ORR does not make a determination of flight risk for the purpose of deciding whether a child is released. If an immigration judge offers an opinion about a youth's risk of flight, ORR takes the judge's opinion into consideration when assessing the child's placement and conditions of placement, but the decision does not affect release.

12. Please see footnote above concerning risk of flight.

**<Back (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-1) - Next (https://www.acf.hhs.gov/programs/orr/resource/children-entering-the-united-states-unaccompanied-section-3)>**

Last Reviewed: July 27, 2018

Exhibit C
000080        22/22