UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
                                           )
MS. L, ET AL.,                             )
                                           )CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS,          )        18CV1626-DMS
                                           )        18CV1832-DMS
VS.                                        )
                                           )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS               )  NOVEMBER 9, 2018
ENFORCEMENT ("ICE"), ET AL.,               )  1:00 P.M. CALENDAR
                                           )
          RESPONDENTS-DEFENDANTS.          )
----------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

COUNSEL APPEARING TELEPHONICALLY:


FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                 ANAND BALAKRISHNAN, ESQ.
                                 STEPHEN B. KANG, ESQ.
                                 ACLU IMMIGRANT RIGHTS PROJECT
                                 125 BROAD STREET 18TH FLOOR
                                 NEW YORK, NEW YORK 10004


FOR DEFENDANT:                   SCOTT STEWART, ESQ.
                                 SARAH B. FABIAN, ESQ.
                                 U.S. DEPARTMENT OF JUSTICE
                                 OFFICE OF IMMIGRATION LITIGATION
                                 P.O. BOX 868
                                 BEN FRANKLIN STATION
                                 WASHINGTON, DC 20044


ALSO APPEARING:                  JUSTIN W. BERNICK, ESQ.
                                 JENNIFER LEVY, ESQ.
                                 ZACHARY BEST, ESQ.
                                 SIRINE SHEBAYA, ESQ.
                                 WILSON BARMEYER, ESQ.
                                 AARON OLSON, ESQ.

1    SAN DIEGO, CALIFORNIA – FRIDAY, NOVEMBER 9, 2018 – 1:07 P.M.

2                             *   *   *

3         THE CLERK:   NO. 12 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    STATUS CONFERENCE.

6         THE COURT:   GOOD AFTERNOON, COUNSEL.

7         I HAVE AN INDICATION THAT THE FOLLOWING ATTORNEYS

8    ARE ON LINE:   MR. LEE GELERNT, MR. BALAKRISHNAN, MR. KANG, MS.

9    LEVY, MR. BEST, MR. BERNICK.   ON DORA WE HAVE SIRINE SHEBAYA,

10   WILSON BARMEYER, AARON OLSON.   AND FOR THE GOVERNMENT SARAH

11   FABIAN AND SCOTT STEWART.

12        THANK YOU AGAIN FOR THE STATUS REPORTS, AND LET'S

13   RUN THROUGH THESE AND TAKE INVENTORY OF WHERE WE ARE

14   PRESENTLY.

15        FIRST, MR. STEWART, YOU INDICATED –– I WANT TO MAKE

16   SURE I UNDERSTAND THIS AND THEN AM SEEKING CLARIFICATION.

17        ON PAGE 4, TOTAL NUMBER OF POSSIBLE CHILDREN OF

18   POTENTIAL CLASS MEMBERS 2,667.   TOTAL NUMBER OF DISCHARGED

19   CHILDREN FROM O.R.R. CARE 2,458.   THAT LEAVES A BALANCE OF

20   209, AND I WAS WONDERING WHAT'S HAPPENING WITH THOSE 209.   IT

21   WOULD APPEAR THAT 117 OF THEM ARE AWAITING PLACEMENT WITH

22   PARENTS WHO HAVE BEEN DEPORTED, OR WHAT EXACTLY IS HAPPENING

23   WITH THE OTHER 209?

24        MR. STEWART:   YES, YOUR HONOR.   I THINK THERE ARE A

25   CERTAIN NUMBER OF TVPRA PLACEMENTS IN THE CIRCUMSTANCE THAT

1   YOUR HONOR MENTIONED.  THOSE TAKE SOME TIME.  THERE ARE --

2   THAT GROUP OF CURRENTLY 25 IS OUR LATEST NUMBER WHO ARE JUST

3   CHILDREN IN THE CLASS FOR VARIOUS REASONS IT IS --

4   REUNIFICATION IS STILL ONGOING.  SOME OF THOSE ARE JUST

5   PARENTS ARE IN THE COUNTRY OF ORIGIN, TAKES A LITTLE -- YOU

6   KNOW, IT IS TAKING SOME MORE TIME AND WE ARE JUST WORKING

7   THROUGH THOSE.

8          THEN I THINK THE REMAINDER -- A GOOD NUMBER OF THE

9   REMAINDER OF FOLKS THERE, YOUR HONOR, ARE JUST -- IN THAT

10  200-SOME ARE PARENTS WHO ARE JUST NOT IN THE CLASS FOR THE

11  VARIOUS REASONS OF THE SCOPE OF THE CLASS DEFINITION OR THEY

12  WEREN'T SEPARATIONS, IT TURNED OUT TO BE, THAT SORT OF THING.

13  JUST REFLECTING THE BROAD NET AND THE INITIAL UNDERSTANDING

14  THAT THE BIG INITIAL NUMBER WOULD BE OVER-INCLUSIVE.

15       **THE COURT:**  OKAY.  SO THE INDICATION HERE,

16  OBVIOUSLY, IS THAT WE ARE NEARING THE END IN THAT 2,458 HAVE

17  BEEN ACCOUNTED FOR, AND THERE IS A BALANCE OF APPROXIMATELY

18  209 THAT WILL BE ADDRESSED IN THE RELATIVELY NEAR FUTURE.  IS

19  THAT CORRECT?

20       **MR. STEWART:**  I THINK THOSE ARE ALL ACCOUNTED FOR,

21  YOUR HONOR, I BELIEVE, OR THEY WILL BE ADDRESSED IF THEY HAVE

22  NOT BEEN ALREADY.  SOME, YOU KNOW, THEY ARE NOT IN THE CLASS.

23  BUT I THINK THE MAIN GROUP IS THAT 25 TO BE REUNIFIED, AND

24  THEN THOSE WHO ULTIMATELY NEED TO GO THROUGH TVPRA.  BUT THE

25  SHORT ANSWER IS I THINK, YES, THEY ARE GOING TO BE ADDRESSED.

NOVEMBER 9, 2018

1          **THE COURT:**  OKAY.  THANK YOU.

2          THEN ON PAGE 7, AT LINES 20 AND 21, NUMBER OF

3   CHILDREN WHO RECEIVED CREDIBLE FEAR INTERVIEWS:  58.  NUMBER

4   OF CF DECISIONS ISSUED FOR CHILDREN:  63.

5          THOSE NUMBERS SEEMED INCONSISTENT.  WHAT'S CAUSING

6   THAT DIFFERENCE?

7          **MR. STEWART:**  I AM TRYING TO RECALL.  WE DID DRILL

8   DOWN ON THAT, YOUR HONOR.  THERE IS SOME QUIRK IN THE NUMBERS

9   THERE.  AND LET ME SEE IF I CAN FISH THAT OUT, BUT I DON'T

10  HAVE THAT AT MY FINGERTIPS AT THE MOMENT, YOUR HONOR.  BUT I

11  HAD SEEN THAT AND I WILL TRY TO GET AN ANSWER FOR YOU.

12         **THE COURT:**  OKAY.

13         THEN ON PAGE 9, MR. GELERNT, ARE WE DOWN TO THREE AS

14  FAR AS PARENTS OUT OF COUNTRY WHO HAVE NOT BEEN CONTACTED?

15         **MR. GELERNT:**  I BELIEVE THAT IS RIGHT, YOUR HONOR.

16  AND THOSE CONTACTS ARE ONGOING.  I DON'T THINK THAT WE HAVE

17  ANYBODY AT THIS POINT WE BELIEVE THAT WE CANNOT CONTACT.  SO

18  WE ARE VERY CLOSE.

19         AND I THINK AS, YOU KNOW, OUR STEERING COMMITTEE HAS

20  SET OUT IN THIS, I THINK WHAT WE ARE DOWN TO ARE SORT OF

21  IDIOSYNCRATIC CASES WITH INDIVIDUALS.  BUT WE FEEL LIKE WE ARE

22  MAKING VERY GOOD PROGRESS NOW IN JUST DEALING WITH THESE LAST

23  INDIVIDUAL QUIRKY CASES.

24         **THE COURT:**  AS TO THESE THREE, DO YOU KNOW WHERE

25  THEY ARE, HAVE YOU MADE CONTACT; OR ARE YOU JUST VERY

```
 1   OPTIMISTIC THAT YOU WILL MAKE CONTACT?

 2            MR. GELERNT:  I AM TRYING TO -- I APOLOGIZE, YOUR

 3   HONOR.  I BELIEVE -- I BELIEVE WE MADE CONTACT.

 4            BUT MR. HERZOG FROM THE STEERING COMMITTEE IS ON.

 5   AND I DON'T WANT TO SAY ANYTHING THAT WOULD BE WRONG, HE MAY

 6   WANT TO -- IF THAT IS ALL RIGHT WITH YOUR HONOR, HE COULD

 7   PROBABLY SPEAK TO THOSE THREE, IF YOU WOULD LIKE HIM TO TALK.

 8   HE IS ON THE PHONE.

 9            THE COURT:  YES.

10            MR. HERZOG, GOOD AFTERNOON.  IF YOU COULD SPEAK TO

11   THAT, THAT WOULD BE HELPFUL.

12            MR. HERZOG:  SURE.  THANK YOU, YOUR HONOR.  IT IS

13   GOOD TO SPEAK TO THE COURT.

14            MY NAME IS STEVE HERZOG, I AM WITH THE FIRM OF PAUL

15   WEISS, JUST SO THAT YOU KNOW WHO I AM.  WE HAVE BEEN WORKING,

16   YOU KNOW, AS PART OF THE STEERING COMMITTEE ON THESE

17   REUNIFICATIONS AND ON OBTAINING THESE PREFERENCES.

18            OF THESE THREE, I DON'T HAVE THE EXACT -- I KNOW

19   THAT THERE IS AT LEAST ONE, AND I BELIEVE TWO, FAMILIES WHERE

20   WE HAVE BEEN IN TOUCH WITH THE MOTHER, WHO IS NOT THE DEPORTED

21   PARENT, AND NOT IN TOUCH WITH THE FATHER.  AND WE ARE TRYING

22   TO WORK OUT ARRANGEMENTS IN THOSE CASES WITH THE GOVERNMENT TO

23   HAVE A -- HOPEFULLY A RESOLUTION THAT MAKES SENSE FOR

24   EVERYBODY.

25            I BELIEVE THE THIRD OF THOSE CASES IS ONE WHERE WE
```

NOVEMBER 9, 2018

1    EITHER ARE OR -- YOU KNOW, WE ARE IN TOUCH -- WE BELIEVE WE

2    WILL BE IN TOUCH WITH THE FATHER SOON.  I THINK I HAVE THAT

3    RIGHT.  IF I DON'T IT IS -- BUT THAT IS MY BELIEF.

4           **THE COURT:**  OKAY.  SO THIS SOUNDS LIKE, ABSENT A

5    SURPRISE, THAT IN THE NEXT STATUS REPORT OR TWO THERE WILL BE

6    AN INDICATION THAT EVERY PARENT WHO WAS REMOVED WITHOUT CHILD

7    HAS BEEN FOUND AND CONTACTED.

8           **MR. HERZOG:**  I THINK I WOULD PUT IT, JUST TO BE

9    CLEAR, A LITTLE DIFFERENTLY.  I THINK WE ARE GOING TO RESOLVE

10   EACH OF THESE CASES WITH THE FAMILIES.  IN SOME CASES WE MAY

11   NOT BE IN TOUCH WITH THE DEPORTED PARENT BUT WE ARE IN TOUCH

12   WITH ANOTHER ONE OF THE CHILD'S PARENTS.

13          **THE COURT:**  VERY GOOD.  THANK YOU, MR. HERZOG.  AND

14   IT IS A PLEASURE SPEAKING WITH YOU.  AND THE WORK THAT YOUR

15   FIRM IS DOING IS VERY VERY MUCH APPRECIATED.  AND THE COURT IS

16   MOST GRATEFUL FOR THE WORK THAT YOU HAVE DONE IN COORDINATING

17   WITH MR. GELERNT AND PLAINTIFFS AND GOVERNMENT COUNSEL AND

18   SHEPHERDING THIS PROCESS ALONG.  IT IS HEADING CLEARLY IN THE

19   RIGHT DIRECTION.  AND I THINK WE ARE APPROACHING THE END OF

20   REUNIFICATION, AND BY ALL ACCOUNTS IT IS MOVING VERY

21   SUCCESSFULLY.

22          SO THANK YOU FOR ALL OF YOUR EFFORTS, AND PLEASE LET

23   ALL OF YOUR COLLEAGUES THAT ARE ASSISTING YOU AND YOUR OTHER

24   COLLEAGUES AND THE FIRM KNOW HOW MUCH THEIR EFFORTS ARE

25   APPRECIATED.

NOVEMBER 9, 2018

1          **MR. HERZOG:**  THANK YOU VERY MUCH, YOUR HONOR.  I

2    APPRECIATE THOSE WORDS AND WE APPRECIATE THE OPPORTUNITY TO

3    HAVE BEEN OF SERVICE TO THE COURT AND TO ALL OF THE FAMILIES

4    THAT WE ARE TRYING TO HELP HERE.

5          **THE COURT:**  THANK YOU.

6          MOVING ON WITH THE STATUS REPORT.

7          AT PAGE 10, MR. GELERNT, AT LINE 14, YOU REFERENCE

8    FIVE OF THE 17 REMAINING CASES.  AND I WAS A LITTLE UNCLEAR ON

9    THE REFERENCE HERE WHERE YOU INDICATE THAT PARTIES HAVE -- YOU

10   INDICATE THAT THERE ARE SOME COMPLEX AND INDIVIDUALIZED

11   CIRCUMSTANCES THAT NECESSITATE TREATMENT OUTSIDE OF THE PLAN'S

12   USUAL PROCESS.

13         WHAT -- CAN YOU SPEAK TO THAT?

14         **MR. GELERNT:**  YOUR HONOR, I THINK THAT THOSE CASES

15   MAY INVOLVE SITUATIONS WHERE THERE MAY BE DISAGREEMENT BETWEEN

16   THE PARENT OR THE CHILD OR THERE MAY BE SOME ALLEGATIONS OF

17   SOMETHING GOING ON.  AND BEFORE WE DO ANYTHING PRECIPITOUS WE

18   ARE JUST TRYING TO GET TO THE BOTTOM OF WHAT'S GOING ON, AND

19   SO WE ARE WORKING WITH CHILD ADVOCATES.  I THINK EACH ONE IS

20   SLIGHTLY DIFFERENT, AND I THINK MR. HERZOG COULD PROBABLY

21   SPEAK TO IT IF YOU NEED EVEN MORE DETAIL, BUT I THINK SOME OF

22   THAT IS WHAT IS GOING ON.  SO WE ARE TRYING TO MAKE SURE THAT

23   WE DON'T TAKE ANY ACTION THAT IS NOT IN THE INTEREST OF EITHER

24   THE PARENT OR THE CHILD.

25         **THE COURT:**  OKAY.  I DON'T NEED ANY MORE SPECIFIC

NOVEMBER 9, 2018

1    INFORMATION.  I THINK I UNDERSTAND WHAT SOME OF THOSE ISSUES

2    MIGHT BE, AND I WILL SIMPLY WAIT FOR FURTHER REPORTING AT AN

3    APPROPRIATE TIME ON THOSE PARENTS.

4         ON PAGE 11 THERE WAS A REFERENCE TO TWO PARENTS WHO

5    HAVE RETURNED.  AM I ASSUMING THAT THOSE PARENTS RETURNED

6    ILLEGALLY, AND SO THEY ARE BEING PROCESSED ACCORDINGLY?

7         **MR. GELERNT:**  WE ARE TRYING TO FIND OUT AS MUCH

8    INFORMATION AS WE CAN IN WORKING WITH THE GOVERNMENT, SO THAT

9    IS AN ONGOING PROCESS WITH THE GOVERNMENT.  AND HOPEFULLY WE

10   CAN FIGURE OUT THE PROPER RESOLUTION.

11        I DO NOT KNOW -- THE GOVERNMENT MAY BE ABLE TO SPEAK

12   MORE TO THOSE TWO PARENTS BUT I THINK -- BUT WE DO HAVE A

13   PROCESS WITH THE GOVERNMENT FOR TRYING TO RESOLVE THAT.

14        **THE COURT:**  OKAY.

15        MR. STEWART, ANY SPECIFIC INFORMATION ON THOSE TWO

16   PARENTS?

17        **MR. STEWART:**  MY UNDERSTANDING IS THAT WE ARE

18   WORKING TO REUNIFY THOSE TWO PARENTS NOW, YOUR HONOR.  I

19   BELIEVE ONE IS CURRENTLY IN CRIMINAL CUSTODY, I BELIEVE THE

20   OTHER IS IN ICE CUSTODY.  BUT WE ARE WORKING OUT THE

21   REUNIFICATION SCENARIOS FOR THEM, AND WE WILL CONTINUE ON THAT

22   FRONT.

23        **THE COURT:**  OKAY.  THANK YOU.

24        **MR. HERZOG:**  YOUR HONOR, IF IT HELPS -- THIS IS

25   STEVE HERZOG.  I DON'T MEAN TO INTERRUPT.

NOVEMBER 9, 2018

1           **THE COURT:**  YES.

2           **MR. HERZOG:**  THOSE ARE TWO -- I LOOKED, CHECKING

3    THINGS.  THOSE ARE TWO OF THE PARENTS WE HAVE NOT YET BEEN IN

4    TOUCH WITH BUT WE ARE IN TOUCH, I KNOW, WITH ONE OF THEIR

5    COUNSEL.  AND WE BELIEVE WE WILL BE IN TOUCH WITH BOTH OF THEM

6    SOON.

7           AND, YES, THEY BOTH RETURNED TO THE UNITED STATES.

8    I DON'T KNOW THE CIRCUMSTANCES OF THEIR REENTRY BUT THEY ARE

9    BOTH IN GOVERNMENT CUSTODY NOW.

10          **THE COURT:**  OKAY.  THANK YOU.

11          LET'S MOVE TO THE MMM CASE.  THERE IS A REQUEST HERE

12   FOLLOWING AN INDICATION THAT ALL OF THE CLASS MEMBERS IN

13   DILLEY WHO ELECTED TO INVOKE THE SETTLEMENT PROCEDURES HAVE

14   RECEIVED THEIR NEW CREDIBLE FEAR INTERVIEWS AND ARE AWAITING

15   RESULTS.  27 PARENTS AT KARNES ARE IN A SIMILAR SITUATION.

16   AND THE REQUEST IS THAT THE GOVERNMENT PROVIDE THE

17   DETERMINATIONS TO THOSE PARENTS AND PLAINTIFFS' COUNSEL AS

18   SOON AS POSSIBLE.

19          WHAT'S THE GOVERNMENT'S POSITION?

20          **MR. STEWART:**  YOUR HONOR, MY UNDERSTANDING IS THAT

21   WE ARE STILL WORKING THOSE OUT.  THE MMM STATUS REPORT ON THIS

22   WAS, I BELIEVE, THE FIRST WE HEARD OF THIS.

23          WHAT WE CAME TO LEARN ON OUR OWN SIDE IS THAT WE ARE

24   INFORMED THAT THOSE DECISIONS BY USCIS ARE BEING ISSUED, AND

25   SO IT IS NOT THE CASE THAT NO SUCH DECISIONS HAVE BEEN SERVED.

NOVEMBER 9, 2018

1    THOSE ARE BEING ISSUED.  AND I BELIEVE MMM COUNSEL CONFIRMED

2    LATER TODAY THAT THEIR INFORMATION IN THE STATUS REPORT WAS

3    STALE, AND THAT IN FACT A NUMBER HAVE BEEN ISSUED.

4         I WOULD SAY THAT, YOU KNOW, GIVEN THAT AND GIVEN MMM

5    COUNSEL'S OWN ACKNOWLEDGMENT THAT IT CAN TAKE DAYS TO SERVE

6    THESE DECISIONS IN THE NORMAL COURSE THAT IT WOULD BE USEFUL

7    FOR, YOU KNOW, THE GOVERNMENT TO TAKE A LITTLE MORE TIME TO

8    JUST SEE, YOU KNOW, IF THERE IS AN ISSUE, CONFER WITH MMM

9    COUNSEL, AND THEN JUST CORRECT ANYTHING THAT NEEDS TO BE

10   CORRECTED.  BUT THE SHORT VERSION IS, MY UNDERSTANDING IS

11   DECISIONS ARE BEING SERVED AS THEY ARE ISSUED.

12        **THE COURT:**  OKAY.

13        SPEAKING NOW TO MR. BEST OR MR. BERNICK, DO YOU KNOW

14   WHETHER SOME OF YOUR CLIENTS OR WHETHER SOME OF THESE PARENTS

15   HAVE RECEIVED THE DETERMINATION ON THESE NEW CREDIBLE FEAR

16   INTERVIEWS?

17        **MR. BERNICK:**  YES, YOUR HONOR.  THIS IS JUSTIN

18   BERNICK SPEAKING.

19        WE ACTUALLY UNDERSTAND THAT CLASS MEMBERS AT KARNES

20   BEGAN RECEIVING DECISIONS JUST YESTERDAY AT THE TIME THAT WE

21   DRAFTED THIS INSERT FOR THE STATUS REPORT.  SO IT IS OUR HOPE

22   AND EXPECTATION THAT THOSE NOTICES ARE BEING PROVIDED.

23        WE ALSO UNDERSTAND THAT SOME OF THE NOTICES HAVE

24   BEEN PROVIDED AT DILLEY.

25        WE DO -- AND WE HAVE BEEN IN TOUCH WITH THE

NOVEMBER 9, 2018

1    INDIVIDUALS ON THE GROUND THERE.  IT SEEMED TO US THAT THERE

2    MAY BE A DISCONNECT OF SOME SORT BETWEEN THE NUMBER WHO WE

3    UNDERSTAND HAVE RECEIVED NOTICES OF DECISION AND THOSE

4    REPORTED ON PAGE 7 OF THE STATUS REPORT WHO THE GOVERNMENT

5    SAYS HAVE BEEN ISSUED DECISIONS.  THE NUMBERS THAT WE HAVE ARE

6    LOWER THAN THOSE.

7              AND I GUESS THAT'S PROBABLY A GOOD SEGUE INTO OUR

8    RELATED CONCERN ABOUT THE REPORTING ISSUES.

9              I DO THINK IT IS IMPORTANT THAT WE HAVE THE

10   REPORTING LIKE THAT ON PAGE 7, BUT THEN SOME ADDITIONAL DATA

11   POINTS AS WELL THAT WE SET FORTH IN OUR PORTION ON PAGE 13

12   ABOUT ONGOING REPORTING, JUST TO MAKE SURE THAT WE CAN TRACK

13   THESE INDIVIDUALS AS THEY MOVE THROUGH THE PROCESS AND KNOW

14   HOW THEIR CLAIMS ARE RESOLVED.

15             BUT I THINK MR. STEWART IS CORRECT THAT IT DOES

16   APPEAR THAT SOME OF THESE DECISIONS ARE BEING ISSUED, SO AT

17   THIS POINT I THINK THE PARTIES SHOULD CONTINUE TO MEET AND

18   CONFER ON THAT AND MAKE SURE THAT WE HAVE A COMMON

19   UNDERSTANDING OF WHAT THE DECISIONS ARE AND HOW THAT PROCESS

20   IS WORKING.

21             AT THE TIME WE PREPARED THIS THE INFORMATION WE HAD

22   IS THAT NONE OF THOSE HAD BEEN ISSUED.  BUT, LIKE I SAID, THE

23   ONES AT KARNES HAVE COME FORWARD -- COME THROUGH YESTERDAY AND

24   IT LOOKS LIKE THERE ARE SOME AT DILLEY THAT COULD ALSO COME

25   THROUGH.

NOVEMBER 9, 2018

13

1          **THE COURT:**  OKAY.  THANK YOU.

2          SO I WOULD TAKE NO ACTION ON THAT MATTER AT THIS

3  TIME.  THAT APPEARS IT IS WORKING ITSELF OUT.

4          THEN ON THE ONGOING REPORTING IT SEEMED THAT WHAT IS

5  SET OUT HERE BY PLAINTIFFS' COUNSEL, AS FAR AS MATTERS THAT

6  OUGHT TO BE REPORTED, IS A GOOD STARTING POINT.

7          DO YOU HAVE ANY OBJECTION TO ANY OF THOSE

8  CATEGORIES, MR. STEWART?

9          **MR. STEWART:**  YOUR HONOR, THE GOVERNMENT DOES HAVE

10  SOME CONCERNS ON THESE.  SOME ARE RELATED TO BURDEN, SOME ARE

11  RELATED TO MATTERS THAT THE GOVERNMENT JUST HAS CONCERNS ABOUT

12  NEEDING TO GATHER AND REPORT TIMELY, AND JUST THE SOUNDNESS OF

13  REPORTING SOME OF THESE BECAUSE THEY DON'T NECESSARILY MATCH

14  UP TO WHAT THE SETTLEMENT AGREEMENT KIND OF PLEDGES OR

15  GUARANTEES.

16          YOU KNOW, MY HOPE HAS BEEN, YOUR HONOR, THAT WE

17  COULD CONFER A LITTLE BIT MORE WITH THE PLAINTIFFS ON THIS.

18  YOU KNOW, I WILL SAY MEA CULPA ON NOT GETTING BACK TO THEM AS

19  SOON AS I HOPED ON IT.  WE HAVE BEEN PUTTING A LOT OF EFFORT

20  INTO NOT JUST TRYING TO GET THIS RIGHT BUT TRYING TO GET THE

21  CLASS SETTLEMENT PAPERWORK TOGETHER, AND DEAL WITH OTHER

22  THINGS LIKE THAT.

23          IS IT POSSIBLE, YOUR HONOR, IF I MAY, IF WE COULD

24  TRY TO, YOU KNOW, ACCELERATE THINGS ON THE GOVERNMENT'S END

25  AND JUST -- ON GETTING BACK TO THE PLAINTIFFS AND SEEING IF WE

1    CAN COME TO SOME GOOD SOLUTION?

2            AS YOU WILL RECALL, YOUR HONOR, WITH A LOT OF THE

3    REUNIFICATION DATA, THAT REPORTING WAS IMPROVED AND REFINED

4    OVER TIME TO A PLACE WHERE I THINK IT GOT VERY HELPFUL AND

5    USEFUL.  YOU KNOW, OUR ASPIRATION WOULD BE THAT WE COULD BE

6    HELPFUL IN THIS AREA TOO, BUT THERE MAY BE SOME CHALLENGES

7    THAT WE WANT TO THINK THROUGH BOTH SIDES SO THAT WE KIND OF

8    GET IT RIGHT AND BALANCE THE VARIOUS INTERESTS.

9            IF THAT WOULD BE AGREEABLE, I PROPOSE THAT AS AN

10   APPROACH, YOUR HONOR, WITH THE HOPE TO -- YOU KNOW, IF THERE

11   ARE DISAGREEMENTS WE COULD BRING THEM TO YOUR HONOR IN A MORE

12   CRYSTALLIZED FORM.

13           **THE COURT:**  ALL RIGHT.  I THINK THAT IS FAIR.  THE

14   PARTIES HAVE MADE GREAT PROGRESS WORKING TOGETHER INFORMALLY,

15   SO I WOULD INVITE YOU TO DO THAT.

16           WHAT I WOULD LIKE TO DO -- WE ARE GOING TO BE

17   MEETING AGAIN NEXT THURSDAY ON THE CLASS APPROVAL HEARING.  SO

18   I THINK ON THE STATUS REPORT GOING FORWARD ON ALL OF THESE

19   CASES, I WOULD PROPOSE THAT THE NEXT STATUS REPORT BE FILED

20   NOVEMBER 29 BY 3:00 P.M., THEN WE MEET AGAIN FOR A STATUS

21   CONFERENCE NOVEMBER 30, FRIDAY, AT 1:00 P.M., TELEPHONICALLY.

22           AND WHAT I WOULD BE INTERESTED IN LEARNING IN THOSE

23   STATUS REPORTS IS SOME OF THE INFORMATION THAT'S SET OUT AT

24   THE BOTTOM OF PAGE 13, TOP OF PAGE 14, THAT PLAINTIFFS SUGGEST

25   WE OUGHT TO HAVE REPORTING ON.  BUT I WILL INVITE THE PARTIES

NOVEMBER 9, 2018

```
 1    TO MEET AND CONFER ON THAT.

 2              BUT ALSO SOME BOTTOM LINE NUMBERS WOULD BE OF

 3    INTEREST.  SO, FOR EXAMPLE, I THINK IT IS IMPORTANT, AS WE ARE

 4    CLOSING OUT THIS REUNIFICATION, FOR THE COURT AND THE PUBLIC

 5    TO KNOW SOME FINAL NUMBERS, BOTTOM LINE NUMBERS, INCLUDING HOW

 6    MANY FAMILY UNITS ARE DETAINED, HOW MANY FAMILY UNITS HAVE

 7    BEEN PAROLED.  THE NUMBER OF REPATRIATIONS THAT HAVE BEEN

 8    COMPLETED, THE NUMBER THAT HAVE YET TO BE COMPLETED, AND THE

 9    TIMING OF THE COMPLETION OF THE REPATRIATION, A PROJECTION OR

10    AN ESTIMATE.  THE NUMBER OF PARENTS WHO HAVE WAIVED

11    REUNIFICATION.  AND THEN A BOTTOM LINE NUMBER OF ANY PARENTS

12    WHO HAVE NOT BEEN FOUND, ALTHOUGH THAT IS LOOKING VERY

13    OPTIMISTIC THAT THAT NUMBER WILL BE ZEROED OUT.  AND HOPEFULLY

14    THAT'S THE CASE, SO THAT EVERY PARENT AND CHILD IS ACCOUNTED

15    FOR.

16              BUT THOSE TYPES OF BOTTOM LINE REPORTING I THINK

17    WOULD BE IMPORTANT.

18              MR. STEWART, WHAT'S YOUR VIEW ON THAT?  CAN YOU DO

19    THAT BY NOVEMBER 29 OR DO YOU WANT TO -- DO YOU HAVE ANY

20    OBJECTION TO THAT KIND OF REPORTING BY NOVEMBER 29?

21              MR. STEWART:  YOUR HONOR, CAN I TAKE THAT BACK AND

22    JUST DISCUSS, ON THE CLIENT'S SIDE, SOME OF THOSE?  SOME MAY

23    BE JUST HARDER TO GET.  AND THERE MAY ALSO BE -- I JUST WANT

24    TO RESERVE THE OPPORTUNITY IF THERE WERE OBJECTIONS TO ANY OF

25    THOSE AREAS.  CAN I LOOK INTO THAT?  IS IT POSSIBLE TO SUBMIT
```

```
 1    ANY PETITIONS ON THOSE ON NOVEMBER 29TH WITH AN IDEA OF MAYBE
 2    JUST KIND OF REPORTING WHAT THE UPSHOT IS AFTER THAT?
 3              THE COURT:  YES, THAT WOULD BE FINE.
 4              MR. STEWART:  THANK YOU, YOUR HONOR.
 5              THE COURT:  YOU ARE WELCOME.
 6              THE LAST MATTER I HAD IS -- AND I WANTED TO GET THE
 7    PARTIES' VIEW ON THIS.  AND I WILL START WITH MR. GELERNT.
 8              IN THIS CASE MUCH OF THE PROBLEM IN REUNIFYING WAS
 9    PRECIPITATED BY THE FACT THAT THE GOVERNMENT DID NOT HAVE A
10    CENTRALIZED DATA SYSTEM SO THAT THE VARIOUS AGENCIES --
11    B.O.P., DHS, HHS -- WERE NOT COMMUNICATING.  AND AT VARIOUS
12    TIMES THESE AGENCIES WOULD HAVE CARE AND CUSTODY OF A PARENT
13    OR A CHILD, BUT THEY WEREN'T COMMUNICATING, AND THEY DIDN'T
14    KNOW, FOR EXAMPLE, WHERE THE PARENT WAS OR WHERE THE CHILD
15    WAS.  AND THAT LED TO MANY PROBLEMS INCLUDING, FOR EXAMPLE,
16    WHEN A PARENT IS IN B.O.P. CUSTODY, HE OR SHE WOULD NOT KNOW
17    WHERE THEIR CHILD IS IN MANY CASES.  AND THEN IN MANY CASES
18    WHEN A PARENT WAS RELEASED FROM CRIMINAL CUSTODY AND PLACED IN
19    IMMIGRATION CUSTODY WITH DHS, EITHER ICE OR CBP, USUALLY ICE,
20    ICE WAS NOT COMMUNICATING WITH HHS, SO THERE WAS NO
21    AFFIRMATIVE MECHANISM FOR REUNIFICATION AND NO COMMUNICATION
22    BETWEEN THOSE TWO AGENCIES, SPECIFICALLY ICE AND HHS OR
23    O.R.R., WHICH, OF COURSE, LED TO MANY PROBLEMS.
24              AND WE WORKED THROUGH THOSE IN THIS PARTICULAR CASE,
25    BUT OF COURSE GOING FORWARD THERE WILL CONTINUE TO BE, FOR THE
```

1   YEARS TO COME, PARENTS WHO ARE LAWFULLY SEPARATED FROM

2   CHILDREN, PARENTS WHO WILL BE IN B.O.P. AND/OR DHS, ICE

3   CUSTODY AND CHILDREN IN HHS, O.R.R. CUSTODY.

4            AND ONE OF THE ISSUES THAT HAS BEEN PRESENTED IN

5   THIS CASE IS WHETHER THE GOVERNMENT SHOULD HAVE A CENTRALIZED

6   COMPUTER SYSTEM, DATA SYSTEM.  I KNOW THE INSPECTOR GENERAL

7   FOR DEPARTMENT OF HOMELAND SECURITY ISSUED A REPORT IN

8   SEPTEMBER ADDRESSING THAT ISSUE.

9            SO I WANTED TO RAISE THAT ISSUE NOW, AND GET THE

10  PARTIES' POSITION AS TO WHETHER THAT IS A MATTER THAT'S

11  APPROPRIATELY BEFORE THE COURT IN THIS LITIGATION OR NOT.

12           MR. GELERNT.

13           **MR. GELERNT:**  YES, YOUR HONOR.  I MEAN, I THINK OUR

14  VIEW IS THAT IT WOULD BE APPROPRIATE FOR THE COURT TO ADDRESS

15  THAT.  YOU KNOW, EXACTLY -- WE WOULD HAVE TO OBVIOUSLY GIVE IT

16  A LOT MORE THOUGHT ABOUT SORT OF EXACTLY HOW YOU WOULD WANT TO

17  ADDRESS IT.

18           BUT I DO THINK AS PART OF AN INJUNCTIVE CASE AND

19  ENSURING EQUITABLE RELIEF AND ENSURING THAT THERE IS NOTHING

20  THAT HAPPENS IN THE FUTURE TO REIGNITE THIS PROBLEM, OUR VIEW

21  WOULD BE THAT IT WOULD BE WELL WITHIN THE DISCRETION OF THE

22  COURT IF THE COURT WANTED TO TAKE A LOOK AT HOW THIS PROBLEM

23  WAS BEING REMEDIED SO IT DOESN'T HAPPEN IN THE FUTURE.

24           **THE COURT:**  DO YOU HAVE THE INSPECTOR GENERAL

25  REPORT?

NOVEMBER 9, 2018

18

1          **MR. GELERNT:**  YES, WE HAVE A COUPLE OF REPORTS.  AND

2     WE HAVE BEEN TRYING OUR BEST TO TRY TO SORT OF GET TO THE

3     BOTTOM OF PRECISELY WHAT HAPPENED, AND HOW MUCH WAS THE

4     FAILURE OF A CENTRALIZED DATABASE, HOW MUCH WAS THAT THERE WAS

5     A LACK OF A PLAN TO REUNITE CHILDREN AND IT WASN'T A MATTER OF

6     NOT FINDING -- MATCHING THE CHILD WITH THE PARENT.  BUT I

7     THINK YOU ARE MORE FOCUSED ON AFTER THE GOVERNMENT WAS ORDERED

8     TO DO IT.

9          SO I DO THINK THAT SOME BETTER SYSTEM FOR TRACKING

10    WOULD MAKE SENSE, AS A LOT OF THE REPORTS HAVE INDICATED, AND

11    I THINK -- AND MAYBE AT SOME POINTS AT VARIOUS CONGRESSIONAL

12    HEARINGS.

13         **THE COURT:**  MR. STEWART, WHAT IS YOUR VIEW?  PERHAPS

14    I CAN ASK FIRST WHETHER YOU KNOW WHETHER THE VARIOUS AGENCIES

15    ARE, IN VIEW OF THE INSPECTOR GENERAL REPORT, TAKING ACTION

16    AND IMPLEMENTING OR PLANNING TO IMPLEMENT A CENTRALIZED

17    COMPUTER SYSTEM.

18         **MR. STEWART:**  YOUR HONOR, I AM NOT QUITE SURE WHERE

19    THINGS STAND ON THAT.  PERHAPS -- COULD I TAKE THAT ISSUE BACK

20    AS WELL, JUST SORT OF SEE WHAT'S GOING ON, SEE WHAT THE

21    THINKING IS, SEE WHAT THE POSITION MIGHT BE THERE?

22         **THE COURT:**  YES.

23         **MR. STEWART:**  I DO UNDERSTAND WHAT THE COURT IS

24    SAYING.

25         **THE COURT:**  YES.  I THINK THAT IS A GOOD IDEA, AND

NOVEMBER 9, 2018

1    LET'S ADDRESS THAT -- YOU CAN ADDRESS IT EITHER -- WELL, AT

2    THE NOVEMBER 29 STATUS REPORT, AND WE CAN TALK ABOUT IT ON

3    NOVEMBER 30.

4         IT DOES SEEM TO ME THAT IT IS A MATTER THAT THE

5    GOVERNMENT, THE EXECUTIVE BRANCH AGENCIES, WOULD WANT TO

6    ADDRESS, PARTICULARLY IN LIGHT OF THE PROBLEMS IN THIS CASE,

7    THE ISSUES THAT WE HAVE BEEN WORKING THROUGH FOR THE LAST FIVE

8    MONTHS OR SO.  AND IN VIEW OF THE INSPECTOR GENERAL'S REPORT,

9    WHERE IT HITS THIS ISSUE DIRECTLY AND PUTS BLAME SQUARELY ON

10   VARIOUS EXECUTIVE BRANCH AGENCIES FOR THE FAILURE TO

11   COMMUNICATE, LEADING TO SOME VERY VERY SIGNIFICANT PROBLEMS.

12        SO IT SEEMS TO ME THAT IT WOULD BE AN ISSUE WHERE

13   THE EXECUTIVE BRANCH WOULD WANT TO GET ON IT AND PUT ITS I.T.

14   PERSONNEL TOGETHER BETWEEN AND AMONG THESE AGENCIES AND HAVE A

15   CENTRALIZED SYSTEM WHERE THESE IMPORTANT AGENCIES THAT HAVE

16   CARE AND CUSTODY OF PARENTS AND CHILDREN, THESE MIGRANT

17   FAMILIES, ARE ALWAYS COMMUNICATING IN REAL TIME SO THAT THEY

18   KNOW WHERE A PARENT AND CHILD ARE, AND WHEN PARENT AND CHILD

19   CAN BE APPROPRIATELY REUNIFIED.

20        SO THOSE WOULD BE MY OBSERVATIONS.

21        AND THEN OF COURSE I WILL WAIT TO HEAR FROM YOU, MR.

22   STEWART, AS TO WHAT THE GOVERNMENT'S FORMAL POSITION IS ON

23   NOVEMBER 30.

24        WITH THAT, THAT LEAVES ONLY THE NTC CASE.  THAT

25   REPORT LOOKS GOOD.  ARE THERE ANY ISSUES THAT WE NEED TO

NOVEMBER 9, 2018

```
 1   ADDRESS ON THAT SPECIFIC CASE?

 2           MR. STEWART:  YOUR HONOR, COULD I -- THIS IS MR.

 3   STEWART.

 4           IF NO ONE HAS ANYTHING ON NTC, I WAS HOPING THAT I

 5   COULD CITE ONE LITTLE THING ON THE MS. L. REPORT AS WELL, BUT

 6   I DON'T WANT TO INTERRUPT.

 7           THE COURT:  YES.

 8           ANYTHING ON NTC FROM PLAINTIFFS' COUNSEL?

 9           MS. LEVY:  NOTHING ON NTC, YOUR HONOR.

10           THE COURT:  OKAY.  THANK YOU.

11           MR. STEWART, ON MS. L.

12           MR. STEWART:  SURE, YOUR HONOR.  I JUST WANTED TO

13   MAKE A FEW LITTLE TYPO CORRECTIONS FOR THE COURT'S ATTENTION

14   ON SOME OF THE NUMBERS ON PAGE 4 LINES -- I GUESS AROUND 16 TO

15   20.

16           THE COURT:  YES.

17           MR. STEWART:  YOU WILL SEE, YOUR HONOR, ON THE LINE

18   WHEN WE SAY AROUND 14 TOTAL CHILDREN DISCHARGED FROM O.R.R.

19   CARE, MY UNDERSTANDING IS THOSE LINES ARE RIGHT AND THE TOTALS

20   AT THE END UNDER THOSE, 2,115 AND 343, THOSE ARE CORRECT.  BUT

21   WITH MY APOLOGIES, YOUR HONOR, THE NUMBERS IN THE TWO COLUMNS

22   PRECEDING THOSE ARE SLIGHTLY OFF AND DON'T ADD UP QUITE

23   CORRECTLY.  AND I JUST WANTED TO LET YOUR HONOR KNOW WHAT THE

24   LATEST NUMBERS SHOULD BE FOR THOSE, MY UNDERSTANDING.

25           THE COURT:  YES.
```

NOVEMBER 9, 2018

1          **MR. STEWART:**  THE NUMBER 78 SHOULD BE 79.  THE

2    NUMBER 2,032 SHOULD BE 2,036.  AND THAT WILL -- THAT ADDS UP

3    TO 2,115.

4          THEN ON THE NEXT LINE THE NUMBER 18 SHOULD BE NUMBER

5    17.  AND THE NUMBER 330 SHOULD BE 326.

6          SO, ANYWAY, I AM SORRY FOR THE ERRORS THERE, YOUR

7    HONOR.  I JUST WANTED TO GET THAT CORRECTED.

8          **THE COURT:**  OKAY.  THANK YOU.

9          ALL RIGHT.  ANYTHING ELSE BEFORE WE SIGN OFF?

10          **MR. BERNICK:**  YOUR HONOR, THIS IS JUSTIN BERNICK

11    AGAIN FOR THE MMM PLAINTIFFS, AND I JUST WANTED TO CONFIRM

12    LOGISTICS.  WE HAVE THE FAIRNESS HEARING COMING UP NEXT WEEK

13    ON THE 15TH.

14          **THE COURT:**  YES.

15          **MR. BERNICK:**  AND OUR ASSUMPTION HAS BEEN THAT THAT

16    WOULD BE WITH AN OPEN COURTROOM AND ANYONE COULD ATTEND IN

17    PERSON.  AND I JUST WANTED TO MAKE SURE THAT THAT WAS YOUR

18    INTENTION, BECAUSE SOME OF THESE HEARINGS HAVE BEEN

19    TELEPHONICALLY, AND THERE IS PEOPLE IN DIFFERENT PARTS OF THE

20    COUNTRY.  I JUST WANTED TO MAKE SURE THAT THE INTENTION WAS

21    THAT THAT WOULD BE AN OPEN COURTROOM WITH INDIVIDUALS WHO

22    WOULD BE ATTENDING LIVE.

23          **THE COURT:**  YES.  AND THANK YOU FOR ASKING.

24          IT WILL BE AN OPEN COURTROOM, SO ANY OBJECTORS, OF

25    COURSE, HAVE A RIGHT TO BE PRESENT AND ARE WELCOME.  AND ALL

NOVEMBER 9, 2018

```
 1   COUNSEL ARE WELCOME TO APPEAR IN PERSON OR, IF YOU LIKE, I AM
 2   NOT OPPOSED TO COUNSEL APPEARING TELEPHONICALLY.  SO I
 3   RECOGNIZE THAT MOST ALL OF YOU ARE OUT OF STATE, AND SO IF YOU
 4   WANT TO APPEAR TELEPHONICALLY YOU CAN DO THAT.
 5            BUT I WILL TAKE THE BENCH AND IT WILL BE AN OPEN
 6   COURT.  AND I ANTICIPATE THERE WILL BE SOME PEOPLE PRESENT.
 7            SO I WILL LEAVE IT TO COUNSEL.  YOU CAN EITHER CALL
 8   IN AND APPEAR TELEPHONICALLY, OR OF COURSE YOU ARE WELCOME TO
 9   APPEAR IN PERSON.
10        MR. BERNICK:  THANK YOU, YOUR HONOR.
11        THE COURT:  OKAY.  IF.
12        MR. HERZOG:  YOUR HONOR, THIS IS STEVE HERZOG AGAIN.
13            SINCE MR. STEWART MADE A CORRECTION, I WANTED TO
14   CORRECT SOMETHING I SAID EARLIER.
15        THE COURT:  YES.
16        MR. HERZOG:  FOR COMPLETE INFORMATION.
17            THE THREE PARENTS WE HAVE NOT YET BEEN IN CONTACT
18   WITH, AS I NOTED EARLIER, TWO OF THEM ARE THE TWO PARENTS IN
19   THE UNITED STATES.  THE THIRD IS ONE OF A GROUP OF SEVERAL
20   CASES THAT WE LEARNED ABOUT ABOUT APPROXIMATELY A WEEK AND A
21   HALF AGO, TWO WEEKS AGO.  SO WE HAVE BEEN IN THE PROCESS OF
22   CONTACTING THOSE PARENTS IN THOSE NEW CASES.  WE HAVE
23   CONTACTED FOUR OF THEM, AND I THINK THERE IS ONE LEFT TO
24   CONTACT.  SO WE HAVE EVERY EXPECTATION OF CONTACTING ALL THREE
25   OF THOSE PARENTS.
```

NOVEMBER 9, 2018

 1          **THE COURT:**  OKAY.  EXCELLENT.  THAT IS GREAT NEWS.

 2          THANK YOU VERY MUCH.  WE WILL SIGN OFF AT THIS TIME.

 3          I WILL ISSUE A BRIEF ORDER AGAIN, PROBABLY EARLY

 4   NEXT WEEK, SETTING OUT THE 11/29/, 11/30 BRIEFING AND STATUS

 5   CONFERENCE, AND THEN I WILL LOOK FORWARD TO SEEING AND/OR

 6   HEARING FROM COUNSEL THIS COMING THURSDAY ON THE FAIRNESS

 7   HEARING.

 8          THANK YOU.

 9          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

10          **MR. STEWART:**  THANK YOU, YOUR HONOR.

11

12                          *   *   *

13          I CERTIFY THAT THE FOREGOING IS A CORRECT
             TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
14          IN THE ABOVE-ENTITLED MATTER.

15          S/LEEANN PENCE                    11/9/2018
16          LEEANN PENCE, OFFICIAL COURT REPORTER   DATE

17

18

19

20

21

22

23

24

25

                      NOVEMBER 9, 2018