MICHAEL M. MADDIGAN (SBN 163450)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727
Facsimile: (310) 785-4601
Email: michael.maddigan@hoganlovells.com

Attorney for *M.M.M.* Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| M.M.M., on behalf of his minor child, J.M.A., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Jefferson Beauregard Sessions, III, Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 3:18-cv-1832-DMS |
| Ms. L, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement, et al.,<br><br>Defendants. | Case No. 3:18-cv-428-DMS<br><br>**JOINT RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**<br><br>DATE: November 15, 2018<br>TIME: 10:30 AM<br>COURTROOM: 13A<br>JUDGE: Hon. Dana M. Sabraw |

## I. Introduction

Plaintiffs and Defendants in the *M.M.M.*, *Ms. L*, and *Dora* cases hereby submit these responses to the Objections filed regarding the proposed class action settlement of asylum-related claims ("Settlement").  For the reasons stated below and in Plaintiffs' Motion for Final Approval, *see M.M.M.* Dkt. 96, *Ms. L* Dkt. 315, the parties respectfully request that the Court grant final approval of the Settlement.

None of the objectors raise any issue that should prevent approval of the Settlement as fair, reasonable, and adequate. Indeed, the bulk of the arguments raised by these objectors are not "objections" at all, but rather arguments that the Settlement should be expanded to include additional individuals and/or to seek relief that is not sought in the *M.M.M.* case, *Dora* case, and *Ms. L* asylum-related claims that resulted in this Settlement.  Other objections involve individual circumstances that the parties can (and have already) addressed as part of the Settlement.

This response addresses each of the six objections:

- Lesbi Martinez-Martinez (*M.M.M.* Dkt. 83, *Ms. L.* Dkt. 282)
- Egla Arely Velasquez Molina (*M.M.M.* Dkt. 88, *Ms. L.* Dkt.  289)
- Catholic Charities Community Services of the Archdiocese of New York (*Ms. L.* Dkt. 292)
- Ms. M.D-L (*Ms. L.* Dkt. 294)
- K.R.M.C. (M.M.M. Dkt. 93)
- Together & Free (*Ms. L.* Dkt. 306)

## II. Objections by Ms. Martinez-Martinez and Ms. Velasquez Molina

These "objectors" do not contend that the settlement agreement is unfair or unreasonable for settlement class members; instead, they ask the Court to find that they *are* settlement class members so that they can receive the benefits that the settlement provides.  For that reason, these filings do not

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 2 -

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

1    provide any basis to conclude that the settlement should not be approved.

2           Both objectors—Ms. Martinez-Martinez and Ms. Velasquez Molina,

3    represented by the law firm King & Spalding—allege that they are legal

4    guardians. *See Ms. L.* Dkt. 282 at 1-2; *Ms. L* Dkt. 289 at 1-2.  However, even

5    assuming both women are in fact legal guardians, legal guardians fall outside

6    the plain language definition of the settlement class set forth in footnote 1 of

7    the proposed Settlement.  *See* Settlement Agreement, *M.M.M.* Dkt. 96,

8    Exhibit 20.  That definition refers to "parents," and does not include legal

9    guardians.  *Id.*  Unless these objectors can make a claim to parentage, they

10   fall outside the class definition.[1]  Nevertheless, both objectors request

11   inclusion for purposes of obtaining the relief provided by the settlement.

12          Individuals who are not class members do not have standing to object

13   to a settlement that does not bind them.  Under Federal Rule of Civil

14   Procedure 23(e)(5), "[a]ny class member may object" to a class settlement,

15   but non-class members do not have such standing to object.  To the extent

16   these objectors are not settlement class members, they are not bound to the

17   release contained in the settlement, and may choose to pursue their claims

18   independently.

19          Most importantly, the objectors' arguments do not challenge the

20   overall fairness of the Settlement.  The inquiry before the Court is limited to

21   whether the Settlement is fair, reasonable, and adequate for the class

22   members who are bound by its provisions, and neither of these filings argues

23   otherwise.  Accordingly, these "objections" do not provide any reason for the

24

25   ---

[1] These two individuals filed supplemental objections on November 8, 2018, Dkts.
26   312 and 313, contending that a letter sent to a third individual provided evidence
     that the government conceded that they are class members in the Ms. L. litigation.
27   The government's position is that the letter attached to these supplemental filings
     was sent in error, and a corrected letter was served on that individual on November
28   13, 2018.  As stated above, legal guardians are not part of the Settlement.

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 3 -        JOINT RESPONSE TO OBJECTIONS
             TO CLASS ACTION SETTLEMENT

Court to question the fairness of the Settlement.

**III.    Objections by Catholic Charities Community Services of the Archdiocese of New York**

      **a.  "Opting out" of reunification is not an issue addressed by this Settlement**

Catholic Charities' first "objection" also is not an objection to the proposed settlement for the asylum claims of the *Ms. L, Dora,* and *M.M.M.* plaintiffs, but instead raises a concern related primarily to implementation of the Court's injunction requiring reunification in *Ms. L.* In particular, Catholic Charities argues that children should have the right to "opt out" of reunification, and, by doing so, regain their status as unaccompanied alien children (UACs). *Ms. L.* Dkt. 292 at 1-2. However, the question of whether a family can re-separate is outside the scope of what the Settlement Agreement addresses, as the Settlement Agreement addresses only the asylum or other protection claims of the parent and child class members physically present in the United States, and does not address issues related to reunification for those class members.

Catholic Charities concedes that the "Proposed Settlement does not address the circumstances under which children may re-separate, and [they] do not ask for resolution of that issue here." *See Ms. L.* Dkt. 292 at 7. Nevertheless, Catholic Charities asks for clarification that "children who re-separate from their parents for the purpose of seeking relief from ongoing confinement are entitled to be treated as unaccompanied and placed in Section 240 proceedings." *Id.* at 11.

The circumstances under which parents and children should be reunified, and the extent to which reunification can be waived, are addressed in the *Ms. L.* reunification litigation and the preliminary injunction issued by the Court in those proceedings. In contrast, this Settlement Agreement relates to the separate and distinct claims regarding the asylum procedures that should apply to certain parents and children who were previously separated. It is true that the applicable

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 4 -

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

procedures in given factual circumstances depend, in part, on whether the parent and child are reunified.  *See, e.g.*, Settlement Agreement, *M.M.M.* Dkt. 96, Ex. 20 ¶ 1(a) (child class members who are not reunified are considered unaccompanied alien children and "will be afforded existing procedures for unaccompanied alien children pursuant to governing statues and regulations," including Section 240 proceedings).  But whether a family should have been reunified or whether it can re-separate is a *Ms. L* reunification question, not a question determined by the Settlement Agreement. Put differently, Catholic Charities' objection is not one to the fairness or reasonableness of the Settlement Agreement or the procedures set forth therein, but to the fairness and reasonableness of the Court's preliminary injunction order requiring reunification as a general matter.

### b.  Children with voluntary departure orders

Catholic Charities' second objection is that they have identified six children who accepted voluntary departure orders based on the understanding that doing so would allow them to reunify with their parent in their country of origin.  *Ms. L.* Dkt. 292 at 16-18.  Those orders obligated the children to depart within 120 days, at the government's expense, or else they would face negative consequences including a bar on re-entry, ineligibility for certain forms of immigration relief, and a fine of at least $1,000.  *Id.* at 17.  These six children remain in the country even though the deadline for these children to voluntarily depart has either passed, or likely will pass, prior to final approval of this settlement.  *Id.* at 18.  Catholic Charities asks that the Settlement be expanded to include a provision that would vacate these voluntary departure orders to permit these six children to pursue asylum claims.

The information provided by Catholic Charities is not sufficient to determine whether these children are settlement class members or to evaluate what the appropriate approach would be for these children to ensure that they

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

have the opportunity to make an appropriate election as to how to proceed. The government is willing to examine such cases if and when brought to its attention to determine what is the most appropriate course of action in an individual case.

### c. The settlement is not ambiguous and does not require clarification

Catholic Charities proposes three "clarifications" to the settlement to address what it believes are ambiguities in the language. *See Ms. L* Dkt. No. 292 at 20-23. Setting aside the fact that such "clarifications" do not constitute objections to the settlement, modifications to the Settlement are not necessary because the agreement is clear as to the meaning of the provisions on which Catholic Charities seeks clarification.

First, nothing in Paragraph 8 of the Settlement (which Catholic Charities refers to as the waiver provision) limits the "lawfully available" (*Ms. L* Dkt. No. 292 at 21) defenses that a class member may assert once the class member is in Section 240 proceedings.

Second, as to Paragraph 1(a) of the Settlement, *see Ms. L* Dkt. No. 292 at 20-21, the agreement provides that parent and child class members who are not currently detained in ICE or HHS custody (*i.e.*, have been released), and have been issued an NTA, will not be removed before going through Section 240 proceedings. The parties do not believe that this provision is in tension with Paragraph 1(d).

Third, the reference to reunification with a "parent" in Paragraph 1(a) of the Settlement refers to reunification with a *Ms. L* class member parent, *i.e.*, the parent from whom the child was originally separated. Under the class definition contained in the agreement, children who have not been reunified with or who will not be subject to reunification with a *Ms. L* class member parent—including children who have been released from ORR custody to a sponsor—are not part of the child settlement class. Nothing in

JOINT RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

the settlement affects the immigration procedures that would apply to such children. Rather, the Settlement leaves in place the procedures that would ordinarily apply when a child is placed into ORR custody as an unaccompanied alien child. *See* Settlement Agreement, *M.M.M.* Dkt. 96, Ex. 20 ¶ 1(a) (stating that non-reunified children "will be afforded existing procedures for unaccompanied alien children pursuant to governing statutes and regulations, including but not limited to Section 240 removal proceedings").

## IV. Objections by Ms. M.D-L and K.R.M.C.

Neither of these filings constitutes an actual objection to the fairness of the Settlement. Rather, each of these "objectors" has raised their particular factual circumstances, which the parties have since addressed separately as set forth below. One of these individuals wishes to receive the relief provided by the Settlement (and she will receive that relief) and the other is challenging her reunification under the *Ms. L.* preliminary injunction, a challenge that is unrelated to the Settlement Agreement.

### a. Ms. M.D-L

Ms. M.D-L filed an "objection," arguing that she is entitled to reunification with her child under the Court's prior orders and entitled to the asylum procedures of this Settlement. Defendants agree that she is entitled to reunification, and are working with counsel to facilitate that reunification in light of the fact that the child currently is not in ORR custody, but has been released to the custody of her father. The parties also agree that she is a class member for purposes of this Settlement. Accordingly, she will receive the asylum procedures under the Settlement Agreement, as she requests. She does not object to the Settlement, but rather asks to confirm that she is covered by it.

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

### b.  K.R.M.C.

Melissa Cuadrado filed an objection on behalf of a child, K.R.M.C. *See M.M.M.* Dkt. 93.  On November 8, 2018, Plaintiffs' counsel received an e-mail from Ms. Cuadrado stating that she would be withdrawing the objection and attaching a statement of withdrawal.  Ex. 23.  Nonetheless, out of an abundance of caution, the parties briefly address the objection here. The government's position is that the father of this child is eligible for reunification under the *Ms. L.* preliminary injunction, and the government has reviewed this case and determined that reunification is appropriate. The child, through pro bono counsel, submitted this "objection" asking *not* to be reunified with her father. The issue presented by this filing concerns the propriety of reunification in this individual child's case, and is not properly filed as an objection to the Settlement Agreement because it does not bear on the fairness of the settlement.  Her filing therefore provides no basis for the Court to deny approval.

### V.  Objections by Together & Free[2]

The three issues raised by Together & Free do not provide any substantive basis for rejecting the proposed Settlement, even accepting the facts set forth in the document.[3]

---

[2] The docketed version of the Together & Free objection is missing every other page.  *See Ms. L* Dkt. 306. A complete version of the objection, provided to Plaintiffs' counsel by Kate Wheatcroft at Together & Free, is attached hereto as Ex. 24.

[3] Although Together & Free represents that it "has received permission from the Class Members" to object on their behalf, the organization's relationship with the affected purported class members is not entirely clear, especially since the brief refers to other legal counsel who represent the parents listed in the attachment to their objection.  Given that Together & Free does not represent any purported class members, it appears to lack standing to object to the settlement.  The parties assume for the purposes of this brief that Together & Free has standing to object on behalf of the parents listed.

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 8 -          JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

*First*, Together & Free argues that the Settlement "fails to require the reunification of families that are still separated." Ex. 24 at 2. However, as discussed above, the Settlement Agreement addresses the asylum claims of class members and does not address reunification of those class members under the *Ms. L.* preliminary injunction. One statement by Together & Free reflects a fundamental misunderstanding of the agreement. Separated children class members are not barred by the Settlement "from filing further legal action to seek reunification." *Id.* at 3. This Settlement, and the release for the class, does not release claims for reunification, which are at issue in *Ms. L.* Parents who are still seeking reunification may continue to pursue it.

*Second*, Together & Free argues that the Settlement does not provide "meaningful relief" to removed parents. *Id.* at 5. The Settlement Agreement creates a procedure by which cases of individual removed parents may be brought to the attention of the government by counsel in *Ms. L.*, if *Ms. L* counsel believes that the return of a particular removed parent may be warranted. *See* Settlement Agreement, *M.M.M.* Dkt. 96, Ex. 20 at 6. Counsel in *Ms. L.* is actively working to determine whether any such cases exist. The Settlement does not cause removed parents to give up any rights they otherwise would have had; it confirms that "existing law, existing procedures, and the Court-approved reunification plan" addresses the rights of these parents. *Id.*

*Third*, Together & Free argues that the settlement agreement does not provide for a "just, efficient, and orderly process to identify Class Members and/or administer the relief provided." Ex. 24 at 2. This also is not correct. The Settlement contemplated an extensive notice process in which counsel for plaintiffs coordinated with hundreds of organizations providing relief to putative class members to explain the rights of class members under the Settlement. *See* Mot. for Preliminary Approval of Proposed Settlement,

*M.M.M.* Dkt. 73 at 20-24. The government has provided available contact information regarding putative class members to counsel for plaintiffs, who have used that information to provide direct notice to class members about the procedures under the Settlement. *See* Mot. for Final Approval, *M.M.M.* Dkt. 95-1 at 11-12. Further, the Court has requested that the government provide status reports regarding the number of class members who have received asylum procedures under the Settlement, and the manner in which those class members' cases have been managed.

## VI. Conclusion

For the foregoing reasons, and for the reasons set forth in the Motion for Final Approval of Class Action Settlement and memorandum in support thereof, the Objections filed by class members (and by non-class members) do not impact the overall fairness and reasonableness of the Settlement, which provides significant relief to many hundreds of parents and children. The parties respectfully request that the Court enter an order approving the Settlement as fair, reasonable, and adequate.

November 14, 2018

**HOGAN LOVELLS US LLP**

*/s/ Michael Maddigan*
Michael Maddigan
(Cal. Bar No. 163450)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4727
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com

Justin W. Bernick*
Zachary W. Best*
T. Clark Weymouth*
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
zachary.best@hoganlovells.com
t.weymouth@hoganlovells.com

Oliver J. Armas*
Ira M. Feinberg (Cal. Bar No. 064066)
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
oliver.armas@hoganlovells.com
ira.feinberg@hoganlovells.com

Katherine A. Nelson*
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone: (303) 899-7300
Facsimile: (303) 899-7333
katherine.nelson@hoganlovells.com

Haley K. Costello Essig*
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
Telephone: (703) 610-6100
Facsimile: (703) 610-6200
haley.essig@hoganlovells.com

*Proposed Class Counsel for Child Class*

Aaron M. Olsen
Haeggquist and Eck LLP
225 Broadway, Ste 2050
San Diego, CA 92101
phone: 619.342.8000
fax: 619.342.7878
aarono@haelaw.com

- 11 -    JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

1

2  /s/ *Wilson G. Barmeyer*
Wilson G. Barmeyer*

3  Carol T. McClarnon*
EVERSHEDS SUTHERLAND (US)
LLP

4  700 Sixth Street NW, Suite 700
Washington, DC 20001

5  (202) 383-0100
(202) 637-3593 (facsimile)

6  wilsonbarmeyer@eversheds-
sutherland.com

7

8  John H. Fleming*
EVERSHEDS SUTHERLAND (US)
LLP

9  999 Peachtree Street NE, Suite 2300
Atlanta, GA 30309

10  (404) 853-8000
(404) 853-8806 (facsimile)

11  johnfleming@eversheds-sutherland.com

12  Sirine Shebaya*
Johnathan Smith*

13  MUSLIM ADVOCATES
P.O. Box 34440

14  Washington, D.C. 20043
(202) 897-2622

15  (202) 508-1007 (facsimile)
sirine@muslimadvocates.org

16  johnathan@muslimadvocates.org

17  Simon Y. Sandoval-Moshenberg*
Sophia Gregg*

18  LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520

19  Falls Church, VA 22041
(703) 778-3450

20  (703) 778-3454 (facsimile)
simon@justice4all.org

21  sophia@justice4all.org

22  *Proposed Class Counsel for Parent
Class*

23

24  Lee Gelernt*
Judy Rabinovitz*

25  Anand Balakrishnan*
Stephen Kang *

26  Spencer Amdur
Daniel Galindo

27  AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

28  125 Broad St.
18th Floor

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
skang@aclu.org
samdur@aclu.org
dgalindo@aclu.org

*Proposed Counsel For Class Members
Who do not Meet the Physical Presence
Requirement*

*\*Admitted Pro Hac Vice*

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing JOINT RESPONSE TO

OBJECTIONS TO CLASS ACTION SETTLEMENT, with the Clerk of the Court

through the ECF system on November 14, 2018. This system provided a copy to

and effected service of this document on all parties.

Dated:      November 14, 2018            HOGAN LOVELLS US LLP


                                         By:   /s/ Michael Maddigan
                                         Michael Maddigan
                                         Attorneys for Plaintiff
                                         (Cal. Bar No. 163450)

JOINT RESPONSE TO OBJECTIONS
TO CLASS ACTION SETTLEMENT

*M.M.M., on behalf of his minor child, J.M.A., et al. v. Jefferson Beauregard Sessions, III, Attorney General of the United States, et al.*

**EXHIBITS TO JOINT RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

| Exhibit | Document | Pages |
|---------|----------|-------|
| 23 | Statement of Withdrawal of Melissa Cuadardo re *K.R.M.C.* | 16-20 |
| 24 | Complete Statement of Objection by Together & Free | 21-31 |

EXHIBIT 23

| | |
|---|---|
| **From:** | Melissa Cuadrado <melissa.cuadrado@raicestexas.org> |
| **Sent:** | Thursday, November 08, 2018 5:21 PM |
| **To:** | MMMSettlementQuestions |
| **Cc:** | Anand Balakrishnan; Mayra Jimenez; Manoj Govindaiah |
| **Subject:** | Withdrawal of objection to proposed settlement |
| **Attachments:** | withdrawal of objection_KRMC.pdf |

Good afternoon,

Please find attached class member K.R.M.C.'s withdrawal of her previously filed objection to the proposed settlement in the *MMM* case.

The original was sent to the San Diego court and will arrive no later than tomorrow afternoon. Your office will receive a copy by Priority Mail Express and should arrive by noon tomorrow.

Please do not hesitate to contact me with any questions or concerns.

Best,



**Melissa Jeffries Cuadrado**
Senior Staff Attorney
Refugee and Immigrant Center
for Education and Legal Services (RAICES)
5121 Crestway Dr., Ste. 105
San Antonio, Texas 78239
Digital Tel. and Fax: (210) 501-0290
melissa.cuadrado@raicestexas.org
www.raicestexas.org



**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION, ATTORNEY WORK PRODUCT AND ATTORNEY MENTAL IMPRESSIONS.**
The information contained in this e-mail (along with any attachments) is intended only for the use of the individual to whom it is addressed and may contain privileged and/or confidential information that is exempt from disclosure by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. If the reader of this message is not the intended recipient, you are hereby notified that you should not read any further, and any dissemination, distribution, or copying of this communication is strictly prohibited. If you are the intended recipient, please be aware that forwarding this message to others may result in a waiver of these privileges. If you have received this e-mail in error, please immediately return this e-mail to the sender and delete it and any copies.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| M.M.M., on behalf of his minor child, J.M.A., *et al.*, | ) ) ) | Case No. 3:18-cv-1832-DMS |
| Plaintiffs, | ) ) ) | NOTICE OF CLASS MEMBER'S WITHDRAWAL OF OBJECTION TO PROPOSED |
| v. | ) ) | SETTLEMENT |
| Jefferson Beauregard Sessions, III, Attorney General of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

*MMM* class member, K.R.M.C., by and through pro bono counsel, informs the court that she is withdrawing her opposition to the Proposed Settlement in the above-captioned case as well as in *M.M.M. v. Sessions*, Case No. 1:18-cv-1835-PLF (D.D.C.), *Ms. L v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.), and *Dora v. Sessions*, Case No. 18-cv-1938 (D.D.C.).

K.R.M.C. was notified by the Office of Refugee Resettlement that she will be reunified with her father very soon. As such, K.R.M.C. now has no objection to the Proposed Settlement. She respectfully asks that her prior objection to the settlement be withdrawn.

DATED: November 8, 2018

K.R.M.C.
*MMM* Class Member

By: _____

MELISSA J. CUADRADO
Senior Staff Attorney
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
5121 Crestway Dr., Ste. 105
San Antonio, TX 78239

1

Telephone: (210) 501-0290
Email: melissa.cuadrado@raicestexas.org

*Pro Bono* Attorney for K.R.M.C.

2

## PROOF OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 5121 Crestway Dr., Ste. 105, San Antonio, TX 78239. I am not a party to the above-entitled action. On November 8, 2018, I served the following document described as:

**NOTICE OF CLASS MEMBER'S WITHDRAWAL OF OBJECTION TO PROPOSED SETTLEMENT**

by serving a true copy of the above-described document in the following manner:

### BY USPS PRIORITY MAIL EXPRESS

on Class Action Clerk, United States District Court for the Southern District of California, San Diego Courthouse, 333 West Broadway, San Diego, CA 92101, and

### BY USPS PRIORITY MAIL EXPRESS

on Justin W. Bernick, Zachary W. Best, T. Clark Weymouth, HOGAN LOVELLS US LLP, 555 Thirteenth Street, NW, Washington, DC 20004, and

### BY ELECTRONIC MAIL

on MMMSettlementQuestions@hoganlovells.com and abalakrishnan@aclu.org.

Executed on November 8, 2018.

MELISSA J. CUADRADO
Senior Staff Attorney
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
5121 Crestway Dr., Ste. 105
San Antonio, TX 78239
Telephone: (210) 501-0290
Email: melissa.cuadrado@raicestexas.org

*Pro Bono* Attorney for K.R.M.C.

3

EXHIBIT 24

Class Action Clerk
United States District Court for the Southern District of California
San Diego Courthouse
333 West Broadway
San Diego, CA 92101

November 2, 2018

      RE:  Proposed settlement in *M.M.M. v. Sessions*, Case No. 3:18-cv-1832-DMS (S.D. Cal.) and *Ms. L. v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.)

Dear Judge Sabraw,

      I write on behalf of the grassroots, non-profit organization Together & Free, Inc. ("Together & Free") to respectfully object[1] to the fairness and adequacy of the proposed settlement entered in the above-referenced action ("Action") on September 13, 2018 (Dkt. Nos. 220 and 221 ("Proposed Agreement" or "Agrmt.")).  Together & Free's primary mission is to assist families separated under the "zero tolerance" policy established by the federal government in April 2018.  Through our work with hundreds of separated families, we have come to learn of several significant problems with the fairness and adequacy of the Proposed Agreement.  We are concerned that these problems, which are described in detail below, create subclasses that are not treated fairly and that, in some instances, will not receive meaningful relief from the Proposed Agreement.

      ***About Together & Free.***  Together & Free was founded in 2018 for the express purpose of supporting immigrant families separated at the United States border.  Together & Free started as a small group of individuals who were moved by the plight of these families.  The organization has now grown to a network of volunteers across 46 states that provides support to more than 200 affected families.  We assist families with services such finding transportation

---

[1] Together & Free has received permisssion from the Class Members described in this letter (or their legal counsel) to file this letter objecting on their behalf and on behalf of other, similarly-situated Class Members.

1  from detention, getting basic necessities such as clothes, toiletries, diapers, and medicine, finding

2  medical or psychiatric care, and finding free or low cost legal counsel.

3       Through our grassroots work, we have come to learn of a number of individuals

4  who qualify as Class Members—that is, either "alien parents who entered the United States with

5  their children" during a certain period and "have a child who was or is separated from them by

6  the Department of Homeland Security," or "alien children who entered the United States" during

7  a certain period and "were separated from their parents" (Agrmt. at 1, fn 1)—but for whom the

8  Proposed Agreement does not rectify the harm of being separated from their families. As shown

9  below, this is the case either because the Proposed Agreement:  (i) fails to require the

10  reunification of families that are still separated; (ii) offers no meaningful relief to parents who

11  have been deported without their children; and (iii) does not guarantee provisions for a just,

12  efficient, and orderly process to identify Class Members and/or administer the relief provided.

13       ***Class Members Will Not Be Entitled to Reunification***. There is no provision in

14  the Proposed Agreement that entitles Class Members to reunification.  The fundamental and

15  animating purpose of this litigation was to "permanently enjoin Defendants from continuing to

16  separate" Class Member parents and children.  (Amended Compl., Dkt. No. 32 at 12.)  But

17  nothing in the Proposed Agreement appears to obligate the United States to reunite parents and

18  children who are still separated.

19       This is a problem with real-world consequences for the significant number of

20  Class Members who have not been reunited (the "Still Separated Families"). Despite the Parties'

21  efforts to-date, Together & Free is aware of 30 children whose parents are still detained, who

22  have not been reunited as of October 18th 2018. A list of those minor Class Members is attached

23  as Exhibit A to the hard copy of this letter sent to the Court.[2] Together & Free also is aware of

---

24  [2] Throughout this letter, we have done our best to keep confidential the identities of the Class

25  Members being discussed, and, for minors, have provided only initials.  Exhibit A is a
confidential document, that is not publicly filed, and contains the names of minor children and,

26  as such, we respectfully request that it be kept confidential and not be publicly filed. Exhibit A
was provided to Together & Free by the Honduran government officials monitoring the situation.

27  It is our understanding that legal service providers for the minor Class Members included in
Exhibit A have confirmed their status and the status of their parents.  Exhibit A was current as of

28  October 18, 2018.

1   approximately 100 parents who remain in detention, and whose child or children have been

2   released into the care of a relative. These families remain in limbo, suffering from the exact

3   harms that this Action was brought to alleviate. Their plight cannot be ignored but, under the

4   Proposed Agreement, it is.

5          In many instances, Class Member parents in this subclass consented to their

6   children's release because they were told that the separation would be temporary and that,

7   through this litigation, they would be reunited with their children. But that has not happened,

8   and the Proposed Agreement provides no guarantee that it will. Because the children in this

9   subclass are with family members, the United States regard these families as "reunited." Such a

10  determination is anathema to the right to family integrity that has been the animating principle

11  of the Court's orders in this Action. Moreover, this ongoing separation has resulted in profound

12  and continuing harm to Still Separated Families. In some instances, children as young as three

13  years old have been released to relatives that they have never met, while their parents have

14  continued to languish in detention. In other instances, because of the United States' refusal to

15  release a Class Member parent, the child has been "reunited" with family members who are unfit

16  and incapable of serving as guardians. For example, Ana Estela G. d. H. was separated from her

17  seven year old daughter. Ana is still detained, but her daughter was released to her father. Ana

18  had custody of her daughter for a reason: the father has struggled with drug and alcohol

19  addiction. Ana's other, 17 year old child, has had to take responsibility for the seven year old,

20  because Ana is still in custody. The 17 year old receives little to no financial support from the

21  father, and it seems likely that both children will end up in the state child welfare system.

22          "[S]ome proposed agreements are so unfair in their terms to one subset of class

23  members that they cannot but be the product of inadequate representation of that subset." *In re*

24  *Volkswagen Clean Diesel Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 608 (9th

25  Cir. 2018) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d

26  Cir. 1995)). The Proposed Agreement is profoundly unfair to the Still Separated Families. Not

27  only does it fail to require reunification, it bars the Still Separated Families from filing further

28  legal action to seek reunification. Quite the opposite--Class Members must "agree to refrain

1   from additional litigation seeking immigration-or-asylum-related injunctive, declaratory, or

2   equitable relief." (Agrmt. at 1.)   Accordingly, Still Separated Families are presented with a

3   devastating choice.  The Class Member parents can: (i) participate in the Class and pursue bona

4   fide asylum claims, but risk remaining separated from their children for the duration of their

5   cases;[3] (ii) opt out of the Class and face immediate deportation (with, or perhaps without, their

6   children); or (ii) seek reincarceration of their children which (if successful) will result in the

7   entire family being detained until the outcome of their asylum claim.[4]

8            Still Separated Families are already making this choice at great cost.   For

9   example, Class Member Vivian N. M. came to the United States with her three year old son,

10  fleeing domestic violence.   Although Vivian is still detained, her son has been released to

11  Vivian's aunt in Houston--a family member the boy had never met until she became his

12  guardian. Vivan has a strong legal case, and has passed her credible fear interview.   But,

13  understandably, she has abandoned her case in order to pursue reunification with her son in

14  family detention.  Once the restraining order in this Action is lifted, Vivian will be subject to

15  deportation without her toddler.  There is no reason to believe the United States ever will reunite

16  her with her little boy, and at age 3, he (also a Class Member) will forced to choose between a

17  life free from domestic violence, and a life with his mother.

18           Together & Free respectfully submits that any settlement in this Action must

19  provide the relief of reunification to all Class Members, including Still Separated Families to be

20  just and fair.[5]

21

22

---

23  [3] Given the administrative backlog for asylum cases in many jurisdictions and the chaos
    inflicted on the system by the United States "zero tolerance" policies, it should go without saying
24  that any Class Member parent who chooses this option could remain separated for many months,
    if not years.

25  [4] Out of desperation, a number of Class Member parents of Still Separated Families have sought
    family detention, but have not succeeded in being reunited.  Even if this option did not present
26  Class Member parents with an unconscionable choice, it is unlikely that it is a realistic option.

27  [5] As shown *infra* at pp. 6-7, the Proposed Agreement also falls short because it fails to provide
    provisions for ensuring that all Class Members have been identified, including Class Members
28  who are part of Still Separated Families.

1          ***Deported Class Members Receive No Significant Relief.***   The Proposed
2    Agreement also fails to provide meaningful relief to another subset of the certified Class—
3    parents who already have been deported without their minor children. The Proposed Agreement,
4    on its face, applies "only to . . . class members . . . who have been continuously physically
5    present in the United States since June 26, 2018." (Agrmt. at 1.) For deported Class Members, it
6    offers only this: in "rare and unusual" instances, the United States will reopen "individual cases
7    in which plaintiffs' counsel believes the return of a particular removed class member may be
8    warranted." (Agrmt. at 6.)  In some instances, deported Class Members had no credible fear
9    interviews.  For example, Class Member Jose D.A.A. was deported without a credible fear
10   interview.  In other instances, the hasty circumstances of their credible fear interviews (and
11   subsequent deportations) barred Class Members from presenting their best evidence.  For
12   example, Class Member Anavelis J-C fled violence in Guatemala with her 6 year old daughter.
13   Anavelis was transferred between 5 different detention centers, remaining separated from her
14   daughter each time. Her daughter was eventually released, but Anavelis was deported on or
15   around July 17, 2018.  In her credible fear interview, Anavelis did not state all the persuasive
16   facts relevant to her claim because she did not fully understand the process.  For example, she
17   did not state that a gang had killed several close family members to get her family's land—
18   including her mother-in-law and the brother of her father-in-law.  She also did not state that she
19   herself was beaten by these gangs, and required surgery for her injuries.  If she had not been
20   deported, she would be permitted, as a Class Member, to redo her credible fear interview and
21   present those and  other favorable facts. Instead, she will remain separated from her young
22   daughter, unless she seeks her daughter's return to Guatemala—an option that may well risk both
23   their lives.

24          Together & Free understands that the Court is aware of the unique and sad issues
25   presented by Deported Class Members. When confronted with this problem in August 2018, the
26   United States proposed that children whose parents had been deported who wanted to return to
27   their countries of origin and be reunited with their parents (despite any *bona fide* legal claims to
28   asylum), and who had not yet had a court date, would have their cases terminated.  But it is

1   Together & Free's understanding that this relief has not been made uniformly available to

2   Deported Class Members and their children.  It is now November and, one by one, minor

3   children of Deported Class Members are seeking voluntary departure, not because their claims

4   are weak, but because they seek reunification. And even when the children take this step,

5   reunification continues to be delayed by months. As just one example, Jose D.A.A.. is a father

6   who was separated from his child at the border and deported back to Honduras.  His 12-year-old

7   child, J. F. A. S. chose voluntary departure on August 29th, 2018 so that he could be reunited

8   with his father and mother in Honduras.  But it took over six weeks, until October 11th, 2018 for

9   J. F. A. S. to be returned to his family in Honduras.

10          At this rate the return of children with Deported Class Members will drag into

11   next year. Together & Free respectfully submits that the Proposed Agreement should require the

12   United States to follow through on its representation to the Court—namely that it would

13   retroactively terminate the cases of children who were forced to choose voluntary departure.

14   Children whose parents were deported without them should not be penalized for choosing to

15   return to their parents, rather than staying and pursuing their asylum claims.  Together & Free

16   also respectfully submits that, at a minimum, the Proposed Agreement must provide for

17   administrative procedures and protections to assist Deported Class Members with finding and

18   seeking reunification with their children.

19          ***Administrative Problems Identifying Class Members***. It is well-established that

20   the United States' separation of families at the border was hastily implemented and disorganized.

21   Perhaps because of this, in spite of the Parties' efforts, there is still no assurance that all the Class

22   Members have been identified.  In fact, as recently as October 25, 2018, the United States

23   reported the discovery of 14 minor children who qualify as Class Members but previously had

24   not been identified as such. Despite this clear weakness in the process, the Proposed Agreement

25   does not describe or require any organization or mechanism for the ongoing process of

26   identifying, and determining the eligibility of, Class Members.

27          This problem is particularly acute for Deported Class Members, an unsurprising

28   fact, given that they are outside the United States, and, as a result, often lack access to the United

States' judicial system and to United States legal counsel.  Together & Free has become aware of a number of Deported Class Members who have not been identified as Class Members in this action, even though they meet the criteria.  These include:

- Oscar M. R.: Oscar crossed with his 5-year-old son in June of 2018. His son was sent to an Office of Refugee Resettlement ("ORR') facility and was eventually released to a relative. Oscar was deported back to Honduras without his son—who has not seen his father since June--on or around July 18, 2018.

- Elisa A.—Elisa fled persecution in Romania along with her 3 year old daughter.  Her daughter was released to relatives but Elisa was deported on or around July 26, 2018.

Deported Class Members such as these face a desperate situation.  Far from their children, they must somehow weigh their legal options, and work without assistance to secure reunification with their children.  Together & Free respectfully submits that, in order to be truly fair, the Proposed Agreement must include provisions that clearly describe a process for identifying Class Members, particularly Deported Class Members.  As just one example, the Proposed Agreement could require the United States to establish a website that would allow potential Class Members or their lawyers to review the class definition, review their rights, submit their names and circumstances for eligibility determination and, most importantly, help find their children.  The United States also should be required to assemble a neutral steering committee that would be charged with determining Class Member eligibility, and whose progress and determinations would be publicly filed with the Court on a regular basis.  Large class action settlements routinely contain similar provisions for class member determination and reporting, and these types of provisions are important to the just and fair administration of the relief.

***Problems With Case Administration Are Impeding Relief.***  As a result of the "chaotic circumstance of the Government's own making" (June 26, 2018 Order at 23), some families continue to face the prospect of immediate deportation due to administrative problems

1  with their cases. In particular, Class Members have been dispersed all around over the United

2  States, and many have faced serious difficulty changing the venue of their cases. As a result,

3  some Class Members now live thousands of miles away from the courts where their cases are

4  proceeding. Because they cannot afford to travel regularly to the original jurisdictions, they are

5  effectively denied the ability to effectively pursue their asylum claims. For example, Class

6  Members Estela V. G. and Maria L. B. were transferred from Arizona to Atlanta, where they

7  were held in Irwin County Detention Center. Maria L.B. was transferred to Port Isabel Detention

8  Center in Texas for release and reunification with her child. She and her child moved to

9  Nashville, but her case has remained in Atlanta because the judge refuses to grant the change of

10  venue request (due to his skepticism of the merits of the underlying case). Likewise, Estela V.

11  G. moved to Aurora, New York with her daughter. She passed her credible fear interview but an

12  Atlanta judge also has refused to change the venue of her case, again because he is skeptical of

13  the merits of her case. Both women have so far attempted to travel to Atlanta for court dates,

14  but cannot afford to do so indefinitely. The travel exacerbates the trauma already suffered by

15  their children. Maria L.B.'s young daughter cries and begs her to return whenever she has to

16  leave.

17         Obviously this Court has no control over whether judges in other venues act

18  unreasonably. But the administrative problems these Class Members face were either caused or

19  exacerbated by the irresponsible and negligent manner in which the United States implemented

20  its "zero tolerance" policy, and the chaos and havoc that ensued. The United States should have

21  the obligation to handle case transfers of all the Class Members to the appropriate venues. For

22  Class Members who are minor children, it should be required to ensure that cases are either re-

23  opened, or that deportation orders are terminated. Together & Free respectfully submits that

24  such obligations—along with any other obligations necessary for smooth administration of the

25  Class Members' cases—should be provided for in the Proposed Agreement.

26                    *              *              *

27         Together & Free understands that any class settlement represents an imperfect

28  compromise. But the compromises in the Proposed Agreement go beyond reasonable

1   concessions.    Instead, for a number of Class Members, the Proposed Agreement fails to

2   guarantee their primary goal—reunification with their family members.  Respectfully, the Court

3   must ensure the fair and just treatment of all Class Members, some of whom continue to be

4   deprived of their fundamental rights, and suffer profound and lasting harm.

5

6                                         Respectfully Submitted,

7

8

9                                          Christine Bateup

10                                        Together & Free, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28