EXHIBIT 24

Class Action Clerk
United States District Court for the Southern District of California
San Diego Courthouse
333 West Broadway
San Diego, CA 92101

November 2, 2018

> RE: Proposed settlement in *M.M.M. v. Sessions*, Case No. 3:18-cv-1832-DMS (S.D. Cal.) and *Ms. L. v. ICE*, Case No. 3:18-cv-428-DMS (S.D. Cal.)

Dear Judge Sabraw,

I write on behalf of the grassroots, non-profit organization Together & Free, Inc. ("Together & Free") to respectfully object[1] to the fairness and adequacy of the proposed settlement entered in the above-referenced action ("Action") on September 13, 2018 (Dkt. Nos. 220 and 221 ("Proposed Agreement" or "Agrmt.")).  Together & Free's primary mission is to assist families separated under the "zero tolerance" policy established by the federal government in April 2018.  Through our work with hundreds of separated families, we have come to learn of several significant problems with the fairness and adequacy of the Proposed Agreement.  We are concerned that these problems, which are described in detail below, create subclasses that are not treated fairly and that, in some instances, will not receive meaningful relief from the Proposed Agreement.

*About Together & Free.*  Together & Free was founded in 2018 for the express purpose of supporting immigrant families separated at the United States border.  Together & Free started as a small group of individuals who were moved by the plight of these families.  The organization has now grown to a network of volunteers across 46 states that provides support to more than 200 affected families.  We assist families with services such finding transportation

---

[1] Together & Free has received permisssion from the Class Members described in this letter (or their legal counsel) to file this letter objecting on their behalf and on behalf of other, similarly-situated Class Members.

1    from detention, getting basic necessities such as clothes, toiletries, diapers, and medicine, finding

2    medical or psychiatric care, and finding free or low cost legal counsel.

3           Through our grassroots work, we have come to learn of a number of individuals

4    who qualify as Class Members—that is, either "alien parents who entered the United States with

5    their children" during a certain period and "have a child who was or is separated from them by

6    the Department of Homeland Security," or "alien children who entered the United States" during

7    a certain period and "were separated from their parents" (Agrmt. at 1, fn 1)—but for whom the

8    Proposed Agreement does not rectify the harm of being separated from their families.  As shown

9    below, this is the case either because the Proposed Agreement:   (i) fails to require the

10   reunification of families that are still separated; (ii) offers no meaningful relief to parents who

11   have been deported without their children; and (iii) does not guarantee provisions for a just,

12   efficient, and orderly process to identify Class Members and/or administer the relief provided.

13           ***Class Members Will Not Be Entitled to Reunification.***  There is no provision in

14   the Proposed Agreement that entitles Class Members to reunification.  The fundamental and

15   animating purpose of this litigation was to "permanently enjoin Defendants from continuing to

16   separate" Class Member parents and children.  (Amended Compl., Dkt. No. 32 at 12.)  But

17   nothing in the Proposed Agreement appears to obligate the United States to reunite parents and

18   children who are still separated.

19           This is a problem with real-world consequences for the significant number of

20   Class Members who have not been reunited (the "Still Separated Families").  Despite the Parties'

21   efforts to-date, Together & Free is aware of 30 children whose parents are still detained, who

22   have not been reunited as of October 18th 2018. A list of those minor Class Members is attached

23   as Exhibit A to the hard copy of this letter sent to the Court.[2]  Together & Free also is aware of

24   _____

25   [2] Throughout this letter, we have done our best to keep confidential the identities of the Class
     Members being discussed, and, for minors, have provided only initials.  Exhibit A is a
     confidential document, that is not publicly filed, and contains the names of minor children and,
26   as such, we respectfully request that it be kept confidential and not be publicly filed. Exhibit A
     was provided to Together & Free by the Honduran government officials monitoring the situation.
27   It is our understanding that legal service providers for the minor Class Members included in
     Exhibit A have confirmed their status and the status of their parents.  Exhibit A was current as of
28   October 18, 2018.

1  approximately 100 parents who remain in detention, and whose child or children have been

2  released into the care of a relative.  These families remain in limbo, suffering from the exact

3  harms that this Action was brought to alleviate.  Their plight cannot be ignored but, under the

4  Proposed Agreement, it is.

5            In many instances, Class Member parents in this subclass consented to their

6  children's release because they were told that the separation would be temporary and that,

7  through this litigation, they would be reunited with their children.  But that has not happened,

8  and the Proposed Agreement provides no guarantee that it will.  Because the children in this

9  subclass are with family members, the United States regard these families as "reunited." Such a

10  determination is anathema to the right to family integrity that has been the animating principle

11  of the Court's orders in this Action.  Moreover, this ongoing separation has resulted in profound

12  and continuing harm to Still Separated Families. In some instances, children as young as three

13  years old have been released to relatives that they have never met, while their parents have

14  continued to languish in detention.  In other instances, because of the United States' refusal to

15  release a Class Member parent, the child has been "reunited" with family members who are unfit

16  and incapable of serving as guardians.  For example, Ana Estela G. d. H. was separated from her

17  seven year old daughter.  Ana is still detained, but her daughter was released to her father.  Ana

18  had custody of her daughter for a reason:  the father has struggled with drug and alcohol

19  addiction.  Ana's other, 17 year old child, has had to take responsibility for the seven year old,

20  because Ana is still in custody.  The 17 year old receives little to no financial support from the

21  father, and it seems likely that both children will end up in the state child welfare system.

22            "[S]ome proposed agreements are so unfair in their terms to one subset of class

23  members that they cannot but be the product of inadequate representation of that subset." *In re*

24  *Volkswagen Clean Diesel Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 608 (9th

25  Cir. 2018) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d

26  Cir. 1995)).  The Proposed Agreement is profoundly unfair to the Still Separated Families.  Not

27  only does it fail to require reunification, it bars the Still Separated Families from filing further

28  legal action to seek reunification.  Quite the opposite--Class Members must "agree to refrain

1  from additional litigation seeking immigration-or-asylum-related injunctive, declaratory, or

2  equitable relief." (Agrmt. at 1.)  Accordingly, Still Separated Families are presented with a

3  devastating choice.  The Class Member parents can: (i) participate in the Class and pursue bona

4  fide asylum claims, but risk remaining separated from their children for the duration of their

5  cases;[3] (ii)  opt out of the Class and face immediate deportation (with, or perhaps without, their

6  children); or (ii) seek reincarceration of their children which (if successful) will result in the

7  entire family being detained until the outcome of their asylum claim.[4]

8          Still Separated Families are already making this choice at great cost.  For

9  example, Class Member Vivian N. M. came to the United States with her three year old son,

10  fleeing domestic violence.  Although Vivian is still detained, her son has been released to

11  Vivian's aunt in Houston--a family member the boy had never met until she became his

12  guardian. Vivan has a strong legal case, and has passed her credible fear interview.  But,

13  understandably, she has abandoned her case in order to pursue reunification with her son in

14  family detention.  Once the restraining order in this Action is lifted, Vivian will be subject to

15  deportation without her toddler.  There is no reason to believe the United States ever will reunite

16  her with her little boy, and at age 3, he (also a Class Member) will forced to choose between a

17  life free from domestic violence, and a life with his mother.

18          Together & Free respectfully submits that any settlement in this Action must

19  provide the relief of reunification to all Class Members, including Still Separated Families to be

20  just and fair.[5]

21

22  _____

23  [3] Given the administrative backlog for asylum cases in many jurisdictions and the chaos inflicted on the system by the United States "zero tolerance" policies, it should go without saying that any Class Member parent who chooses this option could remain separated for many months,

24  if not years.

25  [4] Out of desperation, a number of Class Member parents of Still Separated Families have sought family detention, but have not succeeded in being reunited.  Even if this option did not present

26  Class Member parents with an unconscionable choice, it is unlikely that it is a realistic option.

27  [5] As shown *infra* at pp. 6-7, the Proposed Agreement also falls short because it fails to provide provisions for ensuring that all Class Members have been identified, including Class Members

28  who are part of Still Separated Families.

1            *Deported Class Members Receive No Significant Relief.*   The Proposed

2 Agreement also fails to provide meaningful relief to another subset of the certified Class—

3 parents who already have been deported without their minor children.  The Proposed Agreement,

4 on its face, applies "only to . . . class members . . . who have been continuously physically

5 present in the United States since June 26, 2018." (Agrmt. at 1.)  For deported Class Members, it

6 offers only this:  in "rare and unusual" instances, the United States will reopen "individual cases

7 in which plaintiffs' counsel believes the return of a particular removed class member may be

8 warranted." (Agrmt. at 6.)  In some instances, deported Class Members had no credible fear

9 interviews.  For example, Class Member Jose D.A.A. was deported without a credible fear

10 interview.  In other instances, the hasty circumstances of their credible fear interviews (and

11 subsequent deportations) barred Class Members from presenting their best evidence.   For

12 example, Class Member Anavelis J-C fled violence in Guatemala with her 6 year old daughter.

13 Anavelis was transferred between 5 different detention centers, remaining separated from her

14 daughter each time. Her daughter was eventually released, but Anavelis was deported on or

15 around July 17, 2018.  In her credible fear interview, Anavelis did not state all the persuasive

16 facts relevant to her claim because she did not fully understand the process.  For example, she

17 did not state that a gang had killed several close family members to get her family's land—

18 including her mother-in-law and the brother of her father-in-law.  She also did not state that she

19 herself was beaten by these gangs, and required surgery for her injuries.  If she had not been

20 deported, she would be permitted, as a Class Member, to redo her credible fear interview and

21 present those and  other favorable facts. Instead, she will remain separated from her young

22 daughter, unless she seeks her daughter's return to Guatemala—an option that may well risk both

23 their lives.

24            Together & Free understands that the Court is aware of the unique and sad issues

25 presented by Deported Class Members.  When confronted with this problem in August 2018, the

26 United States proposed that children whose parents had been deported who wanted to return to

27 their countries of origin and be reunited with their parents (despite any *bona fide* legal claims to

28 asylum), and who had not yet had a court date, would have their cases terminated.  But it is

1  Together & Free's understanding that this relief has not been made uniformly available to

2  Deported Class Members and their children.  It is now November and, one by one, minor

3  children of Deported Class Members are seeking voluntary departure, not because their claims

4  are weak, but because they seek reunification. And even when the children take this step,

5  reunification continues to be delayed by months. As just one example, Jose D.A.A.. is a father

6  who was separated from his child at the border and deported back to Honduras.  His 12-year-old

7  child, J. F. A. S. chose voluntary departure on August 29th, 2018 so that he could be reunited

8  with his father and mother in Honduras.  But it took over six weeks, until October 11th, 2018 for

9  J. F. A. S. to be returned to his family in Honduras.

10      At this rate the return of children with Deported Class Members will drag into

11  next year. Together & Free respectfully submits that the Proposed Agreement should require the

12  United States to follow through on its representation to the Court—namely that it would

13  retroactively terminate the cases of children who were forced to choose voluntary departure.

14  Children whose parents were deported without them should not be penalized for choosing to

15  return to their parents, rather than staying and pursuing their asylum claims.  Together & Free

16  also respectfully submits that, at a minimum, the Proposed Agreement must provide for

17  administrative procedures and protections to assist Deported Class Members with finding and

18  seeking reunification with their children.

19      ***Administrative Problems Identifying Class Members***. It is well-established that

20  the United States' separation of families at the border was hastily implemented and disorganized.

21  Perhaps because of this, in spite of the Parties' efforts, there is still no assurance that all the Class

22  Members have been identified.  In fact, as recently as October 25, 2018, the United States

23  reported the discovery of 14 minor children who qualify as Class Members but previously had

24  not been identified as such. Despite this clear weakness in the process, the Proposed Agreement

25  does not describe or require any organization or mechanism for the ongoing process of

26  identifying, and determining the eligibility of, Class Members.

27      This problem is particularly acute for Deported Class Members, an unsurprising

28  fact, given that they are outside the United States, and, as a result, often lack access to the United

1  States' judicial system and to United States legal counsel.  Together & Free has become aware of

2  a number of Deported Class Members who have not been identified as Class Members in this

3  action, even though they meet the criteria.  These include:

- Oscar M. R.: Oscar crossed with his 5-year-old son in June of 2018. His son was sent to an Office of Refugee Resettlement ("ORR') facility and was eventually released to a relative. Oscar was deported back to Honduras without his son—who has not seen his father since June--on or around July 18, 2018.

- Elisa A.—Elisa fled persecution in Romania along with her 3 year old daughter. Her daughter was released to relatives but Elisa was deported on or around July 26, 2018.

12  Deported Class Members such as these face a desperate situation.  Far from their

13  children, they must somehow weigh their legal options, and work without assistance to secure

14  reunification with their children.  Together & Free respectfully submits that, in order to be truly

15  fair, the Proposed Agreement must include provisions that clearly describe a process for

16  identifying Class Members, particularly Deported Class Members.  As just one example, the

17  Proposed Agreement could require the United States to establish a website that would allow

18  potential Class Members or their lawyers to review the class definition, review their rights,

19  submit their names and circumstances for eligibility determination and, most importantly, help

20  find their children.  The United States also should be required to assemble a neutral steering

21  committee that would be charged with determining Class Member eligibility, and whose

22  progress and determinations would be publicly filed with the Court on a regular basis.  Large

23  class action settlements routinely contain similar provisions for class member determination and

24  reporting, and these types of provisions are important to the just and fair administration of the

25  relief.

26  ***Problems With Case Administration Are Impeding Relief.***  As a result of the

27  "chaotic circumstance of the Government's own making" (June 26, 2018 Order at 23), some

28  families continue to face the prospect of immediate deportation due to administrative problems

1    with their cases. In particular, Class Members have been dispersed all around over the United

2    States, and many have faced serious difficulty changing the venue of their cases.  As a result,

3    some Class Members now live thousands of miles away  from the courts where their cases are

4    proceeding.  Because they cannot afford to travel regularly to the original jurisdictions, they are

5    effectively denied the ability to effectively pursue their asylum claims.  For example, Class

6    Members Estela V. G. and Maria L. B. were transferred from Arizona to Atlanta, where they

7    were held in Irwin County Detention Center.  Maria L.B. was transferred to Port Isabel Detention

8    Center in Texas for release and reunification with her child.  She and her child moved to

9    Nashville, but her case has remained in Atlanta because the judge refuses to grant the change of

10   venue request (due to his skepticism of the merits of the underlying case).  Likewise, Estela V.

11   G. moved to Aurora, New York with her daughter. She passed her credible fear interview but an

12   Atlanta judge also has refused to change the venue of her case, again because he is skeptical of

13   the merits of her case.   Both women have so far attempted to travel to Atlanta for court dates,

14   but cannot afford to do so indefinitely.  The travel exacerbates the trauma already suffered by

15   their children.  Maria L.B.'s young daughter cries and begs her to return whenever she has to

16   leave.

17            Obviously this Court has no control over whether judges in other venues act

18   unreasonably.  But the administrative problems these Class Members face were either caused or

19   exacerbated by the irresponsible and negligent manner in which the United States implemented

20   its "zero tolerance" policy, and the chaos and havoc that ensued.  The United States should have

21   the obligation to handle case transfers of all the Class Members to the appropriate venues.  For

22   Class Members who are minor children, it should be required to ensure that cases are either re-

23   opened, or that deportation orders are terminated.  Together & Free respectfully submits that

24   such obligations—along with any other obligations necessary for smooth administration of the

25   Class Members' cases—should be provided for in the Proposed Agreement.

26                      *               *               *

27            Together & Free understands that any class settlement represents an imperfect

28   compromise.    But the compromises in the Proposed Agreement go beyond reasonable

1  concessions.   Instead, for a number of Class Members, the Proposed Agreement fails to

2  guarantee their primary goal—reunification with their family members.  Respectfully, the Court

3  must ensure the fair and just treatment of all Class Members, some of whom continue to be

4  deprived of their fundamental rights, and suffer profound and lasting harm.

5

6                                               Respectfully Submitted,

7

8                                               _____

9                                               Christine Bateup

10                                              Together & Free, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28