JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

        Petitioners-Plaintiffs,

 vs.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

       Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report on November 29, 2018, in anticipation of the status conference scheduled at 1:00pm PST on November 30, 2018. The parties submit this joint status report in accordance with the Court's instruction.

## I.  DEFENDANTS' POSITIONS

### A. Update on Reunifications

Defendants have appropriately discharged an additional 36 children since the November 8, 2018 Joint Status Report, for a total of 2,494 children. There are 8 children continuing to proceed towards reunification or other appropriate discharge. Specifically, there are:

- <u>2 children</u> in ORR care with a parent who is in the United States and presently in class. One of these children cannot be reunified at this time because the parent is in other federal, state, or local custody (e.g., state criminal detention). Defendants are working to appropriately discharge the remaining child, and to identify any possible barriers to discharge, meeting and conferring with Plaintiffs where appropriate for resolution. *See* Table 1: Reunification Update.

- <u>1 child</u> in ORR care with a parent presently departed from the United States, who has cleared Processes 1 through 3 of the Court-approved reunification plan, and who is proceeding towards reunification with the parent in their home country. *See* Table 2: Reunification of Removed Class Members. This child is one of the 4 where the Steering Committee has advised that the case will be delayed due to unique circumstances. The government is prepared to arrange this child's travel to his home country, and Defendants continue to meet and confer with the Plaintiffs to determine the appropriate timing for reunification.

- <u>5 children</u> in ORR care with parents presently departed from the United States, and for whom the ACLU has not yet provided notice of parental intent regarding reunification (or declination of reunification). Defendants are supporting the efforts of the ACLU to obtain statements of intent from

2

those parents. Once Defendants receive the notices from the ACLU, Defendants will either reunify the children or move them into the TVPRA sponsorship process, consistent with the intent of the parent.

- o For 3 of the 5 children, the Steering Committee has advised that resolution will be delayed due to unique circumstances.

- o The ACLU has been in contact with the parents of 2 of the 5 children for more than 28 days without providing Defendants with notice of parental intent. (One of these 2 children is included in the group for whom the Steering Committee has advised that resolution will be delayed.)

- o For 1 of the 5 children, ORR is working to support the ACLU's efforts to obtain parental intent by providing additional contact information for the child's parent.

The current reunification status for children ages 0 through 17 is further summarized in Table 1 below. The data in Table 1 reflects approximate numbers maintained by ORR at least as of November 27, 2018. These numbers are dynamic and continue to change as more reunifications or discharges occur.

**Table 1: Reunification Update**

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 103 | 2,564 | 2,667 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 98 | 2,396 | 2,494 |
| • Children discharged by being reunified with separated parent | 79 | 2,046 | 2,125 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 19 | 350 | 369 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 8 | 8 |
| • Parent presently outside the U.S. | 0 | 6 | 6 |
| o Steering Committee has advised that resolution will be delayed | 0 | 4 | 4 |
| • Parent presently inside the U.S. | 0 | 2 | 2 |
| o Parent in other federal, state, or local custody | 0 | 1 | 1 |
| o Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 2 | 31 | 33 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 3 | 27 | 30 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 90 | 90 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 12 | 12 |

**B. Update on Removed Class Members**

The current reunification status of removed class members is set forth in Table 2 below. This Table includes a new category for children proceeding outside the reunification plan, where the ACLU has provided final confirmation that the children should proceed through the TVPRA process outside the reunification plan. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least November 27, 2018. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 96 | Def's. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 96 | Def's. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 96 | Def's. |
| | Children with no contact issues identified by plaintiff or defendant | 96 | Def's. & Pl.'s. |
| | Children with parent contact information provided to ACLU by Government | 96 | Def's. |
| **PROCESS 3: Determine** | Children for whom ACLU has communicated parental intent for minor: | 91 | Pl's. |

| Parental Intention for Minor | • Children whose parents waived reunification | 88 | Pl's. |
|---|---|---|---|
| | • Children whose parents chose reunification in country of origin | 1 | Pl's. |
| | • Children proceeding outside the reunification plan | 2 | Pl's. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 5 | Pl's. |
| | • Children with voluntary departure orders awaiting execution | 0 | Def's. |
| | • Children with parental intent to waive reunification documented by ORR | 1 | Def's. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 2 | Pl's. |
| PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 1 | Pl's. |
| | • Children in ORR care with orders of voluntary departure | 0 | Def's. |
| | • Children in ORR care w/o orders of voluntary departure | 1 | Def's. |
| | ○ Children in ORR care whose immigration cases were dismissed | 1 | Def's. |

6

## C. Summary of Reunification Numbers

At the November 9, 2018 status conference, the Court asked Defendants to provide a summary report regarding reunifications to date. In accordance with the Court's request, Defendants report the following:

- <u>Children reunified inside the United States</u>: 1,959
  - o Children reunified and remaining in ICE custody as of November 27, 2018: 19 (in ICE custody with 19 adult parent class members)

- <u>Children reunified and repatriated</u>: 166

- <u>Children remaining to be reunified or otherwise appropriately discharged</u>: 8
  - o Children remaining to be repatriated: 1

- <u>Children of possible class members whose parents were ultimately excluded from reunification</u>:
  - o Children who were not separated from a parent: 79
  - o Children who could not be reunified because the parent is unfit or presents a danger to the child: 59
    - Based on the parent's criminal history: 55
    - Based on the child's case file: 4

- <u>Number of children whose parents waived reunification</u>: 268
  - o Children with parents inside the U.S.: 47
  - o Children with parents outside the U.S.: 221

- <u>Number of parents not located</u>: 0

### D. Update Regarding Government's Implementation of Settlement Agreement

**Settlement Agreement Implementation**

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms** | Total number of executed election forms received by the Government | **280 (176 Parents/104 Children)[1]** |
| | • Number who elect to receive settlement procedures | **141 (94 Parents/47 Children)** |
| | • Number who waive settlement procedures | **139 (82 Parents/57 Children)[2]** |
| **Interviews** | Total number of class members who received interviews | **127[3]** |
| | • Parents who received interviews | **65** |
| | • Children who received interviews | **62** |

[1] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[2] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[3] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings.

| Decisions | Total number of CFI/RFI decisions issued by USCIS | 139[4] |
|---|---|---|
| | • CFI/RFI decisions issued by USCIS for parents | 70 |
| | • CF decisions issued by USCIS for children | 69 |

**E. Defendants' Report on Meet and Confer Issues From November 15, 2018 Settlement Status Conference**

• <u>Martinez and Molina Objections</u>: The Court ordered the parties to meet and confer regarding Lesbi Nohemi Martinez-Martinez and Egla Arely Velasquez Molina and to provide this Court with an update following those discussions. Defendants' position remains unchanged. Both Ms. Martinez-Martinez and Ms. Velasquez Molina allege that they are legal guardians. Legal guardians fall outside the plain-language definition of the class and the settlement class. As legal guardians, Ms. Martinez-Martinez and Ms. Velasquez Molina fall outside the class definition because both classes are limited to parents. They are not entitled to the relief provided for by the injunction in this case or the relief provided by the settlement.

---

[4] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, the number of children who established a credible fear, the number of children determined not to have a credible fear, and individuals who were referred to 240 proceedings without interview because of a rare language.

18cv428 DMS MDD

Defendants are aware that Ms. Martinez-Martinez and Ms. Velasquez Molina intend to file a separate status report to provide this Court with their position and how they intend to proceed with their claims, whether in the District Court for the District of Columbia or before this Court. Once Ms. Martinez-Martinez and Ms. Velasquez Molina make that decision, Defendants will be better able to inform the Court how Defendants believe that this issue should proceed.

Defendants propose that the parties meet and confer after Ms. Martinez-Martinez and Ms. Velasquez Molina have reported their intent to the Court and the parties, and then submit a proposal to the Court in the next status report on the best way to proceed in light of that intent.

- <u>Legal Service Providers Objections</u>: Counsel for Defendants has conferred with counsel for the Legal Service Providers by phone and by email regarding the clarification of terms of the settlement agreement requested by the Legal Service Providers, and the resolution of any questions regarding children with voluntary departure orders. The parties continue to discuss resolution of these issues.

Defendants propose that the parties update the Court on these issues in the next joint status report.

**F. Communication Between Agencies Regarding Separations**

At the last status conference, the Court asked Defendants to submit information regarding communication between the agencies and agency components

18cv428 DMS MDD

related to situations where a child is separated from a parent. Defendants submit the following information for the Court's awareness. Defendants continue to discuss these issues, and will update the Court going forward as further developments occur on this front.

U.S. Customs and Border Protection's U.S. Border Patrol (USBP) and U.S. Immigration and Customs Enforcement (ICE) are responsible for the majority of referrals of Unaccompanied Alien Children (UAC) to ORR. ORR maintains information on UACs in its UAC Portal. The USBP record database is able to push referral information on UACs directly into the UAC Portal's referral page. ICE also has access to the UAC Portal referral page and directly enters UAC information into the system.

In the summer of 2018, ORR added a checkbox to the UAC Portal's referral page to indicate whether a child has been separated from family. The referral page also has a "notes" section where USBP and ICE can type in the name and other information of the separated family member, including their alien number. Additionally, USBP and ICE can enter this information into the parent/relative information section of the referral.

ORR has a data team responsible for maintaining information on children of potential class members. ORR's data team receives data from ICE weekly on

potential class members in ICE custody with children in ORR care, including the location of the parent.

## G. Plaintiffs' Attempts to Reinterpret the Class Definition

On June 26, 2018, this Court certified a class defined as:

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who *is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody*, absent a determination that the parent is unfit or presents a danger to the child.

ECF No. 82 at 17 (emphasis added). The class definition further excludes "migrant parents with criminal history or communicable disease, or those who are in the interior of the United States or subject to the EO." *Id.* at 17 n.10. In accordance with the plain language of the court's class certification order, immediately following the issuance of that order Defendants determined class membership by identifying parents of children in ORR custody. *See* ECF No. 124, July 19 Status Report (reporting on the reunification possibilities for 2,551 possible children of potential class members ages 5-17); ECF No. 86-1 at 3-5 (Declaration of Jonathan White explaining the process of identifying class members based on separated children in ORR custody); *see generally* ECF No. 93, July 6, 2018 Hearing Tr.

Moreover, in identifying the class of individuals subject to the settlement agreement recently entered into by the parties in *Ms. L.* and *MMM*, the parties explicitly agreed that the covered agreed-upon class of parents consists of:

adult alien parents who entered the United States at or between designated ports of entry with their child(ren), and who, on or before the effective date of this agreement: (1) were detained in immigration custody by the DHS; (2) have a child who was or is separated from them by DHS and, ***on or after June 26, 2018, was housed in ORR custody, ORR foster care, or DHS custody***, absent a determination that the parent is unfit or presents a danger to the child; and (3) have been (and whose child(ren) have been) continuously physically present within the United States since June 26, 2018, whether in detention or released. The class does not include alien parents with criminal histories or a communicable disease, or those encountered in the interior of the United States.

ECF No. 220-1 at 1 (emphasis added).

Recent discussions between the parties nonetheless suggest that Plaintiffs in the *Ms. L.* litigation and the *MMM* litigation now wish to assert that individuals whose children were released from ORR custody prior to June 26, 2018 are members of the *Ms. L.* class, and are entitled to relief under the settlement agreement. Plaintiffs have provided no explanation to the government for why they failed to raise this assertion at any time over the last five months even as the government has been clear as to how it was interpreting the class definition. Nor have Plaintiffs explained how this reading of the class definition can be squared with the plain language of the Court's class-certification order and the agreed-upon class definition in the settlement agreement.

Considering the late timing of this assertion, and the considerable steps Defendants have taken thus far to identify class members and provide them relief under the Court's preliminary injunction order and the settlement agreement,

expanding the class definition in this manner would not only be improper, but also would prejudicially impede the government's compliance efforts. The Court should reject Plaintiffs' attempts to alter the class definitions. If the Court is inclined to consider Plaintiffs' request, the government respectfully requests the opportunity to more fully brief this issue outside the context of this status report.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A. Status of Meet and Confer Regarding Legal Guardians

Pursuant to this Court's instructions at the final approval hearing, on November 15, 2018, counsel for Objectors Lesbi Martinez-Martinez and Egla Velasquez Molina met and conferred with Defendants concerning the entitlement of legal guardians to relief.  The government confirmed that they are unwilling to offer any relief to the Objectors, and that they maintain their position that legal guardians are not included in either the *Ms. L* Reunification Class or the *M.M.M./Dora* Settlement Class.   The Ms. L Plaintiffs separately confirmed the government's position with respect to the *Ms. L.* Reunification Class via email on November 29.

In light of the government's position, plaintiffs request that next week the parties propose to the Court how this issue should be addressed, and whether it is more appropriate for the Objectors' claims to be resolved before this Court, or before the U.S. District Court for the District of Columbia.  If plaintiffs propose to resolve the issue before this Court, they will also propose a briefing schedule.

### B. Ordering the government to Implement Centralized Data Systems to Track Family Separations

At the November 9 status conference, the Court requested Plaintiffs' position on whether it could order the government to implement a centralized

computer system to track families that were separated because of criminal prosecutions or other reasons.[5]

This Court has broad equitable authority to order any relief it deems just and proper to remedy the harms caused by Defendants' violation of constitutional rights. *See*, *e.g.*, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990) ("Once plaintiffs establish they are entitled to injunctive relief, the district court has broad discretion to fashion a remedy."); *Walters v. Reno*, 145 F.3d 1032, 1048-49 (9th Cir. 1998) ("Once . . . a constitutional violation has been ascertained, the district court retains broad discretion in fashioning a remedy."). "[I[n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 201 (1973) (plurality op.). This Court thus has broad equitable authority to order prospective relief and prevent a repeat of the practices that have harmed families in the past.

As the Court is aware, before it intervened, the government's systems for tracking and reunifying separated families was inadequate. The record in this case is replete with evidence of the harms that resulted from Defendants' policy and practice of separating families from each other, without any system to guarantee their expeditious reunification. *See* PI Order, Dkt. 83 at 16 (describing "absence of established procedures for dealing with families that have been separated at the border," as demonstrated in cases of Ms. L and Ms. C) (citing *United States v. Dominguez–Portillo*, No:EP–17–MJ–4409–MAT, 2018 WL 315759, at *1–2

---

[5] Recent reports have documented the problems caused specifically by Defendants' lack of information sharing mechanisms. *See* DHS Office of Inspector General, *Special Review – Initial Observations Regarding Family Separation Issues under the Zero Tolerance Policy* at 9-12 (Sept. 27, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-10/OIG-18-84-Sep18.pdf; government Accountability Office, Unaccompanied Children: Agency Efforts to Reunify Children Separated from Parents at the Border at 16-21 (Oct. 2018), https://www.gao.gov/assets/700/694918.pdf.

(W.D. Tex. Jan. 5, 2018) (explaining that criminally charged defendants "had not received any paperwork or information concerning the whereabouts or well-being of" their children). Until this Court intervened, Defendants evidently had no system in place for promoting communication between separated family members, much less ensuring their reunification. *See* Kang Decl., Ex. 38, ¶ 23 (describing a separated parent's attempt to reunite with her child using ORR's existing process); Supplemental Declaration of Michelle Brané, Ex. 31, ¶¶ 4-5, 8-11; Supplemental Declaration of Jennifer Podkul, Ex. 30, ¶¶ 3-8, 12; Tuell Decl., Ex. 32, ¶¶ 7-17. This evidence gives the Court an ample basis to direct Defendants to implement better information-sharing methods among their respective agencies, in addition to other equitable remedies.

In terms of what specific remedies the Court should order, Plaintiffs believe it is necessary to have additional information from Defendants before offering concrete proposals. Specifically, Plaintiffs require additional information from Defendants concerning their existing practices and bases for separating families, systems for tracking such separations, as well as any policies they have recently put in place to promote reunification of families that have been separated.

C. **The Rights of Separated Parents Whose Children Were Released from ORR Custody Before June 26.**

The government takes the position that the Ms. L. class does not encompass parents whose separated children were released from ORR custody *before June 26, 2018*, the date of this Court's preliminary injunction ruling. Plaintiffs take the position that the Ms. L. class includes *all* parents who were forcibly separated from their children. The government's arbitrary distinction is at odds with the class definition in the Ms. L. class certification order and the purpose of the Court's injunctive order.

18cv428 DMS MDD

The parties have met and conferred on this issue, and having reached an impasse, and agreed that removals of individuals in this category be stayed pending the Court's resolution.  On Friday, November 16, Plaintiffs' counsel learned of a separated parent who feared imminent removal because her child was released from ORR custody before June 26, 2018.  The government agreed that, until resolution of this issue, it will stay the removal of those parents whose children were released from ORR custody before June 26 whom Plaintiffs are able to identify.  However, there may be other such parents of whom Plaintiffs are unaware.

Clarification of the class definition is needed to insure that these class members benefit from the court's injunction ordering reunification, that class members are not deported before resolution of this issue, and that class counsel are provided full information about the status of such reunification efforts.  Plaintiffs further request that the Court order the government agree not to remove any separated parents whose children were released from ORR custody before June 26, and not just those whom Plaintiffs' counsel are able to identifiy.

**2.      Separated Parents Whose Children Were Released from ORR Custody Before June 26 Are Members of the Ms. L Class.**

This Court's June 26, 2018 order certified the following class:

All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

Order Granting in Part Plaintiffs' Motion for Class Certification, *Ms. L., et al., v. ICE*, Dkt. 82 at 17.  On the same date, the Court issued a preliminary injunction that granted class members a right to be reunified with their children.  In relevant part, the Court enjoined the government (1) from detaining class members apart from their children, and (2) from "removing any Class Members without their child, unless the Class Member affirmatively, knowingly, and voluntarily declines to be reunited with the child prior to the Class Members' deportation, or there is a determination that the parent is unfit or presents a danger to the child."  PI Order, Dkt. 83 at 24.[6]

The government interprets the Court's class definition to include only those parents who (1) are or were detained in immigration custody, (2) have a minor child who was separated from them by DHS and (3) *whose child was in ORR custody on or after June 26, 2018.*  Thus, the government would exclude from the class, and from any right to reunification, parents whose children happened to be released from ORR custody before June 26, 2018.

This is wrong for three reasons.  First, the text of the Ms. L. class definition itself contains no date on which children must be in ORR custody.  In relevant part, the class definition includes adult parents who (1) "have been, are, or will be detained in immigration custody" and (2) "have a minor child who is or will be separated from them by DHS and detained in ORR custody . . . ." The government points to the present tense "is" in the second part to contend that the definition includes only those parents whose children were in custody on June 26. Properly read, however, the definition includes those parents who were, at any time,

---

[6] On August 16, 2018, in order to ensure that the government respected the asylum rights of Ms. L. class members and their children, the Court entered a Temporary Restraining Order in the companion *MMM* case further prohibiting removal of Ms. L. class members and their children. *See* Order Granting Temporary Restraining Order, *M.M.M., et al. v. Sessions*, 18-cv-1832, Dkt. No. 55 at 15.

detained by DHS and who – at the time of their detention – had a child detained in ORR custody.

Plaintiffs' reading is consistent with the underlying intent of the class definition and injunction.  First, Plaintiffs did not propose that the class definition turn on the date on which a child must be in ORR custody.  Nor did the government argue for that limitation in opposing class certification.  Indeed, the text of the class definition that the Court adopted in relevant part was identical to that proposed by Plaintiffs in the Amended Class Complaint, see Dkt. 32 at 12, and Motion for Class Certification, see Dkt. 35-1 at 1.  Neither Plaintiffs nor the Court intended to exclude from the class—and thereby deny any right to reunify with their children—parents whose children happen to have been taken out of ORR custody by the time the Court entered its orders.

Second, imposing an artificial date limitation into the class definition would make no sense because both of the class representatives—Ms. L. and Ms. C.— would be excluded from the Class if the government were correct.  The government separated Ms. L. from her seven-year-old daughter on November 5, 2017.  Ms. L.'s daughter was in ORR custody when plaintiffs filed an individual action seeking reunification on February 26, 2018.  Dkt.  1 at 1.  The government subsequently released Ms. L., but her daughter was still in ORR custody when plaintiffs sought class certification on Mach 9, 2018.  Dkt. 32 at 6.  Two and a half months later, however, when the Court granted the motion for class certification, Ms. L.'s daughter had been released from ORR custody and the family was reunited.  Ms. C.'s son was similarly in ORR custody at the time class certification was sought, but released by the time class certification was granted.  *See* Brazilian mother reunites with 14-year-old son 8 months after separation at U.S. border, ABC News, June 5, 2018, *available at* https://abcn.ws/2LoIdia (last accessed Nov. 20, 2018) (reporting that Ms. C.'s son was released to her care on June 5, 2018).

The class definition was designed to include the named representatives, not exclude them.

Third, the government's June 26 cut-off date would create an artificial distinction between two classes of parents who were subject to the same illegal practice and suffered the exact same injuries, and arbitrarily deny relief to one of those classes. There is no relevant difference between the two groups. Parents whose children were released from ORR custody before June 26 were subject to the same "brutal, offensive" policy as the other class members. MTD Order, Dkt. 70 at 22. They were similarly "unlikely to know whether [they may] be deported before, simultaneous to, or after their child." PI Order, Dkt. 83 at 15. They and their children experienced the same agonizing trauma of separation. *Id*. at 18-19. Their substantive due process rights to family integrity were identically violated. And they all have the same right to be reunified as other parents. There is no reason why they would be excluded from the Class definition. And there is no reason why they should now be deported without any opportunity to reunify with their children, who, under the government's theory, would remain stranded in the United States simply because of the date on which ORR happened to place them with a sponsor.

**3.      In the Alternative, the Court Can Modify the Class Definition to Include Parents Whose Children Were Released from ORR Custody before June 26, 2018.**

If the Court were to conclude that the class definition as currently written excludes parents like Ms. L. and Ms. C., then Plaintiffs request modification of the class definition and for a stay of removal for the modified Class. Rule 23(c)(1)(C) provides that an "order that grants or denies class certification may be altered or amended before final judgment." Rule 23 gives courts "broad discretion to determine whether a class should be certified, and to revisit that certification

throughout the legal proceedings before the court." *United Steel v. ConocoPhillips Co.,* 593 F.3d 802, 810 (9th Cir.2010) (internal quotation marks omitted).

For the reasons stated above, a modified class definition that explicitly includes all qualifying parents—without exceptions based on the date their children left ORR custody—would be appropriate and would meet Rule 23's requirements. *See Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 210-11 (N.D. Cal. 2015).

### D. Steering Committee Progress

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. The government reported that, as of November 16, 108 children with removed parents remained in ORR custody. The Committee has delivered preferences for the parents of 100[7] of those children, and those children are awaiting either reunification with their parents or placement with sponsors in accordance with their parents' submitted preferences. The status of each of the final eight remaining cases is specified below, in Part I.E., and as noted in that section, only two cases remain outstanding for the purposes of the submission of reunification

---

[7] As discussed at the October 25 status conference, in this Joint Status Report Plaintiffs are reporting a set of detailed numbers based only on the government's most recent list of children in ORR custody with removed parents. Previously, Plaintiffs also reported a set of numbers based on the government's original lists of children in ORR custody with removed parents (originally numbering 414 children, and now 420, including those children of parents recently "re-categorized" as potential class members as explained by the government in the October 25 Joint Status Report). Plaintiffs continue to work to confirm that the placement of the children who are no longer in ORR custody conforms with the deported parents' wishes, and reserve the right to challenge and/or to seek more information regarding these placements. Using this 420 number, the Steering Committee has reported the preferences of a total of 300 parents who have been removed from the United States following separation from their children.

preferences within the ordinary course pursuant to the Plan.

The status of efforts based on the government's November 16 list of 108 children in ORR custody with removed parents appears in the table immediately below.

| | |
|---|---|
| Removed parents identified by the government to the Steering Committee as of 11/16/18 | 108 |
| • Removed parents identified by the government by 10/20/18 | 104 |
| • Removed parents newly identified by the government on 10/26/18 | 4 |
| Steering Committee called phone number for parent (using a government-provided number or a number otherwise obtained by the Steering Committee) | 108 |
| • Parents successfully reached (by phone or through NGO efforts) | 105 |
| • Parents not reached (by phone or through NGO efforts) | 3 |
| o Contact efforts ongoing | 1 |
| o Cases that the Steering Committee and government have agreed should be set aside – see Part I.E below | 2 |
| Parents successfully reached (by phone or through NGO efforts) | 105 |
| • Parent's final preference has been communicated to the government | 100 |
| o Parent has elected reunification in Country of Origin | 4 |
| o Parent has elected to waive reunification in Country of Origin | 96 |

| | |
|---|---|
| • Parent's final preference has not yet been communicated to the government, but the Steering Committee is actively seeking the parent's preference | 1 |
| • Cases that the Steering Committee has indicated to the government should be set aside—see Part I.E below | 4 |

### E. The Remaining Cases

There are eight parents, of the 108 parents in the government's November 16 list of children in ORR custody with removed parents, for whom the Steering Committee has not yet submitted to the government a final reunification preference. The Steering Committee has advised the government that six out of the eight cases require special treatment: two are parents not yet reached, and four are parents that have been reached.  Only two cases remain outstanding for the purposes of the submission of reunification preferences to the government within the ordinary course pursuant to the Plan:

- First, with respect to the six cases requiring special treatment:
  - Three are cases that the Parties have agreed should be set aside because they involve complex and individualized circumstances that necessitate treatment outside of the Plan's usual process.
  - Three are cases that the Steering Committee has advised the government will require additional time to resolve because they too involve complex and individualized circumstances, but which circumstances do not necessitate treatment outside of the Plan.  The government has agreed with the Steering Committee's proposed approach with respect to two of these cases; the Steering Committee brought the remaining case to the government's attention recently on November 26, and is awaiting the government's response.

- With respect to the two remaining cases:
  - The first case is a parent who was first identified to the Steering Committee on October 25 as a result of the government's "re-categorization." The Steering Committee has been unable to make initial contact with this parent using contact information either provided by the government or independently obtained by the Steering Committee. The Steering Committee has asked the government for assistance reaching the parent through three-way calling or other methods, and we await the government's response. The Steering Committee also continues to seek working contact information for the parent from alternate sources.
  - The second case involves a parent for whom the Steering Committee obtained a preliminary reunification preference in August, and with whom the Steering Committee has remained in telephone communication over the last several months to assist her in finalizing this difficult decision about her son's future. The Steering Committee was able to meet in person with the parent in Guatemala during the week of November 19, and now anticipates reporting a final preference to the government shortly.

### F. Information-Sharing

- **Children of Parents with Submitted Preferences Still Detained**

As noted in the preceding section, the Steering Committee has provided to the government final reunification preferences for the parents of 100 of the 108 children in the government's most recent list of children in ORR care with deported parents. Of these 100 final reunification preferences, 75 were submitted to the government by the Steering Committee 60 or more days ago as of

Wednesday, November 28.  Of these 75 preferences, 59 indicate an election of waiver of reunification in country of origin, and also identify a specific sponsor in the United States for ORR purposes.  The Steering Committee provided the government with lists of such cases on November 21 and at that time asked that the government investigate and advise the Steering Committee the cause of the delays in effecting these placements, as well as the anticipated timeline for placing these children with the sponsors designated by their parents.  Indeed, many parents have reached out to the Steering Committee to express concerns about their children and these delays.  We are concerned that such a large number of children, who were of course already traumatized by the separation from their parents, are still awaiting placement more than two months after their parents identified a preferred sponsor.  The Steering Committee eagerly awaits responses to its queries to the government.

- **Parents First Contacted 28 Days Or More Ago**

As discussed in Part I.E above, the Steering Committee and the government have agreed that five cases should be treated differently and that accordingly such cases will be removed from the list of parents with whom the Steering Committee first made contact 28 days ago, and for whom the government has not yet received the parent's reunification preference.  The Steering Committee has also proposed different treatment and setting aside one further case and is awaiting the government's response.  Setting those cases aside, there is only one parent[8] with whom the Steering Committee first made contact 28 days ago, for whom the government has not yet received the parent's reunification preference.

- **Removals from government Lists**

The Steering Committee continues to meet and confer with the government

---

[88]  As discussed in the last bullet point of Part I.E, the Steering Committee met with this parent in person recently and anticipates submitting a final preference shortly.

to clarify the bases on which children and parents have been removed from the lists of class members or children in ORR custody previously produced by the government, as reflected in each week's Joint Status Report. The Steering Committee's priority is to ensure that the parents' and their children's interests are properly addressed and that no families are forgotten.

### III.    MMM Plaintiffs' Positions

#### A.  Meet and Confers Regarding Settlement Objections

##### 1.  Children with Voluntary Departure Orders

Three legal service providers filed objections to the class settlement on November 2, 2018.  *See Ms. L* Docket, ECF No. 292.  One of the objections related to children with voluntary departure orders.  *Id.* at 16-18.  At the final fairness hearing on November 15, 2018, the Court overruled the objection but directed the parties and the Legal Service Provider objectors to meet and confer to discuss a resolution to the objectors' concerns.  Since then, counsel for the Legal Service Provider objectors, Catherine Weiss, has provided the government with the names and A-numbers of seven children she is aware of who accepted voluntary departure orders while separated from their parents.  However, this issue has not yet been resolved.

##### 2.  Clarification of Paragraph 1.a. of the Settlement

The Legal Service Provider objectors also sought "clarification" of the first sentence of Paragraph 1.a. of the settlement agreement.  *See Ms. L* Docket, ECF No. 292 at 20-21.  The Court overruled the objection but directed the parties to meet and confer and provide further clarification of the provision in this status report.  During a meet and confer on November 20, 2018, *M.M.M.* counsel provided the government with their interpretation of the first sentence of Paragraph 1.a. of the settlement agreement, and asked if the government agreed.  *M.M.M.* counsel sent a follow-up e-mail on November 27, 2018, again setting forth their interpretation of

the relevant provision and asking for the government's agreement.  The government has communicated to Plaintiffs that it has questions related to this issue, so the parties continue to discuss the issue and will update the Court regarding resolution in the next joint status report.

### B. Settlement Implementation

The parties continue to work together to implement the settlement agreement.  Plaintiffs' counsel has been sending the government signed settlement election forms on a rolling basis, as they are received from class members.  The government has been providing settlement procedures to reunified class members detained at Karnes and Dilley.  However, the parties have not had further discussions regarding the categories to be reported to the Court regarding settlement implementation.  Plaintiffs stand ready and eager to have those discussions.  In addition, Plaintiffs reiterate the importance of the parties reaching agreement on the information to be tracked and reported, to ensure consistency, reliability, and comprehensiveness of information being reported to the Court and the public.  In the meantime, Plaintiffs independently report the following information:

- Total number of election forms provided to the government as of 11/28/2018 = **330**
  - Total number of class members detained at Karnes and Dilley who submitted forms = **269**
    - Number of such class members who invoked the settlement procedures = **153**
      - Number of families who received a positive credible fear finding and were issued an NTA = **75**[9]
        - Number of Dilley families released as of 11/28 = **31**
        - Number of Dilley families still detained as of 11/28 = **6**
        - Number of Karnes families released as of 11/28 = **unknown**
        - Number of Karnes families still detained as of 11/28 = **unknown**
      - Number of families who received a negative credible fear finding and will be subject to expedited removal = **0**

---

[9] Plaintiffs have not yet received final confirmation of this number at the time of this filing, but understand it to be approximately correct.

- Number of such class members who waived the settlement procedures = **116**
  - Number of class members who have been repatriated as of 11/28 = **116**
- o Total number of forms provided to government for class members at other detention facilities = **47**
  - Number of such class members who invoked the settlement procedures = **20**
    - Number of families who received a positive credible fear finding and were issued an NTA = **unknown**
      - o Number of families released as of 11/27 = **unknown**
      - o Number of families still detained as of 11/27 = **unknown**
    - Number of families who received a negative credible fear finding and will be subject to expedited removal = **unknown**
  - Number of such class members who waived the settlement procedures = **27**
    - Number of class members who have been repatriated as of 11/27 = **unknown**
- o Total number of forms provided to government for non-detained class members = **14**
  - Number of such class members who invoked the settlement procedures = **14**
    - Number of families who received a positive credible fear finding and were issued an NTA = **unknown**
    - Number of families who received a negative credible fear finding and will be subject to expedited removal = **unknown**
  - Number of such class members who waived the settlement procedures = **0**

Plaintiffs also believe that, going forward, the parties should report similar data points for class members who have not sent signed election forms to class counsel. Although submitting a form is necessary to waive the settlement procedures, it is not necessary to receive the benefit of those procedures. For example, a non-detained class member parent with a final expedited removal order is entitled to a sua sponte "good faith . . . de novo review" of their credible fear finding under Paragraph 1.d. of the settlement, regardless of whether they have submitted a form. Such individuals – and the results of their interviews – should be reflected in the parties' ongoing reports as well. As indicated above, Plaintiffs stand ready and eager to discuss this with the government.

DATED: November 29, 2018          Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*