# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., *Petitioners-Plaintiffs*, v. U.S. Immigration and Customs Enforcement ("ICE"), et al. *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD<br><br>Date Filed: February 13, 2018<br><br>**DECLARATION OF CHILD ADVOCATES** |

### Declaration of Child Advocates Michelle Brané, Maria Odom, and Scott Shuchart

1. We are employed by organizations that, among other missions, advocate for children seeking asylum in the United States. Declarant Michelle Brané is Director of the Migrant Rights and Justice program at the Women's Refugee Commission (WRC). Declarant Maria Odom is the Vice President for Legal Services at Kids in Need of Defense (KIND). Declarant Scott Shuchart is a legal services consultant for KIND. Each of the declarants previously worked in one or more of the government agencies involved in administering the asylum and immigration system: Brané at the Department of Justice's Executive Office of Immigration Review, and Odom and Shuchart at the Department of Homeland Security (DHS). Shuchart left DHS in August 2018 and is generally familiar with its immigration data systems. WRC and KIND have previously submitted declarations in this case.

2. As organizations with longstanding experience and knowledge in working with unaccompanied children and families seeking protection at our borders, WRC and KIND recognize that regardless of the potential complications in doing so, the

identification of all parents and children separated at the U.S./Mexico border is critical to identifying children at risk of permanent separation from their parents and is a potentially life-saving exercise.

3. We recognize that the Department of Health and Human Services (HHS) is claiming that it would require extensive resources to identify separated children discharged before June 26, 2018. However, as noted above, we believe that this effort should be undertaken. We also wish to stress that the burden would be significantly lessened if HHS did not have to undertake this task alone, and had cooperation from the other agencies involved in family separation.

3. It is reasonable to require the various agencies involved in the separation of families to collaborate and share information for the identification of families that had been separated by the government.

4. We do not endeavor to set out all the ways in which the agencies can work together to identify the families. We note a few possible approaches involving information sharing and coordination between the agencies:

a. Family unit identifier numbers. It is our understanding that CBP may have some way of accessing these numbers, which were codes created in a CBP database when family units were apprehended together. It is our understanding that this code was erased (or overwritten) by computer systems when Defendants separated family members. We believe CBP may still have some access to this number in its live system. If not, it would be reasonable for this data to have been backed up, and CBP could be directed to examine data backups for places where the identifier number was recorded before it was erased.

b. Reviewing apprehension records for all children transferred from CBP to ORR during the period in question to identify adults apprehended and processed at the same time and in the same place. In many, perhaps nearly all, cases, the parent and child will have been given consecutive alien identification numbers ("A-

numbers"). At a minimum, it should be a relatively simple matter for DHS to cross-walk the A-numbers of the children apprehended and transferred to ORR with consecutive A-numbers issued to adults at the same time and place, and from that list identify possible family members.

c.   For any adults who were separated from a child and who remain in ICE custody or under ICE supervision today, ICE has full ability to communicate with them. ICE could be directed to ask all adult detainees apprehended by CBP during a particular time period whether they were apprehended with a child who was separated from them.

d.   In an April 20, 2018 article, the *New York Times* reported on a list of 700 separated children HHS had already prepared. This list could be used to identify possible additional separations. *See* C. Dickerson, "Hundreds of Immigrant Children Have Been Taken From Parents at U.S. Border," *N.Y. Times* (April 20, 2018), *available at* https://www.nytimes.com/2018/04/20/us/immigrant-children-separation-ice.html.

e.   We understand that case workers at ORR and its contractors have identified cases of separated families and contacted ICE to put the separated children in touch with their parents while the parent was in ICE or Bureau of Prisons custody. ICE should have records of any such cases brought to its attention and could be directed to review those records.

6.   We agree with Cmdr. White that ICE should not visit the homes of sponsors of separated, traumatized children.  Our experience working with this population indicates that with appropriate communication between child, sponsor, and parent, the best interest of the child could be realized without re-traumatization, and without requiring the direct participation of the government. Our organizations would be willing to participate in a steering committee, information process, or other facilitation role, at the Court's direction, to ensure that parents and children

who remain separated can be in contact and the parent enabled to make an appropriate decision about reunification.

7. The government says that most children were probably released to family. But not *all* will have been released to family, as the government concedes. Moreover, while ORR's procedures for discharge to more distant relatives are generally appropriate, the Court should appreciate that many of those relatives are strangers to the children affected. The children were mostly raised in foreign countries and may never have met their father's brother, mother's cousin, or sister's fiancé before the ORR placement process. Even the best efforts of a collateral-relative sponsor cannot substitute for the practical knowledge a custodial parent has of his or her child's best interests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 13, 2019.

_____/s_____
Michelle Brané
_____/s_____
Maria Odom
_____/s_____
Scott Shuchart