JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

          Petitioners-Plaintiffs,

  vs.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

          Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report on February 20, 2019, in anticipation of the status conference scheduled at 3:00pm PST on February 21, 2019. The parties submit this joint status report in accordance with the Court's instruction.

## I. DEFENDANTS' POSITIONS

### A. Update on Reunifications

As of February 13, 2019, Defendants have discharged 2,735 of 2,816 possible children of potential class members.[1]  *See* Table 1:  Reunification Update.  This is

---

[1] As explained in the data table below and in prior status reports, Defendants have determined that some children originally counted in this number are not, in fact, children of class members. Defendants continue to report this number to allow for transparency in their data reporting, and to minimize confusion.

an increase of 12 discharges reported in Table 1 since the Joint Status Report (JSR) filed on February 6, 2019.  All 12 children were discharged under other appropriate circumstances, such as discharges to other appropriate sponsors or discharges of minors who turned 18 years old.

There are now five children in ORR care proceeding towards reunification or other appropriate discharge.  The current status of these five children is as follows:

- One child has a parent who is in the United States, but who is unavailable because the parent is in other federal, state, or local custody (e.g., state criminal detention). Defendants are working to appropriately discharge the child, and to identify any possible barriers to discharge, meeting and conferring with Plaintiffs where appropriate for resolution.

- Four children have parents presently departed from the United States. The Steering Committee has not yet provided notice of parental intent regarding reunification (or declination of reunification). Defendants are supporting the efforts of the Steering Committee to obtain statements of intent from those parents.  Once Defendants receive the notices from the Steering Committee, Defendants will either reunify the children or move them into the TVPRA sponsorship process, consistent with the intent of the parent. The Steering Committee has advised that resolution on four of the five children will be delayed due to unique circumstances.

The current reunification status for the 2,816 children ages 0 through 17 who have been the focus of Defendants' reporting to date is further summarized in Table 1 below. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of February 13, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, and/or discharges occur.[2]

## Table 1: Reunification Update

| **Description** | **Phase 1 (Under 5)** | **Phase 2 (5 and above)** | **Total** |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2709 | 2816 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 106 | 2629 | 2735 |
| • Children discharged by being reunified with separated parent | 82 | 2073 | 2155 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 24 | 556 | 580 |

---

[2] Please note that ORR's database experienced technical problems and was inaccessible from approximately February 8, 2019 until February 12, 2019. Due to this outage, it is possible that additional reunifications took place since the last JSR, but were not updated in the database in time for this report. The ORR database is now functional again, and the next JSR will include all reunifications to date.

| Children in ORR Care, Parent in Class | | | |
|---|---|---|---|
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 5 | 5 |
| • Parent presently outside the U.S. | 0 | 4 | 4 |
| ○ Steering Committee has advised that resolution will be delayed | 0 | 3 | 3 |
| • Parent presently inside the U.S. | 0 | 1 | 1 |
| ○ Parent in other federal, state, or local custody | 0 | 1 | 1 |
| ○ Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 1 | 13 | 14 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 18 | 18 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 39 | 39 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 5 | 5 |

<u>Additional Information Regarding 149 Children Identified in the Previous JSR</u>

Table 1 incorporates discharge information relating to the 149 separated children reported for the first time in the last two JSRs.  *See* ECF Nos. 334 and 349. These children were in ORR care on June 26, 2018, and were all discharged by October 25, 2018.  At the time of discharge:

- 64 children had potential class member parents who departed the United States.  Seven of these 64 children departed the United States with their

separated parents. ORR discharged 57 children under other appropriate circumstances. At the request of the Steering Committee, ORR will provide the Steering Committee with the last known contact information for the parents of these 57 children.

- 73 children had potential class member parents in the United States. ORR reunified 10 of these 73 children with their separated children, and discharged 63 under other appropriate circumstances.

- 11 children had parents who were determined to be excluded from the class due to criminality. However, one parent from this group was later reunified with his separated child.

- 1 child was found not to have been separated from a parent.

On February 8, 2019, Defendants provided a spreadsheet to Plaintiffs identifying these 149 children, and providing information available to Defendants about the status of the children and their parents. Other than as noted above, Defendants have not received any follow-up inquiries from Plaintiffs about this data.

**B. Update on Removed Class Members**

The current reunification status of removed class members is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least February 13, 2019.  These numbers are dynamic and continue to change as the reunification process moves forward.

18cv428 DMS MDD

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 43 | Defs. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 43 | Defs. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 43 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 43 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 43 | Defs. |
| **PROCESS 3: Determine Parental Intention for Minor** | Children for whom ACLU has communicated parental intent for minor: | 40 | Pls. |
| | • Children whose parents waived reunification | 39 | Pls. |
| | • Children whose parents chose reunification in country of origin | 1 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 3 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive | 0 | Defs. |

6

| | | | |
|---|---|---|---|
| | reunification documented by ORR | | |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 1 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 1 | Defs. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

Separately, Plaintiffs' have requested that the government submit to Plaintiffs and to the Court a "baseline" total number of removed parents. Counsel for Defendants has spoken with counsel for Plaintiffs in an effort to better understand what Plaintiffs are seeking in making this request, and following that discussion, Defendants are now working with their data team to compile the number that they understand Plaintiffs to be referring to in requesting a "baseline." Defendants are reviewing their records and expect to be able to calculate this number in time for the next status report. Defendants note that since the preliminary injunction was issued they have regularly updated the Steering Committee regarding the status of departed

parents who have children remaining in ORR care, including updates and explanations about why their calculation of that number has continued to change over time. Defendants sent the last such update on February 8, 2019, and plan to send another update later this week.

**C. Update Regarding Government's Implementation of Settlement Agreement**

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms[3]** | Total number of executed election forms received by the Government | **340 (217 Parents/123 Children)[4]** |
| | • Number who elect to receive settlement procedures | **185 (119 Parents/66 Children)** |
| | • Number who waive settlement procedures | **155 (98 Parents/57 Children)[5]** |

---

[3] The number of election forms reported here is the number received by the Government as of February 13, 2019.

[4] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[5] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

| | | |
|---|---|---|
| **Interviews** | Total number of class members who received interviews | **137[6]** |
| | • Parents who received interviews | **71** |
| | • Children who received interviews | **66** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **63[7]** |
| | • Number of parents determined to establish CF or RF upon review by USCIS | **63[8]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **0** |
| | Total number of CFI decisions issued for children by USCIS | **73[9]** |

[6] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings.

[7] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

[8] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[9] This number is the aggregate of the number of children who received a positive CF

| | | |
|---|---|---|
| | • Number of children determined to establish CF by USCIS | **73[10]** |
| | • Number of children determined not to establish CF by USCIS | **0** |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **95 Parents[11]** |

## D. Children Awaiting Placement.

On February 12, 2019, Plaintiffs provided Defendants a list of 22 children who Plaintiffs believed were awaiting placement with a sponsor after their parent waived reunification. On February 16, 2019, Defendants provided Plaintiffs with information about each of these 22 children. In summary: 8 of those children have been released to a sponsor; 5 have possible sponsors, but necessary information has

---

determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[10] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[11] This number is as of February 9, 2019.

not been submitted by those sponsors; 1 has a possible sponsor, but necessary information has not been received from the consulate; 7 have no sponsor available; and 1 child was discharged from ORR custody because he turned eighteen.

**E. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

       *1.* *Data Requested by Plaintiffs*

    Defendants are providing Plaintiffs with a report containing information regarding families separated since the Court's June 26, 2018 preliminary injunction order. Defendants have identified 245 new separations of children and parents that occurred between June 27, 2018 and January 31, 2019, and four cases which require more time to assess.[12] Even counting these four cases as parent-child separations, these (249) referrals account for approximately 0.78% of the 31,876 total referrals ORR received over the same period. Further, of these 249 children, 62 are no longer in ORR care.

    Based on the information available to date, in the 245 identified separations the parent was either excluded from the *Ms. L* class or was separated for a reason consistent with the Court's preliminary injunction.  In some of these cases, the parent

---

[12] Defendants have excluded from this count of 245 separations a situation in which DHS encountered a UAC mother, adult father, and their UAC infant child, and in which the UAC mother and infant were both transferred to ORR together, while the infant's adult father was transferred to ICE custody. Defendants coordinated with Plaintiffs' counsel on the disposition of this case.

has since become eligible for reunification with their child, and reunification is proceeding under the Court's procedures, as outlined in Table 3 below.

Table 3 below sets forth the number of new separations identified, the bases for those separations, and the status of those children who have been discharged from ORR care. Defendants note that the count presented here is accurate as of February 20, 2019, and is based on information known to the Defendants as of that date. This information is, in some cases, different than the information that was known at the time of the actual separation. For instance, some of these 245 cases reflect a situation in which CBP separated a child from an accompanying adult because, based on the information available to CBP at the time of apprehension, and in light of the short period of time in which CBP must make a processing determination, CBP did not have information to indicate that the adult was the parent or legal guardian of the child.  However, since the time of apprehension, Defendants have developed additional information that shows that the child was, in fact, separated from his or her parent or legal guardian. As outlined below in Section I.E.2, in that case DHS and ORR would work together to reunify that parent and child under the expedited *Ms. L* reunification process. In light of changes in information known to Defendants as well as factual circumstances regarding the parent and child, any count of separations reflects only a snapshot in time, and is subject to change based on changed or updated information.

**Table 3:  New Separations**

| Description | Total |
|---|---|
| Total number of possible children separated from their parents and placed in ORR custody between June 26, 2018 and February 5, 2019 | 249 |
| • Separations verified by DHS and HHS | 245 |
| • Separations requiring additional review | 4 |
| Basis for Separation | |
| • Parent criminality, prosecution, gang affiliation, or other law enforcement purpose | 225 |
| • Parent health issues/hospitalization | 17 |
| • DHS unable to verify familial relationship | 3 |
| Total number of children discharged from ORR care (out of the 249 identified above): | 62 |
| • Children discharged by being reunified with separated parent | 17 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 45 |

2.  *Processes and Procedures*

Defendants have met and conferred with counsel for class members as well as counsel for separated children, and have considered all issues raised by counsel in these discussions, as well as issues identified in the course of this litigation, in developing the outline below. The below summary memorializes the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018, in accordance with the requirements of

13

the Court's preliminary injunction order. It also provides an outline of the options

for separated parents and children to obtain information and assess their options for

reunification. Defendants are willing to meet and confer with Plaintiffs as needed

regarding any remaining issues.

Outline of Processes and Procedures

- <u>DHS initiates separation</u> based on a parent's: 1) criminal history; 2) communicable disease; 3) unfitness or dangerousness (including hospitalizations); or 4) some other criteria that do not automatically exclude the parent from being treated as a *Ms. L.* class member at a later point in time (i.e., referral for criminal prosecution or as a material witness).

  o Understanding that initial separations must be made based on the information that is available at the time to those agents encountering an adult and child, DHS will, if appropriate, relay the basis for separation to the adult, or to the adult's attorney, upon request. CBP will not generally provide reasons to the adult if doing so would create a risk to the child's safety or would not otherwise be in the child's best interests, and will not do so in situations in which CBP suspects fraud, smuggling, and/or trafficking.

  o DHS will communicate the basis for separation to HHS, and will, as soon as practicable, provide HHS with available and appropriate information about the reason for the separation (taking into account any restrictions on the sharing of such information). DHS and HHS have designated points of contact to assist HHS in obtaining information about the reasons for the separation. HHS will ensure that information about the separation is communicated to the field so that attorneys representing the children can obtain information about the separations from the FFS or case managers.

  o Where separation is based on 1) criminal history, 2) communicable disease, or 3) a determination of unfitness or dangerousness by DHS, HHS will accept the child and consider reunification under the processes discussed below (either expedited *Ms. L* procedures or procedures consistent with the TVPRA.).

14

- <u>Where separation is based on communicable disease or a determination of unfitness based on hospitalization,</u> HHS will accept the child, and consider reunification under the processes discussed below, consistent with the TVPRA, while remaining cognizant that the parent may become available for reunification pursuant to the expedited *Ms. L* procedures during such period. If a parent completes medical treatment or the communicable disease is resolved while the parent remains in DHS custody, DHS will notify HHS as soon as practicable whether there is a continued basis for separation (either (1) criminal history, or (2) a determination of unfitness or dangerousness by DHS). HHS will notify DHS if it has determined that there is a basis for separation (including a determination of unfitness or dangerousness by HHS). If there is a continued basis for separation, the procedures discussed below will apply. If there is no continued basis for separation, and the child has not already been released consistent with the TVPRA, then DHS will work with HHS to facilitate reunification under the expedited *Ms. L* procedures.

- <u>Where the separation is based on a transfer to criminal custody for a criminal prosecution or as a material witness, but no other basis for separation has been identified,</u> HHS will accept custody of the child during the course of that parent's criminal custody. When the parent returns to DHS custody, DHS will notify HHS as soon as practicable whether there is a continued basis for separation (i.e., (1) criminal history, (2) communicable disease, or (3) a determination of unfitness or dangerousness by DHS). HHS will notify DHS if it has determined that there is a basis for separation including communicable disease or a determination of unfitness or dangerousness by HHS. If there is a continued basis for separation, the procedures discussed below will apply. If there is no continued basis for separation, then DHS will work with HHS to facilitate reunification under expedited *Ms. L* procedures.

- For parents who are separated because of: 1) criminal history, 2) communicable disease, or 3) a determination of unfitness or dangerousness by DHS, DHS will make a detention determination for the parent.

  o If the adult is detained, then DHS will work with HHS to facilitate communication between the parent and child for as long as both the parent and child remain in DHS and HHS custody, respectively.

    ▪ A parent who is separated on the basis of criminal history will be excluded from the class (the only exception to this would be if DHS receives information that the original criminal history determination was in error, in which case DHS should take steps to treat the parent as a *Ms. L.* class member and should work with HHS to facilitate reunification). HHS will work toward release of the child with a suitable sponsor consistent with the TVPRA.

      - If a parent in this category requests reunification for removal, DHS and HHS will consider such requests on a case by case basis, notwithstanding the fact that the parent remains excluded from the *Ms. L.* class.

    ▪ A parent who is separated on the basis of having a communicable disease and who remains in DHS custody is excluded from the *Ms. L.* class and is not entitled to be reunified with their child so long as the medical condition remains in place, and HHS will work toward release of the child with a suitable sponsor consistent with the TVPRA.

      - If DHS becomes aware that the parent no longer has a communicable disease, then DHS will notify and work with HHS to reassess class membership and, if appropriate, facilitate reunification for children not yet released from HHS.

    ▪ A parent who is separated on the basis of unfitness (including hospitalization) or dangerousness and who remains in DHS custody is not entitled to be reunified with their child so long as the factual basis for the original unfitness or dangerousness determination remains in place.

      - If DHS becomes aware that such factual basis no longer exists, then DHS will notify and work with HHS to reassess whether reunification is appropriate and, if appropriate, facilitate reunification.

16

- If HHS becomes aware that the factual basis for the original unfitness or dangerousness determination no longer exists then HHS will notify and work with DHS to reassess whether reunification is appropriate and, if appropriate, facilitate reunification.

- If a parent who remains in DHS custody was separated on the basis of unfitness or dangerousness, and DHS determines that the factual basis for the unfitness or dangerousness determination still exists, and the parent is subject to a final order of removal, DHS will determine whether the parent requests to be removed with his or her child. If the parent requests reunification for removal, DHS will notify HHS before the parent is removed. HHS will then determine whether the parent has any fitness or dangerousness issues that preclude reunification for removal. If HHS finds no fitness or dangerousness problem that precludes reunification for removal, then DHS and HHS will facilitate reunification for removal.

o <u>If DHS makes the decision **not** to detain an individual who was originally separated and excluded from the class for 1) criminal history, 2) communicable disease, or 3) a determination of unfitness or dangerousness by DHS (or if release of such an individual is ordered by an immigration judge)</u>, DHS will communicate this release determination to HHS and will work with HHS to provide information necessary for HHS to determine whether the parent has an issue that requires continued exclusion from the class or would require continued separation. If HHS concludes that no such issue requires continued separation or class exclusion, then, notwithstanding the fact that the parent is excluded from the *Ms. L.* class, HHS will facilitate reunification by, in its discretion, applying the expedited *Ms. L.* reunification procedures. Otherwise, the child will proceed towards release consistent with the TVPRA.

II.   *MS. L.* PLAINTIFFS' POSITION

1.   __The Creation of a Centralized Database to Track Further Separations__

The parties are meeting and conferring on how to addressing continuing separations.  Prior to the shutdown, Plaintiffs sent the government a set of threshold requirements that an interagency database should meet.  Plaintiffs have asked to see a written proposal by government agencies so as to provide detailed responses, informed by the views of stakeholders, including groups representing immigrant children and families.  As of Friday, February 15, the government stated they are in the process of developing a written proposal; Plaintiffs have not yet received it or had a chance to review it with stakeholders in order to provide further input.

2.   __Information Regarding Parents Separated from Children After June 26__

Plaintiffs have requested the government provide a list of parents separated from their children after June 26 (the date of the PI Order), along with the reasons why the family was separated in order to ensure this Court's injunction is properly implemented and assist the reunification of families where it is not.  Plaintiffs requested this information by e-mail to government's counsel on Dec. 6, 2018, raised the request in the February 6 JSR, and at the February 8 status hearing.  The government indicated it was putting the information together.  2/8/19 Tr. at 12. Plaintiffs have not yet received the list.

C.   **Steering Committee Progress**

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications.  On February 8, the government reported that, as of February 2, 49 children with removed parents remained in ORR custody.[13]  The Committee has delivered

---

[13] As discussed at the October 25 Status Conference, in this Joint Status Report

preferences for the parents of 45 of those children, and those children are awaiting either reunification with their parents or placement with sponsors in accordance with their parents' submitted preferences.  For the remaining four children, the parent of one is seeking to return to the United States under the Settlement Agreement and the other three are cases where the Steering Committee has advised the government that additional time will be required due to complex and individualized circumstances.

The status of efforts based on the government's January 28 list of 49 children in ORR custody with removed parents appears in the table immediately below.[14]

| | |
|---|---|
| Removed parents identified by the government to the Steering Committee as of 2/2/2019 | 49 |
| Parent's final preference has been communicated to the government | 45[15] |
| • Parent has elected reunification in Country of Origin | 0 |
| • Parent has elected to waive reunification in Country of Origin | 45 |
| Total number of cases that the Steering Committee has indicated to the government should be set aside. | 3 |
| Total number of cases where the parent seeks to return to the U.S. under the Settlement Agreement and has thus not yet made an election. | 1 |

Plaintiffs are reporting a set of detailed numbers based only on the government's most recent list of children in ORR custody with removed parents.

[14]  This table is shortened from the version in past status reports. We have omitted a breakdown of the 49 removed parents that focuses on how many separated parents have been contacted. All but two removed parents have been contacted, which is unchanged from the Feb. 6 status report.

[15]  As noted above, for one child, the Steering Committee has determined that, due to its inability to reach the removed parent, reporting the preference of the non-removed parent is appropriate.

### 1. Children Whose Parents Have Submitted Preferences Who Are Still Detained

On February 12, the Steering Committee provided to the government information regarding 22 children who had been in ORR custody for at least five months following the submission of a final reunification election. The government provided detailed information regarding these children on February 16, which the Steering Committee appreciates. Eight of these 22 children have now been discharged to a sponsor; one child turned 18 and was transferred out of ORR care. The Steering Committee will continue to meet and confer with the Government regarding the remaining children.

### 2. Identifying the Population of Removed Parents

At the November 30 Status Conference, the Court requested the parties to agree upon a baseline of the total number of parents who were removed following separation from their children, so as to provide the Court with a complete accounting of the reunification process. Although the Steering Committee has conferred with the government regarding how to calculate the baseline, the government has not yet provided the proposed baseline to the Steering Committee.

With respect to the 149 additional separated children in ORR custody, identified by the government in the December 12 Joint Status Report, the Government has provided initial information to the ACLU and Steering Committee, showing that 64 of these separated children have a parent that was removed from the United States following separation. None of these children remain in ORR custody; however the Steering Committee intends to contact these parents to ensure that their reunification preferences have been satisfied and to identify any parents whose cases counsel may raise with the government as

warranting return to the United States to pursue asylum.  The government has told the Steering Committee that it will provide contact information for these families later this week.

III.   *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018.  Counsel for Plaintiffs are providing the government with signed waiver forms as they are received from class members (detained and released). The parties are meeting and conferring on settlement implementation issues as they arise.  Since the last status report, the parties met and conferred on a range of issues.  The parties are working together to resolve the discrepancy between the number of waiver forms submitted by class counsel and the number of forms reported by the Government.  The parties are also working together to identify and resolve settlement issues for the remaining class members who are still in detention but who have not submitted waiver forms. The parties will alert the Court of any issues that require the Court's guidance.

.

DATED: February 20, 2019               Respectfully submitted,

                                       /s/ Lee Gelernt
                                       Lee Gelernt*
                                       Judy Rabinovitz*
                                       Anand Balakrishnan*
                                       AMERICAN CIVIL LIBERTIES UNION
                                       FOUNDATION
                                       125 Broad St., 18th Floor
                                       New York, NY 10004
                                       T:  (212) 549-2660
                                       F:  (212) 549-2654
                                       *lgelernt@aclu.org*
                                       *jrabinovitz@aclu.org*
                                       *abalakrishnan@aclu.org*

                                       Bardis Vakili (SBN 247783)
                                       ACLU FOUNDATION OF SAN DIEGO
                                       & IMPERIAL COUNTIES
                                       P.O. Box 87131
                                       San Diego, CA 92138-7131
                                       T: (619) 398-4485
                                       F: (619) 232-0036
                                       *bvakili@aclusandiego.org*

                                       Stephen B. Kang (SBN 292280)
                                       Spencer E. Amdur (SBN 320069)
                                       AMERICAN CIVIL LIBERTIES UNION
                                       FOUNDATION
                                       39 Drumm Street
                                       San Francisco, CA 94111
                                       T:  (415) 343-1198
                                       F:  (415) 395-0950
                                       *skang@aclu.org*
                                       *samdur@aclu.org*

                                       *Attorneys for Petitioners-Plaintiffs*
                                       *\*Admitted Pro Hac Vice*

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*