UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
                              )
MS. L., ET AL.,               )
                              ) CASE NO. 18CV0428-DMS
        PETITIONERS-PLAINTIFFS, )       18CV1832-DMS
                              )
VS.                           )
                              )
                              )
                              )
                              )
U.S. IMMIGRATION AND CUSTOMS  )  SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,  )   FEBRUARY 21, 2019
                              )   3:00 P.M. CALENDAR
        RESPONDENTS-DEFENDANTS. )
------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**MOTION HEARING**


REPORTED BY:                  LEE ANN PENCE,
                              OFFICIAL COURT REPORTER
                              UNITED STATES COURTHOUSE
                              333 WEST BROADWAY, ROOM 1393
                              SAN DIEGO, CALIFORNIA 92101

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           STEPHEN KANG, ESQ.
                           ANAN BALAKRISHNAN
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SCOTT STEWART, ESQ.
                           SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


ALSO APPEARING:            ZACHARY BEST, ESQ.
                           SIRINE SHEBAYA, ESQ.
                           WILSON BARMEYER, ESQ.
                           STEVEN HERZOG,ESQ.
                           CATHERINE WEISS, ESQ.
                           LINDA DAKIN-GRIMM,ESQ.

1    SAN DIEGO, CALIFORNIA – THURSDAY, FEBRUARY 21, 2019 3:00 P.M.

2                              *  *  *

3              THE CLERK:   NO. 1 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    MOTION HEARING.

6              THE COURT:   GOOD AFTERNOON.   MAY I HAVE APPEARANCES

7    FROM COUNSEL WHO ARE PRESENT IN COURT TODAY?

8              MR. STEWART:   SCOTT STEWART ON BEHALF OF THE

9    DEFENDANTS, YOUR HONOR.

10             MS. FABIAN:   SARAH FABIAN ON BEHALF OF THE

11   DEFENDANTS, YOUR HONOR.

12             MR. GELERNT:   GOOD AFTERNOON, YOUR HONOR.   LEE

13   GELERNT ON BEHALF OF THE MS. L. PLAINTIFFS.

14             MR. KANG:   AFTERNOON.   STEPHEN KANG FOR THE MS. L.

15   PLAINTIFFS.

16             THE COURT:   GOOD AFTERNOON.  WELCOME.   IT IS

17   DELIGHTFUL TO SEE COUNSEL AGAIN IN PERSON.

18             AND WE HAVE A NUMBER OF ATTORNEYS ON THE PHONE, AND

19   I WILL IDENTIFY THOSE INDIVIDUALS AT THIS TIME.

20             I HAVE AN INDICATION THAT MR. BALAKRISHNAN IS

21   PRESENT FOR MS. L.  FOR THE DORA PLAINTIFFS SIRINE SHEBAYA AND

22   WILSON BARMEYER.  FOR THE MMM PLAINTIFFS ZACHARY BEST.

23   STEPHEN HERZOG IS PRESENT, AS WELL.  AND I HAVE CATHERINE

24   WEISS APPEARING TELEPHONICALLY AS WELL.

25             I HAVE AN APPEARANCE NOTED FOR MS. LINDA

FEBRUARY 21, 2019

1  DAKIN-GRIMM.

2          MS. DAKIN-GRIMM IS PRESENT, AM I CORRECT?

3          **MS. DAKIN-GRIMM:**  I AM HERE, YOUR HONOR.

4          **THE COURT:**  ALL RIGHT.  THANK YOU.  SO LET ME GET TO

5  THAT ISSUE A LITTLE BIT LATER.

6          THERE ARE A NUMBER OF OTHER MATTERS THAT WE NEED TO

7  ADDRESS AT THIS TIME, SO I WOULD LIKE TO MOVE INTO THOSE RIGHT

8  AWAY.  AND PERHAPS WE CAN START FIRST WITH THE STATUS REPORT.

9          AND HERE, I APPRECIATE THE UPDATE.  IT APPEARS THERE

10 IS A LOT THAT HAS BEEN ACCOMPLISHED, AND THERE IS A LOT THAT

11 IS PRESENTLY BEING DISCUSSED AND WILL BE REPORTED ON AT THE

12 NEXT STATUS CONFERENCE.  SO LET'S RUN THROUGH THIS, AND I HAVE

13 JUST A FEW QUESTIONS.

14         ON PAGE 3, THERE IS AN INDICATION THAT OF THE

15 CHILDREN WHO HAVE BEEN DISCHARGED APPROPRIATELY TO SPONSORS OR

16 HAVE TURNED 18, THERE IS AN IDENTIFICATION OF THAT NUMBER, 24

17 OF THOSE CHILDREN UNDER AGE FIVE, AND 556 AGE FIVE AND OVER.

18         THE QUESTION I HAD WAS WITH RESPECT TO THE CHILDREN

19 WHO HAVE TURNED 18.  THEY ARE RELEASED, WHERE DO THEY GO?  FOR

20 MY OWN EDIFICATION, HOW ARE THEY PROCESSED?  WHAT DOES HHS DO,

21 ARE THEY -- ORDINARILY DO RELATIVES PICK THEM UP, OR DO SOME

22 OF THE NGO'S GET INVOLVED IN THEIR PLACEMENT?

23         **MS. FABIAN:**  IT COULD VARY, YOUR HONOR.  THEY COULD

24 BE TURNED OVER TO ICE AT TIMES, SO ICE SOMETIMES WILL TAKE

25 CUSTODY OF THEM.  THERE IS A PROVISION IN THE TVPRA THAT

FEBRUARY 21, 2019

1    PROVIDES –– THAT PROVIDES SOME PROTECTION TO CHILDREN BEING

2    RELEASED FROM HHS.   THERE IS ACTUALLY A LAWSUIT IN DC ABOUT

3    THAT PROVISION AND HOW IT IS BEING APPLIED.

4            IN GENERAL, CHILDREN RELEASED FROM O.R.R. CUSTODY

5    BECAUSE THEY TURN 18 WILL –– ICE WILL CONSIDER WHETHER TO TAKE

6    THEM INTO CUSTODY.   AND UNLESS ICE DETERMINES THAT IT NEEDS TO

7    TAKE CUSTODY, THEY WILL BE RELEASED JUST AS ANY OTHER ADULT

8    WOULD BE FROM IMMIGRATION CUSTODY.

9            **THE COURT:**   ALL RIGHT.   SO I WOULD ASSUME, THEN,

10   THAT MOST OF THESE CHILDREN ARE RELEASED TO ICE CUSTODY.   AND

11   THOSE THAT ARE NOT HAVE SOME KIND OF A SOFT LANDING THROUGH A

12   RELATIVE OR AN NGO PROVIDING SHELTER FOR THEM.

13           **MS. FABIAN:**   I WOULD GUESS THAT THAT'S CORRECT.   IF

14   THEY DON'T HAVE A RELATIVE IN THE UNITED STATES, THAT CAN BE A

15   FACTOR AS TO ICE'S DECISION WHETHER THEY WOULD BE RELEASED

16   FROM CUSTODY JUST AS A GENERAL MATTER.   SO PRESUMABLY THAT

17   WOULD BE ONE FACTOR CONSIDERED WITH THEIR RELEASE WITH ICE.

18           AND I WANT TO CLARIFY.   I AM NOT TOTALLY SURE TODAY

19   WHETHER IN ALL CASES THEY WOULD BE PHYSICALLY TRANSFERRED TO

20   ICE CUSTODY OR WHETHER ICE MIGHT MAKE THE DETERMINATION

21   WITHOUT NEEDING TO TAKE CUSTODY.   I JUST DON'T HAVE AN ANSWER

22   TO THAT.   BUT THERE WOULD BE SORT OF A CONSIDERATION OF

23   WHETHER THEY WOULD NEED TO GO INTO ICE CUSTODY.

24           **THE COURT:**   OKAY.   THANK YOU.

25           MR. GELERNT, DO YOU HAVE ANY INFORMATION ON THAT?

FEBRUARY 21, 2019

```
 1              MR. GELERNT:  YOUR HONOR, I DO NOT HAVE MORE, BUT I

 2    CAN CIRCLE BACK WITH NGO'S WHO DEAL WITH THAT NITTY-GRITTY

 3    SITUATION AND PROVIDE THE COURT AT THE NEXT JSR WHAT OUR

 4    UNDERSTANDING IS ABOUT WHAT IS HAPPENING ON THE GROUND.

 5              THE COURT:  OKAY.  THANK YOU.

 6              ON PAGE 4, DEALING WITH THE 149 CHILDREN IDENTIFIED

 7    RECENTLY.  IT APPEARS THAT OF THOSE 64 HAVE CHILDREN WHO WERE

 8    REMOVED FROM COUNTRY.  SO THE LAST BALLPARK NUMBER WE HAD, IF

 9    MEMORY SERVES, WAS THAT ABOUT 414 PARENTS HAD BEEN REMOVED

10    FROM THE COUNTRY WITHOUT THEIR CHILD.  AND SO AM I CORRECT IN

11    ASSUMING THAT TO THAT NUMBER, WHATEVER THAT NUMBER IS, WE

12    WOULD BE ADDING ANOTHER 64 OR SO.  SO THIS BALLPARK NUMBER --

13    AND I KNOW THERE WILL BE A REPORT ON IT AT THE NEXT STATUS,

14    BUT THE BALLPARK NUMBER IS GOING TO BE AROUND 500.  AM I

15    CORRECT?

16              MS. FABIAN:  I WOULD SAY IT WILL BE LESS THAN THAT,

17    BUT THE -- I AM NOT QUITE SURE WHERE THE 414 COMES FROM, BUT

18    THERE IS A NUMBER IN THE 400'S THAT WAS AN ORIGINAL NUMBER

19    THAT MANY PARENTS WERE REMOVED FROM THAT FOR REASONS THAT THEY

20    WERE NOT ACTUALLY REMOVED.  SO WE ARE TRYING TO WORK OUT --

21    BETWEEN THE 343, WHICH WAS THE NUMBER WE STARTED WORKING WITH

22    THE STEERING COMMITTEE ON, AND THAT -- I WANT TO SAY IT WAS

23    AROUND 450, WHICH WAS A VERY EARLY NUMBER THAT HAS SINCE GONE

24    DOWN.  SOMEWHERE IN THERE IS WHAT WOULD BE THE BENCHMARK.  AND

25    THEN THAT WOULD, YES, ADD THESE 64 AS WELL.
```

FEBRUARY 21, 2019

1        **THE COURT:**  OKAY.  THANK YOU.

2            THERE IS A GOOD REPORTING ON THE PROCESSES AND

3    PROCEDURES THAT ARE BEING DISCUSSED WITH RESPECT TO FAMILIES

4    THAT HAVE BEEN SEPARATED SINCE JUNE 26, 2018, AND I SIMPLY

5    ENCOURAGE THE PARTIES TO KEEP WORKING THROUGH THAT.  AND THEN

6    WE WILL HAVE A REPORT AT THE NEXT STATUS CONFERENCE ON THAT

7    IMPORTANT ISSUE.

8            THE ONLY OBSERVATION I HAVE THERE, ON PAGES 14, 15,

9    16, AND 17 THERE IS A NARRATIVE OF -- OR AN OUTLINE OF THE

10   PROCESSES AND PROCEDURES THAT ARE BEING DISCUSSED AND ARE

11   CURRENTLY IN PLACE.  THERE IS NO REFERENCE HERE TO DEPARTMENT

12   OF JUSTICE, AND IT SEEMS TO ME THAT DOJ AND B.O.P. SHOULD BE A

13   PART OF THIS PROCESS.  BECAUSE WHAT WE KNOW -- AND THERE WAS A

14   CASE CITED IN THE COURT'S PRELIMINARY INJUNCTION ORDER FROM

15   THE WESTERN DISTRICT OF TEXAS -- IS THAT MANY OF THESE

16   PARENTS, WHEN THEY ARE PROSECUTED CRIMINALLY AND SEPARATED,

17   ARE PLACED IN DOJ CUSTODY, AND THEY ARE SPECIFICALLY WITH THE

18   B.O.P., AND WHEN THEY APPEAR IN COURT NO ONE HAS ANY

19   INFORMATION AS TO WHERE THE CHILDREN ARE.

20           IT SEEMS TO ME AN IMPORTANT COMPONENT OF THESE

21   PROCESSES AND PROCEDURES WOULD INCLUDE B.O.P. SO THAT THERE

22   CAN BE A FULL LINK-UP FROM DAY ONE INVOLVING ALL AGENCIES THAT

23   HAVE CARE AND CUSTODY OF PARENTS AND CHILDREN THROUGHOUT THE

24   PROCESS.

25           **MS. FABIAN:**  JUST TO CLARIFY, YOUR HONOR.


                        FEBRUARY 21, 2019

1          **THE COURT:**  YES.

2          **MS. FABIAN:**  YOUR CONCERN IS INFORMATIONAL, TO MAKE

3    SURE THAT B.O.P., WHEN THEY HAVE CUSTODY OF A PARENT, WOULD

4    HAVE THE INFORMATION AS TO WHERE THE CHILD IS SO THAT THEY

5    COULD FACILITATE COMMUNICATION AND LET THE PARENT KNOW TO THE

6    EXTENT THE PARENT NEEDS TO KNOW.

7          **THE COURT:**  YES.  SO ALL OF THESE AGENCIES NEED TO

8    BE COMMUNICATING.  AND ULTIMATELY I THINK THE GOAL HERE, AND

9    WHAT THE PARTIES ARE WORKING TOWARD, IS PROCEDURES AND

10   PROTOCOL IN A CENTRALIZED DATA SYSTEM WHERE ALL OF THE KEY

11   AGENCIES -- DOJ, DHS, HHS -- COMMUNICATE SO THAT PARENTS AND

12   CHILDREN ARE ACCOUNTED FOR THROUGHOUT THE PROCESS.

13          AND THAT WHEN, FOR EXAMPLE, A PARENT HAS FINISHED

14   HIS OR HER CUSTODIAL TIME ON A CRIMINAL SENTENCE AND THEY ARE

15   TRANSFERRED FROM B.O.P. TO ICE, THAT THERE BE A COMMUNICATION

16   SYSTEM IN PLACE WHERE HHS IS THEN NOTIFIED AND REUNIFICATION

17   CAN BEGIN.

18          **MS. FABIAN:**  AND I BELIEVE THAT PART OF IT IS

19   ACCOUNTED FOR IN OUR OVERVIEW, AND WE CAN TALK ABOUT THE

20   DETAILS MORE WITH PLAINTIFFS' COUNSEL.

21          SO I THINK THE PART THAT MAY NOT BE ACCOUNTED FOR

22   THAT I HEARD YOU EXPRESS CONCERN ABOUT IS DURING THE TIME IN

23   B.O.P. CUSTODY, MAKING SURE THAT THE PARENT IS NOT IN THE DARK

24   AS TO WHERE THEIR CHILD IS.

25          **THE COURT:**  YES, BECAUSE WE DO KNOW THAT THERE IS --

FEBRUARY 21, 2019

1    CAN BE A SIGNIFICANT PERIOD OF TIME.  IT CAN BE A MATTER OF
2    DAYS, 30 TO 60 DAYS, WHERE A PARENT IS DOING A SENTENCE ON A
3    1325 CONVICTION, AND THEY DON'T KNOW WHERE THEIR CHILD IS.
4    AND THE ATTORNEYS DON'T KNOW, AND THE COURT DOESN'T KNOW, NO
5    ONE KNOWS.
6              AND IT SEEMS TO ME, THROUGH THIS PROCESS THAT THE
7    PARTIES ARE WORKING ON, IF B.O.P. IS INCLUDED IN THIS
8    INFORMATIONAL GATHERING AND REPORTING PROCESS THEN THERE WILL
9    BE A COMPLETE ACCOUNTING FOR PARENT AND CHILD THROUGHOUT THE
10   PROCESS AT ALL STAGES.
11             **MS. FABIAN:**  UNDERSTOOD, YOUR HONOR.  I WILL WORK ON
12   THAT.
13             **THE COURT:**  THE ONLY OTHER QUESTION I HAD RELATES TO
14   PARENTS WHO HAVE PREVIOUSLY BEEN REMOVED.  AND AT PAGE 19,
15   TURNING TO FOOTNOTES 14 AND 15, IT APPEARS THAT ALL BUT TWO OF
16   THE REMOVED PARENTS HAVE BEEN CONTACTED.  AND THEN IN FOOTNOTE
17   15 IT INDICATES THAT AS TO ONE OF THE TWO, THE NON-REMOVED
18   PARENT WAS CONTACTED.
19             SO DOES THAT MEAN THERE IS STILL ONE CHILD WHOSE
20   PARENTS HAVE NOT BEEN CONTACTED?
21             **MR. HERZOG:**  YOUR HONOR, THIS IS STEVEN HERZOG.
22             ON THAT, THAT'S THE SAME -- WE SPOKE ABOUT THAT CASE
23   VERY BRIEFLY DURING THE LAST CONFERENCE.  THAT'S A CASE WHERE
24   THE PARENT WAS REPRESENTED BY A SEPARATE ATTORNEY, AT LEAST
25   FOR SOME PERIOD OF TIME.  AND WE HAVE NOT BEEN IN DIRECT

FEBRUARY 21, 2019

1    CONTACT WITH THAT PARENT, THAT ATTORNEY WAS COMMUNICATING THAT

2    PARENT'S PREFERENCE, AT LEAST FOR A WHILE.  AND WE ARE NOW

3    TRYING TO REACH OUT TO THAT PARENT DIRECTLY.

4              **THE COURT:**  OKAY.  THANK YOU.  I KNOW THAT WE TALKED

5    ABOUT THAT AT THE LAST STATUS, BUT THE WAY THIS WAS WRITTEN ON

6    PAGE 19, I BEGAN TO DOUBT WHETHER MY RECOLLECTION WAS ACCURATE

7    AS TO THE CONTACT OF THAT PARENT.

8              SO IT WOULD APPEAR, BASED ON THAT INFORMATION, THAT

9    EVERY CHILD'S PARENT OR NON-REMOVED PARENT HAS BEEN REACHED

10   AND WILL BE ABLE TO WEIGH IN ON THE REUNIFICATION QUESTION.

11             OTHER THAN THAT, I THINK THE STATUS REPORT IS

12   EXCELLENT.  THERE ARE A NUMBER OF SIGNIFICANT TOPICS THAT ARE

13   BEING ADDRESSED BY THE PARTIES AND WILL BE REPORTED ON AT THE

14   NEXT STATUS.

15             ABSENT ANY QUESTIONS OR COMMENTS BY COUNSEL, I WOULD

16   BE PREPARED TO MOVE TO THE NEXT -- TO THE MOTIONS THAT ARE

17   PENDING.  ALL RIGHT.

18             LET'S START, THEN, WITH THE MMM MOTION TO ENFORCE

19   THE SETTLEMENT AGREEMENT FOR CLASS MEMBERS WHO HAVE NOT

20   SUBMITTED EXECUTED WAIVER FORMS.

21             HERE, IN READING THE GOVERNMENT'S OPPOSITION -- AND

22   PERHAPS I AM MISAPPREHENDING THE GOVERNMENT'S POSITION.  BUT

23   IT APPEARED THAT THE GOVERNMENT WAS PREPARED TO IDENTIFY THE

24   PARENTS WHO ARE ENTITLED TO THE SETTLEMENT PROCEDURES.

25             SO AT PAGE 2 AND 3 OF THE OPPOSITION THERE IS AN

FEBRUARY 21, 2019

1   INDICATION THAT MANY OF THESE CLASS MEMBERS RECEIVED NOTICES

2   TO APPEAR RATHER THAN E.R. ORDERS, AND THUS THEY ARE NOT PART

3   OF THE SETTLEMENT AGREEMENT.

4           AND THEN THE OPPOSITION GOES ON TO STATE THAT FOR

5   THE REMAINING INDIVIDUALS, THOSE WOULD BE THE PARENTS WHO

6   RECEIVED THE E.R. ORDERS, THE PARTIES OUGHT TO IDENTIFY THOSE

7   INDIVIDUALS WHO ARE ENTITLED TO THE SETTLEMENT PROCEDURES BUT

8   HAVEN'T SUBMITTED ELECTION FORMS.

9           AND IT APPEARS THE GOVERNMENT IS SAYING THAT IT WILL

10  ENSURE THAT CLASS COUNSEL IS NOTIFIED OF SUCH INDIVIDUALS SO

11  THAT AN ELECTION CAN BE MADE.

12          SO AM I UNDERSTANDING THAT THE GOVERNMENT IS

13  PREPARED TO IDENTIFY THOSE PARENTS WHO RECEIVED E.R. ORDERS

14  AND PROVIDE THAT INFORMATION TO PLAINTIFFS' COUNSEL?

15          **MR. STEWART:**  I THINK THAT IS LARGELY RIGHT, YOUR

16  HONOR, WITH THIS QUALIFICATION.

17          THE GOVERNMENT DOESN'T HAVE A READY WAY TO BREAK

18  DOWN REMOVAL ORDERS BETWEEN SORT OF FULL-SCALE REMOVAL ORDERS

19  AND EXPEDITED REMOVAL ORDERS.  WE CAN PROVIDE A LIST OF FOLKS

20  WITH REMOVAL ORDERS AND THEIR RELEVANT CONTACT INFORMATION,

21  THAT WILL GIVE MR. BARMEYER AND HIS COLLEAGUES THE INFORMATION

22  THEY WOULD NEED TO CONTACT RELEVANT FOLKS.

23          WE ALSO HAVE ANOTHER MECHANISM THAT I UNDERSTAND ICE

24  HAS PUT IN PLACE HERE TO GET AT THE MAIN CONCERN THAT I THINK

25  MR. BARMEYER IS IDENTIFYING AND THAT'S -- WHAT I UNDERSTAND IS

FEBRUARY 21, 2019

12

1   THAT ICE HAS TAKEN THE STEPS TO DO IS PUT A FLAG ON THE CLASS
2   MEMBERS WHO ARE ENTITLED TO SETTLEMENT RELIEF ON THEIR
3   IMMIGRATION FILE, SO THAT IF SOMEBODY WERE TO COME UP FOR
4   POTENTIAL REMOVAL THAT ISSUE WOULD BE THERE AND REMOVAL -- IT
5   WOULD BE FLAGGED SO THAT IT WAS AN ISSUE ADDRESSED BEFORE
6   REMOVAL.

7         SO IF SOMEONE WITH A FLAG WERE TO BE IDENTIFIED,
8   INSTEAD OF BEING REMOVED WHAT ICE WOULD DO IS SAY, OH, THIS IS
9   SOMEBODY WHO IS ENTITLED TO SETTLEMENT PROCEDURES, WE NEED TO
10  TAKE THE STEPS TO MAKE SURE THAT THEY GET THEIR ELECTION FORM
11  AND MAKE THEIR ELECTION ONE WAY OR ANOTHER SO THEY GET THE
12  PROCESSES.

13        SO I THINK WITH THOSE TWO MECHANISMS COMBINED, EVEN
14  THOUGH WE DON'T HAVE SORT OF THE PERFECT LIST OF THE EXACT
15  PEOPLE BECAUSE THAT IS JUST HARD TO GENERATE WITH OUR SYSTEMS,
16  IT IS NOT REALLY -- THE SYSTEMS AREN'T REALLY GEARED TOWARDS
17  THIS PRECISE SETTLEMENT SITUATION.

18        BUT WITH THOSE TWO MECHANISMS WE THINK WE HAVE
19  IDENTIFIED THE CONCERNS AND HAVE GUARDED AGAINST WHAT WE THINK
20  IS THE MAIN THRUST OF WHAT THE MMM AND OTHER PLAINTIFFS ARE
21  GETTING AT.  SO I THINK THOSE TWO POINTS SHOULD, I THINK,
22  ADDRESS THE BULK OF THE CONCERNS.

23        **THE COURT:**  BECAUSE YOU WOULD AGREE THAT THE
24  GOVERNMENT IS THE SOLE PARTY THAT IS ABLE TO IDENTIFY PARENTS
25  WITH E.R. ORDERS, BECAUSE PLAINTIFFS' COUNSEL WOULDN'T HAVE

FEBRUARY 21, 2019

1    THAT INFORMATION.  AND I THINK WHAT THEY ARE SAYING IS, WE

2    NEED THE GOVERNMENT TO IDENTIFY THOSE PARENTS TO THEN ENSURE

3    THAT THOSE PARENTS WILL NOT BE REMOVED PRIOR TO MAKING AN

4    ELECTION.

5          AND THEN, IT SEEMS TO ME, IF THOSE PARENTS ARE

6    IDENTIFIED, DOESN'T THAT ADDRESS PLAINTIFFS' CONCERNS?

7    BECAUSE ONCE THOSE PARENTS ARE IDENTIFIED, CLASS COUNSEL WILL

8    BE PROVIDED THE CONTACT INFORMATION.  AND THEY CAN THEN

9    DETERMINE WHETHER THOSE PARENTS ARE GOING TO PURSUE THE

10   SETTLEMENT PROCEDURES OR NOT, SO THE ELECTION WOULD BE MADE.

11         IT SEEMS TO ME EVERYTHING WORKS OUT IF THOSE PARENTS

12   ARE IDENTIFIED AND CLASS COUNSEL ARE ABLE TO CONTACT THEM.

13         AM I MISSING SOMETHING THERE?  I GUESS I WOULD

14   INQUIRE OF PLAINTIFFS' COUNSEL ON THAT ISSUE.

15         **MR. BARMEYER:**  THANK YOU, YOUR HONOR.  THIS IS MR.

16   BARMEYER FOR THE PLAINTIFFS ON THIS.

17         YOU HAVE IDENTIFIED OUR KEY CONCERN.  WE HAVE BEEN

18   NOTIFIED BY VARIOUS CLASS MEMBERS THAT THEY HAVE BEEN TOLD BY

19   ICE THAT THEY ARE SCHEDULED FOR REMOVAL AT THEIR NEXT

20   CHECK-IN.  AND OUR PRIMARY CONCERN, WHICH IS THE ONE YOU

21   ARTICULATED, IS TO MAKE SURE THERE IS A PROCESS IN PLACE TO

22   IDENTIFY THOSE INDIVIDUALS SO THAT THEY ARE NOT REMOVED BEFORE

23   THEY EITHER RECEIVE THE SETTLEMENT PROCEDURES OR AFFIRMATIVELY

24   WAIVE THEIR RIGHTS UNDER THE SETTLEMENT.

25         SO THAT'S THE THRESHOLD QUESTION THAT WE WANT TO

FEBRUARY 21, 2019

14

1   MAKE SURE IS CONFIRMED TODAY.  AND MY UNDERSTANDING IS THAT

2   MR. STEWART AND YOUR HONOR'S DISCUSSION JUST CONFIRMED THAT,

3   THAT THERE WILL BE A PROCESS IN PLACE SO THAT CLASS MEMBERS

4   ARE IDENTIFIED AND NOT REMOVED IF THEY ARE ENTITLED TO RELIEF

5   UNDER THE SETTLEMENT OR NEED TO MAKE AN ELECTION.  THAT IS MY

6   UNDERSTANDING OF THE DISCUSSION THAT WAS BETWEEN YOUR HONOR

7   AND MR. STEWART.

8           **THE COURT:**  YES.  SO IT SEEMED TO ME, IN READING THE

9   MOTION AND THE OPPOSITION, IT WAS A LITTLE BIT LIKE SHIPS IN

10  THE NIGHT.  PLAINTIFFS WERE TALKING ABOUT ENFORCING CERTAIN

11  PROVISIONS OF THE SETTLEMENT AGREEMENT.  THE GOVERNMENT WAS

12  SAYING, WE ARE NOT OBJECTING TO THAT, WE UNDERSTAND WHAT OUR

13  OBLIGATIONS ARE UNDER THE SETTLEMENT AGREEMENT.

14          AND THERE WAS DISCUSSION ABOUT THE ELECTION FORM AND

15  THAT HAVING TO OCCUR FIRST.  BUT NONE OF THAT CAN HAPPEN

16  UNLESS PLAINTIFFS' COUNSEL KNOW WHO THE PARENTS ARE, AND ONLY

17  THE GOVERNMENT KNOWS THAT, IT SEEMS TO ME.

18          SO THE GOVERNMENT WOULD HAVE TO IDENTIFY THOSE

19  PARENTS THAT ARE SUBJECT TO THESE SETTLEMENT PROCEDURES,

20  IDENTIFY THEM, PROVIDE THAT INFORMATION TO PLAINTIFFS'

21  COUNSEL.  THEN PLAINTIFFS' COUNSEL COULD MEET AND CONFER AND

22  PROVIDE THE ELECTION FORM AT THAT POINT.

23          **MR. STEWART:**  YOUR HONOR, WHAT THE GOVERNMENT HAS --

24  I THINK MOST OF WHAT YOUR HONOR HAS SAID IS RIGHT.  I DON'T

25  THINK THERE IS A DISPUTE OVER THE KEY ISSUE OF FOLKS BEING

FEBRUARY 21, 2019

1   ENTITLED TO SETTLEMENT PROCEDURES, IT IS JUST OVER HOW WE KIND

2   OF GET THERE.

3          WHAT I WOULD EMPHASIZE IS THAT THE GOVERNMENT HAS A

4   PRACTICAL PROBLEM PINPOINTING THE PRECISE PEOPLE WHO

5   DEFINITELY HAVE EXPEDITED REMOVAL ORDERS AT THIS POINT IN

6   TIME.  WE CAN IDENTIFY A BROADER GROUP WITH FINAL REMOVAL

7   ORDERS, WE CAN GIVE THAT INFORMATION TO THE PLAINTIFFS WITH

8   THE BEST CONTACT INFORMATION WE HAVE.

9          WE RECOGNIZE THAT IT WOULD BE BETTER IF OUR SYSTEMS

10  READILY ALLOWED CONTACT INFORMATION FOR JUST FOLKS WITH

11  EXPEDITED REMOVAL ORDERS.  SINCE WE DON'T HAVE THAT READY

12  CAPABILITY, WE HAVE A SECOND SAFEGUARD IN PLACE.  AND THAT IS

13  WHY WE SORT OF DESCRIBE IT AS THESE FOLKS COME TO OUR

14  ATTENTION, WE LEARN ABOUT THEM BY A REMOVAL PROSPECT OR

15  SOMETHING LIKE THAT.  WE CAN FLAG THEM, BRING THEM TO MR.

16  BARMEYER'S OR APPROPRIATE CLASS COUNSEL'S ATTENTION, AND THEN

17  HAVE FOLKS MAKE THE RELEVANT ELECTION FORMS.

18         MY SENSE IS THAT PEOPLE, THEY CAN BE SOMETIMES HARD

19  TO TRACK DOWN EVEN IF YOU KNOW WHO THEY ARE, EVEN IF YOU HAVE

20  CONTACT INFORMATION.  WHICH IS WHY ONCE SOMEBODY KIND OF COMES

21  INTO CONTACT WITH US OR WE BECOME AWARE OF SOMEBODY, A GOOD

22  PROCESS IS FOR US TO BRING THEM TO COUNSEL'S ATTENTION OR GET

23  THEM THE APPROPRIATE ELECTION FORM SO THAT THEY CAN THEN GET

24  THE SETTLEMENT PROCEDURES.

25         SO IT IS KIND OF A PRACTICAL WAY TO GET THERE, BEST

FEBRUARY 21, 2019

1   USE USING AVAILABLE CAPABILITIES AND RESOURCES.  THAT IS HOW I

2   WOULD KIND OF DESCRIBE IT, YOUR HONOR, IS THAT IS THE APPROACH

3   WE ARE PROPOSING.  BECAUSE I DON'T KNOW ALL OF THE PARTICULARS

4   BUT IT IS, AS I UNDERSTAND IT, JUST A DIFFICULTY WITH THE ICE

5   SYSTEMS TO BE MORE PARTICULAR AND GRANULAR ON THIS.

6         **THE COURT:**  HOW DO THESE PEOPLE COME TO YOUR

7   ATTENTION?  ISN'T IT WHERE THEY ARE GETTING READY TO BE

8   DEPORTED, AND THEN THE GOVERNMENT KNOWS.  AND THEN YOU WOULD

9   BE TELLING PLAINTIFFS' COUNSEL THAT, HERE IS A PERSON THAT IS

10  SUBJECT TO AN EXPEDITED REMOVAL ORDER, WE WON'T REMOVE THEM

11  UNTIL YOU TALK TO THEM?

12        **MR. STEWART:**  THAT WOULD BE ONE PROSPECT, YOUR

13  HONOR.  THE OTHER PROSPECT IS, I MEAN, CLASS COUNSEL HAD GIVEN

14  NOTICE TO FOLKS AND THEY PRESUMABLY SWEPT BROADLY AND GOTTEN

15  IN TOUCH WITH APPROPRIATE FOLKS.

16        THE OTHER POSSIBILITY IS JUST IF PLAINTIFFS'

17  COUNSEL -- THIS IS A WELL-PUBLICIZED EFFORT.  PLAINTIFFS'

18  COUNSEL, WE HAVE ASKED, WE HAVE NOT HAD ANYBODY SPECIFICALLY

19  IDENTIFIED TO US AS, HEY, THIS IS THE PERSON WHO FACED THIS

20  PROBLEM THAT WE ARE IDENTIFYING, HERE IS WHAT HAPPENED.

21        WE JUST HAVE NOT SEEN THAT PERSON.  WE HAVE NOT

22  SAID, OKAY, YOU KNOW, GOVERNMENT, YOU KNOW, THIS IS THE PERSON

23  WHO RAN INTO THIS PROBLEM.

24        IT IS -- WE JUST HAVEN'T GOTTEN CONFIRMATION, SO WE

25  HAVEN'T BEEN ABLE TO SEE, OKAY, THIS IS THE PROBLEM, HERE IS

FEBRUARY 21, 2019

1  HOW WE DO BETTER WITH IT; WHICH IS WHY WE ARE TRYING TO DO OUR

2  BEST TO PROPOSE A MANAGEABLE, PRACTICAL SOLUTION TO GET IT

3  RIGHT.

4        AND IF WE FIND -- WE HAVE BEEN TALKING A GOOD AMOUNT

5  WITH MR. BARMEYER TO GET -- TO GET SOME MORE CLARITY ON THIS

6  ON JUST HOW TO PROCEED AND HOW TO -- WHAT THEY WANT US TO DO,

7  WHAT THEY DON'T WANT US TO DO, AND HOW WE KIND OF GET ALL OF

8  THIS MOVING.  AND IF WE JUST HAD MORE INFORMATION THAT COULD

9  BE USEFUL FOR THIS, BUT I DON'T THINK THE ANSWER IS -- I THINK

10  THAT IS THE BEST SOLUTION AVAILABLE HERE.

11        **THE COURT:**  WHAT EFFORT WOULD BE INVOLVED FOR THE

12  GOVERNMENT TO GO THROUGH ITS SYSTEM SO THAT IT CAN IDENTIFY

13  THE PARENTS THAT ARE SUBJECT TO AN EXPEDITED REMOVAL ORDER?

14  IT SEEMS TO ME IF THAT IS DONE THEN THIS ISSUE GOES AWAY.

15        **MS. FABIAN:**  AS I UNDERSTAND IT, YOUR HONOR, WHAT WE

16  HAVE DONE SO FAR IS TO RUN A LIST OF INDIVIDUALS WITH FINAL

17  ORDERS, AND THEN ICE WORKED CLOSELY WITH E.O.I.R. TO PARE THAT

18  DOWN TO THE BEST OF OUR ABILITY, WHICH WAS TO ELIMINATE FROM

19  THAT LIST FOLKS WHO WE -- WHO WERE FOUND ALSO IN THE E.O.I.R.

20  SYSTEMS, AND SO THAT WOULD REFLECT FOLKS WHO HAD ACTUALLY GONE

21  THROUGH REMOVAL PROCEEDINGS.

22        AND SO THE PARED DOWN LIST THAT WE HAVE, IT IS

23  APPROXIMATELY 370 NAMES.  AND IT IS WHAT WE -- FROM USING THE

24  SYSTEMS, THE BEST OF OUR ABILITY, TO IDENTIFY FOLKS WHO HAVE A

25  REMOVAL ORDER AND DON'T APPEAR TO HAVE BEEN IN THE E.O.I.R.

FEBRUARY 21, 2019

1   SYSTEMS.  SO THAT, BY PROCESS OF ELIMINATION, ARE LIKELY TO
2   HAVE A FINAL E.R. ORDER.

3          THE NEXT STEP WOULD BE LIKELY FOR ICE TO THEN SORT
4   OF TAKE EACH OF THOSE INDIVIDUALLY AND GET THE A-FILE, WHICH
5   IS A PHYSICAL FILE THAT HAS TO BE LOCATED FROM WHEREVER IT IS,
6   AND TAKEN TO WHEREVER IT NEEDS TO BE REVIEWED.  AND POSSIBLY
7   THAT COULD GIVE A LITTLE MORE GRANULARITY TO THAT.

8          THAT CAN BE DIFFICULT BECAUSE ONCE YOU TAKE AN
9   A-FILE FROM WHERE IT IS OR WHERE IT NEEDS TO BE, IT CAN'T BE
10  USED FOR WHATEVER PURPOSE.  SO IF, FOR EXAMPLE, THERE IS A
11  BENEFITS APPLICATION BEING PROCESSED WITH THAT FILE, TAKING IT
12  AWAY CAN BE PROBLEMATIC AND CAUSE A SLOWDOWN IN THAT PROCESS.

13         SO WHAT WE HAVE DONE, WE BELIEVE, IS REALLY THE BEST
14  WAY TO GET THE MOST GRANULARITY ON THAT, WHICH IS THIS 370 WHO
15  APPEAR TO BE EXPEDITED REMOVAL WITH NO APPARENT INTERACTION
16  WITH E.O.I.R.  AN INDIVIDUAL FILE REMOVE MIGHT YIELD A LITTLE
17  MORE PARE DOWN OF THAT NUMBER, BUT IT WOULD BE HARDER TO SAY
18  THE BENEFIT.

19         **THE COURT:**  AND THE 370 OR SO, THESE ARE INDIVIDUALS
20  WHO YOU HAVE ALREADY PROVIDED THE INFORMATION TO PLAINTIFFS'
21  COUNSEL, OR NOT YET?

22         **MR. STEWART:**  I DID -- I BELIEVED WE HAD.  I CHECKED
23  TODAY AND I THINK IN FACT -- A WHILE BACK IN JULY WE PROVIDED
24  A LIST OF FOLKS WITH FINAL REMOVAL ORDERS.  I MISTAKENLY TOLD
25  MR. BARMEYER THAT IT WAS THAT LIST OF 370.  I LOOKED AGAIN,

FEBRUARY 21, 2019

19

1  AND I THINK THAT WE HAVE NOT PROVIDED THAT 370 LIST YET.  THAT

2  WAS ACTUALLY DEVELOPED MORE RECENTLY, SO IT IN FACT WOULD BE

3  MORE USEFUL THAN I HAD ORIGINALLY THOUGHT AS WELL.

4          SO, NO.  BUT WE CAN DO SO.

5          **THE COURT:**  MR. BARMEYER, THAT LIST, THE 370

6  INDIVIDUALS, WHICH APPEARS TO BE OVER-INCLUSIVE BUT AT LEAST A

7  VERY GOOD STARTING POINT.  IF THAT LIST IS PROVIDED TO YOU AND

8  YOU ARE ABLE TO CONTACT THOSE INDIVIDUALS, WOULDN'T THAT

9  ADDRESS THIS PROBLEM?  BECAUSE THEN YOU CAN MEET AND CONFER

10 WITH THEM, AND IF THEY ARE SUBJECT TO AN EXPEDITED REMOVAL

11 ORDER THEN ADVISE THEM WITH RESPECT TO THE SETTLEMENT, AND

12 THEN GET THEIR DETERMINATION ON WHETHER THEY WAIVE OR NOT.

13         **MR. BARMEYER:**  IN THEORY, YOUR HONOR -- AND WE HAVE,

14 AS MS. FABIAN INDICATED, WE HAVE BEEN HAVING ONGOING

15 DISCUSSIONS ABOUT THIS.

16         I THINK IT WOULD BE VERY HELPFUL FOR US TO CONTINUE

17 THOSE DISCUSSIONS, FOR US TO GET THAT LIST AND REVIEW IT.  AND

18 THEN WE ALSO HAVE 300-SOMETHING PEOPLE WHO HAVE ALREADY GONE

19 THROUGH THE SETTLEMENT PROCESS.  AND IN TERMS OF US AND

20 PLAINTIFFS' COUNSEL THINKING ABOUT WHAT THE NEXT STEPS ARE

21 ADMINISTRATIVELY, I THINK WE WOULD WANT TO TAKE A LOOK AT THE

22 LIST SO THAT WE CAN TRY TO GET A LEVEL OF COMFORT ON, YOU

23 KNOW, WHAT IS THE VOLUME OF PEOPLE THAT WE ARE TALKING ABOUT.

24 YOU KNOW, HOW MANY INDIVIDUALS ARE OUT THERE THAT WE WOULD BE

25 TRYING TO CONTACT, AND THAT WOULD NEED TO EITHER GET RELIEF BY

FEBRUARY 21, 2019

1   DEFAULT OR THAT WE WOULD TRY TO GET ELECTIONS FROM.

2         SO, YES, I THINK IF WE GOT THAT LIST WE COULD

3   CONTINUE THE DISCUSSIONS WITH THE GOVERNMENT AND UPDATE YOUR

4   HONOR AT THE NEXT STATUS CONFERENCE.

5         **THE COURT:**  ALL RIGHT.  IT SEEMS TO ME, THEN, THAT

6   ON THIS MOTION TO ENFORCE, THE MOST PRACTICAL SOLUTION AT THIS

7   TIME IS TO RESERVE ON THE MOTION.  TO SIMPLY ORDER THAT THE

8   GOVERNMENT PROVIDE THOSE 370 NAMES WITHIN A PERIOD OF TIME,

9   PERHAPS A WEEK, I WILL GET COUNSEL'S ADVICE ON THAT.  ALLOW

10  THE PARTIES TO MEET AND CONFER, AND AT THE NEXT STATUS REPORT

11  SEE WHERE WE ARE.  IT SEEMS TO ME THIS ISSUE WILL WORK OUT

12  ONCE THOSE NAMES ARE PROVIDED.

13        **MR. STEWART:**  WE WILL PROCEED ACCORDINGLY, YOUR

14  HONOR.

15        **THE COURT:**  MR. STEWART, HOW MUCH TIME DO YOU NEED,

16  IS A WEEK ENOUGH?  IT SEEMS LIKE YOU HAVE THE NAMES ALREADY.

17        **MS. FABIAN:**  IT SHOULD BE, YOUR HONOR.  MY CONTACT

18  IS OUT THIS WEEK, BUT IF WE NEED MORE TIME I WILL LET MR.

19  BARMEYER KNOW ON MONDAY AND WE CAN DISCUSS.  THAT SHOULD BE

20  PLENTY OF TIME.

21        **THE COURT:**  FOR PURPOSES --

22        **MR. BEST:**  YOUR HONOR.

23        **THE COURT:**  YES.

24        **MR. BEST:**  THIS IS MR. BEST FOR THE MMM PLAINTIFFS.

25  WE JUST WANT TO PUT ONE MARKER DOWN REAL QUICK.


FEBRUARY 21, 2019

1          I DO THINK THAT THE LIST OF 370 NAMES IS A KEY PART

2     OF THIS AND WILL HELP TO MOVE THIS ISSUE FORWARD.  I THINK THE

3     OTHER KEY PART IS SOMETHING THAT MR. STEWART IDENTIFIED AT THE

4     BEGINNING, WHICH IS THERE HAS TO BE SOME SORT OF FAILSAFE IN

5     PLACE IN ICE'S SYSTEM TO MAKE SURE THAT THESE INDIVIDUALS ARE

6     FLAGGED AND WON'T BE REMOVED, EVEN IF WE ARE NOT ABLE TO REACH

7     THEM USING THE CONTACT INFORMATION THAT WE HAVE.

8          **THE COURT:**  YES.

9          **MR. BEST:**  SO IT SEEMS LIKE SORT OF A TWO-PRONGED

10    STRATEGY, IN MY MIND.  WE HAVE THE LIST OF NAMES, BUT ALSO

11    THAT FAILSAFE IN ICE'S SYSTEM THAT MAKES SURE THAT NOBODY IS

12    GOING TO BE REMOVED UNTIL WE AT LEAST HAVE A CHANCE TO TALK TO

13    THEM.  AND I JUST WANT TO MAKE SURE THAT THAT IS SOMETHING

14    THAT THE GOVERNMENT IS GOING TO BE IMPLEMENTING AS WELL.

15         **MR. STEWART:**  YOUR HONOR, WE WILL CONFIRM THAT ICE

16    HAS THE PROCESS IN PLACE.

17         SOMETHING I NEED TO BE A LITTLE BIT CLEAR ABOUT IS

18    THAT WE, THE GOVERNMENT, WE CANNOT GUARANTEE PERFECTION IN OUR

19    SYSTEMS.  THE BEST WE CAN DO IS GOOD FAITH EFFORT TO DO THE

20    RIGHT PROCESSES TO MAKE SURE WE GET THE RESULT THAT IS AGREED

21    UPON OR ORDERED, AS THE CASE MAY BE.

22         THIS HAS COME UP A NUMBER OF TIMES IN THE BACK AND

23    FORTH WITH MY FELLOW COUNSEL.  WE WILL LET ICE KNOW TO MAKE

24    SURE TO FIND THE APPROPRIATE FOLKS AND TO TAKE THE APPROPRIATE

25    STEPS.  I JUST CANNOT GUARANTEE PERFECTION, AND CAN ONLY SAY

FEBRUARY 21, 2019

1   IF THERE IS A FAILURE FOR WHATEVER REASON WE WILL TAKE
2   APPROPRIATE STEPS AT THAT TIME.
3          BUT I WANT TO RESPECTFULLY REJECT ANY SUGGESTION
4   THAT ANY FAILURE WOULD BE NECESSARILY A SIGN OF BAD FAITH.  WE
5   WILL DO OUR BEST.  WE WILL ISSUE THE DIRECTIVES TO OUR CLIENT
6   AGENCIES, AND WE WILL PROCEED TO WORK ACCORDINGLY, YOUR HONOR.
7          **THE COURT:**  SO WOULD THE GOVERNMENT OBJECT TO AN
8   ORDER TODAY THAT THE LIST OF APPROXIMATELY 370 INDIVIDUALS,
9   THEIR NAMES AND CONTACT INFORMATION, BE PROVIDED TO
10  PLAINTIFFS' COUNSEL WITHIN A WEEK FROM TODAY.  AND THAT
11  COUNSEL WILL NOTIFY ICE THAT THESE INDIVIDUALS ARE NOT TO BE
12  REMOVED PENDING EITHER FURTHER COURT ORDER OR THE SETTLEMENT
13  PROCESS WORKING THROUGH.  SOME LANGUAGE TO ENSURE THAT THESE
14  INDIVIDUALS ARE NOT BEING REMOVED.
15         **MR. STEWART:**  YOUR HONOR, I GUESS I DON'T REALLY
16  UNDERSTAND WHAT THE NEED FOR THE ORDER WOULD BE.  BECAUSE THE
17  PARTIES SEEM TO AGREE THAT IF SOMEBODY IS A CLASS -- IS A
18  SETTLEMENT CLASS MEMBER THEY GET TO CHOOSE WHETHER TO HAVE THE
19  PROCEDURES OR NOT, AND THEN KIND OF GO FROM THERE.  SO I THINK
20  IT IS ALREADY COVERED.
21         I BELIEVE YOUR HONOR'S DIRECTION SO FAR AND GUIDANCE
22  ABOUT, PRODUCE THIS LIST OF 370, CONTINUE TO MEET AND CONFER.
23  THE GOVERNMENT SAYS WE WILL GO BACK AND MAKE SURE THAT ICE HAS
24  THIS DIRECTIVE.
25         I THINK THAT COVERS IT, AND I THINK THE EXISTING

FEBRUARY 21, 2019

23

 1   ORDERS COVER IT.

 2          **THE COURT:**  YOUR POSITION WOULD BE UNDER THE

 3   SETTLEMENT AGREEMENT AND THE PRIOR ORDERS IT IS CLEAR THAT

 4   INDIVIDUALS SUBJECT TO EXPEDITED REMOVAL WOULD NOT BE REMOVED

 5   UNTIL THEY MAKE A DETERMINATION WHETHER TO PURSUE THE

 6   SETTLEMENT PROCEDURES OR NOT.

 7          **MR. STEWART:**  I BELIEVE THAT IS RIGHT.  FOR

 8   SETTLEMENT CLASS MEMBERS WHO FIT IN THAT CATEGORY.

 9          **THE COURT:**  YES.

10          **MR. STEWART:**  THAT'S RIGHT.  THEY WOULD NEED TO MAKE

11   AN ELECTION BEFORE THAT WOULD -- THEY WOULD BE REMOVED.

12          **THE COURT:**  ALL RIGHT.

13          **MR. BARMEYER:**  YOUR HONOR, THIS IS MR. BARMEYER

14   AGAIN.

15          THIS IS A LITTLE BIT WHY THE BRIEFS ARE LIKE SHIPS

16   PASSING IN THE NIGHT.  BECAUSE I THOUGHT I UNDERSTOOD MR.

17   STEWART CONFIRM EARLIER THAT THERE WAS A PROCESS IN PLACE TO

18   FLAG THE CLASS MEMBERS TO MAKE SURE THAT IF THEY WERE PICKED

19   UP BY ICE THAT THERE WOULD BE A FLAG TO SAY, OH, WAIT, THIS

20   PERSON NEEDS A SETTLEMENT PROCESS BEFORE THEY ARE REMOVED, AS

21   I AM SURE THERE IS FLAGS FOR A NUMBER OF REASONS.

22          IS THAT PROCESS IN PLACE, AND IF NOT WILL IT BE PUT

23   IN PLACE?

24          **MR. STEWART:**  MY RESPONSE IS THAT EVEN AFTER I

25   ALREADY EXPLAINED THAT, MR. BEST FLAGGED A CONCERN.  MY

FEBRUARY 21, 2019

```
 1   RESPONSE TO MR. BEST FLAGGING THAT CONCERN WAS FOR ME TO SAY,
 2   I WILL GO BACK AND MAKE THIS DOUBLY CLEAR -- OR WE WILL GO
 3   BACK AND MAKE THIS DOUBLY CLEAR TO OUR CLIENT TO FLAG
 4   APPROPRIATELY AND GET THIS DONE.
 5           THAT IS SIMPLY WHAT I WAS SAYING WAS THE CONCERN WAS
 6   RAISED ANEW, I WANTED TO MAKE SURE I WAS CLEAR WE WILL ADDRESS
 7   THAT.
 8           THE COURT:  I THINK WHAT I WILL DO IS ISSUE AN ORDER
 9   PROVIDING THAT THESE NAMES, THE 370 OR SO, WILL BE IDENTIFIED
10   WITH CONTACT INFORMATION, AND PRODUCED TO PLAINTIFFS' COUNSEL
11   BY A WEEK FROM TODAY.
12           I WILL ALSO ADD LANGUAGE, WHICH IS ALREADY IN PLACE,
13   BUT JUST TO MAKE CLEAR TO ICE, THAT THEY ARE NOT TO REMOVE, SO
14   THEY NEED TO FLAG AND IDENTIFY INDIVIDUALS WHO MAY BE CLASS
15   MEMBERS AND SUBJECT TO THE SETTLEMENT PROCEDURES, THAT THEY
16   ARE NOT TO BE REMOVED PENDING AN ELECTION TO WAIVE THE
17   SETTLEMENT PROCEDURES OR EXHAUSTING THE SETTLEMENT PROCEDURES.
18           I THINK THAT IS THE BEST WE CAN DO.  AND OBVIOUSLY
19   THIS ALL ASSUMES GOOD FAITH ON THE PART OF THE ICE OFFICIALS
20   AND PEOPLE ON THE GROUND IMPLEMENTING THE SETTLEMENT AGREEMENT
21   AND THE COURT'S ORDERS.
22           MS. FABIAN:  I JUST WANT TO CLARIFY ONE POINT ON THE
23   DATA THAT WILL BE PRODUCED, BECAUSE IT IS THE LIST OF NAMES OF
24   THE 370.  AND THEN SEPARATELY WE HAVE ALREADY PROVIDED CONTACT
25   KICKBACK INFORMATION FOR ALL SETTLEMENT CLASS MEMBERS THAT WE
```

FEBRUARY 21, 2019

1   HAVE.  AND I HAVE INFORMED MR. BARMEYER THAT FOR RELATED

2   REASONS WE ARE DEVELOPING ANY UPDATES TO THAT CONTACT

3   INFORMATION LIST, AND THAT WE WOULD PROVIDE THEM WITH THE

4   UPDATES TO THE EXTENT THAT THAT IS NEW INFORMATION.  THERE MAY

5   NOT BE ANY NEW INFORMATION.  THAT IS ALL THE CONTACT

6   INFORMATION WE HAVE IN OUR POSSESSION.  SO THAT IS WHAT WE

7   WILL PROVIDE.

8            **THE COURT:**  THANK YOU.

9            LET'S TURN TO THE MS. L. MOTION TO CLARIFY THE SCOPE

10  OF THE CLASS, AND HERE IT IS TO INCLUDE PARENTS WHOSE

11  SEPARATED CHILDREN WERE RELEASED FROM O.R.R. CARE AND CUSTODY

12  BEFORE JUNE 26, 2018.

13           AND, TO START, IT SEEMED THAT THE MOTION WAS FOCUSED

14  ON SIMPLY THAT, CLARIFYING THE SCOPE OF THE CLASS.  MUCH OF

15  THE OPPOSITION SEEMED TO FOCUS ON THE REUNIFICATION ISSUE, BUT

16  IT SEEMS TO ME THAT REUNIFICATION IS A REMEDY.  GIVEN THE

17  PLAINTIFFS' ALLEGATIONS AND THE COURT'S DETERMINATION ON THE

18  PRELIMINARY INJUNCTION ORDER OF A LIKELIHOOD OF SUCCESS, THE

19  REMEDY WAS REUNIFICATION.  THE ALLEGED WRONG IS THE GOVERNMENT

20  CONDUCT OF SEPARATING FAMILIES AS A MATTER OF POLICY.

21           SO AS I UNDERSTAND THE PLAINTIFFS' MOTION, THEY

22  FIRST WANT TO CLARIFY THE SCOPE OF THE CLASS BASED ON THE

23  OVERARCHING ALLEGATION THAT THE GOVERNMENT UNLAWFULLY

24  SEPARATES FAMILIES AT THE BORDER WHEN THEY DO SO WITHOUT

25  MAKING DETERMINATIONS BASED ON DANGER OR FITNESS.  THAT'S THE

FEBRUARY 21, 2019

1  ESSENCE OF IT.

2        AND THAT CLASS, AS THE PLAINTIFFS WOULD LIKE IT

3  DEFINED, IT SEEMS TO ME WOULD LOGICALLY START WHEN THIS POLICY

4  WAS INITIALLY IMPLEMENTED.  AND THE PLAINTIFFS ARGUE, AND THE

5  I.G. IN ITS REPORT, INDICATES THAT THAT MAY GO BACK TO JULY OF

6  2017.

7        SO THAT WOULD BE -- THE SCOPE OF THE CLASS WOULD BE

8  TETHERED TO WHAT THE LEGAL ISSUE IS.  AND THEN REUNIFICATION,

9  IT SEEMS TO ME, IS ONE OF THE REMEDIES AVAILABLE, ASSUMING A

10  LEGAL WRONG.

11        SO I UNDERSTAND THAT MUCH OF THE OPPOSITION WAS ON

12  THE ASPECT OF, IF THE COURT ORDERS THIS THEN WE ARE TALKING

13  ABOUT POTENTIALLY SEVERAL MORE THOUSAND CHILDREN, AND THIS IS

14  VERY, VERY BURDENSOME.  AND REUNIFICATION MAY NOT BE

15  APPROPRIATE, IN ANY EVENT, FOR MANY OF THESE CHILDREN BECAUSE

16  THEY HAVE ALREADY BEEN SPONSORED OUT.  AND AS COMMANDER WHITE

17  AND OTHERS HAVE SAID, TAKING THESE CHILDREN AWAY FROM THEIR

18  SPONSORED FAMILIES AND REUNIFYING THEM CAN BE MORE HARMFUL.

19        BUT ISN'T THAT -- THAT'S AN ISSUE THAT RELATES TO

20  THE REMEDY AND THAT IS A SECONDARY ISSUE TO THE FOCUS OF THE

21  MOTION.

22      **MR. STEWART:**  I DON'T THINK SO, YOUR HONOR, FOR A

23  NUMBER OF REASONS.

24        ONE IS THAT WHAT WE ARE TALKING ABOUT HERE IS THE

25  REQUIREMENTS -- IN PART OF THE REQUIREMENTS OF RULE 23, THE

FEBRUARY 21, 2019

27

1   INDIVIDUALIZED NATURE OF THE INQUIRIES.

2              AS WE HAVE TRIED TO EMPHASIZE IN OUR MOTION, FOLKS

3   WHO ARE ALREADY RELEASED TO SPONSORS, FOLKS WHO WERE RELEASED

4   BEFORE -- WHO ARE NO LONGER IN O.R.R. CARE PRESENT HIGHLY

5   INDIVIDUALIZED DIFFERENT CIRCUMSTANCES.

6              WE ACTUALLY DON'T REALLY KNOW A WHOLE LOT ABOUT WHAT

7   PARENTS WHO WANT REUNIFICATION IN THOSE CASES LOOK LIKE

8   BECAUSE TO OUR KNOWLEDGE THE PLAINTIFFS HAVE NEVER IDENTIFIED

9   A PARENT WHO HAS A CHILD WHO WAS SEPARATED BEFORE THE

10  PRELIMINARY INJUNCTION WAS ENTERED WHO WAS SEEKING TO REUNIFY

11  WITH THAT CHILD.  I AM JUST NOT AWARE OF SEEING THAT.  SO

12  THERE ARE THESE IDENTIFIED NATURE OF THE CLAIMS.

13             I THINK ANOTHER POINT THAT YOUR HONOR REALLY

14  EMPHASIZED IN -- AT DIFFERENT POINTS IN THE PRELIMINARY

15  INJUNCTION, CLASS CERTIFICATION ORDERS IS THAT A BIG ELEMENT

16  OF THE CASE HERE IS NOT JUST THE SEPARATION BUT THE CONTINUING

17  SEPARATION OR THE FAILURE TO REUNIFY BY PRODUCING AND BRINGING

18  THE PARENT AND CHILD BACK TOGETHER.

19             AGAIN, WE JUST DON'T HAVE THAT SITUATION WHEN WE

20  HAVE A CHILD WHO IS OUT OF -- WHO IS OUT OF O.R.R. CARE.  YOU

21  DON'T HAVE THE GOVERNMENT -- A GOVERNMENT CREATED BARRIER TO

22  REUNIFICATION IN THE SAME WAY.  YOU DON'T HAVE CUSTODY OF THE

23  SORT THAT SOMEBODY COULD REASONABLY CLAIM THAT THE GOVERNMENT

24  HAS AN AFFIRMATIVE OBLIGATION, OR JUST A PRACTICAL MEANS TO

25  STABLY AND EFFECTIVELY REUNIFY.

FEBRUARY 21, 2019

1          SO I THINK THESE GO TO INDIVIDUALIZED INQUIRIES THAT

2     GO TO THE HEART OF SOME OF THE RULE 23 PREREQUISITES

3     THEMSELVES.  IT WASN'T REALLY SOMETHING THAT -- IT WASN'T

4     SOMETHING THAT HAS BEEN PART OF THE CASE UNTIL THE ATTEMPT TO

5     MAKE IT PART OF THE CASE NOW.

6          AND I THINK IT REALLY IS A QUESTION OF LIABILITY AS

7     WELL JUST SAYING, LIKE, WHAT ELSE IS THE LEGAL VIOLATION HERE

8     IF PEOPLE HAVE BEEN REUNIFIED OR IF THEY DON'T WANT TO BE

9     REUNIFIED OR IF THERE IS NO EXISTING PROBLEM OR IF SOMEBODY IS

10    RELEASED TO A FAMILY MEMBER AND THAT -- SO I WOULD EMPHASIZE

11    JUST -- CERTAINLY NOT ALL OF THE POINTS I WANTED TO PRESENT

12    YOUR HONOR ON OTHER ISSUES, BUT IN RESPONSE TO YOUR QUESTION I

13    WOULD HIT THOSE POINTS.

14         **THE COURT:**  THIS MOTION TO CLARIFY THE SCOPE OF THE

15    CLASS, THOUGH, AS I READ IT, FOCUSES ON THE OVERARCHING

16    ALLEGATION OF THE UNLAWFUL SEPARATION.  AND IF THAT'S THE

17    FOCUS AND THAT'S THE LEGAL QUESTION AT ISSUE, SHOULDN'T THE

18    CLASS INCLUDE EVERYONE WHO HAS BEEN ALLEGEDLY UNLAWFULLY

19    SEPARATED?  WHY WOULD IT BE TETHERED TO AN ARBITRARY DATE OF

20    JUNE 26, 2018?  IN OTHER WORDS, IF PLAINTIFFS HAVE SHOWN A

21    LIKELIHOOD OF SUCCESS, WHICH THE COURT HAS FOUND THAT THEY

22    HAVE, ISN'T IT IMPORTANT TO THE PROCESS TO HAVE AN ACCOUNTING?

23         THAT'S COMPLETELY SEPARATE FROM A REMEDY OF

24    REUNIFICATION, BUT SIMPLY TO HAVE AN ACCOUNTING OF WHAT

25    HAPPENED, TO WHOM, HOW MANY ARE INVOLVED, AND WHERE ARE THEY?


                        FEBRUARY 21, 2019

1          **MR. STEWART:**  AGAIN, I DON'T THINK SO, YOUR HONOR.

2      IT IS JUST NOT PART OF THIS LAWSUIT.

3          I WOULD EMPHASIZE THAT IT IS A DIFFERENT WRONG THAT

4      WOULD BE -- OR A DIFFERENT ALLEGED WRONG FOR FOLKS WHO HAVE

5      ALREADY BEEN RELEASED TO SPONSORS OR ARE CAPABLE OF JUST

6      INFORMAL REUNIFICATION OR MAY HAVE OTHER REMEDIES.

7          THIS CASE HAS REALLY BEEN ABOUT -- AND I THINK THE

8      ORDERS ARE PRETTY CLEAR ABOUT WHAT THE CASE IS ABOUT, AND THAT

9      IS REUNIFYING CASES WHERE O.R.R. HAS CUSTODY AND CAN ELIMINATE

10     THE GOVERNMENT IMPEDIMENT.

11         TO THE EXTENT THAT THE PLAINTIFFS WOULD WANT MORE

12     INFORMATION ABOUT THESE OTHER CLASSES OR SOME SET OF

13     PLAINTIFFS WOULD WANT THAT, IT SEEMS TO ME THAT THE

14     APPROPRIATE APPROACH TO THAT WOULD BE TO FIND -- FOR LAWYERS

15     TO FIND THOSE ACTUAL PLAINTIFFS, FILE A SUIT MAKING THE

16     RELEVANT ALLEGATIONS, AND SAYING, THIS IS WHAT WE PROPOSE AS A

17     REMEDY, THIS IS THE WRONG.

18         I THINK IT IS JUST DIFFERENT IN KIND.  AND I DO

19     THINK THERE ARE REAL CONCERNS THAT WE JUST DON'T HAVE THAT SET

20     OF PLAINTIFFS, THAT SET OF ALLEGATIONS ABOUT THE NEED FOR

21     INFORMATION.  THIS IS SOMETHING THAT AROSE ONLY VERY, VERY

22     RECENTLY.

23         AND THAT WOULD BE SOME OF THE POINTS I WOULD WANT TO

24     EMPHASIZE ON THAT, YOUR HONOR.

25          **THE COURT:**  WHEN THE PRELIMINARY INJUNCTION ORDER

FEBRUARY 21, 2019

1    WAS ISSUED IN JUNE OF 2018, AT THAT TIME THERE WAS INFORMATION
2    THAT WAS NOT KNOWN TO THE COURT, TO GOVERNMENT COUNSEL, AND TO
3    PLAINTIFFS' COUNSEL, IT WOULD APPEAR.  MUCH MORE IS KNOWN NOW
4    THROUGH THE BENEFIT OF THE I.G. INVESTIGATION AND
5    INVESTIGATIVE REPORTING.  A LOT HAS COME TO LIGHT THAT IS NO
6    LONGER DEBATED AND IS NOT IN QUESTION.
7            SO, FOR EXAMPLE, ONE OF THE POINTS THAT WAS ARGUED,
8    IN GOOD FAITH, BY GOVERNMENT COUNSEL, MS. FABIAN SPECIFICALLY,
9    IT WAS ON MAY 4, 2018, PRIOR TO THE ATTORNEY GENERAL
10   ANNOUNCING FORMALLY THE ZERO TOLERANCE POLICY AND PRIOR TO THE
11   COURT'S ISSUANCE OF THE MOTION ON THE ORDER ON THE MOTION TO
12   DISMISS, WHICH OCCURRED ON JUNE 6.  THE ARGUMENT ON THE MOTION
13   TO DISMISS IN OPPOSITION THE GOVERNMENT SAID TO THE COURT'S
14   QUESTION, WHICH WAS:  IS THERE A POLICY OR IS THERE NOT SUCH A
15   POLICY OR PRACTICE WITH RESPECT TO FAMILY SEPARATION?
16           AND THE ANSWER WAS:  THERE IS NO -- THERE IS NOT
17   SUCH A POLICY.  WHETHER THERE IS A PRACTICE OF SEPARATION,
18   THERE IS NOT.
19           THAT WAS THE GOVERNMENT'S RESPONSE, AND I ACCEPT
20   THAT THAT RESPONSE WAS MADE IN GOOD FAITH.  BUT THEREAFTER
21   MUCH CAME TO LIGHT, INCLUDING THE ATTORNEY GENERAL'S FORMAL
22   ANNOUNCEMENT OF A ZERO TOLERANCE POLICY WHICH OCCURRED A FEW
23   DAYS LATER, I THINK ON MAY 7.
24           ALSO WHAT APPEARS TO BE UNKNOWN BY EVERYONE HERE,
25   INCLUDING PLAINTIFFS' COUNSEL, WAS THAT O.R.R. HAD A


                        FEBRUARY 21, 2019

1    TREMENDOUS SPIKE IN THE NUMBER OF UNACCOMPANIED CHILDREN BEING

2    DELIVERED TO THEM FAR BEFORE THE LAWSUIT WAS FILED, AND THAT

3    O.R.R. WAS SPONSORING OUT THESE CHILDREN UNDER THE TVPRA.

4         AND SO WHEN THE COURT ASKED PLAINTIFFS' COUNSEL, MR.

5    GELERNT, SPECIFICALLY TO PUT IN WRITING WHAT IT IS THE

6    PLAINTIFFS WANT, WHAT RELIEF THEY WANT, THEY APPROPRIATELY

7    IDENTIFIED ALL CHILDREN WHO WERE IN O.R.R. CUSTODY BECAUSE I

8    THINK EVERYONE WAS ASSUMING AT THAT TIME THAT ALL SEPARATED

9    CHILDREN WERE IN O.R.R. CUSTODY.

10        WHAT WE DID NOT KNOW IS THAT APPARENTLY A VERY

11   SIGNIFICANT NUMBER OF CHILDREN WERE SEPARATED FROM THEIR

12   PARENTS, PUT IN O.R.R. CUSTODY, AND THEN DELIVERED OUT,

13   SPONSORED OUT, PRIOR TO JUNE 26.

14        SO VIEWED IN THAT LIGHT -- AND I DON'T THINK THERE

15   IS ANY DISPUTE ABOUT THAT, THOSE FACTS.  BUT VIEWED IN THAT

16   LIGHT THE JUNE 26 DATE BECOMES VERY ARBITRARY.  AND HOW WOULD

17   IT MAKE SENSE TO TETHER A CLASS DEFINITION TO THAT DATE IN

18   LIGHT OF THESE FACTS?

19        **MR. STEWART:**  YOUR HONOR, I THINK THAT THAT WOULD

20   HAVE BEEN KNOWN TO THE PLAINTIFFS AND THE PARTIES THAT THE

21   TVPRA PROCESS WOULD HAVE BEEN THE PROCESS THAT WAS USED IN

22   PLACE.  THAT WAS, I THINK, PART OF WHAT YOUR PRELIMINARY

23   INJUNCTION AND EFFORTS TO IMPLEMENT THAT PRELIMINARY

24   INJUNCTION WERE AIMED AT ADDRESSING, WHICH WAS THE CONCERN

25   THAT THE TVPRA PROCESS WAS NOT THE APT ONE TO USE WHEN A CHILD

FEBRUARY 21, 2019

1    IS SEPARATED FROM A POTENTIAL PARENT AT THE BORDER.

2            SO I THINK THAT WAS UNDERSTOOD, OR REASONABLY

3    INFERABLE.  I THINK BECAUSE ORIGINALLY THE GOVERNMENT WAS --

4    EMPHASIZED A LOT, LOOK, YOU KNOW, WE CAN'T REALLY -- IT WOULD

5    BE VERY HARD TO COMPLY WITH THE COURT'S PRELIMINARY INJUNCTION

6    DEADLINES BY USING THE TVPRA.

7            AND THE COURT SAID, LOOK, THE TVPRA ISN'T REALLY THE

8    ONE THAT APPLIES HERE, IT IS A MORE STREAMLINED PROCESS

9    ADAPTED TO THE CIRCUMSTANCES WE HAVE.

10           SO I THINK THAT'S -- I WOULD SAY THAT THERE

11   REALLY -- IT WASN'T THIS KIND OF UNKNOWN OR NECESSARILY

12   SURPRISING THING.  I MEAN, I BELIEVE SOME OF THE COURT'S

13   ORDERS AT THE TIME JUST RECOGNIZED THAT, LOOK, YOU KNOW,

14   SEPARATION IS NORMALLY REQUIRED WHEN THERE IS A CRIMINAL

15   PROSECUTION OF A PARENT.  THAT SORT OF THING HAS BEEN GOING ON

16   FOR SOME TIME, SO IT WOULD BE EXPECTED THAT THERE WERE SOME

17   SEPARATIONS.

18           AGAIN OUR INSTINCT WAS TO -- THE INSTINCT WAS TO USE

19   THE TVPRA PROCESS AND THAT WAS -- WE CHANGED COURSE TO COMPLY

20   WITH THE PRELIMINARY INJUNCTION ORDER AND TO MOVE QUICKLY.

21           BUT THOSE ARE -- I WOULD SAY THAT IT WAS NOT

22   ARBITRARY BUT I THINK RIGHTLY UNDERSTOOD THAT THE -- OR

23   RIGHTLY ACCOUNTED FOR THE FACT THAT THE FOCUS WAS GOING TO BE

24   ON CHILDREN IN O.R.R. CUSTODY BECAUSE THOSE WERE THE ONES WHO

25   HAD A BARRIER OR A DIFFICULTY TO REUNIFICATION, YOUR HONOR.


                    FEBRUARY 21, 2019

1          **THE COURT:**  ALL RIGHT.

2          MR. GELERNT, AS I UNDERSTAND THE REQUEST IT IS TO

3    CLARIFY THE SCOPE OF THE CLASS, AS WE HAVE BEEN DISCUSSING, TO

4    ENLARGE IT TO INCLUDE ALL INDIVIDUALS, ALL PARENTS WHO WERE

5    SEPARATED FROM THEIR CHILDREN UNDER THIS POLICY, WHICH NOW

6    APPEARS TO DATE BACK TO EL PASO, TEXAS IN JULY OF 2017, TO

7    START THERE.

8          **MR. GELERNT:**  THAT'S CORRECT, YOUR HONOR.

9          I AM NOT SURE I HAVE THAT MUCH TO ADD TO WHAT YOU

10   SAID.  I THINK YOU HAVE CORRECTLY SUMMARIZED OUR POSITION IS

11   THAT WE WOULD ASK FOR AN ORDER TODAY THAT THEY ARE PART OF THE

12   CLASS.  THEN I THINK WHAT WE WOULD DO, CONSISTENT WITH HOW YOU

13   HAVE RUN THE CASE, IS WE WOULD SIT DOWN WITH THE GOVERNMENT

14   AND SAY, WELL, WHAT'S THE MOST EFFICIENT WAY TO FIND THESE

15   INDIVIDUALS.

16         AND MANY OF THEM MAY SAY, WE DON'T WANT TO BE

17   REUNIFIED.  BUT, AS YOUR HONOR, KNOWS, THAT WAS TRUE OF THE

18   400 PARENTS WHO WERE DEPORTED WITHOUT THEIR KIDS.  SOME

19   POTENTIALLY THROUGH SELF-HELP COULD HAVE BEEN REUNIFIED, MANY

20   OTHERS WILL NOT.

21         BUT THAT IS EXACTLY RIGHT, YOUR HONOR.  WE BELIEVE

22   THAT THE REMEDY THEN CAN BE DISCUSSED.  WE COULD COME BACK TO

23   YOUR HONOR AND SAY, WE ARE HAVING SOME TROUBLES, I THINK.

24         BUT THE KEY IS, THESE ARE PART OF THE CLASS.  AND I

25   THINK THAT IS WHAT COMMANDER WHITE HAS ESSENTIALLY SAID IN HIS

FEBRUARY 21, 2019

34

1   TESTIMONY BEFORE CONGRESS RECENTLY.  THE ONLY REASON THE

2   2700-PLUS WERE REUNIFIED INITIALLY WAS BECAUSE THIS COURT

3   CREATED A PATHWAY AND REQUIRED THE AGENCIES TO WORK TOGETHER.

4          AND SO THAT IS WHAT WE WOULD SAY, IS WE WOULD GO

5   BACK THEN TO THE GOVERNMENT AND TALK ABOUT REMEDIES.

6          AND, AS YOUR HONOR KNOWS, WE CREATED A STEERING

7   COMMITTEE FOR THE 400 DEPORTED PARENTS.  WE ARE PREPARED TO

8   CREATE ANOTHER STEERING COMMITTEE AND TAKE ON AN ENORMOUS

9   BURDEN.  BUT THERE IS NO WAY, WITHOUT THE INFORMATION, AT

10  LEAST SOME INFORMATION FROM THE GOVERNMENT, WE CAN BEGIN TO DO

11  THAT.

12         THE ONLY OTHER POINT I WOULD JUST EMPHASIZE IS THAT

13  JUST BECAUSE THE KIDS ARE OUT OF O.R.R. CUSTODY, I THINK THE

14  GOVERNMENT IS IMPLYING THAT, WELL, NOW THEY CAN ALL JUST

15  REUNIFY ON THEIR OWN.

16         I THINK, AS THE COURT KNOWS WITH THE 400 PARENTS

17  THAT WERE DEPORTED, THERE ARE ENORMOUS BURDENS AND LOGISTICAL

18  PROBLEMS AND COST ISSUES IN TRYING TO REUNIFY.  I MEAN, THE

19  THOUGHT THAT SOME OF THESE KIDS WHO MAY BE WITH A DISTANT

20  UNCLE OR NON-FAMILY MEMBER ARE GOING TO HAVE THE MONEY, THE

21  WHEREWITHAL TO CONTACT SOMEONE.  TO CONTACT THEIR PARENT IN AN

22  INDIGENOUS REGION, CREATE -- FIND TRAVEL DOCUMENTS, PAY FOR A

23  PLANE.

24         NOT JUST ON THIS SIDE BUT THEN, FOR EXAMPLE, IN

25  GUATEMALA, GETTING THE INDIGENOUS PARENTS TO GUATEMALA CITY

FEBRUARY 21, 2019

1   WAS AN ENORMOUS UNDERTAKING BY THE NGO'S.  SO WITHOUT THE
2   NGO'S HELPING WE DON'T SEE ANY WAY THAT ALL OF THESE PARENTS
3   CAN REUNIFY.

4           NOW, WE KNOW WHERE A FEW OF THE PARENTS ARE, AND SO
5   THAT -- SO IT IS NOT TRUE THAT THE BURDEN IS ALWAYS GOING TO
6   BE IN FINDING THE PARENTS, BUT IN CREATING THE
7   TRANSPORTATIONAL LOGISTICS.

8           BUT I THINK AS YOUR HONOR -- I DON'T WANT TO DWELL
9   ON THAT BECAUSE I THINK, AS YOUR HONOR HAS CORRECTLY POINTED
10  OUT, WE ARE TALKING ABOUT LIABILITY HERE, PART OF THE CLASS.
11  THE VIOLATION WAS THE EXACT SAME.  EXACTLY WHAT REMEDY WILL
12  HAVE TO BE IN PLACE IS SOMETHING WE CAN TALK ABOUT.  AS YOUR
13  HONOR HAS DONE THROUGHOUT THE CASE, THERE HAVE BEEN DIFFERENT
14  REMEDIES, DIFFERENT DEADLINES FOR DIFFERENT CATEGORIES OF
15  KIDS.

16          SO I THINK THAT IS THE NEXT STEP.  BUT AS FOR TODAY,
17  WE ARE SIMPLY ASKING FOR THAT ORDER, YOUR HONOR.

18          **THE COURT:**  AM I CORRECT IN ASSUMING THAT THE RELIEF
19  REQUESTED FOR THE PRELIMINARY INJUNCTION ORDER WAS BASED ON
20  PLAINTIFFS' UNDERSTANDING THAT ALL SEPARATED CHILDREN WERE IN
21  O.R.R. CUSTODY?

22          **MR. GELERNT:**  YOUR HONOR, TO BE HONEST, WHEN WE
23  FILED THE LAWSUIT WE HAD VERY LITTLE UNDERSTANDING OF ANYTHING
24  THAT WAS GOING ON, MUCH LESS THE SCOPE.

25          I WOULD SAY, MAYBE I AM NAIVE, BUT I WAS SHOCKED TO

FEBRUARY 21, 2019

1    HEAR THAT THERE WERE THOUSANDS WHO WERE SEPARATED AND RELEASED

2    FROM O.R.R. BEFORE YOUR HONOR ORDERED.  AND THAT THE

3    GOVERNMENT HAD NEVER GONE PUBLIC WITH THAT AND AT LEAST SAID,

4    WE DON'T BELIEVE WE HAVE A LEGAL OBLIGATION BUT THE PUBLIC

5    SHOULD KNOW.

6          AT THE TIME WE DID NOT KNOW EXACTLY HOW THE

7    GOVERNMENT WAS PROCESSING THE O.R.R. CASES.  WE KNEW MAYBE

8    THAT THEY WERE RELEASING SOME FROM SOME OF THE NAMED

9    PLAINTIFFS, BUT IT WASN'T CLEAR EXACTLY HOW.  IT CERTAINLY

10   WASN'T CLEAR THE SCOPE OF WHAT WE WERE TALKING ABOUT.

11          SO WHEN WE INITIALLY FILED THIS MOTION TO CLARIFY

12   WE, AS YOUR HONOR KNOWS, IDENTIFIED EIGHT TO NINE CASES THAT

13   HAD BEEN BROUGHT TO OUR ATTENTION BY PEOPLE ON THE GROUND, BUT

14   WE HAD -- I MEAN, WE HAD NO IDEA THAT THERE MAY HAVE BEEN

15   THOUSANDS WHO WERE PUSHED OUT OF O.R.R. BEFORE YOUR HONOR

16   RULED.  AND THAT THE GOVERNMENT WAS GOING SAY ALL OF THESE

17   THOUSANDS OF KIDS MAY BE PERMANENTLY ORPHANED NOW.

18          **THE COURT:**  SO THE INITIAL REQUEST, THEN, IF THIS

19   CLASS IS ENLARGED AS YOU REQUESTED, WOULD BE FOR AN

20   ACCOUNTING.

21          **MR. GELERNT:**  I THINK AN ACCOUNTING AND

22   REUNIFICATION, YOUR HONOR.

23          WHAT WE INTEND TO DO IS, WITH THE GOVERNMENT'S

24   INFORMATION, CONTACT ALL THESE FAMILIES.  AND WE ARE GOING TO

25   PUT TOGETHER ANOTHER STEERING COMMITTEE, AND THERE, MAY NEED

FEBRUARY 21, 2019

1   TO BE THREE TIMES THE SIZE.  BUT WE CANNOT GO BACK INTO THESE

2   COMMUNITIES AND TELL THE PEOPLE WE ARE NOT GOING TO PUT THE

3   EFFORT IN TO LOOK FOR THE FAMILIES.

4          AND SOME OF THE FAMILIES WE HOPE HAVE MANAGED TO

5   REUNIFY ON THEIR OWN.  SOME OF THE FAMILIES MAY CHOOSE TO

6   LEAVE THEIR CHILD IN THE U.S., JUST AS PRIOR FAMILIES HAVE,

7   BECAUSE OF THE DANGER.  BUT I SUSPECT THERE ARE PARENTS WHO

8   WANT TO GET THEIR CHILDREN BACK AND HAVE NOT BEEN ABLE TO.

9   AND I THINK AT THAT POINT WE WILL HAVE TO TALK ABOUT

10  REUNIFICATION.

11         AND THE ONE POINT I WOULD JUST CLARIFY ABOUT WHAT

12  COMMANDER WHITE SAID, BECAUSE I THINK YOUR HONOR IS RIGHT HIS

13  AFFIDAVIT SUGGESTED THAT THERE COULD BE TURMOIL BRINGING THE

14  KID BACK.  BUT IN THE HOUSE TESTIMONY HE GAVE ON FEBRUARY 7TH

15  HE CLARIFIED WHAT HE MEANT BY THAT, AND I THINK IT IS VERY

16  INSTRUCTIVE.  HE SAID IT WOULD BE HARMFUL TO THE CHILD IF ICE

17  SHOWS UP AT THE SPONSOR'S HOUSE, TAKES THE CHILD AND BRINGS

18  THEM BACK TO O.R.R. CUSTODY.

19         BUT THERE IS NO REASON THAT NEEDS TO BE DONE.  NO

20  ONE IS TALKING ABOUT THAT.  WE ARE TALKING ABOUT CALLING THE

21  PARENT, AS WE HAVE BEEN DOING FOR THE 400 DEPORTED.

22  CONTACTING THE CHILD'S LAWYER, SOCIAL WORKER, OR THE SPONSOR,

23  ASKING WHAT THEY WOULD LIKE TO DO, WHAT IS IN THEIR BEST

24  INTEREST, AND TRYING TO FIND A WAY TO REUNIFY THEM.  BUT UNDER

25  NO CIRCUMSTANCE WOULD ICE NEED TO SHOW UP AT THE SPONSORS.


FEBRUARY 21, 2019

```
 1              I THINK THAT WAS ALL COMMANDER WHITE WAS SAYING.
 2    BECAUSE THIS IS NOT A SITUATION WHERE, AS YOUR HONOR KNOWS, A
 3    PARENT GAVE UP THEIR CHILD THREE DECADES AGO FOR ADOPTION AND
 4    NOW IS JUST SHOWING UP.
 5              THESE ARE PARENTS WHO HAD THEIR CHILDREN FORCIBLY
 6    TAKEN IN THE LAST YEAR.  I DON'T THINK THAT WE CAN THINK THAT
 7    THERE IS FOUR-YEAR-OLD CHILDREN WHO WON'T WANT TO SEE THEIR
 8    PARENTS NOW.
 9              THE COURT:  AND IS YOUR REQUEST TO BROADEN THE CLASS
10    DEFINITION TO GO BACK TO JULY OF 2017?
11              MR. GELERNT:  I THINK THAT IS RIGHT, YOUR HONOR.
12              I KNOW THAT THE GOVERNMENT HAS SAID, WELL, THERE IS
13    ASCERTAINABILITY PROBLEMS.  I THINK JULY OF 2017 SEEMS TO BE
14    NOW.  I MEAN, AS YOUR HONOR POINTED OUT, INFORMATION JUST
15    KEEPS COMING OUT THROUGH INVESTIGATIVE REPORTING AND INTERNAL
16    REPORTS BY THE GOVERNMENT.  THAT SEEMS TO BE WHERE EVERYONE
17    IS PINPOINTING IT, SO THAT WOULD BE FINE, YOUR HONOR.
18              I MEAN, I WOULD SAY THAT I WOULD BE LOATH TO SAY I
19    WON'T COME BACK TO YOU IF INTERNAL REPORTS COME OUT THAT
20    SOMETHING HAPPENED BEFORE THEN, AND IT WAS AN ENORMOUS THING
21    AND GOVERNMENT HAS BEEN KEEPING THAT A SECRET.  BUT RIGHT NOW
22    THAT WOULD SEEM TO BE THE RELEVANT POINT.
23              THE COURT:  AND THEN THE INITIAL STEP HAS TO BE AN
24    ACCOUNTING.  HHS HAS TO GO THROUGH THIS VERY LABORIOUS PROCESS
25    WITH CLOSE TO 47,000 CHILDREN.  AND I THINK, IF I AM READING
```

FEBRUARY 21, 2019

1    THESE DECLARATIONS CORRECTLY, DO IT MANUALLY.

2            **MR. GELERNT:**  YOUR HONOR, LET ME MAKE A COUPLE OF

3    POINTS ABOUT THAT BECAUSE I THINK YOU ARE READING THE

4    DECLARATION RIGHT.

5            BUT ONE THING I THINK THAT THE DECLARATION MAY NOT

6    HAVE BEEN AS EXPLICIT ABOUT BUT CAME OUT AT COMMANDER WHITE'S

7    TESTIMONY BEFORE THE HOUSE IS THE BURDEN IS SIGNIFICANTLY

8    LESSENED IF THIS COURT SAYS ALL THE AGENCIES SHOULD COMPLY.

9    BECAUSE WHAT COMMANDER WHITE IS SAYING IS WE ONLY HAVE A PIECE

10   OF THE INFORMATION, WE ARE NOT TOLD WHICH PARENTS ARE

11   SEPARATED.

12           AND THE AFFIDAVIT WE SUBMITTED WITH OUR REPLY BRIEF

13   FROM PEOPLE WHO FORMERLY WORKED IN THE GOVERNMENT HAVE SAID

14   THAT DHS IS SITTING ON INFORMATION THAT WOULD SIGNIFICANTLY

15   LESSEN THE BURDEN OF HHS.

16           I THINK THAT WAS COMMANDER WHITE'S POINT IS THAT

17   ULTIMATELY HE CAN CONTROL WHAT HHS DOES TO AN EXTENT, BUT HE

18   CAN'T ORDER THE OTHER AGENCIES.  BUT THIS COURT CREATED A

19   PATHWAY.  SO I THINK WHEN COMMANDER WHITE PUT HIS AFFIDAVIT IN

20   HE WAS TALKING ABOUT THE BURDEN STRICTLY ON HHS.  I THINK

21   THERE MAY BE WAYS TO SIGNIFICANTLY LESSEN THAT BURDEN IF THE

22   OTHER AGENCIES WORK.

23           THE OTHER THING I WOULD JUST SAY, WHICH IS NOT

24   COMMANDER WHITE'S POINT, OF COURSE, BUT I THINK COMES THROUGH

25   A LITTLE BIT IN THE GOVERNMENT'S BRIEFS, IS IT IS TOO BIG OF

FEBRUARY 21, 2019

1    BURDEN.

2            I THINK I WOULD HAVE TWO RESPONSES TO THAT.  I MEAN,

3    IN ADDITION TO IF DHS HELPS IT IS GOING TO LESSEN THE BURDEN.

4            ONE IS, I THINK IT IS HARD TO REWARD THE GOVERNMENT

5    FOR NOT HAVING A TRACKING SYSTEM.  AND THAT HAS BEEN ONE OF

6    YOUR HONOR'S BIGGEST POINTS IN THIS CASE GOING FORWARD IS THAT

7    THE TRACKING SYSTEM NEEDS TO BE DEVELOPED.  AND SO FOR THAT

8    REASON -- AND THE OTHER REASON I THINK IS JUST, WE ARE

9    PREPARED, NO MATTER HOW BIG THE BURDEN IS, TO TAKE THAT ON.

10           WE JUST CANNOT GO BACK TO THESE COMMUNITIES AND SAY

11   WE WERE UNWILLING TO TAKE THE BURDEN OF CALLING THESE 2,000

12   FAMILIES OR HOWEVER MANY IT TURNS OUT TO BE.  SO I THINK

13   WHATEVER THE BURDEN, I THINK WHEN WE ARE TALKING ABOUT LITTLE

14   CHILDREN POTENTIALLY BEING PERMANENTLY ORPHANED, I THINK WE

15   HAVE TO UNDERTAKE THAT BURDEN.

16           **THE COURT:**  THE AGENCIES INVOLVED, IF THIS MOTION IS

17   GRANTED AND AN ACCOUNTING IS ORDERED AS A FIRST STEP, WOULD BE

18   CBP, ICE, AND HHS, O.R.R.?

19           **MR. GELERNT:**  THAT IS MY UNDERSTANDING.  I THINK

20   THAT IS RIGHT, YOUR HONOR, AND OUR AFFIDAVIT SPELLS IT OUT,

21   THE FORM THAT GOVERNMENT WORKS.  I THINK THOSE ARE THE THREE

22   AGENCIES THAT WOULD HAVE THE INFORMATION.

23           I DON'T BELIEVE -- IT IS POSSIBLE SOME OTHER

24   AGENCIES HAVE SOME INFORMATION, BUT I THINK THOSE ARE THE

25   THREE AGENCIES THAT COMMANDER WHITE BELIEVES NEED TO WORK

FEBRUARY 21, 2019

1   TOGETHER.

2        **THE COURT:**  AND DO YOU SUGGEST, FOR EXAMPLE, THAT

3   SOMETHING SIMILAR BE SET UP WHERE COMMANDER WHITE RUNS THE

4   SHOW, OR WHOEVER THE GOVERNMENT IDENTIFIES.  AND THAT HE OR

5   SHE COORDINATES AMONG THE THREE AGENCIES, PUTS IN PLACE A

6   PROTOCOL FOR GETTING TO THE BOTTOM OF THIS AND PROVIDING HARD

7   NUMBERS TO THE PARTIES AND THE COURT AS TO THE NUMBER OF

8   PARENTS AND CHILDREN WHO WERE SEPARATED?

9        **MR. GELERNT:**  SO, WITH THE CAVEAT THAT I NEVER WANT

10  TO PUT A BURDEN ON SOMEONE ELSE.  COMMANDER WHITE IS NOT HERE

11  TO DEFEND HIMSELF.  I WOULD SAY THAT WE HAVE A LOT OF TRUST IN

12  COMMANDER WHITE.  THAT PROCESS WORKED WELL.  ADVOCATES WHO

13  DEAL IN THESE ISSUES HAVE LOTS OF TRUST IN COMMANDER WHITE.

14  SO I DO THINK HE WOULD BE AN IDEAL PERSON BUT, OBVIOUSLY, YOU

15  KNOW, WE CANNOT DICTATE WHO SPECIFICALLY IT IS.

16        BUT I DO THINK WHEN YOUR HONOR SET UP THAT SYSTEM IN

17  THE BEGINNING WHERE THERE WAS A POINT PERSON, THINGS MOVED

18  MUCH SMOOTHER.  WITHOUT A POINT PERSON IT CAN BE DONE, BUT I

19  DO THINK IT WORKS MORE SMOOTHLY WITH THAT.

20        YOU KNOW, I KNOW COMMANDER WHITE HAD SAID AT HIS

21  HOUSE, IF THE COURT ISSUES AN ORDER AND CREATES A PATHWAY

22  AGAIN FOR US HE IS MORE THAN HAPPY TO MAKE IT WORK.

23        **THE COURT:**  SO, MR. STEWART, IF THIS MOTION IS

24  GRANTED, WOULDN'T IT MAKE SENSE TO DO THE SAME THING.  AND

25  THAT IS TO START WITH SOMEBODY LIKE COMMANDER WHITE WHO WOULD

FEBRUARY 21, 2019

1   PROBABLY COME BACK HERE AND TESTIFY OR STATE TO THE COURT, AND

2   TO THE PARTIES, WHAT HE WOULD LIKE TO DO TO ACCOMPLISH THIS;

3   IN OTHER WORDS, IDENTIFY A PLAN AND PROVIDE A TIME FRAME IN

4   WHICH THIS COULD BE ACCOMPLISHED.

5           AND WHAT I AM TALKING ABOUT, AS FAR AS THE END

6   RESULT, WOULD BE SIMPLY THE ACCOUNTING.  WHAT THE NUMBER IS,

7   IDENTIFYING THESE PARENTS AND CHILDREN, AND THEN PURSUING ANY

8   RELIEF, WHATEVER THAT MIGHT BE.

9           **MR. STEWART:**  YOUR HONOR, IT IS A LITTLE HARD FOR ME

10  TO ANSWER THAT QUESTION BECAUSE I RESPECTFULLY SUBMIT THAT

11  GRANTING THIS MOTION DRAMATICALLY CHANGES THE COMPLEXION OF

12  THIS CASE, FROM THE GOVERNMENT'S PERSPECTIVE.

13          AND I UNDERSTAND THE -- THE DYNAMICS AND THE --

14  BEHIND IT AND THE THEMES THAT MR. GELERNT HAS PRESSED.  BUT I

15  HAVE TO EMPHASIZE, YOUR HONOR, THAT THE GOVERNMENT, FACED WITH

16  A CHALLENGING PRELIMINARY INJUNCTION THAT WE OPPOSED

17  VIGOROUSLY, MADE THE DECISION TO MAKE IT WORK; TO WORK WITH

18  THE COURT, TO WORK WITH THE PARTIES, TO MARSHAL EXTRAORDINARY

19  RESOURCES TO ADDRESS THIS DIFFICULT TASK OF REUNIFICATION.

20          WE WERE VERY CLEAR WITH OUR APPROACH.  WE WENT THE

21  EXTRA MILE, WE WENT ABOVE AND BEYOND.  WE NEGOTIATED RELIEF

22  THAT WE -- GIVEN RELIEF TO FOLKS WHO AREN'T ENTITLED TO SQUARE

23  RELIEF.

24          AND IT IS A REAL CHANGE OF COURSE, RESPECTFULLY,

25  YOUR HONOR, TO DO ALL THAT, TO PUT ALL THAT COMMITMENT IN, TO

FEBRUARY 21, 2019

1   HOLD A POTENTIAL APPEAL IN ABEYANCE, TO GRANT ALL SORTS OF

2   KIND OF THINGS THAT WE NORMALLY WOULDN'T GRANT INSTEAD OF

3   FIGHTING TOOTH AND NAIL, MAKING IT DIFFICULT.  GOING UP AND

4   DOWN THE -- YOU KNOW, ALL OF THOSE KIND OF OPTIONS, YOUR

5   HONOR.  YOU KNOW, I AM JUST NOT SURE THAT WE CAN KEEP GOING

6   THAT WAY.

7         IT IS JUST -- IT IS NOT REALLY A BURDEN ISSUE.  THE

8   BURDEN WILL BE VERY SIGNIFICANT IF THIS IS THE PATH THE COURT

9   GOES DOWN.  WE DIDN'T MEAN TO SUGGEST IN ANY WAY THAT DON'T DO

10  IT JUST BECAUSE IT IS HARD.  I MEAN, WE WOULDN'T HAVE BEEN

11  ABLE TO DO ALL THAT WE HAVE DONE IF THAT WERE OUR APPROACH,

12  BUT IT WILL BE VERY HARD.

13        WHAT WE ARE SUBMITTING, YOUR HONOR, IS THAT THERE

14  ARE LIMITS TO THE APPROPRIATE RELIEF THAT CAN BE GRANTED IN A

15  PARTICULAR CASE.  THE COURSE OF DEALING HERE -- AND THIS

16  COURT'S VERY CLEAR CLASS ORDER AND CLASS DEFINITION SHOWED

17  THAT SCOPE.

18        WE THINK THAT THE COURT HAS REALLY EMPHASIZED -- YOU

19  SQUARELY EMPHASIZED, IN ORDERS AND OTHERWISE, ORDERLY

20  GOVERNANCE, APPROACHES THAT FOLLOW THE LAW.  WE HAVE TRIED TO

21  DO THAT, WE HAVE TRIED TO BE A GOOD PARTNER IN ALL OF THAT AND

22  HAVE DONE WELL.  AND IT IS JUST -- IT IS VERY UNFORTUNATE,

23  YOUR HONOR, TO HAVE DONE ALL THAT, AND TO HAVE TAKEN THE PATHS

24  WE HAVE DONE AND TO HAVE FOLKS INVOLVED AT VERY HIGH LEVELS DO

25  ALL OF THOSE THINGS TO MAKE IT WORK; BASICALLY ON THE EVE OF

FEBRUARY 21, 2019

1   SUBSTANTIAL COMPLIANCE WITH WHAT WE HAVE ALWAYS IDENTIFIED AS

2   THE TASK WE ARE DOING, TO BASICALLY HAVE THE TASK BLOWN WIDE

3   OPEN INTO SOMETHING THAT IS JUST DIFFERENT IN KIND.  THAT HAS

4   HUGE RULE 23(B)(2) PROBLEMS BECAUSE THIS GROUP OF FOLKS WILL

5   NOT HAVE A COMMON -- IT JUST -- THERE IS JUST NOT A COMMON

6   REMEDY BETWEEN THIS NEW GROUP WHO WOULD BE ADDED TO THE CLASS

7   AND THE GROUP THAT WE HAVE BEEN OPERATING ON ALL ALONG.

8          I JUST WANT TO EMPHASIZE THOSE POINTS, YOUR HONOR,

9   BECAUSE WE HAVE TRIED VERY, VERY HARD TO DO THIS AND TO DO IT

10  RIGHT, BUT THIS WOULD BE A DRAMATIC CHANGE IN THE CASE.  AND

11  IT IS HARD FOR ME TO JUST SAY, YES, THAT WOULD BE THE APPROACH

12  TO GO TO, BECAUSE IT JUST -- IT PUTS THE GOVERNMENT IN A VERY,

13  VERY DIFFICULT JOB.

14         AND I WANT TO EMPHASIZE, YOUR HONOR -- AND YOU CAN

15  LET ME KNOW IF I AM GOING ON FOR TOO LONG, OF COURSE.

16         BUT WE ARE NOT SAYING THAT THERE IS NO REMEDY HERE,

17  WE ARE NOT SAYING THAT FOLKS CAN'T BE REUNIFIED; WE ARE SAYING

18  THAT IT IS JUST NOT PART OF THE CLASS THAT THIS COURT

19  CERTIFIED, IT IS NOT PART OF THIS CASE.

20         AND THAT IF THIS WERE -- IF THERE ARE FOLKS IN THIS

21  CATEGORY WHO WANT TO SEEK THIS KIND OF RELIEF, THAT COURTS ARE

22  AVAILABLE FOR THEM TO DO THAT.  INFORMAL CHANNELS ARE

23  AVAILABLE FOR THEM TO DO THAT.  AGAIN, WE STILL HAVE NOT SEEN

24  AN IDENTIFIED PERSON WHO FALLS IN THIS CATEGORY.

25         AND WE WOULD EMPHASIZE -- I RE-EMPHASIZE ALL OF THE

FEBRUARY 21, 2019

```
 1   POINTS WE HAVE MADE IN OUR BRIEF, YOUR HONOR.  THIS IS IN
 2   KEEPING WITH THE LAW, IT IS IN KEEPING WITH THE TEXT OF YOUR
 3   HONOR'S ORDERS, IT MAKES LOGICAL AND EQUITABLE SENSE.  IT IS
 4   CONSISTENT WITH THE COURT OF DEALING.  THE GOVERNMENT HAS BEEN
 5   VERY CLEAR ON OUR APPROACH HERE.
 6           AND I WOULD JUST EMPHASIZE, YOUR HONOR, THAT YOUR
 7   HONOR HAS PRESIDED OVER A CASE IN A WAY THAT SHOWS HOW A VERY
 8   CHALLENGING ORDER CAN BE IMPLEMENTED WELL AND IMPLEMENTED
 9   EFFECTIVELY, AND THAT THERE IS AN ALTERNATIVE TO A KIND OF
10   TOOTH-AND-NAIL FIGHT TO EVERYTHING.
11           AND I THINK IF THE PLAINTIFFS ARE ALLOWED, THIS FAR
12   INTO IMPLEMENTATION, TO FILE A THREE-AND-A-HALF PAGE MOTION
13   AND BLOW THE CASE INTO SOME OTHER GALAXY OF A TASK, THAT IT
14   WOULD BE A VERY UNFORTUNATE THING BECAUSE PARTIES WILL KNOW,
15   WELL, IF IT DIDN'T WORK THERE IT IS NOT GOING TO WORK HERE.
16           WE ARE GOING TO HAVE TO FIGHT TOOTH AND NAIL BECAUSE
17   IF WE ARE REASONABLE, IF WE ARE AGREEABLE, IF WE ARE SOLUTION
18   ORIENTED, IF WE KIND OF THINK OUTSIDE THE BOX OF NORMAL
19   ADVERSARIAL LITIGATION TO GET THINGS DONE; IT STILL WON'T
20   REALLY HELP US BECAUSE WE WILL COMPLY AND THEN IT WILL GET
21   EVEN WORSE FOR US, EVEN THOUGH WE HAVE DONE ALL OF THESE
22   THINGS TO MAKE -- TO CORRECT THE WRONG THAT THE COURT FOUND TO
23   BE PRESENT.
24           SO, I UNDERSTAND THE VERY HUMAN ELEMENT, YOUR HONOR.
25   I WANT TO NOT SAY THAT IT IS SOMEHOW JUST A BURDEN THING.
```

FEBRUARY 21, 2019

1  THAT IS JUST A VERY REAL REALITY THAT WE FEEL OBLIGED TO

2  PRESENT YOUR HONOR WITH AND TO DO SO CAREFULLY.

3          I THINK COMMANDER WHITE IS, YOU KNOW, THE EXPERT ON

4  HOW BIG OF A TASK IT REALLY IS, AND HE IS WELL AWARE OF

5  WORKING WITH THE AGENCIES.  AND EVEN WITH THOSE REALITIES HE

6  IDENTIFIED THE BURDENS.

7          BUT I JUST WANT TO EMPHASIZE, YOUR HONOR, THAT THE

8  THEMES OF ORDERLY GOVERNANCE, OF A LAWFUL, WELL-ADMINISTRATED

9  IMPLEMENTATION OF A PRELIMINARY INJUNCTION ORDER, THOSE WILL,

10 IN MY RESPECTFUL VIEW, BE LOST IF THIS MOTION IS GRANTED.

11         IF THE MOTION IS DENIED, THE CASE CAN CONTINUE AND

12 WILL BE -- YOU KNOW, WE SUSPECT TO HAVE THE EXISTING TASK

13 COMPLETED SOON.  THE LITIGATION CAN CONTINUE.  AND THE

14 REMEDIES THAT THESE ANY -- IF ANY SUCH PLAINTIFFS MAY SEEK

15 TO -- MAY WANT TO PURSUE WOULD STILL BE AVAILABLE TO THEM,

16 YOUR HONOR.

17         IN OUR SYSTEM I RESPECTFULLY SUBMIT THAT THAT'S THE

18 WAY IT SHOULD BE.  THAT'S THE RIGHT RESULT.  AND IT IS THE ONE

19 CONSISTENT WITH THE LAW, IT IS THE ONE THAT RESPECTS OUR

20 STRUCTURE.

21         SO THANK YOU FOR LETTING ME GO ON AND HIT THOSE

22 POINTS, YOUR HONOR, I JUST WANTED TO EMPHASIZE THOSE.

23         **THE COURT:**  I APPRECIATE THAT.  THOSE ARE IMPORTANT

24 CONSIDERATIONS.  I HAVE A COUPLE OF OBSERVATIONS.

25         FIRST, IN FAIRNESS TO PLAINTIFFS, THEY, LIKE THE

FEBRUARY 21, 2019

1   COURT, ONLY HAS THE INFORMATION SECONDHAND.  THEY ARE NOT

2   CLAIRVOYANT.  THEY CAN ONLY LEARN ABOUT PIECES OF INFORMATION

3   IN BITS AND DRABS.  AND AS MR. GELERNT POINTS OUT, THERE WERE

4   EIGHT OR TEN PERSONS WHO SURFACED THAT THEY LEARNED ABOUT THAT

5   CAUSED THEM TO THINK THAT THIS CLASS NEEDS TO BE ENLARGED TO

6   CAPTURE EVERYONE.

7            IT IS IMPORTANT TO RECOGNIZE THAT WE ARE TALKING

8   ABOUT HUMAN BEINGS, EVERY PERSON, AND TO GET AWAY FROM THE

9   CONCEPT OF STATISTICS OR NUMBERS.  THAT EVERY PERSON NEEDS TO

10  BE ACCOUNTED FOR.

11           AND SO THE PLAINTIFFS ONLY HAD A LITTLE BIT OF

12  INFORMATION, THESE EIGHT TO TEN PERSONS WHO SURFACED, WHICH

13  CAUSED THEM TO FILE THIS MOTION.  THEREAFTER, THE INSPECTOR

14  GENERAL WEIGHED IN, THAT'S A VERY SIGNIFICANT EVENT, IN

15  SEPTEMBER.  AND THAT REPORT IS THOROUGH, AND IT IS NOT

16  CONTROVERTED.  I AM NOT HEARING THAT THE REPORT IS INACCURATE

17  AND WE OUGHT TO ABANDON IT.  IT APPEARS TO BE 100 PERCENT

18  FACTUAL.

19           AND THE REPORT SAYS THIS SEPARATION POLICY STARTED

20  IN JULY OF 2017.  THERE WAS A PILOT PROGRAM IN EL PASO, TEXAS,

21  AND THERE MAY BE THOUSANDS OF PARENTS AND CHILDREN WHO WERE

22  SEPARATED.  WE SIMPLY DON'T KNOW.  WE, THE GOVERNMENT, THE

23  INSPECTOR GENERAL OF THE DEPARTMENT OF HOMELAND SECURITY, DOES

24  NOT KNOW WHAT THE NUMBERS ARE BECAUSE THERE WAS NO TRACKING.

25  THAT'S THE HARSH REALITY.


                    FEBRUARY 21, 2019

1          AND SO I AM NOT BLAMING YOU, MR. STEWART, I AM JUST

2     STATING FACTS THAT WOULD DEMONSTRATE, I THINK, IRREFUTABLY

3     THAT THE PLAINTIFFS HAVE BEEN ACTING IN GOOD FAITH AND HAVE

4     BEEN ACTING AT A TIME WHEN THEY HAVE SOME INFORMATION.

5          AND THEN ONCE THEY ACTED, IT TURNS OUT THAT THIS MAY

6     ONLY BE THE TIP OF THE ICEBERG.  THAT THESE SEVEN, EIGHT,

7     NINE, TEN INDIVIDUALS MAY BE SIMPLY PART OF A GROUP OF

8     HUNDREDS OR THOUSANDS.

9          AND THEN I GO BACK TO WHAT IS THE ESSENCE OF THE

10    LAWSUIT.  AND THE VERY FUNDAMENTAL PREMISE OF THE LAWSUIT WAS

11    THAT THERE IS AN UNLAWFUL SEPARATION PRACTICE INITIATED BY

12    THIS ADMINISTRATION.

13         THE JUNE 26 DATE IS COMPLETELY ARBITRARY WHEN VIEWED

14    IN THAT LIGHT, AND IT WAS FIXED BECAUSE THAT'S THE DATE THAT

15    THE COURT HAPPENED TO ISSUE THE PRELIMINARY INJUNCTION ORDER.

16    AND IT FOCUSED ON CHILDREN IN O.R.R. CUSTODY BECAUSE THAT'S

17    THE INFORMATION WE HAD.  THAT'S THE INFORMATION THE COURT HAD,

18    THAT'S WHAT PLAINTIFFS REQUESTED IS THAT THE COURT ORDER

19    REUNIFICATION AS TO CHILDREN IN O.R.R. CARE AND CUSTODY.

20         NO ONE BUT A FEW IN THE GOVERNMENT KNEW THAT THIS

21    SEPARATION HAD BEEN GOING ON NINE OR TEN MONTHS BEFORE, AND

22    THAT HUNDREDS, IF NOT THOUSANDS, OF CHILDREN WERE FLOODING

23    O.R.R., AND THEN BEING SPONSORED OUT.

24         THE COURT DIDN'T KNOW THAT, AND PLAINTIFFS DIDN'T

25    KNOW THAT.  AND I DON'T THINK GOVERNMENT COUNSEL KNEW THAT,


FEBRUARY 21, 2019

1  BASED ON SOME OF THE ARGUMENTS THAT WERE PRESENTED.  AND I
2  HAVE ABSOLUTE TRUST IN GOVERNMENT COUNSEL.
3          THERE IS JUST A LOT GOING ON IN THIS CASE THAT
4  PEOPLE IN THIS COURTROOM DID NOT KNOW ABOUT BUT HAS NOW
5  SURFACED.  AND THE QUESTION IS WHETHER THE MOTION TO CLARIFY
6  THE SCOPE OF THE CLASS IS WARRANTED UNDER THESE CIRCUMSTANCES.
7          AND AGAIN I GO BACK TO THE CONCEPT OF THE LAWSUIT.
8  THE ESSENCE OF IT IS NOT REUNIFICATION, IT IS AN ALLEGATION OF
9  UNLAWFUL CONDUCT.  THE REMEDY CAN COME IN MANY DIFFERENT
10  FORMS.  THE PRINCIPAL REMEDY, OF COURSE, WOULD BE
11  REUNIFICATION.  AND IT JUST MAKES SENSE WHEN YOU HAVE CHILDREN
12  WHO WERE IN O.R.R. CUSTODY TO REUNIFY THEM.
13          THIS NEXT GROUP PRESENTS PERHAPS DIFFERENT ISSUES AS
14  FAR AS THE REMEDY, BUT THE OVERARCHING ALLEGED WRONG REMAINS
15  THE SAME.  AND THE TWO LEAD PLAINTIFFS, MS. L. AND MS. C., ARE
16  REPRESENTATIVE OF THAT SEPARATION PRACTICE, IT SEEMS TO ME.
17  SO THERE WOULD NOT BE AN ASCERTAINABILITY ISSUE.
18          AND THE NUMBERS THAT ARE INVOLVED MAY BE
19  SIGNIFICANT, HUNDREDS OR THOUSANDS, BUT THAT IS NOT AN
20  ASCERTAINABILITY ISSUE EITHER, BECAUSE THEY ARE CERTAINLY
21  IDENTIFIABLE.  IT TAKES A LOT OF WORK, BUT THEY ARE CERTAINLY
22  IDENTIFIABLE.  SO I DON'T SEE AN ASCERTAINABILITY ISSUE.
23          I DON'T SEE A TYPICALITY OR REPRESENTATIVE PROBLEM.
24  IT SEEMS TO ME MS. L. AND MS. C. ARE REPRESENTATIVE OF THIS
25  OVERARCHING ALLEGED WRONG.

FEBRUARY 21, 2019

```
 1              AND YOU HAD MENTIONED THAT THERE WERE (B)(2) ISSUES
 2    WITH BROADENING THIS CLASS, AND SO I WANT TO MAKE SURE THAT WE
 3    HAVE ADDRESSED THEM ALL HERE BEFORE I TAKE THIS UNDER
 4    SUBMISSION.
 5              MR. STEWART:  SURE, YOUR HONOR.
 6              I THINK WHEN YOU HAVE CHILDREN IN O.R.R. CUSTODY YOU
 7    CAN ORDER A COMMON REMEDY.  IT IS IDENTIFY WHO THESE CHILDREN
 8    ARE, PUT THEM IN CONTACT WITH THEIR PARENTS.  ORDER THAT THE
 9    GOVERNMENT, ONCE THE PARENT BECOMES AVAILABLE OR MEMBER OF THE
10    CLASS AFFIRMATIVELY REUNIFIES THE PERSON.  THAT ADDRESSES THE
11    WRONG OF THE INITIAL SEPARATION AND THE CONTINUING GOVERNMENT
12    INVOLVEMENT IN ANY CONTINUING SEPARATION.
13              THE PROBLEM HERE IS THAT WE DON'T HAVE THAT REMEDY
14    ONCE CHILDREN ARE RELEASED TO SPONSORS WHO -- FOR WHOM THERE
15    HAVE BEEN IMPORTANT DETERMINATIONS MADE ABOUT THE SPONSOR'S
16    ABILITY, GENERALLY A FAMILY RELATIONSHIP, THAT SORT OF THING.
17              THE COURT:  BUT CAN'T WE ADDRESS THAT LATER?
18              SO IT SEEMS TO ME IF THIS MOTION IS GRANTED, STEP
19    ONE, WHICH IS A VERY SIGNIFICANT STEP, WOULD BE THE
20    ACCOUNTING, WHAT ARE THE NUMBERS.  WHO ARE THEY, WHERE ARE
21    THEY.
22              STEP TWO IS THE REMEDY.  AND IT SEEMS TO ME THE
23    GOVERNMENT'S MOTION, OR OPPOSITION, FOCUSES PRINCIPALLY ON THE
24    PROBLEM OF REUNIFICATION.  AND CLEARLY THERE ARE MANY ISSUES
25    THAT ARISE WITH REUNIFICATION.  AND AS MR. GELERNT POINTS OUT
```

FEBRUARY 21, 2019

1    WITH THIS CURRENT GROUP WE HAVE ADDRESSED THEM IN VARIOUS

2    STAGES AND IN VARIOUS MANNER, DEPENDING ON THE UNIQUE

3    CIRCUMSTANCES OF THE INDIVIDUAL.

4            BUT IT SEEMS TO ME THAT THAT'S MORE OF A REMEDIAL

5    ISSUE AS OPPOSED TO THE LEGAL ISSUE OF WHETHER THE COURT OUGHT

6    TO GRANT THIS MOTION TO ENLARGE THE SCOPE OF THE CLASS.

7            **MR. STEWART:**  I THINK IT IS STILL THE LEGAL ISSUE,

8    AND JUST THE CLASS REQUIREMENTS ISSUE.

9            IF I CAN HIT -- I THINK -- WHAT I WOULD SAY IS, I

10   WOULD CERTAINLY STICK BY ALL OF THE POINTS WE HAVE MADE IN OUR

11   BRIEFS AND WON'T BELABOR SOME OF THOSE POINTS HERE, YOUR

12   HONOR.

13           BUT I THINK A POINT I WOULD REALLY LIKE TO EMPHASIZE

14   GOES -- IT GOES BACK TO THE ONE ABOUT, WHAT IS THIS CASE

15   ABOUT.  AND I THINK YOUR HONOR HIT THE POINT HOME WHERE YOU

16   EMPHASIZED TODAY, AS YOU HAVE EMPHASIZED BEFORE, THAT WE ARE

17   DEALING WITH INDIVIDUAL PEOPLE.  IT IS -- WHAT ARE -- WHAT

18   PROBLEM ARE THEY FACING, HOW DO YOU RESOLVE THAT.

19           AND IF WE ARE PRESENTED WITH A PERSON WHO FALLS

20   WITHIN THE CATEGORY THAT IS BEING DESCRIBED HERE, SOMEBODY

21   WHOSE CHILD WAS RELEASED FROM O.R.R. CUSTODY BEFORE THE

22   PRELIMINARY INJUNCTION ORDER WANTS TO SEEK REUNIFICATION, THEN

23   THAT PERSON CAN SEEK THOSE REMEDIES.

24           WE DON'T HAVE THAT PERSON -- WE DON'T HAVE THAT

25   PERSON LEFT HERE, WE DON'T KNOW WHAT THAT SITUATION LOOKS

FEBRUARY 21, 2019

1    LIKE, AND THEREFORE WE DON'T KNOW ALL OF THE DIFFICULTIES THAT

2    THAT PRESENTS.

3              AND I JUST EMPHASIZE, YOUR HONOR, THAT IN LINE WITH

4    YOUR HONOR'S EMPHASIS ON JUST THE IMPORTANCE OF INDIVIDUAL

5    PEOPLE AND CONCRETE HUMAN BEINGS AND THE PROBLEM THEY ARE --

6    THEY ARE CREATING, THE APPROPRIATE WAY TO RESOLVE THAT IN THE

7    SYSTEM IS FOR SUCH A PERSON TO PURSUE THAT REMEDY:  THIS IS

8    WHAT HAPPENED TO ME, HERE IS THE REMEDY I -- HERE IS THE LEGAL

9    WRONG, HERE IS THE REMEDY, HERE IS MY LAWSUIT.  OR, HEY,

10   GOVERNMENT HERE IS MY ISSUE, CAN YOU HELP ME OUT.  I

11   UNDERSTAND THAT SOMEBODY WAS RELEASED TO A SPONSOR, WHAT CAN

12   YOU DO?

13             RIGHT NOW WE STILL DON'T HAVE THAT IDENTIFIED PERSON

14   WHO IS FACING THAT THING.  THE TWO CLASS -- THE TWO CLASS

15   REPRESENTATIVES WERE BOTH REUNITED WITH THEIR CHILDREN.  THEY

16   DON'T HAVE THAT -- AGAIN, THE TEN -- NINE OR TEN OR

17   THEREABOUTS WHO MR. GELERNT IDENTIFIED, TO MY UNDERSTANDING

18   ARE -- AGAIN, THEY ARE NOT PEOPLE WHO ARE SEEKING -- I DON'T

19   BELIEVE THEY INVOLVE SITUATIONS WHERE SOMEBODY WAS RELEASED TO

20   A SPONSOR BEFORE THE PRELIMINARY INJUNCTION ORDER AND IS NOW

21   SEEKING REUNIFICATION TO STAY IN THE COUNTRY.

22             SO I GUESS I WOULD JUST EMPHASIZE, YOUR HONOR, MAYBE

23   A MORE DIRECT RESPONSE TO YOUR QUESTION ABOUT THE ACCOUNTING.

24             I UNDERSTAND THAT THERE IS AN -- THERE IS AN

25   ATTRACTION TO JUST HAVING THE ACCOUNTING TO GET INFORMATION.


FEBRUARY 21, 2019

53

1   BUT I RESPECTFULLY SUBMIT THAT GIVEN THE NATURE ABOUT HOW THIS

2   CASE WAS BROUGHT, THE WAY THE CASE HAS GONE, THE REMEDY THAT

3   HAS BEEN ORDERED, THE HISTORY OF THE CASE AND WHAT WAS

4   UNDERSTOOD FOR A VERY LONG TIME, IT IS JUST NOT PART THIS CASE

5   AND THERE ARE OTHER AVENUES TO ADDRESS THE CONCERNS THAT HAVE

6   BEEN IDENTIFIED HERE.  AND IT WARRANTS CONCRETE, IDENTIFIABLE

7   PEOPLE WHO HAVE CLAIMS ABOUT THOSE SORTS OF ALLEGED WRONGS.

8           **THE COURT:**  BUT DOESN'T THE ACCOUNTING, IN MANY

9   WAYS, GO TO THE ESSENCE OF THE CASE?  IT SEEMS TO ME WHEN

10  THERE IS AN ALLEGATION OF WRONG ON THIS SCALE, ONE OF THE MOST

11  FUNDAMENTAL OBLIGATIONS OF THE LAW IS TO BRING TO LIGHT WHAT

12  THAT WRONG WAS AND WHAT IS THE SCOPE OF THE WRONG.

13          SO MUCH OF WHAT IS HAPPENING IN THESE KINDS OF CASES

14  IS EXACTLY THAT; IT IS INFORMATION THAT THE PUBLIC, UNDER OUR

15  LAW, IS ENTITLED TO.  AND THERE IS NO WAY TO GET TO THAT

16  ABSENT THE RELIEF THAT THE PLAINTIFFS ARE REQUESTING.

17          AND, TO BE CLEAR, IT SEEMS TO ME THE PRINCIPAL LEGAL

18  RELIEF THEY ARE ASKING FOR IS THE ACCOUNTING, SO THAT WE KNOW

19  WHAT THE GOVERNMENT IS DOING AND THE SCOPE OF IT.  EVERYONE.

20  ALL OF US.  SECONDARILY WOULD BE THE REMEDY, WHICH MAY BE

21  REUNIFICATION OR OTHER TYPES OF REMEDIES.

22          BUT THE PLAINTIFFS' LAWSUIT IS NOT JUST ABOUT

23  REUNIFICATION.  THERE IS A LARGER LEGAL ASPECT TO IT, IT SEEMS

24  TO ME.

25          SO I GO BACK AGAIN TO THE OBSERVATION THAT THE

FEBRUARY 21, 2019

1   GOVERNMENT'S OPPOSITION SEEMS TO BE FOCUSING ON THE

2   REUNIFICATION REMEDY AND OVERLOOKING THE LEGAL QUESTION OF

3   WHAT IS THE PROPER SCOPE OF THIS CLASS AND WHY WOULD THIS

4   CLASS BE ENLARGED.  HOW DOES ENLARGING THE CLASS ADDRESS THE

5   ALLEGATION OF THE WRONG THAT THE PLAINTIFFS ALLEGE OCCURRED.

6          **MR. STEWART:**  AGAIN, I THINK THE WRONG IS -- IT HAS

7   TO BE VIEWED IN THE CONTEXT OF A CASE OR CONTROVERSY, THE WAY

8   THE LITIGATION IS POISED.

9          A LITIGATION -- ANY CASE CAN IDENTIFY VARIOUS

10  SHORTCOMINGS, FLAWS.  LITIGATION DOESN'T NECESSARILY EXIST TO

11  RESOLVE EVERY ISSUE, IT NEEDS TO BE CONCRETE AND TAILORED IN

12  ACCORDANCE WITH THE LAW, YOUR HONOR.

13         I ALSO BELIEVE OTHER BRANCHES, OTHER COMPONENTS

14  WITHIN -- LIKE I SAID, OTHER CASES ARE A POSSIBILITY.  THE

15  EXECUTIVE BRANCH ITSELF WITH O.I.G. REPORTS ARE THOSE -- THAT

16  IS A POSSIBILITY.  THERE ARE -- OTHER BRANCHES CAN DO THINGS,

17  YOU KNOW, AS THEY SEE, YOU KNOW, APPROPRIATE AND CONSISTENT

18  WITH LAW TO ADDRESS SOME OF THESE ISSUES.  SO I DON'T SEE THE

19  ABSENCE OF THAT AS A POSSIBILITY IF IT WERE PROPERLY PRESENTED

20  AND CONSISTENT WITH LAW.

21         I JUST DON'T SEE, RESPECTFULLY, YOUR HONOR, IT IS --

22  I UNDERSTAND THE APPEAL WITH MR. GELERNT'S PITCH THAT HE WANTS

23  AN ACCOUNTING JUST FOR TRANSPARENCY.  THAT HAS A LOT OF

24  SIGNIFICANT SURFACE APPEAL, BUT IT IS SIMPLY NOT WHAT HE'S

25  AFTER.


FEBRUARY 21, 2019

55

1          HE WANTS -- THAT'S THE ALLURING STEP ONE, AND ONCE

2    THAT FOOT IS IN THE DOOR IT IS QUITE OBVIOUS THAT IT IS GOING

3    TO BE EXTENSIVE, INVASIVE BURDENS ON THE GOVERNMENT.  I MEAN,

4    THERE IS NO -- THERE IS, RESPECTFULLY, NO CHANCE THAT MR.

5    GELERNT STOPS AT THE ACCOUNTING, YOUR HONOR.

6          **THE COURT:**  I AGREE, BUT I JUST WANT TO MAKE SURE I

7    HAVE A FULL UNDERSTANDING OF THE LEGAL QUESTION OF WHETHER OR

8    NOT THE MOTION TO ENLARGE THE SCOPE OF THE CLASS IS WARRANTED.

9          **MR. STEWART:**  AND WE RESPECTFULLY SUBMIT IT IS NOT,

10   YOUR HONOR.  IT IS JUST NOT PART OF THIS CASE.

11         IF IT WERE A CASE THAT APPROPRIATELY WERE MAKING THE

12   ALLEGATIONS WITH ADEQUATE REPRESENTATIVES TO ADDRESS IT AND IT

13   WAS SHOWN THAT WE HAVE PLAINTIFFS WHO ACTUALLY FACED THIS

14   PROBLEM AND HAVE THIS KIND OF ISSUE, THAT COULD PRESENT A

15   DIFFERENT ISSUE.  IT COULD BE ADDRESSED APPROPRIATELY AND IN A

16   CONCRETE, PRACTICAL FORM AT THAT TIME.

17         BUT IN THE CONTEXT OF THIS CASE, YOUR HONOR, IT IS

18   JUST NOT APPROPRIATELY PRESENTED.  IT SHOULD BE DENIED, AND IT

19   JUST -- IT IS NOT CONSISTENT WITH THE CASE, WITH THE LAW, OR

20   WITH ORDERLY GOVERNANCE AND ADMINISTRATION.

21         I WOULD RESPECTFULLY SUBMIT FOR THE REASONS WE PUT

22   IN THE BRIEF, AND OTHER REASONS I JUST STATED.

23         **THE COURT:**  THANK YOU.

24         **MR. STEWART:**  THANK YOU, YOUR HONOR.

25         **THE COURT:**  MR. GELERNT, ANY FINAL OBSERVATIONS?


                    FEBRUARY 21, 2019

56

1          **MR. GELERNT:**  YOUR HONOR, I AM NOT SURE I HAVE MUCH

2     TO ADD, I JUST -- FROM WHAT YOU SAID.  I THINK, YOU KNOW,

3     LIABILITY IS ONE THING.  REMEDY, AS YOUR HONOR KNOWS, MANY

4     CLASSES HAVE DIFFERENT REMEDIES, DEPENDING.  THAT IS ONE

5     POINT.

6          THE SECOND POINT IS, OBVIOUSLY, A CASE ALWAYS TAKES

7     INTO ACCOUNT FURTHER DEVELOPMENTS.  AND I THINK THIS IS ONE

8     THAT IS A BOMBSHELL THAT NO ONE COULD HAVE REALLY HAVE

9     ANTICIPATED, THAT ONLY FROM AN INTERNAL REPORT.

10          THE LAST THING I WOULD JUST SAY IS THE WHOLE POINT

11     OF THE GOVERNMENT SAYING, WELL, EVERYONE CAN TAKE REMEDIAL

12     STEPS ON THEIR OWN; WE COULD HELP THEM, BUT WE DON'T KNOW

13     WHERE THEY ARE.  I MEAN, THAT IS THE WHOLE REASON FOR AN

14     ACCOUNTING IS WE ARE WILLING TO MAKE THOSE CALLS TO SEE, ARE

15     YOU ALL RIGHT, DO YOU KNOW WHERE YOUR KID IS, ALL OF THOSE

16     TYPES OF STEPS.  BUT OBVIOUSLY WE CAN'T DO THAT WITHOUT

17     KNOWING THE INDIVIDUAL.  SO TO JUST KEEP CONTINUALLY SAYING TO

18     US, WELL, PRESENT ALL THE CASES TO US AND WE CAN TALK TO IT.

19          WELL, I THINK THAT IS WHAT YOUR HONOR IS POINTING

20     OUT.  WE DON'T KNOW THE CASES, AND ONLY THE GOVERNMENT KNOWS

21     THE CASES.

22          THANK YOU, YOUR HONOR.

23          **THE COURT:**  THANK YOU.

24          MR. STEWART, YOU AGREE THAT IN THE PARTICULAR

25     CONTEXT OF CLASS CERTIFICATION, THE DEFINITION OF A CLASS CAN

FEBRUARY 21, 2019

57

 1   EVOLVE AND CHANGE THROUGHOUT THE LITIGATION.  IT CAN CHANGE AT
 2   THE TIME OF TRIAL.  CLASSES ARE ROUTINELY DECERTIFIED OR
 3   ENLARGED, DEPENDING ON THE STATE OF EVIDENCE.  IT IS FREQUENT,
 4   FAIRLY COMMON, WHERE COURTS WILL CERTIFY A CLASS, A (B)(3)
 5   CLASS, AND THEN LATER DECERTIFY THE DAMAGES ELEMENT OF THAT
 6   CLASS, FOR EXAMPLE, BASED ON FURTHER DISCOVERY AND
 7   INFORMATION.
 8          SO YOU DO AGREE THAT CLASS CERTIFICATION AND THE
 9   DEFINITION OF THE CLASS IS A MOVING TARGET, AND NECESSARILY
10   SO, IN THE CONTEXT OF CLASS LITIGATION AND AS DISCOVERY AND
11   INFORMATION SURFACES.
12          **MR. STEWART:**  I THINK, YOUR HONOR, THAT CLASS
13   DEFINITIONS, THEY -- THINGS CAN HAPPEN AS THE CASE GOES ON.
14          THIS IS SOMEWHAT OF AN ODD -- OR THIS IS A SITUATION
15   WHERE I THINK I WOULD EMPHASIZE THE (B)(2) POINT AND HOW MUCH
16   IMPLEMENTATION HAS OCCURRED AND WHAT WE HAVE SEEN IS THE
17   REMEDY FOR THE FOLKS AT WHICH THE CLASS DEFINITION AIMED.
18          I THINK THE KEY PROBLEM HERE IS WE ARE COMING TO THE
19   END OF COMPLIANCE AND PERFORMANCE ON -- WITH THE EXISTING
20   CLASS DEFINITION, THE EXISTING PRELIMINARY INJUNCTION; AND NOW
21   WE ARE ADDING ON A NEW GROUP OF FOLKS WHO THERE HAS BEEN NO
22   INDICATION THAT THERE IS A COMMON REMEDY FOR THEM.  THERE HAS
23   BEEN NO INDICATION THAT THEY WILL FACE ANYTHING OTHER THAN
24   HIGHLY INDIVIDUALIZED CIRCUMSTANCES.
25          SO I THINK TO CHANGE A CLASS DEFINITION, YOUR HONOR,

FEBRUARY 21, 2019

1  TO APPROVE A CLASS DEFINITION, THERE WOULD HAVE TO BE JUST A

2  GOOD SHOWING THAT YOU HAVE ALL OF THE RULE 23 REQUIREMENTS

3  SATISFIED.

4          AND I DON'T THINK -- I CERTAINLY REJECT THE VIEW

5  THAT MR. GELERNT'S THREE-AND-A-HALF PAGE BRIEF, OR HIS REPLY

6  BRIEF, THAT, FRANKLY, MAKES A FAIR NUMBER OF MODIFICATIONS TO

7  THE ORIGINAL PITCH, DOES SOME BACKTRACKING, THAT JUST -- THAT

8  IS A SEISMIC SHIFT IN A CASE WHERE WE ARE INTO, I SUPPOSE,

9  ABOUT SEVEN OR EIGHT OR SO MONTHS OF PERFORMANCE BASED ON ONE

10 SET -- BASED ON AN EXISTING CLASS DEFINITION, YOUR HONOR.

11         SO I WOULD SAY THAT THIS IS QUITE A SHIFT OF THE

12 CLASS DEFINITION AND IT IS POTENTIALLY A SIGNIFICANT SHIFT TO

13 THE -- JUST THE EXISTING RELIEF ORDERED IN A WAY THAT IT IS

14 NOT CLEAR OR THERE HASN'T BEEN A SHOWING THAT THERE CAN BE

15 COMMON RELIEF.

16         **THE COURT:**  IT IS IMPORTANT TO RECOGNIZE, THOUGH, DO

17 YOU AGREE, THAT THIS IS NOT A (B)(3) CLASS, SO WE ARE NOT

18 TALKING ABOUT INDIVIDUALIZED INQUIRY PREDOMINATING OVER COMMON

19 QUESTIONS OF FACT OR LAW.  IT IS A (B)(2) CLASS.

20         **MR. STEWART:**  YES, YOUR HONOR, A (B)(2) CLASS.

21         **THE COURT:**  AND THE LAW IS CLEAR, THEN, ON A (B)(2)

22 CLASS IF THERE IS AN OVERARCHING ALLEGED WRONG BASED ON A

23 POLICY THAT AFFECTS ALL MEMBERS OF THE CLASS, THAT CAN BE

24 ADJUDICATED IN ONE FELL SWOOP, THAT THAT IS A PERFECT

25 CANDIDATE FOR CLASS CERTIFICATION.


FEBRUARY 21, 2019

1          AND AS I UNDERSTAND THE PLAINTIFF'S REQUEST TO

2     ENLARGE THE CLASS, IT GOES BACK TO THIS ISSUE OF, THERE IS ONE

3     ALLEGED LEGAL WRONG AND IT APPLIES TO EVERYONE.  WHAT THE

4     REMEDY IS BECOMES COMPLETELY SECONDARY.

5          **MR. STEWART:**  I THINK I WOULD HAVE TO PUSH BACK,

6     YOUR HONOR, AND JUST INSIST THAT THERE NEEDS TO BE A COMMON

7     REMEDY OTHERWISE -- AND THERE IS ALSO THE RISK -- I THINK

8     THERE IS -- WE NO LONGER HAVE A COMMON WRONG OF A CONTINUED

9     GOVERNMENT IMPEDIMENT TO REUNIFICATION, YOUR HONOR.  I

10    UNDERSTAND YOUR POINT.

11         **THE COURT:**  THE REMEDY COULD SIMPLY BE A DECLARATION

12    BY THE COURT THAT THIS POLICY, AT THE TIME OF TRIAL, IS

13    UNLAWFUL.  AND THEN THAT COULD BE THE FORM OF DECLARATORY

14    RELIEF, THAT COULD BE THE REMEDY.

15         BUT, OF COURSE, HERE THE PLAINTIFFS ARE SEEKING MORE

16    THAN THAT.  THEY HAVE BEEN SEEKING THAT DECLARATION, THEY HAVE

17    BEEN SEEKING THE ACCOUNTING, THE NUMBERS, AND THEN THEY HAVE

18    BEEN SEEKING THE REUNIFICATION.

19         **MR. STEWART:**  I SUPPOSE I HAVEN'T THOUGHT ALL THE

20    WAY THROUGH THE IMPLICATIONS OF A DECLARATORY RELIEF ONLY

21    SITUATION IN THIS CONTEXT, YOUR HONOR, PRECISELY FOR I THINK

22    THE REASONS YOU MENTIONED THAT IT IS VERY MUCH AN INJUNCTIVE

23    EFFORT.  AND THAT IS PART OF WHAT CREATES SUCH TREMENDOUS

24    PROBLEMS ON A RULE 23(B)(2) BASIS.

25         **THE COURT:**  OKAY.  THANK YOU.


FEBRUARY 21, 2019

1          **MR. STEWART:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  WHAT I WOULD LIKE TO DO -- I REALLY

3   APPRECIATE COUNSEL BEING HERE AND ARGUING THE MOTION.  I

4   UNDERSTAND THE ENORMITY OF THE MOTION, THE PRACTICAL

5   IMPLICATION OF IT, SO I APPRECIATE THE DISCUSSION.

6          I WILL TAKE IT UNDER SUBMISSION.  I WILL ENDEAVOR TO

7   ISSUE AN ORDER AS QUICKLY AS I CAN IN LIGHT OF THE

8   SIGNIFICANCE OF THE ISSUES.

9          I WILL ASK COUNSEL TO KEEP WORKING, IN EARNEST, ON

10  THE GROUP THAT'S AT ISSUE.  WE ARE ALMOST THERE, WE ARE ALMOST

11  DONE.  A LOT OF GOOD HAS OCCURRED.  AND THE FACT THAT EVERY

12  PARENT OF EVERY CHILD HAS BEEN CONTACTED AND HAS WEIGHED IN ON

13  REUNIFICATION OR NOT, FOR THE CURRENT CLASS, IS VERY

14  SIGNIFICANT.  THE REUNIFICATIONS THAT HAVE BEEN IMPLEMENTED

15  AND THAT HAVE OCCURRED, THAT'S EXTRAORDINARY.

16         AND SO I WILL ENCOURAGE THE PARTIES TO KEEP WORKING

17  IN EARNEST, TO WRAP UP THIS CHAPTER, AND WORK ON THESE OTHER

18  IMPORTANT ISSUES WITH RESPECT TO A CENTRALIZED DATA SYSTEM AND

19  THE LIKE.

20         I WILL SET OUT A DATE, I WILL ISSUE AN ORDER SOON

21  FIXING THE NEXT STATUS CONFERENCE AND THE STATUS REPORTS IN

22  THE NEXT SEVERAL DAYS.  AND SO WE WILL BE MEETING AGAIN.  THEN

23  I WILL ISSUE, PROBABLY SEPARATELY, AN ORDER ON THIS MOTION TO

24  ENLARGE THE CLASS DEFINITION.

25         THERE WAS AN INDIVIDUAL HERE, MS. LINDA DAKIN-GRIMM.

FEBRUARY 21, 2019

1          **MS. DAKIN—GRIMM:**  YES, YOUR HONOR.  YOU HAVE

2    ADDRESSED MY ISSUES.  I REPRESENT AN INDIVIDUAL WHO WAS

3    SEPARATED FROM HIS DAUGHTER AND THE DAUGHTER WAS RELEASED FROM

4    O.R.R. CUSTODY A FEW DAYS BEFORE JULY 26.  SO I BELIEVE YOU

5    WILL ADDRESS THIS SITUATION IN YOUR RULING YOU DESCRIBED.

6          THANK YOU.

7          **THE COURT:**  VERY GOOD.  THANK YOU.

8          LET'S RECESS AT THIS TIME, AND I WILL LOOK FORWARD

9    TO SEEING COUNSEL AGAIN, IN PERSON OR TELEPHONICALLY.

10          **MR. STEWART:**  THANK YOU, YOUR HONOR.

11          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

12

13                          *   *   *

14          I CERTIFY THAT THE FOREGOING IS A CORRECT
            TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
15          IN THE ABOVE—ENTITLED MATTER.

16          S/LEEANN PENCE                    2/23/2019
            LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
17

18

19

20

21

22

23

24

25


                        FEBRUARY 21, 2019