1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | Ms. L.; et al.,
12 |                         Petitioners-Plaintiffs,
13 | v.
14 | U.S Immigration and Customs
15 | Enforcement ("ICE"); et al.,
16 |                         Respondents-Defendants.

Case No.:  18cv0428 DMS (MDD)

**ORDER GRANTING PLAINTIFFS'
MOTION TO MODIFY CLASS
DEFINITION**

17
18
19
20
21
22
23
24
25
26
27
28

Last spring, the Attorney General of the United States announced a controversial "zero tolerance" policy for all persons crossing the border illegally.  Under the policy, parents and children who crossed the border illegally were separated, and the children were placed in the custody of the Department of Health and Human Services ("HHS"), Office of Refugee and Resettlement ("ORR").  Several weeks before the Attorney General's announcement of the zero tolerance policy, Plaintiffs filed the present case alleging they, and a class of similarly situated individuals, had been forcibly separated from their children by government officials at the border.  Plaintiffs alleged these separations were the result of a nationwide policy that had been implemented well before the announcement of the zero tolerance policy and that the policy had resulted in the indiscriminate separation of migrant families both at and between designated ports of entry.  Plaintiffs challenged this

family separation policy as a violation of their substantive due process rights to family integrity under the Fifth Amendment to the United States Constitution.

On June 26, 2018, this Court granted Plaintiffs' motions for class certification and for a preliminary injunction, and ordered reunification of the children in ORR custody with their parents within 30 days. (*See* ECF Nos. 82, 83.) Pursuant to the Court's Orders, 2,816 children were identified as having been separated from their parents at the border, and nearly all of them have now been reunified with their parents or otherwise discharged in accordance with their parents' wishes.

Recently, the HHS Office of Inspector General ("OIG") conducted an internal investigation into the Administration's zero tolerance policy given "the potential impact of [the policy] on vulnerable children and ORR operations[,]" and "to determine the number and status of separated children who have entered ORR care" as a result of the policy. On January 17, 2019, the OIG issued a Report on its investigation entitled, "Separated Children Placed in Office of Refugee Resettlement Care." That Report reveals the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") began separating migrant families as early as July 1, 2017, well before the zero tolerance policy was publicly announced in May of 2018, and that pursuant to the policy, potentially "thousands" more families had been separated.

In granting class certification, this Court generally defined the class to include parents who had entered the United States at or between ports of entry, who were, had been or would be detained in immigration custody by DHS, and had a minor child who was separated from them and detained in ORR custody at or after that time. Specifically, the class was defined as follows:

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

/ / /

2

(ECF No. 82 at 17.)  In implementing the Court's preliminary injunction and reunification order, Defendants limited this class to parents whose children were "detained in ORR custody, ORR foster care, or DHS custody" on the date the preliminary injunction was issued, June 26, 2018.  Defendants did not include in the class those parents whose children were released from ORR custody *before* June 26, 2018.  As a result, those parents—the potentially "thousands" identified by OIG—were not reunified with their children pursuant to the Court's preliminary injunction.  Plaintiffs now move to clarify that the class certified in the Court's Order includes those parents, or in the alternative, to modify the class definition to include those parents.  After reviewing the parties' briefs and relevant legal authority, and hearing argument from counsel, the Court grants Plaintiffs' motion to modify the class definition.

Defendants oppose the motion on several grounds.  They contend that expanding the class to include these parents would run afoul of the adequacy, typicality and commonality requirements of Federal Rule of Civil Procedure 23(a), and present ascertainability problems.  Defendants argue parents whose children were released from government custody before June 26, 2018, are in a different legal position from parents whose children were in government custody on or after that date.  They also argue Plaintiffs delayed raising this issue, and that it would be unfair to Defendants to expand the class after they have reunified so many class members with their children.

There is no dispute "courts retain discretion to revisit class certification throughout the legal proceedings, and may rescind, modify, or amend the class definition in light of subsequent developments in the litigation." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 473-74 (S.D. Cal. 2015).  This authority is found in Federal Rule of Civil Procedure 23(c)(1)(C), which states, "[a]n order that grants or denies class certification may be altered or amended before final judgment[,]" and in Supreme Court case law.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.")  "'In considering the appropriateness of [modification or] decertification, the standard of review is the same as

a motion for class certification: whether the Rule 23 requirements are met.'" *Roy v. County of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018) (quoting *Marlo v. United Parcel Serv.*, Inc., 251 F.R.D. 476, 479 (C.D. Cal. 2008)). *See also Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 210-11 (N.D. Cal. 2015); *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013) (same).

Here, Plaintiffs first notified the Court of their concerns with the class definition in the November 29, 2018 Joint Status Report ("JSR"). (*See* ECF No. 329.) In that document, Plaintiffs' counsel stated that on November 16, 2018, they "learned of a separated parent who feared imminent removal because her child was released from ORR custody before June 26, 2018." (*Id.* at 18.) Plaintiffs' counsel stated during the subsequent status conference that they had learned of "a handful" of such cases. (ECF No. 332 at 16.) Counsel informed the Court they had met and conferred on this issue, and "agreed that removals of individuals in this category be stayed pending the Court's resolution." (ECF No. 329 at 18.) Defense counsel requested that the issue be resolved by way of a formal noticed motion, to which the Court agreed.

Thereafter, Plaintiffs filed the present motion based on the information they had at that time. Before Defendants filed their response, the case was stayed because of the government shutdown. During the stay, OIG issued its Report. As noted above, the purpose of the OIG investigation was to determine the number and status of separated children "who have entered ORR care, including but not limited to the subset of separated children covered by [the present case,] *Ms. L. v. ICE*." (Report at 1.) OIG found the following:

> In the summer of 2017, prior to the formal announcement of the zero-tolerance policy, ORR staff and officials observed a steep increase in the number of children who had been separated from a parent or guardian by DHS ("separated children") and subsequently referred to ORR for care.[ ] Officials estimated that ORR received and released thousands of separated children prior to a June 26, 2018, court order in *Ms. L v. ICE* that required ORR to identify and reunify certain separated children in its care as of that date.

4

(*Id.*)  Although the Administration's zero tolerance policy was publicly announced in May 2018, the OIG Report states, "From July through November 2017, the El Paso sector of Customs and Border Protection (CBP), an agency within DHS, implemented new policies that resulted in 281 families being separated." (*Id.* at 3.)  During this same period, July through November 2017, ORR staff "observed a significant increase in the number and proportion of separated children (i.e., children separated from their parent or legal guardian by DHS) relative to other UACs [unaccompanied alien children]." (*Id.*)  "Overall, ORR and ASPR [the Office of the Assistant Secretary for Preparedness and Response] officials estimate that thousands of separated children entered ORR care and were released prior to the June 26, 2018 court order." (*Id.*)

Clearly, the OIG Report is a significant development in this case.  And, importantly, the contents of the Report are undisputed.  The most significant facts to come out of the Report are (1) that in the summer of 2017, DOJ and DHS were separating parents and children at the border pursuant to the Administration's new policy, and (2) during and after that time, potentially thousands of children who had been separated from a parent were received by ORR and subsequently discharged from ORR custody to designated sponsors pursuant to the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), Pub. Law No. 110-457 (Dec. 13, 2008), prior to the Court's June 26, 2018 Orders.

Defendants suggest this information is not a new development, but rather something the parties knew about, or should have known about, when the Court issued its Orders.  However, that suggestion stands in stark contrast to Defendants' representations in this case in as late as May of 2018 that the government did not have either a policy or practice of separating families at the border.  (*See* ECF No. 61 at 10 (stating Plaintiffs failed to point to an "actual Government policy or practice regarding separation" but were instead "challenging a number of different immigration and criminal enforcement actions by multiple agencies which, when taken with regard to the named Plaintiffs, resulted in the separation of each named Plaintiff from her child."); *see also* ECF No. 70 at 5 (disputing

/ / /

that there was a policy or practice of family separation).)[1]  In light of those representations, it is unreasonable to suggest that Plaintiffs should have known that potentially thousands of parents and children had been separated at the border prior to the Court's June 26, 2018 Orders.[2]  Given the subsequent, undisputed developments set out in the OIG Report, modification of the class is warranted if the class, as modified, meets the requirements of Federal Rule of Civil Procedure 23.

As set out in the Court's previous order on class certification, Rule 23(a) sets out the requirements of numerosity, commonality, typicality and adequacy of representation. Numerosity is not disputed as there are thousands of members in the class as currently certified, so the Court turns first to commonality.  In the previous order on class certification, the Court found the commonality requirement was met given the evidence of a "common practice" of "separating migrant parents and children and failing to reunite them without a showing the parent is unfit or presents a danger to the child."  (ECF No. 82 at 12.)  The Court went on to state: "Whether that practice violates substantive due process is a question common to the class, and the answer to that question is 'apt to drive the resolution of the litigation.'"  (*Id.*) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  That finding applies equally to the proposed modified class.

There is no dispute the parents who have been excluded from the class were also subjected to this "common practice."  Like the current members of the class, they, too, were separated from their children by DOJ and DHS, their children were placed in ORR

---

[1]  The Court notes the latter representation was made only a few days before the Attorney General publicly announced the zero tolerance policy under which children were to be separated from their parents if they entered the country illegally.

[2]  Undoubtedly, Plaintiffs would have discovered the total number of separated children in ORR custody through normal discovery channels in this litigation.  However, the parties did not engage in discovery at the outset of the litigation.  Instead, they properly focused their intense efforts on implementing the Court's preliminary injunction, which required reunification of children with their parents within 14 days (for children under age 5) and 30 days (for children over 5).

custody, and they were not reunified with their children despite the absence of any finding they were unfit parents or presented a danger to their children.  These parents, like those presently in the class, present the identical question, namely did that practice violate the parents' rights to substantive due process, and the answer to that question applies to all these parents, not just those whose children were in ORR custody on June 26, 2018.

Defendants argue this new group of parents presents a different legal and factual situation from the current class members because the children of this new group are no longer in ORR custody, and thus, reunification of these parents and their children may be impossible or ill-advised.  However, this argument goes to the issue of remedy, not liability, and Ninth Circuit case law makes clear that a difference in remedies does not necessarily defeat a showing of commonality.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 979 (9th Cir. 2008) (rejecting argument that "redressing the harm and calculating the various pay disparities for the different employment positions precludes class certification.").  Further, reunification is not the only remedy available here.  Other remedies may be appropriate, and they would apply to all class members.  For instance, as OIG has suggested, an accounting is a necessary first step to determine the "number and status" of separated children who were in ORR custody at any time.[3]  And, finally, Defendants' argument ignores Plaintiffs' request for declaratory relief, namely a declaration that the separation of class members from their children was and is unlawful.  (Am. Compl. at 14.)  This remedy would be

/ / /

/ / /

/ / /

─────────────────────

[3] That accounting necessarily would provide important information about the number and status of the proposed modified parent class members.

1  available to all class members regardless of the custodial status of their children.[4]  Thus,

2  the newly proposed class satisfies the commonality requirement.[5]

3      Next, Defendants argue the proposed modification to the class definition does not

4  satisfy the adequacy requirement.  Specifically, they assert "Plaintiffs' proposed expansion

5  of the class would … create an adequacy problem, because no named class member at the

6  time class certification was being briefed was in the situation where her child had been

7  released from ORR custody to a sponsor."  (Defs.' Opp'n to Mot. at 2; *see also id.* at 16

8  (arguing "the named plaintiffs … cannot be adequate class representatives for the expanded

9  class … because neither of their children were released to other sponsors, and both of them

10  sought reunification with their child directly from ORR."))  However, it is unclear how the

11  location of the separated children would render the class representatives inadequate.

12  Defendants do not assert the location of the separated children creates a conflict between

13  the named Plaintiffs and their counsel and the newly proposed class members.  Nor do they

14  assert that the named Plaintiffs would not vigorously prosecute the action on behalf of these

15  newly proposed class members.  Indeed, the named Plaintiffs and their counsel have

16  vigorously prosecuted this action on behalf of parents who were removed from the United

17  States even though they themselves were not removed.  There is simply no evidence or

18  reason to believe that the named Plaintiffs or their counsel would not vigorously prosecute

19  this action on behalf of parents who were subjected to the same government policy but

20

21  _____

22  [4]  Plaintiffs' request for declaratory relief also satisfies the requirement of Rule 23(b)(2),

23  which states class certification is appropriate if "the party opposing the class has acted or
    refused to act on grounds that apply generally to the class, so that final injunctive *or*

24  *declaratory relief* is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2)

25  (emphasis added).

26  [5]  As with the motion for class certification, the parties' arguments on typicality mirror their
    arguments on commonality.  Given the overlap of these issues in this case, the reasoning

27  set out above and in the class certification order, (ECF No. 82 at 13-14), leads the Court to

28  conclude the typicality requirement is satisfied.

1    whose children were released from ORR custody prior to June 26, 2018.  On the contrary,

2    Plaintiffs' counsel represented to the Court that they stand ready to put together another

3    steering committee to assist any newly identified class members in the event this motion is

4    granted.  (ECF No. 364 at 34.)  Under these circumstances, the newly proposed class

5    satisfies the adequacy requirement.

6           In addition to these Rule 23 factors, Defendants raise several other arguments against

7    modifying the class definition.  First, although Defendants recognize that ascertainability

8    is not a requirement for class certification, they argue the proposed modification to the

9    class definition "would make it nearly impossible to ascertain the class with any level of

10   certainty." (Defs.' Opp'n to Mot. at 5.)  In essence, they assert it would be too burdensome

11   for them to identify the members of the newly proposed class, therefore the class should

12   not be modified.

13          As an initial matter, the Court notes this is not a valid argument against either class

14   certification or modification of a previously certified class.  *See Briseno v. ConAgra Foods,*

15   *Inc.*, 844 F.3d 1121, 1125-26 (9th Cir.) (rejecting assertion that, in addition to satisfying the

16   requirements of Rule 23, "class proponents must also demonstrate that there is an

17   administratively feasible way to determine who is in the class."), *cert. denied by ConAgra*

18   *Brands, Inc. v. Briseno*, ___ U.S. ___, 138 S.Ct. 313 (2017).  This is especially so here,

19   where the difficulty in identifying proposed class members is the result of Defendants' own

20   record keeping practices, or lack thereof.  *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D.

21   559, 566 n.6 (W.D. Wash. 2012) (stating "it would be unfair to deny class certification

22   because of the potential difficulty of identifying the class members where that difficulty is

23   mostly due to the fact that [Defendant] destroyed the call lists that it used."); *Raffin v.*

24   *Medicredit, Inc.*, No. 15-4912-GHK (PJWx), 2017 WL 131745, at *6 n.5 (C.D. Cal. Jan.

25   3, 2017) (stating "courts generally do not bar class certification where the defendant's own

26   destruction of records causes difficulty in identifying class members.")  The argument

27   holds even less weight here because Plaintiffs are not seeking class certification under Rule

28   23(b)(3), which calls for consideration of the difficulties in identifying class members as

9

part of the "superiority" requirement.  *See Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (finding no abuse of discretion in denying certification of Rule 23(b)(3) class "in light of expected difficulties identifying class members and determining appropriate damages.")  Rather, the class in this case is certified under Rule 23(b)(2), which does not have a similar requirement.

Furthermore, although the process for identifying newly proposed class members may be burdensome, it clearly can be done.  Indeed, Jallyn Sualog, who is leading ORR's efforts to reunify separated parents and children, has set out the process of identifying these newly proposed class members.  (*See* Decl. of Jallyn Sualog in Supp. of Defs.' Opp'n to Mot. ¶¶ 13-20.)  Thus, Defendants' argument of burden does not warrant denial of the present motion.

Defendants also suggest it would be more appropriate for the newly proposed class members to bring individual cases rather than include them in this case.  (ECF No. 364 at 52.)  Like the issue of burden, this argument also goes to the issue of superiority under Rule 23(b)(3).  *See* Fed. R. Civ. P. 23(b)(3)(A) (listing as factor for consideration "the class members' interests in individually controlling the prosecution or defense of separate actions[.]")  Even if this argument applied here, it would weigh in favor of granting the motion, not denying it.  As the Ninth Circuit stated in *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843 (9th Cir. 2016), "[c]ourts have long recognized the benefits conferred by the class action mechanism over numerous individual actions[,]" (*id.* at 863), particularly in civil rights actions where a government practice or policy is at issue.  *Parsons v. Ryan*, 754 F.3d 657, 686-87 (9th Cir. 2014) (stating primary purpose of Rule 23(b)(2) "has always been the certification of civil rights class actions.")  In fact, near the beginning of this case when separate lawsuits were being filed across the country, Defendants advocated for consolidation and avoidance of separate actions in multiple fora.  *See*, *e.g.*, *State of Wash. v. United States*, Case No. 18cv1979 DMS (MDD), ECF No. 22 (Defendants' motion to dismiss, or in the alternative, to transfer venue to this Court);

/ / /

*M.M.M. v. Sessions*, Case No. 18cv1832 DMS (MDD), ECF No. 21 at 21 (reflecting Defendants' request to transfer case to this Court).

Now that Defendants have complied with this Court's preliminary injunction, it appears they want to reverse course and have these newly identified parents file individual cases throughout the country. However, forcing individual parents to bring separate lawsuits challenging separation from their children makes little sense when precisely that same legal claim has already been certified for class treatment in this case. It also ignores the harsh reality of this case, namely that 471 parents in the presently defined class were removed from this country without their children. (ECF No. 382 at 6.) Unless members of the newly proposed class are identified, it will remain unknown how many of them, if any, were also removed without their children, though it is probable that many will have suffered the same fate as the 471 parents mentioned above. The ability of any such removed parents to pursue individual claims in this country would be virtually impossible.

Defendants also argue the Court should not modify the class definition because this is not the proper forum in which to account for the parents who were separated from their children at the border by DOJ and DHS, and whose children were released from ORR custody prior to June 26, 2018. (ECF No. 364 at 54.) Specifically, at the hearing on this matter, defense counsel argued: "Litigation doesn't necessarily exist to resolve every issue …." (*Id.*) Instead, counsel noted, other branches of government can get to the bottom of the issue. (*Id.* ("The executive branch itself with OIG Reports … is a possibility."))

The other branches, of course, are free to investigate these issues, and they are doing so. In addition to OIG, Congress has been holding hearings on these issues and issuing subpoenas to the Defendants in this case. *See,* Colleen Long*, House Targets Family Separations in First Trump Subpoena*, AP News (Feb. 26, 2019), https://www.apnews.com/0b012aaaa6454a10a585eb4a848c8541; Colleen Long et al., *Kirstjen Nielsen testifies on border security, future of border wall*, PBS News (Mar. 6, 2019, 5:17 PM EST), https://www.pbs.org/newshour/politics/watch-live-homeland-security-secretary-kirstjen-nielsen-testifies-before-house-committee. Clearly, the matter

of determining the "number and status of separated children" who have entered ORR care at any point in time because of the Administration's family separation policy is not going away. Every branch of government is now invested in the process. But that does not mean the Court should abdicate its role in this matter. The quintessential duty of the courts is to determine controversies involving matters of constitutional significance; to ensure that the actions of government officials do not violate fundamental constitutional rights, and if they do, to address them. *See Marbury v. Madison*, 5 U.S. 137, 178 (1803) (stating the resolution of constitutional questions "is the very essence of judicial duty."); *The Federalist No. 78* (Alexander Hamilton) (stating it is the "duty" of the courts "to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing.")

This Court has before it a case involving a class of parents who were separated from their children at the border by DOJ and DHS pursuant to government policy. The present motion asks the Court to modify the class definition to include all parents who were subjected to that policy, not just those whose children were in ORR custody on June 26, 2018. That question clearly falls within the scope of this case, and the Court has an obligation to resolve that question and to provide relief to these parents, if appropriate under law. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm[.]").

Defendants' final argument is essentially one of equity. Specifically, they argue they have been operating under the assumption that the class was limited to parents whose children were in ORR custody on June 26, 2018, and it would be unfair to them to now enlarge the class and force them to identify and reunify these other parents and their children. This argument overlooks the profound importance of the reunification effort, which entailed a search for parents who had been separated from their minor children under questionable circumstances; it ensured every reasonable effort was employed to avoid the very real possibility of a permanently orphaned child due to the actions of one or more

government officials.  Whether it is fair to Defendants to require them to identify and possibly reunite another group of parents and children who were separated pursuant to the same government policy is not relevant to the purely legal issue presently before this Court, *i.e.*, whether the class definition in this case should be modified.  The factors relevant to that inquiry have been discussed above, and they warrant modification of the class definition here.

The hallmark of a civilized society is measured by how it treats its people and those within its borders.  That Defendants may have to change course and undertake additional effort to address these issues does not render modification of the class definition unfair; it only serves to underscore the unquestionable importance of the effort and why it is necessary (and worthwhile).

In sum, that Plaintiffs were alerted to the existence of a handful of parents within this group, and that subsequent investigation by the OIG confirmed that there was not just a handful but potentially thousands of parents in this group, does not render modification of the class definition unfair.  Rather, modification of the class definition falls squarely within the confines of Supreme Court precedent and Rule 23(c)(1)(C), which give courts broad discretion to alter or amend a class definition considering subsequent developments in a case.  *See Armstrong v. Davis*, 275 F.3d 849, n.28 (9th Cir. 2001) (stating district courts have "broad discretion" to revisit class certification "throughout the legal proceedings before the Court."), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

Subsequent developments have occurred here, and the modified class, like the original class, satisfies the requirements of Rule 23.  Accordingly, Plaintiffs' motion to modify the class definition is granted.  The previously certified class is modified as follows:

> All adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017, who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained

in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.[6]

Although the parties addressed the issue of the relief to be afforded to the newly included class members both in their briefs and at oral argument, the Court declines to resolve that issue in the present order. Rather, pursuant to Defendants' request, the Court stays application of its preliminary injunction to the newly included class members pending further briefing from the parties as to what specific relief Plaintiffs request and are entitled to at this stage of the case. The parties should be prepared to address these issues in the next JSR.

**IT IS SO ORDERED**.

Dated: March 8, 2019

Hon. Dana M. Sabraw
United States District Judge

---

[6] The class as modified is subject to the same qualifications as the originally certified class with respect to, for example, criminal history and communicable disease. (ECF No. 82 at 10-11, 17 n. 10.)