UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.,<br><br>        Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>        Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>Hon. Dana M. Sabraw |

## DECLARATION OF JONATHAN WHITE

I, Jonathan White, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I am a Commander with the United States Public Health Service Commissioned Corps, and have served at the Department of Health and Human Services ("HHS") in three successive presidential administrations. I am presently assigned to the Office of the Assistant Secretary for Preparedness and Response ("ASPR"), and previously served as the Deputy Director of the Office of Refugee Resettlement ("ORR").

2. The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties, information supplied to me by federal government employees, and government records.

3. I am providing this declaration for use by the Defendants and the Court in *Ms. L. v. ICE*, No. 18-cv-428 (S.D. Cal.).

**Background and Recommended Methodology**

4. My understanding is that on March 8, 2019, this Court expanded the class in *Ms. L*. The class is now defined as: "All adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017, who (1) have been, are, or will

1

be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child." ECF No. 386. The same qualifications apply to the original and expanded classes. "[T]he class does not include migrant parents with criminal history or communicable disease, or those who are in the interior of the United States or subject to the EO." ECF No. 82.

5. The Defendants have previously identified the children of potential *Ms. L.* class members who were in the care of ORR on June 26, 2018. As I have previously explained, the process of identifying those children involved analysis of dozens of data sets from U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE), manual review of approximately 12,000 individualized ORR case management records, and reconciliation with sworn testimony from the ORR grantees caring for the children. ECF No. 347-1. Ultimately, this process "was operationally feasible because the children were still in ORR custody, and ORR grantees were able to talk with them about separation and share the information with HHS." *Id.*

6. HHS cannot use the exact same methodology to identify the children of potential class members for the class expansion period of July 1, 2017 through June 25, 2018 for three reasons. First, ORR has discharged the children in its care during the class expansion period, and thus lacks access to those children through grantees. Second, my current understanding is that CBP is likely not able to produce data sets for the time period before April 19, 2018, as CBP did not track parental separation data as a separate searchable data point prior to that time. Third, the sheer number of ORR case management records, covering approximately 47,000 children referred to and discharged by ORR during the class expansion period, would overwhelm ORR's existing resources were it to attempt a manual review of all records in date order. *See* Decl. of Jallyn Sualog, ECF No. 347-2.

7. I have therefore sought to develop a methodology to try as best as practicable to streamline and accelerate the identification of potential *Ms. L.* class members in the class

expansion population by first identifying their children. To that end, I have consulted with Barry Graubard, Ph.D., who is a senior biostatistician for the National Institutes of Health (NIH), National Cancer Institute, Division of Cancer Epidemiology & Genetics, Biostatistics Branch. NIH is an operating division of the U.S. Department of Health and Human Services (HHS).

8. Dr. Graubard has recommended pursuing a methodology that combines statistical analysis and manual review of ORR case management records. His recommendation is set forth in his declaration, which is attached as Exhibit A to the Proposed Expanded *Ms. L.* Class Identification Plan. In my testimony below, I explain how Defendants, based on the information known to them today, would likely implement Dr. Graubard's recommendation. I would serve as the HHS Operational Lead for Reunification for the implementation.

**Plan for Implementing Recommended Methodology**

9. To implement Dr. Graubard's recommended methodology, Defendants would likely need to perform approximately 12 weeks of intensive data analysis before starting manual reviews. That is, Defendants would likely need 12 weeks to format the data, perform a regression analysis, and build a prediction model to segment and prioritize manual reviews of ORR case management records for the approximately 47,000 possible children of potential Ms. L. class members for the class expansion period. This approach would involve a series of steps, outlined below, that would be informed in real time by the data and would likely evolve as implementation progresses and the Defendants refine methods based on lessons learned.

*Within Approximately 4 Weeks of Plan Activation*

10. HHS would first prepare a data set encompassing all children referred to ORR starting July 1, 2017, and discharged from ORR care prior to June 26, 2018.[1] I understand

---

[1] It is possible that some children referred to ORR care in early July 2017 would have entered the United States before July 1, 2017. Such children would not be potential children of possible *Ms. L.* class members.

3

that set to include approximately 47,000 children. *See* ECF No. 347-1.

11. Defendants would then convene a Data Analysis Team, reporting to the HHS, CBP, and ICE Operational Leads for Reunification, to conduct statistical analyses of the data set. A senior biostatistician (likely Dr. Graubard of the NIH) would serve as the Data Analysis Team lead, reporting directly to the Operational Leads for Reunification.

12. The Data Analysis Team would conduct a regression analysis of the possible children of potential class members reported in the most recent Joint Status Report, ECF No. 388, using the approximately 12,000 children who were in ORR care on June 26, 2018 as a "training set" to develop a prediction model. The Data Analysis Team would work to validate variables that may be predictive of a child having been separated from a parent (*e.g.*, the age of the child), and attempt to identify any additional demographic features of children separated from parents (as distinct from children who entered the United States without a parent). Through validation, the team would develop a prediction model correlating relevant variables with increased likelihood of parental separation.

13. We expect that the data will inform the development of the prediction model, which will evolve in an iterative, stepwise manner. During the process, the Data Analysis Team may request additional data from HHS, CBP, or ICE as appropriate.

*Within Approximately 8 Weeks of Plan Activation*

14. Once the Data Analysis Team lead determines that an initial version of the prediction model is sufficient for use, the Data Analysis Team will apply it to the approximately 47,000 children for the class expansion period, and rank order children according to their probability of being children of potential *Ms. L.* class members.

15. The Data Analysis Team would then stratify the approximately 47,000 children for the class expansion period into "bands" or "segments" based on statistical probability of parental class membership. The Defendants would prioritize the highest-probability segments for manual review of ORR case management records and any other relevant information.

16. Defendants would build and launch a team of contracted administrative staff to conduct manual reviews of ORR case management records, which are maintained on the UAC Portal. This "Case File Review Team" would follow review protocols informed by the work conducted during the 2018 reunification. They would report to the HHS Operational Lead (who would work with the ORR career staff to train them).

17. Once the manual review of the highest-probability segments begins, the Case File Review Team would begin preparing draft lists of possible children of potential *Ms. L.* class members and providing them to Defendants on a rolling, weekly basis. HHS, CBP, and ICE would review and validate these lists jointly.

18. While the Case File Review Team conducts manual review of the highest-probability segments of children, the Data Analysis Team would conduct statistical sampling of the lower-probability bands. The Case File Review Team would test the samples through blind, manual review to enable the Data Analysis Team to determine whether the sample contains any children of potential *Ms. L.* class members. The outcome of the sampling process may result in adjustments to the variables, prediction model, or segments. It may also inform the approach to manual case file review of the lower-probability bands. If, for example, the samples yield no children of potential *Ms. L.* class members, then it may become appropriate for the parties to meet and confer on further streamlining.

*Within Approximately 12 Weeks of Plan Activation*

19. HHS would review the discharge type and sponsor information in the UAC Portal to determine: (i) the type of discharge that resulted in the child exiting ORR care; (ii) whether a potential *Ms. L.* class member is the child's sponsor of record; and (iii) the name, address, and relationship of the sponsor for each child of a potential *Ms. L.* class member who was discharged to an individual sponsor.

20. Defendants would consolidate the HHS and DHS information into final, rolling lists, which DOJ would provide to Class Counsel. Where available, the rolling lists would include the names and alien identification numbers for both children and their class member

parents; their dates of apprehension; the dates children were referred to and discharged from ORR care, and the type of discharge; parent detention status; and last known parent contact information.

*Total Time for Completion*

21. Jallyn Sualog, the Deputy Director for Children's Programs for ORR, testified previously that it would likely take between 235 and 471 consecutive calendar days for 100 ORR analysts to manually review the ORR case management records for the approximately 47,000 children in ORR care during the class expansion period. If Defendants were able to hire qualified contractors, then I expect it would take at least the same number of consecutive calendar days to perform the same work on a date-ordered or randomized manual file review.

22. The goal of pursuing Dr. Graubard's recommended methodology is to identify children of potential *Ms. L.* class members in the class expansion population in a faster and more concentrated way than would occur through a date-ordered or randomized manual file review. The application of the methodology in this context is novel.

23. The time for completing the process using Dr. Graubard's recommended methodology—including manual review of ORR case management records prioritized through probabilistic segmentation—may vary for at least three reasons. First, the efficacy of the initial prediction model, and the outcomes of the sampling of the lower-probability segments, are not known at this juncture. They are likely to drive the time for completion. Second, the pace of the prioritized manual review will depend on the number of qualified contractors that Defendants are able to identify and retain for the Case File Review Team, as well as the speed with which Defendants are able to scale up the team, and the efficiencies that may or may not materialize from having a dedicated group of professionals manually reviewing case files over a period of months. Third, any meet-and-confer process that occurs after completion of the sampling phase could affect the time for completion. Many of these considerations are outside Defendants' control.

24.     Given the complexity of the task and the variables and data known to Defendants at this time, a reasonable assumption is that it will take at least 12 months, and possibly up to 24 months, for Defendants to complete the process of identifying potential *Ms. L.* class members in the class expansion population through universal manual review. The primary benefit of pursuing Dr. Graubard's recommended methodology is that, if successful, it would front-load the identification of potential *Ms. L.* class members and possibly lead to a reduction in the overall time required for manual review.

Executed on April 5, 2019.

_____
Jonathan White