Lee Gelernt
Judy Rabinovitz
Anand Balakrishnan
Daniel Galindo
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
skang@aclu.org
samdur@aclu.org

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L. et al., *Petitioners-Plaintiffs*, v. U.S. Immigration and Customs Enforcement ("ICE"); et al., *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD<br><br>Date Filed: April 15, 2019<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED PLAN REGARDING IDENTIFICATION OF EXPANDED *MS. L.* CLASS** |

# INTRODUCTION

The government has proposed a plan that will take at least one year — and possibly up to two full years — to identify separated parents whose children were released prior to June 26, 2018. Dkt. 394-1 at 2. That incredible request shows a callous disregard for these families and should be rejected. These children were separated at least 10 months ago, before June 26, 2018. For some of these children, that may be nearly a lifetime.

Specifically, the government proposes a plan that would (1) allow an initial three months just to build a statistical model to prioritize the order in which the government will review files, and then (2) give the government another 21 months to review the files. Everything about the plan is flawed.

First, a list of separated children already very likely exists for children who were separated from their parents and released from ORR custody between April and June 26, 2018. This is because the government began assigning Family Unit numbers in April of 2018, enabling CBP to track families that were separated. By cross-referencing CBP's list of separated children with ORR's list of children released from ORR custody, the government could immediately identify the separated children it released to sponsors between April and June 2018, assuming that list does not already exist. That would immediately reduce the number of cases the government has to review. It is a serious breach if that list does in fact exist (or could have been immediately generated) and has not been mentioned by the government.

Second, even if the government must review all the cases for the full period at issue here (July 2017 – June 26, 2018), the government should be able to perform this task in three months or less based on its past practice during the initial reunification period last summer. Yet the government wants three months just to create a statistical model before even beginning to review any files. If the government wants to prioritize how it reviews files, that of course is fine. But its

time estimates are wholly insufficient given that the <u>entire</u> review of <u>every</u> file can be done within 3 months.

Moreover, and critically, the government's plan will not only take far too long, but it also will not be effective. That is because the government is not proposing to review the <u>paper</u> files kept by case managers at the individual ORR facilities where the children were held. Rather, the government is proposing to look only at a computer portal maintained by ORR. Dkt. 394-2 at ¶ 9. But those portals contain only a portion of the case managers' paper files and frequently will contain no information about whether or not the child was separated.

The government should therefore issue an immediate directive to case managers at ORR facilities around the country to review their paper files for separations, like the government did in the days immediately following the issuance of the preliminary injunction. The files are generally very thin and Plaintiffs' experts conservatively estimate, based on their own review of files, that each should take on average no more than 30 minutes. Moreover, the case managers will be familiar with where they recorded information about separated parents in their own files, so can likely do their review in less than 30 minutes. Notably, this is similar to what the government did when the court ordered the government to reunite the initial group of children (the approximately 2,500 in ORR custody on June 26); ORR's case managers conducted a file review for more than 11,000 children within a week.

<u>Third</u>, the government is proceeding as if HHS is solely responsible for undertaking the task of identifying families. But ICE and CBP also have records of separations, and DHS was of course the agency that separated the children. In particular, the I-213 Form that DHS agents fill out to document apprehensions may often contain a notation that the child was separated. Consequently, if the ORR files do not indicate whether the child was separated, the government should be required to immediately check the I-213 Form – along with any other information

in DHS's possession. This information includes an "Event ID number," which is issued to every person arrested by CBP <u>and shows who they were arrested with</u>. Because children arrested with their parents will share the same Event ID number, the government can find additional separations by looking for children who were arrested with an adult who shares a last name. These numbers thus provide a critical backstop if the case manager file and I-213 Form are not conclusive.

In sum, the government's unnecessarily long timeframe will only compound the harm the government has already inflicted on separated families. Ultimately, the government is simply refusing to prioritize the welfare of these children and families. The government initially argued that it should not even have to identify these families. Now it has submitted a plan that shows little regard for them and certainly not the urgency warranted where the lives of young children are at stake. The process of identifying the victims of the government's separation policy is the first step to ensuring that no child is permanently orphaned.

## DISCUSSION

### A. The Government Must Produce Any Existing Lists of Separated Families Who Are Members of the Expanded Class.

Plaintiffs believe that government agencies outside of HHS likely have already compiled lists of all, or nearly all, separations from April 2018 to June 26, 2018. That is because, according to a GAO report, the government in April instituted a more formal family identification system that allowed them to generate lists of parents and children who were separated. *See* GAO Report, Unaccompanied Children: Agency Efforts to Reunify Children Separated from Parents at the Border (October 2018) [hereinafter "GAO Report"] at 17, available at https://www.gao.gov/assets/700/694918.pdf ("According to Border Patrol officials, Border Patrol modified its system on April 19, 2018, to include yes/no check boxes to allow agents to indicate that a child was separated from their parent(s)."). *See also* Brané Dec. ¶3. When this court ordered the government to reunify the original class of children, the government created a list that it provided to Plaintiffs of

separated children still in ORR custody on June 26. But it is likely that a list was also generated for all family units separated since the government started assigning identification numbers to separated families in April 2018. That list would include children who were released from ORR between April and June.

Accordingly, the Court should order all three relevant agencies – ORR, CBP and ICE – to provide an account of any lists of separated children, or provide declarations from high-level agency officials testifying that such lists do not exist for *any* subset of the expanded class definition. And if such lists do exist (or could have been generated in a matter of hours or days), the declarations should also explain why they were not mentioned in the government's proposal.

Even a limited list of families separated between April and June 26 would go a long way towards identifying at least a portion of the expanded class.

**B.      The Government Should Start Reviewing Paper Case Files Immediately Instead of Waiting Three Months to Perform a Statistical Analysis.**

1.      Even taken on its own terms, the government's extended timeline is unreasonable. The government initially proposes that manual review begin only after a three-month statistical analysis. But this delay is too long, and in any case unnecessary. The government says that after three months of development it would "*try* to apply [its data model] it to the available data for. . . approximately 47,000 children," and that "[i]t is *possible* that it *could* [] reduce the overall time required for manual review." Graubard Dec. (Dkt. 394-3) ¶¶ 13, 15 (emphasis added). But the government does not deny that it needs to review all children's files regardless of the results of the statistical analysis. Nor can it, because even a low error rate in the government's statistical model could lead to hundreds, if not thousands, of missed separations.

In other words, the government appears to acknowledge that *all* children's files must be reviewed anyway because their proposed data models will necessarily be imperfect. Waiting three months to prepare a data model is therefore needless. That is especially so since <u>all</u> the files can be reviewed manually within three

months, as described further below. If the government is going to try to prioritize how it manually reviews cases, then it must do so quickly and in a way that does not lengthen the three-month period for completing review of all the files.[1]

2. As importantly, the government's plan for reviewing cases by looking solely at ORR's UAC portal will not come close to identifying all the separated families.[2] The portal contains only the subset of information that case managers chose to upload from their paper files. Between July of 2017 and April 2018, there was no field on the portal to record separations. Any information in the portal about separations would have therefore been included only if the case manager happened to upload it, which did not happen on a regular basis.

The paper case files developed by ORR case managers are therefore far more likely to include notations of separation, but not all of these documents are

---

[1] Moreover, to prioritize, the government need not spend the time creating a statistical model that it acknowledges will be imperfect. The government can quickly prioritize by simply looking at the age of the child. For instance, most children under 10 do not come by themselves, making it more likely that they were separated from a parent or legal guardian. Additionally, the government could prioritize records of children transferred to ORR from the El Paso area, where the government implemented a family-separation pilot project before the zero tolerance policy began, and where the bulk of the known early separations occurred beginning in the Fall of 2017.

[2] Although Plaintiffs do not believe the portal should be used, the government's estimates for the time it will take to review portal files is unreasonable. The government states that each child's UAC portal contains about 10-20 documents, and that it would take at least 5 to 15 minutes to download each document. Sualog Dec. (Dkt. 351-1) ¶ 18. The government apparently envisions that each analyst who is reviewing the files will first download the files and then review them. Based on this estimate, the government estimates that each analyst will review only one or two files per work day. At this pace, 100 analysts would need one to two years to review 46,000 files, at a pace of a maximum of two files a day. Sualog Dec. ¶ 18; 4/5/19 White Dec. (Dkt. 394-2) ¶ 21. But there is absolutely no reason for the process to move at such a glacial pace, even if portals were going to be used. For example, the government can allocate resources up front to have employees download and copy documents for analysts to then review.

accessible through the ORR portal system, and in fact they frequently will not be. Consequently, it is thus imperative that the government perform a manual review of ORR paper files compiled by case managers at the various facilities around the country.

This review of the paper files in the various ORR facilities can be done within three months, and certainly need not take one to two years. Plaintiffs' experts have reviewed ORR files (produced by the government in response to records requests). Turner Dec. ¶ 3. A conservative estimate is that it takes 30 minutes, at most, to review an ORR file to identify indicia of separation; in many cases, it takes as little as ten minutes. *Id.* ¶ 5. But even assuming it will take a full 30 minutes per file, 100 case managers could review all 47,000 files within 29 work days, or six work weeks. And case managers at the ORR facilities, given their greater familiarity with their own notations, organizational methods, and the children formerly in their care, will likely be able to perform this task even faster.

Significantly, when the government put together the original list of separated families last summer, it used the case managers at ORR's facilities to conduct a similar review. As Commander White stated in a previous declaration about compiling the original class list last summer:

> To ensure that every separated child in ORR custody who belongs to a class member is identified and reunified, HHS has had each grantee at one of ORR's approximately 110 shelters certify the separated children who the grantee reasonably believes are in its care. HHS has also conducted a full manual review of the case management file for each one of the approximate 11,800 children in ORR custody—the substantial majority of whom were not separated from a putative parent at the border—to confirm or rule out any indicia of separation. The manual review was conducted by dozens of HHS personnel working nights and over the weekend. The results of both the manual review and the grantee certifications are undergoing validation.

Dkt. 86-1 (July 5, 2018 White Dec.) ¶ 18. Commander White gave this testimony on July 5, 2018, a mere ten days after the preliminary injunction

6

18cv0428

issued. So apparently ORR performed this review of nearly 12,000 files within <u>approximately ten days</u>.

### C. The Government Should Also Review ICE/CBP Files.

In addition to reviewing ORR case manager files, the government should simultaneously review CBP and ICE files, or at an absolute minimum, review them whenever the ORR file is not determinative.

For instance, DHS files will contain Form I-213, "Record of Deportable/Inadmissible Alien," which is completed upon apprehension and may often include a notation from the agent about separation. Unlike many other DHS forms, it contains a narrative section where the officer and agents processing parents and children can record information that is not otherwise captured in data-entry fields. Although the I-213 may occasionally be sent to ORR and end up in the case manager's file, that will not always be true. *See* GAO Report at 19, n. 49 ("CBP officials reported that prior to May 5, 2018, the Form I-213 was provided to ORR on a case-by-case basis and CBP did not require agents to include this form in its transfer packet."). A review of the Form I-213—which can be electronically pulled up from DHS's computer systems based on the alien identification number attached to each child who was transferred to ORR—is thus a critical backstop.

The government also should use the Event ID number assigned by DHS for each incident because, prior to April 2018, CBP did not always note a separation on the I-213. But when CBP arrests a group, every individual arrested during that incident receives the same Event ID number. Brané Dec. ¶4. Consequently, by using the child's Event ID number, the government can determine if any adult was arrested at the same time with a same name, thus indicating they are a potential class member.[3]

---

[3] The government has previously used similar methods. Immediately after the June 26, 2018 injunction, a "data team (with the support of ORR, other HHS operating and staff divisions, and DHS sub-agencies) mined more than 60 DHS and HHS databases to identify indicators of possible separation, such as an adult and

In sum, review of the ORR case manager paper files will hopefully be sufficient, but DHS should not be allowed to skirt responsibility for remedying the problem it created by unconstitutionally separating families and then not keeping accurate, accessible records. DHS records must be utilized in conjunction with the ORR file review.

## CONCLUSION

The Court should order the government to complete the identification process within three months and provide the information on a rolling basis. And if a list exists for separated children who were released from ORR custody between April and June 2018 (or can be generated in hours or days), that list should be provided within 7 days.

Specifically: Plaintiffs respectfully ask the Court to order that the government:

- Instruct case managers immediately to begin reviewing the ORR files in their possession;

- Assign DHS to review I-213s and Event ID numbers in the event that review of ORR files is inconclusive;

- Immediately produce any lists of children who were separated and released between April and June 2018, and if such lists exist, to explain in a declaration why they were not previously mentioned; and

- Complete the identification process within three months and provide the information on a rolling basis.

---

child with the same last name apprehended on the same day at the same location." GAO Report at 7.

| | | |
|---|---|---|
| 1 | Dated: April 15, 2019 | Respectfully Submitted, |
| 2 | Bardis Vakili (SBN 247783) | */s/ Lee Gelernt* |
| 3 | ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES | Lee Gelernt* Judy Rabinovitz* |
| 4 | P.O. Box 87131 | Anand Balakrishnan* |
| 5 | San Diego, CA 92138-7131 T: (619) 398-4485 | Daniel Galindo* AMERICAN CIVIL LIBERTIES |
| 6 | F: (619) 232-0036 | UNION FOUNDATION |
| 7 | *bvakili@aclusandiego.org* | IMMIGRANTS' RIGHTS PROJECT 125 Broad St., 18th Floor |
| 8 | Stephen B. Kang (SBN 2922080) | New York, NY 10004 |
| 9 | Spencer E. Amdur (SBN 320069) AMERICAN CIVIL LIBERTIES | T: (212) 549-2660 F: (212) 549-2654 |
| 10 | UNION FOUNDATION | *lgelernt@aclu.org* |
| 11 | IMMIGRANTS' RIGHTS PROJECT 39 Drumm Street | *jrabinovitz@aclu.org* *abalakrishnan@aclu.org* |
| 12 | San Francisco, CA 94111 | |
| 13 | T: (415) 343-1198 F: (415) 395-0950 | *Admitted Pro Hac Vice* |
| 14 | *skang@aclu.org* | |
| 15 | *samdur@aclu.org* | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt, Esq.
Dated: April 15, 2019