**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al. <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: April 15, 2019 <br><br> **DECLARATION OF CHRISTINA E. TURNER** |

**Declaration of Christina E. Turner**

1. I am currently employed as the Deputy Director for Special Programs at Kids in Need of Defense (KIND). I have been employed by KIND for over five years and have focused my work on the representation of unaccompanied minors in immigration legal proceedings during that time.

2. KIND is currently working with more than 300 individuals—adults and children—that were separated by U.S. government officials upon entry to the United States in 2017 and 2018. In my capacity as Deputy Director for Special Programs, I oversee a team of attorneys working on the cases of separated (and, in some cases, reunified) children and families.

3. In our work with unaccompanied and separated minors, attorneys at KIND frequently submit records requests to the Office of Refugee Resettlement (ORR) to obtain the child's file from their time in custody (the "ORR file"). After submitting the request for the file, ORR typically sends an email containing a pdf file. The ORR file ranges in number of pages depending on the length of time the child was in ORR

custody and the child's particular needs.  It is my understanding that the ORR file that attorneys receive through this records request process contains all or substantially all of the relevant information contained within ORR's complete case management files for each child that has been in its custody.

4.     In the past week, I have viewed 10 different ORR files of KIND clients, ranging in length from 52 pages to 334 pages long.  I selected files that had been categorized in our database as separated family cases. These files included children that entered the U.S. in both 2017 and 2018.

5.     In reviewing these 10 files manually, page-by-page, it took me between 3 and 20 minutes per file to detect indicia of separation from a parent or guardian within the file.  For some files, an indicator of separation, such as a note that the parent entered the U.S. with the child, was quickly apparent because it was contained within the UAC Assessment portion of the file.  Presumably, ORR employees or contractors accessing the UAC portal directly would be able to jump quickly to this portion of the child's file, and in some cases, would be able to see a note that the child entered the U.S. with a parent or guardian.

6.     In one file I reviewed, it took me approximately five minutes of reviewing the file to spot a note that indicated the 12-year-old minor had traveled to the U.S. with his mother in February of 2018.  About 15 minutes into reviewing the remainder of the 106-page file, I encountered a copy of a "Significant Incident Report" on page 105 of the file.  The content of the report focused on the child's disclosure of having been separated from his mother at the border.

7.     In another file I reviewed of a 17-year-old minor who entered the U.S. in May of 2018, I encountered another Significant Incident Report three minutes into viewing the file (on page five of a 79-page file) indicating that the minor disclosed being separated from his biological father while in DHS custody.

8.      In order to conduct a review of non-separated files as well, I emailed four different ORR files to an attorney on my team who I supervise and instructed him to review each file to try to discern if any of the files involved children who had been separated from a parent or guardian upon entry.  Two of the files were for minors who were separated at the border upon entry, and two files were for typical unaccompanied minors who did not enter with a parent.  My supervisee did a manual, page-by-page review of each file and reported that it took him approximately five minutes to conclusively determine whether the child was separated.  As an additional check, he then performed a search of each file using the optical character recognition tool in Adobe Acrobat Pro DC software.  For each file, it took Adobe between five and 15 minutes to enhance the pdf document for optical character recognition.  After the enhancement ran, my supervisee was able to run a search for keywords such as "parent," "separate," "mother" and "father" very quickly, and locate these terms, if they appeared in the document and were recognized by the program, within just a few minutes, leading to sections of the document containing information about the minor's parents.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.  Executed on April 15, 2019.

_____/s_____
Christina E. Turner