UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
 _____ )
                                     )
MS. L., ET AL.,                      )
                                     ) CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,  )
                                     )
VS.                                  )
                                     )
                                     )
                                     )
                                     )
U.S. IMMIGRATION AND CUSTOMS         )  SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,         ) THURSDAY APRIL 25, 2019
                                     )   1:00 P.M. CALENDAR
            RESPONDENTS-DEFENDANTS.  )
 ------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE


REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           STEPHEN KANG, ESQ.
                           DANIEL GALINDO, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SCOTT STEWART, ESQ.
                           SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


ALSO APPEARING:            COMMANDER JONATHAN WHITE
                           BRIAN STIMSON, HHS
                           JAY VISCONTI,CBP
                           STEVEN HERZOG
                           JEAN-MICHEL VOLTAIRE, HHS
```

 1   SAN DIEGO, CALIFORNIA – THURSDAY, APRIL 25, 2019 – 1:05 P.M.

 2                                    *   *   *

 3              **THE CLERK:**  NO. 7 ON CALENDAR, CASE NO. 18CV0428,

 4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

 5   STATUS CONFERENCE.

 6              **THE COURT:**  GOOD AFTERNOON.

 7              MAY I HAVE APPEARANCES, PLEASE?

 8              **MR. GELERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE

 9   GELERNT FOR MS. L.

10              AND I WOULD LIKE TO INTRODUCE, WITH THE COURT'S

11   PERMISSION, MR. HERZOG FROM THE STEERING COMMITTEE WHO IS HERE

12   TODAY IN PERSON.

13              **THE COURT:**  GOOD AFTERNOON.

14              **MR. HERZOG:**  NICE TO MEET YOU, YOUR HONOR.

15              **THE COURT:**  AND WE HAVE STEVE KANG AND DANIEL

16   GALINDO.

17              THANK YOU.

18              AND FOR THE DEFENSE.

19              **MR. STEWART:**  SCOTT STEWART FOR THE DEFENDANTS, YOUR

20   HONOR.

21              **MS. FABIAN:**  SARAH FABIAN FOR THE DEFENDANTS, YOUR

22   HONOR.

23              **THE COURT:**  THANK YOU.

24              I HAVE NOTATION THAT COMMANDER WHITE IS HERE.

25              GOOD AFTERNOON.

APRIL 25, 2019

```
 1              COMMANDER WHITE:  GOOD AFTERNOON, YOUR HONOR.

 2              THE COURT:  AS WELL AS BRIAN STIMSON, HHS, OGC.

 3              MR. STIMSON:  YES, YOUR HONOR.  THANK YOU.

 4              THE COURT:  AND JAY VISCONTI FROM CBP.

 5              MR. VISCONTI:  YES.

 6              THE COURT:  THANK YOU.

 7              AND THERE IS A GENTLEMAN HERE TO MY FAR RIGHT.

 8              MR. VOLTAIRE:  JEAN-MICHEL VOLTAIRE HHS, OGC.

 9              THE COURT:  THANK YOU.

10              VERY NICE TO SEE EVERYONE IN PERSON AGAIN.

11              I READ EVERYTHING.  IT APPEARS THAT THE MEETING ON

12      APRIL 22 WAS PRODUCTIVE.

13              MR. GELERNT:  YES, YOUR HONOR.  FROM OUR STANDPOINT,

14      YES.

15              THE COURT:  IT APPEARS THAT THE KEY PLAYERS WERE

16      PRESENT, COMMANDER WHITE, MR. VISCONTI, AND OTHERS.

17              MR. GELERNT:  YES, YOUR HONOR.

18              THE COURT:  AND FOR THE STEERING COMMITTEE MEMBERS

19      YOU HAD THE PEOPLE THERE THAT YOU NEEDED THERE.

20              MR. GELERNT:  WE DID, YOUR HONOR.

21              THE COURT:  ALL RIGHT.

22              IS THERE ANY PARTICULAR WAY YOU WOULD LIKE TO

23      PROCEED?  THERE IS NOT A REQUEST FOR ANY EVIDENTIARY

24      PROCEEDING.  THIS IS MORE INFORMATIONAL BASED ON THE

25      DECLARATIONS THAT WERE PROVIDED?
```

APRIL 25, 2019

**MR. GELERNT:** YES, YOUR HONOR.  WE DID NOT ACTUALLY
UNDERSTAND YOU TO BE WANTING COMPETING TESTIMONY AT THIS
HEARING SO WE DID NOT BRING ANY EXPERTS.

BUT WHAT I WOULD SAY JUST OVERALL IS I THINK IN
LIGHT OF THE FILINGS THIS MORNING THE ISSUES HAVE
SUBSTANTIALLY NARROWED, AND I THINK MAYBE WE ARE PRETTY MUCH
WHERE WE ARE.

I DON'T KNOW WHETHER THE GOVERNMENT WAS PLANNING TO
PUT THE COMMANDER ON.  WE WOULD PROBABLY HAVE SOME CLARIFYING
QUESTIONS.

BUT WHAT I THINK OVERALL IS OUR POSITION IS THAT THE
GOVERNMENT NOW SEEMS TO BE SAYING A GOAL OF SIX MONTHS IS NOT
UNREALISTIC AND THAT IS WHAT THEY ARE SHOOTING FOR.  WE
BELIEVE -- YOU KNOW, AS WE SAID IN OUR FILING WE BELIEVE IT
COULD BE SHORTER, BUT WE ARE WILLING TO GO WITH THAT SIX
MONTHS.

AND WE DO BELIEVE THAT THERE MAY BE SOME HARD CASES
WHERE THERE IS JUST NO EVIDENCE ONE WAY OR THE OTHER, THOSE
CAN BE PUT ASIDE.  BUT THAT THE SIX MONTHS SHOULD BE A
DEADLINE.

AND WE BELIEVE THAT THE REASON THE FIRST
REUNIFICATION WORKED AS WELL AS IT DID -- AND I THINK THE
COMMANDER SAID THIS IN HIS CONGRESSIONAL TESTIMONY -- IS
BECAUSE YOU CREATED A PATHWAY.  I THINK DEADLINES ALWAYS
CREATES SOME URGENCY.  THE GOVERNMENT COULD ALWAYS COME BACK

APRIL 25, 2019

1   AND SAY THERE IS A HANDFUL OF CASES -- JUST LIKE WITH THE

2   DEPORTED PARENTS ORIGINALLY -- THAT WE ARE HAVING TROUBLE

3   IDENTIFYING.  BUT THAT A SIX-MONTH DEADLINE IS REALISTIC.

4           AT A MINIMUM WE WOULD SAY THAT IF SIX MONTHS IS

5   GOING TO BE THE GOAL THAT THE MONTHLY REPORTS BE VERY

6   TRANSPARENT AND LET YOU KNOW WELL IN ADVANCE, LOOK, WE ARE

7   HITTING SOME TYPE OF OBSTACLE AND THE SIX MONTHS MAY NOT BE AS

8   REALISTIC, WE MAY BE LOOKING AT MORE TIME, SO THAT THE PARTIES

9   COULD THEN WEIGH IN AND FIGURE OUT WHAT IS ACTUALLY THE

10  PROBLEM IN HITTING THE SIX MONTHS AND MAYBE JOINTLY COME UP

11  WITH SOME SOLUTION.

12          I THINK THAT IS WHERE WE ARE.  WE DO BELIEVE IT HAS

13  BEEN SUBSTANTIALLY NARROWED AND WE WOULD JUST ASK THAT THE 12

14  TO 24 MONTHS NOT BE HANGING OUT THERE BECAUSE WITHOUT A

15  DEADLINE, WITH THAT LENGTHY PERIOD, I THINK THERE IS ALWAYS A

16  CHANCE OF BUREAUCRATIC SLIPPAGE.

17          AND I WOULD BE SURPRISED IF COMMANDER WHITE DIDN'T

18  SAY THAT YOUR EARLIER DEADLINES -- THE DEADLINES IN THE

19  INITIAL REUNIFICATION PROCESS WEREN'T HELPFUL IN MOBILIZING A

20  LARGE BUREAUCRACY.

21          SO THAT IS WHERE WE STAND.  I THINK IT IS NOT SO

22  DIFFERENT FROM WHERE THE GOVERNMENT IS OTHER THAN THEY WOULD

23  PREFER, OBVIOUSLY, BECAUSE THEY WOULD NEVER WANT A DEADLINE.

24  THEY DON'T WANT A DEADLINE, I THINK THEY PREFER TO HAVE THIS

25  12 TO 24.  I DON'T WANT TO SPEAK FOR THEM, BUT I DO THINK THE

APRIL 25, 2019

1   ISSUES ARE SUBSTANTIALLY NARROWING IT.  ROLLING BASIS, THEY

2   ALWAYS SAID THAT.  WE APPRECIATE THAT, AND THEY ARE STICKING

3   TO THAT.

4           AND I THINK THE OTHER THING THAT WAS CLARIFIED IS

5   THEY WILL BE REVIEWING FILES AND PRODUCING, EVEN WHILE THE

6   STATISTICAL MODEL IS BEING CREATED.  THAT IS CRITICAL.  I

7   DON'T UNDERSTAND THE GOVERNMENT, IN PRINCIPLE, TO HAVE A

8   PROBLEM WITH TRANSPARENT MONTHLY REPORTS FOR PROGRESS.

9           I THINK WE ARE PRETTY MUCH WHERE WE NEED TO BE.  AND

10  WE DON'T NECESSARILY SEE GETTING INTO A LOT OF WEEDS HERE.  WE

11  DON'T WANT TO MICROMANAGE THE PROCESS.  WE CERTAINLY HAVE

12  QUESTIONS ABOUT IT, BUT WE ARE HAPPY TO LET COMMANDER WHITE DO

13  THIS PROCESS.  WE WERE JUST ULTIMATELY CONCERNED ABOUT THE

14  LENGTH OF TIME.

15          **THE COURT:**  ALL RIGHT.

16          MR. STEWART, LET'S HOLD OFF ON THE TIME IN WHICH ALL

17  OF THIS SHOULD BE ACCOMPLISHED, BUT FOR PURPOSES OF TODAY'S

18  PROCEEDINGS I HAVE A NUMBER OF QUESTIONS, PROBABLY OF

19  COMMANDER WHITE.  DOESN'T SEEM TO ME THEY NEED TO BE UNDER

20  OATH, I THINK HE COULD SIMPLY ANSWER QUESTIONS.  THEN IF MR.

21  GELERNT HAS ANY FOLLOW-UP INQUIRY WE CAN PROCEED THAT WAY.

22          DO YOU AGREE?

23          **MR. STEWART:**  I THINK IT WOULD BE GREAT TO KEEP IT

24  INFORMAL THAT WAY, YOUR HONOR.  IF I COULD PRESENT A PATH THAT

25  I THINK WOULD BE USEFUL.


APRIL 25, 2019

1     **THE COURT:**  YES.

2     **MR. STEWART:**  YOUR HONOR, I THINK YOU HAVE DONE WELL

3  TO EMPHASIZE JUST THE PUBLIC INTEREST, THE TRANSPARENCY, YOU

4  KNOW, HEY EVERYONE, HERE IS THE PROCESS THAT WE THE GOVERNMENT

5  ARE USING.  HERE IS HOW IT SHOULD UNFOLD.  HERE IS THE

6  THINKING BEHIND IT.

7     EVEN IN SOME -- EVEN TO THE EXTENT THE PARTIES HAVE

8  REACHED AGREEMENT I THINK IT WOULD BE HELPFUL FOR THE

9  COMMANDER TO JUST PROVIDE THAT CONTEXT, GIVE A LITTLE VOICE.

10  EXPLAIN HOW THE PLAN THAT HE HAS WORKED TO PUT TOGETHER

11  ADDRESSES THINGS, WHY THE TIMEFRAME IS WHAT IT IS.  EXPAND,

12  ADD SOME COLOR ON HIS DECLARATION.

13     SO I THINK THAT WOULD BE USEFUL, YOUR HONOR, IF I

14  COULD JUST PROPOSE A POSSIBILITY.

15     **THE COURT:**  YES.

16     **MR. STEWART:**  I THOUGHT IT WAS USEFUL LAST SUMMER

17  WHEN COMMANDER WHITE WAS ABLE TO COME HERE AND PRESENT THINGS.

18  AND I THINK A SIMILAR APPROACH, I THINK YOUR HONOR MENTIONED

19  LAST WEEK THAT THESE THINGS, TO A LAY OBSERVER, WHICH I

20  PARTAKE OF SOMEWHAT MYSELF, IT CAN TAKE -- IT CAN HELP WITH

21  SOME COLOR DIRECTLY FROM THE EXPERT.

22     TO THAT END, AS YOU HAVE NOTED, MY COLLEAGUE FROM

23  HHS, MR. BRIAN STIMSON, IS HERE.  HE, OF COURSE, PRESENTED

24  MR. WHITE -- COMMANDER WHITE LAST TIME.  I THINK IT WOULD BE

25  VERY EFFECTIVE -- THEY HAVE WORKED TOGETHER AND CAN, I THINK,

APRIL 25, 2019

1   PRESENT THINGS QUITE EFFECTIVELY IN ABOUT 15 MINUTES.

2          I WOULD INVITE YOUR HONOR, AS I THINK YOU SUGGESTED,

3   TO ASK ANY QUESTIONS THROUGHOUT THAT JUST TO MAKE SURE THAT

4   ALL OF YOUR OBSERVATIONS HAVE BEEN ADDRESSED.

5          AS WE TRIED TO FLAG IN OUR DECLARATION, I THINK

6   COMMANDER WHITE HAS HEARD ALL OF THOSE OBSERVATIONS, HAS TRIED

7   TO EXPLAIN THOSE, ADDRESS THOSE ON TIMELINE.  THIS ISSUE OF

8   THE LIST.  A REVIEW OF THE PORTAL VERSUS PAPER FILES.  JUST

9   THE CONCERN ABOUT A 12-WEEK RAMP-UP AND THE FACT THAT THINGS

10  WILL BE MOVING EVEN DURING THAT INITIAL 12-WEEK PHASE.  AND

11  JUST ANY OTHER ISSUES THAT THE COURT HAS IN MIND.

12         I THINK IF YOUR HONOR WOULD BE WILLING TO DO IT, I

13  THINK AN INFORMAL, MR. STIMSON WORKING WITH COMMANDER WHITE,

14  WITH YOUR HONOR'S QUESTIONS AND CLARIFICATIONS, WOULD BE A

15  VERY GOOD WAY TO GO ABOUT IT AND JUST GIVE EVERYONE INVOLVED A

16  GOOD PICTURE.

17         **THE COURT:**  THANK YOUR.  MAYBE WHAT I SHOULD

18  PROPOSE, THEN, FROM THE WAY I UNDERSTAND IT MR. STIMSON IS

19  PREPARED TO ESSENTIALLY DO A DIRECT EXAMINATION OF COMMANDER

20  WHITE TO WALK THROUGH THESE KEY POINTS IN RELATIVELY QUICK

21  ORDER.

22         **MR. STEWART:**  THAT'S RIGHT, YOUR HONOR.

23         **THE COURT:**  SO WHY DON'T WE DO THAT.  AND IT MAY BE

24  THAT WE WILL DO AS WE DID LAST TIME, SIMPLY PUT COMMANDER

25  WHITE UNDER OATH, HE CAN TESTIFY FROM THE WITNESS STAND.  I

APRIL 25, 2019

```
 1   THINK IT WILL GO VERY QUICKLY AND SMOOTHLY.

 2           MR. GELERNT CAN ASK ANY FOLLOW-UP QUESTIONS AND I

 3   CAN ASK ANY FOLLOW-UP QUESTIONS.

 4           THEN THERE WILL BE A FULL RECORD IN ADDITION TO THE

 5   EVIDENCE SUBMITTED BY WAY OF THE DECLARATIONS.

 6           DO YOU AGREE?

 7           MR. STIMSON:  YES, YOUR HONOR.

 8           THE COURT:  OKAY.

 9           SO, COMMANDER WHITE, GOOD TO SEE YOU.  IF I COULD

10   HAVE YOU SWORN AGAIN AND WE WILL HAVE YOU TESTIFY.

11           THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

12           DO YOU SOLEMNLY SWEAR OR AFFIRM THAT THE EVIDENCE

13   YOU SHALL GIVE IN THE CAUSE NOW BEFORE THE COURT SHALL BE THE

14   TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH?

15           THE WITNESS:  YES, MA'AM, I DO.

16           MR. STIMSON:  YOUR HONOR, I THOUGHT WE WOULD DO SOME

17   BRIEF LEVEL SETTING, TALK ABOUT THE DATA ANALYSIS PROCESS FROM

18   LAST YEAR AND HOW IT WILL DIFFER THIS YEAR UNDER COMMANDER

19   WHITE'S PLAN.

20           THE COURT:  YES.

21           MR. STIMSON:  THEN TALK BRIEFLY ABOUT THE DIFFERENT

22   STRUCTURES FOR THE DATA ANALYSIS THAT HE CONSIDERED.  AND THEN

23   HIT, VERY QUICKLY, SOME OF THE POINTS THAT SURFACED LAST WEEK

24   IN THE PROCEEDINGS IN THE CASE.  IF THAT IS OKAY WITH YOU.

25           THE COURT:  YES, THAT WOULD BE PERFECT.
```

APRIL 25, 2019

1    AND, COMMANDER WHITE, JUST FOR PURPOSES OF THE

2  RECORD, CAN I HAVE YOU STATE AND SPELL YOUR NAME.

3    **THE WITNESS:**  YES, SIR.  I AM COMMANDER JONATHAN

4  WHITE.  THAT IS J-O-N-A-T-H-A-N.  W-H-I-T-E.

5    **THE COURT:**  THANK YOU.

6    COUNSEL.

7                **DIRECT EXAMINATION**

8  **Q.    (MR. STIMSON)** :  SO, COMMANDER WHITE, YOU DEVELOPED A

9  PLAN TO IDENTIFY POTENTIAL CLASS MEMBERS FOR THE EXPANSION

10 CLASS PERIOD FOR RECORD REVIEW AND RECONCILIATION, CORRECT?

11 **A.**    YES, SIR, THAT'S CORRECT.

12 **Q.**    DID THE PROCESS OF RECORD REVIEW AND RECONCILIATION THAT

13 WAS UNDERTAKEN IN 2018 TO IDENTIFY CLASS MEMBERS FOR THE

14 ORIGINAL CLASS PERIOD INFORM YOUR DEVELOPMENT OF THAT PLAN?

15 **A.**    YES, WE HAVE A NUMBER OF LESSONS LEARNED FROM THAT

16 PROCESS.  AT THE SAME TIME THIS IS A NECESSARILY DIFFERENT

17 PLAN TO RESPOND TO A DIFFERENT CHALLENGE OF DEALING WITH

18 CHILDREN WHO HAVE BEEN DISCHARGED.

19 **Q.**    IN VERY BROAD STROKES, QUICKLY, CAN YOU EXPLAIN THE

20 RECORD REVIEW AND RECONCILIATION THAT WAS UNDERTAKEN ON A

21 CASE-BY-CASE BASIS IN 2018?

22 **A.**    YES.  SO, IN BRIEF, THE PROCESS THAT WE USED IN 2018

23 WITH THE CHILDREN WHO WERE IN OUR CARE, IN THE CARE OF THE

24 OFFICE OF REFUGEE RESETTLEMENT, INVOLVED FIRST IDENTIFYING IF

25 THERE WERE ANY PRELIMINARY INDICATIONS OF SEPARATION THROUGH A

APRIL 25, 2019

1    COMBINATION OF -- SIMULTANEOUSLY OF SEVERAL DIFFERENT METHODS.

2         ONE WAS WE HAD A LARGE NUMBER OF PEOPLE AT WORK DOING

3    ANNUAL REVIEW OF THE CHILD'S OFFICIAL CASE FILE RECORD FOR

4    HHS, WHICH IS IN AN ELECTRONIC CASE MANAGEMENT SYSTEM CALLED

5    THE UAC PORTAL, WHICH IS THE SYSTEM OF RECORD THAT HAS ALL OF

6    THE INFORMATION THAT WE WOULD USE IN PROVIDING CARE TO THE

7    CHILD.

8         SIMULTANEOUSLY WE ALSO HAD AN INTERAGENCY DATA TEAM

9    LOOKING AT DATASETS RECEIVED FROM SISTER AGENCIES.  AND WE HAD

10   EACH OF THE -- AT THAT TIME ABOUT 115 CARE PROVIDERS IN 17

11   STATES AROUND THE COUNTRY PROVIDE US WITH LISTS OF ALL OF THE

12   CHILDREN IN THEIR CARE WHOM THEY BELIEVED MIGHT HAVE BEEN

13   SEPARATED; WHICH THEY WERE ABLE TO DO BECAUSE OF COURSE THE

14   CHILDREN WERE IN CARE SO THEY COULD MEET WITH THE CHILDREN AND

15   ASK THEM QUESTIONS AND DO AN INTERVIEW.

16        ALL OF THIS INFORMATION WAS USED BY HHS AND THEN SHARED

17   WITH OUR INTERAGENCY PARTNERS IN CUSTOMS AND BORDER PROTECTION

18   AND IMMIGRATION AND CUSTOMS ENFORCEMENT SO THAT TOGETHER THE

19   INTERAGENCY COULD DEVELOP A PRELIMINARY LIST OF -- FOR COURT

20   PURPOSES WE CALL THE POSSIBLE CHILDREN OF POTENTIAL CLASS

21   MEMBERS.

22   **Q.**    HOW DOES THE LACK OF ACCESS TO CHILDREN WHO HAVE BEEN

23   DISCHARGED AFFECT THE ANALYSIS THAT YOU WOULD UNDERTAKE UNDER

24   THE PLAN THAT HAS BEEN PROPOSED TO THE COURT?

25   **A.**    IT IS ACTUALLY A HUGE CHANGE.  AND MOST FUNDAMENTALLY IT

APRIL 25, 2019

13

1   IS THAT I WOULD -- SO THE WAY I CHARACTERIZE IT, BECAUSE THE

2   CHILDREN ARE NOT CURRENTLY IN CARE WE CAN'T MEET WITH THEM,

3   ASK THEM ALL OF THE SAME QUESTIONS, TALK TO THEM.  AND THERE

4   AREN'T STAFF MEETING WITH THEM IN ON ONGOING WAY.  IT GREATLY

5   INCREASES THE IMPORTANCE OF THE INFORMATION THAT IS CONTAINED

6   IN GOVERNMENT RECORDS, BOTH THE INFORMATION THAT IS IN -- FOR

7   HHS IN OUR RECORDS, WHICH IS THE CHILD'S INDIVIDUALIZED RECORD

8   IN THE UAC PORTAL, AS WELL AS INFORMATION THAT WILL BE IN THE

9   POSSESSION OF ICE AND CBP.

10      THAT THE CHILDREN AREN'T IN CARE REALLY JUST MAKES THOSE

11  KINDS OF DOCUMENTS MUCH MORE IMPORTANT.  THIS HAS THE EFFECT

12  OF MEANING THAT WE NEED TO BE -- WE NEED TO STRIVE TO HAVE

13  EVEN MORE ROBUST ACCURACY AND COMPREHENSIVENESS IN THE REVIEW

14  OF THOSE RECORDS BECAUSE THAT IS REALLY WHAT WE HAVE TO WORK

15  WITH.

16  **Q.**    MR. GELERNT MENTIONED EARLIER CONCERNS ABOUT WHAT

17  HAPPENS WHEN YOU HAVE CASES THAT ARE CLOSE TO THE LINE WHERE

18  THE FACTS DON'T LEND THEMSELVES NECESSARILY TO A QUICK

19  CONCLUSION.  HOW DO YOU PLAN TO APPROACH THOSE TYPES OF

20  SITUATIONS UNDER THE LANDSCAPE THAT YOU FACE UNDER THE NEW

21  PLAN THAT YOU HAVE ARTICULATED?

22  **A.**    AT EVERY STAGE IN THE PROCESS -- AND I SHOULD TALK FOR A

23  JUST SECOND ABOUT THE ROLE OF STAGING.  AT EVERY STAGE IN THE

24  PROCESS WHERE THERE IS AMBIGUITY WE HAVE TO ERR ON THE SIDE

25  OF -- OF BELIEF THAT IS AN INDICATION OF SEPARATION.  SO IF


APRIL 25, 2019

14

1   THERE IS A JUDGMENT CALL AS TO WHETHER THERE IS A PRELIMINARY

2   INDICATION OF SEPARATION THAT CHILD SHOULD BE INCLUDED IN THE

3   PROCESS, AND PUSHED FURTHER ALONG THE STAGE FOR MORE REVIEW.

4          AND, AS A REMINDER, DIFFERENT AGENCIES HAVE DIFFERENT

5   RELEVANT DATASETS AND SOURCE -- RECORDS.  AND I AM ONLY ONE OF

6   THREE OPERATIONAL LEADS, EACH OF THE THREE AGENCIES HAS ITS

7   OWN OPERATIONAL LEAD.  HHS INFORMATION, ICE INFORMATION, CBP

8   INFORMATION WILL ALL BE USED AS WE GO THROUGH THE PROCESS TO

9   DEVELOP OUR ROLLING ACCOUNTING OF THE POSSIBLE CHILDREN OF

10  POTENTIAL CLASS MEMBERS.  AT EVERY STAGE WHERE THERE IS

11  AMBIGUITY WE NEED TO INCLUDE THEM, UNDERSTANDING THAT LATER

12  INFORMATION, EITHER GOVERNMENT INFORMATION OR IF IT GETS TO

13  THE POINT OF -- THERE IS STILL SOME AMBIGUITY AT THE POINT OF

14  THE FINAL LIST THEN THE GOVERNMENT, IN PARTNERSHIP, IN

15  DIALOGUE WITH THE ACLU WILL HAVE TO RESOLVE THOSE.

16         I WOULD SAY OPERATIONALLY THAT IT IS MUCH BETTER TO

17  HAVE, WHERE THERE IS AMBIGUITY, A FALSE POSITIVE THAN A FALSE

18  NEGATIVE SINCE WHAT WE ARE STRIVING FOR ULTIMATELY IS AN

19  ACCURATE ACCOUNTING OF SUBSTANTIALLY ALL THE CHILDREN WHO

20  WOULD MEET THESE CRITERIA AS QUICKLY AS IT IS POSSIBLE TO

21  CREATE ONE.

22  **Q.**   SO IT WOULD BE FAIR TO SAY THAT THE WAY TO MITIGATE THE

23  LACK OF DIRECT ACCESS TO THE CHILDREN IS TO ERR ON THE SIDE OF

24  INCLUSION SUCH THAT THE FINAL ROLLING LIST OF CLASS MEMBERS

25  THAT GO TO THE OTHER SIDE AS A PRODUCT OF THE EXERCISE ARE

APRIL 25, 2019

1    OVER INCLUSIVE?

2    **A.**     YES, I THINK THAT IS EXACTLY RIGHT.

3          AT THE END OF THE DAY IT IS OUR GOAL TO PRODUCE AN

4    ACCURATE ACCOUNTING.  I THINK THAT THERE -- I PERSONALLY

5    BELIEVE THERE WILL BE RELATIVELY LITTLE AMBIGUITY ONCE ALL

6    THREE AGENCIES HAVE WEIGHED IN ON ANY INDIVIDUAL CHILD'S CASE,

7    BUT AT EVERY STAGE WE SHOULD ERR ON THE SIDE OF INCLUSION

8    BECAUSE THAT IS WHAT IS GOING TO BE IN THE BEST INTEREST OF

9    THOSE WE SERVE.

10   **Q.**     SO LET'S PIVOT NOW TO TALK ABOUT THE STRUCTURE OF THE

11   REVIEW, WHICH THERE SEEMS TO BE ALIGNMENT ON AT THIS POINT.

12   BUT I DO THINK THE STRUCTURE OF THE REVIEW BEARS DIRECTLY ON

13   THE QUESTION OF TIME TO COMPLETION.

14          YOU LOOKED AT TWO OPTIONS WHEN YOU CONSIDERED -- AT

15   LEAST TWO OPTIONS WHEN YOU CONSIDERED HOW TO STRUCTURE THE

16   PLAN.  ONE WAS A RANDOMIZED OR DATE ORDERED UNIVERSAL RECORD

17   REVIEW AND RECONCILIATION AND THE OTHER WAS A PRIORITIZED

18   REVIEW AND RECONCILIATION, RIGHT?

19   **A.**     YES, SIR, THAT'S RIGHT.  SO, AGAIN, THE GOAL OF THE

20   UNDERTAKING AND THE GOAL THAT INFORMED THE PLAN THAT WE

21   DEVELOPED AND WE SHARED WITH THE COURT, THE GOAL IS TO PRODUCE

22   AN ACCURATE ACCOUNTING IN AS SHORT A TIME AS IT IS HUMANLY

23   POSSIBLE TO DELIVER AN ACCURATE ACCOUNT.

24          SO TO THAT END I LOOKED AT A NUMBER OF DIFFERENT WAYS

25   THAT WE COULD MANAGE THAT PROJECT AND LOOK AT IT FROM

APRIL 25, 2019

1  DIFFERENT POINTS OF VIEW.  AND BASED ON THAT ANALYSIS THE WAY

2  THAT WE WILL ARRIVE MOST QUICKLY AT THAT NEEDED FINAL OUTCOME

3  IS TO HAVE RIGOROUS CASE FILE REVIEW STARTING IN MOST CASES

4  WITH THE HHS DATA AND THEN PROCEEDING THROUGH THE -- THROUGH

5  DATA THAT IS IN THE KEEPING OF DHS COMPONENTS.

6      AND THAT WE SHOULD USE A SOUND STATISTICAL METHOD TO

7  PRIORITIZE WHICH OF THE APPROXIMATELY 47,000 -- THE ORDER IN

8  WHICH WE LOOK AT CASES SO THAT WE FRONT LOAD POSITIVE -- SORT

9  OF POSITIVE RESULTS AND ITERATIVELY LEARN MORE AND MORE AS WE

10  GO ABOUT WHERE TO LOOK FOR CHILDREN WHO MAY HAVE BEEN

11  SEPARATED WITHIN THAT FAIRLY LARGE TOTAL POPULATION.

12  **Q.**    YOU HAD INDICATED IN YOUR DECLARATIONS THAT THE OUTER

13  BOUND FOR THE COMPLETION OF A UNIVERSAL RECORD REVIEW AND

14  RECONCILIATION IN A RANDOMIZED OR DATE ORDERED MANNER WOULD BE

15  ONE TO TWO YEARS, RIGHT?

16  **A.**    THAT'S RIGHT.

17  **Q.**    AND THAT WAS INTENDED TO BE AN OUTER BOUND AND JUST

18  THAT, RIGHT?

19  **A.**    THAT IS EXACTLY RIGHT.  THAT IS THE OUTER BOUND.  THE

20  WAY I WOULD SAY IT IS THIS.

21      AS I MENTIONED, THE GOAL IS TO PRODUCE AN ACCURATE

22  ACCOUNTING IN AS SHORT A TIME AS IS HUMANLY POSSIBLE THAT IS

23  ACCURATE.  ONE TO TWO YEARS WOULD BE WHAT -- BASED ON

24  EXTRAPOLATING FROM PAST EXPERIENCES WHAT IT WOULD TAKE IF

25  BASICALLY NOT ONE OF THE MANY INTERVENTIONS BUILT INTO OUR

APRIL 25, 2019

1  PLAN TO SHORTEN THE TIMEFRAME WORKED.

2       IF EVERY SINGLE THING THAT WE THOUGHT OF TO MAKE THIS

3  HAPPEN FASTER FAILED, IF NOTHING WORKED, IT WOULD TAKE ONE TO

4  TWO YEARS.  THAT IS NOT MY GOAL, AND TRUTHFULLY IT IS NOT WHAT

5  I WOULD ANTICIPATE OR EXPECT.

6       I WOULD PERSONALLY CONSIDER THAT KIND OF A DEVASTATING

7  DEFEAT IF ABSOLUTELY EVERY ONE OF THE INTERVENTIONS THAT ARE

8  PUT IN PLACE TO DELIVER THAT RIGHT OUTCOME FASTER HAD FAILED.

9       SO, YES, ONE TO TWO YEARS IS THE OUTER BOUND BUT IT IS

10  NOT MY TARGET AND IT IS NOT -- IT IS NOT WHAT I WOULD

11  ANTICIPATE.

12  **Q.**   WHEN THAT OUTER BOUND WAS ASSESSED BY JALLYN SUALOG AND

13  BY YOU SEVERAL MONTHS AGO, WAS THE SPEED OF THE UAC PORTAL A

14  GREAT LIMITING FACTOR THAT HAD A BEARING ON THE OUTER BOUND?

15  **A.**   YES.  SO AS MY COLLEAGUE JALLYN SUALOG PUT IN HER

16  DECLARATION, I AGREE WITH, AT THE TIME THAT WE DID THAT ONE OF

17  THE MANY VARIABLES WE HAD TO CONTEND WITH WAS THE

18  TECHNOLOGICAL REALITY THAT THE UAC PORTAL HAD BEEN

19  EXPERIENCING SLOWDOWNS FOR MONTHS.

20       THIS AFFECTED A NUMBER OF THINGS THAT ARE IMPORTANT IN

21  THE UAC PROGRAM.  NOT JUST THINGS RELEVANT FOR THE MS. L. CASE

22  BUT THINGS LIKE THE EVERYDAY PROCESS OF RECEIVING REFERRALS OF

23  CHILDREN FROM O.R.R. -- EXCUSE ME -- FROM DHS.  IT WAS OFTEN

24  VERY PERSONALLY FRUSTRATING TO ME WHEN I WENT INTO THE PORTAL

25  AND I WOULD EXPERIENCE SLOWDOWNS.

APRIL 25, 2019

18

1        NOT REALLY A FUNCTION OF THIS CASE IN ANY WAY BUT OF

2   THAT PROGRAMMATIC NEED, O.R.R., ITS PARENT AGENCY, THE

3   ADMINISTRATION FOR CHILDREN AND FAMILY, THEIR OFFICE OF THE

4   CHIEF INFORMATION OFFICER AND THE DEVELOPER OF THE PORTAL HAVE

5   BEEN WORKING FOR MONTHS ON THIS SLOWDOWN PROBLEM.

6        AND I CHECKED IN WITH THEM AS RECENTLY AS THIS WEEK

7   ABOUT THEIR PROGRESS, AND THIS ISSUE APPEARS TO BE

8   SUBSTANTIALLY RESOLVED.

9        SO ONE OF THE VARIABLES THAT INFORMED JALLYN'S ANALYSIS,

10  MS. SUALOG'S ANALYSIS OF HOW LONG IT WOULD TAKE, WHAT THIS

11  TECHNOLOGICAL VARIABLE WHICH HAS ALREADY CHANGED.  AMONG THE

12  THINGS THAT I WOULD MAKE PART OF ANY PLAN IS IF I RUN INTO A

13  RATE LIMITING STEP THAT IS TECHNOLOGICAL I WILL CONTINUE TO

14  WORK WITH O.R.R. AND THE ACFCIO TO MOVE THAT -- TO REDUCE THAT

15  RATE LIMITING STEP.  BUT THAT HAS ALREADY BEEN SUBSTANTIALLY

16  RESOLVED, AS I UNDERSTAND IT FROM CONVERSATIONS.

17  **Q.**   SO PIVOTING BACK TO THE SECOND STRUCTURAL OPTION, WHICH

18  IS THE PRIORITIZED REVIEW WHICH IS WHAT WE SEEM TO BE ALL

19  COALESCING AROUND, WHAT IS THE INTENT IN TERMS OF TIME TO

20  COMPLETION FOR A PRIORITIZED REVIEW?

21  **A.**   SO FOR A PRIORITIZED REVIEW -- SO BECAUSE EVERY ONE OF

22  THESE INTERVENTIONS WERE ALL UNPRECEDENTED, I COULD NOT SPEAK

23  WITH SORT OF SCIENTIFIC CERTAINTY ABOUT HOW LONG IT WILL TAKE.

24  MY OPERATIONAL GUIDANCE TO ANY STAFF ON THE TEAM WOULD BE AS

25  FAST AS POSSIBLE.


APRIL 25, 2019

1       IT IS MY -- I WOULD ANTICIPATE AND IT IS MY BELIEF THAT

2   THE SIX-MONTH TIMEFRAME WOULD BE SUFFICIENT TO MEET THIS.

3   THAT IS BASED ON MY BELIEF FROM LOOKING AT THE VARIABLES, BUT

4   I COULD NOT SAY WITH CERTAINTY BECAUSE WE HAVEN'T DONE THE

5   EFFORT YET.

6       BUT I BELIEVE THE PRIORITIZED REVIEW WOULD RESULT IN

7   THAT KIND OF TIMEFRAME IN US ATTAINING THE GOAL OF IDENTIFYING

8   SUBSTANTIALLY ALL OF THE CHILDREN WHO WOULD MEET THE CRITERIA

9   SET BY THE COURT TO BE, YOU KNOW, POSSIBLE CHILDREN OF

10  POTENTIAL CLASS MEMBERS.

11  **Q.**   DO YOU ANTICIPATE THAT THE PRIORITIZED REVIEW WOULD

12  RESULT IN THE COMPLETION OF THE MANUAL REVIEW AND

13  RECONCILIATION OF ALL RECORDS FOR ALL APPROXIMATELY 47,000

14  CHILDREN WITHIN A SIX-MONTH TIME TARGET?

15  **A.**   NOT NECESSARILY.  WE WILL LEARN BY DOING.  AND FROM WHAT

16  WE LEARN SCIENTIFICALLY IN THE PROCESS, I AM SURE THERE WILL

17  BE FURTHER DISCUSSION BY ALL OF YOU BETWEEN THE TWO PARTIES.

18      PART OF THE GOAL OF A PRIORITIZED REVIEW IS TO SEE IF IN

19  SEGMENTING THIS 47,000 BY SORT OF PROBABILITY OF SEPARATION

20  AND THEN DOING THE REVIEWS, AND DOING 100 PERCENT REVIEW FIRST

21  WITH THE HIGHEST PROBABILITY AND THEN LOOKING AT SAMPLES OF

22  LOWER BANDS OF PROBABILITY IT MAY BE THAT WE LEARN THAT WE

23  HAVE FOUND SUBSTANTIALLY ALL OF THE CHILDREN.

24      THAT IS SOMETHING THAT WOULD BE DISCUSSED, FRANKLY, NOT

25  BY OPERATORS BUT BY LAWYERS AND THE COURT DOWN THE ROAD BASED

APRIL 25, 2019

ON WHAT WE LEARN.  I DO NOT KNOW THAT WE EITHER WILL OR WILL
NOT NEED TO DO 100 PERCENT MANUAL CASE FILE REVIEW.  THAT IS
BASED ON THINGS WE WILL LEARN BY DOING.

**Q.**    THE INTENT, AT THE END OF THE DAY, IS TO TRY TO IDENTIFY
SUBSTANTIALLY ALL CLASS MEMBERS WITHIN APPROXIMATELY SIX
MONTHS REGARDLESS OF WHETHER OR NOT THAT INVOLVES A UNIVERSAL
MANUAL FILE REVIEW, FAIR?

**A.**    THAT IS EXACTLY RIGHT.  BY HOOK OR BY CROOK WE FIND THE
KIDS WHO MEET THOSE CRITERIA.  AND IT IS MY GOAL TO DO THAT,
IT WOULD BE MY OPERATIONAL TARGET TO DO THAT IN THAT
TIMEFRAME.

**Q.**    SO LET'S MOVE ON TO SOME OF THE OBSERVATIONS THAT THE
COURT MADE LAST WEEK ABOUT THE INITIAL ITERATION OF YOUR PLAN.
THE FIRST WAS THE CONCERN ABOUT TAKING TIME TO BUILD THE
STATISTICAL MODEL TO STAGE THE MANUAL REVIEW WITHOUT ENGAGING
CONCURRENTLY IN A MANUAL REVIEW OF PRIORITIZED GROUPS.  IS
THAT ISSUE THEN ADDRESSED IN THE REFINED REVERSION OF YOUR
PLAN THAT WAS LAID OUT IN THE FILING TODAY?

**A.**    I HOPE SO.  I WOULD SAY YES.  SO, TO BE CLEAR, WHEN WE
TALK ABOUT THE REFINEMENTS THAT WE HAVE WORKED ON THE PLAN, WE
HAVE AN INITIAL TO WHAT I WOULD CALL TO PRIORITIZE
SUBPOPULATIONS.

        THE FIRST IS ANY CHILD WHO APPEARS IN THE DATASETS WE
RECEIVED A WEEK AGO FROM MY COLLEAGUE CHIEF VISCONTI AND FROM
CUSTOMS AND BORDER PROTECTION WHICH IS DATASETS THAT SHOW SOME

APRIL 25, 2019

1  CBP PRELIMINARY INDICATIONS OF CHILDREN SEPARATED.  THAT ONLY

2  APPLIES TO THE TIME PERIOD BEGINNING THE 19TH OF APRIL, 2018.

3  THAT IS ONE PRIORITIZED POPULATION.

4       AND ANOTHER IS THE INFORMAL DATASETS WITHIN O.R.R. OF

5  CHILDREN WHO HAD BEEN IN CARE DURING THE PERIOD THAT WE ARE

6  TALKING ABOUT, WHICH BEGAN ON JULY 1ST, 2017, WHOM O.R.R.

7  GRANTEES OR O.R.R. FEDERAL PERSONNEL IDENTIFIED AS SUSPECTED

8  TO HAVE BEEN SEPARATED.

9       WE WILL TACKLE THOSE FIRST BECAUSE THEY ARE SORT OF

10  SPECIAL SUBPOPULATIONS IN THAT A FEDERAL AGENCY HAS ALREADY

11  FOUND SOME PRELIMINARY INDICATION OF SEPARATION.  IT WOULD BE

12  MY GOAL TO TACKLE THOSE FIRST, EVEN WHILE THE PREDICTION MODEL

13  IS BEING PUT TOGETHER, AND INDEED EVEN PRIOR TO THAT TO BEGIN

14  THAT AS A PILOT PROJECT USING SELECTED SPECIALIZED FEDERAL

15  PERSONNEL WHILE WE CONTINUE THE EXPEDITED PROCUREMENT OF THE

16  SPECIALIZED CONTRACT TEAMS TO DO FUTURE CASE FILE REVIEW.  SO

17  I EXPECT THAT THAT COULD BEGIN IN DAYS.

18  **Q.**   ONE OF THE OTHER CONCERNS THAT WAS IDENTIFIED IN

19  PRECEDING WEEKS WAS THE CONSIDERATION OF INFORMATION FROM DHS

20  IN THE RECORD REVIEW AND RECONCILIATION.  HOW HAS THAT CONCERN

21  BEEN ADDRESSED IN YOUR REFINED PLAN?

22  **A.**   SO A FEW DIFFERENT WAYS.  I THINK ONE SORT OF KEY PIECE

23  IS THE WHOLE PLAN REALLY HINGES ON AN INTERAGENCY COORDINATED

24  EFFORT BETWEEN THE THREE LEAD FEDERAL AGENCIES IN THE WHOLE

25  UNACCOMPANIED ALIEN CHILDREN PROCESS:  CBP, ICE, AND HHS.


APRIL 25, 2019

1    WE WILL, FOR THE ENTIRE SORT OF PROCESS, USE INFORMATION

2   FOR EACH CHILD FROM -- THAT WE WORK THROUGH FROM ALL THREE

3   AGENCIES.  WE WILL DO THAT, THOUGH, IN A STAGED MANNER TO

4   OPTIMIZE EFFICIENCY.  SO WHERE WE IN HHS IDENTIFY PRELIMINARY

5   INDICATIONS OF SEPARATION WE WILL SHARE THAT -- THE ALIEN

6   NUMBERS, THE UNIQUE IDENTIFIERS OF THOSE CHILDREN -- WITH OUR

7   ICE AND CBP COLLEAGUES SO THAT THEY CAN USE THEIR LAW

8   ENFORCEMENT SENSITIVE INFORMATION SYSTEMS TO LOOK AT THE

9   SURROUNDING INFORMATION THAT THEY HAVE ON THOSE.

10    AS A RESULT THE THREE AGENCIES TOGETHER WILL IDENTIFY --

11   WILL PRODUCE THE ROLLING LISTS, WHICH WILL BE SHARED WITH THE

12   COURT AND WITH THE PLAINTIFFS, OF THOSE CHILDREN WHO ARE

13   POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS, AND USING

14   INFORMATION PROVIDED BY DHS THE PARENTS OF THOSE CHILDREN WHO

15   WOULD BE THE POTENTIAL CLASS MEMBERS.

16   Q.   GREAT.  ONE CONCEPT THAT HAD BEEN DISCUSSED IN THE

17   PRECEDING WEEKS WAS THE USE OF CASE MANAGERS AT GRANTEE

18   FACILITIES TO REVIEW PAPER RECORDS PREPARED BY CASE MANAGERS

19   AT THOSE FACILITIES.  YOU HAVE EXPRESSED CONCERN IN THE

20   FILINGS WITH THAT CONCEPT, AND I WANT TO JUST BREAK IT APART

21   QUICKLY AND ADDRESS TWO COMPONENTS.

22    ONE, THE REVIEW OF PAPER RECORDS AS OPPOSED TO THE UAC

23   PORTAL.  AND THEN, TWO, THE USE OF CASE MANAGERS TO CONDUCT OR

24   SUPPORT REVIEW OF PAPER RECORDS.

25    WHAT IS YOUR OPINION REGARDING THE REVIEW OF PAPER

APRIL 25, 2019

1   RECORDS IN LIEU OF THE REVIEW OF THE UAC PORTAL?

2   **A.**     SO, THE UAC PORTAL IS THE SYSTEM THAT WE USE IN THE

3   O.R.R. UAC PROGRAM, NOT JUST FEDS BUT ALSO GRANTEES USE, TO

4   COORDINATE AND DOCUMENT EVERY ASPECT OF THE CARE OF THE CHILD.

5        IT IS TRUE THAT IT IS THE SYSTEM THAT IS USED TO REFER A

6   CHILD INTO O.R.R. CARE AND FOR O.R.R. TO DESIGNATE A SPECIFIC

7   BED IN THE SHELTER NETWORK FOR THE CHILD, BUT THAT IS NOT ITS

8   PRIMARY FUNCTION.  ITS PRIMARY FUNCTION IS IT IS AN

9   INDIVIDUALIZED RECORD SYSTEM FOR ALL OF THE CARE WE PROVIDE TO

10  A CHILD, WHETHER IT BE YOUTH CARE, HEALTH CARE, MENTAL HEALTH

11  CARE, AND DISCHARGE PLANNING AND SPONSOR IDENTIFICATION

12  PROCESS.

13       SO AMONG THE REALLY VALUABLE LESSONS LEARNED THAT WE

14  HAVE FROM THE 2018 EXPERIENCE IS HOW TO USE THE PORTAL TO LOOK

15  IN ALL OF THE DIFFERENT PLACES THAT MIGHT APPEAR IN IT FOR

16  INDICATIONS OF POTENTIAL SEPARATION.

17       THE PORTAL HAS BOTH SORT OF SCREENS THAT CARE PROVIDERS

18  OR SHELTER EMPLOYEES DIRECTLY ENTER INFORMATION, SUCH AS, FOR

19  EXAMPLE, WHEN THEY ARE DOING THEIR INITIAL ASSESSMENT OF A

20  CHILD, MEETING WITH A CHILD, PROVIDING CARE TO A CHILD.  IT

21  HAS ALL OF THE SIGNIFICANT INCIDENT REPORTS FOR ANY EVENT THAT

22  HAPPENS WHILE THE CHILD IS IN OUR CARE OR THE CHILD MAKES A

23  DISCLOSURE.

24       BUT SIGNIFICANT DOCUMENTS THAT ARE PRODUCED IN ANOTHER

25  MEDIUM, LIKE ON PAPER, LIKE MAYBE THE CHILD SEES A DOCTOR IN

APRIL 25, 2019

1  THE COMMUNITY AND GETS SOMETHING, THAT IS UPLOADED INTO THE
2  PORTAL AS A PDF.

3      SO IT IS REALLY IMPORTANT TO NOTE THAT THE PORTAL IS THE
4  DEFINITIVE RECORD OF WHAT WE KNOW ABOUT A CHILD.  AND I THINK
5  IT IS NOT ONLY THE FASTER BUT THE MOST ACCURATE TOOL THAT WE
6  HAVE TO LOOK AT THE HHS INFORMATION ABOUT A CHILD.  AS A
7  REMINDER THIS PROCESS WILL INVOLVE INFORMATION THAT IS IN
8  HHS'S POSSESSION, SEPARATELY INFORMATION THAT IS IN CBP'S
9  POSSESSION, AND INFORMATION THAT IS IN ICE'S POSSESSION.

10     THERE ARE PAPER FILES KEPT IN ADDITION TO A PORTAL IN
11  INDIVIDUAL CARE PROVIDERS BUT THAT -- THE RELEVANT INFORMATION
12  FROM THOSE WOULD HAVE BEEN UPLOADED AS A PDF INTO THE PORTAL.

13     SO, FIRST OF ALL, THE PORTAL CONTAINS INFORMATION SUCH
14  AS WHAT COMES OVER FROM DHS IN THE REFERRAL THAT IS NOT IN THE
15  PAPER CHARTS THAT IS VERY RELEVANT TO THIS.  IT DOES CONTAIN
16  INFORMATION THAT MIGHT HAVE APPEARED IN PAPER THAT WOULD BE
17  RELEVANT TO THIS.  SO IT IS MY BELIEF, JUST AS A MATTER OF
18  EXPEDIENCY AND ACCURACY, IT IS THE RIGHT THING TO USE FOR THE
19  HHS DATA.

20     IF IN SOME INDIVIDUAL CHILD'S CASE WE EVER COME UP WITH
21  SOMETHING WE THINK, WELL, IT LOOKS LIKE MAYBE SOMEONE FORGOT
22  TO UPLOAD SOMETHING, WE COMB IN THAT ONE CASE THROUGH THE
23  CHILD'S PAPER FILES AND SEE IF, SOME HUMAN ERROR, THE
24  ORDINARILY UPLOADED DOCUMENT ISN'T THERE WE SHOULD LOOK FOR
25  IT.  THEN, IN THAT CASE, IT WOULD BE WORTH DOING.


APRIL 25, 2019

1      SO, FIRST OF ALL, I DO BELIEVE THE UAC PORTAL IS —— FOR

2   THE HHS INFORMATION IS ABSOLUTELY THE RIGHT TOOL.  IT IS NOT

3   ONLY FASTEST, IT IS THE MOST COMPREHENSIVE.  SO THERE IS —— I

4   THINK THAT WOULD BE THE ANSWER TO THAT PIECE OF THE PUZZLE.

5   **Q.**    SURE.  WHAT CONCERNS DO HAVE ABOUT THE USE OF CASE

6   MANAGERS FROM CARE PROVIDER FACILITIES TO EITHER PARTICIPATE

7   IN OR SUPPORT THE RECORD REVIEW AND RECONCILIATION FOR THE

8   EXPANSION CLASS?

9   **A.**    I HAVE TWO CONCERNS ABOUT THAT.  ONE IS REALLY THAT I

10  THINK THAT IT DOESN'T ADD ANYTHING.  BUT THE OTHER ONE, THE

11  ONE THAT MAKES ME FEEL KIND OF QUEASY EVERY TIME THIS COMES UP

12  IS I AM AWARE OF A REALLY DANGEROUS UNINTENDED CONSEQUENCE OF

13  IT.  LET ME ACTUALLY TACKLE THAT ONE FIRST.

14      IN THE SETS OF DIFFERENT KINDS OF STAFF WHO PROVIDE CARE

15  TO A CHILD IN O.R.R. CARE, SUCH AS YOUTH CARE WORKERS,

16  CLINICIANS, TEACHERS, HEALTHCARE WORKERS AND CASE MANAGERS,

17  THE CASE MANAGER'S JOB IS DISCHARGE PLANNING.  FINDING

18  SPONSORS, VETTING SPONSORS, WORKING WITH THE FAMILIES TO GET

19  THE CHILD TO A SPONSOR.  AND WE ACTUALLY REALLY DO NEED CASE

20  MANAGERS DOING THAT, AND NOTHING ELSE, FOR THE CHILDREN

21  CURRENTLY IN CARE.

22      TODAY, AS OF THIS MORNING —— OUR LATEST DATA COMES FROM

23  MIDNIGHT —— WE ARE AT 97 PERCENT OCCUPANCY IN THE NATIONAL

24  SHELTER NETWORK.  AND OVER THE LAST SEVEN DAYS, EVERY DAY MORE

25  CHILDREN HAVE BEEN REFERRED INTO OUR CARE FROM DHS THAN EXITED

APRIL 25, 2019

1   THROUGH DISCHARGE.

2        SO I FEEL LIKE IT IS VERY IMPORTANT FOR THE CHILDREN WHO

3   ARE IN CARE RIGHT NOW THAT THEIR CASE MANAGERS NOT BE PULLED

4   ON TO ANY OTHER MATTER EXCEPT THEIR SAFE AND TIMELY DISCHARGE,

5   SO THAT WE CAN DO EVERYTHING WE CAN TO PREVENT EXCEEDING

6   NATIONAL CAPACITY AND HAVING CHILDREN START PILING UP IN

7   BORDER STATIONS.

8        BUT THE OTHER PIECES THAT, YOU KNOW, BECAUSE -- YOU

9   KNOW, HYPOTHETICALLY, WHAT IF WE WEREN'T IN THAT STATE.  WHAT

10  IF TODAY WE WERE AT 70 PERCENT OCCUPANCY AND I WAS NOT ALARMED

11  AT THE THOUGHT, CASE MANAGERS WOULD NOT ADD ANYTHING TO THIS

12  EFFORT BECAUSE WHAT WE REALLY NEED, I THINK, IS A GROUP OF

13  INDIVIDUALS I CAN TRAIN AND I CAN BRING IN O.R.R. SPECIALISTS

14  TO TRAIN TO DO CASE FILE REVIEW.

15       ONE OF THE MOST IMPORTANT TOOLS THAT I THINK WE HAVE A

16  CHANCE TO USE NOW THAT WE DID NOT HAVE AVAILABLE TO US IN FALL

17  OF 2018 IS WE HAVE THE CHANCE TO, BY CONTRACT, BRING ON PEOPLE

18  WHOSE FULL-TIME JOB IS TO DO CASE FILE REVIEW.  WHO ARE CHOSEN

19  FOR THAT PURPOSE, TRAINED BY ME AND BY O.R.R. TO DO THAT

20  PURPOSE.  I THINK THAT THAT IS HOW, WITH NO LOSS OF ACCURACY,

21  WE WILL GET FASTER.

22       I BELIEVE THAT PEOPLE WHO DO THIS AND NOTHING ELSE,

23  UNDER MY AND MY TEAM'S DIRECT MANAGEMENT, WILL BE ABLE TO

24  ACCURATELY FIND PRELIMINARY INDICIA OF SEPARATION MUCH FASTER,

25  ESPECIALLY AFTER THEY HAVE BEEN DOING IT A FEW WEEKS, THAN

APRIL 25, 2019

1   PROCESS REVIEWS IN THE PAST WHERE EVERYONE WHO DID THAT MAYBE

2   DID IT FOR A FEW HOURS BUT THAT WAS ALL THEY DID.

3        THAT IS MY REASON THAT I THINK, IN ADDITION TO HAVING

4   SORT OF THE POTENTIAL FOR HARMFUL UNINTENDED CONSEQUENCES, I

5   DON'T THINK CASE MANAGERS WOULD ADD WHAT WE NEED.  I WANT TO

6   CREATE SOMETHING BRAND NEW.  I WANT TO CREATE EXPERT CASE FILE

7   REVIEWERS WHOSE JOB IS FINDING INDICATIONS OF SEPARATION.

8   **Q.**   THERE HAS BEEN SOME SUGGESTION THAT A TIMELINE OF THREE

9   MONTHS FOR COMPLETION OF A UNIVERSAL MANUAL RECORD REVIEW AND

10  RECONCILIATION IS REALISTIC.  WHAT IS YOUR PERSPECTIVE ON THE

11  SUGGESTION OF A THREE-MONTH TIME TO COMPLETION FOR THAT TYPE

12  OF WORK?

13  **A.**   WHEN WE ARE GREENLIGHTED TO PROCEED, MY DIRECTION EVERY

14  DAY TO THE TEAM WILL BE THAT THIS MUST BE DONE ACCURATELY AS

15  QUICKLY AS POSSIBLE.

16       I DON'T -- ALTHOUGH WE WILL SEE, I DON'T BELIEVE THAT

17  THE THREE-MONTH TIME FRAME IS REALISTIC FOR THE FULL

18  INTERAGENCY PROCESS.  I WOULD BE DELIGHTED TO BE SURPRISED BUT

19  I DO NOT BELIEVE THAT THAT IS REALISTIC.

20       WE WILL GO AS FAST TO ACHIEVE THAT ACCURATE ACCOUNTING

21  AS IT IS POSSIBLE TO GO.  AND THAT WILL SORT OF MEET MY OWN

22  GOAL OR ANY DEADLINES IMPOSED OR IT WILL FAIL IT, BUT IT WILL

23  HAPPEN AS FAST AS IT CAN HAPPEN.

24       I DON'T PERSONALLY BELIEVE THAT THREE MONTHS IS

25  REALISTIC, GIVEN THE VOLUME OF EFFORT REQUIRED BY THE THREE

APRIL 25, 2019

1   AGENCIES.

2   **Q.**   DO YOU BELIEVE THAT THERE IS A FASTER WAY TO IDENTIFY

3   POTENTIAL CLASS MEMBERS THAN WHAT YOU HAVE LAID OUT IN THE

4   REFINED VERSION OF YOUR PLAN THAT WAS FILED TODAY?

5   **A.**   IF I DID I WOULD BE PITCHING IT TO EVERYONE IN

6   GOVERNMENT AND IN THIS COURTROOM.   THE PRIORITY IS TO DEVELOP

7   THIS ACCOUNTING, WHICH IS ESSENTIAL FOR THIS CASE, AND IT IS

8   ESSENTIAL FOR CHILDREN AND FAMILIES.   SO IT IS MY BELIEF, AND

9   IT IS A BELIEF BASED ON MY PROFESSIONAL EXPERIENCE, THIS IS

10   THE BEST AVAILABLE SOLUTION TO HOW TO ACHIEVE A RIGOROUS

11   ACCOUNTING AS QUICKLY AS POSSIBLE.

12         AS WE GO, IF I FIND ADDITIONAL SHORTCUTS, OR IF OTHERS

13   SUGGEST THEM THAT COME IN THROUGH OUR TEAM'S EFFORT, WE WILL

14   IMPLEMENT THOSE.   BUT I DO NOT BELIEVE AT THIS TIME THAT THERE

15   IS ANY FASTER WAY THAN THE ONE OUTLINED.

16               **MR. STIMSON:**   THAT'S ALL THE QUESTIONS THAT I HAVE

17   FOR COMMANDER WHITE, YOUR HONOR.   I WILL SIT DOWN NOW.

18               **THE COURT:**   ALL RIGHT.   THANK YOU.

19               MR. GELERNT.

20               **MR. GELERNT:**   THANK YOU, YOUR HONOR.

21               AND THANK YOU FOR BEING HERE COMMANDER WHITE.   I

22   ACTUALLY DO NOT HAVE THAT MANY QUESTIONS, THEY ARE MORE IN THE

23   NATURE OF JUST A FEW CLARIFYING QUESTIONS.

24               THEN, YOUR HONOR, IF I MIGHT BE ABLE TO CONSULT WITH

25   MY COLLEAGUES FOR TWO SECONDS AFTER.


APRIL 25, 2019

1          **THE COURT:**  OKAY.

2                     **CROSS-EXAMINATION**

3  **Q.    (MR. GELERNT)** :  THERE WAS ONE THING IN YOUR

4  DECLARATION THAT I WASN'T SURE ABOUT.  I DON'T KNOW THAT --

5  THERE WAS A NUMBER OF YOUR ESTIMATING 500 TO 1,000.  WHAT I

6  WASN'T SURE ABOUT, WERE YOU SAYING FROM THE INITIAL REVIEWS OF

7  CERTAIN MORE ACCESSIBLE -- OR IMMEDIATELY ACCESSIBLE LISTS

8  LIKE THE APRIL TO JUNE -- NOT LISTS BUT DATA FROM THE APRIL TO

9  JUNE AND WHAT YOU ALREADY HAVE INFORMALLY FROM O.R.R. GRANTEES

10  THAT YOU ESTIMATED THAT THAT WOULD PRODUCE ABOUT 500 TO 1,000,

11  OR ARE YOU SAYING THE OVERALL EXPANDED CLASS YOU BELIEVED

12  WOULD END UP BEING 500 TO 1,000 CHILDREN?

13  **A.**     THANK YOU.  YEAH.  I AM SORRY IF I WAS UNCLEAR.

14          FIRST OF ALL, I DO NOT KNOW -- AND I WILL GO A STEP

15  FURTHER -- I DON'T BELIEVE THERE IS ANYBODY WHO KNOWS HOW MANY

16  CHILDREN WILL BE IN THE EXPANDED CLASS.  I THINK IF WE KNEW

17  THAT ALL OF US WOULD PROBABLY HAVE AN EASIER TIME TODAY.  I

18  APOLOGIZE FOR THE UNCLARITY.

19          THE 500 TO 1,000 NUMBER IN MY MOST RECENT DECLARATION

20  REFERS TO -- I MENTIONED THAT THERE WERE PRIORITIZED

21  POPULATIONS THAT WE COULD USE FOR OUR JUMP-START PILOT PROJECT

22  THAT WE COULD KICK OFF NEAR IMMEDIATELY.  THOSE ARE TWO GROUPS

23  OF DATASETS, ONE PRODUCED BY CUSTOMS AND BORDER PROTECTION AND

24  SHARED WITH ME WITHIN THE LAST WEEK, BASICALLY SENT TO ME LAST

25  WEEK, LATE LAST WEEK, BY MY COLLEAGUE CHIEF VISCONTI.  THAT IS

APRIL 25, 2019

1  A DATASET WHICH IDENTIFIES CHILDREN FOR WHOM CBP HAS

2  PRELIMINARY INDICATIONS OF SEPARATION.  THAT BEGINS ON APRIL

3  19TH, 2018 AND CONTINUES TO THE END OF THE EXPANDED CLASS SET.

4      A SECOND GROUP OF DATASETS IS DATA IDENTIFIED BY O.R.R.

5  OF CHILDREN WHO WERE IN O.R.R. CARE STARTING ON JULY 1ST, 2017

6  WHO O.R.R. IDENTIFIED AS SEPARATED.

7      THE TOTAL NUMBER OF -- THAT IS SO HOT-OFF-THE-PRESS AND

8  IT IS IN MY HANDS WE HAVE NOT YET FINISHED THE WORK OF EVEN

9  DEDUPLICATING THOSE TWO, AND THAT IS WHY I DON'T KNOW -- I

10  THINK THAT IS BETWEEN 500 AND 1,000 KIDS WE WOULD BE ABLE TO

11  BEGIN THE CASE FILE REVIEW PROCESS IN THE UAC PORTAL FOR.

12  THAT IS WHAT THE 500 TO 1,000 REFERS TO.

13      I DO ANTICIPATE BEING ABLE TO KICK THAT OFF EVEN PRIOR

14  TO PROCURING THE CASE FILE TEAM THAT I NEED USING FEDERAL

15  STAFF THAT I AM IN THE PROCESS OF RETAINING AS A DEPLOYED

16  SPECIALIST FROM THE U.S. PUBLIC HEALTH SERVICE COMMISSION

17  CORPS.  THAT WILL BE IN THE NEXT FEW DAYS.

18  **Q.**    THANK YOU FOR THE CLARIFICATION.  SO THAT IS POTENTIALLY

19  A SIGNIFICANT NUMBER OF CHILDREN WHO YOU MAY IDENTIFY AS

20  SEPARATED EARLY ON IN THE PROCESS AND CAN PRODUCE THAT ON A

21  ROLLING BASIS.

22  **A.**    RIGHT.  AGAIN, WHAT WE WILL DO WITH THOSE IS WE WILL DO

23  THE HHS REVIEW AND THEN SHARE THAT WITH INTERAGENCY PARTNERS.

24  AND WE -- I COULDN'T SPECULATE HOW MANY OF THOSE WILL END UP

25  IDENTIFIED AS POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS.


APRIL 25, 2019

1    Q.    THANK YOU.

2          DO YOU ENVISION ANY OBSTACLES TO YOU HIRING THE STAFF

3    YOU NEED TO WORK ON THIS AS FULLY AS YOU WOULD LIKE TO?

4    A.    I DO NOT.  SO WE HAVE -- WE ARE WELL UNDERWAY WITH AN

5    EXPEDITED PROCUREMENT PROCESS.  AND WITH APOLOGIES THERE ARE

6    SOME LIMITS TO HOW SPECIFIC I CAN BE BECAUSE IT IS AN ACTIVE

7    PROCUREMENT PROCESS AND THERE ARE REGULATIONS ABOUT TALKING

8    ABOUT THAT.

9          BUT I WILL SAY WE ARE WELL INTO AN EXPEDITED PROCUREMENT

10   PROCESS AND I ANTICIPATE AT THIS TIME NO BARRIERS GETTING THE

11   SKILLED PERSONNEL I NEED EITHER FOR THE DATA TEAM OR FOR THE

12   CASE FILE REVIEW TEAM.  NOR AT THIS TIME DO I FORECAST ANY

13   SHORTFALLS OR GAPS IN THE PROCESS TO ONBOARD AND TRAIN THEM,

14   PUT THEM TO WORK.  WHATEVER CHALLENGES WE WILL RUN INTO, AND

15   EVERY MISSION HAS SOME, WILL BE DOWN THE ROAD AFTER THAT.

16   Q.    THANK YOU.

17         YOU HAD MENTIONED THAT YOU WERE GOING TO BE CREATING A

18   STATISTICAL MODEL AND ASSESSING HOW EFFECTIVE THAT WAS AS YOU

19   MOVE ALONG; IS THAT CORRECT?

20   A.    YES, SIR.

21   Q.    AND THAT YOU ANTICIPATED THE STATISTICAL MODEL PRODUCING

22   DATA THAT YOU THOUGHT HAD A HIGH PROBABILITY OF IDENTIFYING A

23   SEPARATED CHILD AND SOME THAT IT WERE A LOW PROBABILITY.

24   A.    SO, THE PURPOSE OF THE STATISTICAL PROCESS IS NOT -- IS

25   NOT TO IDENTIFY SEPARATED CHILDREN, IT IS TO PRIORITIZE THE

APRIL 25, 2019

1   EFFORT OF IDENTIFYING SEPARATED CHILDREN.  SO WE WILL SEE BY

2   DOING IT HOW EFFECTIVE IT IS AT THAT PREDICTIVE MODEL.  THESE

3   ARE ALL NOVEL PROCESSES, ALTHOUGH THIS RESTS ON A SOUND

4   FOUNDATION OF STATISTICAL SCIENCE.

5   **Q.**   RIGHT.  OKAY.  THAT IS WHAT I WANTED TO GET AT.  IT IS A

6   PRIORITIZATION METHOD.

7        YOU HAD SAID THAT YOU WILL NOT MAKE THE CALL THAT YOU

8   BELIEVE CERTAIN FILES HAVE SUCH A LOW PROBABILITY THAT THERE

9   IS NO REASON TO GO THROUGH THEM; IS THAT CORRECT?  THAT YOU

10  WILL LEAVE THAT TO THE PARTIES?

11  **A.**   I AM SURE THAT I WILL MAKE OPERATIONAL AND TACTICAL

12  RECOMMENDATIONS.  BUT MY POINT IS, AS I UNDERSTAND IT, THAT

13  WOULD NEVER BE MY DECISION, THAT'S A DECISION THAT WOULD BE

14  MADE HERE IN THIS COURTROOM OR BETWEEN THE PARTIES.

15  **Q.**   THANK YOU.

16        AND WHAT WOULD YOU SUGGEST IS TOO LOW A PROBABILITY OF A

17  CERTAIN SET OF FILES PRODUCING A SEPARATED FAMILY TO THEN SAY,

18  WE ARE NOT GOING TO GO THROUGH THOSE FILES, IT IS TOO MUCH OF

19  A BURDEN?

20  **A.**   SO, I WANT TO BE CLEAR THAT THE REASON WOULD NEVER BE

21  THAT SOMETHING IS TOO MUCH OF A BURDEN.  IT WOULD BE -- AND

22  THERE IS NO WAY OF KNOWING WITHOUT DOING THIS WHETHER IT WOULD

23  BE ESSENTIALLY CLEAR, I THINK, TO EVERYONE THAT WE KNOW THERE

24  ARE NO SEPARATED KIDS IN A GIVEN CLOUD.  SO THAT IS NOT

25  SOMETHING I COULD SORT OF QUANTIFY IN THAT WAY, BUT THE ISSUE

APRIL 25, 2019

```
1   IS NOT GOING TO BE BURDEN.

2   Q.    OKAY.  THANK YOU.

3         IN PRODUCING THE LISTS FOR PLAINTIFFS WILL YOU BE

4   INCLUDING ALL CASES REGARDLESS OF WHETHER THE PARENT MAY HAVE

5   SOME CRIMINAL HISTORY IN THE GOVERNMENT'S VIEW?

6   A.    SO, AGAIN, OUR TASK WILL BE AT THE INTERAGENCY LEVEL TO

7   IDENTIFY THOSE CHILDREN WHO ARE POSSIBLE CHILDREN OF POTENTIAL

8   CLASS MEMBERS.  AND SO THE OUTCOMES THAT WILL COME TO THE

9   COURT WILL BE THOSE CHILDREN WHO ARE THAT, WHO ARE POSSIBLE

10  CHILDREN OF POTENTIAL CLASS MEMBERS, AND THEIR PARENTS WHO

11  WOULD BE POTENTIAL CLASS MEMBERS.

12          MR. GELERNT:  I THINK, YOUR HONOR, THAT IS PROBABLY

13  A QUESTION THAT THE LAWYERS AND YOU WOULD PROBABLY ADDRESS

14  BETTER.

15  Q.    (MR. GELERNT) :  BUT YOU WILL NOT BE EXCLUDING FROM THE

16  LIST PARENTS WITH A CRIMINAL HISTORY IN YOUR REVIEW AND

17  RECONCILIATION.

18  A.    THE HHS REVIEW WOULD ITSELF NOT HAVE THAT INFORMATION,

19  THAT WOULD BE LATER STAGES OF THE REVIEW.  SO I COULDN'T -- I

20  REALLY COULDN'T SPEAK TO THOSE WHICH ARE -- BECAUSE THE KIND

21  OF INFORMATION YOU ARE ASKING ABOUT NOW WOULD BE IN DHS

22  INFORMATION SYSTEMS.

23  Q.    OKAY.  BUT YOU WILL BE PROVIDING TO THE LAWYERS A LIST

24  THAT INCLUDES PARENTS WITH CRIMINAL HISTORY.  YOU WILL NOT BE

25  EXCLUDING THOSE FAMILIES FROM THE LIST YOU PROVIDE TO THE
```

APRIL 25, 2019

1   LAWYERS.

2   **A.**     MY UNDERSTANDING -- AND I WILL BE, I AM SURE, CORRECTED

3   IF I AM IN ERROR.  BUT THAT THE LIST WE PROVIDE TO YOU WOULD

4   -- WHERE THERE ARE SEPARATED CHILDREN WHO WE BELIEVE ARE NOT A

5   CLASS MEMBER FOR SPECIFIC REASONS OUTLINED BY YOUR HONOR, THAT

6   WOULD BE -- WE WOULD INDICATE WHY WE BELIEVE SOMEONE IS NOT A

7   CLASS MEMBER.  I WILL -- THIS IS REALLY A QUESTION FOR DOJ, IF

8   I AM NOT MISTAKEN.

9   **Q.**     OKAY.  I HAD ONE OTHER MORE JUST CLARIFYING QUESTION.  I

10  DON'T KNOW THAT IT MATTERS THAT MUCH FOR NOW SINCE WE DON'T

11  NEED TO GET IN THE WEEDS.

12       BUT IN THE PRIOR REUNIFICATION PROCESS, I GATHER YOU

13  WERE SAYING IT WAS IMPORTANT THAT YOU COULD CHECK WITH THE

14  CASE MANAGER AND THE CASE MANAGER COULD ACTUALLY TALK TO THE

15  CHILD IN THEIR CUSTODY TO CONFIRM WHETHER THEY WERE SEPARATED

16  OR NOT.

17  **A.**     WE WORKED THROUGH THE -- THAT IS SUBSTANTIALLY TRUE.  IT

18  WASN'T JUST THE CASE MANAGER.

19  **Q.**     I AM SORRY.  BUT THROUGH THE FACILITY.

20  **A.**     THE PROVIDERS.  THAT WAS VERY IMPORTANT AT THE TIME

21  BECAUSE THOSE CHILDREN WERE IN CARE.

22  **Q.**     BUT THAT WASN'T CONCLUSIVE, YOU STILL REVIEWED THE

23  RECORDS THAT YOU HAD.

24  **A.**     YES.  BUT, FOR EXAMPLE, IF A CHILD WERE IDENTIFIED BY A

25  CURRENT SHELTER PROVIDER, THIS CHILD WE BELIEVE IS SEPARATED,

APRIL 25, 2019

1    EVEN IF THAT CHILD HAD NOT PINGED, IF YOU WILL, WITH ANY
2    INDICATIONS OF SEPARATION WHEN WE DID THE HEADQUARTERS LEVEL
3    REVIEW, WE INCLUDED THAT CHILD IN THE PROCESS.
4    **Q.**   THE ONLY REASON I ASK IS BECAUSE I GATHER IT WAS
5    IMPORTANT TO HAVE THAT INFORMATION AS CONFIRMING OR GIVING YOU
6    LEADS, BUT YOU STILL WERE ABLE TO DOWNLOAD ROUGHLY 11,000
7    CASES IN APPROXIMATELY TEN DAYS EVEN IF YOU ALSO ADDED ON A
8    CONFIRMING PIECE FROM THE FACILITY.
9    **A.**   WE WERE ABLE TO DO MANUAL CASE FILE REVIEW, BUT THAT
10   MANUAL CASE FILE REVIEW WAS NOT AS ROBUST AS WHAT WE WILL NEED
11   TO DO NOW BECAUSE NOW IT IS ESSENTIALLY ALL WE HAVE TO WORK
12   WITH.
13   **Q.**   RIGHT.  AND THAT IS WHAT I WANTED TO ASK YOU ABOUT.
14        THERE WILL BE CASES, I ASSUME, WHERE YOU LOOK AT THE
15   PORTAL AND THEY ARE EASY CASES, FAIRLY CLEAR, RIGHT?  AND SO
16   THE DOWNLOADING TIME AND REVIEWING FOR EASY CASES COULD BE AS
17   QUICK AS THE PRIOR REUNIFICATION.  WHAT YOU WON'T HAVE IS IN
18   HARDER CASES WHERE THERE IS NOT CLEAR EVIDENCE IN THE PORTAL
19   THE ABILITY TO GO TO THE FACILITY AND CONFIRM ONE WAY OR THE
20   OTHER.
21   **A.**   I THINK THAT THERE WILL BE A NUMBER OF DIFFERENCES.  I
22   MEAN, FUNDAMENTALLY, IN WAYS BOTH HELPFUL AND UNHELPFUL,
23   CHILDREN WHO WERE IN OUR CARE A YEAR OR MORE AGO ARE VERY
24   DIFFERENT THAN CHILDREN CURRENTLY IN CARE FROM SORT OF A
25   PROGRAMMATIC OPERATIONAL POINT OF VIEW.  THERE WILL BE SOME

APRIL 25, 2019

1   WAYS IN WHICH IT IS HELPFUL, AND MANY WAYS IN WHICH IT WILL

2   IMPEDE OUR EFFORTS.  AND THAT IS WHY WE HAVE A DIFFERENT

3   APPROACH THAT IS SPECIFICALLY TAILORED TO THIS PROBLEM SET

4   RATHER THAN THAT PROBLEM SET.

5   **Q.**   I THINK MY LAST QUESTION IS JUST, YOU HAD MENTIONED IN

6   YOUR CONGRESSIONAL TESTIMONY THAT THE JUDGE HAD CREATED A

7   PATHWAY FOR INTERAGENCY COOPERATION FOR THE PRIOR

8   REUNIFICATION.  DID SETTING OF DEADLINES ASSIST YOU IN

9   CREATING URGENCY WITHIN THAT INTERAGENCY TASK?

10  **A.**   WHEN I SAID THAT, I HAVE SAID THIS A COUPLE OF TIMES, I

11  THINK ON THE HILL, THAT WE DID NOT HAVE A PATHWAY TO REUNIFY

12  CHILDREN WITH PARENTS IN ICE DETENTION CUSTODY PRIOR TO YOUR

13  HONOR CREATING THAT PATHWAY.  THAT IS DEFINITELY TRUE.

14      BUT TO BE CLEAR, WHEN I SAY A PATHWAY I MEAN THAT UNDER

15  THE STANDARD TVPRA PROCESS IT WAS JUST EITHER DIFFICULT OR

16  IMPOSSIBLE FOR PARENTS IN A DETAINED STATUS TO DEMONSTRATE

17  EVERYTHING THAT THEY WOULD NEED TO TO MEET THE STANDARDS TO BE

18  A SPONSOR.

19      SO THAT EFFORT TO REUNIFY THOSE I THINK WAS ON THE ORDER

20  OF 1,441 CHILDREN WHO HAD PARENTS IN ICE DETENTION.  THAT

21  WOULD NOT HAVE BEEN POSSIBLE UNTIL YOUR HONOR CREATED A

22  PATHWAY.  BUT I WOULD NOT SAY THAT IT WAS THE -- IT WASN'T THE

23  TIMEFRAME, IT WAS DIRECTION THAT WE RECEIVED FROM THE JUDGE

24  ABOUT WHAT ELEMENTS OF THE TVPRA PROCESS DID NOT APPLY.

25  **Q.**   RIGHT.  BUT I ASSUME THE DEADLINES CREATED SOME URGENCY

APRIL 25, 2019

1   WITHIN THE AGENCIES.

2          **MR. GELERNT:**  THAT'S ALL I HAVE.  IF I COULD HAVE

3   ONE SECOND, YOUR HONOR?

4          **THE COURT:**  YES.

5               **(DISCUSSION OFF THE RECORD)**

6          **MR. GELERNT:**  THANK YOU, COMMANDER.  THAT IS ALL

7   FROM US.

8          **THE WITNESS:**  THANK YOU, SIR.

9          **THE COURT:**  I HAVE JUST A FEW FOLLOW-UP QUESTIONS.

10         THIS INFORMATION-GATHERING PROCESS BY COUNSEL HAS

11  BEEN VERY HELPFUL AND INFORMATIVE AND PUTS A LITTLE MORE MEAT

12  ON THE BONES OF YOUR DECLARATION, WHICH I APPRECIATE VERY

13  MUCH.

14         HOW MANY PERSONNEL DO YOU ANTICIPATE HIRING?  AND

15  THERE WOULD BE TWO GROUPS.  I THINK YOU ARE GOING TO BE

16  CULLING FROM SPECIALIZED FEDERAL PERSONNEL ON THIS INITIAL

17  JUMP-START PILOT PROJECT.  MANY WOULD BE IN THAT GROUP?

18         **THE WITNESS:**  FOR THE PILOT IT WILL ACTUALLY BE

19  QUITE A -- IT WILL PROBABLY BE ABOUT TEN INDIVIDUALS PLUS MY

20  IMMEDIATE TEAM.  AS WE GET TO PROCUREMENT THERE WILL LIKELY BE

21  ON THE ORDER OF -- ON THE DATA ANALYSIS TEAM IT WILL PROBABLY

22  BE A LITTLE HANDFUL, BUT AS WE GET TO PROCUREMENT WE WILL KNOW

23  EXACTLY HOW MANY.  BUT THE STATISTICIANS WILL PROBABLY BE HALF

24  DOZEN OR FEWER.

25         THE CASE FILE REVIEW TEAM, MY REQUEST IS THAT IT BE

APRIL 25, 2019

```
 1   SCALABLE.  SO I AM GOING TO START WITH A SMALL TEAM, TRAIN
 2   THEM, STUDY THEIR PROCESS.  BY MAKING IT SCALABLE IF WE
 3   DETERMINE THAT WE -- AS WE GET STARTED THAT WITH MORE
 4   PERSONNEL WE COULD ACHIEVE A SHORTER TOTAL TIMEFRAME THEN WE
 5   WILL EXPAND, WE WILL SCALE THAT OUT ONCE WE ARE SURE THAT WE
 6   HAVE THE TRAINING AND MANAGEMENT PROCESS, SORT OF METHODOLOGY
 7   CORRECT.
 8            SO THE WAY I WOULD FRAME IT IS THE POINT AT WHICH I
 9   BELIEVE THE NUMBER OF INDIVIDUALS WORKING ON IT HAS BECOME MY
10   LIMITING STEP, I WILL EXPAND THE NUMBER OF INDIVIDUALS.
11   WHATEVER IS MY CONSTRAINT I WILL LOOK TO PUSH THAT CONSTRAINT.
12            THE COURT:  FOR YOUR INITIAL GROUP OF RECORD
13   REVIEWERS, HOW MANY DO YOU PLAN ON HIRING?
14            THE WITNESS:  PROBABLY GOING TO START WITH TEN AND
15   ADD THEM IN INCREMENTS OF TEN AS I NEED TO.
16            WHAT I REALLY WANT TO KNOW, I WANT TO CAREFULLY
17   CURATE THEIR PROCESS ALONG WITH O.R.R. EXPERT OVERSEERS FOR A
18   FEW WEEKS.  I REALLY -- I AM LOOKING TO USE A COUPLE OF FEDS
19   WHO ARE REALLY GOOD AT -- TO COME AND HELP ME WHO ARE REALLY
20   GOOD AT QA AND CONTINUOUS PROCESS IMPROVEMENT.  I WANT TO GET
21   THE PROCESS EXACTLY RIGHT AND THEN WE CAN DETERMINE HOW TO
22   REPLICATE IT AT SCALE IF REQUIRED.
23            THE COURT:  SO IF I HAVE GOT THE NUMBERS RIGHT YOU
24   WILL HAVE ABOUT TEN SPECIALIZED FEDERAL PERSONNEL ON THE
25   JUMP-START PILOT GROUP.
```

APRIL 25, 2019

1              THE WITNESS:  UM-HUM.

2              THE COURT:  YOU WILL HAVE ABOUT SIX DATA PERSONNEL

3    ON THE STATISTICAL MODEL PROCEDURE, AND ABOUT TEN RECORD

4    REVIEWERS.

5              THE WITNESS:  YES, SIR.  YES, YOUR HONOR, TO START.

6              THE COURT:  AND I AM UNDERSTANDING YOU TO BE SAYING

7    THAT THESE 26 OR SO INDIVIDUALS YOU CAN HIRE QUICKLY.

8              THE WITNESS:  WE ARE DOING AN EXPEDITED PROCUREMENT

9    PROCESS AND IT IS REASONABLY FAR ADVANCED.

10             MY GOAL WOULD BE THAT UPON GETTING THE GREEN LIGHT I

11   WILL BRING IN AN ADVANCED FEDERAL TEAM.  I WILL KEEP THAT

12   FEDERAL TEAM ON THE JOB SO THAT WE DON'T LOSE DAYLIGHT WHILE

13   THE PROCUREMENT PROCESS GOES FORWARD.  I ANTICIPATE HAVING THE

14   FULL INITIAL CONTRACT TEAM ON BOTH PILLARS IN PLACE IN THE

15   NEXT FEW WEEKS.

16             THE COURT:  ARE YOU GOING TO BE AVAILABLE AND

17   SHEPHERDING THE PROCESS THE ENTIRE TIME?  IF IT TAKES SIX

18   MONTHS OR A LITTLE MORE YOU WILL BE PRESENT?

19             THE WITNESS:  THAT'S THE EXPECTATION THAT HAS BEEN

20   COMMUNICATED TO ME, SO THAT WOULD CERTAINLY BE WHAT I WOULD

21   ANTICIPATE.  I THINK I STILL HAVE VALUE TO ADD TO THIS

22   PROCESS, AND WHILE I DO I WILL BE PRETTY DEEP IN THE WEEDS.

23             THE COURT:  YOU WON'T BE ON VACATION?

24             (LAUGHTER)

25             THE WITNESS:  IN FAIRNESS, I TOOK A ONE-WEEK


                        APRIL 25, 2019

1   VACATION FOR THE FIRST TIME IN TWO YEARS A WEEK AGO, YOUR

2   HONOR.  AND I HIGHLY RECOMMEND THE EXPERIENCE.

3            **THE COURT:**  I WANT TO MAKE SURE I UNDERSTAND THIS

4   CORRECTLY.  THERE IS AN INDICATION IN THE DECLARATION HERE

5   TODAY THAT IT IS GOING TO TAKE APPROXIMATELY 12 WEEKS TO GET

6   THE STATISTICAL MODEL FORMULATED AND APPLY IT TO THE 47,000

7   FILES.  DOES THAT MEAN IN 12 WEEKS -- THREE MONTHS -- YOU WILL

8   HAVE RUN THROUGH THESE 47,000 FILES AND IDENTIFIED THOSE

9   CHILDREN THAT MAY HAVE BEEN SEPARATED?

10           **THE WITNESS:**  NO, YOUR HONOR.  THERE IS TWO

11   DIFFERENT SORT OF LINES OF EFFORT.

12           IN FAIRNESS, I ALSO BELIEVE THAT WE LIKELY WILL NOT

13   REQUIRE THE FULL 12 WEEKS FOR THE PREDICTION MODEL, BUT I AM

14   NOT INCLINED TO SORT OF PROVIDE ESTIMATES TO YOU THAT ARE

15   EXCESSIVELY -- I WOULD RATHER ERR ON THE SIDE OF SORT OF

16   COMING IN EARLY THAN LATE.

17           THE PREDICTION MODEL WILL BE DESIGNED BY THE

18   STATISTICIANS, HOWEVER LONG IT TAKES THEM TO DO IT.  WE WILL

19   HAVE CASE FILE REVIEWERS WORKING.  WE WON'T LOSE DAYLIGHT ON

20   HAVING CASE FILES REVIEWED.

21           WHEN THE INITIAL PREDICTION MODEL IS AVAILABLE,

22   HOWEVER, WE WILL APPLY IT TO THE ENTIRE POPULATION OF KIDS WHO

23   HAVE NOT BEEN REVIEWED TO RANK ORDER THEM.  AND TO THEN BEGIN

24   THE PROCESS OF A MORE SCIENTIFIC PRIORITIZED REVIEW THAN ANY I

25   COULD DO UNTIL THAT HAPPENS.


                          APRIL 25, 2019

1          WE CAN THEN ALSO BEGIN THE PROCESS OF DOING

2     LEGITIMATE STATISTICAL REVIEW BY THE CASE FILE TEAM OF SAMPLES

3     DRAWN FROM THE LOW PRIORITY GROUP TO SEE IF WE GOT IT RIGHT.

4     BECAUSE IF WE SAMPLE IN THE SORT OF LOW PROBABILITY GROUP AND

5     WE FIND SEPARATED KIDS, THE MODEL DIDN'T WORK.  THE MODEL IS

6     DESIGNED REALLY FUNDAMENTALLY NOT ONLY TO -- TO TELL US TWO

7     THINGS.  FIRST, WHERE THERE ARE GOING TO BE MOST OF THE

8     SEPARATED KIDS, AND, SECOND, WHERE ARE THERE NOT SEPARATED

9     KIDS.  AND IT REALLY DOES NEED TO PRODUCE THOSE AS A SIGN OF

10    SUCCESS.

11          BUT WE WILL LEARN A LOT WHEN WE SAMPLE THAT LOW

12    PROBABILITY GROUP.  AND PART OF THAT IS THAT I THINK ALL OF US

13    WHO HAVE LOOKED AT THIS FOR A LONG TIME, INCLUDING ME, BUT

14    MANY OTHERS IN THIS ROOM TOO, WE HAVE IDEAS ABOUT

15    CHARACTERISTICS THAT ARE MORE LIKELY TO LEAD TO A KID BEING

16    SEPARATED.  I WANT TO USE THE STATISTICAL METHOD TO FIND OUT

17    IF THERE ARE TYPES, IF YOU WILL, OR SUBPOPULATIONS OF

18    SEPARATED KIDS THAT WE DON'T KNOW ABOUT.  THIS TOOL IS REALLY

19    IMPORTANT FOR HELPING US TO KNOW WHAT TO LOOK AT SO WE DON'T

20    MISS KIDS JUST BECAUSE THEY DON'T FIT OUR MENTAL SORT OF

21    PREVIOUS TEMPLATE OF WHAT A SEPARATED CHILD WOULD LOOK LIKE.

22          **THE COURT:**  ALL RIGHT.  AND SO USING THE SIX-MONTH

23    AS A BENCHMARK, THAT SIX-MONTH WOULD INCLUDE THE FORMULATION

24    OF THE STATISTICAL MODEL, THE REVIEW OF HOWEVER MANY FILES

25    THERE ARE, 47,000 OR IN THAT NEIGHBORHOOD, AND THEN I GUESS IT

APRIL 25, 2019

1    WOULD BE THE REVIEW OF THE PORTAL?

2         **THE WITNESS:**  IT WOULD -- WHAT THE SORT OF

3    OPERATIONAL TARGET THAT I HAVE LAID OUT WOULD INCLUDE WOULD BE

4    SEVERAL THINGS.  ALL OF THOSE ARE, IF YOU WILL, SORT OF

5    TACTICS.  AND THOSE ARE REALLY THE TACTICS FOR THE HHS PART OF

6    THE EQUATION.  THERE IS IN ADDITION THE INTERAGENCY TACTICS.

7         WHAT WE WOULD BE LOOKING TO DO IN THE OVERALL PLAN'S

8    OPERATIONAL TARGET OF SIX MONTHS IS IDENTIFY SUBSTANTIALLY ALL

9    OF THE CHILDREN IN THAT -- THE UNSCIENTIFIC TERM THAT I USE

10   WITH THE TEAM IS THE HAYSTACK.  47,000 CHILDREN IN A HAYSTACK.

11   47,000 -- OUT OF THE 47,000 CHILDREN TO FIND SUBSTANTIALLY ALL

12   OF THE CHILDREN IN THAT WHO ARE POSSIBLE CHILDREN OF POTENTIAL

13   CLASS MEMBERS.

14        THESE TACTICS ARE JUST TACTICS TO ACHIEVE THAT GOAL.

15   THE ONES THAT WORK GREAT WILL MAGNIFY, THE ONES THAT DON'T

16   PRODUCE THE RESULTS I AM HOPING FOR WE WILL REFINE AND ADJUST.

17   BUT THE SIX MONTHS IS TO ACHIEVE THAT OUTCOME.  ON A ROLLING

18   BASIS OVER THAT SIX-MONTH PERIOD WE WILL PRODUCE THAT LIST TO

19   SHARE WITH THIS COURT AND WITH THE PLAINTIFFS, HERE ARE THOSE

20   CHILDREN.

21        **THE COURT:**  SO THIS SIX-MONTH INCLUDES THE TIME IT

22   WOULD TAKE FOR YOU TO SHARE INFORMATION WITH CBP AND ICE AND

23   GET THEIR INPUT.

24        **THE WITNESS:**  CORRECT.  THEIR INPUT IS

25   INDISPENSABLE.  OUR COLLEAGUES' INPUT IS INDISPENSABLE TO THE

APRIL 25, 2019

43

1    PROCESS OF IDENTIFYING WHO ARE IN FACT POSSIBLE CHILDREN OF

2    POTENTIAL CLASS MEMBERS.

3            **THE COURT:**  THE LIST THAT YOU WOULD PROVIDE ON A

4    ROLLING BASIS TO MR. GELERNT AND HIS TEAM WOULD INCLUDE WHAT

5    INFORMATION?

6            **THE WITNESS:**  I THINK SOME OF THAT IS STILL BEING

7    DISCUSSED.  BUT MY UNDERSTANDING -- I MEAN, MY SENSE OF WHAT

8    IT WOULD INCLUDE, AT A MINIMUM, WOULD BE:  THE NAME OF EACH

9    CHILD; THE ALIEN NUMBER OF EACH CHILD; THE NAME OF THE PARENT;

10   THE ALIEN NUMBER OF THE PARENT.  THERE MAY HAVE BEEN SOME

11   OTHER -- SOME OTHER ITEMS ALREADY DISCUSSED AND I APOLOGIZE

12   BECAUSE THAT OUTCOMES PIECE IS A LITTLE BIT ON OTHER PEOPLE'S

13   TO-DO LIST.  I AM SURE THAT THEY WILL MEET AND CONFER WHATEVER

14   IS THE SORT OF THE BODY OF INFORMATION THAT IS AGREED UPON IS

15   THERE.

16           AND THEN I THINK WHAT OTHER INFORMATION IS REQUIRED

17   MAY SOME OF IT BE SOME THINGS THAT MAY STILL BE TO BE

18   DISCUSSED.  ONCE BETWEEN THE THREE AGENCY PARTNERS -- WHAT WE

19   NEED FOR OUR OWN PURPOSES TO SORT OF DO THIS WOULD BE THE

20   INFORMATION ABOUT NAMES, RELATIONSHIPS, THE ALIEN NUMBERS THAT

21   ENABLE US TO TRACK IT THROUGH THE SYSTEM.

22           **THE COURT:**  WOULD YOU ALSO BE INCLUDING THE LAST

23   KNOWN PLACEMENT OF THE CHILD, THE SPONSOR?

24           **THE WITNESS:**  MY ASSUMPTION, UNLESS SOMEONE, YOU

25   KNOW, WOULD INSTRUCT ME OTHERWISE, IS THAT WE WOULD PROVIDE

APRIL 25, 2019

1  THE NAME OF THE SPONSOR -- FOR CHILDREN WHO WERE DISCHARGED TO

2  AN INDIVIDUAL SPONSOR THAT WE WOULD PROVIDE THE NAME,

3  RELATIONSHIP, AND ADDRESS OF RECORD.

4       HAVING SAID THAT, IF THAT'S INCLUDED AS A MATTER

5  SORT OF MAYBE TO BE DISCUSSED BETWEEN THE PARTIES, WHAT I CAN

6  SAY FOR CERTAIN IS THAT WE ARE ABLE, WITHIN HHS, USING THE

7  PORTAL, TO PROVIDE THE NAME OF THE SPONSOR, RELATIONSHIP OF

8  THE SPONSOR, ADDRESS OF RECORD OF THE SPONSOR AT THE TIME OF

9  THE DISCHARGE.  WE ABSOLUTELY COULD PROVIDE THAT FOR ANY CHILD

10 WHO HAD BEEN IN OUR CARE AND DISCHARGED TO AN INDIVIDUAL

11 SPONSOR.

12      **THE COURT:**  SO THAT INFORMATION WOULD BE EASY TO

13 INCLUDE ALONG WITH THE MS. L. CLASS MEMBER IDENTIFYING

14 INFORMATION.

15      **THE WITNESS:**  HAVING IDENTIFIED THE CHILD THROUGH

16 THE PROCESS TO PRODUCE THAT INFORMATION ON ANY -- ON ANY KNOWN

17 CHILD, CHILD KNOWN BY NAME AND A-NUMBER IS VERY TECHNICALLY

18 EASY.  THAT ONE IS A SHORT DRAW.

19      I THINK THERE MAY BE SOME LEGITIMATE MATTERS OF

20 DISCUSSION BETWEEN THE PARTIES ABOUT UNDER WHAT CIRCUMSTANCES

21 WE WOULD OR WOULDN'T SHARE THAT -- DOING IT OR NOT ABOUT

22 SPONSOR INFORMATION MAY BE A MORE COMPLICATED DISCUSSION IF

23 THERE ARE FAMILY SYSTEMS ISSUES FOR THE CHILD.  I CAN'T SPEAK

24 TO THAT.  BUT THE TECHNICAL FACT OF PRODUCING THAT INFORMATION

25 AS WE HAD IT AT THE TIME OF DISCHARGE IS NOT TECHNICALLY

APRIL 25, 2019

1  DIFFICULT ONCE WE HAVE THE LIST OF NAMES AND A-NUMBERS OF

2  CHILDREN.

3          **THE COURT:**  ALL RIGHT.  YOU ARE ASKING FOR, YOUR

4  TERM, FOR A GREEN LIGHT SO YOU CAN GET STARTED RIGHT AWAY.

5          **THE WITNESS:**  YES, YOUR HONOR, I AM.

6          **THE COURT:**  IT IS ALSO EVIDENT THAT YOU ARE -- YOU

7  HAVE DONE A LOT OF WORK ALREADY.  THE LAST TIME THE COURT MET

8  WITH COUNSEL, I BELIEVE IT WAS A WEEK AGO TUESDAY, I THINK IT

9  WAS THE 16TH.  AND DURING THIS EIGHT-DAY OR SO PERIOD YOU HAVE

10 ALREADY STARTED, AS I UNDERSTAND IT, FOR EXAMPLE WITH THE LIST

11 OF CHILDREN GOING BACK TO APRIL 19, 2018, YOU COMPILED THAT

12 LIST, WORKED WITH CBP, AND YOU ARE STARTING THAT PROCESS.

13         **THE WITNESS:**  MY COUNTERPART AT CBP, CHIEF VISCONTI,

14 SHARED THAT INFORMATION WITH ME.  I WOULD SAY THAT ON A NUMBER

15 OF FRONTS EFFORTS ARE ALREADY UNDERWAY ON THINGS THAT WE CAN

16 READILY UNDERTAKE.  CLEAR DIRECTION FROM THE COURT, YOU KNOW,

17 SUCH AS THIS PLAN LOOKS GOOD, MAKE THIS HAPPEN, THERE ARE MORE

18 THINGS I COULD DO THEN.

19         **THE COURT:**  OKAY.

20         **THE WITNESS:**  YES, SIR.

21         **THE COURT:**  THANK YOU.

22         INFORMATION BEING PROVIDED ON A ROLLING BASIS TO MR.

23 GELERNT AND HIS TEAM, ASSUMING A GREEN LIGHT TODAY, COULD

24 START WHEN?  SO, IN OTHER WORDS, WHEN WOULD YOU ANTICIPATE MR.

25 GELERNT WOULD GET HIS FIRST LIST?


APRIL 25, 2019

 1          **THE WITNESS:**  I WOULD ANTICIPATE IN A FEW WEEKS.  IT

 2  WOULD REALLY DEPEND ON TWO VARIABLES THAT I DON'T KNOW.

 3          THE FIRST IS FOR THESE PRIORITIZED POPULATIONS, I

 4  THINK WE WOULD BE ABLE TO BEGIN -- I HAVE A FAIRLY HIGH

 5  CONFIDENCE WE WOULD BE ABLE TO BEGIN THE ACTUAL CASE FILE

 6  REVIEW OF THOSE POPULATIONS, TO REALLY GET IN TO THE PORTAL ON

 7  THEM, WITHIN TEN DAYS OF TODAY.

 8          THE TWO VARIABLES THAT I DON'T KNOW ARE HOW EASY OR

 9  COMPLICATED THOSE WILL BE.  AND ALSO BECAUSE THIS WOULD BE US

10  PRIMING THE PUMP FOR A NOVEL INTERAGENCY PROCESS JUST HOW FAST

11  WE WOULD COMPLETE OUR PART, CBP AND ICE THEIRS.

12          I WOULD BE SURPRISED AT ANY SCENARIO WHERE WE DON'T

13  BEGIN HAVING SOME NAMES IN RELATIVELY SHORT ORDER.  BUT

14  EXACTLY WHEN I REALLY COULDN'T SAY.

15          I DO FEEL LIKE AFTER WE HAVE DONE THIS FOR A LITTLE

16  BIT I WILL SOUND LESS VAGUE WHEN I ANSWER YOUR QUESTIONS ABOUT

17  TIMELINE, BUT THERE IS STILL A LOT OF UNKNOWNS ABOUT THE

18  PROCESS.  I WOULD ANTICIPATE WITHIN THE MONTH WE WOULD BE ABLE

19  TO.

20          **THE COURT:**  THE LAST QUESTION I HAVE IS AN IMPORTANT

21  ONE.  IT SEEMS TO ME, BASED ON THE INFORMATION YOU ARE

22  PROVIDING, THAT THIS MAY BE DOABLE IN SIX MONTHS, THE

23  IDENTIFICATION AND THEN PROVIDING THE LIST.

24          IF THE COURT WERE TO ISSUE AN ORDER THAT IT BE DONE

25  WITHIN SIX MONTHS, SUBJECT TO MODIFICATION FOR GOOD CAUSE,

APRIL 25, 2019

 1   FROM YOUR PERSPECTIVE, DOES THAT WORK?

 2            **THE WITNESS:**  TRUTHFULLY, YOUR HONOR, MY PROCESS IS

 3   THE SAME WHETHER YOU ISSUE SUCH AN ORDER OR NOT.  WE ARE GOING

 4   TO GO AS FAST AS WE CAN TO DO -- TO PROVIDE SUBSTANTIALLY ALL

 5   OF THE NAMES.

 6            IF THAT CAN BE DONE IN SIX MONTHS, YOU WILL HAVE IT

 7   IN SIX MONTHS.  IF IT PROVES THAT THAT TAKES, YOU KNOW, SEVEN

 8   MONTHS, THEN I WILL PROBABLY FAIL TO MEET YOUR ORDER AND SOME

 9   OF THOSE WILL STRAGGLE IN A MONTH LATER.

10            THAT IS MY OPERATIONAL TARGET, BUT I HAVE BEEN WRONG

11   BEFORE.  I DON'T KNOW THAT THE ORDER CHANGES THE DYNAMICS FOR

12   US.  WITH OR WITHOUT SUCH A DEADLINE THAT IS MY -- THAT IS MY

13   TARGET FOR OUR INTERAGENCY EFFORT.

14            **THE COURT:**  IF THE COURT WERE TO ISSUE THAT ORDER,

15   SIX MONTHS SUBJECT TO GOOD CAUSE BEING MODIFIED, YOU WOULD BE

16   THE PERSON WHO WOULD PROVIDE THE GOOD CAUSE, ASSUMING WE COME

17   UP TO SIX MONTHS AND IT IS NOT QUITE DONE; AM I CORRECT?

18            **THE WITNESS:**  I ASSUME SO, OR SOME COMBINATION OF ME

19   AND MY TWO COUNTERPARTS SINCE IT WOULD -- IT WOULD BE ON US.

20   AND I DO -- SINCE I PITCHED THE PLAN IN THE FIRST PLACE FROM

21   MY POINT OF VIEW IT IS MOST FUNDAMENTALLY ON ME.

22            **THE COURT:**  ARE THERE ANY QUESTIONS?

23            **MR. GELERNT:**  NO, YOUR HONOR.

24            **THE COURT:**  MR. STEWART?  MR. STIMSON?

25            **MR. STEWART:**  NO.


                        APRIL 25, 2019

1          **THE COURT:**  THANK YOU VERY MUCH.  I APPRECIATE ALL

2     OF YOUR TESTIMONY.

3               **THE WITNESS:**  THANK YOU, YOUR HONOR.

4          **THE COURT:**  MR. STEWART, ANY OBSERVATIONS AT THIS

5     POINT AS TO HOW WE PROCEED?

6               I DID HAVE, PERHAPS, A COUPLE OF QUESTIONS OF

7     COUNSEL.  AND THAT IS IT SEEMS TO ME THAT IT WOULD BE

8     APPROPRIATE IN THIS LIST THAT IS PROVIDED TO MR. GELERNT TO

9     IDENTIFY THE CHILD'S INFORMATION INCLUDING THE LAST SPONSOR.

10    IT SEEMS TO ME THAT WOULD BE IMPORTANT.  AFTER ALL THE

11    PLAINTIFFS' TEAM IS GOING TO BE CONTACTING PARENTS, AND THE

12    WHOLE EXERCISE HAS TO DO WITH THIS FUNDAMENTAL RIGHT OF

13    ASSOCIATION.  AND THE PARENT CAN'T WEIGH IN UNLESS THEY KNOW

14    WHERE THEIR CHILD IS, OR AT LEAST THE LAST KNOWN SPONSOR, IN

15    MAKING THESE REQUESTS TO, IF WE MOVE TO THE NEXT PHASE WHICH

16    WOULD BE TO REUNIFY, REPATRIATE OR NOT.

17              DO YOU AGREE THAT THAT INFORMATION SHOULD BE

18    PROVIDED IN THE LIST?

19         **MR. STEWART:**  CAN I CHECK REALLY QUICK?

20         **THE COURT:**  YES.

21                   **(DISCUSSION OFF THE RECORD)**

22         **MR. STEWART:**  MY UNDERSTANDING, YOUR HONOR, IS TO

23    THE EXTENT WE HAVE THAT WE SHOULD BE ABLE TO PROVIDE IT.  WE

24    MAY NOT HAVE IT UNIVERSALLY.

25         **THE COURT:**  IT CAN ALWAYS BE PROVIDED SUBJECT TO A

APRIL 25, 2019

1    PROTECTIVE ORDER IF THERE ARE PRIVACY ISSUES.  IT SEEMS TO ME
2    THAT CAN BE WORKED THROUGH EASILY.
3         IT ALSO SEEMS TO ME THAT COMMANDER WHITE AND THE
4    TEAM SHOULD BE IDENTIFYING ALL CHILDREN WHO WERE SEPARATED
5    FROM THEIR PARENTS, INCLUDING PARENTS WITH CRIMINAL HISTORY OR
6    COMMUNICABLE DISEASE OR THAT MAY BE IN CUSTODY OR MAY HAVE HAD
7    OTHER FITNESS CONSIDERATIONS, AS ULTIMATELY THOSE CRITERIA,
8    WHETHER THEY TAKE A PARENT OUT OF THE MS. L. CLASS AS DEFINED
9    BY THE COURT, WOULD BE BEST DETERMINED BY COUNSEL AND THE
10   COURT.
11        SO IT SEEMS TO ME THAT IN GOING THROUGH THIS CULLING
12   PROCESS IT SHOULD BE OVER INCLUSIVE TO INCLUDE PARENTS THAT
13   MAY FALL OUT OF THE CLASS, BUT IT WOULD BE THE COURT AND
14   COUNSEL MAKING THAT DETERMINATION, NOT HHS, CBP, OR ICE.
15        **MR. STEWART:**  I DON'T THINK THAT IS QUITE THE RIGHT
16   WAY WITH THIS, YOUR HONOR.  YOUR HONOR RECOGNIZED IN THE
17   CRIMINAL EXCLUSION ORDER THAT THE GOVERNMENT DOES MAKE CERTAIN
18   DETERMINATIONS AS TO THOSE THINGS, AND WHAT WE HAVE BEEN DOING
19   HERE IS WE HAVE BEEN TAKING AN OVER INCLUSIVE APPROACH.  BUT I
20   PRESERVE THOSE ISSUES OF DISCRETION AND THAT SORT OF THING.
21        **THE COURT:**  YES.  AND I MEAN TO PROVIDE THAT
22   DISCRETION TO YOU, BECAUSE I THINK THE GOVERNMENT HAS THAT
23   DISCRETION.  BUT WHAT I MEAN TO SAY IS MR. GELERNT IS ENTITLED
24   TO THE INFORMATION, SO IT SEEMS TO ME THAT THE PARENT SHOULD
25   BE IDENTIFIED EVEN THOUGH HE OR SHE MIGHT FALL OUT OF THE

APRIL 25, 2019

1   CLASS.  IT MAY BE THE GOVERNMENT WILL SAY THIS PERSON HAS

2   CRIMINAL HISTORY, IT IS A DISQUALIFIER, WE DON'T CONSIDER THEM

3   TO BE WITHIN THE CLASS.  MR. GELERNT MAY OR MAY NOT AGREE.  IF

4   HE DISAGREES THEN AT LEAST HE HAS THE INFORMATION AS TO WHO

5   THAT PARENT IS AND CAN RAISE THE ISSUE WITH THE COURT.

6          **MR. STEWART:**  CAN I AGAIN CONFER, JUST MAKE SURE I

7   HAVE THE OPERATIONAL SIDE OF THAT SQUARE, YOUR HONOR?

8          **THE COURT:**  SO IT WOULD BE THE SAME PROCESS WE HAD

9   WITH THE FIRST GROUP, ESSENTIALLY.

10                **(DISCUSSION OFF THE RECORD)**

11         **MR. STEWART:**  YOUR HONOR, WE CAN PROVIDE THAT

12  INFORMATION WITH THE UNDERSTANDING WITHOUT PREJUDICE TO

13  DISCRETIONARY CALLS AND TO OUR POSITION THAT THOSE WHO FIT

14  WITHIN EXCLUSIONS ARE NOT MEMBERS OF THE CLASS.  BUT IN THE

15  INTEREST OF INCLUSIVENESS AND GETTING THE JOB DONE, WE CAN DO

16  THAT, JUST MAINTAINING ALL OF THOSE ARGUMENTS AND EXCLUSIONS.

17         **THE COURT:**  OKAY.  DO YOU HAVE ANYTHING ELSE TO ADD?

18         **MR. STEWART:**  I THINK ON THE TIMING, YOUR HONOR.  I

19  THINK THAT YOU HAVE HEARD FROM COMMANDER WHITE.  MY FRIEND MR.

20  GELERNT MENTIONED EARLIER THIS CONCERN ABOUT THE BENEFIT OF

21  DEADLINES, THE RISK OF BUREAUCRATIC SLIPPAGE.  AS YOUR HONOR

22  IS WELL AWARE, COMMANDER WHITE IS THE EXACT OPPOSITE OF

23  BUREAUCRATIC SLIPPAGE, I THINK IT IS FAIR TO SAY.  I DON'T SEE

24  A NEED TO PIN A DEADLINE TO HIS EFFORTS WHEN IT IS QUITE CLEAR

25  THAT HE IS GOING TO PROCEED WITH ALL DISPATCH EITHER WAY.  IT

APRIL 25, 2019

1    IS, I THINK, UNFORTUNATELY SOMEWHAT UNFAIR TO HIM IF FOR ANY

2    OF THE UNKNOWNS HE ENCOUNTERS OR ANY CHALLENGES THAT DEADLINE

3    WERE TO PASS AND, AGAIN, THROUGH NO FAULT OF HIS OWN AND

4    NOTHING BUT DISPATCH AND GOOD FAITH HE WERE TO BE TAGGED WITH

5    THE GOVERNMENT BLOWING THE DEADLINE OR SOME OTHER SUGGESTION

6    LIKE THAT.

7            I THINK THE APPROPRIATE WAY TO DO THIS, IN LIGHT OF

8    THE CIRCUMSTANCE WHERE WE HAVE A NONPARTISAN, AS THE COURT HAS

9    IDENTIFIED, BROKER WHO IS GOING TO GET THE JOB DONE WITH

10   DISPATCH AND SKILL AND EXPERTISE AND WHO IS NOT COMFORTABLE TO

11   GIVE A TIME CERTAIN BUT HAS ARTICULATED A GOOD FAITH

12   ASSESSMENT, I THINK THE BEST APPROACH IS THE ONE WE HAVE LAID

13   OUT EARLY IN OUR SUBMISSION TODAY, YOUR HONOR, WHICH IS UPDATE

14   THE COURT EVERY TEN DAYS, PROCEED ON A ROLLING BASIS.  IF

15   THERE ARE ISSUES FLAG THEM.  IF A DIFFERENT APPROACH BECOMES

16   THE APPROPRIATE ONE, YOUR HONOR WOULD RETAIN THE ABILITY TO DO

17   THAT AT THE RIGHT TIME.  BUT THERE IS NOT IN THE WAY OF JUST

18   SORT OF ANY BASIS IN EVIDENCE TO DO SOMETHING ELSE, YOUR

19   HONOR.

20           I THINK THAT THE BEST WAY IS TO SAY COMMANDER WHITE

21   AND HIS FELLOW INTERAGENCY PARTNERS HAVE CRAFTED A GOOD SOLID

22   PLAN THAT AIMS TO GET THIS TASK COMPLETED VERY SWIFTLY, AS

23   SWIFTLY AS CAN REASONABLY BE DONE, HOPEFULLY WITHIN SIX

24   MONTHS.  THERE WILL BE TRANSPARENCY IN THE EFFORTS TO DO THAT.

25   WE CAN CHECK BACK AND REVISIT IF THE COURT NEEDS TO ACT

APRIL 25, 2019

 1   FURTHER, BUT BY ALL INDICATIONS THE APPROPRIATE APPROACH IS

 2   GREEN LIGHT, KEEP THE COURT POSTED.  PROVIDE THE ROLLING LISTS

 3   AND LET'S GET THIS JOB DONE TIMELY.  THAT IS WHAT I ADD, YOUR

 4   HONOR.

 5            **THE COURT:**  THANK YOU.

 6            MR. GELERNT.

 7            **MR. GELERNT:**  YOUR HONOR, I JUST HAD TWO VERY BRIEF

 8   THINGS.

 9            THE FIRST IS -- AND I DON'T KNOW, MAYBE THE COURT

10   MEANT TO INCLUDE THIS.  WHEN THEY PROVIDE CONTACT INFORMATION

11   FOR THE SPONSOR, WHICH IS OBVIOUSLY GOING TO BE CRITICAL, I

12   THINK WE ALSO ASK THAT THERE BE CONTACT INFORMATION FOR THE

13   PARENT, WHICH THEY HAVE THAT.

14            **THE COURT:**  YES.

15            **MR. GELERNT:**  LAST KNOWN ADDRESS.  ESPECIALLY

16   BECAUSE, I THINK AS THE COMMANDER WOULD AGREE, SOMETIMES THE

17   KID WILL BE GIVEN TO A SPONSOR BUT THEN MOVED ON TO ANOTHER

18   SPONSOR, SO WE NEED TO CONTACT BOTH SIDES.  IT IS OBVIOUSLY

19   GOING TO BE A BIGGER TASK THAN IT PREVIOUSLY WAS, BUT WE DO

20   NEED THAT INFORMATION ON BOTH SIDES.  I ASSUME THAT WILL BE

21   AVAILABLE TO THE GOVERNMENT ONCE THEY FIND THE PARENT IN THE

22   CBP FILE, AT LEAST SOME LAST KNOWN ADDRESS OR PHONE NUMBER OR

23   SOMETHING.

24            **MR. STEWART:**  I THINK THE AIM OF THE GOVERNMENT IS

25   GOING TO BE TO PROVIDE THAT SORT OF INFORMATION WHEN WE HAVE

APRIL 25, 2019

1    IT, YOUR HONOR.

2             I AM ALSO TOLD THAT I MAY HAVE SAID TEN DAYS WHEN I

3    MEANT 30 DAYS ON THE REPORTS.  I BELIEVE 30 DAYS IS SOMETHING

4    THAT BOTH SIDES AGREE ON.  IN CASE I MISSPOKE, YOUR HONOR.

5             **MR. GELERNT:**  YOUR HONOR, JUST VERY BRIEFLY.

6             WE OBVIOUSLY BELIEVE THAT YOUR SUGGESTION OF A

7    SIX-MONTH DEADLINE BUT THE COMMANDER CAN COME IN WITH GOOD

8    CAUSE ALLOWS FOR HIM TO SAY, LOOK, I HAVE ENCOUNTERED THESE

9    OBSTACLES.

10            WE HAVE, OF COURSE, ALL FAITH IN COMMANDER WHITE,

11   BUT I DO THINK HIM SAYING TO THE REST OF THESE LARGE AGENCIES

12   AS SOON AS POSSIBLE IS A SLIGHTLY DIFFERENT THING THAN HIM

13   SAYING THE COURT REALLY WANTS IT DONE IN SIX MONTHS UNLESS I

14   HAVE GOOD CAUSE.

15            SO THAT -- I WOULD LEAVE IT AT THAT.

16            **THE COURT:**  THANK YOU ALL FOR COMING IN.

17            THIS HEARING, LIKE THE FIRST ONE WE HAD WITH

18   COMMANDER WHITE, HAS BEEN EXTREMELY INFORMATIVE AND

19   PRODUCTIVE, AND I AM VERY GRATEFUL TO THE PARTIES AND TO

20   COMMANDER WHITE.

21            YOU REALLY ARE A BEACON OF LIGHT IN THIS PROCESS.

22   YOU MADE IT HAPPEN THE FIRST TIME.  YOU HAVE GREAT CREDIBILITY

23   WITH THE COURT.  I HAVE ABSOLUTE CONFIDENCE THAT YOU ARE GOING

24   TO MAKE IT HAPPEN THIS TIME AS WELL.  THIS IS A MORE

25   CHALLENGING GROUP BECAUSE, AS YOU SAY, THESE CHILDREN ARE NOT

APRIL 25, 2019

1    IN O.R.R. CARE.  SO IT IS NECESSARILY A PORTAL AND DOCUMENT

2    REVIEW BASED PROCESS, WHICH WILL TAKE ADDITIONAL TIME.  AND IT

3    IS A NOVEL STEP, AS WELL.

4          BUT THE MEET AND CONFER WAS OBVIOUSLY VERY

5    PRODUCTIVE.  AND THE TEAM THAT COMMANDER WHITE HAS ASSEMBLED

6    AND IS LEADING, INCLUDING WITH MR. VISCONTI AND THE OTHERS AT

7    CBP, IS, I THINK, AN EXCELLENT APPROACH.  I ADOPT

8    WHOLEHEARTEDLY WHAT HAS BEEN SET OUT IN THE DECLARATION

9    SUBMITTED TODAY BY COMMANDER WHITE AND MR. VISCONTI.

10          YOU WOULD, AND DO, HAVE A GREEN LIGHT EFFECTIVE NOW.

11   AND SO WE WILL ISSUE AN ORDER SO INDICATING.

12          AND I ASK THAT YOU DO AS YOU SAY, AND I KNOW YOU

13   WILL, TO WORK WITH ALL DISPATCH TO GET THIS DONE RIGHT AND AS

14   QUICKLY AS HUMANLY POSSIBLE.

15          THE 30-DAY REPORTING, I THINK, IS GOOD.  I MAY

16   SHORTEN IT JUST A LITTLE TO THREE WEEKS OR SO.  I WOULD RATHER

17   STAY AHEAD OF THE PROCESS, HAVE MORE INFORMATION AND HAVE

18   ASSURANCE FROM COMMANDER WHITE THAT THIS IS MOVING

19   EXPEDITIOUSLY AND MOVING IN THE RIGHT DIRECTION.  AND THAT IF

20   THERE ARE ANY PROBLEMS WE KNOW ABOUT IT SOONER RATHER THAN

21   LATER.

22          I HAVE THE UTMOST CONFIDENCE IN COMMANDER WHITE, BUT

23   I AM GOING TO ISSUE AN ORDER TO DO THIS IN SIX MONTHS, SUBJECT

24   TO GOOD CAUSE.

25          AND THE REASON FOR THAT IS I THINK IT CAN BE DONE,

APRIL 25, 2019

 1   BASED ON THE INFORMATION I HAVE.  ALTHOUGH I UNDERSTAND, AS

 2   YOU ARE SAYING, COMMANDER WHITE, THAT YOU ARE ONLY GIVING THE

 3   COURT THE BEST INFORMATION YOU HAVE BASED ON SOMETHING THAT IS

 4   UNIQUE AND NOVEL, AND THAT YOU MAY NOT BE ABLE TO MEET THAT

 5   SIX-MONTH TIMEFRAME.

 6            BUT IT IS IMPORTANT FOR ALL GOVERNMENT ACTORS TO

 7   HAVE A TIMEFRAME AND A DEADLINE.  AND I INTEND TO STAND ON IT

 8   UNLESS YOU INDICATE OTHERWISE AND ARTICULATE REASONS THAT

 9   DEMONSTRATE GOOD CAUSE FOR AN EXTENSION.

10            ALL PARTIES WILL BE RELYING VERY HEAVILY ON YOU, AND

11   I AM COMFORTED BY THE FACT THAT YOU WILL BE HERE, YOU WON'T BE

12   ON VACATION, YOU WILL BE OVERSEEING THIS PROCESS BEGINNING TO

13   END.  AND I DO ASK THAT YOU REPORT TO THE COURT.

14            I WILL BE SETTING DATES FOR A STATUS CONFERENCE

15   FOLLOWING THE JOINT STATUS REPORT, AND I WOULD LIKE YOU ON THE

16   LINE.  I DON'T WANT TO TAKE YOU AWAY FROM YOUR WORK BY HAVING

17   TO TRAVEL HERE, SO IT WOULD BE TELEPHONIC.  BUT I ASK THAT YOU

18   BE AVAILABLE SO THAT YOU CAN REPORT TO THE COURT AND ANSWER

19   ANY QUESTIONS THE COURT AND COUNSEL MIGHT HAVE.

20            I THINK THE ORDER WILL BE VERY BRIEF.  IT IS REALLY

21   JUST GOING TO BE A GREEN LIGHT, LET'S GET MOVING.  AND WHAT WE

22   WILL BE MOST INTERESTED IN WILL BE THIS NEXT STATUS CONFERENCE

23   TO SEE HOW WE ARE DOING.  BUT WHAT I AM EXPECTING IS THAT THIS

24   ROLLOUT WILL BEGIN VERY SOON.  AND THE IDEAL SITUATION WILL BE

25   FOR THE PLAINTIFFS' TEAM, MR. HERZOG AND OTHERS, TO START

APRIL 25, 2019

1  GETTING THE INFORMATION SO THAT WHILE YOU ARE DOING YOUR GOOD

2  WORK, COMMANDER WHITE, MR. GELERNT AND HIS TEAM CAN BE

3  REACHING OUT AND MAKING THIS CONTACT WITH THESE PARENTS SO

4  THAT AS WE GET TO THE SIX-MONTH MARK WE WILL MAKE GREAT

5  PROGRESS, NOT ONLY IN IDENTIFYING BUT REACHING OUT TO THESE

6  PARENTS.

7          WITH THAT, I WILL FIX A DATE FOR THE NEXT JOINT

8  STATUS REPORT AND TELEPHONIC HEARING, APPROXIMATELY THREE TO

9  FOUR WEEKS OUT.

10         ARE THERE ANY OTHER MATTERS WE NEED TO ADDRESS?

11         **MR. GELERNT:**  NOT FROM US, YOUR HONOR.

12         **THE COURT:**  OKAY.

13         **MR. STEWART:**  NONE FROM US, YOUR HONOR.

14         **THE COURT:**  THANK YOU.  I APPRECIATE IT.

15

16                              *   *   *

17         I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
18         IN THE ABOVE-ENTITLED MATTER.

19         S/LEEANN PENCE                    4/28/2019
           LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
20

21

22

23

24

25

                        APRIL 25, 2019