1  JOSEPH H. HUNT
   Assistant Attorney General
2  SCOTT G. STEWART
   Deputy Assistant Attorney General
3  WILLIAM C. PEACHEY
4  Director
   Office of Immigration Litigation
5  WILLIAM C. SILVIS
6  Assistant Director
   Office of Immigration Litigation
7  SARAH B. FABIAN
8  Senior Litigation Counsel
9  NICOLE MURLEY
   Trial Attorney
10 Office of Immigration Litigation
11 U.S. Department of Justice
   Box 868, Ben Franklin Station
12 Washington, DC 20442
13 Telephone: (202) 532-4824
   Fax: (202) 616-8962
14
15 ADAM L. BRAVERMAN
   United States Attorney
16 SAMUEL W. BETTWY
17 Assistant U.S. Attorney
   California Bar No. 94918
18 Office of the U.S. Attorney
19 880 Front Street, Room 6293
   San Diego, CA 92101-8893
20 619-546-7125
21 619-546-7751 (fax)

22 *Attorneys for Federal Respondents-*
23 *Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-*
*Plaintiffs*
*Admitted Pro Hac Vice*

24

25

26

27

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

                Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

             Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report ("JSR") by 3:00pm on June 6, 2019, in anticipation of the status conference scheduled at 1:00pm on June 7, 2019. The parties submit this joint status report in accordance with the Court's instruction.

## I. DEFENDANTS' POSITIONS

### A. Update on Reunifications for the Original Class Period

As of June 4, 2019, Defendants have discharged 2,773 of 2,814 possible children of potential class members for the original class period.  That is, Defendants have discharged 2,773 of the 2,814 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018.  *See* Table 1: Reunification Update. This is an increase of seven discharges reported in Table 1 since the JSR filed on May 7, 2019. *See* ECF No. 407.  One of the seven

children was reunified with the separated parent;[1] and the remaining six were discharged under other appropriate circumstances, such as discharges to other appropriate sponsors.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States, but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,814 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of June 4, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

---

[1] This parent was in ICE custody as of the filing of the previous JSR, *see* ECF No. 407, when he was reported as "out of class" due to fitness concerns. However, he was subsequently discharged from ICE custody into the interior of the United States. Upon his discharge from ICE custody, ORR immediately reunified the parent with his child.

**Table 1: Reunification Update**

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2707 | 2814 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 106 | 2667 | 2773 |
| • Children discharged by being reunified with separated parent | 82 | 2085 | 2167 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 24 | 582 | 606 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification or is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
| ○ Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |
| ○ Parent in other federal, state, or local custody | 0 | 0 | 0 |
| ○ Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 1 | 6 | 7 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 14 | 14 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 17 | 17 |

| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 1 | 1 |
|---|---|---|---|
| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |

## B. Update on Removed Class Members for the Original Class Period

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least June 4, 2019. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 19 | Defs. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 19 | Defs. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 19 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 19 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 19 | Defs. |
| **PROCESS 3: Determine** | Children for whom ACLU has communicated  parental intent for minor: | 17 | Pls. |

| Parental Intention for Minor | • Children whose parents waived reunification | 17 | Pls. |
|---|---|---|---|
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | PIs |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

## C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| Election Forms[2] | Total number of executed election forms received by the Government | **365 (234 Parents/131 Children)[3]** |
| | • Number who elect to receive settlement procedures | **206 (133 Parents/73 Children)** |
| | • Number who waive settlement procedures | **159 (101 Parents/58 Children)[4]** |
| Interviews | Total number of class members who received interviews | **141[5]** |
| | • Parents who received interviews | **74** |
| | • Children who received interviews | **67** |
| Decisions | Total number of CFI/RFI decisions issued for parents by USCIS | **66[6]** |

[2] The number of election forms reported here is the number received by the Government as of May 28, 2019.

[3] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[4] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[5] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[6] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **66**[7] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **0** |
| | Total number of CFI decisions issued for children by USCIS | **73**[8] |
| | • Number of children determined to establish CF by USCIS | **73**[9] |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **2** |
| | • Number of parents granted asylum by USCIS | **1** |
| | • Number of children granted asylum by USCIS | **1**[10] |

[7] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[8] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[9] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[10] This number includes children granted asylum as a dependent on their parent's asylum application.

18cv428 DMS MDD

| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **101 Parents**[11] |
|---|---|---|

### D. Parents Who ICE Records Reflect Have Absconded After Being Released

| **Absconders** | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | **159**[12] |
|---|---|---|

### E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. In order to keep the Court updated on Defendants' progress with regard to this plan, Defendants submit the attached declarations from Jallyn Sualog, Jay Visconti, and Dawnisha Helland.

With regard to the HHS file review, HHS also provides the following update. HHS has determined the correct number of cases to be reviewed was 32,972 (and not 47,083 as previously stated). HHS has since completed a preliminary review of all the case files. To ensure accuracy and completeness, however, HHS is currently doing a quality control of the negative results. Because HHS has completed its initial

---

[11] This number is as of May 28, 2019.

[12] Data from time period of May 4, 2018 to May 24, 2019.

review of all the case files, it has discontinued the procurement to hire and train a team of data scientists and scalable teams of record reviewers.

**F.  Pending Motion Regarding Released Settlement Class Members**

Plaintiffs reached out with one inquiry regarding this issue which Defendants understand was subsequently resolved. Defendants have heard nothing further from Plaintiffs regarding this issue and believe this issue to have been resolved.

**G. Children Awaiting Placement.**

Plaintiffs sent an inquiry on May 15, 2019 regarding nine children who they believed remained in ORR custody. Defendants have reviewed those cases and provided a response to Plaintiffs regarding these nine children on June 3, 2019. In summary, one of the nine children returned to his home country; two children have potential sponsors who are currently undergoing the TVPRA release process; and six children either have no available sponsor, or the child has indicated that he or she does not seek release to the potential sponsors identified.

**H. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

*1. Data Requested by Plaintiffs*

Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR.

2.  *Processes and Procedures*

Defendants have provided a summary outline memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018. The outline also included an overview of the options for separated parents and children to obtain information about reunification options. Defendants also have reached out to representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures.

On March 4, 2019, Plaintiffs and lawyers for the children's legal service providers sent comments and questions in response to the government's proposals. Defendants reviewed those comments and questions, and the parties met and conferred on April 15, 2019, regarding those inquiries. On May 28, 2019, Plaintiffs sent additional commends related to Defendants' proposals. Defendants are considering those comments and will follow up with Plaintiffs as soon as possible.

II.     *MS. L.* PLAINTIFFS' POSITION

1.     <u>Centralized Database and Procedures and Standards to Govern Further Separations</u>

On May 28, Plaintiffs provided Defendants with a counterproposal regarding the protocols for inter-agency information sharing about continued family separations.  Defendants are reviewing that counterproposal.  The parties will continue to meet and confer on this issue.

2.     <u>Deported Parents and Settlement</u>

On June 6, Plaintiffs filed a motion seeking relief for 21 deported parents who were separated from their children.  *See* ECF No. 418.  As set out in that motion, the parents submitted applications for return pursuant to the Settlement Agreement, which Defendants denied. These parents are seeking Court intervention to allow them a path to reunify with their children in the United States.

Plaintiffs request that the Court set a briefing schedule and hearing date for the motion.

3.     <u>Identification of Expanded Class Members</u>

As of 5:30 p.m. on June 6, when Plaintiffs sent their part of the JSR to the government, Plaintiffs have not received any information about members of the expanded class.

4.     <u>Steering Committee Progress</u>

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications.  On May 10, the government reported that, as of May 1, 23 children with removed parents remained in ORR custody.  The Committee has advised the government that no preference will be forthcoming for one of those parents due to complex and individualized family circumstances, leaving 22 children with removed parents in the operative group. The Committee has delivered preferences for the parents of 21

of those children.  The parent of the remaining child is seeking to return to the United States under the Settlement Agreement, and the Steering Committee has advised the government that the delivery of a parental reunification election in this case will therefore be delayed.

The status of efforts based on the operative group of 22 children in ORR custody with removed parents appears in the table immediately below.[13]

| | |
|---|---|
| Removed parents identified by the government to the Steering Committee as of 5/10/2019 | 22 |
| ███████████████████████████████████████████ | |
| Parent's final preference has been communicated to the government | 21[14] |
| • Parent has elected reunification in Country of Origin | 0 |
| • Parent has elected to waive reunification in Country of Origin | 21 |
| Total number of cases where the parent seeks to return to the U.S. | 1 |

**E.   Children Whose Parents Have Submitted Preferences and Are Still Detained**

In February, the Steering Committee began sending the government information about children who remained in ORR care months after the Steering Committee had submitted their final reunification election. As of May 1, 21 children of class members remained in ORR care who had previously submitted

---

[13]   As discussed at the October 25 Status Conference, Plaintiffs are reporting a set of detailed numbers based on the government's most recent list of children in ORR custody with removed parents.  The numbers presented in this Joint Status Report are based on the numbers provided by the government in its May 10 data exchange to Plaintiffs, excluding the one child for which no preference will be forthcoming.

[14]   The Steering Committee determined that for one child it was appropriate to report the preference of a non-removed parent because the Steering Committee was unable to reach the removed parent.

final reunification elections. Six of the 21 have now been in ORR care more than nine months after the Steering Committee submitted their final reunification election with a sponsor identified.  The parties will continue to meet and confer on this issue.

## III.   *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Counsel for Plaintiffs are providing the government with signed waiver forms as they are received from class members. The parties continue to meet and confer on issues related to settlement implementation as they arise, including issues regarding interviews for class members, statistical reporting, and various individualized issues. In addition, the parties continue to work through how best to identify and contact class members who may be in need of settlement relief. The parties will alert the Court of any issues that require the Court's guidance.

DATED: June 6, 2019                Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L, et al.,<br><br>            Petitioners-Plaintiffs,<br><br>    vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>            Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**DECLARATION OF DAWNISHA HELLAND OUTLINING ICE ROLE IN PROCESS OF IDENTIFYING EXPANDED CLASS MEMBERS** |

## DECLARATION OF DAWNISHA HELLAND

I, Dawnisha Helland, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.      I am a Detention and Deportation Officer acting as a National Juvenile Coordinator in the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), located in Washington, DC. I began my tenure with the Department of Homeland Security in 2008, with the U.S. Border Patrol (USBP) as a Border Patrol Agent within the El Centro Sector. Currently I am the lead National Juvenile Coordinator, managing the

1

family separation and reunification portfolio.

2. My primary responsibilities include case reviews for family separations and reunifications, data quality for family separation cases, and coordination for family reunifications.

3. ERO is one of the two principal operational components in ICE, the other being the Office of Homeland Security Investigations (HSI). ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. One program which ERO oversees is JFRMU. JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). FOJCs serve as subject matter experts on juvenile and family matters in their respective field offices.

4. On Friday, March 8, 2019, this Court ordered a modification of the previously certified class to include all adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017.

5. The Respondent-Defendants in this case are involved in developing and coordinating the identification process for expanded class members with the other named Defendants. ICE takes its reporting requirements very seriously. Only after

review of this information through a labor intensive, manual verification on a line by line basis, can the agencies identify expanded class members and confidently report an accurate number to the Court.

6.     As a part of the process of identifying expanded class members, ICE receives lists from U.S. Customs and Border Protection (CBP) which contain information from both HHS records and CBP records on potential class members. A confirmed separation is agreement among all three agencies that the available information indicates that the case is a separation of an adult and child.

7.     Once a separation is confirmed, the agencies must further review the case to determine if the adult is a parent and if the parent is a class member or is excluded from the class.  To initiate this review, ICE queries its internal databases to collect and insert data regarding a separated adult's biographical information, criminal history, detention status, detention location or release information, removal information (if applicable), and last known contact info.  That information will then be shared with CBP and HHS so that the agencies can reach a consensus on whether each adult is a class member or is excluded from the class.

8.     As of the date of this declaration, ICE has added its information to the first two lists of confirmed separations and anticipates sharing those lists with CBP and HHS for class membership review within the next week.  I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  June 06, 2019

Dawnisha Helland
Detention and Deportation Officer, National Juvenile Coordinator
Immigration and Customs Enforcement
Enforcement and Removal Operations
Juvenile and Family Residential Management Unit

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Ms. L., *et al.*,                            )
      *Plaintiffs*,                   )
                 )
                 )
v.                                           )        No. 3:18-cv-00428-DMS-MDD
                 )
U.S. Immigration and Customs                 )
Enforcement, *et al.*,                       )
      *Defendants*.                   )
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯)

## DECLARATION OF JAY VISCONTI

I, Jay Visconti, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1. I am an Assistant Chief with the United States Border Patrol (USBP) currently serving in the capacity as a Senior Advisor to the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner, U.S. Customs and Border Protection (CBP), Department of Homeland Security.  I have been in this role since July, 2016.  In this role, I am responsible for directly supporting and advising the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner and the Deputy Commissioner on issues such as USBP's strategic, operational and tactical plans, policies and procedures governing threats, such as: terrorist organizations, criminal organizations, illegal immigration/human smuggling, narcotics and contraband smuggling, transnational gangs, threats to legitimate trade and travel, and imported consumer products jeopardizing public safety.  An additional role that I perform is as the Director of the CBP Statistical Tracking and Analysis Team

1

(STAT), which provides high-level analysis and reporting into CBP's immigration and seizure data. Because of my work with the CBP STAT, and my previous position as the Assistant Chief over the USBP's Statistics and Data Integrity (SDI) Branch, I was involved in the previous *Ms. L* reunification efforts, and was again called upon to be the CBP Operational Lead for the government's plan to account for the members of the expanded class.

2. Prior to serving in this position, I was the Assistant Chief over the USBP SDI Branch, where I provided day to day statistics and analysis to USBP senior leadership as well as ensuring data quality within the USBP data. I have been a U.S. Border Patrol agent since January 2, 1996. The U.S. Border Patrol (USBP) is the operational component of CBP with the responsibility of, among other things, apprehending individuals who enter between the ports of entry.

3. I am familiar with the *Ms. L* litigation, and have personally participated in CBP efforts related to this litigation. In July 2018, I served as CBP's main point of contact in the interagency effort to identify and reunify the children of *Ms. L* class members. During this role, I worked closely with the Department of Health and Human Services (HHS) and U.S. Immigration and Customs Enforcement (ICE). I worked with the HHS ASPER Data team to reconcile unaccompanied alien children file records identified by HHS as possible separations with the relevant data in CBP's electronic systems of records.

4. I am also familiar with CBP's efforts to record and track family separations in CBP's electronic systems of records, and work closely with relevant individuals in both the

U.S. Border Patrol and Office of Field Operations on such efforts.  I also communicate regularly with my colleagues at ICE Enforcement and Removal Operations (ERO).

5. As of June 3rd, 2019, CBP has received six lists from HHS to review for potential expanded class members.  CBP compares the information on the HHS lists of potential expanded class members with the data in CBP's systems of records to determine which individuals on the lists are confirmed separations.

6. These lists were provided by HHS on a rolling basis, and CBP is handling them on a rolling basis.

7. Between May 21 and June 3, 2019, CBP completed review on and sent to ICE three updated lists based off of the original six lists from HHS.  CBP continues to work on the three other lists.

8. I continue to have regular contact with the CBP teams actually doing the data verifications, and with ICE and HHS to assure that the process of verifying the names is progressing smoothly, and any issues are timely addressed.

**9.** I make this declaration in order to provide an update on the progress CBP is making as part of the government's plan to identify the members of the expanded class, and to explain CBP's role in the process, following my previous declaration.

10. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this  6th  day of June, 2019.

_____
Jay Visconti
Senior Advisor
U.S. Customs and Border Protection

3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L,, et al. | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | Hon. Dana M. Sabraw |
| vs. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

## SUPPLEMENTAL DECLARATION OF JALLYN SUALOG, DEPUTY DIRECTOR, OFFICE OF REFUGEE RESETTLEMENT

I, Jallyn Sualog, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1.     I am the Deputy Director of the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), U.S. Department of Health and Human Services ("HHS").

2.     The purpose of this Supplemental Declaration is to amend a statement in the Declaration that I submitted on February 7, 2019 in support of the Government's Opposition to Plaintiffs' Motion to Clarify Scope of the Ms. L Class.  *See* ECF No. 351-1.

3.     In my February Declaration, I stated that "my data team pull[ed] the number of unaccompanied alien children ("UACs") in ORR care and custody for the time period of July 1, 2017 through June, 2018.  The data team identified a total of 47,083 UACs in ORR care and custody for that period."  *Id.* at ¶13.

4.     On April 25, 2019, Commander Jonathan White submitted a supplemental declaration in support of the Government's Proposed Expanded *Ms. L.* Class Identification Plan, which was designed to identify substantially all class members in the expanded class period within 6 months.   In his declaration, Commander White indicated that the

1

Government would "review the case files for the approximately 47,000 children from the class expansion period." *See* ECF No. 403-1 at ¶11. Apparently, Commander White relied on my February Declaration.

5. However, during the review of case files to identify the potential class members for the expanded class period, our data team determined that the initial estimate of 47,083 UACs provided in my previous declaration was overbroad in two respects. First, it included 2,583 children who were referred to ORR prior to July 1, 2017 but who were still in ORR custody on July 1, 2017. Those children fall outside of the expanded class period. Second, the initial number of 47,083 included 11,528 children who were admitted into ORR care between July 1, 2017 and June 25, 2018, but who were already reviewed for indication of separation for the original class period. As a result, the correct number of UACs that fall within the expanded class period is actually 32,972.

6. In other words, my initial count of 47,083 was overbroad, because it included a total of 14,111 children who did not fit within the parameters of the modified class as described in this Court's March 8, 2019 Order. *See* ECF No. 386.

7. Consequently, HHS has reviewed the case file records of 32,972 children to identify the possible children of potential class members referred to and discharged from ORR care between July 1, 2017 and June 25, 2018.

Executed on June 5, 2019.

Jallyn Sualog