UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
    _____
                                   )
MS. L., ET AL.,                    )
                                   ) CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS, )
                                   )
VS.                                )
                                   )
                                   )
                                   )
                                   )
U.S. IMMIGRATION AND CUSTOMS       )  SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,       )  FRIDAY JUNE 7, 2019
                                   )  1:00 P.M. CALENDAR
            RESPONDENTS-DEFENDANTS. )
    -------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE


REPORTED BY:                LEE ANN PENCE,
                            OFFICIAL COURT REPORTER
                            UNITED STATES COURTHOUSE
                            333 WEST BROADWAY, ROOM 1393
                            SAN DIEGO, CALIFORNIA 92101

FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                  DANIEL GALINDO, ESQ.
                                  ACLU IMMIGRANT RIGHTS PROJECT
                                  125 BROAD STREET 18TH FLOOR
                                  NEW YORK, NEW YORK 10004


FOR DEFENDANT:                    SCOTT STEWART, ESQ.
                                  SARAH B. FABIAN, ESQ.
                                  U.S. DEPARTMENT OF JUSTICE
                                  OFFICE OF IMMIGRATION LITIGATION
                                  P.O. BOX 868
                                  BEN FRANKLIN STATION
                                  WASHINGTON, DC 20044


ALSO PRESENT:                     COMMANDER JONATHAN WHITE
                                  JEAN-MICHEL VOLTAIRE, HHS OGC
                                  ZACHARY BEST, ESQ.
                                  STEVEN HERZOG,ESQ.
                                  CATHERINE WEISS, ESQ.

<u>**SAN DIEGO, CALIFORNIA – FRIDAY, JUNE 7, 2019 – 1:00 P.M.**</u>

                              *   *   *

            **THE CLERK:**  NO. 15 ON CALENDAR, CASE NO. 18CV0428,
MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR
STATUS CONFERENCE.

            **THE COURT:**  GOOD AFTERNOON.

            I HAVE, FOR APPEARANCES:  FOR MS. L. LEE, GELERNT
AND DAN GALINDO; FOR MMM, ZACHARY BEST; MR. STEVEN HERZOG FOR
THE STEERING COMMITTEE; CATHERINE WEISS FOR OBJECTORS;
GOVERNMENT COUNSEL, MS. FABIAN, MR. STEWART.  AND THEN I HAVE,
FOR HHS, MR. VOLTAIRE; ICE DAWN HELLAND; TWO ICE COUNSEL,
JULIE LAUGHLIN, HILARY RAINONE; CHIEF J. VISCONTI FROM CBP;
AND CBP COUNSEL CAROLINE JACKSON.  SO WE HAVE QUITE A GROUP.

            I READ ALL OF THE BRIEFING, AND SO LET'S RUN THROUGH
THE JOINT STATUS REPORT AT THIS TIME.

            FIRST, IT APPEARS, AS TO THE ORIGINAL CLASS, THAT
EVERYTHING IS IN ORDER.  WE ARE VIRTUALLY COMPLETE IN THAT
REGARD.  IT APPEARS THERE ARE JUST A COUPLE REMAINING, BUT
COUNSEL HAVE BEEN IN CONTACT AND WILL BE IN A POSITION TO MAKE
DETERMINATIONS SHORTLY.

            SO ON THE ORIGINAL CLASS IT SEEMS THAT EVERYTHING IS
IN ORDER.  IS THERE ANYTHING THAT NEEDS TO BE ADDRESSED AT
THIS TIME FROM YOUR PERSPECTIVE, MR. GELERNT?

            **MR. GELERNT:**  NO, YOUR HONOR.

            **THE COURT:**  OKAY.

1          AND I SHOULD INQUIRE, TOO.  MR. HERZOG, EVERYTHING

2    APPEARS TO BE IN ORDER, AM I CORRECT?

3          **MR. HERZOG:**  YES.  I AGREE WITH LEE, WITH MR.

4    GELERNT.

5          **THE COURT:**  OKAY.  THANK YOU.

6          ON THE EXPANDED CLASS, I READ THE DECLARATIONS,

7    WHICH I REALLY APPRECIATE, FROM MS. SUALOG, MR. VISCONTI, AND

8    I THINK MS. HELLAND.  THAT WAS VERY INFORMATIVE.  AND SO MAYBE

9    WE CAN GET RIGHT INTO THAT NOW.

10          AND I WOULD MAKE THE OBSERVATION, TOO, AS TO MMM IT

11    APPEARS EVERYTHING IS GOING WELL AND IS IN ORDER.

12          IS THERE ANYTHING WE NEED TO ADDRESS ON THAT, MR.

13    BEST?

14          **MR. BEST:**  HI, YOUR HONOR.  THIS IS MR. BEST.

15          NO, I DON'T THINK THAT THERE IS ANYTHING TO ADDRESS

16    TODAY.

17          THE ONE THING THAT I WILL NOTE IS IN PARAGRAPH F ON

18    PAGE 8 OF THE GOVERNMENT'S REPORT THEY HAD INDICATED THAT THEY

19    BELIEVED THAT A CERTAIN ISSUE WAS RESOLVED.  I THINK THAT FOR

20    NOW WE WOULD AGREE WITH THAT.  AND WE ARE WORKING ON OUR

21    END -- WE ARE WORKING ON OUR END TO RESOLVE THE ISSUE THAT

22    THEY IDENTIFIED.  AND, YOU KNOW, WE ARE HOPEFUL THAT WE CAN

23    RESOLVE IT OURSELVES WITH THE INFORMATION THAT THE GOVERNMENT

24    HAS GIVEN US.  BUT WE DO, YOU KNOW, RESERVE OUR RIGHT TO COME

25    BACK TO THEM AND MAKE ADDITIONAL REQUESTS IF WE FIND THAT IT

1  IS NECESSARY.

2          **THE COURT:**  OKAY.  THANK YOU.  THAT IS NOTED.

3          PERHAPS BEFORE WE TURN TO THE EXPANDED CLASS AND THE

4  STATUS THERE WE CAN ADDRESS A FEW REMAINING MATTERS IN THE MS.

5  L.  LITIGATION.

6          IT APPEARS THE PARTIES ARE CONTINUING TO MEET AND

7  CONFER ON THE IMPORTANT ISSUES WITH RESPECT TO A CENTRALIZED

8  DATA SYSTEM AND PROTOCOL FOR FUTURE SEPARATIONS.  I AM

9  INFERRING THAT IT HAS BEEN PRODUCTIVE AND THAT THE PARTIES ARE

10 CLOSE TO REACHING AN AGREEMENT OR PRESENTING ISSUES TO THE

11 COURT.

12         IS THAT A FAIR ASSESSMENT?

13         **MR. GELERNT:**  THIS IS MR. GELERNT FOR MS. L., YOUR

14 HONOR.

15         WE HAVE SENT -- ON THE INTEGRATED DATABASE WE HAVE

16 SENT THE GOVERNMENT A DETAILED LINE.  WE ARE WAITING TO HEAR

17 BACK FROM THE GOVERNMENT.  I THINK THOSE CONVERSATIONS WILL

18 HOPEFULLY BE PRODUCTIVE AND WE WILL HAVE SOMETHING TO PRESENT

19 TO YOU.  BUT I THINK IT DEPENDS A LITTLE ON THE GOVERNMENT'S

20 REACTION TO WHAT WE SENT.

21         ON SOME OF THE OTHER ISSUES, I DON'T KNOW THAT WE

22 HAVE MADE AS MUCH PROGRESS, SPECIFICALLY ON THE QUESTION OF

23 WHAT TYPES OF CRIMINAL HISTORY WOULD WARRANT AN EXCLUSION AND

24 THE PROTOCOLS FOR FUTURE SEPARATIONS.  BUT WE ARE CONTINUING

25 TO TALK TO THE GOVERNMENT AND WE WILL KEEP YOU POSTED ON WHEN

1  WE THINK THAT WILL BE RAISED WITH THE COURT.

2        **THE COURT:** MR. STEWART, ANYTHING IN ADDITION ON

3  THAT SUBJECT?

4        **MR. STEWART:** NOT TOO MUCH, YOUR HONOR. I THINK THE

5  GOVERNMENT IS STILL WORKING ON THOSE THINGS. WE APPRECIATE

6  THE OPPORTUNITY TO DO SO. AND MY HOPE IS THAT WE CLOSE THE

7  LOOP THERE REASONABLY SOON SO THAT WE CAN HAVE THOSE ISSUES AS

8  RESOLVED AS THEY CAN BE.

9        **THE COURT:** OKAY. THANK YOU.

10        LET'S TURN TO THE EXPANDED CLASS.

11        AND MY UNDERSTANDING IS COMMANDER WHITE IS ON THE

12  PHONE TOO. AM I CORRECT?

13        **MR. STEWART:** THAT'S CORRECT, YOUR HONOR.

14        **THE COURT:** SO MAYBE I CAN ASK THE QUESTIONS, AND

15  MR. STEWART OR COMMANDER WHITE OR ANY OF THE HEADS OF THE

16  AGENCIES THAT HAVE SUBMITTED DECLARATIONS CAN WEIGH IN.

17        FIRST, AS TO THE TOTAL NUMBER OF FILES TO BE

18  REVIEWED, IT HAS DROPPED FROM 47,083 TO 32,972. AND THERE IS

19  AN EXPLANATION FOR THAT, AND I HAD A QUESTION THERE.

20        IN SETTING OUT THOSE NUMBERS -- AND THIS WOULD BE, I

21  THINK, FROM MS. SUALOG. AT PARAGRAPH 5 THERE IS AN

22  EXPLANATION AS TO THE DECREASE IN NUMBER.

23        THERE IS A REFERENCE TO 2,583 CHILDREN WHO WERE

24  REFERRED TO O.R.R. PRIOR TO JULY 1, 2017 BUT WERE STILL IN

25  O.R.R. CUSTODY ON JULY 1, 2017. AND THAT GROUP OF CHILDREN,

1    THOSE FILES HAVE BEEN CARVED OUT FROM THE 47,000 FILES AS NOT

2    FALLING WITHIN THE EXPANDED CLASS.

3              COULD THOSE CHILDREN BE SEPARATED FROM PARENTS AS

4    WELL AND IT IS -- THEY ARE SIMPLY BEING CARVED OUT BECAUSE

5    THEY DON'T FALL WITHIN THE DEFINITION OF THE CLASS?

6              **MR. STEWART:**  YOUR HONOR, I BELIEVE THE ANSWER TO

7    THAT IS YES.  WE ARE HEWING THERE TO THE CLASS DEFINITION.  AS

8    TO WHY THEY ARE CARVED OUT, I DON'T THINK WE KNOW, OF COURSE,

9    WHETHER THOSE WOULD BE SEPARATED FAMILY MEMBERS OR JUST SOME

10   OTHER KIND OF SITUATION BECAUSE THOSE ARE JUST KIND OF

11   FRONT-END NUMBERS AND NOT NUMBERS THAT HAVE GONE THROUGH THE

12   INTERAGENCY LOOKING TO SEE IF -- IN ALL OF THE PROTOCOLS TO

13   SEE IF SOMEBODY IS ACTUALLY A CLASS MEMBER.

14             **THE COURT:**  SO IT MAY BE THAT THERE WILL BE A

15   REQUEST AT SOME POINT IN TIME TO CIRCLE BACK AND LOOK AT THOSE

16   FILES, THOSE 2,583, TO SEE IF IN FACT THOSE CHILDREN WERE

17   SEPARATED FROM PARENTS.

18             MR. GELERNT, CAN YOU SPEAK TO THAT?

19             **MR. GELERNT:**  YES, YOUR HONOR.

20             WE ACTUALLY THINK, GIVEN HOW EFFICIENTLY COMMANDER

21   WHITE HAS BEEN GOING THROUGH FILES, AND GIVEN THAT THAT IS,

22   YOU KNOW, A COMPARATIVELY SMALLER NUMBER OF FILES THAT IT

23   DOESN'T REALLY MAKE SENSE FOR HIM, WHILE HE HAS THIS TEAM

24   TOGETHER, TO NOT GO THROUGH THOSE FILES AND GET A SENSE OF

25   WHETHER THERE IS A PRELIMINARY INDICATION OF SEPARATION.

1        BECAUSE I THINK, YOU KNOW, AS WE DISCUSSED WHEN YOU

2   INITIALLY EXPANDED THE CLASS WE PICKED JULY 1ST BECAUSE THAT

3   IS WHAT HHS HAD UNCOVERED.  BUT YOU HAD SPECIFICALLY ASKED ME

4   WHETHER I WAS HAPPY WITH JULY 1ST, AND I THINK THAT I

5   RESPONDED THAT FOR NOW BUT WE WOULD RESERVE THE RIGHT TO COME

6   BACK IF THERE WAS ANY REASON TO BELIEVE THAT THERE WERE KIDS,

7   YOU KNOW, THAT WENT -- BEFORE JULY 1ST.  AND GIVEN THAT THE

8   GOVERNMENT DOESN'T KNOW WHETHER ANY OF THOSE KIDS WERE

9   SEPARATED IT FEELS LIKE IT WOULD BE ARTIFICIAL NOT TO -- NOT

10  TO LOOK AT THOSE FILES.

11       SO I THINK WE WOULD MAKE THAT REQUEST.  IF YOUR

12  HONOR PREFER IT BE IN WRITING WE CAN DO THAT.

13       **THE COURT:**  MAYBE, MR. STEWART, WOULD YOU LIKE TO

14  MEET AND CONFER ON THAT?  IT DOES -- JUST SPEAKING, WITHOUT

15  THE BENEFIT OF BRIEFING OR ARGUMENT, THAT IT WOULD MAKE SENSE

16  TO INCLUDE THOSE 2,583 AT THIS TIME GIVEN THE TEAM THAT'S IN

17  PLACE AND COMMANDER WHITE'S OVERSIGHT.  DO YOU WANT TO MEET

18  AND CONFER AND THEN REPORT BACK IN THE NEXT SETTING ON THAT

19  ISSUE?

20       **MR. STEWART:**  I AM WILLING TO MEET AND CONFER ON IT,

21  YOUR HONOR.

22       YOU KNOW, PART OF THE PROBLEM HERE IS THAT THE

23  APPROACH THAT MR. GELERNT TAKES HAS NO STOPPING POINT.  THIS

24  IS WHY CLASSES ARE DEFINED AND THEY ARE DEFINED WITH

25  PARTICULARITY AND CLARITY SO EVERYBODY KNOWS WHO A CLASS

1    MEMBER IS.  THAT IS WHY PICKING A DATE MATTERS, PICKING DATE X

2    AS OPPOSED TO 15 DAYS BEFORE DATE X MATTERS.

3            SO THE GOVERNMENT CERTAINLY KIND OF OPPOSES AN

4    EFFORT BY MR. GELERNT TO JUST ENDLESSLY EXPAND THIS CLASS AND

5    ENDLESSLY STRETCH OUT THIS LITIGATION DESPITE A LACK OF A

6    LEGAL BASIS.

7            AGAIN, THOSE THINGS BEING SAID, I AM WILLING TO MEET

8    AND CONFER.  BUT I THINK THAT THIS POINTS UP THE PROBLEM WITH

9    MR. GELERNT'S APPROACH, AND A RISK THAT HE IS PRESENTING TO

10   THIS COURT OF CONTINUOUSLY AND BOUNDLESSLY AND ENDLESSLY

11   EXPANDING THIS CLASS AND THIS LITIGATION IN A LEGALLY IMPROPER

12   MANNER.

13           BUT I AM WILLING TO MEET AND CONFER.  I NOTE THOSE

14   INITIAL OBJECTIONS TO THE EFFORTS, YOU KNOW.

15           **THE COURT:**  OKAY.  SO LET'S DEFER THIS DISCUSSION

16   UNTIL THE NEXT STATUS CONFERENCE.  I WOULD SIMPLY NOTE THAT

17   THIS NUMBER, THE 2,583, ARISES OUT OF THE TOTAL NUMBER OF THE

18   47,083 FILES, WHICH SEEMS TO BE THE UNIVERSE OF FILES.  SO I,

19   OF COURSE, COULD BE MISTAKEN, BUT IT SEEMS THAT THE 2,583

20   WOULD HAVE AN END POINT IN THAT IT IS BOUNDED BY THIS TOTAL

21   NUMBER OF 47,000 FILES.

22           BUT LET'S DEFER THAT DISCUSSION, AND I WILL ASK THE

23   PARTIES TO MEET AND CONFER ON THAT ISSUE.

24           THE NEXT QUESTION I HAD RELATES TO THE SECOND

25   CARVE-OUT GROUP, 11,528 CHILDREN WHO WERE ADMITTED INTO O.R.R.

1   CARE BETWEEN JULY 1, 2017 AND JUNE 25, 2018 BUT WHO WERE
2   ALREADY REVIEWED FOR INDICATION OF SEPARATION FOR THE ORIGINAL
3   CLASS PERIOD.

4           SO AM I CORRECT IN ASSUMING THAT THE GOVERNMENT IS
5   CONTENT -- AND I GUESS THIS WOULD BE A QUESTION OF MS. SUALOG
6   OR COMMANDER WHITE -- THAT THE 11,528, THOSE CHILDREN AND
7   THEIR FILES HAVE BEEN CULLED.  AND THE GOVERNMENT HAS
8   SATISFIED ITSELF THAT THEY ARE NOT SEPARATED CHILDREN OR THEIR
9   PARENTS ARE NOT OTHERWISE IN THE CLASS.

10          **COMMANDER WHITE:**  YOUR HONOR, THIS IS JONATHAN
11  WHITE.

12          MY EFFORTS RELY ON O.R.R.'S EFFORTS TO PRODUCE THIS
13  DATA.  I AM DEPENDENT UPON THEM FOR THAT.  HOWEVER, I THINK IT
14  IS ACCURATE THAT THESE -- THESE CHILDREN ARE CHILDREN WHO MAY
15  OR MAY NOT BE SEPARATED BUT HAVE BEEN FULLY REVIEWED FOR
16  SEPARATION THROUGH THE -- WHAT WE NOW CALL THE LEGACY CLASS
17  REVIEW PROCESS.  SO IT WOULD INCLUDE BOTH SEPARATED CHILDREN
18  WHO PROVED TO BE POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS
19  AS WELL AS OTHER MINORS WHO WERE TRADITIONAL UNACCOMPANIED
20  ALIEN CHILDREN, NOT SORT OF IN ANY WAY POSSIBLE CHILDREN OF
21  POTENTIAL CLASS MEMBERS.

22          BUT THAT THAT POPULATION, ONE WAY OR ANOTHER, HAS
23  BEEN FULLY REVIEWED AND IS REPRESENTED EITHER IN THE LEGACY
24  CLASS OR IN THOSE MINORS WHO WERE REVIEWED DURING THE LEGACY
25  CLASS PROCESS AND DETERMINED NOT TO BE SEPARATED.

1      THE 32,900-AND-CHANGE NUMBER IS THE NUMBER THAT WE

2   ARE WORKING WITH NOW, AND ALONG THE LINES OF OUR EFFORT TO

3   ENSURE THAT ALL OF THE CHILDREN IN THE OUTER BOUND THAT YOU

4   SET, EITHER DURING THE LEGACY CLASS PROCESS OR NOW, GET VIEWED

5   BY THE INTERAGENCY AS SEPARATED.

6          **THE COURT:**  OKAY.

7          MR. GELERNT, DO YOU HAVE ANY QUESTIONS WITH RESPECT

8   TO THIS GROUP OF 11,528 CHILDREN?

9          **MR. GELERNT:**  I THINK WE ARE OKAY, BUT I ACTUALLY

10  WOULD WANT TO ASK JUST ONE CLARIFYING QUESTION OF THE

11  COMMANDER.

12         ARE THESE 11,000-PLUS, THEY WERE IN O.R.R. ON JUNE

13  26TH, 2018 SO THEREFORE SHOULD NEVER HAVE BEEN IN THE ORIGINAL

14  47,000, THE ORIGINAL NUMBER THAT WE ARE WORKING WITH NOW; OR

15  ARE THEY 11,000 WHO WERE RELEASED FROM O.R.R. BEFORE JUNE 26

16  BUT WHO WERE NONETHELESS SCREENED DURING THAT INITIAL

17  REUNIFICATION PERIOD AND, IF THERE WERE SEPARATIONS, PROVIDED

18  TO US IN THAT ORIGINAL LEGACY CLASS?

19         **COMMANDER WHITE:**  SIR, IT IS MY UNDERSTANDING THAT

20  IT IS THE FORMER, THAT THESE ARE CHILDREN WHO WERE STILL IN

21  O.R.R. CARE ON THAT IMPORTANT DATE OF JUNE 26TH OF LAST YEAR.

22  THAT'S MY UNDERSTANDING.  AND THAT O.R.R. PRODUCED ITS MORE

23  EXPANSIVE SORT OF 47,000 NUMBER IN RESPONSE TO QUESTIONS THAT

24  WE GAVE TO THEM, BUT THEY WEREN'T QUESTIONS THAT TRACKED --

25  THE PARAMETERS DIDN'T TRACK EXACTLY WITH THE PARAMETERS.

1            IT IS MY UNDERSTANDING THAT 11,500-AND-SOME CHILDREN

2     SUBSTANTIALLY IS THE CHILDREN -- I THINK IT WAS 11,892, WAS

3     THE TOTAL POPULATION ON THE 26TH OF JUNE, IF MEMORY SERVES.

4     SO I THINK THOSE VENN DIAGRAMS ALMOST COMPLETELY OVERLAP.

5            I DON'T BELIEVE ANY OF THOSE CHILDREN WERE

6     DISCHARGED PRIOR TO THE 26TH OF JUNE.  AND IF I LATER LEARN

7     THAT MY UNDERSTANDING IS WRONG THEN I WILL REVISIT IT HERE AND

8     WE WILL LOOK AT THAT.  IT IS MY UNDERSTANDING THAT ALL OF

9     THOSE CHILDREN WERE STILL IN CARE ON JUNE 26TH, OR MAY INCLUDE

10    CHILDREN WHO ACTUALLY WERE DISCHARGED ON THAT DATE BUT WERE

11    INCLUDED IN THE LEGACY CLASS REVIEW.

12            **MR. GELERNT:**  THANK YOU, COMMANDER.

13            **COMMANDER WHITE:**  YES, SIR.

14            **THE COURT:**  THANK YOU, COMMANDER WHITE.

15            **MR. STEWART:**  YOUR HONOR.

16            **THE COURT:**  YES, MR. STEWART.

17            **MR. STEWART:**  YOU KNOW, IT OCCURRED TO ME THAT IT

18    MIGHT BE USEFUL AS KIND OF A -- A KIND OF GLOBAL CONTEXT

19    PROVIDING MEASURE IF COMMANDER WHITE -- AND I DON'T WANT TO

20    TURN HIM AWAY FROM ANY QUESTIONS BUT IT MIGHT ANSWER SOME OF

21    YOUR HONOR'S QUESTIONS IF HE COULD JUST KIND OF GIVE THE

22    LATEST STATUS OF THE IDENTIFICATION EFFORT.  BECAUSE THERE HAS

23    BEEN, I BELIEVE, SOME PROGRESS SINCE THE DECLARATIONS WERE

24    SUBMITTED, AND HE MAY BE ABLE TO JUST GIVE EVERYBODY THE MOST

25    UP-TO-DATE SITUATION THAT KIND OF REFLECTS ALL AGENCIES'

13

1  EFFORTS NOW.

2          WOULD THAT BE USEFUL, YOUR HONOR?

3          **THE COURT:**  YES.  THAT'S A GOOD SUGGESTION, AND

4  LET'S DO THAT.  IT LOOKS LIKE THERE HAS BEEN A LOT OF PROGRESS

5  MADE, AND SO I THINK THAT IS A GOOD WAY TO START.

6          COMMANDER WHITE.

7          **COMMANDER WHITE:**  THANK YOU, YOUR HONOR.

8          SO, AS YOU KNOW FROM READING THE STATUS REPORT AND

9  THE DECLARATIONS FROM MY COLLEAGUES, WE ARE NOW WORKING WITH A

10 TOTAL OUTER BOUND OF 32,972 CHILDREN, WHICH I UNDERSTAND TO BE

11 ALL OF THE CHILDREN WHO WERE REFERRED TO O.R.R. CARE ON OR

12 AFTER THE 1ST OF JULY, 2017 AND DISCHARGED FROM O.R.R. CARE

13 ON OR PRIOR TO JUNE 26TH, 2018.

14         AS YOU KNOW, THE PROCESS THAT WE ALL DESIGNED IN OUR

15 AGENCIES IS THAT HHS TAKES THE FRONT END AND DOES A

16 COMPREHENSIVE MANUAL CASE FILE REVIEW OF EACH OF THOSE

17 CHILDREN AND UAC PORTAL RECORDS.  AND THEN WHEREVER WE HAVE

18 ANY PRELIMINARY INDICATION OF SEPARATION -- AND I REALLY WANT

19 TO EMPHASIZE THE WORD "ANY" BECAUSE IT REALLY IS ANY -- WE

20 HAVE CONSISTENTLY DECIDED TO ERR ON THE SIDE OF INCLUSION.  WE

21 PUT THEM THEN IN DATASETS WHICH WE PROVIDE AT THE START OF

22 EACH WEEK TO OUR COLLEAGUES.  THEY GO FROM US IN HHS TO CBP.

23 CBP SEES ONLY THE DATASETS FOR THOSE MINORS WHERE WE HAVE SOME

24 PRELIMINARY INDICATION.

25         THEY ARE THEN REVIEWED BY CHIEF VISCONTI'S TEAM AT

 1    CBP, WHO DO A REVIEW OF THEIR FILES.  AND BASED ON THE

 2    INFORMATION THEY HAVE THERE THEY ARE GENERALLY ABLE TO, AMONG

 3    OTHER THINGS, DETERMINE WHETHER IN FACT THERE IS AN FACTUAL

 4    SEPARATION OF THE CHILD FROM THE PARENT WHERE THE CHILD WAS

 5    APPREHENDED WITH A PARENT OR DOCUMENTED LEGAL GUARDIAN.

 6            AND THEN THAT -- AS THE CHIEF'S TEAM COMPLETES THAT

 7    IT GOES THEN TO ICE AND DDO HELLAND'S TEAM.  AND ICE THEN

 8    REVIEWS THEIR RECORDS AND ADDS ADDITIONAL INFORMATION.

 9            THEN THE LAST STEP IS IT COMES BACK TO US IN HHS,

10    AND WE THEN DO FINAL REVIEW OF RECORDS.  WHERE THE CHILD HAS

11    BEEN SEPARATED FROM A PARENT WE THEN CHECK TO SEE IF THE

12    PARENT IS THE SPONSOR OR IT WAS DIFFERENT FAMILY MEMBER WAS

13    THE SPONSOR, AND WE ADD SPONSOR INFORMATION.

14            THIS WEEK WE RECEIVED TWO DATA PACKAGES FROM ICE.

15    THESE ARE THE FIRST DATA PACKAGES THAT HAVE COMPLETED THE

16    CIRCUIT AND COME BACK TO US AT HHS.  THESE ARE THE FIRST TWO

17    OF SIX DATA PUSHES THUS FAR THAT WE HAVE SENT OUT.  AND I WILL

18    COME BACK TO THOSE TWO AND THEIR STATUS IN A MOMENT.

19            WE COMPLETED, DURING THIS LAST WEEK -- OPERATIONAL

20    GROUP FOR HHS, OUR TEAM COMPLETED PRELIMINARY REVIEW OF ALL

21    32,972 CASES.  HOWEVER, I INSTRUCTED MY TEAM TO TAKE ALL OF

22    THE NEGATIVE CASES, THEY HAVE BEEN ASSIGNED TO DIFFERENT

23    PERSONNEL, EACH CASE, AND EACH CASE IS GETTING A DE NOVO

24    REVIEW BY A DIFFERENT REVIEWER.  BECAUSE, AGAIN, IT IS VERY

25    IMPORTANT, YOU KNOW, THE ROLE OF HHS IN THIS PROCESS IS

1   JUST -- WE HAVE THUS FAR FOUND THAT THAT WAS WORTH DOING
2   BECAUSE IN ROUGHLY SEVEN CASES OUT OF 1,000 THERE HAS BEEN A
3   RE-CATEGORIZATION OF NEGATIVE TO POSITIVE.
4           AGAIN, THIS IS FOR ANY PRELIMINARY INDICATION OF
5   SEPARATION.  I FULLY EXPECT THAT MANY OF THEM WILL PROVE TO BE
6   FALSE POSITIVES WHEN THE RECORDS ARE REVIEWED BY DHS COMPONENT
7   PARTNERS.  BUT THEY WON'T KNOW WHICH ONES TO REVIEW IF WE
8   DON'T ERR ON THE SIDE OF INCLUSION.
9           SO WE ARE STILL REVIEWING CASES AND STILL PROVIDING
10  DATASETS TO CBP.  WE WILL PROVIDE ANOTHER DATASET ON MONDAY.
11  IT WILL BE A VERY SMALL ONE BECAUSE, AGAIN, ALL WE ARE DOING
12  NOW IS CONDUCTING THAT RE-REVIEW.  BUT IF SEVEN OUT OF 1,000
13  HAVE CHANGED AS A RESULT IT IS WORTH -- I THINK THE JUICE IS
14  WORTH THE SQUEEZE.  IT IS VERY IMPORTANT TO ME THAT WHEN WE
15  ARE DONE ON THE HHS SIDE I CAN SAY WITH CERTAINTY THAT WE HAVE
16  IDENTIFIED EVERY CHILD WITH ANY POTENTIAL INDICATION OF
17  SEPARATION IN THEIR UAC PORTAL.
18          SO BY MY CALENDAR WE ARE 92 DAYS AHEAD OF WHERE WE
19  NEEDED TO BE ON THE HHS SIDE.  AND I THINK THE CASE FILE
20  REVIEW EFFORTS BY CBP AND ICE HAVE MOVED VERY QUICKLY WHEN YOU
21  LOOK AT THE NUMBER OF CASES THAT ARE BEING LOOKED AT AND THE
22  AMOUNT OF INFORMATION ON EACH PERSON.
23          I ANTICIPATE, BARRING SOME DEVELOPMENT, THAT IN THE
24  COMING BUSINESS WEEK WE WILL BE TRANSMITTING THE FIRST DATA
25  PACKAGE TO THE ACLU BASED ON THOSE FIRST TWO LISTS WHICH WE

1  HAVE NOW RECEIVED FROM ICE AND THE EFFORTS WE ARE DOING ON

2  THOSE.

3          THAT IS WHERE I THINK WE ARE, YOUR HONOR.

4          **THE COURT:**  AND DO YOU HAVE AN ESTIMATE ON, THIS

5  WEEK WHEN YOU TRANSFER DATA TO MR. GELERNT, WHAT THAT NUMBER

6  IS?

7          **COMMANDER WHITE:**  I DO HAVE AN ESTIMATE.  I HAVE ONE

8  CAVEAT WHICH IS BECAUSE THESE TWO FIRST PACKAGES WERE THE --

9  ONE WAS CBP INITIATED AND THE CBP -- THE APRIL 19 DATASET, AND

10  THE OTHER WAS AN O.R.R. INFORMAL DATASET.  THEY HAD TWO

11  DIFFERENT GENESIS SO THEY ARE -- ONE OF THEM -- NOW DO THE

12  DE-DUPLICATION EFFORT.  THERE IS A POSSIBILITY THERE COULD

13  ACTUALLY BE SOME MINORS ARE ON BOTH LISTS.  BUT I BELIEVE THAT

14  IT WILL BE ON THE ORDER OF 1100 MINORS.  BUT I WILL KNOW FOR

15  SURE WHEN MY TEAM, WHICH IS WORKING OVER THE WEEKEND TO

16  PRODUCE THAT FOR ME, HAS THEIR DRAFT ACLU REPORT WHICH I WILL

17  REVIEW ON MONDAY MORNING.

18          **THE COURT:**  AND THE DATASETS THAT YOU ARE REFERRING

19  TO, THAT WOULD BE THE TWO DATA LISTS THAT YOU CULLED THROUGH,

20  AND THEN YOU ARE PROVIDING THAT DATA OF SEPARATED CHILDREN

21  WITH PARENTS WHO FALL IN THE CLASS TO MR. GELERNT, HOPEFULLY

22  THIS COMING WEEK.  THAT OUT OF THOSE TWO DATA LISTS THERE

23  WOULD BE APPROXIMATELY 1100 MINORS?  DID I UNDERSTAND THAT

24  CORRECTLY?

25          **COMMANDER WHITE:**  I BELIEVE THAT IS CORRECT, YOUR

HONOR, BUT I AM SPEAKING CAUTIOUSLY BECAUSE THE --
DE-DUPLICATION EFFORT IS GOING ON RIGHT NOW.  IT MAY BE A
SMALLER NUMBER THAN THAT.  BUT THAT WOULD BE -- THAT IS JUST
THE MATH ON COMBINING THE TWO NUMBERS.  THE DE-DUPLICATION IS
HAPPENING BY MY TEAM RIGHT NOW AS I AM TALKING TO YOU.

       **THE COURT:**  THIS DATA LIST, THE TWO DATA LISTS, WHAT
WAS THE TOTAL NUMBER OF FILES WHERE THERE WAS SOME INDICATION
OF SEPARATION.  SO THE 1100 CAME OUT OF WHAT -- WHAT WAS THE
ORIGINAL NUMBER?

       **COMMANDER WHITE:**  THAT IS A NUMBER THAT IS NOT MUCH
LARGER BECAUSE THOSE WERE THE TWO HIGH PROBABILITY, SO LET ME
QUICKLY DO THE MATH.  THAT WAS OUT OF -- LET ME SEE A SECOND,
YOUR HONOR.  THAT WAS OUT OF JUST OVER 1200.

       AGAIN, WE KNEW THAT LIST ONE AND LIST TWO WOULD
HAVE -- WOULD BE UNCHARACTERISTIC OF THE REST BECAUSE THESE
WERE THE LISTS THAT CBP AND O.R.R. RESPECTIVELY HAD ALREADY
IDENTIFIED THEY BELIEVED SEPARATED.  SO WE EXPECTED THOSE TO
HAVE A VERY LOW RATE OF FALSE POSITIVES.  HOWEVER, I EXPECT A
SIGNIFICANTLY HIGHER FALSE POSITIVE RATE ON LISTS THREE AND
FOLLOWING BECAUSE THOSE ARE BASED ONLY ON CHART REVIEW, NOT ON
OTHER INDICATIONS -- NOT ON OTHER PRIOR INDICATIONS THAT THE
CHILD WAS SEPARATED.

       **THE COURT:**  THAT THIRD DATA LIST, AS I READ THE
DECLARATIONS IT APPEARS THAT YOU ARE ALMOST DONE WITH THAT AS
WELL, AND WILL BE IN A POSITION TO FORWARD INFORMATION TO MR.

1   GELERNT OUT OF THAT THIRD DATA LIST.

2          **COMMANDER WHITE:**   THE THIRD OF THE SIX SO FAR?

3          **THE COURT:**   YES.

4          **COMMANDER WHITE:**   I HAVEN'T SEEN THAT ONE YET SO I

5   COULDN'T SPEAK TO IT.

6          THE WAY THAT I WOULD DESCRIBE THE PROCESS NOW IS

7   THAT, YOU KNOW, THIS IS SORT OF FLOW THROUGH A PIPELINE, AND

8   THE –– WE HAVE GOTTEN TO THE POINT NOW WHERE THE FRONT END OF

9   THAT FLOW, WHICH WE SENT OUT SOME WEEKS AGO, HAS COME BACK TO

10  US.

11         ONCE –– SO I THINK WE WILL CONTINUE TO SEE, FOR THE

12  FORESEEABLE FUTURE, REGULAR ROLLING NEW NUMBERS LIKELY WEEKLY.

13  BUT I JUST COULDN'T –– I DON'T WANT TO GET AHEAD OF THE

14  PROCESS SINCE THREE AGENCIES ARE IN IT.  AND WHAT WE ARE

15  EMPHASIZING IN EACH AGENCY IS THAT THE INFORMATION IS ACCURATE

16  AND WE ARE TAKING THE TIME NECESSARY TO GET IT RIGHT.

17         THE FIRST –– THE FIRST TRANSMISSION TO THE PLAINTIFF

18  I DO EXPECT TO BE THIS COMING WEEK, AND I IMAGINE THAT OTHERS

19  WILL FOLLOW FAIRLY PROMPTLY.  I DON'T HAVE A –– IT WILL BE AS

20  SOON AS WE CAN.

21         **THE COURT:**   AND THE TRANSMISSION YOU ANTICIPATE

22  RELEASING TO MR. GELERNT AND MR. HERZOG, HOPEFULLY THIS WEEK,

23  THAT WILL INCLUDE CONTACT INFORMATION FOR THE PARENTS,

24  CORRECT?

25         **COMMANDER WHITE:**   THAT IS MY UNDERSTANDING OF AMONG

1   THE THINGS THAT WE PREVIOUSLY DISCUSSED ARE LIKELY.  I WILL

2   SORT OF DEFER TO MR. STEWART TO CHARACTERIZE WHAT INFORMATION

3   WILL BE IN THERE.

4         WE WILL OBVIOUSLY PRODUCE WHATEVER IT IS THAT WE

5   ARE -- THAT WE NEED TO DO TO ASSIST IN NEXT STEPS IN THE

6   PROCESS.  BUT THAT IS ON MY LIST OF THINGS THAT ARE TO BE

7   INCLUDED BASED ON PRIOR DISCUSSIONS WITH YOUR HONOR.

8         **THE COURT:**  OKAY.  IT SEEMS, COMMANDER WHITE, THAT

9   THIS PROCESS YOU HAVE IN PLACE HAS WORKED VERY WELL AND IT HAS

10  TURNED OUT TO BE VERY EFFICIENT.

11        HAVE THERE BEEN ANY BUMPS IN THE ROAD OR IS THIS --

12  THIS SEEMS TO BE GOING FAR BETTER THAN WE ANTICIPATED.

13        **COMMANDER WHITE:**  I DON'T WANT TO JINX ANYTHING

14  BECAUSE WE ARE STILL WORKING.

15        I WOULD OBSERVE THAT IT IS VERY CLEAR THAT IN ALL

16  THREE AGENCIES THERE IS A FAIR AMOUNT OF MANPOWER BEING

17  DEVOTED TO THIS EFFORT, AND WE HAVE BENEFITED FROM DOING IT

18  THAT WAY.  AND WE INADVERTENTLY BENEFITED FROM THE INITIAL

19  NUMBER BEING LARGER THAN THE ACTUAL NUMBER, THAT WE DIDN'T

20  HAVE TO DO 47,000.  SO I AM NOT AWARE OF ANY GAPS, SHORTFALLS,

21  OR GREAT LIMITING STEPS RIGHT NOW.  WE ARE WORKING HARD TO GET

22  THIS DONE.

23        **THE COURT:**  OKAY.  THANK YOU.

24        MR. GELERNT, DO YOU HAVE ANY QUESTIONS?

25        **MR. GELERNT:**  I JUST HAVE TWO QUICK THINGS, YOUR

1    HONOR.

2              ONE IS I WANTED TO ASK COMMANDER WHITE IF HE KNOWS

3    HOW MANY CASES, IN THE BATCHES OF THREE THROUGH SIX, HOW MANY

4    PRELIMINARY INDICATIONS OF SEPARATION THERE WERE FROM HHS WHEN

5    IT SENT IT ON, IF HE KNOWS.

6              **COMMANDER WHITE:**  I DO KNOW, BUT YOU WILL HAVE TO BE

7    PATIENT WITH ME FOR ONE MOMENT, SIR, BECAUSE ARITHMETIC IS

8    INVOLVED.  GIVE ME ONE SECOND AND I WILL LET YOU KNOW.

9              IT LOOKS TO ME THAT OF DATASETS THREE THROUGH SIX

10   THE TOTAL NUMBER OF MINORS, WITH SOME PRELIMINARY INDICATION

11   OF SEPARATION, IS JUST OVER 2500.

12             I WANT TO CAUTION, BECAUSE I THINK IT IS VERY

13   IMPORTANT FOR THE CONTEXT, I FULLY EXPECT THAT THE FALSE

14   POSITIVE RATE WILL BE MUCH HIGHER WITH THOSE THAN WITH ONE AND

15   TWO.

16             SO I JUST WANT TO BE CLEAR, SINCE WE ARE ERRING ON

17   THE SIDE INCLUSION, I WOULD NOT FORECAST THAT THAT IS

18   PREDICTIVE OF THE ORDER OF MAGNITUDE OF THE NUMBER OF ACTUAL

19   SEPARATED CHILDREN OR POSSIBLE.

20             **MR. GELERNT:**  UNDERSTOOD.  THANK YOU COMMANDER.

21             AND I JUST HAD ONE OTHER THING, YOUR HONOR, I THINK,

22   THE AGREEMENT ABOUT THIS.  YOU HAD ASKED COMMANDER WHITE

23   WHETHER THE LISTS THEY TURN OVER TO US WILL INCLUDE THE

24   PARENT'S CONTACT INFORMATION.

25             OUR UNDERSTANDING -- AND THAT IS RIGHT.

1           OUR UNDERSTANDING IS THAT IT WILL ALSO INCLUDE

2    CONTACT INFORMATION FOR THE CHILD.  I JUST WANTED TO

3    REEMPHASIZE THAT.

4           **THE COURT:**  YES.

5           **MR. GELERNT:**  OKAY.  THANK YOU.

6           **COMMANDER WHITE:**  MY UNDERSTANDING IS THAT WE WILL

7    BE PROVIDING THE LAST KNOWN CONTACT INFORMATION FOR THE

8    PARENT, THE GOVERNMENT.  AND IN THOSE CASES WHERE THE SPONSOR

9    OF THE CHILD IS NOT THE PARENT WE WILL BE PROVIDING THE

10   CONTACT INFORMATION OF RECORD THAT O.R.R. HAS FROM THE SPONSOR

11   AS WELL AS, OF COURSE, THE NAME AND RELATIONSHIP OF THE

12   SPONSOR TO THE CHILD.  THAT IS MY UNDERSTANDING OF WHAT WE ARE

13   CONVEYING.

14          **THE COURT:**  ALL RIGHT.

15          **MR. GELERNT:**  THANK YOU.

16          **THE COURT:**  MR. HERZOG OR MR. STEWART, ANY FOLLOW-UP

17   QUESTIONS OR POINTS?

18          **MR. HERZOG:**  THIS IS MR. HERZOG.

19          I DO THINK -- IF WE COULD PUT IN ONE MORE REQUEST.

20   IF THE GOVERNMENT HAS INFORMATION ON THE IDENTITY OF THE

21   COUNSEL FOR THE CHILD, I THINK IT WOULD BE VERY HELPFUL IF

22   THAT WERE ALSO INCLUDED.

23          **THE COURT:**  IS THAT POSSIBLE, COMMANDER WHITE?  DO

24   YOU KNOW?

25          **COMMANDER WHITE:**  UNFORTUNATELY THIS IS -- AND I

1    SPEAK FROM EXPERIENCE FROM MY TIME WHEN I WAS WORKING AT THE

2    O.R.R. PROGRAM.

3            WE DO NOT ROUTINELY AND SYSTEMATICALLY CAPTURE IN

4    THE PORTAL COUNSEL INFORMATION.  THERE IS NOT SORT OF A WAY OF

5    EXTRACTING THAT FROM DATA.

6            IN MANY CASES IF A -- IF THERE IS COUNSEL WHILE THE

7    CHILD WAS IN CARE, AN APPEARANCE, AND THEY TURNED IN A

8    REPRESENTATION THERE MAY BE SOMETHING UPLOADED INTO THE

9    PORTAL.  WE CAN'T READILY PROVIDE COUNSEL INFORMATION ON

10   CHILDREN IN THE AGGREGATE.

11           AND IN MANY -- IN MANY CASES THE CHILDREN'S

12   REPRESENTATION, EVEN WHILE THEY WERE IN CARE, IS NOT ALWAYS

13   CONVEYED TO US.  THAT IS SOMETHING THAT THE CHILD AND THE

14   COUNSEL DECIDE.

15           SO THAT IS JUST NOT SOMETHING I THINK WE ARE LIKELY

16   TO BE ABLE TO PRODUCE IN A SYSTEMATIC WAY.

17           **THE COURT:**  IF THE INFORMATION IS AVAILABLE FOR SOME

18   REASON THAT WOULD BE EASY ENOUGH TO INCLUDE IN THE

19   TRANSMISSION, WOULD IT?

20           **COMMANDER WHITE:**  IT WOULD REQUIRE RE-REVIEW OF THE

21   CASES.  I CAN CERTAINLY INQUIRE AS TO -- AS TO HOW WE WOULD DO

22   THAT WITH O.R.R.

23           I JUST WANT TO CAUTION THAT UNLIKE THERE IS

24   INFORMATION ON THE SPONSOR, WE CAN EXTRACT THAT DATA, THAT IS

25   SOMETHING THAT IS NOT PRESENT IN EVERY CHILD'S FILE.  AND IF

1  IT IS IN A CHILD'S FILE IT HAS TO BE SEARCHED FOR MANUALLY.

2              **THE COURT:**  OKAY.

3              **COMMANDER WHITE:**  I AM READY TO PURSUE WHATEVER IS

4  NEEDED, BUT THAT ALSO MIGHT AFFECT OUR TIMELINE.

5              **THE COURT:**  YES.

6              **MR. STEWART:**  YOUR HONOR, CAN I RAISE SOMETHING?

7              **THE COURT:**  YES.

8              **MR. STEWART:**  RESPECTFULLY.  THIS HAS NOT BEEN

9  RAISED, TO MY UNDERSTANDING, BY MR. HERZOG BEFORE.

10              I WOULD PROPOSE THAT COMMANDER WHITE AND HIS

11  FELLOW -- HIS FELLOW LEADS AND OPERATIONAL -- CORRESPONDING

12  OPERATIONAL FOLKS CONTINUE AS HE WAS PLANNING TO DO SO THAT WE

13  CAN TRY TO MOVE SWIFTLY HERE.

14              IF THERE IS SOME LOOP TO CLOSE ON A PARTICULAR

15  PERSON WE CAN REVISIT THE MATTER AT THE TIME.  BUT I AM

16  CONCERNED THAT WE NOT LOSE THE MEMORANDUM HERE AND, YOU KNOW,

17  I WOULD ENCOURAGE US TO PROCEED THIS WAY.

18              **THE COURT:**  I AGREE.  I THINK TO ASK COMMANDER WHITE

19  TO DO A RE-REVIEW IN SEARCH OF THAT SPECIFIC INFORMATION WOULD

20  NOT BE WARRANTED AT THIS TIME.

21              IT MAY BE, AS YOU SUGGEST, MR. STEWART, THAT AT A

22  LATER TIME WITH CERTAIN FILES THAT MIGHT BE APPROPRIATE.  BUT

23  LET'S DEFER ON THAT AND JUST KEEP MAKING THE GOOD PROGRESS WE

24  ARE MAKING UNDER THE CURRENT PROCESS.

25              MR. STEWART, ANYTHING ELSE TO ADD?

1          **MR. STEWART:**  I DON'T THINK SO, YOUR HONOR.

2          I MEAN, I THINK THAT COMMANDER WHITE'S OVERVIEW AND

3     ANSWERS HERE COVERED THINGS ALONG WITH THE DECLARATIONS

4     TOGETHER COVERED THINGS.  SO I THINK WE ARE UP-TO-DATE AND

5     THAT -- AS COMMANDER WHITE AND HIS COLLEAGUES HAVE INDICATED

6     THEY WILL CONTINUE PRESSING FORWARD TO BRING THIS TO

7     COMPLETION.

8          **THE COURT:**  OKAY.  WHAT I WOULD PROPOSE -- THERE IS

9     A MOTION PENDING THAT PLAINTIFFS IN MS. L. HAVE FILED, THAT

10    THAT MATTER CAN BE HEARD TELEPHONICALLY ON JULY 5 AT 1:00

11    O'CLOCK.  WITH AN OPPOSITION BY THE GOVERNMENT BY JUNE 21,

12    REPLY BY JUNE 28.

13         AND THEN WE WILL ALSO HAVE OUR NEXT STATUS

14    CONFERENCE ON JULY 5 ON ALL OF THESE MATTERS AT 1:00.

15         ANY OBJECTION TO THAT?

16         **MR. STEWART:**  YOUR HONOR, CAN I RESPECTFULLY ASK FOR

17    AN ADDITIONAL WEEK ON THE RESPONSE THERE?

18         I DON'T WANT TO STRETCH THIS OUT TOO LONG BUT THERE

19    ARE A NUMBER OF FACTUAL REPRESENTATIONS AND ASSERTIONS IN MR.

20    GELERNT'S MOTION AND THE RELATED MATERIALS THAT THE GOVERNMENT

21    WOULD LIKE TIME TO INVESTIGATE ADEQUATELY, PARTICULARLY

22    BECAUSE THEY SPREAD ACROSS A DECENT NUMBER OF PEOPLE WITH

23    POTENTIALLY DIFFERENT CIRCUMSTANCES.

24         **THE COURT:**  YES.

25         **MR. STEWART:**  I AM JUST CONCERNED WITH BEING ABLE TO

1  DO THAT IN TWO WEEKS.

2         **THE COURT:**  YOU ARE PROPOSING, THEN, JUNE 28 FOR

3  OPPOSITION, PERHAPS THE REPLY BY JULY 5, AND THEN A STATUS ON

4  JULY -- AND MOTION HEARING ON JULY 12?

5         **MR. STEWART:**  I WOULD APPRECIATE THAT, YOUR HONOR.

6         **MR. GELERNT:**  THAT IS FINE WITH MS. L. PLAINTIFFS AS

7  WELL, YOUR HONOR.

8         **THE COURT:**  LET'S DO THAT, THEN.

9         WE WILL MEET AGAIN FOR JOINT STATUS ALL MATTERS AND

10  HEARING ON THE MOTION TELEPHONICALLY JULY 12, 1:00.  REPLY

11  JULY 5, OPPOSITION BY THE GOVERNMENT JUNE 28.

12         AND I AM GOING TO -- THAT NEXT STATUS, THEN, WOULD

13  BE SEVERAL WEEKS OUT, SO I WANT TO MAKE SURE THAT EVERYTHING

14  CONTINUES TO MOVE VERY EFFICIENTLY.

15         SO I AM GOING TO ASK, COMMANDER WHITE, THAT YOU

16  PROVIDE THIS FIRST TRANSMISSION, WHICH IS GOING TO BE A

17  SIGNIFICANT BLOCK OF INFORMATION, TO MR. GELERNT AND MR.

18  HERZOG BY THE END OF THE WEEK NEXT WEEK.

19         ARE YOU UNCOMFORTABLE IF THE COURT SETS THAT

20  DEADLINE?  WOULD YOU PREFER THAT THAT NOT BE DONE, OR CAN YOU

21  COMFORTABLY MEET THAT DEADLINE FOR THIS FIRST TRANSMISSION ON

22  THESE TWO DATA LISTS?

23         **COMMANDER WHITE:**  YOUR HONOR, I AM NOT UNCOMFORTABLE

24  WITH THAT DEADLINE.  IT ALIGNS WITH DEADLINES WE SET

25  INTERNALLY.

1        IT WILL APPEAR TO THE PLAINTIFFS AS ONE LIST, BUT

2   FOR THE TWO DATASETS WHICH WE HAVE RECEIVED TO DATE FROM DHS

3   COUNTERPARTS, YES.

4        **THE COURT:**  EXCELLENT.

5        **COMMANDER WHITE:**  BY THE END OF THE WEEK IS NOT A

6   PROBLEM.

7        **THE COURT:**  VERY GOOD.

8        THEN THAT WILL GIVE YOU, MR. GELERNT, MR. HERZOG, A

9   LOT TO DO FOLLOWING JUNE 14.  AND SO HOPEFULLY THE NEXT STATUS

10  ON JULY 12 WE WILL HAVE A GREAT DEAL OF INFORMATION ABOUT HOW

11  YOUR EFFORTS ARE GOING IN REACHING PARENTS AND/OR CHILDREN AND

12  THEIR SPONSORS OR FAMILY MEMBERS, AND GIVING A STATUS THAT

13  HOPEFULLY WILL PROVIDE A LOT OF INSIGHT INTO WHERE WE ARE IN

14  THIS PROCESS.

15       I WOULD BE CONTENT TO JUST LEAVE IT WITH THOSE

16  DATES, AND LOOK FORWARD TO A FULL STATUS HEARING ON JULY 12.

17       ARE THERE ANY OTHER MATTERS WE NEED TO ADDRESS AT

18  THIS TIME?

19       **MR. GELERNT:**  NOT FROM MS. L.

20       **MS. WEISS:**   YOUR HONOR, THIS IS CATHERINE WEISS.

21       AND AS YOU KNOW, THE NEGOTIATIONS ON INFORMATION

22  SHARING AND DUE PROCESS PROTOCOLS FOR CONTINUING SEPARATIONS

23  ARE ONES THAT I AM PARTICIPATING IN ON BEHALF OF THE LEGAL

24  SERVICE PROVIDERS, AND I JUST DON'T WANT THAT TO GET LOST.  I

25  THINK THAT A RESPONSE ON THE INFORMATION SHARING SHOULD BE --

1  THAT THERE SHOULD BE REAL PROGRESS DEMONSTRATED ON AT LEAST

2  THAT PIECE IN THE NEXT STATUS CONFERENCE AS WELL.

3          **THE COURT:**  YES.  I AGREE.  AND THAT'S WHY I ASKED

4  ABOUT BOTH THE CENTRALIZED DATA SYSTEM AND PROTOCOL GOING

5  FORWARD, BECAUSE THOSE ARE IMPORTANT TOPICS.

6          AND I WAS COMFORTED IN READING THAT THE PARTIES

7  CONTINUE TO MEET AND CONFER, AND THAT IT SEEMS TO ME THAT REAL

8  PROGRESS IS BEING MADE.

9          BUT I AGREE THAT THOSE ARE IMPORTANT.  AND I KNOW

10  THAT AS WE GET UNDERWAY AND VERY BUSY WITH THIS SECOND

11  ENLARGED CLASS IT IS IMPORTANT NOT TO LOSE SIGHT OF THOSE

12  OTHER TOPICS.

13          SO I AM LOOKING FORWARD TO A STATUS ON THOSE MATTERS

14  AS WELL ON JULY 12.

15          **MS. WEISS:**  THANK YOU, YOUR HONOR.

16          **THE COURT:**  ANY OTHER COMMENTS?  OKAY.

17          I WANT TO THANK EVERYONE AGAIN, IN PARTICULAR

18  COMMANDER WHITE AND OUR THREE LEADS FOR THE VARIOUS AGENCIES.

19          IT IS A REALLY REMARKABLE EFFORT, AND IT IS VERY

20  ENCOURAGING TO SEE THAT THIS REVIEW HAS GONE THIS QUICKLY AND

21  IS THIS PRODUCTIVE IN FERRETING OUT THIS INFORMATION AND

22  PROVIDING THE INFORMATION TO MR. GELERNT NEXT WEEK.  SO I

23  THANK EVERYONE VERY MUCH FOR THEIR EFFORTS.

24          WE WILL CONCLUDE AT THIS TIME.

25          I WILL LOOK FORWARD TO THE BRIEFING.  THE JOINT

 1    STATUS REPORT CAN BE FILED ON JULY 11, THE THURSDAY BEFORE OUR

 2    FRIDAY STATUS.  AND THEN I WILL LOOK FORWARD TO THE STATUS

 3    CONFERENCE ON THE 12TH.

 4              THANK YOU, AND HAVE A GOOD WEEKEND.

 5              **MR. GELERNT:**  THANK YOU, YOUR HONOR.

 6              **MR. STEWART:**  THANK YOU, YOUR HONOR.

 7

 8                             *   *   *

 9              I CERTIFY THAT THE FOREGOING IS A CORRECT
               TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
10             IN THE ABOVE-ENTITLED MATTER.

11             S/LEEANN PENCE                     6/7/2019
               LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
12

13

14

15

16

17

18

19

20

21

22

23

24

25