JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ALLOW PARENTS DEPORTED WITHOUT THEIR CHILDREN TO TRAVEL TO THE UNITED STATES** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

## I.     INTRODUCTION

Plaintiffs ask this Court to issue an extraordinary order requiring the government to return to the United States 21 parents who were lawfully removed from the United States and have already received the procedures and consideration that they are entitled to under the thoroughly and carefully negotiated settlement agreement agreed to by the parties and approved by this Court on November 15, 2018, ECF No. 321. This Court should deny Plaintiffs' motion. The government has afforded these individuals, in good faith and through extensive effort, all procedures and consideration to which they are entitled under the settlement agreement. The settlement affords them no more—it nowhere entitles them the right to return or to the further procedures that they now seek from this Court. Plaintiffs' motion attempts to rewrite the carefully negotiated settlement agreement, it distorts and disregards the agreement and the government's thorough efforts with respect to these 21 individuals, and it is otherwise improper.

## II.     PROCEDURAL BACKGROUND

The issue before the Court arises following an extensive effort by the government to work with Plaintiffs to resolve fully the concerns raised by parents who believe that they should be permitted to return to the United States.

The Parties' Agreement Regarding Removed Parents and How the Government Has Implemented that Agreement. At a status conference on August

17, 2018, the Court addressed the plan proposed by the government for reunifying separated children with their parents who had been removed in their home countries. The Court stated that "the overarching goal here is reunification. And it seems to me that the government's plan, which contemplates reunification in the home country, is the appropriate plan." Aug. 17, 2018 Hearing Tr. at 13:19-21. The Court also gave its tentative views on the issue of requiring the government to return parents to the United States. The Court stated:

> I do understand the Plaintiffs' position about having some of these parents flown back to the United States so that they could pursue asylum requests jointly with their children. But that—I think there are many issues with that proposal. And that would certainly be a significant undertaking, and would be over the strong objection of the government. I am not sure about all of the jurisdictional arguments that may be raised. And then from a practical standpoint it seems to me that in the best interest of the family what we are looking for is reunification. And under the present circumstances that that reunification ought to occur in the home country.

Aug. 17, 2018 Hearing Tr. at 14:11-22.

After the Court made these observations, the parties undertook settlement talks that addressed (among other issues) Plaintiffs' request that the government return some separated parents to the United States. Consistent with the Court's guidance, for *Ms. L* class members who had not been continuously present in the United States at the time that the settlement agreement was approved, the agreement provides as follows:

The government does not intend to, nor does it agree to, return any removed parent to the United States or to facilitate any return of such removed parents. The classes agree not to pursue any right or claim of removed parents to return to the United States other than as specifically set forth in this paragraph. Plaintiffs' counsel may raise with the government individual cases in which plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted. Plaintiffs' counsel represent that they believe that such individual cases will be rare and unusual and that they have no basis for believing that such individual cases will be other than rare and unusual. Plaintiffs' counsel agree to present any such cases, including all evidence they would like considered by the government within 30 days of the approval of this agreement. In light of plaintiffs' counsel's representation that such cases will be rare and unusual, Defendants agree to provide a reply to any case presented by Plaintiffs within 30 days of receiving Plaintiffs' request to consider the case. Except as specifically set forth herein, the classes agree that existing law, existing procedures, and the Court-approved reunification plan address all interests that such parents or their children may have.

Settlement Agreement at p. 6.

The initial 30-day deadline for removed parents to submit "all evidence they would like considered by the government" in support of any request to return to the Unites States was December 15, 2018. On December 3, 2018, counsel for Plaintiffs sent to government counsel 12 unsigned declarations, written in English with no certificate of translation attached, purporting to be from removed parents requesting return on behalf of those parents. Email from L. Gelernt to S. Fabian, Dec. 3, 2018 (attached hereto as Ex. A). The government asked whether these unsigned English declarations constituted "all evidence" that counsel wished to have the government consider for these individuals. Email from S. Fabian to L. Gelernt, Dec. 3, 2018.

Counsel for Plaintiffs then asked whether Defendants were requiring them to submit signed declarations, and stated that "the focus of these is on the unfairness of the hearing process, but we don't have immigration files, and the government is in possession of all relevant evidence." Email from L. Gelernt to S. Fabian, Dec. 3, 2018. Counsel for the government responded that, under the agreement, Plaintiffs were required "to submit 'all evidence they would like considered by the government.' Thus under the terms you agreed to, it is up to you to submit whatever evidence that you want considered." Email from S. Fabian to L. Gelernt, Dec. 4, 2018. Defendants offered to consider the evidence already submitted or to wait for the submission of additional evidence for these parents. *Id.* Counsel for Plaintiffs then stated that the government should not consider those documents, but should wait for the submission of signed declarations with certificates of translation included. Email from L. Gelernt to S. Fabian, Dec. 4, 2018.

On December 15, 2018, despite their representation that cases in which the return of a particular parent may be warranted would be "rare and unusual," counsel for Plaintiffs submitted **51** signed declarations from parents seeking return to the United States. A few of these declarations also contained additional documents. The agreement gave the government 30 days to provide a reply to these submissions; due to the lapse in appropriations and stay of the litigation, however, that deadline was later extended until February 20, 2019.

During that time period, Defendants reviewed each submission and determined that none of them provided sufficient information regarding why they constituted "rare and unusual circumstances" which would warrant return. Each affidavit merely restated previously asserted asylum claims.  Rather than deny the requests outright, and notwithstanding Defendants' position that none of these declarations presented "rare and unusual circumstances" warranting return, and further notwithstanding that the settlement agreement imposed no further obligations on Defendants, Defendants offered each of the 51 applicants an additional opportunity to provide information to the government relating to their request for return.  Specifically, Defendants sent an email to Plaintiffs' counsel on February 20, 2019, which stated:

> As you are aware, pursuant to the Settlement Agreement (Agreement), filed on September 12, 2018, and approved by the Court November 15, 2018, U.S. Immigration and Customs Enforcement (ICE) has agreed to consider cases in which plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted in "rare and unusual" circumstances.  As of the deadline of December 15, 2018, the Department of Justice (DOJ) had received the affidavits (and, where provided, supporting materials) submitted for 52 individuals ("Applicant Pool"), which it subsequently provided to ICE.  ICE has now reviewed all materials submitted and advised that the documents submitted for the Applicant Pool did not provide sufficient information to permit adjudication.  In keeping with the spirit of the Agreement, ICE is offering members of the Applicant Pool the opportunity to submit additional information in support of their respective requests for parole.

Email from S. Fabian to L. Gelernt, Feb. 20, 2019 (attached hereto as Ex. B). The email also listed the documents that should be submitted with the request, provided an email inbox specifically dedicated for these submissions, and waived any fees usually associated with the submission of applications for parole. *Id.* The email requested that any requests for return made in accordance with this supplemental process be submitted within 30 days, or by March 22, 2019. *Id.*

On February 27, 2019, Plaintiffs sent to Defendants a list of questions related to the supplemental process. Email from A. Balakrishnan to S. Fabian, Feb. 27, 2019. On March 7, 2019, the parties held a call to discuss the questions listed in Plaintiffs' email.[1] On that call, counsel for Plaintiffs objected to the use of the parole process for seeking return, and took the position that the settlement agreement created its own idiosyncratic process for individuals to seek return to the Unites States in cases where they purportedly had no fair opportunity to seek asylum prior to their removal. Plaintiffs' counsel further stated that it was counsel's belief that each of the 51 submissions met this standard, and questioned why Defendants were requesting the submission of documents ordinarily associated with parole

---

[1] On or around March 2, 2019, some of the 51 removed parents who had submitted requests under the settlement agreement apparently returned to the United States and presented themselves for admission at the Calexico port of entry. Accordingly, on the March 7, 2019 call, the parties agreed that their discussions now pertained only to the remaining submissions of those who had not returned. Counsel for Plaintiffs represented to counsel for Defendants that Plaintiffs' counsel played no role in the return to the United States of the parents who arrived on March 2, 2019.

applications and what Defendants were seeking in conjunction with the supplemental process provided for in the February 20, 2019 email. Counsel for Defendants explained that Defendants were requiring parole applications because parole was the only legal process by which return to the United States was available, and noted that the settlement agreement provides that except as specifically stated in the agreement, "existing law, existing procedures, and the Court-approved reunification plan address all interests that such parents or their children may have." In response to inquiries about what information should be submitted in conjunction with these requests, counsel for Defendants agreed to consult with her clients and follow up the next day.

On March 8, 2019, the parties held a follow-up call in which counsel for Defendants explained again that the submission of parole applications in accordance with the processes laid out in the February 20, 2019 email was necessary to provide a legal process through which return potentially could be provided for the individuals identified by Plaintiffs' counsel, and to allow for tracking of the requests. Counsel further explained that it was up to Plaintiffs what additional information they chose to submit in support of these supplemental requests, but that in general the evidence should show the type of rare and unusual circumstances contemplated by the settlement agreement.  Counsel for Plaintiffs said that they would consider this information and respond on March 11, 2019, regarding how they wished to proceed.

Instead, counsel for Plaintiffs responded on March 17, 2019, and in that email stated that "we would like to take you up on your offer to reconsider the applications of the 23 who are not currently in the U.S.  You have also said that we can submit additional information about these individuals.  We do not intend at the moment to do so, because we feel we've given you all the relevant information we have in our possession."  Email from L. Gelernt to S. Fabian, March 17, 2019 (attached hereto as Ex. C).  Government counsel responded by explaining that this was not what Defendants had offered, and that if these individuals wished to obtain further review under the supplemental process Defendants were providing, they should comply with the procedures detailed in the government's February 20, 2019 email.  The subsequent email exchange made clear that the parties disputed what had been discussed during the March 7 and 8 phone calls.  Nonetheless, on or before the March 22, 2019 deadline, two individuals submitted supplemental materials in accordance with the procedures provided in the February 20, 2019 email.  In addition, on March 21, 2019, one individual requested an extension of that deadline, explaining that counsel needed additional time to obtain medical documents in support of the request.  Defendants agreed to allow the additional time requested for that individual. Defendants reviewed these additional requests and have provided responses for each request.  Thus, Defendants have fully complied with their obligations under the settlement agreement and indeed demonstrated willingness to accept resubmissions

and grant extensions for submissions three months past the deadline to which Plaintiffs agreed in the settlement.

Plaintiffs' Recent Assertions Regarding the Agreement.  Despite all of the government's efforts, at the March 28, 2019 status conference, Plaintiffs' counsel told the Court that Plaintiffs "do not believe that the [agreed-upon] process [for seeking return of removed parents] has been working properly, and so we intend to submit that to the Court for discussion within the next joint status report."  Hearing Tr. at 17:6-9, March 28, 2019.  Plaintiffs' counsel had given no notice to the government that he would be raising this issue.  At the Court's direction, Plaintiffs' counsel agreed to confer with the government about the matter.  The parties did so but were unable to resolve the issue.  On June 6, 2019, Plaintiffs then filed the instant motion. The motion somewhat vaguely asks the Court to "order the government to allow 21 parents who were separated from their children and deported to travel to the United States to obtain an opportunity to reunify with their children, who remain in the United States." Motion, ECF No. 418-1, at 2. The motion also focuses extensively on what Plaintiffs contend are the merits of the asylum claims for 21 individual members of the class, but fails to tie those claims to the relief Plaintiffs are requesting.

## III.   ARGUMENT

The government has properly implemented and complied with the settlement agreement's return provision, and Plaintiffs' arguments to the contrary are baseless. The settlement agreement is clear that "[t]he government does not intend to, nor does it agree to, return any removed parent to the United States or to facilitate the return of any such removed parents." Settlement Agreement at p. 6. It provides no entitlement to return for any removed parent.  Rather, it provides: "Plaintiffs' counsel may raise with the government individual cases in which plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted. Plaintiffs' counsel represent that they believe that such individual cases will be rare and unusual and that they have no basis for believing that such individual cases will be other than rare and unusual."  *Id.*  And it then places on the government the obligation to provide a reply to any such submission within 30 days.  *Id.* ("In light of plaintiffs' counsel's representation that such cases will be rare and unusual, Defendants agree to provide a reply to any case presented by Plaintiffs within 30 days of receiving Plaintiffs' request to consider the case.").  The motion should be denied.

The Motion Should Be Denied Because Defendants Have Complied Fully with the Settlement Agreement.  The government has complied with its obligations under the agreement, and has done so in good faith.  Defendants carefully considered

the materials submitted for each individual, which consisted primarily of the aforementioned affidavits.  The affidavits were based on claims of asylum, some of which had been previously asserted and denied, and did not present circumstances that constituted rare and unusual circumstances.  In most cases a single affidavit, with no accompanying documentation, was the only evidence Defendants were given to consider.  Defendants' consideration of these materials found that none of those individuals had provided sufficient information showing "rare and unusual circumstances" such that return of an individual may be warranted, and that instead the submissions were merely restatements of their asylum claims.  Despite reaching this conclusion, Defendants then provided a process by which these individuals could submit additional information in support of their requests using a modified parole process as the framework that allowed for submission and tracking of any renewed requests.  Only three individuals chose to take advantage of this process and submitted—or received an extension to submit—materials under this supplemental process, and Defendants further considered those supplemental requests, as they offered to do.  Plaintiffs have provided no basis for this Court to conclude that Defendants' initial consideration of the submitted materials and timely response, not to mention its offer to allow a supplemental process for the submission of additional materials, does not fully satisfy their obligations under the settlement agreement.

18cv428 DMS MDD

Nonetheless, Plaintiffs argue that the Court should order Defendants to return these 21 parents to the United States because, Plaintiffs assert, Defendants have "no good faith basis for concluding that these 21 cases do not fit the criteria."  Motion, ECF No. 418-1 at 11. Plaintiffs appear to be asserting that "the criteria" that Defendants were required to look at were: "parents who were deprived of a meaningful ability to seek asylum, who have bona fide asylum claims, and who cannot reunify with their children in their home countries because of the danger to them and their children." *Id.* at 3; *see also id.* at 7-8 ("Plaintiffs screened hundreds of known deported Class Members to presented only those cases that meet three specific criteria: First, they present a bona fide claim for asylum; second, their asylum claim was abandoned or lost due to coercion or trauma inflicted by the family separation policy; and third, they are unable to reunify in their home country because of their fear of harm to themselves and their children.").  Plaintiffs fail to explain why these "criteria" constitute "rare and unusual circumstances" under the settlement agreement and otherwise fail to justify their extraordinary demand.

To begin with, Plaintiffs fail to acknowledge that the extraordinary relief they are requesting is not "limited," and is not simply a furtherance of the reunification ordered by the Court.  As the Court noted, "the overarching goal here is reunification. And it seems to me that the government's plan, which contemplates reunification in the home country, is the appropriate plan."  Aug. 17, 2018 Hearing Tr. at 13:19-21.

What Plaintiffs are seeking—an order returning class members to the United States—is thus in contravention of not only the settlement agreement but the Court-approved plan for reunification abroad.

And there is no support for Plaintiffs' position in the plain language of the settlement agreement. As an initial matter, it is at best highly dubious that Plaintiffs remotely satisfied their obligation to bring to the government only parents who present "rare and unusual circumstances." Plaintiffs' assertion that that they "screened hundreds of known deported Class Members to present only those cases that meet" these criteria is not supported by the evidence submitted. In fact, the declaration of Mr. Steve Herzog much more vaguely claims only that "[f]or those parents living in fear and seeking potential return, we and our Steering Committee partners assessed cases to identify those that presented potential asylum claims and indicia of coercion during their separation from their children that prejudiced their ability to present such claims." Herzog Declaration at ¶ 8.[2] Thus, it is not possible to tell the universe of individuals assessed, and it further appears that the standard applied in making these initial assessments was very broad and not a meaningful screening mechanism.

---

[2] Moreover, Defendants note that at least two of these individuals actually returned to the United States subsequent to their initial removal, and were again ordered removed. Plaintiffs do not mention this in their papers. *See* Ex. D.

Moreover, Plaintiffs failed to bargain for the inclusion in the settlement agreement of these criteria which they now claim were central to their evaluations. If Plaintiffs wished to bargain for these specific criteria, they could have done so. They did not.  Instead, after reaching agreement with the government, and after the government has complied with that agreement, Plaintiffs are seeking a second bite at the apple (in fact, a third bite, given the government's offer of a modified parole application process) by asking the Court to evaluate Plaintiffs' requests for return under newly identified criteria.  Notably, not only are the criteria newly identified, but Plaintiffs also failed to include any procedures for judicial review of Defendants' determinations in their bargained-for agreement.

Importantly, Plaintiffs do not—and cannot—claim that Defendants failed to consider their submissions.  Instead, they are complaining that Defendants did not evaluate their claims under these newly identified criteria, and to the extent that Defendants did consider those criteria, that Defendants did not reach the conclusion that Plaintiffs wanted.  Notably, Plaintiffs made no effort to include any specific language that would allow them to ask the Court to conduct the currently requested review. Rather, they agreed that they would bring to the government "rare and unusual" cases.

And to the extent that Plaintiffs suggest that the government did not consider the submission in good faith, they have offered no basis for that suggestion.  In

almost all of the cases, Defendants received single affidavits with no corroborating evidence.  In addition to giving these initial submissions a full review, Defendants further provided the opportunity for each individual to submit parole application packets—an existing procedure under existing law as contemplated under the settlement agreement (supplemented by the Plaintiff-friendly modifications offered by the government)—that would have provided the opportunity for further review. The majority of the individuals now seeking return declined to submit these application packets.

Notably, Plaintiffs asserted long ago (before the settlement agreement was reached) that they thought that a number of individuals may have been misled or coerced into losing a meaningful opportunity to seek asylum.  *See* Hearing Tr. 15-16, Aug. 17, 2018; *see also* Notice Regarding Defendants' Plan for Reunifying Removed Parents, ECF No. 190, at 1-2.  Moreover, the claims made by Plaintiffs in this case are not dissimilar to claims made in other cases by individuals alleging that they did not have a fair opportunity to seek asylum. *See, e.g., Al Otro Lado v. Kelly*, Case No.: 2:17-cv-5111 JFW (JPRx), Declaration of Carolina Doe, ECF No. 61-3 (C.D. Cal.); *Padilla v. ICE*, Case No. 2:18-cv-928, Declaration of Allen S. Keller, ECF No. 133 (W.D. Wash.).  Plaintiffs appear to have suspected—or at least should have suspected—that cases such as the ones they ultimately identified were not rare and unusual but were instead (in Plaintiffs' view) common among *Ms. L* class

members.  And  they  knew  that  the  government  objected  to  returning  those individuals to the United States.  *See* Notice Regarding Implementation of Plan for Reunifications  Abroad,  ECF  No.  189,  at  1-2.    Nonetheless,  Plaintiffs  expressly "represent[ed]" in the settlement agreement "that they believe[d] that such individual cases [potentially warranting return] will be rare and unusual and that they have no basis for believing that such individual cases will be other than rare and unusual."  It was "[i]n light of plaintiffs' counsel's representation that such cases will be rare and unusual"  that  "Defendants  agree[d]  to  provide  a  reply  to  any  case  presented  by Plaintiffs  within  30  days  of  receiving  Plaintiffs'  request  to  consider  the  case." Plaintiffs' current position is inconsistent with the representations that they made to the  Court  and  to  the  government—and  accepted  by  both  the  Court  and  the government—in order to reach a settlement on this issue.

Plaintiffs cannot now reasonably assert that the language they agreed to in the settlement  agreement  means  something  else  entirely,  when  they  had  every opportunity to negotiate for the standard they are now pressing the Court to adopt. Moreover, Defendants further dispute that the criteria that Plaintiffs now press this Court to adopt would in any event warrant the relief that Plaintiffs seek, and dispute that the individuals who submitted requests for return have established any eligibility for return based on the materials submitted.  The individuals at issue are dissatisfied by the outcome of their immigration proceedings.  But that can be said of a great

many individuals who are ordered removed, validly, all the time.  The Court should not accept this breathtaking request for relief, particularly in the face of such clear, agreed-upon, Court-approved settlement language.

Thus, for all of these reasons, the Court should conclude that Defendants have fully complied with their obligations under the settlement agreement and should reject any request for return outside of those processes.

The Court Should Reject Plaintiffs' Bad-Faith Invocation of this Court's Remedial Authority.  The Court should also reject Plaintiffs' request that it alternatively disregard the parties' settlement agreement entirely and order the return of these 21 individuals.  To do so would make a mockery of the lengthy settlement negotiation process that the parties undertook at the request of this Court, in part for the purpose of resolving this very issue.

There are other major problems still with Plaintiffs' request.  While the relief Plaintiffs are requesting is somewhat vaguely expressed in Plaintiffs' motion, it is clear that they are asking this Court to order the government to admit or parole these 21 individuals into the United States.  That relief is wholly improper.

This Court lacks the jurisdiction to order that relief.  The U.S. government's power to admit and exclude aliens "without judicial intervention" is well-settled:

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard

enforced exclusively through executive officers, *without judicial intervention*, is settled by our previous adjudication.

*Lem Moon Sing v. United States,* 158 U.S. 538, 547 (1895) (emphasis added). *See also , e.g*., *Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009); *Fiallo* v. *Bell*, 430 U.S. 787, 792 (1977) ("Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)); *Arizona* v. *United States*, 132 S. Ct. 2492, 2498 (2012). It is also well-settled that non-resident unadmitted aliens have "no constitutional right to entry as a nonimmigrant or otherwise." *Kleindienst*, 408 U.S. at 762; *Noel v. Chapman*, 508 F.2d 1023,1027 (2d Cir. 1977). The power to admit or exclude aliens is a sovereign prerogative vested in the political branches, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). Courts lack authority to "compel[] the Executive to release [aliens] into the United States outside the framework of the immigration laws." *Kiyemba*, 555 F.3d at 1028. This request for relief is thus not redressable.

This Court is also precluded from issuing any other forms of relief that might provide what Plaintiffs are seeking. To the extent that Plaintiffs are in effect seeking review of a decision by the Secretary of Homeland Security to deny a parole application packet, such a decision is wholly within the discretion of the Secretary

of Homeland Security and thus not reviewable. *See* 8 U.S.C. § 1182(d)(5). Moreover, any decision on a request for a waiver of inadmissibility under section 1182(d)(3) or for permission to reapply for admission under section 1182(a)(9)(A)(iii) are also non-reviewable discretionary determinations reserved to the Secretary.[3]  Title 8 U.S.C. § 1252(a)(2)(B)(ii) deprives this court of jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the grant of relief under section 1158(a) [relating to asylum]."  The statute specifically states that the jurisdictional bar applies "[n]otwithstanding . . . section 2241 of title 28, or any other habeas corpus provision."  Plaintiffs cannot overcome that bar.

Thus, Plaintiffs have not provided any basis under which the Court may provide them with the relief that they are seeking, and their motion should be denied.

---

[3] Under 8 U.S.C. § 1182(d)(3)(A), the Secretary of State may, after approval by the Secretary of the Homeland Security, issue a document reflecting a grant of temporary parole to an alien who is applying for a nonimmigrant visa, but is known to be ineligible for such a visa.  The Secretary, thereafter, may, in his discretion, parole the alien into the country temporarily, notwithstanding the alien's inadmissibility to the United States, on a case-by-case basis for humanitarian reasons or because of what he deems is a significant public benefit.  *See* 8 U.S.C. § 1182(d)(5)(A).  Such parole is distinct from admission.  *See id.* § 1182(a)(9)(A); *see also id.* § 1101(a)(13)(B) (providing that "[a]n alien who is paroled under [8 U.S.C. §] 1182(d)(5) . . . shall not be considered to have been admitted" for purposes of 8 U.S.C. § 1182(a)(13)(A)).

## IV.   CONCLUSION

For all of the above reasons, the Court should deny Plaintiffs' motion.

DATED: June 28, 2019                    Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General
                                        SCOTT G. STEWART
                                        Deputy Assistant Attorney General
                                        WILLIAM C. PEACHEY
                                        Director
                                        WILLIAM C. SILVIS
                                        Assistant Director

                                        */s/ Sarah B. Fabian*
                                        SARAH B. FABIAN
                                        Senior Litigation Counsel
                                        NICOLE N. MURLEY
                                        Senior Litigation Counsel
                                        Office of Immigration Litigation
                                        Civil Division
                                        U.S. Department of Justice
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        (202) 532-4824
                                        (202) 616-8962 (facsimile)
                                        sarah.b.fabian@usdoj.gov

                                        ADAM L. BRAVERMAN
                                        United States Attorney
                                        SAMUEL W. BETTWY
                                        Assistant U.S. Attorney

                                        *Attorneys for Respondents-Defendants*

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is Box 868, Ben Franklin Station, Washington, D.C. 20044. I am not a party to the above-entitled action. I have caused service of the accompanying **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ALLOW PARENTS DEPORTED WITHOUT THEIR CHILDREN TO TRAVEL TO THE UNITED STATES** on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 28, 2019          *s/ Sarah B. Fabian*
                                        Sarah B. Fabian

Defendants' Exhibit A

| | |
|---|---|
| **From:** | Lee Gelernt |
| **To:** | Fabian, Sarah B (CIV); Stewart, Scott G. (CIV); Murley, Nicole (CIV) |
| **Cc:** | Anand Balakrishnan; Stephen Kang; Daniel Galindo |
| **Subject:** | RE: USE THIS CHAIN RE: re deported parents and settlmnet agreement |
| **Date:** | Tuesday, December 04, 2018 8:27:25 PM |

If you are insisting on signed decs with a certificate of translation, then wait for us to send the declarations with a signature and certificate, and ignore what I sent previously.

**From:** Fabian, Sarah B (CIV) [mailto:Sarah.B.Fabian@usdoj.gov]
**Sent:** Tuesday, December 04, 2018 7:38 PM
**To:** Lee Gelernt; Stewart, Scott G. (CIV); Murley, Nicole (CIV)
**Cc:** Anand Balakrishnan; Stephen Kang; Daniel Galindo
**Subject:** RE: USE THIS CHAIN RE: re deported parents and settlmnet agreement

Lee – I am responding to this email as well as your other email regarding the unsigned declarations. Under the settlement agreement, Plaintiffs are required to submit "all evidence they would like considered by the government." Thus under the terms you agreed to, it is up to you to submit whatever evidence that you want considered. I have not discussed it with my clients yet but I would expect that unsigned declarations written in English with no certificate of translation will likely be given less evidentiary weight. So if what you want my clients to evaluate and weigh is a signed declaration, then you need to send me that.

In any event, I need confirmation on how you want you to proceed. If you want my clients to evaluate what you sent yesterday then I will have them do that; but if you want them to wait for signed documents, then I am not going to have them assess these documents (and I will not consider the government's 30 day time period to start running until I receive all of your evidence). Please let me know one way or another how you would like the government to proceed for these 12 individuals.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

**From:** Lee Gelernt <LGELERNT@aclu.org>
**Sent:** Tuesday, December 04, 2018 4:34 PM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>; Murley, Nicole (CIV) <NMurley@civ.usdoj.gov>
**Cc:** Anand Balakrishnan <abalakrishnan@aclu.org>; Stephen Kang <skang@aclu.org>; Daniel Galindo <dgalindo@aclu.org>
**Subject:** RE: USE THIS CHAIN RE: re deported parents and settlmnet agreement

Sarah:  one other point I want to stress about evidence: the focus of these is on the unfairness of the hearing process, but we don't have immigration files, and the government is in possession of all relevant evidence.

thanks

**From:** Fabian, Sarah B (CIV) [mailto:Sarah.B.Fabian@usdoj.gov]
**Sent:** Monday, December 03, 2018 7:53 PM
**To:** Lee Gelernt; Stewart, Scott G. (CIV); Murley, Nicole (CIV)
**Cc:** Anand Balakrishnan; Stephen Kang; Daniel Galindo
**Subject:** RE: USE THIS CHAIN RE: re deported parents and settlemnet agreement

Lee:

I did a quick review of these documents and it looks like they are unsigned and have no certificates of translation. Is your position that these unsigned documents are "all evidence" that should be considered by the government for these individuals? If your intention is for the government to consider signed versions of these declarations then please clarify that and we will await receipt of those signed declarations. If you would like our clients to consider these unsigned versions as "all evidence" in support of these claims please let me know that and I will pass these on as is. Please let me know one way or the other so that I can proceed accordingly.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

**From:** Lee Gelernt <LGELERNT@aclu.org>
**Sent:** Monday, December 03, 2018 6:06 PM
**To:** Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>; Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Murley, Nicole (CIV) <NMurley@civ.usdoj.gov>
**Cc:** Anand Balakrishnan <abalakrishnan@aclu.org>; Stephen Kang <skang@aclu.org>; Daniel Galindo <dgalindo@aclu.org>
**Subject:** USE THIS CHAIN RE: re deported parents and settlmnet agreement

Sorry, Re–sending with the proper Nicole added, so use this new chain

**From:** Lee Gelernt
**Sent:** Monday, December 03, 2018 5:44 PM
**To:** Stewart, Scott G. (CIV) (Scott.G.Stewart@usdoj.gov); Fabian, Sarah B (CIV) (Sarah.B.Fabian@usdoj.gov); Nicole Ramos (nicole@alotrolado.org)
**Cc:** Anand Balakrishnan; Stephen Kang; Daniel Galindo
**Subject:** re deported parents and settlmnet agreement

Scott, Sarah, and Nicole:

Pursuant to the *Ms. L* Final Settlement Agreement (at 6) ("The return of removed parents to the United States"), I sending you an initial group of cases in which the *Ms. L* class member was denied a meaningful opportunity to present his or her claim for asylum or protection.   We note that these declarations are currently unsigned.  If the government would like them to be signed by each of the parents, we can provide signed versions in approximately one week.  We intend to submit additional cases on a rolling basis within the 30 day period provided for under the Agreement.

I enclose declarations from 12 class member parents.

I note that under the Agreement, Plaintiffs are required to submit "all evidence they would like considered by the government."  Given that the relief being sought is a renewed opportunity to apply for asylum, many details of the parents' claims for protection are not included in these declarations.  Instead, the focus is on the ways in which these class members were denied a fair opportunity to pursue their claim  to such protection.

Plaintiffs look forward to the government's reply, and would request the opportunity to discuss any case the government believes does not warrant return.

Thanks,
Lee

Defendants' Exhibit B

| From: | Anand Balakrishnan |
|---|---|
| To: | Fabian, Sarah B (CIV); Lee Gelernt; Stephen Kang; Daniel Galindo |
| Cc: | Stephen Kang; Stewart, Scott G. (CIV); Murley, Nicole (CIV); Herzog, Steven C |
| Subject: | RE: Response to Class Member Requests for Return Under the Settlement Agreement |
| Date: | Wednesday, February 27, 2019 3:33:22 PM |

Hi Sarah,

We put together questions about the return issue below – let us know what times later this week would work to talk.

- Why is the government requiring that the applications here include all of the materials required for an application for Humanitarian Parole?  The Settlement Agreement does not state that the applications will be so treated, nor does it state that the applicants will need to fulfill those requirements.  These applicants are seeking asylum, not humanitarian parole.  It is in our view inappropriate for the government to impose additional requirements that are not provided for by the Settlement Agreement.
    - In particular, an asylum seeker does not need to present an affidavit of support
    - There is no reason here to require evidence of a parent/child relationship, as the parents and children have already been identified by the government as a separated family
    - There is no reason to require a signed G-28 at this point, from parents in hiding, before any indication that the government is going to accept the applications
- Will the government guarantee that decisions on these applications will be expedited? Given the time that has already elapsed, the government should respond to applications within 3 days after receipt.
- What will be the status of these individuals should they be granted Humanitarian Parole?
- Will the government confirm that anyone granted humanitarian parole will not be placed in detention upon arriving in the United States?
- Will the government confirm that the declarations submitted in support of these requests is sufficient supporting evidence for the Form I-131s?
- Re the Form I-131s, specific questions about how they should be filled out:
    - Page 1: what class of admission should be filled in?
    - Part 3: what should applicants fill in for length of trip

Thanks,
Anand.

---

**From:** Fabian, Sarah B (CIV) [mailto:Sarah.B.Fabian@usdoj.gov]
**Sent:** Monday, February 25, 2019 12:04 PM
**To:** Anand Balakrishnan; Lee Gelernt
**Cc:** Stephen Kang; Stewart, Scott G. (CIV); Murley, Nicole (CIV); Herzog, Steven C
**Subject:** RE: Response to Class Member Requests for Return Under the Settlement Agreement

Anand – I am happy to talk but as always it would be helpful, if you have specific questions, if you

can send the questions in advance so that I can get any necessary information from my clients.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
(202) 532-4824

---

**From:** Anand Balakrishnan <abalakrishnan@aclu.org>
**Sent:** Monday, February 25, 2019 11:28 AM
**To:** Fabian, Sarah B (CIV) <sfabian@CIV.USDOJ.GOV>; Lee Gelernt <LGELERNT@aclu.org>
**Cc:** Stephen Kang <skang@aclu.org>; Stewart, Scott G. (CIV) <sstewart@CIV.USDOJ.GOV>; Murley, Nicole (CIV) <NMurley@civ.usdoj.gov>; Herzog, Steven C <sherzog@paulweiss.com>
**Subject:** RE: Response to Class Member Requests for Return Under the Settlement Agreement

Sarah –

Lee let me know that he spoke to you about the return issue at the hearing last week.  Can we set up a time to talk?  Would tomorrow at 11 EST work?  If not, sometime on Wednesday?

Anand.

---

**From:** Fabian, Sarah B (CIV) [mailto:Sarah.B.Fabian@usdoj.gov]
**Sent:** Wednesday, February 20, 2019 6:31 PM
**To:** Lee Gelernt
**Cc:** Anand Balakrishnan; Stephen Kang; Stewart, Scott G. (CIV); Murley, Nicole (CIV)
**Subject:** Response to Class Member Requests for Return Under the Settlement Agreement

Lee:

As you are aware, pursuant to the Settlement Agreement (Agreement), filed on September 12, 2018, and approved by the Court November 15, 2018, U.S. Immigration and Customs Enforcement (ICE) has agreed to consider cases in which plaintiffs' counsel believes the return of a particular removed *Ms. L* class member may be warranted in "rare and unusual" circumstances.  As of the deadline of December 15, 2018, the Department of Justice (DOJ) had received the affidavits (and, where provided, supporting materials) submitted for 52 individuals ("Applicant Pool"), which it subsequently provided to ICE.  ICE has now reviewed all materials submitted and advised that the documents submitted for the Applicant Pool did not provide sufficient information to permit adjudication.  In keeping with the spirit of the Agreement, ICE is offering members of the Applicant Pool the opportunity to submit additional information in support of their respective requests for parole.  Each should include:

- Completed Form I-131, Application for Travel Document, for each beneficiary.

- Detailed explanation, as well as supporting documentation, of the reasons parole is being requested for the beneficiary. (See Submitting Evidence and Guidance on Evidence for Certain Types of Humanitarian or Significant Public Benefit Parole Requests.) **This must include evidence of the relationship between the applicant and the child or children currently in the United States.  Any documents requiring translation must include both the original and the certified translation.**

- Completed Form I-134, Affidavit of Support (PDF, 461 KB), for each beneficiary to show how each beneficiary will be financially supported in the United States.  If there is more than one sponsor, each sponsor must submit a Form I-134, Affidavit of Support (PDF, 461 KB).

- Completed Form G-28, Notice of Entry of Appearance as Attorney or Representative, for DHS to communicate with the attorney or representative about the applicant's case.

Also to keep with the spirit of the agreement, members of the Applicant Pool will not be required to submit the $575.00 filing fee for all parole applicants or the $85.00 biometrics fee for applicants 14-79 years of age.

Additionally, although humanitarian parole applications must normally be submitted in hard copy, ICE has agreed to accept electronic applications from members of the Applicant Pool. However, ICE reserves the right to request original documents if adjudicators believe that it would be necessary to properly adjudicate the application.

In order to facilitate processing, ICE has created an electronic mailbox for the submission of application packages for the 52 members of the Applicant Pool: mslparoleapplications@ice.dhs.gov.  **No other humanitarian parole applications sent to this mailbox will be adjudicated.**

It is **highly recommended** that you review the information regarding humanitarian parole available at the following link: https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-parole-individuals-outside-united-states

In keeping with the deadlines established in the settlement agreement, **please submit this additional information within 30 days**. Once ICE has received humanitarian parole packages from members of the Applicant Pool and processing has been initiated, ICE will send letters notifying you/your clients of that fact and, if necessary, requesting additional information or documentation.  These letters are not guarantees that particular parole applications will be approved.  Parole is an exercise of discretion that may not be appropriate in all cases.

Best,
Sarah

Sarah B. Fabian
Senior Litigation Counsel
Office of Immigration Litigation – District Court Section
Department of Justice
PO Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824

Defendants' Exhibit C

**Fabian, Sarah B (CIV)**

| | |
|---|---|
| **From:** | Lee Gelernt <LGELERNT@aclu.org> |
| **Sent:** | Sunday, March 17, 2019 11:18 PM |
| **To:** | Fabian, Sarah B (CIV) |
| **Cc:** | Anand Balakrishnan; Stephen Kang; Daniel Galindo; Stewart, Scott G. (CIV); Murley, Nicole (CIV); Herzog, Steven C |
| **Subject:** | Re: Response to Class Member Requests for Return Under the Settlement Agreement |

| | |
|---|---|
| **Follow Up Flag:** | FollowUp |
| **Flag Status:** | Completed |

Sarah:

We are following up on our call last week about the return of the parents deported without their children under the settlement.

As we said, we believe the 52 declarations we submitted contained more than sufficient information to warrant return of the parents and were surprised to learn the government had rejected all 52.  Nonetheless, we would like to take you up on your offer to reconsider the applications of the 23 who are not currently in the U.S.

You have also said that we can submit additional information about these individuals.  We do not intend at the moment to do so, because we feel we've given you all the relevant information we have in our possession.   The government should have additional information that we cannot obtain, but we've been told that in response to FOIAs by individual lawyers for these individuals, the government has produced virtually no information.

We do understand, however, that individual lawyers for certain of the parents would like to submit additional information, and we and/or those lawyers will be in touch with you shortly about that.

As we also said last week during our call, we think it would make sense if you could tell us precisely what type of information would be helpful in each case. For instance, have you made a determination that the information in these sworn affidavits lacks credibility?  Alternatively, is the government claiming that, though truthful, the information does not warrant return for some legal reason?  Or does the government believe that these individuals will not ultimately prevail in their asylum hearings and for that reason is rejecting these cases?

We trust that the government will reconsider these 23 cases in good faith, and look forward to hearing from you soon.

Thanks,


Lee

Sent from my iPhone

---

Defendants' Exhibit D



To be completed by immigration officer executing the warrant:
Name of alien being removed:

A206 641 564

Port, date, and manner of removal:

REMOVED

APR 12 2019

ICE AIR OPS
LAREDO, TX

Photograph of alien
removed

Right index fingerprint
of alien removed

(Signature and title of immigration officer taking print)

Departure witnessed by:

(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.   ☐

Departure Verified by:

(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

**File No:** A206 641 564
**Event No:** FTB1903000059
**Date:** March 13, 2019

## To any immigration officer of the United States Department of Homeland Security:

<div style="background:black"> </div>

(Full name of alien)

who entered the United States at    BROWNSVILLE, TEXAS    on   March 12, 2019
                                                    (Place of entry)                           (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

- ☒ an immigration judge in exclusion, deportation, or removal proceedings
- ☐ a designated official
- ☐ the Board of Immigration Appeals
- ☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

<div style="background:black"> </div>

(Signature of immigration officer)

ACTING PATROL AGENT IN CHARGE

(Title of immigration officer)

March 13, 2019                      Brownsville, Texas

(Date and office location)

Form I-205 (Rev. 08/01/07) N

U.S. Department of Homeland Security                    **Notice of Intent/Decision to Reinstate Prior Order**

File No. **A206 641 564**

Event No: **FTB1903000059**

Date: **March 13, 2019**

Nar ███████████████████████

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent

(Deportation / exclusion / removal)

is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on **September 26, 2014** at

(Date)

**OAKDALE, LOUISIANA**

(Location)

2. You have been identified as an alien who:

   [x] was removed on **October 17, 2014** pursuant to an order of deportation / exclusion / removal.

   (Date)

   [ ] departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or

   (Date)

   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about **March 12, 2019** at or near **BROWSVILLE, TEXAS**

(Date)                                    (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**BORDER PATROL AGENT**

(Title of officer)

---

### Acknowledgment and Response

I [ ] do [x] do not wish to make a statement contesting this determination.

**3-13-19**

(Date)                                                          (Signature of Alien)

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**March 13, 2019**        **BROWNSVILLE, TEXAS**

(Date)                       (Location)                        (Signature of authorized deciding official)

**SUPERVISORY BORDER PATROL AGENT**

(Printed or typed name of official)                          (Title)

Form I-871 (Rev. 08/01/07)

## EARM



Person ID: 11736337 Sex: ▬▬▬▬ COB: GUATE COC: GUATE
Subject ID : 365088809 Processing Disposition: REINSTATEMENT OF DEPORT ORDER I-871 RCA Look-Up
Case # : 17473099 Case Category: [16] Docket: PIC - Closed Docket

| | |
|---|---|
| Final Order of Removal: Yes | Time in Custody: N/A | Special Class: |
| Final Order Date: 05/16/2019 | Depart / Cleared Status: 8- | |
| Proceed With Removal: Yes | Excluded/Removed - | |
| Days Final Order in Effect: 7 | Inadmissibility | |

-- Select Different Case File --  ⌄

⚠ This alien is identified as a member of a Separated Family Unit

**Current / Active Alerts**

Detention History

F.O. of Removal

Criminal

215 715 082

## Encounter Details

### 2 Encounter(s) linked to Person ID: 11736337

| | Ref# | Subject ID | A-Number | Last Name | First Name | COC | Historical Priority | DOB | Encountered on | Case | Case Category |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ⦿ | 2 | 365088809 | 215715082 | | | GUATE | No Priority | | 05/09/2019 | 17473099 | 16 |
| ○ | 1 | 361429820 | 215715082 | | | GUATE | No Priority | | 05/18/2018 | 16529263 | 8F |

**Encounter Details** All information below may only be edited in EAGLE

### Event / Incident Information

Event Number: HEB1905000055
Event Occurred On: 05/09/2019
Event Type: Criminal Alien Smuggling

Operation: N/A
Site: FRR
Landmark: 52.38 - HWY 339

Primary Agent: N/A
Assigned On:
Event Supervisor: N/A
Assigned On:

### Subject Information

A-Number: 215 715 082
Control Na▬
First Name▬
Middle Nan▬
Maiden: N/A
Nickname: N/A
Living?: N/A
Sex: M
Transgender: N/A
Marital Status: Single
SSN: N/A
Juvenile Verified: N/A
Occupation: LABORER

Historical Priority: No Priority
Criminal Type: N/A
Agg Felon: No Aggravated Felony Convictions
Primary Citizenship: GUATEMALA
Hair: BLK
Eyes: BRO
Complexion: MED
Race: W
Origin: N/A
Date▬
Age:▬
Age▬
Height: 64
Weight: 180
Speak/Understand English: N/A
Read/Write English: N/A
Primary Language: N/A

Role: I
Role Comment: N/A
Processing Disposition: REINSTATEMENT OF DEPORT ORDER I-871
INS Status: Inadmissible Alien
POE: HIDALGO, TX
Entry Date: 05/04/2019
Entry Class: PWA Mexico
Apprehension Date: 2019-05-09 09:30:00.0
Site: FRR
Landmark: 52.4 - REALITOS/CONCEPCION/HIGHWAY 285
Arrest At/Near: HEBBRONVILLE, TX
Juvenile Status: N/A
Family Unit ID: N/A
Separation Reason: N/A
Accompanying Family Member Relation: N/A
Accompanying Family Member Subject ID: N/A
Consequence Delivery System Selection: SOTA

**I-213 Narrative**   **Narrative 1 : Created Date: 05/15/2019 02:47 AM**   ZONES:
Entry Zone: 7.1
Apprehension Zone: 52.4

**ENCOUNTER:**
A Laredo Sector Border Patrol Agent encountered the above subject in the Fisherman Camp area near Hebbronville, Texas in Duval County. After a brief interview, it was determined that the subject had unlawfully entered into the United States from Mexico by swimming across the Rio Grande River. Subject was not at the time inspected or admitted by an Immigration Officer at a port of entry as designated by the Secretary of Homeland Security. Subject further admitted to being a citizen and national of Guatemala with no right to be in or remain in the United States legally. The subject was placed under arrest and advised of his rights and transported to the Laredo Centralized Processing Unit in Laredo, Texas for further processing.

**CRIMINAL HISTORY:**
See attached record checks.

**IMMIGRATION HISTORY:**
See attached record checks.

**HEALTH SCREEN:**
Subject did not show any health related concerns that would require medical clearance at this time.

**CONSULAR NOTIFICATION:**
The Subject's right to communicate with a Consular Officer of the subject's native country was offered. Subject understood and declined the right to contact the Consular Officer at this time. Subject claimed no fear if returned to his native country of citizenship.

**DISPOSITION:**
Subject was referred to the GPI/HPI Program. Subject was given all paper currency (U.S. and foreign) to maintain in their personal possession. The subject has verified and acknowledge receipt of the following amounts below:

US Dollars: $0.00
Mxn Pesos $100.00

Subject's Initials:_____

United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) |

Release EARM 5.55