JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **JOINT STATUS REPORT** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on August 14, 2019, in anticipation of the status conference scheduled at 1:00 pm on August 16, 2019.  The parties submit this joint status report in accordance with the Court's instruction.

I.   **DEFENDANTS' POSITIONS**

  **A. Update on Reunifications for the Original Class Period**

As of August 13, 2019, Defendants have discharged 2,784 of 2,814 possible children of potential class members for the original class period. That is, Defendants have discharged 2,784 of the 2,814 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018. See Table 1: Reunification Update. This is an increase of six discharges reported in Table 1 since the JSR filed on July 11, 2019. See ECF No. 432. The six children had

parents who are out of the class, and were discharged under other appropriate circumstances, such as discharges to sponsors.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States, but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,814 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of August 13, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

**Table 1: Reunification Update**

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2707 | 2814 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 107 | 2677 | 2784 |
| • Children discharged by being reunified with separated parent | 82 | 2085 | 2167 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 25 | 592 | 617 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
|    o Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |
|    o Parent in other federal, state, or local custody | 0 | 0 | 0 |
|    o Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 0 | 5 | 5 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 9 | 9 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 13 | 13 |

| | | | |
|---|---|---|---|
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 1 | 1 |
| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |

## B. Update on Removed Class Members for the Original Class Period

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least August 13, 2019. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 15 | Defs. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 15 | Defs. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 15 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 15 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 15 | Defs. |
| **PROCESS 3: Determine** | Children for whom ACLU has communicated parental intent for minor: | 13 | Pls. |

| **Parental Intention for Minor** | • Children whose parents waived reunification | 13 | Pls. |
|---|---|---|---|
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | Pls |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

### C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | **410 (238 Parents/172 Children)**[2] |
| | • Number who elect to receive settlement procedures | **251 (137 Parents/114 Children)** |
| | • Number who waive settlement procedures | **159 (101 Parents/58 Children)**[3] |
| **Interviews** | Total number of class members who received interviews | **147**[4] |
| | • Parents who received interviews | **76** |
| | • Children who received interviews | **71** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **66**[5] |

---

[1] The number of election forms reported here is the number received by the Government as of August 6, 2019.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CF/RF determinations were reconsidered, number of parents whose negative CF/RF determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had a Notice to Appeal from ICE or was already ordered removed by an immigration judge (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **66**[6] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **0** |
| | Total number of CFI decisions issued for children by USCIS | **73**[7] |
| | • Number of children determined to establish CF by USCIS | **73**[8] |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | 4 |
| | • Number of parents granted asylum by USCIS | 1 |
| | • Number of parents referred to immigration court | 0 |
| | • Number of children granted asylum by USCIS | 1[9] |

---

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

| | | |
|---|---|---|
| | • Number of children referred/returned to immigration court | **2**[10] |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **101 Parents**[11] |

On June 3, 2019, Defendants received re-transmitted Settlement Election Forms for 39 children who had resided at the Dilley Family Residential Center (FRC) and Defendants have now added those to the tracker. This yields a total of 39 adult forms served and 40 children forms served at the Dilley FRC—with two forms manually added into tracking for families that had two children—for a combined total of 79 forms served at the Dilley FRC. To the extent any remaining discrepancy exists in the numbers of Settlement Benefits Election Forms transmitted and received, Defendants ask that the Plaintiffs provide them with a list of forms they believe have not been received and processed so that Defendants can cross-check with their data.

---

[10] This number includes children referred/returned to immigration court as the principal asylum applicant.

[11] This number is as of August 6, 2019.

### D. Parents Who ICE Records Reflect Have Absconded After Being Released

| Absconders | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | 171[12] |
|---|---|---|

### E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. Since that time, Defendants have produced 4 batches of information regarding the expanded class, leaving 2 that remain to be produced. Defendants will produce these final two batches on a rolling basis, and expect to complete this production in the near future barring any unforeseen complications.

### F. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.

#### 1. *Data Requested by Plaintiffs*

Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR. The parties have discussed amending this schedule so that Defendants will produce these updated reports on a monthly basis.

---

[12] This information is current as of August 9, 2019.

### 2. *Processes and Procedures*

Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018. The outline also included an overview of the options for separated parents and children to obtain information about reunification options.

The parties have conferred on the matter since then. To summarize just the most recent conferrals: On July 11, 2019, Defendants provided a comprehensive response to Plaintiffs' most recent comments, and requested that the parties schedule a follow-up meet and confer on these issues once Plaintiffs have reviewed Defendants' response. On July 18, the parties met and conferred regarding Defendants' responses. Plaintiffs sent a list of follow up questions, to which Defendants responded on July 26. Plaintiffs then sent follow-up questions to Defendants' responses on August 6, to which Defendants responded on August 12. Defendants expect to provide additional information shortly, and the parties can continue to discuss these issues in an effort to reach final resolution.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors of Children of Expanded Class Members

As of the date of this Joint Status Report, Defendants have provided Plaintiffs with four lists of information concerning a total of 966 children of expanded class members. For 833 of these children, the information in the government's production includes a phone number apparently for the child's sponsor and/or their parent. The Steering Committee has been working steadily to call these phone numbers in order to reach as many parents and sponsors in this group as possible. As of August 14, the Steering Committee had attempted telephonic outreach to the families of 707 of these 833 children, or 85% of families for whom telephonic contact can presently be attempted based on the information the government has provided.

### B. Availability of Phone Numbers for Separated Parents

On August 2, the Steering Committee wrote to advise the government that for 914 of the 966 children of expanded class members included on the government's first four lists, the government provided either no phone number for the separated parent, or provided a phone number that is identical to the phone number provided for the child's sponsor. The Steering Committee indicated that it for many of the cases in which an identical phone number was provided for the parent and sponsor, the phone number was in fact a number for the sponsor and thus did not enable direct contact with the separated parent. On August 9, the government advised the Steering Committee that it does not have any additional contact information for the parents of these children.

As a result of the government's inability to provide phone numbers for most of the separated parents, in order to contact potential expanded class members, the

Steering Committee must first attempt to contact each child's sponsor and request from the sponsor a contact phone number for the separated parent. If the sponsor is reachable at the phone number provided, and if they able to provide contact information for the separated parent, the Steering Committee then attempts to contact the separated parent.

The Steering Committee has been pursuing this multi-step process where necessary, and as of August 14, of the 707 families to whom the Steering Committee has attempted outreach, the Steering Committee has been successful in completing phone calls with 503 sponsors and 101 parents. Committee members must frequently make multiple phone calls to reach a single parent or sponsor, so these results reflect an estimated thousands of calls or attempted calls. The Steering Committee continues to conduct outreach to sponsors and parents with the information the government has provided, and is discussing methods of making contact with families for whom no phone contact information has been provided.

### C. <u>Additional Lists of Children of Expanded Class Members</u>

On August 6, the government indicated to Plaintiffs that two additional batches of information pertaining to children of expanded class members would be forthcoming shortly. Plaintiffs look forward to receiving these lists from the government, along with any contact information in the government's possession for the parents from whom each child was separated.

### D. <u>Steering Committee Progress for June 26 Initial Class</u>

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. The Steering Committee has not received from the government an updated list of

children with removed parents remaining in ORR custody since the government's last production on June 7, which formed the basis of Plaintiff's status update in the last Joint Status Report dated July 11.

As reported by Plaintiffs in the last Joint Status Report, on June 7, the Steering Committee has delivered preferences for 17 of the 18 children in the remaining operative group. The parent of the remaining child is seeking to return to the United States pursuant to the motion currently pending with the Court, and the Steering Committee has advised the government that the delivery of a parental reunification election in this case will therefore be delayed.

### E. Children Whose Parents Have Submitted Preferences and Are Still Detained

The Steering Committee continues to meet and confer with the Government about children who are still in ORR after the Steering Committee has submitted a final reunification election.

### F. Information-Sharing Proposals

The parties continue to meet and confer concerning information-sharing protocols among the agencies and with legal services providers. On Monday, August 13, 2019, the government provided Plaintiffs with their most recent communication concerning the government's plans to implement various protocols with respect to information sharing, which also included their responses to Plaintiffs' concerns. Plaintiffs are reviewing that communication and conferring with legal services providers and other stakeholders, and expect to respond to the government soon.

## III. *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement.

The parties continue to meet and confer on issues related to settlement implementation as they arise. The parties held a productive meet and confer on August 6, 2019 to follow up on a range of open issues, some of which related to specific situations for individual class members and others issues of more general applicability.

One issue that remains unresolved—and which has been previously reported in multiple status reports—is a discrepancy in the statistics of settlement implementation. As the Court is aware, the Government has included in the ongoing status reports certain statistics related to implementation of the *MMM/Dora/Ms. L* settlement agreement, including the total number of executed settlement forms provided to the Government and the number of forms in which class members elected to receive settlement procedures. As of the last status report, filed on July 11, 2019 (ECF No. 432), class counsel's internal records reflected that the Government has been provided with 20 more forms than what the Government reported. Class counsel raised this discrepancy once again during the meet and confer with the Government on August 6, 2019. The issue is still unresolved, as class counsel continue to await the Government's evaluation and response.

Below are the statistics, as August 12, 2019, that class counsel are able to report based on their internal records:

| Settlement Process | Description | Number |
|---|---|---|
| Election Forms | Total number of executed election forms sent to the Government | 432 (257 parents; 175 children) |
| | • Number who elected to receive settlement procedures | 263 invoke(148 parents; 115 children) |
| | • Number who waived settlement procedures | 169 waive (109 parents; 60 children) |

| | | |
|---|---|---|
| 1 | DATED: August 14, 2019 | Respectfully submitted, |

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

|     |     |
| --- | --- |
| 1   | JOSEPH H. HUNT |
|     | Assistant Attorney General |
| 2   | SCOTT G. STEWART |
|     | Deputy Assistant Attorney General |
| 3   | WILLIAM C. PEACHEY |
| 4   | Director |
|     | WILLIAM C. SILVIS |
| 5   | Assistant Director |
| 6   |     |
|     | */s/ Sarah B. Fabian* |
| 7   | SARAH B. FABIAN |
| 8   | Senior Litigation Counsel |
|     | NICOLE MURLEY |
| 9   | Trial Attorney |
| 10  | Office of Immigration Litigation |
|     | Civil Division |
| 11  | U.S. Department of Justice |
| 12  | P.O. Box 868, Ben Franklin Station |
|     | Washington, DC 20044 |
| 13  | (202) 532-4824 |
| 14  | (202) 616-8962 (facsimile) |
|     | sarah.b.fabian@usdoj.gov |
| 15  |     |
| 16  | ADAM L. BRAVERMAN |
|     | United States Attorney |
| 17  | SAMUEL W. BETTWY |
| 18  | Assistant U.S. Attorney |
| 19  |     |
|     | *Attorneys for Respondents-Defendants* |