Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
skang@aclu.org
samdur@aclu.org

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al. <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: August 14, 2019 <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO ALLOW PARENTS DEPORTED WITHOUT THEIR CHILDREN TO TRAVEL TO THE UNITED STATES** |

**INTRODUCTION**

Plaintiffs submit this brief in response to the Court's three questions in its July 29 Order Requesting Supplemental Briefing.

**Question 1:**

What was the legal basis for the deportation of the 21 parents subject to this motion? It appears the majority of them (A.D.G., D.C.C., D.J.M., D.J.M.C., D.P.F., D.X.C., E.C.C., E.A.S.M., J.A.A., O.U.R.M., R.A.R.A., S.A.C. and S.T.S.) signed some kind of paperwork, but the exact nature of that paperwork is unclear. Three others (B.L.S.P., E.F.A.R. and M.L.D.A.) either withdrew or abandoned their requests for asylum after receiving credible fear interviews or hearings. The legal basis for deporting the remaining five (C.A.C., C.P.E., E.L.D.H., L.R.M. and S.X.C.) is unclear. The Court requests further information from the parties about the legal bases for these deportations, along with any documents underlying these deportations, if any.

**Answer:**

All 21 parents were deported pursuant to orders of removal. As explained further in the answer to Question 2 below, all the orders were illegal and do not prevent the Court from ordering their return for new hearings.

Parents were issued three different types of orders.

- 15 were issued Expedited Removal Orders: C.A.C.; C.P.E.; D.C.C.; D.J.M.; D.J.M.C.; D.P.F.; D.X.C.; E.A.S.M.; E.C.C.; E.F.A.R.; O.U.R.M.; R.A.R.A.; S.A.C.; S.T.S.; S.X.C.
- 3 were issued Reinstated Orders of Removal: A.D.G.; E.L.D.H.; L.R.M.[1]
- 3 were issued Orders of Removal from an Immigration Judge: B.L.S.P.; J.A.A; M.L.D.A.[2]

---

[1] An individual who is processed for expedited removal is entitled to a credible fear interview in order to pursue asylum. Those who have returned to the United States after being previously ordered removed may be placed in specialized proceedings known as reinstatement proceedings, where they can pursue withholding of removal or relief under the Convention Against Torture. In these proceedings, individuals are entitled to a reasonable fear interview.

[2] The entirety of the government's document production provided in response to the Court's order, are submitted with this brief as exhibits in sealed exhibits 1 and 2. Sealed Exhibit 1 includes the documents the government provided specific to each

1

**Question 2:**

How was the deportation of each of these parents unlawful? Specifically, aside from the legal authority cited in the parties' briefs, is there any other legal basis for a court order requiring the Government to allow these parents to travel to the United States? Does the failure to provide a credible fear interview when required automatically render a subsequent deportation unlawful?

**Answer:**

All 21 of the deportations were illegal. All 21 parents suffered the unconstitutional trauma of separation from their children. The parents' declarations amply document how the trauma of having minor children taken away from them harmed their ability to navigate the asylum process. The trauma, and coercion, was amplified by the communicated threat that any attempt to seek asylum would be accompanied by an extended period of separation. It resulted in individuals not raising bona fide claims, relinquishing claims before the process had completed, or simply being impeded from properly raising their claims.

This Court has already held that each of the parents was entitled to proceed through the entirety of their proceedings while accompanied with their children. As this Court further explained, "arriving on the United States soil with one's minor child to pursue relief extended by U.S. law—as well as international law to which the United States has acceded—calls out for careful assessment of how governmental actors treat such people and whether constitutional protections should apply." *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1164 (S.D. Cal. June 6, 2018). Under the "particular circumstances" of those who have come to the United States to seek asylum, the policy of separating family members is so "brutal" and "offensive" as to violate the right to family unity. *Id.*

As the Ninth Circuit has recognized, the existence of the right to seek asylum is meaningless if the ability to raise a fear, or present a claim, is impeded by

---

parents removal proceeding. Sealed Exhibit 2 includes a set of documents that the government provided that record relinquishment decisions by parents.

government coercion or unconstitutional conduct. The statutory right to seek asylum "may be violated by a pattern or practice that forecloses the opportunity to apply," *Campos v. Nail*, 43 F.3d 1285, 1288 (9th Cir. 1994), or that "interfere[s] with plaintiff class members' exercise of their right to apply." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) (upholding permanent injunction against unlawful interference with opportunity to meaningfully apply for asylum); *Orantes-Hernandez v. Holder*, 321 Fed. App'x 625, 626-27 (9th Cir. 2009) (refusing to dissolve the injunction); *Campos*, 43 F.3d at 1287 (affirming an injunction against a practice that interfered with the statutory right to apply for asylum: an immigration judge's practice of denying transfer motions to asylum seekers who had moved across the country); *cf. M.M.M.*, 347 F. Supp. 3d at 534 (declining to presume waiver of children's asylum rights) (citing, inter alia, *United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993) ("Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence in the loss of fundamental rights.") (citations omitted)).

The Ninth Circuit has further made clear that a Court has the power to order that the government allow parents with wrongfully entered final orders of removal to return to "take advantage of the procedures to which he is entitled." *Walters v. Reno*, 145 F.3d 1032, 1051 (9th Cir. 1998); *see also* Pl. Br. on Deported Parents at 11-12, Dkt. 418 (citing additional authorities for courts' power to order the return of deportees to redress illegalities in expedited removal or asylum proceedings).

As set out below, the trauma of family separation, in conjunction with statutory and regulatory violations, rendered their removal orders invalid, regardless of the type of order of each received.

### Category 1: Two parents whose records reflect that they requested a fear screening, but who did not receive a screening.

For two of the parents, both their declarations and the government's

evidentiary disclosures (the I-213 Form)[3] confirm that the parents raised a fear; they nonetheless did not receive a credible or reasonable fear interview. These two parents are D.J.M.C. and S.A.C. *See* Sealed Exhibit 1 at 50-82 (I-213 for D.J.M.C.), at 166-173 (I-213 for S.A.C.).

As this Court has recognized, by statute the government has the obligation to provide every person placed in expedited removal who claims a fear of persecution or torture with a credible fear interview. 8 U.S.C. § 1225(b)(1)(A); *M.M.M. v. Sessions*, 347 F. Supp. 3d 526, 533 (S.D. Cal. 2018) (describing statutorily-prescribed, nondiscretionary duty to provide credible fear screenings to noncitizens who express fear). Similarly, those parents who are placed in reinstatement of removal proceedings because they re-entered the United States after being previously ordered removed must be provided with the reasonable-fear process upon expressing a fear of removal. *See* 8 C.F.R. § 241.8(e).

Critically, both the statutes and the regulations place an affirmative and mandatory obligation upon *the government* to initiate the credible or reasonable fear screening process if the noncitizen expresses a fear of return. *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (establishing credible fear screening process); *see also* 8 C.F.R. § 253.3(b)(4) ("if an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return . . . the inspecting officer *shall not proceed further with removal* of the alien until the alien has been referred to an interview by an asylum officer") (emphasis added); 8 C.F.R. 241.8(e) ("If an alien [subject to reinstatement] expresses a fear of returning to the country designated in that order, the alien *shall be immediately referred to an asylum officer* for an interview to determine whether the alien has a reasonable fear of persecution or torture) (emphasis added). *Accord M.M.M.*, 347 F. Supp. 3d at 533 (finding that children of class member parents had

---

[3] The I-213 is the form that Customs and Border Patrol agents complete soon after initially apprehending an individual.

nondiscretionary and enforceable right to credible fear hearings under Section 1225(b)(1)(A)(ii)).

### Category 2: Twelve parents who requested a fear screening, but the government I-213 Form does not reflect the request.

Twelve of the parents have set out sworn declarations explaining that they claimed a fear of removal but did not receive a fear screening.[4] But the I-213 Form does not reflect that they claimed a fear. The government documents are incomplete and unreliable, and cannot rebut the Plaintiffs' declarations.

### a. The documentation provided by the government is unreliable and incomplete.

On August 7, the government provided documents related to the 21 deported parents. For most parents the government has provided two types of documents: the paperwork for their order of removal, and an I-213 Form.

There are clear indications that the government's disclosures do not include all the documents in the government's possession relevant to the parents. There are documents internally referenced in the disclosures that are not included.[5] Moreover, as a general matter, when an individual is referred for or receives a fear hearing, transcripts are produced, but these generally have not been provided.

The I-213's on their own are not a reliable indicator of whether a noncitizen expressed a fear of persecution.[6] These forms are completed by a single officer,

---

[4] The twelve parents are: A.D.G.; C.A.C.; C.P.E.; D.C.C.; D.J.M.; D.P.F.; D.X.C.; E.C.C.; L.R.M.; R.A.R.A.; S.T.S.; and S.X.C.

[5] Accompanying the I-213 will often be a document that is a record or transcript of an interview. For example, the government disclosures for D.J.M.C. include a transcript of the interview. For the vast majority of the deported parents, there is no transcript of the interview, although I-213s do refer to these documents. *See, e.g.* disclosure regarding C.A.C., Sealed Ex. 1 at 24, D.P.F., *id.* at 88, E.L.DH., *id.* at 130 (I-213s refer to an I-215 Record of a Sworn Statement, but no such form in the government's disclosures); *see also* S.A.C., *id.* at 172; S.X.C., *id.* at 184 (same for I-867 forms showing questions asked and answers regarding fear of return).

[6] For several parents, their I-213s do not even mention that they were separated from their children. *See, e.g.*, I-213s for: A.D.G., Sealed Ex. 1 at 3-6; B.L.S.P., *id.* at 15-18; S.X.C., *id.* at 183-184.

5

18cv0428

and not subject to review. The uniform assessment of I-213's used in the expedited removal and credible fear context — including by a study commissioned by Congress — is that they are replete with errors, particularly with regard to records of whether individuals stated a fear. *See* U.S. Comm'n on Int'l Religious Freedom, *Report on Asylum Seekers in Expedited Removal: Volume I: Findings & Recommendations* 4-5, 10 (2005) ("2005 USCIRF Study") at 53-55[7] (finding that in 15% of observed cases, when a noncitizen expressed a fear of return to an immigration officer during the inspections process, the officer failed to refer the individual to an asylum officer for a credible fear interview). Even when immigration officers do take statements from noncitizens, the statements are "often inaccurate and nearly always unverifiable." 2005 USCIRF Study at 53, 55, 74; *see also* U.S. Comm'n on Int'l Religious Freedom, *Barriers to Protection: The Treatment of Asylum Seekers in Expedited Removal* 2 (2016) ("2016 USCIRF Study") at 21[8]; Human Rights Watch, *You Don't Have Rights Here* 6 (2014) (finding that fewer than half of individuals interviewed who claimed a fear of return were referred for credible fear hearings).[9]

Even if the individual had not expressed a fear at the time the I-213 Form was completed, but later expressed a fear, he or she should have been given a fear screening, as the obligation to provide a fear interview extends to anytime an individual claims a fear of removal while in ICE custody. Indeed, the regulations expressly bar the immigration officer from "proceed[ing] further with removal" if the noncitizen expresses a fear. 8 C.F.R. § 253.3(b)(4). *See* Supplemental Govindaiah Declaration. Therefore, even *if* the I-213s are reliable as a snapshot of a specific moment, an individual may still have claimed a fear later. And here, all

---

[7] https://www.uscirf.gov/sites/default/files/resources/stories/pdf/asylum_seekers/Volume_I.pdf
[8] https://www.uscirf.gov/sites/default/files/Barriers%20To%20Protection.pdf
[9] https://www.hrw.org/report/2014/10/16/you-dont-have-rights-here/us-border-screening-and-returns-central-americans-risk

the parents have sworn they did express a fear.

Finally, and fundamentally, the I-213's do not reflect the coercion of separation, or any statements made to the parents by inspecting officers about how any claim for fear would result in their continued separation. This sort of coercion resulted in parents deciding to relinquish any claim for fear. *See, e.g.,* Declaration of D.X.C. ¶¶ 23, 24, Sealed Addendum 1 to Dkt. 418 at 77 (D.X.C. claimed a fear, was then told that he would be separated permanently if he claimed asylum, and then signed a document he could not read relinquishing his claim).

### b. Parents with specific language needs were not provided with needed interpretation.

Within this category of parents whose fear requests were not recorded on the I-213 Form, there is a subset of parents who spoke only an indigenous language and would therefore have had a particularly difficult time. At each stage of the process, regulations and due process provide that are entitled to interpretive assistance. 8 CFR § 235.3(b)(2)(ii); 8 C.F.R. § 208.30(d)(5). *Cf. Matter of Tomas*, 19 I. & N. Dec. 464, 465 (BIA 1987) ("The presence of a competent interpreter is important to the fundamental fairness of a hearing, if the alien cannot speak English fluently"); *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000) (failure to provide interpretation violates due process)

For example, parents submitted declarations attesting to the fact that, though they were indigenous language speakers, they were interviewed and provided documents to sign in either English or Spanish. *See, e.g.,* Declarations of D.J.M, Sealed Addendum 1, Dkt. 418, at 29, S.T.S., *Id.* at 142, S.X.C., *Id.* at 146. The I-213s for these parents are thus especially unreliable indicators of whether they had a fear of returning and expressed that fear to an officer.

### Category 3: Four parents who raised a fear of return, but withdrew their claims before their fear-screening procedures were complete.

It is counsel's understanding that four parents — E.A.S.M., E.L.D.H., E.F.A.R., and O.U.R.M. — initially claimed a credible or reasonable fear, but

withdrew their claims before the completion of their fear-screening procedures. The decision to withdraw claims before the completion of process was a product of the coercion of their separation.

The government's disclosures reflect that in two of these cases – that of E.L.D.H. and E.F.A.R. – the parent received a negative fear determination and then withdrew their claim rather than seek Immigration Judge review of that determination. That review is a key procedural right. In both credible and reasonable fear proceedings, applicants are entitled to both an initial interview *and* to Immigration Judge review of any denial of their claims. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. 208.30(g) (right to seek IJ review of a negative credible fear decision); *id.* 208.31(g) (right to IJ review of a negative reasonable fear decision).

Coercion played a role in the negative findings. For example, E.F.A.R.'s months of separation resulted in debilitating headaches, severe weight loss, depression, and suicidal ideations. He was unable to explain his story to the asylum officer, and decided not to seek review after an ICE official told him doing so would be pointless. E.F.A.R. Decl. ¶¶ 14-22, Sealed Addendum 1 to Dkt. 418 at 101-102. The role coercion and trauma played, and the need for IJ review to correct it, is confirmed by the fact that his wife passed a fear screening process on the basis of similar claims. *See* Sealed Exhibit 3 (positive credible fear results for E.F.A.R.'s wife). *See also* E.L.D.H. Decl. ¶¶ 5-6 (told that further pursuing asylum could result in detention for more than a year without his son, and decided he "couldn't take it anymore").

**Category 4: Three parents who were in proceedings before an Immigration Judge but relinquished their asylum claims.**

Two parents, B.L.S.P. and M.L.D.A., passed their fear screening but chose to withdraw their claims after being placed in full Section 240 removal proceedings, because of the coercion of their forced, and extended separation from their children. A third parent, J.A.A., was placed directly in Section 240 proceedings after being

8

separated from their child.[10]

The fact that a parent who had been separated from their child and had passed a credible fear screening would nonetheless relinquish their claim is a testament to the profoundly coercive nature of the separation policy. This is precisely what occurred with B.L.S.P.: she was separated in November of 2017, passed a credible fear interview in January of 2018, and spent five months detained and separated waiting for a hearing, before finally withdrawing her claim for relief on May 23, 2018. But for the government's unlawful separation of her from her child, she would have remained in proceedings. The coercive impact of separation, which is nowhere addressed or acknowledged in the government's evidentiary disclosures, permeated every step of the asylum process. *See* Application of B.L.S.P, Addendum 1, Dkt. 418 at 6-10. *See also* Declaration of M.L.D.A., Addendum 1, Dkt. 418 at 122 (describing the psychological trauma and epileptic seizures that accompanied extended separation from child and led to relinquishment of bona fide claim for protection).

**Question 3:**

Assuming there is a legal basis to order the return of these parents, is there any reason why any of these parents would be disqualified from that relief? For example, in their opposition to the motion, Defendants state that before the motion was filed, at least two of the 21 parents actually returned to the United States and were again removed. (See Opp'n to Mot. at 13 n.2, ECF No. 428 at 14.) The evidence submitted in support of this assertion reflects that one of these individuals was subject to a removal order that predated their removal from last year. (Opp'n to Mot., Ex. D, ECF No. 428-4 at 4.) The evidence also reflects that the other individual, who was again deported without his child despite being "identified as a member of a Separated Family Unit," "claimed no fear if returned to his native country of citizenship." (Id., ECF No. 428-4 at 6-7.) Plaintiffs did not address this evidence in their reply brief or at oral argument, but the Court requests Plaintiffs' position on whether and how this evidence affects these individuals' requests to return to the United States. The Court also discovered that parent L.R.M. pleaded guilty to felony re-entry after deportation in connection with his entry into the

---

[10] Besides the order of removal of the Immigration Judge deporting J.A.A., the government production does not provide records of that immigration proceeding.

United States last year. The Court requests the parties' positions on whether and how that affects L.R.M.'s eligibility for travel back to the United States.

**Answer:**

In Plaintiffs' view, there is no reason why these 3 parents should be disqualified from relief.

 a. The two parents (R.A.R.A. & M.L.D.A.) whom the government identified in Dkt. 428, as having returned to the United States to reunify with their children are not disqualified. In both of these cases, parents who were distraught at their separation attempted to return to the United States, without the aid of their individual attorneys.

R.A.R.A. returned to the United States with the goal of reunifying with his daughter. After being detained, and isolated, he attempted to claim asylum to officials who dismissed his requests. He was told to sign documents that he did not understand. He has thus not received a fair opportunity to seek asylum, and seeks to do so. *See* Declaration of R.A.R.A., Sealed Exhibit 4.

Although Plaintiffs maintain that M.L.D.A. has the ability to seek return as well, Plaintiffs are not seeking her return at this time because M.L.D.A. has not been in communication with her individual counsel in recent weeks. As set out in her declaration supporting return, M.L.D.A. was separated from her children after fleeing serious sexual violence in her home country. Her separation from her children resulted in her experiencing epileptic seizures while in detention, and deciding to withdraw her claim for relief. Declaration of M.L.D.A., Sealed Addendum 1, Dkt. 418 at 122. After her removal, M.L.D.A. attempted to travel back to the United States to reunify with her children, and it was during her repeat journey through Mexico that communication with individual counsel ended. Plaintiffs' counsel are extremely concerned about her mental and physical well-being. Given her history of trauma and her mental health, any statements she may have made upon her return and re-detention after her separation may have been involuntary or unknowing, particularly given the fact that she did not claim a fear,

despite having previously based a fear screening and relinquished her claim. Accordingly, Plaintiffs' counsel are attempting to locate M.L.D.A., but are not seeking her return or further relief until communication is re-established.

      b.     L.R.M.'s conviction for felony reentry does not disqualify him from seeking relief.  That conviction does not override L.R.M.'s right to seek relief from persecution and, at a minimum, withholding of removal.

Nothing in the asylum statute bars L.R.M. from seeking asylum based solely on his conviction for felony reentry.  Even if L.R.M.'s prior removal order was reinstated, he could still pursue withholding of removal.  *See* 8 C.F.R. § 241.8; *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006).

Moreover, as the Court has previously noted, a conviction for felony reentry does not justify a separation, nor does it remove a parent from the *Ms. L.* class.  *See* Memorandum on Motion to Enforce Preliminary Injunction, Dkt. 439 at 22 n.6 (collecting authorities, and citing July 16, 2018 Transcript at 53:13-18).  The Court is well within its equitable powers to enforce its injunction by ordering that the parent be allowed to travel to the United States to present his asylum claim.

## CONCLUSION

The Court should grant Plaintiffs' Motion.

Dated: August 14, 2019

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 2922080)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*samdur@aclu.org*

Respectfully Submitted,

*/s/Lee Gelernt*
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
dgalindo@aclu.org

*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt, Esq.
Dated: August 14, 2019

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Attorneys for Petitioner-Plaintiff
*Admitted Pro Hac Vice

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
bvakili@aclusandiego.org

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
samdur@aclu.org

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al., <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: August 14, 2018 <br><br> **SUPPLEMENTAL DECLARATION OF MANOJ GOVINDAIAH** |

1. I, Manoj Govindaiah, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

2. I am an attorney and the Director of Litigation at RAICES. Previously I served as RAICES Director of Family Detention Services for three years. The RAICES is the primary legal services provider at the Karnes Family Residential Center and provides legal services to the vast majority of detainees at Karnes Family Residential Center.

3. I have previously submitted several declarations in this case that provide my background and credentials.

4. In April 2019, the population at Karnes Family Residential Center shifted from families to adults.

5. In my experience, a family seeking asylum may request a credible fear interview from any officer, and any agency. When the Karnes Family Residential Center detained families, we frequently saw families who had not "triggered" credible fear interviews when they were in CBP custody, meaning they had either not been asked whether they had a fear of return, or they had not disclosed that they did. Families in this situation were transferred to ICE custody to await removal (based on their expedited removal orders). Often, upon arrival in ICE custody, families would then trigger credible fear interviews by expressing a fear of return to an officer at the Karnes County Residential Center.

6. This process is consistent with 8 U.S.C. § 1225(b)(1)(A), which refers to "immigration officer", rather than an officer of a particular agency.

1 | I declare under penalty of perjury that to the best of my knowledge the above
2 | facts are true and correct. Executed this 14th day of August, 2019, in Springfield,
3 | Illinois.

_____
Manoj Govindaiah