UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING


```
                                          )
MS. L., ET AL.,                           )
                                          )   CASE NO. 18CV0428-DMS
             PETITIONERS-PLAINTIFFS,      )
                                          )
VS.                                       )
                                          )
                                          )
                                          )
U.S. IMMIGRATION AND CUSTOMS              )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,              )   FRIDAY, AUGUST 16, 2019
                                          )    1:00 P.M. CALENDAR
             RESPONDENTS-DEFENDANTS.      )
------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE


REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

APPEARING TELEPHONICALLY:

FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                 ANAN BALAKRISHNAN
                                 ACLU IMMIGRANT RIGHTS PROJECT
                                 125 BROAD STREET 18TH FLOOR
                                 NEW YORK, NEW YORK 10004


FOR DEFENDANT:                   SCOTT STEWART, ESQ.
(TELEPHONICALLY)                 SARAH B. FABIAN, ESQ.
                                 U.S. DEPARTMENT OF JUSTICE
                                 OFFICE OF IMMIGRATION LITIGATION
                                 P.O. BOX 868
                                 BEN FRANKLIN STATION
                                 WASHINGTON, DC 20044


 ALSO APPEARING:

                                 ZACHARY BEST, ESQ.
                                 STEVEN HERZOG,ESQ.
                                 CATHERINE WEISS, ESQ.
                                 WILSON BARMEYER, ESQ.

```
 1   SAN DIEGO, CALIFORNIA – FRIDAY, AUGUST 16, 2019 – 1:05 P.M.
 2                           *   *   *
 3              THE CLERK:  NO. 16 ON CALENDAR, CASE NO. 18CV0428,
 4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR
 5   STATUS CONFERENCE.
 6              THE COURT:  GOOD AFTERNOON, COUNSEL.
 7              I HAVE AN INDICATION FROM MS. KLOSTERMAN OF THE
 8   FOLLOWING ATTORNEYS ON THE LINE.
 9              FOR MS. L., MR. GELERNT AND MR. BALAKRISHNAN; FOR
10   THE GOVERNMENT, SARAH FABIAN, SCOTT STEWART; FOR THE DORA
11   PLAINTIFFS, WILSON BARMEYER; FOR MMM, MR. ZACHARY BEST; FOR
12   MS. L. STEERING COMMITTEE, MR. STEVEN HERZOG; AND MS.
13   CATHERINE WEISS FOR SOME OF THE OBJECTORS FROM PRIOR
14   PROCEEDINGS.
15              I AM INFORMED THAT COMMANDER WHITE IS NOT ON THE
16   LINE.  IS THAT CORRECT, MR. STEWART?
17              MR. STEWART:  YES, YOUR HONOR.  WE DIDN'T HAVE THE
18   COMMANDER JOIN TODAY.  OUR THOUGHT WAS THAT THERE WAS NOT A
19   WHOLE LOT NEW FOR HIM TO REPORT.  AND THE AGENCIES ARE
20   CONTINUING TO WORK TO JUST TRY TO FINISH THE REMAINING
21   BATCHES.
22              IF YOUR HONOR WOULD LIKE TO SPEAK WITH COMMANDER
23   WHITE, WE CAN WORK TO HAVE HIM AVAILABLE AT THE NEXT STATUS
24   CONFERENCE.
25              THE COURT:  LET'S GO THROUGH THE STATUS REPORT.  AND
```

AUGUST 16, 2019

1    THEN WHEN WE GET TO THAT SECOND, THE ENLARGED CLASS, I HAVE A
2    FEW QUESTIONS.  AND THEN WE WILL SEE WHERE WE ARE WITH RESPECT
3    TO COMMANDER WHITE.
4              ON THE JOINT STATUS REPORT, I HAVE REVIEWED IT, AND
5    EVERYTHING DOES LOOK VERY GOOD AND PROMISING.
6              ON THE ORIGINAL CLASS, EVERYTHING IS IN ORDER.  I
7    DON'T HAVE ANY QUESTIONS THERE.
8              ON THE MMM CLASS, IT APPEARS EVERYTHING IS IN ORDER
9    AS WELL, WITH THE EXCEPTION OF THE DISCREPANCY IN THE
10   STATISTICS OF THE SETTLEMENT IMPLEMENTATION.
11             WHAT'S THE GOVERNMENT'S POSITION THERE?
12             **MR. STEWART:**  SURE, YOUR HONOR.
13             I THINK THAT ONE, I THINK THE AGENCIES HAVE TRIED
14   VERY HARD TO FIND OUT, YOU KNOW, WHAT THE REMAINING
15   DISCREPANCY IS ON THE 20 OR SO FORMS.
16             ICE'S VIEW IS THAT IF THE PLAINTIFFS WERE TO TELL US
17   IF THEY THINK THERE ARE PARTICULAR FORMS THAT WE ARE NOT
18   COUNTING, IF THEY THINK THAT PEOPLE HAVE NOT GOTTEN
19   PROCEDURES, WE COULD THEN GO MORE KIND OF TARGETED -- IN A
20   MORE TARGETED, EFFECTIVE WAY TO FIND OUT WHAT MIGHT BE GOING
21   ON, WHETHER THOSE FOLKS ALREADY GOT PROCEDURES, WHETHER THERE
22   IS A MISCOUNT, OR WHERE THE DISCREPANCY MIGHT BE.  OTHERWISE
23   AT THIS POINT THERE IS A RISK OF KIND OF TALKING PAST EACH
24   OTHER.
25             BUT IF MMM COUNSEL WERE TO LET US KNOW, LOOK, YOU

AUGUST 16, 2019

1    KNOW, THESE ARE THE HANDFUL OF FOLKS, OR WHATEVER, WHO WE
2    THINK MIGHT NOT BE COUNTED, THEN WE COULD CLOSE THE LOOP
3    THERE.
4              **THE COURT:**  MR. BEST, IS THIS SOMETHING THAT YOU
5    THINK YOU WILL BE ABLE TO WORK THROUGH?  DO YOU NEED ANY
6    ADDITIONAL INFORMATION AT THIS TIME?
7              **MR. BEST:**  HI, YOUR HONOR.  THIS IS MR. BEST.
8              I DO THINK THAT THIS IS SOMETHING THAT THE PARTIES
9    CAN CONTINUE TO WORK THROUGH.  I DON'T THINK THAT MR.
10   STEWART'S SPECIFIC PROPOSAL REALLY WORKS BECAUSE WE JUST DON'T
11   HAVE A WAY OF KNOWING WHICH FORMS ARE NOT ON THEIR RADAR FOR
12   WHATEVER REASON THAT MIGHT BE.  WE JUST DON'T HAVE A GOOD WAY
13   OF IDENTIFYING THAT WITHOUT HAVING THE LIST THAT THE
14   GOVERNMENT IS WORKING OFF OF AND COMPARING THAT TO OUR LIST.
15             WE ARE HAPPY TO LOOK AT THEIR LIST AND COMPARE IT TO
16   OURS AND IDENTIFY WHAT THE DELTA IS, AND WHICH FORMS MIGHT BE
17   MISSING.  AND WE HAVE COMMUNICATED THAT TO THE GOVERNMENT, BUT
18   THEY HAVEN'T SENT US OUR LIST TO THIS POINT.
19             WE SENT THEM OUR LIST QUITE A WHILE AGO FOR THEM SO
20   THAT THEY COULD DO THAT COMPARISON, AND I AM NOT AWARE OF
21   WHETHER THEY HAVE DONE THAT COMPARISON.
22             BUT THE BOTTOM LINE IS THAT WE ARE HAPPY TO DO THAT
23   COMPARISON, WE JUST NEED THE GOVERNMENT'S LIST TO BE ABLE TO
24   DO THAT.  AND WE ARE HAPPY TO CONTINUE TO TALK TO THE
25   GOVERNMENT ABOUT ARRANGING FOR THAT.


                         AUGUST 16, 2019

1      **THE COURT:**   OKAY.   SO WHY DON'T WE LEAVE THAT JUST

2   ON AN INFORMAL BASIS WITH THE PARTIES WORKING TOWARD THAT END,

3   AND HOPEFULLY WE CAN CLEAR UP THAT DISCREPANCY BY THE NEXT

4   STATUS REPORT.

5          RETURNING TO THE MS. L. CLASS, LET'S TALK ABOUT THE

6   DATA, OR THE PROCESSES, PROCEDURES AND TRACKING FOR

7   SEPARATION.   THAT LOOKS TO BE IN GOOD ORDER AS WELL.   THERE IS

8   INDICATION ON THE DATA REQUESTED THAT THE PARTIES HAVE

9   DISCUSSED AMENDING THE SCHEDULE SO THAT THE GOVERNMENT WILL

10  PRODUCE THESE UPDATED REPORTS ON A MONTHLY BASIS.   THAT SEEMS

11  LIKE A GOOD IDEA.

12         THE EXCHANGE AND MEET AND CONFER BETWEEN THE PARTIES

13  SET OUT ON PAGE 10 SEEMS PRODUCTIVE AND GOOD.

14         I WOULD SIMPLY ENCOURAGE THE PARTIES TO KEEP MOVING

15  SO THAT HOPEFULLY WE CAN HAVE SOME JOINT PROPOSAL AND

16  AGREEMENT SOON.

17         IS THERE ANYTHING SPECIFIC ON THAT AREA WITH RESPECT

18  TO PROCESSES, PROCEDURES FOR TRACKING?

19      **MR. GELERNT:**   YOUR HONOR, THIS IS MR. GELERNT.

20         WE ARE CONTINUING TO WORK WITH THE GOVERNMENT, AND

21  MS. WEISS IS INVOLVED IN THAT, ABOUT SHARING INFORMATION.   AND

22  SO WE WILL REPORT TO YOU ON THAT.

23         THE ONE THING I DID WANT TO NOTE IS, AS THE

24  GOVERNMENT KNOWS, WE WOULD LIKE THE ONGOING SEPARATIONS TO BE

25  REPORTED ON A WEEKLY BASIS.   SO I JUST WANTED TO FLAG THAT.


                    AUGUST 16, 2019

1    THE WAY IT IS PHRASED IN THEIR JSR MAKES IT SEEM AS IF WE HAVE

2    AGREED TO GET THEM ONLY ON A MONTHLY BASIS RATHER THAN AT THE

3    JSR TIME, AND I THINK OUR VIEW IS THAT A MONTHLY BASIS IS TOO

4    FAR APART AND THAT WE NEED IT ON A WEEKLY BASIS.

5            BUT I DON'T THINK THERE IS ANYTHING FOR YOU TO

6    RESOLVE AT THIS POINT, BECAUSE WE ARE STILL WORKING WITH THE

7    GOVERNMENT ON HOW QUICKLY THEY CAN GIVE US THOSE REPORTS,

8    WHETHER IT COULD BE DONE QUICKER THAN A MONTH, MONTHLY.  AND

9    SO WE WILL WORK TOWARD THAT TO WHERE THOSE NEGOTIATIONS END UP

10   ON THAT SPECIFIC POINT AS WELL AS ALL OF THE OTHER POINTS.

11           **THE COURT:**  OKAY.  I WILL DEFER ON THAT AS WELL.

12           ANYTHING ON THAT SUBJECT FROM MS. WEISS OR MR.

13   STEWART?

14           **MS. WEISS:**  NO, YOUR HONOR.

15           THIS IS CATHERINE WEISS.

16           THERE IS STILL CONSIDERABLE WORK TO DO ON THE

17   INFORMATION-SHARING FRONT, I THINK.

18           **THE COURT:**  OKAY.  ALL RIGHT .

19           **MR. STEWART:**  WE WILL CONTINUE WORKING ON IT, YOUR

20   HONOR.

21           **THE COURT:**  OKAY.  VERY GOOD.  THANK YOU, I

22   APPRECIATE THAT.

23           ON THE EXPANDED CLASS, THIS LOOKS ENCOURAGING AS

24   WELL.  THE REPORT INDICATES THAT FOUR OF SIX LISTS OR BATCHES

25   OR BUCKETS HAVE BEEN COMPLETED.  A TOTAL OF 966 CHILDREN IN


AUGUST 16, 2019

1  THE EXPANDED CLASS.

2        THE STEERING COMMITTEE HAS DONE YEOMAN'S WORK HERE

3  IN CONTACTING 85 PERCENT.  AND, AS I UNDERSTAND IT, 503

4  SPONSORS HAVE BEEN CONTACTED AND 101 PARENTS.

5        SO MAYBE, MR. HERZOG, I CAN INQUIRE OF YOU.  IF YOU

6  CAN JUST SET OUT FOR US THE WORK YOU HAVE DONE, WHAT IT

7  INVOLVES, AND WHO IS INVOLVED IN THIS EFFORT.

8        **MR. HERZOG:**  SURE.  THIS IS STEVE HERZOG.

9        WE HAVE BEEN -- WE HAVE HAD A GOOD NUMBER OF LAWYERS

10 FROM MY FIRM AS WELL AS, YOU KNOW, PEOPLE FROM OUR NGO

11 PARTNERS THAT ARE PART OF THE STEERING COMMITTEE MAKING CALLS

12 TO THE NUMBERS WE HAVE.

13        MOST OF THE NUMBERS ARE FOR SPONSORS AS OPPOSED TO

14 PARENTS.  AND WE ARE ENDEAVORING TO GET IN TOUCH WITH THE

15 SPONSORS, AND HOPEFULLY THROUGH THE SPONSORS GET IN TOUCH WITH

16 PARENTS.

17        IN MANY CASES -- IN SOME CASES, YOU KNOW, THE

18 SPONSORS DO HAVE INFORMATION AS TO HOW TO REACH THE PARENTS,

19 OR THE CHILDREN DO.  SO WE ARE TRYING TO GET IN TOUCH WITH

20 PARENTS BY WAY OF GETTING IN TOUCH WITH THE SPONSORS.

21        AND WE ARE HAVING, I WOULD SAY, SOME SUCCESS.  YOU

22 KNOW, IT IS NOT CLEAR YET TO ME.  WE HAVE MADE, YOU KNOW, I

23 THINK SEVERAL THOUSAND CALLS AT THIS POINT IN TIME.  WE HAVE

24 REACHED A GOOD NUMBER OF THE SPONSORS.  AND SOME OF THE

25 SPONSORS ARE ABLE TO HELP US GET IN TOUCH WITH PARENTS, SOME

AUGUST 16, 2019

1   ARE NOT.

2          AND AS WE ARE DOING THIS WORK WE ARE GETTING IN

3   TOUCH WITH MORE PARENTS, BUT I DON'T HAVE A REALLY CLEAR SENSE

4   YET OF ULTIMATELY HOW MANY PARENTS WE ARE GOING TO BE ABLE TO

5   REACH THIS WAY.  WE ARE GOING TO BE ABLE TO REACH A GOOD

6   NUMBER.  I AM NOT SURE YET IF IT IS GOING TO BE A MAJORITY OF

7   THE PARENTS, IT IS JUST NOT THAT CLEAR YET.

8          BUT WE ARE WORKING ON IT.  WE HAVE GOT A GOOD NUMBER

9   OF PEOPLE MAKING CALLS, AND WE ARE MAKING PROGRESS.  AND I

10  THINK WE ARE GOING TO HAVE A CLEARER SENSE AS THIS MOVES

11  FORWARD.

12          **THE COURT:**  THE 101 PARENTS THAT HAVE YOU CONTACTED,

13  ARE THOSE PARENTS IN COUNTRY OR HAVE THEY BEEN DEPORTED?

14          **MR. HERZOG:**  THERE IS A MIX.  I THINK THAT NUMBER IS

15  ACTUALLY UP A LITTLE BIT SINCE WE REPORTED.  I THINK IT MAY BE

16  AROUND 113 OR SO TODAY.  I THINK A MAJORITY OF THEM ARE

17  DEPORTED OR OUT OF COUNTRY, BUT NOT ALL OF THEM.

18          AND, YOU KNOW, WE ARE TRYING TO ASCERTAIN WHETHER

19  THOSE PARENTS ARE COMFORTABLE WITH THE SITUATION THEIR

20  CHILDREN ARE IN, OR WHETHER THEY WANT TO CHANGE.  AND WE ARE

21  WORKING THROUGH THOSE ISSUES WITH THE PARENTS.

22          I THINK A MAJORITY OF THEM -- AND THIS IS ALL VERY,

23  VERY PRELIMINARY BECAUSE, YOU KNOW, WE ARE STILL TALKING TO

24  PARENTS AND SPONSORS AND WE HAVE ONLY REACHED A SMALL

25  NUMBER -- NOT A SMALL NUMBER OF THE PARENTS, BUT THERE ARE


                        AUGUST 16, 2019

10

1   MANY, MANY PARENTS WE HAVE NOT YET SPOKEN TO.

2          BUT IT SEEMS AS IF OUR SENSE IS THAT, YOU KNOW, MOST

3   OF THE PARENTS, TO THE EXTENT THEY ARE OUT OF COUNTRY, ARE NOT

4   ASKING FOR THEIR CHILD TO BE RETURNED BACK TO THEIR COUNTRY OF

5   ORIGIN, ALTHOUGH I THINK THERE MAY BE A FEW CASES SO FAR WHERE

6   THAT IS THE CASE AND WE ARE WORKING THROUGH THOSE.

7          BUT THAT IS BASICALLY A VERY, VERY PRELIMINARY LOOK

8   AT WHAT WE ARE SEEING.

9          **THE COURT:**  YES.  SO I UNDERSTAND YOU TO BE SAYING

10  THAT MOST OF THE PARENTS, AT LEAST ON A PRELIMINARY BASIS, ARE

11  INTERESTED IN HAVING THEIR CHILDREN PURSUE ASYLUM CLAIMS HERE.

12         **MR. HERZOG:**  YES, I THINK THAT IS CORRECT, OR REMAIN

13  WITH THE SPONSOR.  IF THE PARENTS ARE OUT OF THE COUNTRY, YES.

14         **THE COURT:**  AND GIVEN THESE NUMBERS, THESE

15  PRELIMINARY NUMBERS OF 503 SPONSORS YOU HAVE REACHED, 101

16  PARENTS OUT OF THIS GROUP OF 833, IS IT YOUR -- IT SEEMS, AND

17  I AM ASKING, WHETHER IT IS YOUR PRELIMINARY ASSESSMENT THAT

18  MOST OF THESE PARENTS IN THIS ENLARGED CLASS OR EXPANDED CLASS

19  HAVE ALREADY BEEN DEPORTED.

20         **MR. HERZOG:**  YES.  THAT'S -- I THINK THAT IS

21  CORRECT.

22         **THE COURT:**  ALL RIGHT.  AND YOU ARE IN THE PROCESS

23  NOW, WITH THESE 101 OR 113 PARENTS THAT YOU HAVE REACHED, OF

24  GETTING THEIR DESIRES STATED, WHETHER THEY WANT TO BE

25  REPATRIATED OR NOT.  AND THEN STARTING ON THIS PROCESS OF


AUGUST 16, 2019

1   EITHER REUNIFYING OR KEEPING THE CHILDREN WITH THEIR CURRENT

2   SPONSORS.

3            **MR. HERZOG:**  YES, I THINK THAT IS CORRECT.

4            AGAIN, WITH RESPECT TO THE PARENTS WHO ARE OUT OF

5   THE COUNTRY THAT'S WHAT WE ARE LOOKING AT, WHETHER, YOU KNOW,

6   THEY WANT -- THEY WANT TO KEEP THE STATUS QUO, WHICH IS THAT

7   THE CHILD IS WITH A SPONSOR, OR WHETHER THEY -- YOU KNOW, THIS

8   IS THE OPTION THEY HAD, WHETHER THEY WANT THE CHILD RETURNED

9   TO THE COUNTRY OF ORIGIN.

10           **THE COURT:**  ALL RIGHT.  OKAY.  THANK YOU.

11           AND, MR. STEWART, ARE YOU ABLE TO INDICATE, OR DO

12   YOU HAVE THE INFORMATION AS TO WHEN, AS TO THE REMAINING TWO

13   BUCKETS OR GROUPS, WHEN THAT REVIEW WILL BE COMPLETED?

14           **MR. STEWART:**  YOUR HONOR, I AM HOPING THAT THOSE

15   LISTS WILL BE READY IN THE NEXT -- IN THE NEXT FEW WEEKS.  BUT

16   I KNOW THAT THE RELEVANT FOLKS ARE WORKING TO MAKE SURE THAT

17   THAT INFORMATION IS AS ACCURATE AS -- YOU KNOW, JUST MAKING

18   SURE OF THE ACCURACY OF THE INFORMATION, AND THEY ARE WORKING

19   ON IT.  I WILL CONTINUE FOLLOWING UP ON THAT.

20           **THE COURT:**  DO YOU KNOW WHAT STAGE THEY ARE IN?  AS

21   COMMANDER WHITE WAS DISCUSSING LAST TIME, THERE IS A REVIEW

22   FROM O.R.R.,  THEN IT GOES TO, I THINK, ICE, AND THEN TO CBP,

23   AND THEN BACK TO O.R.R.  DO YOU KNOW WHERE THEY ARE IN THAT

24   PROCESS?

25           **MR. STEWART:**  IT IS SOMEWHERE WITH DHS, YOUR HONOR.


                        AUGUST 16, 2019

1    I AM NOT -- I AM NOT POSITIVE AS TO WHETHER IT IS IN ICE OR

2    CBP, IT IS CURRENTLY IN ONE RATHER THAN THE -- THAN THE OTHER

3    AT THIS STAGE.

4              **THE COURT:**  DO YOU KNOW, IT APPEARS THEY ARE STILL

5    AHEAD OF SCHEDULE, BUT DO YOU HAVE CONCRETE INFORMATION?

6              **MR. STEWART:**  I THINK THAT IS CORRECT, YOUR HONOR.

7    I DON'T THINK THERE IS, AT THIS POINT, A CONCERN THAT -- OF

8    MISSING -- OF MISSING THE SCHEDULE.  SO I THINK WE ARE STILL

9    THERE.

10             AND I AM SORRY THAT I DON'T HAVE THE SORT OF

11   COMMANDER WHITE -- ONLY HE CAN DO -- CAN PROVIDE THE DATES

12   AND HEAD NUMBERS, BUT I BELIEVE THAT IS CORRECT, YOUR HONOR.

13             **THE COURT:**  OKAY.

14             **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT.

15             I WAS WONDERING IF I COULD JUST ASK ONE CLARIFYING

16   QUESTION.

17             **THE COURT:**  YES.

18             **MR. GELERNT:**  ORIGINALLY THERE WERE SIX LISTS, AS I

19   UNDERSTOOD IT, AND THEN COMMANDER WHITE SAID THEY HAD BEEN

20   BROKEN OUT A LITTLE MORE INTO 11 LISTS.

21             I WASN'T SURE WHETHER THERE ARE NOW ONLY TWO

22   REMAINING LISTS THAT WE ARE SUPPOSED TO RECEIVE, OR SEVEN

23   REMAINING LISTS.  AND WHICH TWO MR. STEWART WAS TALKING ABOUT

24   WHEN HE WAS TALKING ABOUT, ALL OF THE REMAINING SEVEN LISTS OR

25   JUST THE NEXT TWO THAT WOULD BE PROVIDED IN THE NEXT FEW

AUGUST 16, 2019

13

1    WEEKS?

2              **THE COURT:** YES.  GOOD QUESTION.  YES.

3              **MR. STEWART:**  I DO APPRECIATE THE QUESTION.

4         MY UNDERSTANDING IS THAT THERE ARE ONLY TWO

5    REMAINING LISTS.  MAYBE IT IS JUST A PASSAGE OF TIME SINCE THE

6    LAST STATUS CONFERENCE, I CAN'T -- I CAN'T PIN DOWN EXACTLY

7    THE PROVENANCE OF THE 11 OR THE LARGER NUMBER.  BUT MY -- THE

8    LATEST INFORMATION I HAVE IS THAT THERE ARE TWO REMAINING

9    LISTS.

10        I COULD PROPOSE, YOUR HONOR, IF I HAVE THAT

11   UNDERSTANDING INCORRECT I WILL LET MR. GELERNT KNOW.  BUT MY

12   UNDERSTANDING IS THAT WE ARE CLOSE AND IT IS THOSE TWO.

13             **THE COURT:**  I THINK WHAT I WILL DO -- AT THE NEXT

14   STATUS I WOULD APPRECIATE HAVING COMMANDER WHITE ON THE LINE.

15        I THINK I AM GOING TO DIRECT COMMANDER WHITE TO FILE

16   A DECLARATION, WITHIN A WEEK OF TODAY, JUST SETTING OUT THE

17   TIME ESTIMATE OF THESE, THE LAST LISTS.  I AM ASSUMING THE TWO

18   LISTS INCLUDES EVERYONE, THAT WOULD BE THE FINAL COUNT, AND

19   THE TIME ESTIMATE AS TO WHEN THIS WORK WILL BE DONE, SO THAT

20   WE HAVE SOME STATUS SOONER RATHER THAN LATER SO THAT WHEN WE

21   MEET AGAIN IN A MONTH OR SO I AM HOPING THAT THIS ACCOUNTING

22   WILL BE DONE, OR VERY CLOSE TO DONE.

23        AND SO I WILL, AT THE CONCLUSION OF TODAY, I WILL

24   ISSUE AN ORDER JUST SETTING OUT THE SPECIFIC TYPE OF

25   INFORMATION I WOULD LIKE COMMANDER WHITE TO REPORT ON.


                         AUGUST 16, 2019

14

 1         WITH THAT, IS THERE ANYTHING ELSE AS FAR AS THE

 2   STATUS ON THE EXPANDED CLASS?

 3         **MR. STEWART:**  YOUR HONOR, CAN I ASK ONE THING ON

 4   THAT?  IF YOUR HONOR DOES WANT THAT WITHIN ONE WEEK WE CAN DO

 5   THAT.  I AM JUST A LITTLE CONCERNED ABOUT PUTTING COMMANDER

 6   WHITE SOMEWHAT ON THE HOOK DECLARATION WISE.  I THINK PART OF

 7   THE REASON WE DIDN'T THINK WE NEEDED TO HAVE HIM IN HERE TODAY

 8   IS I THINK HE MOSTLY COMPLETED HIS TASKS.

 9         IS IT POSSIBLE THAT WE COULD REPORT BACK TO THE

10   PLAINTIFFS A LITTLE LATER THIS MONTH.  AND, YOU KNOW, IF THERE

11   IS CONCERN THAT WE ARE NOT GOING TO, YOU KNOW, HAVE THIS DONE

12   BY THE NEXT STATUS CONFERENCE WE COULD -- WE COULD KIND OF

13   BRING THE COURT UP TO DATE THEN.

14         I DON'T WANT TO KEEP THE COURT KIND OF GUESSING ON

15   ANYTHING, BUT I DO THINK THAT THINGS ARE ON A DECENT TRACK

16   TIMING WISE.

17         **THE COURT:**  I UNDERSTAND.  I DON'T MEAN TO PUT

18   COMMANDER WHITE ON THE HOOK.  IT MAY BE THAT SOME OF THIS IS

19   NOW BEYOND HIS CONTROL AND THAT IT MAY BE THAT O.R.R. AND HHS

20   HAS DONE WHAT IT NEEDS TO DO AND IS WAITING FOR DHS TO RETURN.

21         LET ME THINK ON THAT.  I UNDERSTAND THE CONCERNS YOU

22   HAVE.  I WANTED MORE JUST KIND OF A STATUS AND COMMANDER WHITE

23   TO FILL US ALL IN.  AND IT COULD BE SIMPLY A NARRATIVE REPORT,

24   A SHORT NARRATIVE REPORT OF HOW THINGS WERE LOOKING AND WHAT

25   HE EXPECTS IN THE FUTURE.


                      AUGUST 16, 2019

1          SO LET ME RESERVE ON THAT.  AND I WON'T ISSUE ANY

2   ORDERS THAT ARE REQUIRING PRECISION OR ANYTHING OF THAT NATURE

3   OF COMMANDER WHITE.  I DO UNDERSTAND THE NEED FOR FLEXIBILITY.

4          **MR. STEWART:**  I APPRECIATE THAT, YOUR HONOR.  THANK

5   YOU.  WE WILL TRY TO -- UNDERSTANDING THE DESIRE FOR

6   COMPLETION THERE, WE WILL PROCEED.

7          **THE COURT:**  OKAY.  THANK YOU.

8          ANYTHING ELSE ON THE JOINT STATUS REPORT?  WE HAVE A

9   COUPLE OF PENDING MOTIONS, AND I WANTED TO SPEND A LITTLE TIME

10  ON THOSE.

11         WHY DON'T WE, THEN, MOVE TO THE PENDING MOTION

12  RELATING TO ONGOING SEPARATIONS, THE MOTION TO ENFORCE THE

13  PRELIMINARY INJUNCTION.  WE HAVE AN OPPOSITION DUE AUGUST 30,

14  REPLY DUE SEPTEMBER 9.

15         I INDICATED IN THE LAST ORDER THAT WE MAY HAVE SOME

16  PRELIMINARY DISCUSSIONS HERE, AND SO I WOULD -- I DO HAVE A

17  FEW QUESTIONS.  AND MAYBE THIS WILL HELP INFORM THE BRIEFING

18  THAT WILL COME ABOUT IN THE NEAR FUTURE.

19         ON THESE ONGOING SEPARATIONS, WE HAVE DISCUSSED THE

20  REALITY OF THE BORDER, THE NEED FOR THE GOVERNMENT TO HAVE

21  DISCRETION TO FULFILL ITS DISCRETIONARY FUNCTIONS IN

22  IMMIGRATION AND CUSTOMS ENFORCEMENT, POLICING THE BORDERS.

23  ALL OF THE LAW ENFORCEMENT CONCERNS THAT COME INTO PLAY WITH

24  RESPECT TO SEX TRAFFICKING, HUMAN TRAFFICKING, AND OTHERWISE.

25  AND THAT WE HAVE DISCUSSED THE GOVERNMENT'S DISCRETION TO

AUGUST 16, 2019

16

1    DETAIN, PAROLE, AND A WIDE VARIETY OF POWERS AND DISCRETION IT

2    HAS IN FULFILLING ITS EXECUTIVE BRANCH FUNCTIONS ON THE

3    BORDER.

4           WE HAVE ALSO MADE CLEAR IN THIS CASE, IN THE COURT'S

5    PRIOR RULINGS, THAT THE BASIS FOR THE PRELIMINARY INJUNCTION

6    PROHIBITING FAMILY SEPARATION UNDER CERTAIN CIRCUMSTANCES AND

7    ORDERING REUNIFICATION WAS PREMISED ON A FIFTH AMENDMENT DUE

8    PROCESS RIGHT TO FAMILY INTEGRITY THAT APPLIES TO ALL

9    INDIVIDUALS PRESENT ON U.S. SOIL, WHETHER PRESENT LEGALLY OR

10   NOT.

11          AND SO GIVEN THE UNIQUE CIRCUMSTANCES OF THE CASE

12   AND THESE KINDS OF PARAMETERS, THE GOVERNMENT'S ENFORCEMENT

13   OBLIGATIONS ON THE BORDER JUXTAPOSED TO FIFTH AMENDMENT DUE

14   PROCESS RIGHTS, THE INITIAL INQUIRY I HAD OF THE GOVERNMENT

15   IS:  IN VIEW OF A FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO

16   FAMILY INTEGRITY, WHEN IT COMES TO THE GOVERNMENT'S

17   DETERMINATION TO SEPARATE FAMILIES BASED ON CONCERNS OF

18   PARENTAGE, FITNESS, OR DANGER, WOULDN'T OBJECTIVE STANDARDS

19   NEED TO APPLY AS OPPOSED TO SUBJECTIVE OR AD HOC

20   DETERMINATIONS?

21          **MR. STEWART:**  I THINK, YOUR HONOR, THAT IT IS -- WE

22   WOULD SAY, I THINK OBJECTIVE STANDARDS ARE APPROPRIATE

23   STANDARDS.  THEY DO INVOLVE CERTAIN MEASURES, THEY REFLECT

24   MEASURES OF JUDGMENT ABOUT, FOR EXAMPLE, WHO CAN BE DETAINED,

25   WHO CAN BE DETAINED SAFELY.


                        AUGUST 16, 2019

1          SO THAT THERE IS AN OBJECTIVITY STANDARD, BUT THEY
2    ARE UNDERLAID AND BASED ON AN OVERARCHING EXERCISE OF
3    DISCRETION AND THE KIND OF LAW ENFORCEMENT KNOWLEDGE, ACUMEN,
4    EXPERTISE, EVALUATION OF THE RELEVANT FACTORS THAT IS NOT ONE
5    TO BE SECOND-GUESSED IN THE WAY THAT I GUESS CERTAIN OBJECTIVE
6    INQUIRIES CAN KIND OF BE TAKEN ON DE NOVO BY DIFFERENT FOLKS.
7          BUT THAT'S WHAT I SAY THERE, YOUR HONOR.  SO I WANT
8    TO BE CAREFUL THAT I -- WE DO THINK THERE IS AN OBJECTIVITY
9    THERE, BUT THERE IS A LOT OF KEY KIND OF EXPERT LAW
10   ENFORCEMENT DISCRETIONARY AUTHORITY LACED DETERMINATIONS.
11        **THE COURT:**  WITH RESPECT TO OBJECTIVE STANDARDS, ON
12   THE ISSUE, FOR EXAMPLE, OF PARENTAGE, THAT ISSUE IS AN
13   IMPORTANT ONE FROM THE GOVERNMENT'S PERSPECTIVE BECAUSE IT, OF
14   COURSE, HAS TO CONCERN ITSELF WITH THE SAFETY OF THE CHILDREN
15   AND ENSURE THAT THE PERSON, THE ADULT WITH THE MINOR, IS IN
16   FACT A PARENT.  THE GOVERNMENT HAS TO BE ON THE WATCH FOR SEX
17   TRAFFICKING AND HUMAN TRAFFICKING.
18        TO THE EXTENT THAT PARENTAGE CANNOT BE READILY
19   DETERMINED AND THE GOVERNMENT CANNOT READILY SATISFY ITSELF ON
20   THE ISSUE OF PARENTAGE, WOULDN'T THE EASY ANSWER BE TO PROVIDE
21   DNA SWAB TESTING TO ENSURE, FROM A SCIENTIFIC STANDPOINT, THAT
22   THIS IS OR IS NOT THE PARENT.  AND THAT WOULD BE BOTH
23   OBJECTIVE, CLINICAL, QUICK, RELATIVELY INEXPENSIVE, AND
24   ADDRESS THE GOVERNMENT'S IMPORTANT CONCERNS ABOUT SEX
25   TRAFFICKING, HUMAN TRAFFICKING, OR OTHERWISE.


                        AUGUST 16, 2019

1     **MR. STEWART:** MY UNDERSTANDING, YOUR HONOR, IS THAT

2  THAT IS SOMETHING THAT THE GOVERNMENT DOES USE IN SOME

3  CIRCUMSTANCES.

4     I AM NOT SURE THAT IT ALWAYS ENDS UP BEING THE MOST

5  EXPEDITIOUS OPTION AVAILABLE.  BUT THAT IS SOMETHING I --

6  THAT'S SOMETHING I WOULD WANT TO THINK ABOUT AND TRY TO DRILL

7  DOWN ON IN OUR RESPONSE.

8     **THE COURT:** I THINK WHAT WOULD BE HELPFUL IN THE

9  GOVERNMENT'S RESPONSE IS, IT DOES SEEM THAT ON THE ISSUE OF

10 FAMILY SEPARATION, IN ORDER TO SEPARATE A PARENT FROM A CHILD,

11 WHICH AGAIN ASSUMES A CONSTITUTIONAL RIGHT AND A SEPARATION OF

12 A MOST FUNDAMENTAL NATURE, THAT BEFORE THE GOVERNMENT DOES

13 THAT IT WOULD SEEM REASONABLE, AND OBJECTIVELY SO, FOR IT TO

14 INVEST IN DNA TESTING; PARTICULARLY WHEN IT IS RELATIVELY

15 QUICK AND INEXPENSIVE AND ASSURES BOTH SIDES THAT THIS ISSUE

16 OF PARENTAGE IS RESOLVED IN A WAY THAT PROTECTS BOTH SIDES'

17 INTERESTS.

18     SO I WOULD BE INTERESTED IN THAT.  IT DOES SEEM TO

19 ME THAT AS WE GO FORWARD AS FAR AS SETTING PROTOCOLS AND

20 ADDRESSING THE SPECIFIC MOTION, THAT INSTANCES OF SEPARATING

21 FAMILIES FIRST, AND THEN AFTER A LOT OF QUARRELING, WITH

22 LAWYERS INVOLVED, A DNA TEST IS DONE, PARENTAGE IS CONFIRMED,

23 AND THEN FAMILIES ARE REUNIFIED, THAT PROCESS MAY BE

24 BACKWARDS.  AND IT MAY BE ADDRESSED FAIRLY QUICKLY ON THE

25 FRONT END THROUGH DNA TYPE TESTING.


AUGUST 16, 2019

19

```
 1              SO THAT IS ONE AREA THAT I THINK COULD BE HELPFUL
 2    WITH FURTHER BRIEFING, AND WE CAN ADDRESS IT FINALLY WHEN WE
 3    HAVE OUR FOLLOWUP ARGUMENT.
 4              SIMILARLY, ON CRIMINAL HISTORY.  THE PLAINTIFFS MAKE
 5    THE ARGUMENT THAT THE GOVERNMENT IS UNFAIRLY SIMPLY USING A
 6    LABEL, A CONVICTION, AND ARGUING THAT SOME OF THESE
 7    CONVICTIONS ARE MISDEMEANORS, SOME OF THEM RELATE TO DUI, OR
 8    COULD BE A THEFT, THINGS OF THAT NATURE.
 9              PLAINTIFFS MAKE THE ARGUMENT THIS HAS NOTHING TO DO
10    WITH FITNESS OR DANGER.  AND THAT IF WE HAVE A FUNDAMENTAL
11    RIGHT TO THIS RELATIONSHIP IT SHOULD NOT BE INTERRUPTED ABSENT
12    SOME EVIDENCE-BASED DETERMINATION OF RISK.  THAT, IN OTHER
13    WORDS, THE GOVERNMENT OUGHT TO BE LOOKING BEHIND MOST OF THESE
14    CONVICTIONS, AND ON AN EVIDENCE-BASED OBJECTIVE MANNER MAKING
15    RISK ASSESSMENT.
16              ARE YOU PREPARED TO SPEAK TO THAT, MR. STEWART, OR
17    DO YOU WANT TO ADDRESS THAT IN YOUR OPPOSITION?
18         MR. STEWART:  I THINK I PROBABLY MOST FULLY WANT TO
19    ADDRESS THAT IN THE OPPOSITION, YOUR HONOR.  I THINK, AS YOUR
20    HONOR NOTES, THERE ARE A NUMBER OF POINTS THAT THE PLAINTIFFS
21    RAISED, SOME -- RAISED SOME FACTUALLY INTENSIVE TYPE ISSUES.
22    AND I JUST -- I WANT TO MAKE SURE, ESPECIALLY ON A MATTER OF
23    THIS IMPORTANCE, THAT I DRILL DOWN.  SO, IF POSSIBLE, I WOULD
24    LIKE TO RESERVE UNTIL THEN.
25         THE COURT:  ALL RIGHT.
```

                         AUGUST 16, 2019

1           AND SIMILARLY WITH MENTAL HEALTH, LABELS CAN BE
2    APPLIED.  AND I THINK, AS WE KNOW WITH MENTAL HEALTH, I THINK
3    THE SCIENCE SHOWS THAT THE VAST MAJORITY OF PEOPLE WITH MENTAL
4    HEALTH ARE NOT -- MENTAL HEALTH ILLNESS ARE NOT DANGEROUS AND
5    MAY NOT PRESENT A RISK TO THEMSELVES OR OTHERS.
6           AND PLAINTIFFS MAKE THE ARGUMENT THAT THAT IS WHY
7    THERE NEEDS TO BE AN EVIDENCE-BASED DETERMINATION, TO LOOK
8    BEYOND THE LABEL AND DETERMINE WHETHER THE SPECIFIC
9    INDIVIDUAL, THE PARENT, IN LIGHT OF HIS OR HER MENTAL ILLNESS,
10   PRESENTS A DANGER TO HIMSELF OR OTHERS; AS OPPOSED TO FIXING A
11   LABEL AND THEN SEPARATING BASED ON THE LABEL WITHOUT ANY
12   OBJECTIVE INDICIA OF UNFITNESS OR DANGER.
13          I THINK THOSE ARE AREAS TO EXPLORE AND ADDRESS IN
14   THE BRIEFING.
15          ON CRIMINAL HISTORY, ONE FINAL OBSERVATION HERE.
16          IT DOES SEEM TO ME THAT CERTAIN CONVICTIONS, IF YOU
17   JUST LOOK TO THE LEAST ADJUDICATED ELEMENT, ARE SUFFICIENT TO
18   SEPARATE.  YOU KNOW, AN OBVIOUS EXAMPLE MIGHT BE A FELONY LEWD
19   AND LASCIVIOUS CONDUCT, A CALIFORNIA PENAL CODE SECTION 288,
20   FOR EXAMPLE.  THE CONVICTION STANDING ALONE, ASSUMING RECENCY,
21   THAT IT IS NOT TOO REMOTE, THAT KIND OF SEPARATION, BASED ON
22   THAT CHARGE, BASED ON THOSE ELEMENTS, I THINK ON AN OBJECTIVE
23   STANDARD MAKES SENSE, AND NO ONE WOULD QUARREL WITH THAT.
24          BUT THEN AS WE LOOK AT CRIMES THAT ARE NOT OF THAT
25   ILK AND MANY -- OR MAY INVOLVE MISDEMEANOR CONDUCT, THEN THE


                         AUGUST 16, 2019

1    QUESTION IS WHETHER LABELING IS APPROPRIATE OR WHETHER THERE

2    SHOULD BE SOME EVIDENCE-BASED DETERMINATION.

3            I WOULD ALSO BE INTERESTED IN GETTING MORE

4    INFORMATION FROM THE GOVERNMENT AS TO WHETHER THE GOVERNMENT

5    HAS A CHECKLIST OR A PROTOCOL THAT IT USES.

6            MY UNDERSTANDING WAS THAT ICE HAD SOMETHING LIKE

7    THAT.  BEFORE THE MS. L. LAWSUIT WAS FILED, ICE WOULD BE

8    SEPARATING FAMILIES BASED ON LACK OF PARENTAGE, FITNESS OR

9    DANGER CONCERNS.

10           TO THE EXTENT THERE ARE PROTOCOLS OR STANDARDS USED

11   BY ICE OR CBP, I WOULD LIKE TO LEARN ABOUT THAT.  AND I WOULD

12   INVITE THE GOVERNMENT TO PRODUCE IT, IF IT EXISTS.  IF THERE

13   IS SOME CONCERN ABOUT PRODUCING IT, THEN TO PRODUCE IT

14   INITIALLY EX PARTE UNDER SEAL.

15           SIMILARLY, IF THERE ARE STANDARDS FROM THE FAMILY

16   RESIDENTIAL CENTERS THAT THEY USE IN DETERMINING WHETHER TO

17   PLACE A FAMILY UNIT IN SUCH A CENTER, THOSE KINDS OF STANDARDS

18   WOULD BE, I THINK, HELPFUL TO DETERMINE WHAT THE GOVERNMENT

19   LOOKS TO, WHAT TYPE OF CRITERIA, OBJECTIVE CRITERIA, THEY ARE

20   USING TO MAKE THESE DETERMINATIONS.

21           FROM THE PLAINTIFFS IT WOULD BE HELPFUL TO LEARN

22   WHAT STANDARDS -- AND I THINK YOU SPOKE TO THIS SOMEWHAT, MR.

23   GELERNT, IN THE DECLARATIONS FROM MR. GUGGENHEIM AND OTHERS,

24   BUT TO LEARN, FOR EXAMPLE, THE STATE CPS, OR CHILD PROTECTIVE

25   SERVICES, WHAT ARE THEIR STANDARDS, WHAT DO THEY USE BEFORE --


                       AUGUST 16, 2019

22

1   WITH A U.S. CITIZEN -- TAKING A CHILD FROM A PARENT.  WHAT ARE

2   THEIR OBJECTIVE CRITERIA.  HOW DO THEY DRILL DOWN AND MAKE

3   THESE EVIDENCE-BASED DETERMINATIONS OF RISK WHEN IT INVOLVES

4   MENTAL HEALTH OR CRIMINAL HISTORY.  WHAT OBJECTIVE CRITERIA

5   ARE THEY LOOKING TO, ULTIMATELY, TO MAKE THIS IMPORTANT

6   DECISION OF SEPARATION.

7           THAT KIND OF INFORMATION WOULD BE HELPFUL.  AND, OF

8   COURSE, ALL OF THAT INFORMATION HAS TO BE EVALUATED IN THE

9   UNIQUE CONTEXT OF THE BORDER AND OF THIS CASE.

10          WITH REGARD TO THESE STANDARDS, MR. STEWART, DO YOU

11  KNOW WHETHER THE GOVERNMENT HAS THEM?  IN OTHER WORDS, DOES

12  ICE HAVE A CHECKLIST OR A PROTOCOL, OR CBP, OR -- I THINK

13  THERE WAS REFERENCE IN THE BRIEFING THAT FRC DOES, AND IF IT

14  DOES DO YOU HAVE ANY OBJECTION TO PRODUCING IT?

15          **MR. STEWART:**  LET ME -- THERE ARE STANDARDS FOR

16  FRC'S, YOUR HONOR.  LET ME JUST CHECK ON THOSE TO SEE -- TO

17  SEE IF THOSE CAN BE PRODUCED.  BUT MY UNDERSTANDING IS THAT

18  THERE ARE KIND OF THOSE SORTS OF STANDARDS FOR FRC'S.

19          I JUST WANT TO BE CAREFUL ABOUT THE LAW ENFORCEMENT

20  SENSITIVE ASPECT IF ANYTHING IS THERE.  BUT I WILL -- ALONG

21  WITH THE OTHER ISSUES THAT YOUR HONOR HAS RAISED IN THIS

22  RESPECT, WE CAN GO BACK AND CHECK ON THESE THINGS.

23          **THE COURT:**  ALL RIGHT.  SO IF YOU WOULD CHECK WITH

24  THE VARIOUS AGENCIES, ICE, CBP, MAYBE O.R.R. HAS GOT THIS KIND

25  OF THING TOO, OR HHS IN SOME CAPACITY, AND FRC.  AND THEN MAKE

AUGUST 16, 2019

1    A DETERMINATION OF WHETHER YOU WOULD PRODUCE TO ALL, OR

2    PRODUCE TO THE COURT UNDER SEAL.  I WOULD APPRECIATE THAT.

3              **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT.

4              WE WOULD -- I THINK WHETHER THERE ARE DIRECTIVES TO

5    THE FIELD ABOUT THESE ISSUES IS, WE BELIEVE, VERY CRITICAL.

6    SO, RESPECTFULLY, WE WOULD STRONGLY OPPOSE EX PARTE.  THAT IF

7    IT HAS TO BE PRODUCED TO US UNDER A PROTECTIVE ORDER SO BE IT.

8    BUT I THINK THAT IT IS SOMETHING THAT WE REALLY NEED TO SEE.

9    AND IF THERE ARE VERY SMALL PORTIONS THAT FOR SOME REASON THE

10   GOVERNMENT THINKS ARE PARTICULARLY SENSITIVE, YOU KNOW, MAYBE

11   THOSE CAN BE REDACTED.  BUT I THINK IF THERE ARE ACTUAL

12   DIRECTIVES GOING OUT TO THE FIELD IT WOULD BE IMPORTANT FOR US

13   TO SEE THEM.  OTHERWISE I THINK WE ARE AT A REAL DISADVANTAGE

14   IN TRYING TO RESPOND TO THE GOVERNMENT.

15             BUT WE CAN WAIT TO SEE WHAT MR. STEWART IS ABLE TO

16   FIND OUT AND MAYBE TAKE THAT ISSUE UP IF THE GOVERNMENT

17   PROPOSES EX PARTE.

18             **THE COURT:**  YES.  OKAY.  SO I WILL RESERVE ON THAT.

19             I GUESS THE OTHER PROPOSAL OR QUESTION WOULD BE

20   EXPERTS SUGGESTING TO THE COURT WHAT STANDARDS OR PROTOCOLS

21   OUGHT TO APPLY IN THE CONTEXT OF THIS CASE.

22             AND WHAT I WAS CONSIDERING, AND I WOULD INVITE THE

23   PARTIES' RESPONSE, IS PERHAPS HAVING THE PLAINTIFFS' EXPERTS

24   PROVIDE THEIR INSIGHT TO THE COURT THROUGH A SUBMISSION AS TO

25   WHAT APPROPRIATE STANDARDS OUGHT TO APPLY IN THIS CONTEXT, AND

AUGUST 16, 2019

1    THEN HAVE THE GOVERNMENT DO SOMETHING SIMILAR THROUGH

2    COMMANDER WHITE OR SOME OTHER QUALIFIED INDIVIDUAL, TO MAKE

3    ANY PROPOSALS.  I DON'T KNOW IF THAT'S NECESSARY.  IT MAY NOT

4    BE.

5         BUT, MR. GELERNT, I WILL START WITH YOU.  WHAT ARE

6    YOUR THOUGHTS.

7         **MR. GELERNT:**  YOUR HONOR, WE ARE HAPPY TO DO THAT.

8    I THINK A COUPLE OF OUR EXPERTS WHO WORK IN THE CORRECTIONAL

9    FIELD, AND ONE OF WHOM HAS ALSO WORKED ON THE IMMIGRATION SIDE

10   FOR THE FEDERAL GOVERNMENT, BOTH OF THEIR DECLARATIONS AT THE

11   END DO SUGGEST THAT THEY WOULD BE PLEASED TO PROVIDE THE COURT

12   WITH ANYTHING THAT MIGHT BE HELPFUL, INCLUDING WHAT THEY VIEW

13   AS A CORRECT, OBJECTIVE RISK ASSESSMENT.

14        SO IF THE COURT THINKS THAT'S HELPFUL WE CAN

15   CERTAINLY PROVIDE THAT.  I THINK THEY DO LAY OUT SOME

16   STANDARDS IN THEIR DECLARATION AS TO A NUMBER OF OUR OTHER

17   DECLARATIONS ABOUT THE STANDARDS THAT CHILD WELFARE AGENCIES

18   USE IN MAKING THESE ASSESSMENTS.  HOW THEY GO ABOUT MENTAL

19   HEALTH, UNFITNESS, AND DANGEROUSNESS, CRIMINAL HISTORY.

20        BUT I THINK IF THE COURT FEELS LIKE IT WOULD LIKE

21   SOMETHING MORE FORMAL AND SORT OF HERE IS EXACTLY HOW WE WOULD

22   SET UP A SYSTEM, WE ARE HAPPY TO PUT THAT IN.

23        I DON'T KNOW WHETHER THE COURT WANTS TO FIRST LOOK

24   AT WHAT WE SUBMITTED AND THEN MAKE A DECISION, OR JUST WANT US

25   TO BEGIN HAVING OUR EXPERTS CREATE A SUBMISSION.  EITHER ONE

AUGUST 16, 2019

1   IS FINE FOR PLAINTIFFS.

2          **THE COURT:**  OKAY.

3          MR. STEWART?

4          **MR. STEWART:**  I GUESS, YOUR HONOR, I MEAN, PART OF

5   MY REACTION IS THAT THE GOVERNMENT HAS QUITE A BIT TO RESPOND

6   TO IN MR. GELERNT'S PENDING MOTION.

7          **THE COURT:**  YES.

8          **MR. STEWART:**  INCLUDING NOT JUST BRIEFING ITSELF BUT

9   THERE IS A LOT THERE IN THE WAY OF EXHIBITS AND FACTUAL MATTER

10  AND THE LIKE.

11         MY INCLINATION IS THAT THAT ISSUE SHOULD -- THERE

12  ARE SOME THRESHOLD ISSUES IN THAT MOTION THAT I THINK SHOULD

13  PROBABLY BE BRIEFED AND RESOLVED FIRST BEFORE MOVING ON TO,

14  YOU KNOW, WHETHER IT IS EVEN APPROPRIATE FOR THE SORT OF

15  DEEPER PROBING OF -- FROM OUTSIDE THE GOVERNMENT EXPERTS OR

16  THE LIKE.  THAT WOULD BE MY INCLINATION.

17         IF THE COURT WERE INCLINED TO TAKE SOME OF THAT

18  EVIDENCE NOW, YOU KNOW, AGAIN, AS I NOTED, THE GOVERNMENT HAS

19  A LOT TO RESPOND TO AND TO REVIEW AND TO ADDRESS IN THE NEXT

20  COUPLE OF WEEKS.  IF WE NEED TO RESPOND TO OTHER MATTERS WE

21  WOULD LIKE TO HAVE ANYTHING ELSE SOON, AND MAYBE, YOU KNOW,

22  SOME MORE TIME SO THAT WE COULD ADEQUATELY ADDRESS IT,

23  ESPECIALLY IF IT IS CALLING FOR ANY SORT OF DECLARATIONS.

24         I THINK MY INITIAL REACTION WOULD BE, YOUR HONOR,

25  THAT IT WOULD MAKE SENSE TO DEAL WITH THIS MOTION, THE PENDING

AUGUST 16, 2019

1   MOTION THE PLAINTIFFS HAVE FILED, SEE WHERE THAT LEADS.  AND

2   THEN IF WE GET TO A PLACE OF EXPERT SUBMISSIONS, THE

3   GOVERNMENT WOULD LIKE THE ABILITY TO SEE THOSE, MAKE ANY

4   MOTIONS TO EXCLUDE THEM IF THAT WOULD BE APPROPRIATE.  YOU

5   KNOW, WE WOULD HAVE TO SEE WHAT THEY ARE.  BUT THAT SORT OF

6   ORDERLY PRESENTATION WOULD BE MY REACTION.

7           **THE COURT:**  OKAY.  AND THIS IS, AS YOU ARE

8   INDICATING, MR. STEWART, THIS IS JUST PRELIMINARY DISCUSSION,

9   YOUR OPPOSITION HASN'T EVEN BEEN FILED YET.  BUT IT IS A

10  MATTER OF IMPORTANCE AND I WANTED TO AT LEAST GET SOME OF

11  THESE IDEAS PUT BEFORE COUNSEL SO THAT IT COULD INFORM THE

12  BRIEFING.

13          AND ON THIS LAST AREA, WHETHER WE OUGHT TO HAVE

14  EXPERTS PROVIDE THEIR INSIGHT AND MAKE SUGGESTIONS AS TO WHAT

15  ANY PROTOCOL MIGHT LOOK LIKE, I WILL DEFER ON THAT PENDING THE

16  OPPOSITION, REPLY, AND THE COURT'S DETERMINATION ON SOME OF

17  THESE THRESHOLD ISSUES.

18          THE LAST QUESTION I HAD, MR. STEWART, DO YOU KNOW,

19  BASED ON THE PLAINTIFFS' MOTION THERE IS AN INDICATION THAT

20  APPROXIMATELY 900 FAMILIES HAVE BEEN SEPARATED OVER THE PERIOD

21  OF TIME IN QUESTION FOLLOWING THE COURT'S JUNE 2018

22  PRELIMINARY INJUNCTION.  900 OUT OF HOW MANY?  DO YOU KNOW

23  WHAT THE TOTAL NUMBER IS?

24          **MR. STEWART:**  I AM NOT SURE THAT I HAVE THE

25  DENOMINATOR THERE, YOUR HONOR, THAT LARGER COMPLEMENT.  I

AUGUST 16, 2019

1    DON'T THINK I HAVE THAT, YOUR HONOR.

2              WOULD YOU LIKE -- WOULD YOU LIKE US -- LOOKING HERE

3    IT MAY BE OVER SEVERAL HUNDRED THOUSAND PEOPLE, YOUR HONOR.  I

4    MEAN, A LOT OF FOLKS ARRIVING AT THE BORDER, YOU KNOW, THAT

5    ENTER AS FAMILY UNITS.  I MEAN, THAT IS A HUMUNGOUS, HUMUNGOUS

6    COMPLEMENT OF FOLKS WHO ARE NOW MIGRATING TO OUR SOUTHERN

7    BORDER.

8              SO I WANT -- YOU KNOW, IT MAY BE OVER SEVERAL

9    HUNDRED THOUSAND.  I CAN TRY TO PIN THAT DOWN A LITTLE BIT

10   MORE, YOUR HONOR, BUT THE NUMBER OF FAMILY UNITS IS QUITE

11   LARGE.  AND MY UNDERSTANDING IS THAT THE NUMBER, THE 900

12   NUMBER, IS -- WELL, YOU KNOW, WE DON'T COMMIT IT TO NUMBER, IT

13   IS COMPARATIVELY SMALL.

14             **THE COURT:**  ALL RIGHT.  AND PERHAPS THAT CAN BE

15   ADDRESSED IN THE BRIEFING TO FOLLOW.

16             ANY OTHER THOUGHTS OR COMMENTS ON THAT PENDING

17   MOTION BEFORE WE MOVE TO THE NEXT MOTION?

18             **MR. GELERNT:**  NO, YOUR HONOR.  NOT FROM MR. GELERNT.

19             **THE COURT:**  OKAY.

20             **MR. STEWART:**  NO, YOUR HONOR.  THANK YOU FOR YOUR

21   OBSERVATIONS.

22             **THE COURT:**  YOU ARE WELCOME.

23             LET'S GO TO THE MOTION TO ALLOW THE PARENTS WHO HAVE

24   BEEN REMOVED WITHOUT THEIR CHILDREN TO TRAVEL TO THE UNITED

25   STATES.


                         AUGUST 16, 2019

1          THIS MATTER HAS BEEN FULLY BRIEFED AND ARGUED, AND

2     THERE WAS SUPPLEMENTAL BRIEFING RECENTLY.  AND I HAD JUST A

3     FEW FOLLOW-UP QUESTIONS HERE.

4          FOR THE PLAINTIFFS, MR. GELERNT, DO YOU AGREE THAT

5     THE PLAINTIFFS CARRY THE BURDEN OF PROOF TO ESTABLISH ANY

6     UNLAWFUL OR IMPROPER REMOVAL?

7          **MR. GELERNT:**  YOUR HONOR, IF IT IS OKAY WITH YOU, I

8     AM GOING TO HAVE MR. BALAKRISHNAN ANSWER THESE QUESTIONS.  HE

9     ARGUED THE ORIGINAL MOTION BEFORE YOU.  AND IF THAT IS OKAY,

10    HE WILL ANSWER THESE QUESTIONS.

11         **THE COURT:**  YES.

12         **MR. BALAKRISHNAN:**  THANK YOU, YOUR HONOR.  THIS IS

13    ATTORNEY BALAKRISHNAN.

14         I BELIEVE THAT THE PLAINTIFFS DO, YOU KNOW, BEAR THE

15    BURDEN OF PROOF IN SHOWING THAT THE REMOVAL WAS ILLEGAL.  I

16    ALSO THINK THAT WE HAVE SHOWN IT IN THIS CASE, AND WE HAVE

17    LAID IT OUT NOW TWICE IN OUR PAPERS, WHICH IS A COMBINATION OF

18    THE FACT OF SEPARATION ITSELF, THE ENSUING TRAUMA OF IT, AND

19    ALSO THEIR REPEATED ATTEMPTS TO GET FEAR -- FAIR FEAR

20    SCREENINGS THAT WERE IMPEDED BY THE SEPARATION POLICY AND THE

21    ADDITIONAL COERCIVE PRACTICES BY THE GOVERNMENT.

22         I THINK OUR DECLARATIONS HAVE LAID THAT OUT, AND AT

23    THIS POINT HAVE NOT BEEN FULLY REBUTTED BY THE GOVERNMENT.

24         **THE COURT:**  DO YOU ALSO CONTEND THAT THE UNLAWFUL

25    SEPARATION, STANDING ALONE, THAT THAT -- FROM YOUR PERSPECTIVE

AUGUST 16, 2019

1   THAT THAT IS SUFFICIENT TO PROVIDE THIS RELIEF, OR DOES THERE

2   HAVE TO BE SOMETHING IN ADDITION TO AN ALLEGED UNLAWFUL

3   SEPARATION, LIKE COERCION OR LANGUAGE BARRIERS, THAT KIND OF

4   THING?

5          **MR. BALAKRISHNAN:**  YOUR HONOR, I THINK THAT IN THIS

6   CASE THAT THE UNLAWFUL SEPARATION IS, IN FACT, YOU KNOW, IS IN

7   FACT SUFFICIENT, PARTICULARLY WHEN COUPLED WITH THE FACT THAT

8   WE HAVE BEEN ABLE TO SHOW THE PREJUDICE THAT ENSUED FROM THE

9   SEPARATION.  AND THAT THESE ARE PARENTS WHO HAD BONA FIDE

10  CLAIMS FOR RELIEF THAT THEY CHOSE TO RELINQUISH AT SOME STAGE

11  IN THE PROCESS.

12          I THINK THAT THOUGH WE THINK THAT IS SUFFICIENT, WE

13  HAVE ALSO SHOWN ADDITIONAL ASPECTS OF COERCION IN EACH OF THE

14  PARENT'S CASES.

15          **THE COURT:**  THE RELIEF, IF WE FOCUS ON THE MOTION,

16  THE SPECIFIC RELIEF TO BRING PARENTS BACK UNDER THE CASE LAW

17  WOULD BE TETHERED TO AN UNLAWFUL OR IMPROPER REMOVAL.  SO

18  WOULDN'T THERE HAVE TO BE SOMETHING IN ADDITION TO, IF WE

19  ASSUME AN UNLAWFUL SEPARATION THERE HAS TO BE SOMETHING IN

20  ADDITION TO THAT AND SPECIFICALLY RELATED TO THE REMOVAL

21  ITSELF THAT CAUSES THE REMOVAL TO BE UNLAWFUL OR IMPROPER?

22          **MR. BALAKRISHNAN:**  YOUR HONOR, I THINK THAT UNDER

23  THE CASE LAW IN FACT THE, YOU KNOW -- AND WE CITED THIS IN OUR

24  SUPPLEMENTAL BRIEF.  YOU KNOW, THE GOVERNMENT ISN'T ALLOWED TO

25  COERCE PEOPLE OUT OF, YOU KNOW, A FAIR SHOT AT SEEKING ASYLUM.

AUGUST 16, 2019

1    AND ANY SORT OF COERCION CAN, YOU KNOW, GIVE RISE TO A DUE

2    PROCESS VIOLATION.

3           BUT THAT BEING SO, I DO THINK THAT IN FACT THE

4    SEPARATION ALONE AND THE, YOU KNOW, THE TRAUMA OF SEPARATION

5    IS SUFFICIENT.  BUT, AGAIN, I THINK WE HAVE GONE BEYOND THAT

6    AND ALSO SHOWN ADDITIONALLY IN EACH OF THE CASES THAT THERE

7    WAS AN ATTEMPT TO PURSUE THESE -- PURSUE THEIR CLAIMS AND ALSO

8    THAT THERE WERE ADDITIONAL ASPECTS OF THE PROCESS THAT WERE

9    COERCIVE IN EACH OF THESE CASES.

10          **THE COURT:**  ALL RIGHT.

11          A QUESTION WITH RESPECT TO SIX INDIVIDUALS THAT WE

12   HAVE IDENTIFIED, AND I THINK THIS IS ACCURATE.

13          IT APPEARS SIX OF THESE 21 INDIVIDUALS WERE REMOVED

14   AFTER THE COURT'S PRELIMINARY INJUNCTION ORDER.  SO THESE MAY

15   BE INDIVIDUALS WHO WERE REMOVED AND THEN CAME BACK AND THEN

16   WERE REMOVED AGAIN.

17          AND SO THE QUESTION HERE IS, WOULDN'T THOSE SIX

18   INDIVIDUALS, ASSUMING THE PRELIMINARY INJUNCTION IS IN PLACE,

19   WOULDN'T THEY HAVE BEEN REMOVED IN VIOLATION OF THE

20   PRELIMINARY INJUNCTION ORDER?  IN OTHER WORDS, THEY OUGHT NOT

21   TO HAVE BEEN REMOVED, THEY SHOULD HAVE BEEN REUNIFIED OR

22   ACCOUNTED FOR IN SOME WAY AND SUBJECT TO THE STAY OF REMOVAL.

23          MR. STEWART.

24          **MR. BALAKRISHNAN:**  YOUR HONOR, THIS IS ATTORNEY

25   BALAKRISHNAN AGAIN.  WE THINK SO.


                        AUGUST 16, 2019

1        **THE COURT:**  THAT SPECIFIC ARGUMENT, I DON'T THINK

2  THAT WAS MADE.  AM I CORRECT?  IT HAS BEEN A WHILE SINCE I

3  LOOKED AT THE ORIGINAL BRIEFING.

4        **MR. BALAKRISHNAN:**  NO, YOUR HONOR, WE HAVEN'T MADE

5  THAT SPECIFIC ARGUMENT, YOU KNOW, ABOUT THE PARENTS WHO WERE

6  REMOVED AFTER THE INJUNCTION WAS IN PLACE.

7        AND I THINK THE REASON FOR THAT WAS BECAUSE, AGAIN,

8  I THINK THE UNDERLYING ISSUE IN FACT WHETHER THE INJUNCTION

9  WAS IN PLACE OR NOT WAS THE FACT THAT THESE PARENTS, YOU KNOW,

10  BECAUSE THEIR KIDS WERE TAKEN AWAY FROM THEM, YOU KNOW, CHOSE

11  TO RELINQUISH THEIR CLAIM TO ATTEMPT, YOU KNOW, TO END THAT

12  PERIOD OF SEPARATION WHILE DETAINED.

13        **THE COURT:**  I SEE.

14        SO THEN FOR MR. STEWART THE SPECIFIC QUESTION WOULD

15  BE:  IF YOU ASSUME THAT SIX INDIVIDUALS WERE IN FACT REMOVED

16  AFTER THE PRELIMINARY INJUNCTION ORDER ISSUED, WOULDN'T THAT

17  BE AN UNLAWFUL OR IMPROPER REMOVAL?

18        **MR. STEWART:**  I AM NOT SURE ABOUT THAT, YOUR HONOR.

19  YOU KNOW, FOR EXAMPLE, IF SOMEBODY EXECUTED A REUNIFICATION

20  WAIVER, FOR EXAMPLE, OR THERE WAS SOME EXCEPTION ALLOWING FOR

21  THEIR REMOVAL, THOSE WOULD TWO VERY SIGNIFICANT FEATURES.

22        BECAUSE THE PLAINTIFFS HAD NOT PRESENTED THAT ISSUE

23  I ACKNOWLEDGE THAT I HAD NOT FOCUSED ON IT.  I COULD TAKE A

24  LOOK AT THAT, AS WELL, BUT SINCE IT WASN'T RAISED I HAVE NOT

25  LOOKED AT IT.


AUGUST 16, 2019

1          **THE COURT:**  ALL RIGHT.

2          THE PLAINTIFFS ALSO MAKE THE ARGUMENT THAT WITH

3   RESPECT TO AN INDIVIDUAL MAKING A CREDIBLE FEAR STATEMENT THAT

4   THEY ARE NOT LOCKED INTO A SNAPSHOT IN TIME.  THAT IF AT ANY

5   TIME IN THE PROCEEDINGS OR WHILE THEY ARE DETAINED THEY MAKE A

6   CREDIBLE FEAR STATEMENT OR A STATEMENT WITH RESPECT TO

7   PERSECUTION AND DANGER THAT THAT WOULD TRIGGER AN ONGOING DUTY

8   TO PROVIDE A CREDIBLE FEAR INTERVIEW.

9          MR. STEWART, WHAT'S YOUR POSITION THERE?

10          **MR. STEWART:**  I AM NOT SURE ABOUT THAT, YOUR HONOR.

11   THAT'S ANOTHER ONE THAT I THINK I SAW THAT FOR THE FIRST TIME

12   IN, YOU KNOW, I BELIEVE -- I AM -- THIS IS MY BEST -- TO THE

13   BEST OF MY KNOWLEDGE, I SAW THAT FOR THE FIRST TIME IN THE

14   SUPPLEMENTAL BRIEF.  I DON'T KNOW THAT THAT WAS SO CLEARLY

15   TEED UP BEFORE IF IT WAS TEED UP AT ALL.

16          THE BEST I CAN SAY IS, YOU KNOW, JUST SITTING HERE,

17   HAVING SEEN THAT ARGUMENT THAT, YOU KNOW, WE HAVE THE RECORDS

18   WE HAVE ABOUT SOMEBODY NOT CLAIMING FEAR.  I MEAN, THIS IS THE

19   SYSTEM THAT APPLIES BROADLY ON, YOU KNOW, A NATIONWIDE BASIS

20   TO FOLKS.  AND WE HAVE THESE RECORDS THAT SAY, OH, YOU KNOW,

21   LIKE, INDICATE LACK OF FEAR CLAIMED, OR WHATEVER THE BASIS

22   WOULD BE TO ALLOW REMOVAL.

23          AND, YOU KNOW, THESE ARE THINGS THAT ARE -- ENTITLE

24   US TO HAVE A PRESUMPTIVE REGULARITY, AND I JUST -- I DON'T SEE

25   HOW THAT SORT OF THING CAN BE REBUTTED BY THIS SORT OF THING.


AUGUST 16, 2019

33

```
1              THE ARGUMENTS THAT THE PLAINTIFFS RAISED, YOUR
2    HONOR, IS ONE THAT WAS REALLY JUST -- IS AN ATTACK ON THE
3    REMOVAL SYSTEM AS A WHOLE.  IT WOULD DRAMATICALLY CHANGE THE
4    SYSTEM BECAUSE MANY DISAPPOINTED APPLICANTS WOULD, YOU KNOW --
5    MANY, MOST MAYBE, EVEN, WOULD CLAIM SOME KIND OF TRAUMA, WOULD
6    CLAIM SOME KIND OF TRAUMA OF A CONSTITUTIONAL MAGNITUDE.
7              SO MY SUGGESTION WOULD BE, YOUR HONOR, THAT WE HAVE
8    IDENTIFIED ONE PERSON WHO WE FOUND TO BE -- THE REMOVAL TO BE
9    AN ERROR.  WE CAN ACT TO ADDRESS THAT.
10             BUT WITH THESE OTHERS, YOU KNOW, WHAT OUR RECORDS
11   SHOW IS THAT NO FEAR WAS CLAIMED OR FEAR WAS CLAIMED AND IT
12   WAS REJECTED OR A FEAR WAS CLAIMED AND IT WAS FOUND TO BE
13   POSITIVE BUT THE PERSON GAVE UP FURTHER REVIEW, OR DIDN'T
14   SUCCEED AND GOT A REMOVAL ORDER.
15             AND THAT IS HOW OUR SYSTEM WORKS, AND IT IS HOW IT
16   FUNCTIONS WELL.  AND MANY, MANY FOLKS END UP DISAPPOINTED FROM
17   THAT, BUT THAT IS THE SYSTEM AND THAT'S WHAT THE PLAINTIFFS
18   ARE REALLY ATTACKING HERE.
19             **THE COURT:**  ALL RIGHT.
20             MR. BALAKRISHNAN, DO YOU WANT TO WEIGH IN ON THAT
21   QUESTION?
22             **MR. BALAKRISHNAN:**  YES, YOUR HONOR.
23             I THINK THAT, AGAIN, I MEAN, WE ARE TALKING ABOUT AN
24   EXTREMELY UNIQUE SITUATION HERE.  AND I THINK IT IS HARD TO
25   IMAGINE ANY SORT OF GOVERNMENT ACTION THAT WOULD RISE TO THE
```

AUGUST 16, 2019

1  MAGNITUDE OF HARM OF TAKING PEOPLE'S CHILDREN AWAY.  AND
2  THAT'S, AGAIN, YOU KNOW, WHAT SEPARATES THESE CASES FROM THE
3  MINE-RUN OF REMOVAL CASES IN THE COUNTRY.
4          AND EVEN BEYOND THAT, I THINK THAT ULTIMATELY WE ARE
5  SEEKING RELIEF FOR A VERY, VERY SMALL SUBSECTION OF THE TOTAL
6  NUMBER OF FAMILIES THAT WERE IN FACT SEPARATED AND REMOVED BY
7  THE GOVERNMENT.
8          AND SO I THINK THAT HERE IT IS THE COMBINATION OF
9  THE UNIQUE NATURE OF HARM, WHICH IS IN FACT I THINK AS THIS
10 COURT HAS RECOGNIZED ALREADY, YOU KNOW, IN SOME WAYS A
11 HISTORICAL, YOU KNOW, HARM THAT THE GOVERNMENT HAS NEVER
12 REALLY UNDERTAKEN BEFORE.  YOU KNOW, COUPLED WITH THE DETAILED
13 DECLARATIONS OF OUR PARENTS ATTESTING TO THEIR REPEATED
14 ATTEMPTS TO CLAIM A FEAR, OR THE FACT THAT THEY RELINQUISHED
15 THEIR CLAIMS BECAUSE THEY HAD BEEN SEPARATED FROM THEIR
16 CHILDREN, OFTENTIMES FOR MONTHS.
17         AND I THINK, YOU KNOW, AS DESCRIBED IN THE
18 DECLARATION WE SUBMITTED, IT IS A REGULAR OCCURRENCE THAT
19 PARENTS DO NOT CLAIM A FEAR TO THE FIRST INSPECTING OFFICER
20 THAT INTERVIEWS THEM.
21         I MEAN, I THINK THAT WE HAVE IDENTIFIED IN OUR
22 SUPPLEMENTAL BRIEFING, YOU KNOW, THE MANY REASONS WHY THOSE
23 I-213'S ARE IN FACT UNRELIABLE IN AND OF THEMSELVES.  BUT IN
24 FACT IT IS A COMMON PRACTICE THAT PARENTS WILL CHOOSE TO CLAIM
25 A FEAR AFTER THEIR INITIAL APPREHENSION.


                              AUGUST 16, 2019

35

1       AND I THINK IT IS PERFECTLY CONSISTENT WITH THE
2   ASYLUM STATUTE AND THE WITHHOLDING OF REMOVAL STATUTE AND OUR
3   COMMITMENT NOT TO REMOVE PEOPLE TO PERSECUTION THAT THAT
4   LATER-MADE CLAIM FOR FEAR IS ACTED UPON BY ICE AND THE
5   GOVERNMENT.
6           **THE COURT:**  ALL RIGHT.
7           ON THE I-213 FORMS, IN LOOKING AT THOSE FORMS, THERE
8   IS NOT A BOX THAT IS CHECKED BY THE HEARING OFFICER WITH
9   RESPECT TO A CREDIBLE FEAR CLAIM; RATHER, IT APPEARS, FROM THE
10  FORMS I REVIEWED, THAT IF A CREDIBLE FEAR CLAIM IS MADE IT
11  WOULD THEN BE THE CUSTOM AND PRACTICE OF THE HEARING OFFICER
12  TO PUT IN NARRATIVE FORM THAT THAT CLAIM WAS MADE.
13          AM I CORRECT, MR. STEWART?
14          **MR. STEWART:**  I DON'T KNOW THAT THE -- YOUR HONOR,
15  ARE YOU ASKING -- I THINK THAT THE I-213 IS ABOUT THE INITIAL
16  CLAIM, BUT I MAY BE MISSING SOMETHING.
17          **THE COURT:**  WELL, THE PLAINTIFFS HAVE INDICATED THAT
18  THEY MADE A CREDIBLE FEAR CLAIM, AND THEN THE GOVERNMENT HAS
19  DISPUTED THAT IN A NUMBER OF INSTANCES AND CITED THE I-213
20  FORM AND THE NARRATIVE PAGES THEREIN.  AND IT WOULD BE THE
21  ABSENCE OF ANY NOTATION OF A CREDIBLE FEAR STATEMENT
22  ATTRIBUTED TO THE INDIVIDUAL THAT THE GOVERNMENT MAKES THE
23  REPRESENTATION THAT NO SUCH CREDIBLE FEAR CLAIM WAS MADE.
24  THAT WAS MY UNDERSTANDING.
25          SO I WAS LOOKING AT THOSE FORMS.  I DIDN'T SEE A BOX

AUGUST 16, 2019

1  THAT WOULD BE MECHANICALLY CHECKED TO ENSURE THAT THE OFFICER

2  ASKED THAT QUESTION AND DETERMINED THAT THE INDIVIDUAL BEFORE

3  HIM OR HER DID OR DID NOT MAKE A CREDIBLE FEAR STATEMENT;

4  RATHER, IT APPEARS THAT SOME TIME DURING THE INTERVIEW THE

5  PERSON MAY MAKE A CREDIBLE FEAR STATEMENT OR MAY NOT, AND THEN

6  IN NARRATIVE FORM, IF A CREDIBLE FEAR STATEMENT IS MADE, THE

7  OFFICER WOULD SO INDICATE.

8         DO YOU HAVE ANY INSIGHT ON THAT, THAT PRACTICE?

9         **MR. STEWART:**  I DON'T HAVE THE FINE POINTS

10 AVAILABLE.  AND I WANT TO BE CAREFUL ABOUT IT, YOUR HONOR,

11 BECAUSE I THINK IF SOMEBODY MAKES A CLAIM TO A BORDER PATROL

12 OFFICER AND, YOU KNOW, SAY CLAIM OF FEAR, I BELIEVE THEY CAN

13 THEN BE MOVED TO A HEARING OFFICER.  OR, EVEN IF THEY DON'T,

14 SOMETIMES, YOU KNOW, SOMETIMES THEY CAN STILL BE, YOU KNOW, IT

15 CAN STILL COME UP.

16         I CAN DRILL DOWN ON THAT, YOUR HONOR, IF THAT WOULD

17 BE HELPFUL.  I JUST WANT TO BE CAREFUL BECAUSE THERE ARE

18 SHIFTING PARTS OF THE AGENCY HERE, AND I SEE IT IS NOT ALL

19 NECESSARILY IMMEDIATELY INTUITIVE, AND I JUST WANT TO BE

20 CAREFUL TO GET IT RIGHT.

21         **THE COURT:**  ALL RIGHT.

22         MR. BALAKRISHNAN, ANYTHING ON THAT ISSUE?

23         **MR. STEWART:**  YOUR HONOR, I THINK OUR UNDERSTANDING

24 IS THE SAME AS YOURS, AND IT IS BASED ON THE DOCUMENTS THE

25 GOVERNMENT PROVIDED WHICH DON'T -- YOU KNOW, THEY INCLUDE THE

AUGUST 16, 2019

1    BOX AND THEY DON'T INCLUDE SORT OF THIS SPECIFIC INDICATION

2    THAT PEOPLE WERE ASKED ABOUT IT.

3              **THE COURT:**  ALL RIGHT.

4              **MR. STEWART:**  I THINK IT IS HARD, YOUR HONOR.  I

5    MEAN, MY UNDERSTANDING THERE IS NOT A LOT HERE AND IT IS

6    DIFFICULT FOR THE GOVERNMENT TO GO AND PROVE A NEGATIVE.

7              IF I HAVE SOMETHING IN ADDITION I WILL -- MY

8    UNDERSTANDING IS THAT IF SOMEBODY CLAIMS AT THE BORDER TO CBP

9    IT WOULD BE NOTED ON THE 213.

10             **THE COURT:**  OKAY.  THANK YOU.

11             THE GOVERNMENT, IN ITS SUPPLEMENTAL BRIEFING, MADE A

12   REFERENCE TO EMG IN THE MIDDLE OF PAGE 2, AND THE PLAINTIFFS

13   DON'T HAVE AN EMG.  DO WE KNOW WHAT'S CAUSING THAT

14   DISCREPANCY?

15             **MR. STEWART:**  YES, YOUR HONOR.  OUR APOLOGIES.  I

16   BELIEVE WE SHOULD HAVE INCLUDED A REFERENCE THERE TO NOT EMG

17   BUT ELDH.

18             **THE COURT:**  OKAY.  SO EMG SHOULD BE ELEH.

19             **MR. STEWART:**  ELDH, I BELIEVE, YOUR HONOR.

20             **THE COURT:**  P AS IN PAUL?

21             **MR. STEWART:**  D AS IN DAN.

22             **THE COURT:**  OH, OKAY.

23             **MR. STEWART:**  ELDH.

24             **THE COURT:**  ELDH.  OKAY.  I SEE THAT NOW, AND I

25   ACTUALLY HAVE A NOTE ON THAT.  THE PLAINTIFFS LISTED ELDH.


                              AUGUST 16, 2019

1   OKAY.

2         SO ELDH IS IN FACT THE GOVERNMENT'S MISTAKEN

3   REFERENCE, IT WAS TO EMG INSTEAD OF ELDH.  I WILL MAKE A NOTE

4   OF THAT.

5         A QUESTION OF BOTH PARTIES.  DID EASM AND JAA HAVE

6   CREDIBLE FEAR INTERVIEWS, DO YOU KNOW?

7         **MR. BALAKRISHNAN:**  YOUR HONOR, THIS IS ATTORNEY

8   BALAKRISHNAN.

9         I THINK THAT HERE OUR UNDERSTANDING, BASED ON THE

10  GOVERNMENT'S DOCUMENTS, I THINK FOR JAA THEY WERE TREATED IN A

11  DIFFERENT WAY THAN THE REST OF THE, YOU KNOW, 21 IN THAT

12  INSTEAD OF BEING PUT IN EXPEDITED REMOVAL PROCEEDINGS THEY

13  WERE ACTUALLY JUST PLACED INITIALLY INTO FULL REMOVAL

14  PROCEEDINGS.  BUT BEYOND THAT, WE CAN'T TELL FROM THE

15  GOVERNMENT DOCUMENTS WHAT HAPPENED.

16        THEY WOULDN'T HAVE BEEN REQUIRED TO RAISE, YOU KNOW,

17  OR GO THROUGH THE CREDIBLE FEAR PROCESS, BUT THEY SHOULD HAVE

18  HAD THE OPPORTUNITY TO SEEK ASYLUM BEFORE THE IMMIGRATION

19  JUDGE.  BUT WITHOUT, YOU KNOW, WITHOUT FURTHER DOCUMENTS FROM

20  THE GOVERNMENT IT IS DIFFICULT FOR US TO TELL.

21        IT SEEMS -- OUR UNDERSTANDING REGARDING EASM, AND

22  THIS IS BASED ON THE -- NOT THE GOVERNMENT'S PRODUCTION BUT

23  RATHER THEIR CHARTS, IS THAT THEY DID CLAIM A FEAR.  THEY WERE

24  REFERRED FOR THE INTERVIEW, BUT THEY CHOSE NOT TO PURSUE THE

25  INTERVIEW BECAUSE THEY DIDN'T WANT TO SPEND THE TIME SEPARATED


AUGUST 16, 2019

1   AND DETAINED FROM THEIR CHILD.

2            **THE COURT:**  ALL RIGHT.

3            MR. STEWART, ANY INSIGHT ON THOSE TWO?

4            **MR. STEWART:**  ON JAA MY UNDERSTANDING IS THAT THAT

5   INDIVIDUAL DID GO INTO NTA INITIATED REMOVAL PROCEEDINGS AND

6   THEN GOT JUST A NORMAL FINAL ORDER OF REMOVAL, IN THOSE

7   PROCEEDINGS WOULD PRESUMABLY HAVE BEEN ABLE TO MAKE ALL OF THE

8   RELEVANT AVAILABLE CLAIMS.  SO THAT PERSON WOULD BE -- IS A

9   BIT DIFFERENT, DIFFERENTLY SITUATED FROM SOMEBODY WHO JUST

10  GOES THROUGH EXPEDITED REMOVAL.

11           WITH RESPECT TO EASM, MY UNDERSTANDING WAS THAT IT

12  WAS SIMILAR TO THE FIRST PART OF WHAT MR. BALAKRISHNAN SAID,

13  SOMEBODY WAS REFERRED TO A CREDIBLE FEAR INTERVIEW BUT

14  WITHDREW THE CLAIM BEFORE THE INTERVIEW, AND SO HAVING

15  WITHDRAWN THE CLAIM DIDN'T GET THE INTERVIEW.

16           OUR CHART DOES NOT SAY THAT THAT WAS BECAUSE THAT

17  INDIVIDUAL DIDN'T WANT TO BE SEPARATED.  AND, YOU KNOW, IF

18  SOMEBODY WITHDRAWS A CLAIM THEN THAT IS TO BE EXPECTED, THE

19  AGENCY WOULD TYPICALLY GO TO SEEK TO EFFECTUATE A REMOVAL

20  ORDER.

21           **THE COURT:**  OKAY.  SOME OF THESE INDIVIDUALS,

22  INCLUDING EASM, JAA, AND I THINK FNG, APPEAR TO HAVE SIGNED A

23  WAIVER FORM AND THEN THAT LED TO THEIR REMOVAL.

24           IS THE GOVERNMENT ARGUING THAT THAT WAIVER FORM IS

25  VALID AND SUFFICIENT AND A PROPERLY EXECUTED WAIVER?


                    AUGUST 16, 2019

1        **MR. STEWART:**  ON THOSE, TO MY KNOWLEDGE, YOUR HONOR,

2  WE HAVE NOT DISCLAIMED THE VALIDITY OF ANY OF THOSE -- OF ANY

3  OF THOSE WAIVER FORMS.  SO THESE ARE FOLKS WHO I BELIEVE WHO,

4  YOU KNOW, WAIVED REUNIFICATION IN ADVANCE OF REMOVAL OR TO THE

5  STEERING COMMITTEE, OR WHATEVER THE CASE MAY BE.  YOU KNOW,

6  ABSENT SOME VERY STRONG INDICATION, YOU KNOW, WE WOULD PRESUME

7  THAT A WAIVER FORM IS VALID.

8        **THE COURT:**  AND, MR. GELERNT, IS THIS THE WAIVER

9  FORM THAT YOU WERE CHALLENGING SEVERAL MONTHS AGO THAT THE

10  COURT ADDRESSED IN PRIOR ORDERS?

11        **MR. BALAKRISHNAN:**  YOUR HONOR, THIS IS ATTORNEY

12  BALAKRISHNAN.

13        I THINK THAT FROM -- SO WE HAVE SEEN SOME, YOU KNOW,

14  WAIVER FORMS IN THE GOVERNMENT'S PRODUCTION.  YOU KNOW, THEY

15  PROVIDED IT FOR SOME OF THE INDIVIDUALS, NOT FOR OTHERS, SO WE

16  DON'T KNOW EXACTLY WHAT THE COMPLETE UNIVERSE OF FORMS MAY BE.

17        BUT I BELIEVE THAT THERE ARE SEVERAL DIFFERENT FORMS

18  THAT PEOPLE WERE SIGNING.  IN SOME CASES IT WAS REALLY JUST A

19  HANDWRITTEN DOCUMENT.  IN SOME CASES THERE WAS A FORM THAT THE

20  GOVERNMENT HAD PROVIDED THEM THAT WE IN FACT CHALLENGED, YOU

21  KNOW, DURING THE MS. L. LITIGATION.

22        I THINK THAT THERE WERE SEVERAL DIFFERENT TYPES OF

23  FORMS THAT WERE BEING DISTRIBUTED AT DIFFERENT TIMES.

24        **THE COURT:**  ALL RIGHT.

25        **MR. STEWART:**  I ACKNOWLEDGE, YOUR HONOR, I DON'T

AUGUST 16, 2019

1   HAVE ALL OF THE WAIVER FORMS, THE ONES YOU MENTIONED, IN FRONT

2   OF ME.  BUT -- SO IT COULD BE THAT INDEED THOSE ARE DIFFERENT

3   WAIVER FORMS AT DIFFERENT TIMES.  I LOOKED AT -- YOU KNOW, I

4   HAVE BEEN LOOKING FOR A COUPLE OF THEM THAT HAVE ONLY SO MANY

5   OF THE -- HERE.

6           **THE COURT:**  OKAY.  THANK YOU.  THOSE ARE ALL OF THE

7   QUESTIONS I HAVE.  WE ARE OBVIOUSLY KIND OF INTO THE WEEDS NOW

8   ON THAT MOTION, AND I AM ATTEMPTING TO ISSUE AN ORDER AS SOON

9   AS I CAN ON THAT MOTION, SO THIS DISCUSSION HAS BEEN HELPFUL.

10          FOR THE FUTURE, I WOULD LIKE TO MEET AGAIN -- AND I

11  WILL ISSUE A FOLLOWUP ORDER -- ON SEPTEMBER 13 AT 1:00

12  O'CLOCK, WITH A JSR SUBMITTED SEPTEMBER 11.

13          THE BRIEFING WILL BE COMPLETED ON THE MOTION TO

14  ENFORCE THE P.I., THE ONGOING SEPARATION ISSUE, AND WE CAN

15  CLOSE OUT THE ARGUMENT ON SEPTEMBER 13, AS WELL.

16          ARE THERE ANY OTHER MATTERS BEFORE WE SIGN OFF?

17          **MS. WEISS:**  YOUR HONOR, THIS IS CATHERINE WEISS.

18          SO YOU WOULD LIKE TO HEAR THE MOTION TO ENFORCE THE

19  P.I. ON SEPTEMBER 13TH, IS THAT WHAT YOU SAID?

20          **THE COURT:**  YES.

21          **MS. WEISS:**  WOULD YOU LIKE TO HAVE THAT HEARING IN

22  PERSON, OR WOULD IT BE BY PHONE, THE WAY THE OTHERS HAVE BEEN?

23          **THE COURT:**  I AM CONTENT TO PROCEED BY PHONE.  BUT

24  OF COURSE YOU ARE WELCOME TO COME.  IT IS ALWAYS DELIGHTFUL TO

25  SEE COUNSEL.  BUT YOU CERTAINLY DON'T HAVE TO MAKE THE


                          AUGUST 16, 2019

```
 1  JOURNEY.  YOU CAN ADVANCE ARGUMENTS TELEPHONICALLY.
 2          MS. WEISS:  THANK YOU, YOUR HONOR.
 3          THE COURT:  ALL RIGHT.
 4          SO WE WILL SIGN OFF NOW.  I APPRECIATE COUNSELS'
 5  TIME.
 6          I WILL ISSUE A FOLLOW-UP ORDER CONSISTENT WITH WHAT
 7  WE DISCUSSED TODAY, AND THEN WE WILL MEET AGAIN,
 8  TELEPHONICALLY OR IN PERSON IF YOU DESIRE, ON THE 13TH OF
 9  SEPTEMBER.
10          MR. GELERNT:  THANK YOU, YOUR HONOR.
11          THE COURT:  THANK YOU.  HAVE A NICE WEEKEND.
12
13                          *   *   *
14          I CERTIFY THAT THE FOREGOING IS A CORRECT
            TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
15          IN THE ABOVE-ENTITLED MATTER.
16          S/LEEANN PENCE                8/17/2019
            LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
17
18
19
20
21
22
23
24
25


                    AUGUST 16, 2019
```