JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, *et al,*, <br><br> Petitioners-Plaintiffs, <br><br> vs. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al, <br><br> Respondents-Defendants. | Case No. 3:18-cv-0428 DMS MDD <br><br> **NOTICE ATTACHING DECLARATIONS IN RESPONSE TO THE COURT'S AUGUST 16, 2019 ORDER, ECF NO. 450** |

In accordance with the Court's August 16, 2019 Order Following Status Conference, ECF No. 450, Defendants hereby submit the attached declarations of Jonathan White, Melissa Harper, and Jay Visconti.

DATED: August 30, 2019           Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-532-4824
(202) 305-7000 (facsimile)
Sarah.B.Fabian@usdoj.gov

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is Box 868, Ben Franklin Station, Washington DC 20044. I am not a party to the above-entitled action. I have caused service of the accompanying brief on all counsel of record by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

    I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 30, 2019        *s/ Sarah B. Fabian*
                                           Sarah B. Fabian

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al.,<br><br>Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>Hon. Dana M. Sabraw |

## **SUPPLEMENTAL DECLARATION OF JONATHAN WHITE**

I, Jonathan White, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties, information supplied to me by federal government employees, and government records.

2. This declaration describes aspects of the Government's Plan for identifying possible children of potential class members for the expanded class period, see ECF Nos. 394 and 405, and updates the Court on implementation of the Plan.

3. When the government began implementing the Plan,[1] HHS initially produced six lists of children having any indication of separation, based on its review of almost 33,000 children's case files. As a quality control measure, I directed HHS personnel to conduct a second review of every case where the initial review found no preliminary indication of

---

[1] The interagency process for identifying, vetting, and communicating lists of possible children of potential expanded class members is as follows: first, HHS conducts case file reviews of all children in ORR care during the class expansion period, capturing children with any indication of separation in one of 11 lists (see Paragraph 3); second, DHS receives lists from HHS on a rolling basis, compares them against its own records in order to identify confirmed cases of parent-child separations, and adds relevant information such as the location of the separated parents as applicable; third, HHS adds any available contact information for the parents, and information on individual sponsors to whom children were discharged; fourth, DHS and HHS personnel engage in concurrent clearance to check accuracy.

separation. This quality-control review yielded a small number of newly-identified children with preliminary indications of possible separation. Those newly-identified children were compiled into five new, smaller lists. As a result, there are a total of 11 lists identifying possible children of potential members in the expanded class. One of the five new, smaller lists was vetted by DHS and HHS, and sent to plaintiffs. As a result, to date, the government has sent plaintiffs four of the eleven total lists.[2] The seven remaining lists are currently under government review.

4. The government will provide the remaining lists to plaintiffs on a rolling basis, as it completes the interagency vetting process for each list. The seven remaining lists are of varying sizes and are at different stages of interagency review.[3]

- List 4[4] identifies 915 children; as of August 30, 2019, this list was under review by DHS.

- List 5 (Batch 10) identifies 990 children; as of August 30, 2019, this list was under review by DHS.

- List 6 (Batch 4) identifies 96 children; as of August 30, 2019, this list has completed final review and will be produced to plaintiffs soon.

- List 7 (Batch 7) identifies 98 children; as of August 30, 2019, this list was under review by DHS.

- List 8 (Batch 5) identifies 34 children; as of August 30, 2019, this list has completed final review and will be produced to plaintiffs soon.

- List 9 (Batch 8) identifies 46 children; as of August 30, 2019, this list has completed final review and will be produced to plaintiffs soon.

---

[2] The government has referred to lists that have undergone the interagency vetting process and been sent to plaintiffs as "batches." A batch may include children who initially were identified in more than one initial HHS list, whose cases the government required more time to vet.

[3] The government has already sent Lists 1, 2, 3, and 10 (Batches 2, 3, 1, and 6, respectively) to plaintiffs.

[4] List 4 is not associated yet with a Batch as this association occurs during DHS review. See FN 1. List 4, after DHS review, will presumably become Batch 11.

2

List 11 (Batch 9) identifies 21 children; as of August 30, 2019, and is undergoing additional inter-departmental review.

5. My understanding is that DHS is providing a separate declaration regarding expected timeframes for completing their segments of the review process. While I defer to DHS with respect to their expected internal timetable, I continue to anticipate that the government will meet its October 25, 2019 deadline to identify all possible children of potential class members in the expanded class. Further, I expect that the government will send several of the remaining seven lists to plaintiffs by the next status conference, currently scheduled for September 13, 2019.

Executed on August 30, 2019.

*[signature]*

Jonathan White

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>　　　　Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>　　　　Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**DECLARATION OF MELLISSA HARPER UPDATING STATUS OF BATCH REVIEW PROCESS OF IDENTIFYING EXPANDED CLASS MEMBERS** |

## DECLARATION OF MELLISSA HARPER

I, Mellissa Harper, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, relating to the above-captioned matter, hereby declare as follows:

1.　I am the Unit Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises ERO Field Office Juvenile Coordinators (FOJCs). JFRMU oversees and

1

monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. Responsibilities within my purview include case reviews for family separations and reunifications, data quality for family separation cases, and coordination for family reunifications, as well as the coordination of *Ms. L* data collection and reporting on behalf of ICE in collaboration with U.S. Customs and Border Protection (CBP) and U.S. Department of Health and Human Services (HHS) data teams.

3. On Friday, March 8, 2019, this Court ordered a modification of the previously certified class to include all adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017. As explained below, List 10 is now with ICE, and my team is conducting the necessary line-by-line manual review to provide complete and accurate information on class members and exclusions.

4. As explained in prior declarations, the Respondent-Defendants in this case are involved in developing and coordinating the identification process for expanded class members with the other named Defendants. Only after review of this information through a labor intensive, manual verification on a line-by-line basis, can the agencies identify expanded class members and confidently report an accurate number to the Court.

5.  Consistent with prior declarations submitted to this court, as a part of the process of identifying expanded class members, ICE receives lists from CBP which contain information from both HHS records and CBP records on potential class members. A confirmed separation is determined by agreement among all three agencies that the available information indicates that the case is a separation of an adult and child.

6.  Once a separation is confirmed, the agencies must further review the case to determine if the adult is a parent and if the parent is a class member or is excluded from the class. To initiate this review, ICE queries its internal databases to collect and insert data regarding a separated adult's biographical information, criminal history, detention status, detention location or release information, removal information (if applicable), and last known contact information.

7.  As of August 29, 2019, ICE has received 10 batches.

8.  Of these batches, ICE has completed and returned 9 batches to HHS, thereby completing initial inter-departmental review. Those 9 batches have either been produced to plaintiffs or are in the clearance process for production to plaintiffs.

9.  My team is still working with CBP and HHS to initially clear 2 batches. These batches are larger than prior batches and includes roughly 1,800+ entries.

10. Barring any unforeseen circumstances or delays, I expect that my team will be able to remain on schedule and produce these batches by the court deadline.

Dated: August 29, 2019

_____
Mellissa Harper
Chief, Juvenile and Family Residential Management Unit
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Washington, D.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., *et al.*, )<br>　　*Plaintiffs,* )<br> )<br> )<br>v.　　　　　　　　　　　　　　　　 )<br> )<br>U.S. Immigration and Customs )<br>Enforcement, *et al.*, )<br>　　*Defendants.* )<br>_____ ) | No. 3:18-cv-00428-DMS-MDD |

**DECLARATION OF JAY VISCONTI**

　　I, Jay Visconti, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

　　1.　　I am an Associate Chief with the United States Border Patrol (USBP) currently serving in the capacity as a the Director of the CBP Statistical Tracking and Analysis Team (STAT) Division within Operations Support, U.S. Customs and Border Protection (CBP), Department of Homeland Security. I have been in this role since August, 2019. Previously, I was the Senior Advisor to the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner and had been in that role since July 2016. In my previous role, as well as with this new role, I am responsible for directly supporting and advising the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner, as well as the Deputy Commissioner, on issues such as USBP's strategic, operational and tactical plans, and policies and procedures governing threats, such as: terrorist organizations, criminal organizations, illegal

1

2. immigration/human smuggling, narcotics and contraband smuggling, transnational gangs, threats to legitimate trade and travel, and imported consumer products jeopardizing public safety. Additionally, I provide high-level analysis and reporting into CBP's immigration and seizure data to CBP Senior Leadership.

3. Because of my work with the CBP STAT, and my previous position as the Assistant Chief over the USBP's Statistics and Data Integrity (SDI) Branch, I served as CBP's main point of contact in the interagency effort to identify and reunify the children of the legacy *Ms. L* class members. I am also CBP's Operational Lead for the government's plan to identify members of the expanded *Ms. L* class.

4. As outlined in previous filings in this case, the process for identifying the members of the expanded *Ms. L* class, as well as their children, involves extensive review of various data sets by CBP, the Department of Health and Human Services (HHS) and U.S. Immigration and Customs and Enforcement (ICE) Enforcement and Removal Operations (ERO).

5. In my role as CBP's Operational Lead, I manage the incoming and outgoing flow of information between the interagency in the effort to identify potential members of the expanded *Ms. L* class. In general, this process involves CBP receiving lists from HHS consisting of children who HHS has determined have some indicia of separation. After receiving those lists, I work with two teams of contractors, as well as with the CBP Office of Field Operations and U.S. Border Patrol to review the records and to validate the separation, and if validated, provide a reason for the separation. Once I receive the list back from the operational components, I review the list for accuracy and consistency, and then forward the list (now referred to as a

"batch") over to my ICE ERO counterpart, while also carbon copying our HHS counterpart for complete transparency.

5. Following ICE ERO's review, DHS, HHS, and DOJ engage in additional interagency review to resolve any remaining issues.

6. CBP has received eleven lists of children whose file revealed some indicia of separation from HHS.

7. The eleven lists received from HHS vary in their size, with some lists containing only a few cases, and some containing several hundred cases. Accordingly, the time to complete review of each lists varies, and I send batches forward to ICE as soon as CBP completes its review.

8. Of the eleven lists received from HHS, CBP has completed review of ten of the lists. I sent the tenth list ("batch 10"), which contained more than 900 cases, to ICE ERO on August 20, 2019. CBP is still completing its review of the eleventh list from HHS, which similarly contains more than 900 cases. I anticipate sending this list to ICE ERO by the end of September, if not sooner.

9. I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30TH day of August, 2019.

_____
Jay Visconti
Director, CBP STAT
Operations Support
U.S. Customs and Border Protection