# DEFENDANTS' EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Ms. L, et al., | § | |
|     Petitioner/Plaintiff | § | Case No. 18-cv-00428-DMS-MDD |
| v. | § | |
| | § | |
| U.S. Immigration and Customs | § | |
| Enforcement ("ICE"), et al., | § | |
|     Respondents/Defendants | § | |

## DECLARATION OF LLOYD EASTERLING

1. I am the Division Chief of Law Enforcement Operational Programs, for the Rio Grande Valley (RGV) Sector, U.S Border Patrol (Border Patrol), U.S. Customs and Border Protection (CBP), Department of Homeland Security (DHS). I have been employed in this capacity since February 2017. Prior to that date, I served in numerous management positions for the Border Patrol.

2. As Division Chief of Law Enforcement Operational Programs, I have oversight of a variety of Border Patrol programs to include alien processing and prosecutions.

3. The RGV Border Patrol Sector is comprised of nine Border Patrol stations: Brownsville, Corpus Christi, Falfurrias, Fort Brown, Harlingen, Kingsville, McAllen, Rio Grande City, and Weslaco. In addition to the nine stations, RGV Sector has established the RGV Centralized Processing Center (RGV CPC), which I oversee. The RGV CPC is designed to process a high number of aliens while also providing services associated with the care and temporary custody of unaccompanied children (UAC) and families (FMUA) to include medical screening, hot meals, showers, child monitors/caregivers, and laundry services. The RGV CPC is responsible for processing the overwhelming majority of alien children (to include those within FMUA) apprehended within the RGV Sector. As a result of the recent migrant influx, RGV Sector also constructed three temporary "soft-sided" facilities in Donna, Texas, to hold family units and single adults.

4. Statistically, the RGV Sector currently apprehends more UACs and family units than any other Border Patrol Sector. In fiscal year 2018, RGV Sector encountered 63,278 family units and 23,757 UACs. In fiscal year 2019 (through August 22, 2019), RGV Sector encountered 202,336 family units and 32,597 UACs. The vast majority of these

1

individuals were encountered shortly after making entry into the United States by crossing the Rio Grande River without inspection by an immigration officer

5. Border Patrol stations are designed for short-term custody. For multiple reasons (a high number of individuals arrested on a daily basis; time-in-custody requirements imposed by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"); the *Flores* Stipulated Settlement Agreement; the need to ensure that individuals referred for prosecution are promptly presented before a Magistrate Judge; and the general fact that Border Patrol Stations were not designed to hold individuals – particularly children – for a long period of time) Border Patrol Agents process all individuals as expeditiously as possible and make every effort to transfer them to facilities that are more appropriate for longer-term detention (such as those run by U.S. Immigration and Customs Enforcement (ICE) and the U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR)). Therefore, agents must often make processing determinations based on the limited information available to them at the time of encounter.

6. I am familiar with the guidance issued by Border Patrol concerning the apprehension, processing, and detention of family units and UACs to include, but not limited to, guidance on the TVRA; CBP's *National Standards on Transport, Escort, Detention, and Search*; and CBP's June 27, 2018 *Interim Guidance on Preliminary Injunction in Ms. L v. ICE, No. 18-428 (C.D. Cal. June 26, 2018)* (hereinafter "Interim Guidance").

7. I understand that the TVPRA dictates special procedures for immigration processing and detention of UACs. The term "UAC" is defined as "a child who- (A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom- (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody."

8. Further, I know that under the TVPRA, Border Patrol is required to notify ORR within 48 hours upon the apprehension or discovery of a UAC not from a contiguous country and, except in the case of exceptional circumstances, is required to transfer the individual to ORR not later than 72 hours after making the UAC determination. In certain circumstances, UACs from continuous countries may be permitted by Border Patrol to voluntarily return to their countries of origin. Border Patrol cannot release an alien child who lacks lawful immigration status to anyone other than a parent or legal guardian.

9. When an agent encounters an individual believed to be a removable alien, the agent will first establish alienage and determine if the alien claims or appears to be a child under

18 years of age. Once the initial questioning is completed in the field, the alien who claims or appears to be under 18 years of age is generally segregated from unrelated adults (and, at times, further segregated from other children) for transportation purposes and is brought to the RGV CPC or one of the nine Border Patrol stations for further processing. Once at the RGV CPC or a station, processing is initiated during initial "intake," where additional information is obtained and entered into CBP's systems of records. During intake, a determination is made as to whether an individual is a child under 18 years of age. Border Patrol also determines whether the child has any lawful status under the immigration laws of the United States. This determination is more comprehensive than what initially occurs in the field, as it is based on a detailed examination of the individual along with a review of applicable systems checks. After this information is obtained and the alien is identified, case preparation commences. This includes, but is not limited to, immigration processing forms and service of said forms, making consular notifications, and affording communication privileges with consular officials and family members, as appropriate.

10. For alien children without lawful status, Border Patrol attempts to determine whether the child is accompanied by a parent, legal guardian or other family member. For alien children accompanied by adults, Border Patrol asks for documentation (e.g., birth certificates, passports, etc.) to confirm the nature of the relationship between the child and the adult. This is essential since, under the TVPRA and related guidance, family unity may only be maintained if Border Patrol can determine that the adult is the biological parent or legal guardian of the child.

Separation of Family Units in RGV Sector

11. In the majority of cases involving alien children, Border Patrol is able to promptly make a determination as to whether or not the child is accompanied by a parent. If a determination is made that the child is accompanied by a parent, Border Patrol maintains family unity unless there is a basis for separation.

12. As a part of my duties, I am generally familiar with CBP's *Interim Guidance,* as well as the criteria used by RGV Sector when implementing that guidance to determine whether it is appropriate to separate an alien parent from an alien child.[1] That guidance provides certain standards by which all U.S. Border Patrol agents assess whether separation of an alien parent from an alien child is appropriate.

---

[1] Throughout this declaration, the term "separation" refers to a decision to separate a removable alien parent accompanied at the time of apprehension by a removable alien child. This declaration does not address separations involving United States citizen children or alien children with lawful status in the United States.

3

13. Additionally, following the June 26, 2018 preliminary injunction in *Ms. L.*, RGV Sector, consistent with CBP's *Interim Guidance*, has standardized procedures that it follows when considering whether it is appropriate to separate an alien parent from an alien child. Under these procedures, all requests for separations by Border Patrol stations must be sent to RGV Sector management using a standardized template that details the biographic information on the alien parents and children, any immigration or criminal history (both domestic and foreign) of the alien parents, as well as any record of affiliation with a criminal gang. Other information provided includes whether the alien parents are being considered for any criminal prosecution, whether any member of the group is currently hospitalized, any points of contact in the United States, and any other information potentially relevant to determining the appropriateness of separation in this instance (e.g., disability or special needs of the accompanying children).

14. Following submission of the template, the Office of Chief Counsel reviews the family separation request for legal sufficiency with the final determination to separate being made by RGV Sector management. These templates are carefully considered and in many cases, a determination is made to maintain unity of the family instead of separating.

15. An alien parent's prior immigration history, standing alone, is not used as a basis to justify separation from an alien child. Similarly, a prior misdemeanor conviction for illegal entry under 8 U.S.C. § 1325(a)(1) is never used as the sole basis to justify a parent's separation from an alien child.

16. RGV Sector separates alien parents from alien children when a parent has certain types of domestic criminal history. In general, consistent with the *Interim Guidance*, a separation based on domestic criminal history will occur where a parent has a prior conviction for a violent misdemeanor or any type of felony offense. Examples of violent misdemeanors that have formed the basis for separation include offenses like assault, battery, burglary, resisting arrest, hit and run, and disorderly conduct. Simple thefts, fraud crimes, minor drug or traffic crimes, or driving while intoxicated (without an aggravating factor) are examples of offenses that would not generally justify separation. Indeed, RGV frequently encounters parents who have a prior convictions for driving while intoxicated. RGV Sector generally maintains family unity in all of these cases unless the conviction is for a felony, the crime involved some aggravating factor or there is some other basis for separation. This is true even if a parent has several driving while intoxicated convictions. Similarly, RGV Sector routinely encounters parents accompanying children who have prior misdemeanor drug convictions. Just like with convictions for driving while intoxicated, family unity is generally maintained in these cases unless there is some independent basis for separation.

17. When determining whether a parent's domestic criminal history warrants separation from his or her child, agents take certain steps, including reviewing various record checks, such as an individual's RAP sheet. If the RAP sheet is ambiguous, agents may take additional steps to confirm criminal history, such as reviewing a parent's A-file or verifying criminal case disposition with appropriate criminal courts.

18. A more challenging scenario involves parents identified as having foreign criminal history or being affiliated with a criminal gang such as MS-13 or the 18th Street Gang. These cases are especially challenging since information received from foreign governments during the short period of time individuals are in Border Patrol custody often includes limited information on the disposition of the offense and details regarding the crime. However, RGV Sector is usually able to confirm that foreign criminal history pertains to an individual in custody by biometric checks or photographic comparison.

19. Many times the foreign criminal history reflects relatively minor crimes such as theft, trespass, or public order offenses. This type of criminal history will not generally justify a separation. For instance, on March 26, 2019, RGV Sector encountered a Salvadoran female with her 7-month-old child. The mother had an active arrest warrant from El Salvador for theft. Despite that, RGV Sector maintained the unity of this family.

20. However, on other occasions, the information received reflects foreign criminal history for serious offenses to include, but not limited to, murder, robbery, drug trafficking, terroristic activities, assault, shootings, and extortion. Sometimes RGV Sector also receives information that the parent has an active warrant for arrest issued by foreign government. Information received from foreign governments and other law enforcement databases also may reflect that an individual has been identified as affiliated with a criminal gang, commonly MS-13 or the 18th Street Gang. Often times, an individual will self-admit to being a member of a criminal gang. In cases involving foreign criminal history and gang affiliation, RGV Sector engages closely with U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) to determine whether this derogatory information precludes placement of the parent at an ICE Family Residential Center (FRC). If ERO makes a determination that foreign criminal history or gang affiliation precludes FRC placement, RGV Sector may rely on that determination to separate the parent from the child.

21. Consistent with the *Interim Guidance*, RGV Sector may separate alien children from alien parents when the U.S. Attorney's Office has decided to prosecute a parent for a felony offense. This includes, but is not limited to, prosecutions for alien smuggling under 8 U.S.C. § 1324 and illegal reentry under 8 U.S.C. § 1326. RGV Sector does

exercise discretion in referring cases for criminal prosecution. For example, there have been several cases where parents with prior felony convictions for illegal reentry under 8 U.S.C. § 1326 have been apprehended with alien children, but not referred for a new prosecution under § 1326 for various reasons. If a parent has criminal history consisting only of a prior conviction for 8 U.S.C. § 1326 but is not referred for a new § 1326 prosecution, RGV Sector does not, in general, separate the parent from the child. Prosecutions for illegal reentry under 8 U.S.C. § 1326 of parents accompanying children are relatively rare in RGV Sector. In fiscal year 2019 (through August 27, 2019), RGV Sector processed 10,809 parents accompanying children for reinstatement of removal because of prior removal orders. CBP's statistics reflect that only 140 of these parents (1.3%) were actually prosecuted for illegal reentry under 8 U.S.C. § 1326.

22. RGV Sector does not currently refer aliens parents accompanying children for prosecution for illegal entry under 8 U.S.C. § 1325(a)(1) unless there is another basis for separation. For example, if a parent has criminal history that would justify separation (e.g., conviction for domestic violence), RGV Sector may refer the parent for a prosecution under 8 U.S.C. § 1325(a)(1).

23. RGV Sector separates alien children from alien parents when the parent has an active, extraditable warrant to face criminal charges in the United States. By contrast, if a domestic warrant is not subject to extradition, RGV Sector generally does not separate an alien child from an alien parent solely on the basis of pending charges.

24. Separation of an alien parent from an alien child may also occur where there is a need for an alien parent to be detained by the U.S. Marshals as a material witness in connection with a prosecution under 8 U.S.C. § 1324. In such situations, RGV Sector will generally work with ORR to try to secure a local placement for the child, so that reunification can be facilitated following the parent's release from U.S. Marshals custody and detention with ICE.

25. RGV Sector also separates alien parents from alien children where a determination is made that an alien parent is unable to provide care and custody for an alien child due to a parent's lack of fitness or danger presented to the child. Concerns regarding lack of fitness and danger presented to a child often overlap.

26. For example, if an alien parent will hospitalized for a lengthy period of time, RGV Sector will generally seek placement with the ORR. In such situations, RGV Sector will generally work with ORR to try to secure a local placement for the child, so that reunification can be facilitated following the parent's release from the hospital.

27. RGV Sector also encounters scenarios where a parent is diagnosed by a medical provider with a mental disorder that raises concerns about the parent's ability to provide care and custody for the child. For instance, RGV has separated in cases where a parent has been diagnosed with Schizophrenia, which raises concerns about the parent's ability to provide adequate care or make appropriate determinations for the child.

28. RGV Sector, on a very limited basis, has separated parents based on concerns that the parent is unfit. In one case, a claimed parent attempted to bribe a Border Patrol agent by offering to perform sexual acts while in CBP custody. On other occasions, RGV Sector has encountered parents who are active users of illicit controlled substances. In one instance, RGV Sector made a determination to separate a parent for lack of fitness when Border Patrol encountered a parent who began to climb the cell fencing, feigned passing out, laid on the floor, and failed to assist with the feeding of her age 4 child. Border Patrol referred the parent to a local medical provider for a mental health evaluation. The medical provider recommended that that the parent be admitted to a hospital for further care.

29. On very limited occasions, RGV Sector has also separated where there is evidence that an alien parent presents a danger to his or her alien child. For instance, RGV Sector encountered one adult accompanied by his children who had a record of being involved in the smuggling of minors for the purposes of prostitution. In another instance, RGV Sector encountered an alien parent who attempted to assault and disarm a Border Patrol agent and escape from custody. In another case, RGV Sector encountered two parents accompanied by their age 7 female child. Record checks reflected that the adult male had previously been accused by one of his other children of sexual abuse. Although the father was never prosecuted for this offense, RGV Sector made the decision to separate the adult male from the child and her mother due to concerns that he posed a danger to the child. Again, these types of cases are relatively rare and are evaluated on a case by case basis.

30. RGV Sector also encounters families comprised of parents who are less than 18 years old. For instance, it is routine for RGV Sector agents to apprehend a family group comprised of an infant alien child accompanied by a mother who is age 17 and a father who is age 18 or older. Because the age 17 mother is considered to be a UAC and, therefore, must be turned over to ORR pursuant to the TVPRA, RGV Sector must make a decision whether to separate the mother from the child and adult male or to process both the mother and child as UACs and the father separately. In this scenario, RGV Sector's general practice has been to process the mother and child together as UACs and, absent any derogatory criminal history, process the adult father for a Notice to Appear and release on his own recognizance.

7

31. When RGV Sector separates an alien parent from an alien child, the Form I-213 (Record of Deportable/Inadmissible Alien) should be annotated with the reasons for the family separation. In addition, Border Patrol records all family units within the e3 system. If a decision to made to separate an alien parent from an alien child, Border Patrol annotates the separation within the family panel in the e3 system. Through e3, Border Patrol notifies ERO whenever a separation occurs. Border Patrol provides separate notification to ORR if the separation results in a child being designated as a UAC.

32. When a UAC is placed with ORR as a result of being separated from an alien parent, RGV Sector provides ORR the generalized reason for the separation (e.g., parent has criminal history, parent is a gang member, parent referred for criminal prosecution, parent hospitalized, etc.). However, RGV Sector does not typically provide ORR detailed criminal history (such as a RAP sheet) for a parent separated from a child.

33. RGV Sector is not responsible for decisions to reunify a separated adult and child; rather, my understanding is that reunification determinations and arrangements are made by ICE and ORR.

Fraudulent Family Unit Claims

34. RGV Sector routinely encounters adults accompanying children who are in possession of fraudulent documents in an effort to pose as biological parents of the children. This raises concerns that the child may be a trafficking victim. Based on information uncovered during CBP custodial interviews, aliens have used various tactics to create fraudulent family units because they are aware based on conversations with friends and family, news broadcasts and promises from smugglers that there is a greater chance of being released into the United States if they cross as a family.

35. Aliens routinely use fraudulent documents, such as falsified birth certificates, to create the appearance of a family unit. Some of the fraudulent birth certificates are valid documents with an improper name or age. Others are counterfeits, tailored specifically for each alien. RGV Sector also includes adults in claimed family units who actually are imposters to legitimate records.

36. When there is suspicion that an adult may be presenting fraudulent documents to pose as a parent or legal guardian, Border Patrol generally seeks the assistance of the consulate and other law enforcement resources in an effort to validate the documentation presented and confirm the true parents or legal guardians of the child. RGV Sector also has a group of agents who conduct interviews and observe the interaction between the adult and child in an effort to determine whether a final

relationship exists. If fraud is confirmed or if the legitimacy of the relationship between the adult and child cannot be validated within a reasonable period of time, RGV Sector will typically transfer the child to ORR. These cases pose an ongoing operational challenge, given that the TVPRA and Flores Settlement Agreement impose time constraints on Border Patrol's holding of juvenile aliens, as well as the fact that Border Patrol facilities are only designed for short-term holding. Additionally, given the limited resources of the U.S. Border Patrol at its facilities and the nature of Border Patrol processing, Border Patrol may not be able to validate the relationship within a reasonable period of time. In contrast, both ORR and ICE have additional resources, and additional time, to determine the validity of a purported parental relationship. Thus, the Border Patrol endeavors to transfer both adult and parent expeditiously to ICE and ORR, where a more in-depth analysis can be performed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is all true and correct to the best of my knowledge and belief.

_____              Date:  __9/4/2019__
Lloyd Easterling
Division Chief
RGV Sector
U.S. Border Patrol