# DEFENDANTS' EXHIBIT 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>            Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>            Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**DECLARATION OF MELLISSA HARPER PROVIDING BACKGROUND INFORMATION ON FAMILY RESIDENTIAL CENTERS** |

**DECLARATION OF MELLISSA HARPER**

I, Mellissa Harper, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, relating to the above-captioned matter, hereby declare as follows:

    1. I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). FOJCs are Deportation

Officers that are especially trained in matters involving juveniles and family units, manage these cases in the field and provide guidance to the field offices regarding these matters. JFRMU oversees and monitors the implementation of nationwide court orders that impact this population, including those in the present case.

2. Responsibilities within my purview include case reviews for family separations and reunifications, data quality for family separation cases, and coordination for family reunifications, as well as the coordination of *Ms. L* data collection and reporting on behalf of ICE, in collaboration with CBP and HHS data teams.

3. Currently, ICE oversees two family residential centers (FRCs): 1) the South Texas Family Residential Center at Dilley (Dilley FRC), located in Dilley, Texas, can house up to 2,400 individuals; 2) the Berks County Residential Center (Berks FRC), in Berks County, Pennsylvania, can house up to 96 individuals.

4. FRCs operate under the ICE Family Residential Standards (FRS). The FRS promote a unique, non-secure, open-movement environment which permits parents and children to live in a dorm-like setting with access to education, recreational opportunities, and health care on site. The FRS were developed with input from medical, psychological, and educational subject matter experts and various organizations including the DHS Office of Civil Rights and Civil Liberties and many non-governmental organizations.

5. Family units are free to move throughout a FRC during daytime hours. Residents have access to libraries, recreational facilities, and playrooms. The focus of a FRC is to have an environment that encourages family health and safety by providing child-friendly amenities and services in an environment that is safe and conducive to healthy family interactions. Families interact with each other throughout the day. FRCs are staffed with contracted Resident Advisors in lieu of security officers. Contracted Resident Advisors are assigned to monitor and supervise the family units. Resident advisors engage with the family units, ensuring successful transition into the family residential center. Resident advisors participate in activities, ensure the parents attend scheduled events, such as medical and legal appointments and assist the residents with needed services.

6. Due to the nature of family detention, with very limited exceptions, ICE does not house criminals at FRCs. Dilley FRC houses non-criminal, non-gang affiliated residents and, on a limited case-by-case basis, may consider accepting residents whose criminal histories include only non-violent misdemeanor convictions. Berks FRC houses non-criminal residents, and, on a limited case-by-case basis, may consider exceptions for individuals with only non-violent minor offenses.

7. Because of the free and open movement of residents in these facilities, housing convicted criminals and/or individuals with a history of unlawful activity

(such as gang members and affiliates) presents an unacceptable risk of harm to the families, especially the children, who reside at the FRCs. Violence, threats and other behavior diminish the safety of residents at the FRC and are simply not tolerated.

8. The safety of residents at a FRC is also a legal obligation under the Flores Settlement Agreement (FSA). Pursuant to the FSA, ICE must ensure the safety and well-being of all minors in its custody, including those housed with their parents at a FRC. In this regard, the FSA requires that, if not released, minors must be placed in a licensed program until release is effectuated or immigration proceedings are concluded. *Id.* ¶ 12A. A "licensed program" is defined under the FSA, in relevant part, as "any program, agency or organization that is licensed by an appropriate State agency." *Id.* ¶ 6.

9. To comply with the FSA, and relevant State laws, FRCs are subject to State standards and State inspections. For example, on November 28, 2018, the Texas Court of Appeals, Third Circuit, issued a decision reinstating the licensing regulations that apply at the Dilley FRC.[1] As a result, the Dilley FRC must comply with all the licensing requirements of the State of Texas. Included in those requirements are strict background check requirements and legal prohibitions on

---

[1] *Texas Dep't of Family and Protective Servs. (DFPS) v. Grassroots Leadership*, Inc., No. 03-18-00261-CV (Tex. Ct. App. 3d Dist. Nov. 28, 2018)

criminal individuals living, visiting or working at such licensed facilities.[2] Similarly the Berks FRC in Pennsylvania is also subject to strict State licensing requirements that limit who can reside in a facility housing minors.[3] In order to verify compliance, State inspectors make regular visits to the facilities in Texas and Pennsylvania. If ICE houses criminals at a FRC, it may affect the possibility of getting a license, which is required under the FSA to ensure the safety and well-being of the children being housed at the FRC. In addition, ICE could incur legal liability if a resident is subjected to abuse or violence by another resident with a known criminal record.

10. In my experience and judgment, individuals who may have participated in gang activity should not be housed at a FRC. Gang members or associates often engage in violent or threatening acts against individuals they perceive as threats. Moreover, gangs, especially those from Central America, are notorious for recruiting children by means of violence or intimidation. ICE cannot risk the chance that a child may be subject to or witness any such activity at a FRC. In addition, many residents at a FRC are seeking asylum because they fear, or have been harmed by, gangs. Housing gang members with this population may potentially re-traumatize the residents.

---

[2] Ch. 745, Subchapter F, Background Checks, of the Texas Minimum Standard for General Residential Operations.
[3] *See* 55 Pa. Code § 3800.51, see also 23 Pa.C.S. §§ 6301-6385.

11. The FRCs are also not a good option for individuals who present a significant flight risk, such as those who are subject to arrest warrants. A FRC is non-secure and has doors that do not lock for purposes of egress, allowing freedom to exit. Residents at a FRC are not escorted under guard and are free to leave and move around. If a resident wishes to leave, employees are instructed to allow them to do so. Consequently, a FRC is not a good option for individuals with active arrest warrants, gang members, and/or their affiliates.

12. Unlike State agencies charged with child protection, ICE does not have the authority to terminate parental rights and is not involved in making such determinations. In fact, ICE also has an obligation to respect parental rights under the ICE Parental Interests Directive. ICE can reunite parents with their children for purposes of removal under this guidance and is willing to reunify parents who have been separated due to criminal history if the Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR), deems reunification is appropriate.

Dated: August 27, 2019

Mellissa Harper
Chief, Juvenile and Family Residential Management Unit
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Washington, D.C.