# DEFENDANTS' EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

Petitioners-Plaintiffs,

vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

Respondents-Defendants.

Case No. 18cv428 DMS MDD

**DECLARATION OF BRIAN HASTINGS**

I, Brian Hastings, hereby state as follows:

1. I am the Chief of the Law Enforcement Operations Directorate within the United States Border Patrol, U.S. Customs and Border Protection. I have been in this role since November 11, 2018. Prior to that time, I was Chief of the Buffalo Sector. During my tenure in Border Patrol I have also held positions such as Border Patrol Agent, Senior Border Patrol Agent, Supervisory Border Patrol Agent, Patrol Agent in Charge, Associate Chief, and Deputy Chief of Law Enforcement Operations. I have been a Border Patrol Agent since April 2, 1995.

2. In my role as the Chief of the Law Enforcement Operations Directorate within Border Patrol, I am responsible for executing the missions of CBP and, in particular, Border Patrol. I oversee the operations of more than 19,000 employees, with operations at 135 Border Patrol Stations and 5 substations within 20 sectors, with 35 immigration checkpoints. I am familiar with Border Patrol's operations at the border, particularly as it relates to the processing of aliens in Border Patrol custody.

1

3. This declaration is based on my personal knowledge and information learned in the course of my official duties and responsibilities.  While I am not an expert in DNA testing, I do have an understanding of Border Patrol's current operations. I provide the current state as it relates to Rapid DNA. I make this declaration in support of Defendant's Opposition to Plaintiff's Motion on Criminal History in the above-captioned case.

4. I am generally familiar with the above captioned case. Moreover, I understand that questions have been raised about why DHS, and CBP in particular, does not perform DNA collection to verify family unit claims in all instances. I provide this declaration to broadly outline some of the current operational difficulties with widely implementing Rapid DNA in the immediate time frames that would be required by a Court order, to be used in all or even many, family unity decisions.  In short, such implementation could impede CBP's mission responsibilities at the border, particularly as it relates to the orderly processing of aliens.

5. It is important to understand the context into which Rapid DNA would be implemented. There are multiple Border Patrol facilities spread out all over the United States borders, both on the northern and southern border. Although the bulk of the facts in this case, as I understand it, relate to issues along the southern border, it is important to recall that Border Patrol also operates along the long and often remote U.S./Canada border. Border Patrol operations take place at remote location, often under harsh conditions and severe time constraints. Border Patrol stations may have little or no warning when large groups, including families, will be encountered.

6. Border Patrol endeavors to keep families in its custody for the limited time necessary to process families to determine alienage, admissibility, where necessary make

2

18cv428 DMS MDD

determinations about the validity of the family unit and then release or turn the family over to ICE. Performing a buccal swab in order to run a Rapid DNA test would be an additional step in the processing currently performed by Border Patrol Agents. Conducting DNA testing would encumber the orderly processing of aliens as it adds time not simply for the swab itself, but also for the time necessary to receive a result.

7. Border Patrol would need to implement procedures to ensure that the biographical information of each alien from which a sample was taken was accurately documented along with any results from Rapid DNA tests. This is particularly important given the large number of aliens potentially being processed in a short time frame at any one Border Patrol Station.

8. CBP does not currently own Rapid DNA machines and my understanding is that DHS does not own the number necessary for a full implementation, even at all Border Patrol stations. CBP did not receive any appropriations specifically for the purchase of Rapid DNA machines and given that the government is currently operating near the end of its fiscal year, limited funding that remains available is being applied toward other mission-critical requirements. The initial purchase of this technology would be at significant cost; it would also impose requirements for upkeep of machines, including maintenance and any upgrades.

9. U.S. Border Patrol's e3 portal, which serves as the CBP portal to the U.S. Immigration and Customs Enforcement's Enforcement Integrated Database and the DHS Automated Biometric Identification System (IDENT) to collect and transmit data related to law enforcement activities does not currently have the capability to track documentation of DNA collection or DNA test results. In addition to updating the capability of the system,

3

CBP would be required to update the Privacy Impact Assessment and other Privacy Act documentation to notify the public of enhancements to e3 that may impact personally identifiable information.

10. In order to ensure that any Rapid DNA testing was done in a manner that was consistent and appropriate, a number of policies and procedures would have to be put in place. Such policies and procedures would need to address how to ensure the privacy interests of those in CBP custody, the safety of officers, and that officers have clear direction on when or if use of force may be appropriate to effectuate such testing.  None of those policies or procedures are currently in place as it relates to Rapid DNA.

11. Even once such policies and procedures were put in place, Border Patrol Agents are not currently trained on DNA collection measures, health and safety precautions, or the appropriate handling of DNA samples for processing.  Further, there are no policies or procedures currently in place addressing the management and disposal of biological waste in this context, particularly given the heightened sensitivity of DNA swabs.

12. Although I make this declaration as the Chief of the Law Enforcement Operations Directorate within Border Patrol, in my position I am generally familiar with the operations of the Office of Field Operations of CBP, which operates at the ports of entry. I am aware that they operate with over 300 ports of entry, many of which are also in remote locations along the norther and southern border. Many of the concerns outlined here would be equally applicable to the port of entry environments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

18cv428 DMS MDD

Brian Hastings
Chief, Law Enforcement Operations Directorate
U.S. Border Patrol
U.S. Customs and Border Protection

Date: September 6, 2019

5

18cv428 DMS MDD