| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 532-4824<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt\*<br>Judy Rabinovitz\*<br>Anand Balakrishnan\*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T:  (212) 549-2660<br>F:  (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T:  (415) 343-1198<br>F:  (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*\*Admitted Pro Hac Vice* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

    Petitioners-Plaintiffs,

vs.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

    Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on September 11, 2019, in anticipation of the status conference scheduled at 1:00 pm on September 20, 2019. The parties submit this joint status report in accordance with the Court's instruction.

I.    **DEFENDANTS' POSITIONS**

  **A. Update on Reunifications for the Original Class Period**

As of September 6, 2019, Defendants have discharged 2,787 of 2,814 possible children of potential class members for the original class period. That is, Defendants have discharged 2,787 of the 2,814 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018. *See* Table 1: Reunification Update. This is an increase of three discharges reported in Table 1 since the JSR filed on August 14, 2019. *See* ECF No. 444. Of the three

1

18cv428 DMS MDD

discharges, one child was reunified with the separated parent,[1] and the other two were discharged under other appropriate circumstances, such as discharges to sponsors.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States, but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,814 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflect approximate numbers on these children maintained by ORR at least as of September 6, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

---

[1] DHS initially separated this child from his father due to safety concerns. An immigration judge later granted the father asylum. As a result, DHS released him into the community, and ORR reunified the child with his father shortly thereafter.

### Table 1: Reunification Update

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2707 | 2814 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 107 | 2680 | 2787 |
| • Children discharged by being reunified with separated parent | 82 | 2086 | 2168 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 25 | 594 | 619 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
| o Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |
| o Parent in other federal, state, or local custody | 0 | 0 | 0 |
| o Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 0 | 4 | 4 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 8 | 8 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 12 | 12 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 1 | 1 |
| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |

## B. Update on Removed Class Members for the Original Class Period

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflect approximate numbers maintained by ORR as of at least September 6, 2019. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| STARTING POPULATION | Children in ORR care with parents presently departed from the U.S. | 14 | Defs. |
| PROCESS 1: Identify & Resolve Safety/Parentage Concerns | Children with no "red flags" for safety or parentage | 14 | Defs. |
| PROCESS 2: Establish Contact with Parents in Country of Origin | Children with parent contact information identified | 14 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 14 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 14 | Defs. |
| PROCESS 3: Determine Parental Intention for Minor | Children for whom ACLU has communicated parental intent for minor: | 12 | Pls. |
| | • Children whose parents waived reunification | 12 | Pls. |
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |

| | | | |
|---|---|---|---|
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | PIs |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

5

18cv428 DMS MDD

## C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[2] | Total number of executed election forms received by the Government | **414 (241 Parents/173 Children)**[3] |
|  | • Number who elect to receive settlement procedures | **254 (139 Parents/115 Children)** |
|  | • Number who waive settlement procedures | **160 (102 Parents/58 Children)**[4] |
| **Interviews** | Total number of class members who received interviews | **152**[5] |
|  | • Parents who received interviews | **80** |
|  | • Children who received interviews | **72** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **68**[6] |

---

[2] The number of election forms reported here is the number received by the government as of August 30, 2019.

[3] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[4] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[5] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[6] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had a Notice to Appear (NTA) from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **67**[7] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
| | Total number of CFI decisions issued for children by USCIS | **73**[8] |
| | • Number of children determined to establish CF by USCIS | **73**[9] |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **6** |
| | • Number of parents granted asylum by USCIS | **1** |
| | • Number of parents referred to immigration court | **1** |
| | • Number of children granted asylum by USCIS | **1**[10] |
| | • Number of children | **3**[11] |

---

[7] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received an NTA based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[8] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[9] This number includes children who received a positive CF determination, children who received an NTA as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[10] This number includes children granted asylum as a dependent on their parent's asylum application.

[11] This number includes children referred/returned to immigration court as the principal

| | | |
|---|---|---|
| | referred/returned to immigration court | |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **102 Parents**[12] |

### D. Parents Who ICE Records Reflect Have Absconded After Being Released

| | | |
|---|---|---|
| **Absconders** | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | 173 |

### E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. On August 30, Defendants filed an update with this Court that described the status of Defendants' efforts of identifying members of the expanded class. *See* ECF No. 455. Since that date, Defendants have produced Batches 4, 5, and 8 to Plaintiffs.

---

asylum applicant or as a dependent on their parent's asylum application.

[12] This number is as of September 2, 2019.

**F. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

   1. *Data Requested by Plaintiffs*

Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR. The parties have discussed amending this schedule so that Defendants will produce these updated reports on a monthly basis. Defendants have made this offer but Plaintiffs have not yet agreed to this proposal.

   2. *Processes and Procedures*

Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018.  The outline also included an overview of the options for separated parents and children to obtain information about reunification options.

On March 4, 2019, Plaintiffs and lawyers for the children's legal service providers sent comments and questions in response to the government's proposals. Defendants reviewed those comments and questions, and the parties met and conferred on April 15, 2019, regarding those inquiries.  On May 28, 2019, Plaintiffs sent additional comments related to Defendants' proposals.  Since receiving those comments, Defendants have held several internal telephonic meetings, and have

spoken with representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures. On July 11, 2019, Defendants provided a comprehensive response to Plaintiffs' comments, and requested that the parties schedule a follow-up meet and confer on these issues once Plaintiffs have reviewed Defendants' response.

On July 18, 2019, the parties met and conferred regarding Defendants' responses. Plaintiffs sent a list of follow up questions, to which Defendants responded on July 26, 2019. Plaintiffs then sent follow-up questions to Defendants' responses on August 6, to which Defendants responded on August 12. Defendants provided some additional information to Plaintiffs on September 4, 2019, and requested that Plaintiffs clarify what information they were seeking with regard to other of their inquiries. Plaintiffs have not yet responded to that latest request. The parties will continue to meet and confer on this issue.

## II.  *MS. L.* PLAINTIFFS' POSITION

### A.  Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

As of the date of this Joint Status Report, Defendants have provided Plaintiffs with seven lists identifying a total of 986 children of expanded class members.[13]  For 853 of these children, the information in the government's

---

[13] The seven lists identify a total of 1,271 unique children, but denote only 986 of them as being children of potential expanded class members, while the remainder are categorized as "exclusions."

production includes one or more phone numbers. The phone numbers provided in the government lists are labeled as numbers for sponsors, for parents, or for both.

The Steering Committee's process begins by calling the provided phone numbers. Where the phone number is for a sponsor and not a separated parent, the Steering Committee attempts to reach the sponsor, then obtain contact information for the parent, and then finally reach the parent.

As of September 11, the Steering Committee has attempted to call the families of 722 of these 853 children, or 85% of families who can be called based on the information the government has provided. Of the 722 families to whom the Steering Committee has attempted outreach, the Steering Committee has been successful in completing phone calls with 542 sponsors and 119 parents.

The Steering Committee is also considering methods of making contact with families for whom no phone contact information has been provided, or for whom the phone contact information is erroneous or unworkable, for the next stage of the process.

B.    **Additional Lists of Children of Expanded Class Members**

On August 30, the government filed three declarations, including a declaration of Commander Jonathan White, attesting to the status of the interagency review process. Commander White stated that HHS file review had generated a total of eleven lists, and that Plaintiffs had been provided four of the eleven as of August 30. ECF 455-1 at ¶ 3. Commander White's declaration further suggested that the seven remaining lists generated by HHS contained names of up to 2,200 additional children of expanded class members that required interagency review. *Id.* ¶ 4.

On September 10, the government provided Plaintiffs with three additional lists. These three lists together contain the names of 20 previously unreported

children of expanded class members.[14]  The September 10 disclosure brings the total number of lists provided to Plaintiffs to seven of the total eleven identified by Commander White.

C. **Steering Committee Progress for June 26 Initial Class**

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. On August 16, the government reported that, as of August 13, 15 children with removed parents remained in ORR custody. The Steering Committee has advised the government that no preference will be forthcoming for one of those parents due to complex and individualized family circumstances, leaving 14 children with removed parents in the operative group. The Steering Committee has delivered preferences for 13 parents of those children.  The parent of the remaining child sought and was granted the opportunity to return to the United States pursuant to the Court's September 4 Order and, as the Steering Committee has previously advised the government and the Court, delivery of a parental reunification election in this case will therefore be delayed.

D. **Children Whose Parents Have Submitted Preferences and Are Still Detained**

The Steering Committee continues to meet and confer with the government about children who are still in ORR after the Steering Committee has submitted a final reunification election.

E. **Relief for Deported Parents**

On September 4, 2019, the Court granted, in part, the Plaintiffs' Motion seeking relief for deported parents, so as to provide relief for eleven separated parents.  Plaintiffs have written to Defendants to ascertain (1) what process the

---

[14] While the lists provided on September 10 included the names of 85 children of expanded class members, the names of 65 of these children had been provided to Plaintiffs in the government's prior lists.

agencies will make available to the parents to travel to the United States (at their own expense) and (2) what process the agencies will provide upon the parents' return, and are awaiting a response.

Plaintiffs are also reviewing the Courts' order with individual attorneys for the deported parents in order to determine if any clarification of the order may be necessary.

**F.    Information Sharing Regarding Continuing Separations**

Since the last status conference on August 16, Defendants have provided one updated list tracking continuing separations of families. Defendants provided that list on August 20. The last separation included on the August 20 list was dated July 20.

By the time Plaintiffs received the information, it was already one month old, and its utility to families and their lawyers seeking reunification, diminished. Plaintiffs are requesting that lists of continued separation be provided on a more regular basis (every week).

### III. *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

One issue that continues to remain unresolved—and which was discussed at the last status conference—is a discrepancy in the statistics of settlement implementation. As the Court is aware, the Government has included in the ongoing status reports certain statistics related to implementation of the *MMM/Dora/Ms. L* settlement agreement, including the total number of executed settlement forms provided to the Government and the number of forms in which class members elected to receive settlement procedures. Class counsel has submitted forms for more class members than are being reported by the Government. After the last status conference, class counsel again offered to compare their internal list of forms to the Government's list to attempt to identify the cause of the discrepancy. At the Government's request, class counsel instead provided their then-current list of forms to the Government, which the Government indicated it would compare with its records. The Government indicated this week that it will provide the results of its review soon.

Class counsel would like to discuss this issue with the Court at the status conference, hopefully to report on a resolution of the issue, or alternatively, to discuss setting a plan for resolving it. Below are the statistics, as of August 12, 2019, that class counsel are able to report based on their internal records:

| Settlement Process | Description | Number |
|---|---|---|
| Election Forms | Total number of executed election forms sent to the Government | 436 (260 parents; 176 children) |
| | • Number who elected to receive settlement procedures | 266 invoke (150 parents; 116 children) |
| | • Number who waived settlement procedures | 170 waive (110 parents; 60 children) |

15

18cv428 DMS MDD

| | | |
|---|---|---|
| 1 | DATED: September 11, 2019 | Respectfully submitted, |
| 2 | | /s/ Lee Gelernt |
| 3 | | Lee Gelernt* |
| 4 | | Judy Rabinovitz* |
| | | Anand Balakrishnan* |
| 5 | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 6 | | 125 Broad St., 18th Floor |
| 7 | | New York, NY 10004 |
| | | T:  (212) 549-2660 |
| 8 | | F:  (212) 549-2654 |
| 9 | | *lgelernt@aclu.org* |
| | | *jrabinovitz@aclu.org* |
| 10 | | *abalakrishnan@aclu.org* |
| 11 | | |
| 12 | | Bardis Vakili (SBN 247783) |
| 13 | | ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES |
| | | P.O. Box 87131 |
| 14 | | San Diego, CA 92138-7131 |
| 15 | | T: (619) 398-4485 |
| 16 | | F: (619) 232-0036 |
| | | *bvakili@aclusandiego.org* |
| 17 | | |
| 18 | | Stephen B. Kang (SBN 292280) |
| | | Spencer E. Amdur (SBN 320069) |
| 19 | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 20 | | 39 Drumm Street |
| 21 | | San Francisco, CA 94111 |
| 22 | | T:  (415) 343-1198 |
| | | F:  (415) 395-0950 |
| 23 | | *skang@aclu.org* |
| 24 | | *samdur@aclu.org* |
| 25 | | *Attorneys for Petitioners-Plaintiffs* |
| | | *\*Admitted Pro Hac Vice* |
| 26 | | |
| 27 | | |
| 28 | | |

|   |   |
|---|---|
| 1 | JOSEPH H. HUNT |
|   | Assistant Attorney General |
| 2 | SCOTT G. STEWART |
| 3 | Deputy Assistant Attorney General |
|   | WILLIAM C. PEACHEY |
| 4 | Director |
|   | WILLIAM C. SILVIS |
| 5 | Assistant Director |
| 6 |   |
|   | */s/ Sarah B. Fabian* |
| 7 | SARAH B. FABIAN |
|   | Senior Litigation Counsel |
| 8 | NICOLE N. MURLEY |
| 9 | Senior Litigation Counsel |
|   | Office of Immigration Litigation |
| 10 | Civil Division |
| 11 | U.S. Department of Justice |
|   | P.O. Box 868, Ben Franklin Station |
| 12 | Washington, DC 20044 |
| 13 | (202) 532-4824 |
|   | (202) 616-8962 (facsimile) |
| 14 | sarah.b.fabian@usdoj.gov |
| 15 |   |
| 16 | ADAM L. BRAVERMAN |
|   | United States Attorney |
| 17 | SAMUEL W. BETTWY |
| 18 | Assistant U.S. Attorney |
| 19 | *Attorneys for Respondents-Defendants* |