UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____
                                        )
MS. L., ET AL.,                         )
                                        )   CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,     )
                                        )
VS.                                     )
                                        )
                                        )
                                        )
U.S. IMMIGRATION AND CUSTOMS            )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,            )FRIDAY, OCTOBER 18, 2019
                                        )   1:00 P.M. CALENDAR
            RESPONDENTS-DEFENDANTS.     )
----------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE


REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

FOR PLAINTIFF:                    LEE GELERNT, ESQ.
                                 ACLU IMMIGRANT RIGHTS PROJECT
                                 125 BROAD STREET 18TH FLOOR
                                 NEW YORK, NEW YORK 10004


FOR DEFENDANT:                   SCOTT STEWART, ESQ.
(TELEPHONICALLY)                 SARAH B. FABIAN, ESQ.
                                 U.S. DEPARTMENT OF JUSTICE
                                 OFFICE OF IMMIGRATION LITIGATION
                                 P.O. BOX 868
                                 BEN FRANKLIN STATION
                                 WASHINGTON, DC 20044


ALSO APPEARING:                  COMMANDER JONATHAN WHITE
                                 ZACHARY BEST, ESQ.
                                 STEVEN HERZOG,ESQ.
                                 CATHERINE WEISS, ESQ.
                                 VICTOR SUH,ESQ.

1   **SAN DIEGO, CALIFORNIA – FRIDAY, OCTOBER 18, 2019 – 1:10 P.M.**

2                                  *   *   *

3              **THE CLERK:**  NO. 23 ON CALENDAR, CASE NO. 18CV0428,

4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5   STATUS CONFERENCE.

6              **THE COURT:**  GOOD AFTERNOON.

7              I HAVE APPEARANCES INDICATED FOR MR. GELERNT, MS. L.

8   MS. SARAH FABIAN AND SCOTT STEWART FOR THE GOVERNMENT.  ON

9   DORA, MR. WILSON BARMEYER.  ON MMM, MR. ZACHARY BEST.  I HAVE

10  COMMANDER WHITE ON THE LINE.  STEVEN HERZOG FROM THE STEERING

11  COMMITTEE.  CATHERINE WEISS FOR OBJECTORS.  AND VICTOR SUH.

12             WHY DON'T WE RUN THROUGH THE JOINT STATUS REPORT.

13  THANK YOU FOR THAT FILING.

14             IT APPEARS, AS TO THE ORIGINAL CLASS, EVERYTHING IS

15  IN ORDER.  ALL ARE ACCOUNTED FOR, EXCEPT FOR THE ONE

16  INDIVIDUAL WE HAVE DISCUSSED IN THE PAST.

17             LET ME TURN TO PAGE 4.  THERE IS A REFERENCE TO 13

18  REMOVED CLASS MEMBERS FROM THE ORIGINAL CLASS PERIOD.

19             IS THIS THE 13 OF THE 471 PARENTS WHO WERE REMOVED

20  WITHOUT THEIR CHILDREN?  IS THAT WHAT THIS IS REFERENCING?

21             **MR. STEWART:**  I BELIEVE THAT IS RIGHT, YOUR HONOR.

22  THAT'S THE FOOTNOTE –– THE REMAINING DOZEN OR SO FOLKS WHO ARE

23  IN THAT PROCESS.

24             **THE COURT:**  OKAY.  THEN, OF THAT, 11 ARE ACCOUNTED

25  FOR, PARENTS HAVE WAIVED REUNIFICATION.


                              OCTOBER 18, 2019

1          ONE CHILD, IT IS INDICATED THAT THE PARENTS COULD

2     NOT OBTAIN PARENTAL PREFERENCE.

3          IS THIS THE CASE WE KEEP TALKING ABOUT, MR. HERZOG,

4     WHERE THE COMMITTEE HAS LOCATED THE OTHER PARENT, BUT THERE IS

5     STILL NOT A DECISION THAT HAS BEEN?  OR CAN YOU SPEAK TO THAT?

6          **MR. HERZOG:**  YES, THAT'S THE SAME CASE, YOUR HONOR.

7     AND I THINK THAT, YOU KNOW, THAT CASE STANDS WHERE IT STANDS.

8     AND I THINK, YOU KNOW, WE ARE COMFORTABLE WHERE IT STANDS

9     RIGHT NOW.

10         **THE COURT:**  ALL RIGHT.  SO I AM CONTENT TO LEAVE

11    THIS AREA.  THE ORIGINAL CLASS, EVERYTHING APPEARS TO BE IN

12    ORDER, CONSISTENT WITH OUR PRIOR DISCUSSIONS.

13         AS TO THE MMM CLASS, EVERYTHING ALSO APPEARS TO BE

14    IN ORDER, AND COUNSEL ARE WORKING THROUGH THAT.

15         ON THE MATTERS SET FORTH AT PAGES 10 AND 11, AND

16    SPECIFICALLY THE MEET AND CONFER ON THE PROCESSES AND

17    PROCEDURES FOR TRACKING AND REUNIFYING, THERE HAS BEEN A LOT

18    OF BACK AND FORTH BETWEEN THE PARTIES AND IT APPEARS THAT

19    PROGRESS IS BEING MADE.

20         MR. GELERNT, WHAT'S YOUR VIEW, ARE WE CLOSE?

21         **MR. GELERNT:**  YES, YOUR HONOR.  I THINK PROGRESS IS

22    BEING MADE.

23         WE WOULD LIKE TO GET BACK TO THE GOVERNMENT ON THE

24    TEAR SHEET THEY HAVE PROVIDED TO US AND A FEW OTHER THINGS

25    THAT WE ARE SEEING IN PRACTICE.  AND THEN I THINK MAYBE ONE


                          OCTOBER 18, 2019

1   MORE BACK AND FORTH, AND WE WILL BE ABLE TO REPORT TO YOU ON

2   SORT OF WHERE WE STAND.  BUT I THINK A LITTLE EXTRA TIME WOULD

3   BE HELPFUL FROM OUR STANDPOINT.

4             **THE COURT:**  ALL RIGHT.  ARE YOU OPTIMISTIC?

5             **MR. GELERNT:**  I AM OPTIMISTIC ABOUT CERTAIN THINGS.

6   WE MAY HIT A STALEMATE ON CERTAIN THINGS BUT I DON'T WANT TO

7   GIVE UP HOPE NOW.  BUT I DO NOT THINK WE WILL HAVE TO BRING

8   ALL OF THE ISSUES TO YOU.

9             **THE COURT:**  OKAY.  THANK YOU.

10            I AM CONTENT TO LEAVE THAT FOR NOW AND CONTINUE TO

11  URGE THE PARTIES TO MEET IN EARNEST.  AND WHAT WOULD BE IDEAL

12  IS SOME KIND OF AN AGREEMENT BETWEEN THE PARTIES ON ALL OF THE

13  ISSUES, OR AT LEAST A SIGNIFICANT NUMBER OF THE ISSUES.  AND I

14  WILL AWAIT THE NEXT STATUS REPORT IN THAT REGARD.

15            LET'S GO AHEAD, WHILE WE HAVE COMMANDER WHITE ON THE

16  LINE.

17            COMMANDER WHITE, CAN YOU GIVE US A STATUS OF WHERE

18  WE ARE ON PHASE TWO, THE ENLARGED CLASS.

19            **COMMANDER WHITE:**  YES, YOUR HONOR.  I WOULD BE GLAD

20  TO.

21            FIRST OF ALL, I THINK THE BOTTOM LINE, UP FRONT

22  VERSION IS THAT WITH ONE WEEK REMAINING, THAT IS SEVEN

23  CALENDAR DAYS REMAINING BEFORE THE DEADLINE, I BELIEVE WE WILL

24  MEET THAT DEADLINE TO PROVIDE AN ACCOUNTING OF SUBSTANTIALLY

25  ALL OF THE POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS, AS

OCTOBER 18, 2019

1   WELL AS CHILDREN WHO WERE SEPARATED DURING THE EXPANSION CLASS

2   PERIOD BUT ARE COVERED BY AN APPLICABLE EXCLUSION.

3           THAT'S THE BOTTOM LINE.  LET ME GIVE A LITTLE MORE

4   DETAIL THAN THAT.

5           AS I THINK EVERYONE WILL RECALL, THERE ARE 11 DATA

6   SETS OF CHILDREN, THE 11 BATCHES THAT ARE -- THAT HAVE BEEN IN

7   THE INTERAGENCY PROCESS.  NINE OF THOSE 11 BATCHES HAVE

8   ALREADY BEEN PROVIDED TO THE PLAINTIFFS' COUNSEL.  TWO REMAIN.

9           ONE OF THOSE, WHICH ARE OUR -- WHAT WE CALL BATCH 10

10  AND BATCH 11.  I THINK -- AND BOTH OF THOSE ARE IN THE LAST

11  STAGE OF THE PRODUCTION PROCESS, THAT IS TO SAY THE

12  INTERAGENCY CLEARANCE PROCESS.  ALL OF THE -- THE INITIAL HHS

13  CASE FILE REVIEW, THE SUBSEQUENT CBP RESEARCH AND CASE FILE

14  REVIEW, THE SUBSEQUENT ICE CASE FILE REVIEW, AND THEN THE LAST

15  HHS DATA SEARCH PROCESS WHICH FOCUSES ON CONTACT INFORMATION

16  FOR PARENTS AND INFORMATION ON SPONSORS, ALL OF THAT HAS BEEN

17  COMPLETED ON ALL OF THE CHILDREN.  THESE LAST FEW DAYS, THAT

18  IS IN THE INTERAGENCY CLEARANCE PROCESS.

19          I BELIEVE THAT OF THOSE TWO, BATCH 10 WILL GO TO THE

20  PLAINTIFFS I BELIEVE WITHIN 24 HOURS, BARRING ANYTHING

21  UNFORESEEN, AND THAT BATCH 11 WILL FOLLOW IN THE NEXT TWO

22  DAYS, SO THAT ALL OF THAT WILL HAVE GONE TO THE PLAINTIFFS BY

23  THE COURT'S DEADLINE, ALTHOUGH IT IS POSSIBLE THAT THE LAST

24  DATA SET MIGHT COME CLOSE TO THAT DEADLINE OF SEVEN DAYS AWAY.

25          SO AS A REMINDER, FOR ALL OF THE DATA THAT HAS

OCTOBER 18, 2019

1  ALREADY BEEN PROVIDED TO THE PLAINTIFFS, THAT IS THE FIRST
2  NINE BATCHES, THERE WERE A TOTAL, BY MY COUNT ANYWAY, OF 1,003
3  UNIQUE POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS AND 359
4  SEPARATED CHILDREN OF PARENTS WHO WERE EXCLUDED FROM THE
5  CLASS.

6         THOSE NUMBERS WILL GROW WITH THESE LAST TWO DATA
7  SETS.  AND, AS A REMINDER, THOSE LAST TWO DATA SETS ARE BOTH
8  BIG, 915 AND 990 KIDS IN THE INITIAL HHS PRODUCED LIST,
9  ALTHOUGH MUCH LESS NOW.

10         SO I WOULD BE GLAD TO ANSWER ANY QUESTIONS, BUT THAT
11  IS WHERE WE ARE.  THIS WILL BE, I BELIEVE, THE LAST WEEK THAT
12  WE ARE ENGAGED IN THIS PROCESS OF IDENTIFICATION.

13         **THE COURT:**  FOR BATCHES 1 THROUGH 9, FROM YOUR
14  PROSPECTIVE, COMMANDER WHITE, THERE ARE 1,003 CHILDREN THAT
15  FALL WITHIN THE CLASS, PARENTS FALL WITHIN THE CLASS AND ARE
16  SUBJECT TO IDENTIFICATION AND REUNIFICATION?

17         **COMMANDER WHITE:**  THAT'S MY COUNT, YES, YOUR HONOR.

18         **THE COURT:**  AND 359 WOULD BE CHILDREN OF PARENTS WHO
19  ARE EXCLUDED FROM THE CLASS.

20         **COMMANDER WHITE:**  CORRECT, YOUR HONOR.  THAT IS TRUE
21  BY MY COUNT.  THOSE WOULD BE UNIQUE CASES.  A NUMBER OF
22  CHILDREN APPEARED IN MULTIPLE DATA SETS, SO THAT IS THE NUMBER
23  AFTER DE-DUPLICATION, YES, SIR.

24         **THE COURT:**  AND THEN FOR BATCHES 10 AND 11, WHAT'S
25  THE ESTIMATED NUMBER OF CHILDREN IN THOSE TWO BATCHES?


                     OCTOBER 18, 2019

1            **COMMANDER WHITE:**  IT IS STILL IN THE INTERAGENCY
2    CLEARANCE SO I CAN ONLY -- ONLY ESTIMATE BECAUSE DURING THAT
3    PROCESS WE GO BACK AND FORTH ON WHETHER A PARTICULAR CHILD
4    BELONGS IN ONE BUCKET OR THE OTHER.

5            I BELIEVE THAT THE DE-DUPLICATED TOTAL, AFTER ALL
6    THIS COMES THROUGH, WILL BE ON THE ORDER OF 1,250 CHILDREN,
7    VERY CLOSE TO THAT NUMBER.  THAT IS WHAT I BELIEVE WILL BE THE
8    TOTAL FROM ALL 11 LISTS.  BUT WE WON'T KNOW FOR SURE UNTIL WE
9    ARE FINISHED PROVIDING.  I BELIEVE THAT -- I HAVE MODERATE
10   CONFIDENCE THAT THAT IS THE RIGHT ORDER OF MAGNITUDE.

11           **THE COURT:**  AND SO FOR BATCHES 10 AND 11 YOU ARE
12   ESTIMATING APPROXIMATELY 250 ADDITIONAL CHILDREN?

13           **COMMANDER WHITE:**  BY MY COUNT, BECAUSE A NUMBER OF
14   CHILDREN THAT WERE SEEN ON THOSE LISTS APPEAR TO BE DUPLICATES
15   FROM EARLIER DATA SETS.

16           BUT AGAIN, I GIVE THIS ONLY SORT OF MODERATE
17   CONFIDENCE BECAUSE IN THE INTERAGENCY CLEARANCE PROCESS THINGS
18   ARE CAUGHT.  AND ALSO THAT'S MY OWN DE-DUPLICATION PROCESS,
19   AND SOMETIMES I GET THAT WRONG.  BUT THAT IS MY -- THAT WOULD
20   BE MY ANTICIPATED ESTIMATE NOW.

21           **THE COURT:**  OKAY.  SO, TO BE CLEAR, THE TOTAL
22   ESTIMATE FOR ALL 11 BATCHES WOULD BE APPROXIMATELY 1,250
23   CHILDREN.

24           **COMMANDER WHITE:**  YES, YOUR HONOR.  ALTHOUGH, AGAIN,
25   I JUST WANT TO MAKE ROOM TO HAVE THAT -- THAT NUMBER CHANGE IN

OCTOBER 18, 2019

1    A WEEK AND IT NOT BE THAT I ERRED OR MISLED ANYONE TODAY.  BUT

2    THAT IS CERTAINLY MY ESTIMATE, YES, SIR.

3              **THE COURT:**  THANK YOU FOR THAT ESTIMATE.  IT IS MUCH

4    APPRECIATED.

5              WELL, PERHAPS I CAN START WITH MR. GELERNT.  DO YOU

6    HAVE ANY QUESTIONS OF COMMANDER WHITE?

7              **MR. GELERNT:**  NO, YOUR HONOR.  I THINK YOU CLEARED

8    IT UP.

9              I THINK I WAS CONFUSED INITIALLY ABOUT WHETHER THE

10   ADDITIONAL 1,200 WAS JUST FROM LISTS 10 AND 11, BUT I GATHER

11   THAT COMMANDER WHITE IS SAYING THAT LISTS 10 AND 11 ARE ONLY

12   GOING TO PRODUCE BETWEEN 200 AND 300 UNIQUE CHILDREN.

13             IS THAT CORRECT, COMMANDER WHITE?

14             **COMMANDER WHITE:**  YES, SIR.  SO HERE IS WHAT -- I

15   ESTIMATE THAT THOSE TWO LISTS WILL TOGETHER BE 886 POSSIBLE

16   CHILDREN OF POTENTIAL CLASS MEMBERS, BUT THE MAJORITY OF THOSE

17   I BELIEVE ARE DUPLICATES WHO APPEARED ON EARLIER LISTS AS

18   WELL.  AS YOU WILL RECALL, ALL OF THE DATA SETS WERE PRODUCED

19   BY A VARIETY OF SOURCE METHODS.

20             **MR. GELERNT:**  OKAY.  YOU HAD SAID EACH 10 AND 11 ARE

21   ROUGHLY 900-PLUS.  HOW DID THAT REDUCE TO 800?  THAT IS 1800

22   REDUCED TO 800?

23             **COMMANDER WHITE:**  BECAUSE MANY OF THE -- FIRST OF

24   ALL, BECAUSE THAT DID NOT INCLUDE THOSE WHO ARE EXCLUSIONS.

25   BUT EVEN MORE IMPORTANT THAN THE EXCLUSIONS ARE THE FALSE

OCTOBER 18, 2019

10

1   POSITIVES, AND THERE WERE MANY -- THERE ARE MANY FALSE

2   POSITIVES.

3            WE WERE VERY, VERY SYSTEMATIC IN ANY OF -- AT THE

4   INITIAL STAGE OF THE HHS CASE FILE REVIEW STAGE, THAT ANY

5   POSSIBLE INDICATION OF SEPARATION WHATSOEVER WE PUSHED THAT

6   KID'S RECORD INTO THE PROCESS.  AND MANY OF THEM, WHEN CBP

7   THEN LOOKED AT THE CIRCUMSTANCES OF THEIR APPREHENSION, THEY

8   HAD NOT BEEN SEPARATED FROM A PARENT.  THEY WERE PERHAPS

9   APPREHENDED WITH A NONPARENT ADULT OR BY THEMSELVES.

10           SO YOU ARE SEEING, YOU KNOW, THE MATHEMATICS HERE

11  ARE PRODUCED BY FALSE POSITIVES IN WHICH CHILDREN WERE NEVER

12  SEPARATED FROM A PARENT, AND EXCLUSIONS, AND THEN

13  DE-DUPLICATION.

14           **MR. GELERNT:**  AND THE 200-PLUS INCLUDES INDIVIDUALS

15  WHO YOU BELIEVE WERE EXCLUDED FROM THE CLASS, OR THOSE ARE

16  NONEXCLUDED UNIQUE CHILDREN.

17           **COMMANDER WHITE:**  NONEXCLUDED UNIQUE.  THOSE ARE

18  POSSIBLE CHILDREN OF POTENTIAL CLASS MEMBERS, NOT CHILDREN

19  WHOSE PARENTS ARE COVERED BY AN EXCLUSION.

20           **MR. GELERNT:**  OKAY.  SO THE LIST WE ARE GOING TO

21  ACTUALLY GET, SINCE YOU PROVIDE US WITH BOTH THOSE WHO ARE

22  EXCLUDED AND THOSE WHO ARE NONEXCLUDED, THE LIST WE WILL GET

23  FROM 9 AND 10 WILL BE OVER 200-PLUS, BUT WHEN YOU ADD ON THE

24  EXCLUDED PARENTS IT WILL BE LARGER THAN THAT.  OR AM I

25  MISUNDERSTANDING?


                         OCTOBER 18, 2019

1    **COMMANDER WHITE:**  NO, I DON'T THINK YOU ARE

2    MISUNDERSTANDING, I THINK THAT IS RIGHT.  AS IN ALL OF THE

3    PREVIOUS ONES YOU WILL HAVE ONE TAB THAT SHOWS POSSIBLE

4    CHILDREN OF POTENTIAL CLASS MEMBERS, AND ANOTHER TAB WHICH

5    SHOWS EXCLUSION CASES.  AND THERE WILL BE HUNDREDS OF KIDS IN

6    EACH OF THOSE BUCKETS.

7    **MR. GELERNT:**  OKAY.  THAT'S HELPFUL.

8    AND THE ONLY OTHER QUESTION I HAD WAS, THE FALSE

9    POSITIVES, THAT SEEMS LIKE A LOT OF FALSE POSITIVES OUT OF

10   1800.  HOW DO YOU GO ABOUT FIGURING OUT THAT IT IS A FALSE

11   POSITIVE?

12   I MEAN, IF YOU ARE ASKING CBP, WELL, THEY CAME WITH

13   AN UNCLE.  DO YOU GO BACK AND SEE WHETHER THE UNCLE CLAIMED TO

14   BE THE PARENT BUT THEY DISBELIEVED THEM?  BECAUSE, AS YOU

15   KNOW, WE HAVE HAD CASES WHERE THE DNA SHOWED THAT IT WAS IN

16   FACT THE PARENT.  HOW IS THAT PROCESS OF SHOWING THAT THERE

17   WERE FALSE POSITIVES DONE?

18   **COMMANDER WHITE:**  FOR SOME OF THAT I MAY NEED TO --

19   I WOULD NEED TO DEFER TO MY CBP OPERATIONAL COLLEAGUE.  BUT I

20   AM ACTUALLY NOT TROUBLED BY THE DATA, THE HIGH RATE OF FALSE

21   POSITIVES.  IT IS, TO ME, ACTUALLY ENCOURAGING.  BECAUSE I WAS

22   SO UNAMBIGUOUS, I THINK, TO MY OWN TEAM THAT WHAT COULDN'T

23   HAPPEN WAS MISSING A KID AT THE HHS REVIEW STAGE, BECAUSE THEN

24   THAT KID WOULD JUST NEVER GET THEIR DAY.  RIGHT?  YOU KNOW, NO

25   ONE WOULD EVER HEAR FROM THEM, THEY WOULD NEVER BE

OCTOBER 18, 2019

12

 1   REPRESENTED, THAT KID WOULD NEVER HAVE THEIR DAY IN COURT.  SO
 2   I EXPECT THAT WE FOUND A BUNCH OF KIDS WHO WERE NEVER
 3   SEPARATED AND NEVER APPREHENDED WITH AN ADULT AT ALL.
 4          BUT THE PROCESSES USED BY CBP TO EITHER FALSIFY --
 5   TO VERIFY AS TRUE OR FALSE OUR PRELIMINARY INDICATION OF
 6   SEPARATION, I REALLY HAVE TO DEFER TO CBP COLLEAGUES ABOUT HOW
 7   THEY DO THAT WITH REFERENCE TO THE APPREHENSION -- THE
 8   APPREHENSION DOCUMENTS.
 9          **MR. GELERNT:**  OKAY.  THANK YOU, COMMANDER.
10          **THE COURT:**  OKAY.  THANK YOU, MR. GELERNT.
11          AND THEN, I TAKE IT, AS TO THE EXCLUSIONS, MR.
12   GELERNT, YOU ARE GOING TO BE REVIEWING THAT LIST.  AND THEN
13   MEETING AND CONFERRING, AS NECESSARY, WITH MS. FABIAN AND MR.
14   STEWART IF THERE IS ANY DISAGREEMENT, CORRECT?
15          **MR. GELERNT:**  YES, YOUR HONOR.  AND SO I THINK THERE
16   WILL BE SORT OF TWO PARTS TO THAT REVIEW.  ONE WILL BE A
17   REVIEW WHERE WE BELIEVE THAT EVEN UNDER THE GOVERNMENT'S OWN
18   GUIDELINES THAT PARENTS SHOULD NOT HAVE BEEN SEPARATED.  AND
19   THEN THE OTHER WILL OBVIOUSLY DEPEND ON HOW THIS COURT
20   RESOLVES THAT ISSUE, BECAUSE WE CERTAINLY THINK THAT LOTS OF
21   THE PARENTS HAVE MINOR CONVICTIONS, INCLUDING MANY, MANY OVER
22   JUST 1326 IN THE ORIGINAL BATCH WE HAVE GOTTEN, LISTS 1
23   THROUGH 9.  SO I THINK THERE IS GOING TO BE TWO PARTS.
24          AGAIN, WE WILL TELL THE GOVERNMENT WHERE WE DON'T
25   THINK THE SEPARATION, THE CRIMINAL CONVICTION EVEN RISES TO

OCTOBER 18, 2019

13

 1   THE LEVEL OF THEIR OWN STANDARDS.  BUT THEN, OBVIOUSLY, WE ARE

 2   ASKING THE COURT TO CHANGE THE STANDARD THAT THE GOVERNMENT

 3   HAS PROPOSED.  AND SO THEN WE WOULD BE GOING BACK ON THOSE

 4   CASES, JUST LIKE WE ARE WITH THE ONGOING SEPARATIONS.

 5            **THE COURT:**  YES.  OKAY.  THANK YOU.

 6            MR. HERZOG, CAN YOU GIVE US A REPORT ON THE GOOD

 7   WORK THAT YOU AND YOUR ATTORNEYS ARE DOING?  YOU HAVE SET OUT

 8   HERE 868 CHILDREN THAT ARE THE INITIAL FOCUS.  YOU HAVE MADE

 9   OVER 4200 PHONE CALLS.  YOU HAVE REACHED A SIGNIFICANT NUMBER.

10   CAN YOU GIVE US A REPORT ON THAT, AS WELL AS THE

11   BOOTS-ON-THE-GROUND EFFORTS IN CENTRAL AMERICA.

12            **MR. HERZOG:**  SURE.  OF COURSE, YOUR HONOR.

13            YEAH, AS YOU INDICATED, WE HAVE MADE MORE THAN 4200

14   CALLS AT THIS POINT TO SPONSORS AND PARENTS.

15            WHEN WE FIRST START OFF THE INFORMATION WE HAVE, THE

16   PHONE NUMBERS WE HAVE ARE FOR SPONSORS.  SO WE REACH OUT TO

17   THE SPONSORS.  WE SUCCESSFULLY CONTACTED, I THINK AT THIS

18   POINT -- AND THE NUMBERS CHANGE ALL THE TIME, SO THESE ARE

19   APPROXIMATE.  BUT APPROXIMATELY 436 SPONSORS.

20            AND THOSE SPONSORS THEN EITHER DO OR DO NOT HAVE

21   INFORMATION AS TO HOW TO CONTACT THE PARENTS.  I THINK MANY OF

22   THEM DO, AND SOME DO NOT.

23            WHERE THEY DO WE REACH OUT, YOU KNOW, TO THE PARENT

24   WITH THE INFORMATION PROVIDED TO THE SPONSOR -- BY THE

25   SPONSOR.  AND WE HAVE CONTACTED, I THINK, APPROXIMATELY 225

OCTOBER 18, 2019

1    PARENTS AT THIS POINT IN TIME, AND WE ARE CONTINUING TO DO
2    THIS, OF COURSE.

3            YOU KNOW, SOMETIMES THE SPONSOR DOESN'T HAVE CONTACT
4    INFORMATION FOR THE PARENT.  SOMETIMES WE ARE UNABLE TO REACH
5    THE SPONSOR.  AND THEN FOR A NUMBER OF CASES WE HAVE NO PHONE
6    NUMBER AT ALL FOR A SPONSOR OR A PARENT, EITHER ONE.

7            SO IN THOSE CASES WE ARE TRYING TO FIND THE PARENTS,
8    THE MAJORITY OF WHOM ARE IN COUNTRIES OF ORIGIN, ALTHOUGH SOME
9    OF THEM ARE IN THE UNITED STATES.  SO WE ARE TRYING TO FIND
10   THE PARENTS ON THE GROUND IN THE COUNTRIES OF ORIGIN.  OUR NGO
11   PARTNERS ARE WORKING WITH US TO DO THAT, YOU KNOW.

12           IT IS A LOT OF WORK AND IT IS A LOT OF WORK ON THE
13   GROUND, AND WE HAVE LOCATED AT THIS POINT, I THINK, 23 PARENTS
14   ON THE GROUND IN COUNTRIES OF ORIGIN.  WE ARE, YOU KNOW,
15   ORGANIZING TO FIND PARENTS IN THE UNITED STATES AS WELL WITH
16   OTHER NGO'S, I THINK WE ARE GOING TO BE ORGANIZING THAT
17   EFFORT, PROBABLY EVEN MAYBE ENLISTING THE HELP OF NEW
18   ORGANIZATIONS TO HELP US THERE.

19           BUT WE ARE GOING THROUGH TRYING TO FIND, AND THEY
20   ARE TRYING TO FIND, ALL OF THESE PARENTS FOR WHOM WE DON'T
21   HAVE CONTACT INFORMATION.

22           AND THAT IS WHAT WE ARE DOING.  WE ARE WORKING AT
23   IT.  IT IS SLOW AND I THINK ARDUOUS WORK, ESPECIALLY ONCE WE
24   GET ON THE GROUND.  BUT INCLUDING ON THE PHONE CALLS, WE MAKE
25   MANY, MANY PHONE CALLS.  BUT WE ARE MAKING PROGRESS.  WE ARE


                          OCTOBER 18, 2019

1  GOING FORWARD.

2          **THE COURT:**  YOU HAVE REACHED 436 SPONSORS, AND THEN

3  FROM THAT YOU WERE ABLE TO CONTACT 225 PARENTS.  IS THAT

4  CORRECT?

5          **MR. HERZOG:**  YES, THAT'S RIGHT.

6          **THE COURT:**  AND HOW IS THIS BEING DONE?  ARE

7  ATTORNEYS FROM YOUR OFFICE -- HOW MANY -- CAN YOU GIVE ME AN

8  IDEA OF HOW MANY ATTORNEYS YOU HAVE INVOLVED MAKING THESE

9  KINDS OF CALLS AND ENGAGED IN THIS EFFORT?

10          **MR. HERZOG:**  IT VARIES OVER TIME.  IT HAS BEEN A

11  WHOLE TEAM OF ATTORNEYS, YOU KNOW.  PEOPLE DO JOIN AND GO, BUT

12  I THINK IT IS NEARLY 100 ATTORNEYS AT MY FIRM, PAUL WEISS,

13  THAT HAVE BEEN MAKING CALLS.

14          WE HAVE ALSO HAD LAWYERS FROM KIND -- FROM OUR NGO

15  PARTNERS KIND, WRC, WOMAN'S REFUGEE COMMISSION, HAVE MADE SOME

16  CALLS.  I THINK A MAJORITY HAVE BEEN MADE BY OUR LAWYERS, BUT

17  THEY HAVE CONTRIBUTED SUBSTANTIALLY AS WELL.

18          SO WE HAVE TEAMS.  WE ORGANIZED TEAMS OF LAWYERS,

19  THERE ARE TEAM LEADERS OF THE TEAMS.  AND THEN THERE ARE THE

20  PEOPLE -- A COUPLE OF PEOPLE, YOU KNOW, LEADING THE EFFORTS.

21  A COUPLE OF THEM -- YOU KNOW, ONE OF THEM IS IN THE ROOM WITH

22  ME HERE.  AND THAT IS WHAT WE ARE -- WE HAVE A LARGE GROUP OF

23  ATTORNEYS WHO HAVE WORKED ON THIS AND SPENT A GREAT DEAL OF

24  TIME ON IT.

25          **THE COURT:**  THEN WHAT ABOUT EFFORTS IN GUATEMALA AND

OCTOBER 18, 2019

1  HONDURAS, DO YOU HAVE ATTORNEYS THERE OR ARE YOU WORKING

2  THROUGH NGO'S?

3          **MR. HERZOG:**  THERE WE ARE WORKING -- THAT IS NOT --

4  THAT WORK IS BEING DONE PRIMARILY BY JUSTICE IN MOTION, ONE OF

5  OUR NGO'S PARTNERS ON THE STEERING COMMITTEE.  AND THEY HAVE

6  ATTORNEYS AND OTHER FOLKS WHO WORK WITH THEM ON THE GROUND IN

7  GUATEMALA AND HONDURAS.  AND THEY ARE PRIMARILY DOING THAT

8  WORK AT THIS POINT.

9          **THE COURT:**  YOU HAVE REACHED 23 PARENTS IN CENTRAL

10 AMERICA THUS FAR.

11         **MR. HERZOG:**  THUS FAR.  THAT WILL GET BIGGER.  WE

12 ARE MAKING PROGRESS.

13         **THE COURT:**  YES.

14         OF THIS GROUP OF 868, DO YOU HAVE AN ESTIMATE AS TO

15 HOW MANY OF THEIR PARENTS WERE DEPORTED WITHOUT THEIR

16 CHILDREN?

17         **MR. HERZOG:**  THE MAJORITY OF THEM, I THINK.  I DON'T

18 HAVE A NUMBER, BUT I THINK MORE OF THE PARENTS ARE IN

19 COUNTRIES OF ORIGIN THAN IN THE UNITED STATES.  SOME WERE

20 DEPORTED -- MOST OF THEM WERE DEPORTED, I THINK.  I THINK IT

21 IS A MAJORITY.

22         **THE COURT:**  ALL RIGHT.  AND FOR THAT REASON THIS

23 SECOND PHASE, AS FAR AS SUCCESSFULLY CONTACTING THE PARENTS

24 AND GETTING THEIR WISHES AS TO WHAT THEY WANT TO DO, IS GOING

25 TO BE A PAINSTAKING PROCESS THAT'S GOING TO TAKE A MATTER OF

OCTOBER 18, 2019

1  WEEKS AND MONTHS.

2  **MR. HERZOG:** YES. IT IS HARD WORK AND SLOW WORK.

3  AND IT IS GOING TO TAKE A WHILE.

4  **THE COURT:** ALL RIGHT. THANK YOU.

5  **MR. HERZOG:** LET ME JUST ADD.

6  **THE COURT:** YES.

7  **MR. HERZOG:** CONTACTING THE PARENTS WHO WE ARE

8  CALLING UNREACHABLE, YOU KNOW, PROVISIONALLY CLASSIFIED AS

9  UNREACHABLE BY TELEPHONE, THERE ARE A SUBSTANTIAL NUMBER IN

10  THE U.S. AS WELL. AND THAT ALSO IS GOING TO INVOLVE, YOU

11  KNOW, ON THE GROUND TYPE OF WORK. IT IS DIFFERENT BECAUSE

12  THEY ARE NOT IN, YOU KNOW, GUATEMALA OR HONDURAS, BUT THAT

13  ALSO IS PAINSTAKING.

14  **THE COURT:** OKAY. IS THERE ANYTHING THAT IS NEEDED

15  BY WAY OF GOVERNMENT ASSISTANCE, DEPARTMENT OF STATE OR OTHER

16  RESOURCES THE GOVERNMENT MIGHT HAVE?

17  **MR. HERZOG:** I THINK AT THIS POINT WE ARE -- WE AND

18  THE ACLU, I THINK, WOULD PREFER TO PROCEED WITH THE RESOURCES

19  WE HAVE AND THE RESOURCES WE CAN ADD BY WAY OF NGO AND OTHER

20  ORGANIZATIONS.

21  I THINK WE WILL SEE AS WE GO FORWARD AND, YOU KNOW,

22  HOW MANY PEOPLE WE CAN'T REACH THAT WAY, WHETHER WE WOULD WANT

23  TO BRING IN GOVERNMENT ASSISTANCE. IT MAY BE, BUT I DON'T

24  THINK WE ARE THERE YET.

25  **THE COURT:** OKAY.

OCTOBER 18, 2019

18

```
 1            MR. GELERNT, ANYTHING TO ADD OR ANY OBSERVATIONS
 2   HERE?
 3            MR. GELERNT:  NO, YOUR HONOR.  I THINK ALL THAT IS
 4   RIGHT, THAT IS WE ARE LOOKING AT A PAINSTAKING DIFFICULT TASK.
 5   BUT I THINK YOUR QUESTION IS THE RIGHT ONE ABOUT WHETHER AT
 6   SOME POINT WE ARE GOING TO NEED GOVERNMENT ASSISTANCE.  AND I
 7   THINK THAT IS SOMETHING THAT MR. HERZOG AND I AND THE OTHER
 8   MEMBERS OF THE STEERING COMMITTEE WILL TALK ABOUT, WHETHER WE
 9   THINK THERE IS ANYTHING THE GOVERNMENT CAN DO TO HELP THE
10   PROCESS.  SO I THINK WE DO NEED TO SIT DOWN AND THINK ABOUT
11   THAT.
12            I AM ALSO GOING TO TALK TO MR. HERZOG ABOUT ADDING
13   MORE RESOURCES TO THE STEERING COMMITTEE, WHETHER THAT IS
14   ADDITIONAL NGO'S OR SOMETHING ELSE.  BUT I THINK GIVEN WHAT WE
15   ARE LOOKING AT, WE PROBABLY ARE GOING TO NEED MORE RESOURCES.
16   I THINK AT SOME POINT THAT PAUL WEISS AND THE NGO'S THAT ARE
17   DOING IT ARE JUST GOING TO BE TAXED TOO MUCH TO CONTINUE WITH
18   THIS MANY PEOPLE, ESPECIALLY GIVEN HOW MANY ARE OUTSIDE OF THE
19   COUNTRY.  SO WE ARE GOING TO BE SITTING DOWN TO GRAPPLE WITH
20   THAT, AND WE CAN ADVISE YOU AT THE NEXT STATUS HEARING.
21            THE COURT:  ALL RIGHT.  I THINK THAT'S AN IMPORTANT
22   DISCUSSION.  THIS IS A SIGNIFICANT GROUP OF PEOPLE,
23   APPROXIMATELY 1250.  AND, OF COURSE, SOME TIME HAS PASSED.
24   AND IT APPEARS NOW THAT MANY OF THESE PARENTS, OR AT LEAST THE
25   MAJORITY OF THOSE 1250 CHILDREN, HAVE BEEN REMOVED AND ARE
```

1    SOMEWHERE IN CENTRAL AMERICA.  SO THIS PROCESS OF TRACKING

2    THEM DOWN, I THINK, IS GOING TO BE MORE CHALLENGING,

3    CERTAINLY, THAN THE INITIAL GROUP OF 471.

4             SO I WILL INVITE THE PARTIES, THROUGH YOUR

5    CONSIDERED JUDGMENT, TO MEET AND CONFER.  AND ANYTHING THAT

6    MIGHT BE OF ASSISTANCE THAT THE GOVERNMENT CAN PROVIDE, I

7    THINK, WOULD BE IMPORTANT AS WELL.

8             I WILL LOOK FORWARD TO THE NEXT STATUS REPORT TO SEE

9    HOW YOU AND MR. HERZOG ARE DOING AS FAR AS CONTACTING THESE

10   PARENTS, REACHING THEM, AND GETTING -- DRILLING DOWN ON THE

11   ACTUAL NUMBERS.

12            ARE THERE ANY OTHER MATTERS WE NEED TO ADDRESS AT

13   THIS TIME?  I DO HAVE THE PENDING MOTION, WE ARE WORKING HARD

14   ON THAT.  AND I ANTICIPATE ISSUING A RULING IN THE NEXT COUPLE

15   OF WEEKS OR SO.

16            **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT.  I

17   THINK TWO MATTERS FROM US.

18            ONE IS THE PARENTS WHO IN YOUR RULING YOU SAID HAVE

19   A RIGHT TO COME BACK TO HAVE AN ASYLUM HEARING.

20            **THE COURT:**  YES.

21            **MR. GELERNT:**  THOSE ARE THE 11 PARENTS.

22            WE HAVE BEEN GOING BACK AND FORTH WITH THE

23   GOVERNMENT.  AND, AS YOU KNOW, THE GOVERNMENT ASKED US TO

24   DESIGNATE ONE POINT OF CONTACT, WE HAVE DONE THAT.  WE JUST

25   RECEIVED AN EMAIL FROM THE GOVERNMENT TODAY, OR ONE OF THE

OCTOBER 18, 2019

20

1 OTHER ATTORNEYS WHO HAD A CASE LIKE THAT RECEIVED AN EMAIL,
2 AND SO WE ARE GOING THROUGH THAT, AND ARE GOING TO NEED TO
3 MEET AND CONFER.  I THINK PEOPLE ARE GETTING VERY ANXIOUS
4 ABOUT HOW LONG IT IS TAKING.
5        AND WHAT WE WOULD PROPOSE IS THAT THE PARTIES SUBMIT
6 SOMETHING JOINTLY, WITHIN SEVEN TO TEN DAYS, TO UPDATE THE
7 COURT ON WHERE THE LOGISTICS STAND, BECAUSE IT HAS BEEN A
8 WHILE SINCE YOUR HONOR ORDERED THAT THEY BE ALLOWED TO RETURN.
9 AT THIS POINT IT JUST SEEMS A MATTER OF LOGISTICS, AND MAYBE
10 HAVING A STATUS REPORT ON THAT, IN SEVEN TO 10 DAYS, WILL PUSH
11 THE PARTIES TO FINALLY GET SOMEWHERE, BECAUSE WE ARE READY TO
12 GO.  WE ARE -- THE EMAIL IN FACT WAS SENT WHICH HAS ADDITIONAL
13 INFORMATION, AND MAYBE THAT WILL CLEAR IT ALL UP AND THE
14 STATUS REPORT WILL BE EASY.
15        BUT THAT'S WHAT WE WOULD SUGGEST ON THAT, BECAUSE WE
16 ARE HEARING FROM THE OTHER LAWYERS WHO HAVE INDIVIDUAL CLIENTS
17 WHO ARE SOME OF THE 11, AND THEY ARE GETTING ANXIOUS ABOUT IT.
18        **THE COURT:**  MR. STEWART, ANY OBJECTION TO A JOINT
19 REPORT, SAY IN TEN DAYS, ON THAT ISSUE?
20        **MR. STEWART:**  I KIND OF DO, YOUR HONOR.
21        MR. GELERNT HIMSELF JUST SAID -- BASICALLY INDICATED
22 THAT HE HAS NOT LOOKED AT THE MESSAGE THAT WAS SENT TO
23 THEIR POINT OF CONTACT.  I THINK IT MAKES SENSE FOR HIM TO
24 ACTUALLY READ THROUGH THAT MESSAGE, SEE IF IT CLEARS
25 EVERYTHING UP.  IF IT DOESN'T REACH OUT TO THE GOVERNMENT AND

OCTOBER 18, 2019

1   THEN WE CAN SEE WHERE WE ARE.  AND IF HE WISHES TO ALERT THE

2   COURT TO SOMETHING OR A JOINT STATEMENT IS NEEDED, THEN WE CAN

3   DECIDE ON THAT.

4           I ACKNOWLEDGE THAT THE -- MY UNDERSTANDING IS THE

5   MESSAGE WENT OUT RECENTLY, SO I UNDERSTAND HIM RAISING THAT

6   NOW RATHER THAN IN THE STATUS REPORT.  BUT UNTIL HE HAS

7   ACTUALLY READ, DIGESTED AND SEEN WHAT FURTHER STEPS MAY BE

8   WARRANTED, IT SEEMS LIKE A JOINT STATEMENT IS A LITTLE

9   PREMATURE.

10          **MR. GELERNT:**  YOUR HONOR, THIS IS MR. GELERNT AGAIN.

11          YOU KNOW, IT IS NOT EXACTLY LIKE WE ARE ASKING THE

12   GOVERNMENT FOR A MAJOR THING, WE ARE TALKING ABOUT A JOINT

13   STATUS REPORT.  IF THE GOVERNMENT FEELS LIKE THEY HAVE GIVEN

14   EVERYTHING THEY CAN GIVE, THAT JOINT STATUS REPORT WOULD BE

15   EASY.  BUT I FEEL-- I HAVE DIGESTED IT ENOUGH TO KNOW THAT

16   THERE ARE SIGNIFICANT PROBLEMS.  FOR ONE THING THE

17   GOVERNMENT IS THINKING THAT EVERYONE IS COMING BY LAND, THEY

18   ARE NOT.  THEY ARE ALSO ANTICIPATING THAT WE ARE LOOKING AT

19   TWO AND THREE MONTHS BEFORE PEOPLE GET HERE.  I MEAN, PEOPLE

20   ARE READY TO GO, THEY ARE READY TO GET ON A FLIGHT.  AND THEY

21   HAVE BEEN EVER SINCE YOUR HONOR ISSUED THE ORDER.

22          I THINK IT IS NOT ALL THAT MUCH A BURDEN FOR THE

23   GOVERNMENT TO PUT IN A PARAGRAPH IN A JOINT STATUS REPORT IN

24   SEVEN TO TEN DAYS WHERE WE ARE, AND SO WE CAN ALERT THE COURT

25   IF, YOU KNOW, THE GOVERNMENT HASN'T BUDGED ON THE TWO TO

OCTOBER 18, 2019

1   THREE-MONTH TIME PERIOD OR ACKNOWLEDGED THAT PEOPLE WILL BE

2   COMING ON PLANES AND THEY ARE READY TO GO.  ALL WE ARE ASKING

3   IS THAT WE BE ABLE TO UPDATE THE COURT.

4           **THE COURT:**  LET'S PROCEED THIS WAY.

5           I WOULD LIKE TO SET A FOLLOW-UP STATUS CONFERENCE ON

6   NOVEMBER 8 AT 1:00 O'CLOCK, SO THAT IS IN THREE WEEKS, WITH A

7   JOINT STATUS REPORT ON WEDNESDAY, NOVEMBER 6.

8           ON THIS ISSUE WITH RESPECT TO THE 11 PARENTS, THAT'S

9   AN IMPORTANT ISSUE.  AND I DO BELIEVE THAT TIME IS IMPORTANT,

10  AND THE GOVERNMENT OUGHT TO PROCEED EXPEDITIOUSLY.  I WILL

11  DEFER ON ORDERING A JOINT STATUS REPORT.

12          I AM GOING TO ASK YOU, MR. GELERNT, TO GET TO THE

13  BOTTOM OF THAT.  IF YOU ARE NOT SATISFIED WITH THE

14  GOVERNMENT'S RESPONSE OR PACE THEN I WILL INVITE YOU, YOU CAN

15  SIMPLY CONTACT THE COURT OR SUBMIT A LETTER, STATUS FROM YOUR

16  VANTAGE POINT, COPYING THE GOVERNMENT.  AND I CAN FOLLOW UP AS

17  NECESSARY.

18          BUT I AM OPTIMISTIC THAT BETWEEN YOU AND MR.

19  STEWART, THE GOVERNMENT, WE CAN GET SOME CERTAINTY AS TO HOW

20  WE GET THESE PARENTS OVER.

21          **MR. GELERNT:**  THAT'S FINE, YOUR HONOR.  THANK YOU.

22          **THE COURT:**  ARE THERE ANY OTHER ISSUES?  MR.

23  GELERNT, I THINK YOU SAID YOU HAD TWO AND WE DISCUSSED ONE.

24          **MR. GELERNT:**  YES, I HAVE ONE OTHER ISSUE, YOUR

25  HONOR, RELATED TO THE PENDING MOTION.


                    OCTOBER 18, 2019

23

 1          AS YOUR HONOR KNOWS, YOU ASKED THE GOVERNMENT TO

 2   SUBMIT PROTOCOLS REGARDING THE CRITERIA FOR SEPARATING PARENTS

 3   BASED ON WHAT THEY PERCEIVED WAS NEGLECT OR ABUSE OR CRIMINAL

 4   HISTORY.

 5          WE WOULD ASK FOR THE COURT'S PERMISSION TO SUBMIT A

 6   VERY SHORT RESPONSE TO THOSE PROTOCOLS.  WE THINK THEY BEAR

 7   SIGNIFICANTLY ON THE MOTION THAT IS BEFORE YOU.  AND SO THAT

 8   IS -- WE WOULD BE PREPARED TO DO IT VERY QUICKLY, SOMETHING

 9   SHORT JUST SAYING OUR VIEW OF WHAT THE PROTOCOLS DO OR DO NOT

10   DO AND HOW THEY AFFECT THE QUESTIONS BEFORE YOUR HONOR ON THE

11   CRITERIA FOR SEPARATING.

12          **THE COURT:**  HOW MUCH TIME DO YOU NEED?

13          **MR. GELERNT:**  WE COULD SUBMIT SOMETHING BY TUESDAY

14   OR WEDNESDAY IF THAT WOULD WORK, YOUR HONOR.

15          **THE COURT:**  YES.  MORE INFORMATION IS WELCOME, SO

16   YES.  YOU CAN FILE SOMETHING BY WEDNESDAY, THE 23RD, CLOSE OF

17   BUSINESS.

18          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

19          **THE COURT:**  THEN, MR. STEWART, IF FOR SOME REASON

20   YOU BELIEVE SOME FURTHER RESPONSE IS APPROPRIATE, YOU ARE

21   WELCOME TO DO THAT AS WELL.  JUST REACH OUT TO MOANA MCMULLAN

22   AND LET HER KNOW.  BUT OTHERWISE YOU NEED NOT SUBMIT ANYTHING

23   FURTHER.

24          **MR. STEWART:**  VERY GOOD.  WE WILL DO SO.  THANK YOU,

25   YOUR HONOR.


                        OCTOBER 18, 2019

1        **THE COURT:**  ARE THERE ANY OTHER MATTERS?

2        MR. BEST OR MS. WEISS, ANY OTHER COMMENTS BY ANYONE?

3        **MS. WEISS:**  THANK YOU, YOUR HONOR, NOT AT THIS TIME.

4        **MR. BEST:**  NOT FROM US, YOUR HONOR.  THANK YOU.

5        **THE COURT:**  THANK YOU VERY MUCH.  I APPRECIATE

6   EVERYONE'S TIME AND EFFORT.  PARTICULARLY TO YOU, MR. HERZOG,

7   AND THE GOOD WORK YOU ARE DOING.

8        WE WILL BE IN RECESS AT THIS TIME.  AND WE WILL

9   ISSUE JUST A VERY BRIEF ORDER SETTING OUT THE NEXT JSR AND

10  STATUS CONFERENCE.

11       THANK YOU.

12       **MR. GELERNT:**  THANK YOU, YOUR HONOR.

13       **MR. STEWART:**  THANK YOU, YOUR HONOR.

14

15                          *   *   *

16       I CERTIFY THAT THE FOREGOING IS A CORRECT
         TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
17       IN THE ABOVE-ENTITLED MATTER.

18       S/LEEANN PENCE                    10/18/2019
         LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
19

20

21

22

23

24

25


                         OCTOBER 18, 2019