Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al., <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: October 23, 2019 <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO ENFORCE PRELIMINARY INJUNCTION** |

Plaintiffs submit this supplemental brief to address Defendants' recently submitted protocols and standards for ongoing separations. Dkt. 487 at 2. Plaintiffs make two brief points—first, that the government is treating criminal history as a per se basis to separate, without consideration of whether a parent can be housed in family detention; and second, the separation guidance documents show that DHS's separation standards are both ill-defined and not uniform throughout the country.

## ARGUMENT

### I. The government is separating families based on criminal history, without regard to whether criminal history makes the parent ineligible for family detention.

1. As Plaintiffs have previously explained, there are two distinct inquiries that must occur here. The first is whether, under the well-established due process standard used by every state for decades, the parent is unfit or presents a danger to the child. That is a demanding standard that rightly takes into account the gravity of tearing children away from their parents and the settled principle that even parents who have committed serious crimes in the past will rarely present a current danger to their own children. The second inquiry is whether a fit parent who presents no danger to his child should nonetheless be separated because the parent must be detained and in the government's view there is no appropriate setting to detain the family together. Separation at this second stage raises serious issues because, by definition, the government is separating children from fit parents who present no danger to them.

The reason to distinguishing between these two inquiries is both practical and legal. As a practical matter, a parent who is no danger to his child should be immediately reunified once the parent is released from detention—at that point, the family detention question is no longer relevant. But under Defendants' view, the mere existence of *any* criminal history—regardless of whether it demonstrates danger to the child–allows them to take the parent out of the class, relieving the government of any obligation to

immediately reunify the family when the parent is released from an adult detention center (which happens frequently when the government cannot show that the parent is a flight risk or danger).

More fundamentally, absent distinct inquiries, the Court would be sanctioning a separation policy that is wholly out of step with years of uniform child welfare policy, and indeed, unprecedented. Although the government has tried to focus on extreme outlier cases, it has now admitted that its policy is to separate for "violent misdemeanors" and *any* "felony." In practice, this has meant even decades-old theft offenses and other similar minor offenses. The standard unquestionably and blatantly violates due process. The Court should not sanction a protocol that allows parents to be deemed a danger to their child based on this standard.

2. The government's opposition brief to Plaintiff's motion to enforce attempted to blur the distinction between these two inquiries. That is understandable given that the government could not explain, and indeed has never attempted to explain, how it could justify deeming all parents with any felony or violent *misdemeanor* a danger to their child. And, critically, Defendants' separation protocols now make clear that the government has not developed proper and distinct standards for determining, first, whether a parent is unfit or a danger to their child, and second, whether they can be housed appropriately in a family facility if they pose no danger to their child. Instead, the protocols make clear that any felony or violent misdemeanor is sufficient to keep the parent out of the class and separate. Thus, a parent with a decades-old theft offense loses his child, is taken out of the class and would not be reunited immediately once released from detention by an immigration judge. Yet if the government were forced to make distinct determinations and keep the parent with the theft offense in the class, reunification would be immediately required once the parent was released, since under no conceivable understanding of child welfare would a parent with a non-violent decades-old theft offense be viewed as a danger

to his child.[1]

The most relevant parts of Defendants' recent production are CBP's "guidance documents," which include some national-level policies from the Office of Field Operations ("OFO"), as well as local policies specific to six different ports of entry and CBP sectors.[2] The national-level OFO policies focus on tracking systems for the processing of families deemed inadmissible at OFO's ports of entry and largely repeat the text of the June 2018 Interim Guidance as to separation standards, without further explanation or elaboration. OFO Muster, "Documenting Family Units and Properly Recording Separations" ("OFO Muster") at 2 (telling officers that "a child becomes unaccompanied . . . when" the parent has a "[p]rior criminal history . . . for felonies or violent misdemeanors").[3]

---

[1] As Plaintiffs have previously noted, the second inquiry – whether there are appropriate placements for detained families with a criminal history – would benefit from expert testimony. The initial testimony from Plaintiffs' experts shows that there is no legitimate basis for automatically excluding from family facilities all parents with violent misdemeanors and felonies regardless of the severity or date of the offense.

[2] This brief cites Defendants' protocols by the titles of their PDFs. Many of these guidance documents are heavily redacted, based on various privilege claims. Defendants have produced no documents from ORR.

The guidance documents from ICE are mostly from the summer of 2018, shortly after the preliminary injunction issued. Notably, at least at that time, ICE instructed their officers to presume that all separated parents were class members, and directed that any determinations of class membership should be referred to the Office of the Principal Legal Advisor, i.e. ICE's general counsel's office. *See, e.g.*, ICE ECF 479 Ex. 3. The ICE documents do not explain any standards for separation, other than repeating the text of the Class definition's exclusions for criminal history or communicable disease, or the Interim Guidance's mention of "felonies and violent misdemeanors."

ICE also produced more current documents that describe their recently-adopted processes for approving. Those documents do not elaborate on their *standards* for separations, however. The documents also address ways for parents to dispute separations; Plaintiffs will address that issue at a later date, after further discussions with the government.

[3] This document is not dated but its electronic file name indicates it is from April 1, 2019.

3

These policies allow for the separation of parents based on the parent's criminal history alone, without regard to whether that history makes the parent inappropriate for family detention. The OFO policies expressly distinguish between separations based on the "criminality" of the parent, without reference to family detention center standards, and separations conducted "[a]t the request of ICE/ERO." OFO Muster at 2. The latter separation basis "is to be used in cases where the family unit will not be accepted into [a family residential center] based on their detention standards and the decision to separate has been made by ICE." *Id.* Thus, the national-level OFO policies allow CBP to separate based on criminal history alone—they do not even require CBP officers to contact ICE before separation, to check whether the family would be eligible for placement in a family facility. Rather, it appears that ICE can ask CBP to conduct *additional* separations, on top of those CBP has already conducted unilaterally based on the "felony and violent misdemeanor" standard.

This framework is consistent with the local-level policies Defendants have produced, which similarly allow separation based on criminal history alone, without reference to family detention eligibility. For example, the Rio Grande Valley Sector's e-mail guidance mentions detention standards only when discussing separations "that do not fall within the CBP Interim Guidance." Such reasons include "gang affiliation" and "foreign criminal history," which the Interim Guidance does not mention. USBP RGV Updated Local Guidance E-mail at 1. Only for these separations that go beyond those allowed by the Interim Guidance does the RGV policy require consultation with ICE about whether the parent can be put in a family residential center. *See id.* (telling officers to "send the separation requests" as they would for any separations, and that officials reviewing such requests "will then advise if the station should check with ICE-ERO" about family detention exclusions). Other e-mails from the individual ports and field offices do not even *mention* the standards for placement in family detention, suggesting that CBP officers routinely conduct separations without checking with ICE about whether

the parent is eligible for family detention.[4]

The overriding point is that Defendants cannot, and have not, seriously attempted to argue that any past felony or violent misdemeanor would render a parent a danger to their child, or that there is support for such a standard in child welfare law.  Instead, Defendants have sought to confuse the issue by vaguely suggesting that the ongoing separations are warranted by detention standards.  But the finally-produced protocols make clear that the government's separation decisions are based on the parent's criminal history alone, without regard to whether the family can be housed appropriately together in a detention facility.  Indeed, the protocols make clear that only in certain cases does the government consult ICE regarding detention placement – and even then it appears that the government consults the detention facilities to *expand* who it separates (for instance, parents who have not actually been convicted of an offense).

Plaintiffs respectfully request that the Court hold invalid a separations standard based on violent misdemeanors and any felony, and then request more information from the parties on the proper standard for detention placement (an inquiry that can take into account deference to the government but should not provide unfettered deference given that the lives of little children are at stake).

**II. The standards are also neither well-defined nor uniform.**

In addition to the fundamental problem discussed above, the standards are vague and not uniform across the country. As to the "criminal history" standard itself, the CBP documents largely repeat the text of the Interim Guidance and state that separations are permissible because of convictions for "felonies and violent misdemeanors," without

---

[4] Defendants' production includes intake forms for the Berks and Dilley family facilities, which ask if anyone in the family has criminal history.  But those forms do not say what criminal history renders the family unqualified for family detention.  And as Plaintiffs have explained, their previous cited policies do not explain why criminal history renders a parent ineligible for family detention, nor explains what criteria governs eligibility. Dkt. 471 at 15-16 & n.5.

explanation as to what that standard means in practice. But, as Plaintiffs have explained, evidence of actual practice shows this nebulous standard is applied haphazardly at best: many parents have been separated despite lacking any indication that they have been *convicted* of a felony or a violent misdemeanor. *See, e.g.*, Dkt. 439-1 at 7-10 (describing numerous separations based on arrests only, including where the case was dismissed; DUI offenses, marijuana possession convictions, fraud offenses, "theft by shoplifting" and "driving without a license," "public intoxication arrests and DUI" and "fictitious or fraudulent statement or representation").

As noted, CBP has also produced what appear to be local-level policies from six different ports of entry or CBP sectors—San Diego, Laredo, Tuscon, Yuma, Rio-Grande Valley, and Boston. Some of these "guidance documents" are merely e-mails passing along the June 2018 Interim Guidance, with brief additional notes or excerpts of the Interim Guidance pasted into the body of the email. *See* OFO Boston Field Office Local Guidance E-mail; USBP SDC local E-mail; USBP Yuma Sector Local Guidance E-mail. These emails do not add meaningful information about the actual standards officers apply on the ground to separate families.

Other CBP policies contain limited guidance that does not appear in documents from other field offices. For example, documents from the Laredo port of entry contain additional explanation as to how to treat common law relationships between parents and children, or families with adult children. OFO Laredo Local Guidance, Nov. 13, 2018 E-mail at 1. This additional detail in the Laredo guidance is not reflected in the emails concerning the other field offices. *See also* Rio Grande Valley E-mail (noting scenarios not covered in the CBP guidance that "still qualify for separation," such a "foreign criminal history"). Guidance in the Yuma sector tells officers that "[p]rior immigration violations and/or convictions should not be considered when determining whether to separate," USBP Yuma Sector Local Guidance, but the government admits it has been treating convictions for Section 1326 as a basis to separate. Dkt. No. 464 at 18 n.6, 19

6

n.7. The lack of consistency, even on the face of the limited documents Defendants have produced, suggests that each field office and port of entry may be applying its own practices and standards.

## CONCLUSION

The Court should require the government to revise its separation standard and then order the parties to address the question of appropriate placements for families in which the parent is neither unfit nor a danger to her child.

Dated: October 23, 2019  Respectfully Submitted,

*/s/Lee Gelernt*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 2922080)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*samdur@aclu.org*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
dgalindo@aclu.org

*Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 23, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

                                  /s/ Lee Gelernt
                                  Lee Gelernt, Esq.
                                  Dated: October 23, 2019