JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0473

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., <br><br> Petitioners-Plaintiffs, <br><br> vs. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Respondents-Defendants. | Case No. 18cv428 DMS MDD <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE** |

# INTRODUCTION

Plaintiffs' supplemental brief, ECF No. 491, reiterates arguments made in their motion to enforce and provides no basis for the Court to grant that motion. Plaintiffs continue to disregard the plain language of the class definition, continue to disregard the border and immigration-enforcement context in which this case arises, and continue to ask this Court to order relief to persons who are squarely excluded from the class and to do so under a state-law "child welfare" standard that has no basis in this immigration-enforcement context. The Court should reject Plaintiffs' arguments. The Department of Homeland Security has made sound separation decisions that account for the considerations identified by this Court and reflect the challenging immigration-enforcement and law-enforcement context in which these decisions arise. The Court should adhere to its prior orders and deny Plaintiffs' motion to enforce.

# ARGUMENT

The government has made reasonable separation decisions that account for the immigration-enforcement context in which this case arises as well as for the family-integrity interests identified by this Court. *See* Opposition to Plaintiffs' Motion to Enforce, ECF No. 464 at 5-8, 17-21. Plaintiffs' arguments to the contrary, made most recently in their supplemental brief, rest on their continued disregard for the plain language of the class definition, the immigration-enforcement and law-enforcement context in which this case arises, and the legal rules governing class actions.

As explained more fully in Defendants' Opposition, *see* ECF No. 464 at 14-17, the Court's order defining the class is clear: "the class does not include migrant parents with criminal history or communicable disease, or those who are in the interior of the United States or subject to the [Executive Order]." ECF No. 82 at 17 n.10. The Court explained that it "carved out criminal history from the class definition because I think it is within the government's prerogative to determine what kind of criminal history

1

might properly effect separation." July 6, 2018 Hearing Tr. 21:1-7. The plain language of the Court's class-certification order establishes an exclusion from the class that is absolute as to all parents with any criminal history because criminal history by its nature will result in the need for individualized inquiries and thus those cases cannot be resolved on a class basis. *See, e.g.*, Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (class certification requires that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them"). Parents with criminal history are not class members. ECF No. 464 at 15-17.

Virtually every point made in Plaintiffs' supplemental brief conflicts with the plain language of the class definition certified by this Court. And Plaintiffs' brief is also irreconcilable with DHS's actual decision-making process, which shows that DHS has decided to separate in only a limited number of cases (particularly when compared to the large number of family units that it has encountered over the relevant period) and has, when making those important separation decisions, accounted for the critical interests identified by the Court and for the challenging immigration-enforcement context in which those decisions arise.

**1.** Most of Plaintiffs' supplemental brief is devoted to Plaintiffs' effort to re-imagine class treatment in this case as involving a two-step inquiry that categorically bars separation "based on criminal history alone." Supp. Br. 4, ECF No. 491; *see id.* at 1-5. The first step, according to Plaintiffs, involves assessing, under the state-law standard applicable to families in ordinary domestic-relations matters (variously described as a "due process," "child welfare policy," or "child welfare law" standard that has *no relationship* to immigration enforcement), of whether the parent "is unfit or presents a danger" to the parent's *own* child. *Id.* at 1, 2, 5. The second step then asks "whether a fit parent who presents no danger to his child should nonetheless be

separated because the parent must be detained and in the government's view there is no appropriate setting to detain the family together." *Id.* at 1.

This re-imagined view has many problems. *First*, this inquiry is irreconcilable with the class definition that the Court actually certified. The Court's class-certification order creates a blanket exclusion from the class definition for parents with criminal history: "the class does not include migrant parents with criminal history." ECF No. 82 at 17 n.10; *cf.* ECF No. 83 at 23 n.11 (addressing a solitary exception—that a conviction under section 1325 alone would not create an exclusion from the class). Plaintiffs' two-step inquiry defies that bright-line definition and represents an unworkable, individualized, messy approach to determining class membership that is not the one the Court ordered.

*Second*, Plaintiffs' proposed approach cavalierly disregards the immigration-enforcement context in which this case arises. *See, e.g.*, Supp. Br. 2 (invoking domestic "child welfare policy"); *id.* at 5 (invoking state "child welfare law"); *id.* at 1 (advocating for the "due process standard used by every state"); *see generally id.* at 1-7 (never addressing why that state-law child-welfare standard should apply in this immigration- and law-enforcement context). As the Court has recognized, this case involves individuals who are crossing the southern border at or between ports of entry "where the government is dealing with issues of national security, border security, immigration policy, prosecution, [and] detention." Sept. 20, 2019 Hearing Tr. 36:18-25. This case is not about the everyday "child welfare" context (Supp. Br. 2, 5) that may apply to state and local family-court or child-welfare proceedings in the United States. DHS border personnel are not equipped to engage in such an adjudicative process, not staffed to accommodate the type of legal analysis involved in rendering such decisions, and not vested with the jurisdiction to make the type of permanent custody decisions contemplated for family courts within the United States. DHS must, for example, often make determinations regarding a parent and child in a quick time frame, and often based

on the limited information available to them at the time of encounter. *See* Declaration of Lloyd Easterling (Easterling Decl.) ¶ 5, ECF No. 464-2. The process laid out by Plaintiffs does not account for the operational realities of border enforcement or the sheer scale of the flow of migrants across the southern border. As noted in Defendants' opposition, from July 1, 2018, through July 30, 2019, 524,294 individuals have crossed the southwest border at or between ports of entry as members of a family unit. *See* ECF No. 464 at 9 (citing U.S. Customs and Border Protection, Southwest Border Migration FY 2019, available at: https://www.cbp.gov/newsroom/stats/sw-border-migration; *see also* U.S. Customs and Border Protection, Southwest Border Migration FY2018, available at: https://www.cbp.gov/newsroom/stats/sw-border-migration/fy-2018). Given its mission, DHS's decisions are made in the immigration-enforcement, law-enforcement, and national-security context and the standards that they use must adequately account for the many significant concerns that arise in those contexts. It is by disregarding the immigration-enforcement context that Plaintiffs can advocate for an inquiry that presumptively bars separation even in the face of serious criminal history—such as the rape of a child. *See* ECF 439-1 at 146-47 (Supplemental Declaration of Prof. Martin Guggenheim); ECF No. 439 at 23-24 (Plaintiffs' brief, endorsing Professor Guggenheim and his expertise). Plaintiffs' approach is—on top of being irresponsible and cavalier with regard to child welfare—unworkable and wholly out of place in this context of immigration enforcement.

*Third*, Plaintiffs' inquiry ignores the unique realities of family detention and the context in which family-detention determinations occur. Plaintiffs' position that "there is no legitimate basis for automatically excluding all parents with violent misdemeanors and felonies" disregards the unique nature of a family detention setting. Supp Br. 4 n.1. The inquiry into whether an individual can be housed at a family residential center (FRC) goes beyond whether an individual's criminal history renders them a danger to his or her own child. The consideration must also be whether those individuals could

pose a danger to the other families housed at the FRC. *See* Declaration of Melissa Harper (Harper Decl.) ¶ 5, ECF No. 464-5 (families at FRCs interact with each other throughout the day); *id.* (family units are free to move throughout a FRC during daytime hours); *id.* (FRCs are staffed with contracted Resident Advisors in lieu of security officers). The family residential standards governing ICE FRCs as well as applicable licensing rules prohibit ICE from detaining in an FRC any individual who has a history of felonies or violent misdemeanors, but allow for consideration of individuals with non-violent misdemeanors on a case-by-case basis. *See* Harper Decl. ¶ 9, ECF No. 464-5. Before placing a family in an FRC, DHS considers the parent's fitness, dangerousness, and criminal history, and must consider whether the parent's criminal history permits DHS to house the family together in an ICE FRC with other families. *See* Easterling Decl. ¶¶ 12-23, ECF No. 464-2; Declaration of Carrie Davison (Davison Decl.) ¶¶ 5-6, ECF No. 464-3; CBP Interim Guidance on Preliminary Injunction in *Ms. L. v. ICE*, No. 18-428 (C.D. Cal. June 26, 2018) (Interim Guidance) at 1, ECF No. 464-4; Harper Decl. ¶ 6, ECF No. 464-5. On Plaintiffs' view, the inquiry would end at whether or not the parent's circumstances made them a danger to their own child, without considering whether that individual's criminal history poses a danger to other residents housed at the FRC.

*Fourth*, Plaintiffs' approach conflicts with Federal Rule of Civil Procedure 23. Plaintiffs ask the Court not to order class treatment, but instead to "force[]" the government "to make distinct determinations" regarding criminal history on an individualized, case-by-case basis—which, Plaintiffs will of course maintain, could each be brought to the Court for individual evaluation. Supp. Br. 2. That is not a request for class treatment. As discussed more fully in Defendants' opposition, ECF No. 464 at 14-17, certification under Rule 23(b)(2) requires that "declaratory relief [be] available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-*

5

*Mart Stores, Inc.*, 564 U.S. at 360. In its class-certification order this Court acknowledged that where a parent has a criminal history, he "would be situated differently" from the named Plaintiffs in this case, and there are necessarily individualized issues that will affect the government's detention decisions regarding that individual. ECF No. 82 at 10. These individualized determinations required that such persons be excluded from the class that was certified in this case. *Id.* The relief that Plaintiffs seek and the standards they demand are not proper for class treatment.[1]

In sum, the two-step inquiry for which Plaintiffs advocate (Supp. Br. 1-5) is irreconcilable with the class definition that this Court adopted, the immigration- and law-enforcement context in which this case arises, the important nature of family-detention decisions, and Rule 23 and the fundamental attributes of class treatment. The Court should adhere to its prior orders and reject the legally flawed, factually unsupported, and wholly out-of-place standard for which Plaintiffs advocate.

**2.** Plaintiffs' remaining arguments are strawmen.

*First*, Plaintiffs repeatedly suggest that, if this Court does not adopt the unprecedented standard proposed by Plaintiffs, legions of improper separations will follow. *See, e.g.*, Supp. Br. 2, 4, 5 (repeatedly suggesting that DHS routinely separates based merely on the existence of "the parent's criminal history alone"). In fact, the evidence reflects that DHS has made careful and sound separation decisions that account for the individualized circumstances it faces. In determining whether separation may be appropriate, at the time of encounter DHS considers the severity of the parent's criminal history. *See* Easterling Decl. ¶¶ 12-23, ECF No. 464-2; Davidson Decl. ¶¶ 5-6, ECF No. 464-3; Interim Guidance at 1, ECF No. 464-4. As outlined in

---

[1] As noted in Defendants' opposition, Plaintiffs cannot ask this Court to order relief as to individuals whom the Court has specifically excluded from the class, and this Court should decline to entertain Plaintiffs' request for such relief. ECF No. 464 at 21 n.5. If the Court is inclined to consider Plaintiffs' Motion as a request that the Court amend the class definition in this case, then Defendants request the opportunity to brief the class-certification issues before the Court orders any amendment to the existing class definition.

1  CBP's Interim Guidance, a separation may occur when the parent has a conviction for
2  a felony or a violent misdemeanor (such as assault, battery, or hit and run).  Interim
3  Guidance at 1, ECF No. 464-4.  In general, a separation would not be warranted for
4  minor crimes, such as a driving while intoxicated, unless there are other aggravating
5  factors.  *See* Easterling Decl. ¶ 16, ECF No. 464-2; Davidson Decl. ¶ 5, ECF 464-3.  In
6  addition, the CBP documents provided reflect that a decision to separate must be
7  reviewed and approved by a supervisor before the actual separation occurs. *See*
8  Easterling Decl. ¶¶ 13-14, ECF No. 464-2; Interim Guidance at 1, ECF No. 464-4.  The
9  numbers demonstrate that DHS has not treated the criminal history exclusion as an
10 absolute for purposes of implementing the preliminary injunction.  According to
11 Plaintiffs' analysis, the reporting shows 678 total separations based on allegations of
12 criminal conduct.  ECF No. 439-1 at 10.  According to Defendants' calculations, this
13 number would mean that only approximately .25% of the total number of individuals
14 who crossed as members of a family unit during the applicable timeline were separated
15 based on criminal history.  ECF No. 464 at 21.
16      Rather than grapple with the care reflected in DHS's decisions or the numbers
17 showing a careful use of discretion, Plaintiffs repeatedly complain that DHS could,
18 *theoretically*, exclude someone from class treatment based on a minor crime. *See, e.g.*,
19 Supp. Br. 1, 4 (complaining that DHS's approach "allows" it to treat someone with
20 criminal history as falling out of the class).  Plaintiffs attempt to give this hypothetical
21 force by repeatedly invoking the specter of a separation based on a "decades-old theft
22 offense."  *See* Supp. Br. 2 (invoking this hypothetical three times on one page).  But
23 Plaintiffs' hypotheticals are not a sound basis on which to impose the sweeping and
24 flawed standard that they demand, particularly where the facts do not support their
25 concerns.  And even if such a concern could arise—even if someone were ruled out of
26 the class based on criminal history that Plaintiffs think is not sufficiently serious—that
27 would not mean that the parent at issue is without redress or could be forever separated
28

7

from their child simply because they are excluded from the class based on criminal history. A class exclusion simply means that the adult is not a member of this class and so is not entitled to relief *in this case*. That parent may seek relief or reunification by other means. *See* ECF No. 464 at 23-24. But this is a class-action case—and not every grievance that Plaintiffs can think of is (or can be) part of the case.

*Second*, Plaintiffs contend that the standards and protocols provided by the government are "neither well-defined nor uniform." Supp. Br. 5; *see also id.* at 5-7. This is a stock, makeweight claim that Plaintiffs would raise no matter how much clarity the government were to provide. The guidance necessarily speaks in non-rigid terms that mark the relevant boundaries but recognize that on-the-ground realities and legitimate government interests need to guide line-officer decision-making. *See* Easterly Declaration ¶¶ 3-36, ECF No. 464-2; Davison Declaration ¶¶ 2-10, ECF No. 464-3. Plaintiffs are demanding that the Court impose a standard that ignores the practical realities of the immigration-enforcement context in which these standards are implemented. In implementing these standards, DHS must account for issues of national security, border security, immigration enforcement, prosecution, and detention in a fast-moving environment. *See generally*, Easterling Decl. ¶¶ 3-36, ECF No. 464-2 (outlining the context and environment in which these standards are implemented); Harper Decl. ¶¶ 3-12, ECF No. 464-5 (outlining the considerations involved in placement within a family residential center). Sept. 20, 2019 Hearing Tr. 36:18-25. The framework established in the documents provided by the government affords it the necessary flexibility to soundly exercise discretion while enforcing the immigration laws and policies. ECF No. 464 at 17-21. This Court has repeatedly reaffirmed the government's authority to make discretionary decisions regarding matters of release and detention, and enforcement of criminal and immigration laws, where the authority to do so has been expressly given to it by Congress in the Immigration and Nationality Act. *See, e.g.*, Order, ECF No. 83 at 3 (June 26, 2018). The Court should again reject

Plaintiffs' demand to invade and interfere with the government's soundly exercised authority.[2]

Notably, although Plaintiffs purportedly filed their supplemental brief to address the additional materials submitted by the government, they have very little to say about those documents. Instead, Plaintiffs continue to press forward with their astonishing position that the Constitution bars the Department of Homeland Security, acting in an immigration-enforcement context, from separating a dangerous, serious criminal from his child unless that criminal presents an imminent, emergency danger to his own child. That is a remarkable or irresponsible position. It is not the approach that this Court has endorsed. The Court should reaffirm that the class definition's exclusion for criminal history controls and that DHS can continue its sound and careful decision-making in line with that class definition.

## CONCLUSION

The Court should deny Plaintiffs' Motion to Enforce.

---

[2] Plaintiffs claim that "the national-level OFO policies allow CBP to separate based on criminal history alone—they do not even require CBP officers to contact ICE before separation, to check whether the family would be eligible for placement in a family facility." Supp. Br. 5. This is not accurate. OFO's guidance explicitly requires CBP to notify ICE in such cases. In the June 29, 2018 SIGMA memo, it states that, when separation is warranted for parentage concerns, criminal history, prosecution, fitness/danger, or communicable disease, the following must occur: "In instances where a separation is warranted due to the numerated reasons, a CBP OFO senior manager (GS-14 or above) must be notified, approve the separation, and contact the Immigration and Customs Enforcement/Enforcement Removal Operations (ICE/ERO) local juvenile coordinator." ECF 489, Office of Field Operations, Inspecting In Admissible Family Units and Updates to Secure Integrated Government Mainframe Access (OFO APP 6-29-18 SIGMA Memo).


| | | |
|---|---|---|
| 1 | DATED: October 31, 2019 | Respectfully submitted, |

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Nicole N. Murley*
NICOLE MURLEY
Senior Litigation Counsel
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-0473
(202) 616-8962 (facsimile)
Nicole.Murley@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is Box 868, Ben Franklin Station, Washington, DC 20044. I am not a party to the above-entitled action. I have caused service of the accompanying **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE** on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: October 31, 2019              *s/ Nicole N. Murley*
                                     Nicole N. Murley