| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-0473<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt*<br>Judy Rabinovitz*<br>Anand Balakrishnan*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T:  (212) 549-2660<br>F:  (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T:  (415) 343-1198<br>F:  (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*Admitted Pro Hac Vice* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **JOINT STATUS REPORT** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on November 6, 2019, in anticipation of the status conference scheduled at 2:00 pm on November 8, 2019. The parties submit this joint status report in accordance with the Court's instruction.

## I. DEFENDANTS' POSITIONS

### A. Update on Reunifications for the Original Class Period

As of November 4, 2019, Defendants have discharged 2,789 of 2,814 possible children of potential class members for the original class period. That is, Defendants have discharged 2,789 of the 2,814 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018. *See* Table 1: Reunification Update. This is an increase of one discharge reported in Table 1 since the JSR filed on October 16, 2019. *See* ECF No. 484.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States, but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,814 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of November 4, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

**Table 1: Reunification Update**

| **Description** | **Phase 1 (Under 5)** | **Phase 2 (5 and above)** | **Total** |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2707 | 2814 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 107 | 2682 | 2789 |
| • Children discharged by being reunified with separated parent | 82 | 2086 | 2168 |
| • Children discharged under other appropriate circumstances (these include | 25 | 596 | 621 |

| | | | |
|---|---|---|---|
| discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | | | |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
| ○ Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |
| ○ Parent in other federal, state, or local custody | 0 | 0 | 0 |
| ○ Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 0 | 4 | 4 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 8 | 8 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 11 | 11 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 0 | 0 |
| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |

**B. Update on Removed Class Members for the Original Class Period**

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least November 4, 2019. These

numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| STARTING POPULATION | Children in ORR care with parents presently departed from the U.S. | 13 | Defs. |
| PROCESS 1: Identify & Resolve Safety/Parentage Concerns | Children with no "red flags" for safety or parentage | 13 | Defs. |
| PROCESS 2: Establish Contact with Parents in Country of Origin | Children with parent contact information identified | 13 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 13 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 13 | Defs. |
| PROCESS 3: Determine Parental Intention for Minor | Children for whom ACLU has communicated parental intent for minor: | 11 | Pls. |
| | • Children whose parents waived reunification | 11 | Pls. |
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |

| | | | |
|---|---|---|---|
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | PIs |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

### C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | **424 (247Parents/177Children)**[2] |
| | • Number who elect to receive settlement procedures | **264 (145 Parents/119 Children)** |
| | • Number who waive settlement procedures | **160 (102 Parents/58 Children)**[3] |
| **Interviews** | Total number of class members who received interviews | **159**[4] |
| | • Parents who received interviews | **82** |
| | • Children who received interviews | **77** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **68**[5] |

---

[1] The number of election forms reported here is the number received by the Government as of October 27, 2019.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **67**[6] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
| | Total number of CFI decisions issued for children by USCIS | **73**[7] |
| | • Number of children determined to establish CF by USCIS | **73**[8] |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **12** |
| | • Number of parents granted asylum by USCIS | **1** |
| | • Number of parents referred to immigration court | **2** |
| | • Number of children granted asylum by USCIS | **2**[9] |

---

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum

| | | |
|---|---|---|
| | • Number of children referred/returned to immigration court | 7 |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **102 Parents**[10] |

### D. Parents Who ICE Records Reflect Have Absconded After Being Released

| | | |
|---|---|---|
| **Absconders** | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | 192[11] |

### E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. Defendants have now completed identifying members of the expanded class to Plaintiffs' counsel, and have produced Batches 1 through 11 to Plaintiffs.

---

application.

[10] This number is as of October 26, 2019.

[11] There are 2,611 possible class members in the original class. Of those 2,611, 970 were enrolled by DHS in the ATD program at some point between June 26, 2018 and October 4, 2019. Of those 970 that were enrolled, 192 absconded. Absconder is defined as an alien who has been ordered deported or removed whose whereabouts are unknown to DHS. This number is current as of October 25, 2019.

### F. MMM Settlement Forms—Discrepancies

In accordance with a request by MMM counsel, Defendants conducted a comparison of their own lists of settlement forms received to the lists provided by MMM counsel to determine why there were discrepancies in the parties' reporting. Defendants sent the results of that comparison to MMM counsel on September 19, 2019. MMM counsel sent an email on October 11, 2019, stating that they believed that Defendants' review had resolved the discrepancies, but posing some additional questions. Defendants have provided responses to MMM counsel for all of these inquiries and are continuing to adjust the number of received forms based on resolution of the discrepancies.

### G. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.

*Data Requested by Plaintiffs*.  Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR. The parties have discussed amending this schedule so that Defendants will produce these updated reports on a monthly basis. Defendants provided Plaintiffs with an updated report on October 21, 2019, and continue to work to implement monthly reporting on a regular schedule.

*Processes and Procedures*.  Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and

communication between the agencies that have been adopted by the agencies since June 26, 2018.  The outline also included an overview of the options for separated parents and children to obtain information about reunification options. The parties have met and conferred since then regarding the government's proposals. Defendants have held several internal telephonic meetings, and have spoken with representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures. After numerous conferrals, Defendants provided additional information to Plaintiffs on September 4, 2019, and requested that Plaintiffs clarify what information they were seeking with regard to other inquiries. Plaintiffs have not responded to that request for information, nor have they raised any additional concerns regarding Defendants' processes since the last JSR and status conference.

In addition to the procedures described in previous filings, Defendants have now implemented the use of a tear sheet for families parents and children that are separated that provides information about the separation to the separated parent, as well as information about how to locate their children.  The tear sheet also includes an email address by which separated parents can provide information to DHS that they wish to have considered. This email address has also been provided to Plaintiffs' counsel and other interested counsel.  Defendants stand ready to continue

to meet and confer on this issue if Plaintiffs have any additional concerns they would like to bring to Defendants' attention.

On November 5, 2019, Defendants received an email from Catherine Weiss, who represents non-party Catholic Charities Community Services of the Archdiocese of New York, informing Defendants that she planned to submit an insert for the parties Joint Status Report. Defendants responded that Ms. Weiss is not entitled to submit statements into the JSR because Ms. Weiss does not represent any parties to this litigation.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

As of the date of this report, the government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have focused on reaching children whose membership in the class is not contested, and for whom the government has provided at least one phone number for a sponsor or for the child's parent. There are 998 children that meet that description.[12]

---

[12] The eleven lists identify a total of 1,556 unique children, 1,095 of which have been identified by the government as being children of potential expanded class members, 312 of which have been categorized as "exclusions", and 149 of which have been identified by the government as being *both* children of potential expanded class members and "exclusions" inconsistently across the government's various lists. The Steering Committee has requested that the government clarify its position with respect to the class membership of the parents of these 149 children. For 998 of the 1,095 children identified by the government as being children of potential expanded class members, the government has provided at least one phone number for a sponsor, parent, relative or other individual. The Steering Committee

The Steering Committee begins by calling the provided phone numbers. Where the phone number is for a sponsor and not a separated parent, the Steering Committee attempts to reach the sponsor, then obtain contact information for the parent, and then finally reach the parent.

As of November 6, the Steering Committee has made over 4,400 phone calls to the families of 832 of these 998 children. Of the 832 families to whom the Steering Committee has attempted outreach, the Steering Committee has successfully reached 451 sponsors or their attorneys, and 250 parents or their attorneys.

There are currently 428 families in this group that the Steering Committee has been unable to reach by telephone despite multiple attempts. This is because either the phone numbers for sponsors do not work or are not answered, or because a sponsor is unable or unwilling to provide the Steering Committee with a way to reach the parent. The Steering Committee has commenced extensive efforts to locate these families in their respective countries of origin, and is currently actively engaged in on-the-ground searches for parents in Guatemala and Honduras. As of November 6, Steering Committee members had successfully tracked down and established contact with 46 of these families.

---

intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

B. **Additional Lists of Children of Expanded Class Members**

Since the last Joint Status Report, the government has provided two more lists that disclose 266 previously unreported children of potential class members. The Steering Committee is actively attempting to reach families of these children.

C. **Relief for Deported Parents**

The parties are meeting and conferring as to the process by which Defendants will comply with the Court's September 4 Order.

D. **Implementation of Tear Sheets and Information Sharing Protocols**

Defendants have provided sample templates and guidance on the "tear sheets" it intends to provide to parents of separated children. Plaintiffs will meet and confer with the government on this issue.

Counsel for Legal Service Providers for Children is submitting an account of the current status of negotiations regarding information sharing. That submission outlines Defendants' current process for sharing separation information with representatives for children and for providing Defendants with information that contradicts its stated basis for a separation. Plaintiffs believe that the information-sharing process may require the Court's supervision, and will work with counsel for the Legal Service Providers to raise that issue with Defendants and the Court at a later date.

### E. Steering Committee Progress for June 26 Initial Class

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. On October 21, the government reported that 13 children with removed parents remained in ORR custody. The Steering Committee has advised the government that no preference will be forthcoming for one of those parents due to complex and individualized family circumstances, leaving 12 children with removed parents in the operative group. The Steering Committee has delivered preferences for 11 parents of those children. The parent of the remaining child sought and was granted the opportunity to return to the United States pursuant to the Court's September 4 Order, and after returning to the United States looks forward to commencing the process to be reunified with her son.

### F. Children Whose Parents Have Submitted Preferences and Are Still Detained

The Steering Committee continues to meet and confer with the government about children who are still in ORR after the Steering Committee has submitted a final reunification election.

III. *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

| | | |
|---|---|---|
| 1 | DATED: November 6, 2019 | Respectfully submitted, |
| 2 | | /s/ Lee Gelernt |
| 3 | | Lee Gelernt* |
| 4 | | Judy Rabinovitz*<br>Anand Balakrishnan* |
| 5 | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 6 | | 125 Broad St., 18th Floor |
| 7 | | New York, NY 10004<br>T: (212) 549-2660 |
| 8 | | F: (212) 549-2654 |
| 9 | | *lgelernt@aclu.org* |
| 10 | | *jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org* |
| 11 | | |
| 12 | | Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF SAN DIEGO |
| 13 | | & IMPERIAL COUNTIES |
| 14 | | P.O. Box 87131<br>San Diego, CA 92138-7131 |
| 15 | | T: (619) 398-4485 |
| 16 | | F: (619) 232-0036<br>*bvakili@aclusandiego.org* |
| 17 | | |
| 18 | | Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069) |
| 19 | | AMERICAN CIVIL LIBERTIES UNION |
| 20 | | FOUNDATION<br>39 Drumm Street |
| 21 | | San Francisco, CA 94111 |
| 22 | | T: (415) 343-1198<br>F: (415) 395-0950 |
| 23 | | *skang@aclu.org* |
| 24 | | *samdur@aclu.org* |
| 25 | | *Attorneys for Petitioners-Plaintiffs* |
| 26 | | *\*Admitted Pro Hac Vice* |
| 27 | | |
| 28 | | |

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Nicole N. Murley*
NICOLE N. MURLEY
Senior Litigation Counsel
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-0473
(202) 616-8962 (facsimile)
Nicole.Murley@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*