| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-0473<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt*<br>Judy Rabinovitz*<br>Anand Balakrishnan*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T:  (212) 549-2660<br>F:  (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T:  (415) 343-1198<br>F:  (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*Admitted Pro Hac Vice* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>    Petitioners-Plaintiffs,<br><br>  vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>    Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**JOINT STATUS REPORT** |

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on December 4, 2019, in anticipation of the status conference scheduled at 2:15 pm on December 6, 2019. The parties submit this joint status report in accordance with the Court's instruction.

I.    **DEFENDANTS' POSITIONS**

  **A. Update on Reunifications for the Original Class Period**

As of December 2, 2019, Defendants have discharged 2,791 of 2,814 possible children of potential class members for the original class period. That is, Defendants have discharged 2,791 of the 2,814 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018. *See* Table 1: Reunification Update. This is an increase of two discharges reported in Table 1 since the JSR filed on November 6, 2019. *See* ECF No. 495.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States,

but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,814 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of December 2, 2019. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

**Table 1: Reunification Update**

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2707 | 2814 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 107 | 2684 | 2791 |
| • Children discharged by being reunified with separated parent | 82 | 2086 | 2168 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 25 | 598 | 623 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification <u>or</u> is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
| ○ Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |

| | | | |
|---|---|---|---|
| o Parent in other federal, state, or local custody | 0 | 0 | 0 |
| o Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 0 | 3 | 3 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 8 | 8 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 10 | 10 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 0 | 0 |
| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |

### B. Update on Removed Class Members for the Original Class Period

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least December 2, 2019. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 12 | Defs. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 12 | Defs. |
| **PROCESS 2: Establish Contact** | Children with parent contact information identified | 12 | Defs. |

| | | | |
|---|---|---|---|
| with Parents in Country of Origin | Children with no contact issues identified by plaintiff or defendant | 12 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 12 | Defs. |
| PROCESS 3: Determine Parental Intention for Minor | Children for whom ACLU has communicated parental intent for minor: | 10 | Pls. |
| | • Children whose parents waived reunification | 10 | Pls. |
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | Pls. |
| PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |

| | | | |
|---|---|---|---|
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | o Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

## C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | **427 (250Parents/177Children)**[2] |
| | • Number who elect to receive settlement procedures | **266 (147 Parents/119 Children)** |
| | • Number who waive settlement procedures | **161 (103 Parents/58 Children)**[3] |
| **Interviews** | Total number of class members who received interviews | **161**[4] |
| | • Parents who received interviews | **84** |

---

[1] The number of election forms reported here is the number received by the Government as of November 6, 2019.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

|  |  |  |
|---|---|---|
|  | • Children who received interviews | **77** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **69**[5] |
|  | • Number of parents determined to establish CF or RF upon review by USCIS | **68**[6] |
|  | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
|  | Total number of CFI decisions issued for children by USCIS | **73**[7] |
|  | • Number of children determined to establish CF by USCIS | **73**[8] |
|  | • Number of children determined not to establish CF by USCIS | **0** |
|  | Total number of affirmative asylum decisions by USCIS | **14** |
|  | • Number of parents granted asylum by USCIS | **2** |

---

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an Immigration Judge (which are included in the interview totals).

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

|  |  |  |
|---|---|---|
|  | • Number of parents referred to immigration court | **2** |
|  | • Number of children granted asylum by USCIS | **3**[9] |
|  | • Number of children referred/returned to immigration court | **7** |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **103 Parents**[10] |

### D. Parents Who ICE Records Reflect Have Absconded After Being Released

| **Absconders** | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | 195[11] |
|---|---|---|

### E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. Defendants have now completed identifying members of the expanded class to Plaintiffs' counsel, and have produced Batches 1 through 11 to Plaintiffs. The Steering Committee notified Defendants that in the 11 batches there were 149 individuals who have been identified by the government as being both children of potential expanded class members and "exclusions." Defendants are in the final stage of reviewing these 149 cases and an additional 35 cases (for a total of 184) which needed updated determinations based on additional

---

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

[10] This number is as of November 23, 2019.

[11] Absconder is defined as an alien who has been ordered deported or removed whose whereabouts are unknown to DHS.

information that became available over the course of the six month reporting period for identifying the expanded class. Once the list is cleared by DHS and HHS it will be produced to Plaintiffs.

## F. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.

*Data Requested by Plaintiffs*. Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR. The parties have discussed amending this schedule so that Defendants will produce these updated reports on a monthly basis. Defendants provided Plaintiffs with an updated report on November 8, 2019, and continue to work to implement monthly reporting on a regular schedule.

*Processes and Procedures*. Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018. The outline also included an overview of the options for separated parents and children to obtain information about reunification options. The parties have met and conferred since then regarding the government's proposals. Defendants have held several internal telephonic meetings, and have spoken with representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures. After numerous conferrals, Defendants provided additional information to Plaintiffs on September 4, 2019, and requested that Plaintiffs clarify what information they were seeking with regard to other inquiries. Plaintiffs have not raised any additional concerns regarding Defendants' processes since the last JSR and status conference.

In addition to the procedures described in previous filings, Defendants have now implemented the use of a tear sheet for families parents and children that are separated that provides information about the separation to the separated parent, as well as information about how to locate their children. The tear sheet also includes an email address by which separated parents can provide information to DHS that they wish to have considered. This email address has also been provided to Plaintiffs' counsel and other interested counsel.

Following the November 8 status conference, the Court directed the parties to continue to meet and confer on the information sharing protocols between the government agencies involved in family separations, and between the government and Plaintiffs and the legal service providers. On November 19, the parties met and conferred regarding the information sharing protocols. On November 22, Defendants provided Plaintiffs, pursuant to the Protective Order, with the Office of Refugee Resettlement's draft guidance to its field staff regarding new separations. Defendants asked Plaintiffs to share with them any specific problems they were aware of regarding the information sharing protocols. On December 1, Plaintiffs sent follow-up questions and requests for clarification about the protocols to Defendants. Defendants are reviewing Plaintiffs requests for additional information and will respond accordingly.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

As of the date of this report, the government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have initially focused on reaching children whose membership in the class is not contested, and for whom the government has provided at least one phone number

for a sponsor or for the child's parent. There are 998 children that meet that description.[12]

The Steering Committee begins by calling the provided phone numbers. Where the phone number is for a sponsor and not a separated parent, the Steering Committee attempts to reach the sponsor, then obtain contact information for the parent, and then finally reach the parent.

As of December 4, the Steering Committee has made over 4,600 phone calls to the families of 913 of these 998 children. Of the 913 families to whom the Steering Committee has attempted outreach, the Steering Committee has successfully reached 455 sponsors or their attorneys, and 313 parents or their attorneys. There is significant overlap in these two groups, but for 398 families the Steering Committee has not yet been able to reach either a sponsor or a separated parent.

## B.  Steering Committee Progress Contacting "Unreachable" Parents

There are currently 685 children for whom the Steering Committee has not yet successfully reached the separated parent. For approximately half of these families, the Steering Committee is hopeful that continued telephonic outreach attempts will ultimately results in successful contact with the separated parent, and the Steering Committee is actively making these calls. For 317 families in this group, the Steering Committee has been unable to reach a parent despite multiple

---

[12] The eleven lists identify a total of 1,556 unique children, 1,095 of which have been identified by the government as being children of potential expanded class members, 312 of which have been categorized as "exclusions", and 149 of which have been identified by the government as being *both* children of potential expanded class members and "exclusions" inconsistently across the government's various lists. As discussed during the last Status Conference, the Steering Committee has requested that the government clarify its position with respect to the class membership of the parents of these 149 children, and as of December 4, the government has not yet responded. In the interim, the Steering Committee has actively attempted to reach families in this category, and as of December 4 has successfully reached 63 sponsors or their attorneys, and 29 parents or their attorneys, in this group. The Steering Committee also intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

attempts, and is not optimistic that continued telephone outreach alone will be successful. These cases include situations in which the phone numbers for sponsors do not work, are not answered, or appear to belong to unrelated third parties, and they also include cases where the sponsor has been reached at a phone number provided by the government, but is unable or unwilling to provide the Steering Committee with a way to reach the parent.

As noted in previous Joint Status Reports, the Steering Committee has commenced extensive efforts to locate these "unreachable" parents in their respective countries of origin, and is currently actively engaged in on-the-ground searches for parents across Central America. As of December 4, Steering Committee members had successfully tracked down and established contact with 82 families and we continue our efforts. Additionally, since the last Joint Status Report, the Steering Committee has commenced additional efforts to contact the unreachable parents, including those believed to be in the United States. The Steering Committee is establishing a toll-free telephone number to receive inbound phone calls from potential members of the expanded class. We will be distributing this number both by email and U.S. Mail to non-governmental organizations and other community organizations who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, we are preparing a mailing to sponsors and parents who have not responded to phone calls, at the addresses provided by the government, asking parents and sponsors to call this toll-free number.

Finally, we will be exploring the possibility of publicizing the toll-free number in Spanish language media. If we determine this method of contacting parents is feasible, depending upon the anticipated costs of these efforts, we will raise the issue of reimbursement for the expense of these efforts with the government, and if the government is unwilling to assist, with the Court.

C. **Steering Committee Progress for June 26 Initial Class**

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. As previously reported in the last Joint Status Report, most recently on October 21, the government reported that 13 children with removed parents remained in ORR custody. The Steering Committee has advised the government that no preference will be forthcoming for one of those parents due to complex and individualized family circumstances, leaving 12 children with removed parents in the operative group. The Steering Committee has delivered preferences for 11 parents of those children. The parent of the remaining child sought and was granted the opportunity to return to the United States pursuant to the Court's September 4 Order, and after returning to the United States looks forward to commencing the process to be reunified with her son.

D. **Information Sharing**

The parties continue to meet and confer regarding information sharing among government agencies, and from the government to parents and children whom the government has separated. On November 22, the government produced internal HHS training materials for new separations to Plaintiffs, and on December 2, Plaintiffs sent the government questions in response. The parties also conferred by phone on December 2, and will continue these discussions.

E. **Relief for Deported Parents**

The parties are meeting and conferring as to the process by which Defendants will comply with the Court's September 4 Order. Plaintiffs will update the Court as to the status of the negotiations in the next joint status report.

### III. *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: December 4, 2019            Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Nicole N. Murley*
NICOLE N. MURLEY
Senior Litigation Counsel
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 616-0473
(202) 616-8962 (facsimile)
Nicole.Murley@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*