UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. Immigration and Customs Enforcement, et al., <br><br> Defendants. | Case No. 3:18-cv-428-DMS MDD <br><br> **LEGAL SERVICE PROVIDERS' SUBMISSION** |

The Court ordered the parties to file a joint status report ("JSR") by 3:00 p.m. on January 15, 2020, in anticipation of the status conference scheduled at 1:00 p.m. on January 17, 2020. The Legal Service Providers, who originally appeared in this action as objectors to the settlement in *M.M.M. v. Sessions*, subsequently sought and received the agreement of the Court and the parties to participate in negotiations regarding information-sharing about family separations. *See* Transcript of Telephonic Status Conference of Feb. 8, 2019, at 11-12 (ECF 109). To obtain information about the current state of information-sharing with the Legal Service Providers (LSPs) and child advocates who hold federal subcontracts or contracts to provide services to immigrant children in ORR custody, we recently sent a survey to these entities. As signaled in their submission of November 6, 2019, the LSPs now offer this submission, concurrently with the parties' JSR, to inform the parties and the Court of the results of that survey.

**LEGAL SERVICE PROVIDERS FOR CHILDREN
REPORT ON INFORMATION-SHARING**[1]

A.  **The Meet-and-Confer Process**

Working with Plaintiffs, the Legal Service Providers (LSPs) transmitted a proposal to the Government at the end of May 2019 seeking the Government's agreement to share a defined set of "Separation Information" with the lawyers for separated children and their appointed child advocates. The requested Separation Information included:

- the names and A#s of the separated parent and child;
- contact information for the child and parent;
- the date of the separation;
- an account of the basis for the separation detailed enough to allow the lawyer for the parent, if any, and the lawyer and advocate for the children, if any, to challenge that basis; and
- the name and contact information of any lawyer or qualified representative[2] who had made an appearance for the parent or child, as well as of the advocate appointed to the child's case, if any, to enable families to coordinate on critical decisions, including possible defenses to removal proceedings, possible reunification, or possible joint repatriation.

---

[1] This account addresses primarily the information-sharing requests of the Legal Service Providers for children and does not fully recount the parallel requests made on behalf of parent class members.

[2] The term "lawyer" as used in this ssubmission is meant also to include qualified representatives who make appearances for separated parents or children.

Plaintiffs and the LSPs requested that such Separation Information be made regularly available to lawyers and advocates for children and parents through an electronic portal or by other means.

The Government responded on July 11, 2019, declining to provide the information requested on several grounds and declining to transmit any information on a regular basis to lawyers and advocates for separated parents and children.

Negotiations followed over the intervening months. In August, the Government stated that it would provide spreadsheets, similar to those provided monthly to the ACLU, to the ORR federal field specialists who oversee the children's shelters. The Government represented that these spreadsheets would be updated weekly and would therefore be more current than those sent monthly to the ACLU.

The Government also advised that if lawyers or child advocates had documentary information to contradict the stated basis for any particular separation, they could submit such information by email, together with their notice of appearance for the child or parent, to SeparationSupplementalInformation@ice.dhs.gov. The Government represented that ICE would respond once it had completed review of the submission.

Further, the Government represented that ORR was drafting internal guidance regarding information-sharing with the LSPs and child advocates which would permit the federal field specialists to relay the basis for the separations, and other non-law-enforcement-sensitive information contained in the spreadsheets, to lawyers who had made appearances for the children and to their appointed child advocates. The government also stated that ORR would provide these individuals updates on the location of the parents upon request.

Plaintiffs and the LSPs asked to see this guidance. By email of September 4, 2019, the Government declined to share the ORR guidance. Following the status conference of November 8, 2019, the parties continued to meet and confer, without the participation of the LSPs. On information and belief, Defendants have since shared this guidance with Plaintiffs. A couple of hours before this filing, Plaintiffs shared an email that includes a Q&A between Plaintiffs and Defendants concerning the guidance. This Q&A sheds some light on the scope and content of guidance, but neither the LSPs nor undersigned counsel has seen the guidance itself.

### B. The Survey

Whatever protocols on information-sharing may be in place, the LSPs and child advocates were interested in learning more about what information is actually being shared in the field. To ascertain how the current information-sharing system is working for the LSPs and child advocates, we collaborated to design a survey instrument, attached as Exhibit A. Before the survey was finalized, we shared it with Catholic Charities Community Services (CCCS) of the Archdiocese of New York, which then held the sole federal subcontract to provide legal services to children in ORR custody in New York City. (CCCS continues to hold subcontracts to cover NY shelters; KIND and The Door now also hold subcontracts to cover some of these shelters.) CCCS staff completed and returned a batch of initial surveys on November 1, 2019.

Using these initial survey responses as a guide, we consulted with the Vera Institute of Justice, which holds the federal contract to provide legal services nationwide and subcontracts with the LSPs. We also conferred with the Young Center for Immigrant Children's Rights, which holds the federal contract to provide child advocate services, including by offering best interests evaluations and recommendations for especially vulnerable children. We then refined the

survey, entered the refined document into Survey Monkey, and recorded into Survey Monkey the responses that CCCS had earlier completed on paper. On several dates in November and December, the online survey link was distributed to the LSP subcontractors and child advocates covering ORR shelters throughout the nation. Responses have come in to Survey Monkey periodically since the initial distribution.

### C.   Survey Results

To date, 67 surveys have been completed: 4 by child advocates and 63 by LSPs. The surveys cover ORR shelters in 15 cities in 5 states, including Arizona, California, Illinois, New York, and Texas. The separated children about whom the LSPs and child advocates ("respondents") wrote ranged in age from 2 to 17.

All survey respondents got their information from caseworkers in the ORR shelters. A little more than 10% also reached out to federal field specialists (FFSs) or other sources. As these answers reflect, the LSPs and child advocates habitually confer with caseworkers, and sometimes also with FFSs, to seek information about the children to whom they are providing legal or advocacy services.

The key facts that lawyers and advocates for the children were able or unable to learn are summarized below.

- **Fact of Separation**: In 91% of cases, the caseworker or FFS knew that the child had been separated; in 9% of cases, the caseworker or FFS did not know about the separation until the LSP or child advocate shared this information.

- **Identity of Separated Parent**: In 68% of cases, the caseworker or FFS did not share the name or A-number of the separated parent with the LSP or child advocate; in 27% of cases, the caseworker or FFS shared both the parent's name and A-number; in 5% of cases, the caseworker or FFS shared either the parent's name or A-number.

- **Location of Separated Parent**: In 70% of cases, the caseworker or FFS did not share the location of the separated parent; in 30% of cases the caseworker or FFS did share this information.
- **Contact Information for Separated Parent**: In 89% of cases, the caseworker or FFS did not share contact information for the separated parent; in 11% of cases, the caseworker or FFS did share this information.
- **Lawyers for the Separated Parent**: In only one case did the FFS or caseworker share the name and contact information of the federal defender for a separated parent; in only two cases did the caseworker or FFS share the name and contact information of the parent's immigration lawyer.
- **Basis for the Separation**: In 71% of cases, the caseworker or FFS did not share information about the basis for the separation; in 29% of cases, the caseworker or FFS did share such information. When information was provided,
    - 67% of the time, it was general only (e.g., "criminal history," "doubts about parentage," "danger to the child"); 33% of the time, it was more specific (e.g., "DUI conviction, Detroit, MI, 2012," "Adult's name not on child's birth certificate, child denies parentage").
    - None of the survey respondents stated that they had information or documents to contradict the government's stated basis for the separation.
    - At the same time, however, only one respondent affirmed that the information provided was "sufficient to allow you to understand whether other information in your possession

    contradicts the government's stated basis for the separation." It is therefore unclear whether additional respondents might have identified contradictory information if they had better understood the basis for the separation.

- **Reunification**: Only 19 survey respondents indicated that reunification planning was under way for the child in question at the time the respondent completed the survey. Only 11 respondents answered the question about whether the FFS or caseworker advised them of the reunification plan in advance, and 6 of the 11 (55%) reported no advance warning.

  Based on these results, the LSPs submit that they, and the child advocates with whom they work, continue to lack the information they need effectively to serve separated children in ORR custody. As the LSPs have stated before, they have an urgent need to coordinate with the separated parents and their lawyers in order to provide effective representation to their child clients. Most (though not all) children in custody tell their lawyers and advocates that they want to be with their parents, wherever their parents may end up. Thus, in order to advise children on whether to accept voluntary departure, seek asylum, or pursue some other form of relief from removal, the children's lawyers need to know what defenses, if any, the parents are asserting.

  Moreover, the LSPs and child advocates need to understand the basis for the separation to know whether the information they independently collect contradicts this basis. In several cases, for example, LSPs and child advocates have persuaded the government to establish parentage through DNA testing when the government had expressed doubts about parentage. Likewise, the LSPs and child advocates have helped in several cases to disprove parents' alleged criminal history. When information is not flowing, the LSPs and child advocates are hamstrung in their

efforts both to represent the children in immigration proceedings and to advocate for communication and reunification with their parents.

Finally, providing information to the LSPs and child advocates on a regular basis would serve the government's purposes of minimizing unnecessary detention, expediting repatriation through voluntary departure, and complying with the policy to "maintain family unity" set out in Executive Order Number 13841 (June 20, 2018).

Respectfully submitted,

*/s/ Catherine Weiss*
Catherine Weiss
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ, 07068
T: (973) 597-2438
F: (973) 597-2439
*cweiss@lowenstein.com*

*Admitted Pro Hac Vice

# DOCUMENTING INFORMATION SHARED BY ORR
# RE: FAMILY SEPARATION AND REUNIFICATION

This survey pertains only to the separation of children from their *biological or legally adoptive parents or legal guardians*. Separation of children from other family members is a serious, ongoing problem but is not addressed here. If biological parentage is in doubt, but the child asserts that the adult is the parent, please include the case.

**Part 1: Family Separation Information** (complete at or after your first request for separation information from the government)

* 1. Your name

* 2. Your employer

* 3. Your title

* 4. Age of the child

* 5. Date of this form

* 6. Have you filled in all or part of this survey before for this same child? (If so, no problem. You can just fill in the changed information or the parts you left blank before.)

  ○ Yes

  ○ No

1

* **7. Date or date range of conversation(s) with ORR, described below**

**8. Does the information below pertain to**

- [ ] a caseworker
- [ ] a federal field specialist (FFS)
- [ ] other

If other, what position did that person hold?

**9. Where does that person work (name of shelter and city, as appropriate) (LSPs, name the shelter only if you have filed a G-28 or E-28 on behalf of the child; otherwise, name only the city)?**

**10. Did the caseworker or FFS know that the child had been separated?**

- ( ) Y
- ( ) N

**11. Did the caseworker or FFS know and share the name and A# of the separated parent?**

- ( ) Y
- ( ) Name only
- ( ) A# only
- ( ) N

**12. Did the caseworker or FFS know and share the location of the separated parent?**

- ( ) Y
- ( ) N

2

13. Did the caseworker or FFS know and share contact information for the separated parent?

◯ Y

◯ N

14. If the parent was in immigration or criminal custody, did the caseworker or FFS know and share the name and contact information for the parent's deportation officer or a responsible officer in the jail or prison where the parent was held?

◯ Y

◯ Name only

◯ N

15. Did the caseworker or FFS know and share the name and contact information for the parent's federal defender, if any?

◯ Y

◯ Name only

◯ N

16. Did the caseworker or FFS know and share the name and contact information of the parent's immigration lawyer or qualified representative, if any?

◯ Y

◯ Name only

◯ N

17. Did the caseworker or FFS share information about the basis for the separation?

◯ Y

◯ N

18. If yes, was the separation information shared (check all that apply)

☐ general only, e.g., "criminal history," "doubts about parentage," "danger to child"?

☐ more specific, e.g., "DUI conviction, Detroit, MI, 2012," "Adult's name not on child's birth certificate; child denies parentage"?

☐ sufficient to allow you to understand whether other information in your possession contradicts the government's stated basis for the separation?

**Part II:  Contesting the Basis for the Separation**  (complete if you have reached the stage where you have independent information about the basis for the separation; otherwise leave blank)

19. Do you have information that contradicts the government's stated basis for separation?

○ Y

○ N - If no, skip to Part III

20. If yes, do you have documents that contradict the government's stated basis for separation?

○ Y

○ N

21. If yes, did you send those documents to the government at SeparationSupplementalInformation@ice.dhs.gov?

○ Y

○ N

22. Why or why not?

4

**23. If you sent documentary information to that email address, are you aware of any response from the government?**

○ Y

○ N

**24. If yes, what response and how long did the response take?**

[                              ]

**25. Do you have other (including non-documentary) information that contradicts the government's stated basis for the separation?**

○ Y

○ N

**26. If yes, did you share that information with the government?**

○ Y

○ N

**27. If so, how and with a person in what position (e.g., with a caseworker, federal field specialist, deportation officer, other)?**

[                              ]

**28. Did you receive a response?**

○ Y

○ N

**29. If yes, what response and how long did the response take?**

**Part III  Family Reunification Information** (complete if reunification is under consideration or complete; otherwise, leave blank)

**30. Is planning for reunification under way?**

○ Y

○ N

**31. Was the child already reunified with the separated parent?**

○ Y

○ N

**32. Is reunification planned for or did it occur in:**

○ the U.S.

○ home country

○ other

Other (please specify)

**33. Did the caseworker or FFS advise you of the reunification in advance?**

○ Y

○ N

6

**34. If yes, how much in advance did you learn of the impending reunification?**

○ 1-3 days

○ 4-6 days

○ 7-14 days

○ more than 14 days

**35. Was this time sufficient to enable you to prepare the child for reunification?**

○ Y

○ N