JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0473
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

              Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

              Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on January 15, 2020, in anticipation of the status conference scheduled at 1:00 pm on January 17, 2020.  The parties submit this joint status report in accordance with the Court's instruction.

## I.    DEFENDANTS' POSITIONS

### A. Update on Reunifications for the Original Class Period

As of January 13, 2020, Defendants have discharged 2,794 of 2,815[1] possible children of potential class members for the original class period. That is, Defendants

---

[1] During its efforts to identify all potential class members in the expansion class period, the government discovered a child who was in ORR care on June 26, 2018, but was not included in previous legacy class reporting. After the child entered ORR care, however, he admitted to falsely claiming separation. ORR conducted further review of the child's case, and confirmed that he was not separated from a parent. Nevertheless, for purposes of this reporting, the government has updated the total count of possible children of potential legacy class members from 2,814 to 2,815, to remain consistent with prior reporting. Specifically, Table 1 contains a row to account

have discharged 2,794 of the 2,815 possible children of potential class members who were in the care of the Office of Refugee Resettlement (ORR) as of June 26, 2018. *See* Table 1: Reunification Update. This is an increase of three[2] discharges reported in Table 1 since the JSR filed on December 4, 2019. *See* ECF No. 502.

Currently, there is one child of a class member from the original class period who remains in ORR care and is proceeding towards reunification or other appropriate discharge. This child has a parent who departed from the United States, but the Steering Committee has advised that resolution of parental preference will be delayed. Defendants are supporting the efforts of the Steering Committee to obtain a statement of intent from the parent. Once Defendants receive notice from the Steering Committee, Defendants will either reunify the child or move him into the TVPRA sponsorship process, consistent with the intent of the parent.

The current reunification status for the 2,815 children ages 0 through 17 for the original class period, who have been the focus of Defendants' reporting to date, is further summarized in Table 1. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of January 13, 2020. These numbers are dynamic and continue to change as more reunifications, determinations on class membership, or discharges occur.

---

for children in care who were later discovered not to have been separated from parents. (The child at issue here was discharged to a sponsor in November 2018.)

[2] That is, the child identified in footnote 1 plus two new discharges since the last JSR, dated December 4, 2019.

**Table 1: Reunification Update**

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2708 | 2815 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 107 | 2687 | 2794 |
| • Children discharged by being reunified with separated parent | 82 | 2086 | 2168 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 25 | 601 | 626 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification or is not available for discharge at this time: | 0 | 1 | 1 |
| • Parent presently outside the U.S. | 0 | 1 | 1 |
| ○ Steering Committee has advised that resolution will be delayed | 0 | 1 | 1 |
| • Parent presently inside the U.S. | 0 | 0 | 0 |
| ○ Parent in other federal, state, or local custody | 0 | 0 | 0 |
| ○ Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 0 | 3 | 3 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 7 | 7 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 9 | 9 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 0 | 0 |

| Children in care for whom the Steering Committee could not obtain parental preference | 0 | 1 | 1 |
|---|---|---|---|

## B. Update on Removed Class Members for the Original Class Period

The current reunification status of removed class members for the original class period is set forth in Table 2 below. The data presented in this Table 2 reflects approximate numbers maintained by ORR as of at least January 13, 2020. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 11 | Defs. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 11 | Defs. |
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 11 | Defs. |
| | Children with no contact issues identified by plaintiff or defendant | 11 | Defs. & Pls. |
| | Children with parent contact information provided to ACLU by Government | 11 | Defs. |
| **PROCESS 3: Determine Parental Intention for Minor** | Children for whom ACLU has communicated parental intent for minor: | 9 | Pls. |
| | • Children whose parents waived reunification | 9 | Pls. |

4

18cv428 DMS MDD

| | | | |
|---|---|---|---|
| | • Children whose parents chose reunification in country of origin | 0 | Pls. |
| | • Children proceeding outside the reunification plan | 0 | Pls. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 1 | Pls. |
| | • Children with voluntary departure orders awaiting execution | 0 | Defs. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Defs. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pls. |
| | Children whose parents steering committee could not obtain parental preference | 1 | PIs |
| **PROCESS 4: Resolve Immigration Status of Minors to Allow Reunification** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pls. |
| | • Children in ORR care with orders of voluntary departure | 0 | Defs. |
| | • Children in ORR care w/o orders of voluntary departure | 0 | Defs. |
| | o Children in ORR care whose immigration cases were dismissed | 0 | Defs. |

5

## C. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS[3] | DESCRIPTION | NUMBER |
|---|---|---|
| Election Forms[3] | Total number of executed election forms received by the Government | 430 (253 Parents/ 177 Children)[4] |
| | • Number who elect to receive settlement procedures | 269 (150 Parents/ 119 Children) |
| | • Number who waive settlement procedures | 161 (103 Parents/ 58 Children)[5] |
| Interviews | Total number of class members who received interviews | 163[6] |
| | • Parents who received interviews | 85 |
| | • Children who received interviews | 78 |
| Decisions | Total number of CFI/RFI decisions issued for parents by USCIS | 69[7] |

---

[3] The number of election forms reported here is the number received by the Government as of December 19, 2019.

[4] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[5] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[6] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[7] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **68**[8] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
| | Total number of CFI decisions issued for children by USCIS | **73**[9] |
| | • Number of children determined to establish CF by USCIS | **73**[10] |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **19** |
| | • Number of parents granted asylum by USCIS | **2** |
| | • Number of parents referred to immigration court | **4** |
| | • Number of children granted asylum by USCIS | **3**[11] |
| | • Number of children referred/returned | **10** |

[8] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[9] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[10] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[11] This number includes children granted asylum as a dependent on their parent's asylum application.

| | to immigration court | |
|---|---|---|
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **103 Parents[12]** |

## D. Parents Who ICE Records Reflect Have Absconded After Being Released

| **Absconders** | Number of Parents who absconded from enrollment in ATD (Alternatives To Detention) | 195 |
|---|---|---|

## E. Update Regarding Identification of Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. Defendants have now completed identifying members of the expanded class to Plaintiffs' counsel, and have produced Batches 1 through 11 to Plaintiffs. On November 6, 2019, the Steering Committee notified Defendants that in the 11 batches there were 149 individuals who have been identified by the government as being both children of potential expanded class members and "exclusions." On December 13, 2019, Defendants provided Plaintiffs with their completed review and reconciliation of the 149 individuals with inconsistent labels.

---

[12] This number is as of January 4, 2020.

**F.  MMM Settlement Forms—Discrepancies**

In accordance with a request by MMM counsel, Defendants conducted a comparison of their own lists of settlement forms received to the lists provided by MMM counsel to determine why there were discrepancies in the parties' reporting. Defendants sent the results of that comparison to MMM counsel on September 19, 2019. MMM counsel sent an email on October 11, 2019, stating that they believed that Defendants' review had resolved the discrepancies, but posing some additional questions. Defendants have provided responses to MMM counsel for all of these inquiries and are continuing to adjust the number of received forms based on resolution of the discrepancies.

**G. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

_Data Requested by Plaintiffs_.  Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 preliminary-injunction order on the Friday following the filing of each JSR. The parties have discussed amending this schedule so that Defendants will produce these updated reports on a monthly basis. Since the last JSR, Defendants have provided Plaintiffs with an updated reports on December 13, 2019, and January 11, 2020, and continue to work to implement monthly reporting on a regular schedule.

*Processes and Procedures*.  Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018.  The outline also included an overview of the options for separated parents and children to obtain information about reunification options. The parties have met and conferred since then regarding the government's proposals. Defendants have held several internal telephonic meetings, and have spoken with representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures. After numerous conferrals, Defendants provided additional information to Plaintiffs on September 4, 2019, and requested that Plaintiffs clarify what information they were seeking with regard to other inquiries. Plaintiffs have not raised any additional concerns regarding Defendants' processes since the last JSR and status conference.

In addition to the procedures described in previous filings, Defendants have now implemented the use of a tear sheet for families that are separated that provides information about the separation to the separated parent, as well as information about how to locate their children.  The tear sheet also includes an email address by which separated parents can provide information to DHS that they wish to have considered.

This email address has also been provided to Plaintiffs' counsel and other interested counsel.

Following the November 8 Status Conference, the Court directed the parties to continue to meet and confer on the information-sharing protocols between the government agencies involved in family separations, and between the government and Plaintiffs and the legal service providers. On November 19, 2019, the parties met and conferred regarding the information sharing protocols. On November 22, 2019, Defendants provided Plaintiffs, pursuant to the Protective Order, with the Office of Refugee Resettlement's draft guidance to its field staff regarding new separations. Defendants asked Plaintiffs to share with them any specific problems they were aware of regarding the information sharing protocols. On December 2, 2019, Plaintiffs sent Defendants initial questions and requests for clarification about the protocols to which Defendants provided a response on December 19.

On January 2, Plaintiffs requested that they be allowed to share the Office of Refugee Resettlement's draft guidance with legal services providers and advocates. Defendant ORR agreed that the draft guidance could be provided to Catherine Weiss. In addition, Defendant ORR provided a document summarizing the document, to be shared with Ms. Weiss and the legal service providers and advocates more broadly, for the purpose of facilitating discussions about information sharing.

Defendants stand ready to continue to meet and confer on this issue if Plaintiffs have any additional concerns they would like to bring to Defendants' attention.

## H. Class Member Identification

At the December 6, 2019 status conference, in response to the November 25, 2019 DHS Inspector General Report, the Court inquired about Defendants' position on their ability to accurately identify the total number of children separated from their families.

DHS has a higher confidence level in the numbers reported to this Court than the numbers reported in the DHS OIG's report.  As detailed in the DHS Comments to the Draft Report, beginning on page 48, the multi-agency data teams set up in response to this Court's order reconciled data not only from CBP but also from ICE and ORR, data sources which the OIG methodology did not take into account.  OIG's data analysis did not include information from the full range of sources utilized by the multi-agency data team, and looked only at CBP data to identify when adults and minors were encountered, and had similar last names and with age differences between 16 and 40 years apart when defining a "family unit."  Defendants' ongoing efforts in this case, approved by the Court, involved the three agencies conducting a rigorous, line-by-line review of data *and* pertinent facts to determine accuracy and class eligibility of each identified potential class member.  Given the multitude of data sources and wide variety of fact patterns that

surround each individual separation, Defendants cannot guarantee that there would not be adjustments made when mistakes are discovered, but it can assure the Court of their good faith efforts to be accurate in its reporting to the Court and express that it has a higher degree of confidence in the numbers reported to the Court than the numbers published by the OIG.  During the development of the expanded class, the government's process  to identify potential members of the expanded class did not exclusively rely on the processes examined by the Inspector General.  The government's process for identifying members of the expanded class took into account the fact that the children of potential class members were no longer in HHS custody.  The process involved, at the front end, a manual review of ORR's records to identify all children having any preliminary indication of separation, and then a detailed review of those records by both CBP and ICE.  After HHS's review, CBP and ICE conducted a more extensive examination of the circumstances of the child's apprehension through a manual review of its records. In this way, CBP was able to more accurately determine whether those children initially identified by HHS were in fact separated from their parent. The findings of the DHS Inspector General's Report focus only on the process for documenting a separation in e3, whereas the review process for the expanded class looked more extensively into the records of ORR, CBP, and ICE. Defendants retains confidence that the *Ms. L.* expanded class

18cv428 DMS MDD

represents substantially all the possible children of potential class members and children separated from parents but covered by a class exclusion.

For the initial Legacy Class group, the list of 2,815 children of potential class members  was developed using the best available data and methodology available to Defendants at the time. However, the Legacy Class process did not include the extensive manual review of DHS records that was employed in the Expansion Class. Instead, the children were in ORR's custody, and the identification of the separated children was made using face-to-face interviews by care provider staff, certified lists from ORR providers, manual review of all children's ORR records, and data sets transmitted by DHS.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

As of the date of this report, the government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have initially focused on reaching children whose membership in the class is not contested, and for whom the government has provided at least one phone number for a sponsor or for the child's parent. There are 1,030 children that meet that description.[13]

---

[13] The eleven lists identify a total of 1,556 unique children, 1,135 of which have been confirmed by the government as being children of potential expanded class members.  For 105 of these 1,135 children of potential class members, the government has not provided a phone number.  The 421 children who have not been identified by the government as children of potential expanded class members

The Steering Committee begins by calling the provided phone numbers. Where the phone number is for a sponsor and not a separated parent, the Steering Committee attempts to reach the sponsor, then obtain contact information for the parent, and then finally reach the parent.

As of January 15, the Steering Committee has attempted to reach the families of all of these 1,030 children. In the course of over 4,700 phone calls, the Steering Committee has successfully reached 364 parents or their attorneys, either by reaching the parent directly through a parent phone number provided by the government, via an initial call with the child's sponsor who provided the Steering Committee with a working phone number for the parent, or directly to the parent via on-the-ground efforts.  The Steering Committee has also successfully reached an additional 225 sponsors, contact with whom has not yet led to contact with the separated parent, because the sponsor was either unable to provide contact information for the parent, or the sponsor provided contact information but the Steering Committee has not yet been able to reach the separated parent.  As a result, 666 children remain for whom the Steering Committee has not yet reached the separated parent.  Of these 666, the Steering Committee has determined on the basis of multiple unsuccessful attempts to reach the family telephonically, that 298 will not have parents reachable via phone numbers provided by the government.  For these families, the Steering Committee has commenced on-the-ground efforts to locate the separated parent.  For the remaining 368, the Steering Committee is continuing telephonic outreach attempts, and will either successfully reach the separated parent or determine that they are telephonically unreachable and commence on-the-ground efforts.

---

have been categorized as "exclusions".  The Steering Committee also intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

**B.      Steering Committee Progress Contacting "Unreachable" Parents**

As noted in previous Joint Status Reports, the Steering Committee has commenced extensive efforts to locate these "unreachable" parents in their respective countries of origin, and is currently actively engaged in on-the-ground searches for parents across Central America.  As of January 15, Steering Committee members had commenced on-the-ground efforts to locate 257 separated parents that we have determined to be unreachable via the phone numbers provided by the government, and had successfully tracked down and established contact with 113 of them.[14]  We continue our efforts to reach parents on the ground in these parents' respective home countries.

Additionally, since the last Joint Status Report, the Steering Committee has commenced additional efforts to contact the unreachable parents, including those believed to be in the United States.  The Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class.  We have distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with.  In addition, we have sent letters in Spanish and English to addresses provided by the government for the potential class members that the Steering Committee has not yet reached.  As of the date of this Joint Status Report, approximately 1,100 letters have been mailed, and approximately 500 additional letters are in the process of being posted.[15]  These

---

[14] Given the successful attempts to reach these families in person, these 104 parents located through on-the-ground efforts are accounted for in the group of parents successfully contacted, and are no longer considered to be part of the "unreachable" group.

[15] In many instances, the government's data include multiple addresses, in

letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. Finally, the Steering Committee is currently preparing a third mailing to the U.S. addresses of sponsors for children whose parents we have been unable to reach, inviting those sponsors to contact the Steering Committee via these toll-free numbers as well.

Finally, we continue to explore the possibility of publicizing the toll-free numbers in Spanish language media. If we determine this method of contacting parents is feasible, depending upon the anticipated costs of these efforts, we will raise the issue of reimbursement for the expense of these efforts with the government, and if the government is unwilling to assist, with the Court.

**C.** **Steering Committee Progress for June 26 Initial Class**

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications. As previously reported in the last Joint Status Report, most recently on October 21, the government reported that 13 children with removed parents remained in ORR custody. The Steering Committee has advised the government that no preference will be forthcoming for one of those parents due to complex and individualized family circumstances, leaving 12 children with removed parents in the operative group. The Steering Committee has delivered preferences for 11 parents of those children. The parent of the remaining child sought and was granted the opportunity to return to the United States pursuant to the Court's September 4 Order, and after returning to the United States looks forward to commencing the process to be reunified with her son. The Steering Committee has not received a further update

the United States and abroad, for each potential class member. In order to maximize the Steering Committee's efforts of successfully reaching parents, the Steering Committee sent copies of the letter to each address provided for a potential class member (except where addresses were duplicative, belonged to a U.S. detention facility, or in the Steering Committee's evaluation lacked sufficient detail to be deliverable).

from the government regarding children with removed parents who remain in ORR custody.

D.     **Information Sharing**

The parties continue to meet and confer regarding information sharing among government agencies, and from the government to parents and children whom the government has separated.

On December 30, Plaintiffs sought the government's agreement that they could share ORR guidance documents with legal service providers and members of the Steering Committee.  On January 15, the government agreed to the sharing of the guidance documents only with Ms. Weiss and not with the providers or members of the Steering Committee.  The government sent a letter discussing the ORR guidance to Plaintiffs and agreed that that letter could be shared with the Steering Committee and legal service providers for children.  Plaintiffs are evaluating the government's response.

E. **Relief for Deported Parents**

On September 4, 2019, the Court granted in part the Plaintiffs' Motion seeking relief for deported parents, ordering the return of a subset of the separated parents. After meeting and conferring, the parties agreed to a process to bring the parents back.  The government requested that the parents submit application packets for return to the United States along with proof of purchased tickets for return to via the Los Angeles International Airport within 45 days of submission of those packets. The government further represented that documents allowing the parents to travel from Guatemala City to Los Angeles would be provided shortly before the date of travel.

Nine deported parents submitted applications materials on December 6, 2019 and purchased tickets that same date to travel on January 22, 2020.  As requested by the government, attorneys representing each of the nine parents provided proof that

tickets had been purchased in the form of travel itineraries with their application packets.

In the past week, lawyers for the parents have traveled to Guatemala to prepare their clients for travel and assist them in making what is – for many – a long journey from rural areas to Guatemala City.

Plaintiffs have requested an update from the government as to the status of the applications and clarity on how to pick up the travel documents. As of the time of filing of the Joint Status Report, Plaintiffs are still waiting to be told when the documents will be available.

**III.** ***MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: January 15, 2020                 Respectfully submitted,

                                        /s/ Lee Gelernt
                                        Lee Gelernt*
                                        Judy Rabinovitz*
                                        Anand Balakrishnan*
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        125 Broad St., 18th Floor
                                        New York, NY 10004
                                        T:  (212) 549-2660
                                        F:  (212) 549-2654
                                        *lgelernt@aclu.org*
                                        *jrabinovitz@aclu.org*
                                        *abalakrishnan@aclu.org*

                                        Bardis Vakili (SBN 247783)
                                        ACLU FOUNDATION OF SAN DIEGO
                                        & IMPERIAL COUNTIES
                                        P.O. Box 87131
                                        San Diego, CA 92138-7131
                                        T: (619) 398-4485
                                        F: (619) 232-0036
                                        *bvakili@aclusandiego.org*

                                        Stephen B. Kang (SBN 292280)
                                        Spencer E. Amdur (SBN 320069)
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        39 Drumm Street
                                        San Francisco, CA 94111
                                        T:  (415) 343-1198
                                        F:  (415) 395-0950
                                        *skang@aclu.org*
                                        *samdur@aclu.org*

                                        *Attorneys for Petitioners-Plaintiffs*
                                        *\*Admitted Pro Hac Vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Nicole N. Murley*
NICOLE N. MURLEY
Senior Litigation Counsel
SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-0473
(202) 616-8962 (facsimile)
Nicole.Murley@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*