UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
                                      )
MS. L., ET AL.,                       )
                                      )   CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,   )
                                      )
VS.                                   )
                                      )
                                      )
                                      )
U.S. IMMIGRATION AND CUSTOMS          )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,          )   FRIDAY, MARCH 6, 2020
                                      )    1:00 P.M. CALENDAR
            RESPONDENTS-DEFENDANTS. )
------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:              LEE GELERNT, ESQ.
                            DANIEL GALINDO, ESQ.
                            ACLU IMMIGRANT RIGHTS PROJECT
                            125 BROAD STREET 18TH FLOOR
                            NEW YORK, NEW YORK 10004


FOR DEFENDANT:              SARAH B. FABIAN, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
                            OFFICE OF IMMIGRATION LITIGATION
                            P.O. BOX 868
                            BEN FRANKLIN STATION
                            WASHINGTON, DC 20044



 ALSO APPEARING:            EMILY BORK, ESQ.
                            HALEY COSTELLO-ESSIG,ESQ.
                            KATHERIN NELSON, ESQ.
                            STEVEN HERZOG,ESQ.
                            CATHERINE WEISS, ESQ.
```

<u>**SAN DIEGO, CALIFORNIA – FRIDAY, MARCH 6, 2020 – 1:10 P.M.**</u>

                                       \*   \*   \*

**THE CLERK:**  NO. 11 ON CALENDAR, CASE NO. 18CV0428, MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR STATUS CONFERENCE.

**THE COURT:**  GOOD AFTERNOON, COUNSEL.  THIS IS JUDGE SABRAW.

I HAVE NOTED FOR APPEARANCES:  FOR MS. L., LEE GELERNT AND DANIEL GALINDO; SARAH FABIAN FOR THE GOVERNMENT ON ALL MATTERS; FOR DORA, MS. EMILY BORK; FOR MMM, HALEY COSTELLO-ESSIG AND KATHERINE NELSON; MR. STEVEN HERZOG FOR THE STEERING COMMITTEE; AND CATHERINE WEISS FOR THE OBJECTORS.

LET'S GO AHEAD AND RUN THROUGH THE JSR.

ON THE ORIGINAL CLASS, IT APPEARS THAT EVERYTHING IS IN ORDER.  THAT OF THE 2,815 IDENTIFIED, THEY HAVE ALL BEEN ACCOUNTED FOR.

THERE IS ONE CHILD, THE INDICATION IS THAT THE STEERING COMMITTEE COULD NOT OBTAIN PARENTAL PREFERENCE.  I THINK THIS IS THE SAME CHILD WE HAVE BEEN TALKING ABOUT FOR SOME TIME.

AM I CORRECT, MR. GELERNT, WHERE THE STEERING COMMITTEE HAS REACHED ONE OF THE PARENTS BUT NOT THE OTHER. AND THEN, FOR VARIOUS REASONS, THE COMMITTEE IS NOT IN A POSITION TO STATE THE PARENTAL PREFERENCE.

**MR. GELERNT:**  YES, YOUR HONOR, THAT'S CORRECT.

1              MR. HERZOG, CORRECT ME IF I AM WRONG.  BUT THAT IS
2    CORRECT, RIGHT?
3         **MR. HERZOG:**  I BELIEVE IT IS.  I JUST HAVE TO CHECK
4    TO SEE WHAT THE CHILD -- WHO THE CHILD IS THAT IS REFERRED TO
5    IN THE REPORT.
6              THERE IS A CHILD THAT FALLS INTO THAT CATEGORY.  AND
7    THERE IS ANOTHER CHILD THAT I THINK HAS RECENTLY BEEN
8    REUNIFIED WITH HER PARENT BECAUSE THE PARENT RETURNED TO THE
9    UNITED STATES.
10        **THE COURT:**  YES.  I THINK THAT IS REFERENCED LATER
11   IN THE JSR.  WE WILL COME TO THAT IN A MOMENT.
12        **MR. HERZOG:**  RIGHT.  I THINK THE FIRST CHILD --
13   THERE IS DEFINITELY A CHILD INVOLVED IN THAT CATEGORY.  I
14   THINK WE HAVE CLASSIFIED THAT CASE AS ESSENTIALLY CONCLUDED
15   BECAUSE IT IS ONE WE CAN'T DO ANYTHING MORE ABOUT.
16        **THE COURT:**  OKAY.  BUT IT IS IMPORTANT TO NOTE, AND
17   I WANT TO BE SURE THAT THE RECORD IS CORRECT IN THIS REGARD,
18   THAT ONE OF THE PARENTS OF THAT CHILD HAS BEEN CONTACTED.  BUT
19   FOR REASONS THAT I DON'T FEEL WE NEED TO KNOW AT LEAST ONE OF
20   THE CHILD'S PARENTS HAS WEIGHED IN ON THE ISSUE, BUT THE
21   STEERING COMMITTEE IS NOT IN A POSITION TO STATE THE PARENTAL
22   PREFERENCE AS TO THAT ONE CHILD.
23        **MR. HERZOG:**  THAT IS CORRECT.  IT IS A COMPLICATED
24   SITUATION THAT, AGAIN, I DON'T THINK WE NEED TO GO INTO
25   PUBLICALLY, BUT YES.

1          **THE COURT:**  SO IT MAY BE, THEN, GOING FORWARD ON THE

2     JOINT STATUS REPORTS, THAT WE CONCLUDE THE ORIGINAL CLASS.  I

3     THINK IT HAS BEEN, AT THIS JUNCTURE, COMPLETELY SUCCESSFULLY

4     RESOLVED FOR PURPOSES OF REUNIFICATION OR REACHING THE PARENTS

5     AND HEARING FROM THEM.

6          WOULD THAT BE FAIR?

7          **MR. HERZOG:**  I THINK IN TERMS OF THAT -- THE EFFORT

8     THAT WE HAVE UNDERTAKEN, THAT IS CORRECT.

9          I AM GOING TO LEAVE IT TO MR. GELERNT WHETHER THERE

10    WAS ANY OTHER RELIEF OR ANYTHING ELSE TO BE SOUGHT ON THEIR

11    BEHALF.  BUT I THINK WE HAVE FINISHED OUR EFFORTS CONTACTING

12    THE FAMILIES.

13         **THE COURT:**  DO YOU AGREE, MR. GELERNT?

14         **MR. GELERNT:**  I APOLOGIZE.  SOMEHOW I GOT

15    DISCONNECTED AND I DID NOT HEAR YOUR QUESTION.

16         **THE COURT:**  OKAY.  I WANTED TO, ON THIS ORIGINAL

17    CLASS, IT SEEMS TO ME THAT FOR PURPOSES OF REPORTING WE CAN

18    SIMPLY INDICATE AT THIS POINT, OR AT LEAST IN THE NEXT JSR,

19    THAT OF THOSE 2,815 THAT WE HAVE DONE ALL WE CAN DO.

20         WE HAVE SUCCESSFULLY REUNITED THE FAMILIES, OR WHERE

21    THEY HAVE NOT BEEN REUNITED WE HAVE HEARD FROM THE PARENTS AND

22    THEY HAVE ADDRESSED THE QUESTION OF WHETHER THEY WANT TO

23    REUNIFY OR NOT.

24         **MR. GELERNT:**  RIGHT.

25         **THE COURT:**  SO IT SEEMS TO ME THAT WE HAVE COMPLETED

1    THE PROCESS AS TO THIS ORIGINAL CLASS.

2              DO YOU AGREE?

3         **MR. GELERNT:**  THAT SEEMS RIGHT TO ME, YOUR HONOR.

4    UNLESS THE STEERING COMMITTEE -- UNLESS THERE IS SOME

5    INFORMATION I AM NOT AWARE OF, THAT SEEMS RIGHT TO ME, YOUR

6    HONOR.

7         **THE COURT:**  OKAY.

8         **MR. HERZOG:**  LET ME JUST REPEAT, IF IT IS ALL RIGHT,

9    YOUR HONOR.

10        **THE COURT:**  YES.

11        **MR. HERZOG:**  FOR MR. GELERNT.

12             I THINK THAT IS CORRECT FROM OUR PERSPECTIVE OF

13   CONTACTING THE PARENTS AND ASCERTAINING THEIR PREFERENCE HERE.

14             WHAT I NOTED IS -- AND I NOTED FOR YOU, MR. GELERNT,

15   THAT, YOU KNOW, WHETHER THERE IS ANYTHING ELSE TO BE DONE WITH

16   RESPECT TO THOSE CLASS MEMBERS IN TERMS OF RELIEF OR OTHER

17   THINGS TO BE ADDRESSED, I WOULD LEAVE TO YOU.

18        **MR. GELERNT:**  OKAY.

19             YOUR HONOR, TO ANSWER YOUR QUESTION, I AGREE WITH

20   YOUR HONOR THAT THEY SEEM TO HAVE BEEN ACCOUNTED FOR FROM THE

21   PERSPECTIVE OF WHAT WE ARE TRYING TO ACCOMPLISH HERE IN MS. L.

22        **THE COURT:**  OKAY.  SO MAYBE IN THE NEXT STATUS

23   REPORT THE PARTIES CAN SIMPLY INDICATE THAT THE ACCOUNTING IS

24   COMPLETE AS TO THIS ORIGINAL CLASS.

25             LET'S GO TO THE ENLARGED GROUP.

1           AND, HERE, MR. HERZOG AND THE NGO'S AND OTHERS HAVE
2    OBVIOUSLY BEEN WORKING HARD AT THIS.
3           PERHAPS I CAN START WITH YOU, MR. HERZOG.
4           IF YOU CAN JUST GIVE AN OVERVIEW OF WHERE WE ARE,
5    AND THEN I WILL HAVE SOME SPECIFIC QUESTIONS.
6           **MR. HERZOG:**  OF COURSE, YOUR HONOR.
7           I MEAN, I THINK I HAVE EXPLAINED OUR PROCESS, WHAT
8    WE HAVE BEEN DOING BEFORE, SO I WILL DO IT IN MAYBE A LITTLE
9    BIT MORE OF AN ABBREVIATED SENSE.
10          **THE COURT:**  YES.
11          **MR. HERZOG:**  BUT, AS YOU KNOW, WE ARE TRYING TO
12   REACH EVERY ONE OF THOSE IDENTIFIED CLASS MEMBERS BY
13   TELEPHONE, AND WE EITHER SUCCEEDED IN DOING SO OR NOT.
14          I THINK AT THIS POINT WE HAVE -- WE HAVE COMPLETED
15   THAT PROCESS WITH RESPECT TO CALLING THE PARENTS.  THERE IS A
16   SMALL NUMBER, I THINK THERE ARE 37 IDENTIFIED IN THE JSR, OF
17   PARENTS THAT WE HAVE NOT DECLARED UNCONTACTABLE BY TELEPHONE
18   BECAUSE WE HAVE BEEN IN TOUCH NOT WITH THE PARENT BUT IN TOUCH
19   WITH A RELATIVE OR A LAWYER OR A SPONSOR.  SO WE ARE
20   CONTINUING THOSE EFFORTS.
21          BUT WITH RESPECT TO THE PHONE NUMBERS FOR THE
22   PARENTS, WE HAVE EITHER BEEN SUCCESSFUL OR UNSUCCESSFUL IN
23   CONTACTING ALL OF THE PARENTS VIA THOSE PHONE NUMBERS, AND
24   CONTINUING, WITH RESPECT TO THE 37, TO TRY TO REACH THEM IN
25   OTHER WAYS BY TELEPHONE.

1       SO THEN WE MOVED ON TO THE OTHER ASPECTS OF OUR
2  PROCESS HERE.  AS YOU KNOW, WE HAVE SENT OUT MORE THAN A
3  THOUSAND LETTERS TO PARENTS AND SPONSORS, AND WE COMPLETED
4  THAT MAILING SOME TIME AGO.

5       WE HAVE BEEN RECEIVING PHONE CALLS TO THE TOLL FREE
6  NUMBERS THAT WE MADE AVAILABLE TO PARENTS AND SPONSORS AND
7  OTHERS.  AND WE HAVE BEEN RESPONDING TO THOSE PHONE CALLS AND
8  REACHING OUT AND IDENTIFYING SOME PARENTS, OR SOME RELATIVES
9  THAT MAY HOPEFULLY CONNECT US TO PARENTS THROUGH THAT MESSAGE.

10      SO THAT HAS BEEN ONGOING AND WE ARE CONTINUING TO
11  RECEIVE THOSE PHONE CALLS.

12      WE ALSO, AS YOU KNOW, HAVE OUR DEFENDERS FROM THE
13  JUSTICE IN MOTION NGO THAT IS ONE OF OUR MEMBERS HERE THAT ARE
14  ON THE GROUND IN THE COUNTRIES OF ORIGIN TRYING TO REACH
15  PARENTS THAT WE HAVE NOT BEEN ABLE TO REACH BY TELEPHONE.

16      THERE ARE APPROXIMATELY 300 AND -- CHILDREN --
17  PARENTS AND CHILDREN, THAT HAVE BEEN -- THAT ARE NOW -- THAT
18  THOSE DEFENDERS ARE NOW SEARCHING FOR.

19      THERE ARE ABOUT 80 MORE OF THE PARENTS THAT HAVE
20  BEEN DECLARED UNREACHABLE THAT HAVE NOT BEEN ASSIGNED TO THE
21  DEFENDERS YET, BUT THEY WILL BE.  BUT THE DEFENDERS HAVE
22  LOCATED 151 OF THE PARENTS THROUGH THIS METHOD SO FAR.

23      AND IT IS ONGOING, AND IT IS SLOW, AND IT IS
24  PAINSTAKING, BUT WE ARE LOCATING PARENTS EVERY WEEK, A NUMBER
25  OF THEM.  AND IT IS SUCCESSFUL, IT IS JUST A SLOW PAINSTAKING

1    PROCESS THAT IS VERY MUCH ON THE GROUND AND LABOR INTENSIVE.

2    SO THAT IS ONGOING.

3            WE ALSO HAVE RECENTLY COMMENCED OUR MEDIA OUTREACH

4    EFFORTS.  WE SENT OUT PRESS RELEASES TO, I BELIEVE, SEVERAL

5    THOUSAND.

6            THIS IS BEING HANDLED BY KIND, KIDS IN NEED OF

7    DEFENSE, ONE OF OUR NGO PARTNERS.  THEY ARE DOING THE MEDIA

8    OUTREACH.

9            BUT THEY HAVE SENT OUT SEVERAL THOUSAND PRESS

10   RELEASES IN SPANISH AND ENGLISH.  AGAIN PROVIDING THE TOLL

11   FREE NUMBERS THAT PARENTS CAN CALL OR RELATIVES CAN CALL TO

12   REACH US.  AND WE ARE HOPING THAT EFFORT WILL THEN ALSO --

13           IS IT 700?

14           I AM CORRECTED.  IT IS ABOUT 700 MEDIA OUTLETS.

15           SO WE ARE HOPING THAT THAT EFFORT WILL THEN LEAD --

16   WILL LEAD TO MORE CALLS COMING INTO OUR TOLL FREE NUMBERS.

17           BUT THOSE ARE THE EFFORTS THAT ARE ONGOING NOW.  I

18   THINK WE ARE STILL MAKING PROGRESS.  I MEAN, IT IS PAINSTAKING

19   AND IT IS SLOW, BUT WE HAVE BEEN SLOWLY IDENTIFYING -- MORE

20   AND MORE -- REACHING MORE AND MORE PARENTS AND BEING ABLE TO

21   SPEAK WITH THEM.

22           SO I THINK THE EFFORTS ARE STILL FRUITFUL, IS WHAT I

23   WOULD SAY.  STILL PRODUCTIVE.  AND WE THINK, YOU KNOW, WE ARE

24   GOING TO KEEP DOING IT.

25           **THE COURT:**  THANK YOU.

10

1            SO AS I UNDERSTAND THIS, THEN, WE ARE FOCUSING ON
2  THE 1,030 CHILDREN OUT OF ABOUT 1,556 AT THIS POINT.

3            AND AS YOU SAY, MR. HERZOG, YOU HAVE REACHED 395
4  PARENTS OF THOSE 1,030.  THAT LEAVES 635.  YOU HAVE CONTACTED,
5  OF THAT, 37 INDIVIDUALS RELATED TO THE PARENT OR CHILD, SO
6  THAT TAKES US TO 598 PARENTS.

7            OF THOSE 598, 301 ARE OUT OF COUNTRY, SOMEWHERE IN
8  CENTRAL AMERICA.  OF THE 301 YOU HAVE SUCCESSFULLY TRACKED
9  DOWN, THROUGH BOOTS ON THE GROUND, 151 PARENTS.

10           SO THAT WOULD LEAVE ANOTHER 150 IN CENTRAL AMERICA
11 THAT YOU ARE STILL SEARCHING FOR; IS THAT RIGHT?

12           **MR. HERZOG:**  I THINK -- I AM SORRY IF I MAYBE WAS
13 LESS THAN FULLY CLEAR.

14           BUT THERE ARE 301 THAT THEY ARE -- THAT OUR
15 DEFENDERS -- THAT HAVE BEEN ASSIGNED TO DEFENDERS AT THIS
16 POINT.

17           THERE ARE APPROXIMATELY 80 MORE THAT HAVE NOT YET
18 BEEN ASSIGNED.  SO THERE ARE APPROXIMATELY 380 OR SO, THAT'S A
19 BALLPARK FIGURE, THAT ARE OVERSEAS OF THE 598.

20           **THE COURT:**  OKAY.  AND OF THE 380 YOU FOUND 151.

21           **MR. HERZOG:**  CORRECT.

22           **THE COURT:**  OKAY.  SO THAT IS ENCOURAGING.

23           THEN, OF COURSE, THE EFFORTS REMAIN AS TO THE
24 BALANCE OF THOSE PARENTS.

25           SO THAT WOULD LEAVE -- IF THERE ARE 380 IN CENTRAL

1    AMERICA, THEN HOW MANY PARENTS ARE IN THE UNITED STATES THAT

2    YOU HAVE NOT YET FOUND?  EITHER THE PARENT OR SOMEONE RELATED

3    TO THEM.

4               **MR. HERZOG:**  YES.  IT IS -- WELL, I THINK IT IS

5    APPROXIMATELY -- AND THIS IS AGAIN APPROXIMATELY -- BUT IT IS

6    IN THE 220, 230 RANGE.

7               **THE COURT:**  OKAY.

8               **MR. HERZOG:**  IT IS IN THE LOW -- LESS THAN 250, MORE

9    THAN 200.

10              **THE COURT:**  YES.  OKAY.

11              AND SO, OF COURSE, THE EFFORTS NOW ARE FOCUSING ON

12   ABOUT 180 PARENTS IN CENTRAL AMERICA THAT YOU ARE LOOKING FOR,

13   AND ABOUT 218 OR 220 PARENTS IN THE UNITED STATES THAT YOU ARE

14   LOOKING FOR.

15              **MR. HERZOG:**  YEAH.  I THINK IT IS MORE THAN 180.  I

16   THINK IT IS ABOUT 230, OR SOMETHING LIKE THAT.

17              **THE COURT:**  OKAY.

18              **MR. HERZOG:**  IN CENTRAL AMERICA.  BECAUSE IT IS THE

19   80-PLUS THE -- I HAVE THIS HERE -- THE 150.  SO IT IS -- YEAH,

20   IS IT -- YEAH.

21              I THINK THAT ACTUALLY, I AM SORRY.  I THINK YOUR

22   CORRECTION -- YOUR HONOR, I THINK YOU ARE ESSENTIALLY CORRECT,

23   YES.

24              **THE COURT:**  OKAY.  SO ROUGH NUMBERS, APPROXIMATELY

25   180 IN CENTRAL AMERICA THAT YOU ARE LOOKING FOR, AND ABOUT 220

1   IN THE U.S. THAT YOU ARE STILL LOOKING FOR.

2          AND WHAT YOU HAVE IN PLACE YOU, OF COURSE, WANT TO

3   KEEP IN PLACE AND KEEP DOING.

4          IS IT YOUR RECOMMENDATION THAT WE STAY THE COURSE,

5   KEEP DOING WHAT WE ARE DOING.  AND SIMPLY SET THE MATTER FOR A

6   FOLLOW-UP STATUS CONFERENCE IN A FEW WEEKS, AND TAKE INVENTORY

7   AND KEEP AT IT IN THAT MANNER?

8          **MR. HERZOG:**  YEAH.  I THINK THAT DOES MAKE SENSE.

9          BUT JUST TO CORRECT, I THINK I ACTUALLY WAS CORRECT

10   WHEN I -- IT IS ABOUT 230 OVERSEAS THAT WE ARE STILL LOOKING

11   FOR.  IT IS THE 150 PLUS THE 80 THAT HAVE NOT YET BEEN

12   ASSIGNED.

13          **THE COURT:**  OKAY.

14          **MR. HERZOG:**  IN TERMS OF THE END RESULT, YES, I

15   THINK WE ARE MAKING PROGRESS.  I THINK WE SHOULD KEEP GOING.

16   AND I AM HAPPY TO REPORT BACK AT THE NEXT STATUS CONFERENCE,

17   HOPEFULLY WITH MORE PROGRESS.

18          **THE COURT:**  OKAY.

19          AND ANY THOUGHTS ON THAT, MR. GELERNT?  DO YOU

20   THINK WE ARE -- IS THERE OTHER --

21          **MR. GELERNT:**  I -- SORRY, YOUR HONOR.

22          **THE COURT:**  ANYTHING ELSE WE OUGHT TO BE DOING, OR

23   ARE WE DOING EVERYTHING THAT THE PARTIES CAN THINK OF AT THIS

24   POINT?

25          **MR. GELERNT:**  I THINK AT THIS POINT WE ARE.

1          AND I AGREE WITH MR. HERZOG THAT WE OUGHT TO KEEP

2     GOING.  THE PROCESS IS WORKING.  IT IS SLOW BUT, YOU KNOW, I

3     THINK UNTIL WE HIT THE POINT WHERE WE ARE JUST NOT FINDING

4     ANYBODY, THEN WE NEED TO CONTINUE.  BUT WE ARE, EACH WEEK,

5     THINKING ABOUT OTHER WAYS WE CAN GO ABOUT IT.

6          SO AT THIS POINT I THINK YOUR HONOR IS RIGHT THAT WE

7     OUGHT TO KEEP GOING AND THEN REPORT BACK AT THE NEXT STATUS

8     CONFERENCE WHERE WE ARE.

9          **THE COURT:**  THANK YOU.

10         IT IS OBVIOUSLY CRITICALLY IMPORTANT.  AND SO I KNOW

11    WE ARE ALL SO APPRECIATIVE OF THE PLAINTIFFS' STEERING

12    COMMITTEE AND THE WORK THAT IS BEING DONE BY MR. HERZOG AND

13    THE NGO'S.  SO WE WILL STAY THE COURSE AND SEE WHERE WE ARE IN

14    THE NEXT SEVERAL WEEKS.

15         MR. GELERNT, A RELATED QUESTION.

16         THE TOTAL NUMBER IN THIS ENLARGED CLASS CAN BE UP

17    TO, I THINK IT IS 1,556.  THE FOCUS IS ON THE 1,030.

18         WHERE ARE WE ON THE REMAINDER?  I THINK THE WAY IT

19    WAS LEFT IS YOU WERE LOOKING AT THAT TO SEE IF YOU AGREE WITH

20    THE DEFENDANT'S ASSESSMENT THAT THE BALANCE EITHER FALL OUT OF

21    THE CLASS OR THERE ARE OTHER REASONS WHY THEY OUGHT NOT TO BE

22    INCLUDED?

23         **MR. GELERNT:**  I DON'T KNOW THAT WE HAVE MADE AS MUCH

24    PROGRESS ON THAT.  I THINK THAT WE DO NEED TO TURN TO THAT TO

25    TRY AND FIND THOSE FAMILIES AND CONSULT WITH THE GOVERNMENT TO

1  SEE WHETHER THERE ARE ANY OF THOSE CASES THAT WE DISAGREE

2  WITH, BUT CONSULT WITH THE GOVERNMENT ABOUT WHETHER THEY

3  SHOULD BE INCLUDED OR NOT.

4          I THINK THAT IS ALSO -- BETWEEN NOW AND THE NEXT

5  STATUS CONFERENCE HAS TO BECOME A CRITICAL FOCUS.

6          I WOULD ASK MR. HERZOG IF HE HAS ADDITIONAL

7  INFORMATION ABOUT THAT.  BUT I DO THINK THAT THAT IS SOMETHING

8  THAT WE ARE GOING TO HAVE TO NOW TURN OUR ATTENTION TO.

9          **THE COURT:**  OKAY.

10          ANYTHING ON THAT, MR. HERZOG?

11          **MR. HERZOG:**  NO.  I THINK IT IS -- I MEAN, I THINK

12  MR. GELERNT AND I NEED TO CONSULT FURTHER ON THAT.  I THINK IT

13  IS -- I WILL LEAVE IT AT THAT.

14          **THE COURT:**  OKAY.  VERY GOOD.

15          LET'S TURN TO THE DNA ISSUE.  THE GOVERNMENT HAS SET

16  THAT OUT IN SOME DETAIL, AND HAS A PROPOSAL.

17          AND, MS. FABIAN, MAYBE I CAN INQUIRE ABOUT THAT.

18          THE NUMBERS, FORTUNATELY, ARE RELATIVELY SMALL

19  WHERE, IN FISCAL YEAR 2020, FAMILIES -- OR ADULTS SHOWING UP

20  WITH A CHILD HAVE BEEN SEPARATED IN 88 OCCASIONS.

21          AND IT APPEARS THAT WHENEVER THERE IS A CONCERN

22  ABOUT THIS ISSUE THAT DNA TESTING IS AVAILABLE FOR, IT WOULD

23  APPEAR, THE VAST MAJORITY OF THESE CIRCUMSTANCES.

24          BUT THE GOVERNMENT SETS OUT THAT IN SOME OF THE

25  REMOTE LOCATIONS ON THE SOUTHERN BORDER THERE IS NOT RAPID DNA

1    TESTING AVAILABLE.  AND FOR LOGISTICAL REASONS TRANSPORTING

2    AND/OR MAILING SAMPLES IS PROBLEMATIC.  THAT KEEPING AN ADULT

3    AND A CHILD TOGETHER WHEN THERE IS CONCERNS OF PARENTAGE IS

4    PROBLEMATIC.

5              SO THE GOVERNMENT HAS A PROPOSAL THAT IN THOSE

6    RELATIVELY FEW CASES THE GOVERNMENT BE PERMITTED TO

7    TEMPORARILY SEPARATE AND THEN HAVE THE TESTING DONE.  AND IF

8    THERE IS A MATCH, THAT THE ADULT IS THE PARENT OF THE CHILD,

9    THAT THEY BE REUNIFIED.

10             SO WHAT WOULD THAT LOOK LIKE?  DO YOU HAVE A

11   BALLPARK ESTIMATE AS TO HOW MANY NUMBERS WE ARE TALKING ABOUT?

12             AND THEN, ALSO, IF THIS PROPOSAL IS ADOPTED, HOW IS

13   IT DONE LOGISTICALLY.  WHERE WOULD THE ADULT AND CHILD BE

14   HOUSED, WOULD THEY BE IN THE SAME FACILITY.

15             IT LOOKS LIKE HHS WOULD BE INVOLVED, AND THE CHILD

16   MIGHT BE RELOCATED.  AND IT COULD CREATE A PROCESS IN AND OF

17   ITSELF.

18             MS. FABIAN.

19             **MS. FABIAN:**  SURE, YOUR HONOR.

20             AND I AM HAPPY TO -- WELL, LET ME SAY THAT THE 88,

21   AS I UNDERSTAND IT, IS THE TOTAL NUMBER THAT WERE SEPARATED

22   BASED ON THIS SORT OF FRAUD FINDING.  SO THE NUMBER THAT EVEN

23   REQUIRES DNA WOULD BE LESS THAN THAT 88.  BECAUSE, AS I THINK

24   WE MENTIONED SOMEWHERE IN THAT -- IN THIS REPORT WHERE A

25   SEPARATION OCCURS WHERE THE ADULT WILL LATER ACKNOWLEDGE NOT

16

1  BEING THE PARENT.  THEY MAY HAVE INITIALLY CLAIMED PARENTAGE
2  AND THEN THEY WILL ACKNOWLEDGE NOT BEING THE PARENT.

3          IN THOSE SITUATIONS DNA ISN'T NECESSARY OR WOULDN'T
4  BE CONDUCTED.  BUT THE DNA IS USED WHERE YOU HAVE A CONTINUED
5  CLAIM TO PARENTAGE THAT NEEDS TO BE CONFIRMED.

6          **THE COURT:**  YES.

7          **MS. FABIAN:**  I DON'T HAVE FOR YOU A NUMBER OF
8  SITUATIONS THAT HAVE OCCURRED OUTSIDE OF, YOU KNOW, SORT OF
9  THE AVAILABLE TESTING ZONES.

10          I UNDERSTAND THAT WHERE DNA TESTING CAN BE CONDUCTED
11  IS, YOU KNOW, WHERE A SIGNIFICANT NUMBER OF THESE SITUATIONS
12  ARE OCCURRING, WHICH IS ALONG THE SOUTHWEST BORDER.  SO
13  THERE -- WHILE THERE ARE A LARGE NUMBER OF SITES OUTSIDE OF
14  THAT, THE ACTUAL NUMBERS OF CASES WHERE WE SEE A NEED FOR IT
15  ARE RELATIVELY LOW.

16          BUT I DON'T HAVE A SPECIFIC BREAKDOWN.  I CAN
17  CERTAINLY TRY TO GET MORE INFORMATION ON THAT.

18          AS FAR AS THE PROCESS.  IN GENERAL, THE PROCESS
19  WOULD BE FOR THE FATHER TO GO -- I AM SORRY -- FOR THE ADULT
20  TO GO TO ICE CUSTODY AND FOR THE CHILD TO GO TO HHS.

21          AND I KNOW THAT HHS AND ICE HAVE DISCUSSED, THEN, A
22  PROCESS BY WHICH BOTH WOULD CONDUCT -- WOULD WORK TOGETHER TO
23  HAVE THE DNA COMPARISON DONE SORT OF IMMEDIATELY UPON THE
24  TRANSFER TO CUSTODY.  AND THEN GET THE RESULTS QUICKLY, AND DO
25  THE REUNIFICATION WHERE IT WAS APPROPRIATE QUICKLY AFTER THAT.

1      I CAN CERTAINLY TALK AND GET MORE INFORMATION EITHER

2   FOR YOU, OR MAYBE FIRST WE COULD DO IT -- TO MEET AND CONFER

3   WITH PLAINTIFFS BUT -- ABOUT MORE SPECIFICS OF THAT PROCESS.

4   BUT THAT WOULD OVERALL BE THE GENERAL PROCESS.

5      **THE COURT:**  OKAY.

6      MR. GELERNT, WHAT ARE YOUR THOUGHTS?

7      **MR. GELERNT:**  YES.  YOUR HONOR, THIS IS THE FIRST

8   TIME WE ARE HEARING ABOUT THIS.  AND OUR -- YOU KNOW, OUR

9   QUICK REACTION IS THAT WE ARE VERY MUCH OPPOSED TO THIS

10  PROPOSAL.

11     IT MAY NOT BE THAT MANY, I THINK WE DON'T REALLY

12  KNOW.  BUT THAT MOMENT OF TRAUMA OF TAKING A CHILD AWAY,

13  ESPECIALLY WHEN THE CHILD IS YOUNG, IS ENORMOUS.  AND WE

14  BELIEVE THAT THAT NEEDS TO BE ELIMINATED IF THEY REALLY ARE

15  THE PARENT.

16     SO WHAT I WOULD SAY IS THAT WE ARE HAPPY TO DO A

17  MEET AND CONFER BECAUSE WE HAVE A BUNCH OF QUESTIONS,

18  EVERYTHING FROM HOW DOES THE LACK OF DNA TESTING, THE

19  INABILITY TO DNA TEST RELATE TO THE RECENT ANNOUNCEMENT BY THE

20  GOVERNMENT THAT THEY ARE GOING TO NOW DNA TEST EVERYBODY WHO

21  COMES TO APPLY FOR ASYLUM IN THE COUNTRY.  HOW MANY PEOPLE

22  ACTUALLY IS THIS, WHERE ARE THE LOCATIONS.  A NUMBER OF

23  THINGS.

24     AND I THINK GIVEN THAT THERE HAVE BEEN MISTAKES IN

25  THE PAST ABOUT PARENTAGE WE ARE VERY CONCERNED ABOUT THIS.

1    ESPECIALLY BECAUSE THE COST DOESN'T SEEM ENORMOUS, AND WE

2    WOULD UNDERSTAND THE GOVERNMENT LIKELY TO BE BUILDING THIS OUT

3    ANYWAY.

4            BUT I THINK WE COULD START THIS WEEK BY -- OR NEXT

5    WEEK BY IMMEDIATELY ASKING THE GOVERNMENT ALL OF OUR

6    QUESTIONS, AND GET BACK TO YOU.  BUT WE ARE VERY CONCERNED

7    ABOUT IT, IN SHORT.

8            **THE COURT:**  OKAY.

9            AND I ALSO SAW, IN ONE OF THE NEWS OUTLETS, ABOUT

10   THE DHS EXPANDING DNA COLLECTION, I BELIEVE, TO ALL MIGRANTS.

11           I ASSUME THAT IS BEING DONE AT I.N.S. FACILITIES,

12   AND SO I WAS MAKING THE ASSUMPTION THAT FOR THESE REMOTE

13   LOCATIONS ON THE SOUTHERN BORDER, CBP FACILITIES, THAT THEY

14   DON'T HAVE THE DNA TESTING EQUIPMENT.  AND THAT THIS ROLL-OUT

15   BY THE GOVERNMENT TO TEST EVERYONE WOULD BE OCCURRING AT A

16   DIFFERENT LOCATION.

17           SO, FOR EXAMPLE, INDIVIDUALS WHO ARRIVE IN THE U.S.

18   AT A REMOTE LOCATION WOULD BE TRANSFERRED TO AN ICE FACILITY

19   SOMEWHERE ELSE WHERE THEY HAVE THE DNA TESTING, AND THAT IS

20   WHERE ALL INDIVIDUALS WOULD BE TESTED.

21           IS THAT -- CAN YOU SPEAK TO THAT, MS. FABIAN?

22           SO AM I CORRECT IN ASSUMING THAT THE GOVERNMENT

23   WOULD STILL MAKE THE ARGUMENT THAT AT THESE REMOTE FACILITIES

24   THE TECHNOLOGY, THE DNA EQUIPMENT, IS NOT AVAILABLE.

25           **MS. FABIAN:**  YES, YOUR HONOR.  AND I WANT TO SPEAK

1    CAREFULLY.

2              I UNDERSTAND THAT WHEN WE SAY REMOTE FACILITIES WE

3    ARE TALKING ABOUT A CBP FACILITY THAT WOULD BE LOCATED, YOU

4    KNOW, A SIGNIFICANT DISTANCE FROM ANOTHER CBP FACILITY OR ANY

5    ICE FACILITY THAT HAD THIS RAPID DNA TESTING THAT IS PART OF

6    THE PROGRAM THAT I THINK, YOU KNOW, WE EXPLAINED IS IN 44

7    LOCATIONS.

8              NOW, I CAN'T SPEAK RIGHT NOW, AT ALL, TO THE -- ANY

9    EXPANSION OF DNA OR YOUR OTHER QUESTIONS.  I AM NOT MAKING ANY

10   REPRESENTATIONS ON THAT.  I DON'T HAVE ANY INFORMATION ABOUT

11   ANY ROLL-OUT OF THAT.

12             I CAN CERTAINLY TAKE THAT BACK TO MY CLIENTS AND

13   TALK TO THEM ABOUT THAT IF THAT IMPACTS OUR POSITION AS

14   EXPLAINED IN THIS JOINT STATUS REPORT.  I DON'T KNOW ANYTHING

15   ABOUT THAT RIGHT NOW.

16             **THE COURT:**  OKAY.

17             **MR. GELERNT:**  THIS IS MR. GELERNT.

18             **THE COURT:**  GO AHEAD.

19             **MR. GELERNT:**  THE ONLY OTHER THING I WAS GOING TO

20   SAY -- AND AGAIN, WE ARE HAPPY TO FOLLOW UP WITH THE

21   GOVERNMENT.

22             BUT I ALSO DO WANT TO SAY THAT THE GOVERNMENT IS NOT

23   CLAIMING THAT THESE ARE DANGEROUS ADULTS THAT THEY COULD ALSO

24   KEEP THE PARENT AND CHILD TOGETHER, EVEN ASSUMING THEY CAN'T

25   GET RAPID DNA TO THESE LOCATIONS, AND BRING THE PARENT AND

1  CHILD SOMEWHERE TOGETHER SO THAT TRAUMATIC MOMENT OF

2  SEPARATION DOESN'T OCCUR.

3        I GUESS THESE ARE THINGS WE CAN EXPLORE WITH THE

4  GOVERNMENT THIS WEEK AND GET BACK TO -- IF WE NEED TO GET BACK

5  TO YOU BEFORE THE NEXT STATUS REPORT.

6        **THE COURT:**  YES.  I THINK THAT IS AN EXCELLENT

7  APPROACH.  SO I AM GOING TO ASK THE PARTIES TO MEET AND

8  CONFER.  WE WILL SET THIS OUT IN THE ORDER WE ISSUE FOLLOWING

9  THE STATUS CONFERENCE.

10        ON THIS ISSUE THE PARTIES, OF COURSE, CAN REALLY GET

11  TO THE SPECIFICS.  AND PLAINTIFFS WILL HAVE A NUMBER OF

12  QUESTIONS THAT THE GOVERNMENT OUGHT TO RESPOND TO.  AND

13  HOPEFULLY THROUGH A MEET-AND-CONFER PROCESS THERE CAN BE SOME

14  WAY TO ADDRESS THIS ISSUE FOR THIS GROUP OF PARENTS.

15        IT WOULD ALSO BE HELPFUL FOR THE COURT TO KNOW WHAT

16  THE NUMBERS ARE.  HOW MANY ARE WE TALKING ABOUT IN THESE

17  REMOTE FACILITIES.

18        AND THEN, FROM THE GOVERNMENT'S PERSPECTIVE, IF

19  TEMPORARY SEPARATION IS PERMITTED, HOW DOES THAT WORK; WHETHER

20  THE PARENT -- OR ADULT AND CHILD ARE IN THE SAME FACILITY BUT

21  IN SEPARATE HOLDING AREAS, OR IS THE CHILD ACTUALLY REMOVED TO

22  HHS, TO A DIFFERENT COUNTY OR DIFFERENT STATE, EVEN.

23        SO A NUMBER OF THOSE ISSUES, I THINK, NEED TO BE

24  ADDRESSED.  AND THEN THAT INFORMATION CAN BE PROVIDED TO THE

25  COURT IN THE NEXT JSR.

1          SO LET'S DEFER THAT ISSUE UNTIL THE NEXT STATUS

2    CONFERENCE, PENDING THE PARTIES' MEET AND CONFER.

3          ON THE INFORMATION SHARING, IT APPEARS THAT THAT IS

4    GOING WELL.  I SEE THAT PLAINTIFFS SUBMITTED A NUMBER OF

5    QUESTIONS TO THE GOVERNMENT ON FEBRUARY 20, I BELIEVE.  AND

6    THE PARTIES ARE, IT SEEMS, MAKING SIGNIFICANT PROGRESS.  SO I

7    WOULD BE CONTENT TO LEAVE THAT ISSUE FOR THE NEXT STATUS

8    CONFERENCE.

9          MR. GELERNT OR MS. WEISS, MS. FABIAN, ANYTHING MORE

10   ON THAT?

11         **MR. GELERNT:**  THIS IS MR. GELERNT.

12         I THINK -- YOUR HONOR, I THINK THAT IS RIGHT THAT WE

13   ARE HAVING, AT THE MOMENT, MEET AND CONFER THAT IS GOING,

14   HOPEFULLY WILL CONTINUE TO BE CONSTRUCTIVE.

15         THE ONLY THING I WANTED TO BRING TO YOUR ATTENTION,

16   I THINK WE WILL SUBMIT IT FORMALLY TO YOU, JUST SO THAT YOUR

17   HONOR HAS IT, IS THAT THERE WAS A REPORT ISSUED THIS WEEK BY

18   HHS, THE OIG, AND IT DISCUSSED INFORMATION SHARING AND WHERE

19   THINGS ARE ON INFORMATION SHARING, AND NOTED SOME CONTINUING

20   PROBLEMS BETWEEN THE AGENCIES.

21         WE ARE STILL STUDYING THE REPORT, IT IS A LONG

22   REPORT, AND TRYING TO DIGEST IT.  WE WILL SUBMIT IT FOR THE

23   COURT'S CONVENIENCE.  BUT I THINK IT IS POSSIBLE WE WILL HAVE

24   FOLLOW-UP QUESTIONS AS WELL FOR THE GOVERNMENT BASED ON THE

25   REPORT.

22

```
 1          THE COURT:  I SEE.  SO IS THIS ANOTHER INSPECTOR
 2    GENERAL REPORT?
 3          MR. GELERNT:  IT IS, FROM -- YES, YOUR HONOR, FROM
 4    HHS.
 5          AND I BELIEVE -- I APOLOGIZE IF I GET THE DATE
 6    WRONG, BUT I THINK IT IS MARCH 5TH, SO YESTERDAY THAT IT CAME
 7    OUT.  AND IT TALKS ABOUT WHAT IT SAW AS SOME CONTINUING
 8    PROBLEMS WITH INFORMATION SHARING, AND THAT CERTAIN THINGS ARE
 9    STILL BEING DONE MANUALLY.  IT REALLY GETS INTO THE
10    NITTY-GRITTY OF QUESTIONS THAT THIS COURT HAS BEEN POSING FOR
11    SOME TIME NOW.
12          SO WE ARE TRYING TO DIGEST THAT.  AND I THINK WE
13    WILL HAVE SOME FOLLOW-UP QUESTIONS FOR THE GOVERNMENT IN
14    ADDITION TO WHAT WE HAVE ALREADY SUBMITTED.  BUT THE BOTTOM
15    LINE IS, I THINK YOUR HONOR IS RIGHT.
16          MS. WEISS CAN MENTION WHAT SHE NEEDS TO MENTION, BUT
17    I THINK FROM OUR STANDPOINT ADDITIONAL MEET AND CONFER WOULD
18    BE APPROPRIATE.
19          THE COURT:  OKAY.
20          MS. FABIAN:  YOUR HONOR, THIS IS SARAH FABIAN FOR
21    THE GOVERNMENT.
22          I JUST WANT TO -- I HAVE -- WE ARE HAPPY TO DISCUSS
23    THE OIG REPORT, IF THAT IS WHAT THE COURT WANTS.  I WANT TO
24    HIGHLIGHT SOME OF THE ISSUES THAT ARE -- THAT ARE DISCUSSED IN
25    THE O.I.G. REPORT.
```

23

1        IF YOU LOOK AT THE DATE, SOME OF THE INFORMATION
2   ABOUT WHAT, YOU KNOW, PROBLEMS THAT ARE OCCURRING IS DATED,
3   YOU KNOW, BASED ON STARTING APRIL OF 2019.

4        AND I DID TAKE A LOOK AT THAT AND REACH OUT TO MY
5   CLIENTS AND DISCUSS IT.  AND I THINK SOME OF THE ISSUES THAT
6   ARE RAISED IN THE O.I.G. REPORT ARE THINGS THAT ARE PRECISELY
7   THE THINGS THAT WE HAVE BEEN DEALING WITH OVER THE LAST YEAR.

8        SO JUST THE PROCESS OF PUTTING OUT THESE REPORTS MAY
9   MEAN THAT -- IT IS A LITTLE -- IT WAS A LITTLE CONFUSING TO ME
10  WHEN I LOOKED AT THE DATE THAT SORT OF, YOU KNOW, WHAT IS
11  BEING TALKED ABOUT IS WHAT IS OCCURRING NOW AND WHAT IS BASED
12  ON INFORMATION THAT THE INVESTIGATORS MAY HAVE BEEN GETTING
13  EARLIER LAST YEAR.

14        BUT GIVEN THE AMOUNT OF CHANGE AND IN WORKING --
15  WITH THE PARTIES WORKING TOGETHER AND THE IMPROVEMENTS THAT WE
16  HAVE BEEN ABLE TO MAKE OVER THE LAST YEAR, I THINK SOME OF THE
17  PROBLEMS HIGHLIGHTED THERE ARE THINGS THAT WE HAVE ALREADY
18  ADDRESSED.

19        BUT I WOULD AGREE THAT -- CONTINUE TO MEET AND
20  CONFER AND WE WILL GET BACK TO PLAINTIFFS ON THEIR LAST ROUND
21  OF QUESTIONS SHORTLY.

22        **THE COURT:**  OKAY.  THANK YOU.

23        MS. WEISS, ANYTHING?

24        **MS. WEISS:**  NO.  I AGREE WITH ALL OF THAT, YOUR
25  HONOR.  THANK YOU.

```
 1            THE COURT:  THANKS FOR BRINGING UP THE O.I.G.
 2   REPORT, MR. GELERNT.  I WILL TAKE A LOOK AT THAT AS WELL.
 3   THEN AFTER THE PARTIES MEET AND CONFER WE WILL COME BACK TO
 4   THIS ISSUE AT THE NEXT STATUS CONFERENCE.  SO I APPRECIATE
 5   THAT.
 6            ON MMM, EVERYTHING LOOKS TO BE IN ORDER AND GOING
 7   WELL.  ANYTHING THERE, MS. NELSON, OR MS. COSTELLO?
 8            MS. NELSON:  GOOD AFTERNOON, YOUR HONOR.  THIS IS
 9   KATHERINE NELSON.
10            WE DON'T HAVE ANYTHING ELSE TO REPORT BEYOND WHAT IS
11   IN THE JSR.  EVERYTHING APPEARS TO BE GOING WELL.
12            AS WE RECEIVE FORMS WE FORWARD THEM TO THE
13   GOVERNMENT, BUT WE HAVEN'T RECEIVED ANY NEW ONES IN THE LAST
14   FEW MONTHS.
15            THE COURT:  OKAY.  VERY GOOD.  THANK YOU.
16            LET'S SEE, I AM GOING BACK.
17            MR. GELERNT, WHAT IS THE STATUS -- I BELIEVE THERE
18   WERE 11 PARENTS THAT WERE THE SUBJECT OF THE COURT'S ORDER
19   THAT WERE RETURNING TO THE UNITED STATES, AND NINE OF THEM ARE
20   HERE.  AND WHAT'S HAPPENING WITH THE OTHER TWO?
21            MR. GELERNT:  THE OTHER TWO, I THINK THERE WERE
22   CERTAIN LOGISTICAL PROBLEMS.  I, UNFORTUNATELY, DO NOT KNOW
23   THE VERY, VERY LATEST.  BUT THEY DID NOT TRAVEL WITH THE OTHER
24   NINE.  SO NINE HAVE COME BACK.
25            IF ANYBODY ON MY TEAM KNOWS THE VERY LATEST ABOUT
```

1    THE REMAINING TWO THEY SHOULD -- IF IT IS OKAY WITH YOUR
2    HONOR, IF THEY SPEAK UP NOW.
3         BUT I THINK THAT THE OTHER TWO WE ARE STILL WORKING
4    ON WHAT'S GOING ON WITH THEM.  THERE WERE A VARIETY OF
5    COMPLICATED THINGS THAT WERE IDIOSYNCRATIC TO THEM.
6         **THE COURT:**  OKAY.
7         WELL, THEN, NOT HEARING ANYTHING FURTHER ON THOSE
8    TWO, I WILL SIMPLY WAIT FOR THE NEXT JSR TO SEE WHAT THE
9    STATUS IS AS TO THOSE TWO.
10        THAT TAKES -- IF WE GO TO PAGE 21, THERE IS
11   REFERENCE TO A REMAINING CHILD.
12        AND MAYBE THIS IS WHAT, MR. HERZOG, YOU WERE
13   REFERENCING AT THE BEGINNING OF THE CONFERENCE CALL.
14        **MR. HERZOG:**  IT IS.  THIS CHILD WAS -- IS ONE OF THE
15   CHILDREN OF ONE OF THE NINE PARENTS I BELIEVE WAS RETURNED.
16        **THE COURT:**  OKAY.  SO THIS CHILD, THEN -- I SEE.  IS
17   IN THE PROCESS OF REUNIFYING WITH HIS OR HER PARENT.
18        **MR. HERZOG:**  THAT MAY ALREADY HAVE OCCURRED.  I
19   CAN'T CONFIRM THAT, BUT I SUSPECT IT HAS.
20        **THE COURT:**  OKAY.  VERY GOOD.  ALL RIGHT.
21        I THINK THAT IS ALL I HAVE.
22        IS THERE ANYTHING ELSE WE NEED TO COVER?
23        **MR. GELERNT:**  NOTHING FROM ME, YOUR HONOR, FROM MR.
24   GELERNT.
25        **MS. FABIAN:**  NOTHING FROM THE GOVERNMENT, YOUR

1   HONOR.

2          **THE COURT:**  OKAY.

3          THEN LET'S MEET AGAIN.  I WOULD PROPOSE APRIL 17, SO

4   THAT'S SIX WEEKS, AT 1:00 O'CLOCK.  AND WITH THE STATUS

5   REPORTS BY WEDNESDAY, CLOSE OF BUSINESS ON THE 15TH.

6          WE WILL ISSUE AN ORDER TO THAT EFFECT.  WE WILL SET

7   OUT WHAT WE HAVE DISCUSSED HERE TODAY.  AND ASK THE PARTIES TO

8   CONTINUE IN EARNEST ON THE MEET AND CONFER ON ALL OF THESE

9   SUBJECTS.

10         THEN, OF COURSE, MR. HERZOG, WE ARE COUNTING ON YOU

11  AND THE NGO'S TO KEEP PUSHING ON THE WORK THAT YOU ARE DOING.

12  AND WE WILL SEE WHERE WE ARE ON APRIL 17TH.

13         SO, WITH THAT, I WISH YOU ALL A GOOD WEEKEND.  AND

14  WE WILL LOOK FORWARD TO THE NEXT MEETING.

15         THANK YOU.

16         **MR. GELERNT:**  THANK YOU, YOUR HONOR.

17         **MS. FABIAN:**  THANK YOU, YOUR HONOR.

18

19                          *   *   *

20         I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
21         IN THE ABOVE-ENTITLED MATTER.

22         S/LEEANN PENCE                    3/7/2020
           LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
23

24

25