| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 616-0473<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt\*<br>Judy Rabinovitz\*<br>Anand Balakrishnan\*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T: (212) 549-2660<br>F: (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T: (415) 343-1198<br>F: (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*\*Admitted Pro Hac Vice* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**JOINT STATUS REPORT** |

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on April 15, 2020, in anticipation of the status conference scheduled at 12:00 pm on April 17, 2020. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

## I. DEFENDANTS' POSITIONS

### A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | **436 (256 Parents/180 Children)**[2] |
| | • Number who elect to receive settlement procedures | **273 (152 Parents/121 Children)** |
| | • Number who waive settlement procedures | **163 (104 Parents/59 Children)**[3] |
| **Interviews** | Total number of class members who received interviews | **164**[4] |
| | • Parents who received interviews | **86** |
| | • Children who received interviews | **78** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **69**[5] |

---

[1] The number of election forms reported here is the number received by the Government as of April 10, 2020.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **68[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **20** |
| | • Number of parents granted asylum by USCIS | **2** |
| | • Number of parents referred to immigration court | **5** |
| | • Number of children granted asylum by USCIS | **3[9]** |
| | • Number of children referred/returned | **10** |

---

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

| | | |
|---|---|---|
| | to immigration court | |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **104 Parents**[10] |

## B. Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. In advance of the Court's October 25, 2019 deadline, Defendants completed the process of identifying members of the expanded class and produced spreadsheets identifying those individuals to Plaintiffs' counsel. On November 6, 2019, the Steering Committee notified Defendants that in the 11 batches there were 149 individuals who have been identified by the government as being both children of potential expanded class members and "exclusions." On December 13, 2019, Defendants provided Plaintiffs with their completed review and reconciliation of the 149 individuals with inconsistent labels.

On February 7, 2020, Defendants reached out to Plaintiffs to request that Plaintiffs provide Defendants with an update regarding their efforts to locate and reunify members of the expanded class. Noting that this Court has encouraged the

---

[10] This number is as of April 15, 2020.

sharing of information between the parties, Defendants asked that for each expanded class member that Defendants identified for Plaintiffs, the Steering Committee provide Defendants with certain information regarding their progress in making contact and facilitating reunification. Plaintiffs provided some of the information that Defendants requested on March 14, 2020. On April 13, 2020, Plaintiffs informed Defendants that they intend to provide additional information by the end of this week. Defendants will continue to confer with Plaintiffs regarding this information-sharing request after they have reviewed the additional information that Plaintiffs are providing.

    Defendants continue to believe that without adequate information-sharing by the Steering Committee, the government and the public cannot tell where the efforts of the Steering Committee stand or whether the Steering Committee is making bona fide progress. The Court has emphasized the importance of transparency, and Defendants believe that the information they have requested from Plaintiffs is important to ensure that if Plaintiffs intend to raise any outstanding issues related to the expanded class, then those issues can be resolved in a fair and expeditious manner. Defendants also believe that it would be inappropriate—and inconsistent with the Court's guidance—for Plaintiffs to unfairly surprise Defendants and the public based on information in Plaintiffs' sole

possession, and that Plaintiffs therefore need to keep Defendants informed of their progress.

**C. MMM Settlement Forms—Discrepancies**

Defendants have heard nothing from the MMM Plaintiffs regarding this issue since the last Joint Status Report and therefore believe this issue to have been resolved.

**D. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

*Data Requested by Plaintiffs*.  Defendants are providing Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 on a monthly basis.

*Processes and Procedures*.  Defendants provided a summary outline to the Court and to Plaintiffs memorializing the processes, procedures, tracking, and communication between the agencies that have been adopted by the agencies since June 26, 2018.  The outline also included an overview of the options for separated parents and children to obtain information about reunification options. The parties have met and conferred since then regarding the government's proposals. Defendants have held several internal telephonic meetings, and have spoken with representatives for the Bureau of Prisons and the U.S. Marshals Service to ensure that those entities are included in discussions regarding these processes and procedures.

Defendants also have now implemented the use of a tear sheet for families that are separated that provides information about the separation to the separated parent, as well as information about how to locate their children.  The tear sheet includes an email address by which separated parents can provide information to DHS that they wish to have considered. This email address has also been provided to Plaintiffs' counsel and other interested counsel.

Following the November 8 Status Conference, the Court directed the parties to continue to meet and confer on the information-sharing protocols between the government agencies involved in family separations, and between the government and Plaintiffs and the legal service providers. On November 19, 2019, the parties met and conferred regarding the information sharing protocols.  On November 22, 2019, Defendants provided Plaintiffs, pursuant to the Protective Order, with the Office of Refugee Resettlement's draft guidance to its field staff regarding new separations.  Defendants asked Plaintiffs to share with them any specific problems they were aware of regarding the information sharing protocols. On December 2, 2019, Plaintiffs sent Defendants initial questions and requests for clarification about the protocols to which Defendants provided a response on December 19. On January 2, Plaintiffs asked that they be allowed to share the Office of Refugee Resettlement's draft guidance with legal services providers and advocates.  Defendant ORR agreed that the draft guidance could be provided to Catherine Weiss. In addition, Defendant

ORR provided a summary of the document, to be shared with Ms. Weiss and the legal service providers and advocates more broadly, for the purpose of facilitating discussions about information sharing.

On February 7, 2020, Defendants reached out to Plaintiffs asking whether Plaintiffs had any remaining questions or issues related to Defendants' practices or procedures for information sharing, and asking that if so, Plaintiffs please send a list of those questions or issues by February 14, 2020, so that the parties could attempt to reach final resolution of all information-sharing matters before the next Joint Status Report. On February 20, 2020, Plaintiffs responded by sending an extensive list of additional questions. Defendants provided responses to these questions on April 10, 2020.

### E. Implementation of DNA Testing

In its January 13, 2020 order, this Court ordered that Defendants "must conduct DNA testing before separating an adult from a child based on parentage concerns." Order at 11-12. The Court further stated that "[s]ubjective concerns about parentage—or inability to validate documentation—are an insufficient basis for separation when those concerns can be definitively addressed through use of readily accessible, inexpensive and accurate scientific testing." *Id.* at 12. In reaching this decision, the Court relied on the "relatively few" number of separations based on "unverified familial relationship," the existence of the Rapid DNA pilot program at

certain locations along the southwest border, and the assumption that "if testing is not available at a particular facility, Defendants can transfer the family to a facility where that testing is available, or take swabs from the parent and child and send the swabs for testing, as they did with Ms. L. and her daughter." *Id.* at 11.

In the March 4, 2020 JSR, Defendants provided information regarding their efforts to comply with this provision of the Court's order. At the March 6, 2020, status report, the Court ordered the parties to meet and confer regarding this issue. On March 13, 2020, Plaintiffs sent a list of questions based on Defendants' JSR submission to facilitate the parties' discussion. Defendants are still working to respond to these questions, and have reached out to Plaintiffs to set a time to discuss those responses. This process has been delayed because Defendants' resources have been focused on the government's response to the COVID-19 pandemic and implementation of the CDC's *Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists*, available at https://www.cdc.gov/quarantine/order-suspending-introduction-certain-persons.html (last visited April 15, 2020). Defendants note that as a result of the pandemic and the CDC order, the number of individuals in DHS custody generally has decreased, which has resulted in a significant reduction of the number of individuals who would be subject to the DNA testing contemplated in the order prior

to separation. Moreover, Defendants have not recorded any separations which would be subject to the Court's Order since the implementation of the CDC Order.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have focused on reaching children whose membership in the class is not contested, and for whom the government has provided at least one phone number for a sponsor or for the child's parent. There are 1,030 children that meet that description.[11]

As of April 15, the Steering Committee has attempted to reach the families of all of these 1,030 children, and has successfully reached the parents (or their attorneys) of 433 children, either by reaching the parent directly through a parent phone number provided by the government, via an initial call with the child's sponsor who provided the Steering Committee with a working phone number for the parent, directly to the parent via on-the-ground efforts, or by inbound phone calls to the Steering Committee's toll-free numbers from family members who received a mailing from the Steering Committee. As a result, 597 children remain for whom the Steering Committee has not yet reached the separated parent, approximately half

---

[11] The eleven lists identify a total of 1,556 unique children, 1,134 of which have been confirmed by the government as being children of potential expanded class members (this number is one fewer than our previous report because there is one parent who was erroneously classified by the Steering Committee as a class member who in fact was classified by the government as an "excluded" parent). For 104 of these 1,134 children of potential class members, the government has not provided a phone number. Parents of the 422 children who have not been identified by the government as potential expanded class members have been categorized as "exclusions". The Steering Committee also intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

of whom are believed on the basis of the last information available from the government, to be in their respective countries of origin. Of these 597, the Steering Committee believes, on the basis of its unsuccessful attempts to reach the family telephonically, that parents of 532 will not be reached using the telephone numbers provided by the government. For these families, the Steering Committee has commenced or intends to commence additional efforts to locate the separated parent, as discussed below.

We note that the Steering Committee's additional efforts to locate separated parents have been hampered since the last status conference due to COVID-19. In particular, our efforts to reach families on-the-ground—including attempts to establish initial contact with families through searches by Justice in Motion defenders, as well as attempts to conduct follow-up communication with previously-contacted families to determine their reunification preferences and ascertain whether the assistance of the government will be required—have been slowed and, in some cases, suspended, in order to protect the health of personnel working with the Steering Committee and to prevent the inadvertent spread of COVID-19 into vulnerable communities. The spread of COVID-19 has also hampered some additional Steering Committee efforts, such as the dissemination of our toll-free phone numbers, as the Steering Committee has had difficulty during the public health crisis engaging third parties such as media outlets to disseminate this information, while their focus has been on the COVID-19 health crisis. During this time, the Steering Committee has continued to use its resources to assist separated families in the ways our resources permit, including by continuing to attempt telephone contact with parents who have not yet been reached, speaking telephonically with families previously contacted to ascertain their reunification preferences, and monitoring voicemail boxes reachable via the Steering Committee's toll-free numbers.

As of April 15, the Steering Committee has spoken to a number of parents who have indicated tentatively that they are not satisfied with the current separation from their child and who may want their child returned to their country of origin. Our outreach to these families continues and we will advise the government if any cases arise in which a parent seeks to have their child returned. As noted above, the Steering Committee has experienced delays and anticipates further delays in being able to provide this information to the government as a result of the outbreak of the novel coronavirus, but will continue to keep the government and the Court informed of its progress.

### B. Steering Committee Progress Contacting "Unreachable" Parents

As noted in previous Joint Status Reports, the Steering Committee has commenced extensive efforts to locate the "unreachable" parents in their respective countries of origin, a group now comprised of the parents of 532 children. Over the last several months, the Steering Committee has commenced a variety of additional outreach initiatives in an attempt to reach these parents.

First, as previously reported, the Steering Committee has engaged in time-consuming and arduous on-the-ground searches for parents in their respective countries of origin. As noted above, these searches are currently suspended as a result of the outbreak of the novel coronavirus, in order to protect the health of personnel working with the Steering Committee, and to prevent the spread of COVID-19 into vulnerable communities. Prior to the suspension of these searches, defenders with Justice in Motion had commenced on-the-ground efforts to locate the "unreachable" parents of 281 children, and had successfully located the parents of 148 of those children. During this time, the Steering Committee is using contact information obtained by Justice in Motion's defenders to communicate with, and ascertain the reunification preferences of, parents who had formerly been designated

as "unreachable". The Steering Committee will resume on-the-ground search activity for parents who remain "unreachable" once it is safe to do so.

Also as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class. The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee has continued to receive inbound phone calls to these toll-free numbers and is working to communicate with potential *Ms. L.* class members identified through this method regarding the possibility of reunification.

Additionally, as previously reported, the Steering Committee has commenced broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. In the last Joint Status Report, the Steering Committee indicated that we would advise the Court in the present Joint Status Report the number of parents successfully contacted through this method of outreach. However, our outreach efforts to these third-party media outlets have not yet resulted in broad dissemination of the Steering Committee's toll-free numbers, which the Steering Committee believes to be due in large part to the outbreak of the novel coronavirus. The Steering Committee is working to broadly disseminate these toll-free numbers through various media to maximize visibility to

potential *Ms. L.* class members and will provide the Court with further updates on its efforts.

Finally, the Steering Committee has commenced communication with Seneca Family of Agencies ("Seneca"), a non-profit organization that has contracted with the Department of Health and Human Services to connect certain *Ms. L.* class members in the United States with mental health providers, pursuant to a preliminary injunction in *Ms. J.P., et al.* v. *William P. Barr, et al.* (2:18-cv-06081-JAK-SK, C.D. Cal.).  The Steering Committee is working to provide to Seneca, pursuant to the Protective Order in this case and the *Ms. J.P.* case, with contact information for *Ms. L.* class members entitled to relief in that action in order to assist Seneca in its efforts to provide separated families with mental health assessments and treatments.  *Ms. L* class counsel have advised government counsel of this contemplated exchange and government counsel has agreed that such information may be exchanged under the Protective Order. The Steering Committee is simultaneously working with Seneca and its partners to obtain contact information for currently unreachable parents in the *Ms. L.* class, and to locate such parents, particularly those believed to be within the United States and thus within the scope of Seneca's work.  The Steering Committee intends to use this information to conduct further outreach to class members to ascertain their preferences with respect to reunification.

### C. The Government's DNA Testing

The parties are scheduled to meet and confer next week about the government's proposal, made in the last Joint Status Report, regarding DNA testing at certain CBP stations.

### D. Information Sharing

The parties continue to meet and confer regarding information sharing among government agencies, and from the government to parents and children whom the government has separated.

On February 20, Plaintiffs sent a consolidated set of questions to the government about its information sharing practices. The government responded on April 10, and Plaintiffs are currently evaluating those responses with the help of legal services providers.

On March 18, the U.S. Government Accountability Office issued a report, Actions Needed to Improve DHS Processing of Families and Coordination between DHS and HHS. Plaintiffs are filing this report with the Court. (Plaintiffs previously filed a report from the HHS Office of Inspector General, issued on March 5, that dealt with broadly similar concerns.) Plaintiffs will send any new questions to the government that arise from the GAO and HHS OIG reports.

Finally, on February 14, the Steering Committee received from a government a request for individualized information regarding the Steering Committee's efforts with respect to locating and communicating with potential class members. The Steering Committee is committed to information sharing efforts that facilitate parents' ability to obtain relief in this action, and is communicating with the government to determine the scope of the information to be prepared, to ensure that the information provided is helpful to parents and the government, without posing an undue resource burden on the Steering Committee's efforts to locate parents and discern their reunification wishes.

### D.   Relief for Deported Parents

At the last Status Conference, the Court inquired about the two parents that it granted relief who did not return in January 2020. For one parent—E.A.S.M.—return at that time was impossible because his wife was pregnant and he could not leave her. In the other case—E.C.C.—the parent's lawyers have not been able to reach him. His lawyers continue to attempt to make contact to ensure his safety.

### III. *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

| | | |
|---|---|---|
| 1 | DATED: April 15, 2020 | Respectfully submitted, |
| 2 | | /s/ Lee Gelernt |
| 3 | | Lee Gelernt* |
| 4 | | Judy Rabinovitz*<br>Anand Balakrishnan* |
| 5 | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 6 | | 125 Broad St., 18th Floor |
| 7 | | New York, NY 10004<br>T: (212) 549-2660 |
| 8 | | F: (212) 549-2654 |
| 9 | | *lgelernt@aclu.org* |
| 10 | | *jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org* |
| 11 | | |
| 12 | | Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF SAN DIEGO |
| 13 | | & IMPERIAL COUNTIES |
| 14 | | P.O. Box 87131<br>San Diego, CA 92138-7131 |
| 15 | | T: (619) 398-4485 |
| 16 | | F: (619) 232-0036<br>*bvakili@aclusandiego.org* |
| 17 | | |
| 18 | | Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069) |
| 19 | | AMERICAN CIVIL LIBERTIES UNION |
| 20 | | FOUNDATION<br>39 Drumm Street |
| 21 | | San Francisco, CA 94111 |
| 22 | | T: (415) 343-1198<br>F: (415) 395-0950 |
| 23 | | *skang@aclu.org* |
| 24 | | *samdur@aclu.org* |
| 25 | | *Attorneys for Petitioners-Plaintiffs* |
| 26 | | *Admitted Pro Hac Vice* |
| 27 | | |
| 28 | | |

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*