# **DEFENDANTS' EXHIBIT A**

**Response to Plaintiffs' Information Sharing Proposal**

## *General Principles*

- There is no free-standing category of "separation information" maintained by the government and shared between its agencies. By default, given the various legal authorities of each agency involved, information relating to a particular separation or parent and child is compiled from CBP, ICE, and HHS. In other words, CBP may have some information, ICE may have additional information, and HHS will have additional information. This information is all stored in various ways and is subject to varying degrees of protection and access rights, depending on the information and the database in which it is stored. Also, information often changes or develops over time. So, it is not operationally feasible (nor legally permissible) for that information to all be stored in any one place or by any one agency.
    - The government commits to documenting all relevant information, and to sharing all appropriate information with other agencies, but this information must be documented and shared in accordance with existing legal, privacy, and operational requirements.
    - In order to facilitate intragovernmental information sharing, which will benefit all involved in this effort, DHS and HHS are seeking to enhance communications with the Bureau of Prisons and Marshal's Service.
    - So, while for legal and operational reasons a consolidated database with comprehensive stored information that is fully accessible within the interagency and to the public is not feasible, DHS and HHS are working to enhance information-sharing capability where feasible.
- In the same vein, DHS cannot share all information from its systems of records with HHS. Plaintiffs seem to be envisioning that all DHS information would be entered into the HHS portal, and that LSPs and other outside entities could then gain access to that information. DHS cannot agree to do this, for several reasons:
    - HHS is not a law enforcement entity, and therefore is not able to receive or store law enforcement sensitive (LES) information. Specifically, the UAC portal is not equipped to store such information with appropriate protections. Thus, DHS cannot share LES information with HHS. This is particularly true if information entered into the HHS portal will be made available to NGOs and outside entities.
    - LSPs do not have access to the HHS portal, even for purposes of representing UACs in removal proceedings. Rather, individual attorneys submit case file information requests to ORR in order to obtain children's records. To provide LSPs or the public with Portal access would compromise the privacy and security of the children in ORR custody. Further, information regarding a child's separation from their parent may be relevant in some cases to the child's removal proceedings, it may not be relevant in all cases (and, it may be that only certain information is relevant). Thus, in many cases, the LSPs may not have an official need to know this information. The government is limited in the personal information that it can share about any individual to representative counsel and

1

> cannot share information about an individual alien to entities who do not represent the alien. So, DHS and HHS do not agree to provide access to the Portal to outside entities that have no need to know this information. That is, as described above, particularly important for DHS' LES information.

- For many of the reasons articulated above, the government does not agree to provide parents with the underlying evidence supporting a separation. Much of this information may be deliberative, privileged, or LES. Additionally, the decision to separate is, as Judge Sabraw has noted, one that the government can make in the exercise of its discretion. While DHS has agreed to provide information to parents about why they are separated, the government does not agree that the parents are entitled to a full, evidentiary-style process of *challenging* that decision.

## *What DHS and HHS Currently Do*

### *Initial Separation Decision*

- At the time of initial encounter/apprehension of a family unit or a group purporting to be a family unit (or at any time the family unit or purported family unit remains in CBP custody), CBP will determine, based on the information available at the time, whether the particular group is, in fact, a family unit. A family unit is defined as an alien parent(s) or legal guardian(s) accompanied by his/her/their alien minor children.
    - If CBP determines that a particular group is not a family unit, separation of a child from an adult in the group is warranted in the following situations:
        - A child is accompanied by an adult relative who is not a parent or legal guardian; or
        - An adult claiming to be a child's parent or legal guardian is determined to not be that child's parent or legal guardian. In this situation, if CBP suspects fraud, smuggling, and/or human trafficking, CBP will coordinate, as appropriate, with other law enforcement agencies for any appropriate action against the adult.
- If a child is separated from an adult who is not a parent or legal guardian, the child will be referred to HHS as an Unaccompanied Alien Child (UAC).
    - This type of referral will not be documented in CBP's systems of record as a family unit separation.
    - In situations in which the child was accompanied by a relative (e.g., aunt, uncle, grandparent, sibling), CBP will endeavor to provide HHS with relevant information about the accompanying adult.
    - CBP may, in an exercise of discretion, provide the accompanying adult information relating to the basis for the separation. CBP will not generally provide reasons to the adult if doing so would create a risk to the child's safety or would not otherwise be in the child's best interests, and will not do so in situations in which CBP suspects fraud, smuggling, and/or trafficking.
- If CBP determines that a purported family unit is, in fact, a family unit, separation may still be warranted based on a parent's: 1) criminal history; 2) communicable disease; 3)

- unfitness or dangerousness (including hospitalizations); or 4) some other reason that may not exclude the parent from being treated as a *Ms. L.* class member at a later point in time (i.e., referral for criminal prosecution or as a material witness).
- In all cases in which separation is warranted, HHS will accept the child and consider reunification under either expedited *Ms. L.* procedures or procedures consistent with the TVPRA, as applicable.

*Procedures at Initial Separation of Family Units*

**DHS:**

- At the time of a separation, CBP generally provides, during processing, an explanation to both parent and child of what is occurring, and, if appropriate, the reasons for the separation. Parents and children generally remain together during processing, and so the separation generally is explained to both of them at the same time.
    - Due to existing legal obligations regarding language access (and in accordance with the DHS and CBP Language Access Plans), CBP provides translation services to the family.
    - The degree of detail provided is determined on a case-by-case basis, taking into account the reason for the separation, the age and maturity level of the child, and other relevant factors.
        - Given the nature of CBP facilities, a parent and child who are being separated (even on the basis of the parent's purported danger to the child) may remain in close physical proximity during their time in CBP custody. Thus, CBP will not reveal information that would put that child in increased danger during their time in CBP custody.
        - Additionally, it may not be appropriate to tell a very young child the detailed reasons behind the separation.
- CBP documents the separation in its electronic systems of records, and on both the parent and the child's Form I-213.
    - The parent's Form I-213 will contain the parent's name, A-number, date of encounter, circumstances of encounter, child's name (and A number), records checks (criminal and immigration), and the reason for the separation.
    - The child's Form I-213 will contain the child's name, A-number, date of encounter, circumstances of encounter, parent's name (and A-number), records checks, and the fact of separation.
        - The child's Form I-213 does not always contain the reason for the separation (depending on the specific reason and the supporting information).
- CBP will also generally include relevant paper records (e.g., criminal records, conviction documents (when available), FBI hits) in the A-file. Birth certificates remain with the parent, and are treated as other personal property is treated.
- CBP refers the child to HHS.

3

- At the time of referral, HHS receives the child's Form I-213, the child's biographic information and apprehension/encounter information, and general information about the reasons for the separation. CBP provides HHS with the parent(s)'s biographical information (name, A-number, DOB) and the Form I-216 showing the location to which the parent was initially transferred, as well as general information about the reason for separation.
    - United States Border Patrol ("USBP") enters information directly into the UAC Portal.  In some locations, the Office of Field Operations ("OFO") also enters information directly into the UAC Portal.  The portal has a checkbox that indicates a parent-child separation.  In addition, the portal has a free text narrative box, in which agents and officers can also enter other relevant information.
- CBP provides HHS with copies of any publically available documentation related to the child which may impact that child's placement (e.g., publically available documentation describing any criminal activity or gang affiliation of the child). CBP does not provide HHS with (LES information about either the parent or child, such as non-publically available criminal history records, certain records evidencing gang membership, or other sensitive records from a foreign government.  As law enforcement agencies, CBP and ICE are able to access certain non-public information originating with or owned by other U.S. government entities or foreign governments, and maintains its own LES data. The storage, use, and dissemination of such information is governed by various authorities that generally prohibit the sharing of such information with non-law enforcement entities and the public.  Because HHS is not a law enforcement entity, CBP and ICE cannot share this information with HHS.
- CBP refers the parent to ICE or another agency (e.g., the U.S. Marshals Service), as appropriate.
    - ICE receives the parent's Form I-213, as well as all supporting documentation.
- If the separation is based on a parent's hospitalization, that information will be provided to HHS.  This permits HHS to facilitate local placement, if such placement is possible.
    - CBP may also directly request a local HHS placement for the child.

*Procedures Following Separation*

**HHS**

- Once separated children have been referred to ORR, ORR care providers initiate efforts to establish communication between children and their separated parents, who may be in DHS or Marshals custody, if appropriate.
- As explained below, DHS and HHS confer weekly to maintain a running list of all separations that occurred after June 26, 2018, which includes updates relevant to potential reunifications.
- In consultation with the ORR Federal Field Specialist ("FFS), who has access to the running list of separations, the ORR case manager is able to ascertain basic information

4

about separated parents and children, and share with attorneys representing separated children who contact them with information requests.

- <u>Where separation is based on communicable disease or a determination of unfitness based on hospitalization</u>: For all situations in which a parent has been separated based on communicable disease or unfitness based on hospitalization, if a parent completes medical treatment or the communicable disease is resolved while remaining in DHS custody, DHS will notify HHS.  If the child has not already been released to a sponsor by HHS, then DHS will work with HHS to facilitate reunification.  Such cases are identified and shared between DHS and HHS operators on a separations list. The agencies update the separations list weekly, to the extent possible (see below, "Interagency Information Sharing Regarding Separations"). Where the conditions giving rise to determinations of communicable diseases or parental fitness persist, ICE will make efforts to coordinate reunification upon removal of the parent, if appropriate, dependent on HHS determinations of what is best for the child.

- <u>Where the separation is based on a transfer to criminal custody for a criminal prosecution or as a material witness:</u>  HHS will maintain custody of the child during the course of that parent's criminal custody so as to effect reunification with the parent, if appropriate. When the parent returns to DHS custody, if there is no continued basis for separation, then ICE will work with HHS to facilitate reunification.  Such cases are identified and shared between DHS and HHS operators on the separations list.

- <u>For parents who are separated because of: 1) criminal history, 2) communicable disease, or 3) a determination of unfitness (other than hospitalization) or dangerousness by DHS</u>: ICE will make a detention determination for the parent. These cases are identified and shared between DHS and HHS operators on the separations list.  If the adult is detained, then ICE will work with HHS to facilitate communication between the parent and child, subject to any operational limitations or child safety or welfare concerns that prevent or advise against such communications, when both the parent and child remain in DHS and HHS custody, respectively.

    - ICE provides all parents, even those who may not be class members or eligible for reunification, with a "Notice of Potential Rights for Certain Detained Alien Parents Separated from their Minor Children" form on which they may elect to be reunified with their child upon removal of the parent if it is feasible and in the best interests of the child.  If a parent who is not a class member (e.g., separated based on criminal history or communicable disease, and the factual basis for the separation remains) requests reunification for removal, ICE and HHS will consider such requests on a case-by-case basis, notwithstanding the fact that the parent remains excluded from the *Ms. L.* class.  A parent who is separated on the basis of unfitness (including hospitalization) or dangerousness and who remains in DHS custody is not entitled to be reunified in DHS custody with their child, so long as the factual basis for the original unfitness or dangerousness determination remains in place.  If ICE becomes aware that such factual basis no longer exists, then it will notify and work with HHS to reassess whether reunification at an ICE FRC is appropriate and, if appropriate, facilitate reunification. To the extent that

5

such factual basis no longer exists, and ICE determines that the parent will be released from ICE custody, ICE also will notify HHS so that HHS can assess whether reunification is appropriate. These cases are identified and shared between DHS and HHS operators on a weekly separations list.

### *Interagency Information Sharing Regarding Separations*

- o ICE and CBP exchange information regarding separations on a weekly basis, to the extent possible. The ICE information includes information regarding parents in Marshals (and by extension BOP) custody, which the Marshals provide to ICE regularly. (But note, previously reported individuals may have since changed location.)
- o The DHS list of separations is provided to ORR, which incorporates information regarding the separated children, and adds to the list any separations it discovers in its own data.
- o The agencies then reconcile their data (e.g., separations identified by ORR that were not identified in CBP's initial list). At this point, the data operators from ORR, ICE, and CBP communicate and share information about separations as they are able (some information may be LES). They also provide updates on previously reported separations where appropriate (e.g., ICE provides updates on previously reported separations that occurred for temporary reasons such as hospitalizations). This process takes at least a few days.
- o A version of this list is provided to the ACLU on the Friday of any week the Court orders a JSR. This version is also maintained as an internal, restricted access document by ORR for its field staff.
- o This process repeats weekly, to the extent possible. However, due to the lag in reporting and the need to reconcile data, finalized updates regarding new separations generally reflect information that is two weeks old.
- o Note, through this process, ORR is able to request weekly updates from DHS about the detention status of parents reported in previous updates. Such updates are particularly important in those cases where DHS separated parents from their children on a temporary basis (e.g., illness, injury, hospitalization). Where any temporary basis for separation no longer applies (e.g., a hospitalized parent was discharged from the hospital), and there is no other basis for separation, ORR will proceed with reunification efforts in coordination with ICE, with the participation of the Marshals and BOP where appropriate.

### *Additional Steps the Government is Pursuing to Enable or Enhance the Sharing of Information with Separated Parents and Counsel*

**DHS:**

- Providing parents with the written reason for the separation.
    - o DHS is developing an updated tear sheet, which will be provided to separated parents at the time of the initial separation. The tear sheet will include the reason for which the parent is being separated, as well as information about how to locate their child following the separation.

6

- A process by which a detained separated parent may submit additional information to DHS regarding their separation.
    - The tear sheet will also explain that, should parents have additional information regarding the separation that they would like the government to consider, they may submit that information to ICE ERO.  ICE will create a detainee request form specifically for separated parents to submit such inquiries directly.  For those parent detainees wishing to submit documentation addressing the basis of separation, unrepresented parents may submit a Separated Parent Detainee request form to ERO and it will be routed to HQ.  ERO will also accept electronic inquiries submitted to a mailbox by a parent's representative counsel. ERO will then review the information and/or question submitted and provide a response.
        - Counsel for represented aliens may submit an e-mail to a designated ICE mailbox, SeparationSupplementalInformation@ice.dhs.gov, with a completed G-28, and any additional information or documentation that they wish to have the agencies consider.  ERO is willing to coordinate with CBP and HHS if/as needed to facilitate reunification in situations where supplemental documentation submitted by detained, separated parents adequately addresses the basis for separation.
- ICE will also create, publish and deploy instructional posters in each of its facilities explaining how detained separated parents and their counsel may pursue the above mechanisms for submitting additional information or questions.  The posters will be in English and Spanish.
    - This is ***not*** a process for parents to challenge their separation.  It is a process by which the parent may submit additional information for DHS to consider in the exercise of its discretion.
- CBP is exploring the idea of developing more formalized procedures with HHS to expedite placement of children for short-term separations based on the medical necessity of the parent (i.e., parent needs to be temporarily hospitalized and the child is transferred to HHS).

**HHS:**

- ORR is internally discussing providing both a verbal and written explanation of the basis for separation to separated children as soon as it has the information; however, written notifications in a language children understand may be difficult to implement for certain languages.
- Case managers at individual care provider grantees would be ORR's main points of contact for attorneys for separated children seeking information.
- ORR plans to channel and document all attorney requests for information about family separations through a centralized resource email box (UAC_Separations@acf.hhs.gov). Case managers must forward all requests they receive to this resource box. And attorneys may contact UAC_Separations@acf.hhs.gov directly. When the inbox receives a request for information from an attorney who represents a separated child, it will forward it to the appropriate FFS, who will then coordinate a response with the case manager.

7

### *Examples of Situations Where Providing the Reason for the Separation Could be Harmful to the Child*

- Plaintiffs have asked for examples of cases in which the government determined that it would be harmful to the child to provide the reason for the separation. DHS provides the following examples of the types of factual situations it has encountered in which it would not be in the child's best interests to provide the child with the reason for the separation:
    - A father with an outstanding warrant in his home country for murder arrived with his nine-year old daughter. In such a situation, it would not be in the child's best interest to know the details of her father's history.
    - A mother with mental health issues attempted to harm her toddler while in CBP custody. The toddler and the toddler's older sister were separated from their mother for their safety. In such a situation, it would not be in the older sister's interest to know the details of her mother's actions.
    - In situations in which a parent traveling with two siblings has sexually abused the older child, it would not be appropriate to provide that information to the younger sibling.