| | |
|---|---|
| ETHAN P. DAVIS<br>Acting Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE N. MURLEY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 532-4824<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt*<br>Judy Rabinovitz*<br>Anand Balakrishnan*<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T: (212) 549-2660<br>F: (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF<br>SAN DIEGO & IMPERIAL<br>COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T: (415) 343-1198<br>F: (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*Admitted Pro Hac Vice* |

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA
```

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **JOINT STATUS REPORT** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on July 8, 2020, in anticipation of the status conference scheduled at 11:30 am on July 10, 2020. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

## I. DEFENDANTS' POSITIONS

### A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | **437 (257 Parents/180 Children)**[2] |
| | • Number who elect to receive settlement procedures | **274 (153 Parents/121 Children)** |
| | • Number who waive settlement procedures | **163 (104 Parents/59 Children)**[3] |
| **Interviews** | Total number of class members who received interviews | **164**[4] |
| | • Parents who received interviews | **86** |
| | • Children who received interviews | **78** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **69**[5] |

---

[1] The number of election forms reported here is the number received by the Government as of June 30, 2020.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to Section 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ

|  |  |  |
|---|---|---|
|  | • Number of parents determined to establish CF or RF upon review by USCIS | **68**[6] |
|  | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **1** |
|  | Total number of CFI decisions issued for children by USCIS | **73**[7] |
|  | • Number of children determined to establish CF by USCIS | **73**[8] |
|  | • Number of children determined not to establish CF by USCIS | **0** |
|  | Total number of affirmative asylum decisions by USCIS | **20** |
|  | • Number of parents granted asylum by USCIS | **2** |
|  | • Number of parents referred to immigration court | **5** |
|  | • Number of children granted asylum by USCIS | **3**[9] |

---

(which are included in the interview totals).

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to Section 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

| | | |
|---|---|---|
| | • Number of children referred/returned to immigration court | **10** |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **104 Parents**[10] |

### B. Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. In advance of the Court's October 25, 2019 deadline, Defendants completed the process of identifying members of the expanded class and produced spreadsheets identifying those individuals to Plaintiffs' counsel. On November 6, 2019, the Steering Committee notified Defendants that in the 11 batches there were 149 individuals who had been identified by the government as being both children of potential expanded class members and "exclusions." On December 13, 2019, Defendants provided Plaintiffs with their completed review and reconciliation of the 149 individuals with inconsistent labels.

On February 7, 2020, Defendants reached out to Plaintiffs to request that Plaintiffs provide Defendants with an update regarding their efforts to locate and

---

[10] This number is as of July 1, 2020.

reunify members of the expanded class. Noting that this Court has encouraged the sharing of information between the parties, Defendants asked that for each expanded class member that Defendants identified for Plaintiffs, the Steering Committee provide Defendants with the following information:

- Has the Steering Committee made contact with the expanded class member: Y/N

- Did the expanded class member request assistance with reunification: Y/N

    o If so, has the Steering Committee been able to facilitate reunification: Y/N
        - If not, does the Steering Committee anticipate that reunification will be possible: Y/N
            - provide the reason/any updates

    o If not, why not (if known)
        - Was the expanded class member already reunified with his or her children at the time he or she was contacted by the Steering Committee: Y/N

On February 19, 2020, Plaintiffs responded and declined to provide any information to Defendants, stating that the preparation of the requested information would impose unnecessary burden on the Steering Committee. On February 21, 2020, Defendants responded and asked Plaintiffs some additional questions about the Steering Committee's efforts to contact and reunify expanded class members, including whether Plaintiffs are tracking any information about these efforts, if so, whether that tracking is being done in any systematic or centralized way, and why Plaintiffs could not provide Defendants with at least some of the requested

information in whatever manner it is being tracked by the Steering Committee. Relatedly, Defendants asked the Steering Committee to explain the number of cases for which it intended to seek assistance from the government, and in what manner the Steering Committee intended to seek such assistance.

On March 14, 2020, Plaintiffs provided some of the information that Defendants requested, and they supplemented that production on April 17, 2020. Plaintiffs' spreadsheet includes three categories of information:

- Parent (or Parent's Attorney) Contacted?
- Parent Unreachable via Government-Provided Phone Number
- Further Government Action Necessary at this Time

The third category was blank for all individuals reflected in the reporting.

Following the May 29, 2020 status conference, the Court ordered the parties to meet and confer on this issue. ECF No. 536 at ¶ 1. The parties met and conferred by telephone on June 26, 2020. Following those discussions, on July 5, 2020, Plaintiffs provided Defendants with an updated spreadsheet containing some additional information regarding members of the expanded class. Defendants are now reviewing the information provided and propose that the parties should meet and confer again after Defendants have had a chance to review the information provided.

### C. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.

*Data Requested by Plaintiffs*. Defendants continue to provide Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 Order on a monthly basis.

*Processes and Procedures*.

In the May 27, 2020 Joint Status Report, Defendants provided the court with updated reporting regarding the various steps it has taken to implement Paragraph 5 of the preliminary injunction, ECF No. 83 at 24, ¶ 5, and improve the processes and procedures for information sharing between the agencies related to family separations. Following the May 29, 2020 status conference, the Court ordered that "Defense counsel shall provide the Court with additional details regarding the UIP Team, e.g., who is in charge of the Team and who the Team is reporting to, in the next Joint Status Report." ECF No. 536 at ¶ 2. In accordance with the Court's order, Defendants report the following:

U.S Customs and Border Protection (CBP) is the lead agency coordinating development of the Unified Immigration Portal (UIP). Within CBP, the project is managed by CBP's Office of Information Technology (OIT) and Operations Support Directorate. The team reports to the Assistant Commissioner of OIT, who is CBP's Chief Information Officer. The UIP is being developed through the use of multiple different contractual vehicles, and received $32 million in Fiscal Year 2019 as part

of H.R.3401-Emergency Supplemental Appropriations for Humanitarian Assistance and Security at the Southern Border Act, 2019. Additionally, the White House's Fiscal Year 2021 budget request included a request for $20 million for the UIP.

OIT is working with various other departments and agencies, including U.S. Citizenship and Immigration Services (USCIS), U.S. Immigration and Customs Enforcement (ICE), the Department of Health and Human Services (HHS), and the Department of Justice (DOJ). As described in the previous JSR, the UIP will connect relevant data from different agencies, across the immigration lifecycle, to enable a more complete understanding of an individual's immigration journey. The federated nature of UIP will allow agencies to manage their domains within the immigration ecosystem, while also accessing complete, timely information on a common platform.

The CBP UIP team has also aligned development work with HHS's UAC Portal system modernization (i.e., the UAC Path) in an effort to accelerate data-sharing between DHS and HHS. The initial focus is on automating the UAC placement process so that relevant information can be shared in real-time between agencies. For example, the agencies have begun discussing utilizing the UIP to transmit data about UACs from referring agencies to HHS at the time of referral.

Additionally, the UIP team has taken the following steps:

- Developing a capability that allows users to see a timeline of important events in a particular subject's case as they move through the immigration system;
- Developing the Unaccompanied Alien Children (UAC) Coordination Dashboard which depicts high-level, key metrics relating to CBP's referrals of UACs to HHS for placement, to reduce placement bottlenecks and facilitate resource planning;
- Establishing a federated network connection between HHS and CBP, enabling authorized HHS users to log into the UIP system;
- Discussing the use of standardized family separation reason codes among all agencies in order to ensure the same definitions and terminology will be used in data sharing.

### D. Implementation of DNA Testing

In its January 13, 2020 order, this Court ordered that Defendants "must conduct DNA testing before separating an adult from a child based on parentage concerns." Order at 11-12. The Court further stated that "[s]ubjective concerns about parentage—or inability to validate documentation—are an insufficient basis for separation when those concerns can be definitively addressed through use of readily accessible, inexpensive and accurate scientific testing." *Id.* at 12. In reaching this decision, the Court relied on the "relatively few" number of separations based on "unverified familial relationship," the existence of the Rapid DNA pilot program at certain locations along the southwest border, and the assumption that "if testing is not available at a particular facility, Defendants can transfer the family to a facility where that testing is available, or take swabs from the parent and child and send the swabs for testing, as they did with Ms. L. and her daughter." *Id.* at 11.

In the March 4, 2020 JSR, Defendants provided information regarding their efforts to comply with this provision of the Court's order. At the March 6, 2020, status report, the Court ordered the parties to meet and confer regarding this issue. On March 13, 2020, Plaintiffs sent a list of questions based on Defendants' JSR submission to facilitate the parties' discussion. On April 20, 2020, the parties held a call to discuss resolution of this issue. Defendants are continuing to discuss internally the resolution of questions raised by Plaintiffs in that meet and confer, and intend to schedule a meet and confer to follow up on these issues shortly.

Defendants note that this process continues to be delayed because Defendants' resources have been focused on the government's response to the COVID-19 pandemic and implementation of the CDC's *Order Suspending Introduction of Certain Persons from Countries Where a Communicable Disease Exists*, available at https://www.cdc.gov/quarantine/order-suspending-introduction-certain-persons.html (last visited April 15, 2020). As a result of the pandemic and the CDC order, the number of individuals in DHS custody generally has decreased, which has resulted in a significant reduction of the number of individuals who would be subject to the DNA testing contemplated in the order prior to separation. Defendants have recorded only one separation—reported in the last JSR—based on parentage concerns since the implementation of the CDC Order. A DNA test was conducted prior to separation.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have focused on reaching 1,030 children whose membership in the class is not contested, and for whom the government has provided at least one phone number for a sponsor or for the child's parent.[11]

As of July 8, the Steering Committee has attempted to reach the families of all of these 1,030 children, and has successfully reached the parents (or their attorneys) of 436 children, an increase of two children since the last status report.

As a result, 594 children remain for whom the Steering Committee has not yet reached the separated parent, approximately two-thirds (69%) of whom are believed on the basis of the last information available from the government, to be in their respective countries of origin. Of these 594, the Steering Committee believes, on the basis of its unsuccessful attempts to reach the family telephonically, that parents of 518 will not be reached using the telephone numbers provided by the government. For these families, the Steering Committee has commenced or intends to commence additional efforts to locate the separated parent, as discussed below.

As reported in the last Joint Status Report, the Steering Committee's additional efforts to locate separated parents have been hampered for the last several months due to COVID-19.

---

[11] The eleven lists identify a total of 1,556 unique children, 1,134 of which have been confirmed by the government as being children of potential expanded class members. For 104 of these 1,134 children of potential class members, the government has not provided a phone number. Parents of the 422 children who have not been identified by the government as potential expanded class members have been categorized as "exclusions". The Steering Committee also intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

The Steering Committee has conducted and continues to conduct further outreach to families who have tentatively indicated that they are not satisfied with the current separation from their child and who may want their child returned to their country of origin. Following discussions with these parents, the Steering Committee has yet to identify any families that definitively seek to have their child returned to their respective countries of origin. Our outreach to these families continues and we will advise the government if and when any cases arisen in which a parent seeks to have their child returned. As noted above, the Steering Committee has experienced delays and anticipates further delays in being able to obtain and provide this information to the government as a result of the outbreak of the novel coronavirus, but will continue to keep the government and the Court informed of its progress.

B. **Steering Committee Progress Contacting "Unreachable" Parents**

As noted in previous Joint Status Reports, the Steering Committee has commenced extensive efforts to locate the "unreachable" parents in their respective countries of origin, a group now comprised of the parents of 518 children.

First, as previously reported, the Steering Committee has engaged in time-consuming and arduous on-the-ground searches for parents in their respective countries of origin. As noted above, these searches are currently suspended as a result of the outbreak of the novel coronavirus, in order to protect the health of personnel working with the Steering Committee, and to prevent the spread of COVID-19 into vulnerable communities, and due to the uncertain timeline of the progression of COVID-19 and governmental responses aimed at curbing the spread of the disease, such searches will continue to be suspended until safe conditions are restored. Prior to the suspension of these searches, defenders with Justice in Motion had commenced on-the-ground efforts to locate the "unreachable" parents of 281 children, and had successfully located the parents of 135 of those children. During

this time, the Steering Committee has used contact information obtained by Justice in Motion's defenders to communicate with, and ascertain the reunification preferences of, parents who had formerly been designated as "unreachable". The Steering Committee is also using this time to plan future searches for families within the *Ms. L.* class to ensure that Justice in Motion's defenders are able to commence such searches promptly upon the restoration of safe searching conditions.

Also as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class. The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers.

Additionally, as previously reported, the Steering Committee has commenced broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. As noted in the last several Joint Status Reports, outreach efforts to these third-party media outlets have not yet resulted in broad dissemination of the Steering Committee's toll-free numbers, which the Steering Committee believes to be due in large part to the continuing effects of the novel coronavirus. The Steering Committee is still working to identify opportunities to broadly disseminate these toll-free numbers through various media

to maximize visibility to potential *Ms. L.* class members and will provide the Court with further updates on its efforts.

Finally, also as previously reported, the Steering Committee is in communication with Seneca Family of Agencies ("Seneca"), a non-profit organization that has contracted with the Department of Health and Human Services to connect certain *Ms. L.* class members in the United States with mental health providers, pursuant to a preliminary injunction in *Ms. J.P., et al.* v. *William P. Barr, et al.* (2:18-cv-06081-JAK-SK, C.D. Cal.).  The Steering Committee is hopeful that this work will enable the Steering Committee to obtain contact information for currently unreachable parents in the *Ms. L.* class, and to locate such parents, particularly those believed to be within the United States and thus within the scope of Seneca's work.  The Steering Committee intends to use this information to conduct further outreach to class members to ascertain their preferences with respect to reunification.

C. **Information Sharing Regarding Expanded Class Progress**

As discussed at the May 29 Status Conference, the government previously requested from the Steering Committee certain additional information regarding the Steering Committee's efforts to contact members of the expanded *Ms. L* class and regarding the relief that may be sought by such class members. On June 26, the parties met and conferred telephonically to discuss the additional information request and the parties' concerns, and agreed upon the content of the additional information to be shared.

On July 5, the Steering Committee delivered to the government a spreadsheet which the Steering Committee believes is consistent with the parties' June 26 meet and confer. The spreadsheet contains a list of the parents of 1,134 children of potential class members in the expanded class, along with the names of the parents

of the 64 children of removed potential original class members who were "re-categorized" as such in the government's portion of the December 12, 2018 Joint Status Report as part of the government's final accounting of the original class, and to whom the Steering Committee commenced outreach in February 2019 upon the receipt of contact information from the government. For each parent listed in the spreadsheet, the Steering Committee identified whether the Steering Committee (i) has successfully reached the parent and/or the parent's attorney, (ii) has determined that the parent desires and, in the Steering Committee's view, should be eligible to return to the United States under the framework set forth in the Court's September 4, 2019 order and about whom the Steering Committee is requesting to have further discussions with the government to determine how to proceed, (iii) has determined, for each parent not in the second category, whether the Steering Committee is still working to screen the parent for potential return to the United States, but where such screening efforts have been delayed, in part due to the difficulty of conducting on-the-ground interviews during the pendency of the COVID-19 pandemic, and (iv) has determined that the parent seeks to have their child returned to their country of origin.

As the Steering Committee has conveyed to the government, other than parents in the second category—whose cases the Steering Committee intends to discuss further with the government, there are no parents on whose behalf the Steering Committee is seeking action by the government at this time. For parents with whom the Steering Committee has not yet made contact, and for those parents in the third group whom the Steering Committee is in the process of screening, the Steering Committee does not yet have a basis to determine whether any government assistance will be necessary. As part of the Steering Committee's efforts to share this information with the government, the Steering Committee agreed that should any parents indicate to the Steering Committee that they are seeking relief of a type

that may necessitate action by the government, the Steering Committee will discuss such cases with the government in good faith before bringing any such cases to the attention of the Court.

### D. Information Sharing Between the Government and Plaintiffs and Child Advocates

Plaintiffs and child advocates have conferred and internally summarized issues that they believe have been resolved with the government, and the few remaining issues that are not resolved; they expect to submit this summary shortly to the government.

On the separate issue of how government agencies share information among themselves, Plaintiffs await the government's disclosure to the Court and Plaintiffs of further details about the officials overseeing development of the unified immigration portal.

### E. DNA Testing

The parties continue to work to resolve this issue. Plaintiffs and the government have communicated since the last status conference and Plaintiffs anticipate receiving responses soon from the government to Plaintiffs' questions from the initial meet-and-confer on this issue.

### III. *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief

under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: July 8, 2020                    Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

ETHAN P. DAVIS
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*