```
                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA


          BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

     _____
                                            )
     MS. L., ET AL.,                        )
                                            )   CASE NO. 18CV0428-DMS
               PETITIONERS-PLAINTIFFS,      )
                                            )
     VS.                                    )
                                            )
                                            )
                                            )
                                            )
     U.S. IMMIGRATION AND CUSTOMS           )   SAN DIEGO, CALIFORNIA
     ENFORCEMENT ("ICE"), ET AL.,           )   FRIDAY, JULY 10, 2020
                                            )      11:30 A.M. CALENDAR
               RESPONDENTS-DEFENDANTS.      )
     ---------------------------------------

                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

                    TELEPHONIC STATUS CONFERENCE




     REPORTED BY:                    LEE ANN PENCE,
                                     OFFICIAL COURT REPORTER
                                     UNITED STATES COURTHOUSE
                                     333 WEST BROADWAY, ROOM 1393
                                     SAN DIEGO, CALIFORNIA 92101
```

```
FOR PLAINTIFF:              LEE GELERNT, ESQ.
                            DANIEL GALINDO, ESQ.
                            ACLU IMMIGRANT RIGHTS PROJECT
                            125 BROAD STREET 18TH FLOOR
                            NEW YORK, NEW YORK 10004


FOR DEFENDANT:              SARAH B. FABIAN, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
                            OFFICE OF IMMIGRATION LITIGATION
                            P.O. BOX 868
                            BEN FRANKLIN STATION
                            WASHINGTON, DC 20044



 ALSO APPEARING:            STEVEN HERZOG, ESQ.
                            CATHERINE WEISS, ESQ.
                            DAVID MARSHALL, ESQ.
```

```
 1       SAN DIEGO, CALIFORNIA - FRIDAY, JULY 10, 2020 - 11:30 A.M.
 2                              *  *  *
 3            THE CLERK:  NO. 8 ON CALENDAR, CASE NO. 18CV0428,
 4   MS. L. VERSUS U.S. IMMIGRATION CUSTOMS ENFORCEMENT; ON FOR
 5   STATUS CONFERENCE.
 6            THE COURT:  GOOD MORNING AND GOOD AFTERNOON,
 7   COUNSEL.
 8            I HAVE AN INDICATION OF THE FOLLOWING ATTORNEYS ON
 9   THE LINE.  FOR MS. L., LEE GELERNT, DANIEL GALINDO.  FOR THE
10   GOVERNMENT ON ALL MATTERS MS. SARAH FABIAN.  FOR THE STEERING
11   COMMITTEE STEVEN HERZOG, DAVID MARSHALL.  FOR OBJECTORS
12   CATHERINE WEISS.
13            I DO NOT SHOW MR. BEST FOR THE MMM GROUP, AND I
14   ASSUME THAT IS BECAUSE EVERYTHING IS IN ORDER ON THAT CASE.
15            I HAVE REVIEWED THE JOINT STATUS REPORT, AND LET'S
16   START FIRST WITH THE ENLARGED CLASS.
17            AND I APPRECIATE THE UPDATE HERE, MR. HERZOG.
18   PERHAPS YOU CAN JUST GIVE US A QUICK OVERVIEW, AND I HAVE A
19   FEW FOLLOW-UP QUESTIONS.
20            MR. HERZOG:  SURE.  THANK YOU, YOUR HONOR.
21            I THINK, IN MANY WAYS THE STATUS -- YOU KNOW, THE
22   STATUS IS PRETTY MUCH -- IS VERY SIMILAR TO WHERE WE WERE AT
23   THE LAST STATUS CONFERENCE.  AND WE HAVE NOT BEEN ABLE TO DO,
24   AS YOU KNOW, ON-THE-GROUND EFFORTS IN CENTRAL AMERICA TO TRY
25   TO FIND PARENTS BECAUSE OF THE COVID CRISIS.  SO THE NUMBER OF
```

1  PARENTS WE HAVE BEEN IN TOUCH WITH IS ESSENTIALLY THE SAME.  I
2  THINK WE HAVE REACHED TWO ADDITIONAL PARENTS OR BEEN IN TOUCH
3  WITH TWO ADDITIONAL PARENTS.  ONE I THINK WE HAVE BEEN IN
4  TOUCH WITH BY PHONE.  ONE AN ATTORNEY FOR A PARENT ACTUALLY
5  REACHED OUT FOR US -- TO US, SO WE HAVE BEEN IN TOUCH WITH
6  THAT PERSON'S ATTORNEY.
7          SO, YOU KNOW, WE ARE CONTINUING TO RECEIVE PHONE
8  CALLS ON OUR TOLL FREE NUMBERS.  BUT, YOU KNOW, THE PACE AT
9  WHICH THINGS HAVE BEEN GOING, IT HAS SLOWED, AND WE LOOK
10 FORWARD, HOPEFULLY, TO RESUMING THE ON-THE-GROUND EFFORTS.
11 BUT I CAN'T GIVE YOU AN ESTIMATE AS TO WHEN THAT WILL COMMENCE
12 AT THIS POINT IN TIME.
13         WE HAVE ALSO BEEN ENGAGED IN DISCUSSIONS WITH THE
14 GOVERNMENT IN TERMS TO PROVIDE ADDITIONAL DATA.  AND ABOUT A
15 WEEK AGO -- OR ACTUALLY A LITTLE BIT LESS THAN A WEEK AGO WE
16 SUPPLIED THE GOVERNMENT WITH A DATASET CORRESPONDING TO THE
17 EXPANDED CLASS.  THE DATASET INDICATES WHETHER WE HAVE BEEN IN
18 TOUCH WITH THE PARENT, WHETHER THE PARENT HAS REQUESTED THAT
19 THEIR CHILD BE RETURNED TO THE COUNTRY OF ORIGIN.  WHETHER THE
20 PARENT IS A PARENT THAT HAS BEEN SCREENED BY OUR COMMITTEE AND
21 IS -- WHEN WE SEE POSSIBLY MOVING FORWARD WITH AN APPLICATION
22 TO RETURN, AND WHETHER THE PARENT IS A PARENT WE ARE STILL IN
23 THE PROCESS OF SCREENING.
24         AND FOR -- SO WE HAVE A NUMBER OF PARENTS IN EACH OF
25 THOSE CATEGORIES, AND WE HAVE IDENTIFIED THEM IN OUR DATASET

1  TO THE GOVERNMENT.
2           **THE COURT:** OKAY.  THANK YOU.
3           AND I SEE, ON THE REUNIFICATION PROCESS, THE NUMBERS
4  HERE, SO I WANT TO RUN THROUGH THOSE AND SEE IF I HAVE GOT
5  THIS CORRECT.
6           YOU ARE INDICATING, MR. HERZOG, AT PAGE 11, THAT
7  THERE ARE -- 594 CHILDREN REMAIN.  AND THE STEERING COMMITTEE
8  HAS NOT YET REACHED THE SEPARATED PARENT OF THOSE 594.
9           AND THEN YOU ESTIMATE THAT APPROXIMATELY TWO-THIRDS,
10 OR 69 PERCENT, OF THOSE PARENTS YOU BELIEVE ARE IN THEIR
11 RESPECTIVE COUNTRIES OF ORIGIN.  SO THAT WOULD BE
12 APPROXIMATELY 409 PARENTS REMOVED WITHOUT THEIR CHILDREN?
13          **MR. HERZOG:** YES, THAT IS CORRECT.  APPROXIMATELY,
14 BUT YES.
15          **THE COURT:** AND OF THAT NUMBER -- MOVING TO PAGE
16 12 -- IT APPEARS JUSTICE IN MOTION HAD IDENTIFIED, OR WAS
17 TRYING TO TRACK DOWN, 281, AND THEY HAD SUCCESSFULLY REACHED
18 134 BEFORE THE PANDEMIC.
19          SO THAT 134 -- THAT WOULD MEAN, THEN, THAT OF THE
20 409, APPROXIMATELY, 134 PARENTS HAVE BEEN FOUND.
21          **MR. HERZOG:** I THINK THAT IS -- YES, I THINK THAT IS
22 CORRECT.  THERE IS 135, I THINK.  VERY MINOR CORRECTION.
23          **THE COURT:** YES, YES.  THANK YOU.  135.  YES.  OKAY.
24          AND JUSTICE IN MOTION, OF COURSE, IS ESSENTIALLY
25 IDLED AT THIS POINT IN LIGHT OF THE PANDEMIC.

1          DO WE HAVE ANY UNDERSTANDING HOW THEY ARE DOING IN
2  THOSE COUNTRIES, IN HONDURAS, GUATEMALA, AND EL SALVADOR, WITH
3  THIS PANDEMIC?
4          **MR. HERZOG:**  I KNOW WE HAVE TALKED WITH JUSTICE IN
5  MOTION ABOUT THAT.  AND, UNFORTUNATELY, THE UNDERSTANDING IS
6  THAT THE PANDEMIC IS -- INSTEAD OF, YOU KNOW, BECOMING LESS
7  SEVERE IT HAS BEEN -- MORE PEOPLE HAVE BEEN GETTING SICK AND
8  MORE RESTRICTIONS ARE IN PLACE.  SO IT IS UNFORTUNATE, BUT I
9  DON'T THINK THE TREND, AT LEAST AT THIS POINT IN TIME, IS A
10 GOOD ONE.  AND IT IS TRUE OF MANY PARTS OF THE UNITED STATES
11 AS WELL.
12         **THE COURT:**  OKAY.  SO THE ABILITY OF THE STEERING
13 COMMITTEE AND JUSTICE IN MOTION TO MAKE REAL PROGRESS IS
14 OBVIOUSLY VERY MUCH STYMIED BY THIS PANDEMIC.  AND WHEN THAT
15 CLOUD IS GOING TO LIFT IS THE BIG UNKNOWN.
16         **MR. HERZOG:**  YES.  I THINK WE ARE ALL HOPING IT
17 LIFTS AS SOON AS POSSIBLE FOR ALL OF US, BUT I CAN'T ANSWER
18 THAT QUESTION.
19         **THE COURT:**  RIGHT.  YES.
20         ON THE SPREADSHEET AND THE DATA POINTS THERE, THAT
21 LOOKS LIKE THINGS ARE WORKING THROUGH VERY NICELY.  AS I READ
22 THE REPORT, IT APPEARS THERE HAS BEEN A LOT OF GIVE AND TAKE,
23 MEET AND CONFERS.
24         MS. FABIAN, IS THE GOVERNMENT PRESENTLY SATISFIED
25 WITH THE INFORMATION THAT IS BEING PROVIDED?

```
 1            MS. FABIAN:  YOUR HONOR, I THOUGHT THE CONVERSATION
 2   THAT WE HAD WAS VERY PRODUCTIVE, AND I DO THINK THAT WE HAVE
 3   BEEN PROVIDED WITH A LOT OF ADDITIONAL INFORMATION THAT I
 4   THINK WILL AT LEAST MOVE US TOWARDS -- AWAY FROM OUR CONCERNS
 5   ABOUT BEING SURPRISED AND, YOU KNOW, KNOWING WHAT'S COMING
 6   NEXT.
 7            WE ARE -- MY CLIENTS ARE LOOKING AT THE DATASET THAT
 8   WAS SENT, AS MR. HERZOG SAID, ABOUT A WEEK AGO.  AND I HAVE
 9   ASKED THEM TO CIRCLE BACK WITH ME NEXT WEEK AND GIVE ME SORT
10   OF AN UPDATE ON WHERE WE THINK WE ARE.  AND I SUSPECT THAT WE
11   WOULD REACH THAT, AND MEET AND CONFER AGAIN AT THAT POINT.
12            THE COURT:  THANK YOU.
13            AND THE QUESTION HERE OF MR. HERZOG.
14            AT PAGE 15 LINE 7 THERE IS A REFERENCE TO, AT ROMAN
15   NUMERAL II, THESE ARE PARENTS WHO MAY BE ELIGIBLE FOR RETURN
16   TO THE UNITED STATES UNDER THE COURT'S PRIOR FRAMEWORK FROM
17   THE SEPTEMBER 4, 2019 ORDER.  THAT'S A MATTER THAT MAY BE TEED
18   UP AT A LATER TIME AND IS SUBJECT TO FURTHER DISCUSSION WITH
19   THE GOVERNMENT, ACCORDING TO THE JSR.
20            HOW MANY PARENTS ARE WE LOOKING AT IN THIS CATEGORY?
21   DO YOU KNOW?
22            MR. HERZOG:  I DON'T HAVE THE EXACT NUMBER.
23   ACTUALLY MR. MARSHALL, ON THE PHONE WITH ME, MAY KNOW THE
24   EXACT NUMBER.  I BELIEVE IT IS IN THE 20'S.
25            DAVE?
```

```
 1            MR. MARSHALL:  YES.  THANKS, STEVE.
 2            YOUR HONOR, I AM JUST TAKING A LOOK AT THE
 3   SPREADSHEET THAT WE SENT TO THE GOVERNMENT.  IF YOU ALLOW ME
 4   ONE MOMENT TO CONFIRM.
 5            THE COURT:  YES.
 6                 (PAUSE IN PROCEEDINGS)
 7            MR. MARSHALL:  WE HAD SET 21 IN THAT CATEGORY, WITH
 8   ADDITIONAL PARENTS OF APPROXIMATELY 25 THAT ARE STILL PENDING
 9   SCREENING AND MAY ULTIMATELY BE CAPTURED IN THAT CATEGORY.
10            THE COURT:  OKAY.  VERY GOOD.  THANK YOU.
11            AND THEN MOVING ON TO PAGE 16, MS. WEISS, AND THE
12   INFORMATION BEING SHARED HERE, IT LOOKS LIKE THAT IS IN GOOD
13   ORDER.  AGAIN, THE PARTIES HAVE MET AND CONFERRED.  AND IT
14   APPEARS THERE IS A FEW REMAINING ISSUES SUBJECT TO DISCUSSION.
15            BUT THAT IS PROCEEDING NICELY.  AM I CORRECT?
16            MS. WEISS:  THIS IS CATHERINE WEISS, YOUR HONOR.
17            YES, I THINK WE ARE -- WE ARE CERTAINLY WORKING
18   TOWARD RESOLVING MANY ISSUES AND IDENTIFYING THE ONES ON WHICH
19   THERE MAY STILL BE A DISAGREEMENT THAT WE WOULD NEED TO BRING
20   TO THE COURT.
21            THE COURT:  ALL RIGHT.  EXCELLENT.
22            SIMILARLY ON DNA TESTING, THAT APPEARS TO BE WORKING
23   THROUGH AS WELL.  THE NUMBERS, OF COURSE, WHERE DNA TESTING
24   WOULD BE REQUIRED ARE VERY LOW AT THIS POINT.  THE GOVERNMENT
25   HAS INDICATED JUST ONE CASE, AND DNA TESTING WAS DONE PRIOR TO
```

1  A DECISION BEING MADE.  SO I THINK HERE WE WILL JUST SIMPLY
2  LEAVE THAT IN THE MEET AND CONFER STATUS BETWEEN THE PARTIES.
3         THEN THAT TAKES US TO THE LAST REMAINING ISSUE I
4  HAD, WHICH IS THE INFORMATION SHARING BETWEEN AND AMONG THE
5  EXECUTIVE AGENCIES.
6         AND THANK YOU, MS. FABIAN, FOR SETTING OUT IN DETAIL
7  WHERE WE ARE WITH RESPECT TO CBP AND THE OFFICE OF INFORMATION
8  TECHNOLOGY.
9         THIS LOOKS VERY PROMISING TO ME.  IT LOOKS LIKE WHAT
10 IS IN PLACE IN THE COORDINATION WITH CBP AND ITS OIT GROUP
11 WITH THE OTHER EXECUTIVE AGENCIES -- USCIS, ICE, HHS, AND
12 DOJ -- IT SEEMS TO ME, BASED ON THIS INFORMATION, THAT ALL OF
13 THE INFORMATION AND DATA SHARING BETWEEN AND AMONG THE
14 AGENCIES IS BEING ADDRESSED.
15        DO YOU AGREE, MR. GELERNT?  OR IS THERE -- ARE THERE
16 CONCERNS THAT YOU HAVE, OR ARE PLAINTIFFS MORE IN A WAIT AND
17 SEE WHAT THE DEFENDANTS PRODUCE BY WAY OF, I GUESS AT SOME
18 POINT IN TIME, HOPEFULLY SOONER RATHER THAN LATER, A DETAILED
19 SETTING OUT OF HOW THESE AGENCIES ARE COMMUNICATING AND WHAT
20 SPECIFICALLY IS BEING COMMUNICATED?
21    **MR. GELERNT:**  YOUR HONOR, WITH THE COURT'S
22 PERMISSION, MR. GALINDO --
23    **THE COURT:**  YES.
24    **MR. GALINDO:**  THIS IS MR. GALINDO.  MR. GELERNT'S
25 PHONE IS CUTTING OUT.  THIS IS DANIEL GALINDO, YOUR HONOR.

|   |   |
|---|---|
| 1 | **THE COURT:** YES. |
| 2 | **MR. GALINDO:** YOUR HONOR, I THINK THAT IS RIGHT THAT |
| 3 | IT IS A LITTLE BIT OF A WAIT-AND-SEE APPROACH.  I THINK, YOU |
| 4 | KNOW, NOT YET ADDRESSED BUT, YOU KNOW, BUT PERHAPS IN THE |
| 5 | FUTURE ARE SOME OF THE ISSUES THAT THE VARIOUS INTERNAL |
| 6 | GOVERNMENTAL REPORTS HAVE RAISED, INCLUDING SORT OF AN ABSENCE |
| 7 | OF FORMAL AGREEMENTS AS TO THE SUBSTANTIVE CONTENT OF WHAT |
| 8 | MUST BE SHARED. |
| 9 | BUT I THINK THE GOVERNMENT'S SUBMISSION SEEMS TO |
| 10 | IDENTIFY A PARTICULAR OFFICIAL, I UNDERSTAND WOULD BE PHILLIP |
| 11 | LANDFRIED, WHO IS HEADING UP THAT EFFORT.  THAT WOULD SEEM TO |
| 12 | PROVIDE THE APPROPRIATE PERSON THAT THE COURT SIGNALED COULD |
| 13 | ANSWER QUESTIONS AND FIELD QUESTIONS ABOUT THE PROGRESS THAT |
| 14 | THE GOVERNMENT IS MAKING. |
| 15 | **THE COURT:** MR. GALINDO, DID YOU REFERENCE A |
| 16 | SPECIFIC PERSON?  IS THERE SOMEONE YOU ARE AWARE OF WITHIN THE |
| 17 | OIT IN CBP? |
| 18 | **MR. GALINDO:** SO, YOUR HONOR, I AM GOING OFF THE |
| 19 | GOVERNMENT'S SUBMISSION.  IT SAYS THAT THE PERSON TO WHOM THE |
| 20 | UNIFIED IMMIGRATION PORTAL EFFORT, THAT THOSE EFFORTS REPORT |
| 21 | TO -- IT DESCRIBES HIM BY TITLE OF THE ASSISTANT COMMISSIONER |
| 22 | AT CBP FOR THE OFFICE OF INFORMATION AND TECHNOLOGY. |
| 23 | SO I AM GOING ONLY BASED ON THAT AND A SIMPLE |
| 24 | SEARCH, IT SEEMS TO ME THAT THAT IS THE PERSON OCCUPYING THAT |
| 25 | POSITION IS MR. LANDFRIED. |

```
 1              I WOULD JUST CONFIRM WITH THE GOVERNMENT, BUT THAT
 2    IS MY UNDERSTANDING.
 3              THE COURT:  OKAY.  I SEE.  AND THAT'S AT LINE 24,
 4    PAGE 7.
 5              MS. FABIAN, IS THAT THE PERSON WHO IS IN CHARGE OF
 6    THIS?
 7              MS. FABIAN:  YOUR HONOR, I CAN'T CONFIRM THE NAME.
 8    I DIDN'T SEE THE SAME -- THE RESEARCH THERE THAT MR. GALINDO
 9    DID.
10              I WOULD SAY THE WAY IT IS DESCRIBED TO ME THAT --
11    THAT HE WOULD REPORT TO THAT INDIVIDUAL, SO I DO BELIEVE THAT
12    MEANS SORT OF SOME ULTIMATE RESPONSIBILITY RESTS IN THAT
13    POSITION.
14              THE TEAM ITSELF, I THINK, IS -- YOU KNOW, THE DAY TO
15    DAY, THAT IS NOT WHO WOULD BE TAKING, YOU KNOW, PRIMARY
16    RESPONSIBILITY FOR THE DAY TO DAY.  THE NAMES I HAVE FOR THE
17    TEAM ARE SOME OF THE FOLKS THAT WE HAVE SEEN BEFORE WHO HAVE
18    BEEN WORKING ON THE DAY TO DAY OF ANY INFORMATION SHARING, AND
19    I THINK THERE ARE SEVERAL PEOPLE WHO ARE TAKING RESPONSIBILITY
20    FOR THE DAY TO DAY.  BUT, YOU KNOW, AS FAR AS -- AS WE HAVE
21    INDICATED THAT IS THE PERSON TO WHOM THE TEAM REPORTS
22    ULTIMATELY.  I WILL -- I CAN CONFIRM THAT.  BUT --
23              THE COURT:  ALL RIGHT.
24              MS. FABIAN:  I WOULD -- WITH RESPECT TO MR.
25    GALINDO'S CHECKING THE INFORMATION, I HAVE NO REASON TO
```

DISPUTE THAT.

**THE COURT:** OKAY.

AND IT APPEARS THAT CBP IS BEING FUNDED THROUGH CONGRESS FOR THIS VERY EFFORT. SO IT SEEMS TO ME THAT WITH THIS FUNDING, AND WITH THE ABILITY OF ALL OF THESE VARIOUS AGENCIES TO WORK REMOTELY ON A PROJECT LIKE THIS, THAT THEY COULD MOVE THE PROJECT ALONG EXPEDITIOUSLY. AND BE IN A POSITION TO REPORT TO ALL, INCLUDING THE COURT, WHAT THEY PROPOSE, WHAT THIS LOOKS LIKE.

AND, AS MR. GALINDO POINTS OUT, THIS WILL ASSUME MOU'S OR MOA'S FROM THE VARIOUS EXECUTIVE AGENCIES.

AND THEN I WOULD ASSUME, AT THE END OF THE DAY, THE INFORMATION IS GOING TO INCLUDE, AT A MINIMUM, THE IMPORTANT DATA POINTS THAT WE HAVE BEEN LOOKING TO IN THIS LITIGATION. SO, FOR EXAMPLE, IF A PARENT IS IN CUSTODY WITH DOJ AND APPEARS IN COURT, THAT SOMEONE, EITHER GOVERNMENT COUNSEL OR SOMEONE WITHIN THE DOJ FACILITY WHERE THE PARENT IS HOUSED, WOULD HAVE THE INFORMATION AS TO WHERE THE PARENT'S CHILD IS SO THAT THEY CAN BE IN COMMUNICATION. AND, SIMILARLY, ONCE THE PARENT HAS SERVED HIS OR HER TIME IN CUSTODY AND IS MOVED OVER TO ICE CIVIL DETENTION THAT, GIVEN THE SHARING OF INFORMATION, THE RESPECTIVE AGENCIES -- ICE AND HHS, ORR -- WOULD BE ABLE TO START THE PROCESS TO REUNIFY THE PARENT AND CHILD, ASSUMING THAT REUNIFICATION IS APPROPRIATE UNDER THE COURT'S STANDARDS.

1           SO IT SEEMS TO ME THIS COMMITTEE, THROUGH CBP, IS IN
2  THE PROCESS OF BEING ABLE TO ACCOMPLISH THAT.
3           DO YOU AGREE, MS. FABIAN?
4           **MS. FABIAN:**  YES, YOUR HONOR, I DO AGREE.
5           AND I THINK THAT WE HAVE INVOLVED, YOU KNOW, SOME OF
6  THE FOLKS WHO HAVE BEEN INVOLVED IN OUR PROCESSES AND OUR
7  DISCUSSIONS IN THIS LITIGATION FROM THE BEGINNING SO THEY ARE
8  FAMILIAR WITH THOSE ISSUES AND CERTAINLY HAVE THEM IN MIND.
9           I CAN'T SPEAK TO THE TIMEFRAME AS FAR AS, YOU KNOW,
10 THE VARIOUS CONTRACTING AND THE VARIOUS PIECES GO.  YOU KNOW,
11 I CAN CERTAINLY FIND SOME MORE INFORMATION ABOUT THAT IF THERE
12 IS ANY EXISTING TIME FRAMES THAT WE CAN REPORT BACK TO THE
13 COURT.  I CAN FIND THAT OUT FOR THE NEXT REPORT.
14          I THINK THAT, YOU KNOW, WE USED SOME FANCY TERMS
15 HERE IN THE DESCRIPTIONS, BUT I DO THINK ONE OF THE KEY
16 FEATURES DOES ADDRESS ONE OF THE ISSUES THAT YOU MENTION,
17 WHICH IS THE ABILITY FOR FOLKS FROM ONE AGENCY TO HAVE ACCESS
18 TO INFORMATION FROM THE OTHER AGENCIES.  AND I THINK THAT IS
19 ONE OF THE SORT OF KEY FEATURES THAT ADDRESSES A MAJOR CONCERN
20 THAT HAS BEEN RAISED BEFORE, AND THAT IT SHOULD BE ADDRESSED
21 THROUGH ALLOWING THE MORE GENERALIZED ACCESS.
22          I ALSO KNOW THAT HHS, I THINK IT IS A UAC PATH
23 SYSTEM THAT IS DESCRIBED A LITTLE MORE IN OUR LAST REPORT,
24 THAT IS, YOU KNOW, A SEPARATE SYSTEM THAT IS BEING INTEGRATED
25 IN THIS PROJECT; AND INTEGRATION IS KEY, OF COURSE.  AND IT

```
 1   ALSO SERVES TO REALLY UPGRADE HHS'S INFORMATION SYSTEMS AS
 2   WELL.  SO IT IS SORT OF A DOUBLE BENEFIT THERE, AS WELL.
 3           SO I DO THINK THAT AS A GENERAL MATTER THESE
 4   PROCESSES ARE -- DO RESPOND TO A LOT OF THOSE ISSUES.  AS FAR
 5   AS THE SPECIFICS I CAN'T SAY, BUT I THINK THAT THAT IS
 6   SOMETHING WE CAN CONTINUE TO ADDRESS.
 7           **THE COURT**:  ALL RIGHT.
 8           I WOULD BE INCLINED, FOR THE NEXT STATUS CONFERENCE,
 9   TO HAVE THE ASSISTANT COMMISSIONER OF OIT, OR THE APPROPRIATE
10   PERSON, PROVIDE BY WAY OF DECLARATION TO THE COURT EXACTLY
11   WHAT THE STATUS IS, WHERE THEY ARE GOING, SO THAT WE HAVE SOME
12   REAL ACCOUNTING OF THIS PROCESS AND WHERE IT IS HEADED.  AND
13   THEN PLAINTIFFS CAN HAVE MEANINGFUL INPUT INTO IT AND,
14   IMPORTANTLY, KEEP THIS PROCESS MOVING.
15           IT SEEMS THAT THIS IS SOMETHING THAT CAN BE
16   ACCOMPLISHED SOONER RATHER THAN LATER, AND THIS PANDEMIC OUGHT
17   NOT TO INTERRUPT THAT PROGRESS.  IT SEEMS THAT THE AGENCIES
18   ARE ONLINE, THERE IS A COMMON GOAL HERE, AND NOW IT IS JUST A
19   MATTER OF EXECUTING IT.
20           SO I WOULD BE INCLINED TO HAVE THE APPROPRIATE
21   PERSON, THE ASSISTANT COMMISSIONER, FOR EXAMPLE, REPORT TO
22   YOU.  AND YOU CAN PUT HIS OR HER DECLARATION OR REPORT IN THE
23   JOINT STATUS REPORT SO WE KNOW EXACTLY WHAT'S GOING ON.
24           DO YOU OBJECT?
25           **MS. FABIAN**:  YOUR HONOR, THAT'S FINE.
```

1  I WOULD ASK THAT IT -- THE ORDER BE GENERALIZED
2  ENOUGH SO THAT I CAN IDENTIFY THE FACT PERSON WHO GIVES THE
3  DECLARATION.  AS I SAID, I AM JUST NOT SURE WHO WOULD BE THE
4  BEST PERSON ON THE DAY TO DAY.
5  **THE COURT:**  ALL RIGHT.
6  **MS. FABIAN:**  IF YOU COULD GIVE US A MORE GENERALIZED
7  ORDER I CAN IDENTIFY THE CORRECT PERSON.
8  **THE COURT:**  YES.  OKAY.  THANK YOU.
9  IS THERE ANYTHING ELSE ON THE JOINT STATUS REPORT?
10  THOSE ARE ALL THE QUESTIONS I HAD.
11  **MR. HERZOG:**  YOUR HONOR, THIS IS MR. HERZOG AGAIN.
12  I JUST WANTED TO MAKE SURE WE GOT THESE NUMBERS
13  RIGHT, SO I HAVE GONE BACK AND CHECKED THEM.  AND I WANT TO
14  MAKE A LITTLE CORRECTION HERE.
15  IN TERMS OF THE NUMBERS OF PARENTS IN THE DIFFERENT
16  GROUPS IN THE EXPANDED CLASS, THE NUMBER THAT WE ARE
17  CONSIDERING AS POTENTIAL RETURN APPLICANTS RIGHT NOW IS
18  ACTUALLY 19.
19  **THE COURT:**  OKAY.
20  **MR. HERZOG:**  AND THE NUMBER THAT WE ARE STILL
21  SCREENING FOR POTENTIAL RETURN IS 29.  SO I JUST WANT TO GET
22  THOSE CORRECT FOR THE RECORD.
23  THEN I ALSO JUST WANTED TO MAKE SURE, I AM NOT SURE
24  THAT THIS CAME OUT QUITE CORRECTLY -- AND MAYBE IT DID.  BUT
25  THE 135 PARENTS THAT WE HAVE -- THAT JUSTICE IN MOTION HAS

```
 1   LOCATED IN COUNTRY ARE PART OF THE 436 THAT WE HAVE REACHED.
 2   SO THAT LEAVES, STILL, THE 594 THAT WE ARE STILL TRYING TO
 3   REACH.  I JUST WANTED TO MAKE THAT CLEAR.
 4            THE COURT:  I SEE.  OKAY.  OKAY.
 5            MR. HERZOG:  THAT IS ALL.  THANK YOU VERY MUCH.
 6            THE COURT:  WHAT IS YOUR ESTIMATE OF THE TOTAL
 7   NUMBER, BASED ON THE DATA YOU HAVE THUS FAR, OF PARENTS
 8   REMOVED WITHOUT THEIR CHILD WHO ARE PRESENTLY IN THEIR HOME
 9   COUNTRIES?
10            MR. HERZOG:  IT IS -- GIVE ME JUST ONE SECOND.
11            IT WOULD BE TWO-THIRDS OF THE 594.  SO GET OUT MY
12   CALCULATOR.
13            THE COURT:  THAT MIGHT BE THE 409 NUMBER I
14   MENTIONED.
15            MR. HERZOG:  IT IS AROUND 400.  I JUST GOT 395, BUT
16   IT IS IN THE 400 RANGE.
17            THE COURT:  OKAY.  YES.  WE ARE ALL ON THE SAME PAGE
18   THEN.  THANK YOU.
19            MR. HERZOG:  OKAY.
20            THE COURT:  I WOULD PROPOSE A SIMILAR SCHEDULE,
21   ABOUT SIX WEEKS OUT.  SO I WOULD PROPOSE OUR NEXT CONFERENCE,
22   TELEPHONIC CONFERENCE, ON FRIDAY, AUGUST 21.  THAT IS SIX
23   WEEKS.
24            LET ME INQUIRE OF MY COURTROOM DEPUTY.
25            IS 1:00 O'CLOCK GOOD, OR SHOULD WE SET IT EARLIER?
```

```
 1              THE CLERK:  CAN WE STICK WITH THE 11:30?
 2              THE COURT:  OKAY.  11:30, I THINK, WORKS BEST.
 3         WE ARE STILL, IN OUR DISTRICT, DOING A LOT OF
 4   MATTERS, ALMOST ALL MATTERS, REMOTELY, INCLUDING CRIMINAL
 5   CASES, SO THAT HAS IMPACTED OUR SCHEDULING AND HOW WE
 6   CALENDAR.
 7         SO LET'S STAY WITH AUGUST 21 AT 11:30.
 8         AND THE JOINT STATUS REPORT BY WEDNESDAY, AUGUST 19.
 9   AND I WILL ISSUE A FOLLOW-UP ORDER SETTING THAT OUT.
10         ANY OTHER FINAL THOUGHTS OR COMMENT BEFORE WE
11   RECESS?
12              MR. GELERNT:  THIS IS MR. GELERNT.  NOTHING FROM MS.
13   L., YOUR HONOR.
14              MS. FABIAN:  THIS IS SARAH FABIAN.  NOTHING FROM THE
15   GOVERNMENT, YOUR HONOR.
16              THE COURT:  THANK YOU VERY MUCH.  HAVE A NICE
17   WEEKEND.  I WILL LOOK FORWARD TO SPEAKING WITH COUNSEL AGAIN
18   ON AUGUST 21.  THANK YOU.
19              MS. FABIAN:  THANK YOU.
20              MR. GELERNT:  THANK YOU.
21
22                            *  *  *
23         I CERTIFY THAT THE FOREGOING IS A CORRECT
           TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
24         IN THE ABOVE-ENTITLED MATTER.
25         S/LEEANN PENCE                      7/13/2020
           LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
```