UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

| | |
|---|---|
| _____ ) | |
| MS. L., ET AL., ) | |
| ) | CASE NO. 18CV0428-DMS |
| PETITIONERS-PLAINTIFFS, ) | |
| ) | |
| VS. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | SAN DIEGO, CALIFORNIA |
| ENFORCEMENT ("ICE"), ET AL., ) | FRIDAY, AUGUST 21, 2020 |
| ) | 11:00 A.M. CALENDAR |
| RESPONDENTS-DEFENDANTS. ) | |
| ------------------------------------ | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**TELEPHONIC STATUS CONFERENCE**

REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:              DANIEL GALINDO, ESQ.
                           STEPHEN KANG, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044



 ALSO APPEARING:           ROBERT COSTELLO, CBP OIT
                           EMILY BORK
                           HALEY COSTELLO-ESSIG
                           SIRINE SHEBAY
                           STEVEN HERZOG
                           CATHERINE WEISS, ESQ.
                           DAVID MARSHALL
```

1    SAN DIEGO, CALIFORNIA — FRIDAY, AUGUST 21, 2020 — 11:00 A.M.

2                              *   *   *

3              THE CLERK:  NO. 9 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    A STATUS CONFERENCE.

6              THE COURT:  GOOD MORNING, COUNSEL.

7         I SHOW THE FOLLOWING APPEARANCES:  FOR THE

8    GOVERNMENT, MS. SARAH FABIAN; FOR MS. L. PLAINTIFFS, STEPHEN

9    KANG, DANIEL GALINDO; FOR DORA PLAINTIFFS, SIRENE SHEBAYA,

10   EMILY BORK; FOR MMM PLAINTIFFS, HALEY COSTELLO-ESSIG.  I HAVE

11   MR. STEVEN HERZOG AND DAVID MARSHALL FOR THE STEERING

12   COMMITTEE; CATHERINE WEISS FOR THE OBJECTORS; AND MR. ROBERT

13   COSTELLO FOR CBP OIT.

14        THANK YOU, AND GOOD MORNING, GOOD AFTERNOON TO ALL.

15        I RECEIVED THE JOINT REPORT.  LET'S START BY GOING

16   THROUGH THAT.

17        THE FIRST AREA I HAVE DEALS WITH THE EXPANDED CLASS

18   AND THE MEET AND CONFER THAT IS GOING ON BETWEEN THE PARTIES.

19   AND IT SEEMS THAT THAT IS WORKING ITS WAY THROUGH, AND THINGS

20   ARE WORKING OUT.

21        JUST FOR THE COURT'S EDIFICATION, WHAT'S GOING ON

22   HERE, WHAT ARE THE ISSUES THAT ARE BEING DISCUSSED?

23             MS. FABIAN:  YOUR HONOR, THIS IS SARAH FABIAN FOR

24   THE GOVERNMENT.

25        THE PLAINTIFFS HAVE LET US KNOW A FEW INDIVIDUALS


                         AUGUST 21, 2020

1    WHO THEY MAY REQUEST FURTHER ACTION FROM THE GOVERNMENT.   I
2    THINK -- THEY SENT US SOME INFORMATION AND WE ARE TAKING A
3    LOOK AT IT.

4              I THINK WE WILL WANT TO DISCUSS FURTHER WITH THEM
5    WHAT THEIR REQUESTS ARE AND WANT SOME MORE INFORMATION FROM
6    THEM TO SEE IF THAT IS SOMETHING THAT WOULD RESOLVE THROUGH
7    DISCUSSIONS OR SOMETHING THAT WOULD REQUIRE MOTIONS AND
8    INVOLVEMENT OF THE COURT.

9              **THE COURT:**  DO THOSE MATTERS RELATE TO WHO IS
10   INCLUDED WITHIN THE CLASS, THOSE KINDS OF ISSUES?

11             **MS. FABIAN:**  I DON'T BELIEVE THAT IS AT ISSUE RIGHT
12   NOW.  I THINK THAT THE QUESTION IS WHETHER ANY RELIEF IS
13   REQUIRED FROM THE GOVERNMENT WITH REGARD TO THESE INDIVIDUALS.

14             I DEFER TO MR. HERZOG, IF HE THINKS THERE ARE OTHER
15   ISSUES.

16             **THE COURT:**  OKAY.

17             **MR. HERZOG:**  THIS IS MR. HERZOG.

18             **THE COURT:**  YES.

19             **MR. HERZOG:**  I CAN JUMP IN.  SORRY, I DON'T MEAN TO
20   JUMP IN AHEAD OF YOU, YOUR HONOR.

21             **THE COURT:**  GO AHEAD MR. HERZOG.

22             **MR. HERZOG:**  I THINK THE ISSUE IS THAT WE HAVE A
23   NUMBER OF PARENTS WHO WE BELIEVE MAY BE ENTITLED TO RETURN
24   UNDER THE RUBRIC THAT THE COURT ESTABLISHED IN ITS PREVIOUS
25   ORDER.  AND, YOU KNOW, WE ARE RAISING THOSE ISSUES WITH THE

AUGUST 21, 2020

1    GOVERNMENT AND FIGURING OUT A PROCESS BY WHICH TO DETERMINE

2    WHAT THE GOVERNMENT'S APPROACH WILL BE OR RESPONSE WILL BE IN

3    RESPONSE TO THOSE REQUESTS.

4              AND WE ARE STILL CONSIDERING -- I SHOULD ADD THAT WE

5    ARE STILL EVALUATING PARENTS WHO MAY MEET THAT CRITERIA AND WE

6    WILL LIKELY BE SUPPLEMENTING THAT LIST, THE LIST THAT WE

7    PROVIDED TO THE GOVERNMENT.  AND WE HAVE INDICATED THAT, THAT

8    THERE ARE A NUMBER OF PARENTS STILL UNDER CONSIDERATION.

9         **THE COURT:**  SO THESE ARE PARENTS WHO ARE SOMEWHERE

10   IN CENTRAL AMERICA THAT YOU WOULD BE SEEKING TO HAVE RETURNED

11   TO THE UNITED STATES FOR REASONS SIMILAR TO WHAT THE COURT

12   ORDERED SEVERAL MONTHS AGO.

13        **MR. HERZOG:**  PRECISELY.

14        **THE COURT:**  OKAY.  THANK YOU.  I JUST WANTED TO

15   UNDERSTAND WHAT WAS GOING ON THERE, SO THANK YOU FOR THAT

16   INFORMATION.

17             ON THE PROCESSES AND PROCEDURES BEING PUT IN PLACE,

18   WE WILL COME BACK TO THAT LAST THROUGH MR. COSTELLO.

19             LET'S GO ON T DNA TESTING.  THAT LOOKS LIKE THOSE

20   ISSUES ARE RESOLVED.

21             MS. FABIAN, WHAT IS IN PLACE ON THE DNA TESTING

22   NOW?

23        **MS. FABIAN:**  YOUR HONOR, RECOGNIZING THAT IT IS NOT

24   CURRENTLY AN ISSUE WITH THE LOW NUMBERS, BUT I THINK WHAT WE

25   HAVE RAISED TO THE COURT BEFORE WAS THAT WE WERE CONCERNED IN

                         AUGUST 21, 2020

1   SOME LOCATIONS THAT WE WOULDN'T BE ABLE TO COMPLY WITH THE

2   COURT'S ORDER.

3           AND CBP WAS ABLE TO TAKE ANOTHER LOOK AT THAT AND

4   PUT IN PLACE PROCESSES AND THEY, AS I HAVE EXPLAINED TO

5   COUNSEL FOR MS. L., THEY NOW BELIEVE THAT IN THOSE LOCATIONS,

6   LOCATIONS WHERE THEY PREVIOUSLY HAD CONCERNS, THEY WILL BE

7   ABLE TO CONDUCT THE DNA TESTING IN A TIMELY MANNER SO THAT

8   THEY WILL BE ABLE TO COMPLY WITH THE ORDER BEFORE NEEDING TO

9   SEPARATE THE FAMILIES.

10          **THE COURT:**  OKAY.  EXCELLENT.

11          SO MR. KANG, MR. GALINDO, YOU AGREE WITH THAT

12  ASSESSMENT?

13          **MR. GALINDO:**  THIS IS MR. GALINDO.

14          YES, YOUR HONOR.  THE SUBSTANCE OF -- NOW THAT THE

15  GOVERNMENT'S OBJECTION IS WITHDRAWN, WE DON'T HAVE ANYTHING

16  FURTHER AT THIS TIME TO PRESENT TO THE COURT.

17          **THE COURT:**  ALL RIGHT.  VERY GOOD.  THANK YOU.

18          ON THE ENLARGED CLASS, IN FOOTNOTE 11 THERE IS

19  REFERENCE TO 422 CHILDREN WHO ARE IDENTIFIED BY THE GOVERNMENT

20  AS EXCLUSIONS.

21          THAT ISSUE IS STILL PRESENT, BUT NOT YET ADDRESSED

22  BY THE PARTIES; IS THAT FAIR?  THAT IS SOMETHING THAT, I

23  GUESS, THE MS. L. PLAINTIFFS WOULD BE FOLLOWING UP WITH AT A

24  LATER TIME?

25          **MR. GALINDO:**  THIS IS MR. GALINDO.


                        AUGUST 21, 2020

1              THAT IS CORRECT, YOUR HONOR.

2              **THE COURT:**  OKAY.  THANK YOU.

3              AND THEN, MOVING ON TO THE RELOCATION AND -- OR THE

4    REUNIFICATION EFFORTS, THAT'S BEEN WELL SET OUT HERE BY MR.

5    HERZOG.

6              I THINK IT IS FAIR TO SAY, IN LOOKING AT THE CURRENT

7    STATUS, IT IS BASICALLY AT A STANDSTILL IN LIGHT OF THE

8    PANDEMIC.  IT APPEARS THAT TWO ADDITIONAL CHILDREN AND THEIR

9    PARENTS WERE CONTACTED.  BUT IN LIGHT OF THE PANDEMIC, THAT'S

10   BEEN THE EXTENT OF THE PROGRESS.

11             IS THAT FAIR, MR. HERZOG?

12             **MR. HERZOG:**  I WOULD SAY YES, BUT I THINK THERE IS A

13   LITTLE BIT OF DAYLIGHT, OR SUNLIGHT, I CAN BRING IN TO THIS,

14   WHICH IS THAT, YOU KNOW, WE HAVE BEEN ORGANIZING TO MOVE

15   FORWARD WITH ON-THE-GROUND EFFORTS IN GUATEMALA, HONDURAS, AND

16   LATIN AMERICA.  AND ALL OF THE PARENTS IN THOSE COUNTRIES THAT

17   WE ARE TRYING TO LOCATE HAVE NOW BEEN ASSIGNED TO JUSTICE IN

18   MOTION DEFENDERS.

19             AND THE DEFENDERS ARE STARTING TO MAKE EFFORTS TO

20   REACH OUT TO PARENTS, SOME BY PHONE OR OTHER -- NOT IN-PERSON

21   WAYS.  BUT IN SOME REGIONS, AS I UNDERSTAND IT, DEFENDERS ARE

22   BEGINNING TO SEE THAT THEY MAY BE ABLE TO GO TO CERTAIN

23   REGIONS, LIMITED REGIONS, WHERE THE PANDEMIC IS NOT REALLY A

24   PROBLEM.

25             SO WE ARE STARTING TO SEE ACTION ON THE GROUND IN


                         AUGUST 21, 2020

8

1   SOME LIMITED AREAS.

2         **THE COURT:**  THAT IS VERY ENCOURAGING.  OKAY.  VERY

3   GOOD.

4         AND IF I AM READING THE REPORT CORRECTLY, LOOKING AT

5   PAGE 8, THE 69 PERCENT, OR TWO-THIRDS, FIGURE; DOES THAT MEAN

6   THAT APPROXIMATELY 408 PARENTS OF THIS INITIAL GROUP OF

7   1,030 ARE IN LATIN AMERICA, EL SALVADOR, GUATEMALA, OR

8   HONDURAS?

9         **MR. HERZOG:**  WHAT I CAN TELL YOU IS THAT ABOUT

10  THREE -- WE HAVE ABOUT 517 PARENTS WHO WE ARE STILL TRYING TO

11  LOCATE.  AND OF THAT GROUP, 357, 69 PERCENT OF THE 517, ARE IN

12  LATIN AMERICA OR OUT OF THE COUNTRY.

13        **THE COURT:**  OKAY.  THANK YOU FOR THAT CLARIFICATION.

14  ALL RIGHT.  OKAY.  THANK YOU.

15        WE WILL JUST HAVE TO KEEP HOPING FOR SOME REMISSION

16  IN THIS PANDEMIC TO ALLOW JUSTICE IN MOTION AND YOUR COMMITTEE

17  AND PLAINTIFFS IN MS. L. TO BE ABLE TO CONTINUE THAT IMPORTANT

18  WORK.

19        MOVING ON TO THE INFORMATION SHARING.  IT APPEARS

20  THAT AS BETWEEN THE GOVERNMENT AND THE CHILDREN, FAMILIES --

21  THE CHILDREN, THEIR FAMILIES AND THEIR ADVOCATES, THAT THOSE

22  ISSUES ARE ALL COMING TOGETHER AND WORKING OUT.

23        PERHAPS MS. WEISS CAN SPEAK TO THAT.  WHAT'S THE

24  CURRENT STATUS?

25        **MS. WEISS:**  THANK YOU, YOUR HONOR.


                        AUGUST 21, 2020

1          THE CURRENT STATUS IS THAT WE HAVE PROVIDED THE

2     GOVERNMENT WITH WHAT WE BELIEVE IS A COMPREHENSIVE LIST, A

3     COMPREHENSIVE DESCRIPTION OF THE ISSUES WE BELIEVE HAVE BEEN

4     AGREED TO AND THE ISSUES THAT WE BELIEVE ARE STILL OUTSTANDING

5     AND WE MAY NOT BE ABLE TO AGREE TO, SO AS TO IDENTIFY ANY WE

6     MAY NEED TO BRING TO THE COURT'S ATTENTION.  AND WE ARE

7     WAITING FOR A RESPONSE FROM THE GOVERNMENT TO THAT LATEST

8     COMMUNICATION.

9          **THE COURT:**  ALL RIGHT.

10          AND, WITH THIS DISCUSSION, WHAT IS HOPED TO BE PUT

11    IN PLACE IS SOME KIND OF PROTOCOL GOING FORWARD AS TO THE

12    INFORMATION SHARING, WHAT IS TO BE SHARED AND HOW IT IS TO BE

13    SHARED BETWEEN AND AMONG THESE STAKEHOLDERS.  IS THAT

14    ACCURATE?

15          **MS. WEISS:**  THAT IS CERTAINLY OUR HOPE, THAT WE WILL

16    HAVE AN AGREEMENT ABOUT HOW -- A CLEAR AGREEMENT ABOUT HOW

17    INFORMATION IS SHARED, WITH WHOM, WHEN, UNDER WHAT

18    CIRCUMSTANCES.  AND THAT WE WILL KNOW WHEN THERE IS NO

19    AGREEMENT AND WHEN WE MAY HAVE TO COME BACK TO THE COURT TO

20    SEEK RESOLUTION.

21          **THE COURT:**  OKAY.  THANK YOU.

22          AND THAT IS AN IMPORTANT ISSUE AS WE GO FORWARD,

23    EVEN IN THE FUTURE, WITH CHANGES IN THE ADMINISTRATION AND

24    EXECUTIVE BRANCH POLICIES ON IMMIGRATION, THESE ISSUES WILL

25    ALWAYS BE PRESENT, I WOULD THINK.  AND SO TO THE EXTENT THERE


                        AUGUST 21, 2020

 1  CAN BE PROTOCOLS SET IN PLACE TO ELIMINATE THIS ISSUE, THAT IS
 2  IMPORTANT.  AND THAT RELATES, OF COURSE, TO THE INFORMATION
 3  SHARING BETWEEN AND AMONG THE EXECUTIVE BRANCH AGENCIES, WHICH
 4  MR. COSTELLO CAN SPEAK TO IN A MOMENT.
 5          ON MMM DORA, LOOKS LIKE EVERYTHING IS IN ORDER, SO I
 6  DON'T HAVE ANY QUESTIONS THERE.
 7          DO COUNSEL HAVE ANY COMMENTS OR QUESTIONS ON MMM
 8  DORA?
 9          **MS. SHEBAYA:**  NONE FROM DORA YOUR HONOR.
10          THIS IS SIRINE SHEBAYA.
11          **MS. COSTELLO-ESSIG:**  NONE FROM MMM EITHER, YOUR
12  HONOR.
13          HALEY COSTELLO-ESSIG.
14          **THE COURT:**  OKAY.  LET'S MOVE TO THE INFORMATION
15  SHARING BETWEEN AND AMONG THE EXECUTIVE BRANCH AGENCIES.
16          AND THANK YOU, MR. COSTELLO, FOR YOUR DECLARATION.
17  THAT IS VERY HELPFUL.
18          PERHAPS I CAN INVITE YOU TO JUST GIVE A BROAD
19  OVERVIEW OF WHAT'S IN PLACE, WHERE YOU ARE GOING.  AND THEN I
20  HAVE SOME FOLLOW-UP QUESTIONS.
21          AND I KNOW THAT SOME OF WHAT YOU SAY WILL REPEAT
22  WHAT IS IN THE DECLARATION, BUT I WANTED TO INVITE YOU TO BE
23  PART OF THE STATUS CONFERENCE SO THAT ALL OF THE LAWYERS, WITH
24  THEIR CLIENT'S INTERESTS, COULD HEAR FROM YOU AND PARTICIPATE
25  IN THE DISCUSSION AS WE GO FORWARD.


                    AUGUST 21, 2020

1         SO, MR. COSTELLO, CAN YOU GIVE US KIND OF A

2    HIGH-LEVEL OVERVIEW OF WHERE YOU ARE AND WHAT IS IN PLACE.

3              **MR. COSTELLO:**  ABSOLUTELY, YOUR HONOR.

4         SO THE UNIFIED IMMIGRATION PORTAL, WHICH WAS

5    DETAILED IN THE DECLARATION, IT IS DESIGNED AS A TECHNOLOGICAL

6    PLATFORM FOR INFORMATION SHARING ACROSS RELEVANT IMMIGRATION

7    AGENCIES AS WELL AS HHS.

8         WE COLLECT, WITHIN THAT SYSTEM, DATA FROM MULTIPLE

9    AGENCIES AND IN TERMS OF A CENTRALIZED LOCATION FOR ACCESS

10   WITH -- WITH CONTROL THAT EACH AGENCY CAN ONLY VIEW DATA FOR

11   WHICH THEY ARE PERMITTED.  IT IS DESIGNED AS AN INTERNAL

12   GOVERNMENT SYSTEM, AND ALL THE USERS OF THE SYSTEM ARE

13   GOVERNMENT EMPLOYEES.  IT DOES PROVIDE GRANULAR CONTROL SO

14   THAT INFORMATION IS ONLY ACCESSIBLE AT THE CORRECT LEVELS FOR

15   EACH USER OF THE SYSTEM.

16             **THE COURT:**  OKAY.  AND LET ME -- I WILL RUN DOWN

17   YOUR DECLARATION, I HAVE SOME QUESTIONS HERE.

18        STARTING AT PARAGRAPH 2 YOU REFERENCE THE UIP TEAM.

19   WHO IS ON THAT TEAM?  I DON'T NEED NAMES, BUT CAN YOU GIVE US

20   AN IDEA OF THE SIZE OF THAT TEAM, AND THE RESPECTIVE GROUPS

21   THAT ARE PART OF THE TEAM?

22             **MR. COSTELLO:**  OF COURSE, YOUR HONOR.

23        WITHIN THE OFFICE OF INFORMATION TECHNOLOGY, WHICH

24   IS WHERE I WORK, MYSELF.  AND THERE IS A PROGRAM MANAGER THAT

25   LEADS THIS TEAM ALONG WITH A TEAM OF APPLICATION DEVELOPERS,

                         AUGUST 21, 2020

1   PROBABLY AROUND 70 TO 80 PERSONNEL.

2          THERE IS, OF COURSE, A CROSS-AGENCY WORKING GROUP

3   THAT INCLUDES MEMBERS FROM U.S. IMMIGRATION AND CUSTOMS

4   ENFORCEMENT, CITIZENSHIP AND IMMIGRATION SERVICES, HEALTH AND

5   HUMAN SERVICES AS WELL.  THAT IS THE WORKING GROUP.

6          WITHIN THE OFFICE OF INFORMATION TECHNOLOGY THERE IS

7   PROBABLY ABOUT A HUNDRED OF US INVOLVED WITH THE UNIFIED

8   IMMIGRATION PORTAL, AND THAT COULD BE PEOPLE FROM APPLICATION

9   DEVELOPERS, PROJECT MANAGERS, CYBER SECURITY.  ALL NOT

10  NECESSARILY WORKING ON IT 100 PERCENT OF THE TIME, ALTHOUGH

11  SOME PERSONNEL CERTAINLY ARE ON THE APPLICATION DEVELOPMENT

12  SIDE.

13          **THE COURT:**  ALL RIGHT.  AND YOU MENTIONED THAT YOU

14  MEET DAILY WITH A PROGRAM TEAM.  WHO WOULD YOU BE MEETING

15  WITH?

16          **MR. COSTELLO:**  TYPICALLY, YOUR HONOR, I WOULD BE

17  MEETING WITH ROBERT GOULD [PH.], WHO IS MY PROGRAM MANAGER,

18  THAT RUNS THE DAY-TO-DAY DEVELOPMENT ON THE INFORMATION

19  TECHNOLOGY SIDE OF THE UNIFIED IMMIGRATION PORTAL.

20          **THE COURT:**  AND THEN HOW OFTEN ARE YOU COORDINATING

21  AND MEETING WITH THE OTHER AGENCIES:  ICE, DOJ, HHS?

22          **MR. COSTELLO:**  MR. GOULD AND OTHERS, I WOULD

23  TYPICALLY BE MEETING WITH THEM A FEW TIMES A WEEK ON DIFFERENT

24  TOPICS.  IT COULD VARY.

25          THERE COULD ALSO BE AD HOC MEETINGS AS THEY -- THEY


                    AUGUST 21, 2020

13

1   ARE WORKING THROUGH THE DEVELOPMENT OF THE SYSTEM.

2           **THE COURT:**  ALL RIGHT.  OKAY.  THANK YOU.

3           AND THEN ON PARAGRAPH 4 THERE IS REFERENCE TO

4   CONGRESS'S ALLOCATION OF $32 MILLION.  FROM YOUR PERSPECTIVE,

5   IS THAT SUFFICIENT FUNDING?  DO YOU HAVE THE MONIES YOU NEED

6   TO MAKE THIS HAPPEN?

7           **MR. COSTELLO:**  YES, YOUR HONOR, I DO BELIEVE THAT WE

8   HAVE ENOUGH FUNDING TO FULFILL THE REQUIREMENTS.

9           **THE COURT:**  AND WITH RESPECT TO WHAT'S IN PLACE, YOU

10  HAVE SET THAT OUT IN PARAGRAPH 5, AS FAR AS THE INITIAL

11  TECHNOLOGY PLATFORM AND AUTHORIZED USERS.  WHERE ARE YOU; ARE

12  YOU AT THE VERY BEGINNING OF THIS?

13          IN PARAGRAPH 6 YOU SET OUT A GENERAL STATUS.  ARE

14  YOU AT, LIKE, PHASE ONE, OR HOW WOULD YOU DESCRIBE YOUR

15  PROGRESS?

16          **MR. COSTELLO:**  I THINK WE ARE ACTUALLY MAKING VERY

17  FAST PROGRESS.  AND WE ARE USING A METHODOLOGY CALLED AGILE,

18  WHICH ALLOWS US TO MAKE VERY RAPID CHANGES.  I WOULD SAY, IN

19  MANY WAYS, WE ARE PROBABLY 25 TO 30 PERCENT DONE.

20          THERE ARE OTHER ELEMENTS OF THE PROGRAM RELATED TO

21  PUTTING GOVERNMENT DOCUMENTS ON THAT, AND THINGS LIKE THAT

22  THAT ARE MAYBE IN DIFFERENT STAGES.  I THINK THE -- THE USAGE

23  IS -- IS INCREASING, YOU KNOW, WHERE WE ARE WORKING CLOSELY

24  WITH HHS AND ICE RIGHT NOW TO ADD MORE USERS TO THE

25  APPLICATION.


                        AUGUST 21, 2020

14

1        **THE COURT:**  DO YOU HAVE AN ESTIMATE, TIME ESTIMATE,
2   OF WHEN YOU WILL BE COMPLETED WITH THIS PROJECT?

3        **MR. COSTELLO:**  AT THIS TIME, YOUR HONOR, I DO NOT.
4   WE ARE MAKING RAPID ENHANCEMENTS EACH WEEK USING DIFFERENT
5   METHODOLOGIES.  AND WE COULD -- YOU KNOW, WE ARE WORKING
6   TOWARDS THAT GOAL BUT -- BUT RIGHT NOW I DON'T HAVE AN EXACT
7   DATE.

8        **THE COURT:**  ALL RIGHT.  BUT YOU BELIEVE YOU ARE
9   ABOUT 25 TO 30 PERCENT COMPLETED WITH SETTING UP THIS
10  COMMUNICATION PLATFORM?

11       **MR. COSTELLO:**  YES, SIR.  WITH -- PARTICULARLY WITH
12  HHS AND ICE.  WE ARE WORKING THROUGH USER ACCESS AND DIFFERENT
13  SECURITY STANDARDS THERE TO MAKE SURE THAT EVERYONE CAN ONLY
14  SEE THE DATA THAT THEY ARE PERMITTED TO.

15       AND OF COURSE THE EXECUTIVE AGENCIES INVOLVED IN
16  THIS, THIS EFFORT, WE ALL CONTINUE TO HAVE THE OWNERSHIP OF
17  OUR DATA SO -- SO THAT WE ONLY SHARE WHAT IS NECESSARY.
18  AND HHS USERS CAN ONLY SHARE WHAT -- EXCUSE ME -- CAN ONLY
19  REVIEW WHAT THEY ARE AUTHORIZED TO VIEW.  SO WE ARE SPENDING
20  A LOT OF TIME TO ENSURE THAT, THAT THOSE ELEMENTS ARE IN
21  PLACE.

22       **THE COURT:**  YES.  AND WHAT ABOUT DOJ, BUREAU OF
23  PRISONS, ARE THEY PART OF THE TEAM OR INVOLVED IN THIS?

24       **MR. COSTELLO:**  DOJ, SIR, THE EXECUTIVE OFFICE OF
25  IMMIGRATION REVIEW IS PART OF THIS.  THE UNITED STATES

AUGUST 21, 2020

1  MARSHAL'S SERVICE AND BUREAU OF PRISONS, THEY ARE AGENCIES WE

2  WOULD LIKE TO, AT SOME POINT, BE A PART OF THIS.  AT THIS

3  POINT RIGHT NOW WE ARE -- WE ARE NOT ACTIVELY WORKING WITH

4  THEM TO THIS DAY.

5          **THE COURT:**  BUT THE PLAN IS TO LOOP THEM IN AT SOME

6  POINT.  IS THAT FAIR?

7          **MR. COSTELLO:**  ABSOLUTELY, YOUR HONOR.

8          **THE COURT:**  OKAY.  THEN MOVING TO PARAGRAPH 8, IT

9  SETS OUT WHAT THE UIP IS INTENDED TO BE:  REAL-TIME ACCESS TO

10  RELEVANT INFORMATION ABOUT AN INDIVIDUAL'S JOURNEY THROUGH THE

11  IMMIGRATION SYSTEM.

12          AND WITHOUT GETTING INTO THE WEEDS OF WHAT THAT

13  RELEVANT INFORMATION MIGHT BE, AT SOME POINT I AM SURE MS. L.

14  LAWYERS AND OTHERS WILL HAVE A VIEW ON THIS.

15          BUT ASSUMING THE RELEVANT INFORMATION IS IN PLACE

16  AND THESE VARIOUS AGENCIES ARE ABLE TO COMMUNICATE, IT SEEMED

17  TO ME ANOTHER IMPORTANT ASPECT OF THIS UIP SYSTEM IS NOT ONLY

18  TO SHARE INFORMATION ABOUT THE INDIVIDUAL'S JOURNEY THROUGH

19  THE SYSTEM, BUT ALSO TO HAVE MECHANISMS IN PLACE.  I DON'T

20  KNOW WHAT THEY WOULD BE OR WHAT THEY WOULD LOOK LIKE, BUT SOME

21  WAY THAT THIS PROGRAM PROMPTS APPROPRIATE RESPONSES BY THE

22  VARIOUS AGENCIES.

23          SO, FOR EXAMPLE, IF A PARENT IS IN CRIMINAL CUSTODY

24  WITH THE B.O.P.,  DOJ, AND THEY ARE IN COURT HANDLING, FOR

25  EXAMPLE, LET'S SAY IT IS A 1325 ILLEGAL ENTRY CASE, AND THEY

AUGUST 21, 2020

1  HAVE BEEN SEPARATED FROM THEIR CHILD.

2          IT SEEMS TO ME THAT IF THE SYSTEM IS WORKING

3  PROPERLY THAT PARENT, THROUGH HIS OR HER ATTORNEY, PROBABLY A

4  FEDERAL DEFENDER, SHOULD BE ABLE TO ASK THE ASSISTANT U.S.

5  ATTORNEY, WHO WORKS FOR DOJ, WHERE THEIR CHILD IS, IF THEY

6  DON'T ALREADY KNOW.  AND DOJ SHOULD HAVE ACCESS TO THE

7  INFORMATION THAT THIS UIP SYSTEM PROVIDES SO THAT THE

8  GOVERNMENT -- AND THE GOVERNMENT WOULD BE EVERYONE, CBP, ICE,

9  HHS, DOJ -- KNOWS NOT ONLY WHERE THE PARENT IS BUT WHERE THE

10  CHILD IS.  AND FURTHER THAT -- SO THAT THE AUSA COULD INFORM

11  THE FEDERAL DEFENDER AND THE PARENT DEFENDANT WHERE HIS OR HER

12  CHILD IS.

13          AND THEN SIMILARLY, AS WE GO DOWN THE CHAIN, AT SOME

14  POINT THAT PARENT, LET'S ASSUME HE OR SHE PLEADS GUILTY, WOULD

15  BE SENTENCED.  THEY DO THEIR TIME.  THEY WERE THEN MOVED FROM

16  DOJ CUSTODY TO CIVIL DETENTION, ICE, ICE DETENTION.  AND AT

17  THAT POINT THEY WOULD BE IN A POSITION TO EITHER REUNIFY WITH

18  THEIR CHILD OR ELECT NOT TO.  OR THEY MAY BE FACING A REMOVAL

19  ORDER, AND THE PROCESS FOR REMOVAL WITH THEIR CHILD, OR

20  WHATEVER THE DECISIONS MIGHT BE, WOULD COME INTO PLACE.

21          BUT AT THE POINT THAT THE PARENT IS MOVED FROM DOJ

22  CRIMINAL CUSTODY TO ICE CIVIL DETENTION THERE OUGHT TO BE SOME

23  KIND OF PROMPTING MECHANISM SO THAT THE CHILD AND THE CHILD'S

24  ADVOCATES, WHETHER IT IS HHS OR SOMEONE LIKE CATHERINE WEISS,

25  SOME APPROPRIATE PERSON WOULD BE IN A POSITION TO KNOW THAT


AUGUST 21, 2020

1    NOW IS THE TIME TO BEGIN TO REUNIFY IF IT IS APPROPRIATE; IF

2    THERE ARE NO HEALTH ISSUES, COMMUNICABLE DISEASES PREVENTING,

3    CRIMINAL HISTORY, THAT KIND OF THING.  APPROPRIATE PERSONNEL

4    AT HHS AND CHILD ADVOCATES WOULD BE IN A POSITION TO KNOW THAT

5    REUNIFICATION SHOULD BE TAKING PLACE.  OR IF IT DOESN'T TAKE

6    PLACE THEY SHOULD KNOW WHY, THE REASONS WHY.

7            SO THE INFORMATION, AS I SEE IT, WOULD BE NOT -- I

8    AM SORRY.  THE UIP SYSTEM WOULD NOT BE JUST INFORMATIONAL AS

9    TO THE JOURNEY OF A PARENT OR CHILD, BUT ALSO PROMPT

10   APPROPRIATE ACTORS TO HAVE THE INFORMATION AT THE RIGHT TIME

11   TO MAKE THE RIGHT DETERMINATIONS ABOUT REUNIFICATION OR WHY

12   REUNIFICATION IS NOT OCCURRING, OR REMOVAL, THOSE KINDS OF

13   THINGS, TO AVOID WHAT HAPPENED IN MS. L.

14           SO I SET THAT BACKGROUND OUT TO INQUIRE OF YOU, MR.

15   COSTELLO, WHETHER THAT IS HOW THIS SYSTEM ULTIMATELY IS GOING

16   TO WORK.  CAN YOU SPEAK TO THAT?

17           **MR. COSTELLO:**  YOUR HONOR, I THINK I CAN SPEAK TO --

18   TO PORTIONS OF IT.  AND I DO -- THE ANGLE WOULD BE THAT ALL

19   THE EXECUTIVE AGENCIES WOULD HAVE THAT, THAT VIEW OF THE DATA

20   AT THE APPROPRIATE LEVEL WITHIN EACH AGENCY.

21           MANY OF THE AGENCIES DO USE OTHER SYSTEMS FOR

22   PROCESSING OR -- OR OTHER ACTIONS, SO THOSE -- THOSE OTHER

23   SYSTEMS MAY GET PROMPTS THROUGHOUT THE PROCESS.  BUT WE DO

24   INTEND IT TO WORK THAT WAY.  AND WE ARE ACTUALLY CREATING WHAT

25   WE CALL A SERVICE TO PUSH DATA OUT OF THE SYSTEM.  SO I DO


AUGUST 21, 2020

1    BELIEVE THAT THAT IS THE GOAL OF THE SYSTEM, YOUR HONOR.

2            **THE COURT:**  OKAY.  THANK YOU.  AND I WILL CIRCLE

3    BACK TO THAT IN A MOMENT.  OKAY.

4            I THINK THOSE ARE GENERALLY THE QUESTIONS I HAVE AT

5    THIS TIME.  I WILL HAVE A FEW MORE COMMENTS IN A MOMENT.

6            BUT LET ME INQUIRE OF COUNSEL FOR MS. L., OR MR.

7    HERZOG OR MS. WEISS, ANY –– MMM, DORA, ANYONE HAVE ANY

8    PRELIMINARY THOUGHTS OR QUESTIONS OF MR. COSTELLO AT THIS

9    TIME, OR MS. FABIAN?

10           **MR. GALINDO:**  THIS IS MR. GALINDO FOR MS. L.

11           JUST ONE QUESTION THAT I HAD WAS:  HAVE THERE BEEN

12   ANY REVISIONS TO AGREEMENTS ABOUT THE SUBSTANCE OF WHAT

13   INFORMATION MUST BE SHARED BETWEEN, FOR EXAMPLE DHS AND HHS,

14   ABOUT SEPARATED FAMILIES?

15           **THE COURT:**  THAT'S A QUESTION TO MR. COSTELLO?

16           **MR. GALINDO:**  I BELIEVE ––

17           **MS. FABIAN:**  YOUR HONOR, THIS IS MS. FABIAN.

18           I JUST WANT TO JUST NOTE.  MR. COSTELLO WAS SORT OF

19   KEYED IN HERE AT THE LAST MINUTE AND I HAVEN'T HAD A CHANCE TO

20   DISCUSS THIS WITH HIM.

21           I UNDERSTAND THE INTEREST IN SHARING INFORMATION

22   BUT, YOU KNOW, HE IS NOT HERE AS A WITNESS.  SO I WILL DEFER

23   TO HIM TO GIVE WHAT INFORMATION HE CAN, BUT I DO WANT TO RAISE

24   THE OBJECTION TO HAVING HIM ON THE SPOT ANSWER QUESTIONS HERE

25   FROM PLAINTIFFS IN THIS SETTING.


                        AUGUST 21, 2020

1          **THE COURT:**  YES.  I DO UNDERSTAND AND APPRECIATE

2    THAT.

3          BUT I THINK, JUST FROM A HIGH-LEVEL PERSPECTIVE,

4    MR. COSTELLO, DO YOU HAVE ANY INFORMATION ON THAT OR -- THAT

5    YOU ARE PREPARED TO PROVIDE AT THIS TIME IN THIS SETTING?

6          **MR. COSTELLO:**  WE ARE WORKING WITHIN THE CONSTRUCTS

7    OF THE EXISTING MEMORANDUMS OF UNDERSTANDINGS BETWEEN THE

8    EXECUTIVE DEPARTMENTS RIGHT NOW.

9          **THE COURT:**  OKAY.

10         DOES THAT ANSWER YOUR QUESTION, MR. GALINDO, OR DO

11   YOU WANT TO WAIT AND KIND OF DRILL DOWN AT A LATER TIME?

12         **MR. GALINDO:**  I THINK THE LATTER MAKES A LOT OF

13   SENSE.

14         **THE COURT:**  ALL RIGHT.

15         **MR. GALINDO:**  AND I DON'T -- JUST ONE MOMENT.

16         AND I GUESS JUST TO CLARIFY ONE POINT.

17         AT THE MOMENT ARE THERE ANY PLANS TO -- CONCRETE

18   PLANS TO INCORPORATE INFORMATION FROM THE MARSHAL'S SERVICE OR

19   BUREAU OF PRISONS?

20         **THE COURT:**  MR. COSTELLO, DO YOU KNOW?

21         **MS. FABIAN:**  JUST BEFORE MR. COSTELLO ANSWERS --

22   AGAIN, THIS IS MS. FABIAN.

23         I JUST WANT TO HIGHLY -- I THINK THE UIP IS A

24   PROGRAM THAT HAS PURPOSES, YOU KNOW, FAR BEYOND THIS

25   LITIGATION.  I UNDERSTAND THE COURT'S AND PLAINTIFFS' AND ALL


                         AUGUST 21, 2020

20

1   OF OUR CONCERNS WITH LOOPING IN THE MARSHAL'S SERVICE AND

2   BUREAU OF PRISONS AND OTHERS TO ADDRESS CONCERNS WITH PARENTS

3   IN CRIMINAL CUSTODY.

4           I DO WANT TO HIGHLIGHT THAT THERE ARE OTHER

5   PROCESSES THAT ARE BEYOND MR. COSTELLO'S PROJECT HERE THAT ARE

6   DESIGNED TO ADDRESS THOSE ISSUES THAT REALLY COME BEFORE YOU

7   GET TO THE UIP, SPECIFICALLY THE INFORMATION PROVIDED TO

8   PARENTS UPON SEPARATION, THE TEAR SHEET.

9           I THINK -- I WANT TO NOT PUT MR. COSTELLO ON THE

10  SPOT TO BE, YOU KNOW, RESPONDING SOLELY TO THAT ISSUE AS FAR

11  AS THE LITIGATION.  IT IS NOT SOMETHING PLAINTIFFS HAVE EVER

12  RAISED TO US THAT THEY ARE EXPERIENCING ISSUES WITH THAT.

13  AND IF THEY ARE, YOU KNOW, WE WOULD CERTAINLY LIKE TO

14  HEAR THOSE AT THIS TIME, AND BE HAPPY TO DISCUSS THAT

15  FURTHER.

16          I UNDERSTAND IT IS AN ISSUE OF CONCERN AND IT IS ONE

17  THAT, AS MR. COSTELLO MENTIONED, IS BEING CONSIDERED.  BUT

18  THERE ARE OTHER -- OTHER PRACTICES IN PLACE SPECIFICALLY

19  RELATED TO THIS LITIGATION THAT ARE ALSO DESIGNED TO ADDRESS

20  THOSE CONCERNS.

21          **THE COURT:**  YES.  THANK YOU.

22          MR. COSTELLO, ANY MORE INFORMATION ON THAT QUESTION?

23          **MR. COSTELLO:**  I DON'T BELIEVE SO AT THIS TIME, YOUR

24  HONOR.

25          **THE COURT:**  OKAY.  AND I UNDERSTOOD YOU TO BE SAYING


                        AUGUST 21, 2020

1    EARLIER THAT AT SOME POINT IT WOULD BE THE INTENTION TO

2    INCLUDE BUREAU OF PRISONS, DEPARTMENT OF JUSTICE TO BE

3    INCLUDED IN SOME WAY ON THIS UIP PLATFORM.  IS THAT CORRECT?

4            **MR. COSTELLO:**  IT IS, YOUR HONOR.

5            **THE COURT:**  ALL RIGHT.  OKAY.

6            I THINK THE WAY I WOULD LIKE TO LEAVE THIS ISSUE FOR

7    THIS STATUS CONFERENCE IS FIRST TO THANK YOU, MR. COSTELLO,

8    FOR THE WORK YOU ARE PUTTING IN AND FOR YOUR LEADERSHIP ON

9    THIS TEAM.

10           THIS IS A VERY IMPORTANT ASPECT OF THE MS. L.

11   LITIGATION.  IT IS PART OF THE ORIGINAL ORDER, PRELIMINARY

12   INJUNCTION ORDER.  AND IT GOES RIGHT TO THE HEART OF SOME OF

13   THE UNDERLYING PROBLEMS IN THE MS. L. CASE WHERE THE

14   GOVERNMENT DID NOT KNOW WHERE PEOPLE WERE, AND THAT WAS A

15   STARTLING REALITY.  AND SO THIS PORTAL, OR THIS UIP SYSTEM,

16   NEEDS TO ADDRESS THAT.

17           AND SO THIS IS VERY IMPORTANT WORK.  AND I WANT TO

18   THANK YOU FOR THE LEADERSHIP THAT YOU HAVE TAKEN THUS FAR.

19           WHAT I WOULD LIKE TO DO, WE WILL SET THIS OUT FOR A

20   FUTURE STATUS CONFERENCE AND ASK YOU, MR. COSTELLO, TO ALSO

21   FILE A SUPPLEMENTAL -- OR A DECLARATION, IN CONJUNCTION WITH

22   THAT STATUS CONFERENCE, IDENTIFYING THE PROGRESS YOU HAVE

23   MADE, WHAT PROGRESS YOU HAVE MADE, AND YOUR ESTIMATE AS TO

24   FUTURE STEPS AND, IF POSSIBLE, A TIME OF COMPLETION.

25           AND THEN WHAT I ANTICIPATE IS AT SOME POINT YOU WILL

AUGUST 21, 2020

1  HAVE A PRODUCT THAT YOU CAN REPRESENT TO THE COURT AND TO THE
2  PARTIES.  AND I WOULD THINK AT THAT POINT THE PARTIES WILL
3  WEIGH IN, SO PLAINTIFFS' COUNSEL AND OTHERS WILL LIKELY HAVE
4  SUGGESTIONS OR CONCERNS.

5          AND SO THAT DISCUSSION WILL BECOME IMPORTANT, BUT I
6  THINK IT NEEDS TO WAIT UNTIL WE HAVE A PRODUCT FROM YOU THAT
7  THE PARTIES CAN EVALUATE, AND THEN WORK THROUGH THAT.  SO AT
8  THAT END OF THE DAY, IN THIS LITIGATION, THE PARTIES HOPEFULLY
9  CAN COME TO AN AGREEMENT, LIKE WE HAVE ON SO MANY OF THESE
10 SIGNIFICANT ISSUES, THAT A SYSTEM HAS BEEN PUT IN PLACE AND IT
11 ADDRESSES THIS FAILURE ON THE PART OF THE GOVERNMENT TO
12 INITIALLY ACCOUNT FOR PARENTS AND CHILDREN AND TO KNOW WHERE
13 THEY ARE.  AND TO MATCH THEM UP, MARRY THEM UP AT THE
14 APPROPRIATE TIME FOR REUNIFICATION OR REMOVAL, OR BOTH.

15         SO WHAT I WOULD LIKE TO DO IS SET THE NEXT STATUS
16 CONFERENCE FOR OCTOBER 16.  THAT'S A WAYS OUT, BUT I THINK IT
17 IS APPROPRIATE IN LIGHT OF KIND OF THE SLOW PROGRESS WE ARE
18 MAKING ON THE PANDEMIC.  BUT TO SET IT OUT TO OCTOBER 16 AT
19 11:30.

20         AND TO ASK THAT THE JOINT STATUS REPORT AND
21 DECLARATION FROM MR. COSTELLO BE PROVIDED BY CLOSE OF BUSINESS
22 ON WEDNESDAY, OCTOBER 14.

23         AND HOPEFULLY WE WILL HAVE CONTINUED PROGRESS IN
24 CONTACTING PARENTS AND REUNIFYING THE ENLARGED CLASS MEMBERS,
25 AND ALSO ON THE INFORMATION SHARING PROTOCOLS THAT WE ARE

AUGUST 21, 2020

23

1    CURRENTLY ADDRESSING.

2              WITH THAT, ARE THERE ANY OTHER COMMENTS?

3         **MS. FABIAN:**  YOUR HONOR, THIS IS MS. FABIAN.  JUST

4    ONE THING ON YOUR FINAL POINT THERE.

5              IT WAS VERY HELPFUL TO HEAR YOUR THOUGHTS ON HOW TO

6    PROCEED, AND I THINK WE CAN TAKE A LOOK AT THAT AND PROCEED

7    ACCORDINGLY.

8              I WOULD LIKE TO ASK THE –– THE UIP, AS I MENTIONED,

9    IS REALLY DESIGNED TO BE A MUCH BROADER TOOL THAT ISN'T

10   DIRECTLY RELATED TO THE LITIGATION, ALTHOUGH I AGREE IT IS

11   USEFUL TO THE ISSUES IN THE LITIGATION.

12             BUT WE WOULD LIKE TO ASK ALSO THAT PLAINTIFFS, OF

13   COURSE, BRING TO US, BEFORE THE COMPLETION OF THAT PROJECT, IF

14   THEY ARE IN FACT EXPERIENCING REAL TIME ISSUES WITH REGARD TO

15   THESE COMMUNICATION ISSUES.  I THINK AT THE OUTSET WE HAVE

16   HIGHLIGHTED THAT THEY REALLY HAVEN'T RAISED ANY ISSUES ON THIS

17   FRONT TO US.

18             AND, YOU KNOW OF COURSE IT WILL BE POTENTIALLY

19   HELPFUL TO HEAR CONCERNS DOWN THE LINE, BUT I AM NOT SURE THE

20   UIP PROJECT AND THE WAY THAT IT IS FUNDED AND EVERYTHING ELSE

21   WILL NECESSARILY BE EQUIPPED TO –– TO RESPOND ON THE BACK END.

22   AND SO IT MIGHT BE HELPFUL TO HEAR EARLIER IF THERE ARE IN

23   FACT ISSUES THAT WE CAN CONSIDER UP FRONT.

24        **THE COURT:**  THAT'S A GOOD SUGGESTION.  SO THERE IS A

25   LOT I DON'T KNOW, BUT THE ATTORNEYS DO KNOW.  AND SO I WOULD


                        AUGUST 21, 2020

1    INVITE ALL OF YOU, TO THE EXTENT YOU HAVE SUGGESTIONS OR IDEAS

2    ON THIS INFORMATION SHARING, TO MEET AND CONFER WITH MS.

3    FABIAN AND MR. COSTELLO, THE APPROPRIATE PERSONS IN THE

4    EXECUTIVE BRANCH.  I THINK THAT IS A GREAT IDEA, SO I INVITE

5    YOU TO DO THAT.

6              IN MY BACKGROUND DISCUSSION WITH MR. COSTELLO I HAD

7    MENTIONED THE SCENARIO OF THE PARENT WHO IS BEING CHARGED WITH

8    A CRIME AND IS IN CRIMINAL CUSTODY.  THAT'S A REAL EXAMPLE,

9    AND THAT'S AN EXAMPLE THAT IS CITED IN THE PRELIMINARY

10   INJUNCTION ORDER.  AND IT ARISES OUT OF THOSE CASES IN TEXAS,

11   I THINK IT IS THE WESTERN DISTRICT OF TEXAS, AND MAGISTRATE

12   JUDGE MIGUEL TORRES HAD ISSUED AN OPINION ON THAT

13   CIRCUMSTANCE.

14             AND WHAT WAS HAPPENING THERE IS WHAT I HAD SET OUT,

15   WHERE THE PARENT HAD BEEN SEPARATED FROM THE CHILD.  THE

16   PARENT WOULD APPEAR IN COURT.  THEY WOULD ASK THE GOVERNMENT,

17   THE U.S. ATTORNEY, WHERE THE CHILD IS, AND NO ONE KNEW.

18             SO IT JUST SEEMS TO ME THAT WOULD BE ONE VERY BASIC

19   EXAMPLE OF A PROBLEM THAT HAS TO BE ADDRESSED THROUGH

20   INFORMATION SHARING.  AND THIS UIP SYSTEM OUGHT TO BE EQUIPPED

21   TO HANDLE THAT ISSUE, AND I AM SURE THERE ARE MANY OTHERS THAT

22   SHOULD BE DISCUSSED AS WELL.

23             SO I LEAVE THAT TO COUNSEL, TO MEET AND CONFER.  AND

24   THEN WE WILL MEET AGAIN IN OCTOBER, AND TAKE INVENTORY AND SEE

25   HOW WE ARE DOING.


                         AUGUST 21, 2020

```
 1              ANY OTHER THOUGHTS?

 2              HEARING NONE, I THANK YOU ALL, COUNSEL, FOR YOUR

 3  PARTICIPATION.  I WISH YOU WELL.  STAY SAFE, HAVE A NICE

 4  WEEKEND.  AND I WILL LOOK FORWARD TO MEETING WITH YOU ALL

 5  AGAIN ON OCTOBER 16.  THANK YOU.

 6              MS. FABIAN:  THANK YOU, YOUR HONOR.

 7              MR. GALINDO:  THANK YOU, YOUR HONOR.

 8

 9                          *   *   *

10              I CERTIFY THAT THE FOREGOING IS A CORRECT
                TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
11              IN THE ABOVE-ENTITLED MATTER.

12              S/LEEANN PENCE                    8/24/2020
                LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
13

14

15

16

17

18

19

20

21

22

23

24

25
```

AUGUST 21, 2020