UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>U.S. Immigration and Customs Enforcement,<br>et al.,<br><br>　　　　Defendants. | Case No. 3:18-cv-428-DMS MDD<br><br>**LEGAL SERVICE PROVIDERS' SUBMISSION** |

　　　The Court ordered the parties to file a joint status report ("JSR") by 3:00 p.m. on October 20, 2020, in anticipation of the status conference scheduled at 1:30 p.m. on October 22, 2020. The Legal Service Providers (LSPs), who originally appeared in this action as objectors to the settlement in *M.M.M. v. Sessions*, subsequently sought and received the agreement of the Court and the parties to participate in negotiations regarding information-sharing about family separations. *See* Transcript of Telephonic Status Conference of Feb. 8, 2019, at 11-12 (ECF No. 109). In accordance with that agreement, the LSPs have participated for more than a year in negotiations among the parties regarding information-sharing.

　　　The LSPs make this submission for two purposes. First, the LSPs here summarize for the Court areas of agreement about how information is being and will be shared with the LSPs and child advocates who hold federal contracts or subcontracts to provide legal or guardian ad litem services to immigrant children in the custody of the Office of Refugee Resettlement (ORR). Second, to obtain

current information about real progress in information-sharing with the LSPs and child advocates, we recently sent another survey to these entities. This survey complements the one we filed with the Court on January 15, 2020 (ECF No. 510). Survey results are reported below.

### A. The Meet-and-Confer Process

After more than a year of negotiation, the parties and the LSPs have come to certain mutual understandings about how information is being and will be shared with the LSPs and child advocates. While certain outstanding issues remain, many have been resolved. What follows is copied from a document shared among the parties and the LSPs, but includes only those issues as to which we have reached a common understanding. Matters still under negotiation are excluded, except as referenced at the end of this submission.

### 1. Initial Information-Sharing

The Office of Refugee Resettlement's (ORR's) existing practice is to provide LSPs responsible for Know Your Rights (KYR) presentations and legal screenings with basic information about children in care, including whether a particular child has been separated from a parent or legal guardian. Specifically, ORR's practice is to transmit the following information sufficient to conduct the KYR and legal screening, by either providing a copy of the information or as an emailed statement to the LSP organization:

- UAC's birth certificate if available,[1]
- NTA if available,[2]

---

[1] "UAC" is the government's shorthand for Unaccompanied Alien Child. *See* 6 U.S.C. § 279(g)(2) (defining this term).

[2] The NTA (Notice to Appear) is the charging document for alleged violations of the immigration laws.

- I-213 if available,[3]
- Information/documents UAC brings with them if UAC grants permission (e.g., telephone numbers), and
- Notification that the UAC was separated.

ORR notes that DHS is responsible for identifying separated children at the time of referral to ORR. Thus, ORR may not always be aware of a child's separation when ORR first assumes custody of the child. However, ORR shares this information with the LSP as soon as it learns of a child's separation. ORR has reinforced this expectation with its care providers and field staff.

Note that when a UAC first comes into ORR custody, he or she typically does not have an attorney of record.[4] If the UAC has an attorney of record already, that attorney may request the above information by making a case file request.

**2. Information-Sharing through the New Separations Spreadsheet**

Defendants maintain a spreadsheet of all separations that occurred following the *Ms. L* preliminary injunction. The spreadsheet is not part of a UAC's case file. ORR and ICE reconcile this spreadsheet each week, based on the information that each agency possesses. In general, ORR maintains information regarding separated children, and ICE maintains information regarding separated parents. This spreadsheet contains the following information:

Information updated by ORR:

- Child's name, gender, A#, and date of birth;
- Child's country of origin;

---

[3] The I-213 is the form on which immigration agents summarize information obtained at the time they apprehend a person they suspect of violating the immigration laws.

[4] An attorney of record is one who has filed a notice of appearance with either USCIS (a G-28) or the immigration court (an E-28).

- Whether the child was discharged, the date of discharge, and the basis for the discharge (e.g., reunified with sponsor, voluntary departure, age out); and
- Relationship of sponsor (if any) to child (e.g., uncle, sister, father, mother).

Information updated by ICE:

- Separated parent's name, gender, A#, and date of birth;[5]
- General reason for the separation;
- More detailed reason for the separation;
- Whether the parent is in detention and, if so, in the custody of what agency (e.g., ICE, U.S. Marshal Service); and
- If the parent is not in detention, the date of discharge and the terms of discharge (e.g., departed, released).

LSPs, attorneys of record, and Child Advocates may make written requests via email to a child's care provider (typically the case manager), copying the ORR Federal Field Specialist (FFS), for any of the information from this spreadsheet. Requests must identify the child about whom information is sought, specify the information needed, and state the reasons for the request.  In stating the reasons, LSPs and Advocates must describe how the request relates to services covered in the ORR contract for legal services or child advocacy, as applicable.  If an LSP seeks information for reasons unrelated to the legal services contract, it should assign an attorney to make the request as the attorney of record for the child. Attorneys of record who are unaffiliated with an LSP may also make such requests.  If the request does not relate to services defined under the main legal services contract, ORR funds may not be used to fund the representation.

---

[5] The term "parent" is read to include legal guardians.

After making an initial written request, LSPs, attorneys of record, and Child Advocates may follow up with case managers to request updated information if it becomes available. If requesters request new information or request information for a purpose not originally communicated, the request should describe how it relates to the services provided under the ORR legal services contract or the Child Advocate contract, as applicable.

At this time, ORR cannot commit to a specific timeframe to respond to written requests for spreadsheet information. However, ORR will make efforts to respond expeditiously.

### 3. Ensuring Swift Addition of Separated Children to the Spreadsheet When Parentage Is Confirmed

When immigration officials have doubts about the parentage or legal guardianship of a separated child, but such parentage or legal guardianship is later confirmed, ORR and ICE practice is to promptly add that child to the spreadsheet through the weekly interagency reconciliation process. [June 2 response 4.]

In the government's June 2 response, ORR stated that it would be able to update the spreadsheet in this situation either in time for the update taking place that week, or else in the subsequent update. ORR updates on a case-by-case basis but attempts in general to meet this two-week timeline when practicable.

### 4. Information-Sharing through Case File Requests
#### a. Information available in case files:

Per ORR policy, children's case files include information collected throughout a child's stay in ORR custody. (ORR Policy Guide § 5.6.2.) Further, ORR practice is to have care providers create Significant Incident Reports, which are placed in case files, for UACs who were separated from a parent or guardian, including in those cases when the separating agency had doubts about parentage or guardianship. Other documents in the case file include but are not limited to case

manager notes, clinician notes, notices of potential rights, and I-213 forms (when available). [April 10 responses II.A., B.]

### b. Access to case files:

Child Advocates have access to the case files of children to whom they are appointed without having to file an ARR form.[6] [April 10 responses I.A., III.D.] Instead, they may directly request access to the information from care providers. However, Child Advocates may not share case files or case file information with other parties (e.g., LSPs or attorneys of record) without prior written ORR authorization.

As described in ORR's case file information sharing policy, LSPs and attorneys of record must use the ARR to request a separated child's case file. Requesters should send requests to the ORR case file records team (as opposed to the care provider), as explained in the policy. Again, requesters must indicate in the ARR how the request relates to services funded by ORR under the legal services contract. If an LSP seeks information for reasons unrelated to the contract, the LSP must assign a staff member to make such a request as an attorney of record for the child or in another capacity recognized in Section III of the ARR. An ARR is valid for one year once filed. As a result, the requester may make subsequent requests for case file documents, as the file is updated. [April 10 response III.D.] The requester should send such requests to the ORR case file records team and specify which updated records they are attempting to obtain.

### c. Requests for case files of children younger than 14:

The ARR requires the signature of "an individual with care-giving authority (parent, legal guardian, or sponsor)" if the child is under 14. (ARR, § V & n.7.)

---

[6] The ARR form is the ORR Authorization for Release of Records, available at https://www.acf.hhs.gov/orr/resource/requests-for-uac-case-file-information.

For children younger than 14 who are in ORR custody, ORR determines whether to consent to the request for information. Typically, ORR does not sign the ARR but documents its consent in the child's case file. [April 10 response II.C.5.]

### d. Time to produce case files:

ORR's current turnaround time to provide case file information is approximately 10 business days. This number may vary depending on factors we have previously described. However, at present ORR is generally able to provide case files for separated children within this timeframe.

ORR continues to explore the possibility of providing expedited production of a limited set of case file documents, but it is not prepared to implement the proposal at this time.

### 5. Information-Sharing through Flyers, Forms, Email, Notices, Letters

### a. Flyers:

Defendants have confirmed that two flyers – "Were You Separated from Your Child(ren) at the Border?" and "Family Separation Supplemental Information Form" (FSSIF) – are posted and available at all ICE detention facilities. [April 10 response V.A., B.] The first advertises the availability of the second and advises parents that they may request reunification through the Notice of Potential Rights Form. The FSSIF permits parents to submit information to their deportation officers if they believe that the separation was improper. The deportation officers then email the FSSIF and any supporting documentation to SeparationSupplementalInformation@ice.dhs.gov. Defendants have stated that these forms are available in English and Spanish and that DHS offers oral interpretation and written translation into other languages, as needed. (April 10 response V.A.)

Defendants have stated that LSPs, attorneys of record, and Child Advocates may also submit the FSSIF, but if they want a response, a lawyer must submit a notice of appearance (G-28 or E-28), and an Advocate must submit proof of appointment along with the form.

### b. Notices of Potential Rights and Letters of Designation:

Defendants state that they provide separated parents with a Notice of Potential Rights, asking whether they want to be reunified with their child if they are deported or whether they prefer to have their child released to a sponsor in the U.S.  If the parent decides to permit the child's release to a sponsor, the parent also completes a Letter of Designation.  [April 10 response VI.; Jan. 15 email from N. Murley, response 5.A.]  The Notice of Potential Rights form is shared with separated parents regardless of whether the government believes they are in the class.

### B. The Survey

Whatever protocols on information-sharing may be in place, the LSPs and child advocates remain interested in learning more about what information is actually being shared in the field.  To ascertain how the current information-sharing system is working for the LSPs and child advocates, we collaborated to design a survey, attached as Exhibit A.  On October 2, 2020, and again on October 6, 2020, this survey was sent by email to LSPs and child advocates throughout the nation.  The cover email requested survey responses by October 7.

Unlike the more general survey about which we reported in January 2020, this survey focused on information about three key issues: (1) the location of the parent, (2) the reasons for the separation, and (3) the parent's wishes regarding reunification as expressed through the Notice of Potential Rights and Letter of Designation, if any.

The survey reveals significant progress on information-sharing as well as significant remaining issues.

### 1. Survey Results

In the five days this survey was open, we received 27 responses. Twenty-one (21) of these responses came from LSPs; the remaining six (6) came from child advocates. The surveys cover ORR shelters in 10 states, including Arizona, California, Kansas, Michigan, Oregon, Pennsylvania, New York, Tennessee, Texas, and West Virginia.

#### a. Location of the Parent

Twenty-two (22) of the 27 respondents reported that they generally learn the location of the parent; five (5) reported that they do not. This marks a significant improvement since the January survey, when respondents reported that, in 70% of cases, ORR did *not* share the location of the parent. LSPs' Submission at 6, Jan. 15, 2020 (ECF No. 510).

Even so, the current information is not always specific enough to allow the LSP or child advocate to know where to contact the parent. The following table illustrates this problem.

| Location of Parent: | Respondent Learns Name of Facility or Location of Parent | Respondent Does Not Learn Name of Facility or Location of Parent |
|---|---|---|
| **ICE Custody** | 17 | 4 |
| **U.S. Marshal Custody** | 8 | 9 |
| **Repatriated** | 9 | 10 |
| **Released in the U.S** | 10 | 7 |

When parents are detained in ICE custody, the facility where they are held is generally listed on the spreadsheet the government updates weekly. Case

managers at the ORR facilities can then pass this information on to LSPs and child advocates. When parents are in U.S. marshal custody, repatriated, or released in the United States, however, LSPs and child advocates learn their exact location only approximately half the time. And they learn this information through a wide range of means: a majority get this information from ORR personnel; a minority get it from the child, other family members in the child's home country, federal defenders when they are known to the LSP or child advocate, and PACER lookups. A majority of respondents, 18 of 26, reported that, using all of these tools, they eventually found a way to contact the parent.

### b. Reason for the Separation

Twenty-one (21) of 27 respondents reported that they generally learn the reason for the separation. Again, this figure shows real progress since January, when, in 71% of the cases, the ORR case manager or Federal Field Specialist did *not* share information about the basis for the separation. LSPs' Submission at 6, Jan. 15, 2020 (ECF No. 510). Of the 27 current respondents, 14 reported that they got information about the basis for the separation from the case manager; 4 received it from the ORR Federal Field Specialist; and 5, by obtaining and reviewing the child's case file. The remainder generally learned the information from the child or other family members.

### c. Notices of Potential Rights and Letters of Designation

As stated above, Defendants represent that they share the Notice of Potential Rights form with separated parents regardless of whether Defendants believe they are in the *Ms. L* class. Separated parents may use this form to state whether they wish to be reunified with their children or to have their children placed with sponsors. In the latter case, the parent may use the Letter of Designation to identify preferred sponsors.

Twenty-two (22) of 23 respondents reported that they do *not* generally have access to the Notice of Potential Rights form; the one who did gain access received the form from the ORR case manager.  Twenty-four (24) of 26 respondents reported that they do *not* generally have access to Letters of Designation; two (2) respondents reported receiving the letter from the ORR case manager.

The LSPs and child advocates are grateful for the progress that has been made and appreciate their inclusion in past and ongoing negotiations.  At the same time, the survey results continue to show that they do not have consistent access to the most basic information: (1) Where and how can they contact the parent? (2) Why was the family separated? (3) What are the parent's wishes with regard to reunification or sponsorship?  The LSPs and child advocates would welcome the Court's assistance in clearing any final hurdles to the regular, consistent sharing of information on these three most critical issues.

Respectfully submitted,

*/s/ Catherine Weiss*
Catherine Weiss
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ, 07068
T:  (973) 597-2438
F:  (973) 597-2439
*cweiss@lowenstein.com*

*Admitted Pro Hac Vice