JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

               Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

               Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

     The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on October 20, 2020, in anticipation of the status conference scheduled at 1:30 pm on October 22, 2020. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

1

## I.   DEFENDANTS' POSITIONS

2

### A. Update Regarding Government's Implementation of Settlement Agreement

3

4
5
6
7
8
9
10
11
12
13
14
15
16

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms[1]** | Total number of executed election forms received by the Government | **440 (258 Parents/182 Children)[2]** |
| | • Number who elect to receive settlement procedures | **278 (155 Parents/123 Children)** |
| | • Number who waive settlement procedures | **162 (103 Parents/59 Children)[3]** |
| **Interviews** | Total number of class members who received interviews | **172[4]** |
| | • Parents who received interviews | **90** |
| | • Children who received interviews | **82** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **71[5]** |

17
18

[1] The number of election forms reported here is the number received by the Government as of August 13, 2020.  No additional forms have been received since that time.

19
20
21

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

22
23

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

24
25

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

26
27

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language.

28

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **69[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **2** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **21** |
| | • Number of parents granted asylum by USCIS | **2** |
| | • Number of parents referred to immigration court | **5** |
| | • Number of children granted asylum by USCIS | **3[9]** |

This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum

| | | |
|---|---|---|
| | • Number of children referred/returned to immigration court | **11** |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **103 Parents**[10] |

## B. Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. In advance of the Court's October 25, 2019 deadline, Defendants completed the process of identifying members of the expanded class and produced spreadsheets identifying those individuals to Plaintiffs' counsel. On November 6, 2019, the Steering Committee notified Defendants that in the 11 batches there were 149 individuals who had been identified by the government as being both children of potential expanded class members and "exclusions." On December 13, 2019, Defendants provided Plaintiffs with their completed review and reconciliation of the 149 individuals with inconsistent labels.

On February 7, 2020, Defendants reached out to Plaintiffs to request that Plaintiffs provide Defendants with an update regarding their efforts to locate and reunify members of the expanded class. Following multiple meet and confer

---

application.

[10] This number is as of September 26, 2020.

discussions, on July 5, 2020, Plaintiffs provided Defendants with an updated spreadsheet containing information regarding members of the expanded class, and identifying members of that class about whom Plaintiffs requested to meet and confer. Defendants reviewed the information provided and asked Plaintiffs some follow-up questions, to which Plaintiffs responded on August 6, 2020.

The parties are continuing to discuss this issue to determine if it can be resolved or whether it will require intervention from the Court. The parties have scheduled a meet and confer to discuss these issues on Thursday, October 22, 2020.

**C. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

_Data Requested by Plaintiffs_.  Defendants continue to provide Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 Order on a monthly basis.

_Processes and Procedures_.

In the May 27, 2020 Joint Status Report, Defendants provided the court with updated reporting regarding the various steps it has taken to implement Paragraph 5 of the preliminary injunction, ECF No. 83 at 24, ¶ 5, and improve the processes and procedures for information sharing between the agencies related to family separations. Following the July 10, 2020 status conference, the Court ordered that "Defendants shall provide a declaration from the Assistant Commissioner of OIT or other appropriate designee setting out the status of the development of the UIP and

estimated completion date. The declarant should also address the Court's concerns about how the UIP will enable parents in criminal custody access to their children's location information and how the UIP will assist in reunification efforts when a parent is transferred from criminal custody to immigration custody." ECF No. 543 at 2. Defendants provided that information in the August 19, 2020, Joint Status Report, including a declaration from Robert J. Costello, Executive Director, Office of Information Technology, Enterprise Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security. ECF No. 547. Following the status conference on August 21, 2020, the Court ordered the government to provide in the next report "a supplemental declaration from Mr. Costello on the progress of the UIP." In accordance with the Court's order, Defendants provide the attached declaration.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,556 children of potential expanded class members. Plaintiffs have focused on reaching children whose membership in the class is not contested, and for whom the government has provided at least one phone number for a sponsor or for the child's parent.[11]

---

[11] The eleven lists identify a total of 1,556 unique children, 1,134 of which have been confirmed by the government as being children of potential expanded class members. For 104 of these 1,134 children of potential class members, the government has not provided a phone number. Parents of the 422 children who have not been identified by the government as potential expanded class members

As of October 20, the Steering Committee has attempted to reach the families of all of these 1,030 children, and has successfully reached the parents (or their attorneys) of 485 children, an increase of 47 children since the last status report.

As a result, 545 children remain for whom the Steering Committee has not yet reached the separated parent, approximately two-thirds (66%) of whom are believed on the basis of the last information available from the government, to be in their respective countries of origin.  For all of these families, the Steering Committee's prior telephonic outreach attempts have not been successful in reaching the parent, and as further telephonic outreach attempts are not expected to result in successful contact with the separated parent, the Steering Committee has commenced or intends to commence additional efforts to locate the separated parent, as discussed below.

As reported in the last Joint Status Report, the Steering Committee's additional efforts to locate separated parents have been hampered since March of this year due to COVID-19. However, as discussed below and as demonstrated in the increase in parents successfully contacted since the last Joint Status Report, limited on-the-ground efforts to find separated parents have re-commenced where conditions have permitted search activities to resume safely.

The Steering Committee has conducted and continues to conduct further outreach to families who have tentatively indicated that they are not satisfied with the current separation from their child and who may want their child returned to their country of origin. Following discussions with these parents, the Steering Committee has yet to identify any families that definitively seek to have their child

have been categorized as "exclusions". The Steering Committee also intends to reach individuals the government has categorized as excluded from the class, and Plaintiffs reserve the right to contest those exclusions.

returned to their respective countries of origin. Our outreach to these families continues and we will advise the government if and when any cases arisen in which a parent seeks to have their child returned, prior to bringing any such cases requiring further assistance to the attention of the Court. As noted above, the Steering Committee has experienced delays and anticipates further delays in being able to obtain and provide this information to the government as a result of the outbreak of the novel coronavirus and its continued spread across the United States and various Central American countries, but will continue to keep the government and the Court informed of its progress.

**B. Steering Committee Progress Contacting "Unreachable" Parents**

As noted in previous Joint Status Reports, the Steering Committee has commenced extensive efforts to locate the "unreachable" parents in their respective countries of origin, a group now comprised of the parents of 470 children (representing the subset of the parents of 545 children that the Steering Committee has not yet successfully contacted and for whom the Steering Committee does not expect telephonic outreach attempts to be successful). Over the last several months, the Steering Committee has continued its additional outreach initiatives in an attempt to reach these parents.

First, as previously reported, the Steering Committee has engaged in time-consuming and arduous on-the-ground searches for parents in their respective countries of origin. Following a suspension due to the COVID-19 pandemic, limited physical on-the-ground searches for separated parents has now resumed where possible to do so while protecting the health of personnel working with the Steering Committee and members of vulnerable communities in separated parents' home countries.  As of October 20, defenders with Justice in Motion had commenced efforts to locate the "unreachable" parents of 502 children, and had

18cv428 DMS MDD

successfully located the parents of 187 of those children.  During this time, the Steering Committee has used contact information obtained by Justice in Motion's defenders to communicate with, and ascertain the reunification preferences of, parents who had formerly been designated as "unreachable". The Steering Committee intends to continue physical on-the-ground searches while it remains safe to do so, and will continue to update the Court on its progress, particularly if such searches must be limited or suspended again due to travel restrictions or health risks.

Also as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class.  The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers.

Additionally, as previously reported, the Steering Committee has commenced broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. As noted in the last several Joint Status Reports, outreach efforts to these third-party media outlets have not yet resulted in broad dissemination of the Steering Committee's toll-free numbers, which the Steering Committee believes to be due in large part to

the continuing effects of the novel coronavirus. While new inbound calls to the toll-free numbers have ceased, the Steering Committee is working to identify opportunities to broadly disseminate the toll-free numbers through various media to maximize visibility to potential *Ms. L.* class members, including most recently by seeking to collaborate on such media outreach initiatives with other non-profit organizations.  The Steering Committee will continue to update the court on these efforts.

Finally, also as previously reported, the Steering Committee has been in communication with Seneca Family of Agencies ("Seneca"), a non-profit organization that has contracted with the Department of Health and Human Services to connect certain *Ms. L.* class members in the United States with mental health providers, pursuant to a preliminary injunction in *Ms. J.P., et al.* v. *William P. Barr, et al.* (2:18-cv-06081-JAK-SK, C.D. Cal.).  The Steering Committee remains hopeful that this work will enable the Steering Committee to obtain contact information for currently unreachable parents in the *Ms. L.* class, and to locate such parents, particularly those believed to be within the United States and thus within the scope of Seneca's work.  The Steering Committee intends to use this information to conduct further outreach to class members to ascertain their preferences with respect to reunification.

## C. Meeting and Conferring Regarding Deported Expanded Class Members

Plaintiffs have sought to meet with the government to further discuss relief that expanded class members may seek under the Court prior rulings as to deported parents who sought return. That initial meeting is set for this Thursday, prior to the status conference.

18cv428 DMS MDD

**D. Results of October Survey of Legal Services Providers and Information Sharing**

Legal Services Providers (LSPs) are filing, in a separate docket entry, a report of information sharing discussions, as well as results from a survey conducted this month. The survey sought to determine what information the providers, in recent months, were able to obtain from the government about a separated child's parent, and what information the providers were not able to obtain.

Of note, it appears that about half of respondents reported that they continue not to be able to obtain information about the location of a child's parent if the parent is in U.S. Marshals' custody. That lack of information is consistent with prior inspector general reports raising concerns that ORR does not receive necessary information about a parent's location from the U.S. Marshals Service. *See, e.g.*, Communication and Management Challenges Impeded HHS's Response to the Zero-Tolerance Policy, (filed at ECF No. 524), at 26 ("Facility staff reported that U.S. Marshals Service staff told them it did not have the same obligations as DHS to share information about parents with ORR. As of April 2019, ORR staff reported that the UAC Program continued to experience significant difficulties obtaining information about parents who were in U.S. Marshals Service custody.")

Plaintiffs await further updates from the government as to the implementation of new information-sharing systems and any agreements requiring information sharing among governmental agencies, such as between the ORR and the Department of Justice. *See id.* at 41 ("[N]o current agreement requires DOJ to coordinate with ORR or provide information about parents' locations, which has led to ongoing difficulties locating parents in U.S. Marshals' custody.")

Finally, with respect to ongoing discussions of information the government agrees to provide to LSPs, Plaintiffs have also sought further clarification from the

11

government on one issue. That issue is whether the government will agree to provide a parent's Letter of Designation for their child and the parent's Notice of Potential Rights form, to an LSP that requests such forms, and whether the government agrees to seek any consent from a parent that it believes is needed to provide those forms. Other issues are discussed and summarized in the LSPs' filing.

### III.   *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: October 20, 2020             Respectfully submitted,


                                    /s/ Lee Gelernt
                                    Lee Gelernt*
                                    Judy Rabinovitz*
                                    Anand Balakrishnan*
                                    AMERICAN CIVIL LIBERTIES UNION
                                    FOUNDATION
                                    125 Broad St., 18th Floor
                                    New York, NY 10004
                                    T:  (212) 549-2660
                                    F:  (212) 549-2654
                                    *lgelernt@aclu.org*
                                    *jrabinovitz@aclu.org*
                                    *abalakrishnan@aclu.org*


                                    Bardis Vakili (SBN 247783)
                                    ACLU FOUNDATION OF SAN DIEGO
                                    & IMPERIAL COUNTIES
                                    P.O. Box 87131
                                    San Diego, CA 92138-7131
                                    T: (619) 398-4485
                                    F: (619) 232-0036
                                    *bvakili@aclusandiego.org*


                                    Stephen B. Kang (SBN 292280)
                                    Spencer E. Amdur (SBN 320069)
                                    AMERICAN CIVIL LIBERTIES UNION
                                    FOUNDATION
                                    39 Drumm Street
                                    San Francisco, CA 94111
                                    T:  (415) 343-1198
                                    F:  (415) 395-0950
                                    *skang@aclu.org*
                                    *samdur@aclu.org*


                                    *Attorneys for Petitioners-Plaintiffs*
                                    *\*Admitted Pro Hac Vice*

18cv428 DMS MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD