UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____ )
                                     )
MS. L., ET AL.,                      )
                                     )   CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS,    )
                                     )
VS.                                  )
                                     )
                                     )
                                     )
                                     )
U.S. IMMIGRATION AND CUSTOMS         )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,         )FRIDAY, OCTOBER 22, 2020
                                     )    1:30 P.M. CALENDAR
          RESPONDENTS-DEFENDANTS.    )
------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**TELEPHONIC MOTION HEARING**


REPORTED BY:                LEE ANN PENCE,
                            OFFICIAL COURT REPORTER
                            UNITED STATES COURTHOUSE
                            333 WEST BROADWAY, ROOM 1393
                            SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:                 LEE GELERNT, ESQ.
                               ANAN BALAKRISHNAN, ESQ.
                               DANIEL GALINDO, ESQ.
                               ACLU IMMIGRANT RIGHTS PROJECT
                               125 BROAD STREET 18TH FLOOR
                               NEW YORK, NEW YORK 10004


FOR DEFENDANT:                 SCOTT STEWART, ESQ.
(TELEPHONICALLY)               SARAH B. FABIAN, ESQ.
                               U.S. DEPARTMENT OF JUSTICE
                               OFFICE OF IMMIGRATION LITIGATION
                               P.O. BOX 868
                               BEN FRANKLIN STATION
                               WASHINGTON, DC 20044



ALSO APPEARING:                ROBERT COSTELLO, CBP
                               WILLIAM BARMEYER
                               HALEY COSTELLO-ESSIG
                               STEVEN HERZOG
                               CATHERINE WEISS
                               DAVID MARSHALL
```

1    **SAN DIEGO, CALIFORNIA — FRIDAY, OCTOBER 22, 2020 — 1:37 P.M.**

2                                    *   *   *

3              THE CLERK:  NO. 6 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    STATUS CONFERENCE.

6              THE COURT:  GOOD AFTERNOON, COUNSEL.

7              I SHOW FOR APPEARANCES FOR TODAY:  FOR MS. L., LEE

8    GELERNT AND DANIEL GALINDO; FOR DORA PLAINTIFFS WILSON

9    BARMEYER; FOR MMM HALEY COSTELLO-ESSIG; FOR THE STEERING

10   COMMITTEE STEVEN HERZOG AND DAVID MARSHALL; FOR THE OBJECTORS

11   CATHERINE WEISS; FOR THE GOVERNMENT SARAH FABIAN, SCOTT

12   STEWART; AND ROBERT COSTELLO ON BEHALF OF CBP.

13             THE CLERK:  ALSO FOR MS. L. ANAND BALAKRISHNAN IS ON

14   THE LINE.

15             THE COURT:  AND ANAND BALAKRISHNAN FOR MS. L.

16             LET'S GO THROUGH THE JOINT STATUS REPORT.  I HAVE

17   REVIEWED THAT AS WELL AS THE LEGAL SERVICE PROVIDERS'

18   SUBMISSION, AND THE DECLARATION FROM MR. COSTELLO, WHICH I

19   APPRECIATE.

20             TURNING TO THE JOINT STATUS REPORT, THE FIRST ITEM

21   THAT I NOTED, IT APPEARED THAT WITH RESPECT TO EXPANDED CLASS

22   MEMBERS, THERE WERE 149 INDIVIDUALS WHO HAVE BEEN IDENTIFIED

23   BY THE GOVERNMENT AS BEING BOTH CHILDREN OF POTENTIAL EXPANDED

24   CLASS MEMBERS AND EXCLUSIONS.  AND THE PARTIES WERE GOING TO

25   MEET AND CONFER ON THAT TODAY.


                              OCTOBER 22, 2020

1          HAS THAT DISCUSSION OCCURRED, OR IS THAT TO FOLLOW

2     THIS CONFERENCE CALL?

3          **MS. FABIAN:**  YOUR HONOR, THIS IS SARAH FABIAN FOR

4     THE GOVERNMENT.

5          THE MEET AND CONFER TODAY WAS ACTUALLY ON PROCESSES

6     RELATED TO POTENTIAL RELIEF FOR EXPANDED CLASS MEMBERS.  AND

7     WE HAVE MET AND CONFERRED AND HAD AN INITIAL CONVERSATION AND

8     HAVE A PLAN FOR FOLLOW-UP, AND IT CONCERNS POTENTIAL REQUESTS

9     FROM PLAINTIFFS FOR SOME OF THOSE PARENTS TO RETURN TO THE

10    UNITED STATES.

11         SO WE ARE BEGINNING DISCUSSION ON THAT TO SEE IF

12    THAT CAN BE RESOLVED WITHOUT THE COURT'S INVOLVEMENT.

13         **THE COURT:**  I SEE.  SO THERE WILL BE A LIST OF

14    PARENTS WHO HAVE BEEN REMOVED WHO WOULD LIKE TO RETURN TO THE

15    UNITED STATES, SIMILAR WITH SOME OF THOSE PARENTS IN THE

16    INITIAL CLASS.  AND THE PARTIES ARE IDENTIFYING THOSE PARENTS

17    AND THEN SEEING WHETHER AN AGREEMENT CAN BE REACHED.  AND, IF

18    NOT, THEN I WOULD ANTICIPATE MOTIONS LIKE WE HAD THE FIRST

19    TIME AROUND.  IS THAT CORRECT?

20         **MS. FABIAN:**  THAT IS CORRECT, YES.

21         **THE COURT:**  OKAY.  THANK YOU.

22         **MR. GELERNT:**  YES, YOUR HONOR.  THIS IS MR. GELERNT.

23         THAT IS CORRECT.  AND WE THINK THAT TODAY'S

24    DISCUSSION WAS FRUITFUL, AND WE ARE TAKING IT FROM THERE WITH

25    THE GOVERNMENT, AND WE WILL KEEP YOU APPRISED.


                    OCTOBER 22, 2020

1        **THE COURT:**  OKAY.  DO YOU HAVE A NUMBER AT THIS

2 POINT, A BALLPARK NUMBER, OF HOW MANY PARENTS ARE REMOVED THAT

3 WANT TO RETURN?

4        **MR. GELERNT:**  WE ARE STILL TRYING TO FIGURE THAT

5 OUT.  I THINK THAT MANY PARENTS WOULD LIKE TO RETURN TO THE

6 UNITED STATES.  BUT WE ARE CONTINUING TO SCREEN THEM IN LIGHT

7 OF THE COURT'S ORDER RELATED TO THE ORIGINAL CLASS.

8        **THE COURT:**  OKAY.  FAIR ENOUGH.  AND I WAS GOING TO

9 INQUIRE ABOUT THAT.  IT SEEMS TO ME THAT THERE IS A ROADMAP

10 OUT THERE, AND SO I WILL ASK COUNSEL TO DO EXACTLY WHAT YOU

11 JUST SUGGESTED.  SO WE WILL DEFER THAT DISCUSSION UNTIL THE

12 NEXT STATUS REPORT.

13        ON THE UIP PROGRAM, LET'S SAVE THAT UNTIL THE END.

14 WE WILL COME BACK TO THAT.

15        WITH RESPECT TO THE EXPANDED CLASS, AND FOCUSING ON

16 THE 1,030 CHILDREN, THERE IS AN INDICATION -- AND, MR. HERZOG,

17 I AM A LITTLE CONFUSED ON THIS.

18        IS THE NUMBER 470 OR APPROXIMATELY 359 PARENTS IN

19 THE EXPANDED CLASS THAT HAVE BEEN REMOVED WITHOUT THEIR

20 CHILDREN?

21        **MR. HERZOG:**  I AM JUST LOOKING TO SEE WHERE YOU FIND

22 THIS NUMBER.  THE NUMBER WHO WE BELIEVE ARE OUT OF THE COUNTRY

23 WHO HAVE BEEN REMOVED IS APPROXIMATELY TWO-THIRDS OF THE

24 TOTAL.

25        **THE COURT:**  YES.  SO IF MY MATH IS CORRECT, ISN'T

OCTOBER 22, 2020

1    THAT 359, APPROXIMATELY?

2              MR. HERZOG:  OF WHAT GROUP?

3              THE COURT:  WELL, THERE IS A REFERENCE TO 545

4    CHILDREN --

5              MR. HERZOG:  YES.

6              THE COURT:  -- FOR WHOM THE STEERING COMMITTEE HAS

7    NOT YET REACHED THE PARENTS.  AND THEN AN INDICATION THAT

8    TWO-THIRDS OF THOSE PARENTS HAVE BEEN REMOVED WITHOUT THEIR

9    CHILD.

10             MR. HERZOG:  YES, I THINK YOU ARE APPROXIMATELY

11   CORRECT.  YES, I THINK YOU ARE READING THAT CORRECTLY.

12             THE COURT:  OKAY.  SO THEN THERE IS ANOTHER

13   REFERENCE -- LET'S SEE.  THERE WAS A REFERENCE TO 470.  I AM

14   HAVING TROUBLE LOCATING THAT.

15             MR. HERZOG:  YES.  IT IS ON PAGE 8, THE PARENTS AND

16   THEIR RESPECTIVE ORIGIN.

17             THE COURT:  YES.  THANK YOU.  PAGE 8 AT LINE 13.

18             SO I WAS CONFUSED ABOUT THAT NUMBER.  IS THAT 470

19   PARENTS REMOVED FROM THE COUNTRY WITHOUT THEIR CHILDREN, OR IS

20   IT THE 359?

21             MR. HERZOG:  I THINK IT IS -- I HAVE TO GO BACK AND

22   CHECK ON THAT.

23             I THINK A NUMBER OF THOSE ARE NOT -- ARE NOT

24   REMOVED.  AND THE NUMBER THAT IS -- YOU KNOW, WE HAVE A NUMBER

25   THAT JUSTICE IN MOTION IS WORKING ON, WHICH IS REFLECTED A


                        OCTOBER 22, 2020

1    LITTLE BIT FURTHER IN THE REPORT.

2            **THE COURT:**  OKAY.  SO YOUR BEST ESTIMATE, THEN, IS

3    THAT THE APPROXIMATE NUMBER OF PARENTS REMOVED WITHOUT

4    CHILDREN IS 359, OR 66 PERCENT OF 545.

5            **MR. HERZOG:**  THAT'S MY UNDERSTANDING, YES.

6            **THE COURT:**  OKAY.  THANK YOU.

7            AND THEN, MR. HERZOG, WILL YOU LET US -- GIVE US AN

8    OVERVIEW.  THERE SEEMS TO BE SOME GOOD NEWS HERE ABOUT LIMITED

9    ON-GROUND EFFORTS THAT HAVE RECOMMENCED.  CAN YOU LET US KNOW

10   WHERE AND WHAT THIS LOOKS LIKE?

11           **MR. HERZOG:**  THAT IS -- THOSE ARE EFFORTS IN CENTRAL

12   AMERICA, I BELIEVE IN ALL OF THE COUNTRIES BUT, YOU KNOW,

13   HONDURAS, GUATEMALA, EL SALVADOR, AND MEXICO.

14           AND THE JUSTICE IN MOTION DEFENDERS, WHERE IT IS

15   SAFE AND WHERE, IN THEIR JUDGMENT, YOU KNOW, WHERE IT IS

16   APPROPRIATE HAVE BEEN -- WE HAVE RECOMMENCED THE ON-THE-GROUND

17   EFFORTS.

18           AND IN THE LAST SIX TO EIGHT WEEKS, AT LEAST SINCE

19   THE LAST STATUS CONFERENCE, WE HAVE FOUND AN ADDITIONAL 47 --

20   PARENTS OF 47 CHILDREN.  SO THOSE EFFORTS, YOU KNOW,

21   RECOMMENCING THEM HAS BEEN -- HAS LED TO SOME PROGRESS, YES.

22           **THE COURT:**  AND THE 47 CHILDREN THAT YOU HAVE

23   CONTACTED, THAT IS AS A RESULT OF THE RENEWED EFFORTS, THE

24   BOOTS ON THE GROUND IN CENTRAL AMERICA AND MEXICO?

25           **MR. HERZOG:**  YES.


OCTOBER 22, 2020

1        **THE COURT:**  OKAY.  EXCELLENT.

2        AND DO YOU HAVE AN ESTIMATE AS TO, ON A SCALE OF ONE

3   TO TEN, WHAT THIS -- WHERE WE ARE AS FAR AS RAMPING UP?  YOU

4   HAVE INDICATED LIMITED ON-THE-GROUND EFFORTS.  HOW IS THAT

5   RELATIVE TO FULL-SCALE SEARCH FOR ALL OF THE PARENTS, ASSUMING

6   NO PANDEMIC?

7        **MR. HERZOG:**  I THINK -- I MEAN, IT IS HARD FOR ME TO

8   QUANTIFY IT.  I DON'T KNOW IF THAT IS SIX, SEVEN, TEN, WOULD

9   BE PRETTY ARBITRARY, TO BE FRANK.

10       BUT THERE ARE AREAS WHERE DEFENDERS CAN GO AND AREAS

11  WHERE THEY CANNOT.  IT DEPENDS ON, YOU KNOW, IF, FOR EXAMPLE,

12  THERE IS A CASE IN A VILLAGE AND THE VILLAGE IS CLOSED FOR

13  PANDEMIC REASONS SO -- AND, YOU KNOW, SOME DEFENDERS ARE

14  WORKING ON TRYING TO WORK THROUGH A COMBINATION OF TELEPHONE

15  AND IN PERSON.  AND, YOU KNOW, THEY ARE TRYING TO DO WHAT THEY

16  CAN GIVEN THE LIMITATIONS.

17       BUT WE -- YOU KNOW, THEY, IN THEIR JUDGMENT, AND

18  JUSTICE IN MOTION DEEMED IT SAFE ENOUGH TO RECOMMENCE EFFORTS

19  IN A NUMBER OF PLACES.  AND AS YOU DESCRIBED WE ARE HAVING --

20  WE DID FIND A NUMBER OF ADDITIONAL PARENTS.

21       SO HOPEFULLY THE TREND FOR THE PANDEMIC WILL -- I

22  MEAN, NOBODY KNOWS.  BUT IF IT REMAINS SAFE THEN WE WILL

23  CONTINUE OUR EFFORTS, OR EVEN EXPAND THEM IF IT BECOMES SAFER.

24  AND IF IT CHANGES IN THE OTHER DIRECTION, WE WILL HAVE TO GO

25  IN THE OTHER DIRECTION.


                        OCTOBER 22, 2020

1    THE COURT:  ALL RIGHT.  SO I AM UNDERSTANDING FROM

2    THE JOINT STATUS REPORT THAT THE STEERING COMMITTEE WILL KEEP

3    DOING WHAT IT IS DOING, AND INCREASE ITS EFFORTS AS THE

4    PANDEMIC RECEDES OR PERMITS.  AND WE JUST STAY THE COURSE,

5    JUST DO WHAT WE HAVE BEEN DOING.  IS THAT CORRECT?

6    MR. HERZOG:  YES.

7    AND I AM ADVISED ACTUALLY THAT I THINK IT IS -- IT

8    IS ABOUT MAYBE 30 PERCENT.  I DON'T KNOW WHAT THE SCALE IS,

9    BUT THERE ARE A GOOD NUMBER OF DEFENDERS THAT HAVE NOT BEEN

10   ABLE TO COMMENCE EFFORTS.  SO WHEN THEY CAN GO FULL SCALE I

11   THINK WE CAN GO MORE QUICKLY.  HOPEFULLY THAT WILL HAPPEN

12   SOON.

13   THE COURT:  OKAY.  SO THE 30 PERCENT IS JUST A ROUGH

14   APPROXIMATION OF DEPLOYMENT OF JUSTICE IN MOTION PERSONNEL ON

15   THE GROUND?

16   MR. HERZOG:  CORRECT.

17   THE COURT:  ALL RIGHT.  THANK YOU.

18   MS. FABIAN:  YOUR HONOR, THIS IS SARAH FABIAN.

19   I WANTED TO HIGHLIGHT ONE POINT THAT I WAS ABLE TO

20   SPEAK TO MR. HERZOG ABOUT THIS MORNING AS WELL.

21   IN CONSIDERATION OF THESE EFFORTS, I WAS ABLE -- I

22   REACHED OUT TO COMMANDER WHITE YESTERDAY JUST TO DISCUSS

23   WHETHER THERE WERE EFFORTS THAT THE GOVERNMENT COULD CONSIDER

24   TO ASSIST WITH MR. HERZOG'S EFFORTS.

25   AND WHAT COMMANDER WHITE OFFERED -- HE IS DETAILED

OCTOBER 22, 2020

1    ELSEWHERE AT THE MOMENT, BUT HE DID OFFER TO HAVE A MEET AND

2    CONFER OF SORTS WITH MR. HERZOG AND HIS TEAM.  AND WE WOULD

3    SIT DOWN AND DISCUSS WHETHER -- YOU KNOW, IF MR. HERZOG CAN

4    EXPLAIN SOME OF THE EFFORTS TO COMMANDER WHITE, WHETHER

5    COMMANDER WHITE MIGHT HAVE IDEAS AND SUGGESTIONS ON WAYS THAT

6    WE COULD HELP WITH THE EFFORT OR THAT WOULD -- THAT WOULD

7    FURTHER ASSIST THE EFFORTS THAT THE STEERING COMMITTEE IS

8    MAKING.

9            SO I APPRECIATE COMMANDER WHITE'S OFFER ON THAT

10   FRONT.  AND I REACHED OUT TO MR. HERZOG, AND HE THOUGHT THAT

11   WAS A GOOD IDEA.  SO THAT IS SOMETHING WE WILL BE SETTING UP

12   IN THE NEAR FUTURE AS WELL.

13           **THE COURT:**  ALL RIGHT.  THAT IS EXCELLENT.  AND I

14   ENCOURAGE THE PARTIES TO CONTINUE TO DO THAT.

15           WHEN THIS PROCESS STARTED WITH THE FIRST CLASS,

16   INITIALLY THE EFFORTS WERE SET UP TO BE JOINT EFFORTS TO

17   LOCATE PARENTS INVOLVING PLAINTIFFS' STEERING COMMITTEE AND

18   THE GOVERNMENT DEPARTMENT OF STATE AND OTHER OFFICIALS.  AND

19   SO THAT KIND OF COORDINATED EFFORT, I THINK, CAN BE, OF

20   COURSE, VALUABLE.  MAY BE REQUIRED, IF NECESSARY.

21           BUT I THINK IT IS FAIR TO SAY AS TIME WENT ON WITH

22   THE FIRST CLASS, THE STEERING COMMITTEE WAS VERY EFFECTIVE ON

23   ITS OWN, THROUGH JUSTICE IN MOTION AND OTHERS, IN LOCATING

24   THOSE PARENTS.  BUT IT SEEMS TO ME THAT IF THERE IS MORE

25   CHALLENGES WITH THIS EXPANDED CLASS THAT THE GOVERNMENT

OCTOBER 22, 2020

1    CERTAINLY COULD BE OF SOME ASSISTANCE IN SOME MANNER.

2              I WOULD SIMPLY DEFER TO YOU, MR. HERZOG, AND

3    COMMANDER WHITE.  AND HOPEFULLY WITH THE PARTIES ACTING

4    TOGETHER THE MOST ROBUST EFFORT CAN BE ORCHESTRATED TO LOCATE

5    THESE REMAINING PARENTS.

6              MR. HERZOG, ANYTHING IN ADDITION ON THAT?

7              **MR. HERZOG:**  NO.  I MEAN, WE ARE -- AS MS. FABIAN

8    INDICATED, YOU KNOW, WE ARE HAPPY TO TALK TO COMMANDER WHITE,

9    WHO HAS, OF COURSE, BEEN HELPFUL IN A NUMBER OF WAYS THROUGH

10   THIS PROCESS.

11             AND, YOU KNOW, WE ARE HOPEFUL -- WHAT WOULD BE MOST

12   HELPFUL TO US NOW IS TO GET UPDATED DATA, UPDATED CONTACT

13   INFORMATION.  I AM NOT SO CONFIDENT THE GOVERNMENT HAS THAT,

14   BUT WE ARE LOOKING FOR IT.  AND WE ARE HAPPY TO WORK WITH THEM

15   IN THAT WAY, OR IF THERE ARE OTHER WAYS AS WELL THAT THEY CAN

16   BE HELPFUL.  AND OF COURSE WE ARE HAPPY TO TALK TO HIM AND TRY

17   TO COOPERATE.

18             **THE COURT:**  THANK YOU.  I WILL LOOK FORWARD TO AN

19   UPDATED REPORT ON THAT AT THE APPROPRIATE TIME.

20             ONE PROBLEM THAT WAS IDENTIFIED IN THE JOINT STATUS

21   REPORT AT PAGE 11 IS THE PLAINTIFFS' CONCERN, THE INABILITY TO

22   OBTAIN THE LOCATION OF THE PARENTS WHO ARE IN MARSHAL'S

23   CUSTODY, AND A REFERENCE TO THE HHS INSPECTOR GENERAL REPORT

24   AND REFERENCE THAT THERE IS NO CURRENT AGREEMENT REQUIRING DOJ

25   OR B.O.P. TO COORDINATE WITH O.R.R.


                         OCTOBER 22, 2020

1          AND THAT SEEMS TO BE A PROBLEM THAT IS NOT YET

2     ADDRESSED, EVEN WITH THE UIP.  AS I UNDERSTAND MR. COSTELLO'S

3     DECLARATION THAT'S THE GAP, IS THE UIP FOCUSES ON IMMIGRATION

4     DETENTION AND DHS, AND SPECIFICALLY ICE AND CBP, BUT LEAVES

5     OUT DOJ OR B.O.P.  AND SO PERHAPS WE CAN MOVE TO THAT ISSUE

6     NOW.

7          MR. COSTELLO, WHY IS THAT?

8          **MR. COSTELLO:**  GOOD AFTERNOON, YOUR HONOR.

9          SO AT THIS TIME WE ARE IN, YOU KNOW, AS I DETAILED

10    IN THE DECLARATION, WE ARE IN PHASE 2, WHICH NEVER

11    CONCENTRATED ON SOME OF THE INFORMATION SHARING BETWEEN THE

12    DHS ELEMENTS, OURSELVES, IMMIGRATION AND CUSTOMS ENFORCEMENT,

13    AND HHS, OFFICE OF REFUGEE RESETTLEMENT.

14         WE ARE NOT CURRENTLY WORKING ON DATA FEEDS THAT

15    WOULD ENABLE US, IF A PERSON IS TRANSFERRED TO CRIMINAL

16    CUSTODY, WHICH WOULD BE BUREAU OF PRISONS OR THE MARSHALS

17    SERVICE, THAT INFORMATION, WE WOULD SHOW THAT THAT TRANSFER

18    HAPPENED IF THE PERSON WAS WITHIN THE IMMIGRATION PROCESS AND

19    HAD BEEN TRANSFERRED TO, YOU KNOW, THE BUREAU OF PRISONS OR

20    MARSHALS SERVICE, BUT WE WOULDN'T BE ABLE TO PROVIDE THE

21    LOCATION OF THE ADULT THAT TRANSFERRED TO THOSE AGENCIES.

22         **THE COURT:**  SO --

23         **MR. COSTELLO:**  WITHIN UIP.

24         **THE COURT:**  -- AS I UNDERSTAND IT, IN LOOKING AT

25    YOUR DECLARATION, PARAGRAPH -- IT IS ON PAGE 5, PARAGRAPH 9A.


                    OCTOBER 22, 2020

```
 1    IT APPEARS IF THE SYSTEM IS BUILT OUT AS YOU SET OUT IN YOUR
 2    DECLARATION, AND SO THE SYSTEM IS COMPLETED, WE HAVE GONE
 3    THROUGH ALL THREE PHASES, WHAT WOULD HAPPEN IF A PARENT IS IN
 4    CRIMINAL CUSTODY, SO THEY ARE IN THE MARSHAL'S DETENTION OR A
 5    B.O.P. FACILITY, THE PARENT DEFENDANT WOULD, HIMSELF OR
 6    HERSELF OR THROUGH THEIR ATTORNEY, HAVE TO CONTACT HHS.  AND
 7    THROUGH THAT CONTACT, THROUGH A CONTACT WITH O.R.R., THEY
 8    WOULD LEARN WHERE THEIR CHILD IS.  IS THAT CORRECT?
 9              MR. COSTELLO:  I BELIEVE SO, YOUR HONOR.  ALTHOUGH
10    THAT WOULD BE A MATTER OF HHS'S POLICIES OR PROCEDURES WHICH I
11    MAY NOT BE ABLE TO SPEAK TO.
12              I CAN SAY THAT WITHIN THE UIP WE WOULD BE ABLE TO
13    TELL THE LOCATION OF THE CHILD.  I WOULDN'T BE ABLE TO SPEAK
14    TO THE PROCESSES FOR A PARENT THAT MAYBE IS IN CUSTODY OF THE
15    BUREAU OF PRISONS OR THE MARSHALS SERVICE, PROCESSES THAT THEY
16    WOULD FOLLOW TO GAIN THE KNOWLEDGE OF WHERE THEIR CHILD IS
17    LOCATED.
18              THE COURT:  THEN THE --
19              MS. FABIAN:  YOUR HONOR --
20              THE COURT:  LET ME FINISH HERE, AND THEN, MS.
21    FABIAN, WE CAN FOLLOW UP.
22              ON THE FLIP-SIDE, FOR THE CHILD, THE FLIP-SIDE OF
23    THE COIN, THE CHILD WOULD NOT KNOW WHERE THE PARENT IS, EXCEPT
24    THAT THEIR PARENT IS IN B.O.P. CUSTODY.  THE CHILD WOULD THEN
25    LEARN WHERE THE PARENT IS ONCE THE PARENT IS MOVED FROM
```

OCTOBER 22, 2020

 1   CRIMINAL CUSTODY TO ICE DETENTION.  IS THAT CORRECT?

 2             MR. COSTELLO:  SO, UIP WOULD SHOW THAT, ALTHOUGH THE

 3   BUREAU OF PRISONS AND MARSHALS SERVICE DOES PROVIDE LOCATOR

 4   SERVICES, SO I COULDN'T SPEAK TO THAT.  WITHIN UIP, AGAIN, IT

 5   IS A GOVERNMENT SYSTEM, SO WE HAVE ACCESS TO IT, THE CHILD

 6   DOES NOT.  BUT IF PEOPLE DO TRANSFER BACK INTO -- IF THEY DO

 7   MOVE FROM DOJ CUSTODY OR THEY ARE, YOU KNOW, OUTSIDE OF DHS,

 8   IF THEY DID MOVE BACK INTO ICE'S CUSTODY, YES, THAT WOULD SHOW

 9   IN UIP.

10             THE COURT:  AND IS THERE ANY REASON, TO YOUR

11   KNOWLEDGE, WHY B.O.P. IS NOT INVOLVED IN THIS?  SO, FOR

12   EXAMPLE, THE HHS INSPECTOR GENERAL REPORT INDICATES THERE IS

13   NO CURRENT AGREEMENT REQUIRING DOJ TO COORDINATE WITH O.R.R.

14   SHOULDN'T THERE BE, OR COULDN'T THERE BE, SUCH AN AGREEMENT?

15             AND PERHAPS, MS. FABIAN, YOU CAN SPEAK TO THAT.

16             MS. FABIAN:  YES.  YOUR HONOR, I THINK I -- I WANT

17   TO HIGHLIGHT SORT OF SOMETHING THAT MR. COSTELLO ALLUDED TO,

18   WHICH IS THAT I THINK TO START I WANT TO PLACE UIP IN A -- AS

19   PART OF A MORE COMPREHENSIVE, YOU KNOW, I GUESS, SYSTEM, I

20   WILL SAY, FOR HOW ALL OF THIS INFORMATION IS EXCHANGED.  I DO

21   WANT TO HIGHLIGHT THAT.

22             YOU KNOW, MR. COSTELLO IS TALKING ABOUT THE

23   CAPABILITIES OF UIP.  AND UIP, I THINK AS I DESCRIBED LAST

24   TIME, IS A SYSTEM THAT IS BEING DEVELOPED BY, YOU KNOW, AN

25   INTERAGENCY PROCESS THAT IS -- IT IS SERVING TO BE A SOLUTION

OCTOBER 22, 2020

1   TO A LOT OF THE ISSUES THAT WE HAVE DISCUSSED IN THIS

2   LITIGATION, BUT IT IS NOT DESIGNED SPECIFICALLY TO ADDRESS THE

3   OVERALL LITIGATION CONCERNS.  AND THERE ARE OTHER PIECES TO

4   THE PROCESS THAT DO SORT OF FILL IN THE GAPS THAT WE BELIEVE

5   ARE PART OF THIS LITIGATION PROCESS.

6           SO I DO WANT TO SORT OF HIGHLIGHT THAT TO THE

7   EXTENT, YOU KNOW, MR. COSTELLO IS TALKING ABOUT THE

8   CAPABILITIES OF UIP, THE FACT THAT IT -- THAT SOMETHING MIGHT

9   NOT BE PART OF UIP INFORMATION SHARING DOESN'T MEAN THAT THE

10  GOVERNMENT DOESN'T HAVE -- ALREADY HAVE IN PLACE OR, YOU KNOW,

11  IS ABLE TO PUT INTO PLACE PROCESSES FOR THAT COMMUNICATION.

12          SO THAT IS SORT OF THE BIG PICTURE POINT I WANT TO

13  HIGHLIGHT.

14          AS FAR AS SOME OF THE COMMUNICATION THAT YOU ARE

15  TALKING ABOUT, AS FAR AS -- YOU KNOW, WE ARE TALKING ABOUT

16  LEGAL SERVICE PROVIDERS FOR THE CHILDREN LOCATING THE PARENT.

17  THERE IS A -- YOU KNOW, THERE ARE MARSHAL SERVICE AND B.O.P.

18  DATABASES THAT CAN PROVIDE INFORMATION ON THE LOCATION OF THE

19  PARENT.  THOSE ARE SORT OF SEPARATE AND APART.  THOSE ARE

20  DATABASES RUN BY THOSE ENTITIES.  AND THAT IS SOMETHING THAT

21  CAN BE DONE.

22          IT IS THE GOVERNMENT'S POSITION THAT AS A GENERAL

23  MATTER, YOU KNOW, THE LSP'S NEEDING INFORMATION RELATED TO

24  THEIR REPRESENTATION OF THE MINORS ARE TO SOME EXTENT OUTSIDE

25  OF THIS LITIGATION.


                    OCTOBER 22, 2020

 1            YOU KNOW, THERE IS -- LIKE I SAID, THERE IS A SYSTEM

 2    THAT WILL ALLOW THEM TO IDENTIFY THAT INFORMATION THROUGH --

 3    THROUGH THE EXISTING INFORMATION AVAILABILITY OF THOSE.  AND

 4    THAT -- OTHERWISE IT IS THE GOVERNMENT'S POSITION THAT THOSE

 5    ARE SOMEWHAT OUTSIDE THE PROCESSES OF THIS LITIGATION.

 6            I DO WANT TO HIGHLIGHT, YOU KNOW, YOUR HONOR POINTED

 7    TO THE ISSUE LAST -- AT OUR LAST DISCUSSION OF THE OTHER SIDE,

 8    THE PARENT IN CRIMINAL CUSTODY TRYING, YOU KNOW, WANTING TO

 9    LOCATE THEIR CHILD.

10            AND THERE IS -- THE TEAR SHEET, I THINK, IS A NEW

11    DEVELOPMENT SINCE SORT OF THE CONCERNS THAT YOU -- YOUR HONOR

12    WAS HIGHLIGHTING IN OUR LAST DISCUSSION.  AND THAT -- THE TEAR

13    SHEET DOES PROVIDE THE PARENT WITH THE INFORMATION ON HOW TO

14    REACH OUT TO O.R.R. AND LOCATE THE CHILD.

15            ADDITIONALLY -- AND THIS IS SOMETHING I HAVE JUST

16    BEEN DISCUSSING WITH CBP, IN FACT THIS MORNING.  YOU KNOW,

17    EVEN THOUGH THE DEPARTMENT OF JUSTICE WOULDN'T NECESSARILY

18    HAVE ACCESS TO THE UIP AT THIS TIME, AS DISCUSSED, THE

19    RELATIONSHIP BETWEEN DHS AND THE U.S. ATTORNEYS ON THE BORDER

20    AND, YOU KNOW, WE HAVE DISCUSSED SORT OF SOME OUTREACH BETWEEN

21    THE DEPARTMENT OF JUSTICE AND DHS TO MAKE SURE THAT THE U.S.

22    ATTORNEY'S OFFICES ARE AWARE THAT THEY CAN REACH OUT TO DHS,

23    TO BOTH CBP AND ICE, AND, YOU KNOW, THOSE ENTITIES WORK PRETTY

24    CLOSELY ALREADY.

25            AND SO THERE IS THE ABILITY FOR THE U.S. ATTORNEY'S


                    OCTOBER 22, 2020

1    OFFICE, CERTAINLY, TO OBTAIN THAT INFORMATION FROM THEIR SORT

2    OF COUNTERPART THERE AT DHS USING THE UIP.  SO THAT DOES ALLOW

3    THE UIP TO ASSIST IN THAT PROCESS EVEN IF NOT COMPLETELY --

4    DIRECTLY IT DOES ALLOW FOR A PROCESS THAT WOULD GET THAT

5    INFORMATION TO THE U.S. ATTORNEY.

6              **THE COURT:**  IT WOULD MAKE SENSE TO ME THAT THESE TWO

7    AGENCIES, B.O.P. AND DOJ, AND O.R.R. HHS, WOULD HAVE SOME KIND

8    OF AN AGREEMENT SO THAT THIS LOOPHOLE IS CLOSED, SO THAT THE

9    PARENTS IN CRIMINAL CUSTODY HAVE A MECHANISM TO LEARN WHERE

10   THEIR CHILD IS.  THE EXECUTIVE BRANCH AGENCIES THEMSELVES,

11   THROUGH THE INSPECTOR GENERAL, ARE SAYING IT OUGHT TO BE SO,

12   AS I READ THESE I.G. REPORTS.

13             SO IS THAT SOMETHING, MS. FABIAN, THAT YOU

14   CONTEMPLATE BEING IN THE WORKS, OR IS IT SOMETHING THAT WE

15   HAVE TO DISCUSS FURTHER?

16             **MS. FABIAN:**  I DON'T BELIEVE THAT THAT IS

17   CONTEMPLATED.  WHAT I WILL SAY IS MY UNDERSTANDING -- AND HHS,

18   I HAVE HAD SEVERAL DISCUSSIONS WITH THEM RECENTLY OF LOOKING

19   INTO THE ISSUE.  AND THEY HAVE CONFIRMED THAT THEY DO, YOU

20   KNOW, RECEIVE CALLS FROM THE -- FROM PRISONS INTO THEIR

21   LOCATOR SYSTEM.  AND THAT, YOU KNOW, THOSE CALLS IN WOULD BE

22   TO LOCATE CHILDREN.

23             AND THAT A PARENT CALLING FROM ANY OF THE -- THAT IS

24   THE INFORMATION THEY GIVE IN THE TEAR SHEET WHICH IS HOW TO

25   CALL AND HOW TO LOCATE THEIR CHILD.  AND THAT DOES IN FACT

OCTOBER 22, 2020

1    HAPPEN AS FAR AS WE CAN TELL FROM THE SYSTEM.

2              AND CONVERSELY, YOU KNOW, I HAVE ASKED FOR

3    PLAINTIFFS, IT WOULD BE HELPFUL TO KNOW IF WE ACTUALLY HAVE A

4    SITUATION WHERE A PARENT IS IN THE CRIMINAL SYSTEM AND HAS

5    CALLED AND HAS BEEN UNABLE TO OBTAIN THAT INFORMATION, THAT

6    WOULD BE HELPFUL TO KNOW.

7              BUT, YOU KNOW, THE SOLUTION THAT WAS DEVELOPED THERE

8    WAS THE TEAR SHEET AND, YOU KNOW, TO MAKE SURE THAT THE PARENT

9    HAS THE INFORMATION WHILE THEY ARE IN CRIMINAL CUSTODY TO MAKE

10   THAT CALL AND LOCATE THEIR CHILD.

11             I AM NOT AWARE OF ANY SITUATIONS WHERE THAT IS

12   NOT -- THAT IS NOT WORKING.  BUT, YOU KNOW, IF THAT'S THE CASE

13   THAT WOULD CERTAINLY BE HELPFUL TO KNOW BECAUSE, YOU KNOW, WE

14   CAN THEN DISCUSS WHETHER THERE IS A FIX FOR THAT.

15             **THE COURT:**  OKAY.

16             MR. GELERNT, WHAT IS YOUR VIEW ON THIS?

17             **MR. GELERNT:**  YOUR HONOR, WITH THE COURT'S

18   PERMISSION I AM GOING TO HAVE MR. GALINDO, FROM OUR OFFICE,

19   ADDRESS THAT.

20             **THE COURT:**  YES.

21             MR. GALINDO.

22             **MR. GALINDO:**  THANK YOU, YOUR HONOR.

23             I THINK YOUR HONOR HAS POINTED OUT SOME OF THE SAME

24   CONCERNS THAT WE HAVE.  I WOULD JUST NOTE THAT WITHIN SOME OF

25   THOSE INSPECTOR GENERAL REPORTS ARE REPORTS FROM O.R.R. STAFF


OCTOBER 22, 2020

1   SAYING THAT THEY HAVE EXPERIENCED SIGNIFICANT DIFFICULTY

2   OBTAINING INFORMATION ABOUT PARENTS WHO ARE IN THE MARSHALS

3   SERVICE.

4          SO I THINK THE CONCERN IS A LONGSTANDING ONE THAT

5   DATES TO THE BEGINNING OF THIS LITIGATION IN TERMS OF BOTH

6   AGREEMENTS AMONG AGENCIES TO SHARE INFORMATION AND IN TURN

7   WHETHER THAT INFORMATION IS PROVIDED TO THE PEOPLE WHO

8   ULTIMATELY NEED TO HAVE IT, THE CHILDREN AND THE PARENTS.  AND

9   IT SEEMS IF THE AGENCIES WON'T FORM AGREEMENTS TO SHARE THAT

10  INFORMATION IT IS HARD TO ANTICIPATE THAT, FOR EXAMPLE,

11  CHILDREN'S PROVIDERS WILL BE ABLE TO ULTIMATELY FIND OUT WHERE

12  A CHILD'S PARENT IS.

13         AND INDEED WHAT IS NEW IN THIS STATUS REPORT AND

14  FILED ALONGSIDE IS, I THINK, WHAT YOU WOULD EXPECT AS A RESULT

15  OF NOT HAVING THOSE SORTS OF FORMAL AGREEMENTS, WHICH IS THE

16  SURVEY THAT THE LEGAL SERVICES PROVIDERS PROVIDED SHOWING THAT

17  IN ABOUT HALF OF THE CASES PEOPLE WERE NOT ABLE TO FIND WHERE

18  AN ADULT WAS IN THE MARSHALS SERVICE.

19         SO I THINK WE WOULD CONCUR WITH THE COURT ABOUT

20  HAVING THAT CONCERN AND BELIEVE IT IS A DEEP PROBLEM THAT HAS

21  TO BE FIXED.

22         **THE COURT:**  ISN'T THAT EASILY REDRESSABLE?  IT SEEMS

23  THAT THAT FALLS PRECISELY WITHIN THE PRELIMINARY INJUNCTION

24  AND THE PROVISION FOR PROVIDING INFORMATION SHARING BETWEEN

25  AND AMONG AGENCIES, ONE OF WHICH IS DOJ.


                    OCTOBER 22, 2020

```
 1            AND SO MR. COSTELLO IS DOING A WONDERFUL JOB DOING
 2    WHAT HE CAN DO, BUT WE HAVE AN INDEPENDENT AGENCY, THROUGH
 3    DOJ, THAT APPEARS TO REMAIN AN OUTLIER IN ALL OF THIS.  THEY
 4    OUGHT TO BE BROUGHT INTO THE FOLD AND MADE PART OF THIS EFFORT
 5    TO HAVE FULL COMMUNICATION BETWEEN AND AMONG THE AGENCIES SO
 6    THAT PARENT AND CHILD CAN KNOW WHERE THEY ARE AND BE MATCHED
 7    UP AT THE APPROPRIATE TIME.
 8            MS. FABIAN:  YOUR HONOR, THIS IS SARAH FABIAN.
 9            I DO WANT TO HIGHLIGHT -- AND I THINK IT MAY BE, YOU
10    KNOW, JUST A MATTER OF DRILLING DOWN ON THIS A LITTLE MORE.
11            BUT AGAIN, I MEAN, LOOK, WHAT WE ARE HEARING IS THAT
12    THE LEGAL SERVICE PROVIDERS ARE, YOU KNOW, SAYING THAT THEY
13    ARE SOMETIMES UNABLE TO OBTAIN THIS INFORMATION FROM O.R.R.
14            THERE IS SOME QUESTION FROM -- YOU KNOW, THAT WE
15    RAISED ABOUT WHAT INFORMATION AGENCIES ARE WILLING TO GIVE
16    COUNSEL WHO REPRESENT CHILDREN ABOUT, YOU KNOW, INDIVIDUALS,
17    LIKE PARENTS, WHO THEY DON'T REPRESENT.
18            THERE IS ALSO, YOU KNOW, I -- I WOULD SAY THAT, YOU
19    KNOW, IN THE INJUNCTION THERE IS THE REQUIREMENT OF
20    COMMUNICATION BETWEEN THE PARENT AND THE CHILD.  AND IT WOULD
21    BE HELPFUL TO KNOW, YOU KNOW, IF WHAT WE ARE REALLY LOOKING AT
22    IS A PROBLEM WHERE CHILDREN IN O.R.R. CUSTODY ARE IN FACT NOT
23    ABLE TO COMMUNICATE WITH THEIR PARENTS.  I THINK THAT IS AN
24    ISSUE THAT WOULD PROPERLY BE WITHIN THIS CASE AND I WOULD -- I
25    THINK WOULD BE, YOU KNOW, SOMETHING THAT WE COULD FOLLOW UP
```

OCTOBER 22, 2020

ON.  AND, YOU KNOW, CONSIDER WHETHER -- WHETHER THERE IS A
SYSTEMS PROBLEM FOR THOSE COMMUNICATIONS.

BUT, YOU KNOW, THE LEGAL SERVICE PROVIDERS, WHO
REPRESENT THE CHILDREN, IDENTIFYING THIS PROBLEM WHEN, YOU
KNOW, THE REPRESENTATION OF THE CHILDREN IS OUTSIDE THE SCOPE
OF THIS LITIGATION IS NOT QUITE THE SAME THING AS IDENTIFYING,
I THINK, WHETHER THERE IS A PROBLEM THAT CHILDREN AND PARENTS
IN CUSTODY AREN'T ABLE TO COMMUNICATE.

SO I DO WANT TO HIGHLIGHT THAT, YOU KNOW, IF THIS IS
AN ISSUE THAT WE ARE GOING TO BE TALKING ABOUT, REALLY WHETHER
SOMETHING IS BEING ORDERED HERE, I WOULD SAY THAT I WOULD NEED
TO KNOW, YOU KNOW, IN THE BRIEFING AND SORT OF A LITTLE MORE
EVIDENCE ON THE SCOPE OF THE PROBLEM AND HOW IT RELATES TO THE
EXISTING LITIGATION.

**THE COURT:**  YES.  LET'S LEAVE IT THIS WAY.

PERHAPS MR. GALINDO AND YOU, MS. FABIAN, GOVERNMENT
COUNSEL, CAN MEET AND CONFER ON THIS ISSUE.  I WOULD REFRAIN
FROM ISSUING ANY ORDERS ABSENT HEARING BACK FROM THE TWO OF
YOU, AND I WOULD LIKE TO LEARN WHAT YOU THINK THE BEST
APPROACH IS.

JUST SPEAKING FROM MEMORY, IT SEEMS TO ME THAT THE
PRELIMINARY INJUNCTION PROVIDES FOR AND DIRECTS ALL OF THE
VARIOUS PARTIES TO COME UP WITH A SYSTEM OF COMMUNICATION
BETWEEN AND AMONG THE AGENCIES, INCLUDING DOJ.  AND THAT THE
INSPECTOR GENERAL FOR THESE VARIOUS EXECUTIVE BRANCH AGENCIES

OCTOBER 22, 2020

1   POINTS THAT OUT, AND INDICATES THIS IS A PROBLEM AND THERE

2   NEEDS TO BE AN MOU OR AN MOA AND IT NEEDS TO BE ADDRESSED.

3           SO IT MAKES PERFECT SENSE TO ME THAT DOJ WOULD BE

4   BROUGHT TO THE TABLE, AND COORDINATE WITH MR. COSTELLO OR

5   OTHER APPROPRIATE INDIVIDUALS SO THAT THIS GAP IN THE

6   COMMUNICATION PROCESS IS ADDRESSED.

7           AND SO I WOULD LIKE THE PARTIES TO MEET AND CONFER

8   ON THAT.  AND IT WOULD MAKE SENSE TO ME, JUST SPEAKING

9   TENTATIVELY, THAT DOJ WOULD COME ONBOARD AND THERE WOULD BE

10  SOME PROCESS PUT IN PLACE WHERE THERE IS AN MOU AND WE ADDRESS

11  THIS.

12          BUT I WOULD DEFER MAKING ANY DECISIONS ON THAT

13  PENDING HEARING FROM THE PARTIES AND GETTING YOUR INSIGHT ON

14  THAT.  SO LET'S DEFER ON THAT TO THE NEXT JOINT STATUS REPORT,

15  BUT ASK THAT THE PARTIES MEET AND CONFER BETWEEN NOW AND THEN.

16          THE ONLY OTHER QUESTION I HAVE ON THIS INFORMATION

17  SHARING OF MR. COSTELLO IS THE TIMING.

18          THERE IS AN INDICATION THAT PHASE 3 -- PHASE 2 WOULD

19  BE COMPLETED BY DECEMBER 2020, WHICH SOUNDS VERY PROMISING,

20  BUT PHASE 3 WOULD NOT CONCLUDE UNTIL TWO YEARS THEREAFTER.  DO

21  YOU THINK IT WILL TAKE THAT LONG; AND IF SO, WHY?

22          **MR. COSTELLO:**  THANK YOU, YOUR HONOR.  THIS IS

23  ROBERT COSTELLO.

24          WE DO THINK WE WILL BE COMPLETING PHASE 2 THIS

25  CALENDAR YEAR, OR RIGHT AROUND THE END OF THE CALENDAR YEAR.


                    OCTOBER 22, 2020

1    PHASE 3 IS A LITTLE BIT MORE INVOLVED AND THERE WILL BE MORE

2    SOFTWARE DEVELOPMENT DURING THAT TIME, SO THAT IS THE TIME IT

3    COULD TAKE AS LONG AS WHAT IS STATED IN THE DECLARATION.  IT

4    IS JUST THAT THE WORK IS A LITTLE BIT MORE INVOLVED DURING

5    THAT TIME PERIOD AS WE WORK OUT SOME OF THE INFORMATION

6    SHARING, AND THINGS LIKE THAT.

7            IT IS POSSIBLE IT COULD FINISH EARLY.  IT DEPENDS

8    ON, YOU KNOW, THE TECHNICAL ASPECTS AS WELL AS SOMETIMES JUST

9    THE WORKING AGREEMENTS, AS WELL AS PRIORITIES AT OTHER

10   AGENCIES.  WE COULD FINISH OUR WORK ON OUR END AND PERHAPS THE

11   OTHER AGENCY SYSTEMS AREN'T QUITE READY OR THEY ARE IN

12   DEVELOPMENT OR THINGS LIKE THAT.

13           SO THE SCHEDULE COULD POTENTIALLY SHIFT TO THE LEFT

14   OR POTENTIALLY TO THE RIGHT A LITTLE BIT DURING THAT

15   TIMEFRAME, JUST DEPENDING ON ALL OF THE TECHNICAL ASPECTS

16   BETWEEN THE DIFFERENT AGENCIES INVOLVED.

17           **THE COURT:**  OKAY.

18           AND FROM THE PLAINTIFFS' PERSPECTIVE, MR. GELERNT OR

19   MR. GALINDO, ANY ADDITIONAL THOUGHTS ON THIS INFORMATION

20   SHARING AND UIP, OR OTHER ISSUES?

21           **MR. GALINDO:**  THIS IS MR. GALINDO.

22           NOT AT THIS TIME, YOUR HONOR.  I THINK THE COURT, IN

23   THE DISCUSSION, HAS DEALT WITH OUR CHIEF CONCERN.

24           **THE COURT:**  OKAY.

25           SO, MR. COSTELLO, AS WE GO FORWARD WITH THESE

OCTOBER 22, 2020

 1   REPORTS I WOULD APPRECIATE YOUR DECLARATIONS, ASK YOU TO KEEP

 2   FILING THEM.  AND TO KEEP MOVING THIS PROCESS AS EFFICIENTLY

 3   AND QUICKLY AS POSSIBLE, WITH UPDATES ON THIS PHASE 3 AND

 4   WHETHER THE TIMING OF IT CAN BE ACCELERATED.  AND IF NOT, WHY

 5   NOT.

 6           BUT THANK YOU FOR THE OVERVIEW THUS FAR, AND I

 7   APPRECIATE ALL OF THE EFFORTS UNDERWAY TO GET THE UIP PROGRAM

 8   AND PLATFORM IN PLACE.

 9           LET'S MOVE ON TO MMM.  IT APPEARS EVERYTHING IS IN

10   ORDER.  THERE IS NOTHING WE NEED TO ADDRESS AT THIS TIME.

11           DO YOU AGREE?

12           **MS. COSTELLO-ESSIG:**  YES.  THIS IS HALEY

13   COSTELLO-ESSIG FOR THE MMM CLASS, AND THAT IS CORRECT.

14               **THE COURT:**  OKAY.  THANK YOU.

15           FOR THE --

16           **MS. COSTELLO-ESSIG:**  YOUR HONOR, MY APOLOGIES.

17           **THE COURT:**  YES.

18           **MR. COSTELLO:**  I BELIEVE THAT THE ATTORNEYS FOR DORA

19   PLAINTIFFS MAY HAVE DIFFICULTY WITH THEIR CONNECTION, AND I

20   HAVE BEEN ASKED TO REPORT THAT IT IS THE SAME AS THIS CASE FOR

21   THEM.

22               **THE COURT:**  OKAY.  THANK YOU.

23           AND FOR LEGAL SERVICE PROVIDERS, MS. WEISS, THANK

24   YOU FOR YOUR SUBMISSION.

25               IT APPEARS A LOT OF PROGRESS HAS BEEN MADE.  THERE


OCTOBER 22, 2020

1    ARE STILL SOME REMAINING ISSUES WHERE THE PARTIES ARE
2    CONTINUING TO MEET AND CONFER.
3            THE LAST PARAGRAPH, THE LAST SENTENCE, THERE IS AN
4    INVITATION FOR THE COURT'S ASSISTANCE IN CLEARING ANY FINAL
5    HURDLES.  WHERE ARE WE ON THAT?  WHAT CAN BE DONE OR WHAT
6    NEEDS TO BE DONE?
7            **MS. WEISS:**  THANK YOU, YOUR HONOR.
8            I THINK THAT SOME OF WHAT HAS ALREADY BEEN DISCUSSED
9    ABOUT INFORMATION SHARING TOUCHES ON THIS.  THE DATA THAT WE
10   COLLECTED -- I MEAN, FIRST OF ALL, I THINK WE HAVE MADE
11   SIGNIFICANT PROGRESS, AND I THINK THAT THAT PROGRESS IS
12   REFLECTED IN THE DATA THAT WE COLLECTED THROUGH THE SURVEY IN
13   THAT IT IS FAR MORE COMMON NOW THAN IT WAS IN JANUARY FOR THE
14   LAWYERS FOR THE CHILDREN TO KNOW WHERE THE PARENT IS, AND TO
15   BE TOLD AT LEAST SOMETHING ABOUT THE BASIS FOR THE SEPARATION.
16   AND SO THAT IS REAL PROGRESS, AND WE ARE REALLY GLAD TO SEE
17   THAT.
18           BUT IN PARTICULAR WHEN THE PARENT IS NOT IN ICE
19   CUSTODY BUT IS INSTEAD IN SOME OTHER SITUATION -- AND THIS
20   WOULD ENCOMPASS THE CUSTODY OF THE U.S. MARSHAL OR RELEASED
21   INTO THE UNITED STATES OR DEPORTED WITHOUT THE CHILDREN -- THE
22   LEGAL SERVICE PROVIDERS ARE STILL HAVING GREAT DIFFICULTY
23   LOCATING THE PARENTS.  IN ABOUT HALF THE CASES -- ONLY IN
24   ABOUT HALF OF THE CASES ARE THEY FINDING THEM WHEN THEY ARE IN
25   THOSE SITUATIONS, AND OFTEN THROUGH INDEPENDENT EFFORTS AND

OCTOBER 22, 2020

1   NOT THROUGH O.R.R.

2            AND, IN ADDITION, THERE IS NOT SHARING BY THE

3   GOVERNMENT FROM THE PARENT IN WHICH THEY EXPRESS THEIR DESIRE

4   WITH REGARDS TO REUNIFICATION THROUGH THE NOTICE OF POTENTIAL

5   RIGHTS OR THROUGH LETTERS OF DESIGNATION WHICH THEY NAMED

6   POTENTIAL SPONSORS.

7            NOW, WE UNDERSTAND COMPLETELY THE CONCERN THAT THE

8   GOVERNMENT EXPRESSES WITH SHARING INFORMATION OF -- FROM THE

9   PARENT WITH THE CHILDREN AND THEIR REPRESENTATIVES WITHOUT THE

10  PARENT'S CONSENT.  BUT IT WOULD SEEM THAT IT IS COMPLETELY

11  WITHIN THE GOVERNMENT'S CONTROL TO ASK THE PARENT WHETHER THIS

12  INFORMATION CAN BE SHARED WITH THE CHILDREN AND THEIR

13  REPRESENTATIVES.

14           BECAUSE AGAIN, WHILE THE REPRESENTATION OF THE

15  CHILDREN BY THEIR CONTRACTED LEGAL SERVICE PROVIDERS IS NOT

16  DIRECTLY WHAT IS IN ISSUE IN THIS CASE, WHAT IS IN ISSUE HERE

17  IS WHETHER CHILDREN CAN BE REMOVED AND/OR PLACED WITH PEOPLE

18  WHO ARE NOT THEIR PARENTS, WHEN THAT IS NOT WHAT THE PARENTS

19  AND CHILDREN WISH.

20           SO WITHOUT SHARING THE PARENTS' WISHES WITH THEIR

21  LAWYERS, IT IS VERY DIFFICULT FOR THEM TO KNOW HOW TO

22  COORDINATE THE REPRESENTATION OF THE CHILDREN WITH THE -- WITH

23  THE DECISION MAKING OF THE PARENT.

24           AND THAT INFORMATION IS IN THE HANDS OF THE

25  GOVERNMENT.  AND, YOU KNOW, MY OWN VIEW IS THAT ASKING THE

OCTOBER 22, 2020

1    PARENT WHETHER IT IS OKAY TO SHARE IT WITH THEIR CHILD AND

2    THEIR CHILD'S LEGAL REPRESENTATIVE IS ALSO IN THE CONTROL OF

3    THE GOVERNMENT.  AND THAT WOULD CLOSE ALSO A SIGNIFICANT

4    INFORMATION GAP BECAUSE OBVIOUSLY A LAWYER REPRESENTING AN

5    EIGHT-YEAR-OLD IN CUSTODY NEEDS TO KNOW WHETHER THE PARENT HAS

6    SAID, DEPORT ME WITHOUT MY CHILD AND PLACE MY CHILD WITH A

7    SPONSOR; OR INSTEAD HAS SAID, I WANT TO BE REUNIFIED WITH MY

8    CHILD IF I AM REMOVED.

9           THOSE ARE JUST CRITICAL THINGS FOR THE CHILDREN'S

10   REPRESENTATIVE TO KNOW.  SO WE HAVE TRIED IN THIS SUBMISSION

11   TO REALLY IDENTIFY THE MOST CRITICAL INFORMATION AND WHERE

12   THERE ARE STILL GAPS.

13          **THE COURT:**  AND WHAT CAN BE DONE TO CLOSE THOSE

14   GAPS?

15          **MS. WEISS:**  ONE THING IS WHAT YOU HAVE DISCUSSED

16   ALREADY, IS COORDINATING -- IS CLOSING THE GAP BETWEEN DOJ

17   CUSTODY AND WHAT IS KNOWN BY O.R.R. SO THAT THIS INFORMATION

18   IS MORE READILY AVAILABLE THROUGH O.R.R. TO THE CHILDREN AND

19   THEIR REPRESENTATIVES.  THAT IS ONE.

20          AND TWO IS, WHEN PARENTS ARE EXPRESSING THEIR WISHES

21   WITH REGARD TO REUNIFICATION OR SPONSORSHIP IT WOULD SEEM TO

22   ME THAT THERE OUGHT TO BE A PROVISION IN THOSE FORMS FOR

23   CONSENT TO SHARE THAT INFORMATION WITH A PARENT'S OWN CHILDREN

24   AND THEIR CHILDREN'S LEGAL REPRESENTATIVE SO THAT THAT

25   INFORMATION CAN ALSO BE ROUTINELY SHARED.


OCTOBER 22, 2020

1          **THE COURT:**  THAT WOULD BE AN EASY FIX, WOULDN'T IT,
2    JUST A MATTER OF CHANGING THE FORM OR ADDING TO IT?
3          **MS. WEISS:**  YES, I WOULD HOPE SO.  I MEAN, PERHAPS
4    -- I PROPOSE FOR MS. FABIAN TO COMMENT ON THAT, BUT I WOULD
5    HOPE THAT WOULD BE AN EASY FIX.  AND THEN THAT INFORMATION
6    COULD BE ROUTINELY SHARED WITH THE LEGAL SERVICE PROVIDERS,
7    WHICH WOULD ENABLE THEM TO PROTECT THE CHILDREN INSOFAR AS,
8    YOU KNOW, JUST TO RESPECT THE WISHES OF THEIR PARENTS IN THEIR
9    REPRESENTATION.
10          **THE COURT:**  YES.
11          MS. FABIAN, ISN'T THAT AN EASY FIX?
12          **MS. FABIAN:**  YOUR HONOR, I THINK THERE IS JUST A
13    FEW ISSUES THAT COME UP.  AGAIN, I THINK, I MEAN, I THINK WE
14    ARE TALKING ABOUT ISSUES THAT COME ON THE BOUNDARIES OF WHAT
15    IS POSSIBLY WITHIN THIS LITIGATION AGAIN.
16          I HAVE TO -- YOU KNOW, FOR CURRENT SEPARATIONS, IN
17    THE VAST MAJORITY OF THOSE CASES THE PARENTS ARE IN FACT NOT
18    GOING TO BE CLASS MEMBERS OF LITIGATION AT ALL.  IN MANY CASES
19    THEY MAY BECOME CLASS MEMBERS WHEN THEY RETURN TO ICE CUSTODY
20    WHICH IS, YOU KNOW, SORT OF SEPARATE AND APART FROM SOME OF
21    THE ISSUES WE ARE TALKING ABOUT.
22          YOU KNOW, I DON'T DISPUTE THAT THESE ARE ISSUES THAT
23    MAY BE IMPORTANT AND WORTH ADDRESSING, AND A LOT OF THEM ARE
24    GOING TO BE ADDRESSABLE ON SORT OF A CASE-BY-CASE BASIS.  BUT
25    I HAVE TO SORT OF MAINTAIN THE GOVERNMENT'S POSITION HERE THAT

OCTOBER 22, 2020

1  WE ARE TALKING ABOUT SORT OF FIXING SOMETHING IN THE CONTEXT

2  OF THE CLASS LITIGATION THAT ISN'T REALLY TIED TO THE CLASS IN

3  THIS LITIGATION.

4        ON THAT SPECIFIC POINT, I WOULD SAY THAT ICE'S

5  POSITION IS, YOU KNOW, YOU ARE ASKING ICE TO OBTAIN SIGNATURES

6  FROM PARENTS WHO ARE -- YOU KNOW, AS TO THE ABILITY TO SHARE

7  INFORMATION, AND THOSE PARENTS MAY OR MAY NOT BE REPRESENTED,

8  YOU KNOW, AND YOU ARE ASKING FOR PERMISSION TO SHARE

9  INFORMATION ABOUT THEM WITH OTHER ATTORNEYS WHO DON'T

10 REPRESENT THEM.

11        I MEAN, THERE HAS BEEN QUESTIONS RAISED IN THIS

12 LITIGATION ABOUT ICE'S -- YOU KNOW, HOW ICE OBTAINS SIGNATURES

13 FROM PARENTS AND WHETHER THAT IS SOMETHING THAT IS

14 APPROPRIATE.

15        SO I DON'T THINK IT IS AS SIMPLE AS, YOU KNOW,

16 PLEASE SIGN HERE TO WAIVE YOUR RIGHT TO PRIVACY OF YOUR OWN

17 INFORMATION, YOU KNOW.  ICE GETTING THOSE SIGNATURES, I

18 IMAGINE THAT CLASS COUNSEL MAY HAVE SOMETHING TO SAY ABOUT

19 THAT.  AND THERE IS -- IT IS NOT, I DON'T THINK, AS SIMPLE AS

20 IS BEING REPRESENTED.

21        AGAIN, OUR POSITION HAS BEEN, YOU KNOW, COUNSEL --

22 IF THE PARENT HAS COUNSEL OR IF THE PARENT DOESN'T HAVE

23 COUNSEL, YOU KNOW, REACHING OUT TO COUNSEL FOR THE CHILDREN

24 AND COORDINATING IT THAT WAY, I MEAN, THAT THEY MIGHT BE ABLE

25 TO REACH SOMETHING THERE.  BUT THAT IS NOT SOMETHING THAT ICE

OCTOBER 22, 2020

1    IS NECESSARILY COMFORTABLE AGREEING TO DO IN ALL CASES.

2              **THE COURT:**  OKAY.

3          **MS. WEISS:**  YOUR HONOR, CAN I JUST RESPOND TO THAT?

4              **THE COURT:**  YES.

5          **MS. WEISS:**  THE CHILDREN'S LAWYERS HAVE NO --

6    TYPICALLY HAVE VERY, VERY, VERY LIMITED MEANS TO REACH THE

7    PARENT TO OBTAIN THEIR CONSENT.  MOST OF THE PARENTS ARE NOT

8    REPRESENTED, AND THEY ARE IN FACILITIES -- IF THEY ARE IN

9    MARSHAL CUSTODY THEY OFTEN DON'T KNOW WHAT FACILITY THEY ARE

10   IN AT ALL.  AND IF THEY ARE IN ICE CUSTODY THEY MAY KNOW WHAT

11   FACILITY THEY ARE IN, BUT COMMUNICATING WITH THEM IS IN FACT

12   VERY, VERY DIFFICULT AND OBTAINING SIGNED DOCUMENTS FROM THEM

13   EVEN HARDER.

14              SO THIS IS NOT A WAIVER OF PRIVACY; THIS IS, YOU CAN

15   SHARE MY INFORMATION WITH MY CHILD AND MY CHILD'S LEGAL

16   REPRESENTATIVE.

17              THIS IS NOT SOME GENERAL WAIVER OF PRIVACY.  I MEAN,

18   MR. GALINDO AND MR. GELERNT CAN CERTAINLY WEIGH IN ON WHETHER

19   IT WOULD BE PROBLEMATIC TO SEEK SUCH CONSENT FROM PARENTS TO

20   SHARE INFORMATION WITH THEIR CHILDREN.

21          **THE COURT:**  OKAY.  PERHAPS WE CAN LEAVE IT THIS WAY

22   WITH THIS DISCUSSION, WHICH I THINK IS A GOOD STARTING POINT

23   ON THE REMAINING ISSUES YOU HAVE IDENTIFIED, MS. WEISS, IS FOR

24   THE PARTIES TO CONTINUE TO DO WHAT THEY HAVE BEEN DOING, TO

25   MEET AND CONFER, WITH THE BENEFIT OF YOU, MS. WEISS, AND MR.


                         OCTOBER 22, 2020

1  GELERNT, MR. GALINDO, MS. FABIAN, MR. STEWART, AND SEE IF

2  AGREEMENT CAN BE REACHED WITH LEGAL SERVICE PROVIDERS AND

3  CLASS COUNSEL IN THE MS. L. CASE ON THESE REMAINING ISSUES.

4             AND THIS CAN BE PART OF THE DISCUSSION THAT I

5  ANTICIPATE MR. GALINDO AND MS. FABIAN WILL HAVE WITH RESPECT

6  TO DOJ AND BRINGING THEM TO THE TABLE WITH THE OTHER EXECUTIVE

7  AGENCIES ON COMMUNICATION SHARING.  AND SO, WITH THAT

8  UNDERSTANDING, IT MAY BE ADVISABLE TO DEFER THESE ISSUES TO

9  THE NEXT STATUS REPORT.

10            IS THERE ANY OTHER THOUGHT OR CONCERNS IN THAT

11 REGARD?

12            **MR. GALINDO:**  NONE FROM MS. L., YOUR HONOR.

13            **MS. FABIAN:**  NONE FROM THE GOVERNMENT, YOUR HONOR.

14            **THE COURT:**  I DON'T HAVE ANY OTHER QUESTIONS.

15            ANYTHING FROM ANY COUNSEL, ANYTHING REMAINING THAT

16 NEEDS TO BE ADDRESSED AT THIS TIME?

17            HEARING NONE, THEN WE WILL -- WHAT I WOULD PROPOSE

18 IS WE MEET AGAIN ON FRIDAY, DECEMBER 4TH.  THAT IS SIX WEEKS

19 OUT, SIX WEEKS AND A DAY, AT 1:30.  AND THAT THE JOINT STATUS

20 REPORT BE FILED ON WEDNESDAY, DECEMBER 2ND.

21            ANY OBJECTION TO THAT SCHEDULING?

22            **MR. GELERNT:**  NOT FROM MS. L., YOUR HONOR.

23            **MS. FABIAN:**  NOT FROM THE GOVERNMENT, YOUR HONOR.

24            **THE COURT:**  OKAY.  VERY GOOD.

25            THANK YOU VERY MUCH.  IT IS ALWAYS A PLEASURE TO


                          OCTOBER 22, 2020

1   MEET WITH COUNSEL, ALBEIT TELEPHONICALLY.

2           WE WON'T BE SPEAKING AGAIN UNTIL AFTER THANKSGIVING,

3   SO I WISH YOU ALL A HAPPY THANKSGIVING.  AND I WILL LOOK

4   FORWARD TO HEARING FROM EVERYONE ON DECEMBER 4.

5           AND AGAIN, THANK YOU, MR. HERZOG, FOR ALL OF THE

6   EFFORTS YOU ARE MAKING.  THIS, OF COURSE, IS THE MOST

7   SIGNIFICANT PIECE REMAINING IS LOCATING THESE PARENTS.  SO I

8   LOOK FORWARD TO THE NEXT STATUS REPORT AND THE PROGRESS THAT

9   HAS BEEN MADE IN THAT REGARD.

10          THANK YOU.

11          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

12          **MS. FABIAN:**  THANK YOU, YOUR HONOR.

13          **MS. WEISS:**  THANK YOU, YOUR HONOR.

14          **THE COURT:**  YOU ARE WELCOME.

15

16                       *   *   *

17          I CERTIFY THAT THE FOREGOING IS A CORRECT
            TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
18          IN THE ABOVE-ENTITLED MATTER.

19          S/LEEANN PENCE                    10/23/2020
            LEEANN PENCE, OFFICIAL COURT REPORTER   DATE
20

21

22

23

24

25

                        OCTOBER 22, 2020