1
2  JEFFREY BOSSERT CLARK
   Acting Assistant Attorney General
3  SCOTT G. STEWART
   Deputy Assistant Attorney General
4  WILLIAM C. PEACHEY
   Director
5  Office of Immigration Litigation
6  WILLIAM C. SILVIS
   Assistant Director
7  Office of Immigration Litigation
8  SARAH B. FABIAN
   Senior Litigation Counsel
9  NICOLE N. MURLEY
10 Senior Litigation Counsel
   Office of Immigration Litigation
11 U.S. Department of Justice
12 Box 868, Ben Franklin Station
   Washington, D.C. 20044
13 Telephone: (202) 532-4824
14 Fax: (202) 616-8962

15
   ADAM L. BRAVERMAN
16 United States Attorney
17 SAMUEL W. BETTWY
   Assistant U.S. Attorney
18 California Bar No. 94918
   Office of the U.S. Attorney
19 880 Front Street, Room 6293
20 San Diego, CA 92101-8893
21 619-546-7125
   619-546-7751 (fax)
22
23 *Attorneys for Federal Respondents-*
   *Defendants*
24
25
26
27
28

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-*
*Plaintiffs*
*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

              Petitioners-Plaintiffs,

     vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

             Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

     The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on December 2, 2020, in anticipation of the status conference scheduled at 1:30 pm on December 4, 2020. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

# I.    DEFENDANTS' POSITIONS

## A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS[1] | DESCRIPTION | NUMBER |
|---|---|---|
| Election Forms[1] | Total number of executed election forms received by the Government | 444 (260 Parents/184 Children)[2] |
| | • Number who elect to receive settlement procedures | 282 (157 Parents/125 Children) |
| | • Number who waive settlement procedures | 162 (103 Parents/59 Children)[3] |
| Interviews | Total number of class members who received interviews | 173[4] |
| | • Parents who received interviews | 91 |
| | • Children who received interviews | 82 |
| Decisions | Total number of CFI/RFI decisions issued for parents by USCIS | 71[5] |

[1] The number of election forms reported here is the number received by the Government as of November 18, 2020.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **69[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **2** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **22** |
| | • Number of parents granted asylum by USCIS | **2** |
| | • Number of parents referred to immigration court | **5** |
| | • Number of children granted asylum by USCIS | **3[9]** |
| | • Number of children referred/returned | **12** |

---

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

| | | |
|---|---|---|
| | to immigration court | |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **109 Parents[10]** |

## B. Expanded Class Members

On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class. In advance of the Court's October 25, 2019 deadline, Defendants completed the process of identifying members of the expanded class and produced spreadsheets identifying those individuals to Plaintiffs' counsel and providing the latest available contact for those individuals from the government's databases.

On February 7, 2020, Defendants reached out to Plaintiffs to request that Plaintiffs provide Defendants with an update regarding their efforts to locate and reunify members of the expanded class. Plaintiffs declined to provide much of the information requested by Defendants. Following multiple meet and confer discussions, on July 5, 2020, Plaintiffs provided Defendants with an updated spreadsheet containing some information on members of the expanded class. Plaintiffs also identified members of that class about whom Plaintiffs requested to meet and confer regarding whether the government would agree to return those

---

[10] This number is as of November 18.

18cv428 DMS MDD

individuals to the United States. The parties are continuing to discuss this issue to determine if it can be resolved or whether it will require intervention from the Court.

Having declined to provide the government with much of the information the government requested regarding the Steering Committee's efforts to contact members of the expanded class, Plaintiffs also never indicated to Defendants any need for additional information or resources to assist their efforts. Nonetheless, since the last status conference on October 22, 2020, Defendants have held multiple meet and confer discussions with Plaintiffs regarding additional information that would assist with those efforts, and have provided spreadsheets containing updated information from at least four different government databases, and expect to provide additional information in the near future. Defendants are continuing to search for additional updated contact information and will provide it to Plaintiffs on a rolling basis.

**C. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

_Data Requested by Plaintiffs_.   Defendants continue to provide Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 Order on a monthly basis. Given the relatively low number of separations, and the fact that Defendants have been complying with the Court's preliminary injunction for more than two years, Defendants propose that going forward they will update Plaintiffs on a quarterly, rather than monthly, basis.

*Processes and Procedures*.

In the May 27, 2020 Joint Status Report, Defendants provided the court with updated reporting regarding the various steps it has taken to implement Paragraph 5 of the preliminary injunction, ECF No. 83 at 24, ¶ 5, and improve the processes and procedures for information sharing between the agencies related to family separations. Following the July 10, 2020 status conference, the Court ordered that "Defendants shall provide a declaration from the Assistant Commissioner of OIT or other appropriate designee setting out the status of the development of the UIP and estimated completion date. The declarant should also address the Court's concerns about how the UIP will enable parents in criminal custody access to their children's location information and how the UIP will assist in reunification efforts when a parent is transferred from criminal custody to immigration custody." ECF No. 543 at 2. Defendants provided that information in the August 19, 2020, Joint Status Report, including a declaration from Robert J. Costello, Executive Director, Office of Information Technology, Enterprise Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security. ECF No. 547. On October 20, 2020, Defendants provided another declaration from Mr. Costello on the progress of the UIP. ECF No. 556-1. In accordance with the Court's most recent Order Following Status Conference, ECF No. 558 at ¶ 3, Defendants attach hereto another

supplemental declaration from Mr. Costello regarding the continued progress of the UIP.

The Court also ordered that the parties "shall continue to meet and confer on the information gap between the Department of Justice (Bureau of Prisons and U.S. Marshal) and the Department of Health and Human Services (ORR)." *Id.* ¶ 1. The parties held a call regarding this issue on December 1, 2020. The government also has an internal call regarding these issues scheduled for December 3, 2020. The government will continue to address this issue internally and with Plaintiffs, and expect to provide a further update to the Court on this issue in the next Joint Status Report.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A.  Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,134 children of expanded class members.  The government has also identified 64 "recategorized" deported parents from the original class, who the Steering Committee has sought to contact as part of its efforts to reach members of the expanded class.[11]  The

---

[11] In its portion of the December 12, 2018 Joint Status Report, the government disclosed the existence of what we call the "Recategorized Original Class", *i.e.*, members of the original class who were not identified as part of the government's initial disclosures in the summer of 2018.  The government only provided contact information for this group in February 2019, after the Steering Committee's efforts to contact original class members had concluded – and so, as a logistical matter, the Steering Committee has conducted outreach to the 64 parents in this group who were deported following separation from their children, as part of the Steering Committee's efforts to contact *expanded* class members.

Steering Committee's recent efforts have been targeted at locating the parents of this group of 1,198 (1,134 plus 64) children.[12]

Of these 1,198 children, the Steering Committee has reached the parents (or their attorneys) of 570 children. This represents an increase of 41 childrens' parents since our last status report. We describe below the status of our continuing efforts to reach the parents of the remaining 628 children.[13]

The 628 children fall into two groups. First, there are approximately 295 children whose parents are believed to have been removed from the United States following separation from their children, and our efforts to locate them in their country of origin are ongoing. Second, there is a group of approximately 333 children whose parents are believed to be in the United States, and efforts to locate them in the United States are also ongoing.

Notably, of the 628 children whose parents we have not yet been in contact with, we have, for 168 of those children, been in touch with another family member.

<u>Steering Committee Efforts to Locate Parents</u>

For all parents with whom the Steering Committee has not yet established contact, the Steering Committee continues to engage in a multi-faceted approach in an attempt to locate and establish communication with the separated parent.

First, as previously reported, the Steering Committee attempts to reach all parents, sponsors and attorneys by telephone. Where those efforts are not successful, the Steering Committee has engaged in time-consuming and arduous

---

[12] Because some of the parents of these children entered with more than one child, there are 1,082 parents in this combined group.

[13] To avoid public confusion, we also explain the 666 number that has been reported in the media. That figure was the number of children whose parents had not been located as of November 5, 2020, which was a few weeks after the last JSR. The parents (or their attorneys) of 3 children were contacted after the last JSR but before November 5, 2020, with parents of an additional 38 children having been contacted after November 5, 2020 (for a total of 41 since our last JSR).

on-the-ground searches for parents in their respective countries of origin. Following a suspension due to the COVID-19 pandemic, limited physical on-the-ground searches for separated parents have resumed where possible to do so while protecting the health of personnel working with the Steering Committee and members of vulnerable communities in separated parents' home countries. The Steering Committee intends to continue physical on-the-ground searches while it remains safe to do so, and will continue to update the Court on its progress, particularly if such searches must be limited or suspended again due to travel restrictions or health risks.

Also, as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class. The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers, and plans to renew its mailing effort with the new address information received for children and their attorneys from the government on November 25, 2020.

Additionally, as previously reported, the Steering Committee has undertaken broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. The Steering

9

18cv428 DMS MDD

Committee continues to work to identify opportunities to broadly disseminate the toll-free numbers through various media to maximize visibility to potential *Ms. L.* class members, including most recently by seeking to collaborate on such media outreach initiatives with other non-profit organizations.  The Steering Committee will continue to update the court on these efforts.

The Steering Committee has also recently received additional contact information for a number of these families from Seneca Family of Agencies ("Seneca"), a non-profit organization that has contracted with the Department of Health and Human Services to connect certain *Ms. L.* class members in the United States with mental health providers, pursuant to a preliminary injunction in *Ms. J.P., et al.* v. *William P. Barr, et al.* (2:18-cv-06081-JAK-SK, C.D. Cal.).  The Steering Committee is re-attempting telephonic communication with all families for whom new contact information is available via Seneca, in addition to the efforts underway using new information provided by the government as described above.

Finally, the Defendants recently provided the Steering Committee with additional information from another government database that had not previously been disclosed (the Executive Office for Immigration Review).  Among other things, the information includes phone numbers that had not previously been disclosed.  Because the information was provided on the Wednesday before Thanksgiving, the Committee has not yet had time to determine the full scope or usefulness of this new information.

**B. <u>Information Sharing</u>**

The parties met and conferred on December 1 on remaining information-sharing issues, and expect continued discussions.

C. **Return of Additional Deported Parents**

The parties are discussing avenues for relief for deported parents, and will continue to meet and confer, and report back to the Court.

III.     ***MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: December 2, 2020                    Respectfully submitted,


                                           /s/ Lee Gelernt
                                           Lee Gelernt*
                                           Judy Rabinovitz*
                                           Anand Balakrishnan*
                                           AMERICAN CIVIL LIBERTIES UNION
                                           FOUNDATION
                                           125 Broad St., 18th Floor
                                           New York, NY 10004
                                           T:  (212) 549-2660
                                           F:  (212) 549-2654
                                           *lgelernt@aclu.org*
                                           *jrabinovitz@aclu.org*
                                           *abalakrishnan@aclu.org*


                                           Bardis Vakili (SBN 247783)
                                           ACLU FOUNDATION OF SAN DIEGO
                                           & IMPERIAL COUNTIES
                                           P.O. Box 87131
                                           San Diego, CA 92138-7131
                                           T: (619) 398-4485
                                           F: (619) 232-0036
                                           *bvakili@aclusandiego.org*


                                           Stephen B. Kang (SBN 292280)
                                           Spencer E. Amdur (SBN 320069)
                                           AMERICAN CIVIL LIBERTIES UNION
                                           FOUNDATION
                                           39 Drumm Street
                                           San Francisco, CA 94111
                                           T:  (415) 343-1198
                                           F:  (415) 395-0950
                                           *skang@aclu.org*
                                           *samdur@aclu.org*


                                           *Attorneys for Petitioners-Plaintiffs*
                                                  *Admitted Pro Hac Vice*

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

13                                    18cv428 DMS MDD

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MS. L., *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | CASE NO. 18cv428 DMS MDD |
| | ) | |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DECLARATION OF ROBERT J. COSTELLO**

I, Robert J. Costello, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.      I am currently an Executive Director with the Office of Information Technology (OIT), Enterprise Services, U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS).  I am currently serving on detail to the Border Enforcement and Management Systems Directorate since March of 2017, and concurrently in the permanent role of the Executive Director of Enterprise Networks and Technology Support.  I have served as an Executive Director of OIT since August of 2017. Prior to this, I was the Deputy Executive Director of Field Support within OIT.  I have over twenty-five years of information technology leadership experience as a senior information technology executive in federal government and private sector, including at U.S Immigrations and Customs Enforcement (ICE) and the U.S Air Force.

1

2.      As I have previously outlined for this court, in my current role, I am responsible for management and oversight of the programs assigned to my directorate, which includes the Unified Immigration Portal (UIP).  I am familiar with the development of the UIP, and I meet daily with the program team and participate in bi-weekly briefs to the Assistant Commissioner of OIT and agency leadership on the UIP.

3.      I have provided this courts with two declarations, on Aug. 19, 2020, and Oct. 20, 2020, regarding the process for developing and implementing the UIP, its current status, and anticipated next steps.  I have also provided information to the court regarding the UIP at status conferences in this case.  During the October 22, 2020 status conference, the court requested that I submit an additional declaration identifying additional progress that CBP OIT has made on the UIP since my previous declaration, including a specific discussion of the timeline for Phase 3 of the UIP's development.

4.      As outlined in my previous declarations, CBP OIT, working with its partners in the U.S. government, is developing the UIP, which is intended to be a technological platform where authorized users within the U.S. government can access relevant immigration-related data from multiple agencies through a single interface, to enable a more complete understanding of an individual's journey throughout the immigration system.  The UIP will serve as a centralized location for agencies to share certain information about individuals in the immigration process.

5.      Currently, the UIP development team is continuing to work with its federal partners to develop the UIP as expeditiously as possible.  Of the efforts discussed in my previous declarations, I provide the following updates:

        a.      Piloting use of the UIP in locations along the southwest border: Piloting the platform resulted in new users and enhancements to the system to address the operational needs of these users. Several of these enhancements have already

2

been released into production. One of these enhancements, for example, was to create a filter for certain data fields related to family units in CBP custody on the ICE-CBP dashboard, allowing ICE to more easily access and view the information and plan for resource needs.

b. <u>UAC Referral Service:</u> The program is currently performing User Acceptance Testing (UAT) on the UAC referral and placement service to validate end-to-end functionality of the automatic data exchange between CBP and U.S. Health and Human Services (HHS) systems.  This effort remains on schedule and is aligned with HHS's UAC Path modernization efforts. UAC Path is the modern replacement for the current UAC Portal.

6. Additionally, since my last declaration, the team has completed several additional important steps, such as deploying our backbone technology infrastructure, which essentially lays the foundation for the modern architecture of UIP. This is a major project milestone for Phase 2 and for the program as a whole. The UIP team has also added certain information to the UAC Placement dashboard, including an indicator of whether a UAC being referred was separated from his/her parent and the reasons for any separation.  While CBP currently provides this information to HHS at the time that a UAC is referred, presenting the information in the dashboard enables HHS to access the information more quickly and efficiently, allowing HHS users to improve placement decisions and resource allocation for facilities.

7. As discussed previously, the UIP development team is utilizing a flexible buildout to adapt to shifting business and operational needs.  This flexible approach has also allowed the establishment of the UIP to adjust to factors outside of the development team's control, such as the global pandemic.  As a result of the flexible buildout, the UIP is being developed on a fluid timeline, and thus the UIP is being implemented in phases,

rather than with fixed deadlines.  Currently, the UIP remains within its second phase, and the team continues to develop the technological capabilities to enable data standardization and sharing.  Phase 2 is still expected to be completed by the end of this calendar year.

8.     The next phase, Phase 3, will include further data integration across agencies as agency partners incorporate UIP services into their software modernization efforts.  This may include the development of capabilities that facilitate sharing electronic documents across agencies, providing and receiving a real-time stream of data between agencies (e.g. sharing data about immigration proceedings between DHS and the Department of Justice Executive Office for Immigration Review), and expanding visualization via dashboarding tools within the UIP.

9.     In light of the flexible buildout for the development of the UIP, the team is unable to provide an estimated date of completion for the project, but continues to make diligent progress.  Phase 3, in which the UIP will be fully built and functional, is currently projected to be completed by the end of the first quarter of fiscal year 2022 (December 2022).  The UIP program has been leveraging all available avenues for acceleration of the program, including working on multiple facets of the program in parallel.  For example, the UIP development team continues to build-out the underlying architecture while also releasing software updates weekly to support the operational needs and data sharing for both end-users and agency partners. While these development efforts are ongoing, UIP continues to work with various partners across the government on data-sharing requirements for information that needs to be shared through UIP. End-users with access are also able to use the platform while these development efforts continue.  UIP has also streamlined the acquisition process by eliminating unnecessary reviews to align more closely with modern software development best-practices.

4

10.  This iterative and flexible approach has allowed UIP to begin providing working software to end-users immediately. To clarify, the UIP system capabilities are currently in-use and being rolled-out to users across ICE, CBP, and HHS.  These capabilities are being upgraded as the UIP phases progress, so users are not waiting until all three phases are completed to use the system.  Rather, in each phase, the capabilities are expanded to satisfy operational needs and align with our stakeholder partners' key initiatives. This flexibility has also allowed UIP to work with HHS, who wasn't initially scoped to be a year-1 partner, to establish the UAC Placement Dashboard and begin the UAC referral service. UIP is also collaborating with ICE on our Phase 2 goal to establish the backbone technology. Because of this collaboration, UIP will begin sharing real-time data from ICE in Phase 2—something that was initially scheduled for Phase 3.

11.  I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this  2  day of December, 2020.


_Robert J. Costello_
_____
Robert J. Costello
Executive Director
Office of Information Technology
Enterprise Services
U.S. Customs and Border Protection

5