JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

             Petitioners-Plaintiffs,

      vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

             Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on January 13, 2021, in anticipation of the status conference scheduled at 1:30 pm on January 15, 2021. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

# I.      DEFENDANTS' POSITIONS

## A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms[1]** | Total number of executed election forms received by the Government | **444 (261 Parents/185 Children)[2]** |
| | • Number who elect to receive settlement procedures | **284 (158 Parents/126 Children)** |
| | • Number who waive settlement procedures | **162 (103 Parents/59 Children)[3]** |
| **Interviews** | Total number of class members who received interviews | **173[4]** |
| | • Parents who received interviews | **91** |
| | • Children who received interviews | **82** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **72[5]** |

---

[1] The number of election forms reported here is the number received by the Government as of January 5, 2021.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **70[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **12** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |
| | • Number of children determined not to establish CF by USCIS | **0** |
| | Total number of affirmative asylum decisions by USCIS | **24** |
| | • Number of parents granted asylum by USCIS | **3** |
| | • Number of parents referred to immigration court | **5** |
| | • Number of children granted asylum by USCIS | **4[9]** |

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

18cv428 DMS MDD

| | • Number of children referred/returned to immigration court | **12** |
|---|---|---|
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **103 Parents**[10] |

## B. Expanded Class Members

The Court expanded the class definition on March 8, 2019, ECF No. 386. In so doing, the Court declined to resolve the issue of what relief was to be afforded expanded class members, and stayed application of the preliminary injunction to the expanded class pending further briefing from the parties regarding what relief Plaintiffs were requesting for these expanded class members, which has not occurred. *Id.* at 14. On March 19, 2019, the parties met and conferred, and Plaintiffs requested that Defendants provide a list of expanded class members, "along with information in the agencies' possession as to the parent and child's location and contact information." ECF No. 388 at 11-12. On April 5, 2019, Defendants submitted their initial plan to do so. ECF No. 394. The parties met and conferred numerous times regarding the process by which Defendants would identify members of the expanded class and provide information about those class members to Plaintiffs, and the Court also was kept informed about these discussions and about

---

[10] This number is as of January 6, 2021.

Defendants' plan. *See* ECF Nos. 388, 394, 396, 397, 402, 403, 405. On April 25, 2019, the Court approved Defendants' Plan for identifying members of the expanded class, and set a deadline of October 25, 2019 for Defendants to complete their process. Defendants completed the process ahead of the Court's deadline.

Neither Defendants, nor any of the individuals participating on behalf of Plaintiffs in discussions regarding the development of the Plan, identified a need to search the Executive Office for Immigration Review (EOIR) database at the time that the Plan was developed or during the time it was being implemented. The government completed the Plan in October 2019, and the Steering Committee has been operating with the data provided under the Plan since that time. As it became apparent in recent weeks that information in the EOIR database might also be useful in the Steering Committee's efforts to contact members of the expanded class, and after the Steering Committee requested for the first time on October 22, 2020 that Defendants conduct such a search, Defendants have fully cooperated in searching for any and all information requested by Plaintiffs.

In developing the Plan that was ultimately approved by the Court, Defendants incorporated Plaintiffs' request that they provide "information in the agencies' possession as to the parent and child's location and contact information." ECF No. 388 at 11-12. The Department of Health and Human Services (HHS), U.S. Customs and Border Protection (CBP), and U.S. Immigration and Customs Enforcement

(ICE) Operational Leads developed a work-flow process to optimize interagency validation and consolidation of information between the participating agency Defendants to this litigation. Declaration of Jonathan White, Attachment A, at ¶ 3; Declaration of Jay Visconti, Attachment B, at ¶ 3. A team of U.S. Public Health Service Commissioned Corps (USPHS) Officers was created, deployed and trained to conduct case file review, and the USPHS team manually reviewed 32,972 case files and automated data held by the Office of Refugee Resettlement (ORR). White Decl. ¶ 4. HHS then transmitted its data sets on minors with some preliminary indication of separation to CBP and ICE for further assessment, reconciliation with CBP and ICE information, and determination of parental class membership. *Id.*; Visconti Decl. ¶ 4.

When CBP received a list from HHS, CBP identified any indicia of separation in the CBP electronic systems of record, and then reviewed the records to validate the separation and, if validated, provided a reason for the separation. Visconti Decl. ¶ 4. For those cases identified and confirmed to be separations, CBP added the name, alien registration number (A-number), and FBI number (if applicable) of the separated parent; the nature of the parental relationship (e.g., father or mother); the gender of the separated parent; and any relevant notes about the separation. *Id.* Upon completion of this effort, CBP forwarded the list to ICE for review and the inclusion of additional data points. *Id.* As part of its processes, ICE then ran a search of parent

address data. Declaration of Dawnisha Helland. Attachment C, at ¶ 5. ICE reviewed its internal databases, including the Enforcement and Removal Management Module ("EARM") and IIDS, which is a data warehouse that contains dynamic data extracts from the Enforcement Integrated Database ("EID"). *Id.* These sources were specifically searched for the latest contact information available for the parents. *Id.* In addition, any electronic database information was manually reviewed by officers to ensure accuracy. *Id.* Once this process was completed, the government provided the lists of potential class members with the contact information to Plaintiffs. White Decl. ¶ 5. In addition to parent contact information from ICE discussed above, the contact information provided to Plaintiffs also included ORR data that would assist Plaintiffs in locating class members, including the discharge type of the child, all contact information for any sponsors (including parents) to whom children were released, and any available contact information for the parent in cases where the child was released to a non-parent sponsor. *Id.* This contact information was obtained by ORR through both manual and automated record searches. *Id.*

EOIR was not part of discussions developing the Plan because it is not a defendant in this case. Declaration of Jill Anderson, Exhibit D, at ¶ 16. Moreover, it is reasonable that neither Plaintiffs nor Defendants identified EOIR as a likely source of information at the time the Plan was developed. EOIR databases contain address and telephone information for individuals who are in the United States, and who

are—or have been—in immigration proceedings before the immigration courts. *Id.* ¶ 6. EOIR obtains such information either from ICE, or from the alien updating his or her own information, which he or she then is required also to update with ICE. *Id.* ¶ 8. Given these requirements, at any given time and assuming individuals in removal proceedings are properly updating their contact information with both ICE and EOIR, the address and telephone information available in EOIR's database should not be substantially different from the information that is in ICE's databases. *Id.* ¶ 9; Helland Decl. ¶ 8-12. Thus, while Defendants cannot determine today what would have been in EOIR's databases at the time address and telephone information for the expanded class was originally provided, it is reasonable to assume that it should have been substantially similar to the information that was provided from ICE's databases at that time. Anderson Decl. ¶ 11. Moreover, as the definition of the expanded class included alien parents who entered the United States on or after July 1, 2017, and prior to the certification of the original class, there was a strong likelihood that many members of the expanded class would be outside the United States at the time of identification, and EOIR would not have any current information about those class members. Given all of the above, at the time the Plan was developed, no one involved in the process—neither Plaintiffs, nor Defendants— identified a need to provide information obtained from a search of the EOIR database as part of the Plan.

As noted, Plaintiffs never requested that Defendants provide information from EOIR, despite being heavily involved in the process of developing the Plan for identifying expanded class members. The parties met and conferred numerous times regarding the process, and at times Defendants adapted their plan based on these discussions. *See* ECF Nos. 388, 394, 396, 397, 402, 403, 405. Plaintiffs enlisted the help of several outside individuals in assessing and commenting on Defendants' plan. At least one of those individuals submitted a declaration in which she stated that her work focuses on the representation of minors in immigration proceedings which occur before EOIR, *see* ECF No. 397-2, ¶ 1, and numerous other individuals who have significant experience with immigration proceedings and information maintained in various agencies' systems participated in meetings between the parties on behalf of Plaintiffs. Many of the individuals working with Plaintiffs and making suggestions throughout the extensive meet and confer process of identifying expanded class members would have been aware of EOIR as well as its purpose and function, and likewise with the information that it would collect as part of that function. Plaintiffs' representation to the Court that the existence of the EOIR database "had not previously been disclosed," ECF No. 560 at 10, is therefore disingenuous. Plaintiffs had numerous opportunities to request that Defendants conduct searches of specific databases or otherwise amend their processes, and at no time did Plaintiffs or any of the individuals working with them, most of whom would

have been well aware of EOIR's information collection practices, request that the government obtain or provide information out of EOIR's databases.

Since Defendants' Plan was completed in October 2019 and all lists of expanded class members with their associated information were provided to the Steering Committee, Defendants have fully supported the Steering Committee's efforts to locate and contact the members of the expanded class. Notably, Defendants have a strong interest in the Steering Committee's successful completion of their part of this process. Defendants have worked closely with the Steering Committee throughout this litigation, and there is no reason why the Steering Committee could not have made additional requests for information from Defendants at any time after the initial provision of contact information for expanded class members to Plaintiffs and the Steering Committee. In fact, Defendants have repeatedly reached out to the Steering Committee and Plaintiffs for updates regarding their efforts to contact members of the expanded class, and have noted their concerns that "the government cannot tell where the efforts of the Steering Committee currently stand, or whether the Steering Committee is making bona fide progress. Further, the government cannot anticipate whether Plaintiffs intend to raise issues regarding this process because Plaintiffs are keeping all information about this process and any progress to themselves, and are unilaterally choosing what to tell the Court and what to withhold." ECF No. 534 at 6. Plaintiffs have declined to provide anything other than

the bare minimum of information. *See* ECF Nos. 528, 534, 541, 547. While Defendants have repeatedly sought to increase the communication between the parties regarding this process, Plaintiffs and the Steering Committee never requested any form of updated or additional contact information from the government for any expanded class member until October 22, 2020.[11]

As noted above, the EOIR database contains information about individuals inside the United States who are in removal proceedings. Anderson Decl. ¶ 6. Given that the government knew nothing about the methods employed by the Steering Committee to contact expanded class members, had already provided contact information from the ICE database, and understood that the Steering Committee was focused largely on class members outside of the United States, there was little reason

---

[11] Defendants have produced contact information for class members in the related case of *Ms. J.P., et al.* v. *William P. Barr, et al.* (2:18-cv-06081-JAK-SK, C.D. Cal.), to the Seneca Family of Agencies (Seneca) with whom HHS has signed a contract under which Seneca is searching for class members within the United States. Those productions are more recent, and likely contain more updated class member information. Defendants also have provided updated contact information to Seneca from ICE databases for specific class members on May 28, August 3, September 21, October 26, November 19, and December 23, 2021, at Seneca's request. Given the overlap between the efforts of Seneca and the *Ms. L.* Steering Committee, in early 2020, Defendants put the two groups in touch and gave permission for the groups to share information about class members. Defendants learned in the December 2, 2020 status report that the Steering Committee had only recently obtained the information that the government provided to Seneca, but Plaintiffs did not explain why the Steering Committee delayed in seeking that information. In any event, the Steering Committee has long had access to updated information from Seneca. The Steering Committee, unlike Seneca, has never asked for any updated contact information for any class member.

to believe that the government would have any additional information related to those class members on whom the Steering Committee was focused. More specifically, there was no reason to believe that the EOIR database would contain useful information regarding class members outside the United States, because it contains information only about individuals inside the United States and who are, or were, in proceedings. *Id.* Moreover, to the extent that the Steering Committee was attempting to find class members inside the United States, the government had put the Steering Committee in touch with—and understood the Steering Committee to be working with—Seneca, with whom the government has a multi-million dollar contract for locating class members inside the United States, and to whom the government has provided updated contact information regularly upon request.

It was only after news reports, based on the October 20, 2020 status report, brought the Steering Committee's efforts to public attention, that the Steering Committee finally agreed to discuss with the government more details about their efforts towards contacting expanded class members. Those discussions, held on the morning of October 22, 2020, were the first time that the Steering Committee asked Defendants to provide any updated contact information for any expanded class members. In conjunction with that request, the government asked the Steering Committee to provide a list identifying the class members for whom it needed more information, and that list was provided by the Steering Committee on October 31,

2020. Anderson Decl. ¶ 4. The Defendant agencies and counsel held multiple internal discussions to consider ways in which the government could assist the Steering Committee's efforts. Commander White has offered his assistance and ideas to the Steering Committee, and after receiving the list of class members from the Steering Committee on October 31, 2020, the government provided the most recent information available from multiple databases, including EOIR. *See* Anderson Decl. ¶¶ 4-5, 11-12. While Defendants note that this case remains in active litigation, and that the government's obligations in this context are guided by the Federal Rules and orders of this Court, the government also submits that it has been, and remains, available to discuss the Steering Committee's efforts and to provide assistance where it is able to do so.

**C. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.**

*Data Requested by Plaintiffs*.   Defendants continue to provide Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 Order on a monthly basis. The parties have not yet met and conferred about changing the frequency of these productions.

*Processes and Procedures*.

In the May 27, 2020 Joint Status Report, Defendants provided the court with updated reporting regarding the various steps it has taken to implement Paragraph 5 of the preliminary injunction, ECF No. 83 at 24, ¶ 5, and improve the processes and

procedures for information sharing between the agencies related to family separations. Following the July 10, 2020 status conference, the Court ordered that "Defendants shall provide a declaration from the Assistant Commissioner of OIT or other appropriate designee setting out the status of the development of the UIP and estimated completion date. The declarant should also address the Court's concerns about how the UIP will enable parents in criminal custody access to their children's location information and how the UIP will assist in reunification efforts when a parent is transferred from criminal custody to immigration custody." ECF No. 543 at 2. Defendants provided that information in the August 19, 2020, Joint Status Report, including a declaration from Robert J. Costello, Executive Director, Office of Information Technology, Enterprise Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security. ECF No. 547. On October 20, 2020, and December 2, 2020, at the request of the Court, Defendants provided additional declarations from Mr. Costello on the progress of the UIP. ECF Nos. 556-1, 560-1. The Court did not order a further update this month, and Defendants have not identified any significant issues that require a further update from Mr. Costello at this time.

On October 22, 2020, the Court also ordered that the parties "shall continue to meet and confer on the information gap between the Department of Justice (Bureau of Prisons and U.S. Marshal) [USMS] and the Department of Health and

Human Services (ORR)." ECF No. 558, ¶ 1. In the December 2, 2020 Joint Status Report, the government stated that it would provide an update to the Court on this issue in the next Joint Status Report.

Since that time, the government has discussed this issue internally, and has taken steps to formalize the processes for information sharing between ORR and USMS. ORR and USMS have identified the relevant individuals to bridge this information gap, and the operational leads from each agency are communicating (including a call scheduled during the week of January 11) in order to identify and formalize the best processes for information sharing between the agencies. The presumptive goal of these discussions will be to establish formalized notification procedures between USMS and ORR to ensure that USMS—including all detention facilities housing these individuals—is made aware that it may have a separated parent in its custody. Once so notified, USMS will develop formalized procedures at each of its facilities that will allow parents to communicate with their children in ORR custody. USMS and ORR will work together to create a formalized process whereby the USMS will be able to arrange regular calls between the parent and child taking into consideration the wishes of the parent and child and the operational needs of the USMS and ORR facilities involved.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A. <u>Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members</u>

The government has provided eleven lists identifying 1,134 children of expanded class members.  The government has also identified 64 "recategorized" deported parents from the original class, who the Steering Committee has sought to contact as part of its efforts to reach members of the expanded class.[12]  The Steering Committee's recent efforts have been targeted at locating the parents of this group of 1,198 (1,134 plus 64) children.[13]

Of these 1,198 children, the Steering Committee has reached the parents (or their attorneys) of 587 children.  This represents an increase of 17 childrens' parents since our last status report.  We describe below the status of our continuing efforts to reach the parents of the remaining 611 children.

The 611 children fall into three groups.  First, there are approximately 392 children whose parents are believed to have been removed from the United States following separation from their children, and our efforts to locate them in their country of origin are ongoing.  Second, there is a group of approximately 201 children whose parents are believed to be in the United States, and efforts to locate them in the United States are also ongoing.  Third, there is a group of 18 children

---

[12] In its portion of the December 12, 2018 Joint Status Report, the government disclosed the existence of what we call the "Recategorized Original Class", *i.e.*, members of the original class who were not identified as part of the government's initial disclosures in the summer of 2018.  The government only provided contact information for this group in February 2019, after the Steering Committee's efforts to contact original class members had concluded – and so, as a logistical matter, the Steering Committee has conducted outreach to the 64 parents in this group who were deported following separation from their children, as part of the Steering Committee's efforts to contact *expanded* class members.

[13] Because some of the parents of these children entered with more than one child, there are 1,082 parents in this combined group.

for whom the government has not provided a phone number for the parent, child, sponsor or attorney.  This group previously numbered 104.

Steering Committee Efforts to Locate Parents

First, as previously reported, the Steering Committee attempts to reach all parents, sponsors and attorneys by telephone.  The Steering Committee has renewed these efforts and is currently engaged in an effort to reach parents, where possible, by using the additional contact information recently provided by the government from databases of the Executive Office for Immigration Review and U.S. Customs and Immigration Enforcement.  This information includes phone numbers that had not previously been disclosed for children and parents, as well as contact information for a number of attorneys.

Where those efforts are not successful, the Steering Committee has engaged in time-consuming and arduous on-the-ground searches for parents.  These on-the-ground searches have been focused abroad in the countries of origin of parents who were removed from the United States following separation from their children. These international on-the-ground searches are ongoing by members of the Steering Committee, and we are in the process of obtaining additional resources for these efforts.  As previously reported, on-the-ground searches for separated parents are ongoing when it is safe to do so, but are limited and in some cases cannot take place due to risks associated with the COVID-19 pandemic.

Also, as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class.  The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with.

18cv428 DMS MDD

In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers, and plans to renew its mailing effort with the new address information received for children and their attorneys from the government.

Additionally, as previously reported, the Steering Committee has undertaken broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media.  The Steering Committee will also shortly be commencing advertisements on Spanish language radio in Central America.  The Steering Committee continues to work to identify opportunities to broadly disseminate the toll-free numbers through various media to maximize visibility to potential *Ms. L.* class members, including most recently by seeking to collaborate on such media outreach initiatives with other non-profit organizations.

Since the last Status Conference, the Steering Committee has also received additional contact information for a limited number of families from third parties, including a number of non-governmental organizations.  The Steering Committee is re-attempting telephonic communication with all families for whom new contact information has become available, in addition to the efforts underway using new information provided by the government as described above.

**B. Information Sharing**

The Parties continue to discuss issues with information-sharing, and have scheduled further discussion for next week. Plaintiffs provided the government in early December proposed language to include on the Notice of Potential Rights

and Letters of Designation that the government already provides to parents. That language seeks to obtain any consent the government believes is needed from the parent to be able to share such forms with their child or child's representative.

### C. **Return of Additional Deported Parents**

The parties are discussing avenues for relief for deported parents, and will continue to meet and confer, and report back to the Court.

### III. *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: January 13, 2021                    Respectfully submitted,


                                           /s/ Lee Gelernt
                                           Lee Gelernt*
                                           Judy Rabinovitz*
                                           Anand Balakrishnan*
                                           AMERICAN CIVIL LIBERTIES UNION
                                           FOUNDATION
                                           125 Broad St., 18th Floor
                                           New York, NY 10004
                                           T:  (212) 549-2660
                                           F:  (212) 549-2654
                                           *lgelernt@aclu.org*
                                           *jrabinovitz@aclu.org*
                                           *abalakrishnan@aclu.org*


                                           Bardis Vakili (SBN 247783)
                                           ACLU FOUNDATION OF SAN DIEGO
                                           & IMPERIAL COUNTIES
                                           P.O. Box 87131
                                           San Diego, CA 92138-7131
                                           T: (619) 398-4485
                                           F: (619) 232-0036
                                           *bvakili@aclusandiego.org*


                                           Stephen B. Kang (SBN 292280)
                                           Spencer E. Amdur (SBN 320069)
                                           AMERICAN CIVIL LIBERTIES UNION
                                           FOUNDATION
                                           39 Drumm Street
                                           San Francisco, CA 94111
                                           T:  (415) 343-1198
                                           F:  (415) 395-0950
                                           *skang@aclu.org*
                                           *samdur@aclu.org*


                                           *Attorneys for Petitioners-Plaintiffs*
                                           *Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

*Attorneys for Respondents-Defendants*