# DEFENDANTS' ATTACHMENT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al. | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | Hon. Dana M. Sabraw |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

## **DECLARATION OF JONATHAN WHITE**

I, Jonathan White, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1.     The statements in this declaration are based on my personal knowledge, information acquired by me in the course of performing my official duties, information supplied to me by federal government employees, and government records.

2.     The purpose of this declaration is to explain the process that I developed to implement the Government's Plan for identifying possible children of potential members of the expanded class of parents in this case, and the interagency effort to consolidate data to be shared with Plaintiff's counsel.

3.     On April 25, 2019, the Court approved the Government's Proposed Plan to identify substantially all members of the expanded class.  To implement that Plan, the Department of Health and Human Services ("HHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") Operational Leads developed a work-flow process to optimize interagency validation and consolidation of information.

4.     A team of U.S. Public Health Service Commissioned Corps ("USPHS") Officers was created, deployed, and trained to conduct case file review as part of a pilot

1

1  project. The USPHS team reviewed manually 32,972 case files and automated data held
2  by the Office of Refugee Resettlement ("ORR"). HHS then transmitted the data sets on
3  minors with some preliminary indication of separation to CBP and ICE for further
4  assessment, reconciliation with CBP and ICE information, and determination of parental
5  class membership.

6      5. Once DHS completed its reconciliation process and class membership was
7  determined, the Government provided the lists of potential class members to Plaintiffs. The
8  information provided by the Government included ORR data designed to assist Plaintiffs to
9  locate class members and their children, including the discharge type of the child (such as
10  to an individual sponsor, aged out by turning 18, obtained legal immigration relief, or
11  obtained an order of voluntary departure); for every child released to an individual sponsor,
12  the sponsor's name, relationship to the child, address of record, and phone number for the
13  sponsor; and any additional contact information for parents for children whose discharge
14  was not to the separated parent as sponsor. These contact information was obtained by both
15  manual and automated record searches.

16      6. At the time of developing the Government's Plan, I did not include the
17  Department of Justice Executive Office of Immigration Review ("EOIR") data. I was not
18  aware that EOIR possessed any data that would be useful for identification or location of
19  previously separated children and/or their parents.

20      7. I first became aware that EOIR might possess data sets that may be useful for
21  location of previously separated children and/or their class member parents on October 26,
22  2020. This occurred during a routine bi-weekly call with Seneca Family of Agencies, the
23  government contractor responsible for implementing a preliminary injunction in *Ms. J.P.,*
24  *et al. v. Barr, et al.*, No. 18-cy-06081-JAK (Ms. J.P.), which requires the government to
25  locate and provide mental health services to previously separated families.

26      8. In that call with Seneca, Seneca staff advised that they believed EOIR had
27  information, including possible attorney-of-record information, that could assist them in
28  locating some families with whom they were not yet in contact using available

1    information already provided from ORR or ICE data. Prior to that moment, I was not
2    aware that EOIR may possess any information that could be useful to Seneca or the
3    Steering Committee.  That same day, October 26, 2020, based on Seneca's request, I
4    advised my HHS colleagues that EOIR data sets should be provided for Ms. L. class
5    members whom the ACLU Steering Committee had not yet contacted.
6
7    Executed on January 13, 2021.
8
9
10                                        _____
11                                        Jonathan White
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DEFENDANTS' ATTACHMENT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Ms. L., *et al.*,                              )
         *Plaintiffs,*                  )
                              )
                              )
v.                                              )               No. 3:18-cv-00428-DMS-MDD
                              )
U.S. Immigration and Customs          )
Enforcement, *et al.*,                    )
         *Defendants.*                )

## DECLARATION OF JAY VISCONTI

I, Jay Visconti, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows, relating to the above-captioned matter:

1.        I am the Director (Associate Chief) for the CBP STAT Division within Operations Support, U.S. Customs and Border Protection (CBP), Department of Homeland Security, where I manage CBP STAT's creation and delivery of high-level analysis and reporting of CBP's immigration and seizure data.  I have formally served as the Director of the CBP STAT Division since August 2019.  Previously, I served as a Senior Advisor to the Chief Operating Officer and Senior Official Performing the Functions and Duties of the Commissioner.  In that role, I performed similar functions to those I am performing now with respect to providing reports and high-level analysis.  Prior to serving in that position, I was the Assistant Chief over the U.S. Border Patrol's (USBP's) Statistics and Data Integrity (SDI) Branch, where I provided day-to-day statistics and analysis to USBP senior leadership and worked to ensure data quality within the USBP data.  Prior to serving as the Assistant Chief over the USBP SDI Branch, I was an Operations Officer and played a key role in the development of the Border Patrol's e3 electronic system of records.  I have been a U.S. Border Patrol agent since January 2, 1996.

2.        I am familiar with the above-captioned case, and am familiar with the government's extensive efforts to identity and track separated parents and children, as well as with the government's efforts to identify *Ms. L* class members.  I served as CBP's main point of

contact in the interagency effort to identify and reunify the children of the legacy *Ms. L* class members, as well as CBP's Operational Lead in the interagency process of identifying members of the expanded *Ms. L* class. I make this declaration to reiterate the role that CBP played in the interagency identification process for identifying members of the expanded class, including the information and data points that CBP contributed to this process.

3. As outlined in previous filings in this case, the process for identifying members of the expanded *Ms. L* class, as well as their children, involved extensive review of various data sets by CBP, the Department of Health and Human Services (HHS) and U.S. Immigration and Customs and Enforcement (ICE) Enforcement and Removal Operations (ERO). In my role, I coordinated directly with the HHS and ICE component leads and oversaw a staff of two contractor teams, consisting of four individuals in total, assigned to assist in identifying potential separations in CBP's electronic systems of records.

4. In general, the process consisted of a fluid exchange of lists (or "batches") of children for whom HHS determined records indicated some indicia of separation between the child and his/her parent. Each list was initially sent from HHS to CBP. When I received a list from HHS, I generally sent the list to my contractor teams, who identified any indicia of separation in the CBP electronic systems of record. Following this initial step, CBP's Office of Field Operations (OFO) and USBP reviewed the records to validate the separation, and if validated, provide a reason for the separation. Once I received the list back from the operational components, I reviewed the list for accuracy and consistency and updated any listed reasons for a separation to standard nomenclature that the interagency team identified. Additionally, for those cases identified and confirmed to be separations, CBP also added the name, alien registration number (A-number), and FBI number (if applicable) of the separated parent; the nature of the parental relationship (e.g., father or mother); the gender of the separated parent; and any relevant notes about the separation. Upon completion of this effort, I forwarded the list to my ICE counterpart for ICE review and the inclusion of additional data points. It is my understanding that, following its review, ICE forwarded this list back to HHS for a final review and update. HHS then sent the list back to the three interagency Operational Leads for final review and clearance. Each list was then sent to agency and DOJ counsel in this case for review, before being sent to the ACLU.

5.      CBP maintains relevant information regarding its encounters with individuals at or between official U.S. ports of entry in various electronic systems of records, including USBP's e3 system and OFO's Unified Secondary (USEC) system, formerly known as Secure Integrated Government Mainframe Access (SIGMA).  A record of an encounter will generally contain identifying information about the individual encountered, including, as applicable or available, the individual's name, age, gender, country of origin, previous address in the country of origin, A-number, FBI number, identifying information for certain family members, information about the individual's previous criminal or immigration history, and any information about the individual's intended U.S. destination or contact information for relatives or friends in the United States.  The record will also generally contain information about the encounter itself, including the date of the encounter, the location and circumstances of the encounter, whether the individual was encountered alone or with accompanying relatives or other individuals, and the resulting processing disposition.  If an officer or agent encounters a family unit, the officer or agent creates relevant records for each member of the family, and documents the relationship between members of the family.

6.      When CBP encounters an individual either at or between the ports of entry, CBP processes the individual for an appropriate disposition and then, in general, turns the individual over to another agency for further action, or otherwise releases the individual from CBP custody (depending on the nature of the encounter and the characteristics of the individual).  Individuals who are determined to be removable aliens are generally turned over to the custody of ICE ERO or, if an unaccompanied alien child, HHS' Office of Refugee Resettlement (ORR).  CBP endeavors to transfer individuals out of its custody as expeditiously as possible, and generally holds individuals only as long as required to complete processing and transfer.  Given the nature of CBP's encounters, CBP may only be able to obtain limited information about an individual's last known address (such as the city and country) or an individual's intended destination in the United States (such as the city and state).  CBP provides all relevant address information and contact information to ICE ERO and HHS ORR when the alien is transferred out of CBP custody.

7.      Therefore, any address or contact information contained within a particular CBP encounter record will reflect only the information provided to CBP at the time of each encounter. If CBP encounters the individual a second time, the individual may be able to provide additional

3

information, but more updated information would be contained within the individual's records maintained by ICE and HHS.  Therefore, during the process of identifying the members of the expanded *Ms. L* class, CBP deferred to HHS and ICE to provide such contact information.

8.      I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this    13th     day of January, 2021.

JAY VISCONTI   Digitally signed by JAY VISCONTI
Date: 2021.01.13 08:53:08 -05'00'

_____

Jay Visconti
Director (Associate Chief)
CBP STAT Division, Operations Support
U.S. Customs and Border Protection

# DEFENDANTS' ATTACHMENT C

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>              Petitioners-Plaintiffs,<br><br>     vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>              Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**DECLARATION OF DAWNISHA HELLAND OUTLINING ICE ROLE IN PROCESS OF UPDATING CONTACT AND ADDRESS INFORMATION OF CERTAIN EXPANDED CLASS MEMBERS** |

## DECLARATION OF DAWNISHA HELLAND

1.      I, Dawnisha Helland, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

2.      I am the Acting Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody. JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations. JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). JFRMU oversees and monitors the implementation of nationwide court orders that impact

this population, including those in the present case.

3.     My primary responsibilities include case reviews for family separations and reunifications, data quality for family separation cases, and coordination for family reunifications, as well as the coordination of *Ms. L* data collection and reporting on behalf of ICE in collaboration with Customs and Border Protection (CBP) and Health and Human Services (HHS) data teams.

4.     Previously, in conjunction with CBP and HHS, ICE identified members of the expanded class, as outlined in my declaration of June 6, 2019.  (Helland Decl., ECF No. 422).

5.     ICE originally ran a search of parent address data in July of 2019 when the data batches were being compiled for the expanded class. ICE reviewed its internal databases, including the Enforcement and Removal Management Module (EARM) and IIDS, which is a data warehouse that contains dynamic data extracts from the Enforcement Integrated Database (EID). These sources were specifically searched for the latest contact information available for the parents. In addition, any electronic database information was manually reviewed by officers to ensure accuracy.

6.     At the *Ms. L* status conference on October 22, 2020, DHS, through counsel, offered to assist the ACLU in their attempts to locate 545 parents from the

expanded class by searching its systems for updated information.  Tr., p. 10, Joint Status Conference, October 2020.

7.     As it did with the expanded class, in conjunction with CBP and HHS, ICE reviewed its internal databases including EARM and IIDS. These sources were specifically searched for the latest contact information available for the parents. Once again, any electronic database information was manually reviewed by officers to ensure accuracy.

8.     From what I understand, aliens are required to update their address with ICE pursuant to 8 U.S.C. Sec. 1305.  This guidance is present on several DHS Forms, e.g. I-220A Order of Release on Recognizance and I-220B Order of Supervision.

9.     In addition to Forms I-220A and I-220B, aliens are provided notice of their obligation to update DHS with changes to their address on their Form I-862 Notice to Appear document if they are placed in removal proceedings.  If an alien is conditionally released into the interior, they are served with forms that state they cannot change residence without approval from their deportation officer and they must provide written notice of any change of residence prior to change.

10.     When an alien is released, they are specifically noticed that they are required to inform their local ICE office of any address change by calling the office, sending the information through email, or through an in-person meeting at the local ICE field office.

11.     When ICE receives a notification of an address change from an alien, deportation officers add the new address to the Supporting Information Address tab within EARM. Generally, a case comment is also added to EARM to reflect the address change.

12.     If an alien updates their address with the Executive Office for Immigration Review only and not ICE, that updated address information would not appear in ICE's systems unless/until the alien directly updates it with ICE as well.

Dated:  January 13, 2021

Dawnisha Helland

National Juvenile Coordinator

U.S. Immigration and Customs Enforcement

DEFENDANTS' ATTACHMENT D

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

**Ms. L.**, et al.,

Petitioners-Plaintiffs,

v.

**U.S. Immigration and Customs Enforcement ("ICE")**, et al.,

Respondents-Defendants.

) Case No. 18-cv-0428 DMS (MDD)
)
)
)
)
)
)
) **DECLARATION: JILL ANDERSON,**
) **GENERAL COUNSEL, EXECUTIVE**
) **OFFICE FOR IMMIGRATION**
) **REVIEW ("EOIR").**
)
)

I, Jill Anderson, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge and belief:

1.     I serve as the General Counsel of the Executive Office for Immigration Review ("EOIR").  In this capacity, I manage the Office of the General Counsel ("OGC") and provide legal counsel to the Agency on matters pertaining to the Immigration and Nationality Act and other laws and procedures as they relate to EOIR, among other duties. I have served in this this position since December 2019 after serving as the Deputy General Counsel for EOIR since 2017.

2.     I am providing this declaration at the request of the Department of Justice's Office of Immigration Litigation ("OIL") and in connection with this Court's December 7, 2020 Order instructing the Defendants in this case to "provide a declaration explaining the circumstances surrounding the recent production of information from [EOIR]." Order Following Status Conference, ECF No. 563 at 2 (S.D. Cal. Dec. 7, 2020).

3.     On October 26, 2020, OIL contacted EOIR's OGC with a request to provide OIL with any contact information that might be available in EOIR's databases for members of the *Ms. L. et al., v.* ICE *et al.*, 18-cv-0428 DMS (MDD) (S.D. Cal. 2018) ("*Ms. L.*") and *Ms. J.P. et al., v. Barr, et al.*, 18-cv-06081 (JAK) (C.D. Cal. 2018) ("*Ms. J.P.*") classes and their minor children.

1

4.     EOIR does not have any way of independently identifying *Ms. L.* or *Ms. J.P.* class members or their minor children in its database. Nor does EOIR track these individuals as a distinct class of respondents in immigration court proceedings. Rather, on October 31, 2020, OIL sent EOIR's OGC a spreadsheet containing the names and alien numbers of *Ms. L.* class members and their minor children. EOIR's OGC understands that this list was obtained by OIL from the Plaintiffs' counsel on or around October 31, 2020.

5.     After further discussions with OIL about the parameters of the request and the specific information sought, on November 12, 2020, EOIR's OGC asked EOIR's Policy, Analysis, and Statistics Division ("PASD")[1] to query EOIR's CASE Management Database ("CASE") to provide certain information for each of the individuals (*e.g.*, class members and their minor children) identified in the spreadsheet received from OIL.

6.     EOIR's CASE database is an informational system designed for providing EOIR with case tracking and management information, *e.g.*, for scheduling immigration court cases and tracking the workload of immigration courts and the Board of Immigration Appeals ("BIA"). The system allows authorized users to access information about various aspects of an individual's immigration court proceedings and, if applicable, appellate proceedings before the BIA. It includes, for example, information about each respondent in removal proceedings, their contact information, attorney representation status and information, the charges against them, any form of relief or protection sought, and any decisions by the immigration judge or BIA in their case. CASE also includes information related to court administration, including the dates of hearings, the location where each of respondent's hearings is being held, and information about any pending motions and case status.

7.     EOIR's OGC asked PASD to query the CASE database and provide the following

---

[1] EOIR's PASD is a small office currently comprised of four analysts who are responsible for providing EOIR with statistical reports on a wide variety of matters of importance to the agency, including (but not limited to) reports that assist in the management of EOIR operations, statistical reports for publication on the agency's webpage or in response to FOIA requests, and reports related to litigation where EOIR is a defendant and is either enjoined to provide certain information or is providing statistics in defense of EOIR's litigating position.

information, to the extent it was available in CASE:[2] (1) each class members' most recent address; (2) each class members' most recent phone number; (3) information about whether each class member was represented before EOIR, including the attorney or qualified representative's contact information; and (4) whether each class member was currently in immigration court proceedings or had an appeal pending with the BIA. PASD also provided this same information for the minors identified on the list.[3]

8.    The contact information available in CASE is derived from three sources: the charging document filed by the Department of Homeland Security ("DHS") which initiates immigration court proceedings, any change of address form ("EOIR-33") filed by the respondent, and/or the notice of release from custody form ("I-830") filed by DHS during proceedings. Specifically, when DHS files a charging document with EOIR, the immigration court clerk is directed to ensure that it contains certain information, including the respondent's address and telephone number. *See* U.S. Dept. of Justice, EOIR, Office of the Chief Immigration Judge, *Uniform Docketing System Manual*, Ch. I at 3 (Sept. 2018) available at https://www.justice.gov/eoir/file/1157516/download; *see also* 8 C.F.R. § 1003.15(c), (d).  If that information is included, court staff enters that information into the CASE database.[4] If the information is not included, the respondent by statute and

---

[2] EOIR did not have records for some individuals on the Plaintiffs' list presumably because DHS never filed a charging document with EOIR and, therefore, those individuals were never placed into immigration court proceedings.  *See* 8 C.F.R. § 1003.14(a).

[3]  For most minors in immigration court proceedings, the address contained in EOIR's database will likely be the address of the minor's custodian. *See Matter of Mejia-Andino*, 23 I. & N. Dec. 533 (BIA 2003); 8 C.F.R. § 103.8(c). For unaccompanied alien children released from the custody of the Office of Refugee Resettlement ("ORR"), the unaccompanied alien child's sponsor is required to ensure the child's presence at future immigration court proceedings by ensuring that any change in address is provided to EOIR, with a copy served on DHS, consistent with 8 U.S.C. § 1229(a)(1)(F); 8 C.F.R. § 1003.15(d). *See* ORR Policy Guide: Children Entering the United States Unaccompanied, Sec. 2.8: *Release from ORR Custody* (Jan. 30, 2015) available at https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied (stating that a sponsor of an unaccompanied alien child must "notify the local Immigration Court or the [BIA] within 5 days of any change of address or phone number of the child").

[4] In some circumstances, DHS may file the charging document through EOIR's Interactive Scheduling System ("ISS") which requires DHS to input all of the information contained in the charging document, including the respondent's address if available, into that system which is then

regulation must provide the immigration court with an address and telephone number within five days by filing an EOIR-33 Change of Address Form. 8 U.S.C. § 1229(a)(1)(F); 8 C.F.R. § 1003.15(d). Additionally, the respondent must also file a new EOIR-33 every time he or she changes addresses. *Id*. Finally, upon the release of a respondent from custody, ICE is required to file Form I-830 which notifies EOIR that the respondent has been released from custody and provides the respondent's address and telephone number. 8 C.F.R. § 1003.19(g). Upon receipt of any of these forms, the immigration court clerk must enter the respondent's address and phone number into the CASE database. *See Uniform Docketing System Manual*, Ch. I at 3.

9.     The contact information available in EOIR's CASE database should be the same information that was either provided by DHS (on the charging document or through the filing of the Form I-830)[5] or by the respondent with a copy also required to be served on ICE.  When an alien changes address, in addition to filing the EOIR-33 form with the immigration court or the BIA, the respondent must also serve a copy on Immigration and Customs Enforcement ("ICE").  *See e.g.*, U.S. Dept. of Justice, EOIR, Form EOIR-33/IC (Dec. 2019) available at https://www.justice.gov/eoir/file/639916/download; 8 C.F.R. § 1003.32(a).  If the respondent does not certify that a copy was also served on ICE, the form should be rejected by EOIR. *See* Dept. of Justice, EOIR, Immigration Court Practice Manual at 55 (Nov. 2020) available at https://www.justice.gov/eoir/page/file/1343626/download.  EOIR does not accept notification of a respondent's change of address by other means. *Id*. at 18.

10.     Similarly, information about whether a respondent is represented by an attorney or qualified representative (as well as that attorney or representative's contact information) is entered into the CASE database upon the immigration court or the BIA's receipt of a properly filed Notice of Entry of Appearance. *See* 8 C.F.R. §§ 1003.2(g)(1), 1003.17(a). The attorney or qualified representative is also required to serve a copy of that document

---

pulled into and automatically recorded in EOIR's CASE system.
[5]   Similarly, when ORR releases a child from custody to a sponsor it notifies DHS and DHS will file notice with the immigration court of the sponsor's address and phone number.

on ICE. *See* 8 C.F.R. § 1003.32(a); Immigration Court Practice Manual at 20-21.

11.     Because documentation showing an alien's address is either in the possession of ICE initially or is required to be served on ICE subsequently and documentation establishing a respondent's representation is required to be served on ICE, all information in EOIR's CASE database regarding a respondent's address and representation status should also be in the possession of ICE.

12.     On November 25, 2020, EOIR's OGC provided OIL with the above discussed information available in EOIR's CASE database for the minors listed in the October 31, 2020 *Ms. L* spreadsheet provided by OIL. OIL had asked EOIR's OGC to prioritize obtaining information for the minors first. I understand that OIL provided that information to Plaintiffs' counsel, under the protective order, on around the same date.

13.     On December 14, 2020, EOIR's OGC provided OIL with the above discussed information for the adult class members listed in the October 31, 2020 *Ms. L.* spreadsheet.

14.     On December 22, 2020, OIL reached out to EOIR's OGC with a request to provide the same contact information but this time for a list of class members and their minor children involved in the *Ms. J.P.* litigation, *Ms. J.P. et al., v. Barr, et al.*, 18-cv-06081 (JAK) (C.D. Cal. 2018). On December 23, 2020, EOIR provided this information to OIL.

15.     On January 4, 2020, OIL again reached out to EOIR's OGC with a request to provide the same information for a second list of class members and their minor children involved in the *Ms. J.P.* litigation. On January 8, 2021, EOIR provided the requested information.

16.     EOIR is not a named Defendant in the *Ms. L.* or *Ms. J.P.* litigation. EOIR's mission is to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws through immigration court proceedings, BIA appellate reviews, and administrative hearings. EOIR has no authority over the "detention and removal program" which is a function of the DHS. 6 U.S.C. § 251(2). Accordingly, EOIR's OGC was not asked by OIL to be involved in defending the litigation or in efforts to locate class members and their separated children. Prior to being contacted on October

26, 2020, EOIR's OGC was not aware that it potentially had information (*e.g.*, information not already in the possession of Defendant agencies DHS or ORR) that might assist with efforts to locate and contact class members and their separated children.[6] However, EOIR's OGC promptly provided OIL with the requested information once it was informed of the Government's need, and OGC remains willing to work with OIL and our federal partners to the extent EOIR can be of assistance.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 13th Day of January, 2021 in Falls Church, Virginia.

JILL ANDERSON
Digitally signed by JILL ANDERSON
Date: 2021.01.13 10:01:18 -05'00'

Jill Anderson
General Counsel

---

[6] EOIR's OGC was contacted in 2018 in reference to the *Ms. L.* and *Ms. J.P.* litigation. ORR asked EOIR to provide the name and contact information for any immigration counsel representing minor children of class members. EOIR's OGC provided that information, and there was no subsequent request for updated information. DHS and ORR also contacted EOIR's OGC with a request to facilitate the docketing of removal cases for certain children who were represented by attorneys and were seeking a voluntary departure order from the immigration court in order to be returned to their parents in their home countries. Outside of these limited requests, EOIR's OGC was not participating in the litigation and was not involved in, or up-to-speed on, Government efforts to reunite class members and separated minors.