UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
_____
                              )
MS. L., ET AL.,               )
                              )   CASE NO. 18CV0428-DMS
          PETITIONERS-PLAINTIFFS, )
                              )
VS.                           )
                              )
                              )
                              )
                              )
U.S. IMMIGRATION AND CUSTOMS  )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,  ) FRIDAY, JANUARY 15, 2021
                              )    1:30 P.M. CALENDAR
          RESPONDENTS-DEFENDANTS. )
-------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

**TELEPHONIC STATUS CONFERENCE**

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ANAN BALAKRISHNAN, ESQ.
                           DANIEL GALINDO,ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


 ALSO APPEARING:           HALEY COSTELLO-ESSIG, ESQ.
                           SIRINE SHEBAYA, ESQ.
                           STEVEN HERZOG,ESQ.
                           DAVID MARSHALL, ESQ.
                           CATHERINE WEISS, ESQ.
                           EMILY BORK,ESQ.
```

1    SAN DIEGO, CALIFORNIA — FRIDAY, JANUARY 15, 2021 — 1:37 P.M.

2                              *   *   *

3              THE CLERK:  NO. 4 ON CALENDAR, CASE NO. 18CV0428,

4    MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

5    A STATUS CONFERENCE.

6              IF I COULD HAVE COUNSEL PLEASE STATE THEIR

7    APPEARANCES.

8              MS. FABIAN:  THIS IS SARAH FABIAN FOR THE

9    DEFENDANTS.

10             MR. GELERNT:  THIS IS LEE GELERNT FOR MS. L.

11             MR. GALINDO:  THIS IS DANIEL GALINDO FOR MS. L.

12             MS. SHEBAYA:  THIS IS SIRINE SHEBAYA FOR THE DORA

13   PLAINTIFFS.

14             MS. COSTELLO-ESSIG:  THIS IS HALEY COSTELLO-ESSIG

15   FOR MMM.

16             MS. BORK:  THIS IS EMILY BORK.

17             THE CLERK:  COULD YOU PAUSE ONE MOMENT.

18             THE LAST ONE IS EMILY BORK?

19             MS. BORK:  YES.  EMILY BORK FOR DORA.  THANK YOU.

20             MR. HERZOG:  SORRY IF I INTERRUPTED.  STEVEN HERZOG

21   FOR THE PLAINTIFFS STEERING COMMITTEE.

22             MS. WEISS:  CATHERINE WEISS.

23             THE CLERK:  WAS THAT CATHERINE WEISS?

24             MS. WEISS:  YES.  THANKS.

25             THE CLERK:  AND WHO WAS NEXT?


                          JANUARY 15, 2021

1          **MR. BALAKRISHNAN:**  THIS IS ANAND BALAKRISHNAN FOR

2    THE MS. L. PLAINTIFFS.

3          **THE CLERK:**  I JUST WANT TO GO THROUGH IT.  FOR THE

4    GOVERNMENT I HAVE SARAH FABIAN; FOR MS. L. I HAVE LEE GELERNT

5    AND ANAND BALAKRISHNAN; FOR THE DORA PLAINTIFFS SIRINE SHEBAYA

6    AND EMILY BORK; AND FOR MMM PLAINTIFFS HALEY COSTELLO-ESSIG;

7    STEERING COMMITTEE I HAVE STEVEN HERZOG; FOR THE OBJECTORS

8    CATHERINE WEISS.

9          DID I MISS ANYONE?

10         **MR. HERZOG:**  I THINK MY COLLEAGUE DAVID MARSHAL,

11   ALSO FROM THE STEERING COMMITTEE, TRIED TO CHIME IN.

12         **THE CLERK:**  THANK YOU.

13         **MR. MARSHALL:**  I DID.  THANK YOU.

14         **THE COURT:**  AND WE HAVE DANIEL GALINDO.

15         **THE CLERK:**  DANIEL GALINDO IS ALSO ON THE LINE?

16         **MR. GALINDO:**  YES.

17         **THE CLERK:**  THANK YOU.

18         **THE COURT:**  OKAY.  THANK YOU, COUNSEL.  I APPRECIATE

19   YOUR APPEARANCES.

20         I HAVE REVIEWED THE JOINT STATUS REPORT.  I HAVE

21   ALSO REVIEWED THE INSPECTOR GENERAL'S REPORT FROM DOJ.

22         AND WITH RESPECT TO THE JOINT STATUS REPORT IT

23   APPEARS, WITH RESPECT TO THE MMM SETTLEMENT PROCEDURES, THAT

24   IS PROCEEDING SMOOTHLY AND THERE ARE NO ISSUES AT THIS TIME.

25         LET ME MOVE TO -- IF WE CAN CIRCLE BACK AND ADDRESS


JANUARY 15, 2021

1    ANY OTHER OUTSTANDING ISSUES AS TO ANY MATTERS AT THE

2    CONCLUSION.

3            LET ME MOVE TO THIS ISSUE WITH RESPECT TO THE DATA

4    THAT WAS PROVIDED THROUGH THE EOIR DATABASES.

5            I APPRECIATE, MS. FABIAN, ALL OF THE INFORMATION YOU

6    HAVE PROVIDED, AS WELL AS THE DECLARATIONS, WHICH I HAVE

7    REVIEWED.

8            IT APPEARS TO ME, CREDITING THOSE DECLARATIONS, THAT

9    THE GOVERNMENT PROCEEDED WITH THE ASSUMPTION THAT THE DATA IN

10   THE EOIR DATABASES WOULD BE SIMILAR OR DUPLICATIVE OF THE

11   INFORMATION THAT ICE WOULD HAVE IN ITS DATABASES.  AND FOR

12   THAT REASON COMMANDER WHITE AND OTHERS WERE UNAWARE THAT THERE

13   WAS ANY ADDITIONAL DATA OF RELEVANCE IN THE EOIR DOCUMENTATION

14   OR DATABASES UNTIL DECEMBER OF 2020.

15           SO IT WOULD SEEM TO ME, BASED ON THIS INFORMATION,

16   THAT THERE WAS NO INTENTIONAL WITHHOLDING OR WRONGDOING ON THE

17   PART OF THE GOVERNMENT.  AND THAT THE FOCUS OUGHT TO BE, NOW

18   HAVING THE BENEFIT OF THAT INFORMATION, THAT ADDITIONAL DATA

19   IN THE EOIR DATABASES, TO USE THAT FOR THE BENEFIT OF

20   REUNIFICATION.

21           MR. GELERNT, DO YOU HAVE ANY DIFFERENT ASSESSMENT

22   BASED ON THE INFORMATION YOU HAVE?

23           **MR. GELERNT:**  I DO, YOUR HONOR.  AND I DON'T KNOW

24   THAT I HAVE A DIFFERENT ASSESSMENT WITH RESPECT TO COMMANDER

25   WHITE.  I UNDERSTAND WHAT COMMANDER WHITE IS SAYING, THAT HE

JANUARY 15, 2021

1    DID NOT LEARN UNTIL OCTOBER 26 THAT THERE WAS ADDITIONAL

2    INFORMATION IN EOIR.  BUT I DO HAVE REAL CONCERNS WITH THE

3    GOVERNMENT'S EXPLANATION.

4          I THINK THAT IF YOU BOIL IT DOWN THE GOVERNMENT IS

5    ESSENTIALLY SAYING, WELL, WE SHOULD HAVE KNOWN THAT THERE WAS

6    INFORMATION IN THE EOIR DATABASE.  AND I THINK, OBVIOUSLY, IT

7    IS NOT OUR RESPONSIBILITY TO KNOW WHAT IS IN THE ACTUAL

8    DATABASES.

9          AND THE GOVERNMENT IS ALSO SUGGESTING THAT WE SHOULD

10   HAVE SPECIFICALLY ASKED FOR THE EOIR, THAT IS A VARIANT OF THE

11   SAME ARGUMENT.  BUT WE HAVE ALWAYS ASKED FOR ALL INFORMATION

12   FROM THE GOVERNMENT.

13         I THINK, YOU KNOW, MR. HERZOG CAN EXPLAIN TO YOU,

14   IF NECESSARY, SOME OF THE EMAIL EXCHANGES HE HAD WITH

15   DEFENDANTS, BACK IN AUGUST OF 2019, IN WHICH HE IS

16   SPECIFICALLY SAYING THE GOVERNMENT.

17         BUT BEYOND THAT I WOULD MAKE A COUPLE OF POINTS, AND

18   WE ARE HAPPY TO SUBMIT SOMETHING IN WRITING.

19         ONE POINT IS THAT IF YOU LOOK AT THE LAST FOOTNOTE

20   IN MS. ANDERSON'S AFFIDAVIT, WHICH IS EXHIBIT D, SHE NOTES IN

21   THE LAST FOOTNOTE, NOTE 6, THAT EOIR WAS ASKED BACK IN 2018

22   FROM THE MS. L. COUNSEL, FOR INFORMATION.  AND SO I THINK BACK

23   AS FAR AS 2018 THE GOVERNMENT KNEW THAT EOIR HAD INFORMATION.

24         AND SO I THINK FOR THE GOVERNMENT TO SUGGEST THAT

25   THEY DIDN'T KNOW -- AGAIN, PUTTING ASIDE WHAT COMMANDER WHITE

JANUARY 15, 2021

1    KNEW BECAUSE HE HAS A VERY SPECIALIZED ROLE OVER THERE IN HHS,

2    WHAT HE KNEW.  I THINK THE GOVERNMENT, AS A WHOLE, HAD TO

3    KNOW, ESPECIALLY BECAUSE THEY ASKED FOR IT BACK IN 2018, THAT

4    THE EOIR HAD INFORMATION.

5            I WOULD ALSO NOTE THAT AS TO ICE I THINK THERE IS

6    TWO POINTS ABOUT THAT.  THAT AS THE AFFIDAVITS NOTE IT IS NOT

7    ALWAYS GOING TO BE DUPLICATIVE INFORMATION BECAUSE THE ICE

8    DATABASE DOES NOT GET AUTOMATICALLY UPDATED WHEN INFORMATION

9    GOES INTO EOIR, THAT INDIVIDUAL HAS TO SEPARATELY PUT IT IN TO

10   SUPPLY IT TO BOTH AGENCIES.  SO ICE WOULD NOT NECESSARILY BE

11   COMPLETELY DUPLICATIVE.

12           BUT I THINK THE MORE FUNDAMENTAL POINT IS THAT WE

13   WEREN'T GETTING -- IF ICE GENUINELY HAD ALL OF THIS

14   INFORMATION WE WEREN'T GETTING IT.  SO I THINK FUNDAMENTALLY

15   WHERE THE GOVERNMENT FELL SHORT IS IN NOT UPDATING THE

16   INFORMATION AND NOT CONTINUOUSLY GIVING US MORE INFORMATION.

17           THE GOVERNMENT SAYS, WELL, WE DIDN'T REALLY KNOW

18   WHAT THE PLAINTIFFS WERE DOING OR WHAT INFORMATION THEY WOULD

19   NEED.

20           I THINK, YOU KNOW, EVERYONE, LITERALLY GLOBALLY,

21   EVERYONE KNEW WE WERE SEARCHING FOR THESE FAMILIES.  AND I

22   DON'T THINK IT WOULD BE A SURPRISE TO ANYBODY, MUCH LESS THE

23   GOVERNMENT, THAT PHONE NUMBERS WOULD BE HELPFUL, ADDRESSES

24   WOULD BE HELPFUL.

25           SO EVEN IF YOU TOOK EOIR OUT OF IT WE SHOULD HAVE


JANUARY 15, 2021

1  BEEN GETTING UPDATED INFORMATION FROM ICE AND OTHER DATABASES,

2  INCLUDING THE USCIS DATABASE WHICH WE JUST GOT AFTER THE EOIR,

3  EVEN LATER IN 2020, BECAUSE PEOPLE FILE APPLICATIONS FOR

4  RELIEF AND HAVE ADDITIONAL ADDRESSES AND PHONE NUMBERS.

5          SO I THINK, YOU KNOW, PUTTING ASIDE COMMANDER

6  WHITE'S ROLE IN THIS, I WOULD BE SURPRISED IF HE ACTUALLY WERE

7  TO SAY, OH, YOU DIDN'T GIVE OVER THE EOIR DATABASE AND THAT

8  WOULD -- YOU KNOW, I THINK HE WOULD HAVE BEEN SURPRISED THAT

9  THE EOIR INFORMATION WASN'T GIVEN OVER.

10          I THINK IT IS JUST NOT CREDIBLE FOR THE GOVERNMENT

11  TO SAY THEY DIDN'T KNOW THAT INFORMATION WASN'T FLOWING TO US,

12  EITHER FROM UPDATED INFORMATION IN THE ICE DATABASE, OTHER

13  DATABASES, OR EOIR; ESPECIALLY BECAUSE THEY ASKED FOR THE

14  INFORMATION FROM EOIR IN 2018.

15          I THINK IT IS THE HEIGHT OF UNFAIRNESS FOR THE

16  GOVERNMENT TO SAY, WELL, YOU SHOULD HAVE KNOWN EXACTLY WHAT

17  DATABASES TO GET INFORMATION FROM.

18          AND I THINK THE LAST THING I WOULD NOTE IS THEY SAY,

19  WELL, YOU SHOULD HAVE BEEN TALKING TO OTHER NONPROFITS LIKE

20  THE SENECA GROUP.

21          WELL, SENECA ONLY ASKED FOR THE EOIR DATA BECAUSE WE

22  ASKED, AND THEY DIDN'T -- THAT WASN'T UNTIL LATE OCTOBER.  SO

23  EVEN IF WE WERE SUPPOSED TO BE SHARING, REACHING OUT TO EVERY

24  NONPROFIT CONSTANTLY TO FIND OUT WHAT THEY HAD, THAT WOULDN'T

25  HAVE BEEN UNTIL LATE OCTOBER, EARLY NOVEMBER ANYWAY.  BUT THE

JANUARY 15, 2021

1    GOVERNMENT IS THE DEFENDANT IN BOTH CASES AND OBVIOUSLY SHOULD
2    BE KNOWING WHAT INFORMATION BOTH SIDES ARE GETTING.
3             BUT, IN ANY EVENT, I THINK IT ALL COMES DOWN TO MR.
4    HERZOG SPECIFICALLY IN EMAILS ASKED DEFENDANTS IN AUGUST OF
5    2019, IS THERE ANY MORE INFORMATION THAT THE GOVERNMENT, AS A
6    WHOLE, HAS?
7             AND I THINK OBVIOUSLY THE GOVERNMENT KNEW THAT WAS A
8    CONTINUING OBLIGATION TO KEEP GIVING US INFORMATION, AS THEY
9    SAW IN EACH JSR REPEATEDLY THAT WE WERE NOT FINDING FAMILIES.
10   AND AS WE WERE EXPLAINING TO THEM IN THE STATUS HEARINGS THAT
11   IT WAS VERY DIFFICULT TO ON-THE-GROUND SEARCH WITHOUT SPECIFIC
12   PHONE NUMBERS AND ADDRESSES.
13            SO, YOU KNOW, I WOULD JUST STATE ALL THAT.  I DON'T
14   KNOW WHERE THE COURT WANTS TO GO.  I DON'T KNOW WHETHER MR.
15   HERZOG WANTS TO ADD ANYTHING ABOUT HIS EMAIL EXCHANGES WITH
16   THE GOVERNMENT.  BUT I THINK IT WAS VERY CLEAR WE WERE ASKING
17   FOR ALL INFORMATION THE GOVERNMENT HAD ON AN ONGOING BASIS.
18            **THE COURT:**  MR. GELERNT, THIS NEW INFORMATION
19   PROVIDED THROUGH THIS EOIR DATABASE, WHAT ARE WE LOOKING AT?
20   IS THERE A LOT OF HELPFUL INFORMATION WITH NEW CONTACTS AND
21   FRUITFUL AREAS TO EXPLORE?  CAN YOU AND/OR MR. HERZOG
22   ILLUMINATE US ON WHAT THE EOIR DATABASE PROVIDES.
23            **MR. GELERNT:**  YES, SIR.  I WILL LET MR. HERZOG GO
24   INTO ADDITIONAL DETAIL IF THE COURT WANTS.  BUT THERE ARE NEW
25   PHONE NUMBERS THAT WE HAVE NEVER HAD BEFORE, UPDATED


                        JANUARY 15, 2021

1  ADDRESSES, PHONE NUMBERS.

2     SOME OF IT IS STALE BY NOW BECAUSE WE ARE JUST

3  GETTING IT, AND SO THAT HAS BEEN A PROBLEM.  I DON'T KNOW IF

4  WE HAD GOTTEN IT ON AN UPDATED BASIS EVERY MONTH WHETHER --

5  BUT WE ARE -- I THINK THERE IS NO QUESTION WE WILL FIND

6  ADDITIONAL FAMILIES FROM THIS INFORMATION.

7     BUT I CAN LET MR. HERZOG SPEAK TO HIS CORRESPONDENCE

8  WITH THE GOVERNMENT BACK IN 2019 AND WHAT THIS NEW INFORMATION

9  PROVIDES, IF HE WOULD LIKE.

10    **THE COURT:**  YES.

11     MR. HERZOG, PERHAPS, ON THE COURT'S FIRST QUESTION,

12  THE EOIR DATABASE, DOES IT PROVIDE A LOT OF NEW CONTACT

13  INFORMATION?  AND, IF SO, CAN YOU GIVE US A NUMBER OR AN

14  ACCOUNTING OF HOW MUCH INFORMATION, NEW INFORMATION, YOU

15  RECEIVED.

16    **MR. HERZOG:**  SURE.  THERE IS INFORMATION FOR -- I

17  DON'T KNOW THE EXACT NUMBERS, BUT SEVERAL HUNDRED PHONE

18  NUMBERS THAT WE HAVE HAD TO DE-DUPE IT AND WORK THROUGH THE

19  INFORMATION, BUT THERE ARE SEVERAL HUNDRED PHONE NUMBERS THAT

20  WE DID NOT HAVE BEFORE.  WE ARE NOW WORKING THROUGH THAT AND

21  MAKING PHONE CALLS.  WE HAVE MADE, YOU KNOW, OVER 200 PHONE

22  CALLS, I THINK AT THIS POINT, TO DIFFERENT -- TO THESE

23  NUMBERS.  WE ARE WORKING THROUGH IT.  BUT THERE IS A LOT THAT

24  WE DID NOT HAVE BEFORE.

25    **THE COURT:**  ALL RIGHT.


    JANUARY 15, 2021

1          **MR. HERZOG:**  AND TO TALK JUST BRIEFLY, LET ME

2     JUST -- BECAUSE MR. GELERNT NOTED IT.

3          I WENT BACK TO MY CORRESPONDENCE AND, YOU KNOW, WHEN

4     I SAW WHAT THE GOVERNMENT WAS ASSERTING IN THESE PAPERS, AND

5     WHAT IT ASSERTED AT THE LAST STATUS CONFERENCE.  AND, YOU

6     KNOW, I HAD AN EMAIL EXCHANGE WITH COUNSEL FOR THE GOVERNMENT,

7     WITH MS. FABIAN.

8          I WROTE TO HER ON AUGUST 2ND, 2019.  SAID:  I WRITE

9     CONCERNING TELEPHONE CONTACT INFORMATION THE GOVERNMENT HAS

10    PROVIDED FOR FAMILIES IN THE EXPANDED MS. L. CLASS.

11         AND I ASKED THAT THEY PROVIDE ANY ADDITIONAL PHONE

12    NUMBERS IN THE GOVERNMENT'S POSSESSION FOR THE PARENTS LISTED

13    IN THE INFORMATION THAT THEY HAD PROVIDED.

14         SHE WROTE BACK TO ME COPYING, YOU KNOW, BOTH THE

15    ACLU AND MR. STEWART AND MS. MURLEY:  HHS AND DHS BOTH HAVE

16    CONFIRMED THAT WHAT IS BEING PROVIDED TO YOU IS ALL OF THE

17    LAST CONTACT INFORMATION IN THE GOVERNMENT'S POSSESSION.

18         AND I WROTE BACK AGAIN, ACTUALLY, A FEW DAYS LATER.

19    SAID:  JUST TO CONFIRM, ARE YOU STATING THAT THE GOVERNMENT

20    DOES NOT HAVE ANY ADDITIONAL PHONE NUMBERS FOR THE PARENTS?

21         AND SHE WROTE BACK AGAIN AND SAID:  IT IS MY

22    UNDERSTANDING THAT DHS AND HHS DO NOT HAVE ANY ADDITIONAL

23    CONTACT INFORMATION FOR THE PARENTS.

24         SO I WAS FOCUSED ON GETTING WHATEVER THE GOVERNMENT

25    HAD AT THAT POINT IN TIME.  AND SHE AND HER COLLEAGUES WERE


JANUARY 15, 2021

1    RESPONDING BY ASSERTING THAT I HAD WHAT THEY HAD, AS I
2    UNDERSTOOD IT.

3            **THE COURT:**  ALL RIGHT.  AND JUST SO I AM CLEAR,
4    GOING BACK TO THE FIRST POINT OF INQUIRY.

5            YOU RECEIVED SEVERAL HUNDRED NEW PHONE NUMBERS AND
6    CONTACT INFORMATION.  AND DID I UNDERSTAND YOU TO SAY THAT
7    DURING THE PERIOD OF TIME THAT YOU RECEIVED THIS EOIR DATABASE
8    YOU HAVE MADE ABOUT 200 PHONE CALLS FROM THAT NEW LIST?

9            **MR. HERZOG:**  I THINK IT IS IN EXCESS OF THAT AT THIS
10   POINT.  AND WE HAD TO WORK THROUGH THE DATA AND DE-DUPE IT AND
11   FIGURE OUT WHAT WE HAD.  BUT, YES, WE ARE WORKING THROUGH IT.

12           AND I THINK WE HAVE REACHED SOME NUMBERS, THERE ARE
13   MORE NUMBERS WE NEED TO CALL MULTIPLE TIMES.  BUT WE HAVE
14   REACHED SOME PARENTS THROUGH THIS, I THINK WE WILL LIKELY
15   REACH MORE.  BUT SOME OF THE NUMBERS DON'T WORK AND SOME ARE
16   STALE AT THIS POINT BECAUSE THEY ARE NOW SEVERAL YEARS OLD.

17           **THE COURT:**  AND THE INFORMATION YOU PROVIDED AT PAGE
18   16 WITH THE 611 REMAINING CHILDREN THAT YOU ARE LOOKING FOR,
19   DID THIS -- SO THIS EOIR DATABASE, YOU HAVE HAD IT FOR A
20   COUPLE OF MONTHS NOW.  AND SO EVEN WITH THE BENEFIT OF THAT
21   INFORMATION AND A COUPLE HUNDRED OR SO PHONE CALLS TO THE NEW
22   CONTACT INFORMATION, THE BOTTOM LINE IS WE STILL HAVE 611
23   UNACCOUNTED-FOR CHILDREN.

24           **MR. HERZOG:**  I THINK IT IS ACTUALLY -- I MEAN, NOT A
25   WHOLE LOT SMALLER THAN THAT, BUT I THINK IT IS PROBABLY AROUND

JANUARY 15, 2021

1    10 OR 15 SMALLER AS OF TODAY THAN IT WAS WHEN WE REPORTED.

2    BUT, YES, THERE ARE IN THAT BALLPARK.

3              **THE COURT:**  THE 392 REMAINING FOR CHILDREN WHOSE

4    PARENTS WERE REMOVED FROM THE UNITED STATES, I AM

5    UNDERSTANDING THAT THAT, SIMILAR TO OUR PRIOR STATUS

6    CONFERENCES, REMAINS ESSENTIALLY AT A VERY SLOW PACE IN LIGHT

7    OF THE PANDEMIC AND YOUR INABILITY, THROUGH THE NGO'S, TO

8    ACTIVELY SEARCH FOR THOSE PARENTS.

9              **MR. HERZOG:**  BECAUSE OF THE PANDEMIC, AND ACTUALLY

10   IN THE LAST MONTH AND A HALF OR SO BECAUSE OF THE HURRICANES

11   THAT HAVE HIT THE REGION.  BUT THAT HURRICANE DELAY, I THINK,

12   IS NOW CLEARING UP.  THE PANDEMIC, OF COURSE, IS STILL AN

13   ISSUE.

14              SO, YES, IT IS SLOW PROGRESS.  WE ARE WORKING

15   THROUGH IT.  WE ARE TRYING TO ACTUALLY DEVOTE ADDITIONAL

16   RESOURCES TO IT AT THIS POINT.  BUT IT IS DIFFICULT WORK

17   BECAUSE OF THE PANDEMIC.

18              **THE COURT:**  ALL RIGHT.

19              AND CAN YOU GIVE SOME INSIGHT INTO THE 201 CHILDREN

20   WHOSE PARENTS ARE BELIEVED TO BE IN THE UNITED STATES.  IS

21   THIS A GROUP THAT WILL BE EASIER TO TRACK THAN THE PARENTS WHO

22   WERE REMOVED FROM COUNTRY, OR IS IT GOING TO BE A CHALLENGE

23   BECAUSE SOME OF THEM MAY BE IN COUNTRY AND NOT WANT TO BE

24   LOCATED.

25              **MR. HERZOG:**  YOU HAVE IDENTIFIED WHAT IS A VERY REAL

JANUARY 15, 2021

1  ISSUE, WHICH IS THAT FOR MANY OF THESE PARENTS, ONE, THEY MAY

2  NOT WANT TO BE LOCATED.

3        SOME OF THEM, OF COURSE, ARE IN THE U.S., SO MANY OF

4  THEM ARE NOW WITH THEIR CHILDREN.  AND WHEN WE CALL THEY DON'T

5  ANSWER OR THEY DON'T WANT TO SPEAK TO US BECAUSE THEY HAVE NO

6  REASON TO SPEAK TO US, FOR SOME OF THEM.

7        BUT, I MEAN, WE HAVE BEEN WORKING THROUGH THAT GROUP

8  AS WELL AND WORKING WITH SOME -- SENECA IS ALSO TRYING TO

9  REACH OUT TO THAT GROUP INTENSIVELY.  AND WE ARE MAKING SOME

10  PROGRESS, BUT IT IS DIFFICULT TO REACH FOR SOME OF THE REASONS

11  YOU HAVE IDENTIFIED, YES.

12        **THE COURT:**  OF THESE 201 PARENTS THERE COULD BE A

13  SIGNIFICANT NUMBER OF THOSE PARENTS WHO ARE ALREADY REUNIFIED

14  WITH THEIR CHILDREN, BUT YOU SIMPLY HAVE NOT BEEN ABLE TO MAKE

15  CONTACT WITH THEM.

16        **MR. HERZOG:**  YES.  I WOULD SAY MANY OF THEM ARE.

17        **THE COURT:**  ALL RIGHT.

18        **MR. HERZOG:**  LIKELY REUNIFIED.  OF COURSE WE CAN'T

19  VERIFY THAT UNTIL WE VERIFY THAT.  BUT, YES.

20        **THE COURT:**  ALL RIGHT.

21        ARE YOU HEARING ANY INFORMATION THIRD-HAND?  SO YOU

22  MAY BE CONTACTING, FOR EXAMPLE, A FORMER FAMILY MEMBER OR

23  SPONSOR WHO IS INDICATING THAT THE CHILDREN ARE RELOCATED WITH

24  THEIR PARENTS IN COUNTRY; IS THAT KIND OF INFORMATION COMING

25  UP?

JANUARY 15, 2021

1      **MR. HERZOG:**  YES, IT IS, IN ACTUALLY A FAIR NUMBER

2   OF CASES.  WE HAVEN'T REPORTED THOSE CASES AS RESOLVED BUT

3   THERE ARE A NUMBER OF CASES WE ARE WORKING THROUGH.  ACTUALLY

4   WE ARE PLANNING TO BRING THAT UP AT A FUTURE CONFERENCE.

5      BUT THERE ARE A NUMBER OF CASES WHERE WE HAVE BEEN

6   IN TOUCH, FOR EXAMPLE, WITH A RELATIVE IN GUATEMALA, ACTUALLY,

7   WHERE WE HAVE FOUND, AND WE HAVE HEARD THAT THE PARENT IS BACK

8   IN THE UNITED STATES.  OR WE HAVE BEEN IN TOUCH WITH A FAMILY

9   MEMBER WHO HAS REPORTED THAT THE PARENT AND CHILD ARE TOGETHER

10  BUT WE CAN'T FIND THAT PARENT AND CHILD.  SO WE HAVE A GOOD

11  NUMBER OF THOSE CASES.

12     **THE COURT:**  ALL RIGHT.  AND WE WILL LOOK FORWARD TO

13  THAT REPORTING IN THE FUTURE.

14     OF THE 18 THAT YOU HAVE IDENTIFIED HERE, IT APPEARS

15  THERE IS SIMPLY NO INFORMATION ON THOSE CHILDREN; IS THAT

16  CORRECT?  OR THEIR PARENTS?

17     **MR. HERZOG:**  I DON'T KNOW NONE, BUT WE HAVE NO PHONE

18  NUMBERS TO CALL AND WE ARE -- YOU KNOW, SOME OF THOSE WE ARE

19  TRYING TO FIND BASED ON NAMES AND IN SOME CASES SOME LIMITED

20  ADDRESS INFORMATION OR LOCATION INFORMATION.  BUT IT IS VERY

21  LIMITED INFORMATION.

22     **THE COURT:**  OKAY.

23     DO YOU HAVE ANY IDEA, OR IS IT JUST TOO SOON TO

24  KNOW, GIVEN THE CHANGE IN ADMINISTRATION AND THE DISCUSSIONS

25  THAT WE HAVE BEEN HEARING ABOUT FROM PRESIDENT-ELECT BIDEN

JANUARY 15, 2021

1    ABOUT A TASK FORCE AND OTHERS, WHAT THIS SEARCH EFFORT IS

2    GOING TO LOOK LIKE?  OR THAT YOU MAY, YOUR COMMITTEE AND MR.

3    GELERNT, MAY BE COORDINATING WITH GOVERNMENT ACTORS THROUGH

4    THE BIDEN ADMINISTRATION IN SEARCHING FOR THESE 611 CHILDREN

5    AND PARENTS?

6              **MR. HERZOG:**  MR. GELERNT CAN ADDRESS THAT, IF HE

7    WANTS.

8              **MR. GELERNT:**  YES.  YES, YOUR HONOR.  THIS IS MR.

9    GELERNT.

10             I THINK IT IS TOO SOON TO KNOW ANYTHING OFFICIAL.  I

11   THINK IT IS VERY LIKELY THAT WE WILL BE WORKING WITH THE BIDEN

12   ADMINISTRATION, BUT I THINK ANY OTHER SPECIFICS ARE TOO SOON

13   TO KNOW.  AND SO WE WILL REPORT TO THE COURT IF THERE IS

14   ANYTHING THAT AFFECTS THE LITIGATION.

15             **THE COURT:**  ALL RIGHT.  OKAY.  THANK YOU.

16             MS. FABIAN, THERE HAS BEEN A LOT DISCUSSED HERE.

17   HOW WOULD YOU RESPOND?

18             **MS. FABIAN:**  YOUR HONOR, I THINK, YOU KNOW, I

19   APPRECIATE YOUR HONOR'S STATEMENT IN FINDING THAT THERE WAS NO

20   WRONGDOING ON THE PART OF THE GOVERNMENT.  I AGREE WITH THAT

21   FINDING.

22             WITH RESPECT TO MR. GELERNT'S CONCERNS, OF COURSE,

23   YOU KNOW, MR. HERZOG IS REFERENCING A CONVERSATION THAT

24   HAPPENED REALLY IN THE MIDDLE WHILE THE GOVERNMENT WAS STILL

25   IMPLEMENTING ITS ORIGINAL PLAN TO PRODUCE INFORMATION.


                    JANUARY 15, 2021

```
 1            I UNDERSTAND AT THAT TIME, YOU KNOW, THE BACK AND
 2    FORTH ABOUT WHETHER THERE WAS MORE INFORMATION FROM THE
 3    GOVERNMENT.  YOU KNOW, I CAN'T SPECIFICALLY RECALL THE
 4    CONVERSATION.  I PULLED IT UP ON MY COMPUTER WHILE WE WERE
 5    TALKING.
 6            BUT I SPECULATE -- OR, YOU KNOW, I GUESS I WILL SAY
 7    MY BEST UNDERSTANDING OF THAT CONVERSATION IS THAT I WAS
 8    REFERRING TO THE INFORMATION THAT WE WERE ALREADY PULLING AS
 9    PART OF THE PROCESS.
10            YOU KNOW, THROUGHOUT -- I DID DO A BIT OF A DIVE
11    INTO THE NEW, YOU KNOW, EOIR DATA THAT WAS PRODUCED AND
12    COMPARING IT TO SOME -- THE DATA THAT WE HAVE PRODUCED TO
13    SENECA STARTING AS EARLY AS JANUARY OF 2020, AND THERE IS A
14    LOT OF OVERLAP IN THAT INFORMATION.
15            SO WHILE THE EOIR DATA MAY HAVE BEEN ALL NEW TO THE
16    STEERING COMMITTEE, HAD THEY BEEN OBTAINING THAT SENECA
17    INFORMATION, AS WE HAD EXPECTED THEM TO DO BY PUTTING THEM IN
18    TOUCH, THAT IT WOULD HAVE BEEN LESS NEW INFORMATION THAN
19    PERHAPS IT WAS.
20            BUT THAT SAID, I THINK, YOU KNOW, IT IS -- IN
21    HINDSIGHT WOULD MONTHLY UPDATING OF DATA BEEN SOMETHING THAT
22    THE PARTIES SHOULD HAVE AGREED TO IN 2019?  YOU KNOW, PERHAPS
23    THAT IS -- PERHAPS THAT IS CORRECT; BUT IT WASN'T DISCUSSED
24    AND IT WASN'T AGREED TO.
25            I THINK THE GOVERNMENT HAS SHOWN AN INTEREST IN
```

JANUARY 15, 2021

1   TALKING TO THE STEERING COMMITTEE AND BEING INVOLVED IN THE

2   PROCESS OR KNOWING MORE ABOUT THE PROCESS AND OPENING LINES OF

3   COMMUNICATION.  AND THAT HASN'T ALWAYS BEEN RECEIVED BY THE

4   STEERING COMMITTEE, AND THAT COMMUNICATION HAS NOT BEEN AS

5   OPEN AS I THINK WE WOULD HAVE LIKED.

6           SO I CAN'T SAY THAT THINGS COULDN'T HAVE BEEN DONE

7   DIFFERENTLY, BUT I DID SUBMIT THAT THE FINDING OF NO

8   WRONGDOING IS CORRECT.  THERE WAS NOT A CONCERTED EFFORT TO

9   HIDE THIS INFORMATION.  THERE CERTAINLY WAS A REASONABLE

10  BELIEF THAT THERE WAS INFORMATION ALREADY PROVIDED AND THAT

11  THE STEERING COMMITTEE HAD ACCESS TO UPDATED INFORMATION ABOUT

12  INDIVIDUALS WHO WERE INSIDE THE UNITED STATES THROUGH SENECA.

13          SO IF WE CAN, AS I SAID AT THE LAST HEARING, I THINK

14  THE APPROPRIATE APPROACH AT THIS POINT IS TO CONTINUE TO

15  WORK -- TO MOVE FORWARD AND WORK TOGETHER, AND IDENTIFY

16  INFORMATION, YOU KNOW, THAT CAN BE HELPFUL AS MUCH AS POSSIBLE

17  MOVING FORWARD.

18          **THE COURT:**  ALL RIGHT.  LET ME MAKE AN OBSERVATION

19  HERE, AND PERHAPS I READ TOO MUCH INTO COMMANDER WHITE'S

20  DECLARATION.  BUT AT PARAGRAPH 6 HE INDICATES THAT HE DID NOT

21  INCLUDE THE EOIR DATA, AND THAT HE WAS NOT AWARE THAT EOIR

22  POSSESSED ANY DATA THAT WOULD BE USEFUL FOR IDENTIFICATION OR

23  LOCATION OF PREVIOUSLY SEPARATED CHILDREN AND/OR THEIR

24  PARENTS.

25          AND THEN I TURNED TO THE OTHER DECLARATIONS, OF JAY

JANUARY 15, 2021

1  VISCONTI AND OTHERS, INDICATING THAT ORDINARILY THERE IS
2  OVERLAP AND THAT THE DATABASES BETWEEN ICE AND EOIR ARE
3  SIMILAR, LARGELY DUPLICATIVE.

4          BUT IN THIS CASE, FOR REASONS SET OUT IN THE
5  DECLARATIONS, THOSE ASSUMPTIONS WERE IN ERROR.  AND THE EOIR
6  DATABASE IN FACT HAS, IT APPEARS, QUITE A BIT OF ADDITIONAL
7  CONTACT INFORMATION FOR PARENTS.

8          SO, CLEARLY, MISTAKES WERE MADE AND ERRONEOUS
9  ASSUMPTIONS WERE MADE.  BUT ON THE ISSUE OF INTENTIONAL
10 WITHHOLDING I WAS READING INTO THESE DECLARATIONS, AND
11 PARTICULARLY THAT OF THE STATEMENTS OF COMMANDER WHITE, THAT
12 THESE ASSUMPTIONS WERE JUST BEING MADE AND THEREFORE NO ONE
13 REALLY FOCUSED ON THE EOIR DATABASE; WHICH, OF COURSE, IS
14 UNFORTUNATE BECAUSE THE SOONER THE STEERING COMMITTEE HAD THIS
15 KIND OF INFORMATION THE BETTER OFF IT WOULD HAVE BEEN.  AND,
16 AS MR. HERZOG POINTS OUT, SOME OF THE CONTACT INFORMATION IS
17 NOW STALE.

18         I AM NOT SURE, BUT I WOULD DEFER TO YOU, MR.
19 GELERNT, WHAT YOU WOULD LIKE TO DO WITH THIS ISSUE OF THE EOIR
20 DATABASE AND WHETHER THERE WAS ANY WRONGDOING ON THE PART OF
21 THE GOVERNMENT.

22         I WOULD KEEP AN OPEN MIND TO THAT.  I DID NOT INTEND
23 TO MAKE ANY KIND OF FINDING IN FAVOR OF THE GOVERNMENT, IT WAS
24 JUST MY INITIAL OBSERVATION BASED ON THE DECLARATION THAT
25 THERE DOES NOT APPEAR TO BE ANY INTENTIONAL MISCONDUCT.


                    JANUARY 15, 2021

 1          AND THE THOUGHT I WOULD HAVE, AS I MENTIONED

 2   EARLIER, IS THAT THE FOCUS REALLY OUGHT TO BE ON, WE NOW HAVE

 3   THE DATA, WE OUGHT TO BE FOCUSING ON REUNIFICATION.

 4          I AM NOT SURE WHAT A COURT FINDING WOULD DO, ONE WAY

 5   OR ANOTHER, ON THE EOIR DATABASE AND WHETHER IT WAS WITHHELD

 6   INTENTIONALLY OR NEGLIGENTLY OR WHATEVER, WOULD BE OF ANY

 7   BENEFIT TO THIS PARTICULAR LITIGATION.

 8          MR. GELERNT.

 9          **MR. GELERNT:**  YES, YOUR HONOR.

10          **MS. FABIAN:**  YOUR HONOR, CAN I JUST -- THIS IS SARAH

11   FABIAN.  I JUST WANT TO MAKE ONE OBSERVATION ON WHAT YOUR

12   HONOR SAID ABOUT THE DATA.

13          I THINK, JUST TO CLARIFY, WHILE THE EOIR DATA

14   PROVIDED RECENTLY WAS APPARENTLY UPDATED FROM THE ICE DATA

15   PROVIDED BACK IN OCTOBER OF 2019, I THINK IT IS DIFFICULT TO

16   SAY WHETHER THOSE ARE UPDATES THAT MAY HAVE OCCURRED IN

17   BETWEEN THAT TIME FRAME.

18          IT WOULD HAVE -- I GUESS TO SORT OF SAY IT A

19   DIFFERENT WAY.  IT IS NOT REALLY POSSIBLE TO KNOW NOW WHAT

20   EOIR DATA PRODUCED IN AUGUST OF 2019 WHEN MR. HERZOG WAS

21   ASKING, OR IN OCTOBER OF 2019 AT THE CONCLUSION OF THAT

22   PROCESS, WHETHER THAT WOULD HAVE BEEN SUBSTANTIALLY DIFFERENT

23   FROM THE ICE DATA PRODUCED AT THE SAME TIME.

24          THE FACT THAT THE EOIR DATA IS DIFFERENT NOW SIMPLY

25   REFLECTS THAT THERE IS UPDATED INFORMATION WITH EOIR NOW.  BUT


                    JANUARY 15, 2021

1  IT IS ALSO POSSIBLE, AND EVEN LIKELY, THAT HAVING PRODUCED THE

2  EOIR DATA AT THAT TIME WOULD NOT HAVE SUBSTANTIALLY ADDED TO

3  THE INFORMATION, EVEN AS MUCH AS IT DID WHEN UPDATED DATA WAS

4  PRODUCED.

5        **THE COURT:**  ALL RIGHT.  THANK YOU.

6        MR. GELERNT.

7        **MR. GELERNT:**  YES, YOUR HONOR.  JUST A COUPLE OF

8  THINGS.

9           ONE IS ON YOUR SORT OF FUNDAMENTAL POINT THAT

10  ULTIMATELY WE NEED TO KEEP OUR EYE ON THE BALL ON MOVING

11  FORWARD AND FINDING THESE FAMILIES.  WE AGREE WHOLEHEARTEDLY.

12  WE DO NOT INTEND TO LET ANY OF THIS DETRACT US FROM MOVING

13  FORWARD AND USING THE DATA WE NOW HAVE TO FIND THESE FAMILIES.

14  SO WE ABSOLUTELY AGREE THAT THAT IS THE KEY ISSUE HERE.

15           IN TERMS OF WHAT WENT WRONG, I THINK IT IS A LITTLE

16  DIFFICULT TO TELL FROM THE CAREFULLY-WORDED AFFIDAVITS.  AND

17  WHAT I WOULD SUGGEST IS, YOUR HONOR, THAT WE, AS THE

18  PLAINTIFFS AND THE STEERING COMMITTEE, DISCUSS IT AND ADVISE

19  THE COURT IF WE THINK THERE IS ANY FURTHER ACTION TO BE TAKEN

20  BY THE COURT, AND WHAT THAT MIGHT BE.  BUT RIGHT NOW TO HOLD

21  IT IN ABEYANCE, AND WE WILL ADVISE YOU ONE WAY OR THE OTHER.

22           THE ONLY OTHER THING I WOULD JUST ADD, YOUR HONOR,

23  IS THAT I THINK YOU ARE MAKING AN IMPORTANT POINT ABOUT THE

24  EOIR DATA NOT NECESSARILY OVERLAPPING WITH THE ICE DATA OR

25  NOT.  BUT I THINK THE ADDITIONAL POINT, AND MAYBE THE LARGER

JANUARY 15, 2021

1  POINT ABOUT THE DATA, IS THAT EVEN IF EVERYONE ASSUMED THE

2  EOIR DATA AND ICE DATA WERE EXACTLY COTERMINOUS, WHAT REALLY

3  WAS A PROBLEM IS THE LACK OF UPDATING OF EVEN THE ICE DATA AND

4  THE DHS DATA.

5          AND I THINK MS. FABIAN IS HIGHLIGHTING THAT, THAT

6  WHO KNOWS WHAT THAT ONE SNAPSHOT WOULD HAVE BEEN BACK IN

7  AUGUST OR OCTOBER OF 2019.

8          BUT I THINK WE EXPECTED, AND PROBABLY EVERYONE

9  EXPECTED, THAT IF THE GOVERNMENT WERE GETTING NEW PHONE

10  NUMBERS AND ADDRESSES FOR THESE FAMILIES EVERY MONTH, THEY

11  WOULD BE TURNING THEM OVER KNOWING THAT WE ARE SEARCHING FOR

12  THEM.

13          SO I THINK WE JUST ASSUMED THAT THERE WASN'T

14  ADDITIONAL DATA.  AND I THINK THAT IS AS BIG A PROBLEM AS NOT

15  GETTING THE EOIR SPECIFIC DATA IS NOT GETTING UPDATED DATA

16  FROM EVEN THE DATABASES THAT THEY ORIGINALLY GAVE US.

17          AND SO, IN ANY EVENT, WE WILL DISCUSS AMONGST

18  OURSELVES AND ADVISE THE COURT IF WE THINK THERE IS ANYTHING

19  GOING FORWARD.  BUT WE WILL CERTAINLY NOT TAKE OUR EYE OFF THE

20  BIGGER PICTURE OF FINDING THE FAMILIES IN USING THIS DATA.

21          **THE COURT:**  ALL RIGHT.  THAT IS VERY FAIR.

22          **MS. FABIAN:**  YOUR HONOR --

23          **THE COURT:**  I WILL CIRCLE BACK TO YOU IN A MINUTE,

24  MS. FABIAN.

25          BUT, TO BE CLEAR, I MAKE NO FINDINGS ON THIS


                    JANUARY 15, 2021

 1   PARTICULAR ISSUE ABOUT THE EOIR DATABASE AND WHETHER IT WAS

 2   NEGLIGENTLY OR INTENTIONALLY NOT DISCLOSED, WE WILL SIMPLY

 3   DEFER ON THAT ISSUE.  IT IS FAIR AND APPROPRIATE FOR MR.

 4   GELERNT AND PLAINTIFFS TO MEET AND CONFER ON THAT.  I DON'T

 5   HAVE THE BENEFIT OF ANY BRIEFING, OR ANY EVIDENCE FROM THE

 6   PLAINTIFFS ON THIS ISSUE.  AND SO I WILL SIMPLY DEFER ON THAT

 7   ISSUE.

 8           AND, OF COURSE, AS WE HAVE BEEN DISCUSSING, URGE THE

 9   CONTINUED DILIGENT SEARCH FOR THE PARENTS AND CHILDREN,

10   PARTICULARLY WITH THE NEW, OR RELATIVELY NEW, CONTACT

11   INFORMATION IN THE EOIR DATABASE.

12           MS. FABIAN.

13           **MS. FABIAN:**  I JUST –– I WANTED TO SAY THAT AS FAR

14   AS PROCEDURALLY, YOU KNOW, THE GOVERNMENT SUBMITTED THIS

15   INFORMATION IN THE INTEREST OF PUTTING THIS ISSUE BEHIND US

16   AND EXPLAINING TO THE COURT, YOU KNOW, OUR CONTINUED DESIRE

17   FOR PARTICIPATION AND COOPERATION WITH THIS OFFICE.

18           I THINK IF MR. GELERNT WANTS TO FILE A MOTION AND

19   PUT SOMETHING BEFORE THE COURT THEN I UNDERSTAND HE IS GOING

20   TO CONSIDER THAT.  I THINK THAT IS THE APPROPRIATE WAY FORWARD

21   FOR THIS ISSUE TO REMAIN BEFORE THE COURT.  OTHERWISE I THINK

22   THAT AS THIS –– YOU KNOW, SOMETIMES WITH THESE ISSUES THAT WE

23   DEAL WITH IN THIS STATUS CONFERENCE PROCESS, IT MAY BE AT A

24   TIME WHERE IF THERE IS NOT A MOTION BEFORE THE COURT THEN IT

25   IS NOT SOMETHING THAT IS APPROPRIATE.  THIS ISN'T ABOUT

JANUARY 15, 2021

1  IMPLEMENTATION OF THE P.I. AND IT IS NOT REALLY APPROPRIATELY

2  ADDRESSED IN THIS FORUM.

3       **THE COURT:**  YES.  I THINK WHAT WE WILL DO IN LIGHT

4  OF OUR STATUS REPORTS OCCURRING EVERY SIX WEEKS IS IF MR.

5  GELERNT DECIDES, IN HIS CONSIDERED JUDGMENT, THAT THEY OUGHT

6  TO BRING A MOTION, THEN OF COURSE HE WOULD BE FREE TO DO THAT.

7  AND THE COURT COULD BE NOTIFIED AT THE NEXT STATUS CONFERENCE

8  ACCORDINGLY.

9       SO I AGREE THAT ON THIS ISSUE FOR NOW WE WILL JUST

10  DEFER IT.

11       AND THEN, MR. GELERNT, IF YOU WANT TO PURSUE IT BY

12  WAY OF MOTION, WE CAN ADDRESS THAT AT THE NEXT -- AT THE

13  APPROPRIATE POINT.

14       **MR. GELERNT:**  UNDERSTOOD, YOUR HONOR.

15       **THE COURT:**  ONE FINAL COMMENT ON DATA SHARING.  IT

16  IS OBVIOUS, FROM THE INCEPTION OF THIS LITIGATION AND FROM THE

17  PRELIMINARY INJUNCTION THAT WAS ISSUED, THAT ONE OF THE

18  IMPORTANT POINTS TO FOLLOW UP ON IN THIS LITIGATION IS

19  CONTINUED AND IMPROVED DATA SHARING BETWEEN AND AMONG THE

20  VARIOUS EXECUTIVE BRANCH AGENCIES:  DHS, HHS, AND DOJ.  AND OF

21  COURSE THE INSPECTOR GENERAL REPORT THAT CAME OUT

22  YESTERDAY POINTS EXACTLY TO THAT, IN PARTICULAR BETWEEN DOJ

23  AND DHS AND THE COURTS.

24       SO THIS EOIR DATABASE ISSUE IS CERTAINLY AN EXAMPLE

25  OF THE FAILURE OF THE VARIOUS AGENCIES TO COMMUNICATE FULLY.


JANUARY 15, 2021

1    IN THIS CASE IT INVOLVES EOIR AND ICE, BOTH WITHIN DHS, BUT IT

2    DOES HIGHLIGHT THE NEED FOR CONTINUED EFFORTS THAT ARE BEING

3    MADE IN THIS LITIGATION FOR THESE AGENCIES TO COMMUNICATE, AND

4    WE ARE MAKING SIGNIFICANT PROGRESS IN THAT REGARD.

5              AND I APPRECIATE, IN THIS STATUS REPORT, THE

6    INFORMATION THAT WAS PROVIDED WITH RESPECT TO DOJ MEETING AND

7    CONFERRING, WITH DHS AND OTHERS, TO PUT IN PLACE SOME KIND OF

8    MEMORANDUM OF UNDERSTANDING AND SHARED SYSTEMS SO THAT THERE

9    IS REGULAR AND ACCURATE COMMUNICATION AND INFORMATION SO THAT

10   AS SEPARATIONS GO FORWARD -- BECAUSE CERTAINLY FAMILY

11   SEPARATIONS WILL BE ON A MUCH-REDUCED SCALE AND LOOK VERY

12   DIFFERENT FROM WHAT HAPPENED IN THIS LITIGATION, BUT THERE

13   WILL CERTAINLY BE A LIMITED NUMBER OF CASES WHERE PARENT AND

14   CHILD ARE SEPARATED.  IF THE PARENT, FOR EXAMPLE, COMMITS A

15   SIGNIFICANT FELONY, PERHAPS, HYPOTHETICALLY SPEAKING, A

16   DRUG-RELATED FELONY CONVICTION WHERE HE OR SHE IS

17   APPROPRIATELY CHARGED AND NECESSARILY SEPARATED FROM THEIR

18   CHILD, THAT THERE WILL BE IN PLACE, BETWEEN DOJ, DHS, AND HHS,

19   ACCURATE AND TIMELY COMMUNICATION SO THAT PARENT AND CHILD, AT

20   ALL TIMES, KNOW WHERE THEY ARE AND ARE ABLE TO COMMUNICATE.

21             AND THE INSPECTOR GENERAL POINTS THAT OUT.  WE HAVE

22   BEEN DEALING WITH THAT IN THIS LITIGATION, AND I THINK WE ARE

23   MAKING GOOD PROGRESS IN THAT REGARD.

24             IS THERE ANYTHING FURTHER ON THAT ISSUE?  I WAS

25   CONTENT TO LEAVE IT FOR OUR NEXT STATUS REPORT, WITH THE

JANUARY 15, 2021

1    UNDERSTANDING THE VARIOUS PERSONNEL WE HAVE IN PLACE IN THIS

2    LITIGATION WOULD CONTINUE TO MEET AND CONFER AND CONTINUE TO

3    MAKE PROGRESS ON THE SHARED COMMUNICATIONS.

4         **MR. GELERNT:**  NOTHING FROM ME, YOUR HONOR.  MR.

5    GELERNT.

6         I DON'T KNOW WHETHER MS. WEISS, WHO IS ON THE PHONE,

7    HAS ANYTHING ON THE INFORMATION SHARING, BUT NOTHING FROM THE

8    MS. L. PLAINTIFFS.

9         **THE COURT:**  MS. WEISS, ANYTHING FROM YOUR SIDE?

10        **MS. WEISS:**  THANK YOU, YOUR HONOR.  NO, WE ARE

11   CONTINUING TO MEET AND CONFER ON THE INFORMATION SHARING

12   ISSUES, AND WE ARE HOPING THAT WE MAKE SOME SIGNIFICANT

13   PROGRESS.

14        **THE COURT:**  ALL RIGHT.

15        MS. FABIAN, ANYTHING ELSE?

16        I WOULD BE PREPARED TO SIGN OFF AT THIS TIME.  AND,

17   OF COURSE, I KNOW THAT EVERYONE IS WORKING AS DILIGENTLY AS

18   POSSIBLE ON REUNIFICATION.  THAT'S THE CENTRAL PURPOSE, AT

19   THIS POINT, OF THIS LITIGATION.  AND, UNFORTUNATELY, A

20   SIGNIFICANT PORTION OF THAT IS SLOWED IN LIGHT OF THE PANDEMIC

21   AND INABILITY OF MR. HERZOG AND THE NGO'S TO HAVE BOOTS ON THE

22   GROUND IN ANY MEANINGFUL WAY IN CENTRAL AMERICA.  BUT

23   OTHERWISE IT APPEARS WE ARE DOING ALL WE CAN TO LOCATE AND

24   REUNIFY.

25        I WOULD PROPOSE THAT THE NEXT STATUS REPORT OCCUR --


JANUARY 15, 2021

1    THE HEARING OCCUR ON FRIDAY, FEBRUARY 26, AT 1:30.  WITH A

2    JOINT STATUS REPORT TO BE SUBMITTED FEBRUARY 24.

3              ARE THERE ANY OTHER COMMENTS OR THOUGHTS BEFORE WE

4    CLOSE?

5              **MR. GELERNT:**  THIS IS MR. GELERNT.  NONE FROM MS.

6    L., YOUR HONOR.

7              **MS. FABIAN:**  NO, YOUR HONOR.

8              **THE COURT:**  THANK YOU VERY MUCH.  HAVE A GOOD, SAFE

9    WEEKEND IN HONOR OF MARTIN LUTHER KING, AND GOING FORWARD WITH

10   THE INAUGURATION NEXT WEEK.  AND I WILL LOOK FORWARD TO

11   SPEAKING WITH THE PARTIES ON FEBRUARY 26.

12             **MR. GELERNT:**  THANK YOU, YOUR HONOR.

13             **MS. FABIAN:**  THANK YOU, YOUR HONOR.

14             **MS. WEISS:**  THANK YOU.

15

16                             *   *   *

17             I CERTIFY THAT THE FOREGOING IS A CORRECT
               TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
18             IN THE ABOVE-ENTITLED MATTER.

19             S/LEEANN PENCE                    1/18/2021
               LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
20

21

22

23

24

25

                         JANUARY 15, 2021