BRIAN BOYNTON
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

                    Petitioners-Plaintiffs,

          vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

                    Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report (JSR) by 3:00 pm on February 24, 2021, in anticipation of the status conference scheduled at 1:30 pm on February 26, 2021. The parties submit this joint status report in accordance with the Court's instruction.

///

///

///

## I.   DEFENDANTS' POSITIONS

### A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms[1]** | Total number of executed election forms received by the Government | **444 (260 Parents/184 Children)[2]** |
| | • Number who elect to receive settlement procedures | **282 (157 Parents/125 Children)** |
| | • Number who waive settlement procedures | **162 (103 Parents/59 Children)[3]** |
| **Interviews** | Total number of class members who received interviews | **176[4]** |
| | • Parents who received interviews | **92** |
| | • Children who received interviews | **84** |

[1] The number of election forms reported here is the number received by the Government as of February 23, 2021.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **72[5]** |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | **70[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **2** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |
| | • Number of children determined not to establish CF by USCIS | **0** |

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

18cv428 DMS MDD

| | | |
|---|---|---|
| | Total number of affirmative asylum decisions by USCIS | **24** |
| | • Number of parents granted asylum by USCIS | **3** |
| | • Number of parents referred to immigration court | **5** |
| | • Number of children granted asylum by USCIS | **4**[9] |
| | • Number of children referred/returned to immigration court | **12** |
| **Removals** | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | **103 Parents**[10] |

**B. The President's February 2, 2021 "Executive Order on the Establishment of Interagency Task Force on the Reunification of Families"**

On February 8, 2021, the Court ordered the parties to provide the Court with their positions "on how the President's February 2, 2021 'Executive Order on the Establishment of Interagency Task Force on the Reunification of Families' affects

---

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

[10] This number is as of January 6, 2021. Please note that 109 were reported in the last JSR, but six were subsequently identified as exclusions.

this case." ECF No. 573. Defendants believe that the work of the Task Force will resolve many—if not all—outstanding issues in this litigation, and Defendants look forward to working with Plaintiffs with that goal in mind.

On February 22, 2021, the parties held a call to discuss the issue of reunifications and the work of the Task Force. Defendants explained to Plaintiffs that the Task Force is actively meeting and intends to consult with Plaintiffs and other stakeholders who have been involved in the reunification process. A call between the task force and Plaintiffs' counsel was subsequently held on February 23, and Defendants will work with Plaintiffs' counsel to arrange additional discussions going forward as appropriate. The Task Force intends to use these discussions to develop more comprehensive plans regarding how it will move forward. Accordingly, Defendants ask the Court to allow them to file a further update on the work of the Task Force and its likely effect on this litigation on or before March 10, 2021. Plaintiffs have stated that they are in agreement with this proposal for moving forward on this issue.

## C. Government Processes, Procedures, and Tracking, for Separations Since June 26, 2018.

*Data Requested by Plaintiffs*.   Defendants continue to provide Plaintiffs updated reports containing information regarding parents and children separated since the Court's June 26, 2018 Order on a monthly basis.

*Processes and Procedures*.

In the May 27, 2020 Joint Status Report, Defendants provided the court with updated reporting regarding the various steps they have taken to implement Paragraph 5 of the preliminary injunction, ECF No. 83 at 24, ¶ 5, and improve the processes and procedures for information sharing between the agencies related to family separations. Defendants have continued to update the Court on developments regarding these processes, and have continued to address these issues with Plaintiffs as appropriate.

Following the July 10, 2020 status conference, the Court ordered that "Defendants shall provide a declaration from the Assistant Commissioner of OIT or other appropriate designee setting out the status of the development of the UIP and estimated completion date. The declarant should also address the Court's concerns about how the UIP will enable parents in criminal custody access to their children's location information and how the UIP will assist in reunification efforts when a parent is transferred from criminal custody to immigration custody." ECF No. 543 at 2. Defendants provided that information in the August 19, 2020, Joint Status Report, including a declaration from Robert J. Costello, Executive Director, Office of Information Technology, Enterprise Services, U.S. Customs and Border Protection, U.S. Department of Homeland Security. ECF No. 547. On October 20, 2020, and December 2, 2020, at the request of the Court, Defendants provided

additional declarations from Mr. Costello on the progress of the UIP. ECF Nos. 556-1, 560-1. The Court did not order a further update regarding the UIP this month, and Defendants have not identified any significant issues that require a further update from Mr. Costello at this time.

Defendants also are continuing their work to resolve what the Court has described as "the information gap between the Department of Justice (Bureau of Prisons and U.S. Marshal) [USMS] and the Department of Health and Human Services (ORR)." ECF No. 558, ¶ 1. USMS and ORR continue to work together to formalize the processes for information sharing between ORR and USMS. The presumptive goal of the ongoing discussions between these two agencies—and including other agencies as appropriate—will be to establish formalized notification and information sharing procedures between USMS and ORR to ensure that USMS—including all detention facilities housing these individuals—is made aware that it may have a separated parent in its custody. Once so notified, USMS will develop formalized procedures at each of its facilities that will allow parents to communicate with their children in ORR custody. USMS and ORR will work together to create a formalized process whereby the USMS will be able to arrange regular calls between the parent and child taking into consideration the wishes of the parent and child and the operational needs of the USMS and ORR facilities involved.

## II.   *MS. L.* PLAINTIFFS' POSITION

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,134 children of expanded class members.  The government has also identified 64 "recategorized" deported parents from the original class, who the Steering Committee has sought to contact as part of its efforts to reach members of the expanded class.[11]  The Steering Committee's recent efforts have been targeted at locating the parents of this group of 1,198 (1,134 plus 64) children.[12]

Of these 1,198 children, for 692 the Steering Committee has reached the parents (or their attorneys), or otherwise resolved the cases.  This represents an increase of 105 children's parents since our last status report.  We describe below the status of our continuing efforts to reach the parents of the remaining 506 children, down from 611 in the last status report.

The parents of 506 children fall into three groups.  First, there are approximately 322 children whose parents are believed to have been removed from the United States following separation from their children, and our efforts to locate them in their country of origin are ongoing.  Second, there is a group of approximately 168 children whose parents are believed to be in the United States,

---

[11] In its portion of the December 12, 2018 Joint Status Report, the government disclosed the existence of what we call the "Recategorized Original Class", *i.e.*, members of the original class who were not identified as part of the government's initial disclosures in the summer of 2018.  The government only provided contact information for this group in February 2019, after the Steering Committee's efforts to contact original class members had concluded – and so, as a logistical matter, the Steering Committee has conducted outreach to the 64 parents in this group who were deported following separation from their children, as part of the Steering Committee's efforts to contact *expanded* class members.

[12] Because some of the parents of these children entered with more than one child, there are 1,082 parents in this combined group.

1   and efforts to locate them in the United States are also ongoing.  Third, there is a

2   group of 16 children for whom the government has not provided a phone number for

3   the parent, child, sponsor or attorney.  This group previously numbered 18.

4   **B. <u>Steering Committee Efforts to Locate Parents</u>**

5   First, as previously reported, the Steering Committee attempts to reach all

6   parents, sponsors and attorneys by telephone.  The Steering Committee has renewed

7   these efforts and had been engaged in an effort to reach parents, where possible, by

8   using the additional contact information recently provided by the government from

9   databases of the Executive Office for Immigration Review and U.S. Customs and

10   Immigration Enforcement.  This information includes phone numbers that had not

11   previously been disclosed for children and parents, as well as contact information

12   for a number of attorneys.

13   Where those efforts are not successful, the Steering Committee has engaged

14   in time-consuming and arduous on-the-ground searches for parents.  These on-the-

15   ground searches have been focused abroad in the countries of origin of parents who

16   were removed from the United States following separation from their children.

17   These searches are ongoing by members of the Steering Committee, and we have

18   recently devoted additional resources to these efforts.  As previously reported, on-

19   the-ground searches for separated parents are ongoing when it is safe to do so, but

20   are limited and in some cases cannot take place due to risks associated with the

21   COVID-19 pandemic.

22   Also, as previously reported, the Steering Committee has established toll-free

23   telephone numbers in the United States, Guatemala, Honduras, Mexico and El

24   Salvador to receive inbound phone calls from potential members of the expanded

25   class.  The Steering Committee has distributed this number both by email and U.S.

26   Mail to a number of non-governmental organizations and other community

27   organizations in the United States, who may be able to help us locate parents because

28

they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers, and plans to renew its mailing effort with the new address information received for children and their attorneys from the government.

Additionally, as previously reported, the Steering Committee has undertaken broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. The Steering Committee has also arranged for advertisements on Spanish language radio in Central America. Those advertisements are set to air starting Thursday, February 25. The Steering Committee continues to work to identify opportunities to broadly disseminate the toll-free numbers through various media to maximize visibility to potential *Ms. L.* class members, including most recently by seeking to collaborate on such media outreach initiatives with other non-profit organizations.

The Steering Committee also receives additional contact information for a limited number of families from third parties, including a number of non-governmental organizations. The Steering Committee uses that information to re-attempt telephonic communication with all families for whom new contact information has become available, in addition to the efforts underway using new information provided by the government as described above.

### C. **Information Sharing**

The Parties continue to discuss issues with information-sharing and Plaintiffs do not have further updates for the Court at this time. Plaintiffs note that it is not yet

clear to what extent, if any, the new interagency task force on the reunification of families will address information sharing issues.

### D. **Return of Additional Deported Parents**

The parties are discussing avenues for relief for deported parents, and will continue to meet and confer, and report back to the Court.

### E. **The Effect of the Executive Order on the Establishment of an Interagency Task Force on the Reunification of Families**

The Court requested the input of the parties on how President Biden's creation of an interagency task force on the reunification of families affects this case. ECF 573. Plaintiffs look forward to working with the newly formed Task Force but as of now Plaintiffs are not aware of any specific actions the Task Force intends to take and await further guidance from the administration.

## III.    *MMM-Dora* **Plaintiffs' Report Regarding Settlement Implementation**

The parties continue to work together to implement the Settlement Agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise. With respect to the Court's February 8, 2021 Order (ECF No. 573) asking that the parties include how the President's February 2, 2021, Executive Order on the Establishment of Interagency Task Force on the Reunification of Families affects this case, the MMM and Dora Plaintiffs are able to continue their immediate and ongoing work to identify and notify potential class members of the Settlement Agreement and their rights thereunder, but

Plaintiffs also regard the Executive Order as having the potential to lead to recommendations for and the adoption of additional "immigration benefits" above and beyond those required by the parties' negotiated Settlement Agreement, which may lead to changes in the parties' implementation of the same.

DATED: February 24, 2021                 Respectfully submitted,


                                         /s/ Lee Gelernt
                                         Lee Gelernt*
                                         Judy Rabinovitz*
                                         Anand Balakrishnan*
                                         AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION
                                         125 Broad St., 18th Floor
                                         New York, NY 10004
                                         T:  (212) 549-2660
                                         F:  (212) 549-2654
                                         *lgelernt@aclu.org*
                                         *jrabinovitz@aclu.org*
                                         *abalakrishnan@aclu.org*

                                         Bardis Vakili (SBN 247783)
                                         ACLU FOUNDATION OF SAN DIEGO
                                         & IMPERIAL COUNTIES
                                         P.O. Box 87131
                                         San Diego, CA 92138-7131
                                         T: (619) 398-4485
                                         F: (619) 232-0036
                                         *bvakili@aclusandiego.org*

                                         Stephen B. Kang (SBN 292280)
                                         Spencer E. Amdur (SBN 320069)
                                         AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION
                                         39 Drumm Street
                                         San Francisco, CA 94111
                                         T:  (415) 343-1198
                                         F:  (415) 395-0950
                                         *skang@aclu.org*
                                         *samdur@aclu.org*

                                         *Attorneys for Petitioners-Plaintiffs*
                                         *\*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRIAN BOYNTON
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

*Attorneys for Respondents-Defendants*