| | |
|---|---|
| BRIAN BOYNTON | Lee Gelernt* |
| Acting Assistant Attorney General | Judy Rabinovitz* |
| CHRISTOPHER P. TENORIO | Anand Balakrishnan* |
| Deputy Assistant Attorney General | Daniel A. Galindo (SBN 292854) |
| WILLIAM C. PEACHEY | AMERICAN CIVIL LIBERTIES |
| Director | UNION FOUNDATION |
| Office of Immigration Litigation | 125 Broad St., 18th Floor |
| WILLIAM C. SILVIS | New York, NY 10004 |
| Assistant Director | T: (212) 549-2660 |
| Office of Immigration Litigation | F: (212) 549-2654 |
| SARAH B. FABIAN | *lgelernt@aclu.org* |
| Senior Litigation Counsel | *jrabinovitz@aclu.org* |
| FIZZA BATOOL | *abalakrishnan@aclu.org* |
| Trial Attorney | *dgalindo@aclu.org* |
| Office of Immigration Litigation | |
| U.S. Department of Justice | Bardis Vakili (SBN 247783) |
| Box 868, Ben Franklin Station | ACLU FOUNDATION OF |
| Washington, D.C. 20044 | SAN DIEGO & IMPERIAL |
| Telephone: (202) 532-4824 | COUNTIES |
| Fax: (202) 616-8962 | P.O. Box 87131 |
| | San Diego, CA 92138-7131 |
| RANDY S. GROSSMAN | T: (619) 398-4485 |
| Acting United States Attorney | F: (619) 232-0036 |
| SAMUEL W. BETTWY | *bvakili@aclusandiego.org* |
| Assistant U.S. Attorney | |
| California Bar No. 94918 | Stephen B. Kang (SBN 292280) |
| Office of the U.S. Attorney | Spencer E. Amdur (SBN 320069) |
| 880 Front Street, Room 6293 | AMERICAN CIVIL LIBERTIES |
| San Diego, CA 92101-8893 | UNION FOUNDATION |
| 619-546-7125 | 39 Drumm Street |
| 619-546-7751 (fax) | San Francisco, CA 94111 |
| | T: (415) 343-1198 |
| *Attorneys for Federal Respondents-Defendants* | F: (415) 395-0950 |
| | *skang@aclu.org* |
| | *samdur@aclu.org* |
| | |
| | *Attorneys for Petitioners-Plaintiffs* |
| | *Admitted Pro Hac Vice |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al., | Case No. 18cv428 DMS MDD |
| Petitioners-Plaintiffs, | |
| vs. | **JOINT STATUS REPORT** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Respondents-Defendants. | |

On August 16, 2021, the Court ordered the parties to file a Joint Status Report (JSR) by 3:00 pm on September 22, 2021, in anticipation of the status conference scheduled at 1:30 pm on September 24, 2021. ECF No. 612. In accordance with this order of the Court, the parties provide the below JSR.

///

///

///

## I.   DEFENDANTS' POSITIONS

### A. Update Regarding Government's Implementation of Settlement Agreement

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms**[1] | Total number of executed election forms received by the Government | 455 (266 Parents/189 Children)[2] |
| | • Number who elect to receive settlement procedures | 293 (163 Parents/130 Children) |
| | • Number who waive settlement procedures | 162 (103 Parents/59 Children)[3] |
| **Interviews** | Total number of class members who received interviews | 181[4] |
| | • Parents who received interviews | 95 |
| | • Children who received interviews | 86 |
| **Decisions** | Total number of Credible Fear Interview (CFI)/Reasonable Fear Interview (RFI) decisions issued for parents by USCIS | 73[5] |

---

[1] The number of election forms reported here is the number received by the Government as of September 21, 2021.

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings. This number includes credible fear and reasonable fear interviews, as well as affirmative asylum interviews.

[5] This number is the aggregate of the number of parents whose negative CFI/RFI determinations were reconsidered, number of parents whose negative CFI/RFI determination was unchanged, and individuals who were referred to 240 proceedings without interview because of a rare language. This number excludes 12 cases where a parent already had an NTA from ICE or was already ordered removed by an IJ (which are included in the interview totals).

| | | |
|---|---|---|
| | • Number of parents determined to establish CF or RF upon review by USCIS | 71[6] |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | 2 |
| | Total number of CFI decisions issued for children by USCIS | 73[7] |
| | • Number of children determined to establish CF by USCIS | 73[8] |
| | • Number of children determined not to establish CF by USCIS | 0 |
| | Total number of affirmative asylum decisions by USCIS | 28 |
| | • Number of parents granted asylum by USCIS | 4 |
| | • Number of parents referred to immigration court | 6 |
| | • Number of children granted asylum by USCIS | 5[9] |
| | • Number of children referred/returned to immigration court | 13 |

---

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

[9] This number includes children granted asylum as a dependent on their parent's asylum application.

| Removals | Number of class members who have been returned to their country of origin as a result of waiving the settlement procedures | 103 Parents[10] |
|---|---|---|

## B. Updated Reunification Numbers

On March 4, 2020, the parties submitted a Joint Status Report containing reporting on reunifications for the Original Class period. ECF No. 519. This was the final report of these reunification numbers made to the Court and stated that the report reflected "approximate numbers on these children maintained by ORR at least as of February 28, 2020." *Id.* at 2. Based on the data and records then available to the government, the report identified the final number of reunifications for a child with his or her separated parent as 2,166. *Id.* at 3.

More recently, as part of its work to identify and support families that were separated at the U.S.-Mexico border, the Family Reunification Task Force (FRTF), with the assistance of DHS data personnel, has reviewed all family separations known to have occurred between January 20, 2017 and January 20, 2021, and has classified the current reunification status of each separated child. *See* Declaration of Marc Rosenblum, attached hereto, ¶ 3. This review included a re-examination of the Legacy *Ms. L.* cases, and specifically of the 2,166 children identified to the court in the parties' JSR as having been reunified with his or her separated parent. *Id.* In the

---

[10] This number is as of September 21, 2021.

course of that re-examination the FRTF has determined, based on currently-available data, that 2,124 children were in fact reunified with separated parents as previously reported, but 42 children were either discharged to a parent other than the separated parent (13 children) or discharged to a sponsor other than the child's parent (29 children). *Id.*

The attached statement reflects an explanation of the research conducted by the DHS Office of Immigration Statistics (OIS) on behalf of the FRTF leading to these updated numbers. *See generally,* Rosenblum Declaration. The government has shared these updated numbers along with the explanation from OIS with counsel for Plaintiffs, and has identified to Plaintiffs the individuals who are the subject of these updates. ORR is also conducting further review of this update from OIS to determine if it has additional information to provide. The parties agree that it is possible that some of these children who were released to a sponsor other than the parent may have since reunified with their parents in a manner that is not captured by the government's data, and the parties are working together to identify those cases. Additionally, the government is working closely with counsel for the Plaintiffs to

ensure that these children and their parents are reunified and receive all appropriate support.

### C. The President's February 2, 2021 "Executive Order on the Establishment of Interagency Task Force on the Reunification of Families"

As noted in the parties' March 10, 2021 filing, the parties have entered into settlement negotiations which remain ongoing, and the Family Reunification Task Force (FRTF) is continuing its work both in parallel and in conjunction with these settlement discussions. ECF No. 578. Since the creation of the FRTF, a total of 50 separated children have been reunified with parents in the U.S and 85 people have been paroled as of September 20, 2021. The FRTF continues to focus on establishing contact with all families and working to increase the rate of reunifications.

The parties also are discussing settlement issues among themselves on a regular basis, and the next formal Settlement Conference with Magistrate Judge Dembin is scheduled on September 27, 2021. Issues previously reported on by Defendants in joint status reports are now being addressed by the parties as part of the ongoing settlement negotiations.

## II.   *MS. L.* PLAINTIFFS' POSITIONS

### A. Steering Committee Outreach to Sponsors and Parents of Children of Expanded Class Members

The government has provided eleven lists identifying 1,134 children of expanded class members. The government has also identified 64 "recategorized" deported parents from the original class, who the Steering Committee has sought to

contact as part of its efforts to reach members of the expanded class.[11] The Steering Committee's recent efforts have been targeted at locating the parents of this group of 1,198 (1,134 plus 64) children.[12]

Of these 1,198 children, for 895 the Steering Committee has reached the parents (or their attorneys), or otherwise resolved the cases. This represents an increase of 34 children's parents since our last status report. We describe below the status of our continuing efforts to reach the parents of the remaining 303 children, down from 337 in the last status report.

The parents of 303 children fall into three groups; in all three, searches are ongoing. First, there are approximately 218 children whose parents are believed to have been removed from the United States following separation from their children. Second, there is a group of approximately 73 children whose parents are believed to be in the United States. Third, there is a group of 12 children for whom the government has not provided a phone number for the parent, child, sponsor or attorney. This group has not changed since our last status report.

Steering Committee Efforts to Locate Parents

First, as previously reported, the Steering Committee attempts to reach all parents, sponsors and attorneys by telephone. The Steering Committee has renewed these efforts and had been engaged in an effort to reach parents, where possible, by using the additional contact information provided by the government in late 2020

---

[11] In its portion of the December 12, 2018 Joint Status Report, the government disclosed the existence of what we call the "Recategorized Original Class", *i.e.*, members of the original class who were not identified as part of the government's initial disclosures in the summer of 2018. The government only provided contact information for this group in February 2019, after the Steering Committee's efforts to contact original class members had concluded – and so, as a logistical matter, the Steering Committee has conducted outreach to the 64 parents in this group who were deported following separation from their children, as part of the Steering Committee's efforts to contact *expanded* class members.

[12] Because some of the parents of these children entered with more than one child, there are 1,082 parents in this combined group.

from databases of the Executive Office for Immigration Review and U.S. Customs and Immigration Enforcement. This information includes phone numbers that had not previously been disclosed for children and parents, as well as contact information for a number of attorneys.

Where those efforts are not successful, the Steering Committee has engaged in time-consuming and arduous on-the-ground searches for parents. These on-the-ground searches have been focused abroad in the countries of origin of parents who were removed from the United States following separation from their children. These searches are ongoing by members of the Steering Committee, and we have recently devoted additional resources to these efforts. As previously reported, on-the-ground searches for separated parents are ongoing when it is safe to do so, but are limited and in some cases cannot take place due to risks associated with the COVID-19 pandemic.

Also, as previously reported, the Steering Committee has established toll-free telephone numbers in the United States, Guatemala, Honduras, Mexico and El Salvador to receive inbound phone calls from potential members of the expanded class. The Steering Committee has distributed this number both by email and U.S. Mail to a number of non-governmental organizations and other community organizations in the United States, who may be able to help us locate parents because they work in the communities these parents are likely to have contact with. In addition, the Steering Committee sent letters in Spanish and English to approximately 1,600 addresses provided by the government for the potential class members that the Steering Committee has not yet reached. These letters explain our role in this action and invite parents to contact the Steering Committee to call these toll-free numbers. The Steering Committee continues to monitor voicemail boxes reachable via these toll-free numbers, and plans to renew its mailing effort with the

new address information received for children and their attorneys from the government.

Additionally, as previously reported, the Steering Committee has undertaken broad-based media outreach efforts to publicize the toll-free phone numbers created by the Steering Committee in Spanish language media. The Steering Committee has also arranged for advertisements on Spanish language radio in Central America. Those advertisements have begun airing. The Steering Committee continues to work to identify opportunities to broadly disseminate the toll-free numbers through various media to maximize visibility to potential *Ms. L.* class members, including seeking to collaborate on such media outreach initiatives with other non-profit organizations.

The Steering Committee also receives additional contact information for a limited number of families from third parties, including a number of non-governmental organizations. The Steering Committee uses that information to re-attempt telephonic communication with all families for whom new contact information has become available, in addition to the efforts underway using new information provided by the government as described above.

### B. Children incorrectly reported as reunited with their separated parent

The government previously alerted Plaintiffs that it would be correcting the number of original class children reunited with their parents, and recently disclosed to Plaintiffs a list of children whom its review could not confirm were reunited with their separated parent. These children were instead released to sponsors (including in some cases to the non-separated parent). Plaintiffs are reviewing this information, including any new declarations the government will be filing with this status report, and will make sure that outreach efforts to these families are based on accurate

information about whether they are currently reunited.

### III.  *MMM-Dora* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the Settlement Agreement approved on November 15, 2018. Class counsel are providing the Government with signed waiver forms as they are received from class members, and class counsel are continuing to work on outreach efforts to class members who may qualify for relief under the settlement. The parties continue to meet and confer on issues related to settlement implementation as they arise.

DATED: September 22, 2021           Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485

F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

BRIAN BOYNTON
Acting Assistant Attorney General
CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

*Attorneys for Respondents-Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>    Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>    Respondents-Defendants. | Case No. 18cv428 DMS MDD |

**DECLARATION OF MARC ROSENBLUM**

1. I, Marc Rosenblum, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge, and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

2. I am the Department of Homeland Security (DHS) Deputy Assistant Secretary for the Office of Immigration Statistics. I have been in this role five-and-a-half years (since January 2016). In August 2019 I was also designated the DHS Statistical Official pursuant to the Foundations of Evidence-Based Policymaking Act.

3. As part of its work to identify and support families that were separated at the U.S.-Mexico border, the Family Reunification Task Force (FRTF) reviewed all family separations known to have occurred between Jan. 20, 2017 and Jan. 20, 2021 and classified the current reunification status of each separated child. This review included a re-examination of the Legacy *Ms. L.* cases, and specifically the 2,166 children identified to the court in the parties' joint status reports as having a child who was

1

reunified with his or her separated parent. In the course of that re-examination, the FRTF has determined that 2,124 children were in fact reunified with separated parents as previously reported, but 42 children were either discharged to a parent other than the separated parent (13 children) or discharged to a sponsor other than the child's parent (29 children).  This statement summarizes research conducted by the DHS Office of Immigration Statistics (OIS) on behalf of the FRTF that led to these conclusions.

4. On July 9, 2021 the Department of Homeland Security, Office of Immigration Statistics (OIS) received updated information from the Office of Refugee Resettlement (ORR) describing ORR's most up to date discharge data about each of the 5,648 children known to have been separated between July 1, 2017 and Jan. 20, 2021, including the 2,815 children associated with the Legacy *Ms. L* class. On July 20, 2021 OIS received a follow-up file from ORR that identified the 2,166 children who comprised the 2,166 reunifications with separated parents identified as part of the March 4, 2020 Joint Status Report, which was the final joint status report in which these reunification numbers were reported to the Court..

5. OIS's initial work to review and validate the 2,166 previously-reported reunifications with separated parents began with using child A number as a unique identifier.  OIS then merged the July 9 ORR discharge details dataset with the July 20 list of reported reunifications and with information from the master list of family separations to assemble a dataset focused on the 2,166 previously reported reunifications that included the following key variables:

- ORR Child A number
- DHS Child A number
- ORR Discharge type
- ORR Sponsor relationship to child
- ORR Sponsor first name
- ORR Sponsor last name
- DHS Separation Parent first name
- DHS Separation Parent last name

6. OIS then conducted a manual comparison of ORR sponsor first and last names to DHS separation parent first and last names to construct a sponsor/parent name match variable. The sponsor/parent name

2

match variable was coded as a match (YES) if and only if one of the following five conditions were met: 1) first name and last name matched nearly exactly; 2) first name and last name fields were reversed but otherwise matched nearly exactly; 3) one of two first names matched and last name matched exactly; 4) one of two last names matched and first names matched exactly; or 5) the only difference between the name sets was that one or both pairs of names in the first and/or last name fields were in reversed order.

OIS used the merged dataset plus the constructed name match variable to assign each previously reported reunification to one of five categories:

Table 1: Initial OIS Analysis of Previously Reported Reunifications

| Category | Definition | Count |
|---|---|---|
| Confirmed reunification in home country | • HHS discharge type = voluntary departure (see table note) | 97 |
| Confirmed reunification in the United States | • ORR discharge type does not equal voluntary departure<br>• ORR sponsor relationship to child = father or mother<br>• Parent/sponsor name match = YES | 1,939 |
| Initial sub-total: confirmed reunifications | | 2,036 |
| Reunification not confirmed: need additional data | • Discharge information provided by ORR described a discharge other than the one associated with the Ms. L reunification | 6 |
| Reunification not confirmed: ambiguous sponsor relationship to child | • ORR discharge type does not equal voluntary departure<br>• ORR sponsor relationship to child does not = father or mother | 78 |
| Reunification no confirmed: ambiguous name match data | • ORR discharge type does not equal voluntary departure<br>• ORR sponsor relationship to child = father or mother<br>• Parent/sponsor name match = NO | 46 |
| Initial sub-total: reunifications unable to be confirmed | | 130 |
| Total | | 2,166 |

Note: In consultation with the Ms. L Steering Committee, OIS assumes that children associated with the Legacy Ms. L class who were returned to their home countries under an order of voluntary departure may be presumed to be confirmed reunifications on the basis of the Steering Committee's oversight of voluntary departure cases at the time.

3

7. On August 12, 2021, OIS received additional data from ORR that included updated discharge information for the 6 children who had been in ORR custody on multiple occasions and whose initial data described a discharge other than the one associated with the Legacy Ms. L reunification. Upon analysis of the updated discharge data, all 6 of these cases met the criteria for inclusion in the Confirmed reunification in the United States category.

8. OIS generated lists of child A numbers for cases previously identified as confirmed reunifications with separated parents but for which the initial ORR data did not indicate the child was discharged to a father or mother or for which parent/sponsor name match = NO. On August 11, 2021, OIS provided the list of A Numbers for which the sponsor relationship to child was not a parent to ORR and requested that ORR conduct additional research on the discharge conditions for these children. On August 18, 2021, ORR provided additional information about these cases, which allowed OIS to classify them into one of four categories. The following table identifies these categories, along with subsequent steps taken by OIS and the FRTF to further validate ORR's findings:

Table 2: Secondary ORR Research on Cases with Ambiguous Sponsor Relationship to Child Data

| ORR Finding | Additional Analysis | Count |
|---|---|---|
| Child reunited with separation parent in ICE custody | Additional research required: A numbers provided to ICE to confirm that reunification occurred and obtain name of reunification parent | 35 |
| Child returned under order of voluntary departure | Additional research required: A numbers provided to ICE to confirm record of voluntary departure | 12 |
| Child was discharged to parent | OIS analysis of parent/sponsor name match = YES<br>*Update final records:* child was reunified with separation parent | 13 |
| Child was discharged to parent other than separated parent | ORR sponsor relationship to child = father or mother<br>OIS analysis of parent/sponsor name match = NO<br>*Update final records:* child was not reunified with separation parent | 1 |
| Child was discharged to sponsor other than parent | *Update final records:* child was not reunified with separation parent | 17 |
| Total | | 78 |

4

9. On August 17, 2021, OIS provided the list of A numbers of previously reported reunifications for which Parent/sponsor name match = NO to CBP to request additional research, including into whether the name identified in the ORR data appeared in CBP records as an additional parent present at the time of the initial separation event. On August 19, 2021, CBP provided OIS with updated information about these cases that allowed OIS to classify them into one of five categories. The following table identifies these categories, along with subsequent steps taken by OIS and the FRTF to further validate CBP's findings:

Table 3: Secondary CBP Research on Cases with Ambiguous Sponsor Name Match Data

| CBP Finding | Additional Analysis | Count |
|---|---|---|
| Child reunited with separation parent in ICE custody | Additional research required: A numbers provided to ICE to confirm that reunification occurred and obtain name of reunification parent | 7 |
| Child was discharged to separation parent | OIS analysis of parent/sponsor name match = YES<br>*Update final records*: child was reunified with separation parent | 20 |
| Child was discharged to separation parent | OIS analysis of parent/sponsor name match = NO<br>*Update final records*: child was not reunified with separation parent | 2 |
| Child was discharged to sponsor other than parent or aged out of ORR custody | *Update final records:* child was not reunified with separation parent | 6 |
| Child was discharged to parent other than separation parent | *Update final records:* child was not reunified with separation parent | 11 |
| Total | | 46 |

5

10. On August 25, 2021, OIS provided the list of fifty-four (54) A numbers requiring additional ICE research to ICE (47 from Table 2 above and 7 from Table 3 above), and ICE returned the results of their analysis on September 1, 2021. OIS's analysis of ICE's research is summarized in the following table:

Table 4: Secondary ICE Research on Cases Requiring ICE Research

| ICE Finding | Additional Steps | Count |
| --- | --- | --- |
| HHS finding of Voluntary Departure confirmed in ICE records | *Update final records:* child was reunified with separation parent | 10 |
| Child reunified with parent in ICE custody | OIS analysis of parent/sponsor name match = YES<br>*Update final records*: child was reunified with separation parent | 39 |
| HHS finding of Voluntary Departure not confirmed in ICE records | *Update final records:* child was not reunified with separation parent | 2 |
| Child reunified with parent in ICE custody | OIS analysis of parent/sponsor name match = NO<br>*Update final records*: child was not reunified with separation parent | 2 |
| Child was released from ICE custody to non-separation parent | *Update final records:* child was not reunified with separation parent | 1 |
| Total | | 54 |

11. The following table uses the information from tables 1 – 4 to summarize updated information about the 2,166 cases previously reported to the court as Legacy Ms. L reunifications with separated parents:

Table 5: Final Analysis of Previously Reported Reunifications

| Category | Count |
| --- | --- |
| Confirmed Legacy Ms. L reunification in home country | 107 |
| Confirmed Legacy Ms. L Reunifications within the United States | 2,017 |
| Subtotal: confirmed reunification with separation parent | 2,124 |
| Discharged to non-separation parent | 13 |
| Discharged to non-parent | 29 |
| Subtotal: not a confirmed reunification with separation parent | 42 |
| Total | 2,166 |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on this 22nd day of September, 2021.

MARC R ROSENBLUM
Digitally signed by MARC R ROSENBLUM
Date: 2021.09.22 17:36:11 -04'00'

Marc Rosenblum

Deputy Assistant Secretary for the Office of Immigration Statistics