```
                    UNITED STATES DISTRICT COURT

                  SOUTHERN DISTRICT OF CALIFORNIA


         BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING
    _____
                                        )
    MS. L., ET AL.,                     )
                                        )  CASE NO. 18CV0428-DMS
              PETITIONERS-PLAINTIFFS,   )
                                        )
    VS.                                 )
                                        )
                                        )
                                        )
                                        )
    U.S. IMMIGRATION AND CUSTOMS        )  SAN DIEGO, CALIFORNIA
    ENFORCEMENT ("ICE"), ET AL.,        )  FRIDAY, APRIL 22, 2022
                                        )    11:30 A.M. CALENDAR
              RESPONDENTS-DEFENDANTS.   )
    ------------------------------------

                REPORTER'S TRANSCRIPT OF PROCEEDINGS

                   TELEPHONIC STATUS CONFERENCE




    REPORTED BY:                  LEE ANN PENCE,
                                  OFFICIAL COURT REPORTER
                                  UNITED STATES COURTHOUSE
                                  333 WEST BROADWAY, ROOM 1393
                                  SAN DIEGO, CALIFORNIA 92101
```

```
FOR PLAINTIFF:             LEE GELERNT, ESQ.
                           STEPHEN KANG, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004


FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           FIZZA BATOOL, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044


 ALSO APPEARING:           DAVID MARSHALL, ESQ.
```

**SAN DIEGO, CALIFORNIA – FRIDAY, APRIL 22, 2022 – 11:30 A.M.**

     \* \* \*

     **THE CLERK:** CALLING MATTER NO. 19 ON THE CALENDAR, 18CV0428, MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.

     **THE COURT:** GOOD MORNING, COUNSEL.

     I SHOW FOR MS. L. MR. LEE GELERNT AND STEPHEN KANG; FOR THE GOVERNMENT MS. SARAH FABIAN; FOR THE COMMITTEE MR. STEVEN HERZOG AND DAVID MARSHALL. AND THERE IS A REFERENCE HERE TO MS. BATOOL.

     **THE CLERK:** UM-HUM.

     **THE COURT:** ALL RIGHT. FIZZA, FIRST NAME. OKAY. THANK YOU.

     AND I HAVE REVIEWED THE JOINT STATUS REPORT. THANK YOU FOR THAT.

     JUST A COUPLE OF QUESTIONS. IT SEEMS WE ARE MAKING PROGRESS.

     A QUESTION OF MR. GELERNT.

     AT PAGE 3 THERE IS AN INDICATION, THROUGH THE FRTF COMMITTEE THROUGH THE BIDEN ADMINISTRATION, THAT 202 SEPARATED CHILDREN HAVE BEEN REUNIFIED WITH PARENTS AND THAT APPROXIMATELY 1,171 PEOPLE HAVE BEEN PAROLED AS OF APRIL 19.

     SO, MR. GELERNT, I AM UNDERSTANDING FROM THAT LINE THAT A NUMBER OF, I AM ASSUMING PARENTS, WHO WERE PREVIOUSLY REMOVED OR SEPARATED FROM THEIR CHILDREN, HAVE BEEN PAROLED OR

1    BROUGHT BACK INTO THE UNITED STATES.  AM I CORRECT?
2             **MR. GELERNT:**  THAT'S CORRECT, YOUR HONOR.
3             **THE COURT:**  OKAY.  AND IS THERE ANY INDICATION ABOUT
4    HOW MANY MORE ARE LEFT TO BE PAROLED IN FROM THIS ORIGINAL AND
5    ENLARGED CLASS IN THE MS. L. CASES?
6             **MR. GELERNT:**  YOUR HONOR, WE ARE NOT SURE PRECISELY,
7    BUT I THINK WE ARE THINKING IT IS SOMEWHERE BETWEEN 800 AND
8    MORE THAN 1,000.  AND SO, OBVIOUSLY, I THINK BOTH WE AND THE
9    ADMINISTRATION HAD HOPED IT WOULD GO QUICKER, BUT AS YOU KNOW
10   BETTER THAN ANYONE THE LOGISTICS AROUND THIS CAN BE VERY
11   COMPLICATED:  REACHING FAMILIES, EXPLAINING EVERYTHING, AND
12   MAKING SURE THEY CAN COME BACK WITH THEIR NUCLEAR FAMILY.
13            WE KNOW THAT THERE ARE A FEW HUNDRED PEOPLE WHO HAVE
14   SUBMITTED APPLICATIONS TO THE GOVERNMENT THROUGH THE WEBSITE
15   AND ARE IN THE PIPELINE TO COME BACK.  SO WE ARE HOPING, OVER
16   THE NEXT COUPLE OF MONTHS, WE SEE A REAL UPTICK IN HOW MANY
17   PEOPLE ARE COMING BACK.  BUT WE DO THINK THERE IS A
18   SIGNIFICANT NUMBER LEFT TO BE BROUGHT BACK AND REUNITED IN THE
19   UNITED STATES.
20            AND, YOU KNOW, I AM NOT SURE THAT WE -- EITHER WE OR
21   THE ADMINISTRATION CAN BE EXACTLY PRECISE ABOUT HOW MANY IT IS
22   GOING TO BE, BUT I THINK BETWEEN 800 AND OVER 1,000.  THAT IS
23   PROBABLY A ROUGH ESTIMATE.
24            **THE COURT:**  THAT WOULD BE OVER AND ABOVE THIS 1,171
25   FIGURE.

1 **MR. GELERNT:** IT WOULD BE OVER AND ABOVE THAT, YES,
2 RIGHT. I MEAN, THE 1,171 I THINK REFLECTS THE PEOPLE WHO COME
3 BACK WITH THE SEPARATED PARENTS AND THEIR NUCLEAR FAMILY. THE
4 GOVERNMENT IS ALLOWING THEM TO COME BACK KNOWING THAT THE
5 PARENTS PROBABLY CAN'T LEAVE SUBSEQUENTLY-BORN CHILDREN
6 BEHIND, OR THEIR SPOUSE.
7     SO, RIGHT, WHETHER YOU USE THE 202 SEPARATED
8 CHILDREN REUNIFIED OR 1,171 WHO HAVE BEEN PAROLED, IT WOULD BE
9 ABOVE THOSE -- WHICHEVER NUMBER YOU ARE USING WOULD BE ABOVE
10 THOSE NUMBERS, YES, YOUR HONOR.
11 **THE COURT:** AND THEN THE OPPORTUNITY PRESENTED BY
12 THOSE PARENTS WHO ARE PAROLED BACK TO THE UNITED STATES WOULD
13 BE TO PURSUE ASYLUM OR SOME OTHER RELIEF; IS THAT THE THOUGHT?
14 **MR. GELERNT:** THAT IS THE THOUGHT. THAT IS WHAT --
15 WITHOUT GOING INTO TOO MUCH DETAIL ON A PUBLIC CALL, THAT IS
16 WHAT WE ARE DISCUSSING WITH THE GOVERNMENT. BUT I THINK THE
17 HOPE IS THAT THERE IS SOME WAY FOR THEM TO APPLY FOR ASYLUM.
18     I JUST WANT TO CLARIFY ONE THING I SAID BECAUSE IT
19 MAY HAVE BEEN CONFUSING. WHEN I SAID THE 800 TO OVER 1,000
20 WOULD BE ABOVE THE 202 OR 1,171, WHAT IT REALLY WOULD BE IS
21 ABOVE THE 202 THAT WE ARE TALKING ABOUT ROUGHLY 800 FAMILIES.
22 HOW MANY PEOPLE WOULD COME BACK WITH THAT SEPARATED -- 800 TO
23 1200 SORT OF SEPARATED CHILDREN, SO HOW MANY PEOPLE WOULD COME
24 BACK WITH THAT PARENT, YOU KNOW, THE SPOUSE, THE
25 SUBSEQUENTLY-BORN CHILD, WE DON'T REALLY KNOW THAT NUMBER.

1   THAT IS A HARDER NUMBER TO ESTIMATE.  BUT THAT WOULD GO TO THE
2   1,171.  I THINK WHAT WE ARE TALKING ABOUT IS 800 TO, YOU KNOW,
3   TO OVER 1,000 MORE CHILDREN WHO NEED TO BE REUNITED.  THAT IS
4   WHAT I SORT OF MEANT TO SAY.
5           HOW MANY THAT WOULD TRANSLATE INTO FAMILY MEMBERS
6   BEING PAROLED, MEANING HOW MUCH ABOVE THE 1,171, IS HARD TO
7   KNOW WITHOUT SPEAKING TO EACH FAMILY AND KNOWING WHO THEY
8   WOULD BRING BACK WITH THEM.  I HOPE THAT IS CLEAR.
9           **THE COURT:**  YES.  THANK YOU.
10          SO THEN MOVING TO PAGE 4, IT APPEARS THERE ARE 201
11  CHILDREN LEFT THAT FALL INTO THESE THREE DIFFERENT BUCKETS
12  THAT EVERYONE IS FOCUSING ON.
13          THE FIRST GROUP, 139 OF THESE 201 CHILDREN, THEIR
14  PARENTS ARE BELIEVED TO HAVE BEEN REMOVED.  AND SO OF THOSE
15  139 CHILDREN, AM I CORRECT IN ASSUMING THAT THEIR PARENTS ARE
16  PART OF THE 1,171 THAT HAVE BEEN PAROLED, OR MAY BE PART OF
17  THE 800 TO OVER 1,000 YET TO BE PAROLED?
18          **MR. GELERNT:**  I THINK THOSE ARE FAMILIES WE HAVE NOT
19  REACHED, AND SO THEY HAVE NOT BEEN BROUGHT BACK INTO THE U.S.
20  BECAUSE WE HAVEN'T EVEN BEEN ABLE TO REACH THEM --
21          **THE COURT:**  I SEE.  YES.
22          **MR. GELERNT:**  -- ENTER THEM INTO THE WEBSITE.
23          **THE COURT:**  THAT MAKES PERFECT SENSE.  OKAY.  I GOT
24  THAT CLARIFICATION.
25          **MS. FABIAN:**  YOUR HONOR, THIS IS MS. FABIAN.

1      **THE COURT:**  YES.
2      **MS. FABIAN:**  I MIGHT BE ABLE TO SHED JUST A LITTLE
3  MORE CLARITY ON THAT.
4      I WOULD ADD TO WHAT MR. GELERNT SAID WHEN HE NOTED
5  THERE WERE INDIVIDUALS SORT OF IN THE PIPELINE THAT SORT OF
6  ENTERED INTO THE WEBSITE THROUGH WHICH WE ARE FACILITATING THE
7  RETURN.
8      SO YOU WOULD HAVE A GROUP OF FOLKS WHO, AS MR.
9  GELERNT POINTS OUT, ARE IN THE WEBSITE AND HOPEFULLY WILL BE
10 COMING BACK SHORTLY, AS SOON AS THE PROCESSES ARE FINALIZED.
11 AND THEN THERE IS GOING TO BE A GROUP OF INDIVIDUALS WHO ARE
12 IN THE PORTAL NOW BUT THEIR RETURN IS PENDING THE FINALIZATION
13 OF THE DETAILS OF ANY EXTENSION OF THE SCOPE OF THE CLASS.  SO
14 AS SOON AS THAT IS FINALIZED HOPEFULLY -- AND POSSIBLY EVEN
15 BEFORE THE SETTLEMENT IS FINALIZED WE WILL BE ABLE TO COME TO
16 THE COURT AND GET AN EXTENDED CLASS TO ALLOW THOSE FOLKS TO
17 COME BACK.
18     AND THEN THERE IS THE GROUP WHO, AS MR. GELERNT
19 NOTES, MAY NOT HAVE BEEN CONTACTED YET.  AND THAT IS THE GROUP
20 WE WILL IDENTIFY AND CONTACT OVER TIME, AND THEN THEY WILL
21 HOPEFULLY GET INTO THE PORTAL AND COME BACK AS WELL.
22     **THE COURT:**  THANK YOU.
23     AND AS PART OF THE SETTLEMENT DISCUSSIONS THAT ARE
24 ONGOING, I AM ASSUMING, TOO, THAT IT IS INCLUDING THESE OTHER
25 ISSUES THAT WE HAVE BEEN PREVIOUSLY DISCUSSING WITH RESPECT TO

1  THE DATABASES AND THE INTERAGENCY SHARING OF INFORMATION.
2           THAT'S ALL INCLUDED IN THE DISCUSSION; AM I CORRECT?
3           **MR. GELERNT:**  YES, YOUR HONOR.  SORRY.  THIS IS MR.
4  GELERNT.
5           YES, YOUR HONOR.  I WAS GOING TO LET MS. FABIAN GO
6  FIRST, BUT, YES, WE KNOW THAT THAT IS PART OF THE MANDATE FROM
7  YOUR HONOR.  AND THAT IS VERY MUCH SOMETHING WE WOULD LIKE TO
8  FOCUS ON AND GET SETTLED IN THIS.
9           **THE COURT:**  THANK YOU.
10          **MS. FABIAN:**  YES, I WOULD AGREE.  AND EVEN THOSE
11 PROCESSES THAT WE HAD BEEN TALKING ABOUT AND REPORTING ON ARE
12 ONGOING IN CONJUNCTION, THEN, WITH THE SETTLEMENT DISCUSSIONS.
13 WE WILL ALSO HOPEFULLY REACH AGREEMENT ON A POLICY AND A WAY
14 TO INCLUDE THOSE IN THE AGREEMENT.
15          **THE COURT:**  ALL RIGHT.  THANK YOU.
16          AND I SEE, SINCE OUR LAST STATUS, THERE HAS BEEN AN
17 INCREASE OF 15 CHILDREN'S PARENTS WHO HAVE BEEN REACHED, SO
18 PROGRESS IS FOR SURE BEING MADE.
19          DO I HAVE MR. HERZOG ON THE LINE OR IS IT MR.
20 MARSHALL STANDING IN?
21          **MR. MARSHALL:**  YES, YOUR HONOR.  THIS IS MR.
22 MARSHALL.  MR. HERZOG IS NOT HERE TODAY.
23          **THE COURT:**  THANK YOU.
24          MR. MARSHALL, ANYTHING TO ADD FROM THE STEERING
25 COMMITTEE?  LOOKS LIKE, AS I NOTED, PROGRESS IS BEING MADE AND

```
 1  EVERYTHING IS SET OUT IN THE JOINT STATUS REPORT.  ANYTHING TO
 2  ADD?
 3          MR. MARSHALL:  THANK YOU, YOUR HONOR.  NOTHING
 4  ADDITIONAL.
 5          AS YOU POINT OUT, WE CONTINUE TO MAKE PROGRESS WITH
 6  RESPECT TO THIS GROUP.  OBVIOUSLY, FAMILIES THAT HAVE NOT BEEN
 7  CONTACTED AT THIS POINT ARE AMONGST THE HARDER TO CONTACT, AND
 8  SO WE CONTINUE TO UNDERTAKE SIGNIFICANT EFFORTS WITH RESPECT
 9  TO THIS GROUP AND HOPE TO REPORT ADDITIONAL CONTACT.
10          THE COURT:  THANK YOU.
11          AND EVERYTHING APPEARS TO BE IN ORDER WITH MMM DORA
12  AND THE SETTLEMENT PROCESS.  ANYTHING TO DISCUSS THERE?
13          OKAY.  I THINK, THEN, THAT I WOULD BE CONTENT SIMPLY
14  TO SET A FOLLOWUP STATUS CONFERENCE.
15          I WOULD PROPOSE JUNE 3RD AT 11:30 -- THAT IS SIX
16  WEEKS OUT -- WITH A JOINT STATUS REPORT DUE JUNE 1.
17          ANY OBJECTION TO THAT?
18          MR. GELERNT:  NOT FROM MS. L., YOUR HONOR.
19          MS. FABIAN:  NO OBJECTION FROM THE GOVERNMENT.
20          THE COURT:  ALL RIGHT.
21          ANY OTHER MATTERS WE NEED TO TEND TO AT THIS TIME?
22          OKAY.  THANK YOU VERY MUCH, COUNSEL.  I ALWAYS
23  APPRECIATE VISITING TELEPHONICALLY AND REVIEWING THE STATUS
24  REPORT.  I WISH YOU ALL A GOOD WEEKEND, AND WE WILL VISIT
25  AGAIN ON JUNE 3.
```

1      THANK YOU.

2      **MR. GELERNT:** THANK YOU, YOUR HONOR.

3

4                          *   *   *

5      I CERTIFY THAT THE FOREGOING IS A CORRECT
       TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
6      IN THE ABOVE-ENTITLED MATTER.

7      S/LEEANN PENCE                              4/26/2022
       LEEANN PENCE, OFFICIAL COURT REPORTER    DATE