Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
*dgalindo@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., | Case No. 18-cv-00428-DMS-MDD |
| *Petitioners-Plaintiffs,* | |
| v. | Date Filed: April 18, 2023 |
| U.S. Immigration and Customs Enforcement ("ICE"), et al. | |
| *Respondents-Defendants.* | **UNOPPOSED MOTION TO MODIFY CLASS DURING SETTLEMENT NEGOTIATIONS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**INTRODUCTION**

Plaintiffs hereby move under Federal Rule of Civil Procedure 23 for a limited modification of the existing Class. This modification will include families similarly situated to existing Class members, and will allow the parties to work together to facilitate additional reunifications while settlement discussions between the parties are ongoing.

As the Court knows, the parties have been engaged in extensive settlement negotiations for roughly 18 months.  The parties continue to engage in good faith negotiations on the substantive terms of the relief that will be provided to *Ms. L.* Class members who were separated from their children under the prior Administration, and expect to file a motion for preliminary approval of that settlement in the coming months.

The proposed modification will incorporate a limited group that was not previously part of the *Ms. L.* Class, namely families separated under the prior Administration where the child was a U.S. citizen, and therefore was not transferred to the custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement ("ORR").  The modification would thus expand the class definition to include the following families within the Class, subject to the other exclusions already included in the class definition: "parents who were separated from their child at any time between July 1, 2017 and January 20, 2021, where the separated child is a U.S. citizen and therefore was not sent to ORR custody."

Defendants have stated that they do not oppose the proposed modification, subject to the parties' agreement that this modification would be subject to alteration pending further settlement discussions. Defendants also have stated that they reserve the right to move to eliminate this amendment to the Class should settlement not be reached.

1

1

## BACKGROUND

2
3
        On June 26, 2018, the Court issued the classwide preliminary injunction in this

case, and certified an injunctive class defined as:

4
5
6
> All adult parents who enter the United States at or between designated
> ports of entry who (1) have been, are, or will be detained in immigration
> custody by the DHS, and (2) have a minor child who is or will be
> separated from them by DHS and detained in ORR custody, ORR foster
> care, or DHS custody, absent a determination that the parent is unfit or
> presents a danger to the child.

7
8
9
10
ECF No. 82 at 17.  Since that time, the parties went through several rounds of

litigation concerning the rights of deported parents to return to the United States,

resulting in the return of certain unlawfully deported parents to the United States.  *See*

Dkt. 456; *Ms. L v. ICE*, 403 F. Supp. 3d 853, 856 (S.D. Cal. 2019).

11
12
13
14
15
16
        During this time, Plaintiffs and Defendants have engaged in extensive work to

identify and locate separated families (including those parents deported to their home

countries without their children), inform them of their rights, and take steps to

facilitate their reunification where possible.  The parties have provided regular status

updates to the Court regarding those efforts, which have seen significant progress over

the last four years despite numerous obstacles, including the lack of accurate records

and the COVID-19 pandemic.  That work remains ongoing.

17
18
19
20
21
22
        In February 2021, President Biden established the Family Reunification Task

Force, comprised of representatives from various agencies, including the Defendants

in this case.  *See* Executive Order on the Establishment of the Interagency Task Force

on the Reunification of Families (Feb. 2, 2021) ("Executive Order").  In March 2021,

the parties notified the Court that they had begun global settlement negotiations for

the purpose of resolving all pending issues in the case, including any potential

modifications to the scope of the Class definition.  Dkt. 579.

23
24
        Defendants and the Task Force have engaged with Plaintiffs and other

stakeholders on the important work of identifying all children separated from their

25

2

families at the U.S.-Mexico border under the prior Administration with the goal of "[t]o the greatest extent possible, facilitat[ing] and enabl[ing] the reunification of each of the identified children with their families." Executive Order § 4(b). Since that time, the parties have continued the critical work of identifying and reunifying families, including via humanitarian parole processes and other methods. *See* Dkts. 597, 598, 631, 632.

To facilitate both the reunification of separated families, and the parties' settlement discussions, the parties have agreed to modify the existing Class definition for the limited purpose of including parents separated from their U.S. citizen children under the prior Administration, subject to the same exclusions that apply to the existing class. Allowing this expansion to take place while settlement talks are ongoing will allow the Parties and Task Force to move forward in reunifying families who fall under this expanded class definition.

## ARGUMENT

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Rule 23 gives courts "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010) (internal quotation marks omitted). "In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ms. L. v. ICE*, 330 F.R.D. 284, 287 (S.D. Cal. 2019) (citations and quotation marks omitted).

For the reasons set forth below, the modified Class definition amply satisfies the requirements of Rule 23(a) and Rule 23(b)(2).

### A. Numerosity

As this Court has already recognized, and as extensive evidence in this case and

other investigations has shown, thousands of families were separated under the prior Administration under the "Zero Tolerance Policy" and its associated practices.  *See, e.g.*, *Ms. L.*, 331 F.R.D. at 536.  This Court has previously found the existing Class sufficiently numerous, and the proposed modified Class would be even larger. Plaintiffs are now aware of dozens of cases involving parents separated from their U.S. citizen children under the prior Administration; many of these parents remain separated from their children and could greatly benefit from reunification.

### B. Commonality.

To satisfy commonality, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quotation marks omitted).  One shared legal issue can be sufficient.  *See, e.g.*, *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ("Commonality does not require that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.") (citation and quotation marks omitted); *Walters*, 145 F.3d at 1046 ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice.").

Even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks omitted); *see also Walters*, 145 F.3d at 1046 ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification.").  The commonality standard is even more liberal in a civil rights suit like this one, in which "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

This Court has already twice found that the *Ms. L.* Class satisfies Rule 23's commonality requirements, for reasons that are just as applicable to the proposed modified Class.  As this Court has explained in its March 2019 class modification order, "the commonality requirement was met [with respect to the originally certified Class] given the evidence of a "common practice" of "separating migrant parents and children and failing to reunite them without a showing the parent is unfit or presents a danger to the child." *Ms. L.*, 330 F.R.D. at 289 (quoting original class certification order).

The Court also explained why that same finding applied to the "expanded Class," which involved children released before the issuance of this Court's preliminary injunction in June 2018:

> There is no dispute the parents who have been excluded from the class were also subjected to this "common practice." Like the current members of the class, they, too, were separated from their children by DOJ and DHS, their children were placed in ORR custody, and they were not reunified with their children despite the absence of any finding they were unfit parents or presented a danger to their children. These parents, like those presently in the class, present the identical question, namely did that practice violate the parents' rights to substantive due process, and the answer to that question applies to all these parents, not just those whose children were in ORR custody on June 26, 2018.

*Id.*

For the same reasons, this Court should find that the modified Class satisfies commonality, notwithstanding any minor variations in the Class Members' individual factual circumstances.  *See, e.g.*, *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *9 (C.D. Cal. Feb. 26, 2018) (rejecting contention that differences in class of DACA recipients precluded class certification, despite "[w]hatever factual dissimilarities that may exist among the proposed class members"); *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 155-56 (N.D. Cal. 2015) (finding commonality satisfied where there was "adequate evidence

of specific system-wide policies and practices exposing inmates to a substantial risk of serious harm"); *Lyon v. United States Immigr. & Customs Enf't*, 300 F.R.D. 628, 642 (N.D. Cal. 2014) ("The fact that the precise practices among the three facilities may vary does not negate the application of a constitutional floor equally applicable to all facilities.").

### C. Typicality

For the same reasons, the modified Class also satisfies typicality.  Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  The purpose of this requirement is to "assure that the interest of the named representative aligns with the interests of the class" as a whole. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of the absent class members."  *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020).  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted).

Plaintiffs' claims are typical of the claims of the proposed modified Class. Each member of the modified Class has suffered the same injury (separation from their children), based on the same alleged government practice (a systematic effort stemming from the highest levels of government to separate migrant families), potentially in violation of the same constitutional and statutory rights.  As the Ninth Circuit has explained, "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons*, 754 F.3d at 686.

And as this Court has observed, "[b]y definition, each member of the proposed class will have been subject to this same practice;" "[their] claims are the same as those raised by absent class members, namely the Government's practice of separating parents and children under the circumstances set out above violates their right to due process;" and "the injuries suffered by the named Plaintiffs are the same as those suffered by members of the proposed class: separation from their children." *Ms. L.*, 331 F.R.D. at 539.  The same is true of the proposed addition to the Class, which will include parents separated from their U.S. citizen children under the prior Administration.  Therefore, typicality is satisfied here.

**D. Adequacy.**

The adequacy inquiry focuses on whether the named Plaintiffs and Class Counsel would protect the interests of absent Class members, and "a sharing of interests between representatives and absentees." *Walters*, 145 F.3d at 1046.  Where there is such a sharing of interests, any purported differences between the existing Class representatives and members of the Class "have no bearing on the class representatives' abilities to pursue the class claims vigorously and represent the interests of the absentee class members." *Id.*

As explained above, the named Plaintiffs and the proposed additional Class members all experienced injuries flowing from the same government conduct, and share the same legal claims that they were unlawfully separated under the Constitution and other laws.  Moreover, this Court has previously found that any minor factual variations among the Class is not sufficient to undermine typicality.  In rejecting the contention that Plaintiffs and Class Counsel could not effectively assert the interests of families separated during the earlier period of the Trump Administration, the Court said:

> [I]t is unclear how the location of the separated children would render the class representatives inadequate. Defendants do not assert the location of the

7

separated children creates a conflict between the named Plaintiffs and their counsel and the newly proposed class members. Nor do they assert that the named Plaintiffs would not vigorously prosecute the action on behalf of these newly proposed class members. Indeed, the named Plaintiffs and their counsel have vigorously prosecuted this action on behalf of parents who were removed from the United States even though they themselves were not removed. There is simply no evidence or reason to believe that the named Plaintiffs or their counsel would not vigorously prosecute this action on behalf of parents who were subjected to the same government policy but whose children were released from ORR custody prior to June 26, 2018. On the contrary, Plaintiffs' counsel represented to the Court that they stand ready to put together another steering committee to assist any newly identified class members in the event this motion is granted.

*Ms. L.*, 330 F.R.D. at 290. All of these considerations are equally applicable here, and support a finding of adequacy.

Similarly, Class Counsel in this case has spent nearly five years vigorously litigating this action. Class Counsel has also led extensive negotiations with the government to reach a global resolution of this matter. Based on this record, there can be no serious dispute that Class Counsel will continue to vigorously pursue the interests of the Class.

### E. Rule 23(b)(2).

Again, this Court has already found that the existing Class satisfies Rule 23(b)(2), for reasons that apply just as much to the proposed modified Class. *See Ms. L.*, 330 F.R.D. at 291; *Ms. L.*, 331 F.R.D. at 541 (finding Rule 23(b)(2) satisfied where "the crux of this case is the Government's practice of separating migrant parents from their minor children and continuing to separate them without any showing the parent is unfit or presents a danger to the child"). As the Ninth Circuit has repeatedly emphasized, "the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions," as is the case here. *Parsons*, 754 F.3d at 686-87.

As is common in other civil rights actions, the substantive settlement terms will eventually provide remedies "generally applicable to the class as a whole," all of

8

which are intended to remedy the harm these families experienced due to their unlawful separation. *Id.* at 688.

Thus, the proposed modified Class members here "seek uniform injunctive or declaratory relief from policies or practices generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (quoting Fed. R. Civ. P. 23(b)(2)). Such an inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.*

## CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion to modify the Class definition while settlement discussions remain ongoing.

Dated: April 18, 2023                    Respectfully Submitted,

                                         */s/Lee Gelernt*
Stephen B. Kang (SBN 2922080)            Lee Gelernt*
Spencer E. Amdur (SBN 320069)            Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION           Anand Balakrishnan*
FOUNDATION                               Daniel Galindo (SBN 292854)
IMMIGRANTS' RIGHTS PROJECT               AMERICAN CIVIL LIBERTIES
39 Drumm Street                          UNION FOUNDATION
San Francisco, CA 94111                  IMMIGRANTS' RIGHTS PROJECT
T:  (415) 343-1198                       125 Broad St., 18th Floor
F:  (415) 395-0950                       New York, NY 10004
*samdur@aclu.org*                        T:  (212) 549-2660
                                         F:  (212) 549-2654
                                         *lgelernt@aclu.org*
                                         *jrabinovitz@aclu.org*
                                         *abalakrishnan@aclu.org*
                                         *dgalindo@aclu.org*

                                         *Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2023, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system.  A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt, Esq.