| | |
|---|---|
| *Ms. L.*, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>*U.S. Immigration and Customs Enforcement*, et al.,<br><br>Defendants. | Case No. 18-cv-00428<br><br><br>SETTLEMENT AGREEMENT |

## I.  Definitions

A.  **"Action"** or **"*Ms. L.*"** The lawsuit captioned *Ms. L., et al. v. U.S. Immigration and Customs Enforcement, et al.*, Case No. 18-cv-00428 (S.D. Cal.).

B.  **"Class Counsel."** The American Civil Liberties Union Foundation ("ACLU") and the ACLU of San Diego & Imperial Counties.

C.  **"Defendants."** The Defendants in *Ms. L.*:[1] U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Patrick J. Lechleitner, Deputy Director and Senior Official Performing the Duties of the Director of ICE; Jamison Matuszewski, ICE San Diego Field Office Director; Mark Paramo, Luis Casillas, and Joseph Suazo, ICE San Diego Assistant Field Office Directors for the Otay Mesa Detention Center; Mary De Anda-Ybarra, ICE El Paso Field Office Director; ICE El Paso Assistant Field Office Director for the West Texas Detention Facility;[2] Alejandro Mayorkas, Secretary of Homeland Security; Merrick Garland, Attorney General of the United States; Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services ("USCIS"); Troy A. Miller, Senior Official Performing the Duties of the Commissioner of CBP; Sidney Aki, Director, San Diego Field Office, CBP; Hector A. Mancha Jr., Director, El Paso Field Office, CBP; Xavier Becerra, Secretary of the Department of Health and Human Services; Robin Dunn Marcos, Director of the Office of Refugee Resettlement.

D.  **"Effective Date."** The Effective Date of this Settlement Agreement will be the date on which the Court enters a final approval order for the Settlement Agreement following notice to the class and a fairness hearing in accordance with Federal Rule of Civil Procedure 23.

---

[1] The names of the successors for the originally named Defendants who were sued in their official capacities have been automatically substituted here pursuant to the operation of Fed. R. Civ. P. 25(d).

[2] ICE is not currently using the West Texas Detention Facility. Therefore, no AFOD is assigned to it.

E.   **"Family Reunification Task Force"** or **"FRTF."** The task force created by Executive Order 14011 (E.O. 14011), *Establishment of Interagency Task Force on the Reunification of Families*, on February 2, 2021.

F.   **"Family Reunification Task Force Research Committee"** or **"FRTF Research Committee."** The research committee created within the Family Reunification Task Force to evaluate claims of class membership.

G.   **"Final Registration Date."** The latest date that a *Ms. L.* Settlement Class member may register in together.gov or juntos.gov to be considered for relief under this Settlement Agreement, which is three years after the Effective Date.

H.   **"Final Services Date."** The latest date that a *Ms. L.* Settlement Class member may begin receiving services under the Settlement Agreement, which is four years after the Effective Date.

I.   **"Legal Guardian."** Legal Guardian means a person vested with legal custody of a child or vested with legal authority to act on or make decisions on the child's behalf.

J.   **"*Ms. L.* Settlement Class."** Individuals included in the class for purposes of this Settlement Agreement as defined in Section II below, and as determined in accordance with the procedures in Section III below.

K.   **"Parties."** Plaintiffs (including the named Plaintiffs along with all members of the *Ms. L.* Settlement Class) and Defendants.

L.   **"Qualifying Additional Family Member."** An additional family member who (1) is part of a *Ms. L.* Settlement Class member's immediate household; or (2) can demonstrate one of the below familial relationships. If the Qualifying Additional Family Member is seeking return to the United States, the government will only pay for the return of Qualifying Additional Family Members who the FRTF Research Committee determines are necessary for reunification as described in Section IV.C.1. below.

1.   To be considered a member of the immediate household the additional family member must occupy the same housing unit as the *Ms. L.* Settlement Class member or show that they would occupy the same housing unit but for the detention of the *Ms. L.* Settlement Class member.

2.   Individuals who can show one of the below familial relationships with a *Ms. L.* Settlement Class member will be considered Qualifying Additional Family Members even if they cannot show that they are a member of the *Ms. L.* Settlement Class member's immediate household:

a.   A spouse (including a common law spouse) of a *Ms. L.* Settlement Class member;

b.   An unmarried child under the age of 21 of a *Ms. L.* Settlement Class member;

c.   A separated child's biological sibling who is unmarried and under the age of 21;

    d.   A separated child's non-separated parent, stepparent, or legal guardian;

    e.   A separated parent or legal guardian's parent who is the primary caregiver for:

        i.   a minor child of a separated parent/legal guardian; or

        ii.   a separated child; and

    f.   A separated child's stepparent's biological unmarried children under the age of 21.

M.  **"Settlement Agreement."** This settlement agreement between the Parties in the Action.

N.  **"Settlement Class Member Confirmation Date."** The date that the FRTF Research Committee accepts an individual as a *Ms. L.* Settlement Class member and sends the case to receive services under this Settlement Agreement. If an individual was determined to be a *Ms. L.* Settlement Class member prior to the Effective Date of this Settlement Agreement, then their "Settlement Class Member Confirmation Date" will be the Effective Date.

O.  **"Termination Date."** Six years after the Effective Date.

P.  **"Termination Date – Future Separations."** Eight years after the Effective Date.

Q.  **"Unfiled Notice to Appear" or "Unfiled NTA."** A Notice to Appear (NTA), Form I-862, that has been issued by a DHS component but not filed and docketed with the Executive Office for Immigration Review (EOIR).

## II.  <u>The *Ms. L.* Settlement Class</u>

The **"*Ms. L.* Settlement Class"** consists of:

A.  **Current *Ms. L.* Class Members:** All members of the class certified by the Court and identified by the Parties as class members in the course of the litigation. *See* Order Granting in Part Plaintiffs' Motion for Class Certification, ECF No. 82 (June 26, 2018); Order Granting Plaintiffs' Motion to Modify Class Definition, ECF No. 386 (Mar. 8, 2019). Prior to Settlement Approval Defendants shall provide Plaintiffs with the list of class members who meet the definition of this paragraph.

B.  **All Separated Children of Class Members:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class any child who was separated from a parent or Legal Guardian who is either a Current *Ms. L.* Class Member or who becomes a member of the *Ms. L.* Settlement Class through the provisions of this Section.

C.  **Certain Children of Parents Excluded from the Class:** The Parties also agree that Defendants will provide some limited relief as detailed below in Section IV.B.2.a. to children who were separated from their parent or Legal Guardian after January 20, 2017 and prior to June 26, 2018, and who would otherwise be *Ms. L* Settlement Class members, but who are excluded from the class based on the criminal history of their parent or Legal Guardian.

D.  **Individuals Falling within the Expanded Date Range:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class all individuals who otherwise meet the definitions set forth in this Section, and who were separated from their children at any time between January 20, 2017 and July 1, 2017. The complete date range of the *Ms. L.* Settlement Class will therefore be January 20, 2017 through January 20, 2021, subject to any limitations contained elsewhere in this Settlement Agreement.

E.  **Legal Guardians:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class, subject to the same parameters for inclusion and exclusion of parents described elsewhere in this Section, any individual who can establish that he or she was separated from a child at any time between January 20, 2017 and January 20, 2021, and who can provide official documentation, including documentation from indigenous or tribal authorities, that the individual was in fact the Legal Guardian of that child, as defined above, at the time of separation under the appropriate law.

1.  For purposes of establishing legal guardianship, "nunc pro tunc" documents that are official and verifiable from a competent legal authority that establish that legal guardianship existed at the time of the separation would be acceptable.

2.  Generally, a birth certificate or legally amended birth certificate is accepted as presumptive evidence of parentage. If, for some reason, there is conflicting evidence in the record of who is the parent, the individual can submit evidence from a competent legal authority that establishes the individual was the child's Legal Guardian at the time of separation.

F.  **Parentage.**  An adult who was separated from a child on the basis that he or she was determined not to be the parent of the child will be considered a member of the *Ms. L.* Settlement class if the adult can show that he or she is, in fact, the parent of the separated child. Where the separation was based on a belief that the adult was not the child's parent, Defendants will accept all available evidence as a means to verify parentage, including consultations with the consulate, HHS acknowledgement of a parent-child relationship, and DNA testing.

G.  **Families Where the Separated Child is a U.S. Citizen:** The parties will amend the certified class to include in the *Ms. L.* Settlement Class, subject to the same parameters for inclusion and exclusion of parents described elsewhere in this Section, parents or Legal Guardians who were separated from their child at any time between January 20, 2017 and January 20, 2021, where the separated child is a U.S. citizen and therefore was not sent to ORR custody. The Parties agree that this Settlement Agreement does not create any obligation on the part of Defendants to identify or notify individuals in any particular manner or timeframe who fall under this subsection of the *Ms. L.* Settlement Class. However, the Defendants agree that they will meet and confer at Plaintiffs' request every three months until the Final Registration Date to evaluate methods by which Defendants may identify *Ms. L.* Settlement Class members who fall in this category, and the Defendants agree that when they identify U.S. citizen children who may be *Ms. L.* Settlement Class members, Defendants will provide the name and any contact information in Defendants' possession of such parents, Legal Guardians, and children to Class Counsel under the protective order.

H. **Separations Where the Noncitizen Child Was Not Sent to ORR**: With the exception of cases where the child was a U.S. citizen and therefore could not be sent to ORR, there is a presumption that if a parent or Legal Guardian and child entered CBP custody together, and the child was never sent to ORR custody, then the parent or Legal Guardian and his or her child are not class members. However, if a parent or Legal Guardian and noncitizen child entered CBP custody together and the parent or Legal Guardian and noncitizen child were separated, and the parent or Legal Guardian was referred for prosecution under 8 U.S.C. § 1325 or 8 U.S.C. § 1326(a) after January 20, 2017, and on or before June 26, 2018, then the parent or Legal Guardian and noncitizen child will be considered class members for the purposes of this Settlement Agreement, even if the parent or Legal Guardian and noncitizen child were reunified before leaving CBP custody. Any such inclusion determination will be subject to the other provisions of this Section.

I. **Individuals Separated for Medical Reasons, Because of an Active Warrant, or Due to Concerns about Fitness or Dangerousness**: The Parties agree that, in the following situations, the separation of a parent or Legal Guardian and child after January 20, 2017 and before January 20, 2021, may have been appropriate under the terms of the Court's preliminary injunction:

1. medical reasons that required outside care;

2. mental health concerns that required placement on suicide watch;

3. transfer to criminal custody based on an active warrant and confirmation from the issuing jurisdiction that the parent or Legal Guardian would be extradited; and

4. objective reasons to be concerned that the parent or Legal Guardian may have been unfit or posed a danger to the child.

In all of the cases identified in Sections II.I.1 through II.I.4 above, the government was obliged to reunify a parent or Legal Guardian and child if and when the basis for separation was resolved. In recognition of the fact that the Court's preliminary injunction required that such reunifications occur in an expedited fashion, the Parties agree that individuals separated for the reasons above will be eligible for the relief available to the *Ms. L.* Settlement Class under the following conditions:

• Any parent or Legal Guardian and child separated for the reasons identified in Sections II.I.1 through II.I.4 after January 20, 2017, and on or before June 26, 2018, will be included in the *Ms. L.* Settlement Class unless the parent or Legal Guardian would otherwise be excluded from the class on the basis of his or her criminal history as described in Section II.J.

• Any parent or Legal Guardian and child separated after June 26, 2018, and before January 20, 2021, for the reasons identified in Sections II.II.1 through II.I.3, will presumptively remain excluded from the *Ms. L* Settlement Class. However, a parent or Legal Guardian identified in Sections II.I.1 through II.I.3 who does not have a criminal history that would exclude him or her from the *Ms. L.* Settlement Class may establish a right to be included in the *Ms. L.* Settlement Class if he or she can show that when the medical reason that required outside care of the parent or Legal Guardian had ended, or

when the parent or Legal Guardian was released from criminal custody, he or she was not reunified in accordance with the "streamlined" procedures identified by the Court that provided for reunification upon a determination that: (1) he or she was the parent or Legal Guardian of the child; and (2) there was no information that raised a concern about the welfare of the child. *See* ECF No. 101 at 2-3.

- Any parent or Legal Guardian who was separated from his or her child after June 26, 2018 and before January 20, 2021 for the reasons identified in Section II.I.4 will presumptively be included in the *Ms. L* Settlement Class unless (a) the parent or Legal Guardian would otherwise be excluded from the class on the basis of his or her criminal history as described in Section II.J, or (b) the government provides evidence that the parent or Legal Guardian and child were promptly reunified immediately after any and all objective reasons to be concerned that the parent or Legal Guardian may have been unfit or posed a danger to the child were favorably resolved.

J. **Exclusions for Criminal History**: The Parties agree that those with the following criminal convictions at the time of the separation, or whose separation was the result of a prosecution and subsequent conviction for one of the following criminal convictions (excluding a separation as a result of a prosecution and subsequent conviction for a violation of 8 U.S.C. § 1325 or § 1326(a)), shall presumptively not be *Ms. L.* Settlement Class members, and that this presumption will be evaluated, on a case-by-case basis, and may be rebutted according to the process laid out below and in Section III.

1. Persons with one or more felony criminal conviction(s) in the United States, other than a single conviction for a felony violation of 8 U.S.C. § 1325 or § 1326(a);

2. Persons with one or more conviction(s) in the United States or an analogous conviction abroad for:

   a. a crime involving sexual abuse or exploitation of a minor, as defined in Application Note 1 of § 2G2.2 of the U.S. Sentencing Guidelines and also including trafficking in, or possession of, child pornography; or

   b. a crime involving prohibited sexual conduct, as defined in Application Note 1 of § 2A3.1 of the U.S. Sentencing Guidelines, provided, however, that it shall not be a basis for exclusion if:

      i. the crime arose from the fact that the person engaged in prostitution, or loitering for prostitution: or
      ii. if convicted in the United States, the person served a sentence of six months or less of incarceration; or
      iii. if convicted in a foreign country, the offense carried a penalty of six months or less of incarceration; or

   c. a crime of domestic violence, stalking, and child abuse, as defined in 8 U.S.C. § 1227(a)(2)(E)(i);

6

or:

3. Persons with a felony criminal conviction(s) in a foreign country where the conviction was for a crime analogous to a crime enumerated in 18 U.S.C. § 3559(c)(2)(F) or (c)(2)(H).

"Conviction" means a final judgment of conviction by a criminal court as governed by the jurisdiction of conviction's criminal laws. It does not include, for example, dispositions that are vacated, expunged, pardoned, or dismissed upon completion of rehabilitative programs. The FRTF Research Committee may examine deferred or withheld adjudications to ascertain whether such adjudications resulted in a conviction as of the time of separation. Class Counsel may provide the FRTF Research Committee with any information available to Class Counsel indicating that a conviction is not a final judgment of conviction at the time of separation.

As part of the process set forth in Section III below, the FRTF Research Committee will evaluate whether an individual has rebutted the presumption that he or she is not a member of the *Ms. L.* Settlement Class despite his or her convictions at the time of separation for an offense set forth above. The FRTF Research Committee will review the information provided by Class Counsel, as well as the record of criminal convictions at the time of separation, to make this determination. In its use of any foreign databases, the FRTF Research Committee shall consider only convictions for offenses described in subsections II.J.2 and II.J.3 above. Where the FRTF Research Committee considers information from foreign databases it shall, as in all cases, also consider any countervailing information provided on the individual's behalf.

To make case-by-case determinations of class membership for individuals presumed not to be *Ms. L.* Settlement Class members because of criminal convictions described in Sections II.J.1 through II.J.3 above, the FRTF Research Committee will be guided by the following considerations:

- Whether the criminal conviction(s) demonstrate a threat to national security or public safety. Factors that point to a public safety threat, or to the absence of such a threat, include whether the conduct at issue poses a danger of violence toward, or abuse or exploitation of, others; the number of criminal convictions; the length of time since the offense date of the most recent criminal conviction that falls within subsections II.J.1-3 above, at the time of the separation; and the nature of the injury to another resulting from the conduct related to the conviction(s), and

- The seriousness of the criminal conviction(s).

Information presented by Class Counsel and other mitigating information will also be considered in the review, including any explanation of or justification for the criminal activity (e.g., issues related to poverty, self-defense, or persecution of the individual by authorities), the age and maturity of the individual at the time of the conviction, evidence of rehabilitation, humanitarian factors about the individual or their family, and other relevant information about the individual's circumstances.

III. <u>Procedure for Determining Membership in the *Ms. L.* Settlement Class</u>

This procedure will be used to resolve all issues regarding inclusion in the *Ms. L.* Settlement Class, including the submission of any documentation necessary for resolving such disputes. Parents or Legal Guardians who were separated from their child(ren) at the U.S.-Mexico border between January 20, 2017 and January 20, 2021, may seek inclusion in the *Ms. L.* Settlement Class and/or seek certain benefits available to the *Ms. L.* Settlement Class by presenting their information to the FRTF via the website together.gov or juntos.gov. By registering on the website, registrants are identifying themselves as current or potential class members. In order to be considered for relief under this Settlement Agreement, all potential *Ms. L.* Settlement Class members must register via the website together.gov or juntos.gov no later than the Final Registration Date.

If the individual has not already been included in the *Ms. L.* Settlement Class, the FRTF Research Committee will review the information a registrant provides to together.gov or juntos.gov, as well as DHS databases and National Criminal Information Center holdings, to determine if the individual is a member of the *Ms. L.* Settlement Class.

If the individual is *not* determined to be a member of the *Ms. L.* Settlement Class, including because of the individual's criminal history, Class Counsel and the individual will be notified of that fact by the FRTF Research Committee within 20 business days of registration on together.gov or juntos.gov. The written notification will explain the FRTF Research Committee's determination and include information and a copy of any document(s) that support the basis for the FRTF Research Committee's determination that the individual does not appear to be a presumptive member of the *Ms. L.* Settlement Class. If the FRTF Research Committee is legally prohibited from sharing a copy of the document(s), or if national security concerns would prohibit disclosure, then a summary of those documents shall suffice, as appropriate. Class Counsel will then have 60 business days to provide the FRTF Research Committee information to guide its case-by-case review; this 60-day period may be extended for up to 90 additional business days when Class Counsel notifies the FRTF Research Committee that such additional time is required. The FRTF Research Committee will then review the additional information provided by the Class Counsel and issue a decision as soon as practicable but not later than within 45 business days.

The FRTF Research Committee will promptly notify Class Counsel of the results of its case-by-case review. If the FRTF Research Committee determines that the individual should be part of the *Ms. L.* Settlement Class, the individual will be added to the list of *Ms. L.* Settlement Class members. If the FRTF Research Committee determines that the individual should not be part of the *Ms. L.* Settlement Class after reviewing the additional information, Class Counsel may appeal that decision to an independent adjudicator within thirty days of the FRTF Research Committee's decision. Class Counsel may seek one extension of the appeal deadline for up to 30 days, which shall be granted sparingly based on a showing of good cause at the discretion of the independent adjudicator. The parties will identify, agree to, and stipulate to the Court for appointment of an individual to serve as independent adjudicator. The independent adjudicator will review the FRTF Research Committee's decision, government documents the adjudicator deems relevant, and any submissions by Class Counsel, to determine *de novo* whether the preponderance of evidence supports the determination. The independent adjudicator will issue an order as to who pays the costs for any adjudication brought to him or her. Costs generally will be

paid by the losing party unless the independent adjudicator determines that the appeal, though unsuccessful, was reasonable and based on non-frivolous claims of error.

## IV. Relief Available to the *Ms. L.* Settlement Class

### A. Opportunity to Reunify for *Ms. L.* Settlement Class Members

Defendants will establish processes to provide the opportunity for all *Ms. L.* Settlement Class members to be able to reunify with their separated parent, Legal Guardian, or child. Defendants will also provide a process by which Qualifying Additional Family Members can similarly be provided an opportunity to live with the reunified parent or Legal Guardian and child in the United States. Defendants will return to the United States *Ms. L.* Settlement Class members and certain Qualifying Additional Family Members that the FRTF Research Committee determines are necessary for reunification at the government's expense, including the costs of travel and related support, to include travel support that is necessary to facilitate return and reunification. These processes are set forth in Section IV.C.1. of the Settlement Agreement.

### B. Support for *Ms. L.* Settlement Class Members Inside the United States

1. The government will provide support and services to *Ms. L.* Settlement Class members already in the United States, or who have returned to the United States, as detailed below. The Parties agree that this support and services are necessary to facilitate successful reunifications and/or to prevent any ongoing harm caused by the initial separation. All services provided to *Ms. L.* Settlement Class members under this Section must begin no later than the Final Services Date.

2. To facilitate the provision of the below support and services, the government will, consistent with applicable contract and grant requirements, expeditiously contract with, or enter into grants with, a third-party to provide benefit administration services for the housing benefits and will provide information to *Ms. L.* Settlement Class members concerning how to access the behavioral health and legal services described below. The provision of these services and benefits are subject to the availability of federal appropriations. The federal defendants may enter into an Economy Act Agreement among themselves under which one agency may award grants on their behalf to carry out the services provided under this Settlement Agreement. The government shall inform Class Counsel of the name of the selected contractor or grantee(s). A government contractor or grantee(s) will establish contact with the *Ms. L.* Settlement Class members to inform them of these services.

   a. Behavioral Health Services: To facilitate the successful reunification of families and/or prevent ongoing harm caused by the initial separation of *Ms. L.* Settlement Class members, Defendants will make behavioral health services available to *Ms. L.* Settlement Class members from the Effective Date until one year after the Termination Date. In addition, HHS may, at its discretion, allow its contractor to extend behavioral health services to other immediate family members of class members if HHS determines that providing such services will assist class members in their successful reunification. Any individual *Ms. L.* Settlement Class member will be eligible to receive up to three years of such services. This is the only form of relief that will be available to separated children

defined in Section II.C. above, who are members of the *Ms. L.* Settlement Class but whose parents or Legal Guardians are excluded from the *Ms. L.* Settlement Class on the basis of their criminal history. The behavioral health services to be provided under this provision of the Settlement Agreement include a continuation of the same child-centered pre-reunification counseling, clinical treatment services, behavioral health case management, psychoeducation, and parenting support that are being provided under an existing contract.

b. <u>Assistance with Certain Medical Costs</u>: To support the successful reunification of *Ms. L.* Settlement Class member families who have returned and are returning to the United States for reunification, Defendants will make assistance available in paying the copayments incurred by *Ms. L.* Settlement Class members when receiving medical services at Federally Qualified Health Centers during a 12-month eligibility period.

- *Ms. L.* Settlement Class members in the United States who are registered in together.gov and confirmed as *Ms. L.* Settlement Class members as of the Effective Date have 12 months from the Effective Date to initiate their 12-month eligibility period;

- *Ms. L.* Settlement Class members in the United States who are not registered in together.gov or confirmed as *Ms. L.* Settlement Class members as of the Effective Date have 12 months from their Settlement Class Member Confirmation Date to initiate their 12-month eligibility period; and

- *Ms. L.* Settlement Class members not in the United States at the time of the settlement would be notified of the availability of the copayment assistance upon receiving confirmation that they are a *Ms. L.* Settlement Class member, and would have 12 months from the date they arrive in the United States to initiate their 12-month eligibility period.

c. <u>Immigration Legal Services</u>: Defendants, with EOIR, will provide legal access and orientation as detailed below to specifically focus on *Ms. L.* Settlement Class members. The services will include:

i. *Legal Access Services for Reunified Families*

(a) In addition to the group information sessions, individual information sessions, and self-help workshops that EOIR's Immigration Court Helpdesk Program (ICH) currently offers, EOIR, through ICH or a separate similar program ("Program"), shall also provide assistance to *Ms. L.* Settlement Class members, short of full representation, including:
- legal advice, such as individualized consultations and counseling about relief for which *Ms. L.* Settlement Class members may be eligible, and the steps necessary to apply for such relief, as well as preparation for any interviews before USCIS;
- assistance with document preparation, including preparing immigration-related legal documents for submission to DHS (including

USCIS), and EOIR pursuant to EOIR's limited appearance regulations; and

- Friend of the Court services, where allowed by the immigration court, to facilitate the flow of information in the courtroom, including informing noncitizens of their rights and obligations and calling attention to law or facts that may be helpful to the immigration court. Where permitted by the immigration court, EOIR will facilitate remote or in-person access for Friend of Court services as appropriate given language needs or location of the participating family and legal services provider.
- The Program shall also provide transportation stipends for in-person legal services court appearance for families for whom remote services are inappropriate given language needs or disability.
- EOIR will provide trauma-informed interpretation for *Ms. L.* Settlement Class members receiving Program services.
- This Program will be available through at least eight regional offices.

(b) The Program will ensure that, in addition to providing the services listed above at existing ICH locations, and in person where possible, the Program will provide these services via remote technology to *Ms. L.* Settlement Class members who (1) live outside the ICH's geographic regions, or (2) are otherwise unable to obtain ICH services.

(c) The Program will create new resources and orientation presentations tailored to address the particular needs of *Ms. L.* Settlement Class members. The orientations will address, at a minimum, the immigration court process, any forms of relief that may allow the families to remain in the United States, and questions about family reunification and humanitarian parole. The Program will also develop written materials as resources for the families, to include self-help guides, videos, and more. The Program will offer additional tailored pro se workshops to assist *Ms. L.* Settlement Class members prepare any applications for relief, as needed, and will create guidance documents to explain any changes in the law or settlement processes that may impact *Ms. L.* Settlement Class members. The materials will be offered in the best language of the *Ms. L.* Settlement Class member.

(d) Defendants will ensure that the Program is adequately resourced and funded to provide services for all unrepresented *Ms. L.* Settlement Class members, with the ability to increase funding to meet projected needs as determined by Defendants, taking into account information about needs provided by Plaintiffs. EOIR will not decrease funding for its current legal access programs (ICH, LOPC, LOP, CCI/NQRP) in order to fund legal services under this Settlement.

ii.   *Program to Place Cases with Pro Bono Representatives*

(a) EOIR cannot ensure that it can find a pro bono representative for every family. However, the Program will leverage its existing pro bono referral efforts, and provide additional funding, to recruit, train, mentor, and match pro bono attorneys to represent *Ms. L.* Settlement Class members. EOIR will facilitate Model Hearing Programs in connection with provider training for new pro bono representatives, where available.

(b) The Program would identify cases for pro bono placement through in-depth individualized consultations of *Ms. L.* Settlement Class members. These cases would then be placed on an online pro bono platform to help match potential pro bono representatives with reunified families. The Program will provide pro bono attorneys with mentors to advise and consult with them throughout the case.

(c) All pro bono attorneys to whom *Ms. L.* Settlement Class members are referred through EOIR will be notified that pro bono psychological evaluations will be made available through the existing HHS behavioral health contract with Seneca Family of Agencies.

(d) The Program will create a library of written and recorded training materials to help pro bono attorneys and legal service providers to best assist *Ms. L.* Settlement Class members. The trainings will cover substantive and procedural immigration law issues, education on working with vulnerable populations, trauma-informed care, and child protection. Additionally, webinars/video trainings will also be provided on immigration-related topics to help with effective representation.

iii.   *Assistance Outside EOIR Proceedings*

(a) To ensure *Ms. L.* Settlement Class members have the ability to reunify through the process set out in Section IV.C.1, and as part of the governmental assistance to Qualifying Additional Family Members in Section IV.C.1., Defendants will continue to contract with an independent contractor to communicate with *Ms. L.* Settlement Class members and assist *Ms. L.* Settlement Class members and Qualifying Additional Family Members with necessary parole and employment authorization applications.

(b) Defendants will, under the Protective Order, ensure that contact information of *Ms. L.* Settlement Class members is provided to the contractor, and establish links between the contractor and other organizations that work

with, or have potential access to, *Ms. L.* Settlement Class members to facilitate referrals to the Program. This would include a call center (e.g., 'hotline' or telephonic help desk) that will conduct affirmative outreach to identify and screen people and refer them to services.

(c) The contractor will be authorized to coordinate with Class Counsel and the designated provider organization to ensure that *Ms. L.* Settlement Class members and Qualifying Additional Family Members are aware of legal services, to maintain continuity of services, and to assist where necessary to ensure reunification.

d. <u>Housing Support</u>: To support the successful reunification of families who have returned and are returning to the United States for reunification, Defendants will make housing assistance available to *Ms. L.* Settlement Class members in meeting housing needs, as determined necessary by a benefits administration contractor or grantee during a 12-month eligibility period. This may include assistance in locating housing; paying costs necessary to attain housing, e.g., security deposit and first and last month's rent; and assistance to avoid eviction and meet other emergency housing needs during the 12-month eligibility period. Payments would typically be made to landlords and not in the form of cash to the *Ms. L.* Settlement Class member, and would be for no more than a total of 6 months during the 12-month eligibility period absent extraordinary circumstances.

i. *If the housing assistance is available as of the Effective Date:*

(a) *Ms. L.* Settlement Class members in the United States who are registered in together.gov and confirmed to be a *Ms. L.* Settlement Class member as of the Effective Date would have 12 months from the Effective Date to initiate their 12-month eligibility period;

(b) *Ms. L.* Settlement Class members in the United States who are not registered in together.gov or not yet confirmed as a *Ms. L.* Settlement Class member as of the Effective Date would have 12 months after their Settlement Class Member Confirmation Date to initiate their 12-month eligibility period; and

(c) *Ms. L.* Settlement Class members not in the United States at the time of the Effective Date would be notified of the availability of the housing assistance upon receiving confirmation that they are a *Ms. L.* Settlement Class member, and would have 12 months from their arrival in the United States to initiate their 12-month eligibility period.

ii. *If the housing assistance becomes available after the Effective Date,* then a *Ms. L.* Settlement Class member will have one year from the date that all three of the following conditions are met to initiate their eligibility period: (1) the *Ms. L.* Settlement Class member is inside the United States; (2) he or she is confirmed to be a *Ms. L.* Settlement Class member; and (3) he or she is notified of the availability of the housing assistance benefit.

C. **Immigration Processing**

    1. *Thirty-six months of Parole and Employment Authorization*

    Certain *Ms. L.* Settlement Class members and Qualifying Additional Family Members, as defined in Section I.L., will have the opportunity to apply for parole pursuant to section 212(d)(5) of the Immigration and Nationality Act (INA) with USCIS. This opportunity will extend to *Ms. L.* Settlement Class members and Qualifying Additional Family Members who are not currently in the United States, as well as those present in the United States who upon their last entry were not admitted. *Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in removal proceedings, or who have a final order of removal or an order granting voluntary departure, can apply for parole with USCIS under this process. Parole for individuals already present in the United States is sometimes referred to as "parole in place" ("PIP").  Parole applications will be adjudicated on a case-by-case basis and approval of the request for parole is not guaranteed based on this Settlement Agreement. DHS retains its existing discretion to grant or deny applications for parole, as well as its existing discretion to grant or deny parole at the time of inspection at a port of entry.

    *Ms. L.* Settlement Class members who wish to request parole under this process must register on together.gov or juntos.gov. They may then file a parole application with USCIS on Form I-131, *Application for Travel Document*,[3] following the instructions set forth in the applicable FRTF Parole Filing Guidelines.[4] *Ms. L.* Settlement Class members will not be required to submit proof of financial support with their parole requests.

    Individuals seeking parole as Qualifying Additional Family Members must submit evidence of the familial relationship with, or membership in the immediate household of, a *Ms. L.* Settlement Class member, and an urgent humanitarian reason for consideration for parole. The Qualifying Additional Family Members must also follow the FRTF Parole Filing Guides. If the Qualifying Additional Family Member lives in the same country as the *Ms. L.* Settlement Class member, the parole requests must be filed at the same time as the request of the *Ms. L.* Settlement Class member, absent exceptional circumstances.  If the Qualifying Additional Family Member is living in a different country from the *Ms. L.* Settlement Class member, they may file at different times, although concurrent filing is preferred.

    USCIS will exempt the filing fee for the Form I-131, *Application for Travel Document* (parole application), for all *Ms. L.* Settlement Class members' and Qualifying Additional Family Members' parole requests submitted in compliance with the FRTF Parole Filing Guides. Requests for parole will be adjudicated on a case-by-case basis and parole is not guaranteed based on this Settlement Agreement. For evidentiary support, USCIS will accept and consider any relevant

---

[3]  This includes successor versions of Form I-131.

[4]  "Guide for Completing a Form I-131, *Application for Travel Document*, and Filing an Initial Parole Request under the Family Reunification Task Force (FRTF) Process on behalf of Individuals Outside the United States" or the "Guide for Completing a Form I-131, *Application for Travel Document*, and Filing an Initial Parole-in-Place (PIP) Request under the Family Reunification Task Force (FRTF) Process" or their replacements (collectively, FRTF Parole Filing Guides).

credible evidence, including a declaration from the applicant or the applicant's family member, or any other individual with direct personal knowledge of the relevant facts or circumstances of the qualifying relationship.

If the parole request is approved, USCIS will issue a travel document authorizing parole for a period of 36 months from the date the individual is paroled at the port of entry (for individuals outside the United States) or a Form I-94, *Arrival/Departure Record* valid for 36 months from the date parole is approved (for requests for parole in place). CBP has final authority to grant parole at the port of entry. The *Ms. L.* Settlement Class member or Qualifying Additional Family Member may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) once he or she is paroled into the United States. An initial Form I-765, *Application for Employment Authorization* (EAD application), will be accepted and adjudicated without a fee or a fee waiver required and, if approved, the time frame for employment authorization will align with the duration of parole.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in removal proceedings pursuant to Section 240 of the INA will not be required to obtain dismissal, termination, administrative closure, or continuances of their removal proceedings before requesting parole from USCIS.

The government's preference is that *Ms. L.* Settlement Class members and Qualifying Additional Family Members in the United States, who receive parole from USCIS as described in this section and are in INA § 240 removal proceedings or withholding-only proceedings before an Immigration Judge request, by contacting the applicable ICE Office of the Principal Legal Advisor (ICE OPLA) field location, that DHS agree to the filing of a joint motion to dismiss their removal proceedings without prejudice, or alternatively, to not oppose a motion for administrative closure of their removal proceedings, where permitted by law, with the immigration court. DHS will review such requests on a case-by-case basis, including whether dismissal or administrative closure of the case is warranted as a matter of prosecutorial discretion. DHS will consider membership in the *Ms. L.* Settlement Class, designation as a Qualifying Additional Family Member, and the grant of parole, as factors in determining whether to exercise prosecutorial discretion. DHS's agreement or non-opposition to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member or Qualifying Additional Family Member being neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). An immigration judge's grant of a joint motion to dismiss or terminate removal proceedings shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability. In cases in which a *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's INA § 240 removal proceedings have been administratively closed pursuant to this Settlement Agreement, either party may move to recalendar those proceedings through the filing of a motion to recalendar with the immigration court. *Ms. L.* Settlement Class members' or Qualifying Additional Family Members' receipt of parole shall not be conditioned on their taking any action to delay or dismiss their pending INA § 240 removal proceedings. The FRTF will communicate the A-numbers of individuals approved for parole to ICE Enforcement and Removal Operations (ERO) and ICE OPLA to ensure those DHS components remain fully informed.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in INA § 240 removal proceedings, or are in expedited removal proceedings, or are in withholding only proceedings, or have an expedited removal order with a pending credible fear interview (CFI), or have a reinstated order of removal with a pending reasonable fear interview (RFI), may request parole from USCIS under this Section; however, certain procedural steps must occur depending on the proceeding.

For *Ms. L.* Settlement Class members and Qualifying Additional Family Members in INA § 240 removal proceedings or withholding-only proceedings before an immigration judge:

    a.  If USCIS denies the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's parole application, and the individual's INA § 240 or withholding-only proceedings have not been terminated, dismissed, or administratively closed, the proceedings will move forward until completion. If INA § 240 removal proceedings or withholding-only proceedings were administratively closed, DHS may move to recalendar the case.

    b.  If USCIS approves the parole application and the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's INA § 240 removal proceedings have not been administratively closed, the individual may submit a request to ICE OPLA that it agree to the filing of a joint motion to dismiss, or not oppose a motion to administratively close his or her proceedings.  The request must be submitted on or before one year after USCIS approves the parole application. This request deadline does not abrogate or shorten any potentially applicable deadlines set forth in Section IV.C.3., *infra.* The request must also contain, at minimum, evidence that the individual is a *Ms. L.* Settlement Class member or Qualifying Additional Family Member, including but not limited to USCIS' grant of parole, and the authorized period of parole must not have expired or been terminated. DHS will review properly submitted requests on a case-by-case basis within 90 days of the next scheduled hearing, or as soon as practicable if no hearing is scheduled, and agree to the filing of a joint motion for dismissal without prejudice or to not oppose a motion for administrative closure if DHS determines that such action is appropriate as a matter of prosecutorial discretion. DHS will consider membership in the *Ms. L.* Settlement Class and the grant of parole as factors in determining whether to exercise prosecutorial discretion. DHS's agreement to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member or Qualifying Additional Family Member being neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of adjudication or actions since the individual was granted parole by USCIS.  The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members in INA § 240 removal proceedings or withholding-only proceedings before an immigration judge who have properly filed a parole request with USCIS and were issued a Form I-797, Notice of Action, reflecting USCIS receipt of their Form I-131 and a copy of their properly filed Form I-131, may

submit a request to the applicable ICE OPLA field location for DHS to join or not oppose a motion for a continuance of the proceeding at any time but no later than one year after USCIS issues the Form I-797. DHS will review the request on a case-by-case basis, including whether a continuance is warranted as a matter of prosecutorial discretion, within 90 days of the scheduled hearing. DHS will also respond to any inquiries by the FRTF regarding its review of or decision on the motion for a continuance. ICE OPLA will consider membership in the *Ms. L.* Settlement Class and designation as a Qualifying Additional Family Member as factors in determining whether to exercise prosecutorial discretion.

For *Ms. L.* Settlement Class members and Qualifying Additional Family Members who have expedited removal or reinstatement orders, are in expedited removal proceedings with a pending CFI, or have a reinstated order of removal with a pending RFI:

    a.  The expedited removal order or reinstated order does not need to be cancelled in order to request parole.

    b.  The underlying expedited removal order or reinstated order cannot be executed because of the pending CFI or RFI.

    c.  USCIS may authorize a new parole period through this process if the individual was previously paroled by ICE or CBP for purposes of a CFI or RFI.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who have final orders of removal received in INA § 240 proceedings, and/or who have pending motions to reopen and petitions for review of such orders, may request parole in place without requesting reopening of the final removal order.

*Ms. L.* Settlement Class members with an Unfiled NTA, may request parole under this Section.

When considering whether to approve a request for parole by a *Ms. L.* Settlement Class member or a Qualifying Additional Family Member with prior conditions of release imposed by ICE or CBP, USCIS may consult with ICE or CBP regarding whether CBP or ICE intend to lift or modify the prior conditions of release following a USCIS parole approval. Decisions on conditions of release from custody are discretionary and this agreement does not guarantee that DHS will agree to lift or modify such conditions.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in the United States may request additional parole periods (i.e., re-parole) with USCIS prior to the expiration of their authorized parole period and prior to the Termination Date if there is a continued need to promote family well-being and unity or to continue behavioral health services under this Settlement Agreement. This showing of continued need may be based on the same or similar evidence that supported the initial application but must demonstrate that the need is ongoing. If approved for re-parole, the authorized period of parole will be for the period needed to achieve the stated purpose, up to an additional thirty-six months. *Ms. L.* Settlement Class members and Qualifying Additional Family Members requesting re-parole will not be required to pay the parole

application fee. Requests for re-parole will be determined on a case-by-case basis and parole is not guaranteed based on this Settlement Agreement. If the *Ms. L.* Settlement Class member or Qualifying Additional Family Member's re-parole request is approved, the applicant may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) to align with the period of re-parole. USCIS will also exempt the filing fee for one Form I-765 renewal application for employment authorization, with no fee waiver application required, based on a period of re-parole granted under this settlement for *Ms. L.* Settlement Class members and Qualifying Additional Family Members.

In cases where *Ms. L.* Settlement Class members' and Qualifying Additional Family Members' parole applications pursuant to this Settlement Agreement are denied by USCIS, USCIS will not use the denial of the parole application as the sole basis for referring the case for any enforcement action or issuance of an NTA. In all cases, USCIS will exercise its discretion on a case-by-case basis to determine whether issuance of an NTA or referral for enforcement action is necessary, weighing all aggravating and mitigating factors, including the harm caused by family separation.

2.   *Further Immigration Relief*

DHS will create a single dedicated email inbox overseen by the Family Reunification Task Force, where certain immigration related requests can be sent, unless otherwise noted in the Settlement Agreement or in filing instructions provided by DHS.

a.   Procedures for *Ms. L.* Settlement Class Members in the United States to Apply for Asylum with USCIS

The government will provide the opportunity for *Ms. L.* Settlement Class members who are in the United States to file affirmative asylum applications with USCIS and have those applications adjudicated or have preexisting affirmative asylum applications already filed with USCIS adjudicated, according to the following terms. USCIS will provide filing instructions for *Ms. L.* Settlement Class members consistent with the terms of this Settlement Agreement. *Ms. L.* Settlement Class members must comply with any such filing guidance and other procedures provided by USCIS. Asylum applications will be adjudicated on a case-by-case basis and approval of the application is not guaranteed based on this Settlement Agreement. USCIS retains its discretion to grant, deny, dismiss, or refer applications to EOIR under 8 U.S.C. § 1158, INA § 208; 8 C.F.R. § 208.14.

All properly filed and complete asylum applications filed by *Ms. L.* Settlement Class members with USCIS on or before the deadlines specified in Section IV.C.3., shall qualify for an extraordinary circumstances exception under 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D); 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) and will be found to have been filed within a reasonable period given the circumstances under 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) for purposes of the statutory one-year filing deadline requirement under 8 U.S.C. § 1158(a)(2)(B), INA § 208(a)(2)(B). The date USCIS receives the properly filed and complete asylum application is considered the date the asylum application is filed. 8 C.F.R. § 208.4(a)(2)(ii).

*Ms. L.* Settlement Class members may submit written requests for expedited processing of their asylum applications to the asylum office with jurisdiction over their asylum application, consistent with the guidance for making expedite requests for an asylum application at https://www.uscis.gov/forms/filing-guidance/how-to-make-an-expedite-request and https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling. Requests for expedited processing are considered on a case-by-case basis and in light of workload priorities. DHS will instruct the asylum offices to consider membership in the *Ms. L.* Settlement Class as a favorable factor in any requests to expedite the interview.

USCIS will provide training to all relevant Asylum Division staff, including Asylum Officers, Training Officers, Supervisory Asylum Officers (SAOs), and relevant operational staff, on the *Ms. L.* litigation and the terms of this Settlement Agreement, and will remind officers of the relevant lesson plans to consult on issues potentially specific or germane to *Ms. L.* Settlement Class members. Among other topics, this training will address the unique and continuing effects of the trauma of forced family separation, which may affect *Ms. L.* Settlement Class members' demeanor and/or the ability to recall traumatic facts during an asylum interview, CFI/RFI, and/or immigration court hearing. The guidance shall instruct that Asylum Officers should account for the unique trauma of family separation when assessing matters such as credibility and the level of detail and consistency it is reasonable to expect in an applicant's testimony.

The training will also include a summary of asylum statutes, regulations, and case law that may be relevant to potential *Ms. L.* Settlement Class members' claims, including those claims involving a fear of persecution connected to forced family separation by the U.S. Government through the Zero Tolerance Policy and its associated policies and practices. The training will include a reminder to officers that *Ms. L.* Settlement Class members may present claims based on any of the five statutorily protected grounds, including membership in a particular social group (PSG). Whether *Ms. L.* Settlement Class members can establish past persecution or a well-founded fear of future persecution on account of membership in a PSG will depend on the factual circumstances that exist in the *Ms. L.* Settlement Class member's country of citizenship and the *Ms. L.* Settlement Class member's specific circumstances. Consistent with asylum law, the determination of whether a *Ms. L.* Settlement Class member has been persecuted or has a well-founded fear of future persecution on account of membership in a PSG must be conducted on an individualized basis, based on the particular facts presented in each case.

Within 75 days of the filing of the motion for preliminary approval of the Settlement Agreement, USCIS will share the non-privileged portions of the training materials with Class Counsel, under any necessary protective orders. Class Counsel will then have 21 days to return comments and feedback on the training to the government. USCIS will take Class Counsel's comments and feedback into consideration in finalizing the training and will share a final copy of the non-privileged portions of the training materials with Class Counsel.

*Ms. L.* Settlement Class members' affirmative asylum applications will be reviewed by a centralized group of SAOs or Asylum Officers detailed as SAOs, prior to any denial or referral to EOIR. Such officers will receive the training described above. In addition, USCIS Asylum Division Headquarters will conduct randomized pre-service review on a subset of *Ms. L.* Settlement Class members' asylum application decisions (grants, denials, dismissals, and referrals

to EOIR) on a rolling basis and offer additional guidance and calibration sessions to the field as deemed appropriate following review of such cases.

USCIS will identify the affirmative asylum applications filed by *Ms. L.* Settlement Class members pending before USCIS as of the final approval of the settlement, including affirmative applications filed by *Ms. L.* Settlement Class members over whom USCIS has initial jurisdiction as an Unaccompanied Child pursuant to 8 U.S.C. § 1158(b)(3)(C), INA § 208(b)(3)(C). Adjudication of such pending asylum applications will be governed by the procedures for USCIS asylum adjudications set forth in the Settlement Agreement.

If USCIS denied or referred to EOIR a *Ms. L.* Settlement Class member's affirmative asylum application prior to the Effective Date, USCIS will reopen the asylum application following the *Ms. L.* Settlement Class member's request, subject to the deadlines specified in Section IV.C.3., and adjudicate the asylum application pursuant to the procedures for asylum adjudications set forth in this Settlement Agreement. This requirement does not apply to subsequent denials or referrals to EOIR of a *Ms. L.* Settlement Class member's affirmative asylum application if the application was adjudicated pursuant to the procedures set forth in this Settlement Agreement. This paragraph includes Unfiled NTAs; see further information in Section IV.C.2.e. below. If the NTA was filed and docketed with the immigration court, the procedures set forth in Section IV.C.2.b. below will apply; USCIS will reopen and adjudicate such an asylum application after the *Ms. L.* Settlement Class member requests reopening from USCIS only if EOIR has dismissed or terminated the INA § 240 removal proceedings, consistent with Section IV.C.2,c, below. Additional and specific provisions concerning *Ms. L.* Settlement Class members in particular removal postures are set forth below.

b. Dismissal or Termination, Recalendaring/Dismissal or Termination, and Reopening/Dismissal or Termination of INA § 240 Removal Proceedings for *Ms. L.* Settlement Class Members

All requests for DHS to join or, where applicable, non-oppose motions or appeals discussed in this subsection will be adjudicated on a case-by-case basis. DHS's decision whether to join or not oppose a motion may be influenced by information unknown to USCIS at the time of the parole adjudication or by the *Ms. L.* Settlement Class member's actions after he or she was granted parole by USCIS, if applicable. DHS will ensure that the email addresses or mailboxes to be used for the submission of requests for DHS to join or not oppose motions discussed in this subsection are posted on its public facing page on ICE.gov, and will reference the required information to be included when submitting such requests (e.g., identifying in the subject line that the noncitizen is a *Ms. L.* Settlement Class member). DHS will endeavor to prioritize its review and handling of any properly submitted request, subject to any staffing or resource constraints.

*Ms. L.* Settlement Class members requesting that USCIS reopen a previously denied or referred asylum application who are in INA § 240 removal proceedings, whose removal proceedings were not previously dismissed or terminated, may submit a request to the applicable ICE OPLA field location that DHS agree to the filing of a joint motion to dismiss or terminate or a joint motion to recalendar and dismiss or terminate the removal proceedings before the immigration judge or the Board of Immigration Appeals (BIA), where applicable. DHS will review

properly submitted requests on a case-by-case basis and agree to the filing of a joint motion to dismiss or terminate, or a joint motion to reopen and dismiss or terminate the INA § 240 proceedings without prejudice if DHS determines that such action is appropriate as a matter of prosecutorial discretion. When determining if prosecutorial discretion is appropriate, DHS will take into consideration the fact that the individual is a *Ms. L.* Settlement Class member and was granted parole. DHS's agreement to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member being neither potentially subject to nor having been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of the parole adjudication or by the *Ms. L.* Settlement Class member's actions after he or she was granted parole by USCIS. The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's removability.

For *Ms. L.* Settlement Class members who are in consolidated INA § 240 removal proceedings with Qualifying Additional Family Members, the request submitted to DHS that it agree to the filing of a joint motion to dismiss or terminate, a non-opposition or joint motion to recalendar and dismiss or terminate, or a joint motion to reopen and dismiss or terminate INA § 240 removal proceedings without prejudice may include Qualified Additional Family Members who are in the consolidated INA § 240 removal proceeding with the *Ms. L.* Settlement Class member. Any filings submitted to the Immigration Court must comply with EOIR, Imm Ct. Practice Manual, Ch. 5.1(a).  To the extent the *Ms. L.* Settlement Class member's INA § 240 proceedings have a hearing date docketed before the immigration court before the deadlines set forth in Section IV.C.3, *infra*, DHS will review requests submitted no earlier than 90 days prior to the *Ms. L.* Settlement Class member's scheduled master calendar or merits hearing on a case-by-case basis. DHS will review requests submitted by all other *Ms. L.* Settlement Class members as soon as practicable. DHS will agree to join or not oppose the filing of a motion to dismiss or terminate, or a motion to recalendar and dismiss or terminate, or a motion to reopen and dismiss or terminate that includes the *Ms. L.* Settlement Class members' Qualifying Additional Family Members if DHS determines such action is appropriate as a matter of prosecutorial discretion. DHS's agreement or non-opposition to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member and Qualifying Additional Family Member being neither potentially subject to nor having been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of adjudication of the parole application or by the *Ms. L.* Settlement Class member's or Qualified Additional Family Member's actions after he or she was granted parole by USCIS. The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability.

The Immigration Court (or, in some instances, the BIA) has sole discretion whether to grant or deny such motions.  The motion should explain that it is not in DHS's interest to continue the case, because the individual is a *Ms. L.* Settlement Class member, and that dismissal or termination is being sought under this Settlement Agreement. Should an immigration judge deny a motion to dismiss or terminate or reopen an order under this provision, DHS will consider, on a case-by-case basis, joining or not opposing a motion to the Immigration Court to reconsider the denial and/or filing a statement of non-opposition in any appeal to the BIA of such a denial. EOIR will advise

adjudicators about the terms of this Settlement Agreement as it concerns EOIR and in a manner that is consistent with the independent judgment and discretion exercised by immigration judges and appellate immigration judges.

*Ms. L.* Settlement Class members described in this Section who have a pending petition for review of their INA § 240 proceedings orders under 8 U.S.C. § 1252, INA § 242, should coordinate with Class Counsel and the Department of Justice ("DOJ") attorney assigned to the petition for review, to ensure that the relevant circuit courts of appeals can enter appropriate orders remanding or dismissing the petitions. The Government's expectation is that, absent unusual circumstances, DOJ will agree to a motion for remand or dismissal, if requested by the *Ms. L.* Settlement Class member.

Requests to DHS to join motions to dismiss or terminate, reopen and dismiss or terminate, or remand from the BIA and dismiss or terminate INA § 240 proceedings under this Settlement Agreement must be submitted in accordance with the deadlines specified in Section IV.C.3.

   c.   Procedures for *Ms. L.* Settlement Class Members with Terminated or Dismissed INA § 240 Removal Proceedings Who Filed a Prior Asylum Application

For those *Ms. L.* Settlement Class members:

   i.   Whose INA § 240 proceedings are terminated or dismissed;
   ii.  Who already filed an asylum application directly with EOIR or with USCIS that USCIS then referred or sent to EOIR (both referred to as a "prior asylum application"); and
   iii. Who subsequently properly file a new complete asylum application with USCIS or request that USCIS reopen their prior asylum application subject to the deadlines specified in Section IV.C.3:

USCIS agrees:

   - To use the initial filing date of the prior asylum application, as defined above, for purposes of affirmative asylum interview scheduling, and will apply the scheduling priorities in place at the time of scheduling.
   - To use the initial filing date of the prior asylum application, as defined above, for adjudicating EAD applications filed under 8 C.F.R. § 274a.12(c)(8) (pending asylum applications), if the *Ms. L.* Settlement Class member seeks an initial or renewal (c)(8) EAD after the new asylum application has been completed and properly filed with USCIS or reopened by USCIS.
   - To inform EOIR that the individual is a *Ms. L.* Settlement Class member and is entitled to any applicable relief under this Settlement Agreement when subsequently referring *Ms. L.* Settlement Class members' asylum applications to EOIR for adjudication in INA § 240 proceedings, if applicable.

*Ms. L.* Settlement Class members described in this subsection must comply with any specific filing guidance or reopening procedures provided by USCIS for both the asylum application and EAD application.

For purposes of this subsection, Section IV.C.2.c, the date USCIS receives the subsequent properly filed and complete asylum application or receives the request to reopen the prior asylum application is considered the date the asylum application is filed, or the date reopening is requested.

For purposes of verifying immigration status information for benefit-granting agencies, and notwithstanding USCIS's agreement above, the USCIS Systematic Alien Verification for Entitlements Program (SAVE) will not reflect that an asylum application is pending if a benefits-granting agency queries SAVE during the period between dismissal or termination of INA § 240 proceedings and the date when the *Ms. L.* Settlement Class member properly files or requests reopening of an asylum application with USCIS pursuant to this Settlement Agreement.

      d.   <u>Procedures For *Ms. L.* Settlement Class Members Who Are in Expedited Removal or Reinstatement Proceedings or Have Expedited or Reinstated Removal Orders</u>

Following the Effective Date, *Ms. L.* Settlement Class members who have:

      i.   Pending expedited removal proceedings or reinstatement proceedings (including those pending a credible fear determination or a reasonable fear determination from USCIS, and those in withholding-only proceedings under 8 C.F.R. § 1208.2(c)(2)(i)); or

      ii.   Final expedited removal orders or reinstated orders of removal (including those with a negative credible fear determination or negative reasonable fear determination from USCIS or such determination that was affirmed by EOIR)

may request the DHS component that issued the charging document or removal order to exercise its prosecutorial discretion to cancel the pending proceeding or rescind the removal order. DHS, upon conducting an individualized review, will grant the request if it determines that such action is appropriate as a matter of discretion and the *Ms. L.* Settlement Class member is neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). DHS will ensure that the email addresses or mailboxes to be used for the submission of such requests are posted on its public facing websites, and will reference the required information to be included when submitting such requests (e.g., identifying in the subject line of the email that the noncitizen is a *Ms. L.* Settlement Class member). DHS will endeavor to prioritize its review and handling of any properly submitted requests, subject to any staffing or resource constraints.

For those *Ms. L.* Settlement Class members in withholding-only proceedings, upon rescission of the *Ms. L.* Settlement Class member's reinstatement order, DHS will file, not oppose, or join a motion to terminate such proceedings before the Immigration Court or BIA.

Upon rescission of the unexecuted reinstatement or expedited removal order, and, if applicable, termination of withholding-only proceedings, the *Ms. L.* Settlement Class member shall

have the opportunity to apply for asylum with USCIS pursuant to Section IV.C.2.a., above. *Ms. L.* Settlement Class members whose reinstated orders of removal have been rescinded may request that DHS join or not oppose a properly filed motion to reopen the prior removal order that served as the basis for the reinstated order and dismiss the removal proceeding in which that order was originally entered  where: (1) the *Ms. L.* Settlement Class member was previously denied asylum in INA § 240 removal proceedings; (2) the *Ms. L.* Settlement Class member was not found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v); (3) the prior asylum application was denied after the separation that renders the noncitizen a *Ms. L.* Settlement Class member occurred; and (4) DHS determines such action is appropriate as a matter of prosecutorial discretion. Requests will be adjudicated on a case-by-case basis, and approval or agreement may by affected due to information unknown to USCIS at the time of parole adjudication or actions since the individual was granted parole by USCIS.

### e.   Procedures for *Ms. L.* Settlement Class Members with an Unfiled NTA

USCIS will adjudicate asylum applications for *Ms. L.* Settlement Class members filed pursuant to the terms of this Settlement Agreement if USCIS has jurisdiction over the application pursuant to 8 C.F.R. § 208.2(a), notwithstanding the existence of an Unfiled NTA. However, *Ms. L.* Settlement Class members with an Unfiled NTA as of the Effective Date of the Settlement Agreement may request that the DHS component that issued the NTA exercise its prosecutorial discretion to cancel the NTA. The DHS component, upon conducting an individualized review, will grant the request and cancel the NTA if it determines that such action is appropriate as a matter of discretion and that the *Ms. L.* Settlement Class member is neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). Cancellation of the NTA is not guaranteed and may be affected due to information unknown to USCIS at the time of parole adjudication under the terms of this Settlement Agreement or actions since the individual was granted parole, if at all, by USCIS.

### f.   Provision of Procedural Protections for *Ms. L.* Settlement Class Members in Pending 240 Removal Proceedings

EOIR will be advised concerning the rights of *Ms. L.* Settlement Class members under this Settlement Agreement as they pertain to EOIR. For *Ms. L.* Settlement Class members in INA § 240 removal proceedings who elect to proceed with their asylum claims in immigration court in lieu of seeking termination or dismissal of their removal proceedings under this Settlement Agreement, and who have pending asylum applications that were properly filed with the immigration court on or before the two years after their Settlement Class Member Confirmation Date, shall qualify for an extraordinary circumstances exception under 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D); 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) and will be found to have filed their asylum applications within a reasonable period given the circumstances under 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) for purposes of the statutory one-year filing deadline requirement under 8 U.S.C. § 1158(a)(2)(B), INA § 208(a)(2)(B).

3. *Deadlines for Seeking Relief Under this Settlement Agreement*

    a. <u>Deadline for Submission of Requests to Join or Non-oppose Motions to Dismiss or Terminate, Reopen and Dismiss or Terminate, or Remand and Dismiss or Terminate Removal Proceedings, Requests to Cancel Pending Expedited Removal and Reinstatement Proceedings, Requests to Rescind Expedited Removal and Reinstated Orders of Removal, and Requests to Cancel Unfiled NTAs</u>

*Ms. L.* Settlement Class members seeking dismissal, administrative closure, continuance, termination, or reopening and dismissal or termination of their INA § 240 removal proceedings pursuant to Section IV.C.2.b. must submit their request to join or non-oppose their motion to ICE OPLA for consideration no later than two years after their Settlement Class Member Confirmation Date. *Ms. L.* Settlement Class members seeking cancellation of expedited removal or reinstatement proceedings, rescission of expedited removal or reinstated orders of removal, or cancellation of an Unfiled NTA pursuant to the provisions of this Settlement Agreement must submit their motion or request no later than two years after their Settlement Class Member Confirmation Date.

    b. <u>Deadlines for Submission of Asylum Application with USCIS or to Request Reopening of a Prior Asylum Application</u>

To obtain benefits pursuant to this Section IV.C.2.:

    i. *Ms. L.* Settlement Class members who are filing motions to dismiss, terminate, or reopen and dismiss removal proceedings before EOIR pursuant to Section IV.C.2.b. must properly file a complete asylum application with USCIS or request that USCIS reopen their prior asylum application no later than one year after the date EOIR dismisses or terminates the *Ms. L.* Settlement Class member's removal proceedings;

    ii. *Ms. L.* Settlement Class members who are submitting requests to DHS to cancel pending expedited removal or reinstatement proceedings, or rescind a reinstatement or expedited removal order, pursuant to Section IV.C.2.d., must properly file a complete asylum application with USCIS or request that USCIS reopen a prior asylum application no later than one year after the date DHS cancels the pending expedited removal or reinstatement proceedings, or rescinds the expedited removal or reinstatement order;

    iii. *Ms. L.* Settlement Class members whose prior asylum application was denied by USCIS prior to the Effective Date must request that USCIS reopen their prior asylum application no later than one year after their Settlement Class Member Confirmation Date. This requirement does not apply to subsequent denials or referrals to EOIR of a *Ms. L.* Settlement Class member's affirmative asylum application if the application was adjudicated pursuant to the procedures set forth in this Settlement Agreement; and

    iv. *Ms. L.* Settlement Class members who do not require further action by DHS or EOIR before they can apply affirmatively for asylum before USCIS (e.g., they are not subject to INA § 240 removal proceedings, expedited removal or reinstatement proceedings, an expedited removal order or reinstated order of

removal, or are unaccompanied children filing pursuant to 8 U.S.C. § 1158(b)(3)(C), INA § 208(b)(3)(C), over whom USCIS has initial jurisdiction), including *Ms. L.* Settlement Class members who have an Unfiled NTA or whose removal orders have been executed and they subsequently returned to United States via parole or were admitted in a lawful status, must properly file a complete asylum application with USCIS no later than one year after their Settlement Class Member Confirmation Date.

v.  For *Ms. L.* Settlement Class members who are outside the United States as of the time of their Settlement Class Member Confirmation Date, in order to have their asylum application adjudicated under the terms of this section, the *Ms. L.* Settlement Class member must properly file a complete asylum application with USCIS no later than one year after the date of their parole or lawful admission to the United States or before the Termination Date, whichever is earlier.

A *Ms. L.* Settlement Class member's asylum application that is filed with USCIS by the deadlines specified in this section will continue to be governed by procedures set forth in Section IV.C.2.a., even if the asylum application is pending on the Termination Date. Subsequent asylum applications filed by *Ms. L.* Settlement Class members will not be governed by this Settlement Agreement.

For purposes of this Settlement Agreement, the date USCIS receives the properly filed and complete asylum application or receives the request to reopen the prior asylum application is considered the date the asylum application is filed, or the date reopening is requested.

## V.  Future Separations

A.  This Section (Future Separations) will apply only to noncitizen parents and Legal Guardians who are apprehended or encountered at the Border, and whose minor noncitizen children are separated from them and held in ORR or DHS custody after the Effective Date. The Reunification provisions of this Section will also govern separations that occurred between January 20, 2021 and the Effective Date where the noncitizen parent or Legal Guardian has not been reunified with their noncitizen child(ren) before the Effective Date. This Settlement Agreement does not apply to noncitizen parents and Legal Guardians who are apprehended by DHS in the interior of the United States.

B.  DHS is committed to protecting family unity by ensuring that noncitizen children in DHS custody are not separated from their accompanying noncitizen parent or Legal Guardian, except in limited permissible circumstances as detailed below. CBP will not transfer a family to ICE and ICE will not seek or complete a transfer for the purpose of effectuating a separation that could not otherwise be carried out under this Settlement Agreement. If a family is transferred from CBP to ICE for processing, ICE shall not separate the family in any manner that would be inconsistent with the terms of this Settlement Agreement if it had been done by CBP, and will create the documentation regarding the separation as set forth in Section V.K.1.a below.

C.  The limited permissible circumstances for separation are the following:

1.  CBP determines that the child or accompanying parent or Legal Guardian presents a public safety or national security risk to the United States as defined in Section V.D. below, and indicates the reason for separation is national security or public safety at the time of separation, if permitted;

2.  the parent or Legal Guardian is taken into custody by another law enforcement entity to serve as a material witness in circumstances that make it impossible or unsafe for the child to remain with the parent or Legal Guardian;

3.  the parent or Legal Guardian poses a threat to the safety of the child, as defined in Section V.H. below, and CBP documents that risk at the time of separation;

4.  the parent or Legal Guardian is the subject of an active federal, state, or local warrant, for which the relevant authority takes active steps to extradite the parent or Legal Guardian;

5.  the parent or Legal Guardian is referred for prosecution for a felony (other than for immigration related prosecution based on illegal reentry or prior removals). Where no other permissible circumstances for separation are present, CBP will not refer an adult for prosecution solely under 8 U.S.C. § 1325(a) if the adult is traveling with a minor, is the minor's parent or Legal Guardian, and is the only parent or Legal Guardian traveling with the child;

6.  the parent, Legal Guardian, or the child requires hospitalization or outside medical care;

7.  or when otherwise required by law.

D.  National security and public safety risks shall be determined in relation to the specific circumstances of the individual. They will include, but are not limited to, an individual: who is determined to have engaged in or is suspected of terrorism, espionage, or terrorism-related or espionage-related activities; has been convicted of a violent felony and is deemed to pose an ongoing threat to public safety; or where a determination has been made that the parent or Legal Guardian is subject to a mandatory detention statute prohibiting release because of terrorism grounds or a criminal offense such as INA §§ 236(c) or 241(a)(2). Where national security and/or public safety risks are the basis of separation, CBP shall document that the reason for separation is national security and/or public safety at the time of separation or within a reasonable time afterward, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law.

E.  When criminal history is the basis for separation and the individual is not subject to mandatory detention as described in Section V.D., CBP will consider the length of time since the arrest or conviction before separating a parent or legal guardian from the child. This does not apply to national security concerns.

F.  When considering information from foreign databases as the basis for separation, CBP will also consider any countervailing information provided on the individual's behalf.

G.  In material witness determinations, DOJ shall, in cooperation with other agencies and where practicable, make every effort to seek to avoid detention of a parent or Legal

Guardian who is alleged to be a material witness if such detention would result in separating them from their child.

H. A threat to the safety of a child shall be defined as a threat to life or health to the extent that injury or harm may be likely if the child were returned to or left in the custody of his or her parent or Legal Guardian. CBP shall evaluate any threat to the safety of a child on a case-by-case basis and may not employ a presumption of a threat to the safety of a child, based on a parent or Legal Guardian's past criminal or immigration history.

I. After consultation with HHS, CBP will develop standardized guidance and ensure that agents and officers follow the guidance when determining whether the parent or Legal Guardian poses a risk to the safety of the child. This guidance will be developed in coordination with and subject to the approval of the DHS Chief Medical Officer.

J. Training and guidance will be provided to all CBP agents and officers and supervisors who may be involved in separating a parent or Legal Guardian from their child which fully explains the new requirements in this settlement and makes clear that a parent or Legal Guardian shall not be separated from his/her/their child based solely on the parent or Legal Guardian's immigration history, including prior removals.

K. Defendants shall employ the following processes and procedures to ensure that family unity is maintained to the greatest extent possible when a parent or Legal Guardian and his or her child are separated. To the extent possible, information provided to the parent, Legal Guardian, or child under this section pertaining to the reason for the separation, the process for contesting the separation, or communication between the parent or Legal Guardian and the child shall be communicated in the language that the parent, Legal Guardian, or child best understands, using an interpreter or translation if necessary:

1. _Procedures at Initial Separation_

    a. Initial internal documentation

CBP shall document the separation in its electronic systems of records. Such documentation shall include the fact of separation, the reason for separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law, and known biographic (including A numbers) and location information of the separated parent(s) or Legal Guardian(s) and separated child(ren). CBP will include relevant documents supporting the decision to separate in the A-file of the separated child(ren) and separated parent or Legal Guardian.

    b.  Information disclosures to separated parents, Legal Guardians, and children

        i. At the time of a separation, CBP shall provide a written explanation to the parent or Legal Guardian of what is occurring, and next steps, including the

reason(s) for the separation, including facts specific to the separated individual, which in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law. The written explanation must also include information on how the parent or Legal Guardian can submit additional information to ICE regarding their separation using the Family Separation Supplemental Information Form (FSSIF) or successor forms, see Section V.K.3.c.i., or to HHS where relevant to parentage determinations, see Section V.K.3.d.ii, as well as contact information for making a complaint to the DHS Office for Civil Rights and Civil Liberties and the DHS and DOJ Offices of the Inspector General. DHS shall provide the parent with a copy of the FSSIF. The FRTF will also post the FSSIF on its DHS website. The FSSIF shall not require a parent or Legal Guardian to provide the reason they were separated.

ii.    If a U.S. citizen child accompanies a noncitizen parent or Legal Guardian who enters CBP's custody at the Border and CBP refers the child to a state or local agency, CBP will endeavor to inform the noncitizen parent of the state and local entity where the child went and any known contact information for the agency. CBP will endeavor to inform any state or local agency, at the time that the child is referred, that the child was separated from their parent.

iii.   HHS will create a one-pager explanation for CBP to provide to the separated parent or Legal Guardian and separated child at the time of separation.  The one-pager will include notice that the child will be placed with an ORR care provider until reunification with the parent or Legal Guardian or release to another relative or other approved sponsor; that the child will be referred for the appointment of a child advocate; that the child will receive a Know Your Rights presentation and legal screening within 10 business days of entering ORR custody; and that federal agencies shall facilitate communication between children and their separated parent or Legal Guardian while the child is in ORR custody. HHS will ensure that the one-page explanation is age-appropriate for the child.

2.  *Government information sharing related to any separation of a parent or Legal Guardian from his or her child*

a.  CBP shall work with HHS and ICE to ensure that, consistent with information sharing agreements and legal obligations, HHS and ICE are provided the documents needed for operational purposes (e.g., criminal records, conviction documents, identity documents).

b.  Defendants will ensure that the information specified in Sections V.K.2.(c) through (e) below is available to agencies identified in those Sections that may take custody of a separated parent, Legal Guardian, or child (whether it is made available through a shared database or other method of information exchange between agencies), so

29

that each agency has the information it needs to track a parent or Legal Guardian and his or her separated child, to identify when reunification is appropriate, and to facilitate such reunification.

    c.   Information that will be made available to ORR

The following information shall be provided or made available to ORR at the time of the child's transfer or, in extraordinary circumstances, no later than three business days after the child's transfer. Within three business days after receiving the following information, ORR shall provide such information to the facility where the child is being held; the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4), who has submitted Form L-3, Notice of Attorney Representation, to ORR, and to any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide information made available to ORR under this Section to an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record:

    i.   The fact that a child transferred to ORR custody was separated from a parent or Legal Guardian, as set out in Section V.K.1.a;

    ii.   The location to which the parent or Legal Guardian was initially transferred, and updates within 72 hours of the parent or Legal Guardian's transfer to another location;

    iii.   The reason for the separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law;

    iv.   Any available contact information for the parent or Legal Guardian, including any contact information to reach the parent or Legal Guardian at their current detention facility, updated 72 hours after they are transferred to a new facility; and

    v.   DHS and HHS shall work together to ensure that HHS has information needed for HHS operations, including information about a trusted third party, if a parent or Legal Guardian chooses to designate such a trusted third party to receive information about their location and their child's location, see Section V.K.1.g.

    d.   Information that will be provided or made available to ICE

    i.   The fact that a parent or Legal Guardian transferred to ICE custody was separated from his or her child;

    ii.   Known biographical information for the separated parent or Legal Guardian and the separated child;

iii.   The reason for the separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law; and

iv.   The location where the child is being held if the child is in ORR custody, including updated location information within 24 hours of any transfer of the child within ORR custody, and information on how the parent or Legal Guardian may contact the child, including contact information for the child's assigned case manager, the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4) who has submitted Form L-3, Notice of Attorney Representation, to ORR, and any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide the contact information for an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record.

e.   <u>In cases in which a separated parent or Legal Guardian is referred to the custody of the U.S. Marshals Service (USMS), information that will be provided or made available to USMS</u>

i.   The fact that a parent or Legal Guardian transferred to USMS custody was separated from his or her child;

ii.   The reason for the separation; and

iii.   The location where the child is being held if the child is in ORR custody, including updated location information within 24 hours of any transfer of the child within ORR custody, and information on how the parent or Legal Guardian may contact the child including contact information for the child's assigned case manager, the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4) who has submitted Form L-3, Notice of Attorney Representation, to ORR, and any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide the contact information for an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record.

f.   <u>In cases in which a separated parent or Legal Guardian is in the custody of a state or local agency, information that CBP will endeavor to provide or make available to that agency:</u>

i.   The fact that a parent or Legal Guardian transferred to that agency's custody was separated from their child; and

ii.   If the child is in ORR custody, information on how the parent or Legal Guardian may contact the child.

g.   HHS and ICE shall develop procedures by which a parent or Legal Guardian may make a singular notification designating one trusted third-party individual, who is not in ICE custody, to be kept updated promptly by HHS and ICE, as appropriate, any time the location of the separated parent or Legal Guardian or the separated child changes while in ICE or HHS custody, respectively. For a parent or Legal Guardian in ICE custody, ICE will notify the third-party individual regarding changes in the location of custody of the parent or Legal Guardian. For a child in ORR custody, ORR will update the third-party individual regarding changes in the location of the child if ORR has current contact information for the third-party individual.

3.   *Additional Procedures following the Initial Separation*

a.   Outside of lawful seizures of fraudulent documents or other evidence of criminal activity, in no circumstance shall any employee of DHS confiscate and fail to return a parent, Legal Guardian, or child's documents that might be relevant to showing the family relationship. DHS shall make reasonable efforts, in a manner within its discretion, to authenticate presented documents prior to separation and shall ensure the prompt return of documents believed not to be fraudulent upon confirmation of parentage.

b.   HHS will determine what information provided by DHS about the separation can be provided to the child in an age-appropriate and trauma-informed way. HHS will refer every separated child admitted to ORR custody for appointment of a child advocate, who will have been alerted that the child was separated from a parent or Legal Guardian pursuant to Section V.K.2.c.

c.   *Submission of additional information to ICE and processes for facilitating contact with children*:

i.   A separated parent or Legal Guardian in ICE custody can submit additional information to ICE regarding their separation using the FSSIF. FSSIFs will be made available to ICE detainees in all detainee housing units and the FRTF will post the FSSIF on its DHS website. ICE ERO Field Offices will collect completed FSSIFs, and any supporting documentation, in the same manner as a traditional Detainee Request Form. ICE officers are required to email the FSSIFs and supporting documentation to a dedicated email address specific to this process as soon as practicable, but in any event within 7 business days. A separated parent or Legal Guardian may submit subsequent FSSIFs if they are providing new information.

ii.   A separated child can submit additional information to ORR regarding their separation and ORR will update the child's ORR case file with that information.

ORR will also provide the updated information to the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4), who has submitted Form L-3, Notice of Attorney Representation to ORR, or to an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record; and to any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). Any update provided by the child may be conveyed to ICE by the child's attorney of record or, in the absence of an attorney of record, the contracted legal services provider if the child consents. If the child is not represented by an attorney of record, then the child advocate may provide updates to ICE when the child advocate determines that sharing such information with ICE would be in the child's best interest and the child consents.

iii.   ICE shall post fliers in all of its detention facilities to explain how parents and Legal Guardians can request to contact their children or provide supplemental information regarding the basis of their separation, or submit a complaint to the DHS Office for Civil Rights and Civil Liberties and/or the DHS Office of the Inspector General, or contact Class Counsel by mail.

iv.    ICE shall maintain a direct email inbox for legal representatives of separated parents or legal guardians in ICE or USMS custody to provide the FSSIF directly to ICE. The FRTF will post the FSSIF on its DHS website along with the email address. For individuals in ICE custody, ICE shall respond to inquiries within 72 hours. Individuals who submit the form while in USMS custody may be asked to re-submit the form if transferred to ICE custody.

v.     The USMS and ORR will enter into a Memorandum of Understanding (MOU) to establish an internal tracking system and procedures between the agencies to facilitate communication and reunification between a separated parent or Legal Guardian in USMS custody and their child(ren) who are in ORR custody. That MOU shall include a requirement that the USMS will alert ORR when a separated parent or Legal Guardian transfers out of USMS custody and, upon transfer, the location to which the parent or Legal Guardian has been transferred, unless restricted from doing so for detainee safety, security, or other related concerns. In no case shall a parent or Legal Guardian's transfer out of USMS custody be delayed because of this notification requirement.

d.   *Separations due to non-parentage*

DHS must justify the separation of a child and adult on the basis that the adult is not the parent or Legal Guardian of the child and must investigate and verify the non-parental relationship before any separation, which may include contacting the relevant consulate for the child and adult. Where DHS believes the adult is not the child's biological parent, it must offer to conduct a DNA test, with the consent of the adult, and receive and communicate the results to the parent prior to any separation. If any adult believes that DHS's determination that he or she is not the parent or

33

Legal Guardian of a separated child was in error, he or she can challenge the determination as follows:

    i. If the adult is in ICE custody, he or she can submit additional information to ICE using the procedure in Section V.K.3.c.i. ICE must consider and respond to such additional information, and communicate its response to the separated parent or Legal Guardian, within 14 business days. If it is determined that the adult is the parent or Legal Guardian of the child and there is no other basis for continued separation, then ICE will coordinate with HHS to facilitate reunification if the child remains in HHS custody, under the streamlined *Ms. L.* process. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial). If the child is released from ORR custody to a sponsor, ICE will consider alternatives to detention for the parent or Legal Guardian to facilitate reunification. At the time of the child's release to a sponsor, ORR will also provide the sponsor information to the parent in ICE's legal custody. If parentage is determined after the child has been released from ORR custody and the parent is still in ICE custody, ORR will provide information at that time to the parent, for the purpose of facilitating reunification, concerning the sponsor to whom the child was released. If parentage is determined after the parent is no longer in ICE custody, and the parent contacts ORR, ORR will provide information at that time to the parent concerning the sponsor to whom the child was released. A copy of this information will also be sent to the parent's attorney (if ORR has the attorney's contact information) and the child's attorney (if they have one) or legal services provider (LSP).

    ii. If the adult is not in ICE custody, he or she can submit evidence of parentage to HHS in the manner described in the written explanation provided to the adult upon separation, see Section V.K.1.b.i. If HHS determines that the adult is the parent or Legal Guardian of the child, then HHS shall facilitate reunification under the streamlined *Ms. L.* process unless there exists a child safety risk as defined in Section V.H., or the child or the parent or Legal Guardian is unavailable due to criminal custody or incapacity, is not physically present in the United States, or declines reunification. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

e. *Separations due to the transfer of the parent or Legal Guardian to criminal custody based on an active warrant or because the individual is being held as a material witness*:

    i. If a parent or Legal Guardian is transferred to criminal custody based on an active warrant or because the individual is being held as a material witness, as described in Section V.G. above, the child will be transferred to HHS. Absent an independent basis for separation, a parent or Legal Guardian who is returned to DHS custody at the end of their criminal custody shall be reunified with his or her child.

    ii. In such cases HHS shall facilitate reunification of the child under the streamlined *Ms. L.* process unless there exists a child safety risk as defined in Section V.H. or the child or the parent or Legal Guardian is unavailable due to incapacity, is not physically present in the United States, or declines reunification. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

f. *Separations due to hospitalization or outside medical care*

If a parent or Legal Guardian is separated from his or her child due to the hospitalization or need for outside medical care of a parent, Legal Guardian, and/or child, and there are no other grounds for separation, the parent or Legal Guardian will be entitled to reunification with his or her child once the family member is released from the hospital. Any decision that the child(ren) and parent or Legal Guardian cannot remain together shall be based on the needs, policies, and/or restrictions of the hospital or other care facility where the parent, Legal Guardian, and/or child is receiving care. Any separated child shall be placed in an ORR facility as close as possible to where the parent or Legal Guardian is receiving medical care if ORR has sufficient beds available within the demographic area to accommodate the child. When the family member is released from medical care, DHS and HHS will work to facilitate reunification under the streamlined *Ms. L.* process if the child is in ORR custody and the parent or Legal Guardian is in DHS custody, absent an independent reason to separate. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial). If the child will be released from ORR custody to an approved sponsor before the parent is released from DHS custody, ORR shall notify the hospitalized parent of the child's intended sponsor and plans for release and reunification with the sponsor, as well as the sponsor's address and contact information.

    g. *Separations for any other reason that does not preclude future eligibility for reunification*

If DHS determines that continued separation of a previously-separated parent or Legal Guardian who is in DHS custody is no longer warranted, DHS will coordinate with HHS to facilitate reunification under the streamlined *Ms. L.* process if the child remains in HHS custody. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

    h. *Removal*

If a separated parent or Legal Guardian who has been in custody throughout the pendency of their removal proceedings has not been reunified with his or her separated child at the time he or she is being removed from the United States, and there are no legal prohibitions or risk to the child as defined in Section V.H., ICE shall offer the parent or Legal Guardian the opportunity to be removed with his or her child as set forth below.

    i. ICE will provide the Notice of Potential Rights Form, or its successor forms, to the separated parent or Legal Guardian when he or she enters ICE custody. If reunification is requested, ICE shall notify HHS, through a dedicated ORR mailbox, of the request as soon as is operationally feasible and, in any event, within three business days of when the separated parent signs the form and informs ICE of the decision.  If the separated parent or Legal Guardian is released from ICE custody after he or she signs the Notice of Potential Rights Form, ICE shall notify HHS of the release, and the procedures in this subsection (h) (Removal) will no longer apply and ICE will follow its normal policies and procedures.

    ii. If the child is in HHS custody, then HHS shall notify any attorney for the child or legal services provider at the child's shelter and any appointed child advocate within one business day of receiving the request for reunification. Within seven business days of receiving that request, the child will notify HHS through their representative, and HHS will notify ICE within one business day, whether the child prefers to be removed with their parent or Legal Guardian, objects to removal with their parent or Legal Guardian, or needs more time to make the decision. If the child needs more time to make a decision, including any discussion with the parent or Legal Guardian, the child shall be provided an additional seven business days in which to make their decision. Unless operationally infeasible, ICE shall not remove the parent or Legal Guardian prior to expiration of the relevant time period specified here. Where the child makes or changes their decision after the relevant time period but before removal and a delay in removal will not result, ICE, in its discretion, may, but will have no obligation to, consider such decision.

iii.   Where the child has been released from HHS custody, HHS shall notify any attorney for the child on record with ORR and any appointed child advocate within one business day of being notified of the pending removal. If the child is no longer in HHS custody, the child may make any objection to removal to their attorney of record or appointed child advocate. Within seven business days of receiving notice, the attorney or child advocate may convey that the child agrees to removal, objects to removal, or needs more time to make the decision. If the child needs more time, the child shall be provided an additional seven business days in which to make their decision. Unless operationally infeasible, ICE shall not remove the parent or Legal Guardian prior to expiration of the relevant time period specified here. Where the child makes or changes their decision after the relevant time period but before removal and a delay in removal will not result, ICE, in its discretion, may, but will have no obligation to, consider such decision.

iv.   If the child in ORR custody elects to be removed with the parent or Legal Guardian, ICE shall expeditiously coordinate with HHS to accomplish the reunification of the parent or Legal Guardian and child as is operationally feasible prior to the removal of the parent or Legal Guardian and child, as described above.

4.   Communication between a separated parent or Legal Guardian and their child

a.   The government will take the following steps to facilitate communication between a separated parent or Legal Guardian and their child:

i.   When the parent or Legal Guardian is in ICE custody and the child is in HHS custody, designated ICE field office points of contact will help facilitate communication between parent(s) or Legal Guardian(s) and children with the ORR case managers. If the child is in the custody of a state or local agency, designated ICE field office points of contact will attempt to facilitate communication between the child and parent(s) or Legal Guardian(s) when practical and legally permissible.

ii.   When the parent or Legal Guardian is in USMS custody and the child is in HHS custody, designated USMS field office points of contact will help facilitate communication between parent(s) or Legal Guardian(s) and children with the ORR case managers. If the child is in the custody of a state or local agency, USMS will endeavor to assist the parent or Legal Guardian to facilitate communication with their child, consistent with federal, state, or local laws and policies that govern the facility where the parent or Legal Guardian is detained, and subject to operational or administrative feasibility.

iii.   When the parent or Legal Guardian is in the custody of a state or local agency and the child is in HHS custody, designated HHS points of contact will help

attempt to facilitate communication between children and parent(s) or Legal Guardian(s).

iv.   ICE and USMS shall offer separated parents or Legal Guardians information about how to request telephone contact with their separated child(ren).

v.   ORR shall offer separated children information about how to request telephone contact with their parent or Legal Guardian.

vi.   Contact between parents or Legal Guardians and their children shall be free of cost, meaning that in no case shall contact be denied because the separated parent or Legal Guardian lacks funds in their account to make calls.

vii.   ICE and ORR shall coordinate to facilitate contact between a parent or Legal Guardian and their child within 48 hours of the child arriving to the ORR care provider. USMS shall coordinate with ORR to facilitate contact between a parent or Legal Guardian and their child upon the parent or Legal Guardian arriving in USMS custody. The frequency and mode of communication will be coordinated between the facility where the parent or Legal Guardian is being held and ORR based on the availability of the parent or Legal Guardian and the availability of resources at the facility where they are being detained. Alternative means of communication shall be explored and implemented whenever the parent, Legal Guardian, or child is unable to communicate effectively by verbal interaction alone. Facilities will endeavor to make such telephone or video contact available for a minimum of 20 minutes for each communication, subject to facility-wide protocols impacting all detainees.

L.   Nothing in this Section shall prohibit ICE from exercising its discretion to make safety-based housing decisions concerning families in its custody.

## VI. Notice and Reporting

### A. Notice to *Ms. L.* Settlement Class Members

1.   NOTICE UPON PRELIMINARY APPROVAL: The Preliminary Class Notice is attached hereto in English as Exhibit A to this Settlement Agreement. Once the Preliminary Class Notice is approved by the Court, the Parties will translate it into Spanish. Within 30 days of preliminary approval of this Settlement, the Parties will distribute the Preliminary Class Notice to *Ms. L.* Settlement Class members as follows:

   a.   Online/Electronic Notice
     i.   Defendants shall post a copy of the Preliminary Class Notice in English and Spanish in a reasonably accessible location on the websites of HHS and EOIR.
     ii.   Defendants shall post a copy of the Preliminary Class Notice on the Together.gov/Juntos.gov web site in English and Spanish

      iii.    Class Counsel shall post a copy of the Preliminary Class Notice in English and Spanish in a reasonably accessible location on the websites of the National ACLU.

   b.   Nothing in this paragraph or this Settlement Agreement shall prevent Class Counsel from further disseminating the Preliminary Class Notice to, inter alia, other non-profit organizations, legal services providers, or advocates working with separated families. Additionally, nothing in this paragraph or this Settlement Agreement shall prevent Class Counsel from issuing any press release regarding this Settlement Agreement or otherwise obtaining press attention for the Settlement Agreement.

   c.   Receipt of a Preliminary Class Notice is not a determination that an individual is a *Ms. L.* Settlement Class Member.

2.   NOTICE UPON FINAL APPROVAL: The Parties will meet and confer within seven days of Final Approval to update the language of the Preliminary Class Notice as appropriate (in English and Spanish), in order to reflect the final settlement agreement (the Final Class Notice). Within seven days after the Final Class Notice is agreed upon by the Parties, the Parties shall provide the Final Class Notice to the *Ms. L.* Settlement Class members by the following means:

   a.   Within 30 days posting the Final Class Notice (in English and Spanish), in or at the same websites as set forth above;

   b.   The Parties agree to negotiate in good faith to amend the Class Notices and these agreed-upon notice procedures if required to obtain final Court approval of the Settlement.

   c.   Defendants will work with Class Counsel to ensure that reasonable efforts are taken to contact all *Ms. L.* Settlement Class members and provide them with the Final Class Notice to the extent necessary to ensure that they are provided all benefits owed to them under the Settlement. Reasonable efforts to contact *Ms. L.* Settlement Class members include:

      i.    Defendants will identify parents and Legal Guardians and their separated child(ren) who may meet the definition of a *Ms. L.* Settlement Class member. Defendants will share this information with Class Counsel, under the protective order, and provide notice as described in this settlement agreement to those individuals.

      ii.    Defendants will provide available e-mail, mailing, and phone contact information under the protective order for all those who have registered with together.gov/juntos.gov, and the same available information for any attorneys or preparers who are listed on a together.gov/juntos.gov registration.

   iii. Defendants will maintain the existing registration website (together.gov/juntos.gov) until the Termination Date, but potential *Ms. L.* Settlement Class members must register on together.gov or juntos.gov prior to the Final Registration Date.

   iv. Defendants will fund a third-party managed outreach campaign until the Final Registration Date, to contact *Ms. L.* Settlement Class members and potential *Ms. L.* Settlement Class members both in the United States and abroad, including outreach to *Ms. L.* Settlement Class members who speak indigenous languages, and to explain reunification support, social services and benefits, and how to register on together.gov/juntos.gov. Defendants will also fund a helpdesk to field inquiries from *Ms. L.* Settlement Class members and potential *Ms. L.* Settlement Class members until the Termination Date.

3. Defendants will provide updates every 60 days identifying any new *Ms. L.* Settlement Class members, along with contact information from government records, which includes contact information for any attorneys for the *Ms. L.* Settlement Class members.

4. On a quarterly basis from the Effective Date until the Final Registration Date, Class Counsel will provide to Defendants a list of identified *Ms. L.* Settlement Class members whom Class Counsel have not been able to contact. No later than 60 days after such list is provided, Defendants will search relevant HHS, DHS, and DOJ databases that may contain new or updated address or contact information or attorney contact information for those *Ms. L.* Settlement Class members and any sponsors of *Ms. L.* Settlement Class members, and will share such information with Class Counsel for those *Ms. L.* Settlement Class members identified for that quarter, except as prohibited by law or any applicable privilege.

5. Until the Final Registration Date, Defendants will provide quarterly reports to Class Counsel of their contact efforts. Class Counsel will provide quarterly reports to Defendants detailing progress made in contact efforts, estimates on the remaining efforts to contact *Ms. L.* Settlement Class members, challenges experienced in their contact efforts, and recommendations to improve contact efforts.

**B. Reporting Provisions**

1. Defendants will provide reports, subject to an appropriate protective order, to Class Counsel to allow Class Counsel to track progress and identify any problems or delays in providing benefits of this settlement to *Ms. L.* Settlement Class members and their Qualifying Additional Family Members. The Parties may modify the categories of information Defendants provide by mutual agreement, in writing, and may submit any disputes for resolution by the Court. The Defendants' reports shall include, at a minimum, the following information:

a. <u>Parole Reporting (Including Parole in Place)</u>

    i.   Every 60 days, the government will provide a report that provides updates on progress toward obtaining parole for *Ms. L.* Settlement Class members and Qualifying Additional Family Members as follows:

        (a) identifying *Ms. L.* Settlement Class members who have submitted applications for parole from within the United States (or "parole in place"), and, separately, those who have submitted applications for parole from outside the United States, whether the *Ms. L.* Settlement Class member has received or been denied parole, dates they applied for and received parole or were denied; and

        (b) providing aggregate numbers of Qualifying Additional Family Members who have submitted applications for parole in place or parole from outside the United States, and how many have received parole or have been denied.

    ii.   Reporting shall also make clear in which cases the DHS contractor is assisting the *Ms. L.* Settlement Class members and their Qualifying Additional Family Members with parole applications.

    iii.   Any further data points that have been exchanged to date – as of the Effective Date – until the Termination Date.

b. <u>Humanitarian Services Reporting</u>

    i.   Every 90 days, Defendants will provide a report that includes the aggregate numbers of *Ms. L.* Settlement Class members who are receiving behavioral health services.

    ii.   Every 90 days, Defendants will provide a report that includes the aggregate numbers of *Ms. L.* Settlement Class members who are receiving housing services.

c. <u>Ongoing Separations</u>

Defendants shall provide monthly reports to Class Counsel concerning ongoing separations for one year after the Effective Date. Defendants shall provide quarterly reports to Class Counsel concerning ongoing separations for two additional years. The government will report the information in the same manner that it has been reported throughout the litigation.

C. Except as otherwise specified herein, all reporting requirements will terminate on the Termination Date.

41

## VII.  Dispute Resolution

A.  The terms of the Settlement Agreement shall be incorporated into the Order of the Court approving the Settlement Agreement. The Order shall constitute the final judgement of the Court with regard to the Action. The Order shall include a statement that the Order of the Court and all obligations of the Parties under the Settlement Agreement will terminate on the Termination Date except that:

    1.  Defendants' obligations under Section V (Future Separations) will terminate on the Termination Date – Future Separations; and

    2.   Defendants will continue to provide Behavioral Health Services as described in Section IV.B.2.a. above for one year following the Termination Date.

B.  From the Effective Date until the Termination Date, the Court will retain jurisdiction over the Action only for the purpose of enforcing the terms of the Settlement Agreement, except that the Court shall retain jurisdiction over Section V (Future Separations) until the "Termination Date – Future Separations," and shall retain jurisdiction to resolve disputes regarding the provision of Mental Health Services as described in Section IV.B.2.a. above for one year following the Termination Date; and shall retain jurisdiction to resolve disputes concerning any applications for relief filed pursuant to this Settlement Agreement that remain pending as of the Termination Date.

C.  The Parties agree that they will apply the following dispute resolution mechanisms before seeking enforcement from the Court:

    1.  Should counsel for either party believe in good faith that the other party has failed to implement or comply with a specific term of this Settlement Agreement, counsel shall, within 7 days of learning of the alleged noncompliance, notify counsel for the opposing side, in writing, of the specific grounds upon which non-compliance is alleged. Disagreement with a sole individual discretionary decision or final adjudicative determination provided for in the Settlement Agreement is not a valid basis for alleging non-compliance.

    2.  Any allegations of violations of this Settlement Agreement must be substantiated with specific detailed information about the violations sufficient to enable the responding party to investigate and respond.

    3.  The responding party shall respond in writing within a reasonable period, but no later than thirty (30) calendar days following the receipt of notice of the alleged failure to comply, and provide the responding party's position and any action it has taken or intends to take to address the alleged non-compliance. The Parties shall negotiate in good faith in an effort to resolve any remaining disputes. The Parties agree to make good faith attempts to resolve the issues informally, including a good faith attempt to agree on a reasonable date by which to cure instances of non-compliance.

    4.  If the Parties have exhausted the process set out in the preceding paragraphs and the complaining Party believes that the alleged instances of non-compliance have not been remedied, the Parties may (1) jointly refer any unresolved dispute to a mediator agreed upon by the Parties; or, alternatively, (2) seek relief before the Court in the *Ms. L.* case.

5.   Any request or communication to a mediator or potential mediator to begin the mediation process must be a joint request or communication from both Parties. The Parties agree that the mediation process described in this Section shall be conducted confidentially and that no public disclosure shall be made regarding the mediation process at any time before, during, or after the mediation process, except that the final result of the mediation may be disclosed. Plaintiffs retain the right to share information obtained via the mediation process—subject to the Protective Order in this case—with outside stakeholders or organizations that brought the dispute to Plaintiffs' attention, or any other stakeholders or organizations with relevant information or expertise Plaintiffs wish to consult with regarding issues raised in the mediation process. Any documents or information disclosed by either party during the mediation process shall not be admissible in any judicial proceeding. All statements or conclusions of the mediator shall not be admissible in any subsequent judicial proceeding.

6.   If the Parties do not reach resolution under the procedures of Paragraphs 1-6, either party may file a motion requesting that the Court resolve the dispute.

7.   If Plaintiff has a good faith belief that immediate, irreparable harm to a *Ms. L.* Settlement Class member who is eligible for benefits under this Agreement is imminent and cannot be resolved within the time frames specified in this Section, Plaintiffs may make an immediate application for relief to the Court in the *Ms. L.* case, after providing notice of such harm to Defendants' Counsel.

D.   The Parties agree that any action or proceeding to enforce the terms of this Agreement shall be brought exclusively to the Court in the *Ms. L.* case. The Court shall have the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement.

E.   The Parties will endeavor to avoid using the dispute resolution process set forth in this Section to address allegations of temporary or de minimis breaches of the Settlement Agreement. This paragraph does not prevent Plaintiffs from raising individual and case-specific instances of violations of the Settlement Agreement for resolution.

## VIII.   Fees and Expenses

Defendants agree that they will pay reasonable fees and other expenses incurred by Class Counsel in the litigation of this Action, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Defendants reserve their right to raise defenses related to the reasonableness of Class Counsel's request for fees and expenses, but otherwise waive their available defenses to a claim brought by Class Counsel under 28 U.S.C. § 2412(d) for the litigation of this Action through the Effective Date of the Settlement Agreement. No later than 60 days following the Effective Date Plaintiffs will serve a fee demand on Defendants, and the Parties will then enter into negotiations to determine the amount of reasonable fees and expenses to be paid by Defendants. If the Parties cannot reach agreement on the amount of reasonable fees and expenses to be paid, then they will submit the issue to the Court in the *Ms. L.* case for binding resolution. This Section does not affect or waive any party's rights or defenses concerning any requests for fees or expenses incurred more than 60 days after the Effective Date related to enforcement of this Settlement Agreement.

## IX. <u>Additional Provisions</u>

      A.  By entering into this Settlement Agreement, Plaintiffs and all *Ms. L.* Settlement Class members waive and release all Defendants in their individual and official capacities, the United States, and past, present, or future department or component heads, inferior officers, employees, agents, representatives, or contractors from all Released Claims. The Released Claims are all claims, demands, rights, liabilities and causes of action for declaratory or injunctive relief, known or unknown, arising from or related to the alleged separation of any *Ms. L.* Settlement Class member from his or her parent, Legal Guardian, or child, where such claims existed prior to the Effective Date of this Settlement Agreement and were or could have been alleged in the Action based on the same common nucleus of operative facts alleged by Plaintiffs in their pleadings and the arguments made in the Action. The Released Claims under this Settlement Agreement do not include claims for damages.

      B.  This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto other than those contained and memorialized in such documents.

      C.  Other than as set forth herein, this Settlement Agreement shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against *Ms. L.* Settlement Class members, consistent with the Constitution and laws of the United States, and applicable regulations.

      D.  This Settlement Agreement shall not be offered or received against the Defendants or the United States as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants or the United States of the truth of any fact alleged by the Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants or the United States or its employees, officers, or agents; or any admission by the Defendants or the United States or its employees, officers, or agents of any violations of, or failure to comply with, the Constitution, laws or regulations.

      E.  The Settlement Agreement shall not be offered or received against the Defendants or the United States as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against Defendants or the United States, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to enforce the provisions of this Settlement Agreement.

      F.  This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

G.  All deadlines in this Settlement Agreement will be calculated in accordance with the guidelines set forth in Federal Rule of Civil Procedure 6(a) unless otherwise provided in the Settlement Agreement.

H.  This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

I.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

J.  The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

K.  All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken under the Settlement Agreement to effectuate its terms.

L.  Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement Agreement.

DATED: October 13, 2023

Respectfully submitted,


BRIAN BOYNTON
Principal Deputy Assistant Attorney General

_____
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org

CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director


_____
SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
Sarah.B.Fabian@usdoj.gov

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
skang@aclu.org
samdur@aclu.org

*Attorneys for Plaintiffs*
*\*Admitted Pro Hac Vice*

*Attorneys for Defendants*