UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

```
 _____
                                    )
MS. L., ET AL.,                     )
                                    )   CASE NO. 18CV0428-DMS
           PETITIONERS-PLAINTIFFS,  )
                                    )
VS.                                 )
                                    )
                                    )
                                    )
                                    )
U.S. IMMIGRATION AND CUSTOMS        )   SAN DIEGO, CALIFORNIA
ENFORCEMENT ("ICE"), ET AL.,        )   FRIDAY DECEMBER 8, 2023
                                    )      1:00 P.M. CALENDAR
           RESPONDENTS-DEFENDANTS.  )
------------------------------------
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

REPORTED BY:                    LEE ANN PENCE,
                                OFFICIAL COURT REPORTER
                                UNITED STATES COURTHOUSE
                                333 WEST BROADWAY, ROOM 1393
                                SAN DIEGO, CALIFORNIA 92101

```
FOR PLAINTIFF:              LEE GELERNT, ESQ.
                            STEPHAN KANG, ESQ.
                            DANIEL GALINDO, ESQ.
                            DAVID MARSHAL, ESQ.
                            ACLU IMMIGRANT RIGHTS PROJECT
                            125 BROAD STREET 18TH FLOOR
                            NEW YORK, NEW YORK 10004

FOR DEFENDANT:              SARAH B. FABIAN, ESQ.
                            CHRISTOPHER TENORIO, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
                            OFFICE OF IMMIGRATION LITIGATION
                            P.O. BOX 868
                            BEN FRANKLIN STATION
                            WASHINGTON, DC 20044

 ALSO APPEARING:            STEVEN HERZOG, ESQ.
```

```
 1      SAN DIEGO, CALIFORNIA – FRIDAY, DECEMBER 8, 2023 – 1:00 P.M.
 2                               *  *  *
 3           THE COURT:  I HAVE APPEARANCES HERE TODAY FROM MR.
 4   LEE GELERNT, STEPHEN KANG, WILSON BARMEYER ON THE PHONE.
 5   STEVEN HERZOG.
 6           MR. HERZOG.
 7           MR. HERZOG:  YES.  GOOD AFTERNOON.
 8           THE COURT:  I DON'T BELIEVE WE HAVE MET IN PERSON.
 9           MR. HERZOG:  I HAVE BEEN HERE ONCE BEFORE.
10           THE COURT:  OH, ONCE BEFORE.
11           DAVID MARSHAL.  AARON DRENNING ON THE SPEAKER.
12           SARAH FABIAN, GOOD AFTERNOON.
13           CHRIS TENORIO.
14           WELCOME.  SO ALL OF YOUR APPEARANCES ARE NOTED.
15           MR. GELERNT:  I APOLOGIZE, YOUR HONOR.  MR. DANIEL
16   GALINDO IS ALSO HERE.
17           THE COURT:  THANK YOU.  WELCOME.
18           WE ARE STILL HAVING AN ECHO ON THIS END, SO MS.
19   DRENNING OR MR. BARMEYER, CAN YOU TURN OFF YOUR SPEAKER?  IF
20   YOU GO OFF SPEAKER PHONE WE WON'T HAVE AN ECHO.
21           I DON'T THINK THAT IS WORKING.  LET'S DO OUR BEST
22   HERE.
23           THE WAY WE HAD LEFT THIS LAST THERE WAS A STATUS
24   THAT THE COURT HAD REQUESTED.  WE MAY HAVE LOST SIGHT OF THAT
25   GIVEN ALL OF THE ACTIVITY.  WE HAD OUR LAST STATUS
```

```
 1  CONFERENCE --
 2          LET ME TRY AGAIN.
 3          MR. BARMEYER, CAN YOU HEAR ME?  MR. BARMEYER?  HOW
 4  ABOUT MS. DRENNING, CAN YOU HEAR ME?
 5          WE MIGHT HAVE TO CLOSE THE LINE.
 6          DO COUNSEL AGREE TO THAT?  I AM RELUCTANT TO DO
 7  THAT.  MR. BARMEYER IS WITH THE DORA GROUP.  AND MS. DRENNING
 8  IS WITH WHO?
 9          **MS. FABIAN:**  MMM, YOUR HONOR.
10          **THE COURT:**  SO I THINK THEY WOULD BE HERE MORE JUST
11  FOR LISTENING IN AND STATUS, GIVEN THE DIFFICULTY WE ARE
12  HAVING WITH THE LANDLINE.  I DON'T THINK THEY CAN HEAR ME.
13          ANY OBJECTION TO CLOSING THE LINE?
14          **MR. GELERNT:**  NO, YOUR HONOR.
15          **MS. FABIAN:**  NO, YOUR HONOR.
16          **THE COURT:**  OKAY.  IT WAS UNANIMOUS.  WE WILL DROP
17  THAT LINE AND PROCEED.
18          SO AT THE LAST STATUS CONFERENCE I HAD REQUESTED AN
19  UPDATE.  THE JOINT STATUS REPORT INDICATED THAT THERE WERE 72
20  CHILDREN YET TO BE FOUND AND REUNIFIED AND 297 U.S. CHILDREN.
21          SO PERHAPS I CAN START WITH YOU, MR. HERZOG.
22          **MR. HERZOG:**  YES.  WHAT I CAN TELL YOU IS I CAN
23  UPDATE YOU ON OUR PROGRESS SINCE THE LAST STATUS REPORT.
24          **THE COURT:**  YES.
25          **MR. HERZOG:**  AND THAT NUMBER IS NOW 68, THAT WE ARE
```

```
 1   SEARCHING FOR THE PARENTS OF 68 CHILDREN RATHER THAN 72.  SO
 2   FOUND FOUR OR RESOLVED FOUR CASES SINCE THEN.
 3            THE COURT:  YES.  AND THEN ANY UPDATE ON THE U.S.
 4   CHILDREN WHO WERE SEPARATED?
 5            MR. HERZOG:  THE U.S. NUMBERS, I MEAN, OF THAT 68 I
 6   CAN TELL YOU HOW MANY ARE IN THE U.S.  THERE ARE 25 PARENTS
 7   BELIEVED TO BE IN THE U.S.  THAT IS OUR BELIEF.
 8            BUT I THINK YOU ARE ASKING A DIFFERENT QUESTION.
 9            THE COURT:  YES.
10            MR. GELERNT:  YOUR HONOR, I THINK YOU ARE ASKING
11   ABOUT THE U.S. CITIZEN CHILDREN.
12            THE COURT:  YES.  EXACTLY.
13            MR. GELERNT:  I THINK WE ARE -- I DON'T KNOW THAT WE
14   HAVE AN UPDATE FOR YOU TODAY.  WE ARE STILL WORKING OUT THE
15   PROCESS FOR FINDING THOSE CHILDREN.  I DON'T BELIEVE THAT THE
16   STEERING COMMITTEE IS GOING TO TAKE THAT ON, WHICH IS
17   UNDERSTANDABLE GIVEN HOW MUCH WORK THE STEERING COMMITTEE HAS.
18   SO WE ARE IN THE PROCESS OF MAKING SURE THAT WE HAVE ENOUGH
19   PEOPLE LOOKING FOR THEM.
20            I DON'T KNOW IF THE GOVERNMENT WANTS TO GIVE ANY
21   UPDATE NOW.  I DON'T THINK SO, BUT MAYBE YOU DO.
22            MS. FABIAN:  I DON'T HAVE AN UPDATE ON NUMBERS, YOUR
23   HONOR.  I CAN SAY THAT THE TASK FORCE IS ACTIVELY WORKING ON
24   IT AND WILL BE WORKING WITH THE ACLU ON THAT, AS WELL.
25            THE COURT:  OKAY.
```

1  **MR. GELERNT:** WE ARE HAPPY TO CONTINUE GIVING YOU
2  UPDATES ON THAT AS OFTEN AS YOU WOULD LIKE, THE ACTUAL NUMBERS
3  AND HOW MANY WE HAVE FOUND AT THIS POINT.
4  **THE COURT:** ALL RIGHT.  THANK YOU.  I APPRECIATE
5  THAT.
6  LET'S ALSO PERFECT THE RECORD WITH RESPECT TO THE
7  AMENDMENT.
8  SO, MR. GELERNT AND MS. FABIAN CONTACTED THE COURT A
9  COUPLE WEEKS AGO TO REQUEST AN AMENDMENT TO THE SETTLEMENT
10 AGREEMENT.  I AGREED, GIVEN THE JOINT REQUEST AND IT IS A
11 BENEFIT TO THE CLASS MEMBERS.
12 AND, MR. GELERNT, DO YOU WANT TO SPEAK TO THAT?
13 THERE WAS A PUBLIC FILING SETTING OUT THE SCOPE OF THE
14 AMENDMENT.  THE SETTLEMENT AGREEMENT WAS AMENDED, AND IT HAS
15 ALL BEEN ON PUBLIC NOTICE FOR THE LAST COUPLE OF WEEKS.
16 **MR. GELERNT:** THAT'S CORRECT, YOUR HONOR.  THERE
17 WERE VERY SLIGHT CHANGES EXPANDING THE AMOUNT OF TIME THAT
18 CLASS MEMBERS WOULD HAVE TO SEEK ASYLUM, SO IT WAS FULLY
19 BENEFICIAL TO THE CLASS.
20 IT WAS A JOINT MOTION BY US.  WE HAVE POSTED THAT
21 REVISED AGREEMENT, AND WE ARE HAPPY, IF YOUR HONOR THINKS IT
22 IS NECESSARY, TO SEND OUT NOTICE AGAIN IF THE COURT APPROVES
23 THAT REVISED.  IT WAS FOR THE BENEFIT OF THE CLASS AND WAS
24 JOINT AND IT HAS BEEN POSTED.
25 **THE COURT:** ALL RIGHT.  SO IT IS MY VIEW IT HAS BEEN

```
 1   NOTICED, SUFFICIENT NOTICE.
 2             THERE ARE NO OBJECTIONS.  AM I CORRECT?
 3             MS. FABIAN:  THAT'S CORRECT, YOUR HONOR.
 4             THE COURT:  AND COUNSEL AGREE THAT ON THIS ISSUE FOR
 5   THE TWO-YEAR PERIOD FOR BRINGING ASYLUM CLAIMS, THE AMENDMENT,
 6   THAT THERE HAS BEEN SUFFICIENT NOTICE AND WE OUGHT TO, WITH
 7   ANY FINAL APPROVAL, INCLUDE THAT AS A TERM AND CONDITION OF
 8   THE FINAL SETTLEMENT AGREEMENT.
 9             DO YOU AGREE?
10             MR. TENORIO:  THE GOVERNMENT DOES, YES, YOUR HONOR.
11             THE COURT:  ALL RIGHT.
12             AND, TO BE CLEAR, THERE ARE NO OBJECTIONS AS OF THIS
13   TIME.  AM I CORRECT?
14             MR. GELERNT:  WE HAVE RECEIVED NO OBJECTIONS, YOUR
15   HONOR.
16             THE COURT:  THIS MATTER, OBVIOUSLY, HAS BEEN CALLED.
17   WE ARE IN A PUBLIC SETTING, AND THERE ARE NO OBJECTORS PRESENT
18   OR MAKING THEMSELVES KNOWN.
19             ON THE SETTLEMENT, THE FINAL SETTLEMENT AGREEMENT,
20   ANY COMMENTS FROM COUNSEL IN THAT REGARD?
21             MS. FABIAN:  YOUR HONOR, JUST ONE REQUEST.  IF YOUR
22   HONOR DOES INTEND TO APPROVE THE SETTLEMENT TODAY WE WOULD
23   ASK, IF ANY ORDER IS GOING TO ISSUE, THAT IT ISSUE NO EARLIER
24   THAN MONDAY, JUST TO ENSURE THAT POLICIES THAT NEED TO ISSUE
25   AND OTHER GOVERNMENT WHEELS THAT NEED TO BE SET INTO MOTION,
```

1  THAT THERE IS NO CONFUSION ON A LATE FRIDAY ISSUANCE.  SO IF
2  AN ORDER ISSUED ON MONDAY THAT WOULD JUST MAKE SURE THAT
3  EVERYTHING GOES AS SMOOTHLY AS POSSIBLE.
4       **THE COURT:**  AND YOU AGREE?
5       **MR. GELERNT:**  YOUR HONOR, I THINK THAT IS FINE WITH
6  US.  I THINK IF YOUR HONOR IS INTENDING TO APPROVE IT,
7  APPROVING IT TODAY WOULD BE FANTASTIC.  I THINK THE GOVERNMENT
8  HAS NO OBJECTION TO THAT, AS LONG THE ACTUAL ORDER MAKING THE
9  EFFECTIVE DATE TECHNICALLY MONDAY, THAT ORDER COMES OUT ON
10 MONDAY SO THE GOVERNMENT DOESN'T HAVE TO SCRAMBLE ON THAT OVER
11 THE WEEKEND.  THAT IS FINE WITH US.
12      BUT APPROVAL TODAY, IF THE COURT INTENDS TO APPROVE,
13 WOULD BE -- AN ORAL APPROVAL AT THIS POINT WOULD BE, I THINK,
14 BENEFICIAL FOR EVERYONE.
15      **THE COURT:**  ALL RIGHT.
16      ANYTHING ELSE?
17      **MR. HERZOG:**  NO, THAT'S ALL.  AND I AGREE WITH MR.
18 GELERNT'S STATEMENT.
19      **THE COURT:**  MR. GELERNT, ANY FINAL COMMENTS?
20      **MR. GELERNT:**  NO, YOUR HONOR.  WE JUST THANK THE
21 COURT FOR PUSHING US.  WE KNOW THAT THIS HAS BEEN A
22 COMPLICATED CASE WITH WORLDWIDE ATTENTION, AND TO KEEP US
23 FOCUSED AND PUSHING NOT ONLY ON THE BIG PICTURE BUT THE SMALL
24 DETAILS.
25      AS I SAID PUBLICLY, THIS IS THE WORST THING I HAVE

1  SEEN IN MY 30 YEARS DOING THIS WORK.  AND I HOPE THAT THE
2  HISTORY BOOKS ACCURATELY REFLECT JUST HOW BAD A PERIOD THIS
3  WAS, AND WE NEVER SEE IT AGAIN.  BUT, OF COURSE, THE
4  SETTLEMENT BARS THAT, AND WE WILL, OF COURSE, RETURN TO YOUR
5  HONOR IF IT HAPPENS.  BUT WE HOPE NEVER TO SEE IT AGAIN.
6            THANK YOU, YOUR HONOR.
7            **THE COURT**:  THANK YOU.
8            I DID READ AND I NOTE THAT THE ACLU HAD INDICATED
9  THAT THIS IS THE MOST SIGNIFICANT PROPOSED SETTLEMENT IN ITS
10 103-YEAR HISTORY.  IT IS A REMARKABLE CASE, AND IT DOES
11 REPRESENT, IN MY VIEW, ONE OF THE MOST SHAMEFUL CHAPTERS IN
12 THE HISTORY OF OUR COUNTRY, AND SO IT WAS A RIGHTEOUS
13 LITIGATION THAT WAS INSTIGATED BY THE ACLU.
14           AND, MR. GELERNT, YOU HAVE BEEN A CHAMPION ALL
15 ALONG.  I WANT TO THANK YOU, SPECIFICALLY, AND ALL OF YOUR
16 STAFF ATTORNEYS, IN YOUR PURSUIT OF THIS LITIGATION.  WHEN YOU
17 FIRST BROUGHT THE CASE THE ALLEGATIONS WERE SENSATIONAL, AND
18 IT WAS FAR FROM CLEAR TO ME THAT THIS COULD ACTUALLY BE
19 HAPPENING.  SO I READ THE COMPLAINT, AND I WAS VERY INTERESTED
20 TO LEARN THE FACTS.  AND SO YOU HAVE BEEN THE VERY BEST IN
21 REPRESENTING THIS CLASS.
22           AND, MS. FABIAN, I WANT TO THANK YOU, TOO.  YOU HAVE
23 HAD A VERY DIFFICULT POSITION TO REPRESENT.  YOU HAVE BEEN
24 JUST A CHAMPION AT LITIGATING AND DOING IT THE RIGHT WAY, ON
25 THE HIGH ROAD.  AND YOU HAVE BEEN NOTHING BUT ETHICAL, AND

1  EVERYTHING YOU SAID TO THE COURT I CREDITED 100 PERCENT.  AND
2  THEN WITH THE CHANGE IN THE ADMINISTRATION, OF COURSE, YOU HAD
3  DIFFERENT MARCHING ORDERS.  AND YOU HAVE BEEN THE PERFECT
4  ADVOCATE, WITH THE CHANGE OF ADMINISTRATION, TO LEAD THE
5  GOVERNMENT TO THIS JOINT AGREEMENT, THIS SETTLEMENT AGREEMENT,
6  WHICH HAS TAKEN TWO AND A HALF YEARS OR SO TO PUT TOGETHER.
7              I HAVE READ EVERY WORD OF THE SETTLEMENT AGREEMENT.
8  IT IS A REMARKABLE AGREEMENT, AND IT OBVIOUSLY REFLECTS JUST
9  HUNDREDS OF HOURS OF BACK AND FORTH AND DETAILED WORK.  AND
10 ADDRESSING EVERY PIECE OF THIS TRAGIC EPISODE IN OUR HISTORY,
11 AND ENSURING THAT IT DOESN'T HAPPEN AGAIN FOR A PERIOD OF
12 TIME, AND DOING WHAT THE GOVERNMENT CAN DO TO RECTIFY A WRONG.
13             SO IN LOOKING AT THE SETTLEMENT, IT DOES A NUMBER OF
14 JUST VERY IMPORTANT THINGS.  IT ADDRESSES THE WRONG, THE
15 FAMILY SEPARATION.  BARRING IT IN THE FUTURE FOR A PERIOD OF
16 TIME, UNLESS CERTAIN OBJECTIVE CRITERIA ARE MET RELATING TO
17 FITNESS AND DANGER.
18             IT ORDERS REUNIFICATION IN THE UNITED STATES OF
19 CLASS MEMBERS UNDER APPROPRIATE CIRCUMSTANCES.  PROVIDES FOR A
20 PERIOD OF TIME, PAROLE FOR EMPLOYMENT, ASSISTANCE IN HOUSING
21 AND BENEFITS, INCLUDING MEDICAL AND MENTAL HEALTH.  ALL VERY
22 IMPORTANT.
23             IT ACCOUNTS FOR THE TRAUMA AND UNJUSTNESS OF THE
24 UNLAWFUL SEPARATIONS AND THE EVALUATION OF ASYLUM CLAIMS TO
25 COME.  A VERY IMPORTANT COMPONENT.

1    IT PROVIDES PROCEDURES TO GOVERN SEPARATION AND
2 REUNIFICATION IN THE FUTURE, BASED ON OBJECTIVE FACTORS AND
3 CRITERIA.
4    IT MANDATES REPORTING SO THERE IS TRANSPARENCY,
5 WHICH, OF COURSE, IS CRITICAL TO A FULLY FUNCTIONING
6 DEMOCRACY.  IT REQUIRES THAT FUTURE SEPARATIONS BE DOCUMENTED,
7 HOW MANY AND WHY.  AND PROVIDES MECHANISMS FOR INDIVIDUALS WHO
8 ARE SEPARATED, AND COUNSEL AND OTHER ADVOCATES, TO HAVE THE
9 INFORMATION PROMPTLY AND TO TAKE ANY ACTION THAT THEY DEEM IS
10 APPROPRIATE UNDER THE CIRCUMSTANCES.
11    AND, LASTLY, AND VERY IMPORTANTLY, IT PROVIDES AND
12 MANDATES THAT THESE AGENCIES -- CBP, ICE, ORR, DOJ, THROUGH
13 THE MARSHALS, EVERYONE -- COMMUNICATE SO THAT THEY ARE NO
14 LONGER SILOED.  THAT THEY HAVE REAL TIME CAPABILITY IN KEEPING
15 TRACK OF PARENTS AND CHILDREN.
16    SO IT ADDRESSES EVERY ASPECT OF THE CASE, AND THE
17 SERIES OF EVENTS THAT WERE SET IN MOTION IN JULY OF 2017, OR
18 PERHAPS A LITTLE EARLIER.
19    IT HAS BEEN A REMARKABLE PIECE OF LITIGATION.  IT
20 STARTED, THE FOCUS, OF COURSE, WAS ON THE CHILDREN WHO WERE IN
21 ORR CUSTODY.  AND THEN IT EXPANDED TO INCLUDE A PERIOD OF TIME
22 THAT PREDATED WHAT WAS KNOWN TO PLAINTIFFS' COUNSEL, GOING
23 BACK TO MCALLEN, TEXAS IN JULY OR SO OF 2017, AND ENLARGING
24 THE CLASS BY 1,000 OR MORE PARENTS AND CHILDREN.  AND THEN
25 THERE HAS BEEN A THIRD PHASE NOW WITH THE DISCOVERY OF U.S.

```
 1   CITIZEN CHILDREN WHO HAVE BEEN SEPARATED.
 2             SO IT IS A COURSE OF CONDUCT SET IN PLACE BY THE
 3   EXECUTIVE BRANCH THAT HAS EXPANDED, AND AT EVERY EXPANSION IT
 4   HAS BEEN WORSE THAN WHAT WAS INITIALLY THOUGHT.  BUT, AT THE
 5   END OF THE DAY, TODAY, IT IS THROUGH THIS WONDERFUL ADVOCACY
 6   AND COOPERATION OF THE GOVERNMENT THROUGH THE RECENT
 7   ADMINISTRATION, THE FAMILY REUNIFICATION TASK FORCE AND ITS
 8   GOALS, EVERYTHING HAS COME TO THE LIGHT OF DAY.
 9             I AM CONFIDENT THAT WE HAVE DISCOVERED WHEN THE
10   PRACTICE BEGAN AND ARE CAPTURING, TO THE BEST EXTENT POSSIBLE,
11   ALL OF THOSE WHO WERE HARMED BY THE POLICY, AND PROVIDING THEM
12   AN OPPORTUNITY TO BE PART OF THE CLASS AND TO SEEK THESE
13   IMPORTANT REMEDIES AND PROVISIONS.
14             THERE WILL, AT THE END OF THE DAY -- AND THIS HAS
15   ALWAYS BEEN MY GREATEST FEAR AND CONCERN -- THERE IS GOING TO
16   BE A NUMBER OF CHILDREN WHO ARE NOT FOUND.  THAT NUMBER NOW
17   APPEARS TO BE 68.  THERE MIGHT BE MORE WHEN WE LOOK AT THE 297
18   OR SO U.S. CITIZEN CHILDREN WHO HAVE BEEN SEPARATED, THAT 68
19   MAY GROW.
20             WE HAVE SAID IT MANY TIMES, EVERYONE HAS RECOGNIZED
21   IT, BUT EVERY CHILD WHO IS NOT FOUND IS PERMANENTLY ORPHANED.
22   SO THAT'S THE REALITY OF THIS CASE.  AND THROUGH THE CONTINUED
23   EFFORTS OF THE TASK FORCE AND OTHERS WHO ARE WORKING SO
24   EARNESTLY ALONG WITH THE GOVERNMENT TO SEARCH FOR AND FIND
25   THESE CHILDREN AND THEIR PARENTS AND THEN REUNIFY THEM, THAT,
```

1  OF COURSE, IS A CONTINUING GOAL AND IT IS THE RESPONSIBILITY
2  OF THE PARTIES.  AND THIS SETTLEMENT DOES EVERYTHING IT CAN TO
3  KEEP THAT FOCUS AND THAT EFFORT.  AND IT SHOULDN'T STOP UNTIL
4  EVERY CHILD IS FOUND.
5            IN LOOKING BACK AT THE CASE, THE SETTLEMENT
6  ADDRESSES THESE THINGS.  AND IT IS IMPORTANT TO STATE WHERE WE
7  WERE IN JUNE OF 2018 WHEN THE COURT ISSUED A NUMBER OF ORDERS,
8  PRINCIPALLY TWO:  AN ORDER DENYING A MOTION TO DISMISS AND A
9  PRELIMINARY INJUNCTION.
10           AT THAT POINT THE ALLEGATIONS WERE THAT THE
11 GOVERNMENT WERE SEPARATING FAMILIES, INCLUDING HUNDREDS OF
12 SMALL AND TENDER AGE CHILDREN, INFANTS, WITHOUT ANY FINDING
13 THAT THE PARENT WAS UNFIT OR DANGEROUS.
14           AND LATER THERE WAS A FINDING THAT THIS WAS A
15 POLICY, AT BOTTOM, TO DETER IMMIGRATION.  TO DETER MIGRATION
16 FROM FAMILIES FROM GUATEMALA, HONDURAS, AND EL SALVADOR,
17 PRINCIPALLY.  AND IT WAS THE COURT'S FINDING THAT THAT
18 PRACTICE WAS UNCONSTITUTIONAL.  IT WAS VIOLATIVE OF FIFTH
19 AMENDMENT DUE PROCESS RIGHTS.
20           AND I WENT BACK, AND I WANTED TO TAKE A LOOK AT THE
21 MOTION TO DISMISS AND THE ORDER DENYING IT, WHICH WAS ISSUED
22 ON JUNE 6TH, 2018, TWO WEEKS BEFORE THE EXECUTIVE ORDER.  AND
23 IN IT THE COURT STATED THESE THINGS, WHICH ARE NO LONGER IN
24 DISPUTE.
25           "THESE ALLEGATIONS SUFFICIENTLY DESCRIBE GOVERNMENT

1  CONDUCT THAT ARBITRARILY TEARS AT THE SACRED BOND BETWEEN
2  PARENT AND CHILD, AND IS EMBLEMATIC OF THE EXERCISE OF POWER
3  WITHOUT ANY REASONABLE JUSTIFICATION IN THE SERVICE OF AN
4  OTHERWISE LEGITIMATE GOVERNMENTAL OBJECTIVE.  SUCH CONDUCT, IF
5  TRUE, AS IT IS ASSUMED TO BE ON THE PRESENT MOTION, IS BRUTAL,
6  OFFENSIVE, AND FAILS TO COMPORT WITH TRADITIONAL NOTIONS OF
7  FAIR PLAY AND DECENCY.  AT A MINIMUM, THE FACTS ALLEGED ARE
8  SUFFICIENT TO SHOW THE GOVERNMENT CONDUCT AT ISSUE "SHOCKS THE
9  CONSCIENCE" AND VIOLATES PLAINTIFFS' CONSTITUTIONAL RIGHT TO
10 FAMILY INTEGRITY.  ACCORDINGLY, DEFENDANTS' MOTION TO DISMISS
11 PLAINTIFFS' DUE PROCESS CLAIM IS DENIED."
12          THAT OCCURRED TWO WEEKS BEFORE THE EXECUTIVE ORDER
13 WAS ISSUED.  THAT EXECUTIVE ORDER, THE COURT FOUND, HAD
14 QUALIFYING LANGUAGE IN IT THAT DIDN'T ADEQUATELY ADDRESS
15 FAMILY SEPARATION GOING FORWARD.  IT, OF COURSE, COULD BE
16 REVOKED.  AND IT DIDN'T ADDRESS REUNIFICATION AT ALL.
17          AND SO, SIX DAYS LATER, THE COURT ISSUED A
18 PRELIMINARY INJUNCTION WHICH SQUARELY ADDRESSED FAMILY
19 SEPARATION AS A CONCEPT, AS A POLICY, AS AN IMMIGRATION
20 PRACTICE, AND WHETHER OR NOT IT WAS CONSTITUTIONAL.  AND
21 WHETHER OR NOT THE FAILURE OF THE GOVERNMENT TO HAVE ANY PLANS
22 TO REUNIFY THESE CHILDREN AND FAMILY PASSED CONSTITUTIONAL
23 MUSTER, AND IT CLEARLY DID NOT.
24          AND SO A SECOND ASPECT OF THE WRONGDOING RELATES, OF
25 COURSE, NOT ONLY TO THE SEPARATION OF FAMILIES WITHOUT

1  OBJECTIVE FINDINGS OF A LACK OF FITNESS OR DANGER, BUT THAT
2  THERE WAS NO PLAN TO REUNIFY THEM.  AND, IN FACT, THERE WAS A
3  CONCERTED EFFORT TO REMOVE PARENTS FROM THE COUNTRY, AND THEY
4  DID, SEVERAL HUNDRED OF THEM, WITHOUT THEIR CHILDREN.  WITHOUT
5  THE PARENTS KNOWING WHERE THEIR CHILDREN WERE, WITHOUT THE
6  OPPORTUNITY OF CHILDREN TO CONTACT THEIR PARENTS.
7           AS I WENT THROUGH THE JOINT STATUS REPORT,
8  APPROXIMATELY 20 PERCENT OF THE PARENTS WERE REMOVED FROM
9  COUNTRY WITHOUT KNOWING WHERE THEIR CHILDREN WERE.  IT IS
10 SIMPLY CRUEL.
11          THERE WERE 870 PARENTS THAT WERE IDENTIFIED IN THE
12 JOINT STATUS REPORTS REMOVED FROM THE COUNTRY WITHOUT THEIR
13 CHILDREN.  THEN OF COURSE -- AND OF COURSE ONE OF THE FINDINGS
14 WAS THAT THIS PRACTICE OF SEPARATING FAMILIES WITHOUT HAVING
15 ANY PLAN, THE WHEREWITHAL TO KNOW WHERE THE PARENT AND THE
16 CHILD WERE SO THAT THEY COULD COMMUNICATE.  AND WHEN THE
17 PARENT HAD SERVED HIS OR HER TIME IN IMMIGRATION PROCEEDINGS
18 OR CRIMINAL PROCEEDINGS, ONCE RELEASED, HAD A RIGHT TO BE
19 REUNIFIED.  THERE WERE NO PLANS TO DO THAT, TO REUNIFY THEM.
20          AND, HERE AGAIN, THE PLAN APPEARS TO BE TO SEPARATE,
21 WITHOUT OBJECTIVE CRITERIA, AND THEN TO REMOVE PARENTS WITHOUT
22 THEIR CHILDREN BACK TO CENTRAL AMERICA.
23          AND SO THIS, TOO, WAS ADDRESSED BY WAY OF AN
24 INJUNCTION ON AUGUST 16, 2018 THROUGH THE PLAINTIFFS' GOOD
25 WORK.  THAT, TOO, WAS A SENSATIONAL ALLEGATION.  I REMEMBER

1   THE HEARING CLEARLY.  IT WAS HARD TO BELIEVE THAT THAT WAS
2   ACTUALLY HAPPENING, BUT IT WAS.  AND IT WAS ADDRESSED.  AND
3   NOW, THROUGH THIS CHANGE IN ADMINISTRATION, THE FAMILY
4   REUNIFICATION TASK FORCE, ALL OF THESE ISSUES ARE BEING
5   SQUARELY ADDRESSED.
6           IT IS UNFORTUNATE, BUT WE CAN ONLY BRING A CERTAIN
7   AMOUNT OF JUSTICE TO ALL OF THIS.  AND WE ARE GETTING CLOSE.
8   IF WE CAN FIND EVERY CHILD AND PROVIDE THAT REUNIFICATION WITH
9   THEIR PARENT, WE HAVE ACCOMPLISHED A GREAT DEAL.  BUT, OF
10  COURSE, THAT DOESN'T ADDRESS THE UNDERLYING TRAUMA AND THE
11  WRONG AND THE YEARS THAT HAVE GONE BY.  WE HAVE DISCUSSED
12  CASES WHERE FAMILIES HAVE BEEN SEPARATED, AND FOUR OR FIVE
13  YEARS LATER THEY ARE BEING REUNIFIED.  AND WHAT DOES THAT LOOK
14  LIKE?
15          AND THE PARENTS AND CHILDREN, THE CHILD DOESN'T KNOW
16  THEIR PARENT.  THE CHILD HAS OFTEN GROWN COMFORTABLE WITH AN
17  ADOPTED FAMILY OR A SPONSOR, AND THEN THE PARENT WANTS THEIR
18  CHILD BACK.  IT IS A REALLY DIFFICULT CIRCUMSTANCE.  AND, OF
19  COURSE, IT IS ALL CAUSED BY A PRACTICE THAT WAS
20  UNCONSTITUTIONAL.
21          BUT THIS SETTLEMENT AGREEMENT COMES, I AM CONVINCED,
22  THE CLOSEST THAT WE CAN POSSIBLY DO UNDER THE CIRCUMSTANCES TO
23  RESTORE JUSTICE.
24          AND SO I WANT TO COMPLIMENT ALL OF THE PARTIES.
25          AND I WANT TO THANK MR. HERZOG AND YOUR FIRM, PAUL

```
 1  WEISS.  YOU HAVE SPENT THOUSANDS OF HOURS WORKING ON THIS, PRO
 2  BONO.  SO GREAT CREDIT TO YOU.
 3          THE NGO'S:  JUSTICE IN MOTION; KIDS IN NEED OF
 4  DEFENSE, KIND; WOMEN'S REFUGEE COMMISSION.  OF COURSE, FINDING
 5  THESE PARENTS WOULD NOT BE POSSIBLE WITHOUT BOOTS ON THE
 6  GROUND AND THEIR EFFORTS.
 7          AND IT WAS VERY ENCOURAGING WHEN THE FAMILY
 8  REUNIFICATION TASK FORCE WAS PUT TOGETHER.  AND I HAVE NOT HAD
 9  A CASE WHERE BOTH PARTIES ALL OF A SUDDEN ALIGNED AND WERE
10  ROWING THE BOAT IN THE SAME DIRECTION.  SO IT WAS AN UNUSUAL
11  COURSE OF LITIGATION, THE LAST TWO AND A HALF YEARS OR SO.
12  BUT IT HAS BEEN WONDERFUL AND IT HAS BEEN PRODUCTIVE, AND
13  ULTIMATE JUSTICE, AS FAR AS WE CAN RENDER IT, HAS BEEN SERVED.
14          SO I DO FIND, UNDER 23(E)(2) AND THE PROVISIONS OF
15  RULE 23, THAT THIS IS FAIR, REASONABLE, AND ADEQUATE.  AND I
16  APPROVE THE FINAL SETTLEMENT, AND WILL SIGN THE JUDGMENT.
17          I APPROVE IT ON THE RECORD HERE TODAY.  I WILL SIGN
18  THE JUDGMENT AND HAVE IT DATED AND FILED MONDAY, SO THAT THERE
19  IS AN ORDERLY PROCESS FOR THE GOVERNMENT TO FOLLOW ON MONDAY
20  RATHER THAN SCRAMBLING OVER THE WEEKEND.
21          THOSE ARE ALL OF THE COMMENTS I HAVE.
22          I WILL MISS YOU, MR. GELERNT, MS. FABIAN, AND ALL OF
23  YOU.  BUT IT HAS BEEN A HISTORIC PIECE OF LITIGATION, THE BEST
24  ADVOCACY.  REALLY, IN PARTICULAR, ENJOYED WORKING WITH COUNSEL
25  AND GLAD THAT YOU ARE HERE IN PERSON.
```

```
 1              WITH THAT, ANY FINAL COMMENTS FOR THE RECORD BEFORE
 2   WE -- ONCE I SIGN, IT IS A FINAL JUDGMENT, WE ARE ALL DONE.
 3              I DO HOPE, AS A MATTER OF COURTESY -- I WON'T HAVE
 4   ANY JURISDICTION EXCEPT TO ENFORCE THE SETTLEMENT AGREEMENT,
 5   BUT IF YOU WOULD BE SO KIND, FROM TIME TO TIME, MAYBE EVERY
 6   QUARTER OR SO, LET US KNOW WHAT THE CURRENT STATUS IS IN
 7   LOCATING THESE PARENTS AND CHILDREN.
 8              **MR. GELERNT:**  ABSOLUTELY, YOUR HONOR.  AND THANK YOU
 9   VERY MUCH.
10              **THE COURT:**  THANK YOU.
11              **MS. FABIAN:**  AND THANK YOU VERY MUCH, YOUR HONOR.
12              AND I JUST -- I DON'T WANT TO CHANGE THE TOPIC BUT I
13   JUST WANTED TO HIGHLIGHT THAT WE ALSO FILED A FEW JOINT ORDERS
14   -- OR JOINT MOTIONS.  AND IF THOSE ORDERS, IF THOSE COULD BE
15   ISSUED CONCURRENTLY THOSE WILL HELP US IMPLEMENT THE
16   SETTLEMENT.
17              **THE COURT:**  YES.  THANK YOU FOR MENTIONING THAT.  I
18   AM GOING TO SIGN THEM TODAY.
19              **MS. FABIAN:**  THAT WOULD BE GREAT.  THANK YOU, YOUR
20   HONOR.
21              **THE COURT:**  THANK YOU.
22              **MR. GELERNT:**  THANK YOU, YOUR HONOR.
23                              *   *   *
24
25
```

```
 1          I CERTIFY THAT THE FOREGOING IS A CORRECT
            TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
 2          IN THE ABOVE-ENTITLED MATTER.

 3          S/LEEANN PENCE                         12/8/2023
            LEEANN PENCE, OFFICIAL COURT REPORTER    DATE
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```