Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al.,<br><br>  *Petitioners-Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br><br>  *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: April 23, 2025<br><br>**MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING PROVISION OF LEGAL SERVICES** |

# MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING PROVISION OF LEGAL SERVICES

Plaintiffs respectfully move the Court to enforce the Settlement Agreement in light of Defendants' recent actions with regard to legal services. Specifically, on Friday, April 11, Defendants abruptly notified the Acacia Center for Justice ("Acacia"), the main contractor that oversees the legal services Program that assists Class Members in their immigration cases, that Defendants do not intend to renew the legal services contract. Defendants did not provide class counsel with notification of the contract nonrenewal decision; and Defendants have not explained the reasons for the nonrenewal. Defendants have stated that they intend to continue to provide the legal services required by the Settlement, but have not provided any details as to how services will be provided, the scope or adequacy of such services, or how services may be practically transitioned without delays.

The current legal services contract is set to expire on April 30, 2025, in one week. Expedited relief is necessary because the abrupt and unexplained end of the current services will leave Class Members without the services that they greatly need to exercise their legal rights and relief options under the settlement.

Defendants state in regard to this motion:

"Defendants' position is that based on the limited information class counsel have provided, the government cannot agree not to oppose a motion to enforce. Class counsel's general citation to a 2.5-page portion of the Settlement, for the first time, on the morning of filing, without any more specific information, does not provide sufficient time to meet and confer in good faith as required by Section VII.C of the Settlement."[1]

---

[1] As provided below at pp. 5-6, Plaintiffs contacted Defendants on April 15, after hearing of the termination of the current Acacia contract, and Defendants clearly understood that Plaintiffs were referring to a breach of the settlement provisions regarding the provision of legal services at that time under Section IV.B of the Settlement.

# ARGUMENT

## I. The Settlement Agreement's Legal Services Provisions.

The Settlement Agreement provides that Defendants "will provide legal access and orientation . . . to specifically focus on *Ms. L.* Settlement Class members." *See* Dkt. 721-1 ("Amended Settlement") at 10, Sec. IV.B.2.c. The Settlement refers to this legal access program as "the Program."

The Settlement provides that the Program must "provide assistance . . . short of full representation, including" legal advice, counseling, and consultation concerning immigration relief; assistance with preparing applications for relief, and Friend of the Court services (where allowed by the immigration court). *See* Amended Settlement, Sec. IV.B.2.c.i.a. The Settlement also requires the Program to provide "new resources and orientation presentations" to help Class Members navigate the immigration court and relief application processes. *Id.*, Sec. IV.B.2.c.i.c. The Settlement also requires the Program to facilitate pro bono representation for Class Members to leverage outside resources to serve Class Members and their families. *See id.*, Sec. IV.B.2.c.ii.

Critically, Defendants further agreed to "ensure that the Program is adequately resourced and funded to provide services for all unrepresented *Ms. L.* Settlement Class members, with the ability to increase funding to meet projected needs as determined by Defendants, taking into account information about needs provided by Plaintiffs." *See id.*, Sec. IV.B.2.c.i.(d).

The legal services Program is of critical importance to the Class. Because of the complexities of the immigration system, Class Members require substantial counseling to understand their relief options, as well as the potential immigration pathways available to them under the Settlement Agreement's parole and asylum-related provisions. *See* Hartman Decl. ¶¶ 4-10; Chadwick Decl. ¶¶ 5-9. Pro se individuals are ill-equipped to navigate this system on their own. *See, e.g.*, *Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 922 (9th Cir. 2015) (describing immigration law as

"an area of law that ranks just behind the federal tax code in complexity").

In addition, separated families often face unique challenges. For example, as the Court knows, parents were often jammed through the asylum system while suffering the immediate trauma of their separation, frequently resulting in removal proceedings where they lacked a fair chance to present their asylum claims. Children, for their part, were often put into removal proceedings separate from their parents, who were critical witnesses or sources of factual information that support their asylum claims. Although the Settlement Agreement's asylum-related provisions were intended, in part, to remedy the effects of the separation on the family's immigration proceedings, pro se Class Members still face significant difficulties traversing the procedural and substantive steps required to avail themselves of those procedures.

The parties agreed to Settlement terms concerning the legal services Program in light of this ongoing concern. To effectuate their obligations under these Settlement provisions, Defendants entered into a contract with the Acacia Center for Justice ("Acacia") in April 2024 to provide a broad spectrum of services to *Ms. L.* Settlement class members and their families. The initial contract was for a one-year renewable term. Van Hofwegen Decl., Exhibit A. Under this main contract, Acacia subcontracted with nine different regional immigration legal services providers and one national pro bono provider throughout the country. Van Hofwegen Decl. ¶ 6.

Under these contracts, legal services providers have been working diligently to identify Class Members, conduct intakes and assessments of their legal needs and relief options, and provide legal services and pro bono placements for separated families. Although Acacia's contract precludes it from providing public information concerning the number of individuals it has served so far, 2 of the providers estimate that they have together served over 200 individuals in the year or so that the Program has been in operation. Alcaide Decl. ¶¶ 3-5; Farb Decl. ¶ 2. The Program's legal services providers are already overstrained, given the numerous Class Members who

are currently unrepresented in their immigration or removal cases. Alcaide Decl. ¶6; Farb Decl. ¶ 4; Hartman Decl. ¶¶ 4-10; Chadwick Decl. ¶ 10. Towards the end of 2024 and early 2025, the Program's providers had to stop accepting new cases to ensure that they could provide adequate services to their existing clients. Alcaide Decl. ¶ 6; Farb Decl. ¶ 4; Chadwick Decl. ¶ 10; Hartman Decl. ¶ 11(a).

Termination, even for a short period of time, of legal services, would be a clear breach of the terms of the Settlement Agreement, as would any decrease in the level of services. The Agreement requires Defendants to "ensure that the Program is adequately resourced and funded to provide services for all unrepresented Ms. L. Settlement Class members[.]" Amended Settlement Agreement, Sec. IV.B.2.c.i.(d). Indeed, the Settlement Agreement specifically contemplates that Defendants may need to "*increase* funding to meet projected needs," which Defendants should do to meet the current gap in legal services. *Id.*

Plaintiffs' concern about the government actions, and lack of explanation, come on the heels of increased cuts to immigration legal services. In the last few weeks, Defendants have taken aggressive action to terminate or non-renew a variety of legal services programs that work with noncitizens in the immigration system, including two programs that provide legal representation to unaccompanied children and the Immigration Court Help Desk. *See, e.g.*, *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-CV-02847-AMO, 2025 WL 973318, at *1 (N.D. Cal. Apr. 1, 2025) (granting TRO to block "termination of funding for counsel representing unaccompanied children in immigration proceedings"), *appeal filed* Apr. 11, 2025; Memorandum in Support of Plaintiffs' Renewed Motion for TRO, *Amica Center for Immigrant Rights, et al., v. U.S. Dep't of Justice*, 25-cv-00298-RDM (D.D.C. Apr. 14, 2025), Dkt. 53-1 (addressing termination of multiple legal services programs, including Immigration Court Help Desk).

Although Plaintiffs are not seeking relief concerning those other programs via

this Motion, Plaintiffs note that the termination of these programs may have significant effects on *Ms. L.* Class Members. Chadwick Decl. ¶¶ 12-13; Hartman Decl. ¶¶ 1, 11(b), 12. As the Court knows, Defendants generally designated children as "unaccompanied" after forcibly separating them, and therefore providers working with unaccompanied children took on many Class Members' immigration cases. In addition, the Settlement contemplates that some of the services the *Ms. L.* Program provides build on existing Immigration Court Help Desk systems. *See* Amended Settlement, Sec. IV.B.2.c.i.(a)-(b). If Defendants succeed in terminating these other legal services programs, even more *Ms. L.* Class Member families will be without legal assistance.

## II. Expedited Relief Is Necessary to Prevent Irreparable Harm to the Class.

In the spring of 2025, Acacia Center for Justice was awaiting confirmation from Defendants that they would exercise their option to renew the contract, as expected. However, on Friday, April 11, 2025, Acacia Center for Justice received a notification that the government did not intend to renew the contract. Van Hofwegen Decl., Exhibit B. The contract will end on April 30, 2025.

Legal services providers have already relied on the expected continuation of the Program, developing waitlists to triage limited resources, and assuring class members legal services would be available upon renewal. Farb Decl. ¶ 4; Alcaide Decl. ¶ 6. Acacia has already had to inform their legal services subcontractors about the non-renewal. And although the contract will not expire until the end of the month, Defendants' actions are already having the effect of disrupting legal services, and creating fear from those waiting for help that none will come in time, or will cause beneficiaries to miss deadlines. Alcaide Decl. ¶ 10. Absent the contract, the legal services subcontractors have no choice but to stop services altogether.

Defendants' plan as to how to replace the legal services (as well as the

adequacy of such a plan) has not been communicated. On April 15, Plaintiffs contacted Defendants' counsel about the termination of the Acacia contract, specifically stating that termination of legal services would violate provisions of the Agreement guaranteeing such services. On April 18, Counsel for Defendants stated they were "looking into" it and "expected to get back … soon." On April 21, Defendants stated that:

> "The Ms. L. Settlement Agreement does not require EOIR to contract with any particular organization. EOIR informs us that, regardless of what happens to the Acacia contract, EOIR will provide the services it is required to provide, pursuant to the Settlement Agreement.
>
> EOIR further informs us that it has no intention of ending, and does not plan for a lapse in, services required under the settlement. EOIR respectfully disagrees with ACLU's understanding that "lapse in the contract" constitutes a breach of the settlement."

On April 22, Plaintiffs communicated that, absent details about how legal services would be implemented, they would need to move the Court. Defendants subsequently stated, without further detail, that:

> "At the termination of the Acacia contract, EOIR intends to facilitate a legal access and orientation program which implements the provision of all EOIR-required services set forth in the Settlement Agreement."

Plaintiffs reiterated that they needed to know details, including when the services will start, what services will be provided, what "facilitate" means, and how Defendants will avoid delay in providing services after having cancelled the contract with notice or explanation, and that without sufficient clarity, they would need to alert the court at 9 AM PST today. Defendants communicated that it was not clear that there was any breach or noncompliance with the Agreement, and provided their position on Plaintiffs' intention to file the instant motion as set forth above.

As of the filing of this motion, Defendants have not provided any further information in response to Plaintiffs' queries as to the plan for services.

The Settlement Agreement's Dispute-Resolution process requires the parties to

initially meet and confer to resolve disputes, with the party responding to allegations of a breach of settlement with thirty days.  Settlement at Sec. VII.C.  The timeline, however, has prevented Plaintiffs from following this process.  Defendants' nonrenewal of the legal services contract occurred on April 11th, less than 30 days before the provided services would end.  To date, Plaintiffs have still not been informed as to how services will be provided in the absence of the contract.  Class members have relied on the legal services structure to access basic rights under the settlement and, in the absence, diminishment, or any delay in continuation of services, will face harm.

## CONCLUSION

For these reasons, the Court should grant this Motion.

DATED: April 23, 2025                   Respectfully submitted,


/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104

T:  (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Ms. L Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt