Lee Gelernt*
Dan Galindo (SBN 292854)
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94111
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*

*\*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L. et al., <br><br> *Petitioners-Plaintiffs*, <br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"); et al, <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: April 23, 2025 <br><br> **DECLARATION OF KAYLEEN HARTMAN** <br><br> Class Action |

I, Kayleen Hartman, pursuant to 28 U.S.C. § 1746, declare as follows:

**Background**

1. Kids in Need of Defense (KIND) was founded in 2008 to protect children's rights and well-being when they migrate alone in search of safety. KIND has pursued this overarching goal through legal services, social services, advocacy, international programs to address the root causes of child migration, and direct response to the family separation crisis. In the United States, KIND provides immigration legal services to unaccompanied and separated children in part through its staff attorneys, and in part by placing children's cases with pro bono attorneys for full representation, under KIND's mentorship. Recent federal funding cuts have resulted in terminating many of these services and closing many clients' cases. For example, KIND's Family Unity Team, which had comprised seven attorneys and three paralegals, expects to lay off nearly all staff by May 23, 2025.

2. As the Managing Director, Family Unity, for KIND, I have helped oversee our work with *Ms. L.* class member families since 2020. KIND's work with separated families began in 2018. Over the last nearly eight years, KIND has provided hundreds of class members with direct legal representation and other assistance, including legal consultations, full representation in immigration proceedings, and the operation of a government-funded Help Desk to support the Family Reunification Task Force's effort to reunify families. KIND has also played a key role on the Steering Committee in this case and has assisted in the effort to locate deported parents.

3. Before joining KIND in 2020, I ran the Removal Defense Project at Loyola Immigrant Justice Clinic and Loyola Law School, served as pro bono coordinator for the Children's Representation Project at Immigrant Defenders Law

Center, and was a staff attorney at Ayuda, an immigrant rights organization in Washington D.C.  I hold a J.D. from Georgetown University Law Center with a Certificate in Refugee and Humanitarian Emergencies.

### The Importance of the Legal Services Provisions of the Settlement

4.     The legal services promised through the Settlement in this case are the gateway to all the forms of legal relief the Settlement makes available to class members.  Without legal assistance, class members cannot follow the complex pathways to relief made available to them, and a centerpiece of the Settlement is hollowed out.

5.     For example, under the Settlement, the hundreds of class members who are in removal proceedings must have those proceedings dismissed before they can take advantage of a key benefit under the Settlement – to apply for asylum with the Asylum Office of United States Citizenship and Immigration Services (USCIS) before a specially trained cadre of asylum officers.  Even the initial step of asking the Immigration Court to terminate proceedings is complex, however.  Class members must ask lawyers at the Department of Homeland Security (DHS) to join them in motions to terminate their proceedings.  Class members with removal orders must first seek DHS's agreement to reopen proceedings to rescind these orders before filing a motion to terminate proceedings.  The process for reaching out to DHS has changed since the Settlement was signed and is now done exclusively by email.  Many if not most of our class member clients do not use email and do not read and write in English, making even these first steps all but impossible for them to accomplish without legal assistance.

6.     In fact, general legal assistance is not even adequate to the task.  My team of specialized family separation lawyers at KIND, who have both mentored

pro bono cases and directly represented scores of formerly separated children, understand the pathways to relief under the Settlement. Other lawyers do not. What class members need are lawyers who are trained in and familiar with the Settlement, and its frequently changing procedural processes.

7. The case of one of my clients illustrates the problem. I represented a girl I will call "Maya" who was seven years old at the time of her forcible separation from her father, who was deported. Maya, an indigenous language speaker, was placed with distant family members and shuffled from one household to another. Both families neglected her. The families did not share Maya's mail with her, and she could not have read it if they did. Consequently, Maya had no idea that she had been required to appear in Immigration Court almost immediately after her release from government custody. I learned this fact only by using an online EOIR system to access information about the status of her case. Maya's failure to appear led to an *in absentia* removal order. I took the necessary steps to reach out to DHS (in English, via email) to join a motion to rescind that order and to terminate proceedings. The lawyers at DHS initially agreed, then declined, and then consented to join, which appeared to be the result of shifting departmental priorities and dynamics. There is simply no way that Maya, now still only fourteen years old, could have accomplished these steps without help from a lawyer who understands the workings of the Settlement. And these are only the preliminary steps in the process. After securing DHS's agreement to join the motions, we had to prepare and file the motions with the Immigration Court. These steps are typical of the procedures a class member must clear before they can even file an application for asylum and prepare for their interview.

8. The complexity of these cases generally requires continuous access to legal service providers who are trained in this area of law. If funded appropriately, the Acacia-subcontracted legal service providers could provide that access. Like KIND and other legal service providers assisting *Ms. L.* class members, the Acacia-subcontracted legal service providers prioritize their legal work as they move through cases: on referral from KIND and many others, they helped class members apply for and receive humanitarian parole or parole renewals. Parole is necessary to enable class members to apply for and obtain authorization to work lawfully in the United States. Without the ability to work lawfully, class members cannot adequately support themselves and their families. Moreover, parole is a prerequisite to the immigration relief the Settlement offers: without it, class members generally cannot have their removal proceedings terminated so as to become qualified to apply for asylum before the USCIS Asylum Office through the Settlement. The subcontractors also assisted class members in applying for employment authorization, seeking rescission of removal orders, and moving to terminate proceedings. Those class members who received help with these preliminary steps are poised to apply for asylum through the process outlined in the Settlement, but to my knowledge few, if any, of them have had the legal assistance necessary to do so.

9. Even among class members who have been able to apply for asylum, the need for legal assistance is unlikely to resolve in the short-term future. Our team at KIND has been carefully monitoring the availability of expedited review at the Asylum Office, which the Settlement requires the government to consider granting. Expedited review would allow more clients to reach a final determination in their cases more quickly. Unfortunately, however, expedited review has been granted only in very limited circumstances, meaning the vast majority of these cases will

join the backlog of more than one million pending cases at the Asylum Offices, and class members will need the assistance of legal services professionals for some time to come.

### The Mounting Crisis in Access to Legal Services

10. It is my understanding that, having been occupied by the pressing need to take preliminary steps for class members, the subcontracted legal service providers have faced significant challenges, despite their best efforts and intentions, to reach the stage of offering assistance with applications for asylum, the primary permanent relief the Settlement contemplates. Under the Settlement, class members have only two years from an array of triggering dates to file their asylum applications with USCIS. *See* Settlement § IV.C.3.b. For many, the deadline will fall on December 11, 2025, two years after this Court's final approval of the Settlement and less than nine months from today. This means that right at the time that legal service providers are reaching a critical moment in the progress of these cases, they will be forced to stop serving their class member clients.

11. It would be extraordinarily difficult to provide assistance with asylum applications to all the class members who need it – the overwhelming majority – even if the federal government were not refusing to renew the legal services contract. There are two primary reasons for this:

    a. Despite the provision of the Settlement promising that "Defendants will ensure that the [Legal Services] Program is adequately resourced and funded to provide services for *all unrepresented* Ms. L. *Settlement Class members*," Settlement § IV.B.2.c.i.(d) (emphasis added), the subcontractors have not had sufficient resources to meet the need.

-5-  
18cv428 DMS (AHG)  
Declaration of Kayleen Hartman, KIND

   b. Meanwhile, the number of unrepresented class members is increasing exponentially because the federal government has separately cut off funding for another federal contract supporting legal services for unaccompanied children. This funding supported subcontracting nonprofit organizations, including KIND among others, in representing unaccompanied children, including class members. These funding cuts have forced KIND to lay off more than 240 staff, with more layoffs anticipated in the coming weeks, including some who specialized in the representation of *Ms. L.* class members. While KIND will continue to mentor the cases of class members represented by pro bono attorneys, it will have almost no capacity to offer direct representation to class members and will have to close or transfer to other legal services providers the vast majority of cases in which a KIND attorney represents a separated child. We understand that this same problem is affecting other nonprofit legal service providers for separated children who have lost funding due to the termination of their federal contracts.

12. Given the contraction of nonprofit legal service providers, the need to continue, and increase, the legal assistance provided under the Settlement could not be greater. The simple truth is that, if the prescribed legal services are not continued and expanded, few class members will have access to the forms of immigration relief promised under the Settlement.

13. Having personally worked with scores of separated families, I can attest to their ongoing trauma. Family members have not recovered from having their

children or parents ripped away; remaining separated for weeks, months, or years; and not knowing for long periods what happened to them or being unable to communicate. Moreover, until they have permanent relief in the United States, they cannot and will not recover. Many live in fear that they will once again be arrested, detained, and separated. This fear is justified. The trauma cannot dissipate until, with necessary legal help, they receive a determination on their right to remain together in the United States.

\* \* \* \* \* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct.

April 18, 2025            *s/ Kayleen Hartman*
                          Kayleen Hartman