Lee Gelernt*
Dan Galindo (SBN 292854)
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org

Stephen Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94111
T: (415) 343-0783
skang@aclu.org
samdur@aclu.org

*Attorneys for Petitioners-Plaintiffs*

*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement, et al., <br><br> Defendants. | Case No. 3:18-cv-428-DMS <br> Honorable Dana M. Sabraw <br><br> Date Filed: April 23, 2025 <br><br> **DECLARATION OF ANILÚ CHADWICK** <br><br> CLASS ACTION |

I, Anilú Chadwick, pursuant to 28 U.S.C. § 1746, declare as follows:

**Background**

1. Together & Free was founded in 2018 after the United States forcibly separated thousands of children and parents at the border. Since its inception, Together & Free has supported families separated under the Family Separation Policy ensuring that they are reunified and given the resources and supports needed to stabilize and rebuild after suffering the trauma of forcible separation.

2. During the implementation of the Family Separation Policy, Together & Free's national network of volunteers advocated for the release of families from detention, coordinated transportation from detention to facilitate reunification, helped families attend their immigration hearings and appointments with Immigration and Customs Enforcement, and, where possible, referred families to pro bono legal supports. We also helped families access emergency necessities, including housing, food, and clothing.

3. Since then, Together & Free has evolved into a primary case-management provider for separated families across the United States, having offered support to more than 1,100 affected families. Together & Free helps families stabilize and rebuild after reunification by providing them with access to housing, food, clothing, school, and medical services. Most separated parents and children we work with remain unrepresented by counsel.

4. I joined Together & Free as Pro Bono Director in June 2024 to develop a pro bono attorney network to support *Ms. L.* class members in applying for asylum under the Settlement Agreement. Through this pro bono network, we facilitate class members' access to pro bono legal representation. For the previous five years, I helped manage the family reunification program at Kids in Need of Defense (KIND),

locating separated parents who had been deported and assisting them to register as class members through Together.gov. At KIND, I also directly represented hundreds of separated children and parents in their efforts to reunify and seek lawful immigration status. I have therefore had extensive contact with class members.

## The Importance of Legal Services

5. Without individualized access to legal support, class members are effectively excluded from using the mechanisms established to assist them in securing immigration relief under the Settlement. These mechanisms are too complicated for most class members to navigate on their own.

6. In my work with hundreds of class members, I have encountered many who exhibited a serious lack of understanding of the avenues to relief. For example,

    a. Many parent class members are not aware that successful registration with Together.gov makes them members of the class, even when KIND and other legal service providers have sought them out, helped them register, and referred them to the Family Reunification Task Force to be reunited with their children. Those who are not aware of their class membership or who lack documentation to demonstrate class membership cannot proceed under the Settlement until they receive effective legal outreach and orientation, two of the services promised under the Settlement.

    b. Many class members do not know the history of their cases; that is, they do not know whether they passed an initial credible or reasonable fear interview, whether they are in removal proceedings, or whether they are already subject to a removal

order. Yet they must know these things to pursue relief under the Settlement: those with prior removal orders must have them rescinded and those in removal proceedings must have them terminated in order to take advantage of a central benefit in the Settlement: Only once these and an array of other preliminary steps are completed can a class member qualify to apply for asylum in a non-adversarial interview conducted by trained officers at United States Citizenship and Immigration Services (USCIS), rather than in Immigration Court. Through various kinds of information requests, a lawyer can help class members reconstruct the status of their cases.

c. Most concerningly, class members often assume they have already received asylum once they are granted parole and work authorization under the Settlement. Again, only competent legal advice can dispel this misunderstanding.

I mention these gaps in knowledge or misunderstandings, not to criticize members of the class in any way, but instead to underline how important legal assistance is for these families. Given that most left their homelands unwillingly to escape persecution; endured forcible separation; have no prior experience or knowledge of the United States immigration system; and only rarely speak, read, and write English, they cannot be expected to navigate relief under the Settlement on their own.

7. I am aware of many class members who still need help with the first steps toward relief. For example,

a. Since December 2024, Together & Free has received referrals for more than 260 class members and their qualifying additional family members seeking support in renewing their period of parole. The referring entities include, among others, subcontracted legal service providers in Acacia's Legal Access Services for Reunified Families (LASRF) program, as well as Seneca, the federal contractor providing mental health services to class members. Initial parole periods lasted three years under the Settlement, and many class members have reached or are approaching expiration dates. A class member cannot work legally unless their parole is renewed, and if they work without legal authorization, they face arrest, immigration detention, and re-separation from their children. Even where we are able to secure legal support, the delay caused by the lack of available legal services has serious consequences. For example, before coming to us for assistance, one father in the class was preparing to be let go by his employer as his parole deadline approached. Meanwhile, his daughter, who was only one year away from completing high school, dropped out to help support the family and ensure there was enough money for groceries. Once we helped connect the family with pro bono legal services, the family was able to secure reparole, and re-obtain work authorization, but not every class member has access to legal assistance to extend their parole.

  b. We have also received referrals for 107 class members seeking to get standing removal orders rescinded. Through our pro bono network, we helped these families secure pro bono legal representation. Most have succeeded, and some are still waiting for decisions. The LASRF legal service providers and others continue to ask if they can refer more families for such assistance, but we have had to pause referrals because we do not have the resources to accept more clients.

  In cases where the Department of Homeland Security (DHS) reinstated a prior removal order or issued a removal order in expedited proceedings, it can rescind on its own, but class members must first make and support a request for it to do so. The instructions on how to initiate and support a request for rescission from DHS are publicly available only in English. Our clients have little-to-no capacity to interact with DHS to achieve this result.

  In cases where the Immigration Court issued a removal order, the class member must ask DHS to join a motion to reopen, rescind the order, and dismiss the proceedings. Most of these cases involve children who remained in the United States after their parents were deported and did not know they were supposed to appear in Immigration Court or have a way to travel there. As a result, they received *in absentia* removal orders. If DHS will not join a motion to reopen, the class member gets only one shot,

so the stakes are high. Class members cannot assess the risks and make these kinds of motions without legal assistance.

The 107 clients our pro bono network assisted with requests to have removal orders rescinded represent only a small fraction of those who need such assistance.

c. Since November 2024, Together & Free has received 36 referrals for assistance with ongoing cases in Immigration Court where no removal order has yet been entered. We have agreed to help these clients connect with pro bono representation to seek dismissal of their removal proceedings, but the pro bono network lacks the capacity to continue representing them in their asylum applications to USCIS.

8. Because so many class members needed help with the preliminary steps under the Settlement, we attempted to create a chart that might help them and their advocates understand which pathway applies in their case. This is the chart we drew:



We realized immediately that the chart was so complicated that no self-represented class member could understand it. In fact, the staff of Together & Free, who are familiar with the Settlement, often must confer together and with members of the *Ms. L.* steering committee to figure out which path applies to a particular client.

9. I have appeared as a Friend of the Court in seven cases where a child class member was unable to obtain legal support before their court hearing. Without filing an appearance on behalf of a client, a Friend of the Court assists the Immigration Judge in understanding facts that the respondent may not be able to present on their own. In none of the seven hearings in which I participated was the Immigration Judge or the assigned government attorney previously aware of the respondent's status as a class member. In one case, the separated child was

incorrectly scheduled for a merits hearing at her first court appearance, even though she had not yet even pled to the immigration charges. The separated child spoke Quiche, an Indigenous language, and no interpreter was available for her in court on the day of the scheduled hearing. As a Friend of the Court, I was able to capture for the record the respondent's confirmed *Ms. L.* class status, approved parole, and eligibility for termination of proceedings. Without this legal assistance, the child might well have been illegally removed. The matter was subsequently dismissed, and the separated child is now eligible to apply for asylum with USCIS under the Settlement, but she does not have legal support to do so.

## The Critical Shortage of Legal Services for Class Members

10. In part because class members have needed so much support with the preliminary steps under the Settlement, Together & Free knows of few who have legal assistance to finish the process by seeking asylum. Many class members we referred to the LASRF subcontracted legal service providers for help with asylum in the fall of 2024 returned to Together & Free with reports that these providers lacked the capacity for this service and were accepting referrals only for parole renewals and other preliminary steps. By the end of 2024 and early 2025, class members were returning with reports that the LASRF providers lacked capacity even to help with preliminary steps.

11. Yet deadlines for both preliminary requests (e.g., for rescission of removal orders or termination of proceedings) and for asylum applications are fast approaching under the Settlement. Class members have only two years from certain triggering dates to file these requests and applications. *See* Settlement § IV.C.3. For many, the deadline will fall on December 11, 2025, two years after this Court's final

approval of the Settlement and less than nine months from now. There has never been a more urgent time for lawyers to help class members navigate the Settlement.

12. The federal government's recent cancellation of separate and distinct contracts for legal representation of unaccompanied children (unrelated to the Settlement) has greatly exacerbated the shortage of lawyers, however. Many nonprofit organizations received funding under these contracts to represent child class members, whom the government typically designated as unaccompanied after forcibly removing them from their parents. Now that this funding has been cut off, nonprofits are having to lay off staff and close cases. In March 2025, Together & Free accepted referrals of these cases from partner organizations that had lost their funding, but the volume of referrals was so overwhelming that we had to stop accepting them in April 2025. Our pro bono network does not have the capacity to represent all families needing legal support at this time.

13. As the number of lawyers available to help shrinks, the number of unrepresented class members grows week by week. If class members are ever to have a fair opportunity to secure permanent relief that enables them to remain safely in the United States and reunified with their familes, the legal services provided under the Settlement must not only continue but expand. Nonrenewal of the contract would deprive class members of the immigration benefits the Settlement promised.

\* \* \* \* \* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct.

April 18, 2025               *s/ Anilú Chadwick*
                             Anilú Chadwick