UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., <br><br>*Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement, et al <br><br> *Defendants*. | Case No. 18-cv-00428-DMS-MDD <br><br> Date Filed: May 15, 2025 <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING PROVISION OF LEGAL SERVICES** |

**INTRODUCTION**

The Court should deny Plaintiffs' Motion to Enforce the Settlement Agreement Regarding Legal Services, Dkt. 771, because the settlement agreement, *see* Dkt. 721-1, does not mandate that Defendants have a contract to provide the legal services. Rather, Defendants have considerable discretion over how they provide legal services. They are not required to consult with, much less seek approval from, class counsel if they choose not to renew an expiring contract to perform services outlined in the Immigration Legal Services portions, in section IV.B.2.c, of the settlement. *See* Dkt. 721-1 at 10-12. Absent

from class counsel's renewed motion is any allegation that a specific class member was denied services required under the settlement. Further, and as explained in more detail below, the Executive Office for Immigration Review ("EOIR") has undertaken steps to federalize the provision of legal services to class members that are required under section IV.B.2.c of the settlement. Class counsel therefore has failed to allege facts that would support, much less show a breach of the settlement or any imminent and irreparable harm entitling them to preliminary relief. The Court should deny the motion to enforce and, if the motion is construed as one for a temporary restraining order, the Court should still deny it.[1]

## ARGUMENT

I. **Plaintiffs have not shown a breach of the *Ms. L.* Settlement.**

The premise of Plaintiffs' claim of breach is that Defendant EOIR did not renew a government contract with the Acacia Center for Justice ("Acacia") to administer EOIR's Legal Access Services for Reunified Families ("LASRF") Program. Plaintiffs contend that Defendants "have no plan in place" to implement the services required. *See* Dkt. 771 at 3. Defendants, however, have provided their plan. *See* Dkts. 765, 765-1, 768-1; Second

---

[1] Plaintiffs' motion differs from what class counsel told the Court they would be filing. On April 30, 2025, the Court asked class counsel whether any one class member was at risk of losing a benefit under the settlement or otherwise suffering an irreparable harm. *See* Tr. at 28:12-17. Class counsel responded that they could identify a subclass of individuals whose benefit would expire soon. *Id*. at 30:25-31:1-10. The Court suggested that if class counsel identify specific individuals who may be losing parole who have not had legal services, that could serve as the basis of a motion for a temporary restraining order. *Id*. at 31:11-18. Class counsel has not identified such individuals nor moved for a TRO.

2

Supplemental Declaration of Stephanie Gorman, attached as Exhibit A. Tellingly, Plaintiffs have not identified a single class member who has been denied legal services.

### A. Plaintiffs fail to show that EOIR's Federalized LASRF Program does not comply with the terms of Section IV.B.2.c. of the Ms. L. Settlement, applicable regulations, or ethical obligations.

Class counsel asserts that EOIR's Federalized LASRF Program fails to satisfy the settlement and contravenes regulations and ethical obligations. But this assertion rests on the mistaken premise that EOIR itself and its personnel will directly provide legal services. Plaintiffs' assertion is incorrect. Class counsel's argument that EOIR cannot directly provide individual legal advice, Dkt. 771 at 7-9, is misplaced, because that is not and has never been the plan.

Now having addressed that mistaken belief, as a threshold matter, there is no dispute that provision of the legal services in this section is mandatory. *See* Dkt. 771 at 5-7. Defendants agree, as class counsel argues, that the settlement requires EOIR to administer a Program that provides "assistance to *Ms. L.* Settlement Class members, short of full representation," and that Defendants must ensure that the Program is "adequately resourced and funded to provide services for all unrepresented *Ms. L.* Settlement Class members." Dkt. 721-1 §§ IV.B.2.c.i, (d). In addition to "group information sessions," these services include "individualized consultations and counseling about relief," *id.* § IV.B.2.c.i.(a), "assistance with document preparation," *id.* § IV.B.2.c.i.(a), and "Friend of the Court services, where allowed by the immigration court," *id.*

Although the Acacia contract, through which individual legal assistance was previously provided, has not been renewed, EOIR's federalized plan satisfies its obligations under the settlement and does not run afoul of regulations or ethical

3

obligations. On May 1, 2025, Defendants began to implement the new version of the Program, including extensive outreach to ensure the class and QAFMs receive information and guidance on how to continue to access legal services. *See* Dkt. 765-1 ¶ 3. To do so, EOIR began accepting referrals and information on class members and QAFMs from DHS and its contractors, including International Organization for Migration ("IOM") and Seneca Family of Agencies ("Seneca"), Ex. A ¶ 6, and distributed an outreach flyer, including information on the LASRF Program and how to schedule appointments for services, to DHS and the U.S. Department of Health and Human Services ("HHS") to share with IOM and Seneca. *Id.* ¶ 7. EOIR also updated language on the together.gov and juntos.gov webpages concerning the available legal services, *id.* ¶ 11, and created a dedicated webpage for class members and QAFMs, which includes, *inter alia*, the LASRF Program flyer, a list of upcoming group orientation sessions, and instructions for volunteer attorneys and representatives seeking to represent class members. *Id.* ¶ 8; *see* EOIR, *Legal Services for Ms. L. Class Members and Qualifying Additional Family Members*, available at https://www.justice.gov/eoir/LegalServicesforMsL (last visited May 15, 2025).

On May 1, 2025, EOIR also launched the LASRF hotline (703-756-8094), which allows class members and QAFMs to call EOIR and request legal services, and EOIR is actively returning these phone calls to explain the services that are available to class members and QAFMs under the LASRF Program. Ex. A ¶ 9. Relatedly, on the same day, EOIR announced a dedicated email address (Ms.L.Services@usdoj.gov), which is monitored throughout the day, to centralize communications from the LASRF Program to class members, QAFMs, and organizations seeking to refer cases for LASRF services; EOIR is making phone calls to follow up on emails and, in addition to direct outreach

4

from class members and QAFMs, EOIR has already received referrals in this inbox from IOM. *Id.* ¶ 10.

Likewise, since May 1, 2025, EOIR has been conducting daily telephonic outreach to individuals on Acacia's waitlist and to individuals who reach out to the LASRF Program through the LASRF hotline or the dedicated LASRF email address. *Id.* ¶ 12. Certainly, EOIR has made robust efforts to inform class members of the change in program and how they can continue to access legal services—to include group information sessions *and individual consultations*.

First, the LASRF Program adequately complies with the requirement to provide "individualized consultations and counseling about relief," *id.* § IV.B.2.c.i.(a), without breaching any regulatory or ethical obligation or otherwise impermissibly obtaining confidential information. EOIR will attempt to match all class members who request individualized services to a pro bono attorney.[2] *Id.* ¶ 20. Thus, in-depth individualized consultations will not be needed because the individual facts and circumstances of a case will not inform whether the class member receives pro bono assistance or how they are matched with a volunteer. *Id.* EOIR is committed to protecting confidentiality and all personally identifiable information. *Id.* ("EOIR will provide class members with the contact information for the volunteer attorney so that they can conduct their own outreach to the pro bono representative . . . [to] facilitate a connection . . . without sharing the class member's confidential or personal information.").

---

[2]   Class counsel suggest that pro bono licensed attorneys would need to be "mentored" by another attorney who has more experience practicing immigration law and with the *Ms. L.* settlement. *See* Dkt. 771 at 12. While aspects of immigration law are complicated, attorneys can read and interpret a contract like the *Ms. L.* settlement and provide adequate representation to enforce the rights under it.

5

Also on May 7, 2025, EOIR emailed its pro bono network, consisting of pro bono list providers (165 recipients), law school clinics (149 recipients), a listserv on its GovDelivery email platform (52,422 recipients), and the public to inform them about the opportunity to represent class members before EOIR and DHS. *Id.* ¶ 16; *see also id.* ("EOIR also posted a volunteer solicitation on its federalized LASRF program webpage on May 8, 2025. EOIR maintains a dedicated email address (Ms.L.Volunteers@usdoj.gov) to communicate with these volunteers.").

Second, the LASRF Program complies with the requirement to provide "group information sessions." Dkt. 721-1 § IV.B.2.c.i(a). EOIR has finalized a guide for class members and QAFMs on how to use the Webex platform to access the group orientations that began on May 13, 2025, as well as PowerPoint presentations for group orientations on topics including an overview of LASRF services, how to apply for re-parole and employment authorization renewal, and how to respond to requests for evidence, notices of intent to deny, and denial notices. *Id.* ¶ 14; *see also id.* ¶ 15 (discussing orientations that have already occurred, including group orientation that was an overview of the legal services that are available under the Ms. L. Settlement., group orientation on Re-Parole and Employment Authorization Renewal, group orientations on Requests for Evidence and Notices of Intent to Deny and Requests for Change of Address).

Third, the LASRF Program also complies with the requirement to provide "assistance with document preparation," *id.* § IV.B.2.c.i.(a). Of course, volunteer attorneys placed with class members may provide assistance preparing documents and forms to be submitted before EOIR and USCIS.

6

Fourth, the LASRF Program does not violate the settlement due to EOIR's cessation of Friend of Court services. *See* EOIR Policy Memorandum 25-18, Cancellation of Director's Memorandum 22-06 and Reinstatement of Policy Memorandum 20-05 (Feb. 4, 2025). As class counsel seems to suggest, the settlement makes no guarantee that said services will be available. *See* Dkt. 771 at 8; Dkt. 721-1 § IV.B.2.c.i.(a) (stating Friend of Court services available "where allowed by the immigration court").[3]

In short, class counsel has not shown, even by a preponderance of the evidence, that EOIR's Federalized LASRF Program does not comply with the terms of Section IV.B.2.c. of the *Ms. L.* Settlement, applicable regulations, or ethical obligations.

**B.      Plaintiffs fail to demonstrate that pro bono placement is "no substitute" for mandatory funded legal services.**

Class counsel argues that pro bono placement is insufficient, but that contention is highly speculative and fact-specific, and class counsel has still not put forth any concrete evidence or facts to corroborate it and thus has not carried their burden under the preponderance of the evidence. *See Buss*, 16 Cal. 4th at 54; *see* Dkt. 771 at 10-13. A large part of the argument is that pro bono legal service providers have lost their government

---

[3]      Class counsel's assertion that "Reinstated Policy Memorandum 20-05 does not in fact bar the immigration courts from allowing the appearance of friends of the court" but rather allows them to appear "'an aid to the court . . . and not as an advocate on behalf of an individual,'" Dkt. 771 at 8 (quoting PM 20-05), is incorrect.  The Reinstated Policy Memorandum 20-05 states that "assuming, *arguendo*, there is legal authorization for an *amicus curiae* at the immigration court level, EOIR policy remains, consistent with the O'Leary Memorandum, that the role of an *amicus curiae* is limited to that of *an aid to the court in [unaccompanied alien child] cases and not as an advocate on behalf of an individual UAC*." EOIR Policy Memorandum 20-05, *Reaffirms principles related to legal advocacy by non-representatives in immigration court proceedings* (Nov. 21, 2019) (emphasis added).

7

funding, as well as conjecture that this must mean those providers will turn away every class member who actually seeks individual services. This is overblown and unsupported.

First, the declarations attached to the renewed motion reflect that, in fact, certain legal service providers will be able to serve class members who request assistance, though perhaps not an undefined—and, of course, unknown—"significant" number of class members, without obtaining additional funding. *See* Dkt. 771 at 10 (citing, *inter alia*, Dkt. 771-Jang Decl. ¶¶ 7-10). Second and relatedly, absent from class counsel's renewed motion is any indication that relevant legal services organizations cannot obtain adequate funding from other sources. And, to the contrary, some apparently provide "*low-cost* legal services," Dkt. 771 at 11 (emphasis added). Indeed, it should not be that the U.S. Government is the primary source of funding for these nonprofit organizations when there is, of course, no guarantee of indefinite funding from the Government. Third, class counsel fails to explain why private attorneys and law firms would be unable to fill any alleged gap.

Furthermore, class counsel suggests that pro bono attorneys who do not have experience practicing immigration law will be unable to effectively assist class members without training and mentoring. But the new LASRF Program will provide a library of written and recorded training materials to help pro bono attorneys and legal service providers, to cover substantive and procedural immigration law issues, education on working with vulnerable populations, trauma-informed care, and child protection. Ex. A ¶ 23. EOIR has also established on-demand resources on immigration law and process through its Immigration Court Online Resource and Model Hearing Program and will also

provide representatives with specific resources related to representation of class members. *Id.*

Additionally, class counsel's suggestion that the requirement that Defendants "ensure that the [LASRF] Program is adequately resourced and funded," *id.* at 3, necessarily means the Government must contract with a third party, is incorrect. Again, class counsel speculates that EOIR has not taken the appropriate measures to ensure resources are allocated to administer the LASFR Program, and that speculation is defied by the foregoing efforts made and resources used to implement the new version of the program.

## II.     Plaintiffs have not shown immediate, irreparable harm to any class member or QAFM.

Even assuming, *arguendo*, that class counsel seek a temporary restraining order, they have not made a clear showing that they are entitled to such relief. A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *San Diego Unified Port Dist. v. Nw. Nat'l Ins. Co.*, No. 15CV1716 DMS (MDD), 2016 WL 4771625, at *1 (S.D. Cal. Jan. 7, 2016) (Sabraw, J.) (quoting *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008))). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Winter*, 555 U.S. at 22).

On the first factor, likelihood of success on the merits, class counsel have not identified one class member who has not received services the parties agreed to in section

IV.B.2.c. of the settlement. Class counsel have provided no reason why EOIR would not be able to perform or, if EOIR is not able to perform, to facilitate the performance of tasks Defendants agreed to. Therefore, the first factor weighs against issuance of an injunction.

As to the second factor, whether Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief, class counsel cite to the numbers of class members and qualifying additional family members with upcoming parole expiration dates, in May 2025, ECF No. 771 at 15, and to the possibility of arrest, detention, and removal, but the possibility is speculative, considering that class counsel have not identified a single class member or provided any other information about a particular class member's immigration history and other factors that would be relevant to the likelihood of arrest, detention, or removal. The same goes for the possibility of the loss of employment authorization, *see id.*, which, again, cannot be determined without knowing an individual class member's eligibility for employment authorization. The same holds true for class members who are subject to final removal orders. *See id.* at 16. Again, class counsel's allegations are based largely on speculation. The second factor therefore weighs against injunctive relief.

Finally, when the government is the nonmoving party, the final two *Winter* factors--the balance of equities and the public interest--merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-CV-0424-BAS-DDL, 2022 WL 16722357, at *21 (S.D. Cal. Nov. 4, 2022) (citation omitted). Here, while the public interest favors compliance with settlement agreements, class counsel have not alleged sufficient facts that would support a claim of breach, much less that the class would suffer irreparable harm in the absence of injunctive relief.

### III. The Court should not grant Plaintiffs the relief they request.

As to Plaintiffs' request that "the Court to order a continuation of the current contract to provide legal services," that is relief that the Court should not order. First, the Acacia contract has not been renewed, so there is no contract to continue. Second, the settlement does not require Defendants to contract with any third party to provide the required legal services, and it certainly does not require Defendants to contract with Acacia. Accordingly, if the Court finds that Defendants' plan to federalize the LASRF Program does not fulfill all of the required services, Defendants should be given the opportunity to address those specific areas without reverted to the prior contract.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' renewed motion to enforce.

May 15, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

/s/ *Christina Parascandola*
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DANIEL SCHUTRUM-BOWARD
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-3097
christina.parascandola@usdoj.gov