YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DANIEL SCHUTRUM-BOWARD
Trial Attorney

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 919-1670
    Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement (ICE), et al. <br><br> *Defendants*. | Case No. 3:18-cv-00428-DMS-MDD <br><br> Date Filed: June 10, 2025 <br><br> **DEFENDANTS' MOTION FOR TEMPORARY RELIEF FROM COURT ORDER PURSUANT TO RULE 60(b)** <br><br> Hon. Dana M. Sabraw <br> Courtroom: 13A |

Pursuant to Federal Rule of Civil Procedure 60(b), Defendants move for temporary relief from the Court's Order of December 11, 2023, Dkt. 727, approving the Settlement Agreement. Specifically, Defendants request that the Court temporarily suspend the provisions in the Settlement Agreement pertaining to behavioral health services, medical services, and outreach to *Ms. L.* Settlement Class members, until Defendants have completed the re-solicitation process and entered into a contract with a new contractor. Dkt. 721-1 § IV.B.2.

Defendants had contracted with Seneca Family of Agencies (Seneca) to provide the aforementioned services until June 9, 2025, with the possibility of renewing the contract each year until 2027. However, because it has been determined that Seneca has likely violated anti-discrimination civil rights laws through its Diversity, Equity, and Inclusion (DEI) program, Defendants must select a new contractor that complies with the anti-discrimination laws to continue to provide the required services. *See* Letter Referring Seneca for Investigation, Exhibit A at 1–3. Therefore, Defendants request the Court to temporarily suspend sections IV.B.2.a, IV.B.2.b, and IV.B.2.d of the *Ms. L.* Settlement Agreement, until the completion of the re-solicitation process.

**BACKGROUND**

On December 1, 2023, the parties jointly submitted the *Ms. L.* Settlement Agreement to this Court for final approval, pursuant to Federal Rule of Civil Procedure 23. Dkt. 721. On December 11, 2023, the Court approved the Settlement Agreement and

certified a class for settlement purposes between Plaintiffs and Defendants, including the U.S. Department of Homeland Security (DHS), U.S. Department of Justice (DOJ), U.S. Department of Health and Human Services (HHS), and Office of Refugee Resettlement. Dkt. 727. In its Order, the Court dismissed Plaintiffs' claims with prejudice, subject to the terms of the Settlement Agreement, and retained jurisdiction for specified purposes, subject to the terms of the Settlement Agreement, including to enforce the Settlement Agreement's terms and to review any future modifications to the Settlement Agreement that the parties might enter into upon mutual agreement. *Id.* at 2. On the same day, the Court entered judgment and closed the case. Dkt. 730.

On June 10, 2022, prior to the Settlement Agreement, HHS, though the Substance Abuse and Mental Health Services Administration (SAMHSA), competed and awarded a contract to Seneca to provide behavioral health services to class members to implement this Court's interim order dated May 2, 2022. *See* Dkt. 644; *see also* Declaration of Brian Goodger, Exhibit B ¶ 6. After this Court approved the Settlement Agreement on December 11, 2023, SAMHSA modified the contract on March 14, 2024, to implement the Settlement Agreement. Exh. B ¶ 7. The contract is funded by DOJ and DHS through an Inter-Agency Agreement with HHS. *Id.* ¶ 14. Under the current contract, Seneca has coordinated and implemented a system for establishing contact with the class members that are located in relevant geographic areas both within and outside of the continental United States. *Id.* ¶ 8. Seneca has also informed the families of the registration process

and all available settlement services, including the possibility of requesting humanitarian parole, housing assistance, limited legal support services, access to medical services through the Federally Qualified Health Centers (FQHCs) with funded co-pay support, and behavioral health services. *Id.*

Specifically, Seneca has subcontracted with Justice in Motion to conduct international outreach to separated families living overseas to inform them of the Settlement Agreement and solicit their interests in reunifying with their families in the United States. *Id.* ¶ 9. Additionally, Seneca has established a network of behavioral health providers, including licensed professional counselors, nurse practitioners, clinical social workers, clinical psychologists and psychiatrists and subcontracted with these professionals to deliver behavioral health services to reunified families in relevant geographic areas of the United States. *Id.* ¶ 10.

On January 20, 2025, President Trump issued Executive Order 14151, titled Ending Radical and Wasteful Government DEI Programs and Preferencing, which—along with anti-discrimination statutes and federal law—is in place to ensure that all federal contractors adhere to principles of equal opportunity and non-discrimination. 90 Fed. Reg. 8339 (Jan. 29, 2025). These laws prohibit any form of unlawful discrimination based on race, color, religion, sex, or national origin. *Id.*; *see also* Exh. B ¶ 13.

Seneca's Diversity, Equity, and Inclusion (DEI) program raised concerns about potential violations of federal anti-discrimination laws, Exh. B ¶ 12, namely, Title VII of

3

3:18-cv-00428

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as violations of the terms of its federal contract which contains prohibitions against "discrimination in the administration of [government] programs and services based on non-merit factors such as race." HHSAR 352.237-74; *see also* Exh. A at 2. This program prompted DHS to refer Seneca to the Department of Labor's Office of Federal Contract Compliance Programs for an investigation into potential violations of civil rights laws. Exh. A at 1–3. The goal of this referral for investigation is to determine whether Seneca's DEI practices contravene federal anti-discrimination statutes and, if necessary, to take corrective action. *Id.* at 1. It is the Government's duty to ensure that its contractors, funded with taxpayer monies, comply with the law. *Id.* ¶ 14. As a result, given DHS's referral, re-soliciting the contract is the most appropriate course of action to ensure compliance with statutory civil rights laws. *See* Exh. A at 1–3; Exh. B ¶ 15. HHS estimates that re-solicitation will take between one hundred thirty-five (135) to one hundred sixty-five (165) calendar days to complete. Exh. B ¶ 19. While HHS engages in the re-solicitation process, Defendants likely will be unable to comply with sections IV.B.2.a, IV.B.2.b, and IV.B.2.d of the *Ms. L.* Settlement Agreement. *See id.* ¶ 16.

I. **Legal Standard.**

Under Federal Rule of Civil Procedure 60(b)(5), a court "may relieve a party . . . from a final judgment, order, or proceeding" when, *inter alia*, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Supreme Court has explained that

the disjunctive language of Rule 60(b)(5) clarifies that each of these grounds for relief is "independently sufficient." *Horne v. Flores*, 557 U.S. 433, 454 (2009). The "equitable" clause of Rule 60(b)(5) allows a court to modify or vacate an order if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Id.* at 447 (cleaned up). Where the government seeks relief from an "institutional-reform" decree, courts must apply a "flexible approach" to "ensure that responsibility for discharging the [government's] obligations is returned promptly to the [government] and its officials when the circumstances warrant." *Id.* at 448–50 (internal quotation marks and citation omitted).

A flexible approach is necessary for several reasons. First, "the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment." *Id.* at 447–48. Second, these types of decrees often involve core-government responsibilities and raise separation-of-powers concerns. *Id.* at 448. Last, "public officials sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law." *Id.* Consequently, future officials "inherit overbroad or outdated consent decrees" that unduly constrain "their ability to fulfill their duties as democratically-elected officials." *Id.* at 449.

Once a party carries its burden to show that changed circumstances warrant relief from a consent decree, "a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne*, 557 U.S. at 447 (internal quotations and citation omitted). Rule 60(b)(5) permits modification of an order if it is "suitably tailored" to resolve problems created by changed circumstances. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). It permits district courts to provide relief from judicial orders "whenever such action is appropriate to accomplish justice." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotations and citation omitted). Relief under the rule is available only in "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017). But "[i]n determining whether extraordinary circumstances are present, a court may consider a wide range of factors," such as "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* at 123 (internal quotations and citation omitted).

**II. Relief From the Court's Order Approving the Settlement Agreement Provisions Regarding Behavioral Health Services, Medical Services, and Outreach to Class Members Is Warranted Under Rule 60(b)(5) and (b)(6).**

Granting relief to Defendants from the provisions in the Settlement Agreement regarding behavioral health services, medical services, and outreach is necessary because implementing those provisions prospectively, through Seneca, is no longer equitable—

and, more importantly, because DHS has determined that Seneca has likely violated federal civil rights laws. *See* Fed. R. Civ. P. 60(b)(5); Exh. A at 1–3. Indeed, "a significant change" in "factual conditions" has rendered "continued enforcement [of the provisions] detrimental to the public interest," as Seneca is suspected of engaging in unlawful racial discrimination. *Horne*, 557 U.S. at 447 (cleaned up). "[T]he passage of time frequently brings about changed circumstances," including "new policy insights," which "warrant reexamination of the original judgment." *Id.* at 447–48; *id.* at 449 (explaining future officials "inherit overbroad or outdated consent decrees" unduly constraining "ability to fulfill their duties as democratically-elected officials.").

Therefore, given new policy insights, *Horne*, 557 U.S. at 447, coupled with existing civil rights laws, changed circumstances warrant temporary relief from compliance with the provisions regarding behavioral health services, medical services, and outreach, while Defendants secure a new contractor to provide these services.

Moreover, "other reason[s]" justify relief in order to "accomplish justice." Fed. R. Civ. P. 60(b)(6); *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotations and citation omitted). Certainly, the potential violation of anti-discrimination civil rights laws constitutes "extraordinary circumstances" supporting temporary relief under Rule 60(b)(6). *Buck*, 580 U.S. at 123. As noted, when "determining whether extraordinary circumstances are present, a court may consider a wide range of factors," such as the "risk of undermining the public's confidence in the judicial process."

*Id.* (internal quotations and citation omitted). If the judicial process were to require the Government to continue to contract with an entity that has likely violated civil rights laws, in lieu of selecting a different contractor, the public's confidence would be compromised. *Id.*

Finally, the relief requested is appropriately tailored to the specific circumstances. *Rufo*, 502 U.S. at 383. Indeed, Defendants only seek temporary relief from compliance with only the provisions that Defendants contracted with Seneca to fulfill.

## CONCLUSION

For these reasons and others, the Court should grant this Motion.

Dated: June 10, 2025.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

*/s/ Daniel Schutrum-Boward*
DANIEL SCHUTRUM-BOWARD
Trial Attorney
Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 919-1670
Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants