Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., | Case No. 18-cv-00428-DMS-AHG |
| *Petitioners-Plaintiffs*, | |
| v. | Date Filed: June 30, 2025 |
| U.S. Immigration and Customs Enforcement ("ICE"), et al. | Hearing Date: July 18, 2025 |
| *Respondents-Defendants*. | **OPPOSITION TO DEFENDANTS' RULE 60(B) MOTION** |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 60(B) MOTION

Plaintiffs submit this Memorandum of Law in Opposition to Defendants' Rule 60(b) Motion, ECF No. 792 ("Defs.' Mot.").

## INTRODUCTION

Without the work of Seneca Family of Agencies ("Seneca"), the Settlement Agreement cannot meet the terms set out by the Parties. Caseworkers are the main point of contact for the vast majority of beneficiaries under the Agreement. Decl. of Leticia Galyean Sturtevant ¶ 3 (June 30, 2025). These caseworkers and other staff—a team of about 69 bilingual Seneca employees—help reach out to each and every eligible class member; advise them of their rights under the Agreement; assist with medical, mental health, and housing benefits; and coordinate referrals for legal, medical, housing, and other services. *Id.* ¶¶ 3–5; *see also* Second Suppl. Decl. of Kelly Kribs ¶¶ 8–15 (June 30, 2025).

Given the importance of Seneca's work, class counsel have been concerned about the status of the Seneca contract ever since Defendants decided, without notice or discussion with Plaintiffs, to restructure the provision of legal services by unilaterally refusing to renew the legal services contract with Acacia—a decision this Court has found to breach Section IV.B.2.c. of the Settlement Agreement. *See* Pls.' Mot. Enforce Settlement at 2, ECF No. 762; Order Granting Pls.' Renewed Mot. Enforce Settlement (June 20, 2025), ECF No. 795. Indeed, class counsel asked Defendants in late May whether Seneca's contract would be renewed, only to be met with silence. Decl. of Anand Balakrishnan ¶¶ 2–3.

On June 10, again with no notice or any attempt to meet and confer, Defendants sought relief from the Court from the need to comply with the remaining subsections of Section IV.B.2. that pertain to benefits: subsections a., b., and d. Defs.' Mot. Defendants ground their request on a June 9, 2025 referral of Seneca by the Department

1

of Homeland Security ("DHS") to the Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") for "investigation into potential violations of civil rights law."  Defs.' Mot. Ex. A.  The date of this referral, June 9, was the last day of Seneca's contract; Seneca was awaiting Defendants' signature on a renewal that Defendants had sent to Seneca about two weeks earlier, asking Seneca to sign and return it to Defendants, and that would be returned, according to a contracting official, "as soon as it [was] fully executed."  Galyean Sturtevant Decl. ¶¶ 14, 17 & Ex. C, Tab 5.

DHS justifies its referral for investigation by citing statements on the Seneca website describing careers at Seneca, and the organization's values with respect to diversity, including statements that "Black employees must experience an inclusive workplace culture where their lived experience is valued," and a pledge to advocate for "the rights of youth and families of color against racial discrimination experienced within systems of care."  Defs.' Mot. Ex. A, at 2–3.

This language has been on the Seneca website for more than four and a half years, and has been publicly available at every point in the contracting process in *Ms. L.* Galyean Sturtevant Decl. ¶¶ 9–11.  And since the January 2025 executive order regarding nondiscrimination that Defendants cite in support of its concerns,[1] more than five months have passed, meaning that Defendants could have conducted a re-bidding process if they truly believed one was necessary, or could have alerted the Court or class counsel.

Defendants never say when any concerns arose about statements on Seneca's website.  *See* Defs.' Mot.; Decl. of Brian Goodger, Defs.' Mot. Ex. B, ECF No. 792-2. And through the very last day of the contract, Defendants never conveyed to Seneca any concerns with "potential violations of civil rights laws" based on diversity

---

[1] *See* Defs.' Mot. 3 (citing Exec. Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8339 (Jan. 29, 2025)).

18cv00428

statements on its website; they raise those concerns only now, to claim they should be excused from providing core services under the Settlement for at least four and a half months, Goodger Decl. ¶ 20, and potentially longer, *see id.* It is unclear if any investigation has, in fact, been launched, or—if there is an investigation—when it might happen or what the results will be. And as the past director of OFCCP, the federal agency to whom DHS made its referral, explains in a declaration, the referral is highly unlikely to result in a valid, lawful investigation because the OFCCP is no longer authorized by executive order to open an investigation; the Department of Labor has directed OFCCP not to conduct investigations; and in any event, DHS's allegations lack the specificity needed to justify an investigation. Decl. of Jenny Yang ¶¶ 8–9 (June 27, 2025).

Defendants cannot, on these facts, meet their burden to show either the "significantly changed circumstances" or "extraordinary circumstances" required to provide relief under Federal Rule of Civil Procedure 60(b)(5) and (6), respectively. Defendants themselves admit that they cannot meet their obligations under the Settlement Agreement in the absence of the Seneca contract. Goodger Decl. ¶ 16; *see also* Defs.' Mot. 4. If Defendants wish to re-bid the contract, they can do so, but families should not be denied core Settlement benefits in the meantime: Seneca must continue to provide services in the interim.

## FACTS AND PROCEDURAL HISTORY

A. Seneca was repeatedly awarded the contract to provide services to separated families while expressing the same commitment to equality Defendants cite as grounds for noncompliance with the Agreement.

In March 2020, the Department of Health and Human Services ("HHS"), through its subsidiary agency, the Substance Abuse and Mental Health Services Administration ("SAMHSA"), initially awarded a sole-source contract to Seneca in response to an order for Defendants to provide behavioral health services to the class

3

members in *Ms. JP., et al. v. Barr, et al.*, No. 18-cv-06081-JAK. Decl. of Lyna Muñoz-Morris ¶ 4 (May 23, 2025), ECF No. 783-2.

SAMHSA awarded a new contract to Seneca in June 2022, to implement this Court's interim order, to begin to provide benefits anticipated under a Settlement in *Ms. L.* Galyean Sturtevant Decl. ¶ 7; *see also* Muñoz-Morris Decl. ¶ 6; ECF No. 644. The Court's order was jointly requested by Defendants and Plaintiffs. ECF No. 643. The new contract added a wider range of services, including counseling prior to reunification focused on the separated child's needs, and applied to additional separated families, including those separated in the earliest days of family separation. Galyean Sturtevant Decl. ¶ 8.

After this Court approved the Settlement Agreement, SAMHSA modified the existing Seneca contract in March 2024, to add administering medical services, and conducting further international outreach to class members. *Id.* The contract is funded both by the U.S. Department of Justice ("DOJ") and DHS through an agreement with HHS. Goodger Decl. ¶ 7. The contract expired on June 9, 2025, with two option years remaining, after DHS—and it appears only DHS—withheld its portion of the funds for the contract. *Id.* ¶ 7; *see also id.* ¶ 14 ("DHS has not provided its portion of the funding for HHS to exercise the next option year on the Seneca contract," no mention of DOJ).

Seneca's website contained precisely the same language since, at least, October of 2020, that DHS now identifies as warranting an investigation and delay of Defendants' duties under the Agreement. Galyean Sturtevant Decl. ¶¶ 9–11 & Exs. A–B.[2]

---

[2] *See* https://web.archive.org/web/20201022094611/https://senecafoa.org/diversity/ (archive of Seneca's diversity page as of October 22, 2020, and searchable by date); https://web.archive.org/web/20200930020925/https://www.senecafoa.org/careers/ (archive of Seneca's careers page as it appeared on September 30, 2020, and searchable by date).

18cv00428

This is the totality of the website statements that the DHS referral identifies:

- On the careers page:
    - "Recognizing that many of the children and families referred to our services are experiencing the effects of institutionalized and systemic discrimination, racism, and marginalization, Seneca strives to recruit and retain a workforce that is reflective of the communities we serve. . . . ." Defs.' Mot. Ex. A, at 3; Galyean Sturtevant Decl. Ex. B.
- On the page with statements as to the value of diversity:
    - "All Black Lives Matter" and "Black employees must experience an inclusive workplace culture where their lived experience is valued and sought to inform practices and program services." Defs.' Mot. Ex. A, at 3; Galyean Sturtevant Decl. Ex. A.
    - A pledge to advocate for "the rights of youth and families of color against racial discrimination experienced within systems of care." Defs.' Mot. Ex. A, at 3; Galyean Sturtevant Decl. Ex. A.

B. Seneca's work is critical to the functioning of the Court-ordered Agreement.

The 30 Seneca caseworkers funded by the *Ms. L.* contract are the key point of connection between the separated families and nearly every benefit under the Settlement. *See* Galyean Sturtevant Decl. ¶ 3–5; Second Suppl. Kribs Decl. ¶¶ 10–15; 22–23. Help accessing mental health care, housing assistance, and medical copayment assistance are all conducted through Seneca. Galyean Sturtevant Decl. ¶ 5; Second Suppl. Kribs Decl. ¶¶ 10, 14–15. Hundreds of legal referrals to Acacia are done through Seneca. Suppl. Decl. of Sara Van Hofwegen ¶ 9 (Apr. 28, 2025), ECF No. 766-2; Second Suppl. Kribs Decl. ¶¶ 11–12. Even the fundamental precursor to accessing Settlement benefits—learning that the Settlement exists and learning about rights to any benefits—also falls on Seneca's plate, as it conducts outreach to class members,

5

18cv00428

including by subcontracting to search for and notify class members abroad.  Galyean Sturtevant Decl. ¶ 4.

Seneca has, to date, helped thousands of families through:

- Outreach efforts to 5,739 families, including through its contractor, Justice in Motion, which searches for families abroad;

- Housing assistance and referrals for 855 families;

- Behavioral health services for 1,433 individuals eligible under the Settlement, including close family members of class members who were traumatized by the separation;

- Administering the medical co-payments benefits, including 566 co-payments at federally qualified health centers;

- Legal services referrals for more than 472 families; and

- Referrals for food insecurity for 308 families, whose needs led to a total of 669 referrals.[3]

*Id.* ¶ 5.

### C. Defendants made a unilateral, unfounded decision to not comply with the Agreement.

In the months before Defendants ended the Seneca contract, officials did not tell class counsel they were not going to renew Seneca's contract and refused to inform Seneca itself whether they intended to renew the contract at all, even though the Settlement Agreement remained in effect and two option years remained on the contract.  Balakrishnan Decl. ¶¶ 2–3; Galyean Sturtevant Decl. ¶¶ 16–18.  On more than eleven occasions, Seneca officials asked Defendants about contract renewal.  G alyean Sturtevant Decl. ¶ 14.  Even when Seneca told government officials that that it

---

[3] The total referrals are higher than the number of families served because some families experienced new hardships after a referral had been made and thus required additional referrals.  Galyean Sturtevant Decl. ¶ 5(e).

18cv00428

would need to make plans to wind the program down to prepare for potential layoffs and severance for staff, government officials still did not tell Seneca whether they would renew. *Id.* ¶ 16 & Ex. C, Tab 1.  Seneca even offered to continue the contract period at no additional cost on three separate occasions—continuing their work using existing funds while a contract renewal was considered.  *Id.* ¶ 16 & Exs. C–D.  To all these inquiries, Seneca received no substantive response.  *Id.*

In these same months, Defendants stopped implementing other aspects of the Settlement, including:

- paying the independent adjudicator appointed by the Court to decide any disputes about eligibility for the Class.  Joint Status Rep. at 3 (June 25, 2025), ECF No. 800.

- Fully reimbursing expenditures by the International Organization for Migration, its contractor to assist families abroad with reunification and parole to the United States.  *Id.*

- And funding required legal services through the Acacia contract, an action which the Court held to be a breach of the Settlement.  Order Granting Pls.' Renewed Mot. Enforce Settlement.

In support of Plaintiffs' Supplemental Motion to Enforce as to the legal services provisions, Seneca submitted an affidavit on May 23 to apprise the Court that it appeared Defendants would not renew the Seneca contract, thus interrupting key Settlement services, including Seneca's work making many legal referrals.  Muñoz-Morris Decl. ¶¶ 12–25.  Notably, in its briefing filed the same day, Defendants cited the contract between HHS and Seneca as evidence of their compliance with the Settlement's requirements.  ECF No. 782, Section II (noting Seneca's tasks of "ensur[ing] that *Ms. L.* Settlement Class members [and family members] are aware of legal services," as well as conducting "an initial assessment and service plan" for a family's needs, and "coordinat[ing] referrals to identified, needed local services . . . .").

18cv00428

On May 27, while Plaintiffs' legal-services motion was still pending, Defendants proposed a renewal of the Seneca contract, but only for a four-month period. Galyean Sturtevant Decl. ¶ 17 & Ex. C, Tab 5. Previous renewals had been for at least a year, and two option years remained on the on the Seneca contract. *Id.* ¶ 17. Despite significant concerns about a four-month renewal—for one, such a period makes it significantly harder to attract and retain employees—Seneca signed the contract extension that day. *Id.* ¶ 17 & Ex. E. Seneca also immediately sent the signed contract back to Defendants, as Defendants had requested. *Id.* ¶ 18 & Ex. C, Tab 5. A government contracting officer responded, telling Seneca that Defendants would send back a copy of the renewal contract as soon as it was countersigned. *Id.* ¶ 18 & Ex. C, Tab 5.

At the June 4 hearing on legal services, the Court informed the parties of its tentative ruling that Defendants would be found in breach of the Settlement Agreement as to legal services. In the last two weeks before the Seneca contract would expire, Seneca inquired five times about the renewal. *Id.* ¶ 18 & Ex. C, Tab 5. At some point not specified by Defendants' declarant, DHS declined to provide funding for the Seneca contract. Goodger Decl. ¶ 14.

Seneca learned of the DHS referral letter to the Department of Labor by reading the Rule 60(b) filing to this Court. Galyean Sturtevant Decl. ¶ 19. No government official ever communicated to Seneca any concerns contained in that referral letter. *Id.*

After the contract ended on June 9, and after Defendants' Rule 60(b) filing, Seneca wrote to its contracting officers on June 11 to notify them that it was now aware of the allegations in the 60(b) filing, that it was not and had not been in violation of any antidiscrimination laws, and that Seneca decided it could not further pursue a future contract with Defendants. *Id.* ¶ 21 & Ex. C, Tab 5. Seneca sent that e-mail because when Defendants offered a renewal on May 27, two weeks before the contract's expiration, Defendants offered only a four-month contract, and Seneca understood that

18cv00428

any contract going forward would only provide short-term assurance that Seneca workers would have jobs. *Id.* ¶ 21. Such a period adds uncertainty and difficulty to retaining caseworkers and hinders any effort to run a stable and effective program. *Id.* And it would be particularly difficult to restart services on such a timeline. *Id.*

Seneca recently reaffirmed to Defendants that it would like to continue to work with families under a contract of suitable duration and retracted its June 11 e-mail. *Id.* ¶ 22 & Ex. C, Tab 5. In acknowledgment, the Head of Contracting Activity at SAMSHA stated: "Seneca is not or has not been in violation of federal antidiscrimination laws." *Id.* ¶ 22 & Ex. C, Tab 5. Seneca holds one other direct federal contract, a grant to perform research. *Id.* ¶ 21. Only Seneca's *Ms. L.* contract has been referred for possible investigation of Seneca's diversity and equity practices. *Id.* No concerns have been raised by any federal government agency as to any of the language on Seneca's website or allegations of discrimination in Seneca's work. *Id.*

It is far from clear that DHS's referral has led or will lead to any investigation of Seneca, as explained in a declaration by Jenny Yang, former director of OFCCP. *See* Yang Decl. Ms. Yang explains that none of the allegations in the referral letter constitute "specific evidence of an potential violation" of anti-discrimination laws sufficient to trigger an OFCCP investigation; OFCCP has been ordered to cease all investigations as a result of a January 21, 2025 executive order;[4] and the January 21 executive order rescinded an executive order that, since 1965, has provided authority for OFCCP to conduct investigations into alleged discrimination, thus leaving no current basis for an investigation by the agency. *Id.* ¶¶ 4–6, 8.[5]

---

[4] *See* Exec. Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025).

[5] OFCCP is also in the process of cutting as much as 90 percent of its staff, and the Department of Labor has proposed dissolving OFCCP as well. U.S. Dep't of Lab., Mem., Reorganization of the Office of Federal Contract Compliance Programs (Feb. 25, 2025); U.S. Dep't of Lab., Fiscal Year 2026 Dep't of Lab. Budget in Brief, https://www.dol.gov/sites/dolgov/files/general/budget/2026/FY2026BIB.pdf.

9

18cv00428

**ARGUMENT**

Defendants' request for relief should be rejected.  Defendants have not met their "heavy burden" to show changed circumstances that would justify relief under Rule 60(b)(5); nor have they demonstrated "extraordinary circumstances" to justify relief under Rule 60(b)(6).  Defendants appear to have manufactured an excuse to breach the terms of the Settlement Agreement and ask the Court to excuse that breach, lift Defendants' Settlement obligations, and let separated families go without the Settlement's core services.  Moreover, even if there were any legitimate basis for not renewing Seneca's contract, Defendants at no point prior to their motion took steps to explore alternatives to minimize harm to class members—including conferring with Plaintiffs' counsel to explore any alternatives to simply ending access to most Settlement services.  Plaintiffs are concurrently filing a motion to enforce the Agreement to seek to restore the Seneca contract for at least one year. *See* Pls.' Mot. Enforce Settlement (June 30, 2025), ECF No. 806.

The terms of the Settlement Agreement must also be extended.  Even if Defendants' request for relief is denied, and the Seneca contract is reinstated, services have already been interrupted, and Seneca will require time to restart its work.  And if Defendants' request is granted, the new contracting process is expected to take at a minimum four and a half months, and likely longer.  *See* Goodger Decl. ¶ 19–20 (admitting to "historical funding coordination challenges between DHS and Department of Justice" making the "anticipated timeframe" "subject to potential extension").  In either instance, the terms of the Agreement must be extended to avoid prejudice to class members and their families.

**I.  Defendants Have Not Met the Requirements of Rule 60(b)**

Defendants cannot meet their burden for relief under either Rules 60(b)(5) or (6).  Rule 60(b)(5) can provide relief from a judgment that is no longer equitable when there is "a significant change in facts or law," and the revision is "suitably tailored to

10

the changed circumstance." *Rufo v. Inmates of Suffolk Co.*, 502 U.S. 367, 383 (1992). Where the movant consented to the order, they generally cannot rely on circumstances anticipated at the time of the order and bear a "heavy burden" to show grounds for relief. *Id.* at 385. Rule 60(b)(5) requires the Court to "take all the circumstances into account," *Bellevue Manor Associates v. U.S.*, 165 F.3d 1249, 1256 (9th Cir. 1999), including the public interest and the judiciary's interest in the finality of judgments. *Id.* at 1253, 1257; *S.E.C. v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001).

Rule 60(b)(6) authorizes a court to relieve a party from a final judgment or order for "any other reason that justifies relief." The "catch-all" provision "does not apply to situations covered by any of the other reasons set forth in Rule 60." *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1217 (9th Cir. 2024) (cleaned up). A movant is required "to show 'extraordinary circumstances'" justifying relief. *Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022).

The requirements of Rule 60(b)(5) are not met. There are no new facts to warrant noncompliance with the Agreement. The fewer than 100 words on the website that DHS believes to warrant an investigation were present long before Seneca was awarded the governing contract under the Settlement Agreement. Galyean Sturtevant Decl. ¶¶ 9–11 & Exs. A–B. There is no evidence that an investigation has begun, and certainly no conclusion that Seneca has violated federal law or that its contract should be cancelled. Indeed, Seneca's point of contact at the agency administering its contract told Seneca it "is not or has not been in violation of federal antidiscrimination laws." *Id.* ¶ 22.

Nor do Defendants point to a change of law that necessitates relief from the Agreement. At most, there appears to be a change in the manner in which the Executive branch interprets civil rights law. Defs.' Mot. 1, 7 (citing Executive Order 14151 and arguing that "new policy insights, coupled with existing civil rights laws," constitute "changed circumstances"). But that event—the executive order—occurred

more than five months ago.  Exec. Order 14151, 90 Fed. Reg. 8339 (Jan. 29, 2025).

And even so, a party's unilateral decision to change its interpretation of law is not a

new legal development that would warrant relief.  *See Flores v. Rosen*, 984 F.3d 720,

741 (9th Cir. 2020) ("We reject the notion that the executive branch of the

Government can unilaterally create the change in law that it then offers as the reason it

should be excused from compliance with a consent decree.") (cleaned up).

Defendants do not even attempt to argue that their proposed relief—which

would deprive Settlement's beneficiaries of necessary services for months while the

Defendants re-solicit a new services contract—is "narrowly tailored to resolve the

problems created by the change in circumstances." *Rufo*, 502 U.S. at 392. Defendants

claim, without explanation, that this "is the most appropriate course of action to

ensure compliance with statutory civil rights laws," Defs.' Mot. 4, but offer no

examples of any efforts they have made to notify Seneca,[6] to confer with Class

Counsel to explore any solutions, or to otherwise mitigate the harm to the Settlement

Agreement.

Defendants' Rule 60(b)(6) argument fails for two reasons.  As an initial matter,

this rule does not apply here because Rule 60(b)(6) "does not apply to situations

covered by any of the other reasons set forth in Rule 60," and the reasons Defendants

provide in support of their motion are already enumerated within Rule 60(b).

*Marroquin*, 112 F.4th at 1217.  The gravamen of Defendants' argument is that

applying certain provisions of the Settlement "prospectively is no longer equitable" by

based on factual allegations of racial discrimination and "new policy insights."  Defs.'

Mot. 6–7.  Because this is an argument that sounds in Rule 60(b)(5), relief under Rule

---

[6] *See, e.g.*, 60 C.F.R. § 1.20 (setting forth procedures for compliance evaluations and, "where deficiencies are found" in such an evaluation," measures of conciliation and persuasion to obtain compliance); *id.* § 1.33 (setting forth procedures for notice and recommendations for corrective actions where a compliance evaluation "indicates a violation").

18cv00428

60(b)(6) is not available. *See U.S. v. Turner*, No. 3:13-cv-1827, 2022 WL 1570741, at *3 (S.D. Cal. May 17, 2022) (Rule 60(b)(6) "inapplicable" where the movant "appropriately argued" for equitable relief under Rule(b)(5)).

Defendants have also failed to establish the "exceptional or extraordinary circumstances" required for Rule 60(b)(6). Relief under Rule 60(b)(6) is strictly reserved for exceptional circumstances. *See Buck v. Davis*, 580 U.S. 100, 123 (2017) (relief from dismissal of procedurally-barred habeas petition warranted where jury may have imposed death sentence based in part on a defendant's race). Courts have found such "extraordinary circumstances" where there is genuine injustice or unforeseen hardship, not scenarios that proper diligence could have averted. *See, e.g.*, *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025) (noting that "plaintiffs' series of deliberate choices not to cure the deficiencies identified in their pleadings" weighed against a finding exceptional circumstances); *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 469 (9th Cir. 2023) (post-judgment change in interpretation of the law was "hardly extraordinary" but is "all the less extraordinary where a party has displayed a lack of diligence") (cleaned up); *Negrete v. Bleau* (*In re Negrete*), 183 B.R. 195, 197 (B.A.P. 9th Cir. 1995) (no extraordinary circumstances in part because the motion was untimely and all of the movant's evidence was clearly available at the time of the judgment). Defendants' predicament stems from their own failure to act, not from any truly extraordinary event.

Mere changes in administrative policy or law, standing alone, do not satisfy the standard for extraordinary circumstances. *See, e.g.*, *BLOM Bank Sal*, 145 S. Ct. at 1619 (2025) ("[T]he Second Circuit's clarification of the test for aiding-and-abetting liability did not constitute extraordinary circumstances. . . ."); *Hewitt*, 68 F.4th at 468. Defendants rely on *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019), but that case only underscores the lack of extraordinary circumstances here. In *Henson*, a retroactive change in Supreme Court precedent stripped the plaintiffs of a

18cv00428

right to appellate review and altered the intended effect of the parties' agreement, an outcome outside of the plaintiffs' control. *See id.* at 441–42, 447, 449. Here, the circumstances are of Defendants' own manufacture.

Defendants' motion is also untimely. A motion under either Rule 60(b)(5) or (6) must also be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). To determine "whether a party's delay in filing a Rule 60(b) motion was reasonable," the Ninth Circuit considers "the party's ability to learn earlier of the grounds relied upon, the reason for the delay, the parties' interests in the finality of the judgment, and any prejudice caused to parties by the delay." *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020). If Defendants truly had a concern that Seneca was violating civil rights law based on facts in their possession when they contracted with Seneca, they had *years* to raise such a concern. And if Defendants truly believed a change in the Executive's interpretation of federal law required the investigation, they had over five months to notify Seneca and class counsel and start a contracting process without a break in services. Instead, Defendants ignored Seneca's and class counsel's requests for clarification of the contract renewal. *See supra.* Defendants then, on the eve of the contract's expiration, referred the contract for investigation and declared themselves unable to meet the Agreement's requirements for a minimum of four and a half months. Defendants have offered no reason for their delay, and the prejudice to Plaintiffs is severe. Due to the Defendants' delay, the *Ms. L.* class and family members are and will continue to be unable to access services that the parties have "agree[d] are necessary to facilitate successful reunifications and/or to prevent any ongoing harm caused by the initial separation." Settlement § IV.B.1; Second Suppl. Kribs Decl. ¶¶ 22–23.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Rule 60(b)

14

18cv00428

Motion.

DATED: June 30, 2025                    Respectfully submitted,


                                        /s/ Lee Gelernt
                                        Lee Gelernt*
                                        Daniel A. Galindo (SBN 292854)
                                        Anand Balakrishnan*
                                        Judy Rabinovitz*
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        125 Broad St., 18th Floor
                                        New York, NY 10004
                                        T:  (212) 549-2660
                                        *lgelernt@aclu.org*
                                        *dgalindo@aclu.org*
                                        *abalakrishnan@aclu.org*
                                        *jrabinovitz@aclu.org*

                                        Stephen B. Kang (SBN 292280)
                                        Spencer E. Amdur (SBN 320069)
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        425 California Street, 7th Floor
                                        San Francisco, CA 94104
                                        T:  (415) 343-0783
                                        *skang@aclu.org*
                                        *samdur@aclu.org*

                                        *Attorneys for Ms. L Petitioners-Plaintiffs*
                                        *Admitted Pro Hac Vice*

15

18cv00428

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt