BRETT A. SHUMATE
Assistant Attorney General
Civil Division
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DANIEL SCHUTRUM-BOWARD
Trial Attorney

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 919-1670
    Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., | Case No. 3:18-cv-00428-DMS-MDD |
| *Plaintiffs*, | |
| v. | Date Filed: July 3, 2025 |
| U.S. Immigration and Customs Enforcement (ICE), et al. | **DEFENDANTS' MOTION UNDER RULE 60(b) FOR TEMPORARY RELIEF FROM COURT ORDER REQUIRING REINSTATEMENT OF ACACIA TASK ORDER** |
| *Defendants*. | Hon. Dana M. Sabraw<br>Courtroom: 13A |

Pursuant to Federal Rule of Civil Procedure 60(b), Defendants move for relief from the Court's Order of June 10, 2025, Dkt. 795, directing Defendants to reinstate the expired Task Order with Acacia Center for Justice (Acacia) previously in place to provide the legal services required under the *Ms. L.* Settlement Agreement. Specifically, Defendants request that the Court remove the requirement that Defendants reinstate the prior Acacia Task Order and instead permit Defendants to contract with one or more alternative third-party contractors.

## BACKGROUND

On December 1, 2023, the parties jointly submitted the *Ms. L.* Settlement Agreement to this Court for final approval, pursuant to Federal Rule of Civil Procedure 23. Dkt. 721. On December 11, 2023, the Court approved the Settlement Agreement and certified a class for settlement purposes between Plaintiffs and Defendants, including the U.S. Department of Homeland Security (DHS), U.S. Department of Justice (DOJ), and U.S. Department of Health and Human Services (HHS). Dkt. 727. In its Order, the Court dismissed Plaintiffs' claims with prejudice, subject to the terms of the Settlement Agreement, and retained jurisdiction for specified purposes, including enforcement of the Settlement Agreement's terms. *Id*. at 2; *Ms. L.* Settlement Agreement, Dkt. 721-1, § VII.D, at 43 ("The Court shall have the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement."). On the same day, the Court entered judgment and closed the case. Dkt. 730.

The Executive Office for Immigration Review (EOIR), a component of DOJ, entered into a contract with Acacia to provide the legal services required under the *Ms. L.* Settlement Agreement. *See* Declaration of Sirce Owen, Exhibit A ¶ 4. On April 30, 2025, the Acacia Task Order expired. *Id.* ¶ 6. On May 1, 2025, EOIR launched its Federalized

Program to provide the required legal services. *Id.* ¶ 7. On April 23, 2025, Plaintiffs filed a motion to enforce the provisions of the Settlement Agreement regarding legal services, which Defendants opposed. Dkts. 762, 771. The parties submitted additional briefing and status reports. *See* Dkts. 774, 782, 783, 786, 787. On June 10, 2025, the Court issued an Order finding that Defendants had breached sections IV.B.2.c.i., IV.B.2.c.ii., and IV.B.2.c.iii of the Settlement Agreement and directed Defendants to reinstate the Acacia Task Order. *See* Dkt. 795. On June 27, 2025, the Court held a status conference, during which Defendants stated that they planned to file the instant motion.

Acacia charged the Government a significant amount of money for one year of services. Ex. A ¶ 3. Because the Government has a duty to prudently use the public's money, EOIR will pursue a new procurement with open competition to contract with one or more independent contractors at competitive pricing, following the standard procurement process, to provide the individualized services that this Court determined the Government cannot provide without an independent contractor. Ex. A ¶ 12. During this time, Defendants likely will be unable to comply with sections IV.B.2.c.i., IV.B.2.c.ii., and IV.B.2.c.iii of the *Ms. L.* Settlement Agreement.[1] Thus, for the following reasons, Defendants request temporary relief.

---

[1] The Court has requested Defendants' position on whether the Court has authority to extend the term of the Settlement Agreement. Dkt. 803 at 2. Defendants submit that the Court lacks the authority to extend or otherwise modify any of the terms in the Settlement Agreement *sua sponte*. The Court did "retain[ ] jurisdiction to enforce the Settlement Agreement's terms," but enforcement does not equate to *sua sponte* modification of terms previously negotiated and agreed upon by the parties at arm's length. ECF No. 721-1 at 43. Further, the Court retained jurisdiction to "review any future modifications to the Settlement Agreement that the parties might enter into *upon mutual agreement*," but Defendants have not agreed to change any of the terms in the Settlement Agreement. *Id.* (emphasis added). Finally, Plaintiffs have not formally sought modification of the Settlement Agreement through proper motion under the Federal Rules of Civil Procedure.

## I. Legal Standard.

Under Federal Rule of Civil Procedure 60(b)(5), a court "may relieve a party . . . from a final judgment, order, or proceeding" when, *inter alia*, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Supreme Court has explained that the disjunctive language of Rule 60(b)(5) clarifies that each of these grounds for relief is "independently sufficient." *Horne v. Flores*, 557 U.S. 433, 454 (2009). The "equitable" clause of Rule 60(b)(5) allows a court to modify or vacate an order if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Id.* at 447 (cleaned up). Where the government seeks relief from an "institutional-reform" decree, courts must apply a "flexible approach" to "ensure that responsibility for discharging the [government's] obligations is returned promptly to the [government] and its officials when the circumstances warrant." *Id.* at 448–50 (internal quotation marks and citation omitted).

A flexible approach is necessary for several reasons. First, "the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment." *Id.* at 447–48. Second, these types of decrees often involve core-government responsibilities and raise separation-of-powers concerns. *Id.* at 448. Last, "public officials sometimes consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law." *Id.* Consequently, future officials "inherit overbroad or outdated consent decrees" that unduly constrain "their ability to fulfill their duties as democratically-elected officials." *Id.* at 449.

Once a party carries its burden to show that changed circumstances warrant relief from a consent decree, "a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne*, 557 U.S. at 447 (internal quotations and citation omitted). Rule 60(b)(5) permits modification of an order if it is "suitably tailored" to resolve problems created by changed circumstances. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). It permits district courts to provide relief from judicial orders "whenever such action is appropriate to accomplish justice." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotations and citation omitted). Relief under the rule is available only in "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017). But "[i]n determining whether extraordinary circumstances are present, a court may consider a wide range of factors," such as "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* at 123 (internal quotations and citation omitted).

## II. Relief From the Court's Order Directing Defendants to Reinstate the Acacia Task Order Is Warranted Under Rule 60(b)(5) and (b)(6).

Granting relief to Defendants from the Order requiring reinstatement of the Acacia Task Order is necessary because implementing that Order is not equitable. *See* Fed. R. Civ. P. 60(b)(5). Indeed, "a significant change" in "factual conditions" has rendered contracting with Acacia "detrimental to the public interest," as the first year of the Task Order demonstrated an unfavorable cost-to-output ratio at the taxpayer's expense. *Horne*, 557 U.S. at 447. Between May 1, 2024, and April 30, 2025, Acacia charged the

Government $4,605,843.86. Ex. A ¶ 3. Acacia served a limited number of registered Class members and Qualifying Additional Family Members. *Id.* ¶ 4.

Defendants have a duty to ensure they responsibly spend government funds. *See Horne*, 557 U.S. at 447–48 ("[T]he passage of time frequently brings about changed circumstances" that "warrant reexamination of the original judgment."). The Court should grant relief from its Order so not to constrain the ability of current democratically elected officials to "fulfill their dut[y]" to protect the fisc by entering into contracts that are fair and reasonable to provide the required services. *Id.* at 449. Indeed, although the parties previously negotiated the cost of services, the Government did not commit to exercising the option year or to pay any specific amount to Acacia beyond the now-expired Task Order. Therefore, circumstances warrant relief from compliance with the requirement that Defendants reinstate the Acacia Task Order, in order to allow the new Administration to ensure fiscal responsibility in providing the required legal services.

Alternatively, "other reason[s]" also justify relief in order to "accomplish justice." Fed. R. Civ. P. 60(b)(6); *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotations and citation omitted). Certainly, potentially uneconomical spending of public funds is unjust and should not be required. As noted, when "determining whether extraordinary circumstances are present, a court may consider a wide range of factors," such as the "risk of undermining the public's confidence in the judicial process." *Buck*, 580 U.S. at 123 (internal quotations and citation omitted). If the judicial process were to require the Government to use a specific vendor instead of allowing it to participate in an open competitive process, the public's confidence may be compromised. *Id.*

Moreover, to resume services with Acacia under the existing Indefinite Delivery Indefinite Quantity (IDIQ) contract, EOIR would need to enter into a new Task Order with Acacia. This would require EOIR and Acacia to agree on a Statement of Work and the cost of services for a new Task Order period. To begin this process, EOIR would prepare an updated Statement of Work to specify the services that EOIR would need from Acacia. EOIR would then develop an Independent Government Cost Estimate to request funding for the contract. EOIR would then send the Statement of Work to Acacia and request a price proposal for the cost of services. After receiving Acacia's price proposal, EOIR would coordinate with the Department of Justice's Justice Management Division (JMD) to negotiate the terms of Statement of Work and the cost of services. If EOIR and Acacia can reach an agreement on the Statement of Work and the cost of services, JMD would issue the award to Acacia. EOIR cannot specify the exact length of time it would take to issue a new Task Order but estimates that it may take approximately forty-five (45) business days. Nevertheless, Defendants request relief from the requirement that they re-engage with Acacia and instead request the ability to pursue the standard procurement process with open competition.

**III.  The Relief Requested Is Appropriately Tailored to the Specific Circumstances.**

Defendants request that the Court remove the requirement that Defendants reinstate the prior Acacia Task Order and instead permit Defendants to pursue a standard procurement process. The relief requested is appropriately tailored to the specific circumstances, as Defendants do not seek relief from the Court's determination that an independent contractor must provide said services but rather only seek relief in order to enter into a contract that is fair and reasonable. *Rufo*, 502 U.S. at 383.

# CONCLUSION

For these reasons and others, the Court should grant this Motion and order the narrowly tailored relief that Defendants request.

Dated: July 3, 2025.                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

*/s/ Daniel Schutrum-Boward*
DANIEL SCHUTRUM-BOWARD
Trial Attorney
Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 919-1670
Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants