BRETT A. SHUMATE
Assistant Attorney General
Civil Division
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DANIEL SCHUTRUM-BOWARD
Trial Attorney

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 919-1670
    Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement (ICE), et al. <br><br> *Defendants*. | Case No. 3:18-cv-00428-DMS-MDD <br><br> Date Filed: July 8, 2025 <br> Hearing Date: July 17, 2025 <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RELIEF FROM COURT ORDER AS TO BEHAVIORAL HEALTH, MEDICAL, AND OUTREACH SERVICES TO SETTLEMENT CLASS MEMBERS** <br><br> Hon. Dana M. Sabraw <br> Courtroom: 13A |

# INTRODUCTION

Defendants request that the Court temporarily suspend the provisions in the Settlement Agreement pertaining to behavioral health services, medical services, and outreach to *Ms. L.* Settlement Class members, until Defendants contract with a new contractor that is clearly in compliance with all relevant laws. *See* Settlement Agreement, Dkt. 721-1 § IV.B.2. Although Seneca Family of Agencies (Seneca) previously provided said services, the U.S. Department of Homeland Security (DHS) recently determined that Seneca likely violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as the terms of its federal contract prohibiting racial discrimination. HHSAR 352.237-74; *see also* Dkt. 792, Ex. A at 2. In response, on June 9, 2025, DHS referred Seneca to the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP). Then on June 10, 2025, DHS referred Seneca to the Equal Employment Opportunity Commission (EEOC) for an investigation. Ex. A.[1] The Government must ensure that its contractors comply with the law. Dkt. 792, Ex. B ¶ 14. Accordingly, Defendants respectfully request temporary relief from the requirement that it provide those services while it engages in the re-solicitation process to select a new contractor.

# ARGUMENT

Federal Rule of Civil Procedure 60(b)(5) allows a court to modify an order if "a significant change either in factual conditions or in law renders continued enforcement

---

[1] A recent legal change now makes the EEOC the appropriate investigative body.

1

3:18-cv-00428

detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quotation modified). Courts must apply a "flexible approach" when the government seeks relief from "institutional-reform" decrees, as "public officials sometimes consent to . . . decrees that go well beyond what is required by federal law," thereby binding future officials to "the policy preferences of their predecessors"—and potentially "'improperly depriv[ing] future officials of their designated legislative and executive powers.'" *Id.* at 448–49 (quoting *Frew v. Hawkins*, 540 U.S. 431, 441 (2004)).

Defendants have met their burden for relief under Rule 60(b)(5). The party seeking relief under Rule 60(b)(5) on the grounds that applying the judgment or order prospectively is no longer equitable bears the burden of establishing that changed circumstances warrant relief. *Horne*, 557 U.S. at 447. Rule 60(b)(5) serves a particular important function in institutional reform litigation, where injunctions may remain in force for many years, and the passage of time frequently brings about changed circumstances, including changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights that warrant reexamination of the original judgment. *Id.* Further, the dynamics of institutional reform litigation differ from those in other cases in that public officials sometimes consent to or refrain from vigorously opposing decrees that go well beyond federal law. *Id.* at 448. Such decrees may bind officials to the policy preferences of their predecessor and may thereby "deprive future officials of their designated legislative and executive powers." *Id.* at 449. Thus, courts

must take a flexible approach to Rule 60(b)(5) motions addressing such decrees. *Id.* at 490 (citation omitted). A critical question in the inquiry is whether the objective of the order have been achieved. *Id.* at 450.

Plaintiffs have shown that Defendants have made significant progress. In their opposition to Defendants' motion, Plaintiffs cite to Seneca's achievements, as a federal government contractor, in facilitating Defendants' meeting of their obligation under the *Ms. L.* Settlement Agreement. *See* Dkt No. 805 at 7 (listing assistance of "thousands of families," including "outreach efforts to 5,739 families," including families abroad, housing assistance and referrals for 855 families, behavioral health services for 1,433 individuals, and medical co-payments benefits, including 566 co-payments at federally qualified health centers). Clearly, Defendants have put considerable resources into and made significant progress in meeting their obligations under the *Ms. L.* Settlement Agreement, Dkt. 721-1, §§ IV.B.2.a (behavioral health services), IV.B.2.b (assistance with certain medical costs), and VI.A.2.iv (outreach).[2]

Recent factual developments now compel Defendants to review the contract and refer the contractor for investigation based on DHS's determination that the contractor likely engages in racial discrimination. The referral to EEOC is far from pretextual, considering the work that the contractor has done, to date, at the behest of Defendants, to

---

[2] Defendants note that Seneca did not provide the housing support required under § IV.B.2.d of the Settlement Agreement, so housing support was not affected by the end of the Seneca contract and continues to be available.

3

3:18-cv-00428

meet Defendants' obligations under the *Ms. L.* Settlement. The objectives of the *Ms. L.* Settlement Agreement have not been achieved, but Defendants have made significant progress towards achieving them and will continue to do so once a new contract is awarded. Defendants' halting of their work towards meeting their obligations under §§ IV.B.2.a, IV.B.2.b, and VI.A.2.iv of the Settlement Agreement, while the U.S. Department of Health and Human Services (HHS) resolicits the contract, will allow Defendants to resume implementing these provisions of the Settlement Agreement and increase the chances that Defendants select a contractor or contractors that comply with the law.

Moreover, when the parties entered into the *Ms. L.* Settlement Agreement, which was in December 2023, Defendants were not aware of and could not have reasonably foreseen the issuance of Executive Order 14151—on January 20, 2025—and the subsequent time-consuming process necessary to review all DHS contracts for violations of the Executive Order. Indeed, in Executive Order 14151, the President directs "[e]ach agency, department, or commission head" to, *inter alia*, "terminate, to the maximum extent allowed by law . . . all 'equity action plans,' 'equity' actions, initiatives, or programs, [and] *'equity-related' grants or contracts . . .*'" Exec. Order 14151 § 2(b)(1), 90 Fed. Reg. 8339 (Jan. 29, 2025) (emphasis added). The existence of Seneca's Diversity, Equity, and Inclusion (DEI) policy prior to January 20, 2025, is not indicative of whether current circumstances arising from this presidential directive were foreseeable. Instead,

1  the record shows that DHS took the reasonable measure of referring the matter to the

2  EEOC for investigation; the same day, Defendants sought temporary relief from the Court.

3        Plaintiffs assert that a party's decision to change its interpretation of law is not a

4  new legal development warranting relief.[3] Dkt. 805 at 13. However, Defendants' motion

5  is not based on a change in interpretation of law. The motion is due to Executive Order

6  14151 directing all agencies to review their contracts as well as DHS's discovery that

7  Seneca has potentially committed race-based violations of Title VII of the Civil Rights

8  Act of 1964, constituting a "significant change" in "factual conditions." *Horne*, 557 U.S.

9  at 447; Dkt. 792, Ex. A at 1–3. Indeed, racial equality is sacrosanct. The Government must

10 not be forced to condone or ignore potential violations of civil rights laws. *Horne*, 557

11 U.S. at 448–49 (discussing flexible approach considering effect of decree on executive

12 powers of future officials).

13       Moreover, the relief Defendants seek is "suitably tailored" to resolve problems

14 created by changed circumstances as required to show relief is warranted under Rule

---

[3]     Plaintiffs assert that *Henson v. Fidelity National Financial, Inc.*, supports their position because, in that case, Supreme Court precedent altered the effect of the parties' agreement, whereas here, according to Plaintiffs, Defendants manufactured the circumstances. Dkt. 805 at 14–15 (citing *Henson*, 943 F.3d 434, 441–42, 447, 449 (9th Cir. 2019)). However, in this case, there is a change in interpretation of existing civil rights law that possibly renders Seneca disqualified from providing services in this case.

60(b)(5).[4] *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). Indeed, Defendants do not ask to be relieved completely of their obligations under § IV.B.2 of the Settlement Agreement; instead, DHS suspects that Seneca has violated civil rights laws, so seeking relief that would allow Defendants to locate a new, verifiably law-abiding vendor is certainly suitably tailored. *See* Dkt. 792-1 ¶¶ 15–16.

In the alternative, Defendants have met their burden to show relief under Rule 60(b)(6) is warranted.[5] Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief," but only in "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017). Nevertheless, "a court may consider a wide range of factors," such as "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* at 123 (internal quotations and citation omitted).

---

[4]     Plaintiffs mistakenly state that the relief sought must be "narrowly" tailored, Dkt. 805 at 13, quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 392 (1992). Defendants respectfully note that the standard is that the relief must be "suitably" tailored. *Id.* at 393 ("Under the flexible standard we adopt today, a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and *that the proposed modification is suitably tailored to the changed circumstance*.") (emphasis added).

[5]     Plaintiffs contend that Defendants' argument under Rule 60(b)(6) fails because it entails a situation covered by other sections of Rule 60(b). Defendants, however, do not intend to raise their argument under Rule 60(b)(6) *in addition to* their argument under Rule 60(b)(5) but rather *in the alternative*, assuming *arguendo* that Seneca's DEI policy and the referral of Seneca for a Title VII investigation do not constitute changed circumstances for the purposes of Rule 60(b)(5).

Plaintiffs argue that relief under Rule 60(b)(6) due to extraordinary circumstances is inappropriate, because Defendants could have avoided said circumstances through proper diligence. However, as explained below, Defendants did exercise proper diligence in identifying a potential anti-discrimination violation and referring Seneca for an investigation, in light of the number of contracts that government agencies must review pursuant to the Executive Order. Plaintiffs further assert that "mere changes in administrative policy or law, standing alone, do not satisfy the standard." Dkt. 805 at 14 (citing *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025)). Certainly, a suspected violation of a statute prohibiting racial discrimination is not a "mere" change in policy or law. Dkt. 805 at 14.

Finally, Plaintiffs contend that Defendants did not file their Rule 60(b) motion within a reasonable time, as required by Rule 60(c)(1), because Executive Order 14151 was issued on January 20, 2025, and Defendants did not file the motion until June 10, 2025. Dkt. 805 at 15. However, this period of less than five (5) months is reasonable. As noted, in Executive Order 14151, the President directs "[e]ach agency, department, or commission head" to, *inter alia*, "terminate, to the maximum extent allowed by law . . . all 'equity action plans,' 'equity' actions, initiatives, or programs, [and] *'equity-related' grants or contracts* . . .'" Exec. Order 14151 § 2(b)(1) (emphasis added). DHS informs undersigned counsel that, since the issuance of the Executive Order on January 20, 2025,

DHS has been reviewing government contracts—of which there are many—to ensure compliance with the Executive Order.[6] The review of each contract is no small task.

Before January 20, 2025, DHS had not identified DEI policies as potentially violative of civil rights laws. The existence of a DEI policy on Seneca's website before January 2025, therefore, is not relevant to the timeliness of Defendants' Rule 60(b) motion. DHS identified Seneca's potentially discriminatory DEI policy and referred it for an investigation and Defendants promptly moved for temporary relief. Dkt. 792; *id.*, Ex. A at 1–3.[7]

---

[6] For context, in fiscal year 2024, DHS worked with 1,534 first-time businesses alone. *See also* DHS, *Office of the Chief Procurement Officer's Annual Report*, available at https://www.dhs.gov/publication/ocpo-annual-report (last visited Jun. 7, 2025).

[7] That on June 20, 2025, an employee of the U.S. Department of Health and Human Services (HHS) stated in an email to Seneca's general counsel, "In addition, to confirm again, that Seneca is not or has not been in violation of federal antidiscrimination laws," Dkt. 805-1, Ex. C, Tab 5 at 45, is not dispositive on whether Seneca engages in unlawful discrimination, despite Plaintiffs' suggestion. Dkt. 805 at 10. The HHS employee does not have the authority to determine whether an entity is in compliance with any law and, when her statement is read in context, it does not appear that she or HHS made that determination. Indeed, in the preceding email sent from Seneca's general counsel to the HHS employee, the general counsel stated: "As noted, *we do not believe* Seneca is now or ever has been in violation of federal antidiscrimination laws." Dkt. 805-1, Ex. C, Tab 5 at 46 (emphasis added). Therefore, it instead appears likely that the HHS employee merely acknowledged that the general counsel "confirmed again" Seneca's belief that it has not violated antidiscrimination laws. *Id.* at 45.

## CONCLUSION

For these reasons and others, the Court should grant Defendants' Motion and temporarily suspend the aforementioned provisions of the *Ms. L.* Settlement Agreement.

Dated: July 8, 2025.                     Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

*/s/ Daniel Schutrum-Boward*
DANIEL SCHUTRUM-BOWARD
Trial Attorney
Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 919-1670
Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants