Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al. <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG <br><br> Date Filed: July 10, 2025 <br><br> Hearing Date: July 17, 2025 <br><br> **REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING PROVISION OF SERVICES** |

## I. Plaintiffs have established that Defendants have breached the Settlement.

Defendants admit that they are in breach—"they will not be able to meet their obligations under sections IV.B.2.a and IV.B.2.b of the *Ms. L.* Settlement Agreement." Defs.' Opp'n Pls.' Mot. Enforce ("Defs.' Opp'n") at 3, ECF No. 812. Specifically, Defendants acknowledge that they entered a binding Settlement Agreement to provide certain behavioral health services, assistance with medical copayments and housing, and outreach to *Ms. L.* class members in the U.S. and abroad. Defs.' Opp'n at 1 ("Defendants already have acknowledged that they must engage a contractor to fulfill certain obligations under sections IV.B.2.a and IV.B.2.b of the *Ms. L.* Settlement Agreement."); Defs.' Reply ISO Rule 60(b) Mot. ("Defs.' Reply") at 3, ECF No. 811 (outreach obligation under Section VI.A.2.iv); Defs.' Rule 60(b) Mot. at 4, ECF No. 792 (housing assistance obligation under Section IV.B.2.d). And Defendants "agree that this support and services" available under the Settlement "are *necessary* to facilitate successful reunifications and/or to prevent any ongoing harm caused by the initial separation." Settlement § IV.B.1, ECF No. 721-1 (emphasis added). Defendants also concede that despite these obligations, they "currently are not assisting with copayments," that "the provision of . . . behavioral health services is temporarily unavailable," and that they are "halting . . . their work towards meeting their obligations under [Section] VI.A.2.iv," which requires that Defendants conduct outreach to *Ms. L.* class members to tell them about the Settlement. Defs.' Opp'n at 3–5; Defs.' Reply at 4. Defendants concede that they will not provide these services for at least four and a half months, and likely longer. Decl. of Brian Goodger ¶¶ 16, 19–20, ECF No. 792-2. In the same breath, Defendants assert that Plaintiffs have not shown an actual breach of the Settlement. Defs.' Opp'n at 5.[1] Defendants argue that Plaintiffs have not shown

---

[1] Defendants appear to argue, without authority, that in order to provide evidence of an "actual breach," and harm to individuals, Plaintiffs must submit individual declarations from affected class members. Defs.' Opp'n at 5.

1

that class members "will not receive the benefits to which they are entitled" and which, by Defendants' own admission, Defendants have stopped providing. *Id.* at 1, 3–5. These contentions are self-contradicting and make clear that Defendants are in breach.

## II. There is clear and ongoing harm to class members.

The harms to class members are clear from the record. Seneca has helped thousands of class and family members by providing outreach, case management services, behavioral health services, administering medical copayments, referring individuals for legal services, providing housing assistance and referrals, and making referrals for food insecurity. *See* Decl. of Leticia Galyean Sturtevant ¶ 5 (June 27, 2025), ECF No. 805-1; Second Suppl. Decl. of Kelly Kribs ¶ 4 (June 30, 2025), ECF No. 805-2. The Settlement Agreement reflects an understanding that class and family members will not be able to access services on their own, due to complexity and language barriers, which is why it requires a contractor to provide case management. Seneca and its contractors were the only providers connecting class members to these benefits, so now that Seneca's program has terminated, these services are either completely cut off, or in practical terms are inaccessible for class members who relied on Seneca to help them navigate benefits systems. *See* Decl. of Lyna Muñoz-Morris ¶ 24, ECF No. 783-2; Second Suppl. Kribs Decl. ¶¶ 23–24; Suppl. Galyean Sturtevant Decl. ¶ 2. As part of Seneca's contract, it reported how many class members it was assisting and sent those reports to the government. Suppl. Decl. of Galyean Sturtevant ¶ 3 (July 10, 2025). As of May 31, 2025, the end of the last complete monthly report:

- 485 class members were receiving ongoing case management that included connecting them to services;
- Seneca was reaching out to 537 class members, both to locate and inform them of the Settlement prior to class members registering to be eligible for Settlement services, and after registration to orient them to available services;

2

- 334 class members were receiving behavioral health therapy, including 148 class member children, 143 class member parents, and 43 additional qualifying family members;
- 209 class members were receiving assistance with medical copayments, including ongoing copayments to provide for essential prescriptions.

*Id.* ¶ 2.

All such services through Seneca have now ended. *Id.* Class members needing information about the Settlement through Seneca, ongoing therapy or to start therapy, and help paying for medical treatment and prescriptions, cannot access those services. *Id.*

Legal assistance under the Settlement was also in large part dependent on Seneca's work. It was through Seneca's caseworkers that many class members were referred for legal support services to help them apply for parole or re-parole, cancellation of removal proceedings, and other relief under the Settlement. *Id.* ¶ 5 (reporting that Seneca made legal referrals for over 472 families); Third Suppl. Decl. of Sara Van Hofwegen ¶ 7, ECF No. 783-7. Now that Seneca's program has terminated, these referrals for legal services have stopped. *See* Galyean Sturtevant Decl. ¶ 5; Second Suppl. Kribs Decl. ¶ 23. Prior declarations show that 442 class members have parole set to expire between May 2025 and July 2025. Second Suppl. Decl. of Anilú Chadwick ¶ 2, ECF No. 771-34. This number does not even include qualifying additional family members with upcoming parole expiration dates. *Id.* Without Seneca and Acacia's help, these 442 individuals have been cut off from legal assistance guaranteed under the Settlement. *Id.*; *see also* Order Granting Mot. Enforce at 12–13, 16 (June 10, 2025), ECF No. 795. And without promptly filing requests for re-parole and employment authorization, class members and their close family members will lose their ability to work to support themselves and their family and can be subject to detention and placed in removal proceedings. Second Suppl. Chadwick Decl. ¶ 4.

3

Defendants suggest that class members will not be harmed by any lapse in behavioral health services because each class member will still be able to receive a full three years' worth of behavioral health services once the services resume. Defs.' Opp'n at 4. The argument that class members traumatized by their separations can receive needed therapy at some later point downplays the importance of behavioral health care, which Defendants have agreed is "necessary" to "prevent any ongoing harm caused by the initial separation." Settlement § IV.B.1. *See generally* Geraldo Cadava, *What Therapists Treating Immigrants Hear*, the New Yorker (July 1, 2025), https://www.newyorker.com/news/the-lede/what-therapists-treating-immigrants-hear. Defendants also ignore that class members who are currently receiving therapy to help them heal from the trauma of their separation have been cut off from their treatment and from providers with whom they have built up trust. *See* Second Suppl. Kribs Decl. ¶ 24.

Defendants also claim that although they are not providing medical copayment assistance, class members can continue to receive health care at federally qualified health centers. Defs.' Opp'n at 4. But Seneca's case managers assisted class members by identifying those health centers, assisting class members in making appointments, and ensuring that class members were reimbursed for copayments. Second Suppl. Kribs Decl. ¶ 14. Class members have needed prescription medications and the need for medical critical appointments that, without assistance from Seneca, they will not be able to navigate, coordinate, or afford. *See* Suppl. Galyean Sturtevant Decl. ¶ 2 (describing end of services); Second Suppl. Kribs Decl. ¶ 25 (describing class member who could not get a refill on mediation for diabetes and high blood pressure without Seneca's assistance).

Lastly, Defendants' argument that housing support "was not affected by the end of the Seneca contract" ignores practical realities. *See* Defs.' Reply at 3 n.2. While Seneca did not itself provide housing services, Seneca's case managers were principally

responsible for connecting class members to the housing benefits Defendants offer. Second Suppl. Kribs Decl. ¶¶ 15, 24.

### III. Defendants have failed to establish a change in circumstances that justifies their breach.

Defendants have failed to establish that Seneca engaged in discrimination warranting relief from their Settlement obligations, even temporarily.

Defendants do not contest that a party's decision to change their interpretation of the law cannot justify Rule 60(b) relief. *See* Defs.' Reply at 5 ("However, Defendants' motion is not based on a change in interpretation of law."). But the only change in factual circumstances that they cite is the new Executive Order that Defendants admit is "a change in interpretation of existing civil rights law." *See id.* at 5 n.3.

Moreover, Defendants assert that under this change in law, they are required to "terminate, to the maximum extent allowed by law . . . equity-related" contracts. Defs.' Reply at 4 (quoting Exec. Order No. 14151 § 2(b)(1), 90 Fed. Reg. 8339 (Jan. 29, 2025)). But it is far from clear why Defendants claim the Seneca contract is an "equity-related . . . contract"—the contract is in fact a requirement of a binding Settlement Agreement. And given that Settlement Agreement carries obligations to provide settlement services, it is not "allowed by law" to stop providing those services.

Defendants do not contest Plaintiffs' showing that their bare-bones referral of Seneca to the Department of Labor's Office of Federal Contract Compliance Programs for investigation was unlikely to lead to an investigation, and that the language on Seneca's website that is the only basis for that referral has been publicly available for at least four and a half years. Instead, Defendants now point to an equally bare-bones letter referring Seneca to the Equal Employment Opportunity Commission ("EEOC") from June 10, 2025, that Defendants never mentioned in their initial Motion filed the

5

same day. *See* Defs.' Opp'n Ex. A, ECF No. 811-1.[2] Defendants fail to provide any authority, however, that an agency's letter referring a contractor to the EEOC, or even a pending EEOC complaint, could serve as the basis for revoking a contract or refusing to enter into a contract with that contractor, especially where the contract is part of a binding settlement. Moreover, federal regulations require federal agencies to provide notice and an opportunity for federal contractors to be heard before an agency can cancel a current contract or formally bar a contractor from future contracts.[3] Title VII sets forth a process for the EEOC to investigate and remedy complaints of discrimination. *See* 42 U.S.C. § 2000e-5. An EEOC Commissioner would need to first file a charge with the EEOC, which would then need to complete a confidential investigation. *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.11; 29 C.F.R. § 2000e-5; 29 C.F.R. § 1601.22.[4] If the EEOC found reasonable cause to believe discrimination exists, it would be required to try to resolve the charge through conference, conciliation, and persuasion. 42 U.S.C. § 2000e-5; 29 C.F.R. § 1601.24. If that was not possible, the EEOC would decide whether to file a lawsuit and would then have to prevail. 42 U.S.C. § 2000e-5(f), (g); 29 C.F.R. § 1601.27. Defendants provide no legal authority

---

[2] The EEOC referral letter does not raise any additional factual allegations but merely re-states Seneca's website language at issue in the referral letter to the Office of Federal Contract Compliance Programs. *Compare* Def.'s Rule 60(b) Mot. Ex. A, ECF No. 792-1 *with* Defs.' Opp'n Ex. A.

[3] *See e.g.*, 48 C.F.R. § 9.406-3; 2 C.F.R. § 180 *et seq*. Likewise, under the Fifth Amendment Due Process Clause, federal agencies may not *effectively* bar a contractor from future contracting without notice and an opportunity to be heard. *See Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 955–56 (D.C. Cir. 1980); *Com. Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 6 (D.C. Cir. 1998); *Afghan Yar Int'l Constr. Co. Ltd. v. U.S. Dept. of State*, No. 21-cv-1740, 2021 WL 3472275, at *6 (D.D.C. Aug. 6, 2021) ("[A] *de facto* debarment 'occurs when a contractor has, for all practical purposes, been suspended or blacklisted from working with a government agency.'" (quotation omitted)).

to say that on a cursory allegation alone, one that they themselves made, they must be allowed here to end services to class members.

Defendants also do not contest that they failed to take any steps to remedy the harm to class members and family members short of completely terminating services. *See* Defs.' Opp'n. Defendants never raised concerns about Seneca until the eleventh hour, nor have they ever answered at what point they claim to have had concerns about Seneca's website statements that were public for at least four and a half years. *See* Galyean Sturtevant Decl. ¶¶ 9–12. Defendants claim that they delayed raising their concerns for only five months and that this a "reasonable" delay given the number of government contracts Defendants have had to review, but Defendants have not offered any declaration or evidence to support this argument. Defendants also knew they were under a court-ordered obligation to provide these services and had the opportunity to expedite the review process to avoid a breach of their duties. Nor do Defendants deny that they could have started looking for a new service provider before Seneca's contract terminated, which could have avoided a disruption in services, and have not provided any evidence that they have taken steps to re-solicit bids and restart services in the month since they referred Seneca for investigation and filed their Rule 60(b) Motion. *See Little Orbit LLC v. Descendent Studios Inc.*, No. 20-cv-00089, 2021 WL 3502501, at *5 (C.D. Cal. July 27, 2021) (granting defendants' motion to enforce settlement, finding that plaintiff was not entitled to any relief from its settlement obligations under Rule 60(b) where the movant demonstrated a "lack of effort and initiative" to comply with their obligations).

Because these remedial steps have been available to Defendants, a complete pause of services under the settlement is not "suitably tailored" to any alleged change in circumstances.[5] More fundamentally, whether Defendants' requested relief from

---

[5] The legal standard under *Rufo* requires that relief under Rule 60(b)(5) be "suitably

their settlement obligations is "equitable" under Rule 60(b)(5) or a based on an "extraordinary circumstance" under Rule 60(b)(6)[6] necessarily requires looking at all the circumstances—including whether Defendants have acted reasonably and in good faith to comply with their binding obligations under the Settlement. *See Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1256 (9th Cir. 1999) (*Rufo* and its progeny "allows courts to fulfill their traditional equity role: to take all the circumstances into account in determining whether to modify" an order under Rule 60(b)(5)); *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443 (9th Cir. 2019) (recognizing that Rule 60(b)(6) requires the district court to consider whether "under all the surrounding circumstances," relief from the judgment "is appropriate in the furtherance of justice") (citations omitted). When considering all of the circumstances here, including Defendants' failure to take virtually any steps to mitigate their violation of the Settlements' obligations—and especially when combined with all the other

---

tailored" to the changed circumstances, not that it be "narrowly tailored." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). Plaintiffs have submitted a notice of errata, ECF No. 814, to correct a quotation of *Rufo* in Plaintiffs' Opposition to Defendants' Rule 60(b) Motion. Regardless, Defendants cannot meet the "suitably tailored" standard.

[6] Rule 60(b)(6) applies only when the reason for granting relief is not covered by another reason enumerated in Rule 60(b), regardless of whether the Court ultimately finds that the movant satisfied their burden under that other subsection. For example, in *United States v. Turner*, No. 13-cv-1827-DMS, 2022 WL 1570741, at *3 (S.D. Cal. May 17, 2022), this Court found that the Defendant failed to meet the burden for relief under Rule 60(b)(5), and found Rule 60(b)(6) "inapplicable" because the movant had argued that circumstances had changed and thus "appropriately argued" for equitable relief under Rule 60(b)(5). Here, too, Defendants argue for changed circumstances under Rule 60(b)(5), *see* Defs.' Reply at 6 n.5, ECF No. 811; even if that argument fails, Rule 60(b)(6) is inapplicable.

8

provisions Defendants have breached[7]—Defendants have failed to justify their breach or to establish that they warrant further relief.

## CONCLUSION

For these reasons, the Court should grant the Motion to Enforce, ECF No. 806.

DATED: July 10, 2025                     Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Ms. L Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

---

[7] *See* Order Granting Mot. Enforce at 12–13, 16; Pls.' Mot. Enforce Provisions regarding the Independent Adjudicator and travel-related assistance, ECF No. 807.

9

# CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt