Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al.,<br><br>　　　　*Petitioners-Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br><br>　　　　*Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: July 11, 2025<br><br>Hearing Date: July 17, 2025<br><br>**OPPOSITION TO DEFENDANTS' RULE 60(B) MOTION REGARDING THE PROVISION OF LEGAL SERVICES** |

**INTRODUCTION**

After five rounds of briefing, and three hearings, this Court issued a carefully considered order finding Defendants had breached the Settlement Agreement by ending the legal services required under that Agreement. ECF No. 795. Having been ordered to restore services through Acacia Center for Justice ("Acacia"), Defendants took no steps to do so. After weeks of delay, they filed this motion, claiming that there are changed circumstances because of the costs of Acacia's services in a year-long task order that ended in April—costs negotiated and agreed to ahead of time by Defendants, and costs that were well known to Defendants throughout the rounds of briefing and hearings as to breach.

Defendants further claim that "to 'reinstate' per se" Acacia's work is not possible because instead a new task order would need to be issued after it is negotiated. Decl. of Sirce Owen ¶¶ 9–10, ECF No. 809-1. But Defendants offer no reason they cannot in good faith negotiate and issue a task order—their contention that doing so would take time only highlights their delay. Had they diligently sought to restore Acacia services, as ordered, such services could already be up and running. *See infra* n.1. And Defendants' claim that they should be allowed to start a new, open bidding process also is no basis for relief—Defendants remain free to pursue other bidders for legal services, but they must live up to their Settlement obligations while they do so, and thus they must restore Acacia's services until they develop an alternative that satisfies the Settlement. Plaintiffs respectfully request that the Court deny Defendants' motion, order Defendants to negotiate and issue the task order to Acacia promptly and require further status conferences as necessary to ensure compliance.

# FACTS AND PROCEDURAL HISTORY

## I. Defendants awarded Acacia a contract to provide legal services through a competitive public bidding process and negotiated and agreed to the costs for *Ms. L.* legal services.

In September 2022, after a competitive bidding process, the U.S. Department of Justice ("DOJ") awarded Acacia a single-award Indefinite Delivery, Indefinite Quantity ("IDIQ") contract to administer a suite of legal services programs through August 2027. Decl. of Sara Van Hofwegen ¶ 3 (Apr. 23, 2025), ECF No. 762-1; Fifth Suppl Decl. of Sara Van Hofwegen ¶ 3 (July 11, 2025). Before awarding that IDIQ contract, DOJ openly solicited proposals from contractors for five weeks and negotiated with Acacia for about three months regarding rates for services. Fifth Suppl. Van Hofwegen Decl. ¶ 3. DOJ did not award IDIQ contracts to multiple contractors to provide legal orientation and access services, choosing to issue a single IDIQ to Acacia. *Id.*

An IDIQ allows Acacia to fulfill certain further contracts, called task orders, to implement specific legal programs within the scope of the IDIQ. Before DOJ issued the task order for the year-long Legal Access Services for Reunified Families Program ("LASRF") under Acacia's IDIQ, DOJ and Acacia negotiated and agreed upon the terms and all of the costs involved for LASRF. Fifth Suppl. Van Hofwegen Decl. ¶ 5; Van Hofwegen Decl. ¶ 4 & Ex. A (Apr. 23, 2025).

DOJ agreed to pay Acacia a flat fee for legal services for a base number of 785 participants. Fifth Suppl. Van Hofwegen Decl. ¶ 5. If more class members or qualifying family members needed assistance beyond the 785, DOJ would be billed at a fixed rate for each participant, called "surge" pricing to reflect that these additional cases could strain the capacity of the network size that DOJ had negotiated. Fifth Suppl. Van Hofwegen Decl. ¶¶ 6–7. The 785 baseline number was a compromise: Acacia had proposed serving a higher baseline of participants, which could avoid surge pricing; DOJ proposed a lower baseline, which made it more likely that there would be

participants above the baseline number who would trigger the higher surge pricing. *See id.* ¶¶ 7–8.

Acacia was required to notify the government as the number of *Ms. L* class members and qualifying family members it served approached the 785 participant baseline number. *Id.* (notifying government twice in December 2024 when 70 and 80 percent of baseline number were reached). In January 2025, at the government's request, Acacia informed the government that it anticipated reaching the baseline total of 785 participants in February and that Acacia estimated it would provide legal help to about 400 participants above that baseline figure. *Id.* ¶ 9. No government official expressed concerns about that estimate of 400 participants who would be served under surge pricing. *Id.* In April 2025, Acacia submitted a final invoice to DOJ reflecting an additional 414 participants served. *Id.* Acacia delivered the legal services required by the Settlement to about 1,200 participants, and the Court's June 10 order further discusses the importance of those services. ECF No. 795 at 3–4; *see also* Fifth Suppl. Decl. of Kelly Kribs (July 11, 2025).

## II. Defendants' responses to the Court's June 10 Order.

Since this Court's June 10 Order, Acacia has not received any communication from its assigned federal contracting officer. Fifth Suppl. Van Hofwegen Decl. ¶¶ 13–14 (explaining that negotiating a task order is only possible through a contracting officer, according to federal contracting rules and the IDIQ). The Court ordered Defendants on June 27, 2025, to provide Acacia with a proposed term sheet; in response, counsel for DOJ, and not a contracting officer, emailed Acacia a two-page attachment on July 2, 2025. Order Following Status Conf., ECF No. 803; Fifth Suppl. Van Hofwegen ¶ 13 & Ex. B. That attachment, titled as a proposed term sheet, did not state expected pricing nor the duration of the task order. *Id.* ¶¶ 12, 14 & Ex. B. Acacia forwarded counsel for Defendants' email and attachment to its contracting officer, stating that Acacia was willing to negotiate a new task order, and asking for

communication from the contracting officer. *Id.* ¶ 14. Acacia has not received any response. *Id.*

The Managing Director of Acacia, Sara Van Hofwegen, attests that in her experience negotiating five different task orders under the IDIQ, a new task order can be negotiated and issued relatively quickly, and Acacia has done it in less than 30 days. *Id.* ¶¶ 11–12. DOJ and Acacia had begun negotiating a renewal of the LASRF Task Order before DOJ notified Acacia in April that it would end the program. *Id.* ¶ 10; Decl. of Sara Van Hofwegen ¶ 5 (Apr. 23, 2025), ECF No. 762-1. Acacia had already provided proposed budgets in those negotiations; it is willing to agree to a task order that is substantially similar to the prior LASRF task order. Fifth Suppl. Van Hofwegen Decl. ¶¶ 10–11. Acacia's IDIQ, allowing for task orders for legal programs, runs through August 2027 —unless DOJ moves to terminate it sooner than that date. *Id.* ¶ 17.

## LEGAL STANDARD

Rule 60(b)(5) can provide relief from a judgment that is no longer equitable when there is "a significant change in facts or law," and the revision is "suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Co.*, 502 U.S. 367, 393 (1992). Rule 60(b)(5) requires the Court to "take all the circumstances into account," *Bellevue Manor Associates v. U.S.*, 165 F.3d 1249, 1256 (9th Cir. 1999), including the public interest and the judiciary's interest in the finality of judgments. *Id.* at 1253, 1257; *S.E.C. v. Coldicutt*, 258 F.3d 939, 942 (9th Cir. 2001).

Rule 60(b)(6) authorizes a court to relieve a party from a final judgment or order for "any other reason that justifies relief." The "catch-all" provision "does not apply to situations covered by any of the other reasons set forth in Rule 60." *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1217 (9th Cir. 2024) (cleaned up). Relief under Rule 60(b)(6) is strictly reserved for exceptional circumstances. *See Buck v. Davis*, 580 U.S.

100, 123 (2017) (relief from dismissal of procedurally-barred habeas petition warranted where death sentence may have been imposed based in part on a defendant's race).

## ARGUMENT

Defendants' motion should be denied because there has been no significant change in circumstances and Defendants have failed to demonstrate either any extraordinary circumstances that could support relief, or due diligence.

### I. LASRF Program Costs

While Defendants assert that the cost of the first year of Acacia's task order constitutes "a significant change in factual conditions," Defs.' Mot. at 4, those costs were negotiated and agreed to at the outset of the task order. Fifth Suppl. Van Hofwegen Decl. ¶ 7. And Acacia served the baseline number of participants budgeted for, as well as additional participants as anticipated by both Acacia and the government in negotiations. *Id.* ¶¶ 7–8. Defendants were thus well aware of the possibility that they might incur costs for class members served by Acacia beyond the 785 baseline number of participants in legal services: negotiations reflect that this was a well-considered possibility. *See id.* (noting that it was Defendants who proposed lower baseline numbers, above which there would be surge pricing). And Acacia told the government promptly as it reached the 785 baseline number of people served and estimated how many additional people it would serve under surge pricing—all without any objection by Defendants. *Id.* ¶ 9. Thus, the cost of legal services, and the number of people served, are neither a significant change in circumstances nor an extraordinary situation to warrant Rule 60(b) relief.

And Defendants' motion is also untimely, as they have waited only until they have been found in breach to raise their claim that the costs of legal services warrant Rule 60(b) relief. *See Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020).

Further, even if the costs of Acacia's task order constituted a changed circumstance, or extraordinary conditions, Defendants' proposed relief is not "suitably

tailored to the changed circumstance." *Rufo*, 502 U.S. at 393. Defendants seek to avoid their obligations to provide access to legal services as required under the Settlement without any commitment as to when services would resume. *See* Defs.' Mot. at 2. And while Defendants assert that they will continue certain group orientations and self-help workshops, the Court has already developed a lengthy factual record and findings to show that those services fail to meet the Settlement's requirements. *See* ECF No. 795 at 8–17.

### II. Requirement to restart services through Acacia

Defendants argue that "[i]f the judicial process were to require the Government to use a specific vendor instead of allowing it to participate in an open competitive process, the public's confidence may be compromised." Defs.' Mot. at 5. The implication that Defendants have not had any chance to have a competitive bidding process is incorrect: Defendants had a competitive bidding process and awarded an IDIQ to Acacia. Fifth Suppl. Van Hofwegen Decl. ¶ 3. That type of contract then allows Acacia and the government to negotiate and fulfill further task orders. *See id.* ¶ 4. Defendants chose only Acacia for the IDIQ rather than multiple such contracts. *Id.* ¶ 3. Defendants also entered into a Court-enforced binding Settlement Agreement in this case, negotiated the Acacia task order to fulfill their obligations, then ended that contract with Acacia without timely soliciting bids beforehand to secure a replacement if they were dissatisfied with Acacia's services. *Id.* ¶¶ 4–7; ECF No. 795 at 2, 5, 7. Nor did they implement any alternative that met the Settlement's requirements. ECF No. 795 at 10, 12–13, 16.

Enforcing Defendants' Settlement obligations in these circumstances would hardly compromise the public's confidence in the judicial process, Defs' Mot. at 5; indeed, the public's confidence would be compromised if Defendants were allowed to immediately reverse the remedy ordered by this Court simply by raising concerns about costs that they were well aware of, having negotiated and agreed to them.

### III. Issuing a task order is required by this Court's Order and Defendants have not complied.

Defendants argue that they should be relieved from complying with the Court's June 10, 2025 order because it would take at least forty-five days to negotiate and issue a new task order. Defs.' Mot. at 6. The length of the renegotiation process is not a reason to vacate the order to reinstate Acacia's contract, let alone an "extraordinary" reason. This is especially true given that Defendants failed to take steps to renegotiate a new task order with Acacia. Had DOJ engaged in negotiations with Acacia as soon as the Court issued its Order, the task order would be nearly finalized by Defendants' forty-five-day time estimate.[1] Instead, Defendants did not contact Acacia in the weeks after the Court's June 10 Order; and even when ordered by the Court to provide a term sheet to Acacia "concerning renewal or reissue of the LASRF task order," they sent a perfunctory document that does not start good faith negotiations because it (1) is not from the contracting officer who must be the communicator of contract negotiations, and (2) is missing essential details, such as the duration of the task order or pricing, to allow for a meaningful response. Fifth Suppl. Van Hofwegen Decl. ¶¶ 13–14; ECF No. 803. And when Acacia responded promptly to move negotiations forward and have the government send a term sheet through the contracting officer, they received no response. *Id.* ¶ 16. Defendants' complaints about having to negotiate a task order promptly ring hollow in light of their delays.

Finally, the government's argument that nothing in the Settlement requires that Acacia in particular be named the legal services provider is of course true but immaterial at this stage. As Plaintiffs and the Court have made clear, Defendants can seek to fulfill

---

[1] Defendants do not support their forty-five-day estimate with any declaration or other evidence. Defs.' Mot. at 6. Based on Acacia's experience, the task order could have already been finalized had Defendants started negotiating after the June 10 Order. Fifth Suppl. Van Hofwegen Decl. ¶¶ 11–12.

the Settlement with another capable provider. What Defendants cannot do is fail to satisfy the terms of the Settlement for months while they now begin to look for an alternative.

**IV.    Remedy**

Plaintiffs respectfully request that the Court deny Defendants' motion, order Defendants to negotiate and issue the task order to Acacia promptly, and require further status conferences as necessary to ensure compliance. Plaintiffs further respectfully request that the Court order that until the task order to restart LASRF is agreed to and issued, Defendants cannot end the IDIQ contract with Acacia.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' Rule 60(b) Motion.

DATED: July 11, 2025                    Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*
'

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)

|   |   |
|---|---|
| 1 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| 2 | 425 California Street, 7th Floor |
| 3 | San Francisco, CA 94104 |
|   | T: (415) 343-0783 |
| 4 | *skang@aclu.org* |
| 5 | *samdur@aclu.org* |
| 6 | *Attorneys for Ms. L Petitioners-Plaintiffs* |
| 7 | *\*Admitted Pro Hac Vice* |

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 11, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system.  A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

                              /s/ Lee Gelernt
                              Lee Gelernt