# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.; et al., <br><br>　　　　　Petitioners-Plaintiffs, <br><br>v. <br><br>U.S Immigration and Customs Enforcement ("ICE"); et al., <br><br>　　　　　Respondents-Defendants. | Case No.:  18cv0428 DMS (AHG) <br><br> **ORDER (1) DENYING DEFENDANTS' MOTION UNDER RULE 60(b) FOR TEMPORARY RELIEF FROM COURT ORDER REQUIRING REINSTATEMENT OF ACACIA TASK ORDER, (2) DENYING DEFENDANTS' MOTION FOR TEMPORARY RELIEF FROM COURT ORDER PURSUANT TO RULE 60(b), AND (3) GRANTING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT REGARDING THE PROVISION OF SERVICES** |

This case came on for hearing on (1) Defendants' Motion Under Rule 60(b) for Temporary Relief from Court Order Requiring Reinstatement of Acacia Task Order, (2) Defendants' Motion for Temporary Relief from Court Order Pursuant to Rule 60(b), and (3) Plaintiffs' Motion to Enforce Settlement Agreement Regarding the Provision of Services.  Lee Gelernt and Daniel Galindo appeared for Plaintiffs, and Daniel Schutrum-Boward and Cara Alsterberg appeared for Defendants.  After full consideration of the

parties' arguments, the record, and the relevant case law, and for the reasons set out below, the Court denies Defendants' motion for temporary relief from the Court's Order requiring reinstatement of the Acacia Task Order, denies Defendants' motion for temporary relief from Court order, and grants Plaintiffs' motion to enforce the settlement agreement regarding the provision of services.

# I.

# BACKGROUND

On June 10, 2025, this Court found Defendants in breach of the parties' Settlement Agreement in this case, specifically, the sections regarding the provision of legal services to Class Members. (*See* ECF No. 795.) To remedy that breach, the Court ordered Defendants to reinstate their Legal Access Services for Reunified Families ("LASRF") task order with Acacia so it could provide the necessary legal services, and set a status conference for June 27, 2025. (*Id.* at 17-19.)

Defendants did not comply with the Court's order to reinstate the task order with Acacia. Instead, in the parties' Joint Status Report filed on June 25, 2025, Defendants informed the Court they would be filing a motion for relief from the order pursuant to Federal Rule of Civil Procedure 60(b). (ECF No. 800 at 2-3.) Defendants stated that if the Court granted that motion, the Government would "solicit a Request for Information, to include a Statement of Work, that [would] allow it to collect written information about the capabilities of vendors in the marketplace to offer immigration legal services, followed by a Request for Quote." (*Id.* at 2.)

Following the June 27, 2025 status conference, the Court issued an order directing Defendants to provide Acacia with a term sheet concerning renewal or reissue of the LASRF task order on or before July 1, 2025, at 5:00 p.m. On that date, defense counsel sent an email to Sara Van Hofwegen, the Managing Director at Acacia Center for Justice, attaching a "nonbinding" term sheet, informing Ms. Van Hofwegen that "the Government intends to seek relief from the Court's requirement that it reinstate any Task Order with Acacia" and that it "would like to pursue potential engagement with alternative vendors to

provide the legal services required under" the Settlement Agreement. (Fifth Supp. Decl. of Sara Van Hofwegen in Supp. of Opp'n to Rule 60(b) Mot. Regarding the Provision of Legal Services ("Van Hofwegen Decl."), Ex. A, ECF No. 818-1.) Ms. Van Hofwegen informed defense counsel that Acacia could not "engage in any substantive conversation with DOJ's trial counsel or take any action with respect to the proposed term sheet trial counsel provided without receiving communication from [Acacia's] Contracting Officer." (Van Hofwegen Decl. ¶ 14.) Acacia did not receive a response from defense counsel and had not received a response from Acacia's Contracting Officer as of the filing of Ms. Van Hofwegen's Declaration on July 11, 2025. (*Id.* ¶¶ 14, 16.)

While the parties and the Court were dealing with the issue of the legal services provisions of the Settlement Agreement, and just a few hours before the Court issued its June 10, 2025 Order finding Defendants in breach of those provisions, another issue arose with the Settlement Agreement. That issue concerned the Settlement Agreement's requirements that Defendants provide Class Members with behavioral health services, assistance with certain medical costs, and housing support. Until June 9, 2025, the United States Department of Health and Human Services, which is a named Defendant in this case and a party to the Settlement Agreement, had a contract with Seneca Family of Agencies to provide those services. As with the Government's contract with Acacia, however, the Government decided not to exercise its option to renew its contract with Seneca and instead allowed that contract to lapse. In light of that decision, Defendants filed a separate Motion for Temporary Relief from Court Order Pursuant to Rule 60(b) asking the Court to "temporarily suspend" those sections of the Settlement Agreement requiring Defendants to provide these additional services to Class Members. Plaintiffs then filed their own motion to enforce those Settlement Agreement provisions.

## II.

## DEFENDANTS' MOTIONS

Both of Defendants' motions are brought pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). Under Rule 60(b)(5), a court may relieve a party from a

final judgment, order, or proceeding if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Under Rule 60(b)(6), relief is available for "any other reason." Fed. R. Civ. P. 60(b)(6).

Here, Defendants rely on the final clause of Rule 60(b)(5), which provides for relief if applying the judgment or order "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This Rule "may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 443, 447 (2009) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). "Once a moving party has met its burden of establishing either a change in fact or law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391.

Rule 60(b)(6) "is a catchall that … covers 'any *other* reason' that justifies relief; that is, Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs." *BLOM Bank SOL v. Honickman*, 605 U.S. ___, 145 S.Ct. 1612, 1619 (2025). The Supreme Court has "consistently reaffirmed that Rule 60(b)(6) 'should only be applied in extraordinary circumstances.'" *Id.* at 1620 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)). "'This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.'" *Id.* (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

**A.    Motion for Temporary Relief from Court Order Requiring Reinstatement of Acacia Task Order**

The Court turns first to Defendants' motion for relief from the Court's June 10, 2025 Order Granting Plaintiffs' Renewed Motion to Enforce Settlement Agreement Regarding Provision of Legal Services, which required Defendants to reinstate their task order with

Acacia. (*See* ECF No. 795.) Defendants argue they are entitled to relief from this Order under Rule 60(b)(5) because of two significant changes in factual conditions.

The first significant change, according to Defendants, is "an unfavorable cost-to-output ratio at the taxpayer's expense." (Mot. at 4, ECF No. 809.) According to Sirce Owen, the Acting Director of the Executive Office for Immigration Review, Acacia charged the Government $4,605,843.86 under the previous task order in program management support costs, direct costs, and legal services. (Decl. of Sirce Owen ¶¶3-4, ECF No. 809-1.) That amount averages out to approximately $3,841 per individual served by the task order. (*See id.* ¶ 4) (stating 1,199 Class Members and QAFMs received assistance under the task order). Notably, Ms. Owen does not state this cost-to-output ratio was "unfavorable." Indeed, there is no evidence in the record to that effect.

On the contrary, the evidence reflects the Department of Justice ("DOJ") negotiated and agreed with Acacia on the pricing structure for the task order. (Van Hofwegen Decl. ¶¶ 5-9.) During those negotiations, the DOJ decided to use a "firm fixed price" model, and the parties negotiated a set price for the services to be provided. (*Id.* ¶ 6-7.) Under the terms of the contract, the DOJ agreed to pay Acacia a flat fee to provide legal services to a base number of participants (785), and a flat rate for each additional participant above that number. (*Id.* ¶ 7.) Pursuant to the terms of the contract, Acacia notified the Government when it reached certain benchmarks, (*id.* ¶ 8), and on January 13, 2025 (one week before the change in presidential administration), it also gave the Government an estimate of when it would reach the baseline number and how many additional participants it expected to serve. (*Id.* ¶ 9.) At no time during the term of the contract did any government official express concerns about those additional anticipated costs. (*Id.*) Despite Defendants' argument, they have failed to provide any evidence of a significant change in factual conditions such that applying the Court's June 10, 2025 Order "is no longer equitable."

Defendants also argue "the recent change in administration and implementation of new policy directives" constitutes a "significant change" such that application of the Court's June 10, 2025 Order "is no longer equitable." (Reply at 1, ECF No. 823.) Notably,

Defendants fail to cite any authority to support this argument, and at least one other court has rejected it. *See Center for Biological Diversity v. Environmental Protection Agency*, No. 11-cv-00293-JCS, 2025 WL 901944 (N.D. Cal. Mar. 25, 2025). In that case, the Government requested to modify a stipulated settlement agreement to extend certain deadlines contained therein. *Id.* at *1. One of the bases for that request was a change in presidential administration. *Id.* at *6. There, like here, the court noted the Government failed to cite "any authority that suggests that a change in administration, by itself, constitutes good cause or offers an equitable reason sufficient to justify modifying the terms of a settlement agreement under Rule 60(b)(5)." *Id.* at *8. The court reasoned that if courts were:

> to adopt such an approach, it would mean, essentially, that parties could not enter into settlement agreements or consent decrees with an agency of the United States that spanned more than one administration as they could not count on adherence to the terms of the settlement agreement by subsequent administrations.

*Id.* According to the court, that would run counter the Government's "long history of entering into consent decrees that bind future administrations, and of abiding by those agreements." *Id.* That reasoning applies squarely here, and leads this Court to the same conclusion, namely that a change in presidential administration does not constitute the sort of "significant change" in either fact or law sufficient to show that prospective application of a court order "is no longer equitable."

Failing relief under Rule 60(b)(5), Defendants argue they are entitled to relief under Rule 60(b)(6) because "potentially uneconomical spending of public funds is unjust and should not be required." (Mot. at 5, ECF No. 809.) This is a different shade of Defendants' "cost-to-output ratio" argument raised above under Rule 60(b)(5), and thus it cannot serve as the basis for relief under Rule 60(b)(6). *See BLOM Bank SAL*, 145 S.Ct. at 1619 (stating "Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs.")

/ / /

Defendants also argue they are entitled to relief under Rule 60(b)(6) because "[i]f the judicial process were to require the Government to use a specific vendor instead of allowing it to participate in an open competitive process, the public's confidence [in the judicial process] may be comprised." (Mot. at 5, ECF No. 809.) But this argument is a red herring. Contrary to Defendants' argument, there is nothing in the Court's June 10, 2025 order that prohibits Defendants from participating in "an open competitive process" to find a contractor to fulfill Defendants' obligations under the legal services provisions of the Settlement Agreement. Defendants are, and have been, free to engage in that process. On that point there is no dispute. What Defendants are not free to do, however, is ignore their obligations to provide the legal services promised in the Settlement Agreement.

The Court's order directing Defendants to reinstate their task order with Acacia was the result of Defendants' breach of those contractual obligations. It was not an order, in the abstract, directing Defendants to contract with a specific vendor instead of using the competitive bidding process. In that context, it is hard to see how providing a remedy for a breach of a settlement agreement would undermine the public's confidence in the judicial process, particularly when Defendants did not propose an alternative remedy in their briefing or argument on Plaintiffs' motion.[1] On the contrary, the Court's finding of breach and provision of a remedy for that breach should hopefully serve to affirm the public's confidence in the judicial process as a means of upholding and enforcing contractual rights.

Because Defendants have not shown they are entitled to relief under Rule 60(b)(5) or 60(b)(6), their motion for temporary relief from the Court's June 10, 2025 Order is denied.

---

[1] In their opposition to Plaintiffs' motion, Defendants requested an "opportunity to address" any breach "without reverted [sic] to the prior contract [with Acacia]." (Opp'n to Renewed Mot. to Enforce Settlement Agreement at 11, ECF No. 774.) This vague suggestion does not set out an alternative remedy. It simply would have given Defendants carte blanche to remain in breach of the Settlement Agreement, which is not an acceptable result.

1   **B.     Motion for Temporary Relief from Court Order**

Defendants' other Rule 60(b) motion is directed to the Court's December 11, 2023 Order Granting Final Approval of Settlement Agreement and Certifying the Settlement Classes.  (*See* ECF No. 727.)  In this motion, Defendants request that the Court temporarily suspend sections IV.B.2.a., IV.B.2.b., and IV.B.2.d. of the Settlement Agreement, which govern the provision of behavioral health services, assistance with certain medical costs, and housing support, respectively, while Defendants complete the re-solicitation process to find a replacement for Seneca.

In support of this motion, Defendants rely primarily on the "no longer equitable" provision of Rule 60(b)(5).  (Mot. at 6, ECF No. 792.)  Although their argument is framed in various and sundry ways, at its core it relies on Executive Order 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing," which was signed by President Trump on January 20, 2025.  Exec. Order 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025).  This EO orders department heads to "terminate, to the maximum extent allowed by law, … all 'equity action plans,' 'equity' actions, initiatives, or programs, 'equity-related' grants or contracts, and all DEI or DEIA performance requirements for employees, contractors, or grantees." *Id.*

It is not at all clear that this EO would apply to the Seneca contract, but even if it did, it does not constitute a change in law sufficient to warrant relief under Rule 60(b)(5). Although a legislative change "may justify modifying or terminating a consent decree if the new law makes complying with the consent decree 'impermissible,' or, … 'make[s] legal what the decree was designed to prevent[,]'" *Flores v. Rosen*, 984 F.3d 720, 741 (9th Cir. 2020) (quoting *Rufo*, 502 U.S. at 388), the executive branch cannot "unilaterally create the change in law that it then offers as the reason it should be excused from compliance with a consent decree." *Id.*  Thus, the EO does not provide a basis for the relief Defendants seek.

Defendants also argue Seneca's alleged violation of federal civil rights laws is a change in fact sufficient to warrant relief under Rule 60(b)(5).  The Court disagrees for two

reasons. First, the Department of Homeland Security's referral of Seneca to the Department of Labor is not a finding that Seneca has violated any law. It is simply a referral, and nothing more. Second, the factual basis of the referral, namely Seneca's website, (Mot., Ex. A, n.4), was available to Defendants before they entered into the contract with Seneca. (*See* Decl. of Leticia Galyean Sturtevant ¶ 9) (stating webpage cited in referral letter has been in existence since October 2020). This evidence reflects that Seneca's conduct has not changed since the Settlement Agreement was signed and approved. The only thing that has changed is Defendants' interpretation of that conduct *based on the EO*. (Reply at 5) (stating motion is not based on change in interpretation of law but is based on EO). As stated above, however, the EO is not a proper basis for relief under Rule 60(b)(5).[2]

Absent relief under Rule 60(b)(5), Defendants turn to Rule 60(b)(6). Here, they argue Seneca's "potential violation of anti-discrimination civil rights laws constitutes 'extraordinary circumstances' supporting temporary relief under Rule 60(b)(6)." (Mot. at 7.) This is the same argument Defendants raised under Rule 60(b)(5), and as stated above, it cannot also be used to request relief under Rule 60(b)(6). *See BLOM Bank SAL*, 145 S.Ct. at 1619 (stating "Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs.")

Because Defendants have not shown they are entitled to relief under Rule 60(b)(5) or 60(b)(6), their motion for temporary relief from sections IV.B.2.a., b., and d. of the Settlement Agreement is denied.

---

[2] In their reply brief, Defendants also suggested that under Rule 60(b)(5), the Court should consider whether the objectives of the Settlement Agreement have been achieved. (Reply at 3.) Defendants did not raise this issue in their motion, and thus the Court need not consider it here. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (stating district court "need not consider arguments raised for the first time in a reply brief.") Even if the Court were to consider it, Defendants have not made the requisite showing that the objectives of the Settlement Agreement have been satisfied.

# III.

## PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

The only remaining motion at issue is Plaintiffs' motion to enforce sections IV.B.2.a., b., and d. of the Settlement Agreement. The Court set out the legal standard for this motion in its June 10, 2025 Order, and incorporates that standard here.

On the merits, Defendants do not dispute they are in breach of these provisions. (*See* Decl. of Brian Goodger ¶ 16, ECF No. 792-2) (stating Defendants "will be unable to comply" with these sections of the Settlement Agreement while they are engaged in the re-solicitation process). In light of that concession, the Court finds Defendants are in breach.[3]

The only remaining issue is the remedy. On that issue, Plaintiffs request the Court order Defendants to take all reasonable steps to expeditiously re-contract with Seneca to provide the necessary services for at least a one-year term, or if Defendants wish to pursue re-solicitation of the contract with another provider, a point Plaintiffs do not dispute, that Seneca's contract "continue unless and until Defendants award and are able to begin such a new contract that meets the terms of the Settlement Agreement[.]" (Mot. at 5.) Defendants argue this relief is unnecessary because the agreement to provide behavioral health services does not expire until December 10, 2030, and the agreement to provide copayment assistance is limited to a 12-month term, therefore that assistance can also be provided before the Settlement Agreement's expiration date.[4]

---

[3] Defendants urge the Court not to make a finding of breach, arguing their concession is sufficient. But a concession of breach does not have the same force or effect as a Court order. Accordingly, pursuant to Plaintiffs' request and in light of Defendants' concession, the Court finds Defendants are in breach of these provisions.

[4] On the housing assistance, Defendants assert that assistance was not implemented through the Seneca contract. (Opp'n to Mot. at 5 n.2.) However, Ms. Sturtevant, Seneca's President and Chief Executive Officer, states that since 2020 Seneca has provided housing assistance and referrals for 855 separated families. (Sturtevant Decl. ¶ 5.) Because Defendants have not produced any evidence to rebut Ms. Sturtevant's Declaration, the Court finds the housing assistance provision is at issue here.

As set out in the Court's June 10, 2025 Order, the Settlement Agreement gives the Court "the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement." (Settlement Agreement at 43, ECF No. 721-2.) The relief Plaintiffs request falls within the scope of the Court's power, and is necessary to fulfill the Settlement Agreement's terms and objectives. As the Court stated at the final approval hearing, the family separation policy at issue in this case was "one of the most shameful chapters in the history of our country[.]" (ECF No. 732 at 9.) It forced the separation of thousands of immigrant parents from their children, many of whom have yet to be reunified, and it caused profound, devastating, and lasting damage to those families. The Settlement Agreement, which was the result of painstaking negotiations between Plaintiffs *and the Government*, aimed to address that damage by providing these families with certain services at the Government's expense, including the behavioral health services, assistance with certain medical costs, and housing assistance at issue here. To comply with those obligations, the Government contracted with Seneca, and until June 9, 2025, the Government, through its contract with Seneca, was providing those services to Class Members. Although the Government was certainly within its rights to not renew the Seneca contract, its decision to do so does not excuse its obligations under the Settlement Agreement. Those obligations continue regardless, and Defendants must comply with them.

As with Plaintiffs' previous motion to enforce the Settlement Agreement's provisions regarding legal services, Defendants do not propose an alternative remedy for their admitted breach. They simply request that the Court allow them to continue in breach until they have a new contractor or service provider to fill the void left by Seneca's absence. That is not acceptable, especially since Defendants could have started the re-solicitation process before deciding not to renew Seneca's contract, and thereby avoided this lapse in services. Given that some of these families may have been separated more than eight years ago, the sheer number of Class Members entitled to receive these services, the length of time it has taken and will take to deliver these services, and that Defendants have

admittedly been in breach of these provisions since June 10, 2025, Defendants must comply with their obligations now, not when they have completed the re-solicitation process. Thus, to enforce these provisions of the Settlement Agreement, the Court orders Defendants to re-contract with Seneca to provide the services at issue here.

## IV.

## CONCLUSION

For the reasons set out above, the Court denies Defendants' motion for temporary relief from the Court's June 10, 2025 order requiring reinstatement of the Acacia task order. On or before August 25, 2025, Defendants, through the appropriate contracting officer, shall negotiate and complete a new task order with Acacia to resume the provision of legal services under the Settlement Agreement. Defendants' motion for temporary relief from sections IV.B.2.a., b., and d. of the Settlement Agreement is also denied. Plaintiffs' motion to enforce the Settlement Agreement regarding the provision of services is granted. On or before August 25, 2025, Defendants shall re-contract with Seneca to provide the services set out in sections IV.B.2.a., b., and d. of the Settlement Agreement. That contract shall have a minimum one-year term, or shall continue unless and until Defendants award and begin a contract with a new service provider to provide these services in a manner that satisfies the terms and objectives of the Settlement Agreement.

Consistent with the Court's prior orders, and given the Court's "power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement[,]" (Settlement Agreement at 43, ECF No. 721-2), the Court continues its order requiring the Government to inform Plaintiffs' counsel within 24 hours if it detains a member of the Ms. L. Class or other QAFMs defined in the Settlement Agreement. The information provided to Plaintiffs' counsel shall include, but is not limited to, the identity of the detained person, their A-file number, and place of detention. Counsel shall also meet and confer on whether the deadlines in the Settlement Agreement should be extended in light of Defendants' breaches and the Court's remedies stated herein.

The Court sets a status conference for **August 1, 2025**, at **1:30 p.m.** to discuss the parties' progress in meeting their obligations under the Settlement Agreement and the Court's Orders. The parties shall file a Joint Status Report on that progress or before **July 30, 2025**.

**IT IS SO ORDERED**.[5]

Dated: July 24, 2025

Hon. Dana M. Sabraw
United States District Judge

---

[5] In light of this Order, the Court denies as moot Plaintiffs' Motion for Immediate Relief and Notice of Additional Proposed Orders. (ECF No. 830). In denying that motion, the Court notes that Defendants have been under a court order to reinstate their LASRF task order with Acacia since June 10, 2025. (ECF No. 795.)