Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., <br><br> *Petitioners-Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement ("ICE"), et al. <br><br> *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG <br><br> Date Filed: August 11, 2025 <br><br> Hearing Date: August 22, 2025 <br><br> **MOTION TO EXTEND SETTLEMENT DEADLINES** |

## INTRODUCTION

Defendants' breaches of the Settlement Agreement have left class members and their families without mandated legal services for nearly four months and without case management services for three. During this time, hundreds of class and family members have lost their parole status, leaving them vulnerable to detention, removal, and reseparation. Thousands more have been deprived of the services they need to access relief through the Settlement. All the while, the two-year deadline to apply for crucial asylum relief, designed by the parties to remedy the harm of separation, has approached. For the thousands of families in the class when the Settlement became effective, the deadline to apply for this relief is just months away, on December 11, 2025.

The Court has already ordered Defendants to comply with the Settlement by entering into new contracts with Acacia Center for Justice ("Acacia") and Seneca Family of Agencies ("Seneca") by August 25, 2025. But both Acacia and Seneca will take months to restaff and rebuild the terminated programs to their pre-termination capacity. As they do so, the organizations must address the backlogs created by the Defendants' breaches. Individuals who were in the services pipeline must be recontacted and readvised; individuals whose parole ended must reapply. And these organizations must address these immediate needs before it can even prepare people to apply for asylum in advance of the fast approaching deadline.

Without the further relief requested here, Defendants' breaches will continue to frustrate the purpose and terms of the Settlement:

First, Plaintiffs request a one-year extension of certain deadlines under the Settlement. The extensions are necessary to address the harm of Defendants' breaches by allowing service providers the necessary time to rebuild capacity and to ensure class and family members have the time necessary to access relief.

Second, Plaintiffs request the Court extend the parole and work authorization grants that are currently in place for a period of six months after the new contracts take

1

effect, and to reinstate grants that lapsed while Defendants breached the Settlement, for the same period. The Settlement guaranteed that class and family members be able to apply for reparole with the assistance of case management and legal services. Defendants' breaches resulted in the expiration of parole absent those protections. The relief restores the status quo, and ensures that class members are protected from removal while services restart. It further allows Acacia and Seneca to better manage the needs of the class by alleviating the need to dedicate all initial resources to triage.

Third, Plaintiffs request that the Court extend all eligibility periods in Settlement § IV.B. by six months. These periods for either signing up to start certain benefits, or for the actual duration of receiving such benefits, could be unjustly shortened because Defendants ceased providing services.

The Court has the authority to order the relief. The parties have agreed that the Court has the jurisdiction and authority to issue "such relief . . . as the Court deems necessary for enforcement of the Settlement Agreement." ECF No. 831, at 11. The relief requested is necessary and tailored to address the breach and further the purposes of the Settlement. In addition, Fed. R. Civ. P. Rule 60(b) authorizes the Court to modify the judgment in light of changed circumstances. A party's breach of a court ordered settlement agreement constitutes changed circumstances, and modification of deadlines is appropriately tailored to address the breach.

**FACTUAL AND PROCEDURAL BACKGROUND**

This Court has found Defendants in breach of the Agreement since their termination of the legal services contract held by Acacia on April 30, 2025, and case management and other social services contract held by Seneca on June 9, 2025. ECF Nos. 795, 831. The Court has ordered Defendants to recontract with Seneca and Acacia by August 25, 2025. ECF No. 831, at 12.

Acacia and Seneca both anticipate that even after entering the new contracts and

immediately restarting services, it will take up to three months to reach their previous capacity. *See* Third Suppl. Decl. of Leticia Galyean Sturtevant ¶¶ 5–6 (Aug. 11, 2025); Sixth Suppl. Decl. of Sara Van Hofwegen ¶ 4 (Aug. 11, 2025). The Managing Director of Acacia anticipates it will take up to ninety days for Acacia and its network of legal services providers to reach its previous capacity. Sixth Suppl. Van Hofwegen Decl. ¶ 4. As a result of Defendants' breach, several of Acacia's legal services providers were forced to lay off staff working on the LASRF program. *Id.* While some of the Acacia providers will be able to resume services immediately, others will need to rehire previous staff or where necessary hire new staff to work on the LASRF program. *Id.*[1]

There are over three thousand class members and qualifying additional family members ("QAFMs") whose parole and work authorization expired or will expire between May 2025 and April 2026. Sixth Suppl. Van Hofwegen Decl. ¶ 5. Acacia expects that it will take at least six months to assist the class members and QAFMs whose parole and work authorization expired since legal services stopped on April 30, and those whose parole is set to expire in the coming months. *Id.* ¶ 7. Because a lapse in parole and work authorization result in loss of employment and the risk of detention, removal, and reseparation, Acacia and Seneca will have to prioritize the needs of these individuals. *See id.* ¶ 5; Decl. of Anilú Chadwick ¶ 7 (Apr. 18, 2025), ECF No. 762-3 (describing the impact that expiration of parole and work authorization have on families' financial stability).

After these six months, Acacia will require additional time to assist class members and QAFMs who are entitled to apply for further relief available under the Agreement, like dismissal of removal proceedings and asylum. Sixth Suppl. Van Hofwegen Decl. ¶ 8. The first step for many will be an application for parole or

---

[1] The initial Statement of Work for Acacia recognized the need for time to ramp up services, allowing for a 90-day period to fully launch services. Third Suppl. Decl. of Sara Van Hofwegen ¶ 4 (May 23, 2025), ECF No. 783-7.

3

reparole. Parole status is a necessary prerequisite for most class and family members to access the Agreement's asylum process. *Id.* ¶ 8. Termination of pending removal proceedings under the Settlement, for example, requires a grant of parole. Settlement § IV.C.1.b., at 16.[2]

Even after a class member has obtained parole, there are additional preliminary steps they must take before they can apply for asylum under the Agreement. Chadwick Decl. ¶¶ 7–8; Decl. of Kayleen Hartwick ¶¶ 5–6 (Apr. 18, 2025), ECF No. 762-2. Those who are in removal proceedings, or have previous removal orders, must first terminate or rescind those orders in order to even apply for asylum under the Agreement. *See* Settlement § IV.C.1.a., at 23–24; *see also id.* § IV.C.2.a., at 20 ("USCIS will reopen and adjudicate" a prior asylum application that was denied "only if EOIR has dismissed or terminated the INA § 240 removal proceedings, consistent with Section IV.C.2.c."); *see also, e.g.*, Chadwick Decl. ¶ 7 (explaining how many separated children who did not know they were supposed to attend Immigration Court received *in abstensia* removal orders that they would have to resolve before applying for asylum).

Seneca's Executive Director similarly expects that Seneca will not be able to reach full capacity with its case management services for at least six to eight weeks. Third Suppl. Galyean Sturtevant Decl. ¶ 3. As a result of the June 10, 2025 termination of Seneca's contract with the Substance Abuse and Mental Health Services Administration ("SAMHSA"), Seneca had to lay off 39 staff members and reassign 30 staff members serving Ms. L. class and family members, including 46 bilingual case managers, outreach coordinators, and network liaisons. *Id.* ¶ 2. Seneca will have to rehire and reassign 69 staff members, and expects there will be former staff who will

---

[2] A class member or QAFM who has not yet been granted parole but has a parole request pending can request that DHS join or not oppose a motion to continue a removal proceeding but cannot request dismissal. *See* Settlement § IV.C.1.b., at 16–17.

4

not return, which will require further time, as hiring and training new staff will take six to eight weeks. *Id.* ¶¶ 3–4.

In addition, Seneca will need at the same time to rebuild its network of behavioral health services providers. *Id.* ¶ 6. Seneca anticipates it will take at least two to three weeks to reestablish its project tracking system and at least two to three months to rebuild and address gaps in the national network after the months long service disruption. *Id.*

Seneca's outreach efforts have been disrupted, as has its contact with and case management of class members. *Id.* ¶ 7. At the time the contract expired, Seneca was conducting outreach to 537 class members, and expects it will take four to eight weeks after restaffing to complete outreach efforts to this group. *Id.* At the time of its contract expiration, Seneca was providing case management services to 485 class members and connecting 334 class members with behavioral health therapy and 209 class members with medical co-payment assistance. Suppl. Decl. of Leticia Galyean Sturtevant ¶ 2 (July 10, 2025), ECF No. 815-1. Seneca expects it will take three to four weeks to reestablish contact after its programs are rebuilt; even then, more time may be necessary to rebuild the trust and rapport interrupted by the end of the contract. Third Suppl. Galyean Sturtevant Decl. ¶ 8. In addition, Seneca was communicating with 487 class members who were considering engaging Seneca's services at the time the contract ended; it will take three to four months to recontact, advise, and begin providing services to these individuals. *Id.* ¶ 9.

Before its contract expired, Seneca also provided 472 families with legal service referrals and was a key referral source for Acacia. Decl. of Leticia Galyean Sturtevant ¶ 5 (June 30, 2025), ECF No. 805-1; Sixth Suppl. Van Hofwegen Decl. ¶ 11. As part of its case management services, Seneca informed class members of deadlines for parole renewal, immigration proceedings, and relief under the Agreement. Third Suppl. Galyean Sturtevant Decl. ¶ 10. During the lapse in Seneca's case management services

during Defendants' breach and while Seneca restarts services, class members and families have been—and will continue to be—without a provider to ensure that they are aware of pending parole and asylum deadlines and connected to services in a timely manner. *Id.*; Sixth Suppl. Van Hofwegen Decl. ¶ 11.

These delays in providing legal services due to the lapse in Seneca and Acacia's services only compound delays in the asylum process that already existed given that Defendants did not set up the Settlement's asylum process until well after the Settlement had been approved by this Court in December 2023. *See*, *e.g*, *MMM v. Sessions*, No. 18-cv-01832, Ms. L. Pls.' Resp. to Pls.' Mot. to Dismiss at 1, ECF No. 147 (June 5, 2024) (noting that Defendants would not start training on *Ms. L.* asylum procedures until after dismissal of *MMM* action and settlement); Defs.' Resp., ECF No. 148 at 11 (June 11, 2024) (same). At the time Acacia's contract expired, Acacia's network of providers had not yet been able to assist the vast majority of class members with parole applications. Third Suppl. Decl. of Sara Van Hofwegen ¶ 11 (May 23, 2025), ECF No. 783-7. The vast majority of class members—several thousand individuals—have upcoming asylum deadlines on December 11, 2025, in just four months.

## ARGUMENT

### I. Legal Standard

Under the Settlement, the Court has "the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement." Settlement § VII.D; *Ms. L. v. U.S. Immig. and Cust. Enf't*, No. 18CV0428 DMS (AHG), 2025 WL 1657597, at *10 (S.D. Cal. June 10, 2025); *see also Parsons v. Ryan*, 912 F.3d 486, 494, 497–98, 500 (9th Cir. 2018) (provision that "the Court shall retain the power to enforce this Stipulation through all remedies provided by law" authorized order to remedy breach).

6

The Court also has the power to modify a prior order under Rule 60(b) by extending deadlines within a judicially enforceable settlement. *See Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (two-year extension of settlement agreement "well within the court's inherent power," now codified at Rule 60(b), based on defendants' violation of the settlement) (collecting cases).

Under Rule 60(b)(5), a court can modify a judgment or order that is no longer equitable when there is "a significant change in facts or law," and the revision is "suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Co.*, 502 U.S. 367, 393 (1992). Breach of settlement terms can constitute changed circumstances under Rule 60(b)(5). *See Kelly*, 822 F.3d at 1098; *see also Lab./Community Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120–21 (9th Cir. 2009) (finding that "failure of substantial compliance . . . can qualify as a significant change in circumstances that would justify" extension of settlement term) (citations omitted); *Dept. of Fair Empl. & Hous. v. L. Sch. Admis. Council Inc.*, No. 12-cv-01830, 2018 WL 1156605, at *25–26 (N.D. Cal. Mar. 5, 2018) (extending consent decree by two years under Rule 60(b) due to the defendant's failure to comply with the consent decree); *Duvall v. Hogan*, No. CV ELH-94-2541, 2021 WL 2042295, at *13–16 (D. Md. May 21, 2021) (extending settlement agreement by 18 months under Rule 60(b)(5) based on Defendants' failure to achieve compliance).

Alternatively, a court can modify a prior order under Rule 60(b)(6) for "any other reason that justifies relief," not already covered by the other subsections of Rule 60(b). *BLOM Bank SOL v. Honickman*, 605 U.S. ___, 145 S.Ct. 1612, 1619 (2025). Courts only apply Rule 60(b)(6) in "extraordinary circumstances." *Id.* at 1620 (quotation marks and internal citation omitted). Noncompliance with a settlement can constitute "extraordinary circumstances" under Rule 60(b)(6). *Keeling v. Sheet Metal Workers Intern. Ass'n, Loc. Union 162*, 937 F.2d 408, 410–411 (9th Cir. 1991) (finding

"extraordinary circumstances" where party's history of noncompliance "completely frustrated the purpose of the settlement agreement").

## II. Extension of Deadlines Is Necessary and Warranted Relief

Plaintiffs seek to extend the following deadlines in the Settlement by one year:

- The "Final Registration Date," which is "[t]he latest date that . . . Class member may register in together.gov or juntos.gov to be considered for relief under this Settlement Agreement," and is "three years after the Effective Date," or December 11, 2026,[3] Settlement § I.G;
- The "Final Services Date," which is "[t]he latest date that a . . . Class member may begin receiving services under the Settlement," and is "four years after the Effective Date," or December 11, 2027, *id.* § I.H;
- The "Termination Date," which is "six years after the Effective Date," or December 11, 2029, *id.* § I.O;
- The deadlines by which class members must seek the following immigration relief available under the Settlement, which are each within two years of the date the class member was confirmed as part of the class:
  - Any request for relief relating to INA § 240 removal proceedings, *id.* § IV.C.3.a.;
  - Any request for relief relating to an expedited removal or reinstatement proceedings, *id.* § IV.C.3.a.;
  - Any request that USCIS reopen a class member's prior asylum application, *id.* § IV.C.3.b.iii.; and
  - Filing a complete asylum application with USCIS, *id.* § IV.C.3.b.iv.

Plaintiffs also seek to extend all eligibility periods in Settlement § IV.B. by six

---

[3] The "Effective Date" was the date the Court issued its final approval order. Settlement § I.D; ECF No. 727.

8

months.

The Court has the authority to extend the deadlines. First, authority exists under "the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement." Settlement § VII.D.

Second, Defendants' breach of the Settlement also constitutes a significant change in circumstances justifying a one-year extension of these deadlines as a "suitably tailored" solution "to the changed circumstance." *Rufo*, 502 U.S. at 393. Such a remedy is appropriate because it would merely "return[] Plaintiffs to the position they would have occupied had [Defendants] not violated the agreement." *Kelly*, 822 F.3d at 1098; *see also Lab./Community Strategy Ctr.*, 564 F.3d at 1120–21; *Duvall*, 2021 WL 2042295, at *13–16.

The Court's Order dismissing Plaintiffs' claims and retaining jurisdiction to enforce the Settlement Agreement's terms, ECF No. 730, like in *Kelly*, incorporated the Settlement Agreement. 822 F.3d at 1098. Thus, the Court has authority to extend the Settlement by modifying that Order. *Id.*

Defendants' significant and prolonged breaches of the Settlement constitute a significant change in factual circumstances sufficient to warrant relief under Rule 60(b). *Rufo*, 502 U.S. at 393. This Court has found that Defendants have failed to provide class and family members with legal services required by the Settlement for over three months, since April 30, 2025. ECF No. 795, at 8–16; *see also* ECF No. 831, at 7. By the time Defendants recontract with Acacia to provide these legal services, Defendants will have been in breach for nearly four months. *See* ECF No. 831, at 12 (ordering Defendants to recontract with Acacia by August 25, 2025). For the past two months, Defendants have also failed to provide class and family members with behavioral health services, co-payment assistance, and case management services, which connect class and family members to other services, including by making housing and legal services referrals. *Id.* at 10–12.

9

While Defendants' breaches will have lasted nearly four months, an extension of the Settlement's deadlines by only four months would be an insufficient remedy. Context makes clear that a longer extension, at a minimum, a one-year extension of the Settlement's deadlines, is necessary to return class members to the position they would be in absent Defendants' breaches.

Acacia and Seneca will have to reassign, hire, and train, and restart connections with partners. Further, these organizations will immediately face a backlog of class members and QAFMs who experienced lapses in employment or parole statuses due to the breaches, and who face quickly approaching deadlines, with asylum deadlines as early as December 11, 2025. *See* Sixth Suppl. Van Hofwegen Decl.; Settlement §§ IV.C.1.a. & b., IV.C.2.d.[4]  Without the requested extensions, Defendants' breaches will result in class members being unable to receive legal services in time to apply for asylum.

### III.  Parole and Employment Authorization

In order to return Plaintiffs to the position they would have occupied had Defendants not violated the Settlement, the Court should also (1) suspend the expiration of parole and work authorization for class members and QAFMs who have received parole until six months after the new task order with Acacia is entered; and (2) reinstitute such parole and work authorization (until six months after legal services are

---

[4] Defendants' breaches also constitute "extraordinary circumstances" that warrant extension of the Settlement's deadlines under Rule 60(b)(6). *Keeling*, 937 F.2d at 410. Defendants' breaches frustrated the purpose and goals of the Settlement; Defendants' failure to provide individualized legal services and case management services for months despite fast approaching deadlines will eliminate the class's opportunity to apply for asylum.

implemented) that have expired since April 30, 2025, when Defendants first breached the Settlement.[5]

The Settlement provides class members and QAFMs abroad with the opportunity to apply for humanitarian parole and employment authorization for a period of 36 months. Settlement § C.1., at 46. The Settlement also provides class members and QAFMs in the United States the opportunity to apply for parole-in-place "if there is a continued need to promote family well-being and unity or to continue behavioral health services under this Settlement Agreement . . . for the period needed to achieve the stated purpose, up to an additional thirty-six months." Settlement § C.1, at 17. As this Court has recognized, "[g]iven the complex and lengthy immigrations processes addressed in the Settlement Agreement, it should be commonplace that many Class members will have a 'continued need to promote family well-being and unity,' which can only be accomplished through the parole and re-parole processes." ECF No. 795, at 15. If the "re-parole request is approved, the applicant may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) to align with the period of reparole." Settlement § C.1, at 18. Critically, as this Court has recognized, the Settlement provided that class and family members be allowed to apply for reparole with the assistance of the required case management and legal services. ECF No. 795, at 15–16.

The requested relief is within the Court's authority to grant, under § VII.D of the Settlement or Rule 60(b).[6] The relief is necessary to restore the status quo. Class and

---

[5] Under Plaintiffs' proposal, the parole of any class or family member due to expire within six months of the new legal services contract would be extended until the end of the six-month period; the parole of any individual lapsed between April 30 and the new task order would be reinstituted for the same six months period.

[6] Defendants have suggested that reinstating parole grants would violate the requirement that parole decisions made on a case-by-case basis. *See* Aug. 1, 2025 Hr'g Tr. at 18:6–13. But Defendants can engage in case-by-case decision-making: Defendants can

family members' parole and employment authorization lapsed without the required access to the legal services necessary to apply for reparole. The relief is also necessary to ensure that the services, once restarted, can better manage the backlogs created by Defendants' breaches. The breach of the Settlement, further, constitutes a significant change in circumstances justifying a one-year extension of these deadlines as a "suitably tailored" solution "to the changed circumstance." *Rufo*, 502 U.S. at 393.

## CONCLUSION

For the foregoing reasons, Plaintiffs Motion to Extend Settlement Deadlines should be granted.

DATED: August 11, 2025                    Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

choose not to extend or renew an expired parole grant where there were intervening events, such as a serious criminal conviction, that counsel against an extension or renewal.

|   |   |
|---|---|
| 1 | 425 California Street, 7th Floor |
| 2 | San Francisco, CA 94104 |
|   | T: (415) 343-0783 |
| 3 | *skang@aclu.org* |
| 4 | *samdur@aclu.org* |
| 5 | *Attorneys for Ms. L Petitioners-Plaintiffs* |
| 6 | *\*Admitted Pro Hac Vice* |

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt