UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement, et al., <br><br> Defendants. | Case No. 3:18-cv-428-DMS (AHG) <br> Honorable Dana M. Sabraw <br><br> CLASS ACTION |

**DECLARATION OF IOYD**

I, IOYD, pursuant to 28 U.S.C. § 1746, declare that the following is true and correct:

1. My name is IOYD. I was born on April 15, 1991, in Colon, Honduras. I am the daughter of SHYJ.

2. On May 20, 2018, my father crossed the U.S.-Mexico border with his daughter (my sister), YMYD They were detained by U.S. immigration officers. YMYD was 14 years old at the time. That same day, the U.S. government separated my father and sister. My father and sister became one of the many families that were separated under the Zero Tolerance policy. My father was detained for about three months until he was released on bond with the help of attorneys who requested bond on his behalf.

3. My sister was transferred to a shelter for immigrant youth, which I later learned meant she was in the custody of the Office of Refugee Resettlement (ORR). I completed the application to sponsor my sister. She was detained for about a month before she was released from ORR custody to my care.

4. In 2023, through assistance of counsel, my dad and sister were able to register online as *Ms. L.* class members and connect with Seneca's Todo Por Mi Familia Project. They submitted parole applications, and on February 15, 2024, their applications were granted. Their parole status is valid through January 13, 2027. They remain in the United States.

5. Because my father is a *Ms. L.* class member, I also applied for parole as a Qualifying Additional Family Member. On May 14, 2024, my application for parole and corresponding application for employment authorization were granted. My parole status and employment authorization are valid through January 15, 2027.

6. Since October 2016, I had been attending periodic scheduled check-ins with U.S. Immigration and Customs Enforcement (ICE) approximately every month. Sometimes the check-ins would require me to go to the ICE field office in Miramar, Florida, and other times, ICE officers would come to my house or call me. At one point, the check-ins temporarily stopped due to a hurricane, but they restarted again in 2022. I consistently complied with the scheduled check-ins and never encountered any issues with ICE.

7. I had an ICE check-in scheduled for June 2025, but in March 2025, I received a call from ICE asking me to present myself with my children at ICE's office in Stuart, Florida, on Tuesday, April 8, 2025, at 12:30 p.m. for a "family interview." I went to the check-in with my two youngest children, who were 3 years and one year old at the time. Both children are U.S. citizens. I did not bring my other children as they were in school. When we arrived at the ICE office, my children and I were sent to the waiting room and waited for about 20 minutes. Then we were called into another room, where an ICE officer told me I had a removal order. I explained to them that I had valid parole status and that I had brought all my documents. The ICE officer told me that my parole status did not matter, and that they would be sending me back to Honduras. The ICE officer told me to call someone to drop off my children's passports. I called my partner to let him know that I was being deported and that I would be taking my two youngest children with me. I told him that I needed someone to drop off the children's passports. Immediately after I ended the call with my partner, ICE officers took my belongings, so I no longer had access to my phone. Shortly thereafter, a relative came to the ICE office and dropped off the children's passports.

8. At around 3 or 4 p.m. that same day, ICE made me and my children, along with other detainees, board a bus to Louisiana. We traveled the rest of the day and night until we arrived at a hotel in Louisiana on the morning of Wednesday, April 9, 2025. Two ICE officers supervised us at the hotel. I asked the ICE officers if I could call my family because my family had no idea that we were in Louisiana. The ICE officers told me that someone would come by to let me use a phone, but no one ever did. I was never allowed any phone access to contact family or an attorney while we were detained in Louisiana. ICE eventually boarded us on a plane to Honduras on Friday, April 11, 2025. After we arrived in Honduras that day, ICE officers returned my phone to me, and I was finally able to call my partner in the United States.

9. I lived in the United States for almost ten years. During that entire time, I never had any engagement with law enforcement, nor have I ever been arrested. I lived in Florida with my partner and our five children, who are ages 15, 13, 6, 3, and 2. Three of my children remain in the United States with my partner. My partner and I both worked to make ends meet. Now that I am in Honduras, I do not have someone to watch my children regularly so that I can find employment. Even if I were to find employment, it would not pay enough to cover the cost of childcare. My partner sends me what he can every week. He is now living paycheck to paycheck as the sole provider.

10. This separation has deeply traumatized my family. My two youngest children cry for their father and siblings every day. It breaks my heart to see them in such pain. My three-year-old child constantly asks when we will return to our home. I never know how to respond. Meanwhile, my children who are in the United States are depressed. I can hear it in their voices during our phone calls, and it fills me with

a sense of helplessness. I do my best to lift their spirits by encouraging them to focus on their education, reminding them that hard work in school can lead to success in the United States.

11. My youngest children are not accustomed to life in Honduras, which is very dangerous. We often feel fearful about leaving the house due to rampant criminal activity. In Florida, we used to enjoy family outings to parks and restaurants. Now, my children are confined to our home, and it pains me to see them miss out on those experiences with their siblings and their father. I go out alone only when necessary, while my mother watches the children when she is available.

12. My deportation also means that I cannot see my father and siblings in the United States. It saddens me greatly because although we did not live together in the United States, we were always supportive of one another. We were a happy family. We are all very sad now. We do not know the next time we can see each other again.

  \* \* \* \* \* \* \* \* \* \*

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*I. O. Y.*

Date: August 19, 2025

[IOYD]