# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.; et al., <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> U.S Immigration and Customs Enforcement ("ICE"); et al., <br><br> Respondents-Defendants. | Case No.: 18cv0428 DMS (AHG) <br><br> **ORDER REGARDING NEGOTIATIONS WITH ACACIA** |

This case came on for status conference on August 22, 2025. Lee Gelernt and Anand Balakrishnan appeared for Plaintiffs, and Daniel Schutrum-Boward, Dean De Las Alas, and William Silvis appeared for Defendants. Counsel addressed a number of issues during the status conference, including EOIR's negotiations with Acacia on a renewed task order to provide services under the Settlement Agreement. Given the August 25, 2025 deadline to finalize those negotiations, this Order addresses only that issue. The other issues will be addressed in a separate order.

The Court finds Defendants' proposed process of referring cases to Acacia is contrary to the spirit and purpose of the Settlement Agreement and this Court's June 10, 2025 Order granting Plaintiffs' renewed motion to enforce that Agreement. As set out in the Settlement Agreement, EOIR is required to establish a Program that provides Class Members with legal services. As part of that Program, Class Members are to receive "individualized consultations" to "identify cases for pro bono placement." (Settlement

Agreement at 12, ECF No. 721.1.) Under Acacia's previous contract with the Government, Acacia accepted referrals for legal services from any source, including Seneca, the IOM, private lawyers, and individual Class Members and QAFMs. (Joint Status Report ("JSR") at 2-3, ECF No. 857.) After Acacia's contract expired, Defendants proposed that as part of their new federalized program, Class Members who requested individualized assistance would automatically be referred to pro bono counsel and thus there was no need for individualized consultations. (June 10, 2025 Order at 11, ECF No. 795.) The Court found that was a breach of the Settlement Agreement, and ordered Defendants to reinstate their task order with Acacia so it could provide the necessary services, including the individualized consultations.

EOIR and Acacia are currently negotiating the new task order, and according to Defendants, they are proposing to fulfill their obligations under Section VI.B.2.C.ii through the following procedure: First, EOIR would accept referrals from third parties and direct inquiries from Class Members and QAFMs. Upon receipt of those referrals or inquiries, EOIR would "guide" the individual to EOIR's resources. If a Class Member or QAFM subsequently requested individualized assistance, EOIR would refer the individual to a third party contractor. That third party contractor would then conduct outreach using EOIR's contact information, screen the individual for services, and refer them to the appropriate regional office for individualized assistance. (JSR at 2.) According to Defendants, this procedure would give Class Members "the option to receive individualized assistance from third parties, as needed, upon request." (*Id.*)

Plaintiffs argue there are several problems with this proposed procedure. First, they assert it would require that Acacia accept referrals only from EOIR. This appears to be correct, as Defendants state "EOIR intends to continue conducting referrals itself." (*Id.*)

Second, Plaintiffs contend this procedure would set up unnecessary roadblocks for Class Members to receive services they are entitled to under the Settlement. The Court agrees with this, as well. Under Defendants' proposal, it appears Class Members and QAFMs would (1) have to go to EOIR, (2) participate in EOIR's group services, and (3)

subsequently request individualized assistance. (4) EOIR would then have to refer the Class Member or QAFM to a third party contractor for the necessary individualized consultation, (5) the third party contractor would then conduct the individualized consultation, and (6) then refer the Class Member or QAFM to the appropriate regional office for the individualized assistance.

All of these requirements would stand in the way of Class Members and QAFMs receiving the services to which they are entitled under the Settlement Agreement. In particular, they would force Class Members and QAFMs to first reach out to EOIR, which they are reluctant to do under the current national climate. It also appears Class Members and QAFMs would be required to partake in EOIR's resources before they could even request an individualized consultation, which is contrary to the terms of the Settlement Agreement. These burdensome and unnecessary conditions frustrate the purposes and goals of the Settlement Agreement, and should not be part of the parties' ongoing negotiations.

**IT IS SO ORDERED**.

Dated:  August 22, 2025

Hon. Dana M. Sabraw
United States District Judge