Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al.,<br><br>*Petitioners-Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br><br>*Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: September 24, 2025<br>Hearing Date: October 17, 2025<br><br>**OPPOSITION TO DEFENDANTS' RULE 60(B) MOTION REGARDING STATUTORY CHANGES** |

## INTRODUCTION

The Settlement Agreement implements a remedy for the constitutional violation of family separation: it creates a pathway to allow families to reunify in the United States and the opportunity to apply for asylum, free of the taint of the separation.

Significantly, the Settlement is explicit that access to the remedy could not be conditioned on an ability to pay. The Settlement places on Defendants the logistical costs of reunification as well as the costs of covering mental and physical health care. The Settlement further exempts class members and qualified additional family members from any costs associated with applications for immigration benefits and protections, without having to apply for a waiver.

Having agreed to this structure, Defendants now point to recent amendments to the immigration laws that modify the fee structure for benefits. The gist of Defendants' motion is that the statutory changes conflict with the Settlement, and that class members and qualified additional family members ("QAFMs") now must pay thousands of dollars to access the promise of the Settlement. *See* Defs.' Rule 60(b) Mot. ("Mot."), ECF No. 880. Defendants' request, if granted, would effectively cut off many class members and QAFMs from benefits and leave the Settlement an empty promise.

But Defendants are wrong; the Settlement does not conflict with the new fee provisions. The Settlement specifically *exempts* class and family members from any applicable fee structures associated with immigration applications. Congress's elimination of individual *waivers* thus does not impact the considered choice made by the Settlement. Because class and family members were categorically exempt from fees, they were never seeking waivers—the fee provisions (including waivers) are simply inapplicable.

And even if there were a conflict between the Settlement and the new legislation, Defendants' Rule 60(b) Motion should still be denied, because modification of the Settlement that would condition reunification and asylum on an ability to pay would

effectively and unlawfully leave the *constitutional* violation without remedy. Moreover, Defendants have not provided (nor even proposed) a suitably tailored set of modifications. Instead, to the extent Defendants' position is clear, it is that the Settlement should be modified in one direction only: against class and family members, and against reunification and a meaningful remedy.

Even if the Court found a modification warranted as to future relief, Defendants cannot impose the fees set forth in this new legislation in the next six months without violating the Court's August 25 order that extended and reinstituted class and family member's parole and employment authorization.

Defendants also seek relief from the Settlement's requirements that employment authorization grants align with the three-year duration of class and family member's parole grants based on provisions in the new legislation that purport to limit the duration of employment authorization grants. But this argument, too, is wrong. The Parties specifically agreed on a period of EAD to run alongside a three-year parole grant: a time period that was not itself dictated by statute. That agreement should govern here, particularly if the Court finds that class members are not exempted from the fees imposed by HR-1. The legislative changes do not address renewals of employment authorization based on a previous grant, nor does the legislation preclude the renewal or extension based on a previous application.

## BACKGROUND

**A.    The New Legislation Does Not Reference the Government's Authority to *Exempt* Applicants from Paying Immigration Fees.**

The Immigration and Nationality Act ("INA") authorizes the United States Customs and Immigration Services ("USCIS") to set "fees for providing adjudication and naturalization services." 8 U.S.C. § 1356(m). At the time the parties entered the Settlement, the application fees for parole, asylum, and employment authorization were set by regulation. 8 C.F.R. § 106.2(a)(8) (2020) ($1,010 parole application fee); 8

C.F.R. § 106.2(a)(20) (2020) ($50 asylum application fee); 8 C.F.R. § 106.2(a)(32) (2020) ($550 employment authorization fee).  This regulatory scheme provided a process for fee waivers; an applicant could submit a fee waiver request that demonstrated that they were unable to pay an application fee based on certain criteria. 8 C.F.R. § 106.3(a) (2020).  The regulation also provided in a separate section that, "The Director of USCIS may provide an exemption for any fee required by 8 CFR 106.2" where the Director determined the action was "in the public interest," was "consistent with the applicable law," and was related to certain enumerated categories. 8 C.F.R. § 106.3(e) (2020).

In January 2024, USCIS amended the rule to provide for additional "[h]umanitarian fee exemptions," whereby certain categories of applicants "are exempt from paying certain fees" without having to file a fee waiver application.  89 FR 6194-01 (Jan. 31, 2024) (codified at 8 C.F.R. § 106.3(b)).  The amended rule also expanded USCIS's discretion to exempt fees, providing that "[t]he Director of USCIS may authorize the waiver of or exemption from, in whole or in part, a form fee required by § 106.2 that is not otherwise waivable or exempt under this section, if the Director determines that such action is in the public interest and consistent with the applicable law."  *Id.* (codified at 8 C.F.R. § 106.3(c)).

While the regulation in effect at the time the Settlement was finalized purported to impose a $50 fee for asylum applications, USCIS had been enjoined from imposing that fee since September 29, 2020.  *See Immig. Legal Res. Ctr. v. Wolf*, No. 20-cv-05883-JWS, 491 F. Supp. 3d 520, 548 (N.D. Cal. Sept. 29, 2020); *see also* 88 FR 402 (Jan. 4, 2023).  Further, on January 4, 2023, USCIS proposed a rule that would formally remove the asylum application fee from the regulations.  88 FR 402.  USCIS issued the final rule that formally removed fees for asylum applications on January 31, 2025.  *See* 89 FR 6194-01 (codified at 8 C.F.R. § 106.2(a)(28)).

The Settlement provides that "Defendants will return to the United States Ms. L. Settlement Class members and certain Qualifying Additional Family Members that the FRTF Research Committee determines are necessary for reunification at the government's expense." Settlement § IV.A., at 9. The Settlement further provides that *Ms. L.* class members shall be exempt, as follows, from immigration processing fees necessary to obtain the Settlement's benefits:

- **Parole applications**: "USCIS will exempt the filing fee for the Form I-131, Application for Travel Document (parole application), for all Ms. L. Settlement Class members' and Qualifying Additional Family Members' parole requests submitted in compliance with the FRTF Parole Filing Guides." Settlement § IV.C.1., at 14.

- **Re-parole requests:** "Ms. L. Settlement Class members and Qualifying Additional Family Members requesting re-parole will not be required to pay the parole application fee." *Id.* at 17.

- **Employment authorization documents:** "[a]n initial Form I-765, Application for Employment Authorization (EAD application), will be accepted and adjudicated without a fee or a fee waiver required" and "USCIS will also exempt the filing fee for one Form I-765 renewal application for employment authorization, with no fee waiver application required, based on a period of re-parole granted under this settlement for Ms. L. Settlement Class members and Qualifying Additional Family Members." *Id.* at 15, 18.

On July 4, 2025, the President signed into law H.R.1—Public Law 119-21, 139 Stat. 72 ("HR-1"). This law amended the INA to establish new fees for certain immigration services, including new fees for parole, employment authorization, and asylum applications. *See* HR-1, Title X, Subtitle A, Part I, Sections 100001 through 1000018. For parole applications, HR-1 provides that "the Secretary of Homeland Security shall require the payment of a [specified] fee . . . by any alien who is paroled

into the United States" and that "fees required to be paid under this section shall not be waived or reduced" outside of ten enumerated exceptions. 8 U.S.C. § 1804(a), (f).

HR-1 also sets forth new employment authorization application fees. The amendments provide that "the Secretary of Homeland Security shall require the payment of a [specified] fee . . . by any alien paroled into the United States for any initial application for employment authorization at the time such initial application is filed" and these fees "shall not be waived or reduced." 8 U.S.C. § 1803(b)(1). A nearly identical statute requires a fee for "any parolee who seeks a renewal or extension of employment authorization based on a grant of parole" and similarly provides that the required fee "shall not be waived or reduced." *See* 8 U.S.C. § 1809(a), (d).

Finally, HR-1 establishes a new asylum application fee, providing that "the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a [specified] fee . . . by any alien who files an application for asylum . . . at the time such application is filed" and that "[f]ees required to be paid under this section shall not be waived or reduced." 8 U.S.C. § 1802(a), (e). HR-1 also provides that "the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of" an additional fee "for each calendar year that an alien's application for asylum remains pending," providing again that "[f]ees required to be paid under this section shall not be waived or reduced." 8 U.S.C. § 1808(a), (d).

None of these provisions refer to USCIS's authority to "exempt" certain applicants from these fees. *See* HR-1, Title X, Subtitle A, Part I, Sections 100001 through 100018.

B.  **The Amendments to Employment Authorization Grants Do Not Contain Any Limit on the Number of Grants a Person May Receive.**

At the time the parties entered the Settlement, the regulations governing employment authorization provided that "an alien paroled into the United States temporarily for urgent humanitarian reasons or significant public benefit pursuant to

section 212(d)(5) of the [INA]" "must apply for work authorization" and "[i]f authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document." 8 C.F.R. § 274a.12(c)(11) (2023). The regulation further provides that "USCIS, in its discretion, may establish a specific validity period for an employment authorization document, which may include any period when an administrative appeal or judicial review of an application or petition is pending." *Id.* § 274a.12(c).

The Settlement tracks the language in the regulations: if a class member or QAFM receives parole, or re-parole, they "may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11)." Settlement § C.1., at 15, 18. When a parolee's application for employment authorization is "approved, the time frame for employment authorization will align with the duration of parole" or will "align with the period of re-parole." *Id.* § C.1., at 15, 18. Initial grants of parole for class members and QAFM last for 36 months under the Settlement. *See* Settlement § C.1., at 15 ("If the parole request is approved, USCIS will . . . authoriz[e] parole for a period of 36 months from the date the individual is paroled at the port of entry (for individuals outside the United States) or . . . for 36 months from the date parole is approved (for requests for parole in place)."). If a class member is later "approved for re-parole, the authorized period of parole will be for the period needed to achieve the stated purpose, up to an additional thirty-six months." Settlement § C.1., at 17.

HR-1 amended the INA to provide that "[t]he employment authorization for each alien paroled into the United States, or any renewal or extension of such parole, shall be valid for a period of 1 year or for the duration of the alien's parole, whichever is shorter." 8 U.S.C. § 1809(a) (Pub. Law No. 119-21 § 100010a); *see also* 8 U.S.C. § 1803(b)(1) (Pub. Law No. 119-21 § 100003(b)(1)).

# ARGUMENT

## I. THE COURT SHOULD NOT MODIFY THE SETTLEMENT TO REMOVE THE FEE EXEMPTION PROVISIONS.

Defendants' Rule 60(b) Motion should be denied. The Settlement specifically *exempted* Ms. L. class members and QAFMs from fees that accompany applications for benefits. Settlement § C.1, at 14–15, 18. This choice, agreed to by the Parties, is crucial to achieve the ends of the Settlement: to allow families to reunify and obtain immigration relief absent the taint of the family separation policies the court found unconstitutional. *See Ms. L. v. U.S. Immig. & Cust. Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019).

Defendants argue that amendments to the INA conflict with the Settlement. Under their view, a class member who seeks the ultimate relief in the form of an asylum process, must pay (1) $1,000 for a parole application, (2) $550 for an initial employment authorization application and $275 for each annual renewal application, (3) $100 for an asylum application and each year that application is pending. 8 U.S.C. §§ 1802(b), 1803(b)(2), 1804(c), 1808, 1809(b). For three years of parole and EAD and an asylum application, a class or family member would have to pay between $2,200 and $2,400. This structure would effectively bar class members and QAFMs from accessing benefits and undermine the ends of the settlement. *See, e.g.*, 9th Suppl. Decl. of Anilú Chadwick (Sept. 24, 2025); Suppl. Decl. of Marien Velez Alcaide (Sept. 24, 2025).

### A. There is No Conflict Between the Legislative Changes and the Settlement's Fee Exemption Provisions.

Defendants "bear[] the burden of establishing that a significant change in circumstances warrants revision of the [Settlement]." *Flores v. Lynch* ("*Flores I*"), 828 F.3d 898, 909–10 (9th Cir. 2016) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992)). "When the basis for modification is a change in law, the moving party must establish that the provision it seeks to modify has become 'impermissible.'"

*Id.* at 910 (quoting *Rufo*, 502 U.S. at 388); *see also Flores v. Rosen* ("*Flores III*"), 984 F.3d 720, 741 (2020). Here, HR-1 cannot serve as a basis to modify the Settlement's fee provisions because it does not render these provisions "impermissible."

The language of the new statute does not require any modification of the Settlement, because the new statute prohibits only fee waivers or reductions, but does not prohibit USCIS from exempting certain applicants from fees.

Courts have an "obligation to interpret statutes with the assumption that Congress is aware of the legal context in which it is legislating." *Flores v. Sessions* ("*Flores II*"), 862 F.3d 863, 875 (9th Cir. 2017) (internal quotation marks and citations omitted). From the time parties negotiated and entered the Settlement through the day HR-1 became law, the regulatory scheme governing fees for parole, asylum, and employment authorization applications defined and treated fee waivers differently from fee exemptions. *See* 8 C.F.R. § 106.3 (2020); 8 C.F.R. § 106.3 (2024). Fundamental principles of interpretation confirm that fee waivers are distinct from fee exemptions. It is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute, . . . so that no part will be inoperative or superfluous, void or insignificant." *U.S. v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019) (internal quotation marks and citations omitted). Fee waivers and fee exemptions appear in separate sections within the regulation, and the process for obtaining a fee waiver is distinct from the process of obtaining an exemption—a waiver requires an application demonstrating eligibility for a waiver, while the exemption provisions do not require the applicant to submit any such request. *Compare* 8 C.F.R. § 106.3(a) (2020) ("Fee waiver") *with* 8 C.F.R. § 106.3(e) (2020) ("Exemptions"); *compare* 8 C.F.R. § 106.3(a) (2024) ("Waiver of fees") *with* 8 C.F.R. § 106.3(b) ("Humanitarian fee exemptions") *and with* 8 C.F.R. § 106.3(c) ("Director's waiver or exemption exception").

The "Director's waiver or exemption exception" provision, first introduced in the 2024 rule, further indicates that waivers and exemptions are distinct by using the

disjunctive word "or." This provision recognizes USCIS's authority to authorize a "waiver of *or* exemption from" a fee, 8 C.F.R. § 106.3(c) (emphasis added), and "[a]s a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately." *U.S. v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) (internal quotation marks and citations omitted). (emphasis added).

The Settlement does not require that Defendants waive any of the class or family members' fees; instead it requires that USCIS "exempt" class members and QAFMs from parole and employment authorization application filing fees and explicitly states that no class member or QAFM would need to file a fee waiver application or pay a fee in order to apply. *See* Settlement § C.1., at 14 ("USCIS will *exempt* the filing fee for the Form I-131, Application for Travel Document (parole application), for all Ms. L. Settlement Class members' and [QAFMs]' parole requests . . . .") (emphasis added); *id.* at 15 ("An initial Form I-765, Application for Employment Authorization (EAD application), will be *accepted and adjudicated without a fee or a fee waiver required* . . . .") (emphasis added); *id.* at 18 ("USCIS will also *exempt* the filing fee for one Form I-765 renewal application for employment authorization, *with no fee waiver application required*. . . .") (emphasis added); *Id.* ("Ms. L. Settlement Class members and [QAFMs] requesting re-parole will not be required to pay the parole application fee.").

The Settlement must be read as a whole to give effect to the Parties' intent. Cal. Civ. Code Ann. § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273, 287 (Cal. App. 1st Dist. 1998) ("We ascertain the intent of the parties by considering an agreement as a whole, not by interpreting a provision in isolation."); *Kalnoki v. First Am. Tr. Servicing Sols., LLC*, 214 Cal. Rptr. 3d 292, 304 (Cal. App. 3d Dist. 2017) ("[C]ourts must give a reasonable and commonsense interpretation of a contract consistent with the parties' apparent intent") (internal quotation marks and citations omitted); *see Ms. L. v. U.S. Immig. and*

*Cust. Enf't*, No. 18CV0428 DMS (AHG), 2025 WL 1657597, at *8 (S.D. Cal. June 10, 2025) (construing a passage within the "broader framework of the Settlement Agreement"), *motion for relief from judgment denied*, 2025 WL 2590329 (S.D. Cal. July 24, 2025).  The clear intent of the Settlement was to place costs on Defendants for relief under the Settlement to ensure that costs and fees did not serve as a barrier to class members and QAFMs achieving relief under the Settlement—the Settlement explicitly exempted class members and QAFMs from every other existing application fee, and also required that the Government pay for other forms of assistance including travel and legal assistance, behavioral health care, medical co-payment, and housing assistance. *See* Settlement §§ IV.A., IV.B., IV.C.1.  Reading the Settlement as a whole to ascertain the intent of the Parties, the reasonable construction of the Settlement is that Defendants must exempt class members and QAFMs from immigration application fees, including application fees for parole, employment authorization, and asylum.[1]

Although the new statute bars fee waivers, it does not mention exemptions at all. *See* HR-1, Title X, Subtitle A, Part I, Sections 100001 through 1000018, Defendants assert that "USCIS has no authority to . . . exempt the new statutory fees." Defs.' Mot. 4.  Defendants' assertion is meritless.

---

[1] The Settlement should also be construed to exempt class and family members from asylum application fees.  While the parties were negotiating the Settlement, USCIS was enjoined from collecting the $50 asylum fee, and on January 4, 2023, USCIS proposed a rule that would remove the fee for asylum applications within the regulation, in light of that injunction and other considerations. *See Immig. Legal Res. Ctr.*, 491 F. Supp. 3d at 548; 88 FR 402.  Thus, the Settlement did not need to explicitly or specifically provide for an exemption to the asylum fee because there was no fee imposed at the time.  *See id.*  But the only reasonable construction of the Settlement when considering the Settlement as a whole, and its goal of maintaining family unity, requires that class members and QAFMs be exempted from asylum application fees.  Civ. Code Ann. § 1641; *Badie*, 79 Cal. Rptr. 2d at 287.

Under this Circuit's precedents, the Court may not construe HR-1's silence as to exemptions as a repeal of the Settlement's fee exemption provisions. *See Flores II*, 862 F.3d at 875 (finding that a new statute did not implicitly invalidate a portion of a settlement because "[i]f Congress had intended to terminate the settlement agreement in whole or in part, it would have said so."); *id.* ("When asked to find that Congress has overruled a binding agreement incorporated into a judicial decree—. . . we should avoid the treacherous course of inferring from Congress's silence any affirmative intentions." (internal quotation marks omitted). This Court must presume that Congress was aware of both the regulatory scheme governing parole, asylum, and employment authorization application fees and the government's obligations under the Settlement at the time it enacted HR-1. *Id.* (holding that "Congress was on notice with respect to the government's obligations under the nationwide *Flores* Settlement and resulting consent decree" when it enacted the legislation at issue) (internal quotation marks and citations omitted).

Congress was therefore aware that the regulatory scheme recognized a difference between fee waivers and fee exemptions, and that under this scheme, the Settlement required USCIS to exempt class members and QAFMs from fees, rather than accept fee waivers. With this presumption in mind, Congress had the "opportunity to address" the fee exemption requirements of the Settlement here, as in *Flores*, "and to explicitly modify [them] if it wished to do so." *Id.* But HR-1 does not even mention fee exemptions, "let alone provide[] for their elimination." *Id.*

Insofar as Defendants are suggesting that the language in each new fee provision that the Secretary of the DHS "shall require payment of [the new] fee" prohibits DHS from accepting fee exemptions and waivers, this is not a reasonable construction of the statute. This broad construction would render superfluous the language within each statute that "[f]ees required to be paid under this section shall not be waived or reduced." *E.g.*, 8 U.S.C. § 1808(d). There is no reason to expressly prohibit waivers if the "shall

11

18cv00428

require payment" clause already precludes waivers. Such a construction would violate "[t]he cardinal principle of interpretation that courts 'must give effect, if possible, to every clause and word of a statute, . . . so that no part will be . . . superfluous . . . .'" *Corrales-Vazquez*, 931 F.3d at 950 (internal quotation marks and citations omitted).

Because HR-1 does not prohibit fee exemptions, the legislative changes in HR-1 do not leave Defendants unable to comply with the Settlement.

### B. The Exemption from Fees is Required to Address the Constitutional Injury.

Imposing fees on class and family members would raise serious questions as to whether the agreed-on Settlement is sufficient to address the constitutional injury the Court enjoined in 2018 that has been at the heart of the case. *Ms. L.*, 310 F. Supp. 3d at 1145. Avoidance of such serious constitutional questions is another reason to reject Defendants' motion on the statutory grounds outlined above. *U.S. v. Steinman*, 130 F.4th 693, 716 (9th Cir. 2025) (Courts have an "obligation to avoid deciding constitutional questions needlessly when there are other options to resolve a case.") (quotation marks omitted).

While Congress may change the substantive law underlying a continuing court decree "Congress is clearly without power to modify the underlying constitutional rights at stake." *Gilmore v. California*, 220 F.3d 987, 1002 (9th Cir. 2000). "Congress cannot overrule prophylactic remedy designed to prevent violation of constitutional rights" or otherwise impose "restrictions on" a remedy for a constitutional violation that "prevent[s] vindication of the right." *Id.* (citing *Dickerson v. United States*, 530 U.S. 428 (2000)); *cf. Rufo* 502 U.S. at 391 (a modification to a consent decree "must not create or perpetuate a constitutional violation.").

Here, the Court has held that Defendants' practice of separating class members from their children without any showing of unfitness or dangerousness, and failing to reunify them, likely violated class members' right to substantive due process. *Ms. L.*,

310 F. Supp. 3d at 1145. The Settlement provided a remedy for those violations, including setting forth processes to reunify families whom Defendants had forcibly separated. A necessary part of this process are the exemptions from all fees that would otherwise be required for class members to return and live with their families in the United States. Class members and QAFMs cannot pay these fees and imposed them would impermissibly restrict the remedy for the constitutional injury. *See e.g.*, 9th Suppl. Chadwick Decl. ¶ 5. If the Court were to find that HR-1 does invalidate the Settlement's fee exemption provisions, then the provisions of HR-1 would impose restrictions on the Settlement's remedy that prevent vindication of class member's constitutional due process rights. *Gilmore*, 220 F.3d at 1002.

### C. Defendants' Proposed Modification Is Not Suitably Tailored to the Change in Law.

Even if there were a conflict between the Settlement and HR-1, Defendants' motion should be denied because Defendants have failed to propose a suitably tailored modification to the Settlement. If a party can establish that a change in law warrants modification of a Settlement, "the party must then propose a modification that is "suitably tailored to the changed circumstance." *Nat'l Lab. Rel. Bd. v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Union, Loc. 433*, 891 F.3d 1182, 1186 (9th Cir. 2018); *see also Rufo*, 502 U.S. at 391. As the Supreme Court emphasized in *Rufo*, "[a] court should do no more" than approve a "suitably tailored" modification "for . . . a final judgment . . . may be reopened only to the extent that equity requires." *Id.* at 391.

Eliminating the Settlement's exemptions from any application fees is not suitably tailored to the legislative changes, and in fact will undermine the Settlement, because many class members and QAFMs will be unable to pay the thousands of dollars Defendants would impose in order to access legal relief under the Settlement. *See, e.g.* Chadwick Decl. ¶ 5; Suppl. Alcaide Decl. ¶ 10. Defendants agreed to a binding

Settlement in this case, and as part of that Settlement, Defendants agreed to pay costs associated with *Ms. L.* class members' applications for legal relief under the Settlement. Defendants only proposed modification would permit Defendants to renege entirely on their promises to pay for these applications, unraveling a fundamental requirement of the Settlement. Yet Defendants have not provided a proposed modification that is suitably tailored to the change in law.

### D. Defendants' Current Imposition of Fees Violates the Court's August 25 Order Extending Parole and Employment Authorization.

Finally, even if some modification was appropriate, Defendants' imposition of any application fees for parole and employment authorization renewals *in the next six months* would violate the Court's August 25 order. On August 25, the Court issued an order extending parole and work authorization grants that were currently in place for six months following the effective date of the government's new contracts with Acacia Center for Justice and Seneca Family of Agencies, and reinstating parole and work authorization grants that lapsed during defendants' breaches for the same period. ECF No. 869 at 3. The extensions and renewals under this Order were effective immediately; the Court properly did not require that class and family members submit applications to achieve this relief. *Id.* Accordingly, there is no basis to impose application fees for parole and work authorization on class members and QAFMs in the next six months, because their parole and work authorization has already been extended by this Court.

Despite this Order, Defendants have not provided any recognition or documentation of these extensions or reinstatements in any way to permit class and family members to demonstrate their active parole and employment authorization to employers and law enforcement. *See* 9th Suppl. Chadwick Decl. ¶ 3. Without documentation demonstrating their status, class members and families risk losing their jobs and possible detention or deportation as they will be unable to show law

enforcement officers that they are lawfully present in the United States. *Id.* Because of this, some class and family members have attempted to submit applications to renew their parole and employment authorization, but Defendants have rejected their applications because they were filed without the fees required in HR-1. *See* 9th Suppl. Chadwick Decl. ¶ 5 (describing seventeen cases where class members and QAFMs have had applications without fees rejected); Decl. of Catherine Weiss (Sept. 24, 2025).[2] At a minimum, Defendants should provide the extensions required by the Court's order; failure to do so by rejecting applications and taking no further steps to extend parole and employment authorization is a violation of the Court's Order.

## II. THE NEW LEGISLATION DOES NOT REQUIRE THAT CLASS AND FAMILY MEMBERS SUBMIT ANNUAL EMPLOYMENT AUTHORIZATION APPLICATIONS.

Defendants assert that HR-1 conflicts with the Settlement because the Settlement requires Defendants to issue employment authorization grants that align with parole, for up to three years, while HR-1 only permits employment authorization grants of up to one year. Defs.' Mot. 3. The only modification Defendants propose appears to be removing the requirement that employment authorization "align[s] with the duration of parole" or re-parole altogether. *Id.*

To the extent that HR-1 conflicts with the Settlement, Defendants' proposed modification is again not suitably tailored to the change in law. HR-1 does not limit the number of times a parolee may reapply for employment authorization, nor does it require that Defendants conduct a full application process for each subsequent renewal

---

[2] While the current USCIS fee schedule exempts fees for parole applications under *Ms. L.*, *see supra* Argument Section I(A), the USCIS fee schedule requires application fees for all re-parole applications where the applicant is also applying for employment authorization, regardless of whether that applicant is a class member or QAFM. *See* Fee Schedule at 48, https://www.uscis.gov/sites/default/files/document/forms/g-1055.pdf [https://perma.cc/QX7Z-L7QV] (last visited Sept. 24, 2025).

of employment authorization. *See* Pub. Law No. 119-21 § 100010a. It merely provides that "[t]he employment authorization . . . shall be valid for a period of 1 year or for the duration of the alien's parole, whichever is shorter." 8 U.S.C. § 1809(a) (Pub. Law No. 119-21 § 100010a); *see also* 8 U.S.C. § 1803(b)(1) (Pub. Law No. 119-21 § 100003(b)(1)). The Court could institute a more suitably tailored modification of the Settlement that requires Defendants to renew class members and QAFMs employment authorization each year for the duration of their parole.

Further, requiring an annual renewal of employment authorization, which involves a $275 fee, would raise the same constitutional concerns addressed *supra* Argument Section I(b), because even if class members and QAFMs could raise $550 to afford the initial application fee, they would owe hundreds of dollars for each renewal application. Imposing a requirement that class and family members need to apply to renew their employment authorization each year would thus impede class and family members' ability to access the Settlement's relief.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Rule 60(b) Motion.

DATED: September 24, 2025                    Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org

*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*
'

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T:  (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Ms. L Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

# CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt
