BRETT A. SHUMATE
Assistant Attorney General
Civil Division
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DEAN P. DE LAS ALAS
DANIEL SCHUTRUM-BOWARD
Trial Attorneys

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 919-1670
    Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. Immigration and Customs Enforcement (ICE), et al. <br><br> *Defendants*. | Case No. 3:18-cv-00428-DMS-MDD <br><br> Date Filed: October 3, 2025 <br><br> **DEFENDANTS' REPLY IN SUPPORT OF NOTICE OF IMPLEMENTATION OF NEW STATUTE AND RULE 60(b) MOTION FOR PARTIAL RELIEF FROM SECTION IV.C.1 OF THE *MS. L.* SETTLEMENT AGREEMENT** <br><br> Hon. Dana M. Sabraw <br> Courtroom: 13A |

Plaintiffs misconstrue Defendants' position. Defendants do not request modification of the *Ms. L.* Settlement Agreement to "remove" the agreed-upon "fee exemption provision[s]" already therein, Pl.'s Opp., ECF No. 897 at 8, and Defendants will continue to abide by their agreement to exempt the fees referenced in the *Ms. L.* Settlement Agreement that existed and were in effect at the time the parties executed the *Ms. L.* Settlement Agreement. Instead, Defendants seek to notify the Court and *Ms. L.* Class counsel that Defendant U.S. Department of Homeland Security (DHS), and its subcomponent U.S. Citizenship and Immigration Services (USCIS), must comply with the requirement of HR-1 to collect certain new fees that Congress imposed after the Court entered the *Ms. L.* Settlement Agreement. Defendants do, however, seek modification of § IV.C.1 of the *Ms. L.* Settlement Agreement as to the duration of employment authorization permitted therein, which directly conflicts with HR-1—specifically, the provisions codified at 8 U.S.C. § 1803(b)(1) and § 1809(a).

## ARGUMENT

### I. The New Fees Do Not Conflict with the *Ms. L.* Settlement Agreement, Nor Does the *Ms. L.* Settlement Agreement Excuse Those Fees.

Plaintiffs appear to misapprehend USCIS's authority to exempt or waive fees, particularly as said authority relates to the immigration-related fees created by HR-1. With HR-1's enactment, Congress has effectively created a new category of immigration-related fees that DHS is mandated to collect without exception (or, in the instance of the immigration parole fee, limited and specifically enumerated exceptions).

DHS's pre-existing statutory authority to collect or exempt filing fees stems from 8 U.S.C. § 1356(m). Under that authority, DHS "may" set "adjudication fees" to "ensure recovery of the full costs of providing all [adjudication and naturalization] services." 8

U.S.C. § 1356(m); *see also* 8 C.F.R. § 106.2 (implementing 8 U.S.C. § 1356(m)). Section 1356 existed before HR-1 and sets forth the fees DHS may collect to cover its operational costs, "including the costs of similar services provided without charge to asylum applicants or other immigrants." 8 U.S.C. § 1356(m). Accordingly, DHS may provide adjudication services for free and fund those free services with the fees charged to other, unrelated filings. *See id*.

DHS has exercised its discretion to provide free adjudication services by providing that a fee may be waived upon request, by codifying "no fee," setting a zero-dollar fee, or not codifying a fee for a particular service that USCIS administers based on its § 1356(m) discretion. *See, e.g.*, 8 C.F.R. § 106.3(b). DHS has also codified authority in the regulations for the Director of USCIS to provide exemptions from or waive any fee required by 8 C.F.R. § 106.2 for a case or specific class of cases, if the Director determines that such action would be in "the public interest" and the action is "consistent with the applicable law." 8 C.F.R. § 106.3(c).

Conversely from the use of "*may*" in § 1356(m), HR-1 mandates that DHS "*shall* require the payment of" fees related to parole and applications for parole-based employment authorization, as well as asylum applications. *See* 8 U.S.C. §§ 1802(a), 1803(b)(1), 1804(a), 1808(a), 1809(a) (emphasis added). Additionally, unlike the filing fees at 8 C.F.R. § 106.2, collected for purposes of recovering the cost of adjudication and naturalization services, *see* 8 U.S.C. § 1356(m), 8 U.S.C. § 1804(a) requires the payment of a fee "by any alien who is paroled into the United States," and thus requires the fee after an alien has already applied for and been granted parole. Congress did not confer upon DHS the authority to waive or reduce these fees.

The authority in 8 C.F.R. § 106.3(c) is limited to waiving or exempting the fees

in 8 C.F.R. § 106.2 in accordance with 8 U.S.C. § 1356(m). It does not confer general, prospective authority to excuse any and all immigration related fees, especially fees that Congress requires in later enacted legislation. Nor does the *Ms. L.* Settlement Agreement provide independent authority for USCIS or DHS to exempt any and all fees for *Ms. L.* Settlement Class members and Qualifying Additional Family Members (QAFMs); rather the *Ms. L.* Settlement Agreement reflects DHS's agreement to invoke the USCIS Director's discretionary fee exemption authority at 8 C.F.R. § 106.3(c).

Plaintiffs are correct that in the HR-1 fee provisions, *see* 8 U.S.C. §§ 1802, 1803, 1804, 1808, 1809, Congress did not include language explicitly prohibiting DHS from granting fee "exemptions," as opposed to "waivers," *see* Opp. at 3-6, but the plain text establishes that DHS cannot ignore or reduce the statutorily mandated fees. Crucially, Congress specified, in each section, that DHS "shall require the payment of a fee." 8 U.S.C. §§ 1802(a), 1803(b), 1804(a), 1808(a), 1809(a). Congress also prohibited DHS from "waiv[ing] or reduc[ing]" the fees. 8 U.S.C. §§ 1802(e), 1803(b)(5), 1804(f), 1808(d), 1809(d). Plaintiffs' proposal would effectively constitute an impermissible reduction, unrooted in statute or the *Ms. L.* Settlement Agreement, of the statutorily required fee to zero dollars.[1] This would require the government to ignore statutory

---

[1] Plaintiffs argue that reading "shall require payment of [the new] fee" to prohibit fee exemptions is an unreasonable construction of the statute that renders superfluous the language that the fees "shall not be waived or reduced." Opp. at 12 (citing 8 U.S.C. § 1808(d)). This argument is misplaced. Alleged superfluity aside, Congress must grant DHS authority to act, including the action of excusing statutorily mandated fees. Congress did not confer such authority with regard to the HR-1 fees. Additionally, to the extent the title of the subsections "No fee waiver" could be interpreted to restrict the subsections' prohibition to waivers only, and not other forms of categorical reduction or excusal of fees, titles are not controlling, and the entire text of the statute must be considered—including the unequivocal use of "shall." *See Brotherhood of R.R.*

3

requirements.

Notably, moreover, 8 U.S.C. § 1804, which requires collection of a fee from "any alien who is paroled into the United States," does contain a list of enumerated "[e]xceptions" to said fee; yet Congress, despite its presumed awareness of the *Ms. L.* Settlement Agreement, evidently chose not to relieve *Ms. L.* Settlement Class members or their QAFMs from this fee, nor did it include an open-ended provision conferring on DHS the discretion to waive, reduce, or except the fee in any circumstance other than those enumerated by the statute. *Flores v. Sessions*, 862 F.3d 863, 875 (9th Cir. 2017) (considering if certain Acts left "'no room' for bond hearings for unaccompanied minors" required by *Flores* decree, without any such relevant statutory command in Acts, and assuming "Congress [was] aware of the legal context in which it [was] legislating" to find no conflict between Acts and decree). Likewise, Congress evidently did not eliminate any of the other HR-1 fees for said individuals, given the parallel, plain text of those provisions.[2]

---

*Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947) (explaining that titles are "tools available for resolution of doubt," but "cannot undo or limit that which the text makes plain."); *Garcia v. USCIS*, 146 F.4th 743, 760 (9th Cir. 2025) ("The Supreme Court has long cautioned that courts should follow 'the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text.'") (Bress, J., concurring) (quoting *R.R. Trainmen*, 331 U.S. at 529).

[2] Plaintiffs suggest that *Ms. L.* Settlement Class members cannot pay the new fees, thus impeding their vindication of the due process right of which the Court found they had been deprived. *See* Opp. at 13-14. Plaintiffs ask the Court to apply the cannon of constitutional avoidance to deny Defendants' motion, *id.* at 13, but the "canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) (citation omitted). As discussed, the fee provisions are clear. Further, Plaintiffs marshal no authority showing that the fees

4

While there may exist policy disagreements regarding requiring the new fees from individuals covered by the *Ms. L.* Settlement Agreement, "[n]o amount of policy-talk can overcome [the] plain statutory command[s]" in HR-1 to collect the fees. *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021). The recently enacted and unambiguous statutory commands at issue require the collection of the new fees, and they do not conflict with the terms of the *Ms. L.* Settlement Agreement.

## II. DHS Is Implementing the Court's August 25 Order Extending or Reinstating Parole and Employment Authorization.

DHS is implementing the August 25 Order to extend or reinstate initial parole periods and associated employment authorization of impacted individuals without requiring them to file a new form or request a new period of parole. *See* ECF No. 869. Indeed, in light of the Order, new applications are not necessary to receive the reinstatement or extension, as applicable. *See id.* at 3-4 (granting "Plaintiffs request [that] the Court . . . extend parole and work authorization grants currently in place for

---

violate the constitutional, even in the context of a settlement like the one here. Plaintiffs cite to *Gilmore v. California*, which examined provisions in the Prison Litigation Reform Act providing for termination of relief in prison conditions cases. 220 F.3d 987 (9th Cir. 2000). *Gilmore* is distinguishable. HR-1 does not terminate relief provided by the *Ms. L.* Settlement Agreement; as explained, the new fees are separate from those already exempted. Moreover, Congress has legislated without heeding to an alien's inability to pay in other contexts; for example, aliens may be represented in removal proceedings, but at no expense to the government. *See* 8 U.S.C. § 1229a(b)(4)(A) ("[T]he alien shall have the privilege of being represented, at no expense to the Government . . ."). The law draws no line based on ability to pay, nor does the Settlement Agreement, despite the parties' carefully crafted agreement providing limited, permissible legal assistance at no cost; indeed, the Settlement Agreement respects the statutory rule on assistance of counsel at no government expense, notwithstanding the Settlement Agreement's purpose. *See* ECF No. 721-1 § IV.B.2.c.i.a., at 10 (providing for "[legal] assistance . . . *short of full representation*") (emphasis added).

six months following the effective date of the Government's new contracts with Acacia and Seneca").

Requiring new applications would run counter to the Order's purpose, as the Court issued it to remedy, *inter alia*, the breach it found in the provision of legal services—to include preparing such applications. *See id.* at 2. Thus, USCIS is necessarily treating any applications it has received from the impacted individuals as requests for re-parole and/or renewal of employment authorization which will take effect after the Court-ordered extensions end; those applications are subject to the HR-1 fees. Additionally, any concern that *Ms. L.* Settlement Class members and QAFMs are at risk of removal is misplaced, as the Orders prohibiting their removal remain in effect. *See* ECF No. 803 at 2; 840 at 1-2.

### III.  Period of Employment Authorization.

Plaintiffs effectively ask the Court to order DHS to renew *sua sponte* employment authorization "each year" so that it aligns with *Ms. L.* Settlement Class members' and QAFMs' periods of parole. Opp. at 16-17. This would be a significant modification and, although the Court has similarly ordered extensions of employment authorization, ECF No. 869, it did so to remedy breaches of the *Ms. L.* Settlement Agreement—not to adjust the *Ms. L.* Settlement Agreement to new law duly enacted by Congress, *see* 8 U.S.C. §§ 1803(b)(1), 1809(a). Indeed, 8 C.F.R. § 274a.12(c) has and still does mandate that aliens "must apply for work authorization." DHS, "*in its discretion*," may "establish a specific validity period for an employment authorization document." 8 C.F.R. § 274a.12(c) (emphasis added); *see also* 8 C.F.R. § 274a.13(a)(1) ("The approval of applications filed under 8 CFR 274a.12(c) . . . are within the discretion of USCIS.").

So too does the *Ms. L.* Settlement Agreement recognize that *Ms. L.* Settlement

6

Class members and QAFMs must apply for employment authorization by filing the appropriate form, and that DHS is not required to approve employment authorization, given the discretionary nature of such determinations. *See* ECF No. 721-1 § IV.C.1, at 15 ("An initial Form I-765, *Application for Employment Authorization* (EAD application), will be accepted and adjudicated without a fee or a fee waiver required, *and if approved*, the time frame for employment authorization will align with the duration of parole." (emphasis added); *see also id* at 18 ("If the *Ms. L.* Settlement Class member or [QAFM's] re-parole request is approved the applicant *may apply* for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) to align with the period of re-parole." (emphasis added)).

Plaintiffs' proposed remedy would eliminate DHS's discretion with respect to granting or renewing employment authorization and usurp its administrative decisions about how employment authorization can be requested, in violation of 8 CFR §§ 274a.12(c)(11) and 274a.13(a). While Defendants agree that HR-1 does not limit the number of times that USCIS may approve an employment authorization renewal request for an alien who remains in a valid period of parole, USCIS should not be compelled to *sua sponte* renew, on an ongoing, annual basis, employment authorization, without an application, such that USCIS's discretionary authority is effectively nullified as to *Ms. L.* Settlement Class members and QAFMs. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).

Instead, a suitably tailored, statutorily compliant, modification would be to remove the language in the *Ms. L.* Settlement Agreement stating that the timeframe for employment authorization will align with the duration of parole. This modification in response to a newly passed statute would appropriately maintain USCIS's discretion as

required by statutes and regulations.

Another suitably tailored approach would be to modify the relevant provision in the *Ms. L.* Settlement Agreement to reflect the new statutory one-year limitation recently promulgated by Congress. To do so, § IV.C.1. could be modified as follows: "An initial Form I-765, *Application for Employment Authorization* (EAD application), will be accepted and adjudicated without a fee or a fee waiver required, and if approved, the time frame for employment authorization will align with the duration of parole, *or will be for a period of one year, whichever is shorter*." Regarding the provision pertaining to employment authorization attendant to re-parole, § IV.C.1. could also be modified as follows: "If the *Ms. L.* Settlement Class member or [QAFMs'] re-parole request is approved, the applicant may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) to align with the period of re-parole, *or for a period of one year, whichever is shorter*."

In light of the clear statutory limitation on the duration of employment authorization based on a grant of parole—which individuals may seek to renew annually by filing an application—the Court should modify § IV.C.1. to accord with 8 U.S.C. §§ 1803(b)(1) and 1809(a).

## CONCLUSION

Congress has imposed a new mandatory temporal limitation on parole-based employment authorization that makes it impossible for DHS to comply with one aspect of the *Ms. L.* Settlement Agreement. The Court should modify the *Ms. L.* Settlement Agreement accordingly. Aside from the temporal limitation on parole-based employment authorization, the new law does not conflict with the express terms of the *Ms. L.* Settlement Agreement. DHS states that *Ms. L.* Settlement Class members and

QAFMs remain exempt from the 8 C.F.R. § 106.2 filing fees that existed and were in effect at the time the *Ms. L.* Settlement Agreement was finalized, as it agreed to in the *Ms. L.* Settlement Agreement. Per the requirements of the new law, DHS must collect the new fees, however, as the collection thereof is mandatory and cannot be waived, exempted, or otherwise reduced.

Dated: October 3, 2025.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

DEAN P. DE LAS ALAS
DANIEL SCHUTRUM-BOWARD
Trial Attorneys

*/s/ Daniel R Schutrum-Boward*
Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 919-1670
Daniel.R.Schutrum-Boward@usdoj.gov

*Attorneys for Defendants*