Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al.,<br><br>     *Petitioners-Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br><br>     *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: October 14, 2025<br><br>**MOTION TO RETURN REMOVED CLASS MEMBERS AND QUALIFYING ADDITIONAL FAMILY MEMBERS** |

1

**INTRODUCTION**

2    In the last few months, Defendants have deported at least eight individuals who
3    are either *Ms. L.* class members or qualifying additional family members ("QAFMs"),
4    from four different families, without any valid basis.  In each of these cases, Defendants
5    knew, or at the very least should have known, that each person they deported was a
6    class member, a QAFM, or one of their United States citizen children.  Each of these
7    eight removed class members and QAFMs had attempted to gain the benefits of the
8    Settlement before their removal, and not one had been accused of any crime since their
9    admission to the *Ms. L.* class or grant of parole as a *Ms. L.* family member.  Class
10   counsel did not consent to the removal in any of these cases.

11   By removing these class and family members, Defendants violated the *Ms. L.*
12   Settlement Agreement, subjected them to more harm and trauma, and thwarted their
13   ability to receive the Settlement's benefits.  Not only do these removals violate the
14   Settlement, but Defendants removed several of these individuals after June 27, in
15   violation of the Court's stay on removals of class and family members, ECF No. 803.

16   The parties met and conferred on August 26, 2025, and Defendants stated that
17   they were not willing to return any of these removed individuals.[1]  Plaintiffs respectfully
18   request that the Court direct Defendants to take all available steps to facilitate the return
19   of these removed individuals to the United States, at Defendants' expense.[2]

20

21

22

23

24   [1] Class counsel learned of one of these deported families after the August 26 meet and confer and on September 15, asked Defendants whether they would be willing to return
25   the family.  Defendants have still not provided their position.

26

27   [2]  Class counsel is aware of an additional class member who was removed on June 29, after the Court issued its stay order.  *See* ECF No. 813.  Class counsel is still obtaining
28   information about this class member.

**ARGUMENT**

The Court should order that Defendants facilitate the return of the removed class and family members, as well as United States citizen children removed with them. Defendants removed them in violation of the Settlement, and several were even removed in violation of this Court's June 27 stay on removals.

## I. DEFENDANTS VIOLATED THE JUNE 27 STAY OF REMOVALS BY REMOVING S.B.M.C.'S FAMILY[3]

On June 27, the Court issued an order that "Defendants shall not remove any additional Class members or QAFMs defined in the Settlement Agreement." ECF No. 803, ¶ 3. This Order went into effect immediately and was categorical; the Court did not provide for any exceptions. *See id*.

In violation of this Order, on July 18, Defendants removed S.B.M.C., a *Ms. L.* class member, and her minor children, ages 14, 12, and 6. Decl. of S.M.B.C. ¶¶ 1, 26 (Oct. 14, 2025). One of S.M.B.C.'s children is a class member, another is a QAFM, and the youngest is a United States citizen. *Id.* ¶¶ 1–2. Defendants did not notify class counsel before or after they removed S.M.B.C. and her children, and when class counsel asked why this family was removed notwithstanding the Court's stay of removals, Defendants did not provide any explanation.

Where, as here, an individual is deported in violation of a judicial stay, the Ninth Circuit has ordered that the deported individual be returned or permitted to return to the United States. *Singh v. Waters*, 87 F.3d 346, 349–50 (9th Cir. 1996) (directing government to permit non-citizen's return where his deportation violated a stay); *see also Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) (describing court order to return a person deported in violation of a stay).

---

[3] Plaintiffs use acronyms to identify each class member and their family members. The identities of these class members and QAFMs are known to all parties.

18cv00428

Courts in other Circuits have likewise ordered the government to return individuals deported in violation of court orders. *See D.V.D. v. U.S. Dept. of Homeland Sec.*, 784 F. Supp. 3d 401, 412 (D. Mass. 2025) (ordering defendants "to take all immediate steps, including coordinating with Plaintiffs' counsel, to facilitate the return of [plaintiff] to the United States" where the plaintiff's removal violated an immigration judge's order); *Melgar-Salmeron v. Bondi*, No. 23-7792, Doc. No. 35 (2d Cir. June 24, 2025) (ordering the government to facilitate the return of a noncitizen removed in violation of a stay); *J.O.P. v. U.S. Dept. of Homeland Sec.*, 779 F. Supp. 3d 570, 582 (D. Md. 2025) (ordering Defendants to facilitate return of individual removed in violation of judicially enforceable settlement), *app. for stay denied*, 2025 WL 1431263 (4th Cir. May 19, 2025).

Defendants should be required to return S.M.B.C. and her family to the United States.

## II. DEFENDANTS VIOLATED THE SETTLEMENT BY REMOVING CLASS MEMBERS AND QAFMS WITH PAROLE

Defendants violated the Settlement by removing class members and QAFMs from three families who had valid parole and had not committed any intervening crimes. The Settlement's provision providing the opportunity for parole necessarily requires Defendants to recognize a class or family member's parole; if Defendants could remove individuals with valid parole status by merely ignoring or refusing to recognize that status, doing so would render meaningless the parole provisions of the Settlement. *Cf. United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016) (rejecting an interpretation of a plea agreement because it "would render meaningless" a separate provision of the agreement, "contrary to basic principles of contract interpretation"). Indeed, the whole purpose of the parole provisions was to ensure that these families could remain in the United States long enough to apply for asylum under the special Settlement procedures. *See* Settlement § IV.C.2.a, ECF No. 121-1 ("The government

18cv00428

will provide the opportunity for *Ms. L.* Settlement Class members *who are in the United States* to file affirmative asylum applications with USCIS. . . .") (emphasis added).

**1) I.Y.O.D. Family.**  Defendants violated the Settlement when they removed I.Y.O.D., a QAFM with valid parole through January 13, 2027, along with her two young United States citizen children.  Decl. of I.Y.O.D. ¶¶ 1, 5, 9, ECF No. 854-2. Earlier this year, ICE told I.Y.O.D. to bring her children, who are both United States citizens, to an ICE office on April 8 for a "family interview." *Id.* ¶ 7.  She complied. *Id.*  I.Y.O.D. did not bring her three older children because they were in school.  *Id.* When I.Y.O.D. and her two youngest attended the check-in, ICE told her that because she had a removal order, they were going to deport her to Honduras.  *Id.*  I.Y.O.D. told them that she had valid parole and had even brought all of her documents with her, but the ICE officers told her that her parole status did not matter.  *Id.*  ICE arrested her and her two children, and three days later, removed them to Honduras.  *Id.* ¶¶ 7–8.  I.Y.O.D. was not accused of or charged with any crime before she was removed.  *See id.*  Her three oldest children remain in the United States separated from their mother.  *Id.* ¶ 10.

**2) M.M.A.L.**  Defendants violated the Settlement by removing M.M.A.L., a *Ms. L.* class member with valid parole through July 2027.  *See* Decl. of M.M.A.L. ¶¶ 3, 11 (Sept. 19, 2025).  M.M.A.L. has two children, an 11-year-old who is a class member and a 13-year-old who is a QAFM, who also have parole through July 2027.  *Id.* ¶ 3. On June 19, 2025, M.M.A.L. was a passenger in a car driven by a co-worker when law enforcement stopped them.  *Id.* ¶ 4.  The officers did not allege that M.M.A.L. or anyone else in the car committed a crime, but they took M.M.A.L. into custody, and on June 22, ICE removed her to Guatemala without her children.  *Id.* ¶¶ 4–6.  M.M.A.L.'s sister temporarily took in M.M.A.L.'s children, and soon after sent the children to Guatemala on a commercial flight so they could be with their mother.  *Id.* ¶¶ 6–11.

**3) S.M.B.C. Family.**  Defendants violated the Settlement by removing S.M.B.C. and her children despite having granted the family parole through July 2027.  S.M.B.C.

Decl. ¶¶ 5, 26.  Defendants assert that S.M.B.C.'s removal was voluntary, but S.M.B.C. did not agree to be removed.  *Id.* ¶ 26.

S.M.B.C. has been attending ICE check-ins since 2018, after ICE arrested her at the border and separated her from her then five-year-old daughter.  *Id.* ¶¶ 2–4.  In May 2025, after *seven* years of attending these check-ins, S.M.B.C. was placed on a more intensive supervision program, with an ankle monitor and more frequent check-ins.  *Id.* ¶¶ 6, 9, 17.  An ICE officer told her at her May 27 check-in that she had a voluntary deportation order, even though she had never signed a voluntary deportation order, the immigration judge that released S.M.B.C. from detention in 2018 never gave her notice of a future court date, a decision in her asylum case, or a notice of a removal order, and an attorney she consulted told her she did not have a removal order.  *Id.* ¶¶ 3, 8–9. S.M.B.C. told the officer that her family held valid parole status, but the officer told her that her parole did not matter and only asked if her children had passports and told her to buy plane tickets to self-deport.  *Id.* ¶ 12.  The officer also required her to sign a form indicating whether she would want her children to come with her *if* she was ever deported.  *Id.* ¶ 13.  S.M.B.C. checked "yes" on the document; neither she nor her children could bear being separated again.  *Id.*

After that check-in, S.M.B.C.'s boss fired her because he did not want an employee with frequent check-ins and an ankle monitor, and when S.M.B.C. searched for work, employers refused to hire her for those same reasons.  *Id.* ¶ 12.  S.M.B.C. struggled to put food on the table for her children and was facing eviction.  *Id.* ¶ 23. She continued to seek legal assistance regarding her ankle monitor, the removal order ICE told her she had, and ICE's instructions to self-deport, but she could not get any help; at the time Defendants had ended their contract with Acacia Center for Justice and were still not providing class members with individualized legal assistance.  *Id.* ¶¶ 13–15; *see also* ECF Nos. 795, 831.

5

18cv00428

On July 1, 2025, during a telephone check-in with ICE, S.M.B.C. was feeling desperate and broke down, stating that she wanted to give up and return to Honduras; but in that *same* conversation she immediately rescinded that request, telling the officer she did not want to leave. *Id.* ¶ 24. The officer nonetheless demanded she give ICE her family's passports if she did not "return voluntarily." *Id.* ¶ 24. On July 8, S.M.B.C. complied and surrendered her children's passports. *Id.* ¶ 25. An officer then told her that if she did not "self-deport," the government would decide for her, and if she was deported, her children would go to foster care or adoption. *Id.* At a home visit on July 14, S.M.B.C. was feeling overwhelmed and when an officer again brought up voluntary departure, she stated that they might as well "just send me back." *Id.* ¶ 26. Even though she withdrew that statement and told officers that she did not want to go back and that she had never signed any document agreeing to a voluntary removal, the officers took S.M.B.C. and her children to a motel and three days later, on July 18, deported the family to Honduras. *Id.*

Class counsel was *never* contacted even though S.M.B.C. was a class member with valid parole and had stated she did not in fact wish to leave. Had class counsel been contacted, she would have understood her Settlement rights, including the right to seek asylum immediately.

In each of these cases involving class or family members, the removal violated the Settlement because the individuals had valid parole. The government should be required to return them.[4]

_____

[4] Additionally, Defendants violated the Immigration and Nationality Act ("INA") and its implementing regulations, though the Court need not reach that argument here. Where a non-citizen has active humanitarian parole under Section 1182(d)(5)(A) of the INA and has not departed the United States, the government can only terminate their parole upon written notice *and* only "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the [authorized] officials . . . ,

### III. DEFENDANTS BREACHED THE SETTLEMENT AGREEMENT BY REMOVING CLASS MEMBERS AND QAFMS BEFORE THEY OBTAINED PAROLE.

**M.A.J. Family.** Defendants additionally violated the Settlement by removing M.A.J., a thirteen-year-old class member, and his mother and two younger siblings on June 27 without any intervening event by depriving them of the opportunity to obtain legal assistance and apply for parole under the Settlement. *See* Decl. of J.J.A. ¶¶ 1, 21 (Aug. 20, 2025), ECF No. 854-3. M.A.J.'s family had tried to access the Settlement's benefits but never learned that M.A.J. had been successfully admitted into the class and that they were eligible to apply for parole as a class member and QAFMs. First Suppl. Decl. of J.J.A. ¶¶ 7–8 (Oct. 7, 2025). Defendants have been supervising the family for years but failed to inform the family of their status, or provide the family's contact information to legal service providers or class counsel, and have now deported the family before they had an opportunity to obtain parole and the Settlement's benefits. *See* J.J.A. Decl.

In May 2022, before final approval of the Settlement, M.A.J. was living with his mother and two younger siblings in Guatemala and M.A.J.'s mother registered M.A.J. for the *Ms. L.* class. *See* J.J.A. Decl. ¶¶ 2–4; Third Suppl. Decl. of Kayleen Hartman ¶ 5 (Aug. 20, 2025), ECF No. 854-4. M.A.J. was clearly eligible because, in 2019,

---

neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also Noori v. Larose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *7, *13 (S.D. Cal. Oct. 1, 2025) (explaining that the statute and regulations require that to revoke parole under Section 212(b)(5), the government must establish that parole has served its purpose or that neither public nor humanitarian interests support the continued presence of the noncitizen in the United States); *see also Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *7 (D. Or. July 9, 2025) (same). Defendants have never claimed that they revoked the parole of these class and family members, and class counsel is not aware of any written notice Defendants provided them or any basis for revoking these their parole under the regulation. Because Defendants have not revoked these class and family members' parole, their detention and removal was unlawful under the INA.

7

18cv00428

when he was seven, Defendants separated him from his father at the United States border and deported him to Guatemala. First Suppl. J.J.A. Decl. ¶¶ 2–4. M.A.J. was not immediately accepted into the class; he had been separated from his father after the Court's June 26, 2018 injunction, and such separations were generally not added to the class until the Settlement was final. Third Suppl. Decl. of Daniel Galindo ¶ 2 (Oct. 6, 2025). The parties were also still negotiating the criminal records exception to class membership, and government records showed that M.A.J.'s father may have had a prior arrest, although he had no prior *conviction*. *Id.* Under the final Settlement approved in December 2023, arrests alone could not bar class membership, and M.A.J. was admitted to the class. *Id.*; *see* Settlement § II.J.

But M.A.J. and his family never knew that their eligibility for class membership had been resolved. First Suppl. J.J.A. Decl. ¶¶ 7, 15. After their registration, they had monthly calls with KIND, each time checking whether they had been admitted to the class. J.J.A. Decl. ¶ 3; First Suppl. J.J.A. Decl. ¶ 7; Third Suppl. Hartman Decl. ¶ 5. After a year of these calls, M.A.J.'s mother lost contact with anyone who could help them. J.J.A. Decl. ¶ 3. The government had decided to contract with International Organization of Migration ("IOM") for international outreach instead of KIND, but no one informed M.A.J.'s mother of these changes. Third Suppl. Hartman Decl. ¶ 6; *see* J.J.A. Decl. M.A.J.'s mother became desperate because she feared for her family's safety in Guatemala—M.A.J. had been robbed and beaten multiple times on his way to school, and the family had endured years of fear after a gang member had tried to rape M.A.J.'s sister, who was seven years old at the time. First Suppl. J.J.A. Decl. ¶ 8. After several months without any contact nor any indication that the government would agree that the family was eligible, M.A.J.'s mother migrated with M.A.J. and her other children to the United States in August 2023 to keep them safe. *Id.*

When M.A.J. and his family entered the United States, Defendants initially detained them and then released them but required M.A.J's mother to wear an ankle

monitor bracelet and to attend weekly ICE check-ins. *Id.* ¶ 9. She complied. J.J.A. Decl. ¶¶ 6–7. Because of this, Defendants have had updated contact information for the family for the past two years and knew that M.A.J. was a class member and was living with his mother and two younger sisters, who met the Settlement's definition of QAFMs as part of a class member's immediate household. *See id.*; Settlement at § I.L. Despite this, Defendants failed to provide the family's updated contact information to the legal services providers, as required by the Settlement, who could inform M.A.J. and his family of their status and help them apply for parole. *See* Settlement § IV.B.c.iii.(b), at 12 ("Defendants' will, under the Protective Order, ensure that contact information of *Ms. L.* Settlement Class members is provided to the [legal services] contractor . . . ."); Third Suppl. Hartman Decl. ¶ 7. Nor did any government officer ever inform the family of their rights under the Settlement, including the right to apply for parole, despite the family's regular ICE check-ins. J.J.A. Decl. ¶ 22. Nor was class counsel ever informed.

In April 2024, after five months of wearing the ankle bracelet and feeling desperate, the mother called the ICE officer assigned to her case and asked if she and her family *could* be sent to Guatemala. *Id.* ¶ 9. The mother clarified twice in the same phone call, however, that this was merely a question about options; within the conversation the mother made clear she ultimately did not want to pursue that option. *Id.* At her next check-in, the mother again reaffirmed that she did not want her family sent to Guatemala. *Id.* ¶ 10.

More than a year later, in June 2025, an ICE officer sent the mother a message directing her to bring her children with her to her appointment on June 26, just like they had with I.Y.O.D. *Id.* ¶ 13; *see also* I.Y.O.D. Decl. ¶ 7. When the mother and her three children arrived at the appointment, officers informed her that they were going to deport her family and twice told her that if she did not agree to her deportation, she would be separated from her children. J.J.A. Decl. ¶¶ 14, 17–18. Specifically, the officers told her that if she cooperated, they would not separate her from her children or handcuff

9

18cv00428

her, and then again later told her that if she signed a paper that was written only in English, she would not be separated from her children. *Id.* ¶ 18. She cannot read English and no one translated the document into Spanish; she nonetheless signed the paper, without knowing what it said, out of fear of being separated from her young children. *Id.* ¶ 19. ICE removed them to Guatemala the next morning. *Id.* ¶ 21. Throughout this entire time, Defendants never informed the family about the Settlement, alerted Seneca or anyone else about the family, or provided anyone with the family's contact information. *See id.* And the family was removed without Defendants notifying class counsel. By removing M.A.J. and his family before they had an opportunity to understand the Settlement's benefits and the relief available, Defendants violated the Settlement.

Again, had class counsel been contacted, M.A.J.'s mother would have understood her Settlement rights, including the right for her family to seek parole and asylum immediately.

*       *       *

By removing these families, Defendants not only violated the Settlement and deprived them of the ability to apply for asylum, but in some of these cases *re-separated* families. For the past five months, I.Y.O.D.'s family has been separated: the youngest two children from their father, and I.Y.O.D. from her three older children. I.Y.O.D. Decl. ¶ 10. And because I.Y.O.D. has been removed, she herself is separated from her father (S.H.Y.J.), who is a class member. Decl. of S.H.Y.J. (Sept. 9, 2025). Additionally, on June 22, ICE also removed M.M.A.L. without her young children. M.M.A.L. Decl. ¶¶ 11–13.

10

18cv00428

**IV.  THE COURT HAS THE POWER TO ORDER THE GOVERNMENT TO FACILITATE THE RETURN OF THESE CLASS MEMBERS AND FAMILIES**

As this Court has previously done, it has authority to order that a class member or family member that was unlawfully deported be returned to the United States.  Order on Pls.' Mot. Return Parents at 8 (Sept. 4, 2019), ECF No. 456; *see also Singh*, 87 F.3d at 349–50 (ordering that the government permit return when removal violated judicial stay); *Walters v. Reno*, 145 F.3d 1032, 1051 (9th Cir. 1998) (ordering return where removal violated the INA and implementing regulations); *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977) (ordering return where removal violated the Due Process Clause of the U.S. Constitution).[5]  For the same reason, the Court can also order the return of class and family members where the Court deems "such relief . . . necessary for enforcement of the Settlement Agreement." Settlement § VII.D; *see also J.O.P.*, 779 F. Supp. 3d at 582 (ordering "Defendants to facilitate [the plaintiff's] return to the United States so that he can receive the process he was entitled to under the parties' binding Settlement"). Here, moreover, there is also a violation of the Court's own order staying removals.

The Court should further order that these individuals be returned at Defendants' expense in order to return class and family members to the position they would have been in absent the breach.  *See* Settlement § IV.A. ("Defendants will return to the United States *Ms. L.* Settlement Class members and certain [QAFMs] that the FRTF Research Committee determines are necessary for reunification at the government's expense, including the costs of travel and related support, to include travel support that is necessary to facilitate return and reunification.").

---

[5] *Cf. Estrada Rosales v. INS*, 645 F.2d 819, 820–22 (9th Cir. 1981) (ordering return); *Grace v. Sessions*, 2018 WL 3812445, at *1 (D.D.C. Aug. 9, 2018) (same); *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 404–05, 408 (S.D.N.Y. 2004) (same); *Dennis v. I.N.S.*, No. CIV.A. 301CV279SRU, 2002 WL 295100, at *4 (D. Conn. Feb. 19, 2002) (same).

18cv00428

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court direct Defendants to take all available steps to immediately facilitate the return of the individuals described above to the United States at Defendants' expense.


DATED: October 14, 2025                    Respectfully submitted,


                                          /s/ Lee Gelernt
                                          Lee Gelernt*
                                          Daniel A. Galindo (SBN 292854)
                                          Anand Balakrishnan*
                                          Judy Rabinovitz*
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
                                          125 Broad St., 18th Floor
                                          New York, NY 10004
                                          T:  (212) 549-2660
                                          *lgelernt@aclu.org*
                                          *dgalindo@aclu.org*
                                          *abalakrishnan@aclu.org*
                                          *jrabinovitz@aclu.org*

                                          Stephen B. Kang (SBN 292280)
                                          Spencer E. Amdur (SBN 320069)
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
                                          425 California Street, 7th Floor
                                          San Francisco, CA 94104
                                          T:  (415) 343-0783
                                          *skang@aclu.org*
                                          *samdur@aclu.org*

                                          *Attorneys for Ms. L Petitioners-Plaintiffs*
                                          *Admitted Pro Hac Vice*

18cv00428

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18cv00428

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2025, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system.  A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt