BRETT A. SHUMATE
Assistant Attorney General
Civil Division
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
CHRISTINA PARASCANDOLA
Senior Litigation Counsel
DEAN P. DE LAS ALAS
DANIEL SCHUTRUM-BOWARD
Trial Attorneys

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 919-1670
    Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al., | Case No. 3:18-cv-00428-DMS-MDD |
| *Plaintiffs*, | |
| v. | Date Filed: October 31, 2025 |
| U.S. Immigration and Customs Enforcement (ICE), et al. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO RETURN, DKT. 906, AND MOTION FOR PROVISION OF INFORMATION, DKT. 910** |
| *Defendants*. | Hon. Dana M. Sabraw<br>Courtroom: 13A |

1    Plaintiffs ask the Court to order Defendants to bring certain class members and
2    Qualifying Additional Family Members (QAFMs) back to the United States. The Court
3    should deny Plaintiffs' motion, *see* Dkt. 906, because: (1) S.B.M.C. and her children
4    departed voluntarily from United States; and, (2) for those whose departure was not
5    voluntary, the Court lacks the authority to order Defendants to facilitate return to the
6    United States at taxpayer expense. The Court should similarly deny Plaintiffs' motion for
7    provision of information, *see* Dkt. 910, because the government is not required to provide
8    the information Plaintiffs' counsel seek.

9                                **BACKGROUND**

10    On December 1, 2023, the parties jointly submitted the *Ms. L.* Settlement
11    Agreement to this Court for final approval, pursuant to Federal Rule of Civil Procedure
12    23. Dkt. 721. On December 11, 2023, the Court approved the Settlement Agreement and
13    certified a class for settlement purposes between Plaintiffs and Defendants, including the
14    U.S. Department of Homeland Security (DHS), U.S. Department of Justice (DOJ), and
15    U.S. Department of Health and Human Services (HHS). Dkt. 727. In its Order, the Court
16    dismissed Plaintiffs' claims with prejudice, subject to the terms of the Settlement
17    Agreement, and retained jurisdiction for specified purposes, including enforcement of the
18    Settlement Agreement's terms. *Id.* at 2; *Ms. L.* Settlement Agreement, Dkt. 721-1, § VII.D,
19    at 43 ("The Court shall have the power to award such relief and issue such judgments as
20    the Court deems necessary for enforcement of the Settlement Agreement."). On the same
21    day, the Court entered judgment and closed the case. Dkt. 730.

22    **I.  The Court Lacks the Authority to Order the Return of Removed Aliens.**

23    Plaintiffs ask the Court to direct Defendants to "take all available steps to facilitate
24    the return" of the removed individuals at issue to the United States "at Defendants'

25

1

expense." Dkt. 906 at 2. While Plaintiffs use the term "facilitate," they are effectively requesting that the Court direct Defendants to effectuate the return of the removed individuals to the United States. The Court, however, lacks the authority to order such a remedy.

As a threshold matter, an order requiring the government to compel the removed class members' or QAFMs' return to the United States, which Plaintiffs appear to acknowledge, would violate separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (an order to "effectuate" an alien's return from the custody of a foreign "may [have] exceed[ed] the District Court's authority, and ordering the district court to "clarify its directive, with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs"). Matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952); *see also Dep't of State v. Munoz*, 602 U.S. 899, 907 (2024) ("Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'") (quoting *Harisiades*, 342 U.S. at 588); *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the [g]overnment's political departments largely immune from judicial control.'") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), and citing *Harisiades*, 342 U.S. at 588).

Indeed, the President's power to speak for the country "in the field of international relations" is both "plenary and exclusive." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

103, 139 (2020) ("[T]he Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit." (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)). Against this backdrop, the Court lacks the authority to order that the government take any specific action to effectuate the return of the removed class members and QAFMs currently located within the sovereignty of other nations.

Crucially, moreover, the Settlement Agreement contains no agreement by the parties limiting the government's authority to remove individuals or requiring the government to effectuate or facilitate the return of class members or QAFMs at taxpayer expense—nor could the government have permissibly agreed to such terms in light of binding statutes and precedent.[1] Indeed, in the Settlement Agreement, the parties did not agree that the government will grant class members or QAFMs any protection or relief from removal. In fact, the parties agreed that the Settlement Agreement "shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against *Ms. L.* Settlement Class members, consistent with the Constitution and law of the United States, and applicable regulations." *See* Dkt. 727-1, § IX.C. The parties also did not agree that the government will guarantee a grant of parole or anything else that would permit class members or QAFMs to remain in this country. *See id.* § IV.C.1 (stating that class members and QAFMs would have the "opportunity" to apply for parole, with DHS "retain[ing] its discretion to grant or deny

---

[1]    The government has informed Plaintiffs' counsel that it agrees to, in its discretion and on its own accord, facilitate the return of the M.M.A.L. and her family members, but not at taxpayer expense. The parties did agree that "Defendants will return to the United States *Ms. L.* Settlement Class members and certain [QAFMs] that the FRTF Research Committee determines are necessary for reunification at the government's expense," but that provision requires a determination by the Research Committee that is not present here. Dkt. 721-1 at 9.

applications for parole"), § IV.C.2 (stating that class members and QAFMs would have the "opportunity" to apply for asylum, with Defendants retaining the "discretion to grant, deny, dismiss, or refer applications to [the Executive Office for Immigration Review]" for removal proceedings). In fact, Plaintiffs appear to acknowledge that the Settlement Agreement does not necessarily prevent Defendants from removing class members or QAFMS who did not have "valid parole" or who committed "any intervening crimes." *See* Dkt. No. 906 at 3. Simply, the Settlement Agreement does not restrict the government's statutory authority to execute orders of removal.

Plaintiffs do not cite any applicable authority that would empower the Court to order Defendants to return class members and QAFMs. Plaintiffs rely on *J.O.P. v. DHS*, 779 F. Supp. 3d 570 (D. Md. 2025), for the proposition that courts may order the return of aliens who have been removed from the United States. *See* Dkt. 906 at 4. *J.O.P.*, however, is inapposite here, because it concerns a settlement in which—unlike the *Ms. L.* Settlement— the government explicitly agreed to refrain from executing final orders of removal against members of that class until U.S. Citizenship and Immigration Services issued a final determination on the class member's asylum application. *See J.O.P.*, 779 F. Supp. 3d at 576 (citation omitted). The *J.O.P.* court's authority to order the return of removed individuals thus was set forth in the relevant settlement. The *Ms. L.* Settlement Agreement does not give this Court such authority to order returns, especially not at taxpayer expense.

The other cases Plaintiffs cite do not support their argument that the government should facilitate the return of the aliens at issue at its expense, as they arise in dispositively inapposite contexts. The Ninth Circuit has ordered the government to facilitate the return of aliens, but in the context of stays of removal attendant to petitions for review of final removal orders, and the Ninth Circuit has not required the taxpayers to cover the cost. *See,*

4

*e.g.*, *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018); *Del Cid Marroquin v. Lynch*, 823 F.3d. 933, 936 (9th Cir. 2016); *Singh v. Walters* 87 F.3d 346, 349-50 (9th Cir. 1998). Similarly, although district courts have ordered that the government facilitate returns, they have done so when a removal violated an immigration judge's grant of protection from removal. *See D.V.D. v. DHS*, 784 F. Supp. 3d 401, 412 (D. Mass. 2025) (ordering defendants "to take all immediate steps, including coordinating with Plaintiffs' counsel, to facilitate the return of [plaintiff] to the United States" where the plaintiff's removal violated an immigration judge's order); *see also Abrego Garcia*, 145 S. Ct. at 1018. Those prerequisites giving rise to a district court's authority to order facilitation of returns do not exist here.

Further Congress has divested courts of jurisdiction to hear any cause or claim arising from the decision or action to execute a removal order. *See* 8 U.S.C. § 1252(g). Section § 1252(g) "is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). Ordering the return of a removed alien is directly contrary to this purpose as it would prolong removals from the United States in direct contravention of § 1252(g)'s purpose. Indeed, several district courts have refused, pursuant to § 1252(g), to order the return of aliens. *See H.T. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-146-CDL-MSH (M.D. Ga. Dec. 29, 2020), *recommendation adopted*, 2021 WL 5444776 at *5 (M.D. Ga. Feb. 23, 2021) (finding the § 1252(g) barred challenges to Respondents' alleged refusal to facilitate Petitioner's return because the claim arises from execution of the removal order.); *Alomaisi v. Decker*, No. 20-cv-5059 (VSB) (SLC), 2021 WL 611047, at *8 (S.D.N.Y. Jan. 27, 2021) (finding jurisdiction lacking under, *inter alia*, § 1252(g), where Plaintiff filed a habeas petition seeking an order returning him to the

3:18-cv-00428

United States from Yemen to pursue a motion to reopen that was pending at the time the petition was filed), *report and recommendation adopted Alomaisi v. Decker*, 2021 WL 3774117 (S.D.N.Y. Aug. 25, 2021); *Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019) (dismissing for lack of jurisdiction, including under § 1252(g), habeas corpus petition seeking alien's return to the United States despite ICE's previous agreement that petitioner could stay in the United States for medical treatment).

While the Ninth Circuit has explained that § 1252(g) does not apply if the removal violated a circuit stay, *Arce*, 899 F.3d at 800 (noting, in asserting jurisdiction, that "[the petitioner's] claims arise not from the execution of the removal order, but from the violation of our court's order"), that situation is not present here. Here, this Court barred removals, but a factual dispute remains as to whether S.M.B.C.'s departure from the United States following the Court's order barring removals was voluntary. DHS has no records of S.M.B.C.'s and family's removal. *See* Declaration of Byoung Park, Exh. A ¶¶ 3-4 ("I have reviewed the relevant DHS records, systems, and databases for information surrounding the departure of S.M.B.C. and family. There are no records of ERO removal for these individuals.").

Accordingly, the Court lacks the authority to order the government to facilitate the return of removed class members and QAFMs and, even if it had the authority, it could not order the government to cover the cost.

## II. The Court Should Not Order Defendants to Provide Grounds for Detention.

Plaintiffs ask the Court to order Defendants to provide the basis for detention of class members and QAFMs. *See* Dkt. 910 at 2. In the Settlement Agreement, the parties did not agree that Defendants will provide such information. Requiring Defendants to

produce this information, therefore, would be a modification of the Settlement Agreement. In Section IX.F of the settlement, the parties agreed that the settlement may not be modified or amended except upon a writing signed by all parties. Defendants do not agree to this modification.

Additionally, there exist channels for detained aliens to learn of the government's basis of their detention. Indeed, the Court ordered Defendants to inform Plaintiffs' counsel of detentions of class members and QAFMs and to identify the facility at which the government holds them. *See, e.g.*, Dkt. 840 at 1. With this information, counsel may contact the relevant Immigration and Customs Enforcement Field Office that oversees the facility to request grounds for detention. The Court therefore should deny Plaintiffs' motion to compel Defendants to provide information to class counsel.[2]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions to order Defendants to return class members and QAFMs who have been removed, to the United States, Dkt. 906, and to order Defendants to provide Plaintiffs' counsel specified additional information regarding detained class members, Dkt. 910.

---

[2]    Plaintiffs also request that the Court order the government to explain their allegation that the government instructed a class member and her QAFMs to self-deport. Dkt. 910 at 3. The government has provided a response to Plaintiffs regarding this allegation.

3:18-cv-00428

Dated: October 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
Senior Litigation Counsel

DANIEL SCHUTRUM-BOWARD
DEAN P. DE LAS ALAS
Trial Attorneys

*/s/ Daniel Schutrum-Boward*
Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 919-1670
Daniel.R.Schutrum-Boward@usdoj.gov

Attorneys for Defendants

3:18-cv-00428