UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.; et al.,<br><br>    Petitioners-Plaintiffs,<br><br>v.<br><br>U.S Immigration and Customs Enforcement ("ICE"); et al.,<br><br>    Respondents-Defendants. | Case No.: 18cv0428 DMS (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL RELIEF FROM SECTION IV.C.1 OF THE MS. L. SETTLEMENT AGREEMENT** |

   This case comes before the Court on Defendants' motion for partial relief from Section IV.C.1 of the *Ms. L.* Settlement Agreement. Plaintiffs filed an opposition to the motion, and Defendants filed a reply. The motion came on for hearing on January 29, 2026. Lee Gelernt, Daniel Galindo, and Natalie Behr appeared for Plaintiffs, and Daniel Schutrum-Boward and Carmen Yori appeared for Defendants.

   In this motion, Defendants argue the newly passed HR-1 conflicts with the following provision in Section IV.C.1. of the Settlement Agreement:

/ / /

>If the parole request is approved, USCIS will issue a travel document authorizing parole for a period of 36 months from the date the individual is paroled at the port of entry (for individuals outside the United States) or a Form I-94, Arrival/Departure Record valid for 36 months from the date parole is approved (for requests for parole in place).

(Settlement Agreement at 15, ECF No. 721-1.)  According to Defendants, this provision conflicts with HR-1's requirement that employment authorizations for parolees "be valid for a period of 1 year or for the duration of the alien's parole, whichever is shorter."  8 U.S.C. § 1804(b)(1).  To resolve this conflict, Defendants argue the Settlement Agreement should be modified to align with the new one-year limit for parole and employment authorization approvals.  Plaintiffs do not dispute there is a conflict between the Settlement Agreement's 36-month approval period and HR-1's new one-year limit.  Instead, they argue Defendants' proposed modification is not suitably tailored to address the conflict.  Plaintiffs propose a modification that would "require[ ] Defendants to renew class members and QAFMs employment authorization each year for the duration of their parole."  (Opp'n at 16.)

There being no dispute that there is a conflict on this issue, the Court grants Defendants' request for relief from the above provision of Section IV.C.1 of the Settlement Agreement.  This leaves only the terms of the modification.  As stated above, Defendants argue the Settlement Agreement should be modified to align with HR-1's new requirement that employment authorization for parolees "be valid for a period of 1 year or for the duration of the alien's parole, whichever is shorter."  8 U.S.C. § 1804(b)(1), while Plaintiffs assert the Settlement Agreement should be modified to require Defendants to automatically review Class Members' and QAFMs' employment authorization applications every year for the duration of their parole.  Plaintiffs' proposed modification does not directly address the conflict between the Settlement Agreement and HR-1, which concerns the length of employment authorizations.  Instead, it would impose a new obligation on Defendants to automatically reconsider a parolee's employment authorization application every year.  Because Plaintiffs' proposed modification does not directly address the conflict and would

impose a new obligation on Defendants, the Court declines to adopt it. Instead, the Court adopts Defendants' proposed modification and modifies Paragraph 5 of Section IV.C.1 to state:

> If the parole request is approved, USCIS will issue a travel document authorizing parole for a period of 36 months from the date the individual is paroled at the port of entry (for individuals outside the United States) or a Form I-94, Arrival/Departure Record valid for 36 months from the date parole is approved (for requests for parole in place). CBP has final authority to grant parole at the port of entry. The Ms. L. Settlement Class member of Qualifying Additional Family Member may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) once he or she is paroled into the United States. An initial Form I-765, Application for Employment Authorization (EAD application), will be accepted and adjudicated without a fee waiver required and, if approved, the time frame for employment authorization will *be 1 year or for the duration of the alien's parole, whichever is shorter*.

(modifications in italics).

The second issue on the present motion concerns HR-1's fee provisions for parole, employment authorization applications, and requests for asylum. According to HR-1, asylum applications now require the payment of a $100 fee, 8 U.S.C. § 1802(a)-(b), employment authorization applications now require the payment of a $550 fee, 8 U.S.C. § 1803(a)(1)-(2), (b)(1)-(2), and persons granted parole must now pay a fee of $1,000. 8 U.S.C. § 1804(a), (c). Defendants do not assert these fee provisions conflict with the Settlement Agreement, and thus, they do not seek modification of the Settlement Agreement on this issue. Instead, they state they are simply "informing" the Court that they are going to start collecting the fees set out in HR-1.

Although Defendants do not request that the Court take any action on the fee issue, Plaintiffs argue the Settlement Agreement prohibits Defendants from collecting these fees. Plaintiffs rely generally on the overall intent of the Settlement Agreement, which was to provide Class Members and QAFMs with a remedy for the injuries inflicted as a result of the first Trump Administration's family separation policy. Plaintiffs also rely on the structure of the Settlement Agreement, which requires Defendants to bear the costs of those

remedies. On the specific issue of fees, Plaintiffs rely on the following provisions set out in Section IV.C.1 of the Settlement Agreement, which state:

> (1) "USCIS will exempt the filing fee for the Form I-131, Application for Travel Document (parole application), for all *Ms. L.* Settlement Class members' and Qualifying Additional Family Members' parole requests submitted in compliance with the [Family Reunification Task Force] Parole Filing Guides," (Settlement Agreement at 14),
>
> (2) "An initial Form I-765, Application for Employment Authorization (EAD application), will be accepted and adjudicated without a fee or a fee waiver required and, if approved, the time frame for employment authorization will align with the duration of parole," (*id.* at 15),
>
> (3) "*Ms. L.* Settlement Class members and Qualifying Additional Family Members requesting re-parole will not be required to pay the parole application fee." (*id.* at 17-18), and
>
> (4) "USCIS will also exempt the filing fee for one Form I-765 renewal application for employment authorization, with no fee waiver application required, based on a period of re-parole granted under this settlement for *Ms. L.* Settlement Class members and Qualifying Additional Family Members." (*Id.* at 18.)[1]

Because Defendants have started imposing these fees on Class Members, (*see* Second Supp. Decl. of Marien Velez Alcaide in Supp. of Pls.' Notice Regarding Pending Motions, ECF No. 931-6), the Court addresses the fee issue below.

Defendants' first argument on this issue is the "new" fee structure was not in existence when the Settlement Agreement was executed, therefore any exemption provided

---

[1] Plaintiffs also point out that when the Settlement was finalized, USCIS had been enjoined from collecting fees for asylum applications, (Opp'n at 3), a point Defendants do not dispute. For that reason, the Settlement Agreement is silent on the issue of asylum fees. However, given the Settlement Agreement's language on the parole and employment authorization fees, and the imposition of other costs on Defendants, the parties clearly intended for Class Members and QAFMs to be exempt from any asylum fees. The Court's discussion below therefore applies to asylum fees, as well.

in the Settlement Agreement does not apply to the "new" fees. There are two problems with this argument. First, the Court is not convinced these fees are actually "new." Prior to passage of HR-1, USCIS had authority to collect fees for parole applications, asylum applications, and employment authorization applications under the implementing regulations for 8 U.S.C. § 1356(m).[2] *See* 8 C.F.R. §§ 106.2(a)(7) (parole), (28) (asylum), and (44) (employment authorization). HR-1 increased the amount of those fees, but it did not create "new" fees that did not exist before HR-1. Second, and contrary to Defendants' suggestion, there is nothing in the Settlement Agreement that explicitly limits the exemption to fees imposed pursuant to 8 U.S.C. § 1356(m). Rather, the exemption applies to parole application fees and work authorization fees generally and without exception. Absent explicit language limiting the exemptions to fees imposed under § 1356(m), the Court declines to interpret the Settlement Agreement to include that limitation. *See Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006) (quoting *People v. Gipson* (*In re Gipson*), 117 Cal. App. 4th 1065, 1070 (2004)) ("in California, contracts … are 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws.'")

Construing the exemption provision more broadly then, the question becomes whether HR-1 itself precludes application of that provision. Defendants argue it does because the statute says the Secretary of Homeland Security or the Attorney General "shall require the payment of a fee," 8 U.S.C. § 1802(a); 8 U.S.C. § 1803(a)(1); 8 U.S.C. §

---

[2] This statute states: "Notwithstanding any other provisions of law, all adjudication fees as are designated by the Attorney General in regulations shall be deposited as offsetting receipts into a separate account entitled "Immigration Examinations Fee Account" in the Treasury of the United States, whether collected directly by the Attorney General or through clerks of courts: *Provided, however,* That all fees received by the Attorney General from applicants residing in the Virgin Islands of the United States, and in Guam, under this subsection shall be paid over to the treasury of the Virgin Islands and to the treasury of Guam: *Provided further,* That fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants. Such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected." 8 U.S.C. § 1356(m).

1804(a), and these fees "shall not be waived or reduced." 8 U.S.C. § 1802(e); 8 U.S.C. § 1803(c)(5); 8 U.S.C. § 1804(f). Plaintiffs correctly point out, however, that the statute says nothing about exemptions, which are different from waivers and reductions. *See* 8 C.F.R. 106.3 (discussing fee waivers and exemptions in separate sections). Because Defendants' argument would require the Court to insert "exemptions" into the statute after Congress failed to do so, the Court rejects it. *See Lopez v. Garland*, 116 F.4th 1032, 1043 (9th Cir. 2024) (quoting *United States v. Temple*, 105 U.S. 97, 99 (1881)) (stating Supreme Court "observed long ago '[w]hen the language is plain, we have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision.'")

The Court also rejects Defendants' argument that Congress's failure to relieve *Ms. L.* Class Members and QAFMs from the obligation to pay the HR-1 fees reflects the fees should apply to them in the same way they apply to everyone else. In support of this argument, Defendants rely on *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017), but in that case the court refused to construe Congress's silence to "overrule[ ] a binding agreement incorporated into a judicial decree[.]" *Id.* at 875. Instead, the court stated that when the new laws were enacted, "Congress was on notice with respect to the government's obligations under the nationwide Flores Settlement and resulting consent decree," and it "therefore had the opportunity to address, and to explicitly modify if it wished to do so, any provisions of the Settlement[.]" *Id.* Because Congress failed to do so, the court "refuse[d] to read into such legislative silence any affirmative intent." *Id.* So, too, here.

In light of the above discussion, the Court agrees with Plaintiffs that the Settlement Agreement prohibits Defendants from collecting the fees set out in HR-1 from Class

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  Members and QAFMs.  To the extent Defendants have already requested those fees from
2  Class Members and QAFMs, they shall rescind those requests.  Defendants shall also
3  refrain from imposing those fees going forward.
4       **IT IS SO ORDERED**.
5  Dated:  February 5, 2026

                                             Hon. Dana M. Sabraw
                                             United States District Judge