Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
Natalie Behr**
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*
*IRP_NBehr@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA  94104
T:  (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for* Ms. L. *Plaintiffs*
*Admitted Pro Hac Vice*
** *Pro Hac Vice Motion Pending*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L., et al.,<br><br>                    *Petitioners-Plaintiffs*,<br>v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br><br>                    *Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: April 13, 2026<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RELEASE OF CLASS MEMBERS AND QUALIFYING ADDITIONAL FAMILY MEMBERS** |

**INTRODUCTION**

Since Plaintiffs filed their opening Motion, Defendants have released two of the seven detained individuals without explanation—O.E.M. and N.P.L.—confirming Plaintiffs' position that their detentions of over five months and two weeks, respectively, were not warranted. *See* Defs.' Opp'n to Mot. for Release ("Opp'n") at 1 n.1, ECF No. 949. For the remaining five, Defendants nowhere defend the merits of their decision to detain the class members and qualifying additional family members, to reseparate them from their families, and to leave them unable to access the benefits of the Settlement Agreement.

First, Defendants argue that there is no evidence that the five individuals actually seek the Settlement's benefits. But two of the five were detained despite having parole pursuant to the Settlement. And the remaining three are seeking parole and continued reunification. And the class members are all eligible to apply for asylum via the Settlement's special procedures, asylum being the ultimate Settlement benefit.

Second, Defendants maintain that the Settlement places *no* limitations on the government's discretion to detain. Opp'n at 3. But to state to Defendants' position is to refute it. Essentially, Defendants claim they can detain every class and family member at any time, and for months or years. And they can do so regardless of whether the individual had applied for parole under the Settlement, whether they in fact obtained parole, and whether their detention reseparates them from their parents or children. But the Settlement commits Defendants to a robust system of protections and benefits to reunify families in the United States and address the harm of separation. Defendants' position would flatly contradict the Settlement's protections, rendering them illusory at Defendants' discretion. Indeed, this Court recognized as much in ordering the government to provide the basis for each detention so that Plaintiffs' counsel and the Court could determine whether there had been some serious intervening event warranting detention notwithstanding the Settlement, something that would have been

18cv00428

unnecessary if the government had unfettered discretion to detain any and all class members even where there had been no serious intervening event. ECF No. 937 at 8 ("Order to Return Families").

And finally, Defendants argue the Court lacks jurisdiction to issue the requested relief. But Defendants themselves agreed that this Court has the authority to issue all relief necessary to remedy violations of the Settlement and that disputes about the Settlement must be brought before this Court. Settlement § VII.D, at 43, ECF No. 721-1. The core question is whether the Settlement prohibits the detention of class and family members absent an intervening crime sufficiently serious to justify exclusion from the class. This Court plainly has jurisdiction to review this question and authority to issue individual relief, just as it did to order the return of class and family members unlawfully removed. Order to Return Families at 2–3.

## ARGUMENT

### A. These Five Individuals are Seeking the Benefits of the Settlement.

Defendants suggest that the individuals at issue either do not desire to remain class members or qualifying additional family members, or to seek benefits under the Settlement. Opp'n at 5. But each of the five detained class and family members has sought the Settlement's benefits by applying for parole and two of the five had, in fact, been granted parole before their detention. Decl. of Natalie Behr ¶¶ 3–4, 8–10 (Apr. 13, 2026); *see also* Decl. of A.R.A. ¶¶ 6 (Apr. 13, 2026).[1]

Defendants granted parole to **R.B.H**. and **Y.M.M**. through December 2026 and June 2028, respectively. Behr Decl. ¶¶ 3, 8. They were nonetheless detained.

---

[1] Plaintiffs intended to submit a declaration by E.B.C. with this reply but on April 11, 2026, the facility where he was detained canceled a scheduled meeting with counsel, because E.B.C was "no longer housed" there. Behr Decl. ¶ 7. E.B.C. is not currently on the ICE detainee locator; Plaintiffs can submit his declaration once they can meet with him, if the Court wishes Plaintiffs to do so. *Id.*

18cv00428

**E.B.C**. applied for parole in March 2023, but was too scared to attend his biometrics appointment because he feared he would be taken into ICE custody—a fear that was ultimately realized. *Id.* ¶ 5. Because he did not appear at his scheduled biometric appointments, his initial application was denied. *Id.* ¶ 4. He still wants to obtain parole. *Id.* ¶ 5. Since his detention, he has connected with a legal service provider under the Acacia Center for Justice's Legal Access Services for Reunified Families ("LASRF") program, who will likely be able to assist him with his renewed parole application and support him through the biometrics process. *Id.* ¶ 6.

**A.R.A.** applied for parole in October 2024. *Id.* ¶ 9. Defendants detained him on July 28, 2025, while his application was pending. Decl. of Daniel Galindo ¶ 16, ECF No. 943-1. On March 26, 2026—after nearly eight months of detention—Defendants denied his application based on his April 2025 driving under the influence conviction and probation sentence, and because an immigration judge had issued a removal order, finding that A.R.A. was an "alien present in the United States without being admitted or paroled." Behr Decl. ¶ 9; *see also* A.R.A. Decl. ¶ 6. A.R.A. wants to remain with his family, including his niece, a separated child, and wants to seek any and all benefits under the Settlement to which he may be entitled. A.R.A. Decl. ¶ 6. He was recently matched with a pro bono attorney and has met with her to determine whether he can re-apply for parole. *Id.*

The government granted parole to **F.A.M**. under *Ms. L.* in December 2021. Behr Decl. ¶ 10. He applied for re-parole, and on March 9, 2026, U.S. Citizenship and Immigration Services ("USCIS") sent him a notice of intent to deny his parole unless he was able to provide additional information in support of his application by April 13, 2026. *Id.* F.A.M. has been in ICE custody and has not submitted a response in support of his application. *See id.*

18cv00428

**B. The Settlement Prohibits Detention of these Five Class Members and Qualifying Additional Family Members.**

1. The government's primary argument is that the Settlement provides no limits on detention because it does not explicitly state that "the government shall not detain class and family members seeking reunification." *See* Opp'n at 4. Under this view, the Settlement binds the government to provide a robust set of procedures and protections to reunify these traumatized families they separated while also allowing them to "render the benefits of the Settlement Agreement illusory" through detention. Order to Return Families at 7.

The government is wrong. As set out in the opening motion, the Settlement prohibits detention of the class and family members here because their detention nullifies the Settlement's goals—to provide traumatized families with the opportunity to reunify and to live with their reunified family in the United States, and if granted asylum, to remain together. Settlement §§ IV.A, at 9, IV.C.2.a., at 18; *see also* Pls.' Mot. for Release at 4–6, ECF No. 943. When a class member or qualifying additional family member is detained, their family is re-separated, and they are re-traumatized and precluded from realizing the Settlement's full benefits.

The parole provisions, for instance, necessarily require Defendants to honor their own grant of parole to a class or family member. If Defendants could detain individuals with valid parole status by merely ignoring or refusing to recognize that parole status, they would render meaningless the parole provisions of the Settlement. So too if Defendants could detain class and family members seeking to apply for parole or other benefits under the Settlement for no sufficient serious intervening reason—like a criminal conviction that would disqualify an individual from the class. The Settlement confirms that understanding by explicitly stating that even the *denial* of a parole application is not itself a basis for enforcement. Settlement § IV.C.1, at 18 ("In cases where Ms. L. Settlement Class members' and Qualifying Additional Family Members'

4

parole applications pursuant to this Settlement Agreement are denied by USCIS, USCIS will not use the denial of the parole application as the sole basis for referring the case for any enforcement action or issuance of an [Notice to Appear].").

The practical impediments detention places between beneficiaries and the Settlement's promises further counsels against Defendants' interpretation. Detention practically limits individuals' ability to pursue parole. These limits have become more severe in recent months because of policy changes enacted by Defendants. For example, as of December 5, 2025, USCIS has a policy that it will generally not collect biometrics of detained noncitizens, despite those biometrics being a general requirement for immigration benefits, including parole, that are administered by that agency. USCIS, Policy Alert, Biometrics Collection for Aliens in Custody at 1 (Dec. 5, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20251205-BiometricsCollection.pdf; *see also* USCIS, Vol. 1: General Policies and Procedures, Part C, Biometrics Collection and Security Checks, Chapter 2, Biometrics Collection (Feb. 3, 2026), https://www.uscis.gov/policy-manual/volume-1-part-c-chapter-2.

The Settlement further directs that class members be provided with mental and behavior health services. Settlement § IV.B.1.–2. Detention of recently reunited class and family members not only frustrates access to these mandatory services, it compounds the trauma that required the services in the first place.

2. Defendants assert that the Settlement "is not a shield against enforcement of immigration laws," Opp'n at 5, citing the provision that the Settlement "shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Ms. L. Settlement Class members, consistent with the Constitution and laws of the United States, and applicable regulations." Settlement § IX.C, at 44. But the Settlement is itself a legally binding contract that Defendants must follow; Defendants maintain the authority to enforce all laws against class members but must do so consistent with the Settlement. Indeed, this

18cv00428

Court has already rejected such an argument when granting Plaintiffs' Motion to Return Families, noting that "[a]lthough the Settlement Agreement does not prohibit Defendants from enforcing the laws of the United States, the removals at issue here clearly violated the spirit of the Agreement, which was to effect and support reunification *in the United States* of families that had been separated pursuant to the family separation policy." Order to Return Families at 7. The same is true for detention.

## C. The Court has Jurisdiction and Authority to Interpret the Settlement and Order Release.

The Court has jurisdiction and authority to order the release of these detained individuals to enforce the Settlement. As this Court has recognized repeatedly, the Settlement provides jurisdiction and authority for the Court to interpret and enforce its terms. *See, e.g.*, *id.* It provides the Court "the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement." Settlement § VII.D, at 43. And it provides that "any action or proceeding to enforce the terms of this Agreement shall be brought" to one venue only: "to the Court in the Ms. L. case." *Id.*; *see also* Settlement § VII.C ("The Parties agree that they will apply the following dispute resolution mechanisms before seeking enforcement from the Court . . . ."), VII.C.4(2), VII.C.6–7.

1. Defendants first argue this Court lacks jurisdiction to order release because Plaintiffs bring "core" habeas claims must be brought in the district of confinement and name the petitioner's immediate custodian. Opp'n at 2–4. But the rules of venue and personal jurisdiction specific to habeas corpus are not at issue. The motion at issue is a motion to enforce the Settlement, not an independent habeas action subject to the

6

18cv00428

requirements of 28 U.S.C. § 2241. Defendants' reliance on traditional habeas cases is thus misplaced.[2]

The instant motion asks whether the Settlement forbids the detention of class and family members absent a disqualifying conviction. If the answer to this question is yes, then the Court has the authority, agreed to by the parties in the Settlement, to issue proper relief, which in this context would be release. Accordingly, for example, in *Flores v. Garland*, the Ninth Circuit affirmed a district court order enjoining the Department of Homeland Security from detaining for more than three days minors protected by the class action settlement in violation of the settlement. 3 F.4th 1145, 1147 (9th Cir. 2021). That court properly did not require a habeas action, much less a habeas action in each district in which class members were detained; indeed, the *Flores* Court's injunction applied to detentions in several states outside the Central District of California. *Flores v. Barr*, No. 85-cv-04544-DMG-AGR, 2020 WL 5491445, at *2 (C.D. Cal. Sept. 4, 2020); Interim Report of Independent Monitor at 3, 8, *Flores v. Meese*, No. 85-cv-04544-DMG-AGR (C.D. Cal. Aug. 26, 2020), ECF No. 938.

The government's objection would lead to a result counter to the purpose of class actions in general and the Settlement here in particular. If individuals must raise claims that detention violates the *Ms. L.* Settlement through individual habeas actions, and those actions must be filed in the district of confinement, then numerous district courts would be called upon to interpret the underlying Settlement at the risk of conflicting judgments and inefficiency. Consistent with the goal of class actions, the Settlement provides "any action or proceeding" to enforce its terms "shall be brought exclusively" to this Court. Settlement § VII.D, at 43.[3]

---

[2] The cases Defendants rely on all arise out of habeas actions, and do not address the interpretation of a settlement agreement. *See* Defs.' Opp'n at 2–4.

[3] The Settlement Agreement in *Hamama* does not support Defendants' position. There, the government waived objections to class members filing independent habeas actions

18cv00428

2. Nor does 8 U.S.C. § 1252(f)(1) present a bar to relief. Section 1252(f)(1) is not a bar on jurisdiction to hear a case; it is a bar on "a specific category of remedies": class wide injunctions. *Biden v. Texas*, 597 U.S. 785, 798 (2022). Here the relief sought is not a class wide injunction: it is orders directing the release of *individual* class and family members.

Moreover, even if the relief sought here fell within the text of § 1252(f)(1), the government has waived that objection by entering into the Settlement. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1056 (7th Cir. 2025) (finding settlement likely waived § 1252 (f)(1) objections). *Compare* ECF No. 57 (Defs.' Opp'n to Mot. for Class PI) at 13–14 (arguing § 1252(f)(1) barred relief), ECF No. 59 (Defs.' Opp'n to Class Cert.) at 12 n.3 (similar) *with* Settlement § VII.D, ECF No. 121-1.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court order Defendants to release the five individuals still in custody.

DATED: April 13, 2026              Respectfully submitted,

                                   /s/ Lee Gelernt
                                   Lee Gelernt*
                                   Daniel A. Galindo (SBN 292854)
                                   Anand Balakrishnan*
                                   Judy Rabinovitz*
                                   Natalie Behr**
                                   AMERICAN CIVIL LIBERTIES UNION

before the court overseeing the Settlement. Class Settlement Agreement at 27, *Hamama v. Aducci*, No. 2:17-cv-11910-MAG-DRG (E.D. Mich. May 13, 2024), ECF No. 717-2. That agreement was *in addition* to the power of the court to enforce the substantive terms of the Settlement.

18cv00428

FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*
*IRP_nbehr@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T:  (415) 343-0783
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Ms. L Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*
*\*\* Pro Hac Vice Motion Pending*

9

18cv00428

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system.  A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt

Lee Gelernt