Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Sofía López Franco (SBN 354132)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*slopezfranco@aclu.org*

**Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ms. L., et al.,<br>*Petitioners-Plaintiffs*,<br>v.<br>U.S. Immigration and Customs Enforcement ("ICE"), et al.<br>*Respondents-Defendants*. | Case No. 18-cv-00428-DMS-AHG<br><br>Date Filed: November 25, 2026<br>Hearing Date: To Be Set<br><br>**MOTION TO RETURN S.H.C., RELEASE J.R.Q., AND CONFIRM APPLICABILITY OF STAY OF REMOVAL TO J.R.Q.** |

## INTRODUCTION

This motion concerns the interpretation of the Court's orders governing the detention and removal of Qualifying Additional Family Members ("QAFMs").

The Court has issued multiple orders governing the treatment of class members and QAFMs. Under these orders, Defendants are not permitted to remove class members and QAFMs without advance notice and agreement of class counsel. If Defendants detain a class member or QAFM, Defendants must notify class counsel within 24 hours of detention and provide the basis for detention within seven days. These orders were designed to ensure that Defendants do not frustrate the Settlement.

Defendants understandably do not dispute that these orders apply not just to class members but to QAFMs as well. But they wrongly take the position that one cannot be a QAFM for purposes of the Settlement until Defendants grant them parole. Thus, in the government's view, the Court's orders allow Defendants to detain and even remove a QAFM who is in the process of applying for parole before that parole application is adjudicated. Defendants' position is flatly inconsistent with the Settlement.

This motion concerns two individuals whom Defendants have refused to treat as QAFMs because they have not been granted parole. Defendants unlawfully detain one and have removed another.

**S.H.C.**[1] is indisputably a QAFM under the Settlement's definition of that term. Defendants removed S.H.C. in the middle of the night on October 19 while his parole application was pending and without consent from class counsel. Not only did S.H.C.'s removal violate the Settlement, but it also violated the Court's stay of removal. ECF No. 803. Plaintiffs respectfully ask this Court to direct Defendants to take all available steps to expeditiously facilitate the return of S.H.C. to the U.S., at Defendants' expense.

---

[1] Plaintiffs use acronyms to identify the QAFMs. The QAFM's identities are known to all parties.

**J.R.Q**. is likewise indisputably a QAFM under the Settlement and is currently detained by Defendants. Defendants first sought to justify his detention by pointing to his *arrest* for misdemeanor reckless driving but backed off that explanation when all charges were dismissed. Defendants then offered the same meritless justification as they used for S.H.C. – that J.R.Q. is not a confirmed QAFM because Defendants have not granted him parole. Plaintiffs therefore respectfully request the Court order J.R.Q.'s release and confirm the application of its stay of removal to J.R.Q., an issue of pressing importance given their recent removal of S.H.C.

The parties met and conferred on November 5, 2026 about the two QAFMs. Defendants stated they would have a response regarding J.R.Q.'s detention by November 10. On November 11, 2026, Defendants replied. They no longer relied on the now-dismissed misdemeanor arrest but instead stated "[b]ecause JARQ [*i.e*., J.R.Q.] is not a confirmed QAFM Defendants will not reconsider subject's detention, will not agree to stay removal, and do not agree that the Court's stay of removal order will apply if and when his order of removal becomes administratively final." As to S.H.C., Defendants offered to respond by November 20 but have not done so as of the time of this filing. Having not received a response regarding S.H.C., Plaintiffs' counsel notified Defendants on November 23, 2026, that they would file this motion and sought Defendants' position. As of the time of filing, Defendants have not responded or provided their position.

Accordingly, Plaintiffs respectfully ask the Court to: (1) direct Defendants to take all available steps to expeditiously facilitate the return of S.H.C. to the U.S., at Defendants' expense; (2) order the release of J.R.Q.; (3) confirm that its stay of removal applies to J.R.Q.

## BACKGROUND

### A. The Court's Previous Orders on QAFM Detentions and Ordering Return of Class Members and QAFMs

On May 16, 2025, the Court ordered that "the Government shall inform Plaintiffs' counsel within 24 hours if it detains a member of the Ms. L. class or other qualifying member defined in the settlement agreement." ECF No. 776 at 1-2. On June 27, 2025, the Court again extended its notice requirement—including for QAFMs—and also ordered that "Defendants shall not remove any additional Class members or QAFMs defined in the Settlement Agreement." ECF No. 803 at 1-2.; *See also* ECF No. 871.

Since then, the Court has granted numerous orders relating to the detention and removal of class members and QAFMs. On February 5, 2026, the Court ordered Defendants provide class counsel with the basis for the detention of class members and QAFMs and ordered the return of class members and QAFMs removed in violation of the Court's stay of removal. ECF No. 937 at 7–8. The Court rejected Defendants' arguments that the Court lacked jurisdiction to do so. *Id.* On June 22, 2026, the Court granted Plaintiffs' motion to release a number of detained class members and QAFMs. ECF No. 959. In that Order, the Court also reaffirmed that it had imposed a continuing obligation on Defendants to provide Plaintiffs with the basis for detention, both when they "elect to detain class and family members." *Id.* at 6 n.6. The Court again reaffirmed this on July 17, 2026, including for QAFMs. ECF No. 966 at 3.

### B. The Removal of S.H.C. and Detention J.R.Q.

***<u>S.H.C.</u>***

S.H.C. is a QAFM who Defendants removed to Honduras without justification and in violation of the Settlement and this Court's prior orders. He is the uncle and caregiver of separated child class member Y.F.D. and the brother of a class member. Decl. of S.H.C. ¶ 2. S.H.C. came to the United States in 2018 when he crossed the border with his own son. *Id.* at ¶ 3. After his arrival in the United States, S.H.C. eventually moved to Louisiana with his wife, three kids (including one U.S. citizen

child), and with class members Y.F.D. and his father. *Id.* at ¶ 4. In or around December 2025, Immigration and Customs Enforcement ("ICE") removed Y.F.D.'s father, and S.H.C. became the fulltime caregiver for the child class member Y.F.D., who he had been residing with since approximately 2018. *Id.* at ¶ 5.

In or around January 2026, the International Organization for Migration ("IOM") informed S.H.C. that he qualified for benefits through the *Ms. L.* Settlement as a QAFM and could thus seek parole. *Id.* at ¶ 6. S.H.C. worked with IOM and with their assistance submitted parole applications for himself and his family. *Id.* at ¶ 7.

In early September 2026, S.H.C. was stopped at a light and detained by Defendants while driving with his class member nephew Y.F.D. *Id.* at ¶ 8. S.H.C. was taken into immigration custody. *Id.* S.H.C. has not had any criminal convictions in the United States or in Honduras, and the only contact he has had with the police involves driving-related incidents like moving violations and tickets. *Id.* at ¶ 9. On September 2, 2026, class counsel requested the detention basis for S.H.C. On September 29, 2026 Defendants declined to do so, stating that "[r]eceiving assistance through IOM to apply for parole is insufficient to establish that he is a confirmed QAFM."

While in detention, S.H.C. received biometrics appointment notices to his home in connection with his application for parole, but S.H.C. could not attend because he was detained. *Id.* at ¶ 11. His appointment was eventually rescheduled for October 20, 2026. *Id.* Around 3 A.M. on October 19, S.H.C. was shackled and moved to Louisiana. *Id.* at ¶ 13. There, he was put on another plane, still shackled, without being informed where he was going. *Id.* Once on the plane, he was informed him the plane was going to Honduras. *Id.* He has been in Honduras since.

S.H.C. did not consent to his removal, nor did class counsel. Defendants never provided a basis for his detention, let alone one for his removal. S.H.C. does not feel safe in Honduras and seeks to be reunited with his family in the United States, including his *Ms. L.* class member nephew who remains here. *Id.* at ¶ 14.

November 2, 2026, Plaintiffs requested Defendants facilitate his return. Defendants counsel requested until November 20 to respond to the request. As of the time of filing, Defendants have not responded. Plaintiffs therefore respectfully request the Court order Defendants to facilitate his return pursuant to the Court's stay of removal, ECF No. 871, and the Court's February 5, 2026 Order, ECF No. 937 (ordering return of class members and QAFMs removed in violation of the stay).

***J.R.Q.***

J.R.Q. is a 19-year-old QAFM currently detained in Defendants' custody. He initially entered the U.S. as an unaccompanied minor in 2021 and has resided with his mother and brother, both of whom are registered *Ms. L.* class members, ever since. Pebror Decl. ¶¶ 9-10.

In June 2023, J.R.Q.'s mother re-filed her asylum application pursuant to the Settlement with U.S. Citizenship and Immigration Services ("USCIS") with J.R.Q. as a derivative. *Id.* at ¶ 11. She completed her asylum interview in December 2024 and her application, on which J.R.Q. is a derivative, remains pending. *Id.*

J.R.Q. was detained and placed in removal proceedings in May of 2026 following an arrest for misdemeanor reckless driving. *Id.* at ¶ 14. Working with the National Immigrant Justice Center ("NIJC") J.R.Q. filed his parole application in June 2026. *Id.* at ¶ 3. In July 2026, he received a Notice of Intent to Deny ("NOID"), which stated that USCIS had "confirmed that the beneficiary is a qualifying additional family member eligible for consideration for parole." *Id.* at ¶ 15 (quoting NOID).

On July 28, 2026, J.R.Q. was ordered removed by the Immigration Judge. He timely appealed that order to the B.I.A. and his appeal remains pending. *Id.* at ¶ 15. USCIS denied J.R.Q.'s parole application on August 24, 2026. *Id.* at ¶ 16. Shortly after that, J.R.Q. was transferred to a remote detention facility more than an eight-hour drive from his family. *Id.* at ¶ 17.

On October 29, 2026, the prosecutor's office filed a motion to dismiss all charges against J.R.Q. *Id.* at ¶ 19. The court granted the motion the same day. *Id.* Even though *all* charges have been dismissed, J.R.Q. remains detained hours away from his family. His mother suffered a more than eight-month separation from her then-three-year-old child in 2018. *Id.* at ¶¶ 5, 7. Now, she again faces separation from her child and also struggles to explain J.R.Q.'s prolonged absence to his younger brother who experiences developmental delays. *Id.* at ¶¶ 18, 20.

On September 1, 2026, Defendants provided Plaintiffs' counsel with a detention justification, which relied on the arrest for which the D.A. has since dismissed all charges. On November 2, 2026, class counsel again reached out to Defendants' counsel regarding J.R.Q.'s detention and sent Defendants' counsel the dismissal order in J.R.Q.'s criminal case that served as the basis for his detention. Class counsel requested Defendants revisit J.R.Q.'s detention and release him, and that they confirm the applicability of the stay of removal. The parties met and conferred on November 5, 2026, and on November 11, 2026, Defendants changed their justification and now stated that "Because JARQ is not a confirmed QAFM Defendants will not reconsider subject's detention, will not agree to stay removal, and do not agree that the Court's stay of removal order will apply if and when his order of removal becomes administratively final." Plaintiffs therefore respectfully request the Court order J.R.Q.'s release and confirm the applicability of the Court's stay of removal.

## ARGUMENT

The Court's Orders regarding detention and removal are clear: S.H.C., and J.R.Q. are covered because those orders apply to "class members and QAFMs" – not only to the QAFMs who have been granted parole.

## I. The Settlement and the Court's Orders Apply to QAFMs, Not Only QAFMs with Parole.

As this Court has already found, the Settlement Agreement and the Court's prior orders apply to QAFMs, including those who have not obtained parole. Many provisions of the Settlement would otherwise make no sense.

The Court has numerous times confirmed the applicability of its orders to QAFMs. *See* ECF Nos. 937, 959, 966. Indeed, the Court has previously ordered Defendants to facilitate the return of QAFMs who had not been granted parole at the time of their removal. ECF. No. 937 at 5–6 (ordering return of M.A.J. family, including QAFMs, and acknowledging Plaintiffs' argument that the removal was unlawful "because they were removed before they had an opportunity to apply for parole").

This makes sense, as the Settlement establishes straightforward criteria for who qualifies as a QAFM that does not turn on valid parole status. *See* Settlement Agreement § I.L. (defining QAFMs as a family member who is a part of a class member's immediate household or individuals with specific relationships with a class member parent or child, such as a spouse, sibling, or caregiver). QAFMs are eligible for parole on the same terms as class members. *See id.* § IV.C.1. The settlement further guarantees QAFMs access to funded legal services in order to *apply* for parole. *Id.* § IV.B.C.ii.a (providing that the government will contract with a provider "to communicate with Ms. L. Settlement Class members and assist Ms. L. Settlement Class members and Qualifying Additional Family Members with necessary parole and employment authorization applications"); *see also id.* § IV.B.C.iii.b (requiring the legal service contractor "to coordinate with Class Counsel and the designated provider organization to ensure that Ms. L. Settlement Class members and Qualifying Additional Family Members are aware of legal services, to maintain continuity of services, and to assist where necessary to ensure reunification.").

Defendants' position is that only at the end of the parole process is someone a confirmed QAFM. But this reading is contrary to the Settlement's requirement that

Defendants provide services to QAFMs before they have parole (in order to apply for parole). It would also undermine its intent. Defendants cannot be allowed to detain and remove people while they are seeking the Settlement's benefits for no reason—as they did with S.H.C. who had a pending parole application at the time of his removal. To do so would make the ability to seek and obtain benefits a hollow promise.

Defendants' position is also at odds with the purpose of the Court's orders. This Court issued its requirement for Defendants to provide notice of class member and QAFM detention, for example, "to ensure class members and QAFMs have full access the benefits of the Settlement Agreement." ECF No. 937 at 7–8. This reasoning makes no sense if applied only to QAFMs *after* they access these benefits.

Thus, the Court's orders, including its order that "Defendants shall not remove any additional Class members or QAFMs defined in the Settlement Agreement," ECF No. 803, and its order requiring Defendants to "provide Plaintiffs' Counsel, within seven (7) days of any detention [of a Class Member or QAFM], with the basis for that detention" apply to all class members and QAFMs, not only those with parole.

## II. S.H.C. and J.R.Q. are QAFMs under the Settlement

Thus, the only relevant question should be whether S.H.C. and J.R.Q. are QAFMs under the Settlement. They unquestionably are.

As noted above, the Settlement defines QAFMs as "[a]n additional family member who (1) is part of a Ms. L. Settlement Class member's immediate household; or (2) can demonstrate one of the below familial relationships." Settlement Agreement § I.L. These relationships, in relevant part, include unmarried children under 21 of class members and unmarried biological siblings of separated children who are class members. *Id.* Under the Settlement's definition, S.H.C. and J.R.Q. are QAFMs.

S.H.C. is a Q.A.F.M. as the primary caregiver of his class member nephew who separated. and who had been a part of Y.F.D.'s immediate household since 2018. Decl. of S.H.C. ¶ 3. Recognizing this, in January 2026, IOM informed S.H.C. that he qualified

for benefits through the *Ms. L.* settlement and could seek parole. S.H.C. worked with IOM to submit his and his family's parole applications. *Id.* at ¶ 6. That application was pending when Defendants removed him on October 19, 2026. *Id.* at ¶ 7. Removing him thus violated both the Settlement and the Court's stay of removal. ECF No. 803.

J.R.Q. is a QAFM *both* because he is a part of the immediate household of multiple class members *and* because he is the unmarried child under 21 of a class member and unmarried biological sibling of a separated child. *See* Settlement Agreement § I.L (defining a QAFM as a family member who "is part of a *Ms. L.* Settlement Class member's immediate household" or who "can demonstrate one of the below familial relationships," including "[a]n unmarried child under the age of 21 of a *Ms. L.* Settlement Class member" and "[a] separated child's biological sibling who is unmarried and under the age of 21"). Defendants themselves issued J.R.Q. a document stating that he was "a qualifying additional family member eligible for consideration for parole." Pebror Decl. ¶ 15 (quoting from his NOID).

Thus, S.H.C. and J.R.Q. are QAFMs and therefore covered by the Settlement as well as this Court's prior orders.

## III. The Court Should Direct Defendants to Facilitate S.H.C.'s Return

In removing S.H.C., Defendants violated both the Settlement and this Court's stay of removal. The Court should order Defendants to facilitate S.H.C.'s return to the United States, at their expense. As this Court has previously held, it has authority to order that a class member or QAFM that was unlawfully deported be returned to the United States. *See* ECF 937 (ordering the return of multiple family units, including QAFMs without parole).

## IV. The Court Should Order J.R.Q.'s Release.

J.R.Q.'s detention also violates the Settlement, and the Court similarly has authority to order his release. Settlement § VII.D. The parties entered into the Settlement to rectify the harm and unlawful separations by ensuring reunification in the

United States through various benefits and processes. This Court found that detentions of class and family members "thwart[] the Settlement Agreement's goals and has impeded, is impeding, or will impede these individuals' ability to obtain the benefits of the Settlement Agreement." ECF No. 959 at 6. J.R.Q.'s detention—away from his loved ones who are faced to relive the trauma of separation—clearly thwart the purpose of the Settlement. The sole justification Defendants provided—J.R.Q.'s arrest for misdemeanor reckless driving—no longer applies as all charges against J.R.Q. have been dismissed. Thus, the Court should order his release.

### V. The Court Should Confirm the Application of Its Stay for J.R.Q.

The Court's existing orders stay the removal of "Class members and QAFMs defined in the Settlement Agreement," ECF. No. 803 at 2. Despite this clear instruction, Defendants do not read the stay of removal as covering J.R.Q. Thus, to prevent further breaches of the settlement and its orders, the Court should confirm the applicability of its stay of removal to J.R.Q.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court (1) order Defendants to take all available steps to expeditiously facilitate the return of S.H.C. to the United States, at Defendants' expense; (2) order Defendants to release J.R.Q.; (3) confirm that the stay of removal applies to J.R.Q.

DATED: November 25, 2026 Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor

New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*abalakrishnan@aclu.org*
*jrabinovitz@aclu.org*

Stephen B. Kang (SBN 292280)
Sofía López Franco (SBN 354132)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*sloepzfranco@aclu.org*

*Attorneys for Ms. L Petitioners-Plaintiffs*
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2026, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Lee Gelernt
Lee Gelernt