Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*dgalindo@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Sofía López Franco (SBN 354132)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0783
*skang@aclu.org*
*slopezfranco@aclu.org*

**Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Ms. L., et al.,

*Petitioners-Plaintiffs*,

v.

U.S. Immigration and Customs Enforcement ("ICE"), et al.

*Respondents-Defendants*.

Case No. 18-cv-00428-DMS-AHG

Date Filed: November 25, 2026

Hearing Date: To Be Set

**DECLARATION OF RUTH EVELYN PEBROR ATTORNEY FOR J.R.Q.**

# DECLARATION OF RUTH EVELYN PEBROR ATTORNEY FOR J.R.Q.

I, Ruth E. Pebror, hereby declare under penalty of perjury that the following is true and accurate to the best of my knowledge and recollection.

## BACKGROUND

1. My name is Ruth Pebror. I have been a practicing attorney for more than seven years. I have practiced exclusively immigration law for almost five years.

2. I work at the National Immigrant Justice Center, a nonprofit legal services organization that assists low-income noncitizens in immigration matters.

3. NIJC first provided legal services to J.R.Q. in 2023 when he sought employment authorization based his status as a derivative asylum seeker on his mother's asylum application. NIJC was again retained by J.R.Q. in June of 2026. At that time, NIJC assisted him in filing his application for parole as a *Ms. L* qualifying additional family member, as well as his own principal asylum application.

4. NIJC has represented J.R.Q.'s mother, M.Q.L., since shortly after she entered the United States around March of 2018. At that time, she was apprehended and separated from her then-three-year-old son, J.A.Q.

5. NIJC has also represented J.A.Q. since shortly after he entered with his mother and was separated from her. Both M.Q.L. and J.A.Q. are *Ms. L.* class members. J.R.Q.'s status as a qualifying additional family member ("QAFM") under the *Ms. L* settlement agreement attaches through his biological relationships with his mother and brother.

## J.R.Q. AND HIS FAMILY

6. J.R.Q. was born in El Salvador on May 1, 2007 to M.Q.L. and G.R.G. His parents separated when he was a toddler. During his early childhood in El Salvador, he was raised by his mother and his maternal grandparents.

7. In 2018, J.R.Q.'s mother fled El Salvador with her youngest son J.A.Q. after they were targeted by gangs and police. J.R.Q. remained in El Salvador with his grandparents. At the United States-Mexico border, M.Q.L. was separated from J.A.Q. and detained for more than eight months. During that time, she was unable to communicate with J.R.Q.

8. Following a court order, M.Q.L. and J.A.Q. were released from government custody and reunified in 2019.

9. In 2021, when J.R.Q. was 14 years old, he made the journey to the United States to reunite with his mother and brother. After crossing the border alone, he was designated an unaccompanied minor by the Office of Refugee Resettlement and later released into his mother's care.

10. J.R.Q. has lived in Indianapolis, Indiana with his mother and brother for the last five years. During that time, his mother married a lawful permanent resident and had another child. Before he was detained, J.R.Q. worked with his stepfather in property restoration and construction, which he enjoyed and was mastering quickly. He helped care for his younger siblings and was an active member of his church.

11. In June of 2023, M.Q.L. re-filed her asylum application with the United States Citizenship and Immigration Services (USCIS) Asylum Office pursuant to the terms of the *Ms. L* settlement agreement. She completed her asylum interview in December of 2024. Her asylum application remains pending. J.R.Q. is a derivative beneficiary on M.Q.L.'s asylum application.

12. M.Q.L. and J.A.Q. were confirmed as *Ms. L* class members by the Family Reunification Taskforce in May 2024. They both applied for *Ms. L* parole in January of 2025. Those applications remain pending.

**RENEWED FAMILY SEPARATION ON THE BASIS OF PENDING MISDEMEANOR TRAFFIC OFFENSES AND J.R.Q.'s APPLICATION FOR *MS. L* PAROLE**

13. On May 17, 2026, the Indianapolis Metropolitan Police department received a noise complaint for a party where J.R.Q. was present. J.R.Q. was arrested and charged with misdemeanor reckless driving. He was transferred to ICE custody. He remains in ICE custody.

14. J.R.Q. filed an application for *Ms. L* parole as a QAFM in June of 2026. He also filed a principal asylum application in late June of 2026. He remains a derivative on his mother's pending asylum application.

15. On July 10, 2026, USCIS issued a Notice of Intent to Deny (NOID) in response to J.R.Q.'s application for *Ms. L* parole as a QAFM. USCIS explicitly states in the NOID: "USCIS reviewed your submitted application and confirmed that the beneficiary is a qualifying additional family member eligible for consideration for parole under the Family Reunification Task Force process and considered this as a positive factor."

16. USCIS further stated that it nonetheless intended to deny the parole application based on pending misdemeanor driving charges that have since been dismissed, as discussed below.

17. An immigration judge at the Indianapolis Immigration Court denied J.R.Q.'s application for asylum on July 28, 2026. J.R.Q. filed his appeal with the Board of Immigration Appeals (BIA) on August 24, 2026. The appeal remains pending.

18. The same day J.R.Q. filed his appeal with the BIA, USCIS denied his application for parole. The Denial Notice states that USCIS is denying his application finding "the negative factors outweigh the positive factors."

19. Not long after J.R.Q. was denied asylum and parole, DHS transferred him to a remote detention facility in Sault Ste. Marie, in Michigan's Upper Peninsula, along the border with Canada, more than eight hours drive from his family.

20. J.R.Q.'s mother, M.Q.L., has struggled to explain J.R.Q.'s prolonged absence to his little brother, J.A.Q., who is developmentally delayed and unable to understand why his brother has disappeared.

**ALL CHARGES HAVE BEEN DISMISSED IN FULL**

21. On October 29, 2026, the Marion County Prosecutor's office filed a motion to dismiss all pending charges against J.R.Q. The Court granted the motion the same day. J.R.Q. remains detained by ICE. His asylum case is pending at the BIA.

22. M.Q.L., J.R.Q., and J.A.Q. have experienced great harm and distress owing to nearly seven months of separation following J.R.Q.'s detention by ICE. J.R.Q. is a 19-year-old young man with no criminal convictions and no pending criminal charges. He meets the definition of a QAFM under *Ms. L.* J.R.Q. should be released from ICE custody and reunified with his mother and brother.

Date: November 24, 2026

Respectfully submitted,

S/ Ruth E. Pebror

Ruth E. Pebror
Attorney for J.R.Q.